# U.S. Bankruptcy Court
## Eastern District of Michigan (Detroit)
## Bankruptcy Petition #: 13–53846–tjt

*Date filed:* 07/18/2013
*Plan confirmed:* 11/12/2014
*Deadline for filing claims:* 02/21/2014

*Assigned to:* Judge Thomas J. Tucker
Chapter 9
Voluntary
No asset

**Debtor In Possession**
**City of Detroit, Michigan**
2 Woodward Avenue
Suite 1126
Detroit, MI 48226
WAYNE–MI
Tax ID / EIN: 38–6004606

represented by **Bruce Bennett**
555 S. Flower Street
50th Floor
Los Angeles, CA 90071
(213) 489–3939
Email: bbennett@jonesday.com

**Judy B. Calton**
Honigman Miller Schwartz &Cohn LLP
2290 First National Building
Detroit, MI 48226
(313) 465–7344
Fax : (313) 465–7345
Email: jcalton@honigman.com

**Eric D. Carlson**
150 West Jefferson
Suite 2500
Detroit, MI 48226
313–496–7567
Email: carlson@millercanfield.com

**Tamar Dolcourt**
500 Woodward Ave.
Suite 2700
Detroit, MI 48226
313–234–7161
Email: tdolcourt@foley.com

**Timothy A. Fusco**
150 West Jefferson
Suite 2500
Detroit, MI 48226–4415
(313) 496–8435
Email: fusco@millercanfield.com

**Eric B. Gaabo**
1650 Frist National Building
Detroit, MI 48226
(313) 237–3052
Email: gaabe@detroitmi.gov

**Jonathan S. Green**
150 W. Jefferson
Ste. 2500

Detroit, MI 48226
(313) 963–6420
Email: green@millercanfield.com

**David Gilbert Heiman**
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586–7175
Email: dgheiman@jonesday.com

**Robert S. Hertzberg**
4000 Town Center
Suite 1800
Southfield, MI 48075–1505
248–359–7300
Fax : 248–359–7700
Email: hertzbergr@pepperlaw.com

**Jeffrey S. Kopp**
Foley &Lardner LLP
500 Woodward Avenue
Suite 2700
Detroit, MI 48226
(313) 234–7100
Fax : (313) 234–2800
Email: jkopp@foley.com

**Deborah Kovsky–Apap**
Pepper Hamilton LLP
4000 Town Center
Suite 1800
Southfield, MI 48075
(248) 359–7300
Fax : (248) 359–7700
Email: kovskyd@pepperlaw.com

**Kay Standridge Kress**
4000 Town Center
Southfield, MI 48075–1505
(248) 359–7300
Fax : (248) 359–7700
Email: kressk@pepperlaw.com

**Stephen S. LaPlante**
150 W. Jefferson Ave.
Suite 2500
Detroit, MI 48226
(313) 496–8478
Email: laplante@millercanfield.com

**Heather Lennox**
222 East 41st Street
New York, NY 10017
212–326–3939
Email: hlennox@jonesday.com

**John A. Simon**
500 Woodward Avenue
Suite 2700
Detroit, MI 48226
(313) 234–7100
Email: jsimon@foley.com

**Ronald A. Spinner**
150 West Jefferson
Suite 2500
Detroit, MI 48226
(313) 496−7829
Email: spinner@millercanfield.com

**Marc N. Swanson**
Miller Canfield Paddock and Stone, P.L.C
150 W. Jefferson
Suite 2500
Detroit, MI 48226
(313) 496−7591
Email: swansonm@millercanfield.com

*U.S. Trustee*
**Daniel M. McDermott**

represented by **Sean M. Cowley (UST)**
United States Trustee
211 West Fort Street
Suite 700
Detroit, MI 48226
(313) 226−3432
Email: Sean.cowley@usdoj.gov

**Richard A. Roble (UST)**
United States Trustee
211 West Fort Street
Suite 700
Detroit, MI 48226
(313) 226−6769
Email: Richard.A.Roble@usdoj.gov

*Creditor Committee*
**Committee of Unsecured
Creditors**
*TERMINATED: 03/03/2014*

represented by **Brett Howard Miller**
1290 Avenue of the Americas
40th Floor
New York, NY 10104
(212) 468−8051
Email: bmiller@mofo.com,whildbold@mofo.com
*TERMINATED: 03/03/2014*

**Geoffrey T. Pavlic**
25925 Telegraph Rd.
Suite 203
Southfield, MI 48033−2518
(248) 352−4700
Fax : (248) 352−4488
Email: pavlic@steinbergshapiro.com
*SELF− TERMINATED: 11/19/2014*

**Mark H. Shapiro**
25925 Telegraph Rd.
Suite 203
Southfield, MI 48033−2518
(248) 352−4700
Fax : (248) 352−4488
Email: shapiro@steinbergshapiro.com
*TERMINATED: 03/03/2014*

*Creditor Committee*
**Charlene Hearn**
PO Box 6612
Detroit, MI 48206

**Retiree Committee**       represented by  **Sam J. Alberts**
**Official Committee of Retirees**                    1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005−3364
(202) 408−7004
Email: sam.alberts@dentons.com
*SELF− TERMINATED: 03/13/2015*

**Paula A. Hall**
401 S. Old Woodward Ave.
Suite 400
Birmingham, MI 48009
(248) 971−1800
Email: hall@bwst−law.com

**Claude D. Montgomery**
620 Fifth Avenue
New York, NY 10020
(212) 632−8390
Email: claude.montgomery@dentons.com,docketny@dentons.com

**Carole Neville**
1221 Avenue of the Americas
25th Floor
New York, NY 10020
(212) 768−6889
Email: carole.neville@dentons.com,daniel.morris@dentons.com

**Matthew Wilkins**
401 S. Old Woodward Ave.
Suite 400
Birmingham, MI 48009
(248) 971−1800
Email: wilkins@bwst−law.com

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 07/27/2015 | | 10087 | Motion to Enforce *City Of Detroits Motion For the Entry Of An Order (I) Enforcing the Plan Of Adjustment Injunction and (II) Requiring BCLand Development Corporation To (A) Dismiss With Prejudice Its State Court Lawsuit and (B) Withdraw Its Notice Of Lis Pendens* Filed by Debtor In Possession City of Detroit, Michigan (Attachments: # 1 Exhibits 6F−6I) (Swanson, Marc) (Entered: 07/27/2015) |
| 07/27/2015 | | 10088 | Ex Parte Motion to Expedite Hearing (related documents 10087 Motion to Enforce) , in addition to Ex Parte Motion to Shorten/Reduce Notice *on (related documents 10087 Motion to Enforce)* Filed by Debtor In Possession City of Detroit, Michigan (Swanson, Marc) (Entered: 07/27/2015) |
| 07/27/2015 | | 10091 | Order Granting City Of Detroit's Ex Parte Motion For An Order Shortening Notice And Scheduling An Expedited Hearing On The Motion For The Entry Of An Order (I) Enforcing The Plan Of Adjustment Injunction And (II) Requiring BCLand Development Corporation To (A) Dismiss With Prejudice Its State Court Lawsuit And (B) Withdraw Its Notice Of Lis Pendens (Related Doc # 10088), Granting Motion To Shorten/Reduce (Related Doc # 10088)Hearing to be held on 8/5/2015 at 01:30 PM Courtroom 1925 for 10087, (RE: related document(s)10087 Motion to Enforce *City Of Detroits Motion For the Entry Of An Order (I)* |

| | | | |
|---|---|---|---|
| | | | *Enforcing the Plan Of Adjustment Injunction and (II) Requiring BCLand Development Corporation To (A) Dismiss With Prejudice Its State Court Lawsuit and (B) Withdraw Its Notice Of Lis Pendens* Filed by Debtor In Possession City of Detroit, Michigan (Attachments: # 1 Exhibits 6F–6I)). (ckata) (Entered: 07/27/2015) |
| 07/30/2015 | | 10107 | Response to (related document(s): 10087 Motion to Enforce *City Of Detroits Motion For the Entry Of An Order (I) Enforcing the Plan Of Adjustment Injunction and (II) Requiring BCLand Development Corporation To (A) Dismiss With Prejudice Its State Court Lawsuit and (B) Withdraw Its Notic) Filed by Respondent BCLand Development Corporation (Cotton, Horace) (Entered: 07/30/2015)* |
| 08/03/2015 | | 10115 | Reply to (related document(s): 10087 Motion to Enforce filed by Debtor In Possession City of Detroit, Michigan, 10107 Response filed by Respondent BCLand Development Corporation) Filed by Debtor In Possession City of Detroit, Michigan (Swanson, Marc) (Entered: 08/03/2015) |
| 08/05/2015 | | 10119 | Order Granting City of Detroit's Motion For The Entry Of An Order (I) Enforcing The Plan Of Adjustment Injunction And (II) Requiring BCLand Development Corporation To (A) Dismiss With Prejudice Its State Court Lawsuit And (B) Withdraw Its Notice Of Lis Pendens (Related Doc # 10087). (sikula, christine) (Entered: 08/05/2015) |

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS

The City of Detroit, Michigan ("City"), by its undersigned counsel, files its Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens ("Motion"). In support of this Motion, the City respectfully states as follows:

## I. Introduction

1. On July 1, 2015, B&C Land Development Corporation ("B&C") filed a state court lawsuit against the City seeking monetary damages, specific performance and injunctive relief on account of a pre-petition claim. The City informed B&C that the filing and prosecution of the state court lawsuit violates both the Bar Date Order (as defined in paragraph 5 below) and the injunction set forth in the confirmed Plan (as defined in paragraph 10 below). Despite the City's request, B&C refused to voluntarily dismiss the state court lawsuit. As a result, the City is left with no choice but to seek an order barring and permanently enjoining B&C from asserting and prosecuting the claims described in the state court lawsuit against the City or property of the City and requiring it to dismiss the state court lawsuit with prejudice.

## II. Background

### A. The City's Bankruptcy Case

2. On July 18, 2013 ("Petition Date"), the City filed this chapter 9 case.

3. On October 10, 2013, the City filed its Motion Pursuant to Section 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), for Entry of an Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof ("Bar Date Motion"). [Doc. No. 1146].

4. On November 21, 2013, this Court entered an order approving the Bar Date Motion ("Bar Date Order"). [Doc. No. 1782]. The Bar Date Order established February 21, 2014 ("General Bar Date") as the deadline for filing claims against the City. Paragraph 6 of the Bar Date Order states that the

> following entities must file a proof of claim on or before the Bar Date…any entity: (i) whose prepetition claim against the City is not listed in the List of Claims or is listed as disputed, contingent or unliquidated; and (ii) that desires to share in any distribution in this bankruptcy case and/or otherwise participate in the proceedings in this bankruptcy case associated with the confirmation of any chapter 9 plan of adjustment proposed by the City…

Bar Date Order ¶ 6.

5. Paragraph 22 of the Bar Date Order also provided that:

> Pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(2), **any entity that is required to file a proof of claim in this case pursuant to the Bankruptcy Code, the Bankruptcy Rules or this Order with respect to a particular claim against the City, but that fails properly to do so by the applicable Bar Date, shall be forever barred, estopped and enjoined from: (a) asserting any claim against the City or property of the City** that (i) is in an amount that exceeds the amount, if any, that is identified in the List of Claims on behalf of such entity as undisputed, noncontingent and liquidated or (ii) is of a different nature or a different classification or priority than any Scheduled Claim identified in the List of Claims on behalf of such entity (any such claim under subparagraph (a) of this paragraph being referred to herein as an "Unscheduled Claim"); (b) voting upon, or receiving distributions under any Chapter 9 Plan in this case in respect of an Unscheduled Claim; or (c) with respect to any 503(b)(9) Claim or administrative priority claim component of any

24838841.2\022765-00202
2
13-58846-tjt   Doc 10084-2   Filed 09/21/15   Entered 09/21/15 13:13:21   Page 7 of 92
13-58846-tjt   Doc 10087   Filed 07/27/15   Entered 07/27/15 13:14:16   Page 7 of 206
7

Rejection Damages Claim, asserting any such priority claim against the City or property of the City.

Bar Date Order ¶ 22 (emphasis added).

6.      On October 22, 2014, the City filed its Eighth Amended Plan of the Adjustment

of Debts of the City of Detroit (October 22, 2014) ("Plan").  [Doc. No. 8045].

7.      On November 12, 2014, this Court entered an order confirming the Plan

("Confirmation Order").  [Doc. No. 8272].

8.      The discharge provision in the Plan provides

Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date.  Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date, discharge the City from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (ii) the Holder of a Claim based on such debt has accepted the Plan.

Plan, Art. III.D.4.

9.      With certain exceptions not applicable here, the Plan does not afford any right to

distributions or payments to claimants that did not timely file proofs of claim.  Plan Art. I.A.19;

Art. I.A.134; Art. VI.A.1. Such claims are not Allowed Claims under the Plan and thus are not

entitled to distributions under the Plan.  *Id.*  ("Notwithstanding any other provision of the Plan,

no payments or Distributions shall be made on account of a Disputed Claim until such Claim

becomes an Allowed Claim.").

10.      The Plan injunction set forth in Article III.D.5 also provides in pertinent part:

**Injunction**

**On the Effective Date, except as otherwise provided herein or in the Confirmation Order,**

>     **a.    all Entities that have been, are or may be holders of Claims against the City…shall be permanently enjoined from taking any of the following actions against or affecting the City or its property…**
>
>     **1.    commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affect the City of its property…**
>
>     **5.    proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and**
>
>     **6.    taking any actions to interfere with the implementation or consummation of the Plan.**

Plan, Article III.D.5 (emphasis supplied).

11.    The Court also retained jurisdiction to enforce the Plan injunction and to resolve any suits that may arise in connection with the consummation, interpretation or enforcement of the Plan. Plan, Art. VII. F, G, I.

### B.    B&C Files a Complaint in State Court in 2015 Based on an Alleged Real Estate Purchase Agreement Entered into in 2006

12.    On July 1, 2015, B&C filed a complaint ("Complaint") against the City in Wayne County Circuit Court, Michigan, case number 15-008602 ("State Court Lawsuit"). The Complaint is attached as Exhibit 6A. A notice of lis pendens ("Lis Pendens") was attached to the complaint.

13.    Also, on July 1, 2015, the City wrote to B&C explaining that the filing of the Complaint violated the Plan and the Bar Date Order. The July 1 correspondence is attached as Exhibit 6B. In its July 1 correspondence, the City requested that B&C dismiss the State Court Lawsuit by July 8, 2015. B&C refused to dismiss the State Court Lawsuit. On July 21, 2015, the City filed its answer ("Answer") to the Complaint. *See* Ex. 6C.

14.     In the Complaint, B&C asserts that it submitted a proposal in 2004 to the City's Department of Planning and Development to develop approximately 29 acres of land located at 5601, 5815 and 5861 W. Jefferson Ave., commonly known as Revere Copper & Brass ("Property").  Complaint ¶ 5.  In connection with the proposal, B&C alleges that throughout 2004, its President, Mr. Robert Carmack, met with various City and Detroit Water and Sewerage Department ("DWSD") representatives.  *Id.* ¶¶ 6-9.  B&C further alleges that in 2005, Mr. Carmack was instructed by the City to conduct environmental studies on the Property, which B&C subsequently completed.  *Id.* ¶ 10.

15.     After conducting negotiations on the Property, B&C alleges that in March 2006 the City presented Mr. Carmack with an offer of sale for $500,000.  *Id.* ¶ 11.  B&C alleges that on April 14, 2006, Mr. Carmack signed the offer to purchase and gave a deposit of $50,000.00 by check to the City. *Id.* ¶ 12.

16.     The sale and transfer of the Property was stalled, however, between April 2005 and May 2008, according to B&C.  *Id.* ¶ 13.  In May 2008, B&C alleges that the City presented a new document to City Council seeking approval of a sale of the Property from the City to DWSD.  *Id.* ¶ 15.  At that point, B&C alleges that "City Council, without benefit of the history of this property and pending sale to B&C approved the sale for $5,000,000.00 to DWSD with no appraisal or due diligence." *Id.*  As set forth in the Answer, on or about June 30, 2008, the Detroit City Council did authorize the transfer of the Property from the Planning and Development Department to the DWSD in exchange for reimbursement from the DWSD of $5 million.  Answer ¶ 15.

24838841.2\022765-00202                                    5
13-53846-tjt    Doc 10081-2    Filed 07/24/15    Entered 07/24/15 13:34:16    Page 10 of 91
13-53846-tjt    Doc 10091-2    Filed 09/21/15    Entered 09/21/15 13:43:21    Page 10 of
206                                                                                                          10

17.     B&C continues to allege that at various points from 2010 through 2012, it was told that the DWSD needed the Property to build a combined sewer overflow facility but that there is not any evidence that the DWSD needed the Property for this purpose.  *Id.* ¶¶ 16-19.

18.     On May 10, 2012, Mr. Carmack did appear in front of the Detroit City Council raising many of the same allegations that are contained in the Complaint.  *See* Ex. 6D.

19.     In response to Mr. Carmack's comments to City Council, on May 15, 2012, Robert A. Anderson, the Director of the City's Planning and Development Department, submitted a public statement to City Council ("May 2012 Public Statement").  Ex. 6D.

20.     In the May 2012 Public Statement, Mr. Anderson stated that on June 18, 2008, the Board of Water Commissions authorized the DWSD director to approve the acquisition of the approximately 28.66 acre "Revere Copper & Brass" site as the location for a combined sewer overflow facility.  *Id.*   He further explained that on June 30, 2008, the City Council authorized the transfer of the approximately 28.66 acre "Revere Copper & Brass" site from the City's Planning and Development Department to DWSD for a combined sewer overflow facility in exchange for reimbursement from DWSD of $5 million.  *Id.*

21.     Mr. Anderson emphasized:

P&DD never took a deposit from Mr. Carmack for this site, never entered into a purchase agreement with Mr. Carmack for this site, and never entered into a development agreement with Mr. Carmack for this site.  P&DD never requested that this Honorable Body approve any sale of this site to Mr. Carmack, and Your Honorable Body never passed a land sale resolution or authorized the sale of the property to Mr. Carmack.

Since June of 2008, Your Honorable Body has requested P&DD report on the status of a sale of this site to Mr. Carmack no less than four times.  The information each time has been recited above, with no change since the original report of June 25, 2008 other than the transfer to DWSD.  We trust that this correspondence addresses with finality your concerns and inquiries to P&DD regarding the status of the former "Revere Coopper & Brass" property and the issues raised by Mr. Carmack.

*Id.*

22.     In the Complaint, B&C alleges that on February 5, 2013, the Detroit City Council then transferred jurisdiction over the property from the DWSD back to the Planning and Development Department because of a failure of consideration. *Id.* ¶ 20.  In 2013, the City sold approximately 7 acres of the Property to Waterfront Terminal Holdings for a price of $1.16 million.  Answer ¶ 21. *See also* Complaint ¶ 21.  B&C also alleges that on June 30, 2031,[1] the City agreed to sell the remaining 21.665 acres to Waterfront Terminal Holdings II, LLC and Steven W. Erickson.  Complaint ¶ 22.

23.     Based on these facts, the Complaint asserts causes of action for Breach of Contract (Count I), Injunctive Relief/Specific Performance (Count II), and Declaratory Relief (Count III).  The Complaint is the first complaint filed by B&C against the City with respect to the alleged offer to purchase or the Property.

### C.     The Detroit City Council and Mayor Duggan Approve Two Purchase Agreements for Different Portions of the Property

24.     In February, 2015, the City received two purchase offers for different portions of the Property.  Waterfront Terminal Holdings II, LLC ("<u>Waterfront</u>") offered to purchase approximately 6 acres of the Property ("<u>Waterfront Property</u>") for $735,000.  *See* Ex. 6E, True Copy Certificate of Resolution Approving Waterfront Offer to Purchase at 2. The terms of the Waterfront offer are set forth in a Purchase Agreement dated February 17, 2015 ("<u>Waterfront Offer to Purchase</u>").   *See* Ex. 6F.   Waterfront wishes to acquire the Waterfront Property to expand its vital marine liquid and bulk distribution operations.   Ex. 6E at 2.  Upon acquisition, Waterfront will remediate the Waterfront Property, dredge the riverfront, and improve the seawall and dock in order to grow its large vessel refueling operations.  *Id.*

---

[1] This is not a typographical error. The complaint uses the year "2031."

25.    On June 30, 2015, the Detroit City Council passed a resolution approving the Waterfront Offer to Purchase and on July 7, 2015, Mayor Michael Duggan approved the resolution.  Ex. 6E.  Due to the filing of the State Court Lawsuit, on July 17, 2015, the sale closed in escrow.  *See* Ex. 6G, Escrow Agreement.

26.    A separate purchaser, Revere Dock, LLC ("Revere Dock"), offered to purchase approximately 17 acres of the Property ("Revere Dock Property") for $2,280,000.00.  *See* Ex. 6H, True Copy Certificate of Resolution Approving Revere Dock Offer to Purchase at 2. The terms of the Revere Dock offer are set forth in a Purchase Agreement dated February 17, 2015 ("Revere Dock Offer to Purchase").  *See* Ex. 6I.   Under the terms of the Revere Dock Offer to Purchase, the Revere Dock Property would be conveyed to Revere Dock under a development agreement by quit claim deed.  *See* Ex. 6H at 2.  Pursuant to the development agreement, Revere Dock's construction contracts will provide that Detroit residents must constitute at least 51% of the workforce and perform 51% of the hours worked on the project.  *Id.*   Revere Dock will also establish the goal of contracting with at least 30% of Detroit-based Businesses, Detroit-headquartered Businesses or Detroit Emerging Businesses.  *Id.*  Revere Dock's development of the Revere Dock Property will bring new heavy lift marine and transport capacity to Detroit, supporting manufacturing and fabricating companies with project equipment of oversize dimension and weight, while providing on-site staging and storage of critical equipment.  *Id.*

27.    On June 30, 2015, the Detroit City Council passed a resolution approving the Revere Dock Offer to Purchase and on July 7, 2015, Mayor Michael Duggan approved the resolution.  Ex. 6H.

28.    The City and the purchasers desire to complete the sale of these properties as soon as possible.  Consummating these transactions will immediately remove the properties from the

City's maintenance responsibilities, relieving the City of the commensurate costs. Because these properties are owned by the City, the properties are currently tax-exempt but will be returned to the tax rolls after the sales. The improvements to be made by the purchasers will create construction jobs, and the business operations will create permanent jobs.

29.     The purchasers have informed the City that they have forgone several contracts that they otherwise could have secured due to the closing delays caused by the filing of the State Court Lawsuit. Further, one of the purchasers informed the City that it needs to have closing occur immediately in order to perform on certain of its existing contractual obligations.

## III.    Argument

30.     B&C violated the Plan injunction and discharge provisions when it filed the State Court Lawsuit asserting claims against the City. And, it continues to violate it by continuing to prosecute, and refusing to voluntarily dismiss, the State Court Lawsuit. Pursuant to the Plan, B&C's claims against the City are discharged and it is enjoined from, among other things, commencing any action against the City with respect to those claims. Plan, Art. III.D.4; Plan, Art. III.D.5.

31.     Furthermore, B&C did not file a proof of claim by the General Bar Date and has at no time after the General Bar Date filed an untimely proof of claim or a motion for permission to file an untimely proof of claim on the basis of "excusable neglect" under *Pioneer Inv. Services Co v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993)("*Pioneer* Motion") and its

progeny. Thus, B&C is also barred, estopped and enjoined from asserting any claim against the City or property of the City under the Bar Date Order. Bar Date Order ¶ 22.[2]

32.     However, even if B&C were now to file and have granted a *Pioneer* Motion (which it has not filed or sought), the relief to be afforded B&C would not include permitting B&C to proceed with its State Court Lawsuit.  At most, B&C would be permitted to file a proof of claim which, if B&C were to succeed on the merits of its proof of claim, would afford it an "Other Unsecured Claim" under Class 14 of the Plan, and the right to a Pro Rata share of New B Notes and certain other distributions to the holders of Class 14 Claims described in the Plan. Under no scenario would B&C be permitted to commence or continue to prosecute the State Court Lawsuit in connection with its claims against the City alleged in the Complaint.

## IV.     Conclusion

33.     The City respectfully requests that this Court enter an order in substantially the same form as the one attached as Exhibit 1,  (a) granting the Motion; (b) requiring B&C to dismiss, or cause to be dismissed, with prejudice the State Court Lawsuit; (c) requiring B&C to withdraw the Lis Pendens filed by it with respect to the Property; and (d) permanently barring, estopping and enjoining B&C from asserting any claims described in the State Court Lawsuit, or the alleged conduct forming the basis of the State Court Lawsuit, against the City or property of the City.  The City sought, but did not obtain, concurrence to the relief sought in the Motion.

---

[2] B&C's failure to timely file a proof of claim by the General Bar Date is an additional reason why B&C should be enjoined from continuing, and required to dismiss with prejudice, his claims against the City and its property.  However, it is not necessary for the Court to decide any bar date issues or address the Motion on that basis.  It is maintained as an alternative basis for granting the relief in the Motion.  As described in paragraph 32, even if B&C had filed a timely proof of claim and that proof of claim were Allowed under the Plan, B&C's sole right in connection with that claim would have been the right to receive distributions under the Plan on account of its Class 14 Claim (Other Unsecured Claim).  There is no set of circumstances under which B&C is or would have been permitted to commence and prosecute the State Court Lawsuit.

July 27, 2015                          Respectfully submitted,

                                       By: /s/ Marc N. Swanson
                                           Jonathan S. Green (P33140)
                                           Marc N. Swanson (P71149)
                                           MILLER, CANFIELD, PADDOCK AND
                                           STONE, P.L.C.
                                           150 West Jefferson, Suite 2500
                                           Detroit, Michigan 48226
                                           Telephone: (313) 496-7591
                                           Facsimile: (313) 496-8451
                                           green@millercanfield.com
                                           swansonm@millercanfield.com

                                           Charles N. Raimi (P29746)
                                           Deputy Corporation Counsel
                                           City of Detroit Law Department
                                           2 Woodward Avenue, Suite 500
                                           Coleman A. Young Municipal Center
                                           Detroit, Michigan  48226
                                           Telephone: (313) 237-5037
                                           Facsimile: (313) 224-5505
                                           raimic@detroitmi.gov


                                       ATTORNEYS FOR THE CITY OF DETROIT

# EXHIBIT LIST

Exhibit 1       Proposed Order

Exhibit 2       Notice

Exhibit 3       None

Exhibit 4       Certificate of Service

Exhibit 5       None

Exhibit 6A     Complaint

Exhibit 6B     July 1 Correspondence

Exhibit 6C     Answer

Exhibit 6D     May 2012 Public Statement

Exhibit 6E     True Copy Certificate of Resolution Approving Waterfront Offer to Purchase

Exhibit 6F     Waterfront Offer to Purchase

Exhibit 6G     Escrow Agreement

Exhibit 6H     True Copy Certificate of Resolution Approving Revere Dock Offer to Purchase

Exhibit 6I     Revere Dock Offer to Purchase

# EXHIBIT 1 – PROPOSED ORDER

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## [PROPOSED] ORDER GRANTING CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS

This matter, having come before the court on the City of Detroit's Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens ("Motion"), upon proper notice and a hearing, the Court being fully advised in the premises, and there being good cause to grant the relief requested,

**THE COURT ORDERS THAT:**

1.      The Motion is granted.

2.      Within five days of the entry of this Order, B&C Land Development Corporation shall dismiss, or cause to be dismissed, with prejudice, Case No 15-008602 filed with Wayne County Circuit Court, Michigan and captioned *B&C Land Development Corporation vs. The City of Detroit, A Municipal Corporation* ("State Court Lawsuit").

3.      Within five days of the entry of this Order, B&C Land Development Corporation shall withdraw from the Wayne County Register of Deeds the Notice of Lis Pendens filed by it with respect to the property described in paragraphs 7 and 8 of this Order.

4. If B&C Land Development Corporation fails to timely withdraw the Notice of Lis Pendens as required by paragraph 3 of this Order, the City may file a copy of this Order with the Wayne County Register of Deeds which shall operate as a withdrawal of the Lis Pendens with respect to the property described in paragraphs 7 and 8 of this Order.

5. B&C Land Development Corporation is permanently barred, estopped and enjoined from asserting any claims described in the State Court Lawsuit, or the alleged conduct forming the basis of the State Court Lawsuit, against the City of Detroit or property of the City of Detroit, in the State Court Lawsuit or in any other action or proceeding.

6. The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

[continued on following page]

7.

LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING DESCRIBED AS LOTS 1187 THROUGH 1206 BOTH INCLUSIVE, ALL BEING TOGETHER WITH THE ADJACENT VACATED PUBLIC ALLEY (20 FEET WIDE) AND THE ADJACENT VACATED CAMPBELL AVENUE (66 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO PRIVATE CLAIM NO. 39 EXCEPT THE EASTERLY 574.00 FEET THEREOF LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE, EXCEPT A TRIANGULAR PORTION THEREOF DEFINED AS THE SOUTH 338.25 FEET ON THE WEST LINE OF PRIVATE CLAIM NO. 39 AND THE WEST 157.00 FEET ON THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1187 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE N.61°37'43"E. 578.36 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON AVENUE (80 FEET WIDE) TO A POINT BEING THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E. 1180.06 FEET ALONG A LINE 574.00 FEET WEST OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE; THENCE S.34°06'08"W. 494.78 FEET ALONG SAID DETROIT RIVER U.S. HARBOR LINE; THENCE N.55°47'32"W. 299.32 FEET TO A POINT ON THE WEST LINE OF PRIVATE CLAIM NO. 39; THENCE N.28°08'13"W. 1143.03 FEET ALONG SAID WEST LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF BEGINNING; SAID PARCEL CONTAINING 17.1009 ACRES, MORE OR LESS AND BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: _Basil Sarin_ DATE: _4/28/2015_

Street Address[es]:

Property Tax Ward & Item numbers:

[continued on following page]

8.

## LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING DESCRIBED AS LOTS 1207 THROUGH 1214 BOTH INCLUSIVE, LOT 1215 EXCEPT THE EASTERLY 6.36 FEET THEREOF, ALL BEING TOGETHER WITH THE ADJACENT VACATED PUBLIC ALLEY (20 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO THE WESTERLY 213.64 FEET OF THE EASTERLY 574.00 FEET OF PRIVATE CLAIM NO. 39 LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE N.61°37'43"E. 213.64 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON AVENUE (80 FEET WIDE) TO A POINT BEING 6.36 FEET WESTERLY FROM THE NORTHEAST CORNER OF LOT 1215 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E. 1068.40 FEET ALONG A LINE 360.36 FEET WEST OF THE EASTERLY LINE OF SAID PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE; THENCE S.34°06'08"W. 241.60 FEET ALONG SAID DETROIT RIVER U.S. HARBOR LINE; THENCE N.28°03'35"W. 1180.06 FEET ALONG A LINE 574.00 FEET WEST OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF BEGINNING; SAID PARCEL CONTAINING 5.5137 ACRES, MORE OR LESS AND BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: Basil Sarin DATE: 4/28/2015

Street Address[es]:

Property Tax Ward & Item numbers:

EXHIBIT 2 – NOTICE

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**NOTICE OF OPPORTUNITY TO RESPOND TO CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS**

The City of Detroit has filed its Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney.**

If you do not want the Court to enter an Order granting the City of Detroit's Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens, within 14 days, you or your attorney must:

1. File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above.  You must also mail a copy to:

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2.  If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Dated:  July 27, 2015

**EXHIBIT 3 – NONE**

**EXHIBIT 4 – CERTIFICATE OF SERVICE**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 27, 2015 the foregoing City of Detroit's Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens was filed and served via the Court's electronic case filing and notice system and served upon counsel as listed below, via first class mail and electronic mail:

Horace D. Cotton
P.O. Box 19520
Detroit, MI 48219
hdcotton@yahoo.com

DATED: July 27, 2015

By: /s/ Marc N. Swanson
　　Marc N. Swanson
　　150 West Jefferson, Suite 2500
　　Detroit, Michigan 48226
　　Telephone: (313) 496-7591
　　Facsimile: (313) 496-8451
　　swansonm@millercanfield.com

24838841.2\022765-00202

13-53846-tjt   Doc 10081-2   Filed 09/21/15   Entered 09/21/15 13:31:21   Page 26 of 92
13-53846-tjt   Doc 10087   Filed 07/27/15   Entered 07/27/15 13:43:16   Page 21 of 206

26

**EXHIBIT 5 – NONE**

# EXHIBIT 6A – COMPLAINT

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS AND COMPLAINT | CASE NO.<br>15-008602-CH<br>Hon. Annette J. Berry |
|---|---|---|

2 Woodward Ave., Detroit MI 48226          Court Telephone No. 313-224-4679

| **Plaintiff**<br><br>B & C Land Development Corporation | v | **Defendant**<br><br>City of Detroit |
|---|---|---|
| **Plaintiff's Attorney**<br><br>Horace D. Cotton, P-33268<br>PO Box 19520<br>Detroit, MI 48219-0520 | | **Defendant's Attorney**<br><br>*H₀*<br>*GP* |

RECEIVED
CITY OF DETROIT LAW DEPT
2015 JUN 31 PM 2: ...

**SUMMONS**  **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).  (MCR 2.111[C]).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>7/ 1/2015 | This summons expires<br>9/30/2015 | Court clerk<br>File & Serve Tyler |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.  This document must be sealed by the seal of the court.

**COMPLAINT**  *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff.  Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action  ☐ remains  ☐ is no longer  pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**

☐ There is no other pending or resolved civil action arise out of the same transaction or occurrence as alleged in the complaint.

☐ An civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action  ☐ remains  ☐ is no longer  pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Place where action arose or business conducted | |

_____          _____
Date                                             Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.



MC 01 (5/15) SUMMONS AND COMPLAINT MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

## STATE OF MICHIGAN
## IN THE THIRD JUDICIAL CIRCUIT COURT

B&C Land Development Corporation,
A Michigan Corporation,

        Plaintiff,

-vs-

                                               CI#5-008602-CH

The City of Detroit, a Municipal Corporation,

        Defendant.

FILED IN MY OFFICE
WAYNE COUNTY CLERK
7/1/2015 7:53:55 AM
CATHY M. GARRETT

_____/

Horace D. Cotton (P33268)
Attorney for Plaintiff
P.O. Box 19520
Detroit, MI 48219
(313) 595-1517
hdcotton@yahoo.com
_____/

## VERIFIED COMPLAINT AND JURY DEMAND

     NOW COMES Plaintiff, B&C Land Development Corporation, by and through its attorney, Horace D. Cotton, and for its Complaint states:

## PARTIES

1. Plaintiff B&C Land Development Corporation, ("B&C") is a Michigan corporation with its principal place of business in Wayne County, Michigan.

1

2. Defendant City of Detroit is a municipal corporation duly organized under the laws of the State of Michigan and is located in Wayne County, State of Michigan.

3. The amount in controversy exceeds $25,000 and is otherwise within the jurisdiction of this Court.

4. The acts complained of in this Complaint occurred in Wayne County, Michigan.

**COUNT I**
**BREACH OF CONTRACT**

5. On or about February 27, 2004  B&C Land Development Corporation submitted a proposal to the City of Detroit Department Planning (Planning and Development.) to develop the 28.665 acre parcel of land located at 5601, 5815, and 5861 W. Jefferson Ave., commonly known as Revere Copper & Brass.

6. Mr. Robert Carmack, the President of B&C, was informed by Mr. Alan Hayner, Project Manager for the property with Detroit's Planning and Development Department , that he would have to go to the Detroit Water and Sewerage Department ("DWSD") to get their

approval because they intended to build a Combined Sewer Overflow (CSO) system on that location.

7. On March 10, 2004 Mr. Carmack met with Victor Mercado, Director of DWSD and was told he could move forward with the project and that DWSD had no problem and no objections to putting the anticipated CSO on a different piece of property.

8. On March 29, 2004: Mr. Carmack received a letter from Mr. Hayner at Planning and Development advising him to prepare a proposal which was to include drawings, footprints, elevations, costs, financing, development team, construction of seawall, environmental costs and additional hard and soft costs.

9. On April 14, 2004: Mr. Hayner advised Mr. Carmack to bring in all documents to Planning Development by June 18, 2004 and they would reserve the property and not accept any new offers.

10. On February 24, 2005 Mr. Carmack was instructed by Mr. Hayner to conduct a Phase I and Phase II environmental study on the property which he subsequently initiated and completed.

11. After conducting negotiations regarding the purchase of the property, on March 28, 2006 Mr. Carmack was presented with an

3

offer of sale for $500,000.00 by Mr. Christopher Raschke, the new
Project Manager (replacing Alan Hayner) with the Planning and
Development Department.

12.　April 14, 2006: Mr. Carmack signed the offer to purchase and
gave a deposit of $50,000.00 by check to the Project Manager, Mr.
Christopher Raschke, who signed the offer and accepted the
deposit on behalf of the City of Detroit. (Exhibit 1)

13.　Between April 14, 2005 and May 21, 2008 the sale and transfer of
property stalled as Detroit Mayor Kwame Kilpatrick and his
administration became embroiled in scandal and controversy.

14.　During that period, Mr. Carmack was solicited to make a
$50,000.00 bribe by a high ranking city official.  When he refused
his development proposal was placed on the back burner and
eventually killed altogether.

15.　On May 21, 2008 the Kilpatrick Administration presented a new
document to City Council seeking approval of a sale of the
property from the City of Detroit to DWSD. City Council, without
benefit of the history of this property and pending sale to B&C

4

approved the sale for $5,000.000.00 to DWSD with no appraisal or due diligence.

16. When City Council approved the sale and contrary to previous statements and documentation, Mr. Carmack was informed that DWSD needed it for the CSO program and Right-of-Way. However there is no CSO either planned or actually being built on this property and the Right-of-Way has been in the possession of DWSD since 1936.

17. On January 2010: Mr. Carmack brought this issue to the attention of Mr. Al Fields, Executive Director in the new Bing Administration in Detroit.

18. On May 25, 2011: The new DWSD Director, Sue McCormick {replacing Victor Mercado}, stated that they would be building a CSO on the property. There is no evidence to indicate this is a true statement. In fact, evidence points to the contrary.

19. On February 21, 2012 New Bing Administration Executive Director Karla Henderson (replacing Al Fields) initiated the transfer of the property to DWSD advising Mr. Carmack that a CSO was being built.

20. On February 5, 2013 the Detroit City Council by resolution transferred jurisdiction over the property from the Detroit Water and Sewerage Department back to the Planning and Development Department because of a failure of consideration.

21. On August 6, 2013 Detroit agreed to sell 7 acres of the property to Waterfront Terminal Holdings, II LLC.

22. On June 30, 2031 Detroit agreed to sell the remaining 21.665 acres to Waterfront Terminal Holdings II, LLC and Steven W. Erickson.

<div align="center">

**COUNT II**
**INJUNCTIVE RELIEF/SPECIFIC PERFORMANCE**

</div>

23. By this action, B&C seeks declaratory and injunctive relief requiring Detroit to perform under the terms of the Purchase Agreement. Injunctive relief is appropriate.

24. Finally, B&C seeks specific performance of the Purchase Agreement requiring Detroit to convey the Revere Copper property to B&C. Detroit has impaired B&C's contractual rights by improperly agreeing to sell and convey the property to the Detroit

Water and Sewage Department, thereby destroying its own
agreement.

25.     Plaintiff adopts and incorporates by reference all prior
paragraphs as though fully set forth herein.

26.     Detroit breached its obligations under the Purchase Agreement
by failing and refusing to cooperate and negotiate in good faith.
Specifically, Detroit has violated the Purchase Agreement by,
among other things: (1) failing and refusing to present B&C with
a Development Agreement; (2) failing and refusing to present
the development proposal to City Council for final approval; (3)
conveying the property to the Detroit Water and Sewage
Department after the property was under contract to B&C; (4)
conveying and agreeing to convey the property to Waterfront
Terminal Holdings II, LLC and Steven W. Erickson.

27.     B&C fully cooperated with Detroit in pursuit of the Purchase
Agreement by expended substantial resources and time in
conducting due diligence and preparing a complete
development proposal.

28.     B&C is entitled to mandatory injunctive relief requiring Detroit to
perform under the Purchase Agreement.

7

29.  B&C is entitled to a mandatory injunction and/or specific performance of the Purchase Agreement.

## COUNT III
## DECLARATORY RELIEF

30.  Detroit breached the terms of the Purchase Agreement B&C

seeks specific performance of the Purchase Agreement, including, but not limited to, an order requiring Detroit to convey the property to B&C.

31.  B&C repeats and realleges each and every foregoing and subsequent allegation contained in the Complaint as though fully set forth herein.

32.  Detroit has prevented B&C's performance under the Purchase Agreement. B&C has satisfied all other conditions precedent to conveyance of the property except as excused by Detroit's breach.

33.  An actual controversy has arisen and now exists between B&C and Defendants concerning their respective rights and duties.

34.  B&C requests a judicial determination of the parties' rights and duties as set forth herein. A judicial declaration is necessary and

8

appropriate in order that the parties may ascertain their respective rights, duties and obligations.

35. Specifically, B&C requests a declaration that Detroit breached the Purchase Agreement by conveying the property to DWSD and repudiating the Purchase Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, B&C Land Development Corporation respectfully request the following relief:

1. For specific performance and declaratory relief as specified below.

2. For a declaration that the vote to convey the property to DWSD was improper and unconstitutional; and that the vote be declared null and void and set aside.

3. For specific performance, including an order requiring Detroit to convey the property to B&C.

4. For declaratory relief, including a declaration that Detroit breached the Purchase Agreement.

9

5. For a declaration that the votes to convey the property to DWSD, Waterfront Terminal Holdings II, LLC And Steven W. Erickson were improper and unconstitutional; and that the votes be declared null and void and set aside.

6. For compensatory damages in an amount not less than $25,000 to be determined by the jury.

7.     For attorneys' fees and costs of suit.

8. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, by and through undersigned counsel, and hereby requests that all issues in this Verified Complaint be tried by jury.

DATED: June 30, 2015

/s/ Horace D. Cotton (P33268)
Attorney for Plaintiff
P.O. Box 19520
Detroit, MI 48219
(313) 595-1517
hdcotton@yahoo.com

CITY OF DETROIT
PLANNING & DEVELOPMENT DEPARTMENT

March 28, 2006

Mr. Robert Carmack
B&C Land Development
8711 Michigan
Detroit, MI 48210

RE:  **Property For Sale By Development Agreement**
     **Development: 5601, 5815 & 5861 W. Jefferson**
            **(Former Revere Copper & Brass Site)**

Dear Mr. Carmack:

Your Offer to Purchase the above-captioned property has been reviewed and as a result a price adjustment has been determined. Accordingly, the established price for this property has been set at Five Hundred Thousand and 00/100 Dollars ($500,000.00). We hope that this adjustment in the sales price will allow you to go forward with your proposed development.

This offer supersedes any previous offer and this opportunity will expire if it is not executed on or before April 14, 2006. Please note that all city owned property is sold on an "AS IS" basis. However, if you desire to make an environmental survey of the site prior to title transfer, you may request a Right of Entry to do so.

Prospective purchasers are hereby notified that the Planning and Development Department has not investigated the environmental condition of any of the properties included in this Offer. Various federal, state or other City agencies may have information regarding the environmental condition of one or more of the properties on this list. Each purchaser is encouraged to conduct its own due diligence regarding the environmental condition of the property which that purchaser proposes to acquire and is notified that the property may be the subject of environmental contamination. The City of Detroit makes absolutely no warranty or representation regarding the environmental condition of any property offered for sale.

I.    **Pursuant to your request, we are enclosing the following items:**

   1.   A map of the area and legal description of the property.

   2.   Two copies of an Offer to Purchase. Please complete and sign both copies making certain that your telephone number is correct and that your name(s) appear(s) exactly as it should be shown on the Deed.



Mr. Robert Carmack
March 28, 2006
Page 2

3. Two (2) copies of an Offeror's Statement of Qualifications which must be completed and included as part of formal purchase offer submittal.

4. A copy of the Standard Procedure for the Purchase of Surplus Property under Development Agreement. This form explains what constitutes a formal purchase offer.

When property is sold for development purposes, standard City procedure requires that a formal Offer to Purchase be made before our Department can request authorization to proceed with a sale.

II. **A formal offer to purchase and develop the captioned property must include all of the following information and all of it must be submitted at the same time. If your response does not address each of the items listed below, your entire package will be returned to you.**

A. A narrative statement describing the character and size of the development proposed along with preliminary site plans and/or elevation drawings at an appropriate scale to illustrate as clearly as possible the nature of the development.

B. A statement of financial resources available to the developer for the proposed development. This should include the amount and source of developer's equity capital and other financing which provides sufficient financial information to establish the approximate net worth and/or liquid assets available to the developer for the proposed development.

Along with the following:

1. A copy of the Developer's Articles of Incorporation, if applicable, so that the appropriate name will be used during the approval process and ultimately appear on the Deed at the Closing of the land sale.

2. Two (2) completed copies of the Offer to Purchase.

3. Three (3) copies of your **site plans, floor plans and elevation drawings**.

4. Two (2) completed Offeror's Statement of Qualifications.

KWAME M. KILPATRICK, MAYOR

13-53846-tjt   Doc 10084-2   Filed 07/27/15   Entered 07/27/15 13:43:21   Page 64 of 92
206
41



Mr. Robert Carmack
March 28, 2006
Page 3

5. A cashier's or certified check payable to "Treasurer, City of Detroit" in the amount of Fifty Thousand and 00/100 Dollars ($50,000.00) to serve as a "Good Faith" deposit. This deposit will be held by the City until the purchaser has completed the improvements as set forth in the site plan.

15-008602-CH
FILED IN MY OFFICE
WAYNE COUNTY CLERK
7/1/2015 7:53:55 AM
CATHY M. GARRETT

Upon receipt of the above, we shall review your proposed development package. If acceptable, we shall follow our Standard Procedure for sale of Surplus Property by Development Agreement to obtain City Council authorization to execute an Agreement to purchase and develop the property.

If you have any questions, please feel free to call **Christopher Raschke** at (313)224-6519 of the Development Division. **Your response to this Offer to Purchase should be mailed to:**

**Christopher Raschke**
**Planning & Development Dept.**
**65 Cadillac Square, Suite 2000**
**Detroit, MI 48226**

Sincerely,

Chidi Nyeche, Manager II
Planning & Development Department

CBN/CR/cdc

Enclosures

cc: A. Bradby
J. Marusich

KWAME M. KILPATRICK, MAYOR

## OFFER TO PURCHASE

(Expires if not executed on or before _____ April 14, 2006 _____)

(I, We), **B & C Land Development Corporation**

_____ hereby offer to purchase the property

known as  5601, 5815 & 5861 W. Jefferson (Former Revere Copper & Brass Site)

_____ for the price of $ 500,000.00 _____, subject to the

Development Agreement for the aforementioned property. (I, We)

plan to improve and use the property in the following manner:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Enclosed is a check or money order, payable to "Treasurer, City

of Detroit", in the amount of $ _____ 50,000.00 _____ which represents a

"Good Faith" Deposit which will be held by the City until the

development has been satisfactorily completed.

_4/14/06_
Date

Signed _Christopher Reue_

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Enclosed is a check or money order, payable to "Treasurer City of Detroit" in the amount of $ 50,000.00 which represents a "Good Faith" Deposit which will be held by the City until the development has been satisfactorily completed.

_____4·-16_____  Signed _____
        Date

                                    Date_____

                                    Telephone_____

_____4/14/06_____  Signed _____
        Date

                                    Date_____

                                    Telephone_____

B&C Land Development Corporation,
A Michigan Corporation,

        Plaintiff,

-vs-                              15-008602CH
                                   Hon. Annette J. Berry

The City of Detroit, a Municipal Corporation,

        Defendant.

_____/

Horace D. Cotton (P33268)
Attorney for Plaintiff
P.O. Box 19520
Detroit, MI 48219
(313) 595-1517
hdcotton@yahoo.com

_____/

## **NOTICE OF LIS PENDENS**

NOTICE IS HEREBY GIVEN that the above-entitled action concerning and affecting real property as described herein was commenced on June 30, 2015 in the above-named court by Plaintiff B & C Land Development Corporation against Defendant the City of Detroit. The action is now pending in the above-named court.

The action affects the title of real property commonly known as:

5601, 5815 & 5851 W. Jefferson

War 16, Items 000006.001, 000006.002L &000008-9

And more particularly described as:

Land in the City of Detroit, County of Wayne and State of Michigan being part of Private Claim 39, also known as the Walter Crane Farm in the area formerly known as Springwells Township, and being more particularly described as follows:

All of that part of Private Claim 39 bounded on the North by the South line of West Jefferson Avenue, 80 feet wide; bounded on the West by the West line of Private Claim 39, which is common to the East line of Private Claim 39; and bounded on the South by the United States Harbor line as defined by the "Harbor Lines of Detroit and Vicinity Established by the Secretary of War, September 23, 1982:, as recorded in Liber 20, Pages 75 to 87, Wayne County Records, except for a triangular portion of said tract of land which is defined as being the South 338.25 feet on the West line of Private Claim 39 and the West 157 feet on the U.S. Harbor line of said tract of land.

This herein described tract of land is subject to a 30 feet Right of Way for a Sewer Easement that was granted to the City of Detroit on January 20, 1857 and recorded in Liber 289, Page 578 on February 9, 1883 and any other easements affecting the land. Said tract of land includes property formerly owned by the "Revere Copper Products Incorporated" which was deeded to the City of Detroit by Warranty Deed and recorded in Liber 23247, Pages 685 and 686, Wayne County Records, which was described as follows:

Parcel # 1:    Lots 1187 through 1200 inclusive and the Westerly 23 feet of Lot 1202 of the Sixth Plat of WALTER CRANE FARM, P.C. 39, together with the adjoining vacated alley located at the rear of said lots, according to the Plat thereof as recorded in Liber 20, Page 55 plats, Wayne County Records.

Parcel # 2:   Lots 1206 through 1215 inclusive of the Sixth Plat of WALTER CRANE FARM,, P.C. 39, together with the adjoining vacated alley located at the rear of said lots, according to the Plat thereof as recorded in Liber 20, Page 55 of plats, Wayne County Records, Campbell Avenue lying Southerly of the Southerly line of Jefferson Avenue West and Westerly of the above described premises also Lots 1 through 10, inclusive of Block 22, REEDER, JEROME AND DUFFIELDS SUBDIVISION, together with the adjoining vacated alley Southerly of said premises as recorded in Liber 7, Page 29 of plats, Wayne County Records, excepting that part of Lot 10 and the vacated alley deeded to the City of Detroit, Wayne County Records.

Parcel # 3:   The Westerly 385.36 feet in width of that part of Private Claim 39 South of Jefferson Avenue, excepting the Northerly 145 feet thereof as platted in the plat recorded in Liber 20, Page 55 of plats, Wayne County Register of Deeds records: together with accretions and additions thereof extending to the Detroit River and to the Harbor Line.

Parcel # 4:       Beginning at a point South 28° 8 minutes East 202.75 feet from a point in the Southerly line of said West Jefferson Avenue 97.52 feet distant on a course South 61° 52 minutes West from the intersection of the Southerly line of West Jefferson Avenue with the Westerly line of vacated, Campbell Avenue; running thence from said point of beginning North 61° 52 minutes East 71.40 feet to a point; thence North 27° 49 minutes West 57.75 feet to a point; thence 61 °52 minutes East 604.68 feet to a point; thence South 27 ° 50 minutes East 759. 52 feet to the United States harbor line, thence South 34 degrees 3 minutes West along said United States Harbor line 635.59 feet to a point in the Easterly line or Parcel # 3 above; thence North 55 degrees 57 minutes West 302.57 feet along the Easterly line of Parcel # 3 above to a point which is the apex of an angle formed by the change of the courses of the Westerly boundary of the premises herein described in an Easterly direction; thence continuing along said Easterly line of Parcel # 3 above North 28 degrees 3

3

minutes West 730.73 feet to a point; thence North 61 degrees 52 minutes East 29.64 feet to the point of beginning, including all vacated streets and alleys lying within the boundaries of said premises above described, and together with all riparian rights thereunto belonging.

Horace D. Cotton (P33286)
Attorney for Plaintiff
P.O. Box 19520
Detroit, MI 48219
(313) 595-1517

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS AND COMPLAINT | CASE NO.<br>15-008602-CH<br>Hon. Annette J. Berry |
|---|---|---|

2 Woodward Ave., Detroit MI 48226        Court Telephone No. 313-224-4679

| Plaintiff<br>B & C Land Development Corporation | v | Defendant<br>City of Detroit |
|---|---|---|
| Plaintiff's Attorney<br><br>Horace D. Cotton, P-33268<br>PO Box 19520<br>Detroit, MI 48219-0520 | | Defendant's Attorney |

*(stamped text, handwritten:)* HD   GP

*(vertical stamp:)* CITY OF DETROIT RECEIVED 2015 JUN 31 PM 2:1... LAW DEPT

**SUMMONS**   **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons **to file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C]).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>7/1/2015 | This summons expires<br>9/30/2015 | Court clerk<br>File & Serve Tyler |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**

☐ There is no other pending or resolved civil action arise out of the same transaction or occurrence as alleged in the complaint.

☐ An civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Place where action arose or business conducted | |

_____    _____

Date        Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.



MC 01 (5/15) SUMMONS AND COMPLAINT MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

# EXHIBIT 6B – JULY 1 CORRESPONDENCE

**Swanson, Marc N.**

| | |
|---|---|
| **From:** | James Noseda <NoseJ@detroitmi.gov> |
| **Sent:** | Wednesday, July 1, 2015 4:21 PM |
| **To:** | HDCOTTON@YAHOO.COM |
| **Cc:** | Charles Raimi; Swanson, Marc N. |
| **Subject:** | B & C Land Development Corporation v City of Detroit, 15-008602-CH |
| **Attachments:** | B&C Land Develop..pdf; Bankruptcy.Notice.pdf |

Mr. Cotton:

You filed the attached lawsuit which seeks to enforce an alleged 2006 offer to purchase property from the City of Detroit.

The City Council never approved any such transaction, so no contract exists as a matter of law (and also by the very terms of the offer made by your client).

Also, the statute of limitations on a contract or any other claim has come and gone.

More importantly, your client did not file a claim in the City's bankruptcy. The deadline for filing a claim was February 24, 2014. Notice was given to all with known claims against the City, and to all others by means of multiple publications approved by the bankruptcy court.

The filing of the lawsuit, and any continuation of the lawsuit, violates the discharge injunction contained in the "Eight Amended Plan For the Adjustment of Debts of the City of Detroit" approved by the bankruptcy court on November 12, 2014 in Case No. 13-53846. See the attached Notice which contains a summary of the discharge and injunction.

Demand is made that you voluntarily dismiss the lawsuit by July 8, 2015, and send me a copy of the dismissal order.

In the event that the lawsuit is not dismissed, I have copied this e-mail to our bankruptcy counsel, Marc Swanson, and ask that he file a motion with the bankruptcy court to enforce the injunction and seek costs and sanctions as appropriate.

/s/ James D. Noseda
Supervising Assistant Corporation Counsel
City of Detroit Law Department
Coleman A. Young Municipal Building
2 Woodward Ave., 5th Floor
Detroit, Michigan 48226
Dir. Tel. 313-237-3057
Gen. Tel. 313-224-4550
Fax: 313-224-5505
nosej@detroitmi.gov

WARNING: This communication may include information protected by the attorney-client privilege, the attorney work product doctrine, the deliberative process privilege, or by other privilege. This communication is intended solely for the individual or entity to whom it is addressed. If you are not the intended recipient, use of the communication is neither allowed nor intended. If you received this e-mail in error, please securely delete it.

1

<table>
<tr>
<td colspan="2"><strong>STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY</strong></td>
<td><strong>SUMMONS AND COMPLAINT</strong></td>
<td><strong>CASE NO.</strong><br>15-008602-CH<br>Hon. Annette J. Berry</td>
</tr>
</table>

2 Woodward Ave., Detroit MI 48226

Court Telephone No. 313-224-4679

| Plaintiff<br><br>B & C Land Development Corporation | v | Defendant<br><br>City of Detroit |
|---|---|---|
| Plaintiff's Attorney<br><br>Horace D. Cotton, P-33268<br>PO Box 19520<br>Detroit, MI 48219-0520 | | Defendant's Attorney<br><br>H/O |

CITY OF DETROIT LAW DEPT<br>RECEIVED<br>2015 JUN 31 PM 2: 11

**SUMMONS** **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C]).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>7/1/2015 | This summons expires<br>9/30/2015 | Court clerk<br>File & Serve Tyler |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**

☐ There is no other pending or resolved civil action arise out of the same transaction or occurrence as alleged in the complaint.

☐ An civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint have been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Place where action arose or business conducted | |

_____    _____
Date                        Signature of attorney/plaintiff



If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (5/15) SUMMONS AND COMPLAINT MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

## STATE OF MICHIGAN
## IN THE THIRD JUDICIAL CIRCUIT COURT

B&C Land Development Corporation,
A Michigan Corporation,

        Plaintiff,

-vs-

Case No. 15-008602-CH
FILED IN MY OFFICE
WAYNE COUNTY CLERK
7/1/2015 7:53:55 AM
CATHY M. GARRETT

The City of Detroit, a Municipal Corporation,

        Defendant.

_____/

Horace D. Cotton (P33268)
Attorney for Plaintiff
P.O. Box 19520
Detroit, MI 48219
(313) 595-1517
hdcotton@yahoo.com

_____/

## VERIFIED COMPLAINT AND JURY DEMAND

    NOW COMES Plaintiff, B&C Land Development Corporation, by and through its attorney, Horace D. Cotton, and for its Complaint states:

## PARTIES

1. Plaintiff B&C Land Development Corporation, ("B&C") is a Michigan corporation with its principal place of business in Wayne County, Michigan.

2. Defendant City of Detroit is a municipal corporation duly organized under the laws of the State of Michigan and is located in Wayne County, State of Michigan.

3. The amount in controversy exceeds $25,000 and is otherwise within the jurisdiction of this Court.

4. The acts complained of in this Complaint occurred in Wayne County, Michigan.

## COUNT I
## BREACH OF CONTRACT

5. On or about February 27, 2004  B&C Land Development Corporation submitted a proposal to the City of Detroit Department Planning (Planning and Development.) to develop the 28.665 acre parcel of land located at 5601, 5815, and 5861 W. Jefferson Ave., commonly known as Revere Copper & Brass.

6. Mr. Robert Carmack, the President of B&C, was informed by Mr. Alan Hayner, Project Manager for the property with Detroit's Planning and Development Department , that he would have to go to the Detroit Water and Sewerage Department ("DWSD") to get their

approval because they intended to build a Combined Sewer Overflow (CSO) system on that location.

7. On March 10, 2004 Mr. Carmack met with Victor Mercado, Director of DWSD and was told he could move forward with the project and that DWSD had no problem and no objections to putting the anticipated CSO on a different piece of property.

8. On March 29, 2004: Mr. Carmack received a letter from Mr. Hayner at Planning and Development advising him to prepare a proposal which was to include drawings, footprints, elevations, costs, financing, development team, construction of seawall, environmental costs and additional hard and soft costs.

9. On April 14, 2004: Mr. Hayner advised Mr. Carmack to bring in all documents to Planning Development by June 18, 2004 and they would reserve the property and not accept any new offers.

10. On February 24, 2005 Mr. Carmack was instructed by Mr. Hayner to conduct a Phase I and Phase II environmental study on the property which he subsequently initiated and completed.

11. After conducting negotiations regarding the purchase of the property, on March 28, 2006 Mr. Carmack was presented with an

3

offer of sale for $500,000.00 by Mr. Christopher Raschke, the new Project Manager (replacing Alan Hayner) with the Planning and Development Department.

12. April 14, 2006: Mr. Carmack signed the offer to purchase and gave a deposit of $50,000.00 by check to the Project Manager, Mr. Christopher Raschke, who signed the offer and accepted the deposit on behalf of the City of Detroit. (Exhibit 1)

13. Between April 14, 2005 and May 21, 2008 the sale and transfer of property stalled as Detroit Mayor Kwame Kilpatrick and his administration became embroiled in scandal and controversy.

14. During that period, Mr. Carmack was solicited to make a $50,000.00 bribe by a high ranking city official. When he refused his development proposal was placed on the back burner and eventually killed altogether.

15. On May 21, 2008 the Kilpatrick Administration presented a new document to City Council seeking approval of a sale of the property from the City of Detroit to DWSD. City Council, without benefit of the history of this property and pending sale to B&C

4

approved the sale for $5,000.000.00 to DWSD with no appraisal or due diligence.

16. When City Council approved the sale and contrary to previous statements and documentation, Mr. Carmack was informed that DWSD needed it for the CSO program and Right-of-Way. However there is no CSO either planned or actually being built on this property and the Right-of-Way has been in the possession of DWSD since 1936.

17. On January 2010: Mr. Carmack brought this issue to the attention of Mr. Al Fields, Executive Director in the new Bing Administration in Detroit.

18. On May 25, 2011: The new DWSD Director, Sue McCormick {replacing Victor Mercado}, stated that they would be building a CSO on the property. There is no evidence to indicate this is a true statement. In fact, evidence points to the contrary.

19. On February 21, 2012 New Bing Administration Executive Director Karla Henderson (replacing Al Fields) initiated the transfer of the property to DWSD advising Mr. Carmack that a CSO was being built.

20. On February 5, 2013 the Detroit City Council by resolution transferred jurisdiction over the property from the Detroit Water and Sewerage Department back to the Planning and Development Department because of a failure of consideration.

21. On August 6, 2013 Detroit agreed to sell 7 acres of the property to Waterfront Terminal Holdings, II LLC.

22. On June 30, 2031 Detroit agreed to sell the remaining 21.665 acres to Waterfront Terminal Holdings II, LLC and Steven W. Erickson.

## COUNT II
## INJUNCTIVE RELIEF/SPECIFIC PERFORMANCE

23. By this action, B&C seeks declaratory and injunctive relief requiring Detroit to perform under the terms of the Purchase Agreement. Injunctive relief is appropriate.

24. Finally, B&C seeks specific performance of the Purchase Agreement requiring Detroit to convey the Revere Copper property to B&C. Detroit has impaired B&C's contractual rights by improperly agreeing to sell and convey the property to the Detroit

6

Water and Sewage Department, thereby destroying its own agreement.

25. Plaintiff adopts and incorporates by reference all prior paragraphs as though fully set forth herein.

26. Detroit breached its obligations under the Purchase Agreement by failing and refusing to cooperate and negotiate in good faith. Specifically, Detroit has violated the Purchase Agreement by, among other things: (1) failing and refusing to present B&C with a Development Agreement; (2) failing and refusing to present the development proposal to City Council for final approval; (3) conveying the property to the Detroit Water and Sewage Department after the property was under contract to B&C; (4) conveying and agreeing to convey the property to Waterfront Terminal Holdings II, LLC and Steven W. Erickson.

27. B&C fully cooperated with Detroit in pursuit of the Purchase Agreement by expended substantial resources and time in conducting due diligence and preparing a complete development proposal.

28. B&C is entitled to mandatory injunctive relief requiring Detroit to perform under the Purchase Agreement.

7

29. B&C is entitled to a mandatory injunction and/or specific performance of the Purchase Agreement.

## COUNT III
## DECLARATORY RELIEF

30. Detroit breached the terms of the Purchase Agreement B&C

    seeks specific performance of the Purchase Agreement, including, but not limited to, an order requiring Detroit to convey the property to B&C.

31. B&C repeats and realleges each and every foregoing and subsequent allegation contained in the Complaint as though fully set forth herein.

32. Detroit has prevented B&C's performance under the Purchase Agreement. B&C has satisfied all other conditions precedent to conveyance of the property except as excused by Detroit's breach.

33. An actual controversy has arisen and now exists between B&C and Defendants concerning their respective rights and duties.

34. B&C requests a judicial determination of the parties' rights and duties as set forth herein. A judicial declaration is necessary and

appropriate in order that the parties may ascertain their respective rights, duties and obligations.

35.    Specifically, B&C requests a declaration that Detroit breached the Purchase Agreement by conveying the property to DWSD and repudiating the Purchase Agreement.

## PRAYER FOR RELIEF

WHEREFORE, B&C Land Development Corporation respectfully request the following relief:

1. For specific performance and declaratory relief as specified below.

2. For a declaration that the vote to convey the property to DWSD was improper and unconstitutional; and that the vote be declared null and void and set aside.

3. For specific performance, including an order requiring Detroit to convey the property to B&C.

4. For declaratory relief, including a declaration that Detroit breached the Purchase Agreement.

5. For a declaration that the votes to convey the property to DWSD, Waterfront Terminal Holdings II, LLC And Steven W. Erickson were improper and unconstitutional; and that the votes be declared null and void and set aside.

6. For compensatory damages in an amount not less than $25,000 to be determined by the jury.

7. For attorneys' fees and costs of suit.

8. For such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, by and through undersigned counsel, and hereby requests that all issues in this Verified Complaint be tried by jury.

DATED: June 30, 2015

*/s/ Horace D. Cotton* (P33268)
Attorney for Plaintiff
P.O. Box 19520
Detroit, MI 48219
(313) 595-1517
hdcotton@yahoo.com

CITY OF DETROIT
PLANNING & DEVELOPMENT DEPARTMENT

March 28, 2006

Mr. Robert Carmack
B&C Land Development
8711 Michigan
Detroit, MI 48210

RE:     **Property For Sale By Development Agreement**
        **Development: 5601, 5815 & 5861 W. Jefferson**
                    **(Former Revere Copper & Brass Site)**

Dear Mr. Carmack:

Your Offer to Purchase the above-captioned property has been reviewed and as a result a price adjustment has been determined. Accordingly, the established price for this property has been set at Five Hundred Thousand and 00/100 Dollars ($500,000.00). We hope that this adjustment in the sales price will allow you to go forward with your proposed development.

This offer supersedes any previous offer and this opportunity will expire if it is not executed on or before April 14, 2006. Please note that all city owned property is sold on an "AS IS" basis. However, if you desire to make an environmental survey of the site prior to title transfer, you may request a Right of Entry to do so.

Prospective purchasers are hereby notified that the Planning and Development Department has not investigated the environmental condition of any of the properties included in this Offer. Various federal, state or other City agencies may have information regarding the environmental condition of one or more of the properties on this list. Each purchaser is encouraged to conduct its own due diligence regarding the environmental condition of the property which that purchaser proposes to acquire and is notified that the property may be the subject of environmental contamination. The City of Detroit makes absolutely no warranty or representation regarding the environmental condition of any property offered for sale.

I.      **Pursuant to your request, we are enclosing the following items:**

        1.      A map of the area and legal description of the property.

        2.      Two copies of an Offer to Purchase. Please complete and sign both copies making certain that your telephone number is correct and that your name(s) appear(s) exactly as it should be shown on the Deed.

KWAME M. KILPATRICK, MAYOR



Mr. Robert Carmack
March 28, 2006
Page 2

   3.    Two (2) copies of an Offeror's Statement of Qualifications which must be completed and included as part of formal purchase offer submittal.

   4.    A copy of the Standard Procedure for the Purchase of Surplus Property under Development Agreement. This form explains what constitutes a formal purchase offer.

When property is sold for development purposes, standard City procedure requires that a formal Offer to Purchase be made before our Department can request authorization to proceed with a sale.

**II.    A formal offer to purchase and develop the captioned property must include all of the following information and <u>all</u> of it must be submitted at the <u>same time</u>. If your response does not address each of the items listed below, your entire package will be returned to you.**

   A.    A narrative statement describing the character and size of the development proposed along with preliminary site plans and/or elevation drawings at an appropriate scale to illustrate as clearly as possible the nature of the development.

   B.    A statement of financial resources available to the developer for the proposed development. This should include the amount and source of developer's equity capital and other financing which provides sufficient financial information to establish the approximate net worth and/or liquid assets available to the developer for the proposed development.

Along with the following:

   1. A copy of the Developer's Articles of Incorporation, if applicable, so that the appropriate name will be used during the approval process and ultimately appear on the Deed at the Closing of the land sale.

   2. Two (2) completed copies of the Offer to Purchase.

   3. Three (3) copies of your <u>site plans, floor plans and elevation drawings</u>.

   4. Two (2) completed Offeror's Statement of Qualifications.

KWAME M. KILPATRICK, MAYOR



Mr. Robert Carmack
March 28, 2006
Page 3

5.    A cashier's or certified check payable to "Treasurer, City of Detroit" in the amount of Fifty Thousand and 00/100 Dollars ($50,000.00) to serve as a "Good Faith" deposit. This deposit will be held by the City until the purchaser has completed the improvements as set forth in the site plan.

Upon receipt of the above, we shall review your proposed development package. If acceptable, we shall follow our Standard Procedure for sale of Surplus Property by Development Agreement to obtain City Council authorization to execute an Agreement to purchase and develop the property.

If you have any questions, please feel free to call **Christopher Raschke** at (313)224-6519 of the Development Division. **Your response to this Offer to Purchase should be mailed to:**

**Christopher Raschke**
**Planning & Development Dept.**
**65 Cadillac Square, Suite 2000**
**Detroit, MI 48226**

Sincerely,

Chidi Nyeche, Manager II
Planning & Development Department

CBN/CR/cdc

Enclosures

cc:    A. Bradby
       J. Marusich

KWAME M. KILPATRICK, MAYOR

13-58846-tjt    Doc 10091-2    Filed 09/21/15    Entered 09/21/15 13:31:21    Page 65 of 92
206
13-58846-tjt    Doc 10087    Filed 07/27/15    Entered 07/27/15 13:13:16    Page 66 of 91    65

## OFFER TO PURCHASE



(Expires if not executed on or before ___April 14, 2006___ )

(I, We), _B &C Land Development Corporation_

_____ hereby offer to purchase the property

known as ___5601, 5815 & 5861 W. Jefferson (Former Revere Copper & Brass Site)___

_____ for the price of $ _500,000.00_ , subject to the

Development Agreement for the aforementioned property.   (I, We)

plan to improve and use the property in the following manner:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Enclosed is a check or money order, payable to "Treasurer, City

of Detroit", in the amount of $___50,000.00___ which represents a

"Good Faith" Deposit which will be held by the City until the

development has been satisfactorily completed.

___4/14/06___
Date

Signed _Christole Pace_

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Enclosed is a check or money order, payable to "Treasurer City of Detroit" in the amount of $ __50,000.00__ which represents a "Good Faith" Deposit which will be held by the City until the development has been satisfactorily completed.

_____4 - 06_____
Date

Signed _____

Date _____

Telephone _____

_____4/14/06_____
Date

Signed _____

Date _____

Telephone _____

## STATE OF MICHIGAN
## IN THE THIRD JUDICIAL CIRCUIT COURT

B&C Land Development Corporation,
A Michigan Corporation,

        Plaintiff,

-vs-

                                   15-008602CH
                                   Hon. Annette J. Berry

The City of Detroit, a Municipal Corporation,

        Defendant.

_____/

Horace D. Cotton (P33268)
Attorney for Plaintiff
P.O. Box 19520
Detroit, MI 48219
(313) 595-1517
hdcotton@yahoo.com

_____/

## **NOTICE OF LIS PENDENS**

    NOTICE IS HEREBY GIVEN that the above-entitled action concerning and

affecting real property as described herein was commenced on June 30, 2015 in the above-

named court by Plaintiff B & C Land Development Corporation against Defendant the City

of Detroit. The action is now pending in the above-named court.

<div align="center">1</div>

The action affects the title of real property commonly known as:

5601, 5815 & 5851 W. Jefferson

War 16, Items 000006.001, 000006.002L &000008-9

And more particularly described as:

Land in the City of Detroit, County of Wayne and State of Michigan being part of Private Claim 39, also known as the Walter Crane Farm in the area formerly known as Springwells Township, and being more particularly described as follows:

All of that part of Private Claim 39 bounded on the North by the South line of West Jefferson Avenue, 80 feet wide; bounded on the West by the West line of Private Claim 39, which is common to the East line of Private Claim 39; and bounded on the South by the United States Harbor line as defined by the "Harbor Lines of Detroit and Vicinity Established by the Secretary of War, September 23, 1982:, as recorded in Liber 20, Pages 75 to 87, Wayne County Records, except for a triangular portion of said tract of land which is defined as being the South 338.25 feet on the West line of Private Claim 39 and the West 157 feet on the U.S. Harbor line of said tract of land.

This herein described tract of land is subject to a 30 feet Right of Way for a Sewer Easement that was granted to the City of Detroit on January 20, 1857 and recorded in Liber 289, Page 578 on February 9, 1883 and any other easements affecting the land. Said tract of land includes property formerly owned by the "Revere Copper Products Incorporated" which was deeded to the City of Detroit by Warranty Deed and recorded in Liber 23247, Pages 685 and 686, Wayne County Records, which was described as follows:

Parcel # 1:     Lots 1187 through 1200 inclusive and the Westerly 23 feet of Lot 1202 of the Sixth Plat of WALTER CRANE FARM, P.C. 39, together with the adjoining vacated alley located at the rear of said lots, according to the Plat thereof as recorded in Liber 20, Page 55 plats, Wayne County Records.

2

Parcel # 2:   Lots 1206 through 1215 inclusive of the Sixth Plat of WALTER CRANE FARM,, P.C. 39, together with the adjoining vacated alley located at the rear of said lots, according to the Plat thereof as recorded in Liber 20, Page 55 of plats, Wayne County Records, Campbell Avenue lying Southerly of the Southerly line of Jefferson Avenue West and Westerly of the above described premises also Lots 1 through 10, inclusive of Block 22, REEDER, JEROME AND DUFFIELDS SUBDIVISION, together with the adjoining vacated alley Southerly of said premises as recorded in Liber 7, Page 29 of plats, Wayne County Records, excepting that part of Lot 10 and the vacated alley deeded to the City of Detroit, Wayne County Records.

Parcel # 3:   The Westerly 385.36 feet in width of that part of Private Claim 39 South of Jefferson Avenue, excepting the Northerly 145 feet thereof as platted in the plat recorded in Liber 20, Page 55 of plats, Wayne County Register of Deeds records: together with accretions and additions thereof extending to the Detroit River and to the Harbor Line.

Parcel # 4:      Beginning at a point South 28° 8 minutes East 202.75 feet from a point in the Southerly line of said West Jefferson Avenue 97.52 feet distant on a course South 61° 52 minutes West from the intersection of the Southerly line of West Jefferson Avenue with the Westerly line of vacated, Campbell Avenue; running thence from said point of beginning North 61° 52 minutes East 71.40 feet to a point; thence North 27° 49 minutes West 57.75 feet to a point; thence 61 °52 minutes East 604.68 feet to a point; thence South 27 ° 50 minutes East 759. 52 feet to the United States harbor line, thence South 34 degrees 3 minutes West along said United States  Harbor line 635.59 feet to a point in the Easterly line or Parcel # 3 above; thence North 55 degrees 57 minutes West 302.57 feet along the Easterly line of Parcel # 3 above to a point which is the apex of an angle formed by the change of the courses of the Westerly boundary of the premises herein described in an Easterly direction; thence continuing along said Easterly line of Parcel # 3 above North 28 degrees 3

3

minutes West 730.73 feet to a point; thence North 61 degrees 52 minutes East 29.64 feet to the point of beginning, including all vacated streets and alleys lying within the boundaries of said premises above described, and together with all riparian rights thereunto belonging.

Horace D. Cotton (P33286)
Attorney for Plaintiff
P.O. Box 19520
Detroit, MI 48219
(313) 595-1517

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
-------------------------------------------------------- x
                                               :
In re                                          :      Chapter 9
                                               :
CITY OF DETROIT, MICHIGAN,                     :      Case No. 13-53846
                                               :
                            Debtor.            :      Hon. Steven W. Rhodes
                                               :
                                               :
-------------------------------------------------------- x
```

## NOTICE OF (I) ENTRY OF ORDER CONFIRMING EIGHTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT AND (II) OCCURRENCE OF EFFECTIVE DATE

### PLEASE TAKE NOTICE OF THE FOLLOWING:

      1.      **Confirmation of the Plan and Occurrence of the Effective Date.**

          On November 12, 2014, the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") entered an order (Docket No. 8272) (the "Confirmation Order") confirming the Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (as it may have been amended, supplemented or modified, the "Plan"), in the above-captioned chapter 9 case of the City of Detroit, Michigan (the "City"). The Effective Date of the Plan occurred on December 10, 2014. Unless otherwise defined in this Notice, capitalized terms and phrases used herein have the meanings given to them in the Plan and the Confirmation Order.

      2.      **Discharge of Claims.**

          a.      Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan are in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date, including any interest accrued on Claims from and after the Petition Date. Except as provided in the Plan or in the Confirmation Order, as of the Effective Date, the City is discharged from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based on such debt was Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt was allowed pursuant to section 502 of the Bankruptcy Code or (iii) the Holder of a Claim based on such debt accepted the Plan.

          b.      In accordance with the foregoing, except as expressly provided otherwise in the Plan or the Confirmation Order, the Confirmation Order is a judicial determination, as of the Effective Date, of a discharge of all debts of the City, pursuant to sections 524(a)(1), 524(a)(2) and 944(b) of the Bankruptcy Code, and such discharge voids any judgment obtained against the City at any time, to the extent that such judgment relates to a discharged debt; provided that, in accordance with section



944(c)(1) of the Bankruptcy Code, such discharge does not apply to (i) debts specifically exempted from discharge under the Plan; (ii) debts held by an Entity that, before the Confirmation Date, had neither notice nor actual knowledge of the Chapter 9 Case; (iii) claims against officers or employees of the City in their individual capacity under 42 U.S.C. § 1983; or (iv) Claims of (A) T&T Management, Inc., (B) HRT Enterprises and (C) the John W. and Vivian M. Denis Trust related to condemnation or inverse condemnation actions against the City alleging that the City has taken private property without just compensation in violation of the Takings Clause of the Fifth Amendment to the United States Constitution.

3. **Releases.**

a. <u>General Releases by Holders of Claims</u>. Without limiting any other applicable provisions of, or releases contained in, the Plan or any contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, as of the Effective Date, in consideration for the obligations of the City under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan (including the State Contribution Agreement), each holder of a Claim that voted in favor of the Plan, to the fullest extent permissible under law, is deemed to forever release, waive and discharge (which release will be in addition to the release and discharge of Claims otherwise provided herein and under the Confirmation Order and the Bankruptcy Code):

i. all Liabilities in any way relating to the City, the Chapter 9 Case (including the authorization given to file the Chapter 9 Case), the Plan, the Exhibits or the Disclosure Statement, in each case that such holder has, had or may have against the City or its current and former officials, officers, directors, employees, managers, attorneys, advisors and professionals, each acting in such capacity (and, in addition to and without limiting the foregoing, in the case of any Emergency Manager, in such Emergency Manager's capacity as an appointee under PA 436); <u>provided further</u>, for the avoidance of doubt, that any person or entity designated to manage the Chapter 9 Case for the City after the Emergency Manager's term is terminated, whether such person or entity acts as an employee, advisor or contractor to the City or acts as an employee, agent, contractor or appointee of the State under any applicable state law, shall be treated the same as an employee of the City hereunder; and

ii. all Liabilities in any way relating to (A) Claims that are compromised, settled or discharged under or in connection with the Plan, (B) the Chapter 9 Case (including the authorization given to file the Chapter 9 Case), (C) the Plan, (D) the Exhibits, (E) the Disclosure Statement or (F) the DIA Settlement, in each case that such holder has, had or may have against the City's Related Entities, the State, the State Related Entities and the Released Parties; <u>provided, however</u>, that any such Liability of the Foundations, the DIA Funders and the CFSEM Supporting Organization and their Related Entities are released only to the extent that such Liability, if any, arises from any such entity's participation in the DIA Settlement;

<u>provided, however</u>, that the foregoing provisions shall not affect the liability of the City, its Related Entities and the Released Parties that otherwise would result from any act or omission to the extent that act or omission subsequently is determined in a Final Order to have constituted gross negligence or willful misconduct; <u>provided, further</u>, that nothing in Section III.D.7.a of the Plan shall release (i) the City's obligations under the Plan or (ii) any defenses that any party may have against the City, its Related Entities, the State, the State Related Entities or the Released Parties. Notwithstanding anything in the Plan or the Confirmation Order to the contrary, claims against officers or employees of the City in their individual capacity under 42 U.S.C. § 1983 shall not be released.

b. <u>Release by Holders of Pension Claims</u>. Without limiting any other applicable provisions of, or releases contained in, the Plan or any contracts, instruments, releases,

agreements or documents entered into or delivered in connection with the Plan, as of the Effective Date, in consideration for the obligations of the City under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan (including the State Contribution Agreement), if the State Contribution Agreement is consummated, each holder of a Pension Claim is deemed to forever release, waive and discharge all Liabilities arising from or related to the City, the Chapter 9 Case, including the authorization given to file the Chapter 9 Case, the Plan, all Exhibits, the Disclosure Statement, PA 436 and its predecessor or replacement statutes, and Article IX, Section 24 of the Michigan Constitution that such party has, had or may have against the State and any State Related Entities. For the avoidance of doubt, the Plan does not release, waive or discharge obligations of the City that are established in the Plan or that arise from and after the Effective Date with respect to (i) pensions as modified by the Plan or (ii) labor-related obligations. Such post-Effective Date obligations shall be enforceable against the City or its representatives by active or retired employees or their collective bargaining representatives to the extent permitted by applicable non-bankruptcy law or the Plan, or, with respect to pensions only, GRS or PFRS.

Notwithstanding Sections III.D.5-7 and IV.L of the Plan, except as set forth in the COP Swap Settlement, nothing in the Plan or the Confirmation Order shall or shall be deemed to provide a release by the COP Swap Counterparties of any Liabilities related to the COPs, the COP Service Corporations, the Transaction Documents (as defined in the COP Swap Settlement), the COP Swap Settlement or the COP Swap Settlement Approval Order. For the avoidance of doubt, notwithstanding Section III.D.6 of the Plan, a vote of DWSD Bond Claims or DWSD Revolving Bond Claims in favor of the Plan shall not, and shall not be deemed to, effect a release pursuant to Section III.D.7 of the Plan by a Holder of any such DWSD Bond Claims, a Holder of any such DWSD Revolving Bond Claims or the Bond Insurer insuring any such Claims of any Liabilities against the City or its Related Entities that do not arise in connection with the DWSD Bonds or the DWSD Revolving Bonds. For the further avoidance of doubt, notwithstanding anything in the Plan to the contrary, a vote of a Claim other than a DWSD Bond Claim or DWSD Revolving Bond Claim in favor of the Plan shall not, and shall not be deemed to, effect a release pursuant to Section III.D.7 of the Plan by a Holder of any such voted Claim or the Bond Insurer insuring such voted Claim of any Liabilities against the City or any other Entity arising in connection with the DWSD Bonds or DWSD Revolving Bonds.

4.      **Injunctions.**

**On the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order:**

a.      **All Entities that have been, are or may be holders of Claims against the City, Indirect 36th District Court Claims or Indirect Employee Indemnity Claims asserted against officers or employees of the City in their official capacity, along with their Related Entities, are permanently enjoined from taking any of the following actions against or affecting the City or its property, DIA Corp. or its property, the DIA Assets, the Released Parties or their respective property and the Related Entities of each of the foregoing, with respect to such claims (other than actions brought to enforce any rights or obligations under the Plan and appeals, if any, from the Confirmation Order): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the City or its property (including (A) all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice, (B) Indirect 36th District Court Claims and (C) Indirect Employee Indemnity Claims asserted against officers or employees of the City in their official capacity); (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order against the City or its property; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly,**

any encumbrance of any kind against the City or its property; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the City or its property; (v) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan or the settlements set forth therein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and (vi) taking any actions to interfere with the implementation or consummation of the Plan. Notwithstanding anything in the Plan or the Confirmation Order to the contrary, claims against officers or employees of the City in their individual capacity under 42 U.S.C. § 1983 are not enjoined. In addition, all individuals affected by the ASF Recoupment are enjoined from commencing any proceeding against the GRS and its trustees, officers, employees or professionals arising from the GRS's compliance with the Plan or the Confirmation Order.

        **b.**       All Entities that have held, currently hold or may hold any Liabilities released pursuant to the Plan are permanently enjoined from taking any of the following actions against the State, the State Related Entities, the officers, board of trustees/directors, attorneys, advisors and professionals of the RDPFFA or the DRCEA, and the Released Parties or any of their respective property on account of such released Liabilities: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the State, a State Related Entity, the officers, board of trustees/directors, attorneys, advisors and professionals of the RDPFFA or the DRCEA, or a Released Party; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan. Notwithstanding the foregoing and without limiting the injunctions in sub-paragraph 4(a) above, the Holders of Indirect 36th District Court Claims shall not be enjoined from taking any of the foregoing actions against the State or the State Related Entities with respect to Indirect 36th District Court Claims to the extent such Claims are not satisfied pursuant to the Plan.

      **5.**       Treatment of Executory Contracts and Unexpired Leases.

        **a.**       <u>Assumption</u>. Except for Executory Contracts and Unexpired Leases rejected in the Plan or by other court order, or as requested in any motion Filed by the City on or prior to the Effective Date, as of the Effective Date, pursuant to section 365 of the Bankruptcy Code, the City has been deemed to assume all Executory Contracts and Unexpired Leases to which it is a party. Notwithstanding the foregoing, Retirement System Indemnity Obligations have not been assumed under the Plan and have been discharged. For the avoidance of doubt, the City has assumed the Tunnel Lease pursuant to Section II.D.1 of the Plan.

        **b.**       <u>Assumption of Ancillary Agreements</u>. Each Executory Contract and Unexpired Lease assumed pursuant to Section II.D.1 of the Plan includes any modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract or Unexpired Lease, unless any such modification, amendment, supplement, restatement or other agreement is rejected pursuant to Section II.D.6 of the Plan or designated for rejection in accordance with Section II.D.3 of the Plan.

        **c.**       <u>Approval of Assumptions and Assignments</u>. The Confirmation Order constitutes an order of the Bankruptcy Court approving the assumption of Executory Contracts and Unexpired Leases pursuant to Sections II.D.1 and II.D.2 of the Plan (and any related assignment) as of the

Effective Date, except for Executory Contracts or Unexpired Leases that (a) have been rejected pursuant to a Final Order of the Bankruptcy Court, (b) are subject to a pending motion for reconsideration or appeal of an order authorizing the rejection of such Executory Contract or Unexpired Lease, (c) are subject to a motion to reject such Executory Contract or Unexpired Lease Filed on or prior to the Effective Date, (d) are rejected pursuant to Section II.D.6 of the Plan or (e) are designated for rejection in accordance with the last sentence of this paragraph. On November 21, 2014, in accordance with the Contract Procedures Order, the City filed with the Bankruptcy Court a non-exclusive list (Docket No. 8387) (the "Non-Exclusive Plan Assumption List") of Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan. On December 5, 2014, the City filed a notice of amendment to the Non-Exclusive Plan Assumption List (Docket No. 8573). The City has provided separate notice to each party whose Executory Contract or Unexpired Lease is identified on the Non-Exclusive Plan Assumption List of: (a) the Executory Contract or Unexpired Lease being assumed; (b) the Cure Amount Claim, if any, that the City believes it would be obligated to pay in connection with such assumption; (c) any assignment of an Executory Contract or Unexpired Lease; and (d) the procedures for such party to object to the assumption of the applicable Executory Contract or Unexpired Lease, the amount of the proposed Cure Amount Claim or any assignment of an Executory Contract or Unexpired Lease are set forth in the Contract Procedures Order (Docket No. 6512). **For Executory Contracts or Unexpired Leases assumed under the Plan but not identified in the Non-Exclusive Plan Assumption List, the counterparty to such an agreement must file any written objection, setting forth the basis for opposing assumption or assignment of the applicable agreement or the proposed Cure Amount Claim, no later than 20 days after the Effective Date of the Plan, i.e., December 30, 2014.** If an objection to a proposed assumption, assumption and assignment or Cure Amount Claim is not resolved in favor of the City, the applicable Executory Contract or Unexpired Lease may be designated by the City for rejection, which shall be deemed effective as of the Effective Date.

          d.     <u>Payments Related to the Assumption of Executory Contracts and Unexpired Leases</u>. To the extent that such Claims constitute monetary defaults, the Cure Amount Claims associated with each Executory Contract or Unexpired Lease to be assumed pursuant to the Plan will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, at the option of the City: (a) by payment of the Cure Amount Claim in Cash on the Effective Date or (b) on such other terms as are agreed to by the parties to such Executory Contract or Unexpired Lease. If there is a dispute regarding: (a) the amount of any Cure Amount Claim, (b) the ability of the City or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (c) any other matter pertaining to the assumption of such contract or lease, the payment of any Cure Amount Claim required by section 365(b)(1) of the Bankruptcy Code will be made within 30 days following the entry of a Final Order resolving the dispute and approving the assumption.

          e.     <u>Contracts and Leases Entered Into After the Petition Date</u>. Contracts, leases and other agreements entered into after the Petition Date by the City, including (a) any Executory Contracts or Unexpired Leases assumed by the City and (b) the collective bargaining agreements identified on Exhibit II.D.5 to the Plan, will be performed by the City in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts or Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

          f.     <u>Rejection of Executory Contracts and Unexpired Leases</u>. Each Executory Contract and Unexpired Lease that is listed on Exhibit II.D.6 to the Plan was deemed rejected as of the Effective Date pursuant to section 365 of the Bankruptcy Code. The Confirmation Order constitutes an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the later of: (a) the Effective Date or (b) the resolution of any objection to the proposed rejection of an Executory Contract or Unexpired Lease. Each contract or lease listed on Exhibit II.D.6 to the Plan is rejected only to the extent that any such contract or lease constitutes an

Executory Contract or Unexpired Lease. Listing a contract or lease on Exhibit II.D.6 to the Plan does not constitute an admission by the City that such contract or lease is an Executory Contract or Unexpired Lease or that the City has any liability thereunder. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall be treated as Class 14 Claims (Other Unsecured Claims), subject to the provisions of section 502 of the Bankruptcy Code.

       g.     **Rejection Damages Bar Date**. **Except as otherwise provided in a Final Order of the Bankruptcy Court approving the rejection of an Executory Contract or Unexpired Lease, Claims arising out of the rejection of an Executory Contract or Unexpired Lease must be Filed with the Bankruptcy Court and served upon counsel to the City on or before the later of: (a) 45 days after the Effective Date, i.e., January 26, 2015; or (b) 45 days after such Executory Contract or Unexpired Lease is rejected pursuant to a Final Order or designated for rejection in accordance with Section II.D.3 of the Plan. Any Claims not Filed within such applicable time periods will be forever barred from receiving a Distribution from, and shall not be enforceable against, the City. Proof of claim forms and instructions for filing claims can be found at the City's restructuring website, https://www.kccllc.net/detroit.**

       h.     Preexisting Obligations to the City Under Rejected Executory Contracts and Unexpired Leases. Pursuant to section 365(g) of the Bankruptcy Code, rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall constitute a breach of such contract or lease and not a termination thereof, and all obligations owing to the City under such contract or lease as of the date of such breach shall remain owing to the City upon rejection. Notwithstanding any applicable non-bankruptcy law to the contrary, the City expressly reserves and does not waive any right to receive, or any continuing obligation of a non-City party to provide, warranties, indemnifications or continued maintenance obligations on goods previously purchased, or services previously received, by the City from non-City parties to rejected Executory Contracts or Unexpired Leases, and any such rights shall remain vested in the City as of the Effective Date.

       i.     Insurance Policies. From and after the Effective Date, each of the City's insurance policies (other than welfare benefits insurance policies) in existence as of or prior to the Effective Date are reinstated and continue in full force and effect in accordance with their terms and, to the extent applicable, are deemed assumed by the City pursuant to section 365 of the Bankruptcy Code and Section II.D.1 of the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver of any Causes of Action that the City may hold against any Entity, including any insurer under any of the City's insurance policies. For the avoidance of doubt, nothing contained in Section II.D.9 of the Plan shall apply to reinstate or continue any obligation of the City or any fund thereof to any Bond Insurer.

     **6.**     **Payment of Administrative Claims.**

       a.     Administrative Claims in General. Except as specified in Section II.A.1 of the Plan, and subject to the bar date provisions therein, unless otherwise agreed by the Holder of an Administrative Claim and the City, or ordered by the Bankruptcy Court, each Holder of an Allowed Administrative Claim will receive, in full satisfaction of such Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim either: (1) on the Effective Date or as soon as reasonably practicable thereafter; or (2) if the Administrative Claim is not Allowed as of the Effective Date, 30 days after the date on which such Administrative Claim becomes an Allowed Claim. No Claim of any official or unofficial creditors' committee or any member thereof for professionals' fees or other costs and expenses incurred by such creditors' committee or by a member of such creditors' committee shall constitute an Allowed Administrative Claim, except that the Retiree Committee's members and the Retiree Committee Professionals shall be entitled to payment in accordance with the Fee Review Order and any additional fee process established by the Court.

7. **Bar Dates for Administrative Claims.**

      a.    <u>General Bar Date Provisions</u>. Except as otherwise provided in subparagraphs 7(b) or 7(c) below or in a Bar Date Order or other order of the Bankruptcy Court, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the City no later than 45 days after the Effective Date, *i.e.*, January 26, 2015. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date will be forever barred from asserting such Administrative Claims against the City or its property, and such Administrative Claims will be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the City and the requesting party by the later of (i) 150 days after the Effective Date, *i.e.*, May 11, 2015, (ii) 60 days after the Filing of the applicable request for payment of Administrative Claims or (iii) such other period of limitation as may be specifically fixed by a Final Order for objecting to such Administrative Claims.

      b.    <u>Ordinary Course Claims</u>. Holders of Claims based on Liabilities incurred by the City after the Petition Date in the ordinary course of its operations are not required to File or serve any request for payment or application for allowance of such Claims. Such Claims will be paid by the City, pursuant to the terms and conditions of the particular transaction giving rise to such Claims, without further action by the Holders of such Claims or further action or approval of the Bankruptcy Court.

      c.    <u>Claims Under the Postpetition Financing Agreement</u>. Holders of Administrative Claims that are Postpetition Financing Claims are not required to File or serve any request for payment or application for allowance of such Claims. Such Administrative Claims will be satisfied as set forth in subparagraph 7(b) above.

      d.    <u>No Modification of Bar Date Order</u>. The Plan does not modify any other Bar Date Order, including Bar Dates for Claims entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code.

8. **ASF Recoupment Cash Option.**

      a.    <u>ASF Recoupment Cash Option Election</u>. No later than seven days following the Effective Date, *i.e.*, December 17, 2014, the City, through its Claims and Balloting Agent, will send the ASF Election Notice and the ASF Election Form by first-class U.S. mail to each ASF Distribution Recipient. The ASF Election Notice will notify ASF Distribution Recipients that each ASF Distribution Recipient may elect to pay the total amount of his or her ASF Recoupment in a single lump sum by timely returning a properly-completed ASF Election Form. The ASF Election Form will explain that the amount of the ASF Recoupment Cash Payment shall be equal to the total amount of ASF Recoupment shown on the ASF Distribution Recipient's Ballot, unless the aggregate amount of ASF Recoupment for all ASF Distribution Recipients electing the ASF Recoupment Cash Option exceeds $30,000,000, in which case (i) the ASF Recoupment Cash Payment will be the ASF Distribution Recipient's Pro Rata portion of $30,000,000, and (ii) the remaining portion of the ASF Distribution Recipient's ASF Recoupment will be annuitized and deducted from the ASF Distribution Recipient's monthly pension check, as provided for in Section II.B.3.r.ii.D.2.i of the Plan. *An ASF Distribution Recipient must return his or her ASF Election Form to the Claims and Balloting Agent so that it is actually received by the Claims and Balloting Agent by the ASF Election Date, i.e., 35 days after the date on which the ASF Election Form is mailed.*

      b.    <u>ASF Recoupment Cash Payment</u>. GRS will mail the ASF Final Cash Payment Notice no later than 14 days after the ASF Election Date. The ASF Final Cash Payment Notice

is a notice that will be sent to each ASF Distribution Recipient who timely elects the ASF Recoupment Cash Option, and will indicate the amount of such ASF Distribution Recipient's ASF Recoupment Cash Payment. *ASF Distribution Recipients shall have until the ASF Final Cash Payment Date – i.e., the later of (i) 90 days after the Effective Date, i.e., March 10, 2015 or (ii) 50 days after the date of mailing of an ASF Final Cash Payment Notice – to make the ASF Recoupment Cash Payment, which payment must be made by cashier's check or wire transfer and may not be made by personal check. If an ASF Distribution Recipient's ASF Recoupment Cash Payment is not received by the ASF Final Cash Payment Date, GRS will notify the ASF Distribution Recipient of the failure to timely pay, and ASF Recoupment will be effected through diminution of such recipient's monthly pension check, as provided for in Section II.B.3.r.ii.D.2.i of the Plan.* The calculation of each electing ASF Distribution Recipient's ASF Recoupment Cash Payment shall not be adjusted under any circumstances, including as a result of default by any other electing ASF Distribution Recipient to remit his or her ASF Recoupment Cash Payment by the ASF Final Cash Payment Date.

        **9.**    **Copies of the Plan and Confirmation Order.** Copies of the Plan, Confirmation Order and all other documents Filed in the Chapter 9 Case may be obtained, free of charge, from the City's restructuring website at https://www.kccllc.net/detroit or from Kurtzman Carson Consultants LLC by calling (877) 298-6236 (toll-free).

<div align="center">BY ORDER OF THE COURT</div>

| | |
|---|---|
| David G. Heiman (OH 0038271) | Jonathan S. Green (MI P33140) |
| Heather Lennox (OH 0059649) | Stephen S. LaPlante (MI P48063) |
| Thomas A. Wilson (OH 0077047) | MILLER, CANFIELD, PADDOCK AND |
| JONES DAY |    STONE, P.L.C. |
| North Point | 150 West Jefferson |
| 901 Lakeside Avenue | Suite 2500 |
| Cleveland, Ohio 44114 | Detroit, Michigan 48226 |
| Telephone: (216) 586-3939 | Telephone: (313) 963-6420 |
| Facsimile: (216) 579-0212 | Facsimile: (313) 496-7500 |
| dgheiman@jonesday.com | green@millercanfield.com |
| hlennox@jonesday.com | laplante@millercanfield.com |
| tawilson@jonesday.com | |
| | |
| Bruce Bennett (CA 105430) | |
| JONES DAY | |
| 555 South Flower Street | |
| Fiftieth Floor | |
| Los Angeles, California 90071 | |
| Telephone: (213) 243-2382 | |
| Facsimile: (213) 243-2539 | |
| bbennett@jonesday.com | |

<div align="center">ATTORNEYS FOR THE CITY</div>

## CERTIFICATE OF SERVICE

I, Heather Lennox, hereby certify that the foregoing Notice of (I) Entry of Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit and (II) Occurrence of Effective Date was filed and served via the Court's electronic case filing and noticing system on this 10th day of December, 2014.

/s/  Heather Lennox

**<u>EXHIBIT 6C – ANSWER</u>**

State of Michigan
Third Circuit Court

_____

B & C Land Development Corporation, ,

       Plaintiff,

v.

City of Detroit,

       Defendant.

Case No. 15-008602-CH
Judge Annette J. Berry

_____

| | |
|---|---|
| James D. Noseda P-52563 | Horace D. Cotton P-33268 |
| Attorney for defendant | Attorney for plaintiff |
| City of Detroit Law Department | P.O. Box 19520 |
| Two Woodward Ave, Suite 500 | Detroit, MI 48219 |
| Coleman A. Young Municipal Center | 313-595-1517 |
| Detroit, MI 48226 | hdcotton@yahoo.com |
| 313-237-3057 | |
| nosej@detroitmi.gov | |

_____

**City Of Detroit's Answer And Affirmative Defenses**

     The City of Detroit ("City") answers the complaint as follows.

1.    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

2.    Admit.

1

13-53846-tjt Doc 10091-2 Filed 07/27/15 Entered 07/27/15 13:13:16 Page 82 of 206
13-53846-tjt Doc 10091-2 Filed 09/21/15 Entered 09/21/15 13:14:21 Page 84 of 92   82

3.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

4.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

5.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

6.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

7.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

8.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

9.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

10.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

11.     Denied as false.

12.     Defendant refers to Exhibit 1 for its true meaning and effect.  Denied that Exhibit 1 is a contract with the City of Detroit.  The City did not accept payment of a deposit as alleged. Plaintiff's principal, Robert Carmack, has admitted both in writing and recorded televised comments that the check for the deposit was returned to him uncashed.  Except as stated herein, The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

13.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

14.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

15.     On June 30, 2008, Detroit City Council authorized the transfer of the property known as the "Revere Copper & Brass" site from the Planning and Development Department to the Water & Sewerage Department in exchange for reimbursement from the Water & Sewerage Department of $5 million.  Except as stated herein, denied as false.

16.      Denied that there was sale of the subject parcel approved by City Council.  Otherwise, the City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

17.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

18.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

19.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

20.     Sometime after May of 2012, the subject property was returned to the surplus inventory of Planning & Development Department.  Except as stated

herein, the City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

21.    In 2013, the City sold approximately 7 acres of the "Revere Copper & Brass" site to Waterfront Terminal Holdings for a price of $1.16 million.

22.    Denied as false.  On June 30, 2015, Detroit City Council approved a contract of sale for 5.5137acres of of the Revere Copper & Brass Site to Waterfront Holdings II, LLC, and the sale of 17.1009 acres of the site to Revere Dock, LLC, for a total aggregate price of $3 million.

23.    Denied as false that plaintiff is entitle to any relief in this action, injunctive or otherwise.  Except as stated herein, The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

24.    Denied as false.  At no time did a contract exist between the City of Detroit and plaintiff with respect to the sale of any portion of the Revere Copper & Brass site.

25.    The City restates it answers to the preceding paragraphs of the complaint for its answer to the corresponding paragraph of the complaint.

26.     Denied as false. No purchase agreement or contract of any kind with respect to the Revere Copper & Brass site was ever formed between the City of Detroit and either plaintiff or Robert Carmack.

27.     Denied as false.

28.     Denied as false.

29.     Denied as false.

30.     Denied as false.

31.     The City restates it answers to the preceding paragraphs of the complaint for its answer to the corresponding paragraph of the complaint.

32.     Denied as false.

33.     Denied as false.

34.     Denied as false.

35.     Denied as false.

        Wherefore, the City of Detroit prays that the Court dismiss this unfounded action and assess attorney fees and costs against plaintiff and its counsel under applicable statute and court rule for the filing and pursuit of this action which is not well founded in fact or in law.

## Affirmative Defenses

1.      Plaintiff has failed to state a claim upon which relief can be granted.

2.     No purchase agreement or other contract with plaintiff ever was formed between the City of Detroit and plaintiff because no resolution authorizing or approving any such contract was adopted by the Detroit City Council as required by law to form a contract with the City of Detroit.

3.     To the extent that plaintiff alleges a claim or seeks a monetary award against the City of Detroit that sounds in tort, it is barred by governmental immunity.

4.     All claims made in this action are barred by the applicable statute of limitations.

5.     Plaintiff's claims are barred by laches, undue delay and unclean hands.

6.     Plaintiff did not file a claim in *In re City of Detroit*, United States Bankruptcy Court, Eastern District of Michigan, Case No. 13-53846.  The filing of this action violated the federal injunction contained in the "Eight Amended Plan for the Adjustment of Debts of the City of Detroit" ("the Plan") approved by the bankruptcy court on November 12, 2014.  Any action taken in pursuit of this action is a continuing violation of the Plan and injunction.

7.     The Lis Pendens filed in this action is void ab initio and violates the Plan and injunction.  Any recording of the Lis Pendens violates the Plan and injunction, and also is a slander of title.

8.     Any contract claim is barred by a lack of consideration.

9.     Any contract claim is barred by a failure of consideration.

7

10. Plaintiff never submitted a formal offer to purchase the property that was approved by officials in the Executive Branch of the City or approved by the Detroit City Council, as is required by the Detroit City Charter and Detroit City Code.

11. Plaintiff's claims are barred by impossibility.

12. Plaintiff's claims are barred by the Statute of Frauds.

## DEMAND FOR REPLY

Under MCR 2.110(B)(5), Defendant demands a reply to its answers.

### City of Detroit


By: /s/ James D. Noseda
James D. Noseda P-52563
City of Detroit Law Department

### Certificate of Service

The undersigned certifies that on July 21, 2015, he served the foregoing paper upon counsel of record by e-mail. I declare that the foregoing is true to the best of my knowledge, information, and belief.

/s/ James D. Noseda

13-53846-tjt Doc 10091-2 Filed 09/21/15 Entered 09/21/15 13:13:21 Page 89 of 92
13-53846-tjt Doc 10087 Filed 07/27/15 Entered 07/27/15 13:14:16 Page 88 of 91
206
89

**EXHIBIT 6D – MAY 2012 PUBLIC STATEMENT**

CITY OF DETROIT
PLANNING & DEVELOPMENT DEPARTMENT

2300 CADILLAC TOWER
DETROIT, MICHIGAN 48226
PHONE: 313-224-6380
FAX: 313-224-1639
WWW.DETROITMI.GOV

May 15, 2012

Detroit City Council
200 Coleman A. Young Municipal Center
Detroit, Michigan 48226

RE:     **May 10, 2012 Public Comment – "Mr. Bob Carmack Offer to Purchase Property in Southwest Detroit of 27 acres on water (Revere Copper & Brass)"**

Honorable City Council:

In response to the above public comment, the Planning & Development Department (P&DD) no longer has jurisdictional control over the subject property:

- On June 18, 2008, The Honorable Board of Water Commissioners, City of Detroit, Michigan authorized the then Detroit Water & Sewerage Department (DWSD) Director, Victor Mercado, to approve the acquisition of the approximately 28.66 acre "Revere Copper & Brass" site as the location for a CSO Control Facility (see attached Agenda of June 18, 2012),

- On June 30, 2008, Your Honorable Body authorized the transfer of the approximately 28.66 acre "Revere Copper & Brass" site from P&DD to DWSD for a CSO facility in exchange for reimbursement from DWSD of $5 million dollars (see attached from Detroit Legal News),

P&DD never took a deposit from Mr. Carmack for this site, never entered into a purchase agreement with Mr. Carmack for this site, and never entered into a development agreement with Mr. Carmack for this site. P&DD never requested this Honorable Body approve any sale of this site to Mr. Carmack, and Your Honorable Body never passed a land sale resolution or authorized the sale of the property to Mr. Carmack.

Since June of 2008, Your Honorable Body has requested P&DD report on the status of a sale of this site to Mr. Carmack no less than four times. The information each time has been as recited above, with no change since the original report of June 25, 2008 other than the transfer to DWSD. We trust that this correspondence addresses with finality your concerns and inquiries to P&DD regarding the status of the former "Revere Copper & Brass" property and the issues raised by Mr. Carmack.

Sincerely,

Robert A. Anderson
Director

RAA/JM/jm

Cc:     Denise Gardener, Mayor's Office

## EXHIBIT 6E – TRUE COPY CERTIFICATE OF RESOLUTION APPROVING WATERFRONT OFFER TO PURCHASE

# TRUE COPY CERTIFICATE

STATE OF MICHIGAN } ss
City of Detroit

### CITY CLERK'S OFFICE, DETROIT

I, _____Janice M. Winfrey_____, City Clerk of the City of Detroit, in said State, do hereby certify

that the annexed paper is a TRUE COPY OF _____RESOLUTION_____

adopted (passed) by the City Council at session of _____June 30,_____ 20__15

and approved by Mayor _____July 7,_____ 20__15

as appears from the Journal of said City Council in the office of the City Clerk of Detroit, aforesaid; that I have compared the same with the

original, and the same is a correct transcript therefrom, and of the whole of such original.


**In Witness Whereof, I have hereunto set my hand and affixed the corporate seal of said City, at**

Detroit, this ___10th___ day of ___July___ A.D. 20_15

CITY CLERK

   

City of Detroit
Planning and Development Department

Coleman A. Young Municipal Center
2 Woodward Ave., Suite 808
Detroit, Michigan 48226
Phone 313•224•1339
www.detroitmi.gov

May 29, 2015

Detroit City Council
1340 Coleman A. Young Municipal Center
Detroit, MI 48226

**Re:     Real Property at 5851 W. Jefferson Avenue, Detroit, MI 48209**

Honorable City Council:

The City of Detroit Planning and Development Department has received an offer from Waterfront Holdings II, LLC, a Michigan limited liability company ("**Waterfront**") to purchase from the City the approximately 5.5137 acres of vacant real property described on the attached Exhibit A, being part of what is commonly known as 5851 W. Jefferson Avenue, Detroit, MI 48209, (the "**Property**").

The terms of the offer are set forth in a Purchase Agreement dated March 20, 2015 (the "**Offer to Purchase**"). Under the terms of the Offer to Purchase, the Property would be conveyed to Waterfront by Quit Claim Deed (the "**Deed**") for seven hundred thirty-five thousand and 00/100 Dollars (**$735,000.00**) (the "**Purchase Price**"). The Purchase Price is equal to the Property's current fair market value as determined by an independent appraisal obtained by the City.

Waterfront, an affiliate of the Detroit-based bulk fuel supply company Waterfront Petroleum Terminal Company, in 2007 purchased from the City the idled 11-acre fuel storage facility at the Mistersky Electric Generation Station, and in 2013 purchased from the City an additional adjacent 7 acres. Waterfront wishes to acquire the Property to expand the company's vital marine liquid and bulk distribution operations. Upon acquisition, Waterfront will remediate the Property, dredge the riverfront, and improve the seawall and dock in order to grow its large vessel refueling operations. The proposed use is permitted as a matter of right in an M-4 (Intensive Industrial) zone.

We request that your Honorable Body adopt the attached resolution approving the sale of the Property, and authorizing the Planning and Development Department Director to execute the Deed and such other documents as may be necessary or convenient in connection with the City's sale of the Property.

Respectfully submitted,

Maurice Cox, Director

MC:JB:kc

Cc:     Aliyah Sabree, Mayor's Office
        Val Upshaw, P&RD Liaison

By Council Member 

WHEREAS, the City of Detroit Planning and Development Department has received an offer from Waterfront Holdings II, LLC, a Michigan limited liability company, to purchase approximately 5.5137 acres of vacant real property described in the attached Exhibit A, part of what is commonly known as 5851 W. Jefferson Avenue, Detroit, MI 48209, (the "**Property**"); and

WHEREAS, in accordance with Section 14-8-10 of the Detroit City Code, it is deemed in the best interests of the City that the Property be sold without public advertisement or the taking of bids.

NOW, THEREFORE, BE IT RESOLVED, that the sale of Property to **Waterfront Holdings II, LLC, a Michigan limited liability company**, for the Purchase Price of **seven hundred thirty-five thousand dollars ($735,000.00)**, and otherwise in accordance with the terms of the Offer to Purchase is hereby approved; and be it further

RESOLVED, that customary closing costs up to two hundred dollars ($200.00), and real estate brokerage commissions not to exceed five percent (5%) of the Purchase Price may be deducted from the Purchase Price and paid from the sale proceeds as "Property Transaction Costs" in accordance with the terms of the Property Management Agreement dated October 31, 2014, by and between the City and the City of Detroit Building Authority (the "Property Management Agreement"); and be it further

RESOLVED, that a "Transaction Fee" may be deducted from the Purchase Price and be paid from the proceeds to the City of Detroit Building Authority in accordance with the terms of the Property Management Agreement; and be it further

RESOLVED, that the sale of Property to Waterfront Holdings II, LLC, a Michigan limited liability company, without public advertisement or the taking of bids is hereby approved in accordance with Sec. 14-8-10 of the Detroit City Code; and be it further

RESOLVED, that the Director of the Planning and Development Department, or his or her designee, is authorized to execute the Deed and such other documents as may be necessary or convenient for the consummation of the transaction pursuant to and in accordance with the Offer to Purchase; and be it further

RESOLVED, that the Director of the Planning and Development Department, or his or her designee, is authorized to execute any required instruments to make and incorporate technical amendments and changes to the Quit Claim Deed (including but not limited to corrections to or confirmations of legal descriptions, or timing of tender of possession of particular parcels) in the event that changes are required to correct minor inaccuracies or are required due to unforeseen circumstances or technical matters that may arise prior to the conveyance of the Property, provided that the changes do not materially alter the substance or terms of the transfer and sale; and be it finally

RESOLVED, that the Deed will be considered confirmed when executed by the Director of the Planning and Development Department, or his or her designee, and approved by the Corporation Counsel as to form.

EXHIBIT A
LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING
DESCRIBED AS LOTS 1207 THROUGH 1214 BOTH INCLUSIVE, LOT 1215 EXCEPT
THE EASTERLY 6.36 FEET THEREOF, ALL BEING TOGETHER WITH THE ADJACENT
VACATED PUBLIC ALLEY (20 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF
THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED
IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO THE
WESTERLY 213.64 FEET OF THE EASTERLY 574.00 FEET OF PRIVATE CLAIM NO.
39 LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE
WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20,
PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND
ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING
MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT
SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO.
39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS;
THENCE N.61°37'43"E. 213.64 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON
AVENUE (80 FEET WIDE) TO A POINT BEING 6.36 FEET WESTERLY FROM THE
NORTHEAST CORNER OF LOT 1215 OF THE "SIXTH PLAT SUBDIVISION OF THE
PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN
LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E.
1068.40 FEET ALONG A LINE 360.36 FEET WEST OF THE EASTERLY LINE OF
SAID PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE;
THENCE S.34°06'08"W. 241.60 FEET ALONG SAID DETROIT RIVER U.S. HARBOR
LINE; THENCE N.28°03'35"W. 1180.06 FEET ALONG A LINE 574.00 FEET WEST
OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF
BEGINNING; SAID PARCEL CONTAINING 5.5137 ACRES, MORE OR LESS AND
BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: Basil Sarin DATE: 4/28/2015

Street Address[es]:

Property Tax Ward & Item numbers:



# ADOPTED AS FOLLOWS
# COUNCIL MEMBERS

| | YEAS | NAYS |
|---|---|---|
| Janee **AYERS** | ✓ | |
| Scott **BENSON** | ✓ | |
| Raquel **CASTANEDA-LOPEZ** | ✓ | |
| *George **CUSHINGBERRY, JR.** | ✓ | |
| Gabe **LELAND** | | ✓ |
| Mary **SHEFFIELD** | ✓ | |
| Andre **SPIVEY** | ✓ | |
| James **TATE** | ✓ | |
| Brenda **PRESIDENT JONES** | ✓ | |
| *PRESIDENT PRO TEM | | |
| | 8 | 1 |

13-53846-tjt   Doc 10091-2   Filed 09/21/15   Entered 09/21/15 13:13:21   Page 97 of 92   97
13-53846-tjt   Doc 10087   Filed 07/27/15   Entered 07/27/15 13:14:16   Page 97 of 92
206

# EXHIBIT 6F – WATERFRONT OFFER TO PURCHASE

# PURCHASE AGREEMENT

## BY AND BETWEEN

## CITY OF DETROIT

### and

## WATERFRONT TERMINAL HOLDINGS II, LLC

### (Waterfront Project)

**Date:** _____, 2015

# TABLE OF CONTENTS

RECITALS ......................................................................................................... 1
ARTICLE 1. DEFINITIONS .................................................................................. 1
   1.01 - "Agreement" .......................................................................................... 1
   1.02 - "Associate" ............................................................................................ 2
   1.03 - "Closing" ............................................................................................... 2
   1.04 - "Deed" .................................................................................................. 2
   1.05 - "Effective Date" ..................................................................................... 2
   1.06 - "Encumbrance" ...................................................................................... 2
   1.07 - "Event of Default" and "Default" .......................................................... 2
   1.08 - "Property" ............................................................................................. 2
ARTICLE 2. SALE / COMPENSATION .............................................................. 2
   2.01 - Purchase Price ....................................................................................... 2
ARTICLE 3. TITLE INSURANCE/DEED ............................................................ 2
   3.01 - Title Insurance/Survey .......................................................................... 2
   3.02 - Title/Deed ............................................................................................. 3
ARTICLE 4. TAXES AND ASSESSMENTS ........................................................ 3
   4.01 - Property on Tax Rolls at Closing ........................................................... 3
   4.02 - Property Not on Tax Rolls at Closing .................................................... 3
ARTICLE 5. REPRESENTATION AND WARRANTIES .................................... 4
   5.01 - Inducement ............................................................................................ 4
   5.01 - Survival ................................................................................................. 5
ARTICLE 6. TESTS AND SURVEYANCE; CONDITION OF PROPERTY ........ 5
   6.01 - Surveying and Testing ........................................................................... 5
   6.02 - Condition of Property; Inspection Period .............................................. 6
   6.03 - Release of City from Liability ................................................................ 6
   6.04 - Section 16 of NREPA ............................................................................ 7
ARTICLE 7. CLOSING ....................................................................................... 7
   7.01 - Time and Place of Closing ..................................................................... 7
   7.02 - Conditions to Closing ............................................................................ 7
   7.03 - Delivery of Deed and Possession .......................................................... 8
   7.04 - Payment of Expenses ............................................................................ 8
   7.05 - City's Failure to Convey ....................................................................... 8
ARTICLE 8. DEFAULTS AND EVENTS OF DEFAULT .................................... 8
   8.01 - Default by Purchaser ............................................................................. 8
   8.02 - Failure to Cure Default ......................................................................... 9
   8.03 - Default by the City ................................................................................ 9
ARTICLE 9. REMEDIES ..................................................................................... 9
   9.01 - Remedies Cumulative ............................................................................ 9
   9.02 - Reimbursement of Costs ....................................................................... 9
ARTICLE 10. RESTRICTION UPON SPECULATION AND ASSIGNMENT ...... 10
   10.01 - No Speculation .................................................................................... 10
   10.02 - Prior Approval of Assignment ............................................................. 10
   10.03 - Consideration for Assignment ............................................................. 10
ARTICLE 11. INDEMNITY .................................................................................. 10
   11.01 - Purchaser Indemnification ................................................................... 10
   11.02 - Defense of Claims ............................................................................... 10

i

11.03 - Non-Liability of the City ........................................................................... 10
11.04 - Hazardous Materials ................................................................................. 11
**ARTICLE 12. AMENDMENTS** .......................................................................... **12**
12.01 - Form .......................................................................................................... 12
12.02 - Binding Effect ........................................................................................... 13
**ARTICLE 13. NOTICES** ..................................................................................... **13**
13.01 - Addresses .................................................................................................. 13
13.02 - Date of Notice ........................................................................................... 13
**ARTICLE 14. SALE / COMPENSATION** ......................................................... **14**
14.01 - Severability ............................................................................................... 14
14.02 - Entire Agreement ...................................................................................... 14
14.03 - Terminology .............................................................................................. 14
14.04 - Covenants and Conditions ........................................................................ 14
14.05 - Captions .................................................................................................... 14
14.06 - Cumulative Remedies; Jurisdiction; Venue ............................................. 14
14.07 - Force Majeure ........................................................................................... 14
14.08 - Provisions Not Merged With Deed ........................................................... 15
14.09 - Counterparts ............................................................................................. 15
14.10 - Singular and Plural, etc. ............................................................................ 15
14.11 - Time of the Essence .................................................................................. 15
14.12 - Authority of City ....................................................................................... 15
**EXHIBIT A** ......................................................................................................... **17**
**EXHIBIT B** .......................................................................................................... **18**
**EXHIBIT C** .......................................................................................................... **19**
**EXHIBIT D** .......................................................................................................... **21**
**Schedule I** ............................................................................................................ **25**

ii

# PURCHASE AGREEMENT

**THIS PURCHASE AGREEMENT** ("**Agreement**") is entered into as of _____, 2015, by and between the **CITY OF DETROIT**, a Michigan public body corporate, acting by and through its Planning and Development Department, whose address is 2300 Cadillac Tower, Detroit, Michigan 48226, referred to herein as the "**City**", and **WATERFRONT TERMINAL HOLDINGS II, LLC**, a Michigan limited liability company, whose address is 5431 West Jefferson Avenue, Detroit, Michigan 48209, referred to herein as "**Purchaser.**"

## RECITALS:

A.      Purchaser has offered to purchase land located in the City of Detroit, the legal description of which is set forth on **Exhibit A** attached hereto and incorporated by reference, in accordance with the terms, covenants, and conditions of this Agreement.

B.      Purchaser's planned project for the Property includes the goals set forth on **Exhibit B** attached to this Agreement.

C.      The City believes that the sale of the Property pursuant to this Agreement and the fulfillment generally of this Agreement are in the best interests of the City and the health, safety and welfare of its residents.

In consideration of the foregoing recitals and the mutual obligations of the parties hereto, each of them does hereby covenant and agree with the other as follows:

## ARTICLE 1. DEFINITIONS

The following words and expressions shall, wherever they appear in this Agreement, be construed as follows:

1.01 "**Agreement**" shall mean this Agreement and the following Exhibits and Schedules attached hereto and expressly made a part hereof:

| | |
|---|---|
| Exhibit A | Description of Property |
| Exhibit B | Project Goals |
| Exhibit C | Quit Claim Deed |
| Exhibit D | Right of Entry Letter |
| Schedule I | Certificate of Authority for Waterfront Terminal Holdings II, LLC |

BH165139.3

1

1.02 **"Associate"** shall mean any consultant, contractor, subcontractor, or any other party engaged by Purchaser and the agents and employees of said parties engaged by Purchaser to undertake any of the activities associated with this Agreement.

1.03 **"Closing"** shall mean a date agreed upon by the parties hereto for the transfer of title to the Property, but in no event shall said date be more than ninety (90) days from the Effective Date of this Agreement.

1.04 **"Deed"** shall mean the Quit Claim Deed conveying the Property to Purchaser by the City in substantially the form as attached hereto as **Exhibit C**.

1.05 **"Effective Date"** shall have the meaning set forth in Section 14.12 of this Agreement.

1.06 **"Encumbrance"** shall mean any covenant, license, right of way, easement, limitation, condition, reservation, restriction, right or option, mortgage, pledge, lien, construction lien, mechanic's lien, charge, conditional sale or other title retention agreement or arrangement, encumbrance, lease, sublease, security interest, or trust interest.

1.07 **"Event of Default"** and **"Default"** shall have the meanings as set forth in Article 8 of this Agreement.

1.08 **"Property"** shall mean that parcel of land identified by as a part of the Revere Copper and Brass Site and located in the City of Detroit, as more particularly described in Exhibit A attached hereto and made a part hereof.

## ARTICLE 2. SALE / COMPENSATION

2.01 Purchase Price. Subject to the terms, covenants, and conditions of this Agreement, Purchaser agrees to purchase, and the City agrees to convey, the Property for Seven Hundred Thirty-Five Thousand Dollars ($735,000.00) ("Purchase Price"), to be paid in immediately available funds by wire transfer, or certified or cashier's check simultaneously with the delivery of the Deed.

## ARTICLE 3. TITLE INSURANCE/DEED

3.01 Title Insurance/Survey.

a. Commitment. Within five (5) business days following the Effective Date, Purchaser shall order a commitment for an owner's title insurance policy for the Property showing all matters affecting record title to the Property, subject to the terms, covenants, and conditions of this Agreement and standard exceptions, together with copies of all instruments described in Schedule B thereof (the **"Title Commitment"**). The Title Commitment will be in the amount of the Purchase Price and will be issued by eTitle Agency, with offices at 1650 West Big Beaver Road, Troy, Michigan 48084. A copy of the Title Commitment will be provided to the City promptly upon Purchaser's receipt.

b.  Survey.  Within thirty (30) days following the Effective Date, Purchaser shall obtain a current survey of the Property (the "Survey") from a registered land surveyor.  The legal description of the Property set forth in the Title Commitment shall conform exactly to the legal descriptions in the Survey and the Survey shall contain such detail from the ALTA/ASCM Schedule A Table as Purchaser deems required.  The Survey will be certified to the City, Purchaser, and others designated by Purchaser, and a copy will be provided to the City immediately upon Purchaser's receipt.

c.  Title Objections.  Purchaser shall have the right, until ten (10) days following receipt of the Title Commitment and the Survey (the "Review Period"), to identify in writing those matters and/or title encumbrances identified in the Title Commitment or Survey that are unacceptable to it, in which event the City shall have reasonable opportunity (but not the obligation) to cure or remove such matters (if any) and to satisfy any other requirements set forth therein.  The items contained in the Commitment or the Survey to which Purchaser does not object during the Review Period shall be deemed permitted exceptions (the "Permitted Exceptions").  The City's failure or inability to, within twenty (20) days after receipt of notification of such objections (the "Cure Period"), cure such objections, or conscious decision not to do so, communicated in writing to Purchaser within the Cure Period, shall give Purchaser the right to terminate this Agreement and be relieved of all further obligation to perform hereunder upon notice to the City .

d.  Policy.  The City **WILL NOT** order or pay the premium for an owner's policy of title insurance, nor will the City provide any estoppel or seller's certificate to the Purchaser or the title insurance company.  Any title insurance policy insuring Purchaser's title to the Property, whether an owner's or mortgage policy, with or without standard exceptions, will be at Purchaser's expense.

3.02    Title/Deed.

a.  Conveyance.  At the Closing, if Purchaser has materially complied with all of those terms and conditions precedent to Closing as specified hereunder, the City will deliver the Deed to the Property to Purchaser.

b.  Title conveyed.  Such conveyance and title shall fee simple, and shall, in addition to the conditions and covenants hereinafter provided for, be subject to existing easements and restrictions of record, all applicable zoning and building laws, and other encumbrances (if any) specifically referred to in Exhibit A.  Purchaser acknowledges that the City has not made, and by execution of this Agreement or any Deed does not make, any representations or warranties whatsoever with respect to title to the Property.

**ARTICLE 4. TAXES AND ASSESSMENTS**

4.01    Property on Tax Rolls at Closing.  In the event that the Property is on the tax rolls at the date of Closing, all taxes and assessments which have become a lien upon the Property at the date of Closing shall be paid by the City provided that current City and County taxes shall be prorated and adjusted to the date of Closing on a due date basis.

4.02    Property Not on Tax Rolls at Closing.  In the event that the Property is not on the tax rolls at the date of Closing, Purchaser agrees to pay to the City at Closing an amount equal to the City of

Detroit ad valorem taxes (including debt service but not including any ad valorem taxes which would have been collected by the City on behalf of another governmental body, whether the State, County or any other body or for any other millage) which would have been levied had the Property been on the tax rolls, prorated from the date of Closing to the dates when the next tax bills are issued after the date the Property is placed back on the tax rolls, and the Property will be placed back on the tax rolls as of December 31 of the year in which the Closing takes place. For example, if the date of Closing is on or before December 31, 2015, the Property would be placed back on the tax rolls effective December 31, 2015, the next tax bills issued would be July 1, 2016 for the summer taxes and December 1, 2016 for the winter taxes and the payment for taxes would be pro-rated to June 30, 2016 and November 30, 2016, respectively. If the date of Closing takes place on or after January 1, 2016, the Property will not be placed on the tax rolls until December 31, 2016, and tax bills will not be issued until July 1 and December 1, 2017 and, in that case, the payment for taxes would be prorated to June 30 and November 30, 2017.

## ARTICLE 5. REPRESENTATION AND WARRANTIES

5.01 Inducement. In order to induce the City to enter into this Agreement, Purchaser represents and warrants to the City that:

a. Organization and Qualification. It is a duly organized limited liability company, validly existing and in good standing under the laws of the State of Michigan, and has full power and authority to carry on its business as it is now being conducted.

b. Power to Make Agreement. It has the power to make, deliver and perform this Agreement and finance the Improvements in accordance with the terms and conditions of this Agreement and has taken all necessary action to authorize the foregoing and to authorize the execution, delivery and performance of this Agreement.

c. Lack of Legal Impediments. To the best of its knowledge, the execution, delivery and performance of this Agreement will not violate any provision of any existing law, regulation, order or decree of any court or governmental entity, the violation of which would or could materially affect its ability to fulfill its obligations under this Agreement, or any provision of Purchaser's organizational documents (e.g., charter, articles of incorporation, articles of organization, partnership agreement, bylaws or operating agreement) and will not violate any provision of, or constitute a default under, any agreement or contract to which it is a party, the violation of which would or could materially affect its ability to fulfill its obligations under this Agreement. Purchaser has paid all income, personal and property taxes, and inspection or license fees heretofore due, payable, and owing to the City. Developer is not in default to the City

d. Legal Operation. It is, to the best of its knowledge, in compliance with all existing laws and regulations applicable to it, the violation of which would or could materially adversely affect its ability to fulfill its obligations under this Agreement.

e. Litigation. As of the date of this Agreement, no litigation or administrative proceeding of or before any court or administrative body is presently pending, nor, to its knowledge, is

any such litigation or proceeding presently threatened, against it or any of its property, that, if adversely determined, would or could materially affect its ability to fulfill its obligations under this Agreement.

f. <u>Other Information</u>. To the best of its knowledge, all other written information, reports, papers, and data given to the City by Purchaser with respect to Purchaser are accurate and correct in all material respects and substantially complete insofar as completeness may be necessary to give the City a true and accurate knowledge of the subject matter and all projections of future results are, in its opinion, reasonable.

g. <u>Other Agreements</u>. To the best of its knowledge, it is not a party to any agreement or instrument materially and adversely affecting its present or proposed business, properties or assets, operation or condition, financial or otherwise, not disclosed to the City in writing, the existence of which would or could materially affect its ability to fulfill its obligations under this Agreement; and it is not in default in the performance, observance, or fulfillment of any of the material obligations, covenants, or conditions set forth in any agreement or instrument to which it is a party, the violation of which would or could materially affect its ability to fulfill its obligations under this Agreement.

h. <u>Brokerage and Finder's Fees and Commissions</u>. Purchaser has not engaged any broker, finder or agent with respect to the transactions contemplated by this Agreement. Purchaser shall indemnify and hold the City harmless from and against claims for brokerage in connection with this transaction by any person or party claiming by, through or under Purchaser.

5.02 <u>Survival</u>. All of the representations and warranties contained in this Article 5 or pursuant hereto shall survive the delivery of the Deed and shall remain in full force and effect for a period of six (6) months following the date of Closing. Purchaser shall indemnify and hold the City harmless from and against, and shall be obligated to pay and reimburse the City for, any and all out-of-pocket expenses (including reasonable attorneys' fees, whether inside or outside counsel) which the City may sustain or incur as a result of any misrepresentation or breach of warranty on the part of Purchaser due to the City's reliance thereon. The "best of Purchaser's knowledge" is based on Purchaser's actual knowledge and is without any duty to investigate. Purchaser shall have no liability for a breach of any representation or warranty in the event that Purchaser gives written notice to the City prior to Closing that such representation or warranty was inaccurate or any document or report furnished to or obtained by the City, its agents, employees or contractors in connection with this Agreement shall have disclosed that such representation or warranty was inaccurate prior to Closing.

## ARTICLE 6. TESTS AND SURVEYANCE; CONDITION OF PROPERTY

6.01 <u>Surveying and Testing</u>. The City will, prior to the transfer of title, authorize Purchaser through and in accordance with a fully executed Right-of-Entry, to make soil boring and bearing tests and undertake such surveying and environmental and other due diligence activities as Purchaser deems appropriate, provided such does not interfere with the City's use, if any, and subject to the Purchaser's compliance with the requirements of this Article 6 and elsewhere in this Agreement. All such testing shall be done at Purchaser's risk and expense. Subject to the terms of the aforementioned Right of Entry, Purchaser shall give prior notice to the City to inspect and investigate the condition of the Property, including its environmental condition and shall conduct such inspection and investigation as Purchaser desires during normal business hours. Prior to entering onto the Property for such purposes,

Purchaser shall (i) request authorization from the Building, Safety, Engineering and Environmental Department and provide details of the intended activities and other documentation deemed necessary by the City, (ii) obtain a Right-of-Entry letter from City, (iii) execute said letter, and (iv) comply with all conditions and requirements stated therein. Purchaser shall use all reasonable efforts to minimize damage to the Property in connection with such entry and shall fully restore the Property to the condition existing prior to such entry. Purchaser shall indemnify, defend and hold the City harmless from and against, any and all loss, cost, liability and expense, including reasonable attorneys' fees and litigation costs, suffered or incurred by the City as a result of the Purchaser's activities in accordance with the Right-of-Entry. Purchaser shall submit to the City a copy of each survey or report generated as a result of such activities.

6.02    Condition of Property; Inspection Period.

a. Purchaser takes the Property as it finds it, **"AS IS"**, and the City makes no implied or express representations or warranties as to its fitness for absolutely any purpose whatsoever. By executing this Agreement, Purchaser acknowledges that it is satisfied with the condition of the Property, subject only to inspection of the Property, review of title, and the results of the tests, investigations, and surveys permitted under Section 6.01, above. If, within ninety (90) days of the Effective Date, Purchaser fails to undertake such investigations and/or obtain such test results and surveys, or fails to object to the condition of the Property based upon the results of such tests, investigations or surveys, or fails to deliver copies of any and all reports of such tests, investigations and/or surveys to the City, Purchaser shall be deemed to have waived any right to object to the condition of the Property and shall be deemed to have declared its full satisfaction therewith.

b. In order to facilitate Purchaser's investigation of the Property, within ten (10) business days of the Effective Date hereof, the City shall deliver copies of any existing (i) environmental site assessments, reports, notices or correspondence from environmental regulatory authorities or citations, (ii) lease agreements, lease modifications, or third-party property/occupancy rights, if any (iii) notices or other correspondence that has been received from any governmental agency regarding the condition of the Property or pending government actions, (iv) land surveys, and (v) soil reports (collectively, the "Due Diligence Materials"), provided the same are in the City's possession or control.

c. In the event Purchaser determines, based on its inspection of the Property, review of title, and the results of the tests, investigations, and surveys permitted under Section 6.01, above that it does not wish to proceed with the purchase of the Property, Purchaser shall have the right for any reason whatsoever in its sole discretion, prior to the ninety-first (91st) day following the Effective Date, to terminate this Agreement by delivery of a written notice to the City (the "Notice of Termination"). Upon timely delivery by Purchaser of the Notice of Termination, this Agreement shall terminate without liability of Purchaser.

6.03    Release of City from Liability.  Purchaser hereby releases the City and its officials, employees, and agents (but not any third party) from any and all liability for any defects in or conditions of the Property, including but not limited to any surface, subsurface, latent or patent conditions whether naturally occurring or by action of any party, or conditions currently existing thereon, including but not limited to conditions described in Section 11.04, but subject to Section 11.04.

BH165139.3                                    6

6.04    Section 16 of NREPA. Pursuant to the requirements of Section 16 of Part 201 of NREPA, MCL 324.20116, Purchaser agrees that the City has notified Purchaser that the Property is a "facility" as that term is defined in Part 201 of NREPA. The general nature and extent of any land or resource restrictions or any release at or from the facility that is known to the City is more fully described in certain reports, copies of which have been provided to Purchaser. By its execution of this Agreement, Purchaser acknowledges receipt of the following reports:

**Insert list of documents, if any, identified by DEA:  NONE.**

## ARTICLE 7. CLOSING

7.01    Time and Place of Closing.  The City will notify Purchaser of the prospective closing date not less than ten (10) calendar days prior to the Closing, unless otherwise agreed between the parties. The Closing shall occur within thirty (30) days after satisfaction of the conditions to closing as specified in Section 7.02 of this Agreement.  The Closing shall take place at the office of the City's Planning & Development Department, or such other location in downtown Detroit designated by the City.  If the conditions to closing specified in Section 7.02 of this Agreement have not been satisfied or waived by June 1, 2015, either party may, thereafter, terminate this Agreement without further liability.

7.02    Conditions to Closing.

a.    City's Obligations to Close.  The obligation of the City to effect a Closing hereunder shall be subject to receipt of a resolution(s) by the Detroit City Council authorizing the transaction and fulfillment of all conditions contained therein, and fulfillment by Purchaser of each of the following conditions precedent:

(i)    Accuracy of Representations and Warranties.  All representations and warranties of Purchaser set forth in Section 5.01 of this Agreement shall be true and correct as of the date of Closing as if made on that date.

(ii)    Resolution of Purchaser's Authority.  Purchaser shall furnish to the City a certified copy of a resolution satisfactory to the City in form and substance, duly adopted by the Board of Directors or Members of Purchaser, or an authorized vote of the partners or joint venturers, authorizing the execution, delivery and performance of this Agreement and all other documents and actions contemplated hereunder.  Purchaser shall also furnish to the City an incumbency certificate, executed by the corporate secretary or proper manager of Purchaser, identifying the officers or managers of Purchaser.

(iii)    Payment of Purchase Price and Closing Costs.  Purchaser shall have tendered payment of the Purchase Price and the closing costs payable by Purchaser.

(iv)    No Default.  There shall be no existing Default by Purchaser under this Agreement.

b.    Purchaser's Obligations to Close.  The obligation of Purchaser to effect a Closing hereunder shall be subject to the fulfillment by the City of each of the following conditions precedent:

(i) <u>Title</u>. Title to the Property shall be in the form required by this Agreement.

(ii) <u>City Council and Other Approval</u>. The City shall furnish to Purchaser a resolution(s) by the Detroit City Council authorizing the transaction and all conditions contained therein shall be fulfilled.

(iii) <u>Acceptable Condition of Property</u>. The physical and environmental condition of the Property and the results of Purchaser's other investigations shall be acceptable to Purchaser, pursuant to Article 6.

7.03 <u>Delivery of Deed and Possession</u>. The City will deliver the Deed to the Property and the possession thereof to Purchaser at the Closing provided that Purchaser has complied with all conditions precedent as specified herein. Purchaser shall be responsible for recording the Deed and paying all recording costs (including the cost of the documentary stamp tax on the Deed, if any):

7.04 <u>Payment of Expenses</u>. Purchaser shall pay all costs, fees, and out of pocket expenses of whatsoever kind or nature related to the procurement of services of Associates and contractors, etc. which have been incurred pursuant to the making of this Agreement and shall hold the City harmless with respect to the payment of same notwithstanding anything contained herein or elsewhere to the contrary.

7.05 <u>City's Failure to Convey</u>. In the event the City does not tender the conveyance of the Property in the manner provided in this Agreement, and any such failure shall not be cured within thirty (30) days after written demand by Purchaser, then, provided Purchaser is not in material Default under this Agreement, at the option of Purchaser, this Agreement shall be terminated, or, if all of the conditions set forth in Section 7.02a above have been satisfied, Purchaser shall be entitled to seek specific performance of this Agreement. In no event shall Purchaser seek or be entitled to money damages.

## ARTICLE 8. DEFAULTS AND EVENTS OF DEFAULT

8.01 <u>Default by Purchaser</u>. The occurrence of any one or more of the following events prior to Closing shall constitute a Default of this Agreement by Purchaser:

a. Purchaser admits in writing its inability to pay its debts generally as they become due, or Purchaser ceases to conduct business in the normal course by reason of any of the following: (i) The making by Purchaser of any general arrangement or general assignment for the benefit of creditors; (ii) Purchaser becoming a "debtor" as defined in 11 USC § 101 or any successor statute thereto (unless, in the case of a petition filed against Purchaser, the same is dismissed within sixty (60) days); (iii) the appointment of a trustee or receiver to take possession of substantially all of Purchaser's assets located at the Property or of Purchaser's interest in this Agreement, where possession is not restored to Purchaser within sixty (60) days; (iv) the attachment, execution or other judicial seizure of substantially all of Purchaser's assets located at the Property or of Purchaser's interest in this Agreement, where such seizure is not discharged within sixty (60) days; or (v) its voluntary or involuntary dissolution. In the

event that any provision of this subsection is contrary to any applicable law, such provision shall be of no force or effect.

b. Purchaser violates any of the terms and conditions of this Agreement, except as otherwise provided in this Section 8.01, and Purchaser fails to cure same within thirty (30) days after receipt of written notice by the City to cure said Default.

c. Purchaser, not due to any breach of the City, does not acquire the Property pursuant to a Closing in accordance with this Agreement, unless such failure is due to the failure of a condition precedent to Purchaser's obligation to close as set forth in this Agreement.

8.02    Failure to Cure Default.  Any such Default on the part of Purchaser as set forth in Section 8.01 and the failure of Purchaser to cure such Default or within thirty (30) days after written demand by the City to cure said Default for Subsection 8.01b shall be deemed to constitute an **Event of Default**, provided, however, that if the nature of Purchaser's Default is such that more than the cure period provided is reasonably required for its cure, then Purchaser shall not be deemed to be in default if Purchaser commences such cure within said period and thereafter diligently pursues such cure to completion.  Defaults pursuant to Subsections 8.01a are hereby deemed to be material, non-curable Events of Default without the necessity of any notice by the City to Purchaser thereof.  The City may, in its sole discretion, waive in writing any Default or Event of Default by Purchaser.

8.03    Default by the City.  The City shall not be in default unless the City fails to perform obligations required of the City within a reasonable time, but in no event later than ninety (90) days, after written notice by Purchaser to the City, specifying wherein the City has failed to perform such obligation, provided, however, that if the nature of the City's obligation is such that more than ninety (90) days are reasonably required for performance then the City shall not be in default if the City commences performance within such ninety (90) day period and thereafter diligently pursues such performance to completion.

## ARTICLE 9. REMEDIES

9.01    Remedies Cumulative.  The rights and remedies of the City, whether provided by law or by this Agreement, shall be cumulative, and the exercise by the City of any one or more of such remedies shall not preclude the exercise by it, at the same or different times, of any other such remedies for the same default or breach.  No waiver made by the City shall apply to obligations beyond those expressly waived in writing.

9.02    Reimbursement of Costs.  Purchaser shall reimburse the City for its expenses, including reasonable attorney fees (whether inside or outside counsel), reasonably incurred by the City after an Event of Default in connection with the enforcement of or the preservation of any rights under this Agreement.

# ARTICLE 10. RESTRICTION UPON SPECULATION AND ASSIGNMENT

10.01   <u>No Speculation</u>.   Purchaser represents that its purchase of the Property and its other undertakings pursuant to this Agreement are for the purpose of development of the Property for use in connection with Purchaser's adjacent facility and not for speculation.

10.02   <u>Prior Approval of Assignment</u>.   Purchaser will not assign this Agreement, without the prior written approval of the City, except for an assignment to a parent, subsidiary or other company controlling, controlled by or in common control with Purchaser. Any proposed transferee shall, by instrument in writing, for itself and its successors and assigns, and expressly for the benefit of the City, assume all of the obligations of Purchaser under this Agreement and agree to be subject to all the conditions and restrictions to which Purchaser is subject. The consent of the City to an assignment or transfer in any one case shall not relieve Purchaser or the transferee of the obligation to obtain the consent of the City for any additional assignments or transfers.

10.03   <u>Consideration for Assignment</u>.   Prior to the City's approval of any assignment pursuant to Section 10.02, Purchaser shall certify to the City that the consideration paid for the transfer of any of Purchaser's interest in this Agreement does not exceed an amount representing the actual cost (including carrying charges) incurred by Purchaser in connection with this Agreement; it being the intent of this Section to preclude assignment of this Agreement for profit. In the event Purchaser transfers any such interest at a profit, said profit shall belong to and forthwith be paid to the City.

# ARTICLE 11. INDEMNITY

11.01   <u>Purchaser Indemnification.</u>   Purchaser agrees to and shall indemnify and save harmless the City, its agents and employees against and from any and all liabilities, obligations, damages, penalties, claims, costs, charges, losses and expenses (including without limitation, reasonable fees and expenses of attorneys, whether inside or outside counsel, expert witnesses and other consultants) (collectively, "Damages") that may be imposed upon, incurred by or asserted against the City related to this purchase by reason of any negligent or tortious act or omission of Purchaser or its Associates resulting in personal injury, bodily injury, sickness, disease or death, or injury to or destruction of tangible property including the loss of use therefrom, except to the extent such Damages are caused by the City's or its, employees', contractors' or agents' gross negligence or willful misconduct. Purchaser also agrees to hold the City harmless from any and all injury to the person or damage to the property of an employee of the City which arises out of or pursuant to any negligent or tortious act or omission of Purchaser or its Associates resulting in personal injury, bodily injury, sickness, disease or death, or injury to or destruction of tangible property including the loss of use therefrom except to the extent such loss or injury is caused by the City's or its, employees', contractors' or agents' gross negligence or willful misconduct.

11.02   <u>Defense of Claims</u>.   In the event any action or proceeding shall be brought against the City by reason of any claim covered hereunder, Purchaser, upon notice from the City, will at its sole cost and expense, resist and defend the same, using legal counsel reasonably acceptable to the City.

11.03   <u>Non-Liability of the City</u>.   From and after the date of Closing, the City shall not be responsible or liable to Purchaser, and Purchaser hereby releases the City from liability, for any loss or

damage that may be occasioned by or through the acts or omissions of persons occupying any part of the Property. From or after the date of Closing, Purchaser shall be solely responsible for all injuries to persons and property resulting from any accident, explosion, leak or other cause arising in or about the use of the Property and its appurtenances, as hereinbefore stated. The City shall not be responsible for any loss or damage resulting to Purchaser or its property or to any other person or persons on their property which may be caused by the bursting, stopping, or leaking of water, gas, sewer or steam pipes or from overflow or backing up of any sewer or water main, unless caused by the City's gross negligence or willful misconduct.

11.04    Hazardous Materials.

a.    Definitions.

(i)    "**Relevant Environmental Laws**," as referred to herein, shall mean all applicable federal, state, and local laws, rules, regulations, orders, judicial determinations, and decisions or determinations by any judicial, legislative or executive body of any governmental or quasi-governmental entity, whether in the past, the present or the future, with respect to:

(a)    the installation, existence, or removal of, or exposure to, Asbestos on the Property.

(b)    the existence on, discharge from, or removal from the Property of Hazardous Materials.

(c)    the effects on the environment of the Property or any activity conducted on the Property.

Relevant Environmental Laws shall include, but are not limited to, the following: (i) the Comprehensive Environmental Response, Compensation, and Liability Act, 42 USC Sections 9601, *et seq.;* the Superfund Amendments and Reauthorization Act, Public Law 99-499, 100 Stat. 1613; the Resource Conservation and Recovery Act, 42 USC Sections 6901, *et seq.*; the National Environmental Policy Act, 42 USC Section 4321; the Safe Drinking Water Act, 42 USC Sections 300F, *et seq.*; the Toxic Substances Control Act, 15 USC Section 2601; the Hazardous Materials Transportation Act, 49 USC Section 1801; the Federal Water Pollution Control Act, 33 USC Sections 1251, *et seq.*; the Clean Air Act, 42 USC Sections 7401, *et seq.*; and the regulations promulgated in connection therewith; (ii) Environmental Protection Agency regulations pertaining to Asbestos (including 40 CFR Part 61, Subpart M); Occupational Safety and Health Administration Regulations pertaining to Asbestos (including 29 CFR Sections 1910.1001 and 1926.58) as each may now or hereafter be amended; and (iii) any state and local laws and regulations pertaining to Hazardous Materials and/or Asbestos.

(ii)    "**Asbestos**," as referred to herein, shall have the meanings provided under the Relevant Environmental Laws and shall include, but not be limited to, asbestos

fibers and friable asbestos as such terms are defined under the Relevant Environmental Laws.

(iii) **"Hazardous Materials,"** as referred to herein, shall mean any of the following as defined by the Relevant Environmental Laws: Asbestos; hazardous wastes; solid wastes; toxic or hazardous substances, wastes, or contaminants (including, but not limited to, polychlorinated biphenyls (PCB's), paint containing lead, and urea formaldehyde foam insulation).

b. <u>Release and Indemnity</u>. The City shall give Purchaser the opportunity to inspect the Property and conduct such environmental assessments and testing as Purchaser has deemed appropriate. The City shall not be liable to Purchaser for, and Purchaser, for itself and its successors and assigns, hereby releases the City from, any and all liability for any violation or alleged violation of the Relevant Environmental Laws by Purchaser respecting the Property, whether such alleged violation occurred before or after Closing and the transfer of possession to Purchaser. The City shall not be liable for, and Purchaser shall immediately pay to the City when incurred and shall indemnify, defend and hold the City harmless from and against, all loss, cost, liability, damage and expense (including, but not limited to, attorneys' fees and costs incurred in the investigation, defense and settlement of claims) that the City may suffer or incur as a result of or in connection in any way with any violation of the Relevant Environmental Laws occurring after the Closing, any environmental assessment or study from time to time undertaken or requested by Purchaser, or breach of any covenant or undertaking by Purchaser in this Section; provided, however, Purchaser shall have no obligation to the City with respect to: (i) indemnified liabilities arising solely from the gross negligence or willful misconduct of the City; or (ii) conditions or Hazardous Materials existing at the time of Closing.

c. <u>Survival</u>. The provisions of this Section shall survive the termination of this Agreement.

d. <u>Breach</u>. Breach of any of the representations, warranties and/or covenants contained in this Article shall be a default under this Agreement; provided, however, that no breach shall be deemed to have occurred so long as, upon becoming aware of a possible breach, Purchaser proceeds to reasonably investigate and remedy in compliance with the Relevant Environmental Laws the matter giving rise to the possible breach.

e. <u>Assignment of Cause of Action</u>. The City shall, upon request of Purchaser, convey, assign and transfer to Purchaser any claim or cause of action the City may have against others in connection with any liability against which Purchaser has fully indemnified the City (including payment) under this Agreement.

## ARTICLE 12. AMENDMENTS

12.01 <u>Form</u>. Any change, addition, deletion, extension or modification of this Agreement (including assignments) that is mutually agreed upon by and between the City and Purchaser shall be incorporated in a written amendment (herein called **"Amendment"**) to this Agreement. Such Amendment shall not invalidate this Agreement nor relieve or release Purchaser of any of its obligations under this Agreement unless stated therein.

12.02  <u>Binding Effect</u>.  No Amendment to this Agreement shall be effective and binding upon the parties unless it expressly makes reference to this Agreement, is in writing, is signed and acknowledged by duly authorized representatives of both parties.  To be effective against the City, the Amendment must be authorized as set forth in Section 14.12 of this Agreement.

## ARTICLE 13. NOTICES

13.01  <u>Addresses</u>.  Except as otherwise specified herein, all notices, consents, approvals, requests and other communications (herein collectively called **"Notices"**) required or permitted under this Agreement shall be given in writing and personally delivered with receipt obtained, or mailed by registered or certified first-class mail, return receipt requested, addressed as follows:

If to the City:

> Director
> City of Detroit
> Planning & Development Department
> 2000 Cadillac Square
> Detroit, Michigan  48226
>
> with a copy to:
>
> Corporation Counsel
> City of Detroit Law Department
> 2 Woodward Avenue, Suite 500
> Detroit, Michigan 48226

If to Purchaser:

> Harry C. Warner, President
> Waterfront Terminal Holdings II, LLC
> 5431 West Jefferson Avenue
> Detroit, Michigan  48209
>
> with a copy to:
>
> Beth S. Gotthelf, Attorney at Law
> Butzel Long
> Stoneridge West, 41000 Woodward Avenue
> Bloomfield Hills, Michigan 48304

13.02  <u>Date of Notice</u>.  All notices shall be deemed given when hand-delivered or, if mailed, three (3) days after the day of mailing.  Either party to this Agreement may change its address for the receipt of Notices at any time by giving notice thereof to the other as provided in Section 13.01.  Any Notice given by a party hereunder must be signed by an authorized representative of such party.

## ARTICLE 14. MISCELLANEOUS

14.01 <u>Severability</u>. If any one or more provisions of this Agreement or in any instrument or other document delivered pursuant to this Agreement or the application thereof to any person or circumstance shall to any extent be declared or determined to be invalid or unenforceable, the validity, legality and enforceability of the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected or impaired thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

14.02 <u>Entire Agreement</u>. This instrument, including the exhibits listed in Section 1.01 which are attached hereto and which are made a part of this Agreement, contains the entire agreement between the parties and all prior negotiations and agreements are merged herein. Purchaser acknowledges that neither the City nor the City's agents have made any representations except those expressly set forth herein, and no rights or remedies are or shall be acquired by Purchaser by implication or otherwise unless expressly set forth herein.

14.03 <u>Terminology</u>. Unless the context otherwise expressly requires, the words "herein", "hereof", and "hereunder", and other words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or other subdivision.

14.04 <u>Covenants and Conditions</u>. All the terms and provisions of this Agreement shall be deemed and construed to be "covenants" and "conditions" as though the words specifically expressing or imparting covenants and conditions were used in each separate term and provision.

14.05 <u>Captions</u>. The headings of the Articles, Sections and other subdivisions in this Agreement are for convenience only and shall not be used to construe or interpret the scope or intent of this Agreement or in any way affect the same.

14.06 <u>Cumulative Remedies; Jurisdiction; Venue</u>. The rights and remedies set forth herein are not exclusive and are in addition to any of the rights and remedies provided by law or equity; provided, however, that if the City breaches any of its obligations under this Agreement, then, after reasonable notice and opportunity to cure, Purchaser shall have the right solely to seek injunctive relief, specific performance or other equitable remedies for the City's breach of this Agreement, and in no event shall Purchaser be entitled to monetary damages as a result of the City's breach of this Agreement. All actions arising under this Agreement shall be governed by, subject to, and construed according to the laws of the State of Michigan. Purchaser agrees, consents, and submits to the personal jurisdiction of any competent court in Wayne County, Michigan for any action brought against it arising out of this Agreement. Purchaser agrees that service of process at the address and in the manner specified in Article 13 will be sufficient to put Purchaser on notice. Purchaser also agrees that it will not commence any action against the City because of any matter whatsoever arising out of or relating to the validity, construction interpretation and enforcement of this Agreement, in any courts other than those in the County of Wayne, State of Michigan.

14.07 <u>Force Majeure</u>. In the event of enforced delay in the performance by either party of obligations under this Agreement due to unforeseeable causes beyond its control and without its fault or

negligence, including, but not restricted to, acts of God or of the public enemy, acts of the government, acts of the other party, fires, floods, epidemics, or severe weather, the time for performance of such obligations shall be extended for the period of the enforced delays; provided that the party seeking the benefit of the provisions of this Section shall within thirty (30) days after the beginning of such enforced delay, have first notified the other party in writing of the causes thereof and requested an extension for the period of the enforced delay.

14.08   Provisions Not Merged With Deed.   No provision of this Agreement is intended to or shall be merged by reason of any Deed transferring title to the Property from the City to Purchaser or any successor in interest, and any such Deed shall not be deemed to affect or impair the provisions and covenants of this Agreement.

14.09   Counterparts.   This Agreement may be executed in counterparts, each of which shall be deemed to be an original document but together shall constitute one instrument.

14.10   Singular and Plural, etc..   As used herein, the singular include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

14.11   Time of the Essence.   Time is of the essence of this Agreement.

14.12   Authority of City.   Notwithstanding anything in this Agreement or otherwise to the contrary, the City shall not be authorized or obligated to sell the Property to Purchaser until the date that this Agreement has been fully executed by the duly authorized representative of the City pursuant to the resolution of the Detroit City Council or other governmental official or agent with jurisdiction over the matter and approved by the City of Detroit Law Department (the "Effective Date").   Any amendments or modifications must likewise be duly authorized by resolution and approval of all of the same parties.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first set forth above.

WITNESSES:

_James K Dowling Jr_
Print: _JAMES K DOWLING JR_

Print: _____

STATE OF MICHIGAN )
                  )ss.
COUNTY OF _____ )

PURCHASER

WATERFRONT TERMINAL HOLDINGS II, LLC

By: _____
Print: Harry C. Warner
Its: President

The foregoing instrument was acknowledged before me on _____, 2015, by Harry C. Warner, the President of WATERFRONT TERMINAL HOLDINGS II, LLC, a Michigan limited liability company, on behalf of said entity.

Print: _____
Notary Public, _____ County, Michigan
My commission expires: _____
Acting in the County of _____

WITNESSES:

_____
Print:

_____
Print:

STATE OF MICHIGAN )
                  )ss.
COUNTY OF WAYNE )

CITY OF DETROIT,
a Michigan public body corporate

By: _____
Arthur Jemison, Mayor's Designee
Pursuant to EM Order No. 38, ¶13

The foregoing instrument was acknowledged before me on _____, 2015 by Arthur Jemison, Mayor's Designee Pursuant to EM Order No. 38, ¶13.

Print: _____
Notary Public, Wayne County, Michigan
My commission expires: _____
Acting in the County of Wayne

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first set forth above.

WITNESSES:

**PURCHASER**

WATERFRONT TERMINAL HOLDINGS II, LLC

_____
Print:

By: _____
Print:       Harry C. Warner

_____
Print:

Its:        President

STATE OF MICHIGAN    )
                      )ss.
COUNTY OF _____  )

The foregoing instrument was acknowledged before me on _____, 2015, by Harry C. Warner, the President of WATERFRONT TERMINAL HOLDINGS II, LLC, a Michigan limited liability company, on behalf of said entity.

_____
Print:
Notary Public, _____ County, Michigan
My commission expires: _____
Acting in the County of _____

WITNESSES:

**CITY OF DETROIT,**
a Michigan public body corporate

_____
Print:

By: _____
 Arthur Jemison, Mayor's Designee

_____
Print:

Pursuant to EM Order No. 38, ¶13

STATE OF MICHIGAN    )
                      )ss.
COUNTY OF WAYNE    )

The foregoing instrument was acknowledged before me on _March 30_, 2015 by Arthur Jemison, Mayor's Designee Pursuant to EM Order No. 38, ¶13.

KAREN M. BEAVER
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES Jun 21 2018
ACTING IN COUNTY OF _Wayne_

Print: _Karen M. Beaver_
Notary Public, Wayne County, Michigan
My commission expires: _6/21/2018_
Acting in the County of Wayne

BH165139.3

16

EXHIBIT A
LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING
DESCRIBED AS LOTS 1207 THROUGH 1214 BOTH INCLUSIVE, LOT 1215 EXCEPT
THE EASTERLY 6.36 FEET THEREOF, ALL BEING TOGETHER WITH THE ADJACENT
VACATED PUBLIC ALLEY (20 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF
THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED
IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO THE
WESTERLY 213.64 FEET OF THE EASTERLY 574.00 FEET OF PRIVATE CLAIM NO.
39 LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE
WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20,
PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND
ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING
MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT
SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO.
39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS;
THENCE N.61°37'43"E. 213.64 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON
AVENUE (80 FEET WIDE) TO A POINT BEING 6.36 FEET WESTERLY FROM THE
NORTHEAST CORNER OF LOT 1215 OF THE "SIXTH PLAT SUBDIVISION OF THE
PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN
LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E.
1068.40 FEET ALONG A LINE 360.36 FEET WEST OF THE EASTERLY LINE OF
SAID PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE;
THENCE S.34°06'08"W. 241.60 FEET ALONG SAID DETROIT RIVER U.S. HARBOR
LINE; THENCE N.28°03'35"W. 1180.06 FEET ALONG A LINE 574.00 FEET WEST
OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF
BEGINNING; SAID PARCEL CONTAINING 5.5137 ACRES, MORE OR LESS AND
BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: _____ DATE:_____

Street Address[es]:

Property Tax Ward & Item numbers:

EXHIBIT B
PROJECT GOALS


1)    Construction contracts shall provide that at least fifty-one percent (51%) of the workforce must be Detroit residents, and Detroit residents shall perform fifty-one percent (51%) of the hours worked on the project.

2)    Waterfront Petroleum shall establish a goal of contracting with at least thirty percent (30%) of Detroit-based Businesses, Detroit-headquartered Businesses, and/or Detroit Emerging Businesses (gross receipts of $1 million or less) retained to provide services on the project. Of these categories, the City will give greater weight to Detroit-headquartered Businesses.

EXHIBIT C

## QUIT CLAIM DEED

Subject to the following paragraph, the City of Detroit, a Michigan public body corporate whose address is 2 Woodward Avenue, Detroit, MI 48226 ("**Grantor**"), quit claims to Waterfront Terminal Holdings II, LLC, a Michigan limited liability company whose address is 5431 West Jefferson Avenue, Detroit, MI 48209 ("**Grantee**"), the premises located in the City of Detroit, Wayne County, Michigan, described as:

(See attached Exhibit A)

A/K/A _____     Ward: _____ Item(s): _____

(the "**Property**"), for the sum of _____($ _____ ), subject to and reserving to the City of Detroit its rights under public easements and rights of way, easements of record, applicable zoning ordinances and restrictions of record.

This deed is dated as of _____.

WITNESSES:                          CITY OF DETROIT, a Michigan public body
                                    corporate

_____
Print: _____       By:_____
                                      Print: _____
_____               Its: _____
Print: _____

13-53846-tjt   Doc 10087-1   Filed 09/27/15   Entered 09/27/15 13:14:16   Page 124 of
13-53846-tjt   Doc 10087-1   Filed 09/27/15   Entered 09/27/15 13:31:21   Page 124 of
206
121

STATE OF MICHIGAN )
                           )ss.
COUNTY OF WAYNE )

      The foregoing instrument was acknowledged before me on _____, 20___, by
_____, the _____ of the City of Detroit,
a Michigan public body corporate, on behalf of the City

_____

Print:

Notary Public, Wayne County, Michigan
My commission expires: _____
Acting in the County of _____

| | |
|---|---|
| Pursuant to § 18-5-4 of the Detroit City Code, I hereby certify that proper and fair consideration has been received by the City pursuant to this instrument. | Approved by City Council on _____ JCC pp _____ or Detroit Legal News, _____, on file in my office. |
| | Approved by Mayor on _____ |
| _____ <br> Finance Director | |
| Approved by Law Department pursuant to Sec. 7.5-206 of the Charter of the City of Detroit: | _____ <br> City Clerk |
| _____ <br> Corporation Counsel | |

This Instrument Drafted by:
Bruce N. Goldman
Property Section
City of Detroit Law Department
2 Woodward Avenue, Suite 550
Detroit, Michigan 48226

When recorded, return to:
Beth S. Gotthelf, Attorney at Law
Butzel Long
Stoneridge West, 41000 Woodward Avenue
Bloomfield Hills, Michigan 48304

Exempt from transfer taxes pursuant to MCL § 207.505(h)(i) and MCL § 207.526(h)(i).

EXHIBIT D

Right of Entry Letter

**[DATE]**

_____, Project Manager
[Name of Environmental Consultant]
[Address]

**RE: Request for Right-of-Entry:**
**[Address/Location] (Ward #/Item #)**
**Detroit, Michigan**

Dear _____:

You have requested a right-of-entry to conduct **[general description of requested activities]** at the above-referenced address (hereinafter, the "Site").

Please be advised that the City of Detroit grants permission to **[Environmental Consultant]**, including its contractors, subcontractors, representatives, agents, and employees (collectively, "User") to enter the above-referenced Site for the sole purpose of conducting certain environmental activities, within the confines of the Scope of Work contained in **Exhibit A**.

This Right-of-Entry is subject in all respects to the following conditions:

1. Subject to satisfaction of the terms and conditions contained herein, this Right-of- Entry shall commence on **[start date]**, and shall automatically terminate upon the completion of the work described herein, or on **[end date]**, whichever occurs first.

2. User shall hold the City of Detroit harmless and shall defend and indemnify the City of Detroit from and against any and all damages, claims, obligations, penalties, costs, charges, losses, demands, liabilities, and expenses (including, without limitation, fees and expenses for attorneys, expert witnesses and other consultants) that may be imposed upon, incurred by, or asserted against the City of Detroit or its departments, officers, employees, or agents arising from and related to User and its contractors', subcontractors', representatives', agents', and employees' use of the Site and this Right-of-Entry (including but not limited to, any release or threatened release of hazardous and non-hazardous substances, contaminants, exacerbation, evacuation, on-site and/or off-site property damage, or bodily injury).

3. **[Environmental Consultant]** shall continue to maintain, and shall cause its contractors, subcontractors, representatives, and agents to continue to maintain, at their sole expense, during the time this Right-of-Entry is in effect, the following separate insurance policies:

   • Commercial General Liability Insurance (Broad Form Comprehensive) written on an occurrence-based coverage, with a minimum combined single limit of $1,000,000.00 for each occurrence of bodily injury and property damage, and $2,000,000.00 in the aggregate, with the general aggregate limit applying per location.

• Automobile Liability Insurance covering all owned, hired, and non-owned vehicles with Michigan No-Fault Coverage plus residual liability coverage with a minimum combined single limit of $1,000,000.00 for each occurrence of bodily injury and property damage.

• Worker's Compensation Insurance for employees which meets Michigan's Statutory minimum requirements and Employer's Liability Insurance with the minimum limits of $500,000.00 for each disease, person, and accident.

• Contractor Pollution Liability Insurance with minimum limits of $1,000,000.00 per occurrence, and $2,000,000.00 in the aggregate.

Said insurance policies shall name the User as the insured. The City of Detroit shall be named as an additional insured on the certificates of insurance, without limitation, for all preceding coverage, excluding workers' compensation and employers' liability insurance. Each policy shall be accompanied by a commitment from the insurer that such policies shall not be canceled, modified, or coverage reduced without at least thirty (30) days prior notice to the City of Detroit. Certificates of Insurance evidencing such coverage and endorsements shall be submitted to the City of Detroit prior to the commencement of performance under this Right-of-Entry, and at least fifteen (15) days prior to the expiration dates of expiring policies.

4. User shall not impair any part of the Site, except as customarily incident to the activities described in Exhibit A and in accordance with all applicable laws. User shall repair any damage caused to the Site and/or properties affected by the activities at the Site, and restore the Site and/or properties affected by the activities at the Site to its/their original condition. Initial access to the Site shall be coordinated through the Planning and Development Department, Property Management Section at (313) 224-1187.

5. User shall contact the Department of Public Works, City Engineering Division at (313) 224-3935 upon the discovery of any damage caused by User's activities to the curb, sidewalk, street, or any portion of the right of way and/or infrastructure in order to provide notice and obtain the proper City of Detroit permits for repair.

6. User will not bring any soils or other materials onto the Site, except in strict accordance with the Department of Public Works, City Engineering Division Standard Specifications for the above-referenced Site and only with prior written verification for compliance by the City of Detroit's Buildings, Safety Engineering, and Environmental Department –Environmental Affairs of the User's fill material analytical data. User shall be responsible for the removal of any and all materials, tools and equipment brought onto the Site required for the authorized activities, and User shall assume the risk of loss or damage to any materials, tools and equipment.

7. User is entering upon and using the Site at its own risk, and accepts the Site "As Is". The City of Detroit makes no representation or warranty as to the status of title or the physical or environmental condition of the Site, or its fitness for any particular use.

8. User shall take all reasonable measures and precautions to mitigate any noise, vibrations, dust, and odors emanating from the activities on the Site.

9. User shall immediately notify the City's Buildings, Safety Engineering, and Environmental Department – Environmental Affairs at (313) 471-5108 upon the discovery of a suspected release of hazardous substances, hazardous materials, contaminants, or property damage as a result of User's activity at the Site.

10. User shall provide to the City of Detroit, without charge, copies of any and all draft and final work plans, reports, health and safety plans, and other environmental, analytical, or engineering documents relating in any way or arising out of its activities at the Site.

Upon the preparation of the documents, three copies of each document shall be provided to:

>Raymond A. Scott, General Manager
>City of Detroit
>Buildings, Safety Engineering, and Environmental Department
>2 Woodward Avenue, Suite 401
>Detroit, Michigan 48226

11. This instrument and the rights granted hereunder may not be assigned by User.

12. User shall take all precautions necessary to make the Site safe for the authorized activities, including, where appropriate, preparation and adherence to a site-specific health and safety plan.

13. User shall be responsible for ensuring compliance with all applicable federal, state, and local laws, rules, regulations, standards, plans, and orders. Any violation of the applicable laws, rules, regulations, standards, plans, and orders; or breach of the terms contained within this document may be considered grounds for termination of the Right-of-Entry.

14. This instrument constitutes the entire Right-of-Entry agreement between the City of Detroit and the User with respect to its subject matter. This agreement may not be modified, amended, changed, or altered in any respect unless done so in a writing acknowledged by both the City of Detroit and User.

15. No activities other than the activities authorized in Exhibit A may be performed on the Site.

This Right-of-Entry will be effective only upon execution of the acknowledgment and agreement noted herein by an authorized representative of User and upon delivery of same to Mr. Raymond Scott, Buildings, Safety Engineering, and Environmental Department, at the address listed above.

Sincerely,

_____

**\*\*\* [Authorized City of Detroit Department Signature]**

[**Environmental Consultant**], by its duly authorized representative, hereby acknowledges receipt of the original copy of this letter, and agrees to be bound by the terms and conditions stated therein.

[**Environmental Consultant**]
BY: _____
(Signature)

PRINT NAME: _____
ITS: _____
(Duly Authorized Representative)

DATE _____
TELEPHONE NUMBER: _____

EXHIBIT A TO SAMPLE ENVIRONMENTAL RIGHT-OF-ENTRY DOCUMENT

SCOPE OF WORK

The following is the Scope of Work that [Environmental Consultant], its contractors, subcontractors, representatives, agents and employees (collectively, "User"), is authorized to perform at the Site. User shall be responsible for ensuring compliance in all respects with the Scope of Work, and all applicable federal, state, and local laws, rules, regulations, standards, plans, and orders.

User is only authorized to undertake the following activities at the Site:

[LIST OF AUTHORIZED ACTIVITIES]

Schedule I

## CERTIFICATE OF AUTHORITY FOR LIMITED LIABILITY COMPANY

I, _____, Manager of _____, a
_____limited liability company (the **"Company"**)

      DO HEREBY CERTIFY that the following is a true and correct excerpt from *[check appropriate box]*

         ☐    the minutes of a meeting of the Members of the Company duly called and held on

         ☐    a consent in lieu of a meeting, with signed consents received from all of the Members of the Company on or before the date hereof.

and that the same is now in full force and effect:

      "RESOLVED, that any Manager of the Company, is hereby authorized to execute and deliver, in the name and on behalf of the Company, any agreement or other instrument or document in connection with any matter or transaction with the City of Detroit that shall have been duly approved; the execution and delivery of any agreement, document, or other instrument by any of such Managers to be conclusive evidence of such approval."

      I FURTHER CERTIFY that the following persons are Managers:

      I FURTHER CERTIFY that any of the aforementioned Managers of the Company are authorized to execute or guarantee and commit the Company to the conditions, obligations, stipulations and undertakings contained in the attached Agreement, and that all necessary approvals have been obtained in relationship thereto.

      IN WITNESS THEREOF, I have set my hand this _____ day of _____, 20___.

 

                             _____

                             Print:
                             Manager

**EXHIBIT 6G – ESCROW AGREEMENT**

# ESCROW AGREEMENT

**THIS ESCROW AGREEMENT** (the "Agreement") is made and entered into this _17_ day of July, 2015, by and among **Waterfront Terminal Holdings II, LLC,** a Michigan limited liability company also known as Waterfront Holdings II, LLC ("Purchaser"), **The City of Detroit**, a Michigan public body corporate, acting through its Planning and Development Department ("Seller"), and **eTitle Agency Inc.**, a Michigan corporation ("Escrow Agent"), and is based upon the following.

R E C I T A L S :

A.    Purchaser and Seller parties to a certain Purchase Agreement (the "Purchase Agreement"), dated February 17, 2015, whereby Seller agreed to sell to Purchaser certain real property as more particularly on Exhibit A attached hereto (the "Property").

B.    On July 1, 2015, B&C Land Development Corporation filed suit against Seller in the Circuit Court for the County of Wayne, Michigan (Case No. 15-008602-CH) claiming an interest in the Property (the "Suit").

C.    In anticipation of the dismissal of the Suit, Purchaser and Seller have agreed to close on the purchase and sale of the Property under the Purchase Agreement in escrow pursuant to the terms and conditions of this Agreement, and Escrow Agent has agreed to hold the original, fully executed Closing Documents (as defined below) and Closing Funds (as defined below) until such time as an appropriate order dismissing the Suit is issued by a court of competent jurisdiction and any lis pendens filed against the Property in connection with the Suit is ordered discharged or released.

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained herein, the parties agree as follows:

1.    Escrow of Release Documents and First Amendment.  Promptly following the execution of this Agreement, (a) Seller shall deliver to Escrow Agent one original of:  (i) a fully executed and properly notarized quit claim deed in the form required by the Purchase Agreement conveying the Property to Purchaser (the "Deed"), and (ii) a closing statement in the form attached hereto as Exhibit B signed by Seller (the "Closing Statement"); and (b) Purchaser shall deliver to Escrow Agent, (x) the Purchase Price (as defined in the Purchase Agreement), plus or minus the credits and charges due to or from Purchaser pursuant to the Purchase Agreement as set forth in the Closing Statement (the "Closing Funds") and (y) the Closing Statement signed by Purchaser.  The Deed and the Closing Statement are sometimes referred to herein as the "Closing Documents."

2.    Disbursement of Closing Documents and Funds.  The Deed, the Closing Statement and the Closing Funds shall be delivered out of escrow by Escrow Agent as follows:  Upon either: A. receipt of (i) a copy of a duly entered order of dismissal of all counts, with prejudice, in the Suit, and (ii) a discharge of lis pendens duly executed by the counsel for the plaintiff in the Suit and in recordable form or an appropriate order issued by a court of competent jurisdiction discharging or releasing any lis pendens filed against the Property in connection with the Suit (the "Discharge") or B. Purchaser's written waiver of this condition, Escrow Agent shall immediately (i) record the Discharge, then (ii) release to Seller the Closing Funds due to Seller as set forth in the Closing Statement, then (iii) record the Deed, and (iv) release to the Escrow Agent the title insurance premium, closing costs and recording fees, as set forth in the Closing Statement, then (v) provide to Purchaser a copy of the recorded Deed and the original Closing Statement signed by Seller, and (iv) provide to Seller a copy of the recorded Deed and the original Closing Statement signed by Purchaser.

3.    Governing Law; Dispute.   This Agreement shall be governed by and construed in accordance with the laws and judicial decisions of the State of Michigan.  The parties hereto expressly acknowledge and agree that all legal proceedings arising out of or relating to this Agreement shall be brought and maintained in the state and federal courts located in Wayne County and the Eastern District of Michigan.  In the event of a dispute between Purchaser and Seller concerning the disposition of the Closing Documents or the Closing Funds, Escrow Agent may file an interpleader action and shall have the right to deliver the Closing Document and the Closing Funds, as applicable, into court.  If the filing of an interpleader action does become necessary, the Purchaser and the Seller each agree to pay one-half of Escrow Agent's costs incurred in connection therewith, including reasonable attorney fees.

4.    Limitations on Liability.   After disbursing the Closing Documents and the Closing Funds in accordance with Section 2 above, Escrow Agent shall be released from any further liability under this Agreement, it being agreed that Escrow Agent's liability is limited by the terms and provisions set forth in this Agreement, and that by acceptance of this Agreement, the Escrow Agent is acting in the capacity of a depository, only.  Escrow Agent will have no obligation under this Agreement except to exercise good faith and ordinary care.  Escrow Agent may act upon receipt of any certificate or other written document, and will have no responsibility to determine or inquire into or otherwise corroborate the happening or occurrence of any event or condition described in such certificate or document.

5.    Notices.   Any notice required or permitted hereunder and all notices of change of address must be delivered to each of the parties to this Agreement and shall be deemed sufficient if either delivered personally or mailed by certified or registered mail, or delivered by recognized overnight courier service – next business day delivery, or hand-delivery addressed to the recipient at its address specified below.  Notices provided by mail shall be conclusively deemed to have been received on the second business day after the date mailing.  Notices provided by overnight delivery shall be conclusively deemed to have been received on the business day after the date of deposit with such courier.  Notices provided by hand-delivery shall be conclusively deemed to have been delivered on the day of such hand-delivery.  Notices to the parties shall be delivered to the address for such party, set forth below or such other address as such party may designate in writing in the manner set forth above:

If to Seller:           Director
                        City of Detroit
                        Planning & Development Department
                        2 Woodward Ave., Suite 808
                        Detroit, Michigan  48226

                        with a copy to:

                        Corporation Counsel
                        City of Detroit Law Department
                        2 Woodward Avenue, Suite 500
                        Detroit, Michigan 48226

If to Purchaser:        Harry C. Warner
                        Waterfront Terminal Holdings II, LLC
                        5431 West Jefferson Avenue
                        Detroit, Michigan  48209

DET1539179

with a copy to:

Beth S. Gotthelf, Attorney at Law
Butzel Long
Stoneridge West, 41000 Woodward Avenue
Bloomfield Hills, Michigan 48304

If to Escrow Agent:     Bryan Melvin, Esq.
eTitle Agency, Inc.
1650 West Big Beaver Road
Troy, Michigan 48084

6.    Counterparts.  This Agreement may be executed in one or more counterpart copies (including facsimile and electronically transmitted signature pages), each of which shall constitute an original although not fully executed, but all of which when taken together shall constitute one and the same instrument binding on all parties hereto.

[signatures appear on following page]

DET1539179

**IN WITNESS WHEREOF**, the parties have caused this Escrow Agreement to be executed and delivered as of the date first set forth above.

WITNESSES:

**Waterfront Terminal Holdings II, LLC,**
a Michigan limited liability company also known as Waterfront Holdings II, LLC

_____

By:_____
       Harry C. Warner
Its:     Manager

**City of Detroit**, a Michigan public body corporate

_____

By:_____
       Maurice Cox
Its:     Director, Planning & Development Dept.

**eTitle Agency, Inc.**, a Michigan corporation

_____

By: _____
Name: _____
Its: _____

DET1539179

EXHIBIT A
LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING
DESCRIBED AS LOTS 1207 THROUGH 1214 BOTH INCLUSIVE, LOT 1215 EXCEPT
THE EASTERLY 6.36 FEET THEREOF, ALL BEING TOGETHER WITH THE ADJACENT
VACATED PUBLIC ALLEY (20 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF
THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED
IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO THE
WESTERLY 213.64 FEET OF THE EASTERLY 574.00 FEET OF PRIVATE CLAIM NO.
39 LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE
WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20,
PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND
ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING
MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT
SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO.
39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS;
THENCE N.61°37'43"E. 213.64 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON
AVENUE (80 FEET WIDE) TO A POINT BEING 6.36 FEET WESTERLY FROM THE
NORTHEAST CORNER OF LOT 1215 OF THE "SIXTH PLAT SUBDIVISION OF THE
PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN
LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E.
1068.40 FEET ALONG A LINE 360.36 FEET WEST OF THE EASTERLY LINE OF
SAID PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE;
THENCE S.34°06'08"W. 241.60 FEET ALONG SAID DETROIT RIVER U.S. HARBOR
LINE; THENCE N.28°03'35"W. 1180.06 FEET ALONG A LINE 574.00 FEET WEST
OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF
BEGINNING; SAID PARCEL CONTAINING 5.5137 ACRES, MORE OR LESS AND
BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: Basil Sarin DATE: 4/28/2015

Street Address[es]:

Property Tax Ward & Item numbers:

# Seller's Settlement Statement

eTitle Agency, Inc.
1650 W. Big Beaver
Troy, MI 48084
Phone: (248)502-3100   Fax: (248)502-3101

**Date:** 07/17/15   **Time:** 1:35:46PM   **Escrow no.:** 1530716
**Close of escrow:**   **Escrow officer:** Tamara Sadler
**Borrower:** Waterfront Terminal Holdings II, LLC, a Michigan limited liability company
**Seller:** City of Detroit, a Michigan public body corporate
**Property location:** 5701 W. Jefferson
Detroit, MI 48209

| | Seller | |
|---|---|---|
| | Debit | Credit |
| **Financial Consideration** | | |
| Contract sales price | | 735,000.00 |
| **Prorations/Adjustments** | | |
| Summer tax 350 days @ 30.108 | | 10,537.90 |
| **Recording Charges** | | |
| Record discharge of Lis Pendens to Wayne County Register of Deeds | 50.00 | |
| **Subtotals** | 50.00 | 745,537.90 |
| **Balance Due TO Seller** | 745,487.90 | |
| **TOTALS** | 745,537.90 | 745,537.90 |

Seller

City of Detroit, a Michigan public body corporate

BY: _____

_____

eTitle Agency, Inc.
Settlement Agent

# EXHIBIT 6H – TRUE COPY CERTIFICATE OF RESOLUTION APPROVING REVERE DOCK OFFER TO PURCHASE

# TRUE COPY CERTIFICATE

STATE OF MICHIGAN } SS
City of Detroit

## CITY CLERK'S OFFICE, DETROIT

I, **Janice M. Winfrey**, City Clerk of the City of Detroit, in said State, do hereby certify

that the annexed paper is a TRUE COPY OF **RESOLUTION**

adopted (passed) by the City Council at session of **June 30,** 20 **15**

and approved by Mayor **July 7,** 20 **15**

as appears from the Journal of said City Council in the office of the City Clerk of Detroit, aforesaid; that I have compared the same with the

original, and the same is a correct transcript therefrom, and of the whole of such original.

**In Witness Whereof, I have hereunto set my hand and affixed the corporate seal of said City, at**

Detroit, this **10th** day of **July** A.D. 20 **15**

CITY CLERK

   

**CITY OF DETROIT**
PLANNING AND DEVELOPMENT DEPARTMENT

COLEMAN A. YOUNG MUNICIPAL CENTER
2 WOODWARD AVE., SUITE 808
DETROIT, MICHIGAN 48226
PHONE 313•224•1339
WWW.DETROITMI.GOV

May 29, 2015

Detroit City Council
1340 Coleman A. Young Municipal Center
Detroit, MI 48226

Re:     Sale by Development Agreement - 5851 W. Jefferson Avenue, Detroit, MI 48209

Honorable City Council:

The City of Detroit Planning and Development Department has received an offer from Revere Dock, LLC, a Michigan limited liability company ("**Revere Dock**") to purchase from the City of Detroit (the "**City**") the approximately 17.1009 acres of vacant real property described on the attached Exhibit A, being part of what is commonly known as 5851 W. Jefferson Avenue, Detroit, MI 48209, (the "**Property**").

The terms of the offer are set forth in a Purchase Agreement dated February 17, 2015 (the "**Offer to Purchase**"). Under the terms of the Offer to Purchase, the Property would be conveyed to Revere Dock under a development agreement by quit claim deed (the "**Deed**"), for two million two hundred and eighty thousand and 00/100 Dollars (**$2,280,000.00**) (the "**Purchase Price**"). The Purchase Price is equal to the Property's current fair market value as determined by an independent appraisal obtained by the City. Under the terms of the development agreement, Revere Dock's construction contracts will provide that at least 51% of the workforce must be Detroit residents, Detroit residents will perform 51% of the hours worked on the project, and Revere Dock will establish the goal of contracting with at least 30% of Detroit-based Businesses, Detroit-headquartered Businesses, and/or Detroit Emerging Businesses.

Revere Dock, LLC is an affiliate of Erickson's Incorporated, a highly engineered marine and specialty services company with current contracts in Detroit and throughout the Great Lakes. Revere Dock's development of the property will bring new heavy lift marine and transport capacity to Detroit, supporting manufacturing and fabricating companies with project equipment of oversize dimension and weight, while providing on-site staging and storage of critical equipment. The proposed use is permitted as a matter of right in an M-4 (Intensive Industrial) zone.

We request that your Honorable Body adopt the attached resolution approving the sale of the Property by development agreement, and authorizing the Planning and Development Department Director to execute the Deed and such other documents as may be necessary or convenient in connection with the City's sale of the Property.

Respectfully submitted,

Maurice Cox, Director

MC:RC:kc

cc: Saryah Sabree, Mayor's Office
    Val Upshaw, H&RD Liaison

ENTERED JUN 2 5 2015    Move To Formal — MG (21) Errata

ENTERED JUN 1 8 2015 — Adj in one (1) week

2015 JUN 15 A 11: 0□    DETROIT CITY CLERK

By Council Member  LELAND

 WHEREAS, the City of Detroit Planning and Development Department has received an offer from Revere Dock, LLC, a Michigan limited liability company, to purchase approximately 17.1009 acres of the vacant real property, commonly known as 5851 W. Jefferson Avenue, Detroit, MI 48209, (the "**Property**") described in Exhibit A; and

 WHEREAS, in accordance with Section 14-8-10 of the Detroit City Code, it is deemed in the best interests of the City that the Property be sold without public advertisement or the taking of bids.

 NOW, THEREFORE, BE IT RESOLVED, that the sale of Property by development agreement to **Revere Dock, LLC, a Michigan limited liability company,** for the Purchase Price of **two million two hundred eighty thousand dollars ($2,280,000.00),** and otherwise in accordance with the terms of the Offer to Purchase, is hereby approved; and be it further

 RESOLVED, that customary closing costs up to two hundred dollars ($200.00), and real estate brokerage commissions not to exceed five percent (5%) of the Purchase Price may be deducted from the Purchase Price and paid from the sale proceeds as "Property Transaction Costs" in accordance with the terms of the Property Management Agreement dated October 31, 2014, by and between the City and the City of Detroit Building Authority (the "Property Management Agreement"); and be it further

 RESOLVED, that a "Transaction Fee" may be deducted from the Purchase Price and be paid from the proceeds to the City of Detroit Building Authority in accordance with the terms of the Property Management Agreement; and be it further

 RESOLVED, that the sale of Property to Revere Dock, LLC, a Michigan limited liability company, without public advertisement or the taking of bids is hereby approved in accordance with Sec. 14-8-10 of the Detroit City Code; and be it further

 RESOLVED, that the Director of the Planning and Development Department, or his or her designee, is authorized to execute the Deed and such other documents as may be necessary or convenient for the consummation of the transaction pursuant to and in accordance with the Offer to Purchase; and be it further

 RESOLVED, that the Director of the Planning and Development Department, or his or her designee is authorized to execute any required instruments to make and incorporate technical amendments or changes to the Quit Claim Deed (including but not limited to corrections to or confirmations of legal descriptions, or timing of tender of possession of particular parcels) in the event that changes are required to correct minor inaccuracies or are required due to unforeseen circumstances or technical matters that may arise prior to the conveyance of the Property, provided that the changes do not materially alter the substance or terms of the transfer and sale; and be it finally

 RESOLVED, that the Deed will be considered confirmed when executed by the Director of the Planning and Development Department, or his or her designee and approved by the Corporation Counsel as to form.

**EXHIBIT A**
**LEGAL DESCRIPTION**


A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING DESCRIBED AS LOTS 1187 THROUGH 1206 BOTH INCLUSIVE, ALL BEING TOGETHER WITH THE ADJACENT VACATED PUBLIC ALLEY (20 FEET WIDE) AND THE ADJACENT VACATED CAMPBELL AVENUE (66 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO PRIVATE CLAIM NO. 39 EXCEPT THE EASTERLY 574.00 FEET THEREOF LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE, EXCEPT A TRIANGULAR PORTION THEREOF DEFINED AS THE SOUTH 338.25 FEET ON THE WEST LINE OF PRIVATE CLAIM NO. 39 AND THE WEST 157.00 FEET ON THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1187 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE N.61°37'43"E. 578.36 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON AVENUE (80 FEET WIDE) TO A POINT BEING THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E. 1180.06 FEET ALONG A LINE 574.00 FEET WEST OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE; THENCE S.34°06'08"W. 494.78 FEET ALONG SAID DETROIT RIVER U.S. HARBOR LINE; THENCE N.55°47'32"W. 299.32 FEET TO A POINT ON THE WEST LINE OF PRIVATE CLAIM NO. 39; THENCE N.28°08'13"W. 1143.03 FEET ALONG SAID WEST LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF BEGINNING; SAID PARCEL CONTAINING 17.1009 ACRES, MORE OR LESS AND BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: _Basil Sarim_ DATE: _4/28/2015_

Street Address[es]:

Property Tax Ward & Item numbers:



## ADOPTED AS FOLLOWS
## COUNCIL MEMBERS

| | YEAS | NAYS |
|---|---|---|
| Janee **AYERS** | ✓ | |
| Scott **BENSON** | ✓ | |
| Raquel **CASTANEDA-LOPEZ** | ✓ | |
| *George **CUSHINGBERRY, JR.** | ✓ | |
| Gabe **LELAND** | | ✓ |
| Mary **SHEFFIELD** | ✓ | |
| Andre **SPIVEY** | ✓ | |
| James **TATE** | ✓ | |
| Brenda **PRESIDENT JONES** | ✓ | |
| *PRESIDENT PRO TEM | | |
| | 8 | 1 |

**EXHIBIT 6I – REVERE DOCK OFFER TO PURCHASE**

# PURCHASE AGREEMENT

## BY AND BETWEEN

## CITY OF DETROIT

### and

## STEVEN W. ERICKSON, ON BEHALF OF AN ENTITY TO BE FORMED

### (Erickson/Revere Copper Project)

Date: _2/17_____, 2015

## TABLE OF CONTENTS

RECITALS .......................................................................................... 1
ARTICLE 1. DEFINITIONS ............................................................. 1
   1.01 – "Agreement" ....................................................................... 1
   1.02 – "Associate" ........................................................................ 2
   1.03 – "Closing" ........................................................................... 2
   1.04 – "Deed" .............................................................................. 2
   1.05 – "Effective Date" ................................................................. 2
   1.06 – "Encumbrance" .................................................................. 2
   1.07 – "Event of Default" and "Default" ........................................ 2
   1.08 – "Property" ......................................................................... 2
ARTICLE 2. SALE / COMPENSATION .......................................... 2
   2.01 – Purchase Price .................................................................. 2
ARTICLE 3. TITLE INSURANCE/DEED .......................................... 2
   3.01 – Title Insurance/Survey ....................................................... 2
   3.02 – Title/Deed ......................................................................... 3
ARTICLE 4. TAXES AND ASSESSMENTS ..................................... 3
   4.01 – Property on Tax Rolls at Closing ........................................ 3
   4.02 – Property Not on Tax Rolls at Closing .................................. 3
ARTICLE 5. REPRESENTATION AND WARRANTIES ..................... 4
   5.01 – Inducement ....................................................................... 4
   5.02 – Survival ............................................................................ 5
ARTICLE 6. TESTS AND SURVEYANCE; CONDITION OF PROPERTY .... 5
   6.01 – Surveying and Testing ....................................................... 5
   6.02 – Condition of Property; Inspection Period ............................. 6
   6.03 – Release of City from Liability .............................................. 6
   6.04 – Section 16 of NREPA ......................................................... 6
ARTICLE 7. CLOSING .................................................................. 7
   7.01 – Time and Place of Closing .................................................. 7
   7.02 – Conditions to Closing ......................................................... 7
   7.03 – Delivery of Deed and Possession ....................................... 8
   7.04 – Payment of Expenses ........................................................ 8
   7.05 – City's Failure to Convey ..................................................... 8
ARTICLE 8. DEFAULTS AND EVENTS OF DEFAULT ..................... 8
   8.01 – Default by Purchaser .......................................................... 8
   8.02 – Failure to Cure Default ....................................................... 9
   8.03 – Default by the City ............................................................. 9
ARTICLE 9. REMEDIES ............................................................... 9
   9.01 – Remedies Cumulative ........................................................ 9
   9.02 – Reimbursement of Costs .................................................... 9
ARTICLE 10. RESTRICTION UPON SPECULATION AND ASSIGNMENT ... 10
   10.01 – No Speculation ................................................................ 10
   10.02 – Prior Approval of Assignment ........................................... 10
   10.03 – Consideration for Assignment ........................................... 10
ARTICLE 11. INDEMNITY ............................................................. 10
   11.01 – Purchaser Indemnification ................................................ 10
   11.02 – Defense of Claims ............................................................ 10

11.03 - Non-Liability of the City .................................................................. 10
11.04 - Hazardous Materials ......................................................................... 11
**ARTICLE 12. AMENDMENTS** ............................................................... 12
12.01 - Form ................................................................................................... 12
12.02 - Binding Effect .................................................................................... 13
**ARTICLE 13. NOTICES** ........................................................................... 13
13.01 - Addresses ........................................................................................... 13
13.02 - Date of Notice .................................................................................... 13
**ARTICLE 14. SALE / COMPENSATION** .............................................. 14
14.01 - Severability ........................................................................................ 14
14.02 - Entire Agreement .............................................................................. 14
14.03 - Terminology ...................................................................................... 14
14.04 - Covenants and Conditions ............................................................... 14
14.05 - Captions ............................................................................................. 14
14.06 - Cumulative Remedies; Jurisdiction; Venue ................................. 14
14.07 - Force Majeure .................................................................................... 14
14.08 - Provisions Not Merged With Deed ................................................ 15
14.09 - Counterparts ...................................................................................... 15
14.10 - Singular and Plural, etc. ................................................................... 15
14.11 - Time of the Essence .......................................................................... 15
14.12 - Authority of City .............................................................................. 15
**EXHIBIT A** ............................................................................................... 17
**EXHIBIT B** ............................................................................................... 19
**EXHIBIT C** ............................................................................................... 20
**EXHIBIT D** ............................................................................................... 22
**Schedule I** ................................................................................................. 26

ii

<center>PURCHASE AGREEMENT</center>

**THIS PURCHASE AGREEMENT** ("Agreement") is entered into as of _2/17_, 2015, by and between the **CITY OF DETROIT**, a Michigan public body corporate, acting by and through its Planning and Development Department, whose address is 2300 Cadillac Tower, Detroit, Michigan 48226, referred to herein as the "**City**", and **STEVEN W. ERICKSON, ON BEHALF OF AN ENTITY TO BE FORMED**, whose address is 2217 Lake Avenue, North Muskegon, Michigan 49445, referred to herein as "**Purchaser.**"

<center>RECITALS:</center>

A.    Purchaser has offered to purchase land located in the City of Detroit, the legal description of which is set forth on **Exhibit A** attached hereto and incorporated by reference, in accordance with the terms, covenants, and conditions of this Agreement.

B.    Purchaser's planned project for the Property includes the goals set forth on **Exhibit B** attached to this Agreement.

C.    The City believes that the sale of the Property pursuant to this Agreement and the fulfillment generally of this Agreement are in the best interests of the City and the health, safety and welfare of its residents.

In consideration of the foregoing recitals and the mutual obligations of the parties hereto, each of them does hereby covenant and agree with the other as follows:

## ARTICLE 1. DEFINITIONS

The following words and expressions shall, wherever they appear in this Agreement, be construed as follows:

1.01 "**Agreement**" shall mean this Agreement and the following Exhibits and Schedules attached hereto and expressly made a part hereof:

| | |
|---|---|
| Exhibit A | Description of Property |
| Exhibit B | Project Goals |
| Exhibit C | Quit Claim Deed |
| Exhibit D | Right of Entry Letter |
| Schedule I | Certificate of Authority for Purchaser |

1.02 **"Associate"** shall mean any consultant, contractor, subcontractor, or any other party engaged by Purchaser and the agents and employees of said parties engaged by Purchaser to undertake any of the activities associated with this Agreement.

1.03 **"Closing"** shall mean a date agreed upon by the parties hereto for the transfer of title to the Property, but in no event shall said date be more than ninety (90) days from the Effective Date of this Agreement.

1.04 **"Deed"** shall mean the Quit Claim Deed conveying the Property to Purchaser by the City in substantially the form as attached hereto as **Exhibit C**.

1.05 **"Effective Date"** shall have the meaning set forth in Section 14.12 of this Agreement.

1.06 **"Encumbrance"** shall mean any covenant, license, right of way, easement, limitation, condition, reservation, restriction, right or option, mortgage, pledge, lien, construction lien, mechanic's lien, charge, conditional sale or other title retention agreement or arrangement, encumbrance, lease, sublease, security interest, or trust interest.

1.07 **"Event of Default"** and **"Default"** shall have the meanings as set forth in Article 8 of this Agreement.

1.08 **"Property"** shall mean that parcel of land identified by as a part of the Revere Copper and Brass Site and located in the City of Detroit, as more particularly described in Exhibit A attached hereto and made a part hereof.

## ARTICLE 2. SALE / COMPENSATION

2.01 Purchase Price. Subject to the terms, covenants, and conditions of this Agreement, Purchaser agrees to purchase, and the City agrees to convey, the Property for Two Million Two Hundred Eighty Thousand Dollars ($2,280,000.00) ("Purchase Price"), to be paid in immediately available funds by wire transfer, or certified or cashier's check simultaneously with the delivery of the Deed.

## ARTICLE 3. TITLE INSURANCE/DEED

3.01 Title Insurance/Survey.

a. Commitment. Within five (5) business days following the Effective Date, Purchaser shall order a commitment for an owner's title insurance policy for the Property showing all matters affecting record title to the Property, subject to the terms, covenants, and conditions of this Agreement and standard exceptions, together with copies of all instruments described in Schedule B thereof (the "Title Commitment"). The Title Commitment will be in the amount of the Purchase Price and will be issued by eTitle Agency, with offices at 1650 West Big Beaver Road, Troy, Michigan 48084. A copy of the Title Commitment will be provided to the City promptly upon Purchaser's receipt.

b. Survey. Within thirty (30) days following the Effective Date, Purchaser shall obtain a current survey of the Property (the "Survey") from a registered land surveyor. The legal description of the Property set forth in the Title Commitment shall conform exactly to the legal descriptions in the Survey and the Survey shall contain such detail from the ALTA/ASCM Schedule A Table as Purchaser deems required. The Survey will be certified to the City, Purchaser, and others designated by Purchaser, and a copy will be provided to the City immediately upon Purchaser's receipt.

c. Title Objections. Purchaser shall have the right, until ten (10) days following receipt of the Title Commitment and the Survey (the "Review Period"), to identify in writing those matters and/or title encumbrances identified in the Title Commitment or Survey that are unacceptable to it, in which event the City shall have reasonable opportunity (but not the obligation) to cure or remove such matters (if any) and to satisfy any other requirements set forth therein. The items contained in the Commitment or the Survey to which Purchaser does not object during the Review Period shall be deemed permitted exceptions (the "Permitted Exceptions"). The City's failure or inability to, within twenty (20) days after receipt of notification of such objections (the "Cure Period"), cure such objections, or conscious decision not to do so, communicated in writing to Purchaser within the Cure Period, shall give Purchaser the right to terminate this Agreement and be relieved of all further obligation to perform hereunder upon notice to the City .

d. Policy. The City **WILL NOT** order or pay the premium for an owner's policy of title insurance, nor will the City provide any estoppel or seller's certificate to the Purchaser or the title insurance company. Any title insurance policy insuring Purchaser's title to the Property, whether an owner's or mortgage policy, with or without standard exceptions, will be at Purchaser's expense.

3.02    Title/Deed.

a. Conveyance. At the Closing, if Purchaser has materially complied with all of those terms and conditions precedent to Closing as specified hereunder, the City will deliver the Deed to the Property to Purchaser.

b. Title conveyed. Such conveyance and title shall fee simple, and shall, in addition to the conditions and covenants hereinafter provided for, be subject to existing easements and restrictions of record, all applicable zoning and building laws, and other encumbrances (if any) specifically referred to in Exhibit A. Purchaser acknowledges that the City has not made, and by execution of this Agreement or any Deed does not make, any representations or warranties whatsoever with respect to title to the Property.

## ARTICLE 4. TAXES AND ASSESSMENTS

4.01    Property on Tax Rolls at Closing. In the event that the Property is on the tax rolls at the date of Closing, all taxes and assessments which have become a lien upon the Property at the date of Closing shall be paid by the City provided that current City and County taxes shall be prorated and adjusted to the date of Closing on a due date basis.

4.02    Property Not on Tax Rolls at Closing. In the event that the Property is not on the tax rolls at the date of Closing, Purchaser agrees to pay to the City at Closing an amount equal to the City of

Detroit ad valorem taxes (including debt service but not including any ad valorem taxes which would have been collected by the City on behalf of another governmental body, whether the State, County or any other body or for any other millage) which would have been levied had the Property been on the tax rolls, prorated from the date of Closing to the dates when the next tax bills are issued after the date the Property is placed back on the tax rolls, and the Property will be placed back on the tax rolls as of December 31 of the year in which the Closing takes place. For example, if the date of Closing is on or before December 31, 2015, the Property would be placed back on the tax rolls effective December 31, 2015, the next tax bills issued would be July 1, 2016 for the summer taxes and December 1, 2016 for the winter taxes and the payment for taxes would be pro-rated to June 30, 2016 and November 30, 2016, respectively. If the date of Closing takes place on or after January 1, 2016, the Property will not be placed on the tax rolls until December 31, 2016, and tax bills will not be issued until July 1 and December 1, 2017 and, in that case, the payment for taxes would be prorated to June 30 and November 30, 2017.

## ARTICLE 5. REPRESENTATION AND WARRANTIES

5.01 Inducement. In order to induce the City to enter into this Agreement, Purchaser represents and warrants to the City that:

a. Organization and Qualification. Any permitted assignee of Purchaser shall be an entity validly existing and in good standing under the laws of the State of Michigan and with full power and authority to carry on its business as it is conducted at the time of the assignment of this Purchase Agreement.

b. Power to Make Agreement. It has the power to make, deliver and perform this Agreement and finance the Improvements in accordance with the terms and conditions of this Agreement and has taken all necessary action to authorize the foregoing and to authorize the execution, delivery and performance of this Agreement.

c. Lack of Legal Impediments. To the best of its knowledge, the execution, delivery and performance of this Agreement will not violate any provision of any existing law, regulation, order or decree of any court or governmental entity, the violation of which would or could materially affect its ability to fulfill its obligations under this Agreement, and will not violate any provision of, or constitute a default under, any agreement or contract to which it is a party, the violation of which would or could materially affect its ability to fulfill its obligations under this Agreement. Purchaser has paid all income, personal and property taxes, and inspection or license fees heretofore due, payable, and owing to the City. Purchaser is not in default to the City.

d. Legal Operation. It is, to the best of its knowledge, in compliance with all existing laws and regulations applicable to it, the violation of which would or could materially adversely affect its ability to fulfill its obligations under this Agreement.

e. Litigation. As of the date of this Agreement, no litigation or administrative proceeding of or before any court or administrative body is presently pending, nor, to its knowledge, is any such litigation or proceeding presently threatened, against it or any of its property, that, if adversely determined, would or could materially affect its ability to fulfill its obligations under this Agreement.

f.  Other Information.  To the best of its knowledge, all other written information, reports, papers, and data given to the City by Purchaser with respect to Purchaser are accurate and correct in all material respects and substantially complete insofar as completeness may be necessary to give the City a true and accurate knowledge of the subject matter and all projections of future results are, in its opinion, reasonable.

g.  Other Agreements.  To the best of its knowledge, it is not a party to any agreement or instrument materially and adversely affecting its present or proposed business, properties or assets, operation or condition, financial or otherwise, not disclosed to the City in writing, the existence of which would or could materially affect its ability to fulfill its obligations under this Agreement; and it is not in default in the performance, observance, or fulfillment of any of the material obligations, covenants, or conditions set forth in any agreement or instrument to which it is a party, the violation of which would or could materially affect its ability to fulfill its obligations under this Agreement.

h.  Brokerage and Finder's Fees and Commissions.  Purchaser has not engaged any broker, finder or agent with respect to the transactions contemplated by this Agreement.  Purchaser shall indemnify and hold the City harmless from and against claims for brokerage in connection with this transaction by any person or party claiming by, through or under Purchaser.

5.02  Survival.  All of the representations and warranties contained in this Article 5 or pursuant hereto shall survive the delivery of the Deed and shall remain in full force and effect for a period of six (6) months following the date of Closing.  Purchaser shall indemnify and hold the City harmless from and against, and shall be obligated to pay and reimburse the City for, any and all out-of-pocket expenses (including reasonable attorneys' fees, whether inside or outside counsel) which the City may sustain or incur as a result of any misrepresentation or breach of warranty on the part of Purchaser due to the City's reliance thereon.  The "best of Purchaser's knowledge" is based on Purchaser's actual knowledge and is without any duty to investigate.  Purchaser shall have no liability for a breach of any representation or warranty in the event that Purchaser gives written notice to the City prior to Closing that such representation or warranty was inaccurate or any document or report furnished to or obtained by the City, its agents, employees or contractors in connection with this Agreement shall have disclosed that such representation or warranty was inaccurate prior to Closing.

## ARTICLE 6. TESTS AND SURVEYANCE; CONDITION OF PROPERTY

6.01  Surveying and Testing.  The City will, prior to the transfer of title, authorize Purchaser through and in accordance with a fully executed Right-of-Entry, to make soil boring and bearing tests and undertake such surveying and environmental and other due diligence activities as Purchaser deems appropriate, provided such does not interfere with the City's use, if any, and subject to the Purchaser's compliance with the requirements of this Article 6 and elsewhere in this Agreement.  All such testing shall be done at Purchaser's risk and expense.  Subject to the terms of the aforementioned Right of Entry, Purchaser shall give prior notice to the City to inspect and investigate the condition of the Property, including its environmental condition and shall conduct such inspection and investigation as Purchaser desires during normal business hours.  Prior to entering onto the Property for such purposes, Purchaser shall (i) request authorization from the Building, Safety, Engineering and Environmental Department and provide details of the intended activities and other documentation deemed necessary by

the City, (ii) obtain a Right-of-Entry letter from City, (iii) execute said letter, and (iv) comply with all conditions and requirements stated therein. Purchaser shall use all reasonable efforts to minimize damage to the Property in connection with such entry and shall fully restore the Property to the condition existing prior to such entry. Purchaser shall indemnify, defend and hold the City harmless from and against, any and all loss, cost, liability and expense, including reasonable attorneys' fees and litigation costs, suffered or incurred by the City as a result of the Purchaser's activities in accordance with the Right-of-Entry. Purchaser shall submit to the City a copy of each survey or report generated as a result of such activities.

6.02    Condition of Property; Inspection Period.

a.    Purchaser takes the Property as it finds it, "**AS IS**", and the City makes no implied or express representations or warranties as to its fitness for absolutely any purpose whatsoever. By executing this Agreement, Purchaser acknowledges that it is satisfied with the condition of the Property, subject only to inspection of the Property, review of title, and the results of the tests, investigations, and surveys permitted under Section 6.01, above. If, within ninety (90) days of the Effective Date, Purchaser fails to undertake such investigations and/or obtain such test results and surveys, or fails to object to the condition of the Property based upon the results of such tests, investigations or surveys, or fails to deliver copies of any and all reports of such tests, investigations and/or surveys to the City, Purchaser shall be deemed to have waived any right to object to the condition of the Property and shall be deemed to have declared its full satisfaction therewith.

b.    In order to facilitate Purchaser's investigation of the Property, within ten (10) business days of the Effective Date hereof, the City shall deliver copies of any existing (i) environmental site assessments, reports, notices or correspondence from environmental regulatory authorities or citations, (ii) lease agreements, lease modifications, or third-party property/occupancy rights, if any (iii) notices or other correspondence that has been received from any governmental agency regarding the condition of the Property or pending government actions, (iv) land surveys, and (v) soil reports (collectively, the "Due Diligence Materials"), provided the same are in the City's possession or control.

c.    In the event Purchaser determines, based on its inspection of the Property, review of title, and the results of the tests, investigations, and surveys permitted under Section 6.01, above that it does not wish to proceed with the purchase of the Property, Purchaser shall have the right for any reason whatsoever in its sole discretion, prior to the ninety-first (91st) day following the Effective Date, to terminate this Agreement by delivery of a written notice to the City (the "Notice of Termination"). Upon timely delivery by Purchaser of the Notice of Termination, this Agreement shall terminate without liability of Purchaser.

6.03    Release of City from Liability. Purchaser hereby releases the City and its officials, employees, and agents (but not any third party) from any and all liability for any defects in or conditions of the Property, including but not limited to any surface, subsurface, latent or patent conditions whether naturally occurring or by action of any party, or conditions currently existing thereon, including but not limited to conditions described in Section 11.04, but subject to Section 11.04.

6.04    Section 16 of NREPA. Pursuant to the requirements of Section 16 of Part 201 of NREPA, MCL 324.20116, Purchaser agrees that the City has notified Purchaser that the Property is a

"facility" as that term is defined in Part 201 of NREPA. The general nature and extent of any land or resource restrictions or any release at or from the facility that is known to the City is more fully described in certain reports, copies of which have been provided to Purchaser. By its execution of this Agreement, Purchaser acknowledges receipt of the following reports:

Insert list of documents, if any, identified by DEA: None

## ARTICLE 7. CLOSING

7.01   Time and Place of Closing. The City will notify Purchaser of the prospective closing date not less than ten (10) calendar days prior to the Closing, unless otherwise agreed between the parties. The Closing shall occur within thirty (30) days after satisfaction of the conditions to closing as specified in Section 7.02 of this Agreement. The Closing shall take place at the office of the City's Planning & Development Department, or such other location in downtown Detroit designated by the City. If the conditions to closing specified in Section 7.02 of this Agreement have not been satisfied or waived by June 1, 2015, either party may, thereafter, terminate this Agreement without further liability.

7.02   Conditions to Closing.

a.   City's Obligations to Close. The obligation of the City to effect a Closing hereunder shall be subject to receipt of a resolution(s) by the Detroit City Council authorizing the transaction and fulfillment of all conditions contained therein, and fulfillment by Purchaser of each of the following conditions precedent:

(i) Accuracy of Representations and Warranties. All representations and warranties of Purchaser set forth in Section 5.01 of this Agreement shall be true and correct as of the date of Closing as if made on that date.

(ii) Resolution of Purchaser's Authority. Upon Purchaser's assignment of this Agreement in accordance with Section 10.02 of this Agreement, such assignee shall furnish to the City a certified copy of a resolution satisfactory to the City in form and substance, duly adopted by the Board of Directors or Members of Purchaser's assignee, or an authorized vote of the partners or joint venturers, authorizing the execution, delivery and performance of this Agreement and all other documents and actions contemplated hereunder. Purchaser's assignee shall also furnish to the City an incumbency certificate, executed by the corporate secretary, general partner, or proper manager of Purchaser's assignee, identifying the officers, general partners, or managers of Purchaser's assignee.

(iii) Payment of Purchase Price and Closing Costs. Purchaser shall have tendered payment of the Purchase Price and the closing costs payable by Purchaser.

(iv) No Default. There shall be no existing Default by Purchaser under this Agreement.

(v) Development Agreement. Purchaser shall have executed and delivered to the City a development agreement for the Property in a form approved by the City.

b. Purchaser's Obligations to Close. The obligation of Purchaser to effect a Closing hereunder shall be subject to the fulfillment by the City of each of the following conditions precedent:

(i) Title. Title to the Property shall be in the form required by this Agreement.

(ii) City Council and Other Approval. The City shall furnish to Purchaser a resolution(s) by the Detroit City Council authorizing the transaction and all conditions contained therein shall be fulfilled.

(iii) Acceptable Condition of Property. The physical and environmental condition of the Property and the results of Purchaser's other investigations shall be acceptable to Purchaser, pursuant to Article 6.

7.03 Delivery of Deed and Possession. The City will deliver the Deed to the Property and the possession thereof to Purchaser at the Closing provided that Purchaser has complied with all conditions precedent as specified herein. Purchaser shall be responsible for recording the Deed and paying all recording costs (including the cost of the documentary stamp tax on the Deed, if any).

7.04 Payment of Expenses. Purchaser shall pay all costs, fees, and out of pocket expenses of whatsoever kind or nature related to the procurement of services of Associates and contractors, etc. which have been incurred pursuant to the making of this Agreement and shall hold the City harmless with respect to the payment of same notwithstanding anything contained herein or elsewhere to the contrary.

7.05 City's Failure to Convey. In the event the City does not tender the conveyance of the Property in the manner provided in this Agreement, and any such failure shall not be cured within thirty (30) days after written demand by Purchaser, then, provided Purchaser is not in material Default under this Agreement, at the option of Purchaser, this Agreement shall be terminated, or, if all of the conditions set forth in Section 7.02a above have been satisfied, Purchaser shall be entitled to seek specific performance of this Agreement. In no event shall Purchaser seek or be entitled to money damages.

## ARTICLE 8. DEFAULTS AND EVENTS OF DEFAULT

8.01 Default by Purchaser. The occurrence of any one or more of the following events prior to Closing shall constitute a Default of this Agreement by Purchaser:

a. Purchaser admits in writing its inability to pay its debts generally as they become due, or Purchaser ceases to conduct business in the normal course by reason of any of the following: (i) The making by Purchaser of any general arrangement or general assignment for the benefit of creditors; (ii) Purchaser becoming a "debtor" as defined in 11 USC § 101 or any successor statute thereto (unless, in the case of a petition filed against Purchaser, the same is dismissed within sixty (60) days); (iii) the appointment of a trustee or receiver to take possession of substantially all of Purchaser's assets located at the Property or of Purchaser's interest in this Agreement, where possession is not restored to Purchaser within sixty (60) days; (iv) the attachment, execution or other judicial seizure of substantially all of Purchaser's assets located at the Property or of Purchaser's interest in this Agreement, where such

seizure is not discharged within sixty (60) days; or (v) its voluntary or involuntary dissolution. In the event that any provision of this subsection is contrary to any applicable law, such provision shall be of no force or effect.

      b.  Purchaser violates any of the terms and conditions of this Agreement, except as otherwise provided in this Section 8.01, and Purchaser fails to cure same within thirty (30) days after receipt of written notice by the City to cure said Default.

      c.  Purchaser, not due to any breach of the City, does not acquire the Property pursuant to a Closing in accordance with this Agreement, unless such failure is due to the failure of a condition precedent to Purchaser's obligation to close as set forth in this Agreement.

    8.02   Failure to Cure Default. Any such Default on the part of Purchaser as set forth in Section 8.01 and the failure of Purchaser to cure such Default or within thirty (30) days after written demand by the City to cure said Default for Subsection 8.01b shall be deemed to constitute an **Event of Default**, provided, however, that if the nature of Purchaser's Default is such that more than the cure period provided is reasonably required for its cure, then Purchaser shall not be deemed to be in default if Purchaser commences such cure within said period and thereafter diligently pursues such cure to completion. Defaults pursuant to Subsections 8.01a are hereby deemed to be material, non-curable Events of Default without the necessity of any notice by the City to Purchaser thereof. The City may, in its sole discretion, waive in writing any Default or Event of Default by Purchaser.

    8.03   Default by the City. The City shall not be in default unless the City fails to perform obligations required of the City within a reasonable time, but in no event later than ninety (90) days, after written notice by Purchaser to the City, specifying wherein the City has failed to perform such obligation, provided, however, that if the nature of the City's obligation is such that more than ninety (90) days are reasonably required for performance then the City shall not be in default if the City commences performance within such ninety (90) day period and thereafter diligently pursues such performance to completion.

## ARTICLE 9. REMEDIES

    9.01   Remedies Cumulative. The rights and remedies of the City, whether provided by law or by this Agreement, shall be cumulative, and the exercise by the City of any one or more of such remedies shall not preclude the exercise by it, at the same or different times, of any other such remedies for the same default or breach. No waiver made by the City shall apply to obligations beyond those expressly waived in writing.

    9.02   Reimbursement of Costs. Purchaser shall reimburse the City for its expenses, including reasonable attorney fees (whether inside or outside counsel), reasonably incurred by the City after an Event of Default in connection with the enforcement of or the preservation of any rights under this Agreement.

## ARTICLE 10. RESTRICTION UPON SPECULATION AND ASSIGNMENT

10.01 <u>No Speculation</u>. Purchaser represents that its purchase of the Property and its other undertakings pursuant to this Agreement are for the purpose of development of the Property for use in conjunction with Purchaser's transportation business and not for speculation.

10.02 <u>Prior Approval of Assignment</u>. Purchaser will not assign this Agreement, without the prior written approval of the City, except for an assignment to an entity controlled by Purchaser. Any proposed transferee shall, by instrument in writing, for itself and its successors and assigns, and expressly for the benefit of the City, assume all of the obligations of Purchaser under this Agreement and agree to be subject to all the conditions and restrictions to which Purchaser is subject. The consent of the City to an assignment or transfer in any one case shall not relieve Purchaser or the transferee of the obligation to obtain the consent of the City for any additional assignments or transfers.

10.03 <u>Consideration for Assignment</u>. Prior to the City's approval of any assignment pursuant to Section 10.02, Purchaser shall certify to the City that the consideration paid for the transfer of any of Purchaser's interest in this Agreement does not exceed an amount representing the actual cost (including carrying charges) incurred by Purchaser in connection with this Agreement; it being the intent of this Section to preclude assignment of this Agreement for profit. In the event Purchaser transfers any such interest at a profit, said profit shall belong to and forthwith be paid to the City.

## ARTICLE 11. INDEMNITY

11.01 <u>Purchaser Indemnification</u>. Purchaser agrees to and shall indemnify and save harmless the City, its agents and employees against and from any and all liabilities, obligations, damages, penalties, claims, costs, charges, losses and expenses (including without limitation, reasonable fees and expenses of attorneys, whether inside or outside counsel, expert witnesses and other consultants) (collectively, "Damages") that may be imposed upon, incurred by or asserted against the City related to this purchase by reason of any negligent or tortious act or omission of Purchaser or its Associates resulting in personal injury, bodily injury, sickness, disease or death, or injury to or destruction of tangible property including the loss of use therefrom, except to the extent such Damages are caused by the City's or its, employees', contractors' or agents' gross negligence or willful misconduct. Purchaser also agrees to hold the City harmless from any and all injury to the person or damage to the property of an employee of the City which arises out of or pursuant to any negligent or tortious act or omission of Purchaser or its Associates resulting in personal injury, bodily injury, sickness, disease or death, or injury to or destruction of tangible property including the loss of use therefrom except to the extent such loss or injury is caused by the City's or its, employees', contractors' or agents' gross negligence or willful misconduct.

11.02 <u>Defense of Claims</u>. In the event any action or proceeding shall be brought against the City by reason of any claim covered hereunder, Purchaser, upon notice from the City, will at its sole cost and expense, resist and defend the same, using legal counsel reasonably acceptable to the City.

11.03 <u>Non-Liability of the City</u>. From and after the date of Closing, the City shall not be responsible or liable to Purchaser, and Purchaser hereby releases the City from liability, for any loss or damage that may be occasioned by or through the acts or omissions of persons occupying any part of the

Property. From or after the date of Closing, Purchaser shall be solely responsible for all injuries to persons and property resulting from any accident, explosion, leak or other cause arising in or about the use of the Property and its appurtenances, as hereinbefore stated. The City shall not be responsible for any loss or damage resulting to Purchaser or its property or to any other person or persons on their property which may be caused by the bursting, stopping, or leaking of water, gas, sewer or steam pipes or from overflow or backing up of any sewer or water main, unless caused by the City's gross negligence or willful misconduct.

11.04   Hazardous Materials.

a.   Definitions.

(i)   **"Relevant Environmental Laws,"** as referred to herein, shall mean all applicable federal, state, and local laws, rules, regulations, orders, judicial determinations, and decisions or determinations by any judicial, legislative or executive body of any governmental or quasi-governmental entity, whether in the past, the present or the future, with respect to:

(a)   the installation, existence, or removal of, or exposure to, Asbestos on the Property.

(b)   the existence on, discharge from, or removal from the Property of Hazardous Materials.

(c)   the effects on the environment of the Property or of any activity conducted on the Property.

Relevant Environmental Laws shall include, but are not limited to, the following: (i) the Comprehensive Environmental Response, Compensation, and Liability Act, 42 USC Sections 9601, *et seq.*; the Superfund Amendments and Reauthorization Act, Public Law 99-499, 100 Stat. 1613; the Resource Conservation and Recovery Act, 42 USC Sections 6901, *et seq.*; the National Environmental Policy Act, 42 USC Section 4321; the Safe Drinking Water Act, 42 USC Sections 300F, *et seq.*; the Toxic Substances Control Act, 15 USC Section 2601; the Hazardous Materials Transportation Act, 49 USC Section 1801; the Federal Water Pollution Control Act, 33 USC Sections 1251, *et seq.*; the Clean Air Act, 42 USC Sections 7401, *et seq.*; and the regulations promulgated in connection therewith; (ii) Environmental Protection Agency regulations pertaining to Asbestos (including 40 CFR Part 61, Subpart M); Occupational Safety and Health Administration Regulations pertaining to Asbestos (including 29 CFR Sections 1910.1001 and 1926.58) as each may now or hereafter be amended; and (iii) any state and local laws and regulations pertaining to Hazardous Materials and/or Asbestos.

(ii)   **"Asbestos,"** as referred to herein, shall have the meanings provided under the Relevant Environmental Laws and shall include, but not be limited to, asbestos

fibers and friable asbestos as such terms are defined under the Relevant Environmental Laws.

(iii) **"Hazardous Materials,"** as referred to herein, shall mean any of the following as defined by the Relevant Environmental Laws: Asbestos; hazardous wastes; solid wastes; toxic or hazardous substances, wastes, or contaminants (including, but not limited to, polychlorinated biphenyls (PCB's), paint containing lead, and urea formaldehyde foam insulation).

b. Release and Indemnity. The City shall give Purchaser the opportunity to inspect the Property and conduct such environmental assessments and testing as Purchaser has deemed appropriate. The City shall not be liable to Purchaser for, and Purchaser, for itself and its successors and assigns, hereby releases the City from, any and all liability for any violation or alleged violation of the Relevant Environmental Laws by Purchaser respecting the Property, whether such alleged violation occurred before or after Closing and the transfer of possession to Purchaser. The City shall not be liable for, and Purchaser shall immediately pay to the City when incurred and shall indemnify, defend and hold the City harmless from and against, all loss, cost, liability, damage and expense (including, but not limited to, attorneys' fees and costs incurred in the investigation, defense and settlement of claims) that the City may suffer or incur as a result of or in connection in any way with any violation of the Relevant Environmental Laws occurring after the Closing, any environmental assessment or study from time to time undertaken or requested by Purchaser, or breach of any covenant or undertaking by Purchaser in this Section; provided, however, Purchaser shall have no obligation to the City with respect to: (i) indemnified liabilities arising solely from the gross negligence or willful misconduct of the City; or (ii) conditions or Hazardous Materials existing at the time of Closing.

c. Survival. The provisions of this Section shall survive the termination of this Agreement.

d. Breach. Breach of any of the representations, warranties and/or covenants contained in this Article shall be a default under this Agreement; provided, however, that no breach shall be deemed to have occurred so long as, upon becoming aware of a possible breach, Purchaser proceeds to reasonably investigate and remedy in compliance with the Relevant Environmental Laws the matter giving rise to the possible breach.

e. Assignment of Cause of Action. The City shall, upon request of Purchaser, convey, assign and transfer to Purchaser any claim or cause of action the City may have against others in connection with any liability against which Purchaser has fully indemnified the City (including payment) under this Agreement.

## ARTICLE 12. AMENDMENTS

12.01 Form. Any change, addition, deletion, extension or modification of this Agreement (including assignments) that is mutually agreed upon by and between the City and Purchaser shall be incorporated in a written amendment (herein called **"Amendment"**) to this Agreement. Such Amendment shall not invalidate this Agreement nor relieve or release Purchaser of any of its obligations under this Agreement unless stated therein.

12.02  Binding Effect.  No Amendment to this Agreement shall be effective and binding upon the parties unless it expressly makes reference to this Agreement, is in writing, is signed and acknowledged by duly authorized representatives of both parties.  To be effective against the City, the Amendment must be authorized as set forth in Section 14.12 of this Agreement.

## ARTICLE 13. NOTICES

13.01  Addresses.  Except as otherwise specified herein, all notices, consents, approvals, requests and other communications (herein collectively called "Notices") required or permitted under this Agreement shall be given in writing and personally delivered with receipt obtained, or mailed by registered or certified first-class mail, return receipt requested, addressed as follows:

If to the City:  Director
City of Detroit
Planning & Development Department
2000 Cadillac Square
Detroit, Michigan 48226

with a copy to:

Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226

If to Purchaser:  Steven W. Erickson, on behalf of an entity to be formed
2217 Lake Avenue
North Muskegon, Michigan 49445

with a copy to:

Beth S. Gotthelf, Attorney at Law
Butzel Long
Stoneridge West, 41000 Woodward Avenue
Bloomfield Hills, Michigan 48304

13.02  Date of Notice.  All notices shall be deemed given when hand-delivered or, if mailed, three (3) days after the day of mailing.  Either party to this Agreement may change its address for the receipt of Notices at any time by giving notice thereof to the other as provided in Section 13.01.  Any Notice given by a party hereunder must be signed by an authorized representative of such party.

## ARTICLE 14. MISCELLANEOUS

14.01  Severability.  If any one or more provisions of this Agreement or in any instrument or other document delivered pursuant to this Agreement or the application thereof to any person or circumstance shall to any extent be declared or determined to be invalid or unenforceable, the validity, legality and enforceability of the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected or impaired thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

14.02  Entire Agreement.  This instrument, including the exhibits listed in Section 1.01 which are attached hereto and which are made a part of this Agreement, contains the entire agreement between the parties and all prior negotiations and agreements are merged herein.  Purchaser acknowledges that neither the City nor the City's agents have made any representations except those expressly set forth herein, and no rights or remedies are or shall be acquired by Purchaser by implication or otherwise unless expressly set forth herein.

14.03  Terminology.  Unless the context otherwise expressly requires, the words "herein", "hereof", and "hereunder", and other words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or other subdivision.

14.04  Covenants and Conditions.  All the terms and provisions of this Agreement shall be deemed and construed to be "covenants" and "conditions" as though the words specifically expressing or imparting covenants and conditions were used in each separate term and provision.

14.05  Captions.   The headings of the Articles, Sections and other subdivisions in this Agreement are for convenience only and shall not be used to construe or interpret the scope or intent of this Agreement or in any way affect the same.

14.06  Cumulative Remedies; Jurisdiction; Venue. The rights and remedies set forth herein are not exclusive and are in addition to any of the rights and remedies provided by law or equity; provided, however, that if the City breaches any of its obligations under this Agreement, then, after reasonable notice and opportunity to cure, Purchaser shall have the right solely to seek injunctive relief, specific performance or other equitable remedies for the City's breach of this Agreement, and in no event shall Purchaser be entitled to monetary damages as a result of the City's breach of this Agreement.  All actions arising under this Agreement shall be governed by, subject to, and construed according to the laws of the State of Michigan.  Purchaser agrees, consents and submits to the personal jurisdiction of any competent court in Wayne County, Michigan for any action brought against it arising out of this Agreement.  Purchaser agrees that service of process at the address and in the manner specified in Article 13 will be sufficient to put Purchaser on notice.  Purchaser also agrees that it will not commence any action against the City because of any matter whatsoever arising out of or relating to the validity, construction interpretation and enforcement of this Agreement, in any courts other than those in the County of Wayne, State of Michigan.

14.07  Force Majeure.  In the event of enforced delay in the performance by either party of obligations under this Agreement due to unforeseeable causes beyond its control and without its fault or

negligence, including, but not restricted to, acts of God or of the public enemy, acts of the government, acts of the other party, fires, floods, epidemics, or severe weather, the time for performance of such obligations shall be extended for the period of the enforced delays; provided that the party seeking the benefit of the provisions of this Section shall within thirty (30) days after the beginning of such enforced delay, have first notified the other party in writing of the causes thereof and requested an extension for the period of the enforced delay.

14.08  Provisions Not Merged With Deed.  No provision of this Agreement is intended to or shall be merged by reason of any Deed transferring title to the Property from the City to Purchaser or any successor in interest, and any such Deed shall not be deemed to affect or impair the provisions and covenants of this Agreement.

14.09  Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original document but together shall constitute one instrument.

14.10  Singular and Plural, etc.,  As used herein, the singular include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

14.11  Time of the Essence.  Time is of the essence of this Agreement.

14.12  Authority of City.  Notwithstanding anything in this Agreement or otherwise to the contrary, the City shall not be authorized or obligated to sell the Property to Purchaser until the date that this Agreement has been fully executed by the duly authorized representative of the City pursuant to the resolution of the Detroit City Council or other governmental official or agent with jurisdiction over the matter and approved by the City of Detroit Law Department (the "Effective Date").  Any amendments or modifications must likewise be duly authorized by resolution and approval of all of the same parties.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first set forth above.

WITNESSES:

*Brooke Erickson*

~~BROOKE ERICKSON~~
Print:

Print: *Nancy Tejchma*

STATE OF MICHIGAN )
                  )ss.
COUNTY OF Muskegon )

The foregoing instrument was acknowledged before me on February 17, 2015, by Steven W. Erickson.

Kimberly Lynn Olsen
Notary Public, Muskegon County, MI
My commission expires June 30, 2018

*Kimberly Lynn Olsen*
Print:
Notary Public, Muskegon County, Michigan
My commission expires: 6/30/2018
Acting in the County of Muskegon

**PURCHASER**

STEVEN W. ERICKSON, ON BEHALF OF AN ENTITY TO BE FORMED

By: _____
Print:          Steven W. Erickson

WITNESSES:

Print: _____

_____
Print:

STATE OF MICHIGAN )
                  )ss.
COUNTY OF WAYNE  )

The foregoing instrument was acknowledged before me on _____, 2015 by Arthur Jemison, Mayor's Designee Pursuant to EM Order No. 38, ¶13.

**CITY OF DETROIT,**
a Michigan public body corporate

By: _____
Arthur Jemison, Mayor's Designee
Pursuant to EM Order No. 38, ¶13

_____
Print:
Notary Public, Wayne County, Michigan
My commission expires: _____
Acting in the County of Wayne

BH 165144

16

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first set forth above.

WITNESSES:

    **PURCHASER**

_____

STEVEN W. ERICKSON, ON BEHALF
Print:    OF AN ENTITY TO BE FORMED

By:_____

_____
Print:        Steven W. Erickson
Print:

STATE OF MICHIGAN    )
                  )ss.
COUNTY OF _____  )

    The foregoing instrument was acknowledged before me on _____, 2015, by Steven W. Erickson.

_____
Print:
Notary Public, _____ County, Michigan
My commission expires: _____
Acting in the County of _____

WITNESSES:

    **CITY OF DETROIT,**
    a Michigan public body corporate

_____
Print:    By: _____
    Arthur Jemison, Mayor's Designee
    Pursuant to EM Order No. 38, ¶13
_____
Print:

STATE OF MICHIGAN    )
                  )ss.
COUNTY OF WAYNE    )

    The foregoing instrument was acknowledged before me on *March 30*, 2015 by Arthur Jemison, Mayor's Designee Pursuant to EM Order No. 38, ¶13.

*Karen M. Beaver*

KAREN M. BEAVER
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES Jun 21 2018
ACTING IN COUNTY OF *Wayne*

Print: *Karen M. Beaver*
Notary Public, Wayne County, Michigan
My commission expires: *6/21/2018*
Acting in the County of Wayne

BH 165144

16

## EXHIBIT A
## LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING DESCRIBED AS LOTS 1187 THROUGH 1206 BOTH INCLUSIVE, ALL BEING TOGETHER WITH THE ADJACENT VACATED PUBLIC ALLEY (20 FEET WIDE) AND THE ADJACENT VACATED CAMPBELL AVENUE (66 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO PRIVATE CLAIM NO. 39 EXCEPT THE EASTERLY 574.00 FEET THEREOF LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE, EXCEPT A TRIANGULAR PORTION THEREOF DEFINED AS THE SOUTH 338.25 FEET ON THE WEST LINE OF PRIVATE CLAIM NO. 39 AND THE WEST 157.00 FEET ON THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1187 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE N.61°37'43"E. 578.36 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON AVENUE (80 FEET WIDE) TO A POINT BEING THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E. 1180.06 FEET ALONG A LINE 574.00 FEET WEST OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE; THENCE S.34°06'08"W. 494.78 FEET ALONG SAID DETROIT RIVER U.S. HARBOR LINE; THENCE N.55°47'32"W. 299.32 FEET TO A POINT ON THE WEST LINE OF PRIVATE CLAIM NO. 39; THENCE N.28°08'13"W. 1143.03 FEET ALONG SAID WEST LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF BEGINNING; SAID PARCEL CONTAINING 17.1009 ACRES, MORE OR LESS AND BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: _____ DATE: _____

Street Address[es]:

Property Tax Ward & Item numbers:

EXHIBIT B
PROJECT GOALS

1) Construction contracts shall provide that at least fifty-one percent (51%) of the workforce must be Detroit residents, and Detroit residents shall perform fifty-one percent (51%) of the hours worked on the project.

2) Purchaser shall establish a goal of contracting with at least thirty percent (30%) of Detroit-based Businesses, Detroit-headquartered Businesses, and/or Detroit Emerging Businesses (gross receipts of $1 million or less) retained to provide services on the project. Of these categories, the City will give greater weight to Detroit-headquartered Businesses.

EXHIBIT C

## QUIT CLAIM DEED

Subject to the following paragraph, the City of Detroit, a Michigan public body corporate whose address is 2 Woodward Avenue, Detroit, MI 48226 ("**Grantor**"), quit claims to quit claims to _____, whose address is 2217 Lake Avenue, North Muskegon, Michigan 49445 ("**Grantee**"), the premises located in the City of Detroit, Wayne County, Michigan, described as:

(See attached Exhibit A)

A/K/A _____     Ward: _____ Item(s):

(the "**Property**"), for the sum of _____($ _____ ), subject to and reserving to the City of Detroit its rights under public easements and rights of way, easements of record, applicable zoning ordinances and restrictions of record.

This deed is dated as of _____.

WITNESSES:                          CITY OF DETROIT, a Michigan public body
                                    corporate


_____             By: _____
Print:                              Print: _____
                                    Its: _____
_____
Print:


WITNESSES:                          CITY OF DETROIT, a Michigan public body
                                    corporate


_____             By: _____
Print:                              Print: _____
                                    Its: _____
_____
Print:

STATE OF MICHIGAN )
                   )ss.
COUNTY OF WAYNE )

The foregoing instrument was acknowledged before me on _____, 20___, by
_____, the _____ of the City of Detroit,
a Michigan public body corporate, on behalf of the City

_____
Print:

Notary Public, Wayne County, Michigan
My commission expires: _____
Acting in the County of _____

Pursuant to § 18-5-4 of the Detroit City Code,          Approved by City Council on _____
I hereby certify that proper and fair consideration      JCC pp _____ or Detroit Legal News,
has been received by the City pursuant to this          _____, on file in my office.
instrument.

                                                         Approved by Mayor on _____
_____
        Finance Director

Approved by Law Department pursuant to Sec.             _____
7.5-206 of the Charter of the City of Detroit:                    City Clerk

_____
        Corporation Counsel

This Instrument Drafted by:
Bruce N. Goldman
Property Section
City of Detroit Law Department
2 Woodward Avenue, Suite 550
Detroit, Michigan 48226

When recorded, return to:
Beth S. Gotthelf, Attorney at Law
Butzel Long
Stoneridge West, 41000 Woodward Avenue
Bloomfield Hills, Michigan 48304

Exempt from transfer taxes pursuant to MCL § 207.505(h)(i) and MCL § 207.526(h)(i).

# EXHIBIT D

## Right of Entry Letter

**[DATE]**

_____, Project Manager
[Name of Environmental Consultant]
[Address]

**RE: Request for Right-of-Entry:**
**[Address/Location] (Ward #/Item #)**
**Detroit, Michigan**

Dear _____:

You have requested a right-of-entry to conduct [general description of requested activities] at the above-referenced address (hereinafter, the "Site").

Please be advised that the City of Detroit grants permission to [**Environmental Consultant**], including its contractors, subcontractors, representatives, agents, and employees (collectively, "User") to enter the above-referenced Site for the sole purpose of conducting certain environmental activities, within the confines of the Scope of Work contained in **Exhibit A**.

This Right-of-Entry is subject in all respects to the following conditions:

1. Subject to satisfaction of the terms and conditions contained herein, this Right-of-Entry shall commence on [**start date**], and shall automatically terminate upon the completion of the work described herein, or on [**end date**], whichever occurs first.

2. User shall hold the City of Detroit harmless and shall defend and indemnify the City of Detroit from and against any and all damages, claims, obligations, penalties, costs, charges, losses, demands, liabilities, and expenses (including, without limitation, fees and expenses for attorneys, expert witnesses and other consultants) that may be imposed upon, incurred by, or asserted against the City of Detroit or its departments, officers, employees, or agents arising from and related to User and its contractors', subcontractors', representatives', agents', and employees' use of the Site and this Right-of-Entry (including but not limited to, any release or threatened release of hazardous and non-hazardous substances, contaminants, exacerbation, evacuation, on-site and/or off-site property damage, or bodily injury).

3. [**Environmental Consultant**] shall continue to maintain, and shall cause its contractors, subcontractors, representatives, and agents to continue to maintain, at their sole expense, during the time this Right-of-Entry is in effect, the following separate insurance policies:

- Commercial General Liability Insurance (Broad Form Comprehensive) written on an occurrence-based coverage, with a minimum combined single limit of $1,000,000.00 for each occurrence of bodily injury and property damage, and $2,000,000.00 in the aggregate, with the general aggregate limit applying per location.

• Automobile Liability Insurance covering all owned, hired, and non-owned vehicles with Michigan No-Fault Coverage plus residual liability coverage with a minimum combined single limit of $1,000,000.00 for each occurrence of bodily injury and property damage.

• Worker's Compensation Insurance for employees which meets Michigan's Statutory minimum requirements and Employer's Liability Insurance with the minimum limits of $500,000.00 for each disease, person, and accident.

• Contractor Pollution Liability Insurance with minimum limits of $1,000,000.00 per occurrence, and $2,000,000.00 in the aggregate.

Said insurance policies shall name the User as the insured. The City of Detroit shall be named as an additional insured on the certificates of insurance, without limitation, for all preceding coverage, excluding workers' compensation and employers' liability insurance. Each policy shall be accompanied by a commitment from the insurer that such policies shall not be canceled, modified, or coverage reduced without at least thirty (30) days prior notice to the City of Detroit. Certificates of Insurance evidencing such coverage and endorsements shall be submitted to the City of Detroit prior to the commencement of performance under this Right-of-Entry, and at least fifteen (15) days prior to the expiration dates of expiring policies.

4. User shall not impair any part of the Site, except as customarily incident to the activities described in Exhibit A and in accordance with all applicable laws. User shall repair any damage caused to the Site and/or properties affected by the activities at the Site, and restore the Site and/or properties affected by the activities at the Site to its/their original condition. Initial access to the Site shall be coordinated through the Planning and Development Department, Property Management Section at (313) 224-1187.

5. User shall contact the Department of Public Works, City Engineering Division at (313) 224-3935 upon the discovery of any damage caused by User's activities to the curb, sidewalk, street, or any portion of the right of way and/or infrastructure in order to provide notice and obtain the proper City of Detroit permits for repair.

6. User will not bring any soils or other materials onto the Site, except in strict accordance with the Department of Public Works, City Engineering Division Standard Specifications for the above-referenced Site and only with prior written verification for compliance by the City of Detroit's Buildings, Safety Engineering, and Environmental Department—Environmental Affairs of the User's fill material analytical data. User shall be responsible for the removal of any and all materials, tools and equipment brought onto the Site required for the authorized activities, and User shall assume the risk of loss or damage to any materials, tools and equipment.

7. User is entering upon and using the Site at its own risk, and accepts the Site "As Is". The City of Detroit makes no representation or warranty as to the status of title or the physical or environmental condition of the Site, or its fitness for any particular use.

8. User shall take all reasonable measures and precautions to mitigate any noise, vibrations, dust, and odors emanating from the activities on the Site.

9. User shall immediately notify the City's Buildings, Safety Engineering, and Environmental Department—Environmental Affairs at (313) 471-5108 upon the discovery of a suspected release of hazardous substances, hazardous materials, contaminants, or property damage as a result of User's activity at the Site.

10. User shall provide to the City of Detroit, without charge, copies of any and all draft and final work plans, reports, health and safety plans, and other environmental, analytical, or engineering documents relating in any way or arising out of its activities at the Site.

Upon the preparation of the documents, three copies of each document shall be provided to:

      Raymond A. Scott, General Manager
      City of Detroit
      Buildings, Safety Engineering, and Environmental Department
      2 Woodward Avenue, Suite 401
      Detroit, Michigan 48226

11. This instrument and the rights granted hereunder may not be assigned by User.

12. User shall take all precautions necessary to make the Site safe for the authorized activities, including, where appropriate, preparation and adherence to a site-specific health and safety plan.

13. User shall be responsible for ensuring compliance with all applicable federal, state, and local laws, rules, regulations, standards, plans, and orders. Any violation of the applicable laws, rules, regulations, standards, plans, and orders; or breach of the terms contained within this document may be considered grounds for termination of the Right-of-Entry.

14. This instrument constitutes the entire Right-of-Entry agreement between the City of Detroit and the User with respect to its subject matter. This agreement may not be modified, amended, changed, or altered in any respect unless done so in a writing acknowledged by both the City of Detroit and User.

15. No activities other than the activities authorized in Exhibit A may be performed on the Site.

This Right-of-Entry will be effective only upon execution of the acknowledgment and agreement noted herein by an authorized representative of User and upon delivery of same to Mr. Raymond Scott, Buildings, Safety Engineering, and Environmental Department, at the address listed above.

Sincerely,

_____
\*\*\* [Authorized City of Detroit Department Signature]

[Environmental Consultant], by its duly authorized representative, hereby acknowledges receipt of the original copy of this letter, and agrees to be bound by the terms and conditions stated therein.

[ENVIRONMENTAL CONSULTANT]
BY: _____
(Signature)

PRINT NAME: _____
ITS: _____
(Duly Authorized Representative)

DATE _____
TELEPHONE NUMBER: _____

EXHIBIT A TO SAMPLE ENVIRONMENTAL RIGHT-OF-ENTRY DOCUMENT

SCOPE OF WORK

The following is the Scope of Work that [Environmental Consultant], its contractors, subcontractors, representatives, agents and employees (collectively, "User"), is authorized to perform at the Site. User shall be responsible for ensuring compliance in all respects with the Scope of Work, and all applicable federal, state, and local laws, rules, regulations, standards, plans, and orders.
User is only authorized to undertake the following activities at the Site:

[LIST OF AUTHORIZED ACTIVITIES]

Schedule I

## CERTIFICATE OF AUTHORITY

I, _____, _____ of
, a _____, a Michigan _____ (the "Company")

DO HEREBY CERTIFY that the following is a true and correct excerpt from *[check appropriate box]*

☐ the minutes of a meeting of the _____ of the Company duly called and held on _____

☐ a consent in lieu of a meeting, with signed consents received from the requisite number of _____ of the Company on or before the date hereof,

and that the same is now in full force and effect:

"RESOLVED, that any _____ of the Company, is hereby authorized to execute and deliver, in the name and on behalf of the Company, any agreement or other instrument or document in connection with any matter or transaction with the City of Detroit that shall have been duly approved; the execution and delivery of any agreement, document, or other instrument by any of such _____ [Managers/Officers] to be conclusive evidence of such approval."

I FURTHER CERTIFY that the following persons are Officers:

I FURTHER CERTIFY that any of the aforementioned _____ [Managers/Officers] of the Company are authorized to execute or guarantee and commit the Company to the conditions, obligations, stipulations and undertakings contained in the attached Agreement, and that all necessary approvals have been obtained in relationship thereto.

IN WITNESS THEREOF, I have set my hand this _____ day of _____, 20___.

Print: _____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S *EX PARTE* MOTION FOR AN ORDER SHORTENING NOTICE AND SCHEDULING AN EXPEDITED HEARING ON THE MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS

The City of Detroit ("City") moves for the entry of an *ex parte* order pursuant to Rules 9006(c)(1) and 9007 of the Federal Rules of Bankruptcy Procedures and Rule 9006-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Michigan (a) shortening the notice period with respect to the City's Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens (Doc. No. 10087) ("Motion") and (b) scheduling a hearing on the Motion during the week of August 3, 2015. In support of this *Ex Parte* Motion, the City respectfully states as follows:

1.  Cause exists to schedule an expedited hearing on the Motion. In violation of the injunction set forth in the City's confirmed plan, B&C Land Development Corporation ("B&C") filed a state court lawsuit against the City seeking monetary damages, specific performance and injunctive relief on account of an alleged real estate purchase agreement from 2006. The filing of the lawsuit has delayed and possibly endangered the City's sale of the properties subject to the state court complaint to separate purchasers. One day prior to the filing of the lawsuit, the

Detroit City Council approved both sales, which have an aggregate purchase price of $3,000,000. The City and the purchasers desire to complete the sale of these properties as soon as possible. The purchasers have informed the City that they have forgone several contracts that they otherwise could have secured due to the closing delays caused by the filing of the state court lawsuit. One of the purchasers also informed the City that it needs to have closing occur immediately in order to perform on certain of its existing contractual obligations. The City thus requests that the Court schedule an expedited hearing on the Motion.

2. Bankruptcy Rule 9006(c)(1) provides that "when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced." Fed. R. Bankr. P. 9006(c)(1). Local Rule 9006-1(b) further provides that "a party may file a motion for an *ex parte* order reducing or enlarging the time for a party to take any action or file any paper." E.D. Mich. LBR 9006-1(b).

3. In addition, pursuant to Bankruptcy Rule 9007, "[w]hen notice is to be given under the [Bankruptcy Rules], the court shall designate, if not otherwise specified herein, the time within which, the entities to whom, and the form and manner in which the notice shall be given." Fed. R. Bankr. P. 9007.

4. Together, these rules provide the Court with the authority to enter an *ex parte* order scheduling a hearing on shortened notice and approve the manner of notice of such hearing.

5. On July 1, 2015, B&C filed a complaint ("Complaint") against the City in Wayne County Circuit Court, Michigan, case number 15-008602 ("State Court Lawsuit"). The

Complaint is attached as Exhibit 6A to the Motion. A notice of lis pendens ("Lis Pendens") was attached to the complaint.

6.      In the Complaint, B&C alleges that on April 14, 2006, its President, Mr. Robert Carmack, signed an offer to purchase approximately 29 acres of land from the City located at 5601, 5815 and 5861 W. Jefferson Ave., commonly known as Revere Copper & Brass ("Property"). Complaint ¶ 12.

7.      In February, 2015, the City received two purchase offers for different portions of the Property. Waterfront Terminal Holdings II, LLC ("Waterfront") offered to purchase approximately 6 acres of the Property ("Waterfront Property") for $735,000. *See* Motion, Ex. 6-E, True Copy Certificate of Resolution Approving Waterfront Offer to Purchase at 2. The terms of the Waterfront offer are set forth in a Purchase Agreement dated February 17, 2015 ("Waterfront Offer to Purchase"). *See* Motion, Ex. 6F. Waterfront wishes to acquire the Waterfront Property to expand its vital marine liquid and bulk distribution operations. Motion, Ex. 6E at 2. Upon acquisition, Waterfront will remediate the Waterfront Property, dredge the riverfront, and improve the seawall and dock in order to grow its large vessel refueling operations. *Id.*

8.      On June 30, 2015, the Detroit City Council passed a resolution approving the Waterfront Offer to Purchase and on July 7, 2015, Mayor Michael Duggan approved the resolution. Motion, Ex. 6E. Due to the filing of the State Court Lawsuit, on July 17, 2015, the sale closed in escrow. *See* Motion, Ex. 6G, Escrow Agreement.

9.      A separate purchaser, Revere Dock, LLC ("Revere Dock"), offered to purchase approximately 17 acres of the Property ("Revere Dock Property") for $2,280,000.00. *See* Motion, Ex. 6H, True Copy Certificate of Resolution Approving Revere Dock Offer to Purchase

at 2. The terms of the Revere Dock offer are set forth in a Purchase Agreement dated February 17, 2015 ("Revere Dock Offer to Purchase").  *See* Motion, Ex. 6I.   Under the terms of the Revere Dock Offer to Purchase, the Revere Dock Property would be conveyed to Revere Dock under a development agreement by quit claim deed.  *See* Motion, Ex. 6H at 2.  Pursuant to the development agreement, Revere Dock's construction contracts will provide that Detroit residents must constitute at least 51% of the workforce and perform 51% of the hours worked on the project.  *Id.*   Revere Dock will also establish the goal of contracting with at least 30% of Detroit-based Businesses, Detroit-headquartered Businesses or Detroit Emerging Businesses.  *Id.*  Revere Dock's development of the Revere Dock Property will bring new heavy lift marine and transport capacity to Detroit, supporting manufacturing and fabricating companies with project equipment of oversize dimension and weight, while providing on-site staging and storage of critical equipment.  *Id.*

10.     On June 30, 2015, the Detroit City Council passed a resolution approving the Revere Dock Offer to Purchase and on July 7, 2015, Mayor Michael Duggan approved the resolution.  Motion, Ex. 6H.

11.     The City and the purchasers desire to complete the sale of these properties as soon as possible.  Consummating these transactions will immediately remove the properties from the City's maintenance responsibilities, relieving the City of the commensurate costs.  Because these properties are owned by the City, the properties are currently tax-exempt but will be returned to the tax rolls after the sales.  The improvements to be made by the purchasers will create construction jobs, and the business operations will create permanent jobs.  The purchasers have also informed the City that they have forgone several contracts that they otherwise could have secured due to the closing delays caused by the filing of the State Court Lawsuit.  Further, one of

the purchasers informed the City that it needs to have closing occur immediately in order to perform on certain of its existing contractual obligations.

12.     For these reasons, the City submits that cause exists to schedule the hearing on the Motion during the week of August 3, 2015.

WHEREFORE, the City respectfully requests that the Court enter an order, substantially in the form attached as Exhibit 1, granting the relief requested in this *Ex Parte* Motion and granting such further relief as the Court deems appropriate.

Dated: July 27, 2015

<div style="margin-left:40%">

By: /s/ Marc N. Swanson
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
laplante@millercanfield.com
swansonm@millercanfield.com

Charles N. Raimi (P29746)
Deputy Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Coleman A. Young Municipal Center
Detroit, Michigan  48226
Telephone: (313) 237-5037
Facsimile: (313) 224-5505
raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

</div>

## SUMMARY OF ATTACHMENTS

The following documents are attached to this Motion, labeled in accordance with Local Rule 9014-1(b).


Exhibit 1        Proposed Form of Order

Exhibit 2        None [Motion Seeks Ex Parte Relief]

Exhibit 3        None [Brief Not Required]

Exhibit 4        Certificate of Service

Exhibit 5        None [No Affidavits Filed Specific to This Motion]

Exhibit 6        None [No Documentary Exhibits Filed Specific to This Motion]

**EXHIBIT 1**

Proposed Order

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**ORDER GRANTING CITY OF DETROIT'S *EX PARTE* MOTION FOR AN ORDER SHORTENING NOTICE AND SCHEDULING AN EXPEDITED HEARING ON THE MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS**

This matter coming before the Court on City of Detroit's *Ex Parte* City's Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens (Doc. No. 10087). The Court having reviewed the *Ex Parte* Motion and having found that notice of the *Ex Parte* Motion was sufficient under the circumstances; having determined after due deliberation that the relief requested in the *Ex Parte* Motion is in the best interests of the Debtor and its creditors; and good and sufficient cause having been shown;

IT IS HEREBY ORDERED THAT:

1.    The *Ex Parte* Motion is GRANTED.

2.    A hearing with respect to the Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens (Doc. No. 10087) ("Motion") shall be held on August _____, 2015, at ___ :___ ___.m.

3.     B&C Land Development Corporation must file a response to the Motion on or before July _____, 2015.

4.     The City of Detroit may file a reply to any response filed by B&C Land Development Corporation on or before August _____, 2015.

5.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

6.     This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

# **EXHIBIT 2**

Not Applicable

# **EXHIBIT 3**

Not Applicable

# EXHIBIT 4 – CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 27, 2015, he served a copy of the foregoing City of Detroit's *Ex Parte* Motion for an Order Shortening Notice and Scheduling an Expedited Hearing on the Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens, upon the persons listed below, via electronic mail and first class mail.


Horace D. Cotton
P.O. Box 19520
Detroit, MI 48219
hdcotton@yahoo.com

Dated: July 27, 2015

By: /s/ Marc N. Swanson
    Marc N. Swanson
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

# EXHIBIT 5

Not Applicable

# **EXHIBIT 6**

Not Applicable

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**ORDER GRANTING CITY OF DETROIT'S *EX PARTE* MOTION FOR AN
ORDER SHORTENING NOTICE AND SCHEDULING AN EXPEDITED HEARING ON
THE MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF
ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT
CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT
AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS**

This case is before the Court on the City of Detroit's *Ex Parte* motion for expedited

hearing (Docket # 10088, the "Expedited Hearing Motion"), seeking an expedited hearing on the

City's motion filed July 27, 2015, entitled "City of Detroit's Motion for the Entry of an Order (I)

Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development

Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice

of Lis Pendens" (Docket # 10087, the "Underlying Motion"). The Court having reviewed the

Expedited Hearing Motion; and good and sufficient cause having been shown;

IT IS ORDERED THAT:

1.    The Expedited Hearing Motion (Docket # 10088) is GRANTED.

2.    A hearing on the Underlying Motion (Docket # 10087) will be held on **August 5,**

**2015, at 1:30 p.m.**

3.    B&C Land Development Corporation must file a response to the Underlying

Motion no later than July 30, 2015. *If no timely response is filed, the City may file a certificate*

*of no response and submit a proposed order, and the Underlying Motion may be granted*

*without a hearing.*

13-53846-tjt  Doc 10091  Filed 09/24/15  Entered 09/24/15 14:59:23  Page 187 of
206
13-53846-tjt  Doc 10091  Filed 09/24/15  Entered 09/24/15 14:59:23  Page 187 of 187

4.      The City of Detroit may file a reply to any response filed by B&C Land Development Corporation no later than August 3, 2015.

5.  ***No later than today, July 27, 2015 at 6:00 p.m. EDT, the City must serve a copy of this Order on B&C Land Development Corporation, by first class mail, and on its attorney (Horace D. Cotton), by first class mail and also by e-mail or fax, and file proof of such service.***

.

**Signed on July 27, 2015**

                        /s/ Thomas J. Tucker
                        Thomas J. Tucker
                        United States Bankruptcy Judge

In re:                                          Case No. 13-53846
                                                Honorable Thomas J. Tucker
City of Detroit, Michigan,                      Chapter 9

         Debtor,

_____

**B&C Land Development Corporation's Response to City of Detroit's Motion for Entry of an Order (I) Enforcing The Plan of Adjustment Injunction and (II) Requiring B&C Land Development to (A) Dismiss with Prejudice Its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens**

B&C Land Development Corporation by its undersigned counsel responds to the motion as follows:

1. B&C Land Development Corporation ("B&C") admits that it filed a state court lawsuit against the City on July 1, 2015 seeking monetary damages, specific performance and injunctive relief.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

1

13-53846-tjt Doc 10090-2 Filed 09/21/15 Entered 09/21/15 23:08:31 Page 189 of
206
13-53846-tjt Doc 10090 Filed 07/30/15 Entered 07/30/15 22:08:31 Page 1 of 4    189

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. B&C neither admits nor denies the allegations contained in paragraph 28 of the motion.

29. B&C neither admits nor denies the allegations contained in paragraph 29 of the motion.

30. B&C denies violating the Plan injunction and discharge provisions when it filed the State Court Lawsuit against the City of Detroit.  The Offer to Purchase

2

between B&C and the City for the Revere Copper & Brass property is an executory contract that was not rejected by the City in The Plan. An unrejected executory contract survives confirmation of the Plan of Reorganization and becomes binding on the reorganized corporation. *Federal's Inc. v. Edmonton Investment Co.,* 404 F.Supp. 68, 71 (E.D.S.D.Mich., 1975), aff'd 555 F.2d 577 (CA 6, 1977)   In his concurring and dissenting opinion in Bildisco, Justice Brennan wrote: "in the unlikely event that the contract is neither assumed nor rejected, it will 'ride through' the bankruptcy proceeding and be binding on the debtor even after a discharge is granted. The non-debtor party's claim will therefore survive the bankruptcy proceeding." *National Labor Relations Board v. Bildisco and Bildisco,* 465 U.S. 513, 546 n. 12, 104 S.Ct. 1188 [1206 n. 12], 1198 n. 12, 79 L.Ed. [2d] 482 (1984); see also *In re Greystone III Joint Venture,* 948 F.2d 134 (5th Cir.1991); *International Union v. Miles Machinery,* 34 B.R. 683, 687 (E.D.Mich.1982).

31. B&C was not required to file a proof of claim because the contract was executory, was neither rejected nor assumed by the City. Under the ride through case law, the consequences of a debtor's failure to assume or reject were (1) the non-debtor had no claim in the case because there was no breach and (2) discharge did not affect the enforceability of the contract against the debtor. See, e.g., *Federal's Inc. v. Edmonton Investment Company,* 555 F.2d 577 (6th Cir.1977); In re Alfar Dairy, Inc.,

32. B&C was not required to file a *Pioneer* Motion just as it was not required to file a proof of claim.

3

33. B&C respectfully requests that this Court deny this Motion.

<div align="right">

Respectfully submitted,

/s/Horace D. Cotton
Horace D. Cotton (P33268)
Horace D. Cotton, PLLC
Attorney for B&C Land
Development Corporation
P. O. Box 19520
Detroit, MI 48226
(313) 595-1517
hdcotton@yahoo.com

</div>

Dated: July 30, 2015

4

13-58846-tjt  Doc 10090-2  Filed 09/21/15  Entered 09/21/15 23:08:31  Page 402 of
13-58846-tjt  Doc 10907  Filed 07/30/15  Entered 07/30/15 22:03:31  Page 4 of 4
206

192

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**REPLY OF THE CITY OF DETROIT IN SUPPORT OF ITS MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS**

The City of Detroit, Michigan ("City"), by its undersigned counsel, submits this reply in support of its Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens ("Motion").[1]

## I.     Introduction

For its response, B&C Land Development Corporation ("B&C") alleges that its offer to purchase in 2006 (1) created a binding contract that survived for nine or more years, (2) was an executory contract as of the City's bankruptcy filing, and (3) was unknowingly assumed by the City because it was not specifically identified as rejected under the City's confirmed *Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (October 22, 2014)* (the "Plan," Doc. No. 8045).[2]  Simply put, this argument fails because (1) no contract was ever formed and (2) even if a contract had been formed, the applicable statute of limitations expired prior to the commencement of the improperly filed State Court Lawsuit to enforce it.  Thus, this Court

---

[1] Capitalized terms used but not otherwise defined herein will have the meanings ascribed to those terms in the Motion.

[2] Interestingly, even under B&C's own theory of "executory contract" the State Court Lawsuit violates the Plan injunction because this Court retained exclusive jurisdiction of the interpretation and enforcement of executory contracts pursuant to Article VII.C. of the Plan.

should enter an order requiring B&C to dismiss the State Court Lawsuit with prejudice and withdraw its Lis Pendens.

## II.    <u>Argument</u>

### A.    **No contract was ever formed; therefore, there is nothing to assume or reject.**

"It is elementary to observe that, before the Debtor can assume or reject a contract, or, for that matter, before [a purported counterparty] can seek to enforce a contract, there must be a contract to assume, reject, or enforce." *In re III Enters., Inc. V*, 163 B.R. 453, 459 (Bankr. E.D. Pa. 1994); *Nemko Inc. v. Motorola, Inc. (In re Nemko, Inc.)*, 163 B.R. 927, 935 (Bankr. E.D.N.Y. 1994) ("Generally, in order for section 365 to be applicable, the Code mandates the existence of an executory contract on the day the debtor files its petition for relief."). Obviously, the existence of a valid and binding contract is a necessary prerequisite to a contract that can be assumed, a prerequisite that is not satisfied here.

In Michigan, a municipal corporation cannot be bound to a contract by an officer of the corporation unless the officer is expressly authorized by law to do so. *Johnson v. City of Menominee*, 173 Mich. App. 690, 693-94 (1988); *see also Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 539-40 (6th Cir. 2002). Here, the City's Charter provides in section 4-112, styled Control of Property, that "Except as otherwise provided by this Charter, the City may not sell or in any way dispose of any property without the approval by resolution of the City Council." And, section 4-122 states that City contracts need to be approved by the City Council except as provided by ordinance.[3] B&C does not allege that its purported contract was approved by the City Council. In fact, B&C alleges the opposite. Complaint, ¶ 26. It alleges that the City breached a contract with B&C by "failing and refusing to present the development proposal to

---

[3] There is no applicable ordinance constituting an exception to section 4-122, s*ee* Exhibit 1, Declaration of James Noseda, nor has one been alleged by B&C.

City Council for final approval," admitting that final approval of its alleged contract never occurred.  *Id.*; *see also* Exhibit 1, Declaration of James Noseda.

The "contract" attached to the complaint is simply titled "Offer to Purchase," not "Contract for Sale" or anything else that might suggest it purports to be a binding contract.  *See* Motion, Ex. 6A, First exhibit.  It appears that a City official may have signed the offer to acknowledge its receipt, but B&C does not explain (nor could it explain) how the signature of an official unable to bind the City to a contract as a matter of law somehow transformed its offer into a binding contract.  *Johnson*, 173 Mich. App. at 693-94.

In fact, B&C knows that it has no contract.  Attached to its Complaint is a letter from the City that explains that, on receipt of the Offer to Purchase, the City will review the proposed development package.  *Id.*  "If acceptable, we shall follow our Standard Procedure for Sale of Surplus Property to obtain City Council authorization to execute an Agreement to purchase and develop the property."  *Id.*  B&C does not allege that any of this occurred because, in fact, it did not.  B&C's attachment of the letter to its Complaint shows that it <u>knows</u> that there can be no binding contract without City Council authorization and an executed Agreement to purchase.  Consequently, its State Court Lawsuit is baseless in addition to being in violation of the Plan injunction.

> **B.**     **Even if a contract had been formed, the statute of limitations for enforcing it would have expired.**

Assuming *arguendo* that the City entered into a contract to sell property to B&C when it received B&C's offer to purchase, the time to bring an action on that contract has passed.  In Michigan, actions for breach of contract are subject to a six-year statute of limitations.  MCL § 600.5807(8).  Actions seeking specific performance are subject to the same six-year limitation. *Steward v. Panek*, 251 Mich. App. 546, 551 (2002).

"In Michigan, 'a cause of action for breach of contract accrues when a contracting party fails to do what he is obligated to do under the contract.'  Accordingly, 'a breach of contract claim accrues on the date of the breach, not on the date the breach is discovered.'"  *Sunseri v. Proctor*, 487 F. Supp. 2d 905, 909 (E.D. Mich. 2007) (citing *Jacobs v. Detroit Auto. Inter-Insurance Exch.*, 107 Mich. App. 424, 431 (1981) and *Isely v. Capuchin Province*, 880 F. Supp. 1138, 1145 (E.D. Mich. 1995)).  Here, the "breach" would have accrued no later than the date on which it became apparent that the City was not going to perform.

Paragraphs 13 and 14 of the Complaint allege that Mr. Carmack's[4] development proposal was "killed" sometime between April 14, 2005, and May 21, 2008.  Paragraph 15 of the Complaint alleges that on May 21, 2008, "City Council, without benefit of the history of this property and pending sale to B&C approved the sale for $5,000,000.00 to DWSD with no appraisal or due diligence." Thus, "breach" of the purported contract could not have occurred any later than May 21, 2008 (and likely occurred much earlier by B&C's own admission). Assuming the breach occurred on the last day of that period, the statute of limitations would have expired May 21, 2014.  However, the City's bankruptcy filing would have extended that date to January 9, 2015 as a result of Bankruptcy Code § 108(c)(2).[5]  MCL § 600.5807(8) (providing for six year statute of limitations); 11 U.S.C. § 108(c)(2) (extending statute of limitations to a period 30 days after the stay in the City's bankruptcy case expired); Plan, Art. VIII-K (providing that all stays in the City's bankruptcy case terminate on the Effective Date, Dec. 10, 2014); Doc. No. 8649 (noting occurrence of effective date).  Thus, the last possible date for B&C to file an action to enforce its purported contract was January 9, 2015.

---

[4] Mr. Carmack is B&C's president.  Complaint, ¶ 6.

[5] Note, the cause of action, if it existed, likely arose much earlier.  If it arose before July 18, 2007, then the statute of limitations would have expired prepetition, and 11 U.S.C. § 108 would not be implicated.

24984810.4\022765-00202                                4
13-53846-tjt   Doc 10091-2   Filed 09/03/15   Entered 09/03/15 13:31:21   Page 4 of 9
13-53846-tjt   Doc 10091-2   Filed 09/03/15   Entered 09/03/15 16:20:37   Page 196 of
206

196

B&C did not file an action by that date. The Complaint was not filed until July 1, 2015. Thus, even had a contract been formed between the City and B&C by B&C's offer to purchase, that contract would no longer be enforceable. *III Enters., Inc. V*, 163 B.R. at 459; *Nemko*, 163 B.R. at 935.[6]

## III. Conclusion

For these reasons, the City respectfully requests that this Court enter an order in substantially the same form as the one attached as Exhibit 1 to its Motion.

August 3, 2015                    Respectfully submitted,

By: /s/ Marc N. Swanson
    Jonathan S. Green (P33140)
    Marc N. Swanson (P71149)
    MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    green@millercanfield.com
    swansonm@millercanfield.com

ATTORNEYS FOR THE CITY OF DETROIT

---

[6] Further, even if there had been a contract between the City and B&C and even if the enforcement of that contract was not barred by the applicable statute of limitations (and, of course, assuming that contract is an executory contract), the failure to designate the contract for rejection was an omission under the Plan which, to the extent necessary, this Court has exclusive jurisdiction to remedy. *See* Plan, Art. VII, Section H (This Court retained exclusive jurisdiction to "remedy any defect or omission [in] the Plan."). If this Court were to deny the Motion, the City will ask this Court to permit it to amend Exhibit II.D.6 to include the contract in the list of rejected contracts in order to remedy this omission to the extent this Court believes that the City does not already have the authority to do so under its Plan or otherwise.

EXHIBIT 1

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## DECLARATION OF JAMES NOSEDA IN SUPPORT OF THE CITY OF DETROIT'S REPLY OF THE CITY OF DETROIT IN SUPPORT OF ITS MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS

1.      My name is James D. Noseda. I am a Supervising Assistant Corporation Counsel in the City of Detroit Law Department. I have worked in the City of Detroit Law Department since May 1, 1995.

2.      For many decades, the Detroit City Charter has: (a) required the City Council to keep a journal of its proceedings ("Official Journal"), which shall be a public record, and (b) required the City Clerk to keep a record of all City Council ordinances, proceedings and resolutions. Those provisions are found in the 2012 Charter at sections 4-105 and 3.5-102, respectively. The Official Journal has indices for resolutions, including contract approvals.

3.      I have searched the Official Journal going back to the year 2004 and have found no resolution approving a contract to sell any part of the subject real property to B&C Land Development Corporation or its president, Mr. Robert Carmack.

4.      As the Detroit City Council must pass a resolution to approve a contract for the sale of real property, it is not possible for B&C Land Development Corporation or its president, Mr. Robert Carmack to have a contract with the City of Detroit to purchase the subject real property.

5. Furthermore, there is no City ordinance constituting an exception to section 4-122 of the City Charter that would make the passing of a resolution to approve a contract for the sale of real property unnecessary as a matter of law.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

By: _____
James Noseda
Supervising Assistant Corporation Counsel
City of Detroit Law Department

Dated: August 3, 2015

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 3, 2015, he served a copy of the

*Reply Of The City Of Detroit In Support Of Its Motion For The Entry Of An Order (I) Enforcing The Plan Of Adjustment Injunction And (II) Requiring B&C Land Development Corporation To (A) Dismiss With Prejudice Its State Court Lawsuit And (B) Withdraw Its Notice Of Lis Pendens*,

upon the persons listed below, as follows:

Via first class mail:

B&C Land Development Corporation
c/o Robert Lee Carmack
8711 Michigan Ave.
Detroit, MI 48210

Via electronic mail and first class mail:

Horace D. Cotton
P.O. Box 19520
Detroit, MI 48219
hdcotton@yahoo.com

Dated: August 3, 2015

By: /s/ Marc N. Swanson
    Marc N. Swanson
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## ORDER GRANTING CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS

This case is before the Court on the City of Detroit's Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens (Docket # 10087, the "Motion"). The Court held an expedited hearing on the Motion on August 5, 2015. For the reasons stated by the Court on the record during the hearing,

**IT IS ORDERED THAT:**

1. The Motion is granted.

2. No later than August 10, 2015, B&C Land Development Corporation must dismiss, or cause to be dismissed, with prejudice, Case No 15-008602 filed with Wayne County Circuit Court, Michigan and captioned *B&C Land Development Corporation vs. The City of Detroit, A Municipal Corporation* (the "State Court Lawsuit").

3. No later than August 10, 2015, B&C Land Development Corporation must withdraw from the Wayne County Register of Deeds the Notice of Lis Pendens filed by it with respect to the property described in paragraphs 7 and 8 of this Order.

4. If B&C Land Development Corporation fails to timely withdraw the Notice of Lis Pendens as required by paragraph 3 of this Order, the City may file a copy of this Order with the

Wayne County Register of Deeds which will operate as a withdrawal of the Lis Pendens with respect to the property described in paragraphs 7 and 8 of this Order.

5.     B&C Land Development Corporation is permanently barred, estopped and enjoined from asserting any claims described in the State Court Lawsuit, or the alleged conduct forming the basis of the State Court Lawsuit, against the City of Detroit or property of the City of Detroit, in the State Court Lawsuit or in any other action or proceeding.

6.     The Court will retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

[continued on following page]

7.

## LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING DESCRIBED AS LOTS 1187 THROUGH 1206 BOTH INCLUSIVE, ALL BEING TOGETHER WITH THE ADJACENT VACATED PUBLIC ALLEY (20 FEET WIDE) AND THE ADJACENT VACATED CAMPBELL AVENUE (66 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO PRIVATE CLAIM NO. 39 EXCEPT THE EASTERLY 574.00 FEET THEREOF LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE, EXCEPT A TRIANGULAR PORTION THEREOF DEFINED AS THE SOUTH 338.25 FEET ON THE WEST LINE OF PRIVATE CLAIM NO. 39 AND THE WEST 157.00 FEET ON THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1187 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE N.61°37'43"E. 578.36 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON AVENUE (80 FEET WIDE) TO A POINT BEING THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E. 1180.06 FEET ALONG A LINE 574.00 FEET WEST OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE; THENCE S.34°06'08"W. 494.78 FEET ALONG SAID DETROIT RIVER U.S. HARBOR LINE; THENCE N.55°47'32"W. 299.32 FEET TO A POINT ON THE WEST LINE OF PRIVATE CLAIM NO. 39; THENCE N.28°08'13"W. 1143.03 FEET ALONG SAID WEST LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF BEGINNING; SAID PARCEL CONTAINING 17.1009 ACRES, MORE OR LESS AND BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: Basil Sarim DATE: 4/28/2015

Street Address[es]:

Property Tax Ward & Item numbers:

[continued on following page]

8.

## LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING
DESCRIBED AS LOTS 1207 THROUGH 1214 BOTH INCLUSIVE, LOT 1215 EXCEPT
THE EASTERLY 6.36 FEET THEREOF, ALL BEING TOGETHER WITH THE ADJACENT
VACATED PUBLIC ALLEY (20 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF
THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED
IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO THE
WESTERLY 213.64 FEET OF THE EASTERLY 574.00 FEET OF PRIVATE CLAIM NO.
39 LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE
WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20,
PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND
ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING
MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT
SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO.
39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS;
THENCE N.61°37'43"E. 213.64 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON
AVENUE (80 FEET WIDE) TO A POINT BEING 6.36 FEET WESTERLY FROM THE
NORTHEAST CORNER OF LOT 1215 OF THE "SIXTH PLAT SUBDIVISION OF THE
PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN
LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E.
1068.40 FEET ALONG A LINE 360.36 FEET WEST OF THE EASTERLY LINE OF
SAID PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE;
THENCE S.34°06'08"W. 241.60 FEET ALONG SAID DETROIT RIVER U.S. HARBOR
LINE; THENCE N.28°03'35"W. 1180.06 FEET ALONG A LINE 574.00 FEET WEST
OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF
BEGINNING; SAID PARCEL CONTAINING 5.5137 ACRES, MORE OR LESS AND
BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: Basil Sarin DATE: 4/28/2015

Street Address[es]:

Property Tax Ward & Item numbers:

**Signed on August 5, 2015**
　　　　　　　　　　　　　　　　**/s/ Thomas J. Tucker**
　　　　　　　　　　　　　　　　**Thomas J. Tucker**
　　　　　　　　　　　　　　　　**United States Bankruptcy Judge**