UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN,   Bankr. No. 13-53846 (Chapter 9)
                             HON. STEVEN W. RHODES
    Debtor.
_____/

AFSCME COUNCIL 25 AND
ITS AFFILIATED LOCALS,
                             Civil Action No. 14-CV-14548
    Appellant,         HON. BERNARD A. FRIEDMAN

vs.

CITY OF DETROIT, MICHIGAN,

    Appellee.
_____/

## OPINION AFFIRMING BANKRUPTCY COURT'S ORDER

    This matter is presently before the Court on an appeal from an October 20, 2014, order of the Bankruptcy Court. The parties' appellate briefs have been filed. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this appeal without oral argument.

    To the extent the Bankruptcy Court's decision depended on factual findings, this Court reviews those findings for clear error; and to the extent its decision depended on rulings of law, this Court reviews those rulings de novo. *See* 28 U.S.C. § 158(a); *In re Cook*, 457 F.3d 561, 565 (6th Cir. 2006). Further, a bankruptcy court's order interpreting (as opposed to modifying) a plan is reviewed for an abuse of discretion. *See In re Dow Corning Corp.*, 456 F.3d 668, 675 (6th Cir. 2006); *In re Terex Corp.*, 984 F.2d 170, 172 (6th Cir. 1993). "A court abuses its discretion when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *In re*

*Ferro Corp. Derivative Litig.*, 511 F.3d 611, 623 (6th Cir. 2008). Another statement of the standard is that "[a]n abuse of discretion occurs when 'the district court's decision is clearly unreasonable, arbitrary or fanciful.'" *Marcilis v. Twp. of Redford*, 693 F.3d 589, 597 (6th Cir. 2012) (quoting *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 343 (6th Cir.2002)).

The order at issue states: "For the reasons set forth in open Court on October 20, 2014, AFSCME's claim entitled 'AFSCME Council 25 (13th Check ULP) MERC Case No. C12-E-092' set forth on line #7 of its proof of claim shall be in Class 11. AFSCME's claim entitled 'City of Detroit Health Care: Grievance No. C10 A-025' set forth on line #17 shall be in Class 12." In his bench ruling, Judge Rhodes stated the issue and explained the basis for his ruling as follows:

> The core of the dispute is whether the settlement entered into between the city and AFSCME early in the case includes AFSCME's thirteenth check claim and related claims and its health care modification claim. . . .
> AFSCME filed its proof of claim on February 21st, 2014 in the total amount of over 8.7 billion dollars. This includes several claims other than the two that are presently before the Court. In April of 2014, AFSCME and the city reached a settlement agreement.
> On May 15, 2014 the city filed its fourth amended plan in which it provides for the allowance of Class 11, the GRS pension claims in the amount of $8,879,000,000 and the allowance of Class 12, the OPEB claims in the amount of $4,303,000,000.[1]
> The plan provides the definition of the GRS pension claim as follows:
> "Any claim (other than an OPEB claim), whether asserted by current or former employees of the city, their heirs or beneficiaries, or by the GRS, or any trustee thereof, or any other entity acting on the GRS' behalf against the city, or any fund managed by the city . . . based upon, arising under, or related to any agreement, commitment, or other obligation whether evidenced by contract, agreement, rule, regulation, ordinance, or statute . . . or law for A,

---

[1] This sentence appears to contain transcription errors. The City's Fourth Amended Plan was filed on May 5, 2014 [Bankr. docket entry 4392] and it provided in Section II(B)(3)(r)(I) for the allowance of Class 11 claims in the amount of $1.879 billion, not $8.879 billion.

2

any pension, disability, or other post-retirement payment or distribution in respect of the employment of current or former employees, or B, the payment by the GRS to persons who may at any time [have] participated in, were beneficiaries of, or accrued post-retirement pension or financial benefits under the GRS."

This is in the plan at Section (I)(A)203.[2] The plan provides the definition of OPEB claims as:

"Any claim against the city for OPEB benefits held by a retiree who retired on or before December 31, 2014 and is otherwise eligible for OPEB benefits and any eligible surviving beneficiaries of such retiree." This is at plan Section (I)(A)255.[3]

The plan further states at (I)(A)254:

"OPEB benefits means collectively post-retirement health, vision, dental, life and death benefits provided to retired employees of the city and their surviving beneficiaries pursuant to employee ... health and life insurance benefit plan, and employee's death benefits plan, including the members of the certified class in the action captioned Weiler . . . pursuant to the 'consent judgment and order of dismissal' entered in that action on August 26th, 2019."

The Bankruptcy Code defines a claim as:

"A, right to payment . . . . Or B, right to an equitable remedy for breach of performance if such breach gives rise to a right to payment . . . . And that's in 11 USC Section 105(5).

The city asserts that pursuant to the plain language of the plan, the pension claim in the claim at issue is included in Class 11. Likewise the city argues that AFSCME's health care modification claim in the proof of claim before the Court[] is included in Class 12.[4]

AFSCME contends that both claims were intended to be in Class 14 which is the class for unsecured claims. It asserts that the language in the plan is at the very least ambiguous and that the Court should consider the way the phrase GRS pension claim is used throughout the plan and its context in the plan.

AFSCME contends that the definition of pension claim is

---

[2] In the Eighth Amended Plan, dated October 22, 2014, the version ultimately confirmed by the Bankruptcy Court, this definition is found in ¶ 212 of Article I, Section A ("Defined Terms").

[3] In the Eighth Amended Plan, this definition is found in ¶ 260 of Article I, Section A.

[4] Claims are classified in section II(B) of the plan. Class 11 is "GRS Pension Claims." Class 12 is "OPEB Claims." In the Eighth Amended Plan the Class 11 claims were allowed in the aggregate amount of $1.879 billion. The Class 12 claims were allowed in the aggregate amount of $4.303 billion. *See* section II(B)(3)(r) and (s) of the Plan.

3

intended to include only the claimant's rights to prospective plan payments, rather than the credits and disbursements that should have been made in the past that were covered in its proof of claim.

Likewise with respect to the health care modification claim, AFSCME asserts that it is not included in Class 12 because Class 12 deals exclusively with prospective payments or distributions and is not intended to include past due benefits.

In the Official Committee of Unsecured Creditors v Dow Corning (In Re: Dow Corning Corp.), 456 F.3d 668, 676, 6th Circuit, 2006, the Court stated:

"In interpreting a confirmed plan, Courts use contract princip[le]s since the plan is effectively a new contract between the debtor and its creditors."

Absent ambiguity the plan[] "is to be enforced as written . . . regardless of whether it is in line with the parties' prior obligations." Id. The Court concludes that the language of the plan is not ambiguous and that the definitions of GRS claim and OPEB claim in the plan plainly include the claims at issue here.

The Court finds that AFSCME's attempt to distinguish between the claimant's rights to prospective payments, and the rights to past due claims is not consistent with the broad definitions of the claims in Classes 11 and 12, or with the broad definition of a claim in the Bankruptcy Code.

By operation of Section 944(b) of the Bankruptcy Code, the debts that AFSCME seeks to assert through these two claims will be discharged. By operation of Section 944(a), the city's only debts coming out of bankruptcy will be those set forth in the confirmed plan if of course it is confirmed.

AFSCME relies in part on the city's May 15, 2014 objection to its proof of claim in support of its argument that the pension claim at issue here was not included in the settlement. Specifically it asserts that the city's objection does not argue that the claim is included in . . . Class 11 as the city now asserts.

It also argues that the Court should consider evidence from the confidential mediations regarding the negotiations that led to the settlement. The Court rejects this argument.

First, the Court finds that the city did raise this issue in Paragraph 19 of its objection. Second, and more important, in S[]chachner v Blue Cross and Blue Shield of Ohio, 77 F.3d 889, 6th Circuit 1996 . . . [t]he 6th Circuit held that extrinsic evidence of contract intent is admissible only if the contract is ambiguous on its face. Meaning that it is subject to . . . two reasonable interpretations.

And the Court further held that extrinsic evidence cannot be used to create an ambiguity. Further, the mere fact that the parties

> argue two different interpretations is not sufficient to establish that the contract is ambiguous.
>
> As found earlier, the Court finds no ambiguity here. Accordingly, the task before the Court is only to determine the intent of the plan from its language and to apply it.
>
> AFSCME also relies on its proof of claim as classifying these pensions – pension and health care claims in Class 14. However, under Section 941 only the city can propose a plan and under Section 1123(a)(1), only the plan can classify claims.
>
> Accordingly, the . . . city's plan governs the classification of claims and not AFSCME's proof of claim. The Court will enter an appropriate order.

Hr'g Tr. at 4-10 [Bankr. docket entry 8031].

Although the parties have submitted lengthy briefs, and many hundreds of pages of exhibits from the Bankruptcy Court's record, the issue raised in this appeal is quite straightforward, namely, whether the Bankruptcy Court abused its discretion in interpreting the plan to include the pension and healthcare benefits claims in Classes 11 and 12, respectively, and not in Class 14 ("other unsecured claims"). As noted above, an abuse of discretion occurs when a court applies an incorrect legal standard (or misapplies a correct one) or relies on erroneous findings of fact, or when it acts unreasonably, arbitrarily, or fancifully. Appellant has not shown that any such error or arbitrariness occurred here.

On February 21, 2004, AFSCME submitted a massive proof of claim ("Claim #2958") consisting of 20 subcategories of claims [Bankr. docket entry 4876-1]. The seventh subcategory concerned a city "ordinance which curtailed payments into employee annuity accounts and stopped '13th checks' being paid to retirees." The seventeenth subcategory concerned a city "change[] [in] retiree health care benefits, requiring retirees to incur greater cost of health care." *Id.* The "13th check" subcategory of the claim clearly falls within Class 11 ("GRS Pension Claims") because it comes within the plan's definition of such claims:

5

> "GRS Pension Claim" means any Claim (other than an OPEB Claim), whether asserted by current or former employees of the City or any participants in GRS, their heirs or beneficiaries or by the GRS or any trustee thereof or any other Entity acting on the GRS's behalf, against the City or any fund managed by the City (including, but not limited to, the General Fund, the water fund, the sewage disposal fund, the Detroit General Retirement System Service Corporation fund or the pension funds) based upon, arising under or related to any agreement, commitment or other obligation, whether evidenced by contract, agreement, rule, regulation, ordinance, statute or law for (a) any pension, disability or other post-retirement payment or distribution in respect of the employment of current or former employees or (b) the payment by the GRS to persons who at any time participated in, were beneficiaries of or accrued post-retirement pension or financial benefits under the GRS.

Eighth Amended Plan ¶ 212 of section I(A). In the proof of claim itself, appellant characterized the "13th check" claim as involving curtailed annuity payments to retirees and into employee annuity accounts.[5] The Bankruptcy Court committed no error in including this claim within Class 11, as this class unambiguously includes all pension and annuity claims against the GRS, whether accrued or potential, and the 13th check claim is such a claim. Where, as here, the plan language is unambiguous, consideration of extrinsic evidence of the parties' intent is improper. *See In re Dow Corning Corp.*, 456 F.3d 668, 676 (6th Cir. 2006) (noting that "if a plan term is unambiguous, it is

---

[5] The "13th Check" is described by appellant as follows:

> Prior to November 30, 2011, the City of Detroit and its General Retirement System (GRS) supplemented the compensation to active employees, if investment earnings from the assets of GRS were sufficient to do so (aka "excess earnings"). This is referred to as a "13th check," since it was another check given to retirees beyond the 12 monthly pension checks. It also called for enhancement credits to active employees' annuity accounts.

Appellant's Br. on Appeal at 3.

6

to be enforced as written").

Likewise, the appellant's claim regarding the increase in cost to retirees' healthcare benefits clearly falls within Class 12 ("OPEB Claims") because it comes within the plan's definition of such claims:

> "OPEB Claim" means any Claim against the City for OPEB Benefits held by a retiree who retired on or before December 31, 2014 and is otherwise eligible for OPEB Benefits, and any eligible surviving beneficiaries of such retiree.

Eighth Amended Plan ¶ 260 of section I(A). "OPEB Benefits," in turn, are defined as follows:

> "OPEB Benefits" means, collectively, post-retirement health, vision, dental, life and death benefits provided to retired employees of the City, the Detroit Public Library or the Detroit Regional Convention Facility Authority and their surviving beneficiaries pursuant to the Employee Health and Life Insurance Benefit Plan, the Employees Death Benefit Plan or any comparable plan, including the members of the certified class in the action captioned *Weiler et al. v. City of Detroit*, Case No. 06-619737-CK (Wayne County Circuit Court), pursuant to the "Consent Judgment and Order of Dismissal" entered in that action on August 26, 2009.

*Id.* ¶ 259. The Bankruptcy Court committed no error in including this claim within Class 12, as this class unambiguously includes all claims for post-retirement healthcare benefits, whether accrued or potential, and this is such a claim. Again, extrinsic evidence of the parties' intent is irrelevant in interpreting unambiguous plan terms.

The Court finds the Bankruptcy Court did not abuse its discretion in placing the claims at issue in Classes 11 and 12. Appellant's arguments to the contrary are rejected.[6] The Bankruptcy Court's order is affirmed.[7]


Dated: September 29, 2015
     Detroit, Michigan

S/ Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] In particular, the Court rejects arguments not raised before the Bankruptcy Court, including appellant's argument regarding "disputed" versus "allowed" claims. In any event, the Bankruptcy Court's classification of the claims was clearly correct.

[7] Even if the standard of review were de novo, as appellant suggests, the Court would reach the same conclusion for the same reasons. Moreover, the appeal is equitably moot for the reasons explained in the Court's opinions and orders granting motions to dismiss on this basis in 14-CV-14872, 14-CV-14899, 14-CV-14910, 14-CV-14917, 14-CV-14919, 14-CV-14920, and 15-CV-10036.