UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

        Debtor.
_____/

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

**DETROIT POLICE LIEUTENANTS AND SERGEANTS
ASSOCIATION'S ("DPLSA") MOTION FOR ENTRY
OF AN ORDER MODIFYING CLAIM NO. 1881 FILED
BY THE DPLSA TO CLARIFY THAT THE SUBJECT MATTER OF THAT PORTION
OF CLAIM NO. 1881 RELATED TO LUMP SUM PAYMENTS FOR BANKED TIME
FOR PARTICIPANTS IN THE DEFERRED RETIREMENT OPTION PROGRAM
("DROP") HAS BEEN RESOLVED AND RENDERED MOOT BY TERMS AS
WRITTEN OF THE DPLSA COLLECTIVE BARGAINING AGREEMENT AS
ADOPTED IN THE CITY'S PLAN OF ADJUSTMENT**

The Detroit Police Lieutenants and Sergeants Association ("DPLSA"), through its counsel, Erman, Teicher, Zucker & Freedman, P.C., files this Motion for Entry of an Order Modifying Claim No. 1881 to Clarify That The Subject Matter of That Portion of Claim No. 1881 Related to Lump Sum Payments for Banked Time for Participants in the Deferred Retirement Option Plan ("DROP") Has Been Resolved and Rendered Moot by the Terms as Written of the DPLSA Collective Bargaining Agreement As Adopted in the City's Plan of Adjustment (the "Motion"). In support of the Motion, the DPLSA states the following:

1.      The Motion is being filed in this Court out of an abundance of caution after the City declined to agree to a stipulated order to modify a portion of DPLSA Claim 1881 to reflect that it has been resolved and rendered moot by the terms as written of the DPLSA's collective bargaining agreement with the City (the "DPLSA CBA"). See **Exhibit 6A**, Claim 1881. Pursuant to LBR 9014-1(g), the DPLSA sought the City's concurrence in the relief sought by the Motion on April 29, 2015, October 7, 2015, October 27, 2015 and on October 30, 2015, and that concurrence has been denied.

2. Pursuant to the Confirmation Order, "[c]ontracts, leases and other agreements entered into after the Petition Date by the City, including . . . the collective bargaining agreements identified on Exhibit II.D.5 to the Plan, will be performed by the City in the ordinary course of its business. Accordingly, such contracts . . . will survive and remain unaffected by this Order." See Confirmation Order [Docket No. 8272, pp. 105-06]. The DPLSA collective bargaining agreement (the "DPLSA CBA") is among the collective bargaining agreements identified on Plan Exhibit II.D.5 [Docket No. 8045-10, p.30]. With respect to the collective bargaining agreements adopted by the Plan, the Plan further requires that "the enforcement, interpretation and resolution of disputes of the terms of the contracts shall proceed under applicable state law." See Plan, Art. VII, Sec. B [Docket No. 8045, p. 77] (emphasis added).

3. Although the Plan requires the enforcement of rights under the DPLSA CBA to proceed under applicable state law, the City previously filed a motion against the DPLS, which remains pending, and which seeks a finding that the DPLSA is violating the Plan and Confirmation Order by seeking to enforce its rights under the DPLSA CBA under procedures mandated by applicable state law. See City of Detroit's Motion for (I) Determination that the DPLSA Has Violated the Terms of the City of Detroit's Confirmed Plan of Adjustment and the Order Confirming it; and (II) Order (A) Enjoining Further Violations and (B) Requiring Dismissal of State Actions (the "City's Motion") [Docket No. 9523].

4. Through this Motion, DPLSA seeks entry of an order, in the form attached as **Exhibit 1**, which finds the relevant portion of Claim 1881 has been resolved by the terms as written of Section 17, ¶H of the DPLSA CBA and is, therefore, moot and further orders that any dispute regarding the parties' rights under Article 17, ¶H of the DPLSA CBA shall proceed under applicable state law as required by the Plan. See **Exhibit 6B,** Article 17, ¶H of DPLSA CBA, a complete copy of which is of record at Docket No. 9523-1.

5. DPLSA Claim 1881 is an omnibus claim that asserts claims related to pending DPLSA grievances. It was filed on February 20, 2014, pursuant to this Court's February 11, 2014 Order Approving Stipulation By and Between the City of Detroit and the Public Safety Unions Regarding Proofs of Claim to Be Filed by Public Safety Unions (the "Order"), [Docket No. 2678], which authorized the Public Safety Unions, including the DPLSA, to file certain omnibus claims on behalf of their members.

6. Among the claims asserted by Claim 1881 are DPLSA grievance numbers 10-032 and 12-051 (the "DROP Grievances," as further defined below). See **Exhibit 6A**, DPLSA Claim No. 1881 and **Exhibits 1C and 1D**, June 28, 2013 Opinion and Award (the "Award"), thereto.

7. The DROP Grievances sought to require the City to pay a DPLSA member's banked sick time when he or she entered the City's Deferred Retirement Option Plan ("DROP"). In opposing the DROP Grievances, the City maintained that all banked sick time should be paid when a DPLSA member actually retired. See Award, **Exhibit 1D to Exhibit 6A**.

8. The DROP Grievances sought to enforce the timing of the payment of certain DPLSA members' banked sick time. See Award, **Exhibit 1D to Exhibit 6A**. Throughout the pendency of the bankruptcy, under DPLSA members' applicable terms of employment, DPLSA members' right to banked sick time was never in dispute. See **Exhibit 6C**, Declaration of DPLSA President, Mark Young (the "Young Declaration.").

9. Pursuant to the Award, the DROP Grievances were resolved favorably to the DPLSA, including an award of interest to DPLSA members who had not been paid their banked sick time when they entered DROP. See **Exhibit 1D to Exhibit 6A**. The DPLSA sought to enforce the Award in state court, but that action was stayed when the City filed its chapter 9 petition.

10. Subsequently, pursuant to Article 17, ¶H of the DPLSA CBA the DROP Grievances were resolved to require payment of banked sick time at the time of actual retirement. See **Exhibit 6B**.

11. The Confirmation Order explicitly provides that, "[c]ontracts, leases and other agreements entered into after the Petition Date by the City, including . . . the collective bargaining agreements identified on Exhibit II.D.5 to the Plan, will be performed by the City in the ordinary course of its business. Accordingly, such contracts . . . will survive and remain unaffected by this Order." See Confirmation Order [Docket No. 8272, pp. 105-06]. The DPLSA CBA is among the collective bargaining agreements identified on Plan Exhibit II.D.5 [Docket No. 8045-10, p.30].

12. Article 17, ¶H, p. 19 of the DPLSA CBA directly addresses the subject matter of Claim 1881 – when the City in the City's favor and allows the City to pay banked sick time at the time a DPLSA member actually retires rather when he or she enters the DROP program on the following basis:

> H. <u>Lump Sum for Banked Time</u>. Whenever an Employee leaves employment with the Department, such Employee will be paid for all banked time, other than sick time, at the prevailing rate of pay in effect at the time of separation. *This includes, but is not limited to separation with a deferred vested pension or under a disability. DROP plan participants will only receive payout for banked time when they permanently retire, not when they enter the DROP plan. Payments will be paid within ninety (90) days if the amount is less than ten thousand dollars ($10,000.00), and if in excess of ten thousand dollars ($10,000.00), the amount will be made in semi-annual installments over a three (3) year period with installments due on February 1 and August 1 with no interest due. Late lump sum payments (greater than sixty (60) days will include interest at the Michigan Judgment Interest Rate as certified from time to time by the Michigan Department of Treasury.*

See **Exhibit 6B** DPLSA CBA, Art. 17, ¶ H, p 19.

13. Hence, pursuant to the DPLSA CBA, banked sick time must be paid only when a DPLSA member actually retires, not when he or she enters DROP as had been provided for by the Award. In addition, to help the City with its budgetary constraints, the DPLSA agreed that, under Article 17, ¶H, larger amounts of banked sick time could be paid by the City over time.

14. Throughout the pendency of these bankruptcy proceedings, every DPLSA member who has retired has, to date, received payment in full for his or her banked sick time. See **Exhibit 6C**, Young Declaration. However, there are a number of active DPLSA members who are DROP participants, and the City has now suggested that it may attempt to treat their right to banked sick time as a pre-petition claim, based upon the DPLSA's pursuit of the DROP Grievances. See **Exhibit C**, Young Declaration. In the case of at least one active DPLSA member, Sergeant Eric Gardner, the City has refused to restore his prematurely removed banked sick time. See **Exhibit C**, Young Declaration.

15. The Motion seeks an Order modifying the portion of Claim No. 1881 that addresses the DROP Grievances by declaring them moot as controlled by the terms as written of Article 17, ¶ H of the DPLSA CBA, clarifying that the remaining grievances asserted by Claim 1881 will remain pending, and confirming that any further disputes about any DPLSA member's rights under Article 17,¶ H of the DPLSA CBA shall be resolved under applicable state law and procedures set forth in the DPLSA CBA, as required by the Plan and Confirmation Order.

16. As noted above, DPLSA members' entitlement to lump sum payments for their banked sick time has never been at issue. The DROP Grievances addressed on the timing of those payments. See Award, **Exhibit 1D to Exhibit 6A**.

17. After DPLSA Claim 1881 was filed and during the negotiations of a successor collective bargaining agreement between the City and the DPLSA through the Court-ordered

bankruptcy mediation process, the City and the DPLSA resolved the issue of the timing of the lump sum payments as set forth in Article 17, ¶ H of the DPLSA CBA.

18. The DROP participants included under Claim No. 1881 must now be paid their accumulated lump sum payments when they retire in accordance with the terms of the successor CBA now incorporated into the City's Confirmed Plan of Adjustment. The City, however, has declined to stipulate that the DROP Grievances are moot, has suggested that the banked sick time could be treated as a pre-petition claim (i.e., paid pursuant to Class 14 treatment under the Plan) and has, in the case of one active DPLSA member, refused to restore banked sick time prematurely removed by the City. See Young Declaration, **Exhibit 6 D**.

19. On April 29, 2015, as part of an effort to resolve any remaining issues with the City, the DPLSA sent the City a proposed stipulated order modifying Claim No. 1881 as requested by this Motion. See **Exhibit 6D**, Email 1 of October 7, 2015 and Proposed Order. When the City did not respond, the proposed stipulation was resent, followed by a clarifying email, confirming the City's actual practices. See **Exhibit 6E**, Email 2 of October 7, 2015.

20. In spite of the DPLSA's repeated requests, the City has refused to agree that grievance numbers 10-032 and 12-051 are mooted by Article 17, ¶H of the DPLSA CBA.

**RELIEF REQUESTED**

In view of the above, the DPLSA requests that the Court enter an order in the form attached as **Exhibit 1** confirming that (i) the DROP Grievances are resolved by the written terms of Article 17, Paragraph H of the DPLSA CBA; (ii) as such, the DROP Grievances are moot and may be withdrawn without prejudice to any DPLSA member's right to receive a DROP Lump Sum Payment in accordance with the terms of the DPLSA CBA; and (iii) confirming that, pursuant to this Court's Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit [ Docket No. 8272] any further disputes involved in the application of Article 17, ¶H of

6

the DPLSA CBA shall be addressed in the ordinary course of the City's business under applicable state law and procedures provided by the DPLSA CBA. Because this matter involves the resolution of a contested issue between the parties, the DPLSA believes that entry of an order is appropriate to avoid any future misunderstanding regarding the disposition of the DROP Grievances. Accordingly, the DPLSA requests the Court enter the Order attached hereto as **Exhibit 1**.

Respectfully submitted,

ERMAN, TEICHER, ZUCKER & FREEDMAN, P.C.

By:    */s/ Barbara A. Patek*
      Barbara A. Patek (P34666)
      Counsel for the Detroit Police Lieutenants
       and Sergeants Association
      400 Galleria Officentre, Suite 444
      Southfield, MI 48034
      Telephone: (248) 827-4100
      Facsimile: (248) 827-4106
      E-mail: bpatek@ermanteicher.com

and

Peter P. Sudnick (P30768)
SUDNICKLAW, P.C.
Co-Counsel for the Detroit Police
 Lieutenants and Sergeants Association
2555 Crooks Road, Suite 150
Troy, Michigan 48084
Telephone: (248) 643-8533
E-Mail: psudnick@sudnicklaw.com

Dated: November 3, 2015

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

        Debtor.

_____/

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

## ORDER MODIFYING CLAIM NO. 1881 FILED BY THE DETROIT POLICE LIEUTENANTS AND SERGEANTS ASSOCIATION AND FOR RELATED RELIEF

This matter is before the Court on the Detroit Police Lieutenants and Sergeants Association's Motion for Entry of an Order Modifying Claim No. 1881 to Clarify that the Subject Matter of that Portion of Claim No. 1881 Related to Lump Sum Payments for Banked Time for Participants in the Deferred Retirement Option Plan ("DROP") Has been Resolved and Rendered Moot by the Terms as Written of the DPLSA Collective Bargaining Agreement as Adopted in the City's Plan of Adjustment (the "Motion") [Docket No. _____] and the Brief in Support of the Motion, proper notice of the Motion has been given, the Court is fully advised in the premises, and there is good cause to grant the relief requested by the Motion and the Court makes the following findings:

    1. The matters raised in grievance numbers 10-032 and 12-051 as set forth in Claim No. 1881 filed by the Detroit Police Lieutenants and Sergeants Association ("DPLSA") ("the DROP Grievances") are addressed and resolved by the terms as written of Article 17, ¶H of the collective bargaining agreement between the City and the DPLSA (DPLSA CBA"), which is among the collective bargaining agreements identified by Exhibit II.D.5 to the Plan [Docket No. 8045-10] and incorporated into the Plan by Article VII, Section B of the Plan;

1

2. The Court further finds that the City has been addressing the issues raised by the DROP Grievances in the ordinary course of its business and in accordance with the terms of the DPLSA CBA.

The Court finds good cause for entry of this Order and is otherwise fully advised in the premises.

NOW THEREFORE,

IT IS HEREBY ORDERED that this Order confirms that the matters addressed by the DROP Grievances as set forth in Claim No. 1881 are addressed and resolved by the terms as written of Article 17, ¶H of the DPLSA CBA.

IT IS FURTHER ORDERED that the matters raised by the DROP Grievances are moot. Claim No. 1881 is hereby modified to remove grievance numbers 10-032 and 12-051 from said claim. Other than this modification, the remainder of Claim No. 1881 remains as filed.

IT IS FURTHER ORDERED that any further disputes regarding the matters addressed by Article 17, ¶H of the DPLSA CBA shall be resolved by the parties in accordance with applicable state law and the procedures established by the DPLSA CBA.

# EXHIBIT 2

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

                              Bankruptcy Case No. 13-53846

City of Detroit, Michigan,         Honorable Thomas J. Tucker
                              Chapter 9

        Debtor.
_____/

**NOTICE OF OPPORTUNITY TO RESPOND OR REQUEST HEARING ON
DETROIT POLICE LIEUTENANTS AND SERGEANTS
ASSOCIATION'S ("DPLSA") MOTION FOR ENTRY
OF AN ORDER MODIFYING CLAIM NO. 1881 FILED
BY THE DPLSA ON OR AFTER FEBRUARY 20, 2014
AND FOR RELATED RELIEF**

Please take notice that Erman, Teicher, Zucker & Freedman, P.C. has filed a Motion for Entry of an Order Modifying Claim No. 1881 Filed by the DPLSA on or after February 20, 2014 and for Related Relief (the Motion").

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.**

If you do not want the Court to grant the relief sought in the Motion, or if you want the court to consider your view on the Motion, within 14 days you or your attorney must:

Electronically file with the court a written response or an answer explaining your position. This response or answer must comply with LBR 9014-1. You may find more information regarding electronic filing at the Court's website, www.mieb.uscourts.gov, or by visiting the office of the Clerk of the Court, United States Bankruptcy Court, 211 W. Fort Street, Ste. 2100, Detroit, Michigan 48226.

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above. The address for mailing is:

        Clerk of the Court
        United States Bankruptcy Court
        211 W. Fort St., Ste. 2100
        Detroit, Michigan 48226

1

You must also serve a copy on:

> Barbara A. Patek, Esq.
> Erman, Teicher, Zucker & Freedman, P.C.
> 400 Galleria Officentre, Ste. 444
> Southfield, MI 48034
> (248) 827-4100
> bpatek@ermanteicher.com

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Respectfully submitted,

ERMAN, TEICHER, ZUCKER & FREEDMAN, P.C.

By: */s/ Barbara A. Patek*
    Barbara A. Patek (P34666)
    Counsel for the Detroit Police Lieutenants
      and Sergeants Association
    400 Galleria Officentre, Suite 444
    Southfield, MI 48034
    Telephone: (248) 827-4100
    Facsimile: (248) 827-4106
    E-mail: bpatek@ermanteicher.com

DATED: November 3, 2015

2

13-53846-tjt    Doc 10247    Filed 11/03/15    Entered 11/03/15 11:05:20    Page 11 of 17

# EXHIBIT 3

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

        Debtor.
_____/

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

**BRIEF IN SUPPORT OF THE DETROIT POLICE
LIEUTENANTS AND SERGEANTS ASSOCIATION'S
("DPLSA") MOTION FOR ENTRY OF AN ORDER MODIFYING
CLAIM NO. 1881 AND FOR RELATED RELIEF**

INTRODUCTION

In 2010 and 2012, the DPLSA filed grievances under the terms of existing collective bargaining agreements protesting the City's failure to pay DROP participants, and DPLSA members, accumulated bank time in a lump sum at the time the member <u>entered</u> the DROP program.[1] The DPLSA grievances were eventually heard by Arbitrator E. R. Scales who issued the Award.[2] See **Exhibit 1D to Exhibit 6A**. The Award ruled in favor of the DPLSA that DROP participants were entitled to the payment of accumulated bank time at the point where they entered the DROP as opposed to when they actually retired from the City. When the City delayed the

---

[1] Since 2003, eligible members of the DPLSA have been allowed to participate in a Deferred Retirement Option Plan ("DROP"). Under the DROP, a member when eligible for regular retirement may elect to DROP and continue to work. A reduced pension benefit is placed in an account and invested. When the member permanently retires, he or she is entitled to the money accumulated into the DROP account and then the member's retirement allowance is restored to its full amount. After the DROP was included in the DPLSA collective bargaining agreement, an issue arose over whether eligible members were entitled to cash out their accumulated bank time, including sick time, at the time they elected to participate in the DROP plan rather than have to wait until the time they actually retired before they could do so. When the City refused to pay the banked time to DROP participants at the time they elected to DROP, the DPLSA initiated two (2) grievances, one in 2010 and the other in 2012.

[2] Unless otherwise indicated, capitalized terms are as defined by the Motion.

3

implementation of the Award, the DPLSA filed an action to enforce the Award. That action was stayed by the City's bankruptcy petition.

The DPLSA, with the other Detroit public safety unions, sought and obtained the right to file certain omnibus claims to preserve their rights with regard to open disputes with the City. See Docket No. 2678. Claim No. 1881 is such an omnibus claim. Through its assertion of the DROP Grievances, it sought to preserve the rights granted the DPLSA by the Award.

As part of the bankruptcy process, the DPLSA engaged in nearly 14 months of intensive negotiations through the court-ordered mediation process. After nearly 8 months of court-ordered mediation, on or about May 5, 2014, the DPLSA executed a term sheet with the City to which its leadership agreed to certain economic terms, agreed to support the Plan (including pension reductions) and agreed to continue negotiating the terms of what ultimately became the DPLSA's collective bargaining agreement with the City. The DPLSA CBA was signed by the DPLSA and ratified by its members on November 6, 2014. The collective bargaining agreement was eventually approved by the State of Michigan and incorporated in the Plan of Adjustment under Article VII, §B.

Article 17 ¶H of the DPLSA CBA resolves the issue of the banked sick time payments in the City's favor and renders the Award moot. It also requires the City to pay current, active DPLSA members who participate in DROP all of their banked sick time. The DPLSA CBA treats DROP grievance claimants in the same fashion as new participants to the DROP plan. Because the approved CBA resolves the underlying issue of the DROP related claims, Claim No. 1881 should be modified to remove the DROP Grievances.

Throughout the bankruptcy proceedings, upon information and belief, the City has paid the banked sick time of any DPLSA member who was among the DROP Grievance claimants under

Claim No. 1881 in the ordinary course of business when he or she retired. See **Exhibit 6C**, Young Declaration. Nevertheless, the City now suggests that it may treat the banked sick time itself as a pre-petition claim and, in at least one case, has refused to restore banked sick time that was prematurely removed. See **Exhibit 6C**, Young Declaration.

The current CBA was ratified by the DPLSA members on November 6, 2014. It was approved by the State and approved by this Court pursuant to the November 12, 2014 Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit [Docket No. 8272].

With respect to the claimants under the DROP Grievances included under Claim No. 1881 who remain active participants of the DROP, receipt of accumulated bank time amounts are now governed by Article 17, ¶H of the CBA. The modified CBA language overrides the Award. Current DROP participants, including those initially covered by Claim No. 1881, are now all subject equally to the lump sum for banked time provisions of the CBA. As such, it must be acknowledged that the claim represented by the DROP Grievances has been resolved by the DPLSA CBA as incorporated into the Plan.

## **RELIEF REQUESTED**

In view of the above, the DPLSA requests that the Court enter an order in the form attached as **Exhibit 1** confirming that (i) the DROP Grievances are resolved by the written terms of Article 17, Paragraph H of the DPLSA CBA; (ii) as such, the DROP Grievances are moot and may be withdrawn without prejudice to any DPLSA member's right to receive a DROP Lump Sum Payment in accordance with the terms of the DPLSA CBA; and (iii) confirming that, pursuant to this Court's Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit [ Docket No. 8272] any further disputes involved in the application of Article 17, ¶H of

5

the DPLSA CBA shall be addressed in the ordinary course of the City's business under applicable state law and procedures provided by the DPLSA CBA. Because this matter involves the resolution of a contested issue between the parties, the DPLSA believes that entry of an order is appropriate to avoid any future misunderstanding regarding the disposition of the DROP Grievances. Accordingly, the DPLSA requests the Court enter the Order attached hereto as **Exhibit 1**.

Respectfully submitted,

ERMAN, TEICHER, ZUCKER & FREEDMAN, P.C.

By: _/s/ Barbara A. Patek_
    Barbara A. Patek (P34666)
    Counsel for the Detroit Police Lieutenants
     and Sergeants Association
    400 Galleria Officentre, Suite 444
    Southfield, MI 48034
    Telephone: (248) 827-4100
    Facsimile: (248) 827-4106
    E-mail: bpatek@ermanteicher.com

and

    Peter P. Sudnick (P30768)
    SUDNICKLAW, P.C.
    Co-Counsel for the Detroit Police
     Lieutenants and Sergeants Association
    2555 Crooks Road, Suite 150
    Troy, Michigan 48084
    Telephone: (248) 643-8533
    E-Mail: psudnick@sudnicklaw.com

Dated: November 3, 2015

# **EXHIBIT 4**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

          Debtor.

_____/

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on November 3, 2015, the Motion for Entry of an Order Modifying Claim No. 1881 Filed by the DPLSA on or After February 20, 2014 and for Related Relief, Brief in Support, Notice of Opportunity to Respond or Request Hearing and Certificate of Service were electronically filed with the Clerk of the Court for the United States Bankruptcy Court, Eastern District of Michigan, Southern Division using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically and by serving a copy of the Motion on counsel for the City via regular mail as follows:

    Marc Nicholas Swanson, Esq.
    Miller Canfield Paddock and Stone
    150 W. Jefferson Avenue, Ste. 2500
    Detroit, MI  48226-4415

    Charles N. Raimi
    Deputy Corporation Counsel
    City of Detroit Law Department
    2 Woodward Avenue, Suite 500
    CAYMC
    Detroit, MI  48226-3437

ERMAN, TEICHER, ZUCKER & FREEDMAN, P.C.

By: */s/ Barbara A. Patek*
 Barbara A. Patek (P34666)
 Counsel for the Detroit Police Lieutenants
  and Sergeants Association
 400 Galleria Officentre, Suite 444
 Southfield, MI 48034
 Telephone: (248) 827-4100
 Facsimile: (248) 827-4106
 E-mail: bpatek@ermanteicher.com

DATED: November 3, 2015

2