# EXHIBIT 6C

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

Debtor.

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

_____/

## DECLARATION OF MARK YOUNG IN SUPPORT OF DPLSA MOTION RE: DROP GRIEVANCES SET FORTH IN CLAIM 1881

I, Mark Young, President of the Detroit Police Lieutenants and Sergeants Association (the "DPLSA") declare as follow, under penalty of perjury:

1. I am the current President of the DPLSA, the exclusive bargaining representative for the purpose of collective bargaining with respect to wages, hours and other terms and conditions of employment for employees of the City of Detroit Police Department in the various classifications of Lieutenant and Sergeant. This declaration is based on my personal knowledge, and, if called upon to do so, I could and would testify to the facts set forth herein.

2. I am responsible for the day to day administration of the DPLSA including but not necessarily limited to contract administration, collective bargaining, negotiations and the processing of grievances.

3. I authorized the filing of Claim 1881, which claim includes DPLSA grievance numbers 10-032 and 12-051 (the "DROP Grievances").

4. I participated in the negotiation of the DPLSA's current collective bargaining agreement with the City (the "DPLSA CBA") as incorporated into the City's confirmed Plan of Adjustment.

5. The DROP Grievances, which were resolved favorably to the DPLSA prior to the City's bankruptcy filing, addressed when a DPLSA member who entered DROP was entitled to be paid for his or her banked sick time. The entitlement to be paid for the banked sick time was never in dispute.

6. The DROP Grievances sought to require the City to pay a DPLSA member's banked sick time when he or she entered the City's Deferred Retirement Option Plan ("DROP"). Through DROP, a DPLSA member would cease earning pension credits and the member's pension payments would be put into an account until the member actually retired.

7. The City opposed the DROP Grievances and maintained that all banked sick time should be paid when a DPLSA member actually retired.

8. After the DROP Grievances were resolved favorably to the City, the DPLSA, but that action was stayed when the City filed its chapter 9 petition.

9. I participated in the negotiation of the DPLSA CBA, including Article 17, ¶H of the DPLSA CBA, which addresses and, to my understanding, fully resolves the DROP Grievances.

10. To the best of my knowledge, information and belief, throughout the pendency of these bankruptcy proceedings, every DPLSA member who has retired has, to date, received payment in full for his or her banked sick time.

11. However, I am aware that there are a number of active DPLSA members who are DROP participants, and the City has now suggested that it may attempt to treat their right to banked sick time as a pre-petition claim (with result being that the wages earned through the banked sick time would be paid over time, pennies on the dollar), based upon the DPLSA's pursuit of the DROP Grievances.

12. In addition, in the case of at least one active DPLSA member, Sergeant Eric Gardner, the City has refused to restore his prematurely removed banked sick time, although the need for its restoration has been repeatedly brought to the City's attention.

13. After efforts to resolve this issue amicably with the City failed, I authorized DPLSA's bankruptcy counsel to bring this motion to clarify the issue.

Dated: October 30, 2015

Sergeant Mark Young
President, DPLSA