UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CITY OF DETROIT'S OBJECTION TO DETROIT POLICE LIEUTENANTS AND SERGEANTS ASSOCIATION'S ("DPLSA") MOTION FOR ENTRY OF AN ORDER MODIFYING CLAIM NO. 1881 FILED BY THE DPLSA TO CLARIFY THAT THE SUBJECT MATTER OF THAT PORTION OF CLAIM NO. 1881 RELATED TO LUMP SUM PAYMENTS FOR BANKED TIME FOR PARTICIPANTS IN THE DEFERRED RETIREMENT OPTION PROGRAM ("DROP") HAS BEEN RESOLVED AND RENDERED MOOT BY TERMS AS WRITTEN OF THE DPLSA COLLECTIVE BARGAINING AGREEMENT AS ADOPTED IN THE CITY'S PLAN OF ADJUSTMENT**

The City of Detroit, Michigan ("City"), by its undersigned counsel, files this Objection to the Detroit Police Lieutenants and Sergeants Association's ("DPLSA") Motion for Entry of an Order Modifying Claim No. 1881 Filed by the DPLSA to Clarify that the Subject Matter of that Portion of Claim No. 1881 Related to Lump Sum Payments for Banked Time for Participants in the Deferred Retirement Option Program ("DROP") Has Been Resolved and Rendered Moot by Terms as Written of the DPLSA Collective Bargaining Agreement as Adopted in the City's Plan of Adjustment [Doc. No. 10247] ("DROP Motion"). In support of this Objection, the City respectfully states as follows:

The DROP Motion requests that this Court order the City to elevate DPLSA's general unsecured claim ("DROP Bankruptcy Claim") above all other unsecured claims and treat it under a subsequently executed collective bargaining agreement. DPLSA already acknowledged that the DROP Bankruptcy Claim is a general unsecured claim, however, when it filed it as a general unsecured claim. The subsequently executed collective bargaining agreement did not

1

address the DROP Bankruptcy Claim much less mandate that it be treated outside of the City's confirmed Plan. Consequently, the DROP Bankruptcy Claim should be treated under the Plan as a Class 14 Other Unsecured Claim.

DPLSA also takes inconsistent positions on this Court's jurisdiction to hear the DROP Motion and the City's pending retiree spouse motion.[1] DPLSA cites to the City's pending retiree spouse motion to demonstrate that the Court has jurisdiction over the DROP Motion even though it has consistently maintained that the Court lacks jurisdiction over the retiree spouse motion. To avoid inconsistent results, the City respectfully requests that the DROP Motion be decided in conjunction with the City's retiree spouse motion.

**1. Background of DPLSA's DROP motion.**

Prior to the City's bankruptcy filing, DPLSA pursued and won an arbitration award compelling the City to immediately pay out DROP monies to certain DPLSA members. DROP Motion, exhibit 6A, and see attachment 1D thereto, June 28, 2013 opinion and award of Arbitrator E.R. Scales. After the City's bankruptcy filing, DPLSA filed the DROP Bankruptcy Claim. DROP Motion, exhibit 6A. As DPLSA acknowledged through the filing of the DROP Bankruptcy Claim, the DROP monies allegedly owed to certain DPLSA members are general unsecured claims. Under both the City's confirmed Plan of Adjustment ("Plan"), and black letter bankruptcy law, the DROP Bankruptcy Claim is to be treated as a class 14, unsecured pre-petition claim.[2] Plan, Art. I.A.60 & 262, pages 6, 21; *In re Lipa*, 433 B.R. 668, 669-70 (Bankr.

---

[1] City of Detroit's Motion for (I) Determination that the Detroit Police Lieutenants and Sergeants Association has Violated the Terms of the City of Detroit's Confirmed Plan of Adjustment and the Order Confirming It; and (II) Order (A) Enjoining Further Violations and (B) Requiring Dismissal of State Actions. [Doc. No. 9523].

[2] The collective bargaining agreement is DPLSA's sole (incorrect) argument that the DROP Bankruptcy Claim is not a pre-petition general unsecured claim.

2

E.D. Mich. 2010) (*citing Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 558 (1990)).

The DROP Motion asks this Court to elevate the DROP Bankruptcy Claim above all other unsecured claims. DPLSA's request raises two issues.

**A. Issue 1 - jurisdiction.**

DPLSA argues that this Court has jurisdiction over the DROP Motion under the following theory:

> Although the Plan requires the enforcement of rights under the DPLSA CBA to proceed under applicable state law, the City previously filed a motion against the DPLS [sic], which remains pending, and which seeks a finding that the DPLSA is violating the Plan and Confirmation Order by seeking to enforce its rights under the DPLSA CBA under procedures mandated by applicable state law.

DROP Motion ¶ 3, page 2. DPLSA does not elsewhere address jurisdiction in the DROP Motion. Evidently, therefore, DPLSA now invokes the jurisdiction of the Court on the grounds that the City invoked the Court's jurisdiction in its pending retiree spouse motion. DPLSA does not mention that it opposed the City's invocation of the Court's jurisdiction in the retiree spouse dispute. *See* DPLSA's Response in Opposition to City of Detroit's Motion for (I) Determination that the Detroit Police Lieutenants and Sergeants Association has Violated the Terms of the City of Detroit's Confirmed Plan of Adjustment and the Order Confirming It; and (II) Order (A) Enjoining Further Violations and (B) Requiring Dismissal of State Actions [Doc. No. 9656] ("<u>DPLSA Response</u>") at page 7 of 17.

The City's retiree spouse motion seeks a determination that the Plan and the City's medical plan documents bar "retiree spouses" of active DPLSA members from coverage under the City medical plan. DPLSA, in opposing that motion, cited the following Plan jurisdictional provision:

3

> …the Bankruptcy Court will retain exclusive jurisdiction…to the fullest extent permitted by law….to: … Confirm the maturity date and the terms as written of the collective bargaining agreements on Exhibit II.D.5 of the Plan, which agreements are incorporated as part of the Plan (it being understood that the enforcement, interpretation and resolution of disputes of the terms of the contracts shall proceed under applicable state law).

DPLSA Response at page 7 of 17; Plan, Art. VII, Sec. B, pages 69-70. DPLSA argued that this provision deprives this Court of jurisdiction to hear the City's retiree spouse motion and, rather, relegates the dispute to a state forum. *Id.* Even though DPLSA continues to oppose the City's retiree spouse motion on jurisdictional grounds, it now cites to it as support for this Court's jurisdiction over the DROP Motion. *Id.* The situations are materially different, however.

This Court has jurisdiction to hear the City's retiree spouse motion so as to protect and implement the Plan. Article II.B.3.s. of the Plan unambiguously provides that all City retirees, in consideration for the City's funding of the VEBAs, released the City of any further health care obligations. Plan, pages 42-44. In direct violation of this section of the Plan, DPLSA initiated state court actions in which city retirees (retiree spouses) claimed entitlement to City health care coverage. Brief in Support of City retiree spouse motion at 6. This Court has exclusive jurisdiction over the City's retiree spouse motion because DPLSA's state court actions are a direct attack on the treatment of claims and the implementation of the Plan. Brief in Support of City retiree spouse motion, pages 9-11 (citing Plan, Art. VII, pages 69-70).

DPLSA's argument that retiree spouses are entitled to City health coverage under the DPLSA – City CBA does not deprive this Court of jurisdiction over the City retiree spouse motion. The CBA provisions cited by DPLSA in the DPLSA Response are silent on the retiree spouse issue – so there is nothing in the CBA for the Court to "interpet" or "enforce." Rather, the CBA itself incorporates by reference the City's Medical Plan document. City of Detroit's Reply Brief in Support of its retiree spouse motion at 1-2. [Doc. No. 9855]. That document, in

turn, is fully consistent with, and implements, the Plan, by expressly prohibiting City coverage for retiree spouses. *Id.* Nothing in the CBA divests this Court of jurisdiction to address the bankruptcy issues raised by the retiree spouse dispute.

Finally, the City properly invoked this Court's jurisdiction in the retiree spouse dispute for that same reason that Judge Rhodes exercised jurisdiction over an Open Meetings Act dispute. City of Detroit's Reply Brief in Support of its retiree spouse motion at 4-5. [Doc. No. 9855]. Core bankruptcy issues, which materially affect the integrity and implementation of the Plan, should be decided by the Bankruptcy Court which is familiar with those issues. For all of those reasons, this Court clearly has jurisdiction over the retiree spouse dispute.

In contrast, this DROP dispute does not involve the implementation or enforcement of the Plan. Rather, DPLSA contends that the CBA "moots" a portion of the DROP Bankruptcy Claim. Consequently, the grounds upon which the City invoked the Court's jurisdiction in the retiree spouse dispute are not present here.

Nevertheless, the City would not object to this Court taking jurisdiction over the DROP Motion. The City's primary concern is that this Court, in deciding these threshold jurisdictional issues, be fully informed as to DPLSA's inconsistent positions. Accordingly, the City asks that the DROP Motion be decided in conjunction with the City's retiree spouse motion.

### A. Issue 2 - merits.

As stated above and as DPLSA acknowledged when it filed the DROP Bankruptcy Claim, under black letter bankruptcy law and the Plan, the DROP Bankruptcy Claim is a class 14 unsecured claim. DPLSA, however, argues that section 17(H) of the CBA "moots" the DROP Bankruptcy Claim.

The plain language of section 17(H) rejects DPLSA's argument. Section 17(H) does not address the DROP Bankruptcy Claim. Likewise, there is no language in section 17(H) to support the conclusion that it moots the pre-petition arbitration award and the DROP Bankruptcy Claim filed with respect to that award, all of which occurred prior to the CBA taking effect.

DPLSA supports its motion with the declaration of Sergeant Mark Young, DPLSA's President. DPLSA motion, exhibit 6C. The declaration states in relevant part (section 9): "I participated in the negotiation of the DPLSA CBA, including Article 17, ¶H of the DPLSA CBA, which addresses and, to my understanding, fully resolves the DROP Grievances." That assertion states mere conclusions and, more importantly, cannot alter the plain language of the CBA.[3]

## CONCLUSION AND RELIEF

For the reasons stated, the City asks that the jurisdictional issue raised by the DROP Motion be decided in conjunction with DPLSA's objection to this Court exercising jurisdiction over the City's retiree spouse motion. If this Court reaches the merits of the DROP Motion, the City asks the Court to rule that DROP Bankruptcy Claim is to be treated as class 14 general unsecured claims under the Plan.

---

[3] Young's current "understanding" is also inconsistent with Young's Memorandum to Kevyn Orr, dated December 1, 2014 (less than one month after the CBA was executed). *See* Exhibit 1. In that Memorandum, Young refers to DPLSA members subject to the arbitration award as a "separate class of employees" from those under the CBA and provides three different options for the treatment of their DROP claims. Memorandum at 2. The Memorandum confirms that DROP issues for those members who participated in the arbitration was not addressed, let alone resolved, in the CBA.

6

13-53846-tjt    Doc 10265    Filed 11/17/15    Entered 11/17/15 16:34:04    Page 6 of 10

Dated: November 17, 2015 Respectfully submitted,

By: /s/ Marc N. Swanson
 Jonathan S. Green (P33140)
 Marc N. Swanson (P71149)
 MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
 150 West Jefferson, Suite 2500
 Detroit, Michigan 48226
 Telephone: (313) 496-7591
 Facsimile: (313) 496-8451
 green@millercanfield.com
 swansonm@millercanfield.com

 Charles N. Raimi (P29746)
 Deputy Corporation Counsel
 City of Detroit Law Department
 2 Woodward Avenue, Suite 500
 Coleman A. Young Municipal Center
 Detroit, Michigan 48226
 Telephone: (313) 237-5037
 Facsimile: (313) 224-5505
 raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

# Memorandum

**TO:** Kevyn Orr, Emergency Manager
City of Detroit

**FROM:** Sgt. Mark Young, President
Detroit Police Lieutenants and Sergeants Association

**RE:** Lump Sum Payout Claim Under Chapter 9, Claim 55,
of the City of Detroit Bankruptcy Case

**DATE:** December 1, 2014

    I have been advised by counsel to discuss with you the status of the lump sum payout claim filed by the DPLSA. This claim is currently pending in the Chapter 9 proceeding under Claim No. 55. The claim involves a separate class of members – now only 21 – who received relief under an arbitration decision issued by Arbitrator E. R. Scales on June 28, 2013 where he directed the City to pay to these members unpaid lump sum amounts due them. A complaint to enforce the arbitration award filed with the Wayne County Circuit Court, Case No. 13-009468-CZ, on July 19, 2013 was subsequently stayed by the Bankruptcy Court.

    Over the course of our discussions involving the successor collective bargaining agreement and pending grievances, you had indicated that you would have the City calculate the amounts owed and then determine if the matter could be resolved between the parties. The DPLSA had informed you that similarly situated DPOA and Fire Fighter members had been paid their lump sums prior to the filing of the bankruptcy petition by the City. In this regard, Wayne County Circuit Judge John H. Gillis had ordered the City to calculate and pay lump sum payouts due police officers by order dated October 25, 2012. DPLSA members, however, were hurt by the timing of the bankruptcy and have not received payment. In one instance involving member Sgt. Kenneth Gardner, the City calculated his lump sum amount and deducted the sick time from his bank as of the day he dropped. Unfortunately, he was never paid his lump sums and worse yet the City deducted his sick time as though it had paid him but then never replaced the sick time. Later, he suffered a heart attack and was unable to use his sick time because the bank was empty during this difficult period. As a result, he was without pay. He has since returned to work but the City has yet to either pay him his lump sums or credit his sick bank. This is unacceptable and works a particular

hardship on Sgt. Gardner that can, and should be, addressed by the Bankruptcy Court if relief is unavailable elsewhere.

Our labor counsel, Peter Sudnick, recently meet with the Erman Tiecher bankruptcy firm to discuss this matter. Because it remains in the status of a claim, it needs to be addressed and resolved. In essence, we have two classes of members, *i.e.* those 21 remaining members entitled to relief under the arbitration decision and those members who drop going forward under the successor collective bargaining agreement. Under the terms of the successor agreement, members who drop will not receive their lump sums until they sever employment and permanently retire at the end of the drop period. According to the new contract, banked amounts over $10,000 are to be paid in semi-annual installments over a period of three (3) years. These members, although paid in installments, will receive 100% of what is owed under the terms of the collective bargaining agreement.

With respect to the separate class of employees who were granted relief under the Scales decision, the options appear to include the following:

1. pay the amounts due immediately, or within an agreed to period such as 30, 60 or 90 days;

2. stipulate that this class of employees will be treated as future dropped participants and receive 100% of the amounts owed when they permanently retire in accordance with the terms of the new collective bargaining agreement;

3. agree to a compromise resolution where the members impacted by the arbitration award will receive 100% of the amounts owed but in installments during the drop period but before they permanently retire. In other words, these members could receive partial payment now and the remainder over the time that they are participating in the drop.

The DPLSA is concerned that this matter get resolved quickly to avoid any chance, although unlikely, that their lump sums could be considerably reduced as part of the bankruptcy claim process.

The DPLSA understands that you have attempted to look into this issue to determine whether it could be resolved by payment to the affected members. It does appreciate your efforts on behalf of these members. At this point, the DPLSA needs to be advised whether this is a matter you can resolve before you leave the office of Emergency Manager. If, however, we need to involve the bankruptcy firm of Erman Tiecher, we need to know that as well. The DPLSA understands that if Erman Tiecher becomes involved, it is likely that they will have to contact Heather Lennox to determine how best to resolve the claim. The DPLSA certainly does not want to scuttle or interfere with any of your efforts, but we have been told that we need to resolve this claim within the next several weeks. At worst, the 21 members should not be treated any differently from future drop participants who will receive 100% of their lump sum amounts when

they permanently retire. In our view, however, the claim of members covered by the arbitration award should receive better treatment given the fact that similarly situated DPOA and Fire Fighter members as a consequence of better timing received their lump sums before they retired.

    Thank you for your consideration of this matter. The DPLSA looks forward to your prompt response so that we can determine how to best protect the interests of our members. Please contact me concerning the above at your earliest convenience.