| In re: | Bankruptcy Case No. 13-53846 |
|---|---|
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CITY OF DETROIT'S REPLY TO THE BRIEF ON BEHALF OF THE SENIOR ACCOUNTANTS, ANALYSTS AND APPRAISERS' ASSOCIATION (SAAA) IN OPPOSITION TO THE CITY OF DETROIT'S APPLICATION TO REQUIRE THE WITHDRAWAL OF A GRIEVANCE IT FILED FOR ITS MEMBER**

The City of Detroit ("City"), by its undersigned counsel, files this Reply to the Brief on Behalf of the Senior Accountants, Analysts and Appraisers' Association (SAAA) in Opposition to the City of Detroit's Application to Require the Withdrawal of a Grievance it Filed for Its Member [Doc. No. 10217] ("Opposition"). In support of this Reply, the City respectfully states as follows:

**I.    The Claims Asserted in the Grievance Were Released by Cook When He Voted in Favor of the City's Plan**

Cook released all of the claims asserted in the Grievance when he voted to accept the Eighth Amended Plan of the Adjustment of Debts of the City of Detroit (October 22, 2014) [Doc. No. 8045] ("Plan"). Both arguments raised by the SAAA in response fail.

First, the SAAA asserts that "…the SAAA's grievance is just that: a grievance filed by and on behalf of the union on behalf of one of its members. Cook could not release the claim even if he wanted to, which he does not." Opposition at 7. The SAAA cites nothing in support of this argument. The grievance is signed by Cook, filed on behalf of Cook, premised entirely on Cook's alleged claims against the City and requests that the City "[r]estore Grievant pay and make whole." Motion, Exhibit 6K [Doc. No. 10183]. Pursuant to the release provision in the Plan, Cook released, waived and discharged "all Liabilities in any way relating to the City."

Plan, p. 52 The term "Liabilities" means "any and all claims, obligations, suits, judgments, demands, rights, derivative claims, causes of action and liabilities….that are based in whole or in part on any act, event, injury, omission, transaction, agreement, employment, exposure or other event taking place on or prior to the Effective Date." Plan, p. 19. The claims alleged in the grievance and the relief requested both fall within the scope of the release provision and the definition of "Liabilities." As Cook released the City from all of the claims upon which the grievance is premised and waived any rights he may have against the City related to his former employment at the City, the grievance must be dismissed with prejudice.

Second, the SAAA alleges that Cook did not release the City because there is a provision in the Plan which generally provides that the City assumed certain Executory Contracts. Opposition at 7-8. The SAAA asserts that the effect of this provision and the Plan provision regarding ordinary course claims is that "claims for violations of such contracts are not released and may be prosecuted without filing a claim." *Id.* The Court does not need to look any further than the Opposition to see why this argument fails: "The CET remained in effect after the filing of the Petition in this case and ended only when the Emergency Manager signed a new contract with the SAAA in July 2014.". Opposition at 2. Consequently, the CET was not assumed because it was not in effect when the Plan was confirmed. *See In re III Enters., Inc. V*, 163 B.R. 453, 459 (Bankr. E.D. Pa. 1994); *Nemko Inc. v. Motorola, Inc. (In re Nemko, Inc.)*, 163 B.R. 927, 935 (Bankr. E.D.N.Y. 1994) ("Generally, in order for section 365 to be applicable, the Code mandates the existence of an executory contract on the day the debtor files its petition for relief.").

## II. Cook's Claim Arose Prior to the City's Bankruptcy Filing

The SAAA also spends several pages disputing that Cook's claim arose prior to the City's bankruptcy filing but never once addresses the test used to determine when a claim arises

25550387.2\022765-00213
13-53846-tjt    Doc 10285    Filed 11/25/15    Entered 11/25/15 11:06:20    Page 2 of 5

for bankruptcy purposes. Instead, the SAAA's arguments focus on when the claim accrued under non-bankruptcy law. This argument -- the "accrual approach" -- has been universally rejected by Bankruptcy Courts. *See In re Grossman's Inc.*, 607 F.3d 114, 117-121 (3d Cir. 2010) (overruling *Avellino & Bienes v. M. Frenville Co. (Matter of M. Frenville Co.),* 744 F.2d 332 (3d Cir.1984), which employed the accrual approach). SAAA's cites its lone case -- *Transworld* – to support an argument under the accrual approach. In *Transworld*, the appellant urged the Eighth Circuit to apply the accrual approach under *Frenville*. *McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739, 740-41 (8th Cir. 1996). The court while declining to adopt the accrual approach, stated that even if it were to follow *Frenville*, the appellant would still not prevail because his claim had accrued under non-bankruptcy law as "the occurrence in unlawful termination suits is the termination itself." *Id.*; Opposition at 5. Consequently, *Transworld* is not applicable and the SAAA's argument that Cook's claim accrued under non-bankruptcy after the City's bankruptcy filing must be rejected.

The SAAA's assertion that Cook's prior discipline is not relevant to when his claim arose also fails. Under the "fair contemplation" test a court "looks at whether there was a pre-petition relationship between the debtor and the creditor, such as contract, exposure, impact or privity, such that a possible claim is within the fair contemplation of the creditor at the time the petition is filed." *In re Senczyszyn*, 426 B.R. 250, 257 (Bankr. E.D. Mich. 2010) *aff'd on other grounds*, 444 B.R. 750 (E.D. Mich. 2011) (internal citations and quotations omitted). Cook's prior discipline is thus highly relevant to the determination of when his claim arose. Cook had been provided with a written policy which stated that the recommended penalty for a third Group II offense or a single Group IV offense is discharge. Cook received written notice of his first Group II offense. He also received written notice of his second Group II offense. For a third

- 3 -

Group II offense, the Rules of Conduct state in bold letters "**Third Offense – Discharge.**" Cook also knew that if he committed a Group IV Offense, the Rules of Conduct provide a recommendation of "**First Offense – Discharge.**" It was thus within Cook's fair contemplation that he would be discharged if he committed a Group IV offense or another Group II offense by being away from his desk for extended periods of time when he was supposed to be answering phone calls.

The SAAA's final argument must also be rejected. The SAAA quotes from this Court's Order Confirming that the Automatic Stay Does Not Apply to Disciplinary Proceedings ("Stay Order") stating that it "may apply to pre-petition claims." [Doc. No. 8256]; Opposition at 6. To begin with, the quoted provision merely states that the City does not violate the automatic stay when it prosecutes disciplinary claims. As the motion which led to the order makes clear, the City requested the Stay Order because at least one arbitrator expressed concern that an arbitration initiated by the City violated the automatic stay. Motion of the City of Detroit, Pursuant to Section 105(a) of the Bankruptcy Code, for an Order Confirming that the Automatic Stay Does Not Apply to Disciplinary Proceedings Initiated by the City Against City Officers and Employees ¶ 5. [Doc. No. 8060]. Thus, the Stay Order is irrelevant to the question of when Cook's claim arose.

### III. Conclusion

The City respectfully requests that the Court enter the Order attached to its Motion and require that SAAA and Cook to dismiss, or cause to be dismissed, the Grievance with prejudice.

- 4 -
25550387.2\022765-00213
13-53846-tjt    Doc 10285    Filed 11/25/15    Entered 11/25/15 11:06:20    Page 4 of 5

November 25, 2015                  Respectfully submitted,

                                       By: /s/ Marc N. Swanson
                                             Jonathan S. Green (P33140)
                                             Marc N. Swanson (P71149)
                                             MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
                                             150 West Jefferson, Suite 2500
                                             Detroit, Michigan 48226
                                             Telephone: (313) 496-7591
                                             Facsimile: (313) 496-8451
                                             green@millercanfield.com
                                             swansonm@millercanfield.com

                                       ATTORNEYS FOR THE CITY OF DETROIT