UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,        .        Docket No. 13-53846
        MICHIGAN,               .
                               .        Detroit, Michigan
                               .        November 23, 2015
                Debtor.         .        11:04 a.m.
. . . . . . . . . . . . . . . .

HEARING RE. STATUS CONFERENCE REGARDING PREFERENCE
ACTIONS TO BE FILED
BEFORE THE HONORABLE THOMAS J. TUCKER
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the City of      Miller, Canfield, Paddock & Stone
Detroit:             By:  MARC SWANSON
                     150 West Jefferson
                     Detroit, MI  48226
                     (313) 496-7591

                     City of Detroit
                     By:  CHARLES RAIMI
                     2 Woodward Avenue
                     CAYMC, Suite 500
                     Detroit, MI  48226
                     (313) 237-5037

                     Togut, Segal & Segal, LLP
                     By:  ALBERT TOGUT
                          NEIL BERGER
                     One Penn Plaza
                     New York, NY  10119
                     (212) 594-5000

Court Recorder:      Jamie Laskaska
                     United States Bankruptcy Court
                     211 West Fort Street
                     21st Floor
                     Detroit, MI  48226-3211
                     (313) 234-0068

Transcribed By:      Lois Garrett
                     1290 West Barnes Road
                     Leslie, MI  49251
                     (517) 676-5092

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1          THE CLERK:  All rise.  This court is now in session.

2   The Honorable Thomas J. Tucker is presiding.  You may be

3   seated.  The court calls the case of the City of Detroit,

4   Michigan, Case Number 13-53846.

5          MR. BERGER:  Good morning, Judge.

6          THE COURT:  Good morning, everyone.

7          MR. BERGER:  Good morning, Judge.  My name is Neil

8   Berger.  I'm a partner of Togut, Segal & Segal.  We are the

9   attorneys for the city.  With me here is my senior partner,

10  Albert Togut, and Marc Swanson from Miller Canfield is here

11  as well.  I'm sorry.

12         MR. RAIMI:  Charles Raimi, your Honor.  I'm the

13  deputy corporation counsel for the City of Detroit.

14         THE COURT:  All right.  Good morning to everyone.

15         MR. SWANSON:  Good morning, your Honor.

16         THE COURT:  Good morning.  This is the status

17  conference, as you know, regarding these preference cases to

18  be filed.  I did review the status report and the attached

19  proposed order that was filed on -- I guess last Thursday by

20  the city, so who's going to speak for the city?

21         MR. SWANSON:  Mr. Berger will speak for the city,

22  and also Mr. Togut will speak for the city, your Honor.

23         THE COURT:  Okay.

24         MR. BERGER:  Thank you, Judge.  Again, Neil Berger.

25  for the city.  We did receive your scheduling order after we

1  advised chambers that we intended to file on behalf of the

2  city.  Originally we said approximately 200.  You saw from

3  our report it's now down to 185 parties.  Your Honor, if I

4  may -- I know you've read our report.  If I could please take

5  a moment or two to give you a little bit of a background,

6  that'll bring us to present day and hopefully better explain

7  how we intend to move forward with these preference actions.

8           THE COURT:  By the way, I'm going to just mention

9  before --

10           MR. BERGER:  Yeah.

11           THE COURT:  -- you go further that I've also

12  reviewed the form of sort of blanket order that was entered

13  in the Collins & Aikman case by Judge Rhodes.  There were

14  three tracks, you'll recall.

15           MR. BERGER:  Um-hmm.

16           THE COURT:  And your firm was involved in --

17           MR. BERGER:  Yes.

18           THE COURT:  -- that, so you're very familiar with

19  that --

20           MR. BERGER:  Yes.

21           THE COURT:  -- form of order, and I may want to

22  steal some parts of that now that I've thought about it some

23  more, but we'll talk about that.  You're familiar with that

24  order, though?

25           MR. BERGER:  I am.  Mr. Togut and I have been

1   admitted in this court since 2007.  Our firm did all the
2   Collins & Aikman cases.  We think this case is substantially
3   different from that, and I'll get to that in just a moment.
4            THE COURT:  Sure.  Okay.  Yeah.
5            MR. BERGER:  Your Honor, we were brought on some
6   time ago by the city to handle all the aspects concerning the
7   analysis and recovery of the potential preferences,
8   preferential transfers in favor of the city.  When we first
9   were involved, the city was understandably very occupied with
10  getting to a disclosure statement, a plan, and devoting the
11  resources they needed to devote there.  To say the least, the
12  city's resources and personnel were stretched in getting
13  ready for plan confirmation or mediations, contested matters,
14  meetings.  Ultimately there was a plan that reflected a
15  consensual resolution with most of the major constituent
16  stakeholders in that case.  During that time, however, my
17  firm was on the sidelines.  We very much wanted to do the
18  diligence that we ordinarily do in a preference project, and
19  my partner and I will speak about that in a moment, but the
20  resources simply weren't available to us.  When we first
21  started into the process, we got raw data, ordinarily how the
22  preference projects start, and we saw approximately 3,000
23  parties having received 90-day payments totaling
24  approximately $170 million.  We didn't sit by idly, though,
25  your Honor.  We used our time and did the best we could with

1   what we had and the ability to contact some of the people at

2   the city who were always willing to help.  The question was

3   time and resources.

4        We filed -- the city filed, rather, its first status

5   report -- and I was here in the courtroom when you had your

6   first status conference back in February, and you saw our

7   section of the status report concerning preferences, and we

8   worked with the data and the city such that that number, 300,

9   and $170 million by that time -- we were able to reduce it

10  down to about 200 people and about a hundred and some million

11  dollars.

12       We would have preferred, your Honor, to have been

13  during the last number of months out speaking to transferees

14  to try to resolve preference transfer issues before

15  commencing the adversary proceedings, but with the

16  decentralized nature of the city's recordkeeping, any number

17  of different departments that we had to meet with and conduct

18  our diligence, we simply weren't in a position to go out and

19  have those negotiations.  We contacted chambers because they

20  have a statute of limitations coming up on December 5th, and

21  the city does need to preserve the ability to seek recovery

22  of these preferences.  That was expressly contemplated and

23  done through the plan confirmation process.  But, again, we

24  used our time wisely.  The number now of potential preference

25  actions is 185 down from originally some 300, and the gross

1  transfers is in the range of about $55 million.

2       We have not yet interacted with the transferees,

3  although anyone who is paying attention to the docket did see

4  the plan exhibit identifying the potential preference

5  targets.

6       THE COURT:  Oh, do you mean that this reduction in

7  the number -- the numbers of potential preference targets and

8  total gross --

9       MR. BERGER:  Yes.

10       THE COURT:  -- preference dollars that's been

11  getting reduced over the months --

12       MR. BERGER:  Yeah.

13       THE COURT:  -- is not because of settlements?  It's

14  because of your analysis?

15       MR. BERGER:  It's because of our analysis.  And if I

16  may pause for just a moment, your Honor, your Honor correctly

17  observed we handled all of the Collins & Aikman adversary

18  proceedings in this court.  That was approximately 1,000, all

19  resolved without any trial except one, and that defendant

20  forced the trial.  Mr. Togut and I have been practicing

21  together for some 20-odd years.  We've done thousands upon

22  thousands of preference actions in numerous cases throughout

23  the country.  We have never had a trial other than the one

24  that was forced in the Collins & Aikman case.  Throughout all

25  of our preference projects, our initial goal and the way that

1    the city has asked us to refer to these preferences because

2    of relationships with transferees is to initially go out to

3    the transferees, have a conversation, have a negotiation, an

4    informal exchange of documents and information, and to reach

5    settlements.  That's how we've done it historically.  I'm

6    currently involved in a preference project in Richmond.  Six

7    months ago we filed about 300 actions.  Today, six months

8    later, at least 80 percent of those actions have been

9    settled, not a single trial, two mediations that we sought.

10        So, your Honor, we've laid out in our report a

11    little bit of the history.  I hope that I've given you a

12    little more color on where we've come from.  We do need to

13    preserve these litigations.  It's different than in some

14    other cases.  It is similar I will tell you just briefly in

15    the case where we were co-counsel to the debtors in Delphi

16    Automotive, a Michigan based company, filed in a different

17    court.  There we filed the complaints simply to toll the

18    statute of limitations, same process, plan confirmation

19    coming up, not a sufficient amount of time to engage with the

20    defendants but needing to toll those actions.  In that case

21    we asked and the court authorizes us to file those complaints

22    under seal.  We're not asking for that here, your Honor.

23    We'll simply file the complaints and then promptly go out and

24    contact the defendants.

25        THE COURT:  That was in a preconfirmation stage?

1          MR. BERGER:  In _Delphi Automotive_?

2          THE COURT:  Yeah.

3          MR. BERGER:  It was.  You may or may not recall, but

4    there was a plan in the wings.  The two-year statute of

5    limitations was going to expire before solicitation could

6    occur.  There was an important customer relationship, similar

7    here.  In the automotive industry, as you know, they have

8    just in time inventory.  There was a concern about filing

9    public complaints.  We filed them under seal, unsealed later.

10   My office actually handled a number of those preference

11   actions, again, all settled, no trials, no mediations.  Here

12   the city would very much like to have an informal process at

13   least initially to try to negotiate settlements, and for that

14   reason, your Honor, we did respectfully review the proposed

15   order you sent to us.  It did remind us of what we had in

16   _Collins & Aikman_, and you'll hear from my partner in a moment

17   we did settle all of the _Collins & Aikman_ matters.  Mediation

18   did turn out, though, your Honor, in a number of instances --

19   in a great number of instances to be necessary because of the

20   timeline, not so much because we weren't able to negotiate.

21   And what we're seeking here, your Honor, is a 90-day period

22   during which we can serve a summons without pretrial and

23   begin negotiations with the parties.

24          Your Honor, one of the reasons that we picked a 90-

25   day window is that we're going to file complaints before

1    December 5th.  The clerk will need some time to react and

2    issue summonses, and people will begin to get their summonses

3    and complaints during the holiday season.  We'd very much

4    like to accomplish a lot during that time, but we're trying

5    to be realistic, and so then you're really looking at

6    January, February and then us filing another status report in

7    March to address, again, some of the questions that we hope

8    we responded to in our report.

9            With that, your Honor, I'm happy to pause, and Mr.

10   Togut would like to address the Court.

11           THE COURT:  Before we go further, let me just say

12   that I'm fine with the general concepts in your proposed

13   order.  I'm certainly not wed to the form of order that I

14   sent you with my notice or the order setting the status

15   conference.  That was not even an order entered by me but by

16   another judge.  It's just a sample to throw it out there and

17   get discussion and see what you guys wanted.  So, in general,

18   conceptually I'm fine with what you proposed in your proposed

19   orders, although I do -- I think there's a number of things

20   we need to talk about and walk through in that, and it may

21   need some changes, but we can get to that when you guys are

22   ready, so --

23           MR. BERGER:  Thank you, Judge.

24           THE COURT:  Yeah, um-hmm.

25           MR. TOGUT:  Good morning, your Honor.  Albert Togut,

1    Togut, Segal & Segal, and Mr. Berger neglected to mention we

2    are both admitted to practice in this court.  I have been

3    since 2007, and it's nice to be back.  It's nice practicing

4    out here in Detroit.

5         THE COURT:  Well, you got stuck with your only trial

6    here for some reason.

7         MR. TOGUT:  Well, what was noteworthy about that is

8    the defendant -- it was a small company, like a mom and pop

9    kind of company, and pop had terminal cancer, so when we were

10   seeking to recover the preference, he literally said, "Over

11   my dead body.  I refuse to settle."  We had a mediator.  We

12   had -- Judge Rhodes put us into one of those conference rooms

13   outside.  We tried our damndest.  He just adamantly refused

14   to talk settlement, and that's why it got tried, and it's the

15   only one in all the years we're doing this.  And I can tell

16   you that we have done more preference work than anybody in

17   the country, including ASK.  It's the only time we had to try

18   a case.

19        All right.  So -- and also so you'll know, the

20   Collins & Aikman order you referenced, that was negotiated

21   between Judge Rhodes and me in the courtroom.  Neil Berger

22   wasn't involved in that.

23        Okay.  So there are some important things that I

24   would like you to understand.  The first is that what we're

25   doing here is kind of unusual.  Normally you see preference

1    actions of any scope brought in a liquidating case.  More

2    commonly, when you have a Chapter 11 debtor that's emerging

3    as an operating company, the plan more often than not will

4    say that there are not going to be any preference actions,

5    and that's part of the dynamic in the negotiation over a

6    settlement with the creditors.  Their view is if I'm going to

7    support this company emerging from Chapter 11, I don't want

8    to get sued for a preference.

9         This case is very different for a couple of reasons.

10   One is it's not an 11.  It's a 9.  Two is the statute -- and

11   this is one of the unique features of Chapter 9 -- actually

12   says that the debtor is to diligently pursue preferences, and

13   if the debtor does not, the statute says you can move for the

14   appointment of a trustee to bring the preference actions

15   instead of the debtor.  That doesn't exist in Chapter 11.  So

16   the city, being very responsible, had to look at the

17   preferences and take those seriously.

18        Now, having said that, the plan -- the confirmed

19   plan of arrangement here provided that for all essential

20   contracts those contracts were being assumed, and once you

21   assume an executory contract, pre-petition payments that were

22   made lose their character as preferences because the test is

23   would you get more -- did you get more than you would get

24   outside of a -- did you get more than other creditors

25   similarly situated.  And in the case of an assumed contract,

1   a requirement of the Code is that you have to cure arrears.

2   To cure arrears you have to pay them in full.  And so those

3   contract parties would not receive more than other parties

4   similarly situated, so they wouldn't have preferences.

5        The target pool here consists of people whose

6   contracts were not assumed.  It consists of people who are

7   not essential vendors to the city.  It consists of people

8   who, taking advantage of all the noise that preceded the

9   Chapter 9 filing and the period of time both before and after

10  Kevyn Orr was appointed trying to work out a plan prefiling,

11  and all the press coverage, were banging on the city's door

12  saying, "You have to pay us.  You have to pay us."  It's the

13  most classic form of a preference you can find where the

14  noisiest creditor is the one that got paid and other

15  creditors similarly situated did not because they didn't make

16  the noise.

17       We, as Neil Berger said, in a perfect world, would

18  have been working these preferences for months and months

19  before we were here because there's a sensitivity about the

20  fact that people did take a hit on getting paid in this case.

21  Some feathers may still be ruffled about that.  And there is

22  a way that we know about because we've been doing more of

23  this work than anyone else to approach a preference recipient

24  to in a very nice way saying, according to the city's

25  records, you got payments within the 90-day period.  Could we

1    exchange records?  We want to see if you have any defenses.

2    We don't want to have to sue you, in a perfect world, we

3    would say, and let's work this out.  And in 99.999 percent of

4    the cases, they do get worked out.

5         There are times when you have to make the case look

6    and feel and smell like a litigation to get them to the point

7    of wanting to settle, but in the end they settled, and we

8    expect that will happen here.

9         The reason we're asking for all this time after the

10   filing is to give us the ability to do those kinds of gentle

11   negotiations that we weren't able to do before the two-year

12   statute ran, and --

13        THE COURT:  You know, I didn't realize -- if it's in

14   your report, I missed it.  I didn't realize that you had not

15   been negotiating over these last several months with the

16   transferees at all.

17        MR. TOGUT:  No.  We haven't engaged with anyone.

18   And my friend here from the city may want to expand upon this

19   a little further, but --

20        THE COURT:  I'm not complaining.  I'm just

21   observing.  I wasn't aware of that.

22        MR. TOGUT:  Yeah.

23        THE COURT:  I had assumed otherwise.

24        MR. TOGUT:  We had a hard time getting everybody

25   organized and getting the data that we needed, and one of the

1  things we don't want to do, your Honor, is to go out ill-
2  prepared, not taking into account potential defenses and all
3  that and insult people by suing them for an outrageous
4  number, so it did not occur.  And having said that, the
5  report we filed in February when you asked for the first
6  status report talked about 300 potential defendants, and now
7  it's down to 185, so the city has been very responsible in
8  trying to eliminate parties that should not be sued.

9       Now, let me talk a little bit about the Collins &
10  Aikman experience that I was directly involved in and the
11  order that Judge Rhodes and we worked out, and then I want to
12  share with you some conversations with Judge Rhodes
13  concerning this case.  The Collins & Aikman project was 1,100
14  adversary proceedings.  This one represents 16 percent of
15  that in terms of scope.  Judge Rhodes was very concerned
16  about taxing the court's resources.  That's why you had track
17  one, two, and three.  He was very concerned about the clerk's
18  office being overwhelmed by all these adversary proceedings.
19  We agreed with Judge Rhodes that we would file them without
20  tying up any time of the clerks, and if you've got a couple
21  minutes, I'll tell you a funny story that I think you'll get
22  a kick out of.  Do we?  I don't know how pressed you are
23  today.

24       THE COURT:  Sure.

25       MR. TOGUT:  Okay.  So Judge Rhodes said, "Togut, I

1  want you to file these and not involve any of my staff's

2  time," so to do this, you have to file them electronically.

3           THE COURT:  Was that back in the days before we had

4  mandatory electronic filing?  It may have been.

5           MR. TOGUT:  I don't know.

6           THE COURT:  2007, May of 2007.

7           MR. TOGUT:  2007.

8           THE COURT:  May have been, but anyway --

9           MR. TOGUT:  So he says, "Togut, don't tie up my

10  staff.  You figure out how to do this without that."  So we

11  had to file them electronically.  Well, when you try to file

12  an adversary proceeding electronically, my staff told me it

13  took 45 minutes for each case.  Had 1,100 of these.  They

14  also told me if you file them after hours, they go faster, so

15  they said to me -- this is my staff.  They said to me, "What

16  we want you to do is excuse us from work during the day.  We

17  will show up at six o'clock, and we will work through the

18  night to file these things, and put us up in a hotel so we

19  can sleep during the day," and that's what we did.  And so I

20  had a beehive of people in the office at night filing

21  adversary proceedings, 1,100 of them, for this court, and we

22  got it done.  We got it done early actually.  It was a

23  tribute to --

24           THE COURT:  So they were actually filed

25  electronically then?

1          MR. TOGUT:  They were, yes.

2          THE COURT:  Yeah.  Okay.

3          MR. TOGUT:  This time I would propose coming out

4    with a disk because doing it over the Internet was hard, but

5    I don't know.  Maybe things are faster now than they were

6    then.  Judge Rhodes --

7          THE COURT:  I don't know what you mean by that,

8    coming out with a disk.

9          MR. TOGUT:  Well, simply that transmitting stuff

10   over the Internet isn't normally as fast as taking a CD and

11   just copying it.

12         THE COURT:  Well, you're going to have to file

13   electronically like everybody else does --

14         MR. TOGUT:  Okay.  All right.  Fine.

15         THE COURT:  -- on our CM/ECF system.

16         MR. TOGUT:  That's fine.

17         THE COURT:  I didn't read anything in your papers to

18   propose something other than that.

19         MR. TOGUT:  Your Honor, that's fine.

20         THE COURT:  All right.

21         MR. TOGUT:  That's fine.

22         THE COURT:  Hopefully it'll be faster than it used

23   to be, but --

24         MR. TOGUT:  Good.

25         THE COURT:  -- we'll see.

1    MR. TOGUT:  That's good to know.  And we have fewer

2  to file.  Judge Rhodes had had a prior experience -- maybe it

3  was this Plastech case -- where he had mandatory mediation,

4  and so he insisted for Collins & Aikman on mandatory

5  mediation in that case as well.  As it turned out, we didn't

6  need it because we were able to settle everything except one

7  of the adversary proceedings, and I can tell you it slowed us

8  down a lot, and it added to the expense of the case.  Judge

9  Rhodes called me around the time of your appointment.  We

10  know each other, just so you can appreciate that.  We serve

11  together on ABI.  I headed up the Chapter 11 Reform

12  Commission.  Judge Rhodes testified before me in Austin,

13  Texas, on guess what topic?

14    THE COURT:  Oh, I know what topic.

15    MR. TOGUT:  Right.

16    THE COURT:  Yeah.

17    MR. TOGUT:  So we know each other, and he picked up

18  the phone, and he said, "Just trying to plan things out for

19  confirmation and trying to plan things out for my successor,

20  what do you expect in terms of how many adversary proceedings

21  will be filed, how much time you'll take?" all that kind of

22  stuff.  So we got into a conversation, and I told him at that

23  point in time that I couldn't give him a reliable answer

24  because we did not reliably know, but I did discuss with him

25  the whole notion of mediation.  And I said in this Chapter 9

1   case, given the needs of the city, I think it best that we

2   don't do that as the template and that we leave it that if we

3   run into an obstacle in trying to get something settled, we

4   come to the Court and say to the Court, "We'd like a mediator

5   appointed for this case or that case," and he thought that

6   appropriate, for whatever it's worth, and that's our

7   recommendation to you, too.  When we get to the point of

8   figuring out to what extent we need mediation, you let us

9   come to you and say for this case, this case, and this case

10  we've hit a roadblock, and we think there should be a

11  mediator.  From the city's standpoint --

12          THE COURT:  Well, your proposed order -- the concept

13  in your proposed order is that we put off that discussion

14  about mediation to the date when we have the next status

15  conference in about three, four months.

16          MR. TOGUT:  That's correct.  That's correct.  But

17  I'm telling you where our heads are at.

18          THE COURT:  Yeah.

19          MR. TOGUT:  And from the city's standpoint, they

20  need every dollar we can bring in, and whatever we spend on

21  mediators that we don't really need to spend they can ill

22  afford.  So that's essentially what I wanted to say, and we

23  can -- I'll answer any questions your Honor may have, and we

24  can go through the order.

25          THE COURT:  All right.  Are you going to be the one

1   to go through the order with me?

2              MR. TOGUT:  No.

3              THE COURT:  I mean whoever wants to do it, I --

4              MR. TOGUT:  No.

5              THE COURT:  I would like to walk through it and

6   raise some issues that I have with it.

7              MR. TOGUT:  Okay.

8              MR. BERGER:  Sorry, your Honor.

9              MR. TOGUT:  I mean I may chime in, but --

10             MR. BERGER:  If the Court would allow, Mr. Raimi

11  would like to address the Court.

12             THE COURT:  All right.  Sure.  Mr. Raimi.

13             MR. RAIMI:  I just -- Charles Raimi, deputy

14  corporation counsel.  I just want the Court to know that Mr.

15  Togut and Mr. Berger have been working extremely hard over

16  the past nine, ten months.  They've been out to the city

17  several times meeting with many people trying to get the

18  information they need, and I know they very much wanted to

19  make contact with the transferees before now, but -- this may

20  come as a shock, but the city's records aren't necessarily in

21  the greatest order, so we appreciate their efforts, and I

22  just wanted the Court to know that.

23             THE COURT:  All right.  Thank you, Mr. Raimi.

24             MR. BERGER:  Yes, Judge.  Neil Berger at the podium.

25             THE COURT:  Okay.  Looking at your proposed order,

1  paragraph B, pages 1 to 2, this idea of a special form of
2  summons being issued for your preference cases is, I think, a
3  problem, but it's one we can deal with perhaps in another
4  way.  I'm told -- I've had our IT staff looking into this a
5  bit, but I'm told that -- and I was reminded actually by our
6  clerk late last week that with our CM/ECF system when you
7  file these adversary proceedings electronically the summons
8  gets generated automatically and immediately, and it's the
9  same form of summons.  It's the official form of summons
10 which you're, I'm sure, familiar with, which is, of course,
11 inconsistent in some ways with what you propose in paragraph
12 B of your order.  And rather than trying to have -- work up
13 some sort of special form of summons for just your preference
14 cases, my thought was we'll go with the ordinary summons
15 that's going to get issued, but we can modify it with this
16 order as needed.  For example, the time limit for you to
17 serve the summons, the deadline or time limit for parties to
18 file an answer to the complaint after -- you know, some of
19 the terms you propose in this order we can just put in this
20 order.  Since you're going to serve the order with the
21 complaint and summons anyway, that'll inform the parties that
22 in some ways the summons is being modified.  Does that make
23 sense to you?
24         MR. BERGER:  It does make sense to us, your Honor.
25 Anticipating that that might be an issue, I did bring with me

1  the form of summons that the clerk of the court in Richmond

2  prepared.  I don't know if it's helpful.  I can hand it to

3  you.

4         THE COURT:  I'd be happy to look at it.  I'd be

5  curious about it.

6         MR. BERGER:  May I approach?

7         THE COURT:  Sure, yeah.  I assume they had to do

8  something special with their IT staff for this; is that

9  correct?

10         MR. BERGER:  They actually proactively reached out

11  to me before I could reach them.  You see in the first

12  paragraph, your Honor, it does reference in the second

13  sentence there's 30 days to respond, and then right after

14  that there's a reference to the procedures order that was

15  entered, and it includes the provisions in the order.

16  Otherwise the summons is simply the same.

17         THE COURT:  So they were able to set up their system

18  so that this was generated automatically?

19         MR. BERGER:  It is, and we filed -- or actually this

20  morning filing our last two actions in the James River Coal

21  case, and this form of summons will automatically generate.

22         THE COURT:  Well, good for them, but --

23         MR. BERGER:  I'm happy to do it.

24         THE COURT:  And I'm impressed.  I mean I am.  I

25  really am.

1      MR. BERGER: Yeah. You'll get to know me, your

2 Honor, but this is the extent of my tech savvy. We're at the

3 far end of the boundaries, but I thought that if the clerk at

4 this office -- of this court could see this that we might be

5 able to use it. If not, the covering order that would be

6 served simply can incorporate those, and I suppose we could

7 put a cover letter in our notice, "Please read the order

8 carefully. It modifies the text of the summons," however the

9 Court would please.

10      THE COURT: You know, unfortunately, I didn't get an

11 answer from our IT people before coming out here this

12 morning. I had hoped to get some sort of response. My

13 initial response from the clerk was, "Oh, my God," you know,

14 "I don't know if we can do this," in terms of modifying the

15 summons form. So based on what I have now in terms of my

16 knowledge -- and I'm no great tech wizard either -- I would

17 say let's just say in this order that -- I mean you can say

18 explicitly certain provisions in the summons issued in each

19 adversary proceeding are modified as follows, and then we can

20 say that it explicitly modifies certain provisions that are

21 going to be in the summons and then set those out. Let's do

22 it that way. I don't know if you have a practice of sending

23 a cover letter with your complaint and summons forms. If you

24 do, you can put something about that in there, too. If you

25 don't, then fine, you know. The parties have to read the

1   order to know what it says anyway.

2          MR. BERGER:  Very good.  We don't have that

3   practice, but we're happy to include a short letter --

4          THE COURT:  Sure.

5          MR. BERGER:  -- that directs people's attention to

6   the order first.

7          THE COURT:  Well, you don't need to do that.  If you

8   don't --

9          MR. BERGER:  Yeah.  Okay.

10         THE COURT:  -- normally do it, you don't have to do

11  it.  I think the order will be clear enough, I think, as

12  we're going to enter it, so in paragraph B it would say that

13  the -- recite that certain provisions in the form of summons

14  to be issued in each avoidance action is modified as follows,

15  and then we can go through and put in what's different or

16  changed.  The first thing you list there is the summons will

17  inform the defendant it has 30 days from the date of service

18  of the summons rather than the date of issuance to respond to

19  the complaint.  Then it says the summons will not set a

20  pretrial conference date.  Any pretrial or other scheduling

21  conference will be set only upon further order of the Court.

22  Our form of summons does not set a pretrial conference date

23  or any sort of hearing date --

24         MR. BERGER:  Okay.

25         THE COURT:  -- so I think you can take that sentence

1  out even.  You can leave it in if you want, but it's not

2  necessary.  But your concept is you guys have -- you guys

3  have -- in C, you know, the city wants to have 37 days to

4  serve the summons --

5      MR. BERGER:  Yes, Judge.

6      THE COURT:  -- instead of the usual 7 under the

7  rules, and that's fine.  And then you have this 30 days from

8  the date of service of the summons rather than the issuance.

9  You have to have that, of course, because you're going to

10  take extra time to serve it after it's issued.  What I would

11  like to do and I think is preferable is give you basically

12  the same time frame but frame it in terms of specific

13  deadlines, calendar date deadlines here.  You know you're

14  going to file these -- all these cases no later than December

15  5; right?

16      MR. BERGER:  Right.

17      THE COURT:  So we can just assume you file them all

18  on December 5.  If you file them sooner, whatever, fine, but

19  assume that December 5 the summons gets issued, and you can

20  measure from that a specific calendar date deadline for the

21  city to serve the summons and put that in the order and then

22  measure from that 30 days from that date as the deadline for

23  defendants to answer unless the deadline is extended by

24  stipulation, which is in paragraph D, which we'll talk about

25  in a minute.  And that way I think it'll make it easier for

1     our clerk and our clerk's personnel to see and be sure when

2     it's time for a clerk's entry of default in those cases --

3             MR. BERGER: Yes, Judge.

4             THE COURT: -- that are going to go to default.

5             MR. BERGER: I followed.

6             THE COURT: Does that make sense?

7             MR. BERGER: I followed, yes.

8             THE COURT: So if we assume December 5 as the filing

9     just for this exercise, you want 37 days after that to serve

10    the complaint --

11            MR. BERGER: Yes.

12            THE COURT: -- or the summons and complaint; right?

13            MR. BERGER: Um-hmm.

14            THE COURT: So that's what? Looks like that's

15    January 11, 2016 -- that's a Monday -- would be the deadline

16    for the city to serve the summons and complaint in each case;

17    right? Okay.

18            MR. BERGER: Yes, your Honor. And given our

19    experience, we'd respectfully request that we retain the

20    clause at the close of paragraph C without prejudice for

21    further extension if we show cause. There are always

22    instances where we have difficulties, and we'd like to

23    preserve that right. That would be the exception to the

24    rule, not the general rule.

25            THE COURT: But your idea there is only in the

1   unusual case.

2          MR. BERGER:  We can't effect service for some

3   reason.

4          THE COURT:  Where you need some more time --

5          MR. BERGER:  Yes.

6          THE COURT:  -- right?

7          MR. BERGER:  Yes.

8          THE COURT:  And, you know, when you're filing 200

9   actions, you're going to get all kinds of things.

10          MR. BERGER:  You're bound to come across a few.

11          THE COURT:  Yeah.  Okay.  That's fine.  And then

12   the -- so the deadline for parties to respond to the

13   complaint would be 30 days after January 11th, which is

14   February 10, if I'm looking at the calendar right.  Let's

15   come back to dispositive motions in a minute.

16          MR. BERGER:  Um-hmm.

17          THE COURT:  Just walking through this initial

18   timeline then, in paragraph D you talk about the ability to

19   stipulate to extension of the deadline to respond to a

20   complaint by no more than 60 days.  Now, if we set December

21   10 -- February 10, rather, as the initial answer deadline,

22   you still want 60 days from that date or the ability to

23   stipulate up to 60 days from that date; is that right?

24          MR. BERGER:  I think you've given us an additional

25   30.  I'd like an additional 60 days, your Honor.  The concept

1  is the city's preference to negotiate rather than litigate,

2  and that gives us the give and the join to have that

3  negotiation.  And what we typically have been doing in our

4  other cases is agreeing by e-mail or letter exchange to the

5  extension, and if beyond that there would have to be a

6  stipulation submitted to your Honor for approval for an

7  extension beyond the 60 days.

8           THE COURT:  Well, what I was going to -- what I

9  wanted to raise with you also is we need a way for our

10  clerk's office personnel to know when there's been an agreed

11  stipulation to extend the February 10 answer deadline.

12  Otherwise they're just going to enter a default, and we're

13  going to have to deal with that, so my thought was to say in

14  here that to be effective a stipulated extension has to be --

15  the stipulation has to be in writing --

16           MR. BERGER:  Um-hmm.

17           THE COURT:  -- and filed in the adversary proceeding

18  to be effective.  That way our clerk's office will be able to

19  see easily and know what the extended answer deadline is so

20  they won't go entering a default against people that -- where

21  it's premature.

22           MR. BERGER:  I understand, and that's easily done.

23  We're happy to comply with it.

24           THE COURT:  Does that make sense?

25           MR. BERGER:  Yes.

1        THE COURT:  So D it's fine to say without further

2   order of the Court, the parties may stipulate to extensions

3   of the time within which a defendant must respond to a

4   complaint by -- if you want to keep it at no more than 60

5   days, that's --

6        MR. BERGER:  Um-hmm.

7        THE COURT:  -- fine except let's put a calendar date

8   to that, so -- to a date that is no more than -- no later

9   than --

10       MR. BERGER:  No later than.

11       THE COURT:  -- and then it's February 10 plus 60 if

12  you still want that full 60.

13       MR. BERGER:  I do, Judge.

14       THE COURT:  All right.  I think we're looking then

15  at Monday, April 11.

16       MR. TOGUT:  It should be more.  February is 28 days.

17  Why don't we make it April 15th, your Honor?

18       THE COURT:  I must have just counted 60 days wrong,

19  but that's fine.  That's Friday of that week instead of

20  Monday.  That's fine.  April 15.  And then, say, for that

21  second sentence of D it should say the stipulation must be in

22  writing and filed in the adversary proceeding to be

23  effective, period.  Does that work?

24       MR. BERGER:  Yes, Judge.

25       THE COURT:  Okay.  I would like to say -- instead of

1  what you have as your last sentence in D, I'm in favor -- I'm

2  inclined to say instead no further or longer extensions of

3  time will be granted, period, and so that everybody knows,

4  okay, that's it.  You know, it's not that complicated or hard

5  to file an answer to a preference complaint.  Does that make

6  sense, or you want to argue against that?

7        MR. TOGUT:  Here, your Honor, the issue is if we

8  were dealing with a regular corporation, that would make

9  perfect sense, but we can tell you that in our dealings with

10  the city, getting answers back when defendants will tell us

11  this, that, or the other thing can take a lot longer than you

12  would ever imagine, so I think the flexibility is --

13        THE COURT:  Getting answers back?  What do you mean,

14  "answers back"?

15        MR. TOGUT:  In other words, when I call my client --

16  defendant sends me something, sends documents; right?  So I

17  send it to my client.  They then have to go check their books

18  and records.  It could take a long time.  If we were dealing

19  with a regular corporation, I'd agree with you in a

20  nanosecond, but here I never know how long it's going to take

21  to get responses back.

22        THE COURT:  Well, but what we're talking about is a

23  schedule where the defendant is going to have up to 90 days

24  after service of the summons and complaint to file an answer

25  to a preference claim.  That seems like a very long time to

1  me.

2          MR. TOGUT:  It is, but our goal isn't to get an --

3          THE COURT:  If they wait till the last minute to

4  give you the information, that's too bad on them.  They got

5  to file an answer.

6          MR. TOGUT:  I know, but the goal isn't to get an

7  answer.  The goal is to get a settlement.  We don't want to

8  clog your courtroom with all kinds of litigation here.  We

9  would prefer to try to settle with everyone, and it's only if

10  we got a defendant who says to us, "Make me," that we need to

11  go through answers and discovery and all that stuff.

12          THE COURT:  Well, I don't want to have to deal with

13  motions for extension of time either stipulated to or by

14  motion where we have to look at a motion, look at an order.

15  We got to process an order.

16          MR. TOGUT:  Right.

17          THE COURT:  That clogs us up, and I don't want to do

18  that.

19          MR. TOGUT:  Well, and that's the argument for not

20  making a hard stop.  We can keep extending their time.  They

21  don't have to make a motion.

22          THE COURT:  I'm sorry.  I won't do that.

23          MR. TOGUT:  Okay.

24          THE COURT:  I won't do that.

25          MR. TOGUT:  Okay.

1    MR. BERGER:  Very good, Judge.  Thanks.

2    THE COURT:  The agreed extensions can go up until

3 April 15, no further extensions after that, so let's put that

4 in there.  I think it may actually help you get settlements.

5 Now, I don't have the experience you guys have in these,

6 but --

7    MR. BERGER:  So the last --

8    THE COURT:  -- you know, a firm deadline can

9 sometimes help get a settlement in general.

10    MR. BERGER:  All right.  So the last sentence of

11 that paragraph, your Honor, would say no further or longer

12 extensions will be permitted?

13    THE COURT:  Will be granted, period.

14    MR. BERGER:  Will be granted.

15    THE COURT:  Now, I think this is the time -- the

16 moment to return back to the last sentence of your B --

17    MR. BERGER:  Um-hmm.

18    THE COURT:  -- about dispositive motions where you

19 say no dispositive motion may be made without court approval.

20 I don't want to deal with motions for court approval to allow

21 a dispositive motion, and so I want to avoid that, but I was

22 thinking perhaps the thing to say is what's in -- the

23 provision I liked that was in the Collins & Aikman form or at

24 least for track one that I was looking at, which is paragraph

25 6 of that.  I have a copy I can hand you if you want --

1        MR. BERGER:  Thanks, Judge.

2        THE COURT:  -- for your reference.  If you look at

3   the second page of that, last two sentences of paragraph 6,

4   it starts out, "The court strongly discourages the filing of

5   a motion to dismiss under Rule 12(b)(6) in lieu of an answer.

6   Unless the court orders otherwise, the plaintiff" -- I would

7   say "may not file a response to such a motion, and no hearing

8   will be held on such a motion," so that if somebody wants to

9   file a 12(b)(6) motion, at least in response to a preference

10  complaint, that may be something that I can handle without a

11  hearing and without requiring the city to -- you know, to

12  spend any time answering and without worrying about notices

13  of hearing or what do we do with it.  Just leave it.  And

14  certainly, of course, I would not grant such a motion without

15  giving the city an opportunity to respond and be heard, but I

16  think I'm happy to say that I strongly discourage that.  I

17  think -- and it's quite likely I could deny some of those

18  motions without a hearing and without any fuss rather than

19  saying you can't file any motion -- dispositive motion at

20  all, so what's your thoughts on that?  What are your

21  thoughts?

22       MR. BERGER:  We're happy to live with the same

23  provision that you just highlighted to us, Judge.

24       THE COURT:  Okay.  So let's put that in instead of

25  what you have at the end of B.

```
 1              MR. BERGER:  Yes, Judge.

 2              THE COURT:  All right.  I also like putting in --

 3    hold on -- putting in with some revisions what's paragraph 7

 4    from the Collins & Aikman order -- track one order that I've

 5    handed to you.  Some details need to be changed there, but

 6    that's the concept of letting -- just making clear to

 7    everyone when the clerk of court is going to enter a default.

 8              MR. BERGER:  Happy to add that as well, Judge.

 9              MR. TOGUT:  One moment, please.

10              THE COURT:  Sure.

11              MR. TOGUT:  You want that after B, your Honor?

12              THE COURT:  Perhaps it would be better to put it

13    after your current B.  B through D might get relettered a bit

14    based on what we're doing, but before we get into the stay

15    stuff in E, perhaps right before that.

16              MR. BERGER:  I'm sorry, your Honor.  Paragraph 7

17    from the Collins & Aikman order will go before current --

18              MR. TOGUT:  Paragraph E.

19              MR. BERGER:  -- paragraph C.

20              MR. TOGUT:  E.

21              MR. BERGER:  E.

22              THE COURT:  E.  After we deal with all the time

23    frames, including the times --

24              MR. BERGER:  Um-hmm.

25              THE COURT:  -- extensions to answer and so forth.
```

1          MR. BERGER:  Yes, Judge.

2          THE COURT:  Does that make sense?

3          MR. BERGER:  Yes, Judge.

4          THE COURT:  Okay.  I would change, though, some

5   wording in the Collins & Aikman paragraph 7, so if you have

6   that in front of you, I can tell you what that needs -- what

7   that needs.  Do you have it there?

8          MR. BERGER:  Yes.

9          THE COURT:  Okay.  I would say instead of "the

10  court," I'll say "the clerk of court will promptly enter a

11  default."

12         MR. BERGER:  Um-hmm.

13         THE COURT:  On the second line in reference to local

14  Rule 7077-1, if it was correct at the time, it's not anymore.

15  It should be 7055-1.  7055-1.

16         MR. BERGER:  Yes, Judge.

17         THE COURT:  Then third line in parentheses where it

18  says "not a motion," that take out.  And then the

19  references -- the reference on the fifth line of paragraph 7

20  to 15 days should be 14 now.

21         MR. BERGER:  Um-hmm.

22         THE COURT:  The last sentence, which says, "If the

23  plaintiff fails to file the application for default" --

24  actually, it should say "for default judgment within," and it

25  says 30 days, I'm inclined to make that 14 days because

1  that's our current practice, and that's what the clerk

2  normally does.  And our forms even for entry of default, I

3  think, say this, 14 days.

4          MR. BERGER:  We have those forms as well.

5          THE COURT:  Yeah.  From the entry of default, the

6  adversary proceeding will be dismissed without a hearing, so

7  that's what I'd like to say in this paragraph.  Did you have

8  any comments or issues with any of that?

9          MR. BERGER:  I followed it all, and we're happy to

10  include them.

11          THE COURT:  Okay.  Great.  Then I think we -- let me

12  make sure.  I think then what we come to is E in your

13  proposed order about the stay and so forth.  Let me make sure

14  I'm not forgetting something here.  Okay.  So you got -- in E

15  and F you have these stay provisions, and the concept

16  there -- concepts there are fine with me.  I would just tweak

17  your wording a bit in F, current F.  Where it says the

18  party's obligations to conduct formal discovery, I'd like to

19  add the phrase after "obligations" the words "and ability to

20  conduct formal discovery is stayed," et cetera.

21          MR. BERGER:  Yes.

22          THE COURT:  Other than that, E and F are fine as you

23  have them.

24          MR. TOGUT:  Your Honor, may I propose something on F

25  while I'm looking at it here?

1    THE COURT:  Sure.

2    MR. TOGUT:  Instead of saying that the stay of

3 discovery shall in no way preclude the parties, I think it

4 should say the stay of discovery -- during the stay of

5 discovery, the parties are encouraged to informally exchange

6 documents.

7    THE COURT:  Okay.  So end the first -- end the

8 sentence where it says it's stayed until a discovery

9 scheduling order is entered, put a period --

10    MR. TOGUT:  Um-hmm.

11    THE COURT:  -- and then say during the stay of

12 discovery, the parties -- what did you say -- are encouraged?

13    MR. TOGUT:  I have it.  I have it.

14    THE COURT:  The parties are encouraged?

15    MR. TOGUT:  Are encouraged --

16    THE COURT:  Yeah.  That's good.

17    MR. TOGUT:  -- to informally exchange documents and

18 information.

19    THE COURT:  That's fine.  G is fine.  H is fine.  In

20 your paragraph I the deadline for the city to file a status

21 report is fine.  If you want to change March 31 in light of

22 what we've already done, we can talk --

23    MR. BERGER:  Yeah.

24    THE COURT:  -- about that.  In addition, where it

25 says, "The Court will schedule a status conference," I'd like

1  to set a date and time for that right now in this order,

2  depending on what the date is going to be for the status

3  report to be filed.  Do you still want March 31, or do you

4  want something a bit later?

5          MR. BERGER:  I think later given what we've done so

6  far, Judge.

7          THE COURT:  Okay.  What would you like?

8          MR. BERGER:  Well, we pushed the dates back at least

9  30 days, so perhaps end of April.

10          MR. TOGUT:  I was thinking the same thing, April 30.

11          THE COURT:  April 29 is a Friday.

12          MR. TOGUT:  There you go, April 29.

13          THE COURT:  Okay.  So instead of March 31, it's

14  April 29.

15          MR. BERGER:  Um-hmm.

16          THE COURT:  That's fine.  And then I'd like to set a

17  status conference and put the date and time in that order --

18  in this order right now.

19          MR. TOGUT:  This is for May, your Honor?

20          THE COURT:  Yeah.  This will be in May.  I want to

21  do it on a Wednesday afternoon in May, if possible, which

22  is -- you know, when I have hearings in the Detroit case,

23  it's always a Wednesday afternoon or almost always a

24  Wednesday afternoon.  I would say April 11 or 18 would be

25  good for me, but it's up -- let me get your schedule to make

1  sure you're good.

2         MR. TOGUT:  April 18 is a Monday.

3         THE COURT:  I'm sorry.  I'm looking at the wrong --

4  I'm looking at the wrong --

5         MR. BERGER:  We're talking about May?

6         THE COURT:  No.  We're looking at May.

7         MR. TOGUT:  Oh, May.  Sorry.

8         THE COURT:  I'm sorry.  I misspoke.  May.

9         MR. TOGUT:  That's okay.

10        THE COURT:  Let's see.  May 11 or 18.  Either one is

11 good for me.

12        MR. TOGUT:  Yeah.  I think --

13        THE COURT:  Do you have a preference?

14        MR. TOGUT:  Yeah.  I would prefer the 18th only

15 because the 12th is the beginning of the ABI annual meeting.

16        THE COURT:  Okay.  May 18 at 1:30 p.m.?

17        MR. TOGUT:  Sure.

18        MR. BERGER:  So the Court will conduct a status

19 conference?

20        THE COURT:  Yeah.  The rest of I is fine with me.

21 In J -- your current J I'd like to make some changes.

22        MR. BERGER:  Um-hmm.

23        THE COURT:  In the second sentence where it says,

24 "Upon such notification" -- that's notification of a

25 settlement -- "the Court will enter an order requiring the

1   parties to submit a dismissal order," et cetera, instead of
2   requiring that extra step by the Court, I would just like to
3   put right in this order something like this, that such --
4   after the first sentence, then "such notification must be
5   filed in writing in the relevant adversary proceeding,"
6   period.  "Upon such notification, the parties to the settled
7   avoidance action must submit a dismissal notice, proposed
8   judgment, or order or other appropriate document resolving
9   such avoidance action," so, in other words, this order
10  requires it right now, and I don't have to order it
11  individually in the other -- in each case where there's a
12  settlement.  And then you said within 45 days.  I was
13  wondering why so long.
14          MR. BERGER:  Only because we picked up that
15  provision from the former order that was attached, but we can
16  do it more quickly.
17          THE COURT:  Shame on me then for putting that out.
18  We usually give seven days where a 9019 motion is not
19  required.  Such motions are not going to be required here,
20  so --
21          MR. BERGER:  9019 --
22          THE COURT:  -- is seven too soon for you or fourteen
23  or what?
24          MR. BERGER:  Fourteen.
25          THE COURT:  Fourteen?

1    MR. BERGER: Fourteen without 9019 would be fine.

2    THE COURT: Let's make it 14 days.

3    MR. BERGER: Um-hmm.

4    THE COURT: So submit the order or whatever within

5    14 days. And if no document is submitted within the 14 days,

6    the Court will dismiss, et cetera, unless a written request

7    for additional time --

8    MR. BERGER: Within the 14.

9    THE COURT: -- within the 14-day-period is filed.

10   MR. BERGER: Um-hmm.

11   THE COURT: Any problems with any of that?

12   MR. BERGER: We can comply with that, your Honor.

13   THE COURT: Okay. K?

14   MR. BERGER: All of these following paragraphs we

15   took from the form you --

16   THE COURT: Again, shame on me then. K, first

17   sentence is fine. The sentence that says, "However, the

18   Court will permit an attorney," et cetera, needs to come out.

19   That's not accurate, and it's not consistent with what I

20   think is our local rules and our District Court's local rule

21   currently, so the sentence, "However, the Court will permit

22   an attorney who's not a member," et cetera, all the way to

23   the end of that sentence, I need you to take out, please.

24   MR. BERGER: Yes, Judge.

25   THE COURT: And the reference to the District

1  Court's Local Rule 8320(f) I think is outdated.  Currently

2  8320(f) is the District Court's rule dealing with the

3  requirement to have local counsel, which, as recently

4  amended, the District Court's rules say that that requirement

5  or those rules regarding local counsel do not apply in

6  bankruptcy cases.  At our request they sort of excepted or

7  carved out bankruptcy cases from that requirement, I think,

8  in their recent -- most recent round of amendments to their

9  local rules.  I think we can just take out -- just cite to

10  83.20 rather than (f).

11          MR. BERGER:  Yep.

12          THE COURT:  And keep in "available at," and then you

13  give the website.  Those District Court rules are -- local

14  rules are available still on our court's website as of this

15  morning.  There was a problem, but I got it fixed, so they

16  are there.

17          MR. BERGER:  Very good.

18          THE COURT:  So any problems or concerns about K now?

19          MR. BERGER:  A moment, your Honor.  Very good,

20  Judge.  We'll make those changes to paragraph K.

21          THE COURT:  And you may already be aware of this,

22  but under the District Court's rules pro hac vice admissions

23  are not permitted in this district and in this court.  Some

24  of our judges have been a little flexible on that, but I'm

25  not --

1          MR. BERGER:  Um-hmm.

2          THE COURT:  -- so if anybody asks you, you can tell

3     them I don't permit it because I don't perceive that I can do

4     it -- allow pro hac vice admissions under our local rules --

5     the District Court's local rules, in particular.  Okay.  I

6     didn't have any issues with L, M, N, O, P or Q.  The

7     reference in paragraph P to -- where it says, "Nothing in

8     this order limits the city's ability to pursue avoidance

9     actions against entities that are not subject to this order,"

10    is that just a reference -- intend to be a reference to

11    adversary proceedings other than preference cases?

12         MR. BERGER:  Yes.

13         THE COURT:  Okay.  So I think that's all I had on

14    your proposed order.  And we've talked about changes.  Is

15    there anything else, though, about the order that you want to

16    talk about?

17         MR. BERGER:  Not from my perspective, your Honor.

18    We appreciate you taking the time, and we're happy to make

19    the changes that you proposed today.

20         THE COURT:  Okay.  So I think the next step is for

21    the city to -- you guys to revise the order, submit it.  You

22    don't need to file anything, I don't think.  Just submit the

23    order as revised.  I'll review it carefully.  We'll get it

24    entered --

25         MR. BERGER:  Yes.

1    THE COURT: -- as soon as possible since you're

2  going to -- next week I assume you're going to get going on

3  filing your cases, so --

4    MR. BERGER: Yes, yes.

5    THE COURT: -- can you get -- how soon can you get

6  this revised order submitted?

7    MR. BERGER: Before the close of business tomorrow.

8    THE COURT: Tomorrow?

9    MR. BERGER: Yes.

10    THE COURT: Okay. Then I'll be able to get it

11  entered on Wednesday morning is what would be my plan. I'll

12  review it right after I see it and try to get it entered

13  right away so you're all set. When do you think that the

14  city will actually start filing these? The week after --

15  earlier in the week or are you going to go right up to

16  December 4 or 5?

17    MR. BERGER: Moments after you enter the order our

18  paralegal staff will start filing complaints.

19    THE COURT: Oh, okay. Hope you don't make them work

20  on Thanksgiving day, however.

21    MR. BERGER: No, Judge. No, Judge. Depending upon

22  the time, it may be Monday, but certainly from Monday through

23  next Friday you'll see the large volume of the complaints

24  being filed.

25    THE COURT: Okay. Very good. So submit the order.

1    I'll waive any further -- any presentment of it.

2           MR. BERGER:  Yes.

3           THE COURT:  I'll review it, and we'll get it

4    entered.

5           MR. TOGUT:  Can I ask one question here, your Honor?

6           THE COURT:  Sure.

7           MR. TOGUT:  On the filing fees for the adversary

8    proceedings, are they permitted to accrue as an

9    administration expense or do they have to be paid out of

10   pocket?

11          THE COURT:  You got to pay them --

12          MR. TOGUT:  Okay.

13          THE COURT:  -- when you file --

14          MR. TOGUT:  Okay.

15          THE COURT:  -- as far as I know.  You know,

16   nobody -- I have to say, though, nobody has -- that I can

17   remember has asked me to defer the filing fee for a

18   preference case.  I don't think -- the only one that might

19   have asked would be a Chapter 7 trustee that has no assets,

20   but I don't remember even that.  I couldn't swear that that's

21   ever happened.

22          MR. TOGUT:  Yeah.  Well, I've experienced that.

23   I've done a lot of trustee work where we were permitted to

24   file them and then pay the fee at a later date.

25          THE COURT:  Yeah.  We're more flexible with a

```
 1   Chapter 7 trustee.  I think you have to be, as a practical
 2   matter.  A lot of their cases are no asset cases.  You know,
 3   if you want to ask me to do that, file a motion and tell me
 4   the authority, and I'll certainly consider it --
 5             MR. TOGUT:  All right.  We'll take a look.
 6             THE COURT:  -- you know, but obviously the sooner
 7   the better on that since --
 8             MR. TOGUT:  Yeah, yeah.
 9             THE COURT:  -- you got to get going on your filings.
10             MR. TOGUT:  Yeah.  I thought you might know.
11             THE COURT:  I don't.  I haven't had any experience
12   with that in preference actions, you know.  I don't remember
13   it even happening with Chapter 7 trustees, but I couldn't
14   swear that there isn't some nook and cranny in our practices
15   where that isn't allowed.  I don't know.
16             MR. TOGUT:  Okay.
17             THE COURT:  I'd have to check.
18             MR. TOGUT:  Thank you for making time for us today,
19   and happy Thanksgiving.
20             THE COURT:  Thank you all, and happy Thanksgiving to
21   everyone.
22             MR. BERGER:  Thank you, Judge.
23             THE COURT:  And please don't make your staff work on
24   Thanksgiving, and we'll see you again.
25             MR. TOGUT:  Thank you, your Honor.
```

1          MR. BERGER:  Thank you, Judge.

2          THE COURT:  Thank you all.

3          THE CLERK:  All rise.

4      (Proceedings concluded at 12:07 p.m.)

INDEX


<u>WITNESSES:</u>

     None

<u>EXHIBITS:</u>

     None


          I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.


/s/ Lois Garrett                     November 30, 2015
_____      _____
Lois Garrett