# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S REPLY TO THE RESPONSE OF DOMINIQUE McCARTHA, AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF GREGORY PHILLIPS [DOC NO. 10685]

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

CITY OF DETROIT LAW DEPARTMENT

Charles N. Raimi (P29746)
James Noseda (P52563)
Jerry L. Ashford (P47402)
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
Phone - (313) 237-5037/
Email - raimic@detroitmi.gov

The chronology of events is important. Plaintiff appends papers for a facilitation that took place in **June 2013** – **prior to** the City's bankruptcy filing. [Doc. No. 10685 at pages 21-30 of 82]. The parties next discussed settlement in **April 2014**, after this Court had issued its ADR order designed to facilitate prompt settlement of claims. [Doc. No. 2302]. At that time, the current versions of the plan contained language enjoining 42 U.S.C. § 1983 claims against police officers. [Doc. Nos. 3380 & 4140].[1] Claimants did not file any objections attempting to contest this injunction until approximately June 2014. Thus, the City did not, and could not possibly have, provided information about such objections because they had not yet been filed.

The case did not settle at the April 2014 facilitation, but the City gave Plaintiff's counsel the proposed ADR settlement agreement providing for a $25,000 convenience claim. There were no further discussions; rather, in September 2014, some 6 months later, Plaintiff's counsel sent back the executed ADR agreement. Obviously, the City played no part in Plaintiff's decision to execute the settlement papers.[2]

## I. Plaintiff Released His Claims Against Defendant Ian Severy

Plaintiff first argues that the "Release makes it appear that any claims potentially being resolved would be for the City of Detroit only, since it was only the City of Detroit, who was a Defendant in the federal court 42 U.S.C. § civil rights lawsuit case, that was in bankruptcy." This argument is directly contradicted by the Settlement Agreement's release provision which states that "As used in this Agreement, the Claimant and the City include each of their respective

---

[1] Holders of Indirect Employee Indemnity Claims were enjoined from pursuing such claims pursuant to the Injunction provision in the Amended Plan and the Second Amended Plan. [Doc. No. 3380 at page 46 of 235; Doc. No. 4140 at page 46 of 301].
[2] At the April 2014 facilitation, Plaintiff's counsel was advised that the Detroit Police Department had located the gun that Mr. Phillips claimed in his lawsuit not to have. That fact made Plaintiff's claim largely worthless.

- 1 -

servants, agents, contractors, attorneys, **employees,** representatives..." Settlement Agreement ¶ 8 (emphasis added). [Doc. No. 10272 at p. 58]. Plaintiff clearly released his claims against Severy.

## II. The Settlement Agreement Should be Enforced

### A. Courts Favor Compromises of Disputes

Courts "favor compromises of disputes, and where a settlement is once shown, every presumption is indulged in favor of its fairness, correctness and validity generally, and the burden of proving a basis for avoidance thereof is on the party seeking such avoidance." *General Discount Corp. v. Schram*, 47 F. Supp. 845, 849 (E.D. Mich. 1942). *See also Aro Corp. v. Allied Wittan Co.*, 531 F.2d 1368, 1371-72 (6th Cir. 1976) (holding that the lower court "had not only the inherent power but, when required in the interests of justice, the duty to enforce the agreement which had settled the dispute pending before it.").

### B. Plaintiff Has Not Provided Any Basis to Avoid the Settlement Agreement

#### 1. Timing and Amount of Payment Prescribed by Plan

Plaintiff argues against enforcement of the Settlement Agreement because she did not know "when the proceeds would be paid and/or how much exactly would be paid for the 'unsecured claim.'" Response at 2. Again, the plain language of the Settlement Agreement refutes Plaintiff's argument: "The Parties agree that any Settled Claim is a general unsecured, nonpriority claim, subject to the treatment provided for such claims under any chapter 9 plan for the adjustment of debts confirmed by the Bankruptcy Court (a "Plan")." Settlement Agreement ¶ 5. Plaintiff thus recognized and agreed that the timing and the amount of the payment would be prescribed by any confirmed chapter 9 plan.

Further, ten days before the Plaintiff signed the Settlement Agreement, the City filed its Seventh Amended Plan for the Adjustment of Debts of the City of Detroit (September 16, 2014) [Doc. No. 7502] ("Seventh Amended Plan"). The Seventh Amended Plan and the confirmed

Eighth Amended Plan treat Convenience Claims[3] (such as Plaintiff's) exactly the same -- cash in the amount of $6,250.00 to be paid on or as soon as reasonably practicable after the Effective Date.[4] The Seventh Amended Plan was a public record, available free of charge to Plaintiff, that specified the timing and amount of payment to Plaintiff and such treatment is identical under the confirmed Eighth Amended Plan.

**2. The dispute over the ultimate treatment of 42 U.S.C § 1983 claims was a matter of public record when Plaintiff signed the settlement – the City had no better knowledge how such claims would ultimately be treated than did anyone else. Accordingly, Plaintiff cannot avoid the settlement by arguing "no meeting of the minds" or "fraud."**

Plaintiff argues that there was no meeting of the minds because the "City of Detroit was well aware of the possibility that lawsuits filed under 42 U.S.C. § 1983 would not even be subject to the bankruptcy proceedings. This was NEVER conveyed to Respondent, but instead was concealed ...." Response at 2. Those allegations are false. In April 2014, the City did not, and could not possibly have, advised Plaintiff because there was nothing to tell, and there were no further discussions.

However, at the time Plaintiff signed the settlement in September 2014, the public record contained (1) the most recent proposed plan of adjustment, under which 42 U.S.C. § 1983 claims against police officers were enjoined, and (2) voluminous filings by plaintiffs' lawyers arguing that 42 U.S.C. § 1983 claims against police officers should be able to proceed notwithstanding

---

[3] The term "Convenience Claim" is defined to mean "a Claim that would otherwise be an Other Unsecured Claim that is (a) an Allowed Claim in an amount less than or equal to $25,000.00; or (b) in an amount that has been reduced to $25,000.00 pursuant to an election made by the Holder of such Claim…" Seventh Amended Plan, Article I.A.76, page 14 of 82; Eighth Amended Plan, Article I.A.76, page 14 of 82 at docket number 8045.

[4] On October 22, 2014, the City filed a redline of the Seventh Amended Plan against the Eighth Amended Plan [Doc. No. 8046, Ex. A] ("Redline"). As set forth in the Redline, neither the definition of "Convenience Claim" nor the treatment of Convenience Claims under Class 15 changed. Redline, Article I.A.76, page 22 of 725; Article II.B.3.v.i., page 64 of 725.

the bankruptcy.[5] Seventh Amended Plan, Article III.D.5, p. 56 of 82 (enjoining holders of Indirect Employee Indemnity Claims from pursuing actions).[6]

In short, Plaintiff had available all relevant information. The City did not advise Plaintiff on the §1983 issue, nor did the City have a crystal ball to foresee how the Court ultimately would rule on the issue. Parties routinely settle cases not knowing how various issues might later be decided. If this were enough to overturn a settlement, no settlement would be safe from attack.

Plaintiff makes a related argument, alleging that the settlement should be set aside because of "fraud." Response at 3. A plaintiff "cannot claim to have been defrauded where he had information available to him that he chose to ignore." *Nieves v. Bell Industries, Inc.*, 204 Mich.App. 459, 465 (1994). Plaintiff was represented by experienced counsel who had been personally served in March 2014 with a notice providing that the Plan and all related documents are "available on the internet, free of charge, at http://www.kccllc.net/Detroit ..." Doc. No. 2823-14 at page 3 & 4 of 5 (Notice); Doc. No. 2823-2 at page 52 of 171 (Certificate of Service).

---

[5] *See e.g.* (a) *Supplemental Brief of Ryan, Swift, Mendoza and Cuppetelli, Interested Parties, in Support of Their Objections Previously Filed [Dkts. # 4099, #4228, #4608] Insofar as §II.B.3.U.I of the Proposed Plan Violates the Fourteenth Amendment, Impairing the Relief Available to Victims of Constitutional Violations Under 42 U.S.C. § 1983*, filed on June 30, 2014 at docket number 5690; (b) *Brief in Concurrence of Creditors Dwayne Provience, Richard Mack, and Gerald and Alecia Wilcox, Interested Parties, to Deborah Ryan, Walter Swift, Cristobal Mendoza and Annica Cuppetelli, Interested Parties, Supplement Brief [Dkt. #5690] In Support of the Instant Creditors Previously Filed Objections [Dkts. #4224 and #4618] to Debtor, City of Detroit's Plan for the Adjustment of Debts of the City of Detroit, and Certificate of Service*, filed on June 30, 2014 at docket number 5693; (c) *Second Supplemental Brief of Ryan, Swift, Mendoza, and Cuppetelli, Interested Parties/§1983 Plaintiffs, in Support of Their Objections Previously Filed [Dkts. #4099, #4228, #4608, #5690] On the Constitutionality of Allowing the Diminishment of the Fundamental Right to Damages Remedy For the Violation of Constitutional Rights*, filed on August 15, 2014, at docket number 6764; and (d) *§ 1983 Plaintiff's Concurrence of Interested Parties Ryan, Swift, Mendoza, and Cuppetelli, Second Supplemental Brief in Support of Their Objections Previously Filed [Dkts. #4099, #4288, #4608, #5690] On the Constitutionality of Allowing the Diminishment of the Fundamental Right to a Damages Remedy for the Violation of Constitutional Rights*, filed on August 21, 2014, at docket number 6911.

[6] S*ee also* Consolidated (A) Pretrial Brief in Support of Confirmation of Sixth Amended Plan for the Adjustment of Debts of the City of Detroit and (B) Response to (I) Certain Objections Filed by Individual Bondholders and Individual Retirees and (II) Supplemental Objection at pp. 218-225 of 292. [Doc. No. 7143].

Plaintiff's counsel apparent failure to review the freely available bankruptcy filings does not allow Plaintiff to set aside the settlement for "fraud."

C. **Plaintiff's reliance on the *Ozyagcilar* and *Therma-Scan* decisions is misplaced**

Neither *Ozyagcilar* nor the *Therma-Scan* case involved an executed settlement agreement. In *Ozyagcilar,* the parties signed an outline of a settlement agreement and read that outline into the record. *Ozyagcilar v. Davis*, 701 F.2d 306 (4th Cir. 1983). While reading the outline into the record, the district court asked, and the parties agreed, that it could resolve any disputes over the interpretation of the outline. *Id.* at 306-07. The district court subsequently decided a dispute over a term. *Id.* On appeal, the Fourth Circuit held that a district court only "retains the power to enforce *complete* settlement agreements" and it was unclear whether the outline agreement was complete. *Id*. at 307-08 (emphasis supplied).

Similarly, in *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414 (6th Cir. 2000), the parties had not executed a settlement agreement. Instead, the district court attempted to summarize the key terms of a settlement reached during an oral argument and then directed the parties to draft a written agreement. *Id.* at 416-417. The parties could not agree on a written agreement and the district court ordered them to sign an agreement prepared by one of the parties. *Id.* at 418. The Sixth Circuit held that the district court erred when it ordered the parties to sign the settlement agreement because its finding that the parties had entered into a complete settlement was clearly erroneous. *Id.* at 419-20. Here, the parties executed the written Settlement Agreement, which states (¶ 10) that it is "the entire agreement between the Parties…"

| | |
|---|---|
| Dated: January 8, 2016 | By:/s/ Marc N. Swanson (P71149)<br>150 W. Jefferson, Suite 2500<br>Detroit, Michigan 48226<br>T: 313.496.7591/ F: 313.496.8451<br>swansonm@millercanfield.com<br>Miller, Canfield, Paddock and Stone, PLC |

<u>**CERTIFICATE OF SERVICE**</u>

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on January 8, 2016, he caused a copy of the foregoing ***CITY OF DETROIT'S RESPONSE IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT AND ORDER, PURSUANT TO SECTIONS 105 AND 502 OF THE BANKRUPTCY CODE, APPROVING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES TO PROMOTE THE LIQUIDATION OF CERTAIN PREPETITION CLAIMS AGAINST GREGORY PHILLIPS AND/OR DOMINIQUE MCCARTHA AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF GREGORY PHILLIPS, DECEASED*** to be served upon counsel via electronic mail and first class mail as follows:

Shawn C. Cabot
Christopher Trainor & Associates
9750 Highland Road
White Lake, MI 48386

shawn.cabot@cjtrainor.com

Dated: January 8, 2016

              By: /s/ Marc N. Swanson
              Marc N. Swanson (P71149)
              150 West Jefferson, Suite 2500
              Detroit, Michigan 48226
              Telephone: (313) 496-7591
              Facsimile: (313) 496-8451
              swansonm@millercanfield.com