## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CITY OF DETROIT'S MOTION AGAINST SEAN T. LEWIS FOR VIOLATION OF THE AUTOMATIC STAY AND DISMISSAL OF THE LAWSUIT FILED IN WAYNE COUNTY CIRCUIT COURT**

The City of Detroit ("City"), by its undersigned counsel, files this Motion against Sean T. Lewis for Violation of the Automatic Stay and Dismissal of the Lawsuit Filed in Wayne County Circuit Court ("Motion").  In support of this Motion, the City states as follows:

**I.      Introduction**

1.      In violation of the automatic stay and orders extending the stay to claims against City employees, on October 20, 2013, Sean Lewis ("Plaintiff") filed a lawsuit against the City and several officers of the City based on an alleged prepetition incident.  Due to the Plaintiff's stay violation, the lawsuit should be dismissed because the filing of the complaint is void.

**II.      Factual Background**

**A.      The Automatic Stay in the City's Bankruptcy Case**

2.      On July 18, 2013 ("Petition Date"), the City commenced this chapter 9 case.

3.      On July 19, 2013, the City filed its (i) Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non-Officer Employees and (C) Agents and Representatives of the Debtor [Doc. No. 56] ("Stay Extension Motion") and (ii) Motion of Debtor, Pursuant to Section 105(a)

of the Bankruptcy Code, for Entry of an Order Confirming the Protections of Sections 362, 365 and 922 of the Bankruptcy Code [Doc. No. 53] ("Stay Confirmation Motion").

4.        The Stay Confirmation Motion explained that upon the commencement of a bankruptcy case, section 362 of the Bankruptcy Code provides for a stay of certain actions by creditors and other non-debtor third parties. The automatic stay is supplemented in a chapter 9 case by section 922(a) of the Bankruptcy Code, which provides as follows:

> A petition filed under this chapter operates as a stay, in addition to the stay provided by section 362 of this title, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor; and
>
> (2) the enforcement of a lien on or arising out of taxes or assessments owed to the debtor.

11 U.S.C. § 922(a).  Consequently, in a chapter 9 case, section 922 of the Bankruptcy Code extends the self-executing protections of section 362 of the Bankruptcy Code to, among other things, actions against officers and inhabitants of the debtor to enforce claims against the debtor.

5.        On July 25, 2013, this Court entered orders approving the Stay Extension Motion [Doc. No. 166] ("Stay Extension Order") and the Stay Confirmation Motion [Doc. No. 167] ("Stay Confirmation Order").

6.        The Stay Confirmation Order stayed all persons from "commencing or continuing a judicial, administrative, or other action or proceeding against an officer or inhabitant of the City, including the issuance of employment of process, that seeks to enforce a claim against the City."  Stay Confirmation Order ¶ 4(a).  The Stay Confirmation Order emphasized that the protections set forth in the previous sentence apply in all respect to "the City Officers, in whatever capacity each of them may serve." Stay Confirmation Order ¶ 5.

25612254.3\022765-00213

### B. The Bar Date Order

7.      On November 21, 2013, this Court entered its Order, Pursuant to Sections 105, 501, and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof ("Bar Date Order").  [Doc. No. 1782].

8.      The Bar Date Order established February 21, 2014 ("General Bar Date") as the deadline for filing claims against the City.  The Plaintiff received personalized notice of the Bar Date Order.  Supplemental Certificate of Service, p. 3 [Doc. No. 2761].  The Plaintiff did not file a proof of claim in the City's bankruptcy case.

### C. The City's Plan of Adjustment

9.      On October 22, 2014, the City filed the Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (October 22, 2014) [Doc. No. 8045] ("Plan").  On November 12, 2014, this Court entered an order confirming the Plan [Doc. No. 8272] ("Confirmation Order").

10.     The Plan provides that this Court

…will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 9 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

…

O.      Enforce or clarify any orders previously entered by the Bankruptcy Court in the Chapter 9 Case.

Plan, Art. VII.O, pp. 69-70.

11.     The Confirmation Order also provides that all prior orders entered in the City's bankruptcy case shall be binding upon and shall inure to the benefit of the City and any other parties expressly subject thereto.  Confirmation Order, ¶ T.69, p. 114.

25612254.3\022765-00213

### D. Plaintiff's State Court Action

12. On December 20, 2013, the Plaintiff filed a complaint ("Complaint") in Wayne County Circuit Court ("State Court Lawsuit") against the City of Detroit, Detroit Police Department,[1] Benny Napoleon, Chief of Police, Detroit Police Officer Christopher Meredyk, and Detroit Police Officer Kimberly Williams. The Complaint is attached as Exhibit 6A. The Complaint seeks damages on account of an alleged incident that occurred on January 1, 2012. Complaint ¶ 16.

13. On February 13, 2014, the City filed a Notice of Suggestion of Bankruptcy and Automatic Stay in the State Court Lawsuit. Exhibit 6B. On April 4, 2014, the State Court Lawsuit was administratively closed by the state court due to the automatic stay in effect during the City's bankruptcy. *See* Exhibit 6C.

## III. Argument

14. The State Court Lawsuit was filed in violation of the automatic stay. The automatic stay applied to the Plaintiff's claims against the City under Bankruptcy Code § 362 and also applied to the Plaintiff's claims against the other named defendants pursuant to the Stay Extension and Confirmation Orders and Bankruptcy Code § 922.

15. In *Easley v. Pettibone*, the Sixth Circuit held that actions taken in violation of the stay are "invalid and voidable and shall be voided absent limited equitable circumstances." *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 911 (6th Cir. 1993). Before *Easley*, the rule in the Sixth Circuit was that actions taken in violation of the automatic stay were void. *Id.* at 909 (*citing In re Potts,* 142 F.2d 883, 888, 890 (6th Cir.1944), *cert. denied,* 324 U.S. 868, 65 S.Ct. 910, 89 L.Ed. 1423 (1945), *but see In re Smith,* 876 F.2d 524 (6th Cir.1989)).

---

[1] The Detroit Police Department cannot be sued because it is not a legal entity.

25612254.3\022765-00213

16.     In *Easley*, the Sixth Circuit changed its position for two reasons: First, bankruptcy courts may annul the stay retroactively to validate actions taken by a party at a time when he or she was unaware of the stay.  *Id.* at 909-10.  The *Easley* court reasoned that if it was to give effect to the statutory authority to annul a stay, such actions can only be described as invalid and voidable, since void actions are incapable of later cure of validation.  *Id.* at 910.

17.     The second reason for concluding that actions in violation of the automatic stay are voidable rather than void was the recognition by several circuits of a narrow equitable exception to the operation of the stay.   *Easley*, 990 F.2d at 910 (*citing In re Calder*, 907 F.2d 953 (10th Cir. 1990); *Matthews v. Rosense*, 739 F.2d 249 (7th Cir. 1984); *In re Smith Corset Shops*, 636 F.2d 971 (1st Cir. 1982)).  This equitable exception arises when debtors attempt to use the stay as a shield after an unreasonable delay in asserting the debtor's rights under section 362.

18.     In *In re Calder,* the debtor failed to notify the creditor of his bankruptcy while actively participating in state court litigation.  The Tenth Circuit held "where the debtor unreasonably withholds notice, and where the creditor would be prejudiced, the debtor cannot use the automatic stay provision 'a trump card played after an unfavorable result was reached in state court.'" *Easley*, 990 F.2d at 910 (*quoting In re Calder,* 907 F.2d at 956–57).

19.     None of the limited equitable circumstances apply here.  This case is unlike any of the cases examined by *Easley*, which permitted an equitable exception.   First, the City's bankruptcy filing in July 2013 was massively publicized and the entire world had notice.  Second, the City notified the Plaintiff at the beginning of the State Court Lawsuit that the automatic stay applied when it filed the Notice of Suggestion of Bankruptcy and Automatic Stay in February 2014.   As a result, the State Court Lawsuit was administratively closed in April

2014. The Plaintiff also received notice of the City's bankruptcy case and his right to file a proof of claim in or around February 2014. [Doc. No. 2761]. Nothing in this case justifies invoking the narrow exception in *Easley*.

## IV. Conclusion

For the reasons stated above, the City respectfully requests that this Court enter an order in substantially the same form as the one attached as Exhibit 1, (a) granting the Motion; (b) finding that the Plaintiff violated the automatic stay by filing the Complaint; (c) voiding the filing of the Complaint; and (d) requiring that the Plaintiff dismiss, or cause to be dismissed, the State Court Lawsuit. The City sought, but did not obtain, concurrence to the relief requested in the Motion.

25612254.3\022765-00213

January 11, 2016      Respectfully submitted,

By: /s/ Marc N. Swanson
  Jonathan S. Green (P33140)
  Marc N. Swanson (P71149)
  MILLER, CANFIELD, PADDOCK AND
  STONE, P.L.C.
  150 West Jefferson, Suite 2500
  Detroit, Michigan 48226
  Telephone: (313) 496-7591
  Facsimile: (313) 496-8451
  green@millercanfield.com
  swansonm@millercanfield.com

    and

  Charles N. Raimi (P29746)
  Deputy Corporation Counsel
  City of Detroit Law Department
  2 Woodward Avenue, Suite 500
  Coleman A. Young Municipal Center
  Detroit, Michigan 48226
  Telephone: (313) 237-5037
  Facsimile: (313) 224-5505
  raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## EXHIBIT LIST

| | |
|---|---|
| Exhibit 1 | Proposed Order |
| Exhibit 2 | Notice |
| Exhibit 3 | None |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | None |
| Exhibit 6A | Complaint |
| Exhibit 6B | Notice |
| Exhibit 6C | Docket of State Court Lawsuit |

**EXHIBIT 1 – PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**ORDER GRANTING CITY OF DETROIT'S MOTION AGAINST SEAN T. LEWIS FOR VIOLATION OF THE AUTOMATIC STAY AND DISMISSAL OF THE LAWSUIT FILED IN WAYNE COUNTY CIRCUIT COURT**

This matter, having come before the court on the City of Detroit's Motion against Sean T. Lewis for Violation of the Automatic Stay and Dismissal of the Lawsuit filed in Wayne County Circuit Court  ("Motion"); upon proper notice and a hearing; the Court being fully advised in the premises; and there being good cause to grant the relief requested,

**IT IS HEREBY FOUND AND CONCLUDED THAT** Sean T. Lewis violated the automatic stay in the above captioned bankruptcy case by filing a complaint ("Complaint") and commencing case number 13-016394, in Wayne County Circuit Court, Michigan ("State Court Lawsuit").

**ACCORDINGLY, THE COURT ORDERS THAT:**

1.      The Motion is granted.

2.      The Complaint is void.

3.      Within five days of the entry of this Order, Sean T. Lewis must dismiss, or cause to be dismissed, the State Court Lawsuit.

4.      The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

**EXHIBIT 2 – NOTICE**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| In re: | Bankruptcy Case No. 13-53846 |
|---|---|
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CITY OF DETROIT'S MOTION AGAINST SEAN T. LEWIS FOR VIOLATION OF THE AUTOMATIC STAY AND DISMISSAL OF THE LAWSUIT FILED IN WAYNE COUNTY CIRCUIT COURT**

The City of Detroit has filed its Motion Against Sean T. Lewis for Violation of the Automatic Stay and Dismissal of the Lawsuit Filed in Wayne County Circuit Court.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney.**

If you do not want the Court to enter an Order granting the City of Detroit's Motion Against Sean T. Lewis for Violation of the Automatic Stay and Dismissal of the Lawsuit Filed in Wayne County Circuit Court, within 14 days, you or your attorney must:

1.  File with the court a written response or an answer, explaining your position at:[2]

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above.  You must also mail a copy to:

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson

---

[2]  Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2.   If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
       Marc N. Swanson (P71149)
       150 West Jefferson, Suite 2500
       Detroit, Michigan 48226
       Telephone: (313) 496-7591
       Facsimile: (313) 496-8451
       swansonm@millercanfield.com

Dated:  January 11, 2016

- 2 -

**EXHIBIT 3 – NONE**

**EXHIBIT 4 – CERTIFICATE OF SERVICE**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 11, 2016, that the foregoing Motion Against Sean T. Lewis for Violation of the Automatic Stay and Dismissal of the Lawsuit Filed in Wayne County Circuit Court was filed and served via the Court's electronic case filing and notice system and upon counsel as listed below, via first class mail and electronic mail:

Larry R. Polk
65 Cadillac Bldg, Ste 2605
Detroit, MI 48226-2842
Lpolk14405@aol.com

DATED: January 11, 2016

By: /s/ Marc N. Swanson
    Marc N. Swanson
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

**EXHIBIT 5 – NONE**

# **EXHIBIT 6A – COMPLAINT**

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS AND<br>RETURN OF SERVICE | CASE NO.<br>13-016394-NO |
|---|---|---|

2 Woodward Ave., Detroit MI 48226

Court Telephone No. 313-224-2444

**THIS CASE IS ASSIGNED TO JUDGE**    Maria L. Oxholm    **Bar Number: 42619**

| Plaintiff<br><br>LEWIS, SEAN T. | v | Defendant<br><br>CITY OF DETROIT, DETROIT POLICE DEPARTMENT |
|---|---|---|
| Plaintiff's Attorney<br><br>Larry R. Polk, P-48164<br>65 Cadillac Sq Ste 2605<br>Detroit, MI 48226-2842 | | Defendant's Attorney |

| CASE FILING FEE | JURY FEE |
|---|---|
| X    Case Filing Fee - $150.00 | X    Jury Fee - $85.00 |

| ISSUED | THIS SUMMONS EXPIRES | DEPUTY COUNTY CLERK |
|---|---|---|
| 12/20/2013 | 3/21/2014 | File & Serve Tyler |

*This summons is invalid unless served on or before its expiration date.    CATHY M. GARRETT - WAYNE COUNTY CLERK

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.

2. YOU HAVE 21 DAYS after receiving this summons to file an answer with the court and serve a copy on the other party or take other lawful action (28 days if you were served by mail or you were served outside this state).

3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

X    There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

___ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

___ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

___ An action within the jurisdiction of the family division of circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The docket number and assigned judge of the civil/domestic relations action are:

| Docket No. | Judge | Bar No. |
|---|---|---|
| | | |

The action ☐ remains ☐ is no longer pending.

I declare that the complaint information above and attached is true to the best of my information, knowledge, and belief.

_____      _____
Date                               Signature of attorney/plaintiff

**COMPLAINT IS STATED ON ATTACHED PAGES. EXHIBITS ARE ATTACHED IF REQUIRED BY COURT RULE.**

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01-3CC (09/2008) SUMMONS AND RETURN OF SERVICE

MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a)(b), MCR 3.206(A)

STATE OF MICHIGAN
IN THE 3rd CIRCUIT COURT FOR THE COUNTY OF WAYNE

SEAN TAVARIS LEWIS,

           Plaintiff,

                                            CASE NO.: 13
V                                      HON.

CITY OF DETROIT, DETROIT POLICE DEPARTMENT,
BENNY NAPOLEON, Chief of Police, CHRISTOPHER
MEREDYK, individually and in his capacity as a Police
Officer of the Detroit Police Department, and KIMBERLY
WILLIAMS, individually and in her capacity as a Police
Officer of the Detroit Police Department,

                        Jointly and severally,

                            Defendants.

13-016394-NO
FILED IN MY OFFICE
WAYNE COUNTY CLERK
12/20/2013 3:01:49 PM
CATHY M. GARRETT

_____/

## COMPLAINT AND JURY DEMAND

There is no pending or resolved civil action
arising out of the transaction or occurrence
alleged in the complaint.

_____

### LARRY R. POLK (P48164)

NOW COMES, Plaintiff, **SEAN T. LEWIS** by and through his attorneys, , **LILLIAN DIALLO**

and **LARRY R. POLK**, and hereby files his Complaint for Assault & Battery by Use of Excessive

Force pursuant to 42 U.S.C. § 1983 and claims under 42 U.S.C. § 1985 against the above-named

Defendant in the above-entitled action and states in support as follows:

<u>JURISDICTION AND VENUE</u>

Page **1** of **32**

1.     Jurisdiction of this court arises as the assault and battery and other claims occurred in the City of Detroit, County of Wayne, Michigan.

2.     Under U.S. Const. Art. III §2, this Court has jurisdiction because the rights sought to be protected herein are secured by the United States Constitution.

3.     Venue is proper under 42 U.S.C. § 1391(e) as to all Defendants because Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS, are officers of agencies of the Detroit Police Department sued in their individual capacities because said Defendants employed reckless

4.     The amount in controversy exceeds $25,000, exclusive of interest and costs.

## PARTIES

5.     Plaintiff, SEAN TARVARIS LEWIS, ("Lewis"), is a resident of Wayne County, and was at all times relevant, a citizen of the United States.

6.     Defendant, CITY OF DETROIT ("City") is a chartered municipal corporation in the State of Michigan.

7.     Defendant, DETROIT POLICE DEPARTMENT ("DPD") is a law enforcement agency operated by the City.

8.     Defendant, BENNY NAPOLEON, is a citizen and resident of Wayne County, Michigan and was at all times material to the allegations in this Complaint, employed as the Chief of Police by the Detroit Police Department in Wayne County, Michigan, and is responsible for the supervision and training the Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS.

9.     Defendant (No. 1) CHRISTOPHER MEREDYK, is a citizen and resident of Wayne, County, Michigan, and at all material times to the allegations set forth in this Complaint, acting in his capacity as a Police Officer employed by the City of Detroit, and was acting under color of state law.

10. Defendant CHRISTOPHER MEREDYK is being sued in his official and individual capacity.

11. Defendant (No. 2), KIMBERLY WILLIAMS, is a citizen and resident of Wayne, County, Michigan and at all material times to the allegations set forth in this Complaint, acting in capacity as a Police Officer employed by the City of Detroit, and was acting under color of state law.

12. Defendant KIMBERLY WILLIAMS is being sued in her official and individual capacity.

13. Defendant, CITY OF DETROIT is a political subdivision of the State of Michigan, for which Defendants CHRISTOPHER MEREDKY and KIMBERLY WILLIAMS, serve as police officers, and BENNY NAPOLEON served as Chief of Police.

14. Defendant, DETROIT POLICE DEPARTMENT has established or delegated to Defendant BENNY NAPOLEON the responsibility for establishing and implementing policies, practices, procedures, and customs used by law enforcement officers employed by City of Detroit regarding arrests and the use of force.

15. Defendant, BENNY NAPOLEON, as the Chief of the Detroit Police Department is further, responsible for making and/or implementing policies and practices used by law enforcement officers employed by the City of Detroit, Michigan regarding arrests and the use of force.

## FACTUAL BACKGROUND

16. On January 1, 2012, between the hours of 12:15 a.m., and 2:00 a.m., Lewis, along with (four) other family members, were celebrating New Years at an apartment located at 11421 Dexter, Detroit, Michigan.

17. On the referenced date, Plaintiff Lewis visited the apartments of his cousin, CHERRONE HAYES-MCCARY and her mother, EVELYN DELORIS JONES.

18. WALTER DROMES is a former boyfriend residing with EVELYN DELORIS JONES at the Dexter apartment building.

19. On the subject date, CHERRONE HAYES-MCCARY and her two (2) daughters, NADINE MCCARY and LAMEASHA MCFADDEN went to her the apartment of EVELYN D. JONES, her mother, to wish her a "Happy New Year".

20. During their visit with EVELYN D. JONES, Ms. Jones' former boyfriend, WALTER DROMES engaged in a verbal confrontation with CHERRONE HAYES-MCCARY and her daughters.

21. CHERRONE HAYES-MCCARY and her daughters left EVELYN D. JONES' apartment to return to Ms. McCray's apartment.

22. At which time, WALTER DROMES also left the referenced apartment and proceeded to follow Ms. McCray and her daughters to their apartment, while continuing to engage in heated verbal exchange.

23. During the referenced verbal exchange between Ms. McCray, her daughters and Walter Dromes, Plaintiff Lewis was returning from the store when was confronted with the situation. .

24. Plaintiff attempted to mediate the situation or at a minimum, separate the parties in an effort to prevent the escalation of the argument for which WALTER DROMES threaten Plaintiff.

25. Due to the escalation of the situation, Plaintiff LEWIS, CHERRONE HAYES-MCCARY and her daughters attempted to retreat to their apartment.

Page **4** of **32**

26. After entering CHERRONE HAYES-MCCARY's apartment, WALTER DROMES continued to threaten them and engage in a verbal confrontation in the hallway.

27. Plaintiff retrieved an empty shotgun to protect the threatening WALTER DROMES.

28. At the time the police arrived at the scene, Defendant, CHRISTOPHER MEREDYK stated in his preliminary complaint report to exiting the elevator on the 12th Floor and observing Plaintiff inside an apartment with a shotgun and threatening another man standing inside the "threshold" of the apartment.

28. Defendant, CHRISTOPHER MEREDYK stated to ordering the Plaintiff to drop the weapon and Plaintiff proceed to "turn around".

29. At this point, Defendant, CHRISTOPHER MEREDYK further stated to observing the Plaintiff move in his direction with the shotgun pointed in his direction.

30. Defendant, CHRISTOPHER MEREDYK reported to firing only two (2) shots from his Smith & Wesson M & P .40 as the reason for the shooting.

31. Defendant KIMBERLY WILLIAMS stated in her preliminary complaint report to exiting the elevator on the 12th floor and observing a crowd of people in front of an apartment, to hearing her partner, Co-Defendant, CHRISTOPHER MEREDYK identify himself as police officer and order someone to put down a weapon.

32. Defendant KIMBERLY WILLIAMS stated to "turning around" and observing Plaintiff with a weapon with both hands at his chest, Plaintiff's alleged refusal to drop the weapon and Plaintiff's alleged movement in her and her partner's direction, aiming the weapon directly at Defendants.

33.     Defendant KIMBERLY WILLIAMS stated to firing only two (2) shots from her department issued Smith and Wesson M & P 40 because she feared for her and her partner, CHRISTOPHER MEREDYK lives as the reason for the shooting.

34.     The DETROIT POLICE DEPARTMENT evidence technicians reported to collecting 14 (fourteen) .40-caliber casings at the scene.

35.     That the medical report states that Plaintiff LEWIS was shot 14 times.

36.     Plaintiff did not pose a threat to the Defendants CHRISTOPHER MEREDKY or KIMBERLY WILLIAMS nor to the safety of citizens.

37.     Plaintiff was not facing the Defendants nor pointing the empty weapon in the direction of the Defendants.

38.     At all times before and after he was shot, Lewis was defenseless, made no furtive gestures or movements, complied with the officers' demands, and did not attempt to flee or resist the police.

39.     Defendants CHRISTOPHER MEREDKY and KIMBERLY WILLIAMS repeatedly fired 14 rounds of 40 caliber bullets at the body of LEWIS, causing severe injuries to his left arm, including, but not limited to, his elbow, back arm, inner arm, and forearm.

40.     The rounds were fired at, and not limited to; Plaintiff's back, causing his painful and permanent injuries. .

41.     Defendants CHRISTOPHER MEREDKY and KIMBERLY WILLIAMS purposely, knowingly, recklessly, improperly and without cause used excessive force by firing approximately fourteen (14) rounds at Plaintiff, causing his permanent injuries.

42.     Defendants fired 14 rounds of .40 caliber bullets at Plaintiff. That ___ of the 14 rounds entered Plaintiff's body. .

43. Moreover, subsequent to the shooting, Defendants continued to mischaracterize the events surrounding LEWIS's shooting by representing that LEWIS was armed, that he pointed the referenced unloaded firearm (shot gun) directly at both Defendants, individually, and that the two Defendants returned fire in self-defense.

44. The bullets discharged from Officers CHRISTOPHER MEREDKY CHRISTOPHER MEREDKY and KIMBERLY WILLIAMS 'guns struck LEWIS on the left side of his face in a trajectory consistent with Defendants aiming their .40-caliber weapons directly at Plaintiff's back. The bullets exited through the upper neck and reentered LEWIS' body through his left lower neck/clavicle region, entering the left ventricle of LEWIS' heart and left lung.

45. After intentionally shooting Plaintiff, Defendants contacted their supervisor and called EMS.

46. Paramedics observed LEWIS lying on his stomach on the floor bleeding with a pool of blood near him. The paramedics turned LEWIS on his back and began to render medical care.

47. That Defendants' explanations or stories provide in support of the shooting are fundamentally inconsistent with the physical evidence and forensic analysis, and contrary to the laws of physics.

## COUNT- I
### (ASSAULT AND BATTERY)

48. Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 16-47of this Complaint as if fully stated herein.

49. The elements of assault and battery are: An assault is "any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the

person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." Espinoza v Thomas, 189 Mich App 110, 119; 472 NW2d 16 (1991).

50. Battery is defined as "the willful and harmful or offensive touching of another person which results from an act intended to cause such contact." Id. [Smith v Stolberg, 231 Mich App 256, 260; 586 NW2d 103 (1998).]

51. Defendants CHRISTOPHER MEREDKY and KIMBERLY WILLIAMS repeatedly fired 14 rounds of 40 caliber bullets at the body of LEWIS, causing severe injuries to his left arm, including, but not limited to, his elbow, back arm, inner arm, and forearm.

52. The rounds were fired at, and not limited to; Plaintiff's back, causing his painful and permanent injuries. .

Defendant, CHRISTOPHER MEREDYK breached the duty to exercise due care towards Plaintiff LEWIS.

53. Defendant, KIMBERLY WILLIAMS breached the duty to exercise due care towards Plaintiff LEWIS.

54. Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS acts or omissions to act constituting breach of duty.

55. Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS aimed their department issued .40-caliber weapons at Plaintiff and fired fourteen (14) rounds at Plaintiff's body.

56. Defendant intended to cause and did cause a harmful contact with defendant's person.

57. Plaintiff did not provoke Defendants' actions.

58. Plaintiff LEWIS did not pose a threat to the Defendants or the safety of citizens.

59. Plaintiff LEWIS was not facing the Defendants nor pointing the empty weapon in the direction of the Defendants.

60. Defendants CHRISTOPHER MEREDKY and KIMBERLY WILLIAMS purposely, knowingly, recklessly, improperly and without cause used excessive force by firing approximately fourteen (14) rounds at Plaintiff LEWIS, causing his permanent injuries.

61. Defendant, CHRISTOPHER MEREDYK intended to cause and did cause a harmful contact with Plaintiff's person.

62. Defendant, KIMBERLY WILLIAMS intended to cause and did cause a harmful contact with Plaintiff's person.

63. As a direct and proximate result of Defendant, CHRISTOPHER MEREDYK'S conduct, Plaintiff suffered _____

64. As a direct and proximate result of Defendants, KIMBERLY WILLIAMS' conduct, Plaintiff suffered _____

65. Plaintiff has also suffered extreme mental anguish and physical pain. _____

66. Plaintiff is informed and believes, and on that basis alleges, that plaintiff has suffered a permanent disability.] These injuries have caused plaintiff to suffer general damages in _____ [the amount of $__ or, an amount to be determined by proof at trial].

67. Defendants actions were done knowingly, willfully, and with malicious intent, and plaintiff is entitled to punitive damages in an amount to be determined by proof at trial.

68. Defendants intended to cause and did cause plaintiff to suffer apprehension of an immediate harmful contact.

WHEFEFORE, Plaintiff, SEAN T. LEWIS requests a judgment against Defendants for compensatory damages in whatever amount the jury finds necessary, and further demands a judgment against individual Defendants for punitive damages for whatever amount the jury finds necessary, plus all such other relief this Court deems just and equitable, including costs and attorneys' fees incurred in this action

<div align="center">

COUNT-II
(GROSS NEGLIGENCE)

</div>

69. Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 16-68 of this Complaint as if fully stated herein.

70. Defendants CHRISTOPHER MEREDKY and KIMBERLY WILLIAMS repeatedly fired 14 rounds of 40 caliber bullets at the body of LEWIS, causing severe injuries to his left arm, including, but not limited to, his elbow, back arm, inner arm, and forearm.

71. The rounds were fired at, and not limited to; Plaintiff's back, causing his painful and permanent injuries. .

72. Defendant, CHRISTOPHER MEREDKY's conduct's was so reckless as to demonstrate a substantial lack of concern for whether an injury results.

73. Defendant, KIMBERLY WILLIAM's conduct's was so reckless as to demonstrate a substantial lack of concern for whether an injury results.

74. Defendant, CHRISTOPHER MEREDKY's conduct and action were a willful disregard of safety measures and a similar disregard for substantial risks.

75. Defendant, KIMBERLY WILLIAM's conduct and action were a willful disregard of safety measures and a similar disregard for substantial risks.

76. Defendants failed to use the standard kind of force that is intended to control situation.

77.     As a direct and proximate result of the negligence of Defendants as set forth above, plaintiff sustained injuries.

78.     As a further direct and proximate result of the negligence of Defendants as set forth above, plaintiff sustained the serious injuries and damages:

WHEFEFORE, Plaintiff, SEAN T. LEWIS requests a judgment against Defendants for compensatory damages in whatever amount the jury finds necessary, and further demands a judgment against individual Defendants for punitive damages for whatever amount the jury finds necessary, plus all such other relief this Court deems just and equitable, including costs and attorneys' fees incurred in this action.

<div align="center">

COUNT III
Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
(GENERAL ALLEGATIONS)

</div>

79.     Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 16-78 of this Complaint as if fully stated herein.

80.     In committing the acts complained of herein, Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS acted under color of state law to deprive Plaintiffs of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the Constitution of the United States including, but not limited to:

(a) the right not to be deprived of liberty without due process of law;
(b) the right to be free from excessive use of force by persons acting under color of state law;
(c) the right to be free from false arrest; and
(d) the right to just compensation for violation of civil rights;

81.     In the violating of Plaintiff's rights as set forth above and other rights that will be proven at trial, Defendants CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS acted under color of state law and set into motion the chain of events that led to an unauthorized and

<div align="center">

Page **11** of **32**

</div>

unreasonable use of excessive force in violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

82.     As a direct and proximate result of the violation of their constitutional rights by the Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS, Plaintiff suffered general and special damages as alleged in this Complaint and are entitled to relief under 42 U.S.C §1983.

83.     The conduct of Defendants CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS was willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

84.     Plaintiff further alleges that those Defendants conspired to conceal the facts of that shooting was reckless to intentionally penalize the Plaintiff and deceive the public in an attempt to avoid responsibility and accountability

WHEFEFORE, Plaintiff, SEAN T. LEWIS requests a judgment against Defendants for compensatory damages in whatever amount the jury finds necessary, and further demands a judgment against individual Defendants for punitive damages for whatever amount the jury finds necessary, plus all such other relief this Court deems just and equitable, including costs and attorneys' fees incurred in this action.

<u>COUNT- IV</u>
Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
(FAILURE TO IMPLEMENT APPROPRIATE POLICIES, CUSTOMS & PRACTICES)

85.     Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 16-84 of this Complaint as if fully stated herein.

86. Plaintiff further alleges that Defendants, City of Detroit, Detroit Police Department and Chief of Police, Benny Napoleon enforced policies, customs or practices that deprived him of these rights.

87. Defendant, BENNY NAPOLEON, in his capacity as Chief of Police of the Detroit Police Department, and the Defendant, City of Detroit, implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices, that included, among other things, of allowing employees of the Detroit Police Department to confront canines without any reasonable animal behavior training and in such a way as to cause the destruction of citizens' canine pets without lawful justification.

88. Defendant, BENNY NAPOLEON, in his capacity as Chief of Police of the Detroit Police Department, and the Defendant, City of Detroit, implicitly or explicitly adopted and implemented a careless and reckless policy, custom, or practice of allowing employees of the Detroit Police Department to confront canines by use of excessive lethal force where less severe alternatives existed.

89. The failure of the Chief of Police, BENNY NAPOLEON, and the City of Detroit to adequately train and supervise the Defendants CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS amounts to deliberate indifference to the rights of the Plaintiff to be free from excessive force and unreasonable seizures under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

90. As a result of this deliberate indifference to the Plaintiff's rights, Plaintiff suffered personal and permanent injuries and is entitled to relief under 42 U.S.C. §1983.

WHEFEFORE, Plaintiff, SEAN T. LEWIS requests a judgment against Defendants for compensatory damages in whatever amount the jury finds necessary, and further demands a

judgment against individual Defendants for punitive damages for whatever amount the jury finds necessary, plus all such other relief this Court deems just and equitable, including costs and attorneys' fees incurred in this action.

## COUNT- V
### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
### (NEGLIGENT TRAINING & SUPERVISION)

91.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 16-90 of this Complaint as if fully stated herein.

92.    Plaintiff alleges that municipalities may also be held liable under §1983 if there is an official policy, practice, or custom that causes a constitutional injury. Monell v. Dep't. of Soc. Serv., 436 U.S. 658, 690 (1978); Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986).

93.    The above failures constitute a deliberate indifference in the failure to train police officers.

94.    Plaintiff alleges that such deliberate indifference is demonstrated when "in light of the past shootings and complaints for excessive force, the policy makers of the City of Detroit and Detroit Police Department knew or should have known there existed a need for more or different training and the inadequacy to train or implement a different training would ultimately result in the violation of the constitutional rights of law abiding citizens or otherwise.

95.    Defendants training program was (1) inadequate, (2) the municipality's deliberate indifference caused the inadequacy, and (3) the inadequacy was closely related to or actually caused the plaintiff's injury.

96.    Defendant, CITY OF DETROIT's failure to train employees may subject it to liability under § 1983. City of Canton v. Harris, 489 U.S. 378, 387 (1989).

Page **14** of **32**

97. Defendant, CITY OF DETROIT is liable where its failure to train reflects a 'deliberate' or 'conscious' choice" by the municipality.

98. Defendants failed to provide adequate training in light of foreseeable consequences that could result from the lack of instruction.

99. Defendants failed to act in response to repeated complaints of constitutional violations by its officers regarding use of unreasonable or excessive force.

100. . Prior to January 1, 2012, the Defendants, CITY OF DETROIT and DETROIT POLICE DEPARTMENT's policy makers knew or should have known that their police officers had in the past, and would in the future, be faced with situations similar to the circumstances and facts heretofore alleged wherein the police officers could inflict unreasonable force, despite the fact the Plaintiff:

a. Posed no immediate danger to the police officers or others;

b. Shot gun did not have ammunition; and

c. Plaintiff's back was to the Defendants.

101. Defendants, CITY OF DETROIT, DETROIT POLICE DEPARTMENT, and BENNY NAPOLEON, negligently supervised Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS by failing to provide proper training and outline proper procedure in confronting domestic disputes and discharging of weapons.

102. In committing the aforementioned acts or omissions, each Defendant negligently breached said duty to use due care, which directly and proximately resulted in the injuries and damages to Plaintiffs as alleged herein.

103. In 2003, the United States brought an action under 42 U.S.C. § 14141 to remedy a pattern or practice of conduct by law enforcement officers of the Detroit Police Department that

deprives persons of rights, privileges, and immunities secured or protected by the Constitution or laws of the United States.

104. Again, Defendants, through their acts and omissions, are engaging in a pattern or practice of conduct by Detroit Police Department officers of subjecting individuals to uses of excessive force, false arrests, illegal detentions, and unconstitutional conditions of confinement.

105. Defendants, CITY OF DETROIT, DETROIT POLICE DEPARTMENT and BENNY NAPOLEON have failed to:

a.    adequately train,
b.    supervises, and monitors police officers;
c.    to investigate, review and evaluate use of force incidents;
d.    to investigate alleged misconduct, and discipline officers who are guilty of misconduct;
e.    to review and evaluate the basis of unlawful shootings and secure timely judicial review of such arrests;
f.    to protect citizens from undue risks of harm; and
g.    to implement effective systems to ensure that management controls adopted by the Defendant, DPD are properly followed.

106. Defendants, through their acts or omissions, have engaged in and continue to engage in a pattern or practice of conduct by DPD officers of using excessive force against persons in Detroit.

107. Defendants, through their acts or omissions, have engaged in and continue to engage in a pattern or practice of conduct by DPD officers of unlawfully and recklessly shooting innocent persons in Detroit.

108. Defendants, through their acts or omissions, have engaged in and continue to engage in a pattern or practice of conduct by DPD officers of failing to secure timely judicial review of the reckless shootings of persons in Detroit.

109. Defendants are, through their acts or omissions, engaging in a pattern or practice of systemic deficiencies that has resulted in the pattern or practice by DPD officers that deprives

persons of rights, privileges, and immunities secured or protected by the Constitution or laws of the United States described in paragraphs above.

110. Defendant, DETROIT POLICE DEPARTMENT failed to provide, under the color of State law adequate training to its officers regarding procedures and methods to avoid the infliction of unreasonable force on person seized or person complying with an officer's demand not to move, and poses no apparent or immediate threat of harm, including, but not limited to, the following:

      a      the proper and reasonable procedures for identifying and assessing a scene prior to restraining and making physical contact with a person;

      b.      the proper and reasonable procedures for the safe and proper method to restrain an individual without causing him great bodily injury or shooting;

      c.      the proper and reasonable procedures to assess whether individuals or non-suspects encountered at the residence pose a danger to the police;

      d.      the proper and reasonable procedures to assess when an officer should or should not be ready to fire his or her weapon;

      e.      the proper and reasonable procedures relating to the use of the safety on a firearm, including requiring officers to set their firearms on safety mode until the moment the officer is ready to fire his weapon;

      f.      the proper and reasonable procedures concerning the placement of an officer's finger outside of the trigger guard when the police encounter an individual or non-suspect that poses no immediate threat;

      g.      the proper and reasonable procedures concerning the placement of a weapon on safety mode when approaching and/or making contact with a person;

h.     the proper and reasonable procedures for encountering, handling, securing, and/or searching an individual or non-suspect for weapons to avoid physical harm, including the use of two officers when physically encountering an individual or non-suspect;

j.     the proper and reasonable procedures for an officer to assess when he or she is "ready to fire" when encountering a person or suspect; and,

k.     the proper and reasonable procedures to make a preliminary assessment of the risk or danger posed by each known person.

111.     That alternative procedures existed which could and should have been implemented that would have prevented the shooting of Plaintiff. Defendants should have been trained in those procedures, including, but not limited to: requiring officers to set their firearms on safety mode, until the moment the officer is ready to fire his weapon when physically encountering an individual or non-suspect.

112.     The shooting of Plaintiff was caused pursuant to the Defendants, CITY OF DETROIT's policy or custom for the inadequate training and supervision of its police officers, including Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS, its failure to provide adequate protocols, and its failure to follow existing protocols.

113.     The reckless or grossly negligent manner in which the Defendants, CITY OF DETROIT and DPD trained and supervised its officers, failed to provide protocols, and failed to follow existing protocols created a high risk of shooting to others, including Plaintiff.

114.     Policymakers for the Defendant, CITY OF DETROIT know to a moral certainty that their police officers, including Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS, would be required to encounter and seize individuals, including individuals present at the scene of domestic disturbance.

115.    Defendants, CITY OF DETROIT and DPD had knowledge of an obvious risk to the constitutional rights of persons that the police would come in contact with and there was a conscious failure to act despite the obvious risk.

116.    The Defendants, CITY OF DETROIT and DPD's negligent failure to train Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS' was a direct and proximate cause of Plaintiff's reckless and negligent shooting.

117.    Plaintiff was deprived of a right guaranteed by the Constitution or laws of the United States by a person acting under color of state law. Flagg Bros. v. Brooks, 436 U.S. 149, 155 (1978)

WHEFEFORE, Plaintiff, SEAN T. LEWIS requests a judgment against Defendants for compensatory damages in whatever amount the jury finds necessary, and further demands a judgment against individual Defendants for punitive damages for whatever amount the jury finds necessary, plus all such other relief this Court deems just and equitable, including costs and attorneys' fees incurred in this action

<u>COUNT- VI</u>
Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
(USE OF UNREASONABLE AND EXCESSIVE FORCE IN VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS TO U.S.C.)

118.    Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 16-117 of this Complaint as if fully stated herein.

119.    The Defendant, City of Detroit, Michigan, has adopted policies, procedures, practices or customs within the Detroit Police Department that allow, among other things, the use of excessive force when other more reasonable and less drastic methods are available.

120.    The Fourth Amendment protects citizens, seized, non-seized or otherwise against unreasonable force claims by governmental agents

121. The actions of Defendant City of Detroit, Michigan amount to deliberate indifference to the rights of Plaintiff to be free from the use of unreasonable or excessive force under the Fourth Amendment to the Constitution of the United States.

122. By the means of Defendants CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS actions of pointing their weapons at Plaintiff and show of excessive force, are within the meaning of the Fourteenth Amendment.

123. Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS deliberate' shooting of Plaintiff Lewis, under the color of State law, was intentional. Defendants CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS:

    a.    Pointed their .40 caliber weapons Plaintiff's back;
    b.    Fired approximately 14 rounds of .40 caliber bullets;
    c.    Discharged their weapons by intentionally applying force to the trigger; and
    d.    With the intention to shoot Plaintiff and to cause him severe physical injury or shooting.

124. Defendants weapons did not discharge due to a malfunction or some force other than the forced applied to the trigger by Defendants' fingers.

125. At the time of the shooting, Plaintiff. SEAN T. LEWIS was:

    a.    defenseless;
    b.    had not committed a crime;
    c.    was not a suspect concerning the commission of a crime;
    d.    was not the target of the domestic disturbance;
    e.    was not armed;
    f.    did not resist the police;
    g.    did not attempt to flee; and
    h.    posed no immediate or future threat of harm to Defendants or any other person.

126. Defendant, CHRISTOPHER MEREDYK intentional use of unreasonable force was excessive and unjustified in violation Plaintiff's right to be free from use of unreasonable and excessive force secured under the Fourth Amendment.

127. As a direct and proximate cause of Defendant CHRISTOPHER MEREDYK's intentional conduct, Plaintiff the subject of excessive force during the course of a seizure in violation of his Fourth Amendment rights and sustained permanent injuries.

128. Defendant, CHRISTOPHER MEREDYK 's violation of Plaintiff's Fourth Amendment right through his intentional use of unreasonable force was clearly established under existing case law or general Fourth Amendment principles and statements of law such that it was apparent to them that his conduct was unlawful and unconstitutional.

129. Defendant, CHRISTOPHER MEREDYK's intentional and excessive use of force was such an obvious and/or apparent violation of the Fourth Amendment general prohibition against unreasonable force that a reasonable officer would not have required prior case law to be on notice that his conduct was unlawful and unconstitutional.

130. A reasonable police officer in CHRISTOPHER MEREDYK's position should or would have understood that his conduct violated Plaintiff's right to be free from the excessive use of unreasonable force.

131. Defendant, KIMBERLY WILLIAMS' intentional use of unreasonable force was excessive and unjustified in violation of Plaintiff' s right to be free from unreasonable seizures of his person secured under the Fourth Amendment.

132. As a direct and proximate cause of Defendant KIMBERLY WILLIAMS' intentional conduct, Plaintiff was the of subject excessive force during the course of a seizure in violation of his Fourth Amendment rights and sustained permanent injuries.

133. Defendant, KIMBERLY WILLIAMS' intentional and excessive use of force was such an obvious and/or apparent violation of the Fourth Amendment general prohibition against

unreasonable force that a reasonable officer would not have required prior case law to be on notice that her s conduct was unlawful and unconstitutional.

134. Defendant, KIMBERLY WILLIAMS' violation of Plaintiff's <u>Fourth Amendment</u> right through her intentional use of unreasonable force was clearly established under existing case law or general <u>Fourth Amendment</u> principles and statements of law such that it was apparent to them that his conduct was unlawful and unconstitutional.

135. A reasonable police officer in KIMBERLY WILLIAMS' position should or would have understood that her conduct violated Plaintiff's right to be free from the excessive use of unreasonable force.

136. Plaintiff's shooting was without provocation, justification or probable cause by Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS.

137. Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS owed Plaintiff a duty to use due care under the United States Constitution, and the laws of the State of Michigan. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and M.C.L.A. 691.1407(2).

138. Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS violated that duty and other federal legal obligations by their excessive use of force and by demonstrating a deliberate indifference to whether Plaintiff would suffer injury or permanent and serious injuries by firing 14 rounds of .40 caliber bullets at the Plaintiff, when he offered no threat, causing his shooting.

139. Plaintiff suffered serious and permanent injuries and economic losses, medical expenses as a direct and proximate result of the actions of Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS on January 1, 2012, described above.

140.    Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS violated Plaintiff's constitutionally protected rights under the Fourth Amendment to the United States Constitution, including, but not limited to:

(1) the right to be free from the use of excessive force, and

(2) the right not to be deprived of liberty and life without due process.

141.    Plaintiff, SEAN T. LEWIS, is entitled to damages under M.C.L.A. 691.1407(2), requests all damages that are fair and just, including, without limitation, the following:

i. Reasonable medical expenses;

ii. Reasonable compensation for conscious pain and suffering, and pain and physical injuries; and,

iii. Losses including the loss of financial support, loss of services, loss of consortium, loss of gifts and other valuable gratuities, loss of parental training and guidance, loss of society and companionship, and all other losses suffered.

WHEFEFORE, Plaintiff, SEAN T. LEWIS requests a judgment against Defendants for compensatory damages in whatever amount the jury finds necessary, and further demands a judgment against individual Defendants for punitive damages for whatever amount the jury finds necessary, plus all such other relief this Court deems just and equitable, including costs and attorneys' fees incurred in this action.

COUNT- VII
Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
(DEPRIVATION OF SUBSTANTIVE DUE PROCESS, RECKLESS AND CALLOUS INDIFFERENCE TO PLAINTIFF'S RIGHTS UNDER FOURTEENTH AMENDMENT OF U.S.C.)

142. Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 16-141 of this Complaint as if fully stated herein.

143. The Fourteenth Amendment protects citizens against deprivation of life, liberty, or property without due process of law.

144. At the time of the shooting, Plaintiff was located inside of an apartment with his back facing the Defendants.

145. Plaintiff did not instigate the domestic disturbance nor was one of the primary parties to the disturbance.

146. At the time of his shooting, Plaintiff was the peacemaker and attempting to break up and/or end an escalating verbal argument between his family members and an ex-boyfriend of one of the family members by holding an unloaded shotgun.

147. At the time Defendants fired approximately 14 rounds of .40 caliber bullets at Plaintiff, Plaintiff was not facing the direction of the Defendants and posed no immediate or future threat to the Defendants or other citizens.

148. Plaintiff was not given the opportunity to surrender to the authority of Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS prior to their show of force by unlawfully shooting Plaintiff.

149. As a result, of the actions of Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS, Plaintiff was seized within the meaning of the Fourteenth Amendment and the shooting occurred before the Defendants had any prior involvement or contact with Plaintiff.

150. At all times relevant, Plaintiff did not pose any danger or threat and was not facing Defendants.

151. At the time of shooting, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS, Plaintiff, SEAN T. LEWIS, was seized by the pointing of Defendants' weapons and verbal commands, Plaintiff clearly did not believe he was free to leave or attempted to do so.

152. Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS' acts and omissions, as described above, were committed under the color of State law and reflected a reckless or callous indifference to the clearly established rights of Plaintiff in violation of his Fourteenth Amendments rights to be free from use of unreasonable and excessive and deprivation of liberty.

153. As direct and proximate cause of Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS' reckless or callous indifference, Plaintiff was deprived of his liberty without due process of law by the use of their unreasonable force.

154. Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS violation of Plaintiff's Fourteenth Amendment rights through his reckless and callous conduct was clearly established under existing case law or general Fourth and Fourteenth Amendment principles and statements of law such that it was apparent to Defendants that their conduct was unlawful and unconstitutional.

155. A reasonable police officer in Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS' positions should have understood that his conduct violated Plaintiff's right not to deprive of liberty and substantial due process of law.

156. Defendants deprived Plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States pursuant to 42 U.S.C. § 1983.

157. Plaintiff asserts that he was denied a right guaranteed by the Constitution or the laws of the United States and the Defendants were acting under color of state law.

158. Defendants' consciousness of guilty is demonstrated by their misrepresentation of the number of shots fired and the Plaintiff's position and movement at the time of shooting as well as the malicious prosecution is evidenced by the Defendants' 12 Count Felony Complaint subsequently dismissed on _____, 2012 in the matter of People v Sean T. Lewis; Case No.: 12-700146 as follows:

(3) Counts of Assault with Intent to Murder;

(3) Counts of Assault with a Dangerous Weapon/Felonious Assault;

(2) Counts of Assaulting/Resisting /Obstructing);

(1) Count of Firearm Discharge in or at Building;

(1) Count of Firearm-Larceny;

(1)Count of Firearm in Possession by Felon;

(1) Count of Felony Firearm

159. Defendants were aware of these customs, polices, or practices and acquiesced in there continuation in violation of Plaintiff's rights.

WHEFEFORE, Plaintiff, SEAN T. LEWIS requests a judgment against Defendants for compensatory damages in whatever amount the jury finds necessary, and further demands a judgment against individual Defendants for punitive damages for whatever amount the jury finds necessary, plus all such other relief this Court deems just and equitable, including costs and attorneys' fees incurred in this action.

<center>COUNT-VIII</center>
<center>Violation of Civil Rights Pursuant to Title 42 U.S.C. §1985</center>
<center>(CIVIL CONSPIRACY TO VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS)</center>

160. Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 16-159 of this Complaint as if fully stated herein.

161.    Plaintiff alleges the Defendants, _____, Detroit Police Department and City of Detroit conspired to deprive him of the rights under the Constitution in violation of 42 U.S.C. § 1985(2).

162.    Plaintiff alleges that second subpart of § 1985(2) creates a cause of action for conspiracy to:

a. impede, hinder, obstruct, or defeat, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or

b. to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

163.    Defendants conspired to mischaracterize the shooting of the Plaintiff as lawful and in self-defense.

164.    Defendants conspired and maliciously prosecuted Plaintiff based on his possession of an unarmed weapon, posing no danger or threat to the Defendants or citizens as evidenced by the Defendants shooting Plaintiff in his back in an egregious attempt to avoid civil liability for Defendants use of unreasonable and excessive force.

165.    Plaintiff further alleges that those Defendants have since conspired with Defendants, DETROIT POLICE DEPARTMENT and the CITY OF DETROIT, to conceal the facts of that shooting was reckless to intentionally penalize the Plaintiff and deceive the public in an attempt to avoid responsibility and accountability for their egregious and illegal actions.

166.    After Plaintiff, SEAN T. LEWIS' shooting, Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS made misrepresentations in their preliminary complaint reports saying that Plaintiff was pointing his unloaded shotgun at them and made

movement in their direction and in fear for their lives, Defendants stated that each fired only two (2) shots at the Plaintiff.

167.    The forensic report revealed that Defendants fired approximately 14 rounds of .40 caliber bullets at Plaintiff and that Plaintiff was not facing Defendants at the time of the shooting, therefore dispelling any claims that Defendants use of unreasonable force in shooting Plaintiff was justified.

168.    Plaintiff has sufficiently alleged rights of which Defendants deprived him thereof.

WHEFEFORE, Plaintiff, SEAN T. LEWIS requests a judgment against Defendants for compensatory damages in whatever amount the jury finds necessary, and further demands a judgment against individual Defendants for punitive damages for whatever amount the jury finds necessary, plus all such other relief this Court deems just and equitable, including costs and attorneys' fees incurred in this action

<u>COUNT- VIIII</u>
(NEGLIGENT INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)
169.    .Plaintiff re-alleges and incorporates herein by reference the allegations set forth in paragraphs 16-168 of this Complaint as if fully stated herein

170.    That intentional tort is governed by the common law. MCL 691.1407(3).

171.    Defendants are only  entitled to governmental immunity from intentional torts ONLY if "(1) the employee's challenged acts were undertaken during the course of employment and the employee was acting, or reasonably believed he was acting, within the scope of his authority,

(2) the acts were undertaken in good faith, or not with malice, and

(3) the acts were discretionary, rather than ministerial, in nature." Oliver v Smith (After Remand), ___ Mich App ___, ___; ___ NW2d ___ (2010), citing Odom v Wayne Co, 482 Mich 459, 480-481; 760 NW2d 217 (2008) (slip op at 5).

172. That evidence fails to show the Defendants acted in "good faith" and clearly demonstrates conduct showing an intent to cause harm or such indifference to harm that its effectively an intent to cause harm. Odom, 482 Mich at 474-475.

173. The alleged acts here were undertaken in the course of Defendants' employment and however, the actions of Defendants were not discretionary in nature.

174. Defendants used physical force against plaintiff and injured him in the process.

175. Plaintiff alleges that the individual Defendants, CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS engaged in intentionally outrageous conduct that caused him distress.

176. Defendant, CHRISTOPHER MEREDYK was acting within the scope of his employment.

177. Defendant, KIMBERLY WILLIAMS was acting within the scope of her employment.

178. Defendants conduct was (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) plaintiff suffered severe emotional distress.

179. Defendants conduct was outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community."

180. As an initial matter, the unlawful and reckless shooting of Plaintiff in his back and subsequent malicious prosecution are significant pieces of evidence and does rise to the level of outrageousness that would exceed all bounds of decency in a civilized society.

181. Defendants are not entitled to qualified immunity for intentional torts when: (1) the complained of acts were undertaken during the course of employment; (2) the acts were not taken in good faith; and (3) the acts were not discretionary and ministerial.

182. Defendants conduct lacked good faith and demonstrative of malicious intent, capricious action, or corrupt conduct," or "willful and corrupt misconduct.

183. Defendants were not following orders or with little or not choice not to fire approximately 14 rounds of .40 caliber bullets at the Plaintiff's back.

184. Defendants' actions did not involve the need for them to make "personal deliberation, decision, and judgments to fire at the Plaintiff who posed no threat to the Defendants or other citizens.

185. Defendants conduct demonstrates negligence and reckless indifference to the safety of Plaintiff.

186. As a result of the conduct complained of herein, all of the Defendants are liable unto Plaintiff for the damages pleaded herein and punitive and/or exemplary damages for their reckless and callous disregard of the serious and permanent injuries caused to Plaintiff, violation of his civil rights and their bad faith in malicious prosecution of Plaintiff and deceit by attempting to conceal their unlawful actions and therefore escape liability for Plaintiff's injuries.

187. Plaintiff is further entitled to an award of reasonable attorney's fees for all work performed in pursuing this action.

188. By the actions of Defendants, , CHRISTOPHER MEREDYK and KIMBERLY WILLIAMS on January 1, 2012 described above, Defendants breached the duty of care owed to Plaintiff and proximately caused him to suffer economic and non-economic damages, including

but not limited to, conscious pain and suffering, and pain and physical injuries, which ultimately resulted in his permanent injuries.

189.     As a result of the unlawful conduct of Defendants herein, due solely to the negligence, fault and//or intentional acts of any or all of the Defendants, Plaintiff is entitled:

a.     medical expense;

b.     survival damages for the physical pain and suffering

c.     emotional distress and terror suffered and for the violation of his civil rights,

d.     permanent and serious injuries damages for loss of consortium

e.     economic loss including past and future

190.     Plaintiff demands the sum of $2,500,000.00 as compensation for general and special Damages, and the sum of $2,500,000.00 in punitive damages.

191.     Plaintiff, Sean T. Lewis, is entitled to damages under M.C.L.A. 691.1407(2), requests all damages that are fair and just, including, without limitation, the following:

i. Reasonable medical expenses;

ii. Reasonable compensation for conscious pain and suffering, and pain and physical injuries, Plaintiff suffered due to the shooting; and,

iii. Losses including the loss of economic, consortium and all other losses suffered.

WHEREFORE, Plaintiff, SEAN T. LEWIS Plaintiff demands judgment against Defendants, as follows:

1.     General damages in _____ [the amount of $___ or an amount to be determined by proof at trial];

2.     Medical and related expenses in _____ [the amount of $___ or an amount to be determined by proof at trial];

3.   Past and future lost earnings in _____ [the amount of $___ or an amount to

be determined by proof at trial];

4.   Impairment of earning capacity in _____ [the amount of $___ or an amount

to be determined by proof at trial];

5.   Punitive damages;

6.   Costs of this action; and

7.   Any other and further relief that the court considers proper

## VERIFICATION

I, **SEAN TARVARIS LEWIS**, am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters, which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in Wayne County, Michigan.

DATED: _____

_____
SEAN TARVARIS LEWIS

Respectfully submitted,

By: /S/LARRY R. POLK ___
LILLIAN DIALLO ((P52036)
LARRY R. POLK (P48164)
Attorneys for Plaintiff
65 Cadillac Bldg, Suite 2605
Detroit, Michigan 48226
Phone: (313) 965-6633
lpolk14405@aol.com

Dated:   December 13, 2013

STATE OF MICHIGAN
IN THE 3rd CIRCUIT COURT FOR THE COUNTY OF WAYNE

SEAN TAVARIS LEWIS,

Plaintiff,

CASE NO.: 13
HON.

V

CITY OF DETROIT, DETROIT POLICE DEPARTMENT,
BENNY NAPOLEON, Chief of Police, CHRISTOPHER
MEREDYK, individually and in his capacity as a Police
Officer of the Detroit Police Department, and KIMBERLY
WILLIAMS, individually and in her capacity as a Police
Officer of the Detroit Police Department,

13-016394-NO
FILED IN MY OFFICE
WAYNE COUNTY CLERK
12/20/2013 3:01:49 PM
CATHY M. GARRETT

Jointly and severally,

Defendants.

_____/

**JURY DEMAND**

NOW COMES, Plaintiff, **SEAN TARVARIS LEWIS**, through his attorneys LILLIAN

DIALLO and LARRY R. POLK and hereby files his demand the right to a trial by Jury.

Respectfully submitted,

By: /S/LARRY R. POLK
LILLIAN DIALLO ((P52036)
LARRY R. POLK (P48164)
Attorneys for Plaintiff
65 Cadillac Bldg, Suite 2605
Detroit, Michigan 48226
Phone: (313) 965-6633
lpolk14405@aol.com

Dated: December 13, 2013

Page 1 of 1

**EXHIBIT 6B –NOTICE**

25612254.3\022765-00213

13-53846-tjt    Doc 10725    Filed 01/11/16    Entered 01/11/16 15:42:11    Page 50 of 75

**SEAN TAVARIS LEWIS,**

           **Plaintiff,**                        Hon. Maria L. Oxholm
                                          Case No. 13-016394-NO

**v.**

**CITY OF DETROIT, DETROIT POLICE
DEPARTMENT, BENNY NAPOLEON, Chief
of Police, CHRISTOPHER MEREDYK, individually
and in his capacity as a Police Officer of the Detroit
Police Department, and KIMBERLY WILLIAMS,
individually and in his capacity as a Police Officer of
the Detroit Police Department,**

           **Defendants.**

13-016394-NO

FILED IN MY OFFICE
WAYNE COUNTY CLERK
2/13/2014 11:25:43 AM
CATHY M. GARRETT

---

| | |
|---|---|
| **LILLIAN DIALLO (P-52036)** | **MICHAEL M. MULLER (P-38070)** |
| **LARRY R. POLK (P-48164)** | **Senior Assistant Corporation Counsel** |
| Attorneys for Plaintiff | Attorney for Defendant, City |
| 65 Cadillac Bldg., Ste. 2605 | 2 Woodward Avenue, Suite 500 |
| Detroit, MI 48226 | Detroit, MI 48226 |
| (313) 965-6633 | (313) 237-5052 |

---

### NOTICE OF SUGGESTION OF BANKRUPTCY CASE AND APPLICATION OF THE AUTOMATIC STAY

      **PLEASE TAKE NOTICE THAT**, on July 18, 2013 (the "Petition Date"), the City of

Detroit, Michigan (the "City") filed a petition for relief under chapter 9 of title 11 of the United

States Code (the "Bankruptcy Code"). The City's bankruptcy case is captioned *In re City of Detroit,*

*Michigan*, Case No. 13-53846, (Bankr. E.D. Mich.) (the "Chapter 9 Case"), and is pending in the

United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"). A

copy of the voluntary petition filed with the Bankruptcy Court commencing the Chapter 9 Case is

attached hereto as Exhibit A.

K:\DOCS\LIT\mullm\A37000\FORM\MM4540.WPD

**PLEASE TAKE FURTHER NOTICE THAT**, in accordance with the automatic stay imposed by operation of sections 362 and 922 of the Bankruptcy Code (the "Stay"), from and after the Petition Date, no act to (i) exercise control over property of the City or (ii) collect, assess or recover a claim against the City that arose before the commencement of the Chapter 9 Case may be commenced or continued against the City without the Bankruptcy Court first issuing an order lifting or modifying the Stay for such specific purpose. Also, see Stay Order dated July 25, 2013, entered by Judge Steven Rhodes attached hereto and marked as Exhibit B.

**PLEASE TAKE FURTHER NOTICE THAT**, in accordance with the Stay, from and after the Petition Date, no cause of action arising prior to, or relating to the period prior to, the Petition Date may be commenced or continued against (i) the City, in any judicial, administrative or other action or proceeding, or (ii) an officer or inhabitant of the City, in any judicial, administrative or other action or proceeding that seeks to enforce a claim against the City, and no related judgment or order may be entered or enforced against the City outside of the Bankruptcy Court without the Bankruptcy Court first issuing an order lifting or modifying the Stay for such specific purpose.

**PLEASE TAKE FURTHER NOTICE THAT** actions taken in violation of the Stay, and judgments or orders entered or enforced against the City, or its officers or inhabitants to enforce a claim against the City, while the Stay is in effect, are void and without effect.

**PLEASE TAKE FURTHER NOTICE THAT** neither the Bankruptcy Court nor the United States District Court for the Eastern District of Michigan has issued an order lifting or modifying the Stay for the specific purpose of allowing any party to the above-captioned proceeding to commence or continue any cause of action against the City or its officers or inhabitants. As such, the above-captioned proceeding may not be prosecuted, and no valid judgment or order may be

entered or enforced against the City or its officers or inhabitants.

**PLEASE TAKE FURTHER NOTICE THAT**, in light of the foregoing, the City will not defend against, or take any other action with respect to, the above-captioned proceeding while the Stay remains in effect.

**PLEASE TAKE FURTHER NOTICE THAT** the City hereby expressly reserves all rights with respect to the above-captioned proceeding, including, but not limited to, the right to move to vacate any judgment entered in the above-captioned proceeding as void.

Respectfully submitted,

/s/Michael M. Muller
**MICHAEL M. MULLER (P-38070)**
**Senior Assistant Corporation Counsel**
2 Woodward Avenue, Suite 500
Detroit, MI 48226
Dated: February 13, 2014        (313) 237-5052

K:\DOCS\LIT\mullm\A37000\FORM\MM4540.WPD

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE


**SEAN TAVARIS LEWIS,**

       **Plaintiff,**

                                              Hon. Maria L. Oxholm
                                              Case No. 13-016394-NO

**v.**

**CITY OF DETROIT, DETROIT POLICE
DEPARTMENT, BENNY NAPOLEON, Chief
of Police, CHRISTOPHER MEREDYK, individually
and in his capacity as a Police Officer of the Detroit
Police Department, and KIMBERLY WILLIAMS,
individually and in his capacity as a Police Officer of
the Detroit Police Department,**

       **Defendants.**

| | |
|---|---|
| **LILLIAN DIALLO (P-52036)** | **MICHAEL M. MULLER (P-38070)** |
| **LARRY R. POLK (P-48164)** | **Senior Assistant Corporation Counsel** |
| Attorneys for Plaintiff | Attorney for Defendant, City |
| 65 Cadillac Bldg., Ste. 2605 | 2 Woodward Avenue, Suite 500 |
| Detroit, MI 48226 | Detroit, MI 48226 |
| (313) 965-6633 | (313) 237-5052 |


### PROOF OF SERVICE

      The undersigned certifies that a copy of **Notice of Suggestion of Bankruptcy Case and Application of the Automatic Stay, Exhibit A, Exhibit B** and this **Proof of Service** was served on the attorneys of record to the above cause by e-mailing the same to them at their respective e-mail addresses provided to the court and of record herein on **February 13, 2014.**

      I declare that the statements above are true to the best of my information, knowledge and belief.


                        /s/ **Michael M. Muller**


K:\DOCS\LIT\mullm\A37000\FORM\MM4540.WPD

Revised 05/08

# UNITED STATES BANKRUPTCY COURT
## Eastern District of Michigan

In re:

**City of Detroit, Michigan,**

Case No. 13-_____

_____ Debtor. _____/

## BANKRUPTCY PETITION COVER SHEET

(The debtor must complete and file this form with the petition in every bankruptcy case. Instead of filling in the boxes on the petition requiring information on prior and pending cases, the debtor may refer to this form.)

13-016394-NO

FILED IN MY OFFICE
WAYNE COUNTY CLERK
2/13/2014 11:26:43 AM
CATHY M. GARRETT

### Part 1

"Companion cases," as defined in L.B.R. 1073-1(b), are cases involving any of the following: (1) The same debtor; (2) A corporation and any major shareholder thereof; (3) Affiliated corporations; (4) A partnership and any of its general partners; (5) An individual and his or her general partner (6) An individual and his or her spouse; or (7) Individuals or entities with any substantial identity of financial interest or assets.

Has a "companion case" to this case ever been filed at any time in this district or any other district? Yes ___ No **X**
**(If yes, complete Part 2.)**

### Part 2

For each companion case, state in chronological order of cases:

*Not applicable*

If the present case is a Chapter 13 case, state for each companion case:

*Not applicable*

### Part 3 - In a Chapter 13 Case Only

The Debtor(s) certify, re: 11 U.S.C. § 1328(f):               *Not Applicable*
**[indicate which]**

☐ Debtor(s) received a discharge issued in a case filed under Chapter 7, 11, or 12 during the 4-years before filing this case.

☐ Debtor(s) did **not** receive a discharge issued in a case filed under Chapter 7, 11, or 12 during the 4-years before filing this case.

☐ Debtor(s) received a discharge in a Chapter 13 case filed during the 2-years before filing this case.

☐ Debtor(s) did **not** receive a discharge in a Chapter 13 case filed during the 2-years before filing this case.

I declare under penalty of perjury that I have read this form and that it is true and correct to the best of my information and belief.

Kevyn D. Orr
Emergency Manager
City of Detroit

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK
   AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, MI 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

Date: July 18, 2013

ATTORNEYS FOR THE CITY OF DETROIT, MICHIGAN

B1 (Official Form 1) (04/13)

| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF MICHIGAN | VOLUNTARY PETITION |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**City of Detroit, Michigan** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all):<br>38-6004606 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State):<br>**2 Woodward Avenue**<br>**Suite 1126**<br>**Detroit, Michigan**<br>ZIP CODE **48226** | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP CODE |
| County of Residence or of the Principal Place of Business:<br>**Wayne** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>ZIP CODE | |

| Type of Debtor<br>(Form of Organization)<br>(Check one box.) | Nature of Business<br>(Check one box.) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box.) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☒ Other (If debtor is not one of the above entities, check this box and state type of entity below.)<br>**Municipality** | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☒ Other | ☐ Chapter 7     ☐ Chapter 15 Petition for<br>☒ Chapter 9     Recognition of a Foreign<br>☐ Chapter 11    Main Proceeding<br>☐ Chapter 12    ☐ Chapter 15 Petition for<br>☐ Chapter 13    Recognition of a Foreign<br>               Nonmain Proceeding |

| Chapter 15 Debtors | Tax-Exempt Entity<br>(Check box, if applicable.) | Nature of Debts<br>(Check one box.) |
|---|---|---|
| Country of debtor's center of main interests:<br><br>Each country in which a foreign proceeding by, regarding, or against debtor is pending: | ☐ Debtor is a tax-exempt organization under title 26 of the United States Code (the Internal Revenue Code). | ☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."    ☒ Debts are primarily business debts. |

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☒ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 (*amount subject to adjustment on 4/01/16 and every three years thereafter*).<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☒ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

Estimated Assets

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

Estimated Liabilities

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s):<br><div align="center">City of Detroit, Michigan</div> | |
|---|---|---|
| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.) | | |
| Location<br>Where Filed: | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |
| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.) | | |
| Name of Debtor: | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A**<br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition. | **Exhibit B**<br>(To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X _____<br><div align="center">Signature of Attorney for Debtor(s)      (Date)</div> |
|---|---|

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☒ Yes, and Exhibit C is attached and made a part of this petition.

☐ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D, completed and signed by the debtor, is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D, also completed and signed by the joint debtor, is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
<div align="center">(Check any applicable box.)</div>

☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
<div align="center">(Check all applicable boxes.)</div>

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
<div align="center">(Name of landlord that obtained judgment)</div>

_____
<div align="center">(Address of landlord)</div>

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s):<br>City of Detroit, Michigan |
|---|---|

**Signatures**

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br><br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br>[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).<br><br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>   Signature of Debtor<br><br>X _____<br>   Signature of Joint Debtor<br><br>   _____<br>   Telephone Number (if not represented by attorney)<br><br>   _____<br>   Date | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br><br>(Check only one box.)<br><br>☐  I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.<br><br>☐  Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.<br><br>X _____<br>   (Signature of Foreign Representative)<br><br>   _____<br>   (Printed Name of Foreign Representative) |

| Signature of Attorney* | Signature of Non-Attorney Bankruptcy Petition Preparer |
|---|---|
| X _____<br>   Signature of Attorney for Debtor(s)<br><br>David G. Heiman        Bruce Bennett           Jonathan S. Green<br>Heather Lennox        JONES DAY               Stephen S. LaPlante<br>JONES DAY              555 South Flower Street MILLER, CANFIELD<br>North Point           Fiftieth Floor          PADDOCK AND STONE,<br>901 Lakeside Avenue   Los Angeles, CA 90071   P.L.C.<br>Cleveland, OH 44114   Tel: (213) 243-2382     150 West Jefferson<br>Tel: (216) 586-3939   Fax: (213) 243-2539     Suite 2500<br>Fax: (216) 579-0212   bbennett@jonesday.com   Detroit, MI 48226<br>dgheiman@jonesday.com                         Tel: (313) 963-6420<br>hlennox@jonesday.com                          Fax: (313) 496-7500<br>                                              green@millercanfield.com<br>                                              laplante@millercanfield.com<br><br>   *July 18, 2013*<br>   Date<br><br>*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.<br><br>   _____<br>   Printed Name and title, if any, of Bankruptcy Petition Preparer<br><br>   _____<br>   Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)<br><br>   _____<br>   Address |

| Signature of Debtor (Corporation/Partnership) | |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>   Signature of Authorized Individual<br><br>   Kevyn D. Orr<br>   Printed Name of Authorized Individual<br><br>   Emergency Manager, City of Detroit<br>   Title of Authorized Individual<br><br>   July 18, 2013<br>   Date | X _____<br>   Signature<br><br>   _____<br>   Date<br><br>Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.<br><br>Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.<br><br>If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

*[If, to the best of the debtor's knowledge, the debtor owns or has possession of property that poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety, attach this Exhibit "C" to the petition.]*

# UNITED STATES BANKRUPTCY COURT

## Eastern District of Michigan

In re  City of Detroit, Michigan,                           ,      )      Case No.  13-_____

                              Debtor.                         )

                                                              )

                                                              )      Chapter    9

## EXHIBIT "C" TO VOLUNTARY PETITION

1. Identify and briefly describe all real or personal property owned by or in possession of the debtor that, to the best of the debtor's knowledge, poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety (attach additional sheets if necessary):

Certain properties owned by City of Detroit, Michigan (the "City") have been (a) identified by the City as being structurally unsound and in danger of collapse and (b) scheduled for demolition (collectively, the "Demolition Properties"). The Demolition Properties may pose a threat of imminent harm to public health and/or safety. A list of the Demolition Properties is attached hereto as Schedule 1.

To its knowledge, the City currently does not own any property that is a Superfund Site as designated by the United States Environmental Protection Agency. The City currently owns (in whole or in part) various so-called "Brownfields properties" (collectively, the "Brownfields Properties") regulated by the Michigan Department of Environmental Quality. Currently, one or more private parties (rather than the City) are addressing any identified environmental conditions that might be present at the Brownfields Properties. To the City's knowledge, none of the Brownfields Properties are alleged to pose a threat of imminent and identifiable harm to the public health or safety. A representative list of certain Brownfields Properties is attached hereto as Schedule 2.

In addition to the foregoing, the City owns or is possession of approximately 60,000 parcels of land within the City's geographic boundaries and more than 7,000 vacant structures that are not designated as Demolition Properties or Brownfields Properties (collectively, the "Blighted Properties"). It is possible that some of the Blighted Properties could pose a threat to public health or safety. Although the City is not aware of any Blighted Properties currently posing a threat of "imminent and identifiable harm," the City notes the existence of these properties on this Exhibit C out of an abundance of caution.

2. With respect to each parcel of real property or item of personal property identified in question 1, describe the nature and location of the dangerous condition, whether environmental or otherwise, that poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety (attach additional sheets if necessary):

See attached Schedule 1 with respect to the Demolition Properties and the attached Schedule 2 with respect to the Brownfields Properties.

# SCHEDULE 1

## City of Detroit, Michigan Demolition Properties

| Street Address | Property Type | Street Address | Property Type |
|---|---|---|---|
| 3922 14th | Residential | 20245 Derby | Residential |
| 3654 30th | Residential | 125 Dey | Residential |
| 12032 Abington | Residential | 14190 Dolphin | Residential |
| 2668 Anderdon | Residential | 229 Edmund Pl. | Commercial |
| 821 Anderson | Commercial | 3333 Edsel | Residential |
| 13501 Appoline | Residential | 203 Erskine | Residential |
| 7593 Arcola | Residential | 209 Erskine | Residential |
| 14125 Ardmore | Residential | 4417 Ewers | Residential |
| 13476 Arlington | Residential | 19332 Exeter | Residential |
| 13544 Arlington | Residential | 19339 Exeter | Residential |
| 10384 Aurora | Residential | 20467 Exeter | Residential |
| 2457 Beaubien | Commercial | 1731 Fischer | Residential |
| 2486 Beaubien | Residential | 13556 Fleming | Residential |
| 14371 Bentler | Residential | 7666 W. Fort | Commercial |
| 5317 Bewick | Residential | 5334 French Rd. | Residential |
| 19411 Blake | Residential | 6007 Frontenac | Commercial |
| 19700 Bloom | Residential | 18627 Gable | Residential |
| 6072 Braden | Residential | 3727 Garland | Residential |
| 9665 Broadstreet | Residential | 3917 Garland | Residential |
| 9616 Bryden | Residential | 4466 Garland | Residential |
| 6810 Bulwer | Commercial | 4470 Garland | Residential |
| 1454 Burlingame | Residential | 4003 Gilbert | Residential |
| 13469 Caldwell | Residential | 12511 Glenfield | Residential |
| 2009 Campbell | Residential | 14232 Goddard | Residential |
| 14203 E. Canfield | Residential | 14239 Goddard | Residential |
| 19221 Cardoni | Residential | 11648 Grandmont | Residential |
| 19324 Carrie | Residential | 5801 Grandy [1] | Commercial |
| 7626 Central | Residential | 5801 Grandy [2] | Commercial |
| 2535 Chalmers | Residential | 2937 Grant | Residential |
| 8115 Chamberlain | Residential | 5589 Guilford | Residential |
| 13199 Charest | Residential | 222 S. Harbaugh | Residential |
| 20190 Charleston | Residential | 2900 Harding | Residential |
| 3164 Charlevoix | Commercial | 8815 Harper | Commercial |
| 5083 Chatsworth | Residential | 17226 Hasse | Residential |
| 5717 Chene | Commercial | 7975 Hathon | Residential |
| 3636 Cicotte | Residential | 19227 Havana | Residential |
| 3032 Clements | Residential | 19309 Havana | Residential |
| 1117 Concord | Residential | 19321 Havana | Residential |
| 6628 Crane | Residential | 19397 Havana | Residential |
| 1243 Crawford | Residential | 7886 Helen | Residential |
| 2012 Dalzelle | Residential | 6200 Hereford | Residential |
| 20258 Danbury | Residential | 9905 Herkimer | Residential |
| 7787 Dayton | Residential | 1955 Highland | Residential |
| 8475 Dearborn | Residential | 1778 Holcomb | Residential |
| 1950 Dearing | Residential | 4407 Holcomb | Residential |
| 1956 Dearing | Residential | 4412 Holcomb | Residential |
| 1960 Dearing | Residential | 7202 Holmes | Residential |
| 2027 Dearing | Residential | 9278 Holmur | Residential |
| 8839 Dennison | Residential | 19925 Hoover | Commercial |

| Street Address | Property Type | Street Address | Property Type |
|---|---|---|---|
| 6360 Horatio | Residential | 5115 Nottingham | Residential |
| 15518 Idaho [1] | Commercial | 8811 Olivet | Residential |
| 15518 Idaho [2] | Commercial | 8917 Otsego | Residential |
| 12748 Ilene | Residential | 15799 Parkside | Residential |
| 20136 Ilene | Residential | 18401 Pembroke | Residential |
| 15778 Iliad | Residential | 11172 Promenade | Residential |
| 5290 Ivanhoe | Residential | 2101 Puritan | Commercial |
| 6435 Julian | Commercial | 5807 Renville | Residential |
| 8545 Kenney | Residential | 1957 Richton | Residential |
| 13989 Kentucky | Residential | 534 W. Robinwood | Residential |
| 13301 Kercheval | Commercial | 6119 Rohns | Residential |
| 5925 Kopernick | Residential | 14381 Rosa Parks Blvd. | Unknown |
| 17137 Lamont | Residential | 11735 Rutherford | Residential |
| 17208 Lamont | Residential | 6835 Seminole | Residential |
| 3839 Lanman | Residential | 5737 E. Seven Mile | Commercial |
| 5206 Lawndale | Residential | 2008 Sharon | Residential |
| 2194 Lemay | Residential | 13422 Shields | Residential |
| 3958 Lemay | Residential | 10201 Shoemaker | Commercial |
| 1601 Liddesdale | Residential | 10956 Shoemaker | Commercial |
| 1029 Liebold | Residential | 6750 Sparta | Residential |
| 5065 Lillibridge | Residential | 14291 Spring Garden | Commercial |
| 15744 Livernois | Commercial | 4467 St. Clair | Residential |
| 12558 Longview | Residential | 6915 St. John | Residential |
| 12767 Loretto | Residential | 7180 St. John | Residential |
| 8881 Louis | Residential | 18805 St. Louis | Commercial |
| 13441 Lumpkin | Residential | 1928 Stanley | Residential |
| 14242 Mack (a/k/a 3181 Lakewood) | Commercial | 12746 Strasburg | Residential |
| 12368 MacKay | Residential | 8104 Thaddeus | Residential |
| 12393 MacKay | Residential | 4832 Toledo | Residential |
| 12398 MacKay | Residential | 6195 Townsend | Residential |
| 13569 MacKay | Residential | 9778 Traverse | Residential |
| 13909 MacKay | Residential | 17231 Trinity | Residential |
| 13927 MacKay | Residential | 2634 Tuxedo | Residential |
| 13952 MacKay | Residential | 2522-4 Tyler | Residential |
| 13977 MacKay | Residential | 2660 Tyler | Residential |
| 13983 MacKay | Residential | 9526 Van Dyke | Commercial |
| 459 Manistique | Residential | 2030 Vinewood | Residential |
| 12000 Mansfield | Residential | 5757 Vinewood | Commercial |
| 8129 Marcus | Residential | 15451 Virgil | Residential |
| 4588 Marseilles | Residential | 15300 E. Warren (Bldgs. 101 & 102) | Commercial |
| 9343 N. Martindale | Residential | 64 Watson | Commercial |
| 8320 Maxwell | Residential | 6414 Willette | Unknown |
| 8326 Maxwell | Residential | 4364 Woodhall | Residential |
| 4766 McDougall | Commercial | 11640 Woodmont | Residential |
| 2122 Meade | Residential | 12075 Woodmont | Residential |
| 2420 Meade | Residential | 12136 Woodmont | Residential |
| 3697 Medbury | Residential | 12153 Woodmont | Residential |
| 11654 Meyers | Residential | 11365 Yosemite | Residential |
| 8911 Milner | Residential | 11402 Yosemite | Residential |
| 2652 Norman | Residential | | |
| 10002 Nottingham | Residential | | |

## SCHEDULE 2

## City of Detroit, Michigan Brownfields Properties

| Name of Site | Description |
|---|---|
| Former Detroit Coke Site | 7819 West Jefferson Avenue |
| Belleview Development (Uniroyal) Site | 600 East Jefferson. 43-acre former Uniroyal site located in the East Riverfront District, bounded by Jefferson Avenue (to the north), MacArthur Bridge (to the east), Detroit River (to the south) and Meldrum Street (to the west). |
| Riverside Park Site | 3085 West Jefferson Avenue. West Grand Boulevard and 24th Street along the Detroit River. |



EMERGENCY MANAGER
CITY OF DETROIT

ORDER No. 13

FILING OF A PETITION UNDER CHAPTER 9
OF TITLE 11 OF THE UNITED STATES CODE

BY THE AUTHORITY VESTED IN THE EMERGENCY MANAGER
FOR THE CITY OF DETROIT
PURSUANT TO MICHIGAN'S PUBLIC ACT 436 OF 2012,
KEVYN D. ORR, THE EMERGENCY MANAGER,
ISSUES THE FOLLOWING ORDER:

*Whereas*, on March 28, 2013, Michigan Public Act 436 of 2012 ("PA 436") became effective and Kevyn D. Orr became the Emergency Manager (the "EM") for the City of Detroit (the "City") with all the powers and duties provided under PA 436; and

Pursuant to section 9(2) of PA 436, the EM "shall act for and in the place and stead of" the Detroit Mayor and City Council; and

Section 9(2) of PA 436 also grants the EM "broad powers in receivership to rectify the financial emergency and to assure the fiscal accountability of the [City] and the [City's] capacity to provide or cause to be provided necessary governmental services essential to the public health, safety, and welfare;" and

Pursuant to section 10(1) of PA 436, the EM may "issue to the appropriate local elected and appointed officials and employees, agents, and contractors of the local government the orders the [EM] considers necessary to accomplish the purposes of this act;" and

Section 18(1) of PA 436 provides that "[i]f, in the judgment of the [EM], no reasonable alternative to rectifying the financial emergency of the local government which is in receivership exists, then the [EM] may recommend to the governor and the

state treasurer that the local government be authorized to proceed under chapter 9" of title 11 of the United States Code (the "Bankruptcy Code"); and

Section 18(1) of PA 436 further provides that "[i]f the governor approves of the [EM's] recommendation, the governor shall inform the state treasurer and the emergency manager in writing of the decision.... Upon receipt of the written approval, the emergency manager is authorized to proceed under chapter 9 [of the Bankruptcy Code]. This section empowers the local government for which an emergency manager has been appointed to become a debtor under [the Bankruptcy Code], as required by section 109 of [the Bankruptcy Code], and empowers the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9" of the Bankruptcy Code; and

In accordance with section 18 of PA 436, the EM has recommended to the Governor of Michigan (the "Governor") and the Michigan State Treasurer (the "State Treasurer") that the City be authorized to proceed under chapter 9 of the Bankruptcy Code (the "Recommendation"); and

The Governor has provided the State Treasurer and the EM with his written approval of the Recommendation, a true and correct copy of which is attached hereto as Exhibit A, thereby authorizing the City to proceed under chapter 9.

**It is hereby ordered that:**

1. The City shall file a petition for relief under chapter 9 of the Bankruptcy Code (the "Petition") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court").

2. The City's Corporation Counsel, financial advisors, outside legal advisors and other officers and employees of the City, as applicable, are hereby authorized and directed, on behalf of and in the name of the City, to execute and verify the Petition and related Bankruptcy Court filings and perform any and all such acts as are reasonable, appropriate, advisable, expedient, convenient, proper or necessary to carry out this Order, as and to the extent directed by the EM or his designee.

3. If any component of this Order is declared illegal, unenforceable or ineffective in a legal or other forum or proceeding such component shall be deemed severable so that all other components contained in this Order shall remain valid and effective.

4. This Order is effective immediately upon the date of execution below.

5. This Order shall be distributed to the Mayor, City Council members and all department heads.

2

6. The EM may modify, rescind, or replace this Order at any time.

Dated:  July 18, 2013

By: _____
Kevyn D. Orr
Emergency Manager
City of Detroit

cc:     State of Michigan Department of Treasury
        Mayor David Bing
        Members of Detroit City Council

3

# EXHIBIT A

**Governor's Written Approval of Recommendation**



STATE OF MICHIGAN
EXECUTIVE OFFICE
LANSING

RICK SNYDER
GOVERNOR

BRIAN CALLEY
LT. GOVERNOR

VIA HAND AND ELECTRONIC DELIVERY

July 18, 2013

Kevyn D. Orr
Emergency Manager
City of Detroit
Coleman A. Young Municipal Center
2 Woodward Ave., Suite 1126
Detroit, MI 48226

Andrew Dillon
State Treasurer
Michigan Department of Treasury
4th Floor Treasury Building
430 W. Allegan Street
Lansing, MI 48992

Re: Authorization to Commence Chapter 9 Bankruptcy Proceeding

Dear Mr. Orr and Mr. Dillon,

I have reviewed Mr. Orr's letter of July 16, 2013, requesting my approval of his recommendation to commence a bankruptcy proceeding for the City of Detroit under Chapter 9 of title 11 of the United States Code. As you know, state law requires that any such recommendation must first be approved by the Governor before the emergency manager may take that step. MCL 141.1558. For the reasons discussed below, I hereby approve that recommendation and authorize Mr. Orr to make such a filing.

## Current Financial Emergency

In reviewing Mr. Orr's letter, his Financial and Operating Plan, and his report to creditors, it is clear that the financial emergency in Detroit cannot be successfully addressed outside of such a filing, and it is the only reasonable alternative that is available. In other words, the City's financial emergency cannot be satisfactorily rectified in a reasonable period of time absent this filing.

I have reached the conclusion that this step is necessary after a thorough review of all the available alternatives, and I authorize this necessary step as a last resort to return this great City to financial and civic health for its residents and taxpayers. This decision comes in the wake of 60 years of decline for the City, a period in which reality was often

ignored. I know many will see this as a low point in the City's history. If so, I think it will also be the foundation of the City's future – a statement I cannot make in confidence absent giving the City a chance for a fresh start, without burdens of debt it cannot hope to fully pay. Without this decision, the City's condition would only worsen. With this decision, we begin to provide a foundation to rebuild and grow Detroit.

Both before and after the appointment of an emergency manager, many talented individuals have put enormous energy into attempting to avoid this outcome. I knew from the outset that it would be difficult to reverse 60 years of decline in which promises were made that did not reflect the reality of the ability to deliver on those promises. I very much hoped those efforts would succeed without resorting to bankruptcy. Unfortunately, they have not. We must face the fact that the City cannot and is not paying its debts as they become due, and is insolvent.

After reading Mr. Orr's letter, the Financial and Operating Plan, and the report to creditors, I have come to four conclusions.

1. Right now, the City cannot meet its basic obligations to its citizens.

2. Right now, the City cannot meet its basic obligations to its creditors.

3. The failure of the City to meet its obligations to its citizens is the primary cause of its inability to meet its obligations to its creditors.

4. The only feasible path to ensuring the City will be able to meet obligations in the future is to have a successful restructuring via the bankruptcy process that recognizes the fundamental importance of ensuring the City can meet its basic obligations to its citizens.

I will explain how I came to each conclusion.

**Inability to Meet Obligations to Its Citizens.** As Mr. Orr's Financial and Operating Plan and the June 14 Creditor Proposal have noted, the scale and depth of Detroit's problems are unique. The City's unemployment rate has nearly tripled since 2000 and is more than double the national average. Detroit's homicide rate is at the highest level in nearly 40 years, and it has been named as one of the most dangerous cities in America for more than 20 years. Its citizens wait an average of 58 minutes for the police to respond to their calls, compared to a national average of 11 minutes. Only 8.7% of cases are solved, compared to a statewide average of 30.5%. The City's police cars, fire trucks, and ambulances are so old that breakdowns make it impossible to keep up the fleet or properly carry out their roles. For instance, only a third of the City's ambulances were in service in the first quarter of 2013. Similarly, approximately 40% of the City's street lights were not functioning in that quarter and the backlog of complaints is more than 3,300 long. Having large swaths of largely abandoned structures -- approximately 78,000 -- creates additional public safety problems and reduces the quality of life in the City. Mr. Orr is correct that meeting the obligations the City has to

its citizens to provide basic services requires more revenue devoted to services, not less.

**Inability to Meet Obligations to Its Creditors.** The City has more than $18 billion in accrued obligations. A vital point in Mr. Orr's letter is that Detroit tax rates are at their current legal limits, and that even if the City was legally able to raise taxes, its residents cannot afford to pay additional taxes. Detroiters already have a higher tax rate than anywhere in Michigan, and even with that revenue the City has not been able to keep up with its basic obligations, both to its citizens and creditors. Detroit simply cannot raise enough revenue to meet its current obligations, and that is a situation that is only projected to get worse absent a bankruptcy filing.

**Failure to Meet Obligations to Citizens Creates Failure to Meet Obligations to Creditors.** Mr. Orr's letter and prior report put in stark reality the dramatic impact of the City's plummeting population. While many who love Detroit still live there, many other Detroiters at heart could not justify the sacrifice of adequate services. The City's population has declined 63% from its peak, including a 28% decline since 2000. That exodus has brought Detroit to the point that it cannot satisfy promises it made in the past. A decreasing tax base has made meeting obligations to creditors impossible. Mr. Orr is correct when he says the City cannot raise the necessary revenue through tax increases, and it cannot save the necessary revenue through reducing spending on basic services. Attempts to do so would only decrease the population and tax base further, making a new round of promises unfulfillable.

**Only One Feasible Path Offers a Way Out.** The citizens of Detroit need and deserve a clear road out of the cycle of ever-decreasing services. The City's creditors, as well as its many dedicated public servants, deserve to know what promises the City can and will keep. The only way to do those things is to radically restructure the City and allow it to reinvent itself without the burden of impossible obligations. Despite Mr. Orr's best efforts, he has been unable to reach a restructuring plan with the City's creditors. I therefore agree that the only feasible path to a stable and solid Detroit is to file for bankruptcy protection.

The past weeks have reaffirmed my confidence that Mr. Orr has the right priorities when it comes to the City of Detroit. I am reassured to see his prioritization of the needs of citizens to have improved services. I know we share a concern for the public employees who gave years of service to the City and now fear for their financial future in retirement, and I am confident that all of the City's creditors will be treated fairly in this process. We all believe that the City's future must allow it to make the investment it needs in talent and in infrastructure, all while making only the promises it can keep. Let us remain in close communication regarding measures Mr. Orr might take so we can discuss the possible impacts that might occur both within and outside of the City.

### Contingencies

2012 PA 436 provides that my approval of the recommendation to commence a Chapter 9 proceeding may place contingencies on such a filing. MCL 141.1558(1). I am choosing not to impose any such contingencies today. Federal law already contains the most important contingency – a requirement that the plan be legally executable. 11 USC 943(b)(4).

### Conclusion

In conclusion, I find Mr. Orr's Recommendation Letter to be persuasive, especially in conjunction with his prior reports laying out the level of services the City can provide and its financial ability to meet its obligations to creditors. I am also convinced that Mr. Orr has exercised his best efforts to arrive at a restructuring plan with the City's creditors outside of bankruptcy, to no avail. Given these facts, the only feasible path to sustainability for the City of Detroit is a filing under chapter 9 of the bankruptcy code. Therefore, I hereby approve Mr. Orr's recommendation and authorize the emergency manager to make such a filing on behalf of the City of Detroit and to take all actions that are necessary and appropriate toward that end.

Sincerely,

Richard D. Snyder
Governor
State of Michigan

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
-------------------------------------------------x
                                                 :
In re                                            :       Chapter 9
                                                 :
CITY OF DETROIT, MICHIGAN,                        :       Case No. 13-53846
                                                 :
                           Debtor.               :       Hon. Steven W. Rhodes
                                                 :
                                                 :
-------------------------------------------------x
```

13-016394-NO
FILED IN MY OFFICE
WAYNE COUNTY CLERK
2/13/2014 11:25:43 AM
CATHY M. GARRETT

### ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE ENTITIES, (B) NON OFFICER EMPLOYEES AND (C) AGENTS AND REPRESENTATIVES OF THE DEBTOR

This matter coming before the Court on the Motion of Debtor,

Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order,

Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non-Officer

Employees and (C) Agents and Representatives of the Debtor (the "Motion"),[1]

filed by the City of Detroit, Michigan (the "City"); the Court having reviewed the

Motion and the Orr Declaration and having considered the statements of counsel

and the evidence adduced with respect to the Motion at a hearing before the Court

(the "Hearing"); and the Court finding that: (a) the Court has jurisdiction over this

---

[1]     Capitalized terms not otherwise defined herein have the meanings given to
them in the Motion.

matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding

pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and the Hearing was

sufficient under the circumstances, (d) the unusual circumstances present in this

chapter 9 case warrant extending the Chapter 9 Stay to the State Entities, the

Non-Officer Employees and the City Agents and Representatives; and the Court

having determined that the legal and factual bases set forth in the Motion and the

Orr Declaration and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      Pursuant to section 105(a) of the Bankruptcy Code, the

Chapter 9 Stay hereby is extended to apply in all respects (to the extent not

otherwise applicable) to the State Entities (defined as the Governor, the State

Treasurer and the members of the Loan Board, collectively with the State

Treasurer and the Governor, and together with each entity's staff, agents and

representatives), the Non-Officer Employees and the City Agents and

Representatives.

3.      For the avoidance of doubt, each of the Prepetition Lawsuits

hereby is stayed, pursuant to section 105(a) of the Bankruptcy Code, pending

further order of this Court.

-2-

13-53846-tjt  Doc 10725  Filed 01/11/16  Entered 01/11/16 15:42:11  Page 72 of 75
13-53846-swr  Doc 256  Filed 07/25/13  Entered 07/25/13 13:43:18  Page 72 of 75

4.     This order is entered without prejudice to the right of any creditor to file a motion for relief from the stay imposed by this order using the procedures of and under the standards of 11 U.S.C. § 362(d)-(g).

.

**Signed on July 25, 2013**

                                       **/s/ Steven Rhodes**
                                       **Steven Rhodes**
                                       **United States Bankruptcy Judge**

**EXHIBIT 6C – DOCKET OF STATE COURT LAWSUIT**

Location : Non-Criminal Cases   Images

# REGISTER OF ACTIONS
## CASE NO. 13-016394-NO

---

### PARTY INFORMATION

| | | Lead Attorneys |
|---|---|---|
| Defendant | CITY OF DETROIT, DETROIT POLICE DEPARTMENT | Michael M. Muller<br>*Retained*<br>(313) 237-5052(W) |
| Defendant | MEREDYK, CHRISTOPHER | |
| Defendant | NAPOLEON, BENNY | |
| Defendant | WILLIAMS, KIMBERLY | |
| Plaintiff | LEWIS, SEAN T. | Larry R. Polk<br>*Retained*<br>(313) 965-6633(W) |

---

### EVENTS & ORDERS OF THE COURT

| | OTHER EVENTS AND HEARINGS |
|---|---|
| 12/20/2013 | Service Review Scheduled |
| 12/20/2013 | Status Conference Scheduled |
| 12/20/2013 | Complaint, Filed |
| 12/20/2013 | Case Filing and Jury Trial Fee - Paid |
| 02/13/2014 | Notice of Filing, Filed |
| 03/21/2014 | Status Conference  (11:00 AM) (Judicial Officer Oxholm, Maria L.)<br>Result: Reviewed by Court |
| 03/26/2014 | Status Conference Scheduling Order, Signed and Filed (Judicial Officer: Oxholm, Maria L. ) |
| 03/27/2014 | Certificate of Date of Filing |
| 03/28/2014 | Settlement Conference Scheduled |
| 04/04/2014 | Case Evaluation - General Civil |
| 04/04/2014 | Closed/Final - Admin Clsng Due to Bankrpty, Signed and Filed (Judicial Officer: Oxholm, Maria L. ) |
| 11/17/2014 | *CANCELED  Settlement Conference  (9:00 AM) (Judicial Officer Oxholm, Maria L.)*<br>*Case Disposed/Order Previously Entered* |