UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S SUPPLEMENTAL BRIEF IN SUPPORT OF EXPUNGEMENT OR DISALLOWANCE OF CLAIMS OF "EMPLOYEE OBLIGATION CLAIMANTS"

The City of Detroit, Michigan ("City"), by its undersigned counsel, hereby submits to this Honorable Court its Supplemental Brief for Entry of an Order expunging or disallowing the claims of certain current or former City of Detroit employees as further set out below.

### I. INTRODUCTION

The City challenges the validity of 54 Proofs of Claim filed by individual City of Detroit employees - the majority of whom are Union members - who are claiming similar loss of wages and benefits resulting from actions uniformly taken by the City with respect to all its employees, union and non-union. At various times, commencing July 27, 2012 and into 2013, the City, acting pursuant to a Financial Stability Agreement under 2011 PA 4, imposed the same reductions in economic and non-economic employment terms across the board on all employees. Additional reductions relating to pension and annuities were subsequently imposed on all City employees in 2013 by the City's then Emergency Manager while the

- 1 -

26507658.2\022765-00213
13-53846-tjt    Doc 11102    Filed 04/21/16    Entered 04/21/16 12:24:19    Page 1 of 14

City was in receivership under the successor statute to Act 4, 2012 PA 436. Other concessionary terms were mediated during this bankruptcy.

As will be shown, the Proofs of Claim of these individual Employees are invalid as a matter of law because they arise out of lawful actions taken by the City. Both Act 4 and Act 436 conferred on the City the authority to impose terms and conditions because they suspended the City's duty to bargain with the unions who are the collective bargaining representatives of its employees. While many of the claims do not expressly reference Act 4 and Act 436 or the 2012 and 2013 events, the uniformity of the claimed losses allow for a more than reasonable inference that they arise out of the City's 2012 and 2013 imposition of terms.

These claims are also duplicative of and subsumed in omnibus Proofs of Claim filed by the American Federation of State and County Municipal Employees ("AFSCME") and the Detroit Coalition of Unions ("Coalition). The AFSCME and Coalition Claims are based on the same City actions and are brought on behalf of all their members including these individual employees. Both the individual and union Claims are for the same alleged loss of wages and benefits under the unilaterally imposed terms and conditions of employment. Under well-established principles of Michigan public sector labor law under the Public Employment Relations Act ("PERA"), the City must deal exclusively with the collective bargaining representatives of its individual employees. Employees collectively act

through unions in establishing terms and conditions of employment. Where reductions in previously bargained for employment terms are at issue, it is within the union's sole province – indeed their statutory duty - to pursue such claims, if any, against the employer. These labor law principles govern the union Claims; the duplicative Proofs of Claim by individual union members, claiming the same bargaining related losses, should not be permitted.

## II. PROCEDURAL BACKGROUND

This matter is before the Court pursuant to the following Orders: the Court's *Order Granting City of Detroit's Ex Parte Motion for an Order (I) Adjourning Hearing on Certain Responses Filed to the City's Twentieth and Twenty-Eighth Through Thirty-Fourth Omnibus Objections to Claims, and (II) Establishing a Process for Hearing These Objections and Responses to Them*" (Docket # 10941, March 24, 2016); *Supplemental Order Regarding City Of Detroit's Ex Parte Motion For An Order (I) Adjourning Hearing On Certain Responses Filed To The City's Twentieth And Twenty-Eighth Through Thirty-Fourth Omnibus Objections To Claims, And (II) Establishing A Process For Hearing These Objections And Responses To Them* (Docket # 11035, April 5, 2016) and, the Court's *Order (I) Adjourning Hearing on Certain Responses Filed to the City's Thirty-Sixth and Thirty-Seventh Omnibus Objections to Claims, and (II) Assigning Them to Be*

*Heard and Resolved Under the Established Process for Hearing and Resolving Employee Obligation Claims*" (Docket # 11054, April 7, 2016).

The Orders referenced above were entered granting the City's *ex parte* motions (Docket # 10931, 11050) requesting that the City be afforded the opportunity to show that a number of claims filed by individual Detroit employees (the "Employee Obligation Claimants" ) fail as a matter of law.

Having received and reviewed the Responses from the Employee Obligation Claimants, the City's position remains that these Claims are subject to expungement or disallowance as a matter of law.

### III.   FACTUAL BACKGROUND

The City attaches as Exhibit 1 a chart setting forth the Employee Obligation Claimants who are the subject of this motion. The Chart identifies the name and claim number of each claimant, a summary of the statements in the claim, and a summary of each Claimant's response to the Objections. The City has also added the union affiliation of the individuals, which was not referenced on the majority of Claims. These affiliations include: various locals of the American Federation of State, County and Municipal Employees (AFSCME), Senior Accountants, Appraisers and Analysts (SAAA), Association of Professional and Technical Employees (APTE), United Auto Workers (UAW), Teamsters, as well as several non-affiliated Detroit employees. Attached to the Chart are the individual Proofs

of Claims filed by the Employee Obligation Claimants. The Chart also identifies by docket number the responses filed by each of the Claimants.

Almost uniformly, the original Proofs of Claim generally contained little more than a statement that the claimant had received one or more of the following: 10% wage decrease; elimination of certain benefits, such as longevity, bonus vacation days, swing and election holidays, holiday pay, paid lunch hour, out of class pay; reduction in health care benefits or increased health care costs, freezing of reserve sick banks; freezing of annuity and pension plans. In most cases there was no reference to the source or timing of these reductions and no way to ascertain their veracity. The amounts cited by the various claimants were stated in lump sums with no attribution to specific claims or presentation of other evidence to support the alleged losses.

While almost all the Claimants responded to the objections, the majority provided no additional information. Exhibit 1, items 2-17, 19-36, 39, 41, 48, 51-52. In some cases, the Claimants provided pay stubs or payroll histories, but no other information; determining the specific amounts of the claimed losses from this pay information is not possible. Exhibit 1, items 2, 10, 14, 16, 17, 21-22.

Several of the responses, primarily those by AFSCME and SAAA members, expressly cited the imposition of the "City Employment Terms" or "CETs" by the City in 2012 as the source of the claimed losses, or provided some information

- 5 -
26507658.2\022765-00213
13-53846-tjt    Doc 11102    Filed 04/21/16    Entered 04/21/16 12:24:19    Page 5 of 14

from which this imposition could be inferred. Exhibit 1, items 18, 23, 37, 38, 40, 43, 44, 47, 49 and 50. Of these, items 37, 38, 44, 47, 49 and 50 also cite to the Proof of Claim No. 2851 of the Coalition of Detroit Unions, of which AFSCME, APTE, SAAA, Teamsters and the UAW are members. The Coalition Proof of Claim No. 2851 is attached as Exhibit 2, and expressly alleges losses resulting from the imposition of the CETs. The AFSCME Proof of Claim No. 2958 is attached as Exhibit 3.

## IV.  ARGUMENT

**A.  The Proof of Claims Filed By The Employee Obligation Claimants Are Based On The City Employment Terms Imposed On City Employees Affiliated With AFSCME, SAAA, APTE, Teamsters And UAW.**

There is little doubt that all of the Claims set forth in Exhibit 1 are based on the CETs. Numerous Employee Obligation Claimants expressly refer to their claims as based on alleged losses incurred as a result of the City's imposition of CETs. The other Employee Obligation Claimants assert claims for precisely the concessionary terms imposed by the City on July 27, 2012 and at various points thereafter pursuant to the CET: - 10% wage decrease; elimination of certain benefits, such as longevity, bonus vacation days, swing and election holidays, holiday pay, paid lunch hour, out of class pay, reduction in health care benefits or increased health care costs, freezing of reserve sick banks, freezing of annuity and pension plans. *See, e.g.*, various items of correspondence from Lamont Satchel,

the Detroit Director of Labor Relations: July 27, 2012 (reviewing the terms of the CETs and itemizing reductions imposed); November 8, 2012 (implementation of overtime reduction, reduction in holiday premium pay, reduction in shift premium, elimination of longevity); November 28, 2012 (announcement of reduction in pension multiplier, elimination of annual escalator, freeze on pay out of unused sick leave on retirement, elimination of sick time inclusion in Final Average Compensation); June 24, 2013 (vacation hours cap, elimination of swing holidays and election day, elimination of bonus vacation days, discontinuance of accruals to Reserve and seniority sick banks). This correspondence is attached hereto as Exhibit 4.[1]

**B. The City Lawfully Imposed The CETs, Pursuant To A Financial Stability Agreement Between The State And The City Under Michigan's Local Government and School District Financial Accountability Act**

Michigan's Local Government and School District Financial Accountability Act ("Act 4") MCL 141.1501, *et seq.*(Repealed), was enacted in 2011 by the Legislature to protect the ability of municipalities and school districts to provide the core services such local governments were created to provide. MCL 141.1503. Financial stability agreements were one tool provided by Act 4 to resolve financial

---

[1] This correspondence is attached to several Responses to the City's Objections filed by Claimants, see. e.g., *Response of Janice Clark*, Exhibit 1, item 43 (Docket # 11044). Some or all of this correspondence is also found in Responses cited in Exhibit 1, Items 18, 23, 37, 38, 40, 44, 47, 49 and 50.

crises; these agreements would include remedial measures to address the local financial challenges. MCL 141.1514.

Early in 2012, the City's dire financial straits triggered a state review under Act 4 and the City was determined to be in a state of financial stress. After an arduous review and negotiation process, the City entered into a Financial Stability Agreement ("FSA" or "consent agreement") with the Michigan Department of Treasury pursuant to §14a of Act 4, MCL 141.1514a. The FSA provided for an operational reform plan requiring certain reform initiatives with respect to labor agreements and labor costs. The FSA was effective as of April 4, 2012.

Pursuant to §14a(10) of Act 4, the FSA provided that the City was exempt from the duty to bargain with respect to expired collective bargaining agreements as otherwise required under §15(1) of the Public Employment Relations Act ("PERA"), MCL 423.15(1). [2]

On July 17, 2012, and at various times thereafter in 2012, the City lawfully imposed employment terms on those Unions and non-union personnel whose

---

[2] PERA, MCL 423.201 *et seq.,* governs public labor relations in Michigan. *Detroit Fire Fighters' Ass'n IAFF Local 344 v City of Detroit*, 482 Mich 18, 28; 753 NW 2d 579 (2008); *Rockwell v Bd of Ed of Sch Dist of Crestwood*, 393 Mich 616, 629; 227 NW 2d 736 (1975). Section 15(1) of PERA establishes the employer's duty to bargain. That duty extends to "mandatory" subjects of bargaining; that is, those subjects within the scope of "wages, hours, and other terms and conditions of employment." MCL 423.215(1).

collective bargaining agreements had expired June 30, 2012, including those of AFSCME, SAAA, APTE, Teamsters and UAW. *See* Exhibit 4.

The CETs were imposed pursuant to a lawful Financial Stability Agreement between the City and the State entered into under Act 4. There is no extant judicial or administrative finding that the CETs were not lawfully implemented. To the extent legal challenges were brought against the FSA on other grounds, they were not successful.[3]

**C.     Those Proofs Of Claim That Appear To Advance Claims Brought Under Detroit Emergency Manager's Orders Are Also Legally Invalid.**

Several of the Responses also referenced Emergency Manager Order 21, dated December 2013, freezing Detroit pensions and annuities, attached as Exhibit 5. See Exhibit 1, items 37, 38, 44, 47, 49 and 50. Any Claims based on this Order, or any other actions taken by the Detroit Emergency Manager, also have no basis in law and are invalid claims subject to disallowance and expungement. Order 21 was entered pursuant to the authority conferred on the Emergency Manager by the successor statute to Act 4, the Local Financial Stability and Choice Act, Public Act 436 of 2012, MCL 141.1541, *et seq.* ("Act 436").

On March 28, 2013, the City was placed under receivership pursuant to MCL 141.1549. Kevyn Orr assumed the role and authority of Emergency Manager under Act 436. Section 27(3) of Act 436, states that:

---
[3] See, orders entered in various matters challenging the FSA, attached as Exhibit 6.

A local government placed in receivership under this act is not subject to Section 15(1) of 1947 PA 336, MCL 423.215 for a period of 5 years from the date the local government is placed in receivership or until the time the receivership is terminated, whichever comes first. MCL 141.1567(3).

The suspension of the City's duty to bargain with respect to changes in terms and conditions of employment was upheld by the Michigan Employment Relations Commission in: *City of Detroit – and – Detroit Police Lieutenants & Sergeants Association*, MERC Case No: D13 A-0005 (2013); *City of Detroit – and – Detroit Police Command Officers Association*, MERC Case no. D11 J-1169 (2013); and *City of Detroit – and – Police Officers Association of Michigan (Emergency Medical Technician Unit)*, MERC Case No. D09 F-0703 (2013). (See, Ex. 7, MERC Decision date June 21, 2013). The MERC Decision was not appealed, and no other challenges to the suspension of the duty to bargain under Act 436 receivership have been brought.

These claims are also invalid for the additional reason that they are classified under the City's Eighth Amended Plan (Docket # 8045) ("Plan") as either PFRS Pension Claims or GRS Pension Claims (as each such term is defined by the Plan). These claims are classified in Classes 10 or 11 of the Plan and are subject to the treatment provided to claims in those classes.

**D. Individual Employee Union Members' Claims Should Be DisAllowed And Expunged Because They Are Duplicative Of The Proofs Of Claim Pending For AFSCME And The Coalition.**

As indicated above, the Coalition has pending a Proof of Claim (Exhibit 2) that expressly alleges losses resulting from the imposition of the CETs. The Coalition claims includes all the unions whose members are Obligation Employee Claimants. AFSCME additionally has pending a Proof of Claim (Exhibit 3) that includes multiple sub-claims, including the reduction in longevity and imposition of CETs on AFSCME members employed by the Detroit Water And Sewerage Department ("DWSD").[4] Exhibit 1 to AFSCME's Proof of Claim sets out the sub-claims.

The individual employee claims address the same across-the-board actions taken by the City as set out in the AFSCME and Coalition Claims and should be disallowed and expunged in favor of the Union's claims. In Michigan, public employees act through their collective bargaining representatives. The right to organize and act collectively is embedded in § 9 of PERA, MCL 423.209. Once employees have formed a union, the public employer may not refuse to bargain collectively with the union, MCL 423.210(1) (c), and the union becomes the *exclusive* representative of *all* employees who are members of that union, MCL 423.211.

---

[4] See, Exhibit 1, Items 6-23, which identify those AFSCME employees at DWSD.

Under MCL 423.210(1)(a), an employer may not interfere with their employees' rights under §9 of the act and may not engage in individual bargaining on mandatory subjects. *In re Bangor Twp. Bd. of Ed.,* 1984 MERC Lab.Op. 274, 387–388; *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 617–618, 89 S.Ct. 1918, 1942–1943, 23 L.Ed.2d 547 (1969). *Michigan Ed Ass'n v N Dearborn Hts Sch Dist*, 169 Mich App 39, 46; 425 NW2d 503, 507 (1988); Direct dealing with employees constitutes an unfair labor practice. *Southfield Ed Ass'n v Southfield Pub Sch,* No. 240050, 2004 WL 225059, at *3 (Mich Ct App February 5, 2004).[5]

Under §10(2)(a) of PERA, unions have a corresponding obligation to refrain from restraining or coercing employees in the exercise of their §9 rights. Unions in their role as exclusive agent for bargaining unit employees, have a duty to fairly represent all members of the unit. *Vaca v. Sipes,* 386 U.S. 171, 176–177; 87 S Ct 903; 17 L.Ed.2d 842 (1967). The Michigan Courts also recognize the public sector union's duty to fairly represent members: "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective-bargaining unit is arbitrary, discriminatory, or in bad faith." *Goolsby v. Detroit,* 419 Mich. 651, 661; 358 NW2d 856 (1984); *Martin v. East Lansing*

---

[5] Status as exclusive bargaining representative allows Unions to represent their members in actions where members' interests are at issue, *see, e.g. Michigan Ed Ass'n v Michigan Pub Sch Employees Ret Bd,* No. 269724, 2007 WL 602591, at *5 *rev'd on other grounds* (Mich Ct App February 27, 2007) (Union as exclusive bargaining representative can represent members before state retirement board if it otherwise satisfied standing requirements). Attached as Exh. 8.

- 12 -

*School Dist.,* 193 Mich.App. 166, 180-181, 483 N.W.2d 656 (1992). The MERC and state circuit courts have concurrent jurisdiction over fair representation claims brought under the PERA. *Demings v. City of Ecorse,* 423 Mich. 49, 53, 377 N.W.2d 275 (1985). *Adair v Utica Cmty Sch*, No. 288286, 2010 WL 1924868, at *3 (Mich Ct App May 13, 2010). (Attached as Exhibit 9).

Allowing the individual employee Claims to go forward while their unions pursue the same Claims as exclusive bargaining representative of these employees is contrary to PERA and Michigan case law interpreting that statute. The purpose of these statutes – to protect individual employees' interests through their labor organization - is best served here, where the unions are represented by competent counsel who can advance the employees' claims as they are required to do under the law. Allowing the duplicate claims is also inefficient and a waste of judicial resources, and could result in inconsistent adjudications.

## V. CONCLUSION

In light of the foregoing arguments and authorities, each Proof of Claim listed on Exhibit 1 should be disallowed and expunged because they fail to show a valid claim.

Respectfully submitted,

By: /s/ Marc N. Swanson
    Marc N. Swanson (P71149)
    John H. Willems (P31861)
    MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com
    willems@millercanfield.com

    Charles N. Raimi (P29746)
    Deputy Corporation Counsel
    City of Detroit Law Department
    2 Woodward Avenue, Suite 500
    Coleman A. Young Municipal Center
    Detroit, Michigan 48226
    Telephone: (313) 237-5037
    Facsimile: (313) 224-5505
    raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

DATED: April 21, 2016

- 14 -

26507658.2\022765-00213
13-53846-tjt   Doc 11102   Filed 04/21/16   Entered 04/21/16 12:24:19   Page 14 of 14