| UNITED STATES BANKRUPTCY COURT | EASTERN DISTRICT of MICHIGAN | **FILED** |
|---|---|---|

Name of Debtor: **City of Detroit, Michigan**    Case Number: **13-53846**

**FEB 21 2014**

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Coalition of Detroit Unions**

US Bankruptcy Court
Eastern District

Name and address where notices should be sent:
Richard Mack Jr.
Miller Cohen, PLC
600 W. Lafayette Blvd. 4th Floor
Detroit, MI 48226

**RECEIVED**

**FEB 24 2014**

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
  (*If known*)

Telephone number: 313-964-4454    email: richardmack@millercohen.com  KURTZMAN CARSON CONSULTANTS

Filed on:_____

Name and address where payment should be sent (if different from above):

Telephone number:    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. **Amount of Claim as of Date Case Filed: $242,586,116.50**

If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.
☐Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. **Basis for Claim:** See attached Addendum for additional details.

3. **Last four digits of any number by which creditor identifies debtor:**     3a. Debtor may have scheduled account as:_____
                                                                                  (See instruction #3a)

4. **Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$_____

Nature of property or right of setoff:  ☐Real Estate  ☐Motor Vehicle  ☐Other

Basis for perfection: See Attached

Describe:

Value of Property:                                               Amount of Secured Claim:  $0

Annual Interest Rate (when case was filed)_____% ☐Fixed or ☐Variable    Amount Unsecured:

5. Amount of Claim Entitled to Priority as an Administrative Expense under 11 U.S.C. §§ 503(b)(9) and 507(a)(2).  $ 0

5b. Amount of Claim Otherwise Entitled to Priority. Specify Applicable Section of 11 U.S.C. § _____.  $_____

6. **Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

7. **Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)* DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain: **See attached Addendum. Further, the documents involved are voluminous and, on information and belief, in the possession of the city**

8. Signature: (See instruction # 8)
Check the appropriate box.

☐ I am the creditor.    ☒ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor, or their authorized agent.    ☐ I am a guarantor, surety, indorser, or other codebtor.
                                                                       (See Bankruptcy Rule 3004.)    (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Richard G. Mack Jr.
Title:  Attorney for the Coalition of Detroit Unions
Company:  Miller Cohen, PLC

Address and telephone number (if different from notice address above):
600 W. Lafayette Blvd. 4th Floor
Detroit, MI 48226
313-964-4454    email: richardmack@millercohen.com

(Signature)    2/21/14    (Date)

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 35*

# Addendum to the Proof of Claim of
## The Coalition of Detroit Unions

This proof of claim (the "Claim") is for all claims due to the Coalition of Detroit Unions and the unions within and their members and former members/retirees (or future retirees with pension or other post-employment benefit obligations vested prior to the City of Detroit's (the "City") bankruptcy filing). The membership of the Detroit Coalition of Unions includes:

> Michigan AFSCME Council 25 and its affiliated Detroit local unions
> Association of Professional and Technical Employees
> Detroit Police Detention Officers Association
> Senior Accountants, Analysts and Appraisers Association
> Teamsters, Local 214
> Association of Municipal Inspectors
> Michigan Building Trades Council and its affiliated unions
> International Union of Operating Engineers, Local 324
> UAW PAA Local 2211
> Association of City of Detroit Supervisors
> Detroit Income Tax Investigators Association
> SEIU Local 517M

The chief claim of the Coalition of Detroit Unions ("Claimant" or "Coalition") is rooted in the City's failure to sign the Coalition Tentative Agreement in March 2012 which would have established a 3 year contract through to March 2015, followed by the failure to bargain and unilateral imposition of employment terms. In July 2012, the City unilaterally imposed its own Employment Terms ("CET") in place of the Tentative Agreement. **The calculated aggregate amount owed pursuant to this claim amounts to not less than $242,586,116.50**. The not less than **$242,586,116.50** amount asserted in this Claim consists of several separate changes which were implemented or failed to be implemented as a result of the overall claim.[1] (See attachment)

---

[1] The amounts set forth in this Claim are estimates based on data provided to Claimant by the City, Collective Bargaining Agreements, the City's General Retirement System or other third parties. Claimant reserves the right to amend this Claim to include updated data, any appropriate changes in applicable actuarial assumptions which serve as the basis for the calculations of the amounts set forth herein, and any appropriate updates for Claimant's members or former

On November 21, 2013, the Court entered its order establishing bar dates For filing proofs of claim and approving the form and manner of notice thereof [Docket No. 1782] (the "Bar Date Order") establishing February 21, 2014 at 4:00 p.m. Eastern Time as the general claims bar date for filing poofs of claim in this case. Notably, while individuals or entities holding claims for, *inter alia*, Pension Obligations and OPEB Obligations were not required to file proofs of claim pursuant to the Bar Date Order, as the City has not (to date) determined how the claims for Pension Obligations and/or OPEB Obligations will be asserted and/or allowed, Claimant has filed portions of this Claim as a protective measure.

As the documents supporting this Claim – including without limitation the relevant statutes, charter and ordinances, grievances, unfair labor practice charges, collective bargaining agreements, Coalition Tentative Agreement, City Employment Terms, the books and records of the City's General Retirement System, and the City's communications with its employees and retirees – are voluminous, they are not attached to this Claim. Copies of the relevant documents supporting this Claim are or should be, upon information and belief, in the possession of the City.

Claimant expressly reserves the right to amend this Claim to re-characterize or further characterize all or any portion of these claims as administrative expenses or priority claims or to include such modifications, deletions or additions as may be just and proper.

Pursuant to the Bar Date Order, individual members of AFSCME Council 25, its affiliated Locals and the members of the Coalition have a right to file a proof of claim on their own behalf. Thus, Claimant reserves the right for other units or individual members to file proof

---

Claimant members who have or may become eligible in the future for pension benefits but whose data was not included in the herein calculations.

of claims in addition to this claim. Notably, the Coalition is filing an aggregate proof of claim for all outstanding claims—including those made by its affiliated unions. Claimant has put forth a good faith effort to provide an exhaustive list of all outstanding claims while avoiding duplicative filings; any unnecessary duplication is not intentional and will be resolved.

The filing of this Proof of Claim is not intended to and should not be construed to be a consent or submission to the jurisdiction of this Court for any reason.

The filing of this Claim is not and should not be deemed a waiver of any Claimants' challenge to the legal validity of this bankruptcy or any legal claims relating to the bankruptcy and/or Detroit's assets. Furthermore, this Claim shall not be deemed or construed to be a waiver of the rights of the Claimant (1) to have final orders with respect to non-core matters entered only after *de novo* review by the United States District Court, (2) to trial by jury in any proceeding so triable in these cases or any case, controversy, or proceeding related to these cases, (3) to have the United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, (4) to assert any other rights, claims, actions, setoff or recoupments to which the Claimant is or may be entitled in law or in equity, all of which rights, claims, actions, defenses, setoffs, and recoupment the Claimant expressly reserves, and (5) to assert any and all rights or claims against others jointly or severally liable for the sums claimed herein.

# EXHIBIT 1 FOR COALITION OF DETROIT UNIONS PROOF OF CLAIM

| ISSUE NAME | DESCRIPTION |
|---|---|
| Financial losses due to imposition | In July 2012, The City unilaterally imposed the City Employment Terms. Because of the implementation of the CET, failure to bargain, and failure to execute the Coalition TA, Coalition members suffered significant losses due to the imposition of wage and benefit concessions. These loses are from at least as early as 2012 and continue into the future for present employees and employees who have/will retire. Additionally, Coalition members and their unions have suffered losses due to the breaches of collective bargaining agreements, CET terms and orders or actions of the Emergency Manager. |
| Agency Shop | Had the Coalition TA been executed as a contract, employee union security clauses in Coalition contracts would have been continued through the end of the CBA term. Thus, any loss of dues compensation to the union due to the absence of this contract is a claim. |
| Dues Check off without charge | The July 2012 City Employment Terms provided that the City charge a 2% fee for the collection of all dues. This fee would not have been present had the City signed the Coalition TA, or bargained in good faith. |
| Grievance / Discipline | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, employee past records used for the determination of discipline went from 14 months to 3 years. Thus, any employee disciplined/fired due to past record between 14 months and 3 years old is a claimant. The union lost dues for any such separated employee as well. |
| Seniority | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, the employee probationary period expanded from 3 months to 6 months. Any probationary employee discharged within the 3 – 6 month window is a claimant. The union lost potential dues for any such separated employee. |
| Outsourcing | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, unions and employees lost the contractual protections in place when the City sought to privatize union work. Under protections in the Coalition TA, employees could not lose overtime or their position as a result of their work being outsourced the Coalition lost dues from the separated employee as well. |
| Maintenance of conditions | Under the Coalition union contracts, the Employer agreed to maintain the employment conditions which were in place at the time the contract was signed, even if not specified in the union contract. Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, the employees lost various benefits which would have been protected under the maintenance of conditions clauses. |
| Successor clause | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, the City eliminated the "successor clause" in Coalition union contracts. This clause required any third parties which were assigned City operations to take the obligations of the union contract, as well as the employees. |
| "Me Too" language | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, the Coalition union contracts lost the economic disadvantage provision ("me too") – where any union employee compensation enhancements offered elsewhere in the City would have also been given to Coalition union members. |

| | |
|---|---|
| Sick Leave | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, all employees and anyone who retired after July 18, 2012 lost any sick time accrued from that point forward, for potential payout (even though the Coalition TA placed a limit on the use of sick time for Final Average Compensation). |
| Sick leave | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, Coalition members lost accrual of sick leave beyond a cap of 300 hours. Sick leave is accumulated at 1 sick day (8 hours) per month. Coalition members have lost sick time for every hour they would have accrued beyond 300 hours in the future. |
| Sick leave | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, Coalition members lost reserve sick time. Employees with at least 1600 hours on payroll through the year earn five Reserve Sick Days. The benefit is awarded each year on July 1st. |
| Sick leave | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, the Coalition members lost bonus vacation days. Coalition union contracts awarded 1-6 bonus vacation days for unused sick days. The benefit is awarded each year on July 1st. |
| Shift Premium | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, the Coalition members lost shift premium. The afternoon shift went from $.70 to $.25 and night shift from $.75 to $.50, per hour. |
| Overtime | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, Coalition members lost double-time both for work on Sundays and work beyond 16 hours in one shift. |
| Holidays | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, Coalition members lost three annual swing days and a fourth election (or excused time) day. |
| Vacation | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, Coalition members lost prorated accrual of vacation for employees with less than 20, or less than 15, years of service. A new vacation schedule was established, which resulted in a significant reduction of vacation hour accruals. |
| Health care | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, the Coalition employees had significant losses in health insurance coverage and increased cost-sharing. |
| Workers Compensation | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, Coalition members lost certain policy provisions surrounding City workers compensation coverage. |
| Death and Life Benefits | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, Coalition members lost certain policy provisions surrounding City death and life benefit coverage. |
| Clothing Allowance | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, Coalition members lost annual clothing and uniform allowance, to having it paid bi-annually. |
| 2013 furloughs | Because of the City's implementation of the CET, failure to bargain, and failure to execute the Coalition TA, a number of the Coalition members were forced to work at less than a full 40 hour week, beginning in February 2013, and for the bulk of the year 2013. |
| **TOTAL CLAIM AMOUNT** | **Not less than $255,496,436.50 (estimate)** |