**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**HAAS & GOLDSTEIN, P.C.'S MOTION FOR RECONSIDERATION OR CLARIFICATION OF AMENDED OPINION REGARDING MOTIONS FILED BY THE CITY OF DETROIT, DATED APRIL 19, 2016**

HAAS & GOLDSTEIN, P.C.
JUSTIN HAAS (P53153)
MATTHEW S.PAYNE (P73982)
31275 Northwestern Hwy, Ste. 225
Farmington Hills, MI 48334
(248) 702-6550

HS&A, P.C.  (Of Counsel)
MARGUERITE HAMMERSCHMIDT P53908
123 South Main Street, Suite 110
Royal Oak, MI 48067
(248) 988-8335

Dated:      May 3, 2016

## INTRODUCTION

On April 19, 2016, this Court issued an Amended Opinion Regarding Motions Filed by the City of Detroit: 1) for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring the Dismissal of the State Court Action Filed by Tanya Hughes; 2) for (I) Determination that the Goodman Acker and Haas & Goldstein Law Firms Have Violated the Plan of Adjustment by (A) Refusing to Honor an ADR Settlement and/or (B) Seeking Relief on a Pre-petition Claim Beyond that Allowed by the Plan of Adjustment and (II) Order Enjoining Further Violations; and 3) for Entry of an Order (I) Enforcing the Plan of Adjustment and (II) Requiring the Withdrawal with Prejudice of the August 2, 2013 Grievance Filed by the Senior Accountants, Analysts, and Appraisers Association on Behalf of Cedrick Cook ("Amended Opinion").

In the Amended Opinion, this Court applied the "fair contemplation" test to the facts and ruled that the treatment rendered post-petition arose pre-petition, absolving the City of Detroit of any liability for interest and attorney fee penalties delineated in the No-Fault Act ("NFA") as per the Eighth Amended Plain for the Adjustment of Debts ("Plan"). Haas & Goldstein, P.C. ("H&G") is not asking for reconsideration of this determination.

The Amended Opinion additionally ordered H&G to dismiss its state court action, as all pre-petition claims for no-fault benefits from the City of Detroit are claims against the bankruptcy estate, making this Court the proper venue to assert them. H&G requests that this Court reconsider this portion of the ruling and either determine state court to be the proper venue to litigate the validity of a particular no-fault claim against the City of Detroit or, alternatively, to clarify the proper procedure for bringing such a claim in this Court.

## **RELEVANT FACTS AND PROCEEDINGS**

On August 4, 2014, H&G filed a complaint in the Wayne County Circuit Court on behalf of Summit Medical Group and Summit Physicians Group (collectively, "Summit") to seek payment for outstanding no-fault benefits arising out of treatment rendered to Sheila Williams from the City of Detroit, a self-insurer under the NFA. **Exhibit 1 – Complaint**.

On June 4, 2015, H&G filed a Motion for Partial Summary Disposition to Compel Payment of Interest and Attorney Fees in that action. The Motion evidences several payments that the City of Detroit issued after litigation commenced and alleged that those payments were overdue and unreasonably delayed, implicating the penalty provisions of the NFA. The Motion requested

that the trial court enter an order that the City of Detroit was liable for interest and attorney fees. **Exhibit 2 – Motion**. The City of Detroit responded by arguing that the treatment at issue arose pre-petition, and was thus subject to the limitations of the Plan, exculpating it from liability for the requested penalties. **Exhibit 3 – Response**.

The City of Detroit then filed the second of the three motions listed above in this Court, asking primarily for this Court to determine that H&G was not entitled to seek NFA penalties in the state court action and to enjoin any future requests for those penalties on pre-petition claims. In the final paragraph, the motion also requested a ruling that this Court is the proper venue to dispute the *timing* of the City of Detroit's payment for all pre-petition claims. **Exhibit 4 – Motion**.

On June 15, 2015, this Court entered an Order on Stipulation Regarding the motion. The Order on Stipulation expressly defines the "unresolved issue" as whether H&G "can seek to recover interest and attorney fees under the no-fault act and the confirmed Eighth Amended Plain of the Adjustment of Debts of the City of Detroit." The Order on Stipulation also states, *"This Order fully resolves the Motion, except with respect to the "unresolved issue.'"* **Exhibit 5 – Stipulated Opinion**.

Ultimately, this Court issued the Amended Opinion, ruling in the City of Detroit's favor and concluding that treatment rendered post-petition nonetheless arose pre-petition. Consequently, the Plain precludes H&G from seeking NFA penalties for all treatment at issue in the state court action. However, the Amended Opinion went on to order H&G to dismiss the state court action, but indicating that the dismissal would be without prejudice as to Summit's right to payment in accordance with the terms of the Plan.

## LAW AND ARGUMENT

The sole issue for which H&G requests reconsideration or clarification pertains to the procedure for asserting a claim under the Plan. As shown below, the Plan still requires a determination of "validity" before the City of Detroit becomes liable to process payment. H&G is uncertain the proper procedure to determine that validity and activate the City of Detroit's liability to process the claim.

### I. Standard for Reconsideration

With limited exceptions that do not apply to this matter, "Rule 60 F.R.Civ.P. applies in cases under the Code." **FRBP 9024**. "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order,

or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect…(6) any other reason that justifies relief." **FRCP 60(b)**.

### II. Summit should be entitled to allege and litigate the validity of its claim against the City of Detroit in state court.

At the outset, H&G notes that it was unaware that the dismissal of the state court action was even at issue subsequent to the Order on Stipulation having been entered, which resolved all issues presented in the subject motion aside from whether the City of Detroit was exempt from NFA penalties for treatment rendered post-petition for injuries related to a pre-petition accident. H&G's understanding was that all parties agreed that state court is the proper venue to dispute the validity of Summit's claim, which would result in either settlement or a jury trial to determine the particular amount for which the City of Detroit is liable.

Assuming H&G was mistaken in this regard, it requests reconsideration if this Court's determination. Put simply, H&G's position is that the "validity" of Summit's claim for no-fault benefits from the City of Detroit should be litigated in

state court, which would result in a settlement or a finding of fact as to the dollar amount of the City of Detroit's liability for the claim. H&G does not dispute that once the amount is set, this Court would be the proper venue to seek relief regarding the timing of payment. It is only once the validity of Summit's claim is determined that it is making any claim against the bankruptcy estate. Stated differently, the state court action would decide whether Summit has a bankruptcy claim at all.

The City of Detroit's motion is ambiguous in its request regarding the state court action. The most logical reading of paragraph 21 is that the City of Detroit has admitted that it is liable to pay 100% of Summit's charges for treatment to Ms. Williams, but that it simply has not had time to do so. That being the case, Summit requests that this Court expressly state that the City of Detroit is liable to pay all of those charges.

The only alternative is that the City of Detroit has denied the validity of the remaining charges and does not intend to issue payment at all. The Amended Opinion simply requires the City of Detroit to adjust Summit's claim in accordance with the Plan, which states:

> "From and after the Effective Date, the City will continue to administer (either-directly or through a third party administrator) and pay valid prepetition Claims for

> liabilities with respect to which the City is required to maintain insurance coverage pursuant to MCL § 500.3101 in connection with the operation of the City's motor vehicles, as follows: (1) Claims for personal protection benefits as provided by MCL § 500.3107 and MCL § 500.3108, for which insurance Coverage is required by MCL § 500.3101(1), **shall be paid in full, *to the extent valid***, provided, however, that the City will not be liable for or pay interest or attorneys' fees under MCL § 500.3142 or MCL § 500.3148 on *prepetition* Claims for personal protection benefits." **Exhibit 3 – Plan Excerpt** (emphasis added).

Summit must have the ability to challenge the City of Detroit's unilateral determination that portions if the claim are not valid. H&G's position is that the proper venue for such a challenge is state court.

Denying Summit the right to litigate the validity of its claim in state court essentially creates an illusory promise by the City of Detroit as negotiated with the State of Michigan and written into the Plan. Indeed, the City of Detroit could simply take the position that every claim is invalid and no provider would have recourse to argue and prove differently. Without the ability to challenge that determination, the City of Detroit can simply deny payment for every single pre-petition claim, leaving those claimants without recourse at all.

Even giving the City of Detroit the benefit of the doubt in that it would legitimately attempt to determine what constitutes a "valid" claim, there are

8

13-53846-tjt    Doc 11142    Filed 05/03/16    Entered 05/03/16 16:44:29    Page 8 of 13

other considerations involved that require the ability to file litigation to challenge the City of Detroit's adjustment, such as the temporal limitations contained in the NFA. By its own repeated admissions, the City of Detroit does not have the resources to process claims timely. Should the determination of validity take more than a year (and, for reference, Summit's services at issue in this action date back to June of 2013) and no litigation is filed to recover, the City of Detroit could never be held liable. The NFA contains two limitation provisions in a single provision:

> "An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced." **MCL 500.3145(1)**.
>
> "As early as 1984, this Court explained that this statutory provision contains separate and distinct limitations periods that relate both to the timing in which an action may be brought and the damages that

may be recovered." ***Joseph v. Auto Club Ins. Ass'n*, 491 Mich. 200, 207; 815 N.W.2d 412 (2012)**.

There is no provision in the Plan that circumvents these limitations in favor of claimants as against the City of Detroit. Consequently, even if the City of Detroit did adjust claims in good faith but simply could not do it timely, claimants would still be precluded from receiving benefits on valid claims.

Even from a practical standpoint, state court is the obvious proper venue to determine the validity of a particular claim. For Summit's charges to be compensable, it has the burden to prove that a particular no-fault insurer covered the loss at issue, that accidental bodily injury arose out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle, and that its charges were incurred for reasonably necessary products, services, or accommodations and were charged at a reasonable rate. See **MCL 500.3114, 500.3105, 500.3107**. Each of these elements must be proven for a particular claim to be "valid" under the NFA. Summit is also entitled to a jury trial on these issues.

NFA claimants must have the ability to sue the City of Detroit in state court to determine whether a claim is valid. It is only once a factual determination is made in state court regarding what claims are valid that any portion of the

bankruptcy proceeding is implicated. Only once a state court action determining validity is resolved could a claimant have standing to move this Court for issuance of payment out of the bankruptcy estate.

### III. If this Court disagrees as to state court jurisdiction to determine the validity of Summit's claim, Summit requests clarification as to the procedure to challenge the City of Detroit's determination here.

As this Court noted in the Amended Opinion, Summit remains entitled to payment from the City of Detroit per the Plan, which requires full payment for all valid claims. Without the state court litigation, H&G is unsure how to determine the validity of Summit's claim in this Court. To reiterate, H&G's position is that it does not have any claim against the bankruptcy estate unless and until the state court action is resolved and a particular amount is determined reflecting the extent of the validity of its claim.

Another concern is the unlimited nature of no-fault benefits, both temporally and in amount. In fact, Summit's claim in the state court action is a "second generation" claim, with certain benefits for treatment to Ms. Williams having already been resolved through settlement and additional benefits incurred thereafter. Ms. Williams, like any other claimant, may require treatment related to the motor vehicle accident for the rest of her life. Without the ability to bring

an action in state court, this bankruptcy action would have to remain open until the last pre-petition claimant passes away.

## CONCLUSION

WHEREFORE, H&G respectfully requests that this Court reconsider its Amended Opinion to permit Summit to pursue the state court action for the purpose of determining the validity of its claim only or, alternatively, for clarification as to the process to determine the validity of its claim in this Court.

Respectfully Submitted,

/s/JUSTIN HAAS
HAAS & GOLDSTEIN, P.C.
JUSTIN HAAS (P53153)
MATTHEW S. PAYNE (P73982)
31275 Northwestern Hwy, Ste. 225
Farmington Hills, MI 48334
(248) 702-6550

Dated: May 3, 2016

/s/ Marguerite Hammerschmidt
HS&A, P.C.
Marguerite Hammerschmidt P53908
123 South Main Street, Suite 110
Royal Oak, MI 48067
(248) 988-8335
admin@hammer-stick.com

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**PROOF OF SERVICE**

On the 3rd of May, 2016 a copy of **HAAS & GOLDSTEIN, P.C.'S MOTION FOR RECONSIDERATION OR CLARIFICATION OF AMENDED OPINION REGARDING MOTIONS FILED BY THE CITY OF DETROIT, DATED APRIL 19, 2016** and this Proof of Service was served electronically or by regular first class mail to the following:

Miller, Canfield, Paddock and Stone, P.L.C., Attn: Marc N. Swanson, 150 West Jefferson, Suite 2500, Detroit, MI 48226

City of Detroit Law Department, Attn: Charles N. Raimi, Deputy Corporation Counsel, 2 Woodward Avenue, Suite 500, Coleman A. Young Municipal Center, Detroit, MI 48226

Goodman Acker, P.C., Attn: Gerald Acker, 17000 West Ten Mile Road, 2nd Floor, Southfield, MI 48075

                                          **/s/Karen Nowicki**
                                          Karen Nowicki
                                          Employee of HS&A, P.C.