# EXHIBIT 2

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

SUMMIT MEDICAL GROUP, PLLC
and SUMMIT PHYSICIANS GROUP, PLLC,
(Sheila Williams)

                Plaintiffs,

v.

CITY OF DETROIT,

                Defendant.

Case No. 14-010025-NF
Honorable Patricia Fresard

14-010025-NF
FILED IN MY OFFICE
WAYNE COUNTY CLERK
6/4/2015 2:07:03 PM
CATHY M. GARRETT

| JUSTIN HAAS (P53153) | CHERYL L. SMITH-WILLIAMS (P56382) |
|---|---|
| HAAS & GOLDSTEIN, P.C. | CITY OF DETROIT LAW DEPT. |
| Attorney for Plaintiff | Attorney for Defendant |
| 31275 Northwestern Hwy, Ste. 225 | 2 Woodward Avenue, Ste. 500 |
| Farmington Hills, MI 48334 | Detroit, MI 48226 |
| (248) 702-6550; Fax: (248) 538-9044 | (313) 237-3068; Fax: (313) 224-5505 |
| jhaas@haasgoldstein.com | smitc@detroitmi.gov |

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY DISPOSITION, TO COMPEL PAYMENT OF INTEREST AND ATTORNEY FEES

NOW COMES Plaintiffs, by and through their attorneys, HAAS & GOLDSTEIN, PC, and for their Motion for Partial Summary Disposition to compel payment interest and attorney fees, hereby states as follows:

1.    This is a first-party action to recover unpaid medical expenses arising out of a May 10, 2012 motor vehicle collision in which Sheila Williams sustained injuries (**Exhibit A**, Deposition of Kelvin Lenton at 12:4-9).

2.    As a result of the injuries Ms. Williams sustained in the subject accident, Plaintiffs have been providing medical treatment to her since June 14, 2012 (**Exhibit B**, Plaintiffs' Bills).

.3. Defendant admits that it is first in order of priority to pay outstanding No-Fault Benefits that are due and owing for Ms. Williams's injuries arising out of the May 10, 2012 motor vehicle collision (**Exhibit A**, 12:20-23).

4. In April of 2013, Plaintiffs retained Haas and Goldstein, P.C., as counsel to file this first party provider lawsuit to compel the payment of benefits (**Exhibit C**, Complaints).

5. Plaintiffs' case against Defendant settled through bankruptcy for dates of service prior to July 18, 2013.[1]

6. Plaintiffs have a remaining outstanding balance totaling $31,687.39 for dates of service July 19, 2013 through the present for treatment provided to Ms. Williams (**Exhibit B**).[2]

7. Pursuant to the Michigan No-Fault Act Defendant is liable for personal protection insurance benefits for "**all reasonable charges incurred** for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation . . ." MCL 500.3107(1)(a). Furthermore, pursuant to MCL 500.3175(1), an "insurer to whom claims have been assigned shall make *prompt* payment of loss" in accordance with the no-fault law. Under MCL 500.3142(2), no-fault "**benefits are overdue if not paid within 30 days** after an insurer receives reasonable proof of the fact of the amount of loss sustained." Twelve percent penalty interest accrues if benefits are not paid within 30 days. *Id.*

---

[1] Plaintiffs' filed a new complaint on August 14, 2014 for the outstanding bills that were not included in the bankruptcy settlement (**Exhibit C**).

[2] The bills still reflect a total balance for treatment from 6/14/12 to the present as the settlement funds for dates of treatment 6/14/12 through 7/18/13 have not yet been paid.

4.     Defendant does not dispute that it has received reasonable proof of fact and of the amount of loss sustained (**Exhibit A**, 15:15-21; **Exhibit D**, Defendant's Answers to Plaintiffs' Interrogatories).

5.     Without notice to Plaintiffs' attorney during the course of this litigation, on or about December 19, 2014, Defendant began tendering direct payments to Plaintiffs for sporadic outstanding dates of service (**Exhibit B; Exhibit E,** Check Stubs). Specifically, on December 19, 2014, Defendant issued payments directly to Plaintiff totaling $3,486.87 for dates of service January 14, 2014, March 19, 2014, April 17, 2014, May 15, 2014 and May 19, 2014 (**Exhibit E**)[3]. On April 14, 2015, Defendant issued payments directly to Plaintiff totaling $1,122.01 for date of service November 18, 2014. On April 29, 2015, Defendant issued payments directly to Plaintiffs totaling $267.93 for dates of service October 16, 2013 and November 18, 2014.

6.     **Defendant admits that these payments were not paid within thirty days of receiving reasonable proof in accordance with the No-Fault Act** (**Exhibit A**, 30:15-317). Accordingly, there is no genuine issue of material fact that Defendant is liable for penalty interest, as Defendant did not issue interest on the payments that were admittedly overdue when made.

7.     Pursuant to MCL 500.3148(1), an **"attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue**. The attorney's fee shall be a charge against the insurer **in addition to the benefits recovered**, if the court finds that

---

[3] Bills were received by Defendant on 9/16/14, three months before Defendant issued payment (**Exhibit G**, EOBs).

3

13-53846-tjt    Doc 11142-2    Filed 05/03/16    Entered 05/03/16 16:44:29    Page 4 of 68

the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment."

8.      In failing to pay these benefits within thirty days of receiving reasonable proof of fact and of the amount of loss sustained, a presumption of unreasonable delay arose, entitling Plaintiffs to reasonable attorney's fees under MCL 500.3148. Defendant then bears the burden of proving that its delay in tendering payment of benefits was based on a **question of statutory construction** or **bona fide question of factual uncertainty**.

9.      Defendant has failed to offer proof that its delay in tendering payment was based on a question of statutory construction or a bonafide question of factual uncertainty. Rather, Defendant admitted that it almost never issues payments within the thirty day time frame, as it takes a minimum of thirty days to even review the bills (**Exhibit A**, 30:15-31:7).

10.     Additional proof of Defendant's unreasonable delay is that once litigation was commenced, Defendant paid a significant portion of Plaintiffs' outstanding bills that were subject to this litigation. Accordingly, **it is "no longer necessary to determine whether they were reasonable or necessary for [the injured person's] care, recovery, or rehabilitation and, thus, the question of whether the expense was reasonable and necessary became moot.** See MCL 500.3107(1)(a); MSA 24.13107(1)(a)." *Mantei v. American Fellowship Mut. Ins. Co.*, (1999).

11.     **In addition, any recovery of overdue personal protection benefits payable under an automobile no-fault insurance policy which is secured through the efforts of an attorney is a judgment or fund against which a lien by the**

4

**attorney for his fee can attach**. *Miller v Detroit Auto. Inter-Insurance Exchange* 139 Mich App 565 (1984). An attorney's lien is enforceable against a third party where the third party has actual notice of the lien or where circumstances known to the third party are such that the third party ought to have inquired as to the claim of the attorney. *Nichols v Waters*, 201 Mich 27, 34 (1918).

12. The aforementioned payments were made directly to Plaintiffs after Plaintiffs' counsel filed this lawsuit (**Exhibit C**; **Exhibit E**).

13. Despite having both constructive and actual notice of counsel's lien, Defendant tendered direct payment to Plaintiffs without counsel's knowledge, subsequent to Defendant being advised of Plaintiffs' attorney lien and subsequent to litigation being commenced. (**Exhibit C**). Moreover, **Plaintiffs' Counsel e-mailed Defendant several times and sent letters asking Defendant to please stop sending payments to the provider directly** (**Exhibit F**, Letter to Defendant; **Exhibit H**, Email to Defendant). **Defendant acknowledged that it was aware that it was to issue payments to Plaintiffs' Counsel and not to Plaintiffs directly** (**Exhibit A**, 24:3-24:15). Nevertheless, Defendant proceeded to issue these payments directly to the provider without Plaintiffs' law firm's name appearing on the draft.

14. Accordingly, Plaintiffs' law firm is entitled to be paid its attorney lien and/or a reasonable attorney fee.

15. Plaintiffs are bringing this motion for summary disposition to compel payment of interest and attorney fees on the aforementioned late payments made directly to Plaintiffs, despite Plaintiffs' Counsel's attorney lien.

16.     Michigan law is clear that a motion for summary disposition under MCR 2.116(C)(10) must be granted unless the nonmoving party presents affidavits or "admissible evidence" establishing a genuine issue of material fact. *Wheeler v Charter Twp of Shelby,* 265 Mich App 657, 663 (2005); MCR 2.116(G)(6).

16.     As Defendant City of Detroit has not provided admissible evidence to establish a genuine issue of material fact pursuant to MCR 2.116(C)(10), and for reasons more specifically set forth below, Plaintiffs' motion for partial summary disposition must be granted, entitling Plaintiff to the payment of interest and reasonable attorney fees pursuant to MCL 500.3148(1).

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant Plaintiffs' motion for partial summary disposition, ordering the payment of interest and reasonable attorney fees.

## BRIEF IN SUPPORT

### I.     INTRODUCTION

This is a first-party action to recover unpaid medical expenses arising out of a May 10, 2012 motor vehicle accident in which Sheila Williams sustained injuries. Plaintiffs have been providing medical treatment to Ms. Williams since June of 2012 as a result of her accident related injuries.

As further set forth below, Plaintiffs move for partial summary disposition pursuant to MCR 2.116(C)(10) as there is no genuine issue of material fact that Defendant's payments issued to Plaintiffs after litigation commenced were overdue at the time payment was issued, and interest and attorney fees are owing. Moreover, there is no genuine issue of material fact that Defendant issued payments directly to

Plaintiffs in violation of Plaintiffs' counsel's attorney lien. Accordingly, Partial Summary Disposition pursuant to MCR 2.116(C)(10) is appropriate in this case.

## II.    STANDARD FOR SUMMARY DISPOSITION

Summary disposition is proper where "except as to the amount of damages, there is no genuine issue as to any material fact." MCR 2.116(C)(10). "Under MCR 2.116(C)(10), the motion tests the factual support for a claim and must be supported by affidavits, depositions, admissions, or other documentary evidence." *Maiden v. Rozwood,* 461 Mich. 109, 120; 597 N.W.2d 817 (1999). "A court properly grants the motion when the proffered evidence, viewed in the light most favorable to the nonmoving party, fails to establish any genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *West v. Gen. Motors Corp.,* 469 Mich. 177, 183; 665 N.W.2d 468 (2003).

## III.   UNDISPUTED FACTS

Plaintiffs noticed the deposition of Defendant's claim representative, Kelvin Lenton, to take place on February 18, 2015, pursuant to MCR 2.306. Defendant produced Kelvin Lenton for deposition in accordance with the notice. He testified that he was the claim representative on Ms. Williams's file and that he was the best person to testify on behalf of Defendant:

Q:    Have you handled this file since June of 2013?

A:    Yes.

Q:    Have you handled it the whole time, even prior to that?

A:    Yes.

Q:    And as we sit here, you're the person with authority to pay this claim?

A:      Yes.

(**Exhibit A**, 11:8-16)

Defendant admits that there is no dispute that Ms. Williams was involved in a motor vehicle accident on May 10, 2012 and that she sustained injuries:

Q:      You don't dispute that Ms. Williams was involved in a motor vehicle accident, right?

A:      Do not dispute.

Q:      And you don't dispute that she sustained some injuries in that accident.

A:      I don't dispute that.

(**Exhibit A**, 12:4-9)

Further, Defendant admitted that it has no basis to dispute that it is first in order of priority to issue payment of Ms. Williams's benefits:

Q:      Do you have any information or basis to tell me that there's a higher order of priority PIP insurer to pay for this claim?

A:      No basis.

(**Exhibit A**, 12:20-23)

Plaintiffs have been providing treatment to Ms. Williams since June of 2012 (**Exhibit B**). In April of 2013, Plaintiffs retained Haas and Goldstein, P.C., as counsel to file this first party provider lawsuit to compel the payment of benefits (**Exhibit C**). Plaintiffs' case against Defendant settled through bankruptcy for dates of service November 20, 2012 through July 18, 2013. Plaintiffs have a remaining outstanding

balance totaling $31,687.39 for dates of service July 19, 2013 through the present for treatment provided to Ms. Williams (**Exhibit B**).[4]

Defendant does not dispute that it has received reasonable proof of fact and of the amount of loss sustained (**Exhibit A**, 15:15-21; **Exhibit D**, Defendant's Answers to Plaintiffs' Interrogatories; **Exhibit G**).

Without notice to Plaintiffs' attorney during the course of this litigation, on or about December 23, 2014, Defendant began tendering **direct payments to Plaintiffs** for sporadic outstanding dates of service (**Exhibit B; Exhibit E**). Specifically, on December 23, 2014, Defendant issued payments directly to Plaintiff totaling $3,486.87 for dates of service January 14, 2014, March 19, 2014, April 17, 2014, May 15, 2014 and May 19, 2014 (**Exhibit E**)[5]. On April 14, 2015, Defendant issued payments directly to Plaintiff totaling $1,122.01 for date of service November 18, 2014. On April 29, 2015, Defendant issued payments directly to Plaintiffs totaling $267.93 for dates of service October 16, 2013 and November 18, 2014. On May 1, 2015, Defendant issued payment directly to Plaintiffs totaling $1,122.01 for date of service November 18, 2014[6].

Despite having both constructive and actual notice of counsel's lien, Defendant tendered direct payment to Plaintiff without counsel's knowledge, subsequent to Defendant being advised of Plaintiff's attorney lien and subsequent to litigation being commenced. (**Exhibit E**). Moreover, **Plaintiff's Counsel e-mailed Defendant several times and sent Defendant letters asking Defendant to please stop sending payments to the provider directly** (Exhibit F; Exhibit H). **Defendant acknowledged**

---

[4] The bills still reflect a total balance for treatment from 6/4/12 through the present as the settlement funds for dates of treatment 6/4/12 through 7/18/13 have not yet been paid.
[5] Bills were received by Defendant on 9/16/14, three months before Defendant issued payment (**Exhibit G**, EOBs).

**that it was aware that it was to issue payments to Plaintiff's Counsel and not to**

**Plaintiff directly**:

> Q:   What I have is an explanation of Benefits. The process date is June 12, 2013. And there's a handwritten note on here. Is that your handwriting, Mr. Lenton?
>
> A:   It appears to be.
>
> Q:   Okay. **And it looks like you had indicated not to issue payment directly to providers. Is that accurate?**
>
> A:   That is correct.

**(Exhibit A**, 24:3-11)

Nevertheless, Defendant proceeded to issue these payments directly to the provider without Plaintiffs' law firm's name appearing on the draft.

**Furthermore, Defendant admits that these payments were not paid within thirty days of receiving reasonable proof in accordance with the No-Fault Act** **(Exhibit A**, 30:15-317; **Exhibit E**). Despite Defendant's admission, Defendant failed to issue interest payments along with the aforementioned late payments. Accordingly, as further set forth below, Plaintiffs are entitled to mandatory interest and Plaintiffs' law firm is entitled to be paid its attorney lien and/or a reasonable attorney fee.

**IV.   LAW AND ARGUMENT**

**A. Defendant is liable for penalty interest for the aforementioned overdue payments.**

"Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). "An overdue payment bears simple interest at the rate

---

[6] Two payments, each in the amount of $1,122.01, have been issued directly to Plaintiffs for date of service

of 12% per annum." MCL 500.3142(3). The reasonableness of the insurer's actions or the insurer's good faith in not timely paying benefits is irrelevant. The trial court must assess penalty interest against a no-fault insurer if the insurer refuses to pay benefits after receiving reasonable proof of loss and it is later determined to be liable, notwithstanding the insurer's good faith in not promptly paying the benefits. See *Williams v. AAA Michigan*, 250 Mich.App. 249, 265, 646 N.W.2d 476 (2002) and *Davis v. Citizens Ins. Co. of America,* 195 Mich.App. 323, 328; 489 N.W.2d 214 (1992).

Defendant failed to issue payment to Plaintiffs within 30 days of receiving reasonable proof of the fact and of the amount of loss sustained. As set forth above, Defendant's claim specialist confirmed the same. Accordingly, as outstanding benefits were well overdue at the time payment was issued, Defendant is liable for mandatory penalty interest.

Michigan law is clear that a motion for summary disposition under MCR 2.116(C)(10) must be granted unless the nonmoving party presents affidavits or "admissible evidence" establishing a genuine issue of material fact. *Wheeler v Charter Twp of Shelby,* 265 Mich App 657, 663 (2005); MCR 2.116(G)(6). Further, Defendant cannot put forth an affidavit claiming that it has a reason for denying payment for Plaintiffs' undisputed charges. An affidavit in support of a motion for summary disposition cannot contradict prior deposition testimony. "It is well settled that a party may not raise an issue of fact by submitting an affidavit that contradicts the party's prior clear and unequivocal testimony" *Palazzola v. Karmazin Prods. Corp.*, 223 Mich. App.

November 18, 2014.

141, 155 (1997). This Court has discussed the reasons for such a rule. "When a party makes statements of fact in a 'clear, intelligent, unequivocal' manner, they should be considered as conclusively binding against him in the absence of any explanation or modification, or of a showing of mistake or improvidence." *Dykes v William Beaumont Hospital*, 246 Mich. App. 471, 480; 633 N.W.2d 440 (2001), quoting *Barlow v John Crane-Houdaille, Inc*, 191 Mich. App. 244, 250; 477 N.W.2d 133 (1991), quoting *Gamet v Jenks*, 38 Mich. App. 719, 726; 197 N.W.2d 160 (1972).

Accordingly, as Defendant's claim representative testified that Defendant issued overdue payments to Plaintiffs, it cannot now create a question of material fact by affidavit or otherwise regarding any reason the overdue benefits remained unpaid for months.

**B. There is no genuine issue of material fact that Plaintiffs' law firm is entitled to be paid its attorney lien and/or fee on all amounts recovered on behalf of Plaintiff, *in addition to* the claims paid.**

Pursuant to MCL 500.3148(1), an

> "attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment."

As the no-fault Act requires "prompt payment" of PIP benefits, any delay or denial of payment is presumptively unreasonable, shifting the burden of proving reasonableness of the actions to the insurer. *Combs, supra; Attard v Citizens Ins. Co. of America*, 237 Mich App 311, 317; 602 NW2d 633 (1999) (emphasis added). A rebuttable presumption of undue delay arises when benefits are not paid within thirty days after the insurer receives reasonable proof of loss. MCL 500.3142(2) (emphasis added).

See *Conway v. Continental Ins. Co.*, 180 Mich. App. 447, 452 (1989). *Bradley v DAJIE*, 130 Mich App 34, 46; 343 NW2d 506 (1983); *Bloemsma, supra at* 696-697. **The only way to rebut this presumption is for the insurer to show that the denial of or delay in payment is the product of a legitimate question of statutory construction, constitutional law or factual uncertainty**. *Attard, supra* (emphasis added).

In addition, any recovery of overdue personal protection benefits payable under an automobile no-fault insurance policy which is secured through the efforts of an attorney is a judgment or fund against which a lien by the attorney for his fee can attach. *Miller v Detroit Auto. Inter-Insurance Exchange* 139 Mich App 565 (1984). An attorney's lien is enforceable against a third party where the third party has actual notice of the lien or where circumstances known to the third party are such that the third party ought to have inquired as to the claim of the attorney. *Nichols v Waters*, 201 Mich 27, 34 (1918).

Defendant's partial payments were admittedly made months after Defendant received reasonable proof of fact and of the amount of loss sustained (**Exhibit A**, 30:15-20). Defendant has failed to offer proof that its delay in tendering payment was based on a question of statutory construction or a bonafide question of factual uncertainty. Rather, Defendant admitted that it almost never issues payments within the thirty day time frame, as it takes a minimum of thirty days to even review the bills (**Exhibit A**, 30:15-31:7). Simply stated, the claim was inexcusably unpaid without explanation for months, triggering Defendant's statutory obligation to pay Plaintiffs' reasonable attorney fees.

Additional proof of Defendant's unreasonable delay is that once litigation was commenced, Defendant paid Plaintiffs' outstanding bills that were subject to this litigation. Accordingly, **it is "no longer necessary to determine whether they were reasonable or necessary for [the injured person's] care, recovery, or rehabilitation and, thus, the question of whether the expense was reasonable and necessary became moot.** See MCL 500.3107(1)(a); MSA 24.13107(1)(a)." *Mantei v. American Fellowship Mut. Ins. Co.*, (1999).

As set forth above, the partial payments were made directly to Plaintiffs after Plaintiffs' counsel filed this lawsuit. Despite having both constructive and actual notice of counsel's lien, Defendant tendered direct payment to Plaintiffs without counsel's knowledge, subsequent to Defendant being advised of Plaintiffs' attorney lien and subsequent to litigation being commenced (**Exhibit A**, 24:3-15**; Exhibit C; Exhibit E; Exhibit H**). These payments were made directly to the provider without Plaintiffs' law firm's name appearing on the draft (**Exhibit E**). Accordingly, Plaintiffs' law firm is entitled to be paid its attorney lien and/or fee, *in addition to* the claims that were paid.

## IV. Conclusion

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant Plaintiffs' motion for partial summary disposition, ordering the payment of interest and reasonable attorney fees.

**CERTIFICATE OF SERVICE**
The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on _____ 6/1 _____ 20 15 .
By: ☐ Overnight Courier   ☐ FAX        ☐ E mailed
    ☐ Hand Delivered       ☐ U.S. Mail   ☒ E filed
    ☐ Certified Mail        ☐ Scanned    ☐ Other
Signature _____
Dated:  June 1, 2015

Respectfully submitted,

*/s/Justin Haas*
JUSTIN HAAS (P53153)
Attorney for Plaintiffs
31275 Northwestern Highway, Suite 225
Farmington Hills, MI 48334
(248) 702-6550

# EXHIBIT A

STATE OF MICHIGAN

IN THE CIRCUIT COURT, COUNTY OF WAYNE


SUMMIT MEDICAL GROUP, PLLC,
and SUMMIT PHYSICIANS GROUP, PLLC,
(Sheila Williams)

     Plaintiffs,

                          Case No.: 14-010025-NF
vs.                   Honorable Patricia Fresard


CITY OF DETROIT,

     Defendant.


        \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*


  The deposition of KELVIN LENTON taken in the above-entitled

cause before Susan E. Castino, (CSR 4856) and Notary Public

for the County of Wayne, Michigan, at 2 Woodward Avenue,

Detroit, Michigan, on February 18, 2015, commencing at or

about the hour of 10:00 a.m.

Page 1

Page 2

```
1    APPEARANCES:
2        MATTHEW PAYNE (P73982)
         Haas & Goldstein, PC
3        31275 Northwestern Highway, Suite 225
         Farmington Hills, MI 48334
4        248.702.6550
5            APPEARING ON BEHALF OF THE PLAINTIFF
6
7
8        CELESTA CAMPBELL (P54382)
         City of Detroit Law Department
9        2 Woodward Avenue, Suite 500
         Detroit, MI 48226
10       313.237.3068
         campc@detroitmi.gov
11
             APPEARING ON BEHALF OF THE DEFENDANTS
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1              I N D E X
2    DEPOSITION OF KELVIN LENTON
3        Direct Examination by Mr. Payne ................... 4
4
5
6
7              E X H I B I T S
8
9
10       (None were marked.)
11
12
13
14
15
16
17
18
19
20   CERTIFICATE OF NOTARY ................................. 34
21
22
23
24
25
```

Direct Examination by Mr. Payne .... 4

CERTIFICATE OF NOTARY .... 34

Page 4

```
1        (On the record at 10:10 a.m.)
2    WHEREUPON,
3        KELVIN LENTON,
4    having first been duly sworn, was examined
5    and testified on his oath as follows:
6        THE WITNESS: Yes.
7        DIRECT EXAMINATION
8    BY MR. PAYNE:
9    Q   Good morning, Mr. Lenton. My name is Matt Payne.
10       I'm here representing Summit Medical Group and
11       Summit Physicians Group regarding Sheila Williams.
12       And it's my understanding that you're the adjuster
13       for the City of Detroit in that claim.
14   A   Good morning. And yes.
15   Q   How long have you been with the City of Detroit?
16   A   Fifteen years.
17   Q   And have you been an adjuster for that entire
18       time?
19   A   No.
20   Q   What was your prior job?
21   A   Law clerk.
22   Q   And how long have you been an adjuster?
23   A   Probably, 14 years.
24   Q   Can you briefly describe your duties as an
25       adjuster for the City for me?
```

Page 5

```
1    A   I adjust the claim bills. If there's an
2        investigation conducted, the investigation.
3    Q   Okay.?
4        MS. CAMPBELL: Can we go off the
5        record for a second?
6        MR. PAYNE: Sure.
7        (Off the record.)
8    Q   (By Mr. Payne) So it's my understanding, after a
9        brief discussion off the record, that you don't
10       actually work for the City of Detroit; is that
11       true?
12   A   No.
13   Q   You work for York Risk Management?
14   A   That's correct.
15   Q   And when did that change, October of last year?
16   A   September.
17   Q   September. Okay.
18       But you still adjust claims filed with the
19       City of Detroit for personal protection insurance
20       benefits?
21   A   Yes.
22   Q   Have you had any training in that regard?
23   A   Some.
24   Q   And can you describe that for me, please?
25   A   On-the-job training, seminars, classes, college
```

2 (Pages 2 to 5)

**Page 6**

1  classes.
2  Q  Can you tell me what your highest level of
3     education is.
4  A  Law degree.
5  Q  Okay. Where did you get your law degree?
6  A  University of Detroit.
7     They call it University of Detroit Law, now.
8  Q  Have you had any certifications or anything
9     outside the City of Detroit outside of York Risk
10    Management pertaining to adjustment of PIP claims?
11 A  I have my adjuster's license.
12 Q  Okay. When did you get that?
13 A  Somewhere around October of last year.
14 Q  Okay.
15 A  September or October of last year.
16 Q  Was that --
17 A  Maybe earlier.
18    Roughly, August of last year. I'm trying to
19    think. August of last year. Yeah.
20 Q  Was that part of the transition to York?
21 A  Correct.
22 Q  They required that for you to go work there?
23 A  Correct. Yes.
24 Q  So, obviously, in all these years -- I mean, you
25    have a law degree, all these years adjusting PIP

**Page 7**

1  claims, you're, obviously, familiar the
2  No-Fault Act.
3  A  Somewhat.
4  Q  And you would be familiar with the standard when
5     no-fault benefits are to be paid?
6  A  Yes.
7  Q  And bear with me. This is a little bit long, but
8     I'm going to try to summarize that standard.
9        Would you agree with me that it's to pay
10    reasonable charges incurred for reasonably
11    necessary services for an injured person's care,
12    recovery or rehabilitation regarding injuries
13    sustained in a motor vehicle accident?
14 A  I agree.
15 Q  And you're aware that there are certain
16    limitations regarding the timing of paying
17    benefits in the No-Fault Act, as well?
18 A  Yes.
19 Q  And that would generally be to pay out within
20    30 days of receipt of reasonable proof of the fact
21    of amount of loss?
22 A  Yes.
23 Q  And that if benefits aren't paid within that time
24    after reasonable proof has been submitted, that
25    penalty interest in the amount of 12 percent per

**Page 8**

1  annum would be applied?
2  A  Yes.
3  Q  And that additionally, if litigation has to be
4     filed to recover unpaid benefits, it's possible
5     that attorney fees could be awarded based on a
6     finding of unreasonable delay or denial?
7  A  Yes.
8  Q  Mr. Lenton, do you have any medical training or
9     degrees?
10 A  No.
11 Q  So when you adjust some of these claims and you're
12    trying to determine necessity and causation of
13    treatment and those sorts of things, you would
14    rely on doctors to kind of make those
15    determinations for you?
16 A  Yes.
17 Q  Do you personally determine what constitutes a
18    reasonable rate for service?
19 A  No.
20 Q  And who do you rely on for that?
21 A  The bills are -- excuse me -- the bills are
22    audited or adjusted.
23 Q  Okay. Does York do that internally, do you know?
24 A  Now?
25 Q  Yes.

**Page 9**

1  A  Yes.
2  Q  So for this claim, after the transition to York
3     last year, all of those bills get audited in-house
4     at York?
5  A  It's a division of York, yes.
6  Q  Okay. Do you know how they come up with the
7     adjusted rates?
8  A  No idea.
9  Q  Okay. Do you know -- do you have a contact person
10    that you could talk to on a particular claim to
11    find out that information?
12 A  No.
13 Q  Okay. Can you tell me a little bit about the
14    process as far as you receive a bill for medical
15    services.
16 A  Uh-huh.
17 Q  What happens, then, to determine -- let's say you
18    decide it's payable. What happens, then, to
19    determine the rate that's paid?
20 A  Now?
21 Q  Yes, please.
22 A  Well, it's -- it's sent out to be audited at a
23    separate division of York.
24 Q  So you get the bill in. You send it -- is it
25    e-mail, fax or internal mail -- you have like a

3 (Pages 6 to 9)

Chapa & Giblin Court Reporters
(313) 961-2288
13-53846-tjt   Doc 11142-2   Filed 05/03/16   Entered 05/03/16 16:44:29   Page 19 of 68

Page 10

1    drop box you put it in?
2    A    No.  It goes into the computer system by our input
3    people.
4    Q    Okay.  Do you have claims processors, then, or
5    something along those lines?
6    A    It's automatically put into the computer.
7    Q    So you do have somebody -- before you even see a
8    bill, does it go through that process, it gets put
9    into the computer by data entry personnel?
10   A    Yes.
11   Q    And then at the same time, it probably goes
12   through the auditing process and also goes to you?
13   A    Kind of.  The computer makes a sweep every night
14   of medical bills and they automatically go for
15   review.
16   Q    Do you -- are you notified -- when the bills come
17   in that nightly sweep, are you notified, then,
18   that the bills are in?
19   A    Yes.
20   Q    For the claims that you handle, obviously.
21   A    Yes.
22   Q    So is it kind of simultaneous, then.  You get a
23   bill in.  It gets entered into the computer.  It
24   goes for review for the reasonable rate.  And then
25   it also goes to you at the same time.

Page 11

1    A    Well, not at the same time.  The review process
2    has to take place first and then it comes back to
3    my computer reviewed.
4    Q    Okay.  So you know that it's in, but you don't
5    really have anything to look at until it goes
6    through the auditing process.
7    A    Correct.
8    Q    Gotcha.  Have you handled this file since
9    June of 2013?
10   A    Yes.
11   Q    Have you handled it the whole time, even prior to
12   that?
13   A    Yes.
14   Q    And as we sit here today, you're the person with
15   authority to pay this claim?
16   A    Yes.
17   Q    And it's actually my understanding that there
18   hasn't been a denial, true?
19   A    Correct.
20   Q    So there are still bills being processed and that
21   whole procedure is still being followed as far as
22   any bills that are coming at this point?
23   A    That's correct.
24   Q    Does York have a special investigations unit?
25   A    Not to my knowledge.

Page 12

1    Q    And I do just briefly want to run through a couple
2    of things, here, even though I know there's no
3    denial.
4        You don't dispute that Ms. Williams was
5    involved in a motor vehicle accident, right?
6    A    Do not dispute.
7    Q    And you don't dispute that she sustained some
8    injuries in that accident.
9    A    I don't dispute that.
10   Q    And you also don't dispute that the
11   City of Detroit is first in order of priority to
12   pay her PIP benefits for that accident?
13       MS. CAMPBELL:  Can we go off the
14   record?
15       MR. PAYNE:  Sure.
16       (Off the record.)
17   Q    (By Mr. Payne)  All right.  Mr. Lenton, after a
18   brief discussion with your attorney, I'm going to
19   rephrase the question.
20       Do you have any information or basis to tell
21   me that there's a higher order of priority PIP
22   insurer to pay for this claim?
23   A    No basis.
24   Q    Okay.  Would agree with me that in your time as an
25   adjuster both for the City of Detroit and for York

Page 13

1    that you would not issue payment for benefits
2    unless you've received reasonable proof for those
3    charges?
4    A    Correct.
5    Q    So you would agree with me that all benefits paid
6    specifically on Ms. Williams' claim have been
7    properly paid.
8    A    Correct.
9    Q    And you don't have any basis to dispute that the
10   treatment provided by Summit Medical Group and
11   Summit Physicians Group actually happened, right?
12   A    None.
13   Q    Would you agree with me that the fact that a claim
14   goes into litigation is not a basis to deny
15   payment?
16   A    Correct.
17   Q    Now, I did go through the claim file.  And I do
18   have a couple just general questions getting back
19   to that procedure.
20       When you get -- when you receive a bill from
21   a provider on a given claim is there a timestamp
22   or some other method to determine when it was
23   received?
24   A    Date stamp?
25   Q    Sure.

4  (Pages 10 to 13)

**Page 14**

1    A    Yeah, date stamp.
2    Q    Is it electronic or is it physically on the
3         records?
4    A    I'm not aware how they put it on there --
5    Q    Okay.
6    A    -- on the face of the bill.
7    Q    But in your system, there's a way to kind of bring
8         up maybe a summary of what bills were submitted
9         and on what date?
10   A    Yes.
11   Q    Okay.  And you do use -- I don't know if you call
12        it an activity log -- but you do make notes on
13        every claim; is that true?
14   A    Yes.
15   Q    And you would agree with me that the notes that
16        you make are kind of the important or significant
17        type actions or decisions?
18   A    Yes.
19   Q    And that would include, you know, bill payment or
20        bill receipt, denial bases, that sort of thing?
21   A    Yes.
22   Q    Would you agree with me that generally for a
23        medical provider, that reasonable proof would
24        constitute the billing, the HCFA forms, possibly a
25        billing ledger and then the corresponding medical

**Page 15**

1         records?
2    A    Yes.
3    Q    Are you aware of any preexisting injuries for
4         Ms. Williams that may come into play in this claim
5         at all?
6    A    Not to my knowledge, no.
7    Q    Okay.  I have your answers to my interrogatories
8         in front of me.  And it was -- I believe you and
9         your attorney answered these.
10        Do you remember doing that?
11   A    Yes.
12   Q    It was probably just a few weeks ago -- or within
13        a few weeks.
14   A    Yes.
15   Q    So question five asks about the proof that would
16        have been submitted by my clients,
17        Summit Medical Group and Summit Physicians Group.
18        And the answer -- probably from that summary,
19        maybe, that we were talking about as far as the
20        dates that are listed when you received the proof?
21   A    Yes.  The best of my knowledge, yes.
22   Q    Okay.  The City of Detroit used a third-party
23        administrator before York, right, before October
24        of last year?
25   A    No.

**Page 16**

1    Q    Okay.  Everything was handled in-house?
2    A    Yes.
3    Q    What was kind of the procedure at that point,
4         then, when you get a bill from a medical provider
5         as far as the process from the time it comes in to
6         the time that it gets paid or denied?
7    A    Similar to York, except we had to send it out to
8         be audited.
9    Q    Okay.  So you did use an outside third-party
10        company just to do the auditing portion.
11   A    Correct.
12   Q    But you, personally, would make all the decisions
13        whether it's related to the accident, whether the
14        services were necessary, all of the other types of
15        elements that must be met before you issued
16        payment?
17   A    Yes.
18   Q    Generally, how long before it was handled in-house
19        at York would it take for the bills to get
20        audited?
21   A    Could you restate that again?
22   Q    Sure.
23        When you had to send the bill out to get
24        audited for an adjusted amount, can you tell me
25        just generally how long that would usually take?

**Page 17**

1    A    Before York?
2    Q    Yes.
3    A    It varied.  It could be -- it could be 30 days or
4         a month, sometimes a little longer.  It could take
5         six weeks.
6    Q    Okay.
7    A    Depending on, I guess, the workload.
8    Q    And then once you get the reviewed amount back,
9         was there then another step that you had to go
10        through the City to actually get the funds to pay
11        that claim?
12   A    Yes.
13   Q    Okay.  And then how long would that take,
14        generally?
15   A    Now, that all depended on the person having to
16        sign off on it, the supervisor at the time.
17   Q    Okay.  So I guess just generally speaking, it
18        sounds like we may be well outside the 30-day
19        timeline set forth in the No-Fault Act as far as
20        before York.
21   A    Yes.
22   Q    From the time when you receive a bill, determine
23        it to be payable and then finally get that payment
24        issued, it was -- it sounds like it's almost
25        always more than 30 days later.

5  (Pages 14 to 17)

## Page 18

1    A    Yes.
2    Q    Okay. And still, as of today's date there's no
3         denial on this claim?
4    A    Correct.
5    Q    Everything that's being submitted is being
6         reviewed for -- or reviewed, I guess, only for the
7         adjusted rate and then payment is being issued?
8    A    Correct.
9    Q    Okay. Is there an IME scheduled?
10   A    I believe there is.
11   Q    Okay. Would it help --
12   A    I can't say for certain, though.
13   Q    What's making me ask that is this note in the
14        activity log dated January 7th of 2015, that says
15        there's an IME bill. And then this one says
16        there's an IME notice.
17             Does that help?
18   A    Okay. So now what's your question, again, now?
19   Q    Is there an IME scheduled, do you know?
20   A    Absolutely scheduled.
21   Q    Okay.
22   A    Yes. According to this, yes --
23   Q    Okay.
24   A    IME notice.
25   Q    Is there a way for you to find out, I mean, in the

## Page 19

1         materials you have or otherwise, when that's
2         scheduled?
3    A    No. Not from here.
4    Q    Okay.
5    A    It would be in those notes, there.
6    Q    You said it would be in these notes?
7    A    It would not be here.
8    Q    Oh, okay.
9         Since the transition to York, are you able to
10        process and pay bills a little bit faster?
11   A    Yes.
12   Q    Okay. And I would imagine that's because it's a
13        little bit faster having the auditing system be
14        in-house; is that accurate?
15   A    Partial, yes.
16   Q    Can you explain the partial?
17   A    I mean, what would be your question in particular?
18   Q    So you said it could be anywhere from, you know,
19        four to six weeks before the transition to York to
20        get the bills audited by an outside company.
21   A    Yes.
22   Q    Is it generally shorter than that now that York
23        does it in-house?
24   A    Yes.
25   Q    But you still do have to go through the same

## Page 20

1         procedure to get the money from the
2         City of Detroit and actually pay the claim?
3    A    Yes.
4    Q    And that still takes the same amount of time?
5    A    It takes time, yes.
6    Q    Is that -- since the bankruptcy in '13, does it
7         take longer now for that part of the process?
8    A    I can't say that for sure. I'm not certain.
9    Q    That's fair.
10        Are there any new procedures since the
11        transition to York as far as what constitutes
12        reasonable proof to pay a provider bill on a
13        claim?
14   A    New procedures?
15   Q    Yes.
16   A    No.
17   Q    Okay. It seems like -- I'm just looking through
18        the log, here, and it looks like there are some
19        references to an attending physician report or
20        things of that nature.
21        Do you know anything about whether you
22        require an attending physician report as to the
23        causation being the motor vehicle accident for the
24        injuries that are being treated?
25        Is that a York thing or do you know anything

## Page 21

1         about that at all?
2    A    Yes, I do.
3    Q    Okay. And what is your knowledge of that type of
4         report?
5    A    That's for all new claims.
6    Q    All new claims after what date?
7    A    After October 1st.
8    Q    Okay. So claims that don't get -- that haven't
9         been filed until after then; is that --
10   A    Correct.
11   Q    So this claim wouldn't be part of that new
12        procedure.
13   A    No.
14   Q    Are there any other new procedures like that aside
15        from the attending physician report that you're
16        aware of?
17   A    New procedures?
18   Q    Right.
19   A    All the no-fault documents need to be in the file
20        before payment can be made.
21   Q    And are those documents created by York?
22   A    Yes.
23   Q    Can you briefly describe those documents for me,
24        if you know?
25   A    From memory?

6 (Pages 18 to 21)

**Page 22**

1  Q  Yeah.
2      I mean, is there an Application for Benefits?
3  A  Yes.
4  Q  Sometimes an Affidavit of No Insurance.
5  A  Yes.
6      HIPAA.
7  Q  Pardon me?
8  A  A HIPAA form.
9  Q  Okay. An authorization.
10 A  We have a request for a W-9 for providers.
11 Q  Okay.
12 A  We have a request for Medicare reporting and an
13     Indemnification Affidavit.
14 Q  All pretty standard stuff, then.
15 A  Yeah, pretty standard.
16 Q  Probably a lot of times those were documents you
17     would have liked to see even before the transition
18     to York, right?
19 A  Yes, we'd send that out.
20 Q  Maybe they weren't necessary. Maybe they were
21     still paying claims. But you would like to have
22     those in the file.
23 A  They should be in the file.
24 Q  And now with the transition to York, is it your
25     position or York's position that you don't have

**Page 23**

1      reasonable proof until you have all of those
2      documents?
3  A  On new claims, correct.
4  Q  Okay.
5  A  Yeah.
6      MR. PAYNE: Can we go off the record
7      for a second?
8      MS. CAMPBELL: Sure.
9      (Off the record.)
10 Q  (By Mr. Payne) Mr. Lenton, are you aware that
11     after litigation commenced in this matter that
12     some payments were issued directly to
13     Summit Medical Group and Summit Physicians Group?
14 A  I'm not sure when litigation was instituted.
15 Q  Okay. Can you tell me -- or do you -- do you
16     recall issuing payments in December for a lot of
17     my clients' bills?
18 A  Yes.
19 Q  And you were aware that prior to that, litigation
20     had commenced on this?
21 A  No, I was not.
22 Q  Oh, okay. So the issue, then, was that you
23     weren't even aware that there was litigation on it
24     at all.
25 A  Correct.

**Page 24**

1  Q  Okay. And I think that kind of answers my
2      question that I had about this little note, here.
3      What I have is an Explanation of Benefits.
4      The process date is June 12th, 2013. And there's
5      a handwritten note on here.
6      Is that your handwriting, Mr. Lenton?
7  A  It appears to be.
8  Q  Okay. And it looks like you had indicated not to
9      issue payment directly to the providers.
10     Is that accurate?
11 A  That is correct.
12 Q  Okay. And that was likely because -- I mean, it
13     says right there that you were advised by your
14     attorney to do that?
15 A  At that time, yes.
16 Q  Okay. You are aware that paying -- strike that.
17     If you had known that litigation had
18     commenced, would you still have issued payment
19     directly to Summit?
20 A  No.
21 Q  And that's probably because you're aware that
22     there's an attorney lien claimed on those benefits
23     because litigation had been filed?
24 A  Correct.
25 Q  Is there any way, from looking at this payment

**Page 25**

1      summary or EOB or whatever you call it, to tell
2      when the bills for those dates of service actually
3      came in?
4  A  I've never seen this. I'm not sure where you got
5      this from.
6  Q  Okay. It was -- it was produced to me not -- I
7      don't think it was part of -- we had this in our
8      file. It was -- probably just came with the
9      checks.
10 A  I see.
11 Q  So these -- we have copies -- what I have in this
12     packet here is copies of the checks that were
13     issued directly to my clients.
14 A  May I see them?
15 Q  Absolutely.
16 A  I've never seen how they look, so . . .
17     This is the first time I've seen these.
18     These are York checks?
19     MS. CAMPBELL: Are they?
20     THE WITNESS: I'm asking him.
21     I mean, can I ask him a question?
22     MS. CAMPBELL: Oh, sure.
23     THE WITNESS: Are these York checks?
24     Because I've never seen a York check. I
25     just know they get sent out.

Page 26

1        MR. PAYNE: I believe so. Because
2 they were issued in December of last year. So
3 I would imagine . . .
4        THE WITNESS: Okay. Yeah, okay. I
5 see the check numbers. Four digits. And
6 so . . .
7        MS. CAMPBELL: So that indicates a
8 York processed claim?
9        THE WITNESS: Yeah.
10 Q  (By Mr. Payne) And then after each check there was
11    kind of a payment summary, if you flip the page.
12 A  Okay. Okay. I've never seen these before.
13 Q  So what we're looking at, here -- it looks like it
14    tells you -- here's the claim, Sheila Williams --
15 A  All right.
16 Q  The date of loss.
17 A  Okay.
18 Q  And it's the -- the check is dated
19    December 19th, 2014, right?
20 A  Okay. Yes.
21 Q  And it says for period March 19th, 2014, to
22    March 19th, 2014, right?
23 A  Okay. I see. Yes.
24 Q  If -- is it -- so I guess you wouldn't know -- I
25    mean, there's no way to tell specifically -- but

Page 27

1    your attorney was pointing to a specific portion
2    of the claim file -- or payment log.
3        MS. CAMPBELL: Payment log, yeah.
4        THE WITNESS: Okay. Okay.
5        MS. CAMPBELL: And this payment,
6    here, number 16; is that the check?
7        THE WITNESS: That's correct. Yes.
8 Q  (By Mr. Payne) From the documents that we have
9    right here, is there any way to tell when you
10    received the bill from my client for this date of
11    service?
12 A  No. I don't see where you can tell that anywhere.
13 Q  Is there any way to match up, other than -- I
14    guess I could probably find -- would it be --
15    would it have that information that I'm looking
16    for on the Explanation of Benefits, potentially?
17 A  Possibly, yes.
18 Q  That was March 19th, 2014?
19 A  Yes.
20 Q  Okay. So here's the Explanation of Benefits that
21    corresponds with that payment.
22 A  Okay.
23 Q  And it's -- the process date on this document is
24    September 24th, 2014, right?
25 A  Okay. Yes.

Page 28

1 Q  And the date of service is March 19th, 2014.
2 A  Yes.
3 Q  And it says, here, date billed, March 19th 2014,
4    right?
5 A  Yes, I think that's referring to some date of
6    service.
7 Q  So that would mean -- so that would mean my client
8    performed these services and then billed you the
9    same day?
10 A  I don't think so.
11 Q  And it really doesn't make sense to me, either,
12    because normally they only send out the bills
13    every week or two.
14 A  Right. Or monthly. Some billing companies do
15    monthly.
16 Q  Is it possible -- I know that we had discussed
17    earlier the Answers to Interrogatories with this
18    list of specific dates that the reasonable proof
19    from my clients came in.
20        Is it possible -- can I get a copy of
21    wherever this came -- this information came from?
22        MS. CAMPBELL: Can we go off the
23    record for a minute?
24        MR. PAYNE: Yeah, yeah, yeah, yeah,
25    yeah.

Page 29

1        (Off the record.)
2        MR. PAYNE: Okay. Can we go back on
3    real quick?
4        MS. CAMPBELL: Sure.
5 Q  (By Mr. Payne) I think now I have a little bit
6    more information and I do kind of want to go on
7    the record with a couple of things.
8 A  Uh-huh.
9 Q  So it sounds like at some point after
10    March 19th of 2014, my client submitted these
11    bills, right?
12 A  Correct.
13 Q  And we're where not 100 percent sure when that
14    happened, but we're pretty sure it wasn't the same
15    day, right?
16 A  Correct.
17 Q  Because this says -- it was stamped Received by
18    the City of Detroit October 6th, 2014, this
19    Explanation of Benefits form, it seems to me like
20    at some point these bills were received by the
21    City of Detroit?
22 A  Correct.
23 Q  Then they went through the claims process, they
24    got audited, they were deemed payable, right?
25 A  Correct.

8 (Pages 26 to 29)

Page 30

```
1    Q   And then it looks like this form -- is this a York
2        form; do you know?
3    A   No.  This is Brown Review.
4    Q   Okay.  So this was the prior third-party company
5        that adjusted the rates for you?
6    A   Correct.
7    Q   And they issued this EOB and probably sent it to
8        the City of Detroit and Detroit received it on
9        October 6th.
10   A   Correct.
11   Q   Okay.  And that's why it took until about December
12       to get these checks paid -- or to get the checks
13       issued.
14   A   Correct.
15   Q   Okay.  Rather than kind of go through all of this
16       stuff and try to piecemeal each one back together,
17       would you agree with me that it's more likely than
18       not that all of these bills were paid outside of
19       the 30-day window?
20   A   Most would have been.
21   Q   Because it takes sometimes the entire 30 days just
22       to get it reviewed for the rate, let alone get the
23       money issued for the check, right?
24   A   Correct.
25   Q   And you would agree with me that because it was
```

Page 31

```
1        paid outside of the 30-day window that it would be
2        overdue?
3            MS. CAMPBELL:  Objection.  Calls for
4        a legal conclusion.
5            Go ahead.
6    Q   (By Mr. Payne) If you know.
7    A   Yes.
8    Q   Okay.  Are there any other differences with the
9        transition to York at all as far -- other than the
10       reasonable proof that we discussed?
11   A   Speed of payments being issued.
12   Q   Okay.  So things are going faster now?
13   A   Much faster.
14   Q   Okay.  Is there anything that I should know as far
15       as submitting claims that I consider to be
16       City of Detroit claims now that York has taken
17       over?
18           MS. CAMPBELL:  Do you understand the
19       question?
20           THE WITNESS:  Yeah.  It's kind of
21       broad.
22           So you say anything I should -- I mean, I
23       could talk about a lot of things.  But --
24   Q   (By Mr. Payne) And to be honest, that's kind of my
25       goal.
```

Page 32

```
1    A   But specific --
2    Q   You know, it's just -- this is just learning for
3        me, as well.
4    A   Okay.
5            MR. PAYNE:  And, actually, we can do
6        it off the record.
7        I don't have any other questions.
8            MS. CAMPBELL:  Nothing from me.
9        (The deposition was concluded at
10       10:43 a.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 33

```
1              CERTIFICATE OF NOTARY
2
3    STATE OF MICHIGAN )
4                     )SS
5    COUNTY OF WAYNE  )
6
7
8        I, Susan E. Castino, RPR, CSR and Notary
9    Public in and for the above county and state, do hereby
10   declare that the deposition of KELVIN LENTON was taken
11   before me at the time and place hereinbefore set forth; that
12   the witness was by me first duly sworn to testify to the
13   truth, the whole truth and nothing but the truth; that,
14   thereupon, the foregoing questions were asked and foregoing
15   answers were made by the witness which were duly recorded by
16   me stenographically and later reduced to computer
17   transcription; and I certify that this is a true and correct
18   transcript of my stenographic notes so taken.
19
20
21
22
23
24
25
```

9  (Pages 30 to 33)

1          I further declare that I am not of counsel to

2     either party nor interested in the event of this cause.

3

4

5

6                    _____

7                    Susan E. Castino, CSR 4856

8                    Notary Public

9                    State of Michigan

10                   County of Wayne

11                   Acting in the County of Wayne

12

13

14    My Commission expires:

15    September 21, 2017

16

17

18

19

20

21

22

23

24

25

                         Page 34

# EXHIBIT B

 

**Individual Patient Balance Form**

| Release date through | 05/12/15 |
|---|---|

| Name: | Shelia Williams |
|---|---|
| Date of Birth: | 6/25/1965 |

Department Balances (By Taxpayer Identification Number)

| TIN: | Department: | Balance: |
|---|---|---|
| 454013724 | SPG - Dr. Jankowski | $17,757.99 |
| | SPG - Dr. Crawford | $0.00 |
| | SPG - Dr. Lerner | $4,046.20 |
| | SPG - Physical Therapy | $0.00 |
| | SPG - MRI/CT | $0.00 |
| | **Summit Physicians Group - TOTAL** | **$21,804.19** |
| 800585968 | SMG - Dr. Jankowski | $42,684.50 |
| | SMG - Dr. Jankowski Rx | $10,249.80 |
| | **Summit Medical Group- TOTAL** | **$52,934.30** |
| 461519999 | **Summit Diagnostic Services - MRI** | **$0.00** |
| 383263684 | **Kevin Crawford DO PC (Prior to 05/23/13)** | **$0.00** |
| 383170766 | **Greater Detroit Physical Therapy (Prior to 05/23/13)** | **$0.00** |

| **COMBINED TOTAL (From All Tax Entities):** | **$74,738.49** |
|---|---|

AL BalanceForm v2.20

* Please request all billing ledgers from SPG Lead Contacts 48 hours prior to all settlement conferences.

* Balances may change all the time as treatment may be ongoing.

* Please notify lead contacts ASAP if future benefits are going to be released.

SPG Lead Contacts

| Name: | Contact Details: |
|---|---|
| S. Bazzy | [Phone] 313.581.3255   [Cell] 313.414.0807   [Email] sbazzy@summitphysiciansgroup.com |
| J. Crawford | [Phone] 313.334.3388   [Cell] 248.946.1919   [Email] jcrawford@summitphysiciansgroup.com |

# SUMMIT PHYSICIANS GROUP PLLC

## INDIVIDUAL PATIENT DETAIL REPORT

Date From 05/12/2010 To 05/12/2015  Procedure Type System Summary

### General Information

| Name WILLIAMS, SHIELA | | Acct# 4210 | Phone 313-208-0596 | Cash Bal | 0.00 |
|---|---|---|---|---|---|
| Title | DR 01  Ref JANKOWSK | Marital Unknown | SSN 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 | Work | Ins Bal | 17,757.99 |
| Address 4821 METTETAL    DETROIT, MI 48221 | | | | Birthday | 06/25/1965 |
| Alert  L/M ADJ 6/21/13 NEED EPI | | | | First Visit | 06/24/2013 |
| Note  KELVIN LENTON | | | | Last Date | 02/16/2015 |

### Policy Information

| Financial Code  OT | Ins Code YORK | Insured's Name WILLIAMS, SHIELA | Relation Self |
|---|---|---|---|
| ID No# CDMI-0080A9 | Group Number | Phone 313-208-0596 | Birthday 06/25/1965 |
| Address 4821 METTETAL    DETROIT, MI 48221 | | | Participate  Yes |
| INS Name & Address<br>YORK RISK SERVICES GROUP , PO BOX 183188 , COLUMBUS, OH 43218 | | | Assignment Yes |
| Financial Code  LG | Ins Code HAAS | Insured's Name WILLIAMS, SHIELA | Relation Self |
| ID No# 383805696 | Group Number | Phone 313-208-0596 | Birthday 06/25/1965 |
| Address 4821 METTETAL    DETROIT, MI 48221 | | | Participate  Yes |
| INS Name & Address<br>ATTY JUSTIN HAAS , 31275  NORTH WESTERN HWY , FARMINGTON HILLS, MI 48334 | | | Assignment Yes |

Diagnosis Information: 7244  / 71946  / 7291  / E9290  /

### Transactions

| Claim No | Service Date | Proc Code | DX | DR | Service Charge | Expect Ins | Pat Charge | Cash Paid | Ins Paid | Participat Adjust | Adjust | Balance Cash | Balance Ins | RefID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 756 | 06/24/2013 | 99214 | 7244 | 01 | 400.00 | 400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 400.00 | 1443 |
| 756 | 06/24/2013 | 96372 | 7244 | 01 | 160.00 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 | 1444 |
| 756 | 06/24/2013 | J1885 | 7244 | 01 | 80.00 | 80.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 80.00 | 1445 |
| 776 | 06/24/2013 | 80101 | V5883 | 01 | 240.00 | 240.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 240.00 | 1471 |
| 1555 | 07/22/2013 | 99214 | 7840 | 01 | 400.00 | 400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 400.00 | 3080 |
| 1555 | 07/22/2013 | 96372 | 71946 | 01 | 160.00 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 | 3081 |
| 1555 | 07/22/2013 | J1885 | 71946 | 01 | 80.00 | 80.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 80.00 | 3082 |
| 1923 | 08/22/2013 | 80101 | V5883 | 08 | 240.00 | 240.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 240.00 | 3867 |
| 1924 | 08/22/2013 | 99214 | 7245 | 01 | 400.00 | 400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 400.00 | 3868 |
| 1924 | 08/22/2013 | 20553 | 7291 | 01 | 1,200.00 | 1,200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,200.00 | 3869 |
| 2687 | 09/20/2013 | 99214 | 7245 | 01 | 400.00 | 400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 400.00 | 7906 |
| 3551 | 10/21/2013 | 99214 | 7840 | 01 | 385.00 | 385.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 385.00 | 10569 |
| 4761 | 11/19/2013 | 99214 | 7245 | 01 | 385.00 | 385.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 385.00 | 14323 |
| 4665 | 11/26/2013 | 20553 | 7291 | 06 | 245.00 | 245.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 245.00 | 13947 |
| 4665 | 11/26/2013 | 76942 | 7291 | 06 | 700.00 | 700.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 700.00 | 13948 |
| 4665 | 11/26/2013 | J0702 | 7291 | 06 | 140.00 | 140.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 140.00 | 13949 |
| 4665 | 11/26/2013 | J2001 | 7291 | 06 | 35.00 | 35.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35.00 | 13950 |
| 6024 | 11/26/2013 | 72040 | 7210 | 22 | 140.00 | 140.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 140.00 | 20064 |
| 7204 | 12/17/2013 | 99214 | 7245 | 01 | 385.00 | 385.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 385.00 | 25480 |
| 8242 | 01/14/2014 | 20553 | 7291 | 01 | 245.00 | 245.00 | 0.00 | 0.00 | 156.81 | 88.19 | 0.00 | 0.00 | 0.00 | 30325 |

THOMAS by Genius Solutions Inc. (PATDETAIL.FRX) (FINREP.KEYID=20)                                                                                    Page  1

| Claim No | Service Date | Proc Code | DX | DR | Service Charge | Expect Ins | Pat Charge | Cash Paid | Ins Paid | Participat Adjust | Adjust | Balance Cash | Balance Ins | RefID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8242 | 01/14/2014 | J1040 | 7291 | 01 | 40.00 | 40.00 | 0.00 | 0.00 | 0.00 | 40.00 | 0.00 | 0.00 | 0.00 | 30326 |
| 8242 | 01/14/2014 | J2001 | 7291 | 01 | 35.00 | 35.00 | 0.00 | 0.00 | 0.00 | 35.00 | 0.00 | 0.00 | 0.00 | 30327 |
| 8467 | 03/19/2014 | 64505 | 7840 | 01 | 660.00 | 660.00 | 0.00 | 0.00 | 397.96 | 262.04 | 0.00 | 0.00 | 0.00 | 31373 |
| 8467 | 03/19/2014 | 64505 | 7840 | 01 | 660.00 | 660.00 | 0.00 | 0.00 | 397.96 | 262.04 | 0.00 | 0.00 | 0.00 | 31374 |
| 8712 | 03/19/2014 | 99214 | 7840 | 01 | 385.00 | 385.00 | 0.00 | 0.00 | 158.60 | 226.40 | 0.00 | 0.00 | 0.00 | 32751 |
| 8858 | 03/19/2014 | 72126 | 7220 | 20 | 1,195.00 | 1,195.00 | 0.00 | 0.00 | 1,195.00 | 0.00 | 0.00 | 0.00 | 0.00 | 33478 |
| 8858 | 03/19/2014 | Q9967 | 7220 | 20 | 10.00 | 10.00 | 0.00 | 0.00 | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 | 33479 |
| 9808 | 04/17/2014 | 64450 | 7231 | 01 | 600.00 | 600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 600.00 | 37265 |
| 9808 | 04/17/2014 | 77003 | 7231 | 01 | 500.00 | 500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 500.00 | 37266 |
| 9808 | 04/17/2014 | J0702 | 7231 | 01 | 35.00 | 35.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35.00 | 37267 |
| 9808 | 04/17/2014 | J2001 | 7231 | 01 | 35.00 | 35.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35.00 | 37268 |
| 10270 | 04/17/2014 | 99213 | 72283 | 01 | 250.00 | 250.00 | 0.00 | 0.00 | 109.43 | 140.57 | 0.00 | 0.00 | 0.00 | 39851 |
| 10270 | 04/17/2014 | 80101 | V5883 | 01 | 240.00 | 240.00 | 0.00 | 0.00 | 240.00 | 0.00 | 0.00 | 0.00 | 0.00 | 39852 |
| 11128 | 05/15/2014 | 64450 | 7231 | 01 | 600.00 | 600.00 | 0.00 | 0.00 | 396.78 | 203.22 | 0.00 | 0.00 | 0.00 | 44168 |
| 11128 | 05/15/2014 | 77002 | 7231 | 01 | 400.00 | 400.00 | 0.00 | 0.00 | 268.00 | 132.00 | 0.00 | 0.00 | 0.00 | 44169 |
| 11128 | 05/15/2014 | J0702 | 7231 | 01 | 35.00 | 35.00 | 0.00 | 0.00 | 23.45 | 11.55 | 0.00 | 0.00 | 0.00 | 44170 |
| 11128 | 05/15/2014 | J2001 | 7231 | 01 | 35.00 | 35.00 | 0.00 | 0.00 | 23.45 | 11.55 | 0.00 | 0.00 | 0.00 | 44171 |
| 11271 | 05/19/2014 | 99213 | 7242 | 01 | 250.00 | 250.00 | 0.00 | 0.00 | 109.43 | 140.57 | 0.00 | 0.00 | 0.00 | 45468 |
| 12071 | 05/19/2014 | 20553 | 7291 | 01 | 1,200.00 | 1,200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,200.00 | 50353 |
| 12071 | 05/19/2014 | 76942 | 7291 | 01 | 690.00 | 690.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 690.00 | 50354 |
| 12071 | 05/19/2014 | J0702 | 7291 | 01 | 35.00 | 35.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35.00 | 50355 |
| 12071 | 05/19/2014 | J2001 | 7291 | 01 | 35.00 | 35.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35.00 | 50356 |
| 12123 | 05/19/2014 | 64450 | 7234 | 01 | 600.00 | 600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 600.00 | 50481 |
| 12123 | 05/19/2014 | 77003 | 7234 | 01 | 500.00 | 500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 500.00 | 50482 |
| 12061 | 06/17/2014 | 64450 | 7234 | 06 | 600.00 | 600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 600.00 | 50330 |
| 12061 | 06/17/2014 | 77003 | 7234 | 06 | 500.00 | 500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 500.00 | 50331 |
| 12061 | 06/17/2014 | J1040 | 7234 | 06 | 40.00 | 40.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40.00 | 50332 |
| 12061 | 06/17/2014 | J2001 | 7234 | 06 | 35.00 | 35.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35.00 | 50333 |
| 12062 | 06/17/2014 | 80101 | V5883 | 06 | 240.00 | 240.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 240.00 | 50334 |
| 12807 | 07/15/2014 | 64450 | 7840 | 01 | 600.00 | 600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 600.00 | 53083 |
| 12807 | 07/15/2014 | 20552 | 7291 | 01 | 1,000.00 | 1,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,000.00 | 53084 |
| 12807 | 07/15/2014 | 77002 | 7840 | 01 | 400.00 | 400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 400.00 | 53085 |
| 12807 | 07/15/2014 | J1040 | 7840 | 01 | 40.00 | 40.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40.00 | 53086 |
| 12807 | 07/15/2014 | J2001 | 7840 | 01 | 35.00 | 35.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35.00 | 53087 |
| 13294 | 07/15/2014 | 99213 | 72281 | 01 | 250.00 | 250.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 250.00 | 56819 |
| 13294 | 07/15/2014 | 80101 | V5883 | 01 | 240.00 | 240.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 240.00 | 56820 |
| 14476 | 08/18/2014 | 99214 | 7202 | 01 | 370.00 | 370.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 370.00 | 64428 |
| 14476 | 08/18/2014 | 80101 | V5883 | 01 | 240.00 | 240.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 240.00 | 64429 |
| 15371 | 09/16/2014 | 99214 | 7291 | 01 | 370.00 | 370.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 370.00 | 69157 |
| 15371 | 09/16/2014 | 96372 | 71946 | 01 | 90.00 | 90.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 90.00 | 69158 |
| 15371 | 09/16/2014 | J1885 | 71946 | 01 | 80.00 | 80.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 80.00 | 69159 |
| 15371 | 09/16/2014 | 96101 | 95909 | 01 | 290.00 | 290.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 290.00 | 69160 |
| 15371 | 09/16/2014 | 80101 | V5883 | 01 | 240.00 | 240.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 240.00 | 69161 |
| 16291 | 10/16/2014 | 99213 | 7840 | 01 | 250.00 | 250.00 | 0.00 | 0.00 | 109.43 | 140.57 | 0.00 | 0.00 | 0.00 | 75870 |
| 17175 | 11/18/2014 | 20553 | 7291 | 06 | 1,200.00 | 1,200.00 | 0.00 | 0.00 | 296.20 | 1,051.90 | 0.00 | 0.00 | -148.10 | 80468 |
| 17175 | 11/18/2014 | 76942 | 7291 | 06 | 690.00 | 690.00 | 0.00 | 0.00 | 1,380.00 | 0.00 | 0.00 | 0.00 | -690.00 | 80469 |
| 17175 | 11/18/2014 | J0702 | 7291 | 06 | 140.00 | 140.00 | 0.00 | 0.00 | 67.78 | 106.11 | 0.00 | 0.00 | -33.89 | 80470 |
| 17175 | 11/18/2014 | J2001 | 7291 | 06 | 35.00 | 35.00 | 0.00 | 0.00 | 0.04 | 34.98 | 0.00 | 0.00 | -0.02 | 80471 |
| 17175 | 11/18/2014 | 80104 | V5883 | 06 | 250.00 | 250.00 | 0.00 | 0.00 | 500.00 | 0.00 | 0.00 | 0.00 | -250.00 | 80472 |

## Transactions

| Claim No | Service Date | Proc Code | DX | DR | Service Charge | Expect Ins | Pat Charge | Cash Paid | Ins Paid | Participat Adjust | Adjust | Balance Cash | Balance Ins | RefID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 17557 | 11/18/2014 | 99214 | 7231 | 01 | 370.00 | 370.00 | 0.00 | 0.00 | 158.60 | 211.40 | 0.00 | 0.00 | 0.00 | 83928 |
| 19511 | 12/18/2014 | 99213 | 7231 | 01 | 250.00 | 250.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 250.00 | 95711 |
| 8242 | 12/23/2014 | INSPAY | 7231 | | 0.00 | 0.00 | 0.00 | 0.00 | 156.81 | 0.00 | 0.00 | 0.00 | 0.00 | 85901 |
| 8242 | 12/23/2014 | PARADJ | 7231 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 163.19 | 0.00 | 0.00 | 85902 |
| 8712 | 12/23/2014 | INSPAY | 7231 | | 0.00 | 0.00 | 0.00 | 0.00 | 158.60 | 0.00 | 0.00 | 0.00 | 0.00 | 85903 |
| 8712 | 12/23/2014 | PARADJ | 7231 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 226.40 | 0.00 | 0.00 | 85904 |
| 11271 | 12/23/2014 | INSPAY | 7231 | | 0.00 | 0.00 | 0.00 | 0.00 | 109.43 | 0.00 | 0.00 | 0.00 | 0.00 | 85913 |
| 11271 | 12/23/2014 | PARADJ | 7231 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 140.57 | 0.00 | 0.00 | 85914 |
| 8858 | 12/23/2014 | INSPAY | 7231 | | 0.00 | 0.00 | 0.00 | 0.00 | 1,205.00 | 0.00 | 0.00 | 0.00 | 0.00 | 86211 |
| 11128 | 12/23/2014 | INSPAY | 7231 | | 0.00 | 0.00 | 0.00 | 0.00 | 711.68 | 0.00 | 0.00 | 0.00 | 0.00 | 86212 |
| 11128 | 12/23/2014 | PARADJ | 7231 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 358.32 | 0.00 | 0.00 | 86213 |
| 8467 | 12/23/2014 | INSPAY | 7231 | | 0.00 | 0.00 | 0.00 | 0.00 | 795.92 | 0.00 | 0.00 | 0.00 | 0.00 | 86214 |
| 8467 | 12/23/2014 | PARADJ | 7231 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 524.08 | 0.00 | 0.00 | 86215 |
| 10270 | 12/23/2014 | INSPAY | 7231 | | 0.00 | 0.00 | 0.00 | 0.00 | 349.43 | 0.00 | 0.00 | 0.00 | 0.00 | 86216 |
| 10270 | 12/23/2014 | PARADJ | 7231 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 140.57 | 0.00 | 0.00 | 86217 |
| 19399 | 01/13/2015 | 99213 | 7231 | 01 | 250.00 | 250.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 250.00 | 95475 |
| 19593 | 02/16/2015 | 99213 | 7231 | 01 | 250.00 | 250.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 250.00 | 96398 |
| 19612 | 02/16/2015 | 20553 | 7291 | 01 | 1,200.00 | 1,200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,200.00 | 96664 |
| 19612 | 02/16/2015 | 76942 | 7291 | 01 | 690.00 | 690.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 690.00 | 96665 |
| 19612 | 02/16/2015 | J0702 | 7291 | 01 | 140.00 | 140.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 140.00 | 96666 |
| 19612 | 02/16/2015 | J2001 | 7291 | 01 | 35.00 | 35.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35.00 | 96667 |
| 17175 | 04/14/2015 | INSPAY | 7291 | | 0.00 | 0.00 | 0.00 | 0.00 | 1,122.01 | 0.00 | 0.00 | 0.00 | 0.00 | 109351 |
| 17175 | 04/14/2015 | PARADJ | 7291 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,192.99 | 0.00 | 0.00 | 109352 |
| 16291 | 04/29/2015 | INSPAY | 7291 | | 0.00 | 0.00 | 0.00 | 0.00 | 109.43 | 0.00 | 0.00 | 0.00 | 0.00 | 109386 |
| 16291 | 04/29/2015 | PARADJ | 7291 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 140.57 | 0.00 | 0.00 | 109387 |
| 17557 | 04/29/2015 | INSPAY | 7291 | | 0.00 | 0.00 | 0.00 | 0.00 | 158.60 | 0.00 | 0.00 | 0.00 | 0.00 | 109388 |
| 17557 | 04/29/2015 | PARADJ | 7291 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 211.40 | 0.00 | 0.00 | 109389 |
| 17175 | 05/01/2015 | INSPAY | 7291 | | 0.00 | 0.00 | 0.00 | 0.00 | 1,122.01 | 0.00 | 0.00 | 0.00 | 0.00 | 110995 |

Note: DX - Diagnosis
DR - Doctor

THOMAS by Genius Solutions Inc. (PATDETAIL.FRX) (FINREP.KEYID=20)

Date From 05/12/2010 To 05/12/2015  Procedure Type System Summary

## General Information

| Name WILLIAMS, SHIELA | | Acct# 32300 | Phone 313-208-0596 | Cash Bal | 0.00 |
|---|---|---|---|---|---|
| Title | DR 01 | Ref JANKOWSK | Marital Unknown | SSN 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 | Work | Ins Bal | 42,684.50 |
| Address 4821 METTETAL   DETROIT, MI 48221 | | | | Birthday | 06/25/1965 |
| Alert  L/M ADJ 8/19/13 NEED EPI | | | | First Visit | 12/20/2012 |
| Note  KELVIN LENTON | | | | Last Date | 05/22/2013 |

## Policy Information

| Financial Code  AA | Ins Code CITY | Insured's Name WILLIAMS, SHIELA | Relation Self |
|---|---|---|---|
| ID No# A32950-002704 | Group Number | Phone 313-208-0596 | Birthday 06/25/1965 |
| Address  4821 METTETAL   DETROIT, MI 48221 | | | Participate  Yes |
| INS Name & Address<br>CITY OF DETROIT - LAW DET , FIRST NATIONAL BUILDING , DETROIT, MI 48226 | | | Assignment Yes |
| Financial Code  LG | Ins Code HAAS | Insured's Name WILLIAMS, SHIELA | Relation Self |
| ID No# 383805696 | Group Number | Phone 313-208-0596 | Birthday 06/25/1965 |
| Address  4821 METTETAL   DETROIT, MI 48221 | | | Participate  Yes |
| INS Name & Address<br>ATTY JUSTIN HAAS , 31275  NORTH WESTERN HWY , FARMINGTON HILLS, MI 48334 | | | Assignment Yes |

Diagnosis Information: 72252  / 7840   / 33379  / 71596  /

## Transactions

| Claim No | Service Date | Proc Code | DX | DR | Service Charge | Expect Ins | Pat Charge | Cash Paid | Ins Paid | Participat Adjust | Adjust | Balance Cash | Balance Ins | RefID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 14159 | 12/20/2012 | 99215 | 72252 | 01 | 400.00 | 400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 400.00 | 49822 |
| 14799 | 01/14/2013 | 99213 | 7220 | 01 | 200.00 | 200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 200.00 | 53518 |
| 15541 | 02/11/2013 | 99213 | 7220 | 01 | 200.00 | 200.00 | 0.00 | 0.00 | 102.25 | 97.75 | 0.00 | 0.00 | 0.00 | 57094 |
| 16045 | 02/26/2013 | 95864 | 7231 | 13 | 1,125.00 | 1,125.00 | 0.00 | 0.00 | 1,069.52 | 55.48 | 0.00 | 0.00 | 0.00 | 59616 |
| 16242 | 03/09/2013 | 64613 | 33383 | 01 | 800.00 | 800.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 800.00 | 60449 |
| 16242 | 03/09/2013 | 95873 | 33383 | 01 | 300.00 | 300.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 300.00 | 60450 |
| 16242 | 03/09/2013 | J0585 | 33383 | 01 | 3,600.00 | 3,600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,600.00 | 60451 |
| 16683 | 03/09/2013 | 99204 | 7220 | 21 | 400.00 | 400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 400.00 | 62376 |
| 17265 | 03/09/2013 | 99213 | 7291 | 01 | 200.00 | 200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 200.00 | 64862 |
| 17265 | 03/09/2013 | 98926 | 7231 | 01 | 230.00 | 230.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 230.00 | 64863 |
| 17265 | 03/09/2013 | L0172 | 7231 | 01 | 385.00 | 385.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 385.00 | 64864 |
| 17072 | 03/28/2013 | 22551 | 72271 | 21 | 7,513.00 | 7,513.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7,513.00 | 64038 |
| 17072 | 03/28/2013 | 22552 | 72271 | 21 | 4,400.00 | 4,400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,400.00 | 64039 |
| 17072 | 03/28/2013 | 22552 | 72271 | 21 | 4,400.00 | 4,400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,400.00 | 64040 |
| 17072 | 03/28/2013 | 22846 | 72271 | 21 | 3,400.00 | 3,400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,400.00 | 64041 |
| 17072 | 03/28/2013 | 22851 | 72271 | 21 | 2,700.00 | 2,700.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,700.00 | 64042 |
| 17072 | 03/28/2013 | 20936 | 72271 | 21 | 750.00 | 750.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 750.00 | 64043 |
| 17073 | 03/28/2013 | 22551 | 72271 | 01 | 3,756.50 | 3,756.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,756.50 | 64044 |
| 17073 | 03/28/2013 | 22552 | 72271 | 01 | 2,200.00 | 2,200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,200.00 | 64045 |
| 17073 | 03/28/2013 | 22552 | 72271 | 01 | 2,200.00 | 2,200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,200.00 | 64046 |

## Transactions

| Claim No | Service Date | Proc Code | DX | DR | Service Charge | Expect Ins | Pat Charge | Cash Paid | Ins Paid | Participat Adjust | Adjust | Balance Cash | Balance Ins | RefID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 17073 | 03/28/2013 | 22846 | 72271 | 01 | 1,700.00 | 1,700.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,700.00 | 64047 |
| 17073 | 03/28/2013 | 22851 | 72271 | 01 | 1,350.00 | 1,350.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,350.00 | 64048 |
| 17074 | 03/30/2013 | 99238 | 72271 | 21 | 220.00 | 220.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 220.00 | 64049 |
| 17320 | 04/01/2013 | 99024 | V5878 | 21 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 64972 |
| 17935 | 04/25/2013 | 20553 | 72885 | 06 | 1,200.00 | 1,200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,200.00 | 68248 |
| 17935 | 04/25/2013 | J0702 | 72885 | 06 | 64.00 | 64.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 64.00 | 68249 |
| 17935 | 04/25/2013 | J2001 | 72885 | 06 | 16.00 | 16.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16.00 | 68250 |
| 19071 | 05/22/2013 | 99214 | 7245 | 01 | 300.00 | 300.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 300.00 | 73937 |
| 15541 | 01/15/2014 | INSPAY | 7245 | | 0.00 | 0.00 | 0.00 | 0.00 | 102.25 | 0.00 | 0.00 | 0.00 | 0.00 | 92708 |
| 15541 | 01/15/2014 | PARADJ | 7245 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 97.75 | 0.00 | 0.00 | 92709 |
| 16045 | 01/15/2014 | INSPAY | 7245 | | 0.00 | 0.00 | 0.00 | 0.00 | 1,069.52 | 0.00 | 0.00 | 0.00 | 0.00 | 92710 |
| 16045 | 01/15/2014 | PARADJ | 7245 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 55.48 | 0.00 | 0.00 | 92711 |

Note: DX - Diagnosis
      DR - Doctor

THOMAS by Genius Solutions Inc. (PATDETAIL.FRX) (FINREP.KEYID=20)



# Patient Statement


PAYMENT DUE

From:
Summit Medical Group
8560 SILVERY LN, 202
DEARBORN MI 48127
Phone: (888) 555-1212

**Amount Due: $10,249.80**

Patient:
Patient ID: 89MEGX3K99
Name: WILLIAMS, SHIELA
Address: 4821 METTALE
DETROIT MI 48221

Facility:
Name: Summit Medical Group
Address: 8560 Silvery Lane, 202
Dearborn MI 48127
Phone: (313) 581-3255
Fax: (313) 581-3755

## Transaction Log:

| DOS | Rx # | NDC | Description | Qty | Charges | Payments | Adjustments | Balance |
|---|---|---|---|---|---|---|---|---|
| 10/21/2013 | 100381 | 33261-0049-90 | NEURONTIN 300MG CAP | 90 | 175.00 | | | 175.00 |
| 10/21/2013 | 100382 | 33261-0105-60 | ULTRAM 50MG TAB | 60 | 101.20 | | | 276.20 |
| 10/21/2013 | 100383 | 33261-0218-60 | LORTAB 10MG-500MG CII TAB | 120 | 173.20 | | | 449.40 |
| 10/21/2013 | 100384 | 33261-0081-60 | NAPROSYN 500MG TAB | 60 | 112.00 | | | 561.40 |
| 10/21/2013 | 100385 | 33261-0500-60 | XANAX 2MG TAB | 60 | 256.20 | | | 817.60 |
| 11/19/2013 | 101167 | 33261-0049-90 | NEURONTIN 300MG CAP | 90 | 175.00 | | | 992.60 |
| 11/19/2013 | 101168 | 33261-0218-60 | LORTAB 10MG-500MG CII TAB | 120 | 173.20 | | | 1,165.80 |
| 11/19/2013 | 101169 | 33261-0081-60 | NAPROSYN 500MG TAB | 60 | 112.00 | | | 1,277.80 |
| 11/19/2013 | 101170 | 33261-0500-60 | XANAX 2MG TAB | 60 | 256.20 | | | 1,534.00 |
| 11/19/2013 | 101171 | 33261-0105-60 | ULTRAM 50MG TAB | 60 | 101.20 | | | 1,635.20 |
| 3/19/2014 | 104075 | 33261-0105-60 | ULTRAM 50MG TAB | 60 | 101.20 | | | 1,736.40 |
| 3/19/2014 | 104076 | 33261-0500-60 | XANAX 2MG TAB | 60 | 256.20 | | | 1,992.60 |
| 3/19/2014 | 104077 | 33261-0218-60 | LORTAB 10MG-500MG CII TAB | 120 | 173.20 | | | 2,165.80 |
| 3/19/2014 | 104078 | 33261-0081-90 | NAPROSYN 500MG TAB | 90 | 166.00 | | | 2,331.80 |
| 3/19/2014 | 104079 | 33261-0049-90 | NEURONTIN 300MG CAP | 90 | 175.00 | | | 2,506.80 |
| 5/19/2014 | 105505 | 33261-0049-90 | NEURONTIN 300MG CAP | 90 | 175.00 | | | 2,681.80 |
| 5/19/2014 | 105506 | 33261-0105-60 | ULTRAM 50MG TAB | 60 | 101.20 | | | 2,783.00 |
| 5/19/2014 | 105507 | 33261-0081-90 | NAPROSYN 500MG TAB | 90 | 166.00 | | | 2,949.00 |
| 5/19/2014 | 105508 | 33261-0218-90 | LORTAB 10MG-500MG CII TAB | 120 | 173.20 | | | 3,122.20 |
| 5/19/2014 | 105509 | 33261-0500-60 | XANAX 2MG TAB | 60 | 256.20 | | | 3,378.40 |
| 4/17/2014 | 104832 | 33261-0105-60 | ULTRAM 50MG TAB | 60 | 101.20 | | | 3,479.60 |
| 4/17/2014 | 104833 | 33261-0049-90 | NEURONTIN 300MG CAP | 90 | 175.00 | | | 3,654.60 |
| 4/17/2014 | 104834 | 33261-0218-90 | LORTAB 10MG-500MG CII TAB | 120 | 173.20 | | | 3,827.80 |
| 4/17/2014 | 104835 | 33261-0081-90 | NAPROSYN 500MG TAB | 90 | 166.00 | | | 3,993.80 |
| 4/17/2014 | 104836 | 33261-0500-60 | XANAX 2MG TAB | 60 | 256.20 | | | 4,250.00 |
| 6/17/2014 | 106163 | 33261-0081-90 | NAPROSYN 500MG TAB | 90 | 166.00 | | | 4,416.00 |
| 6/17/2014 | 106164 | 33261-0049-90 | NEURONTIN 300MG CAP | 90 | 175.00 | | | 4,591.00 |
| 6/17/2014 | 106165 | 33261-0880-30 | TRAMADOL ER 150MG CAP | 60 | 0.00 | | | 4,591.00 |
| 6/17/2014 | 106166 | 33261-0058-60 | NORCO 10MG-325MG CII TAB | 120 | 178.00 | | | 4,769.00 |
| 6/17/2014 | 106167 | 33261-0500-60 | XANAX 2MG TAB | 60 | 256.20 | | | 5,025.20 |
| 6/17/2014 | 106163 | 33261-0081-90 | NAPROSYN 500MG TAB | 90 | | 166.00 | | 4,859.20 |
| 6/17/2014 | 106164 | 33261-0049-90 | NEURONTIN 300MG CAP | 90 | | 175.00 | | 4,684.20 |
| 6/17/2014 | 106165 | 33261-0880-30 | TRAMADOL ER 150MG CAP | 60 | | 0.00 | | 4,684.20 |
| 6/17/2014 | 106166 | 33261-0058-60 | NORCO 10MG-325MG CII TAB | 120 | | 178.00 | | 4,506.20 |
| 6/17/2014 | 106167 | 33261-0500-60 | XANAX 2MG TAB | 60 | | 256.20 | | 4,250.00 |
| 6/17/2014 | 106163 | 33261-0081-90 | NAPROSYN 500MG TAB | 90 | 166.00 | | | 4,416.00 |
| 6/17/2014 | 106164 | 33261-0049-90 | NEURONTIN 300MG CAP | 90 | 175.00 | | | 4,591.00 |
| 6/17/2014 | 106165 | 33261-0880-30 | TRAMADOL ER 150MG CAP | 60 | 558.80 | | | 5,149.80 |
| 6/17/2014 | 106166 | 33261-0058-60 | NORCO 10MG-325MG CII TAB | 120 | 178.00 | | | 5,327.80 |
| 6/17/2014 | 106167 | 33261-0500-60 | XANAX 2MG TAB | 60 | 256.20 | | | 5,584.00 |
| 7/15/2014 | 106693 | 33261-0049-90 | NEURONTIN 300MG CAP | 90 | 175.00 | | | 5,759.00 |
| 7/15/2014 | 106694 | 33261-0105-60 | ULTRAM 50MG TAB | 60 | 101.20 | | | 5,860.20 |
| 7/15/2014 | 106695 | 33261-0081-90 | NAPROSYN 500MG TAB | 90 | 166.00 | | | 6,026.20 |
| 7/15/2014 | 106696 | 33261-0500-60 | XANAX 2MG TAB | 60 | 256.20 | | | 6,282.40 |
| 7/15/2014 | 106697 | 33261-0058-60 | NORCO 10MG-325MG CII TAB | 120 | 178.00 | | | 6,460.40 |
| 8/18/2014 | 107407 | 33261-0058-60 | NORCO 10MG-325MG CII TAB | 120 | 178.00 | | | 6,638.40 |
| 8/18/2014 | 107408 | 33261-0500-60 | XANAX 2MG TAB | 60 | 256.20 | | | 6,894.60 |
| 8/18/2014 | 107409 | 33261-0049-90 | NEURONTIN 300MG CAP | 90 | 175.00 | | | 7,069.60 |
| 8/18/2014 | 107410 | 33261-0105-60 | ULTRAM 50MG TAB | 60 | 101.20 | | | 7,170.80 |
| 9/16/2014 | 107921 | 33261-0058-60 | NORCO 10MG-325MG CII TAB | 120 | 179.50 | | | 7,350.30 |
| 9/16/2014 | 107922 | 33261-0105-60 | ULTRAM 50MG TAB | 60 | 102.70 | | | 7,453.00 |
| 9/16/2014 | 107923 | 33261-0049-60 | NEURONTIN 300MG CAP | 60 | 119.50 | | | 7,572.50 |
| 10/16/2014 | 108574 | 33261-0500-60 | XANAX 2MG TAB | 60 | 257.70 | | | 7,830.20 |
| 10/16/2014 | 108575 | 33261-0058-30 | NORCO 10MG-325MG CII TAB | 90 | 136.00 | | | 7,966.20 |
| 10/16/2014 | 108576 | 33261-0049-60 | NEURONTIN 300MG CAP | 60 | 119.50 | | | 8,085.70 |
| 11/18/2014 | 109190 | 33261-0049-60 | NEURONTIN 300MG CAP | 60 | 119.50 | | | 8,205.20 |
| 11/18/2014 | 109191 | 33261-0500-60 | XANAX 2MG TAB | 60 | 257.70 | | | 8,462.90 |
| 11/18/2014 | 109192 | 33261-0058-90 | NORCO 10MG-325MG CII TAB | 90 | 136.00 | | | 8,598.90 |
| 3/19/2014 | 104079 | 33261-0049-90 | NEURONTIN 300MG CAP | 90 | | 175.00 | | 8,423.90 |
| 3/19/2014 | 104075 | 33261-0105-60 | ULTRAM 50MG TAB | 60 | | 101.20 | | 8,322.70 |
| 3/19/2014 | 104078 | 33261-0081-90 | NAPROSYN 500MG TAB | 90 | | 166.00 | | 8,156.70 |
| 3/19/2014 | 104076 | 33261-0500-60 | XANAX 2MG TAB | 60 | | 236.19 | | 7,920.51 |
| 3/19/2014 | 104077 | 33261-0218-60 | LORTAB 10MG-500MG CII TAB | 120 | | 173.20 | | 7,747.31 |
| 3/19/2014 | 104076 | 33261-0500-60 | XANAX 2MG TAB | 60 | | | 20.01 | 7,727.30 |

RxBilling

| Date | Rx# | NDC | Drug | Qty | Price | | | Balance |
|------|-----|-----|------|-----|-------|---|---|---------|
| 12/18/2014 | 109885 | 33261-0049-60 | NEURONTIN 300MG CAP | 60 | 119.50 | | | 7,846.80 |
| 12/18/2014 | 109886 | 33261-0500-60 | XANAX 2MG TAB | 60 | 257.70 | | | 8,104.50 |
| 12/18/2014 | 109887 | 33261-0058-90 | NORCO 10MG-325MG CII TAB | 90 | 136.00 | | | 8,240.50 |
| 1/13/2015 | 110318 | 33261-0500-60 | XANAX 2MG TAB | 60 | 257.70 | | | 8,498.20 |
| 1/13/2015 | 110319 | 33261-0058-60 | NORCO 10MG-325MG CII TAB | 60 | 92.50 | | | 8,590.70 |
| 1/13/2015 | 110320 | 33261-0049-60 | NEURONTIN 300MG CAP | 60 | 119.50 | | | 8,710.20 |
| 2/16/2015 | 111043 | 33261-0058-90 | NORCO 10MG-325MG CII TAB | 90 | 136.00 | | | 8,846.20 |
| 2/16/2015 | 111044 | 33261-0500-60 | XANAX 2MG TAB | 60 | 257.70 | | | 9,103.90 |
| 2/16/2015 | 111045 | 33261-0049-60 | NEURONTIN 300MG CAP | 60 | 119.50 | | | 9,223.40 |
| 3/16/2015 | 111663 | 33261-0058-90 | NORCO 10MG-325MG CII TAB | 90 | 136.00 | | | 9,359.40 |
| 3/16/2015 | 111664 | 33261-0500-60 | XANAX 2MG TAB | 60 | 257.70 | | | 9,617.10 |
| 3/16/2015 | 111665 | 33261-0049-60 | NEURONTIN 300MG CAP | 60 | 119.50 | | | 9,736.60 |
| 4/15/2015 | 112288 | 33261-0049-60 | NEURONTIN 300MG CAP | 60 | 119.50 | | | 9,856.10 |
| 4/15/2015 | 112289 | 33261-0058-90 | NORCO 10MG-325MG CII TAB | 90 | 136.00 | | | 9,992.10 |
| 4/15/2015 | 112290 | 33261-0500-60 | XANAX 2MG TAB | 60 | 257.70 | | | 10,249.80 |
| | | | | | Total: | 11,896.60 | 1,626.79 | 20.01 |

Amounts Past Due:

| Date Rage: | 0 - 29 | 30 - 59 | 60 - 89 | 90 - 119 | 120 - 149 | 150 - 179 | >= 180 days | Balance Due: |
|-----------|--------|---------|---------|----------|-----------|-----------|-------------|--------------|
| Payment Due: | 513.20 | 513.20 | 513.20 | 469.70 | 513.20 | 513.20 | 7,214.10 | 10,249.80 |

## Please Submit $10,249.80 Payment To:
### Tax Id:
### Summit Medical Group
### 8560 SILVERY LN, 202
### DEARBORN MI 48127

## Patient Demographics

| | | | |
|---|---|---|---|
| Chart #: | 004457 | SSN: | Acct.Type: Workers Compensation |
| Patient Name: | Sheila Williams | Employment Status: | Gender: Female |
| Address: | 8673 ASHTON AVE | Student Status: | DOB / Age: 06/25/1965    49 years |
| | DETROIT, MICHIGAN 48228 | Phone:    (313) 208-0596 | Marital Status: |
| | | | Email: |
| Provider: | LARAN LERNER | | |

## Current Insurance Information

### Responsible Party

| | | | | | |
|---|---|---|---|---|---|
| Name: | SHEILA WILLIAMS | Email: | | Address: | 8673 ASHTON AVE |
| | | | | | DETROIT, MICHIGAN 48228 |

Primary Phone:    (313) 208-0596
Secondary Phone:

**Primary**

| | |
|---|---|
| Payer: | CITY OF DETROIT |
| Address: | 2 WOODWARD AVE SUITE 500 |
| | DETROIT, MICHIGAN 48226 |
| Phone: | (313) 237-0406 |
| Insured Name: | SHEILA WILLIAMS |
| Insured DOB: | 06/25/1965 |
| Address: | 8673 ASHTON AVE |
| | DETROIT, MICHIGAN 48228 |
| SSN: | |
| Group Number: | |
| Group Name: | |
| Member ID: | A32950-002704 |

## Transactions Posted

| Effective Date | Type/ Place of Service | Description/ Diagnoses | Status/ Rendering Provider | Units | Debits | Credits | Bal/Unap |
|---|---|---|---|---|---|---|---|
| 01/13/2015 | Charge | 95885 MUSC TST DONE W/NERV TST LIM | Ready | 2 | $ 1,150.80 | | $ 1,150.80 |
| | 11 (Office) | 721.0 / 724.4 | LERNER, LARAN | | | | |
| 01/13/2015 | Charge | 95913 MOTOR&SENS 13/> NRV CND TEST | Ready | 1 | $ 2,895.40 | | $ 2,895.40 |
| | 11 (Office) | 723.1 / 724.2 | LERNER, LARAN | | | | |
| | | | Totals: | 3 | $ 4,046.20 | | $ 4,046.20 |

| | | | |
|---|---|---|---|
| Total Charges: | $ 4,046.20 | Current Patient Balance: | $ 4,046.20 |
| Patient Payments: | $ 0.00 | Current Ins Balance: | $ 0.00 |
| Insurance Payments: | $ 0.00 | Current Account Balance: | $ 4,046.20 |
| Total Adjustments: | $ 0.00 | | |
| Total Unapplied: | $ 0.00 | | |

13-53846-tjt    Doc 11142-2    Filed 05/03/16    Entered 05/03/16 16:44:29    Page 36 of 68

SHEILA WILLIAMS

# EXHIBIT C

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

SUMMIT MEDICAL GROUP, PLLC,
(Sheila Williams)

Case No. 13-        -NF
Hon.

     Plaintiff,

v.

CITY OF DETROIT,

     Defendant.

13-005468-NF

FILED IN MY OFFICE
WAYNE COUNTY CLERK
4/25/2013 3:02:36 PM
CATHY M. GARRETT

HAAS & GOLDSTEIN, PC
JUSTIN HAAS (P53153)
Attorney for Plaintiff
31275 Northwestern Hwy, Ste. 225
Farmington Hills, MI 48334
(248) 702-6550
(248) 538-9044 Fax

                                                    /

THIS IS TO CERTIFY THAT NO OTHER CIVIL ACTION ARISING OUT OF THE SAME TRANSACTION OR OCCURRENCE AS ALLEGED IN THIS COMPLAINT HAS HERETOFORE BEEN COMMENCED IN THIS COURT.

*By: /s/JUSTIN HAAS*
JUSTIN HAAS (P53153)

**COMPLAINT**

    NOW COMES Plaintiff by and through its attorneys, HAAS & GOLDSTEIN, P.C., and for its cause of action against Defendant, hereby says as follows:

    1.    Plaintiff is a corporation licensed to conduct business under the laws of the State of Michigan and at all times pertinent herein was conducting business in the State of Michigan.

1

2.    Defendant is a governmental entity, duly organized and existing under the laws of the State of Michigan and conducting business in the County of Wayne, State of Michigan.

3.    On May 10, 2012, Sheila Williams, (hereinafter "the injured party") sustained accidental bodily injuries within the meaning of the statutory provisions of MCL 500.3105.

4.    Defendant is first in order of priority to pay for the injured party's claim for no fault personal protection insurance benefits in accordance with Chapter 31 of the Michigan Insurance Code, more commonly known as the "no-fault insurance law."

5.    Defendant assigned claim number A32950-002704 to the injured party's claim.

6.    Defendant became obligated to pay for certain expenses incurred for reasonably necessary products and services rendered for the injured party's care, recovery or rehabilitation as a result of the injured party's sustained accidental bodily injuries arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle.

7.    Plaintiff timely submitted billings to Defendant for medical services that were rendered to the injured party and that were reasonably necessary for the care, recovery or rehabilitation of the injured party for her injuries.

8.    Plaintiff also submitted to Defendant supporting medical records and all other documentation and forms necessary for Defendant to determine the reasonableness, necessity and amount of the medical services rendered to the injured party.

2

9.    Defendant was provided reasonable proof of the fact and of the amount of losses sustained and charges incurred.

10.    To date, Defendant has unreasonably refused and/or delayed in making payment to Plaintiff for the medical services rendered.

11.    Pursuant to MCL 500.3157, Plaintiff is entitled to recover the outstanding balances for the medical services rendered to the injured party from Defendant.

12.    Plaintiff has requested payment from Defendant for the amount of the bills due and owing and Defendant has refused and/or neglected to pay them.

13.    Plaintiff is entitled to reasonable and actual attorney fees incurred in this action pursuant to MCL 500.3148.

14.    Plaintiff is also entitled to costs and interest pursuant to MCL 500.3142 for the overdue bills that have not been paid by Defendant within 30 days after Defendant received reasonable proof of the fact and of the amount of loss sustained.

WHEREFORE, Plaintiff claims as damages against Defendant in a sum more than Twenty Five Thousand ($25,000) Dollars, which the triers of fact deem reasonable, plus costs, attorney fees and interest most wrongly sustained.

Respectfully submitted,

*/s/ JUSTIN HAAS*
HAAS & GOLDSTEIN, PC
JUSTIN HAAS (P53153)
Attorney for Plaintiff
31275 Northwestern Highway, Ste 225
Farmington Hills, MI 48334
(248) 702-6550

Dated: April 24, 2013

3

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

SUMMIT MEDICAL GROUP, PLLC,
(Sheila Williams)

           Plaintiff,

v.

CITY OF DETROIT,

           Defendant.

Case No. 13-          -NF
Hon.

13-005468-NF
FILED IN MY OFFICE
WAYNE COUNTY CLERK
4/25/2013 3:02:36 PM
CATHY M, GARRETT

HAAS & GOLDSTEIN, PC
JUSTIN HAAS (P53153)
Attorney for Plaintiff
31275 Northwestern Hwy, Ste. 225
Farmington Hills, MI 48334
(248) 702-6550
(248) 538-9044 Fax

           /

THIS IS TO CERTIFY THAT NO OTHER CIVIL ACTION
ARISING OUT OF THE SAME TRANSACTION OR
OCCURRENCE AS ALLEGED IN THIS COMPLAINT HAS
HERETOFORE BEEN COMMENCED IN THIS COURT.

*By: /s/JUSTIN HAAS*
JUSTIN HAAS (P53153)

**COMPLAINT**

NOW COMES Plaintiff by and through its attorneys, HAAS & GOLDSTEIN, P.C.,

and for its cause of action against Defendant, hereby says as follows:

    1.    Plaintiff is a corporation licensed to conduct business under the laws of

the State of Michigan and at all times pertinent herein was conducting business in the

State of Michigan.

1

2. Defendant is a governmental entity, duly organized and existing under the laws of the State of Michigan and conducting business in the County of Wayne, State of Michigan.

3. On May 10, 2012, Sheila Williams, (hereinafter "the injured party") sustained accidental bodily injuries within the meaning of the statutory provisions of MCL 500.3105.

4. Defendant is first in order of priority to pay for the injured party's claim for no fault personal protection insurance benefits in accordance with Chapter 31 of the Michigan Insurance Code, more commonly known as the "no-fault insurance law."

5. Defendant assigned claim number A32950-002704 to the injured party's claim.

6. Defendant became obligated to pay for certain expenses incurred for reasonably necessary products and services rendered for the injured party's care, recovery or rehabilitation as a result of the injured party's sustained accidental bodily injuries arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle.

7. Plaintiff timely submitted billings to Defendant for medical services that were rendered to the injured party and that were reasonably necessary for the care, recovery or rehabilitation of the injured party for her injuries.

8. Plaintiff also submitted to Defendant supporting medical records and all other documentation and forms necessary for Defendant to determine the reasonableness, necessity and amount of the medical services rendered to the injured party.

2

9.	Defendant was provided reasonable proof of the fact and of the amount of losses sustained and charges incurred.

10.	To date, Defendant has unreasonably refused and/or delayed in making payment to Plaintiff for the medical services rendered.

11.	Pursuant to MCL 500.3157, Plaintiff is entitled to recover the outstanding balances for the medical services rendered to the injured party from Defendant.

12.	Plaintiff has requested payment from Defendant for the amount of the bills due and owing and Defendant has refused and/or neglected to pay them.

13.	Plaintiff is entitled to reasonable and actual attorney fees incurred in this action pursuant to MCL 500.3148.

14.	Plaintiff is also entitled to costs and interest pursuant to MCL 500.3142 for the overdue bills that have not been paid by Defendant within 30 days after Defendant received reasonable proof of the fact and of the amount of loss sustained.

WHEREFORE, Plaintiff claims as damages against Defendant in a sum more than Twenty Five Thousand ($25,000) Dollars, which the triers of fact deem reasonable, plus costs, attorney fees and interest most wrongly sustained.

Respectfully submitted,

*/s/ JUSTIN HAAS*
HAAS & GOLDSTEIN, PC
JUSTIN HAAS (P53153)
Attorney for Plaintiff
31275 Northwestern Highway, Ste 225
Farmington Hills, MI 48334
(248) 702-6550

Dated: April 24, 2013

3

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

☐ **OFFICER CERTIFICATE**    OR    ☐ **AFFIDAVIT OF PROCESS SERVER**

I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2)], and that: (notarization not required)

Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization not required)

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____
List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

I declare that the statements above are true to the best of me information, knowledge and belief.

| Service fee $ | Miles traveled $ | Mileage fee $ | Total fee $ | Signature |
|---|---|---|---|---|

Name (type or print)

Title

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date            Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____

Signature

MC 01-3CC (09/2008) SUMMONS AND RETURN OF SERVICE

DB

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

SUMMIT MEDICAL GROUP, PLLC
and SUMMIT PHYSICIANS GROUP, PLLC,
(Sheila Williams)

          Case No. 14-   -NF
   Plaintiffs,         Hon. Patricia Fresard

v.

                        14-010025-NF

CITY OF DETROIT,

                        FILED IN MY OFFICE
                     WAYNE COUNTY CLERK
   Defendant.           8/4/2014 3:16:56 PM
                      CATHY M/ GARRETT

HAAS & GOLDSTEIN, PC
JUSTIN HAAS (P53153)
Attorney for Plaintiffs
31275 Northwestern Hwy, Ste. 225
Farmington Hills, MI 48334
(248) 702-6550
(248) 538-9044 Fax
                                         /

         THIS IS TO CERTIFY THAT ANOTHER CIVIL ACTION
ARISING OUT OF THE SAME TRANSACTION OR
OCCURRENCE AS ALLEGED IN THIS COMPLAINT HAD
HERETOFORE BEEN COMMENCED IN THIS COURT AND
WAS PENDING BEFORE JUDGE PATRICIA FRESARD
AND WAS ASSIGNED CASE #13-006227-NF.

                *By: /s/JUSTIN HAAS*
                JUSTIN HAAS (P53153)

**COMPLAINT**

    NOW COMES Plaintiff by and through its attorneys, HAAS & GOLDSTEIN, P.C.,

and for its cause of action against Defendant, hereby says as follows:

    1.    Plaintiff, SUMMIT MEDICAL GROUP, PLLC, is a corporation licensed to

conduct business under the laws of the State of Michigan and at all times pertinent

herein was conducting business in the State of Michigan.

1

2. Plaintiff, SUMMIT PHYSICIANS GROUP, PLLC, is a corporation licensed to conduct business under the laws of the State of Michigan and at all times pertinent herein was conducting business in the State of Michigan.

3. Defendant is a governmental entity, duly organized and existing under the laws of the State of Michigan and conducting business in the County of Wayne, State of Michigan.

4. On May 10, 2012, Sheila Williams, (hereinafter "the injured party") sustained accidental bodily injuries within the meaning of the statutory provisions of MCL 500.3105.

5. Defendant is first in order of priority to pay for the injured party's claim for no fault personal protection insurance benefits in accordance with Chapter 31 of the Michigan Insurance Code, more commonly known as the "no-fault insurance law."

6. Defendant assigned claim number A32950-002704 to the injured party's claim.

7. Defendant became obligated to pay for certain expenses incurred for reasonably necessary products and services rendered for the injured party's care, recovery or rehabilitation from August 4, 2013 to the present and into the future as a result of the injured party's sustained accidental bodily injuries arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle.

8. Plaintiffs timely submitted billings to Defendant for medical services that were rendered to the injured party from August 4, 2013 to the present and into the future and that were reasonably necessary for the care, recovery or rehabilitation of the

2

injured party for her injuries.

9.      Plaintiffs also submitted to Defendant supporting medical records and all other documentation and forms necessary for Defendant to determine the reasonableness, necessity and amount of the medical services rendered to the injured party.

10.     Defendant was provided reasonable proof of the fact and of the amount of losses sustained and charges incurred.

11.     To date, Defendant has unreasonably refused and/or delayed in making payment to Plaintiffs for the medical services rendered.

12.     Pursuant to MCL 500.3157, Plaintiffs are entitled to recover the outstanding balances for the medical services rendered to the injured party from Defendant.

13.     Plaintiffs have requested payment from Defendant for the amount of the bills due and owing and Defendant has refused and/or neglected to pay them.

14.     Plaintiffs are entitled to reasonable and actual attorney fees incurred in this action pursuant to MCL 500.3148.

15.     Plaintiffs are also entitled to costs and interest pursuant to MCL 500.3142 for the overdue bills that have not been paid by Defendant within 30 days after Defendant received reasonable proof of the fact and of the amount of loss sustained.

WHEREFORE, Plaintiffs claim as damages against Defendant in a sum more than Twenty Five Thousand ($25,000) Dollars, which the triers of fact deem reasonable, plus costs, attorney fees and interest most wrongly sustained.

3

Respectfully submitted,

*/s/ JUSTIN HAAS*
HAAS & GOLDSTEIN, PC
JUSTIN HAAS (P53153)
Attorney for Plaintiffs
31275 Northwestern Highway, Ste 225
Farmington Hills, MI 48334
(248) 702-6550

Dated: August 4, 2014

4

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | SUMMONS AND RETURN OF SERVICE | CASE NO. 14-010025-NF |
|---|---|---|

2 Woodward Ave., Detroit MI 48226        Court Telephone No. 313-224-2474

**THIS CASE IS ASSIGNED TO JUDGE**    Patricia Perez Fresard    **Bar Number: 39787**

| Plaintiff SUMMIT MEDICAL GROUP, PLLC | v | Defendant CITY OF DETROIT |
|---|---|---|
| **Plaintiff's Attorney** Justin Haas, P-53153 31275 Northwestern Hwy Ste 225 Farmington Hills, MI 48334-2533 | | **Defendant's Attorney** |

| CASE FILING FEE | JURY FEE |
|---|---|
| [X]   Case Filing Fee - $150.00 | [ ]   Jury Fee - $85.00 |

| ISSUED | THIS SUMMONS EXPIRES | DEPUTY COUNTY CLERK |
|---|---|---|
| 8/ 4/2014 | 11/ 3/2014 | File & Serve Tyler |

*This summons is invalid unless served on or before its expiration date.     CATHY M. GARRETT - WAYNE COUNTY CLERK

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.

2. YOU HAVE 21 DAYS after receiving this summons to file an answer with the court and serve a copy on the other party or take other lawful action (28 days if you were served by mail or you were served outside this state).

3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

X   There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

___   A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

___   There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

___   An action within the jurisdiction of the family division of circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The docket number and assigned judge of the civil/domestic relations action are:

| Docket No. | Judge | Bar No. |
|---|---|---|
| | | |

The action [ ] remains [ ] is no longer pending.

I declare that the complaint information above and attached is true to the best of my information, knowledge, and belief.

_____      _____
Date      Signature of attorney/plaintiff

**COMPLAINT IS STATED ON ATTACHED PAGES. EXHIBITS ARE ATTACHED IF REQUIRED BY COURT RULE.**
If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01-3CC (09/2008) SUMMONS AND RETURN OF SERVICE
MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

# EXHIBIT D

## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

**SUMMIT MEDICAL GROUP, PLLC,**
**AND SUMMIT PHYSICIANS GROUP, PLLC,**
(Sheila Williams)

Case No. 14-010025-NF
Hon. Patricia Perez Fresard

Plaintiffs,

v.

**CITY OF DETROIT,**

Defendant.

| | |
|---|---|
| **HAAS & GOLDSTEIN, PC** | **CITY OF DETROIT LAW DEPT** |
| **JUSTIN HAAS (P53153)** | **BY: CELESTA CAMPBELL (P54382)** |
| Attorneys for Plaintiff | Attorney for Defendant |
| 31275 Northwestern Hwy, Ste. 225 | 2 Woodward Avenue, Suite 500 |
| Farmington Hills, Ml 48334 | Detroit, MI 48226 |
| (248) 702-6550 | (313) 237-3068 |
| jhaas@haasgoldstein.com | campc@detroitmi.gov |

## DEFENDANT CITY OF DETROIT'S ANSWERS TO
## PLAINTIFF'S INTERROGATORIES

**NOW COMES,** Defendant, **CITY OF DETROIT,** by and through its undersigned

counsel, and in answer to Plaintiff's Interrogatories, states as follows:

1.      Please set forth the name, address and job title or capacity of the person

answering these interrogatories.

ANSWER:
     **Kelvin Lenton, York Risk Services Group, 31555 W. 14 Mile Road, Ste 110,**
     **Farmington Hills, MI 48334, Senior Claims Adjuster**

2.    Please state the name, address and job title of all persons who assisted in the preparation of these answers.

ANSWER
   **Celesta Campbell, Sr. Assistant Corporation Counsel, 2 Woodward, Suite 500, Detroit, MI 48226.**


3.    Is the name and entity of the Defendant correctly stated in the pleadings? If not, what corrections should be made?

ANSWER
   **Yes.**


4.    Has the defendant, at any time, received any notice of Plaintiffs claims for personal protection benefits for Claimant? If so, please state:

   a.    The date of each notice;

   b.    Whether written or oral;

   c.    From whom the notice was received;

   d.    Who in defendant's employ received the notice;

   e.    Will you, without a motion to produce, attach a copy of each written notice to your answers to these interrogatories? If not, why not?

ANSWER
   **Yes.**

   **a – d    City of Detroit Law Department received written notices from Randall I. Stone, Esq. on June 19, 2012 and July 3, 2012.**

   **e.    See Claims file.**


5.    Has the defendant at any time received proof of the fact and of the amount of losses sustained by the plaintiff for treatment of Claimant? If so, for each proof received, please

state:

      a.      The nature or type of proof received;

      b.      When received;

      c.      From whom this information was received;

      d.      Will you, without a motion to produce, attach a copy of each item or document referred to above? If no, why not?

ANSWER
    **Yes.**
    **a.**    **Written**
    **b.**    **6/29/13**
           **9/30/13**
           **10/9/14**
           **11/17/14**
           **11/18/14**
           **12/18/14**
           **12/22/14**
           **1/4/15**
           **1/28/15**
    **c.**    **All from Summit Medical Group**
    **d.**    **Yes. See Claims file.**

6.      Has an investigation at any time been conducted with respect to any aspect of the plaintiff's claims which are the subject of this litigation? If so, for each investigation, please state:

      a.      The date made;

      b.      The name, address, telephone number and job title or capacity of the person who authorized it;

      c.      The name, address, telephone number and job title of the person who performed the investigation.

**ANSWER**
    **No investigation has occurred.**

32.   Please provide the identity and location of all persons having knowledge of discoverable matters in this case.  Further, for each person, please state the subject matter of the knowledge each person is expected to have and a synopsis of the anticipated testimony of each.

**ANSWER**

   **Objection: Vague, over broad, and lacks specificity.**

Respectfully submitted,
CITY OF DETROIT LAW DEPARTMENT

_Kelvin Lenton_
Kelvin Lenton, York Risk Services Group
Senior Claims Adjuster

_C Campbell_
Celesta Campbell (P54382)
Senior Assistant Corporation Counsel
Attorney for Defendant

Dated: _2/15/15_

Dated: _2/16/15_

# EXHIBIT E

credit: 12/23/2014    process: 12/23/2014    lockbox: 771721    batch: 417    item: 22
check: 1026    amount: USD 1,205.00    remitter:

WARNING: THIS DOCUMENT CONTAINS A TRUE WATERMARK • HOLD TO LIGHT TO VIEW. • PAPER WILL TURN BROWN IF CHEMICALLY ALTERED • FLUORESCENT FIBERS ALSO EMBEDDED INTO THIS DOCUMENT

CITY OF DETROIT (D/7175)
AUTO AND GENERAL LIABILITY RESERVE
5000 Bradenton Avenue
Dublin, OH 43017

Comerica Bank & Trust N.A.
9-9/720

REF. NUMBER
CDMI-0080A3

DATE           CHECK NO
12/19/2014        1026



PAY        ONE THOUSAND TWO HUNDRED FIVE AND 0/100

AMOUNT
***$1,205.00

TO THE
ORDER OF      SUMMIT PHYSICIANS GROUP
              PO BOX-77000
              DEPT-771721
              DETROIT, MI 48277

Authorized Signature

⑈"0001026"⑈ ⑆072000096⑆ 185308891 0"       ⑈0000120500⑈

EOB Pls

Mailing Information:


SUMMIT PHYSICIANS GROUP
PO BOX-77000
DEPT-771721
DETROIT, MI 48277


| | |
|---|---|
| Claim Number | CDMI-0080A3 |
| Claimant | Williams, Shelia |
| Date of Loss | 05/10/2012 |
| Check Number | 1026 |
| Check Date | 12/19/2014 |
| Check Amount | $1,205.00 |
| Type of Payment | |
| | IP 10   MEDICAL NO FAULT |

| | |
|---|---|
| Location | 200010-NA A20000 Dept of Transportation  Administration - Not Applicable 1301 E Warren Av |
| For Period | 03/19/2014 to 03/19/2014 |
| InvoiceNo | P857234 |
| Handling Office | 196-Chicago P&C - Ford, Columbus, OH |
| Detail | SHEILA WILLIAMS/COMPUTED TO LOW OSMOLA |

credit: 12/23/2014    process: 12/23/2014    lockbox: 771721    batch: 417    item: 19
check: 1029    amount: USD 349.43    remitter:

Vorl. Risk Services Group, Inc.

**CITY OF DETROIT (D/7175)**
AUTO AND GENERAL LIABILITY RESERVE
5000 Bradenton Avenue
Dublin, OH 43017

Comerica Bank & Trust N.A.
9-9/720

REF. NUMBER
CDMI-0080A3

DATE
12/19/2014

CHECK NO
1029

PAY      THREE HUNDRED FORTY-NINE AND 43/100

AMOUNT
***$349.43

TO THE
ORDER OF      SUMMIT PHYSICIANS GROUP
PO BOX-77000
DEPT-771721
DETROIT, MI 48277

Authorized Signature

⑈0001029⑈ ⑆072000096⑆ 1853088910⑈          ⑆0000034943⑈

EOB PIS

Mailing Information:


SUMMIT PHYSICIANS GROUP
PO BOX-77000
DEPT-771721
DETROIT, MI 48277


Claim Number        CDMI-0080A3
Claimant            Williams, Shelia
Date of Loss        05/10/2012
Check Number        1029
Check Date          12/19/2014
Check Amount        $349.43
Type of Payment
                    IP 10   MEDICAL NO FAULT

Location            200010-NA A20000 Dept of Transportation   Administration   Not Applicable 1301 E Warren Av
For Period          04/17/2014 to 04/17/2014
InvoiceNo           P856896
Handling Office     196-Chicago P&C - Ford, Columbus, OH
Detail              SHEILA WILLIAMS/OFFICE OR O. DRUG SCREEN

WARNING: THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD TO LIGHT TO VIEW. - PAPER WILL TURN BROWN IF CHEMICALLY ALTERED

credit: 12/23/2014    process: 12/23/2014    lockbox: 771721    batch: 417    item: 4
check: 1025    amount: USD 795.92    remitter:

WARNING: THIS DOCUMENT CONTAINS A TRUE WATERMARK · HOLD TO LIGHT TO VIEW. · PAPER WILL TURN BROWN IF CHEMICALLY ALTERED · FLUORESCENT FIBERS ALSO EMBEDDED INTO THIS DOCUMENT

CITY OF DETROIT (D/7175)
AUTO AND GENERAL LIABILITY RESERVE
5000 Bradenton Avenue
Dublin, OH 43017

Comerica Bank & Trust N.A.
0-9/720

York Risk Services Group, Inc.

REF. NUMBER
CDMI-0080A3

DATE          CHECK NO
12/19/2014    1025



PAY          SEVEN HUNDRED NINETY-FIVE AND 92/100

AMOUNT
***$795.92

TO THE
ORDER OF     SUMMIT PHYSICIANS GROUP
             PO BOX-77000
             DEPT-771721
             DETROIT, MI 48277

Authorized Signature

⑈0001025⑈ ⑆072000096⑆ ⑈8530889810⑈            ⑈000007959 2⑈

EOB PLS

Mailing Information:

SUMMIT PHYSICIANS GROUP
PO BOX-77000
DEPT-771721
DETROIT, MI 48277

| | |
|---|---|
| Claim Number | CDMI-0080A3 |
| Claimant | Williams, Shelia |
| Date of Loss | 05/10/2012 |
| Check Number | 1025 |
| Check Date | 12/19/2014 |
| Check Amount | $795 92 |
| Type of Payment | IP 10 - MEDICAL NO FAULT |
| Location | 200010-NA A20000 Dept of Transportation - Administration - Not Applicable 1301 E Warren Av |
| For Period | 03/19/2014 to 03/19/2014 |
| InvoiceNo | P857236 |
| Handling Office | 196-Chicago P&C  Ford, Columbus, OH |
| Detail | SHEILA WILLIAMS/INJECTION |

WARNING: THIS DOCUMENT CONTAINS A TRUE WATERMARK · HOLD TO LIGHT TO VIEW. · PAPER WILL TURN BROWN IF CHEMICALLY ALTERED · FLUORESCENT FIBERS ALSO EMBEDDED INTO THIS DOCUMENT

CITY OF DETROIT (D/7175)
AUTO AND GENERAL LIABILITY RESERVE
5000 Bradenton Avenue
Dublin, OH 43017

Comerica Bank & Trust N.A.
0-0/720

REF. NUMBER
CDMI-0080A3

DATE
12/19/2014

CHECK NO
1027

PAY     SEVEN HUNDRED ELEVEN AND 68/100

AMOUNT
***$711.68

TO THE
ORDER OF
SUMMIT PHYSICIANS GROUP
PO BOX-77000
DEPT-771721
DETROIT, MI 48277

Authorized Signature

⑈000⑆027⑈ ⑆072000096⑈ 185308891 0⑈     ⑈000007116⑈

EOB Pls

Mailing Information:


SUMMIT PHYSICIANS GROUP
PO BOX-77000
DEPT-771721
DETROIT, MI 48277


| | |
|---|---|
| Claim Number | CDMI-0080A3 |
| Claimant | Williams, Shelia |
| Date of Loss | 05/10/2012 |
| Check Number | 1027 |
| Check Date | 12/19/2014 |
| Check Amount | $711.68 |
| Type of Payment | |
| | IP 10    MEDICAL NO FAULT |
| Location | 200010-NA A20000 Dept of Transportation - Administration - Not Applicable 1301 E Warren Av |
| For Period | 05/15/2014 to 05/15/2014 |
| InvoiceNo | P856895 |
| Handling Office | 196-Chicago P&C    Ford, Columbus, OH |
| Detail | SHEILA WILLIAMS/INJECTIONS |

credit: 12/24/2014   process: 12/24/2014   lockbox: 771475   batch: 297   item: 1
check: 1022   amount: USD 851.59   remitter:

WARNING: THIS DOCUMENT CONTAINS A TRUE WATERMARK • HOLD TO LIGHT TO VIEW • PAPER WILL TURN BROWN IF CHEMICALLY ALTERED • FLUORESCENT FIBERS ALSO EMBEDDED INTO THIS DOCUMENT

York Risk Services Group, Inc.

CITY OF DETROIT (D/7175)
AUTO AND GENERAL LIABILITY RESERVE
5000 Bradenton Avenue
Dublin, OH 43017

Comerica Bank & Trust N.A.
0-0/720



REF. NUMBER
CDMI-0080A3

DATE            CHECK NO
12/19/2014       1022

PAY       EIGHT HUNDRED FIFTY-ONE AND 59/100

AMOUNT
***$851.59

TO THE      SUMMIT MEDICAL GROUP
ORDER OF    PO BOX-77000
            DEPT-771475
            DETROIT, MI 48277

John Nykiel J.

Authorized Signature

⑆000⑈022⑆ ⑆072000096⑆ ⑈853088910⑈          ⑆0000085159⑆

EOB PLS

Mailing Information.


SUMMIT MEDICAL GROUP
PO BOX-77000
DEPT-771475
DETROIT, MI 48277


| | |
|---|---|
| Claim Number | CDMI-0080A3 |
| Claimant | Williams, Shelia |
| Date of Loss | 05/10/2012 |
| Check Number | 1022 |
| Check Date | 12/19/2014 |
| Check Amount | $851.59 |
| Type of Payment | |
| | IP 10 - MEDICAL NO FAULT |
| Location | 200010-NA A20000 Dept of Transportation    Administration - Not Applicable 1301 E Warren Av |
| For Period | 03/19/2014 to 03/19/2014 |
| InvoiceNo | R028174 |
| Handling Office | 196-Chicago P&C   Ford, Columbus, OH |
| Detail | SHEILA WILLIAMS/TRAMADOL, ALPRAZOLAM, HYDROCODONE, NAPROXEN, GABAPENTIN |

# EXHIBIT F

# H G Haas & Goldstein
A Professional Corporation

Attorneys and Counselors

Justin Haas
Laurie Goldstein
Jenifer L. Measel
Jessica Faber
Matthew S. Payne
Diana Basel
Nadia Ragheb-Gonzalez

January 7, 2015

Celesta Campbell, Esq.
City of Detroit Law Dept.
2 Woodward Avenue, Ste. 500
Detroit, MI 48226

RE: **Summit Medical Group, PLLC and Summit Physicians Group, PLLC**
**(Sheila Williams) v. City of Detroit**
**Case No. 14-010025-NF**

Dear Ms. Campbell:

I previously sent you an email requesting that payments for my clients, Summit Medical Group, PLLC and Summit Physicians Group, PLLC, be sent through to my office as I claimed a Lien on any benefits paid in this case. This should have been apparent after I filed lawsuit in an attempt to get the overdue amount paid.

It is my understanding that the City of Detroit continues to issue payments directly to my clients after litigation, and even after my email to you requesting payments to come through me. Accordingly, I ask once again that you contact me to discuss the prior payments issued in violation of the Lien and further make certain that my name appears on any future checks be sent directly to my office.

Very truly yours,



JUSTIN HAAS

JH/pj

31275 Northwestern Highway, Suite 225, Farmington Hills, MI 48334  Tel: (248) 702-6550  Fax: (248) 538-9044

# EXHIBIT G