# EXHIBIT 3

SUMMIT MEDICAL GROUP, PLLC
and SUMMIT PHYSICIANS GROUP, PLLC,
(Shelia Williams)

|  |  |  |
|---|---|---|
| Plaintiff, | Hon. Patricia Fresard<br>Case No. 14-010025 NF | 14-010025-NF |
| v. | | FILED IN MY OFFICE<br>WAYNE COUNTY CLERK<br>6/8/2015 2:10:00 PM<br>CATHY M. GARRETT |
| CITY OF DETROIT, a Municipal<br>Corporation, | | |
| Defendant. | | |

| | |
|---|---|
| Justin Haas (P53153)<br>Haas & Goldstein, P.C.<br>Attorney for Plaintiff<br>31275 Northwestern Hwy., Ste. 225<br>Farmington Hills, Michigan 48334<br>(248) 702-6550; Fax (248) 538-9044<br>jhaas@haasgoldstein.com | Cheryl L. Smith-Williams (P75084)<br>Assistant Corporation Counsel<br>Attorney for Defendant<br>City of Detroit Law Department<br>2 Woodward Avenue, Suite 500<br>Detroit, Michigan 48226<br>(313) 224-4550<br>smitc@detroitmi.gov |

## DEFENDANT CITY OF DETROIT'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY DISPOSITION, TO COMPEL PAYMENT OF INTEREST AND ATTORNEY FEES

### Date of Hearing: July 3, 2015 at 9:00 a.m.

  **NOW COMES DEFENDANT, CITY OF DETROIT,** by and through its undersigned attorney, and in response to Plaintiffs' Motion for Partial Summary Disposition, to Compel Payment of Interest and Attorney Fees responds as follows:

1. Admit

2. Neither admit nor deny.

3. Neither admit nor deny.

4.  Admit.

5.  Neither admit nor deny.

6.  Neither admit nor deny.

7.  Neither admit nor deny.

8.  In response to Plaintiffs' paragraph 4 on page 3, Denied.

9.  In response to Plaintiffs' paragraph 5 on page 3, Defendant admits that checks were issued.

10. In response to Plaintiffs' paragraph 6 on page 3, Admit.

11. In response to Plaintiffs' paragraph 7 on page 3, Defendant neither admit nor deny.

12. In response to Plaintiffs' paragraph 8 on page 4, Denied.

13. In response to Plaintiffs' paragraph 9 on page 4, Defendant neither admit nor deny.

14. In response to Plaintiffs' paragraph 10 on page 4, Defendant neither admit nor deny.

15. In response to Plaintiffs' paragraph 11 on page 4, Defendant neither admit nor deny.

16. In response to Plaintiffs' paragraph 12 on page 5, Admit.

17. In response to Plaintiffs' paragraph 13 on page 5, Defendant neither admit nor deny.

18. In response to Plaintiffs' paragraph 14 on page 5, Denied.

19. In response to Plaintiffs' paragraph 15 on page 5, Defendant neither admit nor deny.

20. In response to Plaintiffs' paragraph 16 on page 6, Defendant neither admit nor deny.

21. In response to Plaintiffs' paragraph 17 on page 6, Defendant neither admit nor deny.

22. That this case was settled under the Eight Amended Plan for the Adjustments of Debts ("the Plan") of the City of Detroit.

23. That this court does not have jurisdiction regarding disputes over the agreements entered into in connection with the Plan. MCR 2.116(c)(4).

24. That under the Plan, Plaintiff is not entitled to interest, costs, or attorney fees, (*See*

2

*Article IV, Section S, 8ᵗʰ Amended Plan, pg. 69).*

25.    That under paragraph 6, of the Plan, Plaintiff agrees that any Settled MVA claim

shall be paid in accordance with, and subject to the treatment provided for claims of

that type under, any Chapter 9 plan for the adjustment of debts confirmed by the

Bankruptcy Court.

26.    That under paragraph 10, of the Agreement Resolving Claim, Plaintiff stipulates to

the entry of an order dismissing with prejudice, and without costs or fees, any civil

action related to the file Claim or settled Claims.

27.    That Defendant City of Detroit has file a Motion with the United States Bankruptcy

Court Eastern District of Michigan to address Plaintiff blatant violation of the court's

order barring attorney fees and interest. (*See attached Motion for Determination that*

*Goodman & Acker and Hass & Goldstein Law Firms Have Violated The Plan of*

*Adjustment, Dated, May 28, 2015)*


**WHEREFORE IT IS RESPECTFULLY** requested that this Honorable court deny

Plaintiffs' Plaintiffs' Motion for Partial Summary Disposition, to Compel Payment of

Interest and Attorney Fees.

Respectfully submitted,


_____/s/ Cheryl L. Smith-Williams_
**Cheryl L. Smith-Williams (P75084)**
Attorney for Defendant City of Detroit
City of Detroit Law Department
2 Woodward Ave., Ste. 500
Detroit, MI 48226
(313) 237-0455
smitc@detroitmi.gov

**Dated:    June 8, 2015**

G:\DOCS\PROP\smitc\a20000\answer\C-S3775.WPD

**SUMMIT MEDICAL GROUP, PLLC**
**and SUMMIT PHYSICIANS GROUP, PLLC,**
(Shelia Williams)

        Plaintiff,

v.

**CITY OF DETROIT**, a Municipal
Corporation,

        Defendant.

Hon. Patricia Fresard
Case No. 14-010025 NF

| | |
|---|---|
| Justin Haas (P53153)<br>Haas & Goldstein, P.C.<br>Attorney for Plaintiff<br>31275 Northwestern Hwy., Ste. 225<br>Farmington Hills, Michigan 48334<br>(248) 702-6550; Fax (248) 538-9044<br>jhaas@haasgoldstein.com | Cheryl L. Smith-Williams (P75084)<br>Assistant Corporation Counsel<br>Attorney for Defendant<br>City of Detroit Law Department<br>2 Woodward Avenue, Suite 500<br>Detroit, Michigan 48226<br>(313) 224-4550<br>smitc@detroitmi.gov |

## MEMORANDUM OF AUTHORITIES

    **NOW COMES** Defendant City of Detroit by and through its undersigned attorney and in support of its response to Plaintiffs' Motion for Partial Summary Disposition, to Compel Payment of Interest and Attorney Fees relies MCR 2.116(c)(4) and MCR 2.116(C)(7).

        Respectfully submitted,

             /s/ Cheryl Smith- Williams
        **Cheryl L. Smith-Williams (P75084)**
        Attorney for Defendant City of Detroit
        City of Detroit Law Department
        2 Woodward Ave., Ste. 500
        Detroit, MI 48226
**Dated:  June 8, 2015**        (313) 237-0455

G:\DOCS\PROP\smitc\a20000\answer\C-S3775.WPD

14-010025-NF

FILED IN MY OFFICE
WAYNE COUNTY CLERK
6/8/2015 2:10:00 PM
CATHY M. GARRETT

# Attachment 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

------------------------------------------------------------ x
                                                             :
In re                                                        :     Chapter 9
                                                             :
CITY OF DETROIT, MICHIGAN,                                   :     Case No. 13-53846
                                                             :
                Debtor.                                      :     Hon. Steven W. Rhodes
                                                             :
                                                             :
------------------------------------------------------------ x

---

**EIGHTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT**
(October 22, 2014)

---

DAVID G. HEIMAN
HEATHER LENNOX
THOMAS A. WILSON
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com
tawilson@jonesday.com

BRUCE BENNETT
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539
bbennett@jonesday.com

JONATHAN S. GREEN
STEPHEN S. LAPLANTE
MILLER, CANFIELD,
    PADDOCK AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE DEBTOR

# TABLE OF CONTENTS

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME ................. 1

A. Defined Terms. ............................................................................................ 1

B. Rules of Interpretation and Computation of Time. ...................................... 30

    1. Rules of Interpretation. ......................................................... 30

    2. Computation of Time. ........................................................... 30

ARTICLE II CLASSIFICATION OF CLAIMS; CRAMDOWN; EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................................................................................. 30

A. Unclassified Claims. ................................................................................... 31

    1. Payment of Administrative Claims. ...................................... 31

    2. Bar Dates for Administrative Claims ..................................... 31

B. Classified Claims. ....................................................................................... 32

    1. Designation of Classes. ......................................................... 32

    2. Subordination; Reservation of Rights to Reclassify Claims. ... 33

    3. Treatment of Claims. ............................................................. 33

C. Confirmation Without Acceptance by All Impaired Classes. ....................... 45

D. Treatment of Executory Contracts and Unexpired Leases. .......................... 45

    1. Assumption. ........................................................................... 45

    2. Assumption of Ancillary Agreements. .................................. 45

    3. Approval of Assumptions and Assignments. .......................... 45

    4. Payments Related to the Assumption of Executory Contracts and Unexpired Leases. ................................................................................ 46

    5. Contracts and Leases Entered Into After the Petition Date ...... 46

    6. Rejection of Executory Contracts and Unexpired Leases ........ 46

    7. Rejection Damages Bar Date. ................................................ 46

    8. Preexisting Obligations to the City Under Rejected Executory Contracts and Unexpired Leases ............................................................. 47

    9. Insurance Policies. ................................................................ 47

ARTICLE III CONFIRMATION OF THE PLAN .................................................................... 47

A. Conditions Precedent to the Effective Date. .............................................. 47

B. Waiver of Conditions to the Effective Date. ............................................... 48

C. Effect of Nonoccurrence of Conditions to the Effective Date. ..................... 49

D. Effect of Confirmation of the Plan. ............................................................ 49

    1. Dissolution of Retiree Committee. ........................................ 49

    2. Preservation of Rights of Action by the City. ....................... 49

    3. Comprehensive Settlement of Claims and Controversies. ..... 49

    4. Discharge of Claims. ............................................................ 50

| | 5. | Injunction. | 50 |
| | 6. | Exculpation. | 51 |
| | 7. | Releases | 52 |
| E. | | No Diminution of State Power | 53 |
| F. | | Effectiveness of the Plan. | 53 |
| G. | | Binding Effect of Plan | 53 |
| ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN | | | 54 |
| A. | | DWSD | 54 |
| | 1. | Rates and Revenues. | 54 |
| | 2. | DWSD CBAs. | 54 |
| | 3. | Potential DWSD Authority Transaction. | 54 |
| B. | | The New B Notes, New C Notes and New LTGO Bonds | 55 |
| C. | | The UTGO Settlement. | 55 |
| D. | | The State Contribution Agreement. | 55 |
| | 1. | State Contribution. | 55 |
| | 2. | Income Stabilization Payments. | 55 |
| | 3. | Conditions to State's Participation. | 56 |
| | 4. | Release of Claims Against the State and State Related Entities. | 56 |
| E. | | The DIA Settlement. | 57 |
| | 1. | Funding Contributions. | 57 |
| | 2. | Transfer of DIA Assets. | 57 |
| | 3. | Conditions to the DIA Funding Parties' Participation. | 57 |
| F. | | Contingent Payment Rights | 58 |
| | 1. | Special Restoration | 58 |
| | 2. | General Restoration | 58 |
| G. | | The OPEB Settlement. | 58 |
| H. | | The LTGO Settlement. | 59 |
| I. | | The Syncora Settlement | 59 |
| J. | | The FGIC/COP Settlement | 59 |
| K. | | Issuance of the New Securities. | 59 |
| L. | | Cancellation of Existing Bonds, Bond Documents, COPs and COP Documents. | 60 |
| M. | | Release of Liens. | 60 |
| N. | | Professional Fees | 61 |
| | 1. | Professional Fee Reserve | 61 |
| | 2. | Fee Review Order | 61 |
| | 3. | Dismissal of the Fee Examiner | 61 |
| | 4. | Potential Review of Fees Not Subject to Fee Review Order | 61 |

| | 5. | Court-Appointed Expert | 62 |
|---|---|---|---|
| O. | | Assumption of Indemnification Obligations. | 62 |
| P. | | Incorporation of Retiree Health Care Settlement Agreement. | 62 |
| Q. | | Payment of Workers' Compensation Claims. | 62 |
| R. | | 36th District Court Settlement. | 62 |
| S. | | Payment of Certain Claims Relating to the Operation of City Motor Vehicles. | 62 |
| T. | | Payment of Tax Refund Claims. | 63 |
| U. | | Utility Deposits. | 63 |
| V. | | Pass-Through Obligations. | 63 |
| W. | | Exit Facility. | 63 |
| X. | | Post-Effective Date Governance. | 63 |

ARTICLE V PROVISIONS REGARDING DISTRIBUTIONS UNDER THE PLAN .... 64

| | | | |
|---|---|---|---|
| A. | | Appointment of Disbursing Agent. | 64 |
| B. | | Distributions on Account of Allowed Claims. | 64 |
| C. | | Certain Claims to Be Expunged. | 64 |
| D. | | Record Date for Distributions; Exception for Bond Claims. | 64 |
| E. | | Means of Cash Payments. | 64 |
| F. | | Selection of Distribution Dates for Allowed Claims. | 65 |
| G. | | Limitations on Amounts to Be Distributed to Holders of Allowed Claims Otherwise Insured. | 65 |
| H. | | City's Rights of Setoff Preserved. | 65 |
| I. | | Delivery of Distributions and Undeliverable or Unclaimed Distributions. | 65 |
| | 1. | Delivery of Distributions Generally. | 65 |
| | 2. | Delivery of Distributions on Account of Bond Claims. | 65 |
| | 3. | De Minimis Distributions / No Fractional New Securities. | 66 |
| | 4. | Undeliverable or Unclaimed Distributions. | 66 |
| | 5. | Time Bar to Cash Payment Rights. | 66 |
| J. | | Other Provisions Applicable to Distributions in All Classes. | 66 |
| | 1. | No Postpetition Interest. | 66 |
| | 2. | Compliance with Tax Requirements. | 66 |
| | 3. | Allocation of Distributions. | 67 |
| | 4. | Surrender of Instruments. | 67 |

ARTICLE VI PROCEDURES FOR RESOLVING DISPUTED CLAIMS ........ 67

| | | | |
|---|---|---|---|
| A. | | Treatment of Disputed Claims. | 67 |
| | 1. | General. | 67 |
| | 2. | ADR Procedures. | 68 |
| | 3. | Tort Claims. | 68 |

compromises and settlements embodied in the Plan, along with the treatment of any associated Allowed Claims, shall not be subject to any collateral attack or other challenge by any Entity in any court or other forum. As such, any Entity that opposes the terms of any compromise and settlement set forth in the Plan must (1) challenge such compromise and settlement prior to Confirmation of the Plan and (2) demonstrate appropriate standing to object and that the subject compromise and settlement does not meet the standards governing bankruptcy settlements under Bankruptcy Rule 9019 and other applicable law.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    DWSD.

   1.    Rates and Revenues.

   DWSD will maintain Fiscal Year 2015 rate setting protocols for a minimum of five years, subject to certain changes necessary to stabilize water and sewer revenues. Rates will be determined by the Board of Water Commissioners or, if a DWSD Authority is formed and approved by the incorporating units' governing bodies, by the board of any such DWSD Authority. The City may seek to implement a rate stability program for City residents, which program may, among other things, (a) provide a source of funds to mitigate against rate increases, (b) enhance affordability and (c) provide a buffer against delinquent payments.

   2.    DWSD CBAs.

   Collective bargaining agreements with respect to current DWSD employees that are in effect and not expired as of the Effective Date will be assumed by the City.

   3.    Potential DWSD Authority Transaction.

   As a result of mediation or otherwise, it is possible that the City may enter into a DWSD Authority Transaction that includes the formation of the DWSD Authority to conduct many or all of the operations currently conducted by DWSD. Any such transaction would be subject to the approval of incorporating units and numerous other conditions. The timing of any such transaction, if it occurs at all, is not known. If any such transaction could occur, unless waived by the City in its sole discretion, the City will enter into such transaction only if Macomb County, Oakland County and Wayne County, and each of their municipal affiliates or related public corporations, withdraw with prejudice or shall have withdrawn with prejudice their objections to the Confirmation of the Plan. Any DWSD Authority Transaction shall be on terms that are consistent with all other provisions of the Plan, applicable law and orders of the Bankruptcy Court. The City shall not enter into any binding agreement with respect to or consummate any DWSD Authority Transaction prior to the Effective Date without first obtaining an order of the Bankruptcy Court approving and authorizing such DWSD Authority Transaction.

   All terms and conditions in respect of any DWSD Authority Transaction set forth in (a) any DWSD Bond Document or (b) any transaction document in respect of such a DWSD Authority Transaction shall in any case include: (i) no material modifications to the source of payment and security for any DWSD Bonds or 2014 Revenue and Revenue Refinancing Bonds; (ii) an opinion of tax counsel that such transfer shall have no material adverse effect on the tax exempt status of the interest on the DWSD Bonds or 2014 Revenue and Revenue Refinancing Bonds; (iii) that the City could issue at least $1 of additional new money DWSD Bonds in compliance with the additional bonds test set forth in the applicable DWSD Bond Documents; and (iv) ratings confirmation of any rating agency then rating the DWSD Bonds and 2014 Revenue and Revenue Refinancing Bonds. A DWSD Authority Transaction shall not affect, impair, modify or otherwise alter the rights of any party under the DWSD Tender Order, the DWSD Bond Documents, the DWSD Revolving Bond Documents, the 2014 DWSD Refinancing Obligations, the 2014 Revenue and Revenue Refinancing Bonds or the 2014 Revenue Refinancing Bonds or any Bond Insurance Policy related to or issued in connection with any of the foregoing.

5.      Court-Appointed Expert

The Court-appointed expert, Martha E. M. Kopacz of Phoenix Management Services, and her counsel shall be compensated for any reasonable fees and expenses incurred through the Confirmation Date in accordance with the terms of the Court's Order Appointing Expert Witness (Docket No. 4215), entered on April 22, 2014, as amended.

O.      Assumption of Indemnification Obligations.

Notwithstanding anything otherwise to the contrary in the Plan, nothing in the Plan shall discharge or impair the obligations of the City as provided in the City Charter of the City or other organizational documents, resolutions, employment contracts, applicable law or other applicable agreements as of the Petition Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of officers and employees of the City (consistent with the injunction provisions of Section III.D.5 and including the members of the City Council, the Mayor and the Emergency Manager) and their Related Entities, in each case to the extent such Entities were acting in such capacity, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, foreseen or unforeseen, asserted or unasserted; provided that this Section IV.O shall be read in conjunction with the provisions for Indirect Employee Indemnity Claims set forth in Section III.D.5. Notwithstanding the foregoing, Retirement System Indemnity Obligations shall not be assumed under the Plan and shall be discharged. For the avoidance of doubt, no indemnification provision in any loan document, bond document, Bond Insurance Policy or other agreement with a Bond Insurer is exempted from discharge by reason of this Section IV.O.

P.      Incorporation of Retiree Health Care Settlement Agreement.

The terms of the Retiree Health Care Settlement Agreement resolving the Retiree Health Care Litigation, which agreement is attached hereto as Exhibit I.A.298, are incorporated herein by reference and shall be binding upon the parties thereto.

Q.      Payment of Workers' Compensation Claims.

From and after the Effective Date, (a) the City will continue to administer (either directly or through a third party administrator) and pay all valid claims for benefits and liabilities for which the City is responsible under applicable State workers' compensation law, regardless of when the applicable injuries were incurred, in accordance with the City's prepetition practices and procedures and governing State workers' compensation law, and (b) nothing in the Plan shall discharge, release or relieve the City from any current or future liability under applicable State workers' compensation law. The City expressly reserves the right to challenge the validity of any claim for benefits or liabilities arising under applicable State workers' compensation law.

R.      36th District Court Settlement.

The City and the Settling 36th District Court Claimants have reached a settlement related to (1) the allowance of certain of the Settling 36th District Court Claimants' Claims and (2) the treatment of Allowed Indirect 36th District Court Claims under the Plan substantially on the terms attached hereto as Exhibit I.A.9. The 36th District Court Settlement is incorporated into the Plan, which shall be construed as a motion for approval of, and the Confirmation Order shall constitute an order approving, such settlement pursuant to Bankruptcy Rule 9019.

S.      Payment of Certain Claims Relating to the Operation of City Motor Vehicles.

From and after the Effective Date, the City will continue to administer (either directly or through a third party administrator) and pay valid prepetition Claims for liabilities with respect to which the City is required to maintain insurance coverage pursuant to MCL § 500.3101 in connection with the operation of the City's motor vehicles, as follows: (1) Claims for personal protection benefits as provided by MCL § 500.3107 and MCL § 500.3108, for which insurance coverage is required by MCL § 500.3101(1), shall be paid in full, to the extent valid, provided, however, that the City will not be liable for or pay interest or attorneys' fees under MCL § 500.3142

or MCL § 500.3148 on prepetition Claims for personal protection benefits; (2) tort claims permitted by MCL § 500.3135, for which residual liability insurance coverage is required by MCL § 500.3101(1) and MCL § 500.3131, shall be paid, to the extent valid, only up to the minimum coverages specified by MCL § 500.3009(1), i.e., up to a maximum of (a) $20,000 because of bodily injury to or death of one person in any one accident, and subject to that limit for one person, (b) $40,000 because of bodily injury to or death of two or more persons in any one accident and (c) $10,000 because of injury to or destruction of property of others in any accident; and (3) Claims for property protection benefits under MCL § 500.3121 and MCL § 500.3123 shall be paid, to the extent valid, only up to the maximum benefits specified in MCL § 500.3121; provided, however, for the avoidance of doubt, to the extent any valid Claim subject to subsections 2 and 3 above exceeds the applicable payment limits, the excess claim amount shall be treated as an Other Unsecured Claim or a Convenience Claim (as applicable). Nothing in the Plan shall discharge, release or relieve the City from any current or future liability with respect to Claims subject to insurance coverage pursuant to MCL § 500.3101 or Claims within the minimum coverage limits in MCL § 500.3009(1). The City expressly reserves the right to challenge the validity of any Claim subject to this Section IV.S, and nothing herein shall be deemed to expand the City's obligations or claimants' rights with respect to these Claims under State law.

T.      Payment of Tax Refund Claims.

        From and after the Effective Date, the City will continue to administer (either directly or through a third party administrator) and pay all valid claims for income tax refunds and property tax refunds for which the City is responsible under applicable law, regardless of when the applicable right to a refund arose, in accordance with the City's prepetition practices and procedures. The City expressly reserves the right to challenge the validity of any claim for an income tax refund or property tax refund.

U.      Utility Deposits.

        From and after the Effective Date, the City will continue to administer utility deposits in accordance with the City's prepetition practices and procedures, including the payment of any undisputed, non-contingent, liquidated claims against the City for the refund of a utility deposit.

V.      Pass-Through Obligations.

        The City shall continue to honor its Pass-Through Obligations to the Pass-Through Recipients.

W.      Exit Facility.

        On the Effective Date, the City shall enter into the Exit Facility, as well as any ancillary notes, documents or agreements in connection therewith, including, without limitation, any documents required in connection with the creation or perfection of the liens securing the Exit Facility.

X.      Post-Effective Date Governance.

        Prior to or on the Effective Date, the Financial Review Commission shall be established pursuant to and in accordance with the Financial Review Commission Act. The Financial Review Commission shall provide oversight as set forth in the Financial Review Commission Act, including to ensure that, post-Effective Date, the City adheres to the Plan and continues to implement financial and operational reforms that promote more efficient and effective delivery of services to City residents. The City shall promptly provide to the Bankruptcy Court copies of any reports given to, or received from, the Financial Review Commission. Nothing herein shall expand, limit or otherwise modify the role or powers of the Financial Review Commission.

# Attachment 2

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CITY OF DETROIT'S MOTION FOR (I) DETERMINATION THAT THE GOODMAN ACKER AND HAAS & GOLDSTEIN LAW FIRMS HAVE VIOLATED THE PLAN OF ADJUSTMENT BY (A) REFUSING TO HONOR AN ADR SETTLEMENT AND/OR (B) SEEKING RELIEF ON A PRE-PETITION CLAIM BEYOND THAT ALLOWED BY THE PLAN OF ADJUSTMENT AND (II) ORDER ENJOINING FURTHER VIOLATIONS**

The City of Detroit ("City") brings this motion because certain law firms, in pursuing pre-petition motor vehicle accident claims against the City, seek to disregard key provisions in the confirmed Eighth Amended Plan for the Adjustment of Debts of the City of Detroit ("Plan of Adjustment"), the Court's Order Confirming Eighth Amended Plan for the Adjustment of the City of Detroit, and orders entered in this bankruptcy case. The City seeks this Court's assistance in directing these firms to abide by orders entered in this case.

### RELEVANT BANKRUPTCY PROCEEDINGS

**A.    The ADR Order.**

1.    As the Court knows, this case represents the largest municipal bankruptcy case in history. Recognizing that the City would be facing an enormous number of pre-petition litigation claims, the Court, in December 2013, entered a detailed ADR Order providing procedures to liquidate those claims. D.E. 2302. The purpose of the ADR Order was to promote the prompt and efficient liquidation of pre-petition litigation claims.

2.    More than 1400 pre-petition litigation claims were ultimately filed against the City. Since the expiration of the February 2014 bar date for submission of claims, the City law

1

department has been diligently attempting to liquidate those claims, i.e., agree with opposing counsel on the proper value of the claim or, if that is not possible, liquidate the claims through litigation. Once the claim is liquidated, the ADR procedures provide for the claim to be treated in the appropriate fashion as provided by the Plan of Adjustment. The Plan of Adjustment has special rules for motor vehicle accident claims as discussed below.

**B.      The Plan of Adjustment provisions regarding first-party no-fault claims.**

3.      Each year, the City of Detroit receives hundreds of first party no-fault claims. Under the no-fault act, an individual's own insurer is normally responsible for paying "first party" no-fault benefits – primarily medical bills and wage loss. Those benefits are payable without regard to who was at fault in causing the accident.

4.      However, the no-fault act also provides that for many bus passengers, the owner of the bus is responsible for paying first party no-fault benefits in the event the bus is involved in an accident – again, without regard to whether the bus driver was at fault. The City also is responsible for payment of first party no-fault benefits in other circumstances, such as if a City vehicle strikes a pedestrian and the pedestrian has no insurance coverage.

5.      As a result, the City was inundated with over 300 pre-petition first-party no-fault bankruptcy claims. Those include claims filed both by the injured party and by medical providers that provided treatment for the injured party. Those claims comprised a very substantial percentage of the 1400 pre-petition bankruptcy litigation claims.

6.      During the bankruptcy proceedings, the City's legal counsel initially took the position that all motor vehicle accident (MVA) claims, including first party no-fault claims, should be treated as all other unsecured claims. As the Court knows, all other holders of allowed

2

unsecured claims are to receive a pro rata share of New B Notes, which will be paid over 30 years.

7.      The state of Michigan disagreed with that position. After extensive negotiations, the City and the state agreed on a Memorandum of Understanding, which is appended as exhibit 6-A. The key provision of the MOU, section II (A) (3), was incorporated verbatim into the Plan of Adjustment (Art. IV (S)):

> "From and after the Effective Date, the City will continue to administer (either directly or through a third party administrator) and pay valid prepetition Claims for liabilities with respect to which the City is required to maintain insurance coverage pursuant to MCL § 500.3101 in connection with the operation of the City's motor vehicles, as follows: **(1) Claims for personal protection benefits as provided by MCL § 500.3107 and MCL§ 500.3108, for which insurance coverage is required by MCL § 500.3101(1), shall be paid in full, to the extent valid, provided, however, that the City will not be liable for or pay interest or attorneys' fees under MCL § 500.3142 or MCL § 500.3148 on prepetition Claims for personal protection benefits;** (2) tort claims permitted by MCL§ 500.3135, for which residual liability insurance coverage is required by MCL § 500.3101(1) and MCL § 500.3131, shall be paid, to the extent valid, only up to the minimum coverages specified by MCL § 500.3009(1), i.e., up to a maximum of (a) $20,000 because of bodily injury to or death of one person in any one accident, and subject to that limit for one person, (b) $40,000 because of bodily injury to or death of two or more persons in any one accident and (c) $10,000 because of injury to or destruction of property of others in any accident; and (3) Claims for property protection benefits under MCL § 500.3121 and MCL § 500.3123 shall be paid, to the extent valid, only up to the maximum benefits specified in MCL § 500.3121; provided, however, for the avoidance of doubt, to the extent any valid Claim subject to subsections 2 and 3 above exceeds the applicable payment limits, the excess claim amount shall be treated as an Other Unsecured Claim or a Convenience Claim (as applicable). Nothing in the Plan shall discharge, release or relieve the City from any current or future liability with respect to Claims subject to insurance coverage pursuant to MCL § 500.3101 or Claims within the minimum coverage limits in MCL § 500.3009(1). The City expressly reserves the right to challenge the validity of any Claim subject to this Section IV.S, and nothing herein shall be deemed to expand the City's obligations or claimants' rights with respect to these Claims under State law."

Plan of Adjustment, Art. IV(S) (Emphasis added).[1]

---

[1] The other major category of motor vehicle claims, other than first party no-fault claims, is "third party claims." Under the no-fault law, a person injured in a motor vehicle accident must

8.     The emphasized language makes clear that claimants pursuing pre-petition first party no-fault claims are entitled to recover the entire claim, to the extent valid, but not interest or attorney fees.[2] This result is exponentially better for claimants than the City's initial proposal of treating first party no-fault claims like all other unsecured claims.

**C.     The Plan of Adjustment gives this Court jurisdiction to resolve this matter.**

9.     The Plan of Adjustment binds all Holders of Claims. Plan of Adjustment, Art. III (G). The Plan of Adjustment also confers expansive jurisdiction on this Court to hear and decide disputes of the sort raised here:

> "Pursuant to sections 105(c), 945 and 1142(b) of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 9 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:
>
> "A. Allow, disallow, estimate, determine, liquidate, reduce, classify, re-classify, estimate or establish the priority or secured or unsecured status of any Claim,
>
> <div align="center">* * *</div>
>
> "E. Adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the City that may be pending on the Effective Date or brought thereafter;
>
> "F. Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

---

ordinarily look to her or her own insurer for payment of medical bills. The injured party is precluded from suing a third party for additional damages, such as pain and suffering, unless (i) the other party's negligence caused the accident and (ii) the injured party suffered severe bodily injury as defined in the no-fault law. In the provision quoted above, third party claims are paid out as follows: the first $20,000 in cash and the remainder (if any) as a bankruptcy claim (either a convenience claim or a general unsecured claim).

[2] The no-fault act generally does not allow recovery of interest or attorney fees, except in certain cases where payments are unreasonably delayed or denied.

<div align="center">4</div>

"G. Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents;

\* \* \*

"I. Issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

\* \* \*

"L. Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order; . . . ."

Plan of Adjustment, Art. VII.

## ARGUMENT

A. **The Goodman Acker and Haas & Goldstein law firms violated the Plan of Adjustment Injunction**

10. Both the Goodman Acker and Haas & Goldstein law firms have violated

the Plan of Adjustment injunction set forth in Article III(D)(5), which provides in

pertinent part:

5. **Injunction**

**On the Effective Date, except as otherwise provided herein or in the Confirmation Order,**

a. **all Entities that have been, are or may be holders of Claims against the City...shall be permanently enjoined from taking any of the following actions against or affecting the City or its property...**

1. **commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other**

5

proceeding of any kind against or affect the City of its property...

   **5.**   proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and

   **6.**   taking any actions to interfere with the implementation or consummation of the Plan.

Plan of Adjustment, Art. III(D)(5) (emphasis supplied).

   **B.   The Goodman Acker law firm should be compelled to carry out the Rosie Jones settlement agreement.**

   11.   The Goodman Acker law firm has violated the injunction because it refuses to abide by the terms of a settlement agreement that resolved the claim of Rosie Jones. The Goodman Acker law firm is representing the plaintiff in Rosie Jones v. City of Detroit, Wayne County Circuit Court, Case No. 12-012579. Jones is pursuing first party no-fault benefits from the City of Detroit based on a pre-petition incident.

   12.   In March of 2014, counsel for the City and Jones negotiated a $40,000 settlement. The settlement was set forth in the Agreement appended as exhibit 6-B – an ADR settlement agreement which bears the caption of this bankruptcy case.

   13.   Jones did not sign the agreement at the City's offices. Rather, the agreement was negotiated directly between counsel for the City and counsel for Jones and, at a later date, Jones signed the agreement at the request of her counsel. Jones' counsel returned to the City the ADR settlement agreement executed by Jones.

   14.   As a matter of custom, not law, the City routinely obtains the signature of both the client and lawyer on ADR settlements. When the City's counsel noticed that Jones' lawyer had

6

not signed the agreement, the agreement was sent back for counsel's signature. Jones' lawyer assured the City the agreement would be promptly signed by counsel and returned. It was not.

15.    Jones' lawyer now takes the position that the agreement is not binding because Jones' lawyer did not sign the ADR agreement. That position is frivolous – it is too obvious for words that there is no legal requirement for an attorney, in addition to the client, to execute a settlement agreement. That is particularly true here, where the settlement was negotiated between counsel and Ms. Jones signed at the request of her lawyer.

16.    The Plan of Adjustment provides no specific date for distributions on account of allowed claims. The City was not able to even begin addressing first party no-fault settlements until after the Plan of Adjustment became effective on December 10, 2014 – until that date there remained the possibility that the Plan of Adjustment would not go effective. In that event, first-party no fault claims might ultimately have been treated in a very different fashion.

17.    After the Plan of Adjustment went effective, the City law department spent significant time attempting to compile and organize the various settlements. It then sought approval for more than 100 pre-petition, first party no-fault settlements from City Council. Each settlement entails considerable paperwork including the settlement agreement, a Medicare affidavit, settlement check and order of dismissal of the state court proceeding. At this same time, the City and its law department have been dealing with a myriad of legal, financial and organizational issues arising from the bankruptcy – including, in addition to the 1,400 litigation claims, hundreds of trade claims, dozens of administrative claims, implementation of complex settlements, preparation of the claims reserve motion, as well as handling hundreds of new post-petition litigation claims and lawsuits.

18.     The City is now in the process of issuing payment for more than 100 pre-petition

first party no-fault claims which have been settled and approved by City Council. The City will

issue payment on the Jones claim promptly after this Court confirms the settlement is binding.

As mentioned, the City is attempting to liquidate some 1,400 litigation claims, and that task will

be virtually impossible if the City must deal with frivolous attempts to renege on agreed

settlements. The City asks that the Court enforce the $40,000 settlement.

19.     Finally, the Goodman Acker law firm has announced that in the Rosie Jones case

and other pre-petition no-fault cases it is handling, it intends to pursue recovery of interest and

attorney fees notwithstanding the Plan of Adjustment express prohibition on recovery of those

amounts. The City justifiably believes that Goodman Acker is attempting to renege on the Jones

settlement precisely so it can seek to collect such amounts.

**C.     The Goodman Acker law-firm, and the Haas & Goldstein law-firm, should
be enjoined from attempting to claim interest and attorney fees on pre-
petition first party no-fault claims, and from bringing a state court action to
enforce an alleged Plan of Adjustment obligation.**

20.     As mentioned, Goodman Acker has advised the City that it intends to pursue

recovery of interest and attorney fees for pre-petition, first party no-fault cases. The firm of Haas

& Goldstein recently filed a state court proceeding to compel the City to pay out pre-petition first

party no-fault settlements and, in its pleadings, seeks recovery of interest and attorney fees. *See*

exhibit 6-C. The Court should enjoin these law-firms from pursuing claims (recovery of interest

and attorney fees) directly prohibited by the Plan of Adjustment.

21.     Further, there is no specified date in the Plan of Adjustment for payment of pre-

petition claims. The City is moving as quickly as reasonably possible to pay out pre-petition first

party no-fault settlements. However, if any claimant or their legal representative has a concern,

their remedy is to bring the matter to the attention of this Court, not a state court.

## CONCLUSION AND RELIEF

22.     For the reasons stated, the City respectfully requests that (1) the Court compel

enforcement of the $40,000 settlement with Ms. Jones, (2) the Court enjoin the respondent law

firms from claiming interest or attorney fees in connection with pre-petition first party no-fault

claims, and (3) the Court enjoin the respondent law firms from pursuing state court actions to

seek payment of bankruptcy claims. On May 27, 2015, the City sought, but did not obtain,

concurrence in the relief requested in this motion.

Dated: May 28, 2015

<div style="margin-left:2em">

By: /s/ Marc N. Swanson
    Stephen S. LaPlante (P48063)
    Marc N. Swanson (P71149)
    MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    laplante@millercanfield.com
    swansonm@millercanfield.com

Charles N. Raimi (P29746)
Deputy Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Coleman A. Young Municipal Center
Detroit, Michigan 48226
Telephone: (313) 237-5037
Facsimile: (313) 224-5505
raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

</div>

9

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

### EXHIBIT LIST

Exhibit 1        Proposed Order
Exhibit 2        Notice of Opportunity to Respond
Exhibit 3        Brief-None
Exhibit 4        Certificate of Service
Exhibit 5        Affidavits-None
Exhibit 6-A     Memorandum of Understanding
Exhibit 6-B     Settlement Agreement
Exhibit 6-C     Motion for Entry of Judgments

**EXHIBIT 1 – PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**ORDER GRANTING CITY OF DETROIT'S MOTION FOR (I)**
**DETERMINATION THAT THE GOODMAN ACKER AND HAAS & GOLDSTEIN**
**LAW FIRMS HAVE VIOLATED THE PLAN OF ADJUSTMENT BY (A) REFUSING**
**TO HONOR AN ADR SETTLEMENT AND/OR (B) SEEKING RELIEF ON A PRE-**
**PETITION CLAIM BEYOND THAT ALLOWED BY THE PLAN OF ADJUSTMENT**
**AND (II) ORDER ENJOINING FURTHER VIOLATIONS**

This matter, having come before the court on the City of Detroit's Motion for (I)

Determination that the Goodman Acker and Haas & Goldstein Law Firms have Violated the Plan

of Adjustment by (A) Refusing to Honor an ADR Settlement and/or (B) Seeking Relief on a Pre-

Petition Claim Beyond That Allowed by the Plan of Adjustment and (II) Order Enjoining Further

Violations ("Motion"); upon proper notice and a hearing; the Court being fully advised in the

premises; and there being good cause to grant the relief requested,

**THE COURT ORDERS THAT:**

1.      The Motion is granted.

2.      The settlement agreement attached as exhibit 6-B to the Motion is binding and

Rosie Jones and the Goodman Acker law firm shall abide by its terms.

3.      The law firms of Goodman Acker and Haas & Goldstein are enjoined from

claiming interest or attorney fees in connection with pre-petition first party no-fault claims.

4.      The law firms of Goodman Acker and Haas & Goldstein are enjoined from

pursuing state court actions to seek payment of bankruptcy claims.

5.    The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

**EXHIBIT 2 – NOTICE**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**NOTICE OF OPPORTUNITY TO RESPOND TO CITY OF DETROIT'S MOTION FOR (I) DETERMINATION THAT THE GOODMAN ACKER AND HAAS & GOLDSTEIN LAW FIRMS HAVE VIOLATED THE PLAN OF ADJUSTMENT BY (A) REFUSING TO HONOR AN ADR SETTLEMENT AND/OR (B) SEEKING RELIEF ON A PRE-PETITION CLAIM BEYOND THAT ALLOWED BY THE PLAN OF ADJUSTMENT AND (II) ORDER ENJOINING FURTHER VIOLATIONS**

The City of Detroit has filed papers with the Court requesting a determination that the law firms of Goodman Acker and Haas & Goldstein have violated the City of Detroit's confirmed plan of adjustment and the order confirming it.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney.**

If you do not want the Court to enter an Order granting the *City Of Detroit's Motion For (I) Determination That the Goodman Acker and Haas & Goldstein Law Firms Have Violated the Plan Of Adjustment By (A) Refusing To Honor An ADR Settlement and/or (B) Seeking Relief On a Pre-Petition Claim Beyond That Allowed By the Plan Of Adjustment and (II) Order Enjoining Further Violations*, within 14 days, you or your attorney must;

    1. File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above. You must also mail a copy to:

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Dated: May 28, 2015

**EXHIBIT 3 – BRIEF**

**NONE**

EXHIBIT 4 – CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 28, 2015, he served a copy of the foregoing *CITY OF DETROIT'S MOTION FOR (I) DETERMINATION THAT THE GOODMAN ACKER AND HAAS & GOLDSTEIN LAW FIRMS HAVE VIOLATED THE PLAN OF ADJUSTMENT BY (A) REFUSING TO HONOR AN ADR SETTLEMENT AND/OR (B) SEEKING RELIEF ON A PRE-PETITION CLAIM BEYOND THAT ALLOWED BY THE PLAN OF ADJUSTMENT AND (II) ORDER ENJOINING FURTHER VIOLATIONS,* upon the persons listed below, via electronic mail and first class mail.

Gerald Acker
Goodman Acker, P.C.
17000 West Ten Mile Road, 2nd Floor
Southfield, MI 48075
gacker@goodmanacker.com

Laurie Goldstein
Haas & Goldstein, PC
31275 Northwestern Hwy.
Farmington Hills, MI 48334
lauriejgoldstein@yahoo.com

Justin Haas
Haas & Goldstein, PC
31275 Northwestern Hwy.
Farmington Hills, MI 48334
jhaas@haasgoldstein.com

Dated: May 28, 2015

By: /s/ Marc N. Swanson
Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

## EXHIBIT 5 – AFFIDAVITS

### NONE

# EXHIBIT 6-A

MEMORANDUM OF UNDERSTANDING
Between the
MICHIGAN DEPARTMENT OF INSURANCE AND FINANCIAL SERVICES,
THE CITY OF DETROIT,
and the
MICHIGAN DEPARTMENT OF TREASURY

Regarding

RENEWAL OF THE CITY OF DETROIT'S
NO-FAULT SELF-INSURANCE CERTIFICATE

## I. PURPOSE AND BACKGROUND

1. The purpose of this Memorandum of Understanding (MOU) is to describe the agreements between the Michigan Department of Insurance and Financial Services (DIFS), the City of Detroit (City), and the Michigan Department of Treasury (Treasury) concerning the conditions under which the Director of DIFS (Director) will exercise her discretion to renew the City's certificate to self-insure against motor vehicle-related claims that arise under Chapter 31 of the Michigan Insurance Code (Chapter 31) and for which Chapter 31 mandates insurance coverage. Motor vehicle-related claims that arise under Chapter 31 and for which Chapter 31 mandates insurance coverage are referred to hereafter as "No-Fault Claims," and the certificate issued by the Director to self-insure against these claims is referred to as a "No-Fault Self-Insurance Certificate."

2. On ___8·7·14___, the City submitted to the Director an application to renew its No-Fault Self Insurance Certificate under the authority of section 3101d of the Michigan Insurance Code, MCL 500.3101d. If approved and issued by the Director, the No-Fault Self-Insurance Certificate will enable the City to comply with state laws requiring insurance on the motor vehicles owned by, registered to, and/or operated by the City.

3. Effective January 1, 2013, the Michigan Legislature provided statutory qualifications for the issuance of a No-Fault Self-Insurance Certificate (and transferred issuance authority from the Michigan Secretary of State to the Director) by enacting 2012 PA 204, MCL 500.3101d.

4. MCL 500.3101d(1) provides that "[a] person in whose name more than 25 motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the commissioner (now Director) under subsection (2)." Under subsection (2), the Director "may, in his or her discretion...issue a certificate of self-insurance to the person if the (Director) is satisfied that the person has and will continue to have the ability to pay judgments obtained against the person."

5. Consistent with the foregoing defined terms, the Director interprets this statutory requirement to apply to the City's ability to pay No-Fault Claims only, i.e., claims that must be covered by insurance under Chapter 31 and therefore fall within the scope of a No-Fault Self-Insurance Certificate. Accordingly, the statute governing the issuance or renewal of a No-Fault Self-Insurance Certificate grants the Director discretion to issue a certificate to "a person" (which includes the City, see MCL 500.114) as long as the Director is satisfied that the person has and will continue to have the ability to pay No-Fault Claims against it.

6. Additional rules applicable to No-Fault Self-Insurance Certificates are contained in R 257.531 – 257.540 of the Michigan Administrative Code, entitled "Certificates of No-Fault Self-Insurance."

7. As reported in the City's application and widely publicized, on July 18, 2013, the City filed a voluntary petition for relief under Chapter 9 of the United States Bankruptcy Code. The bankruptcy case was assigned Case No. 13-53846 and remains pending before the Honorable Steven W. Rhodes in the United States Bankruptcy Court, Eastern District of Michigan.

8. The City's ongoing bankruptcy and current financial condition validate the Director's legitimate concerns as to whether the City has and will continue to have the ability to pay No-Fault Claims against it, both in full and in a timely manner. Barring the agreements and satisfaction of the conditions set forth in this MOU, the Director would be justified in exercising her discretion to deny the City's application under MCL 500.3101d(2) and R 257.538.

9. However, in reliance on the City's and Treasury's agreements contained in this MOU and satisfaction of the conditions outlined below, the Director will renew the City's No-Fault Self Insurance Certificate under the authority vested by MCL 500.3101d.

## II. AGREEMENTS AND CONDITIONS

### A. THE CITY

1. The previous authority granted to the City to self-administer its No-Fault Claims is terminated. The City will contract with a DIFS-approved service provider/third-party administrator to manage its No-Fault Claims both pre- and post-bankruptcy petition to ensure appropriate and timely payment of benefits.

2. During the Certificate Term (defined in paragraph II.C.1, below), the City will provide DIFS with quarterly reports of No-Fault Claim liabilities and payments.

3. All No-Fault Claims against the City, whether arising pre- or post-bankruptcy petition, must be handled and paid by the City in full (if determined valid) in the

ordinary course of business. The City will amend its Plan for the Adjustment of Debts to reflect its intention to pay 100% of the determined value of all valid No-Fault Claims, as follows:

"From and after the Effective Date, the City will continue to administer (either directly or through a third party administrator) and pay valid prepetition Claims for liabilities with respect to which the City is required to maintain insurance coverage pursuant to MCL § 500.3101 in connection with the operation of the City's motor vehicles, as follows: (1) Claims for personal protection benefits as provided by MCL § 500.3107 and MCL § 500.3108, for which insurance coverage is required by MCL § 500.3101(1), shall be paid in full, to the extent valid, provided, however, that the City will not be liable for or pay interest or attorneys' fees under MCL § 500.3142 or MCL § 500.3148 on prepetition Claims for personal protection benefits; (2) tort claims permitted by MCL § 500.3135, for which residual liability insurance coverage is required by MCL § 500.3101(1) and MCL § 500.3131, shall be paid, to the extent valid, only up to the minimum coverages specified by MCL § 500.3009(1), i.e., up to a maximum of (a) $20,000 because of bodily injury to or death of one person in any one accident, and subject to that limit for one person, (b) $40,000 because of bodily injury to or death of two or more persons in any one accident and (c) $10,000 because of injury to or destruction of property of others in any accident; and (3) Claims for property protection benefits under MCL § 500.3121 and MCL § 500.3123 shall be paid, to the extent valid, only up to the maximum benefits specified in MCL § 500.3121; provided, however, for the avoidance of doubt, to the extent any valid Claim subject to subsections 2 and 3 above exceeds the applicable payment limits, the excess claim amount shall be treated as an Other Unsecured Claim or a Convenience Claim (as applicable). Nothing in the Plan shall discharge, release or relieve the City from any current or future liability with respect to Claims subject to insurance coverage pursuant to MCL § 500.3101 within the minimum coverage limits in MCL § 500.3009(1). The City expressly reserves the right to challenge the validity of any Claim subject to this Section [IV.C], and nothing herein shall be deemed to expand the City's obligations or claimants' rights with respect to these Claims under State law."

4. The City will purchase an excess insurance policy for its No-Fault Claims with a specific retention of no greater than $1,000,000 or an amount determined to be actuarially appropriate. The excess insurance policy must be written by a carrier authorized to transact such business in this state and comply with the requirements of R 257.537.

5. The City will accept and process any No-Fault Claims against it that have been filed against the Michigan Assigned Claims Plan, for adjudication and payment in the ordinary course subject to the provisions of paragraph II.A.3 above.

6. During the entire Certificate Term, the City will deposit in escrow with Treasury, to be held on behalf of DIFS: (a) the $16.2 million reserved for the City's current No-Fault Self-Insurance Certificate; or (b) such other amount determined by DIFS to be actuarially appropriate (the DIFS Escrow), to ensure the City's ability to pay No-Fault Claims during the Certificate Term. The DIFS Escrow will be funded by transferring the required escrow amount from existing funds in the City's Self-Insurance Escrow Account maintained by Treasury. Funds on deposit in the DIFS Escrow may be requisitioned by the City only for the payment of valid No-Fault Claims, and any request by the City to requisition funds from the DIFS Escrow will be subject to DIFS' review and prior approval and compliance with the terms of this MOU. The City does not anticipate requisitioning any funds from the DIFS Escrow during the Certificate Term because it intends to adjudicate and pay valid No-Fault Claims in the ordinary course of business. However, if during the Certificate Term the City requests, and DIFS approves, any requisition of funds from the DIFS Escrow to pay the City's valid No-Fault Claims, the City will promptly replenish any funds disbursed in accordance with the schedule agreed to by DIFS and the City at the time the requisition request is approved.

7. The City will take all reasonable and necessary steps to investigate No-Fault Claims, and will seek to eliminate fraudulent or wasteful spending and ensure that claim payments are calculated correctly and paid only to claimants whose claims are valid, due and owing.

8. If, after conducting reasonable due diligence, the City determines and submits documentary evidence to the Director evidencing that the conditions contained in paragraphs II.A.1 and/or II.A.4 above cannot be satisfied despite its best efforts, the Director may in her discretion waive or modify the condition(s) or impose a reasonably equivalent alternative.

B. TREASURY

1. Treasury will transfer the required funds and maintain the DIFS Escrow on behalf of DIFS in accordance with the provisions of paragraph II.A.6 above.

2. Treasury will maintain the DIFS Escrow funds in a separate and distinct escrow account, and will not commingle the DIFS Escrow funds with other City self-insurance funds or accounts.

3. Upon approval and instructions by DIFS, Treasury will disburse amounts from the DIFS Escrow to the City or other designated payee(s).

### C. DIFS

1. DIFS will issue the City a No-Fault Self-Insurance Certificate for a period of one year, beginning June 9, 2014 at 12:01 a.m. and ending June 8, 2015 at 11:59 p.m. (the Certificate Term).

2. DIFS will perform its responsibilities under the Michigan Insurance Code.

### III. EFFECTIVE DATE AND DURATION

1. This MOU goes into effect when each party has signed it and shall remain in effect during the entire Certificate Term.


The undersigned authorized representatives of the parties have caused this MOU to be executed as of the dates indicated by each signature:

DEPARTMENT OF INSURANCE AND FINANCIAL SERVICES

_Annette E. Flood_      8/8/14
Annette E. Flood          Date
Director
Department of Insurance and Financial Services


DEPARTMENT OF TREASURY


_____      _____
R. Kevin Clinton           Date
Treasurer
Department of Treasury


CITY OF DETROIT

By: _Kevyn D. Orr_      8/6/14
                Date
[Print Name] _KEVYN D. ORR_
Its: _EMERGENCY MANAGER_


Approved by C. Raimi
8/4/14

# EXHBIT 6-B


RECEIVED
MAY 1 9 2015
CITY OF DETROIT
LAW DEPARTMENT
LITIGATION DIVISION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

```
-------------------------------x
                               :
In re                          :   Chapter 9
                               :
CITY OF DETROIT, MICHIGAN,     :   Case No. 13-53846
                               :
                    Debtor.    :   Hon. Steven W. Rhodes
                               :
-------------------------------x
```

## AGREEMENT RESOLVING CLAIM[S] OF ~~ROSIE JONES~~

The City of Detroit (the "City") and the claimant identified in paragraph 2 below (the "Claimant" and, together with the City, the "Parties"), by and through their respective authorized representatives, do hereby agree as follows:

### RECITALS

A. On July 18, 2013, the City commenced the above-captioned case (the "Chapter 9 Case") by filing a petition for relief under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"). On December 5, 2013, following its determination that the City met all of the applicable requirements and is eligible to be a debtor under chapter 9 of the Bankruptcy Code, the Bankruptcy Court entered the Order for Relief Under Chapter 9 of the Bankruptcy Code (Docket No. 1946) with respect to the City.

B. Pursuant to section 904 of the Bankruptcy Code, the City may continue to exercise its political and governmental powers; manage its property and revenues and use and enjoy its income-producing property without interference from the Bankruptcy Court.

{K:ADOCS\LIT\idcmipd\a20060\settlemen\DJD2004.DOC}

C. On December 24, 2013, the Bankruptcy Court entered the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims (Docket No. 2302) (the "ADR Order") establishing certain alternative dispute resolution procedures (collectively, the "ADR Procedures") to promote the resolution of certain claims designated by the City.

D. The Claimant is the current record holder of the proof[s] of claim identified under the heading "Filed Claim Number" in the table in paragraph 2 below (the "Filed Claim[s]").

E. The City (i) reviewed the Filed Claim[s] and the facts and circumstances of the alleged liabilities asserted therein and (ii) designated the Filed Claim[s] for potential resolution through the ADR Procedures.

F. The City believes that the resolution of the Filed Claim[s] as set forth in this Agreement is fair, reasonable and appropriate and will allow the Parties to avoid the cost, delay and burden of litigating potential disputes related to the Filed Claim[s]. In accordance with the ADR Order, the resolution of the Filed Claim[s] set forth in this Agreement terminates the ADR Procedures with respect to the Filed Claim[s] pursuant to section II.A.7 of the ADR Procedures.

G. Pursuant to section 904 of the Bankruptcy Code, the City is authorized to propose and enter into this Agreement without further order of the Bankruptcy Court.

H. The undersigned is authorized to enter into this Agreement on behalf of the City pursuant to a confidential memorandum dated March 25, 2014 that was issued to the City of Detroit Corporation Counsel by Kevyn Orr, Emergency Manager for the City of Detroit, entitled Litigation Claim Settlement Authority.

I.     The Parties have agreed to the terms set forth in this Agreement, as indicated by the signatures of their respective authorized representatives below.

## AGREEMENT

1.     The Claimant represents and warrants to the City that it has not sold, assigned, factored or otherwise transferred any portion of or interest in the Filed Claim[s] and is the sole holder of the Filed Claim[s], with full authority to enter into this Agreement. The Claimant further agrees to indemnify and hold the City harmless for any damages, including without limitation actual and reasonable out of pocket costs, resulting from a breach of its representations and warranties set forth in this paragraph.

2.     [Each of] the Filed Claim[s] is deemed amended, modified and allowed as a general unsecured, nonpriority claim (any such claim, a "Settled Claim") in the corresponding amount set forth in the table below under the heading "Settled Claim Amount":

| Claimant | Filed Claim Number | Filed Claim Amount | Filed Claim Priority | Settled Claim Amount | Settled Claim Priority |
|----------|--------------------|--------------------|----------------------|----------------------|------------------------|
| Rosie Jones | 1474 | $ 332,310.53 | General unsecured, nonpriority | $ 40,000.00 | General unsecured, nonpriority |

3.     The Parties agree that any Filed Claim identified in paragraph 2 above for which there is no corresponding Settled Claim (or such amount is listed as $0.00) is hereby withdrawn and deemed disallowed and expunged, pursuant to section 502 of the Bankruptcy Code.

4.     The Claimant will not further amend the Filed Claim[s] (or the Settled Claim[s]) or file any additional proofs of claim with respect to the liabilities asserted in the Filed Claim[s]. Any further amendments to the Filed Claim[s] (or the Settled Claim[s]) or any additional claims filed by the Claimant or their successors or assigns with respect to the liabilities asserted in the Filed Claim[s] shall be null, void and of no effect.

5.     The Parties agree that any Settled Claim is a general unsecured, nonpriority claim, subject to the treatment provided for such claims under any chapter 9 plan for the adjustment of debts confirmed by the Bankruptcy Court (a "Plan").

6.     Any distribution made to the Claimant pursuant to a Plan is referred to herein as a "Plan Distribution." If the Claimant or its successors or assigns receive payment of any portion of the Settled Claims from any source, including from the City, other than through the Plan (a "Non-Plan Payment"), the portion of the Settled Claim[s] equal to the amount of the Non-Plan Payments shall be deemed fully satisfied, and the Claimant, for itself and any successors or assigns, hereby prospectively waives and disclaims the right to receive Plan Distributions on account of the portion of the Settled Claim[s] satisfied by any Non-Plan Payments.

7.     Nothing in this Agreement will have any impact on any proof(s) of claim that the Claimant has filed or holds other than the Filed Claim[s]. The Parties retain all of their respective claims, defenses, objections, counterclaims and any and all rights in respect of any proofs of claim that the Claimant has filed or holds other than the Filed Claim[s].

8.     As to the Filed Claims and Settled Claims described herein, the Claimant releases the City from any and all liability, actions, damages and claims (including claims for attorney fees, expert fees or court costs), known and unknown, arising or accruing at any time

prior to and after the date of this Agreement, that the Claimant has or may have against the City. The Claimant acknowledges that this Agreement represents the compromise of a disputed claim and is not to be construed as an admission of liability on the part of the City. As used in this Agreement, the Claimant and the City include each of their respective servants, agents, contractors, attorneys, employees, representatives, family members, heirs, elected officials, appointed officials, related corporations, subsidiaries, divisions, affiliates, directors and officers, if any. Where required by the City, the Claimant has executed the Medicare Reporting and Indemnification Affidavit[s], if any, attached as Exhibit A.

9. The Claimant stipulates to dismissal with prejudice of the civil action[s] related to the Filed Claims or Settled Claim[s] in the form attached hereto as Exhibit B.

10. This Agreement may be executed in identical counterparts, and/or by facsimile or e-mail scan, each of which when so executed and delivered will constitute an original, but all of which taken together will constitute one and the same instrument. This Agreement constitutes the entire agreement between the Parties with respect to the matters addressed herein and may not be modified except in a writing signed by the Parties.

WHEREFORE, the undersigned have executed this Agreement on behalf of the parties hereto.

**CITY OF DETROIT**

By: _David J. Demps_ (signature)
David J. Demps P58494
Assistant Corporation Counsel

**ROSIE JONES**

_Rosie L. Jones_ (signature)
(Signature)

Date:_____

Approved

By: _(signature)_
James D. Noseda P52563
Supervising Assistant Corporation Counsel

**CLAIMANT'S COUNSEL:**

_____
(Signature)

**GERALD ACKER**                    P32973
Name Printed

Date: _11 March 2015_

Date:_____

# MEDICARE REPORTING AND INDEMNIFICATION AFFIDAVIT

_____, being first duly sworn, deposes and says that I have filed a claim and/or lawsuit against the City of Detroit:

1. I certify under penalty of law that this Affidavit and all attachments were prepared with my knowledge and were reviewed by me. The information submitted is, to the best of my knowledge and belief, true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of a fine and/or imprisonment for known violations. I hereby state under oath and subject to any penalties for perjury that the information contained in this Affidavit is true, correct and accurate.

2. I hereby understand that the City of Detroit will be relying upon this information in order to provide all of the required information to the United States Government, Department of Health and Human Services, Center for Medicare and Medicaid Services or their Medicare contractor in accordance with the Medicare, Medicaid and SCHIP Extension Act of 2007 and to be in compliance with the Medicare Secondary Payer Laws.

                                                                    Circle One

3. I am currently receiving Medicare Benefits..................................... yes or no

4. I will be Sixty Five years old within three years.............................. yes or no

4a. I have applied for Social Security Disability Benefits.................... yes or no

5. I have received a Social Security Disability Award Letter and
    attached a copy hereto..........................................................yes or no

6. Attached is a copy of my Social Security Disability Application.....yes or no

7. Attached is a copy of my Social Security denial letter and my
appeal of said denial................................................................... yes or no

Page 1 of 5

8. I have End Stage Renal Disease .............................................................. yes or no

9. That my full name and all aliases are:

_____

10. That my City of Detroit File/Matter Number is:

_____

11. That my address is:

_____

12. That my Attorney's Name, Address and Contact Numbers are:

_____

_____

13. That my Date of Birth is:

_____

14. That my Social Security Number is:

_____

15. That my Medicare HIC Number, if applicable is:

_____

16. That I am attaching copies of the following information:

    a. Copy of the Judgment ................................................ yes or no

    b. Medical Records ..................................................... yes or no

    c. Specific Description of my injuries _____

Page 2 of 5

17.    Has anyone ever prepared for you:

a. A Life Care Plan.......................................................... yes or no

b. Medicare Set Aside Cost Projections ...........................yes or no

c. Life expectancy projection ............................................yes or no

If yes to any questions above in #17, submit a copy to the City of Detroit.

18.    What specific body parts were impacted by the Injury/Illness:

_____

_____

19. That my Gender is: _____ Male _____ Female

20. That the accident which gave rise to this Claim/Lawsuit occurred on:

_____ (Date)

21. On _____ (Date), a Settlement or Judgement of my

Claim/Lawsuit was agreed to/rendered for the total amount of

_____ Dollars ($ _____ ).

22.    On the date of the accident/event, did any household family

member own an automobile with valid No Fault Insurance

coverage................................................................................yes or    no

Page 3 of 5

I, _____ HAVE READ THE ABOVE MEDICARE REPORTING AND INDEMNIFICATION AFFIDAVIT AND STATE THAT THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT AND THAT IN THE EVENT THAT THE CITY OF DETROIT IS HELD LIABLE DUE TO ANY MISINFORMATION OR OMISSION OF INFORMATION BY AFFIANT IN THIS AFFIDAVIT, AFFIANT SHALL INDEMNIFY, HOLD HARMLESS AND REIMBURSE THE CITY OF DETROIT FOR ALL PAYMENTS, DAMAGES, MONIES, COSTS, ATTORNEY'S FEES, EXPENSES, MEDICARE LIENS, MEDICARE DEMANDS FOR REIMBURSEMENT, MEDICARE OFFSETS , MEDICARE FINES, MEDICARE PENALTIES AND ANY MEDICARE PAYMENTS INCURRED BY THE CITY OF DETROIT RESULTING FROM SAID OMISSION OR MISINFORMATION. FURTHER, I SHALL FULLY COOPERATE WITH THE CITY OF DETROIT IN ANY DISPUTE OR MATTERS RELATED TO THIS INCIDENT INVOLVING MEDICARE AND SHALL EXECUTE ALL DOCUMENTS REQUIRED OR REQUESTED BY THE CITY OF DETROIT, MEDICARE OR ITS AGENTS THAT MAY BE REQUIRED OR NECESSARY TO RESOLVE ANY SAID DISPUTE OR MATTER.

Page 4 of 5

FURTHER AFFIANT SAITH NOT.

_____
SIGNATURE OF THE CLAIMANT/PLAINTIFF

STATE OF MICHIGAN                )
                                 )ss
COUNTY OF _____ )

This Medicare Reporting and Indemnification Affidavit was acknowledged, subscribed and
sworn to before me this _____ day of _____, 2014, by _____
_____, who hereby declares under penalty of perjury under the laws of the
State of Michigan that he or she is authorized in fact and law to execute this Medicare Reporting
and Indemnification Affidavit.

_____
Notary Public, _____ County, MI
My Commission Expires: _____

Notary, Please ensure you use your notarial stamp or seal.

ROSIE JONES

    Plaintiff,

CASE NO. 12-012579-NF
HON. ROBERT COLOMBO, JR

vs

CITY OF DETROIT,

    Defendants.

| GERALD H ACKER  P32973 | DAVID J. DEMPS P58494 |
|---|---|
| BRIAN J. NAGY P65542 | City of Detroit Law Department |
| Attorney for Plaintiff | Attorneys for [Defendants] |
| 17000 W Ten Mile Rd. 2 Floor | Coleman A. Young Municipal Center |
| Southfield,, Michigan 48075 | 2 Woodward Avenue, Suite 500 |
| 248-483-5000 | Detroit, MI 48226 |
| gacker@goodmanacker.com | 313- 237-3087 |
| | dempd@detroitmi.gov |

## STIPULATION TO DISMISS

    The parties in the above-entitled cause by their respective attorneys, hereby stipulate and

agree that an Order be entered forthwith dismissing the said cause with prejudice and without

costs and attorney fees to any party.

## ORDER

At a session of the said Court held
in the Courthouse, City of Detroit,
County of Wayne, Michigan on

_____

Present: Honorable_____
                   Circuit Court Judge

{K:\DOCS\LJT\dempd\n2000b\settlmen\ADJD2004.DOC}
13-53846-tjt   Doc 9893   Filed 05/28/15   Entered 05/28/15 11:17:22   Page 37 of 57

13-53846-tjt   Doc 11142-4   Filed 05/03/16   Entered 05/03/16 16:44:29   Page 51 of 72

Upon the reading and filing of the stipulation annexed hereto, and the Court being fully advised in the premises;

**IT IS HEREBY ORDERED** that the within cause be dismissed with prejudice and without costs and without attorney fees to any party.

<div style="text-align:center">

_____
Circuit Court Judge

</div>

# EXHIBIT 6-C

STATE OF MICHIGAN

IN THE WAYNE COUNTY CIRCUIT COURT

WARREN CHIROPRACTIC &
REHAB CLINIC P.C. and
PRIORITY PATIENT TRANSPORT, LLC,
(Gretchen Smith),

   Plaintiffs,

             Case No. 13-009611-NF
vs.             Hon. Marla L. Oxholm

CITY OF DETROIT,

   Defendant.

| HAAS & GOLDSTEIN, PC | CITY OF DETROIT LAW DEPARTMENT |
|---|---|
| Laurie Goldstein (P66011) | Robyn Brooks (P47787) |
| Attorney for Plaintiffs | Attorney for Defendant |
| 31275 Northwestern Highway, Ste. 225 | 2 Woodward Avenue, Suite 500 |
| Farmington Hills, MI 48334 | Detroit, MI 48226 |
| (248) 702-6550 | (313) 237-3049 |
| (248) 538-9044 Fax | (313) 224-5505 Fax |

## PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENTS OR IN THE ALTERNATIVE TO ENFORCE SETTLEMENT AGREEMENTS AND PAYMENT OF COSTS, INTEREST, AND ATTORNEY FEES

  NOW COME Plaintiffs, by and through their attorneys, Haas & Goldstein, P.C., and for their Motion hereby states as follows:

  1.  This cause of action arises as a result of personal injury sustained by Gretchen Smith, and for which Plaintiffs, Warren Chiropractic & Rehab Clinic, PC and Priority Patient Transport, LLC, provided reasonable and necessary services for their care, recovery, and rehabilitation.

13-53846-tjt  Doc 9893  Filed 05/28/15  Entered 05/28/15 11:17:22  Page 40 of 57

13-53846-tjt  Doc 11142-4  Filed 05/03/16  Entered 05/03/16 16:44:29  Page 54 of 72

2.    On April 9, 2014 this case settled in the amount of Ten Thousand ($10,000) Dollars, against City of Detroit, in favor of Plaintiff Warren Chiropractic & Rehab Clinic, P.C.

3.    On April 9, 2014 this case settled in the amount of Six Thousand One Hundred ($6,100) Dollars, against City of Detroit, in favor of Plaintiff Priority Patient Transport, LLC

4.    On December 22, 2014, Plaintiffs returned the executed copies of Defefendant's Agreements Resolving Claims of Warren Chiropractic & Rehab Clinic and Priority Patient Transport (Gretchen Smith). *(Exhibit A, Agreements)*.

5.    Despite the passage of over one (1) year since the Settlement Agreement and over four (4) months, Defendant has failed to pay the full settlement amounts despite substantial efforts to obtain the outstanding settlement funds without judicial intervention.

WHEREFORE, Plaintiffs Warren Chiropractic & Rehab Clinic and Priority Patient Transport respectfully request that this Court enter judgments in the amount of $10,000 and $6,100 and order payment of interest until judgments are paid in full or in the alternative compel Defendant to tender payment of all outstanding amounts within 72 hours plus payment of costs, interest, and attorney fees.

## BRIEF IN SUPPORT OF MOTION

Plaintiffs rely on MCR 2.602 and 2.507(F) in support of their Motion.

Respectfully Submitted,

/s/ Laurie Goldstein
Laurie Goldstein
Attorney for Plaintiffs
31275 Northwestern Hwy., Ste. 225
Farmington Hills, MI 48334
(248) 702-6550
(248) 538-9044 Fax

Dated: May 18, 2015

CERTIFICATE OF SERVICE
The undersigned certifies that the foregoing instrument was
s___ ___ ___ all parties to the above cause to each of the attorneys
o_ ___ herein at their respective addresses disclosed on the
p_____ on ___May___ ___18___ ___20_15___
B_ ☐ Overnight Courier   ☐ FAX        ☐ E mailed
   ☐ Hand Delivered      ☒ U.S. Mail  ☐ Other
   ☐ Certified M__       ☐ Scanned
Signature _____

# EXHIBIT A

**Haas & Goldstein**
A Professional Corporation

Attorneys and Counselors

Justin Haas
Laurie Goldstein
Jenifer L. Meesel
Jessica Faber
Matthew S. Payne

December 22, 2014

Robyn J. Brooks, Esq.
City of Detroit Law Department
2 Woodward Ave., Ste. 500
Detroit, MI 48226

Re: Warren Chiropractic & Rehab Clinic, P.C. (Gretchen Smith) v The City
of Detroit
Case No. 13-53846

Dear Ms. Brooks:

Enclosed is the executed copy of your Agreement Resolving Claim of Warren Chiropractic & Rehab Clinic, P.C. (Gretchen Smith). Please make the settlement check payable to Warren Chiropractic & Rehab Clinic, P.C., and Haas & Goldstein, P.C., their attorneys, at your earliest convenience. Our tax identification number is 41-2191055.

Thank you for your cooperation in this matter.

Very truly yours,

JUSTIN HAAS

JH/lml
Enclosures

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  | : |  |
|---|---|---|
| In re | : | Chapter 9 |
|  | : |  |
| CITY OF DETROIT, MICHIGAN, | : | Case No. 13-53846 |
|  | : |  |
| Debtor. | : | Hon. Steven W. Rhodes |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AGREEMENT RESOLVING CLAIM OF WARREN CHIROPRACTIC & REHAB CLINIC (GRETCHEN SMITH)

### THIS FORM IS FOR MOTOR VEHICLE CLAIMS ONLY

The City of Detroit (the "City") and the claimant identified in paragraph 3 below (the "Claimant" and, together with the City, the "Parties"), by and through their respective authorized representatives, do hereby agree as follows:

### RECITALS

A. On July 18, 2013, the City commenced the above-captioned case (the "Chapter 9 Case") by filing a petition for relief under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"). On December 5, 2013, following its determination that the City met all of the applicable requirements and is eligible to be a debtor under chapter 9 of the Bankruptcy Code, the Bankruptcy Court entered the Order for Relief Under Chapter 9 of the Bankruptcy Code (Docket No. 1946) with respect to the City.

B.    Pursuant to section 904 of the Bankruptcy Code, the City may continue to exercise its political and governmental powers, manage its property and revenues and use and enjoy its income-producing property without interference from the Bankruptcy Court.

C.    On December 24, 2013, the Bankruptcy Court entered the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims (Docket No. 2302) (the "ADR Order") establishing certain alternative dispute resolution procedures (collectively, the "ADR Procedures") to promote the resolution of certain claims designated by the City.

D.    The Claimant is the current record holder of the proof[s] of claim identified under the heading "Filed Claim Number" in the table in paragraph 3 below (the "Filed Claim[s]").

E.    The City (i) reviewed the Filed Claim[s] and the facts and circumstances of the alleged liabilities asserted therein and (ii) designated the Filed Claim[s] for potential resolution through the ADR Procedures.

F.    The City believes that the resolution of the Filed Claim[s] as set forth in this Agreement is fair, reasonable and appropriate and will allow the Parties to avoid the cost, delay and burden of litigating potential disputes related to the Filed Claim[s]. In accordance with the ADR Order, the resolution of the Filed Claim[s] set forth in this Agreement terminates the ADR Procedures with respect to the Filed Claim[s] pursuant to section II.A.7 of the ADR Procedures.

G.    Pursuant to section 904 of the Bankruptcy Code, the City is authorized to propose and enter into this Agreement without further order of the Bankruptcy Court.

H.       The undersigned is authorized to enter into this Agreement on behalf of the City pursuant to a confidential memorandum dated March 25, 2014 that was issued to the City of Detroit Corporation Counsel by Kevyn Orr, Emergency Manager for the City of Detroit, entitled Litigation Claim Settlement Authority.

I.       The Parties have agreed to the terms set forth in this Agreement, as indicated by the signatures of their respective authorized representatives below.

## AGREEMENT

1. The Claimant represents and warrants to the City that it has not sold, assigned, factored or otherwise transferred any portion of or interest in the Filed Claim[s] and is the sole holder of the Filed Claim[s], with full authority to enter into this Agreement. The Claimant further agrees to indemnify and hold the City harmless for any damages, including without limitation actual and reasonable out of pocket costs, resulting from a breach of its representations and warranties set forth in this paragraph.

2. The current version of the City's proposed Plan of Adjustment provides different payment provisions for each of the three following category of claims arising from operation of City motor vehicles: (1) claims for personal protection benefits as provided by MCL 500.3107 and MCL 500.3108, for which insurance coverage is required by MCL 500.3101(1), ("PPI Claims"); (2) tort claims permitted by MCL 500.3135, for which residual liability insurance coverage is required by MCL 500.3101(1) and MCL 500.3135, ("Tort Claims"); and (3) claims for property protection benefits under MCL 500.3121 and MCL 500.3123 ("Property Claims"). Accordingly, it is necessary that this Settlement Agreement properly identify each type of claim.

{K:\DOCS\LIT\CAMP\3\A32000\forms\CC3098.DOC}       -3-
13-53846-tjt   Doc 9893   Filed 05/28/15   Entered 05/28/15 11:17:22   Page 47 of 57

13-53846-tjt   Doc 11142-4   Filed 05/03/16   Entered 05/03/16 16:44:29   Page 61 of 72

3. Each of the Filed Claim[s] is deemed amended, modified and allowed, and to be paid as a PPI Claim, a Tort Claim or a Property Claim, as the case may be, in accordance with, and subject to the treatment provided for claims of that type under, any chapter 9 plan for the adjustment of debts confirmed by the Bankruptcy Court (a "Plan"), (any such claim, a "Settled MVA Claim"), in the corresponding amount set forth in the table below under the heading "Settled MVA Claim Amount." NOTE – If any bankruptcy claim combines two or more types of claims, the claims must be separated in the chart below:

| Claimant | Filed Claim Number | Filed Claim Amount | Filed MVA Claim Type – identify as a PPI, Tort or Property Claim | Settled MVA Claim Amount | Settled MVA Claim Type– identify as a PPI, Tort or Property Claim |
|---|---|---|---|---|---|
| WARREN CHIROPRACTIC & REHAB CLINIC (GRETCHEN SMITH), | 3042 | $18,680.00 | PPI | $10,000.00 | PPI |

For any Tort Claims listed, identify all other bankruptcy claims that arise out of the same motor vehicle accident: _____

_____

4. The Parties agree that any Filed Claim identified in paragraph 3 above for which there is no corresponding Settled Claim (or such amount is listed as $0.00) is hereby withdrawn and deemed disallowed and expunged, pursuant to section 502 of the Bankruptcy Code.

5. The Claimant will not further amend the Filed Claim[s] (or the Settled MVA Claim[s]) or file any additional proofs of claim with respect to the liabilities asserted in the Filed Claim[s]. Any further amendments to the Filed Claim[s] (or the Settled MVA Claim[s]) or any additional claims filed by the Claimant or their successors or assigns with respect to the liabilities asserted in the Filed Claim[s] shall be null, void and of no effect.

6. The Parties agree that any Settled MVA Claim shall be paid in accordance with, and subject to the treatment provided for claims of that type under, any chapter 9 plan for the adjustment of debts confirmed by the Bankruptcy Court (a "Plan").

7. Any distribution made to the Claimant pursuant to a Plan is referred to herein as a "Plan Distribution." If the Claimant or its successors or assigns receive payment of any portion of the Settled Claims from any source, including from the City, other than through the Plan (a "Non-Plan Payment"), the portion of the Settled MVA Claim[s] equal to the amount of the Non-Plan Payments shall be deemed fully satisfied, and the Claimant, for itself and any successors or assigns, hereby prospectively waives and disclaims the right to receive Plan Distributions on account of the portion of the Settled MVA Claim[s] satisfied by any Non-Plan Payments.

8. Nothing in this Agreement will have any impact on any proof(s) of claim that the Claimant has filed or holds other than the Filed Claim[s]. The Parties retain all of their respective claims, defenses, objections, counterclaims and any and all rights in respect of any proofs of claim that the Claimant has filed or holds other than the Filed Claim[s].

9. As to the Filed Claims and Settled MVA Claims described herein, the Claimant releases the City from any and all liability, actions, damages and claims (including claims for attorney fees, expert fees or court costs), known and unknown, arising or accruing at any time prior to and after the date of this Agreement, that the Claimant has or may have against the City; provided,

JK\DOCS\LTKCAMPC\A320806.gjn\CC3008.DOC}                    -5-
13-53846-tjt    Doc 9893    Filed 05/28/15    Entered 05/28/15 11:17:22    Page 49 of 57

13-53846-tjt    Doc 11142-4    Filed 05/03/16    Entered 05/03/16 16:44:29    Page 63 of 72

WHEREFORE, the undersigned have executed this Agreement on behalf of the parties hereto.

CITY OF DETROIT

By: _____

Name: _____
       (printed)

Title: _____

Date: _____

WARREN CHIROPRACTIC & REHAB CLINIC (GRETCHEN SMITH), INC.

_____
Claimant

Date: _12/11/14_

Claimant(s) counsel:
HAAS & GOLDSTEIN, P.C.

_____
Signature
P- 53183

Name: _JUSTIN HAAS_
       (printed)

Date: _12/11/2014_

# Haas & Goldstein
A Professional Corporation

Attorneys and Counselors

Justin Haas
Laurie Goldstein
Jenifer L. Measel
Jessica Faber
Matthew S. Payne

December 22, 2014

Robyn J. Brooks, Esq.
City of Detroit Law Department
2 Woodward Ave., Ste. 500
Detroit, MI 48226

Re: **Priority Patient Transport, LLC (Gretchin Smith) v The City of Detroit**
**Case No. 13-53846**

Dear Ms. Brooks:

Enclosed is the executed copy of your Agreement Resolving Claim of Priority Patient Transport, LLC (Gretchin Smith). Please make the settlement check payable to Priority Patient Transport, LLC, and Haas & Goldstein, P.C., their attorneys, at your earliest convenience. Our tax identification number is 41-2191055.

Thank you for your cooperation in this matter.

Very truly yours,

JUSTIN HAAS

JH/lml
Enclosures

31275 Northwestern Highway, Suite 225, Farmington Hills, MI 48334  Tel: (248) 702-6550  Fax: (248) 538-9044

-----------------------------------------------------x

| | : | |
|---|---|---|
| In re | : | Chapter 9 |
| | : | |
| CITY OF DETROIT, MICHIGAN, | : | Case No. 13-53846 |
| | : | |
| Debtor. | : | Hon. Steven W. Rhodes |

-----------------------------------------------------

                                      x

## AGREEMENT RESOLVING CLAIM OF PRIORITY PATIENT TRANSPORT, LLC (GRETCHIN SMITH)

### THIS FORM IS FOR MOTOR VEHICLE CLAIMS ONLY

     The City of Detroit (the "City") and the claimant identified in paragraph 2 below (the "Claimant" and, together with the City, the "Parties"), by and through their respective authorized representatives, do hereby agree as follows:

### RECITALS

     On July 18, 2013, the City commenced the above-captioned case (the "Chapter 9 Case") by filing a petition for relief under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"). On December 5, 2013, following its determination that the City met all of the applicable requirements and is eligible to be a debtor under chapter 9 of the Bankruptcy Code, the Bankruptcy Court entered the Order for Relief Under Chapter 9 of the Bankruptcy Code (Docket No. 1946) with respect to the City.

     Pursuant to section 904 of the Bankruptcy Code, the City may continue to exercise its political and governmental powers, manage its property and revenues and use and enjoy its income-producing property without interference from the Bankruptcy Court.

     On December 24, 2013, the Bankruptcy Court entered the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims (Docket No. 2302) (the "ADR Order") establishing certain alternative dispute resolution procedures (collectively, the "ADR Procedures") to promote the resolution of certain claims designated by the City.

     The Claimant is the current record holder of the proof[s] of claim identified under the heading "Filed Claim Number" in the table in paragraph 2 below (the "Filed Claim[s]").

     The City (i) reviewed the Filed Claim[s] and the facts and circumstances of the alleged liabilities asserted therein and (ii) designated the Filed Claim[s] for potential resolution through the ADR Procedures.

     The City believes that the resolution of the Filed Claim[s] as set forth in this Agreement is fair, reasonable and appropriate and will allow the Parties to avoid the cost, delay and burden of

litigating potential disputes related to the Filed Claim[s]. In accordance with the ADR Order, the resolution of the Filed Claim[s] set forth in this Agreement terminates the ADR Procedures with respect to the Filed Claim[s] pursuant to section II.A.7 of the ADR Procedures.

Pursuant to section 904 of the Bankruptcy Code, the City is authorized to propose and enter into this Agreement without further order of the Bankruptcy Court.

The undersigned is authorized to enter into this Agreement on behalf of the City pursuant to a confidential memorandum dated March 25, 2014 that was issued to the City of Detroit Corporation Counsel by Kevyn Orr, Emergency Manager for the City of Detroit, entitled Litigation Claim Settlement Authority.

The Parties have agreed to the terms set forth in this Agreement, as indicated by the signatures of their respective authorized representatives below.

## AGREEMENT

1. The Claimant represents and warrants to the City that it has not sold, assigned, factored or otherwise transferred any portion of or interest in the Filed Claim[s] and is the sole holder of the Filed Claim[s], with full authority to enter into this Agreement. The Claimant further agrees to indemnify and hold the City harmless for any damages, including without limitation actual and reasonable out of pocket costs, resulting from a breach of its representations and warranties set forth in this paragraph.

2. The current version of the City's proposed Plan of Adjustment provides different payment provisions for each of the three following category of claims arising from operation of City motor vehicles: (1) claims for personal protection benefits as provided by MCL 500.3107 and MCL 500.3108, for which insurance coverage is required by MCL 500.3101(1), (hereafter "PPI Claims"); and (2) tort claims permitted by MCL 500.3101(1) and MCL 500.3135, for which residual liability insurance coverage is required by MCL 500.3101(1) and MCL 500.3135, (hereafter, "Tort Claims"); and claims for property protection benefits under MCL 500.3121 and MCL 500.3123 ("Property Claims"). Accordingly, it is necessary that this Settlement Agreement properly identify each type of claim.

3. Each of the Filed Claim[s] is deemed amended, modified and allowed, and to be paid as a PPI Claim, a Tort Claim or a Property Claim, as the case may be, in accordance with, and subject to the treatment provided for claims of that type under, any chapter 9 plan for the adjustment of debts confirmed by the Bankruptcy Court (a "Plan"), (any such claim, a "Settled MVA Claim"), in the corresponding amount set forth in the table below under the heading "Settled MVA Claim Amount." NOTE – if any bankruptcy claim combines two or more types of claims, the claims must be separated in the chart below:

| Claimant | Filed Claim Number | Filed Claim Amount | Filed MVA Claim Type – identify as a PPI, Tort or Property Claim | Settled MVA Claim Amount | Settled MVA Claim Type- identify as a PPI, Tort or Property Claim |
|---|---|---|---|---|---|
| Priority Patient Transport, LLC (Gretchin Smith) | 3056 | $12,617.50 | PPI | $6,100.00 | PPI - $6,100.00 |
| | | | | | |

For any tort claims listed, identify all other bankruptcy claims that arise out of the same motor vehicle accident:

4. The Parties agree that any Filed Claim identified in paragraph 2 above for which there is no corresponding Settled Claim (or such amount is listed as $0.00) is hereby withdrawn and deemed disallowed and expunged, pursuant to section 502 of the Bankruptcy Code.

5. The Claimant will not further amend the Filed Claim[s] (or the Settled MVA Claim[s]) or file any additional proofs of claim with respect to the liabilities asserted in the Filed Claim[s]. Any further amendments to the Filed Claim[s] (or the Settled MVA Claim[s]) or any additional claims filed by the Claimant or their successors or assigns with respect to the liabilities asserted in the Filed Claim[s] shall be null, void and of no effect.

6. The Parties agree that any Settled MVA Claim shall be paid in accordance with, and subject to the treatment provided for claims of that type under, any chapter 9 plan for the adjustment of debts confirmed by the Bankruptcy Court (a "Plan").

7. Any distribution made to the Claimant pursuant to a Plan is referred to herein as a "Plan Distribution." If the Claimant or its successors or assigns receive payment of any portion of the Settled Claims from any source, including from the City, other than through the Plan (a "Non-Plan Payment"), the portion of the Settled MVA Claim[s] equal to the amount of the Non-Plan Payments shall be deemed fully satisfied, and the Claimant, for itself and any successors or assigns, hereby prospectively waives and disclaims the right to receive Plan Distributions on account of the portion of the Settled MVA Claim[s] satisfied by any Non-Plan Payments.

8. Nothing in this Agreement will have any impact on any proof(s) of claim that the Claimant has filed or holds other than the Filed Claim[s]. The Parties retain all of their respective claims, defenses, objections, counterclaims and any and all rights in respect of any proofs of claim that the Claimant has filed or holds other than the Filed Claim[s].

9. As to the Filed Claims and Settled MVA Claims described herein, the Claimant releases the City from any and all liability, actions, damages and claims (including claims for attorney fees, expert fees or court costs), known and unknown, arising or accruing at any time prior to and after the date of this Agreement, that the Claimant has or may have against the City; provided, however, for PPI Claims, Claimant does not release claims arising after July 18, 2013,

except to the extent such claims have been paid by the City. The Claimant acknowledges that this Agreement represents the compromise of a disputed claim and is not to be construed as an admission of liability on the part of the City. As used in this Agreement, the Claimant and the City include each of their respective servants, agents, contractors, attorneys, employees, representatives, family members, heirs, elected officials, appointed officials, related corporations, subsidiaries, divisions, affiliates, directors and officers, if any. Where required by the City, the Claimant has executed the Medicare Reporting and Indemnification Affidavit[s], if any, attached as Exhibit A.

          10.     The Claimant stipulates to the entry of an order dismissing with prejudice, and without costs or fees, any civil action[s] related to the Filed Claim[s] or Settled Claim[s].

          11.     This Agreement may be executed in identical counterparts, and/or by facsimile or e-mail scan, each of which when so executed and delivered will constitute an original, but all of which taken together will constitute one and the same instrument. This Agreement constitutes the entire agreement between the Parties with respect to the matters addressed herein and may not be modified except in a writing signed by the Parties.

          WHEREFORE, the undersigned have executed this Agreement on behalf of the parties hereto.

**City of Detroit**

**Priority Patient Transport, LLC (Gretchin Smith)**

By: _____

Name: _____
       (printed)

Title: _____

Date: _____

Claimant _S.Michelle Smith_

Date: _12/5/2014_

Claimant(s) counsel:
Justin Haas, Esq.

Signature _____
P- _53153_

Name: _JUStin Haas_
      (printed)

Date: _12/5/14_

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------------ X
                                          :
In re                                     :    Chapter 9
                                          :
CITY OF DETROIT, MICHIGAN,                 :    Case No. 13-53846
                                          :
                    Debtor.                :    Hon. Steven W. Rhodes
                                          :
------------------------------------------ X

## STIPULATION TO DISMISS CAUSE

The parties in the above-entitled cause by their respective attorneys, hereby stipulate and

agree that an Order be entered forthwith dismissing the said cause with prejudice and without

costs and attorney fees to any party.

Justin Haas (P53153)                        Robyn J. Brooks (P47787)
Haas & Goldstein, P.C.                       City of Detroit Law Department
Attorney for Plaintiff                       Attorney for Defendant
31275 Northwestern Hwy., Ste. 225            City of Detroit Law Department
Farmington Hills, MI 48334                   2 Woodward Avenue, Suite 500
(248) 762-6550                               Detroit, MI 48226
                                             (313) 237-0565

_____

## ORDER

At a session of the said Court held
in the Courthouse, City of Detroit,
County of Wayne, Michigan on
_____

Present:  Honorable_____
                       U. S. DISTRICT JUDGE

K:\DOCS\LIT\i\cor\n20000\scf\pnen\692217.WPD                -8-
13-53846-tjt   Doc 9893   Filed 05/28/15   Entered 05/28/15 11:17:22   Page 56 of 57

13-53846-tjt   Doc 11142-4   Filed 05/03/16   Entered 05/03/16 16:44:29   Page 70 of
72

Upon the reading and filing of the stipulation annexed hereto, and the Court being fully advised in the premises;

IT IS HEREBY ORDERED that the within cause be dismissed with prejudice and without costs and without attorney fees to any party.

_____
U. S. DISTRICT JUDGE

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

**SUMMIT MEDICAL GROUP, PLLC**
**AND SUMMIT PHYSICIAMS GROUP, PLLC**
(Sheila Williams)

Case NO. 14-010025NF
Hon. Patricia Perez Fresard

Plaintiffs,

14-010025-NF

V

FILED IN MY OFFICE
WAYNE COUNTY CLERK
6/8/2015 2:10:00 PM
CATHY M. GARRETT

**CITY OF DETROIT,**

Defendant.

| | |
|---|---|
| HAAS & GOLDSTEIN, PC | CITY OF DETROIT LAW DEPARTMENT |
| JUSTIN HAAS (P53153) | CHERYL L. SMITH-WILLIAMS (P56382) |
| Attorney for Plaintiff | Attorney for Defendant |
| 31275 Northwestern Hwy. Ste. 225 | 2 Woodward Ave., Ste. 500 |
| Farmington Hills, MI 48334 | Detroit, MI 48226 |
| (248) 702-6550 | (313) 237-0455 |
| jhass@hassgoldstein.com | smitc@detroitmi.gov |

**PROOF OF SERVICE**

The undersigned certifies that a copy of the ***Defendant City of Detroit's Response to Plaintiff's Motion for Partial Summary Disposition to Compel Payment of Interest and Attorney Fees*** and ***Proof of Service*** was served upon, _Justin Haas 31275 Northwestern Hwy, Ste. 225, Farmington Hills, Michigan 48334_, by electronically sending a courtesy copy through the ECF System and mailing same with postage fully prepaid on June 8, 2015.

The statement above is true to the best of my knowledge, information and belief.

_/s/ Alondra L. Myles_