# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S OBJECTION TO THOMASENA BARGES'S MOTION TO FILE A LATE CLAIM

The City of Detroit, Michigan ("City") objects to Ms. Thomesena Barge's ("Ms. Barge") Motion to File a Late Claim ("Motion," Doc. No. 11161). In support of its Objection, the City respectfully states as follows.

## INTRODUCTION

Ms. Barge's Motion fails to provide sufficient information to justify a hearing, much less permission to file an untimely claim. In essence, her Motion states that she is confused about her retirement benefits and thus wants to speak to the Court. Ms. Barge does not explain (1) why the City should be held accountable for her dissatisfaction or what she expects the Court to do for her, (2) why a late claim against the City would resolve her concerns, or (3) why she should be excused from the deadline for filing claims, which expired over two years ago.

This is the second time Ms. Barge has been before this Court, asking the Court to interpret her retirement benefits. Ms. Barge should not be permitted to keep returning before this Court on this issue; her Motion should be denied.

# BACKGROUND

On September 18, 2014, Ms. Barge filed a Motion For/To File a Late Claim with this Court. ("Prior Motion," Doc. No. 7581.) Although the title of the Prior Motion implied that Ms. Barge sought to file a late claim, the body of the Prior Motion did not discuss the nature of the claim desired. Instead, Ms. Barge asked that "Judge Rhodes examine the enclosed documents," that she be "excluded from the CHAPTER [sic] 9 Bankruptcy," and that "$18,823.00 [be] refunded to me by way of a CHECK [sic] for said amount." *Id.*, ¶ 3. Only then did she add that she wished to file a late claim. The nature of the claim was left unspecified.

The City filed a response on November 21, 2014. ("Prior Response," Doc. No. 8388.) The City observed that its Plan[1] had been confirmed, and that it prescribed how pension-related obligations would be handled. Prior Response, ¶ 2. Pension claimants were not required to file proofs of claim, and indeed, the filing of a claim would have no effect on how the claimant's pension claim would be treated. *Id.* Thus, the City argued, the Prior Motion was moot. *Id.* Further, the City noted that it had asked representatives of the General Retirement System of the City of Detroit ("GRS") to work with Ms. Barge to explain how the Plan and her GRS benefits operate in an attempt to alleviate her concerns. *Id.*, ¶ 3.

---

[1] *Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* (the "Plan," Doc. No. 8045)

Two hearings were held on the Prior Motion. The first occurred on November 24, 2014. ("Nov. Transcript," attached as Exhibit 3.[2]) At that hearing, Ms. Barge claimed she was owed $18,823, and asked the Court to review her documents and to make sure that any amounts that were inappropriately taken from her would be returned. Nov. Transcript, 11:9-12:9. The City responded as it had in the Prior Response, stating that a proof of claim was unnecessary and offering to help her understand how the Plan operates with regard to retiree obligations. Nov. Transcript, 12:10-13:8. The Court then asked Ms. Barge to discuss the matter with the City, and the parties could return on December 15th if Ms. Barge remained dissatisfied with the information provided. Nov. Transcript, 13:9-24.

As directed, the parties returned on December 15, 2014. ("Dec. Transcript," attached as Exhibit 4.) Because the parties had not been able to confer before the hearing, there was a brief conference between them off the record. *See* Dec. Transcript, 14:15-15:13. Afterward, the Court asked if Ms. Barge had anything she would like to say to the Court. Dec. Transcript, 15:14-15. Ms. Barge thanked the Court, then stated, "Now, I'm not totally satisfied with everything, but the attorneys did write me an extensive letter and explained it, and I do understand it." Dec. Transcript, 15:21-23; *see also* Declaration of Cynthia A. Thomas, GRS Executive Director ("Thomas Declaration," attached as Ex. 2), ¶ 9.

---

[2] Only the portion of each transcript that is relevant to the Prior Motion is attached.

Subsequently, GRS staff noticed that, when calculating Ms. Barge's pension, they had not included certain special annuity distributions to which she was entitled. Thomas Declaration, ¶¶ 10-11. They were one-time distributions that had accrued in the years before Ms. Barge began receiving her pension, as opposed to ongoing payments. *See id.*, ¶¶ 7-8, 23-24. To ensure that Ms. Barge received these distributions, a special one-time distribution of $1,800.51 was included in her January 1, 2015, pension check and labeled as "annuity." *Id.*, ¶¶ 12-13. Despite the label, it was not in any way related to the Annuity Savings Fund recoupment component of the Plan. *Id.*, ¶¶ 14-15.

It does not appear that GRS initially explained the detection and correction of its error to Ms. Barge or that Ms. Barge sought any explanation for the additional payment. *Id.*, ¶¶ 17-19. However, when it did not recur in the following year, Ms. Barge contacted the GRS to find out why she had not received it. *Id.*, ¶ 20. GRS's legal counsel attempted to explain about the special annuity distributions that had been left out of her pension, why the amount had been provided as a lump-sum payment in 2015, and why it would not recur, but she refused to accept the explanation. *Id.*, ¶¶ 21-22. GRS informs the City that it believes Ms. Barge's case has been thoroughly reviewed at this point and that Ms. Barge has received (and continues to receive) every benefit to which she is entitled. *Id.*, ¶ 24.

Nonetheless, Ms. Barge has again filed a Motion regarding her pension. As before, although the title of her Motion suggests that Ms. Barge seeks to file a late claim, the body of the Motion provides no description as to what that claim would be. Similar to her request in the Prior Motion, Ms. Barge now asks that "Judge Tucker examine the bankruptcy settlement and determine facts regarding her annuity rights." Motion, ¶ 3. Ms. Barge concludes, without elaboration, that she seeks permission to file a late claim of some sort. Motion, "Wherefore" clause. Although Ms. Barge has spoken extensively with GRS representatives, she makes no mention of this in her Motion. *Compare Motion generally with* Thomas Declaration, ¶¶ 9-10, 20-22.

## ARGUMENT

The Motion should be denied on any of several grounds. First, nothing has changed since the last time Ms. Barge was before this Court—pension claimants still are not required to file a proof of claim because the Plan regulates treatment of all pension-related claims. A proof of claim filed by a pension claimant does not affect his or her relationship with the City. Thus, like the Prior Motion, Ms. Barge's current Motion is moot. *E.g.*, *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 458 (6th Cir. 1997) ("The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties.") (internal quotation marks and citation omitted).

Second, Ms. Barge fails to allege what kind of late-filed claim she would file, making it difficult for the Court or the City to confirm that she has standing to file her Motion. *See Rosenfeld v. Rosenfeld*, 535 B.R. 186, 190-91 (Bankr. E.D. Mich. 2015); *In re Addison Cmty. Hosp. Auth.*, 175 B.R. 646, 650 (Bankr. E.D. Mich. 1994). This is essentially the flip side of the mootness coin; if the relief sought will not alter Ms. Barge's relationship with the City, she is not a "party in interest" in the City's bankruptcy case for standing purposes.

Finally, assuming Ms. Barge were to surmount these hurdles and establish that filing a late claim would have some effect on her retirement benefits, she needs to explain why filing a claim now, two years after the date for filing such claims has passed,[3] constitutes excusable neglect. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993). The Motion does not address this any more than it explains what relief Ms. Barge hopes the Court will provide.

In short, unless she can show that she is not being treated in the manner prescribed by the Plan, she should not be moving this Court for relief. It is the job of the GRS, not this Court, to walk her through her entitlements. The Court and the legal system are not equipped to be financial advisers or ombudsman. If and when she has a concrete issue that may implicate the City's bankruptcy case, she

---

[3] See *Order, Pursuant to Sections 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* (Doc. No. 1782) setting a Bar Date of February 21, 2014, for filing unsecured proofs of claim.

may return, but until then, she should not burden this Court or the City by repeatedly filing motions with no substance. Indeed, the filing of motions such as these only wastes Court and City resources that are better directed elsewhere.

For these reasons, Ms. Barge's Motion should be DENIED.

May 26, 2016                                Respectfully submitted,

By: /s/ Marc N. Swanson
    Jonathan S. Green (P33140)
    Marc N. Swanson (P71149)
    Ronald A. Spinner (P73198)
    MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    green@millercanfield.com
    swansonm@millercanfield.com
    spinner@millercanfield.com

                and

    Charles N. Raimi (P29746)
    Deputy Corporation Counsel
    City of Detroit Law Department
    2 Woodward Avenue, Suite 500
    Coleman A. Young Municipal Center
    Detroit, Michigan  48226
    Telephone: (313) 237-0470
    Facsimile: (313) 224-5505
    raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

## EXHIBIT 1 – CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 26, 2016, he served a copy of the foregoing *City of Detroit's Objection to Thomasena Barges's Motion to File a Late Claim* as listed below, via First Class United States Mail:

Thomasena Barge
5226 Newport Street
Detroit, MI 48213

DATED:  May 26, 2016

By: /s/ Marc N. Swanson
    Marc N. Swanson
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

## EXHIBIT 2 – DECLARATION

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## DECLARATION OF CYNTHIA A. THOMAS,
## GRS EXECUTIVE DIRECTOR

1.      I serve as the Executive Director for the General Retirement System of the City of Detroit (the "GRS") as well as the Executive Director for the Police and Fire Retirement System of the City of Detroit (the "PFRS"; and collectively, the "Retirement Systems"), and have done so since July 20, 2012.

2.      Before July 20, 2012, I served as Assistant Executive Secretary for the PFRS beginning in August 2004, and have been continuously employed with the Retirement Systems in various capacities since 1988.

3.      I am familiar with the structure and operations of the Retirement Systems.

4.      I make this declaration based on my review of relevant records of the GRS and communication with GRS staff and outside counsel. Some of the matters stated here are not within my personal knowledge, but the facts stated in the answers have been assembled by authorized representatives of and counsel for

GRS, and I am informed that the facts stated therein are true to the best of the knowledge, information, and belief of the representatives of and counsel for GRS.

5. The Retirement Systems are pension plans and trusts which provide retirement, disability and survivor benefits for eligible City of Detroit employees and their beneficiaries.

6. GRS has been in contact with GRS member Ms. Thomasena Barge ("Ms. Barge"), through its staff professionals and outside legal counsel, most recently in January 2016.

7. Ms. Barge is a retiree of the City of Detroit presently receiving a monthly defined benefit pension payment, based on her over ten (10) years of employment service to the City.

8. Ms. Barge first began receiving her pension in March 2014.

9. In December 2014, staff and legal counsel assisted outside counsel to the City with resolving a motion Ms. Barge filed with the Bankruptcy Court and which Judge Rhodes heard in mid-December 2014.

10. At that time, after speaking with Ms. Barge and reviewing her file, GRS staff noticed a miscalculation in Ms. Barge's pension benefit.

11. In or about February 2014, when originally calculating the amount that Ms. Barge was entitled to receive when she was put on pension payroll, GRS

staff initially neglected to add special annuity distributions that Ms. Barge was entitled to receive (the "Miscalculation").

12.     In December 2014, GRS staff corrected the error arising from the Miscalculation by adding the amount of the special annuity distributions to Ms. Barge's pension check dated January 1, 2015.

13.     The amount representing the correction of the Miscalculation, $1,800.51, was labeled "Annuity" on Ms. Barge's January 1, 2015 pension check paystub.

14.     The Miscalculation and its correction do not have any relationship with the Annuity Savings Fund recoupment ("ASF Recoupment") component of the City's Eighth Amended Plan for Adjustment of Debts (the "Plan").

15.     Ms. Barge was not subject to ASF Recoupment as part of the Plan.

16.     As part of the Plan, Ms. Barge was subject to the loss of cost of living adjustments and a 4.5 percent benefit reduction effective March 1, 2014.

17.     It is not clear that Ms. Barge was ever formally advised of the Miscalculation or its correction.

18.     It does not appear that Ms. Barge contacted GRS to ask about the inclusion of the amount labeled "Annuity" on her January 1, 2015, pension check.

19.    Ms. Barge did not contact GRS to inquire about the lack of any additional payments in her pension check labeled "Annuity" between January 2015 and December 2015.

20.    On January 14, 2016, Ms. Barge contacted GRS staff and GRS outside legal counsel at Clark Hill PLC, and inquired as to why her January 1, 2016, pension payroll check did not include an "Annuity" amount as it did on January 1, 2015.

21.    On January 19, 2016, outside legal counsel to GRS attempted to explain to Ms. Barge that the amount labeled "Annuity" on her January 1, 2015, pension check was paid to her to correct an error in the calculation of her pension benefit payments.

22.    Ms. Barge indicated to outside legal counsel to GRS that she did not accept this explanation, and that she would likely file a motion with the Bankruptcy Court to ask the Court to review the Plan to determine whether she is entitled to an annual "annuity" payment.

23.    It appears that Ms. Barge believes that she is entitled to receive an annuity payment of $1,800.51 on an annual basis over and above her monthly pension benefit because of the City's Chapter 9 bankruptcy proceedings.  This belief is incorrect.

24. The Plan's treatment of Class 11, for GRS claim holders, of which Ms. Barge was one, does not provide for annual "annuity" payments to GRS members in a fashion consistent with that which Ms. Barge appears to believe she is entitled.

25. GRS staff has reviewed Ms. Barge's pension calculations and records, and believes that Ms. Barge has received and is presently receiving every benefit to which she is entitled under the Plan, as well as the Combined Plan for the General Retirement System of the City of Detroit, the document governing Ms. Barge's pension benefits.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

By: _Cynthia A Thomas_____
Cynthia A. Thomas
GRS Executive Director

Executed on May 17, 2016

# EXHIBIT 3

## EXCERPT OF TRANSCRIPT OF HEARING ON NOVEMBER 24, 2014

```
                 UNITED STATES BANKRUPTCY COURT
                  EASTERN DISTRICT OF MICHIGAN
                        SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,       .        Docket No. 13-53846
        MICHIGAN,              .
                              .        Detroit, Michigan
                              .        November 24, 2014
                   Debtor.    .        10:00 a.m.
. . . . . . . . . . . . . . . . .
```

          HEARING RE. (#8286) ORDER SETTING HEARING, STATUS
       CONFERENCE RE. PLAN, IMPLEMENTATION, (#7581) MOTION
                     TO FILE A LATE CLAIM
            BEFORE THE HONORABLE STEVEN W. RHODES
             UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:        Jones Day
                       By:  HEATHER LENNOX
                       222 East 41st Street
                       New York, NY  10017
                       (212) 326-3837

                       Jones Day
                       By:  JEFFREY ELLMAN
                       1420 Peachtree Street, N.E., Suite 800
                       Atlanta, GA  39309
                       (404) 581-8309

For the State of       Dickinson Wright
Michigan:              By:  STEVEN HOWELL
                       500 Woodward Avenue, Suite 4000
                       Detroit, MI  48226-3245
                       (313) 223-3033

For the Detroit        Clark Hill, PLC
Retirement             By:  ROBERT D. GORDON
Systems:               151 South Old Woodward Avenue, Suite 200
                       Birmingham, MI  48009
                       (248) 988-5882

                       Clark Hill
                       By:  RONALD A. KING
                       212 East Grand River Ave.
                       Lansing, MI  48906
                       (517) 318-3015

APPEARANCES (continued):

```
                        Arnold and Porter, LLP
                        By:  LISA FENNING
                        77 South Figueroa Street
                        Los Angeles, CA  90017
                        (213) 243-4019

For Greenhill &         Steinberg, Shapiro & Clark
Co.:                    By:  MARK SHAPIRO
                        25925 Telegraph Road, Suite 203
                        Southfield, MI  48033
                        (248) 352-4700

For Thomasena           THOMASENA BARGE
Barge:                  In pro per


Court Recorder:         Letrice Calloway
                        United States Bankruptcy Court
                        211 West Fort Street
                        21st Floor
                        Detroit, MI  48226-3211
                        (313) 234-0068

Transcribed By:         Lois Garrett
                        1290 West Barnes Road
                        Leslie, MI  49251
                        (517) 676-5092
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1   big challenge right now in the income stabilization program

2   is maximizing participation.

3           THE COURT:  Right.

4           MR. KING:  So we're trying -- we're working very

5   closely with the state and with the city folks in trying to

6   get this implemented.  Otherwise we are, in fact, on target

7   to implement that program, the ASF recoupment, and the

8   initial benefit cuts as of March 1.  That's the plan.

9           THE COURT:  Thank you, sir.  All right.  Let's turn

10  our attention to this motion to file a late claim filed by

11  Creditor Thomasena Barge.

12          MS. BARGE:  Good morning, your Honor, and thank you

13  for hearing -- including me in this hearing.

14          THE COURT:  Could you pull that microphone down and

15  talk right into it for me?

16          MS. BARGE:  Yes.

17          THE COURT:  And what is your name, please?

18          MS. BARGE:  Thomasena Barge, your Honor.

19          THE COURT:  Go ahead.

20          MS. BARGE:  Yes.  I'm a former City of Detroit

21  employee.  I left the city in May of 1988.  I was 45 years

22  old at the time.  Little did I know that I was eligible for

23  anything until just about a year ago, and I had a lump sum

24  coming from 2002 when I turned 60 years old.  I did receive a

25  lump sum payment the end of February, which was for March

1st. I didn't realize I was a creditor until I received a

ballot to vote, and the creditor amount said $18,823, which

made me a creditor. My only concern, your Honor, is that out

of my lump sum payment that I had coming that any monies that

was taken from me that shouldn't have been taken is restored.

I had no voice, and that's why I'm here. And I'd leave it up

to you to examine my exhibits and make a decision, and I

thank you.

        THE COURT: Okay.

        MR. ELLMAN: Jeffrey Ellman again, your Honor, on

behalf of the city. We didn't oppose the motion that was

filed. We did file a statement with the court, I think, on

Friday. Ms. Barge does have a pension claim in this case.

She does not have to have a proof of claim to have a claim,

so the filing of a claim at this point would be unnecessary.

We've been trying without a great deal of success to reach

Ms. Barge, so I think maybe the best thing we could do at

this point is make sure we have a good contact number for her

and make sure we can try to walk through what it is that she

is going to be entitled to. She might benefit from --

potentially from some of the information about income

stabilization.

        THE COURT: Right.

        MR. ELLMAN: We've been trying to provide that

information to her. I was able to speak with her briefly

1  before the hearing.  We didn't finish our conversation, but

2  she did indicate that she had not -- you know, there's some

3  issue with her phone.  There's some better number we probably

4  could get to reach her.  That would be helpful to both of us,

5  I think, but I don't think there's an issue for the Court

6  personally to address.  I think really this is an issue of

7  information for Ms. Barge that we'd be happy to try to

8  provide to her.

9           THE COURT:  All right.  Thank you.  Ms. Barge, may I

10 have your attention again, please?  I'm going to ask you to

11 spend a little time either on the phone or in person with Mr.

12 Ellman here, and he can explain to you what your rights and

13 obligations are under the plan.  And then what I'm going to

14 do is reschedule this hearing for December 15th, so if you're

15 not satisfied with the information you have or if you're

16 still concerned about it, we can have a further conversation

17 about it then.  Is that okay with you?

18          MS. BARGE:  I appreciate it so much, your Honor.

19          THE COURT:  Well, you're welcome.

20          MS. BARGE:  Thank you.

21          THE COURT:  All right.  All right.  So we'll adjourn

22 this matter until December 15th, and we'll let everyone know

23 what time that will be and what courtroom.  Okay.  So let's

24 turn our attention then to the GRS-PFRS issue.

25          MR. GORDON:  Good morning, your Honor.  Good

# EXHIBIT 4

## EXCERPT OF TRANSCRIPT OF HEARING ON DECEMBER 15, 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


IN RE:  CITY OF DETROIT,        .        Docket No. 13-53846
        MICHIGAN,               .
                                .        Detroit, Michigan
                                .        December 15, 2014
                   Debtor.      .        10:00 a.m.
. . . . . . . . . . . . . . .


HEARING RE. (#8272) STATUS CONFERENCE RE. ORDER
CONFIRMATION EIGHTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS
OF THE CITY OF DETROIT; (#7581) MOTION TO FILE LATE CLAIM
BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:        Jones Day
                       By:  JEFFREY ELLMAN
                       1420 Peachtree Street, N.E., Suite 800
                       Atlanta, GA  39309
                       (404) 581-8309

For the City of        City of Detroit Law Department
Detroit -              By:  MELVIN HOLLOWELL
Corporation                 CHARLES RAIMI
Counsel:               2 Woodward Avenue, Suite 500
                       Detroit, MI  48226
                       (313) 224-4550

For AFSCME:            Miller Cohen, PLC
                       By:  RICHARD MACK, JR.
                       6700 West Lafayette Blvd., 4th Floor
                       Detroit, MI  48226-3191
                       (313) 566-4787

For Thomasena          THOMASENA BARGE
Barge:                 In pro per

```
Court Recorder:        Kristel Trionfi
                       United States Bankruptcy Court
                       211 West Fort Street
                       21st Floor
                       Detroit, MI  48226-3211
                       (313) 234-0068

Transcribed By:        Lois Garrett
                       1290 West Barnes Road
                       Leslie, MI  49251
                       (517) 676-5092
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1    MR. MACK:  I apologize.  I guess I presumed it was

2  okay to turn mine on, so -- didn't mean to make --

3    THE COURT:  It is okay to turn them on.  What's not

4  okay is for them to emit distracting sounds.

5    MR. ELLMAN:  I hope it doesn't.  So I presume, your

6  Honor, that filing our paper by tomorrow is still

7  acceptable --

8    THE COURT:  Yes, yes, absolutely.

9    MR. ELLMAN:  -- for that schedule.  Okay.  Well, my

10  device is now on, so if you'll give me one moment.  Okay.

11  That's the 22nd.

12    THE COURT:  Yes, please.

13    MR. ELLMAN:  And that will be perfectly fine for my

14  calendar.

15    MR. MACK:  That works.

16    MR. ELLMAN:  Thank you.

17    THE COURT:  Okay.  See you then.  Okay.  Is there

18  anything that anyone else would like to bring up in terms of

19  status conference matters?

20    MR. ELLMAN:  Well, I believe -- I don't know.  Oh,

21  Ms. Barge is here.  I believe we were going to talk about Ms.

22  Barge's claim again.

23    THE COURT:  Yes.

24    MR. ELLMAN:  I intended to get here early to speak

25  with her before the hearing, but the security line delayed me

1  a bit, so I haven't spoken to her today.  We have

2  communicated with her by telephone and by letter from the

3  Retiree Committee.  I don't know if you'd like me --

4  THE COURT:  Would you like me to sit here for a

5  moment while you communicate with her off line?

6  MR. ELLMAN:  Well, really the question ultimately

7  is -- the question we didn't get answered when we talked to

8  Ms. Barge is whether she was satisfied with the information

9  we provided.  We did our best working with the --

10  THE COURT:  Right.

11  MR. ELLMAN:  -- Retirement Systems and the committee

12  and ourselves to answer as many questions as we could -- as

13  we could come up with answers for, and the question is

14  with --

15  THE COURT:  Let me just sit here while you talk with

16  her, and you'll let me know when you're ready.

17  MR. ELLMAN:  Okay.  Thank you.

18  THE COURT:  Sir.

19  MR. ELLMAN:  Your Honor, Jeffrey Ellman again for

20  the city.  I thank you for your patience in that delay.  We

21  did spend some time talking to Ms. Barge obviously in the

22  other room.  She is I think understandably upset with the

23  situation, but I think she does understand and I think she's

24  comfortable that her pension will continue at the level that

25  the plan provides.  She has some concerns about the income

1   stabilization process, especially since she doesn't have tax

2   returns.  Mr. Gallagher from Clark Hill on behalf of the

3   Retirement Systems was with me and explained to her how we

4   can help her with the information she'll need to submit to

5   the state.  She already has submitted the forms, but there is

6   some additional follow-up, so we've committed to do that for

7   her.  I know she also was particularly upset that the letter

8   that Ms. Neville sent her, not so much the content of it, but

9   was -- her name was misspelled on the letter, so we certainly

10  apologize for that, but beyond that I believe we've answered

11  her questions at this point, and she does not appear to wish

12  to address the Court, but she is still here if the Court has

13  questions.

14          THE COURT:  Okay.  Ms. Barge, is there anything

15  you'd like to say to the Court at this time?

16          MS. BARGE:  Good morning.  Good morning, your Honor.

17  And I just want to briefly say I thank you for letting me

18  have a voice, and I didn't want to not appear today and

19  disrespect you, and that's the main reason I'm here today.

20          THE COURT:  Okay.

21          MS. BARGE:  Now, I'm not totally satisfied with

22  everything, but the attorneys did write me an extensive

23  letter and explained it, and I do understand it.

24          THE COURT:  Okay.

25          MS. BARGE:  But I just wanted to say thank you so

1  much.

2          THE COURT:  Well, you're welcome.

3          MS. BARGE:  All right now.

4          THE COURT:  Anything further for today then?

5          MR. ELLMAN:  No, your Honor.  Thank you.

6          THE COURT:  All right.  We're in recess.

7          THE CLERK:  All rise.  Court is adjourned.

8      (Proceedings concluded at 10:24 a.m.)

INDEX

<u>WITNESSES:</u>

    None

<u>EXHIBITS:</u>

    None

       I certify that the foregoing is a correct transcript from the sound recording of the proceedings in the above-entitled matter.

/s/ Lois Garrett          December 21, 2014
_____   _____
Lois Garrett