**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## MOTION FOR APPOINTMENT OF FACILITATOR TO ASSIST THE PARTIES IN IMPLEMENTING VEBA FOR INDIVIDUALS RETIRING FROM THE CITY OF DETROIT AFTER 1/1/2015

The City of Detroit files its motion for appointment of facilitator to assist the parties in implementing a new VEBA for certain individuals retiring from the City of Detroit after 1/1/2015, pursuant to Local Bankruptcy Rules 7016-2 and 9014-1, and states as follows:

1.     The Plan of Adjustment ("POA") terminated the City's prior OPEB plans which provided health care coverage for employees that retired from the City on or before December 31, 2014. In place of that coverage, the POA provided for establishment of two VEBAs (one for public safety and one for other city employees) which provide limited monthly benefits to assist retirees in securing health care coverage. POA, pages 42-43.

2.     The POA also contemplated establishment of a VEBA, with an initial term of 2015 – 2018, to assist employees retiring after January 1, 2015 in securing health care. The provision is found in section 39A of AFSCME CBA (one of the

26805215.2\022765-00213

CBAs scheduled with the POA), and section 39A is attached as exhibit 6A to this motion.

3.     The  post 1/1/2015 VEBA ("New VEBA") has an initial term equal to the term of the CBA (ending December 31, 2018); however, the City expects that the New VEBA's possible continuation, and the terms and conditions upon which it might be continued, will be a subject of bargaining upon termination of the current CBA.  Further, although the VEBA arguably is only required for certain union employees, the City has budgeted for, and intends to make the VEBA available to, other non-safety employees.

4.     Section 39A provides for the City to pay 2% of straight time hourly earnings for active employees in covered groups, into the New VEBA.  The Union and City are to agree upon a "health care benefit design," meaning, the amount of monthly benefits and related issues.  The parties also need to agree on a variety of other issues such as the entity that will hold the funds, etc.

5.     The City is advised that in 2014 and into 2015, representatives of the Union negotiated with representatives of Jones Day concerning the health care benefit side letter ("Side Letter") and trust document for the New VEBA.  In 2015, the City took over those negotiations.

6.     The Union's position is that the Side Letter it negotiated with Jones Day is final and binding, despite the fact that the City itself never signed off.  The

Union's proposed Side Letter is appended as exhibit 6B. The City has advised the Union that it is prepared to accept that Side Letter with one change.

7.     Specifically, page 2 of the Side Letter identifies employees who, upon retirement, will become eligible to participate in the New VEBA.  Section 4 on that page states: "Employees of entities where the City (or its General retirement System) administers the retirement benefits of the entity (i.e., Detroit Public Library, **newly-created water authority**).  Emphasis added.

8.     At the time the Side Letter was negotiated, there was no "newly-created water authority."  The reference was simply put in as a "place holder."

9.     Thereafter, the Great Lakes Water Authority was created.  The City of Detroit has one of six board members on the authority.   The Authority is an entirely separate legal entity, with separate employees and separate retirement and health care systems.  The City of Detroit continues to own and operate the **Detroit Water and Sewage System (DWSD),** and employees of DWSD will continue to be City employees having access to the new VEBA on retirement.   However, the New VEBA cannot possibly provide coverage for Authority employees.  Leaving in the reference to the "newly-created water authority" is at best nonsensical.

10.     Over the past year or so, the relationship between the City and the Union on the VEBA negotiations has broken down, as evidenced by the above dispute. In correspondence the parties have accused one another of being the cause

26805215.2\022765-00213

of the delays.  The City believes it is unproductive at this time to retrace that history – rather, the parties urgently need the help of a facilitator to get the New VEBA up and running.

11.    The parties have an urgent problem – City employees have been retiring since January 1, 2015, but the New VEBA is not set up.  The City has set aside the funding, but because the relationship between the City and Union has broken down, the parties have been unable to move forward.

12.    The City is aware that section 39A(B) of the CBA provides for mediation in Washington, D.C. in the event the parties "cannot agree on a Retiree Medical Plan Design * * *."  That mediation is to be "limited to determining the Retiree Medical Plan Design."

13.    Here, the parties have agreed to all relevant terms and conditions of the Medical Plan Design.  *See* Side Letter, Exhibit 6B.  The CBA provision is inapplicable.  The one remaining issue in dispute on the Side Letter which embodies the Medical Plan Design is whether there should be a reference to the "newly created water authority."  This is not an issue as to Medical Plan Design, and the City cannot fathom why the Union is pursuing this issue.

14.    In addition to resolving the one issue mentioned above, getting the New VEBA up and running will require a cooperative effort to choose proper vendors, make required filings, etc. Those issues likewise do not involve "Medical

26805215.2\022765-00213

Plan Design" and, therefore, are not within the scope of the CBA's mediation provision. Because of the breakdown in the parties' relationship, and the urgency of getting the New VEBA up and running, the City asks that this Court appoint a facilitator for this matter.

15. The POA provides that this Court retains jurisdiction to, *inter alia*, "resolve * * * disputes that may arise in connection with the consummation * * *of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan * * *." POA, page 70. Certainly, that provision allows appointment of a facilitator to assist the parties in getting the long delayed New VEBA up and running.


Dated: May 27, 2016    MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

- and -

CITY OF DETROIT LAW DEPARTMENT

Charles N. Raimi (P29746)
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
Phone: (313) 237-0470
Email: raimic@detroitmi.gov

Attorneys for the City of Detroit

26805215.2\022765-00213

# EXHIBIT LIST

Exhibit 1     Proposed Order

Exhibit 2     Notice

Exhibit 3     None

Exhibit 4     Certificate of Service

Exhibit 5     None

Exhibit 6A   AFSCME CBA

Exhibit 6B   Side Letter

**EXHIIT 1 – PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**ORDER GRANTING MOTION FOR APPOINTMENT OF FACILITATOR**
**TO ASSIST THE PARTIES IN IMPLEMENTING VEBA FOR**
**INDIVIDUALS RETIRING FROM THE CITY OF DETROIT**
**AFTER 1/1/2015**

This matter having come before the Court on the City of Detroit's Motion for Appointment of Facilitator to Assist the Parties in Implementing a New VEBA for Certain Individuals Retiring From the City of Detroit After 1/1/2015 ("Motion"), upon proper notice and a hearing, the Court being fully advised in the premises, and there being good cause to grant the relief requested,

**THE COURT ORDERS THAT:**

1.      The Motion is granted.

2.      This Court will appoint a facilitator to assist the parties in implementing a new VEBA for certain individuals retiring from the City of Detroit after 1/1/2015.

3.     The Court shall retain jurisdiction over any and all matters arising

from the interpretation or implementation of this Order.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**NOTICE OF OPPORTUNITY TO RESPOND TO MOTION FOR
APPOINTMENT OF FACILITATOR TO ASSIST THE PARTIES IN
IMPLEMENTING VEBA FOR INDIVIDUALS RETIRING FROM THE
CITY OF DETROIT
AFTER 1/1/2015**

The City of Detroit has filed its Motion for Motion for Appointment of Facilitator to Assist the Parties in Implementing a New VEBA for Certain Individuals Retiring From the City of Detroit After 1/1/2015.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney.**

If you do not want the Court to enter an Order granting the City of Detroit's Motion for Appointment of Facilitator to Assist the Parties in Implementing a New VEBA for Certain Individuals Retiring From the City of Detroit After 1/1/2015 ("Motion"), within 14 days, you or your attorney must:

1. File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above. You must also mail a copy to:

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
     Marc N. Swanson (P71149)
     150 West Jefferson, Suite 2500
     Detroit, Michigan 48226
     Telephone: (313) 496-7591
     Facsimile: (313) 496-8451
     swansonm@millercanfield.com

Dated: May 27, 2016

## EXHIBIT 4 – CERTIFICATE OF SERVICE

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

The undersigned hereby certifies that on May 27, 2016, he caused a copy of the foregoing **MOTION FOR APPOINTMENT OF FACILITATOR TO ASSIST THE PARTIES IN IMPLEMENTING VEBA FOR INDIVIDUALS RETIRING FROM THE CITY OF DETROIT AFTER 1/1/2015** to be served upon counsel to AFSCME via electronic mail and Federal Express overnight delivery (next business day) as follows:

Richard G. Mack, Jr.
MILLER COHEN PLC
600 West Lafayette Boulevard
4th Floor
Detroit, MI 48226
Telephone:  (313) 566-4787
Facsimile:  (313) 964-4490
richardmack@millercohen.com


Dated: May 27, 2016

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

# EXHIBIT 6A – AFSCME CBA

# MASTER AGREEMENT

BETWEEN THE

# CITY OF DETROIT

AND

# MICHIGAN COUNCIL 25

OF THE
AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO
(NON-SUPERVISORY BARGAINING UNIT)

# 2014 - 2018

F.  During the term of this Agreement, and in conjunction with the City obtaining renewal quotes for existing healthcare plan options, the Coalition may offer alternative or additional health care plan options to the City that will not increase City cost or trend. Upon request, the City will provide the Coalition with data utilized by the City and its actuaries, or utilized by Blue Cross Blue Shield of Michigan (or by the pharmacy benefits manager for the self-insured PPO option), to establish monthly contributions under such self-insured PPO benefit option. The City and the Coalition will meet to discuss such proposed options offered by the Coalition but the City is under no obligation to implement any of the Coalition's recommendations. The City agrees to provide the Coalition with a summary of the basis for its rejection of the Coalition's proposed changes to health benefits.

G.  Notwithstanding any provision in this Article that could be construed to the contrary, this Article will not be construed to require the City to fall out of compliance with the requirements Public Act 152 of 2011 MCL § 15.561 *et. seq.* ("PA 152"). The City's Plan Actuary will be responsible for periodically monitoring compliance with the requirements of PA 152. In the event that the Plan Actuary determines that the City is reasonably likely to fall out of compliance with PA 152, the City will provide written notice to the Coalition, and offer to meet and confer with the Coalition for a period not longer than thirty (30) days in order to discuss potential modifications to the terms of the Medical Plans or to the allocation of contributions to the cost of medical coverage by the City and the Employees in order to comply with the requirements of PA 152. To the extent the City and the Coalition are unable to reach an agreement within thirty (30) days, the City may make any necessary modifications to ensure compliance with PA 152.

## 39.A RETIREE MEDICAL BENEFITS

A.  Effective October 1, 2014, and each month thereafter during the term of this Agreement, the City will contribute toward the cost of retiree health benefits for active Coalition member employees an amount equal to two percent (2%) of the straight-time hourly earnings (and paid time-off, but exclusive of any overtime compensation, premium/differential payments , etc.) of active employees in the bargaining units represented by labor organizations participating in the Coalition (the "Retiree Medical Subsidy"). Such Retiree Medical Subsidy shall be contributed by the fifteenth of each month calculated on the straight-time hourly earnings by such active Coalition member employees in the second previous month to the month of payment. The City shall not be required to pay any additional amounts in connection with retiree health for Coalition represented active employees during the term of the Agreement, other than as specified herein. To the extent that the retiree health care benefit design and structure as set forth in Section B, below, is not in effect as of October 1, 2014 such contributions shall be contributed into a separate account and shall be transferred

39

to the applicable arrangement created in accordance with Section B, as soon as practicable.

B.    The Coalition and the City shall jointly develop, by September 15, 2014, a retiree health care benefit design and structure (the "Retiree Medical Plan Design"). The City shall bear the costs of providing actuarial services to model and otherwise aid them in developing the Retiree Medical Plan Design. In the event they cannot agree to a Retiree Medical Plan Design by September 15, 2014, the Coalition and the City agree to mediate the matter before Mr. Martin Scheinman, with such mediation being held in Washington, D.C. The mediation will be limited to determining the Retiree Medical Plan Design for Eligible Retirees.

1.    If Mr. Scheinman cannot mediate a consensual agreement on the Retiree Medical Plan Design by October 15, 2014, the parties will resolve any disputes concerning the Retiree Medical Plan Design by final and binding interest arbitration before Mr. Scheinman, in accordance with the then current Expedited Labor Arbitration Procedures of the American Arbitration Association, except as otherwise provided herein. The dispute will be submitted to the Arbitrator based exclusively upon the written submissions of the Coalition and the City in support of their respective proposals, to be filed no later than October 22, 2014.

2.    In resolving any dispute regarding the Retiree Medical Plan Design, the Arbitrator shall be required to select the final proposal of either the City or the Coalition and shall have no jurisdiction to deviate from those final proposals or consider or offer alternatives not advocated by the parties. Under no circumstances shall the Arbitrator have the authority to require any contributions or funding by the City in addition to the Retiree Medical Subsidy.

3.    The Arbitrator will be required to issue his decision on or before November 1, 2014. The fees and expense of the Arbitrator will be shared equally by the Coalition and the City.

C.    Employees who retire on or before to December 31, 2014 shall participate in the OPEB settlement available to existing retirees in accordance with the Plan of Adjustment in In re City of Detroit, Case No. 13-53846. Employees retiring on or after January 1, 2015 ("Eligible Retiree") shall be eligible for retiree health care benefits based upon the Retiree Medical Plan Design developed in accordance with Par. B of this Article.

## 40. Workers' Compensation

All Employees will be covered by the applicable Workers' Compensation laws.

# EXHIBIT 6B – SIDE LETTER

[LETTERHEAD]


December __, 2014


Mr. Albert Garrett
President, Michigan AFSCME Council 25600 West Lafayette,
Detroit, Michigan 48226

Mr. Edward McNeil
Spokesperson, Coalition of Detroit Unions
600 West Lafayette
Detroit, Michigan 48226


**RE:     Retiree Health Program for Certain Active Employees**

Dear Al and Ed:

Reference is made to Section 39.A of the collective bargaining agreements ("CBA" or "Agreement") negotiated by the Coalition of Detroit GRS Unions (the "Coalition"), requiring the City of Detroit (the "City") to contribute annually toward retiree health benefits an amount equal to 2% of the base salary of the employees covered by the Agreement.  This side letter (the "Side Letter") sets forth the agreement between the Coalition and the City with respect to the retiree health program that the City will provide during the term of the Agreement to active employees covered by the CBA, and for non-Union employees as specified below, who retire from employment from the City on or after January 1, 2015 and during the term of the Agreement. This Side Letter shall expire at the same time as the CBA.  This Side Letter and its obligations herein are governed by the Michigan Public Employment Relations Act, as bargaining agreements between the City and Coalition and each union with members within the General Retirement System. [1]

---

[1] Based on the terms of the applicable collective bargaining agreements, members of AFSCME Local 1863 (crossing guards) are not eligible for retiree medical benefits and the City will contribute to retiree medical benefits only for those members of AFSCME Local 542 (motor city seasonals) who work more than 1440 hours per fiscal year.  For purposes of this Side Letter, members who are not eligible for retiree medical benefits shall not be Eligible Retirees.

This Side Letter Agreement is enforceable by each individual union within GRS and/or the Coalition of Detroit Unions.

The City will establish a voluntary employees' beneficiary association trust ("Non-Safety VEBA") in accordance with Section 501(c)(9) of the Internal Revenue Code of 1986, as amended. The City shall contribute 2% of base salary earnings, for all Eligible Employees (as defined below) to the Non-Safety VEBA for retiree health benefits. The City's contribution shall be retroactive, back to base salary earned since October 1, 2014, and the retroactive contribution shall be made to the Non-Safety VEBA by or before _____. The Non-Safety VEBA shall hold and invest the 2% base salary contributions made by the City toward retiree health benefits under the CBA and contributions for other employee groups eligible to participate in the City of Detroit General Retirement System. The City shall have no other contribution or payment obligations to the Non-Safety VEBA. The Non-Safety VEBA trust shall be substantially in the form set forth in Exhibit 1 of this letter, and during the term of the CBA the Non-Safety VEBA trust may be amended solely by the express written agreement of the parties to the CBA (for amendments relating to administration that do not materially and significantly increase the cost of retiree health benefits and those required by law, the parties shall consent without demanding bargaining or concessions of any sort).

The trustees of the Non-Safety VEBA shall establish and administer a health plan for non-safety retirees of the City of Detroit (the "Plan"), which shall provide a Health Reimbursement Arrangement ("HRA") for each Eligible Retiree, as described herein.

Eligibility for retiree health benefits under the Plan will be made available to:

1. covered employees under the CBA;
2. City bargaining unit members represented by unions without a union contract , who are participants in the City of Detroit General Retirement System ("GRS");
3. City employees who are not represented by a member of the Coalition who are participants in the GRS; and
4. Employees of entities where the City (or its General Retirement System) administers the retirement benefits of the entity (i.e., Detroit Public Library, newly-created water authority).

(herein defined as "Eligible Employees") provided, that any such employees shall only be eligible to receive a benefit if (a) they retire from the City during the term of the CBA, but on or after January 1, 2015, (b) they commence their monthly pension from the GRS (irrespective of any delay from GRS in payment of said benefit), unreduced as a result of early retirement, and (c) they are not ineligible for these retiree medical benefits as a City employee. (such retirees, "Eligible Retirees"). No other employees, retirees, or persons shall be treated as Eligible Retirees. Eligibility for retiree health benefits under the Plan for the above-described individuals shall be under terms materially identical to Section 39.A, including the City's obligation to contribute 2% of base salary to the VEBA.

The Plan shall be administered by a third party administrator acceptable to the VEBA trustees. The cost of HRA administration shall be assumed by the Non-Safety VEBA. The Plan shall be structured and implemented in the following manner:

1. The City shall afford each Eligible Retiree the opportunity to make an irrevocable election as part of the application for an unreduced pension from GRS

to either begin immediate coverage under an HRA, or defer receipt of the HRA until after the Eligible Retiree attains age 65.

2. For each Eligible Retiree who elects immediate coverage under an HRA, the City shall report the results to the Non-Safety VEBA, and the Non-Safety VEBA shall establish and credit the electing Eligible Retiree's HRA, beginning with the first day of the month following the month in which such election occurs, with a monthly amount. Such amount shall be $125 per month in 2015 and shall be increased by 3% annually (rounding up to the nearest dollar) effective January 2016, and each January thereafter through December 2018. Thus, the monthly amount shall be $129 per month in 2016, $133 per month in 2017, and $137 per month in 2018.

3. For each Eligible Retiree who becomes an Eligible Retiree on or after attaining age 65, or who elects to postpone HRA coverage until age 65, the City shall report the results to the Non-Safety VEBA. The Non-Safety VEBA shall establish the HRA for such an Eligible Retiree to begin the first day of the month following the month in which such Eligible Retiree attains age 65. The Non-Safety VEBA shall be required to notify an Eligible Retiree who elected to postpone HRA coverage of the date that the HRA becomes available. For Eligible Retirees for whom an HRA is established following age 65, the Non-Safety VEBA shall credit toward the HRA a monthly amount. Such amount shall be $360 per month in 2015, and shall be increased by 3% annually (rounding up to the nearest dollar) effective January 2016, and each January thereafter through December 2018. Thus, the monthly amount shall be $371 per month in 2016, $382 per month in 2017, and $394 per month in 2018.

4. The credited monthly HRA amounts described herein shall not be reduced by administrative expenses for HRA and VEBA administration paid out of the VEBA. The Non-Safety VEBA shall not be required to make credits to Eligible Retiree HRAs on or after the expiration of the CBA, except as otherwise provided herein.

5. Notwithstanding the expiration of the CBA and this Side Letter, to the extent that a City employee becomes an Eligible Retiree during the term of this Side Letter, but postpones HRA coverage until his or her attainment of age 65, such Eligible Retiree upon attaining age 65 shall receive credits toward the HRA equal in number of months and amount as if he or she had turned age 65 on the date he or she became an Eligible Retiree for the period from such date through the expiration of this Side Letter. Thus, for example, if John Smith becomes an Eligible Retiree effective July 1, 2016, but postpones HRA coverage until he attains age 65 in June 2019, then notwithstanding the expiration of the CBA and the other terms of this Side Letter, the Non-Safety VEBA shall establish an HRA for John Smith effective July 1, 2019 and credit it with HRA amounts as if the age-65 HRA had been created on July 1, 2016 and received credits through December 2019, that is, $371 per month in 2019, $382 per month in 2020, and $394 per month in 2021.

Sincerely


Michael Hall
Director of Labor Relations

Acknowledged and agreed to:


_____
[NAME]
[TITLE]