Dinah Lynn Bolton - #2373
20230 Fenelon Street
Detroit, MI 48234
313-893-3148
dinahtyus@sbcglobal.net



Clerk of the Court
United States Bankruptcy Court
211 W. Fort Street
Suite 2100
Detroit, MI 48226

June 3, 2016

RE: **DEBTOR'S FORTY-FOURTH OMNIBUS OBJECTION TO CERTAIN CLAIMS**
      **BANKRUPTCY CASE NO. 13-53846 - #2373**

Dear United States Bankruptcy Court:

I would like to respond to the objection of my claim in the above referenced case.

I would like to declare that as stated in my claim for the amount of **$49,793.19** the following is true:

I did suffer loss / reduction in my wages by a 10% pay cut issued by the City of Detroit.

I did suffer loss / reduction in my wages by an additional 4% pay cut issued by the City of Detroit.

I did suffer loss in the ability to receive merit pay, step increases, reimbursement for jury duty, tuition reimbursement, bonus vacation days, hour lunch eliminated, Election day time off, sick time, swing holidays, and out of class pay for working in a manager position.

I did suffer increased health care premium costs, and co-pays, yet lowered medical insurance coverage.

I did suffer loss of longevity payment at the starting point of $150 per year until the current date.

I did suffer loss of funds from my annuity / pension with the City of Detroit specifically with the Craw back of $8,200.00. (and an annuity freeze)

I was paid by the City of Detroit from the Community Development Block Grant Program funds the majority of the loss / reduction period instead of through the General Fund accounts.

I declare that the City of Detroit in its capacity as my employer has the data needed to compile the totals of these losses by fact of my employment with it. (See attachments)

To calculate the reductions I received in my wages and other benefits, the City of Detroit has access to this documentation in my employee files used to make those deductions. (See attachments)

I declare that the City of Detroit can use documentation submitted by other claimants that are in my classification to support my claim since it would be similar to what is required to calculate my claim.

Notice of these deductions were provide by the City of Detroit to each of its employees when they were made upon us.

The Human Resources Department and Payroll Divisions of the City of Detroit already have this information on behalf of the City of Detroit for this Court action. (See attachments)

The City of Detroit in its own interest would make these calculation difficult to obtain by each claimant to give more weight to its case to disallow and/ or expunge each applicants' request.

I am a member of APTE union and request that as a member their arguments against this notice be applied towards my claim.

My Union was part of the Coalition of Unions and their arguments should apply to my claim. (See attachments for their arguments.)

The City of Detroit did not act in good faith and to the best interests of its employees, but to disband the unions.

The City of Detroit could have used other remedies to resolve the bankruptcy issues as is seen by new revelations of other avenues / legal issues with other entities to assist with the City's debt.

For these reasons, the City of Detroit should not be allowed to disallow and / or expunge my claim. (Basis of Claim - Breakdown of Claim, City of Detroit Memos, Communications, and Orders attached as documentation of claim).

I would like to request that I be excused from attendance to the hearing to be held on June 15, 2016, due to work assignments at the City of Detroit particularly during this time of transition in my Department.

Sincerely,

Dinah L. Bolton

cc:     Marc N. Swanson, Miller, Canfield, Paddock and Stone, PLC

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**

IN
RE:

**Case No:** 13-53846

**Chapter:** 9

**City of Detroit, Debtor**

## CERTIFICATE OF SERVICE

I hereby certify that on the **June 3, 2016,** (date of mailing), I served

copies as follows: (By Mail, by Email and Fax)

1. Document(s) served:

2. Served upon [name and address of each person served]:

   Marc N. Swanson, Miller, Canfield, Paddock and Stone, PLC
   150 West Jefferson, Suite 2500, Detroit, MI 48226

   Charles N. Raimi, City of Detroit, 2 Woodward Avenue, Suite 500, Coleman A.
   Young Municipal Center, Detroit, MI 48226.

3. By First Class Mail.

Dated: 6/3/16

(Signature)

Print Name: Dinah L. Bolton

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Dinah Lynn (Tyus) Bolton, 20230 Fenelon Street, Detroit, MI 48234

A true and correct copy of the foregoing document entitled (*specify*): Responsee Filed by Creditor Dinah Lynn Bolton to Debtor's Forthy-Fourth Omnibus Objection to Certain Claims - #2373 - Case No. 13-53846

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) 6/3/16, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 6/3/16 | Dinah L. Bolton | DL L. Bolton |
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

| | |
|---|---|
| Message Id: | 5751E261.B52 : 127 : 3586 |
| Subject: | Forty Fourth Omnibus |
| Created By: | **dbolton@detroitmi.gov** |
| Scheduled Date: | |
| Creation Date: | 6/3/2016 4:02 PM |
| From: | Dinah Bolton |

**Recipients:**

| Recipient | Action | Date & Time | Comment |
|---|---|---|---|
| CODPO2.LYN | Delivered | 6/3/2016 4:02 PM | |
| To: Charles Raimi(RaimiC@detroitmi.gov) | | | |
| millercanfield.com | Transferred | 6/3/2016 4:02 PM | |
| To: swansonm@millercanfield.com(swansonm@millercanfield.com) | | | |
| To: willems@millercanfield.com(willems@millercanfield.com) | | | |
| sbcglobal.net | Transferred | 6/3/2016 4:02 PM | |
| BC: Dinah Bolton(dinahtyus@sbcglobal.net) | | | |

**Post Offices**

| Post Office | Delivered | Route |
|---|---|---|
| CODPO2.LYN | 6/3/2016 4:02 PM | detroitmi.gov |
| millercanfield.com | | millercanfield.com |
| sbcglobal.net | | sbcglobal.net |

**Files**

| File | Size | Date & Time |
|---|---|---|
| MAIL | | |
| MESSAGE | 922 Bytes | 6/3/2016 4:02 PM |
| TEXT.htm | 1 KB (1108 Bytes) | 6/3/2016 4:02 PM |

**Options**

| | |
|---|---|
| Auto Delete: | No |
| Concealed Subject: | No |
| Expiration Date: | None |
| Notify Recipients: | Yes |
| Priority: | Standard |
| Reply Requested By: | None |
| Security: | Standard |
| To Be Delivered: | Immediate |

**Record Id**

| | |
|---|---|
| Record Id: | 5751AA21.LYN.CODPO1.100.1677062.1.8C41.1 |
| Common Record Id: | 5751AA21.LYN.CODPO1.200.200007F.1.E125C.1 |

# ATTACHMENT

| |
|---|
| **Dinah Lynn Bolton** |
| **Principal Development Specialist** |
| **City of Detroit** |
| **Planning & Development Department** |
| **Real Estate Development Division** |

Non-negotiated Reduction in Wages and Election Holidays taken away.  Also Elimination of Longevity Payout and Swing Holidays Vacation Days added.

| | |
|---|---|
| Forced 10% reduction in pay for 5  years ($54,000.00 annually) | $ 27,000.00 |
| Denied 4% pay increase with other City employees | $   2,160.00 |
| Elimination of longevity 2 yrs @ $300.00/yr | $      600.00 |
| Swing Holiday hrs  taken 64  hrs @ 27/hr | $  1,661.44 |
| Election Day worked 8.5 hrs worked @ $13.50/hr | $      114.75 |
| Hour lunch eliminated 490hr @ 27/hr | $ 13,230.00 |
| Health Care Expenses | $   5,000.00 |
| Jury Duty loss of pay 8 hours @ $27/ hr | $        27.00 |
| **TOTAL CLAIM:** | **$ 49,793.19** |

I am an APTE Union member.  The Union is also a part of the Coalition of Unions.

# **Attachment**

## **Dinah Lynn Bolton**

## **2. Basis for Claim:**

10% pay cut, loss of 4% pay increase, loss of merit pay, loss of tuition reimbursement, forced vacation time for Jury Duty days, loss of Election Day pay, loss of health care, increased costs of health care, loss of longevity, loss of sick time, cuts in annuity premiums, loss of pension benefits, loss of swing holidays, and loss of out of class pay.



## EMERGENCY MANAGER
## CITY OF DETROIT

### ORDER No. 38

## ORDER MODIFYING PLANNING AND DEVELOPMENT DEPARTMENT
## AND ESTABLISHING HOUSING AND REVITALIZATION DEPARTMENT

BY THE AUTHORITY VESTED IN THE EMERGENCY MANAGER
FOR THE CITY OF DETROIT
PURSUANT TO MICHIGAN'S PUBLIC ACT 436 OF 2012,
KEVYN D. ORR, THE EMERGENCY MANAGER,
ISSUES THE FOLLOWING ORDER:

*Whereas*, on March 28, 2013, Michigan Public Act 436 of 2012 ("PA 436") became effective and Kevyn D. Orr became the Emergency Manager ("EM") for the City of Detroit ("City") with all the powers and duties provided under PA 436; and

Pursuant to Section 9(2) of PA 436, the EM "shall act for and in the place and stead of" the Detroit Mayor (the "Mayor") and the Detroit City Council (the "City Council"); and

Section 9(2) of PA 436 also grants the EM "broad powers in receivership to rectify the financial emergency and assure the fiscal accountability of the [City] and the [City's] capacity to provide or cause to be provided necessary governmental services essential to the public health, safety, and welfare;" and

Further, Section 9(2) of PA 436 prohibits, during the pendency of receivership, the Mayor and City Council from exercising "any of the powers of those offices except as may be specifically authorized in writing by the emergency manager or as otherwise provided by [PA 436] and are subject to any conditions required by the emergency manager;" and

Pursuant to Section 10(1) of PA 436, the EM may "issue to the appropriate local elected and appointed officials and employees, agents, and contractors of the local government the orders the emergency manager considers necessary to accomplish the purposes of this act;" and

Pursuant to Section 12(1)(b) of PA 436, "notwithstanding any charter provision to the contrary," the EM may "[a]mend, revise, approve, or disapprove the budget of the local government, and limit the total amount appropriated or expended;" and

Section 12(1)(g) of PA 436 authorizes the EM, "notwithstanding any charter provision to the contrary," to "[m]ake, approve, or disapprove any appropriation, contract, expenditure, loan, the creation of any new position, or the filling of any vacancy in a position by any appointing authority;" and

Section 12(1)(i) of PA 436 authorizes the EM, "notwithstanding any charter provision to the contrary," and "[n]otwithstanding any minimum staffing level requirement established by charter or contract, [to] establish and implement staffing levels for the local government;" and

Section 12(1)(n) of PA 436 authorizes the EM, "notwithstanding any charter provision to the contrary," to "[c]onsolidate or eliminate departments of the local government or transfer functions from 1 department to another and appoint, supervise, and, at his or her discretion, remove administrators, including heads of departments other than elected officials;" and

Section 12(1)(ff) of PA 436 authorizes the EM, "notwithstanding any charter provision to the contrary," to "[r]emove, replace, appoint, or confirm the appointments to any office, board, commission, authority, or other entity which is within or is a component unit of the local government;" and

The EM, in consultation with the Mayor, has determined that it is appropriate to establish a new Housing and Revitalization Department (the "HRD") to perform certain functions previously performed by the Planning and Development Department. The EM and Mayor believe that establishing a Housing and Revitalization Department will enhance the City's capacity to pursue, advocate, and support social, economic, and physical development and conservation within the City and to administer grants to various City agencies. The EM and Mayor believe this Order will promote the long-term financial recovery of the City and the health, safety and welfare of the public.

**It is hereby ordered that:**

1. All actions taken by any official under this order shall be taken under the supervision of, and with the approval of, the Mayor, or with respect to matters relating to the Bankruptcy Case or the Plan of Adjustment, under the supervision of, and with the approval of, the EM while he is in office.

2. The Group Executive for Jobs and Economy (Executive Assistant Level 5 to the Mayor who the Mayor designates as being in Charge of Economic Development), or the Mayor, is directed to establish the HRD.

3. One HRD Director and one HRD Deputy Director shall be added to the budget of the HRD. The employee hired as the HRD Director shall be appointed by and serve at the pleasure of the Mayor. The employee hired as the HRD Deputy Director will be appointed by the HRD Director in consultation with the Mayor and shall serve at the pleasure of the Mayor.

- 2 -

4. The HRD shall strategically manage the City's Federal entitlement and related resources and shall be comprised of the following three divisions: (a) Administration; (b) Public/Private Partnership; and (c) Underwriting.

5. The Administration Division shall be comprised of the following operational components: Program Management, Reporting and Data Collection; Labor Standards and Section 3 Compliance; and Administrative support.

6. The Public/Private Partnership Division shall lead initiatives to attract public and private investment in city neighborhoods using public land and financing.

7. The Underwriting Division shall invest the City's entitlement funds in affordable, mixed income and mixed-use housing developments and related public improvements in addition to leading the planning associated with Community Development Block Grants, Emergency Solutions Grant Program, HOME funds and Neighborhood Opportunity Fund; and the implementation of a City-wide investment strategy.

8. All finance, accounting, and grant management positions in the City's Planning and Development Department ("PDD") and their respective appropriations shall be transferred to the Office of the Chief Financial Officer. The City's Chief Financial Officer ("CFO") or his designee will identify the specific positions that will be transferred, the appropriations to be transferred, and the timing of these transfers.

9. The PDD and the PDD Director shall no longer perform the functions set forth in paragraphs 4, 5, 6, and 7 of this Order. All positions and the associated funding for positions performing the duties and responsibilities in paragraphs 4, 5, 6, and 7 of this Order are transferred to HRD and the HRD Director from PDD and the PDD Director.

10. The PDD will be comprised of the following operational components: overseeing the development of a City-wide Master Plan of Policies; strategic oversight of land acquisition and land sales in partnership with HRD; site plan review for community planning implementation and coordination; assisting with administering Historic and Environmental regulations; data management, and GIS mapping.

11. Notwithstanding any City or human resources rule, regulation, policy, agreement, ordinance, or practice to the contrary, including, but not limited to, the City's Civil Service Rules, the HRD Director and PDD Director shall have the authority, with the approval of the CFO and in consultation with the Human Resource Department, to do the following for their respective departments:

    a. Determine the placement of all positions, including the selection and removal of incumbents, within the HRD and PDD;

    b. Create or modify job titles, roles, responsibilities and positions in support of the HRD and PDD: and

    c. Make recruitment, hiring, retention, promotion, demotion, reassignment and any other related personnel decisions affecting the HRD and PDD.

- 3 -

In all events, the HRD Director and PDD Director shall comply with the terms of applicable collective bargaining agreements and provide required notices to impacted employees and labor unions, if applicable.

12. Notwithstanding any City or human resources rule, regulation, policy, agreement, ordinance or practice to the contrary, the HRD Director and PDD Director with the approval of the Mayor, shall have the authority to modify the organizational components and functions of HRD and PDD.

13. Notwithstanding any City or human resources rule, regulation, policy, agreement, ordinance, or practice to the contrary, the PDD Director and the HRD Director, with the cooperation and assistance of the Human Resources Department, may create a new classification and compensation system for the positions under their authority, subject to the approval of the CFO and the Mayor. In all events, the HRD Director and PDD Director shall comply with the terms of applicable collective bargaining agreements and provide required notices to impacted employees and labor unions, if applicable. In the event that the PDD Director and HRD Director position are vacant the Mayor or his designee may act in the place of the PDD Director or the HRD Director.

14. The Human Resources Director shall file any employment position or new classification that is created on or after the date of this Order with the City Clerk and the Council on the 15th day of each month (or if such date is not a business day, the next succeeding business day), commencing on November 17, 2014. Such report shall include the compensation range of that employment position. Any new position that is created and filled shall be within available appropriations.

15. Notwithstanding any City Charter provision, regulation, policy, agreement, ordinance, or practice to the contrary, the PDD Director, subject to the approval of CFO, may enter into a contract with the Detroit Building Authority with respect to the management of any City-owned commercial property. Any transfer of City-owned property to the Detroit Building Authority can only be accomplished with City Council approval.

16. Nothing in this Order shall be interpreted as affecting the employees of City Council's Legislative Policy Division that provide support for the City Planning Commission.

17. Nothing in this Order shall affect the right of City Council to confirm the PDD Director.

18. Nothing in this Order shall be interpreted as contrary to applicable law.

19. If any component of this Order is declared illegal, unenforceable, or ineffective by a court of competent jurisdiction, such component shall be deemed severable so that all other components contained in this Order shall remain valid and effective.

20. This Order shall be distributed to the Mayor, members of the City Council and all City Department Directors and Group Executives.

21. For transparency, the Executive Branch departments of the City described herein shall prepare a monthly report describing actions taken pursuant to this order on 15th day of

- 4 -

each month (or if such date is not a business day, the next succeeding business day), commencing November 17, 2014. This report shall be filed with the City Clerk and City Council and posted on the City's website.

Dated: September 25th, 2014

By: _____
Kevin D. Orr
Emergency Manager
City of Detroit

cc:    State of Michigan Department of Treasury
Mayor Michael Duggan
Members of Detroit City Council
City Department Directors and Group Executives

H. The above shall be in accordance with Chapter 13, Article 5, Section 2 of the Municipal Code of the City of Detroit except as modified by this Article.

I. The City shall provide upon request monthly reports on sick leave usage by department.

## 25. LONGEVITY PAY

A. Employees shall qualify for longevity pay as follows:

1. Employees may qualify for the first step of longevity pay, provided they have served as City employees for an accumulated period of five (5) years.

2. Employees may qualify for the second step of longevity pay, inclusive of the first step provided they have served as City employees for an accumulated period of eleven (11) years.

3. Employees may qualify for the third step of longevity pay, inclusive of the first and second steps, provided they have served as City employees for an accumulated period of sixteen (16) years.

4. Employees may qualify for the fourth step of longevity pay, inclusive of the first, second and third steps, provided they have served as City employees for an accumulated period of twenty-one (21) years.

5. Employees may qualify for the fifth step of longevity pay, inclusive of the first, second, third and fourth steps, provided they have served as City employees for an accumulated period of twenty-six (26) years.

6. The first step of longevity increment shall be one hundred and fifty dollars ($150). The second step of longevity increment inclusive of the first step, shall be three hundred dollars ($300). The third step of longevity increment, inclusive of the first and second steps, shall be four hundred and fifty dollars ($450). The fourth step of longevity increment, inclusive of the first, second and third steps, shall be six hundred dollars ($600). The fifth step of longevity increment, inclusive of the first, second, third and fourth steps, shall be seven hundred and fifty dollars ($750).

B. Employees who have qualified for longevity pay and have accumulated at least eighteen hundred (1800) hours of straight time regular payroll hours of paid time during the year immediately preceding any December 1 date or other day of payment will qualify for a full longevity payment provided they are on the payroll on the December 1 date or any other date of qualification. Except for employees first qualifying for increments, the payment will be made in a lump sum annually on the first pay date after December 1st.

No employee will be denied a full longevity payment on December 1st because of a temporary unpaid absence of twenty (20) continuous days or less extending through the December 1st date in question.

C. Employees who first qualify for longevity pay increments in any month after any December 1st date shall be paid such increment on a pro-rata basis upon attaining such qualification in the amount of a full increment less one-twelfth (1/12) thereof for each calendar month or fraction thereof from the previous December 1st date to date of such qualification.

D. Prorated longevity payments may be made between December 1 dates to qualified employees and officers who separate or take leave from City service, excluding those who are discharged, those who resign and those who resign with a vested pension. Such prorated longevity increment shall be paid for time served on a full calendar month basis since the date of their last longevity payment; provided, that each month shall contain at least 160 straight time regular payroll hours of service.

E. All of the above provisions except as modified herein shall be in accordance with Chapter 13, Article 7 of the Municipal Code of the City of Detroit.

## 26. WORK WEEK, WORK DAY, SHIFT PREMIUM

### A. STANDARD SERVICE WEEK:

1. The standard payroll work week shall begin at 12:01 a.m. Monday, and end at 12:00 p.m. Sunday. It shall consist of five (5) regularly scheduled eight (8) hour work periods on as many work days. The two (2) remaining days in the payroll work week shall be known as "off days."

2. The first scheduled "off day" within the payroll work week shall be designated as the "sixth day" and the second scheduled "off day" within the payroll work week shall be designated as the "seventh day."

   Off days in the work week shall be scheduled consecutively unless such scheduling shall adversely affect or add cost to operations of the department.

3. The City and the Union will review departmental work schedules which currently do not provide for consecutive off days. If the parties can agree that scheduling changes which allow for consecutive off days are feasible, such changes will be implemented, provided that such changes do not result in increased costs or loss of productivity.

4. The City and the Union will also review those departmental operations which currently require rotating shifts. If the parties can agree that a more productive schedule can be established without an increase in cost, the City will take the steps necessary to implement such schedules.

5. Employees will be allowed to submit shift preferences within locations for any new work schedules established pursuant to reviews made in accordance with Section A-3 and A-4.

### B. SERVICE DAY AND WORK DAY:

1. The regular full working day shall consist of eight (8) hours. It shall begin at 12:01 a.m., and extend to 12:00 p.m.

-44-

CITY OF DETROIT
HUMAN RESOURCES DEPARTMENT
LABOR RELATIONS DIVISION

COLEMAN A. YOUNG
MUNICIPAL CENTER
2 WOODWARD AVENUE, SUITE 332
DETROIT, MICHIGAN 48226
PHONE 313•224•3860
FAX 313•224•0738
WWW.DETROITMI.GOV

## INTER-DEPARTMENTAL COMMUNICATION

July 27, 2012

To:     City of Detroit Employee

From:   Lamont D. Satchel, Esq.
        Director of Labor Relations

RE:     City Employment Terms

As you know, the City of Detroit has implemented employment terms ("City Employment Terms" or "CET") for employees in certain unions. Employees are encouraged to contact their respective unions for questions regarding the applicability of the City Employment Terms to them. We understand that there are a number of questions employees have regarding the actual implementation of various City Employment Terms as they affect wages, vacation, sick banks, healthcare and other areas of importance to employees. Below are a number of items covered by the City Employment Terms, accompanied by the City's approach to implementation.

It should be kept in mind that it is the City's intent to implement the economic and non-economic provision of the City Employment Terms in a reasonable manner so as to avoid or minimize personal and operational disruption.

Implementation of the item below for non-union employees will be communicated at a later date.

*10% Wage Reduction and Cessation of Furlough* – A 10% wage reduction will be reflected in employee's paychecks on August 24 or August 31, 2012, depending on the employee's pay cycle. Budgeted Required Furlough ("BRF") days will be discontinued and coincide with replacement by the 10% wage reduction. The last Budgeted Required Furlough day will be July 30, 2012. For employees who do not have BRF days the 10% wage reduction shall be effective July 17, 2012.

*Merit and Step Increases* – All merit and step increases have been eliminated effective July 17, 2012.

*Shift Premium* – Shift premiums will be $.25 for the afternoon shift and $.50 for the night shift, effective August 12, 2012.

*Vacation Accrual Cap* – Currently vacation hours are capped at 320 hours and accrual over this amount must be used before September 30, 2012. Going forward the cap on accrual of vacation hours will be reduced to 160 hours. However, this year employees will be allowed to carry over up to 320 hours on October 1, 2012. This cap will be implemented pursuant to the Human Resource Vacation Policy.

1

*Elimination of Swing Holidays and Election Day as Holiday* – Swing holidays received this July 1, 2012 will be honored. However, there will be no future receipt of swing holidays after July 1, 2012. Effective July 17, 2012, proration of swing holidays for new hires has ceased. Effective July 17, 2012, Election Days formerly treated as holidays will be considered work days.

*Sick Time Banks* – Award of Reserve and Seniority Sick Banks will be discontinued. No more accruals to these banks will be made after July 1, 2012, but they will be available for use. Current Sick Banks will be capped at 300 hours. Employees will be notified prior to the effective date of the cap.

*Jury Duty* – Supplemental jury duty pay will be eliminated, .However, employees will be allowed to use available paid leave time while off on jury duty. Employees will be notified prior to implementation of this change in the city's jury duty policy.

*Private Car Mileage Reimbursement* - Effective September 2012, City of Detroit employees who qualify for mileage reimbursement will no longer receive the $3.00/day reimbursement for use of their vehicle on city business. Such employees will, however, continue to receive actual mileage reimbursement. Also, supplemental accident payments are eliminated effective September 2012.

*Health Care* – The City has made changes to the plan design of its health care benefits including BCBSM PPO, Health Alliance Plan & Total Health Care. The City is eliminating BCBSM Traditional and Comprehensive Major Medical as plan options for all active employees subject to the CET. Open Enrollment is expected to occur October 1 – October 31, 2012 and the 80/20 employee healthcare contribution is expected to be implemented in October 2012.

*Health Care Plan Changes*

- Deductibles increase to $250 per person/$500 per family for all plans
- Coinsurance increase to 80/20 for all plans
- Coinsurance maximum increase to $1,500 per person/$3,000 per family
- Office Visit Copay increase to $25 per visit
- Urgent Care Copay increase to $25 per visit
- Emergency Room Copay increase to $100 per visit
- New Hospital Admission Copay of $100 per admission
- Prescription drug Copay increase to $10 generic/$35 preferred brand/$50 non-preferred brand.
- Mandatory generic
- Mandatory step therapy
- Mandatory prior authorization

2

*Elimination of Swing Holidays and Election Day as Holiday* – Swing holidays received this July 1, 2012 will be honored. However, there will be no future receipt of swing holidays after July 1, 2012. Effective July 17, 2012, proration of swing holidays for new hires has ceased. Effective July 17, 2012, Election Days formerly treated as holidays will be considered work days.

*Sick Time Banks* – Award of Reserve and Seniority Sick Banks will be discontinued. No more accruals to these banks will be made after July 1, 2012, but they will be available for use. Current Sick Banks will be capped at 300 hours. Employees will be notified prior to the effective date of the cap.

*Jury Duty* – Supplemental jury duty pay will be eliminated. However, employees will be allowed to use available paid leave time while off on jury duty. Employees will be notified prior to implementation of this change in the city's jury duty policy.

*Private Car Mileage Reimbursement* - Effective September 2012, City of Detroit employees who qualify for mileage reimbursement will no longer receive the $3.00/day reimbursement for use of their vehicle on city business. Such employees will, however, continue to receive actual mileage reimbursement. Also, supplemental accident payments are eliminated effective September 2012.

*Health Care* – The City has made changes to the plan design of its health care benefits including BCBSM PPO, Health Alliance Plan & Total Health Care. The City is eliminating BCBSM Traditional and Comprehensive Major Medical as plan options for all active employees subject to the CET. Open Enrollment is expected to occur October 1 – October 31, 2012 and the 80/20 employee healthcare contribution is expected to be implemented in October 2012.

*Health Care Plan Changes*

- Deductibles increase to $250 per person/$500 per family for all plans
- Coinsurance increase to 80/20 for all plans
- Coinsurance maximum increase to $1,500 per person/$3,000 per family
- Office Visit Copay increase to $25 per visit
- Urgent Care Copay increase to $25 per visit
- Emergency Room Copay increase to $100 per visit
- New Hospital Admission Copay of $100 per admission
- Prescription drug Copay increase to $10 generic/$35 preferred brand/$50 non-preferred brand.
- Mandatory generic
- Mandatory step therapy
- Mandatory prior authorization

2

*Tuition Refund* – The Tuition Refund program is eliminated effective July 17, 2012. Employees taking eligible classes and receiving tuition refunds as of the effective date will receive refunds for that semester only.

*Longevity* – Effective October 1, 2012 there will be no annual longevity payment and no proration upon separation of employment.

*125k Plan* – The City will be implementing a 125K Flexible Spending Account Plan. Employees will receive prior notification of the implementation date and details regarding participation.

*Out-of-Class Pay* – Employees working out of classification will receive out-of-class payment after 30 consecutive days of working out of classification. This practice will become effective September 1, 2012.

*Bonus Vacation Days* – Bonus Vacation Days received this July 1, 2012 will be honored. However, there will be no future receipt of Bonus Vacation Days after July 1, 2012.

*Sick Time Inclusion in Final Average Compensation* – The inclusion of sick time in an employee's Final Average Compensation will be discontinued. The expected implementation date is November 15, 2012

4

CoLEMAN A. Young
MuNICIPAL CENTER
2 Woodward Avenue, Suite 332
Detroit, Michigan 48226
Phone 313•224•3860
Fax 313•224•0738
www.detroitmi.gov

City of Detroit
Human Resources Department
Labor Relations Division

TO:         All Department Directors, Deputies and Agency Heads

FROM:    Joseph P. Martinico, Labor Relations Director

DATE:     February 24, 2011

RE:         **IMPLEMENTATION OF BUDGET REQUIRED FURLOUGH
             DAYS FOR SENIOR ACCOUNTANTS, ANALYSTS AND
             APPRAISERS (SAAA) BU 7100**

This notice is to inform you that effective March 14, 2011, employees represented by
SAAA will begin to observe unpaid Budget Required Furlough (BRF) Days. In
accordance with the terms and conditions of their 2008 – 2012 collective bargaining
agreement, the BRF days will be continued for three consecutive twelve-month periods.
Please refer to the attached documents for the BRF implementation guidelines and
schedule.

Attachments

# Budget-Required Furlough (BRF) Day Implementation Guidelines

*(These guidelines are intended to be used for implementing budget-required furlough days for union represented employees.)*

♦ Budget-Required Furlough (BRF) Days are prescheduled days off without pay. BRF days are to be taken in eight (8) hour increments.

♦ Labor Relations will provide notice to departments when specific bargaining units are to start the BRF days. Please do not implement the established BRF day schedule prior to receiving this notice. All affected unions will also receive notice from Labor Relations.

♦ Upon receipt of notice from Labor Relations, directors will be responsible for providing notice to the union represented employees, within their department, of the BRF start date.

♦ To the maximum extent possible, all employees are required to take BRF days off without pay in accordance with the City of Detroit's official BRF schedule. We must however, provide an appropriate level of supervision to manage work activities and employees who are not, as of this time, participating in the BRF. To ensure adequate levels of supervision, directors must assign a limited number of supervisors to manage operations on BRF days.

♦ Employees who are scheduled to work on a BRF day will be paid for the day, but will be required to take a BRF make-up day. BRF make-up days are to be scheduled by the department and taken by the employee as soon as possible. The requirement is that all BRF make-up days (without pay) must be taken within the 12-month period. (Example – Employee A must work the scheduled BRF day on Monday, February 15, 2010. Employee A's make-up BRF day must be taken before the end of the twelve month period in which the BRF was missed.)

♦ Directors are responsible for ensuring that in instances where employees are required to work on a BRF day, that a BRF make-up day is scheduled and taken by the employee. BRF make-up days should only be used when absolutely necessary. In an effort to prevent an entitlement to unemployment compensation, an employee should not be allowed to take more than two (2) furlough days in a pay cycle and cannot take more than one (1) furlough day per calendar week.

♦ Emergency and 24 hour/7 day Operations: The City recognizes that emergency service and certain 24 hour/7 day operations will not be able to reduce work hours or close on BRF days without incurring additional overtime costs. All 2008 - 2012 labor agreements contain an exception provision for these operations. However, all department directors are hereby instructed to implement the BRF day schedule to the maximum extent possible.

♦ Emergency Call In: Employees should only be called in for an emergency situation on BRF days. If an employee is called in to work on a BRF day, the employee will be paid in accordance with the "show-up" or "call back" payroll rules specified in the labor agreement or City Code. In this instance, the employee will NOT be required to make up the BRF day, regardless of the number of hours the employee is required to work. Again, this rule only applies in situations where the employee was called in to work on the BRF day. It does not apply when advance notice was provided to the employee that he/she is required to work on the BRF day.

♦ Grant agencies will be required to take BRF days. It may be necessary to extend the hours of operation. Department Directors are responsible for determining the hours of operation, with approval from the Mayor's Office, and to ensure the appropriate staffing levels are provided, including supervision.

*Note: Directors are required to provide documented rationale for all instances where BRF make-up days have been waived. Copies of such documentation must be provided to appropriate Group Executives, Labor Relations, and Budget for review.*

C of D - LRD
January 25, 2010



# 2011 (Revised)

Management reserves the right to establish the Budget Required Furlough (days off with no pay) schedule, including the designation of the implementation date. This schedule is provided for concept demonstration purposes only and does not in any way obligate the City to implement this particular schedule. As such, it is understood that the dates that have been designated herein as BRF days are subject to change. Appropriate adjustments shall be made to achieve 26 days without pay during the fiscal year, and to the greatest extent possible to achieve uniformity among the City's various bargaining units.

## January

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

## February

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 |   |   |   |   |   |

## March

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

## April

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

## May

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |   |   |   |   |

## June

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 |   |   |

## July

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |   |   |   |   |   |   |

## August

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

## September

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 |   |

## October

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

## November

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |   |   |   |

## December

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

■ Holiday or Excused Time Day
Budget Required Furlough*(No-Pay)*

1/24/2011:LRZG

# 2012

Management reserves the right to establish the Budget Required Furlough (days off with no pay) schedule, including the designation of the implementation date. This schedule is provided for concept demonstration purposes only and does not in any way obligate the City to implement this particular schedule. As such, it is understood that the dates that have been designated herein as BRF days are subject to change. Appropriate adjustments shall be made to achieve 26 days without pay during the fiscal year, and to the greatest extent possible to achieve uniformity among the City's various bargaining units.

## January

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | **2** | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | **16** | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

## February

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | | | |

## March

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

## April

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | **6** | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

## May

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | **28** | 29 | 30 | 31 | | |

## June

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

## July

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | **4** | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

## August

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

## September

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | **3** | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

## October

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

## November

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | **5** | **6** | 7 | 8 | 9 | 10 |
| 11 | **12** | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | **22** | **23** | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

## December

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | **24** | **25** | 26 | 27 | 28 | 29 |
| 30 | **31** | | | | | |

■ Holiday or Excused Time Day
■ Budget Required Furlough*(No-Pay)*

8/20/2009:LRZG

# 2012

Management reserves the right to establish the Budget Required Furlough (days off with no pay) schedule, including the designation of the implementation date. This schedule is provided for concept demonstration purposes only and does not in any way obligate the City to implement this particular schedule. As such, it is understood that the dates that have been designated herein as BRF days are subject to change. Appropriate adjustments shall be made to achieve 26 days without pay during the fiscal year, and to the greatest extent possible to achieve uniformity among the City's various bargaining units.

## January

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | **2** | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | **16** | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

## February

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | | | |

## March

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

## April

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | **6** | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

## May

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | **28** | 29 | 30 | 31 | | |

## June

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

## July

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | **4** | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

## August

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

## September

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | **3** | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

## October

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

## November

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | **6** | 7 | 8 | 9 | 10 |
| 11 | **12** | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | **22** | **23** | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

## December

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | **24** | **25** | 26 | 27 | 28 | 29 |
| 30 | **31** | | | | | |

■ Holiday or Excused Time Day
   Budget Required Furlough *(No-Pay)*

8/20/2009:LRZG

# 2013

Management reserves the right to establish the Budget Required Furlough (days off with no pay) schedule, including the designation of the implementation date. This schedule is provided for concept demonstration purposes only and does not in any way obligate the City to implement this particular schedule. As such, it is understood that the dates that have been designated herein as BRF days are subject to change. Appropriate adjustments shall be made to achieve 26 days without pay during the fiscal year, and to the greatest extent possible to achieve uniformity among the City's various bargaining units.

## January
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 |   |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

## February
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 |   |   |

## March
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |   |   |   |   |   |   |

## April
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 |   |   |   |   |

## May
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |   |

## June
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 |   |   |   |   |   |   |

## July
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

## August
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

## September
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 |   |   |   |   |   |

## October
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 |   |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

## November
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

## December
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |   |   |   |   |

■ Holiday or Excused Time Day
■ Budget Required Furlough *(No-Pay)*

8/20/2009:LRZG

CITY OF DETROIT
HUMAN RESOURCES DEPARTMENT
LABOR RELATIONS DIVISION

COLEMAN A. YOUNG
MUNICIPAL CENTER
2 WOODWARD AVENUE, SUITE 332
DETROIT, MICHIGAN 48226
PHONE 313•224•3860
FAX 313•224•0738
WWW.DETROITMI.GOV

To:      All City of Detroit Employees

From:    Joseph P. Martinico, Labor Relations Director

**Subject:**    **Elimination of the Paid Lunch Period**

Date:     November 7, 2011

This notice is to inform you that pursuant to recently negotiated changes to the labor agreements, the regular full working day for City employees shall consist of eight (8) hours of work in the service day, exclusive of the lunch break. Employees must work forty hours to be paid for forty hours; there are no paid lunch periods. Each department will be responsible for monitoring the implementation of the 40 hour work week and the timekeeping thereafter, in either Workbrain or on a manual timesheet, effective 12/12/11.

In order to implement the elimination of the paid lunch period in Workbrain, a new shift pattern will be assigned to employees who currently are assigned a paid lunch. Employee's belonging to a union where there is no settled or imposed contract will not be included in the implementation process at this time.

Any questions regarding the assignment of new shift patterns should be directed to your department management team.



CITY OF DETROIT
HUMAN RESOURCES DEPARTMENT
LABOR RELATIONS DIVISION

COLEMAN A. YOUNG
MUNICIPAL CENTER
2 WOODWARD AVENUE, SUITE 332
DETROIT, MICHIGAN 48226
PHONE 313·224·3860
FAX 313·224·0738
WWW.DETROITMI.GOV

INTER-DEPARTMENTAL COMMUNICATION

To:        City of Detroit Employees

From:      Lamont D. Satchel, Esq. *Lamont D. Satchel*
           Director of Labor Relations

Date:      November 8, 2012

RE:        Revised Implementation Dates for Select City Employment Terms

In a previous communication to employees subject to City Employment Terms, dated July 27, 2012, the Labor Relations Division identified several economic and non-economic provisions of the City Employment Terms that would be implemented over a period of time. This communication updates the prior communication by providing revised implementation dates for the City Employment Terms listed below:

*Overtime* – The reduction of overtime to time and one-half (1 ½) from double time for the seventh day effective November 12, 2012.

*Holiday* – The holiday premium rate is reduced from double time to time and one half (1 ½) effective November 12, 2012.

*Shift Premium* – Shift premium will be $.25 for the afternoon shift and $.50 for the night shift effective November 9, 2012

*Elimination of Longevity, Longevity additive and Proration* – Effective November 15, 2012, there will be no annual longevity payment and no proration of longevity payment upon separation of employment.

If there are any questions or concerns on these issues, please contact Labor Relations on 224-3860.

LDS:lbw

CITY OF DETROIT
HUMAN RESOURCES DEPARTMENT
LABOR RELATIONS DIVISION

MUNICIPAL CENTER
2 WOODWARD AVENUE, SUITE 332
DETROIT, MICHIGAN 48226
PHONE 313•224•3860
FAX 313•224•0738
WWW.DETROITMI.GOV

# INTER-DEPARTMENTAL COMMUNICATION

June 24, 2013

To:      City of Detroit Employees

From:    Lamont D. Satchel, Esq.
           Director of Labor Relations

RE:      Benefits Changes for CET Governed Employees

As you know, the City of Detroit implemented employment terms ("City Employment Terms" or "CET") for employees in certain unions including the Detroit Water and Sewerage Department.

Indicated below are benefit changes and implementation dates.

Vacation Accrual/Carryover Cap – Vacation hours are capped at 240 hours and accrual over this amount must be used before September 30, 2013. Going forward the cap on accrual /carryover of vacation hours will be reduced to 160 on October 1, 2014.

Elimination of Swing Holiday and Election Day as Holiday – Effective July 1, 2013, Swing Holidays are eliminated, including the proration of swing holidays for new hires. Election Days formerly treated as an Excused Time Holiday will be considered a work day.

Elimination of Bonus Vacation Days - Effective July 1, 2013, employees will no longer receive bonus vacation days.

Sick Time Banks – Award of Reserve and Seniority Sick Banks will be discontinued. No more accruals to these banks will be made after July 1, 2012, however they will be available for use.

If there are any questions or concerns, please contact Labor Relations at 313-224-3860.

LDS/lbw



CITY OF DETROIT
HUMAN RESOURCES DEPARTMENT
LABOR RELATIONS DIVISION

COLEMAN A. YOUNG
MUNICIPAL CENTER
2 WOODWARD AVENUE, SUITE 332
DETROIT, MICHIGAN 48226
PHONE 313•224•3860
FAX 313•224•0738
WWW.DETROITMI.GOV

# INTER-DEPARTMENTAL COMMUNICATION

To:      City of Detroit Employees

From:    Lamont D. Satchel, Esq.
Director of Labor Relations

Date:     November 28, 2012

RE:       Implementation of Pension Changes for Non-Uniform Employees subject
to CETs (Clarification)

In response to employees' feedback, this communication updates and clarifies the prior communication on the specific pension items and related qualifications for the City Employment Terms listed below.

*Retirement Multiplier* – The multiplier is reduced to 1.5% for all service time rendered on or after December 1, 2012.

*Escalator* – The 2.25% annual escalator is eliminated effective December 1, 2012.

*Unused Sick Leave on Retirement* – Eligible employees shall continue to receive payment of sixty percent (60%) of their unused sick leave banks accrued prior to July 17, 2012. Any sick leave accumulated after July 17, 2012 will not be paid out.

*Sick Time Inclusion in Final Average Compensation* – Effective December 1, 2012, the provision which allowed employees to roll 25% of the unused sick leave balances into their Average Final Compensation (AFC) will be discontinued.

**Qualifications for the pre-CET retirement provisions:**

(a) **Must be eligible for a service retirement (30 years of service) or Early Actuarially Reduced Pension (25 years of credited service but less than 30) on or before November 30, 2012.**

(b) **The Notice of Intent of Retirement, Pre-Retirement Information and/or Notice of Retirement forms must be signed, dated and received by the Payroll Division on or before November 30, 2012.**

(c) **The Employee's Last Day Worked must be no later than December 31, 2012.**

| Sick Leave Days Used In Previous Fiscal Year | Bonus Vacation Days To Be Credited on July 1st |
| --- | --- |
| 0 to 2 | 5 |
| 3 | 4-1/2 |
| 4 | 4 |
| 5 | 3-1/2 |
| 6 | 3 |
| 7 | 2-1/2 |
| 8 | 2 |
| 9 | 1-1/2 |
| 10 | 1 |
| 11 | 1/2 |
| 12 or more | 0 |

This section shall otherwise be in accordance with Chapter 13-5-1 of the Municipal Code.

F. Employees will have access to Departmental Leave Days in accordance with the Municipal Code and the Manual of Standard Personnel Practices. Permission will not be unreasonably withheld.

G. The above shall be in accordance with Chapter 13, Article 5, Section 2 of the Municipal Code of the City of Detroit except as modified by this article.

## 26. UNUSED SICK LEAVE ON RETIREMENT

A. Employees shall be entitled to payment for unused sick leave on retirement as follows:

Upon retirement, or death with twenty (20) years of service, an employee shall be entitled to payment of one-half (½) of their unused sick leave.

B. The payment will be made as part of the Employee's Pension Program, or the Employee's Benefit Plan, or through the Finance Department.

C. At the employee's option, he/she can elect to have up to the amount permitted by law of his/her unused sick leave payment deposited in his/her deferred compensation account with the balance paid to the employee.

30

## 27. FUNERAL LEAVE

A. If a death occurs among members of the employee's immediate family or household, the employee, provided he/she attends the funeral or memorial service, will be granted three (3) days leave not to be charged to sick leave; provided that such leave will be extended to five (5) days if the funeral or memorial service which the employee attends is more than 300 miles from the City of Detroit. When an employee is entitled to three (3) days leave under this provision, and the funeral or memorial service is within 300 miles of Detroit, he/she shall be granted two (2) days to be charged against current sick leave and then reserve sick leave upon his/her request.

B. Definition of Immediate Family: The immediate family is defined as wife, husband, son, daughter, brother, sister, father, mother, step-father, and step-mother.

C. If a death occurs among the relatives of the employee, the employee will be granted one (1) day leave, not to be charged to sick leave provided he/she attends the funeral. If the funeral which the employee attends is more than 300 miles from the City of Detroit, the employee may extend the leave by two (2) days to be charged against current sick leave and then reserve sick leave upon his/her request.

D. Definition of Relatives: Relatives are defined as grandson, granddaughter, grandmother, grandfather, brother-in-law, sister-in-law, uncle, aunt, mother-in-law, and father-in-law.

E. The Association President or his/her designated representative, with proper notification to the department head, shall be allowed one (1) funeral day, not to be charged to sick leave, in order to attend the funeral of a City employee who was a member of his/her Association on the day prior to his/her death.

## 28. LONGEVITY PAY

A. Employees shall qualify for longevity pay as follows:

1. Employees may qualify for the first step of longevity pay, provided they have served as City employees for an accumulated period of five (5) years.

2. Employees may qualify for the second step of longevity pay, inclusive of the first step provided they have served as City employees for an accumulated period of eleven (11) years.

3. Employees may qualify for the third step of longevity pay, inclusive of the first and second steps, provided they have served as City employees for an accumulated period of sixteen (16) years.

31

13-53846-tjt  Doc 11102-1  Filed 04/21/16  Entered 04/21/16 12:24:19  Page 86-6...

13-53846-tjt  Doc 11230  Filed 06/06/16  Entered 06/06/16 13:34:30  Page 29 of 37

## 29. HOSPITALIZATION, MEDICAL INSURANCE, DENTAL INSURANCE AND OPTICAL CARE

A. The City will continue to provide hospitalization and medical insurance based on the Blue Cross/Blue Shield ward service under the Michigan Variable Fee coverage (MVF-2) and the Prescription Drug Group Benefit Certificate with two dollar ($2.00) co-pay (Certificate #87, known as the two-dollar ($2.00) deductible Drug Rider for employees and their legal dependents, duty disability retirees and their legal dependents, duty death beneficiaries and their legal dependents, as provided by Chapter 13, Article 11 of the Municipal Code of the City of Detroit; until such time during this Agreement that the cost containment/reduction modifications are implemented pursuant to the Memorandum of Understanding Re: Lowered Health Care Costs. Such modifications may impact all or part of the provisions herein combined, including but not limited to medical, dental and optical care coverages.

B. The City will pay up to the following amounts per month for hospitalization:

| | |
|---|---|
| Single person | $100.06 |
| Two person | $238.29 |
| Family | $253.54 |

Fifty percent (50%) of any premium charges that exceed the above amounts shall be paid by the employees and fifty percent (50%) shall be paid by the employer.

C. Employees who wish to insure sponsored dependents shall pay the premium cost of this coverage.

D. The City will provide regular retirees and their spouses for hospitalization and medical insurance based on the Blue Cross/Blue Shield ward service under the Michigan Variable Fee coverage (MVF-2) and the Prescription Drug Group Benefit Certificate with two dollar ($2.00) co-pay (Certificate #87) known as the two dollar ($2.00) deductible Drug Rider as provided by City Council in the 1977-78 Closing Resolution. The City will pay this premium for regular retirees and their spouses for only as long as they receive a pension from the City.

For persons who retire on or after July 1, 1996, the City will pay up to the following amounts per month for hospitalization and medical insurance:

| | |
|---|---|
| Single person | $100.06 |
| Two person | $238.29 |

Fifty percent (50%) of any increase over these amounts will be paid by the retiree and fifty percent (50%) shall be paid by the City. The City will pay this premium for regular retirees and their spouses only for as long as they receive a pension from the City.

---

4. Employees may qualify for the fourth step of longevity pay, inclusive of the first, second and third steps, provided they have served as City employees for an accumulated period of twenty-one (21) years.

5. Employees may qualify for the fifth step of longevity pay, inclusive of the first, second, third and fourth steps, provided they have served as City employees for an accumulated period of twenty-six (26) years.

6. The first step of longevity increment shall be one-hundred and fifty dollars ($150). The second step of longevity increment inclusive of the first step, shall be three-hundred dollars ($300). The third step of longevity increment, inclusive of the first and second steps, shall be four-hundred and fifty dollars ($450). The fourth step of longevity increment, inclusive of the first, second and third steps, shall be six-hundred dollars ($600). The fifth step of longevity increment, inclusive of the first, second, third and fourth steps, shall be seven-hundred and fifty dollars ($750).

B. Employees who have qualified for longevity pay and have accumulated at least eighteen hundred (1,800) hours of straight time regular payroll hours of paid time during the year immediately preceding any December 1 date or other day of payment will qualify for a full longevity payment provided they are on the payroll on the December 1st date or any other date of qualification. Except for employees first qualifying for increments, the payment will be made in a lump sum annually on the first pay date after December 1st.

C. No employee will be denied a full longevity payment on December 1st because of a temporary unpaid absence of twenty (20) continuous days or less extending through the December 1st date in question.

C. Employees who first qualify for longevity pay increments in any month after any December 1st date shall be paid such increment on a pro-rata basis upon attaining such qualification in the amount of a full increment less one-twelfth (1/12) thereof for each calendar month or fraction thereof from the previous December 1st date to date of such qualification.

D. Prorated longevity payments may be made between December 1 dates to qualified employees and officers who separate or take leave from City service, excluding those who are discharged, those who resign and those who resign with a vested pension. Such prorated longevity increment shall be paid for time served on a full calendar month basis since the date of their last longevity payment; provided, that each month shall contain at least 160 straight time Regular Payroll hours of service.

E. All of the above provisions except as modified herein shall be in accordance with Chapter 13, Article 7 of the Municipal Code of the City of Detroit.

13-53846-tjt    Doc 11102-1    Filed 04/21/16    Entered 04/21/16 12:24:19    Page
13-53846-tjt    Doc 11230    Filed 06/06/16    Page 93    Entered 06/06/16 13:34:30



CITY OF DETROIT
FINANCE DEPARTMENT

1200 COLEMAN A. YOUNG
MUNICIPAL CENTER
DETROIT, MICHIGAN 48226
PHONE 313 • 224 • 3491
FAX 313 • 224 • 4466

# Memo

**To:**      ALL CITY EMPLOYEES

**From:**   Norman L. White, Chief Financial Officer *NLW*

**Date:**   November 13, 2009

**Re:**      Longevity – supplemental wages

In order to comply with IRS Publication #15 item 7 and IRS tax code §31.3402(g)-1(a)(1)(i), the City of Detroit is required to apply a Supplemental tax rate to wages defined under the Tax code as Supplemental wages.

For IRS tax purposes the City's Longevity payment is a bonus. Per the applicable IRS codes sited above, and confirmation by an independent IRS consultant, the City's Longevity payment must be taxed at the supplemental rate in order to comply with the federal requirements.

Effective with the Longevity payment payable on December 4, 2009 longevity will be taxed at the federal rate of 25% for all city employees. Per IRS requirements, this    rate will be applied regardless to the number of exemptions you have on the W-4 form you filed with the City.

Depending on your current pay rate, your longevity tax rate may be more or less than a regular payroll. Please contact your tax preparer for how the change will affect your individual situation.

NLW/ML/ec

In the matter of a fact finding between

SENIOR ACCOUNTANTS, ANALYSTS
AND APPRAISERS ASSOCIATION (SAAA),

      Union,

      -- and --

CITY OF DETROIT,

      Employer.

_____/

George Roumell

Fact Finder

## BRIEF ON BEHALF OF THE SENIOR ACCOUNTANTS, ANALYSTS AND APPRAISERS ASSOCIATION (SAAA)

### STATEMENT OF FACTS

The Senior Accountants, Analysts and Appraisers Association (SAAA) represents approximately 300 accountants, analysts, appraisers, information technicians, and similar professional and technical employees of the City of Detroit. Many of these employees, whose job titles are listed in the 2006-2008 contract that the City imposed on the SAAA (Ex 1, at 80-83), are required to have college degrees and professional licenses.

The Union begins with a brief statement of the events leading to this fact finding, of the issues that the parties have agreed to submit to fact finding, and of the criteria that fact finders have traditionally used. In the argument that follows, the Union addresses the City's core claim that it needs massive financial concessions due to its budget crisis. Following that discussion, the Union addresses the substantive merits of its proposals on each of the specific issues in dispute.

A. The events leading to this fact finding.

The last true collective bargaining agreement between the City and the SAAA expired on June 30, 2005. In July 2006, the City imposed the 2005-2008 contracts on the SAAA and other City unions. The manner in which the City did that to the SAAA is subject to a pending unfair labor practice charge.

Even though unfair labor practice had not been decided, the SAAA began negotiations with the City for a new contract in a negotiation meeting on July 20, 2009. After a number of such meetings, the parties were not able to reach agreement and the SAAA requested mediation under the PERA. In November and December 2009, the SAAA and the City of Detroit met on six occasions with the assistance of that mediator. Still without an agreement, the SAAA requested fact-finding pursuant to MCL 423.25 in a petition dated January 11, 2010 (Ex 2).

On March 22, 2010, the MERC appointed Professor Donald Burkholder of the University of Detroit as the fact finder (Ex 3). The SAAA did not press for immediate hearings on the fact finding petition because it, like many other unions, was awaiting the report of the fact finder on the AFSCME Council 25—City of Detroit proceedings. Nor did the City press for immediate hearings, presumably for the same reason.

After the AFSCME-City of Detroit report was issued, the City and the SAAA met for several sessions in an attempt to narrow the differences. That resulted in some progress, but disputes still remained. The SAAA thus asked Professor Burkholder for dates and a meeting was scheduled for October 5, 2010.

At that meeting, the parties and Professor Burkholder discussed the issues in dispute and he set hearing dates for October 29 and November 9, 2010. The parties

2

agreed to continue negotiating on October 5 after Professor Burkholder left. In the evening of October 5, 2010, negotiators for the City of Detroit and the SAAA reached a tentative agreement to present to the SAAA membership (Ex 4).

On October 25, 2010, the membership of the SAAA duly debated and voted on the contract. By an overwhelming majority, the membership of the SAAA rejected the tentative agreement. The SAAA contacted the City and the fact finder and made clear that the Union was prepared to resume fact finding and negotiations.

On November 1, 2010, however, the Director of Labor Relations for the City of Detroit sent the SAAA declaring that on November 12, 2010, the City was unilaterally implementing its collective bargaining proposal, including a ten percent reduction in work hours and the elimination of the longevity pay that was due to be paid in early December 2010 (Ex 4). By letter of November 4, 2010, the SAAA advised the City that this action was unlawful, that it was ready to resume both negotiations and fact finding, and that it was filing an unfair labor practice charge with MERC over the proposed unilateral changes (Ex 5). On November 4, 2010, the SAAA also filed an unfair labor practice charge with the MERC (Ex 6).

The fact finder announced that he was prepared to hold a fact-finding hearing on November 9. The City of Detroit declared, however, that it was not willing to participate in that hearing.

On December 2, 2010, the SAAA and the City appeared for a hearing before MERC on the SAAA's charge. Before the hearing began, the City proposed a settlement of the unfair labor practice charge. After some negotiations, the SAAA agreed to a

3

modification of the City proposal. As reflected in the attached transcript (Ex 7), the City and the Union agreed as follows:

1. They would proceed to expedited fact finding before George Roumell, Jr.

2. Only briefs would be submitted.

3. The parties would request an award by January 10, 2011.

4. The Union would waive the 60-day cooling-off period with the proviso that there would be no unilateral changes before February 1, 2011.

5. The City, if it unilaterally implemented any changes on or after February 1, would implement the terms contained in the tentative agreement the parties reached on October 5, 2010.

6. The Union would withdraw its unfair labor practice charge.

B. The issues to be submitted to fact finding.

Subsequent to the hearing before MERC, the City and the Union agreed that they would submit the following issues for a proposed resolution by the fact finder:

1. Budgeted furlough days, especially for grant and enterprise funded areas;

2. The 35 hour workweek;

3. Longevity pay;

4. Tuition reimbursement;

5. A 3-step grievance procedure;

6. A me-too clause.

4

C. The criteria for fact finding.

The Labor Mediation Act provides no explicit criteria for evaluating the City's claimed inability to pay and its bargaining proposals generally. But as this fact finder knows, fact finders frequently refer to the criteria specified by statute in the police and fire arbitration statute as guidelines for the voluntary awards for other public employees. Those criteria are as follows:

    (a)    The lawful authority of the employer.

    (b)    Stipulations of the parties.

    (c)    The interests and welfare of the public and the financial ability of the unit of government to meet those costs.

    (d)    Comparison of the wages, hours and conditions of employment of the employees involved in the arbitration proceeding with the wages, hours and conditions of employment of other employees performing similar services and with other employees generally:

        (*i*) In public employment in comparable communities.

        (*ii*) In private employment in comparable communities.

    (e)    The average consumer prices for goods and services, commonly known as the cost of living.

    (f)    The overall compensation presently received by the employees, including direct wage compensation, vacations, holidays and other excused time, insurance and pensions, medical and hospitalization benefits, the continuity and stability of employment, and all other benefits received.

    (g)    Changes in any of the foregoing circumstances during the pendency of the arbitration proceedings.

    (h)    Such other factors, not confined to the foregoing, which are normally or traditionally taken into consideration in the determination of wages, hours and conditions of employment through voluntary collective bargaining, mediation, fact-finding, arbitration or otherwise between the parties, in the public service or in private employment.

MCL 423.239.

5

The SAAA has addressed those factors as appropriate below. The City and the Union have agreed that the Fact Finder may refer to those aspects of the transcript of the AFSCME-City of Detroit fact finding proceeding as may be relevant.

## ARGUMENT

A. THE CITY'S FINANCIAL CRISIS AND ITS SIGNIFICANCE FOR THIS FACT FINDING.

The Union begins with the overarching issue in these proceedings—the City's financial crisis and its demand that employees help solve that crisis by agreeing to yet another round of concessions.

To begin with the obvious, by any conventional measure, there is no question that the City has a large deficit in its general fund. The facts of that deficit are set forth in the fact finders' reports for AFSCME and for the building trades. Those reports also set forth the decline in the City's population, its economic base, and its tax revenues—and in the funds the City general fund has received from the state and federal governments. Borrowing at one time lessened the deficit—but in recent years, repayment obligations increased the general fund deficit.

The general fund deficit is, of course, only part of the immediate financial story. Many areas of City government administer national or state programs that are not paid for out of the general fund. Other areas of the City, including, in particular, the Water Department, provide services to entire region and are financed by payments for the services provided. For those programs—which represent a considerable portion of the SAAA's membership—the general fund deficit is irrelevant. More concessions by City employees in those areas will not decrease the general fund deficit at all.

6