```
 1                    UNITED STATES BANKRUPTCY COURT
                       EASTERN DISTRICT OF MICHIGAN
 2                          SOUTHERN DIVISION

 3   IN THE MATTER OF,              Case No. 13-53846
                                    Detroit, Michigan
 4   CITY OF DETROIT, MICHIGAN      June 15, 2016
     _____/  1:35 p.m.
 5
        IN RE:  FORTY-FOURTH OMNIBUS OBJECTION TO CERTAIN CLAIMS,
 6      FORTY-FIFTH OMNIBUS OBJECTION TO CERTAIN CLAIM, MOTION TO
     ENFORCE MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE PLAN OF
 7   ADJUSTMENT INJUNCTION AND BAR DATE ORDER AGAINST RODRICK SINER
          FILED BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN,
 8   MICHAEL MCKAY'S MOTION TO ENFORCE AGREEMENT RESOLVING CLAIM OF
        MICHAEL MCKAY, TWENTY-THIRD OMNIBUS OBJECTION TO CERTAIN
 9   CLAIMS(PENSION CLAIMS THAT HAVE BEEN CLASSIFIED AND ALLOWED BY
       THE CITY'S PLAN), TWENTY-FIFTH OMNIBUS OBJECTION TO CERTAIN
10   CLAIMS (PENSION CLAIMS THAT HAVE BEEN CLASSIFIED AND ALLOWED
       BY THE CITY'S PLAN), TWENTIETH OMNIBUS OBJECTION TO CERTAIN
11        CLAIMS (FAILURE TO SPECIFY ASSERTED CLAIM AMOUNT AND
      INSUFFICIENT DOCUMENTATION), TWENTY-EIGHTH OMNIBUS OBJECTION
12   TO CERTAIN CLAIMS (INSUFFICIENT DOCUMENTATION), TWENTY-NINTH
          OMNIBUS OBJECTION TO CERTAIN CLAIMS (INSUFFICIENT
13   DOCUMENTATION), THIRTIETH OMNIBUS OBJECTION TO CERTAIN CLAIMS
      (INSUFFICIENT DOCUMENTATION), THIRTY-FIRST OMNIBUS OBJECTION
14   TO CERTAIN CLAIMS (INSUFFICIENT DOCUMENTATION), THIRTY-SECOND
          OMNIBUS OBJECTION TO CERTAIN CLAIMS (INSUFFICIENT
15    DOCUMENTATION), THIRTY-THIRD OMNIBUS OBJECTION TO CERTAIN
       CLAIMS (INSUFFICIENT DOCUMENTATION), THIRTY-FOURTH OMNIBUS
16          OBJECTION TO CERTAIN CLAIMS (INSUFFICIENT
        DOCUMENTATION), THIRTY-SIXTH OMNIBUS OBJECTION TO CERTAIN
17    CLAIMS (INSUFFICIENT DOCUMENTATION), THIRTY-SEVENTH OMNIBUS
           OBJECTION TO CERTAIN CLAIMS (INSUFFICIENT
18                         DOCUMENTATION)
             BEFORE THE HONORABLE THOMAS J. TUCKER
19            TRANSCRIPT ORDERED BY: ROBIN WYSOCKI

20   APPEARANCES:

21   For the City of Detroit, MI:   RONALD SPINNER, ESQ. (P73198)
                                    JOHN WILLEMS, ESQ. (P31861)
22                                  Miller, Canfield, Paddock &
                                    Stone
23                                  150 West Jefferson
                                    Suite 2500
24                                  Detroit, MI 48226
                                    313-496-7829
25
```

```
 1 | For Michael McKay:          ERIC STEMPIEN, ESQ. (P58703)
   |                             Romano Law, PLLC
 2 |                             23880 Woodward Avenue
   |                             Pleasant Ridge, MI 48069
 3 |                             616-355-6673
   |
 4 | For Da'Nean M. Brooks and   ANTHONY GREENE, ESQ. (P47715)
   | JaJuan Moore:               Greene Law Group
 5 |                             2232 S. Main
   |                             Suite 438
 6 |                             Ann Arbor, MI 48103
   |                             313-410-3390
 7 |
   | Claimants:                  JULIUS R. COLLINS
 8 |                             CRAIG STEELE
   |                             HENRY WOLFE
 9 |                             VENTONIA DORCH
   |                             GLADYS M. CANNON
10 |                             SARAH MCCRARY
   |                             JAMES CAPIZZO
11 |                             WANDA BECKOM-WHITE
   |
12 | Court Recorder:             Jamie Laskaska
   |
13 | Transcriber:                Deborah L. Kremlick
   |
14 |
   |
15 | Proceedings recorded by electronic sound recording, transcript
   | produced by transcription service.
16 |
   |
17 |
   |
18 |
   |
19 |
   |
20 |
   |
21 |
   |
22 |
   |
23 |
   |
24 |
   |
25 |
```

1    (Court in Session)

2        THE CLERK:  All rise.  This Court is now in session.

3   The Honorable Thomas J. Tucker is presiding.  You may be

4   seated.  The Court calls the case of the City of Detroit,

5   Michigan, case number 13-53846.

6        THE COURT:  All right.  Good afternoon to everyone.

7   We have a number of matters scheduled for hearing -- or

8   further hearing today.  I have in mind at least somewhat the

9   order in which I prefer to hear matters, but if counsel for

10  the city thinks there's a particular reason to do it in a

11  different order than I impose, that's fine.

12      Before we get much further into this though, let's have

13  entries of appearance by any and all attorneys in the

14  courtroom who wish to enter their appearance for the hearings

15  today starting with the city.

16       MR. SPINNER:  Thank you, Your Honor.  Ron Spinner

17  from Miller, Canfield and John Willems from Miller, Canfield

18  on behalf of the city.

19       THE COURT:  All right.

20       MR. STEMPIEN:  Your Honor, I'm Eric Stempien.  I'm

21  here on behalf of claimant Michael McKay.

22       THE COURT:  All right.  Good afternoon to the

23  attorneys and to everyone else here in the courtroom.  Mr.

24  Stempien, I'm glad you're at counsel table.  I had in mind

25  calling the matter involving your client first.

1          MR. STEMPIEN:  Oh.

2          THE COURT:  Mr. Stempien, yes.

3          MR. STEMPIEN:  Yes.

4          THE COURT:  The matter involving the motion brought

5   by the claimant Michael McKay.  I wanted to hear that first.

6   So unless there's any -- the city has any particular reason to

7   do -- to do -- otherwise, I'll hear that case first.

8          MR. SPINNER:  Oh, no, that's fine, Your Honor.

9          THE COURT:  All right.  So this matter then is the

10  motion by claimant Michael McKay to enforce agreement

11  resolving claim of Michael McKay, it's entitled.  It's docket

12  number 11157 filed May 11, 2016.

13      The city filed an objection to that motion on May 20,

14  2016.  I have reviewed the papers filed by the parties

15  relating to this motion and we'll hear argument now.  Mr.

16  Stempien, we'll start with you.

17          MR. STEMPIEN:  Good afternoon, Your Honor, and thank

18  you.  The first thing I'd like to make sure is clear is

19  exactly what it is we're -- we're requesting the Court to do.

20  Because I don't think it's perfectly clear from the -- the

21  objection that I received from the city that -- that really

22  came across completely.

23      We're not challenging the fact that there was a

24  settlement of a bankruptcy claim.  We're not challenging that

25  the individual officers' claims were included within that

1 settlement. And I bring that up because attached to the

2 objection that the city filed, they attached a transcript from

3 a prior hearing of this Court where that was the issue before

4 the Court, whether there was a settlement, whether it applied

5 to the individual officers. That is not what our claim is

6 here. That's not the -- the requested relief that we have

7 here.

8      What we're saying, Your Honor, is that we want

9 confirmation that the settlement agreement that was reached

10 with regard to the bankruptcy claim requires a payment of the

11 full $42,500 to claimant Michael McKay. In the objection the

12 city simply says that this is a Class 14 claim. They provide

13 no specific support for that. They don't say why it's a Class

14 14, it's just something that they designated on their own.

15      However, when we look at everything that has made part of

16 this matter with Mr. McKay which would be the settlement

17 agreement, the eighth amended plan, Judge Rhodes' oral opinion

18 on the record with regard to his approval of the eighth

19 amended -- amended plan, it makes it clear that the settlement

20 requires a full payment of $42,500.

21      First, with regard to the agreement itself, the paragraph

22 that -- the operative paragraphs are Paragraph 2 and 5.

23 Basically what it is, is it says that he agrees to settle this

24 claim for $42,500, that it would be a -- a unsecured

25 non-priority claim.

1      Paragraph 5 then says that it will be treated as such

2  under the plan that was at that time not yet approved by the

3  Court.  So it was not clear what the level of treatment was

4  going to be at the time that the settlement agreement was

5  reached.

6      So when the settlement agreement -- or excuse me, when

7  the plan is actually then approved, the question becomes what

8  is this claim.  So I think we need to start kind of the

9  underlying lawsuit.  The underlying lawsuit was a -- a 42 USC

10  1983 claim.  It was brought in State Court and litigated

11  within State Court.  It was against three individual officers.

12  There was never a claim made against the city itself.  The

13  only defendants were the three individual police officers.  It

14  was resolved through a binding arbitration process.

15      THE COURT:  Well, wait a minute.  You say in the

16  State Court litigation it was not -- the case was not brought

17  against the city itself, rather only against the individual

18  officers.

19      MR. STEMPIEN:  Correct.

20      THE COURT:  That may be, but your client Mr. McKay

21  filed a proof of claim in the City of Detroit bankruptcy case,

22  a claim against the City of Detroit by its nature.  And that's

23  -- that was part of what was -- at least part of what was

24  settled by this settlement agreement at issue, isn't it?

25      MR. STEMPIEN:  Correct.

1          THE COURT:  Okay.  And you said you're not

2    contesting that that settlement also include a settlement of

3    the -- Mr. McKay's claims against the individual officers.

4          MR. STEMPIEN:  Correct.

5          THE COURT:  Okay.  So it's everybody.

6          MR. STEMPIEN:  It is everybody.

7          THE COURT:  All right.  So the -- what Mr. McKay got

8    in exchange for his release of his claims against the City of

9    Detroit and the officers according to the settlement

10   agreement, is the treatment provided in Paragraph 2 of the

11   settlement agreement, isn't it?

12         MR. STEMPIEN:  I would say it's actually Paragraph 5

13   is the operative paragraph, Your Honor.

14         THE COURT:  Okay.  Well, let's say 2 plus 5.

15         MR. STEMPIEN:  Right.  I think it's both right, Your

16   Honor, yeah.

17         THE COURT:  Yeah, okay.  So and that was -- there

18   would be an allowed claim of $42,500 to be treated as a Class

19   5 as a general unsecured non-priority claim subject to the

20   treatment provided for such claims under any Chapter 9 plan

21   confirmed by the Court.

22         MR. STEMPIEN:  Correct.

23         THE COURT:  That's the gist of it.  Okay.  And

24   that's all Mr. McKay got.

25         MR. STEMPIEN:  Correct.

1              THE COURT:  Right?

2              MR. STEMPIEN:  Right.

3              THE COURT:  Okay.  So the plan that was confirmed in

4    the case, it was later but the plan that was confirmed in the

5    case treated general unsecured non-priority claims and it

6    treated them in Class 14 of the plan, didn't it?

7              MR. STEMPIEN:  Well, I don't believe so, Your Honor.

8    Now I think 1983 claims and indemnification claims were given

9    their own treatment separately.

10             THE COURT:  What class are they in in the plan in

11   your view?

12             MR. STEMPIEN:  Your Honor --

13             THE COURT:  If not 14, what class of the plan,

14   confirmed plan?

15             MR. STEMPIEN:  Well, my read of the -- the plan says

16   that they have to pay it in full, Your Honor.  I mean whether

17   -- whether it's under Class 14 --

18             THE COURT:  Well, where is that in the plan?

19             MR. STEMPIEN:  Okay.  So where I would point the

20   Court to would be, it's under Article 4 because, you know, you

21   have the class and you have -- you have the plan that's going

22   to be put into place and then Article 4 of the plan says

23   here's how we're going to implement it.

24        These are the means for implementation of the plan.  It's

25   Article 4, Section O, subsection O.  It talks about assumption

1  of indemnification, I believe.

2          THE COURT:  Hold on.  If you're not going to give me

3  the page number, I'm going to have to dig it out.

4          MR. STEMPIEN:  Oh, I'm sorry, 62 -- 62.

5          THE COURT:  Hold on.  Sixty-two of the confirmed

6  plan, is that right?

7          MR. STEMPIEN:  That is correct.

8          THE COURT:  And for the record, the confirmed plan,

9  when I'm looking at the confirmed plan, I'm looking at docket

10  number 8272, the eighth amended -- eighth amended plan filed

11  on -- I'm sorry, 8272 is the order confirming the eighth

12  amended plan.

13          MR. STEMPIEN:  Correct.

14          THE COURT:  And it has attached to it a copy of the

15  eighth amended plan that was confirmed.  And in there you're

16  looking at Page 62 of the plan, right?

17          MR. STEMPIEN:  Correct.

18          THE COURT:  And I'm -- I'm on that page.  Now what

19  -- what -- what language are you pointing to?

20          MR. STEMPIEN:  So the language that I believe

21  requires full payment in this is under Section O, it says

22  assumption of indemnification obligations.  Notwithstanding

23  anything otherwise to the contrary in the plan, nothing in the

24  plan shall discharge or impair the obligations of the city as

25  provided in the charter or other organizational documents of

1  such nature from the city to then indemnify, defend,

2  reimburse, escrow pay, advanced fees and expenses, or limit

3  the liability of officers, employees of the city.

4      So and this is consistent with Judge Rhodes' oral opinion

5  that he gave when he said I'm going to confirm the plan which

6  we attached as well to our motion and quoted within the brief

7  itself where Judge Rhodes says, 1983 claims are not affected

8  by this.  And why this is important is because if you --

9          THE COURT:  Well, just a minute.

10          MR. STEMPIEN:  Okay.

11          THE COURT:  Hold on.  You cited Judge Rhodes' oral

12  opinion regarding confirmation of the plan.  That was later

13  put into the order confirming plan.

14          MR. STEMPIEN:  Correct.

15          THE COURT:  And then later there was a written

16  opinion which went into more detail, but it was consistent, I

17  think, with the oral opinion about confirming the plan.  In

18  all of these documents it appears to me that what that meant

19  and what was done with that is, that the Court sustained an

20  objection to confirmation that had been made in part by -- by

21  ruling that basically Section 1983 claims against individual

22  officers and employees of the city were not being discharged

23  by the plan, although such claims as against the City of

24  Detroit and therefore also against city employees in their

25  official capacities which is essentially the equivalent of

1  being against the City of Detroit were being treated and

2  discharged in the plan.  Now do you -- do you disagree or

3  agree with that reading?

4         MR. STEMPIEN:  I agree that our claim is subject to

5  the plan in the sense that -- in the sense that even if it

6  wasn't within what Judge Rhodes said or put in the final plan,

7  we agreed to that within the agreement.  I mean I think that

8  -- however the plan treats these 1983 claims is -- is going to

9  be binding upon us based on what we said.  But I guess what

10 I'm --

11        THE COURT:  Well, you're not answering my question.

12        MR. STEMPIEN:  Okay.  Maybe I misunderstood.

13        THE COURT:  I want to be clear about -- if possible,

14 I want to be clear about what the plan did and did not

15 discharge with respect to 1983 claims.

16    The plan, the confirmed plan did not discharge 1983

17 claims brought against officers or employees of the City of

18 Detroit in their individual capacities, do you agree?

19        MR. STEMPIEN:  Correct, yes.

20        THE COURT:  But it did discharge 1983 claims brought

21 against the City of Detroit or -- and/or -- and claims brought

22 against employees or officers of the City of Detroit in their

23 official capacities.  Do you agree with that?

24        MR. STEMPIEN:  I'm not able to answer that, I

25 apologize, Your Honor.  I did not -- I know those with regard

1  to the city.  With regard to the actions of within their

2  official capacity, my -- my understanding of it, and I may be

3  mistaken, is that it -- it's -- it's part of the

4  indemnification requirements because that's exactly what the

5  indemnification provisions are for.

6          THE COURT:  Well, we're going to talk about the

7  indemnification provisions in a minute.  But before we get to

8  that, I just want to be clear.  We're talking about this sort

9  of the same basic groundwork here.

10     I'm looking at the order confirming plan, docket 8272, at

11  Pages 87 to 88, first of all.  That's -- that's the order that

12  confirmed the plan filed November 12, 2014.  Docket 8272,

13  Pages 87 to 88.

14     It's in a section called F, discharge of claims.

15  Paragraph 30 which carries over on to Page 88 says, this --

16  claims that are discharged and it says such discharge will not

17  apply to among other things, "claims against officers who are

18  employees of the city in their individual capacities --

19  capacity under 42 USC Section 1983."  That's the exception to

20  the discharge for claims against employees in their individual

21  capacity that we just talked about, right?  Right?

22          MR. STEMPIEN:  Correct, yeah.

23          THE COURT:  Okay.  Now if you see something here in

24  the order confirming plan or in the plan for that matter that

25  indicates that the -- that 1983 claims against the city and

1  officers, employees in their official capacity were not

2  discharged were also exceptions to the discharge on this

3  confirmed plan.  I need you to tell me where that is because I

4  don't know where that is.  I don't think that's the case.

5        MR. STEMPIEN:  I don't -- I would not be able to

6  point that out to the Court.

7        THE COURT:  All right.  Okay.  So now you were

8  focusing here on Page 62 of the eighth amended plan that was

9  confirmed in this Paragraph O on Page 62 about the provision

10  regarding -- essentially meaning that the city's obligations

11  to essentially to indemnify its employees -- officers and

12  employees of the city was not being -- pardon me, discharged

13  or impaired by the confirmed plan, right?

14        MR. STEMPIEN:  Correct.

15        THE COURT:  Okay.  So from that concept and that

16  provision in the confirmed plan you argue what?

17        MR. STEMPIEN:  Well, I argued --

18        THE COURT:  What's the consequence of that?

19        MR. STEMPIEN:  My argument is that when they say the

20  word nothing -- nothing in the plan shall discharge or impair

21  their obligations to indemnify, I think the plain language of

22  the plan itself is nothing before this that we put in here

23  shall discharge that.  And so my consequences --

24        THE COURT:  Excuse me though.  This is -- this

25  language refers to indemnifying et cetera officers and

1  employees of the city, right?

2         MR. STEMPIEN:  Correct.

3         THE COURT:  It -- it doesn't refer to any sort of

4  duty to indemnify third party claimants.

5         MR. STEMPIEN:  Correct.

6         THE COURT:  Like your claim.

7         MR. STEMPIEN:  Correct.

8         THE COURT:  Right?

9         MR. STEMPIEN:  Right.  And that's not my position.

10  I'm not saying they indemnify me.  My -- my -- here's the

11  argument, Your Honor.

12         THE COURT:  Sure.

13         MR. STEMPIEN:  We -- we sued these individual

14  officers.  We didn't sue the City of Detroit.  Our judgment

15  which as an arbitration award we never turned into a judgment,

16  but our arbitration award is as to these three individuals.

17     The only obligation that the City of Detroit could

18  possibly have to pay that award/judgment is as an indemnitor

19  for those three individual officers.  That's the only

20  obligation the city could possibly have.

21     And that would be an obligation found within their

22  collective bargaining agreement.  So this is not a direct

23  action against the city.  We did not sue the city.  That's why

24  I opened up with that because we didn't sue them.

25     Their -- only time they could ever have an obligation to

1  pay, let's say we never had the bankruptcy if -- if you just

2  went through the litigation and the City of Detroit paid the

3  arbitration award on a City of Detroit check and the City of

4  Detroit account, it would have only been as an indemnitor for

5  those three officers.  That would be the only way they could

6  have been obligated in any manner.

7     Therefore because it's clear that they're indemnitors,

8  and it's clear that the plan says nothing in the plan shall

9  discharge per their obligations, they're obligated to

10  indemnify these individual officers as to that full amount,

11  it's not changed.

12        THE COURT:  This duty to indemnify the officers that

13  you're pointing to is not a duty that runs to your client, to

14  an injured third party.  It runs only to the officers, doesn't

15  it?

16        MR. STEMPIEN:  Correct.

17        THE COURT:  So your clients couldn't possibly have a

18  claim against the City of Detroit based upon the City of

19  Detroit's duty to indemnify its officers, is that right?

20        MR. STEMPIEN:  My position on that is usually we

21  would have standing if they tried to challenge it to -- to

22  argue on that.  But I don't think we could bring an

23  independent cause to enforce an -- or I mean an

24  indemnification provision.

25        THE COURT:  The indemnity rights are rights that

1  belong to the officers.

2          MR. STEMPIEN:  That is correct.

3          THE COURT:  You agree, okay.

4          THE COURT:  All right.

5          MR. STEMPIEN:  Yes.  Now, this settlement agreement

6  it looks like the arbitration award was made by the three

7  arbitrators.  It's looks like the written arbitration award

8  was May 16, 2013 it looks like the date.  And I think that's

9  part of Exhibit A attached to docket 11181, the city's

10 response and probably elsewhere in the record, but -- so it

11 was after that arbitration award that Mr. McKay and the city

12 made this settlement agreement that's at issue, right?

13         MR. STEMPIEN:  That's correct.

14         THE COURT:  The -- the agreement doesn't seem to

15 state, you know, a date, official date of this agreement, but

16 it looks like it was signed by the city on December 16, 2015

17 signed by Mr. McKay it looks like June 23, 2014.

18         MR. STEMPIEN:  Correct.

19         THE COURT:  I'm just looking at the signature --

20         MR. STEMPIEN:  That's right.  And it -- it --

21         THE COURT:  -- signature on the last page.

22         MR. STEMPIEN:  -- was never signed by the attorneys

23 for Mr. McKay.

24         THE COURT:  Right.  It was signed by Mr. McKay and

25 by the city.  And -- and that all happened after the

1 | arbitration award had been entered against the individual

2 | officers.

3 |        MR. STEMPIEN: Yes.

4 |        THE COURT: Right? Okay. So and you've said that

5 | the settlement agreement settled Mr. McKay's claims against

6 | the individual officers.

7 |        MR. STEMPIEN: Correct.

8 |        THE COURT: As well as the city, everybody.

9 |        MR. STEMPIEN: Yes.

10 |        THE COURT: Okay. So the agreement -- the

11 | settlement agreement itself does not say the city would agree

12 | to be obligated to indemnify Mr. McKay for anything based on

13 | the arbitration award against the officers. Expressly what it

14 | did was it gave Mr. McKay an allowed claim of $42,500 that

15 | would be classified and treated in the Chapter 9 plan as a

16 | general unsecured non-priority claim right, you would agree to

17 | that?

18 |        MR. STEMPIEN: Yes. But --

19 |        THE COURT: Yeah, okay.

20 |        MR. STEMPIEN: Well, you say they didn't promise to

21 | indemnify but they did promise to make a payment based on the

22 | provisions of the plan that was to be later adopted. So I

23 | mean whether you call it indemnification or not, but they made

24 | a promise to pay.

25 |        THE COURT: Well, I don't think it says they'll make

1  a payment.  It said that -- and then it said, it's Paragraph

2  5, it would -- in Paragraph 2 and 5 they give -- they give an

3  allowed general unsecured non-priority claim and say it's

4  going to be subject to the treatment of such -- for such

5  claims in any Chapter 9 plan.

6       MR. STEMPIEN:  Correct.

7       THE COURT:  All right.  All right.  So the -- the

8  provision regarding indemnification that you cited on Page 62

9  of the confirmed plan, it doesn't say anything about how

10  general unsecured non-priority claims are to be treated.

11     And it's limited for purposes of your motion, I think

12  you'll agree, to the city's obligation to indemnify, defend,

13  et cetera, its own employees.

14       MR. STEMPIEN:  Yeah.  The -- their obligation is to

15  the employee, yes.

16       THE COURT:  So -- so how -- how does that -- how

17  does that -- I'm having trouble seeing the link that you're

18  trying to make there between that provision in the confirmed

19  plan and your ultimate conclusion that the city under this

20  settlement agreement has to pay the full 42,500 of the claim.

21       MR. STEMPIEN:  Because I think the operative words

22  in Paragraph 5 are, subject to the treatment provided for such

23  claims under any Chapter 9 plan.  So the question has to

24  become how does the plan treat this particular claim.  The

25  city --

1          THE COURT:  Well, wait a minute. Look at Paragraph

2     5.  The treatment provided for such claims under any Chapter 9

3     plan, the language you just pointed to.  The reference to such

4     claims there is a reference, isn't it, to the -- the phrase

5     general unsecured non-priority claim?

6          MR. STEMPIEN:  Yes.

7          THE COURT:  It appears earlier in the sentence.

8          MR. STEMPIEN:  Yes.

9          THE COURT:  So when it says such claims you can

10    translate that to mean -- to say and mean that the claim, Mr.

11    McKay's claim, settled claim here, would be subject to the

12    treatment provided for general unsecured non-priority claims

13    under the Chapter 9 plan, is that right?

14         MR. STEMPIEN:  Yes.  And I would argue that 1983

15    claims are unsecured non-priority claims.  I -- there's no --

16    there's no security created by our 1983 claim.  There's no

17    priority.  And I apologize if there is, because I -- I don't

18    practice bankruptcy at all.  But my understanding is that

19    priority claims are things like wages and -- and things of

20    that nature.

21         This is -- my observance it's not a priority claim, it's

22    not a secured claim.  It is a -- it is an unsecured

23    non-priority claim.  But the plan treats 1983 claims --

24         THE COURT:  Okay.

25         MR. STEMPIEN:  -- differently than it does other

1  non-priority unsecured claims.

2       THE COURT:  Maybe I'm -- I'm understanding your

3  argument a little better now, but let me see if I've got it.

4       MR. STEMPIEN:  Okay.

5       THE COURT:  If I understand it.  Seems -- seems to

6  be what you're saying now is that this Paragraph O on Page 62

7  of the confirmed plan is one place, not the only place

8  necessarily, one place in which the plan, confirmed plan,

9  treats general unsecured non-priority claims.

10       MR. STEMPIEN:  Correct.

11       THE COURT:  In the form of claims that are claims by

12  employees of the city for indemnification, is that right?

13       MR. STEMPIEN:  Well, it --

14       THE COURT:  Isn't that what Paragraph O talks about?

15       MR. STEMPIEN:  Yes.  That is correct, yes, yes.

16       THE COURT:  Okay.

17       MR. STEMPIEN:  But the general unsecured claim that

18  I have is a 1983 claim which I think is treated differently

19  under this.  So my obligation -- my claim -- my settlement as

20  to the city and their officers was to be treated as that type

21  of a claim under the plan which I think provides for $42,500

22  full payment.

23       Now does that mean I can go to the officers and say the

24  officers have to pay me 42,500?  Well, the Court's already

25  ruled no, I can't.  I saw that in the prior ruling.

1   So then it's the city who is obligated to pay it under

2   this.  And the only way they can be obligated to pay is under

3   the indemnification provision.  And then if it's under the

4   indemnification provision, I think it's -- that is not

5   impaired or discharged in any manner.

6         THE COURT:  Well, the city's obligated to pay

7   something because they agreed to a settlement agreement that

8   gave your client a general unsecured non-priority claim in the

9   bankruptcy under the plan.  Whether they had before agreeing

10  to that, it was the city had any sort of legal obligation to

11  pay your client anything I suppose is -- is a different issue.

12        But the settlement agreement gave your client a right to

13  treatment, whatever treatment was -- what Paragraph 5 means

14  under any confirmed plan by the city, right?

15        MR. STEMPIEN:  Right.

16        THE COURT:  Right.

17        MR. STEMPIEN:  But it would be in conjunction I

18  think with the nineteen eight -- we sued these individual

19  police officers, not the city.  We didn't bring a custom and

20  policy claim against the city, we sued these individual

21  officers.

22        My understanding then is that they're obligated as the

23  full amount of the money.  And if I had not -- my client had

24  not signed this agreement I could go after these officers for

25  the full -- full 42,500 which is, you know, I think everybody

1  agrees that's true.  We signed this agreement so now we have

2  the city coming in.

3      So under one provision we get the full -- full 42,500,

4  but when the city has to come in and pay it they get to pay it

5  as a Class 14 under the notes.  And I -- I think that that

6  would be -- I think that would be reading the -- the

7  provisions inconsistently.  Because I think 1983 claims have

8  gotten their own treatment.  These are individual officers

9  sued not -- not with the city, but as individuals.

10      And it was arbitrated.  A decision was made.  They had a

11  judgment or could enter a judgment against them if we hadn't

12  pursued the -- the agreement.  And therefore if the city is

13  going to pay it, they can do it as an indemnitor and therefore

14  they're -- they're -- they can't impair that ability there to

15  do so.

16          THE COURT:  Well, look at, if you have it front of

17  you there, Page 44 of the plan.  It talks about the treatment

18  of Class 14.

19          MR. STEMPIEN:  I believe I do have that one with me,

20  yes.

21          THE COURT:  Other unsecured -- all right.  The

22  treatment of Class 14.  Do you have it there?

23          MR. STEMPIEN:  I'm looking at it.

24          THE COURT:  Page 44 of the plan, docket 8272

25  attached to the order confirming the plan at treatment.  It

1  says, "unless such holder agrees to a different treatment of

2  such claim, each holder of an allowed other unsecured claim in

3  full satisfaction such allowed claim shall receive," and then

4  it goes on to talk about the -- the -- the notes, et cetera.

5  The Class 14 treatment there.

6       Now the -- the phrase allowed other unsecured claim,

7  allowed means the claim is allowed, but other unsecured claims

8  defined at Page 21 of the plan, Paragraph 262 in the -- number

9  262 of the definitions to mean any claim that is not an

10 administrative claim, a convenience claim, a COP claim, a

11 downtown development authority claim, a general obligation

12 bond claim, a GRS pension claim, an LBB claim, a BFRS pension

13 claim, a secured claim, indirect 36th District Court claim, or

14 subordinate claim.

15      Then it says where the avoidance of doubt, Section 1983

16 claims and indirect employee indemnity claims are included

17 within the definition of other unsecured claim.

18      So doesn't that claim which made clear when combined with

19 the language of the treatment of Class 14, that 1983 claims,

20 including indirect employee indemnity claims are within the

21 definition of -- of allowed other unsecured claim in Class 14

22 of the plan.

23          MR. STEMPIEN:  Again, the direct -- there was no

24 direct 1983 claim, so it doesn't meet that because we didn't

25 -- we didn't sue the city for a 1983 claim.  We sued

1  individual officers for violation of the 42 USC 1983.  That

2  provision if it's read in the way that I believe the Court

3  just indicated, I think would conflict with the -- the -- the

4  subsequent provision that says that the 1983 claims against

5  individual officers are not impaired.  I don't remember the

6  language, I apologize, but to that effect.

7      Again can the -- can the -- would the officers then have

8  a different -- would they be in a different position to in

9  their indemnity claim against the city if we went after them

10  for the 42,500.  It sounds like it would apply to that.

11      But then that -- that provision, that definition also

12  conflicts with Article 4, subsection O which says there's no

13  -- you know, there's no impairment of -- of an indemnity

14  claim.

15      I would ask -- I would ask the Court to apply that, you

16  know, sort of statutory construction rules that we would have

17  or the more specific provisions and would rule over the

18  general provisions.  And I think when you read in conjunction

19  the specific 1983 section about individual officers and the

20  indemnification provisions it makes clear that I've still got

21  my full claim against the officers because that -- when I

22  signed this agreement and the -- and the officers -- or when

23  my client signed this agreement and -- and said we're waiving

24  our claim against the officers for 42,500 under the plan,

25  they're still obligated to 42,500.

1    And then -- then the city's got to indemnify it because

2  they're indemnified under their collective bargaining

3  agreement.  And Article 4, Section O we'd say they have to do

4  it without impairment.

5         THE COURT:  One of things I was going to get to and

6  ask you about the language in the plan about the treatment of

7  Class 14 on Page 44 in addition to what we've just already

8  talked about is, the opening phrase of the -- of the paragraph

9  that I just read to you, it says unless such holder agrees to

10  a different treatment of such claim.

11    I thought you were going to argue that partly in response

12  to my last question that well, yeah, the -- the claim that was

13  settled and the claim which is allowed in the case is maybe a

14  general unsecured non-priority claim.  It is because that's

15  what -- what the settlement agreement says in Paragraph 2 and

16  5.  And -- and it may be a -- an allowed other unsecured claim

17  within the meaning of Class 14, but here the holder, your

18  client of the claim, agreed to a different treatment of the

19  claim.  That is treatment different than what Class 14

20  provides for.

21         MR. STEMPIEN:  Right.

22         THE COURT:  In the plan.  And that, you're arguing

23  is based on the settlement agreement, the full $42,500

24  payment.

25         MR. STEMPIEN:  Correct.

1            THE COURT:  Is that part of what you're arguing?

2            MR. STEMPIEN:  Yes, yeah, yeah.

3            THE COURT:  All right.  You -- on the subject of

4  your claim against the individual officers, I noticed that in

5  March of this year apparently in the State Court action you

6  obtained an order of that Court ordering the individual

7  employees to pay the full amount of the arbitration award

8  within 60 days, is that right?

9            MR. STEMPIEN:  That is correct.

10           THE COURT:  That's the order that is entitled order

11 enforcing arbitration award in March 14, 2016, Circuit Court.

12 This is -- a copy of this is -- it looks Exhibit 6 to your

13 motion.

14           MR. STEMPIEN:  Okay.

15           THE COURT:  Refers to the arbitration award issued

16 on May 16, 2013, order defendants, meaning the individual

17 defendants being Meyer and Watkins and John -- Officer John

18 Doe, so we're talking about Meyer and Watkins, I guess, to pay

19 that award within 60 days.

20           MR. STEMPIEN:  Correct.

21           THE COURT:  Was the city involved in the litigation

22 that led to this particular order in the State Court?

23           MR. STEMPIEN:  Yes, they did.

24           THE COURT:  They were?

25           MR. STEMPIEN:  Yeah, they appeared at the hearing.

1          THE COURT:  And did they argue against this?

2          MR. STEMPIEN:  No.

3          THE COURT:  Did they raise the issue of the

4   settlement?

5          MR. STEMPIEN:  No.

6          THE COURT:  And did they oppose this entry of this

7   order in any way?

8          MR. STEMPIEN:  No.

9          THE COURT:  During the hearing did they say anything

10  about their indemnification obligation to Officer Watkins?

11         MR. STEMPIEN:  No.

12         THE COURT:  Did you bring up any of these things

13  during that hearing?

14         MR. STEMPIEN:  I did not.

15         THE COURT:  All right.  Well, what else do you want

16  to say about your motion then, Mr. Stempien?

17         MR. STEMPIEN:  No, I believe we've covered

18  everything, Your Honor.  I think the Court has a good sense of

19  what my argument is.  Thank you.

20         THE COURT:  All right.  Well, thank you.  We'll hear

21  from the city now.  Mr. Spinner.

22         MR. SPINNER:  Yes, good afternoon, Your Honor.  I

23  think you have actually covered most of what I would say.  You

24  know, now I understand exactly what he's -- brother counsel is

25  going after,

1     I think the -- the only issue I might raise, and it's

2  probably a lot simpler than it -- than it would appear in the

3  surface.  To me the one doctrine that's being overlooked all

4  over here is merger and the ability to settle claims.  Two

5  doctrines, I suppose.

6     First of all the parties can sell anything they wish for

7  the most part.  And they did so here and signed an agreement

8  to that effect.

9     At the time the settlement took place, merger takes

10  place.  The original claim merges into the settlement.  The

11  settlement requires that this claim, this -- this suit in

12  which the order was -- from the Court which issued the order,

13  that suit was supposed to have been dismissed.

14     The claims against the individual police officers were

15  obviously  released as they were to the city.  Claimant

16  bargained for a $42,500 unsecured claim, that's what he has,

17  that's what he's gotten.

18     And beyond that I don't think I could add much to what

19  Your Honor's already asked.  Unless you have questions for me,

20  Your Honor.

21          THE COURT:  Well, what do you say about this

22  Paragraph O on Page 62 of the confirmed plan and the argument

23  made by Mr. Stempien here?

24          MR. SPINNER:  Indemnification?  The -- well, two

25  things.  First of all, there's no indemnification required

1  anymore, Your Honor, he's released the officers and said, I

2  will take an unsecured claim against the city for payment.  So

3  there's no -- no ability or requirement for indemnification

4  because there's no further charges against the officers.

5  That's part of the settlement agreement that's been executed.

6  And as to that --

7          THE COURT:  So it is your view that the reference in

8  the settlement agreement in Paragraphs 2 and 5 to the -- to

9  Mr. McKay having a general unsecured non-priority claim

10 subject to the treatment provided for such claims under any

11 Chapter 9 plan, does not -- it means the treatment provided in

12 Class 14 of the confirmed plan, not the -- not anything that's

13 provided in Paragraph O on Page 62 of the plan relating to the

14 indemnification of city employees.

15         MR. SPINNER:  Oh, absolutely, Your Honor.  As a

16 matter of fact, you know, if we really want to get to be

17 esoteric about this, most of the arbitration award was

18 entered.  In theory the 1983 claims merged with that and you

19 have an arbitration dollar award.  What is now against the

20 individual officers is a dollar --

21         THE COURT:  That was a binding arbitration, I

22 assume, by agreement.

23         MR. SPINNER:  I believe so.

24         THE COURT:  Yeah.

25         MR. SPINNER:  And then -- and that was exchanged and

1 merged into a settlement agreement and in the settlement

2 agreement the plaintiff unambiguously agreed to release the

3 city, its employees, and then -- and dismiss this case and in

4 exchange for that would receive a Class 14 unsecured claim.

5     The reasons for the entering into the agreement, I'm not

6 going to speculate.  I'm not allowed to speculate because it's

7 unambiguous.  There's no parol evidence really to speculate

8 upon.  It's -- this is -- it is what it is.  He was

9 represented by counsel.  It was executed and then -- and now

10 he's gone off and gotten an award or an order from the Court.

11 I would say that theoretically is in violation of the

12 injunction.  But I think this motion would probably take care

13 of that.

14     In effect, Your Honor, what we're looking for is the same

15 thing Mr. McKay is.  We're looking to have the settlement

16 enforced.  I think we just have different interpretations of

17 what that means.

18         THE COURT:  The entry of this order on March --

19 dated March 14, 2016 by the State Circuit Court, order

20 enforcing arbitration award that I -- I referred to a little

21 bit ago with Mr. Stempien, Exhibit 6 to the -- Mr. McKay's

22 motion.

23     That order seems inconsistent with your argument about

24 the settlement agreement having released any claims by Mr.

25 McKay against the individual officers.

1    MR. SPINNER:  Certainly would be my position, Your

2  Honor.

3    THE COURT:  So is there -- is there a problem

4  however in the fact that there is a State Court judgment or in

5  fact the order which I assume is a final order, that's

6  inconsistent with the city's position?

7    MR. SPINNER:  Insofar as that the order exists, Your

8  Honor, if it's entered in violation of the Bankruptcy Court

9  injunction that was entered with the plan, we could move to

10  have it set aside.  I mean technically speaking yes, the order

11  stands until it's set aside and probably needs to be set

12  aside.

13    I -- to be perfectly honest, I am not entirely familiar

14  with the circumstances of how the order was extracted from the

15  State Court.  But if --

16    THE COURT:  Well, how -- how would the order be in

17  violation of any sort of injunction, discharge order, or

18  injunction under the confirmed plan?

19    MR. SPINNER:  Well, and to the extent -- just at a

20  beginning without speculating on how many different ways.

21  Just going after the fact the city's officers were sued in

22  their official capacities, this order does not, I don't

23  believe distinguish between that.

24    Certainly it's not limiting itself in any way.  It's just

25  simply the defendants shall pay within 60 days.  So at a

1  minimum it should be corrected.

2      But I mean I would also say that regarding the

3  settlement, the settlement said I will dismiss this case.  And

4  he did not dismiss this case.  So I think the city would then

5  have a claim against him theoretically for damages.

6      I don't want to speculate on how far this goes.  I think

7  this can be resolved a lot more simply than all.  But if we're

8  following hypotheticals, that's where I would take it.

9      THE COURT:  The obligation to dismiss the city case

10 or the civil case in State Court, that's Paragraph 9 of the

11 settlement agreement.

12     MR. SPINNER:  Yes, I believe so, Your Honor.

13     THE COURT:  That says stipulation of dismissal with

14 prejudice.  And the form attached hereto is Exhibit B.  I

15 don't see any Exhibit B in the record.  What is Exhibit B?

16     MR. SPINNER:  You know, Your Honor, we have not

17 found Exhibit B either.  However, I believe when the Court

18 last looked at this there was that similar -- this was exactly

19 on all fours with the Phillips decision, Exhibit B was not

20 found.  But there was definitely an intent expressed within

21 the agreement that the underlying litigation that led to the

22 filing of the proof of claim was to be dismissed and the city

23 takes the position that that same intent is expressed here,

24 it's the same language exactly.

25     THE COURT:  All right.  Anything else you'd like to

1    say then, Mr. Spinner?

2              MR. SPINNER:  No, sir.  Thank you.

3              THE COURT:  All right.  Mr. Stempien, as counsel for

4    the moving party you can briefly reply if you want to.

5              MR. STEMPIEN:  Your Honor -- I'll get to the

6    lectern.  The only thing I'd like to point out is that there

7    has been no indication that they were sued only in their

8    official capacities.  And there's nothing in the arbitration

9    award that tells us how it was awarded against them.

10        They were sued as individuals.  We did not sue the City

11   of Detroit.  We did not bring them in and say they are -- you

12   know, this is the city's problem.  We sued individual officers

13   which is actually in the 1983, that's generally how it's done.

14        So to -- to -- I think it's just -- I don't think that

15   there's been an establishment.  I think that the fact of the

16   matter is we have an arbitration award that could have been a

17   judgment entered against three individuals with no indication

18   that it was in any -- in official capacity.  So I believe it

19   still falls within that one provision of the plan that we

20   talked about earlier.

21             THE COURT:  Entered against three individuals?

22             MR. STEMPIEN:  Correct.

23             THE COURT:  Who were those other than Meyer and

24   Watkins?

25             MR. STEMPIEN:  If I could, Your Honor.  It was

1  originally filed against Mr. Watkins, and then the lawsuit was

2  amended and we added three -- two other individual police

3  officers and the award was Officer Myron Watkins, Frederick

4  Persing, and Kevin Clark.

5          THE COURT:  Oh, I see.  They're named in the --

6          MR. STEMPIEN:  It's Exhibit 5 of my --

7          THE COURT:  They're named in the arbitration award.

8          MR. STEMPIEN:  Right.

9          THE COURT:  Yeah, okay, I got you.  All right.

10         MR. STEMPIEN:  Okay.

11         THE COURT:  Go on.

12         MR. STEMPIEN:  That's it.  That's all.

13         THE COURT:  All right.  Thank you all.  I'm going to

14  rule on this motion now.

15     Based on the argument presented in -- in the hearing

16  today and if this was not 100% clear in the papers filed by

17  the moving party and by the city before today's hearing, but

18  in the hearing it's now clear, that the moving party Mr.

19  McKay's theory here to entitlement from the City of Detroit of

20  full payment, the $42,500, the full amount of the -- what is

21  called the settled claim amount in Paragraph 2 of the

22  settlement agreement, must be paid at 100% rather than paid at

23  some -- with some lesser -- consideration of some lesser value

24  because of the terms of the confirmed Chapter 9 plan.

25     That that argument is -- that argument is the sum -- the

1  total amount of relief and really the only theory of relief

2  that ultimately is -- is argued here by the moving party, Mr.

3  McKay. And that means as -- as stated by Mr. Stempien,

4  counsel for Mr. McKay during the hearing made clear today, the

5  -- Mr. McKay agrees and acknowledges that the settlement

6  agreement provided for settlement of and release by him of the

7  -- his 1983 claims, or his -- his claims -- civil rights and

8  1983 claims against not only the City of Detroit whatever

9  claims there may be, but also against the individual officers

10 who were the subject of the arbitration award at issue.

11     And that's clear -- as the city argues, that's clear from

12 Paragraph 8 of the settlement agreement which by the way is in

13 the record as an exhibit to both parties' papers. I'm looking

14 at docket 11187 as my copy here, it's Exhibit B at that point.

15 It's also Exhibit 7 to the motion, docket 11157. That's the

16 settlement agreement.

17     The -- the settlement agreement is clear in Paragraphs 2

18 and 5 that what Mr. McKay was receiving as the sum total of

19 consideration running in his direction in exchange for

20 releasing his claims against the individual officers and the

21 city in Paragraph 8, is -- provides -- that provided in

22 Paragraphs 2 and 5 of the settlement agreement. That is in

23 the form of Mr. McKay being given -- a provision stating that

24 the claim Mr. McKay had filed in the City of Detroit's case

25 would be amended, modified, and allowed as a general unsecured

1  non-priority claim.  That's Paragraph 2.  In the amount of

2  $42,500.

3      The priority of the claim then is general unsecured

4  non-priority.  Paragraph 5 confirms that of the settlement

5  agreement, confirms that as well.  And says, "the parties

6  agree that any settled claim is a general unsecured

7  non-priority claim subject to the treatment provided for such

8  claims under any Chapter 9 plan for the adjustment of debts

9  confirmed by the Bankruptcy Court."

10      The -- Mr. McKay then is entitled to what he's entitled

11  to from the city as the sum total of what the city is

12  obligated to -- to provide to Mr. McKay under this based on

13  this settlement agreement, is whatever treatment the confirmed

14  Chapter 9 plan in this case provided for general unsecured

15  non-priority claims.

16      And that treatment in my view clearly is the treatment

17  provided in -- to Class 14 in the confirmed plan.  The

18  treatment of Class 14 is stated in the confirmed plan.  At

19  Page 44 of the confirmed plan, a copy of the confirmed plan is

20  attached to the order confirming plan, docket number 8272 on

21  file in this case.  And that treatment is certainly quite

22  different from full payment in cash of the full amount of the

23  allowed claim as argued by Mr. McKay.  It's the treatment that

24  provides for a pro rata share of certain amount of new B notes

25  and other distributions referred to in Class 14, but it is

1 definitely not full payment in cash and it is far -- far less

2 than that of the allowed claim.

3    Now Mr. -- that's clear in my view from the words used in

4 the provision, the stated -- the treatment of Class 4 claims

5 which are defined as allowed other unsecured claims, that's a

6 defined term on Page 44 of the confirmed plan.

7    It allowed -- there's no dispute that there's an allowed

8 claim here.  The -- the question is whether this claim of Mr.

9 McKay under the settlement agreement is a "Other Unsecured

10 Claim" within the meaning of the statement of treatment under

11 Class 14 on Page 44 of the plan.

12    In my view clearly it is.  The definition of -- of other

13 unsecured claim in the definitions of the confirmed plan on

14 Page 21 to 22, Paragraph 262 in my view, although you have to

15 parse through it, it's -- it's -- it's clear and unambiguous

16 that that includes the general unsecured non-priority claim of

17 the type which Mr. McKay was given as an allowed claim in this

18 Chapter 9 bankruptcy case under the confirmed Chapter 9 plan

19 by this settlement agreement, Paragraphs 2 and 5.

20    Mr. McKay has relied upon a provision in the confirmed

21 plan on Page 62 of the confirmed plan.  Again it's docket

22 8272.  The Paragraph O on that page which says for purposes

23 irrelevant to this motion, in -- in essence says that the

24 plan, the confirmed plan does not discharge or impair the

25 allegations of the city that the city otherwise has to

1  indemnify, defend, reimburse, exculpate, advanced fees and

2  expenses to or limit the liability of officers and employees

3  of the city.

4      As the movant's counsel acknowledged I think in today's

5  hearing, it is clear that the city's obligation to indemnify,

6  defend, reimburse, et cetera its employees, that was not

7  discharged given the language in Paragraph O on Page 62 of the

8  confirmed plan and otherwise, is an obligation that runs of

9  the city to its employees and not an obligation the city has

10 or that runs to any third party claimants who make claims

11 against employees and officers of the city like Mr. McKay.

12     And so the settlement agreement in my view and its

13 reference -- its language in Paragraphs 2 and 5 of the

14 settlement agreement, is clear and unambiguous given the clear

15 and unambiguous language of the confirmed Chapter 9 plan, that

16 the treatment of the allowed $42,500 claim that Mr. McKay has

17 under the settlement agreement or under the Chapter 9 plan, is

18 the treatment provided by in -- to holders of Class 14 claims

19 under the confirmed plan that I've already referred to and

20 nothing else and nothing more.

21     The city has no other obligation in my view under this

22 settlement agreement and under the confirmed plan than that to

23 Mr. McKay.  The -- and so Mr. McKay's motion which seeks an

24 order requiring the city to pay the full $42,500 allowed

25 amount of his claim is relief that cannot be granted, it would

1  be inconsistent with the confirmed plan.

2      And the Court must reject Mr. McKay's motion and

3  arguments to the contrary.  So for that -- those reasons Mr.

4  McKay's motion will be denied.  I will prepare and enter an

5  order reflecting this ruling and denying the motion.  Thank

6  you.

7          MR. STEMPIEN:  Thank you, Your Honor.

8          THE COURT:  The next motion then that I want to hear

9  that's on our agenda is the -- the motion filed by the city

10 seeking relief against Rodrick Siner.

11     For the record this motion was filed by the city on May

12 12, 2016.  It is at docket number 11159.  It's entitled City

13 of Detroit's motion for the entry of an order enforcing the

14 plan of adjustment injunction and the bar date order against

15 Rodrick Siner.

16     Now Mr. Spinner, you're on your feet.  You're

17 representing the city today in this hearing on this motion.

18 For the record I will ask, I think I know the answer, but I

19 will ask whether Rodrick Siner is present or if there's anyone

20 here on behalf of Mr. Siner.  I hear nothing.  Mr. Siner has

21 failed to appear at this hearing either in person or through

22 any attorney.

23     And the Court and the city counsel may well know why that

24 is or have good reason to suspect why that is, namely that Mr.

25 Siner is in prison in Alabama at the moment and did not try to

1 make any arrangements to participate in this hearing by

2 telephone as far as I know and has not hired counsel as far as

3 I know to represent him in this -- in this matter.

4      He did file a written response to the city's motion.  For

5 the record that appears at docket 11175.  It was filed on May

6 17, 2016.  The city filed a reply to that response on June 10,

7 2016 at docket 11261.

8      I have considered all of those documents.  I also have

9 reviewed and considered the document filed by Mr. Siner in

10 this Court two days ago, June 13th at docket 11279 entitled

11 motion to reschedule hearing.

12      I have not yet acted on that motion to reschedule

13 hearing.  For one thing a notice of deficiency had to be

14 issued with respect to that motion it was deficient in several

15 ways as identified in the deficiency notice that was filed

16 yesterday at docket 11281.

17      Mr. Spinner, let me ask you as counsel for the moving

18 party, the city, whether the city has a position regarding

19 whether the Court should grant or deny Mr. Siner's motion to

20 reschedule hearing filed two days ago.

21          MR. SPINNER:  Your Honor, we do not believe it is --

22 could be taken in good -- we suggest that the Court deny it.

23 The -- if I -- if I read Mr. Siner's motion correctly, he

24 would like it adjourned until he is either appointed counsel,

25 or he can appear in person which I believe he says would

1 happen approximately April of 2017.

2     That would mean that the -- if the -- if the Court were

3 to entertain it and adjourn it that long that would mean that

4 Mr. Siner's suit in the District Court could continue which

5 apparently he is able to manage from -- from prison for many

6 months before we would be able to adjudicate on whether or not

7 that is an illegal suit based on the plan injunction. So we

8 don't think that's a -- that's particularly well taken.

9     THE COURT: All right. Well, the short answer is

10 the city opposes Mr. Siner's motion to reschedule. I might

11 have considered ruling otherwise if the city had agreed to the

12 motion to reschedule in some way, but they -- they have not

13 and I'm going to deny Mr. Siner's motion to reschedule today's

14 hearing and I'll prepare and enter an order reflecting this

15 ruling.

16     I'm denying it for the following reasons. First, the

17 motion is untimely. It is filed much too late in time and

18 much too close to the date of the scheduled hearing in my

19 view.

20     Mr. Siner was mailed a notice of today's hearing on the

21 city's motion on May 19, 2016, just one day short of four

22 weeks before today's hearing date. And so shortly after that

23 Mr. Siner knew of the June 15 hearing date on this motion and

24 he waited until June 13 to file a motion to reschedule the

25 hearing. That's untimely in my view and it's denied for that

1  reason.

2      Second, Mr. Siner as -- as Mr. Spinner mentioned, Mr.

3  Siner asks in his motion to reschedule that the Court

4  reschedule the hearing until a later date that will allow him

5  to be present and present argument on his behalf, or in the

6  alternative, appoint counsel to represent him.  The Court

7  cannot appoint counsel to represent Mr. Siner in this matter,

8  there's simply no basis in law or under this Court's rules or

9  procedures, or the Bankruptcy Code to permit that.

10     This Court does have a pro bono counsel, volunteer

11 counsel program in which volunteer attorneys represent certain

12 debtors and sometimes certain creditors in certain bankruptcy

13 -- types of bankruptcy cases regarding certain issues.  But

14 they all have to do with issues of whether or not an

15 individual debtor is to obtain a discharge in a Chapter 7

16 case, or have a given -- certain types of debts excepted from

17 discharge in a Chapter 7 case.

18     The Court's pro bono program does not extend to a motion

19 of this type in this case.  And so this Court does not have

20 any ability to appoint counsel to represent Mr. Siner in this

21 matter or otherwise.

22     And as Mr. Spinner pointed out, Mr. Siner's motion to

23 reschedule this hearing indicates that he is incarcerated

24 until -- is not scheduled to be released from his

25 incarceration in Alabama until April 2017.  That is under the

1  circumstances far too long for this Court to wait to have --

2  to merely have a hearing on the city's motion under all the

3  circumstances.

4      And so for those reasons I'm -- I'm denying Mr. Siner's

5  very late filed motion to reschedule today's hearing and we're

6  going to go forward with today's hearing.  And as I said, I'll

7  prepare and enter an order reflecting that ruling.

8      That brings us then to the city's motion.  And while I

9  have denied and am denying Mr. Siner's motion to adjourn or

10 reschedule today's hearing on the motion, I am not defaulting

11 Mr. Siner for his failure to appear at the hearing today.

12     That is I'm not going to rule against him in any part or

13 in any way because of his failure to appear at today's

14 hearing.  If I rule against him it will be based upon the

15 merits of this dispute rather than any sort of default by Mr.

16 Siner's failure to appear today.

17     And I do -- I do that because in this case it's obvious

18 and -- and well known to the Court, Mr. Siner's made known to

19 the Court that he -- that it is physically impossible for him

20 to appear at today's hearing and argue his -- his position.

21     I have considered, however, the position and argument he

22 made and facts he alleged in his written response to the

23 city's motion that I referred to earlier as well as of course

24 the city's arguments.  Now I will give counsel for the city an

25 opportunity to argue the motion since they have appeared at

1 today's hearing.

2      So Mr. Spinner, I'll do that now.  What do you want to

3 say about your motion?

4           MR. SPINNER:  Thank you, Your Honor.  Well,

5 obviously you've been considering it.  Also I will keep it

6 extremely brief.

7      In short, Mr. Siner filed suit against the city in the

8 District Court on October 8th, 2015, commenced the case

9 15-13532 against the city and several John Doe police officers

10 which he sued in their official and individual capacities --

11 capacities asserting various violations of constitutional

12 rights.

13      And the city for protection has appeared and answered.

14 The short answer is that Mr. Siner is not allowed to do this.

15 He's filed -- the filed bar date order at docket 1782,

16 Paragraph 22 bars people from asserting pre-petition claims

17 against the city after February 21st, 2014.

18      The plan at docket 8045 which Your Honor has cited the

19 confirmation order confirming said plan contains a similar

20 injunction in Article 3(d)(5).  Siner -- Mr. Siner responds

21 that the discharge could not cover future events and he cites

22 the revocation of his Alabama parole on October 13th, 2015

23 which he says he could not have foreseen to -- to which the

24 city responds that first in his complaint he says he was

25 warned about this by his parole officer when the warrant for

1  his arrest and his subsequent arrest took place sometime

2  between 2010 and 2012 which clearly means he must have been

3  aware of it since his parole officer -- he alleges himself, he

4  admits his parole officer told him this would be the outcome.

5      And also as an aside technically though he clearly saw

6  how the hearing was going to go because he filed -- he mailed

7  the complaint to the Court September 29th, two weeks before the

8  parole hearing alleging that his parole had been denied, so

9  either he has a crystal ball or pretty good idea what was

10  going on.

11      The Court has already considered how to decide whether a

12  claim arises pre or post-petition.  For the record the issued

13  opinion is at docket 11089.  And so the Court settled on the

14  fair contemplation test to make the determination.  And the

15  simple question is with reasonable due diligence could the

16  claimant here Siner, assert ascertaining they had a claim

17  pre-petition and as we've just stated yes, he admits that his

18  parole officer warned him.  So he did not even need to

19  exercise due diligence, he was informed that this could very

20  well be the outcome.

21      So he knew this -- this could have happened.  This was

22  all pre-petition conduct and therefore it's all subject to the

23  bar date and the injunction and the claims against the city

24  and their officers at least in their official capacity, are

25  barred.

1      And I think that's pretty much the majority.  The only

2   comment I would mention is that he did mention, and since

3   we're dealing with Mr. Siner in full fairness, he mentions he

4   did not get notice of the bar date.  He raised that in his

5   motion to adjourn, although it's not technically up for the

6   Court.

7      It's also not relevant for this particular question.  If

8   he feels he needs to file a motion to file a late filed claim

9   he can -- he can do so.  We can deal with it at a future time.

10  But I wanted to respond fully to all of his -- his comments.

11  Other than that if Your Honor has any questions, happy to

12  address them.  But I think you've -- you've covered it.

13          THE COURT:  I don't have questions, thank you.  I'm

14  going to rule on this motion now as well.

15     This motion by the city will be granted.  It's clear and

16  -- it is clear from the facts and the circumstances presented

17  here that in filing this action that he filed in U.S. District

18  Court on or about October 8, 2015, Mr. Siner filed a lawsuit

19  against the City of Detroit based on a pre-petition claim.

20  That is a claim that he has against the City of Detroit that

21  arose well before the city filed its bankruptcy petition in

22  this Chapter 9 case on July 18, 2013.  That was the bankruptcy

23  petition date.

24     Mr. Siner's complaint and -- and his claim are claims

25  against the city whatever validity or merit they may have or

1  may have had are based on actions and arise from actions,

2  wrongful actions allegedly taken by one or more officers of

3  the -- police officers of the city back in 2010.  On or about

4  April 13, 2010.

5      The complaint is based upon an alleged violation of Mr.

6  Siner's constitutional rights that occurred he says and

7  alleges when an arrest warrant was issued by the Detroit

8  Police Department on April 13, 2010 against him on criminal

9  charges.  His complaint is based entirely on that as the

10  wrongful action by the city and city officers that form the

11  basis of his claim or claims against the city.

12      That is clearly a pre-petition claim in the sense that it

13  arose well before the city filed its Chapter 9 bankruptcy

14  petition in July 2013.  The -- while Mr. Siner argues in his

15  written response that he only suffered the most serious

16  damages that he complains about, that is the revocation of his

17  parole in Alabama that led to his incarceration that he still

18  suffers from in Alabama according to his response, while that

19  occurred after the filing of the bankruptcy petition, that is

20  not dispositive of the issue in my view of when the claim or

21  claims by Mr. Siner against the city arose for bankruptcy

22  purposes.

23      As the city points out in their response, the Court

24  recently issued an opinion discussing at length the law

25  concerning when a claim against a bankrupt debtor is deemed to

1 arise for bankruptcy purposes.  And when -- and whether it is

2 deemed to arise before or after the filing of a bankruptcy

3 petition.

4     I want to reiterate and incorporate by reference

5 everything I said in -- in my recent opinion filed in this

6 case on that subject.  For the record the opinion was filed by

7 me as -- as an amended opinion.  It was filed on April 19,

8 2016 and it is reported at 548 B.R. 748, a decision again from

9 April 19, 2016.

10     In that opinion, that lengthy opinion and in particular

11 at Pages 761 to 763 of the Court's opinion in that case, the

12 Court discusses the fair contemplation test as the proper test

13 for determining whether a claim arose pre-petition or

14 post-petition for bankruptcy purposes and then apply that test

15 to three different sets of claims that had been brought

16 against the city and ruled as to whether they were pre or

17 post-petition.

18     The claim of Mr. Siner, or claims of Mr. Siner clearly

19 arose pre-petition.  The alleged wrongful conduct by the city

20 arose and Mr. Siner was well aware of the wrongful conduct,

21 far and long before the bankruptcy petition date.

22     The fact that Mr. Siner suffered damage or additional

23 damage from that alleged wrongful conduct by the city that he

24 was aware of well before the bankruptcy petition date after

25 the petition date and continues to suffer some adverse affects

1 after the petition date from such pre-petition conduct does

2 not make the claim arise after the filing of the bankruptcy

3 case for bankruptcy purposes.

4     Rather clearly this claim arose before the filing of the

5 bankruptcy petition.  The consequences of that conclusion is,

6 that the filing and prosecution of that lawsuit in District --

7 U.S. District Court that's at issue in this motion by Mr.

8 Siner was a violation of the discharge injunction in the

9 confirmed Chapter 9 plan and the claim -- the so-called bar

10 date order, both of which are cited and discussed in detail in

11 the city's motion.

12     I agree entirely with the city on their arguments that

13 the -- Mr. Siner's actions in filing and prosecuting that

14 lawsuit in U.S. District Court was barred, is barred and

15 prohibited by the discharge injunction and the bar date order

16 in this bankruptcy case.

17     And so the city is entitled to the relief they request.

18 The -- Mr. Spinner, I'll ask you to submit the proposed order

19 that was attached to the motion.  I will ask you to make one

20 change in the order.

21     In Paragraph 2 of the order it requires Mr. Siner to

22 dismiss or cause to be dismissed with prejudice his claims in

23 the city -- or the U.S. District Court case within five days

24 after the entry of this order.  That -- that is perhaps a bit

25 too soon of a deadline for Mr. Siner given that he's in -- in

1  prison in Alabama.

2      And so I'm going to make it 14 days.  So I'll say no

3  later than, and so I'll just say no later than and then put in

4  the specific date that is 14 days after today which is June

5  29.  So, no later than June 29, 2016, Frederick Siner shall

6  dismiss or cause to be dismissed, et cetera as it -- as it

7  reads there.

8      And then I -- I'll ask you to submit the order as

9  revised.  I will modify probably in some non-substantive ways

10 the first paragraph text of the order to recite the Court

11 having held a hearing today and -- and -- and so forth.  But

12 other than that the order is fine and I'll ask you to submit

13 that and I'll waive presentment of the revised order.  Any

14 questions about what's needed there, Mr. Spinner?

15         MR. SPINNER:  Crystal clear, Your Honor.

16         THE COURT:  All right.  Thank you.  As I said, I'll

17 prepare and enter the order regarding denying the motion to

18 reschedule the hearing.

19     All right.  That next brings us to the remainder of the

20 agenda for today which is the city's forty-fourth omnibus

21 objection to certain claims.  The city's forty-fifth omnibus

22 objection to certain claims.  And then an adjourned hearing

23 regarding numerous claims that were the subject of several

24 previous omnibus objections to claims heard earlier dates

25 which were adjourned for purposes of being treated together

1  and argued at today's adjourned hearing.

2      I think all of these matters concern basically the same

3  issues.  And so I think we'll consider them all together and

4  those -- we'll hear first from counsel for the city regarding

5  these omnibus objections to claim.  And then anyone who is in

6  the Court who wants to be heard regarding these, any of these

7  matters insofar as it concerns a claim of theirs.  Or if

8  you're an attorney, a claim of your client's in this case will

9  have an opportunity to be heard today in this hearing.  So,

10  Mr. Spinner.

11         MR. SPINNER:  Well, Your Honor.  Thank you.  You've

12  taken pretty much most of the words out of my mouth here

13  today.  Pretty much I was going to suggest we do them all

14  together so that's -- that's absolutely appropriate.

15      What we were going to propose is that I would review the

16  procedure of how we got here and the docket entries and then

17  Mr. Willems would argue the brief.  But Your Honor has been

18  doing a fabulous job keeping the docket up to date so if you

19  don't need me at all, I could just turn it over to Mr. Willems

20  to argue his brief, or I can go through the procedure,

21  whatever suits the Court.

22         THE COURT:  I think you should briefly describe the

23  procedure and the background a bit here as to the claims --

24  objections other than the forty-fourth and forty-fifth omnibus

25  objections for the benefit of those who are present who don't

1  have counsel and -- and may benefit from hearing a bit about

2  the background on this.

3          MR. SPINNER:  Happy to do so.  On July 9th, 2014 the

4  Court entered the order pursuant to 11 USC Section 105(a) and

5  Federal Rule of Bankruptcy Procedure 3007 approving claims

6  objection procedures.  That's at docket 5872 of the claims

7  procedures order.

8      And at two on that order it allows the city to file

9  omnibus objections with respect to claims that do not identify

10  a valid basis for any liability of the city.  On February 26,

11  2016, the city filed omnibus claim objection twenty through

12  thirty-four and that's docket numbers 10776 through 10790.

13      Fifty-three Detroit employees filed responses that were

14  not stricken that raised similar issues with respect to terms

15  of employment and the imposition in large part on city

16  employment terms.

17      On March 24th, fifth, and April 7th of 2016, the city filed

18  ex parte motions to establish an orderly process for hearing

19  and determining these claims.  And those were at docket

20  numbers 10931 and 11050.

21      On March 10th, we also filed two more omnibus objections

22  which related omnibus number thirty-six and thirty-seven at

23  docket numbers 10811 and 10812.

24      The city ordered -- entered orders granting our ex parte

25  motions.  Those were entered at docket numbers 10941, 11035,

1  and 11054.  And they were served upon the various claimants

2  and the certificates of service are at docket numbers 10966,

3  10987, 11070, and 11071.

4      Taken collectively these orders allowed the city the

5  opportunity to explain collectively why employee obligation

6  claims fail as a matter of law and thus on April 21st the city

7  filed its supplemental brief in support of expungement or

8  disallowance of claims of employee obligation claimants at

9  document number 11 -- 11102.  No responses were filed now so

10 the employee obligation claims from those omnibus objections

11 are up for hearing today.

12     On May 12th, subsequent to that the city filed its

13 forty-fourth and forty-fifth omnibus objections for claimants

14 who asserted claims that the city believed were in the same

15 vein as those subject to the -- of the legal arguments in the

16 supplemental brief.  And those were filed, those omnibus

17 objections were filed at docket numbers 11162 and 11163.

18     There were a number of timely responses to the

19 forty-fourth and forty-fifth omnibus objections and a number

20 of parties asserted that they were in positions funded by

21 grants provided outside the city and thus for various reasons

22 the city employment terms should not apply to them.

23     The city does not wish to rush to judgment on those.  It

24 wishes to afford additional time to investigate and resolve

25 them as to the extent possible.  So I filed an ex parte motion

1 | to adjourn the hearing for these particular claimants at

2 | docket number 11255 and the Court granted that at document

3 | 11265.

4 | The city served all the parties affected by this by

5 | overnight service this past Friday at document number 11267 so

6 | the affected parties should have got notice of that.  None of

7 | them have been returned, so they should all know they do not

8 | need to show up today.

9 | Of course some responses have subsequently been stricken

10 | for various deficiencies.  If the Court wishes, I can read in

11 | the list of claimants who were scheduled to be heard today but

12 | which were adjourned, or I can skip that.

13 | THE COURT:  One second.

14 | MR. SPINNER:  Certainly.  There were 20 in all I

15 | think.  Fourteen for the forty-fourth and six for the

16 | forty-fifth.  And the reason for the size discrepancy, the

17 | forty-fourth was the first 100 and the remaining I think 40 or

18 | so were in the forty-fifth.

19 | THE COURT:  Just a minute, please.

20 | MR. SPINNER:  Sorry.

21 | THE COURT:  I -- I think, yes.  I will ask you to

22 | read the names of those who were -- whose claims were the

23 | subject of the forty-fourth and forty-fifth omnibus claim

24 | objections which are being heard for the first time today.

25 | MR. SPINNER:  Well, first time today are the ones

1   who are being adjourned.  I don't have --

2           THE COURT:  Just let me finish.

3           MR. SPINNER:  I'm sorry.

4           THE COURT:  Those omnibus claims objections are

5   being heard today except as to those individuals whose claims

6   -- the objection to claim has been adjourned by the Court's

7   order that was entered on June 10th that you referred to.  So

8   as to those individuals whose -- for whom the hearing on the

9   claim objections have been adjourned to August 31 at 1:30

10  p.m., I would like you to read those names.

11          MR. SPINNER:  Sure.

12          THE COURT:  For the record and for the benefit of

13  anyone who has come to the hearing today, if your name is read

14  now, understand that you -- your claim is not scheduled for

15  hearing today, it's been adjourned for a hearing on August 31

16  at 1:30.  You're not required to be here and there's nothing

17  to argue -- for you to argue today about your claim, but of

18  course everyone who is here is welcome to be here.

19      This Court is open to the public.  And anyone whether

20  they have a claim or not in the city case is -- is --

21  certainly may attend and listen to the hearing.  So with that

22  said, Mr. Spinner, would you read the names of those who are

23  -- whose claim -- the objection to whose claims are not being

24  heard today but rather have been adjourned to August 31 at

25  1:30 p.m.

1          MR. SPINNER:  Absolutely.  Would you like just the

2    name or the name and the docket number of their response?

3          THE COURT:  Just read the names and speak up so

4    everybody will hear you.

5          MR. SPINNER:  Yes, sir.  Michelle Duff, Anthony

6    Derrick Smith, Hope Strange, Dinah L. Bolton, Jacqueline M.

7    Jackson, Fern Clement --

8          THE COURT:  Hold it, Mr. Spinner -- Mr. Spinner,

9    let's do it this way.  I'm following along.  I want you to

10   read it in the order that it appears in the order adjourning.

11   Do you have that there?

12         MR. SPINNER:  I do.  And for further clarification,

13   I believe -- I recognize some of these names have been

14   recently stricken.  Their responses have been stricken for

15   various deficiencies.  If the Court will indulge me just a

16   moment.

17         THE COURT:  Just read the names that are in the box

18   on Page 2 of the June 10 order 11265.  That's what I want you

19   to do.

20         MR. SPINNER:  Yes, Your Honor.  I had to get the

21   order in front of me.

22         THE COURT:  All right.  If you have that order in

23   front of you, go ahead and again speak up.

24         MR. SPINNER:  I will.  Dinah L. Bolton, Gueelma

25   Brown, Fern Clement, Stephanie Crews, Brenda L. Davis,

1 | Michelle Duff, Warren T. Duncan, Gerhard Eady, Jacqueline M.

2 | Jackson, George A. Kaw, Kim McCoy, Sandra O'Neal, Diane L.

3 | Onuigbo, Diana Lynn Patillo, Marlene Y. Robinson, Anthony

4 | Derrick Smith, Hope Strange, Randall Thomas, Ranna K. Trivedi,

5 | and Darrell S. Carrington.

6 | THE COURT: All right. Thank you. Again those are

7 | the names of individuals whose claims are not being discussed

8 | in today's hearing. The city's objection to your claim if

9 | you're on that list that was just read is -- has been

10 | adjourned to August 31 at 1:30 p.m. You need to be here then

11 | for that if you want to appear and be heard about it.

12 | Now, that concerns the individuals whose claims were part

13 | of the city's forty-fourth and forty-fifth omnibus objections

14 | to claim. There is a list of it looks like about 49 people

15 | whose claims were the subject of earlier objections to claim

16 | but which the hearing of which has been adjourned to today.

17 | MR. SPINNER: Yes.

18 | THE COURT: Under the procedures you described,

19 | including the city's filing of its brief on April 21 talking

20 | about the -- the city employment terms and the employee

21 | obligation claims.

22 | So is -- unless there's any further background that you

23 | wish to give then, Mr. Spinner, we'll -- we'll hear argument

24 | from the city on the merits of the -- these arguments.

25 | MR. SPINNER: Only that there's six remaining from

1  the forty-fourth and forty-fifth.  And I believe Mr. Wolfe's

2  was just stricken by the Court prior to this hearing for a

3  deficiency.  So that leaves James Capizzo, Carla Smith, Gladys

4  Cannon, and Gerald Moore from the forty-fourth going forward

5  today and Renee Tollman for the forty-fifth.  And that ends my

6  portion and I will turn it over to my colleague.

7           THE COURT:  Well, wait, Mr. -- excuse me, if Mr.

8  Wolfe is present, I will allow him to be heard today in the

9  hearing.  I'll allow him to speak if he's here and he wants to

10 speak about the names that you just went through.

11      But the names you just went through are the names of

12 individuals who filed responses, written responses as they

13 were required to do to the city's forty-fourth and forty-fifth

14 omnibus claim objections and there are other names of

15 individuals who were subject to those objections who are not

16 being adjourned or who did not file a written response.  And

17 as to those, I -- I assume the city is seeking an order

18 granting the -- sustaining the objection to claim and

19 disallowing the claims.

20          MR. SPINNER:  Yes, Your Honor.

21          THE COURT:  All right.  So if the city is ready to

22 argue the merits, go ahead.

23          MR. WOLFE:  Your Honor, you wanted to hear from Mr.

24 Wolfe.  I wanted to --

25          THE COURT:  Are you Mr. Wolfe?

1          MR. WOLFE:  Yes.

2          THE COURT:  Well -- well, as I said, I'll give you

3   an opportunity to speak, Mr. Wolfe after we hear from the

4   attorney for the city.

5          MR. WOLFE:  Okay.  Thank you.

6          THE COURT:  As I will give the others who are --

7   whose claims are up today, I'll give everyone else a chance to

8   speak.  Go ahead, Mr. Williams is it?

9          MR. WILLEMS:  Willems, Your Honor.

10          THE COURT:  All right.  Go ahead, Mr. Willems.

11          MR. WILLEMS:  It's E-m-s at the end.

12          THE COURT:  Go ahead.

13          MR. WILLEMS:  Thank you, Your Honor.  The -- what

14   I'm going to do is just address briefly the general principles

15   about which we are asking the Court to expunge with -- with

16   all these -- these claims or disallow these claims.

17          THE COURT:  Mr. Willems, let me ask you to speak up.

18          MR. WILLEMS:  Yes, okay.

19          THE COURT:  Apparently there are some folks in the

20   back of the courtroom that are having trouble hearing.  I want

21   to make sure they hear.  So I'm trying to speak up, hopefully

22   I'm not yelling.

23          MR. WILLEMS:  I'll move the mike a little closer.

24          THE COURT:  Yeah, please do.

25          MR. WILLEMS:  How is that?

1          THE COURT: All right. Go ahead.

2          MR. WILLEMS: Okay. So we have essentially three

3 arguments, two of which apply to all of the claims and one of

4 which applies to a certain subsection.

5          As we reviewed these claims, we noticed that all of them

6 seem to have at least to a great degree or exclusively claims

7 based on the reductions in pay and benefits that took place

8 under what are known as the CET's, the city employment terms.

9 The city employment terms were imposed on city employees both

10 union and non-union in July of 2012 after the city entered

11 into a consent agreement or a financial stability agreement

12 with the state under what was then Act 4 which was in effect

13 at the time. That's PA-4 of 2011.

14          The -- under -- under that -- under Act 4 and under the

15 consent agreement, the city's duty to bargain with its unions

16 was suspended for the period of the consent agreement. And

17 that means that under -- under the Public Employment Relations

18 Act normally the city is required as a public employer to

19 bargain with the duly elected representatives of its

20 employees, in this case the unions ASFCME, SAAA, et cetera.

21          Under -- under the consent agreement under Act 4 that

22 duty was suspended for a period of time and so the city was

23 legally allowed to impose terms and conditions of employment

24 on its employees. And that was true whether it was a union

25 employee or not because basically unless you had a collective

1 bargaining agreement you were an at will negotiable employee

2 in any case.

3    So as part of the requirements under the consent

4 agreement, certain financial efficiencies had to be instituted

5 and a lot of those ended up being labor costs that were

6 addressed in the CET's. And what -- what we see in these

7 claims are pretty much the -- the same -- the same sort of

8 claims of reductions in pay and benefits that -- that you see

9 that were imposed in the CET's, the 10% wage loss, the

10 reduction in -- in various holidays, bonuses, longevity,

11 elimination, and loss of vacation days, swing, and election

12 holidays, holiday pay, paid lunch hours, increased health care

13 costs, changes in welfare benefits, freezing of reserved sick

14 banks, all those kinds of things.

15    And to practically every claim with one or two exceptions

16 I think, had some component of those reductions in them as

17 their claim. In some cases the CET's were specifically

18 referenced, in other cases they were not, but in any case the

19 -- the specifics of the claims comported precisely with the

20 reductions in -- in the -- in the pay and benefits that were

21 imposed under the CET's.

22    Our argument on -- on this process is that there's really

23 no valid underlying legal claim here. The CET's were lawfully

24 imposed under Act 4. To the extent that there were any

25 challenges they were rebuffed by -- by the Courts. In fact

1  there were really only three legal challenges, two of which

2  we've cited in our brief.  The Detroit Police Officers

3  Association brought two separate cases attempting to argue

4  primarily because they're a public safety union that they had

5  still retained rights to negotiate the terms and conditions of

6  employment despite the fact that there was -- that there were

7  CET's in place and that there was a -- a consent agreement in

8  place.

9       The Courts rejected those and as you may know

10  historically Act 4 was suspended pending a referendum and at

11  that point the Detroit Police Officers Association went back

12  into Court and tried to get the CET's overturned and the

13  Courts rejected that.  Those cases were all up on appeal when

14  the -- when the city was placed in receivership and ultimately

15  the appeals were withdrawn.

16       So the -- the first reason for disallowing or expunging

17  these claims is that there's no valid underlying legal claim.

18  The city was within its rights to impose the CET's.  There is

19  no -- no challenge that -- that undermines that argument and

20  the -- the claims should be disallowed for that reason.

21       The second reason for disallowing some of these claims is

22  that they appear to be based on the actions of the emergency

23  manager.  As you -- as you know, in -- in March of 2013, the

24  city was placed in receivership and it was placed under the

25  guidance of -- of an emergency manager.  This time under Act

1  436 which is the -- the successor statute to Act 4 and

2  contains a lot of the same provisions.

3      But in effect under receivership the emergency manager

4  also has no duty to bargain collectively under the Public

5  Employment Relations Act.  And so there were further terms

6  imposed by the -- by the emergency manager and specifically

7  the claims, some of these claims, and I think we've identified

8  them in our brief, allege that in addition to the CET

9  reductions the emergency manager also imposed an annuity and

10  pension freeze under emergency manager order number 21.

11      And those claims should be expunged or disallowed for the

12  same reasons that these were lawful actions taken by the

13  emergency manager.  There is no underlying legal claim that --

14  that can be brought for any -- any reductions in pension or

15  annuities.

16      Finally, all of these -- well, all but I think two of the

17  claimants are union members and they belong to various unions.

18  The -- the bulk of them are AFSCME, American Federation of

19  State County and Municipal Employees which has a number of

20  locals throughout the city and various departments.

21      There are also members of several other unions which

22  we've identified in our brief.  And all of these unions

23  themselves are members of what is called a coalition of

24  Detroit unions.  The coalition and AFSCME both have their own

25  proof of claim pending which is -- covers all of the claims

1 relating to the CET's that are brought here by the individual

2 claimants.

3     So in essence these claims are duplicative of the omnibus

4 union claims. The -- the Court is probably aware of both the

5 AFSCME claim and the coalition claim. And we have attached

6 those to our brief to demonstrate that the -- the claims

7 brought by the unions are in fact the same kinds of claims

8 that are brought by the individuals.

9     And being duplicative the individuals obviously the

10 question for the Court is, if I have duplicate claims which

11 one do I honor, which one prevails. And it's pretty clear

12 under Michigan law that it would be the union claims that

13 prevail.

14     The CET's as you recall were imposed under -- under an

15 amendment to PARA that was made as a result of Act 4. They --

16 they are -- are part of collective bargaining law in this

17 state or they were at that time.

18     And the -- they supplanted the collective bargaining

19 agreements. But they did not, although there was no duty to

20 bargain with the unions, the unions still continued to be the

21 duly elected representatives of the unions. And the CET's

22 recognize that. They continued to have a grievance process.

23 They continued to have, you know, the whole relationship and

24 infrastructure between employer and union was still in place

25 under the CET's.

1    And it's -- it's kind of a basic principle of -- of labor

2  law where you have a union in place that the employer has to

3  deal with the union.  It's got to negotiate with the union it

4  cannot deal with employees individually, cannot negotiate with

5  employees individually, it's their elected representative that

6  manages the entire employment relationship.

7    If there's a problem there, the recourse is against the

8  union as we pointed out in our brief and a duty of fair

9  representation claim against the union.  But in -- but the

10  basic terms and conditions and relationships with the employer

11  are in the hands of the union and that's by law, that's under

12  PARA.

13    In fact if we were to attempt to settle any of these

14  claims with the individuals we would probably hear from the

15  unions fairly quickly because we would be in fact violating

16  PARA on an attempt to do so.  Remember each one of these

17  claims is not an individual claim, it's a claim about a policy

18  that affected all employees.  The -- the policy being

19  expressed in the CET's.  So we have those three reasons why

20  these claims should be disallowed or expunged.

21        THE COURT:  Well, with respect to your argument

22  about duplicate claims --

23        MR. WILLEMS:  Yeah.

24        THE COURT:  This -- this last argument you've

25  referred to.  What is the current status of the proceedings

1  and the city's objections to the claims of AFSCME and the

2  coalition of unions.  You -- I -- you know, we -- we -- the

3  Court has entered orders, several orders over the last few

4  months extending deadlines.

5           MR. WILLEMS:  Yes.

6           THE COURT:  That the Court set a year or so ago

7  originally for the filing of summary judgment motions, and

8  briefs, and hearings.  The -- the latest order if -- if I read

9  it correctly sets as the first deadline for summary judgment

10 motions to be filed, it's now June 28th this month.

11          MR. WILLEMS:  Correct.

12          THE COURT:  But I -- I thought I recalled seeing in

13 some of the papers, including stipulations for recent

14 extension orders, some indications that at least in principle

15 the dispute between the city and these -- the AFSCME and the

16 coalition regarding these claims has been settled, at least in

17 principle.

18          MR. WILLEMS:  The claims have -- in principle.  And

19 in fact we've -- we've --

20          THE COURT:  So what is the status there?

21          MR. WILLEMS:  Okay.  We've gone a step beyond that.

22 We have a document now that has been agreed to by council and

23 it is now going through the ratification process in the city.

24 As you know all agreements have to be ultimately ratified by

25 city council and that's the process that we're in now.  So we

1  have -- we have a -- a complete settlement of both claims

2  subject to ratification.

3         THE COURT:  And that would include --

4         MR. WILLEMS:  As far -- my understanding is, it's

5  been ratified on the union side.

6         THE COURT:  It has been?

7         MR. WILLEMS:  Yes.

8         THE COURT:  The -- if the settlement is approved by

9  city council then the -- the settlement would settle any

10 claims, any and all claims of these claimants AFSCME and the

11 coalition of unions that you say are duplicates of claims some

12 of these individuals have brought, is that right?

13        MR. WILLEMS:  They would, they would.

14        THE COURT:  And is it the city's position that --

15 that whatever the -- the Court may rule on the city's

16 arguments made today that all of these claims that have to do

17 with the individuals' claims that have to do with the city

18 employment terms, imposition of city employment terms, the

19 employee obligation claims, the merits of those claims.  That

20 is the city's argument that there are no valid claims, no

21 legal -- valid legal claims for those things.  Whatever the

22 Court rules on that, that's not going to be binding on AFSCME

23 and the coalition of unions for purposes of their claims?

24        MR. WILLEMS:  Well, it depends on what you -- how

25 you rule, Your Honor.

1          THE COURT:  In other words part -- part of your

2     argument, I think --

3          MR. WILLEMS:  Yeah.

4          THE COURT:  Part of your argument is the same

5     argument that had you not settled but gone to litigation on

6     the AFSCME and coalition claims you would be making there.

7     And you would be asking the Court to rule on there.

8          That is the argument I assume is in there that -- the

9     city's argument that you're making now which is that the

10    imposition of the city employment terms, both before and after

11    the emergency manager was appointed under the Act 436, the

12    ones under Act 4 and Act 436, were lawfully done and cannot

13    give rise to any valid claim by anyone.

14         That's -- that's an argument that you -- the city was

15    maintaining against AFSCME and the coalition of the unions on

16    -- on that part of their claim that had to do with that,

17    right?

18         MR. WILLEMS:  On that part, yes.  They also had

19    other claims but yeah.

20         THE COURT:  Yeah.  And that was in there.  And so

21    that as to the AFSCME and the coalition union claims, that's

22    in the process of -- of being settled, assuming the city

23    council ratifies it, it's -- it's settled and isn't going to

24    be litigated.  But, you know, if something happens and city

25    council doesn't ratify and there is no settlement and the

1  matter has to be litigated, if I rule today on the merits of

2  these arguments you're making now in connection with these

3  individual claims is it your view that's going to bind the

4  AFSCME and the coalition of the unions or not?

5          MR. WILLEMS:  Well, I suppose there would be parts

6  of it that might end up being law of the case, yes.

7          THE COURT:  Well, except --

8          MR. WILLEMS:  I mean obviously the --

9          THE COURT:  Except AFSCME -- except your -- your

10  position is that AFSCME and the coalition of unions are the

11  prima parties to bring those claims if anyone and they're not

12  here, right?

13      They weren't given an opportunity to respond to the

14  city's April 21 brief and they're not participating in these

15  objection to claims in the individual claims.  And your

16  objections are not stated as -- the ones before me today are

17  not stated as objections to the AFSCME and the -- and the

18  coalition union claims.

19      So I'm wondering how they're going to be -- they're not

20  going to be bound by what I rule today, but on the other hand,

21  you know, if I rule on the merits today, you know, you're

22  going to -- you'll probably be -- be thinking well, the Judge

23  isn't going to rule inconsistently with that later on.

24      So I -- I have this question about whether as a legal

25  matter AFSCME and the coalition of unions would be bound by

1   any ruling that I make on the merits of your argument that

2   you're making today with respect to these many individual

3   claims.  And I guess similar -- a similar concern that -- or

4   question about -- about what -- whether the Court should wait

5   to rule on the merits of all the -- of these arguments until

6   we see whether the settlement is actually going to go through

7   with the AFSCME and the coalition.  Or -- or in the

8   alternative result in litigation, a litigated result.

9            MR. WILLEMS:  I'm sorry, or --

10           THE COURT:  A litigated result.

11           MR. WILLEMS:  Oh, oh, yeah, right, right.

12           THE COURT:  Do you see the concern I have?

13           MR. WILLEMS:  No, I -- I understand.  So I guess

14  here's my response to that.  As I was sitting here, you know,

15  prior to coming up to argue, I was thinking really the -- the

16  -- the real issue here is the duplication issue.

17       And -- and that almost by itself kind of swallows the

18  rest of the -- the -- the arguments here because really these

19  claims under the CET's should and can only be brought by the

20  unions.  And to the extent there are duplicate -- there's

21  duplication here, they, you know, they should be subsumed in

22  the -- in the union claims and withdrawn or expunged or

23  whatever as individual claims.  Because that's -- that's

24  either going to settle or litigate all these issues.  And

25  whatever the results of that will be will affect these

1 | claimants.

2 | THE COURT: I would have thought that is the more

3 | difficult issue. That's how it struck me. That's a more

4 | difficult issue you know, when you get into issues about

5 | whether the individuals have right to bring their own claims

6 | here or not. That doesn't strike me as a -- as a simple

7 | issue, a simple matter.

8 | If you're right about the merits, however, that is fairly

9 | clean and simple issue to deal with one way or the other. If

10 | you're right or you're wrong. But I had this concern about

11 | the impact if any on the pending settlement.

12 | MR. WILLEMS: I understand, yeah. We were -- got a

13 | little bit of a crossfire going here that we need to be

14 | sensitive to. Is the Court suggesting that we adjourn pending

15 | what happens with the AFSCME cases?

16 | THE COURT: Well, I, you know, I'm not wild about

17 | that idea. We've got everybody here and --

18 | MR. WILLEMS: Right.

19 | THE COURT: Today is the day for the hearing on

20 | this. And you've made -- you've made arguments about the

21 | merits here.

22 | MR. WILLEMS: Right.

23 | THE COURT: Not just this duplication argument. How

24 | soon will we know do you think whether or not city council has

25 | -- has ratified this settlement with the -- the unions?

1          MR. WILLEMS:  At this point, I think we may need one

2     more adjournment to finish it off.  But that would be the end

3     of it.  We should be able to have word from city council in at

4     least a month and a half to two months.

5          THE COURT:  All right.  Well, let's assume we're not

6     -- I'm not adjourning, we're going to have this hearing today

7     and -- and if I can rule, I'm going to rule one way or the

8     other on -- on the arguments.  Is there anything else you'd

9     like to say before we hear from the -- any individuals that

10    want to be heard?

11         MR. WILLEMS:  Can I take a moment to consult with

12    counsel?

13         THE COURT:  Sure.

14         MR. WILLEMS:  I don't know if I --

15         THE COURT:  Again, speak up, please.  Go ahead.

16         MR. WILLEMS:  Yeah.  I don't know if I have anything

17    very helpful to add.  If we're going to proceed today then

18    obviously you're going to decide on the merits.  The -- the

19    concern --

20         THE COURT:  Well, I may decide today or I may decide

21    to put it off.

22         MR. WILLEMS:  Or you may decide to put it off, I

23    understand.

24         THE COURT:  But we're going to have the hearing

25    today, we're all here.  We're all here.

1        MR. WILLEMS:  Okay.

2        THE COURT:  We're going to do it at least with that

3 in mind.

4        MR. WILLEMS:  Absolutely.

5        THE COURT:  I had hoped -- I had hoped to be able to

6 rule today from the bench as I try to do in many of these

7 matters, but we'll see.

8        MR. WILLEMS:  We -- we have not received any

9 responses to our legal arguments, so we might hear some today,

10 I -- I don't know.  But the, I guess, other than that, you

11 know, the concern you raised about the AFSCME and the

12 coalition not being present in this sector of the arguments, I

13 mean, you know, the  -- the -- their claims are not being

14 presented here.

15  If there's a -- if there's a issue in terms of who is

16 bound or what's bound, I suppose we could discuss the -- the

17 question of law of the case.  But that would probably be

18 something that they would have to bring up in terms of whether

19 or not this ends up being that.

20        THE COURT:  All right.  Anything else you want to

21 say before we hear from others?

22        MR. WILLEMS:  I do not have anything else.

23        THE COURT:  All right.  So, I want to give anyone

24 else who wants to be heard on this, whose claim is concerned

25 in this, an opportunity to be heard.  The gentleman here,

1  you're an attorney, sir?

2          MR. GREENE:  I am, sir.

3          THE COURT:  Would you come up?

4          MR. GREENE:  Yes.

5          THE COURT:  If you want to be heard.

6          MR. GREENE:  Yeah.  Anthony Greene, I'm appearing on

7  behalf of Da'Nean Brooks.  And I want to first say that I did

8  not submit her proof of claim for her, however, in her proof

9  of claim she indicated that she was objecting to the taking of

10  interest that she had gained on her annuity.

11      And I am arguing today, Your Honor, that the -- in

12  January 16, 2015, the City of Detroit -- she gained exactly

13  $15,424.41 in interest on her annuity.  The city took $8,690

14  of -- of those funds.

15      They accordingly recouped those funds on the basis of the

16  eighth amended plan for adjustment of debts.  And we object on

17  the basis that we -- even though it was done according to an

18  agreement, it certainly wasn't an agreement that she was

19  subject to and we consider those monies to belong to her and

20  not to the city, it was part of her annuity.  And we argue

21  that they were unlawfully taken.  And --

22          THE COURT:  Mr. -- Mr. Greene, let me ask you --

23          MR. GREENE:  Yes.

24          THE COURT:  Just one second.  I want to -- in my

25  papers here I want to find Ms. -- the paper -- the information

1  I have regarding Ms. Brooks' claim.

2          MR. GREENE:  Yes.

3          THE COURT:  Do you -- do you have -- which -- which

4  omnibus objection to claim was her claim subject to?  Do you

5  have it there?

6          MR. GREENE:  Hold on.

7          MR. WILLEMS:  Your Honor, if I may, it's

8  twenty-eight.

9          MR. GREENE:  Yeah.

10          THE COURT:  Twenty-eight?  All right.  One second,

11  hold on.

12          MR. WILLEMS:  And -- and it -- it would be Item 6 on

13  our --

14          MR. GREENE:  Yeah.

15          MR. WILLEMS:  I'm sorry, Item 53 on -- on our

16  Exhibit 1.

17          THE COURT:  All right, hold on.  Thank you.  Exhibit

18  1.

19          MR. WILLEMS:  Exhibit 1 has a list of the --

20          THE COURT:  Yeah, I know.

21          MR. WILLEMS:  Okay.

22          THE COURT:  It's the -- it's the chart, Exhibit 1 to

23  the --

24          MR. GREEN:  Yes.

25          THE COURT:  -- to the April 21 brief.

1          MR. WILLEMS:  Yes.

2          THE COURT:  All right.  I'm looking on there.  It's

3   number fifty what?

4          MR. WILLEMS:  Fifty-three.

5          THE COURT:  All right.  Hold on.  All right.  Mr.

6   Greene, I have found the information I was looking for in

7   this.

8          MR. GREENE:  Yes.

9          THE COURT:  Why don't you continue?  You're saying

10  that the claim is -- is based on --

11         MR. GREENE:  The taking of 800 -- $8,690.31 that was

12  -- it's called a recoupment.  It was taken in January of 2016

13  -- 2015 as a result of the bankruptcy.

14         THE COURT:  As a result of the confirmed plan,

15  right?

16         MR. GREENE:  That is true, Your Honor.

17         THE COURT:  All right.  Just hold on, hold on.

18         MR. GREENE:  Yeah, I'm sorry.

19         THE COURT:  Hold on.  So when was this proof of

20  claim filed?

21         MR. GREENE:  This proof of claim was filed, I think

22  I do have that.  That was filed on -- bear with me for a

23  second.  I got it.  That's the original proof of claim.  That

24  was filed on February 21st, 2014.

25         And she -- and she -- in the proof of claim she does

1  mention that she was filing it to save part of her annuity

2  which belonged to her at the time.  Well --

3          THE COURT:  So the claim could not possibly have

4  included when -- when it was filed, anything about this

5  recoupment that occurred January 16 of 2015.  It concerned

6  rather the -- the imposition of the city employment terms and

7  -- and orders affect on pensions and annuities by the

8  emergency manager order 21, both of which occurred pre --

9  pre-bankruptcy, is that right?

10         MR. GREENE:  That is true.  But she did on March

11 22nd, 2016, file an amended proof of claim.

12         THE COURT:  All right.  And that included then this

13 -- as part of the claim, a claim based on this recoupment of

14 8,690 on January 16 of 2015.

15         MR. GREENE:  It is not mentioned in that -- in that

16 amendment.  But if you put both together, the original proof

17 of claim and this proof of claim it is mentioned.  But you're

18 right, it -- she does not reference that recoupment in this

19 particular second amended proof of claim, that's true.

20         THE COURT:  All right.  So to the extent the --

21 perhaps we have two pieces here.  You're arguing -- we've got

22 the pre-petition claim which is --

23         MR. GREENE:  Yeah, that's true, that's correct.

24         THE COURT:  Which is based on the imposition of the

25 city employment terms and --

1           MR. GREENE:  Sure.

2           THE COURT:  And the emergency manager order 21,

3    possibly also as well.  And then this -- this other component

4    has to do with this recoupment that occurred under the terms

5    of the confirmed plan.

6           MR. GREENE:  Sure.

7           THE COURT:  That occurred in January 2015.

8           MR. GREENE:  Yes, that's true.

9           THE COURT:  And -- and so as to that latter, that

10   is, if I understand what you're saying correctly, Ms. -- Ms.

11   Brooks is complaining there about the terms of the confirmed

12   plan.

13          MR. GREENE:  She is.

14          THE COURT:  So how is that a valid claim?

15          MR. GREENE:  Well -- well, I imagine it's a -- it's

16   a it's a constitutional claim I guess that will go along with

17   the claims of the actual AFSCME union which -- and that's

18   another concern that I had that her claim really has a lot to

19   do with the current claims of AFSCME union and I would ask the

20   Court to withhold an opinion regarding her claim until that

21   particular issue is resolved.  Because they're arguing that,

22   the AFSCME union that she's a part of.

23          THE COURT:  The AFSCME union claim includes a claim

24   based on the recoupment that occurred in January 2015?

25          MR. GREENE:  Well, it -- it -- it challenges the

1    taking of the money from the annuity and the pension.

2              THE COURT:  But it doesn't directly challenge the

3    confirmed plan, does it?

4              MR. GREENE:  I'll be honest with you, Your Honor, I

5    have not reviewed their entire claim.  And I -- and I -- I

6    can't speak to that.  I apologize for that.

7              THE COURT:  Well, what do you want to say about the

8    merits of the -- of these -- of Ms. Brooks' positions here?

9              MR. GREENE:  Well, we're claiming that

10   constitutionally that -- it constitutes a taking.  Because

11   those funds belong to Ms. Brooks.  And I know it was a part of

12   the -- the plan but certainly she wasn't individually a part

13   of that plan and it was taking money that belonged directly to

14   her.

15             THE COURT:  Now are you talking about the

16   recoupment?

17             MR. GREENE:  Yes.

18             THE COURT:  Under the plan?

19             MR. GREENE:  Yes.

20             THE COURT:  All right.  Go ahead.  You were -- you

21   were saying.

22             MR. GREENE:  Yeah, yeah.  So -- so we believe that

23   even though that amount was under the plan, we believe it was

24   still unlawfully taken because it wasn't the city's money to

25   take.

1       And -- and of course that's a, I guess a due process

2    argument or a constitutional argument that they should never

3    have taken those monies, even if it was a part of the plan.

4    So that's my argument, Your Honor.

5            THE COURT:  All right.  Thank you.  I'll allow the

6    city to respond now to this argument by Mr. Greene and then

7    we'll hear -- continue hearing from others who want to speak.

8            MR. GREENE:  Thank you.

9            THE COURT:  City?

10            MR. WILLEMS:  Well, Your Honor, it appears that we

11    have an objection to the confirmation of the plan rather than

12    a claim.  And it should be brought that way.  So as -- as a

13    claim it should still be expunged.

14            THE COURT:  Well, Mr. Greene just left the courtroom

15    but, you know, I'll say this.  And, you know, I guess he'll

16    have to get it from the recording of the hearing.  He's not

17    here, he just walked out.

18        The -- to the extent Ms. Brooks is making a claim that is

19    based upon the -- this -- what's characterized by Mr. Greene

20    in the hearing today as a recoupment of $8,690 in January of

21    2015 based on the terms of the confirmed plan, that claim is

22    -- that claim is without merit because it is inconsistent with

23    the terms of the confirmed Chapter 9 plan.  Admittedly so by

24    -- as admitted by counsel for Ms. Brooks which plan, confirmed

25    plan, is binding on all creditors and the city and is not --

1 is a final order that's long since been a final order and it's

2 not subject to debate.

3     Now, you know, that's -- that's the end of that piece of

4 the argument.  The other -- to the extent Ms. Brooks' claim,

5 it appears that the claim she filed originally anyway, and

6 perhaps even the amended claim she filed in March 2016 is

7 based upon the imposition of the city employment terms and --

8 and the emergency manager's order 31 its affect on pensions

9 and annuities then that is part of the category of claims that

10 the city has called employee obligation claims and which the

11 city has argued are without merit as well as being duplicates

12 of claims brought -- properly brought by the unions.

13     So I -- I'm not ruling at this moment on that aspect of

14 the argument.

15         MR. WILLEMS:  I understand.

16         THE COURT:  And I'm going to hold off.  I want to

17 hear from others and then we'll come back to that.

18     But certainly to the extent of Ms. Brooks' claim is based

19 upon essentially an objection to the confirmed plan, it's --

20 it's overruled, the claim is -- the objection to that claim is

21 sustained.

22     So anyway, who wants to be heard from next, anyone?

23 Anyone who is represented by an attorney, I'll let you go

24 next.  Are there any other attorneys here in the courtroom

25 that want to be heard on behalf of a client?  No?  All right.

1  Who's -- sir, you're -- you're next if you want to --

2          MR. COLLINS:  Julius Collins.

3          THE COURT:  Come on up.  Your name is what again?

4          MR. COLLINS:  Julius Collins.

5          THE COURT:  All right.  One moment, sir.  I want to

6  find you in the -- in my list here.  Oh, I see.  Mr. Collins,

7  it looks like the city objected to your claim as part of their

8  twentieth omnibus objection to claim.  What do you want to

9  say, Mr. Collins?

10          MR. COLLINS:  Good afternoon, Your Honor.  Thank you

11  and good afternoon.

12     My claims, I just ask the -- the city attorney was

13  stating that my claim is still against the city for the

14  actions taken against me and I worked for the City of Detroit

15  for 12 years and not only we took pay cuts in 2014, but before

16  then I don't have a accurate date, but of those cuts, that's

17  what I'm asking.  I'm claiming for those actions taken.

18     And while I worked for the City of Detroit those years, I

19  -- we was forced to take pay cuts, and vacation cuts, and

20  longevity and -- and all those.  Holidays was -- was -- was

21  cut and a lot of different actions were taken against us.

22     According to the CET and the consent agreement which I --

23  which I believe was unfair for the City of -- of Detroit.  My

24  claim amount was -- was for 30,000 -- $30,000 in recoupment.

25  And I -- I would -- my -- my claims that I was forced

1  reduction in -- in -- in wages and elimination of my benefits.

2      And while I retired from the City of Detroit in 2012.

3  And I had a great -- great reduction in my retirement

4  benefits.  And also I'm paying a retirement recoupment to the

5  City of Detroit to bail out the City of Detroit which is every

6  time I receive a -- a paycheck from the City of Detroit, I'm

7  still paying -- paying $61.00 to the City of Detroit according

8  to the bail out -- the bankruptcy plan.

9      So I -- and also I have to pay my own insurance because

10  certain -- certain period of time, I think it's July of 2013.

11  They eliminated -- they -- they forced us to -- to pay our own

12  medical benefits.  We were -- we were given a stipend, but

13  then they turned around and eliminated the stipend so we have

14  to pay -- pay directly from -- from what my benefit is.

15      I had a $125.00 stipend coming out of my -- coming to me,

16  but after sometime in July, they reduced -- they eliminated

17  that and directly coming out of my retirement today is -- is

18  that amount, the $125.00 I have to pay for insurance.

19      So my -- my thing and my issue today is that I am

20  entitled to some type of financial restitution because the --

21  the attorney spoke up, the union, AFSCME union was reacting on

22  my behalf.  The AFSCME union is not on my behalf today.  I'm

23  here individually.  I can't afford a lawyer, so that's why I'm

24  here, I'm here personally because of my benefit and -- and my

25  cost of living.  I can't afford a lawyer.

1    And -- and -- and I -- that's why I -- I -- I believe

2  through my -- through my years working for the City of Detroit

3  that I am entitled to some -- some financial restitution for

4  -- for my work and for the unfairness.  Say -- it was saying

5  -- only said that the city had probably breached an employment

6  obligation.  My thing is that the city wrongfully handled our

7  -- our employment obligation because we had no bargaining even

8  though I was a member of the City of Detroit, I had -- I had

9  nothing to say about what the city -- the CET, the city

10 employment term.

11    I had no -- individually I had nothing to -- nothing to

12 say about it, you know.  I had -- I had no -- no offense so I

13 had no defense, you know, for the CET, for the consent

14 agreement.  But I had -- as an employee of the City of

15 Detroit, I had nothing -- nothing to say about it, you know.

16         THE COURT:  All right.  Mr. Collins, you need to --

17 you need to wrap it up.

18         MR. COLLINS:  Oh, I'm sorry.

19         THE COURT:  I've got to give others a chance to

20 talk, so --

21         MR. COLLINS:  Okay, okay.  I'm sorry, sir, you know.

22         THE COURT:  That's all right.  It's okay.

23         MR. COLLINS:  Yes.

24         THE COURT:  You -- you know, we have to --

25         MR. COLLINS:  Okay.

1            THE COURT:  -- have a reasonable limit on how long

2   everybody can talk or we won't get done today.

3            MR. COLLINS:  Okay, I'm -- I'm sorry, Your Honor.

4            THE COURT:  So go ahead.  Go ahead and finish.

5   Finish up, please.

6            MR. COLLINS:  But, okay.  So -- so finally that's --

7   that's I -- I -- I believe that I am entitled to -- and -- and

8   we all are entitled to some financial obligation.  And to me

9   if we can't -- if we -- I'm speaking for myself, if I -- if I

10  can't -- can't receive -- receive all of my claimant, I am --

11  I am willing to settle for, you know, for a settle amount.  So

12  thank you, Your Honor.

13           THE COURT:  All right.  Thank you, Mr. Collins.  Mr.

14  Willems, you can have a seat.  I think instead of calling on

15  you after each person speaks now for the rest of the hearing

16  I'll -- I'll give you a chance to speak when everyone else is

17  done on the -- on the claimant's side.

18           MR. WILLEMS:  Okay, that's fine.

19           THE COURT:  So if you would hold any thoughts you

20  were going to just express and we can hear those when everyone

21  else has spoken.  So you don't have to stand up.  You can if

22  you want, but you don't have to.

23           MR. WILLEMS:  Thank you.

24           THE COURT:  All right.  So who would like to speak

25  next of the creditors?  Sir, come on up.

1          MR. STEELE:  Good afternoon, Your Honor.

2          THE COURT:  Come on up to the microphone and speak

3   loud, please, so everyone can hear you.  What's your name,

4   sir?

5          MR. STEELE:  My name is Craig Steele.  Good

6   afternoon, Your Honor.

7          THE COURT:  Craig what?

8          MR. STEELE:  Craig Steele.

9          THE COURT:  S-t what?

10         MR. STEELE:  S-t-e-e-l-e.

11         THE COURT:  Mr. Steele --

12         MR. STEELE:  Yes.

13         THE COURT:  -- let me find your claim on the list

14  here.  One second.  Mr. Willems, if you know where that -- he

15  is in the list, let me know.

16         MR. WILLEMS:  It's number -- it's Item 20.

17         THE COURT:  All right.  One second.  Number 20 on

18  the chart which is the city's Exhibit 1 to the April 21 brief.

19         MR. WILLEMS:  Correct.

20         THE COURT:  That's what we're talking about.  So

21  this is part of the city's twentieth omnibus -- twenty-ninth

22  omnibus --

23         MR. WILLEMS:  Twenty-ninth, yes.

24         THE COURT:  Twenty-ninth omnibus objection.  All

25  right.  Go ahead, Mr. Steele.  What would you like to say?

1          MR. STEELE:  Well, Your Honor, I've been sitting in

2    this Court all day and you are doing a wonderful job looking

3    at all the back door moves that I consider very crafty and

4    creative.

5          My only contention is that I took -- I took -- I paid

6    attention to what you said about notion that if you rule today

7    and what that -- as the -- as the city's counsel said that

8    they have negotiations and they're almost in the process of

9    ratifying certain claims which we didn't know, I didn't know.

10   If you -- if you make a decision today that we don't have this

11   kind of -- well, you made a decision with that then and now we

12   want you to be consistent and make a decision in the same

13   manner then.

14        Or -- or, you know, when that comes down.  And like you

15   said, you brought up a good question.  What if the city

16   doesn't ratify.  What if we lose on both end.  You sign with

17   the city today and then the city council doesn't ratify.

18        So to me I think the Court shows a lot of wisdom and a

19   lot of patience by saying maybe we should adjourn it until we

20   see what that proceeding goes like.

21          THE COURT:  And by the way, Mr. Steele and anyone

22   else, in case it's not clear to anyone, I -- I don't know what

23   the terms of this proposed settlement are, I have no idea.

24   And I don't really need to know --

25          MR. STEELE:  Right.

```
 1              THE COURT:  -- at this stage of the case --

 2              MR. STEELE:  Right.

 3              THE COURT:  -- as the Bankruptcy Judge.

 4              MR. STEELE:  Right.

 5              THE COURT:  I don't know.  Because if the settlement

 6   does not happen --

 7              MR. STEELE:  And that was -- that was my contention

 8   -- I'm sorry, go ahead.

 9              THE COURT:  Excuse me.  If the settlement does not

10   happen and, you know, it's just a -- a dead letter, then the

11   parties are going to litigate --

12              MR. STEELE:  Right.

13              THE COURT:  -- in front of me and I'm going to have

14   to make decisions on the merits of the parties' arguments

15   about the claim of the unions.  And I don't really want to

16   know what the parties talked about or agreed to tentatively

17   with respect to settlement.

18              MR. STEELE:  Right.

19              THE COURT:  If I'm going to be doing that.  And so I

20   don't know what the terms are and I don't want to know.  Just

21   so everybody's clear, I have no idea what --

22              MR. STEELE:  Right.

23              THE COURT:  -- what the proposed settlement is --

24              MR. STEELE:  Right.

25              THE COURT:  -- or what it may or may not provide for
```

1 any of the creditors involved in this hearing today.  I have

2 no idea.

3     So just understand that and I want to make sure everyone

4 understands that.  So Mr. Steele, go on.  What else did you

5 want to say, anything?

6         MR. STEELE:  Yes.  And I -- and I appreciate you

7 bringing out that point, Your Honor.  And it's no way for you

8 to even have that information.

9     But what I'm concerned like I said before is, that if you

10 rule in their favor and then like I said I just learned about

11 that information when city council said that they are in

12 negotiations and close to ratifying.  And then when you asked

13 them how long would it be before they wrap up those

14 negotiations, he said maybe a month, half, two months.

15     Well, maybe we should wait and adjourn until we see as I

16 said, how that goes down.  So we won't lose twice.  That's --

17 that is my concern.  Because he doesn't want us -- he said

18 that we cannot represent -- or AFSCME cannot represent, we

19 represent our own case he said that's duplicates.  Okay, I

20 understand that.

21     Well, then if that is closer or not closer, but if that

22 is -- he says that he has to go with what the union -- he

23 can't even negotiate with us as individuals and if you can

24 only negotiate with AFSCME's and the other unions and those

25 proceedings have not concluded, my contention is and then we

1  should wait till it does conclude.

2         THE COURT:  All right.  Mr. Steele, we need to wrap

3  it up.  Anything else you want to say?

4         MR. STEELE:  No, that is -- that is it, sir.  Thank

5  you for your time.

6         THE COURT:  All right.  Thank you, Mr. Steele.  Who

7  would like to speak next?  Come on up, sir.  Your name, sir?

8         MR. WOLFE:  Henry Wolfe.

9         THE COURT:  All right.  One second.  All right.

10 Good afternoon, Mr. Wolfe.

11        MR. WOLFE:  Good afternoon.

12        THE COURT:  Your claim is the subject of the city's

13 forty-fourth omnibus objection to claims.

14        MR. WOLFE:  Correct, correct.

15        THE COURT:  And that's docket 11162.  I did see the

16 written response that you filed with the Court to that claim

17 objection on June 7 at docket -- it's at docket number 11232.

18 You -- one second.

19    I said earlier I would allow you to speak today, but I --

20 I want to make sure you know and it will be mailed -- it's

21 mailing -- being mailed to you today butt there is an order

22 entered today, earlier today striking your response to the

23 objection to claim because you did not comply with the Court's

24 notice of deficiency regarding your claim.  You did not make

25 the deficiency.

1        And the problem was that you didn't file a proof of

2    service regarding -- or certificate of service regarding

3    service so they may respond on the city.  And you had seven

4    days to fix that and you didn't do that within seven days and

5    so the Court as it typically always does in that kind of

6    situation, entered an order striking your response.

7        Now having said that, I will give you an opportunity to

8    speak today and I want you to go ahead.  What do you want to

9    say about this?

10            MR. WOLFE:  Okay.  In regards to the -- I believe it

11   was the -- the deficiency was proof of service.  I'm saying --

12   the justification for striking my response.

13            THE COURT:  Well, what do you want to say?

14            MR. WOLFE:  Well, I want to say that I received that

15   notification this past Thursday, so it has not been seven

16   days.  I thought it said eight days, but I hasn't been seven

17   days.  And if the --

18            THE COURT:  You mean Thursday of last week you

19   received it.

20            MR. WOLFE:  Of the last week I received it in the

21   mail, correct.

22            THE COURT: The notice required that you correct the

23   problem within seven days of the date of the notice, however,

24   which was June 7, so that meant -- that meant June 14,

25   yesterday.  Anyway, go on.

1           MR. WOLFE:  Okay.  Well, that's the reason why you

2    hadn't received it.

3       My issue and response dealt with around the time of the

4    bankruptcy I filed two proofs of claim.  One was in regards to

5    out of class payment and one was -- was in regards to

6    longevity pay.

7       When I received the notice from the Court, I was not

8    aware that it was in regards longevity pay so the response

9    dealt more so with the -- with the issue about the out of

10   class.  That's why there was somewhat of some confusion there.

11      My contention about the -- I am still contesting about

12   the longevity pay because the city's argument for dismissal is

13   that the CET agreement nullified longevity pay, however the --

14   that issue was issued in October of 2012 and my longevity pay

15   I stopped receiving it in two thousand, I believe nine, two --

16   two years had passed before the CET agreement had went into

17   place and I did not receive longevity pay.

18      The out of class issue is a whole nother issue, but it

19   was filed as a proof of claim with this Court.  But that was

20   not on the --

21           THE COURT:  I don't see that that claim has been

22   objected to yet at least.  At least it's not in the -- it's

23   not in the list.  I don't -- it doesn't look like it's in the

24   list for -- of claims that were objected to on the city's

25   forty-fourth.  The list says -- lists only one of your claims

1  and that, I think, and that is claim number 2258 for $2,800.

2        MR. WOLFE:  Correct.

3        THE COURT:  Now if Mr. Willems can correct me if I'm

4  -- if he thinks I'm wrong about this, if the city has objected

5  to your -- what you refer to as your out of class pay claim,

6  he can tell me that and we'll -- we'll deal with that.  But

7  I'm assuming for the time being that's not part of this claim

8  objection.

9        MR. WOLFE:  You know unless you want it to be, but

10 no.

11       THE COURT:  I'm not starting disputes that no party

12 has raised.  I've got enough disputes that parties have raised

13 to deal with.  So, anyway anything else you want to say then

14 for today?

15       MR. WOLFE:  No, that's it.  The deficiency if it's

16 in regards to -- it says something about proof of service.

17 Could I maybe be made aware of what that is?

18       THE COURT:  Sure.  When you file anything with the

19 Court, in this Bankruptcy Court and case, you have to serve a

20 copy of it on opposing parties and opposing attorneys, or if

21 the party is represented by an attorney as here on the -- on

22 the opposing attorney by -- and then file a certificate that

23 says that you have served your response on that -- on that

24 attorney, in this case attorney for the city and you didn't do

25 that and that's what the deficiency was about.

1    Now anything else you want to say about the merits of

2  this issue about longevity pay before we let some other folks

3  talk, please?

4           MR. WOLFE:  No.

5           THE COURT:  All right.  Thank you.

6           MR. WOLFE:  You're welcome.

7           THE COURT:  Who wants to speak next?  Good

8  afternoon.

9           MR. DORCH:  Good afternoon.  My name is Ventonia

10 Dorch.

11          THE COURT:  One second.  How do you spell your last

12 name?

13          MR. DORCH:  D-o-r-c-h.

14          THE COURT:  All right.  Which claim objection are

15 you responding to, do you know?

16          MR. DORCH:  I think it was on proof of -- what was

17 it, documentation, proof of what I was claiming, the money

18 that they took from me.

19          THE COURT:  All right, just a minute.  Mr. Willems,

20 do you know?

21          MR. WILLEMS:  Is it Dorch, Ventonia?

22          MR. DORCH:  Yeah.

23          MR. WILLEMS:  Okay.  That would be Item 10.  It's

24 omnibus thirty-three.

25          THE COURT:  All right, one second.  All right.  I

1  see that.  Go ahead, Mr. Dorch, what would you like to say?

2            MR. DORCH:  Yes.  In regards to they say the CET was

3  in effect in 2012.  I started having the 10% taken from me in

4  2011.  So it's way before the CET in late -- October 2011, I

5  think it was.

6            THE COURT:  Anything else you want to say?

7            MR. DORCH:  That's pretty much it.

8            THE COURT:  All right.  Thank you.  Who would like

9  to speak next?

10           MR. GREENE:  Your Honor, I just spoke with -- this

11 is JaJuan Moore, JaJuan Moore.

12           THE COURT:  Well, just a minute.  Mr. Greene

13 attorney for who now?

14           MR. GREENE:  Anthony Greene, Your Honor, appearing

15 on behalf of JaJuan Moore.  And he is on --

16           MR. WILLEMS:  It's -- it's objection number

17 thirty-six, Item 18 in Exhibit 1.

18           THE COURT:  All right.  One second.

19           MR. GREENE:  Yeah.

20           THE COURT:  Just a minute.  So you're representing

21 Mr. Moore then, correct?

22           MR. GREENE:  Yes, I am.

23           THE COURT:  All right.  Go ahead, what do you want

24 to say?

25           MR. GREENE:  I was just retained, so I was given his

1  -- his summary of -- of what he believes he's entitled to from

2  the city.

3      He has what are called payroll disputes.  The city not

4  providing him with the correct pay from June 11th, 2011 to

5  January 1st of 2016.  So it's pre-petition and post-petition,

6  the city failing to provide him the correct amount.  I believe

7  in his --

8          THE COURT:  What do you mean failing to provide the

9  correct amount?

10          MR. GREENE:  Well, he -- he was supposed to make -

11  how much money?

12          MR. MOORE:  15.35.

13          MR. GREENE:  But they paid him --

14          MR. MOORE:  $12.38.

15          MR. GREENE:  Right.  So they were actually paying

16  him $3.00 less each pay period.  And they did that until

17  January of 2016.  And he added that amount up to $3,000.  And

18  -- and that he failed to receive from the city as a result of

19  them shorting his pay by $3.00 an hour.

20          THE COURT:  When you say shorting his pay, is -- is

21  that because of the imposition of city employment terms?

22          MR. MOORE:  That was -- if I may speak, Your Honor.

23  That was because of the work brain system we had.  That it was

24  a payroll system.  It also messed up our vacation time pay and

25  our sick time pay.  It could jumble it up and it wouldn't get

1  it on your paycheck.

2      The paycheck said something different from the computer.

3  And Human Resources going to look at what's on your paycheck

4  versus the computer.  So it was always a issue.  And then it

5  always took a long time for them to pay you back and then

6  since we changed over to Great Lakes Authority, we still

7  haven't received compensation for that.

8          MR. GREENE:  And there's also a question, Your

9  Honor, of what's called four hours turnaround pay which he

10  should have received and he can explain what turnaround pay

11  is.

12          THE COURT:  Well, look -- look, we don't need in

13  this hearing an explanation in detail of what the claim is.

14          MR. GREENE:  Okay.

15          THE COURT:  What I -- what I need to know really,

16  the key things I need to know is, are the -- is the claim --

17  to what extent is the claim based upon city employment terms

18  that were imposed --

19          MR. GREENE:  Got it.

20          THE COURT:  Excuse me.  That were imposed before the

21  city -- or the emergency manager was appointed or based on

22  cuts or freezes that were imposed by the emergency manager

23  before the bankruptcy case was filed.

24      To what extent are the claims based on that as opposed to

25  something else.  And if it's something else, what is the

1 something else.  That's the -- the key thing I want to know.

2 And then I would appreciate it if -- if you want -- any

3 argument you want to make about the merits of the city's

4 arguments regarding the first of those types of claims.  That

5 is the city imposed city employment terms and the emergency

6 manager cuts previously.  So go ahead, Mr. Greene.

7           MR. GREENE:  Yeah, okay.  With regards to the CET,

8 we argue again that the cutting his income or taking out 10%

9 of his wages which was also done as a result of the CET.  The

10 CET actually cut his wages by 10%.

11      He is also claiming that that was unlawfully taken as

12 well.  His arguments are -- are consistent with the AFSCME

13 arguments in the pending litigation.  And there's also the --

14 the reason why we -- we request that the Court withhold

15 judgment until that issue is resolved.

16      So what he's saying is, as a result of the CET, 10% of

17 his wages were cut.  And he believes that that was unlawful or

18 should not have occurred.

19           THE COURT:  Now what's -- what about the first part

20 of my question which is to what extent if any does Mr. Moore

21 argue his claim is based on something other than the cuts and

22 adverse effects of the city imposed -- city employment terms

23 that were imposed.

24           MR. GREENE:  Okay, other than.

25           THE COURT:  Other things.

1           MR. GREENE:  Okay, right.

2           THE COURT:  Pre-petition claim based on other

3    things --

4           MR. GREENE:  Pre-petition.

5           THE COURT:  -- if any -- if anything.

6           MR. GREENE:  Okay, right.  Well, in terms of

7    pre-petition the city for whatever reason was miscalculating

8    his appropriate income and not paying him what they should

9    have paid him pursuant to his employment agreement with them.

10   And so that's a breach of contract, a breach of a contract

11   claim, Your Honor.

12          THE COURT:  You mean quite apart from any 10% cut

13   or --

14          MR. GREENE:  That's exactly right.  Yeah, that's a

15   totally separate issue.

16          THE COURT:  Basically you're saying -- you're saying

17   the city was making a mistake.

18          MR. GREENE:  Yes.  The city --

19          THE COURT:  And paying him less than they even

20   intended to pay him.

21          MR. GREENE:  Yes, Your Honor.

22          THE COURT:  Is that what you're saying?

23          MR. GREENE:  Absolutely.

24          THE COURT:  All right.  So that's part of the claim.

25          MR. GREENE:  That's part of the claim.

1          THE COURT:  All right.  Anything else that's not a

2    CET type part of the claim?

3          MR. GREENE:  I think that's it unless you have

4    something else.

5          MR. MOORE:  I would like to just add to that, part

6    of that 2012 there was a collective bargaining extension

7    agreement with the IOU.  All of the people that was at the

8    DSWD was placed into that union where it was no concessions

9    involved or the CET.

10         The CET was new per that contract.  So there was no

11   concessions.  And I have right here the contract 2012 to 2022

12   per Sue McCormick acting on her own with DSWD away from the

13   city.  We was all placed up under this contract but we was all

14   supposed to get our 10% back, wage concessions, and any issues

15   with the payroll clocks handled with the new ceridian that has

16   not been handled yet.

17         THE COURT:  All right.  Anything else then, Mr.

18   Greene?

19         MR. GREENE:  No, no, no, that's it.

20         THE COURT:  All right.  Thank you.  Who would like

21   to speak next?  Ma'am, come on up, please.

22         MS. CANNON:  I just want to mention prior to the --

23         THE COURT:  No, no, what's your name, please?

24         MS. CANNON:  Oh, I'm sorry.  Gladys Cannon,

25   forty-fourth

1             THE COURT:  Hold on.

2             MS. CANNON:  Okay.

3             MR. WILLEMS:  I'm sorry, I didn't get the name.

4             MS. CANNON:  Gladys Cannon.

5             MR. WILLEMS:  Cannon?

6             MS. CANNON:  Yes, C-a-n-n-o-n.

7             MR. WILLEMS:  Okay.

8             THE COURT:  All right.  Ms. Cannon, as you've just

9    referred to, your claim objected to as part of the city's

10   forty-fourth omnibus objection.

11            MS. CANNON:  Right.

12            THE COURT:  To claims.  And you filed a written

13   response to that objection.  What would you like to say?

14            MS. CANNON:  What I would like to say is prior to

15   the implementation of the CET, they did deny us longevity in

16   2010 as well as 2011.  I did file paperwork with the state

17   Wage and Labor Commission regarding that.

18       And when I contacted them about it, they said it would be

19   handled with the city, but we're talking a two year delay from

20   the time that I originally filed the paperwork till the time

21   that the CET was implemented.

22            THE COURT:  All right.  Thank you.

23            MS. CANNON:  You're welcome.

24            THE COURT:  Who would like to be heard next?

25            MS. MCCRARY:  Good afternoon

1           THE COURT:  Good afternoon.  Speak close and into

2   the microphone, please, so we can all hear you.  Your name,

3   please?

4           MS. MCCRARY:  Sarah McCrary.

5           THE COURT:  And which claim objection, do you know?

6           MS. MCCRARY:  Excuse me?

7           THE COURT:  Which claim objection?

8           MR. WILLEMS:  It's number thirty-seven.

9           THE COURT:  Pardon?

10          MR. WILLEMS:  Number thirty-seven, Your Honor.

11          THE COURT:  All right.  Hold on.  Where in the

12  chart?

13          MR. WILLEMS:  Item 40.

14          THE COURT:  Thirty-seventh omnibus objection.  All

15  right.  Thank you.  I see that in the chart.  Ms. McCrary, go

16  ahead.  What would you like to say?

17          MS. MCCRARY:  I'd just like to say that I've been

18  working for the city for 20 years.  And even prior to the CET

19  and all the other things that are going on, we made a genuine

20  effort to keep the -- the city going.  I work for the ITS

21  department.

22      We have saved the city hundreds of thousands of dollars

23  in things contract reviews and disposal of equipment and --

24  and other things.  And also before this CET and the BRF's and

25  all these things, we have already been taking do op days

1   That was back during the do op days.  Whatever it took to --

2   to keep the city going, is what we had to do.

3       And during the CET not only were we taking a 10%

4   reduction in pay, but we were also doing the BRF days which

5   was a 20% reduction in pay for some months which is more than

6   I think was fair for the City of Detroit workers.  I just --

7   and I am not part of the union and I was not part of the

8   union, so my claim is separate from everything else.

9           THE COURT:  All right.  Thank you.

10          MS. MCCRARY:  Thank you.

11          THE COURT:  Who would like to speak next?  Sir, you

12  came up earlier.  Come on up.

13          MR. CAPIZZO:  Good afternoon.  My name is Jim

14  Capizzo.  I'm in the forty-fourth objection.

15          THE COURT:  All right.  One second, please.

16          MR. WILLEMS:  I'm sorry, I didn't catch the name.

17          MR. CAPIZZO:  The -- James Capizzo.

18          MR. WILLEMS:  James Capizzo, forty-fourth, okay.

19          THE COURT:  All right.  Mr. Capizzo, I see the --

20  where you -- where your claim is listed and under the

21  forty-fourth omnibus objection to claim.  And I see the

22  written response.  And I did review the written response that

23  you filed to that claim objection.  You filed it on June 7th,

24  it's docket number 11239.  What would you like to say?

25          MR. CAPIZZO:  Just one major thing and a few minor

1 things.  I'm just confused about this whole thing.  I received

2 this thing a couple weeks ago in the mail and it said I should

3 be here or I might lose my claim on the one hand.  And on the

4 other hand it says if you're a member of a union you're

5 duplicate filing and that sort of implies you shouldn't be

6 here.  So that's -- that's just been confusing to me.

7       Now there's minor things.  A young lady back there said

8 something.  Not all the people received their notices so that

9 maybe she could address that, I don't know.

10       The -- the city says I don't have a valid basis.  My

11 basis is it was the CET was non-negotiated.  Now I also put

12 for my thing --

13             THE COURT:  And your part of what union, sir?

14             MR. CAPIZZO:  SAAA.

15             THE COURT:  All right.  Thank you.  Go ahead.

16             MR. CAPIZZO:  SAAA calculated for me some $13,000 in

17 claim and I put -- and I also added plus for pension, so

18 somebody put unliquidated so it's -- it's the thirteen

19 thousand some dollars and -- and full pension.  And our

20 pension is being -- pension cuts are being on appeal today in

21 the Court in Cincinnati.  I think that Court is probably over

22 by now.

23       So also the emergency manager law was appealed and I

24 think that might be coming up in August.  The emergency

25 manager dictated to -- used that to dictate to us rather than

1    -- than negotiate under democracy.

2        So that's my points.  Thank you.  I have some -- some

3    documents for the Court.

4            THE COURT:  No.

5            MR. CAPIZZO:  No.

6            THE COURT:  If you want the Court to consider

7    documents, you need to file them with the clerk's office in

8    the case rather than hand them up at -- at a hearing.

9            MR. CAPIZZO:  Okay.  Thank you.

10           THE COURT:  All right.  Thank you.  Who would like

11   to speak next?  Anyone?  All right.  No other creditors have

12   asked to speak next in the hearing here now.  Mr. Willems, I

13   will give you a chance to reply and to speak further if you

14   would like to for the city.

15           MS. BECKOM-WHITE:  Excuse me.

16           THE COURT:  I can't hear what you're saying, but

17   Ma'am, do you want to speak?

18           MS. BECKOM-WHITE:  How are you doing?  My name is

19   Wanda Beckon-White.  I'm on part case thirty-three.

20           THE COURT:  Spell your last name, please.

21           MS. BECKOM-WHITE:  B as in boy, E as in Edward, C as

22   in cat, K as in -- and O as in Mary, and the color White.

23           THE COURT:  Ms. Beckom-White?

24           MS. BECKOM-WHITE:  Yes.

25           THE COURT:  Is that how you say it?  All right.  And

1  you're part of the forty --

2          MS. BECKOM-WHITE:  Thirty-three.

3          THE COURT:  I'm sorry?

4          MS. BECKOM-WHITE:  Thirty-three.

5          THE COURT:  All right.  Just a minute.  Where is

6  that in the chart, Mr. Willems?

7          MR. WILLEMS:  I'm looking.  I think it's towards the

8  back.  Hang on.  I'm sorry, is it White or Beckom?

9          MS. BECKOM-WHITE:  It is both.  But it's under

10  Beckom-White.

11          MR. WILLEMS:  Oh, okay.

12          MS. BECKOM-WHITE:  The omnibus thirty-three omnibus.

13          MR. WILLEMS:  Oh, I'm sorry.  Okay.  It's

14  thirty-three is the objection, you're correct.  And it's

15  twenty-three on the chart.

16          THE COURT:  All right.  One second.  All right.

17  Thank you.  Go ahead, Ms. -- what's -- the chart says White,

18  Wanda Beckom.  What is your name again, Wanda Beckom-White?

19          MS. BECKOM-WHITE:  Wanda -- Wanda Beckom-White.

20          THE COURT:  Is Beckom-White one word, is it

21  hyphenated or what is it?

22          MS. BECKOM-WHITE:  It's hyphenated with White.

23          THE COURT:  Okay.  I -- I got you.  All right.  Ms.

24  Beckom-White, go ahead.

25          MS. BECKOM-WHITE:  Okay.  Thank you for giving us

1 the opportunity to come to Court and -- and support the fact

2 that 10% have been taken away from our -- our -- our wages

3 along with longevity, some of our shift premium.

4      And I came here to say thank you for giving us the

5 opportunity to come.  Some of the people that was on -- that

6 was in the case did not receive a packet to be able to

7 represent themselves.  And I wanted to see if there is any way

8 possible that they was going to be included in this City of

9 Detroit under AFSCME.

10      When you say that city council is looking into

11 negotiating with AFSCME.  I was trying to see the people that

12 did --

13           THE COURT:  Ms. Beckom-White -- Ms. Beckom-White.

14           MS. BECKOM-WHITE:  Uh-huh.

15           THE COURT:  This isn't the time for you to ask

16 questions of the attorney for the city.

17           MS. BECKOM-WHITE:  Okay, okay.

18           THE COURT:  You can do that after the hearing.

19           MS. BECKOM-WHITE:  Okay.

20           THE COURT:  -- but not -- not during the hearing.

21 This is your chance --

22           MS. BECKOM-WHITE:  No, was trying to --

23           THE COURT:  Hold it, hold it.

24           MS. BECKOM-WHITE:  Okay.

25           THE COURT:  This is your chance to speak to the

1    Court.

2              MS. BECKOM-WHITE:  Okay.

3              THE COURT:  And say whatever you want to say, but

4    don't -- you know, do it briefly and go ahead.

5              MS. BECKOM-WHITE:  Okay.  I just wanted the people

6    that wasn't able to get a packet from the Court, to be able to

7    -- be able to be looked, you know, for them to look over it.

8    And how can I put it?  So they can be able to be known that

9    they also have lost their 10%, they annuity, and they

10   longevity.

11             THE COURT:  Well, I don't know who you're referring

12   to Ms. --

13             MS. BECKOM-WHITE:  And they assist --

14             THE COURT: Excuse me.

15             MS. BECKOM-WHITE:  Uh-huh.

16             THE COURT:  I don't know who you're referring to

17   there --

18             MS. BECKOM-WHITE:  Uh-huh.

19             THE COURT:  -- but you're free to -- certainly to

20   bring to the attention of the attorneys for the city --

21             MS. BECKOM-WHITE:  Uh-huh.

22             THE COURT:  -- the names of any persons who you

23   think had a claim objected to by the city at any time and then

24   did not get proper notice of that objection to the claim --

25             MS. BECKOM-WHITE:  Uh-huh.

1          THE COURT:  -- and of the hearing date.  So if -- if

2   you think there are such people, I would encourage you to let

3   the city's attorneys know about that.

4          MS. BECKOM-WHITE:  Uh-huh.

5          THE COURT:  And if any of those people want to seek

6   relief from the Court by way of a motion from any adverse

7   orders that may have been entered regarding their claim on the

8   ground that they didn't receive proper notice, they can do

9   that on their own behalf, but that's -- that's for them to do.

10  Anyway, go ahead.  Anything else?

11         MS. BECKOM-WHITE:  But that was my concern.

12         THE COURT:  Anything else?

13         MS. BECKOM-WHITE:  That was it.

14         THE COURT:  All right.  Thank you.  Now, I'll ask

15  again, anyone else among the creditors who want to speak in

16  the hearing today before we turn -- let the city counsel speak

17  and then conclude the hearing.  All right, I hear nothing.

18  Mr. Willems, did you want to reply?

19         MR. WILLEMS:  Well, Your Honor, as to the

20  individuals who have made a presentation to the Court --

21         THE COURT:  Remember, please speak up so everybody

22  can hear you back there.  Thank you.

23         MR. WILLEMS:  Your Honor, as to the individuals who

24  have made a presentation to the Court, I first pointed out

25  that we haven't heard anything that undermines the city's

1  legal arguments or its arguments on the merits.

2      With respect to Mr. Collins, I'd note that his response,

3  the city did request that it be stricken because it was filed

4  late.  I had the document that we filed in my hand just a

5  second ago, but it's gotten swallowed up in the paper mess

6  over there.  But he doesn't -- he doesn't add anything to his

7  claim.  It appears that he's still -- it's basically a CET

8  claim.

9      With respect to Mr. Wolfe --

10         THE COURT:  Wait, hold on one second, please.

11         MR. WILLEMS:  Yeah.

12         THE COURT:  All right.  Thank you.  Go ahead.

13         MR. WILLEMS:  In fact his original claim, Mr.

14  Collins' original claim didn't even state an amount, it just

15  said compensation earned without any specificity.  So his

16  claim is deficient for that reason.

17      With respect to Mr. Wolfe, I -- I wasn't sure if the

18  Court said that it had not seen our reply in support of

19  forty-fourth -- the city's forty-fourth omnibus objection.

20         THE COURT:  I have seen it, I read it.

21         MR. WILLEMS:  Oh, okay.  All right.  All right.

22         THE COURT:  That was filed last Friday, right?

23         MR. WILLEMS:  Yes.  Yeah, it's --

24         THE COURT:  Yeah, I saw that, I read it.

25         MR. WILLEMS:  Okay.  All right.  As -- as -- as we

1  indicate in that response, or reply, first of all his -- his

2  response should be overruled.  He's -- he's actually bringing

3  in a new claim after the bar date.  He's bringing in now an

4  out of class claim as opposed to the longevity claim that he

5  previously pleaded.

6      So -- and in addition the -- the new claim is -- has been

7  settled as part of a -- an entire group of grievances that --

8  that the city settled as part of the -- the overall labor

9  settlement in -- under the -- under the bankruptcy

10 proceedings.  And Tab 9 behind our -- behind the reply, Tab A9

11 I should say, addresses that.

12      THE COURT:  What is Mr. Wolfe getting as a result of

13 the settlement of his claim regarding out of class pay?

14      MR. WILLEMS:  I don't know what the specifics are.

15 There's a -- there's an omnibus settlement agreement that's --

16 that's at that tab which settles all of the grievances that

17 were filed as part of the AFSCME proof of claim.

18      As you may recall the AFSCME proof of claim had two

19 parts.  It had the -- the first part was a general recitation

20 of a number of broad collective bargaining claims and then as

21 Exhibit 2 it had several -- well, 50 or more pages of

22 individual grievances that were pending at the time of the

23 bankruptcy proceeding.

24      And those were all settled.  I don't have the specifics

25 of how each one was settled.  But Mr. Wolfe's claim is at Page

1  56 of -- of that attachment.  And it -- it -- it specifies

2  that it was a grievance based on out of class payments and the

3  amount is the precisely same amount that -- that he has in his

4  claim here.  So that -- that --

5         THE COURT:  He said that he filed two claims, is

6  that correct?

7         MR. WILLEMS:  His initial claim was based on the --

8  on the elimination of longevity.

9         THE COURT:  Right.

10        MR. WILLEMS:  The second claim, the untimely one was

11 the out of class pay.

12        THE COURT:  Well, you say untimely.  Was it filed

13 actually as a proof of claim, or merely a response to your

14 claim objection?

15        MR. WILLEMS:  Well, it was -- it was filed as a

16 response but it added an entirely new claim.

17        THE COURT:  All right.  So it wasn't as if he filed

18 two proofs of claim in the case.

19        MR. WILLEMS:  He did not file two proofs of claim,

20 no.

21        THE COURT:  Okay.

22        MR. SPINNER:  Your Honor --

23        THE COURT:  Go on, Mr. Willems.

24        MR. SPINNER:  Your Honor, Ron Spinner.  I'm sorry to

25 interrupt.  I'm not entirely certain that there are a second

1  proof of claim.  We just know that at the time what the city

2  has said were to be objected were on the list.  I do not have

3  a collapsed list that says everything by claimant.  So it's

4  possible pending a search there could be a second additional

5  proof of claim and I just don't want to go on the record

6  unless Mr. Willems is certain of that fact.

7        Based on the knowledge we have today there's no second

8  original pre-petition proof of claim.  But I cannot stand

9  before you today for the city and say that for sure.

10             MR. WILLEMS:  I appreciate that correction.

11             THE COURT:  Well, if there is -- if there is, and

12  the city -- I mean eventually the city will object to it if

13  the city has an objection to it, I presume based on it being

14  settled or whatever else there may be for argument.

15             MR. SPINNER:  That's right.  For this purpose here

16  to the extent that Mr. Wolfe is suggesting that his first

17  claim, the one we were checking to longevity is an out of

18  class claim, we're explaining why it won't work as far as an

19  amendment goes.  He can't -- untimely, amendment, all that

20  good stuff.  But his original other claim as filed will remain

21  as it is until -- assuming that there is such a claim, it

22  remains there until we file an objection of course.

23             THE COURT:  All right.  Back to you, Mr. Willems.

24             MR. WILLEMS:  Moving on to Mr. Dorch.  He's claiming

25  a -- a reduction in 2011.  I -- I don't have any information

1  to -- to address that at this moment.

2      It could well be that there's some confusion about the

3  timing.  The -- the -- there were prior to the imposition of

4  the CET's under prior imposed collective bargaining

5  agreements, some reductions.  But if that's what he's talking

6  about, then the argument would be the same.  Those were --

7  those were lawfully imposed in the context of collective

8  bargaining.

9      And then they were -- they were not the CET's, but just

10  by way of quick historical background, the 2008, 2012

11  collective bargaining agreement between the city and AFSCME

12  was initially an imposed, and eventually an agreed to

13  collective bargaining agreement.

14      And under that 2008, 2012 collective bargaining

15  agreement, there were also some reductions that -- including

16  longevity and -- and there may have been some what they call

17  BFR days or 10% cuts, or something along that line.

18      And Mr. Moore, and I haven't had a chance to look this

19  up.  Obviously he's got, as we now understand it, an

20  additional claim on failure to pay checks.  I looked back in

21  his claim and -- and I think that -- that there's probably

22  some language in there that -- that would validate that --

23  that it's part of the original claim.  But that's the -- the

24  -- the failure to properly pay step increases.

25      Distinguishing that from the CET claim, I think that's

1 one where -- I guess I can't imagine that there wouldn't have

2 been a grievance filed or something along that line.  That

3 that wouldn't have been addressed in some way.

4     And what -- what I'd like to do with that one is propose

5 that -- that I take that information back to the city and we

6 look at it and see whether there's a -- there's an issue

7 there.  Obviously with the rest of his claim which is a CET --

8 which is a standard CET claim, all our arguments would still

9 be in play on that one.

10     Ms. Cannon, she hasn't brought anything forth to

11 distinguish her from the other CET claimants and therefore our

12 arguments would hold there.  The same with Ms. McCrary.  Same

13 with Mr. Capizzo, although it looks like he may have also have

14 some claims that would fall under the -- either the confirmed

15 plan, or the emergency manager order 21, but it wasn't clear

16 from his recitation.

17     And I guess the same thing would apply to Ms.

18 Beckom-White.  She didn't present any information to change

19 the nature or the -- the affect of our arguments on her claim.

20 And that's all I have.

21         THE COURT:  All right, just a moment.  All right.

22 Mr. Willems or Mr. Spinner, whoever wants to answer this.  Am

23 I correct in assuming that when the Detroit city council

24 decides whether or not to ratify the proposed settlement of

25 the AFSCME claim and the union -- coalition of unions claim,

1  that the -- that some sort of agreed order will be stipulated

2  to and submitted to the Court for entry if the settlement is

3  approved?  Is that correct or is that not correct?

4          MR. WILLEMS:  That's a correct assumption, Your

5  Honor.

6          THE COURT:  So if it's approved, I will -- the Court

7  will learn about it that way if not some other way.  That is

8  there will be a -- I'll see a stipulation and a proposed order

9  that indicates that it has been -- the settlement has been

10 approved and the city's objections to the claims of those

11 unions are fully settled, is that right?

12         MR. WILLEMS:  That's -- that's correct.

13         THE COURT:  What if the city council does not

14 ratify, decides not to ratify the settlement.  How will the

15 Court know that?  Will it -- will there be something filed

16 relating to the litigation deadlines order that will tell me

17 that or what?

18         MR. WILLEMS:  I mentioned that we would then apprise

19 the Court of the fact that that particular settlement hasn't

20 been approved and there will either be a plan B attempt to

21 settle in some other way, or we may at that point decide that

22 -- or the parties may decide that they should come back to the

23 Court and litigate the issues.

24         THE COURT:  Now currently as you know as I mentioned

25 earlier, the -- the first -- current first deadline in the

1  litigation schedule for the filing of certain summary judgment

2  motions regarding these claims is -- is currently now an

3  extended date of -- I think it was June 28th.

4      So if the city council hasn't acted before then, the

5  parties, I -- I assume were going to come back to the Court

6  and seek another extension order, right?

7          MR. WILLEMS:  We will be, Your Honor.

8          THE COURT:  And when you -- when you do that you

9  will -- I hope you will put something in there to indicate

10  what the status is of the proposed settlement.

11         MR. WILLEMS:  I think we've done that each time and

12  we will certainly do that again.

13         THE COURT:  Yeah.  The last time there was just --

14  the dispute had been settled entirely in principle subject to

15  documentation.  So you'll give me an update of that kind about

16  the status if it has not yet been fully approved you'll tell

17  me what's -- what the status is of the settlements, right?

18         MR. WILLEMS:  We will do that.

19         THE COURT:  Yeah.  All right.  So then I'll -- I'll

20  know one way or the other then in the not too distant future

21  what's going on with the settlements.

22         MR. WILLEMS:  You will indeed.

23         THE COURT:  All right.  All right.  Thank you.

24      With respect to the matters that the Court has just been

25  hearing today, the -- the objection to claim matters the Court

1   has been hearing that the forty-fourth omnibus, the

2   forty-fifth omnibus objections to claim, and the adjourned

3   hearing today on all of the claims that were subject to the --

4   to earlier omnibus objections to claim but which the Court

5   adjourned for hearing to today to give the city and the

6   parties a chance to file briefs, all of which have to do with

7   the city's arguments that these are employee -- so-called

8   employee obligation claims and the arguments that the city

9   makes in its brief that was filed April 21 at docket 11102 and

10  -- and argued further about today.

11      As to those, I'm not going to make a ruling today.  And

12  I'm not going to make any ruling until I -- I see what happens

13  with the proposed settlement between the -- regarding the

14  city's objection to the claims of AFSCME and the coalition of

15  unions that we've talked about today.

16      If the city council of Detroit approves the -- or

17  ratifies the settlement from what's been told -- what I've

18  been told in this hearing, the -- the result of that will be

19  an order that -- that fully resolves the city's objection to

20  the claims of those unions.  And the Court will have no

21  further concern about what impact a ruling on the merits of

22  the arguments presented today and in the April 21 brief may

23  have on the city's objection to the claims against AFSCME and

24  the coalition of unions since those matters will be settled

25  and will not be litigated.

1    And I think it's appropriate for the Court to wait and

2   see if this settlement is approved.  And if the settlement is

3   not approved and it's going to be litigated, and then the

4   dispute is going to be litigated including the issues

5   regarding the imposition of -- of -- of city employment terms

6   and the emergency manager 21 and its affects on employees in

7   the -- and whether or not those adverse actions can give rise

8   to any valid legal claim by anyone in the city's bankruptcy

9   case.

10    I think those issues are issues that would be part of the

11  litigation between the city on the one hand and the AFSCME and

12  coalition of unions on the other regarding their claims.  And

13  I would want the -- before I rule on the merits of those

14  arguments, I would want in that instance the city -- or rather

15  the coalition of unions and the AFSCME to have an opportunity

16  to be heard, to brief and to be heard on those -- the city's

17  arguments that are made in the April 21 brief about that.

18    However that will not be necessary if in fact in the next

19  month to month and a half as -- as the timing is predicted by

20  city's counsel -- city's counsel today in the hearing, the

21  claims -- the objections to claims against the claim of AFSCME

22  and the coalition of unions is settled through a final

23  settlement ratified by Detroit city council.

24    So I'm going to wait to see what happens with this

25  settlement.  That's the short of it before I make any further

1  ruling on these objections to claim that we've talked about

2  today, except Mr. Willems, correct me if I'm wrong, I -- I

3  believe with respect to the forty-fourth and forty-fifth

4  omnibus objections to claim, there have been some creditors

5  who did not file a response to those objections and did not

6  appear today, is that correct?

7            MR. WILLEMS:  That appears to be the case, yes.

8            MR. SPINNER:  Yes, Your Honor.

9            THE COURT:  Does the city want the Court essentially

10  by default to enter an order sustaining the objections as to

11  those creditors and those claims?

12            MR. SPINNER:  I believe that has been the past

13  practice, Your Honor.  And we would -- yes, we would like

14  that.

15            THE COURT:  And the past practice has been -- yes,

16  it has been that.  And -- and, you know, it's up to you, you

17  can tell me.  I'm willing to do that much, that's not really a

18  ruling on the merits.  Basically those claimants are having

19  their claims -- the objection to their claim sustained by

20  default.

21      And so I'll ask the counsel for the city to submit a

22  proposed order, one for each, the forty-fourth, one for the

23  forty-fifth sustaining the objection to claims as to all the

24  claims which no written response was -- neither a written

25  response was filed, nor the creditor -- nor did the creditor

1  appear at today's hearing both.

2       So if the creditor for a particular claim did not file a

3  written response, stricken or not, did not file any written

4  response and did not appear at today's hearing and speak at

5  today's hearing, either one, then I'll sustain the objection

6  as to those -- their claim.  Otherwise not.

7       And so that should be the -- the list of claims and

8  creditors on the list in the orders that -- proposed order

9  that you're going to submit.  Do you -- do you -- do you see

10 what's needed here?

11      MR. SPINNER:  I do.  The only question I have, it

12 sounds like you're suggesting so that we do not include in

13 that Mr. Wolfe because he did appear today.

14      THE COURT:  No, do not include Mr. Wolfe for -- for

15 the time being I'm going to leave him out there as part of the

16 other group and for ruling at a later time.

17      MR. SPINNER:  That's fine, Your Honor.

18      THE COURT:  So Mr. Spinner or Mr. Willems, one of

19 you will submit that order.  I'll waive presentment of these

20 orders, each of them.  Ask you to submit those.  And how

21 quickly can you get those to me?  Tomorrow?

22      MR. SPINNER:  I believe so.  I certainly can work to

23 have that arranged.  I'm traveling to the ABI conference

24 tomorrow, but our paralegal who takes care of this is well

25 versed in this by now and I think we can get through that

1          THE COURT:  All right.  Well, you know, as soon as

2    you can.  Now with respect to the claims that are not going to

3    be sustained, the objection to claims it's not going to be

4    sustained yet at least on the forty-fourth and forty-fifth,

5    plus all the other claims that were adjourned for hearing

6    today.

7        As I said, I'm going to hold off ruling on those.  And so

8    with respect to those, what I'll do is deem them -- deem the

9    objections to those claims submitted for a decision, but the

10   Court's decision will await a determination of whether the

11   objections to claims of the AFSCME claim and the coalition of

12   union claims are -- are settled or not.  And so I'll prepare

13   and enter an order reflecting that. So the exact terms of that

14   will be -- will be known.

15       Now, Mr. Willems or Mr. Spinner, one or the other, I

16   think there was at least one claim that was discussed during

17   today's hearing in which Mr. Willems says -- indicated he

18   wanted to go back to the city and find out more about it.

19       And I think the issue had to do with whether or not the

20   claim was -- involved any aspect or any -- any basis other

21   than the imposition of city employment terms, or the emergency

22   manager order 21.  Or -- or for that matter, a claim that is

23   basically at war with the confirmed plan.  Some other

24   pre-petition claim.

25       I think there was at least one that Mr. Willems indicated

1 | he wanted to check on.  I think that was the claim of Mr.

2 | Moore.

3 | MR. WILLEMS:  It was Mr. Moore.  And -- and he -- he

4 | had asserted that there was a failure to pay step increases

5 | and so he was underpaid for --

6 | THE COURT:  Does the city want an opportunity to

7 | file a supplement to its claim objection regarding Mr. Moore's

8 | claim?

9 | MR. WILLEMS:  We -- I -- I -- that would be --

10 | THE COURT:  Pardon?

11 | MR. WILLEMS:  Yes, I would propose that.

12 | THE COURT:  Any of the other ones heard today that

13 | you want to -- the opportunity to supplement regarding?

14 | MR. WILLEMS:  You know, offhand I -- I -- and none

15 | of the others jump out at me as something that we need to

16 | supplement.

17 | THE COURT:  All right.  All right.  So what sort of

18 | deadline would you like me to set for any such optional

19 | supplement by the city to be filed?  One week enough?

20 | MR. WILLEMS:  One week may not be enough because in

21 | trying to track down this -- this issue it may take longer

22 | than that.  So --

23 | THE COURT:  How much time do you want?

24 | MR. WILLEMS:  I would ask for at least two weeks.

25 | THE COURT:  All right.  That's June 29.  I'll put

1  that in the order.

2          MR. COLLINS:  And, Your Honor --

3          THE COURT:  And as I said, I'll prepare and enter an

4  order reflecting what I've said here and we'll go from there.

5  So I think that concludes matters for today.  Sir, why do you

6  raise your hand?

7          MR. COLLINS:  Your Honor, the attorney --

8          THE COURT:  If you want to -- if you want to speak,

9  come up to the microphone.  But this hearing is basically

10 finished.  So what is it?  You're Mr. Collins?

11         MR. COLLINS:  Yes.

12         THE COURT:  You spoke earlier.

13         MR. COLLINS:  Okay.  Yes, yes, it is.

14         THE COURT:  What is it, sir?

15         MR. COLLINS:  What's that?  The -- the attorney for

16 the city said that I did not submit any -- you know, anything.

17         THE COURT:  Mr. Collins, this is not an opportunity

18 for you to reply to his -- the reply of the city.  They speak

19 last because they're the party objecting.  We're done.

20         MR. COLLINS:  Okay.  Sir, I -- I did submit my

21 claims to the Court and to the clerk.  And I did submit them

22 out for, you know --

23         THE COURT:  Mr. Collins, I just said we're done.

24 Thank you.  All right.  Thank you all and we'll see you next

25 time.

1            MR. COLLINS:  Thank you, Your Honor.

2            THE CLERK:  All rise.  Court is adjourned.

3        (Court Adjourned at 4:31 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7   We certify that the foregoing is a correct transcript from the

8   electronic sound recording of the proceedings in the

9   above-entitled matter.

10

11  /s/Deborah L. Kremlick, CER-4872          Dated: 7-5-16
    Jamie Laskaska

12

13

14

15

16

17

18

19

20

21

22

23

24

25