## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S OBJECTION TO
## CLAIMANT MICHAEL MCKAY'S MOTION TO ENFORCE
## AGREEMENT RESOLVING CLAIM OF MICHAEL MCKAY

The City of Detroit ("City"), by its undersigned counsel, files this Objection to *Claimant Michael McKay's Motion to Enforce Agreement Resolving Claim of Michael McKay* ("Motion," Doc. No. 11157).

## I.    Introduction

1.    Movant Michael McKay seeks to be paid in full on his claim even though he admits that he executed a settlement agreement that states otherwise. McKay asserts that he is entitled to full payment because the City's confirmed plan expressly exempts out 42 U.S.C. § 1983 claims (the basis for McKay's original claim) from discharge.  McKay's argument fails, however, because he signed a settlement agreement which released the officers from all liability related to the arbitration award in exchange for a resolution of his claim against the City.  The Court has previously reviewed the language used in McKay's settlement agreement and determined that it unambiguously releases City officers from any liability.  For these reasons, the City asks this Court to deny McKay's Motion.

## II.  Background

2.  In or around late 2009, McKay filed a complaint in the Wayne County Circuit Court ("State Court Action") alleging violations of 42 U.S.C. § 1983 by Detroit Police Officers Watkins, Person, and Clark (the "Officers").  The matter was referred to arbitration, and on May 16, 2013, the arbitration panel ruled in McKay's favor.

3.  Shortly thereafter, on July 18, 2013 ("Petition Date"), the City filed a petition for relief in this Court, commencing its chapter 9 bankruptcy case.  On February 20, 2014, McKay filed unsecured claim number 1573 in the amount of $42,500 ("Proof of Claim," Ex. A).

4.  As McKay readily admits, the City and McKay resolved the Proof of Claim, entering into the *Agreement Resolving Claim of Michael McKay* ("Settlement Agreement," Ex. B; *also* Motion, Ex. 4).  The Settlement Agreement provides that McKay has a "General, unsecured, nonpriority" claim in the amount of $42,500.[1]  Settlement Agreement, ¶ 2.

5.  As part of the Settlement Agreement, McKay released the City and the Officers from liability.  *Id.*, ¶ 8.  The Settlement Agreement release states:

---

[1] Due to a clerical error, the City mistakenly treated the settled claim as a Class 15 Convenience Claim under the Plan and issued McKay a check in the amount of $10,625. The settled claim, however, will be treated as a Class 14 Other Unsecured Claim under the Plan.

26797799.4\022765-00213

> As to the Filed Claims and Settled Claims described herein, the Claimant releases the City from any and all liability, actions, damages and claims (including claims for attorney fees, expert fees or court costs), known and unknown, arising or accruing at any time prior to and after the date of this Agreement, that the Claimant has or may have against the City. . . . As used in this Agreement, the Claimant and the City include each of their respective servants, agents, . . . employees, . . . .

*Id.*, ¶ 8.

6.    Pursuant to the Settlement Agreement, McKay also agreed to dismiss the State Court Action with prejudice. *Id.* ¶ 9.

7.    Despite McKay's settlement of the Arbitration Award and agreement to dismiss the State Court action with prejudice, on March 14, 2016, McKay obtained an order in the State Court Action directing the Officers to pay "the amounts due to Plaintiff under the Arbitration Award issued in this matter on May 16, 2013 within 60 days of entry of this order[.]" Motion, Ex. 3.

## III.   Argument – McKay released the City and the Officers from liability

8.    This Court should deny the Motion because the Settlement Agreement released McKay's arbitration award claim against the City and the Officers.

9.    The Court considered the effect of the language in the Settlement Agreement when it heard a previous matter involving Gregory Phillips.[2]   After

---

[2] See the *City of Detroit's Motion to Enforce Settlement Agreement and Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition* Continued on next page.

- 3 -

reviewing the Phillips Filings, the Court held a hearing on January 13, 2016. *See* Transcript of January 13, 2016 Hr'g ("Transcript," Ex. C).[3] After hearing argument, the Court concluded that the settlement agreement at issue in the Phillips Filings was unambiguous and that it released any claims Phillips had against the City and the individual police officer involved. Transcript, 44:2-45:24. The Court noted that the definition of the "City" in the agreement included City servants, agents, and employees, all of which included Police Officer Severy (the officer involved in the Phillips matter) both in his official and his individual capacities. Transcript, 45:1-9.

10. Further, the Court examined paragraph 9 of the settlement agreement involved in the Phillips Filings (which mirrors the language in paragraph 9 of the Settlement Agreement here). The Court found

---

Continued from previous page.
*Claims Against Gregory Phillips and/or Dominique McCartha as Personal Representative for the Estate of Gregory Phillips, Deceased* ("Phillips Motion," Doc. No. 10272), Phillips's response ("Phillips Response," Doc. No. 10685), and the City's reply ("Phillips Reply," Doc. No. 10723, and collectively with the Phillips Motion and the Phillips Response, the "Phillips Filings").

[3] Unlike in Phillips, McKay cannot allege that he was unaware of the possibility that section 1983 claims against officers in their individual capacity would not be subject to the City's confirmed plan. McKay took this exact position in his objections to confirmation of the City's plan. *See* Doc. Nos. 6911 and 6955. McKay and his law firm, Romano Law, were also active participants in the City's bankruptcy case. Doc. No. 2211 at 1 (objection to the Alternative Dispute Resolution procedures filed by Romano Law on behalf of McKay, among others); Doc. No. 2476 (motion filed by Romano Law for the appointment of a committee of section 1983 members).

26797799.4\022765-00213

> that [paragraph 9 of the settlement agreement] is clear that the entire civil action in the District Court which was -- included the claims against both the city and the officer, in the officer's official and individual capacity were to be dismissed with prejudice and the respondent agreed to that as part of this settlement. That further confirms that all claims, including the claims against the officer and the officer's individual and official capacities were released under Paragraph 8 of the settlement agreement.

Transcript, 45:16-24.

11. The Settlement Agreement here contains exactly the same language as the one in the Phillips Filings, and thus, the release and agreement to dismiss with prejudice function in exactly the same manner. McKay released any claims he had against the Officers, just as Phillips had released his claims against Police Officer Severy via his release.

## IV. Conclusion

12. McKay cannot claim he deserves payment in full because he still has claims against the Officers. He does not; he released them. He is entitled to exactly what he agreed to accept and what he currently holds—a general unsecured claim in the amount of $42,500, which will be paid in due course with all other such claims. For these reasons, the City respectfully requests that the Court enter an order denying the Motion.

26797799.4\022765-00213

Dated: May 20, 2016

MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.

By: /s/ Marc N. Swanson
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

- and -

CITY OF DETROIT LAW DEPARTMENT

Charles N. Raimi (P29746)
James Noseda (P52563)
Jerry L. Ashford (P47402)
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
Phone: (313) 237-0470
Email: raimic@detroitmi.gov

Attorneys for the City of Detroit

## **EXHIBIT LIST**

Exhibit A             Proof of Claim # 1573

Exhibit B             Settlement Agreement

Exhibit C             Transcript of January 13, 2016, Hearing

Exhibit D             Certificate of Service

# EXHIBIT A – PROOF OF CLAIM NUMBER 1573

In its List of Claims,
in an unknown amount.  To determine if you need to file a claim, please refer to the enclosed Information
About Deadlines to File Claims.

B10 (Official Form 10) (04/13) (Modified)

**UNITED STATES BANKRUPTCY COURT      EASTERN DISTRICT of MICHIGAN**

**FILED**

CHAPTER 9
PROOF OF CLAIM

Name of Debtor: **City of Detroit, Michigan**            Case Number: **13-53846**

**FEB 2 0 2014**

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*

US COURT USE ONLY
MI Eastern District

Name of Creditor (the person or other entity to whom the debtor owes money or property):

**Mckay, Michael**

☐ Check this box if this claim amends a
previously filed claim.

Name and address where notices should be sent:    NameID: 11701801
Mckay, Michael
Romano, Daniel G.
Romano Law PLLC
23880 Woodward Ave
Pleasant Ridge, MI 48069

**Court Claim Number:** _____
(*If known*)

Filed on: _____

Telephone number:              email:

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that
anyone else has filed a proof of claim
relating to this claim. Attach copy of
statement giving particulars.

**RECEIVED**

Telephone number:              email:

**FEB 2 4 2014**

KURTZMAN CARSON CONSULTANTS

**1. Amount of Claim as of Date Case Filed:**    $ 42,500 00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** CIVIL RIGHTS VIOLATION / ARBITRATION AWARD
(See instruction #2)

**3.  Last four digits of any number by which creditor identifies debtor:** 2654

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a)

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of
setoff, attach required redacted documents, and provide the requested information.

**Amount of arrearage and other charges, as of the time case was filed,
included in secured claim, if any:**
                                    $_____

Nature of property or right of setoff: ☐Real Estate  ☐Motor Vehicle  ☐Other
Describe:

**Basis for perfection:** _____

Value of Property: $_____

**Amount of Secured Claim:**    $_____

Annual Interest Rate (when case was filed)_____% ☐Fixed  or  ☐Variable

**Amount Unsecured:**    $_____

**5. Amount of Claim Entitled to Priority as an Administrative Expense under 11 U.S.C. §§ 503(b)(9) and 507(a)(2).**    $_____

**5b. Amount of Claim Otherwise Entitled to Priority.  Specify Applicable Section of 11 U.S.C. § _____.**    $_____

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)* DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction # 8)
Check the appropriate box.

☐ I am the creditor.    ☒ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
                                                or their authorized agent.        (See Bankruptcy Rule 3005.)
                                                (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: ERIC STEMPIEN
Title: ATTORNEY
Company: ROMANO LAW PLLC
Address and telephone number (if different from notice address above):

(Signature)                    (Date) 2/18/14

(248) 750 0270

Telephone number:              email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

STATE OF MICHIGAN
INDEPENDENT ARBITRATION

MICHAEL McKAY,

        Claimant,

-vs-

DETROIT POLICE OFFICER MYRON WATKINS,
DETROIT POLICE OFFICER FREDERICK PERSON
and DETROIT POLICE OFFICER KEVIN CLARK,

        Respondents.

_____/

Daniel G. Romano    P 49117
Attorney for Claimant

Dennis Burnett    P 27099
Attorney for Respondent

_____/

## ARBITRATION AWARD

Michael McKay, Claimant is hereby awarded $ 42,500.00 for his claims against

Detroit Police Officer Myron Watkins, Detroit Police Officer Frederick Person and Detroit

Police Officer Kevin Clark, Respondents, arising out of an incident that occurred on July

24, 2009.

    This award is inclusive of any/all interest, costs, attorney fees and set-offs.


_____
David T. Hill

_____
Daniel P. Makarski

_____
Joyce E. Parker

Date:  May 16, 2013
2246192_1

# EXHIBIT B – SETTLEMENT AGREEMENT

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RECEIVED

DEC 16 2015

CITY OF DETROIT
LAW DEPARTMENT
LITIGATION DIVISION

```
-------------------------------------------------- x
                                           :
In re                                      :   Chapter 9
                                           :
CITY OF DETROIT, MICHIGAN,                  :   Case No. 13-53846
                                           :
                       Debtor.             :   Hon. Steven W. Rhodes
                                           :
-------------------------------------------------- x
```

## AGREEMENT RESOLVING CLAIM OF MICHAEL McKAY

The City of Detroit (the "City") and the claimant identified in paragraph 2 below (the "Claimant" and, together with the City, the "Parties"), by and through their respective authorized representatives, do hereby agree as follows:

### RECITALS

A.   On July 18, 2013, the City commenced the above-captioned case (the "Chapter 9 Case") by filing a petition for relief under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court").  On December 5, 2013, following its determination that the City met all of the applicable requirements and is eligible to be a debtor under chapter 9 of the Bankruptcy Code, the Bankruptcy Court entered the Order for Relief Under Chapter 9 of the Bankruptcy Code (Docket No. 1946) with respect to the City.

B.   Pursuant to section 904 of the Bankruptcy Code, the City may continue to exercise its political and governmental powers, manage its property and revenues and use and enjoy its income-producing property without interference from the Bankruptcy Court.

C. On December 24, 2013, the Bankruptcy Court entered the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims (Docket No. 2302) (the "ADR Order") establishing certain alternative dispute resolution procedures (collectively, the "ADR Procedures") to promote the resolution of certain claims designated by the City.

D. The Claimant is the current record holder of the proof[s] of claim identified under the heading "Filed Claim Number" in the table in paragraph 2 below (the "Filed Claim[s]").

E. The City (i) reviewed the Filed Claim[s] and the facts and circumstances of the alleged liabilities asserted therein and (ii) designated the Filed Claim[s] for potential resolution through the ADR Procedures.

F. The City believes that the resolution of the Filed Claim[s] as set forth in this Agreement is fair, reasonable and appropriate and will allow the Parties to avoid the cost, delay and burden of litigating potential disputes related to the Filed Claim[s]. In accordance with the ADR Order, the resolution of the Filed Claim[s] set forth in this Agreement terminates the ADR Procedures with respect to the Filed Claim[s] pursuant to section II.A.7 of the ADR Procedures.

G. Pursuant to section 904 of the Bankruptcy Code, the City is authorized to propose and enter into this Agreement without further order of the Bankruptcy Court.

H. The undersigned is authorized to enter into this Agreement on behalf of the City pursuant to a confidential memorandum dated March 25, 2014 that was issued to the City of Detroit Corporation Counsel by Kevyn Orr, Emergency Manager for the City of Detroit, entitled Litigation Claim Settlement Authority.

I. The Parties have agreed to the terms set forth in this Agreement, as indicated by the signatures of their respective authorized representatives below.

# AGREEMENT

1. The Claimant represents and warrants to the City that it has not sold, assigned, factored or otherwise transferred any portion of or interest in the Filed Claim[s] and is the sole holder of the Filed Claim[s], with full authority to enter into this Agreement. The Claimant further agrees to indemnify and hold the City harmless for any damages, including without limitation actual and reasonable out of pocket costs, resulting from a breach of its representations and warranties set forth in this paragraph.

2. The Filed Claim[s] is deemed amended, modified and allowed as a general unsecured, nonpriority claim (any such claim, a "Settled Claim") in the corresponding amount set forth in the table below under the heading "Settled Claim Amount":

| Claimant | Filed Claim Number | Filed Claim Amount | Filed Claim Priority | Settled Claim Amount | Settled Claim Priority |
|---|---|---|---|---|---|
| Michael McKay | 1573 | $42,500.00 | General unsecured, nonpriority | $42,500.00 _1983_ | General unsecured, nonpriority |

3. The Parties agree that any Filed Claim identified in paragraph 2 above for which there is no corresponding Settled Claim (or such amount is listed as $0.00) is hereby withdrawn and deemed disallowed and expunged, pursuant to section 502 of the Bankruptcy Code.

4. The Claimant will not further amend the Filed Claim[s] (or the Settled Claim[s]) or file any additional proofs of claim with respect to the liabilities asserted in the Filed Claim[s]. Any further amendments to the Filed Claim[s] (or the Settled Claim[s]) or any additional claims filed by the Claimant or their successors or assigns with respect to the liabilities asserted in the Filed Claim[s] shall be null, void and of no effect.

5. The Parties agree that any Settled Claim is a general unsecured, nonpriority claim, subject to the treatment provided for such claims under any chapter 9 plan for the adjustment of debts confirmed by the Bankruptcy Court (a "Plan").

6.   Any distribution made to the Claimant pursuant to a Plan is referred to herein as a "Plan Distribution." If the Claimant or its successors or assigns receive payment of any portion of the Settled Claims from any source, including from the City, other than through the Plan (a "Non-Plan Payment"), the portion of the Settled Claim[s] equal to the amount of the Non-Plan Payments shall be deemed fully satisfied, and the Claimant, for itself and any successors or assigns, hereby prospectively waives and disclaims the right to receive Plan Distributions on account of the portion of the Settled Claim[s] satisfied by any Non-Plan Payments.

7.   Nothing in this Agreement will have any impact on any proof(s) of claim that the Claimant has filed or holds other than the Filed Claim[s]. The Parties retain all of their respective claims, defenses, objections, counterclaims and any and all rights in respect of any proofs of claim that the Claimant has filed or holds other than the Filed Claim[s].

8.   As to the Filed Claims and Settled Claims described herein, the Claimant releases the City from any and all liability, actions, damages and claims (including claims for attorney fees, expert fees or court costs), known and unknown, arising or accruing at any time prior to and after the date of this Agreement, that the Claimant has or may have against the City. The Claimant acknowledges that this Agreement represents the compromise of a disputed claim and is not to be construed as an admission of liability on the part of the City. As used in this Agreement, the Claimant and the City include each of their respective servants, agents, contractors, attorneys, employees, representatives, family members, heirs, elected officials, appointed officials, related corporations, subsidiaries, divisions, affiliates, directors and officers, if any.   Where required by the City, the Claimant has executed the Medicare Reporting and Indemnification Affidavit[s], if any, attached as Exhibit A.

9.   The Claimant stipulates to dismissal with prejudice of the civil action[s] related to the Filed Claims or Settled Claim[s] in the form attached hereto as Exhibit B.

10.   This Agreement may be executed in identical counterparts, and/or by facsimile or e-mail scan, each of which when so executed and delivered will constitute an original, but all of which taken together will constitute one and the same instrument.   This Agreement constitutes the entire agreement between the

Parties with respect to the matters addressed herein and may not be modified except in a writing signed by the Parties.

WHEREFORE, the undersigned have executed this Agreement on behalf of the parties hereto.

CITY OF DETROIT                                    MICHAEL McKAY

By: KRYSTAL A. CRITTENDON          _____
                                                                   (signature)

Name: _____          Date: _6/23/2014_____
            (Signature)

Name: _KRYSTAL A. CRITTENDON_
            (Print Name)

Title: _Supervising Asst. Corp-Counsel_

Date: _12-16-15_____

Date: _____

                                                                   Claimant(s) counsel:

                                                                   DANIEL G. ROMANO


                                                                   _____
                                                                        (signature)

                                                                   Name:_____
                                                                              (printed)

                                                                   Date:_____

# **EXHIBIT C – TRANSCRIPT OF JANUARY 13, 2016, HEARING**

<pre>
 1              UNITED STATES BANKRUPTCY COURT
                EASTERN DISTRICT OF MICHIGAN
 2                  SOUTHERN DIVISION

 3  IN THE MATTER OF,           Case No. 13-53846
                                Detroit, Michigan
 4  CITY OF DETROIT, MICHIGAN   January 13, 2016
    _____/ 1:32 p.m.
 5
         IN RE: CITY OF DETROIT'S MOTION TO ENFORCE SETTLEMENT
 6    AGREEMENT AND ORDER PURSUANT TO SECTIONS 105 AND 502 OF THE
       BANKRUPTCY CODE, APPROVING ALTERNATIVE DISPUTE RESOLUTION
 7   PROCEDURES TO PROMOTE THE LIQUIDATION OF CERTAIN PRE-PETITION
     CLAIMS AGAINST GREGORY PHILLIPS AND/OR DOMINIQUE MCCARTHA AS
 8    PERSONAL REPRESENTATIVE FOR THE ESTATE OF GREGORY PHILLIPS,
                           DECEASED.
 9         BEFORE THE HONORABLE THOMAS J. TUCKER
             TRANSCRIPT ORDERED BY: ROBIN WYSOCKI
10
    APPEARANCES:
11
    For the City of Detroit, MI:  MARC SWANSON, ESQ. (P71149)
12                                 Miller, Canfield, Paddock &
                                   Stone
13                                 150 W. Jefferson
                                   Suite 2500
14                                 Detroit, MI 48226
                                   313-496-7591
15
                                   JAMES D. NOSEDA, ESQ. (P52563)
16                                 City of Detroit Law Department
                                   Administration Coleman A. Young
17                                 Municipal Center
                                   2 Woodward Avenue
18                                 Suite 500
                                   Detroit, MI 48226
19                                 313-237-5037

20  For Dominique McCartha as     SHAWN C. CABOT, ESQ. (P64021)
    Personal Representative for   9750 Highland Road
21  the Estate of Gregory         White Lake, MI 48386
    Phillips, Deceased:           248-886-8650
22
    Court Recorder:               Jamie Laskaska
23
    Transcriber:                  Deborah L. Kremlick
24
    Proceedings recorded by electronic sound recording, transcript
25  produced by transcription service.
</pre>

1      (Court in Session)

2           THE CLERK:  All rise.  This Court is now in session.

3    The Honorable Thomas J. Tucker is presiding.  You may be

4    seated.  The Court calls the case of the City of Detroit,

5    Michigan, case number 13-53846.

6           THE COURT:  Good afternoon.  Let's have entries of

7    appearance, please, starting with counsel for the city.

8           MR. NOSEDA:  Good afternoon, Your Honor.  James

9    Noseda, the City of Detroit Law Department for the City of

10   Detroit.

11          MR. SWANSON:  Good afternoon, Your Honor.  Marc

12   Swanson on behalf of the City of Detroit.

13          MR. CABOT:  Good afternoon, Your Honor.  Shawn Cabot

14   on behalf of the plaintiff in the original City of Detroit

15   case.

16          THE COURT:  All right.  Good afternoon.  Mr. Cabot,

17   so that means does it, that you represent Dominique McCartha,

18   personal representative of the estate of Gregory Phillips?

19          MR. CABOT:  That's correct, Your Honor.

20          THE COURT:  Okay.  All right.

21          MR. CABOT:  Thank you.

22          THE COURT:  Thank you.  All right.  Well, this is a

23   hearing on the motion filed by the City of Detroit to enforce

24   settlement agreement and for related relief.

25          And I have reviewed the papers filed by the parties

1  relating to this motion.  And we'll hear oral argument on it

2  now starting with counsel for the city.

3       MR. NOSEDA:  Good afternoon, Your Honor.  I don't

4  think I have appeared before you before on the record.  Mr.

5  Swanson wrote the motion here and my boss deputy co-counsel

6  Mr. Raimi worked on the reply.  He was not available.  He

7  intended to argue the motion, so I got volunteered.  But I've

8  been very actively involved in the entire bankruptcy process

9  for the city.

10       THE COURT:  And your name is pronounced Noseda?

11       MR. NOSEDA:  Noseda.

12       THE COURT:  Okay.

13       MR. NOSEDA:  Correct.

14       THE COURT:  Thank you.  Go ahead.

15       MR. NOSEDA:  As you know the city has moved to

16  enforce the settlement agreement that was made under the

17  auspices of this bankruptcy proceeding, claim number 1155

18  filed by Dominique McCartha as the personal rep for Gregory --

19  Gregory Phillips.

20       The claimant executed an agreement resolving claims of

21  Dominique McCartha as personal representative of the estate of

22  Gregory Phillips.  It's Exhibit 6 to the city's motion.

23       That agreement released all claims against the city and

24  its employees which includes Detroit Police Department Officer

25  Ian or Ian Severy.  The settlement agreement stipulates to

1 dismiss with prejudice the civil lawsuit upon which the

2 bankruptcy claim was made.

3      Some ten months after settling her bankruptcy claim

4 lawsuit, plaintiff moved in the District Court to reopen the

5 lawsuit which has required the city to bring this motion.  If

6 the Court doesn't mind, I'd like to briefly go through a

7 chronology of the events because I think it's pertinent to

8 what occurs here.

9           THE COURT:  Go ahead.  I have read the briefs filed

10 by the parties.

11      `    MR. NOSEDA:  Right.

12           THE COURT:  Including the reply, but go ahead.

13           MR. NOSEDA:  Well, there's just a couple of things

14 I'd like to add that weren't in the motion and they are part

15 of it.  They are otherwise part of the bankruptcy record.

16      As the Court knows there was orders issued in July of

17 2013, issuing a stay and injunction as to the City of Detroit

18 and including its employees.  On November 12, 2013, the city

19 moved for entry of an ADR order with procedures for claims

20 like this one based upon lawsuits against the city.

21      This -- the underlying lawsuit here was filed in 2011

22 against the City of Detroit and Officer Severy.  On December

23 24th this Court entered an ADR order and approved the ADR

24 procedures.

25      Before that order was entered, Deborah Ryan and Walter

1  Swift had filed objections to the ADR motion.  That's at

2  docket number 1866 and 2140.  They raised a number of

3  arguments but they contended that the ADR procedures as to

4  Section 1983 claimants was unfair and unconstitutional.

5      When the Judge entered the ADR order, I can only presume

6  it was in response to the objections filed by Ryan Swift.  He

7  included Paragraph 20 of the order that referred all pending

8  Section 1983 lawsuits in Federal Court to Judge Rosen for

9  mediation.  Judge Rosen is the chief mediator in bankruptcy

10 delegated the 1983 claim mediation to Judge David Lawson.

11     The ADR order provides that all settlements shall include

12 a release of all claims relating to the underlying occurrence,

13 including claims against any party to whom the stay/injunction

14 applies.  And that means Officer Severy, any city employee.

15     On February 18th the plaintiff --

16          THE COURT:  This is something that was in the ADR

17 order.

18          MR. NOSEDA:  It's in the ADR order.  And it's in the

19 procedures.

20          THE COURT:  And it imposed that requirement ahead of

21 time before any settlements were made.

22          MR. NOSEDA:  Long before, yes.  We -- we didn't

23 start -- the proofs of claims weren't due until February 24,

24 2014.  And we had to wait until KCC gathered them all together

25 and categorized them and created a docket and all the other

1  things they did.

2       So by April of 2014, the law department was tasked with

3  processing and trying to resolve over 1,400 claims.  And

4  that's what we've been busy doing for the last couple of

5  years.

6       So claimant filed her proof of claim number 1155 based

7  upon her pre-petition lawsuit.  She attached a copy of the

8  complaint to that claim.

9       In April or May of 2014, before we commenced mediation

10  with Judge Lawson of the Section 1983 claims, city attorneys

11  met with claimants, particularly those like Mr. Trainor who

12  represented multiple -- who had multiple claims representing

13  multiple different lawsuits.  And we did resolve a fair number

14  of lawsuits, claims through that process.  Those that we did

15  not we referred -- we -- we notified Judge Lawson.

16       On June 30th at docket number 5679, Judge Lawson issued an

17  ADR notice requiring the facilitation of the claim 1155 on

18  July 17, 2014.  The claim was not resolved by facilitation.

19       On July 18, because the matter had not been resolved by

20  facilitation, the city exercised its right under the ADR

21  orders and filed a stay modification notice under which the

22  claimant could liquidate her claim by pursuing the litigation

23  in the District Court.

24       Regardless of whether we file the stay modification

25  notice, under Paragraph 16 of the ADR order, the city had the

1  right to settle any claim at any time.  And in fact we have

2  settled many claims after lifting the stay.

3      On September 2nd -- on September 2nd, 2014, plaintiff's

4  counsel filed a motion in this Court to withdraw as counsel on

5  claim number 1155.  That's at docket 7313.  The motion stated

6  there was a breakdown in the attorney client relationship and

7  it sought the right to withdraw as counsel not only for claim

8  1155, but as to the entire matter in the Eastern District of

9  Michigan Southern Division, which I presume means the

10  underlying civil lawsuit.

11      A mere seven days later, Mr. Trainor's office sent an

12  email to the law department to Ms. Krystal Crittendon, another

13  supervisor in litigation, and asked that we please send their

14  office a $25,000 settlement agreement in regard to the above

15  referenced matter at their earliest convenience because their

16  client had agreed to accept the same.

17      So we promptly sent out an executed on our behalf, ADR

18  agreement.  It was signed by the claimant on September 26th, I

19  believe, and was returned by mail signed also by Mr. Trainor's

20  office on October 22nd.

21      So apart from making payment on that claim under the plan

22  and dismissal of the underlying federal lawsuit, that should

23  have been the end of the matter.  But plaintiff had second

24  thoughts and she now wants to pursue, despite the settlement

25  agreement, she wants to pursue her lawsuit.

1    They make a number of arguments which are addressed in

2  our reply brief, but I'd just like to go over them quickly if

3  I may.  First, she claims that the release does not extend to

4  Officer Severy.  That's plainly contradicted by Paragraph 8 of

5  the ADR agreement, the settlement agreement, which says that

6  it applies -- the release of all claims applies to the city

7  and its employees.

8    And as I noted earlier, this would be consistent with and

9  in fact required by the ADR procedures order at Section

10  (II)(d)(2) that all settlements include a release of claims

11  against any party to whom the stay injunction applies.

12         THE COURT:  That's page what of the ADR order?

13         MR. NOSEDA:  It's in the procedures.

14         THE COURT:  Oh, the procedures, okay.

15         MR. NOSEDA:  And I think it's Page 19 of the

16  procedures.  They're all very long.

17         THE COURT:  Hold on.

18         MR. NOSEDA:  Yeah, it's Page 19 of the ADR

19  procedures.

20         THE COURT:  All right.  I see that provision in

21  there.  Just for the record I'm looking at docket number 2302,

22  the document filed there which is the ADR -- so-called ADR

23  order which had the ADR procedures attached to it, I believe,

24  at that same docket number.  Go ahead.

25         MR. NOSEDA:  All right.  So we were obviously

1   following the Court's order when we prepared that release and

2   then made it part of the settlement agreement that was signed.

3       As I'm sure this Court is aware, Courts favor compromise.

4   They jealously seek to enforce them as -- as was stated by the

5   6th Circuit in Aro Corporation v Allied Witan Company.  Courts

6   have a duty to enforce settlement agreements.

7       They continue in that case by noting that, "even in those

8   instances in which the Court's original jurisdiction may have

9   been questionable, it has jurisdiction over settlement

10  agreements, the execution of which renders the prior

11  controversy academic".

12      I think that's quite important because to the extent that

13  plaintiff argues that somehow this -- her claim wasn't subject

14  to bankruptcy, well, it was at the time that the agreement was

15  made.  And while there might have been a subsequent ruling to

16  the contrary, Courts favor enforcement of settlements.

17  Parties willing to and knowingly make whatever agreements they

18  want.

19      And the Courts -- as the -- as the Court said later in

20  Aro, that agreements settling litigation are solemn

21  undertakings invoking a duty upon the involved lawyers as

22  officers of the Court to make every reasonable effort to see

23  that the agreed terms are fully and timely carried out.

24  Public policy strongly favors settlement of disputes without

25  litigation.  That's at Page 1372 of the Aro decision.

1    With that in mind plaintiff argues -- or claimant argues

2   that the settlement agreement cannot be enforced because it

3   does not say when she would be paid.  Well, I've executed

4   countless settlement agreements in all kinds of contexts and

5   most of them don't say when someone is going to be paid, just

6   that they will be paid.  It sets an amount, and sets the terms

7   and conditions.  That doesn't -- it's not a material term and

8   in fact if a party fails to comply with a payment obligation

9   under a settlement agreement, Courts don't hesitate to make

10   that happen.

11    But for the fact that plaintiff has decided to ignore or

12   seek to evade the settlement agreement, we would have

13   processed payment of this claim.  The law department has been

14   very busy over the last many months pursuant to a Court order

15   processing first hundreds of first and third party motor

16   vehicle claims; and then we followed it up and we're

17   processing all the convenience claims which this falls under a

18   convenience claim.

19    So I don't think there's any -- the -- the specific

20   delineation of a timing of payment does not initiate a

21   settlement agreement and nor is it an essential term.

22    THE COURT:  Well, what does the confirmed plan say

23   in terms of when the payments to be made to this class of

24   claim is to be made?

25    MR. NOSEDA:  It does leave it up to the city because

1   --

2              THE COURT:  No specific deadline then.

3              MR. NOSEDA:  No specific deadline.

4              THE COURT:  It just says they will receive X.

5              MR. NOSEDA:  If they -- depending on what the

6   classification of the claim is, this is a convenience claim.

7              THE COURT:  This class, those convenience claims.

8              MR. NOSEDA:  Right, right.

9              THE COURT:  Yeah.

10             MR. NOSEDA:  And --

11             THE COURT:  Which is class what?

12             MR. NOSEDA:  Fifteen.

13             THE COURT:  Fifteen?

14             MR. NOSEDA:  Fifteen, right.  And I mean it's --

15  originally this would have been a Class 14 claim but because

16  they elected -- anything that falls 25,000 or less became a

17  convenience claim.  So as I said we have been processing

18  those.

19             THE COURT:  Yeah.

20             MR. NOSEDA:  And I hope to report to the Court at

21  some date on the status of those because just as an aside we

22  have hired a special project coordinator to facilitate getting

23  that all done and tracked so that we can make sure the Court's

24  aware of the efforts we've undertaken.  It's been quite a --

25  quite an undertaking.

1    Plaintiff contends there was no meeting of the minds

2  because it was possible that Section 1983 claims would not be

3  subject to bankruptcy, claiming fraud and concealment.  I mean

4  that's just offensive and false.

5    First of all, the issue was not discussed to my knowledge

6  with the plaintiff here.  The issue of bankruptcy application

7  to the Section 1983 claims wasn't decided until a couple of

8  months after this agreement was signed by the plaintiff.

9  There was nothing for the city to tell the claimant.  And the

10  city had no duty to tell the claimant hey, you know, you could

11  file an objection.  And other parties had.

12    Which by the way there were -- those were public records.

13  They were readily available.  They were widely discussed in

14  the plaintiff's community.  It was no secret that there were

15  many litigants who believed that Section 1983 claims against

16  the individual officers -- actually all 1983 claims weren't

17  subject to bankruptcy.

18    So I mean the Court -- the city certainly didn't know

19  when this agreement was made how the Court would rule on that

20  issue.  Or for that matter whether the plan would be approved

21  under what terms and conditions.

22    So there certainly was a meeting of the minds.  There's

23  nothing to substantiate that claim.  And as I said the

24  suggestion of fraud is simply offensive and unsubstantiated.

25    No false statements have been identified.  Claimant had

1  experienced counsel who could have conducted -- should have

2  done due diligence as to the terms of the plan, the applicable

3  law, the documents that were filed and freely available on the

4  internet regarding objections to 1983 claims.  And claimant

5  simply can't claim to be defrauded where she chose to ignore

6  information that was available to her.

7      Finally, plaintiff contends that somehow under the -- and

8  I don't know how to say this, Ozyagcilar and Thermoscan cases,

9  that the settlement agreement can't be enforced.  Those cases

10 simply don't apply.  Neither of those cases involve the

11 complete executed settlement agreement which provides that it

12 is the full agreement between the parties.

13     There is no dispute here about the terms of the

14 settlement agreement as there was in Ozyagcilar where there

15 was an outline that the parties disputed.  They asked the

16 Court to decide and the Court -- Court of Appeals said that

17 wasn't for -- that wasn't appropriate.  There had -- there was

18 -- there was not an actual settlement -- actually be the

19 settlement agreement.

20     The same is true of the Thermoscan case where there was

21 no actual executed settlement agreement.  And the Court there

22 ordered a party to sign an agreement drafted by the other

23 party with which it disagreed.  So -- there's nothing like

24 that in this case.

25     And in summary, no one made the claimant settle this

1  case.  No one made her sign the agreement.  She was under no

2  obligation whatsoever to settle.  She had competent and

3  experienced counsel.  Counsel that was handling a number of

4  other bankruptcy claims, including Section 1983 claims.

5      There were no false representations made.  This agreement

6  is complete.  It was signed when the outcome in bankruptcy was

7  unknown.  I mean if this claimant can avoid the settlement

8  agreement she freely executed, so can countless other

9  claimants.  Section 1983 and possibly otherwise who chose

10  instead to avoid uncertainty and settle their claims.

11      This settlement agreement must be enforced and the Court

12  should order the plaintiff to stipulate to dismiss the

13  underlying federal lawsuit which she agreed to do in the

14  settlement agreement.  If the Court has any questions for me.

15          THE COURT:  The status of the District Court case is

16  what?  Is it sitting --

17          MR. NOSEDA:  It was reopened --

18          THE COURT:  -- sitting still waiting to see what

19  this Court does?

20          MR. NOSEDA:  Yes, nothing's happening.  We have -- I

21  -- I believe Mr. Swanson was involved.  We had filed a motion

22  to dismiss based on the settlement agreement.  And after it

23  fully briefed Judge Avern Cohn just didn't rule.

24      And I think he left us to -- to resort to this Court

25  which I believe is the appropriate forum because this Court

1 | retained jurisdiction to oversee, enforce not only agreements

2 | made in the bankruptcy, but the terms and provisions of the

3 | plan. And this really is the appropriate forum.

4 | THE COURT: So you've made similar arguments to what

5 | you're making in this in a motion to dismiss filed in the

6 | District Court action but there's been no ruling on it.

7 | MR. NOSEDA: The Court did not rule.

8 | THE COURT: All right.

9 | MR. NOSEDA: Mr. Swanson has reminded me that what

10 | occurred was they filed a motion to reinstate the case in

11 | Federal Court and we objected on the grounds that the claim

12 | was barred by the settlement agreement. The Judge has not

13 | ruled on it and it's been quite some time. And we're under

14 | the impression he doesn't intend to rule on it.

15 | THE COURT: He hasn't said that, it's just been

16 | sitting.

17 | MR. NOSEDA: Yes.

18 | THE COURT: And --

19 | MR. NOSEDA: Nothing further has happened in that

20 | case.

21 | THE COURT: But I want to make sure.

22 | MR. NOSEDA: Yes.

23 | THE COURT: You know, there's no ruling of any kind

24 | by the District Court.

25 | MR. NOSEDA: No. I printed out the docket in the

1 | case.  In fact I might have a copy of the docket with me.  I

2 | did a whole lot of work before today.  I know I printed out

3 | the docket.  I'm not sure I brought it with me or not.

4 |      Yeah.  But I checked -- I checked the docket yesterday, I

5 | checked the docket this morning, and Mr. Swanson checked it as

6 | at 12:45 and there's been no action in the -- in the District

7 | Court.

8 |           THE COURT:  And how long has that motion to

9 | reinstate been pending roughly?

10 |           MR. NOSEDA:  Three months.

11 |           THE COURT:  And your objection to it was filed when,

12 | roughly when?

13 |           MR. NOSEDA:  If I may consult with brother counsel.

14 |           THE COURT:  Sure, yeah, yeah.

15 |           MR. NOSEDA:  Thank you, Your Honor.  Plaintiff moved

16 | to reinstate the case on July 2nd, 2015.  We responded on July

17 | 16th.  And plaintiff filed a reply on July 23rd and it's not

18 | been scheduled for hearing and it's not been adjudicated.

19 |           THE COURT:  All right.  Thank you.

20 |           MR. NOSEDA:  Thank you, Your Honor.

21 |           THE COURT:  Is that all?  You're finished --

22 |           MR. NOSEDA:  Yeah, I have nothing further to add.

23 |           THE COURT:  All right.  Thank you.  Mr. Cabot.

24 |           MR. CABOT:  Good afternoon, Your Honor.  I sort of

25 | feel like a fish out of water. I've never been in the

1 | Bankruptcy Court, but -- but --

2 |       THE COURT:  Well, welcome to Bankruptcy Court.

3 |       MR. CABOT:  Well, thank you.  For the record, Shawn

4 | Cabot on behalf of Dominique McCartha as the personal

5 | representative for the estate of Gregory Phillips.

6 |     I will kind of start off with the fact that I understand

7 | the Court has read all the pleadings, so I'll do my best not

8 | to duplicate anything there.  Kind of backwarding off what Mr.

9 | Noseda has indicated about the District Court kind of status I

10 | suppose.

11 |     There had been a status conference, I believe, sometime

12 | in May that was initially attended by Mr. Ashford of the

13 | Detroit Law Department.  It was supposed to be the status

14 | conference with Judge Cohn.  Mr. Ashford appeared by phone, I

15 | believe, and there was a discussion about all of this and the

16 | Judge at that time indicated that I should file a motion --

17 | basically lift the stay and enforce the case and which I did.

18 | That was responded to, it was replied to.

19 |     There have been two subsequent status conference with the

20 | lower Court with Judge Cohn.  I don't recall when the last one

21 | was, but the second of the two is essentially what prompted

22 | the filing of the motion with this Court.

23 |     The question and the issue I've always raised in the

24 | lower Court is that I believe it's the Federal District Court

25 | that has jurisdiction over the case.  That issue was raised

1  before Judge Cohn.  There was discussions with opposing

2  counsel and myself on those two occasions.  The Court never

3  did rule as to whether he -- that Court or this Court had

4  jurisdiction, but indicated to counsel who was present at the

5  second meeting, well if you think the Bankruptcy Court has

6  jurisdiction, then you file a motion that you think you need

7  to do and that leads us here today.  So the Court has not --

8          THE COURT:  This -- this second -- or this -- this

9  latest most recent status conference with Judge Cohn was when,

10  or roughly when if you don't remember it exactly.

11          MR. CABOT:  Let me see.

12          THE COURT:  The present motion was filed November

13  20, 2015, if that helps you.

14          MR. CABOT:  I want to -- I want to think October.

15          THE COURT:  Okay.

16          MR. CABOT:  That would be my general because I know

17  it was -- it wasn't more than about probably a month when

18  opposing counsel then filed the motion with this Court.  And

19  -- and that was kind of where we left it.  The status there

20  was never a determination of really which Court had

21  jurisdiction over the settlement matter.

22      We both kind of argued our respective positions.  It was

23  off the record.  It was a status conference in -- in chambers

24  on both occasions.  But ultimately the kind of the -- I don't

25  want to say admonishment, but the -- the leaving statement by

1  judge Cohn was well, if you think the Bankruptcy Court is the

2  more appropriate forum, then file your motion with them and

3  we'll kind of see what happens.

4      So in effect as of today there is no decision one way or

5  the other on that, whether or not the Court has -- the

6  District Court has jurisdiction or not or whether or not the

7  agreement is enforceable.

8      It's of course our position that because the underlying

9  case is in front of Judge Cohn and in arguable settlement that

10  might be in existence that the District Court has jurisdiction

11  over that.  That's our position.

12      THE COURT:  Well, why -- why do you say that?  In

13  light of the fact that after the District Court case was filed

14  the -- your client filed -- you on behalf of your client, your

15  firm on behalf of your client, filed a proof of claim in the

16  bankruptcy case.  It's claim 1155.

17      MR. CABOT:  Against the -- against the city,

18  correct.

19      THE COURT:  Yes.  Well, you -- right, you filed a

20  claim.  And then entered into this ADR process, or this

21  mediation facilitation process that eventually led to this

22  settlement.

23      And the settlement was among other possible things, it

24  was a settlement with respect to the proof of claim which the

25  city disputed.  Proof of claim filed in the bankruptcy case.

1  And the treatment of -- to be accorded to the claim to the

2  extent to which the claim is going to be allowed and the

3  treatment of the claim, the parties ended up agreeing to the

4  terms that are -- you know, that are discussed in this -- that

5  are set out in this settlement agreement that's attached as it

6  looks like Exhibit 6C to the city's motion at docket 10272.

7      And that settlement agreement settled the proof of claim

8  so that the parties agreed what the -- the extent to which the

9  claim would be allowed, the -- what treatment the claim would

10  receive in the bankruptcy case and -- and included other

11  provisions.  So why doesn't the Bankruptcy Court have

12  jurisdiction to rule on the merits of the motion that's before

13  me today by the city?

14          MR. CABOT:  Well, I guess it's -- it's my position,

15  Judge, that once the District Court did in fact lift the stay

16  and allow -- then allowed that case to go forward in the

17  District Court --

18          THE COURT:  You mean the Bankruptcy Court lifted the

19  stay?

20          MR. CABOT:  Well, we filed a motion to reinstate the

21  case which in my opinion was granted because of the subsequent

22  conferences and status conferences by the lower Court.

23  Because obviously if the Court felt it didn't have

24  jurisdiction it wouldn't have even had a single status

25  conference and in fact there was two subsequent conferences.

1      And, you know, ultimately, you know, before the Court

2    could even really rule on the issue of whether it had

3    jurisdiction or not the -- the counter argument was made that

4    we don't even think you have jurisdiction, we think it's the

5    Bankruptcy Court and the Judge says well, if you think that

6    then file the appropriate paperwork in Bankruptcy Court.

7      So my understanding is the Court never lifted its

8    jurisdiction.  In fact in my opinion based upon the Court's

9    subsequent actions seemed to indicate it did have jurisdiction

10   because like I said it did have two subsequent status

11   conferences on the matter.

12         THE COURT:  This -- this District Court lawsuit

13   that's pending before Judge Cohn was filed before the

14   bankruptcy was filed?

15         MR. CABOT:  That's correct, Your Honor.

16         THE COURT:  Okay.  And it was filed of course, I saw

17   your complaint in the record.  It was filed against the city

18   and against the individual officer.

19         MR. CABOT:  In both his individual and official

20   capacity.

21         THE COURT:  Right, right.

22         MR. CABOT:  And that -- that I guess gets to the

23   heart -- one of the -- the primary heartbeats I guess of -- of

24   our position here, is that --

25         THE COURT:  Before -- before you get into that --

1          MR. CABOT:  Oh.

2          THE COURT:  Let me just -- let me just make sure I'm

3  clear about one thing.  You saw, I'm sure, the exhibits that

4  were attached to and filed with the city's motion.

5          MR. CABOT:  Yes.

6          THE COURT:  Docket 10272.  And you agree, I assume,

7  but I want to verify this, City's Exhibit 6A is an accurate

8  copy of the complaint that you filed on behalf of your client

9  in the U.S. District Court.

10          MR. CABOT:  Yes.

11          THE COURT:  Exhibit 6B is an accurate copy of the

12  proof of claim that was filed on February 19, 2014 by your

13  firm on behalf of your client with respect to this claim

14  against the city.

15  `          MR. CABOT:  To the best of my knowledge I didn't see

16  anything that would --

17          THE COURT:  Okay.

18          MR. CABOT:  -- make me think otherwise.

19          THE COURT:  And Exhibit 6C to the city's motion is a

20  copy of there's a October 22, 2014 letter from your firm but

21  then it's followed by in that exhibit by the -- this -- by a

22  settlement agreement that was signed by both your client and

23  the city through Krystal Crittendon.  Do you agree with that?

24          MR. CABOT:  I -- I have no reason to dispute that

25  that document has been altered or modified in any way since it

1  was signed.

2        THE COURT:  So it is an accurate copy of the

3  settlement agreement that was signed by both sides?

4        MR. CABOT:  Yes.

5        THE COURT:  All right.  Okay.  Now you were -- you

6  were arguing -- you were going to make an argument, I -- I

7  interrupted you.  Go ahead.

8        MR. CABOT:  That's okay, Judge.  One of the -- one

9  of the big things -- one of the primary issues that we

10  questioned the -- the settlement if there is one, is -- is

11  primarily Judge Rhodes' opinion in November of 7, 2014.

12      And in that opinion it -- it specifically stated that

13  Section 1983 claims against individuals in their personal

14  capacity are not claims against the city.  Accordingly the

15  Bankruptcy Code does not permit a Chapter 9 plan to treat

16  those claims nor does it provide for their discharge.

17      Obviously that decision didn't occur in a vacuum.  There

18  had to have been at least some type of discussion presumably

19  there was some type of knowledge on the city that this issue

20  existed prior to the issuing of that opinion.  I mean and the

21  fact that that was never disclosed, which I think is very

22  material in a -- in a settlement to say look, you may not even

23  have to settle this case because it may not even be part of

24  the bankruptcy claim, it may not be dischargeable.

25      But that information never once was provided or solicited

1 | at all.  So I -- I guess I would disagree with counsel that

2 | that is not material because I believe it is material and I --

3 | I -- while --

4 |      THE COURT:  Why did the city have a duty in your

5 | view, any sort of legal duty to disclose that?

6 |      MR. CABOT:  Well, I -- I -- I think they --

7 |      THE COURT:  And that is -- and what we're talking

8 | about is, disclosing the -- the possibility or the fact I

9 | guess that -- that -- that there were parties who were arguing

10 | the 1983 claims, including claims against the officer, their

11 | individual and official capacities, and -- and against claims

12 | against the city were not dischargeable in the bankruptcy

13 | case.

14 |      MR. CABOT:  But --

15 |      THE COURT:  Why was that fact something the city had

16 | a legal duty to disclose to your client?

17 |      MR. CABOT:  Well -- well, I think they did have a

18 | legal obligation because even during the ADR process, we --

19 | you know, questions would be asked even before the plan was

20 | solidified.  How much, we don't know.  You know, this is such

21 | a unique situation, you know, this type of bankruptcy is

22 | almost unheard of.

23 |      We got -- kept getting those types of responses where the

24 | city didn't even know a lot of the answers to the questions.

25 | And so I think the legal -- legal obligation comes to the fact

1 that if the city itself who was involved in the bankruptcy

2 process doesn't even know some of the answers to the

3 questions, then I think they certainly had a duty to also say

4 look, in addition, this type of claim may not even be

5 dischargeable.

6     They certainly have a -- a duty to be candid. And -- and

7 I don't think in this case that entirely was done. I think

8 they certainly had a duty to say look, yeah, well we

9 acknowledge, you know, this is kind of a unique situation, you

10 know, this is -- there's no really any type of precedent for

11 this ever.

12     And, you know, we don't even know if this type of claim

13 is dischargeable. But they never made even -- even that sort

14 of claim. And -- and I think at a minimum that would have

15 made a huge difference in -- in probably whether or not the

16 client would have signed it. I know, you know --

17         THE COURT: Why does -- why is this -- the way you

18 just put this, the -- the city not knowing at the time of the

19 discussion, not knowing if these types of claims where it

20 would be in any part not dischargeable in the bankruptcy case.

21 Why is the fact of the city not knowing that, the answer to

22 that question, material?

23         MR. CABOT: Because I -- I believe it's pivotal

24 because that would have given claimants, attorneys, the full

25 picture and the full image of what was going on to make a

1  reasonable and knowledgeable decision.  You know, the fact if

2  they were -- if they were to come out and said look, we don't

3  even know if we can discharge this type of case.

4      I mean that's -- that's a huge important piece of the

5  puzzle that anyone would have taken in consideration whether

6  or not to settle the claim.  So it is material because it --

7  it goes to the heart, I think, one of the very heartbeats of

8  whether or not a person would decide to settle the case or

9  not.  Because why would they decide to settle the case if

10  there's the possibility that they might not even have to.

11      But instead it was like, you know, we don't -- we don't

12  know what's going to happen, you may not get any money.  We

13  don't know when you'll get money.  So I think it is material.

14  I think it would have certainly, you know, and the way I look

15  at a material term is, something that certainly is -- is

16  something that a person involved in a settlement agreement is

17  going to look at and consider in making the ultimate decision.

18  And without that piece of information, I don't think the

19  decision is with their full knowledge.

20      THE COURT:  Well, I guess with my question I was

21  getting more the fact that the city's uncertainty on the issue

22  is the fact that you're saying was not disclosed.  And why

23  wasn't the uncertainty, any uncertainty about that issue,

24  already apparent from the record in the bankruptcy case?

25      You saw in the reply brief, I'm sure filed by the city,

1  docket 10723, at Pages 3 to 4 and in this very long footnote

2  5, they -- and 6, the city cites all these briefs that were

3  filed in June 2014, August 2014, in which numerous parties

4  argued that the 1983 claims are not dischargeable in the

5  bankruptcy case, official and individual capacities both.

6      And the city argued yes, they are in their brief.  These

7  things were all filed with the Bankruptcy Court.  Why wasn't

8  it apparent from those publicly available publicly filed

9  documents, that there was a dispute and uncertainty about that

10 issue?

11      MR. CABOT:  Well, you know, I could -- I could tell

12 you from my own personal experience that there was literally

13 tense if not hundreds of thousands of pages filed in this

14 bankruptcy.  And given the timing and the sequence of the ADR

15 and the ADR itself, I don't -- you know, even -- even for an

16 attorney I don't think there would have been adequate time to

17 sift through all that or even understand what was going on if

18 you're a non-bankruptcy attorney.

19      And I know I advised, you know, many clients, you know,

20 if you got questions, you know, speak to a bankruptcy

21 attorney.  But this was so new obviously there was so much

22 conflict on both sides.  Because you had that before this

23 Court.  You know, one side saying they are dischargeable, the

24 other side saying they're not.

25      So I think for a non-bankruptcy person to sift through

1   all that, I don't think it would even be clear.  And

2   furthermore there certainly wasn't, you know, a decision made

3   until November.

4       But I think in all prudence and in fact -- in an attempt

5   to be candorous I think the -- the city had a duty to say hey

6   look, you know, there is this possibility that these might not

7   even be discharged.  And it wasn't -- it wasn't in any

8   documents, it wasn't in an ADR order that I recall seeing.  So

9   I mean that's my position on that, Judge.

10      THE COURT:  I'll grant you there were -- there's an

11  enormous number of filings in the bankruptcy case.  And back

12  in 2014 there were an enormous number of filings already in

13  the case, a very large docket absolutely.

14      For example, the June 30, 2014 brief filed by -- that the

15  city cites that it was filed by Ryan Swift Mendoza Cuppetelli,

16  docket 5690, June 30, 2014, was the 5690th document filed in

17  the case.  That's why the docket number is 5690.  And then,

18  you know, briefs after that.

19      But, you know, our system has -- an attorney can search

20  the docket entries in our -- in the docket in our cases and

21  search for key words like 1983 and that will show these

22  things.  1983 was right in the title of this document and I

23  think in the other briefs as well.

24      And then the city's brief that the city cites is docket

25  7143 filed August 27, 2014.  It has a table of contents in it

1  which clearly pretty quickly from that finds the city's

2  arguments about 1983 in response to these objections.

3      The other briefs, 5693 doesn't have 1983 in the title and

4  therefore in the docket entry, but it -- it refers to

5  concurring in the -- by several people in the objections of

6  Ryan Swift, and the docket number of that objection.

7      Then the second supplemental brief of Ryan Swift, et

8  cetera, filed it says on the constitutionality of allowing the

9  punishment of fundamental right -- the diminishment of the

10  fundamental right to damages -- to a damages remedy for

11  violation of constitutional rights.

12      That doesn't have 1983 in it, but again it's got Ryan

13  Swift.  So you find the initial brief 5690, you can look for

14  anything else by Ryan Swift and get the other briefs.  5690

15  though, the first thing it has 1983 in there right in the

16  title in the docket entry is enough to -- to tell you -- to

17  tell -- I think, make it apparent that several parties were

18  making these arguments back as -- as early as June of 2014.

19      The brief at docket 6911, a concurrence brief filed by

20  several parties concurring with the Ryan Swift arguments has

21  Section 1983 as the first word of the title of the document.

22  So that's on the docket too.  That was filed August 21, 2014.

23      You know, I'm -- I'm not saying it would have been as

24  easy as you know, sort of your normal bankruptcy case to find

25  this stuff, but it -- it could be readily found by an attorney

1 | looking for to see what is going on in the case.

2 |      But, you know, probably apart from that the fact that

3 | it's a -- it's a very long docket, lots of filings, why does

4 | that excuse an attorney from being deemed to be -- to have

5 | notice of the issue based on the fact that these things were

6 | filed?

7 |           MR. CABOT:  Well, I mean -- and I don't want to

8 | disclose any attorney/client privilege, but I can tell you, I

9 | mean I knew having looked in it myself a little bit that there

10 | was this potential question that loomed out there but there

11 | wasn't an answer.  But I think, you know, I think in all

12 | candor, you know, the city should have also said hey, look,

13 | you know, aside from just the attorney saying it to their

14 | client, you know, along with all these other questions that

15 | the city didn't know which they were very forthcoming in

16 | letting us know, they should have also re-enforced that aspect

17 | of it.  I guess that's what I'm saying, Judge.

18 |      And, you know, the other part, you know, I mean I guess

19 | we'll rely on the briefs.  I mean I think in looking, you

20 | know, the release.  And I know the Courts take a plain reading

21 | to the releases and the four corners of the document, but

22 | based on the language and how it was always subject to the

23 | bankruptcy plan, seemed to indicate as far as my reading,

24 | whether the Court agrees with it or not, was limited to the

25 | city.

1    And the employees perhaps in their official capacities

2  because they would be related to the city.  But it certainly

3  didn't appear to me to release them from individual capacity

4  suits.  So that's kind of the second argument I raised in the

5  response.

6        THE COURT:  Well, did you review the seventh --

7  sixth and seventh amended plans that were filed in the case?

8        MR. CABOT:  Well, you know what --

9        THE COURT:  To see what they said about that?

10        MR. CABOT:  I believe I did.  I mean it's a while

11  ago.  I know I read a lot of pages.  To say I read that

12  specific plan, I can't say.  But I know I -- when they would

13  come in, I tried to read every one of them.

14        THE COURT:  I know the plans were -- are long and

15  they're not -- they're not simply documents.

16        MR. CABOT:  Yeah, and --

17        THE COURT:  Did you see in there the provisions for

18  release of claims against the individual employees?

19        MR. CABOT:  I -- I did see that but I didn't -- I

20  guess the way I wrote that is whether or not it was official

21  versus individual.  I kind of made that distinction.

22        THE COURT:  Your position now, I assume, and you can

23  tell me if I'm wrong about this, is that your clients -- your

24  client has a right or should be deemed to have a right to

25  pursue her 1983 related claims against this officer in his

1 | individual capacity in the District Court action,

2 | notwithstanding the settlement, settlement agreement.

3 | MR. CABOT: Right. That was the other thing.

4 | THE COURT: Right?

5 | MR. CABOT: That's the other thing in our response

6 | yes, Your Honor.

7 | THE COURT: All right. So it's not -- you're not

8 | claiming that -- that the claim isn't settled as to the city

9 | and the officer in the officer's official capacity.

10 | MR. CABOT: Well, again, I think it would rely

11 | whether the Court agrees with the argument, I'd go back to the

12 | argument about the whole disclosure issue. But yes, there is

13 | the second argument if the Court agrees that there was a

14 | settlement to the city, I -- I don't think that the settlement

15 | is -- is at all clear as to the individual officer in his

16 | individual capacity.

17 | THE COURT: Why -- well, okay. So why is that?

18 | MR. CABOT: Well, I mean I don't think that

19 | distinction is made in --

20 | THE COURT: I'm looking at Paragraph 8 of the

21 | settlement agreement. Why is there anything unclear about

22 | that in there?

23 | MR. CABOT: And if I can look at it. I forgot mine

24 | at the office, Judge.

25 | THE COURT: Yes.

 1          MR. CABOT:  Well, again, I think it goes back to the

 2   fact that there -- there wasn't any distinction with the

 3   individual capacity of the employees.  While it says

 4   employees, it also says, you know, it talks about the city and

 5   liability actions.  And then when it talks about the claimant,

 6   their servants, et cetera, et cetera, and officers.  Again,

 7   the language followed by the city seems to indicate in that

 8   officer's or that employee's official capacity.

 9          THE COURT:  How so?

10          MR. CABOT:  Well, it doesn't --

11          THE COURT:  How do you get that from the wording of

12   Paragraph 8 is what I'm getting at.

13          MR. CABOT:  Well, it doesn't exclude it.  I mean if

14   they wanted to have it as broad as both official and

15   individual capacities it would have said that and it didn't.

16          THE COURT:  Doesn't it in substance say that?

17          MR. CABOT:  My reading is that it does not, Your

18   Honor.

19          THE COURT:  It says the claimant, that's your

20   client, releases the city -- the city from any known liability

21   actions, damages, and claims.  So all claims, then it says

22   known or unknown that the claimant has or may have against the

23   city.

24       And then a sentence down from that it says -- defines the

25   city to include the city's agents and employees among others.

1  So doesn't -- don't those two pieces in Paragraph 8 clearly

2  mean and say that the claimant, your client, is releasing the

3  city from any and all liability actions, damages, and claims,

4  any and all claims known or unknown -- known and unknown,

5  including any claims known or unknown against the city's

6  emloyee this -- this police officer.

7       MR. CABOT:  And then again I would disagree because

8  when you -- when you have an individual in official capacity

9  suit, the official capacity aspect of that is hinged on the

10  municipality.  And in this case it's talking about dismissing

11  the claim against the city and the city's agents.

12     Well, the city's agents in my understanding would be

13  those in their official capacities, not their individual

14  capacities.  And that's how I read that.

15       THE COURT:  It doesn't say that, does it?

16       MR. CABOT:  It doesn't exclude it either.  It

17  doesn't -- it doesn't say employees in their individual and

18  official capacities.  And that -- that's the way I would -- I

19  would read that and I think that's a reasonable --

20       THE COURT:  Well, it says any and all claims against

21  the city's employees.  Why doesn't that encompass literally

22  all claims against the police officer including official or

23  individual?

24       MR. CABOT:  Well, I think if taken as a whole you

25  have a claim that's filed against the city and you have a -- a

1 settlement agreement where it notes the city throughout the

2 agreement and when you get towards the end of the document

3 talks about employees. Again you're talking about the city

4 proper and the way I read it is that it's employees in their

5 official capacity.

6     I mean and that's -- that's how I read it, Judge. And I

7 don't see anything in here that says it doesn't extend in that

8 manner.

9         THE COURT: All right. Go ahead.

10         MR. CABOT: And that's all I have, Judge. I'd just

11 rely on the pleadings that I filed. Thank you.

12         THE COURT: All right. Thank you. Mr. Noseda, if

13 you wish as counsel for the moving party if you wish to reply

14 briefly you may.

15         MR. NOSEDA: Very briefly, Your Honor. First of

16 all, with regard to Paragraph 8 of the settlement agreement.

17 I'm pretty familiar with it, I wrote it. I've written lots of

18 releases.

19     It is as the Court, I believe, observed, any and all,

20 it's as broad as possible under applicable state law and

21 federal law. And of course it includes all the claims against

22 the officers. We were settling those specifically. We

23 included that language to be as broad as possible.

24     I didn't -- I didn't parse out and it certainly doesn't

25 suggest in any way that it parses out the types of claims you

1 | might have against the city's employees and agents.  They're

2 | all released.

3 |        THE COURT:  Well, it could have said including

4 | individual and official capacity claims but it does -- you're

5 | saying it doesn't have to say that.

6 |        MR. NOSEDA:  It doesn't have to.  And good drafting

7 | would be to the contrary because I find that there's pitfalls

8 | when you start putting in sub clauses in documents.

9 |     And the ADR order specifically required that the -- when

10 | we write -- that we execute a settlement agreement of a claim

11 | that it include all parties to whom the stay injunction

12 | applies.  And at the time of this agreement the stay

13 | injunction applied to employees and employees with employee

14 | indemnity claims.

15 |     But I think what's most important two things.  That you

16 | asked why the city had a duty to explain the possible pitfalls

17 | in -- in the bankruptcy proceeding.  And of course there's no

18 | authority that can be cited for plaintiff for that and I think

19 | I wouldn't be representing my client if I sat there at any

20 | settlement discussion and said oh, by the way, here's all the

21 | reasons that you shouldn't settle your claim.

22 |     I mean that's the whole point of a settlement.  Parties

23 | are uncertain about the outcome of a trial or any future

24 | rulings in a case and we decide on the certainty of a

25 | settlement.  And that's why Courts enforce them.

 1      And most importantly plaintiff's counsel has acknowledged

 2  here today that they were aware of the Section 1983 issues.

 3  So they went ahead with this settlement or advised their

 4  client presumably to go ahead despite the uncertainty over

 5  that issue.  And so I don't think there's any -- anything

 6  further to say.  Thank you, Your Honor.

 7      THE COURT:  All right.  Thank you.  I'm going to

 8  rule on the motion now and explain my ruling hopefully

 9  briefly.

10      First of all, contrary to the suggestion or argument by

11  the respondent, and the respondent is Dominique McCartha,

12  personal representative for the estate of Gregory Phillips, so

13  I'll refer to her as the respondent here.

14      The respondent's argument that this Court -- is that this

15  Court -- apparently is that this Court lacks jurisdiction to

16  rule on the motion, on the merits of this motion, and to enter

17  -- grant the relief requested by this motion.

18      Now I disagree with that.  As a general matter of course

19  this -- this Bankruptcy Court has subject matter jurisdiction

20  over this -- over this bankruptcy case of course.  Under 28

21  U.S. Code, Section 1334(b), and the United States District

22  Court's local Rule 83.50 regarding matters referred to

23  bankruptcy Judges by the District Court in this district,

24  among other possible grounds for subject matter jurisdiction.

25      The -- this contested matter represented by this motion

1  before me today is in my view a core proceeding under among

2  other possible provisions, 28 U.S. Code, Section 157(b)(2)(O).

3      I note in addition that as a general matter under federal

4  law which applies both to U.S. District Courts and to the

5  Bankruptcy Courts which are units of the District Courts, this

6  Court has as U.S. District Courts do generally, inherent

7  authority to enforce a settlement agreement made between

8  parties to a bankruptcy case or a bankruptcy adversary

9  proceeding.  And that is part of this Court's inherent

10  authority under federal common law relating to this -- this

11  issue, this type of issue.

12      This was a -- although this dispute arose initially as in

13  the form of a civil action filed in the U.S. District Court

14  for this district, rather than in the Bankruptcy Court, that

15  happened before the city filed its bankruptcy -- Chapter 9

16  bankruptcy case.  After the city filed its Chapter 9

17  bankruptcy case, of course, the Bankruptcy Court became

18  involved jurisdictionally and otherwise and among other things

19  the -- there was a proof of claim filed by the claims bar date

20  in this bankruptcy case by the respondent, claim 1155, I

21  believe is the number.

22      And the settlement agreement that was signed, that the

23  parties agreed was signed by both the city and the respondent,

24  a copy of which appears as Exhibit 6C to the city's motion,

25  docket 10272, was a settlement among other things of the

1  parties' dispute over the proof of claim that was filed by the

2  respondent in the bankruptcy case.

3        And so it was certainly a matter within the Bankruptcy

4  Court's jurisdiction in my view to enter orders, including the

5  -- the so-called ADR order and any other orders that have any

6  bearing on the settlement of proofs of claim including the

7  respondent's proof of claim here to do so.  And this must be

8  viewed in my view as therefore a settlement of a dispute

9  within the bankruptcy case over which this Court has subject

10 matter jurisdiction and which is a core proceeding and part of

11 the bankruptcy Court's inherent authority to entertain and to

12 rule on.

13       I note also on the -- on the subject of jurisdiction that

14 this Court, the Bankruptcy Court as the city points out in

15 their motion, retained -- explicitly retained jurisdiction

16 both in the ADR order, docket number 2302, and in the order

17 confirming the city' Chapter 9 plan that was ultimately

18 entered in this bankruptcy case, docket number 8272 over

19 disputes including disputes just like the dispute involved

20 with this motion.  A dispute over enforcement, interpretation,

21 and relating to a settlement agreement made in the bankruptcy

22 case by parties in interest in the bankruptcy case.

23       Paragraph 20 of the ADR order -- I'm sorry, it's

24 Paragraph 19 of the ADR order and the order confirming plan

25 has retention of jurisdiction provisions, including at Pages

1  69 to 70 of the plan.

2      So without the need for this Court to comment, or rule,

3  or express an opinion about to what extent the U.S. District

4  Court may have jurisdiction to act relating to this dispute,

5  certainly the Bankruptcy Court has jurisdiction and authority

6  to act and it is a core proceeding for the reasons I've

7  indicated.

8      Turning to the merits of the dispute here, first it is

9  clear from the signed settlement agreement, again Exhibit 6C

10  to the city's motion, docket 10272, and there's no dispute

11  that both the city and the respondent here signed this

12  agreement and made this written agreement.  There's no dispute

13  from the Court having -- from that agreement -- given that

14  agreement,  that there was a full and complete settlement

15  made, agreed to between the respondent on the one hand and the

16  city on the other hand which included settlement, release, and

17  dismissal with prejudice not only of claims the respondent had

18  against the City of Detroit under Section 1983 and otherwise

19  that had been asserted in the proof of claim and in the U.S.

20  District Court action, but also settlement of claims against

21  the individual police officer who was also named a defendant

22  in the action filed in the U.S. District Court, both in that

23  officer's official capacity and in the officer's individual

24  capacity.

25      The settlement agreement does contain all material terms.

1   It shows a meeting of the minds by the parties to all material

2   terms of the settlement.  And is a fully enforceable and in my

3   view unambiguous settlement agreement.

4       Unambiguously the settlement agreement provide that

5   respondent's claim would be settled and allowed in the amount

6   of $25,000 and that it would be treated as a general

7   unsecured, non-priority claim subject to the treatment

8   provided for such claims under any Chapter 9 plan for the

9   adjustment of debts that would be confirmed by the Bankruptcy

10  Court.

11      At the time of the settlement agreement, no plan had yet

12  been confirmed by the Bankruptcy Court.  That happened a few

13  months later but it's -- it's undisputed that this claim is

14  settled -- the settled amount is a part of the convenience

15  class, Class 15 at the confirmed -- city's confirmed plan and

16  it's to be treated and paid as such.

17      And so there was a meeting of the minds and a complete

18  statement of all complete terms of the settlement agreement

19  with respect to the amount of the settlement to be paid and

20  the -- the means by which the settlement amount would be paid,

21  that is through treatment as a general unsecured non-priority

22  claim subject to the treatment of such claims in the

23  bankruptcy case in the confirmed plan that was -- the plan was

24  ultimately confirmed under Chapter 9.

25      The fact that the precise terms of the Chapter 9 plan

1   that ultimately would be confirmed were not yet known to

2   either the city or the respondent at the time this

3   settlement agreement was made in my view does not form any

4   basis for the Court to decline to enforce the settlement

5   agreement according to its terms and does not make the

6   settlement agreement unenforceable or subject to challenge or

7   limitation in any way.

8       As the cases cited by the city hold and as do other

9   cases, the -- to enforce a settlement, the Court must conclude

10  that an agreement has been reached on all material terms, the

11  validity of the settlement, settlement agreement is tested and

12  determined with reference to state substantive law governing

13  contracts generally.  That means in this case Michigan

14  contract law.

15      Under Michigan law in turn in order to form a valid

16  contract there must be a meeting of the minds or mutual assent

17  with respect to all material terms of the contract.  The

18  meeting of the minds is judged by an objective standard

19  looking to the expressed words of the parties and their

20  visible acts, not their subjective states of mind.

21      And so I rely for my conclusions that I've stated and

22  findings I've stated so far about the enforceability of this

23  settlement agreement on the actual words -- terms of the

24  written agreement that the parties signed.  Exhibit 6C to the

25  city's motion.

1    And I also note that the last -- on the last page of that

2  agreement, the parties agree that this agreement constitutes

3  the entire agreement between the parties with respect to

4  matters addressed herein.  They may not be modified except in

5  a writing signed by the parties.

6    The case among other things that -- other cases that

7  support the legal propositions that I mentioned a moment ago,

8  is the case of McCormick v Brzezinski, B-r-z-e-z-i-n-s-k-i, a

9  decision of the District Court for this district from April

10  13, 2010 that's reported at 2010 Westlaw 1463176, I believe.

11    It is of course a fundamental tenant of Michigan contract

12  law as it is of federal common law regarding contracts, that

13  unambiguous agreements, including settlement agreements must

14  be enforced according to their plain terms.  That's the first

15  point.

16    The second point I would make is that under Michigan law

17  in the absence of duress, fraud, mutual mistake, severe

18  stress, or unconscionable advantage taken by one party over

19  the opposing party, Courts are bound to enforce settlement

20  agreements.

21    That is the -- taken from and supported by the case of

22  Dezaak, D-e-z-a-a-k, Management Inc. v Auto Owners Insurance

23  Company, reported at 2012 Westlaw 5258304, a decision of the

24  Michigan Court of Appeals from October 23, 2012, at Westlaw

25  Page 2 of that agreement.  And I'm omitting citations here

1   that are cited in that -- in that case.

2       This settlement agreement is unambiguous on -- in a

3   manner that is favorable to the city and adverse to the

4   respondent on the arguments the respondent has made.  For

5   example the respondent has argued that it's not clear from the

6   settlement agreement or the settlement agreement does not mean

7   that the claim of the respondent against the individual

8   officer in that officer's individual capacity as opposed to

9   the officer's official capacity was covered by the settlement.

10  It was to be released and dismissed with prejudice as were the

11  other claims.

12      That's simply wrong and contrary as the city points out,

13  contrary to the -- what I view as the unambiguous language of

14  the settlement agreement including Paragraphs 8 and 9 of that

15  agreement.  As discussed during the oral argument today,

16  Paragraph 8 of the settlement agreement broadly states that

17  the claimant, that's the respondent, releases, "the city" from

18  -- "from any and all liability actions, damages, and claims,

19  known and unknown arising or accruing at any time prior to and

20  after the date of this agreement that the claimant has or may

21  have against 'the city'".

22      Shortly after that in Paragraph 8 the agreement says, "as

23  used in this agreement the claimant and the city including

24  each of their respective servants, agents, contractors,

25  attorneys, employees, representatives, family members, et

1  cetera". Servants, agents, employees, all those terms include

2  the officer, police officer who was sued individually and in

3  his official capacity as a defendant in the District Court

4  case and within the -- the meaning of the term the city.

5      So -- as to that officer. And in all capacities for that

6  officer, all claims against him that the respondent had were

7  released under the terms of Paragraph 8 of the settlement

8  agreement. In that paragraph in the settlement agreement and

9  these terms are unambiguous in my view.

10     And that interpretation is further confirmed by Paragraph

11  9 of the settlement agreement that says that the claimant

12  stipulates to dismissal with prejudice of the civil action

13  related to the filed claim or settled claim. It does say in

14  the form attached hereto as Exhibit B and we don't have

15  Exhibit B.

16     But that language is clear that the entire civil action

17  in the District Court which was -- included the claims against

18  both the city and the officer, in the officer's official and

19  individual capacity were to be dismissed with prejudice and

20  the respondent agreed to that as part of this settlement.

21  That further confirms that all claims, including the claims

22  against the officer and the officer's individual and official

23  capacities were released under Paragraph 8 of the settlement

24  agreement.

25     The settlement agreement is not made unenforceable

1  because of any of the exceptions that I read from the <u>Dezaak</u>

2  case recently to enforcing settlement agreements, or contracts

3  generally, duress, fraud, mutual mistake, severe stress, or

4  unconscionable advantage.

5      I discuss in a bench opinion that I gave in a different

6  case, the transcript of which is on file in that case and

7  which I'll cite in a moment.  The details of what under

8  Michigan law these terms mean, duress, mutual mistake, severe

9  stress, unconscionable advantage.

10     And they -- given what I said in that bench opinion about

11 what Michigan law says these things mean, and require to be

12 shown by somebody trying to avoid a settlement agreement which

13 I -- all which discussion I'm incorporating by reference here

14 rather than repeating all of it, it's clear here that the

15 respondent has not alleged facts nor demonstrated that any of

16 those exceptions to the enforceability of the settlement

17 agreement apply.

18     I do want to talk a bit briefly about -- specifically

19 about fraud and the fraud exception to the enforceability of

20 settlement agreements.  Respondent argues that at some point

21 apparently before the respondent signed the settlement

22 agreement, and the -- and the signature of the respondent is

23 dated September 26, 2014, and looks like on October 22, 2014

24 the legal assistant through the office of respondent's counsel

25 returned to the city's counsel the signed -- the fully signed

1 | settlement agreement so that gives the time frame for this

2 | agreement of -- but at some point before the respondent agreed

3 | to the settlement and signed the settlement agreement, the

4 | city had -- had violated a duty to disclose uncertainty at

5 | least.  That there was some uncertainty or that it was not

6 | known whether or not that in the bankruptcy case, the city's

7 | bankruptcy case, claims -- Section 1983 claims of any kind and

8 | -- and including Section 1983 claims against individual --

9 | against officers in their individual capacity would or could

10 | be discharged under the Bankruptcy Code as part of the Chapter

11 | 9 bankruptcy case.

12 | That is, I assume, that argument that the settlement

13 | agreement should be deemed non-enforceable at least as -- so

14 | as to permit respondent to pursue her claims in the District

15 | Court against the police officer in the officer's individual

16 | capacity because of fraud by the city.

17 | And by the way, before I go any further talking about

18 | fraud, I -- I said a minute ago I would cite the transcript of

19 | -- of my bench opinion in the other case regarding the other

20 | exceptions to settlement enforceability.

21 | That transcript is in the case, and it was a bench

22 | opinion I gave in the case of adversary proceeding Joyce

23 | Collins v Vasan Deslukachar, D-e-s-h-i-k-a-c-h-a-r.  I gave

24 | that on April 29, 2015 in adversary proceeding number 14-4318,

25 | 14-4318.

1    The transcript of that bench opinion appears at docket

2   number 133 on that -- in that adversary proceeding.  I should

3   mention that that -- the ruling I made in connection with that

4   bench opinion is currently pending on appeal in the District

5   Court but it's not been reversed, or modified, or disturbed on

6   appeal, nor do I expect it to be.

7    And the specific discussion that I have of settlement

8   agreements enforceability generally begins at Page 54 of the

9   transcript in that case, docket 133.  And the -- my reliance

10  on the Dezaak case, the McCormick case and Dezaak case occurs

11  beginning at Page 57 of that bench opinion transcript and runs

12  generally through to the end of the transcript where I discuss

13  in specifics what a party must show to establish duress,

14  unconscionability, mutual mistake, and the like in order to

15  avoid a settlement agreement.

16   Back to the fraud exception to the enforceability of

17  settlement agreements then and to the respondent's fraud

18  argument.  The city cites in their reply brief the case of

19  Nieves v Bell Industries, Inc., 204 Mich App 459.  In

20  particular at Page 465, a decision of the Michigan Court of

21  Appeals from 1994.

22   I have reviewed that case and I agree with -- as the

23  city's use of that case and I agree that that case does stand

24  for the proposition, require this Court to -- to rule that no

25  fraud claim can be made, no valid fraud claim can be made by

1  the respondent here in trying to avoid this settlement

2  agreement.  Among other possible reasons for that and which is

3  supported by the <u>Nieves</u> case, is the fact that as the city's

4  reply brief demonstrates, docket 10723 at Pages 3-4 and the

5  footnotes 5 and 6, it was a matter of public record beginning

6  in at least as early as June 2014 in the city's bankruptcy

7  case that several parties were arguing –- that were objecting

8  to the city's plan then pending and were arguing to the Court,

9  the Bankruptcy Court, that Section 1983 claims and other

10  constitutional based claims by individuals or state

11  representatives against the city and against individual

12  employees or police officers of the city which could not be

13  discharged in the bankruptcy case and –- and those included

14  not only claims against employees such as police officers in

15  their individual capacities, but also claims against them in

16  their official capacities and against the city directly.

17     And arguments were made by numerous individuals that no

18  such claims could be discharged as a matter of law in the

19  bankruptcy case.  There were several briefs filed arguing

20  that.  As the city points out in footnote 5 of its reply

21  brief, docket 10723, including the briefs that appear at

22  docket numbers 5693, 6764, 6911 on the Court's docket in this

23  bankruptcy case.

24     There was also a matter as a matter of public record the

25  city's position and stated in briefs filed by the city,

1  including the city's pre-trial brief in support of

2  confirmation of the sixth amended plan, docket number 7143, in

3  which the city disputed those arguments by the objecting

4  parties.

5      So it was clear as a matter of public record, the

6  Bankruptcy Court's record, that there was a dispute pending

7  between numerous individuals and the city over this very

8  issue.  And so the counsel for the respondent, and respondent

9  was at all times represented by counsel during the settlement

10  process, counsel for respondent in my view is deemed —- is

11  charged with and deemed to have notice of the fact that there

12  was a dispute pending and if —- could have read the briefs on

13  this dispute and determined for himself or herself, themselves

14  on behalf of the respondent, that there was an issue in

15  dispute and there was uncertainty on this issue.

16      And that is in short respondent through respondent's

17  counsel had available the means through public records by

18  which to know the very thing that the respondent now says the

19  city failed to disclose to the respondent and should have

20  disclosed to the respondent before the settlement agreement

21  was made.

22      Under the Nieves case at the page cited by the city, it

23  —- it's clear that under Michigan law given that fact, that

24  there can be no valid claim of fraud as a means of trying to

25  avoid the enforcement of this settlement agreement on the part

1  of the respondent.

2      The <u>Nieves</u> case says, "defendant contends that the trial

3  Court erred in refusing to dismiss plaintiff's

4  misrepresentation claim.  We agree.  A misrepresentation claim

5  requires reasonable reliance on a false representation.

6  There's citations.  And the Court says, there can be no fraud

7  where a person has the means to determine that a

8  representation is not true".  That is <u>Nieves,</u> 204 Mich App at

9  Page 465.

10      Now what we're talking -- what we're talking about here

11  and the fraud that the respondent is talking about here is --

12  is sometimes known as silent fraud.  It's a fraud based on

13  non-disclosure, failure to disclose something rather than an

14  affirmative representation of fact that is false and

15  misleading.

16      But Michigan law establishes the same elements for both

17  such silent fraud, fraud based on non-disclosure and fraud

18  based upon affirmative statements or representations.  The --

19  the cases that stand for that and demonstrate that include the

20  case of <u>Abbo</u>, A-b-b-o, <u>v Wireless Toyz</u>, T-o-y-z, <u>Franchise,</u>

21  <u>LLC</u>, 2014 Westlaw 1978185, a decision of the Michigan Court of

22  Appeals from May 13, 2014.

23      And numerous other cases, Michigan cases all of which

24  stand for the proposition that fraud from silence, no claim

25  for fraud based on silence or non-disclosure arises unless

1  among other elements of the complaining party demonstrates

2  that the party who's charged with such fraud had a legal duty

3  to disclose something.

4      Such duty can arise in a couple of ways under this -- as

5  this case points out.  One is that where a party makes

6  affirmative statements to another party that tend to mislead

7  unless the non-disclosed facts are also disclosed, or where

8  there are some other legal duty to disclose something that is

9  not disclosed.

10     Here in my view the respondent has failed to allege any

11 facts or circumstances or demonstrate that the city had any

12 duty to disclose any of the things, or that the respondent

13 says the city committed fraud by failing to disclose.  The

14 city obviously was an adversary of the respondent in the

15 bankruptcy case, in the U.S. District Court case, and in

16 connection with the dispute over the proof of claim, and in

17 the mediation process.

18     And in my view under those circumstances where both

19 sides, particularly both sides were represented by counsel,

20 there was no duty on the part of one adversary -- adverse

21 party, the city, to disclose to the other adverse party who

22 was making claims against it, the -- anything about the

23 uncertainty over, or unlikelihood or unknown status of -- or

24 even that there was an issue in dispute over whether or not,

25 or to what extent 1983 claims and other constitutional claims

1 against the city could be or would be discharged in the

2 bankruptcy case ultimately.

3     It was not the city's duty to disclose anything about

4 that to an adversary, particularly in a circumstance where the

5 fact that there was an issue and the briefs about the issue

6 were already on file as a matter of public record in the

7 city's bankruptcy case.

8     Also particularly where the issue had not been ruled upon

9 by the Bankruptcy Court in any way yet and would not be for

10 some time, until November.  A month or two after the

11 settlement agreement here was made.

12     The -- the fact that the city was uncertain because of

13 this dispute that had not yet been decided by the Bankruptcy

14 Court, in my view is not anything the city had a duty to

15 disclose to respondent or respondent's counsel under Michigan

16 law or otherwise.

17     And so for these reasons that I've described there is no

18 and can be no fraud based exception to the enforceability of

19 the settlement agreement at issue before me here.  And that

20 argument to the extent that the respondent argues otherwise,

21 that argument must be overruled and rejected.

22     The Court in the exercise of its authority to enforce the

23 settlement agreement at issue will do so as requested by the

24 city and in my view must do so.  And so the motion will be

25 granted, the enforceable and unambiguous settlement agreement

1 that I have found was made between these parties will be

2 enforced.

3      And with respect to the particular relief to be granted,

4 I am looking at the proposed order that was attached to the

5 motion.  Mr. Noseda, do you have that in front of you?

6           MR. NOSEDA:  Yes, I do, Your Honor.

7           THE COURT:  I'll ask you to revise the order before

8 you submit it to the Court as a proposed order.  The only

9 substantive change to the order that I want you to make and

10 I'm going to make some non-substantive change, clean up type

11 changes that are as I said, non-substantive and -- and so I'll

12 take care of that and you'll -- both sides will see that when

13 you see the order that actually gets entered.

14      In Paragraph 2 of the order it says, within five days of

15 the entry of the order.  That's the deadline stated for

16 respondent to cause to be dismissed the pending District Court

17 case with prejudice.

18      The -- instead of saying it that way, I want to set a

19 specific calendar deadline.  I have in mind seven days from

20 today as the deadline.  So that would be January 20, 2015.  So

21 I'll ask you to change that phrase to say no later than

22 January 20, 2016 rather, respondent Dominique McCartha, et

23 cetera must do these things.

24      Now to the extent the dismissal with prejudice requires a

25 stipulation, of course I expect the city will cooperate in

1  signing such a stipulation so it can be filed as a

2  stipulation.  But the -- the duties on the part of the

3  respondent to -- to prepare and submit to the city a

4  stipulation for dismissal with prejudice to be filed in the

5  District Court case and to file it and the city I'm sure will

6  cooperate.

7      So I think the way the -- the order is worded presently,

8  other than the change I've -- I've said I want is fine.  I'm

9  going to waive presentment of the revised order and ask you to

10 submit that, Mr. Noseda.

11         MR. NOSEDA:  Uh-huh.

12         THE COURT:  I will review it, make some

13 non-substantive changes and we'll get it entered.  Any

14 questions about the revision needed?

15         MR. NOSED:  No, Your Honor. I understand to strike

16 within five days of entry of this order to change it to no

17 later than January 20, 2016.

18         THE COURT:  Mr. Cabot, did you have any questions or

19 issues about the form of the order?

20         MR. CABOT:  I don't, Your Honor.  Thank you.

21         THE COURT:  All right.  Thank you all.

22         MR. NOSEDA:  Thank you, Your Honor.

23         THE CLERK:  All rise.  Court is in recess.

24     (Court Adjourned at 2:58 p.m.)

25

1

2

3

4

5

6

7   We certify that the foregoing is a correct transcript from the

8   electronic sound recording of the proceedings in the

9   above-entitled matter.

10

11  /s/Deborah L. Kremlick, CER-4872          Dated: 1-15-16
    Jamie Laskaska
12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT D – CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 23, 2016, he caused a copy of the *City of Detroit's Objection to Claimant Michael McKay's Motion to Enforce Agreement Resolving Claim of Michael McKay* to be served upon counsel via electronic mail and first class mail as follows:

Eric Stempien
Romano Law, PLLC
23880 Woodward Avenue
Pleasant Ridge, MI 48069

estempien@romanolawpllc.com

Dated: May 20, 2016

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com