UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,      .        Docket No. 13-53846
        MICHIGAN,             .
                             .        Detroit, Michigan
                             .        July 20, 2016
                Debtor.       .        2:15 p.m.
. . . . . . . . . . . . . . . . .

HEARING RE. MOTION TO FILE A LATE CLAIM, FILED BY
CREDITOR THOMASENA BARGE (DOCKET #11161) AND
DEBTOR'S FORTY-SIXTH OMNIBUS OBJECTION TO CERTAIN
CLAIMS (NO BASIS:  EXPIRATION OF STATUTE OF
LIMITATIONS) FILED BY DEBTOR IN POSSESSION CITY OF
DETROIT, MICHIGAN (DOCKET #11294)
BEFORE THE HONORABLE THOMAS J. TUCKER
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For City of Detroit: Miller, Canfield, Paddock & Stone
                     By:  MARC SWANSON
                     150 West Jefferson
                     Detroit, MI  48226
                     (313) 496-7591

For Respondent       Fieger, Fieger, Kenney & Harrington, PC
Shante Gowens:       By:  DAVID A. DWORETSKY
                     19390 W. Ten Mile Road
                     Southfield, MI  48075
                     (248) 355-5555

For Thomasena Barge: THOMASENA BARGE
                     In pro per
                     5226 Newport Street
                     Detroit, MI  48213

Court Recorder:      Jennifer Mahar
                     United States Bankruptcy Court
                     211 West Fort Street
                     21st Floor
                     Detroit, MI  48226-3211
                     (313) 234-0068

Transcribed By:      Lois Garrett
                     1290 West Barnes Road
                     Leslie, MI  49251
                     (517) 676-5092

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1    THE CLERK:  All rise.  Court is now in session.  The

2  Honorable Thomas J. Tucker is presiding.  You may be seated.

3  Court calls the case of the City of Detroit, Michigan, Case

4  Number 13-53846.

5    THE COURT:  All right.  Good afternoon, everyone.

6  Sorry it took a little bit longer than ten minutes to come

7  back out there on the break, but I got hung up on something,

8  so, anyway, here I am.  Let's have appearances for the record

9  first starting with counsel for the City of Detroit.

10    MR. SWANSON:  Thank you, your Honor.  Marc Swanson

11  from Miller, Canfield, Paddock & Stone on behalf of the city,

12  and with me is Rebecca Wilhelm from the City of Detroit.

13    THE COURT:  Ms. Wilhelm, is it?

14    MR. SWANSON:  Wilhelm, yes, your Honor.

15    THE COURT:  All right.  Thank you.

16    MR. DWORETSKY:  Good afternoon, your Honor.  David

17  Dworetsky.  I'm here on behalf of Shante Gowens, the

18  claimant.

19    THE COURT:  All right.  Good afternoon to everyone.

20  We have two matters scheduled for hearing today in this case,

21  of course.  One is the debtor's forty-sixth omnibus objection

22  to claims, and that will involve a hearing regarding the

23  claim of Ms. Gowens and the response filed by Ms. Gowens on

24  that.  And then we also have a hearing scheduled on a motion

25  called motion to file a late claim filed by Ms. Thomasena

1    Barge.  And, Mr. Swanson, I had in mind taking up the motion

2    filed by Ms. Barge first unless there's a particular reason

3    to do it in a different order.

4              MR. SWANSON:  No, your Honor.  That's fine with the

5    city.

6              THE COURT:  All right.  We'll call that matter then.

7    Is Ms. Barge present?

8              MS. BARGE:  Yes.

9              THE COURT:  Would you come up, Ms. Barge, please?

10              MS. BARGE:  Yes, your Honor.  Good afternoon, your

11    Honor.

12              THE COURT:  Good afternoon.  For the record, you

13    are?

14              MS. BARGE:  Thomasena Barge.

15              THE COURT:  All right.  Good afternoon, Ms. Barge.

16    As you know, the Court scheduled a hearing for today on this

17    motion that you filed on May 12, 2016, entitled "Motion to

18    File a Late Claim."  For the record, it's filed at Docket

19    Number 11161 on the court's docket in this case.  Ms. Barge,

20    I assume that you received in the mail and had a chance to

21    review the response that the City of Detroit filed to your

22    motion.  Is that correct?

23              MS. BARGE:  Yes, sir, I did.

24              THE COURT:  All right.  And after reading the city's

25    response, I'll just tell you I read your motion and your

1  exhibit.  I read the city's response and their exhibits.

2  That, of course, gave me some background on the first time, I

3  guess, for a couple hearings in which you were in court.  We

4  had a different judge assigned to the case at the time.  Of

5  course, that was Judge Rhodes.  It was before his retirement

6  back in late 2015.

7          MS. BARGE:  '14.

8          THE COURT:  2014.

9          MS. BARGE:  '14.

10          THE COURT:  Right.  So I did familiarize myself with

11  what the record in the case shows about that first sort of

12  go-round that you had and the city had on your objection or

13  motion that you filed at that time.  Of course, the latest

14  motion we're hearing today was filed May 12.  Of course, much

15  has occurred since then, including confirmation of the city's

16  plan of adjustment and the effective date of that plan of

17  adjustment.  So what do you want to say about your motion,

18  Ms. Barge?

19          MS. BARGE:  Your Honor, Judge Tucker, what I want to

20  say about my claim is when I attended -- or when I petitioned

21  the Court -- the Bankruptcy Court in 2014, it was for my

22  benefit of knowing that anything monetary that I had coming

23  from the City of Detroit as a retiree, that I would be

24  compensated for it.  I petitioned Judge Rhodes -- and I did

25  receive the letter from the attorneys out of Georgia at that

1    time -- regarding the ballot.  Now, I voted "no" on that

2    ballot to vote that I was not giving up any rights to

3    anything that I had coming from the City of Detroit.  So when

4    I attended the bankruptcy proceedings -- the last date was, I

5    think, December 17th of 2014 -- the last paragraph of this

6    letter stated about the ten-percent -- a dime on a dollar,

7    and the amount that had been listed on my ballot was $18,623,

8    so ten percent of that was roughly $1,800.  So the January

9    check of 2015 I did receive $1,800 as an annuity, and it was

10   listed an annuity on my check.  Come January of 2016, I

11   didn't get the annuity.  Now, the city explained it away as

12   to -- I don't know, but I don't accept it because if in 2015

13   I received the $1,8000, which would be roughly a dime on a

14   dollar of $18,623, then, in my estimation, that set a

15   precedence and I should be receiving my annuity of $1,800 a

16   year, so I --

17            THE COURT:  What is this dime on the dollar or ten

18   cents on the dollar reference -- where does that come from,

19   ma'am?

20            MS. BARGE:  That's this letter from Dentons.

21            THE COURT:  From what?

22            MS. BARGE:  This is the letter that I received

23   explaining under Judge Rhodes, and on the second page, the

24   third paragraph down, it specifies about the amount of the

25   claim on your ballot was 1,800 -- no -- $823.  This was just

1    an estimate, blah, blah, blah.  You may have had a claim

2    payable along with the other unsecured creditors which we

3    believe would have been payable in exchange for a value

4    estimated to be worth about ten cents on the dollar.  Instead

5    of your lifetime pension as adjusted, you might have received

6    a distribution worth only $1,882.  Now, the bankruptcy --

7          THE COURT:  Ms. Barge, you did not file that letter

8    as an attachment to your motion.  I don't think that letter

9    is in the record.  I think the first thing we need to do is

10   let you -- is have you let Mr. Swanson, who's the attorney

11   here for the city, look at that document, please.

12         MR. SWANSON:  Your Honor, I believe Ms. --

13         THE COURT:  Do you have it, Mr. Swanson?

14         MR. SWANSON:  Yes.  I believe it was filed at Docket

15   8675.  It was one of the exhibits Ms. Barge filed with the

16   Court with respect to the first motion that she filed.

17         THE COURT:  All right.  Thank you, Mr. Swanson.  So,

18   Ms. Barge, you don't need to show it to him if he's got it.

19         MS. BARGE:  All right.

20         THE COURT:  So, anyway, go on.  What did you want to

21   say?

22         MS. BARGE:  Okay.  The bottom line, your Honor, is

23   is I received on my check in January of 2015 stating annuity

24   of $1,800, and it was listed as an annuity.  Then why in 2016

25   it was done away with and explained away as some other method

1   of why I was due this extra $1,800 in 2015?  So that's why

2   I'm here is if I received an annuity stating annuity in 2015,

3   why didn't I receive it this year?  So that's why I'm here.

4         THE COURT:  Well, the city, of course, provided what

5   they view as a complete and accurate answer to that question

6   in their written response.  Did you want to say anything

7   about the city's response to this current motion of yours?

8         MS. BARGE:  I read it, and it stated that I was -- I

9   had everything that -- everything that I was entitled to,

10   that I've gotten it, but I still don't understand why would

11   they -- why would they start out setting a precedence in one

12   year after I petitioned the Court?  That's why I went to the

13   Court because I had no other recourse.  I had just come back

14   into the city.  I didn't even know I was a retiree.  I

15   couldn't get any answers.

16         THE COURT:  Ms. Barge, wait a minute.  I'm not sure

17   you answered my question.  My question is did you want to say

18   anything in response to what the city said in response to

19   your current motion about why you got this --

20         MS. BARGE:  Yes.

21         THE COURT:  -- extra $1,800 in one year and not in

22   the next?

23         MS. BARGE:  Well, in the letter from Ms. -- the lady

24   that's the head, she wanted to -- she wrote me a letter

25   explaining it because she explained it, but I still -- I

1  don't understand.  Why would it change from one year to

2  another?  Why would they change the language?  If it states

3  earnings annuity in 2015, why had it changed in 2016?  And

4  the explanation that I got from this -- I got this right

5  here.  I just -- I disagree.  I disagree with it.  Now, it

6  may come up to where, you know, I don't have anything coming.

7  That's why I'm here in the court to let the Court make a

8  decision once and for all because if I have anything coming

9  from the City of Detroit, I want it.  If I don't have

10  anything coming, you won't see me again.  But I just can't

11  understand why -- and nobody explained to me.  All I did was

12  get my check last year in 2015, and it had the annuity on it.

13  And I was waiting for the check this year, and it didn't have

14  it.  It had zero.  So that's my reason for filing the late

15  motion.

16        THE COURT:  Ms. Barge, you are receiving a pension

17  benefit from the City of --

18        MS. BARGE:  $266 and 40 --

19        THE COURT:  Excuse me.  Excuse me.  Don't interrupt

20  me when I'm talking.

21        MS. BARGE:  Excuse me, sir.

22        THE COURT:  Let me finish.

23        MS. BARGE:  Excuse me.

24        THE COURT:  Don't interrupt.  I'll start again.  You

25  are receiving a monthly annuity from -- in the form of a

1  pension benefit from the General Retirement System of the
2  City of Detroit; is that right?
3          MS. BARGE:  A pension, not an annuity.
4          THE COURT:  Pension payment.
5          MS. BARGE:  Yes, sir.
6          THE COURT:  Monthly payment; right?
7          MS. BARGE:  Yes, sir.
8          THE COURT:  Is that roughly 283 a month?
9          MS. BARGE:  No.  They dropped it when they cut the
10  benefits last March.  It's 266.40.
11          THE COURT:  Oh, I see, so -- and that's reflected in
12  the pension statement dated January 1, 2016, that you
13  attached as one of the exhibits to your current motion;
14  right?
15          MS. BARGE:  Yes, sir.
16          THE COURT:  Okay.  All right.  Just one moment.  I
17  want to -- I want to take just a minute to look at this
18  letter that you just cited in this hearing since it wasn't
19  referred to or --
20          MS. BARGE:  All right.
21          THE COURT:  -- attached to your motion.  I pulled it
22  up.  Again, for the record, it appears as one of the exhibits
23  that you filed, Ms. Barge, in this case on December 12, 2014.
24  It appears at Docket Number 8675.  Just a second.  Let me
25  take a look at this real quick.  All right.  Thank you.  I

1  have reviewed this document.  For the record, it is a -- the

2  two pages of the letter is a -- and this is Docket Number

3  8675 -- is a letter dated December 9, 2014, addressed to

4  Thomasena Barge and signed by Carole Neville from Dentons and

5  says that Ms. Neville represents the Official Committee of

6  Retirees in the case.  I have reviewed that two-page letter,

7  which I believe Ms. Barge was referring to earlier in today's

8  hearing.  Thank you for waiting while I looked at that.

9  Ms. Barge, is there anything else you'd like to say before we

10  hear from the attorney for the city on this?

11          MS. BARGE:  No, your Honor.

12          THE COURT:  All right.  Mr. Swanson.

13          MS. BARGE:  Should I take my seat now?

14          THE COURT:  You can have a seat at -- the table

15  there is fine, sure.

16          MR. SWANSON:  Good afternoon, your Honor.  Marc

17  Swanson, Miller, Canfield, Paddock & Stone, on behalf of the

18  city.  Your Honor, I'll first start with the letter, and I

19  believe Ms. Barge was referring to the second to last

20  paragraph, which provides that the amount of the claim on the

21  ballot was $18,823.  Ms. Neville goes on to say that if the

22  city had not reached an agreement to continue supporting the

23  pension plans, you may have had a claim payable along with

24  the other unsecured creditors which we believe would have

25  been payable in exchange for value estimated to be worth

1   about ten cents on the dollar.  Instead of your lifetime

2   pension as adjusted, you might have received a distribution

3   worth only $1,882.30, which is, of course, ten percent of the

4   amount of the claim.  So what Ms. Neville was saying there is

5   that if the city had not reached an agreement on pensions,

6   that pension claims would have been unsecured claims and

7   Ms. Barge would have received approximately ten cents on the

8   dollar.  It's only a coincidence here that the --

9          THE COURT:  The letter also indicates that instead

10  of that amount of being the claim, that Ms. Barge, as a GRS

11  retiree, would have -- under the plan would be entitled to

12  continuation of her monthly pension payment subject to

13  adjustment as required by the plan that's referred to in the

14  letter; right?

15         MR. SWANSON:  Yes, your Honor.

16         THE COURT:  So it would be paid on a monthly basis

17  rather than any sort of lump sum amount?

18         MR. SWANSON:  That's exactly correct, your Honor.

19         THE COURT:  Go ahead.

20         MR. SWANSON:  So as set forth in the declaration of

21  Cynthia Thomas, which was attached as Exhibit 2 to the city's

22  reply at Docket 11197, the GRS staff discovered an error with

23  respect to the calculation of Ms. Barge's pension benefits

24  and on January 1, 2015, in her pension check corrected the

25  miscalculation by adding $1,800.51, which, you know, is close

1  to the amount stated in the letter but completely different

2  purposes here.  So, your Honor --

3          THE COURT:  Ms. Thomas' declaration that you're

4  referring to there refers in paragraph 11 to -- and says,

5  rather, that in or about February 2014 when originally

6  calculating the amount that Ms. Barge was entitled to receive

7  when she was put on pension payroll, GRS staff initially

8  neglected to add special annuity distributions that Ms. Barge

9  was entitled to receive and refers to that as the

10  miscalculation.  That amount is what was added to the January

11  1, 2015, check, pension check; right?

12          MR. SWANSON:  Yes, your Honor.

13          THE COURT:  All right.  According to Ms. Thomas'

14  declaration.

15          MR. SWANSON:  Yes.

16          THE COURT:  The declaration doesn't provide any

17  other detail about what these special annuity distributions

18  were, any more detail about that; right?

19          MR. SWANSON:  I don't know, no, your Honor.

20          THE COURT:  Now, the declaration of Ms. Thomas does

21  not add any more specifics to what these special annuity

22  distributions were --

23          MR. SWANSON:  That's correct, your Honor.

24          THE COURT:  -- or what they're based on or anything

25  like that.

1    MR. SWANSON:  That's correct, your Honor.

2    THE COURT:  Has anyone from GRS or the city at any

3  point given Ms. Barge here any sort of written detail about

4  what that was and what it was based on?  Do you know?

5    MR. SWANSON:  Your Honor, I believe, as set forth in

6  paragraphs 20, 21, that -- of the declaration that Ms. Barge

7  contacted GRS staff and Clark Hill, which served as legal

8  counsel to the GRS or which does serve as legal counsel, and

9  Clark Hill attempted to explain -- I don't know if that was

10  written or oral -- that the amount labeled "annuity" on her

11  January 1, 2015, pension check was paid to her to correct an

12  error in the calculation of her pension benefits.  So those

13  are the only explanations that I am aware of with respect to

14  Ms. Barge.

15    THE COURT:  Is GRS or the city, Ms. Thomas or anyone

16  else at GRS or the city able to provide Ms. Barge with

17  specifics in terms of what this paragraph 11 reference in Ms.

18  Thomas' declaration is referring to when it refers to special

19  annuity distributions --

20    MR. SWANSON:  Certainly, your Honor.

21    THE COURT:  -- that needed to be added to that

22  January 1, 2015, check and what they're based on?

23    MR. SWANSON:  Yes, your Honor.  We would be happy to

24  do that.

25    THE COURT:  But no one has ever done that, as far as

1   you know?

2          MR. SWANSON:  Well, your Honor, the only, I guess,

3   point there is when GRS's outside counsel explained this to

4   Ms. Barge, as set forth in paragraph 21 of the declaration, I

5   don't know if that explanation was a written explanation or a

6   verbal explanation.

7          THE COURT:  Or what the content of the explanation

8   was?

9          MR. SWANSON:  Correct.

10          THE COURT:  But the city could now or GRS, one or

11   the other, could now provide Ms. Barge a written explanation

12   of specifics of what this one-time correction of this what's

13   called a miscalculation is based on?

14          MR. SWANSON:  Your Honor, I don't personally have

15   knowledge of that, but I certainly can reach out to GRS and

16   to the city and provide Ms. Barge with an explanation of how

17   that was calculated.

18          THE COURT:  All right.  How much time -- if I were

19   to require the city or GRS to do that, who would do it, and

20   how long of a time would they want me to give them to do it?

21          MR. SWANSON:  I would consult with Clark Hill, GRS's

22   counsel, and they would be the one who would provide the

23   letter, and it would be -- I assume three weeks would be

24   sufficient.

25          THE COURT:  All right.  Mr. Swanson, what else did

1   you want to say about this motion, if anything?

2          MR. SWANSON:  Well, your Honor, on its face it's a

3   motion to file a late claim, and there are really no grounds

4   to file a proof of claim here.  Pension holders were not

5   required to file proofs of claim, and, thus, the motion is

6   moot.  And in any event, the claims bar date was a long time

7   ago, and there's been no showing of any neglect which would

8   allow Ms. Barge to file a claim at this point.  Nothing

9   further, your Honor.

10         THE COURT:  All right.  Thank you.  Ms. Barge, you

11  can come on up to the podium again if you'd like, please.

12  Ms. Barge, I'm going to rule on your motion now and explain

13  what I'm ruling and why, hopefully briefly, and so I'm going

14  to do that now.

15         Ms. Barge's motion is going to be denied without

16  prejudice, to the extent I'm going to describe, and -- but

17  with the Court requiring the city to provide -- the city or

18  GRS, one or the other, to provide a written explanation that

19  I'm going to describe to Ms. Barge within three weeks, so

20  that's sort of the bottom line which I'll provide more detail

21  about in just a minute.  And I'm going to prepare and enter a

22  written order on this, Ms. Barge, which will have the

23  specifics in it and which you will receive in the mail from

24  our clerk's office within the next few days.  And we do have

25  your correct address on file, I believe, don't we?

1          MS. BARGE:  Yes, your Honor.

2          THE COURT:  All right.  5226 Newport Street,

3    Detroit?

4          MS. BARGE:  Yes, sir, your Honor.

5          THE COURT:  All right.  The reasons for the ruling

6    are this.  Ms. Barge's motion here filed at Docket 11161 does

7    not provide any details or support that would tend to

8    demonstrate or that demonstrates that Ms. Barge is receiving

9    or has received anything less from the city or from the GRS

10   retirement system than -- anything less than what she is

11   entitled to under the city's confirmed plan of adjustment in

12   this Chapter 9 case nor does the December 9, 2014, letter to

13   Ms. Barge from Carole Neville, which is on file at Docket

14   8675 in this case, which we discussed earlier in the hearing,

15   demonstrate that Ms. Barge is receiving or has received

16   anything less than what she is -- the full amount that she is

17   entitled to under the terms of the confirmed Chapter 19 plan

18   of adjustment -- Chapter 9 plan of adjustment in this case,

19   and so the Court does not find that she is receiving anything

20   less than what she's entitled to and, therefore, that any

21   basis has been shown for the Court to order either the city

22   or the GRS retirement system to pay Ms. Barge anything more

23   or to provide Ms. Barge with anything -- any payment or

24   anything else of value in addition to the monthly pension

25   payment that she is receiving from the General Retirement

1    System of the City of Detroit, which Ms. Barge has said, and
2    as shown by the first exhibit attached to her current motion,
3    is $266.40 per month.

4         Now, I do think, however, given the history of
5    Ms. Barge's interactions with the Court and the city in this
6    case, both in 2014 and now, and given the record, including
7    the declaration of Ms. Thomas that was attached as an exhibit
8    to the city's response to Ms. Barge's motion, that the Court
9    should require the city or the GRS pension system, one or the
10   other, to provide Ms. Barge with a written explanation within
11   three weeks, so that is, therefore, no later than August 10,
12   2016, written explanation of what the special annuity
13   distributions that are referred to in paragraph 11 of the
14   declaration of Ms. Thomas that's attached to the city's
15   response, Docket 11197, were -- are and what the basis for
16   those -- the calculation of those special annuity
17   distributions was, and so I will require the city or GRS
18   pension system to provide that no later than August 10 in the
19   form of a written response to Ms. Barge. And I will also
20   require the city to, at the same time they serve this written
21   explanation to Ms. Barge, that they file it with the court.

22        To the extent there are in the letter any matters
23   that should not be placed in the public record, such as, for
24   example, a full Social Security number of Ms. Barge or anyone
25   else, any full account numbers, any names of minor children,

1   those sorts of things, which under the federal bankruptcy

2   rules are not to be disclosed in a public filing, those items

3   should be redacted from the copy of the letter to Ms. Barge

4   that is filed with the Court, of course.

5         Now, Ms. Barge -- after Ms. Barge receives and has a

6   chance to read and digest the written explanation that she's

7   going to be receiving of this item that I've described, she

8   will be free to file any new motion that she deems

9   appropriate seeking specific monetary relief from the city or

10   the General Retirement System and that she believes she's

11   entitled to under the confirmed plan of adjustment above and

12   beyond what she is already receiving.  Any such motion,

13   however, must be supported by specific facts and specific

14   explanation of how Ms. Barge calculates that she is entitled

15   to some additional payment or payments beyond what she's

16   receiving in the form of her monthly pension payment and what

17   that is based upon.  The issue in connection with any such

18   motion, of course, will be whether there's any basis for the

19   Court to find that the city is not complying with the

20   confirmed plan of adjustment with respect to the treatment of

21   Ms. Barge's claim in the case, her pension claim in the case.

22   So the order will say -- that I'm going to prepare will say

23   that this motion -- this current motion by Ms. Barge, while

24   it is being denied except for the limited relief I'm

25   granting, that this order is without prejudice to the right

1  of Ms. Barge to file a new motion seeking monetary relief
2  after she has received the written explanation that is going
3  to be due to be sent to her no later than August 10.

4  So, Ms. Barge, hopefully the written explanation
5  that you receive will explain to your satisfaction and
6  understanding what this -- in a little bit more detail and
7  more specifics what this lump sum additional amount was and
8  what it was based on that you received with your January 1,
9  2015 -- I'm sorry -- February 2015 pension payment and why
10  the city contends specifically it was a one-time lump sum
11  payment and not a payment that's to be repeated annually, as
12  you have suspected.  And I would encourage you after you
13  receive that letter to talk to General Retirement System, in
14  particular the person who sends you the letter, if you have
15  questions about it or don't understand it and see if you can
16  come to an understanding in your own mind of -- satisfactory
17  view of understanding why the city contends that you're not
18  entitled to anything more than what you're actually receiving
19  in your monthly pension benefit.  If, after doing that, you
20  are -- you still believe that you're not being paid
21  everything you're entitled to under the city's confirmed
22  plan, you can file a new motion seeking specific monetary
23  relief for specific reasons for that, but the issue in this
24  court is limited -- is going to be limited to that issue.
25  Whether there's any additional monetary relief that -- or

1  money and payments that you're entitled to under the city's

2  confirmed plan of adjustment that you're not receiving that's

3  due to you.  As I have ruled today, in my view, there is

4  nothing in the record in your motion papers or in this

5  exhibit that you filed back in December 2014 that we've

6  talked about which tends to show that you are not receiving

7  everything that you're entitled to already in the form of

8  this monthly pension benefit.

9        So that's the ruling.  As I said, I'll prepare and

10  enter an order.  Our clerk will mail a copy of the order to

11  you, Ms. Barge.  You should receive it in the mail within the

12  next few days, and the city will provide this written

13  explanation.  And we'll see if that takes care of matters.

14  Thank you.

15        MS. BARGE:  Thank you, your Honor.

16        THE COURT:  Yep.

17        MS. BARGE:  And, your Honor, please excuse me for

18  any disrespect that I might have shown by interrupting you.

19        THE COURT:  No.  No problem.

20        MS. BARGE:  All right.

21        THE COURT:  Lawyers do that to me all the time --

22        MS. BARGE:  Okay.

23        THE COURT:  -- in hearings.  It's just, you know,

24  out in the world people do that all the time --

25        MS. BARGE:  Right.

1          THE COURT:  -- and don't give it a thought, but in
2    court we have to only talk one person at a time because we're
3    recording our hearings, and --
4          MS. BARGE:  Right.
5          THE COURT:  -- if two people are talking at once,
6    the recording is going to be hard to figure out who said
7    what.
8          MS. BARGE:  All right.
9          THE COURT:  So don't worry about that.  It's a
10   normal thing, and --
11         MS. BARGE:  Okay.
12         THE COURT:  -- it happens all the time, and I didn't
13   mean to --
14         MS. BARGE:  All right.
15         THE COURT:  -- act like I was mad or anything
16   because I wasn't.
17         MS. BARGE:  Okay.
18         THE COURT:  All right.
19         MS. BARGE:  Thank you, your Honor.
20         THE COURT:  In fact, whenever I talk to my kids, it
21   really happens all the time, so I'm used to it.
22         MS. BARGE:  All right.
23         THE COURT:  All right.  Thank you.
24         MS. BARGE:  Thank you, your Honor.
25         THE COURT:  All right.  That brings us then to the

1 other matter scheduled for hearing today of the city's forty-

2 sixth omnibus objection to claims. One moment. All right.

3 Thank you. I have reviewed the city's omnibus objection here

4 and its exhibits as well as the response that was filed by

5 Shante Gowens through her attorney to the objection to

6 claim -- that's Docket Number 11367 -- and its exhibits as

7 well as the reply filed by the city on July 15, Docket Number

8 11371, and the exhibits filed in connection with that, so I

9 guess, first of all, Mr. Swanson, as you point out, there

10 have been no responses filed to this forty-sixth omnibus

11 objection other than the one filed by Ms. Gowens.

12         MR. SWANSON: That's correct, your Honor.

13         THE COURT: All right. So I assume that the city

14 would like an order with respect to all of the other claims

15 other than Ms. Gowens' claim, an order sustaining the

16 objection to claim.

17         MR. SWANSON: That's correct, your Honor.

18         THE COURT: All right. So and you want it in the --

19 basically in the form that's attached to the objection to

20 claim.

21         MR. SWANSON: That's correct, your Honor.

22         THE COURT: All right. That's fine. I'll ask you

23 to submit that. Now, whether or not that order is to include

24 Ms. Gowens' claim, of course, depends on the results from

25 today's hearing, and we'll see about that, but as to all the

1   others, that's fine.  I'll ask you to submit an order
2   regardless of what happens with Ms. Gowens here to --
3   sustaining that objection as to all the other claims, and I
4   will sustain the objections.

5          So I believe that brings us then to discuss the
6   claim of Ms. Gowens and her response to the claim objection.
7   Mr. Swanson, you can go first, and then we'll hear from Mr.
8   Dworetsky.

9          MR. SWANSON:  Thank you, your Honor.  The statute of
10  limitations in this case expired prior to the city's petition
11  date.  The response first asserts because there was
12  continuous litigation from the date of the state court
13  lawsuit through July 9th, 2013, that the statute of
14  limitations continues to be tolled.  Gowens did not provide
15  any cases or statutes in support of this statement nor does
16  she state when she believes the statute of limitations
17  actually expires.  The city, in its reply, provided this
18  Court with the correct analysis and calculation for when the
19  statute of limitations expires.

20         First, the city determined the applicable statute of
21  limitations, MCL 600.5805, subsection 10.  This was the
22  statute that the city alleged applied in Exhibit 2 to the
23  forty-sixth omnibus objection, and Gowens did not contest
24  this assertion in her reply with respect to the claims
25  against the city.  Consequently, the --

1         THE COURT:  That's the three-year limitation?

2         MR. SWANSON:  That's correct.

3         THE COURT:  Go ahead.

4         MR. SWANSON:  Consequently, the applicable statute

5 of limitations is 600.5805, subsection 10, and that statute

6 is three years.

7         The next step in the analysis, your Honor, is to

8 determine when the statute of limitations began to run, and

9 it began to run here on February 7th, 2007.  Gowens recited

10 this date as the date of incident in her response, and the

11 city agrees that the statute of limitations began to run on

12 February 7th, 2007.

13         Third, your Honor, we need to calculate when the

14 statute of limitations expired.  The statute of limitations

15 would have expired on February 7th, 2010, but here we have

16 two lawsuits that were commenced prior to that date, so we

17 need to look at those two lawsuits and see what effect, if

18 any, those two lawsuits had on the calculation of the statute

19 of limitations.  The first, your Honor, is the state court

20 lawsuit, and this was filed shortly after the incident in

21 2007.  The city, however, was dismissed with prejudice from

22 this lawsuit on October 2nd, 2011.  Now the question becomes

23 did the -- did this state court suit toll the statute of

24 limitations, and the answer, your Honor, is no.  Gowens cites

25 nothing in support of her argument that it did, in fact, toll

1   the statute of limitations, and there is a Sixth Circuit case
2   on point which we cited in our brief, the Wosniak case, which
3   provides that tolling under MCL 600.5856 is only triggered
4   when a prior action is dismissed for ministerial procedural
5   flaws, not when, as here, the prior action was dismissed with
6   prejudice for failure to state a claim.  This dismissal was
7   not for procedural flaws.  Summary judgment was granted to
8   the city on the merits.

9            THE COURT:  This Wosniak case is an unpublished
10  Sixth Circuit case.  I think you attached it as Exhibit 4 to
11  your reply at Docket 11371; right?

12           MR. SWANSON:  Correct, your Honor.

13           THE COURT:  All right.  Go on.

14           MR. SWANSON:  Consequently, your Honor, the first
15  state court action did not toll the statute of limitations.
16  The next step in the analysis, your Honor, is to analyze what
17  effect, if any, the federal court action had on the statute
18  of limitations.  The federal court action was filed on
19  February 5th, 2010.  Again, let's go back to the date of the
20  incident, which was February 7th, 2007.  So the federal court
21  lawsuit was filed two days prior to the expiration of the
22  statute of limitations.  Now, the federal case was dismissed
23  without prejudice to the city on July 9th, 2013.  The statute
24  started running again when the federal court was dismissed --
25  federal court case was dismissed, and, thus, the statute of

1    limitations expired on July 11th, 2013, a week before the

2    city filed its petition.  As such, your Honor, the statute of

3    limitations expired prior to the city's bankruptcy filing.

4         We've also included in our reply a calculation

5    identifying when the statute would have run if this Court

6    were to believe that the state courts had -- state court case

7    had, in effect, tolled the statute, which it did not, but

8    even if the Court were to find that, the statute of

9    limitations has still run, so because the statute ran prior

10   to the bankruptcy filing, Gowens' arguments regarding the

11   stay modification notice are irrelevant, and they're also

12   wrong.  Gowens argues that because the stay modification

13   notice only permitted her to file a lawsuit that this somehow

14   excuses her failure to do so.  This argument fails.  Failure

15   to take an action can have consequences such as the running

16   of a statute, and that's exactly what happened here.

17        Finally, Gowens asserts that, you know, at the very

18   least, her claim against the city for enforcement of the

19   judgment against Tidwell certainly remains valid.  Your

20   Honor, Gowens has no such claim against the city.  She may

21   have a claim against Tidwell individually, but she has no

22   claim against the city for a judgment entered against an

23   individual.  The city did not indemnify Tidwell, and even if

24   it did, that does not provide Gowens with a direct claim

25   against the city.  Gowens cites no authority to the contrary.

1  Your Honor, the city asks that the Court sustain the

2  objection.

3         THE COURT:  All right.  Thank you.  Mr. Dworetsky.

4  Did I say that right?

5         MR. DWORETSKY:  Yes.  Very good.

6         THE COURT:  Okay.

7         MR. DWORETSKY:  Thank you.

8         THE COURT:  I know you've been here before, and --

9         MR. DWORETSKY:  I have.

10        THE COURT:  -- hopefully I got your name right then,

11  too.

12        MR. DWORETSKY:  Thank you for remembering.

13        THE COURT:  Yeah.  Go ahead.  What would you like to

14  say?

15        MR. DWORETSKY:  Thank you, your Honor.  I'm just

16  going to supplement what we've already filed given the reply.

17  I don't want to restate the entire argument.  This objection

18  is solely based upon the statute of limitations argument.  I

19  think we agree on the dates, but where the disagreement is

20  as -- the disagreement is as to the effect of the pending

21  lawsuits.  The state court dismissal occurred while the

22  federal court case was still pending.  Therefore, your Honor,

23  the -- it's our position that the statute of limitations was

24  tolled throughout the litigation.  This is not -- this is not

25  Wosniak.  Wosniak is distinguishable because in Wosniak there

1    was no pending federal case.  In <u>Wosniak</u> there was a

2    dismissal with prejudice in the action, and then they tried

3    to file a lawsuit after that raising the 1983 claims.  Here

4    we've got the pending lawsuit, so there's consistent

5    litigation throughout this period, which is tolling --

6                THE COURT:  Well, wait a minute.  Excuse me.  Let me

7    walk through the dates again with you on this or you walk

8    through them with me.

9                MR. DWORETSKY:  Sure.

10               THE COURT:  You just heard Mr. Swanson for the city

11   point out or say that the state court suit was filed first,

12   of course, and then it was -- at least as to the city, the

13   city was -- it was dismissed with prejudice on October 2,

14   2011.

15               MR. DWORETSKY:  That's correct.

16               THE COURT:  Is that correct, that date?

17               MR. DWORETSKY:  I had October 12, 2011, for the

18   dismissal in the state court action.  I think we're in

19   agreement on that.

20               THE COURT:  October 12, 2011, is what you say.  All

21   right.  And then, as Mr. Swanson recounted, the federal

22   lawsuit, which included the city as a defendant, was filed on

23   February 5, 2010.

24               MR. DWORETSKY:  Correct.  That's what I have, too.

25               THE COURT:  Okay.  So we're in agreement about these

1    dates.

2              MR. DWORETSKY:  Yeah.

3              THE COURT:  So the federal lawsuit was filed before

4    the city was dismissed with prejudice in the state court

5    lawsuit.

6              MR. DWORETSKY:  That's correct.

7              THE COURT:  And why does that make a difference with

8    respect to the tolling or nontolling effect of the state

9    court lawsuit?

10             MR. DWORETSKY:  The effect of the consistent

11   litigation.  There's no break.  This is not a case where

12   someone is -- where a defendant has been dismissed from an

13   action -- there's no other pending suit -- and then a

14   plaintiff files a lawsuit and says, "I want to bring this

15   case back."  I think that's essentially what Wosniak is, but

16   this is distinguishable.  There's a --

17             THE COURT:  Well, why does that make a difference

18   under the Sixth Circuit's holding and interpretation of state

19   law in the Wosniak case?

20             MR. DWORETSKY:  Because the effect of the dismissal

21   with prejudice in the state court did not, in essence, untoll

22   the statute because there was current litigation at the time.

23   There was litigation still pending.

24             THE COURT:  Well, why does that make a difference

25   with respect to whether the state court lawsuit is --

1  admittedly this is all after the fact, but is deemed to have

2  tolled the statute of limitations at all as to the city?  In

3  other words, Wosniak -- doesn't Wosniak reason that if

4  there's a dismissal on the merits of a state court lawsuit,

5  that state court lawsuit then after the fact is not deemed to

6  have tolled the statute of limitations at all?

7          MR. DWORETSKY:  I think the difference is that there

8  are still live active claims against the party.

9          THE COURT:  Well, in the form of the federal action

10 that was filed on February 5, 2010, you mean?

11         MR. DWORETSKY:  Yes.

12         THE COURT:  Yeah.  Why does that -- what does that

13 make a difference under Michigan law as interpreted by --

14 case law as interpreted by the Sixth Circuit in Wosniak?

15         MR. DWORETSKY:  Again, I think it's distinguishable

16 because it's not a case where a defendant is being hauled

17 back into court.  They're already in court.  The claims are

18 still at issue.  There's pending litigation.  The statute

19 should be tolled during pending litigation.  There was no

20 break in the action, so I think it's distinguishable from

21 Wosniak.  I think that makes a difference.

22         THE COURT:  Well, but Wosniak doesn't talk about

23 break in the action or anything like that.

24         MR. DWORETSKY:  No, but I think we can glean that

25 from the case.  I don't think it's applicable here.  I don't

1 think we're -- we're not trying to haul somebody back into

2 court. They're already in litigation.

3             THE COURT: Hold on one second.

4             MR. DWORETSKY: Sure.

5             THE COURT: I was just looking at the Wosniak case

6 and the procedural history section of the Sixth Circuit's

7 opinion in that case. If I understand some of the facts of

8 that case correctly, the plaintiff in that case filed a first

9 lawsuit in Wayne County Circuit Court on March 22, 1996,

10 against several defendants. The appellee involved in the

11 Wosniak case was this person named Henderson, Pauline

12 Henderson, rather than the other defendant, so focusing on

13 Pauline Henderson. She filed her complaint in the Wayne

14 County Circuit Court first case, March 22, 1996, and

15 ultimately the Wayne County Circuit Court entered an order

16 granting this -- I'm sorry. Ms. Henderson was a defendant.

17 I got that wrong. The plaintiff was not Henderson. It was

18 Nicole Wosniak. So Nicole Wosniak filed this first state

19 court lawsuit in Wayne County Circuit Court against Pauline

20 Henderson and other defendants on March 22, 1996. Pauline

21 Henderson, that defendant, obtained entry of an order by the

22 Wayne County Circuit Court -- after some appellate action and

23 lots of procedural doings, she obtained an order granting

24 summary disposition in favor of her, Defendant Henderson, on

25 February 26, 1999, in that first case, Wayne County Circuit

1    Court case.  Then the Sixth Circuit describes the second

2    lawsuit that was filed by Nicole Wosniak there, and that one

3    was filed, again, in Wayne County Circuit Court on February

4    24, 1999, according to the Sixth Circuit.  It was later

5    removed to U.S. District Court, and then it was the U.S.

6    District Court that ultimately ruled that Ms. Wosniak's claim

7    against Ms. Henderson was time-barred under the Michigan

8    statute of limitations that applied in 1983 actions.  The

9    Sixth Circuit affirmed that ruling and held that under

10   applicable Michigan law regarding tolling, the first Wayne

11   County Circuit Court case did not toll at all the running of

12   the three-year statute of limitations on the claim by Ms.

13   Wosniak against Ms. Henderson.  Now, have I got all of that

14   right so far?

15          MR. DWORETSKY:  I believe so.

16          THE COURT:  Okay.  So you know what's coming now.

17   The question is, well -- or the point is based on the facts

18   as recounted, the procedural history as recounted by the

19   Sixth Circuit in Wosniak, the second lawsuit was filed two

20   days before the first one was disposed of by summary

21   disposition in favor of Defendant Henderson.  Doesn't that

22   parallel the facts here, which is -- on this point that

23   you've been talking about, which is here there was never a

24   break in the litigation in the sense that there was always

25   pending litigation?  Case one was still pending when case two

1    was filed, and you're arguing that makes a --

2           MR. DWORETSKY:  Yeah.

3           THE COURT:  -- difference, but wasn't that the very

4    fact pattern in Wosniak?  And there the Sixth Circuit held

5    the case -- first case was -- did not toll the statute of

6    limitations.

7           MR. DWORETSKY:  I don't think that was the basis for

8    the decision, and I'm looking --

9           THE COURT:  Am I misreading --

10          MR. DWORETSKY:  I don't know.  No.  I don't think

11   you're misreading anything.

12          THE COURT:  Well, I mean that's the procedure -- I

13   got the procedural history right in the Wosniak case; right?

14          MR. DWORETSKY:  I don't think that's how the case

15   was decided.

16          THE COURT:  Okay.  But first before -- I want to

17   hear from you on this, but before I do, I've recited the

18   procedural history in Wosniak correctly, haven't I?

19          MR. DWORETSKY:  I believe so.

20          THE COURT:  All right.  So why is this case any

21   different than Wosniak then with respect to the tolling issue

22   regarding the first lawsuit?

23          MR. DWORETSKY:  I think when you look -- when you

24   look at the language of the statute of limitations, they're

25   tolled at the time a complaint is filed.  And if the Court --

1  if that Court did not look at that issue, if that issue
2  wasn't raised, then that --
3          THE COURT:  Now, wait a minute.  There you're
4  referring to Michigan Compiled Laws, Section 600.5856 --
5          MR. DWORETSKY:  Yes.
6          THE COURT:  -- (a); right?
7          MR. DWORETSKY:  Yes.
8          THE COURT:  Yeah.  And that statute doesn't say
9  anything about when -- any of this stuff about if a lawsuit
10 is disposed of on the merits, it doesn't toll.  That's
11 supplied by Michigan case law, isn't it, rather than by the
12 wording of the statute?
13         MR. DWORETSKY:  The way I would apply the statute is
14 at the time -- if at the time the complaint is filed and a
15 copy of the summons and complaint is served on the defendant,
16 that's when it's tolled.  Then because the dismissal of the
17 state court case did not occur until after the filing of the
18 federal court case, the statute continued to toll.  That's
19 how I read the statute, and that's how I argue it should
20 apply under these facts.  I don't think -- I don't think
21 Wosniak discussed that issue, and I think that needs to be
22 addressed.
23         THE COURT:  But am I correct, though, in saying that
24 while this statute, 600.5856(a), says that statute of
25 limitation is tolled at the time the complaint is filed, it

 1    doesn't say -- it doesn't go on to say anywhere in the

 2    statute that but the tolling doesn't apply if that case in

 3    which that complaint is filed is dismissed on the merits?

 4    That part of Michigan law is supplied, it appears, by case

 5    law rather than via this statute unless there's some other

 6    statute that Wosniak didn't mention that says that, but am I

 7    right about that point, that the exception to the tolling, in

 8    effect, for decisions on the merits in a lawsuit, that that

 9    is basically a court-made, a judge-made rule?  It's not a

10    statutory rule of law in Michigan; is that right?

11            MR. DWORETSKY:  I think that's fair.

12            THE COURT:  Okay.

13            MR. DWORETSKY:  I think that's a fair statement.

14            THE COURT:  I mean Wosniak, for example, cited

15    cases.  It didn't cite any statutes on that point.

16            MR. DWORETSKY:  Sure, sure.

17            THE COURT:  All right.

18            MR. DWORETSKY:  I just don't think that the argument

19    I'm making -- I don't see where that was even discussed, and

20    I think it's crucial.

21            THE COURT:  I think you're right.

22            MR. DWORETSKY:  I think it's crucial.

23            THE COURT:  Wosniak did not explicitly discuss any

24    argument or say that the party in that case made an argument

25    like you're making now.  I think you're right.  I don't see

1　that in <u>Wosniak</u>.  So you're saying they didn't think about

2　that argument, and so I should think about it and not be

3　bound by <u>Wosniak</u>.

4　　　　　MR. DWORETSKY:  I do.  I do, especially in --

5　　　　　THE COURT:  Even though the fact pattern --

6　　　　　MR. DWORETSKY:  -- this case where there's a pending

7　lawsuit.

8　　　　　THE COURT:  Even though the fact pattern is

9　analogous.

10　　　　　MR. DWORETSKY:  Well, I think that was a rehearing.

11　I don't know.  You know, frankly, I can't explain why they

12　didn't raise that argument.  As far as the order being -- was

13　it two days?  I think it was two days that the order was

14　eventually entered, but I think they filed a motion for

15　rehearing, so I don't know what the reason was for not doing

16　that.  There was a -- I know there was a leave for appeal.  I

17　don't know why they didn't make that argument.  I can't

18　explain that, but I think it's crucial here because when you

19　file a complaint, the statute should be tolled, and that's

20　the way I read the law, and it should apply here.  And if

21　that does apply here, then I think we look to Section 108,

22　and then we get to the point of whether or not there was any

23　effect on the statute by the modification, by the stay

24　modification.

25　　　　　THE COURT:  Okay.  So what do you --

1           MR. DWORETSKY:  So that's the second issue.

2           THE COURT:  -- want to say about the 108 argument?

3     The city's first argument about the statute expiring pre-

4     petition means that -- if correct, means that Section 108

5     doesn't extend --

6           MR. DWORETSKY:  You don't even get to -- right.

7           THE COURT:  -- doesn't come into play at all.

8           MR. DWORETSKY:  You don't even get to 108.

9           THE COURT:  Yeah.  Assuming we get to 108, what do

10    you want to say about that line of argument?

11          MR. DWORETSKY:  What I would say is that if -- I

12    contend 108 controls and that you look to 30 days after

13    expiration of the stay.  I think the Walker case that they're

14    relying on is also distinguishable.  It's another case that's

15    distinguishable from this situation because in that case they

16    were dealing with a multi-party tort claim which basically

17    gives the claimant an either/or situation.  If you want to

18    preserve the stay, you have to take an affirmative step and

19    file a preservation motion, a stay preservation motion.

20    Otherwise the 35-day period is going to be triggered.  Here

21    the only modification was to permit a voluntary action.

22    Doesn't say we have to file.  It's to permit liquidation in a

23    nonbankruptcy forum.  And the city expressly indicated that

24    they did not consider this claim a multi-party tort claim, so

25    this situation is distinguishable from the Walker case where

 1  a claimant had to take an affirmative act.  We did not have

 2  to take an affirmative act.  And just like in the multi-party

 3  tort claim, if a stay preservation motion was filed, you

 4  could -- the stay would carry on.  You'd continue the claims

 5  process.  But you don't have to do that here where it's not a

 6  multi-party tort claim.  So I argue that the -- that Shamus

 7  decision, although it's not on point -- I admit that it's not

 8  on point.  I wasn't trying to say that it was.  It's

 9  analogous because the court's reasoning there was just

10  because a certain creditor could have taken an action, that

11  doesn't untoll a statute of limitations period because they

12  can certainly choose to be protected throughout the claims

13  process and be protected in this forum here by the court

14  here.

15          THE COURT:  Well, why is that so --

16          MR. DWORETSKY:  That's my argument.

17          THE COURT:  Excuse me.  Why is that so under the

18  language of Section 108(c), which is what we're talking about

19  here; right?

20          MR. DWORETSKY:  Um-hmm.

21          THE COURT:  108(c) has --

22          MR. DWORETSKY:  Yes.

23          THE COURT:  -- the effect of extending -- if the

24  statute of limitations has not expired when the bankruptcy

25  petition is filed -- that's what we're talking about.  In

that scenario, Section 108(c) has the effect of extending --
potentially extending that limitations period because it says
that the -- essentially, the limitation period does not
expire till the later of two dates, the first of which is the
end of the limitations period without counting any suspension
to the automatic stay, and the second is -- of the two later
dates is 30 -- it says 30 days after notice of the
termination or expiration of the stay under Section 362, 922,
et cetera, as the case may be with respect to such claim.  So
here why wasn't the stay modification notice that was filed
and served regarding Shante Gowens' claim, which is on file
at Docket 7372 and was filed September 9, 2014 -- why isn't
that notice of the termination or expiration of the stay
under Section 362 and 922 with respect to the claim of Shante
Gowens within the meaning of that wording in Section
108(c)(2)?  You see what I'm asking?

      MR. DWORETSKY:  Yeah, I do.  I do.  I understand the
question.

      THE COURT:  Why?

      MR. DWORETSKY:  It doesn't.

      THE COURT:  Why not?

      MR. DWORETSKY:  Because all it does is solely permit
liquidation in a nonbankruptcy forum.  It doesn't say you
have to.

      THE COURT:  Well, but I guess the point of my

1  question is it grants relief from stay to permit that

2  liquidation of the claim in a nonbankruptcy forum.

3        MR. DWORETSKY:  If you choose to avail yourself.

4        THE COURT:  But the point is it eliminates the stay

5  that otherwise -- the automatic stay that would otherwise

6  prohibit that, that litigation; right?

7        MR. DWORETSKY:  If you choose to avail yourself;

8  correct.  It's not mandatory.  The stay lives on if you don't

9  do that.

10        THE COURT:  Well --

11        MR. DWORETSKY:  That's how I read it, and I don't --

12        THE COURT:  The stay lives on?

13        MR. DWORETSKY:  Why would you have to file a stay

14  preservation motion in a multi-tort case if you wanted -- why

15  would you allow that route?

16        THE COURT:  You agree this is not a multi-party tort

17  case.

18        MR. DWORETSKY:  Yes.

19        THE COURT:  All right.

20        MR. DWORETSKY:  I do.

21        THE COURT:  And so with respect to this kind of case

22  and under the ADR order and the stay modification notice,

23  those documents in this case, why didn't the filing of the

24  stay modification notice on September 9, 2014, with respect

25  to Ms. Gowens terminate or cause expiration of the automatic

1  stay with respect to her claim within the meaning of Section

2  108(c)(2)?

3          MR. DWORETSKY:  I don't read it that way.  I don't

4  think it does --

5          THE COURT:  Well, why didn't it?  Why didn't it?

6          MR. DWORETSKY:  -- because it's only voluntarily.

7          THE COURT:  I'm sorry.

8          MR. DWORETSKY:  Because it's a voluntary act.

9          THE COURT:  Well, what does 108(c)(2) have to do

10 with that?

11         MR. DWORETSKY:  Because it doesn't expire unless

12 you -- it doesn't expire unless you seek this alternate

13 resolution.

14         THE COURT:  Well, if I enter an order that gives --

15 grants a specific party -- and I do this sometimes on motions

16 for relief from stay.  I enter an order that says the stay

17 is --

18         MR. DWORETSKY:  Excuse me.

19         THE COURT:  -- relief from stay is granted to the

20 extent necessary to permit litigation and liquidation of X

21 party's claim in an appropriate nonbankruptcy court.  Whether

22 that party decides, okay, I'm going to go sue or I'm going to

23 pursue it or I'm just going to sit back and do nothing,

24 whether they accept it is, I think, the word you used or not,

25 the stay is lifted to that extent because -- merely because

1   of the entry of that order, isn't it?

2       MR. DWORETSKY:  But that's not an expiration of the

3   stay.

4       THE COURT:  It's not a termination or expiration of

5   the stay?

6       MR. DWORETSKY:  No.

7       THE COURT:  Why not?

8       MR. DWORETSKY:  It's not a termination or expiration

9   of the stay unless a person avails themself of whatever it is

10  that this modification is letting them do.

11      THE COURT:  All right.  Well, anyway --

12      MR. DWORETSKY:  Otherwise why would you -- the

13  multi-tort case -- the multi-party tort case you have to file

14  a motion to preserve -- you're allowed to file a motion to

15  preserve the stay.  It's an option, but the Court says, no,

16  you have to file a motion in order to do that.  Here we

17  weren't told that we have to file a motion if we want to

18  preserve the stay.  We were just told, look, if you guys want

19  to go liquidate this claim in a nonbankruptcy proceeding, you

20  can do that.  It doesn't say we have to file anything to

21  preserve the stay.  It just says, hey, if you want to do

22  this, go ahead and do this.  I think that's an unfair

23  application of the modification.

24      THE COURT:  Well, the provisions of the ADR order

25  and the stay modification notice that was filed with respect

1  to Ms. Gowens' claim and what it says about multi-party tort

2  claims I think you've already acknowledged does not apply to

3  the claim of Ms. Gowens because hers is not a multi-party

4  tort claim, and so what does apply is the provisions

5  regarding initial designated claims, and as to those it

6  doesn't say anything about the ability to file a stay

7  preservation motion or any of that stuff; right?

8        MR. DWORETSKY:  No.  Exactly.  I agree.  It doesn't

9  say we have to, whereas I think it puts an affirmative burden

10 on a multi-party tort claim claimant to do that.  If you want

11 the stay to persevere or preserve, then you have to do

12 something.  You have to file this motion.

13       THE COURT:  But other types of claims, sort of what

14 is filed in the stay modification notices, the stay is lifted

15 and whether the claimant likes it or not, isn't it?

16       MR. DWORETSKY:  I don't read it that way --

17       THE COURT:  All right.

18       MR. DWORETSKY:  -- not with the voluntary --

19       THE COURT:  All right.

20       MR. DWORETSKY:  -- not with the voluntary provision.

21 It's not mandatory.

22       THE COURT:  All right.  So is it correct, though --

23 assume just for discussion purposes -- and I know you don't

24 agree with this premise, but if the Court -- well, if the

25 stay was lifted upon the filing of the stay modification

1   notice to permit Ms. Gowens to pursue her lawsuit in a

2   nonbankruptcy court, you know, whether she agreed with it,

3   accepted it, wanted it or not, if you assume that's the case,

4   then isn't it true -- is the city's analysis that leads to

5   the conclusion -- under that assumption that leads to the

6   conclusion that the statute of limitations expired -- I think

7   it would have been in March of this year under the way

8   Section 108(c)(2) works --

9           MR. DWORETSKY:  I haven't run the calculation.

10          THE COURT:  You saw their calculation, didn't you?

11          MR. DWORETSKY:  Yeah.  I didn't --

12          THE COURT:  You don't have a response to that or

13  whether you agree or disagree?

14          MR. DWORETSKY:  I can't give you a date in response,

15  but I would assume that their math was correct.

16          THE COURT:  Okay.  So it really turns -- you know,

17  assuming there was tolling in that first lawsuit, as you're

18  arguing, and the second lawsuit while they were pending such

19  that in your view 108(c)(2) applies, really your argument

20  here turns on whether or not the Court should deem the stay

21  modification notice filed September 9, 2014, as having given

22  notice of the termination or expiration of the stay with

23  respect to such claim as that phrase is used in 108(c)(2); is

24  that right?

25          MR. DWORETSKY:  As to the claims against the city --

1          THE COURT:  Yeah.

2          MR. DWORETSKY:  -- yes.

3          THE COURT:  Okay.  I think you're -- now you're

4    going to move into probably a discussion of this

5    indemnification issue?

6          MR. DWORETSKY:  That's right.

7          THE COURT:  Go ahead.

8          MR. DWORETSKY:  I only saw a response as to that

9    aspect of the claim as to essentially the substance of

10   whether or not -- the substantive argument of whether or not

11   the city would be responsible to indemnify Tidwell for the

12   claim.  I didn't see any statute of limitations argument made

13   as to that claim because I'm assuming that there would be no

14   dispute that it's a ten-year statute of limitations period

15   for enforcement of the judgment.  It's not a three-year

16   statute.  So if we get the judgment on -- in 2013, seven --

17   July 9, 2013, then the statute on that claim doesn't run

18   until July 9, 2023, so I don't think --

19         THE COURT:  Well, that's a judgment against Tidwell

20   only; right?

21         MR. DWORETSKY:  It is.

22         THE COURT:  I mean that's in the record in exhibits.

23         MR. DWORETSKY:  Yeah.

24         THE COURT:  There was a consent judgment.

25         MR. DWORETSKY:  Yeah.

1          THE COURT:  What is it?  300,000?

2          MR. DWORETSKY:  Yes.

3          THE COURT:  Against Tidwell?

4          MR. DWORETSKY:  Correct.

5          THE COURT:  Entered in the U.S. District Court case,

6    the second case --

7          MR. DWORETSKY:  Correct.

8          THE COURT:  -- right?

9          MR. DWORETSKY:  Yes.

10          THE COURT:  On July 9, I think, of 2013.

11          MR. DWORETSKY:  Correct.

12          THE COURT:  Just a week or so before the bankruptcy

13    case was filed.  So how does that judgment give Ms. Gowens a

14    claim against the city?

15          MR. DWORETSKY:  I think Ms. Gowens has a claim

16    against the city to indemnify their employee who was acting

17    under the color of law and acting in the performance of his

18    official duties.  I think she has -- absolutely has a claim

19    to ask a judge to rule on whether they should have

20    indemnified that claim.

21          THE COURT:  The claim for indemnification is a

22    claim, if it exists at all, that runs only in favor of the

23    city employee who has a right -- claimed right to indemnity,

24    isn't it?

25          MR. DWORETSKY:  And I believe that he can assign

1 that right.

2 THE COURT: Well, the claim -- the proof of claim is

3 not based on an assignment of any right of indemnity, is it?

4 MR. DWORETSKY: Well, the proof of claim -- that

5 aspect could be, sure. I don't see why not.

6 THE COURT: Your claim is Claim Number 2727,

7 Ms. Gowens' claim. It was filed February 21, 2014. A copy

8 of it is Exhibit 1 to the city's reply brief, and you've seen

9 it, of course, I'm sure.

10 MR. DWORETSKY: Sure.

11 THE COURT: In fact, it was filed by your firm on --

12 it looks like on behalf of Ms. Gowens. Amount of claim, $3

13 million. Basis for claim, personal injury/assault. That's

14 Items 1 and 2 on the proof of claim form. And then it has

15 copies of three documents attached as addendum to the claim,

16 the U.S. District Court complaint, plaintiff's case

17 evaluation summary, and the case evaluation award. Do any

18 of -- is there anything in this proof of claim or its

19 exhibits that -- hang that up. Sorry for that interruption.

20 MR. DWORETSKY: That's all right.

21 THE COURT: That's from a prior hearing. It should

22 have been hung up a long time ago. Anyway, is there anything

23 in the proof of claim or its addendum that even hints that

24 it's a claim for indemnity based upon assignment of an

25 indemnity claim by Officer Tidwell to Ms. Gowens?

1    MR. DWORETSKY:  I don't know necessarily that it's

2  in that document itself, but there's been correspondence with

3  the city attorneys.  They knew about the litigation.  They

4  knew about the claim.  They knew about the federal suit.

5  There was correspondence afterwards.  They knew what we were

6  looking to do, what potentially we were seeking as far as

7  remedies.  It wasn't -- it's not a surprise.

8    THE COURT:  Has Tidwell assigned any sort of right

9  to indemnity that he claims to have to Ms. Gowens?

10    MR. DWORETSKY:  I don't know that that's been done,

11  and if it has, I don't even know if I can -- there might be

12  confidentiality provisions that I can't state on the record

13  right now.

14    THE COURT:  Well --

15    MR. DWORETSKY:  I don't know.

16    THE COURT:  -- if Ms. Gowens is asserting a claim

17  against the city in the bankruptcy case based on such an

18  assignment, you know, you got to prove it.  You got to show

19  it.  You have to -- it's actually required to be filed with

20  the proof of claim by the rules or, if the assignment

21  occurred after the filing of the proof of claim, then you

22  could file a notice of the assignment of any claim that

23  Tidwell filed in the city case.  Did Tidwell ever file a

24  claim for indemnity in the city's bankruptcy case?

25    MR. DWORETSKY:  I don't believe so.

```
 1          THE COURT:  So any claim he may have had, at least
 2   through the -- I think it was February -- the date --
 3   February 24, thereabouts, 2014 was the bar date for filing
 4   claims.  Any claim he may have had is time-barred, barred by
 5   the --
 6          MR. DWORETSKY:  Yeah.
 7          THE COURT:  -- claims bar date; right?
 8          MR. DWORETSKY:  I don't know that he filed anything,
 9   but that's not the basis of the objection here today.  The
10   basis --
11          THE COURT:  Well, no.  I mean the city's objection
12   was assuming that this claim that you did file, Number 2727,
13   for Ms. Gowens, which is $3 million, not 300,000, was not
14   based on indemnity.  It was based upon -- it was a direct
15   claim basically.
16          MR. DWORETSKY:  I think the intent was to file a
17   claim based upon that litigation.
18          THE COURT:  A direct claim against the city; right?
19          MR. DWORETSKY:  Both.
20          THE COURT:  Well --
21          MR. DWORETSKY:  The entire litigation.
22          THE COURT:  -- I'm looking for any hint of that in
23   the proof of claim, and you've not pointed me to any.
24          MR. DWORETSKY:  I can't.
25          THE COURT:  Yeah.
```

1         MR. DWORETSKY:  I can't.

2         THE COURT:  Well, I know you haven't briefed this,

3    but is there any conceivable valid basis -- assuming that

4    Tidwell assigned his claim for indemnity against the city to

5    Ms. Gowens and that that assignment was valid, is there any

6    conceivable basis for that indemnity claim succeeding on the

7    merits?

8         MR. DWORETSKY:  I believe that there is.  This

9    officer was acting under the color of law.  The things that

10   he did he could have only gotten away with with being -- with

11   acting under the color of law performing his official duties.

12        THE COURT:  What's the legal basis for the

13   proposition that he is entitled to be indemnified by the City

14   of Detroit for a claim based on the outrageous conduct that

15   is alleged against him?

16        MR. DWORETSKY:  Correct.  I think that's in his

17   employment, part of his employment.  I'm sure there's

18   contracts.  I'm sure there's some kind of document in his

19   employment, but I don't know the answer to that question.

20        THE COURT:  All right.  Anything else you'd like to

21   say about the --

22        MR. DWORETSKY:  No, no.  I think everything is in

23   the brief.  I think I've responded to the effect that I think

24   the cases that they cite in their reply are distinguishable.

25   I think we've addressed that and gone through how I interpret

1  those cases, how I interpret the statute, how I interpret the
2  appropriate bankruptcy section, and thank you for the
3  opportunity.

4      THE COURT:  All right.  Thank you, Mr. Dworetsky.
5  Mr. Swanson, as counsel for the party objecting to claim, you
6  may reply briefly if you want to.

7      MR. SWANSON:  Thank you, your Honor.  Three brief
8  points.  First, this issue of assignment is, it sounds like,
9  complete speculation on behalf of Mrs. Gowens' counsel.  It
10 wasn't attached to the proof of claim.  It wasn't attached to
11 the response.  It wasn't mentioned in either document.  In
12 fact, the judgment wasn't attached to the proof of claim
13 either.  This was raised today for the first time.
14 Ms. Gowens' counsel has no ability to confirm that there ever
15 was an assignment, and that should not stop the Court from
16 overruling -- or from sustaining the objection today.

17     Second, your Honor, there was nothing in the <u>Wosniak</u>
18 case which creates the exception that Gowens' counsel asked
19 this Court to find, and there was nothing in any of the other
20 cases cited in Gowens which created this exception, and, in
21 fact, Gowens' counsel have pointed the Court to no case which
22 would create this exception.  As the Court walked Ms. Gowens'
23 counsel through, <u>Wosniak</u> is, in fact, on all fours in terms
24 of the factual pattern.

25     Finally, your Honor, the stay was lifted upon the

1 filing of the stay modification notice. Again, that was

2 addressed in another Sixth Circuit case, the <u>Walker</u> case.

3 Because Ms. Gowens did not choose to take advantage of the

4 fact that the stay was lifted doesn't mean it wasn't lifted

5 and doesn't mean that 108 doesn't apply. Thank you, your

6 Honor.

7 THE COURT: All right. Thank you. Just a moment,

8 please. All right. Thank you both. I'm going to rule on

9 this claim objection, this piece of the city's forty-sixth

10 omnibus objection, the only -- concerning the only claim

11 which -- for which the claimant did file a response, timely

12 or otherwise, to the claim objection. As I said earlier, as

13 to all those claims covered by the forty-sixth omnibus

14 objection, to which no response was filed, the Court has

15 sustained the objection and will reflect that in an order to

16 be entered after the city submits a proposed order to that

17 effect, basically the same order -- type order as was

18 attached to the forty-sixth claim objection.

19 The one timely response filed to the claim objection

20 was that by Shante Gowens represented by Attorney Dworetsky

21 here and which -- about which the parties have argued in

22 their papers and in the hearing today. The Court will rule

23 on the issues and on the claim objection with respect to

24 Ms. Gowens' claim now.

25 First of all, with respect to the -- everything

except the possible claim of Ms. Gowens based upon a
purported claim that Officer Tidwell might have had for
indemnity against the city for a liability or judgment he
suffered in favor of Ms. Gowens, aside from -- putting that
aside for a moment but, rather, talking about what might be
referred to as Ms. Gowens' direct claim against the city,
which was the subject of two lawsuits filed by Ms. Gowens
before the filing of the city's Chapter 9 bankruptcy case
on -- in July of 2013, I want to discuss that first.  The
city has argued that that -- that the proof of claim that was
filed in this case, which was filed before the bar date for
filing proofs of claim, Claim Number 2727, is time-barred, is
barred by the statute of limitations, and that it was barred
by the statute of limitations before the city even filed the
Chapter 9 bankruptcy case.  One moment.

         The facts relevant to that argument by the city, in
my view, are undisputed and include the following.  The date
of the action and conduct which -- upon which Ms. Gowens'
claims against the City of Detroit, Officer Tidwell, and --
and Officer Tidwell both were based occurred on February 7,
2007, and the parties agree that that is when the statute of
limitations with respect to any claim by Ms. Gowens against
the city began to run, including any claims based upon 42 --
or brought under 42 U.S. Code, Section 1983, and that the
applicable statute of limitations period for such claims --

1  state-based claims, 42 U.S.C., Section 1983, claims, all

2  claims against the city was the three-year period of

3  limitations under Michigan Compiled Laws, Section 600.5805,

4  sub (10). That period of limitations is confirmed by case

5  law under Section 1983 with respect to 1983 claims by lots of

6  cases, including the Wosniak versus Henderson case cited by

7  the city as -- a copy of which is attached as Exhibit 4 to

8  the city's reply, Docket 11371. And it is also undisputed

9  that the first lawsuit filed by Ms. Gowens against the city

10  and others was filed -- including Tidwell, was filed in the

11  state Circuit Court well within the three-year limitation

12  period -- the three-year limitation period. It's also

13  undisputed that the city was dismissed as the defendant in

14  that case. The claims against the city by Ms. Gowens in that

15  first lawsuit were dismissed with prejudice. The city says

16  that occurred on October 2, 2011. Counsel for Ms. Gowens

17  said in today's hearing he thought that date was October 12,

18  2011, but, in any case, it was on or about one of those dates

19  that that occurred. It's also undisputed that Ms. Gowens

20  filed a second lawsuit against Tidwell and the city, which

21  included 1983 claims, and that was filed on February 5, 2010,

22  in the U.S. District Court for this district. It's also

23  undisputed that in that case on July 9, 2013, a week or so

24  before the city filed its Chapter 9 bankruptcy case, the

25  federal court lawsuit was completely disposed of in two ways,

1   one by Officer Tidwell agreeing to a consent judgment for

2   $300,000 in favor of Ms. Gowens against himself only, which

3   was filed July 9, 2013, and also by an order dismissing the

4   case as to the City of Detroit -- Ms. Gowens' claims against

5   the City of Detroit without prejudice, as the order stated,

6   also July 9, 2013.

7           The city argues, based upon the cases, including

8   those cited in the Wosniak versus Henderson case that I

9   alluded to a moment ago, a decision of the U.S. Court of

10  Appeals for the Sixth Circuit from 2000, and also the case of

11  Patton versus Village of Cassopolis, 2013 Westlaw 3929989, a

12  decision of the U.S. District Court for the Western District

13  of Michigan from 2013, a copy of which is attached as Exhibit

14  5 to the city's reply, Docket 11371, based on these cases and

15  cases cited by these cases, particularly cases -- Michigan

16  cases cited by the Wosniak versus Henderson case, that the

17  first lawsuit, the one in which the city was dismissed with

18  prejudice in October 2011 here brought by Ms. Gowens, does

19  not toll the Michigan statute -- three-year statute of

20  limitations for any time period because of the pendency of

21  that lawsuit because it was decided on the merits and, by the

22  way, adversely to Ms. Gowens in favor of the city.  That is,

23  the city was dismissed with prejudice.

24          The fact that the commencement of a lawsuit by the

25  filing -- the filing of a complaint tolls the Michigan

1   statute of limitations is established by Section 600.5856,

2   sub (a), of the Michigan Compiled laws, which says that, "The

3   statutes of limitations or repose are tolled in any of the

4   following circumstances:  (a) At the time the complaint is

5   filed, if a copy of the summons and complaint are served on

6   the defendant within the time set forth in the supreme court

7   rules," unquote.  That statute nor -- neither that statute

8   nor any other statute that the parties have cited says

9   anything about the tolling -- any exception to that tolling

10  rule or that the tolling -- the filing of a complaint and

11  pendency of a lawsuit does not toll the statute of

12  limitations if it later turns out that the action is decided

13  and disposed of on the merits and rather than not on the

14  merits.  And that conclusion, however, is supplied by

15  Michigan case law, numerous cases in Michigan, including

16  decisions of the Michigan Supreme Court, including those

17  cases that are cited by the Sixth Circuit in the Wosniak

18  versus Henderson case.  It appears to be a judge-made rule

19  rather than a statutory rule, common law rule or

20  interpretation by the courts, at least, upon the tolling of

21  statutes and rules in Michigan.  As the Sixth Circuit put it

22  in Henderson versus Wosniak -- it's an unpublished decision,

23  230 Federal Reporter 3d 1361.  Again, a copy is at Exhibit 4

24  to Docket 11371.  The Sixth Circuit held in that case and

25  reasoned that -- regarding the tolling that, quote, "Michigan

1    courts interpret the tolling statute to cover instances where
2    litigation was commenced but dismissed on grounds other than
3    a determination of the merits," and then the Court cites
4    numerous cases.  I'm omitting citations here.  Then the Court
5    went on to say, quote, "Tolling is triggered only when a
6    prior action is dismissed for ministerial procedural flaws,
7    not when, as here, the prior action was dismissed with
8    prejudice for failure to state a claim," unquote.  The Court
9    went on to say because the first lawsuit filed by the
10   plaintiff, Wosniak, against Henderson and others in the case
11   before it, the Sixth Circuit reasoned, that that first action
12   of the plaintiff appellant, Ms. Wosniak, quote, "was
13   dismissed because she failed to state a claim on which relief
14   could be granted.  Such decision was on the merits for both
15   res judicata and tolling purposes.  Therefore, the statute of
16   limitations was not tolled and appellant's second action is
17   barred," unquote.  The facts in Wosniak versus Henderson, as
18   I discussed at some length with Ms. Gowens' counsel in
19   today's hearing and walked through -- and I just incorporated
20   that by reference basically -- the facts there parallel
21   closely the facts in the case before the Court now in that a
22   first lawsuit was filed by the claimant -- in this case,
23   Ms. Gowens -- against the City of Detroit.  Ultimately that
24   lawsuit was dismissed with prejudice and, therefore, on the
25   merits, and, therefore, under the reasoning and holding

interpretation of Michigan law by the Sixth Circuit in
Wosniak versus Henderson, that first lawsuit does not have
the effect of tolling the statute of limitations for any
period of time under Michigan law, and that is true even
though in this case, as in the Wosniak versus Henderson case,
a second lawsuit was filed by the claimant against the same
defendant while the first case was still pending and before
that first case was dismissed with prejudice.  The same thing
happened in Wosniak versus Henderson.  The same thing
happened here in this case; that is, the federal court case
in this case.  The second case filed by Ms. Gowens against
the city was filed before -- well before the city was
dismissed as a defendant in the first lawsuit in the state
court.  The dismissal of the city with prejudice in the first
case filed was in October 2011.  It's undisputed that the
federal action, the U.S. District Court action, the second
case, was filed by Ms. Gowens on February 5, 2010.

Now, counsel for Ms. Gowens has argued in today's
hearing that the fact that the first action was still pending
when the second action was filed so that there was
continuously pending litigation against the city by
Ms. Gowens on her claim means that the first action --
requires a ruling by this Court under Michigan law that the
first action filed by Ms. Gowens, the one that was dismissed
with prejudice in October 2011 as against the city, did toll

the statute of limitations, notwithstanding the case law,
including Wosniak versus Henderson.  While it is true -- the
Court must reject that argument, however.  There's no
authority cited by counsel for Ms. Gowens to support that
argument, no authority under case law, under Michigan law, or
federal courts interpreting Michigan law that have ruled that
way, and there's no basis for the Court to rule that way,
particularly given the fact that the fact pattern here is
parallel in that respect to the fact pattern in the Wosniak
versus Henderson case as I've described.  The Sixth Circuit
in Wosniak versus Henderson ruled that the first case filed
by the claimant in that case did not toll the statute of
limitations because it had been dismissed with prejudice, and
that was true even though a second lawsuit was filed before
the first one was dismissed.  The Sixth Circuit didn't
mention that as being relevant at all, that fact, but,
rather, the only thing relevant to the Sixth Circuit's ruling
was that the first action was dismissed on the merits -- that
is, dismissed with prejudice -- and because of that, the
Sixth Circuit ruled -- and without relying on any other
reason, the Sixth Circuit ruled that the first action,
therefore, did not toll the statute of limitations, the
three-year statute of limitations, and the Court went on to
affirm the dismissal of the -- of Wosniak's case against
Henderson in that case on the grounds that the statute of

1   limitations had expired because there was no tolling, the

2   three-year statute.

3        The same result is required here, in my view.  This

4   Court is bound by the Sixth Circuit -- U.S. Court of Appeals

5   for the Sixth Circuit's interpretation of Michigan law and

6   Michigan case law regarding tolling and otherwise unless

7   there has been some decision by the Michigan Supreme Court

8   that is different than what was interpreted and ruled by the

9   Sixth Circuit in Wosniak versus Henderson, which has the

10  effect of changing state law, and no party has cited any such

11  case, and I'm not aware of any such case applicable here.

12       Applying then Wosniak versus Henderson, as I must, I

13  must rule and do rule that the claim of Ms. Gowens against

14  the City of Detroit, what I mentioned earlier or referred to

15  earlier as a direct claim, is time-barred.  It's barred by

16  the statute of limitations.  The three-year statute of

17  limitations then did expire before the filing of the city's

18  bankruptcy case.  The statute of limitations was not tolled

19  from February 7, 2007, when it began to run until the city --

20  until Ms. Gowens filed her lawsuit, the federal action,

21  second lawsuit, her federal case again and complaint against

22  the city and others on February 5, 2010.  As pointed out by

23  counsel for the city, that was only two days before the

24  expiration of the three-year statute of limitations.

25       After that case was dismissed without prejudice on

1   July 9, 2013, the statute of limitations began running again

2   and expired two days later.  And then a week or so later the

3   city filed its Chapter 9 bankruptcy case, so the claim

4   against the city -- the direct claim against the city or

5   claims by Ms. Gowens are, indeed, barred by the applicable

6   statute of limitations and were so barred before the

7   bankruptcy case was ever filed.  Given that conclusion then,

8   there's no basis for the Court to consider or express an

9   opinion on the parties' arguments about Section 108(c)(2) and

10  what it means and how it might have applied in this case had

11  there been a tolling effect of the first lawsuit filed by

12  Ms. Gowens, which there wasn't.  It's not necessary to

13  discuss or reach those arguments in light of my ruling.  The

14  statute of limitations expired before the filing of the

15  bankruptcy case.  In that setting and in that situation,

16  Section 108(c) does not apply to extend the statute of

17  limitations at all.

18          I've been talking about a so-called direct claim by

19  Ms. Gowens against the city.  Ms. Gowens has also argued in

20  responding to the city's objection to claim that Ms. Gowens

21  has -- also has a claim based upon a purported right of

22  Officer Tidwell, the police officer who engaged in the

23  conduct on which Ms. Gowens' claims are based, that the city

24  has a duty to indemnify Mr. -- Officer Tidwell for the debt

25  he incurred and the judgment he suffered, which was a consent

judgment, in the amount of $300,000 for his conduct and that
that somehow gives Ms. Gowens a claim against the city based
upon Officer Tidwell's purported right to indemnity from the
city and that that is included in the city's -- in the claim,
the proof of claim that was filed by Ms. Gowens in this
bankruptcy case, Claim Number 2727. The Court must -- well,
of course, then the argument is because the claim by
Ms. Gowens includes this claim based on a claim for
indemnity, the statute of limitations with respect to that
claim does not run for ten years after -- until ten years
after the entry of the consent judgment against Officer
Tidwell on July 9, 2013, that was entered in the federal
court action.

     The Court must reject Ms. Gowens' argument and
sustain the city's objection to Claim Number 2727 as time-
barred because -- well, for the following reasons. First,
although creditors' counsel has speculated in today's
hearing -- and this is for the first time -- it's not alluded
to or mentioned in the response filed -- the written response
filed by Ms. Gowens to the objection to claim here, but in
the hearing today Ms. Gowens' counsel has suggested that
there may have been or might have been an assignment by
Officer Tidwell of any right or claim he had for indemnity
against the City of Detroit to Ms. Gowens, but counsel admits
he's not specifically aware of whether there was such an

1  assignment or wasn't and when, if ever, such an assignment

2  was given.

3       Secondly, the counsel for Ms. Gowens further is not

4  aware that Officer Tidwell -- whether Officer Tidwell ever

5  filed a timely proof of claim or even an untimely one for

6  that matter in the city's bankruptcy case based upon his --

7  any indemnity right of claim he might have had.  The deadline

8  for filing proofs of claim was -- expired in February 2014,

9  and the Court is not aware of Officer Tidwell having filed a

10 claim, but even if he did file a timely claim for such

11 indemnity in the city's case, there's no evidence or argument

12 that the creditor's counsel here can make that that claim was

13 ever assigned to Ms. Gowens by Officer Tidwell.

14      Further, absent such an assignment, at least, it's

15 clear that Ms. Gowens does not have a claim against the city

16 as opposed to against Officer Tidwell based on the fact that

17 Officer Tidwell had or has this purported claim for indemnity

18 against the city.  Absent an assignment of his claim for

19 indemnity against the city, if it exists at all, Officer

20 Tidwell is the owner of that claim and has that claim.  It is

21 not a claim against the city that belongs to Ms. Gowens.  And

22 the fact that Officer Tidwell allegedly or purportedly may

23 have had a claim for indemnity against the city arising out

24 of his liability or the judgment he suffered for his conduct

25 against Ms. Gowens does not give Ms. Gowens a claim directly

1  against the city or a claim against the city of any kind
2  based solely on that.

3              I note finally in reviewing the proof of claim that
4  was filed by Ms. Gowens through her counsel here, Claim
5  Number 2727, which was filed on February 21, 2014, there is
6  no indication or hint even anywhere in that proof of claim or
7  its addendum attached to the proof of claim that the claim
8  was based in any way upon any sort of assignment by Officer
9  Tidwell of any claim for or right of indemnity against the
10 City of Detroit as opposed to basically a direct claim by --
11 being a direct claim by Ms. Gowens against the City of
12 Detroit, which direct claim, as I've already ruled, is time-
13 barred before the bankruptcy petition was ever filed by the
14 City of Detroit.  In fact, the proof of claim quite clearly
15 suggests that it is not based upon any such claim for
16 indemnity by Officer Tidwell against the city.  The amount of
17 the claim filed is $3 million.  It's nothing close to the
18 $300,000 which was the limited amount of the consent judgment
19 entered by the federal court against Officer Tidwell and in
20 favor of Ms. Gowens.  Officer Tidwell's claim for indemnity
21 would be, at most, $300,000 plus possibly defense costs,
22 nothing anywhere near $3 million, as stated in the proof of
23 claim.  It's clear from the proof -- the first page of the
24 proof of claim which says the basis for the claim is personal
25 injury/assault rather than assignment of any claim for

1   indemnity by Officer Tidwell against the city and from the

2   materials attached as an addendum to the claim, all of which

3   have to do only with Ms. -- nothing to do with any claim for

4   indemnity by Officer Tidwell or any assignment of any claim

5   for indemnity by Officer Tidwell to Ms. Gowens -- that this

6   claim, 2727, does not include or amount to explicitly or even

7   implicitly a claim based upon any assignment by Officer

8   Tidwell to Ms. Gowens of any purported claim for indemnity.

9   And so the city, I think, correctly -- in filing its

10  objection to claim here did correctly interpret the Claim

11  Number 2727 filed by Ms. Gowens as a claim for -- a direct

12  claim against the city, not a claim based upon any sort of

13  claim based on indemnity that Officer Tidwell may have had

14  against the city, and then in objecting to this claim as

15  time-barred the city -- as the city has done, the city is

16  correct, and I agree with them.  It is barred by the statute

17  of limitations.  For that reason the claim objection by the

18  city against the claim of Ms. Gowens, Number 2727, will be

19  sustained and the claim will be disallowed.

20          So, Mr. Swanson, include the claim of Ms. Gowens in

21  the proposed order you're going to submit that we talked

22  about earlier along with the other claimants, and I will add

23  some language to the beginning of the order reciting the

24  facts about today's hearing and the response filed by

25  Ms. Gowens, today's hearing and so forth.  I'll put that in,

1   but you go ahead and submit the order as is.  I'll waive
2   presentment of the order.  I'll review it, revise it, as
3   needed, in nonsubstantive ways, I think, only and get that
4   entered.  Thank you all.
5           MR. SWANSON:  Thank you.
6           MR. DWORETSKY:  Thank you.
7           THE COURT:  All right.  That concludes our City of
8   Detroit matters that had been scheduled for 1:30.
9       (Proceedings concluded at 4:00 p.m.)

INDEX


<u>WITNESSES:</u>

    None

<u>EXHIBITS:</u>

    None


        I certify that the foregoing is a correct transcript from the sound recording of the proceedings in the above-entitled matter.


/s/ Lois Garrett             August 8, 2016

_____       _____
Lois Garrett