# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S COUNTER-DESIGNATION OF THE CONTENTS OF THE RECORD ON APPEAL OF THE ORDER DENYING CLAIMANT MICHAEL McKAY'S MOTION TO ENFORCE AGREEMENT REGARDING CLAIM OF MICHAEL McKAY [Docket No. 11289]

Pursuant to Rule 8009(a)(2) of the Federal Rules of Bankruptcy Procedure, Appellee the City of Detroit, Michigan hereby submits this counter-designation of the contents of the record on appeal (this "Counter-Designation") of the Order Denying Claimant Michael McKay's Motion to Enforce Agreement Regarding Claim of Michael McKay [Docket No. 11289].

**Counter-Designation of Items to be Included in the Record on Appeal:**

| Docket Number Case No. 13-53846 | Description |
|---|---|
| 1665 | Motion of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims Filed by Debtor In Possession City of Detroit, Michigan |
| 2211 | Prepetition Claimant's Objection to Debtor's Motion for an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims |

| | |
|---|---|
| 2302 | Order, Pursuant To Sections 105 And 502 Of The Bankruptcy Code, Approving Alternative Dispute Resolution Procedures To Promote The Liquidation Of Certain Prepetition Claims |
| 2476 | Motion Of Prepetition 42 U.S.C. Sec. 1983 Claimants, Pursuant To Section 1102(a)(2) Of The Bankruptcy Code, For Entry Of An Order Directing The Appointment Of A Committee Of Prepetition 42 U.S.C. Sec. 1983 Claimants |
| 6911 | Objection to Chapter 9 Plan Filed by Interested Party 1983 Claimants |
| 6955 | Concurrence of Deborah Ryan, Walter Swift, Cristobal Mendoza and Annica Cuppetelli, Interested Parties, Second Supplemental Brief [Dkt. #6764] in Support of the Instant Creditor's Previously Filed Objections [Dkt. #4224 and #4618] to Debtor, City of Detroit's, Plan for the Adjustment of Debts of the City of Detroit, and Certificate of Service |
| 10272 | Motion to Enforce Motion to Enforce Settlement Agreement and Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims Against Gregory Phillips and/or Dominque McCartha as Personal Representative for the Estate of Gregory Phillips, Deceased |
| 10685 | Response To City Of Detroit's Motion To Enforce Settlement Agreement And Order, Pursuant To Sections 105 And 502 Of The Bankruptcy Code, Approving Alternative Dispute Resolution Procedures To Promote The Liquidation Of Certain Prepetition Claims Against Gregory Phillips And/Or Dominique McCartha As Personal Representative For The Estate Of Gregory Phillips, Deceased |
| 10723 | Reply to (related document(s): 10685 Response filed by Creditor Domonique McCartha) Filed by Debtor In Possession City of Detroit, Michigan |
| 11348 | Transcript regarding Hearing Held 6-15-16 |

August 19, 2016

Respectfully submitted,

By: /s/ Marc N. Swanson
    Jonathan S. Green (P33140)
    Marc N. Swanson (P71149)
    Ronald A. Spinner (P73198)
    MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 963-6420
    Facsimile: (313) 496-7500
    swansonm@millercanfield.com
    ATTORNEYS FOR THE CITY OF DETROIT

## CERTIFICATE OF SERVICE

I, Marc N. Swanson, hereby certify that on August 19, 2016 the foregoing ***CITY OF DETROIT'S COUNTER-DESIGNATION OF THE CONTENTS OF THE RECORD ON APPEAL OF THE ORDER DENYING CLAIMANT MICHAEL McKAY'S MOTION TO ENFORCE AGREEMENT REGARDING CLAIM OF MICHAEL McKAY [Docket No. 11289]*** was filed and served via the Court's electronic case filing and noticing system.

By: /s/ Marc N. Swanson

# APPENDIX

# U.S. Bankruptcy Court
## Eastern District of Michigan (Detroit)
## Bankruptcy Petition #: 13–53846–tjt

*Date filed:* 07/18/2013
*Plan confirmed:* 11/12/2014

*Assigned to:* Judge Thomas J. Tucker
Chapter 9
Voluntary
No asset

**Debtor In Possession**
**City of Detroit, Michigan**
2 Woodward Avenue
Suite 1126
Detroit, MI 48226
WAYNE–MI
Tax ID / EIN: 38–6004606

represented by **Bruce Bennett**
555 S. Flower Street
50th Floor
Los Angeles, CA 90071
(213) 489–3939
Email: bbennett@jonesday.com

**Judy B. Calton**
Honigman Miller Schwartz &Cohn LLP
2290 First National Building
Detroit, MI 48226
(313) 465–7344
Fax : (313) 465–7345
Email: jcalton@honigman.com

**Eric D. Carlson**
150 West Jefferson
Suite 2500
Detroit, MI 48226
313–496–7567
Email: carlson@millercanfield.com

**Mary Beth Cobbs**
2 Woodward Avenue
Suite 500
Detroit, MI 48226
313–237–3075
Fax : 313–224–5505
Email: cobbm@detroitmi.gov

**Tamar Dolcourt**
500 Woodward Ave.
Suite 2700
Detroit, MI 48226
313–234–7161
Email: tdolcourt@foley.com

**Timothy A. Fusco**
150 West Jefferson
Suite 2500
Detroit, MI 48226–4415
(313) 496–8435
Email: fusco@millercanfield.com

**Eric B. Gaabo**

1650 Frist National Building
Detroit, MI 48226
(313) 237–3052
Email: gaabe@detroitmi.gov

**Jonathan S. Green**
150 W. Jefferson
Ste. 2500
Detroit, MI 48226
(313) 963–6420
Email: green@millercanfield.com

**David Gilbert Heiman**
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586–7175
Email: dgheiman@jonesday.com

**Robert S. Hertzberg**
4000 Town Center
Suite 1800
Southfield, MI 48075–1505
248–359–7300
Fax : 248–359–7700
Email: hertzbergr@pepperlaw.com

**Jeffrey S. Kopp**
Foley &Lardner LLP
500 Woodward Avenue
Suite 2700
Detroit, MI 48226
(313) 234–7100
Fax : (313) 234–2800
Email: jkopp@foley.com

**Deborah Kovsky–Apap**
Pepper Hamilton LLP
4000 Town Center
Suite 1800
Southfield, MI 48075
(248) 359–7300
Fax : (248) 359–7700
Email: kovskyd@pepperlaw.com

**Kay Standridge Kress**
4000 Town Center
Southfield, MI 48075–1505
(248) 359–7300
Fax : (248) 359–7700
Email: kressk@pepperlaw.com

**Stephen S. LaPlante**
150 W. Jefferson Ave.
Suite 2500
Detroit, MI 48226
(313) 496–8478
Email: laplante@millercanfield.com

**Heather Lennox**
222 East 41st Street
New York, NY 10017
212–326–3939
Email: hlennox@jonesday.com

**Scott Eric Ratner**
One Penn Plaza
Suite 3335
New York, NY 10119
212–594–5000
Email: dperson@teamtogut.com

**John A. Simon**
500 Woodward Avenue
Suite 2700
Detroit, MI 48226
(313) 234–7100
Email: jsimon@foley.com

**Ronald A. Spinner**
150 West Jefferson
Suite 2500
Detroit, MI 48226
(313) 496–7829
Email: spinner@millercanfield.com

**Marc N. Swanson**
Miller Canfield Paddock and Stone, P.L.C
150 W. Jefferson
Suite 2500
Detroit, MI 48226
(313) 496–7591
Email: swansonm@millercanfield.com

**Albert Togut**
One Penn Plaza
Suite 3335
New York, NY 10119
212–594–5000
Email: dperson@teamtogut.com

**Stanley L. de Jongh**
Two Woodward Ave., 5th Floor
Suite 500
Detroit, MI 48226
313–237–5031
Fax : 313–224–5505
Email: jongsl@detroitmi.gov

*U.S. Trustee*
**Daniel M. McDermott**

represented by

**Sean M. Cowley (UST)**
United States Trustee
211 West Fort Street
Suite 700
Detroit, MI 48226
(313) 226–3432
Email: Sean.cowley@usdoj.gov

**Richard A. Roble (UST)**
United States Trustee
211 West Fort Street
Suite 700
Detroit, MI 48226
(313) 226–6769
Email: Richard.A.Roble@usdoj.gov

represented by

*Creditor Committee*
**Committee of Unsecured Creditors**
*TERMINATED: 03/03/2014*

**Brett Howard Miller**
1290 Avenue of the Americas
40th Floor
New York, NY 10104
(212) 468–8051
Email: bmiller@mofo.com,whildbold@mofo.com
*TERMINATED: 03/03/2014*

**Geoffrey T. Pavlic**
25925 Telegraph Rd.
Suite 203
Southfield, MI 48033–2518
(248) 352–4700
Fax : (248) 352–4488
Email: pavlic@steinbergshapiro.com
*SELF– TERMINATED: 11/19/2014*

**Mark H. Shapiro**
25925 Telegraph Rd.
Suite 203
Southfield, MI 48033–2518
(248) 352–4700
Fax : (248) 352–4488
Email: shapiro@steinbergshapiro.com
*TERMINATED: 03/03/2014*

*Creditor Committee*
**Charlene Hearn**
PO Box 6612
Detroit, MI 48206

*Creditor Committee*
**Craig Steele**

*Retiree Committee*
**Official Committee of Retirees**

represented by **Sam J. Alberts**
1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005–3364
(202) 408–7004
Email: sam.alberts@dentons.com
*SELF– TERMINATED: 03/13/2015*

**Paula A. Hall**
401 S. Old Woodward Ave.
Suite 400
Birmingham, MI 48009
(248) 971–1800
Email: hall@bwst–law.com

**Claude D. Montgomery**
620 Fifth Avenue
New York, NY 10020
(212) 632–8390
Email: claude.montgomery@dentons.com,docketny@dentons.com

**Carole Neville**
1221 Avenue of the Americas
25th Floor
New York, NY 10020
(212) 768–6889
Email: carole.neville@dentons.com,daniel.morris@dentons.com

**Matthew Wilkins**
401 S. Old Woodward Ave.
Suite 400
Birmingham, MI 48009
(248) 971–1800
Email: wilkins@bwst–law.com

| Filing Date | | # | Docket Text |
|---|---|---|---|
| 11/12/2013 | | <u>1665</u> | Motion *of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims* Filed by Debtor In Possession City of Detroit, Michigan (Lennox, Heather) (Entered: 11/12/2013) |
| 12/16/2013 | | <u>2211</u> | Prepetition Claimant's Objection to Debtor's Motion for an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims (related document(s): <u>1665</u> Motion *of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims*) Filed by Trevor J. Zamborsky for Creditors Bradley Schick, Kevin McGillivary, Daniel Soto, Darnell Fields, Kevin Ivie, Woodrow Roberson, Daniel Latanzio, Ray Lizzamore, Jermaine Gleen, Antonio Brooks, Teran Brown, Samiya Speed, Winter Owens, Donald Harris, Jamie Jackson, Angela Davis, Theresa Chalch, Victoria Wilson, Robert Hall, Marily Cloyd , Nicholas Martin, Darchella Lattner, Landon Banks, Viena Lowe, Yvette Spencer, Taesean Parnell, Jay Woods, Kevin Mcdonald, Hondra Porter, Curtis Morris, Robert Mcgowen, Eddie Moore, Bernard White, Jeffrey Theriot, Angela Davis, Mario Littlejohn, Gary Musser, Wendy Jefferson, Otis Evans, Jeremiah Duren, Shelton Bell Jr., Anthony Harmon, Jerry Ashley , Floyd Brunson, Shumithia Baker, Doug Taylor, Raymond Thompson Jr., David Both, Michael McKay, Ezekiel Davis, Clementine Stephens, Jeffrey Peterson, Carolyn Harp, Terry Hardison, John Collins, Orlando Marion, Rhonda Craig Kevin McGillivary, James Matson, Laverne Covington, Joseph Wright, Tarita Wilburn, Donna Weatherspoon, Taralyn Smith, Sharon Pettway, Quentin King, Brady Johnson, Brandon Gilbert, Lucy Flowers, Raymond Thompson, Velma Denson, Terry Hardison, Melvin Miller, Henry Hassan, Jennifer Harris–Barnes, Gregory Brazell, Clenette Harris, Rodney Heard, Phyllis Tharpe, Brandon Brooks, Leinathian Jelks, Eric Kimbrough (jjm) (Entered: 12/18/2013) |
| 12/24/2013 | | <u>2302</u> | Order, Pursuant To Sections 105 And 502 Of The Bankruptcy Code, Approving Alternative Dispute Resolution Procedures To Promote The Liquidation Of Certain Prepetition Claims (Related Docs. #<u>2297</u> Stipulation By and Between The City of Detroit and the Public Safety Unions Re: an Order Resolving Motion of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims / Amended Stipulation (Related Docket Nos. 1665 &2272). Filed by Debtor In Possession City of Detroit, Michigan. and <u>1665</u> Motion of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims Filed by Debtor In Possession City of Detroit, Michigan ). (ckata) (Entered: |

| | | | |
|---|---|---|---|
| | | | 12/24/2013) |
| 01/14/2014 | | 2476 | Motion Of Prepetition 42 U.S.C. Sec. 1983 Claimants, Pursuant To Section 1102(a)(2) Of The Bankruptcy Code, For Entry Of An Order Directing The Appointment Of A Committee Of Prepetition 42 U.S.C. Sec. 1983 Claimants, Filed by Attorney Trevor J. Zamborsky for Interested Party 1983 Claimants. (ckata) (Entered: 01/15/2014) |
| 08/21/2014 | | 6911 | Objection to Chapter 9 Plan Filed by Interested Party 1983 Claimants (RE: related document(s)6379 Amended Chapter 9 Plan). (Zamborsky, Trevor) (Entered: 08/21/2014) |
| 08/22/2014 | | 6955 | Concurrence *of Deborah Ryan, Walter Swift, Cristobal Mendoza and Annica Cuppetelli, Interested Parties, Second Supplemental Brief [Dkt. #6764] in Support of the Instant Creditor's Previously Filed Objections [Dkt. #4224 and #4618] to Debtor, City of Detroit's, Plan for the ADjustment of Debts of the City of Detroit, and Certificate of Service* Filed by Interested Party 1983 Claimants. (Zamborsky, Trevor) (Entered: 08/22/2014) |
| 11/20/2015 | | 10272 | Motion to Enforce *Motion to Enforce Settlement Agreement and Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims Against Gregory Phillips and/or Dominque McCartha as Personal Representative for the Estate of Gregory Phillips, Deceased* Filed by Debtor In Possession City of Detroit, Michigan (Swanson, Marc) (Entered: 11/20/2015) |
| 12/04/2015 | | 10685 | Response To City Of Detroit's Motion To Enforce Settlement Agreement And Order, Pursuant To Sections 105 And 502 Of The Bankruptcy Code, Approving Alternative Dispute Resolution Procedures To Promote The Liquidation Of Certain Prepetition Claims Against Gregory Phillips And/Or Dominique McCartha As Personal Representative For The Estate Of Gregory Phillips, Deceased [D/E #10272] (related document(s): 10272 Motion to Enforce *Motion to Enforce Settlement Agreement and Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims Against Gregor)* Filed by Creditor Domonique McCartha (ckata) *(Entered: 12/04/2015)* |
| 01/08/2016 | | 10723 | Reply to (related document(s): 10685 Response filed by Creditor Domonique McCartha) Filed by Debtor In Possession City of Detroit, Michigan (Swanson, Marc) (Entered: 01/08/2016) |
| 07/05/2016 | | 11348 | Transcript regarding Hearing Held 6–15–16 RE: IN RE: FORTY–FOURTH OMNIBUS OBJECTION TO CERTAIN CLAIMS, FORTY–FIFTH OMNIBUS OBJECTION TO CERTAIN CLAIM, MOTION TO ENFORCE MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND BAR DATE ORDER AGAINST RODRICK SINER FILED BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN, MICHAEL MCKAY'S MOTION TO ENFORCE AGREEMENT RESOLVING CLAIM OF MICHAEL MCKAY, TWENTY–THIRD OMNIBUS OBJECTION TO CERTAIN CLAIMS(PENSION CLAIMS THAT HAVE BEEN |

6

| | | | CLASSIFIED AND ALLOWED BY THE CITY'S PLAN), TWENTY–FIFTH OMNIBUS OBJECTION TO CERTAIN CLAIMS (PENSION CLAIMS THAT HAVE BEEN CLASSIFIED AND ALLOWED BY THE CITY'S PLAN), TWENTIETH OMNIBUS OBJECTION TO CERTAIN CLAIMS (FAILURE TO SPECIFY ASSERTED CLAIM AMOUNT AND INSUFFICIENT DOCUMENTATION), TWENTY–EIGHTH OMNIBUS OBJECTION TO CERTAIN CLAIMS (INSUFFICIENT DOCUMENTATION), TWENTY–NINTH OMNIBUS OBJECTION TO CERTAIN CLAIMS (INSUFFICIENT DOCUMENTATION), THIRTIETH OMNIBUS OBJECTION TO CERTAIN CLAIMS (INSUFFICIENT DOCUMENTATION), THIRTY–FIRST OMNIBUS OBJECTION TO CERTAIN CLAIMS (INSUFFICIENT DOCUMENTATION), THIRTY–SECOND OMNIBUS OBJECTION TO CERTAIN CLAIMS (INSUFFICIENT DOCUMENTATION), THIRTY–THIRD OMNIBUS OBJECTION TO CERTAIN CLAIMS (INSUFFICIENT DOCUMENTATION), THIRTY–FOURTH OMNIBUS OBJECTION TO CERTAIN CLAIMS (INSUFFICIENT DOCUMENTATION), THIRTY–SIXTH OMNIBUS OBJECTION TO CERTAIN CLAIMS (INSUFFICIENT DOCUMENTATION), THIRTY–SEVENTH OMNIBUS OBJECTION TO CERTAIN CLAIMS (INSUFFICIENT DOCUMENTATION). THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 91 DAYS AFTER THE DATE OF FILING, TRANSCRIPT RELEASE DATE IS 10/4/2016. Until that time, the transcript may be viewed at the Clerk's Office by parties who do not receive electronic notice and participated in the proceeding. A copy of the transcript may be purchased from the official court transcriber Deborah Kremlick at 810.635.7084. (RE: related document(s) 11285 Transcript Request). Redaction Request Due By 07/26/2016. Redacted Transcript Submission Due By 08/2/2016. Transcript access will be restricted through 10/4/2016. (Kremlick, Deborah) (Entered: 07/05/2016) |
|---|---|---|---|

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

-------------------------------------------------------x
                    :

In re                        :          Chapter 9
                    :

CITY OF DETROIT, MICHIGAN,    :          Case No. 13-53846
                    :

               Debtor.    :          Hon. Steven W. Rhodes
                    :
                    :
-------------------------------------------------------x

## MOTION OF DEBTOR, PURSUANT TO SECTIONS 105 AND 502 OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER APPROVING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES TO PROMOTE THE LIQUIDATION OF CERTAIN PREPETITION CLAIMS

The City of Detroit (the "City") hereby moves the Court, pursuant to

sections 105 and 502 of title 11 of the United States Code (the "Bankruptcy Code")

for the entry of an order[1] approving alternative dispute resolution procedures to

promote the resolution of certain prepetition claims.  In support of this Motion, the

City respectfully represents as follows:

---

[1]    This Motion includes certain attachments that are labeled in accordance with
Rule 9014-1(b)(1) of the Local Rules of the Bankruptcy Court for the
Eastern District of Michigan (the "Local Rules").  Consistent with Local
Rule 9014-1(b), a copy of the proposed form of order granting this Motion is
attached hereto as Exhibit 1.  A summary identifying each included
attachment by exhibit number is appended to this Motion.

## General Background

1.      On July 18, 2013 (the "Petition Date"), the City filed a petition for relief in this Court, thereby commencing the largest chapter 9 case in history.

2.      Incorporated in 1806, Detroit is the largest city in Michigan. As of December 2012, the City had a population of less than 685,000 (down from a peak population of nearly 2 million in 1950).  Over the past several decades, the City has experienced significant economic challenges that have negatively impacted employment, business conditions and quality of life.

3.      As of June 30, 2013 — the end of the City's 2013 fiscal year — the City's liabilities exceeded $18 billion (including, among other things, general obligation and special revenue bonds, unfunded actuarially accrued pension and other postemployment benefit liabilities, pension obligation certificate liabilities and related derivative liabilities).  As of June 30, 2013, the City's accumulated unrestricted general fund deficit was approximately $237 million.

4.      In February 2013, a state review team determined that a local government financial emergency exists in the City.  Thereafter, in March 2013, Kevyn D. Orr was appointed, and now serves as, emergency manager with respect to the City (in such capacity, the "Emergency Manager") under Public Act 436 of 2012, the Local Financial Stability and Choice Act, MCL § 141.1541, *et seq.*

("PA 436").  Under Section 18(1) of PA 436, the Emergency Manager acts

exclusively on behalf of the City in this chapter 9 case.  MCL § 141.1558.

## The List of Claims and the Bar Date Motion

5.     On the Petition Date, the City filed its List of Creditors

Pursuant to Section 924 of the Bankruptcy Code and Bankruptcy Rule 1007

(Docket No. 16) (the "Original List of Creditors").

6.     On August 1, 2013, the City filed its Amended List of Creditors

Pursuant to Section 924 of the Bankruptcy Code and Bankruptcy Rule 1007

(Docket No. 258) (the "Amended List of Creditors"), which replaced the Original

List of Creditors and redacted certain personal information therein.

7.     On September 30, 2013, the City filed its Second Amended List

of Creditors and Claims, Pursuant to Sections 924 and 925 of the Bankruptcy Code

(Docket No. 1059), which supplemented and amended the information in the

Amended List of Creditors and also constitutes the City's list of claims under

section 925 of the Bankruptcy Code (as amended or supplemented from time to

time, the "List of Claims").

8.     On October 10, 2013, the City filed the Motion of Debtor,

Pursuant to Sections 105, 501 and 503 of the Bankruptcy Code and Bankruptcy

Rules 2002 and 3003(c), for Entry of an Order Establishing Bar Dates for Filing

Proofs of Claim and Approving Form and Manner of Notice Thereof (Docket

13-53846-tjt  Doc 11466   Filed 09/19/16   Entered 09/19/16 14:25:18   Page 14 of 263
13-53846-tjt  Doc 1585   Filed 11/12/13   Entered 11/12/13 14:30:45   Page 3 of 25

-3-

10

No. 1146) (the "Bar Date Motion"), in which the City requested that the Court

establish a general bar date for creditors to file proofs of claim asserting prepetition

liabilities against the City (the "General Bar Date").  The Court has scheduled a

hearing on the Bar Date Motion to be held on November 14, 2013 (Docket

No. 1335).

## Jurisdiction

9.    The Court has jurisdiction over this matter pursuant to

28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2).  Venue for this matter is proper in this district pursuant to 28 U.S.C.

§§ 1408 and 1409.

## Relief Requested

10.    On October 8, 2013, the Court entered an order (Docket

No. 1114) (the "Ryan Order") denying a tort claimant's request for relief from the

automatic stay of sections 362 and 922 of the Bankruptcy Code, subject to the

City's filing, on or before November 12, 2013, "a motion for approval of an

efficient process for liquidating all of the tort claims or a motion for extension of

time to file such a motion."  Ryan Order, at 1.

11.     Consistent with the Court's comments in the Ryan Order,[2] the
City hereby seeks the entry of an order, pursuant to sections 105 and 502 of the
Bankruptcy Code, approving a set of mandatory alternative dispute resolution
procedures (collectively, the "ADR Procedures") to promote the efficient
liquidation of tort claims and other Designated Claims (as defined below).

### The ADR Procedures

12.     The City has developed the ADR Procedures in consultation
with the Wayne County Mediation Tribunal Association (the "MTA").  The MTA
is an independent nonprofit organization created in 1979 by the Third Judicial
Circuit Court of Michigan to provide a pool of mediators and to administer
procedures for the out-of-court resolution of certain cases brought in the Circuit
Court.  Since that time, the MTA's role has expanded to include varied alternative
dispute resolution services including, as applicable herein, case evaluation ("Case
Evaluation") and arbitration services.

13.     The MTA's leading role in providing Case Evaluation services
in the Detroit area is recognized by Local Rule 16.3 of the United States District
Court for the Eastern District of Michigan, which also incorporates Rule 2.403 of
the Michigan Court Rules of 1985 ("MCR") setting forth various procedures for
Case Evaluation.  In addition, where Case Evaluation alone is unsuccessful in

---

[2]     The proposed ADR Procedures also carry out the intent of the guidelines for
mediation promulgated by this Court in Local Rule 7016-2.

resolving a claim, the MTA has substantial experience facilitating and coordinating binding arbitration proceedings.

14.     The ADR Procedures are designed to promote the resolution of each Designated Claim without full-blown litigation, while safeguarding the procedural rights of the Designated Claimants (as defined below) and the City. The ADR Procedures provide a structure that will:  (a) first promote direct settlement discussions and exchange of information between the parties; and (b) absent a settlement by direct discussions of the parties, promote liquidation of the Designated Claims through Case Evaluation and, with the agreement of the parties, binding arbitration.  The City proposes to implement the ADR Procedures on the terms contained on Exhibit 6 attached hereto and incorporated herein by reference.  A summary of the primary terms of the ADR Procedures follows:[3]

15.     Claims Subject to the ADR Procedures.  The City and its professionals have engaged in an extensive review and analysis of the City's actual and alleged liabilities in connection with the production of the List of Claims.

---

[3]     The description of the ADR Procedures contained herein is intended to be a summary for the convenience of the Court and parties in interest and is not intended to modify any of the ADR Procedures set forth more fully in Exhibit 6 hereto.  As such, the summary of the ADR Procedures in this Motion is qualified in all respects by the more detailed terms of the ADR Procedures.  In the event of any conflict between the text of this Motion and the ADR Procedures, the ADR Procedures shall govern.  All capitalized terms used but not defined in the Motion have the meanings given to such terms in the ADR Procedures.

13-53846-tjt   Doc 1465   Filed 09/19/13   Entered 09/19/13 12:25:14   Page 17 of 263
13-53846-tjt   Doc 1465   Filed 09/19/13   Entered 09/19/13 12:25:14   Page 17 of 263

13

The City anticipates that it will receive literally thousands of proofs of claim asserting liabilities that the City disputes, including hundreds of disputed tort claims.[4]  In addition, multiple motions to lift the automatic stay of sections 362 and 922 of the Bankruptcy Code (collectively, the "Lift Stay Motions") already have been filed in this case, which continue to burden the City and this Court.[5]  Many of these Lift Stay Motions relate to tort claims and other claims asserted against the City.  The City developed the ADR Procedures to promote the efficient liquidation of Designated Claims.[6]

16.    One of the goals of the City's review has been to determine the most efficient and appropriate manner of liquidating disputed claims.  Through these efforts, the City intends to identify certain disputed claims (collectively,

---

[4]    As of the date hereof, only approximately 118 claims have been filed against the City.  However, it is anticipated that the notice of the General Bar Date will be sent to over 120,000 potential creditors, many of which will file proofs of claims.  In addition, Schedule H to the List of Claims identifies over 1,800 parties who may hold disputed tort and other litigation claims.

[5]    See, e.g., Docket Nos. 183, 268, 308, 312, 742, 755, 800, 828, 1035, 1057, 1103, 1122, 1137, 1155, 1266, 1307, 1314, 1336, 1488.  A number of Lift Stay Motions have involved requests for nonmonetary relief from the City, including, for example, quiet-title actions and requests that the City allow proceedings to continue to strip junior City liens from property with no equity to satisfy such liens.  The City has been developing a mechanism to preemptively address and resolve such requests for nonmonetary relief to minimize the need for court involvement.

[6]    Even where the City has designed certain claims already as candidates for the ADR Procedures, the City in its sole discretion may pursue the litigation of any particular claim outside of the ADR Procedures where it deems it more appropriate.

the "Designated Claims") that it believes could be liquidated more efficiently, cost effectively and/or expeditiously through an alternative dispute resolution process, rather than by traditional litigation. The City may designate for liquidation pursuant to the ADR Procedures any proof of claim timely asserted in these cases by serving a notice (an "ADR Notice") on the applicable claimant. The Designated Claims will not include, however, claims solely asserting workers' compensation liabilities against the City, which claims the City continues to resolve in the ordinary course pursuant to its usual workers' compensation procedures.

17.     The City already has determined that certain types of claims (collectively, the "Initial Designated Claims") are appropriate for liquidation through the ADR Procedures and should be considered to be Designated Claims even in advance of the City serving an ADR Notice on the applicable claimant. The Initial Designated Claims consist of any and all timely filed prepetition: (a) personal injury tort or wrongful death claims; (b) property damage claims; or (c) claims relating to the operation of motor vehicles for which the City is self-insured pursuant to chapter 31 of Michigan's Insurance Code of 1956, M.C.L. §§ 500.3101, et seq. Notably, many of the Initial Designated Claims are personal injury tort or wrongful death claims that this Court lacks jurisdiction to liquidate pursuant to 28 U.S.C. § 157(b)(5).

18.     The proposed ADR Procedures are comprised of up to three stages:  (a) offer exchange; (b) case evaluation; and (c) binding arbitration, if agreed to by the parties.  The City and the holder of a Designated Claim (the "<u>Designated Claimant</u>") may settle a Designated Claim and terminate the ADR Procedures at any time.  If the parties do not resolve the Designated Claim through the ADR Procedures, and if they have not agreed to binding arbitration of the Designated Claim, then, upon completion of the offer exchange and case evaluation stages of the ADR Procedures, the Designated Claim will proceed to litigation in an appropriate forum.

19.     Given the potentially large number of Designated Claims and the limited staff in the City Law Department,[7] immediately initiating the ADR Procedures with respect to all Designated Claims or Initial Designated Claims on the same day and on the same schedule would not be feasible.  The City, therefore, has built a degree of flexibility into the ADR Procedures to allow it to implement the ADR Procedures as promptly as practicable, but in a manner that does not overwhelm the City Law Department or the MTA.  Accordingly, at each stage of the ADR Procedures, the City intends to prioritize the selection of Designated Claims based upon (a) the difference between any prior settlement offers made by the City and the Designated Claimant, (b) the nature and complexity of the

---

[7]     It is anticipated that the City Law Department will be the primary group responsible for implementing the ADR Procedures for the City.

Designated Claim, (c) the status of any underlying lawsuit, (d) whether the Designated Claimant previously actively participated in settlement discussions or (e) any other considerations that the City deems relevant or appropriate in its sole discretion

20.     The Initial Injunction and the ADR Injunction.  At the outset of this process, the City requires sufficient time to initiate the ADR Procedures in a rational manner (with respect to the Initial Designated Claims, in particular) without repeated interruptions in the form of Lift Stay Motions that may be filed by certain Designated Claimants.

21.     The ADR Procedures, therefore, contemplate that, for the period commencing on the date of entry of an order approving the relief requested herein (the "ADR Order") until the date that is 119 days after the General Bar Date (the "Initial Designation Period"), any Designated Claimant holding an Initial Designated Claim (and any other person or entity asserting an interest in such claim) will be enjoined (the "Initial Injunction") from filing or prosecuting, with respect to such Initial Designated Claim, any motion (a "Stay Motion") for relief from  either (a) the automatic stay of sections 362 and 922 of the Bankruptcy Code, as modified and extended from time to time by orders of the Court (the "Stay"), or (b) any similar injunction (a "Plan Injunction") that may be imposed upon the confirmation or effectiveness of a plan of adjustment of debts in this case

(a "Chapter 9 Plan").  The Initial Injunction is separate and distinct from the ADR Injunction, as described and defined below.  Any Designated Claimant that is subject to the Initial Injunction shall instead become subject to the ADR Injunction upon service of an ADR Notice with respect to the underlying Designated Claim, whether that occurs during or after the Initial Designation Period.

22.     The City in its sole discretion (a) may elect not to send an ADR Notice to the holder of an Initial Designated Claim and (b) instead file and serve on the applicable Designated Claimant a notice that the Stay is lifted to permit the underlying claim to be liquidated in an appropriate non-bankruptcy forum.

23.     Upon service of an ADR Notice on any Designated Claimant, such Designated Claimant (and any other person or entity asserting an interest in the relevant Designated Claim) shall be enjoined (the "ADR Injunction") from filing or prosecuting any Stay Motion or otherwise seeking to establish, liquidate, collect on or enforce the Designated Claim(s) identified in the ADR Notice other than by liquidating the claim through the ADR Procedures.  The ADR Injunction shall expire with respect to a Designated Claim only when the ADR Procedures have been completed as to that Designated Claim.

24.     The Initial Injunction and the ADR Injunction shall be in addition to the Stay and any Plan Injunction.  Except as expressly set forth in the ADR Procedures or in a separate order of the Court, the expiration of the Initial

Injunction or the ADR Injunction shall not extinguish, limit or modify the Stay or any Plan Injunction, and the Stay and any Plan Injunction shall remain in place to the extent then in effect, except as otherwise provided in the ADR Procedures.

　　　　25.　　Offer Exchange Procedures.　The first stage of the ADR Procedures will require the parties to exchange settlement offers (the "Offer Exchange Procedures"), thereby providing an opportunity to liquidate the underlying Designated Claim on a consensual basis without the need for further proceedings.　At any time following the entry of the ADR Order and the filing of a proof of claim,[8] the City may designate a claim for liquidation through the ADR Procedures by serving an ADR Notice, the ADR Order and the ADR Procedures on the Designated Claimant.[9]　The ADR Notice will serve as (a) notice that a claim has been designated by the City as a Designated Claim (if not already designated under the ADR Procedures as an Initial Designated Claim) and (b) notice that the Designated Claim has been submitted to the ADR Procedures. The ADR Notice will include an offer by the City to settle the Designated Claim (the "Settlement Offer") and may inform the Designated Claimant whether the City does or does not consent to binding arbitration of the Designated Claim if it is not

---

[8]　　The ADR Procedures will not be initiated with respect to a claim unless and until a timely proof of claim is filed.

[9]　　For transferred claims, the City also will serve a copy of the ADR Materials on the transferee identified in the notice of transfer of claim that has been filed with the Court.

settled through the Offer Exchange Procedures or subsequent Case Evaluation Procedures.

26.     The Designated Claimant is required to deliver a response (any such response, a "Permitted Response") to the City by no later than 28 days following the service of the ADR Notice. The Permitted Response must indicate the Designated Claimant's (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (a "Counteroffer"). Any Counteroffer may only propose an amount that, if agreed upon, will liquidate the Designated Claim, subject to treatment under a confirmed Chapter 9 Plan. The Counteroffer may not exceed the amount or improve the priority set forth in the Designated Claimant's most recent timely filed proof of claim or amended proof of claim (but may liquidate any unliquidated amounts expressly referenced in a proof of claim). The Designated Claimant also must indicate in its Permitted Response whether or not it consents to binding arbitration of the Designated Claim in the event the Designated Claim is not liquidated through the Offer Exchange Procedures or Case Evaluation.[10] If the Designated Claimant fails to provide a Permitted Response within the time period allowed, then the Designated Claim will advance automatically to Case Evaluation, as set forth below.

---

[10]     Any attempt to refuse binding arbitration in response to the ADR Notice will be ineffective, however, if the Designated Claimant previously consented in writing — either before or after the Petition Date — to binding arbitration as a means to resolve its claim(s).

27.     The City may, within 14 days of its receipt of a Counteroffer accept or reject the Counteroffer or request further information in support of the Designated Claim or Counteroffer, subject to the time limitations set forth in Section II.A.5(d) of the ADR Procedures.  The City and the Designated Claimant may thereafter continue to exchange revised Settlement Offers and Counteroffers for a period of up to 21 days, on which date the Offer Exchange Procedures shall be deemed to conclude and terminate.  If the Designated Claim has not been resolved through this process, the liquidation of the Designated Claim will proceed to Case Evaluation, subject to the City and the Designated Claimant's ongoing right to settle the Designated Claim by mutual consent at any time.  Any date that the Offer Exchange Procedures conclude without a resolution is referred to herein as the "Offer Exchange Termination Date."

28.     Case Evaluation.  The next step of the ADR Procedures is Case Evaluation before the MTA under the procedures set forth in MCR §§ 2.403 and 2.404, as modified by the ADR Procedures.[11]  As soon as reasonably practicable following the Offer Exchange Termination Date, the City will serve upon the applicable Designated Claimant and the Clerk of the MTA (the "ADR Clerk"), a

---

[11]     For example, MCR §§ 2.403(A-C) (relating to the assignment of cases to Case Evaluation) and 2.403(N-O) (relating to the posting of bonds for frivolous claims and defenses and the awarding of costs against a party that rejects a Case Evaluation and subsequently fails to achieve a superior result at trial) are expressly made inapplicable to the Case Evaluation proceedings.

notice that the Designated Claim has been referred for Case Evaluation.[12] Additional parties may intervene in the Case Evaluation solely by agreement of the City and the applicable Designated Claimant.

29. The fees and costs for each Case Evaluation proceeding are $75.00 payable to the ADR Clerk by each party, except that, where one claim is derivative of another, the claims will be treated as a single claim with one fee to be paid and a single valuation of the claims to be made. If for any reason, however, the fees for any Case Evaluation proceeding exceed $75.00 per party, such fees will be borne equally by the parties.

30. As described in greater detail in the ADR Procedures, the purpose of Case Evaluation is to obtain a nonbinding, confidential, monetary valuation of the applicable Designated Claim that serves as a focal point for ongoing settlement negotiations between the parties. To this end, with respect to each Designated Claim that is not liquidated consensually pursuant to the Offer Exchange Procedures, the ADR Clerk will select a panel of three case evaluators (the "Case Evaluation Panel") and provide the members of the Case Evaluation

---

[12] In prioritizing among Designated Claims to refer to Case Evaluation, the City may consider, along with any other factors that the City deems relevant or appropriate in its sole discretion, (a) the difference between the final offers made by the City and the Designated Claimant during the Offer Exchange Procedures, (b) the nature and complexity of the Designated Claim, (c) the status of any underlying lawsuit or (d) whether the Designated Claimant returned the ADR Notice and its level of participation in the ADR Procedures.

Panel and the parties to the Case Evaluation with at least 42 days' notice of a short

hearing before the Case Evaluation Panel on the legal and factual bases for the

Designated Claim (the "Case Evaluation Hearing").

31.     At least 14 days prior to the scheduled date of the Case

Evaluation Hearing, the parties will serve a short case summary and supporting

documents on each other and the ADR Clerk, for delivery to the members of the

Case Evaluation Panel.  Oral presentation at the Case Evaluation Hearing generally

is limited to 15 minutes per side with the parties relying on documentary evidence

as opposed to live testimony, and statements by the attorneys are not admissible in

any court or evidentiary proceeding.

32.     Within 14 days following the Case Evaluation Hearing,

the Case Evaluation Panel will issue its valuation of the Designated Claim

(the "Evaluation").  Within 28 days following the issuance of the Evaluation, each

party to the Case Evaluation proceeding files an acceptance or rejection of the

Evaluation.  If all parties accept the Evaluation with respect to all claims between

them, then a settlement shall be documented and made of record.  If any party

rejects the Evaluation, then the parties shall have a further 28 days to attempt to

negotiate a consensual settlement of the Designated Claim.  If no settlement is

reached by the end of that period (the "Case Evaluation Termination Date"), then

the Designated Claim shall proceed to binding arbitration, if applicable.

33.    <u>Binding Arbitration</u>.  Where the parties all have agreed to binding arbitration, the City shall serve a notice of arbitration on the ADR Clerk, the Designated Claimant and any other entities that were parties to the Case Evaluation as soon as reasonably practicable following the Case Evaluation Termination Date with respect to any Designated Claim.  Additional parties may intervene in the arbitration proceeding solely by agreement of the City and the other parties.  If the parties have not mutually agreed to binding arbitration, then the Designated Claim shall advance in accordance with the procedures for Unresolved Designated Claims set forth below.

34.    The arbitration of any Designated Claims shall be conducted by a single arbitrator selected by the ADR Clerk and shall be governed by the commercial arbitration rules of the American Arbitration Association (the "<u>AAA</u>"), as amended and effective on October 1, 2013, unless the parties agree otherwise (the "<u>Arbitration Rules</u>"), except where the Arbitration Rules are expressly modified by the terms of the ADR Procedures.  The fees and costs charged by the arbitrator and the MTA will be shared equally among the parties.

35.    The ADR Clerk shall select the arbitrator, subject to the parties' rights to request that the Court replace the arbitrator upon a showing of a reasonable inference of bias, and shall provide notice to the parties of his or her appointment.  All arbitration hearings (the "<u>Arbitration Hearings</u>") shall be

scheduled by the arbitrator, in consultation with the parties, and shall be conducted in Detroit, Michigan.  The arbitrator shall provide written notice to the parties of the date, time and place of the Arbitration Hearings within 14 days following his or her appointment.  All fees and costs for arbitration proceedings will be shared equally between the parties (unless otherwise previously agreed) and shall be payable to the MTA.

36.     Each of the parties shall be entitled to engage in limited discovery, as set forth in the ADR Procedures, and shall submit to the arbitrator and serve on the other parties a short pre-arbitration statement by no later than 14 days prior to the first date scheduled for the applicable Arbitration Hearing, which must be held no later than 112 days after the date of appointment of the arbitrator.

37.     Any Arbitration Award shall only liquidate the applicable Designated Claim and shall not raise or purport to determine any issues relating to the potential treatment or priority of the Designated Claim in this chapter 9 case. The ADR Procedures further provide that the Arbitration Award generally may not provide the Designated Claimant with punitive damages, interest, attorneys' fees, other fees and costs, penalties, any amounts already disallowed by the Court, specific performance or other form of equitable remedy or any other relief impermissible under applicable bankruptcy and nonbankruptcy law.  The entry of

an Arbitration Award shall not grant the Designated Claimant any enforcement rights except as permitted under a Chapter 9 Plan, and the Stay and any Plan Injunction shall apply to the Arbitration Award. Any aspect of an Arbitration Award that violates the foregoing rules and limitations shall be void without further action of any court.

38.     Any Arbitration Award shall be final and binding. No party shall have the right to request vacation of an Arbitration Award except to the extent that it violates (a) the ADR Procedures, (b) the Bankruptcy Code or (c) the Federal Arbitration Act.

39.     <u>Approval and Satisfaction of any Settlement or Award</u>. A Designated Claimant holding a claim with respect to which settlement has been reached through the ADR Procedures will receive an allowed general unsecured nonpriority claim against the City that will be treated in accordance with the Chapter 9 Plan in the City's bankruptcy case *and not* a full cash payment of the settlement amount of the Designated Claim. Notwithstanding the foregoing, any disputes about the priority of a Designated Claim may be raised with and determined by the Court after the conclusion of the ADR Procedures.

40.     The ADR Procedures do not limit, expand or otherwise modify the City's authority to settle claims or the City's authority over its property and revenues under section 904 of the Bankruptcy Code. The authority to settle

Designated Claims pursuant to the ADR Procedures will be in addition to, and cumulative with, any existing authority to resolve claims against the City.

41.     <u>Failure to Resolve a Designated Claim Through the ADR Procedures</u>.  Designated Claims not resolved through the ADR Procedures ("<u>Unresolved Designated Claims</u>") shall proceed to litigation for liquidation. Unless the City agrees otherwise, liquidation of any Unresolved Designated Claim shall proceed in this Court (to the extent that this Court has subject matter jurisdiction over the Unresolved Designated Claim) as soon as practicable following the date that the ADR Procedures are concluded for an Unresolved Designated Claim (the "<u>ADR Completion Date</u>").[13]  Such litigation will be initiated by the filing of a claim objection by the City (a "<u>Claim Objection</u>") within 35 days after the ADR Completion Date (the "<u>Claim Objection Deadline</u>").  Disputes over the subject matter jurisdiction of this Court shall be determined by this Court, and the Designated Claimants shall retain whatever rights they have to seek withdrawal of the reference, abstention of other procedural relief in connection with a Claim

---

[13]     With respect to Unresolved Designated Claims, the ADR Completion Date will be the Case Evaluation Termination Date except where the ADR Procedures are terminated sooner, such as where Case Evaluation was conducted with respect to a Designated Claim prior to the Petition Date, and the parties do not agree to conduct a second round of Case Evaluation. In that instance, the ADR Completion Date will be the Offer Exchange Termination Date.  In this regard, the City estimates that Case Evaluation already has been conducted with respect to approximately 30% of the Initial Designated Claims.

Objection.  For the avoidance of doubt, consistent with 28 U.S.C. § 157(b)(5), personal injury tort and wrongful death claims shall not be heard by this Court.

42.     If the Unresolved Designated Claim cannot be adjudicated in this Court because of lack of, or limitations upon, subject matter jurisdiction, or if the City does not file a Claim Objection by the Claim Objection Deadline (any such claim, a "Non-Bankruptcy Claim") then liquidation of any such Non-Bankruptcy Claim shall proceed in either:  (a) the nonbankruptcy forum in which the Non-Bankruptcy Claim was pending on the Petition Date, if any, subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Non-Bankruptcy Claim was not pending in any forum on the Petition Date, then in the United States District Court for the Eastern District of Michigan or such other nonbankruptcy forum selected by the Designated Claimant that (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the Non-Bankruptcy Claim, (iii) has *in rem* jurisdiction over the property involved in the Non-Bankruptcy Claim (if applicable) and (iv) is a proper venue.

43.     The Stay or any subsequent Plan Injunction (together, the "Stay/Injunction") shall be deemed modified solely for the purpose of, and to the extent necessary for, liquidating Non-Bankruptcy Claims in an appropriate non-bankruptcy forum (if applicable under the ADR Procedures) unless, within 35 days of the ADR Completion Date, the City files a notice (a "Stay Notice") that

it intends for the Stay/Injunction to remain in effect with respect to a Non-Bankruptcy Claim. If the City files a Stay Notice as set forth above, the Stay/Injunction shall remain in place and the applicable Designated Claimant may seek relief from the Stay/Injunction under the standards set forth in section 362(d) of the Bankruptcy Code.

44.     Notwithstanding anything herein, the City and any Designated Claimant may agree to terminate the ADR Procedures at any time and proceed to litigation of the applicable Designated Claim, as set forth herein.

### The Court Has Authority to Approve the ADR Procedures

45.     This Court is authorized under sections 105 and 502 of the Bankruptcy Code to approve the ADR Procedures. Section 105 of the Bankruptcy Code provides that:

> [t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.

11 U.S.C. § 105(a). This provision, in conjunction with section 502 of the Bankruptcy Code, supports the use of alternative dispute resolution procedures in bankruptcy cases for the expeditious resolution of disputed claims.[14] See Harchar

---

[14]     Section 502 of the Bankruptcy Code provides a framework for the allowance and disallowance of claims and grants bankruptcy courts broad authority to adjudicate matters within that section's ambit as core proceedings. See 11 U.S.C. § 502; 4 COLLIER ON BANKRUPTCY ¶ 502.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2013).

v. United States (In re Harchar), 694 F.3d 639, 645 (6th Cir. 2012) (Section 105 of

the Bankruptcy Code "provides the bankruptcy courts with authority to exercise

their equitable powers where necessary or appropriate to implement another

Bankruptcy Code provision."); Mitan v. Duval (In re Mitan), 573 F.3d 237, 246

(6th Cir. 2009) (noting "the broad grant of equitable power to bankruptcy courts

found within Section 105(a) [of the Bankruptcy Code]"); Cheesman v. Tenn.

Student Assistance Corp. (In re Cheesman), 25 F.3d 356, 360 (6th Cir. 1994)

("Several courts have suggested that the bankruptcy courts have broad equitable

powers to protect debtors pursuant to § 105(a) [of the Bankruptcy Code ].").[15]

    46.    In addition, bankruptcy courts are empowered to

---

[15]    See also John Richards Homes Bldg. Co. v. Adell (In re John Richards
Homes Bldg. Co.), 404 B.R. 220, 227 (E.D. Mich. 2009) ("The clear
language of 11 U.S.C. § 105(a) grants this Court significant equitable
powers as well as latitude in framing the relief necessary to carry out both
the specific provisions of the [Bankruptcy Code] as well as its philosophical
underpinnings.") (citation and quotation marks omitted); see also In re A.H.
Robins Co., 88 B.R. 742, 752 (E.D. Va. 1988) (holding that section 105 of
the Bankruptcy Code, 28 U.S.C. § 1334 and the equitable power of the court
permitted the court to approve channeling provisions, which included
alternative dispute resolution procedures, to assist in the efficient
administration of the debtors' estates and ensure an orderly and fair
distribution to claimants), aff'd sub nom. Menard-Sanford v. Mabey (In re
A.H. Robins Co.), 880 F.2d 694 (4th Cir. 1989); Lyondell Chem. Co. v.
CenterPoint Energy Gas Servs. Inc. (In re Lyondell Chem. Co.), 402 B.R.
571, 587 n.33 (Bankr. S.D.N.Y. 2009) ("[T]he Bankruptcy Court has
authority under section 105 broader than the automatic stay provisions of
section 362 and may use its equitable powers to assure the orderly conduct
of the reorganization proceedings.") (citation and quotation marks omitted).

issue an order … prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically.

11 U.S.C. § 105(d)(2).

47.     The establishment of alternative dispute resolution procedures for resolving claims is supported by a well established federal policy in favor of permitting parties to resolve disputes through arbitration.  See Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc., 383 Fed. App'x 517, 520 (6th Cir. 2010) (noting that there is "strong federal policy favoring arbitration"); Eichinger v. Kelsey-Hayes Co., No. 09-14092, 2010 WL 2720931, at *3 (E.D. Mich. July 8, 2010) (same); UPF, Inc. v. Motoman, Inc., No. 05- 74929, 2006 WL 1195825, at *2 (E.D. Mich. May 2, 2006) (same); accord Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) ("[I]t is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied.") (citation and quotation marks omitted).

48.     This federal policy also applies in bankruptcy cases.  Indeed, this Court previously has ordered the establishment of mediation procedures to "promote the just, speedy and inexpensive resolution" of disputes within a large bankruptcy case.  See In re Collins & Aikman Corp., 376 B.R. 815, 815-16 (Bankr. E.D. Mich. 2007) (finding that it was "in the best interests of all of the parties" to order mediation procedures to resolve numerous adversary proceedings filed by the

litigation trust established pursuant to the debtors' confirmed plan of reorganization).[16] As one bankruptcy court has stated, "[c]onsensual resolution of litigation has been favored in the law from time immemorial, whether by the parties themselves, or through mediation or other techniques of dispute resolution." Hass v. Hass (In re Hass), 273 B.R. 45, 50 (Bankr. S.D.N.Y. 2002).

49.     Numerous courts have expressed approval for alternative dispute resolution methods, including arbitration, because alternative dispute resolution may offer several practical advantages over ordinary litigation.  As the United States Supreme Court has stated, "[t]he advantages of arbitration are many: it is usually cheaper and faster than litigation; it can have simpler procedural and evidentiary rules; [and] it normally minimizes hostility and is less disruptive of ongoing and future business dealings among the parties . . . ." Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 280 (1995) (quoting H.R. Rep.

---

[16]     See also Spierer v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.), 328 F.3d 829, 831 (6th Cir. 2003) (where the bankruptcy court issued an order establishing alternative dispute resolution procedures for the liquidation of tort claims against the debtor, affirming a ruling of the bankruptcy court denying the motion of certain claimants to lift the automatic stay as to their claims); Willis v. Litzler (In re TIC United Corp.), 194 Fed. App'x 187, 188 (5th Cir. 2006) (affirming a bankruptcy court's order establishing mandatory alternative dispute resolution procedures for all tort claims against the debtor; holding that the bankruptcy court had subject matter jurisdiction to order such relief and that such an order was appropriate because tort claims against the debtor, such as that of the appealing claimant, threatened to deplete the debtor's estate if the automatic stay were lifted to allow claims against the debtor to proceed in nonbankruptcy forums).

No. 97-542, at 13 (1982)); Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000)

(noting that the Federal Arbitration Act was enacted to, among other things,

"relieve court congestion . . . and to provide parties with a speedier and less costly

alternative to litigation"); Nat'l Broad. Co. v. Bear Stearns & Co., 165 F.3d 184,

190-91 (2d Cir. 1999) ("The popularity of arbitration rests in considerable part on

its asserted efficiency and cost-effectiveness – characteristics said to be at odds

with full-scale litigation in the courts, and especially at odds with the broad-

ranging discovery made possible by the Federal Rules of Civil Procedure.") .

   50. Consistent with these authorities and policies, courts have

approved alternative dispute resolution procedures in many other large bankruptcy

cases. See, e.g., In re Penson Worldwide, Inc., No. 13-10061 (Bankr. D. Del.

July 31, 2013) (Order Pursuant to 11 U.S.C. § 105(a) Authorizing Implementation

of Alternative Dispute Resolution Procedures, Including Mandatory Mediation);

In re Hostess Brands, Inc., No. 12-22052 (Bankr. S.D.N.Y. June 11, 2012) (Order,

Pursuant to Sections 105 and 502 of the Bankruptcy Code, Bankruptcy Rules 3007

and 9019 and Local Bankruptcy Rule 9019-1, Approving Alternative Dispute

Resolution Procedures to Promote the Resolution of Certain Prepetition Claims);

In re Great Atl. & Pac. Tea Co., No. 10-24549 (Bankr. S.D.N.Y. Oct. 21, 2011)

(Order Approving Certain Personal Injury Resolution Procedures); In re Motors

Liquidation Co., No. 09-50026 (Bankr. S.D.N.Y. Oct. 25, 2010) (Amended Order

Authorizing Implementation of Alternative Dispute Resolution Procedures); In re Dana Corp., No. 06-10354 (Bankr. S.D.N.Y. May 23, 2007) (Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019, Approving Alternative Dispute Resolution Procedures to Promote the Resolution of Certain Prepetition Claims); In re The Austin Co., No. 05-93363 (Bankr. N.D. Ohio Aug. 24, 2006) (Order Approving Debtors' Proposed (a) Claims Resolution Procedures for Contested Claims, and (b) Alternative Dispute Resolution Procedures for Liquidating Litigation Claims).

51.     Due to the nature of factual and legal issues involved in, or other circumstances related to, the numerous disputed personal injury and other claims in this case, the City believes that the ADR Procedures will expedite the resolution of Designated Claims and limit the number of additional Lift Stay Motions filed or prosecuted against the City and, therefore, promote the efficient and expeditious liquidation of the Designated Claims and facilitate completion of the City's restructuring.

52.     Since the Petition Date, the Stay generally has shielded the City from the burden and expense of litigating the claims of claimants who have not obtained a lifting or modification of the Stay.  The City realizes, however, that a process for liquidating disputed litigation claims is a necessary component of its restructuring, and, with respect to many of the Initial Designated Claims in

particular, the Court lacks jurisdiction to assist with the liquidation of the claims because they are personal injury tort or wrongful death claims.

53. Moreover, particularly given the anticipated size of the disputed claims pool in this case, the City believes that a fair and efficient mechanism must be developed to liquidate disputed claims, where appropriate, short of full-blown litigation. If the City were able to pursue the liquidation of the Designated Claims only through litigation, the administration and liquidation of these claims would result in a substantial drain on the City's limited resources.

54. Thus, under the circumstances, the City believes that the ADR Procedures will assist the City, the Designated Claimants and the Court in the administration and liquidation of the Designated Claims, to the ultimate benefit of all stakeholders in this case. Among other things, the ADR Procedures will: (a) help minimize the expense, delay and uncertainty in liquidating the Designated Claims; (b) provide the City with a streamlined, well-defined and procedurally sound mechanism to pursue liquidation of many complex and significant disputed claims asserted in this case; (c) reduce the need to address the merits of the Designated Claims through full-blown litigation in this Court or other tribunals; (d) preserve the parties' respective procedural and substantive rights; and (e) provide a centralized mechanism for the liquidation of those Designated Claims that this Court lacks jurisdiction to liquidate. Accordingly, the ADR Procedures

should be approved, and the City should be authorized to implement these procedures as described herein.

## **Reservation of Rights**

55.     The City files this Motion without prejudice to or waiver of its rights pursuant to section 904 of the Bankruptcy Code, and nothing herein is intended to, shall constitute or shall be deemed to constitute the City's consent, pursuant to section 904 of the Bankruptcy Code, to this Court's interference with (a) any of the political or governmental powers of the City, (b) any of the property or revenues of the City or (c) the City's use or enjoyment of any income-producing property.

## **Notice**

56.     Notice of this Motion has been given to (a) all entities that have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (or their counsel if known) and (b) all entities that are parties to litigation or that have threatened litigation against the City according to the City's books and records (or their counsel if known) as set forth on Schedule H to the List of Claims.[17]  The City submits that no other or further notice need be provided.

---

[17]     The City believes that all known holders of Initial Designated Claims are among the entities identified on Schedule H to the List of Claims.

## Statement of Concurrence

57.     Local Rule 9014-1(g) provides that "in a bankruptcy case unless it is unduly burdensome, the motion shall affirmatively state that concurrence of opposing counsel in the relief sought has been requested on a specified date and that the concurrence was denied."  Local Rule 9014-1(g).  Given the number of parties and potential parties involved in this case and the lack of known opposing parties who would be adversely impacted by the relief requested herein, it would be impracticable (and, with regard to unknown parties, impossible) for the City to affirmatively seek the concurrence of each opposing counsel interested in the relief sought herein.  Accordingly, the City submits that imposing the requirements of Local Rule 9014-1(g) in this matter would be "unduly burdensome" and requests that its requirements be waived.

## Statement Regarding Evidentiary Nature of Hearing

58.     The City believes that this Motion raises no factual issues and anticipates that an evidentiary hearing on this Motion will not be required.

## No Prior Request

59.     No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the City respectfully requests that the Court:  (a) enter an order substantially in the form attached hereto as Exhibit 1, granting the relief

requested herein; and (b) grant such other and further relief to the City as the Court may deem proper.

Dated:  November 12, 2013          Respectfully submitted,


  /s/ Heather Lennox                  
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
   STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 963-6420
Facsimile:  (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY

# SUMMARY OF ATTACHMENTS

The following documents are attached to this Motion, labeled in accordance with Local Rule 9014-1(b).

| | |
|---|---|
| Exhibit 1 | Proposed Form of Order |
| Exhibit 2 | Notice |
| Exhibit 3 | None [Brief Not Required] |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | None [No Affidavits Filed Specific to This Motion] |
| Exhibit 6 | Proposed Alternative Dispute Resolution Procedures |

# EXHIBIT 1

## (Form of Proposed Order)

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

```
------------------------------------------------------x
                                      :
In re                                 : Chapter 9
                                      :
CITY OF DETROIT, MICHIGAN,            : Case No. 13-53846
                                      :
                      Debtor.         : Hon. Steven W. Rhodes
                                      :
                                      :
------------------------------------------------------x
```

## ORDER, PURSUANT TO SECTIONS 105 AND 502 OF THE BANKRUPTCY CODE, APPROVING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES TO PROMOTE THE LIQUIDATION OF CERTAIN PREPETITION CLAIMS

This matter coming before the Court on the Motion of Debtor,

Pursuant to Sections 105 and 502 of the Bankruptcy Code, For Entry of an Order

Approving Alternative Dispute Resolution Procedures to Promote the Liquidation

of Certain Prepetition Claims (the "Motion"), filed by the City of Detroit

(the "City"); the Court having reviewed the Motion and the proposed alternative

dispute resolution procedures attached to the Motion as Exhibit 6 (the "ADR

Procedures")[1] and having considered the statements of counsel and the evidence

adduced with respect to the Motion at a hearing before the Court (the "Hearing");

the Court finding that:  (a) the Court has jurisdiction over this matter pursuant to

---

[1] Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the ADR Procedures.

28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C.

§ 157(b); and (c) notice of the Motion and the Hearing was sufficient under the

circumstances; and the Court having determined that the legal and factual bases set

forth in the Motion and at the Hearing establish just cause for the relief granted

herein;

IT IS HEREBY ORDERED THAT:

1.  The Motion is GRANTED.

2.  The ADR Procedures are approved in all respects, pursuant to

sections 105 and 502 of the Bankruptcy Code.  For the avoidance of doubt, all of

the terms and provisions of the ADR Procedures are approved, whether or not such

terms and provisions are restated below.

3.  The City is authorized to take any and all actions that are

necessary or appropriate to implement the ADR Procedures.  Nothing in this Order

or the ADR Procedures, however, shall obligate the City to settle or pursue

settlement of any particular Designated Claim.  Any such settlements may be

pursued and agreed upon as the City believes are reasonable and appropriate in its

sole discretion, subject to the terms and conditions set forth in the ADR Procedures.

4.  From the date of this Order until the date that is 119 days after

the General Bar Date, the holders of the Initial Designated Claims (and any other

person or entity asserting an interest in such claim) shall be enjoined (the "Initial Injunction") from filing or prosecuting Stay Motions with respect to such Initial Designated Claims. The Initial Injunction is separate and distinct from the ADR Injunction as defined and described below

5. Upon the service of an ADR Notice on any Designated Claimant, such Designated Claimant (and any other person or entity asserting an interest in the relevant Designated Claim) shall be enjoined (the "ADR Injunction") from filing or prosecuting any Stay Motion or otherwise seeking to establish, liquidate, collect on or enforce the Designated Claim(s) identified in the ADR Notice, other than by liquidating the claim through the ADR Procedures. The ADR Injunction shall expire with respect to a Designated Claim only when the ADR Procedures have been completed as to that claim. For the avoidance of doubt, the City may serve an ADR Notice on any Designated Claimant at any time, and the ADR Injunction shall become effective at the time of service without any further action by the Court.

6. Except as expressly set forth in the ADR Procedures, the expiration of the Initial Injunction and/or the ADR Injunction shall not extinguish, limit or modify the Stay or any Plan Injunction, which shall remain in place to the extent then in effect, except as otherwise provided in the ADR Procedures.

The Initial Injunction and the ADR Injunction shall be in addition to the Stay and any Plan Injunction.

7. The City in its sole discretion (a) may elect not to send an ADR Notice to the holder of an Initial Designated Claim and (b) instead file and serve on the applicable Designated Claimant a notice (a "Stay Modification Notice") that the Stay is lifted to permit the underlying claim to be liquidated in an appropriate non-bankruptcy forum. In that event, immediately upon the filing of the Stay Modification Notice, the Stay shall be deemed modified with respect to the applicable Initial Designated Claim solely to permit the liquidation of the claim in a non-bankruptcy forum. The liquidation of any such Initial Designated Claim shall proceed in either (a) the non-bankruptcy forum in which the Initial Designated Claim was pending on the Petition Date, if any, subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Initial Designated Claim was not pending in any forum on the Petition Date, then in the United States District Court for the Eastern District of Michigan (the "District Court") or such other non-bankruptcy forum selected by the Designated Claimant that (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the claim, (iii) has *in rem* jurisdiction over the property involved in the Initial Designated Claim (if applicable) and (iv) is a

proper venue. If necessary, any disputes regarding the application of the foregoing terms, conditions and limitations shall be determined by this Court; provided that disputes about the jurisdiction of a matter presented to a non-bankruptcy court may be determined by such court.

8.      The resolution of a Designated Claim pursuant to the ADR Procedures or the entry of an Arbitration Award shall not grant the Designated Claimant any enforcement rights except as permitted under a Chapter 9 Plan, and the Stay and any Plan Injunction shall apply to any such resolved Designated Claim or Arbitration Award. Any aspect of an Arbitration Award that violates the foregoing rules and limitations shall be void without further action of any court.

9.      Designated Claims not resolved through the ADR Procedures ("Unresolved Designated Claims") shall proceed to litigation to be liquidated. Unless the City agrees otherwise, liquidation of any Unresolved Designated Claim shall proceed in this Court (to the extent that this Court has subject matter jurisdiction over the Unresolved Designated Claim) as soon as practicable following the date that the ADR Procedures are concluded for an Unresolved Designated Claim (the "ADR Completion Date"). Such litigation will be initiated by the filing of a claim objection by the City (a "Claim Objection") within 35 days after the ADR Completion Date (the "Claim Objection Deadline"). Disputes over

the subject matter jurisdiction of this Court shall be determined by this Court, and the Designated Claimants shall retain whatever rights they have to seek withdrawal of the reference, abstention or other procedural relief in connection with a Claim Objection.

10.     If an Unresolved Designated Claim cannot be adjudicated in this Court because of lack of, or limitations upon, subject matter jurisdiction, or if the City does not file a Claim Objection by the Claim Objection Deadline (any such claim, a "Non-Bankruptcy Claim"), then liquidation of any such Non-Bankruptcy Claim shall proceed in either (a) the non-bankruptcy forum in which the Non-Bankruptcy Claim was pending on the Petition Date, if any, subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Non-Bankruptcy Claim was not pending in any forum on the Petition Date, then in the District Court or such other nonbankruptcy forum selected by the Designated Claimant that (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the Non-Bankruptcy Claim, (iii) has *in rem* jurisdiction over the property involved in the Non-Bankruptcy Claim (if applicable) and (iv) is a proper venue.  If necessary, any disputes regarding the application of the foregoing terms, conditions and limitations shall be determined

by this Court; provided that disputes about the jurisdiction of a matter presented to a non-bankruptcy court may be determined by such court.

11.     The Stay or any subsequent Plan Injunction (together, the "Stay/Injunction") shall be deemed modified solely for the purpose of, and to the extent necessary for, liquidating Non-Bankruptcy Claims in an appropriate non-bankruptcy forum (as applicable under these ADR Procedures) unless, within 35 days of the ADR Completion Date, the City files a notice (a "Stay Notice") that it intends for the Stay/Injunction to remain in effect with respect to a Non-Bankruptcy Claim.  If the City files a Stay Notice as set forth above, the Stay/Injunction shall remain in place, and the applicable Designated Claimant may seek relief from the Stay/Injunction under the standards set forth in section 362(d) of the Bankruptcy Code.

12.     Nothing contained in this Order or the ADR Procedures shall (a) prevent the City and any Designated Claimant from settling any Designated Claim at any time or (b) limit, expand or otherwise modify the City's authority to settle or pay claims or the City's authority over its property and revenues under section 904 of the Bankruptcy Code.  The authority to settle Designated Claims pursuant to the ADR Procedures will be in addition to, and cumulative with, any existing authority to resolve claims against the City.

13.     The terms of this Order shall not be deemed to preclude any party in interest from objecting to any Designated Claim to the extent such entity has standing to assert an objection in accordance with Bankruptcy Code and applicable law.

14.     This Court shall retain jurisdiction for all purposes specified in the ADR Procedures and with respect to all disputes arising from or relating to the interpretation, implementation and/or enforcement of this Order and the ADR Procedures.

# EXHIBIT 2

## (Notice)

Form B20A (Official Form 20A)
12/1/10

**UNITED STATES BANKRUPTCY COURT**
**Eastern District of Michigan**

In re:

**CITY OF DETROIT, MICHIGAN,**

                                      **Chapter: 9**

                                      **Case No.: 13-53846**

                    **Debtor.**          **Judge:  Hon. Steven W. Rhodes**

Address:  2 Woodward Avenue, Suite 1126
                Detroit, Michigan  48226

Last four digits of Social Security or
Employer's Tax Identification (EIN) No(s).(if any):  38-6004606

**NOTICE OF MOTION OF DEBTOR,**
**PURSUANT TO SECTIONS 105 AND 502 OF THE BANKRUPTCY CODE,**
**FOR ENTRY OF AN ORDER APPROVING ALTERNATIVE DISPUTE RESOLUTION**
**PROCEDURES TO PROMOTE THE LIQUIDATION OF CERTAIN PREPETITION CLAIMS**

        The City of Detroit, Michigan (the "City") has filed papers with the Court seeking entry of an order, pursuant to sections 105 and 502 of the Bankruptcy Code, approving alternative dispute resolution procedures to promote the resolution of certain prepetition claims.

        **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

        If you do not want the court to grant the relief sought in the motion, or if you want the court to consider your views on the motion, **on or by November 26, 2013**, you or your attorney must:

1.              File with the court a written response or an answer, explaining your position at:[1]

**United States Bankruptcy Court**
211 W. Fort Street, Suite 2100
Detroit, Michigan  48226

        If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.  All attorneys are required to file pleadings electronically.

---

[1]        Any response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

You must also mail a copy to:

David G. Heiman
Heather Lennox
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114

Bruce Bennett
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071

Jonathan S. Green
Stephen S. LaPlante
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226

2.        If a response or answer is timely filed and served, the Court will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Dated:    November 12, 2013        Respectfully submitted,

/s/  Heather Lennox
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
   STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 963-6420
Facsimile:  (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY

# **EXHIBIT 4**

# **(Certificate of Service)**

## CERTIFICATE OF SERVICE

I, Heather Lennox, hereby certify that the foregoing Motion of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims was filed and served via the Court's electronic case filing and noticing system on this 12th day of November, 2013.

/s/ Heather Lennox

# EXHIBIT 6

## (Proposed Alternative Dispute Resolution Procedures)

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

```
-------------------------------------------------------x
                                    :
In re                               :          Chapter 9
                                    :
CITY OF DETROIT, MICHIGAN,          :          Case No. 13-53846
                                    :
                    Debtor.         :          Hon. Steven W. Rhodes
                                    :
                                    :
                                    :
-------------------------------------------------------x
```

## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

On [_____], 2013, the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") entered an order (Docket No. __) (the "ADR Order") in the above-captioned case under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") approving and adopting the following alternative dispute resolution procedures (the "ADR Procedures") with respect to certain claims asserted against the City of Detroit (the "City"):

## I.    CLAIMS SUBJECT TO THE ADR PROCEDURES AND ADR INJUNCTION

### A.    Claims Subject to the ADR Procedures

The claims subject to the ADR Procedures consist of all claims designated by the City under the notice procedures set forth below (collectively, the "Designated Claims"). The City may designate for liquidation pursuant to the ADR Procedures any proof of claim timely asserted in these cases by serving a notice (the "ADR Notice") on the applicable claimant, if the City believes, in its sole discretion, that the ADR Procedures would promote the resolution of such claim and serve the intended objectives of the ADR Procedures. Without limiting the foregoing, any and all timely filed prepetition claims in the following categories shall be Designated Claims hereunder prior to the City serving an ADR Notice on the applicable claimant: (1) personal injury tort or wrongful death claims, (2) property damage claims or (3) claims relating to the operation of motor vehicles for which the City is self-insured pursuant to chapter 31 of Michigan's

CLI-2154344v13

13-53846-tjt   Doc 1664   Filed 08/19/16   Entered 08/19/16 14:25:48   Page 60 of 263
13-53846-tjt   Doc 1664   Filed 08/19/16   Entered 08/19/16 14:25:48   Page 60 of 263   57

Insurance Code of 1956, M.C.L. §§ 500.3101, et seq. (collectively, the "Initial Designated Claims")  The holders of the Designated Claims, including Initial Designated Claims, are referred to herein as the "Designated Claimants."

The Designated Claims shall not include claims solely asserting workers' compensation liabilities against the City, which claims the City continues to resolve in the ordinary course pursuant to its usual workers' compensation procedures.

## B. Injunctions in Support of the ADR Procedures

The Bankruptcy Court has established **[_____, 2014]** as the general bar date for filing proofs of claim in the City's chapter 9 case (the "General Bar Date").  For the period commencing on the date of entry of the ADR Order until the date that is 119 days after the General Bar Date (the "Initial Designation Period"), any Designated Claimant holding an Initial Designated Claim (and any other person or entity asserting an interest in such claim) shall be enjoined (the "Initial Injunction") from filing or prosecuting, with respect to such Initial Designated Claim, any motion (a "Stay Motion") for relief from either (1) the automatic stay of sections 362 and 922 of the Bankruptcy Code, as modified and extended from time to time by orders of the Bankruptcy Court (the "Stay"), or (2) any similar injunction (a "Plan Injunction") that may be imposed upon the confirmation or effectiveness of a plan of adjustment of debts confirmed in the City's chapter 9 case (a "Chapter 9 Plan").  The Initial Injunction is separate and distinct from the ADR Injunction as defined and described below.  Any Designated Claimant that is subject to the Initial Injunction with respect to an Initial Designated Claim shall instead become subject to the ADR Injunction upon the service of an ADR Notice with respect to the underlying Designated Claim, as described in the following paragraph, whether that occurs during or after the Initial Designation Period.

Upon service of an ADR Notice on any Designated Claimant under Section II.A.1 below, such Designated Claimant (and any other person or entity asserting an interest in the relevant Designated Claim) shall be enjoined (the "ADR Injunction") from filing or prosecuting any Stay Motion or otherwise seeking to establish, liquidate, collect on or enforce the Designated Claim(s) identified in the ADR Notice, other than by liquidating the claim through the ADR Procedures described herein.  The ADR Injunction shall expire with respect to a Designated Claim only when the ADR Procedures have been completed as to that Designated

Claim.[1]  For the avoidance of doubt, the City may serve an ADR Notice on any Designated Claimant at any time, and the ADR Injunction shall become effective at the time of service without any further action by the Bankruptcy Court.

Except as expressly set forth herein or in a separate order of the Bankruptcy Court, the expiration of the Initial Injunction or the ADR Injunction shall not extinguish, limit or modify the Stay or any Plan Injunction, and the Stay and any Plan Injunction shall remain in place to the extent then in effect, except as otherwise provided herein.  The Initial Injunction and the ADR Injunction shall be in addition to the Stay and any Plan Injunction.

With respect to any Initial Designated Claim, the City in its sole discretion (1) may elect not to send an ADR Notice to the Designated Claimant (i.e., not send the claim to the ADR Procedures) and (2) instead may file and serve on the applicable Designated Claimant a notice that the Stay is lifted to permit the underlying claim to be liquidated in a non-bankruptcy forum consistent with the terms, conditions and limitations of Section II.E.2 below (a "Stay Modification Notice").  In that event, immediately upon the filing of the Stay Modification Notice, the Stay shall be deemed modified with respect to the applicable Initial Designated Claim solely to permit the liquidation of the claim in a non-bankruptcy forum consistent with the terms, conditions and limitations of Section II.E.2 below.

## II.    THE ADR PROCEDURES

### A.    Offer Exchange Procedures

The first stage of the ADR Procedures will be the following offer exchange procedures that require the parties to exchange settlement offers and thereby provide an opportunity to resolve the underlying Designated Claim on a consensual basis without any further proceedings (the "Offer Exchange Procedures").

---

[1]    The ADR Procedures expire upon any resolution of a Designated Claim through the ADR Procedures, upon the Case Evaluation Termination Date (as defined below) for Designated Claims not resolved though the ADR Procedures or at any other time that the ADR Procedures are terminated by agreement of the parties or the terms hereof.

CLI-2154344v13

1. *Service of the ADR Notice*
   *and Settlement Offer by the City*

(a)     At any time following the filing of a proof of claim by the applicable Designated Claimant, [2] the City may serve upon the Designated Claimant, at the address listed on the Designated Claimant's most recently filed proof of claim or amended proof of claim, as well as upon any counsel of record in these cases for the Designated Claimant, the following materials (collectively, the "ADR Materials"):  (i) an ADR Notice, [3] (ii) a copy of the ADR Order and (iii) a copy of these ADR Procedures.  For transferred claims, the City also shall serve a copy of the ADR Materials on the transferee identified in the notice of transfer of claim.  The ADR Notice shall serve as (i) notice that a claim has been designated by the City as a Designated Claim (if not already designated herein as an Initial Designated Claim) and (ii) notice that the Designated Claim has been submitted to the ADR Procedures.  Promptly following the service of the ADR Materials on any Designated Claimant, the City shall file a notice with the Court indicating that the Designated Claim has been submitted to the ADR Procedures.

(b)     In the ADR Notice, the City:   (i) may request that the Designated Claimant verify or, as needed, correct, clarify or supplement certain information regarding the Designated Claim; (ii) shall include an offer by the City to settle the Designated Claim (a "Settlement Offer"); and (iii) may state whether the City consents to the adjudication of the Designated Claim by binding arbitration, as set forth below, if the Designated Claim is not resolved pursuant to the Offer Exchange Procedures.  The ADR Notice shall require the Designated Claimant to sign and return the ADR Notice along with a Permitted Response (as defined below) to the City so that it is received by the City no later than 28 days[4] after the mailing of the ADR Notice (the "Settlement Response Deadline").

---

[2]     The ADR Procedures will not be initiated with respect to a claim unless and until a timely proof of claim is filed.

[3]     The form of the ADR Notice is attached hereto as Annex 1 and incorporated herein by reference.  Although the City anticipates that the ADR Notice will be substantially in the form of Annex 1, the City reserves the right to modify the ADR Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

[4]     Rule 9006(a) of the Federal Rules of Bankruptcy Procedure shall apply to all time periods calculated in the ADR Procedures.

-4-

(c)     *Failure to sign and return the ADR Notice or to include a Permitted Response with the returned ADR Notice by the Settlement Response Deadline shall be deemed to be a denial by the Designated Claimant of the Settlement Offer, and the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.*

2.     *The Permitted Responses*

The only permitted responses to a Settlement Offer (together, the "Permitted Responses") are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (as further defined below, a "Counteroffer").  *If the ADR Notice is returned without a response or with a response that is not a Permitted Response, the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.*

3.     *The Counteroffer*

The Counteroffer shall be signed by an authorized representative of the Designated Claimant and shall identify the proposed amount that the Designated Claimant will accept as a prepetition claim against the City in settlement of the Designated Claim.  The Counteroffer may not exceed the amount or improve the priority set forth in the Designated Claimant's most recent timely filed proof of claim or amended proof of claim (but may liquidate any unliquidated amounts expressly referenced in a proof of claim).[5]  *A Counteroffer may not be for an unknown, unliquidated or indefinite amount or priority, or the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.*  All Counteroffers shall be for prepetition claims payable pursuant to the Chapter 9 Plan.  See Section II.D below.

4.     *Consent to Subsequent Binding Arbitration*

As described in Sections II.B and II.C below, in the absence of a settlement at the conclusion of the Offer Exchange Procedures, the ADR Procedures contemplate submitting Designated Claims to Case Evaluation (as defined below).  Where no settlement is reached following Case Evaluation, the ADR Procedures contemplate submitting Designated Claims to binding arbitration,

---

[5]     A Designated Claimant may not amend its proof of claim solely for the purpose of proposing a Counteroffer of a higher amount or a better priority. Any dispute over the validity of any Counteroffer may be submitted by the City to the Bankruptcy Court for review.

if the City and the Designated Claimant both agree to binding arbitration of the applicable Designated Claim. When returning the ADR Notice, therefore, the Designated Claimant is required to notify the Debtors if it consents to (and thereby opts in to) or does *not* consent to (and thereby opts out of) binding arbitration in the event that its Designated Claim ultimately is not resolved through the Offer Exchange Procedures or Case Evaluation. If the Designated Claimant returns the ADR Notice without expressly notifying the Debtors that it consents to, and seeks to opt into, binding arbitration, the Designated Claimant shall be deemed to have opted out of binding arbitration. Any Designated Claimant that does not consent to binding arbitration in its response to the ADR Notice may later consent in writing to binding arbitration, subject to the agreement of the City. If the City did not consent to binding arbitration in the ADR Notice, it may later consent to binding arbitration at any time in the process by providing a written notice to the Designated Claimant (including through an Arbitration Notice, as defined below). Consent to binding arbitration, once given, cannot subsequently be withdrawn. In addition, any attempt to refuse binding arbitration in the response to the ADR Notice shall be ineffective if the Designated Claimant previously consented in writing to binding arbitration as a means to resolve its claim(s), either before or after the commencement of the City's chapter 9 case on July 18, 2013 (the "Petition Date").

5.      *The City's Response to a Counteroffer*

The City must respond to any Counteroffer within 14 days after its receipt of the Counteroffer (the "Response Deadline"), by returning a written response (as further defined below, a "Response Statement"). The Response Statement shall indicate that the City either:   (a) accepts the Counteroffer; (b) rejects the Counteroffer, with or without making a revised Settlement Offer (a "Revised Settlement Offer");   (c) requests additional information or documentation so that the City may respond in good faith to the Counteroffer; or (d) terminates the Offer Exchange Procedures and advances the Designated Claim the next step of the ADR Procedures, as set forth below.

(a)      *The City's Rejection of the Counteroffer*
            *Without Making a Revised Settlement Offer*

If the City rejects the Counteroffer without making a Revised Settlement Offer, (i) the Offer Exchange Procedures will be deemed terminated with respect to the Designated Claim and (ii) the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.

-6-

(b)    *The City's Failure to Respond*

If the City fails to respond to the Counteroffer by the Response Deadline:  (i) the Counteroffer will be deemed rejected by the City, (ii) the Offer Exchange Procedures will be deemed terminated with respect to the Designated Claim and (iii) the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.

(c)    *Revised Settlement Offer*

If the City makes a Revised Settlement Offer by the Response Deadline, the Designated Claimant may accept the Revised Settlement Offer by providing the City with a written statement of acceptance no later than 14 days after the date of service of the Revised Settlement Offer (the "Revised Settlement Offer Response Deadline").  If the Designated Claimant does not accept the Revised Settlement Offer by the Revised Settlement Offer Response Deadline, the Revised Settlement Offer will be deemed rejected, and the Designated Claim automatically will advance to the next step of the ADR Procedures, as set forth below.

(d)    *Request for Additional Information*

If the City requests additional information or documentation by the Response Deadline, the Designated Claimant shall serve such additional information or documentation so that it is received by the City within 14 days after such request.  If the Designated Claimant timely responds, the City shall have 14 days to provide an amended Response Statement, which may include a Revised Settlement Offer as a counter to the Counteroffer.  If the City does not provide an amended Response Statement within this period, or if the Designated Claimant fails to provide the requested information or documentation within the time allotted, the Designated Claim automatically will proceed to the next step of the ADR Procedures, as set forth below.

6.    *Offer Exchange Termination Date*

Upon mutual written consent, the City and a Designated Claimant may exchange additional Revised Settlement Offers and Counteroffers for up to 21 days after the later of (a) the Revised Settlement Offer Response Deadline or (b) the expiration of the applicable timeframes provided for in Section II.A.5(d) above with respect to requesting, receiving and responding to additional information or documentation.  Any date that the Offer Exchange Procedures

conclude without a resolution is referred to herein as the "<u>Offer Exchange Termination Date</u>."

### 7. *Ability to Settle Claims*

Nothing herein shall limit the ability of a Designated Claimant and the City to settle a Designated Claim by mutual consent at any time. All such settlements shall be subject to the terms of Section II.D below.

## B. **Case Evaluation**

The next step of the ADR Procedures following the Offer Exchange Procedures is case evaluation ("<u>Case Evaluation</u>") before the Wayne County Mediation Tribunal Association (the "<u>MTA</u>") under the procedures set forth in Rules 2.403 and 2.404 of the Michigan Court Rules of 1985 ("<u>MCR</u>"), as provided for by Rule 16.3 of the Local Rules of the United States District Court for the Eastern District of Michigan. Copies of MCR §§ 2.403 and 2.404 are attached hereto collectively as <u>Annex II</u>.

All Designated Claims not settled through the Offer Exchange Procedures shall be referred to Case Evaluation unless the City and the applicable Designated Claimant previously have undergone Case Evaluation with respect to the applicable Designated Claim.[6] Additional parties may intervene in the Case Evaluation process solely by agreement between the City and the applicable Designated Claimant.

### 1. *Prioritization of Referral of Designated Claims to Case Evaluation*

As soon as reasonably practicable following the Offer Exchange Termination Date with respect to any Designated Claim, the City shall issue to the applicable Designated Claimant, any other parties to the Case Evaluation and the Clerk of the MTA (the "<u>ADR Clerk</u>"), a notice of case evaluation (a "<u>Case Evaluation Notice</u>") substantially in the form attached hereto as <u>Annex III</u>. Given the large number of actual and potential prepetition litigation claims asserted or to

---

[6] Where the City and the applicable Designated Claimant previously underwent Case Evaluation with respect to the applicable Designated Claim, then the Designated Claim will proceed to the next step of the ADR Procedures unless the parties agree to conduct Case Evaluation once again with respect to the Designated Claim.

be asserted against the City, however, the City anticipates that it will be necessary to prioritize the initiation of Case Evaluation proceedings. In prioritizing among Designated Claims, the City may consider, along with any other factors the City deems relevant or appropriate in its sole discretion, (a) the absolute or relative difference between the final offers made by the City and the applicable Designated Claimant during the Offer Exchange Procedures, (b) the nature and complexity of the Designated Claim, (c) the status of any underlying lawsuit or (d) whether the Designated Claimant returned the ADR Notice and its level of participation in the ADR Procedures.

2.     *Summary of Case Evaluation Rules and Procedures*

Except to the extent modified by the terms of these ADR Procedures, the Case Evaluation of any Designated Claim shall be governed by the rules and procedures set forth in MCR §§ 2.403 and 2.404. The following provisions of MCR § 2.403, however, are expressly inapplicable to these Case Evaluation procedures: (a) MCR §§ 2.403(A-C) (relating to the assignment of cases to Case Evaluation) and (b) MCR §§ 2.403(N-O) (relating to the posting of bonds for frivolous claims and defenses and the awarding of costs against a party that rejects a Case Evaluation and subsequently fails to achieve a superior result at trial).

The purpose of the Case Evaluation process is to obtain a nonbinding, confidential, monetary valuation of each Designated Claim that serves as a focal point for ongoing settlement negotiations between the parties. Each Designated Claim shall be evaluated by a panel of three case evaluators (the "Case Evaluation Panel"). The Case Evaluation Panel hears the arguments of the parties at a short hearing (the "Case Evaluation Hearing") and, within 14 days following the Case Evaluation Hearing, issues its written evaluation of the Designated Claim.

(a)     *Fees and Costs for Case Evaluation, Derivative Claims*

Pursuant to MCR § 2.403(H), the fees and costs for each Case Evaluation proceeding will be $75.00 payable by each party to the ADR Clerk. Where one claim is derivative of another within the Case Evaluation proceeding, the claims will be treated as a single claim, with one fee to be paid and a single valuation to be made by the Case Evaluation Panel.[7]

---

[7]     If for any reason the costs for any Case Evaluation proceeding exceeds $75.00 per party, such costs shall be borne equally by each of the parties.

CLI-2154344v13

(b)     *Scheduling of the Case Evaluation Hearing*

The ADR Clerk shall select the members of the Case Evaluation Panel in accordance with MCR § 2.404(C).  The ADR Clerk shall set a time and place for the Case Evaluation Hearing, consistent with MCR § 2.403(G)(1), and provide notice to the members of the Case Evaluation Panel and the parties to the Case Evaluation at least 42 days prior to the date set for the Case Evaluation Hearing.  Adjournments of the Case Evaluation Hearing may be granted only for good cause.

(c)     *The Case Evaluation Summary*

At least 14 days prior to the date scheduled for the Case Evaluation Hearing, each party shall serve a copy of a case evaluation summary (a "Case Evaluation Summary") and supporting documents on the other parties to the Case Evaluation and file a proof of service and three copies of the Case Evaluation Summary with the ADR Clerk.  The Case Evaluation Summary shall consist of a concise statement setting forth the party's factual and legal position on issues presented by the Designated Claim.  The Case Evaluation Summary shall not exceed 20 pages, double spaced, exclusive of attachments.  Quotations and footnotes may be single spaced.  At least one-inch margins shall be used, and printing shall not be smaller than 12-point font.  See MCR § 2.403(I)(3).

(d)     *Conduct of the Case Evaluation Hearing*

The Case Evaluation Hearing shall be conducted in accordance with MCR § 2.403(J).  Thus, for example:  (i) oral presentation shall be limited to 15 minutes per side unless multiple parties or unusual circumstances warrant addition time; (ii) no testimony will be taken or permitted of any party, (iii) factual information having a bearing on damages or liability must be supported by documentary evidence, if possible; and (iv) statements by the attorneys and the briefs or summaries are not admissible in any court or evidentiary proceeding.

(e)     *The Case Evaluation Panel's Decision*

Within 14 days following the Case Evaluation hearing, the Case Evaluation Panel will estimate the value of the Designated Claim (the "Evaluation") and notify each party of the Evaluation in writing.  The Case Evaluation Panel shall only liquidate the monetary value, if any, of the Designated Claim in light of the evidence and arguments presented at in the Case Evaluation Summary and at the Case Evaluation Hearing and shall not raise or purport to determine any issues relating to the potential treatment or priority of the Designated Claim in this

chapter 9 case. All claims subject to an Evaluation shall be prepetition claims subject to treatment under a Chapter 9 Plan.

(f)     *Acceptance or Rejection of the Evaluation*

Within 28 days following the issuance of the Evaluation by the Case Evaluation Panel, each of the parties shall file a written acceptance or rejection of the Evaluation with the ADR Clerk. Each acceptance or rejection must encompass all claims as between any two parties to the Case Evaluation. The failure to file a written acceptance or rejection within 28 days constitutes a rejection of the Evaluation.

If the ADR Clerk informs such parties that they both have accepted the Evaluation then the Designated Claim shall be deemed settled, and the settlement as between such parties shall be documented and made of record in accordance with the procedures set forth in Section II.D below.

If one or both parties rejects the Evaluation, then the parties shall have a further 28 days to negotiate a consensual settlement of the Designated Claim. If no settlement is reached by the end of this period (the "Case Evaluation Termination Date") then the Designated Claim shall proceed to binding arbitration, if applicable.

C.     **Binding Arbitration**

If the Designated Claimant previously consented in writing to binding arbitration as a means to resolve its claim(s) as set forth above (either in its response to the ADR Notice or by the terms of a separate written agreement either before or after the Petition Date), and if the City agrees to binding arbitration, then the Designated Claim shall be subject to binding arbitration, if such claim is not resolved in the Offer Exchange Procedures or in Case Evaluation.[8] If the Designated Claimant has not expressly consented to binding arbitration in its

---

[8]     The City's agreement to arbitration with respect to any Designated Claim shall be set forth in the Arbitration Notice, as defined below. If, in any case, the City deems it necessary or appropriate in its discretion to resolve multiple Designated Claims on a consolidated basis then the matter may proceed to binding arbitration solely with the consent of all parties. Similarly, any claims held by the Designated Claimants against co-defendants of the City shall not be resolved by binding arbitration absent the consent of the applicable co-defendants.

response to the ADR Notice and has not otherwise expressly consented to binding arbitration, or if the City has not consented to binding arbitration, at the conclusion of Case Evaluation, the liquidation of the Designated Claim shall advance in accordance with the procedures for Unresolved Designated Claims set forth below.

1.      *Arbitration Notice*

Where the parties have agreed to binding arbitration, as soon as reasonably practicable following the Case Evaluation Termination Date with respect to any Designated Claim, the City shall serve on the applicable Designated Claimant (or their counsel if known), any other parties to the Case Evaluation and the ADR Clerk, a notice of arbitration (an "Arbitration Notice") substantially in the form attached hereto as Annex IV. Additional parties may intervene in the binding arbitration process solely by agreement between the City and the applicable Designated Claimant.

2.      *Arbitration Rules and Procedures*

The arbitration of any Designated Claims shall be conducted by a single arbitrator selected by the ADR Clerk and shall be governed by the commercial arbitration rules of the American Arbitration Association (the "AAA"), as amended and effective on October 1, 2013 unless the parties agree otherwise (the "Arbitration Rules"), except where the Arbitration Rules are expressly modified by the terms of these ADR Procedures. In the event of any conflict between the Arbitration Rules and the ADR Procedures, the ADR Procedures shall control.

(a)      *Governing Law*

The ADR Procedures, as they relate to arbitration proceedings, are governed by title 9 of the United States Code (the "Federal Arbitration Act"), except as modified herein.

(b)      *Selection of Arbitrator*

The ADR Clerk shall select the arbitrator and provide notice to the arbitrator and the parties of his or her appointment. Any person appointed as an arbitrator: (i) must be an impartial, neutral person; (ii) must be experienced (either from past arbitrations or former employment) in the law that is the subject of the Designated Claim; (iii) must have no financial or personal interest in the proceedings or, except when otherwise agreed by the parties, in any related matter; and (iv) upon appointment, must disclose any circumstances likely to create a

reasonable inference of bias. In the event that an arbitrator discloses circumstances likely to create a reasonable inference of bias, either (i) the parties may agree that such arbitrator may be replaced by the ADR Clerk or (ii) in case the parties disagree, the party seeking to replace the arbitrator may petition the Bankruptcy Court to make a final decision with respect to the replacement of the arbitrator.

(c)     *Fees and Costs for Binding Arbitration; Sharing*

The City is in the process of negotiating a rate with the MTA for arbitrations under these ADR Procedures. Unless the parties expressly have agreed otherwise in writing (either before or after the Petition Date) as part of an agreement to submit Designated Claims to binding arbitration, the fees and costs charged by the arbitrator and the MTA shall be shared equally among the parties; provided, however, that the arbitrator, in the arbitrator's sole discretion, may assess fees and costs against any party that the arbitrator finds to be abusing or unduly delaying the arbitration process. The arbitrator shall submit invoices to the MTA, which shall invoice the parties, according to the MTA's ordinary practices then in effect and subject to the MTA's ordinary payment terms then in effect.

(d)     *Time and Location of Arbitration Hearings*

All arbitration hearings shall be scheduled by the arbitrator, in consultation with the parties and shall be conducted in Detroit, Michigan unless otherwise agreed by all of the parties and the arbitrator.

No more than one case shall be scheduled per arbitrator per hearing day. There shall be no more than three days of arbitration hearings scheduled by in any calendar week containing no legal holidays and no more than two days of arbitration hearings in any calendar week containing a legal holiday.

To the maximum extent practicable, the scheduling of arbitration hearings shall give due consideration to the convenience of the parties. The arbitrator shall provide written notice of the date, time and place of the arbitration to the parties within 14 days after the arbitrator's appointment.

(e)     *Pre-Hearing Matters*

Any pre-hearing issues, matters or disputes (other than with respect to merits issues) shall be presented to the arbitrator telephonically (or by such other method agreed to by the arbitrator and the parties) for expeditious, final and binding resolution. Any pre-hearing issue, matter or dispute (other than with respect to merits issues) must be presented to the arbitrator not later than 21 days

prior to the arbitration hearing so as to permit the arbitrator to review and rule upon the requests by telephonic or email communication at least five days prior to the arbitration hearing.

(f)    *Limited Discovery*

There shall be no interrogatories.  Any requests for production of documents, electronically stored information and things ("Document Requests") shall be made in writing and shall be served by electronic mail and overnight mail no later than by 5:00 p.m., Eastern Time, on a weekday that is not a legal holiday, no fewer than 42 days before the arbitration hearing, and shall be limited to no more than ten requests, including discrete subparts.  Items requested in the Document Requests must be produced within 28 days after service of the Document Requests.  Affidavits permitted under the Arbitration Rules (e.g., Rule 32 of the AAA rules) must be submitted at least 21 days prior to the scheduled arbitration hearing.  Each party may depose up to three witnesses.  Each deposition shall be limited to three hours.  All depositions must be completed at least 21 days prior to the arbitration hearing.  All documents, affidavits and deposition transcripts from discovery shall be confidential and shall not be either (i) disclosed to any person or party not participating in the arbitration proceeding or (ii) used for any purpose other than in connection with the arbitration proceeding, except as provided herein.  Subject to approval by the arbitrator upon written request, each party may depose up to two additional witnesses and may serve up to five additional Document Requests.  Any request for such additional depositions or Document Requests, and any objection to initial or additional requests for depositions or Document Requests, shall be made in writing and shall be submitted to the arbitrator and the applicable party within such time as to permit the arbitrator no fewer than three days in which to review and rule upon the request so that the ruling is issued, by telephonic or email communication, at least 14 days prior to the first such deposition or the deadline for production, as applicable.  The arbitrator shall approve the request only if the requested depositions or Document Requests are directly relevant to and necessary for the complete presentation of any party's case in the arbitration.  Notwithstanding anything to the contrary in this paragraph (f), the arbitrator may modify any term of discovery set forth herein for good cause.

(g)    *Pre-Arbitration Statement*

On or before 14 days prior to the scheduled arbitration hearing, each party shall submit to the arbitrator and serve on the other party or parties by electronic mail and overnight mail a pre-arbitration statement (the "Pre-Arbitration

CLI-2154344v13

<u>Statement</u>").  The Pre-Arbitration Statement shall not exceed 20 pages, double spaced, exclusive of attachments.  Quotations and footnotes may be single spaced. At least one-inch margins shall be used, and printing shall not be smaller than 12-point font.

(h)  *Arbitration Hearing*

Unless otherwise agreed by the parties and the arbitrator or as provided herein, and subject to the limitations on number of arbitration hearings per week as set forth in Section II.C.2(d) above, the arbitration hearing must be held no later than 112 days after the date of appointment of the arbitrator.  Each party shall have a maximum of three hours, including any rebuttal and cross-examination, within which to present its position at the arbitration hearing. The arbitration hearing is open only to the parties, their counsel and any witnesses. Non-party witnesses shall be sequestered.  No post-hearing briefs may be filed, unless the arbitrator requests such briefs, in which case such briefing shall be subject to the issues, timing and page limitations the arbitrator imposes.  There shall be no reply briefs.

(i)  *Arbitration Awards*

The arbitrator shall issue a short written opinion and award (the "<u>Arbitration Award</u>") within 14 days after the last day of the arbitration hearing, <u>provided</u> that the arbitrator can extend such period up to 30 days after the last day of the arbitration hearing.  The arbitrator shall not be compensated for more than eight hours of deliberations on and preparation of the Arbitration Award. In no event shall the amount of any Arbitration Award exceed the claim amount shown on the Designated Claimant's most recent proof of claim prior to the service of the Arbitration Notice.

Any Arbitration Award shall only liquidate the applicable Designated Claim and shall not raise or purport to determine any issues relating to the potential treatment or priority of the Designated Claim in this chapter 9 case. The Arbitration Award may not award the Designated Claimant with:  (i) punitive damages; (ii) interest, attorneys' fees or other fees and costs, unless permissible under section 506(b) of the Bankruptcy Code; (iii) an award under any penalty rate or penalty provision of the type specified in section 365(b)(2)(D) of the Bankruptcy Code; (iv) amounts associated with obligations that are subject to disallowance under section 502(b) of the Bankruptcy Code; (v) specific performance, other compulsory injunctive relief, restrictive, restraining or prohibitive injunctive relief or any other form of equitable remedy; or (vi) any

relief not among the foregoing, but otherwise impermissible under applicable bankruptcy or non-bankruptcy law. The entry of an Arbitration Award shall not grant the Designated Claimant any enforcement or collection rights except as permitted under a Chapter 9 Plan, and the Stay and any Plan Injunction shall apply to the Arbitration Award. Any aspect of an Arbitration Award that violates the foregoing rules and limitation shall be void without further action of any court.

(j)     *Vacation of Arbitration Awards*

All Arbitration Awards shall be final and binding. Other than the Designated Claimants' identities, the claims register number(s) assigned to the applicable arbitrated Designated Claims, the dollar amounts of the Designated Claims as awarded in the Arbitration Awards, and except as otherwise required by law, all Arbitration Awards shall be treated as confidential. No party shall have the right to request that an Arbitration Award be vacated except: (i) in the event that an Arbitration Award violates the Bankruptcy Code or these ADR Procedures, such as by purporting to grant priority status to any Arbitration Award, in which case any application to vacate must be made to the Bankruptcy Court; or (ii) pursuant to the provisions of the Federal Arbitration Act, in which case any application to vacate must be to the United States District Court for the Eastern District of Michigan. Any further proceedings shall be governed by the Federal Arbitration Act. Failure to timely apply to vacate shall result in the loss of any vacation rights. Once the Arbitration Award is final, the City shall update the claims docket in this case accordingly and may file any notice of the liquidated amount of the Designated Claim that it deems necessary or appropriate for such purpose.

(k)     *Modification of the Arbitration Procedures*

The arbitration procedures described herein may be modified only after the appointment of an arbitrator in the applicable arbitration proceeding and only upon the mutual written consent of the applicable arbitrator and each of the parties.

**D.     Approval and Satisfaction of Any Settlement or Arbitration Award**

**If you hold a Designated Claim with respect to which settlement has been reached through the ADR Procedures or an Arbitration Award has been entered, please read the following carefully. Except as otherwise agreed by the City, you will receive an allowed general unsecured nonpriority claim**

-16-

against the City that will be treated in accordance with the Chapter 9 Plan in the City's bankruptcy case **and not** a full cash payment of the settlement amount of your Designated Claim. **Notwithstanding the foregoing, any disputes about the priority of a Designated Claim may be raised with and determined by the Bankruptcy Court after the conclusion of the ADR Procedures.** Payment of any settlement or award under the ADR Procedures shall be governed by the procedures set forth in this Section II.D.

1. _Settlements Permitted at Any Stage of ADR Procedures_

Designated Claims may be settled by the City and a Designated Claimant before or during the Offer Exchange Procedures, Case Evaluation or any arbitration proceeding, or at any other point in the process. Nothing herein shall prevent the parties from settling any claim at any time.

2. _Release_

All settlements shall include a release of all claims relating to the underlying occurrence, including the Designated Claim and the Designated Claimant's claim against any other party with respect to whom the Stay applies pursuant to sections 362 and 922 of the Bankruptcy Code or orders of the Bankruptcy Court.

3. _Settlement Reporting_

By no later than the 91st day following the General Bar Date or as soon thereafter as reasonably practicable, and every 91 days thereafter, the City will file a report with the Bankruptcy Court that identifies all Designated Claims and the status of each such Designated Claim as it moves through the stages of these ADR Procedures.

4. _Satisfaction of Any Settlement or Award_

Payment of any settlement or award on account of any Designated Claim arising prior to the Petition Date shall be in the form of an allowed general unsecured nonpriority claim to be paid in the amount and form as set forth in the Chapter 9 Plan, except (a) as otherwise agreed by the City; or (b) with respect to the priority of the claim, as determined by the Bankruptcy Court as provided in Section II.D above. Notwithstanding the foregoing, nothing herein shall limit, expand or otherwise modify the City's authority to settle or pay claims or the City's authority over its property and revenues under section 904 of the Bankruptcy Code. The authority to settle Designated Claims pursuant to the ADR Procedures will be

in addition to, and cumulative with, any existing authority to resolve claims against the City.

## E. Failure to Resolve a Designated Claim Through ADR Procedures

1. *Liquidation of Unresolved Designated Claims in Bankruptcy Court*

Designated Claims not resolved through the ADR Procedures ("Unresolved Designated Claims") shall proceed to litigation to be liquidated. Unless the City agrees otherwise, liquidation of any Unresolved Designated Claim shall proceed in the Bankruptcy Court (to the extent that the Bankruptcy Court has subject matter jurisdiction over the Unresolved Designated Claim) as soon as practicable following the date that the ADR Procedures are concluded for an Unresolved Designated Claim (the "ADR Completion Date").[9] Such litigation will be initiated by the filing of a claim objection by the City (a "Claim Objection") within 35 days after the ADR Completion Date (the "Claim Objection Deadline"). Disputes over the subject matter jurisdiction of the Bankruptcy Court shall be determined by the Bankruptcy Court, and the Designated Claimants shall retain whatever rights they have to seek withdrawal of the reference, abstention or other procedural relief in connection with a Claim Objection. *For the avoidance of doubt, consistent with 28 U.S.C. § 157(b)(5), personal injury tort and wrongful death claims shall not be heard by the Bankruptcy Court and shall be subject to Section II.E.2 below.*

2. *Liquidation of Unresolved Designated Claims in Other Courts*

If the Unresolved Designated Claim cannot be adjudicated in the Bankruptcy Court because of lack of, or limitations upon, subject matter jurisdiction or if the City does not file a Claim Objection by the Claim Objection Deadline (any such claim, a "Non-Bankruptcy Claim"), then liquidation of any such Non-Bankruptcy Claim shall proceed in either (a) the non-bankruptcy forum in which the Non-Bankruptcy Claim was pending on the Petition Date, if any,

---

[9]    With respect to Unresolved Designated Claims, the ADR Completion Date will be the Case Evaluation Termination Date except where the the ADR Procedures are terminated sooner, such as where Case Evaluation was conducted with respect to a Designated Claim prior to the Petition Date, and the parties do not agree to conduct a second round of Case Evaluation. In that instance, the ADR Completion Date will be the Offer Exchange Termination Date.

subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Non-Bankruptcy Claim was not pending in any forum on the Petition Date, then in the United States District Court for the Eastern District of Michigan or such other nonbankruptcy forum selected by the Designated Claimant that (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the Non-Bankruptcy Claim, (iii) has *in rem* jurisdiction over the property involved in the Non-Bankruptcy Claim (if applicable) and (iv) is a proper venue. If necessary, any disputes regarding the application of this Section II.E.2 shall be determined by the Bankruptcy Court; provided that disputes about the jurisdiction of a matter presented to a non-bankruptcy court may be determined by such court.

The Stay or any subsequent Plan Injunction (together, the "Stay/Injunction") shall be deemed modified solely for the purpose of, and to the extent necessary for, liquidating Non-Bankruptcy Claims in an appropriate non-bankruptcy forum (as applicable under these ADR Procedures) unless, within 35 days of the ADR Completion Date, the City files a notice (a "Stay Notice") that it intends for the Stay/Injunction to remain in effect with respect to a Non-Bankruptcy Claim. If the City files a Stay Notice as set forth above, the Stay/Injunction shall remain in place, and the applicable Designated Claimant may seek relief from the Stay/Injunction under the standards set forth in section 362(d) of the Bankruptcy Code.

Notwithstanding anything herein, the City and any Designated Claimant may agree to terminate the ADR Procedures at any time and proceed to litigation of the applicable Designated Claim, as set forth herein.

## F. Duty to Negotiate in Good Faith

During the period of the ADR Procedures, the Designated Claimant and the City shall negotiate in good faith in an attempt to reach an agreement for the compromise of the applicable Designated Claim.

## G. Failure to Comply with the ADR Procedures

If a Designated Claimant fails to comply with the ADR Procedures, negotiate in good faith or cooperate with the City as may be necessary to effectuate the ADR Procedures, the Bankruptcy Court may, after notice and a hearing, find such conduct to be in violation of the ADR Order or an abandonment of or failure to prosecute the Designated Claim, or both. Upon such findings, the Bankruptcy Court may, among other things, disallow and expunge the Designated Claim, in whole or part, or grant such other or further remedy deemed just and appropriate

under the circumstances, including, without limitation, awarding attorneys' fees, other fees and costs to the City.

Dated: [_____], 2013                    BY ORDER OF THE COURT

# ANNEX I

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
-----------------------------------------------------x
                                          :
In re                                     :          Chapter 9
                                          :
CITY OF DETROIT, MICHIGAN,                :          Case No. 13-53846
                                          :
                        Debtor.           :          Hon. Steven W. Rhodes
                                          :
                                          :
-----------------------------------------------------x
```

## ADR NOTICE

Service Date:

Designated Claimant(s):

Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

**Deadline to Respond:**

By this ADR Notice, the City of Detroit (the "<u>City</u>") hereby submits the above-identified claim(s) (the "<u>Designated Claim(s)</u>") in the City's chapter 9 case to alternative dispute resolution, pursuant to the procedures (the "<u>ADR Procedures</u>") established by the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims, entered by the United States Bankruptcy Court for the Eastern District of Michigan (the "<u>Bankruptcy Court</u>") on [_____], 2013. A copy of the ADR Procedures is enclosed for your reference.

The City has reviewed your Designated Claim(s) and, pursuant to the ADR Procedures, offers the amount(s) set forth below as a general unsecured

nonpriority claim in full and final settlement of your Designated Claim(s) (the "Settlement Offer").

You are required to return this ADR Notice with a Permitted Response (as defined below) to the Settlement Offer by no later than the **Deadline to Respond** indicated above.

In addition, to the extent your most recent proof(s) of claim does not: (a) state the correct amount of your Designated Claim(s); (b) expressly identify each and every cause of action and legal theory on which you base your Designated Claim(s); (c) include current, correct and complete contact information of your counsel or other representative; or (d) provide all documents on which you rely in support of your Designated Claim(s), you hereby are requested to provide all such information and documentation with your Permitted Response.

IF YOU DO NOT RETURN THIS ADR NOTICE WITH THE REQUESTED INFORMATION AND A PERMITTED RESPONSE TO THE SETTLEMENT OFFER TO **[INSERT THE CITY'S REPRESENTATIVE]** SO THAT IT IS RECEIVED BY THE DEADLINE TO RESPOND, YOU WILL BE DEEMED TO HAVE REJECTED THE SETTLEMENT OFFER AND THE LIQUIDATION OF YOUR DESIGNATED CLAIMS WILL ADVANCE TO CASE EVALUATION AS SET FORTH IN SECTION II.B OF THE ADR PROCEDURES.

IN ADDITION, YOU ARE REQUIRED TO INDICATE EXPRESSLY WHETHER YOU CONSENT TO **BINDING ARBITRATION** YOUR DESIGNATED CLAIM CANNOT BE SETTLED THROUGH THE OFFER EXCHANGE PROCEDURES OR CASE EVALUATION. PLEASE COMPLETE THE APPROPRIATE BOX BELOW TO INDICATE WHETHER YOU DO OR DO NOT CONSENT TO **BINDING ARBITRATION**. *IF YOU DO NOT COMPLETE THE BOX BELOW, YOU WILL BE DEEMED TO HAVE REJECTED BINDING ARBITRATION WITH RESPECT TO YOUR DESIGNATED CLAIM.* PLEASE NOTE THAT YOUR CONSENT TO **BINDING ARBITRATION** CANNOT SUBSEQUENTLY BE WITHDRAWN.

*In addition, any attempt to opt out of binding arbitration in the response to this Notice shall be ineffective if you previously have consented in writing (either prepetition or postpetition) to binding arbitration as a means to resolve your claim(s). Details about the arbitration process, including the sharing of fees, are set forth in Section II.C of the ADR Procedures.*

Note that binding arbitration will only take place if **all parties** to a claim dispute – including the City – agree to submit the dispute to arbitration. **[Optional:  May add statement about the City's consent to binding arbitration, if desired.]**

YOU MUST RESPOND TO THE FOLLOWING SETTLEMENT OFFER:

**Settlement Offer**:  The City offers you an allowed general unsecured nonpriority claim in the amount of **[$_____]** against the City in full satisfaction of your Designated Claim(s), to be satisfied in accordance with any plan of adjustment of debts confirmed and implemented in the City's chapter 9 case.

The only permitted responses (the "<u>Permitted Responses</u>") to the Settlement Offer are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (a "<u>Counteroffer</u>").  Accordingly, please select your Permitted Response below:

<table>
<tr><td>

_____ I/we agree to and accept the terms of the Settlement Offer.

**<u>or</u>**

_____ I/we reject the Settlement Offer.  However, I/we will accept an allowed general unsecured claim against the City in the amount of $_____ in full satisfaction of the Designated Claim(s), to be satisfied in accordance with any plan of adjustment of debts confirmed and implemented in the City's chapter 9 case.

</td></tr>
</table>

SECTION II.A.3 OF THE ADR PROCEDURES SETS FORTH THE RESTRICTIONS ON COUNTEROFFERS.  YOUR COUNTEROFFER MAY NOT INCLUDE UNKNOWN, UNLIQUIDATED OR SIMILAR AMOUNTS AND MAY NOT EXCEED THE AMOUNT OR IMPROVE THE PRIORITY SET FORTH IN YOUR MOST RECENT TIMELY FILED OR AMENDED PROOF OF CLAIM.  YOU MAY NOT AMEND YOUR PROOF OF CLAIM SOLELY FOR THE PURPOSE OF PROPOSING A COUNTEROFFER OF A HIGHER AMOUNT OR A BETTER PRIORITY.  IF YOU RETURN THIS FORM WITH A COUNTEROFFER THAT DOES NOT COMPLY WITH THE TERMS OF THE ADR PROCEDURES YOU WILL BE DEEMED TO HAVE REJECTED THE SETTLEMENT OFFER AND THE LIQUIDATION OF YOUR

DESIGNATED CLAIMS WILL ADVANCE TO CASE EVALUATION AS SET FORTH IN SECTION II.B OF THE ADR PROCEDURES.

---

Please indicate below whether you consent to binding arbitration with respect to the Designated Claim(s):

_____ I/WE **CONSENT** TO BINDING ARBITRATION.

_____ I/WE **DO NOT CONSENT** TO BINDING ARBITRATION.

I acknowledge that my/our consent to binding arbitration, once given, cannot be withdrawn.

---

[Signature of the Designated Claimant's Authorized Representative]

By: _____
[Printed Name]


**[N.B. – Additional Signature Lines as Needed.]**

[Signature of the Designated Claimant's Authorized Representative]

By: _____
[Printed Name]

# ANNEX II

# Rule 2.403 Case Evaluation

(A) Scope and Applicability of Rule.

(1) A court may submit to case evaluation any civil action in which the relief sought is primarily money damages or division of property.

(2) Case evaluation of tort cases filed in circuit court is mandatory beginning with actions filed after the effective dates of Chapters 49 and 49A of the Revised Judicature Act, as added by 1986 PA 178.

(3) A court may exempt claims seeking equitable relief from case evaluation for good cause shown on motion or by stipulation of the parties if the court finds that case evaluation of such claims would be inappropriate.

(4) Cases filed in district court may be submitted to case evaluation under this rule. The time periods set forth in subrules (B)(1), (G)(1), (L)(1) and (L)(2) may be shortened at the discretion of the district judge to whom the case is assigned.

(B) Selection of Cases.

(1) The judge to whom an action is assigned or the chief judge may select it for case evaluation by written order after the filing of the answer

(a) on written stipulation by the parties,

(b) on written motion by a party, or

(c) on the judge's own initiative.

(2) Selection of an action for case evaluation has no effect on the normal progress of the action toward trial.

(C) Objections to Case Evaluation.

(1) To object to case evaluation, a party must file a written motion to remove from case evaluation and a notice of hearing of the motion and serve a copy on the attorneys of record and the ADR clerk within 14 days after notice of the order assigning the action to case evaluation. The motion must be set for hearing within 14 days after it is filed, unless the court orders otherwise.

(2) A timely motion must be heard before the case is submitted to case evaluation.

(D) Case Evaluation Panel.

(1) Case evaluation panels shall be composed of 3 persons.

(2) The procedure for selecting case evaluation panels is as provided in MCR 2.404.

(3) A judge may be selected as a member of a case evaluation panel, but may not preside at the trial of any action in which he or she served as a case evaluator.

(4) A case evaluator may not be called as a witness at trial.

(E) Disqualification of Case Evaluators. The rule for disqualification of a case evaluator is the same as that provided in MCR 2.003 for the disqualification of a judge.

(F) ADR Clerk. The court shall designate the ADR clerk specified under MCR 2.410, or some other person, to administer the case evaluation program. In this rule and MCR 2.404, "ADR clerk" refers to the person so designated.

(G) Scheduling Case Evaluation Hearing.

(1) The ADR clerk shall set a time and place for the hearing and send notice to the case evaluators and the attorneys at least 42 days before the date set.

(2) Adjournments may be granted only for good cause, in accordance with MCR 2.503.

(H) Fees.

(1) Each party must send a check for $75 made payable in the manner and within the time specified in the notice of the case evaluation hearing. However, if a judge is a member of the panel, the fee is $50. If the order for case evaluation directs that payment be made to the ADR clerk, the ADR clerk shall arrange payment to the case evaluators. Except by stipulation and court order, the parties may not make any other payment of fees or expenses to the case evaluators than that provided in this subrule.

(2) Only a single fee is required of each party, even where there are counterclaims, cross-claims, or third-party claims. A person entitled to a fee waiver under MCR 2.002 is entitled to a waiver of fees under this rule.

(3) If one claim is derivative of another (e.g., husband-wife, parent-child) they must be treated as a single claim, with one fee to be paid and a single award made by the case evaluators.

(4) Fees paid pursuant to subrule (H) shall be refunded to the parties if

(a) the court sets aside the order submitting the case to case evaluation or on its own initiative adjourns the case evaluation hearing, or

(b) the parties notify the ADR clerk in writing at least 14 days before the case evaluation hearing of the settlement, dismissal, or entry of judgment disposing of the action, or of an order of adjournment on stipulation or the motion of a party.

If case evaluation is rescheduled at a later time, the fee provisions of subrule (H) apply regardless of whether previously paid fees have been refunded.

(5) Fees paid pursuant to subrule (H) shall not be refunded to the parties if

(a)  in the case of an adjournment, the adjournment order sets a new date for case evaluation and the fees are applied to the new date, or

(b)  the request for and granting of adjournment is made within 14 days of the scheduled case evaluation, unless waived for good cause.

Penalties for late filing of papers under subrule (I)(2) are not to be refunded.

13-53846-tjt  Doc 1664  Filed 08/19/16  Entered 08/19/16 12:25:18  Page 88 of 263

(I) Submission of Summary and Supporting Documents.

(1) Unless otherwise provided in the notice of hearing, at least 14 days before the hearing, each party shall

(a) serve a copy of the case evaluation summary and supporting documents in accordance with MCR 2.107, and

(b) file a proof of service and three copies of a case evaluation summary and supporting documents with the ADR clerk.

(2) Each failure to timely file and serve the materials identified in subrule (1) and each subsequent filing of supplemental materials within 14 days of the hearing, subjects the offending attorney or party to a $150 penalty to be paid in the manner specified in the notice of the case evaluation hearing. An offending attorney shall not charge the penalty to the client, unless the client agreed in writing to be responsible for the penalty.

(3) The case evaluation summary shall consist of a concise summary setting forth that party's factual and legal position on issues presented by the action. Except as permitted by the court, the summary shall not exceed 20 pages double spaced, exclusive of attachments. Quotations and footnotes may be single spaced. At least one inch margins must be used, and printing shall not be smaller than 12-point font.

(J) Conduct of Hearing.

(1) A party has the right, but is not required, to attend a case evaluation hearing. If scars, disfigurement, or other unusual conditions exist, they may be demonstrated to the panel by a personal appearance; however, no testimony will be taken or permitted of any party.

(2) The rules of evidence do not apply before the case evaluation panel. Factual information having a bearing on damages or liability must be supported by documentary evidence, if possible.

(3) Oral presentation shall be limited to 15 minutes per side unless multiple parties or unusual circumstances warrant additional time. Information on settlement negotiations not protected under MCR 2.412 and applicable insurance policy limits shall be disclosed at the request of the case evaluation panel.

(4) Statements by the attorneys and the briefs or summaries are not admissible in any court or evidentiary proceeding.

(5) Counsel or the parties may not engage in ex parte communications with the case evaluators concerning the action prior to the hearing. After the evaluation, the case evaluators need not respond to inquiries by the parties or counsel regarding the proceeding or the evaluation.

(K) Decision.

13-58846-tjt Doc 1445 Filed 08/19/16 Entered 08/19/16 12:35:48 Page 79 of 263

(1) Within 14 days after the hearing, the panel will make an evaluation and notify the attorney for each party of its evaluation in writing. If an award is not unanimous, the evaluation must so indicate.

(2) Except as provided in subrule (H)(3), the evaluation must include a separate award as to each plaintiff's claim against each defendant and as to each cross-claim, counterclaim, or third-party claim that has been filed in the action. For the purpose of this subrule, all such claims filed by any one party against any other party shall be treated as a single claim.

(3) The evaluation may not include a separate award on any claim for equitable relief, but the panel may consider such claims in determining the amount of an award.

(4) In a tort case to which MCL 600.4915(2) or MCL 600.4963(2) applies, if the panel unanimously finds that a party's action or defense as to any other party is frivolous, the panel shall so indicate on the evaluation. For the purpose of this rule, an action or defense is "frivolous" if, as to all of a plaintiff's claims or all of a defendant's defenses to liability, at least 1 of the following conditions is met:

   (a) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the opposing party.

   (b) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

   (c) The party's legal position was devoid of arguable legal merit.

(5) In an action alleging medical malpractice to which MCL 600.4915 applies, the evaluation must include a specific finding that

   (a) there has been a breach of the applicable standard of care,

   (b) there has not been a breach of the applicable standard of care, or

   (c) reasonable minds could differ as to whether there has been a breach of the applicable standard of care.

(L) Acceptance or Rejection of Evaluation.

(1) Each party shall file a written acceptance or rejection of the panel's evaluation with the ADR clerk within 28 days after service of the panel's evaluation. Even if there are separate awards on multiple claims, the party must either accept or reject the evaluation in its entirety as to a particular opposing party. The failure to file a written acceptance or rejection within 28 days constitutes rejection.

(2) There may be no disclosure of a party's acceptance or rejection of the panel's evaluation until the expiration of the 28-day period, at which time the ADR clerk shall send a notice indicating each party's acceptance or rejection of the panel's evaluation.

(3) In case evaluations involving multiple parties the following rules apply:

   (a) Each party has the option of accepting all of the awards covering the claims by or against that party or of accepting some and rejecting others.

However, as to any particular opposing party, the party must either accept or reject the evaluation in its entirety.

(b) A party who accepts all of the awards may specifically indicate that he or she intends the acceptance to be effective only if

(i) all opposing parties accept, and/or

(ii) the opposing parties accept as to specified coparties.

If such a limitation is not included in the acceptance, an accepting party is deemed to have agreed to entry of judgment, or dismissal as provided in subrule (M)(1), as to that party and those of the opposing parties who accept, with the action to continue between the accepting party and those opposing parties who reject.

(c) If a party makes a limited acceptance under subrule (L)(3)(b) and some of the opposing parties accept and others reject, for the purposes of the cost provisions of subrule (O) the party who made the limited acceptance is deemed to have rejected as to those opposing parties who accept.

(M) Effect of Acceptance of Evaluation.

(1) If all the parties accept the panel's evaluation, judgment will be entered in accordance with the evaluation, unless the amount of the award is paid within 28 days after notification of the acceptances, in which case the court shall dismiss the action with prejudice. The judgment or dismissal shall be deemed to dispose of all claims in the action and includes all fees, costs, and interest to the date it is entered, except for cases involving rights to personal protection insurance benefits under MCL 500.3101 *et seq.*, for which judgment or dismissal shall not be deemed to dispose of claims that have not accrued as of the date of the case evaluation hearing.

(2) If only a part of an action has been submitted to case evaluation pursuant to subrule (A)(3) and all of the parties accept the panel's evaluation, the court shall enter an order disposing of only those claims.

(3)In a case involving multiple parties, judgment, or dismissal as provided in subrule (1), shall be entered as to those opposing parties who have accepted the portions of the evaluation that apply to them.

(N) Proceedings After Rejection.

(1) If all or part of the evaluation of the case evaluation panel is rejected, the action proceeds to trial in the normal fashion.

(2) If a party's claim or defense was found to be frivolous under subrule (K)(4), that party may request that the court review the panel's finding by filing a motion within 14 days after the ADR clerk sends notice of the rejection of the case evaluation award.

(a) The motion shall be submitted to the court on the case evaluation summaries and documents that were considered by the case evaluation panel. No other exhibits or testimony may be submitted. However, oral argument on the motion shall be permitted.

(b) After reviewing the materials submitted, the court shall determine whether the action or defense is frivolous.

(c) If the court agrees with the panel's determination, the provisions of subrule (N)(3) apply, except that the bond must be filed within 28 days after the entry of the court's order determining the action or defense to be frivolous.

(d) The judge who hears a motion under this subrule may not preside at a nonjury trial of the action.

(3) Except as provided in subrule (2), if a party's claim or defense was found to be frivolous under subrule (K)(4), that party shall post a cash or surety bond, pursuant to MCR 3.604, in the amount of $5,000 for each party against whom the action or defense was determined to be frivolous.

(a) The bond must be posted within 56 days after the case evaluation hearing or at least 14 days before trial, whichever is earlier.

(b) If a surety bond is filed, an insurance company that insures the defendant against a claim made in the action may not act as the surety.

(c) If the bond is not posted as required by this rule, the court shall dismiss a claim found to have been frivolous, and enter the default of a defendant whose defense was found to be frivolous. The action shall proceed to trial as to the remaining claims and parties, and as to the amount of damages against a defendant in default.

(d) If judgment is entered against the party who posted the bond, the bond shall be used to pay any costs awarded against that party by the court under any applicable law or court rule. MCR 3.604 applies to proceedings to enforce the bond.

(4) The ADR clerk shall place a copy of the case evaluation and the parties' acceptances and rejections in a sealed envelope for filing with the clerk of the court. In a nonjury action, the envelope may not be opened and the parties may not reveal the amount of the evaluation until the judge has rendered judgment.

(O) Rejecting Party's Liability for Costs.

(1) If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

(2) For the purpose of this rule "verdict" includes,

(a) a jury verdict,

(b) a judgment by the court after a nonjury trial,

(c) a judgment entered as a result of a ruling on a motion after rejection of the case evaluation.

CHAPTER 2                    CIVIL PROCEDURE                    Chapter Last Updated
10/15/2013

13-53846-tjt   Doc 1664   Filed 08/19/16   Entered 08/19/16 12:35:18   Page 92 of 263
13-53846-tjt   Doc 1664   Filed 08/19/16   Entered 08/19/16 12:35:18   Page 92 of 263    88

(3) For the purpose of subrule (O)(1), a verdict must be adjusted by adding to it assessable costs and interest on the amount of the verdict from the filing of the complaint to the date of the case evaluation, and, if applicable, by making the adjustment of future damages as provided by MCL 600.6306. After this adjustment, the verdict is considered more favorable to a defendant if it is more than 10 percent below the evaluation, and is considered more favorable to the plaintiff if it is more than 10 percent above the evaluation. If the evaluation was zero, a verdict finding that a defendant is not liable to the plaintiff shall be deemed more favorable to the defendant.

(4) In cases involving multiple parties, the following rules apply:

(a) Except as provided in subrule (O)(4)(b), in determining whether the verdict is more favorable to a party than the case evaluation, the court shall consider only the amount of the evaluation and verdict as to the particular pair of parties, rather than the aggregate evaluation or verdict as to all parties. However, costs may not be imposed on a plaintiff who obtains an aggregate verdict more favorable to the plaintiff than the aggregate evaluation.

(b) If the verdict against more than one defendant is based on their joint and several liability, the plaintiff may not recover costs unless the verdict is more favorable to the plaintiff than the total case evaluation as to those defendants, and a defendant may not recover costs unless the verdict is more favorable to that defendant than the case evaluation as to that defendant.

(c) Except as provided by subrule (O)(10), in a personal injury action, for the purpose of subrule (O)(1), the verdict against a particular defendant shall not be adjusted by applying that defendant's proportion of fault as determined under MCL 600.6304(1)-(2).

(5) If the verdict awards equitable relief, costs may be awarded if the court determines that

(a) taking into account both monetary relief (adjusted as provided in subrule [O][3]) and equitable relief, the verdict is not more favorable to the rejecting party than the evaluation, or, in situations where both parties have rejected the evaluation, the verdict in favor of the party seeking costs is more favorable than the case evaluation, and

(b) it is fair to award costs under all of the circumstances.

(6) For the purpose of this rule, actual costs are

(a) those costs taxable in any civil action, and

(b) a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation.

For the purpose of determining taxable costs under this subrule and under MCR 2.625, the party entitled to recover actual costs under this rule shall be considered the prevailing party.

(7) Costs shall not be awarded if the case evaluation award was not unanimous. If case evaluation results in a nonunanimous award, a case may be ordered to a subsequent case evaluation hearing conducted without reference to the prior case evaluation award, or other alternative dispute resolution processes, at the expense of the parties, pursuant to MCR 2.410(C)(1).

(8) A request for costs under this subrule must be filed and served within 28 days after the entry of the judgment or entry of an order denying a timely motion for a new trial or to set aside the judgment.

(9) In an action under MCL 436.1801, if the plaintiff rejects the award against the minor or alleged intoxicated person, or is deemed to have rejected such an award under subrule (L)(3)(c), the court shall not award costs against the plaintiff in favor of the minor or alleged intoxicated person unless it finds that the rejection was not motivated by the need to comply with MCL 436.1801(6).

(10) For the purpose of subrule (O)(1), in an action filed on or after March 28, 1996, and based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, a verdict awarding damages shall be adjusted for relative fault as provided by MCL 600.6304.

(11) If the "verdict" is the result of a motion as provided by subrule (O)(2)(c), the court may, in the interest of justice, refuse to award actual costs.

## Rule 2.404 Selection of Case Evaluation Panels

(A) Case Evaluator Selection Plans.

(1) Requirement. Each trial court that submits cases to case evaluation under MCR 2.403 shall adopt by local administrative order a plan to maintain a list of persons available to serve as case evaluators and to assign case evaluators from the list to panels. The plan must be in writing and available to the public in the ADR clerk's office.

(2) Alternative Plans.

(a) A plan adopted by a district or probate court may use the list of case evaluators and appointment procedure of the circuit court for the circuit in which the court is located.

(b) Courts in adjoining circuits or districts may jointly adopt and administer a case evaluation plan.

(c) If it is not feasible for a court to adopt its own plan because of the low volume of cases to be submitted or because of inadequate numbers of available case evaluators, the court may enter into an agreement with a neighboring court to refer cases for case evaluation under the other court's system. The agreement may provide for payment by the referring court to cover the cost of administering case evaluation. However, fees and costs may not be assessed against the parties to actions evaluated except as provided by MCR 2.403.

(d) Other alternative plans must be submitted as local court rules under MCR 8.112(A).

(B) Lists of Case Evaluators.

(1) Application. An eligible person desiring to serve as a case evaluator may apply to the ADR clerk to be placed on the list of case evaluators. Application forms shall be available in the office of the ADR clerk. The form shall include an optional section identifying the applicant's gender and racial/ethnic background. The form shall include a certification that

(a) the case evaluator meets the requirements for service under the court's selection plan, and

(b) the case evaluator will not discriminate against parties, attorneys, or other case evaluators on the basis of race, ethnic origin, gender, or other protected personal characteristic.

(2) Eligibility. To be eligible to serve as a case evaluator, a person must meet the qualifications provided by this subrule.

(a) The applicant must have been a practicing lawyer for at least 5 years and be a member in good standing of the State Bar of Michigan. The plan may not require membership in any other organization as a qualification for service as a case evaluator.

(b) An applicant must reside, maintain an office, or have an active practice in the jurisdiction for which the list of case evaluators is compiled.

(c) An applicant must demonstrate that a substantial portion of the applicant's practice for the last 5 years has been devoted to civil litigation matters, including investigation, discovery, motion practice, case evaluation, settlement, trial preparation, and/or trial.

(d) If separate sublists are maintained for specific types of cases, the applicant must have had an active practice in the practice area for which the case evaluator is listed for at least the last 3 years.

If there are insufficient numbers of potential case evaluators meeting the qualifications stated in this rule, the plan may provide for consideration of alternative qualifications.

(3) Review of Applications. The plan shall provide for a person or committee to review applications annually, or more frequently if appropriate, and compile one or more lists of qualified case evaluators. Persons meeting the qualifications specified in this rule shall be placed on the list of approved case evaluators. Selections shall be made without regard to race, ethnic origin, or gender.

(a) If an individual performs this review function, the person must be an employee of the court.

(b) If a committee performs this review function, the following provisions apply.

(i) The committee must have at least three members.

(ii) The selection of committee members shall be designed to assure that the goals stated in subrule (D)(2) will be met.

(iii) A person may not serve on the committee more than 3 years in any 9 year period.

(c) Applicants who are not placed on the case evaluator list or lists shall be notified of that decision. The plan shall provide a procedure by which such an applicant may seek reconsideration of the decision by some other person or committee. The plan need not provide for a hearing of any kind as part of the reconsideration process. Documents considered in the initial review process shall be retained for at least the period of time during which the applicant can seek reconsideration of the original decision.

(4) Specialized Lists. If the number and qualifications of available case evaluators makes it practicable to do so, the ADR clerk shall maintain

(a) separate lists for various types of cases, and,

(b) where appropriate for the type of cases, separate sublists of case evaluators who primarily represent plaintiffs, primarily represent defendants, and neutral case evaluators whose practices are not identifiable as representing primarily plaintiffs or defendants.

(5) Reapplication. Persons shall be placed on the list of case evaluators for a fixed period of time, not to exceed seven years, and must reapply at the end of that time in the manner directed by the court.

(6) Availability of Lists. The list of case evaluators must be available to the public in the ADR clerk's office.

(7) Removal from List. The plan must include a procedure for removal from the list of case evaluators who have demonstrated incompetency, bias, made themselves consistently unavailable to serve as a case evaluator, or for other just cause.

(8) The court may require case evaluators to attend orientation or training sessions or provide written materials explaining the case evaluation process and the operation of the court's case evaluation program. However, case evaluators may not be charged any fees or costs for such programs or materials.

(C) Assignments to Panels.

(1) Method of Assignment. The ADR clerk shall assign case evaluators to panels in a random or rotating manner that assures as nearly as possible that each case evaluator on a list or sublist is assigned approximately the same number of cases over a period of time. If a substitute case evaluator must be assigned, the same or similar assignment procedure shall be used to select the substitute. The ADR clerk shall maintain records of service of case evaluators on panels and shall make those records available on request.

(2) Assignment from Sublists. If sublists of plaintiff, defense, and neutral case evaluators are maintained for a particular type of case, the panel shall include one case evaluator who primarily represents plaintiffs, one case evaluator who primarily represents defendants, and one neutral case evaluator. If a judge is assigned to a panel as permitted by MCR 2.403(D)(3), the judge shall serve as the neutral case evaluator if sublists are maintained for that class of cases.

(3) Special Panels. On stipulation of the parties, the court may appoint a panel selected by the parties. In such a case, the qualification requirements of subrule (B)(2) do not apply, and the parties may agree to modification of the procedures for conduct of case evaluation. Nothing in this rule or MCR 2.403 precludes parties from stipulating to other ADR procedures that may aid in resolution of the case.

(D) Supervision of Selection Process.

(1) The chief judge shall exercise general supervision over the implementation of this rule and shall review the operation of the court's case evaluation plan at least annually to assure compliance with this rule. In the event of noncompliance, the court shall take such action as is needed. This action may include recruiting persons to serve as case evaluators or changing the court's case evaluation plan.

(2) In implementing the selection plan, the court, court employees, and attorneys involved in the procedure shall take all steps necessary to assure that as far as reasonably possible the list of case evaluators fairly reflects the racial, ethnic, and gender diversity of the members of the state bar in the jurisdiction for which the list is compiled who are eligible to serve as case evaluators.

# ANNEX III

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
-----------------------------------------------------x
                                    :
In re                               :          Chapter 9
                                    :
CITY OF DETROIT, MICHIGAN,          :          Case No. 13-53846
                                    :
                        Debtor.     :          Hon. Steven W. Rhodes
                                    :
                                    :
-----------------------------------------------------x
```

## CASE EVALUATION NOTICE

Service Date:

Claimant(s):

Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

       By this Case Evaluation Notice, the City of Detroit (the "City") hereby submits the above-identified claim(s) (the "Designated Claim(s)") in the City's chapter 9 case to **case evaluation**, pursuant to the procedures (the "ADR Procedures") established by the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims, entered by the United States Bankruptcy Court for the Eastern District of Michigan on [_____], 2013. The City has been unable to resolve your Designated Claim(s) on a consensual basis through the offer exchange component of the ADR Procedures. THEREFORE, YOUR DESIGNATED CLAIM(S) WILL PROCEED TO CASE EVALUATION, PURSUANT TO THE ADR PROCEDURES.

       In accordance with the ADR Procedures, a copy of this Case Evaluation Notice has been served upon the Clerk (the "ADR Clerk") of the

Wayne County Mediation Tribunal Association (the "MTA"). As described more fully in the ADR Procedures, the ADR Clerk will select a panel of three evaluators to conduct the case evaluation, set a time and place for the case evaluation hearing and provide you with at least 42 days notice of the hearing. Adjournments of the case evaluation hearing may be granted only for good cause. The ADR Procedures also require you and the City to share the administrative fees and costs of case evaluation charged by the mediation.

A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section II.B of the ADR Procedures, concerning **case evaluation**.

[Signature of the City's Authorized Person]

# ANNEX IV

CLI-2154344v13

13-53846-tjt   Doc 14454   Filed 08/19/16   Entered 08/19/16 12:25:13   Page 101 of 92
13-53846-tjt   Doc 1665   Filed 11/12/13   Entered 11/12/13 14:33:43   Page 90 of 92

263

97

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

-------------------------------------------------------x
:
In re                                                 :          Chapter 9
:
CITY OF DETROIT, MICHIGAN,                            :          Case No. 13-53846
:
                              Debtor.                  :          Hon. Steven W. Rhodes
:
:
-------------------------------------------------------x


## <u>ARBITRATION NOTICE</u>

Service Date:

Claimant(s):

Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:


          By this Arbitration Notice, the City of Detroit (the "<u>City</u>") hereby
submits the above-identified claim(s) (the "<u>Designated Claim(s)</u>") in the City's
chapter 9 case to **binding arbitration**, pursuant to the procedures (the "<u>ADR</u>
<u>Procedures</u>") established by the Order, Pursuant to Sections 105 and 502 of the
Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to
Promote the Liquidation of Certain Prepetition Claims, entered by the United
States Bankruptcy Court for the Eastern District of Michigan on **[_____]**, 2013.
The City has been unable to resolve your Designated Claim(s) on a consensual
basis through the offer exchange component of the ADR Procedures or through
case evaluation.  THE CITY **[PREVIOUSLY HAS CONSENTED]/[HEREBY**
**CONSENTS]** TO BINDING ARBITRATION OF THE DESIGNATED
CLAIM(S).  YOU PREVIOUSLY HAVE CONSENTED TO BINDING
ARBITRATION.  THEREFORE, YOUR DESIGNATED CLAIM(S) WILL

CLI-2154344v13

13-53846-tjt   Doc 14454   Filed 08/19/16   Entered 08/19/16 14:20:13   Page 102 of 92
13-53846-tjt   Doc 1665   Filed 11/12/13   Entered 11/12/13 14:36:43   Page 101 of 92
263                                                                                  98

PROCEED TO BINDING ARBITRATION, PURSUANT TO THE ADR
PROCEDURES.

In accordance with the ADR Procedures, a copy of this Arbitration
Notice has been served upon the Clerk (the "ADR Clerk") of the Wayne County
Mediation Tribunal Association (the "MTA").  As described more fully in the
ADR Procedures, the ADR Clerk will select an arbitrator to conduct the arbitration
hearing and provide notice to you and the arbitrator of his or her appointment.
All arbitration hearings are scheduled by the arbitrator, in consultation with the
parties and are conducted in Detroit, Michigan unless otherwise agreed by all of
the parties and the arbitrator.  Generally, the arbitration hearing must be held no
later than 112 days after the date of appointment of the arbitrator.  The ADR
Procedures also require you and the City to share the administrative fees and costs
of arbitration charged by the MTA.

A complete copy of the ADR Procedures is enclosed for your
reference.  Please refer to Section II.C of the ADR Procedures, concerning **binding
arbitration**.

[Signature of the City's Authorized Person]

CLI-2154344v13

-2-

13-53846-tjt   Doc 14654   Filed 08/19/16   Entered 08/19/16 14:25:13   Page 103 of 92
13-53846-tjt   Doc 1665   Filed 11/12/13   Entered 11/12/13 14:36:43   Page 2 of 92
263

99

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN,

                Debtor,

Chapter 9

Case No. 13-53846

Hon. Steven Rhodes

**FILED 2013 DEC 19 P 4:00 U.S. BANKRUPTCY COURT E.D. MICHIGAN DETROIT**

## PREPETITION CLAIMANT'S OBJECTION TO DEBTOR'S MOTION FOR AN ODER APPROVING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES TO PROMOTE THE LIQUIDATION OF CERTAIN PREPETITION CLAIMS

Eric Kimbrough, Leinathian Jelks, Brandon Brooks, Phyllis Tharpe, Rodney Heard, Clenette Harris, Gregory Brazell, Jennifer Harris-Barnes, Henry Hassan, Melvin Miller, Terry Hardison, Velma, Denson, Raymond Thompson, Lucy Flowers, Brandon Gilbert, Brady Johnson, Quentin King, Sharon Pettway, Taralyn Smith, Donna Weatherspoon, Tarita Wilburn, Joseph Wright, Laverne Covington, James Matson, Kevin McGillivary, Rhonda Craig, Orlando Marion, John Collins, Terry Hardison, Carolyn Harp, Jeffrey Peterson, Clementine Stephens, Ezekiel Davis, Michael McKay, David Both, Raymond Thompson, Jr., Doug Taylor, Shumithia Baker, Floyd Brunson, Jerry Ashley, Anthony Harmon, Shelton Bell, Jr., Jeremiah Duren, Otis Evans, Wendy Jefferson, Gary Musser, Mario Littlejohn, Angela Davis, Jeffrey Theriot, Bernard White, Eddie Moore, Robert Mcgowen, Curtis Morris, Hondra Porter, Kevin Mcdonald, Jay Woods, Taesean Parnell, Yvette

1

Spencer, Viena Lowe, Landon Banks, Darchella Lattner, Nicholas Martin, Marily Cloyd, Robert Hall, Victoria Wilson, Theresa Chalch, Angela Davis, Jamie Jackson, Donald Harris, Winter Owens, Samiya Speed, Teran Brown, Antonio Brooks, Jermaine Gleen, Ray Lizzamore, Daniel Latanzio, Woodrow Roberson, Kevin Ivie, Darnell Fields, Daniel Soto, Kevin McGillivary, and Bradley Schick (collectively "Prepetition Claimants"), by and through their undersigned counsel, hereby object to the Debtor's Motion for Entry of An Order Approving Alternative Dispute Resolution Procedures To Promote the Liquidation of Certain Prepetition Claims [Dkt # 1665] (the "ADR Motion"). In support of this objection, they respectfully state as follows:

## GENERAL BACKGROUND

1.   On July 18, 2013 the City filed a voluntary petition for relief under chapter 9 of title 11 of the United States Bankruptcy Code [Dkt. # 113].

2.   On July 25, 2013, this court entered both automatic and extended Stays of Proceedings [Dkt. # 166].

2.   On October 8, 2013, the Court entered an Order [Dkt. # 1114] denying a tort claimant's request for relief from the automatic stay of sections 362 and 922 of the Bankruptcy Code, subject to the City's filing, on or before November 12, 2013, "a motion for approval of an efficient process for liquidating all of the tort claims or a motion for extension of time to file such a motion."

2

3.     On November 12, 2013, the City of Detroit Michigan (the "City") filed the ADR Motion [Dkt. # 1665]. The ADR Motion seeks approval for a set of mandatory alternative dispute resolution procedures (the "ADR Procedures") for the liquidation of tort claims and other Designated Claims. The proposed ADR Procedures are comprise of up to three stages: (a) Offer and Exchange; (b) Case Evaluation; and (c) Binding Arbitration, if agreed to by the parties.

4.     The ADR Motion identified certain Initial Designated Claims allegedly appropriate for liquidation through the ADR Procedures.

5.     The Initial Designated Claims consists of any and all timely filed prepetition: (a) personal injury tort or wrongful death claims; (b) property damage claims; or (c) claims relating to the operation of motor vehicles for which the City is self-insured pursuant to Chapter 31 of Michigan's Insurance Code of 1956, M.C.L. §§ 500. 3101, *et seq.*

6.     It appears from the ADR Motion that the City proposes to treat the above Prepetition Claimants' matters as Initial Designated Claims subject to the ADR Procedures.

## OBJECTION

7.     The City has arbitrarily constructed a gauntlet that Prepetition Claimants personal must run before they enjoy the rights accorded them by the Bankruptcy Code, state law, and the United States Constitution. Such a process

3

undercuts and impedes their claim. The Court should not countenance such a scheme.

8. Specifically, the ADR Procedures fail to address several imperative issues:

## I. The Debtor's Proposed ADR Procedures Fail to Address The City's Position As a Self-Insured Government Entity For the Purposes of Michigan's No-Fault Act.

9. Michigan's No-Fault Automobile Act guarantees compensation for those injured in an automobile accident unless a limited exception applies. If there is no insurance available, a person injured in an automobile accident may apply to the Michigan Assigned Claims Facility. MCL 500.3172. If the no-fault insurer is insolvent, the insured's policy is backed by the Michigan Property and Casualty Guarantee Association. MCL 500.7925.

10. In Michigan every owner of a motor vehicle is required by law to purchase no-fault insurance in order to get a license plate. MCL 500.3101(1). It is against the law to drive without no-fault insurance. MCL 500.3101(1). The basic concept of the no-fault system is to provide drivers and passengers injured in auto accidents assured, adequate, and prompt compensation for their injuries.

11. The City is self-insured government entity for purposes of Michigan's No-Fault statute, MCL 500.3101d, and maintains its certificate of self-insurance with the State of Michigan.

4

12.   The State of Michigan issues a certificate of self-insurance ". . . if the commissioner is satisfied that the person has and will continue to have the ability to pay judgments obtained against the person." MCL 500.3101d.

13.   A self-insured must maintain a loss reserve to pay claims which are anticipated during the certification year and which are submitted for payment during that year and to pay claims that have been incurred and submitted before the certification year, but have not yet been paid by the applicant or self-insured. Mich. Admin. Code r. 257.536(1).

14.   Before the beginning of the certification year a self-insured must fully fund its lost reserve account. r. 257.536(2). The loss reserve account can only be used to pay claims that are incurred and submitted under the no-fault law. r. 257.536(3). The loss reserve account must be kept in a segregated account and must not be comingled with other funds of the self-insured. r. 257.536(5)

15.   Self-insured governmental units do not have unfettered access to loss reserve accounts. Such access would violate the loss reserve provisions of the insurance code. r. 257.536(7).

16.   The ADR Procedures fail to address the City's status as a self-insured governmental unit. In particular, the City's ADR Motion should have addressed the following:

      a.    Whether the no-fault claims against the City are subject to the Michigan Property and Casualty Guarantee Association;

5

b.   Whether the no-fault claims against the City can be assigned to the Michigan Assigned Claims Facility; and

c.   Whether the City can maintain its status as a self-insured governmental unit.

17.   The City's proposed ADR Procedures should have addressed these issues and the City should have consulted with Prepetition Claimants to prepare a fair and proper proposal. The City, instead, avoided the drudgery of developing an original plan by appropriating processes used in previous bankruptcies[1]. A proper and carefully planned proposal would have considered the City's self-insured status.

## II.   The City's ADR Procedures Fail to Address Prepetition Claims brought under 42 U.S.C. § 1983 and any other Prepetition Governmental Indemnification.

18.   The City's ADR Procedures appear to designate prepetition claims filed under 42 U.S.C. § 1983 and other prepetition governmental indemnification as Initial Designated Claims. These prepetition claims should not be subject to the City's ADR Procedures.

19.   Many Prepetition Claimants have filed claims against city officials that the City has agreed or is required to by state statute to indemnify. The City's bankruptcy should not prohibit Prepetition Claimants from pursuing their Section

---

[1] *In re The Great Atlantic & Pacific Tea, Company, Inc., et al.*

6

1983 claims against individual city officials or other prepetition claims subject to governmental indemnification.

10. The City's liability in prepetition claims subject to governmental indemnification is derivative and not primary. Therefore, if any claim is subject to the proposed ADR Procedures, it would be the city official's claim for indemnification.

## CONCLUSION

WHEREFORE, for the reasons stated above, the Prepetition Claimants respectfully request that this Court provide the following relief:

A. Determine that the proposed ADR Procedures fail to properly address claims relating to the operation of motor vehicles for which the City is self-insured.

B. Determine that the City's bankruptcy cannot prevent Prepetition Claimants from pursuing Section 1983 claims against city officials and other governmental indemnification claims.

C. Issue an Order:

    1. Denying the City's Motion for an order approving alternative dispute resolution procedures to promote the liquidation of certain prepetition claims;

    2. Appoint a Creditors Committee consisting of prepetition claimants the City proposes to identify as Initial Designated Claims to protect the rights and interest of this class of claimants;

    3. Set a hearing date for all prepetition claimants the City proposes to identify as Initial Designated Claims to come before this Court

7

and demonstration how the City's proposed ADR Procedures would violate the rights accorded them by the Bankruptcy Code, state law, and the United States Constitution and propose a proper plan for managing such claims.

Respectfully submitted,

ROMANO LAW, P.L.L.C.

By: /s/ Trevor J. Zamborsky
Trevor J. Zamborsky MI (P77244)
23880 Woodward Avenue
Pleasant Ridge, MI 48069
tzamborsky@romanolawpllc.com
Tel:   (248) 750 – 0270
Fax:   (248) 567 – 4827

DATED: December 11, 2013

8

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
-------------------------------------------------x
                                                 :
In re                                            : Chapter 9
                                                 :
CITY OF DETROIT, MICHIGAN,                        : Case No. 13-53846
                                                 :
                              Debtor.            : Hon. Steven W. Rhodes
                                                 :
                                                 :
-------------------------------------------------x
```

+---------------------------------------------------------------+
| **NOTICE**                                                    |
| This order is the proposed order that the parties submitted for entry, except that the Court has added paragraph 20 addressing claims under 42 U.S.C. § 1983 pending in the district court. |
+---------------------------------------------------------------+

## ORDER, PURSUANT TO SECTIONS 105 AND 502 OF THE BANKRUPTCY CODE, APPROVING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES TO PROMOTE THE LIQUIDATION OF CERTAIN PREPETITION CLAIMS

This matter coming before the Court on the Motion of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims (Docket No. 1665) (the "ADR Procedures Motion"), filed by the City of Detroit (the "City"); the following responses to the ADR Procedures Motion having been filed (collectively, the "Filed Responses"):

(a)     the response (Docket Nos. 1763 and 1765) of Jeffrey Sanders;

(b)     the objection (Docket No. 1828) (the "Cooperatives Response") of

LaSalle Town Houses Cooperative Association, Nicolet Town Houses Cooperative Association and St. James Cooperative;

(c)     the limited objection (Docket No. 1834) of the Police and Fire Retirement System of the City of Detroit and the General Retirement System (together, the "Retirement Systems");

(d)     the objection (Docket No. 1866) (the "Ryan Response") of Deborah Ryan;

(e)     the limited objection (Docket No. 1902) of the Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit Police Lieutenants & Sergeants Association and the Detroit Police Command Officers Association (collectively, the "Public Safety Unions");

(f)     the objection (Docket No. 1915) of the Michigan Council 25 the American Federation of State, County and Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees ("AFSCME"); and

(g)     the objection (Docket No. 2211) of certain alleged prepetition claimants.

The City also having received informal responses (collectively, the "Informal Responses" and, together with the Filed Responses, the "Responses") from the following parties:

(a)     the United States Department of Justice (the "DOJ");

(b)     Financial Guaranty Insurance Company ("FGIC");

(c)     Ambac Assurance Corporation ("Ambac"); and

(d)     Amalgamated Transit Union Local 26 ("ATU").

The City having filed the Reply in Support of Motion of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving

Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims (the "Reply"); Walter Swift and Deborah Ryan jointly having filed the Motion to Substitute Petitioner Swift to Replace Petitioner Ryan Regarding Her Objections to Motion of Debtor for an Order Approving ADR Proceedings (Docket No. 2140) (the "Substitution Motion"); the Court having reviewed the ADR Procedures Motion, the Filed Responses, the Reply and the Substitution Motion and having considered the statements of counsel and the evidence adduced with respect to the ADR Procedures Motion and the Substitution Motion at a hearing before the Court (the "Hearing"); the Court being advised that the Alternative Dispute Resolution Procedures attached hereto as Annex I (the "ADR Procedures")[1] and the terms of this Order resolve the Responses of (a) the Retirement Systems, (b) the Public Safety Unions, (c) AFSCME, (d) the DOJ, (e) FGIC, (f) Ambac and (g) ATU; the Court further being advised that the Ryan Response is resolved, subject to the City's and the Public Safety Unions' agreement that, by separate order of the Court, the Stay will be lifted solely to the extent necessary to allow the lawsuit captioned Ryan v. City of Detroit, et al., Case No. 11-cv-10900 (E.D. Mich.) (the "Ryan Lawsuit"), to proceed to judgment, thereby liquidating the claims of Deborah Ryan against the City and the current or former Public Safety Union member defendants in the Ryan Lawsuit; the Court

---

[1]     Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the ADR Procedures.

having entered the Order for Relief from the Automatic Stay to Allow Class Action to Proceed (Docket No. 2223) (the "Cooperatives Order"); the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b) and (c) notice of the ADR Procedures Motion and the Hearing was sufficient under the circumstances; and the Court having determined that the legal and factual bases set forth in the ADR Procedures Motion, the Reply and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1. The ADR Procedures Motion is GRANTED, as set forth herein, and the Substitution Motion is DENIED. The Informal Responses are resolved by the terms of this Order, the Cooperatives Response is mooted by the Cooperatives Order, and the remaining Filed Responses are overruled to the extent not resolved or addressed by the ADR Procedures and the terms of this Order.

2. The ADR Procedures are approved in all respects, pursuant to sections 105 and 502 of the Bankruptcy Code. For the avoidance of doubt, all of the terms and provisions of the ADR Procedures are approved, whether or not such terms and provisions are restated below.

3. The City is authorized to take any and all actions that are necessary or appropriate to implement the ADR Procedures. Nothing in this Order

or the ADR Procedures, however, shall obligate the City to settle or pursue settlement of any particular Designated Claim.  Any such settlements may be pursued and agreed upon as the City believes are reasonable and appropriate in its sole discretion, subject to the terms and conditions set forth in the ADR Procedures.

4.      Notwithstanding any other provision of this Order to the contrary, the following claims (collectively, the "Excluded Claims") shall not be Initial Designated Claims or Designated Claims and shall not otherwise be subject to the ADR Procedures, provided, however, that nothing herein shall preclude (a) the City and the applicable claimant from agreeing to submit any Excluded Claim to the ADR Procedures or (b) the City from seeking to establish in the future, by separate motion, alternative dispute resolution procedures in connection with any Excluded Claim(s) (or the holder of an Excluded Claim from opposing such requested relief):

(a)      claims solely for unpaid pension contributions, unfunded actuarially accrued pension liabilities and/or unpaid pension benefits (whether asserted by the Retirement Systems or directly or derivatively by or on behalf of retirees or active employees, and whether filed by the applicable claimant or scheduled by the City);

(b)      claims for liabilities associated with post-employment benefits under the City's Health and Life Insurance Benefit Plan, the Supplemental Death Benefit Plan or other non-pension post-employment welfare benefits, including unfunded actuarially accrued liabilities;

(c)      claims arising from labor-related grievances;

13-53846-tjt   Doc 1304   Filed 09/19/13   Entered 09/19/13 16:12:50   Page 5 of 60
13-53846-tjt   Doc 2302   Filed 12/24/13   Entered 12/24/13 16:12:17   Page 116 of
263                                                                                          112

(d)     claims solely asserting workers' compensation liabilities against the City;

(e)     claims, if any, arising from or related to (i) that certain GRS Service Contract 2005 between the Detroit General Retirement System Service Corporation and the City of Detroit, dated May 25, 2005, (ii) that certain PFRS Service Contract 2005 between the Detroit Police and Fire Retirement System Service Corporation and the City of Detroit, dated May 25, 2005, (iii) that certain GRS Service Contract 2006 between the Detroit General Retirement System Service Corporation and the City of Detroit, dated June 7, 2006 and (iv) that certain PFRS Service Contract 2006 between the Detroit Police and Fire Retirement System Service Corporation and the City of Detroit, dated June 7, 2006;

(f)     claims by holders for amounts owed under the City's unlimited tax general obligation bonds, limited tax general obligation bonds and general fund bonds (collectively, the "GO Bonds") and claims by bond insurers related to the GO Bonds; and

(g)     claims filed by the United States government.

5.     From the date of this Order until the date that is 119 days after the General Bar Date, the holders of the Initial Designated Claims (and any other person or entity asserting an interest in such claim) shall be enjoined (the "Initial Injunction") from filing or prosecuting Stay Motions with respect to such Initial Designated Claims.  The Initial Injunction is separate and distinct from the ADR Injunction as defined and described below.

6.     Upon the service of an ADR Notice on any Designated Claimant, such Designated Claimant (and any other person or entity asserting an interest in the relevant Designated Claim) shall be enjoined (the "ADR Injunction")

from filing or prosecuting any Stay Motion or otherwise seeking to establish, liquidate, collect on or enforce the Designated Claim(s) identified in the ADR Notice, other than by liquidating the claim through the ADR Procedures. The ADR Injunction shall expire with respect to a Designated Claim only when the ADR Procedures have been completed as to that claim.  For the avoidance of doubt, the City may serve an ADR Notice on any Designated Claimant at any time, and the ADR Injunction shall become effective at the time of service without any further action by the Court.

    7.    Certain Designated Claims (each, a "Multi-Party Tort Claim") arise out of personal injury actions:  (a) asserted concurrently against the City and one or more current or former Public Safety Union members (each, a "Public Safety Union Member"); and (b) with respect to which, the applicable Public Safety Union Member seeks related defense costs and/or an indemnification claim from the City (any such Public Safety Union Member, an "Indemnification Claimant," and any such claim, an "Indemnification Claim").  When a Multi-Party Tort Claim is designated as a Designated Claim to proceed to the ADR Procedures, any related Indemnification Claim also shall be designated by the City as a Designated Claim to proceed through the ADR Procedures along with the Multi-Party Tort Claim.  Concurrently with the service of an ADR Notice on any Designated Claimant for a Multi-Party Tort Claim, the City shall serve a copy of

13-53846-tjt   Doc 1104   Filed 09/19/13   Entered 09/19/13 16:12:25   Page 118 of 61
13-53846-tjt   Doc 2302   Filed 12/24/13   Entered 12/24/13 16:12:17:00   Page 71 of 61
263
114

the ADR Notice on the Public Safety Unions and on any related Indemnification Claimant known to the City. Thereafter, the Indemnification Claimant shall participate in the attempted resolution of the Multi-Party Tort Claim and the related Indemnification Claim pursuant to the ADR Procedures, with the goal of resolving all related claims in a single settlement. Any dispute regarding whether the City is required to pay the defense costs of, or indemnify, any Indemnification Claimant shall be resolved pursuant to the City's and the Public Safety Unions' ordinary course nonbankruptcy procedures, and not by this Court or through the ADR Procedures, and, notwithstanding the Initial Injunction and the ADR Injunction, the Public Safety Unions may seek relief from the Stay/Injunction for this purpose.

8. Except as expressly set forth in the ADR Procedures, the expiration of the Initial Injunction and/or the ADR Injunction shall not extinguish, limit or modify the Stay or any Plan Injunction (the "Stay/Injunction"), which shall remain in place to the extent then in effect, except as otherwise provided in the ADR Procedures. The Initial Injunction and the ADR Injunction shall be in addition to the Stay/Injunction.

9. The City in its sole discretion (a) may elect not to send an ADR Notice to the holder of an Initial Designated Claim and (b) instead file and serve on the applicable Designated Claimant a notice (a "Stay Modification Notice") that

8

263
13-53846-tjt Doc 1304 Filed 09/19/13 Entered 09/19/13 16:12:25 Page 119 of
13-53846-tjt Doc 2302 Filed 12/24/13 Entered 12/24/13 16:12:50 Page 3 of 61   115

the Stay/Injunction is lifted to permit the underlying claim to be liquidated in an appropriate non-bankruptcy forum. In that event, immediately upon the filing of the Stay Modification Notice, the Stay/Injunction shall be deemed modified with respect to the applicable Initial Designated Claim solely to permit the liquidation of the claim in a non-bankruptcy forum; provided, however, that, solely in the case of a Multi-Party Tort Claim, the Stay/Injunction will be deemed modified with respect to the Multi-Party Tort Claim and any related Indemnification Claims 35 days after the filing of the Stay Modification Notice unless the Public Safety Unions or the applicable Indemnification Claimant(s) file a motion requesting that the Stay/Injunction remain in place (any such motion, a "Stay Preservation Motion"). If a Stay Preservation Motion is filed, then the Court will determine whether relief from the Stay/Injunction is appropriate with respect to the Multi-Party Tort Claim pursuant to the standards set forth in section 362(d) of the Bankruptcy Code.

        10.     If the Stay/Injunction is modified as a result of a Stay Modification Notice, the liquidation of each applicable Initial Designated Claim shall proceed in either: (a) the non-bankruptcy forum in which the Initial Designated Claim was pending on the Petition Date, if any, subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Initial Designated Claim was not pending in any forum on the Petition Date, then

in the United States District Court for the Eastern District of Michigan

(the "District Court") or such other non-bankruptcy forum selected by the

Designated Claimant that (i) has personal jurisdiction over the parties, (ii) has

subject matter jurisdiction over the claim, (iii) has in rem jurisdiction over the

property involved in the Initial Designated Claim (if applicable) and (iv) is a

proper venue.  For the avoidance of doubt, all proceedings against the City or any

Indemnification Claimant relating to an Initial Designated Claim following the

liquidation of the Initial Designated Claim shall remain subject to the

Stay/Injunction, absent further order of the Court.  If necessary, any disputes

regarding the application of the foregoing terms, conditions and limitations shall be

determined by this Court; provided that disputes about the jurisdiction of a matter

presented to a non-bankruptcy court may be determined by such court.

     11.    The resolution of a Designated Claim pursuant to the ADR

Procedures or the entry of an Arbitration Award pursuant to the ADR Procedures[2]

shall not grant the Designated Claimant any enforcement rights except as permitted

under a Chapter 9 Plan, and the Stay/Injunction shall apply to any such resolved

Designated Claim or Arbitration Award.  For the avoidance of doubt, all

proceedings against the City or any Indemnification Claimant relating to a

---

[2]    For the avoidance of doubt, "Arbitration Award" refers to an arbitration award as defined by the ADR Procedures Motion and the ADR Procedures and not to any award issued pursuant to the City and the Public Safety Unions' labor arbitration procedures.

Designated Claim following the resolution of the Designated Claim or the entry of an Arbitration Award shall remain subject to the Stay/Injunction, absent further order of the Court. Any aspect of an Arbitration Award that violates the foregoing rules and limitations shall be void without further action of any court.

12. Designated Claims not resolved through the ADR Procedures ("Unresolved Designated Claims") shall proceed to litigation to be liquidated. Unless the City agrees otherwise, liquidation of any Unresolved Designated Claim shall proceed in this Court (to the extent that this Court has subject matter jurisdiction over the Unresolved Designated Claim) as soon as practicable following the date that the ADR Procedures are concluded for an Unresolved Designated Claim (the "ADR Completion Date"). Such litigation will be initiated by the filing of a claim objection by the City (a "Claim Objection") within 35 days after the ADR Completion Date (the "Claim Objection Deadline"). Disputes over the subject matter jurisdiction of this Court shall be determined by this Court, and the Designated Claimants shall retain whatever rights they have to seek withdrawal of the reference, abstention or other procedural relief in connection with a Claim Objection.

13. If an Unresolved Designated Claim cannot be adjudicated in this Court because of lack of, or limitations upon, subject matter jurisdiction, or if the City does not file a Claim Objection by the Claim Objection Deadline (any

13-53846-tjt   Doc 11044   Filed 08/49/16   Entered 08/49/16 12:25:43   Page 132 of
263
13-53846-tjt   Doc 2302   Filed 12/24/13   Entered 12/24/13 01:17:04   Page 1 of   118

such claim, a "<u>Non-Bankruptcy Claim</u>"), then liquidation of any such Non-Bankruptcy Claim shall proceed in either: (a) the non-bankruptcy forum in which the Non-Bankruptcy Claim was pending on the Petition Date, if any, subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Non-Bankruptcy Claim was not pending in any forum on the Petition Date, then in the District Court or such other nonbankruptcy forum selected by the Designated Claimant that (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the Non-Bankruptcy Claim, (iii) has <u>in rem</u> jurisdiction over the property involved in the Non-Bankruptcy Claim (if applicable) and (iv) is a proper venue. If necessary, any disputes regarding the application of the foregoing terms, conditions and limitations shall be determined by this Court; <u>provided that</u> disputes about the jurisdiction of a matter presented to a non-bankruptcy court may be determined by such court.

14.     The Stay/Injunction shall be deemed modified with respect to any Non-Bankruptcy Claim unless, within 35 days of the ADR Completion Date, the City files a notice (a "<u>Stay Notice</u>") that it intends for the Stay/Injunction to remain in effect with respect to a Non-Bankruptcy Claim. If the City files a Stay Notice, the Stay/Injunction shall remain in place, and the applicable Designated Claimant may seek relief from the Stay/Injunction under the standards set forth in section 362(d) of the Bankruptcy Code. In addition, with respect to any Non-

12
263
13-53846-tjt   Doc 11044   Filed 08/19/16   Entered 08/19/16 12:25:13   Page 123 of 119
13-53846-tjt   Doc 2302   Filed 12/24/13   Entered 12/24/13 01:17:50   Page 123 of

Bankruptcy Claims that are Multi-Party Tort Claims, an Indemnification Claimant may file a motion within 35 days of the ADR Completion Date seeking to maintain the Stay/Injunction as to the Indemnification Claimant for good cause shown.

15. If the City does not file a Stay Notice (or, in the case of Multi-Party Tort Claims, no Indemnification Claimant asserts and establishes cause to maintain the Stay/Injunction) with respect to a Non-Bankruptcy Claim, then the Stay/Injunction shall be deemed modified solely for the purpose of, and to the extent necessary for, liquidating such Non-Bankruptcy Claim in an appropriate non-bankruptcy forum (as applicable under the ADR Procedures). For the avoidance of doubt, following the liquidation of a Non-Bankruptcy Claim, all proceedings against the City or any Indemnification Claimant relating to the Non-Bankruptcy Claim shall remain subject to the Stay/Injunction, absent further order of the Court.

16. Nothing contained in this Order or the ADR Procedures shall (a) prevent the City and any Designated Claimant (including any Indemnification Claimant) from settling any Designated Claim at any time or (b) limit, expand or otherwise modify the City's authority to settle or pay claims or the City's authority over its property and revenues under section 904 of the Bankruptcy Code. The

authority to settle Designated Claims pursuant to the ADR Procedures will be in addition to, and cumulative with, any existing authority to resolve claims against the City.

17.     The terms of this Order shall not be deemed to preclude any party in interest from objecting to any Designated Claim to the extent such entity has standing to assert an objection in accordance with Bankruptcy Code and applicable law.

18.     Nothing herein shall be deemed to limit, expand or otherwise affect (a) any rights of the Public Safety Unions to obtain discovery from the City with respect to Multi-Party Tort Claims if the Stay/Injunction is modified, (b) any rights of the Public Safety Unions to obtain information from the City necessary to identify any potential Indemnification Claims prior to the Claims Bar Date or (c) any rights of the City to object to any such discovery requests, and all such rights are preserved.

19.     This Court shall retain jurisdiction for all purposes specified in the ADR Procedures and with respect to all disputes arising from or relating to the interpretation, implementation and/or enforcement of this Order and the ADR Procedures.

**20.     Notwithstanding anything in this Order, the "ADR Procedures" that this Order approves (Annex 1), or in the ADR Procedures**

**Motion, all lawsuits alleging claims against the City, its employees or both under 42 U.S.C. § 1983 that are pending in the United States District Court are referred to Chief United States District Judge Gerald Rosen for mediation under such procedures as he determines.**

Signed on December 24, 2013

_____/s/ Steven Rhodes_____
Steven Rhodes
United States Bankruptcy Judge

# <u>ANNEX I</u>

ATI-2587951v7

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

```
-------------------------------------------------------x
                                        :
In re                                   :          Chapter 9
                                        :
CITY OF DETROIT, MICHIGAN,              :          Case No. 13-53846
                                        :
                      Debtor.           :          Hon. Steven W. Rhodes
                                        :
                                        :
-------------------------------------------------------x
```

## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

On [_____], 2013, the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") entered an order (Docket No. __) (the "ADR Order") in the above-captioned case under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") approving and adopting the following alternative dispute resolution procedures (the "ADR Procedures") with respect to certain claims asserted against the City of Detroit (the "City"):

## I.   CLAIMS SUBJECT TO THE ADR PROCEDURES AND ADR INJUNCTION

### A.   Claims Subject to the ADR Procedures

The claims subject to the ADR Procedures consist of all claims designated by the City under the notice procedures set forth below (collectively, the "Designated Claims"). The City may designate for liquidation pursuant to the ADR Procedures any proof of claim, other than Excluded Claims (as defined below), timely asserted in these cases by serving a notice (the "ADR Notice") on the applicable claimant, if the City believes, in its sole discretion, that the ADR Procedures would promote the resolution of such claim and serve the intended objectives of the ADR Procedures. Without limiting the foregoing, any and all timely filed prepetition claims, other than Excluded Claims, in the following categories shall be Designated Claims hereunder prior to the City serving an ADR Notice on the applicable claimant: (1) personal injury tort or wrongful death claims, (2) property damage claims or (3) claims, to the extent not

ATI-2587951v7

13-53846-tjt   Doc 11044   Filed 03/19/16   Entered 03/19/16 12:25:03   Page 128 of
13-53846-tjt   Doc 2302   Filed 12/24/13   Entered 12/24/13 00:17:00   Page 7 of 124
263

satisfied in the ordinary course, relating to the operation of motor vehicles for which the City is self-insured pursuant to chapter 31 of Michigan's Insurance Code of 1956, M.C.L. §§ 500.3101, et seq. (collectively, the "Initial Designated Claims") The holders of the Designated Claims, including Initial Designated Claims, are referred to herein as the "Designated Claimants."

Notwithstanding any provision of the ADR Procedures or the ADR Order to the contrary, the following claims (collectively, the "Excluded Claims") shall not be Initial Designated Claims or Designated Claims and shall not otherwise be subject to these ADR Procedures, provided, however, that nothing herein shall preclude (a) the City and the applicable claimant from agreeing to submit any Excluded Claim to the ADR Procedures or (b) the City from seeking to establish in the future, by separate motion, alternative dispute resolution procedures in connection with any Excluded Claim(s):

1.  claims solely for unpaid pension contributions, unfunded actuarially accrued pension liabilities and/or unpaid pension benefits (whether asserted by the Police and Fire Retirement System of the City of Detroit or the General Retirement System of the City of Detroit or directly or derivatively by or on behalf of retirees or active employees, and whether filed by the applicable claimant or scheduled by the City);

2.  claims for liabilities associated with post-employment benefits under the City's Health and Life Insurance Benefit Plan, the Supplemental Death Benefit Plan or other non-pension post employment welfare benefits, including unfunded actuarially accrued liabilities;

3.  claims arising from labor-related grievances;

4.  claims solely asserting workers' compensation liabilities against the City;

5.  claims, if any, arising from or related to (i) that certain GRS Service Contract 2005 between the Detroit General Retirement System Service Corporation and the City of Detroit, dated May 25, 2005, (ii) that certain PFRS Service Contract 2005 between the Detroit Police and Fire Retirement System Service Corporation and the City of Detroit, dated May 25, 2005, (iii) that certain GRS Service Contract 2006 between the

-2-

Detroit General Retirement System Service Corporation and the City of Detroit, dated June 7, 2006 and (iv) that certain PFRS Service Contract 2006 between the Detroit Police and Fire Retirement System Service Corporation and the City of Detroit, dated June 7, 2006;

6.       claims by holders for amounts owed under the City's unlimited tax general obligation bonds, limited tax general obligation bonds and general fund bonds (collectively, the "GO Bonds") and claims by bond insurers related to the GO Bonds; and

7.       claims filed by the United States government.

## B.       Injunctions in Support of the ADR Procedures

The Bankruptcy Court has established February 21, 2014, at 4:00 p.m., Eastern Time, as the general bar date for filing proofs of claim in the City's chapter 9 case (the "General Bar Date").  For the period commencing on the date of entry of the ADR Order until the date that is 119 days after the General Bar Date (the "Initial Designation Period"), any Designated Claimant holding an Initial Designated Claim (and any other person or entity asserting an interest in such claim) shall be enjoined (the "Initial Injunction") from filing or prosecuting, with respect to such Initial Designated Claim, any motion (a "Stay Motion") for relief from either (1) the automatic stay of sections 362 and 922 of the Bankruptcy Code, as modified and extended from time to time by orders of the Bankruptcy Court (the "Stay"), or (2) any similar injunction (together with the Stay, the "Stay/Injunction") that may be imposed upon the confirmation or effectiveness of a plan of adjustment of debts confirmed in the City's chapter 9 case (a "Chapter 9 Plan").  The Initial Injunction is separate and distinct from the ADR Injunction as defined and described below.  Any Designated Claimant that is subject to the Initial Injunction with respect to an Initial Designated Claim shall instead become subject to the ADR Injunction upon the service of an ADR Notice with respect to the underlying Designated Claim, as described in the following paragraph, whether that occurs during or after the Initial Designation Period.

Upon service of an ADR Notice on any Designated Claimant under Section II.A.1 below, such Designated Claimant (and any other person or entity asserting an interest in the relevant Designated Claim) shall be enjoined (the "ADR Injunction") from filing or prosecuting any Stay Motion or otherwise seeking to establish, liquidate, collect on or enforce the Designated Claim(s) identified in the ADR Notice, other than by liquidating the claim through the ADR Procedures

described herein. The ADR Injunction shall expire with respect to a Designated Claim only when the ADR Procedures have been completed as to that Designated Claim.[1] For the avoidance of doubt, the City may serve an ADR Notice on any Designated Claimant at any time, and the ADR Injunction shall become effective at the time of service without any further action by the Bankruptcy Court.

Except as expressly set forth herein or in a separate order of the Bankruptcy Court, the expiration of the Initial Injunction or the ADR Injunction shall not extinguish, limit or modify the Stay/Injunction, and the Stay/Injunction shall remain in place to the extent then in effect, except as otherwise provided herein. The Initial Injunction and the ADR Injunction shall be in addition to the Stay/Injunction.

The City in its sole discretion (1) may elect not to send an ADR Notice to the holder of an Initial Designated Claim (i.e., not send the claim to the ADR Procedures) and (2) instead may file and serve on the applicable Designated Claimant a notice that the Stay/Injunction is lifted to permit the underlying claim to be liquidated in a non-bankruptcy forum consistent with the terms, conditions and limitations of Section II.E.2 below (a "Stay Modification Notice"). In that event, immediately upon the filing of the Stay Modification Notice, the Stay/Injunction shall be deemed modified with respect to the applicable Initial Designated Claim solely to permit the liquidation of the claim in a non-bankruptcy forum; provided, however, that, solely in the case of a Multi-Party Tort Claim (as defined below), the Stay/Injunction will be deemed modified with respect to the Multi-Party Tort Claim and any related Indemnification Claim (as defined below) 35 days after the filing of the Stay Modification Notice unless the applicable Indemnification Claimant(s) or their union representatives file a motion requesting that the Stay/Injunction remain in place (any such motion, a "Stay Preservation Motion"). If a Stay Preservation Motion is filed, then the Bankruptcy Court will determine whether relief from the Stay/Injunction is appropriate with respect to the Multi-Party Tort Claim pursuant to the standards set forth in section 362(d) of the Bankruptcy Code.

---

[1]     The ADR Procedures expire upon any resolution of a Designated Claim through the ADR Procedures, upon the Case Evaluation Termination Date (as defined below) for Designated Claims not resolved though the ADR Procedures or at any other time that the ADR Procedures are terminated by agreement of the parties or the terms hereof.

### C. Multi-Party Tort Claims

Certain Designated Claims (each, a "Multi-Party Tort Claim") arise out of personal injury actions (a) asserted concurrently against the City and one or more current or former members of the Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit Police Lieutenants & Sergeants Association or the Detroit Police Command Officers Association (each such member, a "Public Safety Union Member") and (b) with respect to which, the applicable Public Safety Union Member seeks related defense costs and/or an indemnification claim from the City (any such Public Safety Union Member, an "Indemnification Claimant," and any such claim, an "Indemnification Claim"). When a Multi-Party Tort Claim is designated as a Designated Claim to proceed to the ADR Procedures, any related Indemnification Claim also shall be designated by the City as a Designated Claim to proceed through the ADR Procedures along with the Multi-Party Tort Claim. Concurrently with the service of an ADR Notice on any Designated Claimant for a Multi-Party Tort Claim, the City shall serve a copy of the ADR Notice on any related Indemnification Claimant known to the City. Thereafter, the Indemnification Claimant shall participate in the attempted resolution of the Multi-Party Tort Claim and the related Indemnification Claim pursuant to the ADR Procedures, with the goal of resolving all related claims in a single settlement. Any dispute regarding whether the City is required to pay the defense costs of, or indemnify, any Indemnification Claimant shall be resolved pursuant to the City's and the Public Safety Unions' ordinary course nonbankruptcy procedures, and not by the Bankruptcy Court or through the ADR Procedures, and, notwithstanding the Initial Injunction and the ADR Injunction, the Public Safety Unions may seek relief from the Stay/Injunction for this purpose.

## II. THE ADR PROCEDURES

### A. Offer Exchange Procedures

The first stage of the ADR Procedures will be the following offer exchange procedures that require the parties to exchange settlement offers and thereby provide an opportunity to resolve the underlying Designated Claim on a consensual basis without any further proceedings (the "Offer Exchange Procedures").

1. *Service of the ADR Notice*
   *and Settlement Offer by the City*

(a)    At any time following the filing of a proof of claim by the applicable Designated Claimant, [2] the City may serve upon the Designated Claimant, at the address listed on the Designated Claimant's most recently filed proof of claim or amended proof of claim, as well as upon any counsel of record in these cases for the Designated Claimant, the following materials (collectively, the "ADR Materials"):  (i) an ADR Notice,[3] (ii) a copy of the ADR Order and (iii) a copy of these ADR Procedures.  For transferred claims, the City also shall serve a copy of the ADR Materials on the transferee identified in the notice of transfer of claim.  The ADR Notice shall serve as (i) notice that a claim has been designated by the City as a Designated Claim (if not already designated herein as an Initial Designated Claim) and (ii) notice that the Designated Claim has been submitted to the ADR Procedures.  Promptly following the service of the ADR Materials on any Designated Claimant, the City shall file a notice with the Court indicating that the Designated Claim has been submitted to the ADR Procedures.

(b)    In the ADR Notice, the City:  (i) may request that the Designated Claimant verify or, as needed, correct, clarify or supplement certain information regarding the Designated Claim; (ii) shall include an offer by the City to settle the Designated Claim (a "Settlement Offer"); and (iii) may state whether the City consents to the adjudication of the Designated Claim by binding arbitration, as set forth below, if the Designated Claim is not resolved pursuant to the Offer Exchange Procedures.  The ADR Notice shall require the Designated Claimant to sign and return the ADR Notice along with a Permitted Response (as defined below) to the City so that it is received by the City no later than 28 days[4] after the mailing of the ADR Notice (the "Settlement Response Deadline").

---

[2]    The ADR Procedures will not be initiated with respect to a claim unless and until a timely proof of claim is filed.

[3]    The form of the ADR Notice is attached hereto as Annex 1 and incorporated herein by reference.  Although the City anticipates that the ADR Notice will be substantially in the form of Annex 1, the City reserves the right to modify the ADR Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

[4]    Rule 9006(a) of the Federal Rules of Bankruptcy Procedure shall apply to all time periods calculated in the ADR Procedures.

-6-

(c)     *Failure to sign and return the ADR Notice or to include a Permitted Response with the returned ADR Notice by the Settlement Response Deadline shall be deemed to be a denial by the Designated Claimant of the Settlement Offer, and the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.*

2.     <u>*The Permitted Responses*</u>

The only permitted responses to a Settlement Offer (together, the "<u>Permitted Responses</u>") are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (as further defined below, a "<u>Counteroffer</u>").  *If the ADR Notice is returned without a response or with a response that is not a Permitted Response, the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.*

3.     <u>*The Counteroffer*</u>

The Counteroffer shall be signed by an authorized representative of the Designated Claimant and shall identify the proposed amount that the Designated Claimant will accept as a prepetition claim against the City in settlement of the Designated Claim.  The Counteroffer may not exceed the amount or improve the priority set forth in the Designated Claimant's most recent timely filed proof of claim or amended proof of claim (but may liquidate any unliquidated amounts expressly referenced in a proof of claim).[5]  *A Counteroffer may not be for an unknown, unliquidated or indefinite amount or priority, or the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.* All Counteroffers shall be for prepetition claims payable pursuant to the Chapter 9 Plan.  <u>See</u> Section II.D below.  With the agreement of the City, postpetition claims may be submitted to the ADR Procedures along with any related prepetition claims.

4.     <u>*Consent to Subsequent Binding Arbitration*</u>

As described in Sections II.B and II.C below, in the absence of a settlement at the conclusion of the Offer Exchange Procedures, the ADR Procedures contemplate submitting Designated Claims to Case Evaluation (as defined below).  Where no settlement is reached following Case Evaluation, the

---

[5]     A Designated Claimant may not amend its proof of claim solely for the purpose of proposing a Counteroffer of a higher amount or a better priority. Any dispute over the validity of any Counteroffer may be submitted by the City to the Bankruptcy Court for review.

ATI-2587951v7
13-53846-tjt   Doc 11044   Filed 12/9/16   Entered 12/9/16 12:25:03   Page 134 of
263
13-53846-tjt   Doc 2302   Filed 12/24/13   Entered 12/24/13 01:17:00   Page 23 of 130

ADR Procedures contemplate submitting Designated Claims to binding arbitration, if the City and the Designated Claimant both agree to binding arbitration of the applicable Designated Claim (or in the case of Multi-Party Tort Claims, all parties agree). When returning the ADR Notice, therefore, the Designated Claimant is required to notify the Debtors if it consents to (and thereby opts in to) or does *not* consent to (and thereby opts out of) binding arbitration in the event that its Designated Claim ultimately is not resolved through the Offer Exchange Procedures or Case Evaluation. If the Designated Claimant returns the ADR Notice without expressly notifying the Debtors that it consents to, and seeks to opt into, binding arbitration, the Designated Claimant shall be deemed to have opted out of binding arbitration. Any Designated Claimant that does not consent to binding arbitration in its response to the ADR Notice may later consent in writing to binding arbitration, subject to the agreement of the City. If the City did not consent to binding arbitration in the ADR Notice, it may later consent to binding arbitration at any time in the process by providing a written notice to the Designated Claimant (including through an Arbitration Notice, as defined below). Consent to binding arbitration, once given, cannot subsequently be withdrawn. In addition, any attempt to refuse binding arbitration in the response to the ADR Notice shall be ineffective if the Designated Claimant previously consented in writing to binding arbitration as a means to resolve its claim(s), either before or after the commencement of the City's chapter 9 case on July 18, 2013 (the "Petition Date").

### 5. *The City's Response to a Counteroffer*

The City must respond to any Counteroffer within 14 days after its receipt of the Counteroffer (the "Response Deadline"), by returning a written response (as further defined below, a "Response Statement"). The Response Statement shall indicate that the City either: (a) accepts the Counteroffer; (b) rejects the Counteroffer, with or without making a revised Settlement Offer (a "Revised Settlement Offer"); (c) requests additional information or documentation so that the City may respond in good faith to the Counteroffer; or (d) terminates the Offer Exchange Procedures and advances the Designated Claim the next step of the ADR Procedures, as set forth below.

#### (a) *The City's Rejection of the Counteroffer Without Making a Revised Settlement Offer*

If the City rejects the Counteroffer without making a Revised Settlement Offer, (i) the Offer Exchange Procedures will be deemed terminated

ATI-2587951v7

13-53846-tjt Doc 11044 Filed 12/4/16 Entered 12/4/16 12:25:13 Page 135 of 263
13-53846-tjt Doc 2302 Filed 12/24/13 Entered 12/24/13 01:27:00 Page 135 of 131

with respect to the Designated Claim and (ii) the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.

(b)     *The City's Failure to Respond*

If the City fails to respond to the Counteroffer by the Response Deadline:  (i) the Counteroffer will be deemed rejected by the City, (ii) the Offer Exchange Procedures will be deemed terminated with respect to the Designated Claim and (iii) the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.

(c)     *Revised Settlement Offer*

If the City makes a Revised Settlement Offer by the Response Deadline, the Designated Claimant may accept the Revised Settlement Offer by providing the City with a written statement of acceptance no later than 14 days after the date of service of the Revised Settlement Offer (the "Revised Settlement Offer Response Deadline").  If the Designated Claimant does not accept the Revised Settlement Offer by the Revised Settlement Offer Response Deadline, the Revised Settlement Offer will be deemed rejected, and the Designated Claim automatically will advance to the next step of the ADR Procedures, as set forth below.

(d)     *Request for Additional Information*

If the City requests additional information or documentation by the Response Deadline, the Designated Claimant shall serve such additional information or documentation so that it is received by the City within 14 days after such request.  If the Designated Claimant timely responds, the City shall have 14 days to provide an amended Response Statement, which may include a Revised Settlement Offer as a counter to the Counteroffer.  If the City does not provide an amended Response Statement within this period, or if the Designated Claimant fails to provide the requested information or documentation within the time allotted, the Designated Claim automatically will proceed to the next step of the ADR Procedures, as set forth below.

6.     *Offer Exchange Termination Date*

Upon mutual written consent, the City and a Designated Claimant may exchange additional Revised Settlement Offers and Counteroffers for up to 21 days after the later of (a) the Revised Settlement Offer Response Deadline or (b) the expiration of the applicable timeframes provided for in Section II.A.5(d)

above with respect to requesting, receiving and responding to additional information or documentation. Any date that the Offer Exchange Procedures conclude without a resolution is referred to herein as the "Offer Exchange Termination Date."

7. *Ability to Settle Claims*

Nothing herein shall limit the ability of a Designated Claimant and the City to settle a Designated Claim by mutual consent at any time. All such settlements shall be subject to the terms of Section II.D below.

**B. Case Evaluation**

The next step of the ADR Procedures following the Offer Exchange Procedures is case evaluation ("Case Evaluation") before the Wayne County Mediation Tribunal Association (the "MTA") under the procedures set forth in Rules 2.403 and 2.404 of the Michigan Court Rules of 1985 ("MCR"), as provided for by Rule 16.3 of the Local Rules of the United States District Court for the Eastern District of Michigan. Copies of MCR §§ 2.403 and 2.404 are attached hereto collectively as Annex II.

All Designated Claims not settled through the Offer Exchange Procedures shall be referred to Case Evaluation unless the City and the applicable Designated Claimant previously have undergone Case Evaluation with respect to the applicable Designated Claim.[6] Additional parties may intervene in the Case Evaluation process solely by agreement between the City and the applicable Designated Claimant.

1. *Prioritization of Referral of
Designated Claims to Case Evaluation*

As soon as reasonably practicable following the Offer Exchange Termination Date with respect to any Designated Claim, the City shall issue to the applicable Designated Claimant, any other parties to the Case Evaluation and the Clerk of the MTA (the "ADR Clerk"), a notice of case evaluation (a "Case

---

[6] Where the City and the applicable Designated Claimant previously underwent Case Evaluation with respect to the applicable Designated Claim, then the Designated Claim will proceed to the next step of the ADR Procedures unless the parties agree to conduct another Case Evaluation with respect to the Designated Claim.

Evaluation Notice") substantially in the form attached hereto as <u>Annex III</u>. Given the large number of actual and potential prepetition litigation claims asserted or to be asserted against the City, however, the City anticipates that it will be necessary to prioritize the initiation of Case Evaluation proceedings. In prioritizing among Designated Claims, the City may consider, along with any other factors the City deems relevant or appropriate in its sole discretion, (a) the absolute or relative difference between the final offers made by the City and the applicable Designated Claimant during the Offer Exchange Procedures, (b) the nature and complexity of the Designated Claim, (c) the status of any underlying lawsuit or (d) whether the Designated Claimant returned the ADR Notice and its level of participation in the ADR Procedures.

### 2. *Summary of Case Evaluation Rules and Procedures*

Except to the extent modified by the terms of these ADR Procedures, the Case Evaluation of any Designated Claim shall be governed by the rules and procedures set forth in MCR §§ 2.403 and 2.404. The following provisions of MCR § 2.403, however, are expressly inapplicable to these Case Evaluation procedures: (a) MCR §§ 2.403(A-C) (relating to the assignment of cases to Case Evaluation) and (b) MCR §§ 2.403(N-O) (relating to the posting of bonds for frivolous claims and defenses and the awarding of costs against a party that rejects a Case Evaluation and subsequently fails to achieve a superior result at trial).

The purpose of the Case Evaluation process is to obtain a nonbinding, confidential, monetary valuation of each Designated Claim that serves as a focal point for ongoing settlement negotiations between the parties. Each Designated Claim shall be evaluated by a panel of three case evaluators (the "<u>Case Evaluation Panel</u>"). The Case Evaluation Panel hears the arguments of the parties at a short hearing (the "<u>Case Evaluation Hearing</u>") and, within 14 days following the Case Evaluation Hearing, issues its written evaluation of the Designated Claim.

### (a) *Fees and Costs for Case Evaluation, Derivative Claims*

Pursuant to MCR § 2.403(H), the fees and costs for each Case Evaluation proceeding will be $75.00 payable by each party to the ADR Clerk. Where one claim is derivative of another within the Case Evaluation proceeding, the claims will be treated as a single claim, with one fee to be paid and a single valuation to be made by the Case Evaluation Panel. In addition, with the agreement of all of the parties, Multi-Party Tort Claims also may be treated as a

ATI-2587951v7

single claim, with one fee to be paid and a single valuation to be made by the Case Evaluation Panel.[7]

        (b)    *Scheduling of the Case Evaluation Hearing*

The ADR Clerk shall select the members of the Case Evaluation Panel in accordance with MCR § 2.404(C). The ADR Clerk shall set a time and place for the Case Evaluation Hearing, consistent with MCR § 2.403(G)(1), and provide notice to the members of the Case Evaluation Panel and the parties to the Case Evaluation at least 42 days prior to the date set for the Case Evaluation Hearing. Adjournments of the Case Evaluation Hearing may be granted only for good cause.

        (c)    *The Case Evaluation Summary*

At least 14 days prior to the date scheduled for the Case Evaluation Hearing, each party shall serve a copy of a case evaluation summary (a "<u>Case Evaluation Summary</u>") and supporting documents on the other parties to the Case Evaluation and file a proof of service and three copies of the Case Evaluation Summary with the ADR Clerk. The Case Evaluation Summary shall consist of a concise statement setting forth the party's factual and legal position on issues presented by the Designated Claim. The Case Evaluation Summary shall not exceed 20 pages, double spaced, exclusive of attachments. Quotations and footnotes may be single spaced. At least one-inch margins shall be used, and printing shall not be smaller than 12-point font. <u>See</u> MCR § 2.403(I)(3).

        (d)    *Conduct of the Case Evaluation Hearing*

The Case Evaluation Hearing shall be conducted in accordance with MCR § 2.403(J). Thus, for example: (i) oral presentation shall be limited to 15 minutes per side unless multiple parties or unusual circumstances warrant addition time; (ii) no testimony will be taken or permitted of any party, (iii) factual information having a bearing on damages or liability must be supported by documentary evidence, if possible; and (iv) statements by the attorneys and the briefs or summaries are not admissible in any court or evidentiary proceeding.

        (e)    *The Case Evaluation Panel's Decision*

Within 14 days following the Case Evaluation hearing, the Case Evaluation Panel will estimate the value of the Designated Claim (the "<u>Evaluation</u>")

---

[7]    If for any reason the costs for any Case Evaluation proceeding exceeds $75.00 per party, such costs shall be borne equally by each of the parties.

and notify each party of the Evaluation in writing. The Case Evaluation Panel shall only liquidate the monetary value, if any, of the Designated Claim in light of the evidence and arguments presented at in the Case Evaluation Summary and at the Case Evaluation Hearing and shall not raise or purport to determine any issues relating to the potential treatment or priority of the Designated Claim in this chapter 9 case. All claims subject to an Evaluation shall be prepetition claims subject to treatment under a Chapter 9 Plan.

(f) *Acceptance or Rejection of the Evaluation*

Within 28 days following the issuance of the Evaluation by the Case Evaluation Panel, each of the parties shall file a written acceptance or rejection of the Evaluation with the ADR Clerk. Each acceptance or rejection must encompass all claims as between any two parties to the Case Evaluation. The failure to file a written acceptance or rejection within 28 days constitutes a rejection of the Evaluation.

If the ADR Clerk informs such parties that they both have accepted the Evaluation then the Designated Claim shall be deemed settled, and the settlement as between such parties shall be documented and made of record in accordance with the procedures set forth in Section II.D below.

If one or both parties rejects the Evaluation, then the parties shall have a further 28 days to negotiate a consensual settlement of the Designated Claim. If no settlement is reached by the end of this period (the "Case Evaluation Termination Date") then the Designated Claim shall proceed to binding arbitration, if applicable.

## C.    Binding Arbitration

If the Designated Claimant previously consented in writing to binding arbitration as a means to resolve its claim(s) as set forth above (either in its response to the ADR Notice or by the terms of a separate written agreement either before or after the Petition Date), and if the City agrees to binding arbitration, then the Designated Claim shall be subject to binding arbitration, if such claim is not resolved in the Offer Exchange Procedures or in Case Evaluation.[8]    If the

---

[8]    The City's agreement to arbitration with respect to any Designated Claim shall be set forth in the Arbitration Notice, as defined below. In the case of Multi-Party Tort Claims, or if the City otherwise deems it necessary or appropriate in its discretion to resolve multiple Designated Claims on a

-13-

and notify each party of the Evaluation in writing. The Case Evaluation Panel shall only liquidate the monetary value, if any, of the Designated Claim in light of the evidence and arguments presented at in the Case Evaluation Summary and at the Case Evaluation Hearing and shall not raise or purport to determine any issues relating to the potential treatment or priority of the Designated Claim in this chapter 9 case. All claims subject to an Evaluation shall be prepetition claims subject to treatment under a Chapter 9 Plan.

(f) *Acceptance or Rejection of the Evaluation*

Within 28 days following the issuance of the Evaluation by the Case Evaluation Panel, each of the parties shall file a written acceptance or rejection of the Evaluation with the ADR Clerk. Each acceptance or rejection must encompass all claims as between any two parties to the Case Evaluation. The failure to file a written acceptance or rejection within 28 days constitutes a rejection of the Evaluation.

If the ADR Clerk informs such parties that they both have accepted the Evaluation then the Designated Claim shall be deemed settled, and the settlement as between such parties shall be documented and made of record in accordance with the procedures set forth in Section II.D below.

If one or both parties rejects the Evaluation, then the parties shall have a further 28 days to negotiate a consensual settlement of the Designated Claim. If no settlement is reached by the end of this period (the "Case Evaluation Termination Date") then the Designated Claim shall proceed to binding arbitration, if applicable.

## C.    Binding Arbitration

If the Designated Claimant previously consented in writing to binding arbitration as a means to resolve its claim(s) as set forth above (either in its response to the ADR Notice or by the terms of a separate written agreement either before or after the Petition Date), and if the City agrees to binding arbitration, then the Designated Claim shall be subject to binding arbitration, if such claim is not resolved in the Offer Exchange Procedures or in Case Evaluation.[8]    If the

---

[8]    The City's agreement to arbitration with respect to any Designated Claim shall be set forth in the Arbitration Notice, as defined below. In the case of Multi-Party Tort Claims, or if the City otherwise deems it necessary or appropriate in its discretion to resolve multiple Designated Claims on a

-13-

Designated Claimant has not expressly consented to binding arbitration in its response to the ADR Notice and has not otherwise expressly consented to binding arbitration, or if the City has not consented to binding arbitration, at the conclusion of Case Evaluation, the liquidation of the Designated Claim shall advance in accordance with the procedures for Unresolved Designated Claims set forth below.

1.  *Arbitration Notice*

Where the parties have agreed to binding arbitration, as soon as reasonably practicable following the Case Evaluation Termination Date with respect to any Designated Claim, the City shall serve on the applicable Designated Claimant (or their counsel if known), any other parties to the Case Evaluation and the ADR Clerk, a notice of arbitration (an "Arbitration Notice") substantially in the form attached hereto as Annex IV. Additional parties may intervene in the binding arbitration process solely by agreement between the City and the applicable Designated Claimant.

2.  *Arbitration Rules and Procedures*

The arbitration of any Designated Claims shall be conducted by a single arbitrator selected by the ADR Clerk and shall be governed by the commercial arbitration rules of the American Arbitration Association (the "AAA"), as amended and effective on October 1, 2013 unless the parties agree otherwise (the "Arbitration Rules"), except where the Arbitration Rules are expressly modified by the terms of these ADR Procedures. In the event of any conflict between the Arbitration Rules and the ADR Procedures, the ADR Procedures shall control.

(a)  *Governing Law*

The ADR Procedures, as they relate to arbitration proceedings, are governed by title 9 of the United States Code (the "Federal Arbitration Act"), except as modified herein.

---

(continued…)

consolidated basis, the matter may proceed to binding arbitration solely with the consent of all parties.

ATI-2587951v7

(b) *Selection of Arbitrator*

The ADR Clerk shall select the arbitrator and provide notice to the arbitrator and the parties of his or her appointment. Any person appointed as an arbitrator: (i) must be an impartial, neutral person; (ii) must be experienced (either from past arbitrations or former employment) in the law that is the subject of the Designated Claim; (iii) must have no financial or personal interest in the proceedings or, except when otherwise agreed by the parties, in any related matter; and (iv) upon appointment, must disclose any circumstances likely to create a reasonable inference of bias. In the event that an arbitrator discloses circumstances likely to create a reasonable inference of bias, either (i) the parties may agree that such arbitrator may be replaced by the ADR Clerk or (ii) in case the parties disagree, the party seeking to replace the arbitrator may petition the Bankruptcy Court to make a final decision with respect to the replacement of the arbitrator.

(c) *Fees and Costs for Binding Arbitration; Sharing*

The City is in the process of negotiating a rate with the MTA for arbitrations under these ADR Procedures. Unless the parties expressly have agreed otherwise in writing (either before or after the Petition Date) as part of an agreement to submit Designated Claims to binding arbitration, the fees and costs charged by the arbitrator and the MTA shall be shared equally among the parties; provided, however, that the arbitrator, in the arbitrator's sole discretion, may assess fees and costs against any party that the arbitrator finds to be abusing or unduly delaying the arbitration process. The arbitrator shall submit invoices to the MTA, which shall invoice the parties, according to the MTA's ordinary practices then in effect and subject to the MTA's ordinary payment terms then in effect.

(d) *Time and Location of Arbitration Hearings*

All arbitration hearings shall be scheduled by the arbitrator, in consultation with the parties and shall be conducted in Detroit, Michigan unless otherwise agreed by all of the parties and the arbitrator.

No more than one case shall be scheduled per arbitrator per hearing day. There shall be no more than three days of arbitration hearings scheduled by in any calendar week containing no legal holidays and no more than two days of arbitration hearings in any calendar week containing a legal holiday.

To the maximum extent practicable, the scheduling of arbitration hearings shall give due consideration to the convenience of the parties. The

arbitrator shall provide written notice of the date, time and place of the arbitration to the parties within 14 days after the arbitrator's appointment.

(e)  *Pre-Hearing Matters*

Any pre-hearing issues, matters or disputes (other than with respect to merits issues) shall be presented to the arbitrator telephonically (or by such other method agreed to by the arbitrator and the parties) for expeditious, final and binding resolution. Any pre-hearing issue, matter or dispute (other than with respect to merits issues) must be presented to the arbitrator not later than 21 days prior to the arbitration hearing so as to permit the arbitrator to review and rule upon the requests by telephonic or email communication at least five days prior to the arbitration hearing.

(f)  *Limited Discovery*

There shall be no interrogatories. Any requests for production of documents, electronically stored information and things ("Document Requests") shall be made in writing and shall be served by electronic mail and overnight mail no later than by 5:00 p.m., Eastern Time, on a weekday that is not a legal holiday, no fewer than 42 days before the arbitration hearing, and shall be limited to no more than ten requests, including discrete subparts. Items requested in the Document Requests must be produced within 28 days after service of the Document Requests. Affidavits permitted under the Arbitration Rules (e.g., Rule 32 of the AAA rules) must be submitted at least 21 days prior to the scheduled arbitration hearing. Each party may depose up to three witnesses. Each deposition shall be limited to three hours. All depositions must be completed at least 21 days prior to the arbitration hearing. All documents, affidavits and deposition transcripts from discovery shall be confidential and shall not be either (i) disclosed to any person or party not participating in the arbitration proceeding or (ii) used for any purpose other than in connection with the arbitration proceeding, except as provided herein. Subject to approval by the arbitrator upon written request, each party may depose up to two additional witnesses and may serve up to five additional Document Requests. Any request for such additional depositions or Document Requests, and any objection to initial or additional requests for depositions or Document Requests, shall be made in writing and shall be submitted to the arbitrator and the applicable party within such time as to permit the arbitrator no fewer than three days in which to review and rule upon the request so that the ruling is issued, by telephonic or email communication, at least 14 days prior to the first such deposition or the deadline for production, as applicable. The arbitrator shall approve the request only if the requested depositions or Document

-16-

Requests are directly relevant to and necessary for the complete presentation of any party's case in the arbitration. Notwithstanding anything to the contrary in this paragraph (f), the arbitrator may modify any term of discovery set forth herein for good cause.

(g)     *Pre-Arbitration Statement*

On or before 14 days prior to the scheduled arbitration hearing, each party shall submit to the arbitrator and serve on the other party or parties by electronic mail and overnight mail a pre-arbitration statement (the "Pre-Arbitration Statement"). The Pre-Arbitration Statement shall not exceed 20 pages, double spaced, exclusive of attachments. Quotations and footnotes may be single spaced. At least one-inch margins shall be used, and printing shall not be smaller than 12-point font.

(h)     *Arbitration Hearing*

Unless otherwise agreed by the parties and the arbitrator or as provided herein, and subject to the limitations on number of arbitration hearings per week as set forth in Section II.C.2(d) above, the arbitration hearing must be held no later than 112 days after the date of appointment of the arbitrator. Each party shall have a maximum of three hours, including any rebuttal and cross-examination, within which to present its position at the arbitration hearing. The arbitration hearing is open only to the parties, their counsel and any witnesses. Non-party witnesses shall be sequestered. No post-hearing briefs may be filed, unless the arbitrator requests such briefs, in which case such briefing shall be subject to the issues, timing and page limitations the arbitrator imposes. There shall be no reply briefs.

(i)     *Arbitration Awards*

The arbitrator shall issue a short written opinion and award (the "Arbitration Award") within 14 days after the last day of the arbitration hearing, provided that the arbitrator can extend such period up to 30 days after the last day of the arbitration hearing. The arbitrator shall not be compensated for more than eight hours of deliberations on and preparation of the Arbitration Award. In no event shall the amount of any Arbitration Award exceed the claim amount shown on the Designated Claimant's most recent proof of claim prior to the service of the Arbitration Notice.

Except as otherwise agreed in writing by the parties in advance of the arbitration, any Arbitration Award shall only liquidate the applicable Designated

-17-

Claim and shall not raise or purport to determine any issues relating to the potential treatment or priority of the Designated Claim in this chapter 9 case. The Arbitration Award may not award the Designated Claimant with: (i) punitive damages; (ii) interest, attorneys' fees or other fees and costs, unless permissible under section 506(b) of the Bankruptcy Code; (iii) an award under any penalty rate or penalty provision of the type specified in section 365(b)(2)(D) of the Bankruptcy Code; (iv) amounts associated with obligations that are subject to disallowance under section 502(b) of the Bankruptcy Code; (v) specific performance, other compulsory injunctive relief, restrictive, restraining or prohibitive injunctive relief or any other form of equitable remedy; or (vi) any relief not among the foregoing, but otherwise impermissible under applicable bankruptcy or non-bankruptcy law. The entry of an Arbitration Award shall not grant the Designated Claimant any enforcement or collection rights except as permitted under a Chapter 9 Plan, and the Stay/Injunction shall apply to the Arbitration Award. For the avoidance of doubt, all proceedings against the City or any Indemnification Claimant relating to a Designated Claim following the entry of an Arbitration Award shall remain subject to the Stay/Injunction, absent further order of the Bankruptcy Court. Any aspect of an Arbitration Award that violates the foregoing rules and limitations shall be void without further action of any court.

(j) *Vacation of Arbitration Awards*

All Arbitration Awards shall be final and binding. Other than the Designated Claimants' identities, the claims register number(s) assigned to the applicable arbitrated Designated Claims, the dollar amounts of the Designated Claims as awarded in the Arbitration Awards, and except as otherwise required by law, all Arbitration Awards shall be treated as confidential. No party shall have the right to request that an Arbitration Award be vacated except: (i) in the event that an Arbitration Award violates the Bankruptcy Code or these ADR Procedures, such as by purporting to grant priority status to any Arbitration Award, in which case any application to vacate must be made to the Bankruptcy Court; or (ii) pursuant to the provisions of the Federal Arbitration Act, in which case any application to vacate must be to the United States District Court for the Eastern District of Michigan. Any further proceedings shall be governed by the Federal Arbitration Act. Failure to timely apply to vacate shall result in the loss of any vacation rights. Once the Arbitration Award is final, the City shall update the claims docket in this case accordingly and may file any notice of the liquidated amount of the Designated Claim that it deems necessary or appropriate for such purpose.

(k)    *Modification of the Arbitration Procedures*

The arbitration procedures described herein may be modified only after the appointment of an arbitrator in the applicable arbitration proceeding and only upon the mutual written consent of the applicable arbitrator and each of the parties.

**D.    Approval and Satisfaction of Any Settlement or Arbitration Award**

**If you hold a Designated Claim with respect to which settlement has been reached through the ADR Procedures or an Arbitration Award has been entered, please read the following carefully.  Except as otherwise agreed by the City, you will receive an allowed general unsecured nonpriority claim against the City that will be treated in accordance with the Chapter 9 Plan in the City's bankruptcy case *and not* a full cash payment of the settlement amount of your Designated Claim.   Notwithstanding the foregoing, any disputes about the priority of a Designated Claim may be raised with and determined by the Bankruptcy Court after the conclusion of the ADR Procedures.**  Payment of any settlement or award under the ADR Procedures shall be governed by the procedures set forth in this Section II.D.

1.    *Settlements Permitted at Any Stage of ADR Procedures*

Designated Claims may be settled by the City and a Designated Claimant before or during the Offer Exchange Procedures, Case Evaluation or any arbitration proceeding, or at any other point in the process.  Nothing herein shall prevent the parties from settling any claim at any time.

2.    *Release*

All settlements shall include a release of all claims relating to the underlying occurrence, including the Designated Claim and the Designated Claimant's claim against any other party with respect to whom the Stay/Injunction applies.

3.    *Settlement Reporting*

By no later than the 91st day following the General Bar Date or as soon thereafter as reasonably practicable, and every 91 days thereafter, the City will file a report with the Bankruptcy Court that identifies all Designated Claims

ATI-2587951v7

13-53846-tjt   Doc 11044   Filed 28/4/9/36   Entered 28/4/9/36 12:25:13   Page 146 of
13-53846-tjt   Doc 2362   Filed 12/24/13   Entered 12/24/13 01:17:03   Page 35 of
263                                                                           142

and the status of each such Designated Claim as it moves through the stages of these ADR Procedures.

### 4. *Satisfaction of Any Settlement or Award*

Payment of any settlement or award on account of any Designated Claim arising prior to the Petition Date shall be in the form of an allowed general unsecured nonpriority claim to be paid in the amount and form as set forth in the Chapter 9 Plan, except (a) as otherwise agreed by the City; or (b) with respect to the priority of the claim, as determined by the Bankruptcy Court as provided in Section II.D above. Notwithstanding the foregoing, nothing herein shall limit, expand or otherwise modify the City's authority to settle or pay claims or the City's authority over its property and revenues under section 904 of the Bankruptcy Code. The authority to settle Designated Claims pursuant to the ADR Procedures will be in addition to, and cumulative with, any existing authority to resolve claims against the City.

For the avoidance of doubt, all proceedings against the City (or, in the case of Multi-Party Tort Claims, against the applicable Indemnification Claimant) following the liquidation of any settlement or award shall remain subject to the Stay/Injunction, absent further order of the Court.

### E. **Failure to Resolve a Designated Claim Through ADR Procedures**

#### 1. *Liquidation of Unresolved Designated Claims in Bankruptcy Court*

Designated Claims not resolved through the ADR Procedures ("Unresolved Designated Claims") shall proceed to litigation to be liquidated. Unless the City agrees otherwise, liquidation of any Unresolved Designated Claim shall proceed in the Bankruptcy Court (to the extent that the Bankruptcy Court has subject matter jurisdiction over the Unresolved Designated Claim) as soon as practicable following the date that the ADR Procedures are concluded for an Unresolved Designated Claim (the "ADR Completion Date").[9] Such litigation will

---

[9] With respect to Unresolved Designated Claims, the ADR Completion Date will be the Case Evaluation Termination Date except where the the ADR Procedures are terminated sooner, such as where Case Evaluation was conducted with respect to a Designated Claim prior to the Petition Date, and the parties do not agree to conduct a second round of Case Evaluation. In that

be initiated by the filing of a claim objection by the City (a "Claim Objection") within 35 days after the ADR Completion Date (the "Claim Objection Deadline"). Disputes over the subject matter jurisdiction of the Bankruptcy Court shall be determined by the Bankruptcy Court, and the Designated Claimants shall retain whatever rights they have to seek withdrawal of the reference, abstention or other procedural relief in connection with a Claim Objection. *For the avoidance of doubt, consistent with 28 U.S.C. § 157(b)(5), personal injury tort and wrongful death claims shall not be heard by the Bankruptcy Court and shall be subject to Section II.E.2 below.*

2.      *Liquidation of Unresolved Designated Claims in Other Courts*

Except as provided below, if the Unresolved Designated Claim cannot be adjudicated in the Bankruptcy Court because of lack of, or limitations upon, subject matter jurisdiction or if the City does not file a Claim Objection by the Claim Objection Deadline (any such claim, a "Non-Bankruptcy Claim"), then liquidation of any such Non-Bankruptcy Claim shall proceed in either (a) the non-bankruptcy forum in which the Non-Bankruptcy Claim was pending on the Petition Date, if any, subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Non-Bankruptcy Claim was not pending in any forum on the Petition Date, then in the United States District Court for the Eastern District of Michigan or such other nonbankruptcy forum selected by the Designated Claimant that (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the Non-Bankruptcy Claim, (iii) has *in rem* jurisdiction over the property involved in the Non-Bankruptcy Claim (if applicable) and (iv) is a proper venue.  If necessary, any disputes regarding the application of this Section II.E.2 shall be determined by the Bankruptcy Court; provided that disputes about the jurisdiction of a matter presented to a non-bankruptcy court may be determined by such court.

The Stay/Injunction shall be deemed modified with respect to any Non-Bankruptcy Claim as set forth herein unless, within 35 days of the ADR Completion Date, the City files a notice (a "Stay Notice") that it intends for the Stay/Injunction to remain in effect with respect to a Non-Bankruptcy Claim.  If the City files a Stay Notice, the Stay/Injunction shall remain in place, and the applicable Designated Claimant may seek relief from the Stay/Injunction under the

---

(continued…)

instance, the ADR Completion Date will be the Offer Exchange Termination Date.

ATI-2587951v7

standards set forth in section 362(d) of the Bankruptcy Code. In addition, with respect to any Non-Bankruptcy Claims that are Multi-Party Tort Claims, an Indemnification Claimant may file a motion within 35 days of the ADR Completion Date seeking to maintain the Stay/Injunction as to the Indemnification Claimant for good cause shown.

If the City does not file a Stay Notice (or in the case of Multi-Party Tort Claims, no Indemnification Claimant asserts and establishes cause to maintain the Stay/Injunction) with respect to a Non-Bankruptcy Claim, then the Stay/Injunction shall be deemed modified solely for the purpose of, and to the extent necessary for, liquidating such Non-Bankruptcy Claim in an appropriate non-bankruptcy forum, as provided for above. For the avoidance of doubt, following the liquidation of a Non-Bankruptcy Claim, all proceedings against the City or any Indemnification Claimant relating to the Non-Bankruptcy Claim shall remain subject to the Stay/Injunction, absent further order of the Bankruptcy Court.

Notwithstanding anything herein, the City and any Designated Claimant may agree to terminate the ADR Procedures at any time and proceed to litigation of the applicable Designated Claim, as set forth herein.

## F. Duty to Negotiate in Good Faith

During the period of the ADR Procedures, the Designated Claimant and the City shall negotiate in good faith in an attempt to reach an agreement for the compromise of the applicable Designated Claim.

## G. Failure to Comply with the ADR Procedures

If a Designated Claimant fails to comply with the ADR Procedures, negotiate in good faith or cooperate with the City as may be necessary to effectuate the ADR Procedures, the Bankruptcy Court may, after notice and a hearing, find such conduct to be in violation of the ADR Order or an abandonment of or failure to prosecute the Designated Claim, or both. Upon such findings, the Bankruptcy Court may, among other things, disallow and expunge the Designated Claim, in whole or part, or grant such other or further remedy deemed just and appropriate under the circumstances, including, without limitation, awarding attorneys' fees, other fees and costs to the City.

Dated: [_____], 2013          BY ORDER OF THE COURT

ATI-2587951v7

13-53846-tjt   Doc 11044   Filed 08/19/16   Entered 08/19/16 12:25:03   Page 149 of
145
13-53846-tjt   Doc 2302   Filed 12/24/13   Entered 12/24/13 01:17:00   Page 38 of
263

# ANNEX I

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

------------------------------------------------------x
                                                      :
In re                                                 :          Chapter 9
                                                      :
CITY OF DETROIT, MICHIGAN,                            :          Case No. 13-53846
                                                      :
                                Debtor.               :          Hon. Steven W. Rhodes
                                                      :
                                                      :
------------------------------------------------------x

## <u>ADR NOTICE</u>

Service Date:

Designated Claimant(s):

Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

**Deadline to Respond:**

By this ADR Notice, the City of Detroit (the "<u>City</u>") hereby submits the above-identified claim(s) (the "<u>Designated Claim(s)</u>") in the City's chapter 9 case to alternative dispute resolution, pursuant to the procedures (the "<u>ADR Procedures</u>") established by the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims, entered by the United States Bankruptcy Court for the Eastern District of Michigan (the "<u>Bankruptcy Court</u>") on [_____], 2013. A copy of the ADR Procedures is enclosed for your reference.

The City has reviewed your Designated Claim(s) and, pursuant to the ADR Procedures, offers the amount(s) set forth below as a general unsecured

ATI-2587951v7

13-53846-tjt   Doc 11444   Filed 08/19/16   Entered 08/19/16 12:25:13   Page 151 of
263
13-53846-tjt   Doc 2302   Filed 12/24/13   Entered 12/24/13 00:17:00   Page 40 of   147

nonpriority claim in full and final settlement of your Designated Claim(s) (the "Settlement Offer").

You are required to return this ADR Notice with a Permitted Response (as defined below) to the Settlement Offer by no later than the **Deadline to Respond** indicated above.

In addition, to the extent your most recent proof(s) of claim does not: (a) state the correct amount of your Designated Claim(s); (b) expressly identify each and every cause of action and legal theory on which you base your Designated Claim(s); (c) include current, correct and complete contact information of your counsel or other representative; or (d) provide all documents on which you rely in support of your Designated Claim(s), you hereby are requested to provide all such information and documentation with your Permitted Response.

IF YOU DO NOT RETURN THIS ADR NOTICE WITH THE REQUESTED INFORMATION AND A PERMITTED RESPONSE TO THE SETTLEMENT OFFER TO **[INSERT THE CITY'S REPRESENTATIVE]** SO THAT IT IS RECEIVED BY THE DEADLINE TO RESPOND, YOU WILL BE DEEMED TO HAVE REJECTED THE SETTLEMENT OFFER AND THE LIQUIDATION OF YOUR DESIGNATED CLAIMS WILL ADVANCE TO CASE EVALUATION AS SET FORTH IN SECTION II.B OF THE ADR PROCEDURES.

IN ADDITION, YOU ARE REQUIRED TO INDICATE EXPRESSLY WHETHER YOU CONSENT TO **BINDING ARBITRATION** YOUR DESIGNATED CLAIM CANNOT BE SETTLED THROUGH THE OFFER EXCHANGE PROCEDURES OR CASE EVALUATION. PLEASE COMPLETE THE APPROPRIATE BOX BELOW TO INDICATE WHETHER YOU DO OR DO NOT CONSENT TO **BINDING ARBITRATION**. *IF YOU DO NOT COMPLETE THE BOX BELOW, YOU WILL BE DEEMED TO HAVE REJECTED BINDING ARBITRATION WITH RESPECT TO YOUR DESIGNATED CLAIM*. PLEASE NOTE THAT YOUR CONSENT TO **BINDING ARBITRATION** CANNOT SUBSEQUENTLY BE WITHDRAWN.

In addition, any attempt to opt out of binding arbitration in the response to this Notice shall be ineffective if you previously have consented in writing (either prepetition or postpetition) to binding arbitration as a means to resolve your claim(s). Details about the arbitration process, including the sharing of fees, are set forth in Section II.C of the ADR Procedures.

ATI-2587951v7
-2-
263
13-53846-tjt   Doc 11044   Filed 02/19/16   Entered 02/19/16 12:25:13   Page 152 of
13-53846-tjt   Doc 2302   Filed 12/24/13   Entered 12/24/13 01:17:00   Page 151 of   148

Note that binding arbitration will only take place if **_all parties_** to a claim dispute – including the City – agree to submit the dispute to arbitration. **[Optional: May add statement about the City's consent to binding arbitration, if desired.]**

YOU MUST RESPOND TO THE FOLLOWING SETTLEMENT OFFER:

**Settlement Offer**: The City offers you an allowed general unsecured nonpriority claim in the amount of **[$_____]** against the City in full satisfaction of your Designated Claim(s), to be satisfied in accordance with any plan of adjustment of debts confirmed and implemented in the City's chapter 9 case.

The only permitted responses (the "Permitted Responses") to the Settlement Offer are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (a "Counteroffer"). Accordingly, please select your Permitted Response below:

> _____ I/we agree to and accept the terms of the Settlement Offer.
>
> **or**
>
> _____ I/we reject the Settlement Offer. However, I/we will accept an allowed general unsecured claim against the City in the amount of $_____ in full satisfaction of the Designated Claim(s), to be satisfied in accordance with any plan of adjustment of debts confirmed and implemented in the City's chapter 9 case.

SECTION II.A.3 OF THE ADR PROCEDURES SETS FORTH THE RESTRICTIONS ON COUNTEROFFERS. YOUR COUNTEROFFER MAY NOT INCLUDE UNKNOWN, UNLIQUIDATED OR SIMILAR AMOUNTS AND MAY NOT EXCEED THE AMOUNT OR IMPROVE THE PRIORITY SET FORTH IN YOUR MOST RECENT TIMELY FILED OR AMENDED PROOF OF CLAIM. YOU MAY NOT AMEND YOUR PROOF OF CLAIM SOLELY FOR THE PURPOSE OF PROPOSING A COUNTEROFFER OF A HIGHER AMOUNT OR A BETTER PRIORITY. IF YOU RETURN THIS FORM WITH A COUNTEROFFER THAT DOES NOT COMPLY WITH THE TERMS OF THE ADR PROCEDURES YOU WILL BE DEEMED TO HAVE REJECTED THE SETTLEMENT OFFER AND THE LIQUIDATION OF YOUR

ATI-2587951v7
-3-
13-53846-tjt   Doc 13044   Filed 12/24/16   Entered 12/24/16 12:50:13   Page 153 of
263
13-53846-tjt   Doc 11424   Filed 08/19/16   Entered 08/19/16 11:25:13   Page 152 of 149

DESIGNATED CLAIMS WILL ADVANCE TO CASE EVALUATION AS SET
FORTH IN SECTION II.B OF THE ADR PROCEDURES.

> Please indicate below whether you consent to binding arbitration with respect
> to the Designated Claim(s):
>
> _____ I/WE **CONSENT** TO BINDING ARBITRATION.
>
> _____ I/WE **DO NOT CONSENT** TO BINDING ARBITRATION.
>
> I acknowledge that my/our consent to binding arbitration, once given, cannot
> be withdrawn.

[Signature of the Designated
Claimant's Authorized Representative]

By:  _____
[Printed Name]


**[N.B. – Additional Signature Lines
as Needed.]**

[Signature of the Designated
Claimant's Authorized Representative]

By:  _____
[Printed Name]

# ANNEX II

**Rule 2.403 Case Evaluation**

(A) Scope and Applicability of Rule.

(1) A court may submit to case evaluation any civil action in which the relief sought is primarily money damages or division of property.

(2) Case evaluation of tort cases filed in circuit court is mandatory beginning with actions filed after the effective dates of Chapters 49 and 49A of the Revised Judicature Act, as added by 1986 PA 178.

(3) A court may exempt claims seeking equitable relief from case evaluation for good cause shown on motion or by stipulation of the parties if the court finds that case evaluation of such claims would be inappropriate.

(4) Cases filed in district court may be submitted to case evaluation under this rule. The time periods set forth in subrules (B)(1), (G)(1), (L)(1) and (L)(2) may be shortened at the discretion of the district judge to whom the case is assigned.

(B) Selection of Cases.

(1) The judge to whom an action is assigned or the chief judge may select it for case evaluation by written order after the filing of the answer

(a) on written stipulation by the parties,

(b) on written motion by a party, or

(c) on the judge's own initiative.

(2) Selection of an action for case evaluation has no effect on the normal progress of the action toward trial.

(C) Objections to Case Evaluation.

(1) To object to case evaluation, a party must file a written motion to remove from case evaluation and a notice of hearing of the motion and serve a copy on the attorneys of record and the ADR clerk within 14 days after notice of the order assigning the action to case evaluation. The motion must be set for hearing within 14 days after it is filed, unless the court orders otherwise.

(2) A timely motion must be heard before the case is submitted to case evaluation.

(D) Case Evaluation Panel.

(1) Case evaluation panels shall be composed of 3 persons.

(2) The procedure for selecting case evaluation panels is as provided in MCR 2.404.

(3) A judge may be selected as a member of a case evaluation panel, but may not preside at the trial of any action in which he or she served as a case evaluator.

(4) A case evaluator may not be called as a witness at trial.

(E) Disqualification of Case Evaluators. The rule for disqualification of a case evaluator is the same as that provided in MCR 2.003 for the disqualification of a judge.

(F) ADR Clerk. The court shall designate the ADR clerk specified under MCR 2.410, or some other person, to administer the case evaluation program. In this rule and MCR 2.404, "ADR clerk" refers to the person so designated.

(G) Scheduling Case Evaluation Hearing.

(1) The ADR clerk shall set a time and place for the hearing and send notice to the case evaluators and the attorneys at least 42 days before the date set.

(2) Adjournments may be granted only for good cause, in accordance with MCR 2.503.

(H) Fees.

(1) Each party must send a check for $75 made payable in the manner and within the time specified in the notice of the case evaluation hearing. However, if a judge is a member of the panel, the fee is $50. If the order for case evaluation directs that payment be made to the ADR clerk, the ADR clerk shall arrange payment to the case evaluators. Except by stipulation and court order, the parties may not make any other payment of fees or expenses to the case evaluators than that provided in this subrule.

(2) Only a single fee is required of each party, even where there are counterclaims, cross-claims, or third-party claims. A person entitled to a fee waiver under MCR 2.002 is entitled to a waiver of fees under this rule.

(3) If one claim is derivative of another (e.g., husband-wife, parent-child) they must be treated as a single claim, with one fee to be paid and a single award made by the case evaluators.

(4) Fees paid pursuant to subrule (H) shall be refunded to the parties if

(a) the court sets aside the order submitting the case to case evaluation or on its own initiative adjourns the case evaluation hearing, or

(b) the parties notify the ADR clerk in writing at least 14 days before the case evaluation hearing of the settlement, dismissal, or entry of judgment disposing of the action, or of an order of adjournment on stipulation or the motion of a party.

If case evaluation is rescheduled at a later time, the fee provisions of subrule (H) apply regardless of whether previously paid fees have been refunded.

(5) Fees paid pursuant to subrule (H) shall not be refunded to the parties if

(a) in the case of an adjournment, the adjournment order sets a new date for case evaluation and the fees are applied to the new date, or

(b) the request for and granting of adjournment is made within 14 days of the scheduled case evaluation, unless waived for good cause.

Penalties for late filing of papers under subrule (I)(2) are not to be refunded.

(I) Submission of Summary and Supporting Documents.

(1) Unless otherwise provided in the notice of hearing, at least 14 days before the hearing, each party shall

(a) serve a copy of the case evaluation summary and supporting documents in accordance with MCR 2.107, and

(b) file a proof of service and three copies of a case evaluation summary and supporting documents with the ADR clerk.

(2) Each failure to timely file and serve the materials identified in subrule (1) and each subsequent filing of supplemental materials within 14 days of the hearing, subjects the offending attorney or party to a $150 penalty to be paid in the manner specified in the notice of the case evaluation hearing. An offending attorney shall not charge the penalty to the client, unless the client agreed in writing to be responsible for the penalty.

(3) The case evaluation summary shall consist of a concise summary setting forth that party's factual and legal position on issues presented by the action. Except as permitted by the court, the summary shall not exceed 20 pages double spaced, exclusive of attachments. Quotations and footnotes may be single spaced. At least one inch margins must be used, and printing shall not be smaller than 12-point font.

(J) Conduct of Hearing.

(1) A party has the right, but is not required, to attend a case evaluation hearing. If scars, disfigurement, or other unusual conditions exist, they may be demonstrated to the panel by a personal appearance; however, no testimony will be taken or permitted of any party.

(2) The rules of evidence do not apply before the case evaluation panel. Factual information having a bearing on damages or liability must be supported by documentary evidence, if possible.

(3) Oral presentation shall be limited to 15 minutes per side unless multiple parties or unusual circumstances warrant additional time. Information on settlement negotiations not protected under MCR 2.412 and applicable insurance policy limits shall be disclosed at the request of the case evaluation panel.

(4) Statements by the attorneys and the briefs or summaries are not admissible in any court or evidentiary proceeding.

(5) Counsel or the parties may not engage in ex parte communications with the case evaluators concerning the action prior to the hearing. After the evaluation, the case evaluators need not respond to inquiries by the parties or counsel regarding the proceeding or the evaluation.

(K) Decision.

ATI-2587951v7

13-53846-tjt   Doc 11044   Filed 02/9/16   Entered 02/9/16 12:25:13   Page 158 of
13-53846-tjt   Doc 2362   Filed 12/24/13   Entered 12/24/13 0:17:00   Page 157 of   154
263

(1) Within 14 days after the hearing, the panel will make an evaluation and notify the attorney for each party of its evaluation in writing. If an award is not unanimous, the evaluation must so indicate.

(2) Except as provided in subrule (H)(3), the evaluation must include a separate award as to each plaintiff's claim against each defendant and as to each cross-claim, counterclaim, or third-party claim that has been filed in the action. For the purpose of this subrule, all such claims filed by any one party against any other party shall be treated as a single claim.

(3) The evaluation may not include a separate award on any claim for equitable relief, but the panel may consider such claims in determining the amount of an award.

(4) In a tort case to which MCL 600.4915(2) or MCL 600.4963(2) applies, if the panel unanimously finds that a party's action or defense as to any other party is frivolous, the panel shall so indicate on the evaluation. For the purpose of this rule, an action or defense is "frivolous" if, as to all of a plaintiff's claims or all of a defendant's defenses to liability, at least 1 of the following conditions is met:

(a) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the opposing party.

(b) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(c) The party's legal position was devoid of arguable legal merit.

(5) In an action alleging medical malpractice to which MCL 600.4915 applies, the evaluation must include a specific finding that

(a) there has been a breach of the applicable standard of care,

(b) there has not been a breach of the applicable standard of care, or

(c) reasonable minds could differ as to whether there has been a breach of the applicable standard of care.

(L) Acceptance or Rejection of Evaluation.

(1) Each party shall file a written acceptance or rejection of the panel's evaluation with the ADR clerk within 28 days after service of the panel's evaluation. Even if there are separate awards on multiple claims, the party must either accept or reject the evaluation in its entirety as to a particular opposing party. The failure to file a written acceptance or rejection within 28 days constitutes rejection.

(2) There may be no disclosure of a party's acceptance or rejection of the panel's evaluation until the expiration of the 28-day period, at which time the ADR clerk shall send a notice indicating each party's acceptance or rejection of the panel's evaluation.

(3) In case evaluations involving multiple parties the following rules apply:

(a) Each party has the option of accepting all of the awards covering the claims by or against that party or of accepting some and rejecting others.

ATI-2587951v7

However, as to any particular opposing party, the party must either accept or reject the evaluation in its entirety.

(b) A party who accepts all of the awards may specifically indicate that he or she intends the acceptance to be effective only if

(i) all opposing parties accept, and/or

(ii) the opposing parties accept as to specified coparties.

If such a limitation is not included in the acceptance, an accepting party is deemed to have agreed to entry of judgment, or dismissal as provided in subrule (M)(1), as to that party and those of the opposing parties who accept, with the action to continue between the accepting party and those opposing parties who reject.

(c) If a party makes a limited acceptance under subrule (L)(3)(b) and some of the opposing parties accept and others reject, for the purposes of the cost provisions of subrule (O) the party who made the limited acceptance is deemed to have rejected as to those opposing parties who accept.

(M) Effect of Acceptance of Evaluation.

(1) If all the parties accept the panel's evaluation, judgment will be entered in accordance with the evaluation, unless the amount of the award is paid within 28 days after notification of the acceptances, in which case the court shall dismiss the action with prejudice. The judgment or dismissal shall be deemed to dispose of all claims in the action and includes all fees, costs, and interest to the date it is entered, except for cases involving rights to personal protection insurance benefits under MCL 500.3101 *et seq.*, for which judgment or dismissal shall not be deemed to dispose of claims that have not accrued as of the date of the case evaluation hearing.

(2) If only a part of an action has been submitted to case evaluation pursuant to subrule (A)(3) and all of the parties accept the panel's evaluation, the court shall enter an order disposing of only those claims.

(3) In a case involving multiple parties, judgment, or dismissal as provided in subrule (1), shall be entered as to those opposing parties who have accepted the portions of the evaluation that apply to them.

(N) Proceedings After Rejection.

(1) If all or part of the evaluation of the case evaluation panel is rejected, the action proceeds to trial in the normal fashion.

(2) If a party's claim or defense was found to be frivolous under subrule (K)(4), that party may request that the court review the panel's finding by filing a motion within 14 days after the ADR clerk sends notice of the rejection of the case evaluation award.

(a) The motion shall be submitted to the court on the case evaluation summaries and documents that were considered by the case evaluation panel. No other exhibits or testimony may be submitted. However, oral argument on the motion shall be permitted.

(b) After reviewing the materials submitted, the court shall determine whether the action or defense is frivolous.

(c) If the court agrees with the panel's determination, the provisions of subrule (N)(3) apply, except that the bond must be filed within 28 days after the entry of the court's order determining the action or defense to be frivolous.

(d) The judge who hears a motion under this subrule may not preside at a nonjury trial of the action.

(3) Except as provided in subrule (2), if a party's claim or defense was found to be frivolous under subrule (K)(4), that party shall post a cash or surety bond, pursuant to MCR 3.604, in the amount of $5,000 for each party against whom the action or defense was determined to be frivolous.

(a) The bond must be posted within 56 days after the case evaluation hearing or at least 14 days before trial, whichever is earlier.

(b) If a surety bond is filed, an insurance company that insures the defendant against a claim made in the action may not act as the surety.

(c) If the bond is not posted as required by this rule, the court shall dismiss a claim found to have been frivolous, and enter the default of a defendant whose defense was found to be frivolous. The action shall proceed to trial as to the remaining claims and parties, and as to the amount of damages against a defendant in default.

(d) If judgment is entered against the party who posted the bond, the bond shall be used to pay any costs awarded against that party by the court under any applicable law or court rule. MCR 3.604 applies to proceedings to enforce the bond.

(4) The ADR clerk shall place a copy of the case evaluation and the parties' acceptances and rejections in a sealed envelope for filing with the clerk of the court. In a nonjury action, the envelope may not be opened and the parties may not reveal the amount of the evaluation until the judge has rendered judgment.

(O) Rejecting Party's Liability for Costs.

(1) If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

(2) For the purpose of this rule "verdict" includes,

(a) a jury verdict,

(b) a judgment by the court after a nonjury trial,

(c) a judgment entered as a result of a ruling on a motion after rejection of the case evaluation.

ATI-2587951v7

(3) For the purpose of subrule (O)(1), a verdict must be adjusted by adding to it assessable costs and interest on the amount of the verdict from the filing of the complaint to the date of the case evaluation, and, if applicable, by making the adjustment of future damages as provided by MCL 600.6306. After this adjustment, the verdict is considered more favorable to a defendant if it is more than 10 percent below the evaluation, and is considered more favorable to the plaintiff if it is more than 10 percent above the evaluation. If the evaluation was zero, a verdict finding that a defendant is not liable to the plaintiff shall be deemed more favorable to the defendant.

(4) In cases involving multiple parties, the following rules apply:

(a) Except as provided in subrule (O)(4)(b), in determining whether the verdict is more favorable to a party than the case evaluation, the court shall consider only the amount of the evaluation and verdict as to the particular pair of parties, rather than the aggregate evaluation or verdict as to all parties. However, costs may not be imposed on a plaintiff who obtains an aggregate verdict more favorable to the plaintiff than the aggregate evaluation.

(b) If the verdict against more than one defendant is based on their joint and several liability, the plaintiff may not recover costs unless the verdict is more favorable to the plaintiff than the total case evaluation as to those defendants, and a defendant may not recover costs unless the verdict is more favorable to that defendant than the case evaluation as to that defendant.

(c) Except as provided by subrule (O)(10), in a personal injury action, for the purpose of subrule (O)(1), the verdict against a particular defendant shall not be adjusted by applying that defendant's proportion of fault as determined under MCL 600.6304(1)-(2).

(5) If the verdict awards equitable relief, costs may be awarded if the court determines that

(a) taking into account both monetary relief (adjusted as provided in subrule [O][3]) and equitable relief, the verdict is not more favorable to the rejecting party than the evaluation, or, in situations where both parties have rejected the evaluation, the verdict in favor of the party seeking costs is more favorable than the case evaluation, and

(b) it is fair to award costs under all of the circumstances.

(6) For the purpose of this rule, actual costs are

(a) those costs taxable in any civil action, and

(b) a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation.

For the purpose of determining taxable costs under this subrule and under MCR 2.625, the party entitled to recover actual costs under this rule shall be considered the prevailing party.

ATI-2587951v7

13-53846-tjt   Doc 11044   Filed 02/19/16   Entered 02/19/16 12:25:13   Page 162 of
263
13-53846-tjt   Doc 2302   Filed 12/24/13   Entered 12/24/13 01:17:00   Page 61 of   158

(7) Costs shall not be awarded if the case evaluation award was not unanimous. If case evaluation results in a nonunanimous award, a case may be ordered to a subsequent case evaluation hearing conducted without reference to the prior case evaluation award, or other alternative dispute resolution processes, at the expense of the parties, pursuant to MCR 2.410(C)(1).

(8) A request for costs under this subrule must be filed and served within 28 days after the entry of the judgment or entry of an order denying a timely motion for a new trial or to set aside the judgment.

(9) In an action under MCL 436.1801, if the plaintiff rejects the award against the minor or alleged intoxicated person, or is deemed to have rejected such an award under subrule (L)(3)(c), the court shall not award costs against the plaintiff in favor of the minor or alleged intoxicated person unless it finds that the rejection was not motivated by the need to comply with MCL 436.1801(6).

(10) For the purpose of subrule (O)(1), in an action filed on or after March 28, 1996, and based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, a verdict awarding damages shall be adjusted for relative fault as provided by MCL 600.6304.

(11) If the "verdict" is the result of a motion as provided by subrule (O)(2)(c), the court may, in the interest of justice, refuse to award actual costs.

## Rule 2.404 Selection of Case Evaluation Panels

(A) Case Evaluator Selection Plans.

(1) Requirement. Each trial court that submits cases to case evaluation under MCR 2.403 shall adopt by local administrative order a plan to maintain a list of persons available to serve as case evaluators and to assign case evaluators from the list to panels. The plan must be in writing and available to the public in the ADR clerk's office.

(2) Alternative Plans.

(a) A plan adopted by a district or probate court may use the list of case evaluators and appointment procedure of the circuit court for the circuit in which the court is located.

(b) Courts in adjoining circuits or districts may jointly adopt and administer a case evaluation plan.

(c) If it is not feasible for a court to adopt its own plan because of the low volume of cases to be submitted or because of inadequate numbers of available case evaluators, the court may enter into an agreement with a neighboring court to refer cases for case evaluation under the other court's system. The agreement may provide for payment by the referring court to cover the cost of administering case evaluation. However, fees and costs may not be assessed against the parties to actions evaluated except as provided by MCR 2.403.

(d) Other alternative plans must be submitted as local court rules under MCR 8.112(A).

ATI-2587951v7

13-53846-tjt   Doc 11044   Filed 08/09/16   Entered 08/09/16 12:25:13   Page 163 of
13-53846-tjt   Doc 2302   Filed 12/24/13   Entered 12/24/13 01:17:00   Page 162 of
263                                                                           159

(B) Lists of Case Evaluators.

   (1) Application. An eligible person desiring to serve as a case evaluator may apply to the ADR clerk to be placed on the list of case evaluators. Application forms shall be available in the office of the ADR clerk. The form shall include an optional section identifying the applicant's gender and racial/ethnic background. The form shall include a certification that

      (a) the case evaluator meets the requirements for service under the court's selection plan, and

      (b) the case evaluator will not discriminate against parties, attorneys, or other case evaluators on the basis of race, ethnic origin, gender, or other protected personal characteristic.

   (2) Eligibility. To be eligible to serve as a case evaluator, a person must meet the qualifications provided by this subrule.

      (a) The applicant must have been a practicing lawyer for at least 5 years and be a member in good standing of the State Bar of Michigan. The plan may not require membership in any other organization as a qualification for service as a case evaluator.

      (b) An applicant must reside, maintain an office, or have an active practice in the jurisdiction for which the list of case evaluators is compiled.

      (c) An applicant must demonstrate that a substantial portion of the applicant's practice for the last 5 years has been devoted to civil litigation matters, including investigation, discovery, motion practice, case evaluation, settlement, trial preparation, and/or trial.

      (d) If separate sublists are maintained for specific types of cases, the applicant must have had an active practice in the practice area for which the case evaluator is listed for at least the last 3 years.

   If there are insufficient numbers of potential case evaluators meeting the qualifications stated in this rule, the plan may provide for consideration of alternative qualifications.

   (3) Review of Applications. The plan shall provide for a person or committee to review applications annually, or more frequently if appropriate, and compile one or more lists of qualified case evaluators. Persons meeting the qualifications specified in this rule shall be placed on the list of approved case evaluators. Selections shall be made without regard to race, ethnic origin, or gender.

      (a) If an individual performs this review function, the person must be an employee of the court.

      (b) If a committee performs this review function, the following provisions apply.

         (i) The committee must have at least three members.

         (ii) The selection of committee members shall be designed to assure that the goals stated in subrule (D)(2) will be met.

ATI-2587951v7

(iii) A person may not serve on the committee more than 3 years in any 9 year period.

(c) Applicants who are not placed on the case evaluator list or lists shall be notified of that decision. The plan shall provide a procedure by which such an applicant may seek reconsideration of the decision by some other person or committee. The plan need not provide for a hearing of any kind as part of the reconsideration process. Documents considered in the initial review process shall be retained for at least the period of time during which the applicant can seek reconsideration of the original decision.

(4) Specialized Lists. If the number and qualifications of available case evaluators makes it practicable to do so, the ADR clerk shall maintain

(a) separate lists for various types of cases, and,

(b) where appropriate for the type of cases, separate sublists of case evaluators who primarily represent plaintiffs, primarily represent defendants, and neutral case evaluators whose practices are not identifiable as representing primarily plaintiffs or defendants.

(5) Reapplication. Persons shall be placed on the list of case evaluators for a fixed period of time, not to exceed seven years, and must reapply at the end of that time in the manner directed by the court.

(6) Availability of Lists. The list of case evaluators must be available to the public in the ADR clerk's office.

(7) Removal from List. The plan must include a procedure for removal from the list of case evaluators who have demonstrated incompetency, bias, made themselves consistently unavailable to serve as a case evaluator, or for other just cause.

(8) The court may require case evaluators to attend orientation or training sessions or provide written materials explaining the case evaluation process and the operation of the court's case evaluation program. However, case evaluators may not be charged any fees or costs for such programs or materials.

(C) Assignments to Panels.

(1) Method of Assignment. The ADR clerk shall assign case evaluators to panels in a random or rotating manner that assures as nearly as possible that each case evaluator on a list or sublist is assigned approximately the same number of cases over a period of time. If a substitute case evaluator must be assigned, the same or similar assignment procedure shall be used to select the substitute. The ADR clerk shall maintain records of service of case evaluators on panels and shall make those records available on request.

(2) Assignment from Sublists. If sublists of plaintiff, defense, and neutral case evaluators are maintained for a particular type of case, the panel shall include one case evaluator who primarily represents plaintiffs, one case evaluator who primarily represents defendants, and one neutral case evaluator. If a judge is assigned to a panel as permitted by MCR 2.403(D)(3), the judge shall serve as the neutral case evaluator if sublists are maintained for that class of cases.

(3) Special Panels. On stipulation of the parties, the court may appoint a panel selected by the parties. In such a case, the qualification requirements of subrule (B)(2) do not apply, and the parties may agree to modification of the procedures for conduct of case evaluation. Nothing in this rule or MCR 2.403 precludes parties from stipulating to other ADR procedures that may aid in

resolution of the case.

(D) Supervision of Selection Process.

(1) The chief judge shall exercise general supervision over the implementation of this rule and shall review the operation of the court's case evaluation plan at least annually to assure compliance with this rule. In the event of noncompliance, the court shall take such action as is needed. This action may include recruiting persons to serve as case evaluators or changing the court's case evaluation plan.

(2) In implementing the selection plan, the court, court employees, and attorneys involved in the procedure shall take all steps necessary to assure that as far as reasonably possible the list of case evaluators fairly reflects the racial, ethnic, and gender diversity of the members of the state bar in the jurisdiction for which the list is compiled who are eligible to serve as case evaluators.

ATI-2587951v7

13-53846-tjt   Doc 11044   Filed 03/19/16   Entered 03/19/16 12:25:13   Page 166 of
263
13-53846-tjt   Doc 2302   Filed 12/24/13   Entered 12/24/13 01:17:00   Page 55 of 61     162

# **ANNEX III**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
-------------------------------------------------------x
                                   :
In re                              :          Chapter 9
                                   :
CITY OF DETROIT, MICHIGAN,         :          Case No. 13-53846
                                   :
                    Debtor.        :          Hon. Steven W. Rhodes
                                   :
                                   :
-------------------------------------------------------x
```

## CASE EVALUATION NOTICE

Service Date:

Claimant(s):

Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

By this Case Evaluation Notice, the City of Detroit (the "City")
hereby submits the above-identified claim(s) (the "Designated Claim(s)") in the
City's chapter 9 case to **case evaluation**, pursuant to the procedures (the "ADR
Procedures") established by the Order, Pursuant to Sections 105 and 502 of the
Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to
Promote the Liquidation of Certain Prepetition Claims, entered by the United
States Bankruptcy Court for the Eastern District of Michigan on [_____], 2013.
The City has been unable to resolve your Designated Claim(s) on a consensual
basis through the offer exchange component of the ADR Procedures.
THEREFORE, YOUR DESIGNATED CLAIM(S) WILL PROCEED TO CASE
EVALUATION, PURSUANT TO THE ADR PROCEDURES.

In accordance with the ADR Procedures, a copy of this Case
Evaluation Notice has been served upon the Clerk (the "ADR Clerk") of the

Wayne County Mediation Tribunal Association (the "MTA").  As described more fully in the ADR Procedures, the ADR Clerk will select a panel of three evaluators to conduct the case evaluation, set a time and place for the case evaluation hearing and provide you with at least 42 days notice of the hearing.  Adjournments of the case evaluation hearing may be granted only for good cause. The ADR Procedures also require you and the City to share the administrative fees and costs of case evaluation charged by the mediation.

A complete copy of the ADR Procedures is enclosed for your reference.  Please refer to Section II.B of the ADR Procedures, concerning **case evaluation**.

[Signature of the City's Authorized Person]

# ANNEX IV

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
------------------------------------------------------x
                                    :
In re                               :        Chapter 9
                                    :
CITY OF DETROIT, MICHIGAN,          :        Case No. 13-53846
                                    :
                    Debtor.         :        Hon. Steven W. Rhodes
                                    :
                                    :
------------------------------------------------------x
```

## ARBITRATION NOTICE

Service Date:

Claimant(s):

Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

   By this Arbitration Notice, the City of Detroit (the "<u>City</u>") hereby submits the above-identified claim(s) (the "<u>Designated Claim(s)</u>") in the City's chapter 9 case to **binding arbitration**, pursuant to the procedures (the "<u>ADR Procedures</u>") established by the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims, entered by the United States Bankruptcy Court for the Eastern District of Michigan on [_____], 2013. The City has been unable to resolve your Designated Claim(s) on a consensual basis through the offer exchange component of the ADR Procedures or through case evaluation.  THE CITY **[PREVIOUSLY HAS CONSENTED]/[HEREBY CONSENTS]** TO BINDING ARBITRATION OF THE DESIGNATED CLAIM(S).  YOU PREVIOUSLY HAVE CONSENTED TO BINDING ARBITRATION.  THEREFORE, YOUR DESIGNATED CLAIM(S) WILL

PROCEED TO BINDING ARBITRATION, PURSUANT TO THE ADR PROCEDURES.

In accordance with the ADR Procedures, a copy of this Arbitration Notice has been served upon the Clerk (the "ADR Clerk") of the Wayne County Mediation Tribunal Association (the "MTA").  As described more fully in the ADR Procedures, the ADR Clerk will select an arbitrator to conduct the arbitration hearing and provide notice to you and the arbitrator of his or her appointment. All arbitration hearings are scheduled by the arbitrator, in consultation with the parties and are conducted in Detroit, Michigan unless otherwise agreed by all of the parties and the arbitrator.  Generally, the arbitration hearing must be held no later than 112 days after the date of appointment of the arbitrator.  The ADR Procedures also require you and the City to share the administrative fees and costs of arbitration charged by the MTA.

A complete copy of the ADR Procedures is enclosed for your reference.  Please refer to Section II.C of the ADR Procedures, concerning **binding arbitration**.

[Signature of the City's Authorized Person]

In re:

Chapter 9

CITY OF DETROIT, MICHIGAN,

Case No. 13-53846
Hon. Steven Rhodes

Debtor,

---

## MOTION OF PREPETITION 42 U.S.C. § 1983 CLAIMANTS, PUSUANT TO SECTION 1102(a)(2) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER DIRECTING THE APPOINTMENT OF A COMMITTEE OF PREPEITION 42 U.S.C. § 1983 CLAIMANTS

Prepetition claimants with lawsuits alleging claims against the City, its employee or both under 42 U.S.C. § 1983 that are pending in the United States District Court (the "1983 Claimants"), as interested parties in the above-captioned case, hereby moves the Court, pursuant to section 1102(a)(2) of title 11 of the United States Code (the "Code"), for the entry of an order directing the appointment of a 42 U.S.C. § 1983 claimant committee to represent 1983 Claimants in connection with this case. In support of this Motion, the 1983 Claimants respectfully represents as follows:

### GENERAL BACKGROUND

1. On July 18, 2013 the City of Detroit (the "City") filed a voluntary petition for relief under chapter 9 of title 11 of the United States Bankruptcy Code [Docket No. 113].

1

2.   On July 25, 2013, this court entered both automatic and extended Stays of Proceedings [Docket No. 166].

3.   On October 8, 2013, the Court entered an Order [Docket No. 1114] denying a tort claimant's request for relief from the automatic stay of sections 362 and 922 of the Bankruptcy Code, subject to the City's filing, on or before November 12, 2013, "a motion for approval of an efficient process for liquidating all of the tort claims or a motion for extension of time to file such a motion."

4.   On November 12, 2013, the City filed the Debtor's Motion for Entry of An Order Approving Alternative Dispute Resolution Procedures To Promote the Liquidation of Certain Prepetition Tort Claims (the "ADR Motion") [Docket No. 1665]. The ADR Motion seeks approval for a set of mandatory alternative dispute resolution procedures (the "ADR Procedures") for the liquidation of tort claims and other Designated Claims. The proposed ADR Procedures are comprise of up to three stages: (a) Offer and Exchange; (b) Case Evaluation; and (c) Binding Arbitration, if agreed to by the parties.

5.   The ADR Motion identified certain Initial Designated Claims allegedly appropriate for liquidation through the ADR Procedures.

6.   The Initial Designated Claims consists of any and all timely filed prepetition: (a) personal injury tort or wrongful death claims; (b) property damage claims; or (c) claims relating to the operation of motor vehicles for which the City is

2

self-insured pursuant to Chapter 31 of Michigan's Insurance Code of 1956, M.C.L. §§ 500. 3101, *et seq*.

7.    The 1983 Claimants filed an objection to the ADR Motion [Docket No. 2211]. The following responses were also filed:

(a)    the response [Docket Nos. 1763 and 1765] of Jeffrey Sanders;

(b)    the objection [Docket No 1828] of LaSalle Town Houses Cooperative Association, Nicolet Town Houses Cooperative Association and St. James Cooperative (collectively, the "Cooperatives");

(c)    the limited objection [Docket No. 1834] of the Police and Fire Retirement System of the City of Detroit and the General Retirement System (together, the "Retirement System");

(d)    the objection [Docket No. 1866] (the "Ryan Response") of Deborah Ryan;

(e)    the limited objection [Docket No. 1902] of the Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit Police Lieutenants & Sergeants Association and the Detroit Police Command Officers Association (collectively, the "Public Safety Unions"); and

(f)    the objection [Docket No. 1915] of the Michigan Council 25 the American Federation of State, County and Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees ("AFSCME").

8.    The City also received informal response (collectively, the "Informal Responses") from the following parties:

(a)    the United States Department of Justice (the "DOJ");

(b)    Financial Guaranty Insurance Company ("FGIC");

3

(c)     Ambac Assurance Corporation ("Ambac"); and

(d)     Amalgamated Transit Union Local 26 ("ATU").

9.      On December 16, 2013, at a hearing before the Court (the "Hearing") the 1983 Claimants presented evidence that Case Evaluations are not an effective method for resolving prepetition 42 U.S.C. § 1983 claims.

10.     The Court having considered the statements of counsel indicated that the Court would confer with Chief Judge Gerald Rosen on the effectiveness of Case Evaluation.

11.     On December 20, 1013, the City and the Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit Police Lieutenants & Sergeants Association, and the Detroit Police Command Officers Association (collectively, the "Public Safety Unions"), filed a Stipulation For an Order Resolving Motion of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, For Entry of an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims [Docket No. 2272] (the "Stipulated Order").

12.     On December 24, 2013, the Court entered an Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims [Docket No. 2302] (the "ADR Order"). The ADR Order is the proposed order that

4

the City and Public Safety Unions submitted for entry, except that the Court added paragraph 20 addressing claims under 42 U.S.C. § 1983 pending in the district court. Paragraph 20 states as follows:

> Notwithstanding anything in this Order, the "ADR Procedures" that this Order approves (Annex 1), or in the ADR Procedures Motion, all lawsuits alleging claims against the City, its employees or both under 42 U.S.C. § 1983 that are pending in the United States District Court are referred to Chief United Stated District Judge Gerald Rosen for mediation under such procedures as he determines.

13.     The Court should appoint a Creditor Committee consisting of 1983 Claimants to protect the rights and interest of this class of claimants.

## JURISDICTION

14.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

15.     The 1983 Claimants by and through their undersigned attorney hereby seek an order, pursuant to section 1102(a)(2) of the Bankruptcy Code, directing the United States Trustee for the Eastern District of Michigan (the "U.S. Trustee") to appoint an official creditor committee (the "42 U.S.C. § 1983 Claimant Committee" to act as the authorized representative of those 1983 Claimants identified in the ADR Order.

# BASIS FOR RELIEF

## *Appointment of a 42 U.S.C. § 1983 Claimant Committee is Justified*

16.     Section 1102(a)(2) of the Bankruptcy Code provides as follows:

On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.

11 U.S.C. § 1102(a)(2). Section 1102 of the Bankruptcy Code is made applicable in a case under chapter 9 by section 901 of the Bankruptcy Code. 11 U.S.C. § 901(a).

17.     In the context of chapter 11 cases whether the appointment of a specific committee is appropriate depends on the facts and circumstances of the case. See In re Beker Indus. Corp., 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985) ("The statute affords no test of adequate representation, leaving the bankruptcy court with discretion to examine the facts of each case to determine if additional committees are warranted").

18.     In determining whether to appoint a committee under section 1102(a)(2) of the Bankruptcy Code, "the following non-exclusive factors are the most pertinent: (a) the nature of the case; (b) identification of the various groups of creditors and their interests; (c) the composition of the committee; and (d) the ability of the committee to properly function." In re Dow Corning Corp., 194 B.R. 121, 142 (Bankr. E.D. Mich. 1996).

6

19.    In this case, the appointment of the 42 U.S.C. § 1983 Claimant Committee is necessary to assure the adequate representation of 1983 Claimants. The City's bankruptcy case is largest chapter 9 case in history and many issues presented are unique, including 42 U.S.C. § 1983 claims against the City, its employees or both. In the aggregate, the 1983 Claimants constitute a massive unsecured obligation to be addressed in the restructuring. The 1983 Claimants are of crucial importance because their federal rights have been violated. Under these circumstances, the 1983 Claimants require unique consideration to protect their rights and interest.

20.    The 1983 Claimants and their interests have been identified by the Court as a unique group of creditors. The Court having considered the statements of counsel and response to the ADR Motion indicated that the Court would confer with Chief Judge Gerald Rosen regarding claims under 42 U.S.C. § 1983 pending in the district court. Subsequently, the Court entered the ADR Order, which acknowledged the 1983 Claimants unique rights and interest.

21.    The 1983 Claimants would benefit from adequate representation. The collective 1983 Claimants are one of the largest obligations to be addressed by the restructuring. Absent appointment of a 42 U.S.C. § 1983 Committee, only a minority of 1983 Claimants stand to receive any form of representation in this chapter 9 case.

7

22.    Moreover, the 1983 Claimants are uniquely positioned as a group, particularly given (a) their common interest in protecting their rights under federal and state law (b) the importance of maximizing relief requested under 42 U.S.C. § 1983 and (c) the impact that this restructuring will have on the 1983 Claimants. The appointment of the 42 U.S.C. § 1983 Claimant Committee, therefore, will (a) provide representation to the 1983 Claimants that they would otherwise lack, (b) provide a single party to negotiate with the City on behalf of the 1983 Claimants as a group and (c) assist the 1983 Claimants in expressing their views and exercise their rights during the City's restructuring.

23.    The appointment of the 42 U.S.C. § 1983 Claimant Committee is vital to the Court's determination of proper mediation procedures. The Court cannot properly construct mediation procedures without conferring with the City and 1983 Claimants. Moreover, the City cannot as a practical matter engage each of the 1983 Claimants individually. The appointment of the 42 U.S.C. § 1983 Claimant Committee will provide the City and the Court with a centralized point of contact, and the 1983 Claimants with proper representation, to engage in negotiations regarding the mediation procedures. For these reasons, the 1983 Claimants respectfully submits that the appointment of the 42 U.S.C. § 1983 Claimant Committee is proper under sections 901 and 1102(a)(2) of the Bankruptcy Code.

### *Appointment of the 42 U.S.C. § 1983 Committee*

24.     The 1983 Claimants will work cooperatively with the U.S. Trustee to establish an appropriate, open and fair procedure by which the U.S. Trustee will solicit interested 1983 Claimants' Representatives and possibly 1983 Claimants to serve on the 42 U.S.C. § 1983 Committee (the "Selection Procedures"). In particular, the 1983 Claimants propose the following Selection Procedures:

(a)     Promptly following the entry of an order granting this Motion, the 1983 Claimants will contact various key law firms, 1983 Claimant Representatives, and 1983 Claimants for input respecting 1983 Claimant representatives. Following such input, the 1983 Claimants will contact the U.S. Trustee to agree upon a method for identifying a representative sample from among the key law firms, 1983 Claimant Representatives, and 1983 Claimants to solicit (collectively "Solicited");

(b)     Within three business days of the 1983 Claimants and U.S. Trustee identifying the Solicited, the 1983 Claimants will mail a notice and questionnaire in the form attached hereto as Exhibit 2 (the "Questionnaire") to each Solicited to determine his or her interest in serving on the 42 U.S.C. § 1983 Claimant Committee.

(c)     Any Solicited interested in serving on the 42 U.S.C. § 1983 Claimant Committee will be required to complete the Questionnaire and fax or mail it to the U.S. Trustee's Office so that it is *received* by the U.S. Trustee no later than seven days after it is mailed to the Solicited by the 1983 Claimants (the "Questionnaire Deadline")

(d)     The 1983 Claimants will provide the U.S. Trustee with contact information with respect to the various key law firms, 1983 Claimant Representatives, and 1983 Claimants. The U.S. Trustee may also solicit the interest of key law firms, 1983 Claimant

9

Representatives, and 1983 Claimants to participate in the 42 U.S.C. § 1983 Claimant Committee.

(e)     The U.S. Trustee will work promptly to select the individuals to serve on the 42 U.S.C. § 1983 Claimant Committee from those Solicited that submitted a Questionnaire by the Questionnaire Deadline.

(f)     After the U.S. Trustee forms the 42 U.S.C. § 1983 Claimant Committee, it will promptly file an appropriate notice with the Court.

WHEREFORE, the 1983 Claimants respectfully requests that this Court: (a) enter an order substantially in the form attached hereto as <u>Exhibit 1</u> granting the relief sought herein; and (b) grant such other and further relief to the 1983 Claimants as the Court may deem proper.

Respectfully submitted,

ROMANO LAW, P.L.L.C.

By: _____
Trevor J. Zamborsky MI (P77244)
23880 Woodward Avenue
Pleasant Ridge, MI 48069
tzamborsky@romanolawpllc.com
Tel:   (248) 750 – 0270
Fax:   (248) 567 – 4827

EXHIBIT A
13-53846-tjt   Doc 14744   Filed 08/19/16   Entered 08/19/16 03:25:13   Page 182 of 20
263
178

<u>**SUMMARY OF ATTACHMENTS**</u>

The following documents are attached to this Motion, labeled in accordance with
Local Rule 9014-1(b).

Exhibit 1             Proposed Form of Order

Exhibit 2             42 U.S.C. § 1983 Claimant Committee Questionnaire

# EXHIBIT 1

EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN,

          Debtor,

Chapter 9

Case No. 13-53846
Hon. Steven Rhodes

---

## ORDER, PURSUANT TO SECTION 1102(a)(2) OF THE BANKRUPTCY CODE, DIRECTING THE APPOINTMENT OF A COMMITTEE OF PREPETITION 42 U.S.C. § 1983 CLAIMANTS

This matter coming before the Court on the Motion of Debtor, Pursuant to

Section 1102(a)(2) of the Bankruptcy Code, for Entry of an Order Directing the

Appointment of a Committee of Prepetition 42 U.S.C. § 1983 Claimants (the

"Motion"), filed by prepetition claimants with lawsuits alleging claims against the

City of Detroit, Michigan (the "City"), its employee or both under 42 U.S.C. § 1983

that are pending in the United States District Court (the "1983 Claimants"), and

having considered the statements of counsel and the evidence adduced with respect

to the Motion at a Hearing before the Court (the "Hearing"); and the Court finds that

(a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334,

(b) this is a core proceedings pursuant to § 157(b), (c) notice of the Motion and

Hearing was sufficient under the circumstances, (d) the appointment of the 42 U.S.C.

§ 1983 Claimants Committee pursuant to section 1102(a)(2) of the Bankruptcy Code

13

is necessary to ensure adequate representation of the 1983 Claimants in this chapter 9 case and (e) the Selection Procedures for the appointment of the 42 U.S.C. § 1983 Claimant Committee described herein are fair and are reasonably designed to result in a balanced and representative 42 U.S.C. § 1983 Claimant Committee; and the Court having determined that the legal and factual bases set forth in the Motion and the at the Hearing establish just cause for the relief granted herein;

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED

2.      Pursuant to Section 1102(a)(2) of the Bankruptcy Code, the U.S. Trustee shall promptly appoint a 42 U.S.C. § 1983 Claimant Committee to represent 1983 Claimants, as set forth in the Selection Procedures described below.

3.      The following Selection Procedures are hereby approved:

(a)     Promptly following the entry of an order granting this Motion, the 1983 Claimants will contact various key law firms, 1983 Claimant Representatives, and 1983 Claimants for input respecting 1983 Claimant representatives. Following such input, the 1983 Claimants will contact the U.S. Trustee to agree upon a method for identifying a representative sample from among the key law firms, 1983 Claimant Representatives, and 1983 Claimants to solicit (collectively "Solicited");

(b)     Within three business days of the 1983 Claimants and U.S. Trustee identifying the Solicited, the 1983 Claimants will mail a notice and questionnaire in the form attached hereto as Exhibit 2 (the "Questionnaire") to each Solicited to determine his or her interest in serving on the 42 U.S.C. § 1983 Claimant Committee.

14

(c)     Any Solicited interested in serving on the 42 U.S.C. § 1983 Claimant Committee will be required to complete the Questionnaire and fax or mail it to the U.S. Trustee's Office so that it is *received* by the U.S. Trustee no later than seven days after it is mailed to the Solicited by the 1983 Claimants (the "Questionnaire Deadline")

(d)     The 1983 Claimants will provide the U.S. Trustee with contact information with respect to the various key law firms, 1983 Claimant Representatives, and 1983 Claimants. The U.S. Trustee may also solicit the interest of key law firms, 1983 Claimant Representatives, and 1983 Claimants to participate in the 42 U.S.C. § 1983 Claimant Committee.

(e)     The U.S. Trustee will work promptly to select the individuals to serve on the 42 U.S.C. § 1983 Claimant Committee from those Solicited that submitted a Questionnaire by the Questionnaire Deadline.

(f)     After the U.S. Trustee forms the 42 U.S.C. § 1983 Claimant Committee, it will promptly file an appropriate notice with the Court.

6.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, enforcement, or interpretation of this Order.

**IT IS SO ORDERED**

Signed on: _____

_____
**Steven Rhodes**
**United States Bankruptcy Judge**

EXHIBIT A
13-53846-tjt   Doc 11744   Filed 01/14/16   Entered 01/14/16 03:52:13   Page 187 of 20
263                                                                                        183

**EXHIBIT 2**

EXHIBIT A
13-53846-tjt   Doc 2476   Filed 01/14/16   Entered 01/14/16 09:52:57   Page 16 of 20
13-53846-tjt   Doc 2144   Filed 08/19/16   Entered 08/19/16 13:25:13   Page 188 of 263   184

**OFFICE OF THE UNITED STATES TRUSTEE FOR THE
EASTERN DISTRICT OF MICHIGAN
211 WEST FORT STREET, SUITE 700
DETROIT, MICHIGAN 48226
TEL. NO. (313) 226-7999
FAX NO. (313) 226-7952**

**42 U.S.C. § 1983 CLAIMANT COMMITTEE QUESTIONNAIRE**

IN RE:  THE CITY OF DETROIT, MICHIGAN (THE "CITY")
Case No. 13-53846

**PLEASE RETURN BY FAX OR MAIL TO THE
ABOVE ADDRESS SO THAT THE FORM IS _RECEIVED_
NO LATER THAN _____, 2014 AT 5:00 P.M. (ET)**

PLEASE TYPE OR PRINT CLEARLY:

The undersigned creditor is willing to serve on the 42 U.S.C. § 1983 Claimant Committee:

1.  Name: _____

2.  Address: _____

3.  Phone number: _____

4.  E-Mail: _____

5.  Date of birth: _____

6.  Date of incident: _____

7.  Please provide a brief description of the alleged incident giving rise to your claim under 42 U.S.C. § 1983: _____
_____
_____
_____

8.  Have you hired an attorney to represent you in the alleged incident giving rise to your claim under 42 U.S.C. § 1983?      Yes _____      No _____

    If yes, please provide your attorney's the name, address, and phone number: _____
_____
_____

17

9. Are you a member of any organization, group, or association that represents 42 U.S.C. § 1983 Claimants or a member of any civil rights organization, group, or association?
Yes _____ No _____

If yes, what organization, group, or association? _____

Did you ever hold a leadership position with that organization, group, or association?
Yes _____ No _____

If yes, please explain you leadership role: _____
_____
_____
_____

10. If appointed to the 42 U.S.C. § 1983 Claimant Committee, would you be physically able and available to travel to attend meetings? Yes _____ No _____

If yes, please explain: _____
_____
_____
_____

11. Please provide any other information or background as to why you should be appointed to the 42 U.S.C. § 1983 Claimant Committee, including any specific skills that you have that would be valuable to the 42 U.S.C. § 1983 Claimant Committee: _____
_____
_____
_____
_____
_____


SIGNATURE: _____

Print Name: _____

Date: _____

THIS IS NOT A PROOF OF CLAIM FORM. PROOFS OF CLAIM ARE FILED WITH THE CLERK OF THE BANKRUPTCY COURT OR AS OTHERWISE DIRECTED BY ORED OF THE BANKRUPTCY COURT, NOT WITH THE UNITED STATES TRUSTEE.

**ATTORNEYS WILLING TO SERVE ON THE 42 U.S.C. § 1983 CLAIMANT COMMITTEE PLEASE COMPLETE THE ADDITIONAL QUESTIONNAIRE ON THE FOLLOWING PAGE.**

18

**OFFICE OF THE UNITED STATES TRUSTEE FOR THE
EASTERN DISTRICT OF MICHIGAN
211 WEST FORT STREET, SUITE 700
DETROIT, MICHIGAN 48226
TEL. NO. (313) 226-7999
FAX NO. (313) 226-7952**

## 42 U.S.C. § 1983 CLAIMANT COMMITTEE QUESTIONNAIRE

IN RE:     THE CITY OF DETROIT, MICHIGAN (THE "CITY")
           Case No. 13-53846

**PLEASE RETURN BY FAX OR MAIL TO THE
ABOVE ADDRESS SO THAT THE FORM IS RECEIVED
NO LATER THAN _____, 2014 AT 5:00 P.M. (ET)**

PLEASE TYPE OR PRINT CLEARLY:

1.     Name and professional number: _____

2.     Office Address: _____

3.     Bar membership: _____

4.     Do you or your firm regularly represent 42 U.S.C. § 1983 Claimants?
       Yes _____     No _____

       If yes, please explain: _____
       _____
       _____
       _____

5.     Do you or your firm have a 42 U.S.C. § 1983 client whose claim against the City of
       Detroit, Michigan, its employees, or both that is pending in the United Stated District
       Court?
       Yes _____     No _____

       If yes, please explain: _____
       _____
       _____
       _____

19

6. If appointed to the 42 U.S.C. § 1983 Claimant Committee, would you be physically able to travel to attend meetings? Yes _____ No _____

If yes, please explain: _____
_____
_____
_____

7. Please provide any other information or background as to why you should be appointed to the 42 U.S.C. § 1983 Claimant Committee, including any specific skills that you have that would be valuable to the 42 U.S.C. § 1983 Claimant Committee: _____
_____
_____
_____
_____
_____
_____
_____

SIGNATURE: _____

Print Name: _____

Date: _____

THIS IS NOT A PROOF OF CLAIM FORM. PROOFS OF CLAIM ARE FILED WITH THE CLERK OF THE BANKRUPTCY COURT OR AS OTHERWISE DIRECTED BY ORED OF THE BANKRUPTCY COURT, NOT WITH THE UNITED STATES TRUSTEE.

20

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN,

Debtor,

_____

Chapter 9

Case No. 13-53846
Hon. Steven Rhodes

## § 1983 PLAINTIFF'S CONCURRENCE OF INTERESTED PARTIES RYAN, SWIFT, MENDOZA, AND CUPPETELLI, SECOND SUPPLEMENTAL BIREF IN SUPPORT OF THEIR OBJECTIONS PREVIOUSLY FILED [Dkts. #4099, #4228, #4608, #5690] ON THE CONSTITUTIOANLITY OF ALLOWING THE DIMINISHMENT OF THE FUNDAMENTAL RIGHT TO A DAMAGES REMEDEY FOR THE <u>VIOLATION OF CONSTITUTIONAL RIGHTS</u>

**NOW COMES** Creditor's, JERRY ASHLEY, SHUMITHIA BAKER, DAVID BOOTH, BRANDEN BROOKS, ANGEL BROWN, TERAN BROWN, WENDY JEFFERSON, FLOYD BRUNSON, LAVERNE COVINGTON, EZEKIEL DAVIS, JEREMIAH DUREN, OTIS EVANS, DARNELL FIELDS, KEITHA GOMEZ, CHEVAL GOMEZ, JERMAINE GREEN, TERRY HARDISON IV, ANTHONY HARMON, DONALD HARRIS, RODNEY HEARD, TOMMIE HICKEY,KEVIN IVIE, JAMES JACKSON, LEINATHAN JELKS, QUENTIN KING, DANIEL LATTANZIO, APRIL LEE, MARIO LITTLEJOHN, RAY LIZZAMORE, ORLANDO MARION, JAMES MATSON, DAVE MAZUR, KEVIN MCDONALD, KEVIN MCGILLIVARY, ROBERT MCOWEN,

1

MICHAEL MCKAY, MELVIN MILLER, EDDIE MOORE, CURTIS MORRIS, GARY MUSSER, WINTER OWENS, PORTER HONDRA, WOODROW ROBERSON, BRADLEY SCHICK, ALI SOBH, DANIEL SOTO, SAMIYA SPEED, DOUGLAS TAYLOR, JEFFREY THERIOT, RAYMOND THOMPSON, JR., BERNARD WHITE, CHRISTINA WILMORE, and JOSEPH WRIGHT (hereafter "§1983 Plaintiffs"), and concur in Interested Parties, DEBORAH RYAN, WALTER SWIFT, CRISTOBAL MENDOZA, and ANNICA CUPPETELLI'S Second Supplemental Brief [Dkt. #6764]. In support of the instant concurrence, the Plaintiffs state the following:

1.      The above-named § 1983 Plaintiffs have brought actions against City of Detroit Police Officers to vindicate profound deprivations of their Constitutional rights caused by police misconduct.

2.      The above-named § 1983 Plaintiffs, at the time of the complained events, had clearly established Constitutional right under the Fourth Amendment to be secure in their person from unreasonable seizure through excessive force.

3.      The above-named § 1983 Plaintiffs also had the clearly established Constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by law enforcement.

4.      42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia

2

subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and law shall be liable to the party injured in an action at law, suit in equity or other appropriate proceeding for redress . . . .

5.     Any reasonable law enforcement officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

6.     It is for violations of such constitutional and statutory rights that 42 U.S.C. § 1983 authorizes redress; that section is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitutional and federal statutes that it describes. Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

7.     Moreover, "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." Bell v. Hood, 327 U.S. 678, 684 (1946).

8.     It is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit, or action at law, when ever that right is invaded." Marbury v. Madison, 5 U.S. 137, 163 (1803).

9.     The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high

3

appellation, if the laws furnish no remedy for the violation of a vested legal right. Marbury v. Madison, 5 U.S. 137, 163 (1803).

10.    The above-named § 1983 Plaintiffs are suing City of Detroit Police Officers in their individual capacities for actions taken within the scope of their authority and under color of state law.

11.    The above-named § 1983 Plaintiffs are suing City of Detroit Police Officers for civil rights violations, not for indemnification.

12.    It is the Police Officer who may choose to sue the City of Detroit for indemnification, if the Police Officer is found liable in a lawsuit, and if the City of Detroit declines to defend him or pay the judgment. It is at that point that a court might have to determine if the Police Officer's claim for indemnity was discharged in bankruptcy. V.W. ex rel. Barber v. City of Vallejo, No. 12-1629, 2013 WL 3992403, at *7 (E.D. Cal. Aug. 2, 2013).

**WHEREFORE**, for the reasons stated above, these § 1983 Plaintiffs respectfully request that this Honorable Court issue an Order stating that the Proposed Plan, in regards to § 1983 Claimants, is unconstitutional and that a § 1983 judgment against an individual officer acting in his individual capacity is not dischargeable under Chapter 9.

4

Respectfully submitted,

ROMANO LAW, P.L.L.C.

*/s/ Trevor J. Zamborsky      .*
DANIEL G. ROMANO (P49117)
TREVOR J. ZAMBORSKY (P77244)
23880 Woodward Avenue
Pleasant Ridge, MI 48069
dromano@romanolawpllc.com
tzamborsky@romanolawpllc.com
Tel: (248) 750 – 0270
Fax: (248) 567 – 4827

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN,

              Debtor,

_____

Chapter 9

Case No. 13-53846
Hon. Steven Rhodes

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 21, 2014 *§ 1983 Plaintiff's Concurrence of Interested Parties Ryan, Swift, Mendoza, and Cuppetelli, Second Supplemental Brief In Support of Their Objections Previously Filed [Dkts. #4099, #4608, #5690] on the Constitutionality of Allowing the Diminishment of the Fundamental Right to Damages Remedy for the Violation of Constitutional Rights* was filed and served via the Court's electronic filing and noticing system to all registered users that have appeared in the main Chapter 9 proceeding.

                                 /s/ Trevor J. Zamborsky   .
                                 Trevor J. Zamborsky
                                 ROMANO LAW, P.L.L.C.
                                 23880 Woodward Avenue
                                 Pleasant Ridge, MI 48069
                                 Telephone: (248) 750 – 0270
                                 Fax: (248) 936 – 2105
                                 tzamborsky@romanolawpllc.com

Dated: August 21, 2014

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN,

               Debtor,

_____

Chapter 9

Case No. 13-53846
Hon. Steven Rhodes

## § 1983 PLAINTIFF'S CONCURRENCE OF INTERESTED PARTIES RYAN, SWIFT, MENDOZA, AND CUPPETELLI, SECOND SUPPLEMENTAL BIREF IN SUPPORT OF THEIR OBJECTIONS PREVIOUSLY FILED [Dkts. #4099, #4228, #4608, #5690] ON THE CONSTITUTIOANLITY OF ALLOWING THE DIMINISHMENT OF THE FUNDAMENTAL RIGHT TO A DAMAGES REMEDEY FOR THE <u>VIOLATION OF CONSTITUTIONAL RIGHTS</u>

**NOW COMES** Creditor's, JERRY ASHLEY, SHUMITHIA BAKER, DAVID BOOTH, BRANDEN BROOKS, ANGEL BROWN, TERAN BROWN, WENDY JEFFERSON, FLOYD BRUNSON, LAVERNE COVINGTON, EZEKIEL DAVIS, JEREMIAH DUREN, OTIS EVANS, DARNELL FIELDS, KEITHA GOMEZ, CHEVAL GOMEZ, JERMAINE GREEN, TERRY HARDISON IV, ANTHONY HARMON, DONALD HARRIS, RODNEY HEARD, TOMMIE HICKEY,KEVIN IVIE, JAMES JACKSON, LEINATHAN JELKS, QUENTIN KING, DANIEL LATTANZIO, APRIL LEE, MARIO LITTLEJOHN, RAY LIZZAMORE, ORLANDO MARION, JAMES MATSON, DAVE MAZUR, KEVIN MCDONALD, KEVIN MCGILLIVARY, ROBERT MCOWEN,

1

MICHAEL MCKAY, MELVIN MILLER, EDDIE MOORE, CURTIS MORRIS, GARY MUSSER, WINTER OWENS, PORTER HONDRA, WOODROW ROBERSON, BRADLEY SCHICK, ALI SOBH, DANIEL SOTO, SAMIYA SPEED, DOUGLAS TAYLOR, JEFFREY THERIOT, RAYMOND THOMPSON, JR., BERNARD WHITE, CHRISTINA WILMORE, and JOSEPH WRIGHT (hereafter "§1983 Plaintiffs"), and concur in Interested Parties, DEBORAH RYAN, WALTER SWIFT, CRISTOBAL MENDOZA, and ANNICA CUPPETELLI'S Second Supplemental Brief [Dkt. #6764]. In support of the instant concurrence, the Plaintiffs state the following:

1.      The above-named § 1983 Plaintiffs have brought actions against City of Detroit Police Officers to vindicate profound deprivations of their Constitutional rights caused by police misconduct.

2.      The above-named § 1983 Plaintiffs, at the time of the complained events, had clearly established Constitutional right under the Fourth Amendment to be secure in their person from unreasonable seizure through excessive force.

3.      The above-named § 1983 Plaintiffs also had the clearly established Constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by law enforcement.

4.      42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia

2

subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and law shall be liable to the party injured in an action at law, suit in equity or other appropriate proceeding for redress . . . .

5. Any reasonable law enforcement officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

6. It is for violations of such constitutional and statutory rights that 42 U.S.C. § 1983 authorizes redress; that section is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitutional and federal statutes that it describes. Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

7. Moreover, "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." Bell v. Hood, 327 U.S. 678, 684 (1946).

8. It is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit, or action at law, when ever that right is invaded." Marbury v. Madison, 5 U.S. 137, 163 (1803).

9. The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high

3

18-53846-tjt Doc 13455 Filed 08/12/16 Entered 08/12/16 13:25:38 Page 201 of 263

appellation, if the laws furnish no remedy for the violation of a vested legal right. Marbury v. Madison, 5 U.S. 137, 163 (1803).

10.    The above-named § 1983 Plaintiffs are suing City of Detroit Police Officers in their individual capacities for actions taken within the scope of their authority and under color of state law.

11.    The above-named § 1983 Plaintiffs are suing City of Detroit Police Officers for civil rights violations, not for indemnification.

12.    It is the Police Officer who may choose to sue the City of Detroit for indemnification, if the Police Officer is found liable in a lawsuit, and if the City of Detroit declines to defend him or pay the judgment. It is at that point that a court might have to determine if the Police Officer's claim for indemnity was discharged in bankruptcy. V.W. ex rel. Barber v. City of Vallejo, No. 12-1629, 2013 WL 3992403, at *7 (E.D. Cal. Aug. 2, 2013).

**WHEREFORE**, for the reasons stated above, these § 1983 Plaintiffs respectfully request that this Honorable Court issue an Order stating that the Proposed Plan, in regards to § 1983 Claimants, is unconstitutional and that a § 1983 judgment against an individual officer acting in his individual capacity is not dischargeable under Chapter 9.

4

Respectfully submitted,

ROMANO LAW, P.L.L.C.

*/s/ Trevor J. Zamborsky       .*
DANIEL G. ROMANO (P49117)
TREVOR J. ZAMBORSKY (P77244)
23880 Woodward Avenue
Pleasant Ridge, MI 48069
dromano@romanolawpllc.com
tzamborsky@romanolawpllc.com
Tel: (248) 750 – 0270
Fax: (248) 567 – 4827

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

                                 Chapter 9

CITY OF DETROIT, MICHIGAN,

                                 Case No. 13-53846
                                 Hon. Steven Rhodes

          Debtor,

_____

## CERTIFICATE OF SERVICE

    I hereby certify that on August 21, 2014 *§ 1983 Plaintiff's Concurrence of Interested Parties Ryan, Swift, Mendoza, and Cuppetelli, Second Supplemental Brief In Support of Their Objections Previously Filed [Dkts. #4099, #4608, #5690] on the Constitutionality of Allowing the Diminishment of the Fundamental Right to Damages Remedy for the Violation of Constitutional Rights* was filed and served via the Court's electronic filing and noticing system to all registered users that have appeared in the main Chapter 9 proceeding.

                                 */s/ Trevor J. Zamborsky*   .
                                  Trevor J. Zamborsky
                                  ROMANO LAW, P.L.L.C.
                                  23880 Woodward Avenue
                                  Pleasant Ridge, MI 48069
                                  Telephone: (248) 750 – 0270
                                  Fax: (248) 936 – 2105
                                  tzamborsky@romanolawpllc.com

Dated: August 21, 2014

6

13-53846-tjt  Doc 14454  Filed 08/12/16  Entered 08/12/16 13:25:18  Page 204 of 263
13-53846-tjt  Doc 6955  Filed 08/22/14  Entered 08/22/14 16:47:18  Page 6 of 6
              200

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND ORDER, PURSUANT TO SECTIONS 105 AND 502 OF THE BANKRUPTCY CODE, APPROVING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES TO PROMOTE THE LIQUIDATION OF CERTAIN PREPETITION CLAIMS AGAINST GREGORY PHILLIPS AND/OR DOMINIQUE MCCARTHA AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF GREGORY PHILLIPS, DECEASED

The City of Detroit ("City"), by its undersigned counsel, files this Motion to Enforce Settlement Agreement and Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims Against Gregory Phillips and/or Dominque McCartha as Personal Representative for the Estate of Gregory Phillips, Deceased ("Motion"). In support of this Motion, the City states as follows:

## I.      Introduction

1.      The Plaintiff's prepetition lawsuit against the City and a City police officer, Ian Severy ("Severy"), should be dismissed with prejudice. The Plaintiff filed a proof of claim in the City's bankruptcy case asserting a claim based on this prepetition lawsuit. The proof of claim was subsequently designated for resolution in accordance with the ADR Order (as defined in paragraph 8 below) entered by this Court. The parties then resolved their dispute and entered into a Settlement Agreement. The Settlement Agreement provides for the dismissal of the lawsuit with prejudice and the release of the City and Severy as required by the ADR Order.

2.	After the Settlement Agreement was executed, this Court confirmed the City's plan.  In confirming the City's plan, the Court held that the Bankruptcy Code does not provide for the discharge of 42 U.S.C. § 1983 claims against City officers in their individual capacity.  As one of the claims asserted by the Plaintiff in the prepetition lawsuit was a § 1983 claim against Severy, the Plaintiff then sought to reinstate the prepetition lawsuit. A settlement may not be set aside, however, simply because a party second-guesses its prior decision or because there is a subsequent change in the law or a ruling that is perceived to be advantageous to the settling party.  The Court should enforce the Settlement Agreement as written and order the Plaintiff to dismiss the prepetition lawsuit in accordance with the ADR Order and the Settlement Agreement.

## II.	Background

### A.	The Plaintiff's Pre-Petition Lawsuit Against the City and Severy

3.	On October 7, 2011, Dominique McCartha, as Personal Representative for the Estate of Gregory Philips, deceased and Gregory Phillips ("Plaintiff") filed a complaint against the City and Severy, in his individual and official capacity as a City police officer, in the United States District Court for the Eastern District of Michigan ("District Court"), case number 11-14419 ("District Court Lawsuit"). The Complaint is attached as Exhibit 6A.

4.	The Complaint contains three counts: (1) Violation of the Fourth Amendment 42 U.S.C. § 1983 Excessive Force; (2) Gross Negligence; and (3) City of Detroit's Constitutional Violations.  On December 21, 2011 and February 14, 2012, the City and Severy filed answers to the Complaint [Doc. Nos 4 & 10 in District Court Lawsuit].[1]

---

[1] The City reserved its right to withdraw defense and/or indemnification for Severy in its answer if Severy's representation request was not approved by the Detroit City Council. The request was however approved.

## B. The City Files for Bankruptcy and the Plaintiff's Lawsuit is Stayed

5.      On July 18, 2013 ("Petition Date"), the City filed a petition for relief in this Court, commencing its chapter 9 bankruptcy case.

6.      On July 25, 2013, this Court entered (i) Order Pursuant to Section 105(a) of the Bankruptcy Code Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non Officer Employees and (C) Agents and Representatives of the Debtor [Doc. No. 166] ("Stay Extension Order"), and (ii) Order Pursuant to Section 105(a) of the Bankruptcy Code Confirming the Protections of Sections 362, 365 and 922 of the Bankruptcy Code [Doc. No. 167] ("Stay Confirmation Order").

7.      On July 31, 2013, the District Court entered an Order Staying and Administratively Closing Case [Doc. No. 24 in District Court Lawsuit] ("Order Staying Case"). The Order Staying Case provided

> On July 25, 2013, Judge Steven Rhodes entered an order confirming the automatic stay of all proceedings against the City imposed under section 922 of the bankruptcy Code upon the filing of the petition. *In re City of Detroit, Michigan*, No. 13-53846 [dkt. #167] (Bankr. E.D. Mich. July 25, 2013). The stay applies to "judicial, administrative or other action[s] or proceeding[s] against an officer or inhabitant of the City, including the issuance or employment of process, that seeks to enforce a claim against the City." *Id.* at 3. The present action has been commenced by the plaintiff against the City of Detroit and officer of the City of Detroit seeking to recover damages by enforcing a claim against the City of Detroit, which by law may be obliged to satisfy a judgment rendered against such officer. Based on those orders, the Court will stay and administratively close this matter.

Order at 1.

## C. This Court Enters the ADR Order

8.      On November 12, 2013, the City filed its Motion of Debtor Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims [Doc No. 1665]

("ADR Procedures Motion").  On December 24, 2013, this Court entered an order approving the ADR Procedures Motion [Doc. No. 2302] ("ADR Order").

9.       Paragraph 20 of the ADR Order specifically provided for treatment of 42 U.S.C. § 1983 claims:

> Notwithstanding anything in this Order, the "ADR Procedures" that this Order approves (Annex 1), or in the ADR Procedures Motion, all lawsuits alleging claims against the City, its employees or both under 42 U.S.C. § 1983 that are pending in the United States District Court are referred to Chief United States District Judge Gerald Rosen for mediation under such procedures as he determines.

ADR Order, ¶ 20 (emphasis in original).

10.      The Alternative Dispute Resolution Procedures ("ADR Procedures") were attached as Annex I to the ADR Order.   Section II.A.7 of the ADR Procedures provided that "Nothing herein shall limit the ability of a Designated Claimant and the City to settle a Designated Claim by mutual consent at any time.  **All such settlements shall be subject to the terms of Section II.D below**."  ADR Procedures, II.A.7, p. 10 (emphasis added).  One of the terms of Section II.D is that "All settlements shall include a release of all claims relating to the underlying occurrence, including the Designated Claim **and the Designated Claimant's claim against any other party with respect to whom the Stay/Injunction applies**." ADR Procedures II.D.2, p. 19 (emphasis added).[2]

11.      The ADR Order further provides that the Bankruptcy Court retains jurisdiction to resolve disputes arising from the ADR process.  ADR Order, ¶ 19 ("This Court shall retain

---

[2] Paragraph 10 of the ADR Order provided that the Stay/Injunction applied to defendants, such as Severy, who had indemnification claims against the City: "For the avoidance of doubt, all proceedings against the City or any Indemnification Claimant relating to an Initial Designated Claim following the liquidation of the Initial Designated Claim shall remain subject to the Stay/Injunction, absent further order of the Court." ADR Order ¶ 10. "Indemnification Claimant" is defined in paragraph 7 of the ADR Order.

jurisdiction for all purposes specified in the ADR Procedures and with respect to all disputes arising from or relating to the interpretation, implementation and/or enforcement of this Order and the ADR Procedures.").

**D.    The State Court Lawsuit is Resolved Pursuant to the ADR Procedures**

12.    On February 19, 2014, the Plaintiff filed claim number 1155 ("Proof of Claim"), attaching a copy of the Complaint.  The Proof of Claim is attached as Exhibit 6B.

13.    On August 18, 2014, the City filed a Stay Modification Notice for the Proof of Claim to allow it to be liquidated in accordance with the ADR Procedures and the ADR Order [Doc. No. 6823] ("Stay Modification Notice").

14.    The Proof of Claim proceeded to facilitation with Judge Lawson.  Although facilitation was initially unsuccessful, the parties subsequently resolved the Proof of Claim and the District Court Lawsuit.

15.    To document the resolution, the City and the Plaintiff entered into the *Agreement Resolving Claims of Dominique McCartha, as Personal Representative of Estate of Gregory Phillips* ("Settlement Agreement").  The Settlement Agreement is attached as Exhibit 6C.  The Settlement Agreement recites that the (a) Bankruptcy Court entered the ADR Order to promote the resolution of claims designated by the City through the ADR Procedures and (b) Proof of Claim was designated for resolution through the ADR Procedures.  Settlement Agreement, ¶¶ C, E.  The Settlement Agreement also states that it "terminates the ADR Procedures with respect to the Filed Claim pursuant to section II.A.7 of the ADR Procedures." Settlement Agreement ¶ F.

16.    As required by the ADR Procedures, the Plaintiff released the City and Severy in the Settlement Agreement.  Settlement Agreement ¶ 8.  The release in the Settlement Agreement provides:

As to the Filed Claims and Settled Claims described herein, the Claimant releases the City from any and all liability, actions, damages and claims (including claims for attorney fees, expert fees or court costs), known and unknown, arising or accruing at any time prior to and after the date of this Agreement, that the Claimant has or may have against the City…As used in this Agreement, the Claimant and the City include each of their respective servants, agents, contractors, attorneys, employees, representatives, family members, heirs, elected officials, appointed officials, related corporations, subsidiaries, divisions, affiliates, directors and officers, if any…

Settlement Agreement ¶ 8.

17.     The Plaintiff also stipulated to the "dismissal with prejudice of the civil action[s]

related to the Filed Claims or Settled Claim in the form attached hereto as Exhibit B."[3]

### E.     The City Confirms its Plan

18.     On October 22, 2014, the City filed the Eighth Amended Plan for the Adjustment

of Debts of the City of Detroit (October 22, 2014) [Doc. No. 8045] ("Plan").  On November 12,

2014, this Court entered an order confirming the Plan [Doc. No. 8272] ("Confirmation Order").

19.     The Confirmation Order permanently enjoined Entities that hold Indirect

Employee Indemnity Claims[4] from

(a) commencing, conducting or continuing in any manner, directly, or indirectly, any suit, action or other proceeding of any kind against or affecting the City or its property (including (i) all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice, (ii) Indirect 36th District Court Claims and (iii) Indirect Employee Indemnity Claims asserted against officers or employees of the City in their official capacity)…

Confirmation Order ¶ H.32, pp. 89-90.

---

[3] The City cannot locate Exhibit B.

[4] As set forth in the Plan, "Indirect Employee Indemnity Claim" means any claim against an employee or former employee of the City with respect to which such employee has an Allowed Claim against the City for indemnification or payment or advancement of defense costs based upon, arising under or related to any agreement, commitment or other obligation, whether evidenced by contract, agreement, rule, regulation, ordinance, statute or law.  Plan, Art. I.A.224, pp. 18-19.

20.     The Confirmation Order also provides that all prior orders entered in the City's bankruptcy case shall be binding upon and shall inure to the benefit of the City and any other parties expressly subject thereto.  Confirmation Order, ¶ T.69, p. 114. The Plan further provides that this Court "will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 9 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to…Enforce or clarify any orders previously entered by the Bankruptcy Court in the Chapter 9 Case." Plan, Art. VII.O pp. 69-70.

21.     The Effective Date of the Plan occurred on December 10, 2014. [Doc. No. 8649].

**F.     Plaintiff Moves to Reopen the District Court Lawsuit**

22.     On July 2, 2015, the Plaintiff filed his Motion to Vacate Stay and Reinstate Case in the District Court ("Motion to Vacate Stay").  [Doc. No. 27 in District Court Lawsuit].  The Plaintiff asserted that because Judge Rhodes held that section 1983 claims against individuals in their personal capacity could not be discharged under the City's plan, "at the absolute minimum the stay must be lifted and allowed to proceed at least as to Defendant Severy, who was sued in his individual and official capacities."  Motion to Vacate Stay ¶¶ 5-6.   The City objected to the Motion.  [Doc. No.  28 in District Court Lawsuit].  The District Court conducted two status conferences on the Motion to Vacate Stay but it has not entered an order.

**III.    Argument**

23.     This Court should order that the Plaintiff dismiss the District Court Lawsuit with prejudice. The Plaintiff released Severy from all claims asserted in the Complaint pursuant to the plain language of the release contained in paragraph 8 of the Settlement Agreement.   Plaintiff also agreed to the stipulated dismissal with prejudice of the District Court Lawsuit in paragraph 9 of the Settlement Agreement.   Finally, the Confirmation Order enjoins the Plaintiff from pursuing the claims asserted in the Complaint against Severy in his official capacity.

25350389.1\022765-00213  7

13-53846-tjt    Doc 10474    Filed 08/19/15    Entered 08/19/15 16:25:18    Page 7 of 59
13-53846-tjt    Doc 11474    Filed 12/10/15    Entered 12/10/15 16:25:18    Page 7 of 59    207
263

24. The "Filed Claim" and "Settled Claim" identified in paragraph 8 of the Settlement Agreement is the Proof of Claim. The Proof of Claim asserted a claim based on the Complaint and attached the Complaint as support for the Proof of Claim. Proof of Claim at 2. The claims asserted in the Complaint against Severy constitute "liability, actions, damages and claims, known and unknown, arising or accuring at any time prior to the date and after the date of this Agreement." Settlement Agreement ¶ 8. Finally, Severy is an agent and employee of the City because he is a City police officer. Thus, pursuant to paragraph 8 of the Settlement Agreement, Plaintiff released Severy from the claims asserted in the Complaint.

25. This plain reading of paragraph 8 of the Settlement Agreement is reinforced by Section II.D.2 of the ADR Procedures which states that "All settlements shall include a release of all claims relating to the underlying occurrence, including the Designated Claim and the Designated Claimant's claim against any other party with respect to whom the Stay/Injunction applies." ADR Procedures II.D.2. As set forth in the Stay Modification Notice and the Settlement Agreement, the Proof of Claim had been designated for resolution through the ADR Procedures. Settlement Agreement ¶¶ C, E. The Settlement Agreement also provided that "this Agreement terminates the ADR Procedures with respect to the Filed Claim pursuant to section II.A.7 of the ADR Procedures." Section II.A.7 of the ADR Procedures, in turn, provides that all "settlements shall be subject to the terms of Section II.D below." One of the terms of Section II.D is that "All settlements shall include a release of all claims relating to the underlying occurrence, including the Designated Claim **and the Designated Claimant's claim against any other party with respect to whom the Stay/Injunction applies**." ADR Procedures II.D.2, p. 19 (emphasis added). As the District Court concluded and as set forth in the ADR Order, the

"Stay/Injunction"[5] applies to the Plaintiff's claims against Severy. Order Staying Case at 1; ADR Order ¶ 10. Thus, the ADR Order mandated that the Settlement Agreement include a release of the Plaintiff's claims against Severy.

26.     Finally, the Confirmation Order permanently enjoined the Plaintiff from pursuing the claims asserted in the Complaint against Severy in his official capacity. These claims against Severy constitute Indirect Employee Indemnity Claims because Severy has an Allowed Claim against the City for indemnification or payment or advancement of defense costs. *See* Plan Art. I.A.19, p. 3 (defining "Allowed Claim" to include "(c) a Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court"); Plan, Art. IV.O, p. 62 ("Assumption of Indemnification Obligations"); Confirmation Order ¶ L.43, p. 99 ("Survival of Indemnities").

## IV.     Conclusion

27.     Consequently, all of the claims in the District Court Lawsuit have been settled and released by the Settlement Agreement. No later change in the law or subsequent ruling changed that fact or revived the claims. The claims against Severy in his official capacity must also be dismissed for the additional reason that they are enjoined by the Confirmation Order. The City thus respectfully requests that the Court enter an order in substantially the same form as the one

---

[5] The term "Stay/Injunction" is defined in Section I.B of the ADR Procedures:

> For the period commencing on the date of entry of the ADR Order until the date that is 119 days after the General Bar Date (the "Initial Designation Period"), any Designated Claimant holding an Initial Designated Claim (and any other person or entity asserting an interest in such claim) shall be enjoined (the "Initial Injunction") from filing or prosecuting, with respect to such Initial Designated Claim, any motion (a "Stay Motion") for relief from either (1) the automatic stay of sections 362 and 922 of the Bankruptcy Code, as modified and extended from time to time by orders of the Bankruptcy Court (the "Stay"), or (2) any similar injunction (together with the Stay, the "Stay/Injunction") that may be imposed upon the confirmation or effectiveness of a plan of adjustment of debts confirmed in the City's chapter 9 case (a "Chapter 9 Plan").

attached as Exhibit 1, requiring that the Plaintiff dismiss, or cause to be dismissed, with prejudice, the District Court Lawsuit.


Dated: November 20, 2015

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Co-Counsel for the City of Detroit


CITY OF DETROIT LAW DEPARTMENT

Charles N. Raimi (P29746)
James Noseda (P52563)
Jerry L. Ashford (P47402)
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
Phone - (313) 237-5037/(313)
Email - raimic@detroitmi.gov

Attorneys for the City of Detroit

25350389.1\022765-00213  10

13-53846-tjt  Doc 10744  Filed 08/20/16  Entered 08/20/16 12:25:13  Page 214 of 263
13-53846-tjt  Doc 10272  Filed 11/20/15  Entered 11/20/15 10:15:13  Page 10 of 99  210

# EXHIBIT LIST

| | |
|---|---|
| Exhibit 1 | Proposed Order |
| Exhibit 2 | Notice of Opportunity to Respond |
| Exhibit 3 | None |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | None |
| Exhibit 6A | Complaint |
| Exhibit 6B | Proof of Claim |
| Exhibit 6C | Settlement Agreement |

<u>**EXHIBIT 1 – PROPOSED ORDER**</u>

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**[PROPOSED] ORDER GRANTING CITY OF DETROIT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND ORDER, PURSUANT TO SECTIONS 105 AND 502 OF THE BANKRUPTCY CODE, APPROVING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES TO PROMOTE THE LIQUIDATION OF CERTAIN PREPETITION CLAIMS AGAINST GREGORY PHILLIPS AND/OR DOMINIQUE MCCARTHA AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF GREGORY PHILLIPS, DECEASED**

This matter came before the Court on City Of Detroit's Motion To Enforce Settlement Agreement and Order, Pursuant To Sections 105 And 502 Of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures To Promote the Liquidation Of Certain Prepetition Claims Against Gregory Phillips and/or Dominique McCartha As Personal Representative For the Estate Of Gregory Phillips, Deceased ("<u>Motion</u>"); and the Court being fully advised in the premises;

IT IS HEREBY ORDERED:

1.      The Motion is granted.

2.      Within five days of the entry of this Order, Dominique McCartha, as Personal Representative for the Estate of Gregory Phillips, deceased and Gregory Phillips shall dismiss, or cause to be dismissed, with prejudice Case No. 11-14419 filed with the United States District Court for the Eastern District of Michigan, Southern Division, and captioned *Dominique McCartha, as Personal Representative for the Estate of Gregory Phillips, deceased and Gregory Phillips, Plaintiff v. City of Detroit and Ian Severy, in his individual and official capacity.*

25350389.1\022765-00213

13-53846-tjt   Doc 10244   Filed 09/20/16   Entered 09/20/16 12:25:13   Page 216 of
13-53846-tjt   Doc 10272   Filed 11/20/16   Entered 11/20/16 10:15:13   Page 216 of   212
263

3. The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

**EXHIBIT 2 – NOTICE**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**NOTICE OF OPPORTUNITY TO RESPOND TO**
**CITY OF DETROIT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND**
**ORDER, PURSUANT TO SECTIONS 105 AND 502 OF THE BANKRUPTCY CODE,**
**APPROVING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES TO**
**PROMOTE THE LIQUIDATION OF CERTAIN PREPETITION CLAIMS AGAINST**
**GREGORY PHILLIPS AND/OR DOMINIQUE MCCARTHA AS PERSONAL**
**REPRESENTATIVE FOR THE ESTATE OF GREGORY PHILLIPS, DECEASED**

The City of Detroit has filed papers with the Court, asking the Court to grant its Motion

To Enforce Settlement Agreement and Order, Pursuant To Sections 105 And 502 Of the

Bankruptcy Code, Approving Alternative Dispute Resolution Procedures To Promote the

Liquidation Of Certain Prepetition Claims Against Gregory Phillips and/or Dominique Mccartha

As Personal Representative For the Estate Of Gregory Phillips, Deceased ("Motion").

**Your rights may be affected.  You should read these papers carefully and discuss**

**them with your attorney, if you have one in this bankruptcy case.  (If you do not have an**

**attorney, you may wish to consult one.)**

If you do not want the court to grant the Motion To Enforce Settlement Agreement and

Order, Pursuant To Sections 105 And 502 Of the Bankruptcy Code, Approving Alternative

Dispute Resolution Procedures To Promote the Liquidation Of Certain Prepetition Claims

Against Gregory Phillips and/or Dominique Mccartha As Personal Representative For the Estate

25350389.1\022765-00213

13-53846-tjt   Doc 12444   Filed 09/09/16   Entered 09/09/16 12:15:13   Page 218 of 99
13-53846-tjt   Doc 10272   Filed 11/20/15   Entered 11/20/15 10:15:13   Page 214 of
263                                                                              214

Of Gregory Phillips, Deceased, or if you want the court to consider your views on the Motion, within fourteen (14) days, you or your attorney must:

1.      File with the court a written response or an answer, explaining your position at:[6]

> United States Bankruptcy Court
> 211 West Fort Street
> Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.  All attorneys are required to file pleadings electronically.

> You must also mail a copy to:

> Marc N. Swanson
> Miller, Canfield, Paddock & Stone, PLC
> 150 W. Jefferson, Suite 2500
> Detroit, MI 48226

2.      If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

---

[6] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e)

Dated: November 20, 2015

MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.

By: /s/ Marc N. Swanson
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Co-Counsel for the City of Detroit

CITY OF DETROIT LAW DEPARTMENT

Charles N. Raimi (P29746)
James Noseda (P52563)
Jerry L. Ashford (P47402)
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
Phone - (313) 237-5037/(313)
Email - raimic@detroitmi.gov

Attorneys for the City of Detroit

25350389.1\022765-00213   3

13-53846-tjt   Doc 10272   Filed 11/20/15   Entered 11/20/15 10:15:13   Page 16 of 99
13-53846-tjt   Doc 10744   Filed 09/19/16   Entered 09/19/16 12:25:13   Page 220 of 263   216

**EXHIBIT 3 – NONE**

25350389.1\022765-00213

<u>**EXHIBIT 4 – CERTIFICATE OF SERVICE**</u>

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on November 20, 2015, he caused a copy of the foregoing *CITY OF DETROIT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND ORDER, PURSUANT TO SECTIONS 105 AND 502 OF THE BANKRUPTCY CODE, APPROVING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES TO PROMOTE THE LIQUIDATION OF CERTAIN PREPETITION CLAIMS AGAINST GREGORY PHILLIPS AND/OR DOMINIQUE MCCARTHA AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF GREGORY PHILLIPS, DECEASED* to be served upon counsel via electronic mail and first class mail as follows:

Shawn C. Cabot
Christopher Trainor & Associates
9750 Highland Road
White Lake, MI 48386

shawn.cabot@cjtrainor.com

Dated: November 20, 2015

        By: /s/ Marc N. Swanson
        Marc N. Swanson (P71149)
        150 West Jefferson, Suite 2500
        Detroit, Michigan 48226
        Telephone: (313) 496-7591
        Facsimile: (313) 496-8451
        swansonm@millercanfield.com

**EXHIBIT 5 – NONE**

**EXHIBIT 6A – COMPLAINT**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DOMINIQUE McCARTHA, as Personal Representative for
the ESTATE OF GREGORY PHILLIPS, deceased and
GREGORY PHILLIPS,

      Plaintiff,

v.                                    CASE NO:
                                      HONORABLE:

CITY OF DETROIT and IAN SEVERY,
in his individual and official capacity,

      Defendants.

_____/

CHRISTOPHER TRAINOR & ASSOCIATES
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
shawn.cabot@cjtrainor.com
_____/

## COMPLAINT AND JURY DEMAND

      **NOW COMES** Plaintiff, by and through her attorneys, CHRISTOPHER TRAINOR &

ASSOCIATES, and for her Complaint against the above-named Defendants, states as follows:

1.      Dominique McCartha is the appointed, qualified, and acting Personal Representative

of the Estate of Gregory Phillips and currently resides in the City of Detroit, County

of Wayne, State of Michigan.

2.      Defendant City of Detroit is a municipal corporation and governmental subdivision

which is organized and existing under the laws of the State of Michigan.

1

13-53846-tjt   Doc 10244   Filed 08/20/15   Entered 08/20/15 12:25:13   Page 225 of
13-53846-tjt   Doc 10272   Filed 11/20/15   Entered 11/20/15 10:15:13   Page 225 of 99   221
263

3.     Defendant Ian Severy is and/or was a police officer employed by the Detroit Police Department and was acting under color of law, in his individual and official capacity, and in the course and scope of his employment at all times mentioned herein.

4.     All events giving rise to this lawsuit occurred in the City of Detroit, County of Wayne, State of Michigan.

5.     This lawsuit arises out of Defendants' violations of Plaintiff's federal constitutional rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution and consequently, Plaintiff has a viable claim for damages under 42 U.S.C. § 1983.  Plaintiff also has viable state law claims.

6.     Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1331 [federal question] and 28 U.S.C. § 1343 [civil rights].

7.     That the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), not including interest, costs, and attorney fees.

**FACTS**

8.     Plaintiff alleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

9.     On or about October 9, 2008, Gregory Phillips was shot and killed by Defendant Ian Severy in the area of 5333 McDougall, in the City of Detroit.

10.    On October 9, 2008, Gregory Phillips left his home to meet an acquaintance to buy a cell phone.

11.    Gregory Phillips met the seller of the cell phone and Detroit police officers approached them in an unmarked car and in plain clothes.

12.    The officers never once identified themselves as police officers.

13.  Because they did not know they were police officers, Gregory Phillips and his friend fled the scene on foot.

14.  As Gregory fled on foot, Defendant Severy fired multiple shots at Gregory Phillips and then told him to "Get his fucking hands up."

15.  Gregory Phillips was shot in the left chest and left flank.

16.  After Gregory Phillips had been shot, Defendant Severy repeatedly asked Gregory Phillips where the gun was at; however Gregory Phillips told the officer that he did not have a gun.

17.  The dying Gregory Phillips repeatedly asked for help, but Defendant Severy refused to render any aid to him, but instead handcuffed him.

18.  No weapons were found on Gregory Phillips or by him.

19.  At no time during the killing did Defendant Severy have a justifiable reason to use the deadly force that he employed.

20.  Defendants are not entitled to immunity protection.

21.  As a result of Defendants' unlawful actions, Plaintiff suffered injuries and damages.

### COUNT I
### VIOLATION OF THE FOURTH AMENDMENT
### 42 U.S.C. § 1983 EXCESSIVE FORCE

22.  Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

23.  That Defendant Severy was at all times acting under color of law, within the course and scope of his employment, and in his individual and official capacities.

24.    Defendants violated Gregory Phillips' right to be free from punishment and deprivation of life and liberty without due process of law under the Fourteenth Amendment to the United States Constitution.

25.    That Defendants violated Gregory Phillips' clearly established and federally protected rights as set forth under the United States Constitution and the Amendments thereto, including, but not limited to, the Fourth Amendment of the United States Constitution to be free from unreasonable searches and seizures mainly to be free from excessive use of force, when they employed unnecessary and unreasonable excessive and deadly force which resulted in Gregory Phillips' untimely death.

26.    Defendants' acts were at all times objectively unreasonable in violation of Gregory Phillips' clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution which proximately resulted in Gregory Phillips' untimely demise.

27.    As a proximate result of Defendants' violation and/or deprivation of Gregory Phillips' constitutional rights, Gregory Phillips and/or his estate have a viable claim for compensatory and punitive damages pursuant to 42 U.S.C. § 1983 together with costs, interest and attorney fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter an award in her favor and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest, costs, and attorney fees as well as an award of punitive damages.

## COUNT II
## GROSS NEGLIGENCE

4

13-53846-tjt   Doc 12144   Filed 08/20/16   Entered 08/20/16 12:25:13   Page 228 of
263
13-53846-tjt   Doc 12172   Filed 11/20/16   Entered 11/20/16 10:15:13   Page 228 of   224

28. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

29. The governmental agency that employed Defendant Severy was engaged in the exercise or discharge of a governmental function.

30. Defendant's conduct amounted to gross negligence that was the proximate cause of Gregory Phillips' injuries and damages.

31. Defendant Severy was working for the Detroit Police Department at the time of the incident complained of herein and had a duty to perform his employment activities so as not to endanger or cause harm to Gregory Phillips.

32. Notwithstanding these duties, Defendant Severy breached his duty with deliberate indifference and gross negligence and without regard to Gregory Phillips' rights and welfare, which caused serious injuries and damages to Gregory Phillips.

33. Defendant Severy knew or should have known that by breaching these duties, harm would come to Gregory Phillips.

34. That according to MCL 691.1407(2), the breach of Defendants' duty to exercise reasonable care was reckless and amounts to gross negligence.

35. That as a direct and proximate result of Defendants' indifferent/grossly negligent acts and/or omissions, Gregory Phillips suffered damages and injuries.

36. Defendants' actions were so egregious and so outrageous that Gregory Phillips' damages were heightened and made more severe, thus Plaintiff is entitled to exemplary damages.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter an award in Plaintiff's favor and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs, interest, and attorney fees.

### COUNT III
### CITY OF DETROIT'S CONSTITUTIONAL VIOLATIONS

37.    Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

38.    Defendant City of Detroit acted recklessly and/or with deliberate indifference when it practiced and/or permitted customs and/or policies and/or practices that resulted in constitutional violations to Gregory Phillips.

39.    That these customs and/or policies and/or practices included, but were not limited to:

a.  Failing to adequately train and/or supervise its police officers so as to prevent violations of citizen's constitutional rights;

b.  Failing to adequately train and/or supervise police officers regarding the proper use of force;

c.  Failing to supervise, review, and/or discipline police officers whom Defendant City of Detroit knew or should have known were violating or were prone to violate citizens' constitutional rights, thereby permitting and/or encouraging its police officers to engage in such conduct; and

d.  Failing to adequately train and/or supervise its police officers in the proper policies and procedures for establishing probable cause to arrest and the proper policies and procedures for effectuating an arrest without the use of excessive and/or deadly force.

40.  Defendants' conduct demonstrated a substantial lack of concern for whether an injury resulted.

41.  Defendants' acts and/or indifference and/or omissions were the direct and proximate cause of Gregory Phillips' injuries.

42.  The facts as set forth in the preceding paragraphs constitute a violation of Plaintiff's Fourth and Fourteenth Amendment rights and pursuant to 42 U.S.C. § 1983, Plaintiff has a viable claim for compensatory and punitive damages plus interest, costs, and attorney fees as set forth in 42 U.S.C. §1988.

   **WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter an award in Plaintiff's favor and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs, interest, and attorney fees.

                                   Respectfully Submitted,

                                   CHRISTOPHER TRAINOR & ASSOCIATES


                                   **s/ Shawn C. Cabot**
                                   CHRISTOPHER J. TRAINOR (P42449)
                                   SHAWN C. CABOT (P64021)
                                   Attorney for Plaintiff
                                   9750 Highland Road
                                   White Lake, MI  48386
                                   (248) 886-8650
                                   shawn.cabot@cjtrainor.com

Dated:  October 7, 2011
SCC/rrw

7

13-53846-tjt   Doc 10244   Filed 08/20/16   Entered 09/20/16 12:25:13   Page 231 of 59
13-53846-tjt   Doc 10272   Filed 11/20/16   Entered 11/20/16 10:15:13   Page 231 of 99
263
227

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DOMINIQUE McCARTHA, as Personal Representative for
the ESTATE OF GREGORY PHILLIPS, deceased and
GREGORY PHILLIPS,

      Plaintiff,

v.                                                                            CASE NO:
                                                                              HONORABLE:

CITY OF DETROIT and IAN SEVERY,
in his individual and official capacity,

      Defendants.

_____/

CHRISTOPHER TRAINOR & ASSOCIATES
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
shawn.cabot@cjtrainor.com

_____/

## DEMAND FOR TRIAL BY JURY

**NOW COMES** Plaintiff, by and through the attorneys, CHRISTOPHER TRAINOR & ASSOCIATES, and hereby makes a Demand for Trial by Jury.

Respectfully Submitted,

CHRISTOPHER TRAINOR & ASSOCIATES


<u>**s/ Shawn C. Cabot**</u>
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
Attorney for Plaintiff
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
shawn.cabot@cjtrainor.com

Dated:  October 7, 2011
SCC/rrw

# EXHIBIT 6B – PROOF OF CLAIM

B10 (Official Form 10) (04/13) (Modified)

| UNITED STATES BANKRUPTCY COURT | EASTERN DISTRICT of MICHIGAN | CHAPTER 9 ~~PROOF OF CLAIM~~ RECEIVED |
|---|---|---|

Name of Debtor: City of Detroit, Michigan     Case Number: 13-53846

**FEB 1 9 2014**

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*

KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Dominique McCartha for Estate of Gregory Phillips
Christopher Trainor + Assoc
Christopher J. Trainor + Shawn C. Cabot
9750 Highland Road
White Lake, MI 48386

Telephone number: 248-886-8650 email: shawn.cabot@cjtrainor.com

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):

Telephone number: _____    email: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**    $ 4,500,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Personal Injury / Civil Rights / Police Misconduct
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** _____    **3a. Debtor may have scheduled account as:** _____
(See instruction #3a)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:** $ _____

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:

**Basis for perfection:** _____

**Value of Property:** $ _____    **Amount of Secured Claim:** $ _____

**Annual Interest Rate (when case was filed)** _____% ☐ Fixed or ☐ Variable    **Amount Unsecured:** $ _____

**5. Amount of Claim Entitled to Priority as an Administrative Expense under 11 U.S.C. §§ 503(b)(9) and 507(a)(2).** $ _____

**5b. Amount of Claim Otherwise Entitled to Priority. Specify Applicable Section of 11 U.S.C. §** _____. $ _____

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, evidence of perfection of a security interest are attached. *(See instruction #7, and the definitio*
ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

1353846140219000000000062

**8. Signature: (See instruction # 8)**
Check the appropriate box.

☐ I am the creditor.   ☑ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Shawn C. Cabot
Title: Attorney
Company: Christopher Trainor + Assoc.
Address and telephone number (if different from notice address above):
9750 Highland Road
White Lake, MI 48386

_____ (Signature)     2-16-14 (Date)

Telephone ~~13-53846-swr~~   ~~Doc 2774~~   ~~Filed 03/04/15~~   ~~Entered 03/04/15 12:25:13~~   ~~Page 235 of~~
263

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Andrew E. Barrett
Shawn C. Cabot
Amy J. DeRouin
Ryan A. Ford
Timothy M. Hartner
Thomas F. Norton
Christopher J. Trainor

Of Counsel:
Shawn J. Coppins
Vincent M. Farougi




LAW OFFICES OF

# CHRISTOPHER TRAINOR
## & ASSOCIATES

9750 Highland Road
White Lake, Michigan 48386

Tel (248) 886-8650
Toll Free (800) 961-8477
Fax (248) 698-3321
MichiganLegalCenter.com

February 18, 2014
**Via Hand Delivery**

Office of the Clerk of Court
United States Bankruptcy Court
For the Eastern District of Michigan
211 West Fort Street
Suite 1700
Detroit, MI 48226

**Re:** **Dominique McCartha as Per. Rep. for Estate of Gregory Phillips v. City of Detroit, et al**
**United States District Court—E.D. Michigan Case No: 11-14419**

Dear Sir/Madam:

In reference to the above-referenced matter, enclosed please find the creditor's B10 form and supporting documentation.

At the time of the bankruptcy, a police misconduct case was pending in the United States District Court—Eastern District of Michigan. Mr. Phillips, who was unarmed, was shot and killed by a City of Detroit police officer for no legal or justifiable reason whatsoever.

Attached are copies of the filed Court Complaint and a Facilitation Summary (without exhibits) which support the claimant's position.

If any questions or concerns arise, please feel free to contact our office.

Very Truly Yours,
CHRISTOPHER TRAINOR & ASSOCIATES

Shawn C. Cabot, Esq.

SCC/
Enclosures

cc: City of Detroit Claims Processing Center
c/o Kurtzman Carson Consultants, LLC
2335 Alaska Avenue
El Segundo, CA 90245

13-53846-tjt   Doc 10244   Filed 08/20/16   Entered 08/20/16 12:25:13   Page 236 of
13-53846-tjt   Doc 10272   Filed 11/20/16   Entered 11/20/16 12:15:13   Page 32 of 59   232
263

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DOMINIQUE McCARTHA, as Personal Representative for
the ESTATE OF GREGORY PHILLIPS, deceased and
GREGORY PHILLIPS,

     Plaintiff,

v.

                                    CASE NO: 11-14419
                                      HONORABLE:
                                              Avern Cohn

CITY OF DETROIT and IAN SEVERY,
in his individual and official capacity,

     Defendants.

_____/

CHRISTOPHER TRAINOR & ASSOCIATES
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
shawn.cabot@cjtrainor.com

_____/

## COMPLAINT AND JURY DEMAND

    **NOW COMES** Plaintiff, by and through her attorneys, CHRISTOPHER TRAINOR &

ASSOCIATES, and for her Complaint against the above-named Defendants, states as follows:

1.    Dominique McCartha is the appointed, qualified, and acting Personal Representative

    of the Estate of Gregory Phillips and currently resides in the City of Detroit, County

    of Wayne, State of Michigan.

2.    Defendant City of Detroit is a municipal corporation and governmental subdivision

    which is organized and existing under the laws of the State of Michigan.

13-53846-tjt   Doc 12444   Filed 09/09/16   Entered 09/09/16 12:25:13   Page 337 of 99
13-53846-tjt   Doc 12172   Filed 11/20/15   Entered 11/20/15 16:12:51   Page 33 of 99
263
233

3.      Defendant Ian Severy is and/or was a police officer employed by the Detroit Police Department and was acting under color of law, in his individual and official capacity, and in the course and scope of his employment at all times mentioned herein.

4.      All events giving rise to this lawsuit occurred in the City of Detroit, County of Wayne, State of Michigan.

5.      This lawsuit arises out of Defendants' violations of Plaintiff's federal constitutional rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution and consequently, Plaintiff has a viable claim for damages under 42 U.S.C. § 1983.  Plaintiff also has viable state law claims.

6.      Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1331 [federal question] and 28 U.S.C. § 1343 [civil rights].

7.      That the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), not including interest, costs, and attorney fees.

## FACTS

8.      Plaintiff alleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

9.      On or about October 9, 2008, Gregory Phillips was shot and killed by Defendant Ian Severy in the area of 5333 McDougall, in the City of Detroit.

10.     On October 9, 2008, Gregory Phillips left his home to meet an acquaintance to buy a cell phone.

11.     Gregory Phillips met the seller of the cell phone and Detroit police officers approached them in an unmarked car and in plain clothes.

12.     The officers never once identified themselves as police officers.

13. Because they did not know they were police officers, Gregory Phillips and his friend fled the scene on foot.

14. As Gregory fled on foot, Defendant Severy fired multiple shots at Gregory Phillips and then told him to "Get his fucking hands up."

15. Gregory Phillips was shot in the left chest and left flank.

16. After Gregory Phillips had been shot, Defendant Severy repeatedly asked Gregory Phillips where the gun was at; however Gregory Phillips told the officer that he did not have a gun.

17. The dying Gregory Phillips repeatedly asked for help, but Defendant Severy refused to render any aid to him, but instead handcuffed him.

18. No weapons were found on Gregory Phillips or by him.

19. At no time during the killing did Defendant Severy have a justifiable reason to use the deadly force that he employed.

20. Defendants are not entitled to immunity protection.

21. As a result of Defendants' unlawful actions, Plaintiff suffered injuries and damages.

**COUNT I**
**VIOLATION OF THE FOURTH AMENDMENT**
**42 U.S.C. § 1983 EXCESSIVE FORCE**

22. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

23. That Defendant Severy was at all times acting under color of law, within the course and scope of his employment, and in his individual and official capacities.

24.     Defendants violated Gregory Phillips' right to be free from punishment and deprivation of life and liberty without due process of law under the Fourteenth Amendment to the United States Constitution.

25.     That Defendants violated Gregory Phillips' clearly established and federally protected rights as set forth under the United States Constitution and the Amendments thereto, including, but not limited to, the Fourth Amendment of the United States Constitution to be free from unreasonable searches and seizures mainly to be free from excessive use of force, when they employed unnecessary and unreasonable excessive and deadly force which resulted in Gregory Phillips' untimely death.

26.     Defendants' acts were at all times objectively unreasonable in violation of Gregory Phillips' clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution which proximately resulted in Gregory Phillips' untimely demise.

27.     As a proximate result of Defendants' violation and/or deprivation of Gregory Phillips' constitutional rights, Gregory Phillips and/or his estate have a viable claim for compensatory and punitive damages pursuant to 42 U.S.C. § 1983 together with costs, interest and attorney fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter an award in her favor and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest, costs, and attorney fees as well as an award of punitive damages.

## COUNT II
## GROSS NEGLIGENCE

13-53846-tjt   Doc 12474   Filed 09/09/16   Entered 09/09/16 12:25:13   Page 240 of 594
13-53846-tjt   Doc 12472   Filed 11/20/16   Entered 11/20/16 10:15:13   Page 364 of 99
263
236

28. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

29. The governmental agency that employed Defendant Severy was engaged in the exercise or discharge of a governmental function.

30. Defendant's conduct amounted to gross negligence that was the proximate cause of Gregory Phillips' injuries and damages.

31. Defendant Severy was working for the Detroit Police Department at the time of the incident complained of herein and had a duty to perform his employment activities so as not to endanger or cause harm to Gregory Phillips.

32. Notwithstanding these duties, Defendant Severy breached his duty with deliberate indifference and gross negligence and without regard to Gregory Phillips' rights and welfare, which caused serious injuries and damages to Gregory Phillips.

33. Defendant Severy knew or should have known that by breaching these duties, harm would come to Gregory Phillips.

34. That according to MCL 691.1407(2), the breach of Defendants' duty to exercise reasonable care was reckless and amounts to gross negligence.

35. That as a direct and proximate result of Defendants' indifferent/grossly negligent acts and/or omissions, Gregory Phillips suffered damages and injuries.

36. Defendants' actions were so egregious and so outrageous that Gregory Phillips' damages were heightened and made more severe, thus Plaintiff is entitled to exemplary damages.

13-53846-tjt   Doc 12444   Filed 09/09/16   Entered 09/09/16 12:25:13   Page 241 of 5
13-53846-tjt   Doc 12172   Filed 11/20/15   Entered 11/20/15 10:15:13   Page 374 of 99   237
263

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter an award in Plaintiff's favor and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs, interest, and attorney fees.

## COUNT III
## CITY OF DETROIT'S CONSTITUTIONAL VIOLATIONS

37.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

38.   Defendant City of Detroit acted recklessly and/or with deliberate indifference when it practiced and/or permitted customs and/or policies and/or practices that resulted in constitutional violations to Gregory Phillips.

39.   That these customs and/or policies and/or practices included, but were not limited to:

a.   Failing to adequately train and/or supervise its police officers so as to prevent violations of citizen's constitutional rights;

b.   Failing to adequately train and/or supervise police officers regarding the proper use of force;

c.   Failing to supervise, review, and/or discipline police officers whom Defendant City of Detroit knew or should have known were violating or were prone to violate citizens' constitutional rights, thereby permitting and/or encouraging its police officers to engage in such conduct; and

d.   Failing to adequately train and/or supervise its police officers in the proper policies and procedures for establishing probable cause to arrest and the proper policies and procedures for effectuating an arrest without the use of excessive and/or deadly force.

40.   Defendants' conduct demonstrated a substantial lack of concern for whether an injury resulted.

41.   Defendants' acts and/or indifference and/or omissions were the direct and proximate cause of Gregory Phillips' injuries.

42.   The facts as set forth in the preceding paragraphs constitute a violation of Plaintiff's Fourth and Fourteenth Amendment rights and pursuant to 42 U.S.C. § 1983, Plaintiff has a viable claim for compensatory and punitive damages plus interest, costs, and attorney fees as set forth in 42 U.S.C. §1988.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter an award in Plaintiff's favor and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs, interest, and attorney fees.

Respectfully Submitted,

CHRISTOPHER TRAINOR & ASSOCIATES

**s/ Shawn C. Cabot**
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
Attorney for Plaintiff
9750 Highland Road
White Lake, MI 48386
(248) 886-8650
shawn.cabot@cjtrainor.com

Dated: October 7, 2011
SCC/rrw

13-53846-tjt   Doc 12444   Filed 09/20/15   Entered 09/20/15 12:25:13   Page 243 of 97
13-53846-tjt   Doc 12172   Filed 11/20/15   Entered 11/20/15 10:15:13   Page 243 of 99   239
263

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DOMINIQUE McCARTHA, as Personal Representative for
the ESTATE OF GREGORY PHILLIPS, deceased and
GREGORY PHILLIPS,

     Plaintiff,

v.                                  CASE NO:
                                      HONORABLE:

CITY OF DETROIT and IAN SEVERY,
in his individual and official capacity,

     Defendants.

                                                 /

CHRISTOPHER TRAINOR & ASSOCIATES
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
shawn.cabot@cjtrainor.com

                                                 /

## DEMAND FOR TRIAL BY JURY

13-53946-tjt   Doc 10244   Filed 08/29/16   Entered 08/29/16 16:12:51   Page 244 of 8  240
13-53946-tjt   Doc 10272   Filed 11/20/15   Entered 11/20/15 10:15:13   Page 404 of 99
263

**NOW COMES** Plaintiff, by and through the attorneys, CHRISTOPHER TRAINOR & ASSOCIATES, and hereby makes a Demand for Trial by Jury.

Respectfully Submitted,

CHRISTOPHER TRAINOR & ASSOCIATES

**s/ Shawn C. Cabot**
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
Attorney for Plaintiff
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
shawn.cabot@cjtrainor.com

Dated:  October 7, 2011
SCC/rrw

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

GREGORY PHILLIPS and/or DOMINIQUE
McCARTHA as Personal Representative for
the Estate of GREGORY PHILLIPS, deceased,

    Plaintiff,

v.

                       CASE NO:   11-14419
                       HONORABLE:  AVERN COHN

CITY OF DETROIT and IAN SEVERY,
in his individual and official capacity,

    Defendants.

| CHRISTOPHER TRAINOR & ASSOCIATES | CITY OF DETROIT LAW DEPARTMENT |
|---|---|
| CHRISTOPHER J. TRAINOR (P42449) | JERRY L. ASHFORD (P47402) |
| AMY J. DEROUIN (P70514) | Attorneys for Defendants |
| Attorneys for Plaintiff | 660 Woodward Avenue, Suite 1800 |
| 9750 Highland Road | Detroit, Michigan 48226 |
| White Lake, MI 48386 | (313) 237-3062 |
| (248) 886-8650 | ashfj@detroitmi.gov |
| (248) 698-3321 | |
| amy.derouin@cjtrainor.com | |

## PLAINTIFF'S FACILITATION SUMMARY

        **Date:**          **June 27, 2013**
        **Time:**          **2:00 p.m.**
        **Facilitator:**   **Allan Charlton**

## I.   OVERVIEW:

This case involves the unjustified and indefensible killing of Mr. Gregory Phillips by a

Defendant City of Detroit police officer. Defendant Ian Severy murdered Mr. Phillips, after he

cornered him in a dark alley. While the officers allege that Plaintiff was posing a threat to them

by waving around a gun, tales of this phantom gun have been greatly exaggerated and there is

zero evidence to substantiate said allegations. As a matter of fact, the physical evidence does not

support that Mr. Phillips even had any weapon on his person at the time that he was fatally shot, let alone a gun. As a result of Defendants' unlawful actions, Plaintiff will not settle for less than $4,500,000.00.

## II.    STATEMENT OF FACTS:

This case involves the murder of Gregory Phillips, in violation of his rights as secured by the Fourth Amendment of the United States Constitution and state law. On October 9, 2008, Mr. Phillips was visiting with his friends before returning home with his five-year-old son. As Mr. Phillips stood near his vehicle, an unmarked Detroit Police Department patrol car stopped near him and out sprung three plainclothes police officers, which included Defendant Severy. Officers Brian Laperrierre, John Mitchell, and Defendant Ian Severy began chasing Mr. Phillips and his friends as Officer David Pomeroy pursued them in the police vehicle.  According to the testimony of Defendant Severy and Officer Mitchell, who chased Mr. Phillips, at some point during the foot chase Mr. Phillips pulled a gun from inside his coat, ran with the gun in his hand until he reached a gate, then turned and pointed the gun at Defendant Severy. However, their suspicious testimony is completely unsubstantiated by any physical evidence.

Specifically, all photographic evidence from the scene show Mr. Phillips' body, covered in blood, sprawled on the ground within a few feet of a small black object. **(See Crime Scene Photos, attached as Exhibit F.)** That object, as reflected in photographs taken at the scene of the homicide, was a cell phone. Moreover, none of the photographic evidence reflects that Mr. Phillips had a gun.

Defendant Severy, who fired the shots that killed Mr. Phillips, testified that the alleged gun that Mr. Phillips aimed at him was removed from the scene to ensure the safety of the police

officers. **(See Deposition Transcript of Defendant Ian Severy attached as Exhibit A, p. 26).** However, Defendant Severy also testified that he knew that Mr. Phillips was dead the moment he approached the body. **(Exhibit A, p. 27).** Defendant Severy's partner, Office Mitchell, was the next officer to arrive on the scene. In his deposition, Officer Mitchell's testimony is wildly different from that of Defendant Severy. Officer Mitchell testified that Mr. Phillips was still breathing immediately after the shooting, and he was alive until the moment before EMS arrived on the scene. **(See Deposition Transcript of John Mitchell attached as Exhibit B, pp. 30-31).** Although Mr. Phillips was still alive, according to Officer Mitchell, Officer Mitchell took no action to save Mr. Phillips' life and instead spent those precious few minutes securing the alleged gun and handcuffing Mr. Phillips. **(Exhibit B, pp. 30-31).** Officer Mitchell testified that he took pains to preserve any fingerprints on this gun, and picked it up carefully with his thumb and forefinger to avoid compromising the evidence. **(Exhibit B, p. 27).** Shockingly, Officer Mitchell's next action taken with this evidence, that he was so concerned with preserving, was to stick the gun into his pocket! **(Exhibit B, p. 28).** As it turned out, Officer Mitchell did not need to be concerned at all with preserving fingerprints on the gun, because Defendant City of Detroit never ordered, and *to this very day* had not ordered, any fingerprint analysis of the alleged gun carried by Mr. Phillips submitted into evidence.

Although Officer Pomeroy, who was Officer Mitchell's supervisor, testified that it was Officer Mitchell's responsibility to inform the evidence tech, Thomas Smith, of any gun recovered from the scene Officer Mitchell shirked that responsibility and passed it along to the other officers. **(Exhibit B, p. 33; See Deposition Transcript of David Pomeroy attached as Exhibit C, pp. 28-29, 31).** While who retains ultimate responsibility remains a mystery, the fact

is that none of the responding officers reported to Mr. Smith where the alleged gun was found – that's because Mr. Phillips did not have a gun.

Notably, Officer Pomeroy testified that he never saw the gun while it was on the ground. (Exhibit C, p. 22). Defendant Severy then testified that Officer Mitchell took the gun to the trunk of the scout car. (Exhibit A, p. 25). However, and as previously mentioned, Officer Mitchell testified that he put the gun in his pocket. (Exhibit B, p. 28). Mr. Smith's report reflects, and his deposition testimony details, that the item that was found at the scene and marked with evidence tag number three was a cell phone. (See Deposition Transcript of Thomas Smith attached as Exhibit D, p. 19). Mr. Smith, a retired evidence technician without an interest in this case, acknowledged that he could not make a representation of the location of the gun because he never saw the weapon and Officer Mitchell never provided this information to him. (Exhibit D, pp. 8-10, 19). Officer Laperrierre, who arrived on the scene within minutes after the shooting, never even saw the gun allegedly dropped by Mr. Phillips, nor did he ever see Mr. Phillips pull a weapon at all. (See Deposition Transcript of Brian Laperrierre attached as Exhibit E, pp. 18, 24). This mystery gun, with its unclear and problematic journey through the chain of custody and nonexistent relationship to Mr. Phillips, is the crux of any defense to this unjustified homicide. Unfortunately for the Defendants, no photographic or forensic evidence support the allegation that Mr. Phillips had a gun. Instead, the same such evidence lends its credence to the most apparent answer which is that Mr. Phillips was gunned down in a dark alley on a dark night for no justification whatsoever. As stated above, Mr. Smith, the evidence technician who conducted a thorough and complete accounting of the scene of the homicide shortly after it occurred, testified that he *never* saw a gun that was alleged to have been the

property of Mr. Phillips. The only personal effect of Mr. Phillips that was on the ground near his fallen body was his cell phone. **(Exhibit D, pp. 20, 24).**

Mr. Phillips, father of two small children who were dependent upon him, is survived by those children. Mr. Phillips was an employee of Two Men and a Truck prior to his murder. Consequently, Plaintiff filed the instant lawsuit against Defendants City of Detroit and Ian Severy alleging the following claims: (1) excessive use of force in violation of the Fourth Amendment under 42 U.S.C. § 1983; (2) assault and battery; (3) gross negligence; and (4) a *Monell* claim against the City of Detroit.

## III.   CORROBORATING FACTS:

### A.   DEPOSITION TRANSCRIPT OF DEFENDANT IAN SEVERY (EXHIBIT A):

- Officer Mitchell moved the gun out of concern for the safety of the officers after the shooting. **(p. 26)**
- Immediately after the shooting, he was aware that Mr. Phillips was dead. **(p. 27)**
- After Officer Mitchell picked up the gun, Officer Mitchell put it in the trunk of the patrol car. **(p. 25)**

### B.   DEPOSITION TRANSCRIPT OF JOHN MITCHELL (EXHIBIT B):

- Mr. Phillips was alive immediately following the shooting and until just before EMS arrived. **(pp. 30-31)**
- He secured the gun and handcuffed Mr. Phillips before EMS arrived. **(p. 30-31)**
- He picked up the gun with his thumb and forefinger. **(p. 27)**
- He put the gun in his pocket. **(p. 28)**

### C.   DEPOSITION TRANSCRIPT OF DAVID POMEROY (EXHIBIT C):

- Officer Mitchell was responsible for reporting the gun to the evidence tech. **(pp. 28-31)**
- He never saw the alleged gun on the ground. **(p. 22)**

### D.   DEPOSITION TRANSCRIPT OF THOMAS SMITH (EXHIBIT D):

- He marked the cell phone found on the ground as Exhibit 3. **(p. 19)**
- As the officer recovering evidence, it was Officer Mitchell's responsibility to report any removed evidence to him in preparation of his report of the scene. **(pp. 8-10)**
- Mr. Phillips' cell phone was on the ground near his body when Mr. Smith arrived at the scene. **(p. 20)**

- He never saw the gun. **(p. 24)**

## E.   DEPOSITION TRANSCRIPT OF BRIAN LAPERRIERRE (EXHIBIT E):

- He never saw the gun on the ground. **(p. 18)**
- He never saw Mr. Phillips pull a gun from inside his coat. **(p. 24)**

## F.   CRIME SCENE PHOTOS (EXHIBIT F):

## V.   LEGAL ARGUMENT:

## A.   DEFENDANTS ARE LIABLE FOR ASSAULTING AND BATTERING MR. PHILLIPS.

Under Michigan law, an assault is an intentional and unlawful threat of offensive physical contact to another person which under the circumstances creates in the victim a well-founded fear of imminent physical contact coupled with the ability of the assailant to accomplish the contact. *VanVorous v. Burmeister*, 262 Mich. App. 467 (2004). *See also Espinoza v. Thomas*, 189 Mich. App. 110, 119 (1991). A battery is defined as "a willful and harmful or offensive touching of another person which results from an act intended to cause such a contact." A police officer may use force when making an arrest, **but only that level of necessary force** that an ordinary person would have deemed necessary given the knowledge of the arresting officer and the situation in which the arrest occurred. *Brewer v. Perrin*, 132 Mich. App. 520, 528 (1984). To find that a government actor is liable for the aforementioned torts, a Court must determine that "the officers' actions were not justified because they were not objectively reasonable under the circumstances." *Id.*

In the present case, Defendant Severy's actions against Mr. Phillips were absolutely unjustifiable, unreasonable, and absolutely malicious. As a result of Defendant Severy's intentional and unlawful actions, Mr. Phillips lost his life. Therefore, Defendant Severy is unmistakably liable for assaulting and battering Mr. Phillips.

**B.** **DEFENDANT SEVERY'S CONDUCT WAS GROSSLY NEGLIGENT AND GOVERNMENTAL IMMUNITY DOES NOT APPLY.**

In Michigan, governmental employees acting within the scope of their employment are immune from tort liability **unless** their conduct amounts to gross negligence. MCL 691.1407(2); *Poppen v. Tovey*, 256 Mich. App. 351, 356 (2003). Gross negligence is statutorily defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCLA 691.1407(a); *Oliver v. Smith*, 269 Mich. App. 560, 565 (2006). Moreover, the definition of gross negligence "suggests almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Tarlea v. Crabtree*, 263 Mich. App. 80, 87 (2004).

The senseless and unlawful actions taken by Defendant Severy illustrate a wanton disregard for Mr. Phillips' welfare and safety. As such, Defendant Severy is clearly liable for gross negligence because his unlawful and disturbing actions clearly demonstrate a substantial lack of concern for whether an injury or death resulted to Mr. Phillips, and he is certainly not entitled to governmental immunity.

**C.** **DEFENDANT SEVERY'S USE OF FORCE AGAINST MR. PHILLIPS WAS EXCESSIVE IN VIOLATION OF THE FOURTH AMENDMENT AND DEFENDANT SEVERY IS NOT ENTITLED TO QUALIFIED IMMUNITY**

The Fourth Amendment to the United States Constitution guarantees that "the right of the people to be secure in their person…against unreasonable searches and seizures, shall not be violated…." U.S. CONST. AMEND. IV. The reasonableness of a seizure "depends not only on *when* it is made, but also on *how* it is carried out." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original) (citing *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985). Thus, pursuant to 42

U.S.C. § 1983, a cause of action exists for the excessive use of force during an arrest. As will be explained below, Defendant Severy violated Plaintiff's Fourth Amendment rights by use of excessive force and he is not entitled to qualified immunity for his actions.

The Fourth Amendment's prohibition of unreasonable seizures strictly limits the amount of force a police officer may use. *Graham* at 394. Specifically, **a police officer may only use that degree of force necessary to complete the arrest.** *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997) (emphasis added). When reviewing a police officer's use of force, the Court asks whether a reasonable officer on the scene would have employed a similar degree of force. *Smith v. Freland*, 954 F.2d 343, 345-347 (6th Cir. 1992); see also *Graham* at 396. A court must consider the facts and circumstances surrounding the arrest or seizure, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the citizen is actively resisting arrest or attempting to evade arrest by flight." *Graham* at 396-97. An objective standard must be used to determine the reasonableness of the particular force used in light of the facts and circumstances confronting a reasonable officer on the scene. *Graham* at 396-97. Applying this standard to the facts of this case leaves only one conclusion: Defendants used excessive force against Plaintiff.

Cases within the Sixth Circuit "clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence...." *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006). In the instant case, even though Mr. Phillips was completely compliant and posed no threat whatsoever to any of the officers, he was fatally shot. Clearly, Defendant Severy's actions were certainly unreasonable and excessive and he is not entitled to qualified immunity.

## D.     PLAINTIFF HAS VALID CLAIMS AGAINST DEFENDANT CITY OF DETROIT

In *Monell v Dept. of Social Services of the City of New York*, 436 US 658, 690-691(1978), the United States Supreme Court held that local governments "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." While a municipality cannot be held liable solely because it employs a tortfeasor, liability can be imposed when an employee adheres to an official policy which causes another's constitutional rights to be violated.

A municipality will be held liable for inadequately training its officers when it "evidences a 'deliberate indifference' to the rights of its inhabitants…such a shortcoming [can] be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 US 378, 389 (1989). Defendant City of Detroit has clearly failed to train and supervise its police officers as to the proper use of force to employ while arresting a citizen. This failure to train and supervise the police officers regarding the use of force makes Defendant City of Detroit liable for Mr. Phillips' death and damages.

## VI. Conclusion

In light of the evidence and caselaw set forth above, Plaintiff will not settle for less than $4,500,000.00.

Respectfully Submitted,
CHRISTOPHER TRAINOR & ASSOCIATES

BY: _____

CHRISTOPHER J. TRAINOR (P42449)
AMY J. DEROUIN (P70514)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI 48386
(248) 886-8650

Dated: June 25, 2013
AJD/gcj

## PROOF OF SERVICE

The undersigned certified that on the 26th day of June, 2013
a copy of the foregoing document was served upon the attorney (s)
of record by e-mailing a copy of same to said attorney(s) only.
I declare under the penalty of perjury that the foregoing statement is
true to the best of my information, knowledge and belief.

_____
*DANIELLE NOWICKI*

# **EXHIBIT 6C – SETTLEMENT AGREEMENT**

25350389.1\022765-00213

13-53846-tjt   Doc 10444   Filed 08/19/16   Entered 08/19/16 12:25:13   Page 256 of 9   252
13-53846-tjt   Doc 10272   Filed 11/20/15   Entered 11/20/15 10:15:13   Page 52 of 99
263



Shawn C. Cabot
Amy J. DeRouin
Ryan A. Ford
Timothy M. Hartner
Thomas F. Norton
Christopher J. Trainor

Of Counsel:
Shawn J. Coppins
Vincent M. Farougi

**LAW OFFICES OF**
# CHRISTOPHER TRAINOR
## & ASSOCIATES

9750 Highland Road
White Lake, Michigan 48386

Tel (248) 886-8650
Toll Free (800) 961-8477
Fax (248) 698-3321
MichiganLegalCenter.com

October 22, 2014

Krystal A. Crittendon, Esq.
City of Detroit Law Department
2 Woodward Avenue
Detroit, MI 48226

> **RE:** **Estate of Gregory Phillips bnf Dominique McCartha v City of Detroit, et al
> 11-14419**

Dear Ms. Crittendon:

Relative to the above-referenced matter, enclosed please find the signed *Agreement Resolving Claim* along with *Medicare report and Indemnification Affidavit.* Please file in your usual manner.

Should you have any questions or concerns, please feel free to contact my office. Thank you for your time and prompt attention with this matter.

Very truly yours,
CHRISTOPHER TRAINOR & ASSOCIATES

*Caleena Cortes*

Caleena Cortes
*Legal Assistant to Amy J. DeRouin, ESQ.*

*AJD/cc*
*Enclosures (6 pages)*

P026716 C002830

------------------------------------------------------------------ x

In re                                    :    Chapter 9
                                         :
CITY OF DETROIT, MICHIGAN,               :    Case No. 13-53846
                                         :
                    Debtor.              :    Hon. Steven W. Rhodes    *SEP 2 9 2014*

------------------------------------------------------------------ :
                                         x

## AGREEMENT RESOLVING CLAIMS OF DOMINIQUE MCCARTHA,
## AS PERSONAL REPRESENTATIVE OF ESTATE OF GREGORY PHILLIPS

The City of Detroit (the "City") and the claimant identified in paragraph 2 below (the "Claimant" and, together with the City, the "Parties"), by and through their respective authorized representatives, do hereby agree as follows:

### RECITALS

A.      On July 18, 2013, the City commenced the above-captioned case (the "Chapter 9 Case") by filing a petition for relief under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court").   On December 5, 2013, following its determination that the City met all of the applicable requirements and is eligible to be a debtor under chapter 9 of the Bankruptcy Code, the Bankruptcy Court entered the Order for Relief Under Chapter 9 of the Bankruptcy Code (Docket No. 1946) with respect to the City.

B.     Pursuant to section 904 of the Bankruptcy Code, the City may continue to exercise its political and governmental powers, manage its property and revenues and use and enjoy its income-producing property without interference from the Bankruptcy Court.

C.     On December 24, 2013, the Bankruptcy Court entered the Order, pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims (Docket No. 2302) (the "ADR Order") establishing certain alternative dispute resolution procedures (collectively, the "ADR Procedures") to promote the resolution of certain claims designated by the City.

D.     The Claimant is the current record holder of the proof of claim identified under the heading "Filed Claim Number" in the table in paragraph 2 below (the "Filed Claim").

E.     The City (i) reviewed the Filed Claim and the facts and circumstances of the alleged liabilities asserted therein and (ii) designated the Filed Claim for potential resolution through the ADR Procedures.

F.     The City believes that the resolution of the Filed Claim as set forth in this Agreement is fair, reasonable and appropriate and will allow the Parties to avoid the cost, delay and burden of litigating potential disputes related to the Filed Claim.   In accordance with the ADR Order, the resolution of the Filed Claim set forth in this Agreement terminates the ADR Procedures with respect to the Filed Claim pursuant to section II.A.7 of the ADR Procedures.

G.     Pursuant to section 904 of the Bankruptcy Code, the City is authorized to propose and enter into this Agreement without further order of the Bankruptcy Court.

H.     The undersigned is authorized to enter into this Agreement on behalf of the City pursuant to a confidential memorandum dated March 25, 2014 that was issued to the City of Detroit Corporation Counsel by Kevyn Orr, Emergency Manager for the City of Detroit, entitled Litigation Claim Settlement Authority.

I.     The Parties have agreed to the terms set forth in this Agreement, as indicated by the signatures of their respective authorized representatives below.

## AGREEMENT

1.     The Claimant represents and warrants to the City that it has not sold, assigned, factored or otherwise transferred any portion of or interest in the Filed Claim and is the sole holder of the Filed Claim, with full authority to enter into this Agreement.   The Claimant further agrees to indemnify and hold the City harmless for any damages, including without limitation actual and reasonable out of pocket costs, resulting from a breach of its representations and warranties set forth in this paragraph.

2.     The Filed Claim is deemed amended, modified and allowed   as a general unsecured, nonpriority claim (any such claim, a "Settled Claim") in the corresponding amount set forth in the table below under the heading "Settled Claim Amount":

| Claimant | Filed Claim Number | Filed Claim Amount | Filed Claim Priority | Settled Claim Amount | Settled Claim Priority |
|---|---|---|---|---|---|
| **DOMINIQUE MCCARTHA** Personal Rep of Estate of Gregory Phillips | 1155 | $25,000.00 | General unsecured, nonpriority | $25,000.00 | General unsecured, nonpriority |

3.      The Parties agree that any Filed Claim identified in paragraph 2 above for which there is no corresponding Settled Claim (or such amount is listed as $0.00) is hereby withdrawn and deemed disallowed and expunged, pursuant to section 502 of the Bankruptcy Code.

4.      The Claimant will not further amend the Filed Claim (or the Settled Claim) or file any additional proofs of claim with respect to the liabilities asserted in the Filed Claim.  Any further amendments to the Filed Claim (or the Settled Claim) or any additional claims filed by the Claimant or their successors or assigns with respect to the liabilities asserted in the Filed Claim shall be null, void and of no effect.

5.      The Parties agree that any Settled Claim is a general unsecured, nonpriority claim, subject to the treatment provided for such claims under any chapter 9 plan for the adjustment of debts confirmed by the Bankruptcy Court (a "Plan").

6.      Any distribution made to the Claimant pursuant to a Plan is referred to herein as a "Plan Distribution."   If the Claimant or its successors or assigns receive payment of any portion of the Settled Claims from any source, including from the City, other than through the Plan (a

"Non-Plan Payment"), the portion of the Settled Claim equal to the amount of the Non-Plan Payments shall be deemed fully satisfied, and the Claimant, for itself and any successors or assigns, hereby prospectively waives and disclaims the right to receive Plan Distributions on account of the portion of the Settled Claim satisfied by any Non-Plan Payments.

7.   Nothing in this Agreement will have any impact on any proof(s) of claim that the Claimant has filed or holds other than the Filed Claim.   The Parties retain all of their respective claims, defenses, objections, counterclaims and any and all rights in respect of any proofs of claim that the Claimant has filed or holds other than the Filed Claim.

8.   As to the Filed Claims and Settled Claims described herein, the Claimant releases the City from any and all liability, actions, damages and claims (including claims for attorney fees, expert fees or court costs), known and unknown, arising or accruing at any time prior to and after the date of this Agreement, that the Claimant has or may have against the City. The Claimant acknowledges that this Agreement represents the compromise of a disputed claim and is not to be construed as an admission of liability on the part of the City.   As used in this Agreement, the Claimant and the City include each of their respective servants, agents, contractors, attorneys, employees, representatives, family members, heirs, elected officials, appointed officials, related corporations, subsidiaries, divisions, affiliates, directors and officers, if any.   Where required by the City, the Claimant has executed the Medicare Reporting and Indemnification Affidavit[s], if any, attached as Exhibit A.

9.   The Claimant stipulates to dismissal with prejudice of the civil action[s] related to the Filed Claims or Settled Claim in the form attached hereto as Exhibit B.

10.   This Agreement may be executed in identical counterparts, and/or by facsimile or e-mail scan, each of which when so executed and delivered will constitute an original, but all of

which taken together will constitute one and the same instrument. This Agreement constitutes the entire agreement between the Parties with respect to the matters addressed herein and may not be modified except in a writing signed by the Parties.

WHEREFORE, the undersigned have executed this Agreement on behalf of the parties hereto.

CITY OF DETROIT

By: _Kryptal A Crittenden_
KRYSTAL A. CRITTENDON
Supervising Assistant Corporation Counsel

Date: _9/26/14_

DOMINIQUE MCCARTHA, As Personal Representative of Estate of Gregory Phillips

_Dominique McCartha_

Date: _9/26/14_

Claimant's counsel:

_Christopher J. Trainor_ Shawn C. Cabot
CHRISTOPHER J. TRAINOR

Date: _10-13-14_