UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------------------X
                                          :

In re:                                      :           Chapter 9

CITY OF DETROIT, MICHIGAN,      :           Case No. 13-53846

                  Debtor.            :           Hon. Thomas J. Tucker

---------------------------------------------------------------X

**CITY OF DETROIT'S SECOND STATUS REPORT
WITH REGARD TO PREFERENCE ACTIONS**

      The City of Detroit, Michigan (the "City") hereby submits its second status report (the "Second Status Report") pursuant to this Court's *Order Scheduling Further Status Conference Regarding Preference Actions, and Continuing in Effect the Provisions of the November 24, 2015 Procedures Order* (Docket No. 11178) (the "Second Procedures Order") and, in that connection, requests that the Court permit the process established by the Second Procedures Order to continue. For its Second Status Report, the City respectfully represents as follows:

**BACKGROUND**

      1.     The City filed its petition for relief under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") on July 18, 2013. On December 5, 2013, the Court entered an order for relief after finding that

the City was eligible to be a debtor in a chapter 9 bankruptcy case (Docket No. 1946).

2. On November 12, 2014, the Court issued an Order confirming the *Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* (the "Plan") (Docket No. 8272). On December 31, 2014, the Court entered the *Supplemental Opinion Regarding Plan Confirmation, Approving Settlements, and Approving Exit Financing* (Docket No. 8993).

3. The Plan provided, among other things, that the City would retain and enforce claims, rights and Causes of Action (as defined in the Plan), including claims to recover transfers that are avoidable and recoverable pursuant to sections 547 and 550 of the Bankruptcy Code (collectively, the "Preferential Transfers"). *See* Plan, Article III(D)(2).

4. The Plan expressly preserved the City's right to assert Causes of Action on account of Preferential Transfers against 324 parties identified in the City's nonexclusive schedule of parties against whom Causes of Action could be asserted, which schedule was filed as an exhibit to the Plan. *See* Plan, Exhibit III.D.2 (Docket No. 8192).

5. On December 10, 2014 (the "Effective Date"), the Plan became effective in accordance with its terms. *See Notice of (I) Entry of Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit and (II) Occurrence of Effective Date* (Docket No. 8649).

6. On February 26, 2015, the City filed the Post-Confirmation Status Report of the City of Detroit Michigan (Docket No. 9306) (the "Post-Confirmation Status Report"), which is incorporated herein by reference.

7. The Post-Confirmation Status Report stated that: (i) the City deferred the analysis of potential Preferential Transfers until after the Effective Date; (ii) only after the Effective Date was the City able to devote resources to its diligence regarding the Preferential Transfers; and (iii) as of February 26, 2015, the City had identified approximately 300 parties who had received potential Preferential Transfers.

8. Thereafter, as a result of additional diligence, the City further reduced the number of parties from whom Preferential Transfers may be recovered to approximately 185 transferees (the "Transferees" or "Defendants").

**STATUS REGARDING PREFERENCE ACTIONS**

9. On November 14, 2015, the Court entered the *Order Approving Procedures for Adversary Proceedings to Avoid and Recover Preferential Transfers* (the "First Procedures Order") (Docket No. 10280), which had been sought at the City's request. The First Procedures Order sets forth the processes and procedures intended to promote amicable

resolution of adversary proceedings (the "Preference Actions") brought in connection with the Preferential Transfers by the City against Transferees.

10. Thereafter, in or about December 2015, the City commenced 185 Preference Actions against the Defendants, seeking the avoidance and recovery of the Preferential Transfers, pursuant to sections 547 and 550 of the Bankruptcy Code.

11. On April 29, 2016, the City filed and served the *City of Detroit's Status Report with Regard to Preference Actions* (Docket No. 11137) (the "Status Report"). As set forth in the Status Report, between December 2015 and April 2016, the City resolved 106 out of the 185 Preference Actions, whether through settlement, discontinuance or otherwise, leaving 79 remaining proceedings. Attached hereto as Exhibit "A" is a schedule identifying the Preference Actions resolved as of April 29, 2016.

12. Following a status conference held by the Court on May 18, 2016, at which counsel for the City and numerous Defendants appeared, the Court entered the Second Procedures Order. Pursuant to the Second Procedures Order, the processes and procedures which had been implemented in these proceedings pursuant to the First Procedures Order, including the stay of Federal Rule of Civil Procure 26(f), remain in effect unless and until the Court orders otherwise.

13.  Following the filing of the Status Report, the City resolved an additional 21 actions, as identified on Exhibit "B" attached hereto.  Included in these resolutions was the settlement of one of the City's most heavily litigated and contentious Preference Actions.

14.  Out of the 185 Preference Actions initially commenced by the City, only 58 remain.  These remaining Preference Actions involve complex and difficult issues, necessitating in-depth analyses and time consuming negotiations.  Attached hereto as Exhibit "C" is a schedule identifying the Preference Actions that remain pending.

A.  **Common Defenses**

15.  The Defendants in many of these remaining Preference Actions are asserting one or more of the following three defenses.

**(i)  Trust Fund / Earmarking:**

16.  Approximately twenty-five (25) Defendants are asserting that the Preferential Transfers they received consisted of "trust funds" or other "earmarked" monies that were not property of the City.  *See* Ex. C.

17.  The City is working with these Defendants to assess the merits of each Defendant's position, as each involves its own set of facts.  Factual issues raised by this defense include whether the funds transferred by the City were, in fact, to be held in trust by the City or were otherwise not "an interest of the debtor in property."  To the extent the transferred

funds were federal or state government grant funds or were otherwise not property of the City, factual issues include whether such transferred funds are properly traceable to the trust *res*. Tracing gives rise to additional fact issues which must be explored on a case-by-case basis as the City typically paid the Transferees from its general disbursement account using commingled funds. Furthermore, in certain instances, the City paid the Defendants before it had received federal or state government grant funds. In those instances, the City advanced funds to the Defendants with the expectation of later being reimbursed by a state or federal government agency pursuant to a grant program. It remains unclear whether, and to what extent, the City did in fact receive federal and/or state grant funds that correspond to the Preferential Transfers received by Defendants asserting this defense.

18. Because assessment of this defense involves a heavily fact based analysis, the City submits that this defense is not appropriate for resolution on summary judgment.

**(ii) <u>Contract Assumption:</u>**

19. Approximately thirteen (13) Defendants are asserting that the Preferential Transfers they received from the City were made on account of an executory contract assumed by operation of the City's Plan. *See* Ex. C. As the City's Plan provided for the assumption of all executory

contracts not specifically rejected, the City is working with the Defendants who have asserted this defense to assess whether the Preferential Transfers that the Defendants received were made in connection with a contract which was not rejected and remained executory on December 10, 2014, the Effective Date of the Plan.

20. While the City does not contest the merits of this defense for those parties who received payments pursuant to an executory contract which remained operative on the Effective Date and which was not explicitly rejected under the Plan, establishing the elements of this defense requires a factual analysis. For this reason, the City submits that this issue is not appropriate for summary judgment.

**(iii) Critical Vendor:**

21. Approximately nine (9) Defendants are asserting that they have a "critical vendor" defense to the Preference Actions because they purportedly received a form letter from the City characterizing them as an "essential vendor." *See* Ex. C. Attached hereto as Exhibit "D" is a copy of one of the form letters distributed by the City. In addition to disputing the Defendants' interpretation of the form letter, the City contends that it remains to be established whether such Defendant was the actual recipient of the letter (as certain versions of the letter are not

addressed to a specific party), and likewise contends that the applicable case law does not support a critical vendor defense under the present facts.

22. The City submits that whether a Defendant's receipt of an "essential vendor" letter entitles that Defendant to an absolute defense to the City's Preference Action is an issue that is ripe for summary judgment.

**B.   Future Procedures**

23. As set forth above, only 58 of the original 185 Preference Actions remain unresolved. The City continues to work with the remaining Defendants to amicably resolve their Preference Actions. As the City believes that the process established by the First Procedures Order, and continued in the Second Procedures Order, is effective in facilitating the resolution of the Preference Actions without the need for costly and time consuming litigation and/or third-party mediation, the City believes the Court should provide a further opportunity for the process the Court established to proceed. The City, therefore, requests that the terms and conditions of the First Procedures Order (and continued by the Second Procedures Order) should remain in effect through December 31, 2016. The City is cautiously optimistic that this additional period of time without the distraction and costs of formal discovery, litigation and/or mediation will facilitate the resolution of many of the remaining Preference Actions.

24. The City will be prepared to discuss this Second Status Report and the remaining Preference Actions at the status conference currently scheduled for September 26, 2015.

25. A copy of this Second Status Report has been served on all Defendants listed on Exhibit "C" hereto, including their respective counsel.

Dated: September 16, 2016  
        New York, New York

Respectfully submitted,

TOGUT, SEGAL & SEGAL LLP  
By:

/s/Scott E. Ratner  
ALBERT TOGUT (AT-9759)  
SCOTT E. RATNER (SER-0015)  
Members of the Firm  
One Penn Plaza, Suite 3335  
New York, New York 10119  
(212) 594-5000

*Counsel for the City of Detroit, Michigan*