UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,          .          Docket No. 13-53846
        MICHIGAN,                 .
                                  .          Detroit, Michigan
                                  .          August 31, 2016
                        Debtor.   .          1:53 p.m.
. . . . . . . . . . . . . . . .

HEARING RE. FORTY-FOURTH OMNIBUS OBJECTION TO CERTAIN
CLAIMS, FORTY-FIFTH OMNIBUS OBJECTION TO CERTAIN CLAIMS
AND FORTY-SEVENTH OMNIBUS OBJECTION TO CERTAIN CLAIMS
BEFORE THE HONORABLE THOMAS J. TUCKER
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the City of        Miller, Canfield, Paddock & Stone
Detroit:               By:  JOHN H. WILLEMS
                       150 West Jefferson, Suite 2500
                       Detroit, MI  48226
                       (313) 496-7591

Claimants:             Gueelma Brown
                       Michelle Duff
                       Jacqueline M. Jackson
                       Dinah Bolton
                       Beatrice McQueen
                       Henry Wolfe

Court Recorder:        Jamie Laskaska
                       United States Bankruptcy Court
                       211 West Fort Street
                       21st Floor
                       Detroit, MI  48226-3211
                       (313) 234-0068

Transcribed By:        Lois Garrett
                       1290 West Barnes Road
                       Leslie, MI  49251
                       (517) 676-5092

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1    THE CLERK:  All rise.  This court is now in session.
2    The Honorable Thomas J. Tucker is presiding.  You may be
3    seated.  The Court calls the case of the City of Detroit,
4    Michigan, Case Number 13-53846.
5        THE COURT:  All right.  Good afternoon.  I see we
6    have a number of parties sitting the courtroom who may be
7    parties who want to participate in the hearings today and who
8    are representing themselves, but if there are any attorneys
9    representing any parties who are in the back, please come up
10   to counsel table, and we'll have the attorneys enter their
11   appearance.  Anyone else who speaks during today's hearings,
12   we'll ask you to state your name for the record when you
13   first begin to speak at the podium.  So for the city then,
14   your appearance?
15       MR. WILLEMS:  John Willems on behalf of debtor, City
16   of Detroit.
17       THE COURT:  All right.  Mr. Willems, is it; right?
18       MR. WILLEMS:  Yes.
19       THE COURT:  Mr. Willems.  Good afternoon, and good
20   afternoon to everyone else in the courtroom.  We have
21   scheduled for hearing today further hearing on the Court's
22   forty-fourth and forty -- or on the debtor, rather, debtor's
23   forty-fourth and forty-fifth omnibus objection to certain
24   claims.  With respect to claims, the hearing on which have
25   been adjourned until today by prior orders of the Court on

1   those claim objections, the Court having previously held a

2   hearing on the forty-fourth and forty-fifth omnibus

3   objections on June 15, I believe it was of this year, we also

4   have for hearing scheduled the debtor's forty-seventh omnibus

5   objection to certain claims.  That's the City of Detroit's

6   claim objection.  This is the first hearing on that omnibus

7   claim objection.  Mr. Willems, what do you want to say first?

8        MR. WILLEMS:  Let's start with the forty-fourth and

9   forty-fifth, your Honor.

10        THE COURT:  That's fine.  Go ahead.

11        MR. WILLEMS:  As I'm sure your Honor is aware, the

12   hearing today is to address and resolve what I will call a

13   group of claimants.  I will call them grant claimants who are

14   individuals who had responded to the forty-fourth and forty-

15   fifth omnibus objections by the city and indicated that they

16   might or they were being paid out of grant monies awarded to

17   the city.  In this case, I think most of them were HUD

18   grants.  And so the city offered to take another look and see

19   whether or not that was the case, the theory being that if

20   these were grant-based positions -- in other words, being

21   paid out of grants -- then the ten-percent wage reduction

22   would not have applied to them, the wage reduction that was

23   imposed under the city's city employment terms, the CET's, as

24   they have been known to call, and I can explain all that, but

25   I think the Court has probably heard about all that before.

1    And if the Court wants me to, I can go into that.

2          In any case, the city did go back and look at a list

3    of individuals, and if the Court wants me to identify each

4    one by name, I can do that.  There's some 15, 16 or so.  But

5    in any case, four of those the city did not look at because

6    their responses were stricken, and that would be Anthony

7    Derrick Smith, Hope Strange, Randall Thomas, and Diane L.

8    Onuigbo, so no further action was taken on those.  The

9    remaining grant claimants the city went -- reviewed their

10   payroll records as indicated in Exhibit 6(b) to our reply

11   which was filed last week, the declaration of Sharon D.

12   Guillory.  Essentially, what the city did was review their

13   payroll records for the year immediately preceding the

14   imposition of the CET's, which was, I think, around July 17th

15   of 2012, and calculated the annual salary or determined the

16   annual salary that was being paid at the time and for the

17   period of July -- for the last period -- pay period in July

18   through the last pay period in August of 2013 determined what

19   ten percent of that pay would be and then proposed to the

20   claimants that because a claim of this size would be treated

21   as a Class 15 convenience claim that the city would settle on

22   the basis of 25 percent of the 10 percent.  All of that is

23   laid out in the reply and is also laid out in the affidavit.

24          THE COURT:  I think Ms. Guillory's declaration that

25   you're referring to, Exhibit 6(b) to the city's reply filed

1   on August 26, last Friday, Docket 11493 --

2          MR. WILLEMS:  Correct.

3          THE COURT:  -- said in paragraph 5 -- indicated in

4   paragraph 5 of her affidavit that the amount of the ten-

5   percent reduction was calculated for the period August 6,

6   2012, which she says is the first pay period after the

7   reduction went into effect, to July 30, 2013, covering the

8   last pay period after the filing of the city's bankruptcy, so

9   it's --

10         MR. WILLEMS:  You're correct.

11         THE COURT:  That's the time range of the --

12         MR. WILLEMS:  That's the time range.

13         THE COURT:  -- right -- that's at issue.  All right.

14  Go ahead.

15         MR. WILLEMS:  So based on that review and the

16  formula, the city determined the following:  that for all but

17  two of the grant claimants that were still in play other than

18  those whose claims had been stricken or disallowed as a

19  result of responses being stricken, there wasn't -- those

20  were, indeed, 100-percent grant-funded positions.  The grants

21  reimbursed the city only for the base pay, not for any

22  additional benefits, which are contractually agreed to with

23  the unions.  All of these individuals are also union members,

24  and the -- and once the salary was determined, ten percent of

25  that was calculated, and that was the amount upon which the

1  Class 15 claim -- or the Class 15 offer was then based, and

2  each of the -- there were two individuals, and they have

3  since filed -- or one of them, Dinah Bolton, has since filed

4  an additional response, and I think that is also addressed in

5  the Guillory affidavit.  We received that response rather

6  late in time, but what was determined was that Ms. Bolton and

7  another individual, Stephanie Crews, although they were

8  nominally working in granted positions, the reimbursement for

9  those grants or the monies paid out out of the grants were

10  disallowed by HUD subsequently and were reimbursed by the --

11  from the city's general fund so as a result of which they

12  were not in a grant-funded position for that year, the year

13  that was at issue here, and so the city made no offer to Ms.

14  Bolton or Ms. Crews.

15          Since then, the city has also received -- well, a

16  number of individuals who signed -- and I can give you the

17  docket numbers if they're necessary in this, but a number of

18  individuals signed stipulations, and orders were entered

19  after the stipulations were filed with the Court.  Since

20  then, some of those individuals have filed motions for

21  reconsideration.  I understand that under the rules, the city

22  is not going to be allowed to file a response to that, but if

23  the Court wishes to address that today for expedience sake, I

24  can address that.

25          THE COURT:  You're referring to -- these were all

1  motions that were filed yesterday --

2          MR. WILLEMS:  Correct.

3          THE COURT:  -- Docket Numbers 11505 through 11511 --

4          MR. WILLEMS:  Correct.

5          THE COURT:  -- seven of them -- by different

6  individuals for whom orders were entered last Friday --

7  stipulated orders were entered last Friday --

8          MR. WILLEMS:  Right.

9          THE COURT:  -- resolving the claim objection as to

10  them.  Then yesterday they all filed motions for

11  reconsideration of relief from those orders -- that order all

12  on basically the same grounds.  I mean it looks like a

13  pattern, you know, a form that was used to file these things.

14  With respect to those motions -- and let me just say -- I'll

15  go through the names of the parties who filed those motions

16  yesterday.  Ranna Trivedi.

17          MR. WILLEMS:  Correct.

18          THE COURT:  Warren Duncan.

19          MR. WILLEMS:  Also correct.

20          THE COURT:  Kim McCoy, Brenda Davis, Fern Clament or

21  Clement.

22          MR. WILLEMS:  Fern Clement, yeah.

23          THE COURT:  Yes.  Gerhard Eady.

24          MR. WILLEMS:  Correct.

25          THE COURT:  Darrell Carrington.

1          MR. WILLEMS:  Yes.

2          THE COURT:  Each of them filed a motion for

3    reconsideration.  As you alluded to, Mr. Willems, under this

4    Court's local rule -- and I'll say for the benefit -- if any

5    of those people are in the courtroom listening, for the

6    benefit of all of you -- your knowledge, our Court's local

7    rules have provisions regarding motions for reconsideration.

8    They include the -- a provision that says with respect to a

9    motion for reconsideration, no response to the motion and no

10   oral argument thereon will be allowed unless the court

11   otherwise orders.  That is our Local Rule 9024-1(a)(2)

12   concerning motions for reconsideration.  What that means is

13   the normal procedure and the procedure which I'm going to

14   follow with respect to these motions, reconsideration, is I

15   will review them.  I'll decide whether or not to order the

16   city to file a response to any of them.  If I order the

17   court -- or the city to file a response, I'll do an order

18   that sets a deadline for the city to do that.  The city will,

19   of course, file a response, a written response, to the motion

20   or motions and serve and send a copy of that response to the

21   affected individuals who filed the motions.  Whether I order

22   the city to file a response or not, I also will determine

23   after reviewing the motions more carefully whether I want to

24   set a hearing to hear oral argument from the parties that

25   have filed such motions and the city about such motions.  I

1   probably would not set a hearing without also ordering the
2   city to file a written response before we would have a
3   hearing, and then we would have a hearing.

4       Now, I may decide -- and I don't know what I'm going
5   to rule or decide yet on these because I've not had a chance
6   since they were filed to review them carefully and decide
7   what to do with them, but the other alternative is -- besides
8   setting them for a hearing with or without requiring the city
9   to file a written response to them is for the Court to deny
10  the motions without a hearing by entering an order that
11  explains why the motion is being denied.  Those are basically
12  the options.  If the Court has -- schedules a hearing on the
13  motion, then, of course, the Court would decide the motion
14  after holding the hearing and hearing from the parties oral
15  argument about it.  If the Court orders the city to file a
16  response and the Court decides after reviewing both the
17  motion and the city's response that a hearing is not
18  required, the Court would rule on the motions without a
19  hearing.  These are really the options that are out there
20  available to the Court.  I've not decided, as I said, what
21  approach I'm going to take with these.  I have to look at
22  them more carefully and think about that before I decide what
23  to do.  This Court receives and considers many motions for
24  reconsideration in many cases, cases of all kinds, all kinds
25  of matters.  It's a very common kind of motion.  Many of

1   those motions the Court denies without a hearing but not all,

2   not all of them.  Some the Court does set for hearing.  Some

3   the Court grants.  Some it denies.  And so I don't know what

4   I'm going to do with those, but for the time being, unless

5   and until I order otherwise, the city is not permitted to

6   file a response or allowed or required to file a written

7   response to any of these motions and presumably because of

8   that will not do so.  I'm not going to have a hearing today

9   on those motions, any of them.  No hearing was scheduled for

10  today on those motions.  I'm going to follow the Court's

11  normal procedures under our local rule regarding those

12  motions, and so those are not before me today for hearing,

13  those motions for reconsideration.

14          As things currently stand, the city's claim

15  objections as to the claims of each of the persons who have

16  filed motions for reconsideration yesterday are deemed

17  resolved by the orders that were entered last Friday.  If the

18  Court grants -- to the extent the Court grants one or more of

19  the motions for reconsideration ultimately, then that status

20  may change, but the current status is the claims have been

21  resolved by the orders entered last Friday.  We'll see what

22  the Court does with the motions for reconsideration, but

23  that's not for decision today, and I don't mean to express

24  any view today in this hearing on the merits of those motions

25  because I've not had a chance to read them and study them and

1    think about them as I want to do before I decide what to do

2    with them.  So what else do you want to say, Mr. Willems?

3            MR. WILLEMS:  Well, to kind of wrap this up, with

4    respect to those individuals who have not filed a stipulation

5    and who have -- and those individuals who have filed -- who

6    have signed stipulations but who have now filed a motion for

7    reconsideration, with respect to all the others, the city

8    requests that the proposed Class 15 payment amount that's set

9    forth in Exhibit 6(a) of our reply and also, I think, in the

10   declaration of Sharon Guillory, that be allowed as the

11   resolution of those claims.

12           THE COURT:  Well, let's walk through those so -- and

13   talk about them by name.  There aren't that many of them

14   left.  With respect to the forty-fourth omnibus claim

15   objections of the city, in the -- actually, we might as well

16   just go through them -- forth-fourth and forty-fifth.  In

17   your Exhibit 6(a), your chart, that's attached to your reply

18   filed last Friday, Docket 11493, you have -- you lump the

19   forty-four and forty-fifth objection people together, and

20   that's fine for this purpose, so let's walk through those.

21   Dinah Bolton you listed, and you've argued as to Dinah Bolton

22   and Stephanie Crews both, their claims, that their positions

23   were not grant-funded, so you are not asking the Court to

24   enter an order that allows their claims in part.  I assume

25   you're asking the Court, with respect to Ms. Bolton and Ms.

1  Crews, to enter an order sustaining the claim objection and

2  disallowing their claims in the entirety.  Is that correct?

3          MR. WILLEMS:  That would be correct, your Honor.

4          THE COURT:  Now, you mentioned all these individuals

5  are members of a union.  Is that true with respect to Ms.

6  Bolton and Ms. Crews?

7          MR. WILLEMS:  As far as I know, they are also

8  represented by unions -- a union.

9          THE COURT:  Should the Court -- with respect to

10  their claims, in the city's view, should the Court treat

11  their claims as it did as a result of the June 15 hearing and

12  as discussed in the June 15 hearing regarding the other

13  claims in these omnibus claim objections, the people that

14  were not what you've labeled possible grant claimants?  In

15  other words, you'll recall --

16          MR. WILLEMS:  Yes.  No.  I understand the Court's

17  question, and the answer is, from the city's perspective,

18  yes, they should be put back in that group.

19          THE COURT:  And just, again, for the record to

20  benefit anyone who wasn't here for the June 15 hearing, what

21  the Court did with those claims, the people who were not

22  grant claimants and who had filed a timely response to the

23  claim objection and who had appeared at the hearing, the

24  Court ruled that it would decide the merits of the city's

25  claim objection after the Court -- it would issue a written

1   decision on that after the Court learned whether or not the

2   settlement that has been proposed and that's in the works of

3   the city's objection to the claims of AFSCME and the local

4   unions is going to be finally approved.  That apparently has

5   still not happened, although -- so I've not issued a written

6   decision on that issue.  The issue there to be decided is

7   whether the city -- whether or not the city is correct that

8   the wage reductions, the city employment terms that were

9   imposed before the filing of the bankruptcy case, were proper

10  and legal and permitted and, if they were, that the claims

11  that are based upon those reductions should be disallowed, so

12  that's the issue to be decided.  The Court decided -- the

13  Court decided to hold off issuing a written ruling on the

14  merits of that because if the settlement with the AFSCME and

15  the other unions was not approved and fell apart, that that

16  issue would be litigated in connection with the city's

17  objection to the claims of the unions, and the Court felt it

18  ought to wait because it appeared that settlement was heading

19  for approval but hadn't happened yet, so I decided to wait,

20  so I've not issued a written ruling on that issue yet.

21          On that subject, Mr. Willems, let me ask you a

22  question.  One second.  The status of that settlement, as

23  reported to the Court recently, is that the city intends to

24  file a motion to prepare and file a motion with the Court in

25  this case seeking approval of the settlement.

1           MR. WILLEMS:  Correct.

2           THE COURT:  And so the city recently asked the Court

3     to extend the deadlines -- the litigation deadlines that have

4     been set in connection with that claim objection to allow

5     time for that.  So no such settlement motion has been filed

6     yet, but one of the things I wanted to ask the city's counsel

7     while we're here today is why it is the city thinks that

8     approval by this Court of the settlement is required.

9           MR. WILLEMS:  As the Court will see when the motion

10    is filed, there are two reasons for that.  One is the extent

11    of the issues involved.  And, as you know, there are a number

12    of individual claims and other separate union claims that

13    address the same issues.  Secondly, the amounts are fairly

14    significant, significant enough that, from the city's

15    perspective, it was the -- and from the union's perspective,

16    too, this was something we agreed on, that court approval

17    should be obtained and notice be given to the other Class 14

18    creditors in order to give them an opportunity to respond to

19    the proposed settlement.

20          THE COURT:  Well, just so you know, we don't need to

21    have an extended discussion of this today in this hearing.

22    It's really not technically a subject for today's hearing,

23    but I would encourage you, the city, when you file that

24    motion to explain why it is this Court's approval is required

25    of that settlement or at least permitted, why it is this

1 Court is permitted to review and approve or disapprove the

2 settlement even if somebody objects, given that this case is

3 in the post-confirmation stage. There's a confirmed plan

4 obviously of adjustment that -- so the Court's role in that

5 post-confirmation stage with respect to settlements is

6 probably quite limited, and there -- of course, as I

7 observed, there are many, many settlements the city has made

8 of claim objections and regarding claims filed that have been

9 handled just by stipulation and order, and there's no

10 settlement approval motion, so, you know, I'm not going to be

11 inclined to launch into, you know, a big process of approval

12 of -- hearing objections and approving settlement where the

13 Court really has no business getting involved in that in this

14 post-confirmation stage, so just so you're -- just as a heads

15 up, I would encourage the city -- because I'm going to

16 question this. If it's not explained to me to my

17 satisfaction, I'm going to question why the Court should not

18 deny such a motion without prejudice on the ground that it's

19 not necessary or permitted under the confirmed plan. You see

20 what I'm saying? You see my concern?

21         MR. WILLEMS: Absolutely. I get the heads up. I

22 get the point.

23         THE COURT: All right.

24         MR. WILLEMS: We've obviously considered this, and,

25 as a matter of fact, counsel is meeting tomorrow to try and

1   work this all out and get something before you as soon as
2   possible, so --

3           THE COURT:  All right.  Well, you know, again,
4   you're aware of my concern, my question.

5           MR. WILLEMS:  Sure.

6           THE COURT:  I'll certainly be interested promptly
7   after that motion is filed in reviewing what the city says
8   and what the unions say in there about what business this
9   Court has, if any, in passing on the settlement in terms of
10  approving it or disapproving it, so, anyway, but getting back
11  to how this came up, this came up because the Court -- I was
12  mentioning what I had decided on June 15th, and it's
13  reflected in the orders that I entered as a result of the
14  June 15 hearing that for the non-grant claimant folks here
15  who have claims that are involved in the forty-fourth, forty-
16  fifth omnibus objections, the Court was going to make a
17  written decision on the merits of the claim objection, but
18  that's waiting for finalization of the settlement if it
19  occurs or if it doesn't occur, so should I take the same
20  approach with respect to the claims -- city's claim objection
21  to the claims of Ms. Bolton and Ms. Crews, who the city says
22  are not grant claimants?

23          MR. WILLEMS:  Because they are not grant claimants,
24  they would fall back under the omnibus objections that -- I'm
25  trying to remember now what we called that set of claimants,

1  but obligation claimants, employee obligation claimants, and

2  they would be set for decision as those are.

3       THE COURT:  Employee obligation claimants.

4       MR. WILLEMS:  Yeah; right.

5       THE COURT:  So you would simply want the Court to

6  rule on that as I'm going to do on the others?

7       MR. WILLEMS:  Yes.

8       THE COURT:  Maybe the city wants me to rule now, but

9  I'm going to be consistent with what I'm doing with the

10  others, which means I'm going to wait.

11       MR. WILLEMS:  That's what we presumed you would want

12  to do, so that's --

13       THE COURT:  That's your view about Bolton and Crews.

14  We'll ask -- if Ms. Bolton or Ms. Crews is present, we'll

15  ask -- I'll give them an opportunity to speak in a moment,

16  but I want you to go ahead and let's walk through the other

17  ones that are still on the list that are unresolved in your

18  Exhibit 6(a) list at least.

19       MR. WILLEMS:  Okay.  Do you want me to -- okay.

20       THE COURT:  We have Gueelma Brown, Claim Number 1794

21  as I have it, is listed in your Exhibit 6(a) right after Ms.

22  Bolton.  You apparently view that as she is a grant claimant,

23  and you have a proposed claim -- allowed claim amount you

24  proposed for her and sent her a letter proposing it, and you

25  didn't get a response, you say.

1          MR. WILLEMS:  You're reading that correctly, your

2    Honor.

3          THE COURT:  And so as to her, you're asking the city

4    to -- or you're asking the Court, rather, to enter an order

5    allowing her claim in the reduced amount of $4,780 and to

6    order that that is deemed allowed as a Class 15 claim?

7          MR. WILLEMS:  Correct, for the amount --

8          THE COURT:  And treated as Class 15 convenience

9    claims paid 25-percent cash --

10         MR. WILLEMS:  Right.

11         THE COURT:  -- right?  Okay.  So that's Ms. Brown.

12   Again, Ms. Brown, if she's here at this hearing, will have an

13   opportunity to be heard about that before I make a ruling on

14   it.  The next one I have on my list is Michelle Duff, Claim

15   2330, and then Jacqueline Jackson, Claim 2414.

16         MR. WILLEMS:  Yeah.  Duff.

17         THE COURT:  And then --

18         MR. WILLEMS:  Yeah.

19         THE COURT:  -- Diana Patillo, Claim 1476.  These are

20   all persons who you -- the city believes are grant claimants

21   who should be allowed a claim in a reduced amount, and you

22   propose the amount in your chart.  Actually, each one would

23   be an allowed claim amount of $4,780 to be paid as a Class 15

24   claim at 25 percent cash of that amount.  Each of those you

25   said in your chart did not respond to the city's letter

1  proposing settlement.

2  MR. WILLEMS:  And to date we have not received a

3  response, so we would ask that they be treated the same way;

4  in other words, that the claim be allowed at the Class 15

5  amount.

6  THE COURT:  Now, have I covered everyone?

7  MR. WILLEMS:  You've covered everyone that has not

8  responded and the -- and Ms. Bolton and Ms. Crews, which

9  leaves the folks who have signed stipulations obviously and

10  those who have asked for motions for reconsideration to be

11  taken up by the Court.

12  THE COURT:  Now, the --

13  MR. WILLEMS:  I think we have completed the list.

14  THE COURT:  With respect to the persons -- claimants

15  who have signed stipulations, there's been an order entered

16  by the Court on all of those, as I recall; correct?

17  MR. WILLEMS:  That's correct, yes.

18  THE COURT:  Yeah.  And so there's already an order

19  on file that resolves those claims and your claim objection

20  to their claim objection.  Some of those persons, not all

21  apparently but some of them, are persons who filed these -- a

22  motion for reconsideration yesterday, which we talked about

23  earlier; right?

24  MR. WILLEMS:  Yes; correct.  There's one individual

25  I should highlight, Carla Smith.  I think we footnoted this,

1    but Ms. Smith returned the stipulation. It was notarized.

2    It had her name in it, but it was not signed. We've sent it

3    back to her with a request that she execute if she intends to

4    do so. We have not heard back from her yet.

5          THE COURT: I thought -- yes, you did. At least

6    there was a stipulation with Carla Smith filed on Monday of

7    this week, the 29th. It wasn't with the batch that was filed

8    last week, but it was Docket 11496, stipulation, and then I

9    entered an order on the 29th.

10          MR. WILLEMS: Oh, you did. 11498?

11          THE COURT: 11498.

12          MR. WILLEMS: Okay. My apologies. I missed that

13    one.

14          THE COURT: So that has been covered by that order.

15          MR. WILLEMS: Okay.

16          THE COURT: Now, are there any others on the forty-

17    fourth and forty-fifth that are left?

18          MR. WILLEMS: There are none others that I'm aware

19    of. All the others have either been stricken or dealt with

20    today.

21          THE COURT: All right. Why don't we -- I want to

22    give a chance for any of these claimants whose names I've

23    just been walking through from this chart to speak if they're

24    here at the hearing and if they want to speak or be heard

25    about this. Let me start with those individuals who the city

1  agrees are the grant claimants and who the city says should

2  be allowed a claim at a reduced amount, the amounts we walked

3  through.  That would be Gueelma Brown.  Is she present?

4          MS. BROWN:  I am.

5          THE COURT:  If you want to be heard, come on up to

6  the microphone, please.  Your name for the record, please?

7          MS. BROWN:  Gueelma Brown.

8          THE COURT:  Gueelma.  Okay.  Thank you for helping

9  with that pronunciation.  Ms. Brown, what would you like to

10  say?

11          MS. BROWN:  Well, first of all, Judge, I'd like to

12  thank you for letting me speak regarding this matter.  From

13  2012 through 2016 actually I am still in a position whereby

14  the ten percent that was taken in 2012 I've also not

15  recovered from those years leading up to 2016.  I did a

16  breakout.  My annual salary during the time of the

17  implementation of the CET was $47,799.99.  At the time of the

18  CET implementation, the imposed ten-percent reduction reduced

19  my annual salary to the amount of $43,100.  From July 1,

20  2014, to June 12, 2016, my annual salary was $45,299.99.

21  Based on those reductions, the ten-percent reduction of

22  $4,780 from August 6, 2012, to June 12, 2016, is three years

23  at $4,780, which equal $14,340, and nine months at $398.33,

24  which derive $3,584.97, which totals actually $17,924.97.

25          Now, I'm wondering for that one year that the ten

1   percent was imposed if the subsequent years shouldn't also be

2   included as a factor.  That is primarily my concern at this

3   point in time.

4           THE COURT:  All right.  Now, you understand -- just

5   a question here.  You understand that the -- I assume that

6   the way the city calculated the amount that it says your

7   claim should be allowed as, the amount of $4,780, is by just

8   taking into account the ten -- the amount of the ten-percent

9   reduction just for basically the one-year period before the

10  city filed its bankruptcy case; correct?  In other words, the

11  dates we talked -- I talked about earlier that is in

12  paragraph 5 of the declaration of Ms. Guillory that I

13  referred to earlier, the calculation they did for the pre-

14  bankruptcy period, the ten-percent reduction in salary was

15  running from August 6, 2012, which the city says is the first

16  pay period after the reduction went into effect, to July 30,

17  2013, which covers the last pay period prior to the filing of

18  the city's bankruptcy, which I believe occurred on July 13,

19  2013, rounded up to the nearest dollar is what they say they

20  used to calculate in your case the $4,780 amount.  You agree

21  the city is correct with respect to that amount in terms of

22  the reduction -- your salary reduction for that period of

23  time?

24          MS. BROWN:  Yes.

25          THE COURT:  Okay.  What you're saying is you think

1  that your claim should be allowed -- the allowed amount of

2  your claim should also take into account the reductions that

3  you continued to suffer after the city filed their bankruptcy

4  case --

5        MS. BROWN:  That's correct.

6        THE COURT:  -- through 20 -- into 2016.

7        MS. BROWN:  Yes.

8        THE COURT:  All right.  Mr. Willems, I'll give you

9  an opportunity to respond to that.  I think this is an

10  argument that a number of the creditors involved in these

11  claim objections have made in various papers they have filed.

12  What do you want to say about this?

13        MR. WILLEMS:  Shall I approach, your Honor?

14        THE COURT:  Please.  You can stay there, Ms. Brown.

15        MR. WILLEMS:  Your Honor, the years -- what the city

16  basically did is calculate the liability with respect to the

17  pre-petition period, the amount of time that -- from the CET

18  imposition to the bankruptcy filing.  Any time after that

19  falls under the plan's provision for ordinary course claims;

20  in other words, as I'm sure you're aware, that that section

21  of the plan allows for any liabilities incurred by the city

22  after the petition date to be addressed in the ordinary

23  course of operations, so --

24        THE COURT:  In other words, not discharged.

25        MR. WILLEMS:  Not discharged, right, and really

 1  not -- can't be a part of a claim under this -- under the
 2  bankruptcy process, so the claimants at that point are to
 3  determine what their best course is in terms of either a
 4  claim -- you know, some other kind of claim with the city, a
 5  Department of Labor claim, whatever was appropriate, a
 6  grievance under their union contract, but this is no longer a
 7  dischargeable liability under bankruptcy.
 8          THE COURT:  So your argument is if they -- if these
 9  employees have a claim for the time period after the filing
10  of the bankruptcy when that occurred, July 2013, it's not
11  discharged by the bankruptcy case or plan, and if they have a
12  valid claim, they have a valid claim, but the place to pursue
13  that is not in the bankruptcy case or by filing a claim in
14  the bankruptcy case because claims in the bankruptcy case are
15  limited to debts that arose before the filing of the
16  bankruptcy case only.  Is that basically it?
17          MR. WILLEMS:  That's it, your Honor.
18          THE COURT:  What does the city intend to do or plan
19  to do with respect to people like Ms. Brown with respect to
20  the post-petition time period reductions that she's talking
21  about?
22          MR. WILLEMS:  Well, I don't know if I can answer
23  that globally.  There are probably a number of situations
24  where in some cases those claims are resolved by new
25  collective bargaining agreements.  In other words, the new

collective bargaining agreement may or may not include the
existing ten percent, or it may restore it.  There may be
other claims that are subject to grievances or subject to the
grievance procedure.  There may be claims that need to be
addressed administratively, as I referenced, the Department
of Labor, Wage and Hour Division -- the Michigan Department
of Labor, not the federal.  And so from what I've seen,
there's a variety of claims.  There may be venues where those
claims can be brought, but I can't speak globally as to all
of them.

THE COURT:  What about Ms. Brown here specifically?
Do you know?

MR. WILLEMS:  I think that the position the city
would take with Ms. Brown is first to determine -- and I
think she would have to determine whether or not she has a
union claim under the collective bargaining agreement, and
barring that there may be administrative remedies, but I, you
know --

THE COURT:  So grant claimants, even though their
position is funded by a grant, still may have rights under
the collective bargaining agreement?

MR. WILLEMS:  They have rights under the collective
bargaining agreement to the specific salary that's negotiated
because that's -- you know, that's a matter of collective
bargaining and any other benefits.

1          THE COURT:  Even though it's funded by a grant?

2          MR. WILLEMS:  Well, the grant only funds the salary,

3     but, yes --

4          THE COURT:  Yeah.

5          MR. WILLEMS:  -- the grant operates almost more like

6     a -- I don't want to say reimbursement because that's not

7     exactly appropriate.  Basically the grants are to pay city

8     employees -- regular city employees to work on grant

9     objectives, whatever the objective of the grant is, and HUD

10    will review the drawdowns against that award -- I mean

11    against that grant and determine whether or not the payments

12    are allowable under the terms the grant.

13         THE COURT:  All right.  Anything else you'd like to

14    say, Mr. Willems, about what Ms. Brown has argued here?

15         MR. WILLEMS:  No.  That's it, your Honor.

16         THE COURT:  Ms. Brown, back to you.  Did you want to

17    say anything further?

18         MS. BROWN:  At this point, the only thing that I'd

19    like to say further is that ten percent was taken from my

20    base salary, and I do not understand why there is a twenty-

21    five-percent offer when actually ten percent was taken from

22    my salary.  That's what I'm expecting, to be reimbursed what

23    was already taken.

24         THE COURT:  All right.  Well, thank you.  With

25    respect to that, just so -- I want everyone to be clear about

1    this, and it does -- it can be a little confusing, I think,

2    but the -- for the roughly one-year period before the city

3    filed bankruptcy, I think you and the city agree on the

4    amount of salary reduction you suffered, this ten-percent

5    reduction, that it was $4,780.  That amount then is -- the

6    city is agreeing that amount should be deemed an allowed

7    claim of yours in the bankruptcy case; in other words,

8    allowed as part of the bankruptcy case.  And what that means

9    is whatever amount your claim is allowed in, 4,780 -- you

10   know, even if it was 14,000, I think if it's up to -- what is

11   the number -- 20,000 -- it's 25,000, I think -- if the claim

12   is below that amount, which yours is, 4,780, it's treated as

13   part of what's called Class 15 of the city's plan of

14   adjustment that was confirmed.  And the treatment that was

15   proposed and confirmed for that class of claims is they would

16   be paid cash at 25 percent of the claim.  So this ten percent

17   for one year reduction you suffered, 4,780, is going to be a

18   claim allowed in that amount, but because you're in Class 15,

19   the way that claim is going to be treated is not paid in full

20   but paid at 25 percent in cash.  If you had an unsecured

21   claim that was much larger, larger than $25,000, you would be

22   in a different class, Class 14, and you wouldn't be paid in

23   cash at all.  You'd be paid in terms -- by a pro rata share

24   of certain notes that the city issued, so -- but this is --

25   this Class 15 is what you fall into at this -- under these

1   circumstances, which means whatever your allowed claim amount

2   is, you're going to -- you're entitled to 25 -- payment by

3   the city of 25 percent of that amount in cash, so I hope that

4   clarifies what the plan provides.  You know, whether, you

5   know, people are happy with that treatment or not, you know,

6   it's never fun to get paid less than everything you're owed

7   by somebody that owes you money, but that's the treatment

8   confirmed in this case for this class of claim, and so that's

9   what you're entitled to be paid.  So anything else you'd like

10   to say?

11         MS. BROWN:  No.  Thank you for hearing me, your

12   Honor.

13         THE COURT:  All right.  With respect to Ms. Brown's

14   claim, I agree with the city.  The city is correct and Ms.

15   Brown agrees that the pre-petition amount of her claim that

16   should be allowed -- and that's the amount that should be

17   allowed in the city's bankruptcy case as an allowed claim --

18   is $4,780; that that -- also that that claim is to be

19   considered a part of Class 15, the so-called convenience

20   class of claims, and paid cash at 25 percent of the amount of

21   that allowed claim as all Class 15 claims must be under the

22   confirmed plan of adjustment, so I will ask you to include

23   these things in the order I'm going to ask the city to

24   prepare with respect to the forty-fourth and forty-fifth

25   omnibus claim objections.  Ms. Brown falls in the forty-

1   fourth, and so that should be what the order reflects

2   regarding her claim.

3          With respect to such order -- by the way,

4   Mr. Willems, I'll ask you to state just so it's clear to

5   everyone, even including folks who do not have an attorney

6   representing them in the case, that this order is without

7   prejudice to any rights that any of the claimants involved

8   may have for -- based on claims that arose after the filing

9   of the city's bankruptcy case on the petition date, which I

10  think was July 13, 2013.

11         MR. WILLEMS:  Understood, your Honor.

12         THE COURT:  That would be the effect even if I

13  didn't say it, but just so everyone will be cognizant of

14  that, I want to put that in the order.  Do you have any --

15  you don't have any problem with that, do you, Mr. Willems?

16         MR. WILLEMS:  I'm sorry.

17         THE COURT:  Any question or problem with that?

18         MR. WILLEMS:  No, no.

19         THE COURT:  All right.  The reason Ms. Brown's claim

20  is not being allowed in the bankruptcy case for the salary

21  reduction for the time period after the city filed its

22  bankruptcy case, 2014 through 2016, for example, as part of

23  what she argued is her claim, is because the claims to be

24  allowed in the bankruptcy case and paid as part of the

25  bankruptcy case are limited to claims that arose before the

1   filing of the city's bankruptcy petition on July 13, 2013.

2   Any other claims -- any claims that arose after the petition

3   was filed, the bankruptcy case was filed, are not discharged

4   by the city's plan of adjustment or the bankruptcy case, and

5   creditors -- claimants are free to pursue those claims under

6   any available method of obtaining legal remedy, whether it's

7   a union grievance or a lawsuit against the city or some other

8   procedure, anything -- any other legally available method or

9   procedure for pursuing -- attempting to collect from the city

10  a claim, and those claims and rights are not discharged in

11  the bankruptcy case, but they're not to be considered a claim

12  to be allowed in the bankruptcy case and paid under the

13  confirmed plan, so I hope that clarifies matters for parties

14  who may have not fully understood those points.

15          Is Michelle Duff present, and does she want to say

16  anything?  Ms. Duff?

17          MS. DUFF:  Yes.  Hello, Judge.  My name is Michelle

18  Duff.

19          THE COURT:  Good afternoon, Ms. Duff.  What would

20  you like to say?

21          MS. DUFF:  I understand what you just explained in

22  regards to further years after 2013.  I guess I have a few

23  questions pertaining to that.  In regards to the Class 15

24  convenience claim, I have a date here where the plan was

25  effective October 22nd, 2014, so is there any way for my

1    amount to be allowed to be effective through that date?

2              THE COURT:  Actually, the effective date of the

3    confirmed plan was a bit later than what you just said.  It

4    was --

5              MS. DUFF:  It was even later?

6              THE COURT:  It was December --

7              MS. DUFF:  2014.

8              THE COURT:  It was a date in December 2014.  That is

9    the effective date of the confirmed plan, which, of course,

10   occurred 18 months or so after the case was filed by the

11   city.  The city filed the bankruptcy case July -- I keep --

12   13th, I believe it was, 2013.

13             MR. WILLEMS:  I think it was the 13th.

14             THE COURT:  Yeah.  In any event, back in July of

15   2013.  The dividing line for claims, whether it's a claim

16   considered a pre-petition claim that can be allowed and

17   treated in the bankruptcy case and a post-petition claim

18   which cannot, is the bankruptcy petition date, so here that's

19   July 13, 2013.  To be part of an allowed claim in the

20   bankruptcy case and paid according to the plan, the claim has

21   to have arisen before the filing of the bankruptcy petition

22   in July of 2013, not at a later date such as before the

23   effective date of the confirmed plan.  I hope that answers

24   your question.

25             MS. DUFF:  Yes.  And second question, if it is known

1   that I was paid through the grant, hundred percent grant
2   funding, then how am I even subject to the plan?  If that
3   was -- if the bankruptcy was out or through the general fund
4   through the city, how am I even under that --
5           THE COURT:  If you're asking how do you even have a
6   claim against the city in the city's case -- is that what
7   you're saying?
8           MS. DUFF:  I guess I'm trying to figure out if I'm a
9   hundred percent grant funded through HUD, why am I -- why am
10  I considered under that plan?
11          THE COURT:  Well, Mr. Willems, you can respond to
12  that if you wish.
13          MR. WILLEMS:  I can try, your Honor.  The claim that
14  was filed here was a claim for a reduction in salary, so that
15  would be a liability of the city.  And the reduction was
16  imposed, and no refund was provided, so I mean I think that
17  makes a legitimate claim.  Obviously we've not challenged the
18  claim.
19          THE COURT:  No refund of the grant, you mean?
20          MR. WILLEMS:  I'm sorry.
21          THE COURT:  When you say no refund was provided, are
22  you referring to --
23          MR. WILLEMS:  No refund was provided to -- I'm
24  sorry; I'm blanking on your name --
25          MS. DUFF:  Michelle Duff.

1          MR. WILLEMS:  -- Ms. Duff.  There were a number of

2    other grant claimants who -- what the city did -- and I think

3    this was explained in our original filing on this -- they

4    would tag the grant-funded positions and either not impose

5    the ten-percent reduction or, if imposed, you know, through

6    clerical error or the machinery of the city's payroll system,

7    they would be refunded.  These grant claimants ended up in a

8    third category where the ten percent was imposed, but either

9    they were not properly tagged or -- in any case, there was no

10   refund given to them, so they have a claim that is a

11   liability that would fall under the plan.

12         THE COURT:  Is it true, though, that the grant

13   claimant employees like Ms. Duff here have a claim against

14   the city for the reduction because they were an employee of

15   the city and were paid by the city, so they have a claim

16   against the city even though the city was, in effect,

17   reimbursed for the cost of Ms. Duff's salary by a grant?

18         MR. WILLEMS:  It would be a claim against the city

19   because the city was the one who didn't fully either

20   reimburse the ten percent or -- I mean they didn't pay her

21   what she was owed at the time.

22         THE COURT:  The point is, though, isn't it, that the

23   city -- Ms. Duff has a claim against the city --

24         MR. WILLEMS:  The city, yes.

25         THE COURT:  -- in the bankruptcy case because the

 1    city was her employer who owed her salary --

 2              MR. WILLEMS:  Correct.

 3              THE COURT:  -- correct?

 4              MR. WILLEMS:  Yes.

 5              THE COURT:  And the ten-percent reduction in the

 6    employee -- city employee terms, the ten-percent reduction in

 7    salary was not intended or not supposed to be inflicted upon

 8    the grant claimants, people whose --

 9              MR. WILLEMS:  Right.

10              THE COURT:  -- for whose salary there was grant

11    funding; is that correct?

12              MR. WILLEMS:  Yes.

13              THE COURT:  So but Ms. Duff -- the short of the

14    answer to her question is Ms. Duff has a claim against the

15    city here because it was the city who paid her.  She was a

16    city employee, and the city reduced her salary by ten percent

17    when they should not have.

18              MR. WILLEMS:  That's exactly right.

19              THE COURT:  All right.  Ms. Duff, anything else

20    you'd like to say?

21              MS. DUFF:  I guess I would like to be reimbursed the

22    $4,780 in total --

23              THE COURT:  Are you referring to the amount of

24    the --

25              MS. DUFF:  -- if I'm not under --

1      THE COURT:  -- ten-percent reduction in salary that
2  you suffered during the period before the filing of the
3  bankruptcy case?

4      MS. DUFF:  Yes.

5      THE COURT:  Yeah.  That's going to be the allowed
6  amount of your claim.  You seem to agree that that is the
7  correct number.

8      MS. DUFF:  Yes.

9      THE COURT:  So that will be the allowed amount of
10 your claim, and the city proposes to allow your claim in that
11 amount, but, as I explained a minute ago, you fall within
12 Class 15, the convenience class, this claim does, so that
13 your treatment under the confirmed plan is you're going to
14 get paid 25 percent of the amount of your allowed claim in
15 cash, and that's it.  You're not getting a hundred percent of
16 what -- of your claim.  You know, really nobody did in any
17 class fully under the plan.  It's a very complex plan.
18 There's a lot of classes, but this is the treatment the
19 confirmed plan provides for your claim, so that's what you
20 get, so anything else, Ms. Duff?

21     MS. DUFF:  No.  Thank you.

22     THE COURT:  All right.  Thank you.  So add Ms.
23 Duff's claim treatment that's proposed in the city's Exhibit
24 6(a), Mr. Willems, to the order you're going to prepare.

25     MR. WILLEMS:  Will do, your Honor.

1          THE COURT:  Jacqueline Jackson, is she here?

2          MS. JACKSON:  Yes, I am.

3          THE COURT:  If you wanted to say something, come on

4     up.

5          MS. JACKSON:  Good afternoon, your Honor.  Thank you

6     for giving me the opportunity to speak.  As Ms. Brown stated

7     and also Ms. Duff stated, I am concerned about only receiving

8     25 percent of the 4,780 that I do agree with.  That is ten

9     percent of what my pay was.

10          THE COURT:  The 4,780?

11          MS. JACKSON:  Yes.

12          THE COURT:  Okay.  Go ahead.

13          MS. JACKSON:  I am requesting a hundred percent, and

14     my argument is to -- I'm not quite understanding the

15     stipulations for the Class 15 for the grant claimants.  I

16     understand it to be imposed on the people who were paid from

17     general fund, but I don't quite understand how it fits for

18     us, the grant claimants.  I heard your explanation, but I

19     still -- I need a clarification.  And after that, I'd also

20     like to know do I have any other recourse after the judgment

21     today.

22          THE COURT:  Well, by "recourse," are you talking

23     about for any post-petition time period in which you had a

24     salary reduction?  Is that what you're talking about?

25          MS. JACKSON:  No.  I'm talking about this.  If it is

1   deemed that I am to accept the reduction, can I respond to

2   that?  Can I continue to fight for it, or should I just

3   realize that this is going to be it?

4         THE COURT:  Well, Ms. Jackson, I'm not your lawyer,

5   and I can't give you legal advice.  My job is to make

6   rulings --

7         MS. JACKSON:  Okay.

8         THE COURT:  -- disputed issues that need a ruling

9   from the judge in the case, but I will say this.  The

10   confirmed plan of adjustment in this Chapter 9 bankruptcy

11   case of the City of Detroit clearly provides that a claim

12   like yours, to the extent that, you know, you're talking

13   about the $4,780, the --

14         MS. JACKSON:  Um-hmm.

15         THE COURT:  -- pre-bankruptcy petition time period

16   reduction in your salary -- ten-percent reduction in your

17   salary, is to be allowed and treated as a claim under Class

18   15 of the plan, and the treatment provided for Class 15, as

19   I've said, is the allowed amount of the claim is paid at 25

20   percent in cash, period, and that's it.  That's all you get,

21   and otherwise your claim -- again, we're talking about the

22   pre-petition claim -- is discharged in the bankruptcy case.

23   It's gone.  So that's what you get, and that's all you get,

24   and that's the end of it with respect to the pre-petition

25   claim.  Now, again, to the extent you have any claims against

1  the city that arose after the filing of the bankruptcy case

2  on July 12 --

3          MR. WILLEMS:  13.

4          THE COURT:  -- 13, 2013 -- for some reason I forget

5  the exact date.  I don't know why.  Back to my -- that arose

6  after that date, those are not covered by the plan.  You

7  don't get paid for those out of the plan, but the plan

8  doesn't discharge those either.  You can pursue those, and

9  you have whatever legal recourse you would have as if there

10  would never have been a bankruptcy with respect to those

11  claims, so, you know, that's, you know, about as clear as I

12  can make it.  So did you want to say anything else?

13          MS. JACKSON:  No, thank you, your Honor.  Thank you.

14          THE COURT:  All right.  Thank you.  Ms. Jackson's

15  claim then is to be allowed in the amount of 4,780 treated as

16  a Class 15 amount and classified as a Class 15 amount and

17  paid accordingly, so add that to the order, please,

18  Mr. Willems.

19          Ms. Patillo, Diana Patillo, are you here?

20          MS. PATILLO:  Patillo.

21          THE COURT:  I'm sorry.

22          MS. PATILLO:  Patillo.

23          THE COURT:  Patillo.  Sorry.  Did you want to say

24  anything?

25          MS. PATILLO:  No, sir.

1          THE COURT:  All right.  For the record, Ms. Patillo

2     is in the back of the courtroom not near a microphone, but I

3     asked her if she wanted to say anything, and she said no.

4     All right.  Ms. Patillo's claim then will be allowed in the

5     amount on the city's chart as a Class 15 claim, $4,780, to be

6     paid at 25 percent in cash, so add that to the order,

7     Mr. Willems.

8          MR. WILLEMS:  Yes, your Honor.

9          THE COURT:  Now, does that take care of all of the

10    claims except those of Ms. Bolton and Ms. Crews that have not

11    been resolved one way or another with respect to the forty-

12    fourth and forty-fifth claim objections?

13         MR. WILLEMS:  It does, your Honor.

14         THE COURT:  All right.  So let's talk about or give

15    an opportunity to be heard to Ms. Bolton and Ms. Crews.  Is

16    Ms. Bolton present?

17         MS. BOLTON:  Yes.

18         THE COURT:  Would you come up, please?

19         MS. BOLTON:  Good afternoon, your Honor.

20         THE COURT:  Good afternoon.  For the record, your

21    name is?

22         MS. BOLTON:  Dinah Bolton.

23         THE COURT:  All right.  Good afternoon, Ms. Bolton.

24    You filed several times written responses at different times

25    to the city's claim objections.  I think I have reviewed all

1   of those, although with the response that you filed on August

2   25th you had a pretty large volume of exhibits, which I have

3   a paper copy of, but I have not had a chance to go through

4   all of those, but I want to give you an opportunity to be

5   heard now, so what do you want to say here?

6           MS. BOLTON:  Your Honor, I just wanted to state for

7   the record that the city's information in regards to my claim

8   not being grant funded is incorrect.  I provided the Court

9   and city's counsel with documentation all the way back from

10  2007 when I first started with the city stating and showing

11  that from the personal activity reports, which are PAR forms

12  that we have to complete for our assignments, showing that my

13  job category was grant funded through CDGB funds, NSP1 and 2,

14  Section 108 loans which were all grant funded, and that I

15  should have been in the system as a grant-funded employee.

16  I'm not sure why there was an error.  I know at one point

17  there was an emergency change in the system with my

18  department, which was at that time development division, and

19  a number of those employees were changed to general fund.

20  Maybe an error was made on the city's part which has to be

21  showing that I'm general fund with the group.  The city could

22  have individually inputted me and put me in as an admin,

23  which would still have included me at the grant-funded

24  category, and I just didn't want the city to be unduly

25  enriched with a false claim, you know.  It sort of puts me at

1   a disadvantage.  The city has admitted that there is a valid

2   claim for the grant-funded employees, but because of some

3   type of clerical or technical error with the system, I'm not

4   stated as one.

5         And I also wanted to just ask about the fiscal years

6   of 2013-14 and 2014-15.  I know the Court has put on the

7   record that those years are past the bankruptcy proceeding,

8   they're past the plan, and that we may be able to have some

9   type of a grievance with that at another venture, and I was

10   just wondering with the current status of the department --

11   because of the bankruptcy, we are going under a lot of

12   restructuring where our current positions have basically been

13   I'd say dissolved, and new titles have been in place which

14   are not union positions, so basically we are no longer union

15   employees, and we have an offer with the city.  And I was

16   just wondering how will we proceed if we're no longer union

17   employees.

18         THE COURT:  Well, Ms. Bolton, the second question

19   you have raised and asked is beyond the scope of this

20   bankruptcy case and beyond the scope of my role whatsoever in

21   connection with the city and the city's business.  My role is

22   limited to being the judge -- bankruptcy judge assigned to

23   the city's Chapter 9 bankruptcy case.  It's not a matter

24   that's determined or affected by the city's bankruptcy case.

25   That is what happens with post-petition changes and claims

1  and things of those sort.  That's a matter between the city

2  and its employees, and this Court is legally not involved, so

3  I can't give you any -- I can't say anything more than that

4  about that.

5         With respect to your argument that your position

6  was, in fact, grant funded, there seems to be a dispute

7  between you and the city about that.  I want to ask -- I know

8  you did file quite a few exhibits with your -- at least one

9  of your responses, maybe several of them.  I want to ask

10  Mr. Willems and give him an opportunity to respond to what

11  you've said about that.

12         MR. WILLEMS:  Your Honor, I don't know if I can

13  offer much more than I've already said with respect to

14  Ms. Bolton.  We acknowledge that she's worked under grants;

15  that she worked under grants for fiscal years '13, '14,

16  and -- but with respect to the year in question, her

17  position -- the funds that were drawn down from the grant

18  were disallowed by the grantor, and so she was paid out of

19  the general fund, and, therefore, she's being treated as a

20  general funded employee with respect to her claim.

21         THE COURT:  Well, what's the evidence, if any, the

22  city has submitted or filed that shows that so far?  Is there

23  any?

24         MR. WILLEMS:  It's in the declaration of Ms.

25  Guillory.

1    THE COURT:  Okay.  One second.  You're referring to
2    paragraph 7 of Ms. Guillory's --

3    MR. WILLEMS:  Yeah.  I was just looking for --
4    correct, paragraph 7.

5    THE COURT:  -- declaration.  Excuse me.  You're
6    referring to paragraph 7 of Ms. Guillory's declaration,
7    right --

8    MR. WILLEMS:  Yes.

9    THE COURT:  -- where she says with respect to the
10   claims of Dinah Bolton and Stephanie Crews, our review
11   determined that the positions in which they were employed
12   during the relevant time period were not paid from grant
13   monies, and so no amount was calculated.  Upon information
14   and belief, funding for these positions was disallowed by the
15   granting federal agency, and they were paid for from the
16   city's general fund.  That's what you're relying on; right?

17   MR. WILLEMS:  It is, your Honor.

18   THE COURT:  So you don't have a -- at this point, at
19   least, a more specific response to the particulars of what
20   Ms. Bolton has just said in the hearing today.

21   MR. WILLEMS:  I do not, your Honor.

22   THE COURT:  What about the exhibits that she filed
23   with her response on August 25?  Have you or anyone from the
24   city reviewed those exhibits?

25   MR. WILLEMS:  Well, we've -- like you, we've

1  received a rather large stack three times, I think, two or

2  three times, and we -- someone has been looking through

3  those.  And at this point I'm not in a position to say that

4  those exhibits prove or disprove anything other than with

5  respect to this claim.  We do not believe that they prove

6  that her position was grant funded in 2012.  That's not

7  established.  The issue isn't whether she was doing grant

8  work.  The issue is was the grant funding for that position

9  allowed, and it was not, and, therefore, she was paid out of

10  the general fund.

11        MS. BOLTON:  If I may, your Honor --

12        THE COURT:  What records of the city are going to

13  show that, Mr. Willems?

14        MR. WILLEMS:  I believe that -- well, it would be

15  the department's records and payroll records that reflect how

16  the process of the grant review and allowance or disallowance

17  took place.  I can't tell you exactly what those documents

18  might be called, but there's a -- obviously there's a set --

19  there's a grant that provides what the objectives are.  Then

20  the city, you know, employs people to address the objectives

21  of that grant.  They are paid out of the grant.  The payments

22  are subsequently reviewed by the grantor, in this case, HUD.

23  And where there are issues they will disallow payments for

24  that work, and so at some point it was determined that the --

25  by HUD that the -- you know, the payment for these positions

1   should be disallowed, and it was, and the money was paid out

2   of the general fund.

3           THE COURT:  What department are you talking about?

4   What department was Ms. Bolton --

5           MR. WILLEMS:  This is planning and development;

6   correct.  Yes, yes.  And you were a member of SAAA at that

7   time, were you not?

8           MS. BOLTON:  No.

9           MR. WILLEMS:  No?

10          MS. BOLTON:  I was a member of APTE.

11          MR. WILLEMS:  APTE.  Okay.

12          MS. BOLTON:  Yes.

13          THE COURT:  All right.  So, Mr. Willems, how do

14  we -- how do you suggest we move the ball forward to the

15  Court getting in a position to make a ruling on this disputed

16  issue?

17          MR. WILLEMS:  Well, I can see from the Court's

18  perspective that perhaps there's an evidentiary issue.  I'd

19  be inclined to say that we can go back and see if we can

20  provide more detailed documentation.

21          THE COURT:  Well, I'd be interested in the city, of

22  course, doing that, providing that to Ms. Bolton, but if

23  we're going to have a further hearing of any kind on this

24  issue in her claim, I would want that to be filed so the

25  Court can review it, too.  You know, if there's any personal

1  information that needs to be redacted under Federal

2  Bankruptcy Rule 9037, the city, of course, would have to do

3  that in what you file, Social Security number, bank account

4  numbers, that sort of thing, but you think there is

5  additional detail and backup and documentation the city can

6  file if need be?

7        MR. WILLEMS:  I believe that there is.  We haven't

8  had an opportunity to develop that, so if the Court will give

9  us some time, we'll pursue that.

10       THE COURT:  Well, all right.  What I have in mind

11 then is this, and I think what we're going to do is this with

12 respect to Ms. Bolton's claim.  Of course, to the extent

13 Ms. Bolton -- Ms. Bolton's claim is not a claim that is

14 what's been called a grant-funded employee claim, then this

15 proposed treatment in Class 15 that's been proposed for

16 others who were grant claimants -- grant-funded claimants

17 would not apply, and then the issue would be -- with respect

18 to Ms. Bolton's claim, which is 49,000-plus dollars, then the

19 issue becomes what it is with the other employees for whom

20 I've reserved a decision -- that is, on the issue of the

21 city's argument that its imposition of the salary reduction

22 and the pay reductions under the CET was legal and permitted

23 or not.  You know, it's done by the emergency manager, the

24 issue I'm going to rule on in writing once we know about the

25 settlement of the AFSCME and other union claims, but in the

1   meantime, to the extent that Ms. Bolton does have a claim, as

2   it turns out, on a grant-funded -- as a grant-funded

3   claimant, then she's entitled to some allowed claim based on

4   that, and so this dispute needs to be moved forward so the

5   Court can decide it if the parties cannot ultimately agree on

6   it via some sort of settlement, and so to that end I want to

7   set a deadline for the city to file and serve on Ms. Bolton a

8   supplemental affidavit with documentation to show with

9   specificity -- to support with specificity the city's

10  contention that Ms. Bolton's salary was not funded by a grant

11  due to disallowance of funding by the granting federal agency

12  as that's the way it's put in Ms. Guillory's declaration.

13          MR. WILLEMS:  Understood, your Honor.

14          THE COURT:  What sort of deadline would you like me

15  to set for that to be filed and served, Mr. Willems?  How

16  much time would you like?  We're back here for another round

17  of hearings on September 28, so I'd like it before that, if

18  you could.

19          MR. WILLEMS:  Let's set that.  When would you like

20  it before the hearing?

21          THE COURT:  I'd like to adjourn this particular --

22          MR. WILLEMS:  Oh, okay.  To that date?

23          THE COURT:  -- issue to that date, so --

24          MR. WILLEMS:  Okay.  Okay.

25          THE COURT:  -- it would have to be, you know, a week

1  or more before that, so is that doable --

2          MR. WILLEMS:  We'll work with that, your Honor.

3          THE COURT:  -- or do you want a later time?  You

4  tell me.

5          MR. WILLEMS:  I'm hesitating because I know of

6  certain circumstances that make it hard for me to pin that

7  down.  Isn't there another hearing scheduled in early

8  October?

9          THE COURT:  The next one that's currently scheduled,

10  I believe, is October 19.

11          MR. WILLEMS:  Why don't we go for that?

12          THE COURT:  Well, so the deadline you want me to set

13  for you to provide -- file and serve this supplemental

14  affidavit is when?  October what?  A week before the hearing?

15          MR. WILLEMS:  A week before is fine.

16          THE COURT:  October 12?

17          MR. WILLEMS:  October 12th.

18          THE COURT:  I'll give you until then to do that, and

19  we will hold a continued hearing regarding Ms. Bolton's claim

20  and the city's objection to her claim on October 19, 2016, at

21  1:30 p.m.  Ms. Bolton, is that a date and time that you can

22  make if you need to come and want to be heard further on that

23  that day?

24          MS. BOLTON:  Yes, your Honor.

25          THE COURT:  All right.  So you'll need to be here

1    for that unless -- again, unless the city and, Ms. Bolton,

2    you have -- you reach some sort of a settlement agreeing,

3    resolving your dispute by agreement before that time. So

4    Ms. Bolton is part of the forty-fourth omnibus objection, so

5    the forty-fourth omnibus objection will be -- to the extent

6    of Ms. Bolton's -- the city's objection to Ms. Bolton's

7    claim, will be adjourned for further hearing to that date, so

8    put that in the order you're going to prepare, Mr. Willems --

9            MR. WILLEMS: Will do, your Honor.

10          THE COURT: -- provisions that I've just said

11    regarding Ms. Bolton's claim. So, Ms. Bolton and

12    Mr. Willems, that's it for today regarding Ms. Bolton's

13    claim. We're going to have these further proceedings.

14    Ms. Bolton, obviously, when you receive from the city the

15    supplemental affidavit and documentation I'm sure you'll

16    review it, and I would encourage you and the city's attorney

17    to talk with each other between now and October 19th about

18    that and about these issues and see if you can narrow your

19    dispute or resolve your dispute, and if not we'll see you

20    again on October 19th. All right.

21          MR. WILLEMS: Thank you.

22          THE COURT: Thank you. Then, Ms. Stephanie Crews,

23    are you present? Ms. Crews present? No one is coming up or

24    raising their hand, so Stephanie Crews has not appeared at

25    today's hearing. With respect to Ms. Crews, based on the

1  arguments city's counsel made earlier, the Court will deem

2  that Ms. Crews' claim is not to be considered grant funded,

3  not to be deemed grant funded, and the Court will issue a

4  written decision regarding the objection to her claim the

5  same time it does regarding the other claims on which the

6  Court has reserved decision for the claimants.  This is the

7  forty-fifth omnibus objection that she's part of.  The Court

8  will issue a written decision when and with the written

9  decision on the other creditors who are not grant funded

10  either.

11        Now, does that resolve everything for today then,

12  Mr. Willems, with respect to the forty-fourth and forty-fifth

13  omnibus claim objections?

14        MR. WILLEMS:  I believe it does, your Honor.

15        THE COURT:  All right.  So I'll ask you to prepare

16  an order that reflects the rulings and what I've ruled today

17  both procedurally and substantively about the forty-fifth and

18  forty-fourth objections.  We can put it in the same order, I

19  think, even though we have two different claim objections, so

20  go ahead and do a single order.

21        MR. WILLEMS:  Single order for --

22        THE COURT:  Yeah.

23        MR. WILLEMS:  -- Ms. Bolton, Crews, and all the

24  others?

25        THE COURT:  Yes, all the ones we've dealt with today

1  and that I've ruled on today.  Any questions about the order

2  needed for that?

3          MR. WILLEMS:  I do not have any questions at this

4  time.

5          THE COURT:  All right.  Thank you.  Then that brings

6  us then to the other matter scheduled for hearing today, and

7  that's the city's forty-seventh omnibus claim objection.  All

8  right.  Mr. Willems, what would you like to say about this?

9          MR. WILLEMS:  Your Honor, with respect to the forty-

10 seventh omnibus objection, obviously the city is asking you

11 if -- for an order granting the omnibus objection with

12 respect to all the claimants identified who did not file a

13 response.  We received five responses, and I'll identify

14 those folks.  Henry Wolf, III, Beatrice McQueen, Melinda

15 Allen, Linda Caldwell, and Agar Lawn Sprinkler Systems.  The

16 Court --

17         THE COURT:  Wait one second.  Hold on.

18         MR. WILLEMS:  Okay.

19         THE COURT:  Mr. Wolf, Ms. McQueen, and what was the

20 next one?

21         MR. WILLEMS:  Melinda Allen.

22         THE COURT:  Yes.  And the next one?

23         MR. WILLEMS:  Linda Caldwell.

24         THE COURT:  Yes.

25         MR. WILLEMS:  And Agar Lawn Sprinkler Systems, Inc.

1    THE COURT:  Okay.  Agar has been adjourned; is that

2    right?

3         MR. WILLEMS:  That's been adjourned.

4         THE COURT:  All right.  So go ahead.

5         MR. WILLEMS:  Allen and Caldwell were stricken for

6    filing deficiencies at Docket Numbers 11473 and 11490

7    respectively.  Caldwell has since filed a corrected response.

8    We asked that that be stricken as well, but the Court --

9         THE COURT:  Why?

10        MR. WILLEMS:  -- has not ruled on that.

11        THE COURT:  Why should I do that?  Just because it's

12   not timely?

13        MR. WILLEMS:  It was untimely and did not correct

14   the original deficiencies.

15        THE COURT:  Hold on.  All right.  Go ahead.  Finish

16   your summary, and then we'll come back to -- I guess we'll

17   give a chance if -- to the extent any of these creditors are

18   here, we'll give them a chance to speak, but first go on

19   through.  We've got -- are you finished talking about Ms.

20   Caldwell for the moment?

21        MR. WILLEMS:  I am.

22        THE COURT:  Go on.

23        MR. WILLEMS:  So the city filed a response to the

24   responses of Mr. Wolf and Ms. McQueen.  We filed that on

25   September 26th, Docket Number 11492.

1          THE COURT:  August 26th, yeah.  I see that.

2          MR. WILLEMS:  You're correct.  I miswrote it in my

3    notes.

4          THE COURT:  And Melinda Allen?

5          MR. WILLEMS:  August 26th.  We only filed a response

6    to Wolf and McQueen.

7          THE COURT:  Oh, I see.  Melinda Allen's was

8    stricken; is that --

9          MR. WILLEMS:  Correct.

10          THE COURT:  Yeah.  All right.  Well, with respect to

11    Linda Caldwell, let's talk about that first.  First of all,

12    is Linda Caldwell present or is anyone here on her behalf?  I

13    see nothing.  I note, Mr. Willems, that it looks like in the

14    most recent response and the original one, for that matter,

15    filed by Ms. Caldwell -- and I'm looking at the refiled

16    version.  It's Docket 11499 filed August 29th, two days ago.

17    It starts out by saying, "I believe I filed a claim with the

18    City of Detroit in error."  Do you read that response as

19    saying that -- or acknowledging that she does not have a

20    valid claim, that her proof of claim is an error and is

21    not -- and should be disallowed?

22          MR. WILLEMS:  We would certainly do that had it not

23    been stricken for deficiencies.

24          THE COURT:  But is that how you interpret that?

25          MR. WILLEMS:  Yes.

1    THE COURT:  You agree that's how the Court should

2  read that?

3    MR. WILLEMS:  I do agree and submit to the Court

4  that the Court do read it that way.

5    THE COURT:  Well, for the following reasons I'm

6  going to sustain the city's objection to the claim of Linda

7  Caldwell, first, because Ms. Caldwell's timely response to

8  the claim objection was stricken, and properly so, second,

9  because the -- both the original and the refiled response by

10 Ms. Caldwell to the claim objection, the refiled one being

11 filed two days ago at Docket 11499, even if considered timely

12 on the merits, admits, in my view, and acknowledges that she

13 does not have a valid claim against the city; that her claim

14 was filed in error in the case, in the bankruptcy case, and,

15 third, because Ms. Caldwell has failed to appear at today's

16 hearing regarding the claim objection.  For each and every of

17 those reasons and all of them, I'll sustain the city's

18 objection to the claim of Ms. Caldwell, so that's the ruling

19 with respect to her claim.  Hold on.

20    Next, is the -- let me ask, is the claimant, Melinda

21 Allen, present or is there anyone here on her behalf?  I see

22 no one.  The city's objection to the claim of Melinda Allen,

23 which is part of the forty-seventh omnibus objection, will be

24 sustained, first, because Ms. Allen's response to the claim

25 was -- objection was stricken, and properly so, and, second,

1  because Ms. Allen has failed to appear at today's hearing on
2  the claim objection.  That then -- of the responses filed to
3  this claim objection, then that leaves Mr. Wolf and Ms.
4  McQueen, so what further would you like to say about them,
5  Mr. Willems?

6          MR. WILLEMS:  Well, let me address Ms. McQueen
7  first.  Ms. McQueen also -- she filed a claim, Claim Number
8  785, asserting a claim for vacation pay that was retrieved in
9  payroll error.  The city has investigated her claim, and as
10 you -- and we submitted the affidavit of Sharon Guillory in
11 this case as well.  It's Exhibit 7 to the reply.  And that
12 includes further attachments.  Ms. McQueen, in the pursuit of
13 her claim for unpaid vacation pay, filed a claim with the
14 State of Michigan, Department of Licensing and Regulatory
15 Affairs, which the city has also investigated, and the city
16 has determined that there is, indeed, 40 hours of vacation
17 pay that she's entitled to -- and this is in Ms. Guillory's
18 affidavit and the first exhibit -- and determined that Ms.
19 McQueen is due $550.  The city is prepared to settle that
20 with Ms. McQueen on the basis of a Class 15 convenience claim
21 settlement and --

22          THE COURT:  In other words, allowance of the
23 claim --

24          MR. WILLEMS:  -- allow the $550.

25          THE COURT:  Excuse me.  Excuse me.

1    MR. WILLEMS:  I'm sorry.

2    THE COURT:  In other words, the city wants the claim

3  to be allowed as a Class 15 claim in the amount of $550, the

4  allowed amount of the claim --

5    MR. WILLEMS:  Correct.  And the city's calculation

6  on that --

7    THE COURT:  -- is that right?  Is that right?

8    MR. WILLEMS:  Oh, yes.

9    THE COURT:  Yeah.

10    MR. WILLEMS:  Correct.

11    THE COURT:  Go on.

12    MR. WILLEMS:  And so the city's proposal would be a

13  cash payment of $137.50 under treatment as a Class 15, that

14  being obviously the 25 percent of $550, and --

15    THE COURT:  One second, please.  All right.  And

16  these numbers and these arguments are spelled out in pages 3

17  to 4 of the reply that the city filed last Friday and, of

18  course, mailed to Ms. McQueen, right --

19    MR. WILLEMS:  Correct.

20    THE COURT:  -- along with the exhibits attached,

21  including the declaration of Ms. Guillory, Exhibit 7, which

22  talks about Ms. McQueen's claim; right?

23    MR. WILLEMS:  Correct.

24    THE COURT:  All right.  Is -- one moment.  Is

25  Beatrice McQueen present or is there anyone here on her

1   behalf?  Ms. McQueen, if you want to say anything, come on

2   up, please.

3           MS. MCQUEEN:  Good afternoon.

4           THE COURT:  For the record, you are?

5           MS. MCQUEEN:  Beatrice McQueen.

6           THE COURT:  All right.  Good afternoon, Ms. McQueen.

7   What would you like to say?

8           MS. MCQUEEN:  That is incorrect, your Honor.  What

9   happened is that this was before the bankruptcy that this was

10  filed.  When it occurred, we were under a new system for

11  payroll, WorkBright.  The clerk at the time that was handling

12  my payroll, she malfunctioned.  I have the e-mail

13  communications that's stating that they don't know what

14  happened.  I had this "X" amount of time, 320 hours, but

15  after they got it up, they could not recoup the 320 hours.

16  They tried to do it again manually.  I have the e-mail

17  communication.  She don't know what happened.  She don't know

18  what to do.  It was transferred to another clerk.  That

19  particular clerk, she couldn't figure it out either.  At this

20  time, it was turned over to Kathy Hayes, who was the general

21  manager.  It went to the director.  It got belligerent.  I

22  have the e-mails here where it got to the term that I filed

23  the claim.  Randall Harrison from regulations, they agree

24  that I was, indeed, allowed this amount of money.  They could

25  not figure out what happened, so that's where we are now.  It

1  was before the bankruptcy.  I've retired, and as of today I
2  still have not gotten a response.
3          THE COURT:  These e-mails you referred to, you did
4  not file these with your response to the claim objection, did
5  you?
6          MS. MCQUEEN:  No.  I have them here.
7          THE COURT:  Have you sent them -- copies of them to
8  the city's attorney to review?
9          MS. MCQUEEN:  Randall Harrison and Sharon Guillory,
10  they do have copies of everything.
11          THE COURT:  All right.  So -- all right.  Thank you.
12  Let me pause at this point and ask to hear from Mr. Willems
13  about this.  Mr. Willems, these e-mails obviously are not in
14  the record yet.  They haven't been filed yet anyway, so I
15  can't look at them and review them yet, but what -- have you
16  reviewed these e-mails that Ms. McQueen is talking about or
17  has Ms. Guillory or someone done that?
18          MR. WILLEMS:  Not having seen the e-mails, I have no
19  idea whether they were reviewed or not.  They're certainly
20  not part of the evidence that we've produced.
21          THE COURT:  So you don't know if Ms. Guillory has
22  reviewed these before she did her declaration?
23          MR. WILLEMS:  I would assume not.  We probably
24  weren't aware of them.  She probably wasn't.
25          THE COURT:  Well, so should I continue this hearing

1  on a later date and, in the meantime, have Ms. McQueen file

2  these e-mails and give you a chance -- you and Ms. Guillory

3  and anyone else at the city a chance to review them and talk

4  with her to see if this can be resolved by agreement?

5       MR. WILLEMS:  Your Honor, we'd be agreeable to

6  reviewing the e-mails and seeing if there's -- if that

7  changes the city's position in any way.  And since we have

8  something else set over to the 19th, perhaps we could do the

9  same with this one.

10      THE COURT:  Ms. McQueen, how voluminous are these e-

11 mails?  Is it a huge stack or just a little bit?  Right

12 there?

13      MR. WILLEMS:  Not including the envelope or -- oh,

14 there's also --

15      THE COURT:  Show me the pile, what it looks like,

16 just so I can get a sense here.  Are all those e-mails?

17      MS. MCQUEEN:  E-mails.

18      THE COURT:  So you would -- what we need is for you

19 to file as a supplement to your response to the claim

20 objection copies of any e-mails that you think the Court

21 ought to consider and the city ought to consider with respect

22 to the city's objection to your claim, this dispute you have

23 regarding unused vacation pay.  And I want to set a deadline

24 for you to do that, and then we'll have a further hearing on

25 October 19th at 1:30 p.m. if you and the city have not been

1  able to -- by talking further and exchanging information,

2  been able to agree on a settlement of this dispute about the

3  amount of your vacation pay that your claim should be allowed

4  in, so how soon can you get those -- can you file those,

5  Ms. McQueen?

6         MS. MCQUEEN:  Today is Wednesday.  By Monday.  I can

7  come down --

8         THE COURT:  Well, Monday is Labor Day.  It's a court

9  holiday.

10        MR. WILLEMS:  Monday is a holiday, but --

11        MS. MCQUEEN:  Okay.

12        THE COURT:  The next hearing is --

13        MS. MCQUEEN:  Next Friday.

14        THE COURT:  Our hearing is not going to be till

15 October 19, so there's no huge rush for you to do this, but

16 the sooner the better.

17        MS. MCQUEEN:  One day next week?

18        THE COURT:  I'm sorry.

19        MS. MCQUEEN:  One day next week?

20        THE COURT:  Do you want until the end of next week?

21        MS. MCQUEEN:  Yes.  That'll be fine.

22        THE COURT:  All right.  By September 9 then --

23 that's Friday of next week -- Ms. McQueen must file as a

24 supplement to her response to the city's claim objection a

25 copy of all e-mails that she contends are relevant to the

1   city's claim objection, and then we'll have a further hearing

2   on this claim objection on October 19 at 1:30 p.m.  And, of

3   course, if the city and Ms. McQueen are able to agree on a

4   settlement of this dispute before then, you can file a

5   stipulation, get an order submitted, and if that happens,

6   then there won't be any need for that further hearing, but

7   otherwise we'll have a further hearing, and I will have had a

8   chance to review the e-mails by then, but first -- the first

9   really order of business is for the city to have a chance

10  to -- their people to have a chance to review this and then

11  presumably for you and they to talk after they do that about

12  this dispute, see if you can agree on a resolution.  So

13  that's what we're doing with respect to the forty-seventh

14  omnibus objection as it concerns the objection to

15  Ms. McQueen's claim.  All right.  Thank you, Ms. McQueen.

16          MS. MCQUEEN:  Okay.  So, your Honor, I'm making

17  copies of all these and sending them to --

18          THE COURT:  You're going to file them with the

19  court.

20          MS. MCQUEEN:  Come back here?  Okay.

21          THE COURT:  File them with the clerk of the court.

22  Attach to it as the first page a document that references the

23  city's case and case number and just say that this is a

24  supplement to your response to the city's objection to your

25  claim, you know --

1          MS. MCQUEEN:  Okay.

2          THE COURT:  -- and file that.  Our clerk's office
3   will scan those papers, and an electronic copy of them will
4   be put on the court's docket.  The city will see those.
5   They'll get an electronic notice of the filing of that
6   supplement, and they'll have a chance to look at those that
7   way.

8          MS. MCQUEEN:  I understand.

9          THE COURT:  So any questions about that?

10         MS. MCQUEEN:  No.

11         THE COURT:  All right.

12         MS. MCQUEEN:  I'll have it done before the end of
13  next week.

14         THE COURT:  Thank you, Ms. McQueen.

15         MS. MCQUEEN:  Thank you.

16         THE COURT:  That brings us then to the claim of Mr.
17  Wolf.  By the way, with respect to Ms. McQueen, Mr. Willems,
18  I will ask you to include as part of the order you're going
19  to prepare regarding the forty-seventh omnibus objection what
20  I've just said and ruled about further proceedings on her
21  claim.  Just include that in the same order.  Any questions
22  about that?

23         MR. WILLEMS:  In the order regarding the forty-
24  seventh?

25         THE COURT:  Yeah.

1          MR. WILLEMS:  Yes.  Got it, yes.

2          THE COURT:  Okay.

3          MR. WILLEMS:  No questions.

4          THE COURT:  All right.  Thank you.  So now we're

5    talking about the objection to the claim of Henry Wolf, III.

6    First of all, is Mr. Wolf present?  All right, Mr. Wolf.  Why

7    don't you come on up?  You can sit at the table here, and

8    after we hear from Mr. Willems, we'll give you a chance to

9    speak.  All right.  Mr. Willems, go ahead, please.

10          MR. WILLEMS:  Your Honor, our objection to Mr.

11   Wolf's claim is essentially that it has been disposed of in

12   the ordinary course and as a result of a settlement agreement

13   between AFSCME, the union that -- of which Mr. Wolf is a

14   member, and the City of Detroit.  We've attached to our

15   pleadings at Exhibits 3 and 4 the following documents.

16          THE COURT:  This is your reply filed at Docket

17   11492?

18          MR. WILLEMS:  Yeah.  I'm sorry.  Correct.

19          THE COURT:  Exhibits 3 and 4.  Go ahead.

20          MR. WILLEMS:  Exhibit 3 is the proof of claim filed

21   by Michigan AFSCME Council 25 and its affiliate locals of the

22   City of Detroit.  This is the same proof of claim that is

23   part of the item being settled that we've talked about, and

24   attached to that addendum and a part of the claim -- and it's

25   Exhibit 2 of the addendum -- is -- and it's difficult to

1   read, but there's a long set of spreadsheets detailing a
2   number of grievances filed by the various locals, the AFSCME
3   locals, that were pending or in some state of not having been
4   resolved at the time of the bankruptcy, and all of these were
5   encompassed by the AFSCME claim that's -- 2598, I think, is
6   the number.  2958.  Sorry.  I transposed that.  At Exhibit 4
7   of our response, we have a settlement agreement between the
8   City of Detroit and AFSCME disposing of all these grievances
9   in various fashions, but the bottom line is that the same
10  claims that Mr. Wolf has made here with respect to out of
11  class pay and other issues were encompassed in grievances
12  that were pending at the time of the bankruptcy and were
13  included at the -- included in the number of grievance -- or
14  in the set of grievances that were filed as a part of the
15  proof of claim of AFSCME.  And I think that Mr. Wolf's claim
16  is at page 58, and I apologize for the quality of these
17  exhibits, but this is the quality that we had and received
18  them in.
19          THE COURT:  Exhibit 4 is four pages long.
20          MR. WILLEMS:  I'm sorry.
21          THE COURT:  Your Exhibit 4 is --
22          MR. WILLEMS:  Exhibit 4 is four pages long, but it
23  refers to and encompasses the exhibit to AFSCME's proof of
24  claim and states that the grievances that were part of that
25  have been settled in kind of an omnibus process whereby the

1  city and AFSCME basically reviewed all of these grievances

2  and determined to settle them in one fashion or another, and

3  that includes Mr. Wolf's grievances.  I can direct you more

4  specifically to the page of the settlement.  The settlement

5  agreement by its terms settled all other grievances arising

6  prior to the petition date as listed on Exhibit 2 to proof of

7  claim Number 2958 and any other versions of Exhibit 2

8  provided to the city by the union.  In other words, the --

9         THE COURT:  What are you reading?  Where in there

10  are you reading from?  The whereas provision?

11         MR. WILLEMS:  Okay.  This is the -- I'm reading from

12  Exhibit 4.

13         THE COURT:  Yes.

14         MR. WILLEMS:  And Mr. Wolf's grievances are, as I

15  said, at page 58 of the --

16         THE COURT:  No.  What were you just reading from?

17  Where in the settlement agreement were you just reading from?

18         MR. WILLEMS:  Oh, I'm sorry.  Paragraphs 3 and

19  paragraphs 4.  Paragraph 4 states the union agrees that the

20  settlement payments satisfy in full any claims or portions

21  thereof that it may have against the city with respect to the

22  grievances and that the union will not pursue claims for any

23  settled grievances in the bankruptcy case promptly and in no

24  event later than two business days, et cetera, et cetera.

25  And then it's signed by both the city and on the following

1     page by the union.  The intent of this was to take these

2     grievances and settle them -- the grievances that were part

3     of the claim and settle them directly between the union and

4     the city.  I guess the reference specifically in the third --

5     the second whereas clause states that the grievances being

6     addressed by the settlement are those listed in Attachment A

7     and all other grievances arising through the petition listed

8     on Exhibit 2 to proof of claim 2958.

9               THE COURT:  All right.  Go on.

10              MR. WILLEMS:  I'm sorry?

11              THE COURT:  Go on.  Anything else?

12              MR. WILLEMS:  Well, I mean the bottom line of the

13    argument is that the grievances are owned by the union.  The

14    union has settled the grievances, the claims and the

15    grievances.  In fact, Mr. Wolf specifically references

16    grievances in his claim.  The claim should be disallowed

17    because it has been settled between the union and the city.

18              THE COURT:  Yet Mr. Wolf is here.  All right.  Well,

19    let me give Mr. Wolf a chance to speak, and then perhaps

20    we'll come back to you on this.

21              MR. WILLEMS:  Okay.  Thank you.

22              THE COURT:  Mr. Wolf.

23              MR. WOLF:  Good afternoon, your Honor.

24              THE COURT:  Good afternoon.  What would you like to

25    say about this?

1          MR. WOLF:  Well, I've never received anything in

2    writing saying that the matter is settled between myself and

3    the city.  This is all about -- and it's in my documentation

4    that I submitted -- that I worked out of class for the City

5    of Detroit as a recreation center supervisor, and that

6    started from -- it actually started from February 11th to May

7    2013 pre the bankruptcy.  On the e-mail I submitted, which

8    was between the director at the time, Alicia Minter, to --

9    let me see -- Kathy -- one of the head payroll clerks, it

10   states, "I have several employees who should be on pre-

11   approved OOC, out of class, have been working for six months

12   or more in assignment and indicated they have not been

13   compensated," and then they state that Henry Wolf, rec

14   instructor to RCS1 -- they name several other employees, of

15   course, but they specifically in regards to me say 3-5-12 to

16   current.  And this e-mail was dated 11-8-12.  From that point

17   on, I proceeded to work out of class all the way up until my

18   retirement.  And even though my retirement date was October

19   20 of 2013, I took a couple -- used up time off before I

20   retired.  My last days were in June of 20 -- May of 2013,

21   through May.  So, as far as I know of, I -- well, not as far

22   as I know of.  I have never received any official settlement

23   in writing from the union or the City of Detroit in regards

24   to the matter, and I did -- yes, I did file a grievance.  I

25   was also encouraged to file a separate claim by my union

1  local, which is Local 836, and so --

2          THE COURT:  Well, did you review the documents that

3  were attached to and filed with the city's reply brief filed

4  last Friday, Docket 11492, that Mr. Willems just described

5  and went through?

6          MR. WOLF:  I don't think --

7          THE COURT:  He's arguing that --

8          MR. WOLF:  -- I ever received a copy of it.

9          THE COURT:  Excuse me.  He's arguing that there's a

10  written settlement agreement between the city and the union

11  that settles the grievance concerning this claim of yours.

12  You're saying you've never received anything in writing from

13  the city or the union about that --

14          MR. WOLF:  Right.

15          THE COURT:  -- right?

16          MR. WOLF: Correct.

17          THE COURT:  Except you have -- did you receive in

18  the mail the city's reply that had these exhibits?  I know

19  it's a lot of exhibits.  I assume the city --

20          MR. WOLF:  Yes.  Yes, I did receive that.  Yes.

21          THE COURT:  -- included those exhibits.  So what

22  about that?  Doesn't that indicate and show that your

23  grievance concerning your claim was settled by the union and

24  the city?  And have you talked -- since having received that,

25  did you ask the union about it?

1      MR. WOLF:  Yes, I did.  As a matter of fact, I did.

2      THE COURT:  What did they say?

3      MR. WOLF:  The local president, for lack of a better

4  way to put it, she said, "I don't know what this is about.  I

5  don't know what they're talking about," but that's -- you

6  know, maybe she was just saying that out of emotion and not,

7  you know, based upon what she -- I assumed -- not assumed but

8  she had read the document, and she said she would be

9  following up on it, but I haven't heard anything back from

10  her specifically to that regard, so --

11      THE COURT:  What about these exhibits that the city

12  filed last Friday that I just asked you about, including this

13  written settlement agreement?

14      MR. WOLF:  Okay.  Could you be -- okay.  It's

15  Exhibit --

16      THE COURT:  Well, the settlement agreement is

17  Exhibit 4.  Perhaps it might be well -- do you have a copy of

18  those exhibits with you?  Is that what you're looking at, Mr.

19  Wolf?

20      MR. WOLF:  Yes, um-hmm.

21      THE COURT:  Perhaps it might be easiest if we take a

22  minute and Mr. Willems sits down with you and just walks you

23  through these documents to show you what he thinks are the

24  documents that show -- in that large group of documents that

25  show that your grievance was settled between the city and the

1  union. That make sense?

2      MR. WOLF: Yeah, he can. I don't see it --

3      THE COURT: All right.

4      MR. WOLF: -- specifically with regard to me, but --

5      THE COURT: Mr. Willems, if Mr. Wolf does not have

6  all of these exhibits, Docket 11492, I assume you do.

7      MR. WILLEMS: I do, and I'd be happy to walk him

8  through them.

9      THE COURT: All right. Let's take a brief recess in

10  this hearing for you to do that. I'll give the parties an

11  opportunity to talk and for you to go through this with each

12  other, and then I'll come back out and we'll see where we are

13  at that point.

14      MR. WILLEMS: Okay. We'll step into one of the

15  conference rooms.

16      THE COURT: Or you can just do it in the courtroom,

17  whatever you prefer. I'm going to leave the bench now. I'll

18  be back out in -- I'll say ten minutes, but if you need a

19  little bit more time than ten minutes, just let my courtroom

20  deputy here know that, and I'll give you more time if you

21  need it, but otherwise ten minutes.

22      THE CLERK: All rise. Court is in recess.

23      (Recess at 3:43 p.m., until 4:00 p.m.)

24      THE CLERK: All rise. Court is now in session. The

25  Honorable Thomas J. Tucker is presiding. You may be seated.

1 Court recalls the case of the City of Detroit, Michigan, Case
2 Number 13-53846.
3     THE COURT:  All right.  So where are we on this
4 matter then, Mr. Willems?
5     MR. WILLEMS:  I have shown and discussed with Mr.
6 Wolf Exhibits 3 and 4, which are the ones germane to his
7 claim, Exhibit 3 being the AFSCME proof of claim with the
8 attached set of grievances, Exhibit 4 being the settlement
9 agreement between the city and AFSCME disposing of all those
10 grievances, and I've pointed out to him the page on Exhibit 3
11 where his grievances are listed as attachments to the proof
12 of claim.  And I even -- I pulled the exhibit up on my
13 computer so we could zoom in and see it more clearly than we
14 were able to on the paper and explained the process to him,
15 and I think he's indicated to me that he understands what
16 I've shown him.  And I guess I'll have to let him speak for
17 himself after that.
18     THE COURT:  So, Mr. Wolf, what do you want to say at
19 this point?
20     MR. WOLF:  I understand what he's showing me, and I
21 see the agreement.  I had never received it in the mail.
22 Attorney Willems said that I should have received it, but I'm
23 pretty sure I wouldn't have overlooked this, so, no, I didn't
24 receive it.
25     THE COURT:  You mean from the union or you mean from

1  the city just last week when they filed it here in this case?

2        MR. WOLF:  From whomever, the lawyers, the city.

3        THE COURT:  So if you're not aware that your

4  grievance was settled, I guess you're not aware of on what

5  terms was it settled, are you?

6        MR. WOLF:  Well, I am now.  I mean completely in

7  writing I see it, which I had not before.  You know, my --

8  I'm sorry.

9        THE COURT:  No.  Go ahead.  Go ahead.

10        MR. WOLF:  My instructions were this from my union

11  local president was to file a grievance with the city, which

12  I did, and to file a separate claim.  Okay.  It was never

13  really explained to me that if one was resolved, that

14  resolved both, so now I understand that.  I've seen it in

15  writing, and if that's the ruling, then that's that.

16        THE COURT:  Well, Mr. Willems, let me ask you, with

17  respect to the claim of Mr. Wolf, what do you want the Court

18  to order exactly?

19        MR. WILLEMS:  I would ask that the Court order that

20  the claim be disallowed because it was settled as part of the

21  settlement between the city and AFSCME.  In other words, the

22  claim is really -- on the one hand, it's a duplicative claim.

23  It's for the same grievances, the same amounts.  The union

24  owns the grievance process.  The union has a --

25        THE COURT:  Was this settlement part of the larger

1  settlement that we talked about at the outset of today's

2  hearing as the one --

3          MR. WILLEMS:  It's not --

4          THE COURT:  -- excuse me -- the one where you

5  were -- you're saying the city is going to file a motion to

6  approve the settlement, or is this some other settlement?

7          MR. WILLEMS:  This is a separate settlement that

8  came out of an earlier stage of the bankruptcy proceedings.

9          THE COURT:  So there's nothing contingent or

10  unfinal -- nonfinal about this settlement that we're talking

11  about now.

12          MR. WILLEMS:  Correct.

13          THE COURT:  So what was the -- what were the terms

14  on which Mr. Wolf's grievance was settled?  Do you know?

15          MR. WILLEMS:  I don't know specifically.  I know --

16  I believe what -- among the various components of the

17  settlement, there were a class of payments or a class of

18  grievants who would receive certain levels of payments.  I

19  don't know what the resolution was with respect to Mr. Wolf

20  specifically.

21          THE COURT:  And Mr. Wolf doesn't know either

22  apparently.

23          MR. WOLF:  Well, I do know some -- you know, one

24  thing that was told to me that it was explained to me by my

25  union president that all -- she said all, not individual,

1   would be settled with a figure -- a dollar amount of, I

2   think, $700, somewhere around 700-something dollars.

3           THE COURT:  Per claimant or what?

4           MR. WOLF:  She explained to me all of them across

5   the board that were filed.

6           THE COURT:  So, Mr. Wolf, in light of all of this,

7   what is your position regarding the city's objection to your

8   claim?  They want the Court to disallow your claim filed in

9   the bankruptcy case on the ground that it was settled as part

10  of the grievance settlement.

11          MR. WOLF:  Well, I mean personally I would like to

12  get some of my compensation back for the work I did.  That's

13  obviously up to the Court to decide, but this was presented

14  to me.  I thought the matter was over, but I decided to

15  pursue it because I worked long and hard for the money, and I

16  felt I deserved it.  It's undisputable that it was before the

17  bankruptcy.  It's undisputable that it occurred.  It's well

18  documented, and so that was my position, so I guess I'm a

19  lone wolf, so to speak, but that's why I decided to pursue

20  it.

21          THE COURT:  Well, Mr. Willems, it's not clear to me

22  yet how this grievance settlement can be deemed to settle the

23  claim filed individually by Mr. Wolf in the bankruptcy case.

24  That link is missing for me, at least, and perhaps you can

25  draw that link or make that link for me, but what was

1  settled, according to your papers, was a grievance between --

2  a series -- a number of grievances that the union filed, one

3  of which is a grievance the union filed on behalf of Mr.

4  Wolf.  If the union settles a grievance that they filed on

5  behalf of Mr. Wolf, does that deprive Mr. Wolf of his rights

6  to pursue the claim individually?

7           MR. WILLEMS:  Yes.

8           THE COURT:  And why --

9           MR. WILLEMS:  We would take the position that it

10  does.

11           THE COURT:  Why and how does it do that?

12           MR. WILLEMS:  Because under the state's labor laws,

13  the grievance is owned by the union, not by the individual.

14  There's one recourse that an individual -- and we've laid

15  this out, I think, in our brief.  I think it was laid out --

16  both the law and the arguments were laid out in our original

17  supplemental brief on the, I think, omnibus Number 44, but

18  the -- it comes down to basic tenets of labor law in the

19  State of Michigan and the first basic tenet under the Public

20  Employee Relations Act, which governs all public employment

21  and governs the relationship between employees and their

22  public employer and the relation between unions and the

23  public employer of the employees they represent, so the first

24  tenet is that employees have a right to bargain collectively,

25  and they have a right to join and form unions.  Once a union

1    is formed, all issues pertaining to the employment that is

2    covered are dealt with through the collective bargaining

3    process or the grievance process that's a part of that, so

4    the union becomes the exclusive representative of all of its

5    members.  The employer can only deal with the union with

6    respect to any employment issues.  Grievances are a part of

7    that.  Grievances are a dispute resolution mechanism where an

8    individual employee may have a dispute with the employer

9    about, say, being paid out of class pay as for this example.

10         THE COURT:  All right.  So tell me where this brief

11    is where you said you laid this out.

12         MR. WILLEMS:  It's the supplemental brief to the

13    forty-fourth omnibus objection.  I don't have it here, but

14    that's where we addressed that argument in part to answer

15    what we anticipated might be the Court's question on why

16    individual claimants were subject to the CET's and why those

17    claims should be disallowed if they're duplicative of union

18    claims.

19         THE COURT:  Are you referring to the reply brief

20    filed in support of your forty-fourth omnibus objections that

21    was filed June 10th?  Is that it, or is it something

22    different?

23         MR. WILLEMS:  I believe it was titled "Supplemental

24    Brief."

25         THE COURT:  All right.  Hold on.

1       MR. WILLEMS:  Now, maybe it was "Supplemental

2  Reply."

3       THE COURT:  Wait, wait, wait, wait, wait.  Hold on.

4  Okay.  The reply brief at Docket 11272 filed June 10 in

5  support of the forty-fourth omnibus discusses Mr. Wolf's

6  response and refers in paragraph 5 to a supplemental brief

7  that is attached as Exhibit 4 to the objection.  I think that

8  deals with the employee obligation claimants.

9       MR. WILLEMS:  That's correct.

10      THE COURT:  Is it in that brief?

11      MR. WILLEMS:  It would be a brief addressing the

12  employee obligation claimants.  I think there are several

13  arguments, including the argument as to why individual member

14  claims alleging the same claims as union claims are

15  duplicative, and, therefore, if the union claims are settled,

16  the individual claims are disposed of.

17      THE COURT:  Hold on.  All right.  This exhibit to

18  the forty-fourth omnibus objection is filed, as is the forty-

19  fourth omnibus claim objection, at Docket 11162.  Of course,

20  we just had a hearing earlier today on that claim objection,

21  but that appears to be a -- it's a copy of the supplemental

22  brief the city had filed earlier on April 21, 2016, at Docket

23  11102, it says.  I think I have that here.  Hold on.  Yeah, I

24  do.  So I'm looking at the version that was filed at Docket

25  11102.  It's entitled "City of Detroit's Supplemental Brief

1  in Support of Expungement or Disallowance of Claims of

2  Employee Obligation Claimants."  It's that brief, you think?

3          MR. WILLEMS:  I believe it's that brief.

4          THE COURT:  All right.  Hold on.

5          MR. WILLEMS:  I believe we attached some cases that

6  were unpublished, but -- so that might be a clue.  There

7  would be a case called Adair or something along that line,

8  and there's a MERC case.

9          THE COURT:  Hold on.  There's a section in that

10 brief -- and, again, this is docket 11102 as well as being --

11 a copy being attached to the fourth omnibus claim objection

12 at 11162, but in that brief at page 11 there's a caption -- a

13 section entitled, capital D, individual employee union

14 members' claims to be disallowed and expunged because they

15 are duplicative of the proofs of claim pending for AFSCME and

16 the coalition.  I'm going to take a look at that section of

17 the brief, but I'm betting that's the part you're talking

18 about --

19         MR. WILLEMS:  Yes.

20         THE COURT:  -- right?  Okay.  Hold on.

21         MR. WILLEMS:  That's the argument where we make the

22 link --

23         THE COURT:  All right.

24         MR. WILLEMS:  -- that you were looking for.

25         THE COURT:  I, of course, reviewed this before but

1  not real recently, so I'm going to take a quick another look

2  at it.  Just a second.  I've looked at -- I've reviewed these

3  pages in this brief that I just referred to.  It's pages 11,

4  12, and 13 of that brief.  It echoes at least some of what

5  you just said.  There's no case called Adair cited in that

6  part of the brief.  I don't see where you cite any authority

7  for the specific proposition that a union's settlement of a

8  grievance that was filed on behalf of an individual employee

9  also is deemed to settle any individual claim the employee

10  has basically arising out of the same conduct or transaction.

11  That's what you're arguing, I think.  I don't see any

12  statement of that or authority that you cite for that

13  proposition in here.  And, again, I don't see in here a case

14  called Adair, so --

15            MR. WILLEMS:  Well, the --

16            THE COURT:  -- anything further about this?

17            MR. WILLEMS:  Would the Court permit me to expand on

18  what I've started to say or --

19            THE COURT:  Sure, sure.

20            MR. WILLEMS:  I sort of prefaced my argument with

21  the statement that the union owns the grievance.  In other

22  words, because of the exclusive bargaining relationship

23  imbedded in the public employment laws where a union -- in

24  other words, if there's a dispute between an employee and the

25  employer about something, the employer can't negotiate or

1    settle that directly.  It has to go through the union, and

2    the union does that through the grievance procedure.  The

3    union owns the grievance procedure in the sense that it can

4    decline to file a grievance on behalf of an employee.  It can

5    decide to settle a grievance on behalf of an employee on

6    terms that it believes are the best terms.  I mean those

7    decisions are in the hands of the union.  They're not in the

8    hands of the employee.

9            THE COURT:  The union controls the employee's

10   individual claim is the subject of the grievance.  That's

11   part of what you're saying, isn't it?

12           MR. WILLEMS:  Yes, exactly.  And it can determine

13   whether or not to --

14           THE COURT:  So, if they settle it, that's binding on

15   the employee.

16           MR. WILLEMS:  Pardon me?

17           THE COURT:  So, if they settle it, that's binding on

18   the employee.

19           MR. WILLEMS:  The settlement is binding on the

20   employee.

21           THE COURT:  If the employee doesn't like it, his

22   recourse would be if he's got a claim for unfair

23   representation against the union, he could pursue that.

24           MR. WILLEMS:  He can pursue that, which involves a

25   lawsuit both -- he has to prove a couple of things.  One is

 1   he has to prove that there was a breach of the collective
 2   bargaining agreement, and, secondly, as a precondition to
 3   that kind of lawsuit, an employee has to show that attempting
 4   to sway the union to pursue the grievance or have a different
 5   settlement was fruitless; in other words, that he exhausted
 6   internal union administrative remedies and that pursuing
 7   further remedies is fruitless, so there are some
 8   preconditions.  You can't just file a lawsuit for -- on the
 9   basis of duty of fair representation if you don't meet
10   certain threshold standards, one being that there was
11   actually a violation and two being that you've exhausted
12   internal remedies and the remedies are fruitless.
13           THE COURT:  You know what?  I misspoke.  I said
14   earlier that there was no Adair case cited in this brief.
15   There is.  I'm wrong.  It's cited at page 13, at least --
16           MR. WILLEMS:  Yeah.  There's several cases cited.
17           THE COURT:  -- for the proposition -- excuse me;
18   excuse me --
19           MR. WILLEMS:  I'm sorry.
20           THE COURT:  -- for the proposition that the MERC and
21   state circuit courts have concurrent jurisdiction over fair
22   representation claims brought under the PERA.  That's the
23   proposition that case is cited for.  You think it stands for
24   something other -- or more than that?
25           MR. WILLEMS:  No.  What we attempted to do in that

1   brief is lay out the structure of public employee labor

2   relations law in the state and who has the right to -- or

3   what administrative agency administers that and all of that

4   by way of background to the central argument, which is that

5   the union owns the grievance and the grievance is settled by

6   the union.  And to the extent the union mishandles that

7   grievance, there may be a claim for that, but the -- you

8   know, the basic -- whether or not to file a grievance in the

9   first place, how to settle it, those are all determined by

10  the union.  That doesn't mean that a union doesn't consult

11  with a grievant or an employee or any of that, but they make

12  the --

13          THE COURT:  Is there --

14          MR. WILLEMS:  -- final decision.

15          THE COURT:  Excuse me.  Is there some specific

16  authority, statute or case that you can cite or -- I don't

17  see it in the section of this brief that I was just referring

18  to but that you can cite that says directly straight up that

19  when a union settles a grievance that it filed on behalf of

20  an individual employee that settlement precludes the employee

21  from pursuing the same claim against the employer that was

22  settled as part of the grievance?  That's what --

23          MR. WILLEMS:  You mean as a bankruptcy claim?

24          THE COURT:  -- the proposition you're arguing --

25  excuse me.  That's the proposition you're arguing here.  I

1  guess my question is is there some authority that you could

2  cite that actually says that clearly straight up?  I don't

3  see that proposition stated in these pages in this brief, so

4  is there some authority that says that?

5           MR. WILLEMS:  As far as a bankruptcy claim?

6           THE COURT:  Any kind of claim.  The proposition

7  you're arguing, I think, is based on state law, that when a

8  public employee union settles a grievance that it had filed

9  on behalf of an individual employee like Mr. Wolf here with

10  the employer, that settlement is binding on the individual

11  employee and precludes the individual employee from then

12  pursuing the claim in addition to whatever rights he might

13  have gotten through settlement of the grievance.  In other

14  words, the settlement of the grievance is binding on and

15  precludes the pursuit of an individual claim of the same

16  claim by the employee if the employee doesn't like the

17  grievance result, something -- that proposition or that idea.

18           MR. WILLEMS:  Well, I think the --

19           THE COURT:  That's what you're arguing here.  Is

20  there any authority that actually says that?  That's what I'm

21  asking.

22           MR. WILLEMS:  I think the cases we've cited say

23  that, and the statutes say that.  I mean --

24           THE COURT:  What?

25           MR. WILLEMS:  -- the only claim --

1          THE COURT:  Tell me.

2          MR. WILLEMS:  -- that an employee has where a union

3    had refused to take a grievance up or settles it, you know,

4    not to an employee's liking is a claim against the union for

5    duty of fair representation.

6          THE COURT:  What --

7          MR. WILLEMS:  No, there's no --

8          THE COURT:  What authority says that?

9          MR. WILLEMS:  The cases that we cited stand for

10   that.

11         THE COURT:  You got to give me a specific citation.

12         MR. WILLEMS:  Okay.  Well, I apologize.  I wasn't

13   prepared to -- you know, for that, but, the -- I'd have to

14   look back at the brief and know which cases we cited, but

15   the -- I think that there's a discussion in the brief, as I

16   recall it, on the standards for duty of fair representation.

17         THE COURT:  Would it help you if I pulled up the

18   brief on the screen?  It's three pages.

19         MR. WILLEMS:  Yeah, or you could hand it to me and

20   I'll take a look at it.

21         THE COURT:  Let's do this.  Chris, could you please

22   get printed for me -- I'll tell you what to print.  Can you

23   print from there --

24         THE CLERK:  We can, yes.

25         THE COURT:  -- or have Lisa or Sherie do it?  What I

1   need you to print is -- it's Docket 11102, and that's a City

2   of Detroit supplemental brief.  Within that document pages --

3   brief page numbers 11, 12, and 13.  Now, those are PDF pages,

4   11, 12, and 13 also in the PDF document.  That's what I need

5   printed, a copy for Mr. Willems and also a copy for Mr. Wolf

6   to have as a reference.  Did you find it?

7            THE CLERK:  I did.

8            THE COURT:  Okay.  Thank you.  Just a minute.

9   She'll bring that out, and we'll talk further about it in a

10  minute.  Hold on.  Yep.  That's it.  Thank you.  Chris here

11  will hand you each a copy of those pages from that brief that

12  I just referred to.  Mr. Willems, go ahead and take a minute

13  to look through that if you want to, and then we can -- and

14  Mr. -- also Mr. Wolf, and then we can talk further.

15           MR. WILLEMS:  The Adair case that I cited -- I don't

16  know if you have a copy.  I believe we attached a copy, but I

17  have a copy here.

18           THE COURT:  I think it's attached as Exhibit 11 to

19  that document.  I can pull it up here.  What about the Adair

20  case?

21           MR. WILLEMS:  Well, the Adair case is basically --

22  it's a duty of fair representation case, and the Court goes

23  through an analysis on page -- well, on the third page of the

24  copy.  I don't know if that's the exact -- but it cites the

25  case of Goolsby versus Detroit, which I think we also cited

1  in the brief, and --

2  THE COURT: Just a minute. I'm going to pull this

3  Adair case up. One second, please. This is Exhibit 9 at

4  Docket 11102, unpublished opinion, Michigan Court of Appeals,

5  Adair versus Utica Community Schools, that case, reported at

6  2010 Westlaw 1924868. I've got that case on my screen. What

7  about it?

8  MR. WILLEMS: Well, it cites to Goolsby versus

9  Detroit, Michigan, 651 and page number 655, 1984 Supreme

10  Court case that --

11  THE COURT: Wait a minute. Wait a minute. Goolsby?

12  MR. WILLEMS: Goolsby, G-o-o-l-s-b-y, versus

13  Detroit.

14  THE COURT: One second. I see that citation.

15  MR. WILLEMS: Okay. And it talks about the

16  standards for duty of fair representation cases, but

17  essentially what these cases stand for is the proposition

18  that if the -- okay. Let's take one step back. The

19  relationship between an employee and the employer is through

20  the collective bargaining agreement. Okay. So any claims

21  that an employee has is governed by the -- against the

22  employer is governed by the collective bargaining agreement.

23  The collective bargaining agreement is negotiated and managed

24  by the union on behalf of those employees. It's not an

25  individual agreement. It's a collective agreement governing

1  a whole group of employees, so anything that goes awry in the

2  relationship is the -- is a subject matter under collective

3  bargaining and is, therefore, the breach of a contract

4  between the union and the employer, not between -- not of a

5  contract between the employer and the individual employee, so

6  that's sort of the basic underlying principle.  So if the

7  collective bargaining agreement is breached and the union --

8  the individual employee believes that he or she has a

9  grievance -- a grievable claim because of that breach, that

10  individual employee has to exhaust the grievance procedure,

11  the contractual remedies under -- that govern his or her

12  employment, and that's the grievance procedure, and that is

13  the union decides -- has the authority to decide for that

14  employee whether or not to take a grievance and how to settle

15  it and all of that.  In that process, if there is -- if the

16  union -- if the individual employee believes that he or she

17  has been, you know, not treated fairly by the union in that

18  process under the collective bargaining agreement, then that

19  individual employee can sue the union for failure of the duty

20  of fair representation, but he can't sue -- he or she cannot

21  sue the employer individually for breach of the contract.

22  The only way that the --

23          THE COURT:  Now, what case says that?

24          MR. WILLEMS:  That's Goolsby.

25          THE COURT:  Does Goolsby say that?

1          MR. WILLEMS:  That's Goolsby and probably other
2    cases that cite to it.

3          THE COURT:  So Goolsby says that.

4          MR. WILLEMS:  It's a principle --

5          THE COURT:  Goolsby says that?

6          MR. WILLEMS:  Yeah.

7          THE COURT:  Can't sue the employer.  Individual
8    cannot sue the employer.

9          MR. WILLEMS:  The individual can only sue the union,
10   and the employer -- the question of whether or not the
11   employer breached the collective bargaining agreement is sort
12   of a -- it's a collateral issue.  I mean in order for the
13   employee to prevail ultimately against the union, the
14   employee has to demonstrate that there was, in fact, a breach
15   of the collective bargaining agreement, but it's not a suit
16   against the employer.  It's a suit against the union.
17   There's no individual claim based on a collective bargaining
18   agreement that's recognized that can be --

19         THE COURT:  Okay.  But you're saying that Goolsby
20   says that, at least; is that right?

21         MR. WILLEMS:  Goolsby is the seminal case on that
22   issue, yes.

23         THE COURT:  All right.  Hold on.  I'm going to have
24   my law clerk pull that case and bring it for me.

25         MR. WILLEMS:  Okay.

1    THE COURT:  All right.  I've sent an e-mail to my

2   law clerk.  She'll pull that case for me.  All right.  So

3   based on that then, of course, you're saying that leads to

4   the conclusion that the union's settlement of its grievance

5   that it filed on behalf of Mr. Wolf here --

6        MR. WILLEMS:  I'm sorry, your Honor.

7        THE COURT:  -- settles his claim against the city.

8   To the extent he had any claim, it was settled through that

9   settlement, and he's bound by it, and that's it --

10       MR. WILLEMS:  Correct.

11       THE COURT:  -- right?

12       MR. WILLEMS:  He's bound by it.  It's duplicative.

13       THE COURT:  All right.  Well, I'm going to review

14  the Goolsby case in a moment when it's brought out, but, in

15  the meantime, anything else you want to say, Mr. Willems?

16       MR. WILLEMS:  I'm sorry.  Me?

17       THE COURT:  Anything else you want to say about

18  this?

19       MR. WILLEMS:  I'm just taking a quick look at the

20  Adair case to see if there's anything that's helpful in the

21  discussion there.

22       THE COURT:  All right.

23       MR. WILLEMS:  It talks about the exhaustion

24  requirement, which I referenced.  In other words, if a union

25  is going to even bring a lawsuit against the union for its --

for breach of its duty of fair representation, it has to
exhaust the union's internal remedies.  In other words,
AFSCME has an internal complaint procedure.  If you don't
like the way AFSCME handled a grievance, you have an internal
complaint procedure.  You'll have to follow that before you
can even sue the union.  I mean not only is there no direct
individual lawsuit against an employer, you'll have to also
exhaust internal remedies within the union before you can
bring a lawsuit or you have to argue that these internal
remedies are fruitless, that they're somehow unfair or that,
you know, they will not permit you to obtain the relief that
you are claiming to be entitled to as an employee, so Adair
talks about that at the fifth page of the copy -- actually
starting on the fourth page.  In fact, here they cite another
seminal case, Pompey, if you look at the fourth page of the
copy, the second column, and they cite Pompey for the --
Pompey v. General Motors, 385 Michigan 537 at pages 560 to
561 saying -- and I'm reading here the quote that the Adair
court has stated from the Pompey case.  "It is well settled
as a matter of federal labor law, that an employee may not
maintain an action against his employer for alleged breach of
a collective bargaining agreement where the employee has not
first exhausted the grievance and arbitration procedures
published under the collective bargaining agreement upon
which he bases his suit.  This rule has been uniformly

1   followed by the Michigan courts."  And then it goes on to

2   talk about exceptions to the rule, the theory that "these

3   contractual remedies have been devised and are often

4   controlled by the union and the employer, they may well prove

5   unsatisfactory or unworkable to the individual grievants."

6   In that case, the employee has the option to sue the union

7   for failure to process grievances or failure to -- unfairly

8   represented in whatever capacity its duty is manifest.

9          THE COURT:  I think what you just read to me from

10  that case seemed to say -- it said the -- as you read it,

11  something to the effect that the employee cannot bring suit

12  against the employer if they haven't exhausted the union

13  process.  Does that imply that there is -- once that's done,

14  once that's been exhausted, then the employee may bring a

15  suit against the employer?

16         MR. WILLEMS:  I'm sorry.  I couldn't hear you well

17  enough, and it's not your fault.

18         THE COURT:  The quotation you just read from the

19  Pompey case --

20         MR. WILLEMS:  Got it.

21         THE COURT:  -- starts out by saying something to the

22  effect that a union -- or an employee cannot bring suit

23  against the employer where they have not exhausted the

24  internal union procedures.  Does that imply that once they

25  have exhausted the internal union procedures, the employee

1    can then sue the employer?

2              MR. WILLEMS:  No, it doesn't.

3              THE COURT:  Why not?

4              MR. WILLEMS:  Because the only remedy is a suit

5    against the union for failure to --

6              THE COURT:  I missed that if that was in your

7    quotation.  Hold on.

8              MR. WILLEMS:  If you read on in the case, what

9    they're talking about here in terms of citing Pompey is the

10   exhaustion requirement in bringing an action against the

11   union.  This is a part of the analysis that leads to the

12   exhaustion requirement against the union.

13             THE COURT:  I don't care about the exhaustion

14   requirement against the union.  That's not the issue.  The

15   issue is can the employee ever bring suit against the

16   employer on a claim that's been the subject of a union

17   grievance based on violation of a collective bargaining

18   agreement?  Your answer is no, but Pompey doesn't say that

19   exactly?

20             MR. WILLEMS:  Well, I think what we're talking about

21   here is a similar principle.  The employee has to exhaust

22   internal contractual procedures, and if he's going to bring a

23   successful claim against the employer for breach of the

24   agreement, he has to first show that he has exhausted those

25   contractual procedures or claim that they are futile.  It's

1  not the same as being able to simply directly sue the

2  employer aside from the union.

3        THE COURT:  That statement seems to imply that once

4  the employee has exhausted the internal union grievance

5  procedures, if he's not satisfied, then the employee can sue

6  the employer --

7        MR. WILLEMS:  Well --

8        THE COURT:  -- doesn't it?

9        MR. WILLEMS:  -- only if he or she establishes that

10  the procedures were inadequate, but that also -- that's a --

11  I don't -- that's a bar that I've not seen met nor have I

12  ever seen a lawsuit on that basis.

13        THE COURT:  All right.  One second.

14        MR. WILLEMS:  What --

15        THE COURT:  Hold on.  Hold on.  Hold on.  I'm

16  looking at the Goolsby case.

17        MR. WILLEMS:  Yes.

18        THE COURT:  Give me a minute.

19        MR. WILLEMS:  Yeah.

20        THE COURT:  I'm not seeing this proposition in here.

21  It's not to say it isn't in here somewhere, but this is a

22  long opinion of the Michigan Supreme Court, this Goolsby

23  case.  I'll certainly be happy to take a look at it, but I'm

24  not going to sit here and do that during this hearing

25  anymore.  It's just too long of an opinion to look at.

1           MR. WILLEMS:  I think what --

2           THE COURT:  I think the thing to do -- I'm open to

3    suggestions from the parties here, but I think the thing to

4    do is -- Mr. Willems, what you argue here may be correct, but

5    I'm not seeing any authority that actually says that at this

6    point.  Now, maybe it's there.  Maybe it's in some of --

7    somewhere in the three pages of brief that we've been talking

8    about or in these cases you've talked about, but I haven't

9    seen it yet, but, you know, I haven't had time to really look

10   at it that extensively either.  The proposition that's -- the

11   issue is is this -- you're arguing that because the union

12   filed a grievance -- settled a grievance that it had filed on

13   behalf of Mr. Wolf, which grievance included the same claims

14   that are part of his individually filed proof of claim in the

15   bankruptcy case, that settlement also settles, as a matter of

16   law, the individual claim such that Mr. Wolf cannot pursue

17   the individual claim separately, but he's only entitled to

18   whatever the settlement gives him in the settlement of the

19   grievance, and if he's not happy about that settlement, his

20   only recourse is to sue the union for breach of its duty of

21   fair representation.  If he has a valid claim on that, maybe

22   he's entitled to relief, but that's a claim against the

23   union, not a claim against the employer, so he has no right,

24   given the settlement, to sue the employer on a claim that's

25   been -- was part of a grievance that his union settled on his

1      behalf.  Is that a fair statement of your position?

2             MR. WILLEMS:  Yeah.  And I'm glad you did that

3      because that helps us refocus on what the specific issue is

4      here.  We started to go kind of afield from that.

5             THE COURT:  Yeah.  So, as I said, you may well be

6      right about that, but I'm asking for authority that supports

7      that specific proposition if you can cite any, and, you know,

8      as I said -- as I started to say, I'm open to suggestions

9      for -- other suggestions, but it seems to me the thing to do

10     at this point is for you to -- unless Mr. Wolf agrees with

11     that proposition, is for the city to have an opportunity to

12     file a brief -- supplemental brief that cites any authority

13     the city wants to cite for that proposition, and we'll set

14     this for further hearing unless the Court rules on this --

15     the merits of this claim objection sooner in writing.  The

16     further hearing would be -- well, we could make it September

17     28 or October 19, either one.  Well, we talked -- before I

18     formally order that, though, let me say, Mr. Wolf, you heard

19     me just state the proposition that the city argues.  Do you

20     agree with that or disagree with that proposition?

21            MR. WOLF:  I would have to say I disagree with it

22     only from the standpoint is that my union president told me

23     to file a separate claim.  And then the other thing is that I

24     think this is kind of somewhat uncharted territory because

25     Detroit was a part of the biggest municipal bankruptcy in

1   history as far as a U.S. city, so I don't even think, you

2   know, something like this has -- I'm not saying it's not

3   unprecedented, but, you know, it doesn't come up every day.

4           THE COURT:  Well, the issue, though -- the

5   proposition is not really one that's unique to Chapter 9

6   municipal bankruptcies.  It comes up in -- or can come up

7   entirely outside of bankruptcy, you know, basically -- or

8   anywhere anytime an employee wants to sue their union, in

9   particular, a public employee union -- I'm sorry -- their

10  employer, their public employer, based on what amounts to a

11  breach of a collective bargaining agreement in a situation

12  where the union already has filed a grievance for them and

13  settled it.  Employee is not happy.  Employee sues the city

14  or the municipality or the public entity, says thank you for

15  that settlement, but I'm entitled to more, and so I have an

16  individual claim to pursue, and I'm not barred from pursuing

17  it by that settlement.  I mean there may be lots of instances

18  where that sort of thing has occurred, and it can occur

19  entirely outside of bankruptcy.  It's really an issue of --

20  as I see it, an issue of Michigan law, which could come up in

21  the Michigan courts and may well have.  I just -- I don't

22  know.

23          Mr. Willems, did you -- unless you had any other

24  alternative suggestions, which I'd be happy to consider, I'm

25  going to take this approach that I've just described to you.

1          MR. WILLEMS:  We're agreeable to that --

2          THE COURT:  All right.

3          MR. WILLEMS:  -- of course.

4          THE COURT:  What deadline do you want for your

5     supplemental brief?

6          MR. WILLEMS:  Since we've been working with October

7     19th, let's just continue with that.

8          THE COURT:  October 19 being the further hearing on

9     this claim objection regarding Mr. Wolf's claim, is that

10    right, part of the forty -- it's the forty-seventh, but it's

11    only -- it's limited to Mr. Wolf's claim.  That's the further

12    hearing, October 19, at 1:30, so that'll be the further

13    hearing date on that.  Mr. Wolf, any reason you cannot be

14    here for that hearing on that date and time?

15         MR. WOLF:  No, your Honor.  I should be able to be

16    here.

17         THE COURT:  All right.  Now, if I do rule on this

18    issue sooner after reading the city's brief, you'll be sent a

19    copy of that ruling, and that will -- that ruling, if I do

20    rule on it in favor of the city, will result in the October

21    19 hearing being canceled as no longer necessary, but unless

22    you get that -- such a ruling or if you -- or if you settle

23    your -- this claim objection issue with the city by agreement

24    sooner than that, of course, that would settle the matter,

25    and you wouldn't need to come then either.  Otherwise you

1  need to be here, so -- all right.  So deadline for the

2  supplemental brief that you want the Court to set,

3  Mr. Willems, given the October 19 further hearing.

4           MR. WILLEMS:  Whatever pleases the Court.  One week

5  before?  Longer?

6           THE COURT:  Why don't we make it two weeks before?

7  That would be October 5.

8           MR. WILLEMS:  Okay.

9           THE COURT:  Does that work for you?

10           MR. WILLEMS:  That works.

11           THE COURT:  All right.

12           MR. WILLEMS:  Just one last comment on framing the

13  issue.  Our argument in the supplemental brief was also that

14  these are duplicative claims.  In other words, if it's been

15  settled or otherwise disposed of, this claim duplicates

16  another claim.  In other words, this is really -- these

17  individual claims are duplicative of the AFSCME master claim,

18  the omnibus claim by AFSCME.  They present the same

19  liabilities and the same recovery demands, so I just --

20           THE COURT:  Well, a duplicate claim argument would

21  certainly work if the settlement of the grievance filed on

22  Mr. Wolf's behalf resulted in full payment to him of his

23  claim because he can't have a double recovery of his claim;

24  right?  But otherwise I think this duplicate claim argument

25  that you're making in the case of Mr. Wolf -- in the case of

1  a settled grievance like in the case of Mr. Wolf really comes

2  back to the proposition that I stated as I characterized it a

3  little bit ago, doesn't it?

4  MR. WILLEMS:  Well, I think I was looking for

5  clarification on that because the duplicate claim argument

6  was made with respect to the employee obligation claimants

7  where we weren't talking about grievances or grievances

8  having been settled.  We were talking about the specific

9  results of the imposition of the CET's, and in that sense

10  those were duplicative of the union's omnibus claim.  I think

11  the same argument can be made here.  I just didn't -- I just

12  didn't want it to get --

13  THE COURT:  Maybe it can --

14  MR. WILLEMS:  -- appear that we're waiving it or

15  anything.

16  THE COURT:  You're not waiving it.

17  MR. WILLEMS:  Okay.

18  THE COURT:  You've not made either as part of this

19  claim objection, forty-seven, against Mr. Wolf's claim.  You

20  didn't argue that in your reply brief or in the original

21  claim objection.  The first argument about duplication

22  explicitly is now.  I won't deem you to have waived that, but

23  I'm not going to focus on that.  I'm not going to --

24  MR. WILLEMS:  I understand.

25  THE COURT:  I'm going to consider it in terms of the

1  proposition as I stated it, which I think is the issue.  Now,

2  did you get that?  You guys always order a transcript of

3  these hearings.  You're going to see it that way.

4       MR. WILLEMS:  Yeah.  As I understand it --

5       THE COURT:  You could listen to the audio, too, at

6  the very tail end of the hearing.

7       MR. WILLEMS:  Yeah; right.

8       THE COURT:  It'll be posted, but I'm not going to

9  restate it.  I think you get -- you understand what I'm

10  saying is the issue.  And actually I'm going to ask you to

11  put it in the order --

12       MR. WILLEMS:  Okay.

13       THE COURT:  -- the order you're going to draft

14  regarding the forty-seventh omnibus with respect to Mr.

15  Wolf's claim, the further proceedings we're doing, including

16  your supplemental brief, and say in there the issue for the

17  supplemental brief is the city to cite authority in support

18  of its argument that, and then you set out the issue in the

19  argument, so --

20       MR. WILLEMS:  Understood.

21       THE COURT:  So that then concludes the hearing today

22  on the forty-seventh omnibus claim objection; right?  We've

23  covered them all now?

24       MR. WILLEMS:  Yes, we have.

25       THE COURT:  So you're going to prepare the proposed

1  order.  And, of course -- and if I didn't say it earlier,

2  I'll say it now.  I will sustain the city's objection to all

3  the claims in the forty-seventh omnibus claim objection for

4  which no timely response to the claim objection was filed by

5  the creditor involved.  I think you asked for that at the

6  outset of the hearing.

7            MR. WILLEMS:  Yes.

8            THE COURT:  I will do that, so include, you know, in

9  the order you're going to prepare the Court sustaining the

10 objection to those claims.  And then we talked about some of

11 the other ones earlier, so I'll ask you to please prepare the

12 proposed order.  I'll waive any presentment of it.  I'll

13 review it, and we'll get that entered.  Any questions about

14 any of that, Mr. Willems?

15           MR. WILLEMS:  No questions.

16           THE COURT:  Mr. Wolf, any question about where we're

17 going with this at the moment?

18           MR. WOLF:  Yes, your Honor.  For October 19, do I

19 need to file anything or just appear?

20           THE COURT:  You may.  You may file a response to the

21 city's brief.  They'll send you -- mail you a copy of it when

22 they file it.  If you want to respond to it, you can file a

23 response.  I won't require you to do that, but you may, and

24 if you do, I'll consider it.

25           MR. WOLF:  Okay.

1        THE COURT:  But don't file it, you know, the day

2   before the hearing because I may be tied up the day before

3   the hearing and not have a chance to read it.  For me to read

4   it, file it at least a couple days before the hearing and

5   preferably sooner than that.  The city is going to file it

6   two weeks before the hearing, so you're going to have time.

7   If you want to file a written response, you know, I'd say

8   file it no later than the following week so I'll have time to

9   read it.  I want to have the ability to read it before the

10  hearing, and I'm in court most Wednesdays pretty much all

11  day, so I don't have time to read stuff that's filed at the

12  last minute.

13        MR. WOLF:  Yes, your Honor.

14        THE COURT:  So does that answer your question?

15        MR. WOLF:  Yes.

16        THE COURT:  All right.  Well, thank you both, and

17  that concludes the matters in this case for today.  Thank

18  you.

19        MR. WILLEMS:  Thank you.

20        THE CLERK:  All rise.

21      (Proceedings concluded at 4:54 p.m.)

INDEX


<u>WITNESSES:</u>

    None

<u>EXHIBITS:</u>

    None


       I certify that the foregoing is a correct transcript from the sound recording of the proceedings in the above-entitled matter.


/s/ Lois Garrett          September 19, 2016
_____     _____
Lois Garrett