UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CITY OF DETROIT'S SUPPLEMENTAL REPLY TO RESPONSE OF CLAIMANT HENRY WOLFE III TO THE CITY'S FORTY-SEVENTH OMNIBUS OBJECTIONS TO CLAIMS**

The City of Detroit ("City") hereby submits its supplemental brief as directed by this Court's Order of September 9, 2016 [Dkt No. 11536].

## I. INTRODUCTION

This matter involves proof of claim number 1821 filed by Henry Wolfe III on February 20, 2014 ("Wolfe Claim"). The Wolfe Claim asserts a claim for "payment of out of class for working as supervisor" in the amount of $36,607.50. The second page to the Wolfe Claim provides "The following claim of non-payment of Out of class pay, has also been filed by AFSCME Local 836." Wolfe Claim at 2. In fact, on February 21, 2014, Michigan AFSCME Council 25 and its affiliated Detroit locals ("AFSCME") filed claim number 2958 ("AFSCME Claim") a claim for resolution of a list of Grievances attached to the AFSCME Claim as exhibit 2, which identifies on Page 59 of 86 the grievance filed by Wolfe

and identifies the basis for claim as "Out of Class Payment" and a claim amount of $36,607.05. This is the same amount asserted in the Wolfe Claim.

As part of the mediation process in this bankruptcy matter, the City and AFSCME entered into a Settlement Agreement on December 15, 2014 ("Settlement Agreement") that settled "all other Grievances arising prior to the Petition Date as listed on Exhibit 2 to Proof of Claim Number 2958." The Settlement Agreement thus encompasses and disposes of Mr. Wolfe's duplicate claim.[1] Mr. Wolfe admits that he has been paid an amount in settlement of the grievance by the City which he has accepted, but he is apparently dissatisfied with that amount.[2]

As requested in the City's Forty-Seventh Omnibus Objection to Certain Claims [Dkt. No. 11399], Mr. Wolfe's claim should be disallowed and expunged because it is duplicative of the AFSCME Claims and has been settled and resolved pursuant to the Settlement Agreement.

At the hearing on August 31, 2016, this Court requested the City to file

---

[1] The Settlement Agreement further provided that the "City and the Union agree to . . . stipulate to the satisfaction of any proofs of claim filed in the Bankruptcy Court that are predicated on a Settled Grievance; file any related paperwork with the Bankruptcy Court regarding the satisfaction of such claims .... " *Id.*
[2] The facts and the documents referenced in the first two paragraphs of the Introduction were set out in the City's Omnibus Reply In Support Of Forty-Seventh Omnibus Objection To Certain Claims [Dkt No. 11492].

27651544.1\022765-00213

supplemental brief on the question of whether Mr. Wolfe can pursue a claim against the City notwithstanding the AFSCME Settlement. The answer to that question is, that while a public sector union employee may, under very limited circumstances, bring a breach of a collective bargaining agreement claim against an employer, Mr. Wolfe has no such claim here for several reasons: First, to bring claim against the employer for breach of contract, the employee must allege – and ultimately show - facts (1) that he has exhausted all contractual remedies, i.e., the grievance procedure, (2) that the Union breached its duty of fair representation in connection with the settlement, and (3) that the City breached the collective bargaining agreement covering his employment. Mr. Wolfe makes no such allegations and he has presented no evidence to that effect.

Second, at the time he filed his bankruptcy claim, Mr. Wolfe had only a pending grievance brought and being pursued by AFSCME and there would have been no basis for claiming a breach of the duty of fair representation. The settlement occurred during the course of the bankruptcy - some ten months after Mr. Wolfe filed his claim. Therefore, even if Mr. Wolfe could assert a breach of the duty of fair representation arising out of the grievance settlement, his cause of action did not accrue until he received notice that the settlement was reached and any claim would be a post-petition claim and not resolvable by this Court under the

27651544.1\022765-00213

Confirmed Plan of Adjustment.[3]

## II. ARGUMENT

### A. GENERAL STANDARDS FOR BREACH OF CONTRACT CLAIMS BY UNION MEMBERS

Michigan courts and the MERC have adopted the federal rule that a public employee union member may not maintain an action against the employer for breach of a collective bargaining agreement unless the employee has first exhausted all grievance and arbitration procedures under that agreement. *See, eg. Goolsby v Detroit*, 419 Mich 651, 660 n5; 358 NW2d 856 (1984); *Pompey v Gen Motors Corp*, 385 Mich 537, 560–61; 189 NW2d 243, 255–56 (1971). This tenet of federal private sector labor law was established in *Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1966); *see also, Republic Steel Corp. v. Maddox*, 379 U.S. 650, 657-658, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

Under *Vaca* and subsequent federal and Michigan case law, the exhaustion requirement might be waived if the union member pleads and can prove that the union had "breached its duty of fair representation" in its handling of the employee's grievance. *Vaca*, *supra*, 386 US at 186. To prevail on a claim of

---

[3] Mr. Wolfe was informed by the City of the settlement in April of 2015 (See Exhibit 1); the City does not know nor has Mr. Wolfe disclosed when he received notice from the union.

unfair representation, however, the union member must establish ***both a breach of the duty of fair representation and a breach of the collective bargaining agreement***. *Martin v. East Lansing School Dist.,* 193 Mich.App. 166, 180-181, 483 N.W.2d 656 (1992) *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570–571, 96 S.Ct. 1048, 1059–1060, 47 L.Ed.2d 231 (1976).

In Michigan, a public sector union member's individual claims of the breach of fair representation against the union and breach of contract claims against the employer are derived from Michigan's Public Employment Labor Relations Act, ("PERA").[4] In applying PERA to such claims, Michigan courts follow the guidance of federal courts and the National Labor Relations Board ("NLRB") interpreting the National Labor Relations Act ("NLRA") because PERA is modeled on the NLRA. *Demings v City of Ecorse*, 423 Mich 49, 53; 377 NW2d 275 (1985). *See, also, Goolsby v Detroit*, 419 Mich 651, 660 n5; 358 NW2d 856 (1984); *Detroit Housing Commission, Respondent-Appellee, v. Neil Sweat,*

---

[4] PERA, MCL 423.201 *et seq.,* governs public labor relations in Michigan. *Detroit Fire Fighters' Ass'n IAFF Local 344 v City of Detroit*, 482 Mich 18, 28; 753 NW 2d 579 (2008); *Rockwell v Bd of Ed of Sch Dist of Crestwood*, 393 Mich 616, 629; 227 NW 2d 736 (1975).

*Charging Party-Appellant*, 29 MPER ¶ 50.[5]

B. **STANDARDS FOR SHOWING BREACH OF DUTY OF FAIR REPRESENTATION**

To sustain a complaint against the union and employer, the union member must *factually* plead misconduct. *Merdler v Detroit Board of Education*, 77 Mich App 740, 746 (1977). Conclusory allegations without specifying supporting facts to show the union's lack of good faith fails to state a valid claim. *Carry v Consumers Power Co*, 64 Mich App 292, 298 (1975), citing, among other authority, *Balowski v International Union, UAW*, 372 F2d 829, 835 (CA6 1967). *Accord*, *Martin v Shiawassee Comm'rs*, 109 Mich App 32, 35 (1981); *Pearl v City of Detroit*, 126 Mich App 228, 235-238 (1983). MERC has also required that charging parties allege facts showing the breach of the union's duty rather than making simple conclusory allegations. *Wayne State University*, 1981 MERC Lab Op 368.

A breach of fair representation claim (and therefore also a claim against an employer for breach of contract) fails ***even where a union member exhausts his or***

---

[5] The MERC and the courts have concurrent jurisdiction over claims against the Union and the employer. *Demings,* supra. A union member must elect to proceed in one forum or the other, and is bound by the decision in the elected forum. *Cosgrove v Lansing Board of Education*, 164 Mich App 110, 113 (1987). *O'Keefe v Department of Social Services*, 162 Mich App 498 (1987).

27651544.1\022765-00213

*her contractual remedies and there is no evidence that the union has acted arbitrarily or discriminatorily*, see e.g. Martin v Shiawassee Co Bd of Com'rs, *supra* at 109 Mich App 35 (mere tactical errors in presenting evidence at arbitration do not amount to bad faith for purposes of establishing breach of the duty of fair representation); *Wilson v Dept of Corr, No. 229076,* 2002 WL 1065680, at *4 (Mich Ct App May 28, 2002) (Union did not act arbitrarily or perfunctorily in failing to provide arbitrator with certain evidence; mere negligence is insufficient to establish a claim for unfair representation), *citing Goolsby, supra* at 419 Mich 676 and also citing *Airline Pilots Assoc, Intern'l v O'Neill,* 499 U.S. 65, 67; 111 S Ct 1127; 113 L.Ed.2d 51 (1991) (Rejecting fair representation challenge to Union's negotiation of settlement of strike action), in which the US Supreme Court stated the standard as follows: [6]

> Congress did not intend judicial review of a union's performance to permit the court to substitute its own view of the proper bargain for that reached by the union. Rather, Congress envisioned the relationship between the courts and labor unions as similar to that between the courts and the legislature. *Any substantive examination of a union's performance, therefore, must be highly deferential,*

---

[6] Courts may also require that the union member exhaust internal union remedies before a claim for unfair representation may proceed. *Murad v Prof'l & Admin Union Local 1979*, 239 Mich App 538, 542; 609 NW2d 588, 591 (2000), citing *Clayton v. Int'l Union, UAW,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981) (internal union remedied must be exhausted where the internal procedures either grant the aggrieved employee full relief or reactivate his grievance).

*recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities. Cf. Day–Brite Lighting, Inc. v. Missouri,* 342 U.S. 421, 423, 72 S.Ct. 405, 407, 96 L.Ed. 469 (1952) (court does "not sit as a super legislature to weigh the wisdom of legislation nor to decide whether the policy which it expresses offends the public welfare"); **1136 *United States v. Carolene Products,* 304 U.S., at 154, 58 S.Ct., at 784 (where "question is at least debatable," "decision was for Congress"). *For that reason, the final product of the bargaining process may constitute evidence of a breach of duty only if it can be fairly characterized as so far outside a "wide range of reasonableness," Ford Motor Co. v. Huffman, 345 U.S., at 338, 73 S.Ct., at 686, that it is wholly "irrational" or "arbitrary."*

\* \* \*

For purposes of decision, we may assume that the Court of Appeals was correct in its conclusion that, if ALPA had simply surrendered and voluntarily terminated the strike, the striking pilots would have been entitled to reemployment in the order of seniority. Moreover, we may assume that Continental would have responded to such action by rescinding its assignment of all of the 85–5 bid positions to working pilots. After all, it did rescind about half of those assignments pursuant to the terms of the settlement. *Thus, we assume that the union made a bad settlement—one that was even worse than a unilateral termination of the strike.*

Nevertheless, the settlement was by no means irrational. *A settlement is not irrational simply because it turns out in retrospect to have been a bad settlement.* Viewed in light of the legal landscape at the time of the settlement, ALPA's decision to settle rather than give up was certainly not illogical. At the time of the settlement, Continental had notified the union that all of the 85–5 bid positions had been awarded to working pilots and was maintaining that none of the strikers had any claim on any of those jobs.

27651544.1\022765-00213

*Id*, at 499 US 79 (emphasis added).[7]

    *See also, AFSCME Council 25 Local 2394 v Sweat*, No. 323933, 2016 WL 416651, at 5 (Mich Ct App February 2, 2016), app den 883 NW2d 763 (Mich 2016) (failure to process grievance not breach of fair representation where no evidence of "fraud, bad faith, hostility, discrimination, or any of the other states of mind enumerated in *Goolsby*…") *citing Air Line Pilots,* 499 U.S. at 67, *Vaca,* 386 U.S. at 177 and *Goolsby,* 419 Mich. at 679.

    The MERC has held claimants to a similarly high standard; *see Macomb County,* 30 MPER ¶ 12, 2016 WL 4394748:

> A union's duty of fair representation is comprised of three distinct responsibilities: (1) to serve the interests of all members without hostility or discrimination toward any; (2) to exercise its discretion in complete good faith and honesty, and (3) to avoid arbitrary conduct. Vaca v Sipes, 386 US 171 (1967); Goolsby v Detroit, 419 Mich 651 (1984). *Within these boundaries, a union has considerable discretion to decide how or whether to proceed with a grievance, and must be permitted to assess each grievance with a view to its individual merit.*

---

[7] Courts have applied the contractual exhaustion requirement where a union member challenges *application* of a settlement agreement and it appears that the grievance procedure may provide a remedy for such challenge, *see, e.g. May v City of Warren*, No. 271627, 2007 WL 171990, at 3 (Mich Ct App January 23, 2007) (Plaintiff's dispute with defendant employer's interpretation of settlement agreement subject to exhaustion requirement). Similarly, courts have rejected a union member's challenge of the employer's interpretation and application of an arbitration award on grounds that these actions are distinct, though arguably arising, from the act upon which the original grievance was based, *SEIU, Local 466M v. City of Saginaw,* 263 Mich.App 656; 689 NW2d 521 (2004)

*Lowe v Hotel Employees*, 389 Mich 123 (1973); *Int ' l Alliance of Theatrical Stage Employees, Local 274*, 2001 MERC Lab Op 1. Because the union's ultimate duty is toward the membership as a whole, a union may consider such factors as the burden on the contractual machinery, the cost, and the likelihood of success in arbitration. *To this end, the union is not required to follow the dictates of any individual employee, but rather it may investigate and handle the case in the manner it determines to be best. Detroit Police Lts and Sgts*, 1993 MERC Lab Op 729 [1993 WL 13698806]. *Poor judgment, or ordinary negligence, on the union' s part, is not sufficient to support a claim of unfair representation. Goolsby* at 672; Whitten v Anchor Motor Freight, Inc, 521 F 2nd 1335 (CA 6 1975). See also *Detroit Fed of Teachers*, 21 MPER 5 (2008) (no exceptions); *Wayne Co Cmty College*, 19 MPER 25 (2006) (no exceptions); *Wayne Co Sheriff Dept* 1998 MERC Lab Op 101 (no exceptions).

* * *

*The mere fact that a member is dissatisfied with their union's efforts or ultimate decision, is insufficient to constitute a proper charge of a breach of the duty of fair representation. Eaton Rapids Ed Ass ' n*, 2001 MERC Lab Op 131 [2001 WL 36364420]; *Wayne Co DPW*, 1994 MERC Lab Op 855 [1994 WL 16839533].

*Id.* (Emphasis added);[8] s*ee also, SEIU Healthcare Michigan*, 30 MPER ¶ 17, 2016 WL 4901322 .

---

[8] The MERC further noted that a union's ultimate duty is toward its membership as a whole, and therefore has no duty to take every grievance to arbitration, nor does an individual member have the right to demand that it do so. ***A union has considerable discretion to decide how or whether to proceed with a grievance and is permitted to assess each grievance with a view to its individual merit,*** see *Lowe v Hotel Employees,* 389 Mich 123 (1973); *International Alliance of Theatrical Stage Employees, Local 274*, 2001 MERC Lab Op 1, 14 MPER ¶ 32014, 2001 WL 36364396. A union must consider the good of the general membership in processing a grievance including consideration of the likelihood of success, *Lowe, at* 146-147; *City of Detroit (Fire Dep 't),* 1997 MERC Lab Op 31, 34-35, 10 MPER ¶ 28015, 1997 WL 34820075, *Macomb County, supra.*

27651544.1\022765-00213

Under the above standards, there is no doubt that Mr. Wolfe does not presently have a sufficiently pled claim against the City in this case, and the likelihood that he could make the requisite showing against the union to sustain a breach of contract claim against the City is so unlikely as to be nil. AFSCME here has settled all the grievances set out in its proof of claim by agreeing to a mediation process under the Confirmed Plan. The same agreed-upon process was applied to all the grievances. Mr. Wolfe's grievance is one of several hundred processed to resolution under the settlement and he has not alleged that he was singled out, or that his grievance was settled in a discriminatory or arbitrary fashion.

C. **WOLFE HAD NO CLAIM FOR BREACH OF DUTY OF FAIR REPRESENTATION/BREACH OF CONTRACT AT THE TIME HE FILED HIS PROOF OF CLAIM.**

Under PERA, as under the NLRA, any charge must be filed within six months of its accrual. MCLA 423.216(a); MSA 17.455 (16)(a). This limitations period applies to duty of fair representation/breach of contract claims.[9] *Wayne*

---

[9] MERC has consistently held that the statute of limitations, contained within Section 16(a) of PERA, is jurisdictional and cannot be waived. MCL 423.216(a). *See, e.g., Detroit Public Schools*, 20 MPER ¶ 42, 2007 WL 7561967.

Page 11 of 14

27651544.1\022765-00213

13-53846-tjt    Doc 11605    Filed 10/05/16    Entered 10/05/16 15:27:42    Page 11 of 17

*County Airport Authority,* 30 MPER ¶ 11, 2016 WL 4394750.[10]

The cause of action against both the union and the employer accrues at the time the union determines not to further process a grievance. *McCreedy v UAW Local 971*, 809 F2d 1232, 1236-1237 (CA6 1987), *reh den* 818 F2d 6 (CA6 1987). Where the grievance is taken to arbitration, a cause of action alleging failure of representation in conducting the arbitration accrues when the award is entered. *See, e.g., Howell v Ford Motor Co*, 133 LRRM 2789, 2792 n.3 (ED Mich 1989) (Cohn, J)*; Huntington Woods v Wines*, 122 Mich App 650, 652 (1983) ("limitations period commences when the charging party knows or should have known of the acts constituting the alleged breach and "has good reason to believe the acts were improper or done in an improper manner."); *Detroit Federation of Teachers, Local 231*, 1989 MERC Lab Op 882, 887-888 (Claim accrues on the date the union gives notice of its decision not to proceed with the grievance); *SEIU Local 79*, 1991 MERC Lab Op 178.

---

[10] The six month statute of limits under the NLRA applies to actions in federal court. *Del Costello v International Brotherhood of Teamsters*, 462 US 151 (1983). Michigan courts similarly apply the PERA six months statute of limitations to fair representation actions against unions *and* the related breach of contract action against the employer in circuit court. *Ray v School Admin'rs Local 28*, 141 Mich App 708, 710-711 (1985); *Carlson v Board of Education*, 157 Mich App 653, 662-663 (1987). *Leider v Fitzgerald Education Association*, 167 Mich App 210, 216-217 (1988).

For purposes of this case, pursuant to Bankruptcy Code section 502(b)(1), at the time Mr. Wolfe filed his proof of claim, the grievance on which it was based was still pending and the settlement process not even begun, with finality of settlement ten months away. A claim of AFSCME's breach of duty of fair presentation, a necessary predicate for a claim against the employer, was un-matured and consequently Mr. Wolfe could not have brought a breach of contract claim against the City before MERC or in the courts. 11 U.S.C.A. §502.[11]

For purposes of determining the allowability of a claim, the debtor has available to it any defense that it could have interposed, absent bankruptcy, in a suit on the claim by the creditor. 4 Collier on Bankruptcy ¶ 502.03[2][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *see also* 11 U.S.C. § 558 ("The estate shall have the benefit of any defense available to the debtor against any entity other than the estate, including statute of limitation, statute of frauds, usury, and other personal defenses."). In Mr. Wolfe's case, the City would have had – at the time

---

[11] Bankruptcy Code section 502(b)(1) provides:
    **(b)** Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that--
        **(1)** *such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured*; (Emphasis added

Page 13 of 14

27651544.1\022765-00213

13-53846-tjt    Doc 11605    Filed 10/05/16    Entered 10/05/16 15:27:42    Page 13 of 17

his proof of claim was filed and at the present - the dispositive defense that Mr. Wolfe failed to plead and has not shown any evidence that AFSCME breached its duty in connection with his then pending grievance. The Settlement took place post-petition. He cannot now bring a breach of contract claim under his proof of claim or amend his proof of claim to incorporate a duty of fair representation/ breach of contract claim now against the City.

## CONCLUSION AND RELIEF REQUESTED

In light of the foregoing, the City of Detroit respectfully requests that this Court grant its 47th Omnibus Objection to Mr. Wolfe's proof of claim and disallow and expunge his proof of claim. Debtor City of Detroit respectfully requests that this Court enter its Order to that effect.

Respectfully submitted,

By: /s/ John H. Willems (P31861)
    Marc N. Swanson (P71149)
    Jonathan S. Green (P33140)
    MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    green@millercanfield.com
    swansonm@millercanfield.com
    Attorneys the City Of Detroit

October 5, 2016

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

Debtor.

Bankruptcy Case No. 13-53846

Judge Thomas J. Tucker

Chapter 9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 5, 2016, he caused a copy of the foregoing *CITY OF DETROIT'S S SUPPLEMENTAL REPLY TO RESPONSE OF CLAIMANT HENRY WOLFE III TO THE CITY'S FORTY-SEVENTH OMNIBUS OBJECTIONS TO CLAIMS* to be served upon the following parties, via first class mail:

Henry Wolfe III
18507 Ohio
Detroit, MI 48221

By: /s/ John H. Willems (P31861)
    Marc N. Swanson (P71149)
    Jonathan S. Green (P33140)
    MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    green@millercanfield.com
    swansonm@millercanfield.com
    Attorneys for the City Of Detroit

DATED: October 5, 2016

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re:<br><br>City of Detroit, Michigan,<br><br>Debtor. | Bankruptcy Case No. 13-53846<br>Honorable Thomas J. Tucker<br>Chapter 9 |

### CITY OF DETROIT'S S SUPPLEMENTAL REPLY TO RESPONSE OF CLAIMANT HENRY WOLFE III TO THE CITY'S FORTY-SEVENTH OMNIBUS OBJECTIONS TO CLAIMS

**EXHIBIT 1**

27383863.3\022



CITY OF DETROIT
HUMAN RESOURCES DEPARTMENT
LABOR RELATIONS DIVISION

COLEMAN A. YOUNG
MUNICIPAL CENTER
2 WOODWARD AVENUE, SUITE 332
DETROIT, MICHIGAN 48226
PHONE 313•224•3860
FAX 313•224•0738
WWW.DETROITMI.GOV

April 24, 2015

Henry Wolfe III
18507 Ohio
Detroit, Michigan 48221

*File Copy*

**Re: Bankruptcy Mediation: Out of Class Pay Grievance**

Dear Mr. Wolfe:

This communication is in response to your letter dated March 18, 2015 wherein you requested a status of your grievance. All matters resolved through the bankruptcy mediation process have been submitted to Human Resources Payroll and your grievance settlement amount will be paid on or before May 20, 2015. This date has been communicated to AFSCME Council 25 as well.

If you have any additional questions, please contact Labor Relations at 313-224-3860.

Sincerely,

Valerie A. Colbert-Osamuede, Esq.
General Manager
Labor Relations Division

cc: Mayor Mike Duggan
Denise Starr, HR Director
Michael A. Hall, LR Director