# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S OBJECTION TO THOMASENA BARGES'S MOTION SEEKING MONETARY RELIEF

The City of Detroit, Michigan ("<u>City</u>") objects to Ms. Thomesena Barge's ("<u>Ms. Barge</u>") Motion Seeking Monetary Relief ("<u>Third Motion</u>," Doc. No. 11544). In support of its Objection, the City respectfully states as follows.

## INTRODUCTION

After Ms. Barge's last appearance before the Court, the Court entered an order setting a procedure for resolving Ms. Barge's concerns. *Order Regarding "Motion [to] File a Late Claim" Filed by Thomasena Barge (Docket # 11161)* (the "<u>Claim Order</u>," Doc. No. 11392). The Claim Order required the City to arrange for the General Retirement System of the City of Detroit ("<u>GRS</u>") to provide a written explanation to Ms. Barge regarding her pension. Claim Order, ¶ 2. This, the City did, filing the GRS's letter (the "<u>GRS Letter</u>," Doc. No. 11428) with the Court and serving it on Ms. Barge.

For her part, Ms. Barge was to review the GRS Letter. *Id.*, ¶ 3. If she disagreed with the explanation it contained, she could file a motion, "alleging

specific facts" to show she is entitled to payments above and beyond the pension payments she currently receives. *Id.* Notwithstanding these directions, Ms. Barge did not allege any facts at all. Her Third Motion only states that she disagrees with the GRS Letter, and asks the Court to investigate various reports. *See generally* Third Motion. Presumably, after this, she believes the Court will find she is owed some additional amounts and ensure that she receives it.

The City believes Ms. Barge is receiving everything to which she is entitled. The Claim Order required her to do more than just say "I disagree." Ms. Barge needed to explain how much she believes she is owed and why. Because she did not, despite clear directions, her Third Motion should be denied with prejudice.

## BACKGROUND

A brief review of Ms. Barge's prior motions and court appearances follows.

On September 18, 2014, Ms. Barge filed a Motion For/To File a Late Claim ("<u>First Motion</u>," Doc. No. 7581).[1] In her First Motion, Ms. Barge asked Judge Rhodes to examine the documents she included with the First Motion, exclude her from the City's bankruptcy case, and order the City to pay her $18,823.00 by check. *Id*. The City responded on November 21 (Doc. No. 8388). Hearings were held on November 24 and December 15, 2014. After the second hearing, Ms. Barge thanked the Court and stated that she understood the status of her pension.

---

[1] The City discussed the First Motion in detail in its objection to it (Doc. No. 11197). For brevity, only a short synopsis is provided here.

Subsequently, GRS staff noticed that they had omitted certain special annuity distributions when they calculated Ms. Barge's pension. To ensure that she received the full amount to which she was entitled, GRS included a special one-time distribution of $1,800.51 in her January 1, 2015, pension check, labeling it "annuity." At the time, GRS did not explain the correction it had made, and Ms. Barge did not ask. When Ms. Barge did not receive another lump sum payment the following year, however, she contacted GRS. Dissatisfied with the response she received, she filed her second Motion For/To File a Late Claim ("Second Motion," Doc. No. 11161). The City responded (Doc. No. 11197) and the Court set the Second Motion for hearing on July 20, 2016 ("Transcript," attached as Exhibit 1.[2])

At the July 20 hearing, the Court spoke to the City and Ms. Barge at some length to understand Ms. Barge's concerns. Transcript, 3:6-15:9. Afterward, the Court concluded that it would deny the Second Motion without prejudice, but that the City or GRS should "provide Ms. Barge with a written explanation" regarding her special annuity calculation and file it with the Court. *Id.*, 17:10-21. The Court encouraged Ms. Barge to read the explanation provided and to talk with GRS if she had any remaining questions. *Id.*, 19:4-19. The Court concluded

> If, after doing that, you are -- you still believe that you're not being paid everything you're entitled to under the city's confirmed plan, you can file a new motion seeking

---

[2] Only the portion of the Transcript relevant to the Second Motion is attached.

> specific monetary relief for specific reasons for that, but the issue in this court is limited -- is going to be limited to that issue. Whether there's any additional monetary relief that -- or money and payments that you're entitled to under the city's confirmed plan of adjustment that you're not receiving that's due to you. As I have ruled today, in my view, there is nothing in the record in your motion papers or in this exhibit that you filed back in December 2014 that we've talked about which tends to show that you are not receiving everything that you're entitled to already in the form of this monthly pension benefit.

*Id.*, 19:19-20:8.

The Court solidified these instructions when it entered its Claim Order, requiring the City to file with the Court and serve on Ms. Barge a written explanation regarding the "special annuity distributions" Ms. Barge had received. Claim Order, ¶ 2. Regarding Ms. Barge's Second Motion, the Court wrote

> This Order, and the denial of the Motion as stated above, is without prejudice to the right of Thomasena Barge to file a new motion, seeking monetary relief and alleging specific facts which Ms. Barge contends show that she is entitled to one or more payments under the City's confirmed plan of adjustment above and beyond the monthly pension payment of $266.40 per month that she receives. Any such motion may not be filed, however, until after Ms. Barge has first received and reviewed the written explanation that the City is due to file no later than August 10, 2016.

*Id.*, ¶ 3.

On August 10, 2016, the City filed with the Court and served on Ms. Barge the GRS Letter. The GRS Letter explained that, in November 2013, Ms. Barge

had provided documentation to GRS which verified that she was entitled to additional service credit. GRS Letter, ¶ 2. GRS attempted to provide her the back benefits she was due, but used an improper rate of pay and thus miscalculated the amount. *Id.*, ¶¶ 2-3. On discovering the error, GRS corrected it and distributed the additional amount to Ms. Barge. *Id.*, ¶ 3. The GRS Letter emphasized that this was a one-time correction and would not recur. *Id.*, ¶ 4.

The City is not aware of any attempt by Ms. Barge to contact GRS to discuss the GRS Letter. Instead, on September 16, Ms. Barge filed the Third Motion. The entirety of her Motion is stated below.

1. I do not agree with the City of Detroit's Response to "Order Regarding 'Motion [to] File a Late Claim' Filed by Thomasena Barge (Docket # 11161)" (Docket # 111392)[3]

2. Retirement Systems City of Detroit Pension Payroll Monthly Pays 2014 States "Annuity $1800.51" under the month of January.

3. Creditor requests Judge Tucker to examine the Annuity Refund Inquiry Report for 2003; in addition to examine Retirement Systems City of Detroit Pension Payroll Monthly Pays for 2014 & 2015, 2014 1099R, and Pension Rate Schedule.

WHEREFORE, Creditor requests this Court to consider Creditor [sic] Motion and afford Creditor what further relief this Court deems equitable and just. A copy of a proposed Order is attached hereto.

---

[3] The City believes this is a reference to the GRS Letter.

Third Motion. The attached proposed order simply provides that "**IT IS ORDERED** that the motion is granted." *Id.*

## ARGUMENT

After Ms. Barge provided documentation showing that she was entitled to additional service credit, GRS erred in calculating the increase to her pension. The correction of this error led to confusion. The Court's requirement that the City or GRS provide a written explanation which Ms. Barge could review and to which she could respond thus was eminently reasonable. Having received an explanation, however, if Ms. Barge disagrees, she now must state *why* she disagrees. It no longer suffices for her to simply ask the Court to review her documents.

The Court made clear that any future motion Ms. Barge filed (*e.g.*, the Third Motion) must state how much she believes she is owed and must allege specific facts that support her belief. Transcript, 19:19-20:8; Claim Order, ¶ 3. These facts are necessary for the City, GRS, and the Court to understand what Ms. Barge wants and determine if relief is warranted. The Third Motion contains no such facts. It must be denied.

## CONCLUSION

For these reasons, Ms. Barge's Motion should be DENIED with prejudice.

October 7, 2016

Respectfully submitted,

By: /s/ Marc N. Swanson
    Jonathan S. Green (P33140)
    Marc N. Swanson (P71149)
    Ronald A. Spinner (P73198)
    MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    green@millercanfield.com
    swansonm@millercanfield.com
    spinner@millercanfield.com

        and

    Charles N. Raimi (P29746)
    Deputy Corporation Counsel
    City of Detroit Law Department
    2 Woodward Avenue, Suite 500
    Coleman A. Young Municipal Center
    Detroit, Michigan 48226
    Telephone: (313) 237-0470
    Facsimile: (313) 224-5505
    raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

**EXHIBIT 1 – July 20, 2016 Transcript Excerpt**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,       .        Docket No. 13-53846
        MICHIGAN,              .
                              .        Detroit, Michigan
                              .        July 20, 2016
                Debtor.        .        2:15 p.m.
. . . . . . . . . . . . . . . . .

            HEARING RE. MOTION TO FILE A LATE CLAIM, FILED BY
          CREDITOR THOMASENA BARGE (DOCKET #11161) AND
        DEBTOR'S FORTY-SIXTH OMNIBUS OBJECTION TO CERTAIN
          CLAIMS (NO BASIS:  EXPIRATION OF STATUTE OF
      LIMITATIONS) FILED BY DEBTOR IN POSSESSION CITY OF
            DETROIT, MICHIGAN (DOCKET #11294)
              BEFORE THE HONORABLE THOMAS J. TUCKER
            UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For City of Detroit: Miller, Canfield, Paddock & Stone
                     By:  MARC SWANSON
                     150 West Jefferson
                     Detroit, MI  48226
                     (313) 496-7591

For Respondent       Fieger, Fieger, Kenney & Harrington, PC
Shante Gowens:       By:  DAVID A. DWORETSKY
                     19390 W. Ten Mile Road
                     Southfield, MI  48075
                     (248) 355-5555

For Thomasena Barge: THOMASENA BARGE
                     In pro per
                     5226 Newport Street
                     Detroit, MI  48213

Court Recorder:      Jennifer Mahar
                     United States Bankruptcy Court
                     211 West Fort Street
                     21st Floor
                     Detroit, MI  48226-3211
                     (313) 234-0068

Transcribed By:      Lois Garrett
                     1290 West Barnes Road
                     Leslie, MI  49251
                     (517) 676-5092

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1    THE CLERK:  All rise.  Court is now in session.  The
2  Honorable Thomas J. Tucker is presiding.  You may be seated.
3  Court calls the case of the City of Detroit, Michigan, Case
4  Number 13-53846.

5    THE COURT:  All right.  Good afternoon, everyone.
6  Sorry it took a little bit longer than ten minutes to come
7  back out there on the break, but I got hung up on something,
8  so, anyway, here I am.  Let's have appearances for the record
9  first starting with counsel for the City of Detroit.

10    MR. SWANSON:  Thank you, your Honor.  Marc Swanson
11  from Miller, Canfield, Paddock & Stone on behalf of the city,
12  and with me is Rebecca Wilhelm from the City of Detroit.

13    THE COURT:  Ms. Wilhelm, is it?

14    MR. SWANSON:  Wilhelm, yes, your Honor.

15    THE COURT:  All right.  Thank you.

16    MR. DWORETSKY:  Good afternoon, your Honor.  David
17  Dworetsky.  I'm here on behalf of Shante Gowens, the
18  claimant.

19    THE COURT:  All right.  Good afternoon to everyone.
20  We have two matters scheduled for hearing today in this case,
21  of course.  One is the debtor's forty-sixth omnibus objection
22  to claims, and that will involve a hearing regarding the
23  claim of Ms. Gowens and the response filed by Ms. Gowens on
24  that.  And then we also have a hearing scheduled on a motion
25  called motion to file a late claim filed by Ms. Thomasena

1  Barge.  And, Mr. Swanson, I had in mind taking up the motion

2  filed by Ms. Barge first unless there's a particular reason

3  to do it in a different order.

4          MR. SWANSON:  No, your Honor.  That's fine with the

5  city.

6          THE COURT:  All right.  We'll call that matter then.

7  Is Ms. Barge present?

8          MS. BARGE:  Yes.

9          THE COURT:  Would you come up, Ms. Barge, please?

10         MS. BARGE:  Yes, your Honor.  Good afternoon, your

11  Honor.

12         THE COURT:  Good afternoon.  For the record, you

13  are?

14         MS. BARGE:  Thomasena Barge.

15         THE COURT:  All right.  Good afternoon, Ms. Barge.

16  As you know, the Court scheduled a hearing for today on this

17  motion that you filed on May 12, 2016, entitled "Motion to

18  File a Late Claim."  For the record, it's filed at Docket

19  Number 11161 on the court's docket in this case.  Ms. Barge,

20  I assume that you received in the mail and had a chance to

21  review the response that the City of Detroit filed to your

22  motion.  Is that correct?

23         MS. BARGE:  Yes, sir, I did.

24         THE COURT:  All right.  And after reading the city's

25  response, I'll just tell you I read your motion and your

1   exhibit.  I read the city's response and their exhibits.

2   That, of course, gave me some background on the first time, I

3   guess, for a couple hearings in which you were in court.  We

4   had a different judge assigned to the case at the time.  Of

5   course, that was Judge Rhodes.  It was before his retirement

6   back in late 2015.

7           MS. BARGE:  '14.

8           THE COURT:  2014.

9           MS. BARGE:  '14.

10          THE COURT:  Right.  So I did familiarize myself with

11  what the record in the case shows about that first sort of

12  go-round that you had and the city had on your objection or

13  motion that you filed at that time.  Of course, the latest

14  motion we're hearing today was filed May 12.  Of course, much

15  has occurred since then, including confirmation of the city's

16  plan of adjustment and the effective date of that plan of

17  adjustment.  So what do you want to say about your motion,

18  Ms. Barge?

19          MS. BARGE:  Your Honor, Judge Tucker, what I want to

20  say about my claim is when I attended -- or when I petitioned

21  the Court -- the Bankruptcy Court in 2014, it was for my

22  benefit of knowing that anything monetary that I had coming

23  from the City of Detroit as a retiree, that I would be

24  compensated for it.  I petitioned Judge Rhodes -- and I did

25  receive the letter from the attorneys out of Georgia at that

1  time -- regarding the ballot.  Now, I voted "no" on that

2  ballot to vote that I was not giving up any rights to

3  anything that I had coming from the City of Detroit.  So when

4  I attended the bankruptcy proceedings -- the last date was, I

5  think, December 17th of 2014 -- the last paragraph of this

6  letter stated about the ten-percent -- a dime on a dollar,

7  and the amount that had been listed on my ballot was $18,623,

8  so ten percent of that was roughly $1,800.  So the January

9  check of 2015 I did receive $1,800 as an annuity, and it was

10  listed an annuity on my check.  Come January of 2016, I

11  didn't get the annuity.  Now, the city explained it away as

12  to -- I don't know, but I don't accept it because if in 2015

13  I received the $1,8000, which would be roughly a dime on a

14  dollar of $18,623, then, in my estimation, that set a

15  precedence and I should be receiving my annuity of $1,800 a

16  year, so I --

17          THE COURT:  What is this dime on the dollar or ten

18  cents on the dollar reference -- where does that come from,

19  ma'am?

20          MS. BARGE:  That's this letter from Dentons.

21          THE COURT:  From what?

22          MS. BARGE:  This is the letter that I received

23  explaining under Judge Rhodes, and on the second page, the

24  third paragraph down, it specifies about the amount of the

25  claim on your ballot was 1,800 -- no -- $823.  This was just

1  an estimate, blah, blah, blah.  You may have had a claim

2  payable along with the other unsecured creditors which we

3  believe would have been payable in exchange for a value

4  estimated to be worth about ten cents on the dollar.  Instead

5  of your lifetime pension as adjusted, you might have received

6  a distribution worth only $1,882.  Now, the bankruptcy --

7          THE COURT:  Ms. Barge, you did not file that letter

8  as an attachment to your motion.  I don't think that letter

9  is in the record.  I think the first thing we need to do is

10  let you -- is have you let Mr. Swanson, who's the attorney

11  here for the city, look at that document, please.

12          MR. SWANSON:  Your Honor, I believe Ms. --

13          THE COURT:  Do you have it, Mr. Swanson?

14          MR. SWANSON:  Yes.  I believe it was filed at Docket

15  8675.  It was one of the exhibits Ms. Barge filed with the

16  Court with respect to the first motion that she filed.

17          THE COURT:  All right.  Thank you, Mr. Swanson.  So,

18  Ms. Barge, you don't need to show it to him if he's got it.

19          MS. BARGE:  All right.

20          THE COURT:  So, anyway, go on.  What did you want to

21  say?

22          MS. BARGE:  Okay.  The bottom line, your Honor, is

23  is I received on my check in January of 2015 stating annuity

24  of $1,800, and it was listed as an annuity.  Then why in 2016

25  it was done away with and explained away as some other method

1  of why I was due this extra $1,800 in 2015?  So that's why

2  I'm here is if I received an annuity stating annuity in 2015,

3  why didn't I receive it this year?  So that's why I'm here.

4         THE COURT:  Well, the city, of course, provided what

5  they view as a complete and accurate answer to that question

6  in their written response.  Did you want to say anything

7  about the city's response to this current motion of yours?

8         MS. BARGE:  I read it, and it stated that I was -- I

9  had everything that -- everything that I was entitled to,

10 that I've gotten it, but I still don't understand why would

11 they -- why would they start out setting a precedence in one

12 year after I petitioned the Court?  That's why I went to the

13 Court because I had no other recourse.  I had just come back

14 into the city.  I didn't even know I was a retiree.  I

15 couldn't get any answers.

16        THE COURT:  Ms. Barge, wait a minute.  I'm not sure

17 you answered my question.  My question is did you want to say

18 anything in response to what the city said in response to

19 your current motion about why you got this --

20        MS. BARGE:  Yes.

21        THE COURT:  -- extra $1,800 in one year and not in

22 the next?

23        MS. BARGE:  Well, in the letter from Ms. -- the lady

24 that's the head, she wanted to -- she wrote me a letter

25 explaining it because she explained it, but I still -- I

1    don't understand.  Why would it change from one year to
2    another?  Why would they change the language?  If it states
3    earnings annuity in 2015, why had it changed in 2016?  And
4    the explanation that I got from this -- I got this right
5    here.  I just -- I disagree.  I disagree with it.  Now, it
6    may come up to where, you know, I don't have anything coming.
7    That's why I'm here in the court to let the Court make a
8    decision once and for all because if I have anything coming
9    from the City of Detroit, I want it.  If I don't have
10   anything coming, you won't see me again.  But I just can't
11   understand why -- and nobody explained to me.  All I did was
12   get my check last year in 2015, and it had the annuity on it.
13   And I was waiting for the check this year, and it didn't have
14   it.  It had zero.  So that's my reason for filing the late
15   motion.
16            THE COURT:  Ms. Barge, you are receiving a pension
17   benefit from the City of --
18            MS. BARGE:  $266 and 40 --
19            THE COURT:  Excuse me.  Excuse me.  Don't interrupt
20   me when I'm talking.
21            MS. BARGE:  Excuse me, sir.
22            THE COURT:  Let me finish.
23            MS. BARGE:  Excuse me.
24            THE COURT:  Don't interrupt.  I'll start again.  You
25   are receiving a monthly annuity from -- in the form of a

1  pension benefit from the General Retirement System of the

2  City of Detroit; is that right?

3          MS. BARGE:  A pension, not an annuity.

4          THE COURT:  Pension payment.

5          MS. BARGE:  Yes, sir.

6          THE COURT:  Monthly payment; right?

7          MS. BARGE:  Yes, sir.

8          THE COURT:  Is that roughly 283 a month?

9          MS. BARGE:  No.  They dropped it when they cut the

10  benefits last March.  It's 266.40.

11          THE COURT:  Oh, I see, so -- and that's reflected in

12  the pension statement dated January 1, 2016, that you

13  attached as one of the exhibits to your current motion;

14  right?

15          MS. BARGE:  Yes, sir.

16          THE COURT:  Okay.  All right.  Just one moment.  I

17  want to -- I want to take just a minute to look at this

18  letter that you just cited in this hearing since it wasn't

19  referred to or --

20          MS. BARGE:  All right.

21          THE COURT:  -- attached to your motion.  I pulled it

22  up.  Again, for the record, it appears as one of the exhibits

23  that you filed, Ms. Barge, in this case on December 12, 2014.

24  It appears at Docket Number 8675.  Just a second.  Let me

25  take a look at this real quick.  All right.  Thank you.  I

1  have reviewed this document.  For the record, it is a -- the

2  two pages of the letter is a -- and this is Docket Number

3  8675 -- is a letter dated December 9, 2014, addressed to

4  Thomasena Barge and signed by Carole Neville from Dentons and

5  says that Ms. Neville represents the Official Committee of

6  Retirees in the case.  I have reviewed that two-page letter,

7  which I believe Ms. Barge was referring to earlier in today's

8  hearing.  Thank you for waiting while I looked at that.

9  Ms. Barge, is there anything else you'd like to say before we

10  hear from the attorney for the city on this?

11          MS. BARGE:  No, your Honor.

12          THE COURT:  All right.  Mr. Swanson.

13          MS. BARGE:  Should I take my seat now?

14          THE COURT:  You can have a seat at -- the table

15  there is fine, sure.

16          MR. SWANSON:  Good afternoon, your Honor.  Marc

17  Swanson, Miller, Canfield, Paddock & Stone, on behalf of the

18  city.  Your Honor, I'll first start with the letter, and I

19  believe Ms. Barge was referring to the second to last

20  paragraph, which provides that the amount of the claim on the

21  ballot was $18,823.  Ms. Neville goes on to say that if the

22  city had not reached an agreement to continue supporting the

23  pension plans, you may have had a claim payable along with

24  the other unsecured creditors which we believe would have

25  been payable in exchange for value estimated to be worth

1    about ten cents on the dollar.  Instead of your lifetime

2    pension as adjusted, you might have received a distribution

3    worth only $1,882.30, which is, of course, ten percent of the

4    amount of the claim.  So what Ms. Neville was saying there is

5    that if the city had not reached an agreement on pensions,

6    that pension claims would have been unsecured claims and

7    Ms. Barge would have received approximately ten cents on the

8    dollar.  It's only a coincidence here that the --

9            THE COURT:  The letter also indicates that instead

10   of that amount of being the claim, that Ms. Barge, as a GRS

11   retiree, would have -- under the plan would be entitled to

12   continuation of her monthly pension payment subject to

13   adjustment as required by the plan that's referred to in the

14   letter; right?

15           MR. SWANSON:  Yes, your Honor.

16           THE COURT:  So it would be paid on a monthly basis

17   rather than any sort of lump sum amount?

18           MR. SWANSON:  That's exactly correct, your Honor.

19           THE COURT:  Go ahead.

20           MR. SWANSON:  So as set forth in the declaration of

21   Cynthia Thomas, which was attached as Exhibit 2 to the city's

22   reply at Docket 11197, the GRS staff discovered an error with

23   respect to the calculation of Ms. Barge's pension benefits

24   and on January 1, 2015, in her pension check corrected the

25   miscalculation by adding $1,800.51, which, you know, is close

 1  to the amount stated in the letter but completely different

 2  purposes here.  So, your Honor --

 3          THE COURT:  Ms. Thomas' declaration that you're

 4  referring to there refers in paragraph 11 to -- and says,

 5  rather, that in or about February 2014 when originally

 6  calculating the amount that Ms. Barge was entitled to receive

 7  when she was put on pension payroll, GRS staff initially

 8  neglected to add special annuity distributions that Ms. Barge

 9  was entitled to receive and refers to that as the

10  miscalculation.  That amount is what was added to the January

11  1, 2015, check, pension check; right?

12          MR. SWANSON:  Yes, your Honor.

13          THE COURT:  All right.  According to Ms. Thomas'

14  declaration.

15          MR. SWANSON:  Yes.

16          THE COURT:  The declaration doesn't provide any

17  other detail about what these special annuity distributions

18  were, any more detail about that; right?

19          MR. SWANSON:  I don't know, no, your Honor.

20          THE COURT:  Now, the declaration of Ms. Thomas does

21  not add any more specifics to what these special annuity

22  distributions were --

23          MR. SWANSON:  That's correct, your Honor.

24          THE COURT:  -- or what they're based on or anything

25  like that.

1    MR. SWANSON:  That's correct, your Honor.

2    THE COURT:  Has anyone from GRS or the city at any

3  point given Ms. Barge here any sort of written detail about

4  what that was and what it was based on?  Do you know?

5    MR. SWANSON:  Your Honor, I believe, as set forth in

6  paragraphs 20, 21, that -- of the declaration that Ms. Barge

7  contacted GRS staff and Clark Hill, which served as legal

8  counsel to the GRS or which does serve as legal counsel, and

9  Clark Hill attempted to explain -- I don't know if that was

10  written or oral -- that the amount labeled "annuity" on her

11  January 1, 2015, pension check was paid to her to correct an

12  error in the calculation of her pension benefits.  So those

13  are the only explanations that I am aware of with respect to

14  Ms. Barge.

15    THE COURT:  Is GRS or the city, Ms. Thomas or anyone

16  else at GRS or the city able to provide Ms. Barge with

17  specifics in terms of what this paragraph 11 reference in Ms.

18  Thomas' declaration is referring to when it refers to special

19  annuity distributions --

20    MR. SWANSON:  Certainly, your Honor.

21    THE COURT:  -- that needed to be added to that

22  January 1, 2015, check and what they're based on?

23    MR. SWANSON:  Yes, your Honor.  We would be happy to

24  do that.

25    THE COURT:  But no one has ever done that, as far as

1  you know?

2     MR. SWANSON:  Well, your Honor, the only, I guess,

3  point there is when GRS's outside counsel explained this to

4  Ms. Barge, as set forth in paragraph 21 of the declaration, I

5  don't know if that explanation was a written explanation or a

6  verbal explanation.

7     THE COURT:  Or what the content of the explanation

8  was?

9     MR. SWANSON:  Correct.

10    THE COURT:  But the city could now or GRS, one or

11 the other, could now provide Ms. Barge a written explanation

12 of specifics of what this one-time correction of this what's

13 called a miscalculation is based on?

14    MR. SWANSON:  Your Honor, I don't personally have

15 knowledge of that, but I certainly can reach out to GRS and

16 to the city and provide Ms. Barge with an explanation of how

17 that was calculated.

18    THE COURT:  All right.  How much time -- if I were

19 to require the city or GRS to do that, who would do it, and

20 how long of a time would they want me to give them to do it?

21    MR. SWANSON:  I would consult with Clark Hill, GRS's

22 counsel, and they would be the one who would provide the

23 letter, and it would be -- I assume three weeks would be

24 sufficient.

25    THE COURT:  All right.  Mr. Swanson, what else did

1    you want to say about this motion, if anything?

2          MR. SWANSON:  Well, your Honor, on its face it's a

3    motion to file a late claim, and there are really no grounds

4    to file a proof of claim here.  Pension holders were not

5    required to file proofs of claim, and, thus, the motion is

6    moot.  And in any event, the claims bar date was a long time

7    ago, and there's been no showing of any neglect which would

8    allow Ms. Barge to file a claim at this point.  Nothing

9    further, your Honor.

10          THE COURT:  All right.  Thank you.  Ms. Barge, you

11    can come on up to the podium again if you'd like, please.

12    Ms. Barge, I'm going to rule on your motion now and explain

13    what I'm ruling and why, hopefully briefly, and so I'm going

14    to do that now.

15          Ms. Barge's motion is going to be denied without

16    prejudice, to the extent I'm going to describe, and -- but

17    with the Court requiring the city to provide -- the city or

18    GRS, one or the other, to provide a written explanation that

19    I'm going to describe to Ms. Barge within three weeks, so

20    that's sort of the bottom line which I'll provide more detail

21    about in just a minute.  And I'm going to prepare and enter a

22    written order on this, Ms. Barge, which will have the

23    specifics in it and which you will receive in the mail from

24    our clerk's office within the next few days.  And we do have

25    your correct address on file, I believe, don't we?

1    MS. BARGE:  Yes, your Honor.

2    THE COURT:  All right.  5226 Newport Street,

3  Detroit?

4    MS. BARGE:  Yes, sir, your Honor.

5    THE COURT:  All right.  The reasons for the ruling

6  are this.  Ms. Barge's motion here filed at Docket 11161 does

7  not provide any details or support that would tend to

8  demonstrate or that demonstrates that Ms. Barge is receiving

9  or has received anything less from the city or from the GRS

10  retirement system than -- anything less than what she is

11  entitled to under the city's confirmed plan of adjustment in

12  this Chapter 9 case nor does the December 9, 2014, letter to

13  Ms. Barge from Carole Neville, which is on file at Docket

14  8675 in this case, which we discussed earlier in the hearing,

15  demonstrate that Ms. Barge is receiving or has received

16  anything less than what she is -- the full amount that she is

17  entitled to under the terms of the confirmed Chapter 19 plan

18  of adjustment -- Chapter 9 plan of adjustment in this case,

19  and so the Court does not find that she is receiving anything

20  less than what she's entitled to and, therefore, that any

21  basis has been shown for the Court to order either the city

22  or the GRS retirement system to pay Ms. Barge anything more

23  or to provide Ms. Barge with anything -- any payment or

24  anything else of value in addition to the monthly pension

25  payment that she is receiving from the General Retirement

1  System of the City of Detroit, which Ms. Barge has said, and

2  as shown by the first exhibit attached to her current motion,

3  is $266.40 per month.

4       Now, I do think, however, given the history of

5  Ms. Barge's interactions with the Court and the city in this

6  case, both in 2014 and now, and given the record, including

7  the declaration of Ms. Thomas that was attached as an exhibit

8  to the city's response to Ms. Barge's motion, that the Court

9  should require the city or the GRS pension system, one or the

10  other, to provide Ms. Barge with a written explanation within

11  three weeks, so that is, therefore, no later than August 10,

12  2016, written explanation of what the special annuity

13  distributions that are referred to in paragraph 11 of the

14  declaration of Ms. Thomas that's attached to the city's

15  response, Docket 11197, were -- are and what the basis for

16  those -- the calculation of those special annuity

17  distributions was, and so I will require the city or GRS

18  pension system to provide that no later than August 10 in the

19  form of a written response to Ms. Barge.  And I will also

20  require the city to, at the same time they serve this written

21  explanation to Ms. Barge, that they file it with the court.

22       To the extent there are in the letter any matters

23  that should not be placed in the public record, such as, for

24  example, a full Social Security number of Ms. Barge or anyone

25  else, any full account numbers, any names of minor children,

1    those sorts of things, which under the federal bankruptcy

2    rules are not to be disclosed in a public filing, those items

3    should be redacted from the copy of the letter to Ms. Barge

4    that is filed with the Court, of course.

5         Now, Ms. Barge -- after Ms. Barge receives and has a

6    chance to read and digest the written explanation that she's

7    going to be receiving of this item that I've described, she

8    will be free to file any new motion that she deems

9    appropriate seeking specific monetary relief from the city or

10   the General Retirement System and that she believes she's

11   entitled to under the confirmed plan of adjustment above and

12   beyond what she is already receiving.  Any such motion,

13   however, must be supported by specific facts and specific

14   explanation of how Ms. Barge calculates that she is entitled

15   to some additional payment or payments beyond what she's

16   receiving in the form of her monthly pension payment and what

17   that is based upon.  The issue in connection with any such

18   motion, of course, will be whether there's any basis for the

19   Court to find that the city is not complying with the

20   confirmed plan of adjustment with respect to the treatment of

21   Ms. Barge's claim in the case, her pension claim in the case.

22   So the order will say -- that I'm going to prepare will say

23   that this motion -- this current motion by Ms. Barge, while

24   it is being denied except for the limited relief I'm

25   granting, that this order is without prejudice to the right

1　of Ms. Barge to file a new motion seeking monetary relief

2　after she has received the written explanation that is going

3　to be due to be sent to her no later than August 10.

4　　　　　So, Ms. Barge, hopefully the written explanation

5　that you receive will explain to your satisfaction and

6　understanding what this -- in a little bit more detail and

7　more specifics what this lump sum additional amount was and

8　what it was based on that you received with your January 1,

9　2015 -- I'm sorry -- February 2015 pension payment and why

10　the city contends specifically it was a one-time lump sum

11　payment and not a payment that's to be repeated annually, as

12　you have suspected.  And I would encourage you after you

13　receive that letter to talk to General Retirement System, in

14　particular the person who sends you the letter, if you have

15　questions about it or don't understand it and see if you can

16　come to an understanding in your own mind of -- satisfactory

17　view of understanding why the city contends that you're not

18　entitled to anything more than what you're actually receiving

19　in your monthly pension benefit.  If, after doing that, you

20　are -- you still believe that you're not being paid

21　everything you're entitled to under the city's confirmed

22　plan, you can file a new motion seeking specific monetary

23　relief for specific reasons for that, but the issue in this

24　court is limited -- is going to be limited to that issue.

25　Whether there's any additional monetary relief that -- or

1  money and payments that you're entitled to under the city's
2  confirmed plan of adjustment that you're not receiving that's
3  due to you.  As I have ruled today, in my view, there is
4  nothing in the record in your motion papers or in this
5  exhibit that you filed back in December 2014 that we've
6  talked about which tends to show that you are not receiving
7  everything that you're entitled to already in the form of
8  this monthly pension benefit.

9          So that's the ruling.  As I said, I'll prepare and
10  enter an order.  Our clerk will mail a copy of the order to
11  you, Ms. Barge.  You should receive it in the mail within the
12  next few days, and the city will provide this written
13  explanation.  And we'll see if that takes care of matters.
14  Thank you.

15          MS. BARGE:  Thank you, your Honor.

16          THE COURT:  Yep.

17          MS. BARGE:  And, your Honor, please excuse me for
18  any disrespect that I might have shown by interrupting you.

19          THE COURT:  No.  No problem.

20          MS. BARGE:  All right.

21          THE COURT:  Lawyers do that to me all the time --

22          MS. BARGE:  Okay.

23          THE COURT:  -- in hearings.  It's just, you know,
24  out in the world people do that all the time --

25          MS. BARGE:  Right.

1          THE COURT:  -- and don't give it a thought, but in
2     court we have to only talk one person at a time because we're
3     recording our hearings, and --
4          MS. BARGE:  Right.
5          THE COURT:  -- if two people are talking at once,
6     the recording is going to be hard to figure out who said
7     what.
8          MS. BARGE:  All right.
9          THE COURT:  So don't worry about that.  It's a
10    normal thing, and --
11         MS. BARGE:  Okay.
12         THE COURT:  -- it happens all the time, and I didn't
13    mean to --
14         MS. BARGE:  All right.
15         THE COURT:  -- act like I was mad or anything
16    because I wasn't.
17         MS. BARGE:  Okay.
18         THE COURT:  All right.
19         MS. BARGE:  Thank you, your Honor.
20         THE COURT:  In fact, whenever I talk to my kids, it
21    really happens all the time, so I'm used to it.
22         MS. BARGE:  All right.
23         THE COURT:  All right.  Thank you.
24         MS. BARGE:  Thank you, your Honor.
25         THE COURT:  All right.  That brings us then to the

# EXHIBIT 2 – CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 7, 2016, he served a copy of the foregoing *City of Detroit's Objection to Thomasena Barges's Motion Seeking Monetary Relief* as listed below, via First Class United States Mail:

Thomasena Barge
5226 Newport Street
Detroit, MI 48213

DATED: October 7, 2016

By: /s/ Marc N. Swanson
    Marc N. Swanson
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com