# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S REPLY IN SUPPORT OF ITS MOTION TO ENFORCE SETTLEMENT AGREEMENT AND ORDER, PURSUANT TO SECTIONS 105 AND 502 OF THE BANKRUPTCY CODE, APPROVING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES TO PROMOTE THE LIQUIDATION OF CERTAIN PREPETITION CLAIMS AGAINST TAMMY HOWARD AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF SHELTON BELL, JR., DECEASED

The City of Detroit ("City"), by its undersigned counsel and in support of its *Motion to Enforce Settlement Agreement and Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims Against Tammy Howard as Personal Representative for the Estate of Shelton Bell, Jr., Deceased* ("Motion," Doc. No. 11535), files this Reply to *Plaintiff's Response to City of Detroit's Motion to Enforce Settlement Agreement and Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims Against Tammy Howard as Personal Representative for the Estate of Shelton Bell, Jr., Deceased* ("Response," Doc. No. 11589).

27673736.3\022765-00213

Plaintiff Tammy Howard, as personal representative for the estate of Shelton Bell, Jr., Deceased ("Plaintiff") admits she entered into the *Agreement Resolving Claim of Tammy Howard (Estate of Shelton Bell)* ("Settlement Agreement"), which was attached as Exhibit 6C to the Motion. Response, ¶ 12. She admits that the Settlement Agreement included Officer Williams, the police officer the Plaintiff sued. Response, ¶¶ 3, 22. And, she admits that, notwithstanding the foregoing, she attempted to reinstate her case and compel the City to pay her $75,000 claim in full.[1]

The Court has ruled twice that the language of this Settlement Agreement releases claims against the City and its employees and provides the claimant with a Class 14 unsecured claim in the amount agreed.[2]

---

[1] The state court denied Plaintiff's motion to reopen the case "for Plaintiff's failure to provide any documentary evidence in support of the relief requested." See *Order Denying Plaintiff's Motion to Reinstate Case and Enforce Settlement* (attached as Exhibit 2).

[2] See the *City of Detroit's Motion to Enforce Settlement Agreement and Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims Against Gregory Phillips and/or Dominique McCartha as Personal Representative for the Estate of Gregory Phillips, Deceased* (Doc. No. 10272), Phillips's response (Doc. No. 10685), the City's reply (Doc. No. 10723), and the Court's order granting the City's motion (Doc. No. 10729). See also *Claimant Michael McKay's Motion to Enforce Agreement Resolving Claim of Michael McKay* (Doc. No. 11157), the City's Response (Doc. No. 11181), and the Court's order denying McKay's motion (Doc. No. 11289). See also the transcript of the June 15, 2016, McKay motion hearing (attached as Exhibit 3), 34:13-39:7.

27673736.3\022765-00213

The Plaintiff responds that the Settlement Agreement "was against an individual police officer, not the City of Detroit" (*see* Response, ¶ 1), but this is pure fabrication. The opening text of the Settlement Agreement states

> The City of Detroit (the "<u>City</u>") and the claimant identified in paragraph 2 below (the "<u>Claimant</u>" and, together with the City, the "<u>Parties</u>"), by and through their respective authorized representatives, do hereby agree as follows: . . . .

Settlement Agreement, p. 1 (Exhibit 6C to the Motion). That language shows that the Settlement Agreement was actually with the City, not the individual police officer.

In short, the Court has twice determined in nearly identical circumstances that the language used in the Settlement Agreement settles a plaintiff's claim against the City and its employees in exchange for an unsecured claim. Plaintiffs who sign such an agreement are not entitled to go back to state court seeking payment of their claims in full.[3] The City respectfully requests that the Court enter

---

[3] Counsel should be aware of this because its firm was involved in one of these prior motions. *Compare* signature block of Doc. No. 11157 (McKay motion, listing attorney Eric Stempien of Romano Law, PLLC) *with* signature block of Motion to Reinstate (listing attorney David G. Blake of Romano Law, PLLC) *and* signature block of Response (listing attorney Stanley I. Okoli of Romano Law, PLLC). In the unlikely event counsel had not been aware of these prior rulings, the City's Motion expressly pointed them out. Motion, p. 10 n.5. Indeed, it is possible that counsel's persistence with these arguments may violate Federal Rule of Bankruptcy Procedure 9011. Fed. R. Bankr. P. 9011(b) (treating papers filed by counsel as a certification that counsel has made a reasonable inquiry and
*Continued on next page.*

27673736.3\022765-00213

the order attached as Exhibit 1 to the Motion, requiring that the Plaintiff dismiss, or

cause to be dismissed, with prejudice, the State Court Lawsuit.

Dated: October 13, 2016

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Co-Counsel for the City of Detroit

- and -

CITY OF DETROIT LAW DEPARTMENT

Charles N. Raimi (P29746)
James Noseda (P52563)
Jerry L. Ashford (P47402)
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
Phone - (313) 237-0470
Email - raimic@detroitmi.gov

Attorneys for the City of Detroit

---

*Continued from previous page.*

determined that the legal contentions set forth by counsel "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . .").

27673736.3\022765-00213

# EXHIBIT 1 – CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 13, 2016, he caused a copy of the foregoing *City of Detroit's Reply in Support of Its Motion to Enforce Settlement Agreement and Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims Against Tammy Howard as Personal Representative for the Estate of Shelton Bell, Jr., Deceased* to be served upon counsel via electronic mail and first class mail as follows:

David Blake
Romano Law PLLC
23880 Woodward Avenue
Pleasant Ridge, MI 48069
dblake@romanolawpllc.com

Dated: October 13, 2016

By: /s/ Marc N. Swanson
    Marc N. Swanson (P71149)
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

# EXHIBIT 2

## Order Denying Plaintiff's Motion to Reinstate Case and Enforce Settlement

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

Estate of SHELTON BELL, JR., by his Personal
Representative TAMMY HOWARD,

     Plaintiff,

v.

DETROIT POLICE OFFICER ALAN WILLIAMS,

     Defendant.

_____/

Hon. Daniel A. Hathaway
Case No. 11-007122-CZ

*Order denying motion* 11-007122-CZ

FILED IN MY OFFICE
WAYNE COUNTY CLERK
9/19/2016 2:33:29 PM
CATHY M. GARRETT

Precious Smith

## ORDER DENYING PLAINTIFF'S MOTION TO REINSTATE CASE AND ENFORCE SETTLEMENT

At a session of said Court held in the county
courthouse, Wayne County, Michigan,

ON:      9/19/2016

PRESENT:      Daniel A. Hathaway

              Hon. Daniel A. Hathaway
              Circuit Court Judge

This matter is before the Court on Plaintiff Estate of SHELTON BELL, JR., by his Personal Representative TAMMY HOWARD's motion to reinstate case and enforce settlement.

The motion is DENIED for Plaintiff's failure to provide any documentary evidence in support of the relief requested.

**IT IS SO ORDERED.**

              /s/ Daniel A. Hathaway
              Circuit Court Judge

**THIS CASE <u>REMAINS CLOSED</u> BY WAY OF THE ADMINISTRATIVE ORDER ENTERED NOVEMBER 1, 2013.**

1 of 1

# EXHIBIT 3

## Excerpt of June 15, 2016, Hearing Transcript

```
 1               UNITED STATES BANKRUPTCY COURT
                 EASTERN DISTRICT OF MICHIGAN
 2                     SOUTHERN DIVISION

 3  IN THE MATTER OF,            Case No. 13-53846
                                 Detroit, Michigan
 4  CITY OF DETROIT, MICHIGAN    June 15, 2016
    _____/   1:35 p.m.
 5
        IN RE:  FORTY-FOURTH OMNIBUS OBJECTION TO CERTAIN CLAIMS,
 6     FORTY-FIFTH OMNIBUS OBJECTION TO CERTAIN CLAIM, MOTION TO
    ENFORCE MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE PLAN OF
 7  ADJUSTMENT INJUNCTION AND BAR DATE ORDER AGAINST RODRICK SINER
          FILED BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN,
 8  MICHAEL MCKAY'S MOTION TO ENFORCE AGREEMENT RESOLVING CLAIM OF
        MICHAEL MCKAY, TWENTY-THIRD OMNIBUS OBJECTION TO CERTAIN
 9  CLAIMS(PENSION CLAIMS THAT HAVE BEEN CLASSIFIED AND ALLOWED BY
      THE CITY'S PLAN), TWENTY-FIFTH OMNIBUS OBJECTION TO CERTAIN
10   CLAIMS (PENSION CLAIMS THAT HAVE BEEN CLASSIFIED AND ALLOWED
      BY THE CITY'S PLAN), TWENTIETH OMNIBUS OBJECTION TO CERTAIN
11        CLAIMS (FAILURE TO SPECIFY ASSERTED CLAIM AMOUNT AND
     INSUFFICIENT DOCUMENTATION), TWENTY-EIGHTH OMNIBUS OBJECTION
12   TO CERTAIN CLAIMS (INSUFFICIENT DOCUMENTATION), TWENTY-NINTH
            OMNIBUS OBJECTION TO CERTAIN CLAIMS (INSUFFICIENT
13  DOCUMENTATION), THIRTIETH OMNIBUS OBJECTION TO CERTAIN CLAIMS
     (INSUFFICIENT DOCUMENTATION), THIRTY-FIRST OMNIBUS OBJECTION
14  TO CERTAIN CLAIMS (INSUFFICIENT DOCUMENTATION), THIRTY-SECOND
            OMNIBUS OBJECTION TO CERTAIN CLAIMS (INSUFFICIENT
15    DOCUMENTATION), THIRTY-THIRD OMNIBUS OBJECTION TO CERTAIN
      CLAIMS (INSUFFICIENT DOCUMENTATION), THIRTY-FOURTH OMNIBUS
16          OBJECTION TO CERTAIN CLAIMS (INSUFFICIENT
       DOCUMENTATION), THIRTY-SIXTH OMNIBUS OBJECTION TO CERTAIN
17   CLAIMS (INSUFFICIENT DOCUMENTATION), THIRTY-SEVENTH OMNIBUS
            OBJECTION TO CERTAIN CLAIMS (INSUFFICIENT
18                         DOCUMENTATION)
             BEFORE THE HONORABLE THOMAS J. TUCKER
19            TRANSCRIPT ORDERED BY: ROBIN WYSOCKI

20  APPEARANCES:

21  For the City of Detroit, MI:   RONALD SPINNER, ESQ. (P73198)
                                   JOHN WILLEMS, ESQ. (P31861)
22                                 Miller, Canfield, Paddock &
                                   Stone
23                                 150 West Jefferson
                                   Suite 2500
24                                 Detroit, MI 48226
                                   313-496-7829
25
```

```
 1 | For Michael McKay:          ERIC STEMPIEN, ESQ. (P58703)
   |                             Romano Law, PLLC
 2 |                             23880 Woodward Avenue
   |                             Pleasant Ridge, MI 48069
 3 |                             616-355-6673
   |
 4 | For Da'Nean M. Brooks and   ANTHONY GREENE, ESQ. (P47715)
   | JaJuan Moore:               Greene Law Group
 5 |                             2232 S. Main
   |                             Suite 438
 6 |                             Ann Arbor, MI 48103
   |                             313-410-3390
 7 |
   | Claimants:                  JULIUS R. COLLINS
 8 |                             CRAIG STEELE
   |                             HENRY WOLFE
 9 |                             VENTONIA DORCH
   |                             GLADYS M. CANNON
10 |                             SARAH MCCRARY
   |                             JAMES CAPIZZO
11 |                             WANDA BECKOM-WHITE
   |
12 | Court Recorder:             Jamie Laskaska
   |
13 | Transcriber:                Deborah L. Kremlick
   |
14 |
   |
15 | Proceedings recorded by electronic sound recording, transcript
   | produced by transcription service.
16 |
   |
17 |
   |
18 |
   |
19 |
   |
20 |
   |
21 |
   |
22 |
   |
23 |
   |
24 |
   |
25 |
```

1       (Court in Session)

2           THE CLERK:  All rise.  This Court is now in session.

3   The Honorable Thomas J. Tucker is presiding.  You may be

4   seated.  The Court calls the case of the City of Detroit,

5   Michigan, case number 13-53846.

6           THE COURT:  All right.  Good afternoon to everyone.

7   We have a number of matters scheduled for hearing -- or

8   further hearing today.  I have in mind at least somewhat the

9   order in which I prefer to hear matters, but if counsel for

10  the city thinks there's a particular reason to do it in a

11  different order than I impose, that's fine.

12      Before we get much further into this though, let's have

13  entries of appearance by any and all attorneys in the

14  courtroom who wish to enter their appearance for the hearings

15  today starting with the city.

16          MR. SPINNER:  Thank you, Your Honor.  Ron Spinner

17  from Miller, Canfield and John Willems from Miller, Canfield

18  on behalf of the city.

19          THE COURT:  All right.

20          MR. STEMPIEN:  Your Honor, I'm Eric Stempien.  I'm

21  here on behalf of claimant Michael McKay.

22          THE COURT:  All right.  Good afternoon to the

23  attorneys and to everyone else here in the courtroom.  Mr.

24  Stempien, I'm glad you're at counsel table.  I had in mind

25  calling the matter involving your client first.

1            MR. STEMPIEN:  Oh.

2            THE COURT:  Mr. Stempien, yes.

3            MR. STEMPIEN:  Yes.

4            THE COURT:  The matter involving the motion brought

5    by the claimant Michael McKay.  I wanted to hear that first.

6    So unless there's any -- the city has any particular reason to

7    do -- to do -- otherwise, I'll hear that case first.

8            MR. SPINNER:  Oh, no, that's fine, Your Honor.

9            THE COURT:  All right.  So this matter then is the

10   motion by claimant Michael McKay to enforce agreement

11   resolving claim of Michael McKay, it's entitled.  It's docket

12   number 11157 filed May 11, 2016.

13       The city filed an objection to that motion on May 20,

14   2016.  I have reviewed the papers filed by the parties

15   relating to this motion and we'll hear argument now.  Mr.

16   Stempien, we'll start with you.

17           MR. STEMPIEN:  Good afternoon, Your Honor, and thank

18   you.  The first thing I'd like to make sure is clear is

19   exactly what it is we're -- we're requesting the Court to do.

20   Because I don't think it's perfectly clear from the -- the

21   objection that I received from the city that -- that really

22   came across completely.

23       We're not challenging the fact that there was a

24   settlement of a bankruptcy claim.  We're not challenging that

25   the individual officers' claims were included within that

1  settlement.  And I bring that up because attached to the

2  objection that the city filed, they attached a transcript from

3  a prior hearing of this Court where that was the issue before

4  the Court, whether there was a settlement, whether it applied

5  to the individual officers.  That is not what our claim is

6  here.  That's not the -- the requested relief that we have

7  here.

8       What we're saying, Your Honor, is that we want

9  confirmation that the settlement agreement that was reached

10 with regard to the bankruptcy claim requires a payment of the

11 full $42,500 to claimant Michael McKay.  In the objection the

12 city simply says that this is a Class 14 claim.  They provide

13 no specific support for that.  They don't say why it's a Class

14 14, it's just something that they designated on their own.

15      However, when we look at everything that has made part of

16 this matter with Mr. McKay which would be the settlement

17 agreement, the eighth amended plan, Judge Rhodes' oral opinion

18 on the record with regard to his approval of the eighth

19 amended -- amended plan, it makes it clear that the settlement

20 requires a full payment of $42,500.

21      First, with regard to the agreement itself, the paragraph

22 that -- the operative paragraphs are Paragraph 2 and 5.

23 Basically what it is, is it says that he agrees to settle this

24 claim for $42,500, that it would be a -- a unsecured

25 non-priority claim.

1      Paragraph 5 then says that it will be treated as such

2   under the plan that was at that time not yet approved by the

3   Court.  So it was not clear what the level of treatment was

4   going to be at the time that the settlement agreement was

5   reached.

6      So when the settlement agreement -- or excuse me, when

7   the plan is actually then approved, the question becomes what

8   is this claim.  So I think we need to start kind of the

9   underlying lawsuit.  The underlying lawsuit was a -- a 42 USC

10   1983 claim.  It was brought in State Court and litigated

11   within State Court.  It was against three individual officers.

12   There was never a claim made against the city itself.  The

13   only defendants were the three individual police officers.  It

14   was resolved through a binding arbitration process.

15      THE COURT:  Well, wait a minute.  You say in the

16   State Court litigation it was not -- the case was not brought

17   against the city itself, rather only against the individual

18   officers.

19      MR. STEMPIEN:  Correct.

20      THE COURT:  That may be, but your client Mr. McKay

21   filed a proof of claim in the City of Detroit bankruptcy case,

22   a claim against the City of Detroit by its nature.  And that's

23   -- that was part of what was -- at least part of what was

24   settled by this settlement agreement at issue, isn't it?

25      MR. STEMPIEN:  Correct.

1          THE COURT:  Okay.  And you said you're not

2   contesting that that settlement also include a settlement of

3   the -- Mr. McKay's claims against the individual officers.

4          MR. STEMPIEN:  Correct.

5          THE COURT:  Okay.  So it's everybody.

6          MR. STEMPIEN:  It is everybody.

7          THE COURT:  All right.  So the -- what Mr. McKay got

8   in exchange for his release of his claims against the City of

9   Detroit and the officers according to the settlement

10  agreement, is the treatment provided in Paragraph 2 of the

11  settlement agreement, isn't it?

12         MR. STEMPIEN:  I would say it's actually Paragraph 5

13  is the operative paragraph, Your Honor.

14         THE COURT:  Okay.  Well, let's say 2 plus 5.

15         MR. STEMPIEN:  Right.  I think it's both right, Your

16  Honor, yeah.

17         THE COURT:  Yeah, okay.  So and that was -- there

18  would be an allowed claim of $42,500 to be treated as a Class

19  5 as a general unsecured non-priority claim subject to the

20  treatment provided for such claims under any Chapter 9 plan

21  confirmed by the Court.

22         MR. STEMPIEN:  Correct.

23         THE COURT:  That's the gist of it.  Okay.  And

24  that's all Mr. McKay got.

25         MR. STEMPIEN:  Correct.

1          THE COURT:  Right?

2          MR. STEMPIEN:  Right.

3          THE COURT:  Okay.  So the plan that was confirmed in

4   the case, it was later but the plan that was confirmed in the

5   case treated general unsecured non-priority claims and it

6   treated them in Class 14 of the plan, didn't it?

7          MR. STEMPIEN:  Well, I don't believe so, Your Honor.

8   Now I think 1983 claims and indemnification claims were given

9   their own treatment separately.

10         THE COURT:  What class are they in in the plan in

11  your view?

12         MR. STEMPIEN:  Your Honor --

13         THE COURT:  If not 14, what class of the plan,

14  confirmed plan?

15         MR. STEMPIEN:  Well, my read of the -- the plan says

16  that they have to pay it in full, Your Honor.  I mean whether

17  -- whether it's under Class 14 --

18         THE COURT:  Well, where is that in the plan?

19         MR. STEMPIEN:  Okay.  So where I would point the

20  Court to would be, it's under Article 4 because, you know, you

21  have the class and you have -- you have the plan that's going

22  to be put into place and then Article 4 of the plan says

23  here's how we're going to implement it.

24         These are the means for implementation of the plan.  It's

25  Article 4, Section O, subsection O.  It talks about assumption

1  of indemnification, I believe.

2          THE COURT:  Hold on.  If you're not going to give me

3  the page number, I'm going to have to dig it out.

4          MR. STEMPIEN:  Oh, I'm sorry, 62 -- 62.

5          THE COURT:  Hold on.  Sixty-two of the confirmed

6  plan, is that right?

7          MR. STEMPIEN:  That is correct.

8          THE COURT:  And for the record, the confirmed plan,

9  when I'm looking at the confirmed plan, I'm looking at docket

10  number 8272, the eighth amended -- eighth amended plan filed

11  on -- I'm sorry, 8272 is the order confirming the eighth

12  amended plan.

13          MR. STEMPIEN:  Correct.

14          THE COURT:  And it has attached to it a copy of the

15  eighth amended plan that was confirmed.  And in there you're

16  looking at Page 62 of the plan, right?

17          MR. STEMPIEN:  Correct.

18          THE COURT:  And I'm -- I'm on that page.  Now what

19  -- what -- what language are you pointing to?

20          MR. STEMPIEN:  So the language that I believe

21  requires full payment in this is under Section O, it says

22  assumption of indemnification obligations.  Notwithstanding

23  anything otherwise to the contrary in the plan, nothing in the

24  plan shall discharge or impair the obligations of the city as

25  provided in the charter or other organizational documents of

1  such nature from the city to then indemnify, defend,

2  reimburse, escrow pay, advanced fees and expenses, or limit

3  the liability of officers, employees of the city.

4      So and this is consistent with Judge Rhodes' oral opinion

5  that he gave when he said I'm going to confirm the plan which

6  we attached as well to our motion and quoted within the brief

7  itself where Judge Rhodes says, 1983 claims are not affected

8  by this.  And why this is important is because if you --

9         THE COURT:  Well, just a minute.

10         MR. STEMPIEN:  Okay.

11         THE COURT:  Hold on.  You cited Judge Rhodes' oral

12  opinion regarding confirmation of the plan.  That was later

13  put into the order confirming plan.

14         MR. STEMPIEN:  Correct.

15         THE COURT:  And then later there was a written

16  opinion which went into more detail, but it was consistent, I

17  think, with the oral opinion about confirming the plan.  In

18  all of these documents it appears to me that what that meant

19  and what was done with that is, that the Court sustained an

20  objection to confirmation that had been made in part by -- by

21  ruling that basically Section 1983 claims against individual

22  officers and employees of the city were not being discharged

23  by the plan, although such claims as against the City of

24  Detroit and therefore also against city employees in their

25  official capacities which is essentially the equivalent of

1   being against the City of Detroit were being treated and

2   discharged in the plan.  Now do you -- do you disagree or

3   agree with that reading?

4           MR. STEMPIEN:  I agree that our claim is subject to

5   the plan in the sense that -- in the sense that even if it

6   wasn't within what Judge Rhodes said or put in the final plan,

7   we agreed to that within the agreement.  I mean I think that

8   -- however the plan treats these 1983 claims is -- is going to

9   be binding upon us based on what we said.  But I guess what

10  I'm --

11          THE COURT:  Well, you're not answering my question.

12          MR. STEMPIEN:  Okay.  Maybe I misunderstood.

13          THE COURT:  I want to be clear about -- if possible,

14  I want to be clear about what the plan did and did not

15  discharge with respect to 1983 claims.

16      The plan, the confirmed plan did not discharge 1983

17  claims brought against officers or employees of the City of

18  Detroit in their individual capacities, do you agree?

19          MR. STEMPIEN:  Correct, yes.

20          THE COURT:  But it did discharge 1983 claims brought

21  against the City of Detroit or -- and/or -- and claims brought

22  against employees or officers of the City of Detroit in their

23  official capacities.  Do you agree with that?

24          MR. STEMPIEN:  I'm not able to answer that, I

25  apologize, Your Honor.  I did not -- I know those with regard

1  to the city.  With regard to the actions of within their

2  official capacity, my -- my understanding of it, and I may be

3  mistaken, is that it -- it's -- it's part of the

4  indemnification requirements because that's exactly what the

5  indemnification provisions are for.

6        THE COURT:  Well, we're going to talk about the

7  indemnification provisions in a minute.  But before we get to

8  that, I just want to be clear.  We're talking about this sort

9  of the same basic groundwork here.

10     I'm looking at the order confirming plan, docket 8272, at

11 Pages 87 to 88, first of all.  That's -- that's the order that

12 confirmed the plan filed November 12, 2014.  Docket 8272,

13 Pages 87 to 88.

14     It's in a section called F, discharge of claims.

15 Paragraph 30 which carries over on to Page 88 says, this --

16 claims that are discharged and it says such discharge will not

17 apply to among other things, "claims against officers who are

18 employees of the city in their individual capacities --

19 capacity under 42 USC Section 1983."  That's the exception to

20 the discharge for claims against employees in their individual

21 capacity that we just talked about, right?  Right?

22        MR. STEMPIEN:  Correct, yeah.

23        THE COURT:  Okay.  Now if you see something here in

24 the order confirming plan or in the plan for that matter that

25 indicates that the -- that 1983 claims against the city and

1  officers, employees in their official capacity were not

2  discharged were also exceptions to the discharge on this

3  confirmed plan. I need you to tell me where that is because I

4  don't know where that is. I don't think that's the case.

5          MR. STEMPIEN: I don't -- I would not be able to

6  point that out to the Court.

7          THE COURT: All right. Okay. So now you were

8  focusing here on Page 62 of the eighth amended plan that was

9  confirmed in this Paragraph O on Page 62 about the provision

10 regarding -- essentially meaning that the city's obligations

11 to essentially to indemnify its employees -- officers and

12 employees of the city was not being -- pardon me, discharged

13 or impaired by the confirmed plan, right?

14         MR. STEMPIEN: Correct.

15         THE COURT: Okay. So from that concept and that

16 provision in the confirmed plan you argue what?

17         MR. STEMPIEN: Well, I argued --

18         THE COURT: What's the consequence of that?

19         MR. STEMPIEN: My argument is that when they say the

20 word nothing -- nothing in the plan shall discharge or impair

21 their obligations to indemnify, I think the plain language of

22 the plan itself is nothing before this that we put in here

23 shall discharge that. And so my consequences --

24         THE COURT: Excuse me though. This is -- this

25 language refers to indemnifying et cetera officers and

1  employees of the city, right?

2          MR. STEMPIEN:  Correct.

3          THE COURT:  It -- it doesn't refer to any sort of

4  duty to indemnify third party claimants.

5          MR. STEMPIEN:  Correct.

6          THE COURT:  Like your claim.

7          MR. STEMPIEN:  Correct.

8          THE COURT:  Right?

9          MR. STEMPIEN:  Right.  And that's not my position.

10  I'm not saying they indemnify me.  My -- my -- here's the

11  argument, Your Honor.

12          THE COURT:  Sure.

13          MR. STEMPIEN:  We -- we sued these individual

14  officers.  We didn't sue the City of Detroit.  Our judgment

15  which as an arbitration award we never turned into a judgment,

16  but our arbitration award is as to these three individuals.

17     The only obligation that the City of Detroit could

18  possibly have to pay that award/judgment is as an indemnitor

19  for those three individual officers.  That's the only

20  obligation the city could possibly have.

21     And that would be an obligation found within their

22  collective bargaining agreement.  So this is not a direct

23  action against the city.  We did not sue the city.  That's why

24  I opened up with that because we didn't sue them.

25     Their -- only time they could ever have an obligation to

1 pay, let's say we never had the bankruptcy if -- if you just

2 went through the litigation and the City of Detroit paid the

3 arbitration award on a City of Detroit check and the City of

4 Detroit account, it would have only been as an indemnitor for

5 those three officers. That would be the only way they could

6 have been obligated in any manner.

7     Therefore because it's clear that they're indemnitors,

8 and it's clear that the plan says nothing in the plan shall

9 discharge per their obligations, they're obligated to

10 indemnify these individual officers as to that full amount,

11 it's not changed.

12        THE COURT: This duty to indemnify the officers that

13 you're pointing to is not a duty that runs to your client, to

14 an injured third party. It runs only to the officers, doesn't

15 it?

16        MR. STEMPIEN: Correct.

17        THE COURT: So your clients couldn't possibly have a

18 claim against the City of Detroit based upon the City of

19 Detroit's duty to indemnify its officers, is that right?

20        MR. STEMPIEN: My position on that is usually we

21 would have standing if they tried to challenge it to -- to

22 argue on that. But I don't think we could bring an

23 independent cause to enforce an -- or I mean an

24 indemnification provision.

25        THE COURT: The indemnity rights are rights that

1  belong to the officers.

2          MR. STEMPIEN:  That is correct.

3          THE COURT:  You agree, okay.

4          THE COURT:  All right.

5          MR. STEMPIEN:  Yes.  Now, this settlement agreement

6  it looks like the arbitration award was made by the three

7  arbitrators.  It's looks like the written arbitration award

8  was May 16, 2013 it looks like the date.  And I think that's

9  part of Exhibit A attached to docket 11181, the city's

10  response and probably elsewhere in the record, but -- so it

11  was after that arbitration award that Mr. McKay and the city

12  made this settlement agreement that's at issue, right?

13          MR. STEMPIEN:  That's correct.

14          THE COURT:  The -- the agreement doesn't seem to

15  state, you know, a date, official date of this agreement, but

16  it looks like it was signed by the city on December 16, 2015

17  signed by Mr. McKay it looks like June 23, 2014.

18          MR. STEMPIEN:  Correct.

19          THE COURT:  I'm just looking at the signature --

20          MR. STEMPIEN:  That's right.  And it -- it --

21          THE COURT:  -- signature on the last page.

22          MR. STEMPIEN:  -- was never signed by the attorneys

23  for Mr. McKay.

24          THE COURT:  Right.  It was signed by Mr. McKay and

25  by the city.  And -- and that all happened after the

1  arbitration award had been entered against the individual

2  officers.

3          MR. STEMPIEN: Yes.

4          THE COURT:  Right?  Okay.  So and you've said that

5  the settlement agreement settled Mr. McKay's claims against

6  the individual officers.

7          MR. STEMPIEN:  Correct.

8          THE COURT:  As well as the city, everybody.

9          MR. STEMPIEN:  Yes.

10          THE COURT:  Okay.  So the agreement -- the

11 settlement agreement itself does not say the city would agree

12 to be obligated to indemnify Mr. McKay for anything based on

13 the arbitration award against the officers.  Expressly what it

14 did was it gave Mr. McKay an allowed claim of $42,500 that

15 would be classified and treated in the Chapter 9 plan as a

16 general unsecured non-priority claim right, you would agree to

17 that?

18          MR. STEMPIEN:  Yes.  But --

19          THE COURT:  Yeah, okay.

20          MR. STEMPIEN:  Well, you say they didn't promise to

21 indemnify but they did promise to make a payment based on the

22 provisions of the plan that was to be later adopted.  So I

23 mean whether you call it indemnification or not, but they made

24 a promise to pay.

25          THE COURT:  Well, I don't think it says they'll make

1  a payment.  It said that -- and then it said, it's Paragraph

2  5, it would -- in Paragraph 2 and 5 they give -- they give an

3  allowed general unsecured non-priority claim and say it's

4  going to be subject to the treatment of such -- for such

5  claims in any Chapter 9 plan.

6          MR. STEMPIEN:  Correct.

7          THE COURT:  All right.  All right.  So the -- the

8  provision regarding indemnification that you cited on Page 62

9  of the confirmed plan, it doesn't say anything about how

10  general unsecured non-priority claims are to be treated.

11     And it's limited for purposes of your motion, I think

12  you'll agree, to the city's obligation to indemnify, defend,

13  et cetera, its own employees.

14          MR. STEMPIEN:  Yeah.  The -- their obligation is to

15  the employee, yes.

16          THE COURT:  So -- so how -- how does that -- how

17  does that -- I'm having trouble seeing the link that you're

18  trying to make there between that provision in the confirmed

19  plan and your ultimate conclusion that the city under this

20  settlement agreement has to pay the full 42,500 of the claim.

21          MR. STEMPIEN:  Because I think the operative words

22  in Paragraph 5 are, subject to the treatment provided for such

23  claims under any Chapter 9 plan.  So the question has to

24  become how does the plan treat this particular claim.  The

25  city --

1          THE COURT:  Well, wait a minute. Look at Paragraph

2  5.  The treatment provided for such claims under any Chapter 9

3  plan, the language you just pointed to.  The reference to such

4  claims there is a reference, isn't it, to the -- the phrase

5  general unsecured non-priority claim?

6          MR. STEMPIEN:  Yes.

7          THE COURT:  It appears earlier in the sentence.

8          MR. STEMPIEN:  Yes.

9          THE COURT:  So when it says such claims you can

10  translate that to mean -- to say and mean that the claim, Mr.

11  McKay's claim, settled claim here, would be subject to the

12  treatment provided for general unsecured non-priority claims

13  under the Chapter 9 plan, is that right?

14          MR. STEMPIEN:  Yes.  And I would argue that 1983

15  claims are unsecured non-priority claims.  I -- there's no --

16  there's no security created by our 1983 claim.  There's no

17  priority.  And I apologize if there is, because I -- I don't

18  practice bankruptcy at all.  But my understanding is that

19  priority claims are things like wages and -- and things of

20  that nature.

21      This is -- my observance it's not a priority claim, it's

22  not a secured claim.  It is a -- it is an unsecured

23  non-priority claim.  But the plan treats 1983 claims --

24          THE COURT:  Okay.

25          MR. STEMPIEN:  -- differently than it does other

1  non-priority unsecured claims.

2          THE COURT:  Maybe I'm -- I'm understanding your

3  argument a little better now, but let me see if I've got it.

4          MR. STEMPIEN:  Okay.

5          THE COURT:  If I understand it.  Seems -- seems to

6  be what you're saying now is that this Paragraph O on Page 62

7  of the confirmed plan is one place, not the only place

8  necessarily, one place in which the plan, confirmed plan,

9  treats general unsecured non-priority claims.

10          MR. STEMPIEN:  Correct.

11          THE COURT:  In the form of claims that are claims by

12  employees of the city for indemnification, is that right?

13          MR. STEMPIEN:  Well, it --

14          THE COURT:  Isn't that what Paragraph O talks about?

15          MR. STEMPIEN:  Yes.  That is correct, yes, yes.

16          THE COURT:  Okay.

17          MR. STEMPIEN:  But the general unsecured claim that

18  I have is a 1983 claim which I think is treated differently

19  under this.  So my obligation -- my claim -- my settlement as

20  to the city and their officers was to be treated as that type

21  of a claim under the plan which I think provides for $42,500

22  full payment.

23      Now does that mean I can go to the officers and say the

24  officers have to pay me 42,500?  Well, the Court's already

25  ruled no, I can't.  I saw that in the prior ruling.

1    So then it's the city who is obligated to pay it under

2    this.  And the only way they can be obligated to pay is under

3    the indemnification provision.  And then if it's under the

4    indemnification provision, I think it's -- that is not

5    impaired or discharged in any manner.

6        THE COURT:  Well, the city's obligated to pay

7    something because they agreed to a settlement agreement that

8    gave your client a general unsecured non-priority claim in the

9    bankruptcy under the plan.  Whether they had before agreeing

10   to that, it was the city had any sort of legal obligation to

11   pay your client anything I suppose is -- is a different issue.

12       But the settlement agreement gave your client a right to

13   treatment, whatever treatment was -- what Paragraph 5 means

14   under any confirmed plan by the city, right?

15       MR. STEMPIEN:  Right.

16       THE COURT:  Right.

17       MR. STEMPIEN:  But it would be in conjunction I

18   think with the nineteen eight -- we sued these individual

19   police officers, not the city.  We didn't bring a custom and

20   policy claim against the city, we sued these individual

21   officers.

22       My understanding then is that they're obligated as the

23   full amount of the money.  And if I had not -- my client had

24   not signed this agreement I could go after these officers for

25   the full -- full 42,500 which is, you know, I think everybody

1   agrees that's true.  We signed this agreement so now we have

2   the city coming in.

3        So under one provision we get the full -- full 42,500,

4   but when the city has to come in and pay it they get to pay it

5   as a Class 14 under the notes.  And I -- I think that that

6   would be -- I think that would be reading the -- the

7   provisions inconsistently.  Because I think 1983 claims have

8   gotten their own treatment.  These are individual officers

9   sued not -- not with the city, but as individuals.

10       And it was arbitrated.  A decision was made.  They had a

11  judgment or could enter a judgment against them if we hadn't

12  pursued the -- the agreement.  And therefore if the city is

13  going to pay it, they can do it as an indemnitor and therefore

14  they're -- they're -- they can't impair that ability there to

15  do so.

16            THE COURT:  Well, look at, if you have it front of

17  you there, Page 44 of the plan.  It talks about the treatment

18  of Class 14.

19            MR. STEMPIEN:  I believe I do have that one with me,

20  yes.

21            THE COURT:  Other unsecured -- all right.  The

22  treatment of Class 14.  Do you have it there?

23            MR. STEMPIEN:  I'm looking at it.

24            THE COURT:  Page 44 of the plan, docket 8272

25  attached to the order confirming the plan at treatment.  It

1  says, "unless such holder agrees to a different treatment of

2  such claim, each holder of an allowed other unsecured claim in

3  full satisfaction such allowed claim shall receive," and then

4  it goes on to talk about the -- the -- the notes, et cetera.

5  The Class 14 treatment there.

6      Now the -- the phrase allowed other unsecured claim,

7  allowed means the claim is allowed, but other unsecured claims

8  defined at Page 21 of the plan, Paragraph 262 in the -- number

9  262 of the definitions to mean any claim that is not an

10 administrative claim, a convenience claim, a COP claim, a

11 downtown development authority claim, a general obligation

12 bond claim, a GRS pension claim, an LBB claim, a BFRS pension

13 claim, a secured claim, indirect 36th District Court claim, or

14 subordinate claim.

15     Then it says where the avoidance of doubt, Section 1983

16 claims and indirect employee indemnity claims are included

17 within the definition of other unsecured claim.

18     So doesn't that claim which made clear when combined with

19 the language of the treatment of Class 14, that 1983 claims,

20 including indirect employee indemnity claims are within the

21 definition of -- of allowed other unsecured claim in Class 14

22 of the plan.

23         MR. STEMPIEN:  Again, the direct -- there was no

24 direct 1983 claim, so it doesn't meet that because we didn't

25 -- we didn't sue the city for a 1983 claim.  We sued

1 | individual officers for violation of the 42 USC 1983.  That

2 | provision if it's read in the way that I believe the Court

3 | just indicated, I think would conflict with the -- the -- the

4 | subsequent provision that says that the 1983 claims against

5 | individual officers are not impaired.  I don't remember the

6 | language, I apologize, but to that effect.

7 |      Again can the -- can the -- would the officers then have

8 | a different -- would they be in a different position to in

9 | their indemnity claim against the city if we went after them

10 | for the 42,500.  It sounds like it would apply to that.

11 |      But then that -- that provision, that definition also

12 | conflicts with Article 4, subsection O which says there's no

13 | -- you know, there's no impairment of -- of an indemnity

14 | claim.

15 |      I would ask -- I would ask the Court to apply that, you

16 | know, sort of statutory construction rules that we would have

17 | or the more specific provisions and would rule over the

18 | general provisions.  And I think when you read in conjunction

19 | the specific 1983 section about individual officers and the

20 | indemnification provisions it makes clear that I've still got

21 | my full claim against the officers because that -- when I

22 | signed this agreement and the -- and the officers -- or when

23 | my client signed this agreement and -- and said we're waiving

24 | our claim against the officers for 42,500 under the plan,

25 | they're still obligated to 42,500.

1     And then -- then the city's got to indemnify it because

2  they're indemnified under their collective bargaining

3  agreement.  And Article 4, Section O we'd say they have to do

4  it without impairment.

5          THE COURT:  One of things I was going to get to and

6  ask you about the language in the plan about the treatment of

7  Class 14 on Page 44 in addition to what we've just already

8  talked about is, the opening phrase of the -- of the paragraph

9  that I just read to you, it says unless such holder agrees to

10  a different treatment of such claim.

11     I thought you were going to argue that partly in response

12  to my last question that well, yeah, the -- the claim that was

13  settled and the claim which is allowed in the case is maybe a

14  general unsecured non-priority claim.  It is because that's

15  what -- what the settlement agreement says in Paragraph 2 and

16  5.  And -- and it may be a -- an allowed other unsecured claim

17  within the meaning of Class 14, but here the holder, your

18  client of the claim, agreed to a different treatment of the

19  claim.  That is treatment different than what Class 14

20  provides for.

21          MR. STEMPIEN:  Right.

22          THE COURT:  In the plan.  And that, you're arguing

23  is based on the settlement agreement, the full $42,500

24  payment.

25          MR. STEMPIEN:  Correct.

1        THE COURT:  Is that part of what you're arguing?

2        MR. STEMPIEN:  Yes, yeah, yeah.

3        THE COURT:  All right.  You -- on the subject of

4   your claim against the individual officers, I noticed that in

5   March of this year apparently in the State Court action you

6   obtained an order of that Court ordering the individual

7   employees to pay the full amount of the arbitration award

8   within 60 days, is that right?

9        MR. STEMPIEN:  That is correct.

10       THE COURT:  That's the order that is entitled order

11  enforcing arbitration award in March 14, 2016, Circuit Court.

12  This is -- a copy of this is -- it looks Exhibit 6 to your

13  motion.

14       MR. STEMPIEN:  Okay.

15       THE COURT:  Refers to the arbitration award issued

16  on May 16, 2013, order defendants, meaning the individual

17  defendants being Meyer and Watkins and John -- Officer John

18  Doe, so we're talking about Meyer and Watkins, I guess, to pay

19  that award within 60 days.

20       MR. STEMPIEN:  Correct.

21       THE COURT:  Was the city involved in the litigation

22  that led to this particular order in the State Court?

23       MR. STEMPIEN:  Yes, they did.

24       THE COURT:  They were?

25       MR. STEMPIEN:  Yeah, they appeared at the hearing

1            THE COURT:  And did they argue against this?

2            MR. STEMPIEN:  No.

3            THE COURT:  Did they raise the issue of the

4    settlement?

5            MR. STEMPIEN:  No.

6            THE COURT:  And did they oppose this entry of this

7    order in any way?

8            MR. STEMPIEN:  No.

9            THE COURT:  During the hearing did they say anything

10   about their indemnification obligation to Officer Watkins?

11           MR. STEMPIEN:  No.

12           THE COURT:  Did you bring up any of these things

13   during that hearing?

14           MR. STEMPIEN:  I did not.

15           THE COURT:  All right.  Well, what else do you want

16   to say about your motion then, Mr. Stempien?

17           MR. STEMPIEN:  No, I believe we've covered

18   everything, Your Honor.  I think the Court has a good sense of

19   what my argument is.  Thank you.

20           THE COURT:  All right.  Well, thank you.  We'll hear

21   from the city now.  Mr. Spinner.

22           MR. SPINNER:  Yes, good afternoon, Your Honor.  I

23   think you have actually covered most of what I would say.  You

24   know, now I understand exactly what he's -- brother counsel is

25   going after.

1    I think the -- the only issue I might raise, and it's

2 probably a lot simpler than it -- than it would appear in the

3 surface.  To me the one doctrine that's being overlooked all

4 over here is merger and the ability to settle claims.  Two

5 doctrines, I suppose.

6    First of all the parties can sell anything they wish for

7 the most part.  And they did so here and signed an agreement

8 to that effect.

9    At the time the settlement took place, merger takes

10 place.  The original claim merges into the settlement.  The

11 settlement requires that this claim, this -- this suit in

12 which the order was -- from the Court which issued the order,

13 that suit was supposed to have been dismissed.

14    The claims against the individual police officers were

15 obviously  released as they were to the city.  Claimant

16 bargained for a $42,500 unsecured claim, that's what he has,

17 that's what he's gotten.

18    And beyond that I don't think I could add much to what

19 Your Honor's already asked.  Unless you have questions for me,

20 Your Honor.

21    THE COURT:  Well, what do you say about this

22 Paragraph O on Page 62 of the confirmed plan and the argument

23 made by Mr. Stempien here?

24    MR. SPINNER:  Indemnification?  The -- well, two

25 things.  First of all, there's no indemnification required

1 anymore, Your Honor, he's released the officers and said, I

2 will take an unsecured claim against the city for payment. So

3 there's no -- no ability or requirement for indemnification

4 because there's no further charges against the officers.

5 That's part of the settlement agreement that's been executed.

6 And as to that --

7      THE COURT: So it is your view that the reference in

8 the settlement agreement in Paragraphs 2 and 5 to the -- to

9 Mr. McKay having a general unsecured non-priority claim

10 subject to the treatment provided for such claims under any

11 Chapter 9 plan, does not -- it means the treatment provided in

12 Class 14 of the confirmed plan, not the -- not anything that's

13 provided in Paragraph O on Page 62 of the plan relating to the

14 indemnification of city employees.

15      MR. SPINNER: Oh, absolutely, Your Honor. As a

16 matter of fact, you know, if we really want to get to be

17 esoteric about this, most of the arbitration award was

18 entered. In theory the 1983 claims merged with that and you

19 have an arbitration dollar award. What is now against the

20 individual officers is a dollar --

21      THE COURT: That was a binding arbitration, I

22 assume, by agreement.

23      MR. SPINNER: I believe so.

24      THE COURT: Yeah.

25      MR. SPINNER: And then -- and that was exchanged and

1  merged into a settlement agreement and in the settlement

2  agreement the plaintiff unambiguously agreed to release the

3  city, its employees, and then -- and dismiss this case and in

4  exchange for that would receive a Class 14 unsecured claim.

5      The reasons for the entering into the agreement, I'm not

6  going to speculate.  I'm not allowed to speculate because it's

7  unambiguous.  There's no parol evidence really to speculate

8  upon.  It's -- this is -- it is what it is.  He was

9  represented by counsel.  It was executed and then -- and now

10 he's gone off and gotten an award or an order from the Court.

11 I would say that theoretically is in violation of the

12 injunction.  But I think this motion would probably take care

13 of that.

14     In effect, Your Honor, what we're looking for is the same

15 thing Mr. McKay is.  We're looking to have the settlement

16 enforced.  I think we just have different interpretations of

17 what that means.

18         THE COURT:  The entry of this order on March --

19 dated March 14, 2016 by the State Circuit Court, order

20 enforcing arbitration award that I -- I referred to a little

21 bit ago with Mr. Stempien, Exhibit 6 to the -- Mr. McKay's

22 motion.

23     That order seems inconsistent with your argument about

24 the settlement agreement having released any claims by Mr.

25 McKay against the individual officers.

1         MR. SPINNER:  Certainly would be my position, Your

2    Honor.

3         THE COURT:  So is there -- is there a problem

4    however in the fact that there is a State Court judgment or in

5    fact the order which I assume is a final order, that's

6    inconsistent with the city's position?

7         MR. SPINNER:  Insofar as that the order exists, Your

8    Honor, if it's entered in violation of the Bankruptcy Court

9    injunction that was entered with the plan, we could move to

10   have it set aside.  I mean technically speaking yes, the order

11   stands until it's set aside and probably needs to be set

12   aside.

13     I -- to be perfectly honest, I am not entirely familiar

14   with the circumstances of how the order was extracted from the

15   State Court.  But if --

16        THE COURT:  Well, how -- how would the order be in

17   violation of any sort of injunction, discharge order, or

18   injunction under the confirmed plan?

19        MR. SPINNER:  Well, and to the extent -- just at a

20   beginning without speculating on how many different ways.

21   Just going after the fact the city's officers were sued in

22   their official capacities, this order does not, I don't

23   believe distinguish between that.

24     Certainly it's not limiting itself in any way.  It's just

25   simply the defendants shall pay within 60 days.  So at a

1 minimum it should be corrected.

2    But I mean I would also say that regarding the

3 settlement, the settlement said I will dismiss this case.  And

4 he did not dismiss this case.  So I think the city would then

5 have a claim against him theoretically for damages.

6    I don't want to speculate on how far this goes.  I think

7 this can be resolved a lot more simply than all.  But if we're

8 following hypotheticals, that's where I would take it.

9         THE COURT:  The obligation to dismiss the city case

10 or the civil case in State Court, that's Paragraph 9 of the

11 settlement agreement.

12         MR. SPINNER:  Yes, I believe so, Your Honor.

13         THE COURT:  That says stipulation of dismissal with

14 prejudice.  And the form attached hereto is Exhibit B.  I

15 don't see any Exhibit B in the record.  What is Exhibit B?

16         MR. SPINNER:  You know, Your Honor, we have not

17 found Exhibit B either.  However, I believe when the Court

18 last looked at this there was that similar -- this was exactly

19 on all fours with the Phillips decision, Exhibit B was not

20 found.  But there was definitely an intent expressed within

21 the agreement that the underlying litigation that led to the

22 filing of the proof of claim was to be dismissed and the city

23 takes the position that that same intent is expressed here,

24 it's the same language exactly.

25         THE COURT:  All right.  Anything else you'd like to

1    say then, Mr. Spinner?

2            MR. SPINNER:  No, sir.  Thank you.

3            THE COURT:  All right.  Mr. Stempien, as counsel for

4    the moving party you can briefly reply if you want to.

5            MR. STEMPIEN:  Your Honor -- I'll get to the

6    lectern.  The only thing I'd like to point out is that there

7    has been no indication that they were sued only in their

8    official capacities.  And there's nothing in the arbitration

9    award that tells us how it was awarded against them.

10           They were sued as individuals.  We did not sue the City

11   of Detroit.  We did not bring them in and say they are -- you

12   know, this is the city's problem.  We sued individual officers

13   which is actually in the 1983, that's generally how it's done.

14           So to -- to -- I think it's just -- I don't think that

15   there's been an establishment.  I think that the fact of the

16   matter is we have an arbitration award that could have been a

17   judgment entered against three individuals with no indication

18   that it was in any -- in official capacity.  So I believe it

19   still falls within that one provision of the plan that we

20   talked about earlier.

21           THE COURT:  Entered against three individuals?

22           MR. STEMPIEN:  Correct.

23           THE COURT:  Who were those other than Meyer and

24   Watkins?

25           MR. STEMPIEN:  If I could, Your Honor.  It was

1  originally filed against Mr. Watkins, and then the lawsuit was

2  amended and we added three -- two other individual police

3  officers and the award was Officer Myron Watkins, Frederick

4  Persing, and Kevin Clark.

5          THE COURT:  Oh, I see.  They're named in the --

6          MR. STEMPIEN:  It's Exhibit 5 of my --

7          THE COURT:  They're named in the arbitration award.

8          MR. STEMPIEN:  Right.

9          THE COURT:  Yeah, okay, I got you.  All right.

10          MR. STEMPIEN:  Okay.

11          THE COURT:  Go on.

12          MR. STEMPIEN:  That's it.  That's all.

13          THE COURT:  All right.  Thank you all.  I'm going to

14  rule on this motion now.

15      Based on the argument presented in -- in the hearing

16  today and if this was not 100% clear in the papers filed by

17  the moving party and by the city before today's hearing, but

18  in the hearing it's now clear, that the moving party Mr.

19  McKay's theory here to entitlement from the City of Detroit of

20  full payment, the $42,500, the full amount of the -- what is

21  called the settled claim amount in Paragraph 2 of the

22  settlement agreement, must be paid at 100% rather than paid at

23  some -- with some lesser -- consideration of some lesser value

24  because of the terms of the confirmed Chapter 9 plan.

25      That that argument is -- that argument is the sum -- the

1  total amount of relief and really the only theory of relief

2  that ultimately is -- is argued here by the moving party, Mr.

3  McKay.  And that means as -- as stated by Mr. Stempien,

4  counsel for Mr. McKay during the hearing made clear today, the

5  -- Mr. McKay agrees and acknowledges that the settlement

6  agreement provided for settlement of and release by him of the

7  -- his 1983 claims, or his -- his claims -- civil rights and

8  1983 claims against not only the City of Detroit whatever

9  claims there may be, but also against the individual officers

10 who were the subject of the arbitration award at issue.

11      And that's clear -- as the city argues, that's clear from

12 Paragraph 8 of the settlement agreement which by the way is in

13 the record as an exhibit to both parties' papers.  I'm looking

14 at docket 11187 as my copy here, it's Exhibit B at that point.

15 It's also Exhibit 7 to the motion, docket 11157.  That's the

16 settlement agreement.

17      The -- the settlement agreement is clear in Paragraphs 2

18 and 5 that what Mr. McKay was receiving as the sum total of

19 consideration running in his direction in exchange for

20 releasing his claims against the individual officers and the

21 city in Paragraph 8, is -- provides -- that provided in

22 Paragraphs 2 and 5 of the settlement agreement.  That is in

23 the form of Mr. McKay being given -- a provision stating that

24 the claim Mr. McKay had filed in the City of Detroit's case

25 would be amended, modified, and allowed as a general unsecured

1  non-priority claim.  That's Paragraph 2.  In the amount of

2  $42,500.

3      The priority of the claim then is general unsecured

4  non-priority.  Paragraph 5 confirms that of the settlement

5  agreement, confirms that as well.  And says, "the parties

6  agree that any settled claim is a general unsecured

7  non-priority claim subject to the treatment provided for such

8  claims under any Chapter 9 plan for the adjustment of debts

9  confirmed by the Bankruptcy Court."

10      The -- Mr. McKay then is entitled to what he's entitled

11  to from the city as the sum total of what the city is

12  obligated to -- to provide to Mr. McKay under this based on

13  this settlement agreement, is whatever treatment the confirmed

14  Chapter 9 plan in this case provided for general unsecured

15  non-priority claims.

16      And that treatment in my view clearly is the treatment

17  provided in -- to Class 14 in the confirmed plan.  The

18  treatment of Class 14 is stated in the confirmed plan.  At

19  Page 44 of the confirmed plan, a copy of the confirmed plan is

20  attached to the order confirming plan, docket number 8272 on

21  file in this case.  And that treatment is certainly quite

22  different from full payment in cash of the full amount of the

23  allowed claim as argued by Mr. McKay.  It's the treatment that

24  provides for a pro rata share of certain amount of new B notes

25  and other distributions referred to in Class 14, but it is

1  definitely not full payment in cash and it is far -- far less

2  than that of the allowed claim.

3      Now Mr. -- that's clear in my view from the words used in

4  the provision, the stated -- the treatment of Class 4 claims

5  which are defined as allowed other unsecured claims, that's a

6  defined term on Page 44 of the confirmed plan.

7      It allowed -- there's no dispute that there's an allowed

8  claim here.  The -- the question is whether this claim of Mr.

9  McKay under the settlement agreement is a "Other Unsecured

10 Claim" within the meaning of the statement of treatment under

11 Class 14 on Page 44 of the plan.

12     In my view clearly it is.  The definition of -- of other

13 unsecured claim in the definitions of the confirmed plan on

14 Page 21 to 22, Paragraph 262 in my view, although you have to

15 parse through it, it's -- it's -- it's clear and unambiguous

16 that that includes the general unsecured non-priority claim of

17 the type which Mr. McKay was given as an allowed claim in this

18 Chapter 9 bankruptcy case under the confirmed Chapter 9 plan

19 by this settlement agreement, Paragraphs 2 and 5.

20     Mr. McKay has relied upon a provision in the confirmed

21 plan on Page 62 of the confirmed plan.  Again it's docket

22 8272.  The Paragraph O on that page which says for purposes

23 irrelevant to this motion, in -- in essence says that the

24 plan, the confirmed plan does not discharge or impair the

25 allegations of the city that the city otherwise has to

1  indemnify, defend, reimburse, exculpate, advanced fees and

2  expenses to or limit the liability of officers and employees

3  of the city.

4      As the movant's counsel acknowledged I think in today's

5  hearing, it is clear that the city's obligation to indemnify,

6  defend, reimburse, et cetera its employees, that was not

7  discharged given the language in Paragraph O on Page 62 of the

8  confirmed plan and otherwise, is an obligation that runs of

9  the city to its employees and not an obligation the city has

10  or that runs to any third party claimants who make claims

11  against employees and officers of the city like Mr. McKay.

12      And so the settlement agreement in my view and its

13  reference -- its language in Paragraphs 2 and 5 of the

14  settlement agreement, is clear and unambiguous given the clear

15  and unambiguous language of the confirmed Chapter 9 plan, that

16  the treatment of the allowed $42,500 claim that Mr. McKay has

17  under the settlement agreement or under the Chapter 9 plan, is

18  the treatment provided by in -- to holders of Class 14 claims

19  under the confirmed plan that I've already referred to and

20  nothing else and nothing more.

21      The city has no other obligation in my view under this

22  settlement agreement and under the confirmed plan than that to

23  Mr. McKay. The -- and so Mr. McKay's motion which seeks an

24  order requiring the city to pay the full $42,500 allowed

25  amount of his claim is relief that cannot be granted, it would

1   be inconsistent with the confirmed plan.

2       And the Court must reject Mr. McKay's motion and

3   arguments to the contrary.  So for that -- those reasons Mr.

4   McKay's motion will be denied.  I will prepare and enter an

5   order reflecting this ruling and denying the motion.  Thank

6   you.

7           MR. STEMPIEN:  Thank you, Your Honor.

8           THE COURT:  The next motion then that I want to hear

9   that's on our agenda is the -- the motion filed by the city

10  seeking relief against Rodrick Siner.

11      For the record this motion was filed by the city on May

12  12, 2016.  It is at docket number 11159.  It's entitled City

13  of Detroit's motion for the entry of an order enforcing the

14  plan of adjustment injunction and the bar date order against

15  Rodrick Siner.

16      Now Mr. Spinner, you're on your feet.  You're

17  representing the city today in this hearing on this motion.

18  For the record I will ask, I think I know the answer, but I

19  will ask whether Rodrick Siner is present or if there's anyone

20  here on behalf of Mr. Siner.  I hear nothing.  Mr. Siner has

21  failed to appear at this hearing either in person or through

22  any attorney.

23      And the Court and the city counsel may well know why that

24  is or have good reason to suspect why that is, namely that Mr.

25  Siner is in prison in Alabama at the moment and did not try to