STATE OF MICHIGAN

IN THE WAYNE COUNTY CIRCUIT COURT

DETROIT PUBLIC LIBRARY
COMMISSION and DETROIT PUBLIC
LIBRARY,

     Plaintiffs,

v.

INTERNATIONAL UNION, UNITED
AUTO WORKERS; UNITED AUTO
WORKERS LOCAL 2200; MICHIGAN
COUNCIL 25, LOCAL UNIONS 1231 and
1259, OF THE AMERICAN FEDERATION
OF STATE, COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO;
INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 324;
MICHAEL WELLS, MARILYN QUIRK,
LAURIE STUART, BEATRICE MANSON,
GWENDOLYN BEASLEY, DORTHA
SIMPSON, RONALD BRYANT, KATRINA
KELLY, CHRISTOPHER EMBRY,
KATHRYN KENGEL, CLEDOS POWELL
and ROSEMARY PATTERSON
(individually, and as representatives of a
requested class of all similarly situated
persons)

     Defendants.

Case No. 15-006495-CL

Hon. Leslie Kim Smith

---

## SETTLEMENT AGREEMENT

This Settlement Agreement is between: **(1)** Detroit Public Library Commission (the "Library Commission") and Detroit Public Library ("DPL"); **(2)** International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America and its Local 2200 ("UAW"); **(3)** Michigan Council 25, Local Unions 1231 and 1259, of the American Federation of State, county, and Municipal Employees, AFL-CIO ("AFSCME"); **(4)** International Union of Operating Engineers, Local 324 ("IUOE"); **(5)** Michael Wells, Marilyn Quirk, and Laurie Stuart, on behalf of themselves and as Class Representatives of the proposed UAW Subclass; **(6)** Beatrice Manson, Gwendolyn Beasley, Dortha Simpson, Ronald Bryant, and Katrina Kelly, on behalf of themselves and as Class Representatives of the proposed AFSCME Subclass; **(7)** Christopher Embry and Kathryn Kengel, on behalf of themselves and as Class Representatives of the proposed IUOE Subclass; and **(8)** Cledos Powell and Rosemary Patterson on behalf of themselves and as Class Representatives of the proposed Non-Union Subclass. "Settlement Agreement" or "Agreement" refers to this document and all attached Exhibits. Certain capitalized terms have the meanings given them in Section 1.

The Parties agree as follows:

WHEREAS, the Library Commission and DPL filed the Class Action Litigation seeking a declaratory judgment that the modification of certain pension and post-retirement health-care related programs for employees and retirees of the DPL, including both those presently employed by or retired from DPL bargaining unit or non-bargaining unit positions, in connection with the City of Detroit's Chapter 9 bankruptcy did not violate collective bargaining agreements, the Michigan Public Employee Relations Act, the Michigan Constitution, or any other law;

WHEREAS, Defendants deny the allegations in the Class Action Litigation and oppose the relief sought by the Library Commission and DPL; and

WHEREAS, the Parties enter into this Settlement Agreement to resolve the Class Action Litigation and release the claims against the Library Parties as provided in Section 6 of this Agreement.

The Parties agree:

## 1. *Definitions.*

1.1 *AFSCME Subclass* means those DPL employees that are AFCSME bargaining unit members, as well as those DPL retirees who, at the time of their retirement from DPL, were AFSCME bargaining unit members (including, with respect to such DPL retirees, all of their respective surviving spouses and eligible dependents).

1.2 *Appellate Proceedings* means any appeal in the Class Action Litigation, including, but not limited to, any appeal to the Michigan Court of Appeals, applications for leave to appeal to the Michigan Supreme Court, or any other proceeding for review by an appellate court with the ability to overturn the Judgment (defined below).

1.3 *Class* means those in the AFSCME Subclass, the IUOE Subclass, the UAW Subclass, and the Non-Union Subclass.

1.4    *Class Action Litigation* means the civil action entitled *Detroit Public Library Commission, et al v. UAW, et al.*, Civil Action No. 15-006495-CL, in Wayne County Circuit Court, as may be subsequently amended.

1.5    *Class Counsel* means, if approved by the Court, Michael B. Nicholson and the law firm of Nicholson Feldman LLP, for the UAW Subclass; Richard G. Mack, Jr. and the law firm of Miller Cohen PLC, for the AFSCME Subclass; Andrew Nickelhoff and the law firm of Sachs Waldman PC for the IUOE Subclass; and Frank W. Jackson and the Law Office of Frank W. Jackson III PLLC, for the Non-Union Subclass.

1.6    *Class Member* means a member of the Class. A list of Class Members is attached as Exhibit 1. If, after the Settlement Agreement Effective Date, the Library parties or any class counsel believes that an individual has been erroneously included or excluded from Exhibit 1, the inclusion or exclusion will be brought to the attention of the other party. If the parties cannot agree as to the inclusion or exclusion of an individual on Exhibit 1, the disagreement may be submitted to the court for resolution.

1.7    *Class Representatives* means collectively Michael Wells, Marilyn Quirk, and Laurie Stuart for the UAW Subclass; Beatrice Manson, Gwendolyn Beasley, Dortha Simpson, Ronald Bryant, and Katrina Kelly for the AFSCME Subclass; Christopher Embry and Kathryn Kengel for the IUOE Subclass; and Cledos Powell and Rosemary Patterson for the Non-Union Subclass.

1.8    *Court* means the Wayne County Circuit Court.

1.9    *Defendants* means those individuals and entities named as defendants in the Class Action Litigation.

1.10    *Final* means, without any material modification to the Judgment, the earlier of: (a) if no Appellate Proceedings have been filed, expiration of the time period for such Appellate Proceedings to have been filed; (b) any final dismissal or withdrawal of all Appellate Proceedings that were timely filed; or (c) the date of final affirmance following any Appellate Proceedings, including the expiration of the time for motions for reconsideration or rehearing, and if such reconsideration or rehearing motions are granted, the date of final dismissal or withdrawal or the final affirmance of the Appellate Proceedings.

1.11    *Judgment* means the Final Order And Judgment Approving Class Action Settlement substantially in the form attached as Exhibit 2.

1.12    *IUOE Subclass* means those DPL employees that are IUOE bargaining unit members, as well as those DPL retirees who, at the time of their retirement from DPL, were IUOE bargaining unit members (including, with respect to such DPL retirees, all of their respective surviving spouses and eligible dependents).

1.13    *Library Parties* means the Library Commission, DPL, and all of their respective past and present agents, representatives, employees, managers, officers, executives, members, insurers, attorneys, investigators, administrators, successors and assigns, in any capacity.

1.14 *Non-Union Subclass* means those DPL employees that are not AFSCME, UAW, or IUOE bargaining unit members, as well as those DPL retirees who, at the time of their retirement from DPL, were DPL employees but were not AFSCME, UAW or IUOE bargaining unit members, (including, with respect to such DPL retirees, all of their respective surviving spouses and eligible dependents).

1.15 *Notice* means the Notice approved by the Court notifying Class Members of the preliminary approval of this Settlement Agreement by the Court substantially in the form of Exhibit 3.

1.16 *Order of Preliminary Approval* is the order of the Court preliminarily approving this Settlement Agreement, and providing for Notice to the Class, substantially in the form of Exhibit 4.

1.17 *Party or Parties* means the named parties to this Settlement Agreement.

1.18 *Released Claims* means any and all claims, rights, demands, obligations, actions, causes of action, grievances, suits, cross-claims, matters, issues, debts, liens, contracts, liabilities, agreements, costs, losses, actual or compensatory damages, penalties, exemplary or punitive damages, restitution and expenses of any nature, including Unknown Claims (as defined herein), whether under federal, state or local statutes, regulations, ordinances, or common law, which any Class Member, their heirs, executors, administrators, agents, attorneys, representatives or assigns, have, had, or may have in the future against the Library Parties which arise from either: (a) any modification of pension, retirement, annuity, or post-retirement health-care related program, benefit, payment, or accrual for employees or retirees of the DPL, or their respective spouses or dependents, which arise from the benefit modifications provided for in the City of Detroit Plan for the Adjustment of Debts, as executed by the bankruptcy court, Case No. 13-58657; or (b) the UAW's grievances concerning such modifications. Released Claims do not include claims for enforcement of this Settlement Agreement or the Judgment.

1.19 *Settlement Agreement Effective Date* means the date the Judgment becomes Final.

1.20 *Unknown Claims* means all claims against the Library Parties arising out of any matter covered by the Released Claims that the Class Members do not know or suspect to exist in their favor at any time before the Settlement Agreement Effective Date, which if known by them would have materially affected their settlement with the DPL and release of the Library Parties, and if applicable, including any claims under Section 1542 of the California Civil Code, Section 28-1-1602 of the Montana Code, Section 9-13-02 of the North Dakota Century Code, and Section 20-7-11 of the South Dakota Codified Laws Section, each of which states as follows:

> *A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.*

or under any applicable and comparable law or common law of any state or territory of the United States. By operation of the Judgment in the Class Action Litigation, the Unknown Claims of all Class Members shall be barred upon the Settlement Agreement Effective Date.

1.21     *UAW Subclass* means those DPL employees who are UAW bargaining unit members, as well as those DPL retirees who, at the time of their retirement, were UAW bargaining unit members, (including with respect to such DPL retirees all of their respective surviving spouses and eligible dependents).

## 2. *Benefits of Settlement.*

2.1     In deciding to enter into this Settlement Agreement, the Parties considered the uncertainty, cost, risk, and delay associated with continuing the Class Action Litigation, and, given these considerations, the Parties determined that it is beneficial that the Class Action Litigation be settled on the terms set forth in this Settlement Agreement.

## 3. *No Admissions.*

3.1     The Library Parties deny any wrongdoing or legal liability arising out of any of the issues raised in the Class Action Litigation. Neither this Settlement Agreement, any document referred to herein, nor any action effectuating this Settlement Agreement may be construed as an admission of wrongdoing or liability by the Library Parties.

3.2     The Class Representatives and UAW, AFSCME, and IUOE continue to contend that the grievances, claims, and defenses made on behalf of the Class are meritorious. Neither this Settlement Agreement, any document referred to herein, nor any action effectuating this Settlement Agreement may be construed as an admission that Defendants' legal positions lack merit.

3.3     This Settlement Agreement, the Judgment, and any related documents shall not be introduced in evidence in any proceeding in any court or agency or other tribunal as an admission of the merits or demerits of any claim or defense in the Class Action Litigation, but may be introduced in proceedings to secure Court approval of the Settlement Agreement or to enforce the terms of the Settlement Agreement or Judgment.

## 4. *Order of Preliminary Approval and Notice to Class.*

4.1     On or before one week after the last signature date on this Agreement, the Parties shall submit this Settlement Agreement to the Court and jointly shall seek from the Court an Order of Preliminary Approval that includes approval of the Notice to be sent to the Class Members.

4.2     Within 14 days after entry of the Order of Preliminary Approval, DPL shall: (i) mail a copy of the Notice to each Class Member at his or her last known address as listed in Exhibit 1; (ii) file a proof of such mailing with the Court; and (iii) provide copies of the documents identified in Sections 4.2 (i) and (ii) to Class Counsel.

4.3     The Notice sent to Class Members shall be accompanied by a copy of the Settlement Agreement, including all of its Exhibits.

4.4    The Parties, including Class Counsel, Class Representatives, and counsel for the Library Commission and DPL, agree to cooperate and to promptly make the necessary filings with the Court to expeditiously obtain the preliminary approval of the Settlement Agreement by the Court and the entry of the Judgment.

## 5. *Judgment to be Entered Approving the Settlement.*

5.1    Upon Court approval of this Settlement Agreement and completion of the preliminary procedures prescribed by MCR 3.501, the Parties will request that a Judgment be entered substantially in the form of Exhibit 2.

## 6. *Release.*

6.1    Upon entry of the Judgment and the Judgment becoming Final, and in accordance with the provisions of the Judgment, for good and sufficient consideration, the receipt of which is hereby acknowledged, each Class Representative, Class Member, and anyone claiming on behalf of or through any Class Representative or Class Member (including but not limited to any Eligible Dependents of a Class Member), shall have, fully, finally and forever released and discharged all Released Claims against the Library Parties.

6.2    Upon entry of the Judgment and the Judgment becoming Final, and in accordance with the provisions of the Judgment, the Judgment shall forever bar each Class Representative, Class Member, and anyone claiming on behalf of or through a Class Member (including but not limited to any Eligible Dependents of a Class Member), from instituting or prosecuting, either directly or indirectly, any Released Claims against the Library Parties. Class Counsel, UAW, IUOE and AFSCME agree not to sponsor or support litigation or other claims of any kind against the Library Parties by any non-Class Member in any way arising out of the pension and post-retirement healthcare benefit modifications provided for in the City of Detroit Plan for the Adjustment of Debts, as executed by the bankruptcy court, Case No. 13-58657.

6.3    This Settlement Agreement does not waive any claim or defense that may arise regarding enforcement of this Settlement Agreement or the Judgment.

## 7. *Settlement Terms.*

7.1    In complete settlement of the Class Action Litigation, DPL and the Library Commission agree as follows:

(a)    For those Class Members who: (1) were a DPL retiree, or a surviving spouse of a deceased DPL retiree, as of December 31, 2014 or are currently or subsequently become a surviving spouse of a deceased DPL retiree who retired on or before December 31, 2014; and (2) are otherwise entitled to receive a pension payment from the City of Detroit General Retirement System ("GRS"), DPL will make a $1,000 annual payment to such DPL retiree, or surviving spouse, for each of the calendar years 2016 through and including 2030 (the "Eligibility Period"), and payable as provided in this Section 7.1(a). Such $1,000 annual payments are in addition to the recipients' GRS pension benefits otherwise payable to them.

In order to qualify for such payment, the eligible DPL retiree or surviving spouse must be alive and drawing a pension at some point during the calendar year during the Eligibility Period for which the $1,000 annual payment is to be made. The $1,000 annual payment will be included in the eligible DPL retiree's or surviving spouse's February pension check from GRS in the calendar year that next follows each particular year during the Eligibility Period, paid on or about March 1 that calendar year. For example, the retiree or surviving spouse must be alive and drawing a pension at some time during the calendar year 2016 in order to be eligible for 2016's $1000 payment, which GRS will make in the February 2017 pension check, payable on or about March 1, 2017. In the event of the post-retirement death of the DPL retiree or surviving spouse during a calendar year for which the retiree or surviving spouse is eligible to receive a $1000 payment, a single payment will be made to the surviving spouse or named GRS pension beneficiary as appropriate or, in the absence thereof, the estate of the deceased retiree or surviving spouse as applicable, on or about March 1 of the following calendar year. For avoidance of doubt, an eligible surviving spouse is entitled to only one annual $1,000 payment (not two payments) for the calendar year during the Eligibility Period in which the eligible DPL retiree dies.

By way of further illustration: A retiree without a surviving spouse who is alive and drawing a pension in 2016 and, therefore, becomes eligible for the 2016 calendar year benefit to be paid in the February 2017 pension check, dies in January 2017. That retiree's GRS named beneficiary or estate, as the case may be, will receive the 2016 payment on or about March 1, 2017. That retiree's GRS named beneficiary or estate, as the case may be, will also receive a payment for calendar year 2017 on or about March 1, 2018 because the retiree was alive and drawing a pension in calendar year 2017. The retiree's named GRS beneficiary or estate, as the case may be, would receive no further $1000 payments provided for herein.

The additional pension payments provided herein are in a fixed amount and are not subject to the GRS COLA provision. These payments will be treated as pension payments for all tax purposes and included in the DPL retiree's or surviving spouse's 1099R as appropriate. Other than as described above, no such additional payments under this Section 7.1(a) will otherwise be made to or on behalf of deceased retirees or spouses, or to surviving spouses not drawing a pension. No such additional payments under this Section 7.1(a) will be made for any year after 2030, which is payable in the February 2031 pension check from GRS as described above.

(b)     For those Class Members who: (1) retired from DPL after December 31, 2014 and on or before June 30, 2017, or are currently or subsequently become surviving spouses of such deceased DPL retirees; and (2) are otherwise entitled to receive a pension payment from the City of Detroit General Retirement System ("GRS"), DPL will make a $1,500 annual payment to such DPL retiree or surviving spouse for each of the calendar years 2016, 2017, 2018, 2019 and 2020, and payable as provided in this Section 7.1(b). Such $1,500 annual payments are in addition to the recipients' GRS pension benefits otherwise payable to them.

In order to qualify for such payment, the eligible DPL retiree or surviving spouse must be alive and drawing a pension at some point during the calendar year for which the $1,500 annual

payment is made. The $1,500 annual payment will be included in the eligible DPL retiree's or surviving spouse's February pension check from GRS the following calendar year, paid on or about March 1st that calendar year. For example, the retiree or surviving spouse must be alive and drawing a pension at some time during the calendar year 2016 in order to receive 2016's $1500 payment, which GRS will make in the February 2017 pension check, payable on or about March 1, 2017. In the event of the post-retirement death of the DPL retiree or surviving spouse during the calendar year for which the retiree or surviving spouse is eligible to receive a $1500 payment, a single payment will be made to the surviving spouse or named GRS pension beneficiary as appropriate or, in the absence thereof, the estate of the deceased retiree or surviving spouse as applicable, on or about March 1 of the following calendar year. For avoidance of doubt, an eligible surviving spouse is entitled to only one annual $1,500 payment (not two payments) for the calendar year in which the eligible DPL retiree dies.

An otherwise eligible Class Member under this Section 7.1(b) who elects to retire after October 31, 2016 and whose official retirement date is on or before January 1, 2017 prior will be eligible for 2016's annual payment (made in the March 1, 2017 pension check) even if that person has not yet started drawing a pension from GRS during 2016.

The additional pension check payments provided herein are in a fixed amount and are not subject to the GRS COLA provision. The payment will be treated as a pension payment for all tax purposes and included in the DPL retiree's or surviving spouse's 1099R as appropriate. Other than as described above, no such additional payments under this Section 7.1(b) will otherwise be made to or on behalf of deceased retirees or spouses, or to surviving spouses not drawing a pension. No such additional payments under this Section 7.1(b) will be made for any year after 2020, which is payable in the February 2021 pension check from GRS as described above.

(c)     DPL will incur the administrative costs for the payments by GRS that are provided in paragraphs (a) and (b) of this Section 7.1. The DPL is responsible for fully funding the sum total amount of all the annual additional payments in this Section 7.1, to be made in each year on or before the 15th of January of the year in which the payment is to be made in the February pension check by GRS.

7.2     The Parties agree that DPL began paying to active DPL employees, on a prospective basis, the 2% base wage increase referenced in Section II, B, Term 2 of the Memorandum of Understanding dated December 19, 2014 ("MOU"), starting with the final pay period of December 2015. DPL will pay the retroactive amount of the 2% base wage increase, i.e., for the period July 1, 2015 through the first pay period of December 2015, within twenty-one (21) days after entry of the Judgment and the Judgment becoming Final. This 2% base wage increase will not be subject to any further wage adjustment before July 1, 2017, unless the Parties mutually agree otherwise, notwithstanding (i) any provisions for wage reopeners in any UAW or AFSCME or IUOE collective bargaining agreement and/or (ii) the end date of any AFSCME collective bargaining agreement before July 1, 2017.

7.3     Between the date this Agreement is signed by the Parties and the termination date of the respective existing collective bargaining agreements, DPL will not provide its current or former non-union employees with more lucrative wage increases, pension increases, or health benefit increases than it provides to its former or current UAW-represented, AFSCME-represented, and IUOE-represented employees, respectively. For any increase in wages, pension benefits, or health benefits offered to non-union former or current DPL employees, as of or after the date of this Agreement, DPL will provide the unions with advance notice of such change. This provision: (1) does not apply to individual, executive-level non-union employees at DPL; (2) does not prohibit DPL from paying wages to its employees within the salary ranges established by the City of Detroit or other legal requirements; and (3) does not prohibit DPL from employing individuals with funds under restricted grants or charitable contributions in accordance with the terms of the grant or contribution.

7.4     The Parties agree to the following terms, which are not contingent upon the Class Action settlement mechanism described herein:

(a)     DPL will follow the City of Detroit's and GRS's requirements for any special election for unused sick leave in Final Average Compensation calculations.

(b)     The parties agree to create a joint committee of union and management employees to discuss and develop initiatives to increase revenues and improve operational efficiency at DPL. The committee may make policy recommendations to the Library Commission but will not have governing authority or the ability to bind DPL or the Library Commission on fundraising or other matters.

(c)     DPL will follow the City of Detroit's and GRS's requirements for pension contributions by part-time employees.

7.5     The Parties shall each bear their own respective costs and attorney's fees in the Class Action Litigation and any Appellate Proceedings, unless otherwise agreed to in writing.

## 8. *Conditional Class Certification.*

8.1     For settlement purposes only, the Parties agree that, as part of the Order of Preliminary Approval and the Notice, the Court may make preliminary findings and enter an order granting conditional certification of the Class, subject to final findings and certification in the Judgment, and appointing the Class Representatives, as well as Class Counsel, as representatives, respectively, for each of the four Subclasses that comprise the Class.

8.2     The Library Commission and DPL do not consent to certification of the Class for any purpose other than to effectuate the settlement of the Class Action Litigation. If this Settlement Agreement is not approved by the Court or is terminated pursuant to its terms, the conditional order certifying the Class, and all preliminary and/or final findings regarding the Court's conditional class certification order or any other matters, shall be automatically vacated upon notice of same from any Party to the Court, and this Class Action Litigation shall proceed

as though the Class had never been certified and such findings had never been made, without prejudice to any Parties' ability to proceed with or oppose a motion for class certification thereafter.

9. *Contingencies.*

9.1    This Agreement is subject to the approval of the terms of Sections 7.1(a) and (b) by the General Retirement System Board of Trustees at its July 6, 2016 meeting.

9.2    As a result of certain bankruptcy orders and at the insistence of the General Retirement System, the benefit set forth in Sections 7.1(a) and (b) will be subject to approval by the Bankruptcy Court for the Eastern District of Michigan having jurisdiction over the City of Detroit's Chapter 9 bankruptcy via entry of an order stipulated by the City of Detroit and the parties hereto.

9.3    This Agreement is subject to: (a) approval by each of the Class Representatives; and (b) formal ratification by AFSCME, UAW and IUOE, with ratification votes to be scheduled on or before July 26, 2016. Execution of this Agreement by counsel for defendants on July 1, 2016 shall not constitute such approvals or ratifications.

9.4    This Agreement is subject to formal approval by the Detroit Library Commission. Execution of this Agreement by counsel for Plaintiffs on July 1, 2016 shall not constitute such approval.

**10. *Effect of Disapproval and Termination.***

10.1    In the event this Settlement Agreement is terminated for any reason provided in this Section 10, the positions of the Parties to this Settlement Agreement shall be deemed to have reverted to what they were as of the date and time immediately prior to the execution of this Settlement Agreement and the Parties shall, except as otherwise expressly provided herein, proceed in all respects as if this Settlement Agreement and related orders had not been executed. Each Party agrees that, in the event that this Settlement Agreement is terminated, it will not offer or attempt to place in evidence, or otherwise refer to, this Settlement Agreement, the negotiations which led to its signing, or its termination, in any subsequent proceeding as an admission of liability or of the merits or demerits of any claim or defense in the Class Action Litigation. The parties further agree that, in the event this Settlement Agreement is terminated, the Defendants shall have thirty (30) days from the date of termination to file their responsive pleadings to Plaintiffs' Complaint, which responsive pleadings will be deemed to be timely.

10.2    Either AFSCME, UAW, IUOE, or any of the Class Representatives, as well as DPL and the Library Commission, shall each have the individual option of terminating this Settlement Agreement upon written notice of termination to the other Parties, if:

(a)    The Court declines to certify the Class under MCR 3.501; or

(b)    The Court declines to enter the Order of Preliminary Approval without material modification; or

(c)    The Court declines to enter the Judgment incorporating this Settlement Agreement without material modification after the fairness hearing; or

(d)    The Judgment fails to become Final.

In the event of termination of this Settlement Agreement by any individual party, the Settlement Agreement terminates as to all parties.

## 11. *Miscellaneous Provisions.*

11.1    The attached Exhibits are incorporated into this Settlement Agreement. References in this Settlement Agreement to "Sections" and "Exhibits" refer to the Sections and Exhibits of this Settlement Agreement unless otherwise specified.

11.2    This Settlement Agreement may be amended or modified only by a written instrument signed by the Class Representatives then living, by Class Counsel, by UAW, IUOE and AFSCME, by DPL and the Library Commission. Any proposed change that substantially modifies the terms of the Settlement Agreement must be agreed to by the Class Representatives then living and approved by the Court after notice to the Class or satisfaction of other requirements as directed by the Court.

11.3    The waiver by one Party of: (a) any breach by the other party of; or (b) any other right to enforce or claim or benefit under, this Settlement Agreement shall not be deemed a waiver of any other breach of, or right to enforce or claim or benefit under, this Settlement Agreement.

11.4    This Settlement Agreement, including its exhibits, constitutes the entire agreement between the Parties, and no representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement, other than the representations, warranties and covenants contained in this Settlement Agreement. Without limitation, this Settlement Agreement completely supersedes and replaces the Parties' Memorandum of Understanding dated December 19, 2014, as amended.

11.5    The Class Representatives expressly authorize Class Counsel for their respective Subclass to take all appropriate action required or permitted to be taken by the Class Representatives pursuant to this Settlement Agreement to effectuate its terms and also expressly authorize such Class Counsel to enter into any modifications or amendments to this Settlement Agreement on behalf of them if and as such Class Counsel deems appropriate, from the date this Settlement Agreement is signed until the Judgment is entered.

11.6    The Class Representatives believe that the settlement provided for by this Settlement Agreement is fair, reasonable, adequate and in the interest of the Class and, therefore, approve, and do not object to or request that the Court disapprove, any part of this Settlement Agreement.

11.7    This Settlement Agreement may be executed in two or more counterparts. All executed counterparts and each of them shall be deemed to be one of the same instrument,

provided that counsel for the Parties to this Settlement Agreement shall exchange among themselves original signed counterparts.

11.8    This Settlement Agreement shall be binding on, and inure to the benefit of, the successors and assigns of the Parties. The Settlement Agreement is not assignable by the Class Representatives or Class Members.

11.9    DPL and the Library Commission represent and warrant that they have full power and authority to execute and deliver this Agreement and to perform the obligations hereunder.

11.10   All terms of this Settlement Agreement and its Exhibits shall be governed and interpreted according to Michigan law.

11.11   Any notice, request, information or other document to be given under this Settlement Agreement to any of the Parties by any other party (except for the Notices to be sent to Class Members) shall be in writing, and delivered personally, or sent by UPS, Federal Express or other carrier, or sent by registered or certified mail, postage prepaid, as follows:

> If to UAW, the UAW Subclass, Class Representatives
> of the UAW Subclass, or Class Counsel to the
> UAW Subclass, addressed to:
>
> > Michael B. Nicholson
> > Nicholson Feldman LLP
> > 232 Nickels Arcade
> > Ann Arbor, Michigan  48104-2410
>
> If to AFSCME, the AFSCME Subclass, Class Representatives
> of the AFSMCE Subclass, or Class Counsel to the
> AFSMCE Subclass, addressed to:
>
> > Richard G. Mack, Jr.
> > Miller Cohen PLC
> > 600 W. Lafayette Blvd., Fourth Floor
> > Detroit, Michigan 48226-2711
>
> If to IUOE, the IUOE Subclass, Class Representatives
> of the IUOE Subclass, or Class Counsel to the
> IUOE Subclass, addressed to:
>
> > Andrew Nickelhoff
> > Sachs Waldman PC
> > 221 E. Jefferson Ave., Suite 200
> > Detroit, Michigan  48207

If to Non-Union Subclass, Class Representatives
of the Non-Union Subclass, or Class Counsel
to the Non-Union Subclass, addressed to:

> Frank W. Jackson
> Law Office of Frank W. Jackson, III PLLC
> 19401 W. McNichols Rd., Suite E
> Detroit, Michigan 48219

If to the Library Commission or DPL, addressed to:

> Eric J. Pelton
> Kienbaum Opperwall Hardy & Pelton, P.L.C.
> 280 N. Old Woodward Ave., Suite 400
> Birmingham, Michigan 48009

11.12 All Parties shall be deemed to have drafted this Agreement and any ambiguity will not be construed against any Party.

11.13 This Settlement Agreement is solely for the benefit of the Library Parties, Class Representatives, and Class Members, the UAW, AFSCME, and IUOE, and shall not confer any right upon any other Parties.

**12. *Signatures*.**

IN WITNESS WHEREOF, this Settlement Agreement is executed by Class Representatives and the respective Class Counsel for each Subclass, and duly-authorized representatives for the Library Commission, DPL, UAW, AFSCME, IUOE, and Non-Union Defendants.

UAW SUBCLASS REPRESENTATIVES:

_Laurie Shuark_                          Dated: _10·19·2016_

_[signature]_                            Dated: _10 - 19 - 2016_

_Marilyn C. Luick_                       Dated: _10 - 21 - 2016_

AFSCME SUBCLASS REPRESENTATIVES:

_____                  Dated:_____

_____                  Dated:_____

_____                  Dated:_____

_____                  Dated:_____

_____                  Dated:_____


IUOE SUBCLASS REPRESENTATIVES:

_____                  Dated:_____

_____                  Dated:_____

_____                  Dated:_____

_____                  Dated:_____

_____                  Dated:_____

UAW SUBCLASS REPRESENTATIVES:

_____     Dated:_____

_____     Dated:_____

_____     Dated:_____


AFSCME SUBCLASS REPRESENTATIVES:

Ronald Bryant                          Dated: _10-27-2016_

Dortha Simpson                         Dated: _10/27/2016_

Katrina Kidd                           Dated: _10/28/2016_

Bertrice M___                          Dated: _10-28-2016_

Gwendolyn F. Beasley                   Dated: _10-28-2016_


IUOE SUBCLASS REPRESENTATIVES:

_____     Dated:_____

_____     Dated:_____

_____     Dated:_____

_____     Dated:_____

_____     Dated:_____

UAW SUBCLASS REPRESENTATIVES:

_____     Dated:_____

_____     Dated:_____

_____     Dated:_____


AFSCME SUBCLASS REPRESENTATIVES:

_____     Dated:_____

_____     Dated:_____

_____     Dated:_____

_____     Dated:_____

_____     Dated:_____


IUOE SUBCLASS REPRESENTATIVES:

*Katharyn Kengel*                    Dated: *10-28-2016*

_____     Dated:_____

_____     Dated:_____

_____     Dated:_____

_____     Dated:_____

UAW SUBCLASS REPRESENTATIVES:

_____          Dated:_____

_____          Dated:_____

_____          Dated:_____

AFSCME SUBCLASS REPRESENTATIVES:

_____          Dated:_____

_____          Dated:_____

_____          Dated:_____

_____          Dated:_____

_____          Dated:_____

IUOE SUBCLASS REPRESENTATIVES:

_____          Dated:_ 10 - 27 - 16 _____

_____          Dated:_____

_____          Dated:_____

_____          Dated:_____

_____          Dated:_____

NON-UNION SUBCLASS REPRESENTATIVES:

_Rosemary Patterson_                    Dated: _10-20-2016_
(Rosemary Patterson)

_Cledos Powell_                         Dated: _10/20/2016_
CLEDOS POWELL

FOR UAW:

By:_____             Dated:_____

    Its:_____

FOR AFSCME:

By:_____             Dated:_____

    Its:_____

FOR IUOE:

By:_____             Dated:_____

    Its:_____

FOR THE DETROIT PUBLIC LIBRARY COMMISSION
AND THE DETROIT PUBLIC LIBRARY:

By:_____             Dated:_____

    Its:_____

258058

NON-UNION SUBCLASS REPRESENTATIVES:

_____          Dated:_____

_____          Dated:_____

FOR UAW:

By: _Laurie Sheart_                      Dated: _10 · 19 · 2016_
  Its: _President_

FOR AFSCME:

By:_____       Dated:_____

  Its:_____

FOR IUOE:

By:_____       Dated:_____

  Its:_____

FOR THE DETROIT PUBLIC LIBRARY COMMISSION
AND THE DETROIT PUBLIC LIBRARY:

By:_____       Dated:_____

  Its:_____

258058

Page 15 of 16

NON-UNION SUBCLASS REPRESENTATIVES:

_____     Dated:_____

_____     Dated:_____

FOR UAW:

By:_____     Dated: _____

   Its:_____

FOR AFSCME:

By: _la Lenton Maxwell_     Dated: _10 27 16_

   Its: _AFSCME Council 25 Rep_

FOR IUOE:

By:_____     Dated:_____

   Its:_____

FOR THE DETROIT PUBLIC LIBRARY COMMISSION
AND THE DETROIT PUBLIC LIBRARY:

By: _Ellen Vieu-Adams_     Dated: _10 17 2016_

  Its _President, Detroit Library Commission_

258058

NON-UNION SUBCLASS REPRESENTATIVES:

_____          Dated:_____

_____          Dated:_____

FOR UAW:

By:_____          Dated: _____

    Its:_____

FOR AFSCME:

By:_____          Dated:_____

    Its:_____

FOR IUOE:

By:_____          Dated: _10-27-16_

    Its: Business Rep.

FOR THE DETROIT PUBLIC LIBRARY COMMISSION
AND THE DETROIT PUBLIC LIBRARY:

By:_____          Dated:_____

    Its:_____

258058

**Settlement Agreement Exhibits**

1.   List of Class members

2.   Form of Final Order and Judgment approving class action settlement

3.   Form of Notice

4.   Form of order of Preliminary Approval