## Index of Exhibits

1. Exhibit 1 - Order Approving Settlement

2. Exhibit 2 - Portion of Release

3. Exhibit 3 - Case Law

# EXHIBIT 1

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

STEVEN WOLAK, as Personal Representative
of the Estate of CHRISTOPHER WOLAK,
Deceased,

        Plaintiff,

-vs-

CITY OF DETROIT, a Municipal Corporation
and AUDRIAN HARDY,

        Defendants.

Case No: 2012-001060-NI
HON. Jeanne Stempien

12-001060-NI
FILED IN MY OFFICE
WAYNE COUNTY CLERK
5/13/2013 3:21:51 PM
CATHY M. GARRETT
/s/ Angela Strong-Cooper

| | |
|---|---|
| GEOFFREY N. FIEGER (P30441) <br> MICHAEL T. RATTON (P42399) <br> Attorneys for Plaintiff <br> *FIEGER, FIEGER, KENNEY, GIROUX* <br> *& DANZIG, P.C.* <br> 19390 W. 10 Mile Road <br> Southfield, MI 48075 <br> (248) 355-5555 | JERRY ASHFORD (P47402) <br> Attorney for Defendants <br> *CITY OF DETROIT LAW DEPARTMENT* <br> 2 Woodward Avenue <br> Suite 500 <br> Detroit, MI 48226 <br> (313) 237-3089 |

**ORDER APPROVING PLAINTIFF'S MOTION TO APPROVE SETTLEMENT
AND FOR AUTHORITY TO DISTRIBUTE PROCEEDS PENDING DETROIT CITY
COUNCIL APPROVAL AND REQUEST FOR EVIDENTIARY HEARING
REGARDING ATTORNEYS LIEN**

At a session of said Court held in the City of
Detroit, County of Wayne and State of
Michigan on    5/13/2013

PRESENT: HON.      Jeanne Stempien
                            CIRCUIT COURT JUDGE

This matter having come before the Court on Plaintiff's Motion to Approve Settlement

and for Authority to Distribute Proceeds Pending Detroit City Council Approval and the Court

being fully advised in the premises;

IT IS HEREBY ORDERED that the proposed settlement of Three Hundred Seventy-

Five Thousand Dollars and 00/100 ($375,000) is approved after having determined that the

settlement is in the best interest of the Estate of Christopher Wolak, Deceased and Detroit City

Council Approval.

IT IS FURTHER ORDERED that the settlement proceeds from the above approved settlement of Three Hundred Seventy-Five Thousand Dollars and 00/100 ($375,000) shall be distributed as follows:

(a) That the Court authorize distribution of $8,081.95 to Fieger, Fieger, Kenney, Giroux, Danzig & Harrington, P.C., said sum representing costs expended in pursuing this matter.

(b) That the Court authorize distribution of $1,489.84 to the Law Offices of Richard R. Mannausa, said sum representing costs expended by Plaintiff's prior counsel.

(c) That the Court authorize distribution of $5,000 to the law firm of Fieger, Fieger, Kenney, Giroux, Danzig & Harrington, P.C., to be held in escrow for a period of thirty (30) days pending future costs. All sums remaining after payment shall be refunded to the client on a pro-rated basis of two-thirds (2/3) to the client, one-third (1/3) to Fieger, Fieger, Kenney, Giroux & Danzig, P.C.;

(d) That the Court authorize the distribution of $120,142.74 to Fieger, Fieger, Kenney, Giroux & Danzig, P.C., said sum representing attorney fees (one-third, 1/3) payable pursuant to the agreement between Fieger, Fieger, Kenney, Giroux, Danzig & Harrington, P.C., and Plaintiff;

(e) That the Court authorize the distribution of $2,250 to Hainer & Berman, P.C,, said sum representing fees to date for probate services to the Estate;

(f) That the Court authorize distribution of the net proceeds herein, which after deduction of the above-cited costs and fees, total as follows:

| | | |
|---|---|---|
| a. | Steve Wolak (father of the deceased): | $119,017.35 |
| b. | Francine Wolak (mother of the deceased): | $119,017.35 |
| c. | Samantha Wolak | $ 0.00 |
| d. | Geraldine Marini (maternal grandmother of the deceased); | $ 0.00 |
| e. | Rose Ann Wolak (paternal grandmother of the deceased); | $ 0.00 |
| f. | Stanley C. Wolak (paternal grandfather of the deceased). | $ 0.00 |

# EXHIBIT 2

# RELEASE
(without Medicare Affidavit)

Matter No: A20000-003328

Case. No: 12-001060 NI

STEVEN WOLAK, personal representative of the Estate of Christopher Wolak (hereinafter "Plaintiff"), in consideration of the sum of Three Hundred Seventy-five Thousand Dollars and No Cents ($375,000.00) and an entry of an order dismissing the underlying civil action referenced above entitled **Steven Wolak, as Personal Representative of the Estate of Christopher Wolak v City Of Detroit and Audrian Hardy,** hereby releases the **CITY OF DETROIT,** a Michigan municipal corporation, and each employee, agent, officer and representative, (hereinafter Collectively the "Defendant"), from all liability, actions, fees, claims and consequences of every kind which the undersigned may have against the Defendant for any loss or damages, whether presently known or unknown, that may, shall or can arise, including aggravation of any pre-existing physical or mental condition, related to any loss or damages from a bus/pedestrian accident that occurred on or about December 24, 2011 at or near Woodward Avenue near Montcalm, in Detroit, Michigan.

Payment of the above amount shall not be construed as an admission of liability by the Defendant as such payment is in compromise and settlement of liability disputed by the Defendant. This Release is not given because of any representations or statements made by anyone as to the merits, legal liability or value of the claims being released.

This RELEASE constitutes the entire understanding between the Plaintiff and Defendant. Any other agreements made by them at any time prior hereto with respect to the foregoing shall not be of any force or effect and the provisions hereof are and shall be binding upon the respective heirs, executors, affiliates, administrators, or successors of the Plaintiff forever.

The parties hereto acknowledge that receipt of the aforementioned sum is conditioned upon the approval of the Detroit City Council. Said parties understand that the Law Department will make reasonable efforts to achieve City Council approval and, subsequently, to promptly process an application for payment. Nevertheless, because these procedures take time (normally three to six months) it is hereby acknowledged that Time is _not_ of the Essence and no day certain for the issuance of any check can be given.

# EXHIBIT 3

**2013 WL 3992403**
Only the Westlaw citation is currently available.
United States District Court,
E.D. California.

V. W., a minor, by and through her
Guardian Ad Litem, Tenaya BARBER,
Individually and as Successor in Interest
of Decedent Michael White, Plaintiffs,
v.
CITY OF VALLEJO, a municipal corporation;
Robert Nichelini, in his individual and official
capacity as Chief of Police; Officers Does 1–25,
individually, jointly and severally, Defendants.

No. CIV. S–12–1629 LKK/GGH.
|
Aug. 2, 2013.

**Attorneys and Law Firms**

Benjamin Nisenbaum, John L. Burris, Law Offices of John L. Burris, Oakland, CA, for Plaintiffs.

Kelly J. Trujillo, City Attorney's Office, Vallejo, CA, John William Killeen, Orrick, Herrington & Sutcliffe, Sacramento, CA, for Defendants.

*ORDER*

LAWRENCE K. KARLTON, Senior District Judge.

*1 This civil rights lawsuit is brought by the surviving minor daughter of the decedent, Michael White, against the City of Vallejo (the "City") and its Chief of Police, Robert Nichelini (the "defendant").[1] The plaintiff, through her Guardian ad Litem, Tanaya Barber, alleges that the City's police officers killed the decedent while they were using a taser gun during his arrest. Both defendants move for judgment on the pleadings, asserting that the cases against them were discharged in the City's bankruptcy.

For the reasons that follow, the City's un-opposed motion for judgment on the pleadings will be granted. In addition, defendant Robert Nichelini's motion for judgment on the pleadings will be granted to the extent the lawsuit names him in his official capacity, but denied to the extent the lawsuit names him in his individual (or personal) capacity.

**I. BACKGROUND**
On May 23, 2008, the City of Vallejo filed for Chapter 9 bankruptcy protection. Defendants' Request for Judicial Notice ("RfJN") Exh. 1 (ECF No. 13-2, pp. 6–84). On June 15, 2010, while the bankruptcy case was pending, the City's police officers allegedly killed the decedent, *see* Complaint ¶ 16, wrongfully and in violation of his and his daughter's civil rights. No later than December 15, 2010, plaintiff filed tort claims pursuant to Cal. Gov.Code §§ 910, *et seq* ... Complaint ¶ 13.[2] On August 4, 2011, the Bankruptcy Court confirmed the City's Plan (filed August 2, 2011) for the adjustment of its debts. RfJN Exh. 3 (ECF No. 13-2, pp. 86–88). According to the Plan, the City was discharged from all debts and all claims against it, with exceptions not relevant here, pursuant to "section 944 of the Bankruptcy Code" upon the "effective date" of November 1, 2011. RfJN Exh. 4 (ECF No. 13-2, pp. 90–91 (Vallejo's "Notice of November 1, 2011 Effective Date"). Plaintiff filed this lawsuit on June 18, 2012.

**II. STANDARDS**
A motion for judgment on the pleadings may be brought "[a]fter the pleadings are closed but within such time as to not delay the trial." Fed.R.Civ.P. 12(c). The court analyzes 12(c) motions in substantially the same way as it analyzes Rule 12(b)(6) motions because, "under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.' " *Chavez v. U.S.,* 683 F.3d 1102, 1108 (9th Cir.2012).

> On a motion to dismiss under Rule 12(b)(6), a court must assess whether the complaint contain[s] sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Mere conclusory statements in a complaint and "formulaic recitation[s] of the elements of a cause of action" are not sufficient. Thus, a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense.

*2 *Chavez*, 683 F.3d at 1108–09 (citations and some internal quotations omitted).[3]

### III. ANALYSIS

#### A. The City.

The City and defendant Nichelini, in his official capacity, move for a judgment on the pleadings, arguing that any claim plaintiff might have against them was discharged by the City's Chapter 9 bankruptcy and the confirmation of its Plan. Plaintiff concedes that the bankruptcy code "renders any judgment Plaintiff would get against Defendant City for the events occurring on June 15, 2010, void and thereby bars Plaintiff from pursuing her claims against Defendant City." Plaintiff's Opposition to Motion for Judgment on the Pleadings (ECF No. 19) at p. 5. Plaintiff's concession is well-taken, although some explanation is needed here.

#### 1. Timing of the discharge.

Unlike a Chapter 7 liquidation bankruptcy, in a Chapter 9 municipal bankruptcy, the bankruptcy code discharges all of the City's debt existing *as of the date of confirmation.*[4] 11 U.S.C. § 944(b)(1) ("the debtor is discharged from all debts as of the time when ... the plan is confirmed").[5] Plaintiff concedes that her claim arose on June 15, 2010. Accordingly the claims against the City, and against defendant in his official capacity-which arose after commencement of the bankruptcy, but before the confirmation date-are barred. *O'Loghlin v. County of Orange,* 229 F.3d 871 (9th Cir.2000). *O'Loghlin* addressed the status of three ADA claims against a Chapter 9 municipal bankruptcy debtor: one arose before commencement of the bankruptcy case; one arose after commencement but before discharge (the date the plan was confirmed); and one arose post-discharge (after the confirmation date). The Ninth Circuit, interpreting Section 944(b)(1), held that the claims arising before the confirmation date were discharged in the bankruptcy. *Id.,* at 877 (affirming "the district court's dismissal of O'Loghlin's complaint insofar as it is based on pre-discharge violations of the ADA by the County"). Only the claim that arose after the discharge date was permitted to go forward. *Id.*

#### 2. Dischargeability of plaintiff's claims.

Another remarkable feature of a municipal bankruptcy is that discharges under Chapter 9 are not subject to the "exceptions" to discharge set forth at 11 U.S.C. § 523(a). These exceptions prohibit individual debtors from discharging debt arising from "willful and malicious injury." 11 U.S.C. § 523(a); *Kawaauhau v. Geiger,* 523 U.S. 57, 63, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (to be non-dischargeable, the judgment debt must be "for willful and malicious" injury). Although the statute itself does not expressly state that injuries (or as here, death), allegedly resulting from civil rights violations are non-dischargeable, many bankruptcy courts have so interpreted this exception. *See, e.g., Gee v. Hammond (In re Gee),* 173 B.R. 189, 193 (B.A.P. 9th Cir.1994) (claim arising from sex discrimination was non-dischargeable under Section 523(a), as the underlying acts were "willful and malicious"); *Avery v. Sotelo (In re Sotelo),* 179 B.R. 214, 218 (Bkrtcy.S.D.Cal.1995) (claim arising from sexual harassment injury is not dischargeable); *(Magana v. Moore Development Corp. (In re Moore),* 1 B.R. 52, 54 (Bankr.C.D.Cal.1979) (in a racial discrimination case involving housing, the court holds that the "[d]ischarge of debts arising from willful violations" of the civil rights laws would be "inconsistent with the intent of Congress," as those laws are specifically intended to eliminate the " 'badges and incidents of slavery' ").

*3 Neither party has identified anything in the language of the bankruptcy laws that prevents a municipality from avoiding liability, even for a willful and malicious violation of the civil rights of one its own citizens.[6] To the contrary, this somewhat surprising, indeed, alarming result appears to be supported by the language of the bankruptcy laws because: (1) the non-dischargeability of debts for "willful and malicious injury" applies only to debts of individuals; and (2) the "willful and malicious injury" non-dischargeability provisions do not apply at all in a Chapter 9 bankruptcy.[7] 11 U.S.C. §§ 523(a) (applying exceptions to discharges to "individual" debtors under "section 727, 1141, 1228(a), 1228(b), or 1328(b)"); 901 (omitting Section 523 from the general bankruptcy sections that apply in a Chapter 9 case); *accord Yamaha Motor Corp. U.S.A. v. Shadco, Inc.,* 762 F.2d 668, 670 (8th Cir.1985) (the exemptions embodied in 11 U.S.C. § 523(a) apply only to individual donors, they "do not apply to corporate debtors"), *cited with approval, Towers v. U.S. (In re Pacific–Atlantic Trading Co.),* 64 F.3d 1292, 1302

(9th Cir.1995) (in the context of tax claims, " § 523 only applies to individual and not corporate debtors").

Thus, alarming as it is, as the bankruptcy statute appears to be written, a municipality may erase its own liability to persons whom it and its officers have willfully and maliciously deprived of their civil rights—and even their lives—by filing for bankruptcy. This extraordinary result would appear to exalt the bankruptcy laws over the civil rights laws (even though the civil rights laws, like the bankruptcy laws, are anchored in the constitution). However, the court need not, and does not, resolve this matter, as neither side has briefed it nor identified any applicable statutory, case-law or legislative history citations relating to this matter. To the contrary, plaintiff has simply conceded that her claims against the City were discharged in the bankruptcy.

### B. Chief of Police, Robert Nichelini.

#### 1. Arguments.

Nichelini asserts that the claims against him in his individual or personal capacity should be dismissed because they are, in essence, claims against the City, and were therefore discharged with the City's bankruptcy. This assertion rests upon two distinct premises.

First, defendant asserts that under state law, the City is required to defend him "regardless of whether the case is brought under § 1983 and whether they are sued in their individual or official capacities," *citing* Cal. Gov't Code § 995 and *Williams v. Horvath*, 16 Cal.3d 834, 843, 129 Cal.Rptr. 453, 548 P.2d 1125 (1976). Motion at 5–6. Second, defendant argues that state law "requires the City to pay any claim or judgment against its employees in favor of third-party plaintiffs," *citing* Cal. Gov't Code § 825, *et seq.* Motion at 6. Based upon these two premises, defendant concludes that "[t]he City's statutorily-mandated payment of former Chief Nichelini's defense costs and judgments falls within the broad category of 'debt' discharged by the bankruptcy," since it existed prior to the City's bankruptcy confirmation. Motion at 6.[8]

*4 Plaintiff argues that because she is suing Nichelini in his individual (or personal) capacity, her lawsuit is one solely against him, and is not against the City.[9] In support, plaintiff quotes *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) for the proposition that "an award of damages against an official in his personal capacity can be executed only against the official's personal assets." Opposition at 6; *see also, Community House, Inc. v. City of Boise, Idaho,* 623 F.3d 945, 967–68 (9th Cir.2010) (same), *quoting Graham,* 473 U.S. at 165–66.

Plaintiff also argues that Nichelini is improperly trying to change the nature of the federal and state claims from being claims against himself, personally, into claims against the City, citing *Demery v. Jupperman,* 735 F.2d 1139, 1148–49 (9th Cir.1994).[10]

#### 2. Resolution.

The issue presented here is whether a claim against a city officer in his individual or personal capacity is discharged in the city's bankruptcy because of Cal. Gov't Code §§ 825(a) and 995.[11]

##### a. Whether the City must provide a defense.

It appears that Nichelini oversimplifies the law with his repeated assertions that "the City is required to defend" him against this lawsuit, and that "state law ... requires the City to pay" any judgment against him. In fact, the City's "requirements" are not as automatic, iron-clad and mandatory as Nichelini asserts.

First, the defense is not automatic. Rather, Nichelini must "request" that the City provide a defense for him. Cal. Gov't Code § 995 (the City shall provide a defense "upon request" of the employee or former employee).[12] Nothing in the pleadings or Request for Judicial Notice establishes that Nichelini has made this request.[13]

Second, the provision of a defense is not mandatory in all cases. The City may refuse to provide a defense if it determines that Nichelini did not, in fact, act within the course and scope of his duties,[14] that his action or inaction resulted from "actual fraud," corruption or "actual malice," or that defending him would create a conflict of interest. Cal. Gov't Code § 995.2(a); *DeGrassi v. City of Glendora* 207 F.3d 636, 642 (9th Cir.2000) (same).

Third, even if the City were required to provide a defense at the outset of the litigation, it is free to discontinue that defense if it subsequently-and unilaterally-determines

that "an actual and specific conflict of interest" has subsequently arisen. *Id.*, § 995.2(c). This very sequence occurred in *Stewart v. City of Pismo Beach*, 35 Cal.App.4th 1600, 42 Cal.Rptr.2d 382 (2nd Dist.1995).

In *Stewart*, a city police officer was sued in a civil rights complaint, and the city hired attorneys to defend him. *Id.*, at 1603, 42 Cal.Rptr.2d 382. The attorneys continued to defend the officer after he resigned his position. *Id.* However, after the officer began cooperating with plaintiffs (in exchange for getting the claims against him in his personal capacity dropped), the city withdrew its defense of the officer and also notified him that it would not indemnify him. *Id.*, at 1604, 42 Cal.Rptr.2d 382. The officer sued to compel the city to defend him. *Id.* The appellate court ordered the trial court to sustain the city's demurrer, concluding that "Section 995.2, subdivision (c) allows the City to refuse to provide a further defense to Stewart because, by cooperating with the city's opponents in the federal action, Stewart has created a conflict of interest between himself and the City." *Id.*, at 1607–08, 42 Cal.Rptr.2d 382.[15]

### b. Whether the City must indemnify defendant.

**\*5** The indemnification of Nichelini is neither automatic nor mandatory. To obtain indemnification, Nichelini must, first, request that the City defend him, and he must do so in writing, no fewer than 10 days before trial. Cal. Gov't Code § 825(a);[16] *DeGrassi*, 207 F.3d at 642.

Second, he must show "that the act or omission was within the scope of employment." *Pelayo v. City of Downey*, 570 F.Supp.2d 1183, 1196 (C.D.Cal.2008). Indeed, if an official sues for indemnification in the event the employing public entity fails to defend and indemnify him, he must *prove* that his actions or omissions were within the course and scope of his official duties. *Farmers Ins. Group v. County of Santa Clara*, 11 Cal.4th 992, 997, 47 Cal.Rptr.2d 478, 906 P.2d 440 (1995) ("a public entity is required to pay claims and defense costs arising out of a civil lawsuit only where the employee proves that the act or omission giving rise to an injury occurred in 'the scope of his or her employment as an employee of the public entity' ").

Third, Nichelini must "cooperate[ ] in good faith in the defense of the claim or action." Cal. Gov't Code § 825(a); *DeGrassi*, 207 F.3d at 642 ("[f]ailure to cooperate in good faith with the City's defense of the claim relieves the public entity of its obligation to indemnify the employee").

Finally, even if Nichelini does everything the law requires of him to be eligible for indemnification, the City still will not indemnify him for the punitive (or "exemplary") damages that plaintiff seeks here, except in very limited circumstances. *See* Cal. Gov't Code § 825 ("[n]othing in this section authorizes a public entity to pay that part of a claim or judgment that is for punitive or exemplary damages"); *Grassilli v. Barr*, 142 Cal.App.4th 1260, 1292, 48 Cal.Rptr.3d 715 (4th Dist.2006) (Section 825 authorizes indemnification for a punitive damages award "only under very limited circumstances"). Specifically, the City is precluded from indemnifying for punitive damages, *unless* the City's governing body determines that Nichelini acted within the course and scope of his employment, that he acted in good faith and "in the best interests" of the City, and that indemnification for such punitive damages are "in the best interests" of the City. *Id.*, § 825(b).

### c. Whether the claim against defendant is actually one against the City.

Defendant's premises for his argument that the claims against him are, in essence, claims against the City, thus do not withstand scrutiny. Plaintiff's cases, on the other hand, tend to support the opposite view. Although defendant concludes, based upon his premises, that any judgment against him will come out of the City's treasury, this does not appear to be the case. To the contrary, "an award of damages against an official in his personal capacity can be executed only against the official's personal assets." *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Community House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 967–68 (9th Cir.2010) (same).

**\*6** The Ninth Circuit appears to confirm that a personal capacity Section 1983 claim against a public official is not a claim against the employing public entity. In *Demery v. Kupperman*, 735 F.2d 1139 (9th Cir.1984), the plaintiff sued state officials in their personal capacities. The case involved the state's assertion of sovereign immunity— which is not in issue here-but its discussion of the nature of the claims and how the judgment would be paid, is instructive.

The Ninth Circuit found no sovereign immunity bar to the suit against the officials in their personal capacity. That is because, "the state's obligation to pay damages derives not

from the nature of plaintiff's claim, but from an entirely collateral, voluntary undertaking on the part of the state." *Demery,* 735 F.2d at 1148. Here too, the City's obligation to pay does not derive from the nature of plaintiff's claim. Rather, defendant is being sued "for damages for which ... the United States has made them individually liable." *Id.* In *Demery,* the Ninth Circuit held that a Section 1983 lawsuit against a California state official sued in his personal capacity "is not essentially one against the state: California's law does not, and cannot, change the nature of the federal claim." *Id.* To the contrary, the City's decision to indemnify defendant (or not), is "a purely intramural arrangement" between the City (with strong State intervention) and its officers. *Id.,* at 1147 (*citing Ronwin v. Shapiro,* 657 F.2d 1071 (9th Cir.1981), again in the context of sovereign immunity).

*Demery* and *Ronwin,* both cases involving sovereign immunity, found that a claim against a state official was *not* essentially one against the state for sovereign immunity purposes, even though state law required the state to indemnify the official. This court believes that under the same reasoning, a claim against a City official is not essentially one against the City for bankruptcy discharge purposes, even if state law requires the City to indemnify the official. This conclusion is particularly compelling here, since, as discussed above, the City is not necessarily required to provide a defense, or to indemnify the City official, and in any event, such indemnification obligation was arguably discharged by the bankruptcy, and nothing in the pleadings shows that any such obligation exists.

In short, the court will not make the leap over the facts and the law that defendant requests. It will not find that a claim (and lawsuit) against a City officer in his individual capacity is the legal equivalent of a claim (and lawsuit) against the City, when any judgment against defendant can only be executed against defendant's assets (not the City's);[17] the City is not obligated to indemnify defendant against the judgment unless it makes several specific findings; the City is not *permitted* to indemnify defendant against punitive damages except under "very limited circumstances;" and the City can unilaterally withdraw its obligation to defend and indemnify. *See Maddalone v. Solano County,* 2009 WL 29750 (E.D.Cal.) (Brennan, M.J.) (in the context of a request for a stay, claims against employees of bankrupt city are *not* claims against the bankrupt city. Rather, "the claims are against individuals who may, if held liable, have a claim against the City for indemnity"), *adopted in full,* Civ. Case No. 2:07–cv–1828 (E.D.Cal. March 30, 2009) (England, J.).[18]

#### d. Whether the claim was discharged.
*7 It is undisputed that the claim against defendant, in his individual capacity, arose on June 10, 2013. The City's bankruptcy result in the discharge of all of *its* debts. Because of this, plaintiff's resulting claims against the City, as well as its resulting claims against defendant in his official capacity, were discharged.[19] Nothing in the law, the City's discharge or the bankruptcy court's confirmation order indicates that defendant's individual debts are also discharged. The court concludes that plaintiff's claim against defendant in his individual capacity was therefore not discharged in the City's bankruptcy.

Defendant asks this court to overlook the fact that "indemnification" is a claim separate and apart from the Section 1983 liability claim that underlies it.[20] Plaintiff here is suing defendant for a civil rights violation, not for indemnification. It is the defendant who may choose to sue the City for indemnification, *if* he is found liable in this lawsuit, and *if* the City declines to defend him or pay the judgment.[21] It is at that point that a court might have to determine if *defendant'*s claim-for indemnity-was discharged in bankruptcy.

### IV. CONCLUSION
For the reasons stated above:

1. The City's motion, and Nichelini's motion made in his official capacity, for dismissal on the pleadings is **GRANTED,** and all claims against them are **DISMISSED** with prejudice;

2. Defendant Nichelini's motion, made in his individual or personal capacity, for judgment on the pleadings, is **DENIED.**

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 3992403

Footnotes

1     Plaintiff also sues under state tort laws for negligence and assault and battery.

2     The cited Government Code requires tort claims "relating to a cause of action for death" to be filed "not later than six months after the accrual of the cause of action." Cal. Gov't Code § 911.2(a).

3     *Quoting Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

4     In Chapter 7, the debtor is discharged only from debts existing as of the date the bankruptcy case was commenced, *See* 11 U.S.C. §§ 727(b) (Chapter 7 debtor is discharged from all debts existing as of the date of the "order of relief," which is normally the commencement of the bankruptcy case, 11 U.S.C. §§ 301(b) (voluntary case), 302(a) (joint case), 303(h) (involuntary case, if uncontroverted; otherwise the order of relief is granted "after trial")).

5     Thus, in a Chapter 9 case, the discharge date and the confirmation date are the same.

6     Nor does the court find any mention in the legislative history of the statutory provisions governing municipal bankruptcies, or non-dischargeability, of any concern about the apparent ability of a municipality to sweep away (or limit) its liability, even for willful and malicious injuries it might inflict on its own citizens. *See generally,* H.R. Rpt. No. 94–686 (1975), *reprinted in* 1976 U.S.C.C.A.N. 539; H.R. Conf. Rpt. 94–938 (1976), *reprinted in* 1976 U.S.C.C.A.N. 583; H.R. Rpt. No. 95–595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963; S. Rpt. 95–989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787. Indeed, even the legislative history regarding Section 523(a) itself appears to make no specific mention of suits arising from willful and malicious civil rights violations.

7     Given that the exception applies only to "individuals," it is not all that surprising that it is entirely absent from Chapter 9, since Chapter 9 debtors are never "individuals," they are, by definition, municipalities. *See* 11 U.S.C. § 109(c)(1) ("[a]n entity may be a debtor under Chapter 9 of this title if and only if such entity ... is a municipality").

8     A "debt" is "liability on a claim." 11 U.S.C. § 101(12). A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

    With exceptions not applicable here (at least they not apparent from the pleadings to date), "the debtor is discharged from all debts as of the time when ... the plan is confirmed." 11 U.S.C. § 944(b)(1).

9     To the degree plaintiff sues Nichelini "in his ... official capacity," those claims are dismissed for the same reason the claims against the City are dismissed.

10     Plaintiff also asserts that Nichelini is improperly trying to clothe himself in the state's sovereign immunity, citing *Ronwin v. Shapiro,* 657 F.2d 1071, 1074 (9th Cir.1981). However, nothing in defendant's papers indicates that he is asserting, or entitled to, sovereign immunity. As defendant puts it, this case is about "indemnity," not "immunity." Nevertheless, as will be discussed below, sovereign immunity cases, including *Ronwin,* are useful in determining whether a claim against a public official in his personal capacity is essentially a claim against the employing public entity (and thus barred by the entity's bankruptcy discharge).

11     As noted below, even assuming the city's indemnification or defense obligation under the California statutes, given the city's assertion relative to the effect of its bankruptcy, such obligation has arguably been discharged.

12     California law provides that:
> upon request of an employee or former employee, a public entity shall provide for the defense of any civil action or proceeding brought against him, in his official or individual capacity or both, on account of an act or omission in the scope of his employment as an employee of the public entity.

    Cal. Gov't Code § 995.

13     Although no document before the court asserts that Nichelini has requested that the City defend him, the court apparently can presume that he has done so, perhaps from the fact that the City is representing him in these pretrial proceedings. *See Sinclair v. Arnebergh,* 224 Cal.App.2d 595, 598, 36 Cal.Rptr. 810 (1964) ("Presumptions ... that requests for representation were made ... are justified, and it is obvious that section 995 of the Government Code makes it mandatory upon the city attorney to represent a policeman upon request in a civil action arising out of the scope of his employment"). However the court notes that the "defense" contemplated in the statute is the defense to the *trial,* not simply to these pretrial proceedings. *See* Section 825(a) (request must be made no later than 10 days before trial). Moreover, if defendants are correct about the effect of the bankruptcy, the discharge would appear to wipe out the City's duty to defend, leaving Nichelini to provide his own defense.

14     The fact that plaintiff alleges that Nichelini acted, or failed to act, within the course and scope of his official duties would appear to have no bearing on the City's own determination in this regard.

15   Thus, although in most real world situations, a successful suit against a police officer normally (after indemnification), results in a hit to city's treasury, that is not always the case.

16   That Section provides:
     if an employee or former employee of a public entity requests the public entity to defend him or her against any claim or action against him or her for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the public entity and the request is made in writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed.
     Cal. Gov't Code § 825(a).

17   There is nothing in the pleadings or the Request for Judicial Notice to establish that defendant has assigned his indemnification claim to plaintiff. If that were the case, and if the indemnification claim was not discharged in bankruptcy, plaintiff presumably could t hen seek indemnification against the City, which, if plaintiff were to succeed, would come out of the City's treasury.

18   *Cf. State ex rel. Dockstader v. Hamby*, 162 Cal.App.4th 480, 484, 75 Cal.Rptr.3d 567 (4th Dist.2008) (in the context of a California False Claims Act case, "[b]ecause section 825 requires a government agency, on timely request, to defend and indemnify a public employee against claims arising out of an act or omission occurring within the scope of his or her employment, a suit against the defendants is tantamount to a suit against LAUSD [the public entity] itself"). Despite its broad language, *Dockstader* involved public officials sued only in their official capacities, where plaintiffs sought to recover funds defendants obtained for their public employer from the state.
     There appear to be differing views within this district over whether such claims should be *stayed* while the bankruptcy case is proceeding. *See Williams v. Kenney*, 2008 WL 3540408 (E.D.Cal.) (Brennan, M.J.) (in the context of a request for a stay, a suit against officers employed by a bankrupt city is a suit against the City since the City must defend and indemnify), *adopted in full*, 2008 WL 4454042 (E.D.Cal.2008) (Karlton, J.); *Smith–Downs v. City of Stockton*, 2012 WL 3202265 (E.D.Cal.2012) (England, J.) (staying claims against city officers since the bankrupt city would be required to defend and indemnify the officers).

19   If defendant had a contingent claim against the City for indemnity, arising from decedent's death, the City might argue that the claim was discharged in the bankruptcy. *See, e.g., Boyajian v. Orboudabi*, 184 Cal.App.4th 1020, 110 Cal.Rptr.3d 469 (3rd Dist.2010). However, the court is not called upon to consider this matter.

20   In addition, California has a separate cause of action for a public entity's wrongful failure to provide a defense. Cal. Gov't Code § 996.4

21   A different result might obtain if defendant had assigned his indemnity claim to plaintiff prior to the date of the City's discharge. Normally, this practice would allow plaintiff to sue the City directly if it won a liability verdict against defendant, and a judgment in that case would come out of the City's treasury.