UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

3  IN THE MATTER OF,                  Case No. 13-53846
                                      Detroit, Michigan
4  CITY OF DETROIT, MICHIGAN          November 16, 2016
   _____/       1:35 p.m.

5

     IN RE:  [#11624] MOTION TO DETERMINE RIGHTS TO CLAIM NUMBER
6  201, [#11623] OBJECTION TO CLAIM OF GENERAL SHALE BRICK, CO.,
   [#11620] OBJECTION TO CLAIM OF CLAIMANT STEVEN WOLAK, [#11357]
7  MOTION TO ENFORCE ORDER, PURSUANT TO SECTIONS 105, 501, AND
     503 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND
8  3003(c), ESTABLISHING BAR DATES FOR FILING OF PROOFS OF CLAIM
   AND APPROVING FORM AND MANNER OF NOTICE THEREOF AGAINST DANNY
9  CROWELL, LEOTA MURPHY AND JASMINE CROWELL, [#11583] MOTION TO
   ENFORCE ORDER, PURSUANT TO SECTIONS 105, 501, AND 503 OF THE
10     BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND 3003(c),
     ESTABLISHING BAR DATES FOR FILING OF PROOFS OF CLAIM AND
11   APPROVING FORM AND MANNER OF NOTICE THEREOF AGAINST NAJIB
   HODGE, AND [#11399] FORTY-SEVENTH OMNIBUS OBJECTION TO CERTAIN
12   NO BASIS CLAIMS, REGARDING CLAIM #785 OF BEATRICE MCQUEEN
                 BEFORE THE HONORABLE THOMAS J. TUCKER
13            TRANSCRIPT ORDERED BY: <u>ROBIN WYSOCKI</u>

14  APPEARANCES:

15  For the City of Detroit:     RONALD SPINNER, ESQ. (P73198)
                                 MARC SWANSON, ESQ. (P71149)
16                               JOHN WILLEMS, ESQ. (P31`861)
                                 Miller, Canfield, Paddock &
17                               Stone
                                 150 West Jefferson
18                               Suite 2500
                                 Detroit, MI 48226
19                               313-496-7829

20  For Michael Beydoun:         RAYMOND GUZALL, ESQ. (P60980)
                                 Raymond Guzall, III, P.C.
21                               31555 W. 14 Mile Road
                                 Suite 320
22                               Farmington Hills, MI 48334
                                 248-702-6211
23

24

25

| | | |
|---|---|---|
| 1 | For Trustee Karen Evangelista: | RICHARDO KILPATRICK, ESQ. (P35275) |
| 2 | | Kilpatrick & Associates, P.C. 903 North Opdyke Road |
| 3 | | Suite C Auburn Hills, MI 48326 |
| 4 | | 248-377-0700 |
| 5 | For Kajy Development: | AFAN BAPACKER, ESQ. (P70885) The Law Offices of |
| 6 | | Afan Bapacker, P.C. 16030 Michigan Avenue |
| 7 | | Suite 220 Dearborn, MI 48126 |
| 8 | | 313-646-8070 |
| 9 | For General Shale Brick, Inc.: | JOHN COLUCCI, ESQ. (P40716) Law Offices of John Colucci |
| 10 | | 33659 Angeline Livonia, MI 48150 |
| 11 | | 734-956-0660 |
| 12 | For Najib Hodge: | DOUGLAS DEMPSEY, ESQ. (P41532) The Law Office of Joumana |
| 13 | | Kayrouz, PLLC 1000 Town Center |
| 14 | | Suite 800 Southfield, MI 48075 |
| 15 | | 248-557-3645 |
| 16 | For Steven Wolak, as Personal Representative of the Estate | STEPHANIE ARNDT, ESQ. (P66870) Fieger Law |
| 17 | of Christopher Wolak, Deceased | 19390 West 10 Mile Road Southfield, MI 48075 |
| 18 | | 248-355-5555 |
| 19 | For Cromwell and Murphy: | JOSEPH DEDVUKAJ, ESQ. (P51335) The Joseph Dedvukaj Firm, P.C. |
| 20 | | 1277 West Square Lake Road Bloomfield Hills, MI 48302-0845 |
| 21 | | |
| | PRESENT: | Beatrice McQueen |
| 22 | | |
| | Court Recorder: | Jamie Laskaska |
| 23 | | |
| | Transcriber: | Deborah L. Kremlick |
| 24 | | |
| 25 | Proceedings recorded by electronic sound recording, transcript produced by transcription service. | |

1          (Court in Session)

2          THE CLERK:  Please rise.  This Court is back in

3    session.  You may be seated.  The Court will call the matter

4    of the City of Detroit, Michigan, 13-53846.

5          THE COURT:  All right.  Good afternoon, everyone.

6    Let's have entries of appearance for the record, please,

7    starting with the City of Detroit attorneys.

8          MR. SWANSON:  Good afternoon, Your Honor.  Marc

9    Swanson on behalf of the city.

10          MR. WILLEMS:  Good afternoon, Your Honor.  John

11    Willems also on behalf of the city.

12          MR. SPINNER:  Good afternoon.  Ron Spinner on behalf

13    of the city.

14          THE COURT:  All right.  Any other attorneys present

15    who want to enter appearances.

16          MR. GUZALL: Good afternoon, Your Honor.  Raymond

17    Guzall on behalf of Michael Beydoun.

18          MR. KILPATRICK:  Good afternoon, Your Honor.

19    Richardo Kilpatrick on behalf of the trustee for the Steven

20    Wolak estate, Karen Evangelista.

21          MR. BAPACKER:  Good afternoon, Your Honor.  Afan

22    Bapacker on behalf of Kajy Development, LLC.

23          MR. COLUCCI:  John Colucci appearing on behalf of

24    General Shale Brick Company.

25          THE COURT:  I'm sorry, your last name again, sir

1          MR. COLUCCI:  Colucci, John Colucci, C-o-l-u-c-c-i.

2          THE COURT:  General -- on behalf of General Shale.

3  All right.  Thank you.  Others?  Anyone else?

4      All right.  Well, good morning to -- or good afternoon

5  rather to everyone.  We have of course several matters

6  scheduled for hearing today, or further hearing in some cases

7  today.

8      Let me first address a question to counsel for the City

9  of Detroit.  I have in mind an order in which I'd like to hear

10  these matters, but I'm open to suggestions from anyone on what

11  -- if something -- some order that might make more sense.  But

12  I think the first thing I want to -- to find out is whether

13  any of these matters are settled or resolved, the matters

14  scheduled for today.

15          MR. WILLEMS:  Your Honor, if I may.  I'm here on the

16  McQueen claim.

17          THE COURT:  Yes.

18          MR. WILLEMS:  And that has not been settled.  Ms.

19  McQueen is in the courtroom and it's probably the simplest of

20  the matters before you today, so --

21          THE COURT:  I had in mind calling that first.

22          MR. WILLEMS:  Okay.

23          THE COURT:  For that reason, but we'll see if it's

24  so simple.  But are any matters settled, that's what I'm

25  asking.

1          MR. WILLEMS:  No, Your Honor.  Beydoun may be

2    settled to a certain extent, but I think we're going to still

3    have to have the Court resolve certain issues.

4          THE COURT:  All right.

5          MR. COLUCCI:  With respect to General Shale, I

6    believe there's general agreement on the disposition of both

7    the claim objection and the motion relative to distribution.

8          THE COURT:  All right.  First thing we'll hear then,

9    and -- and, you know, I -- I will start with as the first

10   matter that we're going to hear, the further hearing on the

11   objection to the -- by the city to the claim of Beatrice

12   McQueen which is part of the forty-seventh omnibus objection

13   to claims.  Let's hear from the parties and counsel on that.

14   Ms. McQueen, if you're here, come on up.

15      All right.  So Ms. McQueen, would you enter your

16   appearance for the record, please.

17         MS. MCQUEEN:  Beatrice McQueen.

18         THE COURT:  All right.  Good afternoon and welcome

19   back, Ms. McQueen.  And Mr. Willems, you're going to speak for

20   the city on this one?

21         MR. WILLEMS:  Yes, I am, Your Honor.

22         THE COURT:  All right.  I had thought this would be

23   settled, or had been settled based on the city's most recent

24   filing that was -- the supplemental reply filed October 12,

25   docket number 11617 and the attached proposed stipulation and

1  order to resolve this dispute.  But if it's not resolved, Mr.

2  Willems, let me start with you.  Why not?

3        MR. WILLEMS:  Well, we made the proposal to Ms.

4  McQueen to allow the claim at the amount that she valued it at

5  which is $3,968.  I'm speaking here about proof of claim

6  number 785.  And that it be allowed as a Class 15 convenience

7  claim.

8     And we did send her a -- a letter proposing that with an

9  attached stipulation and order.  As you may recall, there was

10  another claimant wrapped up in this, Ms. Dinah Bolton.

11        THE COURT:  I do recall.  That one settled.  This

12  one apparently is not yet.

13        MR. WILLEMS:  That one settled.  And I had a

14  conversation with Ms. McQueen's daughter, the -- at the time

15  of the last hearing when they asked for an adjournment for Ms.

16  McQueen to today.  And went over that with her and she

17  declined to accept the offer.  So that's how we ended up here

18  today.

19        THE COURT:  All right.  Ms. McQueen, I'd like to

20  hear from you about this.  The city -- maybe I'm missing

21  something, but the city in their October 12 supplement, or

22  supplemental reply that they filed in -- in addressing your

23  objection to your claim and in the proposed stipulation and

24  order they attached, they seemed to give you what you want.

25  They -- they give you an allowed claim in the full amount of

1 | your claim. So why are we here today?

2 | MS. MCQUEEN: Because to my understanding -- first I

3 | apologize I wasn't here, I had a stroke. But --

4 | THE COURT: I'm sorry about that. I hope you're

5 | doing well, doing better.

6 | MS. MCQUEEN: I'm doing better.

7 | THE COURT: All right. Yeah, we adjourned the last

8 | hearing because of that, so go ahead.

9 | MS. MCQUEEN: Right. So I'm -- to my understanding

10 | the reason that we declined it because from what he explained

11 | to me, it would be issued out to me over years in bonds and

12 | not in money. So that's why it was declined.

13 | THE COURT: Well, what the city is proposing or has

14 | proposed in their October 12 paper is not -- I think you're

15 | thinking of this -- what would happen if this claim were

16 | treated as a Class 14 claim, general unsecured claim rather

17 | than a Class 15 under the confirmed plan of adjustment Class

18 | 15, so-called convince claims they're called, but Class 15

19 | claims are paid in cash but only -- but at 25% of the allowed

20 | amount. Correct, Mr. Willems?

21 | MR. WILLEMS: That's correct, Your Honor.

22 | THE COURT: All right.

23 | MR. WILLEMS: And if I may, the -- the explanation

24 | apparently got garbled somehow because that's not what I told

25 | her daughter, that's not what's in our letter, and it's not

1  what I told her today.

2       THE COURT:  Well, in any case, Ms. McQueen, there's

3  not going to be any bonds, payment through any bonds involved

4  in -- in the treatment of your payment of your claim.

5       MS. MCQUEEN:  Okay.

6       THE COURT:  Under the proposed treatment that the

7  city has in their stipulation and order, they propose to allow

8  your claim in the full amount of the claim.

9       MS. MCQUEEN:  Okay.

10      THE COURT:  Classified as a Class 15 convenience

11  claim.  And then under the confirmed plan, a claim that falls

12  into that category is paid in cash, 25% of the allowed amount

13  of the claim.  Did you read the stipulation and order that was

14  attached to the October 12 filing the city filed?

15      MS. MCQUEEN:  Yes, I did.

16      THE COURT:  All right.  Well, you know, you don't

17  have to agree to it, but the question is, what is -- if you

18  don't agree to that, what is the -- what are you disputing

19  still?

20      MS. MCQUEEN:  Because I'm -- I'm still not clear on

21  what -- what they're trying to give me.  It doesn't -- okay.

22  In one instance it says you giving me the full amount, and

23  then on the other hand it says you giving me 25% of the

24  amount.  I don't understand.

25      THE COURT:  Well, there's two different things.  One

1 is what is the allowed amount of your claim.  Now you filed

2 your claim, your proof of claim number 785 in the amount of

3 $3,968.

4          MS. MCQUEEN:  Yes.

5          THE COURT:  The city proposes to agree to -- to that

6 being the allowed amount of your claim.

7          MS. MCQUEEN:  Okay.

8          THE COURT:  And then the question is well, okay,

9 that's an allowed claim in that amount 3,968.  Now how is it

10 treated -- how must it be treated under the confirmed plan of

11 adjustment.

12      And there are many classes of claims, but the -- the

13 primary classes of unsecured claims are Class 14 and Class 15.

14 Class 15 the so-called convenience claims are claims that I

15 believe the -- the claims that are allowed in the amount of

16 what is it, $25,000 or less, I believe.

17          MR. WILLEMS:  That's correct, Your Honor.

18          THE COURT:  Yeah.  As to those the confirmed plan of

19 adjustment, Class 15 claims, says those claims will be paid in

20 cash at the -- at a rate of 25% of the allowed amount of the

21 claim.

22      So you have your allowed amount of the claim is 3,968

23 which is the amount that you -- full amount you put in your

24 proof of claim.  The actual payment to you on that allowed

25 claim will be 25% of that in cash which the city calculates at

1 | $992.50.

2 | So there's two different things. One is how much is the

3 | allowed amount of your claim and the other thing is how much

4 | are you actually going to be paid on that allowed claim. And

5 | the answer to that is, 25% of the allowed amount or $992.50.

6 | Does that answer your question?

7 | MS. MCQUEEN: It does answer my question, but I

8 | don't agree. I mean because that was time that I put in with

9 | the city. That was my bank time so why wouldn't I get all of

10 | my money from my bank time.

11 | Plus I filed this before bankruptcy. So and it had went

12 | to agreements. And it was said that I would be awarded that.

13 | So why is it now that I wouldn't get my full amount and only

14 | get 900. How would -- how could they break that down like

15 | that?

16 | THE COURT: The answer to that is because that's

17 | what the confirmed plan of adjustment says. And that plan is

18 | binding on everyone, the city and all creditors, including

19 | you. That's the answer.

20 | Not all -- lots of claims or most claims are being paid

21 | at less than 100% of the amount of the claim that's allowed.

22 | That's -- that's the nature of bankruptcy and what happens in

23 | most bankruptcy cases.

24 | And in this case we have a confirmed plan that is binding

25 | on everyone including you and this is the class that it

1  appears to me where your claim belongs.  And -- and Class 15

2  and so that's what the plan provides.  That's the answer.  So

3  you're -- you're -- I don't know what else I can say about it.

4          MS. MCQUEEN:  But I wasn't -- but I filed before the

5  bankruptcy.

6          THE COURT:  All right.  Well, that doesn't matter.

7          MS. MCQUEEN:  So why they are being allowed to put

8  me in bankruptcy.

9          THE COURT:  Doesn't matter.  If it's a claim that

10  arises before the filing of the bankruptcy that's just the

11  type of claim that is treated and in the -- the bankruptcy

12  plan that was confirmed.

13      So the question is, do you want to say anything else

14  about this.  And you don't have to agree to anything.  You can

15  say I disagree and I don't think it's right.

16          MS. MCQUEEN:  I don't.

17          THE COURT:  Whatever you want.  But do you want to

18  say anything else though and then I'm going to make a ruling

19  here.

20          MS. MCQUEEN:  I just disagree.

21          THE COURT:  All right.  Well, the city has modified

22  its forty-seventh omnibus objection with respect to the claim

23  of Beatrice McQueen, claim 785 to improve the treatment of the

24  claim and the city's proposal as reflected in the -- and

25  request of the Court as I understand it is reflected in the

1  October 12, 2016 supplemental reply filed by the city at

2  docket 11617 is that Ms. McQueen's claim be allowed in the

3  full amount of the claim.

4      And so the city basically has -- has agreed to the amount

5  of the claim, the allowed amount of the claim as the amount

6  that's in the proof of claim that Ms. McQueen filed.  And the

7  city proposes that that claim be classified and treated as a

8  Class 15 convenience claim under the confirmed plan of

9  adjustment and I -- I -- in my view that's absolutely correct

10 and that's how it should be classified and treated.

11     And that means that the claim will be paid at 25% in cash

12 of the allowed amount of the claim.  So the proposed order

13 that was attached to the City of Detroit's supplemental reply

14 filed October 12 is in substance what the Court will enter and

15 in its ruling on this objection to the claim of Ms. McQueen.

16     The claim will be allowed as a Class 15 convenience claim

17 in the allowed amount of $3,968 and paid in cash at 25% of

18 that which means $992.00.  And that's required under the

19 city's confirmed plan of adjustment.

20     So that's the ruling.  Mr. Willems, I'll ask you to

21 please submit that proposed order that was attached to the --

22 as one of the exhibits to the October 12 filing.  I'll make

23 some revisions, non-substantive revisions in it to reflect

24 today's hearing and the ruling today and so forth.  But the --

25 the substance will be what was proposed in -- in that

1  document.  Any questions about the order needed to be

2  submitted?

3          MR. WILLEMS:  I do not have any questions, Your

4  Honor.

5          THE COURT:  All right.  I will -- I'll waive

6  presentment of that order and that's the ruling on this

7  matter.  Thank you all.

8          MR. WILLEMS:  Thank you, Your Honor.

9          THE COURT:  All right.  The next matter I want to

10 hear -- actually there's two matters that should be heard

11 together I think logically.  And that is the -- the city's

12 motion at docket 11624 to determine rights to claim number 201

13 filed by -- filed by Michael Beydoun.  And also the city's

14 objection to the claim of General Shale Brick Company which is

15 docket 11623.

16     These items -- these matters are obviously related so I

17 want to hear them together.  So who's going to speak for the

18 city on these matters?  Mr. Spinner.

19         MR. SPINNER:  Good afternoon, Your Honor.  Ron

20 Spinner on behalf of the city.

21     Your Honor, this started out as a somewhat complex matter

22 as you probably read, all these papers.  We started off by

23 filing an objection to claim number 201, that's at docket

24 11662 held by Mr. Beydoun.  An objection to claim 1075 as was

25 at docket 11623 filed by General Shale Brick.  Then we filed a

1   motion to determine rights to claim 201.  And that was filed

2   at 11624.

3       The underlying gravamen is that there is a claim, there

4   are competing claimants for that claim, and our goal was to

5   try to resolve that in a manner that is both consistent with

6   the law and is also as -- as least burdensome for the city and

7   the Court as possible.

8       In response to claim 201, the objection was basically --

9   had to do with the calculation of interest.  There was no

10  objection -- response to that objection, so the Court allowed

11  that, sustained that objection at 11664.  That matter is

12  therefore not up today.

13      General Shale Brick, the holder of claim 1075 filed a

14  response to the city's objection to that claim, docket number

15  11646.  The subject matter of the dispute was really the --

16  the legal treatment of the claim, 1075.  We felt -- or General

17  Shale Brick as I understand it filed it in support of a

18  garnishment that it had in 2001, Mr. Beydoun's property.

19      The city's take is that because it's seeking property of

20  Mr. Beydoun and not of the city, no claim was necessary and no

21  claim should be allowed on that behalf.  General Shale Brick

22  had a slightly different take on that.

23      But the net result of the filings at 11646 by General

24  Shale Brick in its response at 11667 of the city said

25  basically we agree that what's going to come out of this for

1  General Shale Brick is an unsecured claim and whether that be

2  1075 modified as the motion requests, or a new one created by

3  -- by the motion and 1075 being withdrawn and expunged really

4  is a difference that makes no difference.

5      And so I believe the parties have agreed that the

6  treatment should be determined by the motion.  And that brings

7  us to the -- the main crux of the question today, the motion

8  to determine rights of claim 201.

9      To refresh the Court on how we got here, Michael Beydoun

10 was injured in an auto accident years ago.  He obtained a

11 judgment against the city.  The judgment was later augmented

12 with fees and costs.  The city then filed for bankruptcy

13 protection.

14     Attorney Guzall filed a claim against the city for his

15 client, Mr. Beydoun in the amount of -- to protect the

16 judgment.  We disagree with the way the interest was

17 calculated, but we resolved that with the objection to claim

18 201.

19         THE COURT:  That claim 201 was filed I see in the

20 name of -- jointly of Mr. Guzall and Michael Beydoun.

21         MR. SPINNER:  I think you're correct, Your Honor,

22 yes.

23         THE COURT:  That's what it says, Michael Beydoun and

24 his attorney Raymond Guzall, III.  That's the name of the

25 creditor in the proof of claim you attached to the motion.

1      MR. SPINNER: That's fair, Your Honor. And we --

2  and we actually understand that Mr. Guzall has a claim against

3  Mr. Beydoun's claim for attorney's fees as part of it. So we

4  understand that they're -- it's interrelated.

5      THE COURT: Do you view their -- their joint claim

6  -- claim of filing status to be such that whatever is to be

7  distributed to Michael Beydoun -- to be distributed on claim

8  201 to persons other than third party creditors like General

9  Shale is to -- to be distributed jointly to both and then it's

10 a matter for them, Mr. Beydoun and his attorney, Mr. Guzall to

11 figure out and if they can't agree for some State Court to

12 determine who gets what as between the two of them.

13     MR. SPINNER: Yes, Your Honor. Although it may not

14 come to that. Because we're trying to put a process as -- as

15 we've put in our papers that would allow the parties to, if

16 they can agree, solve all that in one shot. And if not, then

17 yes. Then the State Court would have to figure out what the

18 -- the appropriate distribution would be.

19     THE COURT: Well, I was referring to distribution as

20 between Mr. Beydoun and his attorney, Mr. Guzall. I wasn't

21 referring yet to the -- any issues regarding Kajy Development.

22     MR. SPINNER: Oh, sure, I understand.

23     THE COURT: Which we're coming to, I -- I assume

24 shortly. Anyway, go on. You were saying.

25     MR. SPINNER: Sure. There was a dispute that we

1  filed in our original motion between Attorney Guzall and

2  Attorney Seifman apparently a dispute over attorney's fees.

3      We had proposed a -- a method of distribution that would

4  deal with that, however, Attorney Seifman was served with

5  these papers.  I spoke to one of his counsel and I don't

6  believe -- he has not filed any papers.  I don't believe he's

7  participating in this.  So that claim which we -- which we

8  raised in the motion apparently is resolved and he will not be

9  participating.

10         THE COURT:  Meaning he'll get nothing.

11         MR. SPINNER:  Meaning he will get nothing.

12         THE COURT:  Go on.

13         MR. SPINNER:  Two parties filed garnishments against

14  Mr. Beydoun's claim number 201.  General Shale Brick was the

15  first in time garnisher.  There appears to be no dispute

16  against that.  There's no dispute from Mr. Beydoun as to that

17  garnishment.

18      And that is the garnishment that led to the filing of

19  claim 1075.  Kajy Development also filed a garnishment.  It

20  did not file a proof of claim but because the city's position

21  is that they're going after property of Mr. Beydoun, not the

22  city, no claim was necessary.

23      Now both Attorney Beydoun through his attorney -- I'm

24  sorry, Beydoun and through his attorney Guzall and Kajy

25  responded to the motion to determine rights and the result of

1 this is that no one seems to object to General Shale Brick's

2 treatment as proposed under the motion.

3      We learned that Attorney Guzall has a contingency fee

4 arrangement which apparently will change how he distributes

5 that claim with Mr. Beydoun more than we had expected when we

6 first filed our motion.  And there is apparently a valid

7 dispute between attorneys Beydoun and Kajy regarding the

8 validity of the garnishment.

9      And that's when we filed our docket -- our response at

10 docket 11668.  We proposed a revised distribution starting

11 first with General Shale Brick since there is no objection

12 they do seem to be first in time.  We propose to allow claim

13 1075 as a $20,000 cash claim, and an unsecured claim for the

14 balance of $7,271.94 fully and finally resolving any claim

15 that General Shale Brick would have against the city as -- as

16 regards to this particular claim.

17      The dispute --

18           THE COURT:  Does everyone agree to that part of your

19 proposed order?  And I -- we're referring I think just for

20 clarity to the revised proposed order the city filed as

21 Exhibit 1 to its reply in support of its motion regarding

22 claim number 201.  It's docket 11668.  Go on.

23           MR. COLUCCI:  John Colucci on behalf of General

24 Shale, Your Honor.  Yes, General Shale is in agreement with

25 that and no objection has been raised to me.  And I understand

1  from Mr. Guzall there is also no objection to General Shale's

2  claim as advanced in the State Court either.  So really no

3  objection that I'm aware of.

4          THE COURT:  Mr. Guzall, same question.

5          MR. GUZALL:  Yes, Your Honor.  On behalf of Mr.

6  Beydoun, Mr. Beydoun is not objecting to the documents filed

7  in regards to General Shale as to the -- as to their claim.

8          THE COURT:  So --

9          MR. GUZALL:  It's not objected to that claim.

10         THE COURT:  Neither you as Mr. Guzall's attorney nor

11  Mr. -- as Mr. Beydoun's attorney, nor Mr. Beydoun object to

12  the -- at least the part of the order, the city's revised

13  proposed order that proposes -- what it proposes to do with

14  respect to General Shale Brick I guess it's Paragraphs 2 and 3

15  of that order.  You don't -- neither of you object to that, is

16  that correct?

17         MR. GUZALL:  You're talking about the document 11667

18  with the $20,000 in cash and then --

19         THE COURT:  11668.

20         MR. GUZALL:  Okay.

21         THE COURT:  The city's reply.

22         MR. GUZALL:  11668.

23         THE COURT:  That's part of its motion.  I'll read it

24  to you.  It says two, number two, the city will pay to General

25  Shale Brick Company the amount of $20,000.  Paragraph 3,

1  General Shale Brick Company's claim number 1075 is allowed as

2  -- is allowed a Class 14 other unsecured claim in the city's

3  bankruptcy case in the amount of 7,271.94.

4           MR. GUZALL:  Correct, Your Honor.  And that's the

5  same thing that was stated in the -- in the objection at

6  11667.  So and I apologize, Your Honor.  I have both documents

7  in front of me, but yes, my client is not disagreeing with

8  General Shale's --

9           THE COURT:  All right.

10          MR. GUZALL:  -- coming in here and -- and claiming

11  those amounts.

12          THE COURT:  Neither you nor your client, Mr.

13  Beydoun.

14          MR. GUZALL:  I don't have an objection either, Your

15  Honor, no.

16          THE COURT:  All right.  Okay.  So then the question

17  -- same question I put the same question then to Kajy

18  Development.  That's Mr. Bapacker, correct?

19          MR. BAPACKER:  That's correct, Your Honor.  Afan

20  Bapacker on behalf of -- of Kajy Development

21     We would not have an objection being that General Shale

22  Brick's garnishment was personally timed to ours.  Our

23  position is that -- different from -- I think would not allow

24  for us to even claim these -- any interest in what's being

25  given to General Shale Brick, so we have no objection to it.

1          THE COURT:  All right.  So Mr. Spinner, let's come

2     back to you.  Now we move on to the -- I gather what's

3     apparently still a dispute, or may still be a dispute between

4     Mr. Beydoun on the one hand and Kajy Development on the other

5     hand.

6          MR. SPINNER:  That is correct.  Taking a pause from

7     all, we've managed to narrow down what I think was one, two,

8     three, four, five or some -- four or five different claimants

9     down to basically one dispute remaining amongst three

10     claimants.  So I think we -- we have made progress.

11          The dispute between Beydoun and Kajy does raise some

12     interesting questions.  The city is unsure of the

13     jurisdiction.  It is not entirely clear that the Court should

14     be deciding third party disputes over the validity of State

15     Court judgments and further it's not clear at all to us that

16     the Court should be distracted by these disputes at all.

17          So case law we think provides the answer.  The original

18     case law of garnishments is as I found out, does not permit

19     garnishments at all.  They find that they interfere with the

20     process of bankruptcy.  And we cited NVLand, Inc. v Vogel, In

21     Re: Ocean Downs Racing Association at 164 BR 249.  And also a

22     6th Circuit case under the Bankruptcy Act, Berman v National

23     Finance Company, In Re: Berman and Company, 378 F 2d 252.  And

24     that's a 6th Circuit case from 1967.

25          But the modern view is -- appears to be that garnishments

1 are permitted so long as they can be accomplished and

2 accommodated without undue interference in the city or the --

3 the bankruptcy case in question and if the trustee agrees.

4     So here if it can be done basically by adjustment of

5 claims and if the city is willing which it is, if it can be

6 accomplished by the adjustment of claims when the garnishments

7 should be followed and honored and the citations for that were

8 In Re: Brickell, 282 BR 705. That is a bankruptcy case in

9 Southern District of Florida, 2005. And the appellant version

10 of the same Brickell v Dunn, In Re: Brickell, 142 F App 385 at

11 the 11th Circuit in 2005.

12     And of course if it turns out that the parties are going

13 to insist on having evidentiary hearings and -- and battles

14 over the ownership, we would go back to the rule that no

15 garnishments are allowed if they're going to interfere with

16 the case as -- as part of the Brickell case.

17     So we proposed that after the General Shale Brick claim

18 is allowed there is still $2,266,021.12 that remains as a

19 Class 14 claim. We propose to allow the parties Beydoun,

20 Guzall, and Kajy to figure out if there's some way that they

21 can development that -- you know, parse that out to up to

22 three unsecured claims to replace claim 201. And so long as

23 the numbers do not exceed the amounts that the -- and

24 therefore increase the city's liability, we would have no

25 objection to allowing that having the claims agent so adjust.

1        If they cannot come up with a consensual resolution, then

2   we would say that according to the case law, the -- the rule

3   should be that the garnishment should be not allowed in the

4   Bankruptcy Court.  That does not deprive anybody of their

5   state law rights once the monies are ultimately disbursed.

6   They can go fight over it then.

7        But it would be an interference with the city's

8   Bankruptcy Court to hold evidentiary hearings and challenge

9   the validity of State Court judgments in this Court.  And

10  that's the city's position with respect to claim 201.

11          THE COURT:  A couple of questions.  Most of the --

12  it seems to me most of the cases -- I looked at the Brickell

13  case, the 11th Circuit version of the Brickell case for

14  example.  They seem to be talking about whether or not

15  Bankruptcy Courts should be allowed to or required to

16  recognize garnishments that are served on the trustee.

17       That is essentially post-petition garnishments in which a

18  creditor of the bankruptcy debtor seeks to garnish -- I'm

19  sorry a creditor of a creditor -- a creditor of a creditor in

20  the bankruptcy case seeks to garnish that creditor's

21  distribution that's coming to them in the -- in the bankruptcy

22  case from the trustee to satisfy a debt that the creditor

23  receiving distribution notice to the other creditor.

24       In this case what we're talking about are -- are

25  pre-petition garnishments as I understand it that were served

1 on the city.

2          MR. SPINNER:  Uh-huh.

3          THE COURT:  By creditors of Michael Beydoun, Kajy

4 Development, and General Shale Brick.  And General Shale Brick

5 filed a proof of claim, 1075.  Kajy Development did not file a

6 proof of claim as I understand it.

7     And I'm wondering if the -- if this -- if this matter of

8 garnishment and what to do with these garnishments rests on a

9 little different footing than -- than we might have in a

10 situation like Brickell where the trustee -- the issue is can

11 a -- can a trustee be served with a garnishment rather than a

12 debtor pre-petition serving the garnishment.

13     I'm wondering whether Kajy Development's failure to file

14 a proof of claim should result in the Court not recognizing

15 the garnishment but just leaving it to Kajy Development to

16 pursue whatever Beydoun gets in distribution of the bankruptcy

17 case just because Kajy didn't file a proof of claim.  And --

18 and I know you've -- you've -- you started out this hearing by

19 -- by saying the city doesn't think Kajy was required to file

20 a proof of claim because they're -- they're just -- they're

21 going after property of Michael Beydoun and not the city.

22     But under the garnishment, Michigan garnishment statute

23 the -- and the Michigan Court Rules on garnishments, the city

24 has liability as a garnishee to the garnishing creditor,

25 doesn't it?  Isn't that a claim against the city that Kajy --

1  that arose in favor of Kajy pre-petition.  And if so weren't

2  they required to file a proof of claim in order to have any

3  sort of recognition or benefit of that claim.  Do you see what

4  I'm asking?

5         MR. SPINNER:  I do, Your Honor.  And we -- we

6  wrestled with this.  I have to be honest with you, if you

7  looked at the case law on garnishments it's somewhat scarce

8  and not fully developed.

9     We thought about whether or not there was a claim.  We

10 ultimately decided that this is where the city would go

11 because we felt that it was against property of the city and

12 not the city -- property of Beydoun and not the city itself.

13    I do recognize the -- the references you make and I

14 cannot say that's not a valid conclusion.  It just -- after

15 weighing the choices we came up with the conclusion that we

16 did.  We would not --

17        THE COURT:  I mean both -- both approaches, the

18 city's view and -- and this approach that I've suggested in my

19 question which I'm --

20        MR. SPINNER:  Yes.

21        THE COURT:  I'm not ruling that way at this point.

22        MR. SPINNER:  Of course.

23        THE COURT:  I'm just asking.  But -- but each

24 approach might lead ultimately to the same result which is

25 perhaps Kajy gets nothing in the bankruptcy case but they're

1    free to go chase whatever Beydoun gets from the bankruptcy

2    case in State Court as a means of, you know, under state law

3    collecting their judgment.

4        You proposed such an outcome essentially in your latest

5    proposed order as I understand it.  But that's -- that would

6    essentially be what happens if Kajy and Beydoun cannot reach

7    some sort of agreement in this case on -- on what's to happen

8    with Beydoun's claim as against Kajy, right?

9            MR. SPINNER:  Yes, Your Honor.  I guess -- I guess

10   the way the city would take it is, Your -- Your Honor's

11   comments are well taken.  Whichever approach you take, they do

12   tend to lend to the same result.

13       If there's a consensual settlement, the city is more than

14   happy to have Kurtzman Carson adjust the claims register

15   accordingly because it doesn't have a major impact on the

16   city, it's just an adjustment of claims and it will be paid in

17   due course.

18       The legal theory, both seem to end at the same place.  If

19   they can't get there, this garnishment shouldn't be here.  And

20   as far as city is concerned I think that's just fine.

21           THE COURT:  Have you talked to counsel for Beydoun

22   and counsel for Kajy Development about this approach that you

23   proposed in your reply brief, proposed order?

24           MR. SPINNER:  I have had a chance to talk to

25   Attorney Guzall.  I have not have a chance to talk to

1  attorneys for Kajy.

2          THE COURT:  I mean we'll hear from them of course.

3          MR. SPINNER:  Of course.

4          THE COURT:  But there's not, as far as you know,

5  there's not yet agreement on that approach.

6          MR. SPINNER:  No, Your Honor.  And that's part of

7  the reason Mr. Swanson expected that we would have this

8  hearing is because one question we anticipate you're going to

9  be asking is, do you attorneys agree with this and if you do

10  consider this resolved in the matter proposed and if not, what

11  else would you propose.  So that's why we figured this hearing

12  would now be down to this limited issue which in the city's

13  estimation is still great progress from where we started.

14          THE COURT:  All right.  Did you want to say anything

15  else before we hear from the other attorneys?

16          MR. SPINNER:  No, Your Honor.

17          THE COURT:  All right.  Mr. Colucci, I assume is

18  counsel for General Shale.  You don't -- your client doesn't

19  care about this piece of the dispute.

20          MR. COLUCCI:  No, Your Honor.

21          THE COURT:  All right.   Then Mr. Guzall, let me

22  hear from you next about this piece of the -- the puzzle.

23  Then we'll hear from Mr. Bapacker as counsel for Kajy

24  Development.

25          MR. GUZALL:  Certainly.  Thank you, Your Honor.

1      Your Honor, upon the filing by the City of Detroit, I

2  contacted City of Detroit attorneys and spoke with I believe

3  Mr. Spinner and indicated that I would reach out to Mr. Yaldo

4  in attempt to resolve the matter prior to having to engage the

5  Court any further and waste the Court's time.

6      I did in fact reach out to Mr. Yaldo.  I sent him an

7  email with a proposal to attempt to just panel the matter

8  without further litigation.  I have not heard back from Mr.

9  Yaldo.  Mr. Yaldo filed a document today, a consent judgment.

10          THE COURT:  I saw that.

11          MR. GUZALL:  Sure, which was faded on the back and I

12  couldn't read the signature of what he claims to be my

13  client's signature, so I contacted his office about ten or 15

14  minutes after the filing which is when I opened the email and

15  saw the email.  I left a message, I was not able to get a hold

16  of anybody there.  I asked for a return phone call.

17      It's my client's position and I think it's within the

18  affidavit that there was an understanding that both parties in

19  this Kajy Development case were going to walk away and neither

20  was going to pay the other any monies.  And so this consent

21  judgment is as I understand, new to my client, has not seen

22  this document, and that's why I asked for a -- a clearer copy

23  to illustrate -- show the signature of my client allegedly on

24  this document.

25      Be that as it may, Your Honor --

1          THE COURT:  Well, is there any doubt that this

2  consent judgment was in fact entered by the circuit -- Wayne

3  County Circuit Court as indicated by the file stamp and Judge

4  signature on the document?

5          MR. GUZALL:  I can't answer that question.  I wasn't

6  a part of this at all, I don't know.

7          THE COURT:  What you're worrying about it sounds --

8  is it just that perhaps Mr. Beydoun in fact did not sign and

9  agree to this consent judgment?  Or I'm sorry, yeah, Mr.

10 Beydoun did not sign and agree to this?

11         MR. GUZALL:  That is Mr. Beydoun's position.  I was

12 not involved.  I don't know about any of these documents.

13 I've never seen them.  I don't --

14         THE COURT:  He says -- he says he didn't sign this

15 consent judgment?

16         MR. GUZALL:  That's his position, yes.

17         THE COURT:  All right.

18         MR. GUZALL:  To my understanding that he didn't,

19 yeah.  That he thinks this was cut and pasted or copied on

20 here.  He's never seen this and didn't sign it.  It was his --

21         THE COURT:  So Mr. Beydoun's position, bottom line

22 position essentially is, is that -- and I think as you argued

23 in your papers that you filed that the pre-petition

24 garnishment by Kajy Development served on the city is not

25 proper.  Shouldn't be valid, should be ignored.

1          MR. GUZALL:  Correct, Your Honor.  Agree with the --

2     the arguments that were made and -- and some of the

3     suppositions that were made by the Court in that there was no

4     proof of claim filed, number one.  And number two, even if

5     there was the law cited by the city there's -- there's no

6     objection to that law by Mr. Beydoun.

7          But again in an attempt to settle all of this, I reached

8     out to Mr. Yaldo and I -- I spoke with the city's attorneys

9     and stated I didn't have an objection -- my client didn't have

10    an objection to trying to work things out with Mr. Yaldo and

11    his client over the next couple weeks to sort of try to come

12    to some sort of agreement just to quash everything and end

13    everything.

14         So that's what I've attempted to do, Your Honor, in terms

15    of reaching out.  And I've also discussed with the city

16    attorneys filing a proposed order in regards to the attorney

17    fees that are claimed by my law firm so that may go much more

18    simply through the Court system as well if as I understand in

19    terms of my conversations with the City of Detroit.

20         But prior to doing that, trying to work out this

21    situation with Kajy.  And if we can't then my client's

22    position is on point with what the Court indicated just here

23    today and the City of Detroit that Kajy Development is then

24    just going to have to search for another avenue to come after

25    those monies owed by Mr. Beydoun that they claim are after the

1  bankruptcy is -- is over, or outside of the Court -- the

2  Bankruptcy Court if you will.

3        THE COURT:  Is it your view on behalf of Mr. Beydoun

4  that Kajy Development was required to file a proof of claim in

5  the Detroit bankruptcy case in order to have its garnishment

6  based claim recognized in any way?

7        MR. GUZALL:  Yes, Your Honor.

8        THE COURT:  Why do you say that?  Why do you say

9  that's so?

10        MR. GUZALL:  Well, Your Honor, Shale filed a proof

11  of claim.  And as Your Honor -- Your Honor indicated, a proof

12  of claim gives everybody notice that ,including City of

13  Detroit, that there is this proof out there.  It's sort of a

14  surprise at the eleventh hour that Kajy is now coming in and

15  saying oh, well, we're owed money as well.

16     It holds everything up, it ties everything up, and I

17  agree with the Court's, you know, questions and -- and points

18  prior that there's just -- there's no proof filed and

19  therefore it shouldn't be deemed valid by the Court.

20        THE COURT:  All right.  Anything else you want to

21  say?

22        MR. GUZALL:  No, Your Honor.

23        THE COURT:  All right.  Mr. Bapacker on behalf of

24  Kajy, what would you like to say?

25        MR. BAPACKER:  Thank you, Your Honor.  Just to point

1    the Court's attention to Kajy's motion or response to the

2    motion to allow claims.

3         There's a settlement agreement also attached that it was

4    incorporated as part of making out the consent judgment that I

5    attached.  And -- and I'll just clarify for the Court.  I

6    filed that consent judgment not realizing that it wasn't

7    originally filed with the papers in the response pleadings

8    that we -- that we had filed to the city's motion.

9         And I -- I noticed that this morning when I was prepping

10   for my hearing, so I wanted to upload it so that everybody

11   would have a copy of it.  But the settlement agreement

12   purports to be signed by Michael Beydoun as well and there's a

13   notary stamp there.

14        The consent judgment that I have that doesn't really

15   clearly show a signature and I'll admit that because it's

16   pretty -- pretty apparent there.  But it was signed by the

17   Circuit Court and I'm sure a true copy exists somewhere.

18        As far as the dispute, I really don't see it.  There's a

19   valid State Court judgment that was entered.  That State Court

20   judgment -- there was a garnishment that was issued to Mr.

21   Guzall's office that was also attached to our motion that that

22   was issued way before, I believe, even this bankruptcy was

23   filed if I see --

24             THE COURT:  I didn't see, maybe I missed it, but in

25   the exhibits attached to your response to the city's motion,

1  docket 11657, I didn't see a writ of garnishment directed to

2  the City of Detroit as a garnishee.  Is there one in there?

3          MR. BAPACKER:  There is one -- yeah, I'm sorry, Your

4  Honor.  There is one, it wasn't attached to our motion, but it

5  is attached to the city's motion.  I believe it's the last

6  exhibit in the city's motion.

7          THE COURT:  Oh, all right.  Hold on.  Oh, I see,

8  yeah.  Pdf Page 49 of 49, I think.

9          MR. BAPACKER:  Yes, I believe it's the last page.

10         THE COURT:  Okay.  So that was issued on May 20,

11  2011.

12         MR. BAPACKER:  That's correct.  And on the same date

13  another writ of --

14         THE COURT:  A little more than two years before the

15  city filed its bankruptcy case.

16         MR. BAPACKER:  That is correct.  Barry Seifman was

17  issued the same garnishment as well as Mr. Guzall was issued

18  the same writ of garnishment.  Those were attached to our

19  motion on the same day.  So I don't see this -- the statements

20  made here today are -- I'm not aware of the judgment or not

21  aware of this claim or the garnishment where there's clear

22  evidence that they received them and actually responded to and

23  signed the -- the disclosures that are -- were submitted back

24  to the Third Circuit Court and filed them with the Court.

25         There's actually a letter from --

1           THE COURT:  Did the city file a disclosure?

2           MR. BAPACKER:  I believe that is the -- what's

3   attached to the city's motion is the response, the disclosure

4   there.  Let me just go back to it here.

5           THE COURT:  Well, I didn't catch that.

6           MR. BAPACKER:  If you -- the garnish -- the request

7   and a writ of garnishment, I don't see the disclosure

8   actually, it's just a request and writ of garnishment that was

9   filed.

10          THE COURT:  Did the city file a disclosure?

11          MR. BAPACKER:  I don't know that they did, I'm not

12  sure.

13          THE COURT:  With the State Court, I mean?

14          MR. BAPACKER:  Yeah.  I don't know that they did.

15          THE COURT:  Did the city ever become liable under

16  this garnishment as a garnishee under the Michigan Court Rule

17  under this garnishment statute?

18          MR. BAPACKER:  If they don't file a disclosure

19  within the allotted time then they would become liable, but

20  only after a default is entered and the judgment is entered.

21  And that's a point as to -- what I was trying to make with

22  when it relates to the State Court, a garnishee becomes liable

23  for not fulfilling a garnishment disclosure responding and

24  submitting the writ or -- or submitting the disclosure and

25  then a default could get entered against the garnishee and

1  then a motion for entry of default and a subsequent judgment

2  would get entered against the garnishee.  None of that

3  happened to my understanding in -- in my review of the

4  documents.  So I -- we don't believe this --

5       THE COURT:  Well, but isn't it correct that under

6  the Michigan Court Rule, you know, with garnishments as I

7  understand it, it's Michigan Court Rule 3.101(g) which is

8  titled liability of garnishee.

9       Isn't it correct that the garnishee in this case the City

10  of Detroit under this court rule would -- was -- would have

11  become liable for under sub part (1)(d) of that 3.101(g),

12  liable for all debts, whether or not due, owing by the

13  garnishee, that's the city to the defendant, that's Beydoun,

14  when the writ is served on the garnishee with certain

15  exceptions.

16       So didn't that create a debt owing from the City of

17  Detroit as garnishee to your client, Kajy Development, LLC, as

18  soon as the writ was served on -- the writ of garnishment was

19  served on the city back in May 2011?

20       MR. BAPACKER:  My understanding is if not paid.  But

21  I guess that's not what the court rule says, or if not

22  responded to.

23       THE COURT:  Well, you know they didn't pay.

24       MR. BAPACKER:  Yeah.

25       THE COURT:  I assume everybody agrees they didn't

1  pay.

2          MR. BAPACKER:  Well, yeah, they haven't paid, but

3  our  our idea is they will pay something eventually.  And our

4  -- our claim is against that something.  And we're not --

5  we're not looking at it from the perspective that we have any

6  claim and that's what our response says.  We don't feel that

7  -- or Kajy feels that they don't have a claim against the city

8  at all and that's why no claim was ever filed.

9          THE COURT:  What is -- is there a mechanism that's

10  fair and appropriate here to all parties by which the State

11  Court in which the garnishment -- the judgment was issued, the

12  garnishment was issued would decide any disputes between Kajy

13  Development and Beydoun, Michael Beydoun about this dispute

14  between them about whether there's a valid judgment and a

15  valid garnishment, those sorts of things?

16          MR. BAPACKER:  The only mechanism I see is Mr.

17  Beydoun filing a motion to set aside that judgment.  It was a

18  consent judgment and if he's claiming fraud, it's a ten year

19  old judgment which he had notice of in 2011.

20          THE COURT:  Maybe I didn't -- I wasn't clear enough

21  in my question.

22          MR. BAPACKER:  Yeah.

23          THE COURT:  What I'm -- what I'm getting at is you

24  know, I scratch my head and say why should this Court decide

25  this dispute between these two creditors -- between these two

1  parties, neither of whom are debtors in the bankruptcy case

2  and not instead find a way to leave it to the State Court.

3          MR. BAPACKER:  Yeah.

4          THE COURT:  To decide that issue because that's

5  typically, and you know, I think appropriate -- appropriately

6  where it belongs.

7          MR. BAPACKER:  I would agree with that but we're

8  actually not asking this Court to decide the dispute.  We're

9  asking this Court to grant a transfer of rights to the -- to

10  the claim that was filed by Michael Beydoun to my client

11  because of the garnishment that was served upon the city.

12          THE COURT:  That's a decision on the dispute.  That

13  says -- that's a decision premised on the proposition that the

14  garnishment is valid because the judgment is valid.

15          MR. BAPACKER:  That's correct.

16          THE COURT:  Which is -- which are disputed by -- by

17  Michael Beydoun.  You may think the dispute is without merit

18  or even frivolous --

19          MR. BAPACKER:  Yeah.

20          THE COURT:  -- but it's -- it's there.  And so some

21  Court may have to decide that dispute.

22          MR. BAPACKER:  Sure.

23          THE COURT:  And I don't -- it doesn't strike me that

24  this is the Court that ought to do that.

25          MR. BAPACKER:  I agree with that.  I completely

1 agree, but I don't -- I don't agree that the disposition of

2 honoring a State Court judgment that is valid and has been

3 entered for over -- well, close to ten years now, is outside

4 this Court's jurisdiction which I've -- I've seen this Court

5 do before.

6     I think that's really what we're asking for is for this

7 Court to honor the State Court judgment that was entered.  The

8 garnishment is just an extension of that and -- and a transfer

9 of claim I think is -- is within this Court's jurisdiction to

10 -- to transfer that portion of that claim to my client.

11          THE COURT:  All right.  Anything else you'd like to

12 say?

13          MR. BAPACKER:  Nothing else, Your Honor.

14          THE COURT:  Mr. Spinner, back to you.  Did you want

15 to say anything further here?  Actually, Mr. Bapacker, I

16 didn't -- I should have asked you this before I -- I let you

17 go.  And that is, you've seen this proposed order the city

18 attached to their reply brief as part of this motion.  It's at

19 docket 11668, I assume.

20          MR. BAPACKER:  Right.

21          THE COURT:  Does Kajy agree or not agree with that

22 proposed order and approach?  And -- and I don't mean just the

23 part dealing with General Shale --

24          MR. BAPACKER:  Yeah.

25          THE COURT:  -- but all the rest of it

1          MR. BAPACKER:  Yeah.  We don't agree with treatment

2    of our claim as a -- as a Class 14 claim, only because that

3    would just dilute our -- our claim and we'd only get a

4    percentage of the payment.

5       Our -- our position is that we should get a transfer of

6    whatever claim Beydoun gets.  And that may or may not fully

7    satisfy our claim, but I think it definitely --

8          THE COURT:  Well, Beydoun is going to get a Class 14

9    claim, isn't he?

10          MR. BAPACKER:  He's going to get a Class 14 claim.

11    We want a full claim against his Class 14 claim as that's what

12    the garnishment would -- would yield and the garnishment

13    rights we have against any asset he receives.

14       So if he were to receive for example if I throw out a

15    number of 10% and receive $226,000, then our claim would be

16    fully satisfied through that.  And that's the issue we have

17    for -- for treating our claim as a Class 14 claim.

18          THE COURT:  Oh, I see.  You're worried that -- well,

19    I think I understand your point.

20          MR. BAPACKER:  Yeah.  It would just dilute our claim

21    and then we -- we would --

22          THE COURT:  What about the rest of the order, the

23    other aspects of it.

24          MR. BAPACKER:  I believe there is also --

25          THE COURT:  And basically Paragraph 7 of this

1  proposed order by the city says if -- if Beydoun and Kajy

2  don't reach an agreement by November 30th on these matters, the

3  garnishment filed by Kajy Development will be ignored.

4             MR. BAPACKER:  I don't think --

5             THE COURT:  Isn't that what 7, Paragraph 7 says?

6             MR. BAPACKER:  Yeah.  We wouldn't agree with them.

7  In addition I -- I should only agree with the characterization

8  that it's actually difficult for the city to -- to pay this

9  claim.  As -- as I've stated, I don't think there's any

10 dispute here for this Court to decide on -- on the issue of

11 whether or not the judgment is valid.  We're talking about a

12 ten year old judgment.

13      So the city would basically be cutting two checks out,

14 whether it's multiple claims or whether it's paying Mr.

15 Beydoun and then paying my client through the transfer of

16 claim.  So I don't see any difficulty here at all.  It's --

17 it's just a matter of how it's paid and how much -- how much

18 of it is paid to my client.

19            THE COURT:  Did you want to say anything about the

20 question I asked Mr. Spinner which is essentially why Kajy

21 Development was not required to file a proof of claim in this

22 bankruptcy case.

23            MR. BAPACKER:  Our -- our -- our position is that we

24 weren't required to file a proof of claim.

25            THE COURT:  And why not?  Why not?

1          MR. BAPACKER:  We don't see ourselves as creditors

2   of the -- of the Detroit -- of the City of Detroit.  And I

3   guess --

4          THE COURT:  That's sort of the point of my question

5   about the Michigan Court Rule --

6

7          MR. BAPACKER:  Yeah.

8          THE COURT:   -- that I asked you earlier.  Under the

9   Michigan Court Rule, Michigan law as garnishee here it says

10  the city is liable to a certain extent to -- to your client.

11  So --

12         MR. BAPACKER:  That is correct.  The liability --

13         THE COURT:  Your client is a creditor of the city,

14  you had a claim against the city before the bankruptcy was

15  filed as I understand it based on this garnishment.  Why

16  didn't -- why wasn't your client required to file a proof of

17  claim like every other creditor against the city?

18         MR. BAPACKER:  Well, but you're -- you're taking the

19  code section as far as liability and extending that to treat

20  my client as a creditor.  I think those are two different

21  things within the context of what we're talking about.

22         THE COURT:  Doesn't a judgment creditor become a

23  creditor of the garnishee under Michigan Court Rule 3.101(g)?

24         MR. BAPACKER:  If -- my understanding is that's true

25  if certain -- if a judgment has been entered against a

1  judgment creditor. Because a judgment has to be entered

2  against a judgment creditor in order to --

3              THE COURT: Well, that's how you -- that's how you

4  get a judgment on a claim.

5              MR. BAPACKER: That's correct.

6              THE COURT: It doesn't create the claim, does it?

7  Doesn't 3.101(g)(1) of the Michigan Court Rules say the

8  garnishee is liable.

9              MR. BAPACKER: That's correct.

10             THE COURT: For all debts whether or not due owing

11 by the garnishee to the defendant when the writ is issued on

12 the garnishee.

13             MR. BAPACKER: That's correct. But the point is, I

14 don't believe that makes our client a creditor of the  -- of

15 the City of Detroit. If -- if liable, there's an asset that

16 hold the liability is -- is satisfied when that asset is

17 turned over. I don't see how -- how both of those things --

18             THE COURT: Yeah, but let's take the hypothetical.

19 Forget about bankruptcy for a minute. Assume there's no

20 bankruptcy.

21             MR. BAPACKER: Uh-huh.

22             THE COURT: That you serve a writ of garnishment on

23 the city.

24             MR. BAPACKER: Sure.

25             THE COURT: The city ignores it.

1          MR. BAPACKER:  Sure.

2          THE COURT:  And they pay everything to Beydoun, your

3    judgment debtor, your client's judgment debtor.

4          MR. BAPACKER:  Sure.

5          THE COURT:  Under the Michigan Court Rules the

6    statute on garnishments you have a claim against the city for

7    the full amount of your debt up to the amount of whatever the

8    city owed to Beydoun when they were served with the writ,

9    don't you?

10         MR. BAPACKER:  Yeah, sure.  But in the hypothetical

11   they've already -- they haven't paid it in -- in this

12   scenario.  The asset still is held by the city.  The claim

13   hasn't been paid.

14      In my opinion the liability doesn't extend to confirm my

15   client as a creditor until the disposition of that asset.  And

16   right now we're talking about a claim that's the asset.  Our

17   claim is against that asset.

18      They're not a creditor until that asset has been disposed

19   of one way or another.  So I -- I just don't see --

20         THE COURT:  Well, and roughly a little more than two

21   years passed from the issue -- the service of the writ on the

22   city and the city's bankruptcy case.  What happened during

23   that two year period?

24         MR. BAPACKER:  I -- I have no idea.  I wasn't

25   involved in this during the two year period.

1          THE COURT:  I know part of what apparently was going

2    on was the city was appealing the judgment that they obtained

3    against it which apparently was only that appeal process was

4    only confirmed -- or concluded post-bankruptcy.

5          MR. BAPACKER:  Sure.

6          THE COURT:  But there was a judgment against the

7    city, right?  That -- that was entered well before the

8    petition date, bankruptcy --

9          MR. BAPACKER:  Beydoun's judgment against the

10    city's.  I don't believe --

11          THE COURT:  Beydoun's right against the city.

12          MR. BAPACKER:  Yeah.

13          THE COURT:  Yeah.

14          MR. BAPACKER:  Yeah, that's correct, yeah.

15          THE COURT:  All right.  Anything else you want to

16    say?

17          MR. BAPACKER:  Nothing else, Your Honor.

18          THE COURT:  All right.  Thank you.  Mr. Spinner, I'm

19    sorry, I -- I called on you earlier.  What do you want to say

20    further if anything?

21          MR. SPINNER:  It's quite all right, Your Honor.

22    Your Honor, all roads lead to Rome it looks like.  No matter

23    which theory of the two theories you espouse, I think we end

24    up with the proposed order as a -- as a reasonable resolution.

25          Under the suggestion you had, Your Honor, that this is a

1 claim against the city and no proof of claim was filed, then

2 Kajy's garnishment should be ignored.  But again the parties

3 should come up with a reasonable agreement, nobody of course

4 is going to object to that and so our order would be

5 appropriate.

6 If it turns out that they didn't have to file a proof of

7 claim and the garnishment is -- is valid as it is, but there's

8 a valid dispute right as you pointed out, Your Honor, no

9 matter how frivolous it is or not frivolous, the city is not

10 here to take a position on that and it merely complicates the

11 bankruptcy.

12 In that case, case law says it should be ignored unless

13 of course the parties can reach a settlement that makes it

14 relatively simple to implement.  So in both cases no matter

15 how you get there or now you go you end up in the same place.

16 My only other observation from -- from listening to

17 Kajy's argument today, is that Kajy said I don't want a Class

18 14 claim, I want to be paid in full.  Well, there's really

19 nothing the city can do because the city is going to be

20 awarding Class 14 claims.

21 Until actually they get resolved out a -- a numerator or

22 denominator fixed and a cash dollar amount is fixed, the city

23 is not going to be able to write a check to these people even

24 if they wanted to.

25 So if we take him at his word that they want dollars then

1  they have to wait until the claim is paid to Mr. Beydoun and

2  go after them because there's no way for us to know that until

3  pretty much all of these claims are resolved.

4        One way or the other we end up in the same place.  Either

5  the garnishment should be resolved consensually, or it should

6  be ignored.  And since they all end up in the same place, Your

7  Honor, it almost becomes irrelevant to the city of which path

8  is chosen.

9        The only questions that the city wants to make sure of is

10 that when we're done, we pay off the General Shale garnishment

11 and General Shale has no further claims against the -- the

12 city's claim of 201.  And whatever we do resolving these

13 garnishments the total exposure of the city is no more than

14 the remainder of claim 201.  As long as the city is not

15 otherwise inconvenienced, this Court's not inconvenienced,

16 we're not going to object to giving the parties a chance to

17 resolve things early, but otherwise we would say leave them to

18 their State Court remedies.  Do you have any questions for me,

19 Your Honor?

20        THE COURT:  No further questions.  Thank you.  One

21 moment.  All right.  Thank you all.  I'm going to rule on this

22 now.

23        And this is -- I view that this motion filed by the city

24 -- City of Detroit's motion to determine rights to claim

25 number 201, docket 11624 that we've been hearing as well as --

1  is resolved by agreement of all of the parties who have

2  responded and who are concerned with that motion and affected

3  by it in part.

4      And that part is -- concerns the part that essentially it

5  comprises the relief provided in Paragraphs 2 and 3 of the

6  city's proposed order that was attached to the city's reply

7  brief filed November 10 at docket 11668.  That is the

8  provisions regarding General Shale Brick Company and its

9  treatment and participation in this claim 201 and how they're

10 to be dealt with and treated.

11     And so to that extent the motion is resolved by agreement

12 of the parties and I will approve that agreed resolution or

13 partial resolution.  That resolution, or settlement, or

14 agreement also of course resolves the city's -- in -- in -- in

15 its entirety the city's objection to the claim filed by

16 General Shale Brick Company, claim 1075.  That claim objection

17 was filed at docket 11623 and was -- was heard today as part

18 of this.

19     The rest of -- or unresolved portion or aspects of the

20 city's motion to determine rights to claim number 201 concern

21 Kajy Development, LLC and a dispute -- a dispute between --

22 that continues to exist between Michael Beydoun on the one

23 hand and presumably also is attorney Mr. Guzall on the one

24 side on the one hand and Kajy Development, LLC on the other

25 hand.

1    The claim number 201 at issue, a copy of that is attached

2    to the city's motion, docket 11624 as Exhibit 6-1, was a claim

3    in the box where it says name of creditor, it says Michael

4    Beydoun and his attorney Raymond Guzall, III.  So it's a claim

5    filed jointly by Mr. Beydoun and his attorney, Mr. Guzall.

6    And I -- I viewed those parties as -- and those claimants

7    under that proof of claim as contesting the -- and opposing

8    and the Court granting any sort of relief in favor of Kajy

9    Development, LLC.  Those parties take the position as they

10   have argued in Mr. Beydoun's written papers and in the hearing

11   today that -- that Kajy Development, LLC is not a legitimate

12   judgment creditor or a creditor otherwise of Mr. Michael

13   Beydoun individually.  And that if there was a judgment

14   obtained against -- and this -- there appears to have been a

15   judgment obtained and filed in State Court long before the

16   city's bankruptcy case was filed.  That's that consent

17   judgment that was filed today as an exhibit by Kajy

18   Development.

19   That that judgment is invalid because Mr. Beydoun --

20   according to Mr. Beydoun he did not sign off.  That's not his

21   signature on the last page of that document consenting --

22   purporting to consent to entry of the judgment.  And therefore

23   the post-judgment garnishment writ that was issued and served

24   on the city by Kajy Development in an effort to collect that

25   consent judgment against Michael Beydoun which was done in May

1  2011 roughly, is invalid.

2      So Mr. Beydoun and Mr. Guzall on the one hand contend

3  that Kajy Development, their garnishment, their pre-bankruptcy

4  petition garnishment against the city should be ignored

5  completely and Kajy should get nothing.

6      The Kajy Development of course takes quite the opposite

7  view and contests that and contends its -- its consent

8  judgment is valid, that its garnishment served on the city in

9  May 2011 is valid and therefore it should -- its garnishment

10 writ should be recognized and given effect as part of the

11 Court's treatment of claim number 201.

12     This dispute between Mr. Beydoun and Mr. Guzall on the

13 one hand and Mr. -- and Kajy Development, LLC on the other

14 hand is a dispute that in my view clearly should be decided by

15 the State Court.  That is the dispute about the validity of

16 the consent judgment, the validity of any garnishment writ,

17 especially the -- the dispute about the validity of the

18 consent judgment that was entered in the State Court.  That

19 should be decided by the State Court, not by this Court in the

20 bankruptcy case of the City of Detroit.

21     And for this Court, this Bankruptcy Court to have to

22 decide that dispute in my view would unnecessarily complicate

23 the administration of the bankruptcy estate in the City of

24 Detroit case within the meaning of that concept of unnecessary

25 complication that's referred to by the 11th Circuit, U.S. Court

1   of Appeals in the <u>Brickell</u> case cited by the city, <u>In Re:</u>

2   <u>Brickell</u>, 142 F App 385 at Page 390, the 11th Circuit in a

3   decision from 2005 held that garnishments, in this case

4   garnishment of a bankruptcy trustee, can be recognized or

5   ignored but the key consideration is according to the Court

6   the following.

7       "While a garnishment should not be allowed if it

8   unnecessarily complicates the administration of the bankruptcy

9   estate."

10      In my view that is exactly what will occur here if this

11  Court allows and gives recognition to and attempts to provide

12  relief to Kajy Development based on its pre-petition

13  garnishment writ served against the City of Detroit.  And for

14  that reason the Court is not going to grant any relief in

15  favor of Kajy Development based upon its pre-petition

16  garnishment writ served on the City of Detroit.

17      And essentially is going to ignore the writ of

18  garnishment served by Kajy Development, LLC on the City of

19  Detroit for purposes of determining the rights of competing

20  parties to claim number 201 filed by Mr. Beydoun and Mr.

21  Guzall jointly and any distributions in the bankruptcy case of

22  the City of Detroit based on that claim.

23      There's a -- a second reason, however, and perhaps a more

24  fundamental reason why the Court is ruling this way.  And that

25  is in my view Kajy Development, LLC was required to file a

1  proof of claim in the City of Detroit bankruptcy case and to

2  do so by the claims bar date and did not do so.  It was

3  required to file a claim in the City of Detroit case in my

4  view for its garnishment writ to be recognized because well

5  before the filing of the City of Detroit bankruptcy case in

6  July 2013, this writ of garnishment by Kajy Development had

7  been served upon the city.  That happened back in May 2011 as

8  Page 49 of -- pdf Page 49 of the city's motion shows.

9      And under the applicable Michigan statutes and court

10  rules, the service of that writ on the City of Detroit made

11  Kajy Development, LLC a creditor of the city and gave it a

12  claim against the city which obviously arose well before the

13  City of Detroit's bankruptcy case was filed.

14      So Kajy Development had a pre-petition claim against the

15  City of Detroit by virtue of its garnishment writ.  Among

16  other Michigan authorities that demonstrate this is, as I

17  pointed out in the questioning of counsel in today's hearing,

18  Michigan Court Rule 3.101(g)(1), sub part (d) of which, which

19  says, it's captioned liability of garnishee, the City of

20  Detroit of course was the garnishee here.

21      It says, subject to the provisions of the garnishment

22  statute and any set off permitted by law or these rules, the

23  garnishee is liable for (d), "all debts whether or not due

24  owing to the garnish -- owing by the garnishee to the

25  defendant when the writ is served on the garnishee" with

1 certain -- with certain exceptions not applicable here.

2     So from the moment of the service of the writ of

3 garnishment on the City of Detroit by Kajy Development, LLC in

4 May 2011, the city had a liability to Kajy Development based

5 on that garnishment writ and Kajy Development, LLC had a claim

6 against the City of Detroit based on that garnishment writ

7 whether it was contingent or non-contingent, or matured or

8 unmatured, liquidated or unliquidated, all for example because

9 of the pendency of an appeal by the City of Detroit which

10 apparently only ended adversely to the city after the filing

11 of the bankruptcy.

12     It was a pre-petition claim and therefore Kajy

13 Development, LLC had -- had an obligation if they wanted to

14 share in any way in this bankruptcy -- distributions in the

15 bankruptcy case to timely file a proof of claim.

16     The other garnishing creditor against the city that's

17 involved here with the claim against the claim of Mr. Beydoun

18 and Mr. Guzall, of course, General Shale Brick, did file a

19 timely proof of claim in this bankruptcy case.  And so they

20 are being treated differently than Kajy Development.  At least

21 that is an important reason why they're being treated

22 differently and why they stand in contrast to Kajy

23 Development, LLC.

24     What this means is that in addition to the -- the

25 substantive relief in favor of Shale Brick in Paragraphs 2 and

1  3 of the city's reply brief proposed order, I'm not going to

2  include in my ruling and in the order I'm going to enter, any

3  of the other provisions of that proposed order that have to do

4  with in any way giving time for Kajy Development and Michael

5  Beydoun to reach a settlement, or offer any prospect in the

6  future of any sort of recognition of the garnishment writ of

7  Kajy Development.

8      Rather the order -- the city must submit a proposed

9  revised order which after providing for the treatment of

10  General Shale Brick that's in Paragraph 2 and 3, essentially

11  jumps down to the bottom line of Paragraph 7 of the order

12  which says that claim 201 will be allowed as a Class 14 other

13  unsecured claim in the amount stated there.  Instead of saying

14  owned by Michael Beydoun it should say owned -- owned by

15  Michael Beydoun and his attorney, Raymond Guzall, III since

16  both of them jointly filed as creditors the claim 201.

17      And the order should also provide that the garnishment

18  filed by Kajy Development, LLC against the city is of no

19  effect, no further effect in the City of Detroit bankruptcy

20  case.

21      Now this ruling and this outcome and this order in my

22  view obviously do not prevent Kajy Development, LLC as a

23  judgment creditor of Michael Beydoun from seeking to collect

24  its judgment from Mr. Beydoun from any available assets or

25  income from Mr. Beydoun, including from any distributions that

1  Mr. Beydoun actually receives as a result of claim 201 in the

2  City of Detroit bankruptcy case once Mr. Beydoun receives

3  them.

4      If and after Mr. Beydoun receives them in whatever amount

5  he receives them, then it's just another asset of Mr. Beydoun

6  that subject to any applicable state exemption laws, a

7  judgment creditor like Kajy Development, LLC can go after and

8  seek to collect from in the State Court system.  But that's

9  different than saying that Kajy Development, LLC has

10 garnishment –– has rights against the City of Detroit as a

11 garnishee based on its garnishment writ from 2011.

12     My ruling is it does not in this bankruptcy case and for

13 purposes of distribution on claim 201 in this bankruptcy case

14 for the reasons that I have stated.  So the motion is granted

15 in part to the extent of the relief I've described.  Mr.

16 Spinner, I'll ask you to revise the order and submit the

17 revised order consistent with what I have ruled and I'll waive

18 presentment of that just to save some time and I will of

19 course carefully review the order when you submit it.  Do you

20 have any questions about the form of the order needed?

21         MR. SPINNER:  Only one minor clarification, Your

22 Honor.  You repeatedly referred to the relief in Paragraphs 2

23 and 3.  We would request that it be 2, 3, and 4 because 4 also

24 ends General Shale Brick's ––

25         THE COURT:  Sure, yeah, that's fine, 2, 3, and 4

1          MR. SPINNER:  Other than that we understand, Your

2    Honor.

3          THE COURT:  All right.  All right.  Well, thank you

4    all and that concludes this matter.

5          MR. SPINNER:  Thanks, Judge.

6          THE COURT:  Just a moment.  I want to hear next two

7    matters that are related, somewhat related.  Actually no, I

8    don't.  The matter I want to hear next is the city's objection

9    to the claim of claimant Steven Wolak.

10          MR. SWANSON:  Good afternoon, Your Honor.  Marc

11    Swanson on behalf of the city.

12          MR. KILPATRICK:  Good afternoon, Your Honor.

13    Richardo Kilpatrick on behalf of the trustee for the Steven

14    Wolak estate, Karen Evangelista.

15          MS. ARNDT:  Good afternoon, Your Honor.  Stephanie

16    Arndt on behalf of the estate of Christopher Wolak.

17          THE COURT:  All right.  One second, please.  All

18    right.  Thank you.  Go ahead, Mr. Swanson.

19          MR. SWANSON:  Thank you, Your Honor.  The first kind

20    of threshold issue on this matter is whether the Fieger law

21    firm had any right whatsoever to respond to the city's

22    objection to Mr. Wolak's claim.

23      The trustee as the Court probably noted, filed a claim of

24    interest in the claim and the city outlined in its reply brief

25    the Fieger firm did not have the right to assert a response to

1  this objection because it has not been retained in the

2  bankruptcy estate and its claim is -- is property of Mr.

3  Wolak's bankruptcy estate.

4        THE COURT:  Well, I can certainly see how the

5  Chapter 7 trustee in the bankruptcy estate in the bankruptcy

6  of Mr. and Mrs. Wolak has an interest in the outcome of this

7  dispute, this claim objection and -- and on this claim.  But

8  the claim -- the claim was filed by as I understand it, by

9  Steven Wolak as personal representative of the estate of

10 Christopher Wolak, deceased.

11      And that's who the settlement was with that underlies

12 this dispute.  And Steven Wolak is one of the debtors in a

13 Chapter 7 case in his individual capacity, but not in his

14 capacity as representative of the estate of Christopher Wolak.

15 Isn't that right?

16       MR. SWANSON:  That's right.  The settlement order

17 though that was entered in the Circuit Court provided that the

18 proceeds from the settlement would be -- at least a majority

19 of them would be provided to Mr. Wolak and his wife who are

20 both debtors in -- in the same Chapter 7 bankruptcy case.

21       THE COURT:  I -- I think I saw what you're referring

22 to there.  And that -- that certainly does indicate that

23 Steven Wolak and his wife, Francine Wolak who are the debtors

24 in the Chapter 7 bankruptcy case here certainly have a

25 financial interest in the outcome of the dispute and therefore

1 | so does their Chapter 7 bankruptcy trustee, right?

2 |         MR. SWANSON:  Correct.

3 |         THE COURT:  I did look in the -- take a look in the

4 | -- a little bit at the bankruptcy case of the Wolaks by the

5 | way.  For the record it's case 15-53842, a Chapter 7 case

6 | currently pending in this Court before Judge Shefferly.

7 |     And I -- I noticed that the Wolaks each claim a partial

8 | exemption in -- it looks like in the -- the proceeds of this

9 | claim, at least a partial exemption.  So it looks like perhaps

10 | we got both the Chapter 7 trustee and the Wolaks individually

11 | all having a financial interest in the outcome of this

12 | dispute.  Do you agree?

13 |         MR. SWANSON:  To the extent that that exemption is

14 | valid, I would agree.

15 |         THE COURT:  Well, it's been -- it's not been

16 | objected to timely, so it's deemed allowed as an exemption, I

17 | believe.  And -- and certainly Mr. Kilpatrick can speak to

18 | that in more detail.

19 |     But I -- I guess I come into this under the impression

20 | that Steven Wolak both individually and in his capacity as --

21 | as personal representative of the estate of Christopher Wolak,

22 | deceased, has a financial interest in the outcome of this

23 | dispute and of your claim objection.  And as does Francine

24 | Wolak.  And as does the Chapter 7 trustee in the Wolaks'

25 | Chapter 7 bankruptcy case.  They all have a financial

1 interest.

2     And the response that was filed, the only response that

3 was filed in the claim objection was by Steven Wolak as

4 personal representative.  And so he certainly had authority to

5 do that in that capacity, didn't he?

6     Now we've got another issue about -- and Mr. Kilpatrick

7 can tell me if he wants an opportunity to respond to your

8 objection too in writing.  Because it looks like you didn't

9 serve him with the claim objection formally even though he's

10 obviously aware of it and he's here.

11     But the response that was filed, why -- if you think that

12 was filed without proper authority, as a response of Steven

13 Wolak as personal representative of the estate of Christopher

14 Wolak, why is that?

15         MR. SWANSON:  I guess to begin with we weren't aware

16 that Mr. Wolak was in bankruptcy or we would have served Mr.

17 Kilpatrick.  And --

18         THE COURT:  Yeah.  I think the trustee filed a --

19 her notice after you had already filed your claim objection.

20         MR. SWANSON:  Yes, that's correct.

21         THE COURT:  Yeah.

22         MR. SWANSON:  To the extent that the Chapter 7

23 estate, and I'd -- I'd let them speak to this more than me,

24 can be separated from Mr. Wolak in his capacity as personal

25 representative of his son.  And I think the Court is correct

1   that there are two different interests here.

2         THE COURT:  Well, I think in your reply brief you

3   had asked me to strike the response of Steven Wolak, personal

4   representative.  Are you still asking for that or not?

5         MR. SWANSON:  No, we'll waive that.

6         THE COURT:  All right.  So you want to talk about

7   the merits then?

8         MR. SWANSON:  Sure.

9         THE COURT:  All right.

10        MR. SWANSON:  Your Honor, there's no legally

11  cognizable argument that Mr. Wolak as personal representative

12  of the estate presents to have his claim allowed in the amount

13  that he filed that claim.

14      Your Honor, the city requested that the claim be allowed

15  in the amount of $355,000 as a general unsecured claim and

16  $20,000 pursuant to the treatment in Article 4S of the plan

17  which provides that in accidents such as these, the accident

18  victim can have $20,000 in cash and then the balance of that

19  claim is distributed pursuant to Class 14 or Class 15 as

20  applicable.

21      Wolak makes two arguments, none of which contest the

22  city's objection which that this claim should be allowed in

23  the amount of 375,000, taking the 355,000 general unsecured

24  claim and the $20,000 cash claim.  He makes no arguments in

25  support of the original claim amount which was $3,000,000.

1      What Mr. Wolak does is first he makes the same argument

2  that he did in front of this Court many many months ago.  And

3  that he should be paid the entire amount of the settlement.

4  We had a hearing on that.  Mr. Wolak filed his motion, we

5  filed an objection.  The Court held that it did not have any

6  authority to order that Mr. Wolak's claim would be elevated

7  above all other general unsecured claims because this Court,

8  the city, and Mr. Wolak are all bound by the city's confirmed

9  plan of adjustment.  Nothing has changed since that point.

10      THE COURT:  By the way, I did go back and review the

11  transcript of the bench ruling that I gave in ruling on that

12  earlier motion by Mr. Wolak.  That just for the record, the

13  transcript of that hearing which was held on July 15, 2015 is

14  on file in this case at docket 10070.  We dealt with several

15  things that day, this was one of them, this -- this motion.

16      And I -- my -- my ruling on the motion begins at Page 54

17  of the transcript and carries over at Page 60.  And then of

18  course I entered an order the same day at docket 10052, July

19  15th, 2015 denying the earlier motion by Mr. Wolak.  Which as

20  -- as -- as you know and I'm sure you're coming to this, that

21  the order said it's without prejudice to the city's right to

22  file a timely objection to the $3,000,000 claim filed in this

23  bankruptcy case by Steven Wolak, personal representative and

24  this order is without prejudice to the right of Steven Wolak,

25  personal representative to defend against any such claim

1  objection.

2      And I think in the bench opinion -- my bench opinion

3  ruling, I basically said we -- we leave to another -- I leave

4  to another day this question of whether among other things,

5  whether this alternative relief that Mr. Wolak has mentioned

6  and argued about in his response to your current claim

7  objection, is at all permissible the -- the alternative relief

8  of basically having the settlement undone or voided on grounds

9  that -- I don't know, various grounds, equity, fraud, whatever

10  it may be.

11      This notion that it's -- that the city agreed to a

12  settlement and Wolak agreed to a settlement right before the

13  filing of the bankruptcy case on the assumption that the

14  settlement amount, 375,000 would be paid in full cash dollars

15  at 100% by the city.  And that when the city filed its

16  bankruptcy case that sort of blew that apart, that's the idea.

17      So I'm putting it pretty roughly, but that's the idea of

18  course and -- the argument.  And I -- as I -- as I understood

19  my -- and recollected once I read the transcript, I -- I put

20  off any ruling on the merits of that kind of argument, didn't

21  I?

22          MR. SWANSON:  I -- I agree that you did with respect

23  to --

24          THE COURT:  Okay.

25          MR. SWANSON:  And just reinstating the -- the case.

1  I -- I don't think the Court put off any further argument on

2  whether the claim should be paid in full.  I think that was

3  decided then and that -- that argument --

4           THE COURT:  I think I -- I think it's certainly fair

5  to say and I -- this is my reading of it, that I did rule that

6  at that time that if -- you know, as long as the settlement

7  agreement is in place and there's a $375,000 allowed claim, as

8  long as that's the amount of the allowed claim then -- then

9  there's no basis for Mr. Wolak to be paid 100% of that claim

10 under the confirmed plan of adjustment.  And that seems to me

11 that's absolutely clear.

12     But anyway -- and of course all this stuff on the earlier

13 motion happened before the Wolaks filed their bankruptcy case.

14           MR. SWANSON:  That's correct, yeah.

15           THE COURT:  Okay.  So go ahead.

16           MR. SWANSON:  Certainly, Your Honor.  So one, the

17 city does not believe that there's any basis or -- to -- to

18 pay this claim in full and nothing's changed since the earlier

19 argument.  Of course the plan hasn't been amended.  The plan

20 still stands.  It was confirmed as binding on Mr. Wolak.

21     Second, Your Honor, Mr. Wolak does argue that the State

22 Court case should be reinstated.  But I submit that Mr. Wolak

23 has offered absolutely no proof in support of his allegations

24 of fraud or bad faith.

25           At the earlier hearing and I think the primary issue that

1  Mr. Wolak raises is that the city entered into this settlement

2  agreement by way of fraud knowing that it was going to file

3  bankruptcy.  And I believe Your Honor at the last hearing

4  asked Mr. Wolak well, wasn't that, you know, fairly well known

5  at the time that the city was considering bankruptcy.

6      And I think Mr. Wolak's counsel candidly acknowledged

7  that -- that it was.  I don't think in a response to a claim

8  objection a party can assert bad faith or fraud.

9          THE COURT:  I didn't -- you know, I didn't read the

10  transcript of the whole hearing, I just read my bench ruling.

11         MR. SWANSON:  Sure.

12         THE COURT:  You're saying that's in there?

13         MR. SWANSON:  I'm pretty sure it's in there.  The --

14  the Court --

15         THE COURT:  Do you have the page number in the

16  transcript?  I'd like to see that.

17         MR. SWANSON:  Sure.

18         THE COURT:  And again I'm sorry, I didn't read the

19  whole thing.  The hearing lasted I think a little while that

20  day.

21         MR. SWANSON:  It's going to take me a minute but

22  I'll find it.

23         THE COURT:  Go ahead.

24         MR. SWANSON:  Yeah.

25         THE COURT:  The transcript is docket 10070.

1        MR. SWANSON:  Yeah.  Page 44, Mr. Dworetsky, I

2  believe it's pronounced.  He says it did.  And all that

3  happened while -- while this bankruptcy is looming.  They're

4  on the brink of bankruptcy.  They know this thing is coming if

5  they negotiated with my client to compromise the claim.

6        Well -- the Court says well, they're not -- the city

7  isn't the only entity that knew it was coming were they?  You

8  had no inkling?  Mr. Dworetsky, understood.  However the city

9  was the one that was making the payment.

10       So I --

11            THE COURT:  This is at Page 44?

12            MR. SWANSON:  Forty-four.  Towards the top of the

13  page.

14            THE COURT:  All right.  Hold on.  All right.  I have

15  seen that excerpt.  Go ahead.

16            MR. SWANSON:  Your Honor --

17            THE COURT:  I guess you're arguing from that there

18  can't be any fraud because there could not have been any

19  reasonable reliance by Wolak and his attorneys on the city not

20  filing bankruptcy.

21            MR. SWANSON:  Exactly, Your Honor.  The response

22  throws around words like fraud and bad faith.  But they offer

23  absolutely no proof that there was any fraud or bad faith.

24       And -- and without any proof or any sort of affidavit

25  submitted in response, the city asks that its objection be

1  sustained.  There's no reason this State Court case should be

2  reinstated.

3     There was a settlement agreement.  And that is the value

4  of the claim at this point.  And the city will honor the plan

5  and pay the claim and $20,000 cash and the $355,000 general

6  unsecured claim.

7           THE COURT:  You agree, I -- I assume that under

8  Michigan law fraudulent inducement to a settlement agreement

9  is a grounds by which a party who was fraudulently induced to

10 enter a settlement agreement can essentially rescind it or

11 void it.

12          MR. SWANSON:  That sounds right to me, Your Honor.

13 I don't know the -- the case law, but that sounds very fair,

14 yeah.

15          THE COURT:  But -- and part of what you're saying is

16 there's just no evidence of that here.

17          MR. SWANSON:  No.  I mean repeatedly what we've

18 heard from Mr. Wolak is -- is throwing around these

19 allegations with absolutely no proof.  And that's what we got

20 in this response as well.  And he's had many opportunities to

21 make his case and he hasn't.

22          THE COURT:  Anything else you want to say then?

23          MR. SWANSON:  No, Your Honor.  Thank you.

24          THE COURT:  All right.  Mr. Kilpatrick, I think I

25 should give you an opportunity to be heard unless you want to

1  wait until after Ms. Arndt.

2          MR. KILPATRICK:  I'm -- I'm going to be real brief,

3  Your Honor.

4          THE COURT:  All right.  Go ahead.

5          MR. KILPATRICK:  Your Honor, the -- the -- Steven

6  and Francine Wolak filed a Chapter 7 bankruptcy case September

7  21, 2015.  Ms. Evangelista was appointed the interim trustee

8  and became the permanent trustee on October 28th, 2015 at the

9  conclusion of the 341 examination.

10     As this Court has noted it was case number 15 -- it is

11 case number 15-53842 assigned to Judge Shefferly.  You did

12 note that there is an exemption claimed by both Francine and

13 Steven Wolak.

14     Mr. -- Mr. and Mrs. Wolak claim a total of approximately

15 $11,000.  As is obvious the amount that's in prospect exceeds

16 the amount of the claimed exemption and it has not been

17 amended to date.  So their interest is limited to that amount.

18     We have reviewed with Mr. Swanson once he became aware of

19 the trustee's interest which was in -- the trustee's claim of

20 interest was filed to put this Court on notice and also the

21 City of Detroit on notice as to the filing of the Chapter 7

22 case to preserve the right for the trustee to capture whatever

23 is due to this -- to the -- to the Wolak estate for

24 distribution to those creditors.

25     Once we -- once that notice was received by Mr. Swanson

1 he was kind enough to provide us with the documents, all of

2 the underlying documents that were filed in this case and

3 after a thorough review by both myself and my client who is an

4 attorney, we found no basis to really object to the treatment,

5 to the -- to the relief sought by the trustee -- by the -- by

6 Mr. Swanson and the City of Detroit.

7     As you're aware, I -- I have a relatively unique position

8 having represented the Water and Sewerage Department in -- in

9 other matters before this Court. And the history there and --

10         THE COURT: In this case.

11         MR. KILPATRICK: In this case.

12         THE COURT: Yeah.

13         MR. KILPATRICK: And -- and leading up to -- leading

14 up to the actual filing of the case. I hear the arguments

15 that are being made by our counsel by the way and which we're

16 employing a special counsel. But at the same time having been

17 retained by the Water and Sewerage Department, some 18 months

18 prior to the actual filing of the case, it's hard to think

19 that anybody who lived in southeastern Michigan wasn't aware

20 of the financial difficulties that the city was confronting

21 starting in 2012 once we no longer had access to the capital

22 markets to finance its current obligations.

23     And in the prospect of the filing of a chapter -- some

24 type of Chapter 9 case or some type -- some type of

25 reorganization after the appointment of Mr. Orr earlier that

1  year.  Again --

2          THE COURT:  Wait.  Just a question.  You -- it

3  sounds like you just said that Ms. Evangelista, the trustee in

4  your case, your bankruptcy case is employing Ms. Arndt's firm

5  as special counsel for the trustee?

6          MR. KILPATRICK:  Yes, we are.

7          THE COURT:  You are.  Okay, I hadn't seen that.  Is

8  that --

9          MR. KILPATRICK:  Well, we're -- we're in the process

10  of doing that now.  I -- in fact I met with one of my

11  associates, I assume it had been done well prior to now.  But

12  -- but we are going to do that just to get this thing wrapped

13  up and concluded.

14          THE COURT:  All right.  I'm sorry to interrupt you

15  with that, but go ahead you were saying.

16          MR. KILPATRICK:  But -- but with that, Your Honor, I

17  cannot get in front of -- appear in this Court and -- and

18  argue that -- I can't assert the basis that they have in their

19  response to the objection.

20      The trustee -- in essence, the trustee agrees with the

21  treatment afforded by the city in its objection to the

22  allowance of the claim filed by Fieger -- by the Fieger office

23  on behalf of the Wolaks.

24          THE COURT:  All right.  Thank you.  Ms. Arndt.

25          MS. ARNDT:  Thank you very much, Your Honor.  First

1  of all, you kind of hit the nail on the head right out of the

2  gate. The estate is a separate and distinct entity from the

3  parent.

4      Yes, Mr. Steven Wolak was appointed as personal

5  representative but that is the limit and scope of his

6  authority. And before he filed bankruptcy we could have had a

7  public administrator.

8      The estate is a separate entity. The estate is the party

9  that is before this Court right now. When the Court was --

10          THE COURT: It is -- you're referring to the

11  decedent estate.

12          MS. ARNDT: The decedent estate.

13          THE COURT: Rather than the bankruptcy estate or the

14  Wolaks' bankruptcy case.

15          MS. ARNDT: I'm sorry, Your Honor.

16          THE COURT: To keep it straight, call one the

17  decedent's estate and the other the bankruptcy estate. Can we

18  do that?

19          MS. ARNDT: Absolutely.

20          THE COURT: All right. Go ahead.

21          MS. ARNDT: Great idea.

22          THE COURT: Go ahead.

23          MS. ARNDT: So I'm here today on behalf of the

24  decedent's estate of Christopher Wolak. When the Court was

25  discussing with co -- or opposing counsel the issue of

1  fraudulent inducement, he said well, there's nothing here

2  showing any reasonable reliance by the plaintiff.

3      Are you kidding me?  We went to Court.  We got a Court

4  order.  There were representations by the City of Detroit at

5  that hearing.  This is a settlement.  This is what we're going

6  to pay.  Testimony was taken.  Judge Stempien entered an

7  order.  Of course there was reasonable reliance as to that

8  issue.

9          THE COURT:  Excuse me.  You're talking about the

10  hearing that led to entry of the order approving the

11  settlement that was filed in the Wayne County Circuit Court on

12  May 13, 2013?

13          MS. ARNDT:  Absolutely, Your Honor.

14          THE COURT:  Which is an attachment to your client's

15  response, docket 11662, right?

16          MS. ARNDT:  Yes, Your Honor.  I believe it was the

17  first exhibit.

18          THE COURT:  Was the hearing on May 13 or close to

19  that date?

20          MS. ARNDT:  Generally the hearings are very close to

21  that date because they usually -- I mean it wasn't -- it's a

22  filing now, but usually we would with the order.

23          THE COURT:  So it's about two months before the city

24  filed their bankruptcy case?

25          MS. ARNDT:  Right.  But we're there, everybody is

1  there.  And we're putting this on the record in front of the

2  Court.  So absolutely there was reasonable reliance.

3      The other issue we have --

4      THE COURT:  Well, wait a minute, wait a minute.  The

5  transcript of what was said in that hearing is not currently

6  in the record in this case, is that right?  I didn't see it

7  anywhere.

8      MS. ARNDT:  I am not aware that it is.  I do not

9  believe that it's been reduced to writing, no.

10      THE COURT:  And why do you say there was reasonable

11  reliance, essentially reasonable reliance.  And I think your

12  theory if I understand it for voiding the settlement as your

13  alternative relief is that your side was fraudulently induced

14  by city -- the city to enter this settlement based on the

15  city's either implied representation, or failure to disclose

16  that the city was soon going to file bankruptcy.

17      MS. ARNDT:  That is --

18      THE COURT:  The implied representation, the city was

19  not soon going to file bankruptcy or that the city would pay

20  this full amount before filing bankruptcy or even after filing

21  bankruptcy, this full $375,000 amount, or their failure when

22  they had a duty to disclose that they were about to file

23  bankruptcy and they didn't do it, is it.  And that the -- your

24  side reasonably relied on that and that that was done with

25  fraudulent intent by the city.

1      That's -- that's the -- isn't that essentially what you

2  would have to prove at least in part in order to avoid this

3  settlement based on fraudulent inducement?

4           MS. ARNDT:  Yes.  But that is not our only argument

5  on voidance.

6           THE COURT:  Okay.

7           MS. ARNDT:  The other argument is the fact that we

8  have -- that the lawsuit that was commenced in Wayne County is

9  a multi-defendant lawsuit.  There were direct claims of

10  negligence against both the City of Detroit and Audrian -- or

11  Audrian -- Audrian Hardy.

12      There was a global settlement that was reduced to a

13  global release.  There is no indication in the release as to

14  whose apportionment was to what between the city and Ms.

15  Hardy.

16      Obviously if the Court so rules, the city is bound by its

17  portion of the bankruptcy.  But Ms. Hardy is not a party to

18  this bankruptcy.

19           THE COURT:  Well, wait a minute, wait a minute.  Are

20  you saying here -- it sounds like what you're saying here is

21  that the settlement documents are not clear as to who as

22  between the two defendants was to pay how much of the total

23  settlement?

24           MS. ARNDT:  That is correct, Your Honor.

25           THE COURT:  Or whether -- or whether both

1  defendants, City of Detroit and Audrian Hardy --

2              MS. ARNDT:  Yeah.

3              THE COURT:  Are -- are not -- are jointly and

4  severally liable for the full amount.  So that whatever the

5  city doesn't pay as a result of their bankruptcy or otherwise

6  you want to be allowed to go after Audrian Hardy for the rest.

7  Is that the idea?

8              MS. ARNDT:  That is the general idea.  But I will

9  make one point though.  Because this is something that keeps

10 coming up as I'm trying to explain this concept to people.

11     As someone who does a lot of personal injury work, Your

12 Honor, what's going to happen is I mean they will send me this

13 answer.  Well, just go file as to Ms. Hardy I mean if that's

14 your theory.

15     Well, that's fine except the release says the City of

16 Detroit and all of its employees.  So we have an ambiguity in

17 the contract of the release agreement.  It was drafted by the

18 city so we construe that against the drafter.  And --

19             THE COURT:  What's ambiguous in the release?

20             MS. ARNDT:  It doesn't indicate who is paying what.

21 So the Court can't --

22             THE COURT:  Well, wait a minute, wait a minute.  The

23 release -- you're right.  But the release is not ambiguous in

24 -- in the fact that it releases not only the City of Detroit,

25 but Audrian Hardy, right?

1          MS. ARNDT:  That is how it's worded yes, Your Honor.

2          THE COURT:  I -- I think I -- the point about it

3    doesn't clearly say who is to pay what as between the two

4    defendants.  It just says second line, in consideration of the

5    sum of $375,000 and an entry of an order, et cetera.  There's

6    the release.  Is that what you mean?

7          MS. ARNDT:  Yes, Your Honor.  And obvious --

8          THE COURT:  So -- so what you're saying is what?

9    That -- that Audrian Hardy is released except she's not

10   released from making the payment required by the settlement

11   agreement to the extent the city doesn't pay it, is that the

12   idea?

13         MS. ARNDT:  She is potentially released by the

14   settlement agreement.  As to which portion of her

15   responsibility for the three seventy-five is hers versus the

16   city's and therefore the city's portion may be applicable to

17   the city or her portion may be applicable to her, that -- that

18   release agreement that the city drafted does not indicate

19   that.  And for us to try to --

20         THE COURT:  Well, what does that problem have to do

21   with what the city's responsibility is in the bankruptcy case

22   in -- in -- in terms of paying under this settlement?  In

23   other words how does that affect what the city is required to

24   pay under its confirmed plan of adjustment based on this

25   pre-petition settlement agreement?

1          MS. ARNDT:  Well, it would affect the amount.

2          THE COURT:  Why would it affect the amount?  The

3    city -- let's assume for a minute -- let's assume for a minute

4    the city based on a favorable ruling here, let's assume the

5    city is ordered to -- that the city's objection to claim is

6    sustained here so that what the city ends up paying your

7    client is 20,000 in cash plus whatever distribution comes as a

8    result of your client having a Class 14 allowed claim in the

9    amount of $355,000.  Certainly it's going to be less than

10   355,000 ultimately.

11       So less than the full three seventy-five gets paid by the

12   City of Detroit.  Isn't that the only thing the Court in this

13   bankruptcy case has any business deciding?  That is what

14   Detroit's responsibility is and -- and isn't it up to the --

15   to the State Court to rule and decide what responsibility if

16   any or liability if any Audrian Hardy has individually under

17   the settlement agreement.

18          MS. ARNDT:  But the State Court can't do that, Your

19   Honor, unless you send us back to the State Court to be

20   considered there.  Because otherwise the State Court is going

21   to say this is a City of Detroit Bankruptcy Court matter and I

22   will defer to that.

23       If Your -- if Your Honor says send it back to the State

24   Court, what happens is, we set this for trial.  We have a

25   trial.  Michigan is a several liabilities state and we have an

1   allocation of fault.  And that's how we decide.

2          THE COURT:  Well --

3          MS. ARNDT:  Or -- or we try to reach a separate

4   settlement with Ms. Hardy.  But if Your Honor --

5          THE COURT:  Well, an alternative to that is Ms.

6   Hardy could say, we're all bound by this -- still bound by the

7   $375,000 settlement.  So the most I could possibly owe is

8   whatever the city doesn't pay of the three seventy-five and

9   that's it.

10      We're not going to have a trial, it's settled.  And

11  that's a -- that's an alternative position that could possibly

12  be adopted.  But it -- I guess my -- my point is, -- the point

13  of my question is, the issue of what responsibility or

14  liability Ms. Hardy may have individually is not an issue for

15  this Court in this bankruptcy case, I don't think.

16      It's an issue if to be decided anywhere by the State

17  Court.  And if what you're saying is that in any order I

18  enter, I should say something to make clear to the State Court

19  that that's the case, fine, you know, tell me what you want

20  and I'll consider it.

21      But, you know, I don't think I -- I need to or ought to

22  as the Bankruptcy Court in the City of Detroit case make a

23  decision about what Audrian Hardy owes individually under the

24  settlement agreement.  I mean unless I'm missing something.

25  Why -- why should I be involved in -- in doing that rather

1 than the State Court?

2           MS. ARNDT:  Well, but I think Your Honor if you

3 sustain their objection it -- from what I understand the

4 20,000 goes through, the annuity goes through, and we operate

5 like Ms. Hardy doesn't have an issue here.  But Ms. Hardy does

6 have an issue here.

7           THE COURT:  By annuity you mean -- you mean the --

8 the distribution on the Class 14 claim?

9           MS. ARNDT:  Yes.

10           THE COURT:  On the -- the bond, the thing.  Some day

11 that's the amount that -- that -- that is realized on that

12 Class 14 claim, the actual dollar amount or value will be --

13 will be known.  But it's not known at the moment.

14       But there's going to be some sort of deficiency, assuming

15 you know, that that's the outcome for -- in the city's case

16 with respect to this claim.  And so I think the question

17 you're raising is well, then what is Audrian -- Audrian

18 Hardy's liability if any under the settlement agreement or

19 otherwise in light of the fact if it becomes the fact that the

20 full three seventy-five is not paid 100 cents on the dollar by

21 the city.

22       And my reaction to that is why isn't that for the State

23 Court to decide.  And -- and if necessary perhaps, you know,

24 with some guidance from this Court in the form of an order

25 saying this is without prejudice to any rights or claims the

1  claimant here Mr. Wolak may have against Audrian Hardy

2  individually under the settlement agreement or otherwise.  And

3  then off you go to the State Court about that.

4            MS. ARNDT:  Well, Your Honor --

5            THE COURT:  Is -- is that the appropriate way for

6  this Court to deal with the Audrian Hardy issues that you're

7  raising?

8            MS. ARNDT:  I think that we are headed in the right

9  direction.  The one obstacle that is created by the City of

10  Detroit's relief that they drafted is that the phraseology of

11  the City of Detroit and all employees.

12      Because what's going to happen until you get -- they

13  drafted this release, it got signed everyone thinking the

14  three seventy-five is going to be paid.  We got orders entered

15  to that effect.

16      And now what will happen is if Your Honor crafts that

17  language informing the Court that it -- the State Court that

18  it can consider this Audrian Hardy claim, they're just going

19  to argue res judicata.  Because they're going to say that it's

20  in the release -- or and the release applies.

21      And so it's like we end up nowhere again.  And this --

22  this agreement does not say what percentage of what.

23            THE COURT:  Well, I come back to my question.  What

24  is that -- how is that relevant to the matter before me in

25  this Court in this case today which is the issue of whether

1  the city is right or wrong about what the Court should do with

2  your proof of claim for $3,000,000 against the city filed in

3  this case.  Do you see -- do you see why I'm coming back to

4  that --

5          MS. ARNDT:  I understand -- I understand where

6  you're going, yes.

7          THE COURT:  I sound like a broken record probably.

8  But --

9          MS. ARNDT:  I probably do too.

10         THE COURT:  Yeah, maybe.  Yeah, we're --

11         MS. ARNDT:  Maybe we're getting to that point.  I --

12 I think that whatever the Court decides I think that we need

13 to -- to be cognizant of the potential state law claims.  And

14 I agree with you that phraseology needs to go in there

15 somewhat advising the State Court that -- that this -- this

16 issue was not decided by you.

17         THE COURT:  Okay.  So let's move on.  What else do

18 you want to say about this -- your response to the city's

19 claim objection.

20         MS. ARNDT:  That would be all, Your Honor.  I -- for

21 the remainder of it I would rest on my brief.  And I'm here to

22 answer any questions that the Court has.

23         THE COURT:  So how is there fraudulent inducement to

24 -- to -- by the city to enter -- to induce your client to

25 enter into this settlement agreement in May 2013 or

1 thereabouts?

2          MS. ARNDT:  Right.  Your Honor --

3          THE COURT:  Do you want to say -- you want to

4 elaborate on that at all a little more?

5          MS. ARNDT:  I want to elaborate it to the extent

6 that --

7          THE COURT:  The city has said you got no details,

8 you got no facts, you got no evidence on that.  And he cited

9 of course he cited at Page 44 what Mr. Dworetsky said or

10 Dworetsky said at the hearing on July 2015 on that.

11          MS. ARNDT:  Well, I don't -- from what was quoted,

12 what was brought out last in the record I don't think that was

13 binding and is any concession by Mr. Dworetsky that he knew

14 that the City of Detroit bankruptcy was coming on that day.

15     I think the only people who knew that were the law

16 department and the people that they retained to help them put

17 that petition together.

18          THE COURT:  Well --

19          MS. ARNDT:  That being said, the law department is

20 also the one that negotiated the settlement.  And so they knew

21 that this was coming.

22          THE COURT:  Well, so far, okay, as I understand the

23 record in this bankruptcy case, there is no evidence yet at

24 least in the record to substantiate a claim of fraudulent

25 inducement by the city of -- of your client to enter into this

1  settlement agreement.

2      You're arguing reasons why you think there -- it sounds

3  like whether you think there is or may be such a claim, but

4  there's no evidence.

5          MS. ARNDT:  Well, Your Honor --

6          THE COURT:  For example -- for example, there's no

7  evidence yet in the record at least of -- of what your client

8  and your client's attorneys, your firm whoever, you know, was

9  involved at the time, knew or didn't know, or thought or

10 didn't think about the city filing bankruptcy soon and what

11 affect that might have if any on this settlement.  There's

12 just nothing in the record yet in the way of evidence of the

13 specific facts about that, do you agree?

14         MS. ARNDT:  I do agree.

15         THE COURT:  Other -- with the possible exception of

16 what Mr. Dworetsky said in the July hearing which you have

17 argued doesn't really amount to any concession.  Am I right

18 about that?

19         MS. ARNDT:  I do, but I also would indicate to the

20 Court that I think that that's the most appropriate thing for

21 an evidentiary hearing.  I know that the attorney who

22 negotiated that settlement on behalf of our firm and Mr.

23 Wolak's estate -- the decedent's estate is no longer with the

24 firm so we'll obviously have to bring him in.  And the big

25 place --

1          THE COURT:  Who is that?

2          MS. ARNDT:  I believe it was Mr. Michael Ratton at

3   the time.

4          THE COURT:  Michael what?

5          MS. ARNDT:  Ratton, I believe.  Don't --

6          THE COURT:  Do you want to spell that for me?

7          MS. ARNDT:  Mr. Ratton's last name is R-a-t-t-o-n.

8          THE COURT:  He's no longer with your firm.

9          MS. ARNDT:  No, he started his own firm.

10          THE COURT:  Still around though.

11          MS. ARNDT:  Oh, he's in the area.  His office is in

12   Southfield.  And I --

13          THE COURT:  Well, okay.  So are you -- are you

14   saying that you want the Court to give you an opportunity to

15   file -- or supplement your response to the claim objection

16   with affidavits, documentation of factual evidentiary support

17   for a fraudulent inducement argument?

18          MS. ARNDT:  I -- if that is how the Court would like

19   to begin developing the record, absolutely I would like that

20   opportunity.

21          THE COURT:  Well, I generally don't set evidentiary

22   hearings unless I am persuaded that we actually need them.

23          MS. ARNDT:  Okay.

24          THE COURT:  Need it.  And -- and that means that

25   there's a genuine dispute, factual dispute about some fact

1  that matters to a -- to a motion or -- or an issue.  And so I

2  do think it's appropriate that we begin if we're going to do

3  anything more at all that we begin with filing of affidavits,

4  a transcript of this hearing in State Court if you want to

5  submit that, whatever evidence you want to submit.

6          MS. ARNDT:  Uh-huh.

7          THE COURT:  Document or including affidavits.  And

8  then of course you have -- the city would have an opportunity

9  to respond to that.  And then if -- if I decide at a further

10  hearing that we do need an evidentiary hearing, then I'd set

11  one and we'd have it.

12      But are you saying you want that opportunity to submit

13  such documentary evidence, affidavit and the like, even though

14  you didn't put it in your response that you filed so far.

15          MS. ARNDT:  Yes, if the Court would so graciously

16  give me the opportunity I would.

17          THE COURT:  And this is for a theory -- an effort to

18  avoid the settlement agreement as having been fraudulently

19  induced.

20          MS. ARNDT:  Yes, I understand.

21          THE COURT:  Is that right?

22          MS. ARNDT:  Yes.

23          THE COURT:  I mean are there other arguments you

24  want to -- to make for avoiding the settlement agreement as

25  opposed to issues about interpreting it or applying it in the

1  bankruptcy case?  In other words you -- you got two paths to

2  go down.

3         MS. ARNDT:  Right.

4         THE COURT:  One is you -- you -- you stick with the

5  settlement agreement and -- and -- and you don't try to avoid

6  it and undo it, rescind it.  And -- and you argue about what

7  it means and what it requires and those sorts of things.

8      And the other path is, you avoid -- try to avoid the

9  settlement agreement, say it should be rescinded and ignored,

10 cancelled for fraudulent inducement or because some other

11 valid legal basis for rescinding or avoiding a contract.

12     One -- one seeks to enforce the -- the settlement

13 agreement, the other seeks to avoid it, the opposite.

14        MS. ARNDT:  Oh, I --

15        THE COURT:  Do you see what I'm saying?  So --

16        MS. ARNDT:  Absolutely.

17        THE COURT:  I want to know what if -- if you want an

18 opportunity to do -- file further briefing and further

19 evidence, I want to know what it -- what about is what I'm

20 asking you.

21        MS. ARNDT:  I think, Your Honor, we would go more in

22 the general area of the avoiding of the agreement to -- to

23 issues such as fraudulent inducement.  That being said, Your

24 Honor, because I have not had an opportunity to speak to the

25 individual who represented Mr. Wolak's decedent's estate at

1  the time, nor the facilitator who I believe was involved, I

2  would not -- I would like to kind of leave the path open but

3  maybe not in excess to a fraudulent inducement theory.

4      That allow -- I mean obviously whatever the Court would

5  allow ample time for them to respond and then the Court to

6  make its decision based on everything submitted.

7          THE COURT:  Well, for the benefit of both sides, let

8  me say this.  I -- I have in the past had occasion to rule on

9  motions that seek to enforce a settlement agreement.  Not just

10 the City of Detroit case, but in other cases.

11         MS. ARNDT:  Uh-huh.

12         THE COURT:  And I have in at least one other case,

13 I'm sure more, but at least one other case as -- kind of a

14 lengthy bench opinion I've given and there's a transcript of

15 -- of what I said.  When I -- where I talk about general

16 principles applicable to settlement agreements and enforcing

17 them and interpreting them under Michigan law as well as

18 possible grounds of Michigan law recognizes for avoiding

19 enforcement of a settlement agreement, undoing it essentially.

20     Essentially those are duress, fraud, mutual mistake,

21 severe stress, or unconscionable advantage taken by one party

22 over the opposing party.  And there's case law that -- that

23 talks about what those things mean and what you have to show

24 to -- to establish any of those things.

25     But those are the basic grounds.  And -- and just for the

1  record I'll -- I'll say that I think what I'll do is I will

2  file a -- a copy of my -- the transcript of my bench opinion

3  on this subject from another case, from a different case, and

4  not the City of Detroit case.  In this case so the parties

5  will be able to see it and read it and see what I said in

6  there.

7      But the case that -- that among other cases that stand

8  for that proposition, that -- that exceptions to enforcing a

9  settlement agreement essentially or defenses, is the case of

10  Dezaak, D-e-z-a-a-k, Management, Inc. v Auto Owners Insurance

11  Company reported at 2012 Westlaw 5258304, a decision of the

12  Michigan Court of Appeals from October 23, 2012.  And there's

13  other cases, but that's one of them.

14      And it says, "in the absence of duress, fraud, mutual

15  mistake, severe stress, or unconscionable advantage taken by

16  one party over the opposing party, Courts are bound to

17  enforcement settlement agreements."

18      So you got -- there's this fraud type basis, you know,

19  just like any contract.  If you want to try to avoid a -- a

20  contract on grounds of fraudulent inducement, you know,

21  there's certain things you have to prove and Michigan case law

22  exists on this subject.

23      But those are the grounds.  And it sounds like the only

24  one that you're really talking about that's at all even

25  arguable is fraudulent inducement.  Is there some other

1  ground, legal ground for avoiding this settlement agreement

2  that you are arguing, or is it -- or is that it?

3      And I know you said bad faith.  But bad faith is not a

4  basis under Michigan law for avoiding a settlement agreement,

5  enforcement of the settlement agreement.  Bad faith has to

6  rise to a level of unconscionability, duress, severe stress.

7  The more extreme thing.

8      So perhaps the -- the thing to do is for me to just leave

9  it at -- at what I've said about the grounds in the Dezaak

10  case that I think that they're alluding to there.  And again

11  I'll file a -- a transcript.  It's from a bench opinion I gave

12  in an adversary proceeding, adversary proceeding 14-4318.

13  It's at docket 133 in that adversary proceeding.  Case of

14  Collins v Deshikachar.

15      And this was given April 29, 2015, a bench opinion.  So I

16  will -- I will file a copy of that transcript so that everyone

17  can read it and see what it says for whatever it's worth.  And

18  I'm just going to file the portion of the hearing from that

19  day that has my ruling in it, so it's going to be excerpts.

20          MS. ARNDT:  Okay, very good.

21          THE COURT:  So but anyway back to -- to you.  Did

22  you want to say anything else about this now?

23          MS. ARNDT:  No, not other than to get a -- a time

24  parameter from the Court.

25          THE COURT:  All right.  Thank you.  Mr. -- we'll

1 | come back to that in a minute. Mr. Swanson, did you want to

2 | reply briefly in support of the objection to claim?

3 | MR. SWANSON: Well, it seems like the Court's

4 | inclined to -- to grant Mr. Wolak additional time to

5 | supplement his response so the city would -- would just ask

6 | that it be entitled to respond to -- to anything Mr. Wolak

7 | files.

8 | I think it's a tough case to make fraud here. Kevin Orr

9 | was appointed in March of 2013 several months prior to this

10 | settlement agreement being executed. You know, the whole --

11 | THE COURT: I understand and I -- you know, I -- I

12 | am giving the other side an opportunity to -- to -- to file

13 | further things. I -- I don't mean to imply or suggest to

14 | either side a -- a leaning one way or the other on this. So

15 | I'm not -- I really don't intend to express any view about the

16 | ultimate outcome on this kind of argument.

17 | MR. SWANSON: Certainly.

18 | THE COURT: But I -- I do think it's appropriate to

19 | give the other side a -- a -- a further opportunity and of

20 | course the city and the Chapter 7 trustee, the Wolak case an

21 | opportunity to respond to that. And then we'll have a further

22 | hearing.

23 | MR. SWANSON: Sure. And -- and final point is with

24 | respect to Ms. Hardy. We can turn back to Page 44 of -- of

25 | the transcript and -- and Mr. Dworetsky said again,

1  understood, however, the city was the one that was making the

2  payment.  Ms. Hardy was not obligated to make any payment.

3  The city vehemently disagrees with that -- that argument.  It

4  was the city that was making the payment under the settlement

5  agreement.

6          THE COURT:  Well, that certainly may have been

7  everyone's expectation.  Because the city was the deep pocket

8  and -- and Ms. Hardy presumably was not.

9       But that doesn't necessarily mean she's not -- wouldn't

10  be on the hook for -- for the unpaid part of the settlement,

11  the city didn't pay it all, does it?

12          MR. SWANSON:  I think if the city is the one who's

13  -- who was contractually obligated to -- to make the payment,

14  and -- and Ms. Hardy was not, then I -- I don't think Ms.

15  Hardy has -- has any -- any liability here.

16          THE COURT:  Well, is there -- this -- I meant to ask

17  you to make sure I -- I knew the answer to this question

18  before and I didn't ask either side.  But the only thing in

19  the record so far is this -- about this settlement that in

20  writing about the settlement in here is that the State Court

21  order approving the settlement.

22          MR. SWANSON:  Sure.

23          THE COURT:  And the release document.  These are

24  attached as exhibits to Wolak's response.  I think they were

25  also filed as part of Wolak's earlier motion back in 2015.

1  Are these the only documents or writings that evidence the

2  settlement?

3          MR. SWANSON:  I believe there's also a motion filed

4  too that led to the entry of that order.

5          THE COURT:  But there's no separate document,

6  settlement agreement type document.

7          MR. SWANSON:  If -- if -- I'm not aware of any, but

8  I will ask the question and if there is, we'll bring it to the

9  Court's attention.

10          THE COURT:  Well, all right.  Anything else, Mr.

11  Swanson?

12          MR. SWANSON:  No.  No, Your Honor.

13          THE COURT:  All right.  Well, I am going to order

14  further proceedings on this claim objection before making an

15  ultimate ruling on it to give -- to grant the request by Mr.

16  Wolak as personal representative of the estate of Christopher

17  Wolak, deceased, an opportunity to present evidence and

18  further argument as to why the alternative relief requested in

19  the response to the claim objection should not be granted.

20  That is that the settlement agreement, essentially the

21  settlement agreement at $375,000 be avoided.

22      And in this case one of the arguments that I understand

23  Mr. Wolak wants to further support and argue is essentially

24  that he was fraudulently induced by the city to enter into the

25  settlement agreement and to the settlement

1    And possibly other grounds for avoiding the settlement

2  agreement that apply and exist and permit parties to avoid

3  settlement agreements and avoid enforcement of settlement

4  agreements under Michigan law.  And I will give that

5  opportunity for Mr. Wolak to pursue that in the way of a

6  further briefing and filing of evidence in the form of

7  affidavits and other documents in support of that -- those

8  type arguments.

9    The -- with respect to the -- the alternate path of --

10  that is the first choice of Mr. Wolak in his response to the

11  claim objection that the Court should require the city to pay

12  100% of the $375,000 settlement amount here to Mr. Wolak.

13    There is I -- I -- I will, and this is consistent with

14  the ruling that I made back in July 2015 on Mr. Wolak's

15  earlier motion.  There simply is no basis in my view for the

16  Court to grant that relief.

17    The -- the $375,000 if the settlement agreement is not

18  avoided and -- and does remain effective and enforceable, that

19  agreement clearly means in my view that Mr. Wolak has -- is to

20  be allowed a claim in the total amount of $375,000 in the

21  city's bankruptcy case.  And if the claim is to be treated in

22  Class 5 the way the city has proposed it be treated and

23  satisfied -- and classified in the city's objection to claim

24  and in the proposed order filed by the city with the claim

25  objection.

1    That is that it be paid $20,000 in cash and a -- the

2  balance, the $355,000 balance be an allowed Class 14 other

3  unsecured claim.  That's what will become of and happen to and

4  be done with the claim number 3232 for $3,000,000 filed by Mr.

5  Wolak, unless Mr. Wolak is able to prevail in avoiding the

6  settlement agreement, the pre-petition settlement agreement at

7  issue here.

8    And so I -- I will give Mr. Wolak an opportunity to do

9  that if he wants to do that.  And I want to set up a schedule

10  for further filings now on that subject.

11    The first filing will be by Mr. Wolak.  Mr. Wolak may

12  file -- and I want to set a deadline, may file a supplemental

13  brief and exhibits containing any evidence such as affidavits

14  and other documents Mr. Wolak wishes the Court to consider in

15  support of any argument Mr. Wolak makes for avoiding the

16  settlement agreement.

17    Ms. Arndt, how much time do you want the Court to give

18  you to -- to file those things?  I want to set a deadline for

19  that.

20         MS. ARNDT:  Would 30 days be appropriate?

21         THE COURT:  I'm sorry?

22         MS. ARNDT:  Would 30 days be appropriate?

23         THE COURT:  That's fine.  Thirty days from today is

24  December 16, Friday, 2016.  So that will be the deadline for

25  that.  Mr. Kilpatrick, on behalf of the trustee, Ms.

1  Evangelista in the bankruptcy case, do you want to file --

2  have an opportunity to file something, and this is optional of

3  course, but to file something after Ms. Wolak -- Mr. Wolak

4  files whatever he's going to file?

5          MR. KILPATRICK:  Yes, Your Honor.  And I would need

6  -- I would only need seven days.

7          THE COURT:  So seven days after December 16, is that

8  what you're saying?

9          MR. KILPATRICK:  That's correct, Your Honor.

10          THE COURT:  All right.  Well, that's December 23.  I

11  believe our Court is closed that day, so if I said December 23

12  you would automatically get more time than that.  So do you

13  want to -- we're looking at December 22, six days, or --

14          MR. KILPATRICK:  Let's go -- I want --

15          THE COURT:  December 27th.

16          MR. KILPATRICK:  The 27th is -- thank you.

17          THE COURT:  All right.  We'll make it December 27th,

18  2016.  Trustee may file a response and it's optional, of

19  course on the part of the trustee.  You've already stated your

20  position and agreement with the city and of course if the

21  trustee changes that view based on what Mr. Wolak files, then

22  that -- that's up to -- up to the trustee.

23      Mr. Swanson, the city's response deadline should be how

24  long after December 16?

25          MR. SWANSON:  The city would propose January 17th

1          THE COURT:  That's fine, January 17, 2017.  That

2  response may be a brief and any exhibits, including evidence,

3  including affidavits and documents.

4       And we will have a further non-evidentiary hearing on

5  this claim objection on January 25, 2017 at 1:30 p.m.  That's

6  a day where I think we already have set up for an available

7  date for the City of Detroit to have hearings on claim

8  objections.  So you're probably going to be here anyway --

9  anyway.

10      And again this is a non-evidentiary hearing.  So if I --

11  if I conclude during that hearing that an evidentiary hearing

12  is required, I will schedule one, but it won't be that day.

13         So I'm going to prepare and enter a -- an order

14  scheduling type order reflecting these further proceedings.

15  Is there anything else that -- other than what I've talked

16  about here that anyone thinks we should -- I should include or

17  address in this order I'm going to do.  Mr. Swanson.

18          MR. SWANSON:  No, Your Honor.  Thank you.

19          THE COURT:  Mr. Kilpatrick.

20          MR. KILPATRICK:  No, Your Honor.  Thank you.

21          THE COURT:  Ms. Arndt.

22          MS. ARNDT:  No, Your Honor.  Thank you.

23          THE COURT:  All right.  I will -- as I said I'll

24  prepare an order and I'm also going to file this transcript of

25  this bench opinion in the other case that I mentioned to you

1    also.  Thank you on that matter.

2            MS. ARNDT:  Thank you, Your Honor.

3            MR. KILPATRICK:  Thank you, Your Honor.

4            THE COURT:  All right.  So the next matters I want

5    to hear are the two matters that I want to call and hear

6    basically together because they seem to involve at least one

7    common issue.  And that's the remaining two matters that were

8    scheduled for hearing today.

9        First, the city's motion to enforce the claim bar date

10   order basically against Danny Crowell, Leota Murphy, and

11   Jasmine Crowell.  That's docket 11357.  And also then the

12   city's motion to enforce again the bar date order, I think,

13   against Najib Hodge.  That's docket number 11583.

14       So we'll hear those matters.  One moment though.  All

15   right.  Let's -- I know we've already had appearances, but

16   tell me who's going to argue this -- these motions for the

17   city.

18           MR. SWANSON:  Your Honor, Marc Swanson will.

19           THE COURT:  All right.  And other appearances on

20   these motions.

21           MR. DEDVUKAJ:  Good afternoon, Your Honor.  Joe

22   Dedvukaj here on behalf of Danny Crowell, Leota Murphy, and

23   Jasmine Crowell.

24           THE COURT:  One second.  I -- I can spell your name,

25   based on what you filed, but help me with the pronunciation

1  again, your last name.

2           MR. DEDVUKAJ:  Dedvukaj.

3           THE COURT:  Dedvukaj?

4           MR. DEDVUKAJ:  You have it.

5           THE COURT:  Okay.  I want to try to say your name

6  right.  Okay.  All right.  And -- and you, sir?

7           MR. DEMPSEY:  May it please the Court, my name is

8  Doug Dempsey.  I'm here on behalf of Mr. Hodge.

9           THE COURT:  All right.  One second.  All right.  Mr.

10 Swanson, I'll hear from you first on these motions and then

11 we'll hear from the other attorneys.

12          MR. SWANSON:  Thank you, Your Honor.  How I outlined

13 my argument, I believe there's one common issue to -- to both

14 and that's what I've referred to in my response as a motor

15 vehicle plan provision.

16     The Crowell, Murphy, Crowell response raises the

17 additional argument that the claims arose post-petition.  I

18 was going to address that argument first and then address the

19 motor vehicle plan provision argument which I believe is -- is

20 common to both sets of --

21          THE COURT:  That's fine.

22          MR. SWANSON:  Okay.  Your Honor, the Crowell,

23 Murphy, Crowell response raises an argument that their claim,

24 or each of their claims arose post-petition.

25      Your Honor, that argument should be rejected.  Each of

1  the plaintiff allege that they were hit by a truck owned by

2  the City of Detroit on June 3rd, 2013.  That's one and a half

3  months prior to the city's bankruptcy case.

4      All of the claims that are asserted in the State Court

5  lawsuit by each of the plaintiffs arise out of that accident

6  which occurred on June 3, 2013.  Yet for some reason the

7  plaintiffs claim that their claims did not arise until they

8  actually filed the complaint in -- in May of 2016.

9      Your Honor already considered the plaintiffs' approach.

10 And that approach is called the right to payment test.  That

11 approach means that a claim doesn't arise until all statutory

12 elements are satisfied.

13     The Court rejected that approach.  Instead the Court

14 adopted the fair contemplation test.  And the Court had the

15 opportunity to consider how the fair contemplation test should

16 be applied in circumstances that are exactly similar here,

17 that being an auto accident.

18     In that opinion the Court held that the claim when you

19 are hit by a -- a truck occurs when you are hit by the truck,

20 not at some later date.  And that date is June 3rd, 2013.  The

21 city thus requests that the Crowell, Murphy, Crowell argument

22 regarding having a post-petition claim be denied.

23     The second argument --

24          THE COURT:  Well, before you move to the second

25 argument did you want to -- let's stay on this a minute.  I'm

1  going to have the other side respond on this argument and then

2  we'll deal with this argument since it's not a common issue

3  and then we'll go to the common issue.

4      Did you want to respond more specifically to the -- the

5  counter argument made by counsel for these creditors, Crowell

6  and Murphy, and Crowell?  That is they -- they did not know

7  they had a claim until after the petition date.

8          MR. SWANSON:  Well, I think they allege that they

9  didn't get medical testing until after the petition date.  And

10  because they didn't get medical testing until after the

11  petition date, they weren't aware that they had a claim until

12  after the petition date.

13      But, Your Honor, I think it's within anyone's fair

14  contemplation that if they're hit by a truck that they would

15  have a -- that it would be within their fair contemplation

16  that they might have a claim arising from that accident when

17  that accident occurred.

18      And the plaintiffs here allege that -- that their claim

19  arising from an accident that occurred on June 3rd, 2013,

20  didn't arise until May of 2016 because they didn't get medical

21  testing until that point.

22      Your Honor, I don't think that's -- that's a -- a theory

23  that -- that holds water.  The claim arose and was within

24  their fair contemplation when -- when the accident occurred.

25          THE COURT:  The -- the argument by the other side is

1  -- on this is based on Michigan Compiled Laws, Section

2  500.3135(1) apparently.  Which imposes tort liability for

3  non-economic loss caused by the tort feasor's ownership,

4  maintenance, or use of a motor vehicle, "only if the injured

5  person has suffered death, serious impairment of bodily -- of

6  body function or permanent serious disfigurement."

7      That's the -- the argument as I understand it from the

8  other side is they didn't have a claim until they knew or

9  until the fact -- perhaps until it was evident that they had

10  suffered serious impairment of body function or permanent

11  serious disfigurement.  Obviously not death, but within the

12  meaning of that statute.

13      Now you've argued, I know, that that's -- what they're

14  arguing is tantamount to their right to payment test which

15  this Court rejected in -- in the opinion -- my opinion several

16  months ago in this case that you cite in your brief.

17      But why is it -- did you want to say anything more about

18  why it was within fair contemplation applying the fair

19  contemplation test or analysis before the bankruptcy case was

20  filed, you know, basically right after the accident.

21          MR. SWANSON:  Sure.

22          THE COURT:  That these individuals had suffered

23  serious impairment of body function or permanent serious

24  disfigurement.  Or are you arguing it's not necessary even for

25  that to be the case.  It's enough that the accident occurred

1  pre-petition, period.

2       MR. SWANSON:  I -- I -- I would stand by that

3  argument.  Then I'd also point the Court to some of the

4  factors that it had considered when applying the fair

5  contemplation test to the last auto accident.

6     The Court talks about the debtors' conduct.  The debtors'

7  conduct here occurred on June 3rd, 2014.  There's no conduct

8  after the petition date.

9     The parties' pre-petition relationships, another factor

10 this Court considered.  The parties' pre-petition relationship

11 ended when that accident occurred on June 3rd, 2013.

12    The parties' knowledge.  I mean the city knew that it hit

13 her on 2013 and she knew that.  The plaintiffs knew that they

14 were hit at that date.  They allege here that they weren't

15 aware that they had serious impairment until the day that the

16 complaint was filed which seems nonsensical to me.

17    But, you know, that was when both parties knew that there

18 could be a claim arising out of a truck accident.  And the

19 elements of the underlying claim.  I think all of those point

20 to --

21       THE COURT:  What about the elements in the

22 underlying claim?

23       MR. SWANSON:  Well, that's one of the factors the

24 Court said that they could consider.  And here it's

25 essentially that you need to have a -- a serious injury.

1    And -- and I suppose that's the only element.  And if we

2  were going to -- and -- and that injury could have existed

3  when that accident occurred.  I don't know how this injury

4  couldn't have manifested itself for over three years after the

5  car accident occurred.

6    It seems like if you are hit by a truck it's within your

7  fair contemplation that you're going to have a claim arising

8  from that -- that accident.  And -- and you clearly wouldn't

9  have to satisfy all the statutory elements under 3135 because

10 that would just take us right back to the right to payment

11 test.

12    And they're not even really arguing that they didn't

13 satisfy the -- the statutory element.  What they're arguing

14 is, that they didn't -- they didn't know that they satisfied

15 the statutory element.

16    So I think we have -- they're asking for an even broader

17 test.  I mean the elements certainly could have been

18 satisfied, but they're talking about their -- their knowledge.

19 So objectively things could have, you know -- the -- even the

20 right to payment test could have been satisfied.

21    THE COURT:  Well, the right -- the -- under the

22 right to payment test even if that were the test, it's not the

23 knowledge of the injured party that they have a serious

24 impairment, et cetera.  It's that in fact they have a serious

25 impairment, right?

1           MR. SWANSON:  Sure.

2           THE COURT:  So whether they know it or not.

3           MR. SWANSON:  Yeah.  And I don't think that --

4           THE COURT:  Or realize it or think it.

5           MR. SWANSON:  Yeah.

6           THE COURT:  If they have it, then they have a right

7   to payment under the tort -- the statute.

8           MR. SWANSON:  I don't think there's been any facts

9   alleged here which said that the condition didn't exist when

10  the accident occurred.  The only facts we have here are are we

11  going to get tested for three years.  So we didn't know that

12  we had a serious impairment.  And we just had this serious

13  impairment for -- for three years, but we had no knowledge of

14  it which seems, you know -- you know, a bit far fetched.

15          THE COURT:  All right.  Anything else about this pre

16  -- pre versus post-petition claim issue?

17          MR. SWANSON:  Nothing further, Your Honor.

18          THE COURT:  I think we'll pause you here and let

19  counsel for the Crowell -- Mr. Crowell and -- the Crowells and

20  Murphy respond on that issue now.  So Mr. Dedvukaj, did I say

21  it right?

22          MR. DEDVUKAJ:  That's correct.

23          THE COURT:  Okay.

24          MR. DEDVUKAJ:  Thank you, Your Honor.

25          THE COURT:  What about that issue?

1          MR. DEDVUKAJ:  Actually that's a very good question.

2  If the right to payment in this case would not accrue until --

3  under Michigan no fault law there is an objectively manifested

4  injury that qualifies as a serious impairment that affects a

5  person's general ability to lead a normal life.  And some of

6  the factors have been set out -- set forth in the -- by the

7  Michigan Supreme Court in the McCormick case.

8       Those things absolutely in this case did not develop

9  until much much later.  And May of 2016 is when the elements

10 came together to establish a serious impairment of an

11 important body function that affects their general ability to

12 lead a normal life.

13      These people have absolutely no medical knowledge.  They

14 didn't have the testing that would diagnose the injuries that

15 are pleaded in the complaint which the city has been kind

16 enough to attach.

17          THE COURT:  Well, you're arguing that, but there's

18 -- there's no evidence in the record in this -- before me that

19 that -- to support those assertions at this point, right?

20          MR. DEDVUKAJ:  That's correct.

21          THE COURT:  It's not -- for example, I mean all I

22 have really is your State Court complaint and what you say in

23 your brief and neither one is evidence.  But the State Court

24 complaint doesn't -- doesn't really give any clues about that

25 subject, does it?

1          MR. DEDVUKAJ:  Well, it does.  It -- it outlines the

2   type of injuries each of the plaintiffs sustained.

3          THE COURT:  Yes.

4          MR. DEDVUKAJ:  In the -- in the accident.

5          THE COURT:  Yes.

6          MR. DEDVUKAJ:  And they're medically identifiable

7   and --

8          THE COURT:  I did read the complaint and saw the

9   list for each of the plaintiffs, the three plaintiffs of their

10  various injuries.

11         MR. DEDVUKAJ:  Now if this had been a closed head

12  injury where the person was diagnosed with a closed head

13  injury right after the accident I would say would accrue that

14  and the -- their right to payment would -- would exist at that

15  point.  And one could fairly contemplate that they should know

16  at that point.

17      But these weren't the type of injuries that the statute

18  carves out to establish their right to payment or a reasonably

19  prudent person would know who has absolutely no medical

20  background, that these are the injuries that qualify for

21  compensation under the no fault act.

22         THE COURT:  Well, objectively manifested serious

23  impairment is essentially the test.

24         MR. DEDVUKAJ:  Yes, sir.

25         THE COURT:  Right?

1          MR. DEDVUKAJ:  That's right.

2          THE COURT:  Under this statute.  And for the right

3  to payment to exist.

4          MR. DEDVUKAJ:  That's correct.  And the Michigan

5  Supreme Court --

6          THE COURT:  So -- so that -- that can occur of

7  course before the victim of an accident has gone to a doctor

8  or has been diagnosed, or tested.  And before they know what

9  the technical medical problem is or problems are with what

10  they've suffered, right?

11          MR. DEDVUKAJ:  That's right.  As a matter of fact --

12          THE COURT:  They objectively -- it's objectively

13  manifested by how the person feels, what they can and cannot

14  do, those sorts of things.

15          MR. DEDVUKAJ:  No.  The Michigan Supreme Court has

16  said that that is not an objective manifestation.  In fact

17  it's subjective.

18          THE COURT:  What case says that?

19          MR. DEDVUKAJ:  That would be the McCormick case.

20  You can look --

21          THE COURT:  Is that cited in your brief?

22          MR. DEDVUKAJ:  It is not cited in my brief, Your

23  Honor.  But McCormick is the most recent Michigan Supreme

24  Court case on the subject.  There is the DeFranco case.

25          THE COURT:  Is that cited in your brief?

1              MR. DEDVUKAJ:  It's not cited in my brief.  It's

2    D-e-F-r-a-n-c-o would be the lead plaintiff.  And Cassidy.

3    And then there's -- the Michigan Supreme Court has said

4    objectively manifested would be something that would be picked

5    up on an MRI, CAT scan, x-ray, or could be seen by a trained

6    physician on an objective basis.

7         For example, a gash.  Your arm being cut off, something

8    of that nature.

9              THE COURT:  So is -- if we apply the fair

10   contemplation test and you're familiar with it, you read the

11   Senczyszyn case.

12             MR. DEDVUKAJ:  Yes, sir.

13             THE COURT:  You cited that in your brief.

14             MR. DEDVUKAJ:  Yeah.

15             THE COURT:  And -- and I quoted and relied on that

16   in my opinion in the City of Detroit case that Mr. Swanson

17   cited in his reply brief.

18             MR. DEDVUKAJ:  Although that's --

19             THE COURT:  All right, just a minute.

20             MR. DEDVUKAJ:  I'm sorry.

21             THE COURT:  How a person feels and how they're

22   limited to their own knowledge, that is without a medical

23   diagnosis or testing or you know, those sort of things, can

24   certainly give a person reasonable or fair contemplation that

25   they may have a serious objectively manifested serious

1  impairment.

2        MR. DEDVUKAJ:  Not necessarily.  Not necessarily

3  because you know, you'd have to have an expert that actually

4  says it came from the car accident.  People can feel, you

5  know, different -- different people feel different symptoms

6  and report symptoms differently.  And not necessarily symptoms

7  that would be traceable to a motor vehicle accident.  So --

8        THE COURT:  What evidence would you offer if you

9  were permitted an opportunity to offer evidence since you've

10  not offered any evidence yet that the -- that the right to

11  payment in fact under these Michigan statute and -- and case

12  law did not actually arise until after the bankruptcy was

13  filed by the City of Detroit.

14        MR. DEDVUKAJ:  I would offer medical records,

15  testing that was done, things of that nature.  And perhaps --

16        THE COURT:  To show -- and it would show what?

17        MR. DEDVUKAJ:  It would show what we pled in the

18  complaint that they've been diagnosed with those soft tissue

19  injuries that only a doctor would -- would know and not your

20  -- your average person who doesn't have any medical

21  background.

22        THE COURT:  And so you want to elaborate any more on

23  your argument that -- as to why you say that the right to

24  payment under this statute did not arise until after the

25  bankruptcy filing, a couple months after, a month or so after

1  the accident.

2          MR. DEDVUKAJ:  Right.  I think maybe distinguishing

3  your previous ruling with respect to a no fault claim and your

4  previous ruling had to do with no fault benefits when a person

5  sees a doctor, gets the treatment, and gets billed.  We know

6  the accrual paid for that.  It's the date that the person gets

7  the treatment and is billed.

8      This is somewhat -- this is different because it's

9  something that, you know, a person would not know unless he's

10 been seen by a doctor and had the appropriate test to -- to

11 determine what that is.

12     And if you look at the McCormick case, you know the

13 Michigan Supreme Court set forth a number of factors that are

14 to be considered to determine whether a person has qualified

15 under the serious impairment of an important body function

16 that affects your general ability to lead a normal life.

17         THE COURT:  So what about this case, these claims,

18 and the timing of which -- of which -- at which this claim,

19 the right to payment on these claims under this particular

20 statute arose in relation to the July 2013 bankruptcy petition

21 filing date.

22         MR. DEDVUKAJ:  Well, this particular case, the fact

23 of the matter is, these are lay people.  They really don't

24 even have a high school education.  They have no medical

25 knowledge whatsoever.

1    They're relying on other people to tell them what's

2  wrong.  And you know, when you take those factors all into

3  consideration, there's no way that it could have accrued

4  within that period of time, to meet the Michigan serious

5  impairment.

6            THE COURT:  When did it -- when did it accrue?

7            MR. DEDVUKAJ:  I would -- I would say it accrued by

8  May of 2016.  They came in to see me about this case, I

9  believe it was April of 2016.  And we looked at it and

10  basically ran it through our analysis under the McCormick

11  case, and believed that we could prove this case, mind you we

12  still have to prove it in the Wayne County Circuit Court

13  either to a Judge or a jury that they have sustained a serious

14  impairment of important body function that affects their

15  general ability to lead a normal life.

16    It's not an automatic qualification under Michigan law.

17  It's a jury's determination or a Judge if there's no jury

18  demand.  As a matter of fact in a lot of cases Judges are

19  making that determination.

20            THE COURT:  All right.  So anything else about this

21  issue you want to say?

22            MR. DEDVUKAJ:  No, sir.

23            THE COURT:  Mr. Swanson, I'll give you an

24  opportunity to reply briefly on this issue and then we'll move

25  to the other issue.

1          MR. SWANSON:  Your Honor, the plaintiffs here in

2   their brief state, plaintiffs' claim is post-petition because

3   -- because their claims arose when they met the serious

4   impairment of an important body function that affected their

5   general ability to lead a normal life which was May 20th, 2016

6   when complaint was filed claiming they had sustained a serious

7   impairment of an important body function that affected their

8   general ability to lead a normal life.

9       Your Honor, quite frankly that makes no sense.  I mean

10  how -- what does the filing of the complaint have to do with

11  when they --

12          THE COURT:  Let's suppose I agree with you.

13          MR. SWANSON:  Yeah.

14          THE COURT:  Does -- let's suppose I say that --

15  that's not -- that can't be right.

16          MR. SWANSON:  Yeah.

17          THE COURT:  That we're still out for the issue well,

18  okay, when did this right to payment arise.  And I understand

19  I'm not a applying -- I'm not going to apply the right to

20  payment test.

21          MR. SWANSON:  Yeah.

22          THE COURT:  But I think it's a factor to be

23  considered.

24          MR. SWANSON:  Yeah.

25          THE COURT:  In the fair contemplation test.  When

1  did it arise.  What does the record tell us about that?

2          MR. SWANSON:  The record doesn't tell us -- tell us

3  much about that, but --

4          THE COURT:  We know the accident date.

5          MR. SWANSON:  We know the accident date.

6          THE COURT:  We know -- I mean that's about all we

7  know in the current record, isn't it?

8          MR. SWANSON:  That is about all we know in -- in the

9  current record.  And we know that that, you know, obviously

10  occurred prior to the petition date.  And I -- I -- I just

11  can't imagine any set of circumstances really where you could

12  have been -- where three people could have been hit by a truck

13  a month and a half before the city's bankruptcy case and their

14  claim would not have been their fair contemplation as of the

15  petition date.

16     The fact that they would have a claim against the city

17  for -- for injuries that they potentially could have

18  sustained, I -- I -- I just don't see any set of circumstances

19  which could take this out of the realm of being a pre-petition

20  claim.  Thank you.

21          THE COURT:  All right.  With respect to this issue I

22  -- in ruling on this issue I will -- I do adhere to and will

23  apply the fair contemplation test and the type of analysis and

24  the rulings and all the things that I made in the opinion that

25  I issued several months ago in this bankruptcy case.

1      For the record that's <u>In Re: City of Detroit, Michigan</u>.

2  It's reported at 548 BR 748, a decision of mine from April 19,

3  2016.  The fair contemplation test is discussed among other

4  places in that opinion at Page 763.

5      And then I went on to apply that test to three different

6  claimants or types of claimants that were before me in -- in

7  the motion that was -- or the matters that were at issue

8  there.

9      The -- in order to apply that fair contemplation test

10 here to determine whether or not the claimants with respect to

11 the city's motion against the Crowells and Leota Murphy, in

12 order to apply that fair contemplation test to determine

13 whether those claimants' claims arose before the bankruptcy

14 petition was filed, or after in my view requires further facts

15 and opportunity for each side to present further facts and

16 evidence and further briefing.

17     The responding creditors here through counsel have cited

18 some cases in today's hearing that were not in their brief.

19 The parties really have not fully briefed this issue in my

20 view and should be given an opportunity to -- to file

21 supplemental briefs on the issue, as well as to submit

22 evidence.

23     And starting with the claimants, the responding claimants

24 here should be given an opportunity to present evidence and

25 further briefing in support of the -- their argument that this

1  is a fair -- under the fair contemplation test the Court

2  should rule that this is a post-petition claim, a claim that

3  arose after the bankruptcy petition rather than before.

4      So I'm going to enter a scheduling order that permits and

5  sets a schedule for such further briefing and presentation of

6  affidavits and other evidence on that issue.  We'll come back

7  to that, however, in a little while.  I want to -- next, I

8  want to hear -- to talk about details of that and timing and

9  so forth, schedule for those things.

10     But I want to come now to the second issue which is a

11  common issue to these two motions by the city.  The -- Mr.

12  Swanson, you referred to it today as the motor vehicle plan

13  provision issue.  And so let's hear about that from each side

14  starting with the city.

15         MR. SWANSON:  Thank you, Your Honor.  The city's

16  position on -- on this is quite simple.

17     Paragraph 4 of the bar date order said all entities that

18  assert pre-petition claims against the city must file a proof

19  of claim.  Paragraph 6 of the bar date order repeated that the

20  following entities must file a proof of claim, including any

21  entity whose pre-petition claim against the city is not listed

22  in the list of claims or is listed as disputed, contingent, or

23  unliquidated.

24     And then Paragraph 22 of the bar date order spelled out

25  the consequences for entities that did not file a proof of

1  claim.  And there are a couple.  One can assert a claim

2  against property of the city, or the city.  And -- and another

3  one is he can't receive a distribution or vote on the city's

4  bankruptcy plan.

5      Now, the bar date order's affect on these State Court

6  actions is that the -- is that -- is that they're barred

7  notwithstanding the motor vehicle plan provision.  That in no

8  way affected, or impaired, or impacted the relief that this

9  Court granted under the bar date order.

10      The claims asserted by the plaintiffs in the State Court

11  lawsuit as you just heard with respect to Crowell, Murphy, and

12  Crowell, and as a review of the complaint in the Hodge action

13  indicates they are "against the city or of property of the

14  city."

15      If you didn't file a proof of claim you can't make a

16  claim against the city or property of the city.  Plaintiffs

17  are also prohibited from receiving a distribution under the

18  plan because they did not file a proof of claim under

19  Paragraph 22(b) of the bar date order.

20      The plan, however, is the only document or law the

21  plaintiffs point to to support their position that they're

22  entitled to money from the city.

23      And -- and finally, Your Honor, the motor vehicle plan

24  provision provides that the city will pay -- will "pay valid

25  pre-petition claims."  The plaintiffs do not have a valid

1  claim because they did not act in accordance with the bar date

2  order.  And I think it's important to point out that the bar

3  date order was entered far in advance of the plan.  So there

4  can't be any argument here that there was some sort of

5  detrimental reliance.  We had the bar date order entered --

6          THE COURT:  Well, I was going to ask you whether,

7  you know, in interpreting the provision in the plan.

8          MR. SWANSON:  Yes.

9          THE COURT:  The phrase you referred to, valid

10 pre-petition claims.

11         MR. SWANSON:  Yes.

12         THE COURT:  The issue is, is what does valid mean

13 there.

14         MR. SWANSON:  Sure.

15         THE COURT:  In -- in this context.  Did the -- I --

16 I -- I assume the other side's view of this is that -- I think

17 the other side's view of this is that the -- the plan which

18 was confirmed of course, I don't know, roughly a year or more

19 after the bar date order and the plan that was proposed that

20 was confirmed also that was proposed after the bar date order

21 that that changed.  It had -- it had the effect of -- of

22 modifying the bar date order rule that would normally apply to

23 these motor vehicle related claims by giving them special

24 treatment without requiring -- saying that proofs of claim had

25 to be filed.

1          MR. SWANSON:  Yeah.  But there's nothing in that

2     provision which says that.

3          THE COURT:  Now, wait.  We're talking just for the

4     record, we're talking about this provision on Page 62 of the

5     -- 62 to 63 of the plan.

6          MR. SWANSON:  Yeah.

7          THE COURT:  And then I guess we're also talking

8     about Paragraph 58 of the order confirming plan, right?

9          MR. SWANSON:  Right, right.

10         THE COURT:  Okay.  Paragraph 58 of the order

11    confirming plan which is docket 8272.  There's a copy of the

12    confirmed plan also at 8272.  And that is Page 62 to 63.  So

13    when you quote this phrase valid pre-petition claim you're

14    quoting from those places.

15         MR. SWANSON:  Correct, Your Honor.

16         THE COURT:  Both have that phrase.

17         MR. SWANSON:  Yes.

18         THE COURT:  The city will pay, continue to

19    administer and pay valid pre-petition Claims, capital C for

20    the word Claims, for liabilities, et cetera.

21       So valid includes a reference -- a claim is not valid

22    within the meaning of this phrase in your view if it was not

23    the subject of a proof of claim that was timely filed.

24         MR. SWANSON:  That's correct, Your Honor.

25         THE COURT:  Why is that?  Why do you -- why do you

1  think that I should interpret the plan that way?

2      MR. SWANSON:  Well, one, the bar date order said

3  that anyone who had to -- had a pre-petition claim had to file

4  a proof of claim.  So I don't know how you could have a valid

5  claim when you've disregarded an order of the Court.

6      Second --

7      THE COURT:  I guess it depends on what the plan and

8  the order confirming plan say and mean about that, doesn't it?

9      MR. SWANSON:  It does.  But there's nothing in the

10  plan or the order confirming the plan which says that the bar

11  date order with respect to these claims is suspended.

12      In fact if you look at Page 32 of the plan, it says the

13  plan does not modify the bar date order.  So to the extent

14  that --

15      THE COURT:  Page what?

16      MR. SWANSON:  Page 32.

17      THE COURT:  All right.  Hold on.  I don't think you

18  cited this in your brief.

19      MR. SWANSON:  I -- I did not.  I saw it yesterday,

20  Your Honor.

21      THE COURT:  Yeah.  Because that -- of course one of

22  the thing I'm wondering is, you know, this is a very long

23  complicated plan and order confirming plan.  Is there

24  something in there that speaks to this further.

25      So you're citing it's Page 32 of the plan.  I'm looking

1  at that.  Where is it in there?  Oh, I see Item D.

2              MR. SWANSON:  No modification of bar date order.

3              THE COURT:  It says the plan does not modify any

4  other bar date order including bar dates for claims entitled

5  administrative priority under Section 503(b)(9) of the

6  Bankruptcy Code.  Let's talk about other bar date orders.  Is

7  there a reference -- oh, there's on Page 31 there's a

8  reference in (2)(a), the general bar date provisions.

9              MR. SWANSON:  Right.

10              THE COURT:  Does that -- does that apply?

11              MR. SWANSON:  Well, those are administrative.

12              THE COURT:  That's administrative?

13              MR. SWANSON:  Claims, yeah.  So --

14              THE COURT:  Is there some place -- okay.  So you're

15  relying on sub (d) there on Page 32, the -- the reference to

16  -- saying that the plan does not modify any other bar date

17  order.

18              MR. SWANSON:  Yeah.

19              THE COURT:  That includes the bar date order that

20  we're talking -- that you're relying on 1782 which is for --

21  includes general unsecured claims.

22              MR. SWANSON:  Correct.  Paragraph 43 on Page 5

23  defines bar date order as a order that I cite to in my --

24              THE COURT:  Okay, wait a minute, 45.

25              MR. SWANSON:  Paragraph 43 on Page 5 of the plan.

1          THE COURT:  Oh, 5, now in the definitions.

2          MR. SWANSON:  Correct.

3          THE COURT:  All right.  Hold on.  Hold on.  That

4   definition as I'm sure you're about to say includes a specific

5   reference to the bar date order you're relying on.

6          MR. SWANSON:  Yeah.

7          THE COURT:  Docket 1782.

8          MR. SWANSON:  Yes.

9          THE COURT:  Right?

10         MR. SWANSON:  Correct.

11         THE COURT:  So that is a -- falls within the

12  definition of bar date order as defined and from that you

13  argue that this provision (d) on Page 32 then must include

14  that.

15         MR. SWANSON:  That's correct, Your Honor.  So any --

16  any argument that the motor vehicle plan provision modified

17  the bar date order fails not only because there's nothing in

18  the motor vehicle plan provision which says it modifies the

19  bar date order, but there's other provision -- another

20  provision in the plan which says that nothing in the plan is

21  modifying the bar date order.

22     But, Your Honor, I don't even think we need to -- to get

23  that far because if we look at the bar date order, and I don't

24  think this Court needs to get to interpreting what a valid

25  pre-petition claim is.  I -- the city views that language as

1  certainly supporting it.

2      But the bar date order says that if you did not file a

3  proof of claim you are not entitled to assert a claim against

4  the city or property of the city.  So whether valid

5  pre-petition claim means you did or you didn't file a proof of

6  claim, we have a -- a paragraph in the bar date order which

7  remains in full force and effect which says that if you didn't

8  file a proof of claim you can't assert a claim against the

9  city, or property of the city.  And you're not entitled to any

10 -- any distributions under this plan.

11     So we have -- we have three arguments, each of which I

12 think --

13         THE COURT:  Well, except that under the plan the

14 motor vehicle plan provision -- provisions in the order

15 confirming plan and the -- and the plan, if the claims

16 involved here in these motions are valid but they weren't

17 timely filed, there was no proof of claim filed, you might

18 have a conflict between the order confirming plan and the plan

19 on the one hand and the bar date order on the other hand

20 except that you -- that you have the provision in the plan and

21 it says the bar date order isn't modified.

22         MR. SWANSON:  Yes.

23         THE COURT:  Right?  That -- that would -- then you

24 would have a conflict in that event, wouldn't you?

25         MR. SWANSON:  I don't think --

```
 1          THE COURT:  Between the bar date order and the plan.

 2   Because the plan says valid claims and if valid claims

 3   includes ones even for which no proof of claim was filed,

 4   valid claims are going to be paid by the city and then you had

 5   another provision in the same plan and the same order

 6   confirming plan that said the bar date order isn't modified.

 7   Doesn't that clearly conflict within --

 8          MR. SWANSON:  I don't think it does.  Because the

 9   bar date order said you can't -- you can't assert a claim

10   against the city or property of the city.

11      So how could you make the assertion that you have a valid

12   claim if the bar date order prohibits you from making that

13   assertion in the first instance.  I mean the bar date order

14   says you can't make a claim against the city or property of

15   the city how -- how -- how can we get to the point where the

16   plaintiff can even make a request under that provision.

17      And further, the bar date order says you're not entitled

18   to receive any distributions under the plan.  So you couldn't

19   make that request either.

20      So I -- frankly I -- I don't think that these are valid

21   claims because they -- they disregarded an order, but --

22          THE COURT:  Well, your argument is then the valid

23   claim, that phrase in the motor vehicle plan provision, can

24   only mean -- can only mean one of the requirements for valid

25   means a timely proof of claim was filed.
```

1          MR. SWANSON:  That is correct.

2          THE COURT:  That it -- that's the only way to read

3  it that doesn't create a conflict between the plan and the

4  order confirming plan on the one hand and internal conflict

5  within the -- the plan, right?  Because the plan has another

6  provision that says the bar date order isn't modified.

7          MR. SWANSON:  That's correct.

8          THE COURT:  So it sounds like what you're arguing is

9  valid claim, that phrase must mean, and the plan must mean, or

10  include a -- a -- only a claim for which a timely proof of

11  claim is filed.

12         MR. SWANSON:  That's correct because then there's a

13  bar date order.  You wouldn't even be able to assert a claim

14  against the city if he didn't file a proof of claim.  So, you

15  know, you don't even get to the -- the valid language.

16         THE COURT:  I'm just making a couple of notes to

17  myself here.  And so you're arguing that I should interpret

18  the plan in a way that avoids, if possible it avoids internal

19  conflicts.

20         MR. SWANSON:  Yes.

21         THE COURT:  Within the plan.

22         MR. SWANSON: Yes.

23         THE COURT:  If -- if it can reasonably be done.

24         MR. SWANSON:  I -- I think it can be reasonably

25  done.  And I -- and I don't think -- I still don't think the

1 Court can get around the fact that we have a bar date order

2 which says you're not entitled to a distribution under the

3 plan unless you file a proof of claim.  And now they're

4 seeking distribution under the plan.

5      And -- and there was nothing in the motor vehicle plan

6 provision, nothing in the order confirming the plan in

7 Paragraph 48 or 58 which -- which says that the bar date order

8 was modified.

9           THE COURT:  Are there any other plan provisions --

10 or provisions in the order confirming plan that bear on this

11 issue in your view other than what you've already mentioned?

12           MR. SWANSON:  Not that I'm aware of, Your Honor.

13           THE COURT:  Is there anything in the order

14 confirming plan as opposed to the plan itself that says that

15 the bar date order is not modified by the plan?

16           MR. SWANSON:  I believe there is.  And I will look

17 for that while the plaintiffs --

18           THE COURT:  You're not sure at the moment?

19           MR. SWANSON:  I'm not sure at the moment, but I will

20 -- I will take a look.

21           THE COURT:  Well, actually I'd like to know anything

22 that the order confirming plan says about, or -- or wherever

23 it refers to the bar date order.

24           MR. SWANSON:  Sure.

25           THE COURT:  And the same for the -- the plan really.

1  Because you know, you just came up with this -- these

2  provisions to the plan about the bar date order not being

3  modified in today's hearing.  That wasn't in the papers filed

4  by anyone, including you on these motions.

5      And so I, you know, I haven't -- I'm looking at these now

6  as you point these things out.  So it would be helpful to

7  know, and you know, I could probably do a word search myself,

8  but you guys are very familiar with the plan I'm sure.  I'd

9  like to know what -- what all is in there that mentions the

10  bar date order at all.

11          MR. SWANSON:  Sure.

12          THE COURT:  Other than Paragraph 58 in the order

13  confirming plan, is there anything in the order confirming

14  plan, anything else that talks about these motor vehicle plan

15  provisions?

16          MR. SWANSON:  Not that I'm aware of.

17          THE COURT:  All right.  So anything else you want to

18  say about this issue before we hear from the others?

19          MR. SWANSON:  No, Your Honor.

20          THE COURT:  All right.  So, I'll hear from counsel

21  for both of the responding parties, both motions now.  I don't

22  care who goes first on it.  Mr. Dedvukaj.

23          MR. DEDVUKAJ:  Dedvukaj, thank you, Your Honor.

24          THE COURT:  Dedvukaj, sorry.

25          MR. DEDVUKAJ:  Yeah, actually -- actually a very

1 interesting topic and I've read over this -- I've read over

2 this provision in the plan.  And it's interesting to note that

3 they call it the operation of the city motor vehicles.

4      And the reason they did that, Your Honor, is because we

5 have in Michigan what's called the Governmental Immunity Act.

6 And the only way that there can ever be a valid claim against

7 the city is if there was actually the operation of a city

8 owned vehicle.

9      And so that's what makes it valid.  Now counsel, as the

10 Court's pointed out, is there a conflict between the bar date

11 and the plan language.  There clearly is because the city

12 didn't put anything in there that would define and show that

13 the proof of claim timely filed bar date was going to be

14 included in this carve out of this very important provision.

15      And it's very important because the city for decades had

16 done business as a self insured entity.  That's very key

17 because that's how they managed to broker this provision with

18 the State of Michigan.  Because people who were injured in

19 motor vehicles should look at the entity that caused the

20 injury rather than go to Medicaid, Medicare or other state

21 funded taxpayer places of recovery.

22      It's very clear in this provision where it says nothing

23 in the plan shall discharge, release, or relieve the city from

24 any current or future liability with respect to claims subject

25 to insurance coverage pursuant to MCL --

1          THE COURT:  What are you reading from?

2          MR. DEDVUKAJ:  I'm reading from Paragraph 58, Your

3  Honor.

4          THE COURT:  Oh, I'm sorry.  I was looking at the

5  plan provision.  All right.  You're in the order confirming

6  plan, Paragraph 58.  One second.

7      All right.  Starting in the middle there with the words

8  nothing in the plan or this order should discharge, et cetera,

9  right?

10          MR. DEDVUKAJ:  That's correct, Your Honor.

11          THE COURT:  All right.  So what about -- what else

12  about that?

13          MR. DEDVUKAJ:  And I would -- I would further

14  indicate, Your Honor, that you know, plans are subject to the

15  general principles of contract construction.  And in this

16  particular case the law basically says that any ambiguity

17  which there clearly is because if one could reasonably

18  interpret valid in more than one way there's a ambiguity and

19  that has to be construed against the drafter.

20      And I've got a whole slew of cases I can cite to the

21  Court.  One of them being In Re: Shell Home, 280 BR 847 on

22  Page 48.  And they cite their restatement section on contract

23  Section 206.

24      There is In Re: Forklift LP Corp., 363 BR 388 on Page

25  397.  Bankruptcy District Court Delaware, 2007.  The Court

1  construed the plan against the drafter.

2    In Re: Harstad, 155 BR 500, Pages 510 to 511.  Bankruptcy

3  District Court of Minnesota, 1993.  And --

4         THE COURT:  I think you can stop with the string

5  citation.  I think I understand the concept.

6         MR. DEDVUKAJ:  Okay.

7         THE COURT:  And the oral argument is not a place to

8  cite cases that are not in your papers as a general rule.  But

9  the concept is you construe an ambiguity as the drafter of a

10  contract.

11         MR. DEDVUKAJ:  Yes, sir.

12         THE COURT:  Which rule does not apply when both

13  parties contribute to the drafting, or several parties.  And

14  that's probably what we have when we're talking about an order

15  confirming plan or a plan of this magnitude and complexity

16  where so many parties were involved in negotiations over the

17  plan and the plan language and the order confirming plan

18  before it was -- they were ultimately entered.

19     But in any case you're --

20         MR. DEDVUKAJ:  I think --

21         THE COURT:  -- you're arguing it's -- it's the city

22  basically that drafted this and -- and this provision should

23  be construed against them.

24         MR. DEDVUKAJ:  In particular because claimants here

25  had no participation in that plan language whatsoever.  So as

1  between the claimants here, the City of Detroit absolutely has

2  to be construed as the drafter.

3      And in fact a case out of the Northern District of

4  Florida in 1995 indicated that an omission of language in a

5  plan dealing with post-confirmation interest, that was

6  construed against the drafter which is essentially what --

7  what we've got here.

8      I mean there was this class of claims that they dealt

9  with in a special way and these claimants clearly fall within

10  that class.

11          THE COURT:  All right.  Anything else you'd like to

12  say about this?

13          MR. DEDVUKAJ:  No, sir.  Thank you.

14          THE COURT:  All right.  Thank you.  All right.  So

15  Mr. Dempsey.

16          MR. DEMPSEY:  Thank you, Your Honor.  May it please

17  the Court, I just have a couple of points I'd like to raise.

18  And I'd also like to express my congratulations to the City of

19  Detroit's attorney on their knowledge as it pertains to this

20  bankruptcy as well as this Court.  I've never seen anything

21  like this before.  I've been practicing 30 years and the

22  knowledge that everybody in here besides myself, and I'll

23  admit it, has pertaining to this is incredible.

24      So having said that, I think one thing that the defendant

25  -- or excuse me, the City of Detroit is missing is there are

1  two different types of claims in a motor vehicle accident.

2  There is a pot of money available which was set aside by this

3  Bankruptcy Court to pay no fault benefits, PIP benefits.  Wage

4  loss, household services, attendant care, and medical bills.

5       All through the bankruptcy the medical bills were being

6  paid by the City of Detroit to the providers.  The case that I

7  have involves both a first party and a third party case.

8       I believe provision 58 of the plan, excuse me, of the

9  eighth amended plan, adjustment of debts for the City of

10  Detroit specifically states that no fault benefits are to be

11  paid by the City of Detroit's other pot of money, not

12  including the general unsecured claim fund.

13       I do believe that the general unsecured claim fund may

14  have the specific provision of filing the notice of claim.

15  Having said that, I do believe that the no fault case should

16  survive and I would rely upon Mr. Dedvukaj's argument

17  pertaining to the third party case as well.

18            THE COURT:  Well, you tell me the -- I think we have

19  your State Court complaint.  Yeah, a copy of that is attached

20  to the city's motion, right?

21            MR. DEMPSEY:  It is.

22            THE COURT:  Okay.  One second, hold on.  Now that

23  was filed -- that's the one that was filed pre-petition.

24            MR. DEMPSEY:  That is correct.

25            THE COURT:  The city is complaining that you are

1  continuing to prosecute or will continue to prosecute that

2  case and so the debate is whether you should be allowed to do

3  that.

4          MR. DEMPSEY:  Well, I think it goes one step

5  further, Judge.  We specifically stated to them that the case

6  would be reinstated specifically for the only purpose of the

7  no fault benefits, not the claim for the pain and suffering

8  known as the third party claim.

9      The case was originally stipulated in State Court to be

10  reinstated for the purposes of pursuing the no fault claim and

11  then all of a sudden the bankruptcy attorneys found out that

12  there was a third party claim and we've tried to convince them

13  to avoid this whole hearing today because our whole claim is

14  for the no fault benefits, but here we are.

15          THE COURT:  Well, your claim or claims in the state

16  lawsuit fall within what part or parts of this Paragraph S on

17  Pages 62 to 63 of the plan?

18          MR. DEMPSEY:  I can't answer that, Judge.

19          THE COURT:  You can't answer that?

20          MR. DEMPSEY:  I cannot.

21          THE COURT:  Why not?

22          MR. DEMPSEY:  I have not reviewed the entire plan.

23  I am here specifically --

24          THE COURT:  I'm pointing you to a specific

25  paragraph.  Do you have it in front of you?

1          MR. DEMPSEY:  Paragraph 58 in my brief.

2          THE COURT:  No, Paragraph 58 is in the order

3    confirming plan.

4          MR. DEMPSEY:  Correct.

5          THE COURT:  And then we have it's sub Paragraph S on

6    Pages 62 to 63 of the plan itself.  Have you read that?  I

7    think you guys all have that part in your response, don't you?

8          MR. DEMPSEY:  I have S, is Paragraph S payment of

9    certain claims relating to the operation of city motor

10   vehicles?

11         THE COURT:  Yeah.

12         MR. DEMPSEY:  I have that just presented to me right

13   now by Mr. Dedvukaj.

14         THE COURT:  I'm sorry.  Was that -- that was not

15   mentioned?  I thought it was mentioned in your response to the

16   motion here.

17         MR. DEMPSEY:  I believe it was Paragraph 58 that was

18   mentioned.  And then --

19         THE COURT:  All right.

20         MR. DEMPSEY:  I did mention 531. -- excuse me,

21   500.3101.  I was familiar with this provision.

22         THE COURT:  I see.  Yeah, your response relies on

23   Paragraph 58.  So what -- what I'm trying to figure out is, I

24   need to understand what your claims are in the State Court

25   lawsuit and how they relate to the -- the categories of claims

1  in Paragraph S, Pages 62 to 63 of the plan.

2          MR. DEMPSEY:  I can tell you.

3          THE COURT:  I'm sorry?

4          MR. DEMPSEY:  I can tell you.

5          THE COURT:  Go ahead.

6          MR. DEMPSEY:  The original complaint alleged first

7  and third party claims.  Third party being the serious

8  objectively identified injuries, serious impairment of an

9  important body function, as well as claim for number two which

10 are the no fault benefits.

11    Fifty -- excuse me --

12         THE COURT:  Wait, hold on.  Number two, what do you

13 mean number two?

14         MR. DEMPSEY:  I have Count 2 in the complaint.

15         THE COURT:  Oh, I see.  Count 2 was for what you're

16 calling no fault benefits.

17         MR. DEMPSEY:  Correct, correct.  Also known as PIP.

18 And that relies upon a different statute which is 500.3101 et

19 seq. whereas the pain and suffering under the general claim I

20 believe is 500.5135.  That's the serious impairment issue.  So

21 there are two separate issues here.

22         THE COURT:  Now does Paragraph S on 62 to 63 of the

23 plan cover both types?

24         MR. DEMPSEY:  It does.  And it says the personal

25 injury protection benefits shall be paid.  And then with the

1  -- with regard to the third party claims, they're limited to

2  the 20,000 and then they go into the general fund but they had

3  to have a proof of claim filed.  I do not believe the no fault

4  benefits did.  As stated in Paragraph 58 of the eighth amended

5  plan for adjustment of debts of the City of Detroit.

6          THE COURT:  All right.  So the personal protection

7  benefits, that part of your claim, you're saying -- you're

8  arguing did not require filing of a proof of claim.

9          MR. DEMPSEY:  That's correct.

10          THE COURT:  And that's the only part that your

11  clients are pursuing or want to pursue?

12          MR. DEMPSEY:  It's the only part that I believe we

13  can pursue because the claim -- other than what Mr. Dedvukaj

14  argued today, because the claim did require the plan -- excuse

15  me, the notice of claim.

16          THE COURT:  The plan required what?

17          MR. DEMPSEY:  The notice of claim.

18          THE COURT:  You mean proof of claim?

19          MR. DEMPSEY:  Yes.

20          THE COURT:  All right.  So what else do you want to

21  say about this issue?

22          MR. DEMPSEY:  I just think there's two separate

23  issues which I've already gone over.  I'm not sure it was too

24  succinct, but first and third party claim, first party no --

25  no proof of claim required, third party claim there probably

1  was.

2          THE COURT:  All right.  Is that it?

3          MR. DEMPSEY:  Yes, thank you.

4          THE COURT:  All right.  Thank you.  Mr. Swanson, you

5  may reply to these arguments in support of the city's position

6  if you want to.

7          MR. SWANSON:  Thanks.  Thank you, Your Honor.  The

8  motor vehicle plan provision in the city's view actually

9  treats first and third party claims the same.  You had to file

10 a proof of claim for each to -- to be entitled to a

11 distribution under that provision.

12     The -- the Court asked -- and there's nothing in the

13 language which says that you had to file a proof of claim for

14 one, you didn't have to file a proof of claim for another one.

15 The bar date order applies with equal force to both types of

16 claims.

17     The Court asked about any language in the confirmation

18 order or the plan with respect to the bar date order.  And we

19 did a quick search so I can't represent that it's

20 comprehensive, but in -- in Page 114 of the confirmation

21 order, Paragraph 69 says effective as of the confirmation date

22 but subject to the occurrence --

23          THE COURT:  Wait a minute, wait a minute.  Let me

24 grab it.

25          MR. SWANSON:  Okay.

1          THE COURT: Let me turn to this. Hold on. I'm at

2   Page 69. Go ahead.

3          MR. SWANSON: I'm sorry, Paragraph 69, Page 114.

4          THE COURT: Oh, hold on. I'm sorry. Okay. I'm --

5   I'm at that Paragraph 69. Go ahead.

6          MR. SWANSON: Effective as of the confirmation date

7   but subject to the occurrence of the effective date which we

8   all know occurred, and subject to the terms of the plan in

9   this order, all prior orders entered in the Chapter 9 case,

10  all documents and agreements executed by the city as

11  authorized and directed thereunder, and all motions or

12  requests for relief by the city pending before the Court as of

13  the effective date shall be binding upon and shall enure to

14  the benefit of the city and any other parties expressly

15  subject thereto.

16      And then we also have the provision in the -- the plan

17  with respect to the no modification of bar date order which

18  states I think succinctly and clearly that the plan --

19          THE COURT: You mean the one you referred to

20  earlier.

21          MR. SWANSON: Correct.

22          THE COURT: Yeah.

23          MR. SWANSON: Is not a modification of the bar date

24  order. I didn't find anything in my quick search other than

25  those provisions which were directly on point to the -- to the

1  Court's question.

2         THE COURT:  Is the city -- has the city been paying

3  any type of benefits covered by the motor vehicle plan

4  provision during the pendency of the case for which a timely

5  proof of claim was not filed by the claimant?

6         MR. SWANSON:  As -- as Your Honor knows, I've been

7  filing numerous motions on this issue.  Any time this issue

8  comes up in State Court the city says hold on, let's check,

9  see if you filed a proof of claim.  And -- and if they didn't

10  file a proof of claim, we file a motion in this case and none

11  of them have been contested for a year or so until these two

12  parties contested them.

13      So is it possible that the city has paid third party

14  benefits for people that didn't file a proof of claim.  You

15  know, administratively it's probably very difficult and maybe

16  that has happened.  But my consistent direction from the city

17  has been to come to this Court and seek relief.

18         THE COURT:  What's difficult administratively?

19  Telling what's a pre versus a post-petition claim or what,

20  something else?

21         MR. SWANSON:  Or maybe just someone missed a

22  checklist item to look for a proof of claim or you know --

23         THE COURT:  All right.

24         MR. SWANSON:  -- or something along those lines.

25  But -- but we have been consistently coming to this Court

1          THE COURT:  You're not aware at least of a -- of a

2    practice by the city that would be inconsistent with your --

3    the interpretation of plan in the bar date order that you're

4    arguing today?

5          MR. SWANSON:  I'm not aware of it.  And -- and I've

6    filed many many motions in this Court which are consistent

7    with the actions I've taken here.

8          THE COURT:  All right.  Go on.

9          MR. SWANSON:  Frankly, Your Honor, I have nothing

10   further unless -- unless the Court has -- has questions.  We

11   believe the bar date order should be enforced.  There's

12   nothing in the plan which says that the bar date order

13   shouldn't be enforced.

14       In fact both the plan and -- and the confirmation order

15   state that all prior orders entered remain and the plan

16   contains a very specific reference with respect to the bar

17   date order which says that -- that it should be enforced.

18       There's two provisions in the bar date order which state

19   that you can't assert a claim against the city if you didn't

20   file a proof of claim.  And you can't get a distribution under

21   the plan.  And the city would rest on -- on those provisions.

22         THE COURT:  What about the language that Mr.

23   Dedvukaj cited at paragraph -- in Paragraph 58 of the order

24   confirming plan.  Nothing -- "nothing in the plan or this

25   order shall discharge, release, or relieve the city from any

1  current or future liability with respect to claims subject to

2  insurance coverage pursuant to MCL 500.3101." That -- that

3  language.

4          MR. SWANSON: Sure. And that Paragraph 58 which is

5  on page -- do you have a reference?

6          THE COURT: Page 108 of the order confirming plan.

7          MR. SWANSON: Page 108, thank you. Well, Your

8  Honor, it says current liability. There is no current

9  liability if the city -- if no proof of claim was filed.

10     The bar date order says that you can't assert a claim

11  against the city or property of the city and you're not

12  entitled to a distribution. So I don't see how -- how -- how

13  there could be a current liability because we already had an

14  -- an order which says that -- that there is no liability.

15     And we're not relying on the plan. What we're relying on

16  is the bar date order.

17          THE COURT: No, I know. I mean --

18          MR. SWANSON: Yeah.

19          THE COURT: Counsel -- opposing counsel is pointing

20  to this as -- as I think as a provision in the order

21  confirming plan that clarifies and makes clear his view of

22  this.

23          MR. SWANSON: Well, I mean one, we can -- we can

24  parse it out. Nothing in this plan or this order shall

25  discharge.

1      We're not arguing that there's anything in the plan or

2  the confirmation order.  What we're arguing is that there's

3  something in a separate order, in the bar date order which

4  relieves the city of the liability.

5      And -- and secondly, Your Honor, there can't be, as I --

6  as I just said, there can't be a current liability if you

7  already have an order which says that there can't be a current

8  liability.  So --

9          THE COURT:  All right.  Anything else, Mr. Swanson?

10         MR. SWANSON:  No, Your Honor.  Thank you.

11         MR. DEMPSEY:  If I might, Judge, just very briefly.

12         THE COURT:  Yeah, go ahead.

13         MR. DEMPSEY:  I would challenge Mr. Swanson to show

14  us and this Honorable Court any other motions that have been

15  filed pertaining to the no fault cases.  The PIP cases.  The

16  ones pertaining to Paragraph 58 and Section MCLA 500.3101, bar

17  date or not.

18      You will notice -- I know this Court is well aware of

19  this plan.  Paragraph 58 specifically doesn't mention 500.5135

20  which is the serious impairment issue.  I can tell you that

21  some of the providers in some of our cases were being paid

22  during the pendency of the bankruptcy.

23      So I know there's a separate pot of money.  What it's

24  called I'm not exactly sure and I do apologize to the Court

25  for that.  But I do specifically believe that the no fault

1  claims are separate from the pain and suffering claims as they

2  pertain to this plan.

3        THE COURT:  Well, all right.  Thank you.  I'm going

4  to -- we're done hearing oral argument today.  And I'm -- I'm

5  satisfied that -- that this issue is -- is sufficiently

6  complex that I should give the parties further opportunity to

7  supplement their briefing on it.  Because I'm not going to

8  rule at this moment on this issue, this -- the second issue

9  we've been dealing with, nor am I going to rule on the first

10 issue today.

11      I want to take some time to think about the arguments of

12 the parties and -- and consider the bar date order, the plan,

13 and the order confirming plan, the provisions the parties have

14 argued about and possibly other provisions in those -- in

15 those documents.

16      But while I do that because the parties have not

17 necessarily exhausted the plan and order confirming plan and

18 bar date order provisions in terms of citing them to me and

19 arguing from them, and because there may well be other

20 provisions in these documents, particularly the plan and the

21 order confirming plan that may have some bearing or that the

22 Court should be aware of, before it rules on this -- on this

23 issue.

24      I'm going to give the parties an opportunity for optional

25 supplemental briefs to be filed addressing this second issue.

1  And I say optional. That means you can file it or not file

2  it. And either way is fine, nobody is going to get defaulted

3  for not filing a further brief. But I'm going to give you the

4  opportunity.

5      With respect to the motion directed against the -- the

6  Crowells and Ms. Murphy, we're going to have further

7  proceedings and briefing on that one anyway with respect to

8  the pre-petition versus post-petition claim issue.

9      And so I want to set a schedule for these things now and

10  I'll put it into an order confirming in an order, one or two

11  orders that I'm going to enter after this hearing.

12      Let's go back to this first issue that was argued which

13  relates to the Crowell, Crowell, and Murphy motion by the

14  city. The issue of whether the claims of the Crowells and Ms.

15  Murphy are claims that arose before the petition date or -- or

16  after. I want to give -- I'm going to give the respondent,

17  that is the claimants, the Crowells and the Murphys an

18  opportunity to file a -- a further brief and exhibits

19  containing evidence in the form of affidavits, documents,

20  other documentary material in support of their argument that

21  the -- their claim at issue arose after the filing of the

22  city's bankruptcy case under the fair contemplation test that

23  this Court has applied and has ruled today will apply to this

24  issue in this case.

25      And then I'll give the city an opportunity to file a

1 response, brief or other exhibits, or both if it wishes to

2 what the claimants file.  And then we're going to set a

3 deadline for supplemental briefing on the second issue, the

4 plan -- the motor vehicle plan provision issues that have been

5 argued today.

6     So I want to set a schedule.  I'd like to set a deadline

7 for the claimants, the creditors with respect to each of these

8 two motions to be the same day.  So, Mr. Dedvukaj.

9         MR. DEDVUKAJ:  Yes, Your Honor.

10         THE COURT:  Did I say that right?

11         MR. DEDVUKAJ:  Yeah.

12         THE COURT:  How much time do you want to have before

13 I have a deadline for you to file this?

14         MR. DEDVUKAJ:  Can I have a date in January?

15         THE COURT:  I'm sorry?

16         MR. DEDVUKAJ:  Can I have a date in January, please?

17         THE COURT:  What do you want?

18         MR. DEDVUKAJ:  How about January 25th?

19         THE COURT:  That's a long way off.  Why so long?

20         MR. DEDVUKAJ:  We've got three claims that I'm going

21 to have to give you evidence on.  If it was just one it

22 wouldn't be that big of a deal but since I've got three

23 claimants --

24         THE COURT:  Hold on.

25         MR. DEDVUKAJ:  And then I've got a vacation I'm

1  taking from the 16th, taking my kids down to Florida.

2          THE COURT:  You asked for what again, January what?

3          MR. DEDVUKAJ:  January 25th, 2017.

4          THE COURT:  All right.  I will take a deep breath

5  and give you that long.  January 25.  We do have some holidays

6  coming up between now and then I -- I recognize that as well.

7      All right.  So with respect to the second issue,

8  claimants want how long to file a further brief or briefs,

9  optional briefs on that second issue.  Mr. Dedvukaj.

10         MR. DEDVUKAJ:  Your Honor, I can do it by December

11  15th on the second issue.

12         THE COURT:  Is December 15 sufficient time for you,

13  Mr. Dempsey?

14         MR. DEMPSEY:  Yes, Your Honor.

15         THE COURT:  All right.  We'll make that deadline

16  December 15.  All right.  Now Mr. Swanson, with respect to

17  that second issue where the other side has a deadline of

18  December 15, how long after that do you want me to give you to

19  file any response?

20         MR. SWANSON:  Would January 9th work for the Court?

21         THE COURT:  I'm sorry?

22         MR. SWANSON:  January 9.

23         THE COURT:  Hold on.  Yes, that's a Monday.  January

24  9, 2017, that's fine.  And then with respect to that first

25  issue, the pre versus post-petition claim issue, how long

1  after January 25 do you want me to give you to respond to

2  that?

3        MR. SWANSON:  Thirty days, Your Honor, February 25th.

4        THE COURT:  That's a Saturday.  Let's pick a week

5  day.

6        MR. SWANSON:  Sure, February 24th.

7        THE COURT:  All right.  Friday, February 24, 2017.

8  I'm going to set a further hearing date, non-evidentiary

9  hearing date on -- on these motions.  Which I think probably

10 certainly will cover and include further opportunity for oral

11 argument regarding the -- the pre versus post-petition claim

12 issue.

13     It may cover also further opportunity for oral argument

14 on the motor vehicle plan provision issue, but it may not.  I

15 mean if I -- if I decide that issue with some sort of written

16 opinion before the further hearing date then -- then that

17 issue will be resolved and done.  But for the time being I'm

18 going to -- I'm going to adjourn -- or schedule a further

19 hearing on both these motions to occur soon after the February

20 24, 2017 deadline that the city will have to respond, to file

21 their last response of the ones we've been talking about.

22     So we're looking at March.  Mr. Swanson, I don't think we

23 have gone out that -- into March for -- to -- to give you

24 claim objection hearing dates in the city's case, have we?

25        MR. SWANSON:  I -- I do not believe so.  We're --

1  we're going to need them though, so I'm happy to -- to speak

2  with --

3            THE COURT:  Well, I -- generally we've been doing

4  these about in the middle of the month.  Whatever date we pick

5  for this further hearing in March we can make -- you can just

6  assume that will be the claim objection hearing date in March

7  if you want only one in March.

8            MR. SWANSON:  Yeah.

9            THE COURT:  And then we'll work on other months

10 later.  But so we're looking at March 15 is a Wednesday but

11 I'm out of town that day.  I'm -- I'm looking at -- I'd like

12 to do this on March 22.

13           MR. SWANSON:  No objection with the city, Your

14 Honor.

15           THE COURT:  It would be March 22, 2017 at 1:30 p.m.

16           MR. DEDVUKAJ:  1:30 Judge, thank you.

17           THE COURT:  Does that work on other counsel's

18 calendar?

19           MR. DEDVUKAJ:  Yes, Your Honor, it does.  Thank you.

20           MR. DEMPSEY:  I'll make it work, Judge.  Thank you.

21           THE COURT:  It's so far out.  I mean you may have a

22 trial date in the way, but you're both good, do you think?

23           MR. DEDVUKAJ:  I think so.

24           MR. DEMPSEY:  Yes, Your Honor.

25           THE COURT:  All right.  So that will be March 22.

1    And -- and -- all right.  So I will prepare and enter a

2    scheduling type order reflecting this which I hope comes

3    somewhere near to reflecting what I just said.

4        Is there anything else that any of you think I should

5    address in that order?  Mr. Swanson.

6            MR. SWANSON:  No, Your Honor.

7            THE COURT:  Mr. Dedvukaj.

8            MR. DEDVUKAJ:  No, Your Honor.

9            THE COURT:  Did I say it right that time?

10           MR. DEDVUKAJ:  You said it right.

11           THE COURT:  Okay.

12           MR. DEDVUKAJ:  Very good.

13           THE COURT:  Well, I'm sure I'll butcher it next

14   time, but all right.  Mr. Dempsey.

15           MR. DEMPSEY:  No, Your Honor.

16           THE COURT:  All right.  So we're done.  I think that

17   concludes all our matters for today.  And so we'll see some or

18   all of you next time.  Thank you all very much.

19           MR. SWANSON:  Thank you, Your Honor.

20           MR. DEDVUKAJ:  Thank you, Your Honor.

21           MR. DEMPSEY:  Thank you, Your Honor.

22           THE CLERK:  Please rise.  Court is adjourned.

23       (Court Adjourned at 4:53 p.m.)

24

25

1

2

3

4

5

6

7   We certify that the foregoing is a correct transcript from the

8   electronic sound recording of the proceedings in the

9   above-entitled matter.

10

11   /s/Deborah L. Kremlick, CER-4872          Dated: 12-2-16
     Jamie Laskaska

12

13

14

15

16

17

18

19

20

21

22

23

24

25