## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In Re:

Bankruptcy Case No. 13-53846

City of Detroit, Michigan,

Honorable: Thomas J. Tucker

Debtor.

Chapter 9

## DANNY CROWELL, LEOTA MURPHY AND JASMINE CROWELL'S SUPPLEMENTAL RESPONSE OPPOSING THE CITY OF DETROIT'S MOTION TO ENFORCE ORDER

At the recent hearing, the court requested that the parties provide the court with supplemental brief regarding the language of the approved Bankruptcy plan. In doing some further research, it has been discovered that the City of Detroit actually entered into a definitive agreement with the State of Michigan to pay insurance claims to maintain its status as a self-insurer. The City of Detroit for decades was self-insured for purposes of the Michigan No-Fault statute, MCL 500.3101d, and was required to maintain its status as a self-insurer. If the City of Detroit were to cease paying insurance claims, it would lose its status as a self-insurer.

As a self-insurer the City of Detroit had unlimited liability for no-fault claims. However, if the City of Detroit had to purchase insurance in the marketplace, it would necessarily incur greater expenses than it incurs as a self-insurer.

On December 10, 2014, claimants holding pre-petition claims were enjoined from pursuing a recovery beyond what is provided for in the Plan. See 11 U.S.C. 524(a)(2), 901(a), 944.[1] It was made clear that claimants holding post-petition claims may be entitled to pursue other remedies, as the claimants involved here are doing.

On May 2nd 2013, the City of Detroit applied for a Certificate of Self-Insurance but the City did not qualify because it could not meet the net worth requirement. **(Exhibit A)**. The Michigan Department of Treasury agreed with the Department of Insurance and Financial Affairs to put $15.2 million in escrow to pay claims and judgments stemming from the City of Detroit's obligations under the Michigan No-Fault law which it could not pay. In exchange, the Michigan Department of Insurance and Financial Affairs issued a Certificate of Self-Insurance to the City of Detroit. **(Exhibit B)**.

MCL 500.3101 mandates that the owner or registrant of a motor vehicle required to be registered in Michigan shall maintain "…security for the payment of benefits under personal injury protection (PIP), property protection insurance (PIP) and residual liability insurance." Security may be provided by purchasing

---

[1] See also Plan, Article III, Section D.3-5 at 49-50 (Docket #8045).

automobile insurance per MCL 500.2101 or by qualifying as a "self-insured" fleet owner of more than 25 vehicles under MCL 500.3101d.

In addition to having more than 25 vehicles the rules that a fleet owner must prove to possess a net worth of more than $5 Million, Michigan Administrative Code, R.257.538. The City did not meet the net worth criteria. The Michigan Commissioner of Insurance and Industry Services was required to deny a self-insurance certificate to the City of Detroit. Also important to note, Michigan Administrative Code R.257.538(2)(d) provides that a Certificate of Self-Insurance can be cancelled if the owner/registrant files a petition in bankruptcy or is declared bankrupt by a federal court, which of course the City of Detroit was. The State of Michigan and the City of Detroit then negotiated the language of the Plan.

The dispute herein is of the type that this Court retained jurisdiction under the confirmed Plan. Article VII, Sections G and I of the confirmed Plan state:

Pursuant to sections 105(c), 945 and 1142(b) of the Bankruptcy Code and notwithstanding entry of the Confirmation order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 9 Case and **the Plan to the fullest extent permitted by law**, including, among other things jurisdiction to:
...
G. Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, ***interpretation*** <u>**or**</u> **enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents;**
....
    I.    Issue injunctions, enforce the injunctions contained in the Plan and the
           Confirmation Order, enter and implement other orders or take such other

actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order [.][2]

For the reasons stated above, the City negotiated with the State of Michigan over how to treat these No-Fault claims while maintaining the ability to function as a self-insurer of its vehicles. The specific provision of the *Plan* incorporating the settlement provides:

**"S. Payment of Certain Claims Relating to the Operation of City Motor Vehicles**

From and after the Effective Date, the City will continue to administer (either directly or through a third party administrator) and pay valid prepetition Claims for liabilities with respect to which the City is required to maintain insurance coverage pursuant to MCL § 500.3101 in connection with the operation of the City's motor vehicles, as follows: (1) Claims for personal protection benefits as provided by MCL § 500.3107 and MCL § 500.3108, for which insurance coverage is required by MCL § 500.3101(1), shall be paid in full, to the extent valid, provided, however, that the City will not be liable for or pay interest or attorneys' fees under MCL § 500.3142 or MCL § 500.3148 on prepetition Claims for personal protection benefits; (2) tort claims permitted by MCL § 500.3135, **for which residual liability insurance coverage is required by MCL § 500.3101(1) and MCL § 500.3131, shall be paid, to the extent valid, only up to the minimum coverages specified by MCL § 500.3009(1), i.e., up to a maximum of (a) $20,000 because of bodily injury to or death of one person in any one accident, and subject to that limit for one person, (b) $40,000 because of bodily injury to or death of two or more persons in any one accident** and (c) $10,000 because of injury to or destruction of property of others in any accident; and (3) Claims for property protection benefits under MCL § 500.3121 and MCL § 500.3123 shall be paid, to the extent valid, only up to the maximum benefits specified in MCL § 500.3121; provided, however, for the avoidance of doubt, to the extent any valid Claim subject to subsections 2 and 3 above exceeds the applicable payment limits,

---

[2] Docket # 8045 at 69-70.

the excess claim amount shall be treated as an Other Unsecured Claim or a Convenience Claim (as applicable). **Nothing in the Plan shall discharge, release or relieve the City from any current or future liability with respect to Claims subject to insurance coverage pursuant to MCL § 500.3101 or Claims within the minimum coverage limits in MCL § 500.3009(1).** The City expressly reserves the right to challenge the validity of any Claim subject to this Section IV.S, and nothing herein shall be deemed to expand the City's obligations or claimants' rights with respect to these Claims under State law."

Important to note the significance of the word "*operation of city vehicles*" because a claim is valid only if it falls within one of the statutory exceptions to governmental immunity. The claims are <u>valid</u> here as provided by MCL 691.1405:

> **"Governmental agencies <u>shall</u> be liable for bodily injury and property damage resulting from the negligent <u>operation</u> by any officer, agent, <u>or employee</u> of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in Act No. 300 of the Public Acts of 1949, as amended, being sections 257.1 to 257.923 of the Compiled Laws of 1948 [the Michigan Vehicle Code]. [MCL 691.1405.]**

In Stanton v Battle Creek, 466 Mich 611, 616; 647 NW2d 508 (2002), our Supreme Court held that the exception's reference to the definitions provided in the Michigan Vehicle Code, MCL 257.1 et seq, applied only to the word "owner," and did not provide for a statutory definition of "motor vehicle." Instead, the Court consulted dictionaries and applied "*an automobile, truck, bus, or similar motor-driven conveyance*" as the proper definition, noting that a narrow definition provided the correct interpretation of an exception to governmental immunity. Id. at 618. After Stanton, Michigan Courts held that a broom tractor, a tractor mower, and a hydraulic grader are all motor vehicles subject to the exception. Regan v

Washtenaw Co Bd of Co Rd Comm'rs (On Remand), 257 Mich App 39; 667 NW2d 57 (2003); Wesche v Mecosta Co Rd Comm, 267 Mich App 274; 705 NW2d 136 (2005), overruled in part on other grds Kik v Sbraccia, 272 Mich App 388; 726 NW2d 450 (2006) (conflict panel), rev'd in part, aff'd in part Wesche v Mecosta Co Rd Comm, 480 Mich 75; 746 NW2d 847 (2008) (affirming Wesche). Thus, the Plaintiffs' have a "valid" claim under the *Plan* because the automobile was owned by the City of Detroit and being operated by its employee is a motor vehicle. **(EXHIBIT C, DETROIT POLICE REPORT).**

Given that the term "***operation of a motor vehicle***" encompasses "activities that are directly associated with the driving of a motor vehicle," it is clear that any injuries plaintiffs sustained from the accident resulted from the operation of a motor vehicle. See Seldon, 297 Mich App at 435; see also MCL 691.1405. Thus, Plaintiffs have a "valid" claim because the City of Detroit is not shielded nor entitled to governmental immunity.

In accordance with the agreement with the State of Michigan, which allowed the City of Detroit to continue operations, the *Plan* explicitly allows for the Plaintiffs' claims under the statute referenced, MCL 500.3101, which provides for compensation for Plaintiffs' claims for up to the State of Michigan minimum of $20,000/$40,000. ***This agreement significantly reduces the City of Detroit's***

***liability since as a self-insured entity it had unlimited liability***. It was a public

policy decision which brought the clause into existence. MCL 500.3101 states:

**500.3101 Security for payment of benefits required; period security required to be in effect; deletion of coverages; definitions; policy of insurance or other method of providing security; filing proof of security; "insurer" defined.**
Sec. 3101.
  (1)  The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, **and residual liability insurance**. Security is only required to be in effect during the period the motor vehicle is driven or moved on a highway. Notwithstanding any other provision in this act, an insurer that has issued an automobile insurance policy on a motor vehicle that is not driven or moved on a highway may allow the insured owner or registrant of the motor vehicle to delete a portion of the coverages under the policy and maintain the comprehensive coverage portion of the policy in effect.

Plaintiffs' qualify under the provision for two reasons, (1) Plaintiffs claim is

under the residual liability insurance coverage, which the City self-insured and

agreed to pay; and (2) which the court does not have to decide, if the court agrees

the Plan carved out the preservation these claims, Plaintiffs claim is post-petition

because their claims arose when they met the serious impairment of an important

body function that affected their general ability to lead a normal life, which was

May 20, 2016, when the complaint was filed claiming they had sustained a serious

impairment of an important body function that affected their general ability to lead

a normal life.

The interpretation of the language of a confirmed *Plan* involved is within the

jurisdiction of the court. See In re Thickstun Bros. Equip. Co., Inc., 344 B.R. 515,

522 (6th Cir. BAP 2006); In re Lacy, 304 B.R. 439, 444 (D. Colo. 2004)("After confirmation, the Bankruptcy Court retains jurisdiction to interpret, enforce, or aid the operation of a plan of reorganization."); See also Miller v. United States, 363 F.3d 999, 1004-05 (9th Cir. 2004)("Although confirmation of a Plan generally acts as a final order which binds all parties, regardless of whether they assented to the plan, a plan which is ambiguous as to a material term is subject to interpretation by a reviewing court.").

In interpreting a confirmed plan, the *Plan* is controlling and disclosure statement does not have res judicata effect. See In re Sonoma V, 34 B.R. 758, 761, (9th Cir. BAP 1983).

The rules of contract interpretation apply to a bankruptcy plan. Plans are interpreted "under the rules governing the interpretation of contracts." Official Comm. Of Unsecured Creditors v. Dow Corning Corp. et al (In re Dow Corning Corp.), 456 F.3d 668, 676 (6th Cir. 2006). *Plans* may be interpreted according to either state or federal common law canons of contract interpretation. See In re K.D. Co., Inc., 254 B.R. 480, 491 (10th Cir. BAP 2000).

There does not appear to be any relevant difference between federal and Michigan law on how to interpret ambiguous contracts. A contract is ambiguous if it is "capable of more than one reasonable interpretation." Miller v. United States, 363 F.3d 999, 1004 (9th Cir. 2004); see Smart v. Gillette, 70 F.3d 173, 178 (1st Cir.

522 (6th Cir. BAP 2006); In re Lacy, 304 B.R. 439, 444 (D. Colo. 2004)("After confirmation, the Bankruptcy Court retains jurisdiction to interpret, enforce, or aid the operation of a plan of reorganization."); See also Miller v. United States, 363 F.3d 999, 1004-05 (9th Cir. 2004)("Although confirmation of a Plan generally acts as a final order which binds all parties, regardless of whether they assented to the plan, a plan which is ambiguous as to a material term is subject to interpretation by a reviewing court.").

In interpreting a confirmed plan, the *Plan* is controlling and disclosure statement does not have res judicata effect. See In re Sonoma V, 34 B.R. 758, 761, (9th Cir. BAP 1983).

The rules of contract interpretation apply to a bankruptcy plan. Plans are interpreted "under the rules governing the interpretation of contracts." Official Comm. Of Unsecured Creditors v. Dow Corning Corp. et al (In re Dow Corning Corp.), 456 F.3d 668, 676 (6th Cir. 2006). *Plans* may be interpreted according to either state or federal common law canons of contract interpretation. See In re K.D. Co., Inc., 254 B.R. 480, 491 (10th Cir. BAP 2000).

There does not appear to be any relevant difference between federal and Michigan law on how to interpret ambiguous contracts. A contract is ambiguous if it is "capable of more than one reasonable interpretation." Miller v. United States, 363 F.3d 999, 1004 (9th Cir. 2004); see Smart v. Gillette, 70 F.3d 173, 178 (1st Cir.

1995). Ambiguity exists "if the language is susceptible to two or more reasonable interpretations." City of Wyandotte v. Consol. Rail Corp., 262 F.3d 581, 585 (6th Cir. 2001) (quoting D'Avanzo v. Wise & Marsac, P.C., 565 N.W.2d 915, 918 (Mich. 1997)).

Generally, where an ambiguity exists courts consider extrinsic evidence to determine the parties' intent. **(See EXHIBIT D, City of Detroit 10/29/13 letter evidencing intent to process no-fault claims "before and since" bankruptcy in regular course of business).** If no such extrinsic evidence is available, however, courts apply rules of contract interpretation. See Mark v, Inc. v. Mellekus, 845 P.2d at 1235-36 ("In the event the parties do not offer evidence of the facts and circumstances surrounding execution of the agreement and leading to conflicting interpretations as to its meaning, the court may resolve any ambiguity as a matter of law by interpreting the contract using accepted canons of contract construction and traditional rules of grammar and punctuation.").

The Restatement reflects the federal common law. See e.g., Defenders of Wildlife v. Salazar, 877 F. Supp. 2d 1271, 1292.

The Restatement contains the following contract interpretation rules:

1. Courts should interpret contract as a whole and interpret words in light of all the circumstances and the principal purpose of the parties (§202);

2. An interpretation that gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation that leaves a part unreasonable, unlawful, or of no effect ((§203(a));

3. When the parties to a contract have not agreed to a term essential to their rights and duties, reasonable terms should be supplied by the court (§204); and

4. When choosing among reasonable meanings, the meaning is preferred that operates against the drafter (§206).

As with contracts, the Court must interpret the *Plan* in light of the circumstances and the principal purpose of the parties. In re Realia, Inc., 2012 WL 833372, at *10 (9th Cir. BAP 2012)(ambiguous contract is interpreted in the light of all the circumstances, and if the principle purpose of the parties is ascertainable, it is given great weight). The City of Detroit Plan allows a certain class of claims for "bodily injury or death" up to $20,000 single or $40,000 aggregate to meet the minimum financial responsibility law of the State of Michigan. The *Plan* further states "**Nothing in the Plan shall discharge, release or relieve the City from any current or future liability with respect to Claims subject to insurance coverage pursuant to MCL § 500.3101 or Claims within the minimum coverage limits in MCL § 500.3009(1).**" The claimants fall into the "**Operation of City Motor Vehicles**" class in which their claims were preserved. The City of

Detroit did not make any reference to pre-petition or post-petition claims or the claim bar date. The City of Detroit did not make any reference to claims filed or any relative to the bar date. This provision was likely intended to compensate victims of motor vehicle accidents by giving victims up to the State required minimum so the Michigan taxpayer and the Medicaid system is not overtaxed by the City of Detroit's bankruptcy. Indeed, the City of Detroit agreed to the *Plan* and received the benefit of operating vehicles in the State of Michigan before, during and after bankruptcy. It would further the principal purpose of the Plan, and is consistent with the circumstances, to construe the Plan as giving the class of claimants such as Crowells' and Murphy the right to pursue a bodily injury claim up to the aggregate maximum of $40,000, regardless of whether their claims were pre-petition or not.

Section 1123(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." "[C]ourts have interpreted the 'same treatment' requirement to mean that all claimants in a class must have the 'same opportunity' for recovery." In re W.R. Grace & Co, 729 F.3d 311, 327 (3d Cir. 2013).

A basic tenant of "same opportunity" is that all members of a class be afforded the opportunity, including disputed claims that are allowed later. See In re Motors

Liquidation Co., 447 B.R. 198, 215 (Bankr. S.D.N.Y. 2011)(Section 1123(a)(4) requires a plan to provide the same treatment for each claim of a particular class).

Here, the City of Detroit Plan certainly does not take away Crowells' and Murphy's right to same treatment as other members of the class, or otherwise provide for handling them differently. See In re Miller, 253 B.R. at 460(*plan did not state that § 1141(d)(2) didn't apply, or that confirmation would discharge debts that would otherwise be non-dischargeable*); In re Forklift 363 B.R. at 398 ("Defendant would have had little or no reason at the time of the confirmation of the Plan to suspect that its statutory rights were in danger."). The Court should therefore construe the Plan to give Crowells' and Murphy the same treatment given to holders of "Operation of City Motor Vehicle" class of claims that were allowed during bankruptcy.

A reasonable way to view this dispute is that the *Plan* omitted to specify whether, how, and when a disputed **"Operation of City Motor Vehicles"** class of claims that did not file a claim in bankruptcy would be treated or allowed. If so, the Court should supply a reasonable term. Restatement, §204. See also In re Schellhorn, 280 B.R. 847, 854-55 (Bankr. N.D. Iowa 2002)(citing the Restatement for the proposition that the court may supply an omitted term comporting with community standards of fairness and policy); Hutton Contracting Co., Inc., v. City of Coffeyville, 487 F.3d 772, 784 (10th Cir. 2007)(in contracting dispute, court can

fill gaps with terms that are reasonable in the circumstances). **The Court should conclude that Operation of City Motor Vehicles class of claimants can pursue a bodily injury or death claim within the maximum parameters of the Plan.** See Restatement, §204, cmt d. (when supplying a reasonable term, the court may look to the law). **Interesting to note, is the letter dated October 29, 2013, from City of Detroit's attorney, James D. Noseda, which plainly demonstrates the intent was that "Before and 'since' the bankruptcy filing, the City of Detroit has processed payment for amounts due under the law."** (Exhibit D). *The 10/29/13 letter further states "If and when your client makes a documented claim for 1st Party [No-Fault benefits], it will be processed in the regular course of business".* Id. Thus, it was clearly the intent of the Plan to keep processing no-fault claims in the regular course of business.

Finally, the Plan, like contracts, should be construed against the drafter. Restatement § 206; In re Schellhorn, 280 B.R. 847, 853-4 (Bankr. N.D. Iowa 2002; In re Forklift LP Corp., 363 B.R. 388, 397 (Bankr. D. Del. 2007)(court construed the Plan against the drafter); In re Harstad, 155 B.R. 500, 510-11 (Bankr. D. Minn. 1993)(ambiguous statement in a plan was insufficient to retain preference action); In re Miller, 253 B.R. 455, 459 (Bankr. N.D. Cal. 2000), aff'd 284 B.R. 114, 119 (Bankr. D.N.M. 1999)(Plan strictly construed contract against drafter to protect rights of non-drafter); In re Collins, 184 B.R. 151, 154-55 (Bankr. N.D. Fl.

1995)(omission of language in plan dealing with post-confirmation interest construed against drafter). <u>Here, the City of Detroit drafted the Plan</u>. The City of Detroit failed to specify how disputed claims such as Crowells' and Murphy's would be handled if they were to be brought. The Court should construe the ambiguity against the City of Detroit and allow the Crowells' and Murphy to pursue their bodily injury claims to the aggregate maximum of $40,000, which is the maximum the City of Detroit agreed to pay for this class of claims in the Plan.

The broad language of the Plan clearly says "**<u>Nothing in the Plan shall discharge, release or relieve the City from any current or future liability with respect to Claims subject to insurance coverage pursuant</u> to MCL § 500.3101 <u>or</u> Claims within the minimum coverage limits in MCL § 500.3009(1)." The Plan did not require that the specified class of claims be filed before the bar date. Thus, the Crowells and Murphy should be permitted to pursue their no-fault claims under the express terms of the Plan and within the financial limits of the Plan.**

Wherefore the Plaintiffs, Danny Crowell, Leota Murphy, and Jasmine Crowell pray this Honorable Court will allow their claims to proceed as contemplated by the Bankruptcy Plan for the self-insured City of Detroit for the reasons stated herein.

Respectfully submitted,

THE JOSEPH DEDVUKAJ FIRM, P.C.

By: _Joseph Dedvukaj_

Attorney for the Plaintiffs

1277 West Square Lake Road

Bloomfield Hills, Michigan 48302

Dated: November 28, 2016          (248) 352-2110

## PROOF OF SERVICE

The foregoing has been served on counsel for the City of Detroit through e-mail.

By: /s/ **Joseph Dedvukaj**

# EXHIBIT A

# MEMORANDUM OF UNDERSTANDING
### Between the
## MICHIGAN DEPARTMENT OF INSURANCE AND FINANCIAL SERVICES
### and the
## MICHIGAN DEPARTMENT OF TREASURY

## CITY OF DETROIT - CERTIFICATE OF SELF INSURANCE ESCROW

### I. PURPOSE AND BACKGROUND:

1. The purpose of this Memorandum of Understanding [MOU] is to describe the commitment from the Michigan Department of Treasury [Treasury] to the Michigan Department of Insurance and Financial Services [DIFS] concerning funds that Treasury intends to escrow and issue in the event the City of Detroit [City] does not pay claims and judgments relative to the City's Self Insurance Certificate under the authority of the Michigan Administrative Code - Certificates of No-Fault Self-Insurance [the Code] [R 257.531 *et seq.*].

2. On May 2, 2013, the City submitted a certificate of self insurance application [application] to the Director. The City asked the Director to issue a certificate of self insurance under authority the Code, section 3101 of the Insurance Code of 1956 [MCl 500.3101]. This certificate would enable the City to comply with state law requiring insurance on vehicles it operates.

As reported on the application, the City's net worth is ($371,973,905). This negative amount fails to meet certificate of self insurance qualifications requiring a net worth greater than $5,000,000; a sound financial condition and utilization of financial practices and methods that would not bring into question the ability to pay claims fully and in a timely manner. [Rule 2 (2)(d) and (e); R 257.532].

Rule 8 of the Code [R 257.538] allows the Director to disapprove the application of an applicant who fails to possess a qualification for the issuance of a certificate of self insurance as set forth in R 257.232. The Director intended to deny the City's application for this reason.

In reliance on Treasury's commitment to escrow funds and to pay claims and judgments, the Director will issue a Certificate to the City.

## II. TREASURY AGREES TO:

1. Escrow an amount of at least fifteen million, two hundred thousand dollars ($15,200,000) in a separate segregated account to be used to pay claims during the period of the Certificate of Self Insurance issued to the City.

2. If the City is unable to or fails to pay a judgment or claim pursuant to the law, make appropriate payments from the escrowed funds.

## III. MDIFS AGREES TO:

1. Issue a Certificate of Self Insurance to the City for a period of one year, beginning June 9, 2013.

2. Perform its responsibilities under the Code.

## IV. EFFECTIVE DATE AND LENGTH:

1. This MOU goes into effect when both parties have signed it and shall be in effect for the duration of the Certificate of Self Insurance issued to the City.

DEPARTMENT OF INSURANCE AND FINANCIAL SERVICES


R. Kevin Clinton
Director
Department of Insurance and Financial Services
Lansing, Michigan

6/4/13
Date

DEPARTMENT OF TREASURY


Mary G. MacDowell
Chief Deputy Treasurer
Department of Treasury
Lansing, Michigan

5/21/2013
Date

# EXHIBIT B

# State of Michigan

## Department of Insurance and Financial Services
### Lansing, Michigan

I, R. Kevin Clinton, Director, certify that

City of Detroit
611 C.A.Y.M.C.
Detroit, MI 48226-3462

Coverage Effective: 06/09/2013 thru 06/09/2014

Qualifies as a self-insurer for the purposes of Act 204, P.A. 2012.

This certificate covers all vehicles owned or registered by the named self-insurer.

R. Kevin Clinton, Director

6/4/13
Dated



FIS 2270 (03/13)

13-53846-swr    Doc 3846-4    Filed 04/07/14    Entered 04/07/14 12:48:19    Page 1 of 1

13-53846-tjt    Doc 11692    Filed 12/02/16    Entered 12/05/16 11:08:25    Page 20 of 25
Case No. 13-53846    Exhibit
McKenzie Obj. to Discl. Statement

# EXHIBIT C

Authority: 1949 PA 300, Sec.257.622
Compliance: Required     MSP UD-10E
Penalty: $100 and/or 90 days (Rev 11/2006)

External #          Crash ID
235305

# STATE OF MICHIGAN TRAFFIC CRASH REPORT

Incident Disposition
**Open**
Reviewer

| ORI: MI8234913 | Department Name | **Detroit Police Department** | | |
|---|---|---|---|---|

| Crash Date 06/03/2013 | Crash Time 11:20 | No. of Units 02 | Crash Type **Rear End** | Special Circumstances ○ School Bus  ● None  ○ Hit and Run  ○ Deer  ○ Fleeing Police | Special Checks ○ Fatal  ○ Non-Traffic Area  ○ ORV/Snowmobile |
|---|---|---|---|---|---|

| County 82 - WAYNE | Traffic Control **Signal** | Relation to Roadway **On Road** | Special Study | Weather **Clear** | Area **10 - NON-FRWY Straight roadway** |
|---|---|---|---|---|---|

| City/Twsp 99 - DETROIT | Construction Zone (if applicable) Type | Lane Closed | Activity | Light **Daylight** | Road Condition **Dry** | Total Lanes **03** | Speed Limit **25** | Posted **Yes** |
|---|---|---|---|---|---|---|---|---|

**LOCATION**

| Prefix | Road Name **CADILLAC** | Road Type **AVE** | Suffix | Divided Roadway |
|---|---|---|---|---|

| Distance (ft.) **5.0 Feet W** | Traffic Way **04 - One-way traffic** | Access Control **01 - No access control** |
|---|---|---|

| Prefix | Intersecting Road **RANDOLPH** | Suffix | Divided Roadway |
|---|---|---|---|

| Unit Number **01** | Unit Known **Yes** | State **MI** | Driver License Number **P620730847128** | Date of Birth (Age) **02/18/1955 (68)** | License Type ○ Operator  ● Chauffer  ○ Moped | Endorsements ○ Cycle  ○ Farm  ○ Recreation | Sex **M** | Total Occupants **02** | Hazardous Action **12 - Unable to stop** |
|---|---|---|---|---|---|---|---|---|---|

| Unit Type **MV** | Driver Information **RAUL VILLANUEVA PEREZ** 29175 MEADOWLARK ST LIVONIA MI 48154  (313)506-3866 | Injury **O** | Position **01** | Restraint **04** | Hospital **None** |
|---|---|---|---|---|---|

| Driver Condition ● 1  ○2  ○3  ○4  ○5  ○6  ○7  ○8  ○9  ○99 | Interlock **No** | Ejected | Trapped | Ambulance **No** |
|---|---|---|---|---|

| Alcohol ○ Yes  ● No Test Type ○ Field | ○ Refused ○ PBT | ● Not Offered ○ Breath  ○ Blood | Test Results | Drugs ○ Yes  ● No Test Type ○ Breath  ○ Blood  ○ Urine | ○ Urine | Test Results | Citation Issued ○ Hazardous  ○ Other |
|---|---|---|---|---|---|---|---|

| Vehicle Registration **089X331** | State **MI** | Insurance/Policy # **CITY OF DETROIT** | | Towed To/By **DRIVEABLE** | Special Vehicles | Private Trailer Type | Vehicle Defect |
|---|---|---|---|---|---|---|---|

| VIN **1FTRF12W09KB16040** | Vehicle Description | Make **FORD** | Model **PU** | Color **WHI** | Year | Vehicle Type **Passenger Car** |
|---|---|---|---|---|---|---|

| Location of Greatest Damage **01** | First Impact **01** | Extent of Damage **01** | Driveable **Yes** | Vehicle Direction **E** | Vehicle Use **02 - Commercial** | Action Prior **01 - Going Straight Ahead** |
|---|---|---|---|---|---|---|

| Sequence of Events | First | Second | Third | Fourth |
|---|---|---|---|---|

(● indicates MOST harmful event)     ● 17 - Motor veh in transport

**PASSENGERS**

| Passenger Information **HANDSOME NATHANIEL GLOVER** 19486 REDFERN 48219  (313)510-1324 | Date of Birth (Age) **51** | Sex **M** | Position **02** | Restraint **04** | Hospital **None** |
|---|---|---|---|---|---|
| | Injury **O** | Airbag Deployed **Not equipped** | Ejected | Trapped | Ambulance **None** |

| Passenger Information | Date of Birth (Age) | Sex | Position | Restraint | Hospital |
|---|---|---|---|---|---|
| | Injury | Airbag Deployed | Ejected | Trapped | Ambulance |

| Passenger Information | Date of Birth (Age) | Sex | Position | Restraint | Hospital |
|---|---|---|---|---|---|
| | Injury | Airbag Deployed | Ejected | Trapped | Ambulance |

| Passenger Information | Date of Birth (Age) | Sex | Position | Restraint | Hospital |
|---|---|---|---|---|---|
| | Injury | Airbag Deployed | Ejected | Trapped | Ambulance |

| Passenger Information | Date of Birth (Age) | Sex | Position | Restraint | Hospital |
|---|---|---|---|---|---|
| | Injury | Airbag Deployed | Ejected | Trapped | Ambulance |

| Passenger Information | Date of Birth (Age) | Sex | Position | Restraint | Hospital |
|---|---|---|---|---|---|
| | Injury | Airbag Deployed | Ejected | Trapped | Ambulance |

**CARRIER**

| Carrier Information | Carrier Source | GVWR | ICCMC | USDOT | MPSC |
|---|---|---|---|---|---|
| | Driver's CDL Type | Endorsements ○ H  ○ P  ○ T ○ N  ○ S  ○ X | CDL Exempt ○ Farm  ○ Other | CDL Restrictions ○ 28  ○ 29  ○ 30  ○ 35  ○ 36 | |

| Interstate/Intrastate | Vehicle Type | Type and Axle Per Unit First  Second  Third  Fourth | Cargo Body Type | Medical Card | Hazardous Material ○ Placard  ○ Cargo Spill | ID # | Class # |
|---|---|---|---|---|---|---|---|

**OWNER**

| Owner Information | Owner Information |
|---|---|

| Person Advised of Damaged Traffic Control Contact Name : Contact Date : Contact Time : | Damaged Property Owner and Phone | Public |
|---|---|---|

UNAPPROVED REPORT

06/03/2013          235305

Unapproved Draft

| Unit Number | Unit Known | State | Driver License Number | Date of Birth (Age) | License Type | Endorsements | Sex | Total Occupants | Hazardous Action |
|---|---|---|---|---|---|---|---|---|---|
| 02 | Yes | MI | C640085067077 | 01/29/1969 (44) | ● Operator ○ Chauffeur ○ Moped | ○ Cycle ○ Farm ○ Recreation | F | 04 | 00 - None |

| Unit Type | Driver Information | | | Injury | Position | Restraint | Hospital | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| MV | BEVERLY ANTOINETTE CROWELL 13129 HOUSTON WHITTIER DETROIT MI 48205   (313)624-7229 | | | O | 01 | 04 | None | | | |

| Driver Condition | | | | | | | | | | Interlock | Ejected | Trapped | Airbag Deployed | Ambulance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ● 1  ○2  ○3  ○4  ○5  ○6  ○7  ○8  ○9  ○99 | | | | | | | | | | No | | No | No | None |

| Alcohol Test Type | Test Results | Drugs Test Type | Test Results | Citation Issued |
|---|---|---|---|---|
| ○ Yes ● No ○ Field ○ PBT ○ Refused ○ Not Offered ○ Breath ○ Blood   Urine | | ○ Yes ● No ○ Blood ○ Urine | | ○ Yes ● No ○ Hazardous ○ Other |

| Vehicle Registration | State | Insurance/Policy # | | Towed To/By # | | Special Vehicles | Private Trailer Type | Vehicle Defect |
|---|---|---|---|---|---|---|---|---|
| 2KV Q81 | MI | STATE FARM 3934968B0122 | | DRIVEABLE | | | | |

| VIN | Vehicle Description | Make | Model | Color | Year | Vehicle Type |
|---|---|---|---|---|---|---|
| 1FAFP24115G154998 | | FORD | 4DR | DBL | 2005 | Passenger Car |

| Location of Greatest Damage | First Impact | Extent of Damage | Driveable | Vehicle Direction | Vehicle Use | Action Prior |
|---|---|---|---|---|---|---|
| 05 | 02 | 02 | Yes | E | 01 - Private | 04 - Stopped on roadway |

| Sequence of Events | First | Second | Third | Fourth |
|---|---|---|---|---|
| (● indicates MOST harmful event) | ● 17 - Motor veh in transport | | | |

### PASSENGERS

| Passenger Information | Date of Birth (Age) | Sex | Position | Restraint | Hospital |
|---|---|---|---|---|---|
| DANNY CROWELL 18051 HOOVER ST DETROIT MI 48205   (617)862-3691 | 10/11/1960 (52) | M | 02 | 04 | None |
| Injury: C | Airbag Deployed: No | Ejected | Trapped | Ambulance: None | |

| Passenger Information | Date of Birth (Age) | Sex | Position | Restraint | Hospital |
|---|---|---|---|---|---|
| LEOTA MURPHY 13129 HOUSTON WHITTIER DETROIT MI 48205   (313)408-2974 | 01/30/1954 (59) | F | 04 | 04 | None |
| Injury: C | Airbag Deployed: No | Ejected | Trapped | Ambulance: None | |

| Passenger Information | Date of Birth (Age) | Sex | Position | Restraint | Hospital |
|---|---|---|---|---|---|
| JASMINE CROWELL 9326 HAYES ST DETROIT MI 48213   (313)624-7229 | 20 | F | 04 | | None |
| Injury: O | Airbag Deployed: Not equipped | Ejected | Trapped | Ambulance: None | |

| Passenger Information | Date of Birth (Age) | Sex | Position | Restraint | Hospital |
|---|---|---|---|---|---|
| | | | | | |
| Injury | Airbag Deployed | Ejected | Trapped | Ambulance | |

| Passenger Information | Date of Birth (Age) | Sex | Position | Restraint | Hospital |
|---|---|---|---|---|---|
| | | | | | |
| Injury | Airbag Deployed | Ejected | Trapped | Ambulance | |

| Passenger Information | Date of Birth (Age) | Sex | Position | Restraint | Hospital |
|---|---|---|---|---|---|
| | | | | | |
| Injury | Airbag Deployed | Ejected | Trapped | Ambulance | |

### CARRIER

| Carrier Information | Carrier Source | GVWR | ICCMC | USDOT | MPSC |
|---|---|---|---|---|---|
| | | | | | |

| | Driver's CDL Type | CDL Exempt | CDL Restrictions |
|---|---|---|---|
| | ○ H ○ P ○ T ○ N ○ S ○ X | ○ Farm ○ Other | ○ 28 ○ 29 ○ 30 ○ 35 ○ 36 |

| Interstate/Intrastate | Vehicle Type | Type and Axle Per Unit First   Second   Third   Fourth | Cargo Body Type | Medical Card | Hazardous Material ○ Placard ○ Cargo Spill | ID # | Class # |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

### OWNER

| Owner Information | Owner Information |
|---|---|
| ABOVE DRIVER | |

### WITNESS

| Witness Information | Witness Information |
|---|---|
| | |

| Investigated at Scene | Reported Date (Time) | 1st Investigator Name (Badge) | 2nd Investigator Name (Badge) | Photo By |
|---|---|---|---|---|
| Yes | 06/03/2013 (11:40) | WILLIE JOHNSON (164) | | |

**Narrative**

VEH#2 WAS STOPPED ON THE ROADWAY WAITING FOR RED LIGHT TO TURN GREEN WHEN HER VEH WAS REARENDED BY VEH#1. ALL OCCUPANTS OF VEH#1 STATED NO INJURY. PASSENGER DANNY CROWELL OF VEH#2 STATED HE HAD A HEADACHE AND LEOTA MURPHY PASSENGER OF VEH#2 STATED SHE WAS SHOOK UP. EMS NOT REQUESTED.

**Diagram**

CADILLAC SQ

06/03/2013   235305

RANDOLPH

External #: 235305
Incident #: 235305

# EXHIBIT D



**JAMES D. NOSEDA**
DIRECT DIAL 313•237•3057
E-MAIL: NOSEJ@DETROITMI.GOV

COLEMAN A. YOUNG MUNICIPAL CENTER
2 WOODWARD AVENUE, SUITE 500
DETROIT, MICHIGAN 48226-3535
PHONE 313•224•4550
FAX 313•224•5505
WWW.DETROITMI.GOV

CITY OF DETROIT
LAW DEPARTMENT

October 29, 2013

Joseph Dedvukaj
Attorney
1277 W. Square Lake Road
Bloomfield Hills, MI 48302-0845

RE:    *Sherlanda Jones v City of Detroit*, Wayne County Circuit Court, 13-012439-NF

On September 23, 2013, you filed the above referenced lawsuit seeking to recover for alleged personal injury suffered by Sherlanda Jones on September 12, 2012 while riding on a City of Detroit bus. The lawsuit was filed in violation of the automatic stay that arose under Section 362 of the Bankruptcy Code (11 USC § 362). Notice to that effect has been filed and served upon you.

By letter dated October 21, 2013, addressed to me and to State of Michigan Assigned Claims Plan, you assert that the City's bankruptcy filing has left your client "with potentially no recovery." The assertion is preposterous. Before and since the bankruptcy filing, the City of Detroit has processed, in the regular course of business, claims made for personal protection benefits and has processed payment for amounts due under the law. As of this date, we have no record of your client having made or documented a claim for benefits.

Your client also is not entitled to payment from the assigned claims plan. MCL 500.3114(3)(c) governs when payment is due to a person injured while a passenger on a City bus. MCL 500.3114(4)(b) does not apply to bus passengers covered under Section 3114(3). Accordingly, we will not be providing you with information regarding the insurance carried by a City bus driver.

Be advised that the bankruptcy stay was extended by Judge Rhodes to claims against any City employee sued for actions taken in the scope and course of employment. If you attempt to pursue a claim against the bus driver, we will seek appropriate relief, including sanctions under 11 USC § 362(h).

If and when your client makes a documented claim for 1st Party No-Fault benefits, it will be processed in the regular course of business.

James D. Noseda

copy:    State of Michigan Assigned Claims Plan
P.O. Box 532318
Livonia, MI 48153-2318

K:\DOCS\LIT\NOSEJ\A20000\LTR\JN3048.WPD