UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____
:
In re: City of Detroit, Michigan,   :  Case No. 13-53846
                                    :
        Debtor.                     :  Hon. Thomas J. Tucker
_____:

**RESPONSE IN OPPOSITION TO CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AGAINST WALTER HICKS AND SPIRLIN MOORE**

Walter Hicks and Spirlin Moore, by their counsel from the NAACP Legal Defense and Educational Fund, Inc., the American Civil Liberties Union Fund of Michigan, and Covington & Burling, LLP, oppose the City of Detroit, Michigan's (the "City") Motion for the Entry of an Order Enforcing the Bar Date Order and the Plan of Adjustment Injunction and Discharge Provisions against Walter Hicks and Spirlin Moore (Dkt. # 11680).

In *Morningside, et al., v. Sabree, et al.*, Case No. 16-008807-CH (Wayne County Circuit Ct., Colombo, J.), seven Detroit homeowners, joined by four Wayne County neighborhood associations, brought a two-count class action challenging the unlawful government policies that are causing a severe tax foreclosure crisis in Wayne County. Plaintiffs allege that Defendants City of Detroit and Detroit Citizens Board of Review ("Detroit Defendants") have violated Plaintiffs' constitutional rights to due process through their improper

administration of the poverty exemption application process for property taxes.[1] Compl., *Morningside, et al., v. Sabree, et al.*, ¶2.[2] Mr. Hicks and Mr. Moore have both brought claims against the City arising from the poverty exemption process for tax year 2013.

In its motion, the City requests that this Court enter an order requiring Mr. Hicks and Mr. Moore to dismiss with prejudice their claims against the City, because the November 21, 2013 Bar Date Order entered by this Court in this case supposedly prohibits them. As discussed below, Mr. Hicks's and Mr. Moore's claims against the City do not involve a "right to payment." Therefore, they do not constitute "claims" under the federal Bankruptcy Code, and are not precluded by the Bar Date Order. Accordingly, the City's motion should be denied.

**BACKGROUND**

Michigan law requires cities to provide an exemption to property taxes to persons who are unable to pay because of poverty. Mich. Comp. Laws § 211.7u(1). As alleged in the Complaint, the Detroit Defendants' failure to provide Plaintiffs Walter Hicks, Edward Knapp, Spirlin Moore, and Julia Aikens, and the class of persons they seek to represent ("Poverty Exemption Class"), notice

---

[1] Plaintiffs also allege that the foreclosure policies of the Wayne County Treasurer and Wayne County violate the federal Fair Housing Act because they have an unjustified disparate impact on African-American homeowners. That claim is not directed at the Detroit Defendants.

[2] The Complaint is attached to the City's motion, Dkt. 11680, as Exhibit 6A.

and a meaningful opportunity to be heard on their poverty exemption applications violated the federal and Michigan constitutions' guarantees of due process. *See* Compl., ¶¶ 180-89, 244, 264. The factual allegations underlying Mr. Hicks's and Mr. Moore's due process claims underscore the extent to which the Detroit Defendants' egregious misadministration of the poverty exemption application process violates Plaintiffs' constitutional rights.

Plaintiff Walter Hicks applied for a poverty exemption in 2012 and 2014. *Id*. ¶¶ 195, 198. In 2012, he completed the in-person application and then submitted a written application, but, despite waiting several months, he never received a response from Defendant City of Detroit regarding the outcome of his application. *Id*. ¶¶ 188, 195. Mr. Hicks was forced to inquire about his application in person at the Detroit municipal building. *Id*. ¶ 195. It was only at that time that a representative of Defendant City of Detroit told him that his application had been denied; Detroit Defendants never provided Mr. Hicks with a written denial or their reason(s) for denying his 2012 application. *Id*. ¶¶ 188, 195. Similarly, in 2014, Mr. Hicks completed the in-person and written application for a poverty exemption, but again received no response from Detroit Defendants regarding his application and was again forced to inquire in person about the status of his application after months of waiting. *Id*. ¶¶ 198-201. A representative of Defendant City of Detroit told Mr. Hicks that his application was denied. *Id*. ¶¶

201-02. Detroit Defendants never provided Mr. Hicks with a written denial or a written explanation for denying his 2014 application. *Id.* Similarly, Plaintiff Spirlin Moore asserted in the Complaint that he initiated the application process for a poverty exemption in 2011, 2012, 2013, and 2014, but was denied adequate due process. *Id.* ¶¶ 212-215.

Detroit Defendants' conduct clearly violated the constitutional due process rights of Plaintiffs and the members of the Poverty Exemption Class, because it denied them notice and an opportunity to be heard on their poverty exemption applications in a meaningful and timely manner. *See Spranger v. City of Warren*, 308 Mich. App. 477, 482-83 (2014) (holding that the "owner of real property is entitled to the protection of constitutional due process with respect to the assessment and collection of property taxes"); *see also id.* at 483 (observing that due process requires "notice and an opportunity to be heard in a meaningful time and manner," and a "local board of review is required to provide constitutionally adequate notice in a manner that is consistent with due-process principles").

As a result, Plaintiffs and the Poverty Exemption Class requested in their Complaint that the Court: (1) find that the Detroit Defendants "violated the due process rights of members of the Poverty Exemption Class"; (2) require that Detroit Defendants "ensure adequate procedural due process is extended to all poverty exemption applicants going forward"; and (3) allow the Poverty

Exemption Class "to apply retroactively for poverty exemptions for the 2013, 2014, 2015, and 2016 tax years." Compl., Prayer for Relief ¶ B.  On September 2, 2016, the Wayne County Circuit Court denied the Detroit Defendants' motion to summarily dispose of Plaintiffs' claims regarding the poverty exemption process.

On November 14, 2016, counsel for the City emailed counsel for Mr. Hicks and Mr. Moore, indicating that they intended to file a motion for an order barring these Plaintiffs' claims arising out of the 2013 poverty exemption process, unless Mr. Hicks and Mr. Moore agreed to dismiss their claims in their entirety by November 18, 2016.  *See* Exhibit 1.  On November 17, 2016, Plaintiffs' counsel emailed counsel for the City indicating that Mr. Hicks and Mr. Moore would agree to amend their complaint to forego seeking any relief that would result in the cancellation of a debt that arose before the Effective Date applicable to the Bar Date Order in this case.  *See* Exhibit 2.  However, Plaintiffs' counsel further indicated that they could not consent to the dismissal of Mr. Hicks's and Mr. Moore's claims against the City in their entirety because, to the extent they seek reformation of the poverty exemption process going forward, such claims did not involve a "right to payment" and therefore are not barred.  *Id*.  On November 23, 2016, counsel for the City responded that it believed that Mr. Hicks's and Mr. Moore's claims arising out of the 2013 poverty exemption application process were barred in their entirety regardless of the relief they were seeking.  *See* Exhibit

3. Within an hour, Detroit Defendants emailed Plaintiffs' counsel stating that they had filed the relevant motion before this Court, asking this Court to bar Mr. Hicks's and Mr. Moore's claims arising out of the 2013 poverty exemption process in their entirety.

As noted above, and as discussed below, Mr. Hicks and Mr. Moore concede that their claims arising out of the 2013 poverty exemption process, to the extent they seek as relief the cancellation of debt, are barred by the Bar Date Order, and Plaintiffs have offered to amend the Complaint in *Morningside* accordingly. As a result, the only issue before this Court is whether Mr. Hicks's and Mr. Moore's due process claims, to the extent that they seek only reformation of the poverty exemption process going forward, involve a "right to payment" and thus are barred by the Bar Date Order. The answer is simple: they do not and are not.

## ARGUMENT

A debtor in a bankruptcy proceeding may seek the discharge of a pre-petition claim. *In re City of Detroit, Michigan*, 548 B.R. 748, 763 (Bankr. E.D. Mich. 2016). A claim is classified as "pre-petition" if the individual seeking relief from the debtor "'could have ascertained through the exercise of reasonable due diligence that it had a claim' at the time the [bankruptcy] petition was filed." *Id.* (citing *Signature Combs, Inc. v. United States*, 253 F. Supp. 2d 1028, 1037 (W.D. Tenn. 2003) (adopting the fair contemplation test)).

The United States Bankruptcy Code defines a "claim" as a "*right to payment*, whether or not such right is reduced to judgment, liquidated, fixed, contingent . . . ;" or a "right to an equitable remedy for breach of performance if such breach gives rise to a *right of payment* . . . ." 11 U.S.C. § 101(5) (emphasis added). Accordingly, to qualify as a dischargeable claim under bankruptcy law, a pre-petition claim must give rise to a right to payment. *See In re Federated Dep't Stores, Inc.*, 270 F.3d 994, 1006 (6th Cir. 2001) ("A claim arises only when an entity has a "right to payment."); *In re City of Stockton, Cal.*, 499 B.R. 802, 805 (Bankr. E.D. Cal. 2013) ("Although a broad concept that encompasses contingent, unmatured, and disputed rights, the common denominator of a Bankruptcy Code 'claim' is an ultimate right to payment.").

In determining whether an equitable remedy gives rise to a right to payment, courts "look at the substance of what the plaintiff seeks." *United States v. Whizco, Inc.*, 841 F.2d 147, 150 (6th Cir. 1988). Because "right to payment" is not defined by the Bankruptcy Code, courts must examine the circumstances of each individual case to determine whether a right to payment exists. *In re Senczyszyn*, 426 B.R. 250, 256 (Bankr. E.D. Mich. 2010).

As the Sixth Circuit has highlighted, courts have frequently found that claims for injunctive relief do **not** involve a right to payment. *Kennedy v. Medicap Pharmacies, Inc. (In re Kennedy),* 267 F.3d 493, 497 (6th Cir.

2001) (citing *R.J. Carbone Co. v. Nyren (In re Nyren),* 187 B.R. 424, 426 (Bankr. D. Conn. 1995) ("[The creditor] having conceded during the hearing that its intention in state court is to proceed only as to injunctive relief and not seek damages for any alleged violation of the covenant, the court concludes that the trustee's and debtor's objections are not sustainable."); *In re Hughes,* 166 B.R. 103, 106 (Bankr. S.D. Ohio 1994) ("[S]imply finding an affirmative duty to perform an act does not give rise to a non-dischargeable obligation."); *May v. Charles Booher & Assoc. (In re May),* 141 B.R. 940, 944 (Bankr. S.D. Ohio 1992) ("[T]he Court finds that [the creditor] should be permitted to pursue an injunction against [the debtor] for future breaches of the covenants not to compete."); *In re Peltz,* 55 B.R. 336, 338 (Bankr. M.D. Fla. 1985) ("Injunctive relief would prohibit the debtor from soliciting [the creditor's] customers. . . . [T]his equitable relief would not give rise to a right to payment."); and *In re Reppond,* 238 B.R. 442, 443 (Bankr. E.D. Ark. 1999) (same)).

By contrast, courts have found that a claim for injunctive relief that merely seeks financial compensation for harm that has already occurred involves a "right to payment" and, thus, constitutes a dischargeable "claim" under federal bankruptcy law. For example, in *Ohio v. Kovacs*, 469 U.S. 274 (1985), relied upon by the City in their email to Plaintiffs' counsel and in their motion, at issue was a state court injunction requiring the debtor's post-bankruptcy income to be devoted
8
13-53846-tjt    Doc 11699    Filed 12/07/16    Entered 12/07/16 19:07:35    Page 8 of 20

to the cleanup of a hazardous waste disposal site. *Id*. at 274. Although the claim for relief in state court had been couched as an injunction, the facts of the case made clear that the claim was in fact one for damages:

> [The injunction] dispossessed Kovacs, removed his authority over the site, and divested him of assets that might have been used by him to clean up the property. . . . What the receiver wanted from Kovacs after bankruptcy was the money to defray cleanup costs. At oral argument in this Court, the State's counsel conceded that after the receiver was appointed, the only performance sought from Kovacs was the payment of money. Had Kovacs furnished the necessary funds, either before or after bankruptcy, there seems little doubt that the receiver and the State would have been satisfied.

*Id*. at 283. "In so holding, the Court [in *Kovacs*] stressed that what the petitioner wanted from the respondent after bankruptcy was the money to defray cleanup costs. Since the clean-up order had been converted into an obligation to pay money, it gave rise to a 'right to payment' and thus was a debt dischargeable under the Bankruptcy Code." *United States v. Whizco, Inc.*, 841 F.2d 147, 149-50 (6th Cir. 1988) (citations omitted); *see also In re Kilpatrick*, 160 B.R. 560, 568 (Bankr. E.D. Mich. 1993) (explaining that in *Kovacs*, "the cleanup injunction in essence represented an obligation to pay money, because for all practical purposes that was the only way that the debtor could carry out his obligation").

Here, the City's reliance on *Kovacs* is misplaced. Significantly, the Court in *Kovacs* explicitly "emphasize[d] what we have not decided . . . . [W]e do not hold

that [an] injunction against bringing *further* toxic wastes on the premises or against any conduct that will contribute to the pollution of the site or the State's waters is dischargeable in bankruptcy." *Id.* at 284-85 (emphasis added); *see also In re Kent Holland Die Casting & Plating*, 125 B.R. 493, 498 (Bankr. W.D. Mich. 1993) (quoting the same and stating that "[a]lthough the Court held that the debtor's obligation to clean up the hazardous waste was a debt which was dischargeable, it was careful to limit its decision"). Courts in the Sixth Circuit, and around the country, have since honored this distinction. *Compare Whizco*, 841 F.2d at 149-50 (holding that an injunction requiring "affirmative remedial action on the part of defendants to perform specific acts of reclamation which would abate the environmental damage at the defendants' surface mining site in Tennessee" constituted a debt) *with In re Chateaugay Corp.*, 944 F.2d 997, 1008 (2d Cir. 1991) (affirming that "where there is no right to such payment for cleanup or other remedial costs, claims for injunctive relief are not dischargeable"). *Kovacs* thus stands for the principle that claims for remedial injunctions to spend money in compensation for past harms are dischargeable in bankruptcy, whereas claims for non-monetary prospective relief are not.

In this case, Mr. Hicks and Mr. Moore have already conceded that to the extent that they seek relief from the City that would result in the cancellation of debt arising out of the 2013 poverty exemption application process, their claims are
10

dischargeable pursuant to this case. However, this Court should not enjoin Mr. Hicks and Mr. Moore from proceeding with their due process claims against the City so long as they seek only reformation of the City's poverty exemption process going forward. Unlike in *Kovacs*, the remedy Mr. Hicks and Mr. Moore request in *Morningside* is not an attempt to seek payment from the City as compensation for previous misconduct. Nor would it require the Defendants to expend money for damage already done. *See Whizco*, 841 F.2d at 151. Rather, it is a genuine demand that the City provide all individuals who qualify for the poverty exemption *moving forward* with adequate procedural due process.[3]

To hold otherwise would not only run counter to the relevant legal precedent, but contravene the purposes of federal bankruptcy law. As this Court has stated, the purpose of distinguishing pre-petition claims is to "promote[] the debtor's fresh start." *In re Parks*, 281 B.R. 899, 901 (Bankr. E.D. Mich. 2002) (citing *Kovacs*, 469 U.S. at 279). To hold that a debtor could going forward continue to take actions that violate an individual's constitutional rights would not allow a debtor to escape the burden of liability for pre-petition conduct, but would rather excuse the debtor's continuing illegal behavior, post-bankruptcy.

---

[3] Although their claims are not at issue here, the Named Plaintiffs, as well as the Plaintiff class, continue to seek the cancellation of debt for all claims that are not pre-petition, as these claims are not barred by the Bar Order in this case. *See* Plan, Art. III.D.4, p. 50 (barring only claims or other debts that arose on or before the relevant Effective Date).

## CONCLUSION

For the reasons stated above, Mr. Hicks and Mr. Moore respectfully request that the City's motion for the entry of an order enforcing the Bar Date Order and the Plan of Adjustment Injunction and Discharge Provisions against Walter Hicks and Spirlin Moore be DENIED.

Respectfully submitted,

/s/ Daniel S. Korobkin

| | |
|---|---|
| Coty Montag | Daniel S. Korobkin (P72842) |
| Ajmel Quereshi | Michael J. Steinberg (P43085) |
| NAACP Legal Defense and | Mark P. Fancher (P56223) |
|   Educational Fund, Inc. | Kimberly Buddin (P79126) |
| 1444 I Street NW, 10th Floor | Bonsitu Kitaba (P78822) |
| Washington, DC 20005 | American Civil Liberties Union Fund |
| (202) 682-1300 |   of Michigan |
| | 2966 Woodward Avenue |
| Christina Swarns | Detroit, MI 48201 |
| Marne Lenox | dkorobkin@aclumich.org |
| NAACP Legal Defense and | (313) 578-6824 |
|   Educational Fund, Inc. | |
| 40 Rector Street, 5th Floor | Shankar Duraiswamy |
| New York, NY 10006 | Sarah E. Tremont (P73809) |
| (212) 965-2200 | Amia L. Trigg |
| | Jason Grimes |
| | Wesley Wintermyer |
| | Marta Cook |
| | Covington & Burling LLP |
| | One CityCenter |
| | 850 Tenth Street, NW |
| | Washington, DC 20001 |
| | (202) 662-6000 |

*Counsel for Walter Hicks and Spirlin Moore*

Dated: December 7, 2016

# CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2016, I caused copies of this document to be served electronically via the ECF system, thereby providing service on all counsel of record, and I additionally served it via email upon counsel for the City of Detroit at the following email addresses:

    swansonm@millercanfield.com

    raimic@detroitmi.gov

    /s/ Daniel S. Korobkin
    Daniel S. Korobkin (P72842)
    American Civil Liberties Union Fund
      of Michigan
    2966 Woodward Avenue
    Detroit, MI  48201
    dkorobkin@aclumich.org
    (313) 578-6824

# Exhibit 1

# Dan Korobkin

| | |
|---|---|
| **From:** | Charles Raimi <RaimiC@detroitmi.gov> |
| **Sent:** | Monday, November 14, 2016 1:43 PM |
| **To:** | Brenda Bove; sduraiswamy@cov.com; dstella@waynecounty.com |
| **Cc:** | Dan Korobkin; Kim Buddin-Crawford; Mark Fancher; Michael J. Steinberg; ATrigg@cov.com; JGrimes@cov.com; stremont@cov.com; wwintermyer@cov.com; Rebecca Wilhelm; swansonm@MillerCanfield.com; aquereshi@naacpldf.org; cmontag@naacpldf.org; mlenox@naacpldf.org |
| **Subject:** | RE: Morningside Community Organization, et al. v. Sabree, et al., - City's proposed bankruptcy motion |
| **Attachments:** | ACLU - bkrptcy mtn re 2013.docx |

Counsel - the City has prepared the attached motion to be filed in bankruptcy court unless plaintiffs agree to dismiss the circuit court claims of Walter Hicks and Spirlin Moore concerning 2013. Please let us know by Friday Nov 18.

Chuck Raimi

Deputy Corporation Counsel, City of Detroit

313 237 5037

# Exhibit 2

# Dan Korobkin

| | |
|---|---|
| **From:** | Ajmel Quereshi <aquereshi@naacpldf.org> |
| **Sent:** | Thursday, November 17, 2016 5:23 PM |
| **To:** | Charles Raimi |
| **Cc:** | Dan Korobkin; Michael J. Steinberg; Kim Buddin-Crawford; Bonsitu Kitaba; Marne Lenox; Coty Montag; Shankar Duraiswamy; Sarah Tremont; Jason Grimes; Amia Trigg; Wesley Wintermyer; Cook, Marta |
| **Subject:** | Morningside, et al., v. Sabree, et al.: Proposed Motion to Dismiss Plaintiffs |

Dear Mr. Raimi:

We are in receipt of your email from Monday, November 14th, requesting that we agree to dismiss Walter Hicks' and Spirlin Moore's claims against the City. We cannot agree to this request for the reasons below.

Regardless of whether Mr. Hicks and Mr. Moore are entitled to cancellation of their debt as a form of relief, Mr. Moore and Mr. Hicks may proceed with regards to their due process claims against the city, seeking only injunctive relief. A claim for injunctive relief is only a claim, for the purposes of federal bankruptcy law, if it results in a right to payment. 11 U.S.C. § 101(5). Mr. Hicks' and Mr. Moore's claims to reform the ongoing deficiencies in the poverty exemption process do not involve a right to payment. Accordingly Mr. Hicks' and Mr. Moore's claims, to the extent that they seek only injunctive relief, are not covered by the Bankruptcy order.

As an alternative to your proposal, we will agree to amend our complaint, such that neither Mr. Hicks, Mr. Moore, nor any members of the due process class seek cancellation of debt for any poverty exemption applications filed before the relevant Effective Date.

Best,

**Ajmel Quereshi**
**Assistant Counsel**
**NAACP Legal Defense and Educational Fund, Inc.**
1444 I Street, NW 10th Floor, Washington, D.C. 20005
202-216-5574 AQuereshi@naacpldf.org

www.naacpldf.org



**PRIVILEGE AND CONFIDENTIALITY NOTICE: This email and any attachments may contain privileged or confidential information and is/are for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.**

# Exhibit 3

# Dan Korobkin

| | |
|---|---|
| **From:** | Charles Raimi <RaimiC@detroitmi.gov> |
| **Sent:** | Wednesday, November 23, 2016 9:31 AM |
| **To:** | swansonm@MillerCanfield.com; aquereshi@naacpldf.org |
| **Cc:** | Bonsitu Kitaba; Dan Korobkin; Kim Buddin-Crawford; Michael J. Steinberg; ATrigg@cov.com; JGrimes@cov.com; MCook@cov.com; sduraiswamy@cov.com; stremont@cov.com; wwintermyer@cov.com; cmontag@naacpldf.org; mlenox@naacpldf.org |
| **Subject:** | Re: Morningside, et al., v. Sabree, et al.: Proposed Motion to Dismiss Plaintiffs |

We appreciate your response but the City does not agree with your analysis - see Ohio v Kovacs, 469 US 274.

Chuck Raimi

Deputy Corporation Counsel, City of Detroit

313 237 5037

>>> Ajmel Quereshi <aquereshi@naacpldf.org> 11/17/2016 5:22 PM >>>
Dear Mr. Raimi:

We are in receipt of your email from Monday, November 14th, requesting that we agree to dismiss Walter Hicks' and Spirlin Moore's claims against the City. We cannot agree to this request for the reasons below.

Regardless of whether Mr. Hicks and Mr. Moore are entitled to cancellation of their debt as a form of relief, Mr. Moore and Mr. Hicks may proceed with regards to their due process claims against the city, seeking only injunctive relief. A claim for injunctive relief is only a claim, for the purposes of federal bankruptcy law, if it results in a right to payment. 11 U.S.C. § 101(5). Mr. Hicks' and Mr. Moore's claims to reform the ongoing deficiencies in the poverty exemption process do not involve a right to payment. Accordingly Mr. Hicks' and Mr. Moore's claims, to the extent that they seek only injunctive relief, are not covered by the Bankruptcy order.

As an alternative to your proposal, we will agree to amend our complaint, such that neither Mr. Hicks, Mr. Moore, nor any members of the due process class seek cancellation of debt for any poverty exemption applications filed before the relevant Effective Date.

Best,

**Ajmel Quereshi**
**Assistant Counsel**
**NAACP Legal Defense and Educational Fund, Inc.**
1444 I Street, NW 10th Floor, Washington, D.C. 20005
202-216-5574  AQuereshi@naacpldf.org
www.naacpldf.org

**PRIVILEGE AND CONFIDENTIALITY NOTICE:** This email and any attachments may contain privileged or confidential information and is/are for the sole use of the intended

13-53846-tjt    Doc 11699    Filed 12/07/16    Entered 12/07/16 19:07:35    Page 19 of 20

1

**recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.**