# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

City of Detroit, Michigan,                    Bankruptcy Case No.: 13-53846
    Debtor.                              Honorable Thomas J. Tucker
                                             Chapter 9

## [CORRECTED] MOTION FOR ENTRY OF ORDER GRANTING COLLINS' VERIFIED MOTION FOR LEAVE TO FILE DELAYED PROOF OF CLAIM

    1.      Pursuant to *Federal Rule of Bankruptcy Procedure 3003 (C) (3)*, a Proof of Claim (hereinafter sometimes POC) may be amended, provided leave is granted by the Court. The Proof of Claim filed herein by DPOA on Collins' behalf needs to be amended in order to bring before a Court of competent jurisdiction all legal theories sharing the same or related factual predicate as the claim filed by DPOA. Also, Collins needs to file an amended POC because DPOA recently informed him that it would no longer pursue on his behalf a grievance of his termination for the alleged payroll fraud or larceny that a Wayne County jury acquitted him of on December 8, 2011. *See, Exhibit 1*

    2.      The proposed delayed Proof of Claim maintains any claims asserted in the original Proof of Claim, but also purports to assert the full panoply of legal theories or claims, that sharing the same or related factual predicate as Proof of Claim #1877. Accordingly, Collins seeks the Court's leave to file a delayed or amended POC, which should be granted for the reasons set forth below.

## STATEMENT OF FACTS

    3.      Collins was hired by DPD on September 20, 1993, as a law enforcement officer. Before becoming a police officer, Collins had played and coached semi-professional softball, and engaged in other athletic activities. Cognizant of Collins' background in athletics, about 11 years

after his hire, DPD officials assigned him to the Ninth Precinct, where he worked in the Community Relations Unit and reported to Commander Vivian Tolbert. Within a few weeks of being assigned to the Ninth Precinct, Commander Tolbert instructed Collins that his primary mission in Community Relations was to develop after school sports programs for youth in the community served by the Ninth Precinct as part of an ongoing crime fighting initiative. His shift was from 2:00 p.m. to 10:00 p.m., five days a week. He also worked Saturdays and Sundays because games were held weekends. His schedule was tailored to facilitate contact with the adolescents DPD wanted to reach. Collins went about his work as assigned, and continued to do the work for which Detroit PAL named him its Officer of the Year in 2000. *See, Exhibit 2*

4.     In early 2006, the Ninth and Fifth Precincts merged to form the Eastern District. Collins then became supervised by Sergeant Mattie Lewis, who headed the Community Relations Unit of the Eastern District. Sgt. Lewis ordered Collins to continue in his specialized duties on the same shift, but for reasons best known to herself, recorded his tour of duty as being from 12:00 a.m. to 8:00 p.m. The discrepancy later played a significant role in Collins' misfortune because it seemed to suggest he should have been on duty when he was not.  Collins did such a good job that he won the Spirit of Detroit Award from the City of Detroit and Resolution from the Wayne County Board of Commissioners. *See, Exhibits 3 & 4*

5.     In furtherance of his mission to advance the goals of the Community Relations Unit, Collins organized youths from the east side into competitive football, bowling, baseball, and basketball teams; he organized regular after school practices involving teams from Detroit and neighboring communities. Significantly, Collins work was not supported financially by DPD. But because Collins was so dedicated to his mission, and saw firsthand the beneficial impact of his work on the young people he served, Collins funded his work out of his own

pocket. The fruit of his efforts is reflected in the young men whom he coached, or played in the league he organized, who are now attending some of the most prestigious universities in the country on athletic scholarships, or pursuing careers as professional athletes. For example: Derrick Walton plays basketball for the University of Michigan; DPD Sgt. Lem Wilson brought his son to practice; Richard Wilson is the starting running back at Boston College; Michael Webber, running back at Ohio State; Kiree Phillip (Oakland University) now plays for Cleveland Cavaliers, and Al Robertson, (Penn State) and now plays for the Jacksonville, Jaguars)., as is Robert Edwards at Cleveland State, Josh Jackson at Kansas University; Quintin Jackson, a player on Huntington Woods Bulldogs, was the son of Rodney Jackson, DPD IA; Dominick Barnes – Youngstown State, Detroit Lions; Juwan Howard, Jr (U of D) overseas; Carlton and Dale Brundage, U of M, transferred to U of D; Devin Marvel, Iowa University; Amir Williams, Ohio State (Orlando Magic); Josh Lowles, Kent State University (Greek Pro League); Dion Sims, Michigan State University (Miami Dolphins); Jacob Joubert, U of D; Edmond Summers, Xavier University (Cincinnati); Ernest Thomas, University of Illinois; Andre` Rison, Jr, MSU, (FAMU), Joe Dumars, Jr (attended games); Benny Flowers, Jr , MSU (Denver Broncos); Daryl Fleming, GVSU; Chris Flowers, CMU (Indiana Pacers); Deitech Lever, Ferris State; A.J. Matthews, U of Toledo; Billy Thomas, Oakland, Al Irendown, DePaul, Carl Baker, Schoolcraft College; Dave Lamone – Cornell University; Jeff O'Brien, GVSU, Braylon Edwards, U of M (Cleveland Browns); Devin Gardner, U of M; Isaac Spikes, Central Florida University; Jordan Morgan, U of M; Shane Williams, Morehead State University; Durell Summers, MSU; Mike Sinclair, Miles College; Marcus Crensaw, Cal State Fullerton; Delano Collins, Albion University, Marcus Jones, USC (basketball); Lee Bailey, Chaminade (Hawaii); Desmond Barnes, Arizona State University,

Cassius Winston, who plays basketball for Michigan State is an alum of his programs. Over 100 kids came through his program.

6.      Upon his arrival at work on scheduled workdays, Collins checked in with Sgt. Lewis, who posted his weekly and weekend schedules in the Eastern District's Community Relations office, and circulated a copy of his schedule to then Deputy Chief Godbee and the District's two Commanders, i.e., James Moore and Steven Dolunt.[1] *A copy of his schedules are attached as Exhibits 5 and 6. Also attached are photographs of Collins on sideline of football games as Exhibit 7.* Collins performed his duties in an exemplary manner[2] with the full knowledge and support of his superiors until the fall of 2008, when a letter from his estranged wife accusing him of time and attendance irregularities came into the District. Unbeknownst to Collins, the letter from his estranged wife went to Internal Affairs, where it triggered a covert investigation that went nowhere.[3] An anonymous letter to DPD a year later raised similar allegations. The Internal Affairs investigation it triggered found that Collins had committed larceny by false pretenses for an amount in excess of a hundred dollars by being paid for hours not worked.

7.      DPD's theory was that Collins was being paid for work he had not performed because the shift he actually worked did not jibe with the time sheet Sgt. Lewis prepared.[4] Although Collins' with entire DPD chain of command, starting with Sgt. Lewis, knew Collins' actual shift (because it was prepared by his superiors and posted in the precinct, with a copy circulated to headquarters), Internal Affairs sought and obtained a warrant charging Collins with

---

[1] In order for Collins to leave City with DPD van for practice, or road trips, e.g., to Flint, Collins obtained approval. Unauthorized use of vans was ground for dismissal.
[2] Collins was recognized for his good work by the Detroit City Council and Wayne County Commission. *See, e.g., Exhibits 3 and 4*
[3] Even though he was under investigation by Internal Affairs in 2007 because of a letter from his estranged wife, DPD never informed Collins that he was being investigated.
[4] The pictures attached as *Exhibits 7* show Collins at a PAL football game with his superiors, Chief Godbee and State AAU officials,

three felonies.  Despite ample proof that Collins had done nothing wrong,[5] and had performed his duties in a transparent and noteworthy manner, *See, Exhibits 2, 3 and 4,* he was still subjected to the wrenching emotional duress of a jury trial with exposure to a possible jail term.[6] Fortunately for Collins, he was able to obtain competent representation (for which he remains deeply in debt), and demonstrate to the jury that the charges against him were totally devoid of merit. He was acquitted of all charges on December 8, 2011. *See, Exhibit 8* He requested reinstatement a few days later, but was denied. *See, Exhibit 10*

**NONE OF THE FACTORS THAT MAY MILITATE AGAINST GRANTING LEAVE TO AMEND THE PROOF OF CLAIM IS PRESENT HEREIN.**

8.     Collins has acted with reasonable promptness to seek clarification from the Court. He has requested a ruling as to the procedural avenues available to vindicate or raise his very serious claims of official misconduct, abuse of power, gender based discrimination where two direct female comparators were treated much better than he was for similar allegations of misconduct, and violations of constitutional rights that his POC preserved, or would have preserved had it been properly drafted in light of the mistreatment, and egregious violation of Collins' rights under the *U.S. Constitution, 42 USC § 1983, Art 1, § 17 of the State of Michigan Constitution,* (which guaranteed Collins the right to fair and just treatment during investigations), *Michigan Common and Statutory law* that occurred both before and after the City filed its petition.

9.     Upon his acquittal on December 8, 2011, the DPOA wrote Chief Godbee requesting Collins' reinstatement. *See, Exhibit 5 Verified Motion* Although Chief Godbee never replied in writing to DPOA's demand, it appears that he issued a verbal denial. On December 26,

---

[5] Brian McKinney coached in Collins' program for 3 years, and work in Special Ops
[6] Renee Hall (now Deputy Chief) who had worked with Collins in Community Relations and knew firsthand his scheduled and range of activities, worked in IA on Collins' case, helped to administer his Garrity (??).

2011, DPOA, made a second request for Collins' reinstatement in which it explained that Collins' certification as a police officer was about to expire. *See, Exhibit 6* DPD knew that, even if it did not wish to bring Collins back, it could have reinstated him for one day which would have renewed his certification, and enabled him to find work elsewhere as a police officer. Again, Chief Godbee never replied.[7] Instead, DPD served notice on Collins (who had been suspended without pay since January20, 2010) that it proposed to terminate him. His union filed a reinstatement back pay, grievance (#10-005) as to the proposed termination, 12-0137. *See Exhibit 1* Procedurally, DPD fast tracked Collins proposed termination, and conducted the actual removal proceedings just about as quickly as any DPD had ever conducted. Before dumping him on September 29, 2016, Collins' union continued to represent him and defended him through the arbitration hearing conducted after the City had filed its Chapter 9 petition. Although the City knew, or should have known, it was impermissible to proceed with the arbitration, it did so anyway with Ms. Ashford serving as Arbitrator. The hearing concluded in 2013; however, the arbitrator apparently now feeling constrained by the bankruptcy filing, declined to issue a ruling.[8] In February 17, 2014, Ashford upheld the termination.

## SUMMARY AND CONCLUSION

10.     Collins moved as quickly as he could to seek leave to file a delayed Proof of Claim. No new facts are alleged. Rather, settled facts are placed into context as alleging violations of rights arising under the *14th Amendment to the U.S. Constitution, 42 U.S.C. § 1983, Art 1, § 17 of the State of Michigan's Constitution* and its statutory and common law. The relief Collins seeks is within the Court's authority to grant leave to amend his proof of claim unless

[7] On October 8, 2012, Chief Godbee resigned amid allegations that he engaged in sexual relations with a subordinate female police officer in the Internal Affairs Unit.
[8] According to Collins, the file is stored in her garage.

equitable consideration to the contrary are presented.  Since none such are present herein, Collins requests leave be granted.

Respectfully Submitted,

**Benjamin Whitfield, Jr. & Associates, P.C.**
By: ___/s/ Benjamin Whitfield, Jr.___
Benjamin Whitfield, Jr. (P23562)
Attorney for Jerome Collins
613 Abbott St, 1st FL
Detroit, MI 48226
**Phone:** (313) 961-1000
**Email:** benwlaw123@aol.com

**Dated:** December 30, 2016

**LIST OF EXHIBITS FOR MOTION FOR ENTRY OF ORDER GRANTING COLLINS' VERIFIED MOTION**

1. Copy of letter dated September 26, 2016 from Linda Broaden, DPOA Shop Steward, to Collins;

2. PAL Award to Jerome Collins as 2000 Officer of the Year

3. Spirit of Detroit Award made to Jerome Collins for meritorious work with youth

4. Certificate of Appreciation from Wayne County Board of Commissioners, dated February 4, 2009

5. Copy of Collins' schedule for the time frame, 2008 and 2009

6. Copies of photographs of Collins on duty at sponsored football games. Also depicted are AAU officials and Chief Godbee

7. News article, dated December 14, 2011, reporting that Collins had been found not guilty after a jury trial.

8. Copy of inter-office memo, Eastern District, dated November 29, 2010 re: inter alia, youth initiative  commentary regarding basketball team and football team for 13 and under

9. Proposed Order