# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## THE CITY OF DETROIT'S RESPONSE TO DANNY CROWELL, LEOTA MURPHY AND JASMINE CROWELL'S MOTION FOR RELIEF FROM THE ORDERS DATED DECEMBER 16, 2016 AND DECEMBER 28, 2016 UNDER BANKRUPTCY RULE 9024 AND 3008

The City of Detroit ("City") files this response to *Danny Crowell, Leota Murphy and Jasmine Crowell's Motion for Relief from the Orders Dated December 16, 2016 and December 28, 2016 Under Bankruptcy Rule 9024 and 3008* ("Third Motion for Relief," Doc. No. 11776). In support of this Response,[1] the City states as follows.

## I.  INTRODUCTION

1.  The Third Motion for Relief should be denied because the Movants' arguments are either time barred or fail as a matter of law. The Movants argue legal mistake under Federal Rule of Civil Procedure 60(b)(1) but failed to file the

---

[1] The Third Motion for Relief purports to be a motion under Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 9024 and 3008. Bankruptcy Rule 3008 does not apply because the December 16 and 28 orders do not allow or disallow a claim. If this were a motion to reconsider or a motion to amend a prior order under Rule 9024, no response would be permitted. E.D. Mich. LBR 9024-1(a), (b). However, a motion for relief from an order proceeds under ordinary motions rules. E.D. Mich. LBR 9024-1(d)(1). Thus, the Response is permitted.

Third Motion for Relief by the deadline to appeal the underlying orders. Consequently, under binding Sixth Circuit authority, these arguments are time barred. The Movants remaining argument is that the Court should excuse their failure to file a brief by the applicable deadline due to excusable neglect. This also fails. The Movants had been involved in this case for at least four months by the time their brief was due, yet they never attempted to comply with this Court's procedures requiring electronic filing. As such, the most important factor under *Pioneer*–whether the reason for delay was within the reasonable control of the Movants or their counsel–should cause this Court to find against excusable neglect. The Court should deny the Third Motion for Relief.

## II. BACKGROUND

### A. The Motion to Enforce

2. On July 12, 2016, the City filed its *City of Detroit's Motion to Enforce Order, Pursuant to Sections 105, 501, and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), Establishing Bar Dates for Filing of Proofs of Claim and Approving Form and Manner of Notice Thereof against Danny Crowell, Leota Murphy and Jasmine Crowell* ("Motion to Enforce," Doc. No. 11357).

3. On July 27, Danny Crowell, Leota Murphy and Jasmine Crowell (collectively, the "Movants") filed a motion requesting permission to file in paper form with this Court ("First Paper Request," Doc. No. 11397.) That same day, the

Court entered its *Order to Allow Paper Filings of Danny Crowell, Leota Murphy and Jasmine Crowell's Response Opposing the City of Detroit's Motion to Enforce Order* ("First Paper Order," Doc. No. 11398). The First Paper Order permitted the Movants to file a paper response to the Motion to Enforce, but added some conditions to ensure that the filing conformed to local Court rules.

4. On August 2, the City filed a certificate of non-response to the Motion to Enforce and the Court entered an order granting it. (Doc. Nos. 11414, 11417.) A few days later, the Movants filed *Danny Crowell, Leota Murphy and Jasmine Crowell's Motion for Relief from the Order Dated August 2, 2016 Under Bankruptcy Rule 9024 and 3008* ("First Motion for Relief," Doc. No. 11426). The First Motion for Relief argued that a response had been timely filed and time stamped by the Court. The City responded, stating that if a brief had been timely filed, then it certainly would be appropriate for the Court to set aside the order granting the Motion to Enforce. (Doc. No. 11497.) Indeed, the City stipulated to this relief, and the Court granted it. (Doc. Nos. 11590, 11591.)

### B. The Hearing and the Scheduling Order

5. The Court held a hearing on the Motion to Enforce on November 16. Following that hearing, the Court entered an order to govern further proceedings ("Scheduling Order," Doc. No. 11679). The Court set an additional hearing on the Motion to Enforce for March 22, 2017. Scheduling Order, ¶ 1. The Court also

28536118.5\022765-00213

ordered the Movants to file a supplemental brief explaining why they believe their claims against the City arose post-petition. *Id.*, ¶ 2. That brief was due by January 25, but was never filed.[2] *Id.* Had a brief been timely filed, the City would have been permitted to file a brief in response by February 24. *Id.*, ¶ 3.

6. Additionally, the Scheduling Order permitted the Movants to file a supplemental brief by December 15, 2016, opposing the Motion to Enforce on grounds "other than the pre-petition vs. post-petition claim issue. . . ." *Id.*, ¶ 4. The City would be permitted to file a brief in response by January 9, 2017. *Id.*, ¶ 5.

## C. The Deficient Supplemental Brief

7. On December 2, the Movants filed their *ExParte* [sic] *Motion to Allow Paper Filings of Danny Crowell, Leota Murphy and Jasmine Crowell's Supplemental Response Opposing the City of Detroit's Motion to Enforce Order* ("Second Paper Request," Doc. No. 11690, and with the First Paper Request, the "Paper Requests"). The Court granted the Second Paper Request ("Second Paper Order," Doc. No. 11691), but stated "IT IS FURTHER ORDERED that this attorney will not be granted permission again in the future to file anything in paper

---

[2] The Court set this date months after the November 16 hearing at Attorney Dedvukaj's request, noting that this date was "a long way off," but nonetheless decided that it "will take a deep breath and give you that long." Excerpt of Transcript of Nov. 16, 2016 Hr'g (attached as Exhibit 1), 142:12-143:9. Despite having over two months to provide the required filing, the Movants did not do so.

28536118.5\022765-00213

form.  Attorney Joseph Dedvukaj must take the steps necessary to be able to file electronically in this Court."

8.     On December 2, the Movants filed *Danny Crowell, Leota Murphy and Jasmine Crowell's Supplemental Response Opposing the City of Detroit's Motion to Enforce Order* (the "Supplemental Brief," Doc. No. 11692).  Included with the Supplemental Brief was a purported "Proof of Service," which simply stated "The foregoing has been served on counsel for the City of Detroit through e-mail." Supplemental Brief, p. 15 of 25.  The date of service, the person on whom service was allegedly effected, and the email address used were not provided.

9.     The Court determined that the proof of service for the Supplemental Brief was missing or non-compliant and, on December 6, issued a notice to that effect (the "Deficiency Notice," Doc. No. 11696).  The Deficiency Notice stated that the Movants had one week to correct the defect—i.e., by December 13—or else the Court might strike the Brief.  *Id.*  When filed, the corrected proof of service "should be identified as **"CORRECTED".** *Id.* (emphasis in original).

### D.     The First Strike Order

10.     On December 16, three days past the deadline, the Movants filed a proof of service for the Supplemental Brief with the Court by paper.  ("Second Proof of Service," Doc. No. 11727.)  The Second Proof of Service was not labeled as a corrected proof of service and it was filed in paper form in violation of the

28536118.5\022765-00213

Second Paper Order. That same day, the Court struck the Supplemental Brief for failure to comply with the Deficiency Notice. ("First Strike Order," Doc. No. 11719.)

### E. The Second Strike Order

11. On December 27, the Movants filed their *Danny Crowell, Leota Murphy and Jasmine Crowell's Motion for Relief from the Order Dated December 16, 2016 Under Bankruptcy Rule 9024 and 3008* ("Second Motion for Relief," Doc. No. 11739) in paper form with the Court. The next day, the Court struck the Second Motion for Relief because (1) the Movants had not sought and obtained permission to file in paper form, and (2) the Court had previously ordered that permission to file in paper would no longer be granted to Attorney Dedvukaj even if it were sought. (Doc. No. 11742, "Second Strike Order" and together with the First Strike Order, the "Strike Orders").

### F. The Third Motion for Relief

12. On February 4, 2017, the Movants filed their Third Motion for Relief.

13. In their Third Motion for Relief, the Movants make a number of arguments which they claim justify relief:

> (a) They argue that "[c]ontrary to the assertion in the [Court's] order" that struck their Supplemental Brief, they had included a proof of service with the Supplemental Brief. Third Motion for Relief, p. 1.

> (b) The Movants claim the Deficiency Notice is itself deficient because it did not explicitly state that the seven-day window for

- 6 -

responding to it ran from the date of the Deficiency Notice, rather than from the date the Movants received it.

(c)     They assert that their filing of the Second Proof of Service should have kept the Court from striking their Supplemental Brief. *Id.*, p. 2.

(d)     The Movants argue that they could not file electronically because ECF training "was not available until January 27, 2017, despite the fact that counsel is admitted and filed in the United States District Court for [the] Eastern District in the civil system."[3] *Id.* (emphasis removed).

14.     Each of these assertions fails. The Third Motion for Relief should be denied.

## III.  ARGUMENT

### A.     Legal Standard

15.     A motion for relief from an order under Bankruptcy Rule 9024 is governed by Federal Rule of Civil Procedure ("Civil Rules") 60. As set forth in Civil Rule 60(b), the grounds for relief from a final order include:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not

   have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic),

   misrepresentation, or misconduct by an opposing party;

---

[3] No explanation is provided as to why counsel believes his admittance to the District Court should have any effect on the scheduling of ECF training.

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an

    earlier judgment that has been reversed or vacated; or applying it

    prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60.

16.    The Motion does not mention or cite to Civil Rule 60.  Based on the arguments asserted in the Motion, the Movants seek relief under subsection (b)(1). Subsections (b)(2)-(5) do not apply because the arguments in the Motion are not based on newly discovered evidence, fraud, the judgment being void or the judgment having been satisfied, released or discharged.   Subsection (b)(6) does not apply because the relief sought is premised on subsection (b)(1). *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988) (relief cannot be had under subsection (b)(6) if it would have been available under the earlier subsections).

17.    The Sixth Circuit has stated that a Civil Rule 60(b)(1) motion is intended to provide relief in only two situations:  (1) when a party has made an excusable mistake or an attorney has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order.

- 8 -

*United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002) (*citing Cacevic v. City of Hazel Park,* 226 F.3d 483, 490 (6th Cir.2000)).

18.     Here, the Movants argue that they are entitled to relief both because their attorney has made an excusable mistake and the Court has made a substantive mistake of law.

## B.     Any Argument that the Court Has Made a Substantive Mistake of Law Is Time Barred under Binding Sixth Circuit Authority

19.     Under binding Sixth Circuit authority, "[a] 60(b)(1) motion based on legal error must be brought within the normal time for taking an appeal." *See Townsend v. Soc. Sec. Admin.*, 486 F.3d 127, 133 (6th Cir. 2007) (*quoting Pierce v. United Mine Workers of Am. Welfare & Ret. Fund,* 770 F.2d 449, 451 (6th Cir.1985), *cert. denied,* 474 U.S. 1104, 106 S.Ct. 890, 88 L.Ed.2d 925 (1986)); *see also In re Schulze*, 560 B.R. 303, 304 (Bankr. E.D. Mich. 2016).  In this case, the deadline for filing a notice of appeal of the First Strike Order was December 22, 2016, and of the Second Strike Order was January 11, 2016.  Fed. R. Bankr. P. 8002(a)(1).  Consequently, the arguments that the proof of service was not legally deficient, that the deficiency notice was legally deficient, and that the Court was not legally permitted to strike the Supplemental Brief due to the filing of the Second Proof of Service are all time barred.  *See* ¶ 12(a)–(c), *supra*.

20.     Even if the court were to consider these arguments, however, they still fail. The Movants' assertion that they included a proof of service with their

- 9 -

28536118.5\022765-00213
13-53846-tjt    Doc 11787    Filed 02/20/17    Entered 02/20/17 10:21:49    Page 9 of 47

Supplemental Brief (and the implication that Court somehow missed it) is misleading. All the Movants included was a statement claiming that "The foregoing has been served on counsel for the City of Detroit through e-mail." Supplemental Brief, p. 15 of 25. As an attorney admitted to the District Court, Attorney Dedvukaj should know that this does not suffice to evidence service. The Electronic Filing Policies and Procedures for the Eastern District of Michigan (the "District ECF Procedures," available as an appendix to the District Court's local rules) state that "A certificate of service on all parties entitled to service or notice . . . must state the manner in which service or notice was accomplished on each party so served." District ECF Procedures, R8(d). To avoid confusion, a sample certificate is attached as Exhibit B to the District ECF Procedures. Likewise, this Court includes a sample certificate of service as Appendix B to its Administrative Procedures for Electronic Case Filing. The Movants have no excuse for their failure to state whom they served, the email address they used for service, and the date of service in the proof of service they included with their Supplemental Brief.

21. Further, the Movants' implication that the Court did not realize that they had included a proof of service is disingenuous. The Deficiency Notice states that the proof of service was missing <u>or</u> non-complaint. The First Strike Order simply states that the Supplemental Brief was stricken for failure to comply with the Deficiency Notice. Thus, the Movants should not imply that the Court failed to

28536118.5\022765-00213

notice the proof of service that they attached to their brief. Instead, it seems fairly certain that the Court <u>did</u> see the purported proof of service and, for the reasons noted in the prior paragraph, found it non-compliant.

22.     Likewise, the Movants and their attorney cannot credibly claim that the court's notice contained a mistake. Bankruptcy Rule 9006(a)(1) is essentially identical to Civil Rule 6(a)(1) (the applicable rule in the District Court where Attorney Dedvukaj is admitted to practice). Both rules state that a period stated in days starts from the "day of the event that triggers the period"—in this case, the date of the Deficiency Notice. There is no credible argument that the seven-day cure window would start on the day that the Movants received the notice. Rather, the Movants had seven days from the December 6 date of the Deficiency Notice to remedy the defective proof of service by complying with the Deficiency Notice. They did not file their Second Proof of Service until December 16, three days past this deadline and it was filed in paper form in violation of the Second Paper Order.

23.     Even had the Movants timely filed their Second Proof of Service, their statement that the Second Proof of Service should be deemed sufficient to cure the defect also fails. The Deficiency Notice makes clear that the Second Proof of Service should be identified as "CORRECTED." The Movants did not comply with this simple requirement.

28536118.5\022765-00213

## C.  The Motion Should be Denied Because the Movants Have Not Demonstrated Excusable Neglect

24.    The Movants' remaining argument is based on excusable neglect under Civil Rule 60(b)(1).   Namely, the Movants argue that the Court should excuse their failure to file a brief by the deadline in the Scheduling Order because there was not an ECF training class available between December 6 (the date on which the Deficiency Notice was issued) and December 13 (the date on which the corrected certificate of service was due to be filed).

25.    This Court recently explained that in order to show that relief is appropriate under Civil Rule 60(b)(1), the Movants must show both (1) that their conduct in failing to file a brief which complied with the Court's rules by the deadline set forth in the Scheduling Order constituted neglect within the meaning of Civil Rule 60(b)(1) and (2) that  this "neglect" was excusable.  *In re Sharkey*, 560 B.R. 470, 472-73 (Bankr. E.D. Mich. 2016).  The Court further explained that

> In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court explained that "[t]he ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or . . . 'to leave undone or unattended to esp [ecially] through carelessness.'"  *Id.* (quoting Webster's Ninth New Collegiate Dictionary 791 (1983) (emphasis added)).  Based on the ordinary meaning of "neglect," the Court concluded that the concept of "neglect" under Civil Rule 60(b)(1) denotes that "a party is partly to blame" for failing to act, and that "at least for purposes of Rule 60(b), 'excusable neglect' is understood to encompass

- 12 -

situations in which the failure to comply with a filing deadline is attributable to negligence." *Id.* at 394, 113 S.Ct. 1489 (internal quotation marks and citations omitted).

*In re Sharkey*, 560 B.R. 470, 472–73 (Bankr. E.D. Mich. 2016). If the moving party shows neglect, the next question is whether the neglect was excusable. In *Pioneer*, the Supreme Court explained that a determination of

whether a party's neglect of a deadline is excusable . . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission . . . [including] the danger of prejudice to the [party opposing relief], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Id.* at 395, 113 S.Ct. 1489.

*In re Sharkey*, 560 B.R. 470, 473 (Bankr. E.D. Mich. 2016).

26. This Court has previously stated that it believes the most important factor under *Pioneer* is whether the reason for delay was within the reasonable control of the movant. Excerpt of Transcript of June 3, 2015 Hr'g (attached as Exhibit 2), pp. 72:1-4; 84:1-15.

27. This factor strongly weighs against finding excusable neglect here. The Movants' cry that electronic filing simply was impossible because no ECF class was available is unavailing. Attorney Dedvukaj notes that he is admitted to, and practices in, the District Court for the Eastern District of Michigan. Third Motion for Relief, p. 2. As such, he must be familiar with the District Court's

- 13 -

local rule E.D. Mich. LR 5.1(a) which requires all papers to be filed electronically unless a party is expressly permitted otherwise. He should not be surprised that E.D. Mich. LBR 5005-1 likewise requires electronic filing. Indeed, E.D. Mich. LBR 5005-1 is likely what prompted the Movants to file the Paper Requests. Having practiced regularly in the District Court, Attorney Dedvukaj was on notice from his first filing in this Court (July 27, 2016) that he should start taking the steps that would allow him to file papers electronically with this Court because paper filing is the exception, not the norm. He did nothing, however, until the Court, in granting the Second Paper Request, informed him that no further requests to file in paper format would be granted. A lack of diligence on the part of the Movants and their attorney does not constitute an excuse for complying with Court rules and orders. Consequently, this factor strongly weighs against finding excusable neglect here because it was within the control of the Movants and their counsel to meet the briefing deadline set forth in the Scheduling Order.

28. With respect to the remaining factors, to the extent that the Court grants the Motion, the City should be allowed to file a reply brief.[4] This could further delay these proceedings, which have already been pending for over seven

---

[4] Although the City did file a supplemental brief pursuant to the Scheduling Order (the "City Brief," Docket No. 11755), that brief addressed issues raised at the hearing and by the supplemental brief filed Najib Hodge. The City Brief did not respond to the arguments in the Supplemental Brief because it had been struck by the Court.

- 14 -

28536118.5\022765-00213
13-53846-tjt    Doc 11787    Filed 02/20/17    Entered 02/20/17 10:21:49    Page 14 of 47

months.  Indeed, the over four month delay from the first hearing on November 16, 2016,  to the next scheduled hearing for this matter on March 22, 2017, is a result of the Movants' request to file a brief asserting that their claims arose post-petition.  The Court granted the Movants over two months to file this brief. Scheduling Order, ¶2; Excerpt of Transcript of Nov. 16, 2016 Hr'g (attached as Exhibit 1), 142:12-143:9.  The brief was never filed.   Nor do the Movants seek permission to file it in the Third Motion for Relief. [5]

29.    In sum, the Court should not find excusable neglect here.  The reason for the delay was completely within the control of the Movants and their counsel and this is the most important factor.  The remaining factors also support denying the Motion because the length of the delay has been substantial, the delay was predicated on the Movants' request to file a brief which they never filed, and the City will be prejudiced because it would be forced to expend additional time and resources replying again when it has already filed the City Brief.

## <u>CONCLUSION</u>

30.    In short, the Movants' arguments all fail.  Their arguments regarding legal mistake under Civil Rule 60(b)(1) are time barred and they have not

---

[5] The argument that the claims arose post-petition is waived because the Scheduling Order provided that the Movants "must file a supplemental brief . . . no later than January 25, 2017."  Scheduling Order, ¶ 2.

demonstrated excusable neglect. Consequently, the Court should deny the Third Motion for Relief.

31.     Although the City expects that it is unlikely that the Court will reverse its decision and now allow the Movants to file their Supplemental Brief, should the Court be persuaded to grant the Movants' Third Request for Relief, the City requests an opportunity to file a brief in response.

Dated: February 20, 2017                MILLER, CANFIELD, PADDOCK AND
                                        STONE, P.L.C.

                                        By: /s/ Marc N. Swanson
                                            Jonathan S. Green (P33140)
                                            Marc N. Swanson (P71149)
                                            Ronald A. Spinner (P73198)
                                            150 West Jefferson, Suite 2500
                                            Detroit, Michigan 48226
                                            Telephone: (313) 496-7591
                                            Facsimile: (313) 496-8451
                                            swansonm@millercanfield.com

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE OF THE CITY OF DETROIT'S RESPONSE TO DANNY CROWELL, LEOTA MURPHY AND JASMINE CROWELL'S MOTION FOR RELIEF FROM THE ORDERS DATED DECEMBER 16, 2016 AND DECEMBER 28, 2016 UNDER BANKRUPTCY RULE 9024 AND 3008

The undersigned hereby certifies that on February 20, 2017, he caused a copy of *The City of Detroit's Response to Danny Crowell, Leota Murphy and Jasmine Crowell's Motion for Relief from the Order Dated December 16, 2016 and December 28, 2016 Under Bankruptcy Rule 9024 and 3008* to be served upon counsel for the Movants via ECF, first class mail and email as listed below:

Joseph Dedvukaj
The Joseph Dedvukaj Firm PC
1277 W Square Lake Rd
Bloomfield Hills, MI 48302-0845
jdlawfirm@aol.com

> By: /s/ Marc N. Swanson
> Marc N. Swanson
> 150 West Jefferson, Suite 2500
> Detroit, Michigan 48226
> Telephone: (313) 496-7591
> Facsimile: (313) 496-8451
> swansonm@millercanfield.com

Dated: February 20, 2017

# EXHIBIT 1

## EXCERPT FROM NOVEMBER 16, 2016 HEARING TRANSCRIPT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF,          Case No. 13-53846
                                Detroit, Michigan
CITY OF DETROIT, MICHIGAN    November 16, 2016
_____/   1:35 p.m.

   IN RE:  [#11624] MOTION TO DETERMINE RIGHTS TO CLAIM NUMBER
201, [#11623] OBJECTION TO CLAIM OF GENERAL SHALE BRICK, CO.,
[#11620] OBJECTION TO CLAIM OF CLAIMANT STEVEN WOLAK, [#11357]
 MOTION TO ENFORCE ORDER, PURSUANT TO SECTIONS 105, 501, AND
  503 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND
3003(c), ESTABLISHING BAR DATES FOR FILING OF PROOFS OF CLAIM
AND APPROVING FORM AND MANNER OF NOTICE THEREOF AGAINST DANNY
CROWELL, LEOTA MURPHY AND JASMINE CROWELL, [#11583] MOTION TO
ENFORCE ORDER, PURSUANT TO SECTIONS 105, 501, AND 503 OF THE
   BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND 3003(c),
  ESTABLISHING BAR DATES FOR FILING OF PROOFS OF CLAIM AND
  APPROVING FORM AND MANNER OF NOTICE THEREOF AGAINST NAJIB
HODGE, AND [#11399] FORTY-SEVENTH OMNIBUS OBJECTION TO CERTAIN
  NO BASIS CLAIMS, REGARDING CLAIM #785 OF BEATRICE MCQUEEN
        BEFORE THE HONORABLE THOMAS J. TUCKER
       TRANSCRIPT ORDERED BY: <u>ROBIN WYSOCKI</u>

APPEARANCES:

For the City of Detroit:     RONALD SPINNER, ESQ. (P73198)
                                MARC SWANSON, ESQ. (P71149)
                                JOHN WILLEMS, ESQ. (P31`861)
                                Miller, Canfield, Paddock &
                                Stone
                                150 West Jefferson
                                Suite 2500
                                Detroit, MI 48226
                                313-496-7829

For Michael Beydoun:        RAYMOND GUZALL, ESQ. (P60980)
                                  Raymond Guzall, III, P.C.
                                31555 W. 14 Mile Road
                                Suite 320
                                Farmington Hills, MI 48334
                                248-702-6211

```
1  For Trustee Karen Evangelista: RICHARDO KILPATRICK, ESQ.
                                    (P35275)
2                                  Kilpatrick & Associates, P.C.
                                    903 North Opdyke Road
3                                  Suite C
                                    Auburn Hills, MI 48326
4                                  248-377-0700

5  For Kajy Development:           AFAN BAPACKER, ESQ. (P70885)
                                    The Law Offices of
6                                  Afan Bapacker, P.C.
                                    16030 Michigan Avenue
7                                  Suite 220
                                    Dearborn, MI 48126
8                                  313-646-8070

9  For General Shale Brick, Inc.: JOHN COLUCCI, ESQ. (P40716)
                                    Law Offices of John Colucci
10                                 33659 Angeline
                                    Livonia, MI 48150
11                                 734-956-0660

12 For Najib Hodge:               DOUGLAS DEMPSEY, ESQ. (P41532)
                                    The Law Office of Joumana
13                                 Kayrouz, PLLC
                                    1000 Town Center
14                                 Suite 800
                                    Southfield, MI 48075
15                                 248-557-3645

16 For Steven Wolak, as Personal  STEPHANIE ARNDT, ESQ. (P66870)
   Representative of the Estate    Fieger Law
17 of Christopher Wolak, Deceased 19390 West 10 Mile Road
                                    Southfield, MI 48075
18                                 248-355-5555

19 For Cromwell and Murphy:       JOSEPH DEDVUKAJ, ESQ. (P51335)
                                    The Joseph Dedvukaj Firm, P.C.
20                                 1277 West Square Lake Road
                                    Bloomfield Hills, MI 48302-0845
21
   PRESENT:                        Beatrice McQueen
22
   Court Recorder:                 Jamie Laskaska
23
   Transcriber:                    Deborah L. Kremlick
24
   Proceedings recorded by electronic sound recording, transcript
25 produced by transcription service.
```

1 claims are separate from the pain and suffering claims as they

2 pertain to this plan.

3        THE COURT: Well, all right. Thank you. I'm going

4 to -- we're done hearing oral argument today. And I'm -- I'm

5 satisfied that -- that this issue is -- is sufficiently

6 complex that I should give the parties further opportunity to

7 supplement their briefing on it. Because I'm not going to

8 rule at this moment on this issue, this -- the second issue

9 we've been dealing with, nor am I going to rule on the first

10 issue today.

11        I want to take some time to think about the arguments of

12 the parties and -- and consider the bar date order, the plan,

13 and the order confirming plan, the provisions the parties have

14 argued about and possibly other provisions in those -- in

15 those documents.

16        But while I do that because the parties have not

17 necessarily exhausted the plan and order confirming plan and

18 bar date order provisions in terms of citing them to me and

19 arguing from them, and because there may well be other

20 provisions in these documents, particularly the plan and the

21 order confirming plan that may have some bearing or that the

22 Court should be aware of, before it rules on this -- on this

23 issue.

24        I'm going to give the parties an opportunity for optional

25 supplemental briefs to be filed addressing this second issue.

1  And I say optional. That means you can file it or not file

2  it. And either way is fine, nobody is going to get defaulted

3  for not filing a further brief. But I'm going to give you the

4  opportunity.

5      With respect to the motion directed against the -- the

6  Crowells and Ms. Murphy, we're going to have further

7  proceedings and briefing on that one anyway with respect to

8  the pre-petition versus post-petition claim issue.

9      And so I want to set a schedule for these things now and

10 I'll put it into an order confirming in an order, one or two

11 orders that I'm going to enter after this hearing.

12     Let's go back to this first issue that was argued which

13 relates to the Crowell, Crowell, and Murphy motion by the

14 city. The issue of whether the claims of the Crowells and Ms.

15 Murphy are claims that arose before the petition date or -- or

16 after. I want to give -- I'm going to give the respondent,

17 that is the claimants, the Crowells and the Murphys an

18 opportunity to file a -- a further brief and exhibits

19 containing evidence in the form of affidavits, documents,

20 other documentary material in support of their argument that

21 the -- their claim at issue arose after the filing of the

22 city's bankruptcy case under the fair contemplation test that

23 this Court has applied and has ruled today will apply to this

24 issue in this case.

25     And then I'll give the city an opportunity to file a

1  response, brief or other exhibits, or both if it wishes to

2  what the claimants file.  And then we're going to set a

3  deadline for supplemental briefing on the second issue, the

4  plan -- the motor vehicle plan provision issues that have been

5  argued today.

6       So I want to set a schedule.  I'd like to set a deadline

7  for the claimants, the creditors with respect to each of these

8  two motions to be the same day.  So, Mr. Dedvukaj.

9            MR. DEDVUKAJ:  Yes, Your Honor.

10           THE COURT:  Did I say that right?

11           MR. DEDVUKAJ:  Yeah.

12           THE COURT:  How much time do you want to have before

13  I have a deadline for you to file this?

14           MR. DEDVUKAJ:  Can I have a date in January?

15           THE COURT:  I'm sorry?

16           MR. DEDVUKAJ:  Can I have a date in January, please?

17           THE COURT:  What do you want?

18           MR. DEDVUKAJ:  How about January 25th?

19           THE COURT:  That's a long way off.  Why so long?

20           MR. DEDVUKAJ:  We've got three claims that I'm going

21  to have to give you evidence on.  If it was just one it

22  wouldn't be that big of a deal but since I've got three

23  claimants --

24           THE COURT:  Hold on.

25           MR. DEDVUKAJ:  And then I've got a vacation I'm

1  taking from the 16th, taking my kids down to Florida.

2          THE COURT:  You asked for what again, January what?

3          MR. DEDVUKAJ:  January 25th, 2017.

4          THE COURT:  All right.  I will take a deep breath

5  and give you that long.  January 25.  We do have some holidays

6  coming up between now and then I -- I recognize that as well.

7      All right.  So with respect to the second issue,

8  claimants want how long to file a further brief or briefs,

9  optional briefs on that second issue.  Mr. Dedvukaj.

10          MR. DEDVUKAJ:  Your Honor, I can do it by December

11  15th on the second issue.

12          THE COURT:  Is December 15 sufficient time for you,

13  Mr. Dempsey?

14          MR. DEMPSEY:  Yes, Your Honor.

15          THE COURT:  All right.  We'll make that deadline

16  December 15.  All right.  Now Mr. Swanson, with respect to

17  that second issue where the other side has a deadline of

18  December 15, how long after that do you want me to give you to

19  file any response?

20          MR. SWANSON:  Would January 9th work for the Court?

21          THE COURT:  I'm sorry?

22          MR. SWANSON:  January 9.

23          THE COURT:  Hold on.  Yes, that's a Monday.  January

24  9, 2017, that's fine.  And then with respect to that first

25  issue, the pre versus post-petition claim issue, how long

1  after January 25 do you want me to give you to respond to

2  that?

3          MR. SWANSON:  Thirty days, Your Honor, February 25th.

4          THE COURT:  That's a Saturday.  Let's pick a week

5  day.

6          MR. SWANSON:  Sure, February 24th.

7          THE COURT:  All right.  Friday, February 24, 2017.

8  I'm going to set a further hearing date, non-evidentiary

9  hearing date on -- on these motions.  Which I think probably

10 certainly will cover and include further opportunity for oral

11 argument regarding the -- the pre versus post-petition claim

12 issue.

13    It may cover also further opportunity for oral argument

14 on the motor vehicle plan provision issue, but it may not.  I

15 mean if I -- if I decide that issue with some sort of written

16 opinion before the further hearing date then -- then that

17 issue will be resolved and done.  But for the time being I'm

18 going to -- I'm going to adjourn -- or schedule a further

19 hearing on both these motions to occur soon after the February

20 24, 2017 deadline that the city will have to respond, to file

21 their last response of the ones we've been talking about.

22    So we're looking at March.  Mr. Swanson, I don't think we

23 have gone out that -- into March for -- to -- to give you

24 claim objection hearing dates in the city's case, have we?

25          MR. SWANSON:  I -- I do not believe so.  We're --

1  we're going to need them though, so I'm happy to -- to speak

2  with --

3          THE COURT:  Well, I -- generally we've been doing

4  these about in the middle of the month.  Whatever date we pick

5  for this further hearing in March we can make -- you can just

6  assume that will be the claim objection hearing date in March

7  if you want only one in March.

8          MR. SWANSON:  Yeah.

9          THE COURT:  And then we'll work on other months

10 later.  But so we're looking at March 15 is a Wednesday but

11 I'm out of town that day.  I'm -- I'm looking at -- I'd like

12 to do this on March 22.

13          MR. SWANSON:  No objection with the city, Your

14 Honor.

15         THE COURT:  It would be March 22, 2017 at 1:30 p.m.

16         MR. DEDVUKAJ:  1:30 Judge, thank you.

17         THE COURT:  Does that work on other counsel's

18 calendar?

19         MR. DEDVUKAJ:  Yes, Your Honor, it does.  Thank you.

20         MR. DEMPSEY:  I'll make it work, Judge.  Thank you.

21         THE COURT:  It's so far out.  I mean you may have a

22 trial date in the way, but you're both good, do you think?

23         MR. DEDVUKAJ:  I think so.

24         MR. DEMPSEY:  Yes, Your Honor.

25         THE COURT:  All right.  So that will be March 22,

1  And -- and -- all right.  So I will prepare and enter a

2  scheduling type order reflecting this which I hope comes

3  somewhere near to reflecting what I just said.

4      Is there anything else that any of you think I should

5  address in that order?  Mr. Swanson.

6              MR. SWANSON:  No, Your Honor.

7              THE COURT:  Mr. Dedvukaj.

8              MR. DEDVUKAJ:  No, Your Honor.

9              THE COURT:  Did I say it right that time?

10             MR. DEDVUKAJ:  You said it right.

11             THE COURT:  Okay.

12             MR. DEDVUKAJ:  Very good.

13             THE COURT:  Well, I'm sure I'll butcher it next

14  time, but all right.  Mr. Dempsey.

15             MR. DEMPSEY:  No, Your Honor.

16             THE COURT:  All right.  So we're done.  I think that

17  concludes all our matters for today.  And so we'll see some or

18  all of you next time.  Thank you all very much.

19             MR. SWANSON:  Thank you, Your Honor.

20             MR. DEDVUKAJ:  Thank you, Your Honor.

21             MR. DEMPSEY:  Thank you, Your Honor.

22             THE CLERK:  Please rise.  Court is adjourned.

23         (Court Adjourned at 4:53 p.m.)

24

25

1

2

3

4

5

6

7   We certify that the foregoing is a correct transcript from the

8   electronic sound recording of the proceedings in the

9   above-entitled matter.

10

11  /s/Deborah L. Kremlick, CER-4872          Dated: 12-2-16
    Jamie Laskaska
12

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT 2**

**EXCERPT FROM JUNE 3, 2015 HEARING TRANSCRIPT**

| | | |
|---|---|---|
| IN THE MATTER OF, | | Case No. 13-53846 |
| | | Detroit, Michigan |
| CITY OF DETROIT, MICHIGAN | | June 3, 2015 |
| _____/ | | 4:36 p.m. |

    IN RE: APPLICATION FOR ADMINISTRATIVE EXPENSE, FILED BY
CREDITOR SHEILA REED, APPLICATION FOR ADMINISTRATIVE EXPENSE,
FILED BY CREDITOR SHERELL STANLEY, SHERELL STANLEY'S MOTION
FOR THE EXTENSION OF TIME/LATE FILING OF HER APPLICATION FOR
ADMINISTRATIVE EXPENSE CLAIM, APPLICATION FOR ADMINISTRATIVE
    EXPENSES FILED BY CREDITOR EQUAL EMPLOYMENT OPPORTUNITY
    COMMISSION AND CORRECTED APPLICATION FOR ADMINISTRATIVE
    EXPENSES AND ANSWER TO OBJECTION TO NOTICE OF CLAIM FOR
                ADMINISTRATIVE EXPENSES.
        BEFORE THE HONORABLE THOMAS J. TUCKER
        TRANSCRIPT ORDERED BY: ROBIN WYSOCKI

APPEARANCES:

| | |
|---|---|
| For the City of Detroit: | MARC SWANSON, ESQ. (P71149) |
| | Miller, Canfield, Paddock & Stone |
| | 150 West Jefferson |
| | Suite 2300 |
| | Detroit, MI 48226 |
| | 313-496-7591 |
| For the EEOC: | DALE PRICE, JR., ESQ. (P55578) |
| | Equal Employment Opportunity Commission |
| | 477 Michigan Avenue |
| | Room 865 |
| | Detroit, MI 48226 |
| | 313-226-7808 |
| PRESENT: | Sheila Reed |
| | Sherell Stanley |
| Court Recorder: | Jamie Laskaska |
| Transcriber: | Deborah L. Kremlick |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1  couldn't demand one of them.

2         THE COURT:  Okay.  Go ahead.  You were saying.

3         MR. PRICE:  Sure.  So there was the 29th when I

4  became aware of it as I stated.  Emailed out to all of our

5  claimants, our charging parties.  I prepared the -- or the

6  application as quickly as possible and filed it.

7     We -- we don't -- and we do have a notice problem, Your

8  Honor.  As I said, I can't prove we didn't get it in a timely

9  fashion.  I can't say when we got it because it was not logged

10  or stamped.

11     However, I would just emphasize that I -- I don't --

12  there was no allegation of prejudice on behalf of the city

13  which is one of the acts.  We have to look at the prejudice as

14  a possible issue in evaluating excusable neglect.  And there's

15  also the shortness of the delay.

16     We're talking about a filing that was four days after the

17  deadline.  Your Honor, I think those at least we have an

18  argument in our favor on that, the commission under an

19  excusable neglect analysis.

20         THE COURT:  The Pioneer Investment factors.

21         MR. PRICE:  Yes.

22         THE COURT:  Basically.

23         MR. PRICE:  The Supreme Court, yeah Pioneer

24  Investment, yes, Your Honor.

25         THE COURT:  Well, the specific factors listed by the

1  Supreme Court in the Pioneer Investment case, excusable

2  neglect, do include as you've alluded to the factor, the

3  danger of prejudice to the party opposing relief, the length

4  of the delay and its potential impact on judicial proceedings.

5      And you're arguing that those two factors weigh in favor

6  of finding excusable neglect.  Another factor listed by the

7  Supreme Court in Pioneer is whether the movant acted in good

8  faith.  Let's assume that's the case here just for purposes of

9  further discussion.

10          MR. PRICE:  Yes.

11          THE COURT:  Another factor listed though is the --

12  the reason for the delay including whether it was within the

13  reasonable control of the movant, the movant being the EEOC.

14  Wasn't the delay here within the reasonable control of the

15  EEOC?

16          MR. PRICE:  I think I already --

17          THE COURT:  Because the EEOC can't prove it didn't

18  get the notice that was certified as being mailed to it.

19          MR. PRICE:  That certainly could be the case, Your

20  Honor.  I -- I think that factor does -- does weigh against

21  us.  I -- I can't prove when I got it.

22          THE COURT:  So if that factor weighs against the

23  EEOC, a finding of excusable neglect in favor of the EEOC, but

24  you -- you argue the other factors weigh in favor.  How -- how

25  should these be balanced out?

1    There is case law that says that this factor and whether

2 the delay was within the reasonable control of the movant is

3 the most important of the factors.  The Supreme Court didn't

4 say that in Pioneer though.

5    And Pioneer also said the Court must take account of all

6 relevant circumstances surrounding the party's omission.  If

7 it's reasonable control of the movant factor that weighs

8 against excusable neglect.  So how should the Court rule --

9         MR. PRICE:  Well, if --

10         THE COURT:  -- given -- given that?

11         MR. PRICE:  Well, if -- I don't think it's

12 dispositive, Your Honor.  I think if Pioneer itself that

13 wasn't dispositive and they found excusable neglect in Pioneer

14 where it was the overworked attorney who it's dispositive.

15         THE COURT:  But that -- in Pioneer that was only

16 because the Supreme Court found that the notice that had been

17 given was confusing and ambiguous.  The notice of the claims

18 bar date at issue in that case.  Wasn't -- isn't that -- isn't

19 that correct?

20         MR. PRICE:  I think that was a factor yes, Your

21 Honor, as I recall reading the case.

22         THE COURT:  That seemed to be the factor in Pioneer.

23 It wasn't -- I mean the Supreme Court seemed to go out of its

24 way to say that it would give little weight to any sort of

25 problems with the respondents, the party's attorney and

1  problems he was having, office upheaval in his law practice

2  and so forth.  They were giving little weight to that.

3       It really was -- seemed to turn on the -- what the Court

4  called "the unusual form of notice employed in this case"

5  which the Court found to be ambiguous regarding the bar --

6  claim bar date.  And that was a Chapter 11 case.  Isn't that

7  right?

8            MR. PRICE:  As I recall -- recall the case, yes.

9  They did -- the Court did spend a lot of time analyzing the --

10 the form of the notice, that is correct.

11           THE COURT:  And the Supreme Court didn't -- in

12 Pioneer didn't suggest anywhere did it, that the moving -- if

13 the moving party's delay was caused by its attorney making a

14 mistake or collecting a matter, or missing a deadline because

15 they were overworked and they were having problems in their

16 law practice, those sorts of reasons that that would weigh in

17 favor of granting a finding of excusable neglect, did it?

18           MR. PRICE:  No, it did not say that.

19           THE COURT:  All right.  Okay.  So go on you were

20 saying.

21           MR. PRICE:  But I do believe the other three factors

22 do.  I mean I -- obviously this maybe sounds self serving, but

23 I believe I did act in good faith.  I acted as quickly as I

24 could upon learning it after finding it on PACER and filed it.

25 We didn't have an objection or even the objection we didn't

1  hear anything about prejudice.

2     And the length of the delay, Your Honor, I -- I recognize

3  the purpose that bar dates serve, but that's -- there is also

4  excusable neglect, Your Honor.  And --

5         THE COURT:  Didn't the EEOC also get notice of the

6  January 26 bar date from the -- at least that the bar date

7  would be 45 days after the effective date of the confirmed

8  plan from the order confirming plan that was filed November

9  21, 2013, Page 104 and also from the eighth amended plan

10 itself?

11         MR. PRICE:  We would have received those documents.

12         THE COURT:  Didn't they both say that?

13         MR. PRICE:  They do say that, Your Honor.

14         THE COURT:  So the EEOC and -- and presumably you

15 too, you also as the EEOC attorney knew that you had -- you

16 knew as early as November 10 in the order confirming plan --

17 I'm sorry, November 12, 2014, the order confirming plan that

18 was filed, docket 8272, that there was looming out there this

19 45 day post-effective date deadline that was going to happen

20 when filing any administrative expense claims.

21     The only thing you didn't know at that point was exactly

22 when was going to be the effective date of the plan but you

23 knew -- you knew enough to know that you better watch for

24 that, didn't you --

25         MR. PRICE:  Yes, Your Honor.

1          THE COURT: -- didn't you?

2          MR. PRICE: Yes, Your Honor, I did.

3          THE COURT: And -- and so did the EEOC in general,

4   right?

5          MR. PRICE: Yes, I -- I would think yes. If it's

6   logged in, that's correct.

7          THE COURT: Okay. So even though you are saying you

8   were not consciously aware of what the December 10 notice said

9   and didn't consciously see that, didn't see that, read it

10  before the January 26 deadline for filing administrative

11  claims, you did know about that such a deadline was coming and

12  to watch for it, didn't you?

13         MR. PRICE: I was -- yeah, I was actually in

14  communications with headquarters about you know that yes, that

15  there's administrative expense issue and deadline that's

16  forthcoming, I just didn't know the date, but yes.

17         THE COURT: So and -- and if you had looked at the

18  docket for the case to look for any indication of when the

19  effective date was, as early as December 10 you would have

20  seen this notice that says the effective date is December 10,

21  2014.

22         MR. PRICE: Yes.

23         THE COURT: It was filed at docket 8649, December

24  10, 2014. So you would have -- you would have seen this and

25  you could have pulled it up and seen Paragraph 7A which has in

1   it explicitly the January 26, 2015 deadline, right?

2           MR. PRICE:  Correct.

3           THE COURT:  And you received electronic notices --

4   notices of electronic filing for this case all along, I

5   assume.

6           MR. PRICE:  No, I did not.

7           THE COURT:  Oh, you did not.

8           MR. PRICE:  No.

9           THE COURT:  Okay.  But you had access to PACER and

10  the ability to look at the docket and see what was happening

11  in the case at all times, right?

12          MR. PRICE:  I did have access to PACER, yes.

13          THE COURT:  And therefore you could see the docket

14  and pull up any documents that were filed.

15          MR. PRICE:  Correct.

16          THE COURT:  And read them.  Okay.  So anyway, go on.

17  You were -- what else do you want to say about this excusable

18  neglect concept.

19          MR. PRICE:  That is -- that basically that is --

20  that's it.  I mean I think that the defendant's argument with

21  respect to prejudice, I mean that it is somewhat conjectual

22  that there's going to be a flood of claims, late

23  administrative expense claims out.  I don't know if there's

24  any proof of that.

25          Under the circumstances I don't see where that -- that

1  would be the case.  And that at this point that's all I have

2  is to --

3          THE COURT:  Do you know how many administrative

4  expense claims were filed after the January 26, 2015 deadline?

5          MR. PRICE:  I only know the other two that I was

6  told about with Ms. Stanley and --

7          THE COURT:  So you don't know about there being a

8  flood of -- of these late filed administrative expense claims.

9          MR. PRICE:  I have no idea, Your Honor, no.

10          THE COURT:  All right.  What else did you want to

11  say, anything?

12          MR. PRICE:  Nothing at this point, Your Honor.

13          THE COURT:  All right.  Mr. Swanson, did you want to

14  reply?

15          MR. SWANSON:  Your Honor, I think Mr. Price has been

16  very candid with the Court and I think based on the things

17  that he said there just can't be a finding of excusable

18  neglect here.  He admits that the EEOC received the notice.

19  That no -- there's no ambiguity in the notice.   And thus

20  there's no basis to find excusable neglect.

21      As Your Honor indicated, the most important factor with

22  respect to the excusable neglect is -- is whether this was in

23  the control of the movant and -- and -- and it certainly was.

24  Then the city would also raise the futility argument again

25  here even as Mr. Price indicated and as the city indicated in

1   its reply, the -- the charge was -- was basically based on the

2   unfounded allegations.  Or the -- the application was based on

3   charges with unfounded allegations.

4        And -- and as Mr. Price indicated, three of them have

5   already been disposed of.  Two, I'm sorry, two.  And -- and

6   further it's -- these are not the type of claims that are

7   administrative expenses in a Chapter 9 case because they are

8   not costs of administration.  That's a very very very narrow

9   category type of claim and -- and that doesn't fit here.

10             THE COURT:  All right.  Well, thank you both.

11        The -- with respect to the administrative expense claim

12   request filed by the Equal Employment Opportunity Commission,

13   the EEOC, it was filed January 30, 2015, docket number 9139.

14   That was four days after the January 26, 2015 deadline set by

15   the Court for the filing of such administrative expense claim

16   requests and therefore it was untimely.

17        There is -- it's -- it's absolutely clear in my view and

18   is in both the eighth amended plan that was the plan that was

19   confirmed in this bankruptcy case and in the Page 104 of the

20   order confirming plan, and as reiterated in the December 10,

21   2014 notice of the confirmation of the plan and of the

22   occurrence of the effective date, docket number 8649.  I'll

23   refer to that as the December 10 notice of that administrative

24   expense claims -- request for payment of administrative

25   expenses had to be filed no later than January 26, 2015 which

1 | was 45 days after the effective date of December 10, 2014 of

2 | the confirmed plan of adjustment.

3 | And that if the administrative claim creditors who -- who

4 | filed -- the administrative claim creditors who filed a

5 | request for payment of administrative claims after the January

6 | 26th deadline would be barred from asserting such claims,

7 | forever barred against asserting such claims against the city

8 | its property as administrative claims. Basically the

9 | administrative claims would be denied.

10 | That's absolutely clear from Paragraph 7A of the December

11 | 10 notice. As I said earlier, it's also absolutely clear from

12 | both the order confirming plan of -- of November 12, 2014 at

13 | Page 104 and the -- the actual eighth amended plan that that

14 | order confirmed.

15 | The EEOC does not contend or claim and based on what Mr.

16 | Price, its attorney has said in today's hearing, it is clear

17 | that the EEOC cannot colorably claim and cannot prove or

18 | present any evidence that the EEOC did not actually receive in

19 | the mail from the city's noticing agent a copy of the December

20 | 10 notice which gave -- clearly gave notice to the EEOC and

21 | other parties of the December 10, 2014 effective date of the

22 | plan. And also of the -- of January 26, 2015 deadline,

23 | Paragraph 7A of that notice for filing administrative expense

24 | claims.

25 | So the EEOC did receive in my view and cannot show

1  otherwise, did receive within a reasonable and short time

2  after the notice, December 10 notice was mailed to it by the

3  city's noticing agent on or -- on or before December 16, 2014,

4  the December 10 notice, well before the January 26, 2015

5  filing deadline for administrative expenses came and went.

6      Now Mr. Price, the attorney representing the EEOC with

7  respect to the administrative claims, sub claims at issue, has

8  said in his declaration filed with his -- the EEOC's motion

9  for an extension of the claim filing deadline, that he himself

10 did not see the December 10 notice and did not himself

11 personally know of the -- that January 26, 2015 was the

12 administrative expense filing deadline until after that

13 deadline passed.

14     And he said he first discovered that bar date as he put

15 it by independent research on PACER by looking at the Court's

16 docket on January 29, 2015.  That of course was three days

17 after the deadline had passed.

18     For reasons unknown to both Mr. Price and presumably to

19 the EEOC as far as the Court can tell and certainly unknown to

20 the Court, the -- while the EEOC received the December 10

21 notice, it did not make Mr. Price its attorney in this matter,

22 aware, consciously aware of the notice so that he could read

23 it and be aware of its contents that way.

24     Mr. Price, however, admits in today's hearing that he was

25 aware back in November and December time frame that there was

1  an administrative expense claim filing deadline established,

2  that it was 45 days after the effective date of the confirmed

3  plan and the only thing he didn't know at that point was what

4  that effective date was going to be.

5      He does further admit, however, that he had access to the

6  Court's docket obviously through PACER and could have checked

7  the docket and learned of the December 10 notice as early as

8  December 10 when it was filed 2014 which is the notice that --

9  that gave notice to the world that December 10, 2014 was the

10 effective date of the plan and that's in Paragraph 1 on Page 1

11 of that notice and therefore and as stated in Paragraph 7A on

12 Page 7 of that notice, that the administrative expense filing

13 deadline was January 26, 2015.

14     But Mr. Price did not sufficiently review and keep an eye

15 on the docket to find that notice, and read it and become

16 aware of these things until January 29, 2015 according to what

17 he has said in today's hearing and in his declaration.  That

18 of course was after the deadline had passed.

19     Now what we have here is a situation where both the EEOC

20 in general and Mr. Price its attorney in particular, neglected

21 -- are guilty of neglect in failing to file or cause to be

22 filed an administrative expense claim for these claimants by

23 the January 26, 2015 deadline.

24     The question then of course is whether the Court should

25 grant relief in part by claiming that that neglect was -- is

1  excusable neglect.  And the rule that applies of course, is

2  federal bankruptcy Rule 9006(b)(1) which says that the Court

3  for cause may shown -- cause shown may extend a deadline on a

4  motion made after the expiration of the deadline where the

5  failure to act by the moving party was the result of excusable

6  neglect.

7      The leading case on what excusable neglect means in this

8  context is the Supreme Court's decision in the <u>Pioneer</u>

9  <u>Investment</u> case which is cited in the papers filed by the

10 parties and which we have discussed in today's hearing.

11     As we have discussed in today's hearing, the Supreme

12 Court said that excusable neglect requires consideration of

13 all relevant circumstances surrounding the moving party's

14 omission, "including the danger of prejudice to the party

15 opposing relief, the length of the delay, and its potential

16 impact on judicial proceedings, the reason for the delay,

17 including whether it was within the reasonable control of the

18 movant, and whether the movant acted in good faith".

19     I will assume for purposes of ruling on this motion by

20 the EEOC that the EEOC acted in good faith.  It's not guilty

21 of bad faith in any way in its neglect and in its attorney's

22 neglect.

23     And by the way, <u>Pioneer Investments</u> is clear that a party

24 whose attorney has neglected a matter leading to the missing

25 of the deadline is responsible for their attorney's, their

1  chosen attorney's neglect.  That is such neglect is

2  attributable to the attorney's client as well.  And so

3  excusable neglect has to be evaluated with respect to both the

4  party and the attorney.

5      With respect to the factors under Pioneer Investment, the

6  danger of prejudice to the party opposing relief and the

7  length of the delay and its potential impact on judicial

8  proceedings, these factors do somewhat favor the Court finding

9  excusable neglect on the party EEOC since the administrative

10 expense claim was filed January 30, only four days after the

11 deadline.  And since there does not appear to be a -- the city

12 is not arguing that there is a large number of administrative

13 expense claims that were filed after the January 26 deadline

14 so that if the Court found excusable neglect in this case it

15 might open the flood gates to allowing a number of untimely

16 administrative expense claims.

17     Although there is the same kinds of issues might come up

18 with respect to proofs of claim that were not timely filed by

19 the proof of claim filing deadline back in 2014.  And the

20 Court has already had to rule on at least one of those proof

21 -- late filing proof of claim issues in a recent hearing and

22 refused to find excusable neglect in that case.  But in

23 general these factors do somewhat at least favor a finding of

24 excusable neglect under the Pioneer Investment standards.

25     So what we're left with is, the factor -- the reason for

1 | the delay by the EEOC here missing the deadline, including

2 | whether it was within the reasonable control of the movant.

3 | This factor in my view strongly weighs against finding

4 | excusable neglect here by the EEOC and its attorney under

5 | Pioneer because it clearly was within the reasonable control

6 | of the EEOC and its attorney both to meet the January 26, 2015

7 | filing deadline for administrative expenses.  And the delay in

8 | missing the deadline and doing so was within the reasonable

9 | control of -- of the EEOC and its attorney Mr. Price here.

10 |     So that factor which I do view as being the most

11 | important of the specific factors listed in Pioneer, that

12 | factor in my view tips the balance against the Court being

13 | able to find excusable neglect here by the EEOC or its

14 | attorney.

15 |     And so the EEOC's administrative expense claim must be

16 | denied in all of its aspects, all of its sub parts, and the

17 | city's objection to that administrative expense claim must be

18 | sustained in its entirety on the ground that the claim was not

19 | timely filed as the city has argued.  And because that

20 | timeliness is not the subject or the result of excusable

21 | neglect in the Court's view.  So the city's objection to the

22 | administrative expense claim is sustained.  The administrative

23 | expense claim is denied and disallowed.  And the EEOC's motion

24 | for -- to allow the late filing of the claim is denied for

25 | these reasons.

1     I'll prepare and enter an order reflecting this ruling.

2  Thank you.  I believe that concludes matters for today then.

3  Thank you all.

4          MR. SWANSON:  Thank you, Your Honor.

5          THE CLERK:  All rise.  Court is adjourned.

6      (Court Adjourned at 3:44 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7  We certify that the foregoing is a correct transcript from the

8  electronic sound recording of the proceedings in the

9  above-entitled matter.

10

11  /s/Deborah L. Kremlick, CER-4872          Dated: 6-5-15
    Jamie Laskaska
12

13

14

15

16

17

18

19

20

21

22

23

24

25