# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## THE CITY OF DETROIT'S SUPPLEMENTAL BRIEF IN RESPONSE TO DANNY CROWELL, LEOTA MURPHY AND JASMINE CROWELL'S SUPPLEMENTAL RESPONSE OPPOSING THE CITY OF DETROIT'S MOTION TO ENFORCE

The City of Detroit ("City"), by its undersigned counsel, Miller, Canfield, Paddock and Stone, PLC, files this Supplemental Brief in response to *Danny Crowell, Leota Murphy and Jasmine Crowell's Supplemental Response Opposing the City of Detroit's Motion to Enforce Order* [Doc. No. 11803]. The City incorporates the Supplemental Brief it filed at docket number 11755 into this Supplemental Brief. In support of this Supplemental Brief, the City states as follows:

## I.    Introduction

The Court should grant the City's Motion. The order confirming the City's bankruptcy plan and the plan itself each provides that the plan does not modify the bar date order entered in this case. Neither the section of the plan addressing motor vehicle claims nor anything else in the plan or the confirmation order says (or even alludes to) anything to the contrary. As a result, there should be no

dispute that (a) the plaintiffs were required to file a timely proof of claim under the bar date order, (b) the plaintiffs did not file a proof of claim under the bar date order; and, thus (c) the bar date order permanently bars the claims the plaintiffs assert in their state court lawsuit.

## II.     Background

### A.     The Bar Date Order

1.     On July 18, 2013 ("Petition Date"), the City filed this chapter 9 case.

2.     On November 21, 2013, this Court entered its *Order, Pursuant to Sections 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* [Doc. No. 1782] ("Bar Date Order").

3.     The Bar Date Order established February 21, 2014 ("General Bar Date") as the deadline for filing claims against the City.  Paragraph 6 of the Bar Date Order states that the

> following entities must file a proof of claim on or before the Bar Date . . . [a]ny entity:  (i) whose prepetition claim against the City is not listed in the List of Claims or is listed as disputed, contingent or unliquidated; and (ii) that desires to share in any distribution in this bankruptcy case and/or otherwise participate in the proceedings in this bankruptcy case associated with the confirmation of any chapter 9 plan of adjustment proposed by the City . . . .

Bar Date Order ¶ 6.

4.     Paragraph 22 of the Bar Date Order also provided that:

> Pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(2), any entity that is required to file a proof of claim in this case pursuant to the Bankruptcy Code, the Bankruptcy Rules or this Order with respect to a particular claim against the City, but that fails properly to do so by the applicable Bar Date, shall be forever barred, estopped and enjoined from: (a) asserting any claim against the City or property of the City that (i) is in an amount that exceeds the amount, if any, that is identified in the List of Claims on behalf of such entity as undisputed, noncontingent and liquidated or (ii) is of a different nature or a different classification or priority than any Scheduled Claim identified in the List of Claims on behalf of such entity (any such claim under subparagraph (a) of this paragraph being referred to herein as an "Unscheduled Claim"); (b) voting upon, or receiving distributions under any Chapter 9 Plan in this case in respect of an Unscheduled Claim; or (c) with respect to any 503(b)(9) Claim or administrative priority claim component of any Rejection Damages Claim, asserting any such priority claim against the City or property of the City.

Bar Date Order ¶ 22 (emphasis added).

### B. The City's Confirmed Plan

5. On November 12, 2014, the Bankruptcy Court entered the *Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* [Doc. No. 8272] ("Confirmation Order"). The Eighth Amended Plan was attached as Appendix 1 to the Confirmation Order ("Plan") and became effective on December 10, 2014. [Doc. No. 8649].

6. Article IV.S of the Plan includes a provision that the City and the State agreed to after extensive and lengthy negotiations. This provision provides:

- 3 -

From and after the Effective Date, the City will continue to administer (either directly or through a third party administrator) and pay valid prepetition Claims for liabilities with respect to which the City is required to maintain insurance coverage pursuant to MCL § 500.3101 in connection with the operation of the City's motor vehicles, as follows: (1) Claims for personal protection benefits as provided by MCL § 500.3107 and MCL § 500.3108, for which insurance coverage is required by MCL § 500.3101(1), shall be paid in full, to the extent valid, provided, however, that the City will not be liable for or pay interest or attorneys' fees under MCL § 500.3142 or MCL § 500.3148 on prepetition Claims for personal protection benefits; (2) tort claims permitted by MCL § 500.3135, for which residual liability insurance coverage is required by MCL § 500.3101(1) and MCL § 500.3131, shall be paid, to the extent valid, only up to the minimum coverages specified by MCL § 500.3009(1), i.e., up to a maximum of (a) $20,000 because of bodily injury to or death of one person in any one accident, and subject to that limit for one person, (b) $40,000 because of bodily injury to or death of two or more persons in any one accident and (c) $10,000 because of injury to or destruction of property of others in any accident; and (3) Claims for property protection benefits under MCL § 500.3121 and MCL § 500.3123 shall be paid, to the extent valid, only up to the maximum benefits specified in MCL § 500.3121; provided, however, for the avoidance of doubt, to the extent any valid Claim subject to subsections 2 and 3 above exceeds the applicable payment limits, the excess claim amount shall be treated as an Other Unsecured Claim or a Convenience Claim (as applicable). Nothing in the Plan shall discharge, release or relieve the City from any current or future liability with respect to Claims subject to insurance coverage pursuant to MCL § 500.3101 or Claims within the minimum coverage limits in MCL § 500.3009(1). The City expressly reserves the right to challenge the validity of any Claim subject to this Section IV.S, and nothing herein shall be deemed to expand the City's obligations or claimants' rights with respect to these Claims under State law.

- 4 -

Plan, Art. IV.S, pp. 62-63.

7.      Similarly, the Confirmation Order provides:

> <u>Claims Related to Operation of City Motor Vehicles</u>.
> From and after the Effective Date, the City shall continue
> to administer (either directly or through a third party
> administrator) and pay valid prepetition Claims for
> liabilities with respect to which the City is required to
> maintain insurance coverage pursuant to M.C.L.
> § 500.3101 in connection with the operation of the City's
> motor vehicles consistent with the terms of Section IV.S
> of the Plan.  Nothing in the Plan or this Order shall
> discharge, release or relieve the City from any current or
> future liability with respect to Claims subject to
> insurance coverage pursuant to M.C.L. § 500.3101 or
> Claims within the minimum coverage limits in M.C.L.
> § 500.3009(1); *provided that* the City shall retain the
> right to challenge the validity of any Claim subject to
> Section IV.S of the Plan or this paragraph, and nothing
> therein or herein shall be deemed to expand the City's
> obligations or any claimant's rights with respect to such
> Claims under State law.

Confirmation Order, ¶ Q.58, p 108.  Plan Article IV.S and Confirmation Order

Q.58 are collectively referred to as the "<u>Motor Vehicle Plan Provision</u>."

8.      The Plan is clear.  It does not modify the Bar Date Order:

> **d.      No Modification of Bar Date Order**
>
> The Plan does not modify any other Bar Date Order,
> including Bar Dates for Claims entitled to administrative
> priority under section 503(b)(9) of the Bankruptcy Code.

Plan, Art. II.A.2.d., p. 32 (emphasis in original).

9. The Confirmation Order similarly provides that the all prior orders in the City's bankruptcy case are binding upon and inure to the benefit of the City and any other parties subject thereto:

### T. Binding Effect of Prior Orders

69. Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Order, all prior orders entered in the Chapter 9 Case, all documents and agreements executed by the City as authorized and directed thereunder and all motions or requests for relief by the City pending before the Court as of the Effective Date shall be binding upon and shall inure to the benefit of the City and any other parties expressly subject thereto.

Confirmation Order, ¶ T.69, p. 114.

10. The Confirmation Order further emphasizes that neither the Plan nor the Confirmation Order is intended to modify any prior order of this Court:

Without intending to modify any prior Order of this Court (or any agreement, instrument or document addressed by any prior Order), in the event of a direct conflict between the Plan, on the one hand, and any other agreement, instrument, or document intended to implement the provisions of the Plan, on the other, the provisions of the Plan shall govern (except as provided in paragraph 24 above, and unless otherwise expressly provided for in such agreement, instrument, or document). In the event of a direct conflict between the Plan or any agreement, instrument, or document intended to implement the Plan, on the one hand, and this Order, on the other, the provisions of this Order shall govern.

Confirmation Order, ¶ X.83, p. 122.

- 6 -

### C. The Motion to Enforce Against the Plaintiffs

11.     On July 12, 2016, the City filed the *City of Detroit's Motion to Enforce Order, Pursuant to Sections 105, 501, and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), Establishing Bar Dates for Filing of Proofs of Claim and Approving Form and Manner of Notice Thereof against Danny Crowell, Leota Murphy and Jasmine Crowell* [Doc. No. 11357] ("Motion to Enforce").  The Plaintiffs filed their response on August 9, 2016 [Doc. No. 11426] ("Response") and the City filed its reply on September 23, 2016 [Doc. No. 11591] ("Reply").

12.     On November 16, 2016, the Court held a hearing on the Motion to Enforce.  Following that hearing, the Court entered an order to govern further proceedings [Doc. No. 11679] ("Scheduling Order").  The Court set an additional hearing on the Motion to Enforce for March 22, 2017.  Scheduling Order, ¶ 1.  The Court also ordered the Plaintiffs to file a supplemental brief explaining why they believe their claims against the City arose post-petition.  *Id.*, ¶ 2.  Additionally, the Scheduling Order permitted the Plaintiffs to file a supplemental brief by December 15, 2016, opposing the Motion to Enforce on grounds "other than the pre-petition vs. post-petition claim issue. . . ."  *Id.*, ¶ 4.

13.     The Plaintiffs attempted to file a brief in accordance with the Scheduling Order but on each occasion the filing was stricken.  The City filed its

supplemental brief on January 9, 2017, responding to the arguments advanced by a separate plaintiff in a separate brief [Doc. No. 11755] ("Supplemental Brief"). Pursuant to an order entered on March 3, 2017, the Court permitted the Plaintiffs to file a late brief by no later than March 10, 2017 and the City was permitted to file a reply by March 17, 2017.

14.     The Plaintiffs filed a supplemental brief on March 6, 2017 [Doc. No. 11803] ("Plaintiffs Brief"). Each of the arguments in the Plaintiffs Brief fails.

## III.     **The Plaintiffs do not have "valid Prepetition Claims" even assuming *arguendo* that the City is not entitled to governmental immunity**

15.     The Plaintiffs first argue that they have a "'valid' claim because the City of Detroit is not shielded nor entitled to governmental immunity." Plaintiffs Brief, p. 6. The Plaintiffs argument is seemingly based on the faulty premise that the sole requirement to having a "valid prepetition Claim" is that the City not be entitled to governmental immunity. The Plaintiffs point to nothing in the Plan or Michigan law, however, to support this argument. If this argument were taken to its logical conclusion, the Plaintiffs would have "valid prepetition Claims" even if they failed to file a lawsuit within the applicable statute of limitation solely because the City did not have governmental immunity under M.C.L. § 691.1405. This argument has no support in the Plan or Michigan law and should be rejected by the Court.

- 8 -

## IV. Plaintiffs do not have "valid prepetition Claims" solely because they are *asserting* claims under M.C.L. § 500.3101

16.     The Plaintiffs' next argument fares no better.  The Plaintiffs  argue that they hold valid prepetition Claims because they are asserting claims under M.C.L. § 500.3101 and the Motor Vehicle Plan Provision provides that the City will pay valid prepetition Claims for which the City is required to maintain insurance coverage pursuant to M.C.L. § 500.3101.   The mere fact that the Plaintiffs *assert* claims for liabilities under this statute does not mean that their claims are <u>valid</u> prepetition claims.   Again, if this argument were taken to its logical conclusion, the Plaintiffs would have "valid prepetition Claims" solely because they asserted claims under M.C.L. § 500.3101 even if such claims were legally deficient or were otherwise barred.   This argument fails because it has no support in the Plan or Michigan law.

## V. The Motor Vehicle Plan Provision did not modify the Bar Date Order

17.     The Plaintiffs next argue that, under contract interpretation principles, the Court should find that the Plaintiffs were not required to file a proof of claim to potentially qualify for a distribution under the Motor Vehicle Plan Provision.  A brief review of contract interpretation principles reveals the flaws in this argument.

18.     The Plaintiffs are correct that bankruptcy plans are interpreted using rules of contract construction, though they get some key details wrong.  For example, in the Sixth Circuit, courts will apply state law, not federal common law,

to interpret a plan. *Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 676 (6th Cir. 2006) ("State law governs those interpretations, and under long-settled contract law principles, if a plan term is unambiguous, it is to be enforced as written, regardless of whether it is in line with parties' prior obligations."). In Michigan, "[t]he fundamental goal of contract interpretation is to determine and enforce the parties' intent *by reading the agreement as a whole* and applying the plain language used by the parties to reach their agreement." *Dobbelaere v. Auto-Owners Ins. Co.*, 275 Mich. App. 527, 529 (2007) (emphasis added). Contracts are thus construed as a whole, harmonizing their parts and words so that all provisions are given effect if possible. *Northline Excavating, Inc. v. Livingston Cnty.*, 302 Mich. App. 621, 627 (2013) ("We must 'give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory.'") (quoting *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 468 (2003)). For similar reasons, "[w]here one writing references another instrument for additional contract terms, the two writings should be read together." *Forge v. Smith*, 458 Mich. 198, 207 (1998).

19. This is where Plaintiffs' contract interpretation argument falls apart. In their focus on the Motor Vehicle Plan Provision, they ignore the section of the Plan that discusses the Bar Date Order. Plan, Art. II.A.2.d., p. 32 ("The Plan does

not modify any other Bar Date Order, including Bar Dates for Claims entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code."). The sections must be read together, along with the Bar Date Order itself, to determine their meaning. The Bar Date Order states that parties must file a proof of claim to be able to participate in distributions under the Plan (with certain exceptions not applicable here). Bar Date Order, ¶¶ 5-6, 22. Because the Plan did not modify the Bar Date Order, and the Bar Date Order required Plaintiffs to file a proof of claim in order to participate in distributions, they do not have "valid" claims in the City's bankruptcy case.

## VI.  The Motor Vehicle Plan Provision is Not Ambiguous

20.    The Plaintiffs next assert that the Court should consider extrinsic evidence because the Motor Vehicle Plan Provision is ambiguous. Plaintiffs Brief, p. 9. The Plaintiffs do not clearly spell out in either their Response or their Plaintiffs Brief what they perceive the ambiguity to be, however. At best, Plaintiffs imply there is ambiguity in the Plan's use of the word "valid" and perhaps allege ambiguity via their statement that "The City of Detroit failed to specify how disputed claims such as Crowells' and Murphy's would be handled if they were to be brought." Plaintiffs Brief, p. 14. A party must do better than make vague allegations of ambiguity before it can proffer parol evidence, however. *E.g.*, *6 Mile & Greenfield, Inc. v. PNC Bank, N.A.*, No. 14-CV-13244, 2015 WL

3652766 at *2 (E.D. Mich. June 11, 2015) ("However, plaintiff does not identify any ambiguity in the contract language itself, which must be done before looking to parol evidence."). As the City explained in its Supplemental Brief, the Motor Vehicle Plan Provision is not ambiguous and thus the Court should not consider extrinsic evidence.

21.     Further, the extrinsic evidence offered by the Plaintiffs, a letter dated October 29, 2013, from James Noseda of the City's law department to Plaintiffs' counsel regarding a separate lawsuit, does nothing to support the Plaintiffs' argument that they did not have to file a proof of claim. Plaintiffs argue that due to the letter "it was clearly the intent of the Plan to keep processing no-fault claims in the regular course of business." Plaintiffs Brief, p. 13. The Plaintiffs fail to realize, however, that the October 29 letter was written approximately six months before the Motor Vehicle Plan Provision[1] was proposed in the City's Third Amended Plan and the language in the Motor Vehicle Plan Provision is different than the language in the letter. Doc. No. 4271 at page 56 of 269. Consequently, the October 29 letter is not at all relevant to the intent of the Motor Vehicle Plan Provision.[2]

---

[1] The Motor Vehicle Plan Provision in the Third Amended Plan differed slightly from the Motor Vehicle Plan Provision in the confirmed Plan.

[2] The October 29 letter was also written prior to the entry of the Bar Date Order and the occurrence of the General Bar Date.

- 12 -

22.     Further, as Mr. Noseda explained, the lawsuit referenced in the October 29 letter was filed by Plaintiffs' counsel in violation of the automatic stay. Ex. 1, Noseda Decl., ¶ 5. It was only after Mr. Noseda filed a notice of bankruptcy and automatic stay in the lawsuit that he received the letter from Plaintiffs' counsel. *Id.* Despite Plaintiffs' argument to the contrary, the October 29 letter does not state that the City was paying prepetition no fault claims after the Petition Date for which no proof of claim had been filed. Noseda Decl., ¶ 6-7. Instead, as Mr. Raimi explained in his declaration, the City has consistently maintained that claimants had to file a proof of claim in order to receive payment under the Motor Vehicle Plan Provision. Doc. No. 11755, Raimi Decl., ¶¶ 3-10.

23.     This is further supported by the City's opposition to a motion for relief from the automatic stay filed in September 2013, wherein the plaintiff sought to liquidate and collect a prepetition claim for no fault benefits. Doc. No. 742. The City filed an objection and brief in opposition to the stay relief motion. Doc. Nos. 987 and 988. In those papers, the City opposed relief because the plaintiff was not entitled to "liquidate, but also collect, his unsecured prepetition claim wholly outside the ordinary course prescribed for unsecured creditors under a confirmed chapter 9 plan of adjustment." Doc. No. 989 at page 2 of 10. It is also supported by the fact that several plaintiffs filed lawsuits against the Michigan

Assigned Claims Plan because they alleged that the City was failing to pay no-fault benefits after the Petition Date. *See* Exhibits 2-4.

24. Finally and perhaps most importantly, the claim referenced in the October 29 letter was handled in accordance with the Bar Date Order and the Plan. The plaintiff filed a proof of claim approximately a month after the October 29 letter. Noseda Decl., ¶ 8. On September 24, 2014, the City filed a Stay Modification Notice which permitted the plaintiff to liquidate the proof of claim in the lawsuit. [Doc. No. 7646.] Approximately two years later, on or about September 28, 2016, the City and the plaintiff entered into a settlement agreement resolving the claims asserted in the proof of claim and lawsuit. Noseda Decl., ¶ 10. To the best of Mr. Noseda's knowledge after due inquiry, the plaintiff was not paid any no fault benefits prior to entering into the settlement agreement. *Id.*

## VII. __The Plaintiffs are not potentially eligible to receive the treatment provided by the Motor Vehicle Plan Provision because they did not file a proof of claim__

25. The Plaintiffs' argument under 11 U.S.C. § 1123(a)(4) does not pass muster, either. The Plaintiffs argue

> [T]he City of Detroit Plan certainly does not take away Crowells' and Murphy's right to same treatment as other members of the class, or otherwise provide for handling them differently. The Court should therefore construe the Plan to give Crowells' [sic] and Murphy the same treatment given to holders of "Operation of City Motor Vehicle" class [sic] of claims that were allowed during bankruptcy.

He continues, "A reasonable way to view this dispute is that the *Plan* omitted to specify whether, how, and when a disputed "**Operation of City Motor Vehicles**" class of claims that did not file a claim in bankruptcy would be treated or allowed. If so, the Court should supply a reasonable term." *Id.*

Plaintiffs Brief, p. 12 (emphasis in original). There are numerous mistakes in this logic.

26. First, the Plaintiffs seem to suggest that section 1123(a)(4) provides rules or guidelines for the allowance of claims. It does not. *Dugan v. Pension Benefit Guar. Corp. (In re Rhodes, Inc.)*, 382 B.R. 550, 556 (Bankr. N.D. Ga. 2008) ("It is not a purpose of section 1123(a)(4) to insure that claims are computed correctly, and that section has nothing to do with the allowance of claims.") Instead, this provision is meant mainly to ensure equality of distribution within a class of claims. Plaintiffs are not entitled to any treatment under the Motor Vehicle Plan Provision, however, because they do not hold "valid prepetition Claims." Finally, the deadline to file an objection to the Plan premised on section 1123(a)(4) of the Bankruptcy Code passed years ago.

27. Second, only the City can propose or modify a plan. 11 U.S.C. §§ 941, 942. Even if the Plaintiffs were correct that a court could propose a "reasonable term" for a chapter 11 plan that fundamentally modified the plan (adding an entirely new class of claimants), this argument fails in a chapter 9 case. In the chapter 9 context, for sovereignty reasons, federal bankruptcy courts are

- 15 -

limited to approval or disapproval of a plan of reorganization. *See e.g. In re City of Detroit, Mich.*, 841 F.3d 684, 695 (6th Cir. 2016). There is no reading of the Bankruptcy Code which would allow a bankruptcy court to draft or modify a chapter 9 plan on its own. Indeed, Bankruptcy Code section 904 prohibits a Bankruptcy Court from using any of its powers to "interfere with" the property of a municipal debtor. *Id.*

28. For these reasons, Crowell's arguments under Bankruptcy Code section 1123(a)(4) are devoid of merit.

## VIII. The Plaintiffs' claims arose when the alleged accident occurred in June 2013

29. The Plaintiffs argument that they hold post-petition claims should be rejected because the Plaintiffs have not provided any evidence to the Court in support of this assertion despite having several months to do so. Instead, the Plaintiffs repeat the same argument which they previously admitted had no evidentiary support.

30. At the November 16, 2016, hearing, the Court heard oral argument on the issue of whether the Plaintiffs' claims arose after the Petition Date. Plaintiffs alleged in the Response that each of their claims

> arose when they met the serious impairment of an important body function that affected their general ability to lead a normal life, which was May 20, 2016, when the complaint was filed claiming that they had sustained a

serious impairment of an important body function that affected their general ability to lead a normal life.

Response, p. 4. At this hearing, the Plaintiffs' lawyer again argued that each of the Plaintiffs did not have a serious impairment of body function until after he met with them and filed a complaint on their behalf:

> I would -- I would say it accrued by May of 2016. They came in to see me about this case, I believe it was April of 2016. And we looked at it and basically ran it through our analysis under the McCormick case, and believed that we could prove this case, mind you we still have to prove it in the Wayne County Circuit Court either to a Judge or a jury that they have sustained a serious impairment of important body function that affects their general ability to lead a normal life.

Exhibit 5, Excerpt of Transcript of Nov. 16, 2016 Hearing on Motion to Enforce ("Nov. 16 Hr'g Tr.") 109:7-19; *see also* Nov. 16 Hr'g Tr. 103:1-16.

31. The Plaintiffs acknowledged that there was no evidence in the record to support this assertion:

> THE COURT: Well, you're arguing that, but there's -- there's no evidence in the record in this -- before me that that -- to support those assertions at this point, right?
>
> MR. DEDVUKAJ: That's correct.

Nov. 16 Hr'g Tr. 103:17-20. The Court then asked the Plaintiffs what evidence they would offer to support their assertions:

> THE COURT: What evidence would you offer if you were permitted an opportunity to offer evidence since you've not offered any evidence yet that the -- that the

right to payment in fact under these Michigan statute and -- and case law did not actually arise until after the bankruptcy was filed by the City of Detroit.

MR. DEDVUKAJ: I would offer medical records, testing that was done, things of that nature. And perhaps--

THE COURT:  To show -- and it would show what?

MR. DEDVUKAJ:  It would show what we pled in the complaint that they've been diagnosed with those soft tissue injuries that only a doctor would -- would know and not your -- your average person who doesn't have any medical background.

Nov. 16 Hr'g Tr. 107:8 – 108:1.  The Court granted the Plaintiffs request to submit

additional evidence and inquired how long the Plaintiffs would need:

THE COURT:  How much time do you want to have before I have a deadline for you to file this?

MR. DEDVUKAJ:  Can I have a date in January?

THE COURT:  I'm sorry?

MR. DEDVUKAJ:  Can I have a date in January, please?

THE COURT:  What do you want?

MR. DEDVUKAJ:  How about January 25th ?

THE COURT:  That's a long way off. Why so long?

MR. DEDVUKAJ:  We've got three claims that I'm going to have to give you evidence on.  If it was just one it wouldn't be that big of a deal but since I've got three claimants --

- 18 -

Nov. 16 Hr'g Tr. 142:12-23. The Court granted the Plaintiffs' request. *See* Scheduling Order.

32. The Plaintiffs did not, however, submit the promised additional evidence or arguments. Instead, the Plaintiffs devoted two sentences to this argument in the Plaintiffs Brief. The first sentence baldly asserted that the Plaintiffs hold "post-petition claims" while the second sentence repeated the argument that the claims did not accrue until the Plaintiffs' lawyer filed the state court complaint. Plaintiffs Brief, pp. 2, 7 ("Plaintiffs claim is post-petition because their claims arose when they met the serious impairment of an important body function that affected their general ability to lead a normal life, which was May 20, 2016, when the complaint was filed claiming they had sustained a serious impairment of an important body function that affected their general ability to lead a normal life."). Plaintiffs have submitted no evidence to support their position that their claims arose in May, 2016, despite allegedly being hit by a pick-up truck a month and a half before the Petition Date in June 2013.

33. Finally, during the November 16 hearing, the Plaintiffs relied heavily on the *McCormick* case to support their position that their claims arose after the Petition Date because they "did not know until recently that they satisfied the threshold for serious impairment under the Michigan no-fault act." Response, p. 8. In addition to providing no evidence to support their position, the Plaintiffs

misstated the holding in *McCormick*. At the November 16 hearing, the Plaintiffs stated that under *McCormick* a plaintiff has a cause of action for serious impairment of body function under M.C.L. § 500.3135(7) when he or she subjectively knows that he or she has a serious impairment of body function:

> THE COURT: They objectively -- it's objectively manifested by how the person feels, what they can and cannot do, those sorts of things.
>
> MR. DEDVUKAJ: No. The Michigan Supreme Court has said that that is not an objective manifestation. In fact it's subjective.
>
> THE COURT: What case says that?
>
> MR. DEDVUKAJ: That would be the McCormick case. You can look --
>
> THE COURT: Is that cited in your brief?
>
> MR. DEDVUKAJ: It is not cited in my brief, Your Honor. But McCormick is the most recent Michigan Supreme Court case on the subject. There is the DeFranco case.
>
> THE COURT: Is that cited in your brief?
>
> MR. DEDVUKAJ: It's not cited in my brief…

Nov. 16 Hr'g Tr. 105:4-25, 106:1.

Plaintiffs again did not cite these cases in the Plaintiffs Brief. That is likely because the court in *McCormick* stated (in great detail) that the standard is objective:

28714785.3\022765-00213

13-53846-tjt   Doc 11812   Filed 03/17/17   Entered 03/17/17 16:07:05   Page 20 of 216

Under the first prong, it must be established that the injured person has suffered an objectively manifested impairment of body function. The common meaning of "an objectively manifested impairment" is apparent from the unambiguous statutory language, with aid from a dictionary, and is consistent with the judicial interpretation of "objectively manifested" in *Cassidy* and *DiFranco*. To the extent that the *Kreiner* majority's interpretation of this prong differs from this approach, it was wrongly decided.

To begin with, the adverb "objectively" is defined as "in an objective manner," *Webster's Third New International Dictionary* (1966), and the adjective "objective" is defined as "1. Of or having to do with a material object as distinguished from a mental concept. 2. Having actual existence or reality. 3. a. Uninfluenced by emotion, surmise, or personal prejudice. b. Based on observable phenomena; presented factually...." *The American Heritage Dictionary, Second College Edition* (1982). It is defined specifically in the medical context as "[i]ndicating a symptom or condition perceived as a sign of disease by someone other than the person afflicted." *Id.* The verb "manifest" is defined as "1. To show or demonstrate plainly; reveal. 2. To be evidence of; prove." *Id.* Overall, these definitions suggest that the common meaning of "objectively manifested" in MCL 500.3135(7) is an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function. In other words, an "objectively manifested" impairment is commonly understood as one observable or perceivable from actual symptoms or conditions.

Notably, MCL 500.3135(7) does not contain the word "injury," and, under the plain language of the statute, the proper inquiry is whether the *impairment* is objectively manifested, not the *injury* or its symptoms. This distinction is important because "injury" and

28714785.3\022765-00213

"impairment" have different meanings. An "injury" is "1. Damage of or to a person ... 2. A wound or other specific damage." *The American Heritage Dictionary, Second College Edition* (1982). "Impairment" is the "state of being impaired," *Webster's Third New International Dictionary* (1966), and to be "impaired" means being "weakened, diminished, or damaged" or "functioning poorly or inadequately." *Random House Webster's Unabridged Dictionary* (1998). These definitions show that while an injury is the actual damage or wound, an impairment generally relates to the effect of that damage. Accordingly, when considering an "impairment," the focus "is not on the injuries themselves, but how the injuries affected a particular body function." *DiFranco,* 427 Mich. at 67, 398 N.W.2d 896.

Further, the pre-existing judicial interpretation of "objectively manifested" is consistent with the plain language of the later-adopted statute. In *Cassidy,* this Court explained that the serious impairment threshold was not met by pain and suffering alone, but also required "injuries that affect the functioning of the body," i.e., "objectively manifested injuries." *Cassidy,* 415 Mich. at 505, 330 N.W.2d 22. In other words, *Cassidy* defined "objectively manifested" to mean affecting the functioning of the body. *DiFranco* affirmed this and further explained that the "objectively manifested" requirement signifies that plaintiffs must "introduce evidence establishing that there is a physical basis for their subjective complaints of pain and suffering" and that showing an impairment generally requires medical testimony. *DiFranco,* 427 Mich. at 74, 398 N.W.2d 896.

*McCormick v. Carrier*, 487 Mich. 180, 195–98 (2010) (internal footnotes omitted).

Thus, even if the Plaintiffs had presented evidence that they did not subjectively realize that they had a serious impairment until three years after the accident, it

- 22 -

would be irrelevant. Under the fair contemplation test adopted by this Court, the Plaintiffs alleged claims arose when the alleged accident occurred in June, 2013. *See In re City of Detroit, Mich.*, 548 B.R. 748, 762 (Bankr. E.D. Mich. 2016).

## IX. <u>The Motor Vehicle Plan Provision should not be construed against the City</u>

The Plan should not be construed against the City. As the City explained in its Supplemental Brief, the rule of contra proferentem does not apply here for the reasons stated by the Court at the November 16 hearing. Supplemental Brief, p. 15. Namely, the rule does not apply when more than one party contributes to the drafting of a plan or an order confirming a plan. Indeed, the court in the first case cited by the Plaintiffs did not apply the rule of contra proferentem for this same reason. *Schellhorn v. Farmers Savs. Bank (In re Schellhorn)*, 280 B.R. 847, 855 (Bankr. N.D. Iowa 2002) (the "most applicable rule of contract interpretation in this case is to focus on the four corners of the document, keeping in mind that this is essentially a consent decree embodying a compromise between the parties."). The remaining cases cited by the Plaintiff are distinguishable because they did not involve a dispute over a jointly drafted provision. Further, none of the cases was decided under Michigan law. *See Forklift LP Corp. v. iS3C, Inc. (In re Forklift LP Corp.),* 363 B.R. 388, 397 (Bankr. D. Del. 2007) (Debtor's counsel drafted the provision at issue); *Harstad v. First Am. Bank (In re Harstad)*, 155 B.R. 511 (Bankr. D. Minn. 1993) (same); *Miller v. United States (In re Miller)*, 253 B.R.

- 23 -

455 (Bankr. N.D. Cal. 2000), *aff'd*, 284 B.R. 121 (N.D. Cal. 2002) (same); *In re Collins*, 184 B.R. 151, 155 (Bankr. N.D. Fla. 1995). Consequently, the Court should not construe the Motor Vehicle Plan Provision against the City for the reasons stated above and for the reasons set forth in the Supplemental Brief.

## X.     Conclusion

For the reasons set forth above and in the Supplemental Brief, the City respectfully requests that the Court grant the Motion to Enforce.


Dated: March 17, 2017                    MILLER, CANFIELD, PADDOCK AND
                                         STONE, P.L.C.

                                         By: /s/ Marc N. Swanson
                                         Jonathan S. Green (P33140)
                                         Marc N. Swanson (P71149)
                                         Ronald A. Spinner (P73198)
                                         150 West Jefferson, Suite 2500
                                         Detroit, Michigan 48226
                                         Telephone: (313) 496-7591
                                         Facsimile: (313) 496-8451
                                         swansonm@millercanfield.com

- 24 -

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 17, 2017, he served a copy of the *City of Detroit's Supplemental Brief in response to Danny Crowell, Leota Murphy and Jasmine Crowell's Supplemental Response Opposing the City of Detroit's Motion to Enforce Order* upon counsel to Danny Crowell, Leota Murphy and Jasmine Crowell, via first class mail and email, as listed below:

Joseph Dedvukaj
The Joseph Dedvukaj Firm PC
1277 W Square Lake Rd
Bloomfield Hills, MI 48302-0845
jdlawfirm@aol.com

Dated: March 17, 2017

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## DECLARATION OF JAMES NOSEDA IN SUPPORT OF THE CITY OF DETROIT'S SUPPLEMENTAL BRIEF IN RESPONSE TO DANNY CROWELL, LEOTA MURPHY AND JASMINE CROWELL'S SUPPLEMENTAL RESPONSE OPPOSING THE CITY OF DETROIT'S MOTION TO ENFORCE

1.    My name is James Noseda.  I am a Supervising Assistant Corporation Counsel in the City of Detroit ("City") Law Department.  I have worked in the City of Detroit Law Department since May 1, 1995.  This declaration, except as otherwise stated, is made on my personal knowledge and review of documents maintained by the City in the ordinary course of business.

2.    My responsibilities include litigating and defending lawsuits and claims against the City of the types for which the City is required to maintain insurance coverage pursuant to M.C.L. § 500.3101 in connection with the operation of the City's motor vehicles (collectively, "Insurance Claims").

3.    According to the transcript of the hearing held on this matter on November 16, 2016, the Court asked the City's counsel "has the city been paying any type of benefits covered by the motor vehicle plan provision during the

28756448.2\022765-00213

pendency of the case for which a timely proof of claim was not filed by the claimant?" Nov. 16, 2016, Hr'g Tr. 136:2-5.

4.     On or about October 21, 2013, I received a letter ("October 21 Letter")[1] from Joe Dedvujak referencing a lawsuit filed by Mr. Dedvujak, on behalf of his client, Sherlanda Jones, against the City on September 23, 2013, in Wayne County Circuit Court ("Lawsuit"). The October 21 Letter was addressed to both the State of Michigan Assigned Claims Plan and me. The State of Michigan Assigned Claims Plan provides assistance to people injured in accidents involving a motor vehicle when there is no automobile insurance available.

5.     As the City had filed for bankruptcy on July 18, 2013 ("Petition Date"), the Lawsuit was filed in violation of the automatic stay.[2] Mr. Dedvujak did not provide the City with a claim for benefits prior to filing the Lawsuit. On October 16, 2013, I filed a notice of bankruptcy and the automatic stay in the Lawsuit. Approximately one week later, I received the October 21 Letter.

6.     As I explained in my October 29, 2013, letter to Mr. Dedvukaj, both before and after the Petition Date, the City had "processed, in the regular course of business, claims made for personal protection benefits." By "processed," I meant that the City was reviewing claims to determine whether they had any legal basis.

---

[1] The October 21 Letter is attached as exhibit A.

[2] The docket for the Lawsuit is attached as exhibit B.

28756448.2\022765-00213

I further stated that the City had "processed payment for amounts due under law." I made this statement because I was confident that the City was complying with whatever legal obligations it had to claimants although my job responsibilities did not include processing payment to individuals.

7.     The City's legal obligations were, of course, affected by the City's bankruptcy filing.  As explained by Mr. Raimi in his declaration,[3] as of January 2014, the City had started paying a few claims which he believed were "catastrophic claims," meaning they involved severe injuries and continuing need for treatment.

8.     The Lawsuit did not involve a catastrophic claim.  In accordance with this Court's November 21, 2013, Order, Pursuant to Sections 105, 501, and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof [Doc. No. 1782] ("Bar Date Order"), Ms. Jones filed a bankruptcy proof of claim on November 25, 2013, and it was assigned claim number 134 ("Proof of Claim").[4]

---

[3] The declaration was filed at docket number 11755.

[4] The Proof of Claim is attached as exhibit C.

9.     On September 24, 2014, the City filed a Stay Modification Notice which permitted Ms. Jones to liquidate the Proof of Claim in the Lawsuit. [Doc. No. 7646.]

10.    On or about September 28, 2016, the City and Jones entered into a settlement agreement resolving the claims asserted in the Proof of Claim and the Lawsuit.[5] To the best of knowledge after due inquiry, Ms. Jones was not paid any no fault benefits from the City on account of the claims asserted in the Lawsuit or Proof of Claim prior to entering into the settlement agreement.

By: _____
James Noseda
Supervising Assistant Corporation Counsel
City of Detroit Law Department

Dated: March 15, 2017

---

[5] The settlement agreement is attached as exhibit D.

28756448.2\022765-00213



# THE
# JOSEPH DEDVUKAJ FIRM, P.C.

## *Attorneys & Counselors at Law*

1277 West Square Lake Rd.　•　Bloomfield Hills, MI 48302　•　Tel. 248-352-2110　•　Fax 248-352-0880

*jdlawfirm@aol.com*

October 21, 2013

Mr. James D. Noseda, Esq.
2 Woodward Avenue
Detroit, Michigan 48226

State of Michigan Assigned Claims Plan
P.O. 532318
Livonia, Michigan 48153-2318

Re: Date of Accident: September 21, 2012
Our Client: Sherlanda Jones
Case#13-012349-NF
EMS Report#28000-1380045

Dear Mr. Noseda, and State of Michigan Assigned Claims Plan:

I have enclosed a copy of the EMS report and no-fault application for insurance benefits. As you know my office represents Sherlanda Jones in a claim for personal injury protection insurance benefits and bodily injury compensation. Ms. Sherlanda Jones did not have any applicable auto insurance in her household at the time of the bus accident. The City of Detroit has recently filed for bankruptcy, leaving my client with potentially no recovery. Therefore, we are required by the Michigan no-fault law to make a claim with the bus driver's personal automobile insurance policy to recover no-fault benefits, as carrier in the next order of priority. MCL 500.3114 (4)(b)

**"(b) The insurer of the operator of the vehicle occupied."**

Therefore, please turn this letter over to the personal auto insurance carrier that insured the bus driver at the time of the bus accident. If bus driver did not have any personal auto insurance coverage at the time of the subject accident, please furnish an affidavit to the undersigned and the State of Michigan Assigned Claims Facility immediately. If bus driver does not have any no-fault insurance coverage at the time of the accident, my client will be expecting that the State of Michigan Assigned Claims Plan will promptly pay her no-fault insurance benefits.

I trust you will provide this information requested within the next seven (7) business days, as it is very important that my client Sherlanda Jones receive her statutory no-fault benefits promptly.

Thank you, in advance, for your anticipated cooperation. If you have any questions, please do not hesitate to contact my office.

Sincerely,

Joseph Dedvukaj

## MICHIGAN MOTOR VEHICLE NO-FAULT INSURANCE LAW
# APPLICATION FOR BENEFITS

| DATE 9-27-12 | OUR POLICYHOLDER | ACCIDENT DATE 9-21-12 | FILE NUMBER |
|---|---|---|---|

The no-fault law provides benefits for medical expenses, wage loss and replacement services, as well as survivors' loss. To enable us to determine if you are entitled to any of these benefits, please complete this application form and return it promptly.

**IMPORTANT — To Be Eligible For Benefits, You Must:**
1. Complete, sign, and return this application no later than one (1) year from date of the accident.
2. Submit bills for expenses promptly, but no later than one (1) year from the date the expense was incurred.

**G E N E R A L**

APPLICANT'S NAME: Sherlanda Jones

HOME PHONE: ████-6861   BUSINESS PHONE:

ADDRESS (STREET, CITY, STATE, ZIP): ████ Detroit MI 48238   BIRTH DATE: ██-66   SOCIAL SECURITY NO. ████-5243

DATE & TIME OF ACCIDENT: 9-21-12 At 2:00 ☐ AM ☒ PM   PLACE OF ACCIDENT (STREET, CITY, STATE, ZIP): Near Fairfield & Puriton Detroit MI

BRIEF DESCRIPTION OF ACCIDENT:
I was a passenger in city of detroit bus which was struck in the rear by another vehicle. I was sitting in rear of bus.

Describe motor vehicles owned by you, your spouse, or relatives of either you or your spouse residing in the same household on the day of the accident:

| VEHICLE | LIC. PLATE NO. | OWNER | INSURER | POLICY NO. |
|---|---|---|---|---|
| — None — | | | | |

☒ CHECK HERE IF THERE ARE NO VEHICLES IN THE HOUSEHOLD.

DESCRIBE THE INJURY WHICH RESULTED FROM THIS ACCIDENT:
Back pain / Head Dizzyness

**M E D I C A L**

WERE YOU TREATED BY A DOCTOR ☒ YES ☐ NO   at Hospital

NAME, ADDRESS & PHONE OF DOCTOR(S) PROVIDING TREATMENT:

IF TREATED IN A HOSPITAL WERE YOU ☐ IN-PATIENT ☒ OUT-PATIENT   HOSPITAL NAME & ADDRESS: DMC Hospital Sinai Grace Detroit MI

DO YOU EXPECT TO HAVE MORE MEDICAL TREATMENT ☒ YES ☐ NO ☐ UNDETERMINED

HAVE YOU RECEIVED ANY BENEFITS UNDER A MEDICAL PLAN OR HEALTH INSURANCE ☐ YES ☒ NO

NAME OF YOUR MEDICAL PLAN, INSURANCE COMPANY, GOVERNMENT PROGRAM OR HMO:

NAME: Molina   POLICY OR PLAN NUMBER:

ADDRESS:   IDENTIFICATION NO.:

CITY:   STATE:   ZIP:   TELEPHONE NO. ( )

HAVE YOU RECEIVED ANY MEDICAL TREATMENT FOR THE SAME OR SIMILAR SYMPTOMS PRIOR TO THIS ACCIDENT? ☐ YES ☒ NO

IF ABOVE YES, LIST NAME, ADDRESS & PHONE OF PHYSICIAN(S) PROVIDING TREATMENT.
N/A

A-3973 (7-90)   SEE REVERSE SIDE

**W A G E   L O S S**

| NAME | ADDRESS | PHONE | OCCUPATION | DATE HIRED |
|------|---------|-------|-----------|-----------|
| N/A | not Employed | | | |

| DATE DISABILITY FROM WORK BEGAN | DATE RETURNED OR ANTICIPATE RETURNING TO WORK | AVERAGE WEEKLY WAGE/SALARY |
|---|---|---|
| N/A | | |

WERE YOU ON THE JOB WORKING WHEN THE ACCIDENT OCCURRED?  ☐ YES  ☒ NO

HAVE YOU RECEIVED ANY BENEFITS UNDER WORKERS' COMPENSATION SOCIAL SECURITY, OR ANY WAGE OR SALARY CONTINUATION PLAN  ☐ YES  ☒ NO

If above yes, indicate source of payment

SOURCE OF PAYMENT _____ N/A _____

AMOUNT OF PAYMENT — PER MONTH _____ PER WEEK _____

ARE YOU CURRENTLY RECEIVING UNEMPLOYMENT BENEFITS   ☐ YES  ☒ NO

**E X P E N S E S**

AS A RESULT OF YOUR INJURY, HAVE YOU INCURRED ANY OTHER EXPENSES, SUCH AS TRANSPORTATION COSTS OR EXPENSES FOR SERVICES YOU WOULD HAVE PERFORMED FOR YOURSELF OR YOUR DEPENDENTS: ☐ YES   ☐ NO   IF YES, EXPLAIN BELOW:

- Medical Bill's

These statements are true and complete to the best of my knowledge:

X _____   9-27-17

SIGNATURE OF APPLICANT, PARENT OR GUARDIAN

## AUTHORIZATION FOR MEDICAL INFORMATION

THIS AUTHORIZATION OR PHOTOCOPY HEREOF, WILL AUTHORIZE A PHYSICIAN, HOSPITAL, CLINIC, OR OTHER MEDICAL INSTITUTION TO FURNISH ALL INFORMATION YOU MAY HAVE REGARDING MY CONDITION WHILE UNDER YOUR OBSERVATION OR TREATMENT, INCLUDING THE HISTORY OBTAINED, X-RAY AND PHYSICAL FINDINGS DIAGNOSIS AND PROGNOSIS.  YOU ARE REQUIRED TO PROVIDE THIS INFORMATION.

X _____     9-27-12
SIGNATURE OF APPLICANT OR PARENT OR GUARDIAN          DATE

## AUTHORIZATION FOR WAGE AND SALARY INFORMATION

THIS AUTHORIZATION OR PHOTOCOPY HEREOF, WILL AUTHORIZE YOU TO FURNISH ALL INFORMATION YOU MAY HAVE REGARDING MY WAGES OR SALARY WHILE EMPLOYED BY YOU.  YOU ARE REQUIRED TO PROVIDE THIS INFORMATION.

_____
SIGNATURE OF APPLICANT OR PARENT OR GUARDIAN          DATE

28000 1380045

# DETROIT FIRE DEPT PREHOSPITAL CARE RUNSHEET
USE BALL POINT PEN - PRESS FIRMLY YOU ARE MAKING FOUR COPIES

| 1. PATIENT PRIORITY CODE | 2. PATIENT NUMBER | PAGE NUMBER | INCIDENT CODE |
|---|---|---|---|
| 70 | 2 2 | 1/1 | |

| 3. UNIT | RUN DATE | MILEAGE AT START | ENGINE | HOSPITAL | 6. PROVIDER INCIDENT NO. 133 |
|---|---|---|---|---|---|
| B-64 | B101 | 9 21 12 | 33.1 | | |

5. CALL  Fairfield + Purmon
STREET

| 7. UNIT CARE | MEDIC 5173 | 8. INCIDENT LOCATION D |
|---|---|---|

| 9. CAD NUMBER | 10. TIME DISPATCHED | 11. TIME ENROUTE | 12. TIME ON SCENE | 13. TIME DEPART SCENE | 14. TIME AT DESTINATION | 15. CLEAR DESTINATION |
|---|---|---|---|---|---|---|
| 1 3 9 | 1 4 0 0 | 1 4 0 0 | 1 4 0 9 | 1 4 2 2 | 1 4 3 0 | |

**PATIENT INFO**

16. PATIENT NAME  Sherlander Jones
17. PATIENT ADDRESS  ▮▮▮▮▮▮
18. CITY  DET
19. STATE  MI   20. ZIP  48238   21. PHONE  ▮▮▮ 0861

| 22. AGE 46 | 23. SEX ☐ MALE ☒ FEMALE |
|---|---|

MEDICARE
MEDICAID
OTHER INSURANCE  Molina
RESPONSIBLE PARTY NAME  Sherlander Jones   RELATIONSHIP  Self   PHONE  Same

25. PAST MEDICAL HISTORY  Asthma
26. MEDICATIONS  Albutrol
ID NUMBER  not available
ALLERGIES  NADA

| 28. DISPATCH INFORMATION | X | MVA |
|---|---|---|
| 29. PATIENT CLASSIFICATION | 2 | Trauma |
| 30. CHIEF COMPLAINT | X | Head Back pain |
| 31. WAS INJURY RESTRAINED | ☐ YES ☐ NO |
| 32. RESPONSE OUTCOME | 2 | Treat + Transport |

| 33. VITALS-1ST TIME | LOC | GCS EYES | 34. VITALS-2ND TIME | GCS VERB | GCS MOTR |
|---|---|---|---|---|---|
| 1410 | ALERT 178 | 4 | 1415 | ALERT 185 | 4 |
| PULSE | 82 | VOICE | PULSE | 84 | VOICE |
| | 100 | PAIN 5 | | 96 | PAIN 5 |
| RESP | 20 | UNRESP 6 | RESP | 20 | UNRESP 6 |

SKIN CONDITION (1st): COOL, WARM ☒, MOIST, DRY, PALE, CYANOTIC, FLUSHED, NORMAL
SKIN CONDITION (2nd): COOL, WARM, MOIST, DRY, PALE, CYANOTIC, FLUSHED, NORMAL

35. COMMENTS AND NOTES

46 y/o female found CIA ambulatory
at scene pt sitting on Bus which was
rearended pt c/o head and upper Back
pain. No other complaints. No signs of
trauma. No H2O deficit. No c/p or DIB.
No Abd pain or N/V. No LOC. No other
complaints noted. VS obtained. LS clear
equal Bilat pupils pearl pt placed in full
c-spine precautions. Pt. and call ER 21pm
via NIC transported to GNW. In PCC.
Abd assessment is neg for any changes
Pt. care and report given to RN staff.

**AIRWAY MANAGEMENT**
A ☐ MANUAL CLEARANCE
B ☐ SUCTIONING
C ☐ JAW THRUST
D ☐ ORAL AIRWAY
E ☐ COMBITUBE
D ☐ SPO₂

☐ DM
B ☐ OXYGEN DELIVERED  4
BY  NIC
H ☐ CO₂

36. CONTACT MADE WITH HOSPITAL ☐ YES  37. TRANS CHANNEL USED TO CONTACT  E51  27. IF COMM PROBLEM, SPECIFY

**IMMOBILIZATION**
I ☐ C-SPINE IMMOBILIZED
J ☐ LONG BOARD
K ☐ EXTRICATION DEVICE
L ☐ TRACTION SPLINT
M ☒ OTHER SPLINTING

**OTHER TREATMENT**
N ☐ DRESSING APPLIED
O ☐ HEAT APPLIED
P ☐ COLD APPLIED
Q ☐ IPECAC
R ☐ OPA
S ☐ TRUMPET
T ☐ IRRIGATION
U ☐ GLUCOMETER
V ☐ DELIVERY (OB)
   1 MIN.____ 5 MIN.____
   10 MIN.____
W ☐ OBSERVATION

**ADVANCED TREATMENTS**
V ☐ MANUAL DEFIB
X ☐ EKG
W ☐ PACING
C ☐ PERIPHERAL IV
D ☐ MEDICATIONS
   ☐ BLOOD DRAW
   ☐ CATHAGROUND
Z ☐ INTUBATION

38. INFORMATION LOST TIMES
BYSTANDER ASSIST ☐
CPR INITIATED ☐
TIME OF CPR____
ALS INITIATED ☐
BYSTANDER CPR ☐
RETURN OF PULSE? ☐
RHYTHM OF SHOCKS DELIVERED ☐

| 40. ALS | TIME | P | R | B/P | RHYTHM | TREATMENT | RESPONSE/COMMENTS | PARAMEDIC |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| 41. DESTINATION  GNW | 42. HOSPITAL REPRESENTATIVE  Yolonda R.N. | 43. MEDICAL CONTROL PHYSICIAN  SOP |
|---|---|---|
| 44. NURSE SIGNATURE  Terry Wade | 45. MEDIC NAME  Welshayt   BADGE 772 | 46. MEDIC NAME  Lewis   BADGE 650 |

DEMCA 1015DET          1ST COPY - DETROIT EMS     2ND - HOSPITAL     3RD CONTROL AUTHORITY     4TH - BILLING          REVISED 6/93

POOR QUALITY ORIGINAL

# REGISTER OF ACTIONS
## CASE NO. 13-012349-NF

| PARTY INFORMATION | |
|---|---|
| | |

| | | Lead Attorneys |
|---|---|---|
| Defendant | CITY OF DETROIT | Calvert A. Bailey<br>*Retained*<br>(313) 224-4550(W) |
| Plaintiff | JONES, SHERLANDA | Joseph Dedvukaj<br>*Retained*<br>(248) 352-2110(W) |

| EVENTS & ORDERS OF THE COURT |
|---|

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 09/23/2013 | Service Review Scheduled |
| 09/23/2013 | Status Conference Scheduled |
| 09/23/2013 | Complaint, Filed |
| 09/23/2013 | Case Filing Fee - Paid |
| 10/16/2013 | Miscellaneous Action |
| 12/16/2013 | Status Conference  (8:00 AM) (Judicial Officer Fresard, Patricia Perez) |
| |     *12/23/2013 Reset by Court to 01/03/2014* |
| |     *01/03/2014 Reset by Court to 12/16/2013* |
| | Result: Reviewed by Court |
| 12/16/2013 | Status Conference Scheduling Order, Signed and Filed (Judicial Officer: Fresard, Patricia Perez ) |
| 01/07/2014 | Closed/Final - Admin Clsng Due to Bankrpty, Signed and Filed (Judicial Officer: Fresard, Patricia Perez ) |
| 09/24/2014 | Miscellaneous Pleadings, Filed |
| 03/15/2016 | Miscellaneous Motion, Filed |
| 03/16/2016 | Praecipe, Filed (Judicial Officer: Fresard, Patricia Perez ) |
| 03/25/2016 | Motion Hearing  (9:00 AM) (Judicial Officer Fresard, Patricia Perez) |
| | Result: Held |
| 03/25/2016 | Motion for Miscellaneous Action Granted, Order to Follow (Judicial Officer: Fresard, Patricia Perez ) |
| 03/30/2016 | Ord to Lift Stay of Proceedings (Reopened), Signed and Filed |
| 04/21/2016 | Answer to Complaint, Filed |
| 05/25/2016 | Witness List, Filed |
| 05/25/2016 | Witness List, Filed |
| 07/13/2016 | Order Adjourning Mediation and Settlement Conference, S/F |
| 08/02/2016 | Case Evaluation - General Civil |
| 09/07/2016 | Settlement Conference  (10:30 AM) (Judicial Officer Fresard, Patricia Perez) |
| |     *08/09/2016 Reset by Court to 09/07/2016* |
| | Result: Held |
| 09/07/2016 | Closed - Case Settled, Order to Follow (Judicial Officer: Fresard, Patricia Perez ) |
| 12/14/2016 | Final - Order of Dismissal, Signed and Filed |

| FINANCIAL INFORMATION |
|---|

|  | | |
|---|---|---|
| **Plaintiff JONES, SHERLANDA** | | |
| Total Financial Assessment | | 20.00 |
| Total Payments and Credits | | 20.00 |
| Balance Due as of 03/10/2017 | | 0.00 |
| 03/15/2016 | Transaction Assessment | 20.00 |
| 03/15/2016 | Civil File & Serve Payment   Receipt # 2016-21946        JONES, SHERLANDA | (20.00) |

FILED

B10 (Official Form 10) (04/13)

**UNITED STATES BANKRUPTCY COURT**

2013 NOV 25 P 12: 28

PROOF OF CLAIM

U.S. BANKRUPTCY COURT
E.D. MICHIGAN—DETROIT

| | |
|---|---|
| Name of Debtor: City of Detroit, Michigan | Case Number: 13-538-46 |

**RECEIVED**

DEC 0 3 2013

KURTZMANCARSONCONSULTANTS

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Sherlanda Jones

Name and address where notices should be sent:
The Joseph Dedvukaj Firm P.C.
1277 W. Square LK Rd.
Bloomfield Hills, MI 48382

Telephone number: 248-852-2110    email: JDlawfirm@Aol.com

COURT USE ONLY

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):
— SAME AS Above —

Telephone number:    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed:    $ 16,000 According

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim:  PIP Claim
   (See instruction #2)

3. Last four digits of any number by which creditor identifies debtor: _____    3a. Debtor may have scheduled account as: _____ (See instruction #3a)    3b. Uniform Claim Identifier (optional): _____ (See instruction #3b)

4. **Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

Value of Property: $_____

Annual Interest Rate_____% ☐Fixed or ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$_____

Basis for perfection: _____

Amount of Secured Claim: $_____

Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:
$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Credits.** The amount of all payments on this claim has been credited for the purpose of

1353846131125000000028

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (*See instruction #7, and the definition of "redacted".*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**RECEIVED**

**DEC 0 3 2013**

**KURTZMANCARSONCONSULTANTS**

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor. ☐ I am the creditor's authorized agent. ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Joseph Dedvukaj

Title:

Company: The Joseph Dedvukaj Firm P.C.

Address and telephone number (if different from notice address above): 1277 W. Square LK Rd. Bloomfield Hills MI 48302

(Signature)     11-21-13 (Date)

Telephone number: 248-352-2110 email: JDlawfirm@Aol.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

RECEIVED

DEC 05 2016

CITY OF DETROIT
LAW DEPARTMENT
LITIGATION DIVISION

-----------------------------------------------x

In re

CITY OF DETROIT, MICHIGAN,

        Debtor.

-----------------------------------------------x

:
:
:
:
:
:
:
:
:
:
:

Chapter 9

Case No. 13-53846

Hon. Thomas J. Tucker

## AGREEMENT RESOLVING CLAIM OF SHERLANDA JONES

## THIS FORM IS FOR MOTOR VEHICLE CLAIMS ONLY

The City of Detroit (the "City") and the claimant identified in paragraph 3 below (the "Claimant" and, together with the City, the "Parties"), by and through their respective authorized representatives, do hereby agree as follows:

### RECITALS

  A.  On July 18, 2013, the City commenced the above-captioned case (the "Chapter 9 Case") by filing a petition for relief under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"). On December 5, 2013, following its determination that the City met all of the applicable requirements and is eligible to be a debtor under chapter 9 of the Bankruptcy Code, the Bankruptcy Court entered the Order for Relief Under Chapter 9 of the Bankruptcy Code (Docket No. 1946) with respect to the City.

  B.  Pursuant to section 904 of the Bankruptcy Code, the City may continue to exercise its political and governmental powers, manage its property and revenues and use and enjoy its income-producing property without interference from the Bankruptcy Court.

{K:\DOCS\LIT\NOSEJ\A32000\form\JN3098.DOC}

C. On December 24, 2013, the Bankruptcy Court entered the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims (Docket No. 2302) (the "ADR Order") establishing certain alternative dispute resolution procedures (collectively, the "ADR Procedures") to promote the resolution of certain claims designated by the City.

D. The Claimant is the current record holder of the proofs of claim identified under the heading "Filed Claim Number" in the table in paragraph 3 below (the "Filed Claims]").

E. The City (i) reviewed the Filed Claim[s] and the facts and circumstances of the alleged liabilities asserted therein and (ii) designated the Filed Claim[s] for potential resolution through the ADR Procedures.

F. The City believes that the resolution of the Filed Claim[s] as set forth in this Agreement is fair, reasonable and appropriate and will allow the Parties to avoid the cost, delay and burden of litigating potential disputes related to the Filed Claim[s]. In accordance with the ADR Order, the resolution of the Filed Claims set forth in this Agreement terminates the ADR Procedures with respect to the Filed Claims pursuant to section II.A.7 of the ADR Procedures.

G. Pursuant to section 904 of the Bankruptcy Code, the City is authorized to propose and enter into this Agreement without further order of the Bankruptcy Court.

H. The undersigned is authorized to enter into this Agreement on behalf of the City pursuant to a confidential memorandum dated March 25, 2014 that was issued to the City of Detroit Corporation Counsel by Kevyn Orr, Emergency Manager for the City of Detroit, entitled Litigation Claim Settlement Authority.

I. The Parties have agreed to the terms set forth in this Agreement, as indicated by the signatures of their respective authorized representatives below.

## AGREEMENT

1. The Claimant represents and warrants to the City that it has not sold, assigned, factored or otherwise transferred any portion of or interest in the Filed Claim[s] and is the sole holder of the Filed Claim[s], with full authority to enter into this Agreement. The Claimant further agrees to indemnify and hold the City harmless for any damages, including without limitation actual and reasonable out of pocket costs, resulting from a breach of its representations and warranties set forth in this paragraph.

2. The current version of the City's proposed Plan of Adjustment provides different payment provisions for each of the three following category of claims arising from operation of City motor vehicles: (1) claims for personal protection benefits as provided by MCL 500.3107 and MCL 500.3108, for which insurance coverage is required by MCL 500.3101(1), ("PPI Claims"); (2) tort claims permitted by MCL 500.3135, for which residual liability insurance coverage is required by MCL 500.3101(1) and MCL 500.3135, ("Tort Claims"); and (3) claims for property protection benefits under MCL 500.3121 and MCL 500.3123 ("Property Claims"). Accordingly, it is necessary that this Settlement Agreement properly identify each type of claim.

3. Each of the Filed Claim[s] is deemed amended, modified and allowed, and to be paid as a PPI Claim, a Tort Claim or a Property Claim, as the case may be, in accordance with, and subject to the treatment provided for claims of that type under, any chapter 9 plan for the adjustment of debts confirmed by the Bankruptcy Court (a "Plan"), (any such claim, a "Settled MVA Claim"), in the corresponding amount set forth in the table below under the heading "Settled MVA Claim Amount. " NOTE – if any bankruptcy claim combines two or more types of claims, the claims must be separated in the chart below:

| Claimant | Filed Claim Number | Filed Claim Amount | Filed MVA Claim Type – identify as a PPI, Tort or Property Claim | Settled MVA Claim Amount | Settled MVA Claim Type– identify as a PPI, Tort or Property Claim |
|---|---|---|---|---|---|
| Sherlanda Jones | 134 | Unliquidated | PPI | $26,750.00 | PPI |

For any Tort Claims listed, identify all other bankruptcy claims that arise out of the same motor vehicle accident: _____

_____.

4. The Parties agree that any Filed Claim identified in paragraph 3 above for which there is no corresponding Settled Claim (or such amount is listed as $0.00) is hereby withdrawn and deemed disallowed and expunged, pursuant to section 502 of the Bankruptcy Code.

5. The Claimant will not further amend the Filed Claim[s] (or the Settled MVA Claim[s]) or file any additional proofs of claim with respect to the liabilities asserted in the Filed Claim[s]. Any further amendments to the Filed Claims (or the Settled MVA Claims) or any additional claims filed by the Claimant or their successors or assigns with respect to the liabilities asserted in the Filed Claims shall be null, void and of no effect.

6. The Parties agree that any Settled MVA Claim shall be paid in accordance with, and subject to the treatment provided for claims of that type under, any chapter 9 plan for the adjustment of debts confirmed by the Bankruptcy Court (a "Plan").

7. Any distribution made to the Claimant pursuant to a Plan is referred to herein as a "Plan Distribution." If the Claimant or its successors or assigns receive payment of any portion of the Settled Claims from any source, including from the City, other than through the Plan (a "Non-Plan Payment"), the portion of the Settled MVA Claims equal to the amount of the Non-Plan Payments

shall be deemed fully satisfied, and the Claimant, for itself and any successors or assigns, hereby prospectively waives and disclaims the right to receive Plan Distributions on account of the portion of the Settled MVA Claims satisfied by any Non-Plan Payments.

8. Nothing in this Agreement will have any impact on any proof(s) of claim that the Claimant has filed or holds other than the Filed Claims. The Parties retain all of their respective claims, defenses, objections, counterclaims and any and all rights in respect of any proofs of claim that the Claimant has filed or holds other than the Filed Claims.

9. As to the Filed Claims and Settled MVA Claims described herein, the Claimant releases the City from any and all liability, actions, damages and claims (including claims for attorney fees, expert fees or court costs), known and unknown, arising or accruing at any time prior to and after the date of this Agreement, that the Claimant has or may have against the City; provided, however, for PPI Claims, Claimant does not release claims arising after July 18, 2013, except to the extent such claims have been paid. The Claimant acknowledges that this Agreement represents the compromise of a disputed claim and is not to be construed as an admission of liability on the part of the City. As used in this Agreement, the Claimant and the City include each of their respective servants, agents, contractors, attorneys, employees, representatives, family members, heirs, elected officials, appointed officials, related corporations, subsidiaries, divisions, affiliates, directors and officers, if any. Where required by the City, the Claimant has executed the Medicare Reporting and Indemnification Affidavit[s], if any, attached as Exhibit A.

10. The Claimant stipulates to the entry of an order dismissing with prejudice, and without costs or fees, any civil action[s] related to the Filed Claims or Settled Claims.

11. This Agreement may be executed in identical counterparts, and/or by facsimile or e-mail scan, each of which when so executed and delivered will constitute an original, but all of which taken

together will constitute one and the same instrument. This Agreement constitutes the entire agreement between the Parties with respect to the matters addressed herein and may not be modified except in a writing signed by the Parties.

WHEREFORE, the undersigned have executed this Agreement on behalf of the parties hereto.

City of Detroit

By: Krystal Crittendon

Name: _____
     (Signature)

Name: _____
     (printed)

Title: _____

Date:_____

Sherlanda Jones

*Sherlunda Jones*
Signature

Date: 9 - 28 - 16

Claimant(s) counsel:

Joseph Dedvukaj

*Joseph Dedvukaj*
Signature
P-51335

Name: Joseph Dedvukaj
     (printed)

Date: 9/29/16

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

TIMOTHY JOHNSON,

        Plaintiff,

vs.                                   Case No. 14-     -NF
                                        HON.

MICHIGAN ASSIGNED CLAIM PLAN,

        Defendant.

_____/

THOMAS B. CALCATERA (P30326)
Attorneys for Plaintiff
BERNSTEIN & BERNSTEIN
18831 W. Twelve Mile Rd.
Lathrup Village, MI 48076
(248) 350-3700

_____/

14-002056-NF
FILED IN MY OFFICE
WAYNE COUNTY CLERK
2/18/2014 2:00:35 PM
CATHY M. GARRETT

        There is now on file in this court a civil action between these parties or other parties arising out of the same transaction or occurrence as alleged in the complaint. The action is pending and is No. 13-004981 NI. The action was assigned to Judge Daphne Means Curtis.

BERNSTEIN AND BERNSTEIN

By: /s/ *Thomas B. Calcatera*
        Thomas B. Calcatera (P30326)

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

     NOW COMES Plaintiff, TIMOTHY JOHNSON, by and through his attorneys, BERNSTEIN & BERNSTEIN, and for his cause of action as against Defendant, MICHIGAN ASSIGNED CLAIM PLAN, states as follows:

     1.    That Plaintiff is a resident of the City of Detroit, County of Wayne and State of Michigan.

     2.    That Defendant, MICHIGAN ASSIGNED CLAIM PLAN, is an entity licensed to conduct business in the State of Michigan, and conducts business in the County of

Wayne, and State of Michigan.

3.     That Plaintiff, TIMOTHY JOHNSON, was involved in a motor vehicle accident on the 26th day of July 2012, under the circumstances so as to make the Defendant responsible for payment of no-fault benefits.

4.     That Plaintiff submitted his claim for No Fault Benefits to the City of Detroit and the city filed bankruptcy.

5.     That as of the date of this Complaint, the Defendant has failed, refused and/or neglected to make proper payment of all no-fault benefits to Plaintiff.

6.     That due to Defendant's failure to make proper payment of all no-fault benefits, Plaintiff has obtained the services of an attorney and will become obligated to make payment of an attorney's fee.

7.     That the amount in controversy exceeds the sum of Twenty-Five Thousand Dollars ($25,000.00).

WHEREFORE, Plaintiff, TIMOTHY JOHNSON, claims damages and judgment as against the Defendant, MICHIGAN ASSIGNED CLAIM PLAN, in an amount to fairly and adequately compensate her for the amount due and owing pursuant to said policy of insurance mentioned herein as well as pursuant to Public Act No. 294 of 1972, together with costs, interest and fees, for which Plaintiff brings suit.

BERNSTEIN & BERNSTEIN

BY: /s/ Thomas B. Calcatera
THOMAS B. CALCATERA (P30326)
Attorney for Plaintiff
18831 W. Twelve Mile Rd
Lathrup Village, MI 48076
(248) 350-3700

Dated: February 18, 2014

2

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

TIMOTHY JOHNSON,

        Plaintiff,

vs.

MICHIGAN ASSIGNED CLAIM PLAN,

        Defendant.

Case No. 14-    -NF

HON.

_____/

THOMAS B. CALCATERA (P30326)
Attorneys for Plaintiff
BERNSTEIN & BERNSTEIN
18831 W. Twelve Mile Rd.
Lathrup Village, MI 48076
(248) 350-3700

_____/

## DEMAND FOR TRIAL BY JURY

    NOW COMES Plaintiff, TIMOTHY JOHNSON, by and through his attorneys, BERNSTEIN & BERNSTEIN, and hereby requests a trial by jury of the above-captioned matter.

                         BERNSTEIN & BERNSTEIN

                         BY: /s/ *Thomas B. Calcatera*
                         THOMAS B. CALCATERA (P30326)
                         Attorney for Plaintiff
                         18831 W. Twelve Mile Rd
                         Lathrup Village, MI 48076
                         (248) 350-3700

Dated: February 18, 2014

3

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

TIMOTHY JOHNSON,

        Plaintiff,

vs.                                      Case No. 14-     -NF
                                                 HON.

MICHIGAN ASSIGNED CLAIM PLAN,

        Defendant.

_____/

THOMAS B. CALCATERA (P30326)
Attorneys for Plaintiff
BERNSTEIN & BERNSTEIN
18831 W. Twelve Mile Rd.
Lathrup Village, MI 48076
(248) 350-3700

_____/

### PLAINTIFF'S PRELIMINARY WITNESS LIST

      NOW COME the above named Plaintiff, TIMOTHY JOHNSON, by and through his attorneys, BERNSTEIN & BERNSTEIN, and for his Preliminary Witness List may call at the time of trial one or more of the following witnesses:

      1.     All treating physicians;

      2.     All treating nurses;

      3.     All x-ray technicians;

      4.     All physical therapists;

      5.     All records custodian of any hospitals or doctors that have seen Plaintiff;

      6.     All investigating police officers;

      7.     All witnesses listed in any police or incident report;

      8.     Record custodians of any police or investigating agency;

      9.     All parties to the lawsuit including employees; if any;

4

10.      All personnel from Plaintiff's insurance carrier;

11.      All treating physicians or professionals;

12.      All examining physicians or professionals;

13.      All treating hospitals or clinics;

14.      Any and all individuals and institutions named in discovery material;

15.      All witnesses listed by any party at any time;

16.      All eye witnesses to the incident/accident;

17.      Records custodians for all individuals or institutions listed;

18.      Any and all rebuttal witnesses;

19.      All doctors or others whose names appear in deposition taken in this cause;

20.      Plaintiff reserves the right to amend this Witness List and to add individuals or institutions or others made known through investigation and discovery.

BERNSTEIN & BERNSTEIN

BY: /s/ *Thomas B. Calcatera*
THOMAS B. CALCATERA (P30326)
Attorney for Plaintiff
18831 W. Twelve Mile Rd
Lathrup Village, MI 48076
(248) 350-3700

Dated: February 18, 2014

5

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

WAYNE SIMS,

Plaintiff,

vs.

MICHIGAN ASSIGNED CLAIM PLAN,

Defendant.

_____/

Case No. 14-          -NF
HON.

14-002075-NF
FILED IN MY OFFICE
WAYNE COUNTY CLERK
2/18/2014 2:56:06 PM
CATHY M. GARRETT

THOMAS B. CALCATERA (P30326)
Attorneys for Plaintiff
BERNSTEIN & BERNSTEIN
18831 W. Twelve Mile Rd.
Lathrup Village, MI 48076
(248) 350-3700

_____/

There is now on file in this court a civil action between these
parties or other parties arising out of the same transaction or
occurrence as alleged in the complaint. The action is pending
and is No. 12-012568 NI. The action was assigned to Judge
Robert Ziolkowski.

BERNSTEIN AND BERNSTEIN

By:   /s/   *Thomas B. Calcatera*

Thomas B. Calcatera (P30326)

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, WAYNE SIMS, by and through his attorneys, BERNSTEIN

& BERNSTEIN, and for his cause of action as against Defendant, MICHIGAN ASSIGNED

CLAIM PLAN, states as follows:

1.      That Plaintiff is a resident of the City of Detroit, County of Wayne and State

of Michigan.

2.      That Defendant, MICHIGAN ASSIGNED CLAIM PLAN, is an entity licensed

to conduct business in the State of Michigan, and conducts business in the County of

Wayne, and State of Michigan.

3.     That Plaintiff, WAYNE SIMS, was involved in a motor vehicle accident on the 18th day of June 2012, under the circumstances so as to make the Defendant responsible for payment of no-fault benefits.

4.     That Plaintiff submitted his claim for No Fault Benefits to the City of Detroit and the city filed bankruptcy.

5.     That as of the date of this Complaint, the Defendant has failed, refused and/or neglected to make proper payment of all no-fault benefits to Plaintiff.

6.     That due to Defendant's failure to make proper payment of all no-fault benefits, Plaintiff has obtained the services of an attorney and will become obligated to make payment of an attorney's fee.

7.     That the amount in controversy exceeds the sum of Twenty-Five Thousand Dollars ($25,000.00).

WHEREFORE, Plaintiff, WAYNE SIMS, claims damages and judgment as against the Defendant, MICHIGAN ASSIGNED CLAIM PLAN, in an amount to fairly and adequately compensate her for the amount due and owing pursuant to said policy of insurance mentioned herein as well as pursuant to Public Act No. 294 of 1972, together with costs, interest and fees, for which Plaintiff brings suit.

BERNSTEIN & BERNSTEIN

BY: /s/ *Thomas B. Calcatera*
THOMAS B. CALCATERA (P30326)
Attorney for Plaintiff
18831 W. Twelve Mile Rd
Lathrup Village, MI 48076
(248) 350-3700

Dated: February 18, 2014

2

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

WAYNE SIMS,

        Plaintiff,

vs.                                    Case No.  14-     -NF
                                            HON.

MICHIGAN ASSIGNED CLAIM PLAN,

        Defendant.

_____/

THOMAS B. CALCATERA (P30326)
Attorneys for Plaintiff
BERNSTEIN & BERNSTEIN
18831 W. Twelve Mile Rd.
Lathrup Village, MI 48076
(248) 350-3700

_____/

## DEMAND FOR TRIAL BY JURY

      NOW COMES Plaintiff, WAYNE SIMS, by and through his attorneys, BERNSTEIN

& BERNSTEIN, and hereby requests a trial by jury of the above-captioned matter.

                                   BERNSTEIN & BERNSTEIN


                                   BY: /s/ *Thomas B. Calcatera*
                                     THOMAS B. CALCATERA (P30326)
                                     Attorney for Plaintiff
                                     18831 W. Twelve Mile Rd
                                     Lathrup Village, MI 48076
                                     (248) 350-3700

Dated:  February 18, 2014

3

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

WAYNE SIMS,

        Plaintiff,

vs.                                    Case No. 14-     -NF
                                           HON.

MICHIGAN ASSIGNED CLAIM PLAN,

        Defendant.

_____/

THOMAS B. CALCATERA (P30326)
Attorneys for Plaintiff
BERNSTEIN & BERNSTEIN
18831 W. Twelve Mile Rd.
Lathrup Village, MI 48076
(248) 350-3700

_____/

## PLAINTIFF'S PRELIMINARY WITNESS LIST

    NOW COME the above named Plaintiff, WAYNE SIMS, by and through his attorneys, BERNSTEIN & BERNSTEIN, and for his Preliminary Witness List may call at the time of trial one or more of the following witnesses:

1. All treating physicians;

2. All treating nurses;

3. All x-ray technicians;

4. All physical therapists;

5. All records custodian of any hospitals or doctors that have seen Plaintiff;

6. All investigating police officers;

7. All witnesses listed in any police or incident report;

8. Record custodians of any police or investigating agency;

9. All parties to the lawsuit including employees; if any;

4

10. All personnel from Plaintiff's insurance carrier;

11. All treating physicians or professionals;

12. All examining physicians or professionals;

13. All treating hospitals or clinics;

14. Any and all individuals and institutions named in discovery material;

15. All witnesses listed by any party at any time;

16. All eye witnesses to the incident/accident;

17. Records custodians for all individuals or institutions listed;

18. Any and all rebuttal witnesses;

19. All doctors or others whose names appear in deposition taken in this cause;

20. Plaintiff reserves the right to amend this Witness List and to add individuals or institutions or others made known through investigation and discovery.

BERNSTEIN & BERNSTEIN


BY: /s/ *Thomas B. Calcatera*
THOMAS B. CALCATERA (P30326)
Attorney for Plaintiff
18831 W. Twelve Mile Rd
Lathrup Village, MI 48076
(248) 350-3700

Dated: February 18, 2014

5

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

DERRICK PHILLIPS,

        Plaintiff,

vs.

MICHIGAN ASSIGNED CLAIM PLAN,

        Defendant.

_____/

THOMAS B. CALCATERA (P30326)
Attorneys for Plaintiff
BERNSTEIN & BERNSTEIN
18831 W. Twelve Mile Rd.
Lathrup Village, MI 48076
(248) 350-3700

_____/

Case No. 14-    -NF
HON.

14-002060-NF
FILED IN MY OFFICE
WAYNE COUNTY CLERK
2/18/2014 2:10:23 PM
CATHY M. GARRETT

        There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this court.

        BERNSTEIN AND BERNSTEIN

        By:___/s/___*Thomas B. Calcatera*___
           Thomas B. Calcatera (P30326)

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

    NOW COMES Plaintiff, DERRICK PHILLIPS, by and through his attorneys,

BERNSTEIN & BERNSTEIN, and for his cause of action as against Defendant, MICHIGAN

ASSIGNED CLAIM PLAN, states as follows:

    1.    That Plaintiff is a resident of the City of Detroit, County of Wayne and State

of Michigan.

    2.    That Defendant, MICHIGAN ASSIGNED CLAIM PLAN, is an entity licensed

to conduct business in the State of Michigan, and conducts business in the County of Wayne, and State of Michigan.

3.      That Plaintiff, DERRICK PHILLIPS, was involved in a motor vehicle accident on the 20th day of December 2012, under the circumstances so as to make the Defendant responsible for payment of no-fault benefits.

4.      That Plaintiff submitted his claim for No Fault Benefits to the City of Detroit and the city filed bankruptcy.

5.      That as of the date of this Complaint, the Defendant has failed, refused and/or neglected to make proper payment of all no-fault benefits to Plaintiff.

6.      That due to Defendant's failure to make proper payment of all no-fault benefits, Plaintiff has obtained the services of an attorney and will become obligated to make payment of an attorney's fee.

7.      That the amount in controversy exceeds the sum of Twenty-Five Thousand Dollars ($25,000.00).

WHEREFORE, Plaintiff, DERRICK PHILLIPS, claims damages and judgment as against the Defendant, MICHIGAN ASSIGNED CLAIM PLAN, in an amount to fairly and adequately compensate her for the amount due and owing pursuant to said policy of insurance mentioned herein as well as pursuant to Public Act No. 294 of 1972, together with costs, interest and fees, for which Plaintiff brings suit.

BERNSTEIN & BERNSTEIN

BY: /s/ Thomas B. Calcatera
THOMAS B. CALCATERA (P30326)
Attorney for Plaintiff
18831 W. Twelve Mile Rd
Lathrup Village, MI 48076
(248) 350-3700

Dated: February 18, 2014

2

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

DERRICK PHILLIPS,

        Plaintiff,

vs.

Case No. 14-    -NF
HON.

MICHIGAN ASSIGNED CLAIM PLAN,

        Defendant.

_____/

THOMAS B. CALCATERA (P30326)
Attorneys for Plaintiff
BERNSTEIN & BERNSTEIN
18831 W. Twelve Mile Rd.
Lathrup Village, MI 48076
(248) 350-3700

_____/

### DEMAND FOR TRIAL BY JURY

    NOW COMES Plaintiff, DERRICK PHILLIPS, by and through his attorneys, BERNSTEIN & BERNSTEIN, and hereby requests a trial by jury of the above-captioned matter.

                                 BERNSTEIN & BERNSTEIN

                                BY: /s/ *Thomas B. Calcatera*
                                 THOMAS B. CALCATERA (P30326)
                                 Attorney for Plaintiff
                                 18831 W. Twelve Mile Rd
                                 Lathrup Village, MI 48076
                                 (248) 350-3700

Dated: February 18, 2014

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

DERRICK PHILLIPS,

        Plaintiff,

vs.                                   Case No. 14-     -NF
                                        HON.

MICHIGAN ASSIGNED CLAIM PLAN,

        Defendant.

_____/

THOMAS B. CALCATERA (P30326)
Attorneys for Plaintiff
BERNSTEIN & BERNSTEIN
18831 W. Twelve Mile Rd.
Lathrup Village, MI 48076
(248) 350-3700

_____/

### PLAINTIFF'S PRELIMINARY WITNESS LIST

    NOW COME the above named Plaintiff, DERRICK PHILLIPS, by and through his
attorneys, BERNSTEIN & BERNSTEIN, and for his Preliminary Witness List may call at the
time of trial one or more of the following witnesses:

    1.    All treating physicians;

    2.    All treating nurses;

    3.    All x-ray technicians;

    4.    All physical therapists;

    5.    All records custodian of any hospitals or doctors that have seen Plaintiff;

    6.    All investigating police officers;

    7.    All witnesses listed in any police or incident report;

    8.    Record custodians of any police or investigating agency;

    9.    All parties to the lawsuit including employees; if any;

4

10. All personnel from Plaintiff's insurance carrier;

11. All treating physicians or professionals;

12. All examining physicians or professionals;

13. All treating hospitals or clinics;

14. Any and all individuals and institutions named in discovery material;

15. All witnesses listed by any party at any time;

16. All eye witnesses to the incident/accident;

17. Records custodians for all individuals or institutions listed;

18. Any and all rebuttal witnesses;

19. All doctors or others whose names appear in deposition taken in this cause;

20. Plaintiff reserves the right to amend this Witness List and to add individuals or institutions or others made known through investigation and discovery.

BERNSTEIN & BERNSTEIN

BY: /s/ *Thomas B. Calcatera*
THOMAS B. CALCATERA (P30326)
Attorney for Plaintiff
18831 W. Twelve Mile Rd
Lathrup Village, MI 48076
(248) 350-3700

Dated: February 18, 2014

5

```
 1                  UNITED STATES BANKRUPTCY COURT
                    EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3   IN THE MATTER OF,              Case No. 13-53846
                                   Detroit, Michigan
 4   CITY OF DETROIT, MICHIGAN     November 16, 2016
     _____/    1:35 p.m.
 5

      IN RE:  [#11624] MOTION TO DETERMINE RIGHTS TO CLAIM NUMBER
 6   201, [#11623] OBJECTION TO CLAIM OF GENERAL SHALE BRICK, CO.,
     [#11620] OBJECTION TO CLAIM OF CLAIMANT STEVEN WOLAK, [#11357]
 7    MOTION TO ENFORCE ORDER, PURSUANT TO SECTIONS 105, 501, AND
       503 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND
 8   3003(c), ESTABLISHING BAR DATES FOR FILING OF PROOFS OF CLAIM
     AND APPROVING FORM AND MANNER OF NOTICE THEREOF AGAINST DANNY
 9   CROWELL, LEOTA MURPHY AND JASMINE CROWELL, [#11583] MOTION TO
      ENFORCE ORDER, PURSUANT TO SECTIONS 105, 501, AND 503 OF THE
10       BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND 3003(c),
        ESTABLISHING BAR DATES FOR FILING OF PROOFS OF CLAIM AND
11      APPROVING FORM AND MANNER OF NOTICE THEREOF AGAINST NAJIB
     HODGE, AND [#11399] FORTY-SEVENTH OMNIBUS OBJECTION TO CERTAIN
12    NO BASIS CLAIMS, REGARDING CLAIM #785 OF BEATRICE MCQUEEN
                  BEFORE THE HONORABLE THOMAS J. TUCKER
13               TRANSCRIPT ORDERED BY: ROBIN WYSOCKI

14   APPEARANCES:

15   For the City of Detroit:    RONALD SPINNER, ESQ. (P73198)
                                 MARC SWANSON, ESQ. (P71149)
16                               JOHN WILLEMS, ESQ. (P31`861)
                                 Miller, Canfield, Paddock &
17                               Stone
                                 150 West Jefferson
18                               Suite 2500
                                 Detroit, MI 48226
19                               313-496-7829

20   For Michael Beydoun:        RAYMOND GUZALL, ESQ. (P60980)
                                 Raymond Guzall, III, P.C.
21                               31555 W. 14 Mile Road
                                 Suite 320
22                               Farmington Hills, MI 48334
                                 248-702-6211
23

24

25
```

```
 1  For Trustee Karen Evangelista: RICHARDO KILPATRICK, ESQ.
                                     (P35275)
 2                                   Kilpatrick & Associates, P.C.
                                     903 North Opdyke Road
 3                                   Suite C
                                     Auburn Hills, MI 48326
 4                                   248-377-0700

 5  For Kajy Development:            AFAN BAPACKER, ESQ. (P70885)
                                     The Law Offices of
 6                                   Afan Bapacker, P.C.
                                     16030 Michigan Avenue
 7                                   Suite 220
                                     Dearborn, MI 48126
 8                                   313-646-8070

 9  For General Shale Brick, Inc.: JOHN COLUCCI, ESQ. (P40716)
                                     Law Offices of John Colucci
10                                   33659 Angeline
                                     Livonia, MI 48150
11                                   734-956-0660

12  For Najib Hodge:                 DOUGLAS DEMPSEY, ESQ. (P41532)
                                     The Law Office of Joumana
13                                   Kayrouz, PLLC
                                     1000 Town Center
14                                   Suite 800
                                     Southfield, MI 48075
15                                   248-557-3645

16  For Steven Wolak, as Personal  STEPHANIE ARNDT, ESQ. (P66870)
    Representative of the Estate     Fieger Law
17  of Christopher Wolak, Deceased  19390 West 10 Mile Road
                                     Southfield, MI 48075
18                                   248-355-5555

19  For Cromwell and Murphy:         JOSEPH DEDVUKAJ, ESQ. (P51335)
                                     The Joseph Dedvukaj Firm, P.C.
20                                   1277 West Square Lake Road
                                     Bloomfield Hills, MI 48302-0845
21
    PRESENT:                         Beatrice McQueen
22
    Court Recorder:                  Jamie Laskaska
23
    Transcriber:                     Deborah L. Kremlick
24
    Proceedings recorded by electronic sound recording, transcript
25  produced by transcription service.
```

1          (Court in Session)

2          THE CLERK:  Please rise.  This Court is back in

3    session.  You may be seated.  The Court will call the matter

4    of the City of Detroit, Michigan, 13-53846.

5          THE COURT:  All right.  Good afternoon, everyone.

6    Let's have entries of appearance for the record, please,

7    starting with the City of Detroit attorneys.

8          MR. SWANSON:  Good afternoon, Your Honor.  Marc

9    Swanson on behalf of the city.

10          MR. WILLEMS:  Good afternoon, Your Honor.  John

11    Willems also on behalf of the city.

12          MR. SPINNER:  Good afternoon.  Ron Spinner on behalf

13    of the city.

14          THE COURT:  All right.  Any other attorneys present

15    who want to enter appearances.

16          MR. GUZALL: Good afternoon, Your Honor.  Raymond

17    Guzall on behalf of Michael Beydoun.

18          MR. KILPATRICK:  Good afternoon, Your Honor.

19    Richardo Kilpatrick on behalf of the trustee for the Steven

20    Wolak estate, Karen Evangelista.

21          MR. BAPACKER:  Good afternoon, Your Honor.  Afan

22    Bapacker on behalf of Kajy Development, LLC.

23          MR. COLUCCI:  John Colucci appearing on behalf of

24    General Shale Brick Company.

25          THE COURT:  I'm sorry, your last name again, sir

1          MR. COLUCCI:  Colucci, John Colucci, C-o-l-u-c-c-i.

2          THE COURT:  General -- on behalf of General Shale.

3  All right.  Thank you.  Others?  Anyone else?

4      All right.  Well, good morning to -- or good afternoon

5  rather to everyone.  We have of course several matters

6  scheduled for hearing today, or further hearing in some cases

7  today.

8      Let me first address a question to counsel for the City

9  of Detroit.  I have in mind an order in which I'd like to hear

10  these matters, but I'm open to suggestions from anyone on what

11  -- if something -- some order that might make more sense.  But

12  I think the first thing I want to -- to find out is whether

13  any of these matters are settled or resolved, the matters

14  scheduled for today.

15          MR. WILLEMS:  Your Honor, if I may.  I'm here on the

16  McQueen claim.

17          THE COURT:  Yes.

18          MR. WILLEMS:  And that has not been settled.  Ms.

19  McQueen is in the courtroom and it's probably the simplest of

20  the matters before you today, so --

21          THE COURT:  I had in mind calling that first.

22          MR. WILLEMS:  Okay.

23          THE COURT:  For that reason, but we'll see if it's

24  so simple.  But are any matters settled, that's what I'm

25  asking.

1          MR. WILLEMS:  No, Your Honor.  Beydoun may be

2    settled to a certain extent, but I think we're going to still

3    have to have the Court resolve certain issues.

4          THE COURT:  All right.

5          MR. COLUCCI:  With respect to General Shale, I

6    believe there's general agreement on the disposition of both

7    the claim objection and the motion relative to distribution.

8          THE COURT:  All right.  First thing we'll hear then,

9    and -- and, you know, I -- I will start with as the first

10   matter that we're going to hear, the further hearing on the

11   objection to the -- by the city to the claim of Beatrice

12   McQueen which is part of the forty-seventh omnibus objection

13   to claims.  Let's hear from the parties and counsel on that.

14   Ms. McQueen, if you're here, come on up.

15       All right.  So Ms. McQueen, would you enter your

16   appearance for the record, please.

17          MS. MCQUEEN:  Beatrice McQueen.

18          THE COURT:  All right.  Good afternoon and welcome

19   back, Ms. McQueen.  And Mr. Willems, you're going to speak for

20   the city on this one?

21          MR. WILLEMS:  Yes, I am, Your Honor.

22          THE COURT:  All right.  I had thought this would be

23   settled, or had been settled based on the city's most recent

24   filing that was -- the supplemental reply filed October 12,

25   docket number 11617 and the attached proposed stipulation and

1 order to resolve this dispute.  But if it's not resolved, Mr.

2 Willems, let me start with you.  Why not?

3          MR. WILLEMS:  Well, we made the proposal to Ms.

4 McQueen to allow the claim at the amount that she valued it at

5 which is $3,968.  I'm speaking here about proof of claim

6 number 785.  And that it be allowed as a Class 15 convenience

7 claim.

8       And we did send her a -- a letter proposing that with an

9 attached stipulation and order.  As you may recall, there was

10 another claimant wrapped up in this, Ms. Dinah Bolton.

11          THE COURT:  I do recall.  That one settled.  This

12 one apparently is not yet.

13          MR. WILLEMS:  That one settled.  And I had a

14 conversation with Ms. McQueen's daughter, the -- at the time

15 of the last hearing when they asked for an adjournment for Ms.

16 McQueen to today.  And went over that with her and she

17 declined to accept the offer.  So that's how we ended up here

18 today.

19          THE COURT:  All right.  Ms. McQueen, I'd like to

20 hear from you about this.  The city -- maybe I'm missing

21 something, but the city in their October 12 supplement, or

22 supplemental reply that they filed in -- in addressing your

23 objection to your claim and in the proposed stipulation and

24 order they attached, they seemed to give you what you want.

25 They -- they give you an allowed claim in the full amount of

1 your claim. So why are we here today?

2       MS. MCQUEEN: Because to my understanding -- first I

3 apologize I wasn't here, I had a stroke. But --

4       THE COURT: I'm sorry about that. I hope you're

5 doing well, doing better.

6       MS. MCQUEEN: I'm doing better.

7       THE COURT: All right. Yeah, we adjourned the last

8 hearing because of that, so go ahead.

9       MS. MCQUEEN: Right. So I'm -- to my understanding

10 the reason that we declined it because from what he explained

11 to me, it would be issued out to me over years in bonds and

12 not in money. So that's why it was declined.

13       THE COURT: Well, what the city is proposing or has

14 proposed in their October 12 paper is not -- I think you're

15 thinking of this -- what would happen if this claim were

16 treated as a Class 14 claim, general unsecured claim rather

17 than a Class 15 under the confirmed plan of adjustment Class

18 15, so-called convince claims they're called, but Class 15

19 claims are paid in cash but only -- but at 25% of the allowed

20 amount. Correct, Mr. Willems?

21       MR. WILLEMS: That's correct, Your Honor.

22       THE COURT: All right.

23       MR. WILLEMS: And if I may, the -- the explanation

24 apparently got garbled somehow because that's not what I told

25 her daughter, that's not what's in our letter, and it's not

1  what I told her today.

2      THE COURT:  Well, in any case, Ms. McQueen, there's

3  not going to be any bonds, payment through any bonds involved

4  in -- in the treatment of your payment of your claim.

5      MS. MCQUEEN:  Okay.

6      THE COURT:  Under the proposed treatment that the

7  city has in their stipulation and order, they propose to allow

8  your claim in the full amount of the claim.

9      MS. MCQUEEN:  Okay.

10     THE COURT:  Classified as a Class 15 convenience

11  claim.  And then under the confirmed plan, a claim that falls

12  into that category is paid in cash, 25% of the allowed amount

13  of the claim.  Did you read the stipulation and order that was

14  attached to the October 12 filing the city filed?

15     MS. MCQUEEN:  Yes, I did.

16     THE COURT:  All right.  Well, you know, you don't

17  have to agree to it, but the question is, what is -- if you

18  don't agree to that, what is the -- what are you disputing

19  still?

20     MS. MCQUEEN:  Because I'm -- I'm still not clear on

21  what -- what they're trying to give me.  It doesn't -- okay.

22  In one instance it says you giving me the full amount, and

23  then on the other hand it says you giving me 25% of the

24  amount.  I don't understand.

25     THE COURT:  Well, there's two different things.  One

1  is what is the allowed amount of your claim.  Now you filed

2  your claim, your proof of claim number 785 in the amount of

3  $3,968.

4          MS. MCQUEEN:  Yes.

5          THE COURT:  The city proposes to agree to -- to that

6  being the allowed amount of your claim.

7          MS. MCQUEEN:  Okay.

8          THE COURT:  And then the question is well, okay,

9  that's an allowed claim in that amount 3,968.  Now how is it

10 treated -- how must it be treated under the confirmed plan of

11 adjustment.

12     And there are many classes of claims, but the -- the

13 primary classes of unsecured claims are Class 14 and Class 15.

14 Class 15 the so-called convenience claims are claims that I

15 believe the -- the claims that are allowed in the amount of

16 what is it, $25,000 or less, I believe.

17         MR. WILLEMS:  That's correct, Your Honor.

18         THE COURT:  Yeah.  As to those the confirmed plan of

19 adjustment, Class 15 claims, says those claims will be paid in

20 cash at the -- at a rate of 25% of the allowed amount of the

21 claim.

22     So you have your allowed amount of the claim is 3,968

23 which is the amount that you -- full amount you put in your

24 proof of claim.  The actual payment to you on that allowed

25 claim will be 25% of that in cash which the city calculates at

1 | $992.50.

2 | So there's two different things.  One is how much is the

3 | allowed amount of your claim and the other thing is how much

4 | are you actually going to be paid on that allowed claim.  And

5 | the answer to that is, 25% of the allowed amount or $992.50.

6 | Does that answer your question?

7 | MS. MCQUEEN:  It does answer my question, but I

8 | don't agree.  I mean because that was time that I put in with

9 | the city.  That was my bank time so why wouldn't I get all of

10 | my money from my bank time.

11 | Plus I filed this before bankruptcy.  So and it had went

12 | to agreements.  And it was said that I would be awarded that.

13 | So why is it now that I wouldn't get my full amount and only

14 | get 900.  How would -- how could they break that down like

15 | that?

16 | THE COURT:  The answer to that is because that's

17 | what the confirmed plan of adjustment says.  And that plan is

18 | binding on everyone, the city and all creditors, including

19 | you.  That's the answer.

20 | Not all -- lots of claims or most claims are being paid

21 | at less than 100% of the amount of the claim that's allowed.

22 | That's -- that's the nature of bankruptcy and what happens in

23 | most bankruptcy cases.

24 | And in this case we have a confirmed plan that is binding

25 | on everyone including you and this is the class that it

1 appears to me where your claim belongs.  And -- and Class 15

2 and so that's what the plan provides.  That's the answer.  So

3 you're -- you're -- I don't know what else I can say about it.

4          MS. MCQUEEN:  But I wasn't -- but I filed before the

5 bankruptcy.

6          THE COURT:  All right.  Well, that doesn't matter.

7          MS. MCQUEEN:  So why they are being allowed to put

8 me in bankruptcy.

9          THE COURT:  Doesn't matter.  If it's a claim that

10 arises before the filing of the bankruptcy that's just the

11 type of claim that is treated and in the -- the bankruptcy

12 plan that was confirmed.

13      So the question is, do you want to say anything else

14 about this.  And you don't have to agree to anything.  You can

15 say I disagree and I don't think it's right.

16          MS. MCQUEEN:  I don't.

17          THE COURT:  Whatever you want.  But do you want to

18 say anything else though and then I'm going to make a ruling

19 here.

20          MS. MCQUEEN:  I just disagree.

21          THE COURT:  All right.  Well, the city has modified

22 its forty-seventh omnibus objection with respect to the claim

23 of Beatrice McQueen, claim 785 to improve the treatment of the

24 claim and the city's proposal as reflected in the -- and

25 request of the Court as I understand it is reflected in the

1  October 12, 2016 supplemental reply filed by the city at

2  docket 11617 is that Ms. McQueen's claim be allowed in the

3  full amount of the claim.

4       And so the city basically has -- has agreed to the amount

5  of the claim, the allowed amount of the claim as the amount

6  that's in the proof of claim that Ms. McQueen filed.  And the

7  city proposes that that claim be classified and treated as a

8  Class 15 convenience claim under the confirmed plan of

9  adjustment and I -- I -- in my view that's absolutely correct

10  and that's how it should be classified and treated.

11       And that means that the claim will be paid at 25% in cash

12  of the allowed amount of the claim.  So the proposed order

13  that was attached to the City of Detroit's supplemental reply

14  filed October 12 is in substance what the Court will enter and

15  in its ruling on this objection to the claim of Ms. McQueen.

16       The claim will be allowed as a Class 15 convenience claim

17  in the allowed amount of $3,968 and paid in cash at 25% of

18  that which means $992.00.  And that's required under the

19  city's confirmed plan of adjustment.

20       So that's the ruling.  Mr. Willems, I'll ask you to

21  please submit that proposed order that was attached to the --

22  as one of the exhibits to the October 12 filing.  I'll make

23  some revisions, non-substantive revisions in it to reflect

24  today's hearing and the ruling today and so forth.  But the --

25  the substance will be what was proposed in -- in that

1   document.  Any questions about the order needed to be

2   submitted?

3          MR. WILLEMS:  I do not have any questions, Your

4   Honor.

5          THE COURT:  All right.  I will -- I'll waive

6   presentment of that order and that's the ruling on this

7   matter.  Thank you all.

8          MR. WILLEMS:  Thank you, Your Honor.

9          THE COURT:  All right.  The next matter I want to

10  hear -- actually there's two matters that should be heard

11  together I think logically.  And that is the -- the city's

12  motion at docket 11624 to determine rights to claim number 201

13  filed by -- filed by Michael Beydoun.  And also the city's

14  objection to the claim of General Shale Brick Company which is

15  docket 11623.

16     These items -- these matters are obviously related so I

17  want to hear them together.  So who's going to speak for the

18  city on these matters?  Mr. Spinner.

19         MR. SPINNER:  Good afternoon, Your Honor.  Ron

20  Spinner on behalf of the city.

21     Your Honor, this started out as a somewhat complex matter

22  as you probably read, all these papers.  We started off by

23  filing an objection to claim number 201, that's at docket

24  11662 held by Mr. Beydoun.  An objection to claim 1075 as was

25  at docket 11623 filed by General Shale Brick.  Then we filed a

1  motion to determine rights to claim 201.  And that was filed

2  at 11624.

3      The underlying gravamen is that there is a claim, there

4  are competing claimants for that claim, and our goal was to

5  try to resolve that in a manner that is both consistent with

6  the law and is also as -- as least burdensome for the city and

7  the Court as possible.

8      In response to claim 201, the objection was basically --

9  had to do with the calculation of interest.  There was no

10  objection -- response to that objection, so the Court allowed

11  that, sustained that objection at 11664.  That matter is

12  therefore not up today.

13      General Shale Brick, the holder of claim 1075 filed a

14  response to the city's objection to that claim, docket number

15  11646.  The subject matter of the dispute was really the --

16  the legal treatment of the claim, 1075.  We felt -- or General

17  Shale Brick as I understand it filed it in support of a

18  garnishment that it had in 2001, Mr. Beydoun's property.

19      The city's take is that because it's seeking property of

20  Mr. Beydoun and not of the city, no claim was necessary and no

21  claim should be allowed on that behalf.  General Shale Brick

22  had a slightly different take on that.

23      But the net result of the filings at 11646 by General

24  Shale Brick in its response at 11667 of the city said

25  basically we agree that what's going to come out of this for

1  General Shale Brick is an unsecured claim and whether that be

2  1075 modified as the motion requests, or a new one created by

3  -- by the motion and 1075 being withdrawn and expunged really

4  is a difference that makes no difference.

5      And so I believe the parties have agreed that the

6  treatment should be determined by the motion.  And that brings

7  us to the -- the main crux of the question today, the motion

8  to determine rights of claim 201.

9      To refresh the Court on how we got here, Michael Beydoun

10  was injured in an auto accident years ago.  He obtained a

11  judgment against the city.  The judgment was later augmented

12  with fees and costs.  The city then filed for bankruptcy

13  protection.

14      Attorney Guzall filed a claim against the city for his

15  client, Mr. Beydoun in the amount of -- to protect the

16  judgment.  We disagree with the way the interest was

17  calculated, but we resolved that with the objection to claim

18  201.

19          THE COURT:  That claim 201 was filed I see in the

20  name of -- jointly of Mr. Guzall and Michael Beydoun.

21          MR. SPINNER:  I think you're correct, Your Honor,

22  yes.

23          THE COURT:  That's what it says, Michael Beydoun and

24  his attorney Raymond Guzall, III.  That's the name of the

25  creditor in the proof of claim you attached to the motion.

1          MR. SPINNER:  That's fair, Your Honor.  And we --

2    and we actually understand that Mr. Guzall has a claim against

3    Mr. Beydoun's claim for attorney's fees as part of it.  So we

4    understand that they're -- it's interrelated.

5          THE COURT:  Do you view their -- their joint claim

6    -- claim of filing status to be such that whatever is to be

7    distributed to Michael Beydoun -- to be distributed on claim

8    201 to persons other than third party creditors like General

9    Shale is to -- to be distributed jointly to both and then it's

10   a matter for them, Mr. Beydoun and his attorney, Mr. Guzall to

11   figure out and if they can't agree for some State Court to

12   determine who gets what as between the two of them.

13         MR. SPINNER:  Yes, Your Honor.  Although it may not

14   come to that.  Because we're trying to put a process as -- as

15   we've put in our papers that would allow the parties to, if

16   they can agree, solve all that in one shot.  And if not, then

17   yes.  Then the State Court would have to figure out what the

18   -- the appropriate distribution would be.

19         THE COURT:  Well, I was referring to distribution as

20   between Mr. Beydoun and his attorney, Mr. Guzall.  I wasn't

21   referring yet to the -- any issues regarding Kajy Development.

22         MR. SPINNER:  Oh, sure, I understand.

23         THE COURT:  Which we're coming to, I -- I assume

24   shortly.  Anyway, go on.  You were saying.

25         MR. SPINNER:  Sure.  There was a dispute that we

1  filed in our original motion between Attorney Guzall and

2  Attorney Seifman apparently a dispute over attorney's fees.

3      We had proposed a -- a method of distribution that would

4  deal with that, however, Attorney Seifman was served with

5  these papers.  I spoke to one of his counsel and I don't

6  believe -- he has not filed any papers.  I don't believe he's

7  participating in this.  So that claim which we -- which we

8  raised in the motion apparently is resolved and he will not be

9  participating.

10         THE COURT:  Meaning he'll get nothing.

11         MR. SPINNER:  Meaning he will get nothing.

12         THE COURT:  Go on.

13         MR. SPINNER:  Two parties filed garnishments against

14  Mr. Beydoun's claim number 201.  General Shale Brick was the

15  first in time garnisher.  There appears to be no dispute

16  against that.  There's no dispute from Mr. Beydoun as to that

17  garnishment.

18      And that is the garnishment that led to the filing of

19  claim 1075.  Kajy Development also filed a garnishment.  It

20  did not file a proof of claim but because the city's position

21  is that they're going after property of Mr. Beydoun, not the

22  city, no claim was necessary.

23      Now both Attorney Beydoun through his attorney -- I'm

24  sorry, Beydoun and through his attorney Guzall and Kajy

25  responded to the motion to determine rights and the result of

1  this is that no one seems to object to General Shale Brick's

2  treatment as proposed under the motion.

3      We learned that Attorney Guzall has a contingency fee

4  arrangement which apparently will change how he distributes

5  that claim with Mr. Beydoun more than we had expected when we

6  first filed our motion.  And there is apparently a valid

7  dispute between attorneys Beydoun and Kajy regarding the

8  validity of the garnishment.

9      And that's when we filed our docket -- our response at

10  docket 11668.  We proposed a revised distribution starting

11  first with General Shale Brick since there is no objection

12  they do seem to be first in time.  We propose to allow claim

13  1075 as a $20,000 cash claim, and an unsecured claim for the

14  balance of $7,271.94 fully and finally resolving any claim

15  that General Shale Brick would have against the city as -- as

16  regards to this particular claim.

17      The dispute --

18          THE COURT:  Does everyone agree to that part of your

19  proposed order?  And I -- we're referring I think just for

20  clarity to the revised proposed order the city filed as

21  Exhibit 1 to its reply in support of its motion regarding

22  claim number 201.  It's docket 11668.  Go on.

23          MR. COLUCCI:  John Colucci on behalf of General

24  Shale, Your Honor.  Yes, General Shale is in agreement with

25  that and no objection has been raised to me.  And I understand

1  from Mr. Guzall there is also no objection to General Shale's

2  claim as advanced in the State Court either.  So really no

3  objection that I'm aware of.

4         THE COURT:  Mr. Guzall, same question.

5         MR. GUZALL:  Yes, Your Honor.  On behalf of Mr.

6  Beydoun, Mr. Beydoun is not objecting to the documents filed

7  in regards to General Shale as to the -- as to their claim.

8         THE COURT:  So --

9         MR. GUZALL:  It's not objected to that claim.

10        THE COURT:  Neither you as Mr. Guzall's attorney nor

11 Mr. -- as Mr. Beydoun's attorney, nor Mr. Beydoun object to

12 the -- at least the part of the order, the city's revised

13 proposed order that proposes -- what it proposes to do with

14 respect to General Shale Brick I guess it's Paragraphs 2 and 3

15 of that order.  You don't -- neither of you object to that, is

16 that correct?

17        MR. GUZALL:  You're talking about the document 11667

18 with the $20,000 in cash and then --

19        THE COURT:  11668.

20        MR. GUZALL:  Okay.

21        THE COURT:  The city's reply.

22        MR. GUZALL:  11668.

23        THE COURT:  That's part of its motion.  I'll read it

24 to you.  It says two, number two, the city will pay to General

25 Shale Brick Company the amount of $20,000.  Paragraph 3,

1  General Shale Brick Company's claim number 1075 is allowed as

2  -- is allowed a Class 14 other unsecured claim in the city's

3  bankruptcy case in the amount of 7,271.94.

4          MR. GUZALL:  Correct, Your Honor.  And that's the

5  same thing that was stated in the -- in the objection at

6  11667.  So and I apologize, Your Honor.  I have both documents

7  in front of me, but yes, my client is not disagreeing with

8  General Shale's --

9          THE COURT:  All right.

10         MR. GUZALL:  -- coming in here and -- and claiming

11 those amounts.

12         THE COURT:  Neither you nor your client, Mr.

13 Beydoun.

14         MR. GUZALL:  I don't have an objection either, Your

15 Honor, no.

16         THE COURT:  All right.  Okay.  So then the question

17 -- same question I put the same question then to Kajy

18 Development.  That's Mr. Bapacker, correct?

19         MR. BAPACKER:  That's correct, Your Honor.  Afan

20 Bapacker on behalf of -- of Kajy Development

21    We would not have an objection being that General Shale

22 Brick's garnishment was personally timed to ours.  Our

23 position is that -- different from -- I think would not allow

24 for us to even claim these -- any interest in what's being

25 given to General Shale Brick, so we have no objection to it.

1          THE COURT:  All right.  So Mr. Spinner, let's come

2   back to you.  Now we move on to the -- I gather what's

3   apparently still a dispute, or may still be a dispute between

4   Mr. Beydoun on the one hand and Kajy Development on the other

5   hand.

6          MR. SPINNER:  That is correct.  Taking a pause from

7   all, we've managed to narrow down what I think was one, two,

8   three, four, five or some -- four or five different claimants

9   down to basically one dispute remaining amongst three

10  claimants.  So I think we -- we have made progress.

11         The dispute between Beydoun and Kajy does raise some

12  interesting questions.  The city is unsure of the

13  jurisdiction.  It is not entirely clear that the Court should

14  be deciding third party disputes over the validity of State

15  Court judgments and further it's not clear at all to us that

16  the Court should be distracted by these disputes at all.

17         So case law we think provides the answer.  The original

18  case law of garnishments is as I found out, does not permit

19  garnishments at all.  They find that they interfere with the

20  process of bankruptcy.  And we cited NVLand, Inc. v Vogel, In

21  Re: Ocean Downs Racing Association at 164 BR 249.  And also a

22  6th Circuit case under the Bankruptcy Act, Berman v National

23  Finance Company, In Re: Berman and Company, 378 F 2d 252.  And

24  that's a 6th Circuit case from 1967.

25         But the modern view is -- appears to be that garnishments

1  are permitted so long as they can be accomplished and

2  accommodated without undue interference in the city or the --

3  the bankruptcy case in question and if the trustee agrees.

4      So here if it can be done basically by adjustment of

5  claims and if the city is willing which it is, if it can be

6  accomplished by the adjustment of claims when the garnishments

7  should be followed and honored and the citations for that were

8  In Re: Brickell, 282 BR 705.  That is a bankruptcy case in

9  Southern District of Florida, 2005.  And the appellant version

10 of the same Brickell v Dunn, In Re: Brickell, 142 F App 385 at

11 the 11th Circuit in 2005.

12     And of course if it turns out that the parties are going

13 to insist on having evidentiary hearings and -- and battles

14 over the ownership, we would go back to the rule that no

15 garnishments are allowed if they're going to interfere with

16 the case as -- as part of the Brickell case.

17     So we proposed that after the General Shale Brick claim

18 is allowed there is still $2,266,021.12 that remains as a

19 Class 14 claim.  We propose to allow the parties Beydoun,

20 Guzall, and Kajy to figure out if there's some way that they

21 can development that -- you know, parse that out to up to

22 three unsecured claims to replace claim 201.  And so long as

23 the numbers do not exceed the amounts that the -- and

24 therefore increase the city's liability, we would have no

25 objection to allowing that having the claims agent so adjust

1    If they cannot come up with a consensual resolution, then

2   we would say that according to the case law, the -- the rule

3   should be that the garnishment should be not allowed in the

4   Bankruptcy Court.  That does not deprive anybody of their

5   state law rights once the monies are ultimately disbursed.

6   They can go fight over it then.

7       But it would be an interference with the city's

8   Bankruptcy Court to hold evidentiary hearings and challenge

9   the validity of State Court judgments in this Court.  And

10  that's the city's position with respect to claim 201.

11       THE COURT:  A couple of questions.  Most of the --

12  it seems to me most of the cases -- I looked at the Brickell

13  case, the 11th Circuit version of the Brickell case for

14  example.  They seem to be talking about whether or not

15  Bankruptcy Courts should be allowed to or required to

16  recognize garnishments that are served on the trustee.

17       That is essentially post-petition garnishments in which a

18  creditor of the bankruptcy debtor seeks to garnish -- I'm

19  sorry a creditor of a creditor -- a creditor of a creditor in

20  the bankruptcy case seeks to garnish that creditor's

21  distribution that's coming to them in the -- in the bankruptcy

22  case from the trustee to satisfy a debt that the creditor

23  receiving distribution notice to the other creditor.

24       In this case what we're talking about are -- are

25  pre-petition garnishments as I understand it that were served

1  on the city.

2        MR. SPINNER:  Uh-huh.

3        THE COURT:  By creditors of Michael Beydoun, Kajy

4  Development, and General Shale Brick.  And General Shale Brick

5  filed a proof of claim, 1075.  Kajy Development did not file a

6  proof of claim as I understand it.

7        And I'm wondering if the -- if this -- if this matter of

8  garnishment and what to do with these garnishments rests on a

9  little different footing than -- than we might have in a

10 situation like <u>Brickell</u> where the trustee -- the issue is can

11 a -- can a trustee be served with a garnishment rather than a

12 debtor pre-petition serving the garnishment.

13       I'm wondering whether Kajy Development's failure to file

14 a proof of claim should result in the Court not recognizing

15 the garnishment but just leaving it to Kajy Development to

16 pursue whatever Beydoun gets in distribution of the bankruptcy

17 case just because Kajy didn't file a proof of claim.  And --

18 and I know you've -- you've -- you started out this hearing by

19 -- by saying the city doesn't think Kajy was required to file

20 a proof of claim because they're -- they're just -- they're

21 going after property of Michael Beydoun and not the city.

22       But under the garnishment, Michigan garnishment statute

23 the -- and the Michigan Court Rules on garnishments, the city

24 has liability as a garnishee to the garnishing creditor,

25 doesn't it?  Isn't that a claim against the city that Kajy --

1  that arose in favor of Kajy pre-petition.  And if so weren't

2  they required to file a proof of claim in order to have any

3  sort of recognition or benefit of that claim.  Do you see what

4  I'm asking?

5       MR. SPINNER:  I do, Your Honor.  And we -- we

6  wrestled with this.  I have to be honest with you, if you

7  looked at the case law on garnishments it's somewhat scarce

8  and not fully developed.

9      We thought about whether or not there was a claim.  We

10  ultimately decided that this is where the city would go

11  because we felt that it was against property of the city and

12  not the city -- property of Beydoun and not the city itself.

13      I do recognize the -- the references you make and I

14  cannot say that's not a valid conclusion.  It just -- after

15  weighing the choices we came up with the conclusion that we

16  did.  We would not --

17       THE COURT:  I mean both -- both approaches, the

18  city's view and -- and this approach that I've suggested in my

19  question which I'm --

20       MR. SPINNER:  Yes.

21       THE COURT:  I'm not ruling that way at this point.

22       MR. SPINNER:  Of course.

23       THE COURT:  I'm just asking.  But -- but each

24  approach might lead ultimately to the same result which is

25  perhaps Kajy gets nothing in the bankruptcy case but they're

1 free to go chase whatever Beydoun gets from the bankruptcy

2 case in State Court as a means of, you know, under state law

3 collecting their judgment.

4     You proposed such an outcome essentially in your latest

5 proposed order as I understand it.  But that's -- that would

6 essentially be what happens if Kajy and Beydoun cannot reach

7 some sort of agreement in this case on -- on what's to happen

8 with Beydoun's claim as against Kajy, right?

9         MR. SPINNER:  Yes, Your Honor.  I guess -- I guess

10 the way the city would take it is, Your -- Your Honor's

11 comments are well taken.  Whichever approach you take, they do

12 tend to lend to the same result.

13     If there's a consensual settlement, the city is more than

14 happy to have Kurtzman Carson adjust the claims register

15 accordingly because it doesn't have a major impact on the

16 city, it's just an adjustment of claims and it will be paid in

17 due course.

18     The legal theory, both seem to end at the same place.  If

19 they can't get there, this garnishment shouldn't be here.  And

20 as far as city is concerned I think that's just fine.

21         THE COURT:  Have you talked to counsel for Beydoun

22 and counsel for Kajy Development about this approach that you

23 proposed in your reply brief, proposed order?

24         MR. SPINNER:  I have had a chance to talk to

25 Attorney Guzall.  I have not have a chance to talk to

1  attorneys for Kajy.

2          THE COURT:  I mean we'll hear from them of course.

3          MR. SPINNER:  Of course.

4          THE COURT:  But there's not, as far as you know,

5  there's not yet agreement on that approach.

6          MR. SPINNER:  No, Your Honor.  And that's part of

7  the reason Mr. Swanson expected that we would have this

8  hearing is because one question we anticipate you're going to

9  be asking is, do you attorneys agree with this and if you do

10  consider this resolved in the matter proposed and if not, what

11  else would you propose.  So that's why we figured this hearing

12  would now be down to this limited issue which in the city's

13  estimation is still great progress from where we started.

14          THE COURT:  All right.  Did you want to say anything

15  else before we hear from the other attorneys?

16          MR. SPINNER:  No, Your Honor.

17          THE COURT:  All right.  Mr. Colucci, I assume is

18  counsel for General Shale.  You don't -- your client doesn't

19  care about this piece of the dispute.

20          MR. COLUCCI:  No, Your Honor.

21          THE COURT:  All right.  Then Mr. Guzall, let me

22  hear from you next about this piece of the -- the puzzle.

23  Then we'll hear from Mr. Bapacker as counsel for Kajy

24  Development.

25          MR. GUZALL:  Certainly.  Thank you, Your Honor.

1    Your Honor, upon the filing by the City of Detroit, I

2  contacted City of Detroit attorneys and spoke with I believe

3  Mr. Spinner and indicated that I would reach out to Mr. Yaldo

4  in attempt to resolve the matter prior to having to engage the

5  Court any further and waste the Court's time.

6    I did in fact reach out to Mr. Yaldo.  I sent him an

7  email with a proposal to attempt to just panel the matter

8  without further litigation.  I have not heard back from Mr.

9  Yaldo.  Mr. Yaldo filed a document today, a consent judgment.

10        THE COURT:  I saw that.

11        MR. GUZALL:  Sure, which was faded on the back and I

12  couldn't read the signature of what he claims to be my

13  client's signature, so I contacted his office about ten or 15

14  minutes after the filing which is when I opened the email and

15  saw the email.  I left a message, I was not able to get a hold

16  of anybody there.  I asked for a return phone call.

17    It's my client's position and I think it's within the

18  affidavit that there was an understanding that both parties in

19  this Kajy Development case were going to walk away and neither

20  was going to pay the other any monies.  And so this consent

21  judgment is as I understand, new to my client, has not seen

22  this document, and that's why I asked for a -- a clearer copy

23  to illustrate -- show the signature of my client allegedly on

24  this document.

25    Be that as it may, Your Honor --

1          THE COURT:  Well, is there any doubt that this

2    consent judgment was in fact entered by the circuit -- Wayne

3    County Circuit Court as indicated by the file stamp and Judge

4    signature on the document?

5          MR. GUZALL:  I can't answer that question.  I wasn't

6    a part of this at all, I don't know.

7          THE COURT:  What you're worrying about it sounds --

8    is it just that perhaps Mr. Beydoun in fact did not sign and

9    agree to this consent judgment?  Or I'm sorry, yeah, Mr.

10   Beydoun did not sign and agree to this?

11         MR. GUZALL:  That is Mr. Beydoun's position.  I was

12   not involved.  I don't know about any of these documents.

13   I've never seen them.  I don't --

14         THE COURT:  He says -- he says he didn't sign this

15   consent judgment?

16         MR. GUZALL:  That's his position, yes.

17         THE COURT:  All right.

18         MR. GUZALL:  To my understanding that he didn't,

19   yeah.  That he thinks this was cut and pasted or copied on

20   here.  He's never seen this and didn't sign it.  It was his --

21         THE COURT:  So Mr. Beydoun's position, bottom line

22   position essentially is, is that -- and I think as you argued

23   in your papers that you filed that the pre-petition

24   garnishment by Kajy Development served on the city is not

25   proper.  Shouldn't be valid, should be ignored.

1          MR. GUZALL:  Correct, Your Honor.  Agree with the --

2    the arguments that were made and -- and some of the

3    suppositions that were made by the Court in that there was no

4    proof of claim filed, number one.  And number two, even if

5    there was the law cited by the city there's -- there's no

6    objection to that law by Mr. Beydoun.

7          But again in an attempt to settle all of this, I reached

8    out to Mr. Yaldo and I -- I spoke with the city's attorneys

9    and stated I didn't have an objection -- my client didn't have

10   an objection to trying to work things out with Mr. Yaldo and

11   his client over the next couple weeks to sort of try to come

12   to some sort of agreement just to quash everything and end

13   everything.

14         So that's what I've attempted to do, Your Honor, in terms

15   of reaching out.  And I've also discussed with the city

16   attorneys filing a proposed order in regards to the attorney

17   fees that are claimed by my law firm so that may go much more

18   simply through the Court system as well if as I understand in

19   terms of my conversations with the City of Detroit.

20         But prior to doing that, trying to work out this

21   situation with Kajy.  And if we can't then my client's

22   position is on point with what the Court indicated just here

23   today and the City of Detroit that Kajy Development is then

24   just going to have to search for another avenue to come after

25   those monies owed by Mr. Beydoun that they claim are after the

1 bankruptcy is -- is over, or outside of the Court -- the

2 Bankruptcy Court if you will.

3        THE COURT: Is it your view on behalf of Mr. Beydoun

4 that Kajy Development was required to file a proof of claim in

5 the Detroit bankruptcy case in order to have its garnishment

6 based claim recognized in any way?

7        MR. GUZALL: Yes, Your Honor.

8        THE COURT: Why do you say that? Why do you say

9 that's so?

10        MR. GUZALL: Well, Your Honor, Shale filed a proof

11 of claim. And as Your Honor -- Your Honor indicated, a proof

12 of claim gives everybody notice that ,including City of

13 Detroit, that there is this proof out there. It's sort of a

14 surprise at the eleventh hour that Kajy is now coming in and

15 saying oh, well, we're owed money as well.

16    It holds everything up, it ties everything up, and I

17 agree with the Court's, you know, questions and -- and points

18 prior that there's just -- there's no proof filed and

19 therefore it shouldn't be deemed valid by the Court.

20        THE COURT: All right. Anything else you want to

21 say?

22        MR. GUZALL: No, Your Honor.

23        THE COURT: All right. Mr. Bapacker on behalf of

24 Kajy, what would you like to say?

25        MR. BAPACKER: Thank you, Your Honor. Just to point

1 | the Court's attention to Kajy's motion or response to the

2 | motion to allow claims.

3 |     There's a settlement agreement also attached that it was

4 | incorporated as part of making out the consent judgment that I

5 | attached.  And -- and I'll just clarify for the Court.  I

6 | filed that consent judgment not realizing that it wasn't

7 | originally filed with the papers in the response pleadings

8 | that we -- that we had filed to the city's motion.

9 |     And I -- I noticed that this morning when I was prepping

10 | for my hearing, so I wanted to upload it so that everybody

11 | would have a copy of it.  But the settlement agreement

12 | purports to be signed by Michael Beydoun as well and there's a

13 | notary stamp there.

14 |     The consent judgment that I have that doesn't really

15 | clearly show a signature and I'll admit that because it's

16 | pretty -- pretty apparent there.  But it was signed by the

17 | Circuit Court and I'm sure a true copy exists somewhere.

18 |     As far as the dispute, I really don't see it.  There's a

19 | valid State Court judgment that was entered.  That State Court

20 | judgment -- there was a garnishment that was issued to Mr.

21 | Guzall's office that was also attached to our motion that that

22 | was issued way before, I believe, even this bankruptcy was

23 | filed if I see --

24 |         THE COURT:  I didn't see, maybe I missed it, but in

25 | the exhibits attached to your response to the city's motion,

1  docket 11657, I didn't see a writ of garnishment directed to

2  the City of Detroit as a garnishee.  Is there one in there?

3      MR. BAPACKER:  There is one -- yeah, I'm sorry, Your

4  Honor.  There is one, it wasn't attached to our motion, but it

5  is attached to the city's motion.  I believe it's the last

6  exhibit in the city's motion.

7      THE COURT:  Oh, all right.  Hold on.  Oh, I see,

8  yeah.  Pdf Page 49 of 49, I think.

9      MR. BAPACKER:  Yes, I believe it's the last page.

10     THE COURT:  Okay.  So that was issued on May 20,

11  2011.

12     MR. BAPACKER:  That's correct.  And on the same date

13  another writ of --

14     THE COURT:  A little more than two years before the

15  city filed its bankruptcy case.

16     MR. BAPACKER:  That is correct.  Barry Seifman was

17  issued the same garnishment as well as Mr. Guzall was issued

18  the same writ of garnishment.  Those were attached to our

19  motion on the same day.  So I don't see this -- the statements

20  made here today are -- I'm not aware of the judgment or not

21  aware of this claim or the garnishment where there's clear

22  evidence that they received them and actually responded to and

23  signed the -- the disclosures that are -- were submitted back

24  to the Third Circuit Court and filed them with the Court.

25         There's actually a letter from --

1          THE COURT:  Did the city file a disclosure?

2          MR. BAPACKER:  I believe that is the -- what's

3   attached to the city's motion is the response, the disclosure

4   there.  Let me just go back to it here.

5          THE COURT:  Well, I didn't catch that.

6          MR. BAPACKER:  If you -- the garnish -- the request

7   and a writ of garnishment, I don't see the disclosure

8   actually, it's just a request and writ of garnishment that was

9   filed.

10          THE COURT:  Did the city file a disclosure?

11          MR. BAPACKER:  I don't know that they did, I'm not

12   sure.

13          THE COURT:  With the State Court, I mean?

14          MR. BAPACKER:  Yeah.  I don't know that they did.

15          THE COURT:  Did the city ever become liable under

16   this garnishment as a garnishee under the Michigan Court Rule

17   under this garnishment statute?

18          MR. BAPACKER:  If they don't file a disclosure

19   within the allotted time then they would become liable, but

20   only after a default is entered and the judgment is entered.

21   And that's a point as to -- what I was trying to make with

22   when it relates to the State Court, a garnishee becomes liable

23   for not fulfilling a garnishment disclosure responding and

24   submitting the writ or -- or submitting the disclosure and

25   then a default could get entered against the garnishee and

1  then a motion for entry of default and a subsequent judgment

2  would get entered against the garnishee.  None of that

3  happened to my understanding in -- in my review of the

4  documents.  So I -- we don't believe this --

5          THE COURT:  Well, but isn't it correct that under

6  the Michigan Court Rule, you know, with garnishments as I

7  understand it, it's Michigan Court Rule 3.101(g) which is

8  titled liability of garnishee.

9      Isn't it correct that the garnishee in this case the City

10  of Detroit under this court rule would -- was -- would have

11  become liable for under sub part (1)(d) of that 3.101(g),

12  liable for all debts, whether or not due, owing by the

13  garnishee, that's the city to the defendant, that's Beydoun,

14  when the writ is served on the garnishee with certain

15  exceptions.

16      So didn't that create a debt owing from the City of

17  Detroit as garnishee to your client, Kajy Development, LLC, as

18  soon as the writ was served on -- the writ of garnishment was

19  served on the city back in May 2011?

20          MR. BAPACKER:  My understanding is if not paid.  But

21  I guess that's not what the court rule says, or if not

22  responded to.

23          THE COURT:  Well, you know they didn't pay.

24          MR. BAPACKER:  Yeah.

25          THE COURT:  I assume everybody agrees they didn't

1  pay.

2      MR. BAPACKER:  Well, yeah, they haven't paid, but

3  our  our idea is they will pay something eventually.  And our

4  -- our claim is against that something.  And we're not --

5  we're not looking at it from the perspective that we have any

6  claim and that's what our response says.  We don't feel that

7  -- or Kajy feels that they don't have a claim against the city

8  at all and that's why no claim was ever filed.

9      THE COURT:  What is -- is there a mechanism that's

10  fair and appropriate here to all parties by which the State

11  Court in which the garnishment -- the judgment was issued, the

12  garnishment was issued would decide any disputes between Kajy

13  Development and Beydoun, Michael Beydoun about this dispute

14  between them about whether there's a valid judgment and a

15  valid garnishment, those sorts of things?

16      MR. BAPACKER:  The only mechanism I see is Mr.

17  Beydoun filing a motion to set aside that judgment.  It was a

18  consent judgment and if he's claiming fraud, it's a ten year

19  old judgment which he had notice of in 2011.

20      THE COURT:  Maybe I didn't -- I wasn't clear enough

21  in my question.

22      MR. BAPACKER:  Yeah.

23      THE COURT:  What I'm -- what I'm getting at is you

24  know, I scratch my head and say why should this Court decide

25  this dispute between these two creditors -- between these two

1 parties, neither of whom are debtors in the bankruptcy case

2 and not instead find a way to leave it to the State Court.

3         MR. BAPACKER: Yeah.

4         THE COURT: To decide that issue because that's

5 typically, and you know, I think appropriate -- appropriately

6 where it belongs.

7         MR. BAPACKER: I would agree with that but we're

8 actually not asking this Court to decide the dispute. We're

9 asking this Court to grant a transfer of rights to the -- to

10 the claim that was filed by Michael Beydoun to my client

11 because of the garnishment that was served upon the city.

12         THE COURT: That's a decision on the dispute. That

13 says -- that's a decision premised on the proposition that the

14 garnishment is valid because the judgment is valid.

15         MR. BAPACKER: That's correct.

16         THE COURT: Which is -- which are disputed by -- by

17 Michael Beydoun. You may think the dispute is without merit

18 or even frivolous --

19         MR. BAPACKER: Yeah.

20         THE COURT: -- but it's -- it's there. And so some

21 Court may have to decide that dispute.

22         MR. BAPACKER: Sure.

23         THE COURT: And I don't -- it doesn't strike me that

24 this is the Court that ought to do that.

25         MR. BAPACKER: I agree with that. I completely

1 agree, but I don't -- I don't agree that the disposition of

2 honoring a State Court judgment that is valid and has been

3 entered for over -- well, close to ten years now, is outside

4 this Court's jurisdiction which I've -- I've seen this Court

5 do before.

6      I think that's really what we're asking for is for this

7 Court to honor the State Court judgment that was entered.  The

8 garnishment is just an extension of that and -- and a transfer

9 of claim I think is -- is within this Court's jurisdiction to

10 -- to transfer that portion of that claim to my client.

11           THE COURT:  All right.  Anything else you'd like to

12 say?

13           MR. BAPACKER:  Nothing else, Your Honor.

14           THE COURT:  Mr. Spinner, back to you.  Did you want

15 to say anything further here?  Actually, Mr. Bapacker, I

16 didn't -- I should have asked you this before I -- I let you

17 go.  And that is, you've seen this proposed order the city

18 attached to their reply brief as part of this motion.  It's at

19 docket 11668, I assume.

20           MR. BAPACKER:  Right.

21           THE COURT:  Does Kajy agree or not agree with that

22 proposed order and approach?  And -- and I don't mean just the

23 part dealing with General Shale --

24           MR. BAPACKER:  Yeah.

25           THE COURT:  -- but all the rest of it

1        MR. BAPACKER:  Yeah.  We don't agree with treatment

2   of our claim as a -- as a Class 14 claim, only because that

3   would just dilute our -- our claim and we'd only get a

4   percentage of the payment.

5       Our -- our position is that we should get a transfer of

6   whatever claim Beydoun gets.  And that may or may not fully

7   satisfy our claim, but I think it definitely --

8        THE COURT:  Well, Beydoun is going to get a Class 14

9   claim, isn't he?

10        MR. BAPACKER:  He's going to get a Class 14 claim.

11   We want a full claim against his Class 14 claim as that's what

12   the garnishment would -- would yield and the garnishment

13   rights we have against any asset he receives.

14       So if he were to receive for example if I throw out a

15   number of 10% and receive $226,000, then our claim would be

16   fully satisfied through that.  And that's the issue we have

17   for -- for treating our claim as a Class 14 claim.

18        THE COURT:  Oh, I see.  You're worried that -- well,

19   I think I understand your point.

20        MR. BAPACKER:  Yeah.  It would just dilute our claim

21   and then we -- we would --

22        THE COURT:  What about the rest of the order, the

23   other aspects of it.

24        MR. BAPACKER:  I believe there is also --

25        THE COURT:  And basically Paragraph 7 of this

1  proposed order by the city says if -- if Beydoun and Kajy

2  don't reach an agreement by November 30th on these matters, the

3  garnishment filed by Kajy Development will be ignored.

4          MR. BAPACKER:  I don't think --

5          THE COURT:  Isn't that what 7, Paragraph 7 says?

6          MR. BAPACKER:  Yeah.  We wouldn't agree with them.

7  In addition I -- I should only agree with the characterization

8  that it's actually difficult for the city to -- to pay this

9  claim.  As -- as I've stated, I don't think there's any

10  dispute here for this Court to decide on -- on the issue of

11  whether or not the judgment is valid.  We're talking about a

12  ten year old judgment.

13      So the city would basically be cutting two checks out,

14  whether it's multiple claims or whether it's paying Mr.

15  Beydoun and then paying my client through the transfer of

16  claim.  So I don't see any difficulty here at all.  It's --

17  it's just a matter of how it's paid and how much -- how much

18  of it is paid to my client.

19          THE COURT:  Did you want to say anything about the

20  question I asked Mr. Spinner which is essentially why Kajy

21  Development was not required to file a proof of claim in this

22  bankruptcy case.

23          MR. BAPACKER:  Our -- our -- our position is that we

24  weren't required to file a proof of claim.

25          THE COURT:  And why not?  Why not?

1          MR. BAPACKER:  We don't see ourselves as creditors

2   of the -- of the Detroit -- of the City of Detroit.  And I

3   guess --

4          THE COURT:  That's sort of the point of my question

5   about the Michigan Court Rule --

6

7          MR. BAPACKER:  Yeah.

8          THE COURT:   -- that I asked you earlier.  Under the

9   Michigan Court Rule, Michigan law as garnishee here it says

10  the city is liable to a certain extent to -- to your client.

11  So --

12         MR. BAPACKER:  That is correct.  The liability --

13         THE COURT:  Your client is a creditor of the city,

14  you had a claim against the city before the bankruptcy was

15  filed as I understand it based on this garnishment.  Why

16  didn't -- why wasn't your client required to file a proof of

17  claim like every other creditor against the city?

18         MR. BAPACKER:  Well, but you're -- you're taking the

19  code section as far as liability and extending that to treat

20  my client as a creditor.  I think those are two different

21  things within the context of what we're talking about.

22         THE COURT:  Doesn't a judgment creditor become a

23  creditor of the garnishee under Michigan Court Rule 3.101(g)?

24         MR. BAPACKER:  If -- my understanding is that's true

25  if certain -- if a judgment has been entered against a

1  judgment creditor.  Because a judgment has to be entered

2  against a judgment creditor in order to --

3          THE COURT:  Well, that's how you -- that's how you

4  get a judgment on a claim.

5          MR. BAPACKER:  That's correct.

6          THE COURT:  It doesn't create the claim, does it?

7  Doesn't 3.101(g)(1) of the Michigan Court Rules say the

8  garnishee is liable.

9          MR. BAPACKER:  That's correct.

10         THE COURT:  For all debts whether or not due owing

11 by the garnishee to the defendant when the writ is issued on

12 the garnishee.

13         MR. BAPACKER:  That's correct.  But the point is, I

14 don't believe that makes our client a creditor of the  -- of

15 the City of Detroit.  If -- if liable, there's an asset that

16 hold the liability is -- is satisfied when that asset is

17 turned over.  I don't see how -- how both of those things --

18         THE COURT:  Yeah, but let's take the hypothetical.

19 Forget about bankruptcy for a minute.  Assume there's no

20 bankruptcy.

21         MR. BAPACKER:  Uh-huh.

22         THE COURT:  That you serve a writ of garnishment on

23 the city.

24         MR. BAPACKER:  Sure.

25         THE COURT:  The city ignores it.

1          MR. BAPACKER:  Sure.

2          THE COURT:  And they pay everything to Beydoun, your

3   judgment debtor, your client's judgment debtor.

4          MR. BAPACKER:  Sure.

5          THE COURT:  Under the Michigan Court Rules the

6   statute on garnishments you have a claim against the city for

7   the full amount of your debt up to the amount of whatever the

8   city owed to Beydoun when they were served with the writ,

9   don't you?

10         MR. BAPACKER:  Yeah, sure.  But in the hypothetical

11  they've already -- they haven't paid it in -- in this

12  scenario.  The asset still is held by the city.  The claim

13  hasn't been paid.

14      In my opinion the liability doesn't extend to confirm my

15  client as a creditor until the disposition of that asset.  And

16  right now we're talking about a claim that's the asset.  Our

17  claim is against that asset.

18      They're not a creditor until that asset has been disposed

19  of one way or another.  So I -- I just don't see --

20         THE COURT:  Well, and roughly a little more than two

21  years passed from the issue -- the service of the writ on the

22  city and the city's bankruptcy case.  What happened during

23  that two year period?

24         MR. BAPACKER:  I -- I have no idea.  I wasn't

25  involved in this during the two year period.

1        THE COURT:  I know part of what apparently was going

2   on was the city was appealing the judgment that they obtained

3   against it which apparently was only that appeal process was

4   only confirmed -- or concluded post-bankruptcy.

5        MR. BAPACKER:  Sure.

6        THE COURT:  But there was a judgment against the

7   city, right?  That -- that was entered well before the

8   petition date, bankruptcy --

9        MR. BAPACKER:  Beydoun's judgment against the

10  city's.  I don't believe --

11       THE COURT:  Beydoun's right against the city.

12       MR. BAPACKER:  Yeah.

13       THE COURT:  Yeah.

14       MR. BAPACKER:  Yeah, that's correct, yeah.

15       THE COURT:  All right.  Anything else you want to

16  say?

17       MR. BAPACKER:  Nothing else, Your Honor.

18       THE COURT:  All right.  Thank you.  Mr. Spinner, I'm

19  sorry, I -- I called on you earlier.  What do you want to say

20  further if anything?

21       MR. SPINNER:  It's quite all right, Your Honor.

22  Your Honor, all roads lead to Rome it looks like.  No matter

23  which theory of the two theories you espouse, I think we end

24  up with the proposed order as a -- as a reasonable resolution.

25       Under the suggestion you had, Your Honor, that this is a

claim against the city and no proof of claim was filed, then

Kajy's garnishment should be ignored.  But again the parties

should come up with a reasonable agreement, nobody of course

is going to object to that and so our order would be

appropriate.

     If it turns out that they didn't have to file a proof of

claim and the garnishment is -- is valid as it is, but there's

a valid dispute right as you pointed out, Your Honor, no

matter how frivolous it is or not frivolous, the city is not

here to take a position on that and it merely complicates the

bankruptcy.

     In that case, case law says it should be ignored unless

of course the parties can reach a settlement that makes it

relatively simple to implement.  So in both cases no matter

how you get there or now you go you end up in the same place.

     My only other observation from -- from listening to

Kajy's argument today, is that Kajy said I don't want a Class

14 claim, I want to be paid in full.  Well, there's really

nothing the city can do because the city is going to be

awarding Class 14 claims.

     Until actually they get resolved out a -- a numerator or

denominator fixed and a cash dollar amount is fixed, the city

is not going to be able to write a check to these people even

if they wanted to.

     So if we take him at his word that they want dollars then

1 they have to wait until the claim is paid to Mr. Beydoun and

2 go after them because there's no way for us to know that until

3 pretty much all of these claims are resolved.

4      One way or the other we end up in the same place.  Either

5 the garnishment should be resolved consensually, or it should

6 be ignored.  And since they all end up in the same place, Your

7 Honor, it almost becomes irrelevant to the city of which path

8 is chosen.

9      The only questions that the city wants to make sure of is

10 that when we're done, we pay off the General Shale garnishment

11 and General Shale has no further claims against the -- the

12 city's claim of 201.  And whatever we do resolving these

13 garnishments the total exposure of the city is no more than

14 the remainder of claim 201.  As long as the city is not

15 otherwise inconvenienced, this Court's not inconvenienced,

16 we're not going to object to giving the parties a chance to

17 resolve things early, but otherwise we would say leave them to

18 their State Court remedies.  Do you have any questions for me,

19 Your Honor?

20      THE COURT:  No further questions.  Thank you.  One

21 moment.  All right.  Thank you all.  I'm going to rule on this

22 now.

23      And this is -- I view that this motion filed by the city

24 -- City of Detroit's motion to determine rights to claim

25 number 201, docket 11624 that we've been hearing as well as --

1  is resolved by agreement of all of the parties who have

2  responded and who are concerned with that motion and affected

3  by it in part.

4      And that part is -- concerns the part that essentially it

5  comprises the relief provided in Paragraphs 2 and 3 of the

6  city's proposed order that was attached to the city's reply

7  brief filed November 10 at docket 11668.  That is the

8  provisions regarding General Shale Brick Company and its

9  treatment and participation in this claim 201 and how they're

10 to be dealt with and treated.

11     And so to that extent the motion is resolved by agreement

12 of the parties and I will approve that agreed resolution or

13 partial resolution.  That resolution, or settlement, or

14 agreement also of course resolves the city's -- in -- in -- in

15 its entirety the city's objection to the claim filed by

16 General Shale Brick Company, claim 1075.  That claim objection

17 was filed at docket 11623 and was -- was heard today as part

18 of this.

19     The rest of -- or unresolved portion or aspects of the

20 city's motion to determine rights to claim number 201 concern

21 Kajy Development, LLC and a dispute -- a dispute between --

22 that continues to exist between Michael Beydoun on the one

23 hand and presumably also is attorney Mr. Guzall on the one

24 side on the one hand and Kajy Development, LLC on the other

25 hand.

1    The claim number 201 at issue, a copy of that is attached

2    to the city's motion, docket 11624 as Exhibit 6-1, was a claim

3    in the box where it says name of creditor, it says Michael

4    Beydoun and his attorney Raymond Guzall, III.  So it's a claim

5    filed jointly by Mr. Beydoun and his attorney, Mr. Guzall.

6    And I -- I viewed those parties as -- and those claimants

7    under that proof of claim as contesting the -- and opposing

8    and the Court granting any sort of relief in favor of Kajy

9    Development, LLC.  Those parties take the position as they

10   have argued in Mr. Beydoun's written papers and in the hearing

11   today that -- that Kajy Development, LLC is not a legitimate

12   judgment creditor or a creditor otherwise of Mr. Michael

13   Beydoun individually.  And that if there was a judgment

14   obtained against -- and this -- there appears to have been a

15   judgment obtained and filed in State Court long before the

16   city's bankruptcy case was filed.  That's that consent

17   judgment that was filed today as an exhibit by Kajy

18   Development.

19   That that judgment is invalid because Mr. Beydoun --

20   according to Mr. Beydoun he did not sign off.  That's not his

21   signature on the last page of that document consenting --

22   purporting to consent to entry of the judgment.  And therefore

23   the post-judgment garnishment writ that was issued and served

24   on the city by Kajy Development in an effort to collect that

25   consent judgment against Michael Beydoun which was done in May

1 | 2011 roughly, is invalid.

2 | So Mr. Beydoun and Mr. Guzall on the one hand contend

3 | that Kajy Development, their garnishment, their pre-bankruptcy

4 | petition garnishment against the city should be ignored

5 | completely and Kajy should get nothing.

6 | The Kajy Development of course takes quite the opposite

7 | view and contests that and contends its -- its consent

8 | judgment is valid, that its garnishment served on the city in

9 | May 2011 is valid and therefore it should -- its garnishment

10 | writ should be recognized and given effect as part of the

11 | Court's treatment of claim number 201.

12 | This dispute between Mr. Beydoun and Mr. Guzall on the

13 | one hand and Mr. -- and Kajy Development, LLC on the other

14 | hand is a dispute that in my view clearly should be decided by

15 | the State Court. That is the dispute about the validity of

16 | the consent judgment, the validity of any garnishment writ,

17 | especially the -- the dispute about the validity of the

18 | consent judgment that was entered in the State Court. That

19 | should be decided by the State Court, not by this Court in the

20 | bankruptcy case of the City of Detroit.

21 | And for this Court, this Bankruptcy Court to have to

22 | decide that dispute in my view would unnecessarily complicate

23 | the administration of the bankruptcy estate in the City of

24 | Detroit case within the meaning of that concept of unnecessary

25 | complication that's referred to by the 11th Circuit, U.S. Court

1  of Appeals in the Brickell case cited by the city, In Re:

2  Brickell, 142 F App 385 at Page 390, the 11th Circuit in a

3  decision from 2005 held that garnishments, in this case

4  garnishment of a bankruptcy trustee, can be recognized or

5  ignored but the key consideration is according to the Court

6  the following.

7      "While a garnishment should not be allowed if it

8  unnecessarily complicates the administration of the bankruptcy

9  estate."

10     In my view that is exactly what will occur here if this

11 Court allows and gives recognition to and attempts to provide

12 relief to Kajy Development based on its pre-petition

13 garnishment writ served against the City of Detroit.  And for

14 that reason the Court is not going to grant any relief in

15 favor of Kajy Development based upon its pre-petition

16 garnishment writ served on the City of Detroit.

17     And essentially is going to ignore the writ of

18 garnishment served by Kajy Development, LLC on the City of

19 Detroit for purposes of determining the rights of competing

20 parties to claim number 201 filed by Mr. Beydoun and Mr.

21 Guzall jointly and any distributions in the bankruptcy case of

22 the City of Detroit based on that claim.

23     There's a -- a second reason, however, and perhaps a more

24 fundamental reason why the Court is ruling this way.  And that

25 is in my view Kajy Development, LLC was required to file a

1  proof of claim in the City of Detroit bankruptcy case and to

2  do so by the claims bar date and did not do so.  It was

3  required to file a claim in the City of Detroit case in my

4  view for its garnishment writ to be recognized because well

5  before the filing of the City of Detroit bankruptcy case in

6  July 2013, this writ of garnishment by Kajy Development had

7  been served upon the city.  That happened back in May 2011 as

8  Page 49 of -- pdf Page 49 of the city's motion shows.

9      And under the applicable Michigan statutes and court

10  rules, the service of that writ on the City of Detroit made

11  Kajy Development, LLC a creditor of the city and gave it a

12  claim against the city which obviously arose well before the

13  City of Detroit's bankruptcy case was filed.

14      So Kajy Development had a pre-petition claim against the

15  City of Detroit by virtue of its garnishment writ.  Among

16  other Michigan authorities that demonstrate this is, as I

17  pointed out in the questioning of counsel in today's hearing,

18  Michigan Court Rule 3.101(g)(1), sub part (d) of which, which

19  says, it's captioned liability of garnishee, the City of

20  Detroit of course was the garnishee here.

21      It says, subject to the provisions of the garnishment

22  statute and any set off permitted by law or these rules, the

23  garnishee is liable for (d), "all debts whether or not due

24  owing to the garnish -- owing by the garnishee to the

25  defendant when the writ is served on the garnishee" with

1  certain -- with certain exceptions not applicable here.

2       So from the moment of the service of the writ of

3  garnishment on the City of Detroit by Kajy Development, LLC in

4  May 2011, the city had a liability to Kajy Development based

5  on that garnishment writ and Kajy Development, LLC had a claim

6  against the City of Detroit based on that garnishment writ

7  whether it was contingent or non-contingent, or matured or

8  unmatured, liquidated or unliquidated, all for example because

9  of the pendency of an appeal by the City of Detroit which

10  apparently only ended adversely to the city after the filing

11  of the bankruptcy.

12       It was a pre-petition claim and therefore Kajy

13  Development, LLC had -- had an obligation if they wanted to

14  share in any way in this bankruptcy -- distributions in the

15  bankruptcy case to timely file a proof of claim.

16       The other garnishing creditor against the city that's

17  involved here with the claim against the claim of Mr. Beydoun

18  and Mr. Guzall, of course, General Shale Brick, did file a

19  timely proof of claim in this bankruptcy case.  And so they

20  are being treated differently than Kajy Development.  At least

21  that is an important reason why they're being treated

22  differently and why they stand in contrast to Kajy

23  Development, LLC.

24       What this means is that in addition to the -- the

25  substantive relief in favor of Shale Brick in Paragraphs 2 and

1    3 of the city's reply brief proposed order, I'm not going to

2    include in my ruling and in the order I'm going to enter, any

3    of the other provisions of that proposed order that have to do

4    with in any way giving time for Kajy Development and Michael

5    Beydoun to reach a settlement, or offer any prospect in the

6    future of any sort of recognition of the garnishment writ of

7    Kajy Development.

8         Rather the order -- the city must submit a proposed

9    revised order which after providing for the treatment of

10   General Shale Brick that's in Paragraph 2 and 3, essentially

11   jumps down to the bottom line of Paragraph 7 of the order

12   which says that claim 201 will be allowed as a Class 14 other

13   unsecured claim in the amount stated there.  Instead of saying

14   owned by Michael Beydoun it should say owned -- owned by

15   Michael Beydoun and his attorney, Raymond Guzall, III since

16   both of them jointly filed as creditors the claim 201.

17        And the order should also provide that the garnishment

18   filed by Kajy Development, LLC against the city is of no

19   effect, no further effect in the City of Detroit bankruptcy

20   case.

21        Now this ruling and this outcome and this order in my

22   view obviously do not prevent Kajy Development, LLC as a

23   judgment creditor of Michael Beydoun from seeking to collect

24   its judgment from Mr. Beydoun from any available assets or

25   income from Mr. Beydoun, including from any distributions that

1  Mr. Beydoun actually receives as a result of claim 201 in the

2  City of Detroit bankruptcy case once Mr. Beydoun receives

3  them.

4      If and after Mr. Beydoun receives them in whatever amount

5  he receives them, then it's just another asset of Mr. Beydoun

6  that subject to any applicable state exemption laws, a

7  judgment creditor like Kajy Development, LLC can go after and

8  seek to collect from in the State Court system.  But that's

9  different than saying that Kajy Development, LLC has

10 garnishment -- has rights against the City of Detroit as a

11 garnishee based on its garnishment writ from 2011.

12     My ruling is it does not in this bankruptcy case and for

13 purposes of distribution on claim 201 in this bankruptcy case

14 for the reasons that I have stated.  So the motion is granted

15 in part to the extent of the relief I've described.  Mr.

16 Spinner, I'll ask you to revise the order and submit the

17 revised order consistent with what I have ruled and I'll waive

18 presentment of that just to save some time and I will of

19 course carefully review the order when you submit it.  Do you

20 have any questions about the form of the order needed?

21         MR. SPINNER:  Only one minor clarification, Your

22 Honor.  You repeatedly referred to the relief in Paragraphs 2

23 and 3.  We would request that it be 2, 3, and 4 because 4 also

24 ends General Shale Brick's --

25         THE COURT:  Sure, yeah, that's fine, 2, 3, and 4.

1        MR. SPINNER:  Other than that we understand, Your

2    Honor.

3        THE COURT:  All right.  All right.  Well, thank you

4    all and that concludes this matter.

5        MR. SPINNER:  Thanks, Judge.

6        THE COURT:  Just a moment.  I want to hear next two

7    matters that are related, somewhat related.  Actually no, I

8    don't.  The matter I want to hear next is the city's objection

9    to the claim of claimant Steven Wolak.

10       MR. SWANSON:  Good afternoon, Your Honor.  Marc

11   Swanson on behalf of the city.

12       MR. KILPATRICK:  Good afternoon, Your Honor.

13   Richardo Kilpatrick on behalf of the trustee for the Steven

14   Wolak estate, Karen Evangelista.

15       MS. ARNDT:  Good afternoon, Your Honor.  Stephanie

16   Arndt on behalf of the estate of Christopher Wolak.

17       THE COURT:  All right.  One second, please.  All

18   right.  Thank you.  Go ahead, Mr. Swanson.

19       MR. SWANSON:  Thank you, Your Honor.  The first kind

20   of threshold issue on this matter is whether the Fieger law

21   firm had any right whatsoever to respond to the city's

22   objection to Mr. Wolak's claim.

23       The trustee as the Court probably noted, filed a claim of

24   interest in the claim and the city outlined in its reply brief

25   the Fieger firm did not have the right to assert a response to

1 | this objection because it has not been retained in the

2 | bankruptcy estate and its claim is -- is property of Mr.

3 | Wolak's bankruptcy estate.

4 | THE COURT:  Well, I can certainly see how the

5 | Chapter 7 trustee in the bankruptcy estate in the bankruptcy

6 | of Mr. and Mrs. Wolak has an interest in the outcome of this

7 | dispute, this claim objection and -- and on this claim.  But

8 | the claim -- the claim was filed by as I understand it, by

9 | Steven Wolak as personal representative of the estate of

10 | Christopher Wolak, deceased.

11 | And that's who the settlement was with that underlies

12 | this dispute.  And Steven Wolak is one of the debtors in a

13 | Chapter 7 case in his individual capacity, but not in his

14 | capacity as representative of the estate of Christopher Wolak.

15 | Isn't that right?

16 | MR. SWANSON:  That's right.  The settlement order

17 | though that was entered in the Circuit Court provided that the

18 | proceeds from the settlement would be -- at least a majority

19 | of them would be provided to Mr. Wolak and his wife who are

20 | both debtors in -- in the same Chapter 7 bankruptcy case.

21 | THE COURT:  I -- I think I saw what you're referring

22 | to there.  And that -- that certainly does indicate that

23 | Steven Wolak and his wife, Francine Wolak who are the debtors

24 | in the Chapter 7 bankruptcy case here certainly have a

25 | financial interest in the outcome of the dispute and therefore

1  so does their Chapter 7 bankruptcy trustee, right?

2          MR. SWANSON:  Correct.

3          THE COURT:  I did look in the -- take a look in the

4  -- a little bit at the bankruptcy case of the Wolaks by the

5  way.  For the record it's case 15-53842, a Chapter 7 case

6  currently pending in this Court before Judge Shefferly.

7      And I -- I noticed that the Wolaks each claim a partial

8  exemption in -- it looks like in the -- the proceeds of this

9  claim, at least a partial exemption.  So it looks like perhaps

10 we got both the Chapter 7 trustee and the Wolaks individually

11 all having a financial interest in the outcome of this

12 dispute.  Do you agree?

13          MR. SWANSON:  To the extent that that exemption is

14 valid, I would agree.

15          THE COURT:  Well, it's been -- it's not been

16 objected to timely, so it's deemed allowed as an exemption, I

17 believe.  And -- and certainly Mr. Kilpatrick can speak to

18 that in more detail.

19     But I -- I guess I come into this under the impression

20 that Steven Wolak both individually and in his capacity as --

21 as personal representative of the estate of Christopher Wolak,

22 deceased, has a financial interest in the outcome of this

23 dispute and of your claim objection.  And as does Francine

24 Wolak.  And as does the Chapter 7 trustee in the Wolaks'

25 Chapter 7 bankruptcy case.  They all have a financial

1 interest.

2      And the response that was filed, the only response that

3 was filed in the claim objection was by Steven Wolak as

4 personal representative.  And so he certainly had authority to

5 do that in that capacity, didn't he?

6      Now we've got another issue about -- and Mr. Kilpatrick

7 can tell me if he wants an opportunity to respond to your

8 objection too in writing.  Because it looks like you didn't

9 serve him with the claim objection formally even though he's

10 obviously aware of it and he's here.

11      But the response that was filed, why -- if you think that

12 was filed without proper authority, as a response of Steven

13 Wolak as personal representative of the estate of Christopher

14 Wolak, why is that?

15           MR. SWANSON:  I guess to begin with we weren't aware

16 that Mr. Wolak was in bankruptcy or we would have served Mr.

17 Kilpatrick.  And --

18           THE COURT:  Yeah.  I think the trustee filed a --

19 her notice after you had already filed your claim objection.

20           MR. SWANSON:  Yes, that's correct.

21           THE COURT:  Yeah.

22           MR. SWANSON:  To the extent that the Chapter 7

23 estate, and I'd -- I'd let them speak to this more than me,

24 can be separated from Mr. Wolak in his capacity as personal

25 representative of his son.  And I think the Court is correct

1 that there are two different interests here.

2       THE COURT: Well, I think in your reply brief you

3 had asked me to strike the response of Steven Wolak, personal

4 representative. Are you still asking for that or not?

5       MR. SWANSON: No, we'll waive that.

6       THE COURT: All right. So you want to talk about

7 the merits then?

8       MR. SWANSON: Sure.

9       THE COURT: All right.

10       MR. SWANSON: Your Honor, there's no legally

11 cognizable argument that Mr. Wolak as personal representative

12 of the estate presents to have his claim allowed in the amount

13 that he filed that claim.

14     Your Honor, the city requested that the claim be allowed

15 in the amount of $355,000 as a general unsecured claim and

16 $20,000 pursuant to the treatment in Article 4S of the plan

17 which provides that in accidents such as these, the accident

18 victim can have $20,000 in cash and then the balance of that

19 claim is distributed pursuant to Class 14 or Class 15 as

20 applicable.

21     Wolak makes two arguments, none of which contest the

22 city's objection which that this claim should be allowed in

23 the amount of 375,000, taking the 355,000 general unsecured

24 claim and the $20,000 cash claim. He makes no arguments in

25 support of the original claim amount which was $3,000,000.

1    What Mr. Wolak does is first he makes the same argument

2  that he did in front of this Court many many months ago.  And

3  that he should be paid the entire amount of the settlement.

4  We had a hearing on that.  Mr. Wolak filed his motion, we

5  filed an objection.  The Court held that it did not have any

6  authority to order that Mr. Wolak's claim would be elevated

7  above all other general unsecured claims because this Court,

8  the city, and Mr. Wolak are all bound by the city's confirmed

9  plan of adjustment.  Nothing has changed since that point.

10    THE COURT:  By the way, I did go back and review the

11  transcript of the bench ruling that I gave in ruling on that

12  earlier motion by Mr. Wolak.  That just for the record, the

13  transcript of that hearing which was held on July 15, 2015 is

14  on file in this case at docket 10070.  We dealt with several

15  things that day, this was one of them, this -- this motion.

16    And I -- my -- my ruling on the motion begins at Page 54

17  of the transcript and carries over at Page 60.  And then of

18  course I entered an order the same day at docket 10052, July

19  15th, 2015 denying the earlier motion by Mr. Wolak.  Which as

20  -- as -- as you know and I'm sure you're coming to this, that

21  the order said it's without prejudice to the city's right to

22  file a timely objection to the $3,000,000 claim filed in this

23  bankruptcy case by Steven Wolak, personal representative and

24  this order is without prejudice to the right of Steven Wolak,

25  personal representative to defend against any such claim

1  objection.

2      And I think in the bench opinion -- my bench opinion

3  ruling, I basically said we -- we leave to another -- I leave

4  to another day this question of whether among other things,

5  whether this alternative relief that Mr. Wolak has mentioned

6  and argued about in his response to your current claim

7  objection, is at all permissible the -- the alternative relief

8  of basically having the settlement undone or voided on grounds

9  that -- I don't know, various grounds, equity, fraud, whatever

10 it may be.

11     This notion that it's -- that the city agreed to a

12 settlement and Wolak agreed to a settlement right before the

13 filing of the bankruptcy case on the assumption that the

14 settlement amount, 375,000 would be paid in full cash dollars

15 at 100% by the city.  And that when the city filed its

16 bankruptcy case that sort of blew that apart, that's the idea.

17     So I'm putting it pretty roughly, but that's the idea of

18 course and -- the argument.  And I -- as I -- as I understood

19 my -- and recollected once I read the transcript, I -- I put

20 off any ruling on the merits of that kind of argument, didn't

21 I?

22          MR. SWANSON:  I -- I agree that you did with respect

23 to --

24          THE COURT:  Okay.

25          MR. SWANSON:  And just reinstating the -- the case.

1  I -- I don't think the Court put off any further argument on

2  whether the claim should be paid in full.  I think that was

3  decided then and that -- that argument --

4          THE COURT:  I think I -- I think it's certainly fair

5  to say and I -- this is my reading of it, that I did rule that

6  at that time that if -- you know, as long as the settlement

7  agreement is in place and there's a $375,000 allowed claim, as

8  long as that's the amount of the allowed claim then -- then

9  there's no basis for Mr. Wolak to be paid 100% of that claim

10 under the confirmed plan of adjustment.  And that seems to me

11 that's absolutely clear.

12     But anyway -- and of course all this stuff on the earlier

13 motion happened before the Wolaks filed their bankruptcy case.

14         MR. SWANSON:  That's correct, yeah.

15         THE COURT:  Okay.  So go ahead.

16         MR. SWANSON:  Certainly, Your Honor.  So one, the

17 city does not believe that there's any basis or -- to -- to

18 pay this claim in full and nothing's changed since the earlier

19 argument.  Of course the plan hasn't been amended.  The plan

20 still stands.  It was confirmed as binding on Mr. Wolak.

21     Second, Your Honor, Mr. Wolak does argue that the State

22 Court case should be reinstated.  But I submit that Mr. Wolak

23 has offered absolutely no proof in support of his allegations

24 of fraud or bad faith.

25     At the earlier hearing and I think the primary issue that

1  Mr. Wolak raises is that the city entered into this settlement

2  agreement by way of fraud knowing that it was going to file

3  bankruptcy.  And I believe Your Honor at the last hearing

4  asked Mr. Wolak well, wasn't that, you know, fairly well known

5  at the time that the city was considering bankruptcy.

6      And I think Mr. Wolak's counsel candidly acknowledged

7  that -- that it was.  I don't think in a response to a claim

8  objection a party can assert bad faith or fraud.

9          THE COURT:  I didn't -- you know, I didn't read the

10 transcript of the whole hearing, I just read my bench ruling.

11         MR. SWANSON:  Sure.

12         THE COURT:  You're saying that's in there?

13         MR. SWANSON:  I'm pretty sure it's in there.  The --

14 the Court --

15         THE COURT:  Do you have the page number in the

16 transcript?  I'd like to see that.

17         MR. SWANSON:  Sure.

18         THE COURT:  And again I'm sorry, I didn't read the

19 whole thing.  The hearing lasted I think a little while that

20 day.

21         MR. SWANSON:  It's going to take me a minute but

22 I'll find it.

23         THE COURT:  Go ahead.

24         MR. SWANSON:  Yeah.

25         THE COURT:  The transcript is docket 10070.

1          MR. SWANSON: Yeah. Page 44, Mr. Dworetsky, I

2   believe it's pronounced. He says it did. And all that

3   happened while -- while this bankruptcy is looming. They're

4   on the brink of bankruptcy. They know this thing is coming if

5   they negotiated with my client to compromise the claim.

6        Well -- the Court says well, they're not -- the city

7   isn't the only entity that knew it was coming were they? You

8   had no inkling? Mr. Dworetsky, understood. However the city

9   was the one that was making the payment.

10       So I --

11          THE COURT: This is at Page 44?

12          MR. SWANSON: Forty-four. Towards the top of the

13  page.

14          THE COURT: All right. Hold on. All right. I have

15  seen that excerpt. Go ahead.

16          MR. SWANSON: Your Honor --

17          THE COURT: I guess you're arguing from that there

18  can't be any fraud because there could not have been any

19  reasonable reliance by Wolak and his attorneys on the city not

20  filing bankruptcy.

21          MR. SWANSON: Exactly, Your Honor. The response

22  throws around words like fraud and bad faith. But they offer

23  absolutely no proof that there was any fraud or bad faith.

24       And -- and without any proof or any sort of affidavit

25  submitted in response, the city asks that its objection be

1 sustained.  There's no reason this State Court case should be

2 reinstated.

3    There was a settlement agreement.  And that is the value

4 of the claim at this point.  And the city will honor the plan

5 and pay the claim and $20,000 cash and the $355,000 general

6 unsecured claim.

7        THE COURT:  You agree, I -- I assume that under

8 Michigan law fraudulent inducement to a settlement agreement

9 is a grounds by which a party who was fraudulently induced to

10 enter a settlement agreement can essentially rescind it or

11 void it.

12        MR. SWANSON:  That sounds right to me, Your Honor.

13 I don't know the -- the case law, but that sounds very fair,

14 yeah.

15        THE COURT:  But -- and part of what you're saying is

16 there's just no evidence of that here.

17        MR. SWANSON:  No.  I mean repeatedly what we've

18 heard from Mr. Wolak is -- is throwing around these

19 allegations with absolutely no proof.  And that's what we got

20 in this response as well.  And he's had many opportunities to

21 make his case and he hasn't.

22        THE COURT:  Anything else you want to say then?

23        MR. SWANSON:  No, Your Honor.  Thank you.

24        THE COURT:  All right.  Mr. Kilpatrick, I think I

25 should give you an opportunity to be heard unless you want to

1 | wait until after Ms. Arndt.

2 |       MR. KILPATRICK: I'm -- I'm going to be real brief,

3 | Your Honor.

4 |       THE COURT: All right. Go ahead.

5 |       MR. KILPATRICK: Your Honor, the -- the -- Steven

6 | and Francine Wolak filed a Chapter 7 bankruptcy case September

7 | 21, 2015. Ms. Evangelista was appointed the interim trustee

8 | and became the permanent trustee on October 28th, 2015 at the

9 | conclusion of the 341 examination.

10 |     As this Court has noted it was case number 15 -- it is

11 | case number 15-53842 assigned to Judge Shefferly. You did

12 | note that there is an exemption claimed by both Francine and

13 | Steven Wolak.

14 |     Mr. -- Mr. and Mrs. Wolak claim a total of approximately

15 | $11,000. As is obvious the amount that's in prospect exceeds

16 | the amount of the claimed exemption and it has not been

17 | amended to date. So their interest is limited to that amount.

18 |     We have reviewed with Mr. Swanson once he became aware of

19 | the trustee's interest which was in -- the trustee's claim of

20 | interest was filed to put this Court on notice and also the

21 | City of Detroit on notice as to the filing of the Chapter 7

22 | case to preserve the right for the trustee to capture whatever

23 | is due to this -- to the -- to the Wolak estate for

24 | distribution to those creditors.

25 |     Once we -- once that notice was received by Mr. Swanson

1  he was kind enough to provide us with the documents, all of

2  the underlying documents that were filed in this case and

3  after a thorough review by both myself and my client who is an

4  attorney, we found no basis to really object to the treatment,

5  to the -- to the relief sought by the trustee -- by the -- by

6  Mr. Swanson and the City of Detroit.

7      As you're aware, I -- I have a relatively unique position

8  having represented the Water and Sewerage Department in -- in

9  other matters before this Court.  And the history there and --

10         THE COURT:  In this case.

11         MR. KILPATRICK:  In this case.

12         THE COURT:  Yeah.

13         MR. KILPATRICK:  And -- and leading up to -- leading

14  up to the actual filing of the case.  I hear the arguments

15  that are being made by our counsel by the way and which we're

16  employing a special counsel.  But at the same time having been

17  retained by the Water and Sewerage Department, some 18 months

18  prior to the actual filing of the case, it's hard to think

19  that anybody who lived in southeastern Michigan wasn't aware

20  of the financial difficulties that the city was confronting

21  starting in 2012 once we no longer had access to the capital

22  markets to finance its current obligations.

23      And in the prospect of the filing of a chapter -- some

24  type of Chapter 9 case or some type -- some type of

25  reorganization after the appointment of Mr. Orr earlier that

1 | year.  Again --

2 | THE COURT:  Wait.  Just a question.  You -- it

3 | sounds like you just said that Ms. Evangelista, the trustee in

4 | your case, your bankruptcy case is employing Ms. Arndt's firm

5 | as special counsel for the trustee?

6 | MR. KILPATRICK:  Yes, we are.

7 | THE COURT:  You are.  Okay, I hadn't seen that.  Is

8 | that --

9 | MR. KILPATRICK:  Well, we're -- we're in the process

10 | of doing that now.  I -- in fact I met with one of my

11 | associates, I assume it had been done well prior to now.  But

12 | -- but we are going to do that just to get this thing wrapped

13 | up and concluded.

14 | THE COURT:  All right.  I'm sorry to interrupt you

15 | with that, but go ahead you were saying.

16 | MR. KILPATRICK:  But -- but with that, Your Honor, I

17 | cannot get in front of -- appear in this Court and -- and

18 | argue that -- I can't assert the basis that they have in their

19 | response to the objection.

20 | The trustee -- in essence, the trustee agrees with the

21 | treatment afforded by the city in its objection to the

22 | allowance of the claim filed by Fieger -- by the Fieger office

23 | on behalf of the Wolaks.

24 | THE COURT:  All right.  Thank you.  Ms. Arndt.

25 | MS. ARNDT:  Thank you very much, Your Honor.  First

1  of all, you kind of hit the nail on the head right out of the

2  gate.  The estate is a separate and distinct entity from the

3  parent.

4      Yes, Mr. Steven Wolak was appointed as personal

5  representative but that is the limit and scope of his

6  authority.  And before he filed bankruptcy we could have had a

7  public administrator.

8      The estate is a separate entity.  The estate is the party

9  that is before this Court right now.  When the Court was --

10          THE COURT:  It is -- you're referring to the

11  decedent estate.

12          MS. ARNDT:  The decedent estate.

13          THE COURT:  Rather than the bankruptcy estate or the

14  Wolaks' bankruptcy case.

15          MS. ARNDT:  I'm sorry, Your Honor.

16          THE COURT:  To keep it straight, call one the

17  decedent's estate and the other the bankruptcy estate.  Can we

18  do that?

19          MS. ARNDT:  Absolutely.

20          THE COURT:  All right.  Go ahead.

21          MS. ARNDT:  Great idea.

22          THE COURT:  Go ahead.

23          MS. ARNDT:  So I'm here today on behalf of the

24  decedent's estate of Christopher Wolak.  When the Court was

25  discussing with co -- or opposing counsel the issue of

1  fraudulent inducement, he said well, there's nothing here

2  showing any reasonable reliance by the plaintiff.

3      Are you kidding me?  We went to Court.  We got a Court

4  order.  There were representations by the City of Detroit at

5  that hearing.  This is a settlement.  This is what we're going

6  to pay.  Testimony was taken.  Judge Stempien entered an

7  order.  Of course there was reasonable reliance as to that

8  issue.

9          THE COURT:  Excuse me.  You're talking about the

10  hearing that led to entry of the order approving the

11  settlement that was filed in the Wayne County Circuit Court on

12  May 13, 2013?

13          MS. ARNDT:  Absolutely, Your Honor.

14          THE COURT:  Which is an attachment to your client's

15  response, docket 11662, right?

16          MS. ARNDT:  Yes, Your Honor.  I believe it was the

17  first exhibit.

18          THE COURT:  Was the hearing on May 13 or close to

19  that date?

20          MS. ARNDT:  Generally the hearings are very close to

21  that date because they usually -- I mean it wasn't -- it's a

22  filing now, but usually we would with the order.

23          THE COURT:  So it's about two months before the city

24  filed their bankruptcy case?

25          MS. ARNDT:  Right.  But we're there, everybody is

1  there.  And we're putting this on the record in front of the

2  Court.  So absolutely there was reasonable reliance.

3      The other issue we have --

4          THE COURT:  Well, wait a minute, wait a minute.  The

5  transcript of what was said in that hearing is not currently

6  in the record in this case, is that right?  I didn't see it

7  anywhere.

8          MS. ARNDT:  I am not aware that it is.  I do not

9  believe that it's been reduced to writing, no.

10         THE COURT:  And why do you say there was reasonable

11 reliance, essentially reasonable reliance.  And I think your

12 theory if I understand it for voiding the settlement as your

13 alternative relief is that your side was fraudulently induced

14 by city -- the city to enter this settlement based on the

15 city's either implied representation, or failure to disclose

16 that the city was soon going to file bankruptcy.

17         MS. ARNDT:  That is --

18         THE COURT:  The implied representation, the city was

19 not soon going to file bankruptcy or that the city would pay

20 this full amount before filing bankruptcy or even after filing

21 bankruptcy, this full $375,000 amount, or their failure when

22 they had a duty to disclose that they were about to file

23 bankruptcy and they didn't do it, is it.  And that the -- your

24 side reasonably relied on that and that that was done with

25 fraudulent intent by the city.

1    That's -- that's the -- isn't that essentially what you

2 would have to prove at least in part in order to avoid this

3 settlement based on fraudulent inducement?

4         MS. ARNDT:  Yes.  But that is not our only argument

5 on voidance.

6         THE COURT:  Okay.

7         MS. ARNDT:  The other argument is the fact that we

8 have -- that the lawsuit that was commenced in Wayne County is

9 a multi-defendant lawsuit.  There were direct claims of

10 negligence against both the City of Detroit and Audrian -- or

11 Audrian -- Audrian Hardy.

12    There was a global settlement that was reduced to a

13 global release.  There is no indication in the release as to

14 whose apportionment was to what between the city and Ms.

15 Hardy.

16    Obviously if the Court so rules, the city is bound by its

17 portion of the bankruptcy.  But Ms. Hardy is not a party to

18 this bankruptcy.

19         THE COURT:  Well, wait a minute, wait a minute.  Are

20 you saying here -- it sounds like what you're saying here is

21 that the settlement documents are not clear as to who as

22 between the two defendants was to pay how much of the total

23 settlement?

24         MS. ARNDT:  That is correct, Your Honor.

25         THE COURT:  Or whether -- or whether both

1  defendants, City of Detroit and Audrian Hardy --

2      MS. ARNDT:  Yeah.

3      THE COURT:  Are -- are not -- are jointly and

4  severally liable for the full amount.  So that whatever the

5  city doesn't pay as a result of their bankruptcy or otherwise

6  you want to be allowed to go after Audrian Hardy for the rest.

7  Is that the idea?

8      MS. ARNDT:  That is the general idea.  But I will

9  make one point though.  Because this is something that keeps

10  coming up as I'm trying to explain this concept to people.

11      As someone who does a lot of personal injury work, Your

12  Honor, what's going to happen is I mean they will send me this

13  answer.  Well, just go file as to Ms. Hardy I mean if that's

14  your theory.

15      Well, that's fine except the release says the City of

16  Detroit and all of its employees.  So we have an ambiguity in

17  the contract of the release agreement.  It was drafted by the

18  city so we construe that against the drafter.  And --

19      THE COURT:  What's ambiguous in the release?

20      MS. ARNDT:  It doesn't indicate who is paying what.

21  So the Court can't --

22      THE COURT:  Well, wait a minute, wait a minute.  The

23  release -- you're right.  But the release is not ambiguous in

24  -- in the fact that it releases not only the City of Detroit,

25  but Audrian Hardy, right?

1            MS. ARNDT:  That is how it's worded yes, Your Honor.

2            THE COURT:  I -- I think I -- the point about it

3    doesn't clearly say who is to pay what as between the two

4    defendants.  It just says second line, in consideration of the

5    sum of $375,000 and an entry of an order, et cetera.  There's

6    the release.  Is that what you mean?

7            MS. ARNDT:  Yes, Your Honor.  And obvious --

8            THE COURT:  So -- so what you're saying is what?

9    That -- that Audrian Hardy is released except she's not

10   released from making the payment required by the settlement

11   agreement to the extent the city doesn't pay it, is that the

12   idea?

13           MS. ARNDT:  She is potentially released by the

14   settlement agreement.  As to which portion of her

15   responsibility for the three seventy-five is hers versus the

16   city's and therefore the city's portion may be applicable to

17   the city or her portion may be applicable to her, that -- that

18   release agreement that the city drafted does not indicate

19   that.  And for us to try to --

20           THE COURT:  Well, what does that problem have to do

21   with what the city's responsibility is in the bankruptcy case

22   in -- in -- in terms of paying under this settlement?  In

23   other words how does that affect what the city is required to

24   pay under its confirmed plan of adjustment based on this

25   pre-petition settlement agreement?

1          MS. ARNDT:  Well, it would affect the amount.

2          THE COURT:  Why would it affect the amount?  The

3    city -- let's assume for a minute -- let's assume for a minute

4    the city based on a favorable ruling here, let's assume the

5    city is ordered to -- that the city's objection to claim is

6    sustained here so that what the city ends up paying your

7    client is 20,000 in cash plus whatever distribution comes as a

8    result of your client having a Class 14 allowed claim in the

9    amount of $355,000.  Certainly it's going to be less than

10   355,000 ultimately.

11       So less than the full three seventy-five gets paid by the

12   City of Detroit.  Isn't that the only thing the Court in this

13   bankruptcy case has any business deciding?  That is what

14   Detroit's responsibility is and -- and isn't it up to the --

15   to the State Court to rule and decide what responsibility if

16   any or liability if any Audrian Hardy has individually under

17   the settlement agreement.

18         MS. ARNDT:  But the State Court can't do that, Your

19   Honor, unless you send us back to the State Court to be

20   considered there.  Because otherwise the State Court is going

21   to say this is a City of Detroit Bankruptcy Court matter and I

22   will defer to that.

23       If Your -- if Your Honor says send it back to the State

24   Court, what happens is, we set this for trial.  We have a

25   trial.  Michigan is a several liabilities state and we have an

1  allocation of fault.  And that's how we decide.

2          THE COURT:  Well --

3          MS. ARNDT:  Or -- or we try to reach a separate

4  settlement with Ms. Hardy.  But if Your Honor --

5          THE COURT:  Well, an alternative to that is Ms.

6  Hardy could say, we're all bound by this -- still bound by the

7  $375,000 settlement.  So the most I could possibly owe is

8  whatever the city doesn't pay of the three seventy-five and

9  that's it.

10     We're not going to have a trial, it's settled.  And

11  that's a -- that's an alternative position that could possibly

12  be adopted.  But it -- I guess my -- my point is, -- the point

13  of my question is, the issue of what responsibility or

14  liability Ms. Hardy may have individually is not an issue for

15  this Court in this bankruptcy case, I don't think.

16     It's an issue if to be decided anywhere by the State

17  Court.  And if what you're saying is that in any order I

18  enter, I should say something to make clear to the State Court

19  that that's the case, fine, you know, tell me what you want

20  and I'll consider it.

21     But, you know, I don't think I -- I need to or ought to

22  as the Bankruptcy Court in the City of Detroit case make a

23  decision about what Audrian Hardy owes individually under the

24  settlement agreement.  I mean unless I'm missing something.

25  Why -- why should I be involved in -- in doing that rather

1 than the State Court?

2        MS. ARNDT:  Well, but I think Your Honor if you

3 sustain their objection it -- from what I understand the

4 20,000 goes through, the annuity goes through, and we operate

5 like Ms. Hardy doesn't have an issue here.  But Ms. Hardy does

6 have an issue here.

7        THE COURT:  By annuity you mean -- you mean the --

8 the distribution on the Class 14 claim?

9        MS. ARNDT:  Yes.

10        THE COURT:  On the -- the bond, the thing.  Some day

11 that's the amount that -- that -- that is realized on that

12 Class 14 claim, the actual dollar amount or value will be --

13 will be known.  But it's not known at the moment.

14     But there's going to be some sort of deficiency, assuming

15 you know, that that's the outcome for -- in the city's case

16 with respect to this claim.  And so I think the question

17 you're raising is well, then what is Audrian -- Audrian

18 Hardy's liability if any under the settlement agreement or

19 otherwise in light of the fact if it becomes the fact that the

20 full three seventy-five is not paid 100 cents on the dollar by

21 the city.

22     And my reaction to that is why isn't that for the State

23 Court to decide.  And -- and if necessary perhaps, you know,

24 with some guidance from this Court in the form of an order

25 saying this is without prejudice to any rights or claims the

1   claimant here Mr. Wolak may have against Audrian Hardy

2   individually under the settlement agreement or otherwise.  And

3   then off you go to the State Court about that.

4              MS. ARNDT:  Well, Your Honor --

5              THE COURT:  Is -- is that the appropriate way for

6   this Court to deal with the Audrian Hardy issues that you're

7   raising?

8              MS. ARNDT:  I think that we are headed in the right

9   direction.  The one obstacle that is created by the City of

10  Detroit's relief that they drafted is that the phraseology of

11  the City of Detroit and all employees.

12      Because what's going to happen until you get -- they

13  drafted this release, it got signed everyone thinking the

14  three seventy-five is going to be paid.  We got orders entered

15  to that effect.

16      And now what will happen is if Your Honor crafts that

17  language informing the Court that it -- the State Court that

18  it can consider this Audrian Hardy claim, they're just going

19  to argue res judicata.  Because they're going to say that it's

20  in the release -- or and the release applies.

21      And so it's like we end up nowhere again.  And this --

22  this agreement does not say what percentage of what.

23             THE COURT:  Well, I come back to my question.  What

24  is that -- how is that relevant to the matter before me in

25  this Court in this case today which is the issue of whether

1  the city is right or wrong about what the Court should do with

2  your proof of claim for $3,000,000 against the city filed in

3  this case.  Do you see -- do you see why I'm coming back to

4  that --

5          MS. ARNDT:  I understand -- I understand where

6  you're going, yes.

7          THE COURT:  I sound like a broken record probably.

8  But --

9          MS. ARNDT:  I probably do too.

10         THE COURT:  Yeah, maybe.  Yeah, we're --

11         MS. ARNDT:  Maybe we're getting to that point.  I --

12  I think that whatever the Court decides I think that we need

13  to -- to be cognizant of the potential state law claims.  And

14  I agree with you that phraseology needs to go in there

15  somewhat advising the State Court that -- that this -- this

16  issue was not decided by you.

17         THE COURT:  Okay.  So let's move on.  What else do

18  you want to say about this -- your response to the city's

19  claim objection.

20         MS. ARNDT:  That would be all, Your Honor.  I -- for

21  the remainder of it I would rest on my brief.  And I'm here to

22  answer any questions that the Court has.

23         THE COURT:  So how is there fraudulent inducement to

24  -- to -- by the city to enter -- to induce your client to

25  enter into this settlement agreement in May 2013 or

1 | thereabouts?

2 |         MS. ARNDT:  Right.  Your Honor --

3 |         THE COURT:  Do you want to say -- you want to

4 | elaborate on that at all a little more?

5 |         MS. ARNDT:  I want to elaborate it to the extent

6 | that --

7 |         THE COURT:  The city has said you got no details,

8 | you got no facts, you got no evidence on that.  And he cited

9 | of course he cited at Page 44 what Mr. Dworetsky said or

10 | Dworetsky said at the hearing on July 2015 on that.

11 |         MS. ARNDT:  Well, I don't -- from what was quoted,

12 | what was brought out last in the record I don't think that was

13 | binding and is any concession by Mr. Dworetsky that he knew

14 | that the City of Detroit bankruptcy was coming on that day.

15 |     I think the only people who knew that were the law

16 | department and the people that they retained to help them put

17 | that petition together.

18 |         THE COURT:  Well --

19 |         MS. ARNDT:  That being said, the law department is

20 | also the one that negotiated the settlement.  And so they knew

21 | that this was coming.

22 |         THE COURT:  Well, so far, okay, as I understand the

23 | record in this bankruptcy case, there is no evidence yet at

24 | least in the record to substantiate a claim of fraudulent

25 | inducement by the city of -- of your client to enter into this

1  settlement agreement.

2      You're arguing reasons why you think there -- it sounds

3  like whether you think there is or may be such a claim, but

4  there's no evidence.

5          MS. ARNDT:  Well, Your Honor --

6          THE COURT:  For example -- for example, there's no

7  evidence yet in the record at least of -- of what your client

8  and your client's attorneys, your firm whoever, you know, was

9  involved at the time, knew or didn't know, or thought or

10 didn't think about the city filing bankruptcy soon and what

11 affect that might have if any on this settlement.  There's

12 just nothing in the record yet in the way of evidence of the

13 specific facts about that, do you agree?

14         MS. ARNDT:  I do agree.

15         THE COURT:  Other -- with the possible exception of

16 what Mr. Dworetsky said in the July hearing which you have

17 argued doesn't really amount to any concession.  Am I right

18 about that?

19         MS. ARNDT:  I do, but I also would indicate to the

20 Court that I think that that's the most appropriate thing for

21 an evidentiary hearing.  I know that the attorney who

22 negotiated that settlement on behalf of our firm and Mr.

23 Wolak's estate -- the decedent's estate is no longer with the

24 firm so we'll obviously have to bring him in.  And the big

25 place --

1          THE COURT:  Who is that?

2          MS. ARNDT:  I believe it was Mr. Michael Ratton at

3   the time.

4          THE COURT:  Michael what?

5          MS. ARNDT:  Ratton, I believe.  Don't --

6          THE COURT:  Do you want to spell that for me?

7          MS. ARNDT:  Mr. Ratton's last name is R-a-t-t-o-n.

8          THE COURT:  He's no longer with your firm.

9          MS. ARNDT:  No, he started his own firm.

10         THE COURT:  Still around though.

11         MS. ARNDT:  Oh, he's in the area.  His office is in

12  Southfield.  And I --

13         THE COURT:  Well, okay.  So are you -- are you

14  saying that you want the Court to give you an opportunity to

15  file -- or supplement your response to the claim objection

16  with affidavits, documentation of factual evidentiary support

17  for a fraudulent inducement argument?

18         MS. ARNDT:  I -- if that is how the Court would like

19  to begin developing the record, absolutely I would like that

20  opportunity.

21         THE COURT:  Well, I generally don't set evidentiary

22  hearings unless I am persuaded that we actually need them.

23         MS. ARNDT:  Okay.

24         THE COURT:  Need it.  And -- and that means that

25  there's a genuine dispute, factual dispute about some fact

1  that matters to a -- to a motion or -- or an issue.  And so I

2  do think it's appropriate that we begin if we're going to do

3  anything more at all that we begin with filing of affidavits,

4  a transcript of this hearing in State Court if you want to

5  submit that, whatever evidence you want to submit.

6         MS. ARNDT:  Uh-huh.

7         THE COURT:  Document or including affidavits.  And

8  then of course you have -- the city would have an opportunity

9  to respond to that.  And then if -- if I decide at a further

10  hearing that we do need an evidentiary hearing, then I'd set

11  one and we'd have it.

12     But are you saying you want that opportunity to submit

13  such documentary evidence, affidavit and the like, even though

14  you didn't put it in your response that you filed so far.

15         MS. ARNDT:  Yes, if the Court would so graciously

16  give me the opportunity I would.

17         THE COURT:  And this is for a theory -- an effort to

18  avoid the settlement agreement as having been fraudulently

19  induced.

20         MS. ARNDT:  Yes, I understand.

21         THE COURT:  Is that right?

22         MS. ARNDT:  Yes.

23         THE COURT:  I mean are there other arguments you

24  want to -- to make for avoiding the settlement agreement as

25  opposed to issues about interpreting it or applying it in the

1  bankruptcy case?  In other words you -- you got two paths to

2  go down.

3          MS. ARNDT:  Right.

4          THE COURT:  One is you -- you -- you stick with the

5  settlement agreement and -- and -- and you don't try to avoid

6  it and undo it, rescind it.  And -- and you argue about what

7  it means and what it requires and those sorts of things.

8      And the other path is, you avoid -- try to avoid the

9  settlement agreement, say it should be rescinded and ignored,

10 cancelled for fraudulent inducement or because some other

11 valid legal basis for rescinding or avoiding a contract.

12     One -- one seeks to enforce the -- the settlement

13 agreement, the other seeks to avoid it, the opposite.

14         MS. ARNDT:  Oh, I --

15         THE COURT:  Do you see what I'm saying?  So --

16         MS. ARNDT:  Absolutely.

17         THE COURT:  I want to know what if -- if you want an

18 opportunity to do -- file further briefing and further

19 evidence, I want to know what it -- what about is what I'm

20 asking you.

21         MS. ARNDT:  I think, Your Honor, we would go more in

22 the general area of the avoiding of the agreement to -- to

23 issues such as fraudulent inducement.  That being said, Your

24 Honor, because I have not had an opportunity to speak to the

25 individual who represented Mr. Wolak's decedent's estate at

1  the time, nor the facilitator who I believe was involved, I

2  would not -- I would like to kind of leave the path open but

3  maybe not in excess to a fraudulent inducement theory.

4      That allow -- I mean obviously whatever the Court would

5  allow ample time for them to respond and then the Court to

6  make its decision based on everything submitted.

7          THE COURT:  Well, for the benefit of both sides, let

8  me say this.  I -- I have in the past had occasion to rule on

9  motions that seek to enforce a settlement agreement.  Not just

10 the City of Detroit case, but in other cases.

11         MS. ARNDT:  Uh-huh.

12         THE COURT:  And I have in at least one other case,

13 I'm sure more, but at least one other case as -- kind of a

14 lengthy bench opinion I've given and there's a transcript of

15 -- of what I said.  When I -- where I talk about general

16 principles applicable to settlement agreements and enforcing

17 them and interpreting them under Michigan law as well as

18 possible grounds of Michigan law recognizes for avoiding

19 enforcement of a settlement agreement, undoing it essentially.

20     Essentially those are duress, fraud, mutual mistake,

21 severe stress, or unconscionable advantage taken by one party

22 over the opposing party.  And there's case law that -- that

23 talks about what those things mean and what you have to show

24 to -- to establish any of those things.

25     But those are the basic grounds.  And -- and just for the

1  record I'll -- I'll say that I think what I'll do is I will

2  file a -- a copy of my -- the transcript of my bench opinion

3  on this subject from another case, from a different case, and

4  not the City of Detroit case.  In this case so the parties

5  will be able to see it and read it and see what I said in

6  there.

7      But the case that -- that among other cases that stand

8  for that proposition, that -- that exceptions to enforcing a

9  settlement agreement essentially or defenses, is the case of

10  Dezaak, D-e-z-a-a-k, Management, Inc. v Auto Owners Insurance

11  Company reported at 2012 Westlaw 5258304, a decision of the

12  Michigan Court of Appeals from October 23, 2012.  And there's

13  other cases, but that's one of them.

14      And it says, "in the absence of duress, fraud, mutual

15  mistake, severe stress, or unconscionable advantage taken by

16  one party over the opposing party, Courts are bound to

17  enforcement settlement agreements."

18      So you got -- there's this fraud type basis, you know,

19  just like any contract.  If you want to try to avoid a -- a

20  contract on grounds of fraudulent inducement, you know,

21  there's certain things you have to prove and Michigan case law

22  exists on this subject.

23      But those are the grounds.  And it sounds like the only

24  one that you're really talking about that's at all even

25  arguable is fraudulent inducement.  Is there some other

1  ground, legal ground for avoiding this settlement agreement

2  that you are arguing, or is it -- or is that it?

3      And I know you said bad faith. But bad faith is not a

4  basis under Michigan law for avoiding a settlement agreement,

5  enforcement of the settlement agreement. Bad faith has to

6  rise to a level of unconscionability, duress, severe stress.

7  The more extreme thing.

8      So perhaps the -- the thing to do is for me to just leave

9  it at -- at what I've said about the grounds in the <u>Dezaak</u>

10  case that I think that they're alluding to there. And again

11  I'll file a -- a transcript. It's from a bench opinion I gave

12  in an adversary proceeding, adversary proceeding 14-4318.

13  It's at docket 133 in that adversary proceeding. Case of

14  <u>Collins v Deshikachar</u>.

15      And this was given April 29, 2015, a bench opinion. So I

16  will -- I will file a copy of that transcript so that everyone

17  can read it and see what it says for whatever it's worth. And

18  I'm just going to file the portion of the hearing from that

19  day that has my ruling in it, so it's going to be excerpts.

20         MS. ARNDT: Okay, very good.

21         THE COURT: So but anyway back to -- to you. Did

22  you want to say anything else about this now?

23         MS. ARNDT: No, not other than to get a -- a time

24  parameter from the Court.

25         THE COURT: All right. Thank you. Mr -- we'll

1  come back to that in a minute.  Mr. Swanson, did you want to

2  reply briefly in support of the objection to claim?

3          MR. SWANSON:  Well, it seems like the Court's

4  inclined to -- to grant Mr. Wolak additional time to

5  supplement his response so the city would -- would just ask

6  that it be entitled to respond to -- to anything Mr. Wolak

7  files.

8      I think it's a tough case to make fraud here.  Kevin Orr

9  was appointed in March of 2013 several months prior to this

10 settlement agreement being executed.  You know, the whole --

11         THE COURT:  I understand and I -- you know, I -- I

12 am giving the other side an opportunity to -- to -- to file

13 further things.  I -- I don't mean to imply or suggest to

14 either side a -- a leaning one way or the other on this.  So

15 I'm not -- I really don't intend to express any view about the

16 ultimate outcome on this kind of argument.

17         MR. SWANSON:  Certainly.

18         THE COURT:  But I -- I do think it's appropriate to

19 give the other side a -- a -- a further opportunity and of

20 course the city and the Chapter 7 trustee, the Wolak case an

21 opportunity to respond to that.  And then we'll have a further

22 hearing.

23         MR. SWANSON:  Sure.  And -- and final point is with

24 respect to Ms. Hardy.  We can turn back to Page 44 of -- of

25 the transcript and -- and Mr. Dworetsky said again,

1 understood, however, the city was the one that was making the

2 payment.  Ms. Hardy was not obligated to make any payment.

3 The city vehemently disagrees with that -- that argument.  It

4 was the city that was making the payment under the settlement

5 agreement.

6          THE COURT:  Well, that certainly may have been

7 everyone's expectation.  Because the city was the deep pocket

8 and -- and Ms. Hardy presumably was not.

9      But that doesn't necessarily mean she's not -- wouldn't

10 be on the hook for -- for the unpaid part of the settlement,

11 the city didn't pay it all, does it?

12          MR. SWANSON:  I think if the city is the one who's

13 -- who was contractually obligated to -- to make the payment,

14 and -- and Ms. Hardy was not, then I -- I don't think Ms.

15 Hardy has -- has any -- any liability here.

16          THE COURT:  Well, is there -- this -- I meant to ask

17 you to make sure I -- I knew the answer to this question

18 before and I didn't ask either side.  But the only thing in

19 the record so far is this -- about this settlement that in

20 writing about the settlement in here is that the State Court

21 order approving the settlement.

22          MR. SWANSON:  Sure.

23          THE COURT:  And the release document.  These are

24 attached as exhibits to Wolak's response.  I think they were

25 also filed as part of Wolak's earlier motion back in 2015.

1  Are these the only documents or writings that evidence the

2  settlement?

3          MR. SWANSON:  I believe there's also a motion filed

4  too that led to the entry of that order.

5          THE COURT:  But there's no separate document,

6  settlement agreement type document.

7          MR. SWANSON:  If -- if -- I'm not aware of any, but

8  I will ask the question and if there is, we'll bring it to the

9  Court's attention.

10          THE COURT:  Well, all right.  Anything else, Mr.

11  Swanson?

12          MR. SWANSON:  No.  No, Your Honor.

13          THE COURT:  All right.  Well, I am going to order

14  further proceedings on this claim objection before making an

15  ultimate ruling on it to give -- to grant the request by Mr.

16  Wolak as personal representative of the estate of Christopher

17  Wolak, deceased, an opportunity to present evidence and

18  further argument as to why the alternative relief requested in

19  the response to the claim objection should not be granted.

20  That is that the settlement agreement, essentially the

21  settlement agreement at $375,000 be avoided.

22      And in this case one of the arguments that I understand

23  Mr. Wolak wants to further support and argue is essentially

24  that he was fraudulently induced by the city to enter into the

25  settlement agreement and to the settlement

1      And possibly other grounds for avoiding the settlement

2  agreement that apply and exist and permit parties to avoid

3  settlement agreements and avoid enforcement of settlement

4  agreements under Michigan law.  And I will give that

5  opportunity for Mr. Wolak to pursue that in the way of a

6  further briefing and filing of evidence in the form of

7  affidavits and other documents in support of that -- those

8  type arguments.

9      The -- with respect to the -- the alternate path of --

10  that is the first choice of Mr. Wolak in his response to the

11  claim objection that the Court should require the city to pay

12  100% of the $375,000 settlement amount here to Mr. Wolak.

13      There is I -- I -- I will, and this is consistent with

14  the ruling that I made back in July 2015 on Mr. Wolak's

15  earlier motion.  There simply is no basis in my view for the

16  Court to grant that relief.

17      The -- the $375,000 if the settlement agreement is not

18  avoided and -- and does remain effective and enforceable, that

19  agreement clearly means in my view that Mr. Wolak has -- is to

20  be allowed a claim in the total amount of $375,000 in the

21  city's bankruptcy case.  And if the claim is to be treated in

22  Class 5 the way the city has proposed it be treated and

23  satisfied -- and classified in the city's objection to claim

24  and in the proposed order filed by the city with the claim

25  objection.

1    That is that it be paid $20,000 in cash and a -- the

2  balance, the $355,000 balance be an allowed Class 14 other

3  unsecured claim.  That's what will become of and happen to and

4  be done with the claim number 3232 for $3,000,000 filed by Mr.

5  Wolak, unless Mr. Wolak is able to prevail in avoiding the

6  settlement agreement, the pre-petition settlement agreement at

7  issue here.

8    And so I -- I will give Mr. Wolak an opportunity to do

9  that if he wants to do that.  And I want to set up a schedule

10  for further filings now on that subject.

11    The first filing will be by Mr. Wolak.  Mr. Wolak may

12  file -- and I want to set a deadline, may file a supplemental

13  brief and exhibits containing any evidence such as affidavits

14  and other documents Mr. Wolak wishes the Court to consider in

15  support of any argument Mr. Wolak makes for avoiding the

16  settlement agreement.

17    Ms. Arndt, how much time do you want the Court to give

18  you to -- to file those things?  I want to set a deadline for

19  that.

20        MS. ARNDT:  Would 30 days be appropriate?

21        THE COURT:  I'm sorry?

22        MS. ARNDT:  Would 30 days be appropriate?

23        THE COURT:  That's fine.  Thirty days from today is

24  December 16, Friday, 2016.  So that will be the deadline for

25  that.  Mr. Kilpatrick, on behalf of the trustee, Ms.

1 | Evangelista in the bankruptcy case, do you want to file --

2 | have an opportunity to file something, and this is optional of

3 | course, but to file something after Ms. Wolak -- Mr. Wolak

4 | files whatever he's going to file?

5 | MR. KILPATRICK: Yes, Your Honor. And I would need

6 | -- I would only need seven days.

7 | THE COURT: So seven days after December 16, is that

8 | what you're saying?

9 | MR. KILPATRICK: That's correct, Your Honor.

10 | THE COURT: All right. Well, that's December 23. I

11 | believe our Court is closed that day, so if I said December 23

12 | you would automatically get more time than that. So do you

13 | want to -- we're looking at December 22, six days, or --

14 | MR. KILPATRICK: Let's go -- I want --

15 | THE COURT: December 27th.

16 | MR. KILPATRICK: The 27th is -- thank you.

17 | THE COURT: All right. We'll make it December 27th,

18 | 2016. Trustee may file a response and it's optional, of

19 | course on the part of the trustee. You've already stated your

20 | position and agreement with the city and of course if the

21 | trustee changes that view based on what Mr. Wolak files, then

22 | that -- that's up to -- up to the trustee.

23 | Mr. Swanson, the city's response deadline should be how

24 | long after December 16?

25 | MR. SWANSON: The city would propose January 17th,

1          THE COURT:  That's fine, January 17, 2017.  That

2    response may be a brief and any exhibits, including evidence,

3    including affidavits and documents.

4       And we will have a further non-evidentiary hearing on

5    this claim objection on January 25, 2017 at 1:30 p.m.  That's

6    a day where I think we already have set up for an available

7    date for the City of Detroit to have hearings on claim

8    objections.  So you're probably going to be here anyway --

9    anyway.

10      And again this is a non-evidentiary hearing.  So if I --

11   if I conclude during that hearing that an evidentiary hearing

12   is required, I will schedule one, but it won't be that day.

13         So I'm going to prepare and enter a -- an order

14   scheduling type order reflecting these further proceedings.

15   Is there anything else that -- other than what I've talked

16   about here that anyone thinks we should -- I should include or

17   address in this order I'm going to do.  Mr. Swanson.

18            MR. SWANSON:  No, Your Honor.  Thank you.

19            THE COURT:  Mr. Kilpatrick.

20            MR. KILPATRICK:  No, Your Honor.  Thank you.

21            THE COURT:  Ms. Arndt.

22            MS. ARNDT:  No, Your Honor.  Thank you.

23            THE COURT:  All right.  I will -- as I said I'll

24   prepare an order and I'm also going to file this transcript of

25   this bench opinion in the other case that I mentioned to you

1  also.  Thank you on that matter.

2          MS. ARNDT:  Thank you, Your Honor.

3          MR. KILPATRICK:  Thank you, Your Honor.

4          THE COURT:  All right.  So the next matters I want

5  to hear are the two matters that I want to call and hear

6  basically together because they seem to involve at least one

7  common issue.  And that's the remaining two matters that were

8  scheduled for hearing today.

9      First, the city's motion to enforce the claim bar date

10 order basically against Danny Crowell, Leota Murphy, and

11 Jasmine Crowell.  That's docket 11357.  And also then the

12 city's motion to enforce again the bar date order, I think,

13 against Najib Hodge.  That's docket number 11583.

14     So we'll hear those matters.  One moment though.  All

15 right.  Let's -- I know we've already had appearances, but

16 tell me who's going to argue this -- these motions for the

17 city.

18         MR. SWANSON:  Your Honor, Marc Swanson will.

19         THE COURT:  All right.  And other appearances on

20 these motions.

21         MR. DEDVUKAJ:  Good afternoon, Your Honor.  Joe

22 Dedvukaj here on behalf of Danny Crowell, Leota Murphy, and

23 Jasmine Crowell.

24         THE COURT:  One second.  I -- I can spell your name,

25 based on what you filed, but help me with the pronunciation

1   again, your last name.

2           MR. DEDVUKAJ:  Dedvukaj.

3           THE COURT:  Dedvukaj?

4           MR. DEDVUKAJ:  You have it.

5           THE COURT:  Okay.  I want to try to say your name

6   right.  Okay.  All right.  And -- and you, sir?

7           MR. DEMPSEY:  May it please the Court, my name is

8   Doug Dempsey.  I'm here on behalf of Mr. Hodge.

9           THE COURT:  All right.  One second.  All right.  Mr.

10  Swanson, I'll hear from you first on these motions and then

11  we'll hear from the other attorneys.

12          MR. SWANSON:  Thank you, Your Honor.  How I outlined

13  my argument, I believe there's one common issue to -- to both

14  and that's what I've referred to in my response as a motor

15  vehicle plan provision.

16      The Crowell, Murphy, Crowell response raises the

17  additional argument that the claims arose post-petition.  I

18  was going to address that argument first and then address the

19  motor vehicle plan provision argument which I believe is -- is

20  common to both sets of --

21          THE COURT:  That's fine.

22          MR. SWANSON:  Okay.  Your Honor, the Crowell,

23  Murphy, Crowell response raises an argument that their claim,

24  or each of their claims arose post-petition.

25      Your Honor, that argument should be rejected.  Each of

1  the plaintiff allege that they were hit by a truck owned by

2  the City of Detroit on June 3rd, 2013.  That's one and a half

3  months prior to the city's bankruptcy case.

4      All of the claims that are asserted in the State Court

5  lawsuit by each of the plaintiffs arise out of that accident

6  which occurred on June 3, 2013.  Yet for some reason the

7  plaintiffs claim that their claims did not arise until they

8  actually filed the complaint in -- in May of 2016.

9      Your Honor already considered the plaintiffs' approach.

10 And that approach is called the right to payment test.  That

11 approach means that a claim doesn't arise until all statutory

12 elements are satisfied.

13     The Court rejected that approach.  Instead the Court

14 adopted the fair contemplation test.  And the Court had the

15 opportunity to consider how the fair contemplation test should

16 be applied in circumstances that are exactly similar here,

17 that being an auto accident.

18     In that opinion the Court held that the claim when you

19 are hit by a -- a truck occurs when you are hit by the truck,

20 not at some later date.  And that date is June 3rd, 2013.  The

21 city thus requests that the Crowell, Murphy, Crowell argument

22 regarding having a post-petition claim be denied.

23     The second argument --

24         THE COURT:  Well, before you move to the second

25 argument did you want to -- let's stay on this a minute.  I'm

1  going to have the other side respond on this argument and then

2  we'll deal with this argument since it's not a common issue

3  and then we'll go to the common issue.

4      Did you want to respond more specifically to the -- the

5  counter argument made by counsel for these creditors, Crowell

6  and Murphy, and Crowell?  That is they -- they did not know

7  they had a claim until after the petition date.

8          MR. SWANSON:  Well, I think they allege that they

9  didn't get medical testing until after the petition date.  And

10 because they didn't get medical testing until after the

11 petition date, they weren't aware that they had a claim until

12 after the petition date.

13     But, Your Honor, I think it's within anyone's fair

14 contemplation that if they're hit by a truck that they would

15 have a -- that it would be within their fair contemplation

16 that they might have a claim arising from that accident when

17 that accident occurred.

18     And the plaintiffs here allege that -- that their claim

19 arising from an accident that occurred on June 3rd, 2013,

20 didn't arise until May of 2016 because they didn't get medical

21 testing until that point.

22     Your Honor, I don't think that's -- that's a -- a theory

23 that -- that holds water.  The claim arose and was within

24 their fair contemplation when -- when the accident occurred.

25         THE COURT:  The -- the argument by the other side is

1  -- on this is based on Michigan Compiled Laws, Section

2  500.3135(1) apparently.  Which imposes tort liability for

3  non-economic loss caused by the tort feasor's ownership,

4  maintenance, or use of a motor vehicle, "only if the injured

5  person has suffered death, serious impairment of bodily -- of

6  body function or permanent serious disfigurement."

7      That's the -- the argument as I understand it from the

8  other side is they didn't have a claim until they knew or

9  until the fact -- perhaps until it was evident that they had

10  suffered serious impairment of body function or permanent

11  serious disfigurement.  Obviously not death, but within the

12  meaning of that statute.

13      Now you've argued, I know, that that's -- what they're

14  arguing is tantamount to their right to payment test which

15  this Court rejected in -- in the opinion -- my opinion several

16  months ago in this case that you cite in your brief.

17      But why is it -- did you want to say anything more about

18  why it was within fair contemplation applying the fair

19  contemplation test or analysis before the bankruptcy case was

20  filed, you know, basically right after the accident.

21          MR. SWANSON:  Sure.

22          THE COURT:  That these individuals had suffered

23  serious impairment of body function or permanent serious

24  disfigurement.  Or are you arguing it's not necessary even for

25  that to be the case.  It's enough that the accident occurred

1  pre-petition, period.

2      MR. SWANSON:  I -- I -- I would stand by that

3  argument.  Then I'd also point the Court to some of the

4  factors that it had considered when applying the fair

5  contemplation test to the last auto accident.

6      The Court talks about the debtors' conduct.  The debtors'

7  conduct here occurred on June 3rd, 2014.  There's no conduct

8  after the petition date.

9      The parties' pre-petition relationships, another factor

10  this Court considered.  The parties' pre-petition relationship

11  ended when that accident occurred on June 3rd, 2013.

12      The parties' knowledge.  I mean the city knew that it hit

13  her on 2013 and she knew that.  The plaintiffs knew that they

14  were hit at that date.  They allege here that they weren't

15  aware that they had serious impairment until the day that the

16  complaint was filed which seems nonsensical to me.

17      But, you know, that was when both parties knew that there

18  could be a claim arising out of a truck accident.  And the

19  elements of the underlying claim.  I think all of those point

20  to --

21      THE COURT:  What about the elements in the

22  underlying claim?

23      MR. SWANSON:  Well, that's one of the factors the

24  Court said that they could consider.  And here it's

25  essentially that you need to have a -- a serious injury.

1    And -- and I suppose that's the only element.  And if we

2  were going to -- and -- and that injury could have existed

3  when that accident occurred.  I don't know how this injury

4  couldn't have manifested itself for over three years after the

5  car accident occurred.

6    It seems like if you are hit by a truck it's within your

7  fair contemplation that you're going to have a claim arising

8  from that -- that accident.  And -- and you clearly wouldn't

9  have to satisfy all the statutory elements under 3135 because

10  that would just take us right back to the right to payment

11  test.

12    And they're not even really arguing that they didn't

13  satisfy the -- the statutory element.  What they're arguing

14  is, that they didn't -- they didn't know that they satisfied

15  the statutory element.

16    So I think we have -- they're asking for an even broader

17  test.  I mean the elements certainly could have been

18  satisfied, but they're talking about their -- their knowledge.

19  So objectively things could have, you know -- the -- even the

20  right to payment test could have been satisfied.

21    THE COURT:  Well, the right -- the -- under the

22  right to payment test even if that were the test, it's not the

23  knowledge of the injured party that they have a serious

24  impairment, et cetera.  It's that in fact they have a serious

25  impairment, right?

1              MR. SWANSON:  Sure.

2              THE COURT:  So whether they know it or not.

3              MR. SWANSON:  Yeah.  And I don't think that --

4              THE COURT:  Or realize it or think it.

5              MR. SWANSON:  Yeah.

6              THE COURT:  If they have it, then they have a right

7    to payment under the tort -- the statute.

8              MR. SWANSON:  I don't think there's been any facts

9    alleged here which said that the condition didn't exist when

10   the accident occurred.  The only facts we have here are are we

11   going to get tested for three years.  So we didn't know that

12   we had a serious impairment.  And we just had this serious

13   impairment for -- for three years, but we had no knowledge of

14   it which seems, you know -- you know, a bit far fetched.

15             THE COURT:  All right.  Anything else about this pre

16   -- pre versus post-petition claim issue?

17             MR. SWANSON:  Nothing further, Your Honor.

18             THE COURT:  I think we'll pause you here and let

19   counsel for the Crowell -- Mr. Crowell and -- the Crowells and

20   Murphy respond on that issue now.  So Mr. Dedvukaj, did I say

21   it right?

22             MR. DEDVUKAJ:  That's correct.

23             THE COURT:  Okay.

24             MR. DEDVUKAJ:  Thank you, Your Honor.

25             THE COURT:  What about that issue?

1         MR. DEDVUKAJ:  Actually that's a very good question.

2    If the right to payment in this case would not accrue until --

3    under Michigan no fault law there is an objectively manifested

4    injury that qualifies as a serious impairment that affects a

5    person's general ability to lead a normal life.  And some of

6    the factors have been set out -- set forth in the -- by the

7    Michigan Supreme Court in the McCormick case.

8         Those things absolutely in this case did not develop

9    until much much later.  And May of 2016 is when the elements

10   came together to establish a serious impairment of an

11   important body function that affects their general ability to

12   lead a normal life.

13        These people have absolutely no medical knowledge.  They

14   didn't have the testing that would diagnose the injuries that

15   are pleaded in the complaint which the city has been kind

16   enough to attach.

17        THE COURT:  Well, you're arguing that, but there's

18   -- there's no evidence in the record in this -- before me that

19   that -- to support those assertions at this point, right?

20        MR. DEDVUKAJ:  That's correct.

21        THE COURT:  It's not -- for example, I mean all I

22   have really is your State Court complaint and what you say in

23   your brief and neither one is evidence.  But the State Court

24   complaint doesn't -- doesn't really give any clues about that

25   subject, does it?

1           MR. DEDVUKAJ:  Well, it does.  It -- it outlines the

2    type of injuries each of the plaintiffs sustained.

3           THE COURT:  Yes.

4           MR. DEDVUKAJ:  In the -- in the accident.

5           THE COURT:  Yes.

6           MR. DEDVUKAJ:  And they're medically identifiable

7    and --

8           THE COURT:  I did read the complaint and saw the

9    list for each of the plaintiffs, the three plaintiffs of their

10   various injuries.

11          MR. DEDVUKAJ:  Now if this had been a closed head

12   injury where the person was diagnosed with a closed head

13   injury right after the accident I would say would accrue that

14   and the -- their right to payment would -- would exist at that

15   point.  And one could fairly contemplate that they should know

16   at that point.

17       But these weren't the type of injuries that the statute

18   carves out to establish their right to payment or a reasonably

19   prudent person would know who has absolutely no medical

20   background, that these are the injuries that qualify for

21   compensation under the no fault act.

22          THE COURT:  Well, objectively manifested serious

23   impairment is essentially the test.

24          MR. DEDVUKAJ:  Yes, sir.

25          THE COURT:  Right?

1          MR. DEDVUKAJ:  That's right.

2          THE COURT:  Under this statute.  And for the right

3  to payment to exist.

4          MR. DEDVUKAJ:  That's correct.  And the Michigan

5  Supreme Court --

6          THE COURT:  So -- so that -- that can occur of

7  course before the victim of an accident has gone to a doctor

8  or has been diagnosed, or tested.  And before they know what

9  the technical medical problem is or problems are with what

10  they've suffered, right?

11          MR. DEDVUKAJ:  That's right.  As a matter of fact --

12          THE COURT:  They objectively -- it's objectively

13  manifested by how the person feels, what they can and cannot

14  do, those sorts of things.

15          MR. DEDVUKAJ:  No.  The Michigan Supreme Court has

16  said that that is not an objective manifestation.  In fact

17  it's subjective.

18          THE COURT:  What case says that?

19          MR. DEDVUKAJ:  That would be the McCormick case.

20  You can look --

21          THE COURT:  Is that cited in your brief?

22          MR. DEDVUKAJ:  It is not cited in my brief, Your

23  Honor.  But McCormick is the most recent Michigan Supreme

24  Court case on the subject.  There is the DeFranco case.

25          THE COURT:  Is that cited in your brief?

1           MR. DEDVUKAJ:  It's not cited in my brief.  It's

2    D-e-F-r-a-n-c-o would be the lead plaintiff.  And Cassidy.

3    And then there's -- the Michigan Supreme Court has said

4    objectively manifested would be something that would be picked

5    up on an MRI, CAT scan, x-ray, or could be seen by a trained

6    physician on an objective basis.

7        For example, a gash.  Your arm being cut off, something

8    of that nature.

9           THE COURT:  So is -- if we apply the fair

10   contemplation test and you're familiar with it, you read the

11   Senczyszyn case.

12          MR. DEDVUKAJ:  Yes, sir.

13          THE COURT:  You cited that in your brief.

14          MR. DEDVUKAJ:  Yeah.

15          THE COURT:  And -- and I quoted and relied on that

16   in my opinion in the City of Detroit case that Mr. Swanson

17   cited in his reply brief.

18          MR. DEDVUKAJ:  Although that's --

19          THE COURT:  All right, just a minute.

20          MR. DEDVUKAJ:  I'm sorry.

21          THE COURT:  How a person feels and how they're

22   limited to their own knowledge, that is without a medical

23   diagnosis or testing or you know, those sort of things, can

24   certainly give a person reasonable or fair contemplation that

25   they may have a serious objectively manifested serious

1 impairment.

2       MR. DEDVUKAJ:  Not necessarily.  Not necessarily

3 because you know, you'd have to have an expert that actually

4 says it came from the car accident.  People can feel, you

5 know, different -- different people feel different symptoms

6 and report symptoms differently.  And not necessarily symptoms

7 that would be traceable to a motor vehicle accident.  So --

8       THE COURT:  What evidence would you offer if you

9 were permitted an opportunity to offer evidence since you've

10 not offered any evidence yet that the -- that the right to

11 payment in fact under these Michigan statute and -- and case

12 law did not actually arise until after the bankruptcy was

13 filed by the City of Detroit.

14       MR. DEDVUKAJ:  I would offer medical records,

15 testing that was done, things of that nature.  And perhaps --

16       THE COURT:  To show -- and it would show what?

17       MR. DEDVUKAJ:  It would show what we pled in the

18 complaint that they've been diagnosed with those soft tissue

19 injuries that only a doctor would -- would know and not your

20 -- your average person who doesn't have any medical

21 background.

22       THE COURT:  And so you want to elaborate any more on

23 your argument that -- as to why you say that the right to

24 payment under this statute did not arise until after the

25 bankruptcy filing, a couple months after, a month or so after

1 the accident.

2      MR. DEDVUKAJ:  Right.  I think maybe distinguishing

3 your previous ruling with respect to a no fault claim and your

4 previous ruling had to do with no fault benefits when a person

5 sees a doctor, gets the treatment, and gets billed.  We know

6 the accrual paid for that.  It's the date that the person gets

7 the treatment and is billed.

8      This is somewhat -- this is different because it's

9 something that, you know, a person would not know unless he's

10 been seen by a doctor and had the appropriate test to -- to

11 determine what that is.

12      And if you look at the McCormick case, you know the

13 Michigan Supreme Court set forth a number of factors that are

14 to be considered to determine whether a person has qualified

15 under the serious impairment of an important body function

16 that affects your general ability to lead a normal life.

17      THE COURT:  So what about this case, these claims,

18 and the timing of which -- of which -- at which this claim,

19 the right to payment on these claims under this particular

20 statute arose in relation to the July 2013 bankruptcy petition

21 filing date.

22      MR. DEDVUKAJ:  Well, this particular case, the fact

23 of the matter is, these are lay people.  They really don't

24 even have a high school education.  They have no medical

25 knowledge whatsoever.

1      They're relying on other people to tell them what's

2  wrong.  And you know, when you take those factors all into

3  consideration, there's no way that it could have accrued

4  within that period of time, to meet the Michigan serious

5  impairment.

6          THE COURT:  When did it -- when did it accrue?

7          MR. DEDVUKAJ:  I would -- I would say it accrued by

8  May of 2016.  They came in to see me about this case, I

9  believe it was April of 2016.  And we looked at it and

10 basically ran it through our analysis under the McCormick

11 case, and believed that we could prove this case, mind you we

12 still have to prove it in the Wayne County Circuit Court

13 either to a Judge or a jury that they have sustained a serious

14 impairment of important body function that affects their

15 general ability to lead a normal life.

16     It's not an automatic qualification under Michigan law.

17 It's a jury's determination or a Judge if there's no jury

18 demand.  As a matter of fact in a lot of cases Judges are

19 making that determination.

20         THE COURT:  All right.  So anything else about this

21 issue you want to say?

22         MR. DEDVUKAJ:  No, sir.

23         THE COURT:  Mr. Swanson, I'll give you an

24 opportunity to reply briefly on this issue and then we'll move

25 to the other issue.

1          MR. SWANSON:  Your Honor, the plaintiffs here in

2  their brief state, plaintiffs' claim is post-petition because

3  -- because their claims arose when they met the serious

4  impairment of an important body function that affected their

5  general ability to lead a normal life which was May 20th, 2016

6  when complaint was filed claiming they had sustained a serious

7  impairment of an important body function that affected their

8  general ability to lead a normal life.

9       Your Honor, quite frankly that makes no sense.  I mean

10  how -- what does the filing of the complaint have to do with

11  when they --

12          THE COURT:  Let's suppose I agree with you.

13          MR. SWANSON:  Yeah.

14          THE COURT:  Does -- let's suppose I say that --

15  that's not -- that can't be right.

16          MR. SWANSON:  Yeah.

17          THE COURT:  That we're still out for the issue well,

18  okay, when did this right to payment arise.  And I understand

19  I'm not a applying -- I'm not going to apply the right to

20  payment test.

21          MR. SWANSON:  Yeah.

22          THE COURT:  But I think it's a factor to be

23  considered.

24          MR. SWANSON:  Yeah.

25          THE COURT:  In the fair contemplation test.  When

1 did it arise.  What does the record tell us about that?

2         MR. SWANSON:  The record doesn't tell us -- tell us

3 much about that, but --

4         THE COURT:  We know the accident date.

5         MR. SWANSON:  We know the accident date.

6         THE COURT:  We know -- I mean that's about all we

7 know in the current record, isn't it?

8         MR. SWANSON:  That is about all we know in -- in the

9 current record.  And we know that that, you know, obviously

10 occurred prior to the petition date.  And I -- I -- I just

11 can't imagine any set of circumstances really where you could

12 have been -- where three people could have been hit by a truck

13 a month and a half before the city's bankruptcy case and their

14 claim would not have been their fair contemplation as of the

15 petition date.

16     The fact that they would have a claim against the city

17 for -- for injuries that they potentially could have

18 sustained, I -- I -- I just don't see any set of circumstances

19 which could take this out of the realm of being a pre-petition

20 claim.  Thank you.

21         THE COURT:  All right.  With respect to this issue I

22 -- in ruling on this issue I will -- I do adhere to and will

23 apply the fair contemplation test and the type of analysis and

24 the rulings and all the things that I made in the opinion that

25 I issued several months ago in this bankruptcy case.

1     For the record that's *In Re: City of Detroit, Michigan.*

2  It's reported at 548 BR 748, a decision of mine from April 19,

3  2016.  The fair contemplation test is discussed among other

4  places in that opinion at Page 763.

5     And then I went on to apply that test to three different

6  claimants or types of claimants that were before me in -- in

7  the motion that was -- or the matters that were at issue

8  there.

9     The -- in order to apply that fair contemplation test

10 here to determine whether or not the claimants with respect to

11 the city's motion against the Crowells and Leota Murphy, in

12 order to apply that fair contemplation test to determine

13 whether those claimants' claims arose before the bankruptcy

14 petition was filed, or after in my view requires further facts

15 and opportunity for each side to present further facts and

16 evidence and further briefing.

17     The responding creditors here through counsel have cited

18 some cases in today's hearing that were not in their brief.

19 The parties really have not fully briefed this issue in my

20 view and should be given an opportunity to -- to file

21 supplemental briefs on the issue, as well as to submit

22 evidence.

23     And starting with the claimants, the responding claimants

24 here should be given an opportunity to present evidence and

25 further briefing in support of the -- their argument that this

1  is a fair -- under the fair contemplation test the Court

2  should rule that this is a post-petition claim, a claim that

3  arose after the bankruptcy petition rather than before.

4      So I'm going to enter a scheduling order that permits and

5  sets a schedule for such further briefing and presentation of

6  affidavits and other evidence on that issue.  We'll come back

7  to that, however, in a little while.  I want to -- next, I

8  want to hear -- to talk about details of that and timing and

9  so forth, schedule for those things.

10     But I want to come now to the second issue which is a

11 common issue to these two motions by the city.  The -- Mr.

12 Swanson, you referred to it today as the motor vehicle plan

13 provision issue.  And so let's hear about that from each side

14 starting with the city.

15     MR. SWANSON:  Thank you, Your Honor.  The city's

16 position on -- on this is quite simple.

17     Paragraph 4 of the bar date order said all entities that

18 assert pre-petition claims against the city must file a proof

19 of claim.  Paragraph 6 of the bar date order repeated that the

20 following entities must file a proof of claim, including any

21 entity whose pre-petition claim against the city is not listed

22 in the list of claims or is listed as disputed, contingent, or

23 unliquidated.

24     And then Paragraph 22 of the bar date order spelled out

25 the consequences for entities that did not file a proof of

1  claim.  And there are a couple.  One can assert a claim

2  against property of the city, or the city.  And -- and another

3  one is he can't receive a distribution or vote on the city's

4  bankruptcy plan.

5      Now, the bar date order's affect on these State Court

6  actions is that the -- is that -- is that they're barred

7  notwithstanding the motor vehicle plan provision.  That in no

8  way affected, or impaired, or impacted the relief that this

9  Court granted under the bar date order.

10     The claims asserted by the plaintiffs in the State Court

11 lawsuit as you just heard with respect to Crowell, Murphy, and

12 Crowell, and as a review of the complaint in the Hodge action

13 indicates they are "against the city or of property of the

14 city."

15     If you didn't file a proof of claim you can't make a

16 claim against the city or property of the city.  Plaintiffs

17 are also prohibited from receiving a distribution under the

18 plan because they did not file a proof of claim under

19 Paragraph 22(b) of the bar date order.

20     The plan, however, is the only document or law the

21 plaintiffs point to to support their position that they're

22 entitled to money from the city.

23     And -- and finally, Your Honor, the motor vehicle plan

24 provision provides that the city will pay -- will "pay valid

25 pre-petition claims."  The plaintiffs do not have a valid

1  claim because they did not act in accordance with the bar date

2  order.  And I think it's important to point out that the bar

3  date order was entered far in advance of the plan.  So there

4  can't be any argument here that there was some sort of

5  detrimental reliance.  We had the bar date order entered --

6           THE COURT:  Well, I was going to ask you whether,

7  you know, in interpreting the provision in the plan.

8           MR. SWANSON:  Yes.

9           THE COURT:  The phrase you referred to, valid

10 pre-petition claims.

11          MR. SWANSON:  Yes.

12          THE COURT:  The issue is, is what does valid mean

13 there.

14          MR. SWANSON:  Sure.

15          THE COURT:  In -- in this context.  Did the -- I --

16 I -- I assume the other side's view of this is that -- I think

17 the other side's view of this is that the -- the plan which

18 was confirmed of course, I don't know, roughly a year or more

19 after the bar date order and the plan that was proposed that

20 was confirmed also that was proposed after the bar date order

21 that that changed.  It had -- it had the effect of -- of

22 modifying the bar date order rule that would normally apply to

23 these motor vehicle related claims by giving them special

24 treatment without requiring -- saying that proofs of claim had

25 to be filed.

1          MR. SWANSON:  Yeah.  But there's nothing in that

2  provision which says that.

3          THE COURT:  Now, wait.  We're talking just for the

4  record, we're talking about this provision on Page 62 of the

5  -- 62 to 63 of the plan.

6          MR. SWANSON:  Yeah.

7          THE COURT:  And then I guess we're also talking

8  about Paragraph 58 of the order confirming plan, right?

9          MR. SWANSON:  Right, right.

10          THE COURT:  Okay.  Paragraph 58 of the order

11  confirming plan which is docket 8272.  There's a copy of the

12  confirmed plan also at 8272.  And that is Page 62 to 63.  So

13  when you quote this phrase valid pre-petition claim you're

14  quoting from those places.

15          MR. SWANSON:  Correct, Your Honor.

16          THE COURT:  Both have that phrase.

17          MR. SWANSON:  Yes.

18          THE COURT:  The city will pay, continue to

19  administer and pay valid pre-petition Claims, capital C for

20  the word Claims, for liabilities, et cetera.

21      So valid includes a reference -- a claim is not valid

22  within the meaning of this phrase in your view if it was not

23  the subject of a proof of claim that was timely filed.

24          MR. SWANSON:  That's correct, Your Honor.

25          THE COURT:  Why is that?  Why do you -- why do you

1  think that I should interpret the plan that way?

2        MR. SWANSON:  Well, one, the bar date order said

3  that anyone who had to -- had a pre-petition claim had to file

4  a proof of claim.  So I don't know how you could have a valid

5  claim when you've disregarded an order of the Court.

6     Second --

7        THE COURT:  I guess it depends on what the plan and

8  the order confirming plan say and mean about that, doesn't it?

9        MR. SWANSON:  It does.  But there's nothing in the

10 plan or the order confirming the plan which says that the bar

11 date order with respect to these claims is suspended.

12     In fact if you look at Page 32 of the plan, it says the

13 plan does not modify the bar date order.  So to the extent

14 that --

15        THE COURT:  Page what?

16        MR. SWANSON:  Page 32.

17        THE COURT:  All right.  Hold on.  I don't think you

18 cited this in your brief.

19        MR. SWANSON:  I -- I did not.  I saw it yesterday,

20 Your Honor.

21        THE COURT:  Yeah.  Because that -- of course one of

22 the thing I'm wondering is, you know, this is a very long

23 complicated plan and order confirming plan.  Is there

24 something in there that speaks to this further.

25        So you're citing it's Page 32 of the plan.  I'm looking

1  at that.  Where is it in there?  Oh, I see Item D.

2            MR. SWANSON:  No modification of bar date order.

3            THE COURT:  It says the plan does not modify any

4  other bar date order including bar dates for claims entitled

5  administrative priority under Section 503(b)(9) of the

6  Bankruptcy Code.  Let's talk about other bar date orders.  Is

7  there a reference -- oh, there's on Page 31 there's a

8  reference in (2)(a), the general bar date provisions.

9            MR. SWANSON:  Right.

10           THE COURT:  Does that -- does that apply?

11           MR. SWANSON:  Well, those are administrative.

12           THE COURT:  That's administrative?

13           MR. SWANSON:  Claims, yeah.  So --

14           THE COURT:  Is there some place -- okay.  So you're

15  relying on sub (d) there on Page 32, the -- the reference to

16  -- saying that the plan does not modify any other bar date

17  order.

18           MR. SWANSON:  Yeah.

19           THE COURT:  That includes the bar date order that

20  we're talking -- that you're relying on 1782 which is for --

21  includes general unsecured claims.

22           MR. SWANSON:  Correct.  Paragraph 43 on Page 5

23  defines bar date order as a order that I cite to in my --

24           THE COURT:  Okay, wait a minute, 45.

25           MR. SWANSON:  Paragraph 43 on Page 5 of the plan.

1            THE COURT:  Oh, 5, now in the definitions.

2            MR. SWANSON:  Correct.

3            THE COURT:  All right.  Hold on.  Hold on.  That

4   definition as I'm sure you're about to say includes a specific

5   reference to the bar date order you're relying on.

6            MR. SWANSON:  Yeah.

7            THE COURT:  Docket 1782.

8            MR. SWANSON:  Yes.

9            THE COURT:  Right?

10           MR. SWANSON:  Correct.

11           THE COURT:  So that is a -- falls within the

12  definition of bar date order as defined and from that you

13  argue that this provision (d) on Page 32 then must include

14  that.

15           MR. SWANSON:  That's correct, Your Honor.  So any --

16  any argument that the motor vehicle plan provision modified

17  the bar date order fails not only because there's nothing in

18  the motor vehicle plan provision which says it modifies the

19  bar date order, but there's other provision -- another

20  provision in the plan which says that nothing in the plan is

21  modifying the bar date order.

22      But, Your Honor, I don't even think we need to -- to get

23  that far because if we look at the bar date order, and I don't

24  think this Court needs to get to interpreting what a valid

25  pre-petition claim is.  I -- the city views that language as

1  certainly supporting it.

2      But the bar date order says that if you did not file a

3  proof of claim you are not entitled to assert a claim against

4  the city or property of the city.  So whether valid

5  pre-petition claim means you did or you didn't file a proof of

6  claim, we have a -- a paragraph in the bar date order which

7  remains in full force and effect which says that if you didn't

8  file a proof of claim you can't assert a claim against the

9  city, or property of the city.  And you're not entitled to any

10 -- any distributions under this plan.

11      So we have -- we have three arguments, each of which I

12 think --

13          THE COURT:  Well, except that under the plan the

14 motor vehicle plan provision -- provisions in the order

15 confirming plan and the -- and the plan, if the claims

16 involved here in these motions are valid but they weren't

17 timely filed, there was no proof of claim filed, you might

18 have a conflict between the order confirming plan and the plan

19 on the one hand and the bar date order on the other hand

20 except that you -- that you have the provision in the plan and

21 it says the bar date order isn't modified.

22          MR. SWANSON:  Yes.

23          THE COURT:  Right?  That -- that would -- then you

24 would have a conflict in that event, wouldn't you?

25          MR. SWANSON:  I don't think --

1            THE COURT:  Between the bar date order and the plan.

2  Because the plan says valid claims and if valid claims

3  includes ones even for which no proof of claim was filed,

4  valid claims are going to be paid by the city and then you had

5  another provision in the same plan and the same order

6  confirming plan that said the bar date order isn't modified.

7  Doesn't that clearly conflict within --

8            MR. SWANSON:  I don't think it does.  Because the

9  bar date order said you can't -- you can't assert a claim

10  against the city or property of the city.

11       So how could you make the assertion that you have a valid

12  claim if the bar date order prohibits you from making that

13  assertion in the first instance.  I mean the bar date order

14  says you can't make a claim against the city or property of

15  the city how -- how -- how can we get to the point where the

16  plaintiff can even make a request under that provision.

17       And further, the bar date order says you're not entitled

18  to receive any distributions under the plan.  So you couldn't

19  make that request either.

20       So I -- frankly I -- I don't think that these are valid

21  claims because they -- they disregarded an order, but --

22            THE COURT:  Well, your argument is then the valid

23  claim, that phrase in the motor vehicle plan provision, can

24  only mean -- can only mean one of the requirements for valid

25  means a timely proof of claim was filed.

1          MR. SWANSON:  That is correct.

2          THE COURT:  That it -- that's the only way to read

3   it that doesn't create a conflict between the plan and the

4   order confirming plan on the one hand and internal conflict

5   within the -- the plan, right?  Because the plan has another

6   provision that says the bar date order isn't modified.

7          MR. SWANSON:  That's correct.

8          THE COURT:  So it sounds like what you're arguing is

9   valid claim, that phrase must mean, and the plan must mean, or

10  include a -- a -- only a claim for which a timely proof of

11  claim is filed.

12         MR. SWANSON:  That's correct because then there's a

13  bar date order.  You wouldn't even be able to assert a claim

14  against the city if he didn't file a proof of claim.  So, you

15  know, you don't even get to the -- the valid language.

16         THE COURT:  I'm just making a couple of notes to

17  myself here.  And so you're arguing that I should interpret

18  the plan in a way that avoids, if possible it avoids internal

19  conflicts.

20         MR. SWANSON:  Yes.

21         THE COURT:  Within the plan.

22         MR. SWANSON: Yes.

23         THE COURT:  If -- if it can reasonably be done.

24         MR. SWANSON:  I -- I think it can be reasonably

25  done.  And I -- and I don't think -- I still don't think the

1   Court can get around the fact that we have a bar date order

2   which says you're not entitled to a distribution under the

3   plan unless you file a proof of claim.  And now they're

4   seeking distribution under the plan.

5       And -- and there was nothing in the motor vehicle plan

6   provision, nothing in the order confirming the plan in

7   Paragraph 48 or 58 which -- which says that the bar date order

8   was modified.

9           THE COURT:  Are there any other plan provisions --

10  or provisions in the order confirming plan that bear on this

11  issue in your view other than what you've already mentioned?

12          MR. SWANSON:  Not that I'm aware of, Your Honor.

13          THE COURT:  Is there anything in the order

14  confirming plan as opposed to the plan itself that says that

15  the bar date order is not modified by the plan?

16          MR. SWANSON:  I believe there is.  And I will look

17  for that while the plaintiffs --

18          THE COURT:  You're not sure at the moment?

19          MR. SWANSON:  I'm not sure at the moment, but I will

20  -- I will take a look.

21          THE COURT:  Well, actually I'd like to know anything

22  that the order confirming plan says about, or -- or wherever

23  it refers to the bar date order.

24          MR. SWANSON:  Sure.

25          THE COURT:  And the same for the -- the plan really.

1  Because you know, you just came up with this -- these

2  provisions to the plan about the bar date order not being

3  modified in today's hearing.  That wasn't in the papers filed

4  by anyone, including you on these motions.

5      And so I, you know, I haven't -- I'm looking at these now

6  as you point these things out.  So it would be helpful to

7  know, and you know, I could probably do a word search myself,

8  but you guys are very familiar with the plan I'm sure.  I'd

9  like to know what -- what all is in there that mentions the

10 bar date order at all.

11          MR. SWANSON:  Sure.

12          THE COURT:  Other than Paragraph 58 in the order

13 confirming plan, is there anything in the order confirming

14 plan, anything else that talks about these motor vehicle plan

15 provisions?

16          MR. SWANSON:  Not that I'm aware of.

17          THE COURT:  All right.  So anything else you want to

18 say about this issue before we hear from the others?

19          MR. SWANSON:  No, Your Honor.

20          THE COURT:  All right.  So, I'll hear from counsel

21 for both of the responding parties, both motions now.  I don't

22 care who goes first on it.  Mr. Dedvukaj.

23          MR. DEDVUKAJ:  Dedvukaj, thank you, Your Honor.

24          THE COURT:  Dedvukaj, sorry.

25          MR. DEDVUKAJ:  Yeah, actually -- actually a very

1  interesting topic and I've read over this -- I've read over

2  this provision in the plan.  And it's interesting to note that

3  they call it the operation of the city motor vehicles.

4      And the reason they did that, Your Honor, is because we

5  have in Michigan what's called the Governmental Immunity Act.

6  And the only way that there can ever be a valid claim against

7  the city is if there was actually the operation of a city

8  owned vehicle.

9      And so that's what makes it valid.  Now counsel, as the

10  Court's pointed out, is there a conflict between the bar date

11  and the plan language.  There clearly is because the city

12  didn't put anything in there that would define and show that

13  the proof of claim timely filed bar date was going to be

14  included in this carve out of this very important provision.

15      And it's very important because the city for decades had

16  done business as a self insured entity.  That's very key

17  because that's how they managed to broker this provision with

18  the State of Michigan.  Because people who were injured in

19  motor vehicles should look at the entity that caused the

20  injury rather than go to Medicaid, Medicare or other state

21  funded taxpayer places of recovery.

22      It's very clear in this provision where it says nothing

23  in the plan shall discharge, release, or relieve the city from

24  any current or future liability with respect to claims subject

25  to insurance coverage pursuant to MCL --

1          THE COURT:  What are you reading from?

2          MR. DEDVUKAJ:  I'm reading from Paragraph 58, Your

3    Honor.

4          THE COURT:  Oh, I'm sorry.  I was looking at the

5    plan provision.  All right.  You're in the order confirming

6    plan, Paragraph 58.  One second.

7       All right.  Starting in the middle there with the words

8    nothing in the plan or this order should discharge, et cetera,

9    right?

10         MR. DEDVUKAJ:  That's correct, Your Honor.

11         THE COURT:  All right.  So what about -- what else

12   about that?

13         MR. DEDVUKAJ:  And I would -- I would further

14   indicate, Your Honor, that you know, plans are subject to the

15   general principles of contract construction.  And in this

16   particular case the law basically says that any ambiguity

17   which there clearly is because if one could reasonably

18   interpret valid in more than one way there's a ambiguity and

19   that has to be construed against the drafter.

20      And I've got a whole slew of cases I can cite to the

21   Court.  One of them being In Re: Shell Home, 280 BR 847 on

22   Page 48.  And they cite their restatement section on contract

23   Section 206.

24      There is In Re: Forklift LP Corp., 363 BR 388 on Page

25   397.  Bankruptcy District Court Delaware, 2007.  The Court

1  construed the plan against the drafter.

2     In Re: Harstad, 155 BR 500, Pages 510 to 511.  Bankruptcy

3  District Court of Minnesota, 1993.  And --

4     THE COURT:  I think you can stop with the string

5  citation.  I think I understand the concept.

6     MR. DEDVUKAJ:  Okay.

7     THE COURT:  And the oral argument is not a place to

8  cite cases that are not in your papers as a general rule.  But

9  the concept is you construe an ambiguity as the drafter of a

10  contract.

11     MR. DEDVUKAJ:  Yes, sir.

12     THE COURT:  Which rule does not apply when both

13  parties contribute to the drafting, or several parties.  And

14  that's probably what we have when we're talking about an order

15  confirming plan or a plan of this magnitude and complexity

16  where so many parties were involved in negotiations over the

17  plan and the plan language and the order confirming plan

18  before it was -- they were ultimately entered.

19     But in any case you're --

20     MR. DEDVUKAJ:  I think --

21     THE COURT:  -- you're arguing it's -- it's the city

22  basically that drafted this and -- and this provision should

23  be construed against them.

24     MR. DEDVUKAJ:  In particular because claimants here

25  had no participation in that plan language whatsoever.  So as

1 between the claimants here, the City of Detroit absolutely has

2 to be construed as the drafter.

3    And in fact a case out of the Northern District of

4 Florida in 1995 indicated that an omission of language in a

5 plan dealing with post-confirmation interest, that was

6 construed against the drafter which is essentially what --

7 what we've got here.

8    I mean there was this class of claims that they dealt

9 with in a special way and these claimants clearly fall within

10 that class.

11    THE COURT:  All right.  Anything else you'd like to

12 say about this?

13    MR. DEDVUKAJ:  No, sir.  Thank you.

14    THE COURT:  All right.  Thank you.  All right.  So

15 Mr. Dempsey.

16    MR. DEMPSEY:  Thank you, Your Honor.  May it please

17 the Court, I just have a couple of points I'd like to raise.

18 And I'd also like to express my congratulations to the City of

19 Detroit's attorney on their knowledge as it pertains to this

20 bankruptcy as well as this Court.  I've never seen anything

21 like this before.  I've been practicing 30 years and the

22 knowledge that everybody in here besides myself, and I'll

23 admit it, has pertaining to this is incredible.

24    So having said that, I think one thing that the defendant

25 -- or excuse me, the City of Detroit is missing is there are

1 two different types of claims in a motor vehicle accident.

2 There is a pot of money available which was set aside by this

3 Bankruptcy Court to pay no fault benefits, PIP benefits.  Wage

4 loss, household services, attendant care, and medical bills.

5     All through the bankruptcy the medical bills were being

6 paid by the City of Detroit to the providers.  The case that I

7 have involves both a first party and a third party case.

8     I believe provision 58 of the plan, excuse me, of the

9 eighth amended plan, adjustment of debts for the City of

10 Detroit specifically states that no fault benefits are to be

11 paid by the City of Detroit's other pot of money, not

12 including the general unsecured claim fund.

13     I do believe that the general unsecured claim fund may

14 have the specific provision of filing the notice of claim.

15 Having said that, I do believe that the no fault case should

16 survive and I would rely upon Mr. Dedvukaj's argument

17 pertaining to the third party case as well.

18         THE COURT:  Well, you tell me the -- I think we have

19 your State Court complaint.  Yeah, a copy of that is attached

20 to the city's motion, right?

21         MR. DEMPSEY:  It is.

22         THE COURT:  Okay.  One second, hold on.  Now that

23 was filed -- that's the one that was filed pre-petition.

24         MR. DEMPSEY:  That is correct.

25         THE COURT:  The city is complaining that you are

1 continuing to prosecute or will continue to prosecute that

2 case and so the debate is whether you should be allowed to do

3 that.

4          MR. DEMPSEY:  Well, I think it goes one step

5 further, Judge.  We specifically stated to them that the case

6 would be reinstated specifically for the only purpose of the

7 no fault benefits, not the claim for the pain and suffering

8 known as the third party claim.

9      The case was originally stipulated in State Court to be

10 reinstated for the purposes of pursuing the no fault claim and

11 then all of a sudden the bankruptcy attorneys found out that

12 there was a third party claim and we've tried to convince them

13 to avoid this whole hearing today because our whole claim is

14 for the no fault benefits, but here we are.

15          THE COURT:  Well, your claim or claims in the state

16 lawsuit fall within what part or parts of this Paragraph S on

17 Pages 62 to 63 of the plan?

18          MR. DEMPSEY:  I can't answer that, Judge.

19          THE COURT:  You can't answer that?

20          MR. DEMPSEY:  I cannot.

21          THE COURT:  Why not?

22          MR. DEMPSEY:  I have not reviewed the entire plan.

23 I am here specifically --

24          THE COURT:  I'm pointing you to a specific

25 paragraph.  Do you have it in front of you?

1           MR. DEMPSEY:  Paragraph 58 in my brief.

2           THE COURT:  No, Paragraph 58 is in the order

3    confirming plan.

4           MR. DEMPSEY:  Correct.

5           THE COURT:  And then we have it's sub Paragraph S on

6    Pages 62 to 63 of the plan itself.  Have you read that?  I

7    think you guys all have that part in your response, don't you?

8           MR. DEMPSEY:  I have S, is Paragraph S payment of

9    certain claims relating to the operation of city motor

10   vehicles?

11          THE COURT:  Yeah.

12          MR. DEMPSEY:  I have that just presented to me right

13   now by Mr. Dedvukaj.

14          THE COURT:  I'm sorry.  Was that -- that was not

15   mentioned?  I thought it was mentioned in your response to the

16   motion here.

17          MR. DEMPSEY:  I believe it was Paragraph 58 that was

18   mentioned.  And then --

19          THE COURT:  All right.

20          MR. DEMPSEY:  I did mention 531. -- excuse me,

21   500.3101.  I was familiar with this provision.

22          THE COURT:  I see.  Yeah, your response relies on

23   Paragraph 58.  So what -- what I'm trying to figure out is, I

24   need to understand what your claims are in the State Court

25   lawsuit and how they relate to the -- the categories of claims

1  in Paragraph S, Pages 62 to 63 of the plan.

2            MR. DEMPSEY:  I can tell you.

3            THE COURT:  I'm sorry?

4            MR. DEMPSEY:  I can tell you.

5            THE COURT:  Go ahead.

6            MR. DEMPSEY:  The original complaint alleged first

7  and third party claims.  Third party being the serious

8  objectively identified injuries, serious impairment of an

9  important body function, as well as claim for number two which

10  are the no fault benefits.

11       Fifty -- excuse me --

12            THE COURT:  Wait, hold on.  Number two, what do you

13  mean number two?

14            MR. DEMPSEY:  I have Count 2 in the complaint.

15            THE COURT:  Oh, I see.  Count 2 was for what you're

16  calling no fault benefits.

17            MR. DEMPSEY:  Correct, correct.  Also known as PIP.

18  And that relies upon a different statute which is 500.3101 et

19  seq. whereas the pain and suffering under the general claim I

20  believe is 500.5135.  That's the serious impairment issue.  So

21  there are two separate issues here.

22            THE COURT:  Now does Paragraph S on 62 to 63 of the

23  plan cover both types?

24            MR. DEMPSEY:  It does.  And it says the personal

25  injury protection benefits shall be paid.  And then with the

1  -- with regard to the third party claims, they're limited to

2  the 20,000 and then they go into the general fund but they had

3  to have a proof of claim filed.  I do not believe the no fault

4  benefits did.  As stated in Paragraph 58 of the eighth amended

5  plan for adjustment of debts of the City of Detroit.

6          THE COURT:  All right.  So the personal protection

7  benefits, that part of your claim, you're saying -- you're

8  arguing did not require filing of a proof of claim.

9          MR. DEMPSEY:  That's correct.

10         THE COURT:  And that's the only part that your

11 clients are pursuing or want to pursue?

12         MR. DEMPSEY:  It's the only part that I believe we

13 can pursue because the claim -- other than what Mr. Dedvukaj

14 argued today, because the claim did require the plan -- excuse

15 me, the notice of claim.

16         THE COURT:  The plan required what?

17         MR. DEMPSEY:  The notice of claim.

18         THE COURT:  You mean proof of claim?

19         MR. DEMPSEY:  Yes.

20         THE COURT:  All right.  So what else do you want to

21 say about this issue?

22         MR. DEMPSEY:  I just think there's two separate

23 issues which I've already gone over.  I'm not sure it was too

24 succinct, but first and third party claim, first party no --

25 no proof of claim required, third party claim there probably

1  was.

2          THE COURT:  All right.  Is that it?

3          MR. DEMPSEY:  Yes, thank you.

4          THE COURT:  All right.  Thank you.  Mr. Swanson, you

5  may reply to these arguments in support of the city's position

6  if you want to.

7          MR. SWANSON:  Thanks.  Thank you, Your Honor.  The

8  motor vehicle plan provision in the city's view actually

9  treats first and third party claims the same.  You had to file

10 a proof of claim for each to -- to be entitled to a

11 distribution under that provision.

12     The -- the Court asked -- and there's nothing in the

13 language which says that you had to file a proof of claim for

14 one, you didn't have to file a proof of claim for another one.

15 The bar date order applies with equal force to both types of

16 claims.

17     The Court asked about any language in the confirmation

18 order or the plan with respect to the bar date order.  And we

19 did a quick search so I can't represent that it's

20 comprehensive, but in -- in Page 114 of the confirmation

21 order, Paragraph 69 says effective as of the confirmation date

22 but subject to the occurrence --

23          THE COURT:  Wait a minute, wait a minute.  Let me

24 grab it.

25          MR. SWANSON:  Okay.

1          THE COURT:  Let me turn to this.  Hold on.  I'm at

2    Page 69.  Go ahead.

3          MR. SWANSON:  I'm sorry, Paragraph 69, Page 114.

4          THE COURT:  Oh, hold on.  I'm sorry.  Okay.  I'm --

5    I'm at that Paragraph 69.  Go ahead.

6          MR. SWANSON:  Effective as of the confirmation date

7    but subject to the occurrence of the effective date which we

8    all know occurred, and subject to the terms of the plan in

9    this order, all prior orders entered in the Chapter 9 case,

10   all documents and agreements executed by the city as

11   authorized and directed thereunder, and all motions or

12   requests for relief by the city pending before the Court as of

13   the effective date shall be binding upon and shall enure to

14   the benefit of the city and any other parties expressly

15   subject thereto.

16       And then we also have the provision in the -- the plan

17   with respect to the no modification of bar date order which

18   states I think succinctly and clearly that the plan --

19          THE COURT:  You mean the one you referred to

20   earlier.

21          MR. SWANSON:  Correct.

22          THE COURT:  Yeah.

23          MR. SWANSON:  Is not a modification of the bar date

24   order.  I didn't find anything in my quick search other than

25   those provisions which were directly on point to the -- to the

1   Court's question.

2           THE COURT:  Is the city -- has the city been paying

3   any type of benefits covered by the motor vehicle plan

4   provision during the pendency of the case for which a timely

5   proof of claim was not filed by the claimant?

6           MR. SWANSON:  As -- as Your Honor knows, I've been

7   filing numerous motions on this issue.  Any time this issue

8   comes up in State Court the city says hold on, let's check,

9   see if you filed a proof of claim.  And -- and if they didn't

10  file a proof of claim, we file a motion in this case and none

11  of them have been contested for a year or so until these two

12  parties contested them.

13      So is it possible that the city has paid third party

14  benefits for people that didn't file a proof of claim.  You

15  know, administratively it's probably very difficult and maybe

16  that has happened.  But my consistent direction from the city

17  has been to come to this Court and seek relief.

18          THE COURT:  What's difficult administratively?

19  Telling what's a pre versus a post-petition claim or what,

20  something else?

21          MR. SWANSON:  Or maybe just someone missed a

22  checklist item to look for a proof of claim or you know --

23          THE COURT:  All right.

24          MR. SWANSON:  -- or something along those lines.

25  But -- but we have been consistently coming to this Court

1          THE COURT:  You're not aware at least of a -- of a

2    practice by the city that would be inconsistent with your --

3    the interpretation of plan in the bar date order that you're

4    arguing today?

5          MR. SWANSON:  I'm not aware of it.  And -- and I've

6    filed many many motions in this Court which are consistent

7    with the actions I've taken here.

8          THE COURT:  All right.  Go on.

9          MR. SWANSON:  Frankly, Your Honor, I have nothing

10    further unless -- unless the Court has -- has questions.  We

11    believe the bar date order should be enforced.  There's

12    nothing in the plan which says that the bar date order

13    shouldn't be enforced.

14        In fact both the plan and -- and the confirmation order

15    state that all prior orders entered remain and the plan

16    contains a very specific reference with respect to the bar

17    date order which says that -- that it should be enforced.

18        There's two provisions in the bar date order which state

19    that you can't assert a claim against the city if you didn't

20    file a proof of claim.  And you can't get a distribution under

21    the plan.  And the city would rest on -- on those provisions.

22          THE COURT:  What about the language that Mr.

23    Dedvukaj cited at paragraph -- in Paragraph 58 of the order

24    confirming plan.  Nothing -- "nothing in the plan or this

25    order shall discharge, release, or relieve the city from any

1  current or future liability with respect to claims subject to

2  insurance coverage pursuant to MCL 500.3101." That -- that

3  language.

4        MR. SWANSON: Sure. And that Paragraph 58 which is

5  on page -- do you have a reference?

6        THE COURT: Page 108 of the order confirming plan.

7        MR. SWANSON: Page 108, thank you. Well, Your

8  Honor, it says current liability. There is no current

9  liability if the city -- if no proof of claim was filed.

10       The bar date order says that you can't assert a claim

11  against the city or property of the city and you're not

12  entitled to a distribution. So I don't see how -- how -- how

13  there could be a current liability because we already had an

14  -- an order which says that -- that there is no liability.

15       And we're not relying on the plan. What we're relying on

16  is the bar date order.

17       THE COURT: No, I know. I mean --

18       MR. SWANSON: Yeah.

19       THE COURT: Counsel -- opposing counsel is pointing

20  to this as -- as I think as a provision in the order

21  confirming plan that clarifies and makes clear his view of

22  this.

23       MR. SWANSON: Well, I mean one, we can -- we can

24  parse it out. Nothing in this plan or this order shall

25  discharge.

1    We're not arguing that there's anything in the plan or

2  the confirmation order.  What we're arguing is that there's

3  something in a separate order, in the bar date order which

4  relieves the city of the liability.

5    And -- and secondly, Your Honor, there can't be, as I --

6  as I just said, there can't be a current liability if you

7  already have an order which says that there can't be a current

8  liability.  So --

9        THE COURT:  All right.  Anything else, Mr. Swanson?

10       MR. SWANSON:  No, Your Honor.  Thank you.

11       MR. DEMPSEY:  If I might, Judge, just very briefly.

12       THE COURT:  Yeah, go ahead.

13       MR. DEMPSEY:  I would challenge Mr. Swanson to show

14  us and this Honorable Court any other motions that have been

15  filed pertaining to the no fault cases.  The PIP cases.  The

16  ones pertaining to Paragraph 58 and Section MCLA 500.3101, bar

17  date or not.

18    You will notice -- I know this Court is well aware of

19  this plan.  Paragraph 58 specifically doesn't mention 500.5135

20  which is the serious impairment issue.  I can tell you that

21  some of the providers in some of our cases were being paid

22  during the pendency of the bankruptcy.

23    So I know there's a separate pot of money.  What it's

24  called I'm not exactly sure and I do apologize to the Court

25  for that.  But I do specifically believe that the no fault

1  claims are separate from the pain and suffering claims as they

2  pertain to this plan.

3      THE COURT:  Well, all right.  Thank you.  I'm going

4  to -- we're done hearing oral argument today.  And I'm -- I'm

5  satisfied that -- that this issue is -- is sufficiently

6  complex that I should give the parties further opportunity to

7  supplement their briefing on it.  Because I'm not going to

8  rule at this moment on this issue, this -- the second issue

9  we've been dealing with, nor am I going to rule on the first

10 issue today.

11     I want to take some time to think about the arguments of

12 the parties and -- and consider the bar date order, the plan,

13 and the order confirming plan, the provisions the parties have

14 argued about and possibly other provisions in those -- in

15 those documents.

16     But while I do that because the parties have not

17 necessarily exhausted the plan and order confirming plan and

18 bar date order provisions in terms of citing them to me and

19 arguing from them, and because there may well be other

20 provisions in these documents, particularly the plan and the

21 order confirming plan that may have some bearing or that the

22 Court should be aware of, before it rules on this -- on this

23 issue.

24     I'm going to give the parties an opportunity for optional

25 supplemental briefs to be filed addressing this second issue.

1  And I say optional.  That means you can file it or not file

2  it.  And either way is fine, nobody is going to get defaulted

3  for not filing a further brief.  But I'm going to give you the

4  opportunity.

5      With respect to the motion directed against the -- the

6  Crowells and Ms. Murphy, we're going to have further

7  proceedings and briefing on that one anyway with respect to

8  the pre-petition versus post-petition claim issue.

9      And so I want to set a schedule for these things now and

10 I'll put it into an order confirming in an order, one or two

11 orders that I'm going to enter after this hearing.

12     Let's go back to this first issue that was argued which

13 relates to the Crowell, Crowell, and Murphy motion by the

14 city.  The issue of whether the claims of the Crowells and Ms.

15 Murphy are claims that arose before the petition date or -- or

16 after.  I want to give -- I'm going to give the respondent,

17 that is the claimants, the Crowells and the Murphys an

18 opportunity to file a -- a further brief and exhibits

19 containing evidence in the form of affidavits, documents,

20 other documentary material in support of their argument that

21 the -- their claim at issue arose after the filing of the

22 city's bankruptcy case under the fair contemplation test that

23 this Court has applied and has ruled today will apply to this

24 issue in this case.

25     And then I'll give the city an opportunity to file a

1  response, brief or other exhibits, or both if it wishes to

2  what the claimants file.  And then we're going to set a

3  deadline for supplemental briefing on the second issue, the

4  plan -- the motor vehicle plan provision issues that have been

5  argued today.

6      So I want to set a schedule.  I'd like to set a deadline

7  for the claimants, the creditors with respect to each of these

8  two motions to be the same day.  So, Mr. Dedvukaj.

9           MR. DEDVUKAJ:  Yes, Your Honor.

10          THE COURT:  Did I say that right?

11          MR. DEDVUKAJ:  Yeah.

12          THE COURT:  How much time do you want to have before

13 I have a deadline for you to file this?

14          MR. DEDVUKAJ:  Can I have a date in January?

15          THE COURT:  I'm sorry?

16          MR. DEDVUKAJ:  Can I have a date in January, please?

17          THE COURT:  What do you want?

18          MR. DEDVUKAJ:  How about January 25th?

19          THE COURT:  That's a long way off.  Why so long?

20          MR. DEDVUKAJ:  We've got three claims that I'm going

21 to have to give you evidence on.  If it was just one it

22 wouldn't be that big of a deal but since I've got three

23 claimants --

24          THE COURT:  Hold on.

25          MR. DEDVUKAJ:  And then I've got a vacation I'm

1   taking from the 16th, taking my kids down to Florida.

2           THE COURT:  You asked for what again, January what?

3           MR. DEDVUKAJ:  January 25th, 2017.

4           THE COURT:  All right.  I will take a deep breath

5   and give you that long.  January 25.  We do have some holidays

6   coming up between now and then I -- I recognize that as well.

7       All right.  So with respect to the second issue,

8   claimants want how long to file a further brief or briefs,

9   optional briefs on that second issue.  Mr. Dedvukaj.

10          MR. DEDVUKAJ:  Your Honor, I can do it by December

11  15th on the second issue.

12          THE COURT:  Is December 15 sufficient time for you,

13  Mr. Dempsey?

14          MR. DEMPSEY:  Yes, Your Honor.

15          THE COURT:  All right.  We'll make that deadline

16  December 15.  All right.  Now Mr. Swanson, with respect to

17  that second issue where the other side has a deadline of

18  December 15, how long after that do you want me to give you to

19  file any response?

20          MR. SWANSON:  Would January 9th work for the Court?

21          THE COURT:  I'm sorry?

22          MR. SWANSON:  January 9.

23          THE COURT:  Hold on.  Yes, that's a Monday.  January

24  9, 2017, that's fine.  And then with respect to that first

25  issue, the pre versus post-petition claim issue, how long

1  after January 25 do you want me to give you to respond to

2  that?

3          MR. SWANSON:  Thirty days, Your Honor, February 25th.

4          THE COURT:  That's a Saturday.  Let's pick a week

5  day.

6          MR. SWANSON:  Sure, February 24th.

7          THE COURT:  All right.  Friday, February 24, 2017.

8  I'm going to set a further hearing date, non-evidentiary

9  hearing date on -- on these motions.  Which I think probably

10  certainly will cover and include further opportunity for oral

11  argument regarding the -- the pre versus post-petition claim

12  issue.

13      It may cover also further opportunity for oral argument

14  on the motor vehicle plan provision issue, but it may not.  I

15  mean if I -- if I decide that issue with some sort of written

16  opinion before the further hearing date then -- then that

17  issue will be resolved and done.  But for the time being I'm

18  going to -- I'm going to adjourn -- or schedule a further

19  hearing on both these motions to occur soon after the February

20  24, 2017 deadline that the city will have to respond, to file

21  their last response of the ones we've been talking about.

22      So we're looking at March.  Mr. Swanson, I don't think we

23  have gone out that -- into March for -- to -- to give you

24  claim objection hearing dates in the city's case, have we?

25          MR. SWANSON:  I -- I do not believe so.  We're --

1  we're going to need them though, so I'm happy to -- to speak

2  with --

3          THE COURT:  Well, I -- generally we've been doing

4  these about in the middle of the month.  Whatever date we pick

5  for this further hearing in March we can make -- you can just

6  assume that will be the claim objection hearing date in March

7  if you want only one in March.

8          MR. SWANSON:  Yeah.

9          THE COURT:  And then we'll work on other months

10  later.  But so we're looking at March 15 is a Wednesday but

11  I'm out of town that day.  I'm -- I'm looking at -- I'd like

12  to do this on March 22.

13          MR. SWANSON:  No objection with the city, Your

14  Honor.

15          THE COURT:  It would be March 22, 2017 at 1:30 p.m.

16          MR. DEDVUKAJ:  1:30 Judge, thank you.

17          THE COURT:  Does that work on other counsel's

18  calendar?

19          MR. DEDVUKAJ:  Yes, Your Honor, it does.  Thank you.

20          MR. DEMPSEY:  I'll make it work, Judge.  Thank you.

21          THE COURT:  It's so far out.  I mean you may have a

22  trial date in the way, but you're both good, do you think?

23          MR. DEDVUKAJ:  I think so.

24          MR. DEMPSEY:  Yes, Your Honor.

25          THE COURT:  All right.  So that will be March 22.

1  And -- and -- all right.  So I will prepare and enter a

2  scheduling type order reflecting this which I hope comes

3  somewhere near to reflecting what I just said.

4      Is there anything else that any of you think I should

5  address in that order?  Mr. Swanson.

6            MR. SWANSON:  No, Your Honor.

7            THE COURT:  Mr. Dedvukaj.

8            MR. DEDVUKAJ:  No, Your Honor.

9            THE COURT:  Did I say it right that time?

10           MR. DEDVUKAJ:  You said it right.

11           THE COURT:  Okay.

12           MR. DEDVUKAJ:  Very good.

13           THE COURT:  Well, I'm sure I'll butcher it next

14  time, but all right.  Mr. Dempsey.

15           MR. DEMPSEY:  No, Your Honor.

16           THE COURT:  All right.  So we're done.  I think that

17  concludes all our matters for today.  And so we'll see some or

18  all of you next time.  Thank you all very much.

19           MR. SWANSON:  Thank you, Your Honor.

20           MR. DEDVUKAJ:  Thank you, Your Honor.

21           MR. DEMPSEY:  Thank you, Your Honor.

22           THE CLERK:  Please rise.  Court is adjourned.

23      (Court Adjourned at 4:53 p.m.)

24

25

1

2

3

4

5

6

7  We certify that the foregoing is a correct transcript from the

8  electronic sound recording of the proceedings in the

9  above-entitled matter.

10

11 /s/Deborah L. Kremlick, CER-4872          Dated: 12-2-16
   Jamie Laskaska

12

13

14

15

16

17

18

19

20

21

22

23

24

25