UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF,         Case No. 13-53846
                               Detroit, Michigan
CITY OF DETROIT, MICHIGAN    March 22, 2017
_____/   1:48 p.m.

    IN RE: [#11743] CORRECTED MOTION TO FILE AMENDED PROOF OF
    CLAIM, FILED BY INTERESTED PARTY JEROME COLLINS, [#11357]
    MOTION TO ENFORCE ORDER, PURSUANT TO SECTIONS 105, 501, AND
    503 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND
  3003(c), ESTABLISHING BAR DATES FOR FILING OF PROOFS OF CLAIM
AND APPROVING FORM AND MANNER OF NOTICE THEREOF AGAINST DANNY
CROWELL, LEOTA MURPHY, AND JASMINE CROWELL, FILED BY DEBTOR IN
POSSESSION CITY OF DETROIT, MICHIGAN, AND [#11583] MOTION TO
  ENFORCE ORDER, PURSUANT TO SECTIONS 105, 501 and 503 OF THE
    BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND 3003(c),
    ESTABLISHING BAR DATES FOR FILING OF PROOFS OF CLAIM AND
    APPROVING FORM AND MANNER OF NOTICE THEREOF AGAINST NAJIB
HODGE, FILED BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN
          BEFORE THE HONORABLE THOMAS J. TUCKER
           TRANSCRIPT ORDERED BY: ROBIN WYSOCKI

APPEARANCES:

For the City of Detroit:    MARC SWANSON, ESQ. (P71149)
                         Miller, Canfield, Paddock &
                         Stone
                         150 West Jefferson
                         Suite 2500
                         Detroit, MI 48226
                         313-496-7829

For Creditors Crowell,     JOSEPH DEDVUKAJ, ESQ. (P51335)
Murphy and Crowell:        The Joseph Dedvukaj Firm, P.C.
                         1277 West Square Lake Road
                         Bloomfield Hills, MI 48302
                         248-352-2110

For Creditor Najib Hodge:  CLIFFORD NEUBAUER, JR., ESQ.
                         (P70910)
                         The Law Office of Joumana
                         Kayrouz, PLLC
                         1000 Town Center
                         Suite 800
                         Southfield, MI 48075
                         248-557-3645

```
1  For Jerome Collins:        BENJAMIN WHITFIELD, ESQ.
                              (P23562)
2                             Benjamin Whitfield, Jr. and
                              Associates
3                             613 Abbott Street
                              1st Floor
4                             Detroit, MI 48226
                              313-961-1000
5
   Court Recorder:            Jamie Laskaska
6
   Transcriber:               Deborah L. Kremlick
7
   Proceedings recorded by electronic sound recording, transcript
8  produced by transcription service.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1      (Court in Session)

2           THE CLERK:  Please rise.  This Court is back in

3  session.  You may be seated.  The Court will call the matter

4  of the City of Detroit, Michigan, case number 13-53846.

5           THE COURT:  All right.  Good afternoon to everyone.

6  Let's have appearances for the record by counsel starting with

7  the counsel for the city.

8           MR. SWANSON:  Good afternoon, Your Honor.  Marc

9  Swanson from Miller, Canfield, Paddock, and Stone on behalf of

10  the city.

11          THE COURT:  All right.  With respect to the other

12  attorneys and parties in the courtroom, we're scheduled as you

13  know probably to hear three motions in this case today.

14      Of the three there are two that I want to hear and call

15  and consider together basically.  And those are the second two

16  listed -- the last two listed on the calendar that was posted

17  probably outside and on the Court's web site.

18      And this is a further hearing, a second hearing on the

19  motions by the city to enforce order establishing bar dates et

20  cetera against first the group of claimants Danny Crowell,

21  Leota Murphy, and Jasmine Crowell.  And secondly against Najib

22  Hodge.  That's the motions at docket numbers 11357 and 11583

23  respectively.

24      The Court held a hearing -- one second, on November 16,

25  2016 on each of these motions.  And we heard them together at

 1  that time as well and we'll continue that now.

 2      The Court at the conclusion or after the November 16

 3  hearing as you know entered an order on November 18, 2016,

 4  docket 11679 regarding further proceedings on these motions,

 5  including the opportunity for parties to file further briefs

 6  and further exhibits on evidentiary materials regarding

 7  specified matters.  And I'm scheduling a further

 8  non-evidentiary hearing for today at 1:30.  So we're here for

 9  that further hearing.

10      I have reviewed, I believe, everything filed by the

11  parties involved with these two motions that was filed after

12  the November 16 hearing.  And we'll hear further -- give an

13  opportunity for further oral argument on the issues to be

14  decided here.

15      So Mr. Swanson as counsel for the city, I'll have you go

16  first.  I think before we -- before you begin though, let's

17  get entries of appearance for the record by counsel for the

18  non-moving parties.

19          MR. DEDVUKAJ:  Good afternoon, Your Honor.  Joe

20  Dedvukaj here for the creditors Dan Crowell, Leota Murphy, and

21  Jasmine Crowell.

22          MR. NEUBAUER:  Good afternoon, Your Honor.  Clifford

23  Neubauer here on behalf of creditor Najib Hodge.

24          THE COURT:  All right.  So, Mr. Swanson, what would

25  you like to say about these motions today?

1          MR. SWANSON:  Thank you, Your Honor.  As the Court

2    outlined there have been a number of briefs written on a

3    number of topics regarding these motions.

4          But there is one straightforward issue in this dispute

5    that is dispositive.  And that issue is whether these

6    plaintiffs could possibly have a "valid pre-petition claim"

7    under the motor vehicle plan provision when there is an order

8    of this Court, a Federal Court order, which states that the

9    plaintiffs A, had to file a proof of claim; and B, were

10   forever barred, estopped and enjoined from asserting any claim

11   against the city or property of the city if they did not file

12   a proof of claim.

13         Now none of the plaintiffs address this most basic

14   argument head on because the answer is obvious, they do not

15   have a "valid pre-petition claim" when there is a Court order

16   which was not modified in any way by the plan.  The plan

17   instead provides that it did not modify the bar date order

18   when there is a Court order which states that they are forever

19   barred, estopped and enjoined from a asserting these claims.

20         There's no ambiguities, there's no reason to look at any

21   other argument or any other evidence.  As a result the city

22   requests that the Court grant its motions.

23         The city's happy to address any other arguments or

24   questions that the Court may have regarding its supplemental

25   papers, but the city maintains that the Court should first

1 look at the language of the motor vehicle plan provision,

2 those three words, valid pre-petition claim, and conclude that

3 a claim cannot be valid having legal efficacy or force if it

4 is filed in violation of this Court's own order.  Thank you.

5          THE COURT:  All right.  We'll hear from the other

6 attorneys then.  Mr. Dedvukaj.

7          MR. DEDVUKAJ:  That's right.

8          THE COURT:  I get it that time?

9          MR. DEDVUKAJ:  You did, Your Honor.

10          THE COURT:  Okay.  Thank you.  Go ahead.

11          MR. DEDVUKAJ:  Thank you, Your Honor.  With respect

12 to the argument that's being made, the plan was -- is where

13 we're making our claim through which was obviously something

14 that was approved by the Court and carved out specific

15 pre-petition claims.

16     And in fact the language is unambiguous.  It says nothing

17 in the plan shall discharge, release, or relieve the city from

18 any current or future liability with respect to claims subject

19 to insurance coverage pursuant to MCL 500.3101.

20     I've tried in the brief to explain to the Court why these

21 -- this plan was created in this way and the circumstances and

22 the principal purposes of the parties.  The parties being the

23 State of Michigan and the City of Detroit.

24     It was so that the City of Detroit could continue to

25 operate government owned vehicles.  In fact the very provision

1 from which we claim states it only pertains to government

2 vehicles. That's very important.

3     Why? Because there's what's called governmental immunity

4 that our state gives to municipalities. And there's basically

5 five exceptions. One of those exceptions is when a government

6 owned vehicle injures a innocent person on the streets.

7     It also allowed the City of Detroit to continue to

8 operate and under no fault claims would pay in the regular

9 course of business and I've attached as Exhibit D, a letter

10 from the City of Detroit's attorney while this bankruptcy was

11 going on, specifically telling me that hey, we're going to be

12 honoring these claims regardless in the regular course of

13 business.

14     That's because the -- the State of Michigan did not want

15 these claims that arise under this specific exception within

16 this class of people, they did not want the Medicaid program

17 to be taxed, they didn't want the public to be at risk and

18 harmed by these government owned vehicles without any form of

19 compensation. They did set specific limits. It's very

20 comprehensive in terms of what they did. There is at the very

21 least --

22         THE COURT: Well, the letter, excuse me, the letter

23 you referred to --

24         MR. DEDVUKAJ: Yes.

25         THE COURT: -- was -- was it October 2013, I

1  believe.

2         MR. DEDVUKAJ:  It is a letter --

3         THE COURT:  It was -- it was --

4         MR. DEDVUKAJ:  I think -- it think it is.

5         THE COURT:  Yeah.  It was from Mr. Noseda, counsel

6  for the city.

7         MR. DEDVUKAJ:  Correct.

8         THE COURT:  It's that letter and that was October

9  2013 if I recall correctly which was --

10        MR. DEDVUKAJ:  October 29, 2013.

11        THE COURT:  Yeah.  Which was pretty early in the

12 bankruptcy case.  It was before the bar date order was entered

13 on November 21, 2013, docket number 1782.

14     It was long before the city proposed its Chapter 9 plan

15 of adjustment.  And of course it was more than a year before

16 the plan of adjustment -- a plan of adjustment was confirmed

17 by the Court on November -- on November 12, 2014.

18     And so it was well before any of the provisions, the bar

19 date order provisions, the plan, and the order confirming plan

20 provisions that the parties are arguing about here were filed

21 or a record or anywhere in existence, isn't that right?

22        MR. DEDVUKAJ:  I think the timing that you've

23 indicated, the time table is accurate.  However, I will

24 indicate that the City of Detroit continued to conduct

25 themselves inconsistent with that letter.

1        I would also indicate to the Court that the plan of

2   adjustment came after your bar date order.  Nothing in that --

3   in that plan of adjustment with respect to this specific class

4   of people references any pre-petition or any bar date order

5   that the Court entered earlier suggesting that that --

6            THE COURT:  Well, that's part of your argument I

7   think that --

8            MR. DEDVUKAJ:  Yeah.

9            THE COURT:  -- that the confirmed plan in effect

10  modified the bar date order with respect to claimants of the

11  type covered by this motor vehicle provision.

12           MR. DEDVUKAJ:  Correct.  And it was voluntarily

13  something that -- that was agreed to as you can see from the

14  specific language that was put within this class of claimants.

15  And --

16           THE COURT:  The city -- as you know the city's

17  position or -- or view of the plan of course and these motor

18  vehicle insurance provisions in the confirmed plan and the

19  order confirming plan is that you have motor vehicle claims

20  covered by those provisions are to be treated as -- as those

21  provisions say but -- but in order to be -- to -- to receive

22  any payment or distribution or have any rights they have to

23  have -- be claims for which a timely proof of claim was filed

24  in the bankruptcy case because of the bar date order.

25           Why -- why is the city's view in your -- why is the

1 city's view and interpretation of these -- the bar date order

2 and the plan contrary in your view to the purpose of the motor

3 vehicle plan provision?

4 　　　　MR. DEDVUKAJ:  It's contrary --

5 　　　　THE COURT:  Do you see what I'm asking?

6 　　　　MR. DEDVUKAJ:  Yeah.

7 　　　　THE COURT:  In other words -- in other words the --

8 the requirement that okay, to -- to survive any such

9 pre-petition claims that are covered by the motor vehicle

10 provision have to be claims for which a timely proof of claim

11 was filed consistent with the bar date order.

12 　　Why is that inconsistent with the purpose -- sort of the

13 overall purpose -- purposes that you've alluded to earlier of

14 the motor vehicle plan provisions that were negotiated with

15 the State of Michigan?

16 　　　　MR. DEDVUKAJ:  Well, it would be contrary to the

17 purpose because it does not reference anything with regard to

18 pre-petition or any bar dates.  And any requirement that there

19 be for this class of claimants any claim filed before the bar

20 date.

21 　　Of course we -- we do know that some of these claims do

22 arise once there's this -- and by the way there's no reference

23 to serious impairment or anything of that kind in that -- in

24 that section of the plan.  But we do know that sometimes like

25 in this case the serious impairment arises much later because

1  of the passage of time, et cetera and documentation for -- for

2  proof involving a serious impairment.  Generally you don't

3  have it unless you have a broken bone at the scene or you're

4  paralyzed at the scene.

5     It was the City of Detroit's plan and if they wanted that

6  effect -- to have that effect of course they could have

7  included that language in there, but instead they included the

8  language that further states nothing in the plan shall

9  discharge, release, or relieve the City of Detroit from any

10  current or future liability.

11     Now I also argue that under the Bankruptcy Code Section

12  1123(a)(4) it requires that a plan provide the same treatment

13  for each claimant or interest of a particular class.  And I

14  think that is extremely important because these claimants fall

15  within the specific class within the specific governmental

16  immunity exception which is why they included that word valid

17  because it had to be something that actually applied under the

18  governmental immunity exception.

19     Because you could have a -- a motor vehicle that's being

20  operated not on public roads, but say somewhere in a -- in a

21  construction field and -- and a person be hit by a bulldozer.

22  That's a motor vehicle but it wouldn't fall under the

23  governmental immunity exception you see.

24     So this is why at the very least there's an ambiguity

25  here and under Michigan and federal contract law has to be

1   construed against the City of Detroit.

2         THE COURT:  Well, if -- if -- let's assume for just

3   a second for discussion purposes, that you're right in arguing

4   that there is perhaps an ambiguity in the motor vehicle plan

5   provision on this issue of whether these types of claimants

6   have to file a timely proof of claim or not.

7         Isn't -- is that ambiguity though resolved by the other

8   provision in the plan that being the provision that says that

9   the plan does not modify any bar date order?  Including

10  specifically a reference to the bar date order that the city

11  is relying on here, docket 1782?  This is -- the city cited

12  this in their supplemental brief at Page 6, but excuse me,

13  it's -- it's in the confirmed plan at Page 32, docket 8272

14  which has attached to it the confirmed plan at Page 32,

15  Article IIA IID, that one.

16        MR. DEDVUKAJ:  I think -- I think in general that

17  would be absolutely correct if this wasn't a claim that fell

18  within the motor vehicle exception within the plan.  But there

19  is no indication in the plan itself that carves out the

20  specific class of individuals to suggest that they needed to

21  do anything further except to fall within a valid claim

22  brought under that provision of the plan, especially since

23  they've included the language where it preserves these claims

24  for the current and for the future and it does not discharge

25  or release them.

1      I mean the whole purpose of them being in bankruptcy is

2   to discharge these obligations.  Well, in the plan it says

3   shall and the word shall is basically it's a command, it's

4   mandatory, and it says discharge, release, or relieve the city

5   from any, not just a particular class, but any current or

6   future liability.

7      And at that point when the plan was approved --

8           THE COURT:  Right.  And of course you --

9           MR. DEDVUKAJ:  This was as current liability.

10          THE COURT:  Well, of course you saw the city's in

11  their brief, their supplemental brief, their argument that the

12  -- these claims were not current liabilities within the

13  meaning of that language at the time this -- the plan was

14  confirmed containing this clause or this provision because

15  they had missed the claims bar date and not filed a claim,

16  proof of claim.

17          MR. DEDVUKAJ:  Well, nothing in the plan says --

18          THE COURT:  In other words --

19          MR. DEDVUKAJ:  I understand, but --

20          THE COURT:  Looking back and pointing to the

21  language in the bar date order that essentially says there is

22  no claim, no valid -- or no claim to be allowed or the subject

23  of any distribution or rights unless a proof of claim is

24  timely filed by the bar date.

25          MR. DEDVUKAJ:  But it wouldn't be a

1  distribution, Your Honor, because it's a preservation of these

2  claims and they would pay it out of their general fund or the

3  fund that was established, there was a $15,000,000 fund with

4  the State of Michigan that was established to take care of

5  these claims.

6      And it placed a specific limitation of no more than

7  $20,000 per individual, and no more than 40,000 aggregate even

8  if you had 100 individuals that were injured.  That gave it

9  sufficient protection.

10     THE COURT:  I think I was in artful in my question

11  in referring to that provision in the bar date order.  Let me

12  be more specific.

13     Paragraph 22 of the bar date order docket 1782 which is

14  cited at Pages 3 to 4 of the city's supplemental brief by the

15  way, 11755, and quoted there.  It says among other things,

16  "that any entity that's required to file a proof of claim but

17  fails to properly do so shall be forever barred, estopped, and

18  enjoined from asserting any claim against the city or property

19  of the city," et cetera.

20     So it -- it is a bar to claims.  It's not just a bar to

21  distributions in -- in the bankruptcy case.  That's -- and I

22  should have worded my question that way, but that's I think

23  the provision or a provision the city points to.  And as -- as

24  support for its argument that when you fast forward a little

25  more than a year after the bar date order to the order

1 confirming plan and the confirmed plan, November 2014, because

2 these claims that your clients and Ms. Hodge had were not the

3 subject of a timely filed proof of claim as required by the

4 bar date order.

5    Pursuant to the terms of the bar date order, those

6 creditors, your clients, had -- were enjoined, and estopped,

7 and barred from asserting any claim against the city or

8 property of the city by the bar date order.  So there was no

9 current liability by the city to them as this term current

10 liability is used in the motor vehicle plan provision.

11    That's the city's argument.  And I'm sure you -- you

12 picked that up from their brief.  What's your response to

13 that?

14       MR. DEDVUKAJ:  Well, fine if there was no current

15 liability then there wouldn't be a bar date because there

16 wouldn't be a claim.  This is then a future claim which of

17 course -- which of course the plan gives the carve out and

18 allows those claims to proceed.

19       THE COURT:  I'm not sure I understand your response

20 there.

21       MR. DEDVUKAJ:  Sure.  If -- if in fact there wasn't

22 a current claim as the city says, okay, then there's no reason

23 for them --

24       THE COURT:  It's current or future liability, that's

25 the language in the plan you're -- you're relying on.

1      MR. DEDVUKAJ:  That's right.  That's right.  But --

2 but if you back up a little bit before that language is used,

3 it actually goes even further and it says it will not

4 discharge any or relieve them of any liability under the motor

5 vehicle code for which there must be insurance coverage.

6      This is the very exact same thing.  As I say, I think the

7 plan can be interpreted more than one way.  If there's an

8 interpretation that can be done in more than one way then

9 there's an ambiguity.  I think there's a reasonable

10 interpretation and more than one way under the circumstances

11 of this case and that specific provision.

12      I'm not asking the Court to re-write it, but I'm asking

13 the Court to review it in the light most favorable to this

14 class of claimants so that, you know, the intent and purpose

15 of that provision within the plan of adjustment is carried out

16 as intended by the drafter and the State of Michigan.

17      THE COURT:  Why should the Court view the language,

18 assuming I find it ambiguous, in a light most favorable to

19 your clients?

20      MR. DEDVUKAJ:  Because I think as a -- as a public

21 policy, I think the public policy requirements for this

22 particular kind of contract and what was actually done in --

23 in permitting the City of Detroit to continue to operate motor

24 vehicles and to continue while the bankruptcy was -- was in

25 progress, I think public policy would require that the Court

1  view it in that manner.

2      I think that there is case law for the last 100 years

3  that any ambiguity should be construed against the drafter and

4  not against the claimant.  And as I've cited, the Bankruptcy

5  Code requires that this class of claimants be treated the same

6  regardless when there's an intent within the plan that there

7  be a class of claimants that should benefit from that plan.

8  And I think my clients were the intended beneficiaries.

9          THE COURT:  We talked about this a little bit in the

10  last hearing, this construe against the drafter contra

11  proferentem argument.  There's no evidence, is there still in

12  the record that the city was the -- the sole drafter of this

13  language, this plan language.

14      The city's affidavits say that this was a jointly drafted

15  language negotiated -- highly negotiated with the State of

16  Michigan by the city.  It's not as if the city, the debtor in

17  this case, was the sole drafter.

18          MR. DEDVUKAJ:  I would agree.  But it was --

19          THE COURT:  I know your point is well, our

20  clients --

21          MR. DEDVUKAJ:  As between my client and them, that's

22  right.

23          THE COURT:  The state in negotiating this with the

24  city was in a -- in a sense acting on behalf of claimants --

25          MR. DEDVUKAJ:  Sure.

1          THE COURT:  -- of the type that your clients are in

2    your view, right?

3          MR. DEDVUKAJ:  One hundred percent, that's right.

4          THE COURT:  Acting for their benefit.  So in a sense

5    it was -- it was a proxy for your clients, the negotiation of

6    this jointly drafted language according to the city's

7    affidavits, jointly drafted.  So I don't see how --

8          MR. DEDVUKAJ:  Well, I don't know if it was

9    jointly --

10          THE COURT:  -- the rule construed against the

11    drafter on ambiguity can apply here.

12          MR. DEDVUKAJ:  I think it can apply because my

13    client was not involved in drafting it.  And any reasonable

14    person reading the plan would come out -- come out of reading

15    that plan that there was a preservation of this class of

16    claimants.  There was no bar date reference whatsoever.  There

17    was no pre-petition language referenced whatsoever.  And in

18    fact there's contrary language that says there would not be

19    relieved their discharge for current or future liabilities.

20          THE COURT:  All right.  Anything else you'd like to

21    say?

22          MR. DEDVUKAJ:  No, sir.

23          THE COURT:  Well, while you're up here, what about

24    this argument that you were given an opportunity to file a

25    supplemental brief and exhibits on that you made at the last

1 hearing as I recall, your argument that your clients' claims

2 are claims that arose after the filing of the petition, the

3 bankruptcy petition in this case on July 18, 2013 even though

4 the accident -- the truck -- or the truck hitting their --

5 their car, the accident that is -- is the basis or subject to

6 the claim occurred a month and a half before the petition

7 date.  I didn't see that you --

8          MR. DEDVUKAJ:  I didn't and I'll tell you --

9          THE COURT:  -- you didn't supplement it with any

10 evidence.

11          MR. DEDVUKAJ:  You are 100% correct and I'll tell

12 you why.

13          THE COURT:  All right.

14          MR. DEDVUKAJ:  I -- I-- I'm not a member or I

15 haven't practiced bankruptcy law and so I wasn't a part of the

16 efile system.  And so I thought when the -- when the order was

17 entered back in -- in July of 2016, it didn't reference that

18 it was only going to be for that one instance.

19      So I thought for this case that I would -- the Court

20 would accept paper filing.  So what I did was I ended up paper

21 filing the brief in November, this supplemental brief.  It

22 ended up getting stricken and there was an order entered

23 against me saying you cannot file anymore and you must take a

24 efile course.

25      Of course during the holidays there wasn't one.  So I

1 ended up taking an efile course on January 24th and by that

2 time the time had expired.  I filed a motion for

3 reconsideration so you'd accept my brief and I wasn't -- by

4 that time the dates had expired for the second brief and I

5 wasn't sure if the Court was going to grant my motion to set

6 aside the order striking my brief and allowing me to proceed

7 with this supplement.

8      You eventually did and I'm at the mercy of the Court if

9 you can give me a week I can file a supplement on that issue.

10 But that's what happened.

11           THE COURT:  Wait a minute.  I -- I let you file.  I

12 let you file and you did file finally on March 6, docket 11803

13 the very thing that you tried unsuccessfully to file in paper

14 form back in --

15           MR. DEDVUKAJ:  November.

16           THE COURT:  -- November.

17           MR. DEDVUKAJ:  Yes, sir.

18           THE COURT:  Right?

19           MR. DEDVUKAJ:  Yes, sir.

20           THE COURT:  The very thing and it included nothing

21 in the way of medical records or any other evidence to support

22 your post-petition claim argument.

23           MR. DEDVUKAJ:  That's correct.

24           THE COURT:  Right?

25           MR. DEDVUKAJ:  That's correct.  But when you -- when

1  you --

2       THE COURT:  So -- so how did what you just went

3  through, I know it was kind of a long -- a tortured history

4  that -- that we had going back and forth over this paper

5  versus electronic filing and all that.

6       MR. DEDVUKAJ:  Uh-huh.

7       THE COURT:  But, you know, what does that have to

8  do with the -- the fact that you -- you had until --

9       MR. DEDVUKAJ:  I think you gave us two different

10 dates for --

11      THE COURT:  Hold on, hold on.  The order of -- of

12 November 18, docket 11679, Paragraph 2 gave you as I said

13 during the hearing on November 16, so you knew it from that

14 time, I gave your clients until January 25, 2017 to file any

15 supplemental brief and any exhibits containing any evidentiary

16 materials, any affidavits, or documentary evidence in support

17 of your clients' argument that their claims against the city

18 arose after the city filed its Chapter 9 bankruptcy petition

19 on July 18, 2013 rather than before that date.

20      MR. DEDVUKAJ:  Yes.  But as you know, I filed it on

21 March 6th because I didn't get an order until after -- after I

22 took the class on March 24th.  So by that time I filed this one

23 which as I said I didn't know the Court would allow me to file

24 this.  So I filed what I had at that time.

25      But as -- as -- if you look at the history, I've always

1  been timely in terms of filing something.  And by that time

2  the March 25th had expired.

3          THE COURT:  But it's not as if you filed or tried to

4  file something in paper that I didn't let you file ultimately.

5          MR. DEDVUKAJ:  That's true.

6          THE COURT:  I let you file everything -- everything

7  that's in your March 6th filing, electronic filing is -- is

8  everything that you had previously filed or tried to file in

9  paper before that.

10         MR. DEDVUKAJ:  Right, that's right.  So what I did

11  was I -- I -- I filed what was required for this argument back

12  in November, it was stricken.  Then I took the course in

13  January 24.  I filed a motion to set aside the order and allow

14  me to file this brief, you granted it.

15         And it was after the 25th so I filed what I had in

16  November.  During that time period I didn't know that you

17  would allow it because I had had no experience with the Court

18  nor any Bankruptcy Court and that's basically the reason.

19         THE COURT:  All right.  Anything else you want to

20  say about this post-petition claim matter?

21         MR. DEDVUKAJ:  No, sir.  No, sir.

22         THE COURT:  No?

23         MR. DEDVUKAJ:  No.  Thank you.

24         THE COURT:  All right.  Thank you.  Mr. Neubauer,

25  what would you like to say here?

1          MR. NEUBAUER:  Good afternoon, Your Honor.  Well,

2  most of that's already obviously gone through and I

3  incorporate the arguments as prior counsel has made.

4       One of the things that I would just draw attention to on

5  that last argument here in regard to future.  The plan

6  specifically said shall not discharge, or release, or relieve

7  the city from current or future liability.

8       For instance in my particular client's situation, ongoing

9  treatment continues to occur because of the -- the accident

10  and she's making a first party no fault claim.  So for

11  instance my client, Mr. Hodge still does have future treatment

12  which therefore future liability.

13       I do understand that that was not in our response brief

14  or our supplemental brief, but I do want to just add that to

15  the -- to the record today.  Mainly the City of Detroit knew

16  of my client's --

17          THE COURT:  This was ongoing treatment for --

18  necessitated in your client's view by this accident that

19  occurred in what, in 2012?

20          MR. NEUBAUER:  Correct.

21          THE COURT:  It was a bus -- injury riding a bus,

22  wasn't it?

23          MR. NEUBAUER:  Correct, yeah, August of 2012.

24          THE COURT:  Yeah, this was - I had thought from the

25  prior hearing, Mr. Dempsey was here for your clients there and

1  I guess he doesn't argue that.  The November 16 hearing, I --

2  I thought that your client was not claiming any sort of

3  post-petition claim.

4      I guess you're not really.  What you're just saying is,

5  you sit within this future liability language of the plan's

6  motor vehicle --

7          MR. NEUBAUER:  Correct.

8          THE COURT:  -- provision, is that it?

9          MR. NEUBAUER:  Correct.  In addition I mean --

10         THE COURT:  How is that any different from the

11  current liability?  It says current or future liability in the

12  same phrase there.

13         MR. NEUBAUER:  Well, I mean for instance --

14         THE COURT:  What's the difference?

15         MR. NEUBAUER:  Current is something that's already,

16  at least in the no fault world you have a liability once that

17  treatment was rendered.  Current so something if something was

18  rendered today or just recently I think that would be current.

19  And future for instance --

20         THE COURT:  I meant -- I meant what difference does

21  it make for purposes of the issue of whether the -- the bar

22  date order bars the claim or not is what I'm -- what I'm --

23  was asking about.  In other words, if the bar date order bars

24  -- has the effect of barring current liability claims, why

25  doesn't it also bar future liability claims as long as they're

1 all pre-petition claims which they are.

2      MR. NEUBAUER: Well, under that theory I think you

3 would be correct. Obviously we argue that the -- the claim is

4 not barred by that claim being filed by the bar date.

5      THE COURT: Right, sure, yeah. Yeah, I mean you --

6 you agree with the arguments of Crowell, Crowell, and Murphy

7 on that and I did -- I did read the supplement that -- that

8 your firm filed. You -- you signed that one, you and Mr.

9 Dempsey were the attorneys, but you filed that on December 15

10 timely. I did review that. Okay. Go on.

11      MR. NEUBAUER: And then the other thing I -- I just

12 want to add especially with the City of Detroit supplemental

13 response briefing and other briefs that they've filed, that

14 the accident was August 2012. There was a lawsuit filed in

15 Wayne County Circuit Court December of 2012.

16    And the initial filings with the City of Detroit's

17 Schedule A to the City of Detroit listed that lawsuit as a

18 creditor. The City of Detroit is fully aware of that, yes --

19      THE COURT: A disputed claim, right?

20      MR. NEUBAUER: A disputed claim.

21      THE COURT: Right.

22      MR. NEUBAUER: But aware of the claim.

23      THE COURT: Under the bar date order your client had

24 an obligation to file a proof of claim timely by the bar date,

25 right?

1          MR. NEUBAUER:  Right.  They had the opportunity to

2   file them, correct.

3          THE COURT:  They had an obligation to do so, didn't

4   they?

5          MR. NEUBAUER:  Well --

6          THE COURT:  In other words weren't they in the -- in

7   the group of claims, pre-petition claims that were where it

8   was -- there was a requirement to file a proof of claim by the

9   February 21, 2014 bar date, isn't that right?

10         MR. NEUBAUER:  Well, yes, however I do believe

11  within the plan that was later entered took it out of that.  I

12  think the idea --

13         THE COURT:  No, I understand.  You're -- you're

14  arguing the plan later --

15         MR. NEUBAUER:  Correct.

16         THE COURT:  -- modified that.

17         MR. NEUBAUER:  Correct.

18         THE COURT:  Yeah.  But until that time, until the

19  plan was -- was confirmed, and but for the plan and your view

20  of the plan, the -- the bar date order would bar your client's

21  claims, right?

22         MR. NEUBAUER:  Yes.

23         THE COURT:  All of them, right?

24         MR. NEUBAUER:  Correct.

25         THE COURT:  Okay.

1          MR. NEUBAUER:  Under that theory.  Obviously we're

2     argue otherwise and -- and in regards to the plan saying that

3     they couldn't discharge any of their liabilities.  They were

4     required to continue to maintain, you know, insurance coverage

5     for all of these liabilities.

6          And I kind of piggyback on what was said.  I mean a

7     bankruptcy is an order to discharge any liabilities.  And yet

8     they specifically drew attention to these classes of

9     individuals that had motor vehicle accidents, personal injury

10    protection no fault benefits, as well as bodily injury

11    complaints and they excluded those.

12         I think that plan specifically excluded those from the

13    bankruptcy.  They were required to have and maintain that

14    insurance.  I don't disagree with the idea that they would be

15    able to argue against the actual injury or, you know, the

16    substance of the claim in the Circuit Court.  I'm not saying

17    the Bankruptcy Court said that the injury has to exist and

18    that type of thing.  However, I think that it still would be a

19    question of fact for the -- for the Wayne County Circuit Court

20    and the individuals in the suit.

21         THE COURT:  All right.  Anything else?

22         MR. NEUBAUER:  No, Your Honor.

23         THE COURT:  All right.  Thank you.  Mr. Swanson as

24    counsel for the moving party you can reply briefly if you want

25    to in support of the motions.

1           MR. SWANSON:  Thank you, Your Honor.  I'll -- I'll

2    just reply briefly to some of the arguments made by each of

3    the plaintiffs here.

4         With respect to Hodge, as this Court pointed out, there

5    is no future liability.  The claim arose when the accident

6    occurred.  This is very similar to the situation the Court

7    addressed in its published opinion at 548 BR 748.  When you

8    had an accident but there wasn't treatment until a future

9    date.  The claim arises of course when the accident occurs.

10        The Court also correctly noted that even though the claim

11   was listed on Schedule H it was listed as disputed and under

12   the bar date order the plaintiff still has an obligation to

13   file a proof of claim.

14        With respect to the arguments raised by Crowell, the

15   immunity argument is -- is irrelevant to this Court's decision

16   here.  Whether or not the city had immunity has no bearing on

17   whether the plaintiffs had valid pre-petition claims, at least

18   with respect to whether they had to file a proof of claim.

19        With respect to the latter from Mr. Noseda, Mr. Dedvukaj

20   said a number of things, none of which I believe are supported

21   by any evidence in the record.  First of which he said the

22   city continued to treat these claims and continued to pay

23   them.  There is absolutely no evidence that that occurred.

24        In fact the claim referenced in the letter from Mr.

25   Noseda to Mr. Dedvukaj was handled exactly how the city would

1  maintain these claims were supposed to be handled.  The

2  plaintiff filed a proof of claim, the city filed a stay

3  modification notice in the State Court lawsuit, the city and

4  the plaintiff entered into a settlement agreement after the

5  plan became effective and the claimant was paid benefits

6  pursuant to that settlement agreement but not before.

7      With respect to the purposes again I believe this is

8  complete speculation.  The plaintiffs talked about what could

9  be the purposes of this provision, but has offered no evidence

10 to support these.  And before the Court can get to the purpose

11 or anything you need to find that the plan provision is

12 ambiguous which is not for the reasons I outlined earlier.

13     With respect to Section 1123(a)(4), the way the

14 plaintiffs are reading that is not in actuality the way that

15 it operates.  That provides that all claims within a class

16 shall be treated, you know, the same.  But to qualify under

17 that provision first you have to be a claim within the class.

18 And to be a claim within the class here you had to file a

19 proof of claim.

20     With respect to the post-petition argument, I was --

21         THE COURT:  I guess that's really another way of

22 saying that -- just take a general unsecured claim class in a

23 -- in any Chapter 11 or Chapter 9 plan.  There's -- there's no

24 violation of 1123(a)(4) if the plan provides for payment of --

25 of some amount to claims of that type for whom timely proofs

1  of claim were filed but denies any payment for those who were

2  required to file proofs of claim of that type and didn't.

3          MR. SWANSON:  Exactly.  It would be like a secured

4  claim where there was no --

5          THE COURT:  Is what you're saying, yeah.

6          MR. SWANSON:  -- no securities for the claim.

7  You're not entitled to the treatment that --

8          THE COURT:  I guess if 1123(a)(4) meant something

9  other than that it -- you couldn't really have a bar date.

10         MR. SWANSON:  No.

11         THE COURT:  Barring -- setting a deadline for claims

12  to be filed.

13         MR. SWANSON:  Exactly.

14         THE COURT:  Right?

15         MR. SWANSON:  Yes.

16         THE COURT:  Wouldn't -- wouldn't need anything.

17         MR. SWANSON:  I agree.

18         THE COURT:  All right.  Go on.

19         MR. SWANSON:  With respect to the Crowell

20  post-petition argument, I frankly didn't -- didn't follow that

21  entire recitation with respect to the filings.  But we know

22  that Mr. Dedvukaj has filed several motions for relief from

23  this Court's orders.

24      And the city opposed the last one because it -- it didn't

25  feel like he was entitled to file another brief.  The Court

1   actually granted that motion, allowed him to file his brief.

2   He devoted two sentences to this post-petition argument and

3   the city does not feel that the plaintiffs here should be

4   allowed to further supplement briefing on that issue.  They

5   had sufficient amount of time and the Court even afforded them

6   an opportunity to address it here today and -- and nothing

7   further was -- was put into evidence.  Unless the Court has

8   any further questions, the city respectfully requests that the

9   Court grant its two motions.

10          THE COURT:  All right.  Thank you.  Thank you all.

11      I'm going to rule on these motions now and explain my

12  ruling here.  Hopefully briefly but we'll see.

13          The two motions that are before me now filed by the city,

14  both involve relief that the city seeks against parties who

15  have filed and have pending and unless barred or enjoined by

16  this Court apparently will continue to try to prosecute

17  lawsuits filed that they filed in the Wayne County Circuit

18  Court against the City of Detroit seeking relief including

19  monetary relief for -- arising from accidents relating to

20  motor vehicles owned or operated by the city or city employees

21  in the course of their performance of their duties allegedly

22  that occurred before the filing of the City of Detroit's

23  bankruptcy case.

24          The bankruptcy case petition was filed July 18, 2013.

25  The -- in the case of the motion directed against Najib Hodge

1  which is docket 11583, I'll call that the Hodge motion just

2  for short.  The -- it's undisputed that the lawsuit, the

3  accident occurred in 2012 involved an injury suffered by -- or

4  injuries allegedly suffered by Najib Hodge while riding on a

5  -- a City of Detroit bus that occurred in 2012, well before

6  the bankruptcy case was filed.

7      And Najib Hodge has not argued and does -- that the --

8  her claim, or his or her claim or claims against the city that

9  arise from that 2012 accident are anything but pre-petition

10  claims.  That is claims that arose before the filing of the

11  City of Detroit's bankruptcy petition on July 18, 2013.

12      The other motion, docket 11357 which I'll refer to as the

13  Crowell motion just for shorthand, concerns a lawsuit filed --

14  or lawsuit or lawsuits filed in the Wayne County Circuit Court

15  by Danny Crowell, Leota Murphy, and Jasmine Crowell, all three

16  of whom were in a vehicle that was struck by a truck being

17  operated by a City of Detroit employee that occurred in June

18  2013 roughly a month and a half before the city filed its

19  bankruptcy petition in this case.

20      Now with respect to the claims filed in the Wayne County

21  Circuit Court action or actions by Crowell, Murphy, and

22  Crowell, there was an argument made in the Crowell

23  respondent's written response originally to the city's motion

24  before me today and also touched on or argued a bit in the

25  November 16, 2016 first hearing that we had on this -- these

1  motions.  An argument that the claims of those individuals,

2  Crowell, Crowell, and Murphy should be viewed as post-petition

3  claims at least in part, claims that arose after -- arose

4  after the bankruptcy petition date in the Detroit's case

5  rather than before it.

6      The theory there was that the claims or at least to the

7  extent the claims were so-called third party claims under

8  Michigan's no fault statute, claims based upon Michigan

9  Compiled Laws Annotated Section 500.3135-1 and also 5 of that

10  statute, those claims arose after the petition date.

11      The argument as I understand it was this.  The -- because

12  Section 500.3135-1 concerns a claim, a tort liability claim

13  for non-economic loss for injured persons who among other

14  things have suffered, "serious impairment of body function", a

15  phrase which is defined specifically in Michigan Compiled Laws

16  Section 500.3135-5 currently to mean, "an objectively

17  manifested impairment of an important body function that

18  affects the person's general ability to lead his or her normal

19  life."

20      That that claim did not arise until long after the July

21  2013 bankruptcy petition date even though the accident in

22  question occurred a month and a half before that date.

23  Because the claimants, Crowell, Crowell, and Murphy did not

24  have serious impairment of body function within the meaning of

25  Section 500.3135 and the definition of that phrase under

1 Section 500.3135-1 and 5 until approximately May 2016, long

2 after the city's bankruptcy petition was filed.

3     And therefore the claim did not arise for purposes of the

4 Bankruptcy Code and -- and this issue of whether it was a

5 pre-petition or a post-petition claim until long after the

6 petition date.

7     During the November 16, 2016 hearing, the Court had

8 discussion with counsel for Crowell, Crowell, and Murphy who's

9 here again today for this second hearing and has argued both

10 times for them.  And the Court asked, well, what evidence is

11 there that the claim, that the serious impairment of body

12 function as defined in the Michigan statute that I've --

13 statutes that I've cited only arose in May 2016 or only arose

14 long pre -- post-petition here instead of arising pre-petition

15 given that the -- the truck accident happened a month and a

16 half pre-petition.

17     Counsel for Crowell, Crowell, and Murphy acknowledged on

18 the record in the November 16 hearing and -- and the

19 transcript by the way of -- of that hearing is on file in this

20 case at docket 11685.  It's a long transcript, but the part of

21 the hearing that day that concerned these two motions is --

22 begins on Page 95 of that transcript.

23     In any case, counsel for Crowell, Crowell, and Murphy

24 acknowledged that at least up to that point there was no

25 evidence in the record, he had presented no evidence to

1  support his claim that the so-called third party claim that

2  I've alluded to here did not arise until May 2016, or did not

3  arise post-petition for that matter.

4      I asked counsel to tell me what evidence -- what the

5  evidence would show if he were given an opportunity to present

6  some evidence on that subject.  And then I ended up giving

7  counsel for Crowell, Crowell, and Murphy, an opportunity, and

8  in fact quite a long period of time to file a supplement to

9  his response to the city's motion to present any such

10  evidence.

11      And I also made clear in the hearing and -- and also in

12  the ensuing order that I entered November 18 in a footnote,

13  that the Court was -- was going to apply the so-called fair

14  contemplation test that I described in the -- a prior written

15  opinion of mine in this case to determine whether the claim

16  was -- and to what extent the claim was pre-petition versus

17  post-petition.

18      And so I -- as I said in the hearing and also as I said

19  in the order that I entered on November 18, 2016 at docket

20  11679, Paragraph 2 and the Footnote 1 of that order, Crowell,

21  Crowell, and Murphy were given until January 25, 2017 to file

22  a supplemental brief and any exhibits containing any

23  evidentiary material, including affidavits or documentary

24  evidence in support of their argument that the claims against

25  the city arose after the city filed its bankruptcy petition

1   rather than before.

2       Now that was the deadline counsel for Crowell, Crowell,

3   and Murphy asked the Court for.  It was a date that was more

4   than two months after the November 16 hearing and after the

5   November 18 order.

6       And the Crowell, Crowell, and Murphy never filed and the

7   supplement that they did file never included in that

8   supplement any exhibits containing any evidentiary material,

9   no affidavits, no documentary evidence, including no such

10  evidence of the type that counsel for Crowell, Crowell, and

11  Murphy said on the record during the November 16 hearing that

12  he could and would present if given an opportunity to do so.

13      And while it was -- there was a supplemental brief filed

14  by Crowell, Crowell, and Murphy, for the record it's on file

15  at docket 11803, that brief really ads no facts whatsoever to

16  support this claim of -- of these individuals having a

17  post-petition claim.  It merely repeats in one or two

18  sentences in the brief the general conclusory argument that

19  had already been made in writing and during the November 16

20  hearing.

21      So it really ads nothing whatsoever to support Crowell,

22  Crowell, and Murphy's argument that they have in any respect a

23  post-petition claim as opposed to a pre-petition claim with

24  respect to these -- these so-called third party tort claims

25  that were -- that are at issue.

1    Now it is true that counsel for Crowell, Crowell, and

2  Murphy had some difficulties in getting the supplemental brief

3  and exhibits that were ultimately filed, validly filed given

4  their counsel's delay in getting himself trained so that he

5  could file documents and pleadings electronically in this

6  Bankruptcy Court.

7    Initially the -- back in November there was paper

8  responses filed or sought to be filed.  The Court ended up

9  striking some of the filings for reasons stated by the Court

10  in its order striking them.

11    And -- and the supplement that was initially sought to be

12  filed back in November was ultimately filed successfully with

13  the Court's permission on March 6, 2017 at docket 11803.  And

14  that was filed electronically.

15    Now that filing included everything, brief and exhibits

16  that counsel for Crowell, Crowell, and Murphy had sought to

17  file earlier, including by the January 25, 2017 deadline set

18  by the Court's November 18 order.  And as I said it included

19  no evidence of any kind, no evidentiary materials of any kind

20  tending to support or having anything to do with the issue of

21  whether or not there is a -- this is in any part a

22  post-petition claim in this case.

23    The Court finds that counsel for these parties and these

24  parties Crowell, Crowell, and Murphy have had ample

25  opportunity to present any evidence they wanted to present in

1  support or evidentiary materials they want to present in

2  support of their argument that they did not have a claim for

3  -- a tort claim under Michigan Compiled Laws Section

4  500.3135-1 against the City of Detroit until after the filing

5  of the bankruptcy petition, even though the -- it's undisputed

6  that the truck accident from which all of their injuries,

7  alleged injuries and damages arise and arose occurred a month

8  and a half before the bankruptcy petition date.

9      And so the same situation that existed on November 16 in

10 the -- in the first hearing exists now in the sense that there

11 is no evidence whatsoever presented by Crowell, Crowell, and

12 Murphy to support their argument that they have any claim

13 against the City of Detroit that arose after the filing of the

14 bankruptcy petition.

15     Under of course the existence of a claim, that is a claim

16 that meets all of the elements under state law to have a valid

17 claim for this type of third party claim, is not determinative

18 in any event, even if all the elements did not exist until

19 after -- some of them did not exist until after the filing of

20 the bankruptcy petition.

21     I have discussed that at length in my prior written

22 opinion, the fair contemplation test and what it means and --

23 and what the Court considers and how it's applied to determine

24 whether a claim in a bankruptcy case, or relating to a

25 bankruptcy case, when it is deemed to arise pre-petition or

1  post-petition for purposes of treatment and its affect --

2  being affected by the bankruptcy case.  And I'm just going to

3  incorporate by reference and reiterate what I said in that

4  written opinion.  For the record it's -- it was an opinion in

5  this case, <u>In Re: City of Detroit, Michigan</u>.

6      It's reported at 548 BR 748 and I did cite it in the

7  November 16 hearing and also in Footnote 1 of the November 18

8  order, docket 11679.  And I reiterate what I ruled in that

9  written opinion about the fair contemplation test and how it's

10  applied.

11      In -- this includes the discussion in particular at Pages

12  761 to 763 of that opinion.  But also other things that I

13  stated about that test in the rest of the opinion and applying

14  it to the particular claims before me in that -- in that

15  opinion.

16      Under the fair contemplation test in my view as I

17  describe it in the prior written opinion, the Court must

18  conclude that Crowell, Crowell, and Murphy have a pre-petition

19  claim or claims only at most against the city.  And they have

20  not presented anything to demonstrate that they have

21  post-petition claims or claims that should be considered

22  arising after the petition date under the fair contemplation

23  test.

24      It's undisputed that the truck accident that led to all

25  of their alleged injuries and damages here and all their claim

1  occurred a month and a half before the filing of the

2  bankruptcy case and to the extent that any of them Crowell,

3  Crowell, and Murphy suffered any serious impairment of body

4  function as that term is used and defined in -- in Michigan

5  Compiled Laws Section 500.3135, the Court must conclude that

6  it occurred before the filing of the bankruptcy petition.

7       However, even if that is not the case, even if such

8  serious impairment either arose or was objectively manifested,

9  or known, any of those things, only after the petition date in

10 my view under the fair contemplation test properly interpreted

11 and applied, it is fair to, under all the circumstances, to

12 determine as I do that the entirety of the claims of these

13 individuals Crowell, Crowell, and Murphy arose -- deemed to

14 arise before the filing of the bankruptcy petition.

15      It's not -- that's based not only on the occurrence of

16 the accident well before the petition date, but that's also of

17 course the date from which the parties pre-petition -- or

18 relationship arises that -- and that form the basis of the

19 underlying claim.  It is certainly fair to rule and I do rule

20 that Crowell, Crowell, and Murphy each fairly contemplated,

21 could have fairly contemplated that they would have a possible

22 claim against the City of Detroit for -- based on serious

23 impairment of body function to the extent they ever have had

24 such a claim they -- they had it before the petition date for

25 purposes of the fair contemplation test.

1    With -- as I said with respect to Najib Hodge, and the

2  Hodge motion there's no dispute the claim arose entirely pre

3  -- pre-petition.  And so what we're dealing with here are

4  claims with respect to both of these motions that are

5  pre-petition claims, claims that arose before the petition

6  date.

7    Moving now to the remaining issue or issues.  There is a

8  dispute between the city on the one hand and these creditors,

9  Crowell, Crowell, and Murphy, and Hodge on the other hand and

10 I'll just refer to the creditors involved in these motions

11 sometimes after this, just for shorthand as the creditors

12 here.

13    With respect to whether or not the so-called bar date

14 order that the city relies upon has and has had the effect of

15 barring and extinguishing effectively any claims -- any of

16 these pre-petition claims that -- that the creditors have sued

17 the city on and have asserted against the city based on the

18 pre-petition accidents, vehicle accidents that I've alluded

19 to.

20    The -- first of all, it is clear and I don't view it as

21 -- as really disputed seriously that but for the possible

22 effect of the confirmed plan of adjustment in this Chapter 9

23 case and the order confirming that plan, both of which were

24 filed and the plan which was confirmed on November 12, 2014

25 but for those things which I'll talk about in a minute, the

1 bar date order that the city has relied upon would have the

2 effect of barring the claims asserted here that are at issue

3 by the creditors and would require the Court to grant the

4 city's motion against these creditors.

5    The city by the way in -- in the motions against these

6 creditors seek similarly, they seek -- the city seeks an order

7 requiring the creditors to dismiss or cause to be dismissed

8 with prejudice their pending State Court lawsuits against the

9 city in Wayne County Circuit Court.  And also the city seeks

10 an order determining that these creditors each are permanently

11 barred, estopped, and enjoined from asserting claims arising

12 from or related to their State Court lawsuits.  And prohibited

13 from sharing in any distribution in this bankruptcy case.

14    That's the gist of what the orders -- proposed orders are

15 that the city seeks in both these motions against these

16 creditors.  In any case my -- my conclusion is, and I think

17 it's clear and it's not seriously disputed, that if the Court

18 were looking only at the bar date order, such relief would be

19 appropriate and the motions would need to be granted.

20    The bar date order that I'm talking about of course is

21 the -- the one that was filed November 21, 2013 in this

22 bankruptcy case at docket number 1782.  I'll refer to that as

23 the bar date order.  That by the way is the definition of the

24 phrase with capital -- initial capitals, Bar Date Order in the

25 confirmed plan.  Specifically it's that bar date order.

1      The bar date order as the city correctly points out in

2  their supplemental brief, docket 11755 and elsewhere,

3  established a deadline of February 21, 2014 for filing claims

4  against the city in the bankruptcy case and required that all

5  -- in general all pre-petition creditors, certain specific

6  exceptions stated in the -- in the bar date order, must file a

7  proof of claim in the city bankruptcy case by the February 21,

8  2014 date.  That's Paragraph 6 of the bar date order among

9  other provisions.

10      And as the city points out Paragraph 22 of the bar date

11  order says, and I'm parsing the -- parsing it out, but the

12  gist of it is that any creditor who is required by the bar

13  date order to file a proof of claim by the February 21, 2014

14  deadline but fails to do so by that deadline, and now I'm

15  going to quote it -- "shall be forever barred, estopped, and

16  enjoined from asserting any claim against the city or property

17  of the city."

18      And there is other language.  But that's the gist of it

19  and that's what it means as it applies to the claims in this

20  -- that are at issue now in -- in these motions.  It also said

21  that such creditors are barred from receiving distributions

22  under any Chapter 9 plan in this bankruptcy case as well if

23  they fail to file a timely proof of claim.

24      It's clear that all the creditors before me in these

25  motions today Hodge, Crowell, Crowell, and Murphy with respect

1  to their claims that are the subject of the city's motions

2  here, were required by the bar date order to file a proof of

3  claim by the February 21, 2014 deadline.  That is none of

4  these creditors' claims were subject to any exceptions that

5  were stated in the bar date order to the -- the requirement to

6  file a proof of claim and to face having the claims barred,

7  estopped, and enjoined, assertion of any claims barred,

8  estopped, or enjoined if the creditor failed to do that,

9  failed to timely file the proof of claim.

10      So the bar date order standing alone and without

11  considering yet the effect of the confirmed plan provisions on

12  -- on the bar date order if any, would bar the claims asserted

13  by each of these creditors that are at issue here and require

14  the Court to grant the city's pending motions.

15      The issue though and the dispute is -- arises from the

16  arguments made by the creditors here that certain provisions

17  in the city's confirmed plan and in the order confirming that

18  plan, change that result.  And -- and have changed what would

19  otherwise be the result under the bar date order with respect

20  to their claims.

21      As I mentioned earlier the city's Chapter 9 plan of

22  adjustment was confirmed by the order confirming plan that was

23  entered by the Court on November 12, 2014 at docket number

24  8272.  There is a rather -- a very lengthy order confirming

25  plan that's filed at that docket number.  Also at that docket

1 number attached to the order confirming plan is a copy of the

2 confirmed plan itself, the eighth amended plan for the

3 adjustment of the debts of the City of Detroit.

4    The order confirming plan modified in some respects that

5 plan, but otherwise confirmed it.  And so we look to both the

6 order confirming plan and the plan with respect to the

7 particular terms that the -- that are in issue on these

8 motions.

9    And those -- those are Article IV sub -- or Section S of

10 the plan which appears in the plan itself at Pages 62 to 63.

11 And Paragraph Q.58 on Page 108 of the order confirming plan

12 which is very similar to the plan provision that I've just

13 cited.

14    Those are lengthy provisions and they're -- they're

15 basically the same in their wording, but I'll start with the

16 reading the key language from the plan provision, Article IV,

17 Section S on Page 62 to 63.

18    It is a lengthy provision so I'm not going to read all of

19 it, but I do incorporate the entirety of it by reference here

20 for purposes of my bench opinion.

21    But in reading the key wording I think here, that

22 provision says, "from an act after the effective date the city

23 will continue to administer either directly or through a third

24 party administrator and pay valid pre-petition claims for

25 liabilities with respect to which the city is required to

1  maintain insurance coverage pursuant to MCL Section 500.3101

2  in connection with the operation of the city's motor vehicles

3  as follows." And then -- unquote.

4      And then there is -- there are three categories of types

5  of claims that fall under that broad category. The first of

6  which is claims for personal protection benefits as provided

7  by MCL Section 500.3107 and 3108 for which insurance coverage

8  is required by MCL Section 500.3101-1.

9      Those according to this provision are to be paid in full,

10  "to the extent valid" with certain exception for interest and

11  attorney fees.

12      The second category is "tort claims permitted by MCL

13  Section 500.3135." And then I'm skipping some wording. It

14  says shall be paid to the "shall be paid to the extent valid,"

15  only up to certain amounts.

16      And the third category is "claims for property protection

17  benefits under MCL Section 500.3121 and MCL Section 500.3123"

18  which -- which the plan language says, "shall be paid, to the

19  extent valid," only to -- up to a certain maximum amount. Any

20  excess of which over the maximum amount there, the provision

21  says, shall be treated as an other unsecured claim or a

22  convenience claim as applicable. Those are particular classes

23  in the -- other classes in the plan.

24      Then the provision -- plan provision says, "nothing in

25  the plan shall discharge, release, or relieve the city from

1 any current or future liability with respect to claims subject

2 to insurance coverage pursuant to MCL Section 500.3101, or

3 claims within the minimum coverage limits in MCL Section

4 500.3009-1."

5    It continues, "the city expressly reserves the right to

6 challenge the validity of any claim subject to this Section

7 IV.S, and nothing herein shall be deemed to expand the city's

8 obligations or claimants' rights with respect to these claims

9 under state law."

10    I'll refer to this provision as the motor vehicle plan

11 provision just for short.  Now the order confirming plan as I

12 mentioned has a Paragraph Q.58 on Page 108.  Again this is

13 docket 8272 that corresponds to the motor vehicle plan

14 provision that I just read from at -- at length.

15    It's not quite as long but it is -- it is worded

16 basically the same.  In part it says, "from and after the

17 effective date the city shall continue to administer (either

18 directly or through a third party administrator) and pay valid

19 pre-petition claims for liabilities with respect to which the

20 city is required to maintain insurance coverage pursuant to

21 MCL Section 500.3101 in connection with the operation of the

22 city's motor vehicles consistent with the terms of Section

23 IV.S of the plan.  Nothing in the plan or this order shall

24 discharge, release, or relieve the city from any current or

25 future liability with respect to claims subject to insurance

1  coverage pursuant to" -- and then worded similarly to the plan

2  provision.

3      And this provision in the order confirming plan goes on

4  to say, "provided that the city shall retain the right to

5  challenge the validity of any claim subject to Section IV.S of

6  this plan or this paragraph.  And nothing therein or herein

7  shall be deemed to expand the city's obligations or any

8  claimant's rights with respect to such claims under state

9  law."

10     The wording for all material purposes in my ruling on the

11 issues involved in the motions currently before me of this

12 plan -- that order confirming plan provision that I've just

13 quoted from is -- is the same in all material respects to the

14 motor vehicle plan provision that I quoted from earlier.  And

15 so what I say about one the language in front of those

16 provisions, the motor vehicle plan provision or the order

17 confirming plan provision, will apply to the other.

18     And so just for simplicity, I'll -- I'll -- I'll focus on

19 specifically the language in the motor vehicle plan provision

20 in the plan itself that I quoted from at length earlier.

21     The creditors argue that the motor vehicle plan provision

22 means that claims of the type they're -- they are pursuing

23 against the city in their State Court lawsuits, are claims

24 covered by the motor vehicle plan provision in which the city

25 was obligated by the confirmed plan to continue to administer

1  and pay to the extent the claims are valid under state law

2  even though and even if as the case with these creditors, the

3  creditors did not file any proof of claim in the bankruptcy

4  case for those claims, timely or otherwise.

5      And it's -- it's undisputed that none of these creditors

6  filed a timely proof of claim, that is a claim -- a proof of

7  claim by the bar date of February 21, 2014, or even otherwise

8  to date in the bankruptcy case for these claims at issue.

9      In any event these creditors argue they didn't have to do

10 that because the meaning of the motor vehicle plan provision

11 language that I've read from did not require them to do that

12 and superseded and effectively had the -- had the effect of

13 amending any requirement that they file a timely proof of

14 claim that may have existed before the confirmed plan --

15 before the plan was confirmed as a result of the language in

16 the bar date order.

17     The city disputes that view and argues to the contrary

18 that the plan considering not only the -- the provisions that

19 I have referred to and quoted, but also other -- certain other

20 provisions in the plan made clear that the bar date order was

21 not affected or superseded in any way but continued to be

22 fully effective against all claims of the type covered --

23 including claims of the type covered by the motor vehicle plan

24 provision.

25     Now each side argues that their view, and their meaning,

1 their interpretation of these plan provisions is the correct

2 and unambiguous provision. I think as an alternative argument

3 the creditors, or at least some of them argue that at worst

4 from their perspective that the language that -- the material

5 language here in the plan is ambiguous and should be construed

6 against the drafter meaning in their view the City of Detroit

7 if it's -- if it's ambiguous. And so their view should

8 prevail even if the Court determines that the plan, confirmed

9 plan is ambiguous on the key issue.

10     The rule construing an ambiguity in a contract against

11 the drafter is certainly part of Michigan law on contract

12 interpretation, but the rule has no application here. The

13 affidavits filed by the city with the city's two supplemental

14 briefs that were filed at docket 11755 and 11812 each made

15 clear that this -- the motor vehicle plan provision that

16 appears in the plan and the corresponding order confirming

17 plan language that I quoted from was language that was jointly

18 drafted by the city and the State of Michigan and

19 significantly negotiated.

20     So it is not the case that the city is the sole drafter

21 of the language, rather the State of Michigan which evidently

22 had as its purpose to benefit claimants of the type -- or the

23 type of claims that the creditors here are asserting,

24 negotiated that and jointly drafted it with the city. And so

25 this rule construing ambiguities against the drafter would not

1  apply even if the Court found that the relevant plan language

2  was ambiguous.

3      The city's view and interpretation that it urges the

4  Court to adopt of the motor vehicle plan provision, and the

5  plan as a whole, and the bar date order, all in combination,

6  is as I understand it includes the following arguments.

7      First, the city argues the language in the motor vehicle

8  plan provision and the -- also the order confirming plan on

9  which the creditors rely required in order for the city to

10  have any obligation to administer and pay claims, motor

11  vehicle related claims, those claims had to be valid

12  pre-petition claims.  That's the phrase used in these plan

13  provisions and the term valid is used repeatedly in these plan

14  provisions several times.

15      Taking the motor vehicle plan provision that I quoted

16  from earlier, the opening words say the city will continue to

17  administer and pay valid pre-petition claims for liabilities,

18  et cetera and each of the three categories of claims listed

19  thereafter that I quoted from and described, all required

20  payment only, "to the extent valid".  That is payment of

21  claims to the extent valid.  And used that word valid.

22      The city argues that the use of the word valid there

23  means or -- or includes a claim that is not barred by the bar

24  date order.  That is valid includes the requirement that the

25  pre-petition claim be the subject of a timely filed proof of

1  claim that complies with the bar date order.

2      The creditors of course disagree with that, take a

3  different view of the meaning of that word valid.  As I

4  understand them their argument is valid means only valid in

5  the sense that a claim would be valid under Michigan law

6  outside of bankruptcy without -- without regard to whether or

7  not a proof of claim were filed or timely filed in this

8  bankruptcy case.

9      The creditors also point to the no discharge language in

10 the motor vehicle plan provision that I quoted from at length

11 earlier.  The language that says, "nothing in the plan shall

12 discharge, release, or relieve the city from any current or

13 future liability with respect to claims subject to insurance

14 coverage, et cetera."

15     Creditors say that -- that that no discharge language and

16 its reference to no discharge of any current or future

17 liability of -- of these types of claims also shows that

18 claims of that type did not have to be the subject of a timely

19 filed proof of claim in order to be protected from discharge

20 release -- or release by this language in the plan.

21     The city disagrees and the city argues that the phrase

22 any current or future liability as used in that no discharge

23 provision includes only claims that are the subject of

24 liability in that they are not barred by the bar date order

25 and the failure to timely file a proof of claim.  In other

1 | words the city argues that the bar date order in the case of

2 | the claims of these creditors before us today had the effect

3 | of eliminating any liability of the city on those creditors'

4 | claims, current or future, any liability because of the

5 | language of the bar date order that I quoted from earlier

6 | which said among other things that in essence that a creditor

7 | that failed to -- holder of a pre-petition claim who failed to

8 | file a timely proof of claim, "shall be forever barred,

9 | estopped, and enjoined from asserting any claim against the

10 | city or property of the city."

11 | The bar date order as I mentioned earlier was filed on

12 | November 21, 2013 at docket 1782 in this case.  The bar date

13 | of February 21, 2014 of course had come and gone many months

14 | earlier before the plan was confirmed in this case.  And that

15 | the failure of these creditors to file any claim, a proof of

16 | claim rather, by that February 21, 2014 date automatically

17 | meant under the bar date order that as soon as that deadline

18 | for filing the proof of claim passed, these creditors with

19 | respect to their pre-petition claims no longer had any valid

20 | claims and the city no longer had any liability, including

21 | current and future liability within the meaning of the no

22 | discharge language of the motor vehicle plan provisions that

23 | later became part of the confirmed plan.

24 | The -- in my view the city's arguments that I have

25 | described up to this point are -- are certainly reasonable.

1    They are reasonable interpretations of the plan language.

2    Whether they are more than that or whether they are the only

3    reasonable interpretation of the plan language, I think it is

4    greatly influenced by a couple of other provisions in the plan

5    that was confirmed.

6         Chiefly actually one other provision.  And that is the

7    provision on Page 32 of the confirmed plan, docket number

8    8272, Article II, Section A.2.D on Page 32 of the plan which

9    says, "the plan does not modify any other Bar Date Order, and

10   bar date order is initial capitals there, including bar dates

11   for claims entitled to administrative priority under Section

12   503(b)(9) of the Bankruptcy Code."

13        There is also a reference in Section -- Article II,

14   Section A.2.A on Page 31 of the plan which is labeled general

15   bar date provisions that also talks about the effects or

16   non-effect of the plan on bar dates and bar date orders.

17        I, in my view, these provisions and especially subsection

18   D on Page 32 of the confirmed plan is unambiguous and makes

19   absolutely clear and unambiguous in the confirmed plan that

20   the bar date order at issue today before me, docket 1782, was

21   not modified in any way, or affected, or changed, or made

22   subject of exceptions in any way by the confirmed plan of

23   adjustment.

24        Bar date order by the way, that phrase with initial

25   capitals Bar Date Order as used in that provision on Page 32

1  is defined in the definition section of the plan, Page 5 of

2  the plan, docket 8272 definition number 43 to mean among other

3  things specifically the bar date order at docket 1782 which is

4  the bar date order that I'm -- what I'm talking about today.

5      And so the confirmed plan, the same confirmed plan that

6  contains the motor vehicle plan provision on which creditors

7  rely and the meaning of which they argue about here makes

8  clear and unambiguous that the plan of adjustment, the

9  confirmed plan of adjustment does not modify the bar date

10  order.

11      To the extent there is any ambiguity in the motor vehicle

12  plan provision as the creditors' counsel suggests there might

13  be, that ambiguity is resolved in my view by this provision on

14  Page 32 of the confirmed plan.  That makes clear that the

15  plan, confirmed plan does not modify the bar date order.

16      Further, further support in my view for the city's

17  position and interpretation of the plan is the language found

18  at the very end of the motor vehicle plan provision which I

19  quoted from earlier.  In the motor vehicle plan provision the

20  language says, "the city expressly reserves the right to

21  challenge the validity of any claim subject to this Section

22  IV.S, and nothing herein shall be deemed to expand the city's

23  obligation or claimant's rights with respect to these claims

24  under state law."

25      That's on Page 63 of the confirmed plan.  The -- at the

1 very last sentence of that Section IV.S.  That sentence that I

2 just read from in my view draws a distinction between this

3 concept of the validity of a claim subject to this Section

4 IV.S., this motor vehicle plan provision on the one hand, and

5 the city's -- the city's obligation or claimant's rights with

6 respect to these claims under state law on the other hand by

7 treating them as two different things in this compound

8 sentence that concludes this section of the confirmed plan.

9     And clearly implies in my view and supports a view that

10 this notion of validity and the word valid as used repeatedly

11 earlier in that paragraph of the confirmed plan is broader and

12 means something more than just whatever obligations or rights

13 the city or the claimants had that is whatever obligations the

14 city had or the claimants had with respect to these claims

15 under state law.

16     In other words, it undercuts in my view the creditors'

17 argument that valid as used earlier in this section of the

18 confirmed plan, that the word valid means only valid under

19 state law.  Rather this strongly supports the view that valid

20 is something more than that and -- and the obvious thing that

21 is more than that is the claim in order -- the claims in order

22 to be valid within the meaning of the language earlier in this

23 paragraph have to be the subject of timely filed proofs of

24 claim which of course is not a requirement under state law for

25 a claim to have validity, it's  -- it is therefore support for

1 the broader view that the city espouses of this notion of

2 valid.

3     I think that combined with the language in the bar date

4 order itself cited by the city from Page 22 of the bar date

5 order that I quoted earlier, that says that a party that fails

6 to properly file a timely proof of claim by the bar date,

7 "shall be forever barred, estopped, and enjoined from

8 asserting any claim against the city or property of the city,"

9 further supports the -- the notion that the motor vehicle plan

10 provisions referenced to and limits -- limitations to applying

11 only the valid claims implies clearly a requirement that such

12 claim and such pre-petition claims be the subject of timely

13 filed proofs of claim in the bankruptcy case.

14     And of course overlaid all of this is -- over all of this

15 is the plan provision that clearly says that the plan -- the

16 bar date order is not modified by the confirmed plan.  Putting

17 this all together in my view is -- does not lead to

18 inconsistencies in -- in the interpretation the city has

19 argued and which I -- I -- as I've said I agree with.  Rather

20 I find and conclude that the -- these relevant provisions of

21 the plan, the order confirming plan, and the bar date order

22 are fairly consistent with each other under this

23 interpretation and in my view the plan, the confirmed plan,

24 the order confirming plan, and the bar date order all -- are

25 all unambiguous in meaning what I have ruled they mean.

1   The city in my view in short is correct and therefore the

2   bar date order does retain full vitality and does apply fully

3   to the claims of these creditors and therefore means that the

4   motor vehicle plan provision of the confirmed plan does not

5   entitle these creditors to any relief or give them any right

6   to pursue any claims against the city such as the claims they

7   are pursuing or have been pursuing in their State Court

8   lawsuits.  Rather all such claims are barred under the

9   unambiguous language of the bar date order and the confirmed

10  plan of adjustment in this case.

11   And so based on all of that, the Court must and will

12  grant the city's motions, both of them with respect to the

13  Hodge motion and the Crowell, Crowell, and Murphy motion.  Mr.

14  Swanson, I'll ask you to submit the proposed order that the

15  city attached to each of these motions.

16   I'll make some non-substantive changes to the first

17  paragraph to recite the hearings that we had, and the

18  proceedings that we had, and the bench opinion I've given

19  today and so forth.  But I don't anticipate making any

20  substantive changes to the proposed orders.

21   So the motions will be granted and I'll ask you to submit

22  those orders as soon as possible.  I'll waive any further

23  presentment of them.  Thank you all.

24       MR. DEDVUKAJ:  Thank you, Your Honor.

25       MR. SWANSON:  Thank you, Your Honor.

1          THE COURT:  That brings us to the other matter that

2  was scheduled for hearing today in this case, one moment.

3  That's the motion filed by Jerome Collins entitled corrected

4  motion for entry of order granting Collins' verified motion

5  for leave to file a delayed proof of claim.

6      For the record this motion is at docket number 11743 on

7  the Court's docket.  And give me just a moment, please.

8      All right.  Thank you.  So with respect to this motion

9  we've already had counsel for the city enter an appearance.

10 Mr. Swanson, let's have -- enter an appearance then by counsel

11 for Mr. Collins, please.

12         MR. WHITFIELD:  Your Honor, for the record Benjamin

13 Whitfield on behalf of Mr. Collins.

14         THE COURT:  All right.  Good afternoon, Mr.

15 Whitfield and everyone else.  Mr. Whitfield and Mr. Swanson, I

16 did review this -- of course this motion.

17         MR. WHITFIELD:  Uh-huh.

18         THE COURT:  The city's objection to it, the reply

19 brief filed by Mr. Collins on February 3, docket 11774 in

20 support of the motion.  And I -- I have reviewed -- I went

21 back of course and refreshed my memory and reviewed what

22 transpired with respect to the earlier motion involving the

23 city and Mr. Collins that this Court heard on September 28,

24 2016 and ruled on.  I think there's actually a transcript of

25 that September 28 hearing on file at docket 11777.  I reviewed

1  that.

2      I reviewed the exhibits relating to that prior motion as

3  well as the orders that I entered granting that motion by the

4  city that was entered September 29 at docket 11597.  And so I

5  think I -- I refreshed my memory I think pretty well on -- on

6  what's gone before today in any disputes in this bankruptcy

7  case involving the city and Mr. Collins.  So, turning to the

8  present motion then, Mr. Whitfield, let me hear from you first

9  about it.

10      MR. WHITFIELD:  Your Honor, we're asking that the

11  Court allow Mr. Collins to file a delayed proof of claim or

12  amend the previous claim that was filed by the DPOA.  It

13  you'll recall, the Court will recall on the 28th with respect

14  to the DPOA proof of claim it dealt with the pre-petition

15  events leading up to the filing of the bankruptcy by the City

16  of Detroit.

17      And -- and with respect to the post-petition issues, we

18  had some concerns about -- but the Court said that was -- that

19  issue was not before the Court.  And -- and after that hearing

20  we sought to amend and ask the Court to give us authority to

21  file a amended proof of claim.

22      That's based on the events that occurred after the -- the

23  bankruptcy filed by the city.  If the Court will recall, there

24  was continued disciplinary hearings and decisions as related

25  to Mr. Collins' termination from the Detroit Police.

1      In addition to that there was a petition that was filed

2  by Collins for back pay and to lift the suspension.  You have

3  a letter from Linda Ashford in the file, the umpire indicating

4  that she was staying any movement in that case pending --

5  because of the filing of the petition by the city.  That issue

6  has yet to be adjudicated.

7          THE COURT:  I don't know what letter you're

8  referring to.  I know we have a decision, a final decision by

9  the arbitrator that found in favor of the city that that

10  February 7, 2014 arbitration decision, that's not --

11  apparently that's not what you're referring to?

12          MR. WHITFIELD:  No, I'm referring to another letter.

13          THE COURT:  Well, what are you referring to?

14          MR. WHITFIELD:  That dealt with the Linda Ashford

15  that was filed by the --

16          THE COURT:  Where is this in record?  I don't recall

17  seeing that.

18          MR. WHITFIELD:  I thought we had put that in the

19  record.  I thought I had put that -- made that a part of the

20  record.

21          THE COURT:  Are you saying that there is an

22  arbitrator that's still out there with a pending arbitration

23  proceeding waiting to make a ruling?

24          MR. WHITFIELD:  I'm saying -- yes, I'm saying

25  there's an umpire with respect to the grievance that Collins

1 filed with respect to his suspension and back pay.  And

2 there's a letter -- and can I supply you a copy of that

3 letter, Your Honor?

4          THE COURT:  Sure.

5          MR. WHITFIELD:  It's -- the letter that I'm

6 referring to is to the Detroit Police Officers Association and

7 it indicates that the grievance was rescheduled and heard by

8 umpire Linda Ashford, however, a decision was never rendered

9 due to all the arbitrations were suspended and the bankruptcy

10 occurred.  Does the Court want to --

11          THE COURT:  Is this letter in the record?

12          MR. WHITFIELD:  It should have been.  I thought I

13 had tendered it in the record.

14          THE COURT: All right.  You know, I might have missed

15 it, but I don't remember seeing that.  What's the date of that

16 letter?

17          MR. WHITFIELD:  The date of this letter is September

18 29th, 2016.  Either I tendered it in the previous pleading --

19 and I know I did tender it.  And it's from a --

20          THE COURT:  Well, would you show that to Mr. Swanson

21 first of all, please?

22          MR. SWANSON:  Your Honor, it is in the record.

23          THE COURT:  Okay.  Where is it?

24          MR. SWANSON:  Docket number 11743-1.

25          THE COURT:  Okay.  Hold on.

1         MR. WHITFIELD:  Thank you.

2         THE COURT:  That's an exhibit to your motion that's

3    before me today.  Let me grab it here.  I did not print that.

4    Let me look at it on screen a minute.

5        Now this -- perhaps you're referring to Exhibit 1 that's

6    attached to your motion.  It's a letter -- I'm looking at it.

7    It's September 29, 2016 addressed to Mr. Collins from Linda

8    Broden, Broden, Sergeant at Arms of the DPOA.

9         MR. WHITFIELD:  Correct.

10        THE COURT:  Is that the one?

11        MR. WHITFIELD:  That's the one.

12        THE COURT:  Let me take a quick look at it.  Well,

13   all right, I've read that.  And isn't that a reference --

14   isn't that referring to the -- you're talking about a decision

15   was never rendered due to all arbitrations were suspended when

16   the bankruptcy occurred.

17       It then says on February 7, 2014, the grievant was

18   dismissed on the disciplinary arbitration grievance issued by

19   umpire Linda Ashford.

20        MR. WHITFIELD:  What I'm --

21        THE COURT:  In other words isn't that -- isn't that

22   -- you're referring to the arbitration being suspended.  It

23   refers to what occurred before arbitrator Ashford issued the

24   February 7, 2014 arbitration decision, isn't there?

25        MR. WHITFIELD:  Right, right

1             THE COURT:  In other words I thought you were

2    suggesting that there is some arbitration yet to be decided

3    out there that's pending but this doesn't seem to say that.

4    In other words I had thought, and perhaps this is not

5    inconsistent with that, but the February 7, 2014 arbitration

6    opinion and award of -- of arbitrator Ashford did conclude the

7    grievance process and the arbitration and ruled against Mr.

8    Collins.

9             MR. WHITFIELD:  That was on the issue of conduct

10   unbecoming to a police officer.  What I'm referring to also is

11   the grievance that -- that was filed on behalf of Mr. Collins

12   pre-bankruptcy with respect to back pay and a lift of -- lift

13   of suspension against Collins.

14        And it's my understanding that that issue has never been

15   adjudicated.  But let me -- let me point this out, Your Honor.

16   Our -- our --

17             THE COURT:  Well, I'm a little confused.  If there

18   is a -- a pending grievance that's been arbitrated and there

19   is an arbitrator that's -- needs to make a decision on a

20   grievance and an arbitration, I'm not aware of that -- I

21   wasn't aware of that.

22        And so if what you're leading to is that ought to go

23   forward, I'm not sure there's any problem with that going

24   forward.  If there's anything to go -- left to go forward on.

25   Do you see what I mean?

1          MR. WHITFIELD:  Right.  Well, that --

2          THE COURT:  Is that what you're -- is that what

3 you're leading to?

4          MR. WHITFIELD:  Yeah.  Those left to go forward with

5 respect to Collins' right to reinstatement after he was --

6 after the criminal case that he was acquitted.  He sought

7 through the grievance process to obtain his back pay and then

8 -- and -- and to lift the suspension.

9      It's my understanding that as to that aspect of -- of

10 arbitration, that was never resolved.  Counsel in his last

11 brief indicated that issue was moot because of the

12 disciplinary hearings.

13      And I raise issue with that because after the filing of

14 the proof of claim that dealt with the pre-issues there were

15 -- there was activity after the filing of the bankruptcy by

16 the city.  There was arbitration, there was decisions rendered

17 in contravention of the Bankruptcy Act.

18      The city never sought leave of this Court to continue the

19 disciplinary hearings against Mr. Collins.  The city never

20 sought intervention --

21          THE COURT:  Well, excuse me, but the arbitrator's

22 opinion and award February 7, 2014 which is in the record,

23 that's the one by arbitrator Ashford, a 21 page document.

24 Just for the record by the way, this is in the record at -- as

25 Exhibit 6A to the city's earlier motion that I decided on

 1  September 28.  It's docket 10182, Exhibit 6A.  It may be in

 2  the record elsewhere, but that's where I have pulled it from.

 3          MR. WHITFIELD:  All right.

 4          THE COURT:  And that arbitration decision affirmed

 5  the -- well, one of the things it said was that there was an

 6  arbitration hearing held on December 11, 2013 and described

 7  what was put in the record in that hearing.  And then made a

 8  decision.

 9      And the decision found that -- upheld the -- what it

10  described as the August 6, 2013 trial board decision

11  recommending Mr. Collins' dismissal and then the arbitration

12  said -- the arbitrator said the question presented is whether

13  there's just cause for dismissing the grievance based on

14  findings of guilt on the following charges and specifications.

15  And then it goes through all of them.

16      And the arbitration decision found that there was such

17  just cause and it upheld the dismissal of Mr. Collins.  So is

18  there -- I -- I didn't see any indication in this arbitration

19  decision that there was anything else to be done in terms of

20  grievance, decisions, or arbitrations relating to the city and

21  Mr. Collins.

22          MR. WHITFIELD:  Let me back up.  The trial board

23  decision was appealed to arbitration on November 20 of 2013.

24  All right.

25      That was -- that was an election taken, the city was

1   involved with it but it didn't seek from this Court leave of

2   Court to -- to adjudicate that arbitration appeal.  Following

3   that decision they had a -- a grievance hearing that was

4   adjourned on June -- July -- of July 2013.  That was case

5   number 10 -- 10-005.

6              THE COURT:  Is that a grievance number, that case

7   number?

8              MR. WHITFIELD:  Yes.

9              THE COURT:  See the arbitration award of February 7,

10  2014 that I've just been referring to says that's grievance

11  number 12-0137.  Now yours is 10 dash what, 005?

12             MR. WHITFIELD:  I have 10-005.

13             THE COURT:  That's a grievance number?

14             MR. WHITFIELD:  Yeah.

15             THE COURT:  And you're -- what you're saying, are

16  you saying that that has never been ruled on, that grievance?

17             MR. WHITFIELD:  The -- the only issue of Collins --

18  and I may be mistaken in terms of the case number.  But the

19  issue of back pay and lift of suspension was never ruled on.

20      And after the filing of the bankruptcy in this instance

21  the -- the city continued the continued involvement with the

22  disciplinary hearings which we had a arbitration decision and

23  -- and before their involvement they did not seek intervention

24  by this Court to lift the stay.  And an automatic stay was

25  placed, automatic stay as a matter of law triggered in July of

1  2013.  Everything was -- everything as a matter of law should

2  have stopped.

3          THE COURT:  Well, there was some discussion of this

4  at the last hearing as you -- as you know.  And it's not clear

5  that the automatic stay prevented going forward on this

6  grievance and this arbitration.

7      But let's -- let's put that aside for just a minute, that

8  issue.  I want to know first -- I mean if you -- if there's

9  some grievance that is still pending that needs to be decided

10 under the collective bargaining agreement, then I don't see

11 any reason why that shouldn't be decided.

12     Mr. Swanson can be heard on this, but -- but -- but -- on

13 that issue if he wants to take a different view.  But what

14 we're talking about today with your motion is something I

15 thought that was different than that.  And that is your motion

16 wants the Court to rule that Mr. Collins can file even at this

17 very late date a proof of claim or whether it's called his own

18 proof of claim or an amendment of the DPOA's proof of claim

19 that includes all of these constitutional statutory violations

20 and other claims that are in your -- were in your Federal

21 Court lawsuit that I ordered you to dismiss.

22          MR. WHITFIELD:  Yeah, that's -- that's correct.

23          THE COURT:  Which is -- I mean I think it's a little

24 different issue.  I mean there we have issues about you know,

25 the claims bar date February 21, 2014 deadline to file proofs

1 of claim and issues relating to that.

2      But -- but if we have a grievance that you're saying is

3 still out there pending, then I guess the issue becomes, I

4 mean that's a little different issue it seems.

5           MR. WHITFIELD:  Well, it's really not because it's a

6 part -- it should have been a part of the proof of claim filed

7 by the union.

8           THE COURT:  Should have been or was?

9           MR. WHITFIELD:  It was not -- it was not.  And that

10 was a concern that we were raising and that's one of the

11 reasons we were asking the Court to allow Mr. Collins to file

12 a -- a proof of claim raising not only that issue, but the

13 issue with respect to the federal complaint against the city

14 and the defendants in their official capacity.

15           THE COURT:  I'm just looking at the DPOA's proof of

16 claim.  And by the way this is in the record as Exhibit 6F to

17 the city's prior motion, docket 10182.  That's where I got

18 this.  And on the -- perhaps what you're referring to is

19 there's an exhibit to the proof of claim.

20           MR. WHITFIELD:  Right.

21           THE COURT:  Exhibit 1A, alphabetical list of

22 claimants of grievances.  And on the page where they list Mr.

23 Collins, I see they --

24           MR. WHITFIELD:  Pending arbitration.

25           THE COURT:  They list only discipline file number

1   12-0137.

2           MR. WHITFIELD:  Uh-huh.

3           THE COURT:  That corresponds to the number of the

4   grievance number on the February 7, 2014 arbitration decision

5   of Ms. Ashford, grievance number 12-0137.  They don't

6   reference any other discipline file number such as 10-005 that

7   you were talking about.

8           MR. WHITFIELD:  Right.

9           THE COURT:  Is that why you say that grievance was

10  not part of the DPOA's proof of claim but should have been?

11          MR. WHITFIELD:  That's -- that's correct.  And then

12  the other claims that we were raising arises out of Collins'

13  course of employment.  And we've outlined a federal complaint.

14  And I was asking the Court to allow us to amend the complaint

15  to add --

16          THE COURT:  Well, you've got two things here.

17  You've got Mr. Collins who wants to make and prosecute his own

18  claim.  And you've got a proof of claim that was already filed

19  timely by the DPOA that does not include anything other than a

20  grievance pending arbitration that is done, finished and over

21  with.  Right?

22          MR. WHITFIELD:  It -- it was over with, but it was

23  following the city's filing of the bankruptcy action which

24  should have been stayed again.

25          THE COURT:  Well, but --

1           MR. WHITFIELD:  Because the city didn't --

2           THE COURT:  Anyway, we got the DPOA that filed the

3  proof of claim.

4           MR. WHITFIELD:  All right.

5           THE COURT:  You know, it's not clear that Mr.

6  Collins can be permitted to amend a proof of claim filed by

7  somebody else, DPOA rather than just filing his own claim.

8  And -- and so that's -- that's one set of issues.  Another

9  issue is the timeliness of all of this.

10          MR. WHITFIELD:  Right.

11          THE COURT:  But -- but, you know, if there's some

12  grievance pending that needs to be decided --

13          MR. WHITFIELD:  Uh-huh.

14          THE COURT:  -- then we need to talk about that and

15  how that fits into all of this.  Because I didn't -- I didn't

16  perceive your motion as -- as saying that.

17          MR. WHITFIELD:  I thought that I raised that.  But I

18  also have a -- have an attachment --

19          THE COURT:  Are there any documents in the record

20  regarding this grievance number 10-005 documentation other

21  than what -- well, what you just -- what you just said?  And

22  there's a reference to it in this -- you're saying it's

23  referred to in this Exhibit 1 to your motion, this letter from

24  Ms. Broden.

25          MR. WHITFIELD:  Right.  But I'm not sure, Your

1  Honor.  I have to go back and review the file.  But one thing

2  I would point out too that the DPOA did attach --

3          THE COURT:  See there -- what the letter from Ms.

4  Broden says in -- in the last paragraph is the DPOA closed the

5  earlier grievance, 10-005 based upon the ruling and decision

6  of umpire Ashford in the later grievance 12-137.

7      In other words the DPOA figured the earlier grievance as

8  -- as being resolved by the later grievance decision.  Is that

9  what she's saying there, do you think?

10          MR. WHITFIELD:  Well, that's one interpretation of

11  it.  But we never -- but we never received --

12          THE COURT:  Well, let me ask you this.  What -- what

13  do you want the Court to do about this what you said is a

14  pending arbitration -- or pending grievance and arbitration

15  that needs to be decided?

16          MR. WHITFIELD:  Well --

17          THE COURT:  What needs to happen in your view on

18  that?

19          MR. WHITFIELD:  There needs to be a hearing on that.

20          THE COURT:  There needs to be an arbitration

21  hearing?

22          MR. WHITFIELD:  There needs to be a hearing, an

23  arbitration hearing.  Under the collective bargaining

24  agreement Mr. Collins was entitled to that.  He did apply for

25  that and there was never an adjudication on that issue of him

1  being entitled to back pay and -- and -- and/or the suspension

2  being lifted.  We don't have any -- I haven't seen an opinion

3  on that.

4           THE COURT:  Have you taken that up with the DPOA or

5  -- or not?  I mean is the September 29 letter from Ms. Broden

6  which is addressed to Jerome Collins, is that a response to an

7  effort by you or Mr. Collins to get that moving again?

8           MR. WHITFIELD:  I believe that was an effort by Mr.

9  Collins.

10          THE COURT:  To get the earlier grievance moving?

11          MR. WHITFIELD:  Yes.

12          THE COURT:  So -- all right.  So is that a -- a

13  matter that Mr. Collins needs to take up with his -- with the

14  DPOA?

15          MR. WHITFIELD:  He's entitled to do that under his

16  union contract, but they may not want to represent him at this

17  point, I don't know.

18          THE COURT:  And they don't want to pursue it?

19          MR. WHITFIELD:  Yeah.

20          THE COURT:  So if they don't want to pursue it then

21  what is Mr. Collins' remedy or relief?  What are his options?

22          MR. WHITFIELD:  Well, his options is to file a proof

23  of claim in his own right according to this --

24          THE COURT:  Well, that's not a -- that's not a

25  grievance.  That's a proof of claim in the bankruptcy case.

1          MR. WHITFIELD:  Yeah.

2          THE COURT:  That wouldn't do anything to move the

3    grievance forward, would it?

4          MR. WHITFIELD:  Well, no, it wouldn't do anything to

5    move the grievance forward, but I think that if he was

6    allowed, the better remedy would be allowing him to file a

7    proof of claim on -- on that issue.  And he has a -- and --

8    and by this document that I'm looking at from the DPOA, it

9    says the filing of this proof of claim is without prejudice to

10   the rights of individual DPOA members to assert claims on

11   their own behalf.  That's attached to the proof of claim.

12         THE COURT:  I saw that.  That's true.  You know, I

13   saw that and that -- that's probably based in part on the

14   language in this bar date order that I talked so much about in

15   the prior matter that I heard today.

16         MR. WHITFIELD:  Right.

17         THE COURT:  Which said in Paragraph 11, and this is

18   docket 1782.  That's the order that set the February 21, 2014

19   deadline for filing proofs of claim.

20      It says in Paragraph 11, "each of the public safety

21   unions may file one or more omnibus proofs of claim by the

22   general bar date for its members with respect to A, claims

23   related to grievances or its respective members and/or" and

24   then it went on to some other things.  And then it said

25   "subject to the city's right to object to any such claims."

1    Then it says, "the filing of any such omnibus proof of

2  claim is without prejudice to the right of any public safety

3  union member to file a claim on his or her own behalf."

4          MR. WHITFIELD:  Uh-huh.

5          THE COURT:  I interpreted that and you tell me if

6  you disagree with this reading.  I -- I read that to mean

7  among other things the DPOA could file an omnibus proof of

8  claim on behalf of its members who had pending grievances

9  relating to the grievances and that's what they did.  Relating

10 to at least from Mr. Collins to this grievance number 12-137.

11    And that if -- whether or not they did that, Mr. Collins

12 individually had a right under this order --

13          MR. WHITFIELD:  Uh-huh.

14          THE COURT:  -- to file any claim -- proof of claim

15 on his own behalf of any kind for anything.  But the bar date

16 order required all claims to such claims be filed by February

17 21, 2014.  And Mr. Collins never filed his own proof of claim

18 as I understand.

19          MR. WHITFIELD:  Well again, that's correct.  Because

20 he had union representation, at least he thought he had union

21 representation that would take him through that litigation

22 process.

23          THE COURT:  Are you saying that Mr. Collins thought

24 -- I mean he -- I assume he was aware pretty quickly after it

25 happened of the February 7, 2014 arbitration decision in

1  grievance 12-0137, are you saying that Mr. Collins thought

2  that even after that was decided, he still had a pending

3  grievance that had not been decided and he needed to get that

4  decided.  That -- that one where you said he was seeking a

5  lifting of the suspension and back pay.

6          MR. WHITFIELD:  Right.  What I'm --

7          THE COURT:  Are you saying that's what he thought?

8          MR. WHITFIELD:  Yeah.  Not only that he -- not only

9  -- not only did he think it at that time, it was not until

10 September of 2016 that we learned that a proof of claim had

11 even been filed.

12     The City of Detroit initially indicated to me that no

13 proof of claim had been filed on behalf of Collins.  And then

14 we subsequently discovered after talking with DPOA that a

15 claim had been filed but again that claim is limited.  It was

16 limited in scope because it was action taken after the filing

17 of the bankruptcy action by the City of Detroit without having

18 to come before this Court to ask the Court to lift the stay.

19         THE COURT:  Well, why didn't Mr. Collins file his

20 own proof of claim by February 21, 2014?

21         MR. WHITFIELD:  Didn't know, Your Honor.

22         THE COURT:  Pardon me?

23         MR. WHITFIELD:  He didn't know he could do that.

24         THE COURT:  Why didn't he know he could do that?

25         MR. WHITFIELD:  Well, I would have to ask Mr.

1 Collins.  But he was not -- I'm sure that if he had become

2 aware of that, or if he was aware of it he would have done it.

3          THE COURT:  I don't understand your answer.  Why --

4 why wasn't he aware that he could file his own proof of claim?

5          MR. WHITFIELD:  Okay.  Can I ask Mr. Collins that?

6          THE COURT:  I'm asking you.  You don't know?

7          MR. WHITFIELD:  I'm telling -- I'm telling you he

8 was not aware of the fact that he could independently file a

9 proof of claim.  He was not aware of that.

10          THE COURT:  I think you said a minute ago he wasn't

11 aware that the DPOA had filed a claim for him.

12          MR. WHITFIELD:  He was not.  And we didn't learn --

13          THE COURT:  So as far as he knew nobody had filed a

14 claim, neither he nor anyone else for himself by this claim

15 bar date.

16          MR. WHITFIELD:  Well, right.

17          THE COURT:  Why not?

18          MR. WHITFIELD:  Because the City of Detroit had

19 indicated that no claim had been filed.  And initially I had

20 learned from the DPOA representative that a claim had been

21 filed but it -- and it wasn't until 2016 that we learned that.

22 That's why the City of Detroit rescinded their pleading

23 because they initially said we hadn't done anything in terms

24 of protecting Collins' actions.

25          THE COURT:  Let me if I -- let me just pause you for

1   just a minute if I could, Mr. Whitfield to ask the city's

2   attorney about this grievance 10-005.

3          MR. WHITFIELD:  Uh-huh.

4          THE COURT:  And see what they -- I want to know

5   about that.  Mr. Swanson, what is the city's view about that

6   earlier grievance and whether it's still pending and needs to

7   be decided.  Is it your view that that was basically mooted by

8   the -- the later arbitration decision in the other grievance?

9          MR. SWANSON:  Yes, Your Honor.  That -- that's the

10  city's position.  The city stated that position in its

11  corrected enforcement motion at docket 10182.

12     "Collins discharge rendered his grievance moot pursuant

13  to the collective bargaining agreement."  That's also set

14  forth in the answer and affirmative defenses the city filed in

15  the Federal District Court complaint.

16     And that's consistent with Ms. Broden's September 29th,

17  2016 letter to Mr. Collins wherein she states that the union

18  closed the grievance because the arbitrator issued her opinion

19  and award.

20         THE COURT:  All right.  Thank you for that

21  information.  So Mr. Whitfield, that's at least what the

22  city's view is of the matter.

23     Now you -- why don't you come up and continue with your

24  argument and say anything further you want to say about that.

25  You know, I guess I come back to the fact that the matter

1  before me is not really any sort of request that I do anything

2  to try to compel the city or -- or an arbitrator, or the

3  union, or anybody else to -- to -- to take this earlier

4  grievance 10-005 to a hearing and a decision.

5      That really -- I didn't understand your motion to be

6  asking for that at all.  If that's something you want to ask

7  for, that's -- I think that's going to require a different

8  motion, a new motion.  But the motion before me is whether to

9  permit Mr. Collins to file a proof of claim as I understand it

10  that includes all of the claims that he asserted in -- in the

11  U.S. District Court lawsuit that he filed.

12          MR. WHITFIELD:  That's correct, Your Honor.

13          THE COURT:  Okay.  So what more do you want to say

14  about that?

15          MR. WHITFIELD:  Well, what I want to point out about

16  that is that this is -- this is suspect on behalf of the city

17  to rid themselves of Jerome Collins.  I have in the text, if

18  you -- if you look at Exhibit 1B, there's a list of all -- all

19  of the claimants, disciplinary numbers.  I got about six or

20  seven pages here.

21      All the actions here except for Collins were stayed,

22  that's suspect.  All Collins was asking is to allow him to

23  amend his proof of claim against these individuals and -- and

24  -- and the city.  And include as a part of that, this right

25  that he had under the union contract to obtain back pay and

1    the suspension.

2         Really I have -- I have not seen an opinion or a decision

3    with respect to those claims that he has raised with respect

4    to the back pay and lifting of his suspension after he was

5    acquitted by -- by the Wayne County Circuit Court for charges

6    of larceny.  I know it sounds kind of --

7         THE COURT:  Well, so why -- why should I allow at

8    this late date a proof of claim to be filed by Mr. Collins on

9    this subject?  I have not -- I'd like to make sure I get your

10   full argument on that here.

11        MR. WHITFIELD:  I think because of the circumstances

12   involving the city and -- and Mr. Collins and the way things

13   have evolved.  And if you look back -- and I don't want to

14   raise these issues that I raised in the September 28th

15   argument.

16        But this is -- Collins' termination was suspect because

17   right -- there were certain actions taken in terms of

18   disciplinary actions and then the city -- the city terminated

19   Collins' employment.

20        And Collins has been fighting the city since that

21   occurred.  He filed -- he filed timely a motion -- a claim for

22   reinstatement, he goes to arbitration, decisions are rendered,

23   and the decisions were not in his favor.

24        And he raised certain issues -- there were certain issues

25   that he was confronted with.  And one of the main issues, and

1 I don't want to go into the substance of the -- the charges,

2 but there was a withholding of evidence which would have

3 exonerated him from this termination.

4     And the DPOA again, we didn't learn until 2016 that they

5 were no longer going -- they were closing the file.  And right

6 after that hearing, Judge, that we had before you in

7 September, we -- we attempted to apply due diligence in this

8 matter to get -- to ask the Court to allow him to file a new

9 proof of claim.

10          THE COURT:  All right.  Anything else you'd like to

11 say?

12          MR. WHITFIELD:  Nothing, Your Honor.

13          THE COURT:  All right.  Mr. Swanson on behalf of the

14 city.

15          MR. SWANSON:  Thank you, Your Honor.  I'd like to

16 address the relief that's requested in this motion.  And --

17 and there's two different I guess alternative forms of relief

18 sought.

19     The first is amending the DPOA claim.  And as the city

20 explained in its brief, amendment to proofs of claims are

21 governed by Rule 15.  Rule 15 provides that a party may

22 amend --

23          THE COURT:  So your first argument was Mr. Collins

24 cannot amend the proof of claim filed by the DPOA because

25 that's a different entity.

1        MR. SWANSON:  Yes.  And Rule 15 provides that a

2  party may amend its pleading and Mr. Collins is not the DPOA

3  and under Rule 15 there's no statutory authority for a third

4  party to amend another party's pleading and thus Mr. Collins

5  cannot amend the DPOA's proof of claim.  He's cited nothing in

6  support of any argument that he can.

7        If -- even if the Court were to somehow get past having

8  no statutory support to allow a third party to amend another

9  party's pleading, as we set forth in our response, the

10  standard for amending a proof of claim after confirmation is

11  heightened.

12        The standard is essentially the party needs to offer a

13  compelling reason.  And there has been no compelling reason

14  articulated today.  There was no compelling reason articulated

15  in the motion.

16        It's been a year and a half since Mr. Collins was

17  notified, a year and a half or more that he didn't file a

18  proof of claim and that his Federal District Court suit must

19  be dismissed which as the city noted in its papers, Mr.

20  Collins has failed to comply with this Court's order and has

21  not dismissed the city from the Federal District Court suit

22  despite that order being entered three or months ago.

23        The proof of claim as Mr. Collins stated in his pleadings

24  and on the record today that was filed by the DPOA, is I think

25  was his exact quote, "limited in scope."  In other words it

1 didn't identify any of the causes of action that are currently

2 being asserted in the Federal District Court action which is

3 another reason why any amendment would not relate back to the

4 DPOA's proof of claim and another reason why an amendment

5 should not be allowed if this Court were to get past the first

6 threshold issue that a third party cannot amend another

7 party's proof of claim.

8     Now Mr. Collins also sought in his motion the ability to

9 file a new proof of claim.  Mr. Collins, however, did not

10 address the applicable standard for a party to file a -- a

11 proof of claim after the bar date.  And that is the excusable

12 neglect standard in _Pioneer_.

13     Again Mr. Collins did not address any of those factors in

14 his motion, that the city posits that -- that even if he did

15 the motion should still be denied.

16     The most important factor was -- was this in Mr. Collins'

17 reasonable control.  And the facts here are that it was.  As I

18 stated earlier, he was notified a long time ago, a year and a

19 half ago, that he failed to file a proof of claim.  He took

20 absolutely no action on that until the Court ordered him to

21 dismiss his Federal Court lawsuit.

22     He has not moved with any sort of exigency since he was

23 notified that he had failed to file a proof of claim in

24 connection with the Federal District Court lawsuit.  And the

25 city would ask that the -- the motion be denied.  The city is

1 happy to answer any questions the Court may have. But there

2 has been nothing proffered in the motion, there's been nothing

3 set forth on the record today which would support a motion

4 either to amend a proof of claim or to file a new proof of

5 claim what three years now after the bar date order.

6 THE COURT: Is there a reasonable argument here by

7 Mr. Collins that he was, or at least potentially so that he

8 was confused by the fact that nothing official was ever

9 conveyed to him about the conclusion, or termination, or

10 mootness, or whatever it may be of this earlier grievance,

11 10-005 which he may have thought was still pending in which he

12 sought in effect reinstatement and back pay despite the

13 arbitrator's adverse decision in 2014 in the other grievance,

14 the later grievance, at least until -- hold on, at least until

15 August 26, 2016. I say that date because that's the date on

16 which you filed your reply brief in support of your earlier

17 motion, docket 11474.

18 And attached to that reply brief the August 22, 2016

19 letter from James M. Moore addressed to Laticia Jones, senior

20 assistant corporation counsel, City of Detroit making clear

21 that the DPOA's view is that the grievance of Mr. Collins is

22 deemed closed by the union.

23 I suppose that combined with the September 29, 2016

24 letter that's attached as Exhibit 1 to Mr. Collins' current

25 motion that was mentioned earlier from the DPOA's Linda Broden

1 to Mr. Collins by which the union makes clear to him that its

2 view that it had closed this earlier grievance in light of the

3 later grievance decision by the arbitrator.

4      That's a very long winded question.  But do you -- do you

5 follow what I'm asking?

6           MR. SWANSON:  I think.

7           THE COURT:  I know it's been a very long time since

8 the bar date and since the February 7, 2014 arbitration

9 decision adverse to Mr. Collins.  And a long time since you

10 filed your earlier motion on September 11, 2015 in which the

11 city said in your -- in your motion you said that the earlier

12 grievance was rendered moot by the arbitration decision,

13 right?

14           MR. SWANSON:  Yes, Your Honor.  And -- and that

15 assertion was supported by a -- by the answer that the city

16 filed in the Federal District Court lawsuit which provides the

17 discharge rendered the suspension without pay issue moot

18 pursuant to the language in Section 9F of the collective

19 bargaining agreement.

20      And I don't have the collective bargaining agreement here

21 with me today because this issue was not raised in any of Mr.

22 Collins' pleadings and we didn't know that it was going to

23 come up.  But my understanding is that this was a matter of

24 contract, that if Mr. Collins lost before umpire Ashford as a

25 matter of contract pursuant to the collective bargaining

1  agreement, the grievance was rendered moot and he would have

2  no further rights or remedies with respect to that grievance.

3      So Mr. Collins ran the risk of -- of having that

4  consequence occur which it did.  I think that answers the

5  Court's question, but if I'm mistaken, please let me know.

6          THE COURT:  Let me ask you, I don't want to cut you

7  off if you've got other arguments you wanted to make.  But I

8  -- I did have a question.  Is there -- is there -- nevermind,

9  nevermind, go on.

10          MR. SWANSON:  Your Honor, I have nothing further for

11  the Court.

12          THE COURT:  All right.  Thank you.  Mr. Whitfield,

13  as attorney for the moving party here on this motion you may

14  make a reply argument in support of the motion if you want to.

15          MR. WHITFIELD:  Your Honor, I have -- I've looked at

16  the letter again and I have a copy of the transcript from

17  Linda Broden where this action was stayed by Mrs. Broden.  The

18  grievance action was in fact stayed and it confirmed --

19          THE COURT:  In 10-005?

20          MR. WHITFIELD:  Yes.  Yes, sir.  I have a copy of

21  the transcript.  And it confirms the letter by Mrs. Broden

22  that we -- as pertains to the Court, it says that the

23  grievance was rescheduled and a decision -- however, a

24  decision was -- was rendered -- I'm sorry, let me back up.

25          THE COURT:  That's the one that -- where her letter

1  -- the letter from Ms. Broden says on June 12, 2013, that

2  grievance was heard by Linda Ashford?

3          MR. WHITFIELD:  Yes.

4          THE COURT:  Is that what you mean?

5          MR. WHITFIELD:  Yes, sir.  But there was never a

6  decision with respect to that issue.  And that surprises me.

7  There was never a decision rendered by Mrs. Ashford with

8  respect to that.

9      It's my understanding that the action was stayed and has

10 yet to be resolved.  The other issues -- oh, and there was no

11 supporting authority.

12     Counsel says that this issue of the back pay and

13 suspension, the question was moot and that's why it was not

14 adjudicated.  But there -- there was no -- no supporting

15 authority for -- for that proposition by the city.

16     And again this -- this is in a court of equity too.  The

17 city does not have -- has not presented clean hands with

18 respect to Mr. Collins.  You know again there was activity

19 taking place after the city had filed bankruptcy as it related

20 to Mr. Collins.

21     The city never sought to lift the stay and proceeded with

22 the action to terminate Mr. Collins, a decision to terminate.

23 It would seem to me that if they were in violation of a stay

24 their actions that they subsequently have taken after the

25 bankruptcy should be rendered void.

1           THE COURT:  You know you've argued that in a couple

2    of hearings now and I -- I still haven't seen, I don't think

3    in any of your papers any authority and an explanation of how

4    the city violated the automatic stay by anything they did

5    relating to Mr. Collins post-petition.

6           MR. WHITFIELD:  Well -- well, the post-petition,

7    they actually went to arbitration.  They set an arbitration.

8    Why didn't the city come forward at that point?

9           THE COURT:  And what -- what provision of Section

10   362(a) of the Bankruptcy Code did that violate?

11          MR. WHITFIELD:  All -- all I'm saying, Your Honor --

12          THE COURT:  You know, we talked about this at the

13   last hearing in September.

14          MR. WHITFIELD:  Right.

15          THE COURT:  And I don't think we ever got a

16   definitive answer on this.

17          MR. WHITFIELD:  Well, we didn't get a definitive

18   answer from the city either.  Because the city --

19          THE COURT:  Well, I'm asking you right now.

20          MR. WHITFIELD:  I don't have a definitive answer to

21   that.  But I know that this Court said the city came in and

22   said we didn't have to issue -- we didn't have to come to this

23   Court and get a stay.

24          THE COURT:  Did Mr. Collins fail to participate in

25   the proceedings that occurred?

1         MR. WHITFIELD:  Not to my knowledge.

2         THE COURT:  After the filing of the bankruptcy case?

3  Didn't he participate?  Didn't he participate in the December

4  11, 2013 arbitration hearing before arbitrator Ashford?

5         MR. WHITFIELD:  I thought that he failed to appear

6  on -- on some occasions because in fact there was a stay,

7  that's my understanding of it.  All I know at this point is

8  that issue has never been fully adjudicated.  That he's

9  entitled to his due process rights as it relates to that.  I

10 have nothing further, Your Honor.

11        THE COURT:  Mr. Swanson, let me ask you a question.

12 Is -- and I'm looking at this again, the September 29, 2016

13 letter from Ms. Broden to Mr. Collins that we talked about,

14 Exhibit 1 to the motion here.

15    Do you agree is it true as far as you know that there was

16 a -- a grievance hearing by the arbitrator held on June 12,

17 2013 on arbitration -- on grievance number 10-005?

18        MR. SWANSON:  Your Honor, can I consult with my

19 clients?

20        THE COURT:  Yeah.

21        MR. SWANSON:  Your Honor, there was a grievance

22 arbitration held on June 12th, 2013.  The city stated as much

23 in docket 10182 at Page 3.

24        THE COURT:  Okay.  I'm -- I'm looking -- that's

25 Paragraph 4 of your motion, docket 10182 you say that.  You

1 also then go on to say Collins alleges that on account of the

2 City of Detroit's bankruptcy filing the June 12, 2013 hearing

3 was adjourned without a decision which remains presently

4 unresolved.

5     But then you say in Paragraph 5 of that motion, that Mr.

6 Collins' later discharge rendered the grievance moot under the

7 collective bargaining agreement. And you cite to your answer

8 filed in the District Court case.

9     Was there ever anything issued by the arbitrator saying

10 that -- that this -- the earlier grievance was moot, or

11 dismissed, or anything?

12         MR. SWANSON: It's -- it's part of the collective

13 bargaining agreement, Your Honor. Once that decision was

14 rendered pursuant to the contract, the collective bargaining

15 agreement between the city and the DPOA, the grievance

16 starting in 10 was rendered moot.

17         THE COURT: Is -- does that mean -- you didn't

18 really answer my question. Did the arbitrator Ms. Ashford

19 ever issue anything -- anything in writing that said, whether

20 it was pursuant to the CBA or something else, that this

21 arbitration, or this grievance is moot, or it's dismissed?

22         MR. SWANSON: Not that the city is aware of.

23         THE COURT: All right. Did you want to say anything

24 else?

25         MR. SWANSON: Other than with respect to the

1  argument that the city violated the automatic stay.  The city

2  sees absolutely no merit and that it explained why that is

3  legally incorrect in the reply it filed at docket 11474.

4      Collins has that argument backwards.  He cites Section

5  362 of the Bankruptcy Code but that section protects the

6  debtor, in this case the city and not him.  The Court has

7  asked Mr. Collins for support for his argument that somehow it

8  would protect him, Collins has not provided any support

9  because the city doesn't believe that there is any.  The city

10  has nothing further on this unless the Court has questions.

11          THE COURT:  I don't think I do.  Thank you.

12          MR. SWANSON:  Thank you.

13          THE COURT:  Mr. Whitfield, I should give you -- I

14  asked Mr. Swanson some questions here.  If there's anything

15  further you would like to say in support of this motion before

16  me today you may do that.

17          MR. WHITFIELD:  No, Your Honor, I don't have

18  anything further.

19          THE COURT:  All right.  All right.  Thank you all.

20  I'm going to -- I'm going to take a bit more time to think

21  about this motion and the arguments made by the parties and

22  review the record here relating to this motion before I make a

23  ruling on the motion.

24      I -- I anticipate what I'm going to do here is issue a,

25  in the next week or two, issue a -- a brief -- a brief written

1   ruling on this motion, brief opinion and order.  I -- I do

2   want to say brief because I think that's what will be needed

3   and the interest of getting it out sooner, the next two to

4   three weeks.  I'll say the next two to three weeks I will

5   issue a written ruling on the motion.

6       Now, that will -- that will give my ruling and it will

7   explain my -- the reasons for my ruling.  Now, if I change my

8   mind and decide to give a -- an oral ruling, a bench opinion

9   in open Court like I did on the motions earlier today, I'll

10  let the parties know and I'll schedule -- we'll notice a

11  hearing for that purpose and I'll let you know well in advance

12  of doing that.

13      But this -- this motion I expect to issue a, as I said, a

14  short written ruling.  So for the time being this motion is

15  taken under advisement.  Thank you.  Mr. Swanson?

16          MR. SWANSON:  Yes.  To the extent it would assist

17  the Court, would the Court like us to file the collective

18  bargaining agreement we referred to in the hearing today?

19          THE COURT:  No.

20          MR. SWANSON:  Thank you.

21          THE COURT:  If you're saying do I want it?  No.  And

22  I think the -- the briefing and -- and time for filing

23  materials relating to this motion is -- is finished.  So it's

24  -- it's submitted for a decision.  Thank you.

25          THE CLERK:  Please rise.  Court is adjourned.

1        (Court Adjourned at 4:22 p.m.)

2

3

4

5

6

7   We certify that the foregoing is a correct transcript from the

8   electronic sound recording of the proceedings in the

9   above-entitled matter.

10

11  /s/Deborah L. Kremlick, CER-4872          Dated: 4-3-17
    Jamie Laskaska

12

13

14

15

16

17

18

19

20

21

22

23

24

25