# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CITY OF DETROIT'S RESPONSE TO MOTION OF THE DETROIT FIRE FIGHTERS ASSOCIATION, IAFF LOCAL 344 ("DFFA") FOR ENTRY OF AN ORDER ENFORCING THE NOVEMBER 30, 2015 GLOBAL SETTLEMENT BETWEEN THE DFFA AND THE CITY OF DETROIT RESOLVING THAT PORTION OF DFFA CLAIM NO. 2812 RELATED TO THE GRIEVANCE FILED ON BEHALF OF OF [SIC] FIRE FIGHTER BRADLEY SMOLA AND REQUIRING SMOLA'S REINSTATMENT AND FOR RELATED RELIEF**

The City of Detroit, Michigan ("City"), by its undersigned counsel, Miller, Canfield, Paddock and Stone, PLC, responds ("Response") to the *Motion of the Detroit Fire Fighters Association, IAFF Local 344 ("DFFA") for Entry of an Order Enforcing the November 30, 2015 Global Settlement Between the DFFA and the City of Detroit Resolving That Portion of DFFA Claim No. 2812 Related to the Grievance Filed on Behalf of [] Fire Fighter Bradley Smola and Requiring Smola's Reinstatement and for Related Relief* (the "Motion," Doc. No. 11811). In support of its Response, the City respectfully represents as follows:

## INTRODUCTION

The Motion should be denied because Teresa Singleton ("Singleton"), one of the two people who negotiated and signed the *Global Settlement Agreement*

*Between Detroit Fire Fighters Association, Local 344, IAFF, AFL-CIO & the City of Detroit* ("Agreement") on behalf of the Detroit Fire Fighters Association, IAFF Local 344 ("DFFA"), has sworn under oath that the DFFA's new interpretation is contrary to the parties' intent when they signed the Agreement. Valerie Colbert ("Colbert"), one of the City representatives who negotiated and signed the Agreement on behalf of the City, agrees with Singleton's interpretation and disagrees with the DFFA's position. The DFFA offers nothing from anyone who actually negotiated and signed the Agreement, but instead tries to impose a new (and incorrect) interpretation nearly a year and a half after execution. The DFFA's position fails and the Motion should be denied. The correct action here is not to enforce the Agreement's incorrect terms but rather to reform the document so that it properly reflects the bargain struck by the parties.

Moreover, many of the Agreement's terms conflict with one another. In particular, two conflicting terms deal with the treatment of Mr. Smola's litigation. Because this renders the Agreement ambiguous on its face, the City requests the opportunity to provide evidence as to the intent of the signatories to the Agreement at the time they signed it.

Finally, the conflicting terms were included to indicate that no settlement had or could be reached because, as both Singleton and Colbert attest, Colbert did not have authority under the Detroit City Charter to settle civil litigation claims

28863933.8\022765-00213

such as Smola's. Pursuant to the Detroit City Charter, all civil litigation settlements must be approved by the Detroit City Council. No approval was sought or obtained here because the Parties did not intend to settle Smola's litigation. Consequently, even if the Court were to adopt the DFFA's incorrect interpretation, it should not grant the Motion because Colbert lacked the authority to settle this litigation.

For these reasons, the City asks the Court to deny the Motion and to instead grant alternative relief, either (i) reforming the Agreement to delete both (a) section "E" purporting to prescribe the treatment of litigation claims and (b) Attachment H (defined below), which prescribes different treatment for those claims; (ii) allowing evidence to be introduced as to the construction of the Agreement; or (iii) declaring the provision of the Agreement (section E) that relates to the treatment of Mr. Smola's litigation unenforceable.

## BACKGROUND

### I. The City's Fire Department Terminates Smola because he was Drinking on the Job

Smola was hired on January 25, 1999 by the City as a firefighter with the Fire Department. Motion, Ex. 6B, Arbitrator's Opinion and Award ("Award"), p. 3. Acting on an anonymous tip, in 2011, a Deputy Fire Commissioner made a surprise visit to a fire station to investigate reports that Smola drinks on the job. *Id.* Testing confirmed that Smola was in fact drinking on the job. *Id.* Smola's

alcohol level was .135 under the first test and .132 under the second test. *Id.* at p. 4. Under the Fire Department's Substance Abuse Policy, a firefighter with a blood alcohol level of .04 or more is subject to being discharged. *Id.* As a result, Smola was terminated according to the Department's Substance Abuse Policy. *Id.*

Following Smola's discharge, the DFFA filed a grievance. Motion ¶ 5. The grievance proceeded to arbitration. *Id.* The arbitrator issued a decision in favor of Smola despite acknowledging that "At the outset, let it be noted that there is no question presented as to Grievant's intoxication. Grievant was intoxicated on the job. He was well over the standards set forth in the substance abuse policy." Award, p. 7.

The City then filed suit to vacate the Award in Wayne County Circuit Court ("State Court"). On May 2, 2013, the State Court entered an order vacating the Award and remanding it back to the arbitrator for a new opinion consistent with the order. Motion, Ex. 6C, *Order Granting in Part Plaintiff and Counter-Defendant's Motion for Summary Disposition Vacating Arbitrator Stanley Dobry's April 26, 2012 Arbitration Award*, p. 1 ("Order Vacating Award"). As set forth in the Order Vacating Award, the collective bargaining agreement established that the City had just cause to discharge employees who test above .04 for alcohol consumption while on the job. *Id.* Consequently, the arbitrator exceeded his authority when he concluded that the City did not have just cause to terminate

Smola. The State Court also found that it was unclear whether the City abused its discretion when it declined to issue a Last Chance Agreement[1] to Smola. *Id.* As a result, the State Court vacated the Award and remanded the case back to the arbitrator consistent with the Order Vacating Award. *Id.* The DFFA appealed the Order Vacating Award. *Id.* ¶ 7. The appeal was stayed by the City's bankruptcy filing. *Id.* ¶ 8.

## II.     The DFFA's Claim and the Agreement

The bar date order entered in the City's bankruptcy case ("Bar Date Order," Doc. No. 1782) gave the DFFA the right to file omnibus claims on behalf of its members. Motion, ¶ 10, Bar Date Order, ¶ 11. The DFFA filed claim numbers 2812, 3485, 3486, 3487, and 3493 (collectively, "DFFA Claims"). *See* Motion, ¶ 12 (referencing only claim 2812).[2]

The Parties began working to resolve the DFFA Claims. Motion, ¶ 15; *Affidavit of Teresa Singleton* ("Singleton Affidavit," attached as Exhibit A), ¶ 5; *see also Affidavit of Valerie Colbert* ("Colbert Affidavit," attached as Exhibit B),

---

[1] Last Chance Agreements are described on page 11 of the Award.

[2] The DFFA's reference to claim 2812 throughout the Motion is incorrect. *See e.g.* Motion ¶¶ 3, 12, 24, 26. Contrary to the DFFA's assertion, the City objected to claim 2812 on May 14, 2014. [Doc. No. 4794]. In the objection, the City asserted the claim 2812 was amended and superseded by claim number 3681. The Court granted the City's objection and expunged claim 2812 pursuant to its Order dated June 24, 2014. [Doc. No. 5567]. Further, the City's current deadline to object to claims is June 7, 2017. [Doc. No. 11654].

28863933.8\022765-00213

¶¶ 4-6. Because the majority of claims involved grievances and similar issues, the City Human Resources Department ("City HR", and together with the DFFA, the "Parties") took the lead on negotiations on behalf of the City. *See* Colbert Affidavit, ¶¶ 3-4. City HR made clear up front that it only had the authority to resolve grievances and related issues, and that for matters in litigation, the City Law Department's ("City Law") approval was required. Singleton Affidavit, ¶¶ 7-8, 10; Colbert Affidavit, ¶¶ 6, 12. The DFFA knew that this was the case because it wrote directly to City Law to negotiate resolution of the civil litigation involved here. May 1, 2015, Letter from DFFA to City, attached as Exhibit C.[3]

The Parties held biweekly meetings to discuss payroll and grievance issues. Colbert Affidavit, ¶ 5. During some of those meetings over the space of approximately one year, the Parties also worked on resolving certain of the proofs of claim filed by the DFFA in the City's bankruptcy case. Colbert Affidavit, ¶ 5. In or around August 2015, City HR presented to DFFA what City HR felt would be its final offer. Colbert Affidavit, ¶ 8. The DFFA did not immediately respond because it was in the process of conducting elections for board positions. Singleton Affidavit, ¶ 9; *see also* Colbert Affidavit, ¶ 9. The election concluded in September 2015, and it was learned that the DFFA would have new leadership effective December 1. *See* Singleton Affidavit, ¶ 9; Colbert Affidavit, ¶ 9. To

---

[3] The City law department, in turn, is well aware of the City's Charter's requirement for City Council approval of the settlement of civil litigation.

avoid the risk of having negotiations restart from square one with new participants (thus wasting a year of effort), the Parties decided to set forth the areas in which they had reached agreement and work to reach agreement anywhere the remaining differences could be bridged. Singleton Affidavit, ¶ 9; Colbert Affidavit, ¶¶ 9-10.

Thus, in the days prior to execution of the Agreement, the Parties were working hard to lock down their progress. Singleton Affidavit, ¶ 9; Colbert Affidavit, ¶¶ 10-11. The Parties worked through Thanksgiving Day weekend in an attempt to complete the task by the end of November. Colbert Affidavit, ¶¶ 10-11. Unfortunately, the Parties and City Law were unable to reach agreement on how to handle matters that were in litigation. Colbert Affidavit, ¶¶ 12-13; *see also* Singleton Affidavit, ¶ 11.

Over the Thanksgiving Day holiday, the DFFA sent over the Agreement for review and possible signature. Colbert Affidavit, ¶ 10. On review, City HR noted the inclusion of litigation claims in the Agreement and repeated that it lacked authority to resolve those claims. *Id.* The DFFA responded that it had added Attachment H to the Agreement and explicitly incorporated the Attachment into Agreement to make that clear. *Id.*; Singleton Affidavit, ¶ 10; Agreement, first page ("THIS GLOBAL SETTLEMENT AGREEMENT (Agreement), which includes attachments A, B, C, D, E, F, G **and H** . . . .") (emphasis added). The Parties agreed that this should indicate that the Parties had not yet reached agreement on

how to handle the litigation claims.  Singleton Affidavit, ¶ 11; Colbert Affidavit, ¶¶ 11-13.  With that understanding, City HR signed the Agreement.  *See id.*

Thus, the circumstances under which the Agreement was drafted and signed caused it to contain contradictory terms as to how to handle Mr. Smola's litigation claim.  *See* Singleton Affidavit, ¶ 10.  One section states that he is to be reinstated.

### E.  LITIGATION (SEE ATTACHMENT H)

[. . .]

**2.  City of Detroit v. DFFA; WCCC No. 12-006507, Court of Appeals No. 316319—Brad Smola**

> The City agrees, per Arbitrator Dobry's April 26, 2012 award, to reinstate Brad Smola and make whole with all lost pay and benefits

Agreement, section E, p. 12 (emphasis in original).  Attachment H, incorporated both on the first page of the Agreement and in the section above, provides for different treatment.

- **DFFA v City of Detroit, WCCC No. 12-006507, COA No. 316319**

> This City of Detroit agrees to lift the stay on this case and let it proceed through the applicable court.

Agreement, Attachment H, p. 1 (emphasis in original).

Both Parties agree that the contradictory terms were included to demonstrate that no agreement had been reached on certain claims, including Smola's. Singleton Affidavit, ¶ 11; Colbert Affidavit, ¶¶ 12-13.

The DFFA, under new leadership, now seeks to enforce what it calls the "plain language" of the Agreement. *E.g.*, Motion, Part III.A. The problem is that the language is neither "plain" nor reflective of the Parties' intent. And, *arguendo*, even were that not true, the signatories on the City's behalf lacked the authority to resolve the litigation claims discussed in the Agreement, as City HR had informed the DFFA previously. Singleton Affidavit, ¶¶, 7, 10; Colbert Affidavit, ¶ 6. In short, the Agreement does not reflect the Parties' bargain, and thus even were the language "plain," it should not be enforced in the manner the DFFA seeks.

For these reasons, the City asks the Court to deny the Motion and to reform the writing of the Agreement to reflect the bargain struck. Alternatively, the City asks the Court to allow it to provide evidence of the Parties' intent at the time of signing. Finally, the City asks the Court to not construe the Agreement as providing for treatment that the City signatory lacked authority to grant.

## ARGUMENT

### III. The Agreement should be reformed to reflect the Parties' bargain.

#### A. Michigan law allows for reformation of writings when they do not reflect the bargain struck by the parties.

Reformation is a contract remedy available under state law.

> A court will decree reformation of a written instrument if it is conclusively shown that the words of the writing do not correctly express the meaning that the parties agreed upon. . . . Contracts are not reformed for mistake; writings are. The distinction is crucial. With rare exceptions, courts have been tenacious in refusing to

28863933.8\022765-00213

> remake a bargain entered into because of mistake. A court will, however, rewrite a writing that does not express the bargain. Sated another way, courts give effect to the expressed wills of the parties.

7 Joseph M. Perillo, Corbin on Contracts § 28.45, pp. 281-82 (rev. ed. 2002). This remedy is not limited merely to correcting contract terms that are present in a writing. A party may seek reformation if the writing "omit[s] a provision that the parties agreed should be put in" or if it "contain[s] a provision that the parties agreed to leave out or that was not in fact assented to." *Id.*, pp. 285-86.

In Michigan, the remedy of reformation has been established for over 100 years. *Newland v. First Baptist Church Soc. of Bellevue, Eaton Cnty.*, 137 Mich. 335, 337 (1904) ("The right of a court of equity to correct a written conveyance so as to carry out the intention of the grantor, where a mistake has been made by the scrivener, is well established."). The remedy remains available today. *Howell v. State Farm Fire & Cas. Co.*, No 12-14406, 2014 WL 840094 at *3 (E.D. Mich. March 4, 2014) (citing *Newland*).

"A written instrument may be reformed where it fails to express the intentions of the parties thereto as the result of accident, inadvertence, mistake." *Id.* (quoting *Capitol Sav. & Loan Ass'n v. Przybylowicz*, 83 Mich. App. 404, 407 (1978) and collecting other cases); *Tower Auto., Inc. v. Am. Prot. Ins. Co.*, 266 F.Supp.2d 664, 674 (W.D. Mich. 2003). "The burden of proof is upon the party seeking reformation to present clear and convincing evidence that the contract

- 10 -

should be reformed in order to carry out the true agreement of the parties." *Tower Auto.*, 266 F.Supp.2d at 674 (quoting *Dingeman v. Reffitt*, 152 Mich. App. 350, 358 (1986) (internal quotation marks omitted)).

Because a claimant seeking reformation must prove that the written agreement does not conform to the parties' intent, the claimant is allowed to (and indeed, must) introduce extrinsic evidence to that effect. The parol evidence rule does not bar consideration of such evidence. *City of Detroit v. TXU Energy Retail Co., L.P.*, 221 Fed. Appx. 387, 389-90 (6th Cir. 2007); *Ameli-Tehrani v. Whiteman*, No. 09-CV-14126, 2011 WL 1831735 at *7 (E.D. Mich. May 13, 2011) ("[P]arol evidence can be considered in deciding whether reformation is appropriate . . . this is true even where, as here, the contract contains a merger clause.").

### B. The Parties' failed to embody their bargain in the Agreement, and thus the writing should be reformed to more accurately reflect the agreement that the Parties reached.

Here, the signatories to the Agreement, Singleton for the DFFA and Colbert for City HR, are the people who can best attest to what the Agreement was intended to accomplish. They both agree that the Agreement did not resolve litigation claims. Singleton Affidavit, ¶ 11; Colbert Affidavit, ¶¶ 11-13. The Parties thought that adding Attachment H demonstrated that the Agreement did not resolve litigation claims because it contained terms contrary to those set forth in

section E of the Agreement.  Singleton Affidavit, ¶ 11; Colbert Affidavit, ¶¶ 11-12.

Where the parties' intent is known and the writing they executed does not reflect

that intent, reformation is appropriate.  *Newland*, 137 Mich. at 337; *Howell*, 2014

WL 840094 at *3; *Tower Auto.*, 266 F.Supp.2d at 674.

In this case, reformation requires the Court to delete section E (found on

pages 12 and 13 of the Agreement) and Attachment H.  The Parties have averred

that they believed that the addition of Attachment H negated the terms found in

section E.  The clearest way for the Agreement to reflect that intent is simply to

delete the offending sections of the writing.  In that manner, the Agreement will

reflect the intentions the Parties had at the time the Agreement was executed.

**IV.   Even if the Court disagrees that the Agreement should be reformed, it
should review evidence as to the Parties' intent at the time of execution
to aid in interpretation of the Agreement's conflicting terms.**

**A.   Extrinsic evidence may be used to resolve patent ambiguities.**

The purpose of contract construction is to determine the parties' intent and

enforce it.  *Dobbelaere v. Auto-Owners Ins. Co.*, 275 Mich. App. 527, 529 (2007);

*Remes v. City of Holland*, 147 Mich. App. 550, 555 (1986).  All language in a

contract is considered and given effect unless that is patently not possible.

*Northline Excavating, Inc. v. Livingston Cnty.*, 302 Mich. App. 621, 627(2013)

("We must 'give effect to every word, phrase, and clause in a contract and avoid an

interpretation that would render any part of the contract surplusage or nugatory.'")

(quoting *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 468 (2003)). Terms incorporated into an agreement are given weight equal to that in the main body of the agreement. *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Capital, Inc.*, 274 F.3d 1085, 1092 (6th Cir. 2001) ("[W]hether the parties included the terms in a separate incorporated document or within the agreement itself, the court must strive to harmonize apparently conflicting terms or clauses.") (citing *Fresard v. Mich. Millers Mut. Ins. Co.*, 414 Mich. 686, 694 (1982)).

"If the contract language is clear and unambiguous, its meaning is a question of law. Where the contract language is unclear or susceptible to multiple meanings, interpretation becomes a question of fact." *Port Huron Educ. Ass'n, MEA/NEA v. Port Huron Area Sch. Dist.*, 452 Mich. 309, 323 (1996); *Klapp*, 468 Mich. at 469.

If a contract is ambiguous, a court will turn to extrinsic evidence of the parties' intent at the time to resolve the conflict. *Klapp*, 468 U.S. at 469. The parol evidence rule does not dictate otherwise. *Id.* at 470 ("Looking at relevant extrinsic evidence to aid in the interpretation of a contract whose language is ambiguous does not violate the parol evidence rule."). This is because the evidence examined "is admitted not to add to or detract from the writing, but merely to ascertain what the meaning of the parties is." *Id.* (quoting *Edoff v. Hecht*, 270 Mich. 689, 695-96 (1935) (internal quotation marks omitted)).

Thus, when construing a contract, "the court should consider the language employed in the contract, its subject matter and the circumstances surrounding the making of the agreement. It should attempt to effectuate the intent of the parties when the agreement was consummated." *Remes*, 147 Mich. App. at 550; *see also Klapp*, 468 U.S. at 469-70 (noting that "extrinsic evidence, particularly evidence which would indicate the contemporaneous understanding of the parties, would be admissible as an aid in construction of the disputed terms") (quoting *Penzien v. Dielectric Prods. Eng'g Co., Inc.*, 374 Mich. 444, 449 (1965)) (internal quotation marks omitted)).

**B.    Interpretation of the Agreement requires extrinsic evidence because it contains terms that expressly contradict each other, at least in regard to the treatment of Mr. Smola's litigation claim.**

The Agreement here contains a patent ambiguity, in that there are two contradictory terms that describe how Mr. Smola's litigation claim is to be treated. One term calls for him to be reinstated. Agreement, p. 12. Another term calls for the matter to be determined by an appropriate court. Agreement, Attachment H, p. 1. Because these treatments are inconsistent, the Court should examine extrinsic evidence to determine what the Parties intended the Agreement to mean at the time they signed it. *Remes*, 147 Mich. App. at 550; *see also Klapp*, 468 U.S. at 469-70. Here, signatories on each side of the Agreement have provided affidavits as to what they understood the Agreement to mean. They aver that neither Party

28863933.8\022765-00213

intended for litigation claims to be resolved by the Agreement. Singleton Affidavit, ¶¶ 10-11; Colbert Affidavit, ¶¶ 11-13. They explain that the conflict between the Agreement terms was, in fact, meant to highlight their lack of agreement on how litigation claims would be treated. The Court should now enforce the Parties' intent at the time of contracting in the best manner that it can instead of remaking the bargain between the Parties. 7 CORBIN ON CONTRACTS § 28.45.

The DFFA responds that because Attachment H is a letter drafted prior to the execution of the Agreement, it is merely a list of claims to be settled, setting forth their pre-Agreement status. Motion, pp. 10-12. The Parties expressly incorporated Attachment H into the Agreement, however. Agreement, first page ("THIS GLOBAL SETTLEMENT AGREEMENT (Agreement), which includes attachment[] H . . . ."); Agreement, p. 12 (again referring to Attachment H). Because Attachment H is incorporated into the Agreement, its language must be considered and reconciled, if possible, with the language of the remainder of the Agreement. *Northline Excavating, Inc.* 302 Mich. App. at 627; *Wonderland Shopping Ctr. Venture Ltd. P'ship*, 274 F.3d at 1092. In short, just because Attachment H contradicts other Agreement terms does not mean it can be ignored.

Here, even the current DFFA leadership acknowledges that the Parties incorporated Attachment H into the Agreement. Motion, p. 11. The DFFA also

acknowledges that if a contract has more than one reasonable interpretation, then it is ambiguous. *Id.* (citing *Port Huron Educ. Ass'n*). The Agreement has one term that calls for reinstatement of Smola and another that calls for his status to be determined by an appropriate court. Agreement, p. 12; Agreement, Attachment H, p. 1. Neither term, read separately, appears ambiguous, but there is no way to read them harmoniously together. Because reasonable people could differ on which term controls, the Agreement is ambiguous. Fortunately, unlike in many situations where there is a disagreement on what the original negotiating parties intended, here, the original signatories are available. They have expressed their mutual agreement that the intent was not to resolve the litigation claims but to merely note their disagreement and preserve the issue for another day. It is appropriate for the Court to review this evidence, and, if desired, request further evidence so that it can confirm for itself that this is how the Agreement's conflicting terms should be resolved. *Remes*, 147 Mich. App. at 550; *see also Klapp*, 468 U.S. at 469-70

For these reasons, if the Court believes the Agreement should not be reformed but merely interpreted, the Court should look to the affidavits provided here to aid in the Agreement's interpretation. If the Court should desire further evidence to resolve the matter, an evidentiary hearing can be scheduled at which time the City and the DFFA can provide such additional evidence as may be available to aid the Court in its construction of the Agreement.

28863933.8\022765-00213

**V.** **Finally, even if the Agreement should be interpreted in the manner that DFFA alleges, City HR lacked the authority to agree to resolve the Smola litigation claim without City Law and City Council approval.**

The Detroit City Charter[4] provides that "No civil litigation of the city may be settled without the consent of the City Council." Charter, Article § 7.5-203, p. 81; *see also Mastaw v. Naiukow*, 105 Mich. App. 25 (1981); *Presnell v. Board of County Road Com'rs of Wayne County*, 105 Mich. App. 362 (1981). City Council approval was not obtained to settle the Smola litigation. Consequently, the settlement would not be binding even if City HR had intended to settle the Smola litigation (which it did not).

Further, City Law is created by Article 7.5, Chapter 2 of the Detroit City Charter as a department independent of the Legislative and Executive branches. Charter § 7.5-203, entitled "Civil Litigation," provides that the Corporation Counsel (i.e., the head of City Law), "shall defend all actions or proceedings against the City." In contrast, City HR falls under the executive branch. Charter, Article 6, Chapter 4. The Charter does not give City HR any authority over civil litigation. This is why neither Singleton nor Colbert intended to try to settle litigation matters between the Parties. Singleton Affidavit, ¶¶ 7-10; Colbert Affidavit, ¶¶ 11-13.

---

[4] The Detroit City Charter is attached as Exhibit D.

28863933.8\022765-00213

"[A] principal is not bound where his agent lacks authority and the person dealing with the agents knows or should know that the agent lacks authority." *Liberty Heating & Cooling, Inc. v. Builders Square, Inc.*, 788 F. Supp. 1438, 1445-46 (E.D. Mich. 1992). City HR, by itself, lacked the authority to settle litigation claims between the Parties, and the Parties' representatives knew this. Thus, even if parts of the Agreement could be read as attempting to resolve litigation claims between the Parties, the Court should not enforce those parts of the Agreement.

## CONCLUSION

WHEREFORE, the City asks the Court to deny the Motion and to instead grant alternative relief, either (i) reforming the Agreement to delete both (a) section "E" purporting to prescribe the treatment of litigation claims and (b) Attachment H, which purports to prescribe different treatment for those claims; (ii) allowing evidence to be introduced as to the construction of the Agreement; or (iii) declaring the provision of the Agreement that relates to the treatment of Mr. Smola's litigation unenforceable.

Dated: April 5, 2017

MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.

By: /s/ Marc N. Swanson
    Jonathan S. Green (P33140)
    Marc N. Swanson (P71149)
    Ronald A. Spinner (P73198)
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

ATTORNEYS FOR THE CITY OF
DETROIT

# EXHIBIT A

## **Singleton Affidavit**

In re:

City of Detroit, Michigan,

        Debtor

_____/

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

## AFFIDAVIT OF TERESA SINGLETON

STATE OF MICHIGAN)
              )Ss
COUNTY OF WAYNE )

    I, Teresa Singleton, being first duly sworn, offer the following affidavit relative to the global settlement signed on November 30, 2015:

1. I have been employed by the City of Detroit since September 1997.

2. Currently, I am employed as a Fire Engine Operator in the City of Detroit Fire Department.

3. From approximately April 2014-Dec 31, 2015, I also held the position of Vice President for the Detroit Fire Fighters Association ("DFFA").

4. Part of my role as Vice President of DFFA was to negotiate contracts and resolve grievances.

5. During the pendency of the City's bankruptcy, I participated in the negotiations of settling several pre-petition grievances with the Detroit Fire Fighters Association ("DFFA).

6. There were several proposals/counter-proposals to the global settlement.

7. During the discussions, the DFFA made proposals relating to the litigation, as it was our intent to resolve everything pending. However, we were advised by Labor Relations that we would have to contact the law department to resolve those matters.

8. To that end, Jeff Pegg (President of the DFFA) sent a letter to the City Law Department and their response was attached to the final global settlement as attachment "H."

9. Because of the election results in Sept 2015, we wanted to ensure that the global settlement was completed before we left office on November 30, 2015, and the newly elected board took office.

10. In signing the global settlement, both parties were aware that litigation had yet to be resolved by the Law Department, which is why "Exhibit H" was included in the global settlement, which would also include the Smola matter.

11. Because we were unable to resolve the litigation matters through the global settlement, we included Exhibit H to the settlement agreement to show the litigation matters had not been settled.

12. Upon information and belief, the above statements are accurate.

13. I am competent to testify to the facts relevant to this matter.

Affiant: Teresa Singleton
Date: March 28, 2015

Subscribed and sworn before me
On the 28th day of March 2017

Notary Public, County of Wayne
My Commission expires:

SHARON D. GUILLORY
Notary Public, State of Michigan
County of Wayne
My Commission Expires Oct. 08, 2020
Acting in the County of

**EXHIBIT B**

**Colbert Affidavit**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

      Debtor

_____/

Bankruptcy Case No. 13-53846
Judge Thomas J. Tucker
Chapter 9

## AFFIDAVIT OF VALERIE A. COLBERT-OSAMUEDE

I, Valerie A. Colbert-Osamuede, being first duly sworn, offer the following affidavit relative to the global settlement signed on November 30, 2015:

1.     I have been employed by the City of Detroit since August 1991.

2.     Currently, I hold the position of Deputy Director - Labor Relations in the Human Resources Department of the City of Detroit.

3.     Part of my duties includes negotiating and administering contracts, which includes the grievance process.

4.     During the pendency of the City's bankruptcy, Labor Relations extended the process of mediation used for the civilian/non-uniform union grievances to the public safety unions, which included the Detroit Fire Fighters Association ("DFFA"). In this process, Labor Relations mediated the grievances, not litigation matters.

5.     Labor Relations and the DFFA conduct biweekly meetings to discuss payroll and grievance issues. During some of these meetings over the space of

approximately one year, the parties also worked on resolving certain of the proofs of claim filed by the DFFA in the City's bankruptcy case.

6.  During the discussions, the DFFA made proposals relating to the litigation. However, as I do not hold a position in the Law Department, nor am I authorized to settle lawsuits on the Corporation Counsel's behalf, the DFFA was advised that they would have to contact the law department to resolve those matters.

7.  There were several proposals/counter-proposals to the global settlement for over a year. Versions that the City submitted deleted the litigation section from the global settlement.

8.  In August 2015, Labor Relations provided what it believed would be the City's final offer to resolve the parties' differences.

9.  In September 2015, an election was held for DFFA executive board. The board that negotiated the global settlement was to be removed and a new board was elected. After the election, Labor Relations resubmitted to the DFFA what it believed to be the City's final offer to resolve the parties' differences.

10.  Over the Thanksgiving holiday, the DFFA submitted a copy of the settlement to the City which included litigation, despite previous discussions. I contacted Teresa Singleton to advise that litigation should not be a part of this settlement agreement. She acknowledged that litigation was not being settled

12.  In the haste to finalize the global settlement on the final day in office, the DFFA submitted what was believed to be the last counter-proposal for signature, which is what essentially became the global settlement (see attached).

13.  Both parties were aware that litigation had to be resolved by the Law Department, which is why Exhibit H was included in the global settlement.

14.  Those items listed in the litigation section, to include the Smola lawsuit, were not meant to be resolved by the global settlement.

15.  Upon information and belief, the above statements are accurate.

16.  I am competent to testify to the facts relevant to this matter.

Affiant: Valerie A. Colbert-Osamuede
Date: April 3, 2017

Subscribed and sworn before me
On the 3rd day of April 2017

Notary Public, County of Wayne
My Commission expires:

L. C. JONES
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES Mar 3, 2022
ACTING IN COUNTY OF

**EXHIBIT C**

**<u>May 1, 2015, Letter from DFFA to City</u>**



# DETROIT FIRE FIGHTERS ASSOCIATION

I.A.F.F. Local 344 • Organized May 1933

333 West Fort Street, Suite 1420 • Detroit, MI 48226-3149

(313) 962-7546 | (313) 962-7899 fax | www.dffa344.org

May 1, 2015

**Jeffrey M. Pegg**
*President*

**Teresa S. Sanderfer**
*Vice President*

**Martin A. McClung**
*Secretary*

**Robert A. Shinske**
*Treasurer*

**Directors**
E. Carrington
D. McLaurin
R. Foster
R. Jones
T. Gehart

**Emeritus Presidents**
Daniel Delegato
Daniel F. McNamara

Mr. Jason T. McFarlane
City of Detroit Law Department
660 Woodward Avenue, Suite 1800
Detroit, MI 48226

Re:     **Stipulating to Lift Stay on DFFA Pre-Petition Litigation**

Mr. McFarlane:

On February 27, 2015, the DFFA met with you and other City representatives to discuss the DFFA's pending, pre-petition litigation against the City. Based on these discussions, the DFFA understands that the City would stipulate to lift the stay for the following matters:

**Pending, Pre-Petition Litigation: WCCC**

- City of Detroit v. DFFA, WCCC No. 98-810350 CL
- City of Detroit v. DFFA, WCCC No. 12-006507, COA No. 316319
- DFFA v. City of Detroit, WCCC No. 11-014140
- DFFA v. City of Detroit, WCCC No. 12-016317

**Pending, Pre-Petition Litigation: MERC**

- City of Detroit and DFFA, MERC No. C09 L-0265
- City of Detroit and DFFA, MERC No. D09 C-0436

**Pending, Pre-Petition Arbitration: AAA**

- Grievance #17/12; AAA 54-390-00827-12

RECEIVED
MAY 04 2015
CITY OF DETROIT
LAW DEPARTMENT
LABOR & EMPLOYMENT LAW DIVISON

Please confirm that the City will stipulate to lift the stay for these matters.

Sincerely,

DETROIT FIRE FIGHTERS ASSOCIATION

JEFFREY M. PEGG
President – Local 344

CC:     DFFA Executive Board
        Attorney Christopher Legghio

**Affiliated**

**International Association of Fire Fighters**
AFL-CIO

**Michigan State**
AFL-CIO

**Metropolitan Detroit**
AFL-CIO



**EXHIBIT D**

**<u>Detroit City Charter</u>**

28863933.8\022765-00213



## Charter of the City of Detroit

**January 1, 2012**

**(Adopted by Vote of the People on November 8, 2011)**

13-53846-tjt   Doc 11837   Filed 04/05/17   Entered 04/05/17 16:45:46   Page 31 of 150

Preamble
Declaration of Rights

# ARTICLE 1.

## ESTABLISHMENT OF CITY GOVERNMENT.

§ 1-101.    City Government
§ 1-102.    General Powers
§ 1-103.    Liberal Construction
§ 1-104.    Boundaries

# ARTICLE 2.

## GENERAL PROVISIONS.

§ 2-101.    Qualifications for Elective Officers and Appointive Officers
§ 2-102.    Term of Office
§ 2-103.    Oath of Office
§ 2-104.    Severability
§ 2-105.    Definitions and Rules of Construction
§ 2-106.1.  Ethical Standards of Conduct
§ 2-106.2.  Disclosures
§ 2-106.3.  Lobbying Registration and Reporting
§ 2-106.4.  Gifts and Gratuities
§ 2-106.5.  One Year Post-Employment Prohibition
§ 2-106.6.  Contracts Voidable and Rescindable
§ 2-106.7.  Campaign Activities Using City Property or During Working Hours
§ 2-106.8.  Board of Ethics, Application, Appointment, Qualifications and Terms
§ 2-106.9.  Powers and Duties
§ 2-106.10. Cooperation in Investigations; Obstruction
§ 2-106.11. Violations and Penalties
§ 2-106.12. Meetings
§ 2-106.13. Funding
§ 2-106.14. Campaign Finance Reports
§ 2-107.    Dismissal Proceedings
§ 2-108.    Pay Plans
§ 2-109.    Reimbursement
§ 2-110.    General Provisions for Multi-Member Bodies
§ 2-111.    Promulgation of Administrative Rules
§ 2-112.    Public Records
§ 2-113.    Prohibition Against Entering Into Contracts or Giving Position to Those in Default

# ARTICLE 3.

## ELECTIONS.

§ 3-101.    Department of Elections
§ 3-102.    Elections Commission
§ 3-103.    Powers and Duties of Election Commission
§ 3-104.    Director and Deputy Director

§ 3-105.        City Elections and City Council Initiated Ballot Proposals
§ 3-106.        State Law to Apply
§ 3-107.        Elective Officers of the City
§ 3-108.        Geographical Basis for Electing Council Members
§ 3-109.        Nominating Petitions
§ 3-110.        Nominees
§ 3-111.        Residency Requirement for Elective Officers

ARTICLE 3.5.

OFFICE OF THE CITY CLERK.

§ 3.5-101.      Office of City Clerk
§ 3.5-102.      Duties and Powers of City Clerk
§ 3.5-103.      Deputy City Clerk
§ 3.5-104.      Vacancy in Office of City Clerk

ARTICLE 4.

THE LEGISLATIVE BRANCH.

CHAPTER 1. CITY COUNCIL.

§ 4-101.        City Council
§ 4-102.        Meetings
§ 4-103.        Selection of Council President and President Pro-Tempore
§ 4-104.        Duties of the Council President
§ 4-105.        Rules and Journal
§ 4-106.        Standing Committee Structure
§ 4-107.        Quorum
§ 4-108.        Voting
§ 4-109.        Investigations
§ 4-110.        Investigative Powers
§ 4-111.        Confirmation Authority
§ 4-112.        Control of Property
§ 4-113.        Prohibition on Interference in Administration
§ 4-114.        Ordinances and Resolutions in General
§ 4-115.        Ordinance Procedure
§ 4-116.        Emergency Ordinances
§ 4-117.        Procedure for Approval or Veto by Mayor and City Council's
                Override of Veto
§ 4-118.        Publication of Ordinances and Effective Date
§ 4-119.        Ordinances After Enactment and Resolutions After Adoption
§ 4-120.        Council Personnel
§ 4-121.        Special Counsel
§ 4-122.        Approval Of Contracts and Disclosure

CHAPTER 2.  BOARD OF ZONING APPEALS.

§ 4-201.        Establishment of Board of Zoning Appeals
§ 4-202.        Board of Zoning Appeals Ordinance

CHAPTER 3.  CITY PLANNING COMMISSION.

§ 4-301.        City Planning Commission
§ 4-302.        Powers and Duties
§ 4-303.        Staff Assistance

ARTICLE 5.

THE EXECUTIVE BRANCH: THE MAYOR AND GENERAL PROVISIONS.

| | | |
|---|---|---|
| § 5-101. | Mayor |
| § 5-102. | The Executive Branch |
| § 5-103. | Mayoral Appointments |
| § 5-104. | Other Mayoral Powers |
| § 5-105. | Appointment of Deputies |
| § 5-106. | Powers and Duties of Department Directors |
| § 5-107. | Powers of a Departmental Deputy |
| § 5-108. | Deputy Mayor |
| § 5-109. | Succession to Office |
| § 5-110. | Community Meetings |

ARTICLE 6.

THE EXECUTIVE BRANCH: STAFF DEPARTMENTS.

CHAPTER 1.  BUDGET DEPARTMENT.

| | |
|---|---|
| § 6-101. | Budget Department |
| § 6-102. | Powers and Duties |
| § 6-103. | Management Audits |

CHAPTER 2.  PLANNING AND DEVELOPMENT DEPARTMENT.

| | |
|---|---|
| § 6-201. | Planning and Development Department |
| § 6-202. | Advance Planning |
| § 6-203. | Current Planning |
| § 6-204. | Definition |
| § 6-205. | Public Hearings |

CHAPTER 3.  FINANCE DEPARTMENT.

| | |
|---|---|
| § 6-301. | Finance Department |
| § 6-302. | Departmental Divisions |
| § 6-303. | Accounts Division |
| § 6-304. | Assessments Division |
| § 6-305. | Treasury Division |
| § 6-306. | Purchasing Division |
| § 6-307. | Privatization of City Services |
| § 6-308. | Debarment |

CHAPTER 4.  HUMAN RESOURCES DEPARTMENT.

| | |
|---|---|
| § 6-401. | General Purpose |
| § 6-402. | Human Resources Department |
| § 6-403. | Human Resources Director and Deputy |
| § 6-404. | Qualifications |
| § 6-405. | Civil Service Commission |
| § 6-406. | Non-Discrimination |
| § 6-407. | Employee Organization |
| § 6-408. | Labor Relations |
| § 6-409. | Classification of Positions |
| § 6-410. | Examinations |

§ 6-411.       Validation
§ 6-412.       Recruitment and Advancement
§ 6-413.       Employee Grievances
§ 6-414.       Jurisdiction
§ 6-415.       Payrolls
§ 6-416.       Residence
§ 6-417.       Classified Service
§ 6-418.       Transfers and Promotions to Exempt Positions
§ 6-419.       Consolidation of Entities

CHAPTER 5.  BUILDINGS, SAFETY ENGINEERING AND
ENVIRONMENTAL DEPARTMENT.
§ 6-501.       Buildings, Safety Engineering and Environmental Department
§ 6-502.       General Purpose
§ 6-503.       Powers and Duties
§ 6-504.       Conservation
§ 6-505.       Environmental Legislation
§ 6-506.       Applications Filed Under Zoning Law
§ 6-507.       Duty Under Other Regulatory Laws
§ 6-508.       One-Stop Service
§ 6-509.       Green Initiatives and Technologies


ARTICLE 7

THE EXECUTIVE BRANCH: PROGRAMS, SERVICES AND ACTIVITIES.
CHAPTER 1.  GENERAL PROVISIONS.
§ 7-101.       Existing Programs, Services and Activities
§ 7-102.       Assignment of Authorized Function
§ 7-103.       Advisory Commissions
§ 7-104.       Change in Number of Authorized Functions

CHAPTER 2.  RESPONSIBILITIES IN HEALTH AND SANITATION.
§ 7-201.       Health
§ 7-202.       Sanitation

CHAPTER 3.  ARTS.
§ 7-301.       Department

CHAPTER 4.  PUBLIC WORKS.
§ 7-401.       Department
§ 7-402.       Sidewalk Maintenance
§ 7-403.       Recycling

CHAPTER 5.  FIRE.
§ 7-501.       Department
§ 7-502.       Fire Department Divisions
§ 7-503.       Duties
§ 7-504.       Fire Marshal
§ 7-505.       Advisory Commission
§ 7-506.       Promotions

13-53846-tjt    Doc 11837    Filed 04/05/17    Entered 04/05/17 16:45:46    Page 35 of 150

CHAPTER 6.  HISTORICAL.
§ 7-601.          Department

CHAPTER 7.  HUMAN RIGHTS.
§ 7-701.          Department
§ 7-702.          Human Rights Commission
§ 7-703.          Budget
§ 7-704.          Duties
§ 7-705.          Powers
§ 7-706.          Appeals
§ 7-707.          Remedies Cumulative

CHAPTER 8.  POLICE.
§ 7-801.          Police Department
§ 7-802.          Board of Police Commissioners
§ 7-803.          Duties of the Board of Police Commissioners
§ 7-804.          Staff
§ 7-805.          Chief of Police
§ 7-806.          Duties of the Chief of Police
§ 7-807.          Discipline
§ 7-808.          Complaints
§ 7-809.          Resolution of Complaints
§ 7-810.          Division of Police Personnel
§ 7-811.          Deputy Director
§ 7-812.          Recruitment and Entry into Service
§ 7-813.          Powers and Duties
§ 7-814.          Promotions
§ 7-815.          Examinations
§ 7-816.          Employees
§ 7-817.          Police Officers Employed by Governmental and Educational
                  Institutions
§ 7-818.          Police Reserves

CHAPTER 9.  PUBLIC LIGHTING.
§ 7-901.          Department
§ 7-902.          Qualifications
§ 7-903.          Commission
§ 7-904.          Powers and Duties
§ 7-905.          Limitations on Sale of Assets

CHAPTER 10.  RECREATION.
§ 7-1001.         Department
§ 7-1002.         Advisory Commission

CHAPTER 11.  TRANSPORTATION.
§ 7-1101.         Department
§ 7-1102.         Advisory Commission
§ 7-1103.         Intelligence Division
§ 7-1104.         Limitations

CHAPTER 12.  WATER AND SEWERAGE.
§ 7-1201.        Department
§ 7-1202.        Powers
§ 7-1203.        Limitation on Funds
§ 7-1204.        Limitation on Sale of Assets

CHAPTER 14.  ZOOLOGICAL PARK.
§ 7-1301.        Department
§ 7-1302.        Commission

CHAPTER 14.  TELEVISION CHANNELS.
§ 7-1401.        Cable Television Channels
§ 7-1402.        Executive Oversight, Operation and Management
§ 7-1403.        Channel Use
§ 7-1404.        Limitations


ARTICLE 7.5.

INDEPENDENT DEPARTMENTS AND OFFICES.
CHAPTER 1.  AUDITOR GENERAL.
§ 7.5-102.       Deputy Auditor General
§ 7.5-103.       Term of Office
§ 7.5-104.       Employees
§ 7.5-105.       Powers and Duties
§ 7.5-106.       Limitations

CHAPTER 2.  LAW DEPARTMENT.
§ 7.5-201.       Law Department
§ 7.5-202.       Qualifications
§ 7.5-203.       Civil Litigation
§ 7.5-204.       Penal Matters
§ 7.5-205.       Advice and Opinions
§ 7.5-206.       Form of Documents
§ 7.5-207.       Drafting
§ 7.5-208.       Intra-Government Dispute Resolution
§ 7.5-209.       Enforcement of Charter
§ 7.5-210.       Claim Reduction
§ 7.5-211.       Other Duties

CHAPTER 3.  OFFICE OF INSPECTOR GENERAL.
§ 7.5-301.       Establishment
§ 7.5-302.       Appointment, Removal, Term of Office and Vacancy
§ 7.5-303.       Minimum Qualifications
§ 7.5-304.       Limitations; Prohibited Activities
§ 7.5-305.       Jurisdiction
§ 7.5-306.       Powers and Duties
§ 7.5-307.       Subpoena Powers
§ 7.5-308.       Duty to Report Illegal Acts
§ 7.5-309.       Employees

§ 7.5-310.      Cooperation in Investigations; Obstruction
§ 7.5-311.      Consultation Required
§ 7.5-312.      Conflict of Interest; Special Counsel
§ 7.5-313.      Confidentiality
§ 7.5-314.      Immunity
§ 7.5-315.      Retaliation Prohibited; Penalty
§ 7.5-316.      Funding

CHAPTER 4.  OMBUDSPERSON.
§ 7.5-401.      Ombudsperson
§ 7.5-402.      Term of Office
§ 7.5-403.      Vacancy
§ 7.5-404.      Salary
§ 7.5-405.      Staff
§ 7.5-406.      Definition
§ 7.5-407.      Jurisdiction
§ 7.5-408.      Powers of Investigation
§ 7.5-409.      Delegation of Powers
§ 7.5-410.      Correspondence From Person Detained
§ 7.5-411.      Consultation Required
§ 7.5-412.      Reports
§ 7.5-413.      Duty to Report Illegal Acts
§ 7.5-414.      Obstruction
§ 7.5-415.      Immunity
§ 7.5-416.      Limitations
§ 7.5-417.      Remedies Cumulative

ARTICLE 8.

PLANNING AND FINANCIAL PROCEDURES.
CHAPTER 1.  PLANNING PROCEDURE.
§ 8-101.      Comprehensive Plan
§ 8-102.      Periodic Review
§ 8-103.      Council Procedure
§ 8-104.      Purpose of the Plan

CHAPTER 2.  BUDGETS.
§ 8-201.      Fiscal Year
§ 8-202.      Capital Agenda
§ 8-203.      Annual Budget
§ 8-204.      The Budget
§ 8-205.      Form of Appropriation
§ 8-206.      Public Hearing
§ 8-207.      Amendment Before Adoption
§ 8-208.      Budget Adoption
§ 8-209.      Effect of Budget Adoption
§ 8-210.      Amendments After Adoption
§ 8-211.      Transfer of Appropriations
§ 8-212.      Report of Budget Deficit

§ 8-213.          Revenue Estimating Conference
§ 8-214.          Proportional Funding for Oversight Agencies


CHAPTER 3.  ADMINISTRATION OF BUDGETS.
§ 8-301.          Work Programs and Allotments
§ 8-302.          Limit on Obligations and Payments
§ 8-303.          Penalties for Violation
§ 8-304.          Obligations to be Met by Subsequent Appropriation


CHAPTER 4.  PROPERTY TAXATION.
§ 8-401.          Power
§ 8-402.          Assessors' Duties
§ 8-403.          Collection of Property Taxes


CHAPTER 5.  BORROWING.
§ 8-501.          General Power
§ 8-502.          Limitations on Borrowing
§ 8-503.          Specific Kinds of Borrowing
§ 8-504.          Use of Borrowed Funds
§ 8-505.          Execution of Obligation
§ 8-506.          Tax Exempt


CHAPTER 6.  SPECIAL ASSESSMENTS.
§ 8-601.          Power to Assess
§ 8-602.          Special Assessments to Finance Transit Facilities
§ 8-603.          Procedure Ordinance
§ 8-604.          Assessment Lien
§ 8-605.          Contest of Assessment


ARTICLE 9.

MISCELLANEOUS PROVISIONS.
                    CHAPTER 1.  COMMUNITY ADVISORY COUNCILS.
                    § 9-101.          Definition and Purpose
                    § 9-102.          Creation and Composition of Advisory Councils
                    § 9-103.          Powers, Duties and Limitations


                    CHAPTER 2.  COUNCIL OF THE ARTS.
                    § 9-201.          Council of the Arts


                    CHAPTER 3.  REGULATORY POWER AND REVIEW.
                    § 9-301.          Regulatory Power
                    § 9-302.          Appellate Review
                    § 9-303.          Limitations on a Franchise
                    § 9-304.          Standard Provisions of a Public Utility Franchise


                    CHAPTER 4.  SPECIFIC RESPONSIBILITIES.
                    § 9-401.          The Board of Review
                    § 9-402.          Hospitals

§ 9-403.        Revision Question
§ 9-404.        Schools
§ 9-405.        Elimination of Redundancy in Government

CHAPTER 5.  SPECIFIC POWERS.
§ 9-501.        Eminent Domain
§ 9-502.        Enabling Legislation
§ 9-503.        Historic Areas and Landmarks
§ 9-504.        Library
§ 9-505.        Penalties
§ 9-506.        Rents, Tolls, Excises and Taxes
§ 9-507.        Service Fees
§ 9-508.        Utilities
§ 9-509.        Parking Fines
§ 9-510.        Incentives for City-Based Businesses

CHAPTER 6.  RETIREES' REPRESENTATION.
§ 9-601.        Retirees' Representation

CHAPTER 7.  RISK MANAGEMENT.
§ 9-701.        Risk Management Council
§ 9-702.        Duties

CHAPTER 8.  INSURANCE ASSISTANCE.
§ 9-801.        City Sponsored Insurance Assistance


ARTICLE 10.
        COURTS.
           § 10-101.        Courts


ARTICLE 11.
        RETIREMENT PLANS.
           § 11-101.        City's Duties
           § 11-102.        Continuation of Existing Plans
           § 11-103.        Principles Applicable in Administering Plans
           § 11-104.        Information Required Before Benefit Increase
           § 11-105.        Audits


ARTICLE 12.
        INITIATIVE AND REFERENDUM.
           § 12-101.        Initiative and Referendum
           § 12-102.        Petitions
           § 12-103.        Time of Filing
           § 12-104.        Filing and Canvass of Petitions
           § 12-105.        Insufficient Petitions

§ 12-106. Suspension of Ordinance
§ 12-107. Time Limit for Enactment or Repeal of Ordinance
§ 12-108. Submission to Election Commission and Voters
§ 12-109. Amendment, Repeal and Re-Enactment
§ 12-110. Submission by Council
§ 12-111. Similar or Conflicting Measures
§ 12-112. Repeal or Amendment of Ordinance in Effect


ARTICLE 13.

 SCHEDULE.
§ 13-101. Effect on Existing City Legislation
§ 13-102. Continuation of Public and Private Rights
§ 13-103. Rights of Officers and Employees
§ 13-104. Effective Date
§ 13-105. Employees Benefit Plan
§ 13-106. Condemnation
§ 13-107. Fire and Police Pension Committees
§ 13-108. Police Fund
§ 13-109. Initial Appointments
§ 13-110. General Provisions
§ 13-111. Submission of the Charter

# CHARTER OF
# THE CITY OF DETROIT

## PREAMBLE AND DECLARATION OF RIGHTS

### PREAMBLE

We, the people of Detroit, do ordain and establish this Charter for the governance of our City, as it addresses the needs of all citizens and affirms our commitment to the development and welfare of our youth, our most precious treasure; instituting programs, services and activities addressing the needs of our community; fostering an environment and government structure whereby sound public policy objectives and decisions reflect citizen participation and collective desires; pledging that all our officials, elected and appointed, will be held accountable to fulfill the intent of this Charter and hold sacred the public trust; acknowledging our blessings from God, we pray our efforts will be accepted.

### DECLARATION OF RIGHTS

1. Detroit City government is a service institution that recognizes its subordination to the people of Detroit.

   The City shall provide for the public peace, health and safety of persons and property within its jurisdictional limits.

   The people have a right to expect aggressive action by the City's officers in seeking to advance, conserve, maintain and protect the integrity of the human, physical and natural resources of this city from encroachment and/or dismantlement.

   The people have a right to expect city government to provide for its residents, decent housing; job opportunities; reliable, convenient and comfortable transportation; recreational facilities and activities; cultural enrichment, including libraries and art and historical museums; clean air and waterways, safe drinking water and a sanitary, environmentally sound city.

2. The City has an affirmative duty to secure the equal protection of the law for each person and to insure equality of opportunity for all persons. No person shall be denied the enjoyment of civil or political rights or be discriminated against in the exercise thereof because of race, color, creed, national origin, age, disability, sex, sexual orientation, gender

expression or gender identity.

3. A person shall have reasonable access to all files and records of the City in accordance with applicable laws.

4. The people have a right to know the rules and regulations governing dealings between the City and the public and to a means for the review of administrative decisions.

5. The City's police forces are in all cases and at all times in strict subordination to the civil power.

6. The City shall endeavor to require application of the principle of one person-one vote to the policymaking body of any regional or other multi-jurisdictional organization which taxes or provides any service to City residents or takes any action affecting the City's interests.

7. The enumeration of certain rights in this Charter shall not be construed to deny or disparage others retained by the people.

8. The City may enforce this declaration of rights and other rights retained by the people.

# ARTICLE 1.
# ESTABLISHMENT of CITY GOVERNMENT

**Sec. 1-101 City Government.**

The people of Detroit, by adoption of this Home Rule Charter, create and provide for their continuing control of the municipal government of the City of Detroit.

**Sec. 1-102. General Powers.**

The City has the comprehensive home rule power conferred upon it by the Michigan Constitution, subject only to the limitations on the exercise of that power contained in the Constitution or this Charter or imposed by statute. The City also has all other powers which a city may possess under the Constitution and laws of this state.

**Sec. 1-103. Liberal Construction.**

The powers of the City under this Charter shall be construed liberally in favor of the City. The specific mention of particular powers in the Charter shall not be construed as limiting in any way the general power stated in this article.

**Sec. 1-104. Boundaries.**

The boundaries of the City existing when this Charter takes effect continue in force until changed in accordance with law.

# ARTICLE 2.
# GENERAL PROVISIONS

**Sec. 2-101. Qualifications for Elective Officers and Appointive Officers.**

A person seeking elective office must be a citizen of the United States, a resident and a qualified and registered voter of the City of Detroit for one (1) year at the time of filing for office, and retain that status throughout their tenure in any such elective office. In addition, any person seeking office from a non at-large district must be a resident and qualified, registered voter in such district for one (1) year at the time of filing for office, and retain such status throughout their tenure.

For any appointive city office, a person must be qualified to perform the duties of the office at the time of assuming the office and at all times while holding the office. The person's citizenship, residence and voter registration status shall be as required or permitted by this Charter or applicable law.

**Sec. 2-102. Term of Office.**

The term of every elective city officer is four (4) years and commences at noon on the first (1st) day of January after the regular city general election.

**Sec. 2-103. Oath of Office.**

Every elective officer and every appointee before entering on official duties shall take and subscribe the following oath before the Detroit City Clerk: "I do solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution of this state and that I will faithfully discharge the duties of office to the best of my ability." The original of the oath shall be filed in the Office of the City Clerk and a copy provided to the elective officer or the appointee.

**Sec. 2-104. Severability.**

If any provision of this Charter or the application thereof to any person or circumstance is held invalid, the invalidity shall not affect other provisions or applications of the Charter.

**Sec. 2-105. Definitions and Rules of Construction.**

***A. As used in this Charter:***

1. *Agency* means, where appropriate and unless indicated otherwise, one or all of the following: any department, office, multi-member body, subdivision of the Legislative branch of City government or other organization of city government and includes any elective officer, appointee, employee, or person acting or purporting to act in the exercise of official duties.

2. *Appoint* means being named to a position in the exempt service.

3. *Appointee* means a person holding either a compensated or uncompensated position.

4. *Appointive office* or *appointive officer* means compensated positions and appointees holding compensated positions.

5. *City* means the City of Detroit.

6. *City Clerk* means the City Clerk of the City of Detroit.

7. *City Council* means the legislative body of the City of Detroit.

8. *Confidential Information* means information obtained by a Public Servant by reason of his or her official position concerning the property, government or affairs of the City or any office, department or agency thereof, not available to members of the public pursuant to the Michigan Freedom of Information Act or other applicable laws, regulations or procedures.

9. *Contractor* means a party who, or which, seeks to enter, or enters, into a contract with the City of Detroit for the delivery of goods or services, but does not mean one who seeks to enter, or enters, into a personal services contract, as defined in this section, with the City.

10. *Corrupt Conduct* means the conduct of a Public Servant, in carrying out his duties, that violates applicable laws or the Standards of Conduct articulated in this Charter.

11. *Director* means the administrative head of any department or agency regardless of the title of a particular director.

12. *District* or *ward* means a district drawn on a geographical basis, which constitutes a political unit from which members of the City Council, Board of Police Commissioners and Community Advisory Councils are elected.

13. *Elective officers* means the Mayor, each member of the City Council, elected Board of Police Commissioners and the City Clerk.

14. *Employee* means a person employed by the City of Detroit, whether on a full-time or part-time basis.

15. *Exempt service* means both compensated and uncompensated positions.

16. *Exercises significant authority* means having the ability to influence the outcome of a decision on behalf of the City of Detroit government in the course of the performance of a Public Servant's duties and responsibilities.

17. *Filling of vacancies* means, except as otherwise provided by this Charter, whenever a vacancy occurs in any appointive position, the vacancy shall be filled by appointment (for the unexpired term, if any) in the manner provided for the original appointment.

18. *General election in the city (distinguished from 'city general election')* means a city-wide general election regardless of whether its purpose is to fill national, state, county or City offices.

19. *Hire* means being employed for a position in the classified service as defined in section 6-417 of this Charter.

20. *Immediate family member* means a Public Servant's spouse, domestic partner, individual who lives in the Public Servant's household or an individual claimed by a Public Servant or a Public Servant's spouse as a dependent under the United States Internal Revenue Code at 26 USC 1, *et seq.*

21. *Lobbying* means all communications with a Public Servant for the purpose of influencing legislative or executive action.

22. *Lobbyist* means with respect to lobbying city government: (a) a person whose expenditures for lobbying are more than $1,000.00 in value in any 12-month period; (b) a person whose expenditures for lobbying are more than $250.00 in value in any 12-month period, if the amount is expended on lobbying a single public official; or (c) a registered lobbyist under applicable laws, who lobbies Detroit city government.

23. *Multi-Member Body* means any board, commission, or other organization of City government.

24. *Official Act* means any action, omission, decision, recommendation, practice or procedure of any agency.

25. *Personal services contract* means a contract for the retention of an individual to perform services on behalf of the City of Detroit for a fixed period and for fixed compensation.

26. *Proceedings* means, with respect to City Council, any gathering of that body for purposes of conducting the legislative affairs of the City of Detroit. It includes, but is not limited to, hearings, council meetings, committee meetings and other council related activities where the body is required to convene by law or Charter to execute its legislative function, as dictated by law, Charter or ordinance.

27. *Public Servant* means the Mayor, members of City Council, City Clerk, appointive officers, any member of a board, commission or other voting body established by either branch of City government or this Charter and any appointee, employee or individual who provides services to the City within or outside of its offices or facilities pursuant to a personal services contract.

28. *Resident(s)* or *residence* means, in reference to qualification for elective office, service on a multi-member body or other Charter residency requirement, a person's principal, permanent place of residence. It shall be that place at which a person habitually sleeps, keeps their personal effects, and regularly lodges. If someone has more than one (1) residence, or a residence separate from that of their spouse, the place where the person resides the greater part of the time will be considered their official residence. Any relevant judicial interpretation of these terms shall be applicable.

29. *Retain* (distinguishing legal representation other than the Corporation Counsel) means the temporary hiring of outside legal counsel.

30. *Serving and present* means, when calculating an ordinary or extraordinary majority of:
    a. *City Council members serving*, vacant City Council seats are not included: and
    b. *City Council members present*, neither vacant City Council seats nor those of absent members are included.

31. *Vacancy* means that the position of any elective officer or appointee is deemed vacant upon death, resignation, permanent disability or dismissal from the position in any manner authorized by law or this Charter.

32. *Voter of the city* or *city voter* means a person who has the qualifications of and is registered as an elector of the City of Detroit under state law.

33. *Willful Neglect of Duty* means the intentional failure of a Public Servant to perform the duties of his office.

## B. Rules of Construction

For purposes of this Charter, the following rules of construction apply:

*Including or included.* Unless the contrary is expressly stated, these are not words of limitation, but mean "including but not by way of limitation" or "included but not by way of limitation."

*Number and gender.* The singular number includes the plural, the plural number includes the singular, and the masculine gender includes the feminine gender and the neuter.

*Tense.* This Charter is to be regarded as speaking in the present and continuously. For example, the phrase "as provided by law" will incorporate the provisions of law as they change from time-to-time.

---

**Sec. 2-106.1. Ethical Standards of Conduct.**

1.      These standards of conduct apply to Public Servants including the Mayor, City Council members, City Clerk, appointive officers, appointees, employees and contractors as defined in this Charter.

The purpose of applying and enforcing these standards is to ensure that governmental decisions are made in the public's best interest by prohibiting city officials and employees from participating in matters that affect their personal or financial interests.

All City ordinances not inconsistent with these sections and that effectuate its operation may be retained. Ordinances may be enacted which are necessary to effectuate the operation of these sections. No ordinance shall be enacted which limits, contradicts or otherwise conflicts with the intent and purpose of these sections.

2.      Except as otherwise provided by applicable law, a Public Servant shall not knowingly:

   a.   Willfully or grossly neglect the discharge of his or her duties;

   b.   Use or disclose Confidential Information concerning the property, government or affairs of the City or any office, department or agency thereof, not available to members of the public and gained by reason of his or her official position;

   c.   Use property of the City except in accordance with policies and procedures of the City;

   d.   Engage in or accept private employment or render services when such employment or service is in conflict or incompatible with the proper discharge of his or her official duties or would tend to impair his or her independence of judgment or action in the performance of official duties;

   e.   Represent a private person, business or organization in any action or proceeding pending before the City or any office, department or agency thereof, except:

      i.   A Public Servant may represent another person, business or organization before a City agency where such representation is a required part of his or her official duties;

      ii.  A Public Servant who is an uncompensated member of a City board, commission or other voting body may act as an agent, attorney or representative for another person, business or organization in a matter that is pending before a City agency, other than the board, commission or other voting body on which he or she is a member; or

      iii. A Public Servant who is compensated by the City may act as an agent, attorney or representative for another person, business or organization in a matter that is pending before a City board, commission or other voting body, other than the board, commission or other voting body on which he or she serves as an appointee or as an employee or under a personal services contract, as long as he or she does so without compensation and on his or her leave time.

   f.   Vote or otherwise participate in the negotiation or the making of any city contract, or any other type of transaction, with any business entity in which he or she or an immediate family member has a financial interest; or

   g.   Use his or her official position, in violation of applicable law, to improperly influence a decision of the Mayor, City Council members, Clerk, appointees or employees.

A Public Servant who, in the course of his or her duties, exercises significant authority shall not:

   a.   Solicit or accept a loan or payment from an individual who is providing service to, receiving tax abatements, credits or exemptions from the City; or

   b.   Unduly influence any decision to fill a position in City government with an immediate family member.

**Sec. 2-106.2. Disclosures.**

1.　　　　Except as otherwise provided by applicable law, a Public Servant who exercises significant authority shall disclose:

     a.  Any financial interest, direct or indirect, that he or she or an immediate family member has in any contract or matter pending before City Council.

     b.  Any financial interest, direct or indirect, that he or she or an immediate family member has in any contract or matter pending before or within any office, department or agency of the City.

     c.  Any interest that he or she, or an immediate family member has in real and personal property that is subject to a decision by the City regarding purchase, sale, lease, zoning, improvement, special designation tax assessment or abatement or a development agreement.

     d.  Campaign contributions and expenditures, in accordance with applicable laws.

     e.  The identity of any immediate family member employed by the City or who is making application to the City.

2.　　　　In addition to compliance with subsection (1) above, contractors and vendors shall disclose:

     a.  The identity of all entities and persons with any financial interest, direct or indirect, in any contract or matter the vendor or contractor has pending before City Council.

     b.  The identity of all entities and persons with any financial interest, direct or indirect, in any contract or matter the vendor or contractor has pending before or within any office, department, or agency of the City.

3.　　　　The above disclosures shall be made in writing and be made by sworn, notarized affidavit, in accordance with City ordinance and applicable laws.

**Sec. 2-106.3. Lobbying Registration and Reporting.**

A lobbyist who lobbies within the city government shall be required to register with the City and file a report of his or her lobbying activity. All documents filed by lobbyists shall be filed with the City Clerk, be a public record and additionally published electronically on the World Wide Web or other format as to provide remote or on-line access to the reports. A fee shall be assessed to each lobbyist.

**Sec. 2-106.4. Gifts and Gratuities.**

A Public Servant shall not accept gifts, gratuities, honoraria, or other things of value from any person or company doing business or seeking to do business with the City, is seeking official action from the City, has interests that could be substantially affected by the performance of the Public Servant's official duties, or is registered as a lobbyist under applicable laws.

This prohibition shall not apply to:

1.　　　　An award publicly presented to a Public Servant by an individual, governmental body or non-governmental entity or organization in recognition of public service.

2.　　　　Complimentary copies of trade publications, books, reports, pamphlets, calendars, periodicals or other informational materials.

3.      A gift received from a Public Servant's relative or immediate family member, provided that the relative or immediate family member is not acting as a third party's intermediary or an agent in an attempt to circumvent this article.

4.      Admission or registration fee, travel expenses, entertainment, meals or refreshments that are furnished to the Public Servant: (i) by the sponsor(s) of an event, appearance or ceremony which is related to official City business in connection with such an event, appearance or ceremony and to which one (1) or more of the public are invited; or (ii) in connection with teaching, a speaking engagement or the provision of assistance to an organization or another governmental entity as long as the City does not compensate the Public Servant for admission or registration fees, travel expenses, entertainment, meals or refreshments for the same activity.

### Sec. 2-106.5. One Year Post-Employment Prohibition.

Subject to state law, for one (1) year after employment with the City, a Public Servant shall not lobby or appear before the City Council or any City department, agency, board, commission or body or receive compensation for any services in connection with any matter in which he or she was directly concerned, personally participated, actively considered or acquired knowledge while working for the City.

Subject to state law, for a period of one (1) year after employment with the City, a Public Servant shall not accept employment with any person or company that did business with the City during the former Public Servant's tenure if that Public Servant was in any way involved in the award or management of that contract or the employment would require the sharing of confidential information.

### Sec. 2-106.6. Contracts Voidable and Rescindable.

The City's Purchasing Department shall amend its standard contract form to include language which provides that City contracts shall be voidable or rescindable at the discretion of the Mayor or Inspector General at any time if a Public Servant who is a party to the contract has an interest in such contract and fails to disclose such interest. Such contract shall also be voidable or rescindable if a lobbyist or employee of the contracting party offers a prohibited gift, gratuity, honoraria or payment to a Public Servant in relation to the contract. A fine shall be assessed to the contractor in the event of a violation of this section of the Charter. If applicable, the actions of the contractor, and its representative lobbyist or employee, shall be referred to the appropriate prosecuting authorities.

### Sec. 2-106.7. Campaign Activities Using City Property Or During Working Hours.

Appointees, appointive officers and employees are prohibited from engaging in campaign activities using City property or engaging in such activity during working hours.

The Mayor, City Council members and City Clerk are prohibited from soliciting appointees, appointive officers and employees to work on political campaign activities using City property or during working hours.

### Sec. 2-106.8. Board of Ethics, Application, Appointment, Qualifications and Terms.

The independent Board of Ethics shall consist of seven (7) members who are City residents and not elective officers, appointees or employees of the City at any time during their board membership.

The members of the Board of Ethics shall be selected as follows:

1. Three (3) who shall be appointed by the City Council;
2. Three (3) who shall be appointed by the Mayor; and
3. One (1) who shall be jointly appointed by the Mayor and City Council.

Such appointments shall be made after applications are received, reviewed and interviews conducted. Members shall serve for a term of five (5) years, up to two (2) consecutive terms not to exceed 10 years. Such terms shall be staggered. Members of the Board of Ethics are subject to removal for cause.

### Sec. 2-106.9. Powers and Duties.

The Board of Ethics shall:

1. Issue advisory opinions regarding the meaning and application of provisions of the Charter, city ordinances or other laws or regulations establishing standards of conduct for Public Servants. Advisory opinions shall be rendered upon written request by a Public Servant regarding his or her own actions. The advisory opinions shall not disclose the identity of the Public Servant concerned.

2. Receive and resolve complaints arising under the Ethics Ordinance. The Board of Ethics shall be authorized by ordinance to conduct investigations on its own initiative, subpoena witnesses, administer oaths, take testimony, require the production of evidence relevant to a matter under investigation, appoint independent counsel when necessary, and to perform other functions essential to ensure the integrity of City government.

3. Prepare an annual report for submission to the Mayor and City Council. Consistent with state law, the Board of Ethics may recommend improvements in the standards of conduct to ensure the ethical behavior of City elective officers, appointees and employees, or in the organization and procedures related to the administration and enforcement of those standards.

4. Provide mandatory training for the Mayor, City Council, Clerk, appointive officers and appointees and employees who exercise significant authority in the execution of his or her official duties.

5. Provide training for all other appointees and employees including those subject to Article 6, Chapter 4 of this Charter.

6. Issue penalties for violations of this section of the Charter, as consistent with state law.

### Sec. 2-106.10. Cooperation in Investigations; Obstruction.

It shall be the duty of every Public Servant, contractor and subcontractor and licensee of the City, and every applicant for certification of eligibility for a City contract or program, to cooperate with the Board of Ethics in any investigation pursuant to this article.

Any Public Servant who willfully and without justification or excuse obstructs an investigation of the Board of Ethics by withholding documents or testimony is subject to forfeiture of office, discipline, debarment or any other applicable penalty.

The requirements under this section shall be incorporated into all City contracts, where legally necessary for application and enforcement.

### Sec. 2-106.11. Violations and Penalties.

1.      Any intentional, willfully negligent or grossly negligent violation of sections 2-106.1 through 2-106.10 and 2-106.14 of the Charter shall subject the violator to any one or more of the following:

   a. Public admonishment issued by Board of Ethics;
   b. If an employee, a recommendation that he or she be reviewed for disciplinary action;
   c. If an elective or appointive officer, a recommendation to the City Council for removal or forfeiture proceedings;
   d. Administrative sanction assessed by the Board of Ethics in an amount and to the extent allowed by law; and
   e. Prosecution by the City's Law Department in a court of jurisdiction and, upon conviction, to a fine and/or imprisonment up to the maximum allowed by law, whether the official or employee is elected or appointed, paid or unpaid. Nothing in this section shall be interpreted to conflict with state law.

2.      With regard to violations by contractors, in addition to the remedies in paragraph (1), the Board of Ethics may recommend to the City's Purchasing Director one or more of the following:

   a. Suspension of a contractor;
   b. Disqualification or debarment from contracting or subcontracting with the City;
   c. Administrative sanction assessed by the Board of Ethics. Subject to any relevant state law, such fine shall be determined by considering the amount of damages incurred by the City as a result of the subject violation; and/or
   d. Prosecution by the City's Law Department in a court of jurisdiction and, upon conviction, a fine for each violation and imprisonment up to the amount and time allowed by law, respectively. Nothing in this section shall be interpreted to conflict with state law.

All penalties associated with this section of the Charter are in addition to the civil and criminal penalties available to the City under applicable law.

### Sec. 2-106.12. Meetings.

All meetings of the Board of Ethics shall be subject to the Michigan Open Meetings Act MCL 15.261, *et al.*, and open to the public unless an individual involved in the matter to be addressed requests in writing that the meeting be closed, or unless otherwise provided by ordinance and consistent with state law.

### Sec. 2-106.13. Funding.

The City shall annually appropriate funds sufficient to enable the Board of Ethics to perform its duties. Funding shall be in accordance with section 8-214 (Proportional Funding for Oversight Agencies).

### Sec. 2-106.14. Campaign Finance Reports.

Every elective officer or candidate for election shall make public their campaign contributions and expenditures by filing a report or reports thereof as required by state law.

### Sec. 2-107. Dismissal Proceedings.

#### A. Recall of Elective City Officers.

Any of the elective City officers provided for in section 3-107 of this Charter may be recalled by the voters of the City in the manner provided for by law.

**B. Forfeiture of Office Held by Elective City Officers.**

1. *Grounds for Mandatory Forfeiture.*
   The office of an elective city officer shall be forfeited for the following:

   a. Lacks at any time any qualifications required by law or by section 2-101 of this Charter;
   b. Plead to, or is convicted of, a felony while holding the office;
   c. Engages in official misconduct;
   d. Willful or gross neglect of duty;
   e. Corrupt conduct in office; or
   f. Any other misfeasance or malfeasance.

2. *Grounds for Permissive Forfeiture.*
   The City Council may determine that the office of an elective city officer should be forfeited where the officer:

   a. Based on a recommendation of the Board of Ethics to the City Council, is determined by a three-fourths (3/4) vote of City Council members serving to have violated the Ethics Ordinance or ethics provisions of this Charter;
   b. Refuses to cooperate in an investigation of the Inspector General, Board of Ethics or Ombudsperson;
   c. Neglects or refuses to comply with the provisions of this Charter after being provided an opportunity to comply pursuant to section 7.5-209 *(Enforcement of Charter)*; or
   d. Violates any provision of this Charter punishable by forfeiture.

3. *Procedure.*
   Where the City Council determines that forfeiture under subsections (B)(1) or (B)(2) of this section, or both, is proper, the officer shall be charged through adoption of a resolution, which provides the factual basis for each charge, by a two-thirds (2/3) vote of members serving. Upon adoption of the resolution, the City Clerk shall forward a certified copy of the resolution to the officer by registered mail.

   An elective city officer charged with conduct constituting grounds for forfeiture is entitled to a public hearing before the City Council and to outside legal representation, as permitted by law, which shall be paid by the City of Detroit at rates commensurate with the hourly rate normally paid by the City. A City Council member charged with conduct constituting grounds for forfeiture may not participate in the resolution of the charge.

   Notice of the hearing and the charging resolution shall be published in a daily newspaper of general circulation in the City, and by electronic posting available to the public, at least fourteen (14) days in advance of the hearing. A decision by the City Council for forfeiture of the office of an elective city officer is subject to judicial review in accordance with Michigan law.

4. *Hearing Rules.*
   In accordance with section 2-111 of this Charter, the City Council shall promulgate rules for the Body's forfeiture hearings. Such rules shall comport with procedural due process and shall be in effect prior to any resolution charging the elective city officer. The City Council may request that Corporation Counsel retain an outside legal advisor to assist it regarding the interpretation, application and enforcement of the rules for the hearing, admissibility of evidence, objections and other legal issues arising in connection with the proceedings.


**C. Removal of City Appointees.**

1. *Grounds.*
   A city appointee who serves at the pleasure of his or her appointing authority may be removed by the appointing authority without cause. A city appointee who is subject to removal for cause may be removed by the appointing authority for:

a. Lack of qualifications;
b.     Incompetence;
c.     Neglect of duties;
d.     Misconduct;
e.     Pleading to or conviction of a felony;
f.     Violation of this Charter;
g.     Violation of federal or state law;
h.     Violation of any city ordinance, rule, or regulation; or
i. Any reason under subsections (B)(1) and (B)(2) of this section.

In addition, where a person is appointed to a multi-member body, the appointee is subject to removal for cause for habitual non-attendance of meetings as defined in the Body's rules, or as established by review of the minutes from the Body's meetings.

2. *Procedure.*
A city appointee who is removable for cause may not be removed under this subsection without an opportunity for a hearing before the appointing authority. A copy of the charges shall be furnished at least fourteen (14) days in advance of the hearing.

3. *Hearing Rules.*
In accordance with section 2-111 of this Charter, each appointing authority shall promulgate procedural rules for removal hearings. Such rules shall comport with procedural due process and shall be in effect prior to any notice or resolution charging the city appointee.


## Sec. 2-108. Pay Plans.

All city appointive officers and employees, except elective officers and those whose compensation is stated in collective bargaining contracts made effective under section 6-408, employed by the City and paid either in part or in whole from city appropriations shall be compensated in accordance with pay plans which have been initiated by the Mayor and approved by the City Council through adoption of a resolution.

Where applicable, the salaries of all city elective officers shall be determined by an Elected Officials Compensation Commission, which shall be created by an ordinance containing provisions as required by state law.


## Sec. 2-109. Reimbursement.

Except as otherwise expressly provided, the members of every multi-member body created by this Charter or under section 7-103 of this Charter shall serve without compensation but may be reimbursed for actual and necessary expenses incurred in the performance of their duties.


## Sec. 2-110. General Provisions for Multi-Member Bodies.

Any multi-member body created in this Charter or under section 7-103 may select its officers and adopt rules of procedure. A majority of its members constitutes a quorum. The Body's meetings shall be conducted in compliance with the Michigan Open Meetings Act, MCL 15.261, *et seq.*, including making a record of its proceedings. The record shall be made available to the public in accordance with the Michigan Freedom of Information Act, MCL 15.231, et seq. Unless otherwise provided for in this Charter or in the Detroit City Code, each term begins on the fifteenth (15th) day of February and ends on the final February fourteenth (14th) of the term.

**Sec. 2-111. Promulgation of Administrative Rules.**

(1)     Where a city ordinance permits or requires a city department director, agency head or multi-member body to promulgate a rule governing dealings between the City and the public, or establishing hearing procedures for resolving matters in dispute, the city department director, agency head or multi-member body shall comply with this section.

(2)     Before adopting any rule governing dealings between the City and the public, or establishing hearing procedures for resolving matters in dispute, a city department director, agency head or multi-member body shall give notice of a hearing by publication in a daily newspaper of general circulation and by electronic posting available to the public, at least four (4) weeks in advance of the scheduled hearing. The notice of hearing shall:

    a.  Contain the proposed rule or procedure, or a statement of its substance;

    b.  Specify the department director or agency head or his or her designee, from whom additional information can be obtained;

    c.  Specify the location, date, and time for oral presentation of views by interested persons; and

    d.  Specify that any written comments and recommendations intended to be considered prior to adopting the rule shall be submitted no later than the conclusion of the public hearing.

(3)     No person shall be precluded from submitting written recommendations and comments subsequent to adoption of the administrative rule. All written comments and recommendations shall be kept on file and made available for public inspection by the promulgating department director, agency head, or multi-member body. Written comments and recommendations received up to the date of the hearing or during the hearing shall be read into the hearing record.

(4)     After the conclusion of the public hearing and consideration of all comments and recommendations, the proposed rule shall become effective upon publication in a daily newspaper of general circulation. All effective rules and procedures shall be codified to correspond to the chapter of the City Code which authorized adoption of the rules or procedures, and included in the Detroit City Code after city ordinances in a separate part titled "Administrative Rules."

(5)     Notwithstanding the preceding subsections, in the case of an emergency declared in writing by the Mayor or the City Council concerning the public health, safety or welfare, a proposed rule may be given effect for a period not to exceed seven (7) days.

(6)     When promulgating a rule or procedure under this section, a city department director, agency head, or multi-member body is limited to proposing rules which establish procedures, and is precluded from promulgating rules or procedures which are substantive in nature and required to be enacted through an ordinance.

(7)     Where rules governing hearing procedures for resolving matters in dispute are adopted, those rules shall be consistent with due process of law.

**Sec. 2-112. Public Records.**

All records of the City shall be made available to the general public in compliance with the Freedom of Information Act, MCL 15.231, *et. seq.*; MSA 4.1801(1), *et. seq.*

**Sec. 2-113. Prohibition Against Entering Into Contracts or Giving Position to Those in Default.**

The City of Detroit, through its executive branch departments and legislative branch agencies, is prohibited from making a contract with, or giving an official position to, one who is in default to the City.

# ARTICLE 3.
# ELECTIONS

## Sec. 3-101. Department of Elections.

A Department of Elections shall plan, monitor and administer all elections in the City of Detroit.

## Sec. 3-102. Election Commission.

The Department of Elections is headed by the Election Commission composed of:

1. The City Clerk, who is Chairperson;
2. The President of the City Council; and
3. The Corporation Counsel.

## Sec. 3-103. Powers and Duties of Election Commission.

The Election Commission has general supervision of all elections in the City and may hire assistants, inspectors, and other election personnel. Precinct election officers and temporary employees required from time to time for periods not to exceed thirty (30) business days may be appointed, exempt from Article 6, Chapter 4, of this Charter.

Except as otherwise provided by this Charter or ordinance, the Election Commission shall perform all duties required of election commissions by law. The Commission may subpoena witnesses, administer oaths, take testimony and require the production of evidence. To enforce a subpoena or order for production of evidence or to impose any penalty prescribed for the failure to obey a subpoena or order, the Commission shall apply to the appropriate court.

All meetings of the Commission shall be conducted in compliance with the Michigan Open Meetings Act, MCL 15.261, et seq., including making a record of its proceedings.

In case of any doubt concerning election procedure, the Commission shall prescribe the procedure to be followed.

## Sec. 3-104. Director and Deputy Director.

The City Clerk shall appoint a Director and Deputy Director of the Department of Elections, who are skilled and experienced in municipal election administration. Under the direction of the City Clerk and in accordance with general policies of the Election Commission, the Director shall supervise, plan and monitor all activities and operations incidental to the conduct of elections and voter registration. The Director or Deputy Director of Elections may be removed by the Clerk for cause.

## Sec. 3-105. City Elections and City Council Initiated Ballot Proposals.

A regular city general election to fill the elective offices of the City shall be held on the Tuesday after the first Monday of November of 2013 and every fourth year thereafter.

A regular city primary election to nominate candidates for city offices shall be held on the Tuesday after the first Monday of August before the general election.

If a vacancy occurs in the office of Mayor it shall be filled by succession under section 5-109. The unexpired term shall be filled at the next general election in the City held not sooner than one hundred eighty (180) days after occurrence of the vacancy.

If a vacancy occurs on City Council it shall be filled by appointment, based on a two-thirds (2/3) vote of members. The person appointed shall serve until an elected member takes office. The election to fill the vacant position shall occur at the next general election to be held not sooner than one hundred eighty (180) days after occurrence of the vacancy.

If a vacancy occurs in an elective office of the Board of Police Commissioners it shall be filled by the Mayor with a resident from the relevant district, subject to City Council approval. If City Council does not disapprove the appointment within thirty (30) days of the appointment it will be deemed confirmed. The appointed person shall serve until an elected member takes office. The election to fill the vacant position shall occur at the next general election to be held not sooner than one hundred eighty (180) days after occurrence of the vacancy.

The City Council may submit, by resolution adopted not less than seventy (70) days before any election or special election, any proposal to the voters of the city.

### Sec. 3-106. State Law to Apply.

Except as otherwise provided by this Charter or ordinance, state law applies to the qualifications and registration of voters, the filing for office by candidates, the filing of petitions for initiative and referendum, and the conduct and canvass of city elections.

### Sec. 3-107. Elective Officers of the City.

The elective officers of the city are the Mayor, the nine (9) members comprising the City Council, the City Clerk and seven (7) elected Board of Police Commissioners.

### Sec. 3-108. Geographical Basis for Electing Council Members.

There shall be seven (7) non at-large districts and one (1) at-large district established in the City and one (1) member shall be elected from each non at-large district and two (2) members shall be elected from the at-large district.

New district boundaries created within one hundred twenty (120) days of a City Primary Election shall become effective after the General Election.

City Council shall establish district wards that are as nearly of equal population as practicable, contiguous, compact and in accordance with any other criteria permitted by law.

District wards shall be apportioned in subsequent years as required by, and in accordance with, the Home Rule City Act, MCL 117.27a, and other applicable law.

### Sec. 3-109. Nominating Petitions.

A candidate for nomination to an elective city office shall file with the City Clerk a non-partisan nominating petition consisting of one (1) or more petition forms.

The candidate's petition shall be signed by a number of voters of the City equal to not more than one percent (1%) nor less than one-fourth percent (1/4%) of the total number of votes cast in the preceding Regular City General Election for the office which the candidate seeks.

Where a candidate is seeking nomination to the office of City Council at-large member, the candidate's petition shall be signed by a number of voters of the City equal to not more than one percent (1%) nor less than one-fourth percent (1/4%) of the number resulting when the total number of votes cast at the preceding Regular City General Election for all offices of City Council members is divided by nine (9).

Where a candidate is seeking nomination to the office of City Council non at-large district member, the candidate's petition shall be signed by a number of voters of the district equal to not more than one percent (1%) nor less than one-fourth percent (1/4%) of the number resulting when the total number of votes cast at the preceding Regular City General Election for all offices of the City Council members is divided by nine (9).

In the initial election, where a candidate is seeking nomination to the office of district elected Police Commissioner, the candidate's petition shall be signed by a number of voters of the district equal to not more than one percent (1%) nor less than one-fourth percent (1/4%) of the number resulting when the total number of votes cast at the preceding Regular City General Election for all offices of City Council members is divided by nine (9). In succeeding elections the candidate's petitions shall be signed by a number of voters of the district equal to not more than one percent (1%) nor less than one-fourth percent (1/4%) of the number resulting when the total number of votes cast at the preceding Regular City General Election for all offices of elected Board of Police Commissioners is divided by seven (7).

**Sec. 3-110. Nominees.**

The number of nominees for each elective city office selected at each primary election may not exceed twice the number of openings in the office to be filled. The nominees are entitled to have their names printed on the general election ballot.

**Sec. 3-111. Residency Requirement for Elective Officers.**

1. *Elected Officials Generally.*
   All candidates for elective office and elected officials shall be bona fide residents of the City of Detroit and must maintain their principal residence in the City of Detroit for one (1) year at the time of filing for office or appointment to office, and throughout their tenure in office.
2. *City Council and Board of Police Commissioners.*
   In addition to being a resident for one (1) year, as required above, candidates for City Council and the Board of Police Commissioners shall be bona fide residents of their districts and must maintain their principal residence in their districts for one (1) year immediately preceding election or appointment and throughout their tenure in that office.

# ARTICLE 3.5.
# OFFICE OF THE CITY CLERK

**Sec. 3.5-101. Office of City Clerk.**

There shall be an Office of the City Clerk, which is headed by the City Clerk.

**Sec. 3.5-102. Duties and Powers of City Clerk.**

The City Clerk shall:

1. Keep all papers filed in or pertaining to the Office of the City Clerk;
2. Keep the Corporation seal of the City;
3. When requested, certify, under the corporate seal, copies of all papers and records for the office;
4. Administer oaths;
5. Take affidavits;
6. Maintain reasonably accessible voter registration sites throughout the City on a year-round basis;
7. Serve as City Council's clerk and keep a record of all its ordinances, resolutions, and other proceedings and perform other such duties as it may provide; and
8. Exercise other powers and duties as provided by law, this Charter, or ordinance.

**Sec. 3.5-103. Deputy City Clerk.**

The City Clerk shall appoint a Deputy City Clerk who shall serve at the pleasure of the City Clerk. In the absence or disability of the City Clerk, or while the position is vacant, the Deputy City Clerk shall exercise all the powers and perform all the duties of the City Clerk to the full extent permitted by law.

**Sec. 3.5-104. Vacancy in Office of City Clerk.**

Where a vacancy occurs in the Office of City Clerk, the City Council shall appoint a successor who shall serve until an elected City Clerk takes office. A City Clerk shall be elected for the unexpired term, if any, at the next general election in the City held not sooner than one hundred eighty (180) days after the occurrence of the vacancy.

# ARTICLE 4.
# THE LEGISLATIVE BRANCH
## CHAPTER 1. CITY COUNCIL

**Sec. 4-101. City Council.**

The City Council is the City's legislative body. It has the powers and duties provided by law or this Charter.

**Sec. 4-102. Meetings.**

The City Council shall hold its first (1st) meeting in the first (1st) week of January after the regular city general election and, during ten (10) months of the year, shall meet every business day unless otherwise provided by resolution at such times and places as it may provide.

On at least eight (8) occasions during each calendar year, the City Council shall hold meetings in areas of the city, to be determined by the City Council. Those meetings shall begin between the hours of seven (7) o'clock P.M. and eight (8) o'clock P.M.

Special meetings may be held at the call of the Mayor or four (4) or more City Council members and, whenever practicable, upon no less than twenty-four (24) hours notice to each member and to the public. All business which the City Council may perform shall be conducted at a public meeting held in compliance with the Michigan Open Meetings Act, 1976 PA267, MCL 15.261, et. seq.; MSA 4.1800, et. seq.

**Sec. 4-103. Selection of Council President and President Pro-Tempore.**

City Council shall select its President and President Pro-Tempore from among its members by majority vote of the members serving at its first regular session in 2014. The term for City Council President and President Pro-Tempore shall be four (4) years. Selection of the President and President Pro-Tempore shall be every four years.

Members serving in the offices of President or President Pro-Tempore may be removed from their office by a unanimous vote of all members serving, exclusive of the officer being removed. If an officer is removed, the basis and vote for removal shall be publicly recorded in the minutes of City Council at a public meeting.

In the event of a vacancy in the office of President, including by removal or temporary absence, the President Pro-Tempore shall serve as President for the unexpired term in the case of vacancy or removal, or until the return of the President in the case of absence due to succession under section 5-109 or otherwise. Any vacancy in the office of President Pro-Tempore shall be filled by majority vote of members serving on the City Council for the unexpired term. However, if the office of President Pro-Tempore becomes available because of succession under section 5-109, City Council shall select a President Pro-Tempore to serve until the return of the President and resulting resumption of the office by the President Pro-Tempore.

**Sec. 4-104. Duties of the Council President.**

The president of the City Council shall preside at all regular session meetings of the City Council. The president shall have administrative responsibility on behalf of the City Council.

13-53846-tjt   Doc 11837   Filed 04/05/17   Entered 04/05/17 16:45:46   Page 60 of 150

The City Council shall provide in its rules for the duties and responsibilities of the council president.

### Sec. 4-105. Rules and Journal.

The City Council shall determine its own rules and order of business and shall provide for keeping a journal of its proceedings in the English language. The journal shall be a public record.

### Sec. 4-106. Standing Committee Structure.

The City Council shall provide for a standing committee structure by its rules which committees may include, but not be limited to the following areas:

1. Budget and Finance;
2. Neighborhood and Community Services;
3. Human Resources;
4. Law and Public Safety;
5. Planning and Economic Development; and
6. Such committees as it deems necessary.

The president of the council shall appoint the chairpersons of such standing committees, with the approval of a majority of the City Council. However, the number of committees and the number of members per committee may be set by the City Council. Only members of committees may vote on matters before the committee. The president shall be an ex-officio member of all committees, but shall be a voting member only as provided for any other council person.

### Sec. 4-107. Quorum.

A majority of City Council members serving constitutes a quorum, but a smaller number may adjourn from time to time and may compel attendance of absent members in the manner and subject to the penalties provided by rule of the City Council.

### Sec. 4-108. Voting.

Except as otherwise provided by this Charter, no action of the City Council shall be effective unless adopted by at least a majority of City Council members present.

Every City Council member present shall vote on all questions, except as provided by state law, a City Council member must promptly disclose any pecuniary interest in a contract which the City Council has the power to approve, and no City Council member may vote upon any matter related to the approval of the contract in which the City Council member has a pecuniary interest.

On all ordnances, and in all other matters on the demand of one (1) or more members of the City Council, the yeas and nays shall be taken and entered in its journal.

### Sec. 4-109. Investigations.

The City Council may make investigations into the affairs of the City and the conduct of any city agency.

**Sec. 4-110. Investigative Powers.**

The City Council may subpoena witnesses, administer oaths, take testimony and require the production of evidence in any matter pending before it or any of its committees. To enforce a subpoena or order for production of evidence or to impose any penalty prescribed for failure to obey a subpoena or order, the City Council shall apply to the appropriate court.

**Sec. 4-111. Confirmation Authority.**

Except as otherwise provided in this Charter or as may be required by law, Mayoral appointment of the Chief of Police, Fire Commissioner, Director of Planning and Development, Director of Human Resources and Corporation Counsel, is subject to approval by City Council. However, if the City Council does not disapprove the appointment within thirty (30) days after submission by the Mayor, the appointment is confirmed.

**Sec. 4-112. Control of Property.**

Except as otherwise provided by this Charter, the City may not sell or in any way dispose of any property without the approval by resolution of the City Council.

The City Council shall adopt an ordinance within one-hundred and eighty (180) days after the effective date of this Charter to provide for the acceptance of gifts or real and personal property and services to the City of Detroit.

**Sec. 4-113. Prohibition on Interference in Administration.**

Except for the purposes of inquiries and investigations, the City Council or its members shall deal with city officers and employees who are subject to the direction and supervision of the Mayor solely through the Mayor, and neither City Council or its members shall give orders to such officer or employee, either publicly or privately.

**Sec. 4-114. Ordinances and Resolutions in General.**

In accordance with state law, an ordinance shall be enacted to provide a permanent rule for the conduct of government, while a resolution shall be adopted to express a determination, to direct a particular action, or to approve a singular event. In addition to other acts required by law or by specific provision of this Charter to be done by ordinance, those acts of the City shall be by ordinance which:

1. Amend or repeal any language in, or add any language to, the Detroit City Code;

2. Establish a prohibition for violation of which a penalty is imposed based upon a finding that a person committed a misdemeanor, civil infraction, or blight violation; or

3. Provide for the laying and collecting of rents, tolls, excises and taxes, except as otherwise provided in section 8-209 of this Charter concerning property taxes levied by the budget.

**Sec. 4-115. Ordinance Procedure.**

1. Every proposed ordinance shall be in writing. No ordinance may contain more than one (1) subject, and the ordinance's title must clearly express this subject. The enacting clause shall be "It is Hereby Ordained by the People of the City of Detroit ..."

Any ordinance which repeals or amends an existing chapter, article, division, or section of the Detroit City Code shall set out in full the chapter, article, or division, or section to be repealed or amended, and shall clearly indicate language to be omitted and language to be added.

2.        Upon the filing of any ordinance, the City Clerk shall distribute a copy to each City Council member and to the Mayor, shall file a reasonable number of copies in the Office of the City Clerk and such other public places as the City Council may designate, and shall publish a summary of the proposed ordinance in a daily newspaper of general circulation in the City together with a notice establishing the time and place for a public hearing thereon and for its consideration by the City Council.

The public hearing may not be held earlier than five (5) days after the publication. The public hearing may be held separately or with a regular or special City Council meeting and may be adjourned from time to time. All interested persons shall have an opportunity to be heard.

After the public hearing, the City Council shall vote on the proposed ordinance in accordance with section 4-108 of this Charter.

### Sec. 4-116. Emergency Ordinances.

To meet a public emergency affecting life, health, property or the public peace, one (1) or more emergency ordinances may be enacted. However, an emergency ordinance may not levy taxes; grant, renew or extend a franchise; or regulate the rate charged by any public utility for its service.

An emergency ordinance shall be introduced in the form and manner required for ordinances under section 4-115 of this Charter, except that the ordinance shall contain, after the enacting clause, a declaration stating that an emergency exists and describing the emergency in clear and specific terms.

An emergency ordinance may be passed and given immediate effect at the meeting at which the ordinance is introduced, by a two-thirds (2/3) majority of City Council Members present.

An emergency ordinance shall become effective upon publication or at any later date specified therein. Every emergency ordinance is repealed automatically on the sixty-first (61st) day after its enactment, unless re-enacted as an emergency ordinance.

### Sec. 4-117. Procedure for Approval or Veto by Mayor and City Council's Override of Veto.

Every ordinance or resolution of the City Council, except quasi-judicial acts of the City Council, including any under section 9-302, appointments by the City Council or action taken under sections 2-107(B) and (C), 4-102, 4-105, 4-108, 4-109, 4-120, 4-121, 7-706, or 12-110 of this Charter, shall be presented by the City Clerk to the Mayor within four (4) business days after adjournment of the meeting at which the ordinance is passed or the resolution is adopted.

Within seven (7) days of its receipt, the Mayor shall return the ordinance or resolution to the City Clerk with or without approval, or with a veto and a written statement explaining the veto. However, with respect to an emergency ordinance, the Mayor shall notify the City Clerk of a veto in any reasonable manner within twenty-four (24) hours after the Mayor's Office receives written notice from the City Clerk that the emergency ordinance has been passed.

An ordinance approved by the Mayor shall be deemed enacted thereupon. An ordinance returned to the City Clerk neither approved nor vetoed by the Mayor shall be deemed enacted upon receipt by the City Clerk. The Mayor shall return any resolution neither approved nor vetoed to the City Clerk with a written

statement explaining the reason that the resolution was neither approved nor vetoed. An ordinance or resolution not returned to the City Clerk within seven (7) days of receipt by the Mayor shall be deemed enacted upon expiration of the seven (7) day period, provided, that, where the Mayor fails to notify the City Clerk of a veto within twenty-four (24) hours of receipt by the Mayor's Office of notice that an emergency ordinance has been passed, the emergency ordinance shall be deemed enacted upon expiration of the twenty-four (24) hour period.

An ordinance or resolution vetoed by the Mayor can be reconsidered by the City Council only at a regular or special meeting within one (1) week after receipt of the Mayor's veto. A two-thirds (2/3) majority of City Council Members serving may pass the ordinance or adopt the resolution over the Mayor's veto.

### Sec. 4-118. Publication of Ordinances and Effective Date.

An ordinance shall become effective only upon publication by the City Clerk. The effective date of an ordinance shall be determined as specified in this section.

As soon as practicable after enactment of any ordinance in accordance with section 4-117, the City Clerk shall have the law published in a daily newspaper of general circulation in the City together with a notice of its enactment, which shall include the effective date. After publication, each ordinance shall be printed in a form for codification within the Detroit City Code.

Except as provided by law, the effective date of the ordinance shall be determined as follows:

1. Where the ordinance is passed by a two-thirds (2/3) majority of the City Council Members serving, it shall be given immediate effect and become effective upon publication;
2. Where the ordinance is passed by less than two-thirds (2/3) majority of the City Council Members serving, it shall become effective no later than thirty (30) days after publication; or
3. Where the ordinance specifies a certain date to become effective, it shall become effective in accordance with the date specified therein, subject to the publication requirement in this section.

### Sec. 4-119. Ordinances After Enactment and Resolutions After Adoption.

1. The City Clerk shall authenticate by signature and record all ordinances and resolutions in a properly indexed book kept for that purpose. After enactment, the City Clerk shall cause each ordinance to be printed in a loose-leaf format for distribution to the public prior to codification of the ordinance in the Detroit City Code. At the end of each calendar year, or more frequently if possible, the City Clerk shall cause loose-leaf ordinances to be codified within the Detroit City Code.

2. Within ten (10) years after the effective date of this Charter and at least every ten (10) years thereafter, the City Council shall provide for the preparation of a general codification of all City ordinances.

The general codification shall be enacted by ordinance and shall be published promptly in bound or loose-leaf form, together with this Charter and any amendments thereto, the 1963 Michigan Constitution, the Michigan Home Rule City Act and rules promulgated under section 2-111 of this Charter. This compilation shall be designated as the Detroit City Code with the designation preceded by the year that the Code became effective.

A copy of the Code shall be provided to City elective officers, appointees and necessary employees, placed in libraries and public offices for free public reference, and made available for purchase by the public at a reasonable price fixed by the City Council Clerk.

Each ordinance and each amendment to this Charter shall be printed promptly after enactment, and the printed ordinances and Charter amendments shall be distributed or sold to the public at reasonable prices to be fixed by the City Council Clerk.

**Sec. 4-120. Council Personnel.**

The City Council may appoint a staff, exempt from Article 6, Chapter 4 of this Charter.

**Sec. 4-121. Special Counsel.**

The City Council may obtain the opinion or advice of an outside law firm or outside attorney in any matter pending before it. Where there exists a conflict of interest between the City Council and another branch of government, the City Council has the authority to retain an outside law firm or outside attorney who shall represent the City Council in legal proceedings, in accordance with section 7.5-208 (Intra-Government Dispute Resolution). The attorney must be licensed to practice law in Michigan and shall not represent the city as a municipal corporation in any legal proceeding.

**Sec. 4-122. Approval of Contracts and Disclosure.**

The City may not purchase or in any way procure property or the services of independent contractors without approval by resolution of the City Council except as provided by ordinance.

Within one hundred eighty (180) days of the effective date of this Charter, the City Clerk shall post on the City's website a list of all contracts that have been approved by City Council and which are then in effect. The list shall be updated upon the initial approval, amendment or renewal of a contract, as provided herein. The list shall contain: (1) the name of the contractor; (2) a brief description of the goods and/or services being provided; (3) the total dollar amount of the contract; (4) the amount and date of all amendments that result in a change in the contract amount, including change orders; and (5) the purchase order number.

For purposes of conflicts of interest, the City shall require in all of its contractual agreements, including, but not limited to, leases, service and equipment agreements and including contract renewals, that the contractor provide a statement listing all political contributions and expenditures ("Statement of Political Contributions and Expenditures"), as defined by the Michigan Campaign Finance Act, MCL 169.201, et seq., made by the contractor, its affiliates, subsidiaries, principals, officers, owners, directors, agents or assigns to elective city officials within the previous four (4) years. Individuals shall also list any contributions or expenditures from their spouses.

The contract shall reflect that filing the Statement of Political Contributions and Expenditures shall be a yearly obligation of the contractor for the duration of the contract and shall be filed with all contract renewals and change orders. Each submitted Statement of Political Contributions and Expenditures shall be current up to and including the date of its filing.

The contractual agreement shall also state that the contract is not valid unless and until the Statement of Political Contributions and Expenditures is provided, which shall be attached as an exhibit to the contract and referenced as such in the contract. City Council is prohibited from approving any contract subject to this requirement, or change order related to such contract, unless it is accompanied by the Statement of Political Contributions and Expenditures from the contractor.

# ARTICLE 4.
## THE LEGISLATIVE BRANCH
## CHAPTER 2. BOARD OF ZONING APPEALS

**Sec. 4-201. Establishment of Board of Zoning Appeals.**

There shall be established, pursuant to the Michigan Zoning Enabling Act, MCL 125.3101, et al., a Board of Zoning Appeals. The Board of Zoning Appeals shall be composed of at least seven (7) members, one (1) each from the non at-large districts.

**Sec. 4-202. Board of Zoning Appeals Ordinance.**

In accordance with the Michigan Zoning Enabling Act, MCL 125.3601, the City of Detroit shall enact an ordinance that establishes one (1) appeal board with the powers and duties: (1) to hear appeals from administrative decisions either of the Buildings, Safety Engineering, and Environmental Department or Planning and Development Department; and (2) hold hearings on non-conforming uses and structures and requests for variances. In accordance with MCL 125.3601(1), the ordinance shall provide that the City Council appoints members to the Board of Zoning Appeals.

In addition, the ordinance shall provide:

1. For rules governing the appeal and other matters properly before the Board, including the parties entitled to be heard in proceedings before the Board;

2. In any review proceeding, that the Buildings, Safety Engineering, and Environmental Department or the Planning and Development Department shall file a written statement and may appear before the Board in support of its decision;

3. The effect of a decision of the Board; and

4. For compensation of Board members.

# ARTICLE 4.
## THE LEGISLATIVE BRANCH
## CHAPTER 3. CITY PLANNING COMMISSION

**Sec. 4-301. City Planning Commission.**

A nine (9) member City Planning Commission shall be appointed by and serve at the pleasure of the City Council. Seven (7) of the members shall be appointed, one (1) each, from the non at-large districts. As far as possible, different professions and occupations shall be represented on the commission.

A member must be a resident of the City. The term of office is three (3) years and the terms of three (3) members expire each year. City Council members are eligible for appointment to the Commission as ex-officio members.

**Sec. 4-302. Powers and Duties.**

The City Planning Commission shall advise the City Council on development matters as defined in section 6-204 and, to the extent consistent with this Charter and state law, perform other functions as directed by the City Council. Any resolution adopted by the Commission is advisory and shall not be binding until adoption by the City Council.

**Sec. 4-303. Staff Assistance.**

The Commission may request, and is entitled to, assistance from the staff of the Planning and Development Department in evaluating or preparing any proposal relating to planning or development. All elective and appointive officers shall furnish to the commission, within a reasonable time, available information required by the commission. The Commission may, within appropriations, appoint a staff, exempt from Article 6, Chapter 4 of this Charter.

# ARTICLE 5
## THE EXECUTIVE BRANCH:
### THE MAYOR and GENERAL PROVISIONS

**Sec.5-101. Mayor.**

The Mayor is the chief executive of the City and, as provided by this Charter, has control of and is accountable for the executive branch of City government. The Mayor is also directly accountable to the citizens of the City of Detroit.

**Sec.5-102. The Executive Branch.**

Except as otherwise provided by law or this Charter, executive and administrative authority for the implementation of programs, services and activities of city government is vested exclusively in the executive branch.

**Sec.5-103. Mayoral Appointments.**

The Mayor may appoint a secretary and other necessary assistants.

Except as otherwise provided by law or this Charter, the Mayor shall appoint for each department of the executive branch a director who serves at the pleasure of the Mayor as head of the department. As used in this chapter, "director" means the administrative head of each department regardless of the title of a particular director.

**Sec.5-104. Other Mayoral Powers.**

The Mayor is a conservator of the peace of the City and may administer oaths and take affidavits.

**Sec.5-105. Appointment of Deputies.**

Except as otherwise provided by law or this Charter, the Director of each department of the executive branch may, with the consent of the Mayor, appoint a Deputy. The appointment shall be made and may be revoked without cause by a writing filed with the City Clerk.

**Sec.5-106. Powers and Duties of Department Directors.**

Except as otherwise provided by law or this Charter, the Director of each department of the executive branch shall:

1. In accordance with Article 6, Chapter 4, hire, promote, supervise, discipline and remove all employees of the department.
2. Assign duties to the employees and supervise the performance of these duties.

3. Prescribe rules which are necessary for the organization and internal governance of the department. However, no rule may be inconsistent with any collective bargaining contract or any rule

or policy of the Human Resources Department.

4.   Prepare reasonable rules governing dealings between the department and the public. A rule becomes effective in accordance with section 2-111.

5.   Present annually in quantitatively measurable terms the department's operational performance during the past year and the objective for planned improvement in the coming year. The report shall be submitted to the Mayor and City Council not later than the date established for the Mayor to submit to the City Council a proposed annual budget for the next fiscal year.

6.   Respond to any inquiry or investigation of the Inspector General, Ombudsperson, Board of Ethics, Auditor General and City Council.

## Sec.5-107. Powers of a Departmental Deputy.

The Deputy in each department of the executive branch shall, under the Director's supervision, during the director's absence or disability, or while the director's position is vacant, exercise all the powers and perform all the duties of the director to the full extent permitted by law.

## Sec.5-108. Deputy Mayor.

By a writing filed with the City Clerk, the Mayor shall designate a member of the Mayoral staff or the director of a department of the executive branch as the deputy Mayor. The Mayor may terminate the designation without cause by filing a notice of termination with the City Clerk.

During the absence or temporary disability of the Mayor, the Deputy Mayor shall be acting Mayor and shall exercise all the powers and perform all the duties of the Mayor to the full extent permitted by law, except that the Deputy Mayor may not:

1.   Exercise any power of appointment to or removal from office, except in an emergency declared by a two-thirds (2/3) majority of City Council members present; or

2.   Approve or veto any ordinance or resolution within the first five (5) days of the seven (7) days allowed under section 4-117 for exercise of the Mayor's veto power.

## Sec.5-109. Succession to Office.

If a vacancy occurs in the office of Mayor, the City Council president shall succeed to the office until a new Mayor is elected.

If a dispute arises concerning whether a vacancy in the office of Mayor has occurred, the City Council president or any three (3) members of the City Council may petition the appropriate court for a determination of this fact question.

## Sec. 5-110. Community Meetings.

Each calendar year the Mayor shall hold at least one community meeting in each of the non at-large districts. A city-wide community meeting shall be held not later than September 30 of each calendar year at the Coleman A. Young Municipal Center auditorium or other location suited to accommodate at least

an equal number of citizens. Meetings shall begin between the hours of seven (7) o'clock P.M. and eight (8) o'clock P.M. and shall not conflict with an evening City Council meeting scheduled under section 4-102.

The meetings shall be published and noticed in the manner set forth in the Michigan Open Meetings Act. Meetings shall be conspicuously posted on the City of Detroit's website or then existing modes of electronic or non-print communication and on other forms of media owned or operated by the City of Detroit, including any television channels.

# ARTICLE 6
# THE EXECUTIVE BRANCH: STAFF DEPARTMENTS
## CHAPTER 1. BUDGET DEPARTMENT

**Sec. 6-101. Budget Department.**

The Budget Department is headed by the Budget Director.

**Sec. 6-102. Powers and Duties.**

The Budget Department shall assist other city agencies in the development of program and service objectives and in the conduct of financial planning to achieve those objectives.

The Budget Department shall obtain from city agencies all information required by the Mayor for the preparation of the capital agenda and the capital and annual budgets. That information shall be furnished in the manner prescribed by the Budget Director.

The Budget Director, with the assistance of the Planning and Development Director, shall assist the Mayor in the preparation of the capital agenda and the capital budget.

**Sec. 6-103. Management Audits.**

The Budget Department shall conduct management audits which analyze and evaluate the operations of all agencies.

# ARTICLE 6.
# THE EXECUTIVE BRANCH: STAFF DEPARTMENTS
## CHAPTER 2. PLANNING AND DEVELOPMENT DEPARTMENT

**Sec. 6-201. Planning and Development Department.**

The Planning and Development Department is headed by the Planning and Development Director. In addition to the duties and functions in this chapter, the department shall:

1. Establish a strategic plan that pursues, advocates and supports community development within the City, consistent with the Master Plan, including the creation and support of stable planned communities;

2. Develop and implement a strategic plan to pursue and initiate programs, opportunities and create conditions supportive of global trade;

3. Develop and implement a strategic plan to actively recruit businesses to the City and provide the support, assistance and conditions necessary to retain businesses; and

4. Develop and implement a strategic plan and program focused on recruiting and supporting emerging industries.

The Department shall provide an annual report to City Council, on or before February 1, that incorporates the community and economic development strategies called for in this section, and which details the department's actions, achievements and future plans in pursuit of these strategies and the duties and functions set forth herein. The report shall also identify the levels of funding necessary to pursue these strategies and achieve their objectives.

**Sec. 6-202. Advance Planning.**

The Planning and Development Department shall obtain all information and conduct all studies required by the Mayor and the heads of agencies in the preparation of proposals relative to development matters.

**Sec. 6-203. Current Planning.**

The Planning and Development Department shall have continuing liaison with all agencies of the executive branch. It may assign any relevant study to any agency. Any agency, with knowledge and consent of the Planning and Development Director, may undertake the study of any development matter within the scope of its duties. The Planning and Development Department shall receive all reports concerning development matters and other information which it requests. The Planning and Development Director shall, with the head of any agency involved, evaluate all reports and information received by the Planning and Development Department in light of the policies, programs and priorities of the Mayor, and the master plan.

**Sec. 6-204. Definition.**

The term "development matters" as used in the Charter includes: The master plan for social, economic and physical development and conservation; the annual capital agenda and capital budget; any development or renewal project on or affecting public real property or public interests in real property or requiring public assistance; proposed ordinances for the regulation of development or conservation; proposals for the demolition, disposition or relinquishment of, or encroachment upon, public real property or public interests in real property; and any other items added by ordinance.

**Sec. 6-205. Public Hearings.**

The people of the City of Detroit living in areas likely to be affected by proposals resulting from any study undertaken by the Planning and Development Department or an agency under sections 6-202 or 6-203 shall be given full opportunity in public hearings to present facts and arguments relative to the subject under study. The department is required to provide notification of the hearing to any Citizen District Council, Citizen Advisory Council or Community Development Corporation impacted by proposals contained in the study.

# ARTICLE 6.
# THE EXECUTIVE BRANCH: STAFF DEPARTMENTS
## CHAPTER 3. FINANCE DEPARTMENT

**Sec. 6-301. Finance Department.**

The Finance Department is headed by the Finance Director.

**Sec. 6-302. Departmental Divisions.**

The Finance Director shall direct and coordinate the financial activities of the accounts division, the assessments division, the treasury, and the purchasing division. The Finance Director shall also secure and maintain compliance with all laws pertaining to financial controls for the protection of public funds.

**Sec. 6-303. Accounts Division.**

The Accounts Division is headed by the Chief Accounting Officer. The Finance Director, with the consent of the Mayor, shall appoint the Chief Accounting Officer, who serves at the pleasure of the Finance Director.

The Chief Accounting Officer shall maintain records showing the financial condition of the city and perform such other duties as provided by law, this Charter or ordinance.

**Sec. 6-304. Assessments Division.**

The Assessments Division is headed by a three (3) member Board of Assessors. The term of membership on the Board is three (3) years. One (1) term expires each year. Compensation for Board members shall be established by ordinance.

The Mayor shall appoint the members of the Board and may remove a member for cause. Each member must possess the qualifications required by law for assessing officers.

Staff services required by the Division shall be provided as determined by the Finance Director.

A majority of the Board may review and correct any assessment made by an employee of the Division.

Except as otherwise provided by this Charter or ordinance, the powers, duties and procedures of the Board and the Division are those provided by law.

**Sec. 6-305. Treasury Division.**

The Treasury Division is headed by the Treasurer. The Finance Director, with the consent of the Mayor, shall appoint the Treasurer, who serves at the pleasure of the Finance Director.

The Treasurer shall:

1. Collect all moneys of the city and receive from other officers and employees all moneys of the city collected by them.

2. Have custody of all moneys, funds and securities of the city, keep accounts of them and deposit them as directed by law or ordinance.

3. Disburse all city funds in accordance with law, this Charter or ordinance.

4. Except as otherwise provided by this Charter or ordinance, have such powers and immunities for the collection of taxes as provided by law.

## Sec. 6-306. Purchasing Division.

The Purchasing Division is headed by the Purchasing Director. The Finance Director, with the consent of the Mayor, shall appoint the Purchasing Director, who serves at the pleasure of the Finance Director.

The Purchasing Director shall, subject to the provisions of section 4-122:

1. Procure all property and all services of independent contractors to be paid for from appropriations made in the annual budget in accordance with section 8-302, except that an agency may be authorized by ordinance to procure specified kinds of property and services directly.

2. Follow all procedures established by ordinance to protect the interests of the city and to assure fairness in procuring property and services. Except in cases of emergency, those procedures shall require competitive bidding for purchases and contracts which are major as defined by ordinance. However, for purposes of this requirement, the "lowest responsible bidder" may be defined by ordinance in terms of lowest overall cost to the City.

3. Sell, lease or transfer in the ordinary course of city operations all personal property of the city which has become unsuitable for public use. Dispositions of personal property which are not in the ordinary course of city operations shall be defined by ordinance and are subject to City Council control.

4. Follow procedures established by ordinance to protect the interests of the city and to assure fairness in disposing of personal property. Except in cases of emergency, those procedures shall require competitive bidding for all sales, leases and transfers which are major as defined by ordinance.

## Sec. 6-307. Privatization of City Services.

The City shall provide by ordinance for a process by which the City shall act prior to any determination or action to enter into any agreement, by which a non-governmental person or entity provides services to the city substantially similar in whole or in part, to services provided by a regular employee of an agency of the City. Such ordinance shall provide for the following:

1. The preparation of a comprehensive report which details the need for the privatization.

2. Comprehensive written estimates of the total current costs to the city of the agency providing the subject services in the most cost efficient manner, including all direct and indirect costs.

3. A requirement for approval of the legislative body to solicit bids for the privatization, after its review of the comprehensive report and cost analysis.

4. An opportunity for the affected employees to organize and prepare a bid to provide the subject services.

5. A process whereby the agency prepares a comprehensive written analysis of all bids of public employees and non-governmental entities, which would include, but not be limited to the cost of the bid to provide the services, contract performance; and unemployment, pension or other accrued benefits resulting from loss of agency employees.

6. Other factors to be included in the consideration, other than cost, which could affect the public interest including the effect of transfer of services from the public to the private sector on the access,

delivery or quality of services to be provided; the reduction in the employment level of city residents; the differences in work rules and management practices of the workers in the private sector, including those related to legal and constitutional protections and any loss of accountability to city residents which would result from the services being provided by a non-governmental person or entity.

7. The provision that any final recommendation for the privatization of services would require the two-thirds (2/3) approval of the legislative body, which would be required to certify that it was its determination that the availability and quality of the subject services would be likely to equal or exceed the quality of services which could be provided by regular agency employees.

8. Provisions which would require the annual evaluation of the privatized services and the providing of such evaluation to the City Council.

No provision of this section should be construed to abrogate or limit any legal rights afforded to the employees under the collective, bargaining process.

Nothing in this section shall supersede provisions of section 6-417 of this Charter.

In addition, nothing in the ordinance should be construed as prohibiting the city from obtaining contractual services which are an expansion or addition to services already provided by governmental employees, provided that the contractual services are not a replacement for existing governmental positions. An ordinance implementing this section shall be adopted within one hundred eighty (180) days of the effective date of this Charter.

### Sec. 6-308. Debarment.

The Corporation Counsel shall prepare, and City Council shall implement by ordinance, a comprehensive debarment policy and procedure for City vendors and contractors within one hundred twenty (120) days of the effective date of this Charter. The debarment policy shall, at a minimum, include the following:

1. Debarment for a period commensurate with the seriousness of the offense, not to exceed twenty (20) years;

2. Identify the Inspector General as the chief investigative agent for allegations or instances of illegal conduct or unethical contractual activity;

3. Require, under penalty of debarment, that persons or entities with City contracts, or those seeking contracts with the City, report to the Inspector General any improper, unethical or illegal activity or requests from elected officials, those on their behalf or City employees in connection with the contract;

4. Provide for no statute of limitations in connection with investigations, findings of violation of the debarment policy or initiation of debarment proceedings;

5. Require that the City report actual or suspected illegal activity to the proper state or federal authorities;

6. Invest the City Council, as a body, and the Mayor with the authority to request the Inspector General to investigate suspected improper activity related to City contracts; and

7. Require that all City contracts and contractors be made subject to the debarment ordinance.

13-53846-tjt    Doc 11837    Filed 04/05/17    Entered 04/05/17 16:45:46    Page 76 of 150

# ARTICLE 6.
## THE EXECUTIVE BRANCH: STAFF DEPARTMENTS
### CHAPTER 4. HUMAN RESOURCES DEPARTMENT

**Sec. 6-401. General Purpose.**

The purpose of this chapter is to establish a system of personnel administration that meets the needs of the people of Detroit, assures that employment and promotion in Detroit government are on the basis of merit and in accordance with collective bargaining under law, and provides methods of redress when these provisions are violated.

**Sec. 6-402. Human Resources Department.**

Except as otherwise provided by law or this Charter the Human Resources Department shall perform all aspects of the human resources functions for all agencies of the City.

**Sec. 6-403. Human Resources Director and Deputy.**

The Human Resources Director shall be appointed by the Mayor. The Mayor may remove the director without cause. A Deputy Human Resources Director shall be appointed by and serve at the pleasure of the Human Resources Director.

**Sec. 6-404. Qualifications.**

The Human Resources Director shall have at least five (5) years experience in personnel administration.

**Sec. 6-405. Civil Service Commission.**

The Human Resources Department is headed by a five (5) member Civil Service Commission.

The Mayor shall appoint two (2) members to two (2) year terms beginning February fifteenth (15th) of each even numbered year and the City Council shall appoint two (2) members to two (2) year terms beginning February fifteenth (15th) of each odd numbered year. The Mayor and City Council shall jointly appoint one (1) member to a three (3) year term beginning February fifteenth after the expiration of the preceding term. A member may be removed only for cause by the appointing authority. A vacancy on the Commission shall be filled for the unexpired term, if any, by the authority making the original appointment.

A member must be a citizen of the United States and a resident of the City of Detroit. The members of the Commission may hold no other public office or public employment with the City of Detroit except that of notary public. The Commission shall be representative of the total community and shall meet at least once each month.

The Commission may hold hearings, subpoena witnesses, administer oaths, take testimony, and require the production of evidence. To enforce a subpoena or order for production of evidence or to impose any penalty prescribed for failure to obey a subpoena or order, the Commission shall apply to the appropriate court. The Commission may delegate the powers to hold hearings, administer oaths and take testimony.

### Sec. 6-406. Non-Discrimination.

No city employee or applicant for employment may be discriminated against because of religion, race, color, national origin, age, sex, sexual orientation, height, weight, disability, familial status, marital status, or any status protected by the laws of the State of Michigan or the United States of America. The Human Resources Department shall take all action permitted by law to ensure fair and equitable treatment of all employees and applicants for employment.

### Sec. 6-407. Employee Organization.

Employees of the City have the right to collective organization and collective bargaining.

### Sec. 6-408. Labor Relations.

A Labor Relations Division is created within the Human Resources Department.

The Mayor may appoint either the Human Resources Director or another person as head of the Labor Relations Division.

The person named as head of the division shall hold the position at the pleasure of the Mayor.

In accordance with Article 6, Chapter 4, the head of the Labor Relations Division may hire, promote, supervise, discipline and remove employees of the division, assign duties to the employees and supervise the performance of those duties.

The Labor Relations Division shall act for the City under the direction of the Mayor, in the negotiation and administration of collective bargaining contracts.

The City Council must ratify any collective bargaining contract agreed to between the City and the respective union before it becomes effective.

The terms of any collective bargaining contract, and all rules and rulings made under it, shall take precedence over any inconsistent classifications, rules, or policies of the Human Resources Department.

### Sec. 6-409. Classification of Positions.

The Human Resources Director shall prepare, maintain, and from time to time revise a classification plan for all positions in the classified service. The classification plan shall include an appropriate title for each class and a description of the duties and responsibilities of positions in the class. The Human Resources Director may consult with the heads of city agencies in the preparation of those descriptions.

The classification plan and any revision of it, shall be filed with the City Clerk and shall be a public record. The plan or any revision shall become effective thirty (30) days after filing, except that, within the thirty (30) day period, the Civil Service Commission may, on its own initiative or at the request of any classified employee or the head of any agency affected, review the classification plan or any revision and, after giving the Human Resources Director a full hearing, may make changes if it finds upon clear and convincing evidence that the description or classification of any position or positions is improper.

**Sec. 6-410. Examinations.**

Entry into the classified service shall, as nearly as conditions of good administration warrant, be by open, competitive examination. However, any person applying to work for the City in a profession or occupation for which he or she has been licensed by the governments of Michigan or the United States may be excused from this requirement by the rule of the Civil Service Commission.

The head of each agency may make all promotions to classified positions within the agency. However, the head of an agency shall give the Commission written notice of any proposed promotion within the classified service not less than thirty (30) days before its effective date.

The Human Resources Department may require a person nominated for a promotion to take a qualifying examination for the new position and, if that person does not achieve a passing score on the examination, the promotion shall not take effect.

The Human Resources Director shall prepare, administer and grade all examinations, subject only to an examinee's right to appeal under section 6-411.

The Human Resources Director shall consult with the head of the agency involved and other qualified individuals in the preparation of each of its examinations.

Other policies and rules governing entry into, and change of status within, the classified service shall be prepared by the Human Resources Director and shall become effective upon ratification by the Commission and upon the filing of a written copy with the City Clerk. However, no person seeking to enter the classified service who has taken an examination and been placed on a register of applicants eligible for employment may be passed over in favor of an applicant with a lower examination score unless the head of the agency involved files with the commission written reasons for that action, acceptable to the Commission.

**Sec. 6-411. Validation.**

To the maximum extent possible, the City shall use professionally developed examinations, supported by empirical data demonstrating that the examination is predictive of, or significantly related to, important elements of work behavior of the position or positions for which applicants are being evaluated.

An examinee may challenge any part of any examination on the grounds that it does not conform to the requirements of this chapter or departmental policies or rules, but the Civil Service Commission may grant relief only if it finds that there is no clear and convincing evidence of validity for the examination or part being challenged.

**Sec. 6-412. Recruitment and Advancement.**

The Human Resources Director shall prepare and carry out policies for the recruitment of capable persons for employment by the City and for employee advancement.

These policies shall be filed with the City Clerk and shall be a public record. They shall become effective thirty (30) days after filing, except that, within the thirty (30) day period, the commission may review those policies and, after giving the Human Resources Director a full hearing, may make changes if it finds upon clear and convincing evidence that the policies are contrary to the good of the service.

**Sec. 6-413. Employee Grievances.**

The Civil Service Commission shall, by rule, provide a procedure for the final resolution of any grievance brought by or against a classified employee of the city. Any grievances filed with the Commission under the procedure shall be finally determined within sixty (60) days after filing, unless the time is extended by agreement of the parties.

If a grievance is not settled, the aggrieved employee may file, within ten (10) calendar days, an appeal with the Commission. The employee and the Commission shall attempt to agree on a hearing officer from among not fewer than three (3) individuals proposed by the Commission. If the employee and the Commission are unable to agree, they shall request a recognized arbitration association as designated by ordinance to propose the names of five (5) persons who could act independently and impartially as hearing officer in the matter. In the presence of an officer authorized to take oaths, each side, acting in turn with the employee beginning, shall indicate a name to be struck with those proposed until both sides have struck two (2) names. The person whose name then remains shall be the hearing officer.

A hearing shall be held within thirty (30) calendar days after filing of an appeal. The hearing officer shall file a report of the decision, setting forth findings of fact, conclusions of law, and recommendations, within thirty (30) calendar days of the hearing which is subject to review by the commission.

Any rule or policy under this section becomes effective in accordance with section 2-111.

**Sec. 6-414. Jurisdiction.**

The Commission procedure shall be exclusive for classified employees not covered by a collective bargaining contract.

A classified employee covered by a collective bargaining contract containing a procedure providing for a final and enforceable resolution of a grievance shall, unless the contract procedure is made exclusive, elect to use either the Commission procedure or the contract procedure, but may not use both.

A classified employee covered by a collective bargaining contract containing a grievance procedure that does not result in a final and enforceable resolution of the grievance may, if the collective bargaining contract so provides, pursue the contract procedure and then file under the Commission procedure.

**Sec. 6-415. Payrolls.**

The Human Resources Department shall certify that the classified employees named in payroll vouchers are employed in accordance with this chapter and departmental policies and rules.

No officer shall make or approve or take any part in making or approving any payment to any classified employee unless the payroll voucher bears the certification of the Human Resources Department.

Any sum knowingly or willfully paid contrary to this chapter or any departmental policy or rule may be recovered in an action brought by any person from any officer who made or approved the payment. All moneys recovered shall be paid into the city treasury. Any person may bring a suit to restrain an officer from making any payment contrary to this chapter, or any departmental rule, regulation or order.

If the Commission finds that the name of any classified employee has been omitted from any payroll, the agency involved shall correct the payroll and the classified employee shall be paid as directed by the Commission.

**Sec. 6-416. Residence.**

Except as otherwise provided by law, the City may, by ordinance, establish residency requirements for city employment.

**Sec. 6-417. Classified Service.**

The classified service of the City shall consist of all employments in the city service except:

1. Elective officers;
2. Persons holding appointments under this Charter;
3. Persons employed to make or conduct a temporary or special inquiry, investigation, or examination on behalf of the City;
4. Others exempted by this Charter.

**Sec. 6-418. Transfers and Promotions to Exempt Positions.**

A person holding a position in the classified service may enter the exempt service, but may not be discharged therefrom, except by restoration to a classified position in accordance with rules of the Commission.

**Sec. 6-419. Consolidation of Entities.**

If any City activity or agency is taken over by another unit of government, the commission shall prepare the city's payroll history record of all classified employees involved and send that record to the governmental unit. If, after the merger, the service of any such employee is discontinued for reasons other than misconduct or delinquency, the person's name shall be placed on an appropriate re-employment list in accordance with departmental rules.

If an activity of another private or public organization is taken over by the City, an employee who has held a position in the activity continuously for three (3) years before its merger with the City may retain the position. An employee who has held a position in the activity for less than three (3) but more than one (1) year before its merger with the City must take a departmental qualifying examination for the position. If the employee does not pass a required qualifying examination or if an employee has held a position in the activity for less than one (1) year before its merger with the City and is not selected to retain the position under the procedure of section 6-410, the employee shall be dismissed within thirty (30) days after the establishment of a register of eligibles for the position.

# ARTICLE 6.
# THE EXECUTIVE BRANCH: STAFF DEPARTMENTS
## CHAPTER 5. BUILDINGS, SAFETY ENGINEERING and ENVIRONMENTAL DEPARTMENT

**Sec. 6-501. Buildings, Safety Engineering and Environmental Department.**

The Buildings, Safety Engineering and Environmental Department is headed by the Director of Building, Safety Engineering and Environmental.

**Sec. 6-502. General Purpose.**

The purpose of this chapter is to conserve and protect the natural resources of the City of Detroit in the interests of the health, safety and welfare of the people, to promote improved social and economic conditions in the city and to protect limited environmental resources for the future benefit of city inhabitants.

**Sec. 6-503. Powers and Duties.**

The Buildings, Safety Engineering and Environmental Department shall:

1. Develop and implement a coordinated and comprehensive environmental policy for the City of Detroit;

2. Administer, enforce, manage and coordinate compliance by the City of Detroit with federal, state and local environmental laws and regulations;

3. Coordinate environmental programs for protection and conservation of land, water and air resources;

4. Develop and implement programs for response to emergency conditions which pose an immediate danger to health and safety to the people of Detroit or to the City's environment;

5. Advise, consult and cooperate with agencies of the federal, state and local governments in furtherance of the purposes of this chapter;

6. Develop and coordinate policy, programs and procedures for remediation, redevelopment and reuse of contaminated land sites in the City of Detroit;

7. Develop and coordinate policy, programs and procedures to encourage and promote innovative and competitively viable sustainable economic development in the City of Detroit consistent with protection of the environment;

8. Provide technical support and assistance to other city departments in environmental matters, including response to federal, state and local governmental enforcement activities; qualification for eligible grant moneys, etc.;

9. Develop plans and proposals for joint cooperative investigation and research with the public and with private agencies and organizations on methods for eliminating or reducing land, air and water pollution;

10. Collect and disseminate appropriate educational literature and information, and otherwise promote educational programs for the purposes of advising the general public of the necessity and methods for pollution prevention, securing public cooperation in pollution prevention

measures and increasing public awareness of the importance of environmental protection and conservation of natural resources;

11. Provide consultation with City departments regarding the implementation of any policies or programs concerning alternative and renewable energy;

12. Administer and enforce all laws, ordinances and regulations relating to the use of land ("zoning"); and

13. Except as otherwise provided by law or this Charter, grant, revoke, or approve transfers of all licenses and permits required by any law or ordinance for any business and collect fees for licenses and permits.

14. Do any and all other acts which may be necessary for the implementation of the powers and duties conferred on the department under this chapter.

## Sec. 6-504. Conservation.

The Buildings, Safety Engineering and Environmental Department shall develop programs for the protection and conservation of natural resources within the City of Detroit.

## Sec. 6-505. Environmental Legislation.

The Buildings, Safety Engineering and Environmental Department shall propose new ordinances, laws and regulations to the Mayor, City Council and other governmental entities as appropriate for improvement of the quality of the environment and promotion of the mission of the Department.

## Sec. 6-506. Applications Filed Under Zoning Law.

All applications for permits, grants, variances, waivers or exceptions of any kind under zoning laws, ordinances and regulations shall be made to the Department.

## Sec. 6-507. Duty Under Other Regulatory Laws.

To the extent practicable, the Department shall also administer and enforce all other laws and ordinances regulating the development, maintenance and use of real property in the city.

## Sec. 6-508. One-Stop Service.

To the extent practicable, the Department shall, in cooperation with other agencies whose permission is required prior to development, establish a procedure and application form under which an applicant for development permission may obtain, through the Department, all necessary permission.

## Sec. 6-509. Green Initiatives and Technologies.

1. The Department shall study the matter and prepare and implement a long-term strategic plan ("Green Initiatives and Sustainable Technologies Plan" or "GIST Plan") for the establishment, use and support of green initiatives, technologies and businesses, utilizing public and private partners. The Mayor shall commission a public study ("Study and Report on Green Initiatives and Sustainable Technologies" or "SRGIST") to determine the feasibility and requirements for engaging in and supporting this activity in the City of Detroit and areas outside the City of Detroit for the benefit of residents. The SRGIST shall be initiated within three (3) months of the effective

date of this Charter, completed within one (1) year of its commencement and publicly disseminated upon its completion.

2. Within six (6) months after completion of the SRGIST the Mayor shall prepare the GIST Plan and submit it to City Council for approval before it may be implemented. City Council may hold public hearings prior to taking formal action on the GIST Plan, and if approved shall create any ordinances required to achieve the GIST Plan's objectives

3. The GIST Plan shall be comprehensive and may include solar, wind, thermal and other forms of alternative and renewable energy production and uses; alternative fuels; or other sustainable technologies and endeavors; green public works, construction and building programs; and any other green initiative or technology considered feasible. The GIST Plan shall incorporate green initiatives and technologies within the workplace and for use with City owned vehicles and property, real and personal. The GIST Plan may include methods and support for citizen initiated green initiatives and sustainable technology uses.

4. The GIST Plan shall be reviewed yearly by the department and revised as necessary. All revisions to the GIST Plan must be approved by City Council, who shall implement all ordinances necessary to achieve the objectives of the revised GIST Plan.

5. The Mayor may create advisory commissions under section 7-103 to assist with the development, monitoring, implementation and revision of the GIST Plan.

# ARTICLE 7.
## THE EXECUTIVE BRANCH:
## PROGRAMS, SERVICES and ACTIVITIES
### CHAPTER 1. GENERAL PROVISIONS

**Sec. 7-101. Existing Programs, Services and Activities.**

When this Charter takes effect, all executive and administrative agencies and functions existing under the 1997 Charter or by ordinance or resolution and not superseded by this Charter shall continue with the force and effect of ordinance until superseded by action taken under section 7-102 or 7-104.

**Sec. 7-102. Assignment of Authorized Function.**

The Mayor shall prepare an executive organization plan which, consistent with law and this Charter, sets forth all agencies of the executive branch and assigns authorized programs, services and activities to each agency.

The plan as proposed by the Mayor shall be filed with the City Council and made public. The City Council shall study and conduct hearings on the plan and may request the Mayor to make modifications in it. Sixty (60) business days after the filing of the plan with the City Council, it shall become effective, with such modifications as are accepted by the Mayor, unless disapproved by a resolution adopted by a two-thirds (2/3) majority of City Council members serving. All amendments to the plan must originate with the Mayor and are subject to the same procedure in taking effect.

The plan shall include the office of Mayor, the five departments created by Article 6, and all departments or functions created by Article 7 or continued by section 7-101. However, the plan may not provide for more than thirty-six (36) departments, exclusive of any department organized under specific statutory authority, unless authority for a greater number is granted under section 7-104.

The Mayor may not reassign or combine the functions of staff departments, but may, except as to departments created under Chapters 3, 6, 7, 8, 12 and 13 of this Article, assign any of the functions of an operating department to a staff department, reassign the functions of one (1) operating department to another operating department or combine operating departments.

**Sec. 7-103. Advisory Commissions.**

The Mayor may establish by executive order, any commission of members of the public to advise the Mayor or any Director of an Executive Branch department, in the determination of its policies and budgets and the implementation of its programs, services or activities. Appointments to all advisory commissions shall be made by, and members serve at the pleasure of, the Mayor.

The Mayor shall endeavor to make City-wide commissions as representative of the entire City as possible and any commission established to advise the Mayor or any department Director shall be as representative of the People being served as possible. All members of advisory commissions shall be residents of the City of Detroit, unless the Mayor expressly states in the executive order reasons for allowing non-residents to serve.

The executive order may provide for the advisory commission to complete its work within a specific period of time. In the event that the executive order does not do so, the Mayor may terminate the advisory commission through rescission of the executive order that established the commission.

**Sec. 7-104. Change In Number of Authorized Functions.**

Subject to the general provisions of this Charter, the City may, by ordinance, increase the number of departments of the executive branch beyond the number contemplated by this Charter.

The City may, by ordinance, authorize additional programs, services, or activities; or discontinue authorized programs, services, or activities.

# ARTICLE 7.
## THE EXECUTIVE BRANCH:
## PROGRAMS, SERVICES and ACTIVITIES
## CHAPTER 2. RESPONSIBILITIES in HEALTH and SANITATION

**Sec. 7-201. Health.**

The City is responsible for providing an adequate level of health services, both physical and mental, to all its residents.

An advisory commission for health, composed of at least seven (7) members, shall be created under section 7-103. Seven (7) of the members shall be appointed, one (1) each from the non at-large districts.

The Executive branch shall prepare an annual comprehensive health report on the state of the health of the City ("Report on the State of the Health of the City of Detroit"), which shall be presented to City Council and published on the City of Detroit's website. City Council shall hold public hearings on the report within thirty (30) days of its receipt. The Commission shall provide assistance in developing the contents of the report.

The annual report shall be completed by August 1 of each year.

**Sec. 7-202. Sanitation.**

The City is responsible for collecting and disposing of wastes in the manner least harmful to the environment.

# ARTICLE 7.
# THE EXECUTIVE BRANCH:
# PROGRAMS, SERVICES and ACTIVITIES
## CHAPTER 3. ARTS

**Sec. 7-301. Department.**

The Arts Department is headed by a seven (7) member Commission. The members of the Commission shall be appointed by and serve at the pleasure of the Mayor.

The term of membership on the Commission is four (4) years, and not more than two (2) members' terms expire each year.

The Commission shall appoint, with the approval of the Mayor, the Arts Director and a Deputy Arts Director. The Director and the Deputy Director serve at the pleasure of the commission.

The Arts Department shall maintain and operate the Detroit Institute of Arts directly or pursuant to an operating agreement.

# ARTICLE 7.
# THE EXECUTIVE BRANCH:
# PROGRAMS, SERVICES and ACTIVITIES
## CHAPTER 4. PUBLIC WORKS

**Sec. 7-401. Department.**

The Department of Public Works shall:

1. Provide for the management and collection of garbage and debris.

2. Except as otherwise provided by law or Charter, in cooperation with the Buildings, Safety Engineering and Environment Department, enforce the environmental ordinances of the city, relating to this chapter.

3. Provide for the construction, maintenance, demolition and engineering design of streets, alleys and public buildings.

4. Plan, establish and maintain systems and devices for safe and expeditious regulation and control of traffic within the City.

5. As provided by law or ordinance, perform other functions necessary to improve the quality of the environment.

**Sec. 7-402. Sidewalk Maintenance.**

The Department of Public Works may repair sidewalks after first giving the owner, occupant, or party in interest of the premises in front of or adjacent to which such sidewalk or driveway is located notice and an opportunity to repair as prescribed by ordinance. Any such ordinance adopted shall provide for appropriate hardship protections for the abutting property owner.

The cost of any sidewalk repairs performed by the Department of Public Works, with interest, shall be collected from the owner, occupant, or party in interest of the premises in front of or adjacent to which such sidewalk or driveway is located through a special assessment or shall, not less than one (1) year following the date on which sidewalk repairs performed by the Department of Public Works were completed, at the election of the public works department, be a lien of the city upon the premises in front of or adjacent to which such sidewalk or driveway is located. The procedures for the recovery of the cost of sidewalk repairs performed by the Department of Public Works shall be prescribed by ordinance. The decision by the Department of Public Works to repair a defective sidewalk shall not release the owner from responsibility or liability for that condition.

**Sec. 7-403. Recycling.**

The Department of Public Works shall prepare, implement and update as necessary a comprehensive city-wide Recycling Plan ("Plan") for the City of Detroit that provides for the capture of the City's waste stream prior to disposal. The Plan shall be submitted to City Council for approval before implementation. City Council shall enact any ordinances necessary to achieve the objectives of the Plan and this section.

The Plan shall provide for and encourage materials recovery, composting and other methods of recycling. In determining any recycling methods for inclusion in the Plan, the Department shall consider all relevant factors, including cost. The recycling methods contained in the Plan shall be regularly assessed and evaluated for the purpose of continued inclusion in the Plan, and the Plan shall be periodically updated to reflect the growth and change in recycling methods. All Plan revisions must be approved by City Council

prior to implementation. The Department shall annually provide a comprehensive written update to City Council on the Plan's activities, programs, accomplishments and challenges, the Department's effectiveness in meeting the objectives of the Plan and any ordinances or resources required to effectuate the Plan.

Any recycling efforts or programs of the Department existing at the time of the adoption of this Charter may be incorporated into the Plan.

# ARTICLE 7.
# THE EXECUTIVE BRANCH:
# PROGRAMS, SERVICES and ACTIVITIES
## CHAPTER 5. FIRE

**Sec. 7-501. Department.**

The Fire Department is headed by the Fire Commissioner.

The Fire Commissioner and the Deputy Fire Commissioner shall be appointed by and serve at the pleasure the Mayor.

**Sec. 7-502. Fire Department Divisions.**

Subject to the approval of the Mayor, the Fire Commissioner shall appoint a Chief of the Fire Department from the Board of Fire Chiefs of the Fire Fighting Division. The Chief serves at the pleasure of the Fire Commissioner
.
The Chief shall serve as the Director of Operations for the Fire Fighting Division.

Two (2) Deputy Fire Chiefs shall be appointed by the Fire Commissioner from the ranks of the Assistant Chiefs and serve at the pleasure of the Fire Commissioner.

A Fire Marshal shall be appointed by and serve at the pleasure of the Fire Commissioner.

**Sec. 7-503. Duties.**

The Fire Department shall protect life and property from fire and other dangerous conditions requiring their expertise and, as required by Charter or ordinance, enforce all laws, ordinances and regulations relating to fire prevention and safety within the City of Detroit.

**Sec. 7-504. Fire Marshal.**

The Fire Marshal shall inquire into the origin of all fires resulting in property loss and shall make a written report concerning every such fire to the Fire Commissioner, the Chief of Police, the Wayne County prosecuting attorney, the Detroit Board of Underwriters and any person legitimately interested in the matter.

The Fire Marshal shall also make such inspection of buildings and other places as is necessary for enforcement of the fire prevention ordinances of the City.

**Sec. 7-505. Advisory Commission.**

A seven (7) member advisory commission may be appointed by the Mayor. Four (4) members shall be appointed by the Mayor and three (3) shall be appointed by the Mayor from a list of four (4) names submitted by the City Council. Commissioners shall serve staggered three (3) year terms and shall serve at the pleasure of the Mayor. The Mayor shall make every effort to appoint persons with a minimum of five

(5) years experience in one or more of the following areas: fire fighting, fire prevention, emergency medical response, homeland security, emergency crisis management, financial management, policy making and/or public administration. All meetings shall be public and held in compliance with applicable laws. Commissioners shall be residents of the City of Detroit.

**Sec. 7-506. Promotions.**

1.   The Fire Commissioner shall make all promotions to non-supervisory positions within the classified service of the Department. The employee having served in the longest period in any position shall be advanced to fill any vacancy in the next highest position, if that person has, in the judgment of the Fire Commissioner, the qualifications for the higher position. Qualifications shall be reasonable and non-competitive.

2.   Promotions within the classified service of the Department to the supervisory positions of sergeant and above shall be determined by qualifications based on length of service in the next lower position and reasonable and objective evaluation of such factors as ability, skill, experience, knowledge and training.

# ARTICLE 7.
## THE EXECUTIVE BRANCH:
## PROGRAMS, SERVICES and ACTIVITIES
### CHAPTER 6. HISTORICAL

**Sec. 7-601. Department.**

The Historical Department is headed by a thirteen (13) member commission. The members of the commission shall be appointed by and serve at the pleasure of the Mayor. Seven (7) of the members shall be appointed, one (1) each, from the City Council election districts, exclusive of the at-large district. The term of membership on the commission is four (4) years, and not more than three (3) members' terms expire each year.

The commission shall appoint, with the approval of the Mayor, a Museums Director and a Deputy Museums Director. The Director and the Deputy Director serve at the pleasure of the commission. The Historical Department shall maintain and operate the City's historical museums directly or pursuant to an operating agreement.

# ARTICLE 7.
# THE EXECUTIVE BRANCH:
# PROGRAMS, SERVICES and ACTIVITIES
## CHAPTER 7. HUMAN RIGHTS

**Sec. 7-701. Department.**

The Human Rights Department is headed by the Human Rights Director. The Director and a Deputy Director shall be appointed by the Mayor to four (4) year terms beginning on March first (1st) after the beginning of the Mayor's term. The Mayor may remove the Director or Deputy Director for cause. However, the Director and Deputy Director may not be appointed or removed without the approval of the Human Rights Commission.

**Sec. 7-702. Human Rights Commission.**

An eleven (11) member Human Rights Commission shall be appointed by the Mayor, with the approval of the City Council. A member must be a resident of the City. The Commission shall be representative of the total community. Seven (7) members shall be appointed from the non at-large districts.
.
The term of membership on the Commission is three (3) years, and not more than four (4) member's terms expire each year. The members of the Commission may be removed by the Mayor for cause.

**Sec. 7-703. Budget.**

The City shall make an annual appropriation for the effective operation of the department.

**Sec. 7-704. Duties.**

Subject to policies established by the Commission, the Human Rights Department shall:

1. Investigate complaints of unlawful discrimination against any person because of religion, race, color, national origin, age, sex, sexual orientation, height, weight, familial status, marital status, disability or any status protected by the laws of the State of Michigan or the United States of America, in violation of any ordinance or any law within the city's jurisdiction, and secure equal protection of civil rights without discrimination. The city shall implement this section by ordinance. The Human Rights Department may cooperate with other civil rights and enforcement agencies in the resolution of complaints, where cooperation is requested or where jurisdiction is concurrent;

2. Secure the rights of citizens to service from city government without discrimination; and

3. Endeavor to increase mutual understanding among the residents of the community, to promote good will, and to work cooperatively with other agencies of government, community groups and organizations, and other persons to eliminate discrimination and the results of past discrimination.

**Sec. 7-705. Powers.**

The Department shall, with the consent of the commission, promulgate rules for its own procedures.

The Department Director may hold hearings, subpoena witnesses, administer oaths, take testimony, require the production of evidence, and issue appropriate orders, including the dismissal of a complaint. To enforce subpoena or order for production of evidence or other order to impose any penalty prescribed for failure to obey a subpoena or order, the Department Director shall apply to the appropriate court.

The Department Director may delegate the powers to hold hearings, administer oaths, and take testimony.

**Sec. 7-706. Appeals.**

Appeals from final orders of the Department in all matters, except decisions of ineligibility to do business with the city, shall be taken to the court having jurisdiction provided by law. Appeals by persons or firms aggrieved by decisions of ineligibility to do business with the city may be heard by the City Council or such other appellate body as may be provided by ordinance under section 9-302.

**Sec. 7-707. Remedies Cumulative.**

This chapter shall not be construed to diminish the right of any party to direct any immediate legal or equitable remedies in any court or other tribunal.

# ARTICLE 7.
# THE EXECUTIVE BRANCH:
# PROGRAMS, SERVICES and ACTIVITIES
## CHAPTER 8. POLICE

**Sec. 7-801. Police Department.**

The Police Department shall preserve the public peace, prevent crime, arrest offenders, protect the rights of persons and property, guard the public health, preserve order, and enforce laws of the State of Michigan and the United States and the ordinances of the City of Detroit.

**Sec. 7-802. Board of Police Commissioners.**

The Board of Police Commissioners has supervisory control and oversight of the Police Department as set forth in this Chapter. The Board of Police Commissioners is composed of eleven (11) members, seven of whom shall be elected from each non at-large district. Four (4) members of the Board shall be appointed by the Mayor, subject to the approval of the City Council. However, if the City Council does not disapprove an appointment within thirty (30) days, an appointment is confirmed. Appointed members shall serve a term of five (5) years, and not more than one (1) member's term expires each year. The Mayor shall not remove appointed members of the Board except for cause. Vacancies in positions held by appointed members shall be filled by the Mayor for the unexpired term, in the same manner as the initial appointment. All members of the Board must be residents of the City.

The Board shall elect a chairperson annually. A member of the Board may not serve consecutive terms as chairman, nor may an appointed person serve more than five (5) years consecutively as a member of the Board. The Board shall meet at the call of its chairperson, but shall meet at least once each week and may recess during Thanksgiving, Christmas and New Year holidays. All meetings shall be held in accordance with the Michigan Open Meetings Act. No appointed member of the Board shall have been an employee or elective or appointive officer of the city within three (3) years prior to appointment or while serving as a member of the Board. Unless required by state law, elected members shall not be entitled to salaries, retirement benefits, health benefits or other fringe benefits. Appointed members, and elected members not entitled to compensation by state law, may receive by ordinance reimbursement for parking, mileage and other reasonable expenses. All appointed Commissioners serving at the time of the effective date of this Charter shall continue in their office until their term expires or office becomes vacant.

**Sec. 7-803. Duties of the Board of Police Commissioners.**

The Board shall:

1.  In consultation with the Chief of Police, and with the approval of the Mayor establish policies, rules and regulations;

2.  Review and approve the departmental budget before its submission to the Mayor;

3.  Receive and resolve, as provided in this chapter, any complaint concerning the operation of the Police Department and forward all allegations of criminality to the appropriate internal or external law enforcement agency for further investigation;

4.   Act as final authority in imposing or reviewing discipline of employees of the department;

5.   Make an annual report to the Mayor, the City Council, and the public of the department's activities during the previous year, including the handling of crime and complaints, and of future plans.

The Board may subpoena witnesses, administer oaths, take testimony, and require the production of evidence. To enforce a subpoena or order for production of evidence or to impose any penalty prescribed for failure to obey a subpoena or order, the Board shall apply to the appropriate court. The Board may delegate in writing to a member of its staff the powers to administer oaths and take testimony. A delegation is revocable at the will of the Board and does not prevent exercise of any power by the Board.

## Sec. 7-804. Staff.

1.     **Secretary to the Board.**
The Board shall appoint a Board Secretary, who serves at its pleasure. The secretary shall not have been an employee or elective or appointive officer of the City within three (3) years prior to appointment. The secretary shall attend board meetings.

2.     **Investigative Staff.**
The Board shall also appoint a Chief Investigator and such additional staff of investigators as it deems necessary. The Chief Investigator shall not have been an employee or elective or appointive officer of the city within three (3) years prior to appointment. Investigators serve at the Board's pleasure. They must possess skills and experience necessary to complete investigative work.

3.     **Other Staff.**
The Board may hire, in accordance with Article 6, Chapter 4, such additional staff as is necessary to carry out its duties. All members of the staff are under the direction of the Board, and the Chief of Police has no authority over any member of the staff.

## Sec. 7-805. Chief of Police.

The Board of Police Commissioners shall conduct a professional search with a reputable and qualified executive search firm or other equally qualified entity to identify candidates for Chief of Police. The Mayor shall appoint, subject to approval by City Council, a Chief of Police from a list of qualified candidates provided by the Board of Police Commissioners. If City Council does not disapprove of the appointment within thirty (30) days, it is deemed confirmed. The Chief of Police serves at the pleasure of the Mayor. The Chief of Police shall be skilled and experienced in police administration or law enforcement and as the head official in charge of the department, the Chief of Police shall be responsible for its day-to-day operations and administration.

## Sec. 7-806. Duties of the Chief of Police.

1.   The Chief of Police is the Chief Executive Officer of the police department and shall administer the department consistent with the policies, rules, and regulations established by the Board and shall organize the department with the approval of the Board;

2.   Recommend rules, regulations, and procedures to the Board for its approval;

3.   Prepare the annual budget for the police department;

4.   Hire, promote, evaluate, commend, transfer, and discipline employees of the department; have authority to suspend and discharge employees of the department under section 7-807; file complaints against employees with the Board Secretary; and direct employees in the performance of their duties;

5.  Except as otherwise provided by the Board, keep and control all property, books, records, and equipment belonging to the department or held by the department as evidence;

6.  Submit to the Board an annual report of the operations of the department for forwarding to the Mayor, the City Council, and the public;

7.  Present annually a police department operations improvement plan. The plan shall be filed with the City Clerk, distributed to the Mayor and City Council, and be a public record;

8.  Exercise such other powers as conferred by the Board;

9.  Attend all meetings of the Board of Police Commissioners, to the extent practicable, and speak on any issue, but may not vote.

The Chief, with the consent of the Board, may appoint necessary Deputy Chiefs.

### Sec. 7-807. Discipline.

1.      Manual.
The Board, in consultation with the Chief of Police, shall adopt a manual of rules, regulations and procedures. The manual shall define categories of major and minor offenses and shall set forth the maximum and minimum penalties for each offense.

2.      Summary Discipline.
The Chief of Police may implement summary discipline for a minor offense. A disciplined employee may request the Board of Police Commissioners to set aside the summary discipline and reinstate any loss of pay.

3.      General Discipline.
The Chief of Police may discharge or indefinitely suspend any employee for a major offense. When an employee is discharged or indefinitely suspended or other serious charges are made and the employee contests the discharge, suspension or charge, the matter shall be referred to a trial board. The procedure for trial boards shall be established by the department's rules and regulations. A member of a trial board must hold at least the rank of inspector or equivalent grade. All trial board proceedings shall be public. The decision of a trial board may be appealed to the Board of Police Commissioners.

Instead of hearing an appeal itself, the Board of Police Commissioners may appoint a fact finder as provided in section 7-809. The fact finder shall conduct a hearing and report findings of fact to the Board. The Board's disposition of the matter following such a hearing shall be final.

An employee charged with a major offense is presumed innocent and shall not forfeit any pay or seniority rights pending final action by the Board of Police Commissioners except with the concurrence of a two-third (2/3) majority of members of the Board of Police Commissioners.

### Sec. 7-808. Complaints.

Complaints concerning the Police Department filed anywhere in the Department shall be forwarded immediately to the Board Secretary. Copies of the complaint shall be made available to each member of the Board, the Chief Investigator, and the Chief of Police. The Chief Investigator for the Board shall investigate a complaint immediately and file a report of findings with the Board within sixty (60) days. Within thirty (30) days of receipt of a complaint by the Board Secretary, the Board shall send written communication informing the complainant that their complaint has been received, the guidelines on how the complaint will be handled, and the timeline on when the complainant shall receive a disposition on their complaint.

The Board Secretary shall keep and post on-line, a public docket of complaints and the disposition of each complaint after investigation. The docket shall not contain information which identifies or that can reasonably lead to identification of the parties.

## Sec. 7-809. Resolution of Complaints.

If a complaint is not resolved as a result of investigation to the satisfaction of the complainant, the respondent employee, or a member of the Board of Police Commissioners, either the complainant, the respondent employee, or the Board member may request the board to hear or review the matter. The Board may, at its option, when it determines that a hearing or review is warranted by the evidence, hear or review the matter itself or refer the matter to a fact finder.

When a matter is referred to fact finding, the secretary to the board and the respondent employee shall attempt to agree upon a person to act as a fact finder. The fact finder must be an attorney. If the parties fail to agree on a fact finder, they shall request a recognized arbitration association as designated by ordinance, to propose the names of five (5) attorneys who could act independently and impartially as a fact finder in the matter. In the presence of a person authorized to take oaths, each side, acting in turn with the employee beginning, shall indicate a name to be struck from those proposed until both sides have struck two (2) names. The person whose name then remains is the fact finder. The fact finder, in the conduct of the hearing, may subpoena witnesses, administer oaths, take testimony, and require the production of evidence. To enforce a subpoena or order for production of evidence or to impose any penalty prescribed for failure to obey a subpoena or order, the fact finder shall apply to the appropriate court. The cost of the fact finder shall be borne by the city.

After a hearing, the fact finder shall, within thirty (30) days, submit findings of fact to the Board. The Board, upon receipt of the report of the fact finder shall, within thirty (30) days, determine any discipline to be imposed. It shall then make the report and its action public. The decision of the Board is final.

Any employee against whom a complaint is filed is presumed innocent and shall not forfeit any pay or seniority rights pending final action by the Board, except with the concurrence of a two-third (2/3) majority of members of the Board. All pleadings filed and all hearings before the Board and the fact finder shall be public. The parties to any hearing are the complainant and the respondent employee. Each has a right to counsel. The complainant's case may be presented by the complainant or complainant's counsel. Any probative evidence may be admitted.

## Sec. 7-810. Division of Police Personnel.

The Division of Police Personnel is headed by a Director of Police Personnel appointed by the Board. The Director of Police Personnel must be a civilian and serves at the pleasure of the Board.

## Sec. 7-811. Deputy Director.

The Director of Police Personnel shall appoint a Deputy who serves at the pleasure of the Director.

## Sec. 7-812. Recruitment and Entry into Service.

Applicants for employment as police officers with the Department must enter the police service in accordance with section 7-813. Applicants for civilian employment with the department must enter the classified service as provided in Article 6, Chapter 4 of this Charter.

**Sec. 7-813. Powers and Duties.**

With the concurrence of the Chief of Police, the Director of Police Personnel shall recruit applicants for service as Police Officers with the Department, prepare and administer examinations for hiring police officers, and prepare and conduct examinations for promotion within the department.

Lateral entry into employment with the Department as a police officer is permitted in accordance with the rules, regulations, and procedures established by the Board.

**Sec. 7-814. Promotions.**

The Chief of Police shall make all promotions within the department. All promotions shall be with the approval of the Board.

Promotions shall be made on the basis of competitive examinations administered by the Director of Police Personnel except for positions above the rank of lieutenant or its equivalent. All examinations will be prepared by the Division of Police Personnel with the concurrence of the Board. No person who has taken an examination and has been placed on a register of employees eligible for promotion may be passed over in favor of an employee with a lower examination score.

**Sec. 7-815. Examinations.**

All examinations prepared and administered by the Director of Police Personnel must be validated as provided in section 6-411.

**Sec. 7-816. Employees.**

Employees of the Department shall receive equal pay for the same or similar work and have an equal opportunity for promotion.

**Sec. 7-817. Police Officers Employed by Governmental and Educational Institutions.**

The Chief of Police may, upon the annual application of governmental or educational institution showing a sufficient necessity, appoint police officers at the charge and expense of the institution making the application, to do duty at any place designated by the chief. These police officers hold office at the pleasure of the Chief and are subject to the policies, rules, regulation, and discipline of the department. They shall wear such dress and emblems as the Chief prescribes. They possess, as conservators of the peace, all powers and privileges and may perform all duties of police officers.

**Sec. 7-818. Police Reserves.**

The Chief of Police may appoint persons to serve as Police Reserves and set qualifications for entry into the reserves. Police Reserves when called to duty shall possess such powers as designated by the chief, including the powers of peace officers. Training standards shall be set by the chief. Unless there exists an officially declared emergency, duty shall be voluntary. The use of reserves shall be in accordance with rules and regulations approved by the Board and the Mayor.

# ARTICLE 7.
# THE EXECUTIVE BRANCH:
# PROGRAMS, SERVICES and ACTIVITIES
## CHAPTER 9. PUBLIC LIGHTING

**Sec. 7-901. Department.**

The Public Lighting Department is headed by the Public Lighting Director.

**Sec. 7-902. Qualifications.**
No person shall head the Public Lighting Department nor serve as Deputy Director, unless that person is a licensed mechanical or electrical engineer.

**Sec. 7-903. Commission.**

A seven (7) member Public Lighting Commission shall be appointed by and serve at the pleasure of the Mayor. The Commission shall consist of seven (7) members, one (1) each appointed from non at-large districts. A member must be a resident of the City. The term of membership is five (5) years. No more than two (2) terms expire each year. The Commission shall advise in the operation of the Public Lighting Department.

**Sec. 7-904. Powers and Duties.**

The Department shall supervise and control all public lighting and public lighting plants and may:

Furnish and sell light, heat and power to any person, firm, division, or corporation within or outside of the city to the extent permitted by law; and

Exercise other powers and perform other duties necessary to carry out its functions.

**Sec. 7-905. Limitations on Sale of Assets.**

The following limitations shall apply relative to public lighting:

The City may not sell or in any way dispose of any property needed to continue the operation of any city owned public utility furnishing lighting, unless approved by a majority of city voters voting on the question at a regular or special election.

The City may not grant any public utility franchise for public lighting which is not subject to revocation at the will of the City Council unless the proposition is first approved by three-fifths (3/5) of city voters voting on the question at a regular or special election.

All contracts, franchises, grants, leases or other forms of transfer in violation of this section shall be void and of no effect against the city.

# ARTICLE 7.
## THE EXECUTIVE BRANCH:
## PROGRAMS, SERVICES and ACTIVITIES
## CHAPTER 10. RECREATION

**Sec. 7-1001. Department.**

The Recreation Department shall operate recreational facilities, offer and carry on organized programs of recreational activities in the city, and, to the extent possible, coordinate all recreational programs and facilities being offered in the City.

**Sec. 7-1002. Advisory Commission.**

An advisory commission for recreation, comprised of not fewer than eight (8) districts, shall be created under section 7-103. Seven (7) of the members shall be appointed, one (1) each, from the non at-large City Council districts.

# ARTICLE 7.
# THE EXECUTIVE BRANCH:
# PROGRAMS, SERVICES and ACTIVITIES
## CHAPTER 11. TRANSPORTATION

**Sec. 7-1101. Department.**

The Transportation Department shall:

1.  Own, maintain, and operate a public transportation system above, on, or below the surface of the ground, or in any combination thereof, utilizing technology known or to be developed;

2.  Operate the system within the city and to a distance outside the City as permitted by law;

3.  Exercise or recommend the exercise of other functions and powers provided by law or ordinance, including the specific powers of the City to finance transportation under sections 8-401, 8-503(4), and 8-602 of the Charter.

**Sec. 7-1102. Advisory Commission.**

An advisory commission for transportation shall be created pursuant to section 7-103. The Commission shall be composed of at least seven (7) members, one selected from each non at-large district.

**Sec. 7-1103. Intelligence Division.**

The Director of the Transportation Department may appoint an Intelligence Division, exempt from Article 6, Chapter 4.

**Sec. 7-1104. Limitations.**

The following limitations shall apply relative to transportation:

The City may not sell or in any way dispose of any property needed to continue the operation of any city-owned public utility furnishing transportation service, unless approved by a majority of city voters voting on the question at a regular or special election.

The City may not grant any public utility franchise for transportation services which is not subject to revocation at the will of the City Council unless the proposition is first approved by three-fifths (3/5) of city voters voting on the question at a regular or special election.

All contracts, franchises, grants, leases or other forms of transfer in violation of this section shall be void and of no effect against the City.

# ARTICLE 7.
# THE EXECUTIVE BRANCH:
# PROGRAMS, SERVICES and ACTIVITIES
## CHAPTER 12. WATER and SEWERAGE

**Sec. 7-1201. Department.**

The Water and Sewerage Department is headed by a seven (7) member board known as the Board of Water Commissioners. The members of the Board shall be appointed by and serve at the pleasure of the Mayor. No member of the Board shall be a City official or employee, or a principal or employee of a contractor of the City. The term of membership on the Board is four (4) years and not more than two (2) terms expire each year.

A member must be a citizen of the United States and a resident of Michigan. At least four (4) members of the Board must be residents of Detroit.

The Board shall appoint, with the approval of the Mayor, a Director and a Deputy Director for the department. The Director and Deputy Director serve at the pleasure of the Board.

**Sec. 7-1202. Powers.**

Under the direction of the Board, the department shall supply water, drainage and sewerage services within and outside of the city.

The Board shall periodically establish equitable rates to be paid:

　　1.　By the owner or occupant of each house or building using water, drainage, or sewerage services; and

　　2.　By any person, municipality, or public or private agency making a wholesale purchase of water, drainage or sewerage services from the City.

Unless otherwise provided by contract or state law, the unpaid charges for water, drainage, and sewerage services, with interest, shall be a lien of the City upon the real property using or receiving them.

The Board may make all necessary adjustments in the collection of water, drainage or sewerage charges. The Board may be given additional authority to establish rates by ordinance.

Upon the request of the Mayor the board shall advise the various agencies of the City on matters involving water resource management.

**Sec. 7-1203. Limitation on Funds.**

All moneys paid into the city treasury from fees collected for water, drainage or sewerage services shall be used exclusively for the payment of expenses incurred in the provision of these services, including the interest of principal of any obligations issued to finance the water supply and sewerage disposal facilities of the city, and shall be kept in separate funds.

**Sec. 7-1204. Limitation on Sale of Assets.**

The following limitations shall apply relative to water and sewerage:

1.      The City shall not sell or in any way dispose of any property needed to continue the operation of any city-owned public utility furnishing water and sewerage service, unless approved by a majority of city voters voting on the question at a regular or special election.

2.      The City shall not grant any public utility franchise for water and sewerage services which is not subject to revocation at the will of the City Council unless the proposition is first approved by three-fifths (3/5) of city voters voting on the question at a regular or special election.

3.      All contracts, franchises, grants, leases or other forms of transfer in violation of this section shall be void and of no effect against the city.

# ARTICLE 7.
## THE EXECUTIVE BRANCH:
## PROGRAMS, SERVICES and ACTIVITIES
## CHAPTER 13. ZOOLOGICAL PARK

**Sec. 7-1301. Department.**

The Zoological Parks department is headed by the Zoological Director. The Zoological Parks Department shall maintain and operate the City's zoological parks directly or pursuant to an operating agreement.

**Sec. 7-1302. Commission.**

The Zoological Parks Commission shall advise the department on general program goals for the zoological parks. The Commission shall consist of five (5) members. The members of the Commission shall be appointed by and serve at the pleasure of the Mayor. The term of membership on the Commission is four (4) years, and not more than two (2) members' terms expire each year.

# ARTICLE 7.
# THE EXECUTIVE BRANCH:
# PROGRAMS, SERVICES AND ACTIVITIES
## CHAPTER 14. TELEVISION CHANNELS

**Sec. 7-1401. Cable Television Channels.**

The City of Detroit shall operate and maintain its television channels for the benefit of the citizens of the City of Detroit. These cable television channels are public assets. Any ordinances related to the City's cable television channels shall not be inconsistent with this chapter.

**Sec. 7-1402. Executive Oversight, Operation and Management.**

The Executive branch shall be responsible for the management, operation and oversight of the City's television channels.

**Sec. 7-1403. Channel Use.**

At least one channel (Government Channel) shall be dedicated to the broadcast of the official affairs, programs and projects of the branches and units of City government, including the Legislative branch, Executive branch and Office of City Clerk. All official meetings of the City Council shall be broadcast in their entirety, and where feasible in a live format.

At least one channel shall be dedicated to educational, cultural and arts programming, which shall include programming received from the K-12 public school systems within the jurisdiction of the City of Detroit and may include programming from not-for profit organizations and public universities, community colleges or other institutions of higher learning, public or private.

**Sec. 7-1404. Limitations**

The following limitations shall apply relative to television channels:

1.      The City of Detroit shall not sell or in any way dispose of any property needed to continue the operation of any television channel, unless approved by a majority of city voters voting on the question at a regular or special election.

2.      The City of Detroit shall not grant any franchise for its television channels which is not subject to revocation at the will of the City Council unless the proposition is first approved by three-fifths (3/5) of city voters voting on the question at a regular or special election.

All contracts, franchises, grants, leases or other forms of transfer in violation of this section shall be void and of no effect against the City of Detroit.

# ARTICLE 7.5.
# INDEPENDENT DEPARTMENTS and OFFICES
## CHAPTER 1. AUDITOR GENERAL

**Sec. 7.5-101. Auditor General.**

The Auditor General shall be appointed by a majority of City Council members serving. The Auditor General shall be a certified public accountant.

**Sec. 7.5-102. Deputy Auditor General.**

The Auditor General shall appoint a Deputy who during periods of the Auditor General's absence or temporary disability or when the position is vacant shall exercise the powers and perform the duties of the Auditor General to the full extent permitted by law. The Deputy Auditor General shall be a certified public accountant. The Deputy Auditor General serves at the pleasure of the Auditor General.

**Sec. 7.5-103. Term of Office.**

The term of Auditor General is ten (10) years beginning with the taking of office. The Auditor General may be removed for cause by a two-thirds (2/3) majority of City Council members serving. Any person who has held the position of Auditor General is not eligible for re-appointment.

**Sec. 7.5-104. Employees.**

In accordance with Article 6, Chapter 4, the Auditor General may hire, promote, discipline and remove employees of the agency, assign duties to the employees, and supervise the performance of those duties.

**Sec. 7.5-105. Powers and Duties.**

The Auditor General shall:

1.      Make audits of the financial transactions, performance and operations of City agencies based on an annual risk-based audit plan prepared by the Auditor General, or as otherwise directed by the City Council. Audits shall focus on high risk agencies and/or processes identified in the annual risk-based audit plan. The Auditor General shall make an annual financial analysis of all agencies not selected for audit in the current year. The Auditor General shall have access to all financial records, human resource records, and other records of city agencies necessary to perform his/her functions. Make a full report to the City Council of each individual audit and file a copy with the Mayor.

2.      As soon as possible after the close of each fiscal year, make a report of the financial position of the city. The report shall be a public record.

3.      Investigate the administration and operation of any city agency and report findings and recommendations to the City Council and the Mayor. The Auditor General may request and shall be given necessary assistance and information by each agency. The Auditor General may subpoena witnesses, administer oaths, take testimony, require the production of evidence relevant to a matter under investigation, enter and inspect premises within the control of any agency during regular business hours.

To enforce a subpoena or order for production of evidence or to impose any penalty prescribed for failure to obey a subpoena or order, the Auditor General shall apply to the appropriate court.

4.      From time to time make reports to city agencies of irregularities of practice and erroneous accounting methods with recommendations for improving the accounting procedures and systems of the agencies.

Recommendations which are not put into effect by the agency shall be reviewed by the Finance Director, who shall advise the Auditor General and the City Council of action being taken with respect to the recommendations.

5.      Upon request of the Budget Director, make available to the Budget Director all information useful in the preparation of the capital agenda or annual budget.

6.      Settle all disputed claims in favor of or against the City to the extent and in the manner provided by ordinance. All appeals from determinations made by the Auditor General shall be brought in the court provided by law. However, no proceedings may be brought upon a claim within the jurisdiction of the Auditor General until the claim is rejected by the Auditor General or until six (6) months have elapsed from the time of filing the claim with the Auditor General.

**Sec. 7.5-106. Limitations.**

The Auditor General may hold no other City, County or State office.

Except as otherwise provided in this Charter, the Auditor General shall not have any connection with any city agency, nor be custodian of any cash or securities belonging to the City other than the appropriation to the office.

# ARTICLE 7.5.
# INDEPENDENT DEPARTMENTS and OFFICES
## CHAPTER 2. LAW DEPARTMENT

**Sec. 7.5-201. Law Department.**

The Law Department is headed by the Corporation Counsel who is the duly authorized and official legal counsel for the City of Detroit and its constituent branches, units and agencies of government. The Mayor shall appoint the Corporation Counsel subject to approval of the City Council. However, if the City Council does not disapprove the appointment within thirty (30) days, it is deemed confirmed.

The Mayor may remove the Corporation Counsel without cause, with a two-thirds (2/3) majority vote of the membership of City Council. City Council may remove the Corporation Counsel, without cause, by a two-thirds (2/3) vote and concurrence of the Mayor. A Mayor occupying the Office of Mayor through succession under section 5-109 (Succession to Office) may only remove Corporation Counsel with cause and approval of one (1) less than the entire membership serving on City Council.

*1.     Client and Representation.*

The client of the Corporation Counsel is the City of Detroit as a body corporate. The agents and representatives of the City of Detroit, for purposes of receiving and directing legal services in a manner consistent with Corporation Counsel's professional obligations to the City of Detroit, as herein provided in this Charter or allowed by law, shall be the Mayor, City Council and City Clerk.

Corporation Counsel represents the City of Detroit as a body corporate and may represent its branches of government, departments, agencies, elected officials and employees as required or allowed by law, Charter, ordinance, city policy or contract. For purposes of conducting city business and in the performance of their duties therein, no branch or unit of government, department, agency, elected official or employee required or allowed to receive legal services by law, Charter, ordinance, city policy or contract, may solicit or obtain formal legal advice, or retain services or representation from an outside law firm or attorney, in the execution of their duties, without requesting and receiving the approval of Corporation Counsel, unless expressly allowed by Charter. Upon request of an agency or officer, the Corporation Counsel may retain an outside law firm or attorney as Special Corporation Counsel for any particular matter or proceeding.

Nothing in this section is intended to prevent any branch, officer or employee of city government from consulting with legal experts or convening meetings or hearings for the purpose of obtaining information necessary to execute their duties. Further, nothing in this section is intended, nor shall it be construed, to limit the exercise of any constitutional rights, including those in Article I, §§ 13 and 20 of the State Constitution.

**Sec. 7.5-202. Qualifications.**

The Corporation Counsel and the Deputy Corporation Counsel must be attorneys licensed to practice in Michigan.

**Sec. 7.5-203. Civil Litigation.**

The Corporation Counsel shall defend all actions or proceedings against the City.

The Corporation Counsel shall prosecute all actions or proceedings to which the City is a party or in which the City has a legal interest, when directed to do so by the Mayor.

Upon request, the Corporation Counsel may represent any officer or employee of the city in any action or proceeding involving official duties.

No civil litigation of the city may be settled without the consent of the City Council.


**Sec. 7.5-204. Penal Matters.**

The Corporation Counsel is the city prosecutor and shall:

    1.   Institute and conduct, on behalf of the people, all cases arising from the provisions of this Charter or city ordinances and, when authorized to do so by law, cases arising under state law.

    2.   Prosecute all these cases, including all recognizance and bail forfeitures, in the court of original jurisdiction and on appeal.

    3.   Prosecute all actions for the recovery of fines, penalties, forfeitures and other money arising out of these cases.

**Sec. 7.5-205. Advice and Opinions.**

Each branch and unit of government shall receive the legal advice and opinion of Corporation Counsel on matters pertaining to the execution of their functions and duties as governmental bodies and officials. Upon request, the Corporation Counsel shall give such legal advice or opinions to the Mayor, City Council, and members of the City Council, City Clerk or the head of any agency.

**Sec. 7.5-206. Form of Documents.**

The Corporation Counsel shall prepare or approve all contracts, bonds and other written instruments in which the city is concerned, shall approve all surety bonds required to be given for the protection of the City, and shall keep a proper registry of all contracts, bonds and instruments.

**Sec. 7.5-207. Drafting.**

Upon request of City Council, any City Council member, or the Mayor, the Corporation Counsel shall prepare or assist in preparing any ordinance or resolution for introduction before the City Council.

**Sec. 7.5-208. Intra-Government Dispute Resolution.**

In all disputes between branches or units of city government, before any branch or unit can institute legal proceedings, they shall have first requested and obtained from Corporation Counsel a legal opinion which details which party's position is consistent with the current state of the law. Corporation Counsel shall then instruct the branch or unit whose legal position is inconsistent with the current state of the law to

retain legal assistance and representation from an outside law firm or outside attorney if they intend to institute legal proceedings.

In cases of disputes between the branches of government, prior to filing a lawsuit or taking other legal action, the highest public official from the disputing branches of government shall first meet to resolve the matter. In the case of the Executive Branch the highest public official shall be the Mayor or designee; in the case of the Legislative Branch it shall be the Council President or designee; and in case of the Office of the City Clerk it shall be the City Clerk or designee. The parties shall engage in facilitation of the matter over a period of fourteen (14) business days, or more as agreed to by the parties, before taking legal action. The facilitation shall be conducted by a facilitator, mutually agreed to by the parties. Nothing in this section shall preclude a branch or unit of government from seeking a temporary restraining order, injunction or other emergency legal action based on irreparable harm, but this section shall be complied with if the court rules that no irreparable harm exists, in which case the facilitation period shall be twenty-eight (28) business days from the date of the court's decision, or longer as agreed to by the parties.

### Sec. 7.5-209. Enforcement of Charter.

The Corporation Counsel shall be responsible for enforcing compliance with the Charter. Corporation Counsel shall document in writing any violation of the Charter by the executive or legislative branches, Office of City Clerk, elected official or other persons subject to compliance with the Charter. This written notice shall contain the nature of the violation, including the Charter section(s) violated, direct the necessary action to be taken to remedy the violation, and date by which the remedial action must be taken. The time for taking the required remedial action shall not exceed fourteen (14) calendar days. The notice of Charter violation shall be presented to the offending body or individual, with a copy provided to the Mayor, City Council and City Clerk.

In the event the offending body or individual fails to remedy the Charter violation within the time frame and manner required in the written notice, Corporation Counsel shall take all reasonable actions to secure compliance, including, but not limited to, judicial action.

Nothing in this section is meant to waive any right to attorney-client privilege.

### Sec. 7.5-210. Claim Reduction.

Corporation Counsel shall advise City departments, agencies and entities on risk reduction strategies that are necessary to limit or eliminate the City's exposure to liability.

### Sec. 7.5-211. Other Duties.

The Corporation Counsel has such other duties as may be provided by law, this Charter, or ordinance.

# ARTICLE 7.5.
# INDEPENDENT DEPARTMENTS and OFFICES
## CHAPTER 3. OFFICE OF INSPECTOR GENERAL

**Sec. 7.5-301. Establishment.**

An independent Office of Inspector General is hereby created. The Inspector General shall head the office. The purpose of the Office of Inspector General is to ensure honesty and integrity in City government by rooting out waste, abuse, fraud, and corruption.

**Sec. 7.5-302. Appointment, Removal, Term of Office and Vacancy.**

The Inspector General shall be appointed by the majority of City Council members serving. The Inspector General may be removed for cause by a two-thirds (2/3) vote of City Council members serving and shall be appointed for a term of six (6) years.

If a vacancy occurs in the Office of Inspector General, the City Council shall, within sixty (60) days, fill the office for a full term.

**Sec. 7.5-303. Minimum Qualifications.**

The Inspector General shall be a person who:

1. Has a bachelor's degree from an accredited institution of higher learning.

2. Has at least ten (10) years of experience in any one, or combination of, the following fields:

   a. As a federal, state or local law enforcement officer;
   b. As a federal, state or local government attorney, including a public defender;
   c. As a federal or state court judge;
   d. Progressive supervisory experience in an investigative public agency similar to an inspector general's office;
   e. Has managed and completed complex investigations involving allegations of fraud, theft, deception and conspiracy; and
   f. Has demonstrated the ability to work with local, state and federal law enforcement agencies and the judiciary.

**Sec. 7.5-304. Limitations; Prohibited Activities.**

During his or her term, the Inspector General may not engage in an occupation for profit, except for teaching, or hold any other government office outside the duties of the Inspector General. Subject to applicable law, the Inspector General shall not solicit votes or raise monetary or in-kind contributions for any candidate for an elective office. Any person who has held the position of Inspector General is not eligible for re-appointment. Subject to applicable law, the Inspector General may not hold any elective city office until two (2) years after leaving the position.

**Sec. 7.5-305. Jurisdiction.**

The powers and duties of the Inspector General shall extend to the conduct of any Public Servant and City agency, program or official act, contractors and subcontractors providing goods and services to the

City, business entities seeking contracts or certification of eligibility for city contracts and persons seeking certification of eligibility for participation in any city program.

### Sec. 7.5-306. Powers and Duties.

The Inspector General shall:

1.  Investigate any Public Servant, city agency, program or official act, contractor and subcontractor providing goods and services to the City, business entity seeking contracts or certification of eligibility for City contracts and person seeking certification of eligibility for participation in any city program, either in response to a complaint or on the Inspector General's own initiative in order to detect and prevent waste, abuse, fraud and corruption.

2.  Issue quarterly reports to the City Council and Mayor concerning results of investigations and audits undertaken by the Office of Inspector General. All reports shall be a public record and additionally published electronically on the World Wide Web or another format as to provide remote or on-line access to the reports.

Have access to the financial and other records of all city agencies at any time.

### Sec. 7.5-307. Subpoena Powers.

1.  The Inspector General may subpoena witnesses, administer oaths, take testimony, require the production of evidence relevant to a matter under investigation, enter and inspect premises within the control of any city agency during regular business hours.

2.  The Inspector General may enforce a subpoena or order for production of evidence. The Inspector General shall apply to the appropriate court to impose any penalty prescribed for failure to obey a subpoena or order.

### Sec. 7.5-308. Duty to Report Illegal Acts.

If the Inspector General has probable cause to believe that any Public Servant or any person doing or seeking to do business with the City has committed or is committing an illegal act, then he or she shall promptly refer the matter to the appropriate prosecuting authorities.

### Sec. 7.5-309. Employees.

The Office of Inspector General shall include an Inspector General and such deputies, assistants and other employees as deemed necessary by the Inspector General. The Office of Inspector General staff shall include, at a minimum, attorneys, investigators and auditors who are certified public accountants. The Inspector General may hire, promote, discipline and remove employees of the office, assign duties to the employees and supervise the performance of those duties. The staff of the office may include persons who are both subject to, and exempt from, Article 6, Chapter 4 of this Charter.

### Sec. 7.5-310. Cooperation in Investigations; Obstruction.

It shall be the duty of every Public Servant, contractor and subcontractor and licensee of the city, and every applicant for certification of eligibility for a city contract or program, to cooperate with the Inspector

General in any investigation pursuant to this Article.

Any Public Servant who willfully and without justification or excuse obstructs an investigation of the Inspector General by withholding documents or testimony is subject to forfeiture of office, discipline, debarment or any other applicable penalty.

This requirement and associated penalty shall be incorporated into all contracts and subcontracts to the extent necessary to make them effective against such entities or persons.

### Sec. 7.5-311. Consultation Required.

1.   No report or recommendation that criticizes an official act shall be announced until every agency or person affected is allowed a reasonable opportunity to be heard at a hearing with the aid of counsel. In accordance with section 2-111 of this Charter, the Inspector General will promulgate procedural rules for hearings.

2.   After the hearing, if the Inspector General believes it necessary to make a formal report, a copy of any statement made by an agency or person affected shall accompany the report.

### Sec. 7.5-312. Conflict of Interest; Special Counsel.

Where there exists a conflict of interest between the Inspector General and another branch of City government, the Inspector General has the authority to retain an attorney licensed to practice law in Michigan who shall represent the Inspector General in legal proceedings. Such attorney shall not represent the City as a municipal corporation in any legal proceeding.

### Sec. 7.5-313. Confidentiality.

Subject to any applicable state law, all investigative files of the Office of Inspector General shall be confidential and shall not be divulged to any person or agency, except to the United States Attorney, the Michigan Attorney General or Wayne County Prosecutor's Office, or as otherwise provided in this Charter.

### Sec. 7.5-314. Immunity.

The Inspector General and the staff shall be, to the full extent permitted by law, immune from any suit based on any report or communication within the scope of official duties.

### Sec. 7.5-315. Retaliation Prohibited; Penalty.

No person shall retaliate against, punish or penalize any other person for complaining to, cooperating with or assisting the Inspector General in the performance of his or her duties. Any person who violates this provision shall be subject to a fine of not less than $300 and not more than $500 for each violation and any other penalties under applicable law.

### Sec. 7.5-316. Funding.

The City shall annually appropriate funds sufficient to enable the Office of Inspector General to perform its duties. Funding shall be in accordance with section 8-214 (Proportional Funding for Oversight Agencies.)

# ARTICLE 7.5.
# INDEPENDENT DEPARTMENTS and OFFICES
## CHAPTER 4. OMBUDSPERSON

**Sec. 7.5-401. Ombudsperson.**

The Ombudsperson shall be appointed by a two-thirds (2/3) majority of City Council members serving.

**Sec. 7.5-402. Term of Office.**

The Ombudsperson's term is ten (10) years.

The Ombudsperson may be removed for cause by a two thirds (2/3) majority of City Council members serving.

Any person who has held the position of Ombudsperson is not eligible for re-appointment.

**Sec. 7.5-403. Vacancy.**

If a vacancy occurs in the office of Ombudsperson, the City Council shall, within sixty (60) days, fill the office for a full term.

**Sec. 7.5-404. Salary.**

The salary of the Ombudsperson is equal to the salary of the Auditor General.

**Sec. 7.5-405. Staff.**

To carry out the responsibilities of the office, the Ombudsperson may, within appropriations, appoint not more than six (6) employees who are exempt from Article 6, Chapter 4 of this Charter. The number of exempt positions on the Ombudsperson's staff may be increased by a majority of City Council members serving.

**Sec. 7.5-406. Definition.**

In this chapter, "official act" means any action, omission, decision, recommendation, practice or procedure of any agency.

**Sec. 7.5-407. Jurisdiction.**

The Ombudsperson may investigate any official act of any agency except elective officers which aggrieves any person. The authority of the Ombudsperson extends equally to all agencies. However, with respect to any investigation authorized by this Charter to be made by an agency having subpoena power, the Ombudsperson may only investigate and report whether the agency's investigation and hearing, if any, was conducted fully and fairly.

The Ombudsperson may establish procedures for receiving and processing complaints, conducting investigations and hearings, and reporting findings. No fee shall be levied for the filing or investigation of complaints.

**Sec. 7.5-408. Powers of Investigation.**

The Ombudsperson may request and shall be given necessary assistance and information by each agency. The Ombudsperson may subpoena witnesses, administer oaths, take testimony, require the production of evidence relevant to a matter under investigation, enter and inspect premises within the control of any agency during regular business hours, and establish rules of procedure. To enforce a subpoena or order for production of evidence or to impose any penalty prescribed for failure to obey a subpoena or order, the Ombudsperson shall apply to the appropriate court.

Where there exists a conflict of interest between the Ombudsperson and another branch of government, the Ombudsperson has the authority to retain an attorney licensed to practice law in Michigan who shall represent the Ombudsperson in legal proceedings. Such attorney shall not represent the city as a municipal corporation in any legal proceeding.

**Sec. 7.5-409. Delegation of Powers.**

The Ombudsperson may delegate in writing to a member of the staff the powers to administer oaths and take testimony.

A delegation is revocable at will and does not prevent exercise of any power by the Ombudsperson.

**Sec. 7.5-410. Correspondence From Person Detained.**

Any letter to the Ombudsperson from a person in a place of detention, penal or otherwise, under the control of an agency shall immediately be forwarded, unopened, to the Ombudsperson.

**Sec. 7.5-411. Consultation Required.**

No report or recommendation that criticizes an official act shall be announced until every agency or person affected is allowed a reasonable opportunity to be heard with the aid of counsel.

After the hearing, if the Ombudsperson believes it necessary to make a formal report, a copy of any statement made by an agency or person affected shall accompany the report.

**Sec. 7.5-412. Reports.**

The Ombudsperson shall make periodic reports to the City Council of action taken under this chapter. All reports shall be made public.

**Sec. 7.5-413. Duty to Report Illegal Acts.**

If the Ombudsperson has probable cause to believe that any elective officer, appointee, employee or member of an agency or any person doing or seeking to do business with an agency has committed or is committing any illegal act, the Ombudsperson shall promptly refer the matter to the appropriate authorities.

**Sec. 7.5-414. Obstruction.**

The office or position of any elective officer or appointee who willfully and without justification or excuse obstructs any investigation of the Ombudsperson by withholding documents or testimony may be forfeited under section 2-107(B)(2) of this Charter.

**Sec. 7.5-415. Immunity.**

The Ombudsperson and the staff shall be, to the full extent permitted by law, immune from any suit based on any report or communication within the scope of official duties.

**Sec. 7.5-416. Limitations.**

The Ombudsperson may not hold any office of trust or profit other than the office of Ombudsperson, or engage in any occupation for profit outside the duties of this office. The Ombudsperson is not eligible to hold any city office until two (2) years after leaving the position.

**Sec. 7.5-417. Remedies Cumulative.**

The remedies of this chapter are additional to those provided under any other law.

# ARTICLE 8.
# PLANNING and FINANCIAL PROCEDURES
## CHAPTER 1. PLANNING PROCEDURE

**Sec.8-101. Comprehensive Plan.**

The Mayor shall propose and the City Council shall approve, with the modifications it deems necessary, a Master Plan of policies for the social, economic and physical development and conservation of the city, and the full range of transportation, access and mobility options ("Plan" or "Master Plan").

**Sec.8-102. Periodic Review.**

After approval of the Plan, the Mayor shall annually propose any amendments necessary to keep the Plan current and the City Council shall consider the Mayor's proposed amendments and make the modifications in the Plan that it deems necessary.

**Sec.8-103. Council Procedure.**

The City Council shall conclude its action on the Plan annually by December 1. Interested persons and groups shall be given notice and an opportunity to be heard by either the City Council, the City Planning Commission, or other committee of the City Council, before approval of the Plan or any amendments to the Plan.

**Sec.8-104. Purpose of the Plan.**

The Master Plan shall be a set of guidelines to assist the Mayor and others in proposing, and the City Council in evaluating and implementing, specific proposals for the total development of the City and its residents.

# ARTICLE 8.
# PLANNING and FINANCIAL PROCEDURES
## CHAPTER 2. BUDGETS

**Sec. 8-201. Fiscal Year.**

Except as otherwise provided by ordinance, the City's fiscal year is July 1 through June 30. If the fiscal year is changed, related dates specified in the Charter shall change accordingly.

**Sec. 8-202. Capital Agenda.**

1. On or before November 1 of each even numbered year, the Mayor shall submit a proposed Capital Agenda for the next five (5) fiscal years to the City Council.

2. The Capital Agenda shall state:

   a. All physical improvements and related studies and surveys, all property of a permanent nature, and all equipment for any improvement when first erected or acquired, to be financed during the next five (5) fiscal years in whole or in part from funds subject to control or appropriation by the city, along with information as to the necessity for these facilities;

   b. Capital expenditures which are planned for each of the next five (5) fiscal years;

   c. The estimated annual cost of operating the facilities to be constructed or acquired; and

   d. Other information pertinent to the evaluation of the capital agenda.

For each separate purpose, project, facility, or other property there shall be shown the amount and the source of any money that has been spent or encumbered, or is intended to be spent or encumbered before the beginning of the next fiscal year and also the amount and the source of any money that is intended to be spent during each of the next five (5) years. This information may be revised and extended each year for capital improvements still pending or in process of construction or acquisition.

The City Council may delete projects from the capital agenda as submitted but it may not otherwise amend the capital agenda until it has requested the recommendations of the Planning and Development Director. The City Council shall not be bound by those recommendations and may act without them if they are not received within thirty (30) days from the date requested.

3. The City Council shall publish in one (1) or more daily newspapers of general circulation in the city a general summary of the capital agenda and a notice stating:

   a. The time and places where copies of the proposed capital agenda are available for public inspection; and
   b. The time and places, not less than two (2) weeks after the publication, for a public hearing on the proposed capital agenda.

The head of any agency has the right, and it shall be a duty when requested by the City Council, to appear and be heard.

4. At the conclusion of its deliberation, but not later than March 1 of the following year, the City Council shall approve a five (5) year capital agenda for the City. If the City Council fails to take action by March 1, the proposed Capital Agenda shall be deemed approved.

**Sec. 8-203. Annual Budget.**

In accordance with law, the City shall establish by ordinance, dates upon which the Mayor shall submit to the City Council a proposed annual budget for the next fiscal year, and City Council to complete consideration of the budget. Proposed capital appropriations shall be set forth in a separate section of the annual budget.

Before November 1 of each year and prior to submitting a proposed annual operating budget, the departments of police, fire, public works, water and sewerage, recreation, health and public lighting shall conduct a public meeting to review programs, services and activities to be included in the budget and receive public comment.

Departments shall publish a general summary of programs, services and activities funded in the current fiscal year, in one (1) or more daily newspapers of general circulation in the city. The summary shall include funds spent or encumbered in the current fiscal year. The notice shall be published not less than ten (10) days before the day on which the meeting is held, and shall state date, time and place of the meeting.

**Sec. 8-204. Budget.**

1.      The budget shall constitute a complete financial plan for the city for the next fiscal year.

2.      The budget shall set forth estimated revenues from all sources and all appropriations. Any surplus or deficit during the fiscal year preceding that covered by the budget shall be entered as an item in the budget.

3.      The total of proposed expenditures shall not exceed the total of estimated revenues.

**Sec. 8-205. Form of Appropriation.**

All appropriations to each agency shall be made in lump sums to the agency's specific programs, services or activities, or to additional classes as the Mayor may recommend in the proposed budget, subject to amendment by deletion, addition or substitution by the City Council. However, the accounts of each department and agency shall be maintained in such detail as required by generally accepted standards of financial reporting. A uniform system of accounts shall be established as required by state law.

**Sec. 8-206. Public Hearing.**

A public hearing in the manner provided by law or ordinance shall be held on the proposed budget before adoption.

**Sec. 8-207. Amendment Before Adoption.**

After the public hearing, the City Council may adopt the budget with or without amendment.

**Sec. 8-208. Budget Adoption.**

Consideration of the budget shall be completed by the City Council as provided by ordinance.

If the Mayor disapproves amendments made by the City Council, the Mayor shall within seven (7) days, submit to the City Council in writing the reasons for the disapproval.

The City Council shall proceed to reconsider any budget item so disapproved. If after reconsideration a two-thirds (2/3) majority of the City Council members serving agree to sustain any of the City Council's amendments to the budget, those amendments so sustained shall be of full force and effect. The City Council's reconsideration of the budget must be concluded within three (3) business days after receipt of the Mayor's disapproval.

### Sec. 8-209. Effect of Budget Adoption.

Adoption of the budget shall constitute:

1. Appropriations of the amounts specified therein from the funds indicated;
2. A levy of the property tax specified therein; and
3. Authorization for the issuance of any bonds specified therein.

### Sec. 8-210. Amendments After Adoption.

1. If during the fiscal year the Mayor advises the City Council that there are available for appropriation revenues in excess of those estimated in the budget, the City Council may make supplemental appropriations for the year up to the amount of the excess.

2. To meet a public emergency affecting life, health, property or the public peace, upon request of the Mayor, the City Council may make emergency appropriations. To the extent that there are no available unappropriated revenues to meet those appropriations, the City Council may authorize the issuance of emergency notes as provided by this Charter or ordinance, in a manner consistent with state law.

### Sec. 8-211. Transfer of Appropriations.

At any time during the fiscal year upon written request by the Mayor, the City Council may, by resolution, transfer all or part of any unencumbered appropriation balance among the programs, services or activities within an agency or from one (1) agency to another.

### Sec. 8-212. Report of Budget Deficit.

Where, during the Fiscal Year, the head of any agency, department or City funded entity determines that the budget is in deficit, the head shall immediately notify, in writing, the Mayor and Budget Director of the reason for, and circumstance surrounding, the deficit. Within ten (10) business days of notification, the Budget Director shall request a hearing with the City Council to apprise it of the deficit and outline actions to remedy the deficit.

### Sec. 8-213. Revenue Estimating Conference.

The Directors of the Finance Department, Budget Department, Auditor General and City Council's Fiscal Analysis Division shall hold a revenue estimating conference two times per year. The revenues under consideration shall include all general fund, solid waste fund, and risk-management fund revenues, and revenues of enterprise agencies that require a general fund subsidy. The parties shall also compile and consider any and all outstanding delinquent receivables in the possession of City agencies, departments and entities and, in conjunction with Corporation Counsel, recommend to the Mayor and City Council the most efficient means to collect this revenue, which may include collection procedures by the Law

Department.

**Sec. 8-214. Proportional Funding for Oversight Agencies.**

The Detroit City Council shall establish a proportional method to fund oversight agencies to insure the proper oversight of executive and legislative branches of government. City Council shall arrive at an equitable proportional method to fund oversight agencies in local government. City Council shall prepare and adopt a proportional funding system within ninety (90) days of the effective date of this Charter.

The funding system shall include a formula to distribute funds to each of the agencies contained in this section and any other agencies added by ordinance. The internal cost allocation plan shall determine the amount of funds to be appropriated to each agency for oversight functions. The proportional funding system shall be enacted by ordinance. The ordinance shall contain this mandate to establish a proportional method of funding for oversight agencies, the list of agencies included in this section and other agencies determined by City Council.

The oversight agencies referred to in this section shall include the Office of the Inspector General, Auditor General, Ombudsperson and Board of Ethics.

# ARTICLE 8.
# PLANNING and FINANCIAL PROCEDURES
## CHAPTER 3. ADMINISTRATION OF BUDGETS

**Sec. 8-301. Work Programs and Allotments.**

When the Budget Director specifies, each agency shall submit work programs for the next fiscal year showing the requested allotments of its appropriation by periods within the year. The Budget Director shall review and authorize those allotments with or without revision as early as possible in the fiscal year. The Budget Director may revise those allotments during the year if desirable and shall revise them to accord with any supplemental, emergency, or transferred appropriations.

**Sec. 8-302. Limit on Obligations and Payments.**

No obligations shall be incurred against, and no payments shall be made from, any allotment or appropriation except in accordance with appropriations duly made and unless the Chief Accounting Officer, or in absence of the Chief Accounting Officer, a designee of the Finance Director advises that there is a sufficient unencumbered balance in the allotment or appropriation and that sufficient funds will be or are available to meet the obligation.

When the Chief Accounting Officer or, in absence of the Chief Accounting Officer, a designee of the Finance Director so advises, the obligation may be incurred or payment made in accordance with any applicable procedure established under section 6-306.

**Sec. 8-303. Penalties for Violation.**

Any incurring of obligation or authorization of payment in violation of the provisions of this Charter shall be void and any payment so made illegal; the action shall be cause for removal of any officer who knowingly incurred the obligation or authorized or made the payment, and he or she shall also be liable to the City for any amount so paid and to any criminal sanctions imposed by law or ordinance.

**Sec. 8-304. Obligations to be Met by Subsequent Appropriations.**

As permitted by law, the City may by resolution of the City Council:

1.      Make contracts or make or authorize payments for capital improvements to be financed wholly or partly by the issuance of bonds; or

2.      Make any contract or lease (including installment contracts, lease-purchase contracts, or other forms of deferred payment contracts for the acquisition of real property or capital equipment) providing for payments beyond the end of the fiscal year.

# ARTICLE 8.
# PLANNING and FINANCIAL PROCEDURES
## CHAPTER 4. PROPERTY TAXATION

**Sec. 8-401. Power.**

The City is authorized to levy property taxes at the rate of two percent (2%) of assessed value of all real and personal property in the City or to such other maximum limit as may be permitted by law.

Included is the power to levy property taxes for public transportation and transit services to the maximum rate permitted by law.

The subjects of taxation for municipal purposes shall be in accordance with state law.

**Sec. 8-402. Assessors' Duties.**

1.      The Board of Assessors shall certify the assessment roll to the board of review on or before the date provided by ordinance

2.      The Assessors shall prepare the tax roll by spreading property taxes ratably on the assessment roll on or before the date provided by ordinance and shall deliver the tax roll to the Treasurer in the manner provided by law.

**Sec. 8-403. Collection of Property Taxes.**

1.      Except as otherwise provided by this Charter or ordinance, the rights, duties, powers, and immunities established by state law shall apply in the collection and enforcement of city property taxes.

2.      City property taxes shall become a debt of the persons liable for them on the date provided by state law and shall become payable, and a lien upon the property, on the first (1st) day of the city's fiscal year or such other date as may be provided by ordinance.

3.      Property taxes shall become delinquent if they remain unpaid on September 1. However, when any person shall pay one-half (1/2) of the city taxes on any property on or before the fifteenth (15th) day of August, the remaining one-half (1/2) shall not become delinquent until the sixteenth (16th) day of January. The City may, by ordinance, provide interest and penalties for delinquent city property taxes.

4.      State, county and school taxes shall be collected and returned by the City Treasurer in accordance with state law. However, except as otherwise provided by law or ordinance, city property taxes shall not be returned to the Wayne County Treasurer under state law.

5.      Before the end of the City's fiscal year, the Treasurer shall give reasonable notice to all persons who are liable for delinquent real property taxes that, on the last day of the fiscal year, the city's lien on real property for delinquent city real property taxes shall be deemed "sold" to the Finance Director. Thereafter, the Finance Director, with the concurrence of the Planning and Development Director or any other department director designated by the Mayor, may sell the lien in accordance with procedures provided for by ordinance adopted by the City Council. Any such ordinance adopted shall provide for appropriate hardship protections. The ordinance may also provide for public notice of the sale of the lien to a third party. The council may at any time review and revise the procedures and protections

established by any such ordinance adopted to determine their appropriateness and effectiveness. However, two (2) years following the enactment of any such ordinance, the City Council shall review the procedures and protections established by that ordinance to determine their appropriateness and effectiveness.

6.      Two (2) years after such a sale of the lien on any real property to the Finance Director, the city or other holder of the lien may bring a civil action to foreclose its lien.

If the City or other holder of the lien prevails in the action, the judgment, which may not be entered before one hundred and twenty (120) days have expired from the filing of the complaint, shall provide that possession of the real property to which the lien attached shall be given to the City or other holder of the lien, unless the judgment, and all costs are paid within sixty (60) days. The judgment when final shall be conclusive evidence of the City's or other lienholder's title in fee simple, subject only to unextinguished interests or encumbrances.

7.      In addition to the other remedies specified in this section, at the time unpaid city property taxes become delinquent or at any later time permitted by law, the city may maintain a personal action against the debtor for collection of the unpaid property taxes and may use any means permitted by law for collection of the debt. The City of Detroit tax roll shall be prima facie evidence of the amount of the indebtedness to the City of Detroit. The preceding sections of 8-403 are not the exclusive remedies of the City of Detroit.

8.      In addition to the procedures and remedies for the collection and enforcement of the property taxes set forth in the Charter, the city or other lienholder may use any procedure and remedy for the collection and enforcement of property taxes established by state law.

# ARTICLE 8.
## PLANNING and FINANCIAL PROCEDURES
### CHAPTER 5. BORROWING

**Sec. 8-501. General Power.**

The City may borrow money for any purpose within the scope of its powers, may issue bonds or other evidence of indebtedness therefore and may, when permitted by law, pledge the full faith, credit, and resources of the city for the payment of those obligations.

**Sec. 8-502. Limitations on Borrowing.**

The net bonded indebtedness incurred annually by the City shall not exceed the limit permitted by law. No obligations shall be sold to obtain funds for any purpose or purposes other than that for which those obligations were specifically authorized.

**Sec. 8-503. Specific Kinds of Borrowing.**

Included within the City's general power are the following specific kinds of borrowing:

1.      Bonds to Finance Local Public Improvement.

The City may borrow money and issue bonds in anticipation of the payment of special assessments or any combination of special assessments levied under sections 8-601 and 8-602 of this Charter. Special assessment bonds may be an obligation of the special assessment district or districts or may be both an obligation of the special assessment district or districts and a general obligation of the City.

The City may also borrow money and issue bonds under section 8-501 for its share of the cost of any local public improvement or, where the cost of that improvement is to be defrayed in part from the payment of special assessments and in part from other city revenues, for the entire cost of that improvement.

All collections on each special assessment roll or combination of rolls to the extent that those collections are pledged for the payment of the principal and interest on any bonds issued in anticipation of the payment thereof, shall be set apart in a separate fund for the payment of the principal and interest and may be used for no other purpose.

2.      Emergency Bonds.

In case of fire, flood, or other calamity, the city may, subject to law, authorize the issuance of emergency bonds which shall be general obligations of the City for the relief of residents of the City and for the preservation of city property.

3.      Budget Bonds.

Any capital improvement items contained in the budget may be financed by the issuance of bonds as a part of the budget system. However, the amount of those bonds together with the city property taxes levied for the same year may not exceed the limit permitted by law.

4.      Bonds to Finance Transit Facilities.

The City may borrow money for public transportation and rapid transit facilities and may incur obligations and issue bonds therefore to the maximum extent permitted by law.

5.      Bonds to Finance Public Lighting Facilities.

The City may borrow money for public lighting facilities and may incur obligations and issue bonds therefore to the maximum extent permitted by law.

## Sec. 8-504. Use of Borrowed Funds.

Each obligation shall contain on its face a statement of the purpose for which it is issued and no officer of the City may use the proceeds for any other purpose, except that, whenever all or any part of the proceeds of any issue remains unexpended and unencumbered for the purpose for which the issue was made, the City may use those unexpended and unencumbered funds in any manner permitted by law or for the retirement of the issue, or, if the issue shall have been fully retired or if any funds remain after retirement of the issue, then for the retirement of other obligations of the City.

## Sec. 8-505. Execution of Obligation.

All obligations issued by the City shall be executed with the facsimile signature of the Mayor and signed by the Director of Finance and shall bear the seal of the city. Interest coupons shall be executed with the facsimile signatures of the Mayor and the Director of Finance.

## Sec. 8-506. Tax Exempt.

All obligations issued by the City shall be exempt from all city taxation.

# ARTICLE 8.
## PLANNING and FINANCIAL PROCEDURES
## CHAPTER 6. SPECIAL ASSESSMENTS

### Sec. 8-601. Power To Assess.

The City may determine that the whole or any part of the expense of any local public improvement or repair shall be defrayed by special assessments upon the property specially benefited and so declare by resolution.

Special assessments may be levied before, during, or after the making of the improvement. However, where special assessments are not levied until after commencement of a local public improvement, the resolution levying those assessments shall not be effective unless approved by a two-thirds (2/3) majority of City Council members serving after all interested parties have been given an opportunity to be heard on all relevant issues, including necessity.

### Sec. 8-602. Special Assessments to Finance Transit Facilities.

Included within section 8-601 is the power to finance any local improvements or repair for public transportation or rapid transit facilities through special assessments to the maximum extent permitted by law.

### Sec. 8-603. Procedure Ordinance.

The complete special assessment procedure to be used, including the preparing of plans and specifications; estimated costs; the preparation, hearing and correction of the special assessment roll; the collection of special assessments; the assessment of single lots of parcels; and any other matters concerning the making of improvements by the special assessment method, shall be provided by ordinance. The ordinance shall authorize additional assessments, if the prior assessments prove insufficient to pay for the improvement or is determined to be invalid, in whole or in part, and shall also provide for the refund of excess assessments; however, if the excess is less than five percent (5%) of the total costs as defined by ordinance, it may be placed in the general fund of the City.

### Sec. 8-604. Assessment Lien.

From the date of confirmation of any roll levying any special assessment, the full amount of the assessment and all interest thereon shall constitute a lien on the property subject thereto and that amount shall also be a debt of the person to whom assessed until paid and, in case of delinquency, may be collected as delinquent city property taxes.

### Sec. 8-605. Contest of Assessments.

No action of any kind may be instituted for the purpose of contesting or enjoining the collection of any special assessment (a) unless, the special assessment is first protested at the hearing held for the purpose of confirming the special assessment roll; and (b) the action is commenced within thirty-five (35) days after the final decision, ruling, determination or order confirming the roll. If the Corporation Counsel submits a written opinion finding the roll illegal, in whole or in part, the City Council may revoke its confirmation, correct the illegality, if possible, and reconfirm it, provided that no property shall be assessed more than was imposed upon the original confirmation without further notice and hearing thereon.

City Council may by ordinance provide a process for contest of special assessments which is in accordance with state law and is not inconsistent with this section.

# ARTICLE 9.
# MISCELLANEOUS PROVISIONS
## CHAPTER 1. COMMUNITY ADVISORY COUNCILS

**Sec. 9-101. Definition and Purpose.**

Community Advisory Councils as used in this chapter are advisory councils established by ordinance upon the petition of city residents. The purpose of these Councils is to improve citizen access to city government. The City Council shall create advisory council districts by ordinance that shall be the same as districts from which council members are elected, exclusive of the at-large district. The ordinance shall be adopted within ninety (90) days after the effective date of this Charter.

**Sec. 9-102. Creation and Composition of Advisory Councils.**

City Council shall by ordinance establish seven (7) Community Advisory Councils upon receipt of a petition from the residents of districts created under section 9-101. The petitions shall be signed by a number of qualified registered voters who are residents of a district equal to not less than ten (10) percent of the number of persons voting at the last municipal general election in the district.

Each Community Advisory Council shall consist of five (5) members elected from a single non at-large district, who shall be residents and qualified and registered voters of the district; one (1) youth member between the ages of thirteen (13) and seventeen (17); and one (1) member selected as a representative for senior issues. City Council shall establish by ordinance a procedure for the selection and appointment of the high school member and senior issues representative on Community Advisory Councils. After creation of a Community Advisory Council, elected members shall be elected at the next election occurring in the city, if permitted by law, and shall serve until January 1 of the year following the regular city municipal elections. Thereafter, elected Community Advisory Council members shall be elected to four (4) year terms at the regular city municipal elections. Notwithstanding election to an initial term of less than four (4) years, an elected member may not be elected to more than two (2) consecutive four (4) year terms. The senior issues representative selected in accordance with the City ordinance shall serve one (1) four (4) year term, and may be reappointed. The youth member selected in accordance with City ordinance shall serve a one (1) year term and may be reappointed for as long as the person meets the age requirement. Reappointment of the youth member shall be for one (1) year terms. All members shall serve without compensation.

The City Council member elected from the non at-large district in which a Community Advisory Council resides, or their designee, shall attend all official meetings of that Community Advisory Council.

**Sec. 9-103. Powers, Duties and Limitations.**

City Council shall, by ordinance, prescribe uniform procedures, for the exercise of the powers and duties for all Community Advisory Councils. Included in those powers and duties shall be the provision that a community council may require that the City Council representative receive prior consultation from the Community Advisory Council on all issues which relate exclusively to that district.

Community Advisory Councils shall receive no appropriations from city funds, but may accept donations or grants in accordance with state, federal or local law.

A particular Community Advisory Council shall be dissolved only by a petition signed by the same number of qualified voters residing in the Community Advisory Council district required above, and an ordinance adopted after public hearing by City Council with public notice to the Community Advisory Council district

in question.

Each Community Advisory Council shall hold public meetings not less than four (4) times each year. The meetings will be held within the respective districts and will be held in donated facilities with an attempt to provide as broad of a geographical distribution for the meetings as possible. The meetings shall be held in accordance with the Michigan Open Meetings Act and the Community Advisory Councils shall comply with the Michigan Freedom of Information Act.

The powers and duties of each Community Advisory Council shall include:

1. Communicating to City Council the concerns of groups, agencies, businesses and residents within its districts with respect to the delivery of programs and services.

2. Assisting groups, agencies, businesses and residents in community problem solving by meeting with groups to:
   a. Clarify issues; and
   b. Demonstrate proper procedural approaches to accessing city government.

3. Disseminating information to groups, agencies, businesses and residents on social and physical plans for the districts areas.

4. Providing advice to community representatives and City Council on major issues within the council district which may include:
   a. Housing development;
   b. Commercial blight;
   c. Safety and security;
   d. Economic and community development;
   e. Employment opportunities;
   f. Code enforcement; and
   g. Other concerns impacting social, economic, cultural and environmental conditions within the district.

5. Familiarizing themselves with the City Charter, with the objective of assisting the community in understanding the intent and relevance of Charter provisions.

6. Familiarizing themselves with the Master Plan for the City of Detroit in relationship to the City generally and the land area within their district generally.

7. Meeting annually with the Mayor and annually with City Council to discuss the challenges confronting the district and the resources required to advance the interest and support the viability of the district.

# ARTICLE 9.
# MISCELLANEOUS PROVISIONS
## CHAPTER 2. COUNCIL OF THE ARTS

**Sec. 9-201. Council of the Arts.**

The Council of the Arts, comprised of fifteen (15) members, shall be appointed by and serve at the pleasure of the Mayor. Each member's term is four (4) years. Not more than four (4) terms expire each year.

The Council shall act as an advisory body to the Mayor and the City Council and as advocate for the arts and aesthetics in all aspects of city life. It shall advise and support cultural institutions and groups interested in cultural activities. It shall encourage, develop and support a wide variety of programs which reflect the cultural needs and experiences of all citizens and shall encourage participation by all citizens in the cultural activities carried on in the city.

The Council of Arts may, within appropriations appoint an Executive Director, exempt from Article 6, Chapter 4 of this Charter. The Executive Director serves at the pleasure of the Council.

# ARTICLE 9.
# MISCELLANEOUS PROVISIONS
## CHAPTER 3. REGULATORY POWER and REVIEW

**Sec. 9-301. Regulatory Power.**

The City may, in exercise of its police power:

1. Regulate;
2. Prohibit; or
3. Prohibit except as authorized by permit, license or franchise any trade, occupation, amusement, business or other activity within the city.

**Sec. 9-302. Appellate Review.**

The City shall provide, by ordinance, for the review of administrative decisions of city agencies which are not within the appellate jurisdiction created by other sections of this Charter.

This section shall not be construed to diminish the right of any party to direct any immediate legal or equitable remedies in any court or other tribunal.

**Sec. 9-303. Limitations on a Franchise.**

An irrevocable franchise and all renewals, amendments and extensions of it, may be granted only by ordinance.

The City Council may approve such an ordinance only after a public hearing has been held on it and after the grantee named in it has filed with the City Clerk its unconditional acceptance of all the terms of the franchise.

The ordinance may not take effect unless it has been approved by the voters of the city, where state law so requires, or, unless it has been approved by a two-thirds (2/3) majority of City Council members serving, where approval of the voters is not required by state law.

When approval of the voters of the City is required, the ordinance as approved by the City Council shall be published in a daily newspaper of general circulation in the city not less than thirty (30) days before the election at which it is submitted to the voters The City Council may not call a special election unless the expense (as determined by the City Council) of holding the election has first been paid to the Treasurer by the grantee.

A franchise for the use of the streets or other public places of the city or for the transaction of a local business may not be sold or transferred in any manner, nor may a party other than the grantee use the franchise, unless the city gives its consent by ordinance.

**Sec. 9-304. Standard Provisions of a Public Utility Franchise.**

Public utility franchises shall include provisions for fixing and periodically readjusting rates and charges at the direction of the City.

The City may, with respect to any public utility franchise granted by it, whether or not so provided in the granting ordinance:

1. Repeal the franchise for:

   a. Violation of or failure to comply with any of its provisions,
   b. Misuse or non-use, or
   c. Failure to comply with any regulation imposed under authority of this Charter;

2. Require proper and adequate extension and maintenance of plant facilities at the highest practicable standard of efficiency;

3. Establish reasonable standards of service and quality of products, and prevent unjust discrimination in service or rates;

4. Require continuous and uninterrupted service to the public in accordance with the terms of the franchise throughout the entire period of the franchise;

5. Impose other regulations determined by the City Council to be conducive to the health, safety, welfare, and convenience of the public; or

6. Require the public utility to permit joint use of its property and equipment, located in the streets and public places of the City, by the City and other utilities, insofar as joint use may be reasonably practicable, and, in the absence of agreement, upon application by the public utility, provide for arbitration of the terms and conditions, for joint use.

# ARTICLE 9.
# MISCELLANEOUS PROVISIONS
## CHAPTER 4. SPECIFIC RESPONSIBILITIES

**Sec. 9-401. Board of Review.**

The City Council may, by ordinance, sit as a Board of Review to the extent allowed by law, or appoint a Board of Review to hear and determine appeals from property tax assessments. The board shall possess the duties and powers provided by law, which may be exercised by the whole board or by committees thereof. An appointed board shall consist of at least seven (7) members appointed from each of the non at-large districts.

Appeals from decisions of the board shall be taken in the manner provided by law.

**Sec. 9-402. Hospitals.**

The City shall provide, by ordinance, for the operation of any city hospital by a division of a public health agency, by a department of hospitals, or by a non-profit public corporation.

Notwithstanding section 5-103, the ordinance may provide for the administration of a hospital by a commission which may appoint a director and deputy director, exempt from Article 6, Chapter 4. Such an ordinance and any amendment to it shall originate with the Mayor, except that an ordinance, providing for the operation of a city hospital by a non-profit public corporation, and any amendment thereto, may originate with either the Mayor or the City Council.

**Sec. 9-403. Revision Question.**

The question of whether there shall be a general revision of the City Charter shall be submitted to the voters of the City of Detroit at the gubernatorial primary of 2018, and at every fourth (4th) gubernatorial primary thereafter and may be submitted at other times in the manner provided by law. A primary election shall be held for the offices of Charter Revision Commissioners at the same election and shall be void if the proposition to revise is not adopted. If the proposition to revise is adopted, Charter Revision Commissioners shall be elected at the ensuing general election for governor.

**Sec. 9-404. Schools.**

Every resident of Detroit has a right to an education that will permit the full development of his or her potential. City government has a responsibility to cooperate with the school districts serving the people of Detroit in the achievement of this objective and to exercise such influence and to provide such ancillary or supplemental services to the people or to the school districts as may be necessary or helpful in the furtherance of this objective.

**Sec. 9-405. Elimination of Redundancy in Government.**

Every effort shall be made by city elective officers, employees, and branches and units of government to reduce duplication of efforts and increase and maintain efficiency in the operations of city government. Within one hundred eighty (180) days of the effective date of this Charter, the Executive and Legislative branches, and City Clerk shall conduct a comprehensive evaluation of its programs, services, activities, policies and operations to identify and eliminate any redundancy. Thereafter, the evaluations shall be

made within the first quarter of the year following the regular city general election. Each evaluation shall result in a compiled report of the City of Detroit entitled *"Report on Elimination of Redundancy,"* which, at a minimum, outlines the efforts and means taken to identify redundancy, makes findings on redundancy and details methods implemented to eliminate, reduce or avoid redundancy. The report shall be published and presented to City Council and the Auditor General in April of the year of its completion.

As much as practicable attempts shall be made to realign service delivery systems and eliminate operational duplication and inefficiency, which may include cooperative agreements with other government entities as allowed by law.

# ARTICLE 9.
# MISCELLANEOUS PROVISIONS
## CHAPTER 5. SPECIFIC POWERS

**Sec. 9-501. Eminent Domain.**

The City has the power of eminent domain and, to the extent permitted by law, may condemn private or public property, located within or outside the city, for any public purpose. This power may be exercised in accordance with any procedure authorized by law or ordinance.

Private property may not be taken without just compensation therefore being first paid or secured. Further, the City may, by ordinance, provide supplemental compensation for property taken. Where the conduct of the City constitutes a taking of property under the law, any party injured by such a taking may institute an inverse condemnation action in a court of appropriate jurisdiction.

**Sec. 9-502. Enabling Legislation.**

The City may enact any ordinance authorized by law or necessary to carry out the provisions of any section of this Charter.

**Sec. 9-503. Historic Areas and Landmarks.**

The preservation of historic areas and landmarks is declared to be a public purpose.

The City may provide, by ordinance, for the preservation of historic areas and landmarks within the City. When an area is designated an historic district, the designation may not be withdrawn without the consent of a majority of the property owners within the district and the requirements of the district applicable to private property may be enforced upon the complaint of any property owner or association of property owners within the district.

**Sec. 9-504. Library.**

The City may make appropriations to, and exercise its power in aid of, the Detroit Library Commission for the operation of libraries within the City.

**Sec. 9-505. Penalties.**

The City shall by ordinance, provide punishment, up to the extent permitted by law, for the violation of this Charter or any ordinance.

All persons prosecuted for the violation of this Charter or any ordinance shall be afforded all rights of due process required by federal and state law.

**Sec. 9-506. Rents, Tolls, Excises and Taxes.**

The City may provide for the laying and collecting of rents, tolls, excises and taxes in accordance with section 4-114.

**Sec. 9-507. Service Fees.**

Any agency of the City may, with the approval of the City Council, charge an admission or service fee to any facility operated, or for any service provided, by an agency.

The approval of the City Council shall also be required for any change in any such admission or service fee.

**Sec. 9-508. Utilities.**

1.      Acquiring and Financing of City-Owned Utilities.
The City may acquire, construct, own, operate, improve, enlarge, extend, repair, and maintain public utilities and borrow money, levy taxes, or make other arrangements for the financing of public utilities to the maximum extent permitted by law or this Charter. Included is authority to acquire and maintain or participate in the acquisition of maintenance of a bridge or tunnel across the Detroit River or to acquire, own and operate ferry boats on the Detroit River and surrounding water.

As used in the chapter, public utility means any business or service affected with the public interest as defined by general law.

2.      Rates.
Except as provided by section 7-1202, the City shall, by ordinance, fix just and reasonable rates and such other charges as may be necessary for supplying city utility services to the residents of the City and others.

3.      Enforcement.
The City shall provide, by ordinance, for the enforcement of city utility rates and charges.

**Sec. 9-509. Parking Fines.**

The City Council shall, by ordinance, adopt a schedule of fines and penalties for parking violations.

**Sec. 9-510. Incentives for City-Based Businesses.**

The City shall provide by ordinance for incentives to business entities located within the City of Detroit, to the extent permitted by law. The City may adopt a purchasing ordinance with a system of incentives for Detroit-based businesses. The incentives may provide for businesses located in economic zones of the City, or for community-based enterprises, as defined by ordinance. This ordinance shall be enacted no more than one hundred eighty (180) days after adoption of this Charter.

# ARTICLE 9.
# MISCELLANEOUS PROVISIONS
## CHAPTER 6. RETIREES' REPRESENTATION

**Sec. 9-601. Retirees' Representation.**

Retired general city employees are entitled to be represented in the city legislative and budgetary proceedings on issues affecting their interest by persons elected by them.

# ARTICLE 9.
# MISCELLANEOUS PROVISIONS
## CHAPTER 7. RISK MANAGEMENT

**Sec. 9-701. Risk Management Council.**

The Risk Management Council is an advisory body to the Mayor comprised of:

1. A chairperson, appointed by the Mayor, who shall be an appropriately qualified Mayoral cabinet-level official, which may not be any person identified in this section;
2. The Corporation Counsel;
3. The Chief of Police;
4. The Finance Director;
5. The Human Resources Director;
6. The Auditor General;
7. A City Council designee who is a city employee, other than a member of City Council;
8. The Inspector General; and
9. The Transportation Director.

**Sec. 9-702. Duties.**

In addition to their regular duties, members of the Risk Management Council shall have the following duties:

1. The Risk Management Council shall make recommendations to the Mayor, and shall have authority to implement the Mayor's directives concerning implementation of policies, programs and activities to minimize exposure or liability of the City to claims and damages.

2. The Risk Management Council shall produce, with the assistance of the Finance Department, a quarterly report that summarizes its evaluation, monitoring and coordination of the City's comprehensive risk management strategy.

3. The Risk Management Council shall prepare for the Mayor and City Council an annual strategic risk management report, in conjunction with the Finance Department, which evaluates the effectiveness of risk management functions within the City. Included in the report shall be recommendations on, and identification of, city-wide and agency and department specific, risk reduction strategies and projected savings from implementation of these strategies.

4. The Risk Management Council and Finance Department shall formulate a cost system to monitor, control and report on all potential risk and liability costs to the City of Detroit.

5. Assisted by the Finance Department, the Risk Management Council shall provide an annual report to the Mayor and City Council summarizing claims that have been paid by the City on risk related matters including, but not limited to, the settlement of lawsuits, pre-litigation claims and worker's compensation claims. The report shall provide recommendations for risk avoidance and liability exposure reduction measures related to these claims. Release of the report shall coincide with the Mayor's annual submission of the proposed budget to City Council.

Annually the Risk Management Council shall assess the administration and effectiveness of safety, liability and risk reduction functions in each city agency, and report findings and recommendations to the Mayor and City Council. The City shall make an annual appropriation for the operation of the Risk Management Council that is adequate to perform its duties.

# ARTICLE 9.
# MISCELLANEOUS PROVISIONS
## CHAPTER 8. INSURANCE ASSISTANCE

**Sec. 9-801. City Sponsored Insurance Assistance.**

To the extent allowed by law, the City of Detroit may establish an insurance system to provide, support, supplement or otherwise assist in the provision of automobile and/or property insurance for City residents. Within sixty (60) days of the effective date of this Charter, the Corporation Counsel shall advise the City Council and Mayor, in writing, on the legal requirements necessary to implement the insurance systems contemplated by this chapter and whether there exists any legal prohibition to implementing the insurance system.

No insurance system shall be implemented without the Mayor and City Council jointly commissioning a feasibility study that must demonstrate the ability of the City to fund, sustain and operate the insurance system in a fiscally responsible manner. Any insurance system implemented by the City shall be done pursuant to ordinance and in accordance with applicable laws.

City Council may, by majority vote, discontinue the operation of any insurance program implemented under this chapter.

# ARTICLE 10.
# COURTS

**Sec. 10-101. Courts.**

The organization, powers, procedures and practices of the courts with jurisdiction for cases involving violations of this Charter or city penal ordinances shall be as provided by this Charter or ordinance, in accordance with state law.

The City may make appropriations for the operation of any court where it is in the city's interest to do so and shall dispose of revenues resulting from the collection of fines in accordance with law.

# ARTICLE 11.
# RETIREMENT PLANS

**Sec. 11-101. City's Duties.**

1.      The City shall provide, by ordinance, for the establishment and maintenance of retirement plan coverage for city employees.

2.      Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and that funding shall not be used for financing unfunded accrued liabilities.

3.      The accrued financial benefits of active and retired city employees, being contractual obligations of the city, shall in no event be diminished or impaired.

**Sec. 11-102. Continuation of Existing Plans.**

The retirement plans of the city existing when this Charter takes effect, including the existing governing bodies for administering those plans, the benefit schedules for those plans and the terms for accruing rights to and receiving benefits under those plans shall, in all respects, continue in existence exactly as before unless changed by this Charter or an ordinance adopted in accordance with this article.

**Sec. 11-103. Principles Applicable In Administering Plans.**

Not more than two (2) governing bodies for administering the city's retirement plans may be established, whose membership is set forth in this section, subject to applicable law.

1.   The Board of Trustees of the General Retirement System shall consist of:

   a. The Mayor;
   b. A City Council member selected by that body;
   c. The City Treasurer;
   d. Five (5) members of the retirement system, to be elected by the members of the retirement system under rules and regulations as may be adopted by the Board; except that not more than one (1) trustee shall be elected from any department;

   e. A citizen of the City who is neither an employee of the city nor eligible to receive benefits under the retirement system, appointed by the Mayor, subject to approval of the Board; and
   f. One (1) retirant, receiving benefits under the retirement system and elected by retired city employees under procedures established by ordinance.

2.   The Board of Trustees of the police and fire retirement system shall consist of:

   a. The Mayor or in the absence of the Mayor, a designee;
   b. A City Council member selected by that body;
   c. The City Treasurer;
   d. The Chief of Police;
   e. The Fire Commissioner;
   f. Three (3) firefighters who are members of the retirement system elected by the firefighter members under the rules and regulations as may be adopted by the Board. Trustees shall be:
      (1) Two (2) to be elected by and from members holding the rank of lieutenant (or equivalent) and lower ranks.

      (2) One (1) to be elected by and from members holding a rank above lieutenant (or equivalent);

  g. Three (3) police officers who are members of the retirement system elected by police officer members under the rules and regulations as may be adopted by the board. Trustees shall be:

      (1) Two (2) to be elected by and from members holding the rank of lieutenant (or equivalent) and lower ranks.

      (2) One (1) to be elected by and from members holding a rank above lieutenant (or equivalent); and

  h. Two retirants, receiving benefits under the retirement system, who shall be residents of the city, one elected by retired firefighters and one elected by retired police officers under procedures established by ordinance.

Staff services required by a governing body shall be provided as determined by the Finance Director.

### Sec. 11-104. Information Required Before Benefit Increase.

Before final action on any proposed change in future retirement benefits is taken, the City Council shall obtain a report as to the immediate and long-term costs of the change from an independent actuary of its choosing and may not take final action until at least three (3) months after the report of the actuary is made public at a meeting of the City Council.

### Sec. 11-105. Audits.

The Board of Trustees for the city retirement plans shall contract for annual independent audits.

# ARTICLE 12.
# INITIATIVE and REFERENDUM

**Sec. 12-101. Initiative and Referendum.**

The voters of the city reserve the power to enact city ordinances, call the "initiative", and the power to nullify ordinances, enacted by the city, called the "referendum". However, these powers do not extend to the budget or any ordinance for the appropriation of money; the referendum power does not extend to any emergency ordinance.

The initiative and the referendum may be invoked by petition as provided in this chapter.

**Sec. 12-102. Petitions.**

Initiative and referendum petitions must be signed by voters of the City, not less in number than three percent (3%) of all votes cast for the office of Mayor at the preceding regular city general election.

Petitions shall set forth in full, the measure to be initiated or referred, as well as a brief statement of its substance. If the measure is submitted to the voters, that brief statement shall appear on the official ballot.

Signers of the petitions shall be voters of the City. Each signer shall sign his or her name indelibly and shall indicate his or her residence and the date of signing. Each petition paper shall contain a sworn affidavit of the circulator stating the number of signers on each petition paper; that each signature is, to the knowledge of the circulator, the genuine signature of the person whose name it purports to be; and that it was affixed in the presence of the circulator.

**Sec. 12-103. Time of Filing.**

An initiative petition must be filed with the City Clerk not less than one hundred and forty (140) days before the election at which it is to be voted on.

A referendum petition must be filed with the City Clerk before the ordinance on which the referendum is sought, takes effect or, where the ordinance is given immediate effect, within thirty (30) days after its effective date.

**Sec. 12-104. Filing and Canvass of Petitions.**

Petitions to adopt or rescind an ordinance shall be filed with the Office of the City Clerk. The City Clerk shall verify the number of petitions that were filed and transmit petitions to the Department of Elections for a canvass of the petitions. Within ten (10) days of receipt, the Department of Elections shall canvass the signatures thereon to determine their sufficiency and make a report of the result to the City Council. Any signature on an initiative petition obtained more than six (6) months before the filing of the petition with the Office of the City Clerk shall not be counted.

**Sec. 12-105. Insufficient Petitions.**

If the Clerk's canvass discloses that the number of signatures on petitions for any initiative or referendum is insufficient, additional petitions may be filed within fifteen (15) days after the Clerk's determination.

When this fifteen (15) day period has expired, the Clerk shall again canvass the signatures on the petitions filed to determine their sufficiency and make a report of the result.

### Sec. 12-106. Suspension of Ordinance.

Where a referendum on an ordinance has been invoked under section 12-103, the effect of the ordinance shall be delayed or suspended until the City Clerk has made a final report that the referendum petitions are insufficient or, if the referendum petitions are sufficient, until the voters of the City have expressed their support for the ordinance in the referendum election.

### Sec. 12-107. Time Limit for Enactment or Repeal of Ordinance.

Upon the report of the Department of Elections that the initiative or referendum petitions are sufficient, and filed within the time limits provided by this Charter, the City may within sixty (60) days:

1. In the case of an initiative petition, enact the ordinance, which is proposed by the petition, in accordance with Section 4-115, 4-117, 4-118 of this Charter; or
2. In the case of referendum petition, repeal the ordinance, which is set out in the petition, in accordance with Section 4-115, 4-117, 4-118 of this Charter.

### Sec. 12-108. Submission to Election Commission and Voters.

If the City fails to enact or repeal the ordinance in accordance with Section 12-107 of this Charter, the City Council shall forward the proposed initiative or referendum petition to the Election Commission. The Election Commission shall make a determination as to whether the question can lawfully be placed on the ballot and report their conclusions to the City Council. If there is no legal impediment to placing the measure on the ballot, the Election Commission shall place the question on the ballot and submit the measure to the voters in accordance with the applicable requirements of Michigan Election Law, MCL 168.1, et seq.

If a measure must be submitted to the voters, it shall be submitted:
1. In the case of an initiative or referendum, at the next election in the city, or, in the discretion of the City Council, at a special election, subject to applicable provisions of the Michigan Election Law, MCL 168.1, et seq.

Except as otherwise required by law, the result of any initiative or referendum election shall be determined by a majority of the voters voting on the question.

### Sec. 12-109. Amendment, Repeal and Re-Enactment.

An ordinance adopted by the voters through initiative proceedings may not be amended or repealed by the city for a period of twelve (12) months after the date of the election at which it was adopted, and an ordinance nullified by the voters through referendum proceedings may not be re-enacted by the city for a period of twelve (12) months after the election at which it was defeated.

### Sec. 12-110. Submission by Council.

The City Council may, on its own motion, submit any proposed ordinance or any proposal for the repeal or amendment of any ordinance to the voters in the manner and with the effect provided in this chapter for submission of proposals initiated by petition.

**Sec. 12-111. Similar or Conflicting Measures.**

If two (2) or more initiative or referendum measures submitted to the voters of the City shall have conflicting provisions, or attempt to accomplish the same object, and more than one (1) of these measures is approved by the voters, the measure receiving the highest number of affirmative votes shall prevail to the extent of their inconsistency.

**Sec. 12-112. Repeal or Amendment of Ordinance in Effect.**

The voters of the City may invoke the initiative power to repeal or amend an existing ordinance.

# ARTICLE 13
# SCHEDULE

### Sec. 13-101. Effect on Existing City Legislation.

All ordinances and resolutions of the City and all orders, rules and regulations made by any officer or agency of the City which are not inconsistent with this Charter shall remain in effect, until changed by action taken under this Charter.

The Corporation Counsel shall, within six (6) months after the effective date of this Charter, recommend to the City Council such changes as may be necessary to make the provisions of the 1997 Charter which have been continued in force as well as existing ordinances, resolutions, orders, rules, and regulations consistent with this Charter.

### Sec. 13-102. Continuation of Public and Private Rights.

All writs, actions, suits, proceedings, civil or criminal liabilities, prosecutions, judgments, sentences, orders, decrees, appeals, causes of action, contracts, claims, demands, titles and rights existing when this Charter takes effect shall continue unaffected except as modified in accordance with this Charter.

### Sec. 13-103. Rights of Officers and Employees.

No provision of this Charter shall affect or impair the rights or privileges of city officers or employees existing when this Charter takes effect with respect to appointment, ranks, grades, tenure of office, promotion, removal, pension and retirement rights, or the civil rights or privileges of city officers or employees.

Any person who, at the time this Charter takes effect, holds a position in city government from which he or she could have been removed only for cause or under the rules of the Civil Service Commission, may not be removed under this Charter unless:

1.      Cause for the removal is established in proceedings before the Civil Service Commission;

2.      The person is transferred to another position in city government and is assured of salary and benefits at least as favorable as would have been earned by service in the position from which transferred until mandatory retirement age is reached; or

3.      A mutually agreeable settlement is made by the City with the person discharging all rights against the City which the person may assert.

### Sec. 13-104. Effective Date.

Except as otherwise provided, this Charter shall become effective on January 1, 2012.

### Sec. 13-105. Employees Benefit Plan.

The governing provisions of the City of Detroit employees benefit plan may be changed by ordinance. However, the benefits provided by the City of Detroit employees benefit plan may be amended by resolution of the Detroit City Council.

The governing body of the employees benefit plan shall be the General Retirement System Board of Trustees, except the civilian member.

### Sec. 13-106. Condemnation.

The procedures for the exercise of the City's power of eminent domain existing when this Charter takes effect shall remain in effect until changed by ordinance.

### Sec. 13-107. Fire and Police Pension Committees.

The provisions of the 1974 Charter relating to the Fire Department Pension Committee and the Police Department Pension Committee, existing when this Charter takes effect, shall in all respects continue in existence exactly as before until changed by ordinance.

### Sec. 13-108. Police Fund.

The Police Commissioner's power under the 1974 Charter shall in all respects continue in existence exactly as before until changed by ordinance.

### Sec. 13-109. Initial Appointments.

Notwithstanding any provision of this Charter, the first appointments after the effective date of this Charter to the vacant positions on any multi-member body may be for varying terms less than the length prescribed by this Charter in order that thereafter not more than the specified number of terms will expire in any year.

The term of a member serving a fixed term of office on any multi-member body when this Charter takes effect shall expire at the end of the fixed term, unless otherwise indicated in this Charter. Appointments to vacancies arising on the multi-member bodies shall then be made in accordance with the provisions in this Charter.

### Sec. 13-110. General Provision.

If any question concerning transition from the 1997 Charter to this Charter (for which this Charter has not provided) arises, the City may provide for a resolution of the question by ordinance.

### Sec. 13-111. Submission of the Charter.

This Charter shall be submitted for adoption at the general election to be held November 8, 2011, in the manner and with the effect prescribed by state law as follows:

Proposal C - Proposal to Adopt a New City Charter.

Shall the City of Detroit Home Rule Charter proposed by the Detroit Charter Revision Commission be adopted?

      Yes
      No