## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JEROME COLLINS,

      Plaintiff,

vs.

                                 Case No: 15-cv-11765
                              HON BERNARD A. FRIEDMAN

CITY OF DETROIT, a Michigan municipal corporation,
DETROIT POLICE DEPARTMENT, RALPH GODBEE,
former Police Chief, JAMES CRAIG, Detroit Chief of Police
MATTIE LEWIS, Former Police Sergeant, STEVEN
DOLUNT, LETITIA JONES, RENEE HALL,
JAMES MOORE, WHITNEY WALTON, JOHN SERDA,
TODD SEVENKESEN, LT. PASTELLA WILLIAMS and
BRIAN STAIRS, Jointly and Severally

      Defendants.

BENJAMIN WHITFIELD, JR. (P23562)
Benjamin Whitfield, Jr. & Associates, PC
Attorneys for Plaintiff
613 Abbott Street
Detroit, MI 48226
Phone: (313) 961-1000
Email: benwlaw123@aol.com

## MOTION TO LIFT TO STAY OF LITIGATION IN ORDER TO PERMIT COLLINS IN AN AMENDED COMPLAINT TO PURSUE FEDERAL OR STATE TORT OR OTHER CLAIMS, AGAINST CITY OF DETROIT, DETROIT POLICE DEPARTMENT, RALPH GODBEE, CHIEF JAMES CRAIG, et al POLICE OFFICERS OR OTHERS WHO VIOLATED HIS RIGHT

      NOW COMES Jerome Collins, by and through his attorney, Benjamin Whitfield, Jr., and

moves this Honorable Court pursuant to *11 USC § 362(d) (1) and LR 7.1(d)* for an Order to Lift

the Stay of Litigation as to his claims against the City of Detroit for injunctive relief, and the

named individuals for both injunctive relief, and monetary damages, where permissible.  In

support of his motion, Collins states as follows:

1

1.  That he was a duly qualified City of Detroit police officer from September 20, 1993 until July 11, 2013, when he was charged with misconduct in office, and subsequently terminated.

2.  That the substance of the misconduct alleged was that Collins, who had worked part time security jobs, was paid by the City for work not actually performed. The allegations were subsequently proven to be false.

3.  That the Detroit Police Department (hereinafter DPD), relying upon falsified evidence, withheld evidence, or perjured testimony obtained by inducements including forbearance from or reduced punishments for infractions or misconduct on duty. convinced the Wayne County Prosecutor to charge Collins with violations of *MCL 750.2184 ET.SEQ.*

4.  Collins was tried to a Wayne County Circuit Court jury on December 8, 2011 and acquitted of all charges. *See, Exhibit 1*

5.  Upon acquittal, Collins requested reinstatement. *See Exhibit 2*

6.  That DPD, which has apparently singled Collins out for continuing disparate treatment, flatly refused reinstatement. Instead DPD, then under the control of Chief Godbee, initiated proceedings to terminate Collins.

7.  That said termination proceedings were pursued doggedly, persistently and almost as a personal vendetta until Collins was finally separated by the Trial Board on 9/20/2013.

8.  That DPD's treatment of Collins, was very different than that recently accorded by Defendant Chief Craig two direct comparators, i.e., Officers Charles Lynem and Chancellor Searcy who were charged with embezzlement for more than $20,000, larceny for less than $20,000, misconduct in office and false report of a felony.

9.   That both comparators, who were acquitted by a jury on 1/11/ 2017, were immediately reinstated by Chief Craig. *See, Exhibit 3*

10.   That Collins, and the now reinstated Officers Lynem and Searcy, are or should be on the same footing because their situations cannot rationally be distinguished under controlling federal and state of Michigan EEO or antidiscrimination law, e.g., *42 USC § 1983 or Elliott Larsen Civil Rights Act.*

11.   That the Complaint Collins' seeks leave to refile would enable him to pursue any and all claims arising from an undisputed factual predicate clearly demonstrating that Collins has received ongoing disparate treatment from DPD, Chief Godbee, his successor, Chief Craig, and the named individual Defendants.

12.   That since it is now clear that the Bankruptcy Court, to which this Court previously sent Plaintiff's tort claims lacks jurisdiction, and that said claims are not barred by the City of Detroit's Plan of Adjustment, it is appropriate that said claims be returned to this Court for resolution.

13.   That the decision whether to lift the stay to permit Collins to pursue litigation against the City, and individuals who were not part of the bankruptcy case is within the courts discretion, *In re White, 851 F.2d 170 (6th Cir 1988); In re Moralez, 128 BR 526 (ED Mich 1991)* and should be made on a case-by-case basis. *In re MacDonald, 755 F.2d 715 (9th Cir 1985).*

14.   That the stay should be lifted because it does not frustrate the purpose of the stay and is necessary to protect Collins' clearly identifiable interest in pursuing his claims from wrongful discharge, violation of federally protected statutory and constitutional rights, as

3

well as rights to fair and just treatment arising under *Art 1, § 17,* the so called *Fair and Just Treatment Clause of the State of Michigan Constitution.*

15.    That relief from the stay should be granted because Collins can demonstrate cause under *§362(d)(1)* of the Code.  Cause is determined on a case-by-case basis, based on the totality of circumstances.  *In re Flannery, 556 BR 319 (2016)*

16.    That *"cause"* as grounds for lifting the stay under *11 USC § 362(d)(1)* is a broad and flexible concept which permits the Court acting in equity to respond to inherently fact sensitive situations, such as the instant matter whose roots date back to 2008, and will ultimately determine whether Collins has been mistreated by the City, or its agents named as Defendants herein who were acting, albeit wrongfully, under color of law.

WHEREFORE, Collins moves this Honorable Court for leave to refile the Complaint attached hereto and thereafter to proceed in the usual manner a final disposition of claims raised therein same on their merits.

BENJAMIN WHITFIELD, JR & ASSOCIATES, P.C.


/s/ Benjamin Whitfield, Jr.
        Benjamin Whitfield, Jr. (P23562)
        613 Abbott Street
        Detroit, Michigan 48226
        (313) 961-1000
        benwlaw4822@aol.com


Dated:  APRIL 4, 2017

4

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 4, 2017, the Plaintiff's Motion to Lift Stay of Litigation in Order to pursue federal or state tort, or other claims, against the City of Detroit, Detroit Police Department, Ralph Godbee, et al., was filed and served via the Court's electronic case filing and notice system and served upon counsel as listed below, via first class mail and electronic mail.

Approved, SCAO

| Original – Court | 3rd copy – Defendant/Juvenile attorney |
| 1st copy – Prosecutor | 4th copy – Arresting agency |
| 2nd copy – Defendant/Juvenile | |

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | ORDER OF ACQUITTAL/DISMISSAL OR REMAND | CASE NO. 11-002017-01-FH |
|---|---|---|

ORI MI- 821695J   Court address   1441 St. Antoine - Detroit, MI 48226   Courtroom   804   Court telephone   313-724-2461 a.a.

Police Report No.

| THE PEOPLE OF | ☒ The State of Michigan ☐ _____ | v | Defendant/Juvenile name, address, and telephone no. Jerome Collins 11187 Gratiot  Detroit MI 48213 |
|---|---|---|---|

| | CTN/TCN 10707708-01 | SID | DOB 07/14/1960 |

☐ Juvenile in the matter of _____

| Count | CRIME | CHARGE CODE(S) MCL citation/PACC Code |
|---|---|---|
| 1 | False Pretenses - $1000 or more but less than $20,000 | 750.218A |
| 2 | False Pretenses - $1000 or more but less than $20,000 | 750.218A |
| 3 | Common Law Offenses | 750.505-C |

IT IS ORDERED:

☐ 1. The case is dismissed on the motion of the court   ☐ with   ☐ without   prejudice.

☐ 2. Defendant's/Juvenile's motion for dismissal is granted   ☐ with   ☐ without   prejudice and the case is dismissed.

☐ 3. Defendant's/Juvenile's motion for dismissal is granted in part   ☐ with   ☐ without   prejudice and the following charge(s) is/are dismissed: _____

☒ 4. Defendant/Juvenile is acquitted on all charge(s) in this case after trial by   ☐ Judge   ☒ jury.

☐ 5. Defendant/Juvenile is acquitted after trial by   ☐ Judge   ☐ jury   only on the following charge(s): _____

☐ 6. Defendant/Juvenile shall be immediately discharged from confinement in this case.

☐ 7. Bond is canceled and shall be returned after costs are deducted.

☐ 8. Bond/bail is continued on the remaining charge(s).

☐ 9. The case is remanded to the _____ district court for further proceedings for the following reasons: _____

☐ 10. If item 4 is checked, the arresting agency shall destroy the fingerprints and arrest card according to law.

| 08December 2011 | | P39787 |
| Date | Judge   Patricia P. Fresard | Bar no. |

If item 1, 2, or 4 is checked, the clerk of the court shall advise the Michigan State Police Criminal Justice Information Center of the disposition as required under MCL 769.16a.

TO THE DEFENDANT: Your fingerprints and arrest card will be destroyed by the Michigan State Police within 60 days of the date of this order when permitted by MCL 28.243.

MC 262 (3/08) ORDER OF ACQUITTAL/DISMISSAL OR REMAND                          MCL 769.16a, MCR 6.419, MCR 7.101(M)

Ex 1

· LAW OFFICES ·

## GOLDPAUGH & ASSOCIATES, P.C.

615 GRISWOLD
SUITE 506
DETROIT, MICHIGAN 48226

JOHN J. GOLDPAUGH
DONALD HOWARD STOLBERG

(313) 963-8220
FAX (313) 226-0807

NANCY GOLDPAUGH
LEGAL ASSISTANT

December 12, 2011

Chief of Police Ralph Godbee, Jr.
Detroit Police Department
1300 Beaubien
Detroit, MI 48226

RE:  Reinstatement of Jerome Collins, Badge No. 1508

Dear Chief Godbee:

On January 21, 2010, Officer Jerome Collins was suspended without pay from the Detroit Police Department.  The basis for this suspension was allegations of larceny and misconduct in office, which resulted in a three-count felony warrant being issued on or about April 20, 2010.

On December 8, 2011, Officer Collins was found not guilty of all charges in a jury trial before the Honorable Patricia P. Fresard.  I am enclosing a copy of the Order of Acquittal/Dismissal.

The basis for the suspension without pay no longer exists since Officer Collins was found not guilty of the charge.  Therefore, at this time, I am requesting that Officer Collins be reinstated to the payroll and that the suspension without pay be set aside.

Please contact me should you have any questions or if further information is needed.

Thank you for your anticipated cooperation in this regard.

Very truly yours,

John J. Goldpaugh

JJG/nag
cc:  Joe Duncan
     Lieutenant Robbin Rivers
     Lt. Pastella Williams
     Celia Washington
     P.O. Jerome Collins



Michigan

# Detroit police accused of stealing from suspects found not guilty by jury



By **Gus Burns | fburns@mlive.com**
Follow on Twitter
on January 11, 2017 at 7:28 PM, updated January 11, 2017 at 7:36 PM

Two Detroit police officers accused of criminal behavior while on duty were found not guilty by a jury on all charges Wednesday.

Charles Lynem, 33, and Chancellor Searcy, 30, both seven-year department veterans, were charged with numerous crimes, including embezzlement, larceny, misconduct in office, failure to uphold the law and filing false felony reports in connection with several arrests or stops they conducted as members of Detroit Tactical Response Unit.

The two were suspended in 2014 after the Wayne County Prosecutor's office relayed information launching a police investigation into the pair's activities.

The suspensions continued without pay when Wayne County Prosecutor Kym Worthy's office filed charges in December 2015.

 **Two Detroit cops suspected of dirty deeds; Chief says charges don't reflect department**

"It is alleged that there was wrongful conduct surrounding the detention, frisk, seizure of property and the arrest of the suspect," Worthy's office said in the 2015 charging statement.

Searcy was charged with with larceny from a person, misconduct in office and failure to uphold the law in an Aug. 4, 2014 incident on Webb Street. Searcy was accused of stopping and confiscating cash from a 28-year-old Detroit man who reported the theft the same day.

Searcy was also charged with larceny from a person, misconduct in office and failure to uphold the law in an Aug. 10, 2014 incident on Quinn Street.

"It is alleged that Officer Searcy stopped and patted down a Detroit man and removed a sum of money from his pocket," Worthy's office said.

A Sept. 27, 2014 encounter involving both officers on West Grant Boulevard also resulted in charges.

"It is alleged that Officers Searcy and Lynem fabricated the circumstances and documentation surrounding the arrest of a 41-year-old man for carrying a concealed weapon," the prosecutors office said in December 2015.

Chief James Craig **tells WXYZ-TV, Channel 7 News** he intends to return the officers to work with the department now that they've been found not guilty.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME COLLINS,

       Plaintiff,

vs.

                                    Case No: 15-cv-11756
                              HON.BERNARD A. FRIEDMAN

CITY OF DETROIT, a Michigan municipal corporation,
DETROIT POLICE DEPARTMENT, RALPH GODBEE,
former Police Chief, JAMES CRAIG, Detroit Chief of Police
MATTIE LEWIS, Former Police Sergeant, STEVEN
DOLUNT, LETITIA JONES, RENEE HALL,
JAMES MOORE, WHITNEY WALTON, JOHN SERDA,
TODD SEVENKESEN, LT. PASTELLA WILLIAMS and
BRIAN STAIRS, Jointly and Severally

       Defendants.

BENJAMIN WHITFIELD, JR. (P23562)
Benjamin Whitfield, Jr. & Associates, PC
Attorneys for Plaintiff
613 Abbott Street
Detroit, MI 48226
Phone: (313) 961-1000
Email: benwlaw123@aol.com

## MEMORANDUM IN SUPPORT OF MOTION LIFT STAY

### Statement of Facts

       Collins was hired by DPD on September 20, 1993, as a law enforcement officer. Before

becoming a police officer, Collins had played and coached semi-professional softball, and

engaged in other athletic activities. Cognizant of Collins' background in athletics, about 11

years after his hire, DPD officials assigned him to the Ninth Precinct, where he worked in the

Community Relations Unit and reported to Commander Vivian Tolbert. Within a few weeks of

being assigned to the Ninth Precinct, Commander Tolbert instructed Collins that his primary

mission in Community Relations was to develop after school sports programs for youth in the

1

community served by the Ninth Precinct as part of an ongoing crime fighting initiative.  His shift was from 2:00 p.m. to 10:00 p.m., five days a week.  He also worked Saturdays and Sundays because games were held weekends.  His schedule was tailored to facilitate contact with the adolescents DPD wanted to reach.  Collins went about his work as assigned, and continued to do the work for which Detroit PAL named him its Officer of the Year in 2000.  *See, Exhibit 1*

In early 2006, the Ninth and Fifth Precincts merged to form the Eastern District. Collins then became supervised by Sergeant Mattie Lewis, who headed the Community Relations Unit of the Eastern District.  Sgt. Lewis ordered Collins to continue in his specialized duties on the same shift, but for reasons best known to herself, recorded his tour of duty as being from 12:00 a.m. to 8:00 p.m.  The discrepancy later played a significant role in Collins' misfortune because it seemed to suggest he should have been on duty when he was not.  Collins did such a good job that he won the Spirit of Detroit Award from the City of Detroit and Certificate of Appreciation from the Wayne County Board of Commissioners.  *See, Exhibits 2 & 3*

In furtherance of his mission to advance the goals of the Community Relations Unit, Collins organized youths from the east side into competitive football, bowling, baseball, and basketball teams; he organized regular after school practices involving teams from Detroit and neighboring communities.  Significantly, Collins work was not supported financially by DPD.  But because Collins was so dedicated to his mission, and saw firsthand the beneficial impact of his work on the young people he served, Collins funded his work out of his own pocket.  The fruit of his efforts is reflected in the young men whom he coached, or played in the league he organized, who are now attending some of the most prestigious universities in the country on athletic scholarships, or pursuing careers as professional athletes.  For example: Derrick Walton plays basketball for the University of Michigan; DPD Sgt. Lem Wilson brought his son, Richard,

2

to practice; Richard Wilson is the starting running back at Boston College; Michael Webber, plays running back at Ohio State;  Kiree Phillip (Oakland University) now plays for Cleveland Cavaliers, Al Robertson, (Penn State) now plays for the Jacksonville, Jaguars).  Robert Edwards at Cleveland State, Josh Jackson at Kansas University; Quintin Jackson, a player on Huntington Woods Bulldogs, was the son of Rodney Jackson, DPD IA; ; Dominick Barnes – Youngstown State, Detroit Lions; Juwan Howard, Jr (U of D) overseas; Carlton and Dale Brundage, U of M, transferred to U of D; Devin Marvel, Iowa University; Amir Williams, Ohio State (Orlando Magic); Josh Lowles, Kent State University (Greek Pro League); Dion Sims, Michigan State University (Miami Dolphins); Jacob Joubert, U of D; Edmond Summers, Xavier University (Cincinnati); Ernest Thomas, University of Illinois; Andre` Rison, Jr, MSU, Joe Dumars, Sr attended games (FAMU), Joe Dumars, Jr; Benny Flowers, Jr , MSU (Denver Broncos); Daryl Fleming, GVSU; Chris Flowers, CMU (Indiana Pacers); Deitech Lever, Ferris State (son of IA Officer Lever); A.J. Matthews, U of Toledo; Billy Thomas, Oakland University; Al Irendow, DePaul; Carl Baker, Schoolcraft College; Dave Lamone – Cornell University; Jeff O'Brien, GVSU; Braylon Edwards, U of M (Cleveland Browns); Devin Gardner, U of M; Isaac Spikes, Central Florida University; Jordan Morgan, U of M; Shane Williams, Morehead State University; Durell Summers, MSU; Mike Sinclair, Miles College; Marcus Crensaw, Cal State Fullerton; Delano Collins, Albion University; Marcus Jones, USC (basketball); Lee Bailey, Chaminade (Hawaii); Desmond Barnes, Arizona State University; Cassius Winston, who plays basketball for Michigan State is an alum of his programs.  Over 100 young men that came through his program went on to play at the college level.  The success his alums have had is a clear testament to the fundamental strength of his work and commitment.

3

Upon his arrival at work on scheduled workdays, Collins checked in with Sgt. Mattie Lewis, who posted his weekly and weekend schedules in the Eastern District's Community Relations office, and circulated a copy of his schedule to then Deputy Chief Godbee and the District's two Commanders, i.e., James Moore and Steven Dolunt.[1] *A copy of his schedules are attached as Exhibits 4 and 5.  Also attached are photographs of Collins on sideline of football games as Exhibit 6.*  Collins performed his duties in an exemplary manner[2] with the full knowledge and support of his superiors until the fall of 2008, when a letter from his estranged wife accusing him of time and attendance irregularities came into the District.  Unbeknownst to Collins, the letter from his estranged wife went to Internal Affairs, where it triggered a covert investigation that found no violations.[3]  An anonymous letter to DPD a year later raised similar allegations.  The Internal Affairs investigation it triggered found that Collins had committed larceny by false pretenses for an amount in excess of a hundred dollars by being paid for hours not worked.  Collins was accused of billing DPD while working part time security jobs.  As subsequent events, including a jury trial, conclusively demonstrated, the IA investigation was nothing more than a spiteful, witch hunt or vendetta against a good man, who had done nothing wrong.

DPD's theory was that Collins was being paid for work he had not performed because the shift he actually worked did not jibe with the time sheet Sgt. Lewis prepared.[4]  The fact is that the entire DPD chain of command, starting with Sgt. Lewis, knew Collins' actual shift (because

---

[1]  In order for Collins to leave the City with DPD van for practice, or road trips, e.g., to Flint, Collins always obtained approval.  Unauthorized use of vans was ground for dismissal.

[2]  Collins was recognized for his good work by the Detroit City Council and Wayne County Commission. *See, e.g., Exhibits 3 and 4*

[3]  Even though he was under investigation by Internal Affairs in 2007 because of a letter from his estranged wife, DPD never informed Collins that he was being investigated.

[4]  The pictures attached as *Exhibit 7* show Collins at a PAL football game with his superiors, Chief Godbee and State AAU officials,

4

it was prepared by his superiors and posted in the precinct, with a copy circulated to headquarters), Internal Affairs sought and obtained a warrant charging Collins with three felonies. Despite ample proof that Collins had done nothing wrong,[5] and had performed his duties in a transparent and noteworthy manner, *See, Exhibits 2, 3 and 4,* he was still subjected to the wrenching emotional duress of a jury trial with exposure to a possible jail term.[6] Fortunately for Collins, he was able to obtain competent representation (for which he remains deeply in debt), and demonstrate to the jury that the charges against him were totally devoid of merit. He was acquitted of all charges on December 8, 2011. *See, Exhibit 7* He requested reinstatement a few days later, but was denied. *See, Exhibits  8*

**None of the factors that may militate against granting leave to amend his Complaint is present herein.**

Collins has acted with reasonable promptness to seek clarification from the Court. He has requested a ruling in Bankruptcy Court as to his Proof of Claim, and before this Court as to the procedural avenues available to vindicate or raise his very serious claims of official misconduct, and two direct male comparators ordered reinstated after being acquitted of criminal charges abuse of power, gender based discrimination where two direct female comparators were treated much better than he was for similar allegations of misconduct, and violations of constitutional rights arising under the *U.S. Constitution, 42 USC § 1983, and Art 1, § 17 of the State of Michigan Constitution,* (which guaranteed Collins the right to fair and just treatment during the investigations, that the City conducted against him *Michigan Common and Statutory law* that occurred both before and after the City filed its petition.

---

[5]  Brian McKinney coached in Collins' program for 3 years, and work in Special Ops
[6]  Renee Hall (now Deputy Chief) who had worked with Collins in Community Relations and knew firsthand his scheduled and range of activities, worked in IA on Collins' case, helped to administer his Garrity (??).

5

Upon his acquittal on December 8, 2011, the DPOA wrote Chief Godbee requesting Collins' reinstatement.  Although Chief Godbee never replied in writing to DPOA's demand, it appears that he issued a verbal denial.  On December 26, 2011, DPOA, made a second request for Collins' reinstatement in which it explained that Collins' certification as a police officer was about to expire.  DPD knew that, even if it did not wish to bring Collins back, it could have reinstated him for one day which would have renewed his certification, and enabled him to find work elsewhere as a police officer.  Again, Chief Godbee never replied.[7]  Instead, DPD served notice on Collins (who had been suspended without pay since January 20, 2010) that it proposed to terminate him.  His union filed a reinstatement back pay, grievance (#10-005) as to the proposed termination, 12-0137.  *See Exhibit 1*  Procedurally, DPD fast tracked Collins proposed termination, and conducted the actual removal proceedings just about as quickly as any DPD had ever conducted.  Before dumping him on September 29, 2016, Collins' union continued to represent him and defended him through the arbitration hearing conducted after the City had filed its Chapter 9 petition.  Although the City knew, or should have known, it was impermissible to proceed with the arbitration, it did so anyway with Ms. Ashford serving as Arbitrator.  The hearing concluded in 2013; however, the arbitrator apparently feeling constrained by the bankruptcy filing, declined to issue a ruling.[8]  In February 17, 2014, Ashford upheld the termination.

### Summary and Conclusion

Collins moved as quickly as he could to seek leave to file a Delayed Proof of Claim.  No new facts are alleged.  Rather, settled facts are placed into context as alleging violations of rights

---

[7] On October 8, 2012, Chief Godbee resigned amid allegations that he engaged in sexual relations with a subordinate female police officer in the Internal Affairs Unit.
[8] According to Collins, the file is stored in her garage.

6

arising under the *14th Amendment to the U.S. Constitution, 42 U.S.C. § 1983, Art 1, § 17 of the State of Michigan's Constitution* and its statutory and common law. The relief Collins seeks is within the Court's authority, and benefits from a policy that leave should be granted unless equitable considerations to the contrary are present. Since none such are present herein, Movant requests leave be granted.


                                        BENJAMIN WHITFIELD, JR & ASSOCIATES, P.C.


                                        /s/ Benjamin Whitfield, Jr.
                                              Benjamin Whitfield, Jr. (P23562)
                                              613 Abbott Street
                                              Detroit, Michigan 48226
                                              (313) 961-1000
                                              benwlaw4822@aol.com


Dated: APRIL 4, 2017

7

# CELEBRITY TEAM CHALLENGE DRIVERS



**SHERYL A. CHINN**
**Administrator, Ultimate Precision, Inc.**

Ultimate Precision, Inc., is a manufacturer of QS9000 precision machined ordnance and powertrain components, specializing in piston connecting rods at production volumes. An avid car and racing enthusiast, she has been racing her stock Dodge Viper in Viper club events since 1995. Her favorite tracks, so far, include Road America in Elkhart Lake, WI, Gingerman Raceway in South Haven, MI, and Putnam Park Road Course in Mt. Meridian, IN.

Sheryl lives with her two children, Taylor and Andrew Renton, in Bloomfield Township, MI.

**JEROME COLLINS**
**Officer, Detroit Police Department**

Officer Collins was named "2000 J.P. McCarthy PAL Officer of the Year" for his outstanding work with Detroit Young People. Jerome is the commissioner of boys' basketball and girls' softball programs, as well as commissioner of PAL's football program. He supervises activities at the Plymouth Educational Center Tutorial Site. He has set all-time records for participation and raising public awareness of PAL programs. As 2000 Officer of the Year, he served as spokesperson for the organization during countless media interviews, public appearances and special events, as well as mentoring the 2000 PAL Youth of the Year. Officer Collins says: "Everything I do, I do for the benefit of the kids."



**SEAN PATRICK FLANERY**
**Actor, Ultra Violet Filmworks**

Possessing an innate acting ability and classic good-looks, Sean Patrick Flanery is respected by fans and critics alike.

Flanery received rave reviews for his compelling and insightful performance as 'Powder' in the Hollywood Pictures' fantasy drama of the same name. He starred in Showtime's "Run the Wild Fields" and in the New Line's ensemble drama "Body Shots." He was also seen opposite Sarah Michelle Gellar in Mark Tarlov's romantic comedy "Simply Irresistible" for 20th Century Fox. His other film credits include Live Entertainment's "Suicide Kings" with Jay Mohr and Christopher Walken, "The Grass Harp," "Frank and Jesse" and "Best Men" opposite Drew Barrymore.

Flanery was first discovered by audiences as the title character in George Lucas' acclaimed ABC television series "The Young Indiana Jones Chronicles."

Born in Lake Charles, Louisiana and raised in Houston, Flanery attended the University of St. Thomas to study for a business degree.

Ex.1



# SPIRIT OF DETROIT AWARD

is presented herewith as an expression of the
gratitude and esteem of the citizens of Detroit
to

# P.O. Jerome Collins

In recognition of exceptional achievement,
outstanding leadership, and dedication to
improving the quality of life.

By the City Council
of Detroit, Michigan

*Councilwoman Brenda Jones and the members of the Detroit City Council,
would like to extend our sincere thanks and gratitude for all of the support you
provided to the Detroit Police Eastern District Community Relations Unit.*

COUNCIL PRESIDENT

COUNCIL PRESIDENT PRO TEM

COUNCIL MEMBER

COUNCIL MEMBER

COUNCIL MEMBER

COUNCIL MEMBER

COUNCIL MEMBER

DATE



# CERTIFICATE OF APPRECIATION

**WAYNE COUNTY COMMISSION**

#15 Edward A. Boike, Chair
#6  Keith Williams, Vice Chair
#5  Ilona Varga, Vice Chair Pro Tempore
#8  Alisha R. Bell
#3  Moe Blackwell
#10 Laura Cox
#12 Joan Gebhardt
#1  Tim Killeen
#7  Burton Leland
#14 Kevin McNamara
#11 Joseph Palamara
#2  Bernard Parker
#4  Jewel Ware
#9  Diane L. Webb
#13 Gary Woronchak

We commend and salute

Police Officer

*Jerome Collins*

FOR OUTSTANDING COMMUNITY SERVICE IN DISTRICT 2

We present this certificate as our expression of appreciation
and as a record of our respect on this 4th day of February 2009.

*"The world cares very little about what a man or woman knows; it is what a man or woman is able to do that counts." — Booker T. Washington*

**Bernard Parker**
Wayne County Commissioner, District 2

# 2007 HUNTINGTON WOODS BULLDOGS

## FOOTBALL SCHEDULE

| DATE | DAY | TIME | OPPONENT | LOCATION |
|------|-----|------|----------|----------|
| Sept. 9 | Sunday | 12pm | Tigercats | Norup Field |
| Sept. 15 | Saturday | 12pm | Mt. Clemens | Away |
| Sept. 23 | Sunday | 12pm | N.E. Shamrocks | Hurley Field |
| Sept. 30 | Sunday | 12pm | Romeo | Hurley Field |
| Oct. 7 | Sunday | 1pm | Macomb | Away |
| Oct. 14 | Sunday | 12pm | Grosse Pointe North | Away |
| Oct. 21 | Sunday | 12pm | St. Clair Shores | Away |
| Oct. 27 | Saturday | 12pm | Grosse Pointe South | Hurley Field |
| Nov. 3 | Saturday | 12pm | Southfield Jayhawks | Hurley Field |
| Nov. 25-27 | Fri,Sat,Sun | 8am | MI AAU Tournament | Harrison High |

President: Jerome Collins

EX. 4

**2008**

**FAFL**

| Time | Sept. 13 | Sept. 20 | Sept. 27 | Oct. 4 | *Oct. 11* End Reg. Seas. DEVELOPMENT *PLAYOFFS* | Oct. 18 *PLAYOFFS* | Oct. 25 *PLAYOFFS* ROUND 2 | Nov. 1 Consolation/Super Bowl |
|---|---|---|---|---|---|---|---|---|
| 9:00 | 1 vs 2 JV | 2 vs 3 JV | 4 vs 6 JV | 3 vs 7 JV | 1 vs 6 JV | 3rd vs 6th V | 2 vs 5 JV | |
| 10:00 | TEAMS 1 - 2 - 3 vs 4 - 6 - 7 | 4 vs 6 V | 3 vs 5 V | 2 vs 4 V | 1 vs 6 V | 1st vs winner 3rd vs 6th | 4 vs 7 JV | 3rd vs 4th JV Cons. — 2:00 PM |
| 11:30 | | 1 vs 3 V | 1 vs 7 JV | 2 vs 4 JV | 2 vs 3 V | 6 vs 7 JV | 3 vs 6 JV | 3rd vs 4th V Cons. — 3:30 PM |
| 1:00 | 3 vs 4 JV | 1 vs 7 JV | 1 vs 5 JV | 1 vs 5 JV | 2 vs 3 V | 6 vs 7 V | | 1st vs 2nd JV Sup. Bowl — 5:00 PM |
| 2:30 | 5 vs 6 V | 2 vs 6 V | 2 vs 6 V | 2 vs 3 V | 4th vs 5th V | 4 vs 7 JV | | 1st vs 2nd V Sup. Bowl — 6:30 PM |
| 4:00 | 5 vs 6 JV | 4 vs 5 JV | 2 vs 6 JV | 5 vs 6 JV | 5 vs 7 JV | 3 vs 5 JV | 2nd vs winner 4th vs 5th | |
| 5:30 | 3 vs 4 V | 2 vs 5 V | 1 vs 4 V | 4 vs 5 V | 4 vs 5 V | | 1st vs 2nd V Sup. Bowl | |

**Teams:**

| # | Team |
|---|---|
| 1 | Flint Vikings |
| 3 | Flint Beasts |
| 5 | H.W. Bulldogs — JV HAS A BYE ON 9-27-08 |
| 7 | Flint Eagles |
| 2 | Flint Wildcats |
| 4 | Flint Hawks |
| 6 | Flint Razorbacks |

Oct. 11  Development season ends. Players join their respective J.V. Teams. Seeds will be based on the following:
1. Win/Loss Record 2. Head to Head Match Up 3. Total Points - This Methodology includes "Regular Season Ties."
NO PLAYOFFS FOR JV DIVISION! Top (4) four teams advance to Consolation/Super Bowl (Seeds-Same Rule Applies)

**2008**

EX. 4

DEFENDANT'S EXHIBIT

# 009 FLINT AREA YOUTH FOOTBALL LEAGUE - SCHEDULE
(LOCATIONS AND TIMES ARE SUBJECT TO CHANGE)

## DEVELOPMENTAL TEAM - NUMBERS:
BEAST - TM #1;          EAGLES - TM #2;          HAWKS - TM #3
(COMBINED TEAMS): TEAM #4 - VIKINGS, WILDCATS, RAZORBACKS

## JR. VARSITY TEAM - NUMBERS:
JV VIKINGS - TM #1;        JV BEAST - TM #2;      JV WILDCATS - TM #3
JV BULLDOGS - TM #4;     JV HAWKS - TM #5
JV RAZORBACKS - TM #6;   JV EAGLES - TM #7

## VARSITY TEAM - NUMBERS
VAR VIKINGS - TM #1;        VAR BEAST - TM #2    VAR RAZORBACKS - TM #3
VAR BULLDOGS - TM #4      VAR HAWKS - TM #5

### SATURDAY, SEPTEMBER 19, 2009 AT NORTHWESTERN HS

| Time | Division | Matchup |
|---|---|---|
| 8:00 AM | DEVELOPMENT TMS: | TM 1 VS TM 4 |
| 9:00 AM | DEVELOPMENT TMS: | TM 2 VS TM 3 |
| 10:00 AM | J. V. TMS: | TM 2 VS TM 6 |
| 11:30 AM | J. V. TMS: | TM 1 VS TM 7 |
| 1:00 PM | VAR TMS: | TM 1 VS TM 3 |
| 2:30 PM | JV TMS: | TM 3 VS TM 5 |
| 4:00 PM | VAR TMS: | TM 2 VS TM 5 |

BYE FOR 9/19/09: JV BULLDOGS & VAR BULLDOGS

### SATURDAY, SEPTEMBER 26, 2009 AT NORTHWESTERN HS

| Time | Division | Matchup |
|---|---|---|
| 8:00 AM | DEVELOPMENT TMS: | TM 2 VS TM 4 |
| 9:00 AM | DEVELOPMENT TMS: | TM 1 VS TM 3 |
| 10:00 AM | J. V. TMS: | TM 1 VS TM 6 |
| 11:30 AM | J. V. TMS: | TM 2 VS TM 5 |
| 1:00 PM | VAR TMS: | TM 2 VS TM 3 |
| 2:30 PM | JV TMS: | TM 3 VS TM 4 |
| 4:00 PM | VAR TMS: | TM 4 VS TM 5 |

BYE FOR 9/26/09: JV EAGLES & VAR VIKINGS

### SATURDAY, OCTOBER 3, 2009 AT NORTHWESTERN HS

| Time | Division | Matchup |
|---|---|---|
| 8:00 AM | DEVELOPMENT TMS: | TM 1 VS TM 2 |
| 9:00 AM | DEVELOPMENT TMS: | TM 3 VS TM 4 |
| 10:00 AM | J. V. TMS: | TM 1 VS TM 5 |
| 11:30 AM | J. V. TMS: | TM 2 VS TM 4 |
| 1:00 PM | VAR TMS: | TM 1 VS TM 5 |
| 2:30 PM | JV TMS: | TM 3 VS TM 7 |
| 4:00 PM | VAR TMS: | TM 2 VS TM 4 |

BYE FOR 10/3/09: JV & VAR RAZORBACKS

EX.5

Page 1

DEFENDANT'S EXHIBIT

## DEVELOPMENTAL TEAM - NUMBERS:
BEAST - TM #1;      EAGLES - TM #2;      HAWKS - TM #3
(COMBINED TEAMS): VIKINGS, WILDCATS, RAZORBACKS - TM #4

## JR. VARSITY TEAM - NUMBERS:
JV VIKINGS - TM #1;      JV BEAST - TM #2;      JV WILDCATS - TM #3
JV BULLDOGS - TM #4;      JV HAWKS - TM #5
JV RAZORBACKS - TM #6;      JV EAGLES - TM #7

## VARSITY TEAM - NUMBERS
VAR VIKINGS - TM #1;      VAR BEAST - TM #2      VAR RAZORBACKS - TM #3
VAR BULLDOGS - TM #4      VAR HAWKS - TM #5

| SATURDAY, OCTOBER 10, 2009 AT FLINT NORTHERN HS | | |
|---|---|---|
| 8:00 AM | DEVELOPMENT TMS: | TM 2 VS TM 3 |
| 9:00 AM | DEVELOPMENT TMS: | TM 1 VS TM 4 |
| 10:00 AM | J. V. TMS: | TM 6 VS TM 7 |
| 11:30 AM | J. V. TMS: | TM 1 VS TM 4 |
| 1:00 PM | VAR TMS: | TM 3 VS TM 5 |
| 2:30 PM | JV TMS: | TM 2 VS TM 3 |
| 4:00 PM | VAR TMS: | TM 1 VS TM 4 |
| BYE FOR 10/10/09: JV HAWKS & VAR BEASTS | | |

| SATURDAY, OCTOBER 17, 2009 AT FLINT NORTHERN HS | | |
|---|---|---|
| 8:00 AM | DEVELOPMENT TMS: | TM 1 VS TM 3 |
| 9:00 AM | DEVELOPMENT TMS: | TM 2 VS TM 4 |
| 10:00 AM | J. V. TMS: | TM 2 VS TM 7 |
| 11:30 AM | J. V. TMS: | TM 4 VS TM 5 |
| 1:00 PM | VAR TMS: | TM 3 VS TM 4 |
| 2:30 PM | JV TMS: | TM 3 VS TM 6 |
| 4:00 PM | VAR TMS: | TM 1 VS TM 2 |
| BYE FOR 10/17/09: JV VIKINGS & VAR HAWKS | | |

| SATURDAY, OCTOBER 24, 2009 AT - ATWOOD STADIUM | | | |
|---|---|---|---|
| LAST DAY | 8:00 AM | DEVELOPMENT TMS: | TM 1 VS TM 2 |
| FOR DEV GMS | 9:00 AM | DEVELOPMENT TMS: | TM 3 VS TM 4 |
| | 10:00 AM | J. V. TMS: | TM 1 VS TM 3 |
| | 11:30 AM | J. V. TMS: | TM 4 VS TM 7 |
| | 1:00 PM | J.V. TMS: | TM 5 VS TM 6 |
| | 2:30 PM | VARSITY TMS: | 4TH PL VS 5TH PL |
| BYE FOR 10/24/09: JV BEAST | | | |

EX. 05

# TIMES & LOCATIONS SUBJECT TO CHANGE
TIE BREAKER: DETERMINED BY POINTS SCORED; THEN BY DEFENSIVE PTS. ALLOWED

## OCTOBER 31, 2009 AT - ATWOOD STADIUM

# SEMI-FINALS!

### TIMES & TEAMS

| | |
|---|---|
| 3:00 PM: | JV 1ST PL  VS  4TH PL |
| 4:30 PM: | JV 2ND PL  VS  3RD PL |
| 6:00 PM: | VAR 1ST PL VS  4TH PL |
| 7:30 PM: | VAR 2ND PL VS  3RD PL |

**CONGRATULATIONS TO ALL PLAYERS!**

## NOVEMBER 7, 2009 AT - ATWOOD STADIUM

# PLAYOFFS & SUPERBOWL!

PLEASE REFER TO SEMI-FINAL GAMES TO DETERMINE TEAMS PLAYING

### 3:00 PM - JR. VARSITY:
1ST & 4TH PLACE LOSERS WILL PLAY
2ND & 3RD PLACE LOSERS

### 4:30 PM - VARSITY:
1ST & 4TH PLACES LOSERS WILL PLAY
2ND & 3RD PLACE LOSERS

### 6:00 PM - JR. VARSITY CHAMPIONSHIP!
1ST & 4TH PLACE WINNERS WILL PLAY
2ND & 3RD PLACE WINNER

### 7:30 PM - VARSITY CHAMPIONSHIP!
1ST & 4TH PLACE WINNERS WILL PLAY
2ND & 3RD PLACE WINNER

**CONGRATULATIONS TO ALL PLAYERS!**

EX 5



Special "T" by reggie b   (313) 330-4599



Special "T" by reggie b   (313) 330-4599

EX.
96



EX. 6





EX 6





*Ex 6*

Approved, SCAO

Original – Court
1st copy – Prosecutor
2nd copy – Defendant/Juvenile

3rd copy – Defendant/Juvenile attorney
4th copy – Arresting agency

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | ORDER OF ACQUITTAL/DISMISSAL OR REMAND | CASE NO. 11-002017-01-FH |
|---|---|---|

ORI MI- 8216953    Court address  1441 St. Antoine – Detroit, MI 48226    Courtroom    804    Court telephone   313-224-2461 no.

Police Report No.

THE PEOPLE OF ☒ The State of Michigan ☐

v

Defendant/Juvenile name, address, and telephone no.
Jerome Collins
11187 Gratiot Detroit MI 48213

| CTN/TCN 10707708-01 | SID | DOB 07/14/1960 |
|---|---|---|

☐ Juvenile in the matter of _____

| Count | CRIME | CHARGE CODE(S) MCL citation/PACC Code |
|---|---|---|
| 1 | False Pretenses - $1000 or more but less than $20,000 | 750.218-4A |
| 2 | False Pretenses - $1000 or more but less than $20,000 | 750.218-4A |
| 3 | Common Law Offenses | 750.505-C |

IT IS ORDERED:

☐ 1. The case is dismissed on the motion of the court.    ☐ with   ☐ without   prejudice.

☐ 2. Defendant's/Juvenile's motion for dismissal is granted   ☐ with   ☐ without   prejudice and the case is dismissed.

☐ 3. Defendant's/Juvenile's motion for dismissal is granted in part   ☐ with   ☐ without   prejudice and the following charge(s) is/are dismissed: _____

☒ 4. Defendant/Juvenile is acquitted on all charge(s) in this case after trial by   ☐ Judge   ☒ jury.

☐ 5. Defendant/Juvenile is acquitted after trial by   ☐ Judge   ☐ jury   only on the following charge(s): _____

☐ 6. Defendant/Juvenile shall be immediately discharged from confinement in this case.

☐ 7. Bond is canceled and shall be returned after costs are deducted.

☐ 8. Bond/bail is continued on the remaining charge(s).

☐ 9. The case is remanded to the _____ district court for further proceedings for the following reasons: _____

☐ 10. If item 4 is checked, the arresting agency shall destroy the fingerprints and arrest card according to law.

08December 2011
Date

Judge  Patricia P. Fresard                    P39787
                                              Bar no.

If item 1, 2, or 4 is checked, the clerk of the court shall advise the Michigan State Police Criminal Justice Information Center of the disposition as required under MCL 769.16a.

TO THE DEFENDANT: Your fingerprints and arrest card will be destroyed by the Michigan State Police within 60 days of the date of this order when permitted by MCL 28.243.

MC 262 (3/09) ORDER OF ACQUITTAL/DISMISSAL OR REMAND

MCL 769.16a, MCR 6.419, MCR 7.101(M)

EX.78

EX. 1

LAW OFFICES

## GOLDPAUGH & ASSOCIATES, P.C.
615 GRISWOLD
SUITE 506
DETROIT, MICHIGAN 48226

JOHN J. GOLDPAUGH
DONALD HOWARD STOLBERG

(313) 963-8220
FAX (313) 226-0807

NANCY GOLDPAUGH
LEGAL ASSISTANT

December 26, 2011

Chief of Police Ralph Godbee, Jr.
Detroit Police Department
1300 Beaubien
Detroit, MI  48226

    RE:  Reinstatement of Jerome Collins

Dear Chief Godbee:

    Enclosed please find correspondence forwarded to your office on December 12, 2011, requesting that Jerome Collins be reinstated to the payroll forthwith.  As of this date, there has been no response to this correspondence.  I am again requesting that Officer Collins be immediately reinstated to the payroll and placed in a position of administrative capacity.

    Officer Collins' criminal charges were dismissed, and he was found not guilty of all charges for which he is presently suspended.  He has been suspended for a lengthy period of time; and your refusal to return him to the payroll in administrative capacity will have far-reaching effects with respect to his certification.

    Please contact this office or the Detroit Police Officers Association immediately regarding a response to the above request.

    Thank you for your anticipated cooperation in this regard.

            Very truly yours,

            John J. Goldpaugh

JJG/nag
cc:  Joe Duncan
     P.O. Jerome Collins



<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

</div>

JEROME COLLINS,

      Plaintiff,

vs.                                                                  Case No:  15-CV-11756
                                                HON. BERNARD A. FRIEDMAN

CITY OF DETROIT, a Michigan municipal corporation,
DETROIT POLICE DEPARTMENT, RALPH GODBEE,
former Police Chief, JAMES CRAIG, Detroit Chief of Police
MATTIE LEWIS, Former Police Sergeant, STEVEN
DOLUNT, LETITIA JONES, RENEE HALL,
JAMES MOORE, WHITNEY WALTON, JOHN SERDA,
TODD SEVENKESEN, LT. PASTELLA WILLIAMS and
BRIAN STAIRS, Jointly and Severally

      Defendants.
_____
BENJAMIN WHITFIELD, JR. (P23562)
Benjamin Whitfield, Jr. & Associates, PC
Attorneys for Plaintiff
613 Abbott Street
Detroit, MI 48226
Phone: (313) 961-1000
Email: benwlaw123@aol.com
_____

<div align="center">

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

</div>

      NOW COMES, Plaintiff Jerome Collins, by and through his attorneys, Whitfield and

Associates, PC by Benjamin Whitfield, Jr and for his First Amended Complaint against the City

of Detroit, a Michigan Municipal Corporation, Detroit Police Department, former Police Chief

Ralph Godbee, Mattie Lewis, former Police Sergeant, Steven Dolunt, Renee Hall, Whitney

Walton, John Sevenkesen, Lt. Pastella Williams, Letitia Jones, City Attorney, Brian Stairs

alleges as follows:

<div align="center">

1

</div>

1.     This action is for damages brought against the above-named individual defendants, in their Individual capacities for damages and the City of Detroit for injunctive relief pursuant to *42 USC § 1983 and 1998, Fourth, Sixth and Fourteenth Amendments to the United States Constitution* and under the statutory and common law of the State of Michigan.

## JURISDICTION AND VENUE

2.     Jurisdiction is founded upon 28 USC Section 1331, Section 1343 and upon the pendent jurisdiction of this Court to adjudicate claims under Michigan law.

3.     Venue is proper because all of the acts or omissions complained of herein occurred within this District.

## PARTIES

4.     That at all times pertinent hereto, Plaintiff Jerome Collins was a resident of this District.

5.     That at all times pertinent hereto, Defendant City of Detroit was a municipal corporation situated within this District, and its police department was the employer of the named individual defendants.

6.     That at all times pertinent hereto, Defendant Detroit Police Department ("DPD") was an executive agency or Department of Defendant City of Detroit.

7.     That at all times pertinent hereto, Defendant Ralph Godbee was, upon information and belief, an employee or agent of Defendant City of Detroit and served as either Assistant Chief or Chief of Defendant Detroit Police Department.

8.     Defendant Godbee is being sued for actions taken in his individual capacity, under Color of Law and within the scope of his employment as a police officer employed by the City of Detroit.

2

9.    James Craig is joined herein in his individual and/or official capacity as the Executive Officer in charge of Detroit Police Department.

10.    That at all times pertinent hereto, Defendant Mattie Lewis was, upon information and belief, a resident of this District and employed as a police officer holding the rank of Sergeant for the Defendant Detroit Police Department.

11.    That at all times relevant hereto, Defendant Lewis was acting in her individual capacity under Color of Law and within the scope of her employment as a police officer employed by the City of Detroit.

12.    That at all times pertinent hereto, Former Police Chief Ralph Godbee, upon information and belief, residents of this District and employed as police officers with Defendant Detroit Police Department.

13.    That at all times pertinent hereto, Former Police Sergeant Mattie Lewis, upon information and belief, residents of this District and employed as police officers with Defendant Detroit Police Department.

14.    That at all times pertinent hereto, Steven Dolunt, upon information and belief, residents of this District and employed as police officers with Defendant Detroit Police Department.

15.    That at all times pertinent hereto, Renee Hall, upon information and belief, was a resident of this District and employed as police officers with Defendant Detroit Police Department.

16.    That at all times pertinent hereto, James Moore, upon information and belief, was a resident of this District and employed as police officer with Defendant Detroit Police Department.

3

17. That at all times pertinent hereto, Whitney Walton, upon information and belief, was a resident of this District and employed as police officer with Defendant Detroit Police Department.

18. That at all times pertinent hereto, John Serda, upon information and belief, was a resident of this District and employed as police officer with Defendant Detroit Police Department.

19. That at all times pertinent hereto, Todd Sevenkesen, upon information and belief, was a resident of this District and employed as police officers with Defendant Detroit Police Department.

20. That at all times pertinent hereto, Lt. Pastella Williams, upon information and belief, was a resident of this District and employed as police officers with Defendant Detroit Police Department.

21. That at all times pertinent hereto, City Attorney Letitia Jones, upon information and belief, was a resident of this District and employed as police officers with Defendant Detroit Police Department.

22. That said Defendants were at all times acting in their individual capacities and within the scope of their employment as a police officer employed by the City of Detroit and under Color of Law.

## COMMON ALLEGATIONS

23. Plaintiff hereby incorporates and repeats Paragraphs 1-22, as though fully restated herein.

4

24.     That, on September 20, 1993, Defendant City of Detroit hired Plaintiff as a police officer, and vested in him all the powers, duties, obligations and responsibilities attendant to or associated with the position of officers of the Detroit Police Department.

25.     That Plaintiff performed his assigned duties as well or better than others in the same position.

26.     That, prior to commencing said employment with Defendant, Plaintiff, among other things, coached and played semi-professional softball.  Plaintiff listed on his employment application, his coaching and athletic background.

27.     DPD officials, near the beginning of September 2004, assigned Plaintiff to the Ninth Precinct, where he worked in the Community Relations unit under the supervision of Commander Vivian Talbert.

28.     That, near mid-September 2004, Commander Talbert instructed Plaintiff that, as part of an on-going crime fighting initiative, his primary task in Community Relations was to develop after-school sports programs for youth, particularly adolescent males in the community.

29.     That Commander Talbert further directed Plaintiff that he was required to work each day from 2:00 PM to 10:00 PM, five days a week (M-F) to achieve his Community Relations goal of working with such adolescents after school because that time span was when the need was greatest.

30.     That, in early 2006, the Ninth Precinct was merged with the Fifth Precinct to form the Eastern District, where DPD assigned Plaintiff to work under the supervision of Defendant Mattie Lewis, a Sergeant who headed the Community Relations Unit of the newly created district.

31.     That, following the merger, Sergeant Lewis ordered Plaintiff to continue to perform his community relations duties from 2:00 p.m. -10:00 p.m., even though DPD's official records and logs would continue to show that he was scheduled to work from 12:00 AM to 8:00 PM.

32.     That, consistent with the goals of the Community Relations detail, Plaintiff organized youths from the community into competitive football, bowling, baseball, and basketball teams and/or leagues.

33.     That, in furtherance of his community relations duties, Plaintiff organized regular after-school practice sessions that included teams from Detroit and surrounding municipalities.

34.     That, when he arrived at work each day, Plaintiff checked in with Defendant Lewis, who posted Plaintiff's weekly schedules in the Eastern District's Community Relations Office, and also provided copies of these schedules to Defendant Deputy Chief Godbee and the Eastern District's two Commanders, i.e., STEVEN DOLUNT and JAMES MOORE. *A copy of some of Plaintiff's work schedules are attached as Exhibit 1.*

35.     That Plaintiff continued on this 2:00 p.m. – 10:00 p.m., schedule with the knowledge, support, and approval of Plaintiff's supervisory officers until September 2008 when Plaintiff's estranged wife inquired as to Plaintiff's hours in a letter to Defendant DPD.

36.     That an anonymous letter sent to Defendant DPD in November 2009 raised similar inquiries.

37.     That DPD's Internal Affairs Unit investigated the September 2008 letter from Plaintiff's estranged wife, it and found that it lacked merit. *A copy of IA's report is attached as Exhibit 2.*

6

38.    That an Internal Affairs investigation of the November 2009 letter, however, found, based on hours he allegedly had not worked but for which he had been paid, that Plaintiff had committed larceny by false pretense, for an amount in excess of hundred dollars ($100.00). *A copy of IA's findings is attached as Exhibit 3.*

39.    In defense against the above IA findings:

    a.    Plaintiff repeatedly explained that he had not committed larceny, since his actual hours worked based on his activity logs were in excess of those DPD paid him for.

    b.    Plaintiff repeatedly explained that his supervisor had only approved his 2:00 PM-10:00 PM work schedule, but, in fact, had ordered him to work those hours dating back to his original assignment by Commander Talbert in 2004, and reiterated by Sgt. Lewis in 2006 after the merger.

    c.    Plaintiff advised Internal Affairs that Deputy Chief Godbee and the two commanders, not only had full knowledge of his schedule, but had approved it and had also attended Plaintiff's teams sporting events. *See, e.g., Exhibit 1*

    d.    Plaintiff explained that it was improbable that a Community Relations outreach initiative such as DPD sought could have functioned within the time listed on the daily logs, given that all sports programs serving young men generally lasted until 9:00 PM or 9:30 PM.

40.    That, in spite of Plaintiff's explanations, on or about 1/21/10, DPD issued a directive that:

    a.    caused Plaintiff to be suspended from his position as a law enforcement officer and his paychecks to be suspended;

    b.    caused felony criminal charges to be initiated against him in Wayne county.

    c.    caused Plaintiff to lose certification as a law enforcement officer, and, thus impaired or destroyed, his ability to find law enforcement work elsewhere.

41.    That based upon the investigation performed by IA in response to an anonymous letter, Plaintiff was charged by the Wayne County Prosecutor.

42.     That after his December 8, 2011, acquittal in the above criminal court jury trial, Plaintiff filed a grievance to challenge the DPD's administrative action that suspended him without pay. Said grievance was assigned case no. 10-005.

43.     That, on June 12, 2013, an arbitration hearing convened on Plaintiff's grievance for back pay and reinstatement based on his acquittal of all charges in the criminal court proceedings. The arbitrator was one Linda Ashford.

44.     That the automatic stay resulting from the City of Detroit's bankruptcy filing, caused the June 12, 2013 hearing to be adjourned without a decision, which remains presently unresolved.

45.     That, consistent with DPD's policy manuals, Plaintiff, made a March 15, 2012, request for all pertinent records, documents, and notes that related to his grievance; but, while Defendants provided certain records and documents, they secretly withheld Sergeant Lewis's July 6, 2010 Garrity. *A copy of relevant portions of Todd Svensven's testimony is attached as Exhibit 4*

46.     That Plaintiff did not learn of the existence of Sergeant Lewis's Garrity, until his July 6, 2013, trial board hearing, when Internal Affairs investigator Donald Svenkesen testified that DPD had taken Lewis's Garrity. *A copy of Sgt. Lewis' Garrity is attached as Exhibit 5*

47.     That, in the face of Plaintiff's repeated requests for Lewis's Garrity, Defendants, intentionally and with reckless disregard for Plaintiff's due process rights, withheld this document and other exclusionary information, including initiative reports, showing his community relations activity being performed as scheduled.

48.     That, since Lewis's records provided the alleged basis for DPD's decision to bring criminal proceedings against Plaintiff, to discipline him and terminate his employment, her

8

Garrity, which indicated her purposeful or inadvertent failure to keep accurate activity logs, would have undermined the stated basis for DPD's discharge decision. *A copy of Sgt Lewis Garrity's Transcript is attached as Exhibit 6*

49.    That after completion of the trial board hearing as to Grievance # 12-0137 which resulted in Plaintiff's termination, the Detroit Police Officers' Association (DPOA) acted pursuant to the Collective Bargaining Agreement and appealed Plaintiff's termination to an arbitrator on 12/14/2014.

50.    That Plaintiff, in preparation for his arbitration hearing, once more requested Lewis's Garrity, but DPD continued wrongfully to withhold or conceal Lewis' Garrity in violation of Plaintiff's due process rights. *A copy of Plaintiff's counsel's letter (provided by his union) request is attached as Exhibit 7*

51.    Defendants intentionally failed, neglected or refused to provide Plaintiff with a copy of Sergeant Lewis's Garrity, neither at the prosecutorial stage, at the disciplinary hearing, at the trial board stage nor at the arbitration phase, even though it contained vital exculpatory information material to any defenses that Plaintiff might have established, to DPD's baseless charges.

52.    That, as Defendant City of Detroit is a governmental unit, the improper, and unlawful withholding or concealment of Lewis's Garrity which was necessary to Collins' defense was so prejudicial, so injurious and so wanton as to constitute a failure of Due Process, under the State and federal constitutions.

53.    That, because Lewis's Garrity contained directly exculpatory information, Defendant's repeated and willful failure to produce it upon demand, not only materially impacted

Plaintiff's litigation strategies, but also demonstrated a fraudulent intent to conceal its existence for the purpose of impeding or obstructing Collins' ability to defend himself.

54.     That DPD also subjected Plaintiff to disparate treatment based on sex, as shown by the following facts:

    a. As a result of the same investigation DPD initiated similar administrative charges against Plaintiff and Sergeant Mattie Lewis and Officer Kenyetta Borden, both African-American females.;

    b. DPD suspended each female officer with pay;

    c. At the trial board each female officer was given a lesser form of punishment than Plaintiff and, afterwards, returned to work. *A copy of the actions against Lewis and Borden is attached as Exhibit 8*

55.     That due to Defendants' conduct, as set forth above, Plaintiff suffered the following injuries and damages:

    a. Being wrongfully suspended from his job without pay, de-certified as a law enforcement officer, arrested and, thereafter, prosecuted;

    b. Severe emotional distress from the period of his suspension to the present;

    c. Physical manifestations of emotional distress, including, but not limited to, sleeplessness, irritability, loss of appetite, headaches and other symptoms;

    d. Fright, shock, indignity, humiliation and embarrassment of being wrongfully charged, suspended, arrested and prosecuted.

    e. Loss of enjoyment of daily activities;

    f. Loss of employment opportunity;

    g. Payment of or indebtedness for significant attorney fees;

    h. Many of Plaintiff's injuries and damages are likely to be permanent

    i. Other damages which may be revealed through discovery.

**COUNT I**
**VIOLATION OF DUE PROCESS RIGHTS AND EQUAL PROTECTION**
**UNDER *THE FOURTEENTH AMENDMENT OF THE UNITED STATES***
***CONSTITUTION & 42 U.S. C & 1983***

10

56.     Plaintiff hereby incorporates and repeats Paragraphs 1-55 above and the common allegations as though stated in their entirety.

57.     Defendants acted under Color of Law and pursuant to statute, custom, usage, or practice, individually and in concert with one another, unlawfully, maliciously, and intentionally and with deliberate indifference and callous disregard of Plaintiff's established rights, deprived Plaintiff of his liberty and property interests without due process of law and denied Plaintiff equal protection of the law, in violation of the Fourteenth Amendment to the Constitution of the United States and in violation of 42 USC, Section 1983.

58.     The Section 1983 Defendants, i.e., Moore, Hall, Walton, Serta, Dolun, Lewis, and Williams are liable to Plaintiff for violating his Constitutional rights as follows:

    a.  The policies, procedures, and the statutes of the Detroit Police Rules and Policies embody property and liberty interests for the Plaintiff that are protected by the United States Constitution, which the §1983 Defendants violated, among other things, by withholding material evidence, and, which they, thereby, also deprived Plaintiff of his right to due process and liberty;

    b.  Plaintiff's good name and reputation, honor, and integrity, were connected with and inseparable from his employment status as a Detroit Police Officer, his certification from the police academy, and his ability to pursue his law enforcement career, and his income, and each constituted an enforceable liberty and property interest protected by the due process clause of the fourteenth amendment; the procedure employed or ignored by the §1983 Defendants deprived Plaintiff of his liberty and property interests and violated his right to due process and to liberty.

59.     Plaintiff had a substantive right to equal treatment without regard to gender, and the §1983 Defendants violated plaintiff's right to equal protection under the law;

<center>11</center>

60.     Plaintiff had a substantive right to equal protection, and the §1983 defendants, in their arbitrary and capricious actions, treated plaintiff differently than other persons who were similarly situated and deprived plaintiff of his right to equal protection under the law.

61.     The Defendants, with exposure under *§1983* acted in clear violation of established constitutional rights that a reasonable person would have known were applicable, and the *§1983* defendants were so obviously unlawful that only unknowledgeable person  or  a  person  who knowingly violated the law would have behaved towards plaintiff as they did. A competent public official would have recognized that plaintiff's rights were being violated.

62.     The Defendants with exposure under *section 1983* inflicted such measures upon plaintiff in a manner calculated to cause monetary damages, past, present and future, to inflict reputational damage, and to hinder and impede his promotional and earning potential, to inflict grievous emotional suffering, including embarrassment, outrage, severe and grievous emotional anguish, pain, humiliation, anxiety and injury.

### COUNT II
### DUE PROCESS AND EQUAL PROTECTION VIOLATIONS UNDER *ARTICLE I, SECTIONS 2 AND 17 OF THE 1963 MICHIGAN CONSTITUTION* AS TO DEFENDANTS GODBEE, LEWIS, DOLUNT, HALL, MOORE, WALTON, SERDA, SEVENKESEN, WILLIAMS AND STAIRS

63.     Plaintiff hereby incorporates and repeats Paragraphs 1-62, as though stated in their entirety.

64.     Defendants Godbee, Lewis, Dolunt, Moore, Hall, Walton, Serba, Sevenkesen, Williams and Stairs, acted under color of law and pursuant to statute, custom, usage or practice, individually and in concert with one another, when they unlawfully, maliciously, and intentionally, and with deliberate indifference and callous disregard of Plaintiff's rights, deprived Plaintiff of his liberty and property interests without due process of law and denied Plaintiff

12

equal protection under the law, in violation of Article 1, Section 2 and 17 of the Michigan Constitutions by denying him fair and just treatment in the investigation conducted by DPD and the Defendants which resulted in his wrongful termination.

65.     The aforementioned defendants, (to the extent that any other Constitutional remedies are deemed unavailable) are liable to Plaintiff for violating his constitutional rights under the *Michigan Constitution of 1963*, consistent with and provided in the allegation set forth herein.

66.     These acts, as well as others, were in violation of defendants' affirmative duties to secure Plaintiff's constitutionally protected rights.

## COUNT III
## SEX DISCRIMINATION UNDER *42 USC §1983* AS TO ALL DEFENDANTS

67.     Plaintiff hereby incorporates and repeats Paragraphs 63-66 as though stated in their entirety.

68.     Plaintiff has a constitutionally protected right to fair and equal treatment regardless of his gender. This right is protected by the Equal Protection Clause of the Fourteenth Amendment.

69.     Defendants, without conducting the required investigation, discriminatorily determined that unlawful discrepancies existed between Plaintiff's daily activity logs and his official schedule.

70.     Further, Defendants, without conducting the required investigation, or conducting one that was biased or relied upon perjured testimony, or Brady type concealment of exculpatory evidence discriminatorily revoked Plaintiff's law enforcement certification as a police officer and repeatedly refused his request for re-certification to Plaintiff's ongoing harm.

13

71.     These acts, as well as others, were in violation of Defendants' affirmative duties to secure Plaintiff's constitutionally protected rights.

72.     Defendants and their agents, acting under color of state law and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutionally protected rights.

73.     As a direct and proximate result of Defendants' policies, practices, customs, failure to train or improperly-provided training, Plaintiff was deprived of his constitutionally protected rights, suffered damages, including, but not limited to, loss earnings, mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of reputation coupled with his wrongful termination.

## COUNT IV
## GROSS NEGLIGENCE AS TO ALL DEFENDANTS

74.     Plaintiff hereby incorporates and repeats Paragraphs 1-__, as though stated in their entirety.

75.     Defendants, at all times relevant or material hereto, were under a duty to act reasonably so as to avoid causing injury with respect to Plaintiff's constitutional rights.

76.     Defendants breached their duties, at each stage of the disciplinary proceedings, including arbitration, by their refusal after being requested to provide to Plaintiff or his attorneys copies of all documents, records, notes and memoranda that were pertinent to the disciplinary charges against him, the denial of which severely impaired his ability to defense himself.

77.     Defendants' conduct breached that duty by deliberately concealing and failing to disclose the above-captioned material and exculpatory evidence.

78.     Defendants' conduct constituted gross negligence and is an exception to the defense of governmental immunity.

79.     Defendants' breaches were the direct and proximate cause of Plaintiff's damages.

## COUNT V
## TORTIOUS INTERFERENCE WITH THE COLLECTIVE BARGAINING AGREEMENT AS TO ALL INDIVIDUAL DEFENDANTS

80.     Plaintiff hereby incorporates and repeats Paragraphs 68-79 as though stated in their entirety.

81.     Plaintiff, at all times material hereto, was a member of the Detroit Police Officers ("DPOA"), a union for law enforcement officers, which was the exclusive bargaining agent for non-supervisory Detroit Police Officers.

82.     Defendants Godbee, Lewis, Dolunt, Moore, Hall, Walton, Serba, Sevenkesen, Williams and Stairs, Defendants, acting with intentional and willful malice and bad faith, with deliberate indifference for the consequences of their actions, and outside the scope of any legitimate governmental function, and in complete failure to follow DPD's policies and procedures, unjustly instigated DPD's breach of its contract with Plaintiff, based on allegations that they knew or should have known to be false and on investigatory/hearing procedures they knew to be *partisan and inadequate under settled precedent or constitutional standards* when they caused DPD to terminate Plaintiff,.

83.     As a direct and proximate result of the actions of Godbee, Lewis, Dolunt, Moore, Hall, Walton, Serba, Sevenkesen, Williams and Stairs, Defendants. Plaintiff suffered monetary damages, impairment of his professional reputation, severe and grievous emotional suffering, embarrassment and outrage.

## COUNT VI
## VIOLATIONS OF ELLIOTT-LARSEN CIVIL RIGHTS LAWS – SEXUAL DISCRIMINATION

15

84.    Plaintiff hereby incorporates and repeats Paragraphs 80-83 as though stated in their entirety.

85.    Plaintiff is an "employee" within the meaning of the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws Ann. Section 37.2201, et. seq. (the "Act").

86.    Plaintiff, an African-American male, is a member of a protected class.

87.    DPD, on July 6, 2013, wrongly terminated Plaintiff from his 19 years and 9 months employment as a law enforcement officer.  Plaintiff had been employed by DPD for __ years when he was terminated, and had earned numerous awards, honor or citations over the course of his distinguished career.

88.    DPD, through its employees, treated similarly situated female employees Police Officers Lewis and Bordee differently by according them lesser punishments for similar infractions and failing to provide Plaintiff due process rights.

89.    Prior to his July 6, 2013 termination, Plaintiff was a certified law enforcement officer, who performed the duties as well or better than other similarly situated employees.

## COUNT VII
## FRAUDULENT OMISSION OR SILENT FRAUD

90.    Plaintiff hereby incorporates and repeats Paragraphs 84-89 as though stated in their entirety.

91.    That while the employment contract between Plaintiff and Defendants City of Detroit and DPD was in force, said Defendants obtained material information i.e., Sgt Lewis' Garrity, from its employees or agents that it had a continuing duty under Michigan law to act in good faith, and disclose to Plaintiff if suppression would render previously conveyed representations, untrue or misleading. *Lawyers Title Ins v First Federal Sav Bank, U.S. Fidelity*

16

*& Guaranty v Black, 412 Mich 99, 116, 313 N.W.2d 77 (1981); 744 F. Supp 778, 787 (ED Mich 1990)*

92.     Defendant breached its duty by suppressing Sgt. Lewis Garrity's  which contained sworn testimony that was directly exculpatory as to Plaintiff

## COUNT VIII
## INTENTIONAL INFLICTION OF MENTAL AND EMOTIONAL DISTRESS AS TO ALL DEFENDANTS

93.     Plaintiff hereby incorporates and repeats Paragraphs 90-92 as though stated in their entirety.

94.     Defendants acted in an extreme and outrageous manner when they, acting under color of state law, haphazardly and without adequate investigation, imposed on Plaintiff a series of disciplinary measures that culminated in discharge.

95.     That Defendants, thereby, intended to or recklessly inflicted severe emotional distress upon Plaintiff by terminating him from his position.

96.     That Defendants' actions caused Plaintiff severe emotional distress.

97.     As a direct and proximate result of Defendants' actions, Plaintiff suffered injury and damages, including, but not limited to, loss of earnings, mental anguish, physical and emotional distress, humiliation, embarrassment, needless notoriety in the media, and an irreparable loss of reputation.

## COUNT XI

**MALICIOUS CRIMINAL PROSECUTION** Plaintiff hereby incorporates and repeats Paragraphs 93-97 as though stated in their entirety.

98.     The named Defendant were actively instrumental in causing Plaintiff to be prosecuted, or in causing the prosecution to be continued by withholding exculpatory

**17**

evidence, such as Sgt. Lewis' Garrity Transcript.  Or, by convincing witnesses to testify falsely by offering them various incentives.

99.    The criminal action ended in Plaintiff's favor.

100.    That no reasonable person in Defendants' circumstances would have believed that there were grounds for causing Plaintiff to be arrested or prosecuted.

101.    That the Defendants acted primarily for a purpose other than to bring the Plaintiff to justice.

102.    That Plaintiff was harmed, by way of example, and not limitation, by being suspended without pay and ultimately terminated after nearly 20 years on the force.  And not reinstated after he was acquitted by a jury while other officers have been reinstated immediately after being acquitted

103.    The Defendants conduct was a substantial factor in causing Plaintiff's harm by attempting to frame him through suborned perjury of witnesses.

104.    The malicious actions of the Defendants caused Plaintiff to suffer injury, damage, loss or harm that is compensable under *42 UC § 1983*.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendants, for the following relief:

1.  Legal Relief:

    a.  a judgment for lost wages, including back-pay and front-pay, in whatever amount he is found to be entitled;
    b.  compensatory damages in whatever amount he is found to be entitled;
    c.  punitive and exemplary damages commensurate with the wrong and Defendants' ability to pay;
    d.  an award of interest, costs and reasonable attorney fees.

**18**

2. Equitable Relief

    a.  an injunction barring Defendants from taking further adverse action against Plaintiff relative to requests for job references, or through continued notoriety in the media, press releases or statements of a defamatory nature with regard to the issues herein litigated or reasonably related thereto;

    b.  an injunction that requires Defendants City of Detroit or DPD to offer Plaintiff employment, credit him for time lost towards retirement or pension, to take steps necessary to re-certify him as a law enforcement officer, that he may continue his chosen career elsewhere;

    c.  an award of interest, costs, and reasonable attorney fees;

    d.  Any other equitable relief that appears appropriate at the time of trial.

3. Damages for Mental and Emotional Distress

    a.  an award for Plaintiff's emotional injury and suffering, his shock, fright, outrage, humiliation, un-justified publicity;

    b.  an award for punitive and exemplary damages, attorney fees, costs and interest, as may be allowed under law;

    c.  such other relief as the court may find equitable and just.

Respectfully Submitted,

Benjamin Whitfield, Jr. & Associates, P.C.

By: ___/s/ Benjamin Whitfield, Jr.___
Benjamin Whitfield, Jr. (P23562)
Attorney for Plaintiff
561 Abbott St
Detroit, MI 48226
Phone: (313) 961-1000
Email: benwlaw123@aol.com

Dated:   APRIL 4,  2017

**20**

Ex. 1

# Detroit Police Department Activity Lo

| Date | Platoon | Command / District / Car | Special Event / Detail Name | Lo |
|---|---|---|---|---|
| 2/20/09 | 3 | CL 2 | | |

| Vehicle Code | Mileage On Duty | Fuel Level On Duty | Microphone Working? | Video Camera Working? | PPE Kit Number | Car Clean? | Spare Inflated? | Hand Spotlight? | Fir Extingu |
|---|---|---|---|---|---|---|---|---|---|
| 066012 | Full | Full | ✓ | ✓ | N | ✓ | | ✓ | ✓ |

| Oil Change Due (Mileage) | Rifle/Shotgun Serial Number | Mileage at fill up | Gal of Gas | Total Miles Driven | Mileage Off Duty | List Repairs Needed/Damage Noted |
|---|---|---|---|---|---|---|
| | | | | | | minor |

| PRINT MEMBER (S) RANK & NAME AND AFFIX SIGNATURE | BADGE | ON DUTY | OFF DUTY | # O.T. HOURS | TICKET RECAP | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | MOV | PARK | PED | MISC |
| 1. Jerome Collins | 1508 | 11:00 | 7:00 | | | | | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |
| 4. | | | | | | | | |

## RECAP OF ACTIVITY

| | | | | | | |
|---|---|---|---|---|---|---|
| Police Runs | | Missing Reports Taken | | UF-001 | | JC-02 |
| Felony Arrests | | Missing Persons Recovered | | UF-002 | | Drops Submitted for Approval |
| Misdemeanor Arrests | | Detainees Transferred | | UF-003 | | Persons Interviewed |
| Juveniles Detained | | Witnesses Conveyed | | UF-004 | | Detainees Assigned |
| Ordinance Complaints | | Other Conveyances | | UF-005 | | Detainees Interrogated |
| Traffic Stops | | Traffic Crash Reports | | UF-006 | | Warrants Submitted |
| Total Males Investigated | | Guns Confiscated | | UF-007 | | Supervisor Runs |
| Total Females Investigated | | Confiscated Vehicle (s) | | UF-008 | | Supervisor (SSC) Runs Responded to |
| Other Citizen Contacts | | Weight of Narcotic Seizures | | DPD-665 | | Time Spent Desk/Cell Block Duty |
| Number of Frisks | | Confiscated Currency | | DPD-666 | | MLCC Inspections |
| Autos Investigated | | Time Spent on Surveillance | / | DPD-667 | | MLCC Write-ups |
| Autos Recovered | | Canine Deployment | | DPD-668 | | Hours on Vice Enforcement |
| Autos Impounded | | Canine Apprehension | / | DPD-669 | | Entries Entered into MAS |
| All Recovered Property Value | | Contact Brochures Distributed | | DPD-670 | | Investigations Submitted |
| Case Reports (CRISNET) | | Hours Spent in Training | | JC-01 | | Other Forms or Reports |

Miscellaneous information:

| SUPERVISOR CHECKING THE LOG IN (PRINT RANK/NAME) Sgt Matthew Lewis | SIGNATURE | DATE CHECKED IN 2/20/09 | TIME CHECKED IN 730P |
|---|---|---|---|
| SUPERVISOR REVIEWING THE LOG (PRINT RANK/NAME) | SIGNATURE | DATE CHECKED IN | DATE CHECKED IN |

| LUNCH LOCATION: | | TIME LUNCH TAKEN: | NAME OF MEMBER THAT VEHICLE KEYS WERE TURNED OVER TO |
|---|---|---|---|

| TIME ON PATROL | TIME ON P.R | TIME ON M.A. | TIME ON T.S. | TIME ON LF. | TIME ON S.D. | TIME ON S.R. | TIME ON S.S.C. | TIME ON S.I.P. |
|---|---|---|---|---|---|---|---|---|
| | | 480 | | | | | | |

| FROM | ARRIVED | TO | TOTAL | TYPE ACTIVITY | S T O P | F R I S K | DISPOSITION |
|---|---|---|---|---|---|---|---|
| 1100 | | | | MA | | | On duty, assign from Sgt Lewis, Busy in the Station |
| 1200 | | | | MA | | | 10632 or 10642 Bonita on a compla. Towed a 1984 Buick Purple, for |

# Detroit Police Department Activity

| DATE | PLATOON | DISTRICT AND CAR | SPECIAL EVENT OR DETAIL NAMI |
|---|---|---|---|
| 01/29/08 | 2 | ED - CR 2 | |

| Vehicle Code 66612 | Mileage On Duty | Fuel Level On Duty FULL | Mileage Off Duty | Oil Change Due | Gal of Gas | | Total Miles Driven |
|---|---|---|---|---|---|---|---|
| | | | | | Mileage | | |

| P.P.E. Kit # 0 | Rifle /Shotgun Serial # | Car Clean? .7 | Fire Extinguisher? | Hand Spotlight? N | Spare Inflated? Y | Repairs Needed / Damage Noted (List all) N |
|---|---|---|---|---|---|---|

| PRINT MEMBER (S) RANK & NAME AND AFFIX SIGNATURE | BADGE | ON DUTY | OFF DUTY . | # O.T. HOURS | TICKET RECAP | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | MOV | PARK | PED | MISC/ENV |
| 1 P.O. JEROME COLLINS | 1508 | 11 | 7 | | | | | 4 |
| 2 | | | | | | | | |
| 3. | | | | | | | | |
| 4. | | | | | | | | |

### RECAP OF ACTIVITY

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Police Runs | 0 | Missing Reports Taken | 0 | UF-001 | 0 | JC-02 | 0 |
| Felony Arrests | 0 | Missing Persons Recovered | 0 | UF-002 | 0 | Drops Submitted for Approval | 0 |
| Misdemeanor Arrests | 0 | Detainees Transferred | 0 | UF-003 | 0 | Persons Interviewed | 0 |
| Juveniles Detained | 0 | Witnesses Conveyed | 0 | UF-004 | 0 | Detainees Assigned | 0 |
| Ordinance Complaints | 4 | Other Conveyances | 0 | UF-005 | 0 | Detainees Interrogated | 0 |
| Traffic Stops | 0 | Traffic Crash Reports | 0 | UF-006 | 0 | Warrants Submitted | 0 |
| Total Males Investigated | 0 | Guns Confiscated | 0 | UF-007 | 0 | Supervisor Runs | 0 |
| Total Females Investigated | 4 | Confiscated Vehicle (s) | 0 | UF-008 | 0 | Supervisor (SSC) Runs Responded to | 0 |
| Other Citizen Contacts | 0 | Weight of Narcotic Seizures | 0 | DPD-665 | 0 | Time Spent Desk/Cell Block Duty | 0 |
| Number of Frisks | 0 | Confiscated Currency | 0 | DPD-666 | 0 | MLCC Inspections | 0 |
| Autos Investigated | 0 | Time Spent on Surveillance | 0 | DPD-667 | 0 | MLCC Write-ups | 0 |
| Autos Recovered | 0 | Canine Deployment | 0 | DPD-668 | 0 | Hours on Vice Enforcement | 0 |
| Autos Impounded | 0 | Canine Apprehension | 0 | DPD-669 | 0 | Entries Entered into MAS | 0 |
| All Recovered Property Value | 0 | Contact Brochures Distributed | 0 | DPD-670 | 0 | Investigations Submitted | 0 |
| Case Reports (CRISNET) | 0 | Hours Spent in Training | 0 | JC-01 | 0 | Other Forms or Rpts | 0 |

Miscellaneous Information:

| SUPERVISOR CHECKING THE LOG IN (PRINT RANK/NAME) | SIGNATURE | DATE CHECKED IN 1/29/08 | TIME CHECKED IN 700P |
|---|---|---|---|
| SUPERVISOR REVIEWING THE LOG (PRINT RANK/NAME) | SIGNATURE | DATE REVIEWED 1/30/08 | TIME REVIEWED 11 00 A |

| LUNCH LOCATION: | TIME LUNCH TAKEN: | VEHICLE KEYS TURNED OVER TO |
|---|---|---|

| TIME ON PATROL | TIME ON P.R. | TIME ON M.A. 480 | TIME ON T.S. | TIME ON I.F. | TIME ON S.D. | TIME ON S.R. | TIME ON S.S.C. | TIME ON S.I.P. |
|---|---|---|---|---|---|---|---|---|

| FROM | ARRIVED | TO | TOTAL | TYPE ACTIVITY | S T O P | F R I S K | DISPOSITION |
|---|---|---|---|---|---|---|---|
| 11a | | | | MA | | | ON DUTY |
| 12p | | | | MA | | | E. 7 MILE AND HOOVER, OSBORN HIGH SCHOOL, WROTE |
| | | | | | | | ORDIN. U410-111 TO HYRESHA RAMEY, B/F/DOB 8/20/93 |
| | | | | MA | | | WROTE ORDIN. U410112 TOPECIOU TATUM, B/F/DOB |
| | | | | | | | 5/5/91, ORDIN U410-113 TO SHANTA FROWNER, B/F/DOB |
| | | | | | | | 8/27/93, ORDIN U410114 LAKENYA SHEPARD, B/F/DOB |

D.P.D. 244 C of D - 162-RE (9-88)

# WORK PERIOD TIME REPORT

FROM MARCH 9 2009 TO APRIL 5 2009

COMMAND NINTH/FIFTH PRECINCT, COMM. REL PLATOON TWO #2

| DETAIL / ASSIGNMENT | BADGE | NAME | 9 | 10 | 11 | 12 | 13 | 14 S | 15 S | 16 | 17 | 18 | 19 | 20 | 21 S | 22 S | 23 | 24 | 25 | 26 | 27 | 28 S | 29 S | 30 | 31 | 1 | 2 | 3 | 4 S | 5 S | REMARKS - E.G., Date and type of time off and reason for time off; where assigned out; entry change and initials; etc. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5-79 | S-66 | LEWIS MATTIE | F | F | F | F | F | L | L | D | D | D | A | D | L | L | L | D | D | A | D | L | L | L | D | A | D | M | M | M | A/O NCAA 3- |
| | | W | / | / | / | / | / | 0 | 0 | / | / | / | / | / | 0 | 0 | / | / | / | / | / | 0 | 0 | / | / | / | / | / | / | / | |
| | | L | 0 | 0 | 0 | 0 | 0 | / | / | 0 | 0 | 0 | 0 | 0 | / | / | / | / | / | / | / | 0 | 0 | / | / | / | / | / | 0 | 0 | |
| | | T | / | / | / | / | / | / | / | / | / | / | / | / | / | / | / | / | / | / | / | / | / | / | / | / | / | / | / | / | |
| 9-CR 1 | 4724 | CURTIS AUDREY | D | D | D | D 8CT | L | L | L | L | D | D | 3 | D | L | L | D | D | D | D | D | L | L | D | D | S | S | M | A | M | 3/4 - ECT 3/19 Sick Comps ML NCAA. 3- |
| 9-CR 2 | 1508 | COLLINS JEROME | A | A | A | A | BV 8CT | L | L | A | A | A | A | A | L | L | A | A | A | L | L | L | L | D | D | D | D | M | A | M | S 3/31 c/d 3/27 [illegible] 4/4-4/5-NCAA 3-NCAA |
| 9 CR 3 | 3628 | HAWKINS BRAD | D | D | D | BV | L | L | L | D | D | D | D | D | L | L | D | D | D | D | L | L | L | D | D | A | D | M | A | M | 3/15 Range 7A 3- 30,31 - A/O court office |
| 5 CR 4 | 3265 | CURTIS PHILIP | D | D | D | D | K | L | L | D | D | D | A | L | L | L | D | D | D | D | D | L | L | L | D | A | D | M | A | M | 12- per Lt. Williams 3-NCAA |
| 9CR 5 | A/D 4728 | RIOS TOBIAS | D | D | D | D | D | L | L | D | D | K | D | L | L | L | S | S | K | S | L | L | L | S | S | S | S | S | S | S | [illegible] hrs [illegible] Chg ML |
| 5 CR 6 | 260 | TAYLOR KATA ANTE | D | D | D | D | K | L | L | D | D | A | D | D | L | L | L | D | D | D | D | L | L | L | D | A | D | M | M | A | 23-Sick per med. RTM 4/[illegible] 3/15, 7A Range Sch. 3-Fulls 16,18 [illegible] Fld [illegible] |
| 5 CR 7 | 2008 | BURT VANESSA | L | BV | 8CT | 8CT | 8CT | L | L | F | F | F | F | F | L | L | L | S | S | S | S | L | L | S | S | S | S | S | S | S | 10-13 CAT Time Per Sgt. L[illegible] 5 - Full days ML FMLA |
| 5 CR 8 | 3700 | ROBINS SHAWNEE | L | D | D | D | D | L | L | D | D | D | A | L | L | L | D | D | D | D | D | L | L | E | D | A | D | M | A | M | 10 - per Lt. Williams 30- FAM Emergency 3-NCAA Full Day [illegible] |
| | | #10 W | 8 | 8 | 8 | 8 | 8 | 0 | 0 | 8 | 8 | 8 | 8 | 8 | 0 | 0 | 8 | 8 | 8 | 8 | 8 | 0 | 0 | 6 | 6 | 6 | 6 | 6 | 0 | 0 | |
| | | L | 2 | 0 | 0 | 0 | 3 | 8 | 8 | 0 | 0 | 0 | 0 | 4 | 8 | 8 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | |
| | | T | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | |
| | | | D | D | D | D | D | L | L | D | D | | | L | L | L | | | | | | L | L | L | | | | | | | |

[illegible] 3-20-09

# WORK PERIOD TIME REPORT

COMMAND EASTERN DISTRICT · PLATOON TWO · COMM · RELS

D.P.D. 296 C of D · 162-RE (9-84)

REMARKS: E.G. Date and Type of time off and reason for time off, where assigned out, entry change and reissue, etc.

| DETAIL/ASSIGNMENT | BADGE | NAME |
|---|---|---|
| 5-79 | S-66 | LEWIS MATTIE |
| | | assign. out/L |
| CR 1 | 4724 | CURTIS AUDREY |
| CR 2 | 1508 | COLLINS JEROME |
| CR 3 | 3868 | HAWKINS BRAD |
| CR 4 | 3265 | CURTIS PHILIP |
| CR 5 | 4728 | RIOS TOBIAS |
| CR 6 | 260 | TAYLOR KATA ANTE |
| CR 7 | 2008 | BURT VANESSA |
| CR 8 | 3700 | ROBINS SHARNEE |
| CR 9 | 4010 | BORDEN KENYETTA |
| | | MITCHELL. |





Ralph L. Godbee, Jr.
Chief of Police

D.P.D. 568 (rev. 9/97)

### INTER-OFFICE MEMORANDUM
### INTERNAL AFFAIRS

| Date |
| --- |
| February 15, 2012 |

To:        Commander Brian R. Stair, Internal Controls (Direct)

Subject:    **IA CASE #09 142**
**POLICE OFFICER JEROME COLLINS, BADGE 1508, PENSION #232998**
**APPOINTED:**    **SEPTEMBER 20, 1993**
**ASSIGNMENT:**    **EASTERN DISTRICT**
**ALLEGATION:**    **TIME FRAUD**

From:       Lieutenant Whitney Walton, Internal Affairs

### INTRODUCTION

On November 30, 2009, a letter was sent to then Chief of Police Warren C. Evans alleging that Police Officer Jerome Collins, badge 1508, assigned to the Eastern District was getting paid for work, even though he was not there.

On December 4, 2009, Commander Brian R. Stair, of Internal Affairs received an electronic copy of the aforementioned letter and directed members of Internal Affairs to respond to the Eastern District and obtain all documentation relative to the scheduled working hours and discretionary time of Officer Collins. (Document 7-1)

On this same date, at approximately 9:00 A.M., Internal Affairs Alert Team Members, Sergeant U. Renee' Hall, badge S-582, and Sergeant Dietrich Lever, badge S-177, responded to the Eastern District and obtain all documentation relative to the scheduled working hours and discretionary time of Officer Collins.

### ASSIGNMENT

On December 10, 2009, IA Case #09 142 was assigned to Sergeant Todd Svenkesen, badge S-556, of the Internal Affairs for investigation.

On January 23, 2012, IA Case #09 142 was re-assigned to writer, Lieutenant Whitney Walton, badge L-18, assigned to Internal Affairs for closure.

### INVESTIGATION

The Alert Team spoke with Police Officer Judith Bidinger, badge 1452, of the Eastern District Timekeeping, and subsequently obtained 590 Cards, Attendance Records and Leave Days for Officer Collins for 2007 through 2009.

Sergeant Hall spoke with Sergeant Mattie Lewis, badge S-66, of the Eastern District Community Relations and the direct supervisor of Officer Collins. Sergeant Lewis provided Activity Log Sheets and Daily Details for Community Relations officers for the period of June 2007 through December 2008; however, Sergeant Hall reviewed the aforementioned logs, which revealed that during that

**EX. 2**

To:      Commander Brian R. Stair, Internal Controls (Direct)      February 15, 2012

Subject:    **IA CASE #09 142**

                                                    **Page 2**

From:     Lieutenant Whitney Walton, Internal Affairs

period, Officer Collins submitted only four (4) Activity Logs. Those dates were October 29, 2007, January 29, 2008, October 31, 2008 and March 6, 2008.

Sergeant Hall spoke with Sergeant Lewis in regards to Officer Collins scheduled work hours and was informed that he worked 11:00 A.M. to 7:00 P.M.; this was confirmed by the logs and daily details. Sergeant Hall later inquired as to Officer Collin's location and work hours for December 4, 2009, and was informed that he was scheduled for 12:00 P.M. to 8:00 P.M. No explanation was provided for the change of hours.

Sergeant Lever conducted a brief review of Activity Logs for the period of January 2009 through November 2009, which revealed possible discrepancies in handwriting. (Document 8-16)

On December 22, 2009, Sergeant Rodney Cox, badge S-770, assigned to the Chief's Office reviewed the outside employment approvals. Officer Collins did not have approval for 2007, 2008 or 2009 to work outside employment.

Through investigation it was learned that Officer Collins was working armed security for St. John's Hospital, which was confirmed by members of Internal Affairs.

On January 5, 2010, search warrant #10 04132 was signed by Thirty-Sixth District Court Magistrate Renee McDuffee for Officer Collin's employment and time records for St. John's Hospital. It was discovered that Officer Collins had been employed at St. John's Hospital from December 2004 to the date of execution. Ms. Deb Dame, with Worklife Services, explained that St. John's Hospital employees, including Officer Collins had a swipe card that logs them in and out, which is then reflected on the time sheets. (Document 8-18)

On January 12, 2010, at the direction of Internal Affairs, Officer Collins was suspended from the Detroit Police Department by Sergeant J. Oehmke, badge 752, assigned to the Eastern District. (Document 7-14)

After an exhaustive search of the Eastern District archives it was revealed that they did not have Activity Logs or Daily Details for Officer Collins prior to November of 2007. However, after comparing and reviewing Officer Collins' time and attendance records for the Detroit Police Department and St. John's Hospital from November 14, 2007 through November 25, 2009, it was revealed that Officer Collins had five hundred and ninety four hours that overlapped between the two employers. Records further revealed that Officer Collins shift at Riverview Hospital typically started between 7:00 A.M. and 7:30 A.M. and ended between 2:00 P.M. and 3:00 P.M. Officer Collins working hours with the Detroit Police Department were generally from 11:00 A.M. to 7:00 PM. or 12:00 P.M to 8:00 P.M.

To:         Commander Brian R. Sr^ir, Internal Controls (Direct)                February 15, 2012

Subject:    **IA CASE #09 142**                                        **Page 3**

From:       Lieutenant Whitney Walton, Internal Affairs

     Delineated below is a synopsis of the number of days and hours that Officer Collins worked at St. John's Hospital when he was supposed to be working for the Detroit Police Department and the monetary payment that Officer Collins received from the City of Detroit while working at St. John's Hospital:

> ➢ Between November 11, 2007 and December of 2007, Officer Collins worked 12.6 hours over three (3) days at St. John's Hospital when he was supposed to be working for the Detroit Police Department. He was monetarily compensated at a rate of $24.12 an hour for a total of $303.91.

> ➢ Between January of 2008 and June of 2008, Officer Collins worked two hundred and forty two (242) hours over seventy three (73) days at St. John's Hospital when he was supposed to be working for the Detroit Police Department. He was monetarily compensated at a rate of $24.85 an hour for a total of $6013.00.

> ➢ Between July 2008 and November of 2009, Officer Collins worked three hundred and thirty nine (339) hours over one hundred and thirty four (134) days at St. John's Hospital when he was supposed to be working for the Detroit Police Department. He was monetarily compensated at a rate of $25.59 an hour for a total of $8675.01.

> ➢ Therefore the total monetary compensation that Officer Collins received from the City of Detroit for work he did not perform was $14,991.92

     On January 18, 2010, Sergeant Svenkesen obtained the payroll registries for Officer Collins.

     On January 19, 2010, an Investigator's Report naming Officer Collins as the defendant was submitted to Assistant Prosecuting Attorney Robert Donaldson of the Wayne County Prosecutor's Office. (Document 8-1)

     On January 21, 2010, Chief Evans with the concurrence of the Board of Police Commissioners suspended Officer Collins without pay pending the criminal and departmental adjudication of this matter. (Document 7-17)

     On February 8, 2010, Sergeant Svenkesen met with Mr. Michael Passage, the Security Director for St. John's Hospital and received surveillance video of the parking lot of Riverview hospital. The video showed Officer Collins vehicle for the hours that he worked at the hospital.

     It should be noted that further investigation, revealed that Officer Collins was also employed by the Allen Academy located at 8666 Quincy, Detroit, MI as a Truancy Officer and Security Guard.

To:   Commander Brian R. Stair, Internal Controls (Direct)

February 15, 2012

Subject:   **IA CASE #09 142**

**Page 4**

From:   Lieutenant Whitney Walton, Internal Affairs

On March 1, 2010, a search warrant for Officer Collins employment records was served upon Ms. Diane Griggs, Human Resources for the Leona Group LLC. A review of the records revealed that from April 14, 2008 through January 9, 2009, Officer Collins worked Monday through Friday 11:30 P.M. to 6:30 A.M. as a Security Guard at the Allen Academy. Starting on January 12, 2009, through February 26, 2010, Officer Collins continued working 11:30 A.M. through 6:30 A.M. and along with being a Truancy Officer.  This secondary position was Monday through Friday, 9:00 A.M. through 3:00 P.M. (Document Appendix B)

A spreadsheet was completed that documented the total number of hours per day that Officer Collins purportedly worked during eighty six (86) specific days from January 5, 2009 through November 25 2009 for all three employers. (Document 8-10)

Delineated below are the findings:

22 Hours – 2 days
24 Hours – 4 days
24.5 Hours – 6 days
24.75 – 1 day
25 Hours – 3 days
25.25 – 2 days
25.5 – 1 day
26 Hours – 5 days
26.25 Hours – 4 days
26.5 Hours – 7 days
26.75 Hours – 3 days
27 Hours – 35 days
27.25 Hours – 6 days
27.50 Hours – 4 days
27.75 Hours – 1 day

On April 16, 2010, APA Donaldson signed the Investigator's Report, recommending that Officer Collins be charged with one (1) count of Larceny by False Pretenses less than $20,000.00 and one (1) count of Misconduct in Office. (Document 9-1)

On April 19, 2010, Officer Collins was arraigned at the Thirty-Sixth District Court, before Magistrate Steven Lockhart.  Officer Collins pled not guilty and was granted a $50,000.00 personal bond.  His Preliminary Exam was scheduled for June 3, 2010 at 8:30 A.M.

To:      Commander Brian R. Ster, Internal Controls (Direct)                    February 15, 2012

Subject:    **IA CASE #09 142**
                                                                      **Page 5**

From:      Lieutenant Whitney Walton, Internal Affairs

After several adjournments, Officer Collins Preliminary Examination began on September 15, 2010.

On February 28, 2011, Officer Collins was bound over for trial to the Third Circuit Court.

On December 5, 2011, the trial started for Officer Collins.

On December 8, 2011, the trial ended with a verdict of not guilty on all counts.

It should be noted that on January 18, 2011, Sergeant Lewis received a forty five (45) day suspension for submitting and verifying Activity Logs and Daily Details for officers under her command who in actuality did not work. This was IA Case #10 017.

## WITNESS STATEMENTS

On January 12, 2010, approximately 11:45 A.M., Sergeant Svenkesen interviewed Mr. Passage who stated that Officer Collins worked as an armed security officer at the Riverview location. He stated that Officer Collins' hours were from 7:00 A.M. through 2:00 P.M. or 3:00 P.M. (Tape)

On this same date, Sergeant Svenkesen interviewed Sergeant Juan Rogers, Officer Collins direct supervisor at St. Johns Hospital. He stated that he would check on Officer Collins along with the other officers assigned to him throughout the day. Sergeant Rogers made the work schedules and Officer Collins was typically scheduled from 7:00 A.M. to 2:00 P.M. or 3:00 P.M. (Tape)

On February 25, 2010, approximately 12:00 P.M., Sergeant Svenkesen interviewed Mrs. Stacey Ann Collins, of 21901 Kenosho, Oak Park, MI, Officer Collins' wife. She stated that she had been separated from Mr. Collins for approximately four years. She provided information on two bank accounts for Officer Collins, but she did not know where he was living. When asked about Officer Collins secondary employment she provided information that he was employed at the Allen Academy as a security guard and Truancy Officer. (Tape)

On March 4, 2010, Sergeant Lewis was interviewed under Investigative Subpoena. During this interview under oath she testified that Officer Collins reported to duty everyday and she saw him at either 11:00 A.M. or 12:00 P.M. depending on his hours. Additionally, she stated that if she was not present, Lieutenant Pastella Williams, badge L-111, assigned to the Eastern District, (the executive lieutenant) would see him. It should be noted that Sergeant Lewis testified at the preliminary examination on January 12, 2011, and her testimony was consistent with her statement under Investigative Subpoena. (Document)

To:     Commander Brian R. Stair, Internal Controls (Direct)

                                                            February 15, 2012

Subject:    **IA CASE #09 142**

                                                            **Page 6**

From:   Lieutenant Whitney Walton, Internal Affairs

On March 30, 2010, approximately 1:45 P.M., writer conducted an audio taped interview with then Assistant Chief Godbee at Police Headquarters. He stated that he was the commander of the Ninth Precinct from November 2002 to December 2003 and Deputy Chief of the Eastern District starting in September of 2005 through March of 2007. He admitted to knowing Officer Collins from the Eastern District, but did not recall specifically when Officer Collins was assigned there. He was not aware that Officer Collins was working outside employment and he did not sign a request for outside employment for Officer Collins. He denied authorizing Officer Collins to work at St. John's Hospital instead of coming to work at the Eastern District. Assistant Chief Godbee also denied telling Sergeant Lewis that Officer Collins would be a direct report to him. Assistant Chief Godbee denied being a personal friend of Officer Collins. (Tape)

On April 7, 2010, at approximately 11:45 A.M., Sergeant Svenkesen interviewed former Deputy Chief Joyce Motley at the office of Internal Affairs. She was assigned to the Eastern District from March 2007 through September 2008. She denied that Assistant Chief Godbee directed her to let Officer Collins not come to work for the Detroit Police Department, but continue to be paid. She denied being aware that Officer Collins was working outside employment. She further denied telling Sergeant Lewis that Officer Collins was her direct report and not to question what he did. (Tape)

On December 6, 2010, Ms. Georgie Burrell, the School Leader of the Allen Academy testified at the Preliminary Examination and confirmed that Officer Collins was employed at the Allen Academy and he worked two shifts, one of which was 9:00 A.M. to 3:00 P.M. and he was monetarily compensated at a rate of $22.00 an hour. She further testified that Officer Collins position as a home school liaison officer required that he spend the primary part of his day in the school building. When asked if Officer Collins met these expectations she replied, no. She went on to testify that in fact there were occasions when they attempted to locate him, but they could not. (Court Transcript)  *Check Trial - Transcript*

**CANVASS**

Due to the nature of the incident, there was no canvass conducted.

**EVIDENCE**

Payroll records and timesheets for Allen Academy
Payroll records and timesheets for St. Johns Hospital
Payroll records, timesheets and Activity Logs for the Detroit Police Department

To: Commander Brian R. Stair, Internal Controls (Direct)

February 15, 2012

Subject: **IA CASE #09 142**

**Page 7**

From: Lieutenant Whitney Walton, Internal Affairs

## WAYNE COUNTY PROSECUTOR'S RECOMMENDATION

On April 16, 2010, APA Donaldson signed the Investigator's Report, recommending that Officer Collins be charged with one (1) count of Larceny by False Pretenses less than $20,000.00 and one (1) count of Misconduct in Office. (Document)

## GARRITY INTERVIEW

On January 21, 2010, at approximately 12:00 P.M., writer interviewed Police Officer Tobios Rios, badge 4728, assigned to the Eastern District, under the provisions of Garrity at Internal Affairs. Officer Rios stated that he was assigned to Community Relations for approximately three to four years. He stated he would report on duty at the front desk before starting his community policing shift of 6:00 A.M. until 2:00 P.M. Officer Rios stated that he was not aware of Officer Collins working another job and rarely saw him while on shift, because Officer Collins usually worked an afternoon shift. (Tape)

On January 21, 2010, at approximately 12:15 P.M., writer interviewed Police Officer Brad Hawkins, badge 3828, assigned to the Eastern District, under the provisions of Garrity at Internal Affairs. Officer Hawkins stated he had been working Community Relations for about a year and did know Officer Collins. He stated that he would usually report on duty at the front desk and with the dispatcher, before starting his duty. He stated that Officer Collins had called him on his cell phone to switch his shift or cover for him a few times, because he would have a basketball game or other functions. He stated that he was unaware that Officer Collins had a second job and did not hear conversations regarding Officer Collins' shift or his whereabouts. (Tape)

On January 21, 2010, at approximately 12:30 P.M., writer interviewed Police Officer Vanessa Burt, badge 2008, assigned to the Eastern District, under the provisions of Garrity at Internal Affairs. Officer Burt stated that her shift for Community Relations was usually 10:00 A.M. to 6:00 P.M. She stated that before starting the shift, she would check in with Sergeant Lewis to see if there were any Citizen Complaints or special assignments for the day. Officer Burt did not see Officer Collins during her shift and was unaware of Officer Collins' second job. (Tape)

On January 21, 2010, at approximately 12:55 P.M., writer interviewed Police Officer Shawntee Robins, badge 3700, assigned to the Eastern District, under the provisions of Garrity at Internal Affairs. Officer Robins stated that she had been assigned to Community Relations for approximately three years and her shift was 10:00 A.M. to 6:00 P.M. She stated that before starting her shift, she would check in with Sergeant Lewis. She stated that she was unaware of

To:     Commander Brian R. Stair, Internal Controls (Direct)        February 15, 2012

Subject:     **IA CASE #09 142**

                                                    **Page 8**

From:     Lieutenant Whitney Walton, Internal Affairs

Officer Collins' second job and that she never really saw him during work hours due to the different assignments.

On January 25, 2010, at approximately 10:15 A.M., Sergeant Svenkesen interviewed Lieutenant Williams, under the provisions of Garrity at Internal Affairs. Lieutenant Williams stated that she was the administrative lieutenant for the District and was not directly in charge of the Community Relations unit. She stated that she did not know until recently that Officer Collins had a secondary job. She stated that she could not remember who told her, but it was never directly brought to her attention regarding Officer Collins. (Tape)

On January 25, 2010, at approximately 10:30 A.M., Sergeant Svenkesen interviewed Commander Steven Dolunt, assigned to the Eastern District, under the provisions of Garrity at Internal Affairs. Commander Dolunt stated that he was the Commanding Officer of the Eastern District since December 2007. The concerns regarding Officer Collins not working his full shifts were brought to his attention in December 2008. Commander Dolunt stated that he could not recall who brought the incidents to his attention, but he contacted Commander Brian R. Stair, of Internal Affairs in December 2008. Commander Dolunt stated that he rarely saw Officer Collins and was suspicious of his whereabouts; however, Sergeant Lewis assured him that he reported to work. Additionally, he stated that Commander James Moore, of the Eastern District gave Officer Collins specific responsibilities to ensure he was working. (Tape)

On January 26, 2010, at approximately 10:30 A.M., Sergeant Svenkesen interviewed Lieutenant J Coleman, badge L-, assigned to Police Medical. Lieutenant Coleman stated that she was the administrative lieutenant at the Eastern District from approximately 2005 through mid 2009. She stated that she met with all the officers that were part of the Community Relations unit, except for Officer Collins. She stated that she ordered Officer Collins in to meet with her. She stated that she met with Officer Collins and wanted him to report to her directly and his shift was to be 7:00 A.M. to 3:00 P.M. She was told that he could not work those hours, because his mom was sick and he had to take care of his children. Officer Collins told her that Sergeant Lewis was aware and it was okay for him to work later hours. Lieutenant Coleman stated that she spoke with Sergeant Lewis regarding Officer Collins. She was told that everything was under control with all her officers in the Community Relations unit.(Tape)

On March 17, 2010, Commander Dolunt was re-interviewed by Sergeant Svenkesen and Commander Stair. In 2007, when he was working for Deputy Chief Motley when he questioned the activities of Officer Collins, she advised him not to worry about him. In 2008, when Deputy Chief Motley retired, he heard rumors that Officer Collins was running sports camps outside of the city. This caused Commander Moore to give him specific job responsibilities, which included delivering letters to the homes of persons that were the victims of Home

To: Commander Brian R. Stair, Internal Controls (Direct)

Subject: **IA CASE #09 142**

February 15, 2012

**Page 9**

From: Lieutenant Whitney Walton, Internal Affairs

Invasions.  Commander Dolunt stated that when they reviewed Officer Collins Activity Log the receipts of the letters were never home and this made him further suspicious of Officer Collins; however, Sergeant Lewis assured him that Officer Collins was there at roll call. (Tape)

On this same date, Sergeant Svenkesen and Commander Stair interviewed Commander Moore.  He stated that when he was reporting to Deputy Chief Motley, he and Commander Dolunt were given specific responsibilities within the precinct.  Community Relations reported to the Deputy Chief and when he (Commander Moore) inquired about Officer Collins she advised him, "I got that." Commander Moore had conversations with Sergeant Lewis and she assured him that Officer Collins was working.  Commander Moore indicated that if an incident occurred later in the afternoon (2:30 P.M.) Officer Collins was present. Commander Moore indicated he received an anonymous letter indicating that Officer Collins was involved in Amateur Athletic Union (AAU) Basketball while he was supposed to be working.  Commander Moore indicated that he notified Internal Affairs about this allegation. (Tape)

On February 9, 2010, at approximately 11:45 A.M., Sergeant Svenkesen interviewed Police Officer Audrey Curtis, badge 4724, assigned to the Eastern District, under the provisions of Garrity at Internal Affairs.  Officer Curtis stated that she had been a Community Relations Officer for approximately eleven years.  She stated that she knew Officer Collins, but did not know he was working a secondary job until she was told recently by her Commander.  She stated that she would rarely see other Community Relations officers, unless she or another officer was requesting assistance.

Officer Curtis stated that her normal working hours were from 9:00 A.M. to 5:00 P.M., unless a detail was scheduled.  At the beginning of the shift, she stated that she would check in with Sergeant Lewis and then at the end of the shift, unless Sergeant Lewis was gone.  If she was gone, Officer Curtis stated she would sign out in the Blotter. (Tape)

On July 6, 2010, at approximately 10:55 A.M., writer interviewed Sergeant Lewis under the provisions of Garrity in the office of Internal Affairs.  Specific to Officer Collins, Sergeant Lewis stated that in 2007 when former Deputy Chief Motley was newly assigned to the district she began to see Officer Collins everyday at on duty; however, prior to 2007 then Deputy Chief Godbee directed her to put Officer Collins on the Daily Detail, but he was a direct report to him. Sergeant Lewis stated she never saw him and did not question where he was. Sergeant Lewis denied knowing Officer Collins had outside employment and denied giving him permission to work outside employment.  She stated that Officer Collins referred to himself as "Godbee's boy" and she interpreted that to mean he was friends with then assistant chief.

To:     Commander Brian R. Stair, Internal Controls (Direct)          February 15, 2012

Subject:     **IA CASE #09 142**
                                                                    **Page 10**

From:     Lieutenant Whitney Walton, Internal Affairs

On December 20, 2011, at approximately 1:00 P.M., writer and Sergeant Svenkesen interviewed Officer Collins under the provisions of Garrity at Internal Affairs.  Officer Collins asserted that he was given permission by then Deputy Chief Godbee to work as a football coach for a team in Huntington Woods, MI and a basketball team. Officer Collins produced two photographs of Chief Godbee at events that he stated were proof that Chief Godbee was aware of and approved his alternative work activities.  Specific to the hours, Officer Collins stated that his actual works hours were 2:00 P.M. to 10:00 P.M., even though his Activity Logs and Daily Detail documented his hours as 11:00 A.M. to 7:00 P.M., or 12:00 P.M. to 8:00 P.M. He stated that Sergeant Lewis was aware of his work hours, but told him to submit Activity Logs with the alternative times.  When questioned about the entries on his Activity Logs, Officer Collins stated that the entries were correct, but the times were not. Officer Collins stated that from 2:00 P.M. through 5:00 P.M., he worked around the precinct, but then ran basketball and football practices in the evening, depending on the time of year. Officer Collins repeatedly stated that he was given permission by Chief Godbee and that all the command staff that were assigned to the Eastern District from 2004 through 2010.  Officer Collins in response to direct questioning could not provide the names or a roster of the children that were in his programs. Officer Collins when questioned as to why he did not properly document his work functions, if in fact they were sanctioned by the chief, he repeatedly stated that Sergeant Lewis told him to do it that way.  (CD)

It should be noted that writer spoke with Chief Godbee regarding Officer Collins assertions and denied

**CONCLUSION/RECOMMENDATION**

On December 4, 2009, in response to a letter received in the Chief's Office, Internal Affairs began an investigation into Officer Collins and time fraud.

Through investigation it was determined that Officer Collins was working for the Detroit Police Department, along with St. John's Hospital and the Allen Academy.  On eighty-six occasions, these three employments showed that Officer Collins was purportedly working over 24 hours a day.  Additionally, hours that he was expected to be working, overlapped for each employer on a daily basis.

It was determined that Officer Collins, defrauded the Detroit Police Department out of $14,991.92, during which time he was working as a armed security guard at St. John's Hospital and was supposed to be on duty working Community Relations.

To:     Commander Brian R. S*** , Internal Controls (Direct)

                                                                    February 15, 2012

Subject:    **IA CASE #09 142**

                                                            **Page 11**

From:       Lieutenant Whitney Walton, Internal Affairs

Officer Collins was criminally charged, but he was found not guilty at trial.

Officer Collins was interviewed under the provisions of Garrity and admitted to working at St. John's Hospital and the Allen Academy without authorization. However, he denied defrauding the city. He claimed that although the Daily Details and Activity Logs that he signed and submitted (that document his hours as either 11:00 A.M through 7:00 P.M., or 12:00 P.M. to 8:00 P.M.) were false. He claimed that he actually worked 2:00 P.M. to 10:00 P.M., or whenever he arrived from his unauthorized outside employment. It was Officer Collins contention that everyone (department executives and supervision) knew what he was doing and it was allowed.

Sergeant Lewis was interviewed under the provisions of Garrity and stated that since 2007, she had seen Officer Collins everyday when he came on duty at either 11:00 A.M. or 12:00 P.M.  Sergeant Lewis testified to the same at court.

Based upon the above facts and circumstances, writer recommends that IA Case #09 142, be closed with a finding of **"SUSTAINED"** and be forwarded to Disciplinary Administration for adjudication for the following violations of the department rules and regulations:

CHARGE I:          **CONDUCT UNBECOMING AN OFFICER**

Specification:      That he, Police Officer Jerome Collins, badge 1508, assigned to the Eastern District, did, between November 2007 and November 2009, work two unauthorized outside employments that overlapped his duties and responsibilities with the Detroit Police Department as a Community Relations Officer, such conduct which tends to bring the department into disrepute and reflects discredit upon the individual as an officer, and is contrary to the Law Enforcement Code of Ethics; this being in violation of Series 102.3, Directive #102.3-7.9, Conduct, Unprofessional, Subsection 1, of the Detroit Police Manual.



# INTER-OFFICE MEMORANDUM
## Disciplinary Administration

**Chester L. Logan**
Chief of Police

D.P.D. 968 /
9/97

| Date |
| --- |
| May 7, 2013 |

**To:** Commanding Officer, Eastern District (Direct)

**Subject:** **RESCHEDULING OF POLICE TRIAL BOARD IN THE MATTER OF POLICE OFFICER JEROME COLLINS, BADGE 1508, ASSIGNED TO EASTERN DISTRICT**
**DISCIPLINE FILE NO. 12-0137**

**From:** Commander John Serda, Disciplinary Administration

Pursuant to directive of the Chief of Police, the Police Trial Board in the above-entitled matter has been scheduled to convene at **8:30 A.M., Monday, July 8, 2013, through Friday, July 12, 2013,** in the Police Trial Board Room, 7310 Woodward Ave., 3rd Floor, Detroit, Michigan 48202.

By copy of this communication, addressees are placed on notice to take appropriate action and the below identified witnesses are directed to report at the time and place aforesaid.

**THE OFFICER IN CHARGE (OIC) IS RESPONSIBLE FOR NOTIFYING OFFICER COLLINS** *NOT LESS THAN FIFTEEN (15) DAYS PRIOR TO THE SCHEDULED TRIAL BOARD DATE* **AND THE NOTIFICATION OF ALL WITNESSES OF THE SCHEDULED CONVENING DATE. FURTHER, WHEN THE NOTICES ARE EXECUTED THE SIGNED NOTICES ARE TO BE IMMEDIATELY FAXED TO THE (OIC) AT (596-2440) AND DISCIPLINARY ADMINISTRATION AT (596-5395). THE HARD COPY IS TO BE RETURNED VIA DEPARTMENT MAIL TO THE OIC.**

Any requests for clarification of the contents of this directive should be made to the following member of Disciplinary Administration: Sergeant Melinee Long-Thomason at 596-2413.

BY DIRECTION OF COMMANDER
JOHN SERDA

fj

**WITNESSES**
Lieutenant Whitney Walton, Internal Affairs **(OIC)**
Commander Steven Dolunt, Office of the Assistant Chief
Lieutenant James Moore, Eighth Precinct
Lieutenant Pastella Williams, Eastern District
Sergeant Todd Svenkesen, Internal Affairs
Police Officer Frank Bica, Centralized Timekeeping (Eastern District)
Retired Deputy Chief Joyce Motley
Retired Chief of Police Ralph L. Godbee, Jr.
Retired Sergeant Mattie Lewis
Sergeant Juan Rogers, Supervisor, St. John's Hospital
Ms. Diane Griggs, Human Resources, Leona Group, LLC
Ms. Georgia Burrell, Allen Academy



**detroit
police**

Chester L. Logan
Chief of Police

# CHARGE SHEET
# REVISED

| | PAGE 1 OF 22 |
|---|---|
| To: Chief of Police Chester L. Logan     Date: May 7, 2013 | DA# 12-0137 |

| Name: | Rank: | Badge No. | COMMAND |
|---|---|---|---|
| JEROME COLLINS | POLICE OFFICER | 1508 | EASTERN DISTRICT |

## I. CONDUCT UNBECOMING AN OFFICER

Specification 1: That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, while on duty, did from November 2007 through November 2009, conduct himself in a manner unbecoming an officer by working two (2) unauthorized outside employments that overlapped his duties and responsibilities with the Detroit Police Department as a Community Relations Officer; THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.9, CONDUCT, UNPROFESSIONAL, COMMAND 1.

## II. WILLFUL DISOBEDIENCE OF RULES OR ORDERS

Specification 2: That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, while on duty, did from November 2007 through November 2009, willfully disobey a direct order of the Department by working security at St. John's Hospital, without approval from the Chief of Police; THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.9, CONDUCT, UNPROFESSIONAL, COMMAND 8.

Specification 3: That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, while on duty, did from April 2008 through November 2009, willfully disobey a direct order of the Department by working security and as a truancy officer at Allen Academy, without approval from the Chief of Police; THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.9, CONDUCT, UNPROFESSIONAL, COMMAND 8.

JOHN SERDA
Commander
Disciplinary Administration

---

FOR USE AT COMMANDER'S HEARINGS ONLY

Hearing Officer: _____    Hearing Date: _____

Verdict: _____    Sentence: _____

Other Members Present:

_____

C of D-639-RE (Rev. 5-02)     D.P.D 226



**detroit**
# police

Chester L. Logan
Chief of Police

# CHARGE SHEET
# REVISED

To: Chief of Police Chester L. Logan          Date: May 7, 2013

| Name: | Rank: | Badge No. | COMMAND |
|---|---|---|---|
| JEROME COLLINS | POLICE OFFICER | 1508 | EASTERN DISTRICT |

### III.   USING AUTHORITY OR POSITION FOR FINANCIAL GAIN OR FOR OBTAINING PRIVILEGES OR FAVORS

Specification 4:  That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, while on duty, **on numerous dates between November 14, 2007 through November 25, 2009**, at St. John's Hospital, use his position for financial gain by working security, when in fact he was suppose to be working as a Community Relations Officer for the Eastern District, resulting in him being monetarily **compensated by the City of Detroit for time not worked**; THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.6, AUTHORITY, MISUSE, COMMAND 9.

### IV.   WILLFULLY MAKING A FALSE ORAL, WRITTEN STATEMENT OR REPORT

Specification 5:  That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on January 5, 2009**, willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

Specification 6:  That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on January 6, 2009**, willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

**JOHN SERDA**
Commander
Disciplinary Administration

-------------------------------------------------
FOR USE AT COMMANDER'S HEARINGS ONLY

Hearing Officer: _____          Hearing Date: _____

Verdict: _____          Sentence: _____

Other Members Present: _____
_____

C of D-639-RE (Rev. 5-02)          D.P.D 226



**detroit**
**police**

Chester L. Logan
Chief of Police

# CHARGE SHEET
# REVISED

| To: Chief of Police Chester L. Logan | Date: May 7, 2013 | PAGE 3 OF 22<br>DA# 12-0137 |
| --- | --- | --- |

| Name:<br>JEROME COLLINS | Rank:<br>POLICE OFFICER | Badge No.<br>1508 | COMMAND<br>EASTERN DISTRICT |
| --- | --- | --- | --- |

Specification 7:   That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on January 12, 2009**, willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

Specification 8:   That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on January 16, 2009**, willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

Specification 9:   That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on January 21, 2009**, willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

Specification 10:   That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on January 23, 2009**, willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

**JOHN SERDA**
Commander
Disciplinary Administration

---

FOR USE AT COMMANDER'S HEARINGS ONLY

Hearing Officer: _____     Hearing Date: _____

Verdict: _____     Sentence: _____

Other Members Present:

_____

_____



**detroit**
# police

Chester L. Logan
Chief of Police

## CHARGE SHEET
## REVISED

| To: Chief of Police Chester L. Logan | Date: May 7, 2013 | PAGE 4 OF 22<br>DA# 12-0137 |
|---|---|---|

| Name:<br>JEROME COLLINS | Rank:<br>POLICE OFFICER | Badge No.<br>1508 | COMMAND<br>EASTERN DISTRICT |
|---|---|---|---|

Specification 11:   That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on January 28, 2009,** willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

Specification 12:   That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on February 3, 2009,** willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

Specification 13:   That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on February 4, 2009,** willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

Specification 14:   That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on February 6, 2009,** willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

**JOHN SERDA**
Commander
Disciplinary Administration

FOR USE AT COMMANDER'S HEARINGS ONLY

Hearing Officer: _____     Hearing Date: _____

Verdict: _____     Sentence: _____

Other Members Present:
_____



**detroit**
# police

Chester L. Logan
Chief of Police

# CHARGE SHEET
# REVISED

---

To: Chief of Police Chester L. Logan          Date: May 7, 2013

PAGE 5 OF 22
DA# 12-0137

| Name: | Rank: | Badge No. | COMMAND |
|---|---|---|---|
| JEROME COLLINS | POLICE OFFICER | 1508 | EASTERN DISTRICT |

Specification 15: That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on February 11, 2009,** willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

Specification 16: That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on February 17, 2009,** willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

Specification 17: That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on February 18, 2009,** willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

Specification 18: That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on February 19, 2009,** willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

**JOHN SERDA**
Commander
Disciplinary Administration

---

FOR USE AT COMMANDER'S HEARINGS ONLY

Hearing Officer: _____          Hearing Date: _____

Verdict: _____          Sentence: _____

Other Members Present: _____
_____

C of D-639-RE (Rev. 5-02)          D.P.D 226



**detroit police**

Chester L. Logan
Chief of Police

# CHARGE SHEET
# REVISED

| To: Chief of Police Chester L. Logan | Date: May 7, 2013 | PAGE 6 OF 22<br>DA# 12-0137 |
|---|---|---|

| Name:<br>JEROME COLLINS | Rank:<br>POLICE OFFICER | Badge No.<br>1508 | COMMAND<br>EASTERN DISTRICT |
|---|---|---|---|

Specification 19: That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on February 20, 2009**, willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

Specification 20: That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on February 25, 2009**, willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

Specification 21: That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on February 27, 2009**, willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

Specification 22: That he, POLICE OFFICER JEROME COLLINS, badge 1508, currently assigned to Eastern District, **did on March 2, 2009**, willfully make a false written report, when he completed and submitted an Activity Log that he knew contained false information, THIS BEING IN VIOLATION OF THE DETROIT POLICE DEPARTMENT MANUAL SERIES 100, DIRECTIVE 102.3 – 7.22 TRUTHFULNESS, COMMAND 1.

JOHN SERDA
Commander
Disciplinary Administration

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
FOR USE AT COMMANDER'S HEARINGS ONLY

Hearing Officer: _____     Hearing Date: _____

Verdict: _____     Sentence: _____

Other Members Present:
_____