UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re:<br>City of Detroit, Michigan,<br>Debtor. | Bankruptcy Case No. 13-53846<br>Judge Thomas J. Tucker<br>Chapter 9 |

**CITY OF DETROIT'S SUPPLEMENTAL BRIEF IN RESPONSE TO THE ARGUMENTS RAISED BY COURTNEY D. PAYTON FOR THE FIRST TIME AT THE JULY 19, 2017, HEARING**

**I.    Introduction**

At the July 19, 2017, hearing Courtney D. Payton ("Payton") raised two new arguments: (a) his complaint filed in 2017 asserts claims for an "entirely different set of PIP benefits" than those asserted in the complaint he filed in 2015 even though both complaints are based on the same 2004 bus accident; and (b) his prior attorney was not acting within the scope of his authority at and after the time the stipulation for dismissal was entered, and thus (i) sanctions were not warranted and (ii) his prior attorneys' actions cannot be imputed to Payton. (July 19, 2017, hearing audio at 10:23, 26:05-25.) Both arguments should be rejected.

**II.    Background**

    **A.    The Plan and Confirmation Order enjoined Payton's new lawsuit and discharged the claims asserted in the new lawsuit**

On October 22, 2014, the City filed the Eighth Amended Plan of the Adjustment of Debts of the City of Detroit (October 22, 2014) [Doc. No. 8045]

- 1 -

29577265.5\022765-00213
13-53846-tjt    Doc 12400    Filed 07/31/17    Entered 07/31/17 14:12:02    Page 1 of 14

("Plan"). On November 12, 2014, this Court entered an Order confirming the Plan [Doc. No. 8272] ("Confirmation Order").

The discharge provision in the Plan provides

> Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date. Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date, discharge the City from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (ii) the Holder of a Claim based on such debt has accepted the Plan.

Plan, Art. III.D.4, p. 50.

The Plan injunction set forth in Article III.D.5 provides in pertinent part:

**Injunction**

**On the Effective Date, except as otherwise provided herein or in the Confirmation Order,**

**a. all Entities that have been, are or may be holders of Claims against the City…shall be permanently enjoined from taking any of the following actions against or affecting the City or its property…**

**1. commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or**

**other proceeding of any kind against or affect the City of its property…**

**5. proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and**

**6. taking any actions to interfere with the implementation or consummation of the Plan.**

Plan, Article III.D.5 (emphasis supplied), pp. 50-51.

The Court retained jurisdiction to enforce the Plan injunction and to resolve any suits that may arise in connection with the consummation, interpretation or enforcement of the Plan. Plan, Art. VII. F, G, I, pp. 69-70.

### B. Payton violates the Bar Date Order and the Confirmation Order

On December 16, 2015, the City filed its *Motion to Enforce Order, Pursuant to Section 105, 501, and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), Establishing Bar Dates For Filing Proof of Claim and Approving Form and Manner Notice Thereof against Bobby Watson, Godfrey Walters, Nadine Staley and Courtney D. Payton* [Doc. No. 10710] ("<u>Motion to Enforce</u>"). The Motion to Enforce sought to enforce this Court's *Order, Pursuant to Sections 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), Establishing Bar Dates for Filing Proofs of Claim and Approving Form and*

- 3 -

29577265.5\022765-00213
13-53846-tjt    Doc 12400    Filed 07/31/17    Entered 07/31/17 14:12:02    Page 3 of 14

*Manner of Notice Thereof* [Doc. No. 1782] ("Bar Date Order"). Paragraph 22 of the Bar Date Order provides

> Pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(2), **any entity that is required to file a proof of claim in this case pursuant to the Bankruptcy Code, the Bankruptcy Rules or this Order with respect to a particular claim against the City, but that fails properly to do so by the applicable Bar Date, shall be forever barred, estopped and enjoined from: (a) asserting any claim against the City or property of the City**...

Bar Date Order ¶ 22 (emphasis added).

As set forth in the Motion to Enforce:

> On January 23, 2015, Courtney D. Payton ("Payton") filed a complaint ("Payton Complaint") against the City of Detroit in the Circuit Court for the County of Wayne, case number 15-000962. The Payton Complaint is attached as Exhibit 6B.
>
> Payton alleges that on April 4, 2004, he was injured as a result of an automobile accident in the City, under circumstances as to make the City responsible for all medical expenses reasonably incurred, loss of wages, attendant care and replacement services. Payton Complaint ¶ 7. Payton did not file a proof of claim in the City's bankruptcy case.

Motion to Enforce, ¶¶ 10-11.

The City sought an order requiring Payton to dismiss with prejudice case number 15-000962 ("2015 Lawsuit") and barring Payton from pursuing any claims arising from or related to case number 15-000962 against the City. A copy of

29577265.5\022765-00213
13-53846-tjt    Doc 12400    Filed 07/31/17    Entered 07/31/17 14:12:02    Page 4 of 14

Payton's complaint in case number 15-000962 ("2015 Complaint") was attached as Exhibit 6B to the Motion to Enforce.

No response or objection to the Motion to Enforce was timely filed, so on January 27, 2016, the City filed a Certificate of No Response. [Doc. No. 10738].

On January 29, 2016, the Court entered an order granting the Motion to Enforce [Doc. No. 10743] ("Order to Enforce"). The Order to Enforce is attached as Exhibit 6B to the *Motion for (I) Determination that Courtney D. Payton Willfully Violated this Court's Order Granting Motion to Enforce, Entered at Docket Number 10743, and (II) Awarding Compensatory and Punitive Sanctions* [Doc. No. 11894] ("Motion to Enforce #2").

Paragraph 1 of the Order to Enforce states without reservation, qualification or limitation of any kind that the "Motion is granted." Order to Enforce, ¶ 1. Paragraph 2(b) of the Order to Enforce states that no later than February 3, 2016,

> Courtney D. Payton must dismiss, or cause to be dismissed, the City of Detroit with prejudice from the case captioned as Courtney D. Payton, Plaintiff, v. City of Detroit, Defendant, filed in the Wayne County Circuit Court and assigned Case No. 15-000962.

Order to Enforce, ¶ 2(b). Paragraph 3 of the Order to Enforce provides

> Bobby Watson, Godfrey Walters, Nadine Staley and Courtney D. Payton are permanently barred, estopped and enjoined from asserting the claims arising from or related to their State Court Actions against the City of Detroit or property of the City of Detroit.

Order to Enforce, ¶ 3.

On February 8, 2016, a stipulated order of dismissal with prejudice was entered in the 2015 Lawsuit. The stipulated order is attached as Exhibit 6C to Motion to Enforce #2.

### C. Payton violates the Order to Enforce and again violates both the Bar Date Order and Confirmation Order

On April 18, 2017, Payton filed a complaint ("2017 Complaint") against the City in Wayne County Circuit Court, case number 17-05922 ("2017 Lawsuit"). The 2017 Complaint is attached as Exhibit 6D to Motion to Enforce #2. Both the 2015 Complaint and the 2017 Complaint are based on the same 2004 accident and seek no-fault PIP benefits. 2015 Complaint, ¶ 7; 2017 Complaint, ¶¶ 5-6.

On June 1, 2017, the City filed its Motion to Enforce #2. On July 5, Payton filed a response to Motion to Enforce #2 [Doc. No. 11939] ("Response"). On July 14, the City filed a reply to the Response. [Doc. No. 11960].

On July 19, the Court held a hearing on Motion to Enforce #2. At the hearing, Payton asserted two arguments he had not previously raised: (a) the 2017 Complaint assert claims for an "entirely different set of PIP benefits" than those asserted in the 2015 Complaint; and (b) Payton's prior attorney was not acting within the scope of his authority at and after the time the stipulation for dismissal was entered, and thus (i) sanctions were not warranted, and (ii) Payton's prior attorneys' actions cannot be imputed to Payton. (July 19, 2017, hearing audio at

- 6 -
29577265.5\022765-00213
13-53846-tjt    Doc 12400    Filed 07/31/17    Entered 07/31/17 14:12:02    Page 6 of 14

10:23, 26:05-25.). Payton's counsel admitted that he thought of these arguments for the first time the morning of the hearing. (July 19, 2017, hearing audio at 15:02-15:04.).

III. Argument

    A. **The PIP claims Payton asserts in his 2017 Action are barred by the Order to Enforce.**

        1. **The PIP claims in Payton's 2017 Action are "related to" Payton's 2015 Action**

Payton misunderstands or misconstrues the relief granted in the Order to Enforce. The 2017 Complaint asserts precisely the type of claims that the Order to Enforce covers and was intended to cover. The Court should reject Payton's attempt to assert that claims which arise from the same 2004 accident somehow are not related. The plain meaning of the word "related" refutes this argument.

Paragraph 3 of the Order to Enforce states that "Courtney D. Payton [is] permanently barred, estopped and enjoined from asserting the claims arising from **or related to** [his] State Court Action[] against the City of Detroit or property of the City of Detroit." Order to Enforce, ¶ 3 (emphasis added). At the July 19 hearing, Payton asserted that the PIP claims he asserts in his 2017 Action cannot be related to his 2015 Action because he alleges that PIP claims do not arise until an expense is incurred. Because these PIP claims did not exist when the former PIP claims were asserted in his 2015 Action, he contends they cannot be "related to" these claims.

The problem with this argument is that it assumes that two claims that arise on different dates (under non-bankruptcy law) cannot be related, even if they both stem from the same transaction or occurrence. The argument fails because two claims are related if they are "connected in some way." RELATED, Black's Law Dictionary (10th ed. 2014) ("Connected in some way; having relationship to or with something else."). Courts similarly hold that two claims are related if they arise from a common core of facts or are based on related legal theories.

> Related claims "involve a common core of facts or [are] based on related legal theories," *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. Unrelated claims, by comparison, seek "to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury" on which the relief the plaintiff achieved was premised. *Thorne*, 802 F.2d at 1141 (internal quotation marks and citation omitted).

*Nat'l Res. Def. Counsel v. Locke*, 771 F. Supp. 2d 1203, 1216 (N.D. Cal. 2011); *see also URS Corp. v. Travelers Indemn. Co.*, 501 F. Supp. 2d 968, 977 (E.D. Mich. 2007) (noting that the term "related" is "very broad in scope, [] has a clear definition in the language generally, [and] in the insurance industry in particular.").

Here, the 2017 Lawsuit and the 2015 Lawsuit are "connected in some way" because the PIP claims asserted in each arise from the same 2004 bus accident. This connection means that the 2017 Lawsuit is barred by the Order to Enforce. Further, although the PIP claims asserted in the 2017 Lawsuit may be allegedly

newer[1] than the PIP claims asserted in the 2015 Lawsuit, both involve a common core of facts. Indeed, there is one specific fact upon which each set of claims is premised, namely, the 2004 bus accident, without which neither set of claims could exist. Because both sets of claims originate from one single accident, they are "related to" each other. Further, both sets of claims assert the same legal theory, differing only on the specific expenses allegedly incurred and the dates upon which these expenses were allegedly incurred.

Because the PIP claims in the 2017 Action arise from the same accident and involve the same legal theory as those asserted in the 2015 Action, the claims are related. And, because the Order to Enforce barred Payton from asserting claims "related to" those in his 2015 Action, the PIP claims in the 2017 Action are barred by the Order to Enforce. The Court should require that the 2017 Action be dismissed with prejudice.

### 2. The Order to Enforce was itself entered because Payton had violated the Bar Date Order by filing the 2015 Action

The Motion to Enforce pointed out that, in the 2016 Action, Payton alleged he had been injured in a pre-petition bus accident. Motion to Enforce, ¶ 11. The Bar Date Order barred Payton from filing a suit seeking payment of a claim that

---

[1] Nothing in the 2017 Complaint supports Payton's counsel's assertion that the 2017 Complaint asserts an entirely new set of PIP claims from those asserted in the 2015 Complaint. This comports with Payton's new counsel's admission that he came up with this argument the morning of the July 19, 2017, hearing.

arose pre-petition. *Id.*, ¶ 16. He received notice of the Bar Date Order. *Id.* at 11. Thus, the City asked the Court to require Payton to dismiss the 2016 Action with prejudice. *Id.*

Payton never responded to the Motion to Enforce. [Doc. No. 10738.] As a result, the above allegations were deemed admitted for the purposes of the Motion to Enforce. *E.g.*, *In re Rudicil*, 343 B.R. 181, 182 (Bankr. S.D. Ohio 2006). And, on that basis, the Court entered the Order to Enforce.

Thus, the sole reason the Order to Enforce was entered was to enforce the Bar Date Order. Payton's prior attorney knew that this was the case and thus this knowledge is imputed to Payton. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962). Payton cannot now attempt to manufacture reasons as to why the Order to Enforce somehow could be unclear to him when he knew that its sole purpose was to cause him to dismiss similar claims that had arisen from the same pre-petition accident that forms the basis for the 2017 Action.

### 3. If relief is denied, the City will file a motion requesting enforcement of the Bar Date Order and the Confirmation Order, essentially repeating the request it made in its Motion to Enforce.

The 2017 Action is also unquestionably barred by the Bar Date Order and the Confirmation Order. As this Court has held, under the fair contemplation test, PIP claims which stem from a pre-petition accident are pre-petition claims. *In re City of Detroit, Mich.*, 548 B.R. 746, 764 (Bankr. E.D. Mich. 2016). There is no

29577265.5\022765-00213
13-53846-tjt    Doc 12400    Filed 07/31/17    Entered 07/31/17 14:12:02    Page 10 of 14

dispute that the claims asserted in the 2017 Lawsuit stem from the 2004 bus accident. Consequently, the claims asserted in the 2017 Lawsuit are prepetition claims which Payton is barred, estopped, and enjoined from pursuing pursuant to the Bar Date Order and Confirmation Order. The City reserves, and expressly does not waive, any and all rights, remedies, and claims it has against Payton for his continued and repeated violations of the Bar Date Order and Confirmation Order.

### B. Payton's allegations that he was not well-served by his former attorney do not excuse his violation of the Order to Enforce.

Finally, Payton attempts to escape sanctions by arguing that his former attorney did not keep him well apprised of the attorney's actions, failed to explain the consequence of the attorney's actions, is not currently responding to requests for information, and so forth. No evidence has been offered in support of these unsubstantiated claims. Even if there were evidence for these claims, they do not excuse sanctionable conduct because (1) Payton is still bound by his prior attorneys' actions, notwithstanding any subsequent breakdown in their relationship; and (2) it is the actions of his subsequent counsel that are at issue here, not those of his prior counsel.

First, a client is bound by his attorney's actions during the scope of the attorney's representation, notwithstanding any subsequent breakdown in the attorney-client relationship. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 524 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,

29577265.5\022765-00213

507 U.S. 380, 396-97 (1993)); *Panther Petrol., LLC v Crouch (In re Crouch)*, 544 B.R. 867, 877 (Bankr. E.D. Ky. 2016) ("Couch is accountable for the acts and omissions of his counsel even if Couch might have reason to blame counsel."). Likewise, knowledge of the attorney is imputed to the client. As the Supreme Court explained

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

*Nafziger*, 467 F.3d at 524 (quoting *Link*, 370 U.S. at 633-34). If the client feels ill-served by counsel, he may consult a different attorney for a determination as to whether a malpractice suit may lie, but he may not use unsupported allegations of dissatisfaction with counsel as a justification for subsequent bad actions. Indeed, Payton's arguments would at most provide him with fodder for a motion for relief from the Order to Enforce, which relief Payton has not sought.

Second, the actions for which the City seeks sanctions are actions taken recently by Payton and his <u>current</u> set of attorneys, who have admitted on the record that they knew of the Order to Enforce since at least May 30, 2017, and yet have determined to continue pressing forward with the 2017 Action. It is these subsequent actions that spur the City to seek sanctions, not any prior course of

conduct by Payton's attorney.  To suggest that a prior attorney's possible malpractice permits a subsequent attorney to violate a standing court order is simply incorrect and borders on frivolous.

The current attorneys are aware of the Order to Enforce and have made their determination as to its effect (or lack thereof).  They have chosen to proceed with the 2017 Action.  As was the situation with Payton's prior counsel, his current counsel's awareness and knowledge are attributed to Payton, who will enjoy the success (or suffer in the failure) of their actions.[2]

In short, Payton cannot hide behind allegations of attorney incompetence as an excuse for his behavior.

## IV. Conclusion

For these reasons, the Court should grant the Motion to Enforce #2.

---

[2] Of course, the Court has discretion in fashioning its remedies.  If the Court should determine that Payton was not as culpable as the attorneys who have advised him, the Court may fashion its remedy accordingly.

Dated: July 31, 2017

        By: /s/ Marc N. Swanson
           Marc N. Swanson (P71149)
           MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
           150 West Jefferson, Suite 2500
           Detroit, Michigan 48226
           Telephone: (313) 496-7591
           Facsimile: (313) 496-8451
           swansonm@millercanfield.com

        ATTORNEYS FOR THE CITY OF DETROIT

- 14 -

29577265.5\022765-00213
13-53846-tjt   Doc 12400   Filed 07/31/17   Entered 07/31/17 14:12:02   Page 14 of 14