# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re:<br>City of Detroit, Michigan,<br>　　　　　Debtor. | Bankruptcy Case No. 13-53846<br>Judge Thomas J. Tucker<br>Chapter 9 |

**THE CITY OF DETROIT'S REPLY TO THE OBJECTION BY AGAR LAWN SPRINKLER SYSTEMS, INC. TO DEBTOR'S FORTY-SEVENTH OMNIBUS OBJECTION TO CERTAIN CLAIMS**

The City of Detroit ("City"), by its undersigned counsel, files this reply to the objection by Agar Lawn Sprinkler Systems, Inc. to Debtor's Forty-Seventh Omnibus Objection to Certain Claims [Doc. Nos. 11450 & 11451] ("Response").

**I.　Introduction**

1.　The City's objection to the proof of claim filed by Agar Lawn Sprinkler Systems Inc. ("Agar") should be sustained. Agar's claim is entirely unsupported with credible documentation. In most instances it also lacks basic information such as invoice numbers. This is likely because Agar has systematically overbilled the City while not performing the services it claims it is owed money for. As such, the Court should sustain the City's objection to Agar's claim.

**II.　Background**

2.　On July 28, 2016, the City filed its Forty-Seventh Omnibus Objection to Certain Claims [Doc. No. 11399] ("Objection").

3. On September 9, 2016, the Court entered an order sustaining the Objection except for three unresolved proofs of claim, including claim number 776 filed Agar ("Agar Claim").[1] The Agar Claim is attached as Exhibit 1.

4. The hearing on the Agar Claim has been adjourned multiple times by this Court due to a pending preference action filed by the City against Agar, adversary proceeding number 15-05299 ("Adversary Proceeding"). [Doc. Nos. 11476, 11616, 11700, 11807, 11902].

5. On August 3, 2017, the City filed the Notice of Settlement Pursuant to Local Bankruptcy Rule 9019-1 in the Adversary Proceeding. The Agar Claim remains unresolved.

6. As set forth in the Objection, the City objected to the Agar Claim because Agar overcharged the City and did not perform the represented services. *See* Objection at page 16 of 22.

7. In its response, Agar asserted that all of its work was approved and accepted without any claim of overcharging or that the work was not completed. Response, pp. 1-2. Agar further asserted that it was "simply another victim of the City's financial mess and who was not paid for work completed in good faith on an emergency basis." Response, p. 2.

---

[1] The Court entered orders resolving the other two proofs of claim. [Doc. Nos. 11636 & 11675].

### III. Argument

8. Agar's arguments lack merit. As explained by Angela Hipps, a manager with the City's General Services Department ("GSD"), the Agar Claim should be expunged because it is unsupported and Agar has failed to perform the claimed services. The Declaration of Angela Hipps ("Hipps Decl.") is attached as Exhibit 2.

9. Included in the Agar Claim is a summary of amounts that Agar claims represent unpaid invoices. Agar Claim, p. 2; Hipps Decl. ¶ 8. The Agar Claim only contains three invoice numbers, however. *Id.*; Hipps Decl. ¶ 9. The remaining entries on the Agar Claim do not provide information to substantiate the Agar Claim. Each entry contains no more than (a) a cryptic statement that may indicate a City department of function Agar claims owes it money, (2) the year in which services allegedly were provided or billed, and (3) a dollar amount claimed. *Id.*; Hipps Decl. ¶ 10. All of the entries other than the one noted above lack invoice numbers. *Id.* Agar did not attach copies of any invoices to the Agar Claim. *Id.*

10. For the entries that lack invoice numbers or even dates and service descriptions, there is no way for the City to verify that any amount is owed, much less the amount claimed. Hipps Decl. ¶ 11. There is no way to determine (1) whether any invoices were ever issued in the amounts alleged, (2) what the alleged services might have been that would justify these amounts or where and when they

might have been provided, or (3) whether the amount asserted might already have been paid by the City. *Id.*

11. The City also has reason to believe that the amounts asserted by Agar were likely fabricated or inflated. Hipps Decl. ¶ 12. Soon after Ms. Hipps began her tenure with GSD, she received questions from colleagues over the amounts that Agar was billing for services. *Id.* ¶ 13.

12. As an example of these concerns, Building Maintenance Supervisor Johnnie Haynes discussed with Ms. Hipps an Agar invoice. *Id.* ¶ 14. Mr. Haynes told Ms. Hipps that someone had broken into one of the City's trucks and had stolen items needed to turn on water to a building. Mr. Haynes had asked Agar to handle this request. *Id.* Mr. Haynes said that Agar had dispatched a technician who turned on the water in under five minutes while he watched. *Id.* Later, Mr. Haynes received an invoice claiming that four men had been involved and had each spent four hours on the problem. *Id.*

13. A number of Ms. Hipps' colleagues observed that many invoices from Agar asserted that four men had provided four hours of labor each, regardless of the nature of the job in question. *Id.* ¶ 15. Because of these concerns, Brad Dick, Director of GSD, asked Ms. Hipps to supervise work assigned to Agar. *Id.* ¶ 16.

14. An opportunity to witness a repair presented itself on June 20, 2013. *Id.* ¶ 17. A sprinkler head was stuck on and was flooding an area on Madison

29671433.2\022765-00213

Avenue. *Id.* Ms. Hipps contacted Agar that day and asked them to repair it. *Id.* They agreed to repair it the next day, Friday, June 21, as they would be working at Grand Circus Park nearby. *Id.* Ms. Hipps was to meet them at noon. *Id.*

15. Agar's technician arrived and changed out a solenoid and a faulty valve and turned the water back on. *Id.* ¶ 18. In Ms. Hipps' experience, such a repair should normally take no more than two hours for one person to complete. *Id.* The next Monday, June 24, Karen Agar from Agar emailed invoice #412 to the City for the work that had been done. *Id.* ¶ 19. The invoice was for $496.30, $416.00 of which was for labor. *Id.* There was no breakout for how the figure for labor had been determined. *Id.*

16. When Ms. Hipps requested a breakout of hours, Agar responded that three men had each worked four hours on the job for a total of 16 hours at $26 per hour. *Id.* ¶ 20. Ms. Hipps pointed out that this math did not work. *Id.* The next day, June 25, Agar emailed a revised invoice showing that that four men had been present, not three. *Id.*

17. Also on June 25, Ms. Hipps witnessed another service request to West Grand Circus. *Id.* ¶21. Agar had said that it would start work at 8:00 a.m. *Id.* Ms. Hipps arrived at 8:00 a.m. at the job site and waited for Agar's people to arrive. *Id.* The first irrigation person showed up at 9:25 a.m., identified himself as "Steve," and said that others were on the way. *Id.* ¶ 22. Ultimately, four people

29671433.2\022765-00213

showed up, including the owner Bob Agar, at various times between 10:30 a.m. and 11:30 a.m. *Id.* ¶ 23. None of them had contacted Municipal Parking to get access to the job site. *Id.* ¶ 23. It was their responsibility to do so, and because they had not, they could not enter to conduct the scheduled repairs. *Id.* ¶ 23.

18. Bob Agar told Ms. Hipps they would return the next day, June 26. *Id.* ¶ 24. Ms. Hipps stated there should not be a charge for June 25 since no work had been done. *Id*. Bob told Ms. Hipps that he intended to charge for four people's time starting at 8:00 a.m. that morning because they had left their shop at 8:00 a.m., went to retrieve parts, and so forth. *Id.* Ms. Hipps told him that she would not approve an invoice where no actual work had been done. *Id.*

19. Ms. Hipps asked Bob at what time Agar would arrive tomorrow. *Id.* ¶ 26. Bob said they would return at 9:00 a.m. *Id.* He appeared very angry. *Id.* He and his team then left. *Id.* That afternoon, the City received an email from Bob canceling the June 26 repair appointment. *Id.* ¶ 27.

20. Over the next few days, Ms. Hipps exchanged emails with Bob regarding his invoice for the Madison Avenue repair. *Id.* ¶ 28. He insisted that Agar spent 16 hours on the job, stating that the time included the initial contact, scheduling, invoicing, pre-meeting and actual meeting time, research, parts procurement, and "pure man hours" in addition to the actual repair time. *Id.* In

- 6 -
29671433.2\022765-00213
13-53846-tjt    Doc 12650    Filed 08/18/17    Entered 08/18/17 15:29:28    Page 6 of 19

Ms. Hipps' experience, irrigation specialists set an hourly rate that covers these overhead items and bill only for the time that they actually spend on the job. *Id.*

21. Ultimately, the City terminated its contract with Agar. *Id.* ¶ 29.

22. Based on Ms. Hipps' experience with Agar and on conversations Ms. Hipps had with other current and former City employees, Agar likely overbilled the City for services for years. As such, the City has no reason to trust any invoice from Agar.

**IV. Conclusion**

23. The Court should sustain the City's objection. The Agar Claim is unsupported by credible documentation. Agar also overbilled of the City while not performing the represented services. The City does not owe Agar any money.

August 18, 2017               Respectfully submitted,

By: /s/ Marc N. Swanson
   Marc N. Swanson (P71149)
   MILLER, CANFIELD, PADDOCK AND
   STONE, P.L.C.
   150 West Jefferson, Suite 2500
   Detroit, Michigan 48226
   Telephone: (313) 496-7591
   Facsimile: (313) 496-8451
   swansonm@millercanfield.com

   ATTORNEYS FOR THE CITY OF DETROIT

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re:<br>City of Detroit, Michigan,<br>Debtor. | Bankruptcy Case No. 13-53846<br>Judge Thomas J. Tucker<br>Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 18, 2017, he served a copy of the foregoing ***REPLY TO THE OBJECTION BY AGAR LAWN SPRINKLER SYSTEMS, INC. TO DEBTOR'S FORTY-SEVENTH OMNIBUS OBJECTION TO CERTAIN CLAIMS,*** with its exhibits, upon the counsel for Agar Lawn Sprinkler Systems, Inc. via first class mail and electronic mail, as follows:

John D. Mulvihill
20 W. Washington, Suite 2
Clarkston, MI 48346
jdmulvihill@sbcglobal.net

                         By: /s/ Marc N. Swanson
                               Marc N. Swanson
                               150 West Jefferson, Suite 2500
                               Detroit, Michigan 48226
                               Telephone: (313) 496-7591
                               Facsimile: (313) 496-8451
                               swansonm@millercanfield.com

August 18, 2017

# EXHIBIT 1

In its List of Claims, _____ amount of $116,546.35. To determine if you need to file a claim, please refer to the enclosed Information About Deadlines to File Claims.

B10 (Official Form 10) (04/13) (Modified)

| UNITED STATES BANKRUPTCY COURT | EASTERN DISTRICT of MICHIGAN | CHAPTER 9 PROOF OF CLAIM |
|---|---|---|

Name of Debtor: City of Detroit, Michigan     Case Number: 13-53846

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Agar Lawn Sprinkler Systems Inc

FILED
2014 FEB -4 A 10: 36
COURT USE ONLY
BANKRUPTCY COURT
E.D. MICHIGAN-DETROIT

Name and address where notices should be sent:   NameID: 11634544
Agar Lawn Sprinkler Systems Inc
Attn Accounts Payable
18055 Van Dyke
Detroit, MI 48234
Telephone number: 313-475-4283   email: AgarSprinklers@aol.com

☐ Check this box if this claim amends a previously filed claim.
Court Claim Number: _____
(If known)
Filed on: _____

Name and address where payment should be sent (if different from above):
ROBERT AGAR, AGAR LAWN SPRINKLER SYSTEMS, INC.
53520 ODILON
SHELBY TWP., MI 48316
Telephone number: 313.475.4283  email: AgarSprinklers@aol.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

RECEIVED
FEB 07 2014
KURTZMAN CARSON CONSULTANTS

1. **Amount of Claim as of Date Case Filed:**  $ 189,752.63

If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.
☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. **Basis for Claim:** Services Performed
(See instruction #2)

3. **Last four digits of any number by which creditor identifies debtor:** 9185

3a. Debtor may have scheduled account as: P.O. 4942 or 1984
(See instruction #3a)

4. **Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:
Value of Property: $ _____
Annual Interest Rate (when case was filed) _____ % ☐ Fixed or ☐ Variable

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:  $ _____

Basis for perfection: _____

Amount of Secured Claim:   $ 0
Amount Unsecured:   $ 189,752.63

5. Amount of Claim Entitled to Priority as an Administrative Expense under 11 U.S.C. §§ 503(b)(9) and 507(a)(2).  $ _____

5b. Amount of Claim Otherwise Entitled to Priority. Specify Applicable Section of 11 U.S.C. § _____.   $ _____

6. **Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

7. **Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)* DO NOT SEND ORIGINAL DOCUMENTS.
ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

8. **Signature:** (See instruction # 8)
Check the appropriate box.

☒ I am the creditor.  ☐ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
Print Name: ROBERT AGAR
Title: OWNER
Company: AGAR LAWN SPRINKLER SYSTEMS
Address and telephone number (if different from notice address above):
53520 ODILON SHELBY TWP, MI 48316
313 475 4283  AgarSprinklers@aol.com
Telephone number:        email:
(Signature)   1-28-2014 (Date)

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

13-53846-tjt    Doc 12650    Filed 08/18/17    Entered 08/18/17 15:28:21    Page 10 of 19

Agar Lawn Sprinkler Systems, Inc.     *reflects payments made

# Past Due Invoices
GSD AND DPW
**Contents and Totals**

| | | | | | | |
|---|---|---|---|---|---|---|
| Pg. 1 | Invoices Street Fund/Handwritten | 2012 Past Due | $ 25,381.68 | DPW | | |
| | | 2011 Past Due | $ 19,127.83 | DPW | | |
| | | 2010 Past Due | $ 2,646.00 | DPW | | |
| Pg. 2 | Invoices Street Fund/Handwritten | 2009 Past Due | $ 6,169.22 | DPW | | |
| | Payment Error | Past Due | $ 2,529.20 | DPW | | |
| Pg. 3 | Payment Error Check Stub | | | | | |
| Pg. 4 | Invoices Street Fund/Electronic | 2012 Past Due | v | | | |
| Pg. 5 | Invoices Street Fund/Electronic | 2012 Continued | v | | | |
| Pg. 6 | Invoices Street Fund/Electronic | 2012 Continued | $ 90,982.05 | DPW | All DPW (Street) | $ 146,835.98 |
| Pg. 7 | Invoices Park Fund/Handwritten | 2012 Past Due | $ 656.00 | GSD | | |
| | | 2011 Past Due | $ 13,594.36 | GSD | | |
| | | 2010 Past Due | $ 1,812.90 | GSD | | |
| Pg. 7 | Invoices Park Fund/Electronic | 2012 Continued | $ 9,104.86 | GSD | All Park Fund | $ 27,472.11 |
| Pg. 8 | Invoices Police Department | 2011 Past Due | $ 9,033.38 | GSD | | |
| Pg. - | Invoices Water Board | 2012 Past Due | * | | | |
| Pg. 9 | Invoices Health Department | 2011 Past Due | $ 2,989.16 | GSD | | |
| | | 2006 Past Due | $ 3,422.00 | GSD | | |
| Pg. 10 | Invoices Park Fund/Electronic | 2013 | $ 2,303.99 | GSD | | |
| 11, 12 | #410, #412, #413  for requested/approved repairs | | | | All GSD | $ 42,916.65 |
| Pg. - | Invoices DDOT | 2012 Past Due | * | | | |
| | | 2011 Past Due | * | | | |
| | | 2010 Past Due | * | | $ | - |
| | Total All Delinquent Invoices | | $ 189,752.63 | | | |
| | GSD and DPW | | $ 189,752.63 | | | |



**CITY OF DETROIT**
**FINANCE DEPARTMENT**
**PURCHASING DIVISION**
1008 Coleman A. Young
Municipal Center
Detroit, Michigan 48226
Phone 313-224-4600
Fax 313-224-4374

# Purchase Order

| PURCHASE ORDER NO | REVISION | PAGE |
|---|---|---|
| 2871984 | 0 | 1 |

**SHIP TO**
see release for actual agenc
Detroit, MI 48226
United States

**BILL TO**
Coleman A Young Municipal Ce
2 Woodward Avenue
Ste 642
Detroit, MI 48226
United States

AGAR LAWN SPRINKLER SYSTEMS INC
18055 VAN DYKE
DETROIT, MI 48234

| SUPPLIER NO | DATE OF ORDER/BUYER | REVISED DATE/BUYER |
|---|---|---|
| 1019225 | 01-NOV-12  B Washington | |

| PAYMENT TERMS | SHIP VIA | FOB |
|---|---|---|
| 2% 45 Days | Unspecified | Delivered |

| FREIGHT TERMS | REQUESTOR/DELIVER TO | CONFIRM TO / TELEPHONE |
|---|---|---|
| | | (313) 892-5335 |

THIS PURCHASE ORDER IN ACCORDANCE WITH RFQ. 41650 AND PERIOD AGREEMENT REQUEST

CC: 12-NOV-2012

FURNISH: UNDERGROUND SPRINKLER MAINTENANCE AND REPAIR FOR THREE (3) YEARS WITH THREE (3) - ONE (1) YEAR RENEWAL OPTIONS

RENEWAL: THREE (3) RENEWAL OPTIONS AVAILABLE

F.O.B.: VARIOUS CITY OF DETROIT LOCATIONS AS INDICATED, LOCATIONS MAY BE DELETED OR ADDED AS NEEDED

PROTECTION OF WORK, PERSONS, AND PROPERTY:

DURING PERFORMANCE AND UP TO DATE OF FINAL ACCEPTANCE, THE CONTRACTOR SHALL BE UNDER ABSOLUTE OBLIGATION TO PROTECT THE FINISHED AND UNFINISHED WORK AGAINST ANY DAMAGE, LOSS OR INJURY. THE CONTRACTOR SHALL TAKE ALL REASONABLE PRECAUTIONS TO PROTECT THE PERSONS AND PROPERTY OF THE CITY FROM DAMAGE, LOSS OR INJURY DURING THE PERFORMANCE UNDER THIS CONTRACT.

TERMINATION OF CONTRACT:

THE CITY RESERVES THE ABSOLUTE RIGHT TO TERMINATE THIS CONTRACT IN WHOLE OR IN PART, FOR THE CONVENIENCE OF THE CITY AT ITS SOLE DISCRETION ON THIRTY (30) DAYS WRITTEN NOTICE TO THE VENDOR.

**Total: 325,000.00**

CONTRACTS AND PURCHASES BETWEEN THE VENDOR AND THE CITY OF DETROIT ARE SUBJECT TO FEDERAL, STATE AND LOCAL LAWS INCLUDING, BUT NOT LIMITED TO, EQUAL EMPLOYMENT OPPORTUNITY AND AFFIRMATIVE ACTION • THE CITY MAY TERMINATE THE CONTRACT FOR CAUSE OR CONVENIENCE • NO CHANGES EFFECTIVE UNLESS AGREED TO IN WRITING BY CONTRACT AMENDMENT • ONLY SUCH GOODS WILL BE PAID FOR AS COMPLY EXACTLY WITH WRITTEN DESCRIPTION • WHEN SHIPPED VIA COMMON CARRIER, MAIL SHIPPING NOTICE DIRECTLY TO RECEIVING POINT • CASH TERMS DATE FROM RECEIPT AND ACCEPTANCE OF GOODS AND CORRECT INVOICE • PATENTS-CONTRACTORS SHALL PROTECT AND INDEMNIFY AGAINST EXPENSE OF ANY NATURE, SHALL BEAR COST OF ANY SUITS WHICH MAY ARISE, AND SHALL PAY ALL DAMAGES WHICH MAY BE AWARDED AGAINST THE CITY FOR THE USE UNDER THIS SPECIFICATION OF ANY PATENTED DEVICE, PROCESS, APPARATUS, MATERIAL OR INVENTION • THE CITY RESERVES THE RIGHT TO AUDIT EMPLOYEE PAYROLL RECORDS TO VERIFY LABOR CHARGES UPON 72 HOURS NOTICE.

*signature: Andre DuPerry*

PURCHASING DIRECTOR'S SIGNATURE
NOT VALID WITHOUT AUTHORIZED SIGNATURE




**CITY OF DETROIT**
FINANCE DEPARTMENT
PURCHASING DIVISION
1008 Coleman A. Young
Municipal Center
Detroit, Michigan 48226
Phone 313•224•4600
Fax 313•224•4374

PURCHASE ORDER NUMBER: 2714942  REVISION: 5  PAGE: 1

THE ABOVE NUMBER MUST APPEAR ON ALL INVOICES AND SHIPMENTS

**SHIP TO**
see release for actual agenc
Detroit, MI 48226
United States

RFQ # 19554

**SUPPLIER**
AGAR LAWN SPRINKLER SYSTEMS INC
18055 VAN DYKE
DETROIT, MI 48234

**BILL TO**
Coleman A Young Municipal Ce
2 Woodward Avenue
Ste 642
Detroit, MI 48226
United States

| SUPPLIER NO. | DATE OF ORDER / BUYER | REVISED DATE / BUYER |
|---|---|---|
| 1019225 | 27-JUL-06  C Jones | 05-AUG-11  B Washington |

| PAYMENT TERMS | SHIP VIA | F.O.B. |
|---|---|---|
| Net 45 | Lowest Cost Carrier | Delivered |

| FREIGHT TERMS | REQUESTOR / DELIVER TO | CONFIRM TO / TELEPHONE |
|---|---|---|
| Account of Buyer | | (313) 892-5335 |

| LINE | ITEM NUMBER / DESCRIPTION | DELIVERY DATE | QUANTITY | UNIT | UNIT PRICE | EXTENSION | TAX |
|---|---|---|---|---|---|---|---|

THIS PURCHASE ORDER WAS CREATED IN ACCORDANCE WITH RFQ #19554

CCR: 19-JUL-06, 26-MAY-09, 11-MAY-10, 26-JUL-2011 (CONTRACT RENEWED)

FURNISH: SPRINKLER REPAIR, 3 YEAR CONTRACT WITH AN OPTION TO RENEW FOR THREE ADDITIONAL ONE-YEAR PERIODS.

PRICE: FIRM

RENEWAL OPTION: NO RENEWAL OPTIONS AVAILABLE

PROMPT PAYMENT: THE CONTRACTOR OR VENDOR IS ADVISED THAT PAYMENT FOR ANY GOODS OR SERVICES RENDERED UNDER THIS CONTRACT OR PURCHASE ORDER IS GOVERNED BY THE TERMS OF THE CITY OF DETROIT PROMPT PAYMENT ORDINANCE NO. 42-98 ENTITLED "PROMPT PAYMENT OF VENDORS", BEING SECTIONS 18-5-71 THROUGH 18-5-80 OF THE 1984 DETROIT CITY CODE SECTIONS.

PROMPT PAYMENT ORDINANCE:

PAYMENT FOR SERVICES (OR GOODS) PROVIDED UNDER THIS CONTRACT (OR PURCHASE ORDER) IS GOVERNED BY THE TERMS OF ORDINANCE NO. 42-98 ENTITLED "PROMPT PAYMENT OF VENDORS", BEING SECTIONS 18-5-79 OF THE 1984 DETROIT CITY CODE.

THIS IS A CITY WIDE CONTRACT. EACH DEPARTMENT HAS AN INDIVIDUAL RESPONSIBLE FOR ACCEPTING PERFORMANCE UNDER THIS CONTRACT, EACH PERSON MAY REACHED PER THE ATTACHED DEPARTMENT LIAISON LIST.

THE CONTACT PERSON FROM WHOM PAYMENT SHOULD BE REQUESTED FOR EACH DEPARTMENT IS PER THE ATTACHED DEPARTMENT LIAISON PROMPT PAYMENT LIST.

Purchase Agreement

**Total: 4,320,000.00**

• DELIVERY SLIP MUST ACCOMPANY EACH SHIPMENT • WHEN SHIPPED VIA COMMON CARRIER, MAIL SHIPPING NOTICE DIRECTLY TO RECEIVING POINT • CASH TERMS DATE FROM RECEIPT AND ACCEPTANCE OF GOODS AND CORRECT INVOICE • PATENTS — CONTRACTORS SHALL PROTECT AND INDEMNIFY AGAINST EXPENSE OF ANY NATURE, SHALL BEAR COST OF ANY SUITS WHICH MAY ARISE, AND SHALL PAY ALL DAMAGES WHICH MAY BE AWARDED AGAINST THE CITY FOR THE USE UNDER THIS SPECIFICATION, OF ANY PATENTED DEVICE, PROCESS, APPARATUS, MATERIAL, OR INVENTION • THIS CONTRACT IS SUBJECT TO FEDERAL, STATE AND LOCAL LAWS REGARDING EQUAL EMPLOYMENT OPPORTUNITY AND AFFIRMATIVE ACTION • CHANGES AGREED UPON BY OTHER THAN THE FINANCE DEPARTMENT, PURCHASING DIVISION, WILL JEOPARDIZE PAYMENT • CITY RESERVES THE RIGHT TO AUDIT EMPLOYEE PAYROLL RECORDS TO VERIFY LABOR CHARGES UPON 72 HOURS NOTICE • ONLY SUCH GOODS WILL BE PAID FOR AS COMPLY EXACTLY WITH ABOVE WRITTEN DESCRIPTION

*Andre DuPerry*
PURCHASING DIRECTOR'S SIGNATURE
NOT VALID WITHOUT PURCHASING DIRECTOR'S SIGNATURE

CCD-PO-03-0799

# EXHIBIT 2

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re:<br><br>City of Detroit, Michigan,<br><br>Debtor. | Bankruptcy Case No. 13-53846<br><br>Judge Thomas J. Tucker<br><br>Chapter 9 |

## DECLARATION OF ANGELA HIPPS IN SUPPORT OF THE CITY OF DETROIT'S OMNIBUS REPLY IN SUPPORT OF THE FORTY-SEVENTH OMNIBUS OBJECTION TO CERTAIN CLAIMS

I, Angela Hipps, a Manager with the City of Detroit General Services Department ("GSD"), submit this declaration in support of the City of Detroit's ("City") Omnibus Reply in Support of the Forth-Seventh Omnibus Objection to Certain Claims.

1. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge or are based upon information provided to me by other City employees. If I were called to testify, I could and would testify to the facts set forth in this declaration.

2. I began oversight of the irrigation systems repair and maintenance contract for GSD, City of Detroit, in June of 2013. My position with GSD was Floriculture Supervisor. I have a Bachelor of Science in Horticulture from Michigan State University. I also have training in irrigation repairs, and was responsible for completing all irrigation repairs for the Rogell Golf Course, where I served as superintendent for 17 years.

3. Agar Lawn Sprinkler Systems Inc. ("Agar") maintains and repairs irrigation systems, such as sprinkler systems, such as those used by the City to maintain its public areas.

4. Robert (or "Bob") Agar is the owner of Agar.

5. On July 28, 2016, the City filed its Forty-Seventh Omnibus Objection to Certain Claims [Doc. No. 11399] ("Objection"). As set forth in the Objection, the City objected to proof of claim number 776 ("Agar Claim") filed by Agar on February 4, 2014. Agar filed a response to the Objection on August 23, 2016, at

docket number 11451 ("Agar Response"). I have reviewed the Objection, the Agar Claim, and the Agar Response.

6. Agar maintains and repairs irrigation systems, such as sprinkler systems,

7. The Agar Claim asserts a claim for "services performed" in the amount of $189,752.63.

8. In support of the Agar Claim, Agar attaches a summary of amounts that it claims represent unpaid invoices ("Agar Claim List").

9. The Agar Claim List only contains three invoice numbers: #410, #412, and #413. These are listed next to the entry marked "Pg. 10 11, 12."

10. The remaining entries on the Agar Claim List do not provide information to substantiate the Agar Claim. Each entry contains no more than (1) a cryptic statement that may indicate a City department or function Agar claims owes it money, (2) the year in which services allegedly were provided or billed, and (3) a dollar amount claimed. All of the entries other than the one noted in the prior paragraph lack invoice numbers. Agar did not attach copies of any invoices to the Agar Claim.

11. For the entries that lack invoice numbers or even dates and service descriptions, there is no way for the City to verify that any amount is owed, much less the amount claimed. There is no way to determine (1) whether any invoices were ever issued in the amounts alleged, (2) what the alleged services might have been that would justify these amounts or where and when they might have been provided, or (3) whether the amount asserted might already have been paid by the City.

12. Further, I have reason to suspect that the amounts asserted likely have been fabricated or inflated.

13. Soon after I began my tenure with GSD, I received questions from colleagues over the amounts that Agar was billing for services.

14. As an example of these concerns, Building Maintenance Supervisor Johnnie Haynes discussed with me an Agar invoice. He told me that someone had broken into one of the City's trucks and had stolen items needed to turn on water to a building. He had asked Agar to handle this request. He said that Agar had dispatched a technician who turned on the water in under five minutes while he

watched. Later, he had received an invoice claiming that four men had been involved and had each spent four hours on the problem.

15. A number of my colleagues observed that many invoices from Agar asserted that four men had provided four hours of labor each, regardless of the nature of the job in question.

16. Because of these concerns, Brad Dick, Director of GSD, asked me to supervise work assigned to Agar. My experience in irrigation would help GSD verify the invoices it received.

17. An opportunity to witness a repair presented itself on June 20, 2013. A sprinkler head was stuck on and was flooding an area on Madison Avenue. I contacted Agar that day and asked them to repair it. They agreed to repair it the next day, Friday, June 21, as they would be working at Grand Circus Park nearby. I was to meet them at noon.

18. Agar's technician arrived and changed out a solenoid and a faulty valve and turned the water back on. I did not witness the entire repair, but remained in the area and checked in from time to time. In my experience, such a repair should normally take no more than two hours for one person to complete.

19. The next Monday, June 24, Karen Agar from Agar emailed invoice #412 to the City for the work that had been done. The invoice was for $496.30, $416.00 of which was for labor. There was no breakout for how the figure for labor had been determined.

20. When I requested a breakout of hours, Agar responded that three men had each worked four hours on the job for a total of 16 hours at $26 per hour. I pointed out that this math did not work. The next day, June 25, Agar emailed a revised invoice showing that that four men had been present, not three.

21. Also on June 25, I witnessed another service request to West Grand Circus. Agar had said it would start work at 8:00 a.m. I arrived at 8:00 a.m. at the job site and waited for Agar's people to arrive.

22. The first irrigation person showed up at 9:25 a.m., identified himself as "Steve," and said that others were on the way.

23. Ultimately, four people showed up, including the owner Bob Agar, at various times between 10:30 a.m. and 11:30 a.m. None of them had contacted

Municipal Parking to get access to the job site. It was their responsibility to do so, and because they had not, they could not enter to conduct the scheduled repairs.

24. Bob Agar told me they would return the next day, June 26. I stated there should not be a charge for June 25 since no work had been done. Bob told me that he intended to charge for four people's time starting at 8:00 a.m. that morning because they had left their shop at 8:00 a.m., went to retrieve parts, and so forth. I told him that I would not approve an invoice where no actual work had been done.

25. I also told Bob that after the job was completed, I wanted all parts that were replaced. Bob told me that he did not have to give me the parts. I insisted on receiving them anyway, as I believe the City has a right to the original parts when it is paying for replacement parts.

26. I asked Bob at what time Agar would arrive tomorrow. Bob said they would return at 9:00 a.m. He appeared very angry. He and his team then left.

27. That afternoon, the City received an email from Bob canceling the June 26 repair appointment.

28. Over the next few days, I exchanged emails with Bob regarding his invoice for the Madison Avenue repair. He insisted that Agar spent 16 hours on the job, stating that the time included the initial contact, scheduling, invoicing, pre-meeting and actual meeting time, research, parts procurement, and "pure man hours" in addition to the actual repair time. In my experience, irrigation specialists set an hourly rate that covers these overhead items and bill only for the time that they actually spend on the job.

29. Ultimately, the City terminated its contract with Agar.

30. Based on my experience with Agar and on conversations I have had with other current and former City employees, I believe Agar likely overbilled the City for services for years. I have no reason to trust any invoice from Agar.

31. Because the Agar Claim is unsupported by credible documentation, and because my personal experience with Agar indicates that invoices from Agar may well contain inflated labor charges, I do not believe the Agar Claim demonstrates that the City owes Agar anything, much less the amount claimed.

- SIGNATURE LINE IS ON THE NEXT PAGE -

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

By: *Angela Hipps* (signature)
Angela Hipps
Manager, City of Detroit General Services Department

Executed on August 26, 2016