NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0543n.06

Case No. 17-1256

| | |
|---|---|
| UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT | **FILED** Sep 28, 2017 DEBORAH S. HUNT, Clerk |

IN RE: CITY OF DETROIT,
    Debtor.
_____

MICHAEL MCKAY,
    Appellant,

v.

CITY OF DETROIT, MICHIGAN,
    Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

BEFORE: SUTTON, DONALD, and THAPAR, Circuit Judges.

SUTTON, Circuit Judge. Michael McKay settled his § 1983 lawsuit with the City of Detroit after the City declared bankruptcy. The City's eventual bankruptcy plan prompted a dispute about how much McKay is owed under the settlement agreement. Both the bankruptcy court and the district court agreed with the City's interpretation of the agreement. We do too, and affirm.

In May 2013, an arbitrator awarded Michael McKay $42,500 in his § 1983 lawsuit against three Detroit police officers. McKay expected to collect his award from the City, which indemnifies its officers for their liabilities. Indemnification arrangements normally make it easier for plaintiffs to get paid. Unhappily for McKay, that's not how it worked out because Detroit went bankrupt before McKay could collect his award.

Armed with the arbitration award, McKay filed a proof of claim in the City's bankruptcy proceedings. In June 2013, McKay and the City signed an "Agreement Resolving Claim of Michael McKay." R. 8 at 441–45. Paragraph 2 of the agreement provided: "The Filed Claim is deemed amended, modified and allowed as a general unsecured, nonpriority claim." *Id.* at 443. Paragraph 5 added: "The Parties agree that any Settled Claim is a general unsecured, nonpriority claim, subject to the treatment provided for such claims under any chapter 9 plan for the adjustment of debts confirmed by the Bankruptcy Court." *Id.* And Paragraph 8 stated that "the Claimant releases the City from any and all liability, actions, damages and claims . . . that the Claimant has or may have against the City." *Id.* at 444. That same paragraph clarified that "the City" included Detroit's "servants, agents, . . . [and] employees." *Id.*

In October 2013, the City issued its bankruptcy plan. The plan treated "Other Unsecured Claims" as "Class 14" claims, meaning they would receive around 13 cents on the dollar. *Id.* at 33–34, 56.

The bankruptcy court confirmed the City's plan and clarified two pertinent points in the process. It explained that § 1983 suits against officers in their individual capacities, as opposed to suits against officers in their *official* capacities, were not "claims against the City" and could not be discharged or adjusted by the plan. R. 8 at 322. And it emphasized that "nothing in the Plan shall discharge or impair the obligations of the City . . . to indemnify . . . the liability of officers and employees of the City." R. 8 at 321. Taken together, these two clarifications meant that plaintiffs could pursue their § 1983 claims against individual officers for their full amounts and, after that, the City would indemnify the officers.

In the light cast by that order, the two sides of this dispute become clear. On the one hand, the settlement agreement appeared to waive McKay's rights to collect anything more from

the City or its employees than what the agreement provided—namely about 13% of $42,500. On the other hand, the bankruptcy court clarified that individual-capacity claims were not claims against the City and thus were not discharged by the bankruptcy.

In the aftermath of the bankruptcy court's order, McKay asked for the full $42,500. He sought, and received, a state court order enforcing the initial arbitration award. The City demurred, pointing out that McKay settled his § 1983 claim against the individual officers in exchange for a Class 14 claim against the City.

McKay filed a motion in bankruptcy court claiming that the settlement agreement required the City to pay him the full $42,500. In rejecting the motion, the bankruptcy court noted that McKay had released his § 1983 claims against the officers by signing the settlement agreement and by receiving a general unsecured non-priority claim in return. Under the bankruptcy plan, the bankruptcy court added, "other unsecured claims" are treated as "Class 14" claims and thus are not entitled to 100 cents on the dollar. R. 11 at 392–93. The district court affirmed.

The bankruptcy court correctly interpreted the agreement. As McKay conceded in bankruptcy court, he released his § 1983 claims against the officers by signing the agreement. In exchange, his claims were "deemed amended, modified, and allowed as a general unsecured, nonpriority claim" against the City in its bankruptcy proceedings. R. 8 at 443. He "agree[d] that any Settled Claim is a general unsecured, nonpriority claim, subject to the treatment provided for such claims under any chapter 9 plan for the adjustment of debts confirmed by the Bankruptcy Court." *Id.* And the final bankruptcy plan provided that "other unsecured claims" are "Class 14" claims. *Id.* at 33–34, 56.

Trying to sidestep this language, McKay argues that § 1983 claims are "by [their] very nature . . . unsecured claim[s] that [are] nonpriority." Appellant's Br. 18–19. Accordingly, McKay reasons, the agreement "does not change the nature of the claim, but rather describes it in terms commonly used in Bankruptcy plans." *Id.* at 19. And because the "nature" and "character" of the claim remain unchanged, McKay adds, he "still retain[s] a § 1983 claim against the officers individually." *Id.* But this argument has two flaws.

One: McKay conceded in the bankruptcy court proceedings—twice—that he settled his § 1983 claims against the individual officers by signing the settlement agreement. He is free to insist now that he "retains" the claims, but that does not make it so, and the language of the settlement agreement and his concessions prohibit it from being so.

The other: It does not matter whether the settlement agreement changed the "nature" or "character" of McKay's claims. Settlements by their nature often change the nature of claims and above all often change the relationship of the parties with respect to them. What matters is the claim McKay still holds. Before the settlement agreement, McKay held § 1983 claims against the officers in their individual capacities. At the time, it was unclear how the City's bankruptcy plan would treat claims against the City's employees. Many plaintiffs, including McKay and his counsel, fought for better treatment of their § 1983 claims against officers. In view of this uncertainty and the uncertainty that often accompanies bankruptcy proceedings, McKay made a bargain. He swapped his claims against the officers for an immediate unsecured nonpriority claim against the City in its bankruptcy proceedings. Paragraph 2 of the agreement says just that: "The Filed Claim[s] [are] deemed *amended, modified and allowed* as a general unsecured, nonpriority claim." R. 8 at 443 (emphasis added). McKay's bargain perhaps did not turn out as well as he might have hoped given the final bankruptcy plan. But courts are not in

the business of overriding the terms of contracts when one party has settler's remorse. Generally speaking, courts enforce settlement agreements; they do not rewrite them.

McKay separately argues that a handwritten notation (which he presumes was written by a City official) on the settlement agreement—reading "1983"—"make[s] clear that the debt was to retain its character" as a § 1983 claim. Appellant's Br. 17. But that note does not change things. McKay forfeited any argument regarding the note when he failed to raise it in bankruptcy court. On top of that, a delphic handwritten note cannot override the clear terms of a settlement agreement.

For these reasons, we affirm.