UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  Case No. 13-53846

CITY OF DETROIT, MICHIGAN,  Chapter 9

        Debtor.  Judge Thomas J. Tucker
_____/

**OPINION REGARDING MOTION BY JEROME COLLINS
FOR LEAVE TO FILE DELAYED CLAIM**

**I. Introduction**

This case is before the Court on a motion filed by Jerome Collins ("Collins"), entitled "[Corrected] Motion for Entry of Order Granting Collins' Verified Motion for Leave to File Delayed Proof of Claim") (Docket # 11743, the "Motion"). The City of Detroit filed an objection to the Motion,[1] and Collins filed a reply brief in support of the Motion.[2] The Court held a hearing on the Motion on March 22, 2017. At the conclusion of the hearing, the Court took the Motion under advisement.

For the reasons stated in this opinion, Collins's Motion will be denied.

**II. Background**

**A. The relief sought by Collins's Motion**

In the Motion, which was filed December 30, 2016, Collins seeks, in substance, leave to file a proof of claim at a time that is now more than three years after the February 21, 2014 deadline for filing such a proof of claim in this bankruptcy case. More specifically, Collins now seeks to file a proof of claim related to his efforts to obtain a lift of his suspension, and later

---

    [1] Docket # 11752.

    [2] Docket # 11774.

termination, as a police officer employed by the City, plus back pay and other monetary relief.

**B. Pre-petition and post-petition efforts to obtain relief for and by Collins**

Long before Collins filed the present Motion, Collins and his union, the Detroit Police Officers Association ("DPOA"), each sought relief for Collins's suspension and termination, in two ways, both of which were unsuccessful. The first of these ways was by the DPOA's filing of two grievances, well before the City filed its bankruptcy case. The second of these ways was by Collins filing his own lawsuit in the United States District Court, against the City and others. That lawsuit was filed long after the City filed its bankruptcy case and the claims Bar Date had passed.

**1. The DPOA's two grievances, and its related proof of claim**

First, the DPOA filed two grievances on Collins's behalf, before the City filed its Chapter 9 bankruptcy petition on July 18, 2013. These were grievance nos. 10-005 and 12-0137. The more recently-filed of these grievances, no. 12-0137, was appealed to binding arbitration under the applicable collective bargaining agreement, from disciplinary charges brought by the City against Collins that led to Collins's termination. That grievance was heard in an arbitration hearing held on December 11, 2013. In a 21-page "Opinion and Award" issued February 7, 2014, the arbitrator upheld the Trial Board's findings of guilt and the City's decision to terminate Collins. The arbitrator found that there was just cause for the termination, and affirmed the termination.[3]

On November 21, 2013, roughly a month before the Collins arbitration hearing was held,

---

[3] A copy of the arbitration Opinion and Award appears in the record in this case at Docket # 10182, Ex. 6A.

this Court entered an order in this case, known as the "Bar Date Order," which set a deadline of February 21, 2014 for the filing of proofs of claim in this bankruptcy case.[4] The Bar Date Order permitted the DPOA to file a proof of claim on behalf of its members related to any grievances. The Order also permitted individual union members, such as Collins, to file their own proof of claim. The Bar Date Order stated:

> **Each of the Public Safety Unions may file one or more omnibus proofs of claim by the General Bar Date for its members with respect to (a) claims related to grievances for its respective members** and/or (b) defense and indemnification claims arising from tort claims asserted or that may be asserted by third parties against the City and/or such Public Safety Union member(s), subject to the City's right to object to any such claims. **The filing of any such omnibus proof of claim is without prejudice to the right of any Public Safety Union member to file a claim on his or her own behalf.**[5]

The DPOA timely filed such a proof of claim, on February 20, 2014, on behalf of a large number of its members. The proof of claim stated that it was for "[c]laims arising from discipline matters relative to DPOA members - see attached list." The attached list included the Collins grievance no. 12-0137, and listed the status of that grievance as "pending arbitration."[6]

Collins was permitted to file his own proof of claim, not only regarding his pending grievances, but also regarding any other pre-petition claim(s) he wished to assert against the City. The Bar Date Order required Collins, like the other creditors in the City's bankruptcy case, to file any proof of claim by February 21, 2014. But to this day, Collins never has filed a proof of

---

[4] Docket # 1782.

[5] Bar Date Order (Docket # 1782) at 9-10, ¶ 11 (emphasis added).

[6] Docket # 10182, Ex. 6F.

claim.

Although the DPOA's proof of claim listed Collins's grievance no. 12-0137 as "pending arbitration" when it filed its proof of claim on February 20, 2014, that grievance in fact had been decided adversely to the DPOA and Collins, by the February 7, 2014 written arbitration Opinion and Award described above. As the DPOA later acknowledged, at least two times in writing, the binding arbitration decision concluded grievance no. 12-0137, adversely to Collins and the DPOA. In a letter dated August 22, 2016, addressed to the City's law department, counsel for the DPOA stated the following:

> This is written to confirm that the Detroit Police Officers Association acknowledges that the disciplinary matter involving former Officer Jerome Collins was part of bankruptcy claim No. 1877 which was filed by the Association in order to preserve his rights under the disciplinary process in accordance with the provisions of the collective bargaining agreement and city employment terms between the City and the Association. A disciplinary hearing took place discharging him from the City. **The City's discharge decision was appealed to arbitration wherein the discharge was upheld in a final and binding decision rendered by an impartial arbitrator under the provisions of the collective bargaining agreement and city employment terms. As a result of the arbitrator's decision the claim filed by the Association on behalf of Officer Jerome Collins is deemed closed.**[7]

Soon after the DPOA counsel's letter to the City quoted above, the DPOA wrote a letter to Collins, dated September 29, 2016, in which the DPOA recognized that grievance no. 12-0137 had concluded adversely to Collins, and had upheld his termination. The letter also said that the result in that grievance concluded, or "closed," the earlier grievance, no. 10-005.[8]

---

[7] Docket # 11474, Ex. 2 (emphasis added).

[8] Docket # 11743, Ex. 1.

4

Thus, as the DPOA has recognized and acknowledged in writing, the two grievances filed on behalf of Collins, nos. 10-005 and 12-0137, concluded adversely to Collins, and his termination from employment as a police officer for the City was upheld. As the DPOA letters also acknowledge, the claim that the DPOA timely filed on behalf of Collins on February 20, 2014, one day before the Bar Date, which was limited to grievance no. 12-0137, is concluded, and the City has completely prevailed on that claim.[9]

## 2. Collins's post-petition lawsuit against the City

Having failed to file a proof of claim himself, and roughly 15 months after the DPOA's timely proof of claim failed, due to the February 7, 2014 arbitration decision, Collins filed a lawsuit against the City and others in the United States District Court. The complaint in that case was filed on May 15, 2015, by Collins's present attorney.[10]

Collins's district court complaint sought both injunctive and monetary relief against the City, including an injunction requiring the City to offer Collins employment (essentially,

---

[9] During the hearing on the Motion, Collins acknowledged that the proof of claim filed by the DPOA included grievance no. 12-0137, but he argued that the proof of claim also should have included grievance no. 10-005, but did not. And, Collins argued, the DPOA still should pursue grievance no. 10-005 to an arbitration hearing under the applicable collective bargaining agreement. (Tr. of 3/22/17 hearing (Docket # 11828) at 69, 70, 72-73). But these arguments do not support allowing Collins to file his own, untimely proof of claim now. Collins's attorney conceded, during the hearing on the Motion, that permitting Collins to file a proof of claim now "wouldn't do anything to move [grievance 10-005] forward." (*See id.* at 73-74).

Moreover, the DPOA is the party that filed grievance 10-005, and the DPOA obviously does not agree with Collins about the status of that grievance, but rather believes that it has lost on that grievance too, because of the February 7, 2014 binding arbitration decision. And the DPOA is the party that filed the timely proof of claim in this bankruptcy case, and the DPOA believes that the portion of its proof of claim that covered Collins has failed, also because of the February 7, 2014 arbitrator's decision.

[10] A copy of the complaint filed by Collins in that United States District Court case appears in the record in this case at Docket # 10182, Ex. 6B.

reinstatement,) compensatory damages including back-pay and front-pay, and punitive damages. The complaint contained seven numbered counts. These include counts alleging violation of Collins's due process and equal protection rights under the United States Constitution (Count I); sex discrimination in violation of the federal constitutional equal protection clause and Michigan's Elliott-Larsen civil rights law (Counts III and VI); and state law claims of "gross negligence" (Count IV), tortious interference with collective bargaining agreement (Count V), and intentional infliction of emotional distress (Count VII).[11]

After Collins, through his present attorney, refused a written demand by the City to dismiss his district court action, the City filed a motion in this Court on July 8, 2015, and later a corrected motion filed on September 11, 2015, seeking an injunction requiring Collins to dismiss his district court action with prejudice as to all claims against the City.[12]

Action on the City's motion was delayed by Collins's filing of his own Chapter 7 bankruptcy case in this court.[13] On September 28, 2016, this Court held a hearing, and the next day, the Court entered an Order granting, in part, the City's motion, for the reasons stated by the Court during the hearing.[14] The Order stated that "[n]o later than October 5, 2016, Jerome

---

[11] *See* copy of district court complaint (Docket # 10182, Ex. 6B).

[12] Docket ## 10030, 10182.

[13] Collins filed a voluntary Chapter 7 bankruptcy case in this Court on September 15, 2015, which was randomly assigned to different judge of this Court, not the undersigned judge. (Case No. 15-53613). Collins was represented by an attorney in that case. Collins's Schedule B filed in that case listed as an asset "Lawsuit for lost wages against the City of Detroit" with a "current value" stated as "[u]known." (Schedule B, Item 18 (Docket # 1 in Case No. 15-53613)). The Chapter 7 Trustee in that case did not administer any assets, and Collins received a discharge on December 22, 2015. That bankruptcy case was closed on December 28, 2015.

[14] *See* Order at Docket # 11597.

Collins must dismiss, or cause to be dismissed," his district court complaint, "to the extent it seeks any relief against the City of Detroit or property of the City of Detroit, including to the extent it seeks any relief against any current or former employee of the City of Detroit in his/her official capacity."[15] The Court granted this relief against Collins because the Court agreed with the City that Collins's district court lawsuit against the City was barred by the confirmed plan of adjustment in this case.[16] For reasons the Court explained at length in its September 28, 2016 bench opinion, the Court concluded that all of Collins's claims against the City in the district court complaint were claims that arose before the City filed its bankruptcy petition (*i.e.*, pre-petition claims), and Collins's pursuit of such claims violated injunctive and other provisions of the City's confirmed plan.

In ruling as it did, however, the Court stated that it was expressing no opinion on whether Collins could be permitted to file an untimely proof of claim in this bankruptcy case, asserting the claims he stated in his district court complaint. The Court concluded that this issue was not before the Court, since Collins had made no motion seeking to file such a proof of claim.[17]

### 3. Collins's present Motion

Collins filed his present Motion some three months later, on December 30, 2016. In the Motion, Collins now seeks leave to pursue either of two alternative procedures — namely, either (1) to amend the DPOA's proof of claim that was timely filed; or (2) to file his own proof of

---

[15] *Id.* at ¶ 2.

[16] A transcript of the September 28, 2016 hearing on the City's motion is in the record at Docket # 11777. The Court's bench opinion is at pages 30-38 of that transcript.

[17] *See* Tr. Of 9/28/16 hearing (Docket # 11777) at 14-15, 16, 38.

7

claim now, more than three years after the February 21, 2014 Bar Date for filing proofs of claim in the bankruptcy case.  Under either of these proposed procedures, Collins seeks to assert all the claims that he made in his district court lawsuit.

### III. Jurisdiction

This Court has subject matter jurisdiction over this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.).  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) 157(b)(2)(B), and 157(b)(2)(O).

This proceeding also is "core" because it falls within the definition of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b).  Matters falling within this category in § 1334(b) are deemed to be core proceedings.  *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009).  This is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases."  *See id.* at 27.

### IV. Discussion

#### A. Collins's request to "amend" the DPOA's timely-filed proof of claim

To the extent Collins seeks to "amend" the proof of claim that the DPOA timely filed, such relief cannot be granted.  As the City correctly argues, there is no legal basis for one party (Collins) to "amend" a proof of claim filed by a different party (the DPOA).  Collins cites no authority for such a thing, and the Court is not aware of any.  So this will not be permitted.

#### B. Collins's request to file his own proof of claim now, more than three years after the Bar Date

The Court will not permit Collins to file his own proof of claim now, so long after the

February 21, 2014 Bar Date.

**1. Applicable law**

Collins's Motion seeks, in substance, an extension of the February 21, 2014 deadline for filing a proof of claim in this Chapter 9 case. Fed. R. Bankr. P. 3003(c)(3), which applies in Chapter 9 and Chapter 11 bankruptcy cases, *see* Fed. R. Bankr. P. 3003(a), states in pertinent part that "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." As noted above, the Court's November 21, 2013 Bar Date Order fixed the proof of claim deadline as February 21, 2014. Under Rule 3003(c)(3), a party seeking to extend the proof of claim deadline must show "cause" for such relief.

But the City argues that Collins must show more than "cause." Because Collins's Motion was filed *after* (in fact, years after) the Bar Date, the City argues, Collins must satisfy the more demanding "excusable neglect" requirement under Fed. R. Bankr. P. 9006(b)(1). That rule states that, with exceptions not applicable here,

> when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order **or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.**

Fed. R. Bankr. P. 9006(b)(1) (emphasis added). In support of its argument that the "excusable neglect" requirement applies here, the City cites a Chapter 11 case that applied that requirement in this context, *New York City Hous. Auth. v. G-I Holdings, Inc.* (*In re G-I Holdings, Inc.*), 514 B.R. 720, 756 (Bankr. D.N.J. 2014), *subsequently aff'd.*, 654 F. App'x. 571 (3d Cir. 2016).

9

"Excusable neglect" under Rule 9006(b)(1) is a more demanding requirement than the general concept of "cause" that is used in various places in the Bankruptcy Code and Bankruptcy Rules, including Rule 3003(c)(3). But the Court agrees with the City that in this setting, the "excusable neglect" requirement applies. And Collins does not dispute this.

This conclusion is supported not only by the *G-I Holdings* case, cited by the City, but also by the Supreme Court's decision in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993). *Pioneer* was a Chapter 11 case in which the Supreme Court noted both Rule 3003(c)(3)'s "cause" requirement and Rule 9006(b)(1)'s "excusable neglect" requirement, 570 U.S. at 382, and applied the "excusable neglect" requirement to a request by certain creditors in that case to file late claims. The Supreme Court held that "[t]he 'excusable neglect' standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases." 570 U.S. at 389. *See also Omni Mfg., Inc. v. Smith* (*In re Smith*), 21 F.3d 660, 666 (5th Cir. 1994) (citing *Pioneer*, and holding that Rules 3003(c)(3) and 9006(b)(1) "must be read together," and require a showing of "excusable neglect" in order for the court to allow a late-filed claim in a Chapter 11 case). The same thing must be true for late-filed proofs of claim in Chapter 9 cases, since both Rules 3003(c)(3) and 9006(b)(1) apply to both Chapter 11 and Chapter 9 cases.

In this case, then, Collins must demonstrate "excusable neglect" under Rule 9006(b)(1) to file a late proof of claim now in this Chapter 9 case. Otherwise, the Court must deny Collins's Motion.

The Supreme Court's decision in *Pioneer* is the leading case on what "excusable neglect" means. *Pioneer* discussed both what "neglect" means, and how courts should determine whether neglect is "excusable." As this Court has noted previously, in another case:

In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 388 (1993), the Supreme Court explained that "[t]he ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or . . . 'to leave undone or unattended to esp[ecially] through carelessness.'" *Id.* (quoting Webster's Ninth New Collegiate Dictionary 791 (1983) (emphasis added)). Based on the ordinary meaning of "neglect," the Court concluded that the concept of "neglect" . . . denotes that "a party is partly to blame" for failing to act, and that ". . . 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Id.* at 394 (internal quotation marks and citations omitted).

If [the movant] shows "neglect," the next issue is whether [the movant's] neglect was excusable. In *Pioneer*, the Supreme Court explained that a determination of

> whether a party's neglect of a deadline is excusable . . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission . . . [including] the danger of prejudice to the [party opposing relief], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 395.

In determining whether [the movant-debtor's] failure to timely respond to the [a creditor's objection to exemptions] was "excusable," the Court must focus not only on whether [the d]ebtor's failure was excusable, but also on whether the failure or neglect of his attorney was excusable. The Supreme Court discussed this point at some length and made this clear in *Pioneer*, concluding that "the proper focus is upon whether the neglect of [the movants] and their counsel was excusable." *Id.* at 396-97 (italics in original.)

*In re Sharkey*, 560 B.R. 470, 472-73 (Bankr. E.D. Mich. 2016).

**2. Application of the *Pioneer* factors**

11

After considering all the relevant circumstances surrounding Collins's failure to timely file a proof of claim in this case, including the specific factors listed in *Pioneer*, the Court finds and concludes that Collins has not demonstrated "excusable neglect."

**a. "The length of the delay and its potential impact on judicial proceedings"**

The length of Collins's delay in seeking to file a late proof of claim is extraordinary. The deadline to file claims was February 21, 2014. Collins's Motion was filed December 30, 2016. That is a delay of almost three years — an extraordinarily long time under the circumstances. This factor weighs strongly against finding that Collins's neglect is excusable. The potential impact on judicial proceedings of such a long delay is discussed below, with the "danger of prejudice" factor.

**b. "The danger of prejudice to" the opposing party**

Collins's extraordinary delay in seeking to file a proof of claim in this case creates a danger of prejudice to the City, and has an adverse potential impact on judicial proceedings in this case. In any Chapter 11 or Chapter 9 case, it is necessary to establish, *and* to enforce, a deadline for creditors to file proofs of claim. *Establishing* such a deadline is necessary because the Debtor (and the other major creditors) need to know what the nature and amounts of claims are that must be dealt with in a plan of reorganization (which, under 11 U.S.C. § 941, is called a plan of adjustment in this Chapter 9 case). Debtors rely on such a deadline in creating and seeking confirmation of their proposed plan. Creditors rely on such a deadline in order to have confidence about what the nature and amounts of the claims are, in deciding how to vote on a proposed plan and whether to object to confirmation of the plan. And then, after a plan is confirmed, the Debtor relies on the firmness of the claim-filing deadline in implementing and

12

administering the confirmed plan. *Enforcing* such a claims-filing deadline is necessary because without enforcement, the deadline does not fully serve its purposes, and can become meaningless.

These concerns are greatly magnified in a massive and complex Chapter 9 case like this one, in which there are thousands of creditors. (The City has reported that over 3,900 proofs of claim were filed in this case.)[18] Allowing creditors to casually ignore the deadline for filing proofs of claim would run the risk of creating chaos in such a large case, and undermining the confidence of all parties in interest.

In addition, allowing creditors to ignore the claims-filing deadline would create needless delays in the post-confirmation phase of the case, by lengthening the time it takes for the Debtor to fully implement and administer the confirmed plan and get the case closed. Such delay would inevitably increase the cost of the case to the Debtor, and could delay interim and final distributions to creditors under the confirmed plan.

Firmness in enforcing the claims-filing deadline in this case is necessary, and the need for such firmness weighs heavily against the Court allowing any proofs of claim to be filed after the deadline set by the Court.

For these reasons, the "danger of prejudice" and "potential impact on judicial proceedings" factors under *Pioneer* weigh against finding excusable neglect here.

**c. "Whether the movant acted in good faith"**

One of the *Pioneer* factors is "whether the movant acted in good faith." The Court will

---

[18] *See* Ex Parte Motion of the City of Detroit for a Fifth Extension of the Claims Objection Bar Date, filed April 28, 2017 (Docket # 11856) at ¶ 7.

assume, for purposes of deciding Collins's Motion, that Collins acted in good faith.

**d. "The reason for the delay, including whether it was within the reasonable control of the movant."**

The Court finds that Collins has not offered a credible reason for his extraordinary delay in seeking to file a proof of claim in this case, and the reasons he has offered do not amount to any valid excuse for his delay. And the delay was within the reasonable control of Collins. These *Pioneer* factors weigh heavily against finding that Collins's neglect is excusable.

Collins has stated several different reasons why he says he did not timely file his own proof of claim. But none of these differing explanations presents a valid excuse for Collins's failure.

First, in his written Motion, Collins suggested, with no supporting evidence, that he did not file a timely proof of claim, at least in part, because he was "broke," and "financial difficulties" prevented it.[19] This is not a valid excuse. First, Collins's alleged "financial difficulties" did not prevent him from hiring lawyers to represent him in pursuing a lawsuit against the City and in filing and prosecuting his own bankruptcy case. Collins hired his present attorney, who has represented him since at least May 15, 2015, when that attorney filed Collins's district court lawsuit against the City. At least as early as October 2014, Collins also apparently hired an attorney named Delphia J. Burton, who represented him in an unsuccessful action filed in the Wayne County Circuit Court, Case No. 14-010135-AV.[20] And Collins hired a bankruptcy

---

[19] *See* Collins reply brief (Docket # 11774) at 3, 4.

[20] In that state court action, Collins sought to obtain relief from the February 7, 2014 arbitration decision described in Part II.B.1 of this opinion. In an order filed on October 9, 2014, the Wayne County Circuit Court dismissed the action, labeling it as an "Application for Leave to File Appeal." The order lists Collins's attorney as Delphia J. Burton (P-47688). (*See* Docket # 11474, Ex. 4;

14

attorney, Morris B. Lefkowitz, to file and prosecute his Chapter 7 bankruptcy case in September 2015 (Case No. 15-53613).

Second, even if Collins could not afford an attorney in time to help him file a proof of claim before the February 21, 2014 Bar Date, he certainly could have filed a proof of claim without an attorney. Filling out a proof of claim form and filing it is not difficult, and can easily be done without an attorney. A great many creditors in this case managed to file a timely proof of claim without an attorney.

As a second excuse, Collins's attorney argued, during the hearing, that Collins did not timely file his own proof of claim by the February 21, 2014 Bar Date, because "he didn't know he could do that," and "was not aware" he could do that. When the Court asked why Collins was not aware of that, his attorney said he did not know.[21] Collins has presented no evidence (*e.g.*, an affidavit) that he was not consciously aware that he could file his own proof of claim by the February 21, 2014 Bar Date. But even if he was not consciously aware of this, he certainly should have been aware of it. Collins has not alleged in his Motion that he did not receive notice of the Bar Date before it passed. And Collins has not alleged that he was unaware that the deadline for filing proofs of claim in this case was February 21, 2014. Nor has Collins pointed to anything in the Bar Date Order, or the notice of such order, that could possibly have confused him about his ability to file his own proof of claim, even if his union also was allowed to file a proof of claim that included his grievances. The Bar Date Order itself, quoted in Part II.B.1 of this opinion, is very clear.

---

*see also* City Reply (Docket # 11474) at 2-4.

[21] Tr. of 3/22/17 hearing (Docket # 11828) at 76-77.

As a third excuse for Collins's failure to file a timely proof of claim, Collins's attorney argued that the City violated the automatic stay under 11 U.S.C. § 362(a), when it continued efforts, after the July 18, 2013 filing of this bankruptcy case, to terminate Collins's employment. These post-petition efforts include the City's participation in the arbitration hearing held on December 11, 2013, which resulted in the February 7, 2014 arbitration decision.[22] It is not apparent to the Court how any of the City's post-petition actions regarding Collins violated the automatic stay. And the City disputes that anything it did violated the automatic stay. Collins has not supported his stay-violation argument with any explanation of how any provision of § 362(a) was violated, nor has he cited any legal authority that supports his argument.[23] But the more important point is that even if the City did somehow violate the automatic stay, this would not give Collins a valid excuse for his failure to file a proof of claim by the Bar Date. There is simply no logical connection between the alleged stay violation and Collins's failure to timely file a proof of claim.

As a fourth excuse, during the hearing on the Motion, Collins's attorney seemed to argue that Collins failed to file his own, timely proof of claim because "he had union representation, at least he thought he had union representation that would take him through the litigation process."[24] There is no evidence that this is actually why Collins did not file his own, timely proof of claim. But even if this is why he did not do so, it is not a valid excuse. This would

---

[22] *See id.* at 65, 67-68, 87.

[23] For example, during the hearing the Court asked Collins's attorney "what provision of Section 362(a) of the Bankruptcy Code" did the City's post-petition actions violate, and Collins's attorney could not answer the question. (*Id.* at 88).

[24] *See id.* at 75.

16

merely show that Collins made a conscious decision to rely entirely on his union (the DPOA) to pursue his claim(s) against the City for him, and to abide by whatever results the DPOA obtained for him. Having made that choice, Collins must now abide by those results, unfavorable though they were.

As a final point about Collins's claimed excuses for failing to file a timely proof of claim, the Court notes that Collins has had representation by his current attorney since at least May 15, 2015, when that attorney filed the district court complaint against the City. And at least as early as May 22, 2015 or shortly thereafter, that attorney was made aware of the February 21, 2014 Bar Date for filing claims in this case. We know this from the letter that the City's Assistant Corporation Counsel mailed to Collins's attorney on May 22, 2015.[25] Collins is charged with the knowledge of his attorneys, so he is certainly deemed to have known at least as early as May 2015 of the Claims Bar Date. But despite all this, Collins waited for roughly 18 months more before filing the present Motion seeking to file a late proof of claim. Collins has presented no valid excuse for this delay.

**C. The Court's conclusion: Collins has not demonstrated "excusable neglect."**

The *Pioneer* factors reviewed above weigh heavily against finding that Collins's neglect is excusable. The Court finds and concludes that Collins has not demonstrated "excusable neglect" in his failure to file a timely proof of claim in this bankruptcy case.

**V. Conclusion**

For the reasons stated in this opinion, the Court will enter an order denying Collins's Motion.

---

[25] Docket # 10182, Ex. 6D.

**Signed on October 20, 2017**  /s/ Thomas J. Tucker
Thomas J. Tucker
United States Bankruptcy Judge