# EXHIBIT 2-1*

**\*Exhibit 2 has been split in three parts due to file size**

B10 (Official Form 10) (04/13) (Modified)

| UNITED STATES BANKRUPTCY COURT — EASTERN DISTRICT of MICHIGAN | CHAPTER 9 PROOF OF CLAIM |
|---|---|

| Name of Debtor: City of Detroit, Michigan | Case Number: 13-53846 | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

**T&T Management, Inc. (FL corp.), successor to Merkur Steel Supply, Inc. (MI corp.)**

COURT USE ONLY

Name and address where notices should be sent:

    T&T Management, Inc.
    Mark S. Demorest, Demorest Law Firm, PLLC
    322 W Lincoln, Royal Oak, MI 48067

Telephone number: 248-723-5500   email: mark@demolaw.com

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
*(If known)*

Filed on:_____

Name and address where payment should be sent (if different from above):

Telephone number:      email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**    $   **$3,800.00 per month**

If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.
☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**   Judgment
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** | **3a. Debtor may have scheduled account as:**_____
(See instruction #3a)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:   $_____

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:

Basis for perfection: _____

Value of Property: $_____

Amount of Secured Claim: $_____

Annual Interest Rate (when case was filed)_____% ☐ Fixed or ☐ Variable

Amount Unsecured: $_____

**5. Amount of Claim Entitled to Priority as an Administrative Expense under 11 U.S.C. §§ 503(b)(9) and 507(a)(2).**   $_____

**5b. Amount of Claim Otherwise Entitled to Priority. Specify Applicable Section of 11 U.S.C. §_____.**   $_____

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)* DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**8. Signature: (See instruction # 8)**
Check the appropriate box.

☐ I am the creditor.   ☑ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Mark S. Demorest, Esq.
Title:   Attorney
Company:   Demorest Law Firm, PLLC
Address and telephone number (if different from notice address above):

(Signature)      2/18/14 (Date)

Telephone number:      email:

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

IN RE: CITY OF DETROIT, MICHIGAN

Case No. 13-53846

HON. STEVEN W. RHODES

---

## ATTACHMENT TO PROOF OF CLAIM
## OF T&T MANAGEMENT, INC.,
## SUCCESSOR TO MERKUR STEEL SUPPLY, INC.

T&T Management, Inc., a Florida corporation (successor by merger to Merkur Steel Supply, Inc., a Michigan corporation) ("T&T Management") **(Exhibit 1)** has a judgment against the City of Detroit (the "City"). The judgment was entered in Wayne County Circuit Court Case No. 99-928001-CC (the "Judgment") **(Exhibit 2)**, and affirmed in a published opinion by the Michigan Court of Appeals, 261 Mich. App. 116 (2004) **(Exhibit 3)**.

The Judgment requires the City to pay T&T Management $3,800.00 per month until the City of Detroit acquires ownership of the property located at 11111 French Road, Detroit, MI 48234 (the "Property") or until the City takes action to lift the restrictions preventing construction on the Property. Neither has occurred.

The City paid its monthly payments of $3,800.00 until June 2013. The City has not paid the monthly payments for July-December 2013, or for January-February 2014. This totals $30,400.00. Payments will continue to accrue on a monthly basis.

T&T Management's claims against the City are not contingent, are liquidated, and are not disputed. T&T seeks the following amounts:

| | | |
|---|---|---|
| 1. | **Monthly payments July 2013-February 2014** | $ 30,400.00*[1] |
| 2. | **Monthly payments going forward** | $ 3,800.00/month |
| | **TOTAL CLAIM:** | $ 30,400.00, plus $3,800.00/month |

---

[1] Judgment interest is also owed on the late payments.

T&T Management has filed a Motion for Relief from Automatic Stay to Permit Enforcement of Judgment against City of Detroit, and for Ruling that Judgment Based on Claim for Taking of Property Without Just Compensation is Not Subject to Reduction or Compromise in Bankruptcy **(Exhibit 4)**.

City of Detroit bankruptcy:Merkur:Attachment to Proof of Claim.doc

2

# EXHIBIT 1

# Michigan Department of Labor & Economic Growth

## Filing Endorsement

This is to Certify that the CERTIFICATE OF MERGER

for

MERKUR STEEL SUPPLY INC.

ID NUMBER: 391227

received by facsimile transmission on December 28, 2006 is hereby endorsed

Filed on December 28, 2006 by the Administrator.

The document is effective on the date filed, unless a subsequent effective date within 90 days after received date is stated in the document.

Effective Date: January 1, 2007

In testimony whereof, I have hereunto set my hand and affixed the Seal of the Department, in the City of Lansing, this 28TH day of December, 2006.

*Andrew J. Metcalf*

, Director

**Bureau of Commercial Services**

Sent by Facsimile Transmission 08362

BOS/CD-550m (Rev. 12/06)

| MICHIGAN DEPARTMENT OF LABOR & ECONOMIC GROWTH BUREAU OF COMMERCIAL SERVICES | | |
|---|---|---|
| **Date Received** | (FOR BUREAU USE ONLY) | |
| | This document is effective on the date filed, unless a subsequent effective date within 90 days after received date is stated in the document. | |
| **Name** Mark S. Demorest | | |
| **Address** 19853 Outer Dr., Suite 100 | | |
| **City** Dearborn, MI 48124    **State**         **Zip Code** | | **EFFECTIVE DATE:** Expiration date for new assumed names: December 31, Expiration date for transferred assumed names appear in item 6 |

☞ Document will be returned to the name and address you enter above ☜
If left blank document will be mailed to the registered office.

# CERTIFICATE OF MERGER
### Cross Entity Merger for use by Profit Corporations, Limited Liability Companies and Limited Partnerships

Pursuant to the provisions of Act 284, Public Acts of 1972 (profit corporations), Act 23, Public Acts of 1993 (limited liability companies) and Act 213, Public Acts of 1982 (limited partnerships), the undersigned entities execute the following Certificate of Merger:

1. The Plan of Merger (Consolidation) is as follows:

   a. The name of each constituent entity and its identification number is:

   | | |
   |---|---|
   | T&T Management, Inc., a Florida corporation | 593042618 |
   | City Steel Processing, Inc., a Florida corporation | 363010635 |
   | Merkur Steel Supply, Inc., a Michigan corporation | 391-227 |

   b. The name of the surviving (new) entity and its identification number is:

   | | |
   |---|---|
   | T&T Management, Inc., a Florida corporation | 593042618 |

   Corporations and Limited Liability Companies provide the street address of the survivor's principal place of business:

   3075 S.E. St. Lucie Blvd., Stuart, FL 34997

2. (Complete only if an effective date is desired other than the date of filing. The date must be no more than 90 days after the receipt of this document in this office.)

   The merger (consolidation) shall be effective on the __1st__ day of __January__, __2007__.

12/28/2006  1:41PM

## 3. Complete for Profit Corporations only

For each constituent stock corporation, state:

| Name of corporation | Designation and number of outstanding shares in each class or series | Indicate class or series of shares entitled to vote | Indicate class or series entitled to vote as a class |
|---|---|---|---|
| See attached | | | |

If the number of shares is subject to change prior to the effective date of the merger or consolidation, the manner in which the change may occur is as follows:

The manner and basis of converting shares are as follows:

The shares of the surviving corporation are not affected. The shares of the merged corporations are cancelled.

The amendments to the Articles, or a restatement of the Articles, of the surviving corporation to be effected by the merger are as follows:

N/A

The Plan of Merger will be furnished by the surviving profit corporation, on request and without cost, to any shareholder of any constituent profit corporation.

The merger is permitted by the state or country under whose law it is incorporated and each foreign corporation has complied with that law in effecting the merger.

(Complete either Section (a) or (b) for each corporation)

a) The Plan of Merger was approved by the majority consent of the Incorporators of _____, a Michigan corporation which has not commenced business, has not issued any shares, and has not elected a Board of Directors.

| (Signature of Incorporator) | (Type or Print Name) | (Signature of Incorporator) | (Type or Print Name) |
|---|---|---|---|

| (Signature of Incorporator) | (Type or Print Name) | (Signature of Incorporator) | (Type or Print Name) |
|---|---|---|---|

b) The plan of merger was approved by:

☐ the Board of Directors of _____, the surviving Michigan corporation, without approval of the shareholders in accordance with Section 703a of the Act.

☒ the Board of Directors and the shareholders of the following Michigan corporation(s) in accordance with Section 703a of the Act.

Merkur Steel Supply, Inc.

By  X  *SEE ATTACHED*
(Signature of Authorized Officer or Agent)
Karl Thomes, Sole Shareholder
(Type or print name)
Merkur Steel Supply, Inc.
(Name of Corporation)

By _____
(Signature of Authorized Officer or Agent)

_____
(Type or print name)

_____
(Name of Corporation)

12/28/2006   1:41PM

**3. Complete for Profit Corporations only**

For each constituent stock corporation, state:

| Name of corporation | Designation and number of outstanding shares in each class or series | Indicate class or series of shares entitled to vote | Indicate class or series entitled to vote as a class |
|---|---|---|---|
| See attached | | | |

If the number of shares is subject to change prior to the effective date of the merger or consolidation, the manner in which the change may occur is as follows:

The manner and basis of converting shares are as follows:

The shares of the surviving corporation are not affected. The shares of the merged corporations are cancelled.

The amendments to the Articles, or a restatement of the Articles, of the surviving corporation to be effected by the merger are as follows:

**N/A**

The Plan of Merger will be furnished by the surviving profit corporation, on request and without cost, to any shareholder of any constituent profit corporation.

The merger is permitted by the state or country under whose law it is incorporated and each foreign corporation has complied with that law in effecting the merger.

(Complete either Section (a) or (b) for each corporation.)

a) The Plan of Merger was approved by the majority consent of the incorporators of _____ _____, a Michigan corporation which has not commenced business, has not issued any shares, and has not elected a Board of Directors.

| | | | |
|---|---|---|---|
| (Signature of Incorporator) | (Type or Print Name) | (Signature of Incorporator) | (Type or Print Name) |
| (Signature of Incorporator) | (Type or Print Name) | (Signature of Incorporator) | (Type or Print Name) |

b) The plan of merger was approved by:

☐ the Board of Directors of _____, the surviving Michigan corporation, without approval of the shareholders in accordance with Section 703a of the Act.

☒ the Board of Directors and the shareholders of the following Michigan corporation(s) in accordance with Section 703a of the Act.

Merkur Steel Supply, Inc.

By  X _____          By  _____
(Signature of Authorized Officer or Agent)          (Signature of Authorized Officer or Agent)
Ken Thomas, Sole Shareholder
(Type or print name)                              (Type or print name)
Merkur Steel Supply, Inc.
(Name of Corporation)                             (Name of Corporation)

12/28/2006  1:41PM

.T&T Management, Inc.                    500 Issued and outstanding shares

City Steel Processing, Inc.           500 Issued and outstanding shares

Merkur Steel Supply, Inc.                1,000 Issued and outstanding shares

12/28/2006   1:41PM

# EXHIBIT 2

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

MERKUR STEEL SUPPLY, INC.,
a Michigan Corporation,

        Plaintiff,

v

CITY OF DETROIT, a Michigan
municipal corporation,

        Defendant.

99-928001-CC   9/03/1999
JDG: JEANNE STEMPIEN
MERKUR STEEL SUPPLY INC
vs   ‖‖‖ ‖‖ ‖‖ ‖‖‖ ‖‖‖ ‖ ‖‖ ‖‖‖‖ ‖‖
DETROIT CITY OF

---

Law Offices of Mark S. Demorest
MARK S. DEMOREST (P35912)
Attorneys for Plaintiff
19853 W. Outer Drive, Suite 100
Dearborn, Michigan 48124
313/565-1330

JAMES C. COBB, JR. (P23139)
Attorney for Defendant
615 Griswold, Suite 1415
Detroit, Michigan 48226
313/961-3433

---

### FINAL JUDGMENT

At a session of said Court held in the City of Detroit,
County of Wayne, State of Michigan, on: **MAR 2 9 2002**
Jeanne Stempien

PRESENT: HON._____
                 Circuit Court Judge

Jury trial commenced in this matter on February 25, 2002. The jury, after deliberating,
reached its verdict as to liability on March 6, 2002, unanimously finding that the Defendant, City
of Detroit, had inversely condemned the Plaintiff's, Merkur Steel Supply, Inc.'s, property rights
as tenant as of December 1990.

Following the jury's verdict as to liability, further testimony and evidence were presented
to the jury as to the issue of just compensation. On March 7, 2002, the jury, after having further
deliberated, unanimously reached its verdict as to damages, finding that the Plaintiff, Merkur
Steel Supply, Inc., had sustained damages as a result of the Defendant, City of Detroit's,
inverse condemnation of Merkur's property rights as a tenant. The jury further decided that

Merkur is entitled to $6,800,000.00 in just compensation for the period from January 1, 1991 to the date of its verdict, March 7, 2002.

The jury also found that the Plaintiff, Merkur Steel Supply, Inc. will suffer future damages and is entitled to $3,800.00 per month from the City of Detroit in just compensation beginning March 7, 2002, until either (1) Merkur ceases to lease the property, (2) the City of Detroit acquires ownership of the property or (3) the City of Detroit takes the necessary actions to lift the restrictions preventing construction of a building on the vacant five-acre parcel.

This Complaint was filed by the Plaintiff, Merkur Steel Supply, Inc., on September 3, 1999, and the Plaintiff is entitled to interest as provided in MCLA §600.6013(6), compounded annually, from the date of the filing of the Complaint, on the sum of the $6,800,000.00 verdict amount, taxable costs and mediation sanctions awarded by the Court.

The parties having appeared before this Court on Plaintiff's Motion for Judgment Upon Jury Verdict and Plaintiff's Motion for Mediation Sanctions; the Court having heard oral arguments; and the Court being fully advised upon the premises:

**NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED AS FOLLOWS:**

1.  <u>Entry of Judgment Against City of Detroit for Past Damages.</u> Judgment is hereby entered in favor of Plaintiff, Merkur Steel Supply, Inc. ("Merkur"), and against Defendant, City of Detroit, in the amount of Seven Million *Nine Hundred Eighty Eight* Thousand *Eight* Hundred *Fifteen* and *60*/100 ($ *7, 988, 815. 60* ) Dollars (the "Judgment Amount"). This amount is based on the $6,800,000.00 verdict, taxable costs in the amount of $ *1, 071. 00* , and accrued interest through March 29, 2002.

2.  <u>Interest.</u> Interest shall continue to accrue on the Judgment Amount as specified in MCLA §600.6013(6), until the Judgment is satisfied.

2

3. <u>Future Damages.</u> It is further ordered that the Defendant, City of Detroit, shall pay Plaintiff, Merkur Steel Supply, Inc., just compensation, on a monthly basis, rent in the amount of $3,800.00 per month, as future damages, beginning March 7, 2002. Interest will accrue at the rate prescribed in MCLA §600.6013(6), on any monthly payment that is not timely made by the City of Detroit. The monthly rent payments will continue until either (1) Merkur ceases to lease the property, (2) the City of Detroit acquires ownership of the property or (3) the City of Detroit takes the necessary actions to lift the restrictions preventing construction of a building on the vacant five-acre parcel.

4. <u>Mediation (Case Evaluation) Sanctions.</u> Plaintiff is entitled to mediation (case evaluation) sanctions pursuant to MCR 2.403. The amount of the sanctions will be determined by the Court after an evidentiary hearing on April 19, 2002 at 3:00 PM and added to the Judgment Amount (including interest accrued on the amount of mediation [case evaluation] sanctions from September 3, 1999 to March 29, 2002), unless the parties agree on the amount of the sanctions prior to that hearing.

This Judgment resolves the last pending claim in this matter and closes the case.

Jeanne Stempien

_____

Circuit Court Judge

**APPROVED AS TO FORM ONLY:**

LAW OFFICES OF MARK S. DEMOREST

_____

Mark S. Demorest (P35912)
Attorneys for Plaintiffs

_____

James C. Cobb, Jr. (P23139)
Attorneys for Defendant

P:\Demorest\Thomas, Karl\City Airport Condemnation\p-judgment.doc

A TRUE COPY
CATHY M. GARRETT
WAYNE COUNTY CLERK

BY _____ DEPUTY CLERK

3

261 Mich. App. 116, *125; 680 N.W.2d 485, **492;
2004 Mich. App. LEXIS 672, ***11

Page 4

According to the city, it played no role in the FAA's determination of hazard against plaintiff's proposed building or in creating the condition in the state's tall structure permit. Thus, the city argues that the Wayne Circuit Court lacked jurisdiction over plaintiff's claims because the claims are actually claims against the state and federal governments.

Plaintiff in this case alleges a de facto taking. A de facto taking occurs when a governmental agency effectively takes private property without a formal condemnation proceeding. See *Detroit Bd of Ed v Clarke*, 89 Mich. App. 504, 508; 280 N.W.2d 574 (1979). Inverse condemnation can occur without a physical taking of the property; a diminution in the value of the property or a partial destruction can constitute a "taking." *Id.* Thus, for purposes of a de facto taking, all of the city's actions in the aggregate, as opposed to just one incident, must be analyzed to determine the extent of the taking.

Here, the city minimizes plaintiff's claims. According to the city, the [***12] circuit court lacked jurisdiction to rule that the [**493] FAA determination of hazard constituted a taking because FAA determinations are governed exclusively by federal law. The city relies on the case of *Flowers Mill Associates v United States*, 23 Cl Ct 182 (1991), for its contention that an FAA determination of hazard does not constitute a taking of property.

In this case, however, plaintiff did not bring suit against the federal government strictly on the basis of the FAA's determination of a hazard. Plaintiff brought suit against the city because of the city's filing of the [*126] airport layout plan with the FAA, *as well as* other acts plaintiff contends were taken in order to obtain the property near the airport. These other acts in part include the acquisition of properties surrounding the area and the promise, in exchange for grant money, to the FAA and the state that the city would not allow any new construction in the area. Plaintiff's primary contention was that the city wanted to acquire plaintiff's property but did not do so legally because of the significant cost, and instead condemned much of the surrounding properties and made it impossible for plaintiff to expand its [***13] business. Because plaintiff did not bring suit against the federal government strictly on the basis of the FAA's determination of a hazard, the city's reliance on *Federal Mills* is misplaced. Further, because of the city's misconceptions, its argument [**494] that the Wayne

Circuit Court lacked jurisdiction is also misplaced.

We note that even though the FAA's determination of a hazard does contribute to plaintiff's problems with its attempt to expand its operations, it is only one factor to be considered. As the city itself notes from *Flowers Mills, supra,* the FAA's hazard finding is not legally enforceable. This is why plaintiff's claim of a de facto taking cannot and does not rest merely on the FAA's determination of a hazard. Instead, plaintiff's claims are against the city for the filing of the airport layout plan, and they rest on the city's agreement to condemn the property, its condemning of some of the surrounding area, and its making it impossible for plaintiff to expand its business until the city decides whether to actually expand the airport and formally condemn plaintiff's property.

We come to a similar conclusion with regard to the city's claim that because state law regulates [***14] the issuance [*127] of tall structure permits, the condition contained in the tall structure permit issued to plaintiff cannot be imputed to the city. According to the city, plaintiff is essentially bringing suit against the state for a taking of plaintiff's property and therefore must bring suit against the state in the Court of Claims. The city is correct in its argument that the issuance of tall structure permits is regulated by the Tall Structure Act, MCL 259.481 *et seq.* This act requires a person seeking to build a structure in a runway or landmark area to obtain a permit. However, where the city's argument is misguided is in its claim that the trial court had to determine that the tall structure permit issued to plaintiff constituted a taking of its property.

Plaintiff does not claim that the condition contained in the tall structure permit constituted a taking of its property. Instead, plaintiff claims that the city's actions, in conjunction with the city's filing of the airport layout plan, constitute a taking of plaintiff's property by the city. Plaintiff alleged that in order to gain grant money, the city agreed that it would condemn [***15] the area near the airport and prohibit any persons from building in the area. It is this act that plaintiff argues contributes to a finding that the city inversely condemned plaintiff's property, not the mere fact that a condition was placed in the tall structure permit. Again, the city's argument that the Wayne Circuit Court lacked jurisdiction is misplaced.

Finally, the city claims that the mere filing of an airport layout plan, by itself, cannot constitute a taking of

Page 5

261 Mich. App. 116, *127; 680 N.W.2d 485, **494;
2004 Mich. App. LEXIS 672, ***15

plaintiff's property. The city is correct in that the mere promulgation and publication of plans does not constitute a taking of property. See *City of Muskegon v DeVries*, 59 Mich. App. 415, 419; 229 N.W.2d 479 (1975). The threats must be coupled with affirmative action, [*128] such as unreasonable delay or oppressive conduct. *Id.* Our courts have held that a city cannot deliberately act to reduce the value of private property. *Detroit Bd of Ed, supra* at 508, citing *In re Renewal, Elmwood Park Project*, 376 Mich. 311, 317; 136 N.W.2d 896 (1965). Actions found to be deliberate have included the published threat of condemnation, mailing letters concerning the [***16] project to area residents, refusing to issue building permits for improvements coupled with intense building inspection, reductions in city services to the area, and protracted delay and piecemeal condemnation. *Id.* at 509.

Again, in this case, plaintiff's claim does not rest on the city's publication of its plan. Plaintiff's claim rests on the fact that the city publicized its plans, started condemning the properties around plaintiff's, closed roads in the area, n2 and took action to prevent plaintiff from expanding its business. In essence, plaintiff argues that over a period of ten years, the city took steps to inhibit plaintiff's expansion of its business because the city wanted to expand the airport without having to legally and formally acquire plaintiff's property. Plaintiff argues that the city's failure to formally condemn its property constituted a taking. Plaintiff also argues that the city's failure to respond to plaintiff's inquiries and notice that it wished to proceed with its construction when the city took no action, particularly after 1996, constituted a taking. Under the circumstances, the trial court did not err in denying the city's motion for summary disposition.

> n2 Evidence indicates that in 1987, the city approved the temporary closing of a road in the area of the airport, and while the closing was supposed to be temporary, the road remained closed indefinitely.

[***17]

[*129] B. THE TRIAL COURT DID NOT IMPROPERLY FAIL TO APPLY THE BALANCING TEST TO DETERMINE WHETHER A TAKING HAD OCCURRED

According to the city, plaintiff's claim alleges a regulatory taking and, thus, the court was required to apply the balancing test set forth in *K & K Construction Inc v Dep't of Natural Resources*, 456 Mich. 570, 575 N.W.2d 531 (1998). In its argument, the city rather conclusorily states that plaintiff's claim is one of a regulatory taking, but under the facts, we cannot so conclude.

Eminent domain is an inherent right of a state to condemn private property for public use. *In re Acquisition of Land-Virginia Park*, 121 Mich. App. 153, 158; 328 N.W.2d 602 (1982). When exercising its power of eminent domain, the state, or those to whom the power has been lawfully delegated, must pay the owner just compensation. *Id.* Where the property has been damaged rather than completely taken by governmental actions, the owner may be able to recover by way of inverse condemnation. *Id.* at 158. An inverse condemnation suit is one instituted by a private property owner whose property, while not formally taken for public use, has been damaged [***18] by a public improvement undertaking or other public activity. *Id.* [**495] Inverse condemnation is "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *Id.* at 158-159 (citation omitted).

When the government takes property by formal condemnation, it must follow the procedures set out in the Uniform Condemnation Procedures Act (UCPA), MCL 213.51 *et seq.*. However, no exact formula exists concerning a de facto taking; instead, the form, intensity, [*130] and the deliberateness of the governmental actions toward the injured party's property must be examined. *In re Virginia Park, supra* at 160, citing *Heinrich v Detroit*, 90 Mich. App. 692, 698; 282 N.W.2d 448 (1979). The plaintiff has the burden of proving causation in an inverse condemnation action. *In re Virginia Park, supra* at 160-161, quoting *Heinrich, supra* at 700. A plaintiff may satisfy this burden by proving that the government's actions were a substantial [***19] cause of the decline of its property. *Id.* The plaintiff must also establish that the government abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property. *Id.* Not all government actions may amount to a taking for public use. *Heinrich, supra* at 698. The mere threat of condemnation and its attendant publicity, without more, is insufficient. *Id.* Before a court

261 Mich. App. 116, *130; 680 N.W.2d 485,**495;
2004 Mich. App. LEXIS 672, ***19

Page 6

may conclude that a taking occurred, it must examine the totality of the acts alleged to determine whether the governmental entity abused its exercise of eminent domain to plaintiff's detriment. *Id.*

In contrast, a regulatory taking is one in which the government effectively "takes" a person's property by overburdening it with regulations. *K & K Constr, Inc*, *supra* at 576. Land use regulations effectuate a taking in two general situations: (1) where the regulation does not substantially advance a legitimate state interest, or (2) where the regulation denies an owner economically viable use of his land. *Id.*, citing [***20] *Keystone Bituminous Coal Ass'n v DeBenedictis*, 480 U.S. 470, 485; 107 S. Ct. 1232; 94 L. Ed. 2d 472 (1987). The second type of taking is further subdivided into two situations: (a) a "categorical" taking, where the owner is deprived of "all economically beneficial or productive use of land," or (b) a taking recognized on the basis of the application of the traditional "balancing test" established in *Penn Central Transportation Co v New York City*, 438 U.S. 104; [*131] 98 S. Ct. 2646; 57 L. Ed. 2d 631 (1978). *K & K Construction*, *supra* at 576-577. For a categorical taking, a reviewing court need not apply a case-specific analysis; instead, the owner should automatically recover for the taking of his property. *Id.* at 577, citing *Lucas v South Carolina Coastal Council*, 505 U.S. 1003, 1015; 112 S. Ct. 2886; 120 L. Ed. 2d 798 (1992). The person may recover for a physical invasion of his property by the government, or where a regulation forces an owner to "'sacrifice *all* economically beneficial uses [of his land] in the name of the common good.'" *Id.*, quoting *Lucas*, *supra* at 1019. In regulatory takings other than categorical takings, the court must apply a "balancing test." With [***21] regard to this balancing test, a reviewing court must engage in an "ad hoc, factual inquiry," centering on three factors: (1) the character of the government's action, (2) the economic effect of the regulation on the property, and (3) the extent by which the regulation has interfered with distinct, investment-backed expectations. [**496] *Id.*, citing *Penn Central*, *supra* at 124.

In this case, the city's actions cannot be definitively categorized as a regulatory taking. The city did not "take" plaintiff's property by overburdening it with regulations. Instead, the city wanted to expand the airport and inhibited plaintiff's construction because of the contemplated expansion of the airport. Here, the city actually intended to acquire plaintiff's property.

Essentially, the city wanted plaintiff's property without having to pay for it through the institution of formal condemnation proceedings. Thus, we decline to categorize the city's actions as a strict regulatory taking. Instead, under the circumstances, plaintiff had to prove a de facto taking through inverse condemnation.

Again, a de facto taking can occur without an actual physical taking of the property. [***22] *Detroit Bd of Ed*, *supra* [*132] at 508. In terms of a de facto taking, the form, intensity, and the deliberateness of the government actions toward the property must be examined. *In re Virginia Park*, *supra* at 160. All actions by the city, in the aggregate, must be analyzed. *Heinrich*, *supra* at 698.

Plaintiff presented evidence of a decline of its property through evidence that the city's actions prevented plaintiff from building a new building for its business. Plaintiff also presented evidence that the city had the intent to completely take plaintiff's property but failed to take the appropriate steps in over ten years. The city accepted money from the government with the promise that it would prohibit any new construction and would remove any existing hazards, which included plaintiff's business. In 1991, the Detroit city council approved the condemnation of the area around the airport. Further, there was testimony and exhibits admitted at trial that showed city acknowledgment that the area around the airport was to be condemned. Thus, plaintiff presented evidence that the city abused its legitimate powers in its actions aimed at plaintiff's property. Under the circumstances, the trial [***23] court used the correct test in determining whether plaintiff presented evidence of a taking.

## C. THE TRIAL COURT DID NOT IMPROPERLY ALLOW PLAINTIFF TO SEGMENT ITS PROPERTY IN ORDER TO SHOW A TAKING

Without specifically stating the context in which it makes its argument, the city claims that the trial court allowed plaintiff to segment its property. According to the city, allowing plaintiff to segment its property violates the "nonsegmentation" rule recognized in Michigan.

> "'Any injury to the property of an individual which deprives the owner of the ordinary use of it is equivalent to [*133] a taking, and entitles him to compensation.

Page 7

261 Mich. App. 116, *133; 680 N.W.2d 485, **496;
2004 Mich. App. LEXIS 672, ***23

So a partial destruction or diminution of value of property by an act of government which directly and not merely incidentally affects it, is to that extent an appropriation.[**] *Peterman v Dep't of Natural Resources*, 446 Mich. 177, 184; 521 N.W.2d 499 (1994), quoting *Vanderlip v Grand Rapids*, 73 Mich. 522, 535; 41 NW 677 (1889), quoting *Broadwill v City of Kansas*, 75 Mo 213, 218 (1881).]

In the context of a regulatory taking, the Court in *K & K Construction, supra* at 578, explained, "One of the fundamental principles of [***24] taking jurisprudence is the 'nonsegmentation' principle. This principle holds that when evaluating the effect of a regulation on a parcel of property, the effect of the regulation must be viewed with respect to the parcel as a [**497] whole." *Id.* "Courts should not 'divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated.'" *Id.*, quoting *Penn Central, supra* at 130. Instead, the court must examine the effect of the regulation on the entire parcel, rather than just the affected portion of the parcel. *K & K Construction, supra* at 578-579.

In *K & K Constr*, the parties dealt with property that was segmented into five different parcels and the parties were claiming only the taking of some portions of several of the parcels because of certain regulations placed on those parcels. This case is distinguishable. This case involves a leasehold estate. Plaintiff claimed that the city "took" its property by precluding it from building on several vacant acres of the property and further that the city intended to eventually take plaintiff's property in its entirety but was not willing to [***25] do so through the proper avenues because of the expense. Plaintiff claimed a partial de facto taking. See *Peterman, supra*. Under the circumstances, the trial court [*134] did not improperly allow plaintiff to segment its property.

### D. THE TRIAL COURT DID NOT IMPROPERLY ALLOW EVIDENCE OF SPECULATIVE LOST PROFITS

The city argues that the trial court improperly allowed plaintiff to introduce evidence of speculative lost profits as a separate and direct element of damages instead of as evidence bearing on the value of the leasehold interest.

Recovery can be had for the taking of a leasehold estate. *In re Widening of Gratiot Ave*, 294 Mich. 569; 293 NW 755 (1940). The purpose of just compensation is to put the property owner in as good a position as it would have been in had its property not been taken. *Miller Bros v Dep't of Natural Resources*, 203 Mich. App. 674, 685; 513 N.W.2d 217 (1994), citing *State Highway Comm'r v. Ellender*, 362 Mich. 697, 699; 108 N.W.2d 755 (1961). The public must not be enriched at the property owner's expense, nor should the property owner be enriched at the public's [***26] expense. *Miller Bros, supra*. To prevent either party from being enriched at the other's expense, the nature of the taking at issue must be considered. *Id.* at 685-686. "In a typical condemnation case, the state takes some affirmative action to permanently deprive a property owner of the use of the property, and, therefore, is required to pay compensation to the owner." *Id.* at 686.

In cases involving a temporary taking, "the best approach is a flexible approach that will compensate for losses actually suffered while avoiding the threat of windfalls to plaintiffs at the expense of substantial government liability." *Miller Bros, supra* at 687, citing *Poirier v Grand Blanc Twp (After Remand)*, 192 Mich. App. 539, 543; 481 N.W.2d 762 (1992). The best approach in that case is to [*135] base the just compensation award on the fair market value of the property. *Id.* at 688. The Court noted in *Miller Bros* that because the state is temporarily depriving plaintiffs of the use of their property, much like a renter, the state should be required to pay 'rent' to plaintiffs as compensation for the temporary taking. *Id.*

"The determination of value is not [***27] a matter of formulas or artificial rules, but of sound judgment and discretion based upon a consideration of all the relevant facts in a particular case." *In re Widening of Gratiot Avenue, supra* at 574. In estimating the value of a lease, "it is proper to consider the location [*498] of the premises, their special adaptability to the business there being conducted, the length of time it has been established, its earnings and profits, the unexpired term of the lease, and every other fact that may affect its value. All of these matters go to enhance the value of the lease. They are not substantive damages in condemnation proceedings." *In re Park Site on Private Claim 16, City of Detroit*, 247 Mich. 1, 4; 225 NW 498 (1929).

"Damages will not be allowed in condemnation cases

261 Mich. App. 116, *135; 680 N.W.2d 485, **498;
2004 Mich. App. LEXIS 672, ***27

Page 8

unless they can be proven with reasonable certainty." *County of Muskegon v Bakale*, 103 Mich. App. 464, 468; 303 N.W.2d 29 (1981). "The loss of speculative profits, therefore, has been held not to be allowable as an element of compensation." *Id.* But it is error to not allow a property owner to present evidence of "the most profitable and advantageous [***28] use it could make of the land" even if the use was still in the planning stages and had not been executed. *Village of Ecorse v Toledo, CS&D Ry Co*, 213 Mich. 445, 447-448; 182 NW 138 (1921).

> In denying the city summary disposition, the trial court ruled:
>
> > In the event it should be determined that Plaintiff is entitled to recover just compensation for the de facto [*136] taking of its leasehold estate, evidence of lost profits that would have been generated from Plaintiff's development of the property, but for a de facto taking, is admissible to establish circumstantially the reasonable value of the leasehold estate wrongfully taken by Defendant.

Thus, the trial court allowed evidence of lost profits to establish the diminution in value of plaintiff's leasehold interest. This is acceptable. See, e.g., *Miller Bros, supra*. While the evidence came in the form of direct numbers of lost profits, the evidence established how much value of the leasehold was taken.

Furthermore, the evidence was not unduly speculative. Plaintiff wanted to build a new building in order to expand its business. It must be kept in mind that plaintiff wished to [***29] utilize a portion of its property that was vacant. The jury in this case visited the property site and heard testimony from several witnesses regarding plaintiff's plans to expand. Plaintiff's owners testified regarding the new operations that would be conducted in the new building as an extension of the existing operation. Plaintiff's expert witness testified regarding prices and costs. Plaintiff's president and vice-president of finance testified regarding the profitability of the expansion and the profitability of the existing business and gave specific dollar amounts. Plaintiff's financial statements were also entered into evidence, as were its tax returns. Moreover, the jury was instructed that it should not speculate. The city offered

very little to contradict plaintiff's evidence. The city called one witness to testify regarding the damages issue and while he criticized plaintiff's damages projections, on cross-examination, he admitted that if asked to make projections of lost profits of a business that is not in operation, he would do so in a similar manner as plaintiff did. Because we are dealing with a business that has not come to fruition, some degree of guesswork [*137] is necessary [***30] and the amount of damages cannot be established for certain. The evidence was not unduly speculative.

## B. THE JURY DID NOT ERR IN DETERMINING THE DATE OF TAKING

The city argues that the verdict establishing December 1990 as the date of taking is not based on evidence in the record and fails as a matter of law.

"The determination of the date of taking and the ascertainment of value is [**499] a question of fact for the jury." *Detroit Bd of Ed, supra* at 509 . The jury determined the date of the taking to be December 1990. The evidence established that on December 19, 1990, the city's airport director wrote a letter to the FAA to object to plaintiff's proposal to build. It appears that this was one of the city's first outward acts at attempting to preclude plaintiff from building its new business. And it was after this date that the city filed its airport layout plan. It was also after this date that the city took further acts at attempting to preclude plaintiff from building. n3 Although plaintiff admits that it did not have concrete plans to build and it did not realize many damages in December 1990, there is evidence in the record to support the jury determination [***31] of December 1990 as the date of taking or the date on which the taking began. "It is not within the province of this Court to review questions of fact other than to ascertain the presence of evidence that can support the verdict." *Detroit Bd of Ed, supra* at 510. "A verdict will not be disturbed so [*138] long as it is within the fair range of the testimony." *Id.*, citing *Detroit v Sherman (In re Virginia Park Neighborhood Development Program )*, 68 Mich. App. 494, 498; 242 N.W.2d 818 (1976) and *St Clair Shores v Conley*, 350 Mich. 458, 463-464; 86 N.W.2d 271 (1957). The jury did not err in its determination of the date of the taking.

> n3 Some evidence in the record indicates that the city stopped services such as trash pickup around the area and

261 Mich. App. 116, *138; 680 N.W.2d 485, **499;
2004 Mich. App. LEXIS 672, ***31

Page 9

also began dumping trash on property the city acquired. Further, plaintiff suggested that through condemnation, the city acquired some of the residential properties around the area, but let those properties become run down.

## F. THE TRIAL COURT DID NOT ERR IN FAILING TO DIRECT A VERDICT IN THE CITY'S FAVOR

The city finally argues that plaintiff presented no evidence of [***32] the value of the property allegedly taken, and without such evidence, there is no foundation on which a verdict can be based.

Again, "there is no formula or artificial measure of damages applicable to all condemnation cases. The amount to be recovered by the property owner is generally left to the discretion of the trier of fact after consideration of the evidence presented." *Poirier, supra* at 543 (citation omitted). A jury has broad discretion in determining the amount of compensation in condemnation cases. "It is not within the province of the court on appeal . . . to review questions of fact further than to see that the verdict is supported by the evidence. An appellate court should not disturb a condemnation award which was within the maximum and minimum appraisals presented by the witnesses." *Sherman, supra* at 498 (citations omitted).

At trial, the city argued for a verdict of no cause of action and damages of zero. Plaintiff requested a verdict of nearly $ 17 million for past losses and $ 200,000 a month for future losses. The jury awarded $ 6.8 million for past losses and $ 3,800 a month for future losses.

As the [***33] trial court noted in its denial of the city's second motion for directed verdict, the damages to which the witnesses testified related to the increased sales of plaintiff that would result from being able to [*139] add another business on their land. Witnesses testified regarding plaintiff's productivity over the years, and its past financial statements were admitted into evidence. Thus, there was evidence of how profitable plaintiff's

business was before any new expansion, which equated to its market value. Witnesses then testified about what plaintiff's increased income and production would have been with the new [**500] business. This established the diminution in value of plaintiff's property. Under the circumstances, there was sufficient evidence produced with which the jury could determine damages; thus, the trial court did not err in denying directed verdict in the city's favor or in denying the city's motion for JNOV.

## IV. CONCLUSION

Contrary to the city's assertion, plaintiff did not institute the present suit against the city simply because the city filed an airport layout plan and the FAA determined plaintiff's proposed construction a hazard to aviation. Instead, plaintiff filed the present inverse [***34] condemnation suit against the city for all of the city's acts that were taken in an attempt to thwart plaintiff's efforts at construction and for the city's attempt to "take" plaintiff's property without formally condemning it. The city approved the condemnation of the area and the area was in a state of decline because of the lack of city services and the fact that the residents anticipated condemnation. While the city intended to condemn the area, it had formally condemned few of the properties and let the majority of the properties decline and await possible future formal condemnation. In sum, this is a case of blight by planning. The city's plans to expand Detroit City Airport, possibly sometime in the future, thwarted plaintiff's attempts to run and expand its business and significantly impaired the value of [*140] plaintiff's property rights. The city made its plans clear but never followed through with its plans and never attempted to legally obtain plaintiff's property. Under the circumstances, we affirm the trial court's rulings in all respects and we affirm the jury's verdict.

Affirmed.

/s/ Christopher M. Murray

/s/ Hilda R. Gage

/s/ Kirsten Frank Kelly

# EXHIBIT 3

IN RE:

City of Detroit, Michigan,

Debtor.

Chapter 9
Case No. 13-53846
Hon: Steven W. Rhodes

---

## <u>ORDER GRANTING RELIEF FROM AUTOMATIC STAY<br>AND RULING THAT JUDGMENT IS NOT SUBJECT TO REDUCTION OR<br>COMPROMISE IN BANKRUPTCY</u>

This matter having come before this Court by the Motion for Relief from Automatic Stay to Permit Enforcement of Judgment Against City of Detroit, and for Ruling that Judgment Based on Claim for Taking of Property Without Just Compensation is Not Subject to Reduction or Compromise in Bankruptcy, as to T&T Management, Inc., Successor to Merkur Steel Supply, Inc. (the "Motion"), dated February 4, 2014, filed by Movant T&T Management, Inc. ("T&T Management"). The Court having reviewed the Motion and the record as a whole and having found that good cause exists to grant the relief sought in the Motion:

IT IS ORDERED:

1. The Automatic Stay is terminated as to T&T Management, which is permitted to exercise its rights as successor of Merkur Steel Supply, Inc. ("Merkur") to collect upon the Final Judgment against the City of Detroit entered by Wayne County Circuit Court in *Merkur Steel Supply, Inc. v. City of Detroit* Case No. 1999-928001-CC (the "Judgment").

2. The Judgment is an award of just compensation to T&T Management (as the successor of Merkur) for the taking of its property without just compensation by

the City of Detroit. As a result, the Judgment is not subject to compromise or reduction in the City of Detroit's Bankruptcy.

Signed on _____, 2014

Steven W. Rhodes
United States Bankruptcy Judge

City of Detroit Bankruptcy: Proposed Order Granting Relief from Stay (Merkur- T&T Management)

# UNITED STATES BANKRUPTCY COURT
## EASTERN DIVISION OF MICHIGAN

IN RE:                           **CHAPTER 9**
CITY OF DETROIT, MICHIGAN      **CASE NO. 13-53846**

      *Debtor.*                    **HON. STEVEN W. RHODES**

_____/

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2014, I electronically filed the following:

Notice of Motion of T&T Management, Inc. for Entry of an Order Granting Relief From Automatic Stay;

Motion for Relief From Automatic Stay to Permit Enforcement of Judgment Against City of Detroit and for Ruling That Judgment Based on Claim for Taking of Property Without Just Compensation Is Not Subject to Reduction or Compromise in Bankruptcy as to T&T Management, Inc., Successor to Merkur Steel Supply, Inc.

with the Clerk of the Court using the ECF system that will send notification of such filing to all persons registered to receive e-filings in this case.

Respectfully submitted,

/s/ Melissa L. Demorest
Mark S. Demorest (P35912)
Melissa L. Demorest (P68867)
Demorest Law Firm, PLLC
322 W. Lincoln
Royal Oak, MI 48067
248-723-5500
mark@demolaw.com
melissa@demolaw.com

City of Detroit bankruptcy:COS MOTION FOR RELIEF FROM AUTOMATIC STAY.docx