# EXHIBIT 2-3

EXHIBIT 4

IN RE:
CITY OF DETROIT, MICHIGAN
*Debtor.*

CHAPTER 9
CASE NO. 13-53846
HON. STEVEN W. RHODES

_____/

**MOTION FOR RELIEF FROM AUTOMATIC STAY TO PERMIT ENFORCEMENT OF JUDGMENT AGAINST CITY OF DETROIT, AND FOR RULING THAT JUDGMENT BASED ON CLAIM FOR TAKING OF PROPERTY WITHOUT JUST COMPENSATION IS NOT SUBJECT TO REDUCTION OR COMPROMISE IN BANKRUPTCY, AS TO T&T MANAGEMENT, INC., SUCCESSOR TO MERKUR STEEL SUPPLY, INC.**

T&T Management, Inc. ("T&T Management"), by and through its counsel, Demorest Law Firm, PLLC, states as follows for its Motion (the "Motion") to Compel and For Relief from Automatic Stay as to T&T Management, Inc., a Florida Corporation, successor by merger to Merkur Steel Supply, Inc., a Michigan Corporation ("Merkur Steel"):

### The Inverse Condemnation Judgment

1.  Merkur Steel obtained a judgment for inverse condemnation against the City of Detroit in Wayne County Circuit court Case No. 1999-928001-CC, which was affirmed by the Michigan Court of Appeals at 261 Mich. App. 116 (2004). The Michigan Supreme Court then denied the City of Detroit's application for leave to appeal. (A copy of the Final Judgment is attached as **Exhibit 1**, and a copy of the unanimous, published opinion of the Michigan Court of Appeals is attached as **Exhibit 2**).

2.  The City of Detroit interfered with Merkur Steel's rights as a tenant of the property, because the City of Detroit had its own plans to acquire the property adjacent to Coleman A. Young International Airport (known at the time as Detroit City Airport).

3. In March 2002, the jury determined that the City of Detroit had partially inversely condemned Merkur Steel's rights as a tenant. The jury's verdict was that Merkur Steel had suffered $6.8 Million in past damages as a result of the City of Detroit's actions, and would continue to suffer damages of $3,800.00 per month in the future.

4. The Final Judgment entered on March 29, 2002, requires the City to make monthly payments of $3,800.00, continuing until such time as the City purchases the property, or releases the restrictions on the use of the property that led to the Judgment (**Exhibit 1**). The City has not purchased the property, and the restrictions on construction on the vacant portion of the property are still in place. Therefore, the $3,800 monthly payments must continue.

5. The City of Detroit made the monthly $3,800 payments required by the Judgment until 2013, when the City unilaterally stopped making payments ahead of its Chapter 9 filing on July 18, 2013.

6. T&T Management is a Florida corporation that is the successor in interest to Merkur Steel, as a result of the merger of the two companies.

### Lifting of Automatic Stay

7. Currently, claims against the City of Detroit are stayed pursuant to 11 U.S.C. § 362(a)(2), during which time the City of Detroit may propose a plan of adjustment modify its obligations to creditors whose claims are subject to reduction or compromise.

8. Pursuant to 11 U.S.C. § 362(d)(1), upon the request of a party in interest, the Court

shall grant relief from the Stay enforced pursuant to 11 U.S.C. § 362(a)(2) for cause, including lack of adequate protection for the party in interest.

9. As discussed below, the Judgment is not subject to reduction or compromise because it is based on a Constitutional claim for the taking of property without just compensation.

10. Because the Judgment is not subject to reduction or compromise, T & T Management lacks adequate protection of its interest with the Stay in place.

11. Furthermore, because the City of Detroit must pay the Judgment in full regardless of what reduction and compromises it makes in its plan of adjustment, the Stay on the Judgment does nothing more than delay T & T Management's Constitutional right to receive just compensation.

12. Because the Judgment is not subject to reduction of compromise in this Chapter 9 bankruptcy proceeding, the Court should lift the automatic stay and permit enforcement of the Judgment for the past due monthly payments and all future payments.

13. Congress may not pass laws under its Bankruptcy power that would effect a taking of private property without just compensation. *U.S. v. Security Industrial Bank*, 459 U.S. 70 (US 1982), citing *Louisville Joint Stock Land Bank v. Radford*, 295 US 555 (1935).

14. The Supreme Court Stated:

> The bankruptcy power is subject to the Fifth Amendment's prohibition against taking private

> property without compensation. *Louisville Joint Stock Land Bank v. Radford, supra.* Thus, However "rational" the exercise of the bankruptcy power may be, that inquiry is quite separate from the questions whether the enactment takes property within the prohibition of the Fifth Amendment.

459 U.S. at 75.

15. In *Louisville Joint Stock Land Bank*, Justice Brandeis stressed the importance of preserving the Fifth Amendment despite times of hardship:

> The Fifth Amendment commands that, however great the Nation's need, private property shall not be thus taken even for a wholly public use without just compensation.

295 U.S. at 602.

16. In *Louisville Joint Stock Land Bank*, the Supreme Court held that the Frazier-Lemke Act violated the Takings Clause of the Fifth Amendment. The Frazier-Lemke Act was a bankruptcy act of Congress that restricted the ability of banks to repossess farms after they had been foreclosed on. The Supreme Court held the statute was void because it effected a "taking of substantive rights in specific property acquired by the Bank prior to" its enactment.

17. Justice Brandeis noted that:

> [i]f the public interest requires, and permits, the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public.

295 U.S. at 602.

18. Although Congress may authorize the City to impair obligation of contracts in Chapter 9 bankruptcy, it may not authorize the taking of private property without just compensation in violation of the Fifth Amendment. Therefore, the Judgment for inverse condemnation must be satisfied in full. Anything short of full payment for this Judgment would deprive T&T Management, as the successor to Merkur Steel, of just compensation in violation of the Fifth Amendment. Since the Fifth Amendment applies to both the State and Federal governments, such a reduction would be unconstitutional.

### Relief Sought

19. T&T hereby requests that this Court enter an order lifting the automatic stay to allow enforcement of the City's on-going obligations under the Judgment (**Exhibit 1**).

20. Pursuant to L.B.R. 9014-1(b)(4) (E.D. MI), a copy of the proposed Order is attached as **Exhibit 3**.

**WHEREFORE**, New Products Corporation respectfully requests that this Court enter an order lifting the automatic stay to permit enforcement of the Judgment against the City of Detroit, and also to rule that the Judgment, which is based on the taking of property without just compensation, is not subject to reduction or compromise as a result of the City of Detroit's bankruptcy.

Respectfully submitted,

/s/ Melissa L. Demorest
Mark S. Demorest (P35912)
Melissa L. Demorest (P68867)
Demorest Law Firm, PLLC
Attorneys for creditor
T&T Management, Inc.
322 West Lincoln Ave.
Royal Oak, MI 48067
248-723-5500
mark@demolaw.com
melissa@demolaw.com

Dated: February 10, 2014

City of Detroit bankruptcy:Motion for Relief from Stay 2014 02 07.docx

UNITED STATES BANKRUPTCY COURT
EASTERN DIVISION OF MICHIGAN

IN RE:　　　　　　　　　　　　　　　　CHAPTER 9
CITY OF DETROIT, MICHIGAN　　　　　　CASE NO. 13-53846
　　　Debtor.　　　　　　　　　　　　HON. STEVEN W. RHODES

_____/

## INDEX OF EXHIBITS

**Exhibit**　　　　　　　　**Description**

1. Final Judgment, *Merkur Steel v City of Detroit*, March 29, 2002

2. Opinion, *Merkur Steel v City of Detroit*, 261 Mich. App. 116 (2004)

3. Proposed Order

City of Detroit bankruptcy:Index of Exhibits.docx

# EXHIBIT 1

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

MERKUR STEEL SUPPLY, INC.,
a Michigan Corporation,

    Plaintiff,

v

CITY OF DETROIT, a Michigan
municipal corporation,

    Defendant.

99-928001-CC   9/03/1999
JDG: JEANNE STEMPIEN
MERKUR STEEL SUPPLY INC
vs
DETROIT CITY OF

---

| Law Offices of Mark S. Demorest | JAMES C. COBB, JR. (P23139) |
| --- | --- |
| MARK S. DEMOREST (P35912) | Attorney for Defendant |
| Attorneys for Plaintiff | 615 Griswold, Suite 1415 |
| 19853 W. Outer Drive, Suite 100 | Detroit, Michigan 48226 |
| Dearborn, Michigan 48124 | 313/861-3433 |
| 313/565-1330 | |

---

### FINAL JUDGMENT

At a session of said Court held in the City of Detroit,
County of Wayne, State of Michigan, on: MAR 29 2002

Jeanne Stempien

PRESENT: HON. _____
                 Circuit Court Judge

    Jury trial commenced in this matter on February 25, 2002. The jury, after deliberating, reached its verdict as to liability on March 6, 2002, unanimously finding that the Defendant, City of Detroit, had inversely condemned the Plaintiff's, Merkur Steel Supply, Inc.'s, property rights as tenant as of December 1990.

    Following the jury's verdict as to liability, further testimony and evidence were presented to the jury as to the issue of just compensation. On March 7, 2002, the jury, after having further deliberated, unanimously reached its verdict as to damages, finding that the Plaintiff, Merkur Steel Supply, Inc., had sustained damages as a result of the Defendant, City of Detroit's, inverse condemnation of Merkur's property rights as a tenant. The jury further decided that

Merkur is entitled to $6,800,000.00 in just compensation for the period from January 1, 1991 to the date of its verdict, March 7, 2002.

The jury also found that the Plaintiff, Merkur Steel Supply, Inc. will suffer future damages and is entitled to $3,800.00 per month from the City of Detroit in just compensation beginning March 7, 2002, until either (1) Merkur ceases to lease the property, (2) the City of Detroit acquires ownership of the property or (3) the City of Detroit takes the necessary actions to lift the restrictions preventing construction of a building on the vacant five-acre parcel.

This Complaint was filed by the Plaintiff, Merkur Steel Supply, Inc., on September 3, 1999, and the Plaintiff is entitled to interest as provided in MCLA §600.6013(6), compounded annually, from the date of the filing of the Complaint, on the sum of the $6,800,000.00 verdict amount, taxable costs and mediation sanctions awarded by the Court.

The parties having appeared before this Court on Plaintiff's Motion for Judgment Upon Jury Verdict and Plaintiff's Motion for Mediation Sanctions; the Court having heard oral arguments; and the Court being fully advised upon the premises.

**NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED AS FOLLOWS:**

1. <u>Entry of Judgment Against City of Detroit for Past Damages.</u> Judgment is hereby entered in favor of Plaintiff, Merkur Steel Supply, Inc. ("Merkur"), and against Defendant, City of Detroit, in the amount of Seven Million _Nine Hundred Eighty Eight_ Thousand _Eight_ Hundred _Fifteen_ and 60/100 ($ _7,988,815.60_ ) Dollars (the "Judgment Amount"). This amount is based on the $6,800,000.00 verdict, taxable costs in the amount of $ _1,071.30_ , and accrued interest through March 29, 2002.

2. <u>Interest.</u> Interest shall continue to accrue on the Judgment Amount as specified in MCLA §600.6013(6), until the Judgment is satisfied.

2

13-53846-swr    Doc 2669    Filed 02/10/14    Entered 02/10/14 11:16:30    Page 10 of 26

13-53846-tjt    Doc 12777-5    Filed 05/08/18    Entered 05/08/18 10:20:36    Page 12 of 18

3. **Future Damages.** It is further ordered that the Defendant, City of Detroit, shall pay Plaintiff, Merkur Steel Supply, Inc., just compensation, on a monthly basis, rent in the amount of $3,800.00 per month, as future damages, beginning March 7, 2002. Interest will accrue at the rate prescribed in MCLA §600.6013(6), on any monthly payment that is not timely made by the City of Detroit. The monthly rent payments will continue until either (1) Merkur ceases to lease the property, (2) the City of Detroit acquires ownership of the property or (3) the City of Detroit takes the necessary actions to lift the restrictions preventing construction of a building on the vacant five-acre parcel.

4. **Mediation (Case Evaluation) Sanctions.** Plaintiff is entitled to mediation (case evaluation) sanctions pursuant to MCR 2.403. The amount of the sanctions will be determined by the Court after an evidentiary hearing on April 19, 2002 at 3:00 PM and added to the Judgment Amount (including interest accrued on the amount of mediation [case evaluation] sanctions from September 3, 1999 to March 29, 2002), unless the parties agree on the amount of the sanctions prior to that hearing.

This Judgment resolves the last pending claim in this matter and closes the case.

*Jeanne Stempien*
_____
Circuit Court Judge

APPROVED AS TO FORM ONLY:

LAW OFFICES OF MARK S. DEMOREST

_____
Mark S. Demorest (P35912)
Attorneys for Plaintiffs

_____
James C. Cobb, Jr. (P23139)
Attorneys for Defendant

P:\Demorest\Thomas, Karl\City Airport Condemnation\p-judgment.doc

A TRUE COPY
CATHY M. GARRETT
WAYNE COUNTY CLERK
BY _____ DEPUTY CLERK

3

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

MERKUR STEEL SUPPLY, INC.,
a Michigan Corporation,

    Plaintiff,

v

CITY OF DETROIT, a Michigan
municipal corporation,

    Defendant.

99-928001-CC    9/03/1999
JDG: JEANNE STEMPIEN
MERKUR STEEL SUPPLY INC
vs
DETROIT CITY OF

---

Law Offices of Mark S. Demorest
MARK S. DEMOREST (P35912)
Attorneys for Plaintiff
19853 W. Outer Drive, Suite 100
Dearborn, Michigan 48124
313/565-1330

JAMES C. COBB, JR. (P23139)
Attorney for Defendant
615 Griswold, Suite 1415
Detroit, Michigan 48226
313/961-3433

---

### CERTIFICATE OF SERVICE

Mark S. Demorest hereby certifies that on March 29, 2002, the Final Judgment, was hand-delivered to James C. Cobb, Jr., 615 Griswold, Suite 1415, Detroit, Michigan 48226.

MARK S. DEMOREST (P35912)

P:\Demorest\Thomas, Karl\City Airport Condemnation\p-cos 0322.02.doc

# EXHIBIT 2

4 of 4 DOCUMENTS

MERKUR STEEL SUPPLY, INC., Plaintiff-Appellee, v CITY OF DETROIT, Defendant-Appellant.

No. 241950

COURT OF APPEALS OF MICHIGAN

261 Mich. App. 116; 680 N.W.2d 485; 2004 Mich. App. LEXIS 672

December 16, 2003, Submitted
March 9, 2004, Decided

**SUBSEQUENT HISTORY:** Appeal denied by Merkur Steel Supply v. City of Detroit, 471 Mich. 884, 688 N.W.2d 502, 2004 Mich. LEXIS 2434 (2004)
Related proceeding at, Remanded by Hrt Enters. v. City of Detroit, 2005 Mich. App. LEXIS 1202 (Mich. Ct. App., May 12, 2005)
Related proceeding at Steel Assocs. v. City of Detroit, 2005 Mich. App. LEXIS 2553 (Mich. Ct. App., Oct. 18, 2005)

**PRIOR HISTORY:** [***1] Wayne Circuit Court. LC No. 99-928001-CC.

**DISPOSITION:** Affirmed.

**COUNSEL:** Law Offices of Mark S. Demorest (by Mark S. Demorest) for the plaintiff. Dearborn.

James C. Cobb, Jr., P.C. (by James C. Cobb, Jr.), for the defendant. Detroit.

**JUDGES:** Before: Murray, P.J., and Gage and Kelly, JJ.

**OPINION BY:** Christopher M. Murray

**OPINION:** [**489] [*118] GAGE, J.

Plaintiff Merkur Steel Supply, Inc., leases a parcel of property of approximately eleven acres in the city of Detroit. The property is adjacent to Detroit City Airport. The property contains a 188,000 square foot building and several acres of the property are vacant. For approximately ten years before this lawsuit, plaintiff attempted to expand its operations to no avail. The plans for expansion were repeatedly thwarted by city action.

Plaintiff initiated the present action against defendant city of Detroit for inverse condemnation. A jury [*119] trial resulted in a verdict in favor of plaintiff for approximately $ 7 million. The city now appeals as of right. We affirm.

I. FACTUAL BACKGROUND

To fully understand the nature of the cause of action, we must thoroughly review the relationship between the parties before us and the allegations set forth against the city.

Sometime in 1987, the city started its efforts to expand [***2] Detroit City Airport. In that year, the city signed an agreement with Southwest Airlines for Southwest to provide jet service to the airport. The agreement obligated the city to undertake a capital improvement at the airport. Apparently during this time, the city was not complying with existing Federal Aviation Administration (FAA) regulations, as some of the buildings near the airport, including plaintiff's, were too close to the existing runway. However, it appears the FAA granted temporary waivers to the city for the noncompliance.

Beginning in 1988, the city accepted grant money from the FAA and the state of Michigan to maintain and expand the airport. The grants all contained the condition that the city agree to prohibit the construction of new improvements and remove any existing hazards on the property near the airport. n1

Page 2

261 Mich. App. 116, *119; 680 N.W.2d 485, **489;
2004 Mich. App. LEXIS 672, ***2

n1 The record indicates that in 1991, the Detroit city council approved acquisition of the land surrounding the airport and the city did in fact condemn some of the properties in the area.

[**490] Around 1989, Karl Thomas and Hein Rusen, owners [***3] of plaintiff company, began contemplating constructing a 40,000 square foot addition to the existing building on their property in order to expand their business. The [*120] addition would be located on five acres that are vacant. In June 1990, plaintiff filed a notice of construction with the FAA. On December 19, 1990, the director of Detroit City Airport wrote a letter to the FAA objecting to plaintiff's building of the proposed structure. But in January 1991, the FAA issued a determination that construction of the proposed addition would not be a hazard to aviation; this determination was set to expire on August 24, 1992. In the meantime, the city filed an airport layout plan in April 1992, which put plaintiff's property directly in the way of the proposed airport expansion. In July 1992, plaintiff applied to the FAA for an extension determination, but in August 1992, the FAA revoked its "no hazard" determination because of the city's airport layout plan. Also during this time plaintiff applied for a building permit from the city, but it was denied.

In 1996, the city filed a revised layout plan showing the new airport runway going right through plaintiff's property. Apparently, because [***4] the city took no further action to condemn plaintiff's property, in September 1997, plaintiff wrote to then City Airport Director Suzette Robinson to inform her that it wished to proceed with its development. After receiving no response, plaintiff sent Robinson a second letter in October 1997, informing her that it would proceed with construction unless the city advised it that no building would be approved. Plaintiff again received no response. Thereafter, in November 1997, plaintiff hired an architectural firm to prepare plans for construction.

On July 2, 1999, the FAA issued a determination that the new building would be a hazard to aviation. On July 26, 1999, the Michigan Aeronautics Bureau issued a tall structure permit to plaintiff but attached certain conditions. The permit recognized that while the forty-foot [*121] building would not interfere with aviation, it could interfere with the city's plans to expand the airport. It issued the permit with the condition that the proponent or any subsequent owners of the proposed building would not receive reimbursement for the building or any businesses associated with the building if the property was acquired for expansion. At this point, [***5] plaintiff alleges it considered its project dead.

Plaintiff filed the present lawsuit for inverse condemnation against the city in September 1999. In part, plaintiff alleged that the city's filing of an airport layout plan constituted a taking of plaintiff's property without just compensation. The city filed a motion for summary disposition, arguing that plaintiff's complaint failed to state a claim on which relief could be granted and that the complaint stated claims against the state and federal governments that were beyond the circuit court's jurisdiction. The trial court denied the motion for summary disposition on September 5, 2001.

Trial was bifurcated into two phases, liability and damages. At the conclusion of plaintiff's proofs, the city filed a motion for a directed verdict, arguing in part that the filing of an airport layout plan could not constitute a taking per se; that there was no evidence that any regulation imposed by the airport layout plan denied plaintiff all economically viable use of its [**491] land; that the court must apply a balancing test to determine whether a taking occurred; and that it was improper to segment the property and determine whether only the five [***6] acres on which plaintiff planned to build was taken. The trial court denied the motion.

At the conclusion of the liability phase of trial, the jury was asked to decide whether the city inversely condemned plaintiff's property and, if so, on what date the inverse condemnation occurred. The jury determined [*122] that the city's conduct amounted to a taking and that the taking occurred in December 1990. During the damages phase of trial, the jury was asked to determine: (1) whether plaintiff suffered damages, (2) the amount of just compensation to which plaintiff is entitled to date from January 1, 1991, (3) plaintiff's future damages, and (4) the amount of just compensation each month for which plaintiff is entitled to in the future. Following this phase of trial, the city again sought a directed verdict, arguing that plaintiff failed to establish the value of its property. The trial court denied the motion.

On March 7, 2002, the jury determined that plaintiff had suffered damages in the amount of $6.8 million and would continue to suffer damages in the amount of $

261 Mich. App. 116, *122; 680 N.W.2d 485, **491;
2004 Mich. App. LEXIS 672, ***6

Page 3

3,800 each month. The city filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The trial [***7] court again denied the motion.

## II. STANDARD OF REVIEW

The city raises issues dealing with the trial court's rulings on several motions below as well as various other aspects of the trial. In its brief on appeal, the city erroneously states that the standard of review for this case is the plain error standard set forth in *People v Carines*, 460 Mich. 750; 597 N.W.2d 130 (1999). Despite the city's erroneous assertion, we will lay out the appropriate standards of review for the issues raised.

Part III(A) of this opinion addresses the city's argument that the trial court erred in denying its motion for summary disposition. While the city brought its motion for summary disposition under MCR 2.116(C)(8), the trial court reviewed the motion under both MCR 2.116(C)(8) and (10). A motion brought under MCR [*123] 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. *Beaudrie v Henderson*, 465 Mich. 124, 129; 631 N.W.2d 308 (2001). All factual allegations in support of the claim are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the facts, and must be construed in the light most [***8] favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich. 109, 119; 597 N.W.2d 817 (1999). A motion brought under MCR 2.116(C)(10) tests whether there is factual support for a claim. *Spiek v Dep't of Transportation*, 456 Mich. 331, 337; 572 N.W.2d 201 (1998). When deciding this motion, the court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Ritchie-Gamester v City of Berkley*, 461 Mich. 73, 76; 597 N.W.2d 517 (1999). On appeal, the trial court's decision is reviewed de novo. *Drassel v Ameribank*, 468 Mich. 557, 561; 664 N.W.2d 151 (2003).

Parts III(B) and III(F) primarily address the city's motion for directed verdict and JNOV. A directed verdict is appropriate only when no material factual questions exist on which reasonable minds could differ. *Cacevic v Simplimatic Engineering Co (On Remand)*, 248 Mich. App. 670, 679-680; 645 N.W.2d 287 (2001). The trial court's decision on a motion for directed verdict is reviewed de novo. [***9] *Snlecinski v Blue Cross/Blue Shield of* [**492] *Michigan*, 469 Mich. 124, 131; 666 N.W.2d 186 (2003). Judgment notwithstanding the verdict should be granted only when there was insufficient evidence presented to create an issue for the jury. *Craig v Oakwood Hosp*, 249 Mich. App. 534, 547; 643 N.W.2d 580 (2002) (opinion by Cooper, P.J.). When deciding a motion for JNOV, the trial court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party and determine whether the facts [*124] presented preclude judgment for the nonmoving party as a matter of law. *Id*. A trial court's decision on a motion for JNOV is also reviewed de novo. *Snlecinski, supra*.

Part III(D) of this opinion addresses the city's argument that the trial court erred in allowing evidence of lost profits. This Court reviews a trial court's decision to admit evidence for an abuse of discretion. *Chmielewski v Xermac, Inc*, 457 Mich. 593, 613-614; 580 N.W.2d 817 (1998). As to the remaining claims, which are addressed throughout this opinion, questions of law are reviewed de novo by this Court, *Armstrong v Ypsilanti Charter Twp*, 248 Mich. App. 573, 582-583; [***10] 640 N.W.2d 321 (2001), while factual findings are reviewed for clear error, *Christiansen v Gerrish Twp*, 239 Mich. App. 380, 387; 608 N.W.2d 83 (2000).

## III. ANALYSIS OF THE CITY'S CLAIMS

At the outset, we note that the city appears to minimize and mischaracterize plaintiff's claims in this case. This is not simply a case where a company's attempt to expand its business interferes with the city's management of its airport. Instead, this is essentially a case of blight by planning. In this case, the city of Detroit wanted to expand Detroit City Airport and it needed to condemn the properties around the airport. However, the city's plans were not concrete and, for over a decade, the city has failed to actually expand the airport. While the city has condemned some of the surrounding area and has viewed it as practically uninhabited or vacant, the city has failed to formally condemn plaintiff's property. However, although the city has never formally condemned plaintiff's property, it has made it virtually impossible for plaintiff to expand its own business. Essentially, the city, in over ten years, [*125] has thrown "roadblock" after barrier to discourage [***11] the expansion of plaintiff's business.

### A. THE TRIAL COURT DID NOT ERR IN DENYING THE CITY'S MOTION FOR SUMMARY DISPOSITION