# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AGAINST H.D.V. GREEKTOWN, LLC, 415 EAST CONGRESS, LLC, AND K&P, INCORPORATED

The City of Detroit, Michigan (the "City"), by its undersigned counsel, files its *Motion for the Entry of an Order Enforcing the Plan of Adjustment Injunction Against H.D.V. Greektown, LLC, 415 East Congress, LLC, and K&P, Incorporated* (the "Motion"). In support of this Motion, the City respectfully states as follows:

## I.    INTRODUCTION

H.D.V. Greektown, LLC ("HDV"), 415 East Congress, LLC ("415 East Congress"), and K&P, Incorporated ("K&P," and together with HDV and 415 East Congress, the "Cabarets"), have been litigating their claims against the City for nearly 15 years in federal court. Having obtained a prepetition judgment, the Cabarets now argue before the Sixth Circuit Court of Appeals that their prepetition attorney fee award in that case should be enhanced by *one thousand percent* (1000%), to offset the treatment provided to them as members of Class 14 under

the Plan. In essence, the Cabarets argue that their claims for attorneys' fees are more important than the $7 billion in liabilities discharged by the Plan and that they should be the *only* Class 14 creditor in the City's bankruptcy case to receive not simply more than the Plan provides, but to be paid in full. This argument, of course, violates the City's Plan, this Court's Confirmation Order and the Bankruptcy Code itself. Consequently, the City requests that this Court enter an order requiring that the Cabarets withdraw with prejudice their argument that they should be provided a fee enhancement due to the City's bankruptcy and awarding to the City its reasonable attorneys' fees and costs expended in conjunction with this Motion and the appeal currently pending in the Sixth Circuit Court of Appeals.

## II. BACKGROUND

### A. The Cabarets Fully Litigate Their Claims in Prepetition Federal Court Actions.

Between 2003 and 2012, the Cabarets asserted a number of claims against the City challenging the constitutionality of the City's "adult use" zoning provisions, sign regulations, and procedures and criteria for considering "topless activity permit" transfers, United States District Court for the Eastern District of Michigan Case Nos. 2:03-cv-74887-JAC and 2:06-cv-11282-AJT-RSW (the "2006 Action"). In addition to numerous motions for partial summary judgment, the 2006 Action also involved multiple trips to the Sixth Circuit (United States Court of Appeals for the Sixth Circuit Case Nos. 08-01329/08-1361, 15-01449, 18-1203).

- 2 -

In the most recent iteration of their case in federal court, the Cabarets were awarded $905,718.65, in attorney fees and costs. Exhibit 6-1, 2006 Action, Order re Attorney's Fees, ECF 182. In so awarding, the District Court overruled the Cabarets' objection that the fee award should be enhanced due to the "rare and exceptional circumstances" of a municipal bankruptcy or a delay in payment "unjustifiably caused by the defense." *See id.* at PgID 5927-30. The District Court correctly noted that what the Cabarets actually request through such a fee enhancement is "a request to modify the Bankruptcy Court's final order" and found that the District Court "cannot, and will not, grant [the Cabarets'] sweeping request." *Id.* at PgID 5930.

Nevertheless, in spite of the District Court's clear pronouncement that a fee enhancement of this type would violate this Court's orders, the Cabarets have continued to pursue a one thousand percent fee enhancement before the Sixth Circuit. This, despite conceding that no authority for such an enhancement exists and acknowledging that such an award does not comport with the Bankruptcy Code. *See* Exhibit 6-2, Appellants' Br. at 19, 23, No. 18-1203 (6th Cir. Apr. 23, 2018).[1] Instead, the Cabarets argue that, since they believe that the City should have paid their attorney fee claim in full pre-petition, they are now entitled to payment in full post-petition (though they fail to indicate how this distinguishes

---

[1] The City filed its appeal brief on July 6, 2018. The brief is attached as exhibit 6-7 and it is incorporated herein.

them from any other creditor in the City's Bankruptcy). *See id.* at 22.

On July 8, 2018, Marc N. Swanson, counsel for the City, sought concurrence in this Motion from counsel for the Cabarets. Concurrence was not obtained.

## B. The City's Bankruptcy Case.

On July 18, 2013 ("Petition Date"), the City commenced this chapter 9 case ("Bankruptcy Case"). As the Sixth Circuit explained,

> At the time of filing, the City had over $18 billion in escalating debt, over 100,000 creditors, hundreds of millions of dollars of negative cash flow, crumbling infrastructure (e.g., some 78,000 abandoned structures, half classified as "dangerous"; another 66,000 blighted vacant lots; a crumbling water and sewer system; 40% nonfunctioning streetlights; outdated computer systems and software), and could not provide "the basic police, fire[,] and emergency medical services that its residents need[ed] for their basic health and safety." *In re City of Detroit*, 504 B.R. 191, 192 (Bankr. E.D. Mich. 2013).

> In bankruptcy, the City crafted a series of "intricate and carefully woven" settlements with almost all of its creditors and stakeholders. Those settlements were memorialized in the Eighth Amended Plan for the Adjustment of Debts of the City of Detroit ("Plan"). After extensive hearings, the bankruptcy court confirmed the Plan in a Confirmation Order dated November 12, 2014. . . .

> Overall, the Plan eliminated approximately $7 billion in debt and freed approximately $1.7 billion in revenue for reinvestment into City services and infrastructure, including public services, blight remediation, information technology, and public transportation. The Plan took effect on December 10, 2014, and the City began implementation immediately.

- 4 -

*In re City of Detroit*, 838 F.3d 792, 795, 796 (6th Cir. 2016), *cert. denied sub nom.*

*Ochadleus v. City of Detroit*, 137 S. Ct. 1584 (2017), and *cert. denied sub nom.*

*Quinn v. City of Detroit*, 137 S. Ct. 2270 (2017)

More than one thousand objections were filed to the Plan. The Cabarets did not file an objection or otherwise object to the Plan. This, even though they filed proofs of claim months earlier in the case concerning their fee awards and, as a result, had full knowledge of the case and the significant events occurring in the case because they were receiving actual notice of those events as a result of the filing of their proofs of claim.

Article II.B.3.u of the Plan specifically provides that Class 14 (other unsecured claims) claimholders, "in full satisfaction of such Allowed Claim, shall receive . . . a Pro Rata share" of the allotted distributions of B Notes for the class. Plan at p.44. There is a fixed amount of B Notes for Class 14 claims. The City's Disclosure Statement for the Plan estimated that Class 14 creditors would receive approximately 10-13%. [Doc. No. 4391 at p.41].

Moreover, the discharge provision in the Plan provides as follows:

> Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date. Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date, discharge the City from all Claims or other debts that

- 5 -

arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (ii) the Holder of a Claim based on such debt has accepted the Plan.

Plan, Art. III.D.4, at p.50. Further, the Plan's injunctive provision states, in pertinent part:

**Injunction**

**On the Effective Date, except as otherwise provided herein or in the Confirmation Order,**

a. **all Entities that have been, are or may be holders of Claims against the City…shall be permanently enjoined from taking any of the following actions against or affecting the City or its property…**

1. **commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affect the City of its property . . . .**

5. **proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and**

6. **taking any actions to interfere with the implementation or consummation of the Plan.**

Plan, Art. III.D.5, at p.50-51 (emphasis added).

- 6 -

The Court also retained jurisdiction to enforce the Plan injunction and to resolve any suits that may arise in connection with the consummation, interpretation or enforcement of the Plan. Plan, Art. VII.F, G, I, at p.72.

K&P, HDV, 415 East Congress and Shafer & Associates (the law representing the Cabarets) each filed a claim against the City in the amount of $1,563,107.76 in February 2014 [Claim Nos. 1925, 1845, 1841 and 1857, respectively]. The claims are attached as Exhibits 6-3, 6-4, 6-5 and 6-8.[1]

## III. ARGUMENT

The Cabarets' continued prosecution of their claim for an enhanced attorney fee award violates the discharge and injunction provision in the Plan and Confirmation Order. The Cabarets had actual notice and every opportunity to object to the Plan and argue that their claims for attorneys' fees should be paid in full but the Cabarets took no action. Despite this fact, the Cabarets press their unsupported and incorrect argument that their claim for attorneys' fees should be exempted from the intricate and complex settlements underlying the Plan and have priority over the $7 billion in debt that was discharged by the Plan. Section 944(a) of the Bankruptcy Code provides, however, that the provisions of a confirmed plan bind the debtor and any creditor. 11 U.S.C. § 944(a). As such, the Cabarets' argument is nothing more than an impermissible collateral attack on the

---

[1] The exhibits to the claims are not included because they are voluminous. The City will provide the exhibits upon request.

Plan and Confirmation Order that should be rejected by this Court. *See DeLorean v. Gully,* 118 B.R. 932, 935 n.1 (E.D. Mich. 1990) (noting that a collateral attack is a request for relief, which, if granted, "must in some fashion overrule a previous judgment.")

The Plan specifically provides that distributions on Class 14 claims were to be made Pro Rata and in full satisfaction of the underlying claims. Plan, Art. II.B.3.u, at p.44. The Plan discharge provision also specifically reiterates that "the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date." Plan, Art. III.D.4, at p.50. Furthermore, claimholders are barred from "proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan." Plan, Art. III.D.5, at p.50. The Cabarets have directly violated the Plan, the City's discharge, and the Plan injunction by pursuing litigation with the boldly proclaimed goal of obtaining full payment of their claims against the City in contravention of the treatment provided by the Plan to the holders of Class 14 claims. When confronted with a similar argument by a Class 14 creditor that his claim should be paid in full, this Court stated:

> As to the first piece of that, ordering the city to pay your
> client's claim in full, the $375,000, the -- the settlement
> in full, I don't -- I'm having trouble understanding how I
> could possibly order that given what the confirmed

31703778.5\022765-00213

Chapter 9 plan of adjustment says. Your client's claim, I -- I think the city is correct in -- in arguing, that your client's claim is treated as part of Class 14 under the confirmed plan of adjustment which was confirmed back in November and became effective December 10, 2014. And the plan says that claims, allowed claims in Class 14, it doesn't say they get cash at all. It doesn't say they get full payment of their claims. It says they get a pro rata share of a certain amount of -- of so-called new B notes, I think is the term, maybe excess new B notes too, but notes.

And it's a pro rata share. And as the -- as my predecessor Judge, Judge Rhodes' opinion, written opinion regarding confirmation of the plan pointed out, that -- that -- that treatment is -- was estimated at the time to be a pro rata treatment to -- to result in a recovery on these allowed claims of far less than 100%. I think he gave a percentage, estimate, or range in the -- and it is far less than 100%. This is what the confirmed plan says, isn't it?

July 15, 2015, Hearing Tr., E.D. Mich. Bankr. Case No. 13-53846, pp. 46-47, Exhibit 6-6.

Despite not having filed a claim in an amount to support the award they now seek (as they, in fact, could not have, since a claim in excess of 900% of the amount believed in good faith to be owed would almost certainly be denied), the Cabarets now seek to upend the entire bankruptcy scheme simply because they are unhappy with the ratable and reduced return they will receive on their claims. They assert, in essence, that a 1,000% increase in the *attorney fee* component of the 2006 Action is necessary to ensure that municipalities do not use their "financial precariousness . . . as a standing blank check to violate individual civil

rights," Ex. 6-2, Appellants' Br. at 25—never mind that the Cabarets have, in fact, had their underlying civil rights claim *paid in full*. This argument also ignores that the Bankruptcy Code does not treat a civil rights claim any differently than any other claim: for example, if an individual whose civil rights have been violated does not file a claim with the bankruptcy court, that claim will be barred, just like an ordinary contract or tort claim.[1] The Cabarets essentially argue that any claimant who believes that its personal loss is sufficiently important (presumably, to itself) can simply decide to opt-out of the bankruptcy process and pursue its individual interests, the exact problem that the bankruptcy process is intended and designed to address: the resolution of collective debt problems on a fair and equitable basis that treats similarly situated creditors the same and eliminates opt-out behavior.[2] If the 1000% fee enhancement were granted, it will still be paid with B Notes, just more of those B Notes will go to the Cabarets at the expense of other creditors by reducing their share ratably. Other innocent creditors should not bear the costs of the requested fee enhancement as such treatment would violate a fundamental pillar of bankruptcy law that similarly situated creditors are treated

[1] For the Cabarets to establish that 42 U.S.C. § 1988's attorney fee provisions trump the Bankruptcy Code, they would have to prove that § 1988 impliedly repealed the Bankruptcy Code. *See Conley v. Cen. Mortg. Co.*, 414 B.R. 157, 159–61 (E.D. Mich. 2009); *Perkins v. NVLV Funding, LLC (In re Perkins)*, 533 B.R. 242, 252–55 (Bankr. W.D. Mich. 2015). The Cabarets do not, however, even attempt this argument in their Sixth Circuit brief.

[2] Voting is on a class-wide and not an individual basis to avoid the hold-out problem that exists under non-bankruptcy law.

- 10 -

the same. *See e.g.* 11 U.S.C. §§ 1123(a)(4), 901(a).

In sum, despite the Cabarets' frenzied speculation that treating their attorneys just like every other creditor in the City's bankruptcy will spell the end of civil rights litigation, it is not at all remarkable or unusual that civil rights claims would be expunged, paid out on a diminished pro rata scale, or otherwise treated like any other claim in bankruptcy. *See, e.g.*, *McKay v. City of Detroit (In re City of Detroit)*, 700 F. App'x 511, 512–13 (6th Cir. 2017) (affirming settlement agreement in which claimant exchanged his 42 U.S.C. § 1983 claim against City officials for a Class 14 claim against the City); *In re City of San Bernardino*, 566 B.R. 46, 56 (C.D. Cal. 2017) (confirming plan of adjustment that paid litigation claimants, including civil rights plaintiffs, 1% return on their claims, and provided for injunction preventing plaintiffs from enforcing judgments against indemnified city employees, where such enforcement would expose the city to potentially "uncapped" payouts); *Jarreau-Griffin v. City of Vallejo*, 531 B.R. 829, 831–33 (E.D. Cal. 2015) (noting that plaintiffs' claims against the municipal debtor for *Monell* violations was discharged unless plaintiffs did not receive actual notice of the bankruptcy).

## IV.   CONCLUSION

For the reasons set forth above, the City respectfully requests that this Court enter an order in substantially the same form as the one attached as Exhibit 1, (a)

granting the Motion, (b) requiring the Cabarets to withdraw with prejudice their argument that they should be provided a fee enhancement in the 2006 Action due to the City's bankruptcy, (c) requiring the Cabarets to dismiss or caused to be dismissed with prejudice the appeal currently pending in the Sixth Circuit Court of Appeals, appeal number 18-1203; and (d) awarding the City's reasonable attorneys' fees and costs expended in conjunction with this Motion and the appeal currently pending in the Sixth Circuit Court of Appeals appeal number 18-1203.

31703778.5\022765-00213

Dated: July 11, 2018

Respectfully submitted,

By: /s/ Marc N. Swanson
    Jonathan S. Green (P33140)
    Marc N. Swanson (P71149)
    MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    green@millercanfield.com
    swansonm@millercanfield.com

    - and -

    Charles N. Raimi (P29746)
    Deputy Corporation Counsel
    City of Detroit Law Department
    2 Woodward Avenue, Suite 500
    Coleman A. Young Municipal Center
    Detroit, Michigan 48226
    Telephone: (313) 237-5037
    Facsimile: (313) 224-5505
    raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

## EXHIBIT LIST

Exhibit 1          Proposed Order

Exhibit 2          Notice of Motion and Opportunity to Object

Exhibit 3          N/A

Exhibit 4          Certificate of Service

Exhibit 5          N/A

Exhibit 6-1        2006 Action, Order re Attorney's Fees, ECF 182

Exhibit 6-2        Appellants' Brief, No. 18-1203 (6th Cir. Apr. 23, 2018)

Exhibit 6-3        Claim No. 1925  (K&P)

Exhibit 6-4        Claim No. 1845 (HDV)

Exhibit 6-5        Claim No. 1841 (415 East Congress)

Exhibit 6-6        July 15, 2015, Hearing Transcript

Exhibit 6-7        City's Appeal Brief, No. 18-1203 (6th Cir. July 6, 2018)

Exhibit 6-8        Claim 1857 (Shafer & Associates, P.C.)

<u>**EXHIBIT 1**</u>

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**[PROPOSED] ORDER GRANTING THE CITY OF DETROIT'S MOTION**
**FOR THE ENTRY OF AN ORDER ENFORCING THE PLAN OF**
**ADJUSTMENT INJUNCTION AGAINST H.D.V. GREEKTOWN, LLC, 415**
**EAST CONGRESS, LLC, AND K&P, INCORPORATED**

This matter, having come before the Court on the *City of Detroit's Motion*

*for the Entry of an Order Enforcing the Plan of Adjustment Injunction Against*

*H.D.V. Greektown, LLC, 415 East Congress, LLC, and K&P, Incorporated* (the

"<u>Motion</u>")[1], upon proper notice and a hearing, the Court being fully advised in the

premises, and there being good cause to grant the relief requested,

**THE COURT ORDERS THAT:**

1.     The Motion is granted;

2.     The Cabarets must withdraw with prejudice their argument that they

should be provided a fee enhancement in the 2006 Action due to the City's

bankruptcy.

---

[1] Capitalized terms used but not otherwise defined in this Order shall have the
meanings given to them in the Motion.

3. The Cabarets must dismiss or caused to be dismissed with prejudice the appeal currently pending in the Sixth Circuit Court of Appeals, appeal number 18-1203.

4. The City is awarded its reasonable attorneys' fees and costs expended in conjunction with this Motion and the appeal currently pending in the Sixth Circuit Court of Appeals, appeal number 18-1203.

**EXHIBIT 2**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**NOTICE AND OPPORTUNITY TO OBJECT TO CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AGAINST H.D.V. GREEKTOWN, LLC, 415 EAST CONGRESS, LLC, AND K&P, INCORPORATED**

**PLEASE TAKE NOTICE** that on July 11, 2018, the City of Detroit, filed its *Motion for the Entry of an Order Enforcing the Plan of Adjustment Injunction Against H.D.V. Greektown, LLC, 415 East Congress, LLC, and K&P, Incorporated* ("Motion").

Your rights may be affected. You may wish to review the motion and discuss it with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you wish to object to the Court granting the relief sought in the motion, or if you want the Court to otherwise consider your views on the motion, within 14 days, you or your attorney must:

1. Electronically file with the Court a written response, explaining your position at:[1]

> United States Bankruptcy Court
> Eastern District of Michigan
> 211 West Fort Street
> Detroit, Michigan 48226

---

[1] Response or answer must comply with Federal Rule of Civil Procedure 8(b), (c) and (e).

If you mail your response to the Court for filing, you must mail it early enough that the Court will receive it on or before 14 days from the date below. You must also mail a copy to:

> Miller, Canfield, Paddock and Stone, P.L.C.
> Attn: Marc N. Swanson
> 150 West Jefferson, Suite 2500
> Detroit, MI 48226

2. If a response is timely filed and served, the Clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of the hearing.

3. If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought and may enter an order granting the relief.

Respectfully submitted,

By: /s/ Marc N. Swanson
    Jonathan S. Green (P33140)
    Marc N. Swanson (P71149)
    MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    green@millercanfield.com
    swansonm@millercanfield.com

    - and -

    Charles N. Raimi (P29746)
    Deputy Corporation Counsel
    City of Detroit Law Department
    2 Woodward Avenue, Suite 500
    Coleman A. Young Municipal Center
    Detroit, Michigan 48226
    Telephone: (313) 237-5037
    Facsimile: (313) 224-5505
    raimic@detroitmi.gov

       ATTORNEYS FOR THE CITY OF DETROIT

Dated: July 11, 2018

## **EXHIBIT 3**

None

**EXHIBIT 4**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 11, 2018, he filed the *City of Detroit's Motion for the Entry of an Order Enforcing the Plan of Adjustment Injunction Against H.D.V. Greektown, LLC, 415 East Congress, LLC, and K&P, Incorporated* ("Motion") using the court's CM/ECF system which provided notice of the filing to all registered participants in this matter. The undersigned further certifies that on July 11, 2018, a copy of the Motion was served upon the following via United States mail:

Bradley Shafer; Matthew Hoffer
Shafer & Associates, P.C.
3800 Capitol City Blvd., Suite 2
Lansing, MI 48906

By: /s/ Marc N. Swanson
Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Dated: July 11, 2018

# **EXHIBIT 5**

None

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

H.D.V. - GREEKTOWN, L.L.C., ET AL.,

     Plaintiffs,

v.

CITY OF DETROIT,

     Defendant.

Case No. 06-11282

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

_____/

**ORDER ADOPTING IN PART REPORT AND RECOMMENDATION [179];
OVERRULING PLAINTIFFS' OBJECTION [181]; GRANTING IN PART PLAINTIFFS'
SECOND MOTION FOR ATTORNEY'S FEES [174]**

Plaintiffs H.D.V. - Greektown, 415 East Congress, and K&P Inc. filed a Second Supplemental Motion for Attorney's Fees and Costs [174] on September 20, 2016. Defendant City of Detroit filed a Response [176] on October 4, 2016. Plaintiffs filed a Reply [178] on October 18, 2016.

On September 28, 2017, the Magistrate Judge issued a Report and Recommendation ("R&R") [179] recommending that the Court grant in part and deny in part Plaintiffs' Motion. The R&R further recommends that the Court award Plaintiffs' counsel a total of $905,718.56, subject to the orders of the Bankruptcy Court. [Dkt. #180].

For the reasons stated below, the R&R [179] is **ADOPTED in part**; Plaintiffs' Objection [181] is **OVERRULED**; and Plaintiffs' Second Motion for Attorney's Fees [174] is **GRANTED in part and DENIED in part**.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, closely-held Michigan limited liability companies in the adult entertainment business, alleged that Defendant violated their First Amendment rights by hindering the operation of their businesses with regulations.

On August 23, 2011, Plaintiffs obtained a $2.95 million settlement in this § 1983 action. The parties stipulated that the Court would decide the issue of attorney fees pursuant to 42 U.S.C. § 1988 and that Plaintiffs were prevailing parties for purposes of determining such fees and costs.

On October 4, 2011, Plaintiffs filed their first Motion for Attorney Fees and Costs [148], in which they sought over $1.5 million. On May 23, 2016, the Magistrate Judge issued an R&R [162] recommending that the Court grant in part and deny in part Plaintiffs' Motion. Specifically, the R&R recommended that the Court reduce Plaintiffs' request for attorney fees by 60%. The R&R [162] further recommended that the Court decline to grant a fee enhancement, and impose a 3% cap on the fees incurred litigating the attorney fee issue ("fees for fees"). On March 31, 2015, the Court issued an Order [169] adopting the R&R and overruling Plaintiffs' objections.

Plaintiffs filed a Notice of Appeal [170] on April 20, 2015. On appeal, the Sixth Circuit affirmed in part, reversed in part, and remanded to the district court. *H.D.V. - Greektown, LLC v. City of Detroit*, 660 F. App'x 375, 378 (6th Cir. 2016). The Sixth Court held, *inter alia*, that the district court abused its discretion when it failed to adequately explain why a 60% reduction was appropriate. *Id.* at 385. The Court further held that the award must be recalculated in light of the Sixth Circuit's decision in *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 720 (6th Cir. 2016).[1] *Id.* at 387.

In their Second Supplemental Motion for Attorney's Fees and Costs [174], Plaintiffs argue that they are entitled to additional attorney fees and costs, such as costs related to appellate litigation. Plaintiffs further argue that they are entitled to a substantial fee enhancement because of the City of Detroit's bankruptcy status.

In its Response [176], Defendant does not contest Plaintiffs' right to recover the additional attorney fees and costs associated with the appeal. Moreover, Defendant concedes that Plaintiffs' hourly rates are reasonable. *Id.* at 11. Although Defendant maintains that the total amount Plaintiffs seek is excessive, Defendant nevertheless waives any objections contesting the total time incurred by counsel in preparing the instant Motion. However, Defendant argues that Plaintiffs are neither

---

[1] In *Husted*, the Sixth Circuit abrogated *Coulter v. State of Tenn.*, 805 F.2d 146, 151 (6th Cir. 1986) to the extent that *Coulter* imposed a 3% cap on "fees for fees."

entitled to bill in quarter-hour increments for all tasks, nor entitled to an enhancement of fees.

The R&R [179] recommends that the Court grant in part and deny in part Plaintiffs' Motion [174]. In particular, the R&R: accepts Plaintiffs' claimed hourly rates in computing the lodestar as reasonable (Section III-A); accepts Plaintiffs' "fees for fees" award request as reasonable (Section III-B); recommends an 80% reduction to certain fees and a 10% reduction to remaining fees (Section III-C); recommends awarding costs associated with the appeal, but reducing quarter-hour billing to one-tenth hour billing (Section III-D); and recommends denying Plaintiffs' request for a fee enhancement (Section III-D).[2]

On October 12, 2017, Plaintiffs filed an Objection [181] to the R&R. Plaintiffs solely object to Section III-E, which recommends that the Court decline to impose a fee enhancement.

## STANDARD OF REVIEW

This Court reviews *de novo* the portions of the R&R to which objections have been filed. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

---

[2] It appears as though the R&R's use of the letter "D" in the header of the "Request for Fee Enhancement" section was done in error. [Dkt. #179 at 17]. The Court notes that the letter "E" is appropriate for this section. Hereinafter, the Court refers to "D. Request for Fee Enhancement" as "Section III-E."

Page **4** of **10**

**ANALYSIS**

## I.     Sections III-A, III-B, and III-D

First, with respect to Section III-A, Defendant does not contest the reasonableness of Plaintiffs' hourly rates. Accordingly, the Court adopts the R&R's finding that the hourly rates claimed by Plaintiffs in computing the lodestar are reasonable.

Second, with respect to Section III-B, Plaintiffs do not object to the R&R's application of *Husted* and recommendation to award nearly the entire "fees for fees" amount requested. Plaintiffs similarly do not object to the R&R's Section III-D recommendation to bill certain hours in one-tenth hour increments, instead of Plaintiffs' proposed quarter-hour increments. Therefore, the Court adopts Sections III-B and III-D of the R&R. *See Erard v. Johnson*, 905 F. Supp. 2d 782, 789 (E.D. Mich. 2012) (noting that "[w]ith respect to portions of an R & R that no party has objected to, the Court need not undertake any review at all.")

## II.     Section III-C

Plaintiffs do not object to the R&R's Section III-C recommendation to reduce attorney fees attributed to the BZA and Roe Plaintiffs by 80% and remaining attorney fees by 10%. The Court adopts this Section's conclusion, but declines to adopt a portion of the analysis, and offers further clarification to support its ruling to reduce the remaining fees by 10%.

The district court should exclude from its fee calculation hours that were not "reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "There is no precise formula for making these determinations . . . . [and] the district court has discretion in determining the amount of the fee award." *Id.* at 437.

The R&R properly notes that it is the duty of this Court to determine whether the number of hours expended was reasonable. However, the Court finds superfluous the R&R's passage on Plaintiffs' alleged misunderstanding of the concept of reasonableness. Accordingly, the Court declines to adopt this portion of the R&R [179].[3]

Nevertheless, the Court (and Plaintiffs) agree that a 10% reduction of the remaining fees is warranted in this case. The Court adopts the R&R's findings that counsel's initial claims for clearly non-compensable work such as the criminal proceedings, and tangential activity such as communication with the media and watching television, cast doubt on the entire petition, and thereby warrant a modest reduction. *See Ky. Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 419 (6th Cir. 2004) (noting that "[a] 10% reduction is a 'modest amount.'"); *see also Barachkov v. Davis*, 2013 WL 2149104, at *5 (E.D. Mich. May 16, 2013) (holding that a "modest fee reduction is warranted based on redundant and otherwise unnecessary billings submitted by Plaintiffs.").

_____
[3] The Court refers specifically to the passage on pp. 11-13 of the R&R [179] which repeats verbatim the analysis set forth in the previous R&R [162].

Page **6** of **10**

Additionally, the Court adopts the R&R's finding that the "surplus time" Plaintiffs spent preparing the case further justifies a reduction in the award. *See Ky. Rest. Concepts*, 117 F. App'x at 419 (affirming the district court's consideration of the fact that the "amount of overall attorney time [was] excessive" in reducing the fee award).

Finally, the Court agrees with the R&R that a 10% reduction (as opposed to a larger percentage) is appropriate here. This is mainly because counsel has already suffered an 80% deduction in fees for the BZA and Roe Plaintiffs, and an elimination of fees for the 2003 case and criminal proceeding, notwithstanding counsel's diligent work and zealous advocacy on the bulk of the case. Thus, the Court adopts in part Section III-C.

## III.    Section III-E and Plaintiffs' Objection

Plaintiffs' Objection [181] states: "A municipal chapter 9 bankruptcy is a 'rare and exceptional circumstance' justifying the award of enhanced attorney's fees."

On November 12, 2014, the Bankruptcy Court issued an order confirming the City's bankruptcy plan ("the plan"). Defendant City of Detroit maintains that the plan provides, *inter alia*, that the City pay debts such as attorney fees at $.10 to $.13 on the dollar, over a thirty-year period. Because of the plan's potential to prolong payment of attorney fees, Plaintiffs argue that an enhancement of 1000%

is necessary to make them "whole" and to ensure adequate representation of plaintiffs with meritorious civil rights claims.

The district court may award a fee enhancement in "rare and exceptional circumstances." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). Plaintiffs bear the burden of proving that an enhancement is necessary. *Id.* at 553. Plaintiffs must show that ". . . the lodestar fee would not have been adequate to attract competent counsel." *Id.* at 554.

Extraordinary circumstances that warrant fee enhancement include situations in which:

> [1] The method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value . . . .
>
> [2] the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted . . . . [and]
>
> [3] [the] attorney's performance involves exceptional delay in the payment of fees.

*Id.* at 554-56.

Plaintiffs submit that the lodestar does not adequately take into account the ninety percent reduction of their attorney fee award due to the City's bankruptcy filing. Plaintiffs further submit that the fact that they may not receive payment for thirty years demonstrates an exceptional delay in the payment of fees. Finally,

Plaintiffs maintain that capable attorneys will decline to represent meritorious civil rights claimants if their work is not fully compensated.

Plaintiffs have not demonstrated that "rare and exceptional circumstances," as envisioned by *Purdue*, exist in this case. As the Magistrate Judge explained: "There is nothing essential about this case that differentiates it from any other fee petition or award where the City of Detroit was the defendant." [Dkt. #179 at 17]. Plaintiffs have provided no evidence to support their assertion that the lodestar fee is inadequate to attract competent counsel practicing in the City. Surely, there has not been a significant reduction in the filings of civil rights actions against the City since the Bankruptcy Court issued its order in November 2014.[4]

Furthermore, although Plaintiffs may face an exceptional delay in the payment of fees, the delay was not "unjustifiably caused by the defense." *See Purdue*, 559 U.S. at 556 (explaining that fee enhancement may be appropriate particularly where the defense unjustifiably causes the delay). The R&R appropriately characterizes Plaintiffs' Objection as a request to modify the Bankruptcy Court's final order. The Court cannot, and will not, grant Plaintiffs' sweeping request. *See In re City of Detroit*, No. 13-53846, 2015 WL 603888, at *3 (Bankr. E.D. Mich. Feb. 12, 2015) (noting that 11 U.S.C. § 943 authorizes

---

[4] In fact, the Court's review of CM/ECF reveals that more civil rights actions were instituted in 2017 than in 2013. The Court notes that of the cases docketed under the nature of suit code "440 Civil Rights: Other," 346 cases were filed in 2013, while 355 cases were filed in 2017.

bankruptcy courts to "monitor the payment of fees and the reimbursement of expenses in or in connection with a chapter 9 case . . . ."). As the R&R explains, "the nature of bankruptcy . . . is not a 'rare and exceptional' circumstance as envisioned by *Perdue*." Accordingly, the Court overrules Plaintiffs' Objection and adopts Section III-E of the R&R.

CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the R&R [179] is **ADOPTED in part**.

**IT IS FURTHER ORDERED** that Plaintiffs' Objection [181] is **OVERRULED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Second Supplemental Motion for Attorney's Fees and Costs [174] is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiffs' counsel is awarded a total of **$905,718.65** in attorney fees and costs, subject to the orders of the Bankruptcy Court in the City of Detroit municipal bankruptcy case.

**SO ORDERED**.


                                        s/Arthur J. Tarnow
                                        Arthur J. Tarnow
Dated: January 25, 2018                 Senior United States District Judge

Case No. 18-1203

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

**H.D.V. - GREEKTOWN, LLC;
415 EAST CONGRESS, LLC;
K&P, INCORPORATED,**
Plaintiffs – Appellants,

**v.**

**CITY OF DETROIT,**
Defendant – Appellee
_____

On Appeal from the United States District Court
For the Eastern District of Michigan (Detroit)
_____

**APPELLANTS' PRINCIPLE BRIEF**
_____

Bradley J. Shafer (P36604); Matthew J. Hoffer (P70495)

**SHAFER & ASSOCIATES, P.C.**, 3800 Capital City Blvd. #2, Lansing MI 48906

(517) 886-6560; Matt@bradshaferlaw.com

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTERESTS

Pursuant to FRAP 26.1 and 6 Cir. R. 26.1, <u>H.D.V.-Greektown, LLC</u>, makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly-owned corporation?

No

If the answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

N/a

2.      Is there a publicly-owned corporation, not a party to the appeal, that has a financial interest in the outcome?

No

If the answer is YES, list the identity of such corporation and the nature of the financial interest:

N/a

<u>/s/ *Matthew J. Hoffer*   </u>                    Dated: <u>April 23, 2018</u>
(Signature of counsel)

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTERESTS

Pursuant to FRAP 26.1 and 6 Cir. R. 26.1, 415 East Congress, LLC, makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly-owned corporation?

No

If the answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

N/a

2.      Is there a publicly-owned corporation, not a party to the appeal, that has a financial interest in the outcome?

No

If the answer is YES, list the identity of such corporation and the nature of the financial interest:

N/a

/s/ *Matthew J. Hoffer*                Dated: April 23, 2018
(Signature of counsel)

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTERESTS

Pursuant to FRAP 26.1 and 6 Cir. R. 26.1, <u>K&P, Inc</u>., makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly-owned corporation?

No

If the answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

N/a

2.      Is there a publicly-owned corporation, not a party to the appeal, that has a financial interest in the outcome?

No

If the answer is YES, list the identity of such corporation and the nature of the financial interest:

N/a

<u>/s/ *Matthew J. Hoffer*</u>                    Dated: <u>April 23, 2018</u>
(Signature of counsel)

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTERESTS (H.D.V. –Greektown, LLC)................................................................... ii

DISCLOSURE OF CORPERATE AFFILATIONS AND FINANCIAL INTERESTS (415 East Congress, LLC) ................................................ iii

DISCLOSURE OF CORPERATE AFFILIATIONS AND FINANCIAL INTERESTS (K & P, INC.)......................................................................iv

TABLE OF CONTENTS ...........................................................................v

TABLE OF AUTHORITIES ................................................................. vii

STATEMENT IN SUPPORT OF ORAL ARGUMENT .................................... viii

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF ISSUE PRESENTED FOR APPEAL.........................................3

STATEMENT OF THE CASE...................................................................4

SUMMARY OF THE ARGUMENT ....................................................16

ARGUMENT ......................................................................................18

    I.    **THE DISTRICT COURT ABUSED ITS DISCRETION BY REJECTING PLAINTIFFS' REQUEST FOR ENHANCED ATTORNEY FEES UNDER 42 U.S.C. § 1988 BECAUSE THE LODESTAR CALCULATION IN THIS CASE RESULTED IN AN AWARD WHICH IS INADEQUATE TO ATTRACT COMPETENT COUNSEL WHICH WILL BE RECEIVED WITH EXTREME DELAY**......................................................19

    II.    **A FEE ENHANCEMENT FOLLOWING A MUNICIPAL DEFENDANT'S CHAPTER NINE BANKRUPTCY IS NECESSARY TO EFFECTUATE THE PURPOSE OF 42 U.S.C. § 1988** ..............................................................26

CONCLUSION ........................................................................................28

CERTIFICATE OF COMPLIANCE .......................................................30

CERTIFICATE OF SERVICE ................................................................31

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..............32

# TABLE OF AUTHORITIES

**Cases**

Barnes v. City of Cincinnati, 401 F.3d 729 (6th Cir. 2005) ....................................20

Blum v. Stetson, 465 U.S. 886 (1984) ...................................................................20

Deja Vu of Nashville, Inc. v. The Metropolitan Government of Nashville and Davidson County, 421 F.3d 417 (6th Cir. 2005), *cert denied,* 547 U.S. 1206 (2006) ................................................................................................................ 18

Gonzalez v. City of Maywood, 729 F.3d 1196 (9th Cir. 2013).........................23, 26

Gray ex rel. Alexander v. Bostic, 613 F.3d 1035, 1045 (11th Cir. 2010) ..............21

H.D.V.-Greektown v. City of Detroit, 568 F.3d 609 (6th Cir. 2009).......................9

Imwalle v. Reliance Prod., Inc., 515 F.3d 531 (6th Cir. 2008).................................18

In re City of Detroit, Mich., United States Bankruptcy Court for the Eastern District of Michigan, Case No. 13-53846.......................................................................13, 24

Leary v. Daeschner, 228 F.3d 729 (6th Cir. 2000) ..................................................18

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air ("Delaware Valley I"), 478 U.S. 546, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986) ..........................*passim*

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air("Delaware Valley II"), 483 U.S. 711, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987).................... 20, 26-27

Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542 (2010) ..................................*passim*

S.A. Restaurants, Inc. v. Deloney, 909 F.Supp.2d 881 (E.D. Mi. 2012).................5

Seals v. Quarterly County Court of Madison County, Tennessee, 562 F.2d 390 (6th Cir. 1977) ...............................................................................................................19

The Northeast Ohio Coalition for the Homeless v. Husted, 831 F.3d 686 (6th Cir. 2016) ......................................................................................................... 14-15

Wilson-Simmons v. Lake Cnty. Sheriff's Dep't, 207 F.3d 818 (6th Cir. 2000) .....18

**Statutes**

28 U.S.C. § 1291 ...................................................................1

28 U.S.C. § 1331 ...................................................................1

28 U.S.C. § 1343(a)(3) ...........................................................1

42 U.S.C. § 1983 ...............................................................1, 16

42 U.S.C. § 1988 ..............................................................*passim*

**Other Authorities**

David Haynes, *What is Chapter 9 Bankruptcy?*, The Balance, Apr. 28, 2017 ........*25*

Joe Guillen, *Jones Day Cuts $17.7 million from Detroit Legal Bills*, Jan. 16, 2015, http://www.freep.com/story/news/local/detroit-bankruptcy/2015/01/16/detroit-bankruptcy-fee-discounts/21887423/ ....................................................*23*

42 U.S.C. § 1988 ..............................................................*passim*

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

This appeal concerns a fee award under 42 U.S.C. § 1988 and the availability of fee enhancement in circumstances where, as the result of the defendant's municipal bankruptcy, the lodestar amount awarded to plaintiffs' counsel does not represent a reasonable fee for the work performed in the course of the underlying civil rights litigation. Because this appeal presents novel legal and policy issues which, to

Plaintiffs' knowledge, have *never* been adjudicated by a state or federal court, Plaintiffs respectfully request that oral argument be granted.

Simply put, civil rights attorneys need an answer to the question of whether municipal bankruptcy—an extraordinary circumstance in and of itself—justifies the award of litigation fees above the lodestar amount. Beyond this legal question, there is also the practical matter of whether a municipality may deter meritorious civil rights litigation by indicating its intent to file for Chapter Nine bankruptcy. 42 U.S.C. § 1988 recognizes the obvious: would-be civil rights plaintiffs cannot protect their constitutional rights if they do not have access to effective counsel given the risks of this genre of litigation and the fact that fees may exceed the actual relief in a particular case. The decision below places a municipality's balance sheet above the civil rights of its citizens. Plaintiffs assert that oral argument is necessary to address the important question of whether municipal bankruptcy is an extraordinary circumstance meriting an upward departure from the lodestar figure.

# JURISDICTIONAL STATEMENT

## A.    Basis for District Court's Jurisdiction

Plaintiff filed a complaint in the district court under 42 U.S.C. § 1983, contending that certain City of Detroit's ordinances, procedures, and actions were contrary to the United States Constitution, and seeking injunctive relief, declaratory relief, damages, costs and attorney's fees. The district court therefore had federal question jurisdiction under 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. § 1343(a)(3).

## B.    United States Court of Appeals Jurisdiction

Appellants appeal the District Court's final decision on Plaintiffs' Second Motion for attorney fees and costs pursuant to 42 U.S.C. § 1988. The Magistrate Judge entered a report and recommendation on the motion. R.179, PgID#'s 5886-5904. The district court entered an order adopting the report and recommendation. R.182, PgID#'s 5921-30. Appellants seek review of the district court's final decision. This Court thus has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## C.    Filing Dates Establishing the Timeliness of the Appeal.

The district court entered its final decision on January 25, 2018. R.182, PgID#'s 5921-30. The Appellants filed their notice of appeal on February 22, 2018. [PgID# 5931]. The appeal is timely.

1

**D.    Assertion of Final Order or Judgment.**

Appellants assert that this appeal is from a final order that disposes of all of the parties' claims.  All the merits claims were disposed of prior to the parties litigating the attorney fee award under 42 U.S.C. § 1988.

## <u>STATEMENT OF ISSUE PRESENTED FOR APPEAL</u>

The sole issue presented on appeal is whether a municipal bankruptcy, which results in a lodestar attorney fee award that does not adequately measure the attorney's true market value and which causes an exceptional delay in the payment of fees, can justify an enhancement to an attorney fee award under 42 U.S.C. § 1988.

3

## STATEMENT OF THE CASE

The action below arose out of the City of Detroit's (the "City" or "Detroit") unconstitutional attempt to prevent Plaintiffs from operating and from transferring certain licenses and permits necessary to operate an adult cabaret at 415 East Congress (the "Premises").[1]   Plaintiff K & P, Inc. ("K&P"), had operated a bar/nightclub on the Premises since 1986.   Second amended complaint ("Complaint"), R.84, PgID#'s 2391, 2404, ¶'s 32-33, 73.   K&P obtained a "Class D Adult Cabaret" license from Detroit in 1994 and began presenting "topless" entertainment in 1997.  Id. at PgID#'s 2392, 2398, 2402, ¶'s 34, 55 and 69.  Changes to the Michigan Liquor Control Code in 1998 created a "topless activity permit" ("TAP") requirement for liquor serving venues to present topless entertainment.  Id. at PgID# 2409, ¶92.  K&P applied for and received a TAP.  Id. at PgID#'s 2405-08, ¶'s 79-82.

On October 2, 2002, Plaintiff H.D.V.-Greektown, LLC ("HDV"), entered into a conditional purchase agreement to purchase all of K&P's assets, including its liquor license, TAP, and other activity permits, with the intent of operating a liquor-serving nightclub that featured non-obscene, topless, female performance entertainment on the Premises.  Id. at PgID#'s 2385-86, 2391-92, 2406, ¶'s 15, 33,

---

[1] Plaintiffs provide a full recitation of the facts below to illustrate the efforts taken to security civil rights relief prior to their fees becoming subject to the bankruptcy order.

and 84. HDV applied to the Michigan Liquor Control Commission ("MLCC") for a transfer of the liquor license and related permits (including the TAP) on or about December 13, 2002 (the "Transfer Application").[2] Detroit took the position that its City Council was required to approve all activity permit transfers and, after initial consideration by the MLCC, the Transfer Application was forwarded to the City for consideration and action. Id. at PgID#'s 2406, 2412, ¶'s 84, 103. As of June 24, 2003, the Transfer Application was ripe for review, all necessary documents having been forwarded to the City Council. Id. at PgID#'s 2409, 2412, ¶'s 93 and 103-04.

Nevertheless, Detroit failed to act, and took the position that Condition 18 of the Zoning Grant initially issued by Detroit to K&P ("Condition 18"), which allowed the presentation of male, *but not female*, live adult entertainment precluded the approval of the Transfer Request. This caused the Plaintiffs to file a lawsuit in the district court against Detroit (the "Initial Action"). Complaint, R.84, PgID#'s 2382, 2399, 2406-07, ¶'s 2, 57, and 85. The Initial Action concluded with a stipulated order enjoining the City from enforcing Condition 18. Id. at PgID# 2382; ¶2; Order, R .84-6, PgID#'s 2509-13. Plaintiffs' remaining claims in the Initial Action were dismissed without prejudice to allow the City to rectify its unconstitutional conduct. Complaint, R.84, PgID#'s 2382, 2406-07, ¶'s 2, 85; Order, R.84-6, PgID#'s 2509-

---

[2] The TAP licensing process was later declared unconstitutional in another action. *See* S.A. Restaurants, Inc. v. Deloney, 909 F.Supp.2d 881 (E.D. Mi. 2012).

13.

However, instead of correcting its action, the City continued to sit on the Transfer Application. In addition, municipal officials actually sought to apply against Plaintiffs the very provision (Condition 18) enjoined by the stipulated order concluding the Initial Action. Through its Building & Safety Engineering Department ("B&SE"), Detroit issued two zoning violation notices against K&P. At a hearing of the Detroit Board of Zoning Appeals ("BZA"), Assistant City Attorney Marcileen Pruitt-Simms attempted to enforce Condition 18 against K&P:

> CHAIRPERSON BEATTY: Ms. Sims, doesn't the order of the Court specifically identify Condition 18 as being struck from the document?
>
> ATTORNEY PRUITT-SIMMS: That's not the way that I read it, no. I read it as restricting, striking the unenforceable restraint on speech. That is the way that I read it and that is the way the City of Detroit interprets it.
>
> \*   \*   \*
>
> CHAIRPERSON BEATTY: And your point - - you know, we can go back and forth on this. Obviously we are not trying to change anybody's mind. We are just trying to get an understanding. The City says it doesn't apply - - I mean, that it does apply. You didn't say it didn't apply. You are saying that it's not all gone. There is some considerable amount of 18 still alive and that is basically what you are saying, you can still limit the use based on 18?
>
> ATTORNEY PRUITT-SIMMS: Yes.

Joint Pretrial Order, R.135, PgID#'s 3894-95, ¶'s 85-86. *See also* Id. at PgID#'s 3895-98, ¶'s 87-91.

When the BZA hearing concluded, the violation notice was dismissed and

remanded to the B&SE for the possibility of a show cause hearing to determine if K&P had violated its zoning grant (the document containing Condition 18). Id. at Page ID # 3898, ¶'s 91-92. "K&P [] involuntarily but significantly curtailed the engagement of 'topless' performance dance entertainment upon the Premises as a result of the continued, but baseless, violation notices filed against it by the B&SE . . . ." Complaint, R.84, PgID# 2454, ¶227.

The lawsuit directly below was filed on March 28, 2006, after Detroit failed to correct the infirmities alleged in the Initial Action, and after Detroit failed to act upon the 2002 Transfer Application. At the initial August 28, 2006 scheduling conference (see Minute Entry of 8/28/2006), the undersigned explained to the district judge that the matter could be resolved through litigating a series of motions for partial summary judgment, one built upon the other. The Court directed Plaintiffs to file their first motion (Order, R.14, PgID# 452, ¶2), but the deadline for filing was extended to November 30, 2006, while Plaintiffs met with representatives of the Detroit City Council to attempt to resolve the dispute without further litigation. Order, R.15, PgID# 457, ¶4.

During meetings leading up to vote on the Transfer Application, Detroit City Councilwoman Monica Conyers, wife of U.S. Congressman John Conyers, solicited, a bribe for Ms. Conyers' support of the Transfer Application through an intermediary by the name of Sam Riddle. The Plaintiffs refused to pay the bribe,

and on November 15, 2006, the Detroit City Council voted to deny the transfer application with Ms. Conyers in the Majority.  Complaint, R.84, PgID#'s 2415-16, ¶115; Council Minutes, R.105-6, PgID#'s 3166-67.

Plaintiffs filed their First Motion for Partial Summary Judgment ("First Motion") on November 29, 2006.  R.17, PgID#'s 612-661 (refiled as R.23, PgID#'s 803-848).  After briefing and oral argument, the district court entered its order on the First Motion, declaring the challenged adult use provisions of the Detroit zoning ordinance to be unconstitutional and directing the City to revise its zoning ordinance.  Order, R.48, PgID#'s 1465-77.  However, the court declined to enjoin Detroit from enforcing the adult use provisions and declined to declare Plaintiffs' operation of an adult cabaret on the Premises to be a lawful conforming use.  Plaintiffs moved to alter or amend that order, seeking the injunctive and declaratory relief that had been refused.  Motion, R.51, PgID#'s 1503-26.  On February 7, 2008, the district court entered an order denying that motion.  Order, R.69, PgID#'s 1679-80.

In the interim, Plaintiffs filed their Second Motion for Partial Summary Judgment ("Second Motion") on April 18, 2007, challenging the constitutionally of certain Detroit sign regulations and the constitutionality of Detroit's failure to consider numerous sign applications that the Plaintiffs had filed.  Motion, R.29, PgID#'s 1088-1120.   On February 2, 2008, the district court entered an Order finding Detroit's enforcement of the challenged sign provisions to be

unconstitutional, but declining to declare the provisions to be unconstitutional on their face or to enjoin their enforcement.  Order, R.70, PgID#'s 1681-98.

Plaintiffs appealed the adverse aspects of the district court's rulings on the First Motion and the Second Motion.  On June 12, 2009, this Court issued an opinion directing the district court to grant Plaintiffs' request "that it declare K & P's use of the Premises lawful and enjoin the City from enforcing the adult-use provisions of the zoning ordinance."  H.D.V.-Greektown v. City of Detroit, 568 F.3d 609, 625 (6th Cir. 2009).  While this Court affirmed the district court's holding that the challenged sign provisions were facially constitutional, it ordered, at Plaintiffs request, a modification of the injunctive relief to allow Plaintiffs to erect a sign with a substitute business name.  Id. at 625-626.  After the City's motions for rehearing and rehearing en banc to this Court were denied, the district court entered an Order implementing this Court's Mandate (R.89, PgID#'s 2819-20) on August 25, 2009, and an amended Order on August 27, 2009 (R.90, PgID#'s 2821-22).

On September 25, 2009, Detroit moved the district court (R.92) to revise its Order of August 6, 2007 regarding the First Motion.  Plaintiffs moved ahead and filed their Third Motion for Partial Summary Judgment ("Third Motion"; R.101, PgID#'s 3032-65) on October 27, 2009, generally challenging Detroit's procedures and criteria for considering TAP transfer requests and specifically challenging the City Council's rejection of HDV's Transfer Application.

9

The district court denied Detroit's motion to revise on March 12, 2010. Order, R.117, PgID#'s 3317-23.

On September 8, 2010, the district court entered an Order granting in part and denying in part the Third Motion. R.122, PgID#'s 3349-74.

The district court's order on the Third Motion declared the City's procedures and criteria used for considering MLCC activity permit transfer requests to be unconstitutional on their face and enjoined the City from enforcing the provisions, but declined to declare the denial of HDV's Transfer Application was an unconstitutional act. Id. at PgID# 3366. Plaintiffs immediately moved the district court to alter or amend that order. Motion, R.123, PgID#'s 3375-404. The district court granted the motion in part, declaring Detroit's denial of HDV's Transfer Application to be an unconstitutional act. Order, R.126, PgID#'s 3414-15.

At that point, Plaintiffs had achieved a full victory on all of their constitutional claims, leaving only the City's liability for damages and the amount of damages remained to be tried. *See, e.g.*, Joint Pretrial Order, R.135, PgID#'s 3905-06, Sec. G, ¶'s 1-2. The parties prepared for trial and filed motions *in limine*. R.132-134, PgID#'s 3425-771. The Court referred the matter to a settlement conference (R.136, PgID# 3924), which occurred only one day before the scheduled trial and was administered by Magistrate Judge R. Steven Whalen who had no previous familiarity whatsoever with the case, as District Judge Julian Abele Cook, Jr. had handled all

proceedings in the action below.    While the settlement conference did not resolve the damage claims, those claims were settled by counsel on the evening before trial was to commence.  Minute Entries of 3/28/2011 and 3/29/2011.

On August 23, 2011, the district court approved and entered a Consent Decree agreed upon and submitted by the parties.  R.145, PgID#'s 4317-4321.  The Consent Decree provided that Detroit was to pay Plaintiffs $2,950,000.00 in full satisfaction of Plaintiffs' damage claims.  Id. at PgID# 4318, ¶2.  It further recognized that HDV could operate its intended business on the Premises, subject to applicable laws and related restrictions.  Id. at PgID#'s 4319-20, ¶'s 6-7.  The parties stipulated, and the district court ordered, that Plaintiffs were "'prevailing parties' within the meaning of 42 U.S.C. § 1988 up to and including the date set for trial, March 29, 2011."  Id. at PgID# 4318, ¶5(A).

On October 4, 2011, Plaintiffs filed their (first) motion for attorney fees and costs.  Motion, R.148, PgID#'s 4329-4662.  Therein, they sought with detailed affidavits, billing entries, and costs ledgers, among other things, $1,049,994.50 in attorney fees for the action below; $30,475.85 in out-of-pocket costs for the action below; $141,746.00 in attorney fees for the Initial Action; $1,616.58 in out-of-pocket costs for the Initial Action; and a 10% fee enhancement.  Motion, R.148, PgID#'s 4334-35, ¶16.  By exercising the requisite billing judgment, Plaintiffs deleted hours equivalent to $95,856.50 that counsel felt could arguably be found to

be "excessive, redundant, or otherwise unnecessary," or that were duplicative billings of multiple attorneys even though precedent of this Court permitted such compensation.  Affidavit, R.148-3, PgID#'s 4425-27, ¶12.

In response, Detroit did *not* dispute the hourly rates claimed by Plaintiffs' counsel.  Response, R.152, PgID# 4670-71, ¶6.  Rather, it attached to its response as series of charts that its attorneys had created which attempted to demonstrate that the billings were excessive.  R.152-08-R.152-09, PgID#'s 4780-90, R.152-12-R.152-14, PgID#'s 4819-31, R.152-21, PgID# 4849, R.152-23, PgID#'s 4851-53.

On February 23, 2012, Plaintiffs submitted a supplemental request for attorney fees and costs associated with preparing the reply to Detroit's response to the Plaintiffs' motion for attorney fees and costs, seeking an additional $21,980.00 in fees and $1,539.34 in costs.  Supplement, R.157, PgID#'s 5048-60.

Plaintiffs' motion for attorney fees and costs was referred to Magistrate Whalen.  Order, R.159, PgID# 5069.  On May 23, 2013, Magistrate Whalen issued a Report and Recommendation ("R&R") wherein he recommended disallowing all fees and costs related to the Initial Action and the Conyers/Riddle matters; reducing the remaining requested (non-attorney fee motion) fees by 60%; limiting the fees for the attorney fee/costs motion to 3% of what he ultimately recommended be awarded in other fees; reducing the costs in the action below also by 60%; denying any

12

enhancement; and awarding only $372,118.19 in fees and only $13,282.93 in costs. R&R, R.162, PgID#'s 5114-34.

Plaintiffs filed objections to the R&R (R.164, PgID#'s 5140-73). Thereafter two things happened. First, Detroit filed for Municipal bankruptcy, staying the attorney fee motion. Text-Only Order of 8/23/2013. Second, Judge Cook, Jr. retired, and the case was reassigned to Judge Arthur J. Tarnow. Text-Only Order of 10/29/2014.

On November 12, 2014, the Bankruptcy Court of the Eastern District of Michigan issued its order confirming the bankruptcy plan for the City of Detroit, which the City will claim relegates Plaintiffs' attorney fee request to be paid at 10-13 cents on the Dollar over 30 years. *See* In re City of Detroit, Mich., Case No. 13-53846 (Bankr. E.D. Mich. Nov 12, 2014) (Doc 8272, p. 184, ¶u; Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit); In re City of Detroit, Mich., Case No. 13-53846 (Bankr. E.D. Mich. May 5, 2014) (Doc 4391, p. 56; "Class 14 - Other Unsecured Claims" have an "Estimated Percentage Recovery" of 10-13 percent).

On March 31, 2015, Judge Tarnow, who did not entertain oral argument and who had no familiarity whatsoever with the merits portion of the lawsuit below (or

the Initial Action for that matter), issued an order that essentially adopted the R&R.[3] Order, R.169, PgID#'s 5214-5223. Therein, the judge denigrated the constitutional importance of the action (PgID# 5217) and asserted that the "fundamental purpose" of 42 U.S.C. § 1988 really doesn't apply to the Plaintiffs because they are "extraordinarily profitable companies whose access to the judicial and political processes is far greater than most citizens"[4] (id.). He concludes, thereby, that a 60% fee award reduction is proper because of, he asserts, the "tangential relationship compelling civil rights have to this case" (PgID# 5218), and without any explanation or analysis, he summarily concluded -- in regard to the out-of-pocket costs claimed -- that "it was not reasonable to incur them" (PgID# 5219).

Plaintiffs appealed Judge Tarnow's order (Notice of Appeal, R. 170, PgID# 5224), which was assigned Case No. 15-1449. On August 23, 2016, this Court reversed in part, concluding that the district court judge did not adequately explain the 60% reduction and noting the fee must be recalculated in light of The Northeast

---

[3] Because the district court adopts in full the Magistrate's Report and Recommendation and provides only an abbreviated analysis of the reasons for such adoption, Plaintiffs often will cite hereinafter to the Report and Recommendation rather than the final ruling of the district court judge.

[4] He reaches this conclusion without any evidentiary support whatsoever, and by ignoring the fact that as a direct and proximate result of the unconstitutional and illegal actions and inactions of various Detroit officials, Plaintiff K&P was severely limited in the type and scope of entertainment it could present, and Plaintiff HDV was delayed in being able to open its intended business, *for over 8 years.*

14

<u>Ohio Coalition for the Homeless v. Husted</u>, 831 F.3d 686 (6th Cir. 2016).  (Opinion, R. 172, PgID# 5230).

On September 20, 2016, Plaintiffs filed their Second Supplemental Motion for Attorney's Fees and Costs, which sought fees and costs related to the successful appeal, and a 1000% enhancement in fees to offset those fees that would be subject to the bankruptcy cram-down order.  (R. 178, PgID# 5879 *et seq*.).  The matter was again referred to Magistrate Whalen.  (Order of Reference, R. 175, PgID# 5785).

The Magistrate awarded fees and costs as follows:

Attorney Fees for Original Fee Petition: $774,501.55
Attorney Fees for Appeal and Post-Remand: $ 79,215.50

**Total Attorney Fees: $853,717.05**

Costs for Original Fee Petition: $32,092.43
Costs for for Appeal and Post-Remand: $4,353.17

**Total Costs: $36,445.60**

**Grand Total: $890,162.65**

(Report and Recommendation, R. 179, PgID# 5901-02).

As to the requested enhancement, finding no authority that the rare occurrence of a municipal bankruptcy could justify an enhancement, the Court denied the requested enhancement.  (<u>Id.</u> at PgID# 5902).  The Court also entered an Errata Sheet, noting a missing fee item, and calculating the final award to be $905,718.65.  (R. 180, PgID# 5909).

15

Plaintiff objected to the Report and Recommendation solely on the issue of the requested enhancement.  (R. 181, PgID# 5907 *et seq*.).  The district court agreed with the Magistrate, finding that a municipal bankruptcy was not a "rare and exceptional circumstance" within the meaning of <u>Perdue v. Kenny A. ex rel. Winn</u>, 559 U.S. 542, 552 (2010).

## SUMMARY OF THE ARGUMENT

In the lawsuit below brought pursuant to 42 U.S.C. § 1983, Plaintiffs were successful on virtually every constitutional claim they litigated over a period of eight years.  The redress obtained included a consent decree awarding Plaintiffs $2.95 Million in damages, and numerous forms of declaratory and injunctive relief whereby a variety of City of Detroit ordinances and formal municipal procedures, as well as various actions by City officials, were permanently enjoined as being unconstitutional (ultimately obtained only by a successful appeal to this Court and favorable rulings on two motions to alter or amend judgments).

Under all precedents from this Court, Plaintiffs were then entitled, pursuant to 42 U.S.C. § 1988, to a "fully compensatory" attorney fee award, which they did not recieve.  Instead, due to Detroit's extensive and extended violation of Plaintiffs rights, Plaintiffs' award is subject to the City's bankruptcy, resulting in a fee that does not adequately compensate counsel for their time and will be received with

16

extreme delay.  Both a fee award that does not represent the attorney's value and an extreme delay in receiving payment can justify an upward enhancement from the lodestar amount.  *See* Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554-56 (2010).  Both issues are present here, making an enhancement available and appropriate.  A contrary decision would undercut the purpose of 42 U.S.C. § 1988 in municipalities that are facing bankruptcy or could present the Plaintiffs' bar with the fear of bankruptcy before a case resolves.

17

# ARGUMENT

***Standard of Review***:  This is an appeal of an award of attorney fees and costs.

This Court *generally* reviews "a district court's award of attorney fees under 42 U.S.C. § 1988 based upon an abuse of discretion standard." Wilson-Simmons v. Lake Cnty. Sheriff's Dep't, 207 F.3d 818, 823 (6th Cir. 2000).  Such an abuse exists when the district court "relies upon clearly erroneous factual findings, applies the law improperly, or uses an erroneous legal standard." Deja Vu of Nashville, Inc. v. The Metropolitan Government of Nashville and Davidson County, 421 F.3d 417, 423 (6th Cir. 2005), *cert denied,* 547 U.S. 1206 (2006).

Normally, the district court's exercise of discretion in an attorney fee request is entitled to "substantial deference" because of the district court's "superior understanding of the litigation . . . ." Imwalle v. Reliance Prod., Inc., 515 F.3d 531, 551 (6th Cir. 2008).  No such deference should be granted here since the judge who decided the attorney fee motion took no part whatsoever in the "merits" portion of the actions below.  In addition, because the issue is whether a municipal bankruptcy *can* justify an enhancement, Plaintiffs assert that the court apply a de novo standard to determine whether the district court applied an erroneous legal standard.  *See* Leary v. Daeschner, 228 F.3d 729, 736-37 (6th Cir. 2000) (although preliminary injunctions are reviewed for an abuse of discretion, when "pure legal conclusions

are involved in the district court's determination, however, those conclusion are subject to de novo review").

Thus, the effective standard of review here is de novo.

## I. THE DISTRICT COURT ABUSED ITS DISCRETION BY REJECTING PLAINTIFFS' REQUEST FOR ENHANCED ATTORNEY FEES UNDER 42 U.S.C. § 1988 BECAUSE THE LODESTAR CALCULATION IN THIS CASE RESULTED IN AN AWARD WHICH IS INADEQUATE TO ATTRACT COMPETENT COUNSEL WHICH WILL BE RECEIVED WITH EXTREME DELAY.

The Civil Rights Attorney's Fees Act, 42 U.S.C. § 1988, states that in an action to enforce certain federal civil rights provisions, the court may award the prevailing party a reasonable attorney's fee as part of the costs to be borne by the losing party. In Perdue v. Kenny A. ex rel Winn, the Supreme Court held that a reasonable fee for the purposes of 42 U.S.C. § 1988 is one that "is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." 559 U.S. 542, 552 (2010). This Court has similarly held that the statute should be construed liberally in order to effectuate its purpose. Seals v. Quarterly County Court of Madison County, Tennessee, 562 F.2d 390, 393 (6th Cir. 1977).

To Plaintiffs' knowledge, no court has applied Perdue to determine whether a municipal defendant's bankruptcy may constitute "rare and exceptional circumstances" and justify fee enhancement—likely because municipal bankruptcy is itself a rare event. Still, enhancement under these circumstances is compelled by

the purpose of the Civil Rights Attorney's Fees Act and is entirely consistent with Perdue's conceptual framework. Moreover, fee enhancement following a civil rights settlement and subsequent bankruptcy provides an objective and reviewable basis for appellate courts to review fees and avoids upsetting the expectations of settling parties. Finally, far from seeking a "windfall," Plaintiffs request enhancement only to ensure that counsel receives a reasonable fee for its role in this litigation.

The lodestar method—which multiplies the reasonable number of hours spent working on a case by the reasonable hourly billing rate—is generally used to calculate attorney fees under § 1988. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565, 106 S. Ct. 3088, 3098, 92 L. Ed. 2d 439 (1986) ("Delaware Valley I"), supplemented, 483 U.S. 711, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987) ("Delaware Valley II"). The Perdue decision affirmed that in "rare and exceptional circumstances" where the lodestar fee is "inadequate to attract competent counsel," a district court may award enhanced fees beyond the lodestar amount. Perdue, 559 U.S. at 552, 556 (quoting Blum v. Stetson, 465 U.S. 886, 894 (1984)). The decision to award enhanced fees under § 1988 is reviewed for abuse of discretion. Barnes v. City of Cincinnati, 401 F.3d 729, 746-47 (6th Cir. 2005).

To prove the necessity of a fee enhancement, a party must first overcome the presumption that the lodestar amount (reasonable fee multiplied by reasonable hour amount) is sufficient to achieve § 1988's objective of encouraging meritorious civil

20

rights litigation.  Delaware Valley I, 478 U.S. at 565.  The Supreme Court has stated that this will only occur in rare and exceptional circumstances because the lodestar amount "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." Id. at 565-66.  Thus, the burden is on the fee applicant to produce specific evidence demonstrating that fee enhancement is necessary to provide fair and reasonable compensation.  Perdue, 559 U.S. at 553.  Any enhancement must be calculated using objective criteria capable of being reviewed by an appellate court. Id. at 543-44.  This ensures that enhancement will not be awarded based on the court's mere "supposition, surmise, speculation, and subjective beliefs."  Gray ex rel. Alexander v. Bostic, 613 F.3d 1035, 1045 (11th Cir. 2010).  The "objective criteria" burden may be met "by applying a standard rate of interest to the qualifying outlays of expenses," or by a similar method when attorney's fees are at issue. Perdue, 559 U.S. at 543-44, 556.

In Perdue, the Supreme Court recognized that the "rare and exceptional circumstances" supporting a fee enhancement may include "exceptional delay in the payment of fees," especially "where the delay is unjustifiably caused by the defense."  559 U.S. at at 556.  This comports with the 42 U.S.C. § 1988's basic purpose of encouraging attorneys to take on civil rights cases on a contingent basis. Id. (stating that "an enhancement may be appropriate where an attorney assumes these costs in the face of unanticipated delay").  However, the Court found that the

21

district court's enhancement—which had the effect of increasing the top rate for the attorneys to more than $866 per hour—was not based upon objective criteria and constituted an abuse of discretion. Id. at 557-58. It held that "unjustified enhancements that serve only to enrich attorneys" disturb the expectation of settling parties, creating a disincentive to resolve the dispute, and are frequently borne by state and local governments with limited budgetary resources to provide public services; such enhancements are therefore inconsistent with the goals of § 1988. Id. at 559. "Section 1988 was enacted to ensure that civil rights plaintiffs are adequately represented, not to provide . . . a windfall" to their attorneys. Id. at 559 n. 8.

The amount requested here is far from an unjustified enhancement that "serve[s] only to enrich attorneys." Perdue, 559 U.S. at 559. Rather, it is absolutely necessary to enable adequate representation of plaintiffs with meritorious civil rights claims. Id. at 552. In Perdue, the Court opined that defendants are less likely to settle when there is uncertainty regarding the amount of fees that will eventually be awarded by a judge with unlimited fee enhancement discretion. Id. at 558-59. Here, there is no risk that the requested fee enhancement will fall outside the expectations of the settling parties because the 2011 consent decree between Plaintiffs and the City stipulated that Plaintiffs would be considered prevailing parties and that attorney's fees would be awarded to Plaintiffs' counsel under § 1988. [Dkt. 145].

The existence of the consent decree also dispatches with Perdue's concerns regarding non-consenting taxpayers and the budgetary impact of fee enhancements. 559 U.S. at 559.  When, as here, the defendant municipality has agreed to pay a plaintiff's attorney fees prior to filing bankruptcy under a consent decree, it cannot be said that an enhancement seeking to vindicate the consent decree represents impermissible judicial interference with the budgetary process.  Id. at 558. Moreover, a myopic focus on the budgetary impact of a fee enhancement would ignore the important public benefits that flow from successful civil rights litigation. See Gonzalez v. City of Maywood, 729 F.3d 1196, 1209-10 (9th Cir. 2013) ("Attorneys who win a civil rights claim not only benefit their client . . . they also confer benefits on others throughout society, by, for example, ending institutional civil rights abuses or clarifying standards of constitutional conduct.") (internal quotation marks and citations omitted).  Further, the bankruptcy itself sufficiently protected the Detroit taxpayers, who are in a better position to pay the requested fees than prior to the city's Chapter 9 filing.[5]

---

[5] The fact that millions of dollars in attorney's fees were awarded to the firms involved in the bankruptcy proceedings themselves renders hollow any argument that the award of attorney's fees in this case will impermissibly divert municipal funds from public services. *See* Joe Guillen, *Jones Day Cuts $17.7 million from Detroit Legal Bills*, Jan. 16, 2015, http://www.freep.com/story/news/local/detroit-bankruptcy/2015/01/16/detroit-bankruptcy-fee-discounts/21887423/ ("After the discount, Detroit was left with a $57.9 million tab from Jones Day, which included $2.7 million in expenses for things like lawyers' meals and hotel stays in Detroit.").

23

Moreover, this case presents the exact situation contemplated in <u>Perdue</u> where "the lodestar does not adequately take into a factor that may properly be considered in determining a reasonable fee." 559 U.S. at 554. The ninety percent reduction of Plaintiff's attorney fee award due to Defendant's bankruptcy filing makes enhancement necessary to adequately measure the market value of counsel's services in this litigation. <u>Id.</u> at 554-55. The extremely protracted bankruptcy proceedings and the fact that the underlying case was filed over a decade ago also demonstrate "exceptional delay in the payment of fees" as contemplated by <u>Perdue</u>, as does the fact that under the bankruptcy plan, full payment of the reduced amount will not occur for thirty years.[6]

_____

Furthermore, it would be illogical to conclude that the requested fees are an unreasonable burden on the public coffers because Plaintiff is essentially requesting the effective lodestar amount.

[6] On November 12, 2014, the Bankruptcy Court of the Eastern District of Michigan issued its order confirming the bankruptcy plan for the City of Detroit, which the City claims relegates Plaintiffs' attorney fee request to be paid at 10-13 cents on the Dollar over 30 years. *See* <u>In re City of Detroit, Mich.</u>, Case No. 13-53846 (Bankr. E.D. Mich. Nov 12, 2014) (Doc 8272, p. 184, ¶ u; Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit) (R. 174-3, PgID# 5475); <u>In re City of Detroit, Mich.</u>, Case No. 13-53846 (Bankr. E.D. Mich. May 5, 2014) (Doc 4391, p. 56; "Class 14 - Other Unsecured Claims" have an "Estimated Percentage Recovery" of 10-13 percent) (R. 174-4, PgID# 5572); <u>In re City of Detroit, Mich.</u>, Case No. 13-53846 (Bankr. E.D. Mich. March 3, 2015) (Doc. 9351, Motion for an Order Approving Reserve Amounts, at *39 (claim # 1841 for 415 East Congress, LLC), at *41 (claim # 1845 for H.D.V. Greektown, LLC), at 42 (claim # 1925 for K and P Incorporated) (R. 174-5, PgID# 5752, 5754-55); and <u>In re City of Detroit, Mich.</u>, Case No. 13-53846 (Bankr. E.D. Mich. April 20, 2015) (Doc. 9701, Order Approving Reserve Amounts) (R. 174-6, PgID# 5777 *et seq.*).

The District Court's ruling that a bankruptcy filing cannot constitute "unanticipated delay" supporting the award of an enhanced fee undermines the purpose of the fee-shifting provision by punishing civil rights attorneys for litigating against financially-distressed municipalities. See Delaware Valley I, 478 U.S. at 565. This would result in a situation where a city's financial precariousness operates as a standing blank check to violate individual civil rights—the exact sort of situation that § 1988 sought to address. To the degree that the phrase "mockery of justice" can be used non-hyperbolically, it certainly applies to a decision that allows a municipality to discharge its citizens' civil rights through bankruptcy.

Is also wrong to conclude, as the district court did (Order, R. 182, PgId# 5929, that a municipal bankruptcy is not rare because Plaintiffs will suffer the same fate as other Detroit creditors or others seeking fee petitions from the City. Plaintiffs respectfully submit that the focus should be on how rare it is for a plaintiff's counsel to encounter municipal bankruptcy rather than the breadth (an number of creditors involved) in this bankruptcy. Fewer than ten Chapter 9 filings are made each year,[7] and from the perspective of a would-be civil rights plaintiff's attorney, litigating against a municipal defendant that subsequently files for bankruptcy is an unwelcome, once-in-a-lifetime event. Certainly, the possibility is not one that a

---

[7] See David Haynes, *What is Chapter 9 Bankruptcy?*, THE BALANCE, Apr. 28, 2017 ("Usually fewer than 10 Chapter 9 cases are filed each year.").

25

reasonable attorney would consider when taking on a meritorious civil rights case under § 1988. See Delaware Valley II, 483 U.S. at 725-26 (1987) (stating that enhancement for *risk of loss* is not allowable under § 1988 because civil rights attorneys assume that risk upon taking a case and therefore it is included in the lodestar calculation). The inherent risk in civil rights litigation is losing, not municipal bankruptcy. Id. Thus, this case presents two of the defined "exceptional circumstances" in Perdue: inadequate calculation of prevailing counsel's market value and extraordinary delay in paying fees caused by the defendant. Id. at 554-55.

## II. A FEE ENHANCEMENT FOLLOWING A MUNICIPAL DEFENDANT'S CHAPTER NINE BANKRUPTCY IS NECESSARY TO EFFECTUATE THE PURPOSE OF 42 U.S.C. § 1988.

The Civil Rights Attorney's Fees Act is an exception to the general rule that each party must pay its own legal fees and expenses. Perdue, 559 U.S. at 550. Because civil rights plaintiffs face barriers to securing adequate legal representation, Congress enacted 42 U.S.C. 1988 "in order to ensure that federal rights are adequately enforced." Id. The fee-shifting provisions of the Act "enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws." Delaware Valley I, 478 U.S. at 565. Attorneys who perform work for civil rights plaintiffs confer important benefits to society, which merits fee-shifting. See Gonzalez v. City of Maywood, 729 F.3d 1196, 1209-10 (9th Cir. 2013) ("Attorneys who win a civil rights claim not only

benefit their client . . . they also confer benefits on others throughout society, by, for example, ending institutional civil rights abuses or clarifying standards of constitutional conduct.") (internal quotation marks and citations omitted).

In Delaware Valley I, the Supreme Court emphasized that a reasonable hourly rate will take into account most factors, such as attorney quality, that are intrinsic to the litigation. Id. at 566. Generally, the lodestar calculation, which multiplies a reasonable rate by a reasonable amount of hours, is used to adequately compensate a civil rights attorney who successfully takes on a case. Id. at 564-66. Considerations such as the attorney's skill are factored into this calculation such that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance." Id. at 566. However, enhancement *is* appropriate if the lodestar does not "provide a reasonable fee award reflecting the quality of the representation provided." Id. at 567.

Delaware Valley II, *supra*, identified the types of risk that a civil rights attorney is expected to take on when engaging a new client; most importantly, this includes the risk of losing the case. The only corresponding guarantee that mitigates this significance is the availability of attorney's fees coupled with the reality that municipal defendants generally have the financial wherewithal to pay out claims.

27

Two principles can therefore be distilled from the Court's § 1988 enhancement jurisprudence: first, a plaintiff with a meritorious civil rights claim should be able to find a competent attorney; second, that attorney should be paid a reasonable fee that reflects the quality of representation provided given the important benefits to society that civil rights litigation secures.

Following a decision that municipal bankruptcy does not justify fee enhancement, plaintiffs in financially-distressed municipalities may not "find it possible to engage a lawyer based on the *statutory assurance* that he will be paid a 'reasonable fee.'" Delaware Valley I, 478 U.S. at 565 (emphasis added). The statutory assurance provided by § 1988 does not depend on a plaintiff's socioeconomic status, or more to the point, the wealth of the municipality that violates her civil rights. In the absence of any possibility of statutory enhancement under § 1988, no capable attorney would undertake the representation of a meritorious civil rights case involving a financially distressed municipality knowing that her work may not be compensated.

## **CONCLUSION**

Wherefore, for the foregoing reasons, Plaintiffs respectfully request that this Honorable Court reverse the decision of the district court, and remand with instructions to apply a 1000% enhancement to the fee amount awarded below to all

fees subject[8] to the bankruptcy cram-down, in order to offset the effect of the

bankruptcy cram-down.

Dated: April 23, 2018                              Respectfully submitted,

                                                  *s/ Matthew J. Hoffer*
                                                  Bradley J. Shafer (P36604)
                                                  Matthew J. Hoffer (P70495)
                                                  **SHAFER & ASSOCIATES, P.C.**
                                                  3800 Capital City Blvd, Ste 2
                                                  Lansing, MI 48906
                                                  517-886-6560 – Telephone
                                                  517-886-6565 – Facsimile
                                                  Matt@BradShaferLaw.com

---

[8] Certain fees, including those incurred after Detroit filed for bankruptcy and after the approval of the final plan, are not subject to the cram-down provisions. Plaintiffs do not request an enhancement of fees not subject to the order of the bankruptcy court.

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation provided in Fed. R. App. P. 32(a)(7)(B).  The foregoing brief contains 6,346 words of Times New Roman (14 point) proportional type.  The word processing software used to prepare brief was Word 2013 for Windows 7.

<em>s/ Matthew J. Hoffer</em><br>
SHAFER & ASSOCIATES, P.C.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the forgoing brief of the Appellants was filed today, April 23, 2018, through the Court's electronic filing system, thereby causing service to be made on all Counsel of record by operation of the electronic filing system.

*s/ Matthew J. Hoffer*

**SHAFER & ASSOCIATES, P.C.**

31

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS
## Pursuant to Sixth Circuit Rule 30(b)

The following filings from the district court's record are relevant documents:

| United States District Court Eastern District of Michigan Case No. 2:06-cv-11282-AJT-RSW | | | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| 03/28/2006 | 1 | Complaint | 341-390 |
| 03/28/2006 | 1-2 | (continued) Complaint | 51-100 |
| 03/28/2006 | 1-3 | (continued) Complaint | 141-149 |
| 03/28/2006 | 1-3 | Exhibit A – Stipulation | 150-154 |
| 03/28/2006 | 1-3 | Exhibit B – Order | 155-158 |
| 03/28/2006 | 1-3 | Exhibit C – Applicable Detroit City Code pertaining to the 2003 Group D Cabaret Licensing Process | 159-190 |
| 03/28/2006 | 1-4 | Exhibit C (continued) – Applicable Detroit City Code pertaining to the 2003 Group D Cabaret Licensing Process | 241-244 |
| 03/28/2006 | 1-4 | Exhibit D – Applicable sections of the Detroit Zoning Ordinance pertaining to the 2003 Group D Cabaret Licensing Process and previous provisions of the Detroit Zoning Ordinance which are applicable to the Sign Permit Application Process | 245-290 |
| 03/28/2006 | 1-5 | Exhibit D (continued) – Applicable sections of the Detroit Zoning Ordinance pertaining to the 2003 Group D Cabaret Licensing Process and previous provisions of the Detroit Zoning Ordinance which are applicable to the Sign Permit Application Process | 191-212 |
| 03/28/2006 | 1-5 | Exhibit E – Applicable current Detroit City Code pertaining to the Current Group D Cabaret Licensing Process | 213-239 |
| 03/28/2006 | 1-5 | Exhibit F (cover page only) – Applicable sections of the Current Detroit Zoning | 240 |

| | | United States District Court Eastern District of Michigan<br>Case No. 2:06-cv-11282-AJT-RSW | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| | | Ordinance pertaining to the current Group D Cabaret Licensing Process and Adult Uses | |
| 03/28/2006 | 1-6 | Exhibit F (continued) – Applicable sections of the Current Detroit Zoning Ordinance pertaining to the current Group D Cabaret Licensing Process and Adult Uses | 291-323 |
| 03/28/2006 | 1-6 | Exhibit G – Relevant Michigan Statutes | 324-328 |
| 03/28/2006 | 1-6 | Exhibit H – Applicable sections of the current Detroit City Code pertaining to the Sign Permit Application Process | 329-338 |
| 03/28/2006 | 1-6 | Exhibit I – Applicable sections of the current Detroit Zoning Ordinance pertaining to the Sign Permit Application Process | 339-340 |
| 03/28/2006 | 1-7 | Exhibit I (continued) – Applicable sections of the current Detroit Zoning Ordinance pertaining to the Sign Permit Application Process | 1-50 |
| 03/28/2006 | 1-8 | Exhibit I (continued) – Applicable sections of the current Detroit Zoning Ordinance pertaining to the Sign Permit Application Process | 101-108 |
| 03/28/2006 | 1-8 | Exhibit J – Applicable sections of the current Detroit Zoning Ordinance | 109-127 |
| 03/28/2006 | 1-8 | Exhibit K – Resolutions and Enacted Procedures | 128-130 |
| 03/28/2006 | 1-8 | Exhibit L – Land Use Grant | 131-138 |
| 03/28/2006 | 1-8 | Civil Cover Sheet | 139-140 |
| 03/28/2006 | 2 | Statement of Disclosure of Corporate Affiliations and Financial Interest (HDV-Greektown, LLC) | 391 |
| 03/28/2006 | 3 | Statement of Disclosure of Corporate Affiliations and Financial Interest (415 East Congress, LLC) | 392 |

33

| Date Filed | Record Entry # | Description | PageID# |
|---|---|---|---|
| United States District Court Eastern District of Michigan<br>Case No. 2:06-cv-11282-AJT-RSW | | | |
| 03/28/2006 | 4 | Statement of Disclosure of Corporate Affiliations and Financial Interest (K&P, Inc.) | 393 |
| 03/29/2006 | 5 | Summons | 394-395 |
| 09/18/2006 | 14 | Stipulation and Order Extending Time for Plaintiffs to File their Motion for Partial Summary Judgment | 452-455 |
| 11/15/2006 | 15 | Stipulation and Order Extending Time for Plaintiffs to File Their Zoning Motion for Partial Summary Judgment | 456-459 |
| 11/29/2006 | 17 | Plaintiffs' Motion for Partial Summary Judgment [Stricken and Refiled as Doc. 23] | 612-616 |
| 11/29/2006 | 17 | Brief in Support of Plaintiffs' Motion for Partial Summary Judgment [Stricken and Refiled as Doc. 23] | 617-661 |
| 01/30/2007 | 23 | Plaintiffs' Motion for Partial Summary Judgment | 803-808 |
| 01/30/2007 | 23 | Brief in Support of Motion for Partial Summary Judgment | 809-848 |
| 01/30/2007 | 23-2 | Index of Exhibits | 713-716 |
| 01/30/2007 | 23-3 | Exhibit A – April 20, 1994 Zoning Grant | 702-708 |
| 01/30/2007 | 23-4 | Exhibit B – October 14, 1999 City Planning Commission Letter | 853-860 |
| 01/30/2007 | 23-5 | Exhibit C – July 3, 2003 City Planning Commission Letter | 798-800 |
| 01/30/2007 | 23-6 | Exhibit D – § 51.000 of the Previous Detroit Zoning Ordinance | 711-712 |
| 01/30/2007 | 23-7 | Exhibit E – Liquor License Unit Referral | 687-688 |
| 01/30/2007 | 23-8 | Exhibit F – Stipulation | 886-890 |
| 01/30/2007 | 23-9 | Exhibit G – Order | 849-852 |
| 01/30/2007 | 23-10 | Exhibit H – Resolution | 747-749 |
| 01/30/2007 | 23-11 | Exhibit I – October 25, 2006 City Planning Commission Letter | 801-802 |
| 01/30/2007 | 23-12 | Exhibit J – February 6, 2004 Zoning Violation Notice | 745-746 |

| United States District Court Eastern District of Michigan Case No. 2:06-cv-11282-AJT-RSW | | | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| 01/30/2007 | 23-13 | Exhibit K – April 8, 2004 Zoning Violation Notice | 709-710 |
| 01/30/2007 | 23-14 | Exhibit L (1 of 4) – Detroit Zoning Ordinance (May 29, 2005) -Excerpts- | 750-797 |
| 01/30/2007 | 23-15 | Exhibit L (2 of 4) – Detroit Zoning Ordinance (May 29, 2005) -Excerpts- | 717-744 |
| 01/30/2007 | 23-16 | Exhibit L (3 of 4) – Detroit Zoning Ordinance (May 29, 2005) -Excerpts- | 689-701 |
| 01/30/2007 | 23-17 | Exhibit L (4 of 4) – Detroit Zoning Ordinance (May 29, 2005) -Excerpts- | 861-885 |
| 02/20/2007 | 25 | Defendant's Answer to Plaintiffs' Motion for Partial Summary Judgment | 893-895 |
| 02/20/2007 | 25 | Defendant's Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment | 896-932 |
| 04/18/2007 | 29 | Plaintiffs' Second Motion for Partial Summary Judgment | 1088-1093 |
| 04/18/2007 | 29 | Brief in Support of Plaintiffs' Second Motion for Partial Summary Judgment | 1094-1120 |
| 04/18/2007 | 29-2 | Index of Exhibits | 1027-1029 |
| 04/18/2007 | 29-3 | Exhibit A – Initial Sign Application | 987-993 |
| 04/18/2007 | 29-4 | Exhibit B – May 26, 2004 Sign Ordinance Violation Notice | 1019-1020 |
| 04/18/2007 | 29-5 | Exhibit C – June 2004 Application for Temporary Sign | 1030-1035 |
| 04/18/2007 | 29-6 | Exhibit D – June 1, 2004 Sign Permit | 979-980 |
| 04/18/2007 | 29-7 | Exhibit E – April 19, 2004 Zoning Code Violation Notice | 1021-1022 |
| 04/18/2007 | 29-8 | Exhibit F – Excerpts of Transcript of July 20, 2004 Board of Zoning Appeals Hearing | 1064-1087 |
| 04/18/2007 | 29-9 | Exhibit G – Revised Sign Application Filed in December 2004 | 981-986 |
| 04/18/2007 | 29-10 | Exhibit H – Chapter 3 of the Detroit City Code: Advertising and Signs | 997-1016 |

| United States District Court Eastern District of Michigan Case No. 2:06-cv-11282-AJT-RSW | | | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| 04/18/2007 | 29-11 | Exhibit I – Article VI of the Detroit Zoning Ordinance: Signs | 1038-1063 |
| 04/18/2007 | 29-12 | Exhibit J – Section 61-16-173 of the Detroit Zoning Ordinance: Words and Terms (Si-Sm) | 1023-1026 |
| 04/18/2007 | 29-13 | Exhibit K – Article IV, Division 5 of the Detroit Zoning Ordinance: Appeals of Administrative Decisions | 994-996 |
| 04/18/2007 | 29-14 | Exhibit L – Article II, Division 5 of the Detroit Zoning Ordinance: Board of Zoning Appeals | 973-978 |
| 04/18/2007 | 29-15 | Exhibit M – Section 1-1-10 of the Detroit City Code: Severability of Parts of Code | 1036-1037 |
| 04/18/2007 | 29-16 | Exhibit N – Section 61-1-15 of the Detroit Zoning Ordinance: Severability | 1017-1018 |
| 07/27/2007 | 46 | Plaintiffs' Motion for Leave to File First Amended Complaint | 1446-1457 |
| 08/06/2007 | 48 | Order (granting in part and denying in park 23 Motion for Summary Judgment; granting in part and denying in part 29 Motion for Partial Summary Judgment) | 1465-1477 |
| 08/17/2007 | 51 | Plaintiffs' Motion to Alter or Amend | 1503-1506 |
| 08/17/2007 | 51 | Brief in Support of Plaintiffs' Motion to Alter or Amend | 1507-1526 |
| 08/17/2007 | 51-2 | Index of Exhibits | 1568-1569 |
| 08/17/2007 | 51-3 | Exhibit A – August 6, 2007 Order | 1527-1539 |
| 08/17/2007 | 51-4 | Exhibit B – Excerpts of Transcript of Detroit Board of Zoning Appeals Hearing On July 20, 2004 | 1558-1567 |
| 08/17/2007 | 51-5 | Exhibit C – City of Detroit Ordinances 10-05 and 11-05 | 1540-1557 |
| 02/07/2008 | 69 | Order (granting 46 Motion for Leave to File; granting 47 Motion; denying 51 Motion to Amend/Correct) | 1679-1680 |

| United States District Court Eastern District of Michigan<br>Case No. 2:06-cv-11282-AJT-RSW | | | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| 02/14/2008 | 70 | Order (granting in part and denying in part 29 Motion for Partial Summary Judgment) | 1681-1698 |
| 04/08/2008 | 75 | First Amended Verified Class Action Complaint for Declaratory and Injunctive Relive, Damages, Attorney Fees and Costs | 1750-1789 |
| 04/08/2008 | 75-2 | (continued) First Amended Verified Class Action Complaint for Declaratory and Injunctive Relive, Damages, Attorney Fees and Costs | 1790-1830 |
| 04/08/2008 | 75-3 | (continued) First Amended Verified Class Action Complaint for Declaratory and Injunctive Relive, Damages, Attorney Fees and Costs | 1831-1871 |
| 04/08/2008 | 75-4 | Index of Exhibits | 1872-1873 |
| 04/08/2008 | 75-5 | Exhibit A – Stipulation | 1874-1878 |
| 04/08/2008 | 75-6 | Exhibit B – Order | 1879-1882 |
| 04/08/2008 | 75-7 | Exhibit C – Detroit City Code Provisions Pertaining to the 2003 Group D Cabaret Licensing Process | 1883-1916 |
| 04/08/2008 | 75-8 | Exhibit D – Detroit Zoning Ordinance Provisions Pertaining to the 2003 Group D Cabaret Licensing Process and Previous Provisions of the Detroit Zoning Ordinance which are Applicable to the Sign Permit Application Process | 1917-1949 |
| 04/08/2008 | 75-9 | Exhibit D (continued) – Detroit Zoning Ordinance Provisions Pertaining to the 2003 Group D Cabaret Licensing Process and Previous Provisions of the Detroit Zoning Ordinance which are Applicable to the Sign Permit Application Process | 1950-1977 |
| 04/08/2008 | 75-10 | Exhibit E – Current Detroit City Code Provisions Pertaining to the Current Group D Cabaret Licensing Process | 1978-2004 |

| United States District Court Eastern District of Michigan Case No. 2:06-cv-11282-AJT-RSW | | | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| 04/08/2008 | 75-11 | Exhibit F – Current Detroit Zoning Ordinance Provisions Pertaining to the Current Croup D Cabaret Licensing Process and Adult Uses | 2005-2035 |
| 04/08/2008 | 75-12 | Exhibit G – Relevant Michigan Statutes | 2036-2040 |
| 04/08/2008 | 75-13 | Exhibit H – Current Detroit City Code Provisions Pertaining to the Sign Permit Application Process | 2041-2050 |
| 04/08/2008 | 75-14 | Exhibit I – Current Detroit Zoning Ordinance Provisions Pertaining to the Sign Permit Application Process | 2051-2081 |
| 04/08/2008 | 75-15 | Exhibit I (continued) – Current Detroit Zoning Ordinance Provisions Pertaining to the Sign Permit Application Process | 2082-2105 |
| 04/08/2008 | 75-16 | Exhibit J – Current Detroit Zoning Ordinance Provisions | 2106-2121 |
| 04/08/2008 | 75-17 | Exhibit K – Resolutions and Enacted Procedures | 2122-2124 |
| 04/08/2008 | 75-18 | Exhibit L – Land Use Grant | 2125-2131 |
| 04/10/2008 | 76 | Certificate of Service (Verification Filed Under Seal of Jane Roe I, Jane Roe II, Jane Roe II, and Jane roe IV) | 2132-2133 |
| 05/11/2009 | 84 | Second Amended Verified Class Action Complaint for Declaratory and Injunctive Relive, Damages, Attorney Fees and Costs | 2378-2420 |
| 05/11/2009 | 84-2 | (continued) Second Amended Verified Class Action Complaint for Declaratory and Injunctive Relive, Damages, Attorney Fees and Costs | 2421-2464 |
| 05/11/2009 | 84-3 | (continued) Second Amended Verified Class Action Complaint for Declaratory and Injunctive Relive, Damages, Attorney Fees and Costs | 2465-2506 |
| 05/11/2009 | 84-4 | Index of Exhibits | 2507-2508 |
| 05/11/2009 | 84-5 | Exhibit A – Stipulation | 2509-2513 |

| United States District Court Eastern District of Michigan<br>Case No. 2:06-cv-11282-AJT-RSW | | | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| 05/11/2009 | 84-6 | Exhibit B – Order | 2514-2517 |
| 05/11/2009 | 84-7 | Exhibit C – Detroit City Code Provisions Pertaining to the 2003 Group D Cabaret Licensing Process | 2518-2551 |
| 05/11/2009 | 84-8 | Exhibit D – Detroit Zoning Ordinance Provisions Pertaining to the 2003 Group D Cabaret Licensing Process and Previous Provisions of the Detroit Zoning Ordinance which are Applicable to the Sign Permit Application Process | 2552-2584 |
| 05/11/2009 | 84-9 | Exhibit D (continued) – Detroit Zoning Ordinance Provisions Pertaining to the 2003 Group D Cabaret Licensing Process and Previous Provisions of the Detroit Zoning Ordinance which are Applicable to the Sign Permit Application Process | 2585-2612 |
| 05/11/2009 | 84-10 | Exhibit E – Current Detroit City Code Provisions Pertaining to the Current Group D Cabaret Licensing Process | 2613-2639 |
| 05/11/2009 | 84-11 | Exhibit F – Current Detroit Zoning Ordinance Provisions Pertaining to the Current Croup D Cabaret Licensing Process and Adult Uses | 2640-2670 |
| 05/11/2009 | 84-12 | Exhibit G – Relevant Michigan Statutes | 2671-2675 |
| 05/11/2009 | 84-13 | Exhibit H – Current Detroit City Code Provisions Pertaining to the Sign Permit Application Process | 2676-2685 |
| 05/11/2009 | 84-14 | Exhibit I – Current Detroit Zoning Ordinance Provisions Pertaining to the Sign Permit Application Process | 2686-2716 |
| 05/11/2009 | 84-15 | Exhibit I (continued) – Current Detroit Zoning Ordinance Provisions Pertaining to the Sign Permit Application Process | 2717-2740 |
| 05/11/2009 | 84-16 | Exhibit J – Current Detroit Zoning Ordinance Provisions | 2741-2756 |

| United States District Court Eastern District of Michigan Case No. 2:06-cv-11282-AJT-RSW | | | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| 05/11/2009 | 84-17 | Exhibit K – Resolutions and Enacted Procedures | 2757-2759 |
| 05/11/2009 | 84-18 | Exhibit L – Land Use Grant | 2760-2766 |
| 06/12/2009 | 86 | Judgment (from U.S. Court of Appeals – Sixth Circuit re 72 Notice of Appeal and 71 Notice of Appeal) | 2814 |
| 08/12/2009 | 88 | Order (re 86 Appeal Order/Opinion/Judgment) | 2816-2818 |
| 08/25/2009 | 89 | Mandate (from the U.S. Court of Appeals – Sixth Circuit as to 72, 71 Notices of Appeal) | 2819-2820 |
| 08/27/2009 | 90 | Amended Order (re 88 Order) | 2821-2822 |
| 09/25/2009 | 92 | Defendant City of Detroit's Motion to Revise Order Pursuant to Fed. R. Civ. P. 54 | 2825-2856 |
| 10/27/2009 | 101 | Plaintiffs' Third Motion for Partial Summary Judgment | 3032-3038 |
| 10/27/2009 | 101 | Brief in Support of Plaintiffs' Third Motion for Partial Summary Judgment | 3039-3065 |
| 10/27/2009 | 101-2 | Index of Exhibits | 3066 |
| 10/27/2009 | 101-3 | Exhibit A – Detroit City Council Letter of February 26, 2007; Enclosing November 15, 2006 Detroit City Council Resolution Denying Transfer of Topless Activity Permit | 3067-3071 |
| 10/27/2009 | 101-4 | Exhibit B – City of Detroit's Revised "City Council Procedures and Criteria for Michigan Liquor Control Commission Activity Permits" – Enacted July 27, 2009 | 3072-3077 |
| 10/27/2009 | 101-5 | Exhibit C – City of Detroit's "Procedures and Criteria for Approval/Dissapproval of MLCC Activity Permits" and Adopting Detroit City Council Resolutions of August 1, 2003 | 3078-3079 |
| 10/27/2009 | 101-6 | Exhibit D – City of Detroit Ordinances 10-05 and 11-05 Amending Zoning Ordinance | 3080-3097 |

| United States District Court Eastern District of Michigan Case No. 2:06-cv-11282-AJT-RSW | | | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| 10/27/2009 | 101-7 | Exhibit E – Dubuc v. Green Oak Township, 2009 WL 1856377 (E.D. Mich. June 26, 2009) (Case No. 08-13727) | 3098-3108 |
| 12/02/2009 | 105-6 | Exhibit D – City Council Resolution Denying Transfer Petition | 3166-3167 |
| 03/05/2010 | 116 | Defendant's Supplemental Exhibit in Support of Motion to Revise Order Pursuant to Fed. R. Civ. P. 54 | 3241-3243 |
| 03/05/2010 | 116-2 | Index of Exhibits | 3244 |
| 03/05/2010 | 116-3 | Exhibit F – Amendments to Chapter 61 of Detroit City Code approved by Detroit City Council on February 22, 2010 | 3245-3316 |
| 03/12/2010 | 117 | Order (denying 92 Motion to Amend/Correct) | 3317-3323 |
| 09/08/2010 | 122 | Order (granting in part and denying in part 101 Motion for Partial Summary Judgment) | 3349-3374 |
| 09/22/2010 | 123 | Plaintiffs' Motion to Alter or Amend the Court's Order of September 8, 2010 | 3375-3379 |
| 09/22/2010 | 123 | Brief in Support of Plaintiffs' Motion to Alter or Amend the Court's Order of September 8, 2010 | 3380-3404 |
| 11/18/2010 | 126 | Order (denying 123 Motion to Amend/Correct) | 3408-3415 |
| 03/14/2011 | 132 | Plaintiffs' Joint Motion in Limine to Exclude Testimony and Other Evidence Relating to Alleged Withdrawal of Sign Application; Failure to Submit Additional Sign Application Materials; and Misconduct on the Premises at 415 East Congress and/or at Other Adult Cabarets within the City of Detroit | 3425-3426 |
| 03/14/2011 | 132 | Brief in Support of Plaintiffs' Joint Motion in Limine to Exclude Testimony and Other Evidence Relating to Alleged Withdrawal of Sign Application; Failure to Submit | 3427-3441 |

41

| United States District Court Eastern District of Michigan<br>Case No. 2:06-cv-11282-AJT-RSW | | | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| | | Additional Sign Application Materials; and Misconduct on the Premises at 415 East Congress and/or at Other Adult Cabarets within the City of Detroit | |
| 03/14/2011 | 132-1 | Exhibit Index | 3442 |
| 03/14/2011 | 132-2 | Exhibit A – Email from Sgt. Vicki Yost re Vice division activity at 145 E. Congress, dated 2/25/2010 | 3443 |
| 03/14/2011 | 132-3 | Exhibit B – DPD address report re 415 E. Congress, 1/1/06 to 2/25/10 | 3444-3451 |
| 03/14/2011 | 132-4 | Exhibit C – MLCC violation history report for 415 E. Congress, 1986 to March 11, 2011 | 3452-3453 |
| 03/14/2011 | 133 | Plaintiffs' Joint Motion in Limine to Exclude Testimony of Mauricio Kohn and Kohn Financial Consulting, LLC | 3454-3455 |
| 03/14/2011 | 133 | Brief in Support of Plaintiffs' Joint Motion in Limine to Exclude Testimony of Mauricio Kohn and Kohn Financial Consulting, LLC | 3456-3480 |
| 03/14/2011 | 133-1 | Exhibit Index | 3481 |
| 03/14/2011 | 133-2 | Exhibit A – Plaintiff's Expert Report – Maria Monte | 3482-3512 |
| 03/14/2011 | 133-3 | Exhibit B – Defendant's Expert Report – Mauricio Kohn | 3513-3575 |
| 03/14/2011 | 133-4 | Exhibit B (continued) – Defendant's Expert Report – Mauricio Kohn | 3576-3605 |
| 03/14/2011 | 133-5 | Exhibit B (continued) – Defendant's Expert Report – Mauricio Kohn | 3606-3659 |
| 03/14/2011 | 133-6 | Exhibit C – Warranty Deed | 3660-3661 |
| 03/14/2011 | 133-7 | Exhibit D – 415 East Congress/K&P, Inc. Lease | 3662-3682 |
| 03/14/2011 | 133-8 | Exhibit E – NACVA Classifications of Membership | 3683 |
| 03/14/2011 | 133-9 | Exhibit F – NACVA Professional Standards | 3684-3704 |

| United States District Court Eastern District of Michigan<br>Case No. 2:06-cv-11282-AJT-RSW | | | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| 03/14/2011 | 133-10 | Exhibit G – Value Examiner Article Authored by Plaintiffs' Experts | 3705-3708 |
| 03/14/2011 | 133-11 | Exhibit H – Deposition Transcript of Mauricio Kohn | 3709-3744 |
| 03/14/2011 | 133-12 | Exhibit H (continued) – Deposition Transcript of Mauricio Kohn | 3745-3759 |
| 03/14/2011 | 134 | Defendant's Motion in Limine | 3760-3771 |
| 03/22/2011 | 135 | Joint Pretrial Order | 3873-3923 |
| 03/25/2011 | 136 | Order of Reference to Untied States Magistrate Judge | 3924 |
| 08/09/2011 | 144 | Stipulation for Voluntary Dismissal of Only Plaintiffs Jane Roe I, Jane Roe II, Jane Roe III and Jane Roe IV | 4314-4316 |
| 08/23/2011 | 145 | Consent Decree | 4317-4321 |
| 10/04/2011 | 148 | Plaintiffs' Motion for Attorney Fees and Costs | 4329-4335 |
| 10/04/2011 | 148 | Memorandum in Support of Plaintiffs' Motion for Attorney Fees and Costs | 4336-4373 |
| 10/04/2011 | 148-1 | Index of Exhibits | 4374-4375 |
| 10/04/2011 | 148-2 | Exhibit A - Complaint filed in <u>H.D.V.-Greektown, LLC, 415 East Congress, LLC, and K&P, Inc. v. City of Detroit</u>, Case No. 03-74887 (the "Initial Lawsuit") | 4376-4419 |
| 10/04/2011 | 148-3 | Exhibit B - Affidavit of Bradley J. Shafer in Support of Plaintiffs' Motion for Attorney's Fees and Costs | 4420-4441 |
| 10/04/2011 | 148-4 | Exhibit 1 (to Exhibit B) - Shafer & Associates, P.C., Attorney Fees and Costs in <u>H.D.V-Greektown et al. v. City of Detroit</u>, Case No. 06-11282 | 4442-4492 |
| 10/04/2011 | 148-5 | Exhibit 1 (to Exhibit B continued) - Shafer & Associates, P.C., Attorney Fees and Costs in <u>H.D.V-Greektown et al. v. City of Detroit</u>, Case No. 06-11282 | 4493-4554 |

43

| United States District Court Eastern District of Michigan Case No. 2:06-cv-11282-AJT-RSW | | | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| 10/04/2011 | 148-6 | Exhibit 2 (to Exhibit B) - City of Detroit Professional Services Contract with attorney Scott D. Bergthold | 4555-4588 |
| 10/04/2011 | 148-7 | Exhibit 3 (to Exhibit B) - Email from Hon. Mark Bennett to Scott D. Bergthold dated January 26, 2007, regarding Doctor John's, Inc. v. City of Sioux City, Iowa, Case No. C 03-4121 in the Northern District of Iowa | 4589-4590 |
| 10/04/2011 | 148-8 | Exhibit 4 (to Exhibit B) - Invoice for Services Rendered by Corbett Edge O'Meara | 4591-4592 |
| 10/04/2011 | 148-9 | Exhibit 5 (to Exhibit B) - Shafer & Associates, P.C., Attorney Fees and Costs in H.D.V.-Greektown et al. v. City of Detroit, Case No. 03-74887 | 4593-4603 |
| 10/04/2011 | 148-10 | Exhibit 6 (to Exhibit B) - Billing Invoices for ShindelRock | 4604-4637 |
| 10/04/2011 | 148-11 | Exhibit C - Affidavit of Jennifer M. Kinsley | 4638-4642 |
| 10/04/2011 | 148-12 | Exhibit D - Declaration of Jeff Scott Olson | 4643-4652 |
| 10/04/2011 | 148-13 | Exhibit E - Declaration of Gregory Fisher Lord | 4653-4655 |
| 10/04/2011 | 148-14 | Exhibit F - Stipulation in H.D.V.-Greektown et al. v. City of Detroit, Case No. 03-74887 | 4656-4659 |
| 10/04/2011 | 148-15 | Exhibit G - Order Granting Declaratory Judgment As To Condition 18 Of The May, 11, 1994, Land Use Grant Issued By the City of Detroit To K&P, Inc. With Respect To An Adult Cabaret Use, And Dismissing All Other Remaining Claims Without Prejudice in H.D.V.-Greektown et al. v. City of Detroit, Case No. 03-74887 | 4660-4662 |
| 11/10/2011 | 152 | Defendant's Answer to Remaining Plaintiffs' Motion for Attorney Fees and Costs | 4668-4723 |

| United States District Court Eastern District of Michigan<br>Case No. 2:06-cv-11282-AJT-RSW | | | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| 11/10/2011 | 152-1 | Index of Exhibits | 4724-4725 |
| 11/10/2011 | 152-2 | Exhibit A - Affidavit of Eric B. Gaabo | 4726-4732 |
| 11/10/2011 | 152-3 | Exhibit B - Lamar Advertising Co. v Charter Twp. of Van Buren, 178 Fed. Appx. 498 (6th Cir. 2006) | 4733-4736 |
| 11/10/2011 | 152-4 | Exhibit C - Adams v Bureau of Collection Recovery, 2011 U.S. Dist. LEXIS 827555 (E.D. Mich 2011) | 4737-4740 |
| 11/10/2011 | 152-5 | Exhibit D - 2010 Michigan State Bar Economics of Law Practice Survey | 4741-4756 |
| 11/10/2011 | 152-6 | Exhibit E - Summary of billings related to work performed for Jane Roe I, Jane Roe II, Jane Roe III and Jane Roe IV | 4757-4763 |
| 11/10/2011 | 152-7 | Exhibit F - Barrett v W.Chester Univ., 2006 U.S. Dist. LEXIS 15332 (E.D. Pa. 2006) | 4764-4779 |
| 11/10/2011 | 152-8 | Exhibit G - Summary of billings related to work performed on unsuccessful sign motion and sign Appeal | 4780-4788 |
| 11/10/2011 | 152-9 | Exhibit H - Summary of billings related to criminal proceedings concerning Monica Conyers and Samuel Riddle | 4789-4790 |
| 11/10/2011 | 152-10 | Exhibit I - Third Superseding Indictment filed in United States v Riddle, United States District Court for the Eastern District of Michigan, Criminal Case No. 09-20025 | 4791-4817 |
| 11/10/2011 | 152-11 | Exhibit J - Website of LGI Consulting (Lansing lobbying firm) | 4818 |
| 11/10/2011 | 152-12 | Exhibit K - Summary of billings related to lobbying activity | 4819-4822 |
| 11/10/2011 | 152-13 | Exhibit L - Summary of billings related to contact with the media | 4823-4824 |

| United States District Court Eastern District of Michigan Case No. 2:06-cv-11282-AJT-RSW | | | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| 11/10/2011 | 152-14 | Exhibit M - Summary of billings related to travel time | 4825-4831 |
| 11/10/2011 | 152-15 | Exhibit N - Calculator for distance between Lansing and Detroit, Michgan | 4832 |
| 11/10/2011 | 152-16 | Exhibit O - Calculator for distance between Lansing and Novi, Michigan | 4833 |
| 11/10/2011 | 152-17 | Exhibit P - Calculator for distance between Lansing and Royal Oak, Michigan | 4834 |
| 11/10/2011 | 152-18 | Exhibit Q - Calculator for distance between Lansing and Southgate, Michigan | 4835 |
| 11/10/2011 | 152-19 | Exhibit R - Calculator for distance between Lansing and Westland, Michigan | 4836 |
| 11/10/2011 | 152-20 | Exhibit S - Mangino v Penn. Turnpike Commission, 2009 U.S. Dist. LEXIS 118953 (W.D. Pa. 2009) | 4837-4848 |
| 11/10/2011 | 152-21 | Exhibit T - Spreadsheet analyzing effect of failure to use law clerks after February 29, 2008 | 4849 |
| 11/10/2011 | 152-22 | Exhibit U - Martindale Hubbell listing for Corbett E. O'Meara | 4850 |
| 11/10/2011 | 152-23 | Exhibit V - Summary of miscellaneous objections to billings in 2003 case | 4851-4853 |
| 11/10/2011 | 152-24 | Exhibit W - Summary of billings regarding preparation of initial complaint in 2006 case | 4854-4861 |
| 11/10/2011 | 152-25 | Exhibit X - Summary of billings regarding preparation of First Amended Complaint | 4862-4865 |
| 11/10/2011 | 152-26 | Exhibit Y - Summary of billings relating to preparation of First motion for summary judgment | 4866-4870 |
| 11/10/2011 | 152-27 | Exhibit Z - Summary of billings relating to preparation of motion for attorney fees and costs | 4871-4877 |
| 11/10/2011 | 153 | Exhibit AA - Moore v County of Muskegon, 1993 U.S. Dist. LEXIS 18879 | 4878-4880 |

46

| United States District Court Eastern District of Michigan Case No. 2:06-cv-11282-AJT-RSW | | | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| 11/10/2011 | 153-1 | Exhibit BB - Excerpt from City of Detroit's Fiscal Year 2011 -2012 Budget | 4881 |
| 11/10/2011 | 153-2 | Exhibit CC - Ford Motor Co v Lloyd Design Corp., 2002 U.S. Dist LEXIS 17024 (E.D. Mich 2002) | 4882-4895 |
| 12/05/2011 | 155 | Plaintiffs' Reply in Support of Their Motion for Attorney Fees and Costs | 4902-4945 |
| 12/05/2011 | 155-1 | Exhibit List | 4946-4947 |
| 12/05/2011 | 155-2 | Exhibit A - Supplemental Affidavit of Bradley J. Shafer in Support of Plaintiffs' Motion for Attorney's Fees and Costs | 4948-4956 |
| 12/05/2011 | 155-3 | Exhibit B - City of Detroit's Answer and Affirmative Defenses to First Amended Complaint in Initial Lawsuit (H.D.V. - Greektown, LLC, et al. v. City of Detroit, Eastern District of Michigan Case No. 03-74487) | 4957-4960 |
| 12/05/2011 | 155-4 | Exhibit C - Chart of Duplicative Attorney's Fees Reduction Requests | 4961-4971 |
| 12/05/2011 | 155-5 | Exhibit D - Chart regarding miscellaneous objections to 2003 billings | 4972-4980 |
| 12/05/2011 | 155-6 | Exhibit E - April 4, 2007 Correspondence to Julie Wendt of the Michigan Liquor Control Commission | 4981-4982 |
| 12/05/2011 | 155-7 | Exhibit F - Civil Cover Sheet – H.D.V. – Greektown, LLC, et al. v. City of Detroit, Eastern District of Michigan Case No. 06-11282 | 4983-4984 |
| 12/05/2011 | 155-8 | Exhibit G - Affidavit of Jim St. John in Support of Plaintiffs' Motion for Attorney's Fees and Costs | 4985-4988 |
| 12/05/2011 | 155-9 | Exhibit H - Transcript of Christopher Jackson Testimony, pp. 109-10, and 124, from United States of America v. Samuel | 4989-4992 |

47

| United States District Court Eastern District of Michigan Case No. 2:06-cv-11282-AJT-RSW | | | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| | | *Riddle*, Eastern District of Michigan Case No. 09-20025-04 | |
| 12/05/2011 | 155-10 | Exhibit I - Rebuttal Chart to Dkt. 152-12, Re: "Lobbying" | 4993-5005 |
| 12/05/2011 | 155-11 | Exhibit J - March 11, 2011 email of Matthew J. Hoffer to clients re settlement offer | 5006 |
| 12/05/2011 | 155-12 | Exhibit K - Transcript of Jim St. John Testimony, pp. 21, 29, from *United States of America v. Samuel Riddle*, Eastern District of Michigan Case No. 09-20025-04 | 5007-5008 |
| 12/05/2011 | 155-13 | Exhibit L - Chart of Out-of-Pocket Expenses, Resubmitted to Include Explanation of Expenses | 5009-5036 |
| 12/05/2011 | 155-14 | Exhibit M - October 24, 2003 Correspondence of Shafer & Associates, P.C. to Detroit City Clerk re: Detroit City Code | 5037 |
| 12/05/2011 | 155-15 | Exhibit N - February 16, 2004 Correspondence to Amru Meah, Department of Buildings and Safety Engineering, City of Detroit | 5038-5041 |
| 02/23/2012 | 157 | Supplement to Plaintiffs' Motion for Attorney's Fees and Costs | 5048-5051 |
| 02/23/2012 | 157-1 | Exhibit A – Second Supplemental Affidavit of Bradley J. Shafer in Support of Plaintiffs' Motion for Attorney's Fees and Costs | 5052-5053 |
| 02/23/2012 | 157-1 | Exhibit 1 (to Exhibit A) – Second Supplemental Affidavit of Bradley J. Shafer in Support of Plaintiffs' Motion for Attorney's Fees and Costs | 5054-5060 |
| 04/11/2012 | 158 | Affidavit of Eric Gaabo [152 Response to Motion – Amended Exhibit A] | 5061-5068 |

48

| United States District Court Eastern District of Michigan<br>Case No. 2:06-cv-11282-AJT-RSW | | | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| 04/20/2012 | 159 | Order (referring motion to Magistrate Judge R. Steven Whalen: 148 Motion for Attorney Fees and Costs) | 5069 |
| 05/17/2012 | 160 | Notice of Hearing on 148 Motion for Attorney Fees and Costs | 5070 |
| 08/15/2012 | 161 | Transcript of Motion for Attorney Fees Held on 6-28-2012 | 5071-5113 |
| 05/23/2013 | 162 | Report and Recommendation (re 148 Motion for Attorney Fees and Costs) | 5114-5134 |
| 06/05/2013 | 164 | Plaintiffs' Objections to Magistrate's Report and Recommendation (Dkt. 162) | 5140-5173 |
| 06/26/2013 | 167 | Defendant's Response to Plaintiffs' Objections to Magistrate's Report and Recommendation | 5177-5197 |
| 06/26/2013 | 167-1 | Index of Exhibits | 5198 |
| 06/26/2013 | 167-2 | Exhibit A - Morris v. McQuiggin, 2013 U.S. Dist. LEXIS 65250, 3-5 ( E.D. Mich. May 8, 2013) (Cohn, J) | 5199-5201 |
| 06/26/2013 | 167-3 | Exhibit B - Dowdy-el v Caruso, 2013 U.S. Dist LEXIS 73612 | 5202-5206 |
| 06/26/2013 | 167-4 | Exhibit C - Shwensow v United States, 2010 U.S. Dist. LEXIS 26529 | 5207-5208 |
| 08/20/2013 | 168 | Notice of Suggestion of Pendency of Bankruptcy Case and Application of the Automatic Stay | 5209-5212 |
| 08/23/2013 | | TEXT-ONLY ORDER re 162 REPORT AND RECOMMENDATION re 148 MOTION for Attorney Fees *and Costs* filed by 415 East Congress, L. L. C., K and P, Incorporated, H.D.V. - Greektown, L. L. C., 148 MOTION for Attorney Fees *and Costs* filed by 415 East Congress, L. L. C., K and P, Incorporated, H.D.V. - Greektown, L. L. C.. PURSUANT TO PENDING BANKRUPTCY PROCEEDINGS, | |

49

| | | United States District Court Eastern District of Michigan Case No. 2:06-cv-11282-AJT-RSW | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| | | MOTION FOR ATTORNEY FEES AND REPORT AND RECOMMENDATION ARE STAYED UNTIL BANKRUPTCY PROCEEDINGS ARE COMPLETED. PLAINTIFF AND DEFENDANT DIRECTED TO CONTACT THE COURT AS SOON AS THE BANKRUPTCY STAY HAS BEEN LIFTED. Signed by District Judge Julian Abele Cook. (KDoa) (Entered: 08/23/2013) | |
| 10/29/2014 | | Text-Only Order of reassignment from District Judge Julian Abele Cook to District Judge Arthur J. Tarnow pursuant to Administrative Order. (SSch) (Entered: 10/29/2014) | |
| 03/31/2015 | 169 | ORDER (granting in part and denying in part 148 Motion for Attorney Fees; adopting 162 Report and Recommendation) | 5214-5223 |
| 04/20/2015 | 170 | Notice of Appeal | 5224-5226 |
| 04/21/2015 | 171 | Certificate of Service to United States Court of Appeals for the Sixth Circuit | 5227 |
| 08/23/2016 | 172 | Opinion | 5228-5248 |
| 09/14/2016 | 173 | Mandate | 5249-5250 |
| 09/20/2017 | 174 | Plaintiffs' Second Supplemental Motion for Attorney's Fees and Costs | 5251-5268 |
| 09/20/2017 | 174-2 | Exhibit A - Affidavit of Bradley J. Shafer in Support of Plaintiffs' Second Supplemental Motion for Attorney's Fees and Costs | 5271-5291 |
| 09/20/2017 | 174-3 | Exhibit B - Order Confirming Eighth Amended Plan for the Adjustment of Debts of theCity of Detroit (Doc 8272) | 5292-5516 |
| 09/20/2017 | 174-4 | Exhibit C - "Class 14 – Other Unsecured Claims" have an "Estimated Percentage Recovery" of 10-13 percent (Doc 4391) | 5517-5713 |

| United States District Court Eastern District of Michigan Case No. 2:06-cv-11282-AJT-RSW | | | |
|---|---|---|---|
| Date Filed | Record Entry # | Description | PageID# |
| 09/20/2017 | 174-5 | Exhibit D - Motion for an Order Approving Reserve Amounts (Doc 9351) | 5714-5776 |
| 09/20/2017 | 174-6 | Exhibit E - Order A5292pproving Reserve Amounts (Doc 9701) | 5777-5784 |
| 09/26/2018 | 175 | Order of Reference to United States Magistrate Judge | 5785 |
| 09/28/2017 | 179 | Report and Recommendation | 5886-5904 |
| 10/03/17 | 180 | Errata Sheet to Report and Recommendation | 5905-5906 |
| 10/12/2017 | 181 | Plaintiffs' Objections to Magistrate's Report and Recommendation | 5907-5920 |
| 01/25/2018 | 182 | Order Adopting in Part Report and Recommendation [179]; Overruling Plaintiff's Objection [181]; Granting in part Plaintiffs' Second Motion for Attorney's Fees [174]. | 5921-5930 |
| 02/22/2018 | 183 | Notice of Appeal | 5931 |
| 02/23/2018 | 184 | Certificate of Service | 5932 |

51

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | Eastern District of Michigan | PROOF OF CLAIM |

Name of Debtor:

City of Detroit, Michigan

Case Number:

13-53846

**FILED**

FEB 2 0 2014

US Bankruptcy Court
MI Eastern District
COURT USE ONLY

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

K and P, Incorporated

☐ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:

Shafer & Associates, P.C.
3800 Capital City Blvd, Suite 2
Lansing, MI 48906

Telephone number:  (517) 886-6560    email:  brad@bradshaferlaw.com

**Court Claim Number:** _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):

Telephone number:          email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**RECEIVED**

FEB 2 4 2014

KURTZMAN CARSON CONSULTANTS

1. **Amount of Claim as of Date Case Filed:**   $          1,563,107.76

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to **priority,** complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. **Basis for Claim:**   42 U.S.C. Section 1988
    (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as:  UNLIQUIDATED  (See instruction #3a) | 3b. Uniform Claim Identifier (optional):  (See instruction #3b) |

4. **Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐Real Estate  ☐Motor Vehicle  ☐Other
Describe:

**Value of Property:** $_____

**Annual Interest Rate_____% ☐Fixed  or  ☐Variable
(when case was filed)**

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$_____

**Basis for perfection:** _____

**Amount of Secured Claim:** $_____

**Amount Unsecured:** $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

**RECEIVED**

**FEB 2 4 2014**

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**KURTZMAN CARSON CONSULTANTS**

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.   ☑ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   Brad J. Shafer
Title:   President
Company:   Shafer & Associates, P.C.
Address and telephone number (if different from notice address above):

(Signature)                         (Date)   2-20-14

Telephone number:                         email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

LAW OFFICES
SHAFER & ASSOCIATES, P.C.
A PROFESSIONAL CORPORATION
3800 CAPITAL CITY BLVD., SUITE 2
LANSING, MI 48906
E-MAIL info@bradshaferlaw.com
PHONE: 517-886-6560
FAX: 517-886-6565

BRADLEY J. SHAFER
ALSO MEMBER, AZ BAR
Brad@bradshaferlaw.com

MATTHEW J. HOFFER
Matt@bradshaferlaw.com

February 20, 2014

## SUMMARY OF ATTACHED DOCUMENTS

This is a summary of the attached documents, authorized under Federal Rule of Bankruptcy Procedure 3001(c). Attached is the Consent Decree declaring Shafer & Associates, P.C.'s clients the prevailing parties in that action, which serves as the basis for these claims. Also attached is a summary of invoices reflecting the full amount of attorney fees and costs claimed under 42 U.S.C. § 1988 (the statute that mandates an award of attorney fees and costs to a prevailing party in a civil rights action), which is claimed by the creditors. After Shafer & Associates, P.C. timely filed a motion for attorneys' fees and costs, Magistrate Steven Whalen issued a Report & Recommendation. Shafer & Associates timely filed an objection to the Report & Recommendation, which was followed by the City of Detroit's own objections. The bankruptcy proceeding was then initiated before Judge Cook adjudicated the motion.

There are four potential creditors: Shafer & Associates, P.C., and its clients in the federal action: HDV Greektown, LLC, K & P, Inc., and 415 East Congress St, LLC. Each creditor asserts a claim for the full amount because the clients and the law firm jointly assert the claim to the attorneys' fees and costs. The total amount claimed is $1,563,107.76, but this number appears on each of the four separate proof of claim forms to preserve all claims. Because all amounts are owed but yet to be determined by the trial court judge, the proper amount is currently unliquidated for all four creditors.

Very truly yours,

SHAFER & ASSOCIATES, P.C.

By:    Bradley J. Shafer

# PROOF OF CLAIM FORM B-10

## INDEX OF ATTACHMENTS

| Tab | Document |
|-----|----------|
| 1 | Summary of Billing up to December 31, 2011 |
| 2 | Invoices from January 1, 2012 through July 17, 2013 |
| 3 | Consent Decree |
| 4 | Magistrate's Report & Recommendation |
| 5 | Plaintiff's Objection to Report & Recommendation |
| 6 | Defendant's Response to Plaintiff's Objections |

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT   Eastern District of Michigan | | **PROOF OF CLAIM** |
|---|---|---|

| Name of Debtor:<br><br>City of Detroit, Michigan | Case Number:<br><br>13-53846 |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

**FILED**

**FEB 2 0 2014**

US Bankruptcy Court
MI Eastern District

Name of Creditor (the person or other entity to whom the debtor owes money or property):
H.D.V. Greektown, LLC

❏ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:
Shafer & Associates, P.C.
3800 Capital City Blvd, Suite 2
Lansing, MI 48906

**Court Claim Number:** _____
*(If known)*

Filed on: _____

Telephone number: (517) 886-6560   email: brad@bradshaferlaw.com

Name and address where payment should be sent (if different from above):

❏ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number:         email:

**RECEIVED**

FEB 2 4 2014

KURTZMAN CARSON CONSULTANTS

**1. Amount of Claim as of Date Case Filed:**          $          1,563,107.76

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

❏ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** 42 U.S.C. Section 1988
(See instruction #2)

| **3. Last four digits of any number** by which creditor identifies debtor: | **3a. Debtor may have scheduled account as:**<br><br>UNLIQUIDATED<br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br><br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ❏Real Estate  ❏Motor Vehicle  ❏Other
Describe:

**Value of Property:** $_____

**Annual Interest Rate_____%** ❏Fixed  or  ❏Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$_____

Basis for perfection: _____

**Amount of Secured Claim:** $_____

**Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

❏ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❏ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❏ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making †

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

RECEIVED

FEB 24 2014

If the documents are not available, please explain:

KURTZMAN CARSON CONSULTANTS

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.   ☑ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Brad J. Shafer
Title: President
Company: Shafer & Associates, P.C.
Address and telephone number (if different from notice address above):

(Signature)    2-20-14  (Date)

Telephone number:        email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided in this proof of claim is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

LAW OFFICES
SHAFER **&** ASSOCIATES, P.C.
A PROFESSIONAL CORPORATION
3800 CAPITAL CITY BLVD., SUITE 2
LANSING, MI 48906
E-MAIL info@bradshaferlaw.com
PHONE: 517-886-6560
FAX: 517-886-6565

BRADLEY J. SHAFER
ALSO MEMBER, AZ BAR
Brad@bradshaferlaw.com

MATTHEW J. HOFFER
Matt@bradshaferlaw.com

February 20, 2014

### SUMMARY OF ATTACHED DOCUMENTS

This is a summary of the attached documents, authorized under Federal Rule of Bankruptcy Procedure 3001(c). Attached is the Consent Decree declaring Shafer & Associates, P.C.'s clients the prevailing parties in that action, which serves as the basis for these claims. Also attached is a summary of invoices reflecting the full amount of attorney fees and costs claimed under 42 U.S.C. § 1988 (the statute that mandates an award of attorney fees and costs to a prevailing party in a civil rights action), which is claimed by the creditors. After Shafer & Associates, P.C. timely filed a motion for attorneys' fees and costs, Magistrate Steven Whalen issued a Report & Recommendation. Shafer & Associates timely filed an objection to the Report & Recommendation, which was followed by the City of Detroit's own objections. The bankruptcy proceeding was then initiated before Judge Cook adjudicated the motion.

There are four potential creditors: Shafer & Associates, P.C., and its clients in the federal action: HDV Greektown, LLC, K & P, Inc., and 415 East Congress St, LLC. Each creditor asserts a claim for the full amount because the clients and the law firm jointly assert the claim to the attorneys' fees and costs. The total amount claimed is $1,563,107.76, but this number appears on each of the four separate proof of claim forms to preserve all claims. Because all amounts are owed but yet to be determined by the trial court judge, the proper amount is currently unliquidated for all four creditors.

Very truly yours,

SHAFER & ASSOCIATES, P.C.

By:   Bradley J. Shafer

# PROOF OF CLAIM FORM B-10

## INDEX OF ATTACHMENTS

| Tab | Document |
|-----|----------|
| 1 | Summary of Billing up to December 31, 2011 |
| 2 | Invoices from January 1, 2012 through July 17, 2013 |
| 3 | Consent Decree |
| 4 | Magistrate's Report & Recommendation |
| 5 | Plaintiff's Objection to Report & Recommendation |
| 6 | Defendant's Response to Plaintiff's Objections |

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | Eastern District of Michigan | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: <br><br> City of Detroit, Michigan | Case Number: <br><br> 13-53846 |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

415 East Congress, LLC

Name and address where notices should be sent:

Shafer & Associates, P.C.
3800 Capital City Blvd, Suite 2
Lansing, MI 48906

Telephone number: (517) 886-6560   email: brad@bradshaferlaw.com

Name and address where payment should be sent (if different from above):




Telephone number:        email:

**FILED**

FEB 20 2014

US Bankruptcy Court
COURT DISTRICT
MI Eastern District

❏ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
   (*If known*)

Filed on:_____

❏ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**RECEIVED**

FEB 24 2014

**KURTZMAN CARSON CONSULTANTS**

**1. Amount of Claim as of Date Case Filed:**     $         1,563,107.76

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

❏ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** __42 U.S.C. Section 1988__
   (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as: <br><br> UNLIQUIDATED <br> (See instruction #3a) | 3b. Uniform Claim Identifier (optional): <br><br><br> (See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ❏ Real Estate  ❏ Motor Vehicle  ❏ Other
**Describe:**

**Value of Property: $**_____

**Annual Interest Rate**_____% ❏ Fixed  or  ❏ Variable
**(when case was filed)**

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$_____

**Basis for perfection:** _____

**Amount of Secured Claim:**   $_____

**Amount Unsecured:**   $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).  If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

❏ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❏ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❏ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making t

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**RECEIVED**

**FEB 24 2014**

**8. Signature:** (See instruction #8)

Check the appropriate box.

**KURTZMAN CARSON CONSULTANTS**

☐ I am the creditor.  ☑ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   Brad J. Shafer
Title:   President
Company:   Shafer & Associates, P.C.
Address and telephone number (if different from notice address above):

_____  (Signature)   2-20-14  (Date)

Telephone number:   _____   email:   _____

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are **general** explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

LAW OFFICES
SHAFER **&** ASSOCIATES, P.C.
A PROFESSIONAL CORPORATION
3800 CAPITAL CITY BLVD., SUITE 2
LANSING, MI 48906
E-MAIL info@bradshaferlaw.com
PHONE: 517-886-6560
FAX: 517-886-6565

BRADLEY J. SHAFER
ALSO MEMBER, AZ BAR
Brad@bradshaferlaw.com

MATTHEW J. HOFFER
Matt@bradshaferlaw.com

February 20, 2014

## SUMMARY OF ATTACHED DOCUMENTS

This is a summary of the attached documents, authorized under Federal Rule of Bankruptcy Procedure 3001(c). Attached is the Consent Decree declaring Shafer & Associates, P.C.'s clients the prevailing parties in that action, which serves as the basis for these claims. Also attached is a summary of invoices reflecting the full amount of attorney fees and costs claimed under 42 U.S.C. § 1988 (the statute that mandates an award of attorney fees and costs to a prevailing party in a civil rights action), which is claimed by the creditors. After Shafer & Associates, P.C. timely filed a motion for attorneys' fees and costs, Magistrate Steven Whalen issued a Report & Recommendation. Shafer & Associates timely filed an objection to the Report & Recommendation, which was followed by the City of Detroit's own objections. The bankruptcy proceeding was then initiated before Judge Cook adjudicated the motion.

There are four potential creditors: Shafer & Associates, P.C., and its clients in the federal action: HDV Greektown, LLC, K & P, Inc., and 415 East Congress St, LLC. Each creditor asserts a claim for the full amount because the clients and the law firm jointly assert the claim to the attorneys' fees and costs. The total amount claimed is $1,563,107.76, but this number appears on each of the four separate proof of claim forms to preserve all claims. Because all amounts are owed but yet to be determined by the trial court judge, the proper amount is currently unliquidated for all four creditors.

Very truly yours,

**SHAFER & ASSOCIATES, P.C.**

By:    **Bradley J. Shafer**

# PROOF OF CLAIM FORM B-10

## INDEX OF ATTACHMENTS

| Tab | Document |
| --- | --- |
| 1 | Summary of Billing up to December 31, 2011 |
| 2 | Invoices from January 1, 2012 through July 17, 2013 |
| 3 | Consent Decree |
| 4 | Magistrate's Report & Recommendation |
| 5 | Plaintiff's Objection to Report & Recommendation |
| 6 | Defendant's Response to Plaintiff's Objections |

```
 1                 UNITED STATES BANKRUPTCY COURT
                   EASTERN DISTRICT OF MICHIGAN
 2                      SOUTHERN DIVISION

 3   IN THE MATTER OF,            Case No. 13-53846
                                 Detroit, Michigan
 4   CITY OF DETROIT, MI         July 15, 2015
     _____/   1:39 p.m.
 5
     IN RE:  FURTHER, NON-EVIDENTIARY HEARING RE: SHERELL STANLEY'S
 6     MOTION FOR THE EXTENSION OF TIME, FURTHER, NON-EVIDENTIARY
        HEARING RE: APPLICATION FOR ADMINISTRATIVE EXPENSE CLAIM,
 7     FILED BY CREDITOR SHERELL STANLEY, FURTHER, NON-EVIDENTIARY
        HEARING RE: APPLICATION FOR ADMINISTRATIVE EXPENSE CLAIM,
 8     FILED BY CREDITOR SHEILA REED, MOTION TO ALLOW LATE FILED
      CLAIM BY CREDITOR SHEILA REED, CITY OF DETROIT'S MOTION FOR
 9     THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT
     INJUNCTION AND (II) REQUIRING THE DISMISSAL OF THE STATE COURT
10    ACTION FILED BY TANYA HUGHES AND CORRECTED MOTION OF STEVEN
     WOLAK, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF CHRISTOPHER
11    WOLAK, DECEASED, TO COMPEL PAYMENT BY DEBTOR PURSUANT TO
        SETTLEMENT CONTRACT, OR ALTERNATIVELY, VOID SETTLEMENT
12                CONTRACT AND REINSTATE CASE.
                BEFORE THE HONORABLE THOMAS J. TUCKER
13               TRANSCRIPT ORDERED BY: ROBIN WYSOCKI

14   APPEARANCES:

15   For the City of Detroit, MI:  MARC SWANSON, ESQ. (P71149)
                                   JONATHAN GREEN, ESQ. (P33140)
16                                 Miller, Canfield, Paddock &
                                   Stone
17                                 150 West Jefferson
                                   Suite 2500
18                                 Detroit, MI 48226
                                   313-496-7591
19
     For Tanya Hughes:            JEFFREY ELLISON, ESQ. (P35735)
20                                 214 S. Main Street
                                   Suite 210
21                                 Ann Arbor, MI 48104
                                   734-761-4300
22                                 734-528-4159

23   For Steven Wolak, as         DAVID DWORETSKY, ESQ. (P67026)
     Personal Representative of   19390 W. Ten Mile Road
24   the Estate of Christopher    Southfield, MI 48075
     Wolak, Deceased:             248-355-5555
25
```

1 | PRESENT:                    SHERELL STANLEY
                                SHEILA REED

2 |
    Court Recorder:             Jamie Laskaska

3 |
    Transcriber:                Deborah L. Kremlick

4 |

5 |

6 | Proceedings recorded by electronic sound recording, transcript
    produced by transcription service.

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

1      (Court in Session)

2           THE CLERK:  All rise.  This Court is now in session.

3   The Honorable Thomas J. Tucker is presiding.  You may be

4   seated.  The Court calls the case of the City of Detroit,

5   Michigan, case number 13-53846.

6           THE COURT:  All right.  Good afternoon, everyone.

7   Let's have appearance for the record starting with counsel for

8   the city, please.

9           MR. SWANSON:  Good afternoon, Your Honor.  Marc

10  Swanson and Jonathan Green from Miller, Canfield, Paddock, and

11  Stone.

12          MR. ELLISON:  Good afternoon, Your Honor.  Jeffrey

13  Ellison appearing on behalf of Tanya Hughes.

14          MR. DWORETSKY:  Good afternoon, Your Honor.  David

15  Dworetsky on behalf of Steven Wolak, personal representative

16  of the estate of Christopher Wolak, deceased.

17          THE COURT:  All right.  Good afternoon to everyone.

18  We have I think it's four matters scheduled for hearing today.

19  So let's begin with the -- I believe first matter listed --

20  actually there's four groups of matters.

21       The first matters I want to take up are the matters --

22  the two matters involving Sherell Stanley.  Is Sherell Stanley

23  here?  Those would be then the further hearing regarding

24  Sherell Stanley's motion for extension of the deadline to file

25  an administrative expense claim and Sherell Stanley's

1  application for administrative expense claim.

2      Ms. Stanley, you're here.  Would you enter your

3  appearance for the record?

4          MS. STANLEY:  Sherell Stanley.

5          THE COURT:  All right.  All right.  Good afternoon

6  to all of you.  Mr. Swanson, you're going to be arguing for

7  the city.

8          MR. SWANSON:  Yes, Your Honor.

9          THE COURT:  All right.  So the -- I believe the last

10  hearing we had on these matters was on June 3rd.  After that

11  hearing, the parties took advantage of the Court's requiring

12  actually, permitting and requiring the filing of further

13  written materials regarding these matters.  That's the Court's

14  order that was filed on June 4th at docket 9929 regarding

15  further proceedings on these matters.

16      I did see that Ms. Stanley filed a brief after the June

17  3rd hearing on June 17 at docket 9978.  The city filed a

18  response to that brief on July 2, 2015 at docket 10019.  That

19  was a corrected, I believe, version of -- of a document that

20  had been filed earlier.

21      And I have reviewed these papers.  So these are two

22  related matters obviously.  Let me hear from the parties next

23  about this.  Mr. Swanson, I'll start with you and then we'll

24  hear from Ms. Stanley.

25          MR. SWANSON:  Thank you, Your Honor.  Ms. Stanley's

1  application and her motion should be denied for two reasons.

2      First, Ms. Stanley's application does not set forth an

3  expense incurred in the actual administration of the city's

4  bankruptcy case.  Ms. Stanley offered two sentences in

5  response to the city's argument that her claim is not an

6  administrative expense under Chapter 9 of the Bankruptcy Code.

7      She argued pursuant to 11 USC 503(b), business expenses

8  for debtors operating during a bankruptcy case qualify as

9  administrative claims.  My claim arose post-petition and so

10  qualifies based on services rendered and inequitable

11  treatment.

12      This Court, however, held that costs "incurred" in

13  connection with the actual administration of the Chapter 9

14  case constitute administrative expenses and only those costs,

15  thereby excluding business expenses of the debtor.  Using this

16  definition the Court ruled that employee wage claims are not

17  administrative expenses.  If employee wage claims are not

18  costs --

19          THE COURT:  Now you're referring there to the ruling

20  that I made in the bench opinion in -- on May 27, 2015 in

21  connection with objections to certain other claims in this

22  case not involving Ms. Stanley.  That's the ruling that I

23  filed a transcript of in this case on June 4 for the reference

24  of the parties including Ms. Stanley, is that right?

25          MR. SWANSON:  That's correct, Your Honor.

1          THE COURT:  Yeah.

2          MR. SWANSON:  It appears at docket number 9934.

3          THE COURT:  All right.  Go ahead, you were saying.

4          MR. SWANSON:  Thank you.  The Court's holding means

5  that Ms. Stanley's alleged business expenses are not

6  administrative expenses in a Chapter 9 case because they do

7  not fall within the narrow category of costs of

8  administration.

9          And Ms. Stanley does not argue that her claims were

10 involved in the actual administration of the bankruptcy case

11 because they were not.  Thus, on this basis alone, Ms.

12 Stanley's application and her motion to permit an untimely

13 filing must be denied.

14         The second reason, Your Honor, that both the application

15 and motion must be denied is that Ms. Stanley has not rebutted

16 the presumption of receipt that this Court identified in the

17 Yoder case.  During the previous hearing on this matter, the

18 Court repeatedly stated that the key question under Yoder was

19 whether Ms. Stanley received the notice.

20         In fact the Court mentioned the words receive or receipt

21 at least 25 times just in seven pages of the transcript when

22 it was explaining the Yoder case.

23         `THE COURT:  I do tend to repeat myself I guess.

24         MR. SWANSON:  It re-emphasized that the crucial

25 point is whether Ms. Stanley received the notice in its order

1 because it said Ms. Stanley had to prove that she did not

2 "actually receive the notice". Despite this consistent and

3 clear direction from the Court, neither in her declaration,

4 nor in Ms. Black's declaration, was it ever once said, I did

5 not receive the notice. Or Ms. Stanley did not receive the

6 notice.

7     Instead Ms. Stanley contends that the notice was not

8 "observed" by her. And that it was not in one of her binders.

9 Not observing any of the four notices mailed to her

10 individually is entirely consistent with receiving them and

11 failing to open them, losing them, or simply ignoring them.

12     There can be no question that Ms. Stanley was aware that

13 the key question here was did she receive them. Saying that

14 she did not observe something is not the same thing as not

15 receiving it.

16     Further, Your Honor, the Court -- or the city took a

17 further review of the certificate of service that it cited to

18 in its original objections and it noticed that Ms. Stanley's

19 attorney was also mailed the notice, once on behalf of Ms.

20 Stanley, and two other times on behalf of different clients he

21 had on the case.

22     So it is simply inconceivable to the city, Your Honor,

23 that not one of the four notices that was mailed to Ms.

24 Stanley, or any of the three notices that was mailed to her

25 attorney, were not actually received. And this is almost

1 certainly why Ms. Stanley had never come out and made the

2 simple statement under penalty of perjury that she did not

3 receive the notice.  There is no excusable neglect here, Your

4 Honor.

5     In sum, Your Honor, the motion and application should be

6 denied for two reasons.  First, this is not an administrative

7 expense in a Chapter 9 claim.  These are unproven allegations

8 of discrimination.  The EEOC has not even made a determination

9 of whether it's going to go forward on this.

10     And second, Your Honor, the Court required -- the Court

11 emphasized, and the Court told Ms. Stanley that she had to

12 file a declaration under penalty of perjury saying she did not

13 receive the notice and she had failed to do so.  Thank you.

14         THE COURT:  All right.  Thank you.  Ms. Stanley,

15 what would you like to say?

16         MS. STANLEY:  Sir, at the risk of being redundant, I

17 can -- Attorney Swanson wants me to make a declaration that

18 this notice was received at my P.O. Box and that is simply a

19 declaration I cannot make.

20     I can -- I am not in good conscience make a declaration

21 of something I know nothing about and could not know about

22 considering that I was not available apparently when the

23 notice was -- was mailed.  And the individual who receives my

24 mail when I'm unavailable also indicated that she was unaware

25 of having received the envelopes, not that I would expect her

1  to know the contents of any envelopes received at my post

2  office box at any rate.

3      Attorney Swanson also indicates that I should have known

4  because the notice was posted in the *Daily News*, *Free Press*,

5  and/or *The Wall Street Journal*.  And he's making an assumption

6  there that I pay for the -- the *News* or the *free Press*, or *The*

7  *Wall Street Journal* which I do not.  And I did not download a

8  copy from the internet off of KCC's web site.  I actually

9  surfed the net in order to procure a copy of -- of the notice.

10  And that was only after having been advised of it by the

11  federal EEOC office.

12      Attorney Swanson also indicates that I should have known

13  because my attorney had been placed on notice.  I believe he

14  is referring to Attorney Mason, however --

15          THE COURT:  I believe he is, yes.  Go ahead.

16          MS. STANLEY:  Okay.  However, Attorney Mason is not

17  representing me in this particular matter.  Attorney Mason

18  represented me in a matter concerning the special response

19  team of the Detroit Police Department, and not this particular

20  matter.

21      With respect to this claim, the federal EEOC office filed

22  a claim on my behalf, however, I filed a claim separate and

23  distinct than of the federal EEOC office which I'm requesting

24  this case -- this Court to review on its face and again

25  separate and distinct of that -- from that of the EEOC office.

1    With respect to whether it qualifies as an

2  administrative --

3         THE COURT:  Does Attorney Mason represent you in

4  filing the proof of claim for your pre-petition unsecured

5  claim in the case?

6         MS. STANLEY:  With respect to SRT.  This is an

7  entirely separate claim with the EEOC office.

8         THE COURT:  So you're -- the pre -- the proof of

9  claim that you filed --

10        MS. STANLEY:  Yes, sir.

11        THE COURT:  -- was not -- did not include this

12  discrimination claim that you're seeking an administrative

13  expense claim treatment for, is that what you're saying?

14        MS. STANLEY:  I'm sorry, say that -- say that again,

15  please.

16        THE COURT:  You filed -- you filed a proof of claim.

17        MS. STANLEY:  Yes, sir.

18        THE COURT:  In addition to this motion for allowance

19  of administrative expense claim that we're hearing today,

20  right?

21        MS. STANLEY:  Yes, sir.

22        THE COURT:  Yeah.  And the application for

23  administrative expense claim is the one that was filed on

24  February 6 of 2015.  The proof of claim that was filed was

25  filed before the February -- I think it was February 21, 2014

1  deadline.

2        MS. STANLEY:  Yes, sir.

3        THE COURT:  Did Mr. Mason file that on your behalf?

4        MS. STANLEY:  With respect to the -- the claim that

5  I have concerning SRT.  There are two separate claims.

6        THE COURT:  Is that all that -- is that all the

7  proof of claim covered?

8        MS. STANLEY:  I have -- I have two separate claims,

9  sir.  Maybe I'm not understanding.

10        THE COURT:  Was there an employment discrimination

11  claim included in your proof of claim that you filed?

12        MS. STANLEY:  Was there -- I'm sorry?

13        THE COURT:  Do you understand my question?

14        MS. STANLEY:  No, I do not.

15        THE COURT:  Did your proof of claim that you

16  filed --

17        MS. STANLEY:  Uh-huh.

18        THE COURT:  Not the administrative expense claim

19  that we're hearing today, but your proof of claim that was

20  filed back in -- by the February 2014 deadline, did that

21  include a claim -- any claim of employment discrimination?

22        MS. STANLEY:  Yes, sir.

23        THE COURT:  It did?

24        MS. STANLEY:  Yes, sir.

25        THE COURT:  Are you saying that's a different

1 employment discrimination claim than the one you're -- that's

2 the subject of your administrative expense application?

3          MS. STANLEY: Yes, sir.

4          THE COURT: All right. So Attorney Mason filed that

5 for you, that proof of claim?

6          MS. STANLEY: Yes, sir.

7          THE COURT: All right. And what you're saying about

8 him is he doesn't -- or he didn't represent you, and doesn't

9 represent you in connection with your employment

10 discrimination claim that is the subject of the administrative

11 expense claim?

12          MS. STANLEY: Correct.

13          THE COURT: All right. Go on. You -- go ahead, you

14 were saying then.

15          MS. STANLEY: Okay. And I wanted to reiterate also

16 that Attorney Swanson indicated in his -- in his previous

17 objection to my motion, that my allegations of discrimination,

18 harassment, and retaliation against the City of Detroit were

19 unfounded allegations. And I just want to reiterate that it's

20 premature to make that -- that contention considering that the

21 federal EEOC office is -- considering that the matters are

22 still under investigation.

23     And finally, with regard to whether my application for

24 the administrative claims qualify as such, I just want to

25 reiterate that my federal EEOC complaint does concern

1  discrimination, harassment, retaliation and that within that

2  context there was also an allegation that I was denied

3  overtime opportunities to which I was entitled.

4      And I would just ask that the Court make a ruling with

5  respect to whether it qualifies as an administrative claim.

6  And if not, obviously the -- the application with regard -- in

7  that regard would become a moot issue.  But I do ask the Court

8  to -- to make an exception and a ruling in that regard.

9          THE COURT:  Anything else?

10          MS. STANLEY:  No, sir.

11          THE COURT:  I've noticed -- and getting back to this

12  Attorney Mason.  Your application for administrative expense

13  claim that was filed on February 6, 2015, it's docket 9189.

14  It's been the subject of today's hearing and the June 3rd

15  hearing of which the handwritten document -- that's your --

16  that's your handwriting in there.

17          MS. STANLEY:  Yes, sir.

18          THE COURT:  Yeah.  You wrote it, and signed it, and

19  filed it.  It -- it says in the paragraph numbered one, it

20  talks about how you're stating that on or about November 7,

21  2013, you filed the attached federal EEOC complaint against

22  the city for gender discrimination, retaliation, and the

23  continued infliction of emotional distress.

24      And in paragraph number three, it says debtor requests,

25  and you wrote in $1,000,000 in relief, a claim filed

1  previously on at least two separate occasions with the

2  Bankruptcy Court (see claim 2603).  That seems to imply that

3  -- that -- that the subject matter of your administrative

4  expense claim was the same subject matter, same claim as -- or

5  included in the claim that you filed in the proof of claim,

6  claim number 2603.  Or is that a reference to an earlier

7  motion in the case?  2603, that's not a reference to your

8  proof of claim you're saying?

9          MS. STANLEY:  It does refer to my proof of claim,

10  however, I had more than one proof of claim that was filed.

11  The proof of claim that Attorney Mason was responsible for is

12  claim number 787 if I'm not mistaken.  And the proof of claim

13  that -- that the federal EEOC office filed --

14          THE COURT:  Is that claim 2603 that you're referring

15  to?

16          MS. STANLEY:  It appears to be 2481.

17          THE COURT:  All right.  Anything else you'd like to

18  say, Ms. Stanley?

19          MS. STANLEY:  No, sir.

20          THE COURT:  All right.  Thank you.  Mr. Swanson,

21  I'll -- I'll give you a brief opportunity to reply if you'd

22  like to regarding this.

23          MR. SWANSON:  Very briefly, Your Honor.  Ms. Stanley

24  was very candid with the Court.  She admitted she can't say I

25  did not receive the notice.  That's what this Court requires.

1  That's what <u>Yoder</u> requires.  And we'd ask the Court to deny

2  both the motion and application.  Thank you.

3           THE COURT:  All right.  Thank you both.  I'm going

4  to rule on these matters now.

5      On June 3rd and today the Court has held hearings on two

6  matters, related matters concerning Sherell Stanley.  One is

7  the application for administrative expense claim that she

8  filed with the Court on February 6th, 2015 at docket number

9  9189.  The City of Detroit filed an objection to that

10 application at docket number 9789.  The Court held hearings on

11 June 3rd and today regarding that.

12     The second matter relatedly is the motion that Ms.

13 Stanley filed for an extension of time or the deadline to file

14 her application for administrative expense claim.  Ms. Stanley

15 filed that motion on May 21, 2015 at docket number 9875.

16     The City of Detroit filed a timely objection to that

17 motion and the Court -- again held it hearing on that motion

18 on June 3 and has held one again today.  After the June 3rd

19 hearing the Court gave the parties deadlines for filing a

20 further brief regarding the specific specified matters or

21 issues.  Pardon me.

22     Ms. Stanley was required to file a written reply in

23 support of her motion for extension of time which must include

24 and was required to include any response Ms. Stanley has to

25 the City of Detroit's so-called futility argument.  That's an

1 | argument by the city that was discussed during the June 3rd

2 | hearing.  That is basically the city's argument that even if

3 | Ms. Stanley were granted an extension of the deadline after

4 | the fact to file an administrative expense claim, it would be

5 | futile because her administrative expense claim would have to

6 | be disallowed on the merits because it's not an appropriate

7 | matter that could be allowed as an administrative expense

8 | claim in this Chapter 9 case.  That's a -- an argument I'll

9 | talk about more in a minute.

10 |      Ms. Stanley did file on a timely basis, on June 17th at

11 | docket 9978, her written reply in support of her motion for

12 | extension of time.  And in that written document she did

13 | reply, rather briefly, but she did reply to the city's

14 | futility argument.  She attached also to that reply a

15 | declaration under penalty of perjury by herself and by Sherita

16 | Black.  I've reviewed these items.

17 |      The city as I noted earlier ,then filed as permitted and

18 | required by -- as permitted by the Court's June 4 order,

19 | docket 9929, the city filed a response to Ms. Stanley's June

20 | 17 reply.

21 |      The -- the issue of whether or not Ms. Stanley has

22 | successfully rebutted the presumption that arises in

23 | connection with the so-called mailbox rule that I discussed at

24 | the June 3rd hearing with the parties and which the parties

25 | argue about, is a matter which I find unnecessary to decide as

1    it turns out given the ruling I'm going to make about the

2    futility argument.

3        The -- there is certainly substantial grounds upon which

4    -- and evidence upon which the Court could find that Ms.

5    Stanley's -- that the notice which -- that was mailed four

6    different occasions apparently, or four different times by the

7    city's noticing and service agent to Ms. Stanley's post office

8    box address back in December which included a notice of the

9    deadline for filing administrative expense claims, was in fact

10   actually received at Ms. Stanley's P.O. Box back in December,

11   well before the deadline for filing administrative expense

12   claims.  However, there is in my view and despite the city's

13   arguments on this, there is sufficient evidence in the

14   declarations under penalty of perjury of Ms. Stanley and Ms.

15   Black on this subject to, at a minimum, require the Court to

16   hold an evidentiary hearing if the Court concludes that it

17   must decide, in fact must decide the issue of whether or not

18   the notice was actually received at Ms. Stanley's post office

19   box.

20       That is the evidence does sufficiently overcome the

21   presumption of receipt such that the Court would need to have

22   an evidentiary hearing on that subject in order to decide that

23   question.  The -- that question is important as I described

24   and discussed in the June 3rd hearing to the broader question

25   of whether or not Ms. Stanley had demonstrated or could

1  demonstrate excusable neglect in her failure to file her

2  application for administrative expense by the January 26, 2015

3  deadline set by the Court in the confirmed plan, Chapter 9

4  plan of adjustment.  And that in turn was -- is an important

5  consideration in determining whether or not the Court should

6  grant Ms. Stanley's motion for an extension of the -- of that

7  deadline.

8      I want to turn though to the futility, the so-called

9  futility argument by the city.  It is that argument which in

10  my view is dispositive of Ms. Stanley's administrative expense

11  claim without the need for the Court to hold an evidentiary

12  hearing on this subject of whether or not her P.O. Box

13  actually was filled in December with the notice sent to that

14  P.O. Box or mailed to that P.O. Box of the deadline for filing

15  administrative expense claims.

16      After the -- after the discussion in the June 3rd hearing

17  of this matter, the Court filed on June 4th, 2015, a

18  memorandum, docket 9934 that attached for reference of the

19  parties, that is the city and Ms. Stanley, as well as the

20  reference of Sheila Reed who also was a creditor who had

21  matters that were heard on June 3rd, in which the Court

22  attached highlighted copies of the transcript, excerpt of the

23  transcript of the May 27, 2015 hearing that the Court held in

24  this case on various objections to claim and a claim that had

25  been filed by the city, matters not directly involving Ms.

1 | Stanley.

2 |     As the Court pointed out in its June 4 memorandum, docket

3 | 9934, in the Court's -- in the course of the May 27 hearing,

4 | the Court made certain rulings regarding what must be

5 | demonstrated to show that a claim can qualify for treatment as

6 | an allowed administrative claim, administrative expense claim

7 | in a -- this Chapter 9 bankruptcy case.

8 |     And in particular in that transcript at Pages 57 to 58

9 | and 65 to 66 as the Court's pointed out in its memorandum, the

10 | Court made certain rulings on that subject in connection with

11 | certain other claims, administrative claims that had been

12 | filed in the case by other persons other than Ms. Stanley.

13 |     I later reiterate the rulings that I made in the May 27

14 | hearing and which are in that transcript that I just referred

15 | to.  And based on that ruling and also based upon the cases

16 | and the authorities that I cited -- that I will cite, I -- I

17 | reiterate that ruling and -- and the result of that ruling is

18 | that Ms. Stanley's administrative expense claim even if it

19 | were ruled ultimately to be timely filed rather than filed

20 | late, would have to be disallowed.

21 |     It would have to be disallowed because it does not --

22 | it's not the type of claim that qualifies for administrative

23 | expense treatment in this Chapter 9 bankruptcy case.  Ms.

24 | Stanley's claim is a claim that at various times including

25 | time periods after the city filed its Chapter 9 bankruptcy

1  case in July 2013, Ms. Stanley was the victim of illegal

2  employment discrimination.

3      As she put it in her administrative expense claim, gender

4  discrimination, retaliation, and the continued infliction of

5  emotional stress, all of which relate to her employment with

6  the City of Detroit and the Detroit Police Department.

7      The -- the theory that Ms. Stanley seems to be arguing in

8  her written response to the city's futility argument and in

9  today's hearing seems to be simply that because she was an

10  employee and suffered discrimination as an employee of the

11  city, after the filing of this bankruptcy case that that

12  qualifies as an administrative expense to the extent the claim

13  -- claims of discrimination have merit.

14      I must -- I must reject that argument.  As I pointed out

15  in the May 27 ruling, in order to qualify as an administrative

16  expense in a Chapter 9 bankruptcy case unlike Chapter 11

17  cases, other cases under other chapters of the Bankruptcy

18  Code, a claim must be for expenses incurred in connection with

19  the actual administration of the Chapter 9 case.  See in

20  particular at Pages 57 to 58 and 65 to 66 of the May 27th

21  transcript, the bench opinion I gave there.  Again it's

22  attached to docket 9934, the memorandum I filed May 4 in which

23  I made sure was mailed to Ms. Stanley shortly thereafter.

24      The -- one of the cases that support the view that the

25  type of expense that Ms. Stanley is claiming is not a proper

1  basis for an administrative expense is the case that the city

2  -- it cited before my May 27 ruling In Re: New York City Off

3  Track Betting Corporation, 434 BR 131.  In particular at 141

4  to 142 of that opinion, a decision of the Bankruptcy Court for

5  the Southern District of New York from 2010.

6      In that case the -- the Court held that what are

7  sometimes referred to as operating expenses of the debtor,

8  that is expenses of the debtor that are incurred after the

9  filing of a Chapter 9 bankruptcy case, are not allowable

10  administrative expenses simply because they are expenses of

11  the -- of municipalities' operations after the filing of the

12  petition date.

13      I -- I agree with that and the Court in that case cited

14  numerous authorities for that proposition and for the

15  proposition that in a Chapter 9 case because there is no

16  bankruptcy estate under Section 541 unlike what -- what

17  happens in a Chapter 11 bankruptcy case for example, the Court

18  cannot allow as an administrative expense any claim on the

19  theory that it's a necessary expense in preserving the

20  bankruptcy estate under Section 503(b) and in fact a narrower

21  definition and test for allowance of administrative expenses

22  applies in Chapter 9 unlike the -- the broader definition

23  under Section 503(b)(1) and that is as I stated earlier the

24  expense must be -- expenses incurred in connection with the

25  actual administration of the Chapter 9 case.

1    As I -- as I put in the May 27 bench opinion, and I also

2 say, "it is not sufficient in a Chapter 9 case to obtain an

3 allowed administrative expense merely to show and argue that

4 an employee worked for the municipality and through their work

5 as part of a work force that allowed the city to continue to

6 function while it was in Chapter 9 bankruptcy".

7    The -- in like manner a claim that an employee who worked

8 for the city after the filing of a bankruptcy case in a

9 Chapter 9 case and suffered employment discrimination in the

10 course of that also would not qualify for that reason alone as

11 an administrative expense, no matter how much merit the claim

12 might have as a claim under the -- the discrimination laws.

13    The quote I read from a -- a minute ago is from Page 66

14 of the transcript of my May 27 bench ruling.  Again that's

15 attached as -- to docket number 9934 filed June 4, 2015.

16    And so the city's futility argument is correct.  It would

17 be a futile exercise for the Court to hold the necessary

18 evidentiary hearing and make a ruling all for the sole purpose

19 of being able to determine whether or not Ms. Stanley could

20 show the necessary excusable neglect for having filed her

21 application for administrative expense claims after the

22 January 26, 2015 deadline.  And furthermore the Court must and

23 will sustain the city's objection to Ms. Stanley's application

24 for administrative expense claim and deny that application for

25 the -- the reason that it's not the subject of a proper

1  administrative expense that could be allowed as such in -- in

2  this Chapter 9 bankruptcy case under the law, no matter how

3  much merit the claim might have under discrimination laws.

4      And so that's the ruling of the administrative expense

5  claim.  The ruling on the motion for extension of time to file

6  that administrative expense claim is, that that motion is

7  denied because it would be futile for the Court to grant the

8  motion and also similarly because the motion actually is

9  rendered moot by the ruling the Court has just made regarding

10 the administrative expense application.  I'm denying the

11 application for administrative expense then for reasons

12 unrelated to the alleged untimeliness of the date on which it

13 was filed.

14     So I'll prepare and enter orders reflecting these

15 rulings.  Thank you.

16         MS. STANLEY:  Thank you for being so thorough, sir.

17         THE COURT:  Thank you.  All right.  The next matters

18 that we have again for a second hearing, further hearing, are

19 the matters concerning Sheila Reed.  Is Sheila Reed present?

20         MS. REED:  Yes, Your Honor, I am.

21         THE COURT:  Please come on up, Ms. Reed.  For the

22 record these are two related matters.  One is the application

23 for administrative expense claim that Ms. Reed filed on

24 January 30, 2015 at docket 9135 on the Court's docket and to

25 which the city objected.

1    The Court held a hearing on that on June 3rd.  And

2  promptly after the hearing, I guess the same day, Ms. Reed

3  filed, as the Court permitted her to do, filed an application

4  or motion to allow a late filed claim it was called.  It's

5  docket 9921 filed on June 3rd, 2015.

6    The -- asking the Court to allow -- retroactively allow

7  Ms. Reed an extension of the January 26, 2015 deadline for

8  filing administrative expense claims to the date on which Ms.

9  Reed actually filed her application for administrative expense

10  claim which was four days later, January 30, 2015 and in that

11  motion Ms. Reed argues excusable neglect.  Pardon me.

12    The city filed a timely objection to that motion on June

13  17, 2015 at docket 9980.  And the Court last Friday caused to

14  be issued a notice of hearing for hearing today on that

15  motion.  So that that could be heard together with the further

16  hearing on Ms. Reed's application for administrative expenses

17  which the Court scheduled for further hearing today during the

18  June 3rd hearing.

19    So the -- the Court entered an order on June 4, 2015 at

20  docket 9931 after the June 3rd hearing which required Ms. Reed

21  to file a motion seeking retroactively an extension of the

22  deadline to file administrative expense claims and required

23  that she do that no later than June 10, 2015.  That's the

24  motion that Ms. Reed did file on June 3rd.

25    The order, June 4 order, set a deadline for the city to

1  file a response to any such motion and the city did do that on

2  a timely basis.  The order said the city could include, in

3  responding to that motion, its so-called futility argument

4  which we discussed during the June 3rd hearing.

5      The order also permitted Ms. Reed, said she could -- may

6  file, she didn't have to, but she may file, a reply to the

7  city's response no later than June 24.  She did not do that.

8  I didn't see any such reply.  And that's fine, she wasn't

9  required to do -- to do that.  And then the order said the

10  Court would hold a further hearing today on the administrative

11  expense claim and on any such motion to extend the deadline

12  for that if one were -- were filed.

13      So I've reviewed the papers filed by the parties after

14  the June 3rd hearing.  And of course I re-reviewed the papers

15  filed by the parties before that hearing in preparation for

16  today's hearing.  And so now we'll -- we'll have the further

17  hearing on the administrative expense application and first

18  hearing on Ms. Reed's motion to extend the deadline to file

19  that application.

20      I'll hear first from Mr. Swanson for the city and then

21  we'll hear from Ms. Reed.  Mr. Swanson.

22          MR. SWANSON:  Well, thank you, Your Honor.  I'd like

23  to begin with that June 4th order that you referred to.  And

24  that June 4th order stated that Ms. Reed's motion in paragraph

25  1, "must be supported by an affidavit or a declaration under

1   penalty of perjury" and which Ms. Reed swears that she did not

2   actually received the December 10th, 2014 notice.  There was no

3   affidavit or a declaration attached to the motion.

4        The Court told Ms. Reed at the hearing, "if Ms. Reed does

5   not comply with the order by filing this motion to extend the

6   deadline with an affidavit or declaration under penalty of

7   perjury, attached by the deadline of June 10, the Court will

8   enter an order sustaining the city's objection on the grounds

9   of an untimely filing.

10        THE COURT:  You know, you're absolutely right.  I

11  did say that during the June 3rd hearing.  I reviewed the

12  transcript of the June 3rd hearing.  I -- I reviewed that after

13  you pointed that out in your written response to the motion

14  and I realized that I -- I said in the hearing to the parties

15  that I was going to include that in the order that I was going

16  to prepare and enter and then I -- I didn't do that.  I didn't

17  include it in the order, the June 4 order.

18        So I didn't do one of the things I said I was going to do

19  in the order.  But I -- I did see that in the transcript and

20  recall that I said that.  So your argument is even though it

21  wasn't in the June 4 order, I should -- I should -- I should

22  disallow or -- or deny the motion because Ms. Reed didn't file

23  the required declaration.

24        MR. SWANSON:  Exactly, Your Honor.

25        THE COURT:  Okay.  Go on.

1    MR. SWANSON: And -- and Ms. Reed's claim much like

2    Ms. Stanley's claim is an administrative expense claim

3    alleging discrimination for the reasons the Court just stated

4    with -- with -- with respect to Ms. Stanley's claim, this is

5    not a administrative expense in a Chapter 9 case and both the

6    motion and application should be denied on that further basis.

7    Thank you.

8        THE COURT: All right. Thank you. Ms. Reed, what

9    would you like to say about these matters?

10       MS. REED: Just the information provided during the

11   last Court hearing which was June 3rd, I was just made aware on

12   January 29th, 2015 from the EEOC department about the -- they

13   were just made aware regarding administrative claim and

14   expense that I went ahead and filed I believe on June --

15   January 30th.

16       They weren't aware that -- of the January 26 date until

17   after that. They -- was provided to me. That was due to the

18   original late filing which the last Court hearing that's why I

19   filed an extension. I didn't receive -- most of the

20   bankruptcy documents I received at my home at the Pinecrest

21   address, however, the administrative claim part I didn't start

22   receiving until I filed my administrative claim as of January

23   30th.

24       THE COURT: Why didn't you file with your motion an

25   affidavit or a declaration under penalty of perjury in which

1  you swear that you did not actually receive the December 10,

2  2014 notice of the bar date to file an administrative expense

3  claim.  You've said it or alluded to it in your handwritten

4  motion that you filed June 3rd.  I guess you went right from

5  the hearing to the clerk's office and filed this.

6      But you didn't include in there any affidavit or

7  declaration under penalty of perjury.  Now I –– I did tell you

8  during the hearing that you needed to do that and if you filed

9  such a motion and I put it in the June 4 order in Paragraph 1,

10 docket 9931 that you must do that.  That any such motion must

11 be supported by such an affidavit or a declaration under

12 penalty of perjury.

13     One of the reasons I did that is because as –– as we

14 discussed during the June 3rd hearing, there is what I've ––

15 I've referred to occasionally as the mailbox rule.  That is

16 under 6th Circuit case law in the <u>Yoder</u> case which we talked

17 about during the June 3rd hearing, there is the presumption

18 that a document that was mailed with postage to someone's

19 correct address was actually received at that address.  That

20 presumption is rebuttable, it can be rebutted among other

21 things –– it has to be rebutted by evidence and that can

22 include testimony of the person who the item is addressed to

23 saying they didn't receive it.

24     So and –– and by the way we –– we discussed this at the

25 –– there is a copy of the transcript of the June 3rd hearing in

1  the record.  It was filed on June 5, 2015 at docket 9939.  And

2  the pages of which we discussed this presumption and the way

3  it could be rebutted includes Pages 17 to 18.  And I cited the

4  Bratton v the Yoder Company case on that subject.

5      But so why didn't you file an affidavit or a declaration

6  under penalty of perjury?  That -- that would have been

7  evidence, some evidence that I could point to if you had done

8  that that said okay, here's evidence which rebuts the

9  presumption of receipt that exists under the law.  But you

10  didn't do that.  So why didn't you do that?

11      MS. REED:  I didn't file it for the fact of I'm not

12  the only one in my home that receives the mail.  My husband

13  receives mail and -- and I wasn't sure when I went over with

14  the documents with him to see if he recalled receiving.  He

15  received bankruptcy documents too because he was a former city

16  worker.

17      So he wasn't clear or sure that we actually received the

18  -- the documentation regarding administrative claim, the

19  deadline process.  So I was -- I didn't submit the declaration

20  page because of the fact I didn't know if he misplaced it.  I

21  know I didn't personally receive it, but that wasn't an excuse

22  for to say that I know I didn't get it, but I know he didn't

23  give it to me.  And I don't recall reading it.  I read all of

24  my mail, my personal mail that I receive.

25      THE COURT:  It sounds like what you're saying is

1   you didn't file the declaration and affidavit that we're

2   talking about because you didn't feel you could truthfully say

3   in an affidavit or declaration under penalty of perjury, that

4   this notice was not actually received at your home.

5           MS. REED:  Correct.

6           THE COURT:  Is that right?

7           MS. REED:  Correct.

8           THE COURT:  It may have been.

9           MS. REED:  It may have been.

10          THE COURT:  All right.

11          MS. REED:  He may have gotten it and figured it

12  wasn't nothing important, you know.  I don't know, he -- he --

13          THE COURT:  All right.

14          MS. REED:  He couldn't recall and I wasn't going to

15  lie and say I got it if -- say I didn't get it if I actually

16  got it and he did something, misplaced it.  Because we went

17  all over -- we still have a lot of the bankruptcy paperwork

18  from -- that the City of Detroit had been sending out for the

19  past -- since they filed the bankruptcy.  So we're trying to

20  find it.  We couldn't find it, but I couldn't say -- say nay

21  or yea that I received it or not.

22          THE COURT:  All right.  What else would you like to

23  say about your motion or your administrative expense claim?

24          MS. REED:  Oh, initially the filing that I -- that

25  brought all this along in the Bankruptcy Court, initially was

1 from the EEOC complaint that was filed based on departments.

2 I received notice from the EEOC about the case that they don't

3 have the resources to investigate my EEOC complaint which is

4 -- I think is irrelevant to the fact that we filed a

5 discrimination case and they don't have the resources to

6 re-investigate what the city didn't do.  I don't think that

7 was proper procedure, that's why I'm here in the first place,

8 but that's all at this time, Your Honor.

9          THE COURT:  Did you want to say anything about this

10 what I've labeled as this futility -- the futility argument by

11 the city?  That is that your claim of employment

12 discrimination is not the type of claim that can qualify to be

13 treated as an administrative expense in -- in this Chapter 9

14 case?

15          MS. REED:  I understood what you have said on the

16 previous case from A to Z about the administrative portion and

17 dealing with Chapter 9 bankruptcy filed by the City of

18 Detroit.

19          THE COURT:  In other words you're saying -- you sat

20 through this hearing -- earlier hearing today where --

21          MS. REED:  Yes, sir.

22          THE COURT:  -- I made a ruling on Sherell Stanley's

23 claim?

24          MS. REED:  Yes, sir.

25          THE COURT:  Okay.  So you heard what I said about

1 | that.  Did you want to say anything about that -- this -- this

2 | issue or not?

3 |         MS. REED:  As to why it wouldn't be -- if the city

4 | wasn't in bankruptcy and there was an issue with the employees

5 | we're still -- my personal opinion that we're still

6 | representatives as well as employees that represent the City

7 | of Detroit.

8 |     So if anything if we went outside the content of doing

9 | something as in the city to an employee, then that would be

10 | against us and I guess the city feels that they're not

11 | responsible and -- and our claims that we make, you know,

12 | which I don't understand why not, that there is something

13 | discriminatory or as for outweighs the salaries, if I don't

14 | earn the salary, you know, if I work for it to earn the

15 | salary.  But then when we file the claim the paperwork now the

16 | city is saying that, you know, based on I guess the bankruptcy

17 | that they filed then they're not responsible which I -- I

18 | don't understand why not, but -- I don't know if it's based on

19 | the filing that they filed which doesn't make them responsible

20 | for any claimants, not just city employees, but residents of

21 | the city as well.

22 |     I mean it was like everything that's filed through the

23 | Courts will be thrown out because it's not part of their

24 | initial claim.  I don't understand why because we represent

25 | the city as employees of the city.

1          THE COURT:  All right.  Anything else you'd like to

2    say?

3          MS. REED:  No, Your Honor.

4          THE COURT:  Mr. Swanson, you can reply briefly if

5    you wish.

6          MR. SWANSON:  No, thank you, Your Honor.

7          THE COURT:  Well, I have a question, Mr. Swanson.

8    And perhaps we -- we did talk about this at the June 3rd

9    hearing that even in connection with Ms. Reed's claim or for

10   the matter or Ms. Stanley's.

11       But in Ms. Reed's case, and Ms. Stanley's for that

12   matter, where if the -- if the claim is that after the filing

13   of the bankruptcy case post-petition the city illegally

14   discriminated against one of its employees, employment

15   discrimination, that -- and that's -- and assume that's viewed

16   as a post-petition claim.

17       I mean we have a matter today later that deals with this

18   question of is it a pre-petition or is it a post-petition

19   claim.  Assume it's a post-petition claim everything --

20   everything occurred post-petition.  Is that -- and I've --

21   I've ruled in Ms. Stanley's case that that's not the kind of

22   claim that can be an allowed administrative expense.  It's not

23   a pre-petition claim.

24       It -- it is a claim that is -- do you agree it's a claim

25   that's not discharged in the city's case and it's a claim that

1 the city has -- will have to defend and -- and deal with on

2 the merits and -- and it can be pursued by the claimant.  In

3 other words that's their recourse if the claim is not allowed

4 as an administrative expense claim, that's the recourse

5 employees have for post-petition employment discrimination

6 claims.  Do you agree?

7         MR. SWANSON:  Well, Your Honor, by definition under

8 the plan other unsecured claims are claims that are not

9 administrative expense claims or any other claim that is

10 treated by the plan.  So the city would view these potential

11 claims as under unsecured claims.

12         THE COURT:  You're not saying -- you're saying

13 they're part of Class 14?

14         MR. SWANSON:  Definitionally under the plan I think

15 -- I think they are.

16         THE COURT:  So a post-petition employment

17 discrimination claim is part of Class 14?

18         MR. SWANSON:  Yes.

19         THE COURT:  And is discharged?  Or not discharged?

20         MR. SWANSON:   The discharge as -- except as

21 provided in the plan or in the confirmation order and the

22 rights afforded under the plan and the treatment of claims

23 under the plan will be in exchange for and in complete

24 satisfaction discharge and release of all claims arising on or

25 before the effective date.

1          THE COURT:  Arising on or before the effective date

2     is on or before December 10, 2014.

3          MR. SWANSON:  Correct.

4          THE COURT:  So if the discrimination claim arose on

5     or before that date you're saying, it's discharged under the

6     plan and concomitantly I guess it would be considered part of

7     Class 14.

8          MR. SWANSON:  That's how I read it.

9          THE COURT:  But if it -- if it arose after December

10    10, 2014, it's not discharged by the claim, is that what

11    you're saying?

12         MR. SWANSON:  That would be my interpretation.

13         THE COURT:  And someone who has a discrimination

14    claim that arose before December 10, 2014, could be -- could

15    have an allowed claim treated under -- it would be treated

16    under Class 14 of the confirmed plan.

17         MR. SWANSON:  That's correct, Your Honor.

18         THE COURT:  And is that true even if the claim arose

19    after February 21, 2014, the deadline for filing proofs of

20    claim yet but before December 10, 2014?  See what I'm asking?

21         MR. SWANSON:  Sure.  So you're --

22         THE COURT:  If their claim arose at a time when --

23    after the deadline for them to file a proof of claim, they

24    have an allowed claim in Class 14, the claim arose after that

25    but before the effective date of the plan, what's the claimant

1 | to do?  What recourse would they have?

2 |         MR. SWANSON:  I think the recourse would be to come

3 | here and -- and to assert and lodge a complaint.

4 |         THE COURT:  By doing what?  Filing a motion?  Filing

5 | a proof of claim?

6 |         MR. SWANSON:  I think at that point -- I think at

7 | that point they could file a proof of claim or file a motion.

8 |         THE COURT:  All right.  Now in the case of Ms. Reed

9 | here, her application for administrative expense claim at

10 | least, the one which she filed January 30th says that basically

11 | the actions of the city that she says constitute employment

12 | discrimination violating Title 7 began on January 14, 2014.

13 |     So that date, beginning date at least is before the

14 | deadline for filing proofs of claim and well before the

15 | effective date of the confirmed plan.  So I guess -- I don't

16 | recall you saying anything in your papers about Ms. Reed

17 | having filed a proof of claim.

18 |         MR. SWANSON:  I -- I don't -- I -- maybe the EEOC

19 | filed a proof of claim on her behalf, but I -- I don't recall,

20 | I'd have to check.

21 |         THE COURT:  Okay.  All right.  All right.  Well, I

22 | guess -- I guess this discussion -- I was curious about the

23 | city's position because I -- part of what Ms. Reed seemed to

24 | be saying just now is, if I don't have an administrative

25 | expense claim, what's my recourse if I'm discriminated against

1 illegally by the city in -- in my employment after the filing

2 of the bankruptcy case.  So is there anything else you want to

3 say about that subject?

4          MR. SWANSON:  No, Your Honor.

5          THE COURT:  All right.  Well, thank you.  That -- it

6 -- this subject is one that -- that may come up again in the

7 -- in the case of Ms. Reed's discrimination claim, perhaps in

8 others here.

9      But for now I'll leave it at -- at that and -- and you

10 know without making any ruling on whether what Mr. Swanson has

11 just said is the city's position is correct or to what extent

12 it's correct.

13     Ms. Reed, let me come back to you.  Is there anything

14 else you want to say here about the matters that are before

15 the Court today?

16          MS. REED:  No, Your Honor.

17          THE COURT:  All right.  Well, thank you both.  I'm

18 going to rule on these matters too now.

19     The -- with respect to Ms. Reed's motion, application to

20 -- let's start with her application for an allowed

21 administrative expense claim.  That's the application that was

22 filed on January 30, 2015, docket 9135.

23     That application to which the city has objected must be

24 denied and the city's objections sustained for two reasons.

25 First, because the application was not filed by the January

1  26, 2015 deadline for filing administrative expense

2  applications.  It was filed January 30 instead.  And for

3  reasons I'll discuss in a minute, Ms. Reed's motion asking the

4  Court to retroactively extend the deadline from January 26 to

5  January 30 must be denied.

6       And the second reason for denying her application for an

7  allowed administrative expense claim is based upon the city's

8  argument, which I agree with here, that her claim is not the

9  type of claim that can be granted or can be allowed as an

10  administrative expense claim in this Chapter 9 bankruptcy

11  case.

12       For that conclusion, I -- I would simply incorporate by

13  reference what I said earlier today in the hearing that we had

14  a few minutes ago in which Ms. Reed was present for and heard

15  and was listening to regarding the administrative expense

16  claim of Sherell Stanley.  Everything I said on that subject

17  in connection with Ms. Stanley's claim applies here.

18       And so for those reasons the application for

19  administrative expense claim by Ms. Reed must be denied.  And

20  I'll prepare and enter an order reflecting that ruling.

21       With respect to Ms. Reed's motion for an extension of the

22  deadline to file her administrative expense claim, that will

23  be denied for two reasons.  Number one, because it is -- it is

24  rendered moot by the Court's ruling that even if being timely

25  her application for an allowed administrative expense could

1  not be allowed on the merits because of the nature of the

2  claim and the nature of the claim is not such that would

3  qualify for administrative expense treatment.

4      And secondly, because Ms. Reed has failed to demonstrate

5  excusable neglect.  Her excusable neglect argument in support

6  of her motion is that she didn't receive notice of the January

7  26, 2015 deadline to file administrative expense claims before

8  that deadline had passed.

9      We discussed this argument at the June 3rd hearing on the

10  city's objection to Ms. Reed's administrative expense claim.

11  As discussed during that hearing and as reflected in the

12  Court's order of June 4, docket 9931, Paragraph 1, the Court

13  required Ms. Reed to file a motion seeking retroactively an

14  extension of the January 26th deadline on the ground of

15  excusable neglect.

16      And while Ms. Reed filed such a motion, and that's the

17  motion I'm ruling on right now on June 3rd, docket 9921 shortly

18  after the hearing, she did not comply with the rest of

19  Paragraph 1 of the order, the June 4 order which required her

20  to -- to support any such motion with an affidavit or a

21  declaration under a penalty of perjury in which Ms. Reed

22  swears that she did not actually receive the December 10, 2014

23  notice of the bar date to file an administrative expense

24  claim.

25      Ms. Reed has candidly acknowledged in today's hearing

1  that she did not file such a declaration or affidavit because

2  after talking to her husband, she could not be sure, could not

3  say and could not swear that the notice, the December 10, 2014

4  notice was not actually received in the mail at her home.

5      And so the -- the basis for Ms. Reed's excusable --

6  excusable neglect argument and her motion to extend the time

7  is unsupported by any evidence.  And therefore Ms. Reed, after

8  being given an opportunity to do so has not rebutted the

9  presumption that arises under the case law in the <u>Bratton v</u>

10 <u>Yoder</u> case which I talked about earlier in today's hearing and

11 also during the June 3rd hearing specifically regarding Ms.

12 Reed's administrative expense claim.

13     She has not rebutted the presumption that arises that the

14 notice of the December -- the December 10, 2014 notice was

15 actually received by her in the mail after it was mailed to

16 the correct address with proper postage by the city's

17 servicing and noticing agent back in December 2014.

18     The -- because of that presumption and the failure of Ms.

19 Reed to rebut the presumption, the Court must find and does

20 find that Ms. Reed did in fact receive that in the mail

21 shortly after it was mailed back in December 2014.  And that

22 December 10, 2014 notice did give clear notice of the deadline

23 to file administrative expense claims and that it was January

24 26, 2015.

25     And so Ms. Reed's motion must be denied for those

1  additional reasons, her motion to extend the deadline.  And so

2  I'll prepare and enter an order that's reflecting these

3  rulings on these two matters and as I said earlier I'm not

4  going to comment or rule at this time regarding any further

5  issues about what recourse, specific recourse Ms. Reed and

6  employees like herself have against the city if they have in

7  fact -- do in fact demonstrate that they suffered illegal

8  employment discrimination by the city that occurred after the

9  filing of the city's Chapter 9 bankruptcy case as opposed to

10  discrimination that occurred before.

11      That's an issue that may come up again in the context or

12  in connection with Ms. Reed and possibly others.  And the

13  Court will deal with that motion -- or that issue when it is

14  actually presented to the Court in the context of an actual

15  motion or other justiciable dispute that the Court has to hear

16  and decide in this case.  So, thank you.

17          MS. REED:  Thank you.

18          MR. SWANSON:  Your Honor, would you like to hear the

19  Wolak or the Hughes matter next?

20          THE COURT:  The -- I want to hear the Wolak matter

21  next.

22          MR. SWANSON:  Thank you, Your Honor.  First off,

23  Your Honor --

24          THE COURT:  Let me get it, just a second.

25          MR. SWANSON:  I'm sorry.

1          THE COURT:  Hold on just a second.  All right.

2   Thank you.

3       On this matter we have -- Mr. Swanson, you're going to

4   argue for the city.  And Mr. Dworetsky, am I saying that

5   right?

6          MR. DWORETSKY:  Yes.  Thank you, Your Honor.

7          THE COURT:  You're going to be arguing on behalf of

8   the -- the movant, Steven Wolak, personal representative, et

9   cetera.  So this is a motion by Mr. Wolak to which the city

10  has objected.  Mr. Swanson, you're on your feet.  You're going

11  to -- you're going to talk first about their motion?

12          MR. SWANSON:  Happy to let them talk, I apologize,

13  Your Honor.

14          THE COURT:  Okay.  I thought perhaps you had agreed

15  to a resolution of it and that's why you were up.

16          MR. SWANSON:  No, no, no.  No resolution.

17          THE COURT:  Well, I want to hear from -- in this

18  case I want to hear from moving counsel first, so thanks.

19          MR. SWANSON:  Apologize.  Thank you.

20          THE COURT:  Mr. Dworetsky can -- and please tell me

21  if I'm mispronouncing your name.

22          MR. DWORETSKY:  No, you're not, Your Honor.

23          THE COURT:  Okay.

24          MR. DWORETSKY:  That's great.

25          THE COURT:  What would you like to say about this

1  motion?  I have read the motion, the city's response to it,

2  the reply brief that you filed on January -- or July 10.  So

3  what would you like to say?

4          MR. DWORETSKY:  I -- I have nothing to add that's

5  not in -- in the brief, I would just stress to Your Honor that

6  really -- really at the core this is just a request of this

7  Court to exercise its inherent equitable power given the

8  circumstances of the treatment of this claim from -- from the

9  onset in that this is a settlement that was made to us before

10  petition.

11      After a year of litigation the city had claimant

12  compromise, compromise the claim at one time.  It was entered

13  on the record two months prior to the petition.  City council

14  approved the settlement, a release was signed promising prompt

15  payment, however it -- there was an insertion of a time is of

16  the essence clause at the same time.

17      The city then files its petition --

18          THE COURT:  Time is or is not?

19          MR. DWORETSKY:  Is not.

20          THE COURT:  Is not of the essence.

21          MR. DWORETSKY:  At the same time promising to -- to

22  -- to procure prompt payment.  Your Honor, it just -- it just

23  rubs the wrong -- the wrong way.

24          THE COURT:  Well, all of that happened pre-petition.

25          MR. DWORETSKY:  Absolutely.

1          THE COURT:  Before the filing of the bankruptcy

2    case.

3          MR. DWORETSKY:  It did.  And it all happened while

4    -- while this bankruptcy is looming.  They're on the brink of

5    bankruptcy.  They know this thing is coming yet they negotiate

6    with -- with my client to compromise the claim.

7          THE COURT:  Well, they're not -- the city isn't the

8    only entity that knew it was coming, were they?  You had no

9    inkling?

10          MR. DWORETSKY:  Understood, however, the city was

11   the one that was making the payment.

12          THE COURT:  I mean it's not -- it -- it -- it could

13   not have come as a terrible surprise to you or your client

14   that the city filed bankruptcy when they did, do you agree?

15          MR. DWORETSKY:  I think -- I think what comes as --

16   as a surprise is that the settlement was negotiated two months

17   prior and payment is not made even after city council

18   approval.  Even after execution of the release.  It's bad.  It

19   just rubs -- it's bad faith.

20      This -- this is an equitable determination through this

21   Court's discretion.  The objection to the response -- or the

22   objection to our motion was -- was frankly surprising given

23   what -- what had occurred at the reserve motion hearing.  This

24   is not something that has been ruled upon by this Court.

25          THE COURT:  I agree with you on that.

1           MR. DWORETSKY:  That was all on the record.

2           THE COURT:  No, I -- I agree with you -- your point

3  about that.  The city, to the extent the city has argued that

4  I have ruled on the merits of your arguments that are

5  presented by this motion is -- is just wrong, it's not

6  correct.  I agree with you about that.

7           MR. DWORETSKY:  Yeah.

8           THE COURT:  I don't think we need an extended

9  discussion of that.  That's clear from the transcript of the

10 -- I think it was April 15, was it?

11          MR. DWORETSKY:  That's correct.

12          THE COURT:  April 15 hearing on the so-called

13 reserve motion.

14          MR. DWORETSKY:  Reserve motion.

15          THE COURT:  Yeah.

16          MR. DWORETSKY:  Correct, correct.  I -- I have

17 nothing further to add to what's already -- already in the

18 papers.  Given the city's conduct, we are asking for what the

19 city will argue is extraordinary relief, however, we think

20 it's justified given its conduct.

21          THE COURT:  Well, you want -- it looks like -- if I

22 understand your motion correctly, you want the Court to order

23 the city to pay the settlement amount in full 100%.

24          MR. DWORETSKY:  Correct.

25          THE COURT:  Now, in cash.

1          MR. DWORETSKY:  Correct.

2          THE COURT:  And if I won't do that for some reason

3  in the alternative you want me to enter an order, I guess

4  voiding the settlement or something to that effect.

5          MR. DWORETSKY:  That's correct.

6          THE COURT:  So that -- presumably so that your claim

7  is not limited to the $375,000 settlement amount --

8          MR. DWORETSKY:  Absolutely.

9          THE COURT:  -- that your client agreed to

10  pre-petition.

11          MR. DWORETSKY:  Correct.  That's correct.

12          THE COURT:  Okay.  As to the first piece of that,

13  ordering the city to pay your client's claim in full, the

14  $375,000, the -- the settlement in full, I don't -- I'm having

15  trouble understanding how I could possibly order that given

16  what the confirmed Chapter 9 plan of adjustment says.

17      Your client's claim, I -- I think the city is correct in

18  -- in arguing, that your client's claim is treated as part of

19  Class 14 under the confirmed plan of adjustment which was

20  confirmed back in November and became effective December 10,

21  2014.  And the plan says that claims, allowed claims in Class

22  14, it doesn't say they get cash at all.  It doesn't say they

23  get full payment of their claims.  It says they get a pro rata

24  share of a certain amount of -- of so-called new B notes, I

25  think is the term, maybe excess new B notes too, but notes,

1        And it's a pro rata share.  And as the -- as my

2   predecessor Judge, Judge Rhodes' opinion, written opinion

3   regarding confirmation of the plan pointed out, that -- that

4   -- that treatment is -- was estimated at the time to be a pro

5   rata treatment to -- to result in a recovery on these allowed

6   claims of far less than 100%.  I think he gave a percentage,

7   estimate, or range in the -- and it is far less than 100%.

8   This is what the confirmed plan says, isn't it?

9            MR. DWORETSKY:  It is.

10           THE COURT:  Okay.  So why isn't your client bound by

11  the -- the confirmed plan just like everybody else under

12  Section 944(b)(1) of the Bankruptcy Code -- I'm sorry, 944(a)

13  which says that the provisions of a confirmed plan bind the

14  debtor and any creditor whether or not approved such

15  creditor's claim is filed or deemed filed, such claim is

16  allowed, or such creditor has accepted the plan.

17       In other words, the confirmed plan precludes the Court

18  from granting this sort of first part of the relief that

19  you're -- that you're seeking, doesn't it?

20           MR. DWORETSKY:  I don't think it does.

21           THE COURT:  Why not?

22           MR. DWORETSKY:  I -- I -- I think that what

23  distinguishes this claim is the consistent bad faith conduct

24  of the city with regards to this claim.  In its negotiation

25  and in its handling after -- after the negotiation -- the

1 negotiation, the handling, and the inability to -- to get it

2 paid when it should have.  I think that conduct is what

3 distinguishes this claim and -- and --

4          THE COURT:  But all of that --

5          MR. DWORETSKY:  -- should -- should permit --

6          THE COURT:  All of that is pre-petition conduct.

7          MR. DWORETSKY:  Agreed, agreed.  However, based upon

8 that conduct --

9          THE COURT:  And so all of that to the extent that

10 that's actionable, that bad faith is actionable in any way is

11 a pre-petition claim that your client has.

12          MR. DWORETSKY:  Yes.

13          THE COURT:  And it -- it is a pre-petition claim of

14 the type that falls in Class 14, the other unsecured claims

15 and the plan provides how those claims are to be treated.

16          MR. DWORETSKY:  It does.  However, we're asking this

17 Court to -- to invoke its -- its equitable power to -- to

18 remove this claim from the plan, given -- given the unique

19 circumstance.

20          THE COURT:  You didn't -- you haven't cited

21 section --

22          MR. DWORETSKY:  It's an unjust result.

23          THE COURT:  You haven't cited Section 105(a) of the

24 Bankruptcy Code which is often cited by parties as a source of

25 the Bankruptcy Court's inherent equitable powers.  Maybe it's

1  to your credit you haven't cited Section 105(a).  People cite

2  that all the time for whenever they can't find a Code section

3  that gives them what they want otherwise.

4     But Section 105(a) says the Court may issue any order,

5  process, or judgment that is necessary or appropriate to carry

6  out the provisions of this title.  That's part of what it

7  says.

8     And the case law is pretty clear under Section 105(a)

9  that Courts -- the Bankruptcy Courts can't use section -- that

10  authority under Section 105(a) to order relief that is

11  inconsistent with some other expressed provision of the

12  Bankruptcy Code.  Which takes me back to 944(a).  Which says

13  creditors, including your client, is bound by the confirmed

14  plan.

15     Doesn't that prevent me from giving you the first part of

16  the relief that you're after?  That's what I'm getting at.

17        MR. DWORETSKY:  I would -- I understand.

18        THE COURT:  You -- you seem to be just saying well,

19  I don't know if it's 105(a) or what it is, but Bankruptcy

20  Courts are Courts of equity and they have this broad equitable

21  power and they can do what's right, and what's fair, and

22  what's just, even if it's inconsistent with a confirmed plan.

23        MR. DWORETSKY:  That's our argument.

24        THE COURT:  Do you have any authority for that

25  proposition?

1        MR. DWORETSKY:  Other -- other than the fact that

2    this -- this Court has equitable power, no.  No.

3        THE COURT:  All right.  Well, let's talk a minute

4    about the alternative relief in your motion.  If we get to

5    that level, as I understand it in that -- on that subject, as

6    I understand it your client has filed a proof of claim and

7    it's I think $3,000,000?

8        MR. DWORETSKY:  That's correct.

9        THE COURT:  Yeah.  It was discussed at the April 15

10   hearing at that --

11       MR. DWORETSKY:  Yes.

12       THE COURT:  And in the objection you filed in the

13   reserve motion.  I think it's -- and it might have been

14   mentioned in the papers for the motion today.  So you filed a

15   proof of claim for $3,000,000.  Obviously far more than the

16   $375,000 settlement amount.

17       And -- and your reply seemed to -- I guess your reply

18   seemed to suggest that that -- that's and I'm kind of reading

19   between the lines, that that was sort of a hedge against --

20   against the possibility that in the bankruptcy case your

21   client wouldn't get paid the $375,000 in cash in full as --

22   which is your first choice.

23       So you have this $3,000,000 proof of claim.  Has the -- I

24   don't think the city has -- or anyone else has actually

25   objected to that claim yet, have they?

1          MR. DWORETSKY:  I do not believe so.

2          THE COURT:  Okay.  The city still has several months

3  to go before the deadline for them to object to claim so that

4  may -- that may happen, but it hasn't happened yet.

5          And let's assume I -- I rule that you can't be -- your

6  client can't be ordered -- I can't order the city to pay the

7  three seventy-five cash to your client as -- as you wish among

8  other -- for among other possible reasons the fact that it's

9  inconsistent with the confirmed plan.  Where that leaves you I

10 think is, and the city too is -- would leave you is, you got

11 this proof of claim on file and the city -- if the city wants

12 to object to that they'll object to that.

13         If they object to that, then you could file a response to

14 the objection whatever their arguments may be but as of now

15 you have a claim -- a claim for $3,000,000 which not -- has

16 not been objected to.

17         The arguments you're making in this motion seems to me

18 might -- some of them may be arguments that you could also

19 make if the city were to object to the $3,000,000 claim at

20 some future point and say, it's not 3,000,000, it was settled

21 for three seventy-five.  And -- and if you already have by

22 ruling of this Court for example it might be made today, been

23 told you can't get the three seventy-five under the confirmed

24 plan, you get a pro rata share of new B notes shared pro rata

25 with the other allowed claims in Class 14 based on what the

1 allowed amount of your claim is and nothing more.

2     And some of the arguments you're making in your motion

3 and today might be arguments you would -- you would make if

4 the city tried to say in objecting to the $3,000,000 claim

5 hey, it's three seventy-five, it's not 3,000,000.  Should I --

6 should I leave that alternative relief piece for another day

7 and wait and see if the city objects to the claim and see what

8 the arguments are and see what your arguments are and deal

9 with it then?

10         MR. DWORETSKY:  I -- I would have no objection to

11 the Court's characterization of our alternative relief as

12 premature.

13         THE COURT:  I didn't say that, but --

14         MR. DWORETSKY:  Or ruling on it or considering it.

15         THE COURT:  You might have just said -- you might

16 have just captured it far more efficiently than I did in my

17 question, the point.

18         MR. DWORETSKY:  Yeah.

19         THE COURT:  All right.  Well, what else would you

20 like to say about this motion?  Anything?

21         MR. DWORETSKY:  Your Honor, I -- I trust that you

22 read the briefs in full.  I'm not going to take any more of

23 the Court's time.  Just plead on the Court's equitable power,

24 Your Honor.

25         THE COURT:  All right.  Well, thank you then.  We'll

1  hear from Mr. Swanson next.

2       MR. SWANSON:  Thank you, Your Honor.  Your Honor,

3  there is absolutely no basis to grant this motion.  It ignores

4  bankruptcy law, it ignores the plan, and it ignores the

5  confirmation order.

6     Mr. Wolak has not cited one case which comes even

7  remotely close to the relief he asks for.  He has a Class 14

8  claim under the plan.  The plan controls the treatment.  If

9  Mr. Wolak wanted to object to the plan, he could have done so.

10  He didn't.  The plan is controlling.  And -- and really the

11  city has nothing further.

12       THE COURT:  Is that -- I don't know if you mentioned

13  that in your response to the motion.  And I -- perhaps I

14  should have asked, Mr. Dworetsky.  But Mr. Wolak did not file

15  any objection to confirmation of the plan, is that what you're

16  saying?

17       MR. SWANSON:  Based on my review of the docket,

18  that's correct.

19       THE COURT:  Okay.  I mean he could have but he

20  didn't is what you're saying.

21       MR. SWANSON:  Exactly.

22       THE COURT:  Okay.  Go on.

23       MR. SWANSON:  The city has nothing further, Your

24  Honor.  The motion is completely unsupported, the plan

25  controls the treatment of -- of its claim.  The plan in Class

1 | 14 prescribes what he is entitled to receive if and when he

2 | were to receive an allowed unsecured claim which he does not

3 | have yet.  And -- and there's no authority to grant this

4 | motion and it should be denied.

5 |         THE COURT:  Am I correct then in saying that the --

6 | the city has not yet filed any objection to the proof of claim

7 | filed by Mr. Wolak., the $3,000,000.

8 |         MR. SWANSON:  I believe that to be correct.

9 |         THE COURT:  Okay.  The city may, but they haven't

10 | done it yet.

11 |         MR. SWANSON:  That's correct, Your Honor.

12 |         THE COURT:  And is it fair to say that you don't

13 | know at this moment whether the city will object to that claim

14 | and -- and if so what the objection will be?

15 |         MR. SWANSON:  That's correct, Your Honor.

16 |         THE COURT:  All that's correct?

17 |         MR. SWANSON:  Yes.

18 |         THE COURT:  All right.  Anything else, Mr. Swanson?

19 |         MR. SWANSON:  No, thank you.  No, Your Honor.

20 |         THE COURT:  All right.  Mr. Dworetsky, if you want

21 | to reply briefly as counsel for the moving party here you may

22 | do so.

23 |         MR. DWORETSKY:  Nothing further, Your Honor.

24 |         THE COURT:  All right.  Thank you both.  I'm going

25 | to rule on this motion.

1        The motion must be denied for the following reasons.

2   First, to the extent the motions -- of the motion, the primary

3   relief sought by the motion which as I understand it is the

4   moving party, Mr. Wolak seeks an order compelling the city to

5   pay $375,000 in cash, 100% of that amount to Mr. Wolak which

6   would be 100% of the amount, the settlement amount that the

7   city and Mr. Wolak as personal representative agreed to before

8   the filing of the Chapter 9 bankruptcy case by the city back

9   in July 2013, albeit shortly before, but before.

10        To the extent of that relief, that primary relief that

11   Mr. Wolak seeks here, the Court simply cannot grant such

12   relief.  I agree with the city's argument that there is no

13   valid basis under the Bankruptcy Code, or bankruptcy law, or

14   -- or otherwise, no valid legal basis for the city -- for the

15   Court to order that relief.  And -- and beyond that the --

16   that relief is in my view barred, prohibited by the confirmed

17   Chapter 9 plan of adjustment in this bankruptcy case.

18        Under 11 USC Section 944(a), Section 944(a) of the

19   Bankruptcy Code, Mr. Wolak as a creditor is bound by the

20   provisions of the confirmed plan of adjustment and that means

21   he is bound by the treatment that is to be accorded to his

22   claim in this bankruptcy case to the extent the claim is

23   allowed in whatever amount it's allowed, and that treatment is

24   -- is not that the claim is to be paid 100% of the settled --

25   agreed settlement amount that is $375,000.  It's not even that

1 the claim is to be paid directly in cash at all.

2     The claim rather is to be -- to the extent it's an

3 allowed claim ultimately, is to be paid through as part of a

4 Class 14 -- one of the Class 14 claims to be paid a pro rata

5 share of the quantity of new B notes that are to be -- were

6 issued or are to be issued under the confirmed plan. And the

7 amount or value of such notes is that -- are to go to Mr.

8 Wolak would be a pro rata share of -- of -- of such notes --

9 in the pot of such notes available for Class 14 creditors and

10 will depend upon the -- because it's a pro rata share, it will

11 depend upon the ultimate allowed -- actual allowed amount of

12 the claim and the actual allowed amounts of the other claims

13 that are allowed that are part of Class 14 which there are

14 many.

15     The -- and so what Mr. Wolak is asking for, is treatment

16 dramatically different from -- it's materially different from

17 that which is provided by the confirmed plan for his claim and

18 the Court simply cannot order such relief.

19     The -- all of the actions by the city that Mr. Wolak

20 complains of in the motion and characterizes as -- as part of

21 this argument that the city is guilty of bad faith, concerns

22 actions and omissions that occurred before the filing of the

23 city's Chapter 9 bankruptcy case on -- in July 2013.

24     So it is clearly and entirely a pre-petition claim that

25 Mr. Wolak has. And in fact he filed a proof of claim in the

1 case not in the $375,000 settlement amount, but in the much

2 larger amount of $3,000,000.

3     So to the extent that claim and any amount that that

4 claim ultimately is allowed in this case, it would be treated

5 as all other allowed Chapter 14 claims that will be treated

6 under the plan of adjustment that was confirmed by the Court.

7     The alternative relief sought by the motion which is

8 well, if you don't -- if you don't order the city to pay me

9 the $375,000 settlement amount in full in cash, then as an

10 alternative -- as the motion says, "the settlement should be

11 voided for lack of bargained for consideration.  The claimant

12 should be permitted to further prosecute his claim in a

13 reinstated action".

14     The action in which the claim is asserted after the

15 filing of the city's bankruptcy case in which it has been

16 asserted is in the form of the proof of claim that Mr. Wolak

17 filed in this bankruptcy case for $3,000,000.  And to date no

18 one, including the city has filed any objection to that claim.

19     If and when the city objects to that claim for any

20 reason, then Mr. Wolak can respond and that -- such a claim

21 objection proceeding may lead to litigation between the

22 parties but unless and until there is an objection to the

23 claim, there is no need for litigation of that claim and there

24 is no need for any sort of reinstating of the pre-petition

25 State Court lawsuit for example that was filed apparently by

1  Mr. Wolak to pursue his claim.

2     Rather further proceedings on the claim will be in the

3  form of claim objection proceedings in this Court and in this

4  bankruptcy case if any to determine ultimately exactly what

5  the treatment will turn out to be for Mr. Wolak's claim under

6  the confirmed plan of adjustment.  So there is no occasion

7  given the ruling that I'm making about the $375,000 cash

8  amount requested, there is no occasion or basis for the Court

9  to permit the re-institution and litigation outside of this

10 Court of any pre-petition litigation between the parties.

11    And the -- the issue of what impact if any the

12 pre-petition settlement for $375,000 that the parties agreed

13 to has on the issue of the allowance and what -- what amount

14 of allowance that Mr. Wolak's $3,000,000 proof of claim filed

15 by the proof of claim in this case, otherwise are -- are

16 issues that the Court will leave to another day if and when

17 the city ever files a timely objection to that claim.

18    If that occurs, then Mr. Wolak will have the opportunity

19 to make whatever arguments he wants to make as to why the

20 $3,000,000 claim should be allowed in full contrary to the

21 city's objection to the claim.  What arguments precisely that

22 Mr. Wolak might make may include some of the same arguments

23 he's made in the current motion and I'm not ruling out his --

24 Mr. Wolak's ability at this point to make any such arguments

25 in response to an objection to the $3,000,000 claim here

1 today, the ruling on this motion.

2      And they may include other arguments and -- and it

3 depends I'm sure in part on exactly what the city's objections

4 to the claim are and what the city's arguments and objection

5 to the claim are if and when the city actually ever does

6 object to the claim.

7      So, as Mr. Dworetsky put it much more succinctly than I

8 have been able to manage, the alternative form of relief is in

9 some -- sought by the motion is in some sense is premature.

10 And so the issue of whether the settlement of $375,000 should

11 be disregarded for purposes of determining the allowed amount

12 of the claim, ultimately allowed, Mr. Wolak's claim is an

13 issue that I'm leaving for another day.  And so my ruling

14 today will have no prejudice upon any arguments that either

15 the city or Mr. Wolak might make regarding that subject in the

16 context of any objection to claim that may get filed by the

17 city to Ms. Wolak's proof of claim.

18      So then the motion before me today will -- will be denied

19 for these reasons.  And I will prepare and enter an order

20 reflecting this ruling.  And I will include language in the

21 order that I'm going to prepare which attempts to make clear

22 for the record so that none of us forgets it in the future,

23 make it clear that the order on this motion is without

24 prejudice to any arguments that the city or Mr. Wolak may make

25 in connection with any objection to Mr. Wolak's proof of claim

1    that may be filed in the future.  Thank you.

2          MR. DWORETSKY:  Thank you, Your Honor.

3          THE COURT:  All right.  I believe that leaves then

4    the -- the final matter scheduled for hearing today which is

5    the City of Detroit's motion for an order enforcing the plan

6    of adjustment and requiring the dismissal of the State Court

7    action filed by Tanya Hughes.

8       So we'll hear that motion now.  Mr. Swanson, I'll ask you

9    to speak first since you represent the moving party on this

10   one.

11         MR. SWANSON:  Thank you, Your Honor.  Your Honor,

12   the city's motion to enforce the plan injunction and require

13   the dismissal of the State Court action commenced by Tanya

14   Hughes should be granted because Ms. Hughes' claim is a

15   pre-petition claim.

16      There are three consequences of that determination.  One,

17   she is enjoined from suing the city on her claim pursuant to

18   the plan injunction.  Second, her claim was discharged under

19   the plan.  And third, because she did not file a proof of

20   claim, she's barred from recovering anything from the city

21   under the bar date order.

22      Now in adopting the definition of claim under Section

23   101-5(a), that was in Senate reports state that this was the

24   broadest possible definition.  The bill contemplates that all

25   legal obligations of the debtor no matter how remote or

1 contingent will be able to be dealt with in the bankruptcy

2 case and permits the broadest possible relief in the

3 Bankruptcy Court.

4     In accordance with the definition of claim and that

5 legislative history, the Supreme Court has repeatedly

6 reiterated that Congress intended to adopt the broadest

7 available definition of claim and have declined all

8 invitations to exclude rights to payment from the definition

9 of claim.

10     The reasoning behind the broad definition of claim is not

11 only fairness to debtors who are trying to reorganize, but

12 also fairness to the debtor's other creditors.  As the Huffy

13 Court explained, the purpose is to bring all claims of

14 whatever nature into the bankruptcy estate and to give all

15 claimants the same opportunity to share in any distribution

16 from the estate.

17     No longer will some creditors enjoy a windfall or

18 effectively be denied any recovery based upon the provability

19 or allowability of their claims and the financial status of

20 the debtor after the bankruptcy.  Equally important, Congress

21 has insured that the debtor will receive a complete discharge

22 of his debts and a real fresh start without the threat of

23 lingering claims riding through bankruptcy.

24     Your Honor, Courts have been careful to distinguish

25 between when a claim arises for federal bankruptcy purposes

1  and when a cause of action accrues.  Because those oftentimes

2  are two completely different things.

3      And two tests have been employed to determine when a --

4  when a claim arises.  There was a -- a third test on the

5  Frenville Court.  And that was essentially when the cause of

6  action accrued.  But that test has been widely criticized,

7  widely rejected and the 3rd Circuit in fact overruled itself

8  and rejected that approach.

9      So we're left with -- with two tests here.  The first

10  test, Your Honor, is the debtor's conduct test.  And this test

11  says a claim arises when the conduct by the debtor occurs,

12  even if the actual injury occurred long after the bankruptcy

13  filing and long after the discharge.

14      The next test has three or four different names.  Some

15  call it the fair contemplation, the foreseeability, the

16  pre-petition relationship, or the narrow conduct test.  And

17  this test looks at whether there is a pre-petition

18  relationship between the debtor and the creditor, "such as

19  contract, exposure, impact, or privity such that a possible

20  claim is within the fair contemplation of the creditor at the

21  time the petition is filed".

22      A broad definition of claim allows the Bankruptcy Court

23  to deal fairly and comprehensively with all creditors in the

24  case and without which a debtor's ability to reorganize would

25  be seriously threatened by the survival of lingering remote

1 claims and potential litigation rooted in the debtor's

2 pre-petition conduct.  And, Your Honor, that's exactly what we

3 have here.  We have a claim that is completely rooted in the

4 debtor's pre-petition conduct.

5      I looked through some of the facts which are uncontested.

6 Uncontested in the respect that they happened prior to the

7 petition date.  In October of 2012, Hughes refused to take a

8 random drug test.  She allegedly suffered pregnancy and

9 disability discrimination because the city required her to

10 take this random drug test.

11      Hughes was placed on leave for her refusal to submit to

12 the drug test.  The chief of police --

13           THE COURT:  Leave with pay.

14           MR. SWANSON:  Leave with pay.

15           THE COURT:  Full pay and benefits, right?

16           MR. SWANSON:  Correct.

17           THE COURT:  Yeah.

18           MR. SWANSON:  The chief of police petitioned the

19 board of police commissioners to convert her leave from pay to

20 without pay.  A police trial board hearing took place.  Hughes

21 was terminated from the police department --

22           THE COURT:  At which as I understand it, at which

23 you're saying the request to convert her with pay to without

24 pay was denied.

25           MR. SWANSON:  That's correct, Your Honor.

1          THE COURT:  And then there was another further

2    hearing which you're about to talk about, right?

3          MR. SWANSON:  That's correct, Your Honor.

4          THE COURT:  Okay.  And this is all still

5    pre-petition.

6          MR. SWANSON:  It's all pre-petition.

7          THE COURT:  Yeah, go on.

8          MR. SWANSON:  So we have a police trial board

9    disciplinary hearing which took place pre-petition.  And

10   Hughes was terminated from the police department at this

11   hearing.

12         THE COURT:  Well, I wanted to ask you about that

13   statement.  You said -- you said that in your motion too at

14   Paragraph 19 at this hearing, this December 3, 2012 hearing.

15   She was terminated from the department.

16         MR. SWANSON:  Terminated subject to her right to

17   appeal which she did and she kept her pay, you know,

18   throughout this process, there's no dispute.

19         THE COURT:  Well, was there some sort of written

20   decision made as a result of this December 3, 2012 hearing

21   that said she is terminated?

22         MR. SWANSON:  I don't know if there --

23         THE COURT:  There's nothing in the record about

24   that.

25         MR. SWANSON:  I don't know if there was a -- a

1  written decision.

2          THE COURT:  Okay.

3          MR. SWANSON:  I'm certainly happy to supplement the

4  record.

5          THE COURT:  Well, what form did this -- this

6  decision and this termination decision take then?  Just

7  somebody orally pronounced it at the end of the hearing or

8  what?

9          MR. SWANSON:  I would have to check with the city

10  and supplement the record, Your Honor.

11          THE COURT:  Is there a -- some sort of writing that

12  says you are terminated?

13          MR. SWANSON:  I will --

14          THE COURT:  Addressed to Ms. Hughes, do you know?

15          MR. SWANSON:  I don't know if there was a -- a -- a

16  letter or a communication.  I don't think it's disputed that

17  she was in fact terminated, but --

18          THE COURT:  Well, I -- I didn't -- I was looking to

19  see whether Mr. Ellison when he filed his response on behalf

20  of Ms. Hughes to your motion, admitted that.  And I -- I don't

21  think he actually admitted that in -- in the answer that he

22  filed.  And so I'm not sure that that's undisputed.

23      We can -- well, I'll ask him -- we can ask him about this

24  too when he gets up and talks.  But the -- you know, obviously

25  I'm -- I'm -- I'm asking questions about this because

1  termination would be certainly a materially -- a materially

2  adverse employment action.

3         MR. SWANSON:  Sure, sure.

4         THE COURT:  For purposes of a discrimination claim.

5         MR. SWANSON:  Yeah.

6         THE COURT:  But -- but did it actually occur.  And

7  -- and, you know, you -- there is -- there is some suggestion

8  in the record that it was -- whatever happened at that

9  disciplinary hearing on December 3, 2012 on termination it was

10  not final and binding until all appeals have been completed.

11  That's what the city said in their answer filed in State Court

12  to the lawsuit filed by Ms. Hughes, right?

13         MR. SWANSON:  That's correct.

14         THE COURT:  So and -- and that's because apparently

15  provisions in the collective bargaining agreement on this

16  subject.

17         MR. SWANSON:  Yeah.  And -- and --

18         THE COURT:  And so there was a de novo arbitration

19  hearing that was conducted.  So but anyway that -- this is --

20  you know, it's -- I'm sure it's obvious to both of you why I'm

21  asking this question about was there -- actually was there --

22  did a termination occur on December 3, 2012.

23         MR. SWANSON:  Sure.  And I'm --

24         THE COURT:  Or otherwise at any point pre-petition.

25         MR. SWANSON:  I'm looking at the -- the letter from

1  Mr. Ellison to the city's counsel dated May 14th which referred

2  to the police trial board sustaining the chief's determination

3  concerning Sergeant Hughes.  But the trial board did not alter

4  her status of leave with pay.

5      So I don't really think there's a -- a dispute as to

6  termination.  But in any event after this event occurred, an

7  arbitration hearing was conducted.  Hughes and the city

8  submitted post hearing briefs to the arbitrator.  And thus as

9  of the petition date the only event which had not occurred was

10  the arbitrator issuing her decision.  And as Sergeant

11  Hughes --

12          THE COURT:  Now this arbitration decision once made

13  under the collective bargaining agreement is binding?

14          MR. SWANSON:  I believe so, yes.

15          THE COURT:  And -- and that makes a -- if the

16  termination is -- is upheld by the arbitrator there at that

17  stage, that's final?

18          MR. SWANSON:  I believe that's correct, Your Honor.

19          THE COURT:  And so that's --

20          MR. SWANSON:  That's --

21          THE COURT:  -- that's final termination.  Now -- I

22  mean subject to any lawsuit I suppose that could be filed

23  challenging the termination on whatever legal grounds,

24  including discrimination grounds.

25          But -- but so when did the -- the actual termination

1  occur?  Was it on December 3, 2012 when the disciplinary panel

2  said, you're terminated according to the city.  Or, was it

3  only when the arbitrator issued her decision upholding that

4  decision which was a post-petition event?

5          MR. SWANSON:  It occurred when the termination first

6  issued in December --

7          THE COURT:  December 3, 2012 or --

8          MR. SWANSON:  Around that date, yes, Your Honor.

9          THE COURT:  -- thereabouts.  Well before the

10  petition was filed.

11          MR. SWANSON:  Yes.  Subject to her right to appeal

12  which she took advantage of.

13          THE COURT:  All right.  So your -- there may be a

14  written decision on or about December 3, 2012 but it's not in

15  the record.

16          MR. SWANSON:  It is not in the record and -- and I

17  will endeavor to --

18          THE COURT:  Okay.  Well, for that matter the

19  arbitrator's decision is not in the record either, right?

20          MR. SWANSON:  That's correct, Your Honor.

21          THE COURT:  Yeah.  Okay.  It is -- do you agree with

22  the accuracy of what was stated by the city, the city's

23  counsel in the answer that was filed with the state lawsuit in

24  Ms. Tanya's -- Attorney Hughes' lawsuit, Paragraph 3 -- I'm

25  sorry, I'm looking at the -- this is Exhibit 6B to your

1 motion. Part of Exhibit 6B, right, 6B, the city's answer to

2 the state lawsuit that the city filed -- this is docket 9970,

3 the city filed this on May -- or March 23, 2015 in the State

4 Court, Wayne County Circuit Court.

5 Page -- Page 3, part of Paragraph 18 is what I'm focusing

6 on. Starting with the words in the top of Page 3, "on

7 December 3, 2012, a police trial board disciplinary hearing

8 took place wherein she was, meaning Ms. Hughes, was terminated

9 from the department. However, pursuant to the collective

10 bargaining agreement between the Detroit Police Lieutenant and

11 Sergeants Association and the city, the discharge is not final

12 and binding until all appeals had been completed.

13 And then it goes on to say on December 15, 2014 a

14 decision was issued, and this is in the arbitration, to uphold

15 the discharge. Then it says at which point plaintiff

16 employment relationship with the city was completely severed".

17 Is all of that -- do you agree with all of that as -- that all

18 of that is a correct statement?

19 MR. SWANSON: I do, Your Honor.

20 THE COURT: Okay. All right. So what do I do with

21 the fact that the discharge, the termination decision by the

22 -- that you say occurred in December 2012 by the police trial

23 board after the disciplinary hearing to terminate Ms. Hughes

24 was not -- was "not final and binding" basically until the

25 arbitration decision was issued. What impact does that have

1 on this question of whether we're dealing with a pre-petition

2 or a post-petition claim here?

3          MR. SWANSON:  I don't think that has -- has any

4 impact on -- on -- or -- or would at all favor a determination

5 that -- that this is a -- a post-petition claim.  The events

6 giving rise as alleged by Hughes to the claim would have

7 occurred in October of 2012 when she was allegedly

8 discrimination against.  That was the conduct which -- which

9 led to this claim.

10          THE COURT:  Well, what conduct was that though?

11 That was -- wasn't that conduct the city saying, Ms. Hughes

12 you got to take a drug test and you got to take off all your

13 clothes no matter what you say.  You got to take off all your

14 clothes.

15      And when she didn't then the city began the process.

16 They suspended her with pay and began a process to terminate

17 her, right?  And the process didn't complete until the

18 post-petition arbitrator's decision was rendered.

19      So the -- the actual actions by the city that constitute

20 the discrimination were what?  They certainly included the

21 termination of Ms. Hughes' employment.  What else -- did they

22 include anything else?

23          MR. SWANSON:  I --

24          THE COURT:  Did they include for example the

25 efforts, the city's efforts to terminate her which occurred

1  pre-petition even though the termination that ultimately

2  occurred wasn't final and binding until after the petition?

3          MR. SWANSON:  Yes.  I would say that -- that --

4  that, you know, if we're going to use a fair contemplation

5  test here, you have to look at everything which occurred

6  pre-petition.  The alleged discrimination occurred

7  pre-petition.  At least a few hearings occurred pre-petition.

8      As Sergeant Hughes stated in her response the only thing

9  which had not occurred pre-petition is -- is -- is whether the

10  arbitrator would uphold the trial board's determination that

11  -- that she would be terminated.  There -- there -- everything

12  but the final decision occurred pre-petition.  And -- and the

13  fair contemplation test if the Court were to use that test,

14  looks at whether -- whether a creditor could have fairly

15  contemplated a claim as of the petition date.

16      It's very clear in -- in Hughes' response that there are

17  only two possible outcomes.  One outcome, the arbitrator would

18  rule for her, no claim.  Second outcome, the arbitrator would

19  rule against her, has a claim.  Everything had occurred --

20          THE COURT:  Did you view -- do you view that this

21  claim as -- this discrimination claim that was ultimately

22  filed in the form of this lawsuit which was last January, as

23  of the date of the petition, was a -- at that time a

24  contingent claim, but a contingent pre-petition claim?  Or was

25  it unmatured, or was it both contingent and unmatured?  Or how

1 would you characterize it?

2      MR. SWANSON: I -- I would say that -- I mean it --

3 it was contingent to the extent that she did not arguably

4 possess a cause of action at -- at -- as of the petition date.

5 So it was contingent on something else occurring much like,

6 you know, in -- in the guarantee context.

7      THE COURT: Her claim was contingent upon the

8 arbitration decision being in the city's favor?

9      MR. SWANSON: Yes.

10      THE COURT: Supporting a holding termination.

11      MR. SWANSON: Yes.

12      THE COURT: But it was a claim for purposes of

13 Section 101's definition of claim under the Bankruptcy Code

14 which includes contingent claims.

15      MR. SWANSON: Yes, which includes --

16      THE COURT: Albeit it a contingent claim as of the

17 petition date in your view.

18      MR. SWANSON: Yes.

19      THE COURT: Okay. Go on. I've -- I've interrupted

20 you with all these questions. Go on, what else would you like

21 to say now?

22      MR. SWANSON: Just to be clear, Your Honor, I think

23 the -- the contingent -- if -- if this Court were to find that

24 there was an adverse employment action prior to the petition

25 date that the claim would -- would no longer be contingent

1 because by definition there would be no further event which

2 would have had to occur for her to have -- have a claim.

3     But if we go by the -- as I said, Your Honor, there's two

4 different tests that Courts commonly employ here. One is the

5 debtor's conduct test which looks at whether the debtor's

6 actions occurred pre or post-petition. And here we have an

7 action that occurred pre-petition.

8     Hughes did not address this test in -- in her response

9 because I believe it's fairly clear that if the Court were to

10 adopt this approach that the claim would be treated as a -- a

11 -- a pre-petition claim.

12     Similarly under the fair contemplation approach, Hughes

13 has admitted that this claim was within her fair

14 contemplation. There was one of two events which could occur.

15 She could have been -- the termination could have been upheld,

16 or the termination was not upheld. She knew this as of the

17 petition date. The claim was thus within her fair

18 contemplation.

19     Whichever approach this Court were to adopt it should

20 find that Hughes' claim was a pre-petition claim and that the

21 city can enforce this by an injunction requiring the dismissal

22 of the State Court action. Thank you.

23     THE COURT: Did you want to say anything Mr.

24 Swanson, while you're up about the -- anything further other

25 than what you said in your reply brief I guess regarding the

1    -- Ms. Hughes' arguments about I think what she may

2    characterize as confusion about whether this was a

3    pre-petition claim, whether she needed to file a proof of

4    claim, those types of arguments.

5            MR. SWANSON:  Well --

6            THE COURT:  The estoppel type arguments.

7            MR. SWANSON:  Yes, yeah.  I would -- to begin with

8    first off, that's what the city stated in its reply and thinks

9    that those arguments are wrong.  When you examined the notice

10   as a whole, it's -- it's clear that claims that you might

11   commence lawsuits on don't fall within, you know, ordinary

12   wages.  But even if --

13           THE COURT:  Do you think the notice -- and you're

14   talking about the claims bar date notice.

15           MR. SWANSON:  Yes.

16           THE COURT:  And -- and you think the -- the language

17   that you have cited in that notice was sufficient to

18   reasonably inform Ms. Hughes that if she wanted to assert a

19   discrimination claim, employment discrimination claim, that

20   she had to file a proof of claim.

21           MR. SWANSON:  Yes.

22           THE COURT:  By the -- by the claims bar date.  By

23   the claims bar date.

24           MR. SWANSON:  Yes, Your Honor.

25           THE COURT:  Yeah.

1           MR. SWANSON:  Yeah.

2           THE COURT:  Okay.

3           MR. SWANSON:  Even if the language wasn't clear

4  though, Your Honor, which the city believes it was crystal

5  clear, it would not transform a pre-petition claim into a

6  post-petition claim.  Whether or not the language in -- in the

7  bar date was clear or not.  Her claim is a pre-petition claim

8  and nothing that could be said in the bar date order could

9  transform it into a post-petition claim.

10          THE COURT:  I suppose that would have -- that

11  argument then in your view could only possibly have a bearing

12  on whether or not Ms. Hughes were allowed to file a late proof

13  of claim.

14          MR. SWANSON:  That's certainly an argument --

15          THE COURT:  Which she hasn't tried to do yet.

16          MR. SWANSON:  No.  Yeah.  Certainly an argument she

17  could make the city would contest it for, you know, the

18  reasons in its reply and probably some additional reasons.

19  But I don't think that -- this notice issue has -- has no

20  impact on the decision today of whether or not her claim is a

21  pre-petition claim or a post-petition claim.

22          THE COURT:  Well, your motion seemed to seek and the

23  proposed order attached to your motion asks me to order --

24  it's in Paragraph 4 of your proposed order.  It says Tanya

25  Hughes is prohibited from sharing in any distribution in this

1 | bankruptcy case.

2 |     I think that presumes or implies a ruling that it's too

3 | late now for Ms. Hughes to file a proof of claim and have it

4 | be allowed.  And -- and so it presumes that her estoppel type

5 | arguments cannot be used to -- to permit the filing of a late

6 | filed proof of claim by -- on her part if I rule that this is

7 | in fact a pre-petition claim as you say.

8 |          MR. SWANSON:  I wouldn't take that --

9 |          THE COURT:  Do you understand what I'm saying?

10 |          MR. SWANSON:  Yeah, I do.  I wouldn't take that

11 | language to mean that if this Court were at some later date to

12 | grant a motion to permit or to file an untimely claim that --

13 | that because this Court would enter this order that any

14 | subsequent order it would enter granting such a motion, you

15 | know, she would -- it would be effectively no relief because

16 | of this previous order.

17 |          THE COURT:  Well, should I say all that, or

18 | something like that in this order, or should we just take

19 | Paragraph 4 out of the order if I grant the motion otherwise.

20 |          MR. SWANSON:  Let me take a look at the order.

21 |          THE COURT:  That is just take out the language that

22 | says that she's prohibited from sharing in any distribution in

23 | the bankruptcy case.  I mean that's -- if she never files a

24 | proof of claim, then that's obvious, isn't it?  If she files a

25 | proof of claim, then the city may object.

1          MR. SWANSON:  Sure.

2          THE COURT:  And we'll have proceedings then about

3   timeliness issues among others and if she files a motion to

4   extend the deadline to file a proof of claim retroactively,

5   the city can object to that and we'll have a hearing and

6   proceedings on that.  But none of that has happened yet.

7          MR. SWANSON:  And -- and that was -- that was going

8   to be my response.  None of that has happened.  She hasn't

9   sought to file a claim.  I mean this has clearly been an issue

10  for four or five months.  She hasn't sought to file a proof of

11  claim.  She hasn't filed a motion to permit or to file an

12  untimely claim.

13      And on the record as we have it today, I don't see any

14  basis to take -- take out that paragraph.  As of right now if

15  the Court were to agree with the city's position, she would be

16  prohibited from sharing in any distribution in the bankruptcy

17  case.

18          THE COURT:  All right.  Anything else you want to

19  say then?

20          MR. SWANSON:  No, Your Honor.  Thank you.

21          THE COURT:  All right.  Mr. Ellison.

22          MR. ELLISON:  Yes.  Thanks very much, Your Honor.

23  You'll -- you'll forgive my -- I ask the Court's indulgence in

24  forgiving my ignorance of the niceties of bankruptcy law that

25  Mr. Swanson has demonstrated thus far.

1    I'm an employment law practitioner, Your Honor.  I -- I

2  come to this Court with no experience with bankruptcy and what

3  I have learned in the last couple of months is a -- a lifetime

4  of knowledge, Your Honor.  Or what I've tried to do is learn a

5  lifetime of knowledge of bankruptcy in -- in the short time

6  that I've been dealing with this issue.

7    What strikes me first off, Your Honor, is that if in fact

8  Mr. -- Mr. Swanson is correct about the -- the policy that

9  Congress attempted to adopt achieving the broadest possible

10  definition of claim, they would have put in language that in

11  fact did that.

12    And yet instead we have a split among the circuits.  It

13  used to be a three way split among the circuits, now it's a

14  two way split among the circuits.  Do we look only at the

15  underlying act of the debtor, or is there something more

16  that's required.

17    And up until not -- not that long ago the third test that

18  -- that the 3rd Circuit was the only one who adhered to, was

19  the accrued -- the accrued claim test.  The accrued claim test

20  is the one that I am most familiar with as an employment law

21  practitioner.  You don't have the right to file a lawsuit

22  until you have a statutory discrimination case that results in

23  adverse employment action to the plaintiff, to the employee.

24    In other words the employer can have all the

25  discriminatory animus that it wants to have, but until it

1  terminates an employee and that person is removed from the

2  payroll and suffers loss of pay, loss of job, because of that

3  discriminatory animus you don't have a statutory

4  discrimination case.  That was the 3rd Circuit's standard for

5  assessing whether the claim was pre-petition or not.

6      When the 3rd Circuit reversed in the Granville case, that

7  left the two splits -- or the -- the split that we have now

8  among the circuits.  The 6th Circuit interestingly to me has

9  never ruled.  The 6th Circuit Court of Appeals has never ruled.

10  And -- and instead we're left with District Bankruptcy Courts

11  and District Courts within the 6th Circuit to attempt to assess

12  what Congress really intended with the definition of claim.

13      And the -- the law within the 6th Circuit as I am able to

14  -- able to glean it is that there's a requirement of fair

15  contemplation.  And what the city has done here is conflate in

16  my estimation underlying act and fair contemplation to make

17  them the same thing.

18      What they have -- the fair contemplation, Your Honor, and

19  I -- I cite a couple of cases.  One is the Signature Combs

20  case which was an environmental case under -- under CERCLA.

21  There a cause of action accrues if we're using the accrual

22  test when there's a toxic release and response costs and in

23  Signature Combs the Bankruptcy Court said, a plaintiff has a

24  claim against the polluter under CERCLA if they actually incur

25  the response costs but for bankruptcy purposes we will say --

1  we'll look at whether both events, both the toxic release and

2  the response costs fall on the same side of the petition

3  filing date, but we will look at the response costs and say,

4  if the plaintiff knows that it is going to have response

5  costs, and if that knowledge comes on the same side of the

6  petition filing date as the release, then it is a pre-petition

7  claim.

8      Like -- likewise in <u>Senczyszyn</u>, and I beg Your -- Your

9  Honor's indulgence in mispronouncing that name.  An income tax

10  case where the state sought to recover unpaid taxes and the

11  debtors had -- these taxes were incurred pre-petition.  They

12  -- the -- the state responded to that saying well, they --

13  they didn't have to pay the taxes until after the petition was

14  filed, so it's a post-petition claim.  And the Court said no,

15  that's -- it was within the contemplation of the state that

16  once the -- once the income is earned, taxes are due even

17  though the payment doesn't come until later.

18      Again it's a situation where the taxing authority knows

19  that there's tax liability.  In contrast in the case at bar,

20  Your Honor, Sergeant Hughes doesn't know that she has a

21  discrimination case until she suffers adverse employment

22  action.

23      And the adverse employment action that is recognized by

24  the Courts of Appeals that are in -- decisions that are in my

25  brief, say that if you're suspended with pay, if you're on

1  leave collecting your full compensation, benefits, pension

2  accrual, et cetera, you don't have the right to file a

3  discrimination lawsuit because you have not suffered adverse

4  -- adverse employment action.  And it's only when the adverse

5  employment action occurs that -- that you are able to bring

6  your statutory discrimination case.

7       In this situation, Your Honor, that occurred after the

8  petition.  In fact after December 10, 2014 the -- the schedule

9  14 category that I heard Your Honor mention in a previous

10  motion.

11          THE COURT:  Class 14?

12          MR. ELLISON:  Class 14, thank you.  The -- the

13  policy consideration --

14          THE COURT:  So is part of what you're saying here,

15  Mr. Ellison today --

16          MR. ELLISON:  Yes, Your Honor.

17          THE COURT:  -- that everything the city did was

18  directed against Ms. Hughes in there and can be characterized

19  a having generally speaking as the city's effort to terminate

20  her because of her refusal to take this drug test with all her

21  clothes off.  That everything the city did to try to terminate

22  her, to -- to move toward termination, to follow the

23  procedures required by the collective bargaining agreement to

24  terminate her, that all of those actions are not actionable at

25  all and they're not employment discrimination.

1    They cannot be the basis for an employment discrimination

2  claim.  At least not unless and until the termination is

3  actually effective under the collective bargaining agreement

4  procedures.

5           MR. ELLISON:  That's exactly right.

6           THE COURT:  That is with the arbitration decision

7  upholding the termination.

8           MR. ELLISON:  Right.  That's exactly right.

9           THE COURT:  And so it's not -- is it -- is it -- is

10  it only the termination that is the adverse employment effect

11  that is -- that is the basis for the discrimination claim or

12  claims that -- that Ms. Hughes has -- has brought?

13           MR. ELLISON:  If -- if the chief of police -- if the

14  request for the chief of police through the board of police

15  commissioners to have the suspension converted from with pay

16  to without pay had been granted, she would have suffered loss

17  of pay back in October of 2012, obviously pre-petition.  That

18  would have been adverse employment action that's when her

19  claim would have arisen.  But it --

20           THE COURT:  But it didn't happen.  So --

21           MR. ELLISON:  It did not happen, right.

22           THE COURT:  So in terms of what actually did happen,

23  is -- is her termination which in your view became effective

24  only -- final only when the arbitrator occurred really you're

25  saying.  When -- when the arbitrator decision came out.  Her

1  termination from employment that occurred when that happened,

2  that's the only basis for the discrimination claims?

3          MR. ELLISON:  That's correct, Your Honor.

4          THE COURT:  And it's the only materially adverse

5  effect on her employment is the basis for the discrimination

6  claim she's brought.

7          MR. ELLISON:  Correct.

8          THE COURT:  Okay.  So what did happen pre-petition

9  in terms of her termination at this disciplinary hearing?  You

10  heard my questions of Mr. --

11          MR. ELLISON:  Yes, Your Honor.

12          THE COURT:  -- of Mr. Swanson about that, this

13  December 3, 2012 which the city says she was terminated.  As

14  he put it, subject to her right of appeal.

15          MR. ELLISON:  Subject to her right of appeal.  Your

16  Honor, again forgive me.  It's been a while since I've looked

17  at the contractual language between the Lieutenants and

18  Sergeants Association and the city as it existed pre-petition.

19          But essentially the chief of police has the authority to

20  fire subject to rights of appeal.  And in the usual case if

21  the chief's decision is not appealed timely under the

22  collective bargaining agreement, it becomes effective.  If it

23  is appealed timely it does not become effective until that

24  next appeal is adjudicated and resolved.

25          There are two levels of appeal under the collective

1  bargaining agreement.  There's an appeal to a police trial

2  board which is essentially three command level officials who

3  are subordinate to the chief who conduct an evidentiary

4  hearing, swearing of witnesses, cross examination of

5  witnesses, taking of documentation -- documentary evidence,

6  and reaching a deliberative conclusion.

7      But the trial board itself does not have authority to

8  impose a dismissal that the chief himself did not have the

9  authority to impose.  Any decision from the trial board does

10  not become effective unless and until it is not appealed.  If

11  it is appealed, the trial board decision also is stayed.

12      And so there were two appeals in this case.  There was

13  the appeal that Sergeant Hughes filed from the chief's

14  decision, and then there was the appeal that Sergeant Hughes

15  filed from the trial board decision.

16      The second appeal going to a civilian arbitrator who had

17  the authority to conduct a de novo hearing essentially calling

18  all of the same witnesses who were called at the police trial

19  board and subjecting those witnesses to cross examination,

20  reviewing the documentary evidence involved, and reaching a

21  deliberative conclusion based on the evidence presented to the

22  arbitrator, not any evidence that was previously presented to

23  any other authority.

24      The arbitrator's decision is final and binding with

25  respect to the collective bargaining agreement.  And the

1  collective bargaining agreement standard is whether there is

2  "just cause for dismissal".  The collective bargaining

3  agreement does not consider whether the grievant here,

4  Sergeant Hughes, had any other claim outside of the collective

5  bargaining agreement such a claim under the Elliott-Larsen

6  Civil Rights Act, or the Persons With Disabilities Civil

7  Rights Act, both of which are Michigan statutes that are

8  beyond the purview of the arbitrator.

9        THE COURT:  Does the collective bargaining agreement

10 say that determining whether there was "just cause for

11 dismissal" that arbitrator is not to consider whether there

12 might be a valid discrimination claim?

13        `MR. ELLISON:  The -- the collective bargaining

14 agreement does not get specific in that regard, Your Honor.

15 The --

16        THE COURT:  Just cause could include an argument

17 that -- an employee's argument could be to the -- is it

18 correct an employee could argue consistent with the collective

19 bargaining agreement to the arbitration panel, or arbitrator,

20 my termination was not for just cause because it was done in

21 violation of my rights under the Elliott-Larsen Act.

22        MR. ELLISON:  Well, the grievant could make that

23 argument.  I -- I grant Your Honor that point.  But the

24 arbitrator's decision on that would not be -- would not take

25 that issue away from a Court subsequently considering an

1 Elliott-Larsen claim.

2        THE COURT:  Well, I wasn't asking you that.  I

3 was --

4        MR. ELLISON:  Right.

5        THE COURT:  -- asking whether it can factor into

6 this just cause test under the collective bargaining

7 agreement.

8        MR. ELLISON:  It could.  I mean if the arbitrator

9 concluded there's a violation of Elliott-Larsen and therefore

10 there's not just cause and I'm reversing the dismissal, the

11 arbitrator's decision is final and binding as it relates to

12 just cause under the collective bargaining agreement.  It does

13 -- it does not end the analysis as it relates to any other

14 rights, in particular statutory rights that the employee may

15 have.

16        THE COURT:  So it takes away -- if the decision is

17 unfavorable to employee by the arbitrator, it's final and

18 binding in the sense that it precludes the -- in your view, it

19 precludes the employee from suing in a Court and claiming a

20 lawsuit in Court after that that the -- the city breached the

21 collective bargaining agreement by terminating.

22        MR. ELLISON:  Correct.

23        THE COURT:  But that's -- that's the only claim or

24 argument of the employee that that would take away.

25        MR. ELLISON:  Correct.

1          THE COURT:  Okay.  Go on.

2          MR. ELLISON:  So, Your Honor, on Sergeant Hughes,

3   while she's awaiting the arbitrator's decision, doesn't know

4   in the way that the plaintiff in the Signature Combs pollution

5   case knew that she had a claim.  The -- the plaintiff in the

6   Signature Combs pollution case knew that it was going to incur

7   response costs.  And only question was when were they going to

8   hire the contractors to do the clean up.

9          The State of Michigan in the Senczyszyn the case knew

10  that the debtor owed taxes.  Even though they may not be due

11  until after the petition was filed.  Sergeant Hughes didn't

12  have that similar certainty of knowledge which is what's

13  required by the fair -- fair contemplation test.

14         She knew one of two things.  But she needed to know that

15  she had a claim.  And one of the things that she knew was that

16  she might not have a claim because she might win in front of

17  the arbitrator.  And it was only when the arbitrator's

18  decision came in that said that she lost in front of the

19  arbitrator and then the very next day the city said, you are

20  off the payroll and cut off her health care, and her pension

21  accrual, and stopped her paycheck.

22         That's when she knew the thing that the plaintiffs in the

23  other two cases knew pre-petition.  And that's what

24  distinguishes Sergeant Hughes' case and makes her case one

25  that does not fall within fair contemplation which is the

1  standard in the 6th Circuit.

2          THE COURT:  Is it -- are you arguing that the fair

3  contemplation test is the test that the Court should use,

4  first of all?

5          MR. ELLISON:  I am, Your Honor.

6          THE COURT:  But -- but that -- I gather you're

7  arguing that test, applying that test the Court should use

8  this -- the articulation of that test that the Signature Combs

9  Court gave.  You know, that -- that the debtor -- it focuses

10  on what the debtor knew at the time of the petition.

11          MR. ELLISON:  What the debtor knew?

12          THE COURT:  Yeah.  I'm sorry, what the creditor

13  knew.

14          MR. ELLISON:  Right.

15          THE COURT:  Yeah.  So what do you -- what do you do

16  with or make of the language in the cases other than Signature

17  Combs that the parties have cited and I think you cited, the

18  Senczyszyn case which characterized -- and that's 426 BR at

19  257, that Court, my colleague Judge Shefferly in that case

20  described the fair contemplation test as -- as this, "it looks

21  at whether there was a pre-petition relationship between the

22  debtor and the creditor such as a contract, exposure, impact,

23  or privity such that a possible claim is within the fair

24  contemplation of the creditor at the time the petition is

25  filed.  It uses this concept possible claim is within the fair

1  contemplation.

2      And then -- that's <u>Senczyszyn</u>, <u>Senczyszyn</u> whatever.  And

3  then in the <u>Spencer</u> case which I think was cited by the city

4  in their papers.  It was cited by one of you.  In the -- the

5  District Court in the <u>Spencer</u> case which is a decision of the

6  District Court from this district from 2011, uses that same

7  kind of language.  457 BR at 606, the District Court in

8  describing is quoting from the <u>Dixon</u> case with apparent

9  approval describing the -- this test as "looks at whether

10  there was a pre-petition relationship between the debtor and

11  the creditor such that a possible claim is within the fair

12  contemplation of the creditor at the time the petition is

13  filed".

14      Possible claim.  That -- that -- that sounds awfully

15  broad, doesn't it?

16      MR. ELLISON:  It is awfully broad, Your Honor.  But

17  when you apply it to the context that we have here, obviously

18  there's been a relationship between Sergeant Hughes and the

19  police department going back 20 years.  So what's the nature

20  of the relationship.

21      THE COURT:  No, but the -- yeah, the next -- the

22  next question though -- of course now we apply this -- this

23  standard if we use that wording to this case.  At the petition

24  date Ms. Hughes knew that -- the argument is she -- she could

25  fairly contemplate that she had a possible discrimination

1  claim against the city.  It was possible and not definite

2  because her termination had not yet been upheld by the final

3  binding arbitration decision.

4          MR. ELLISON:  Right.

5          THE COURT:  But she had lost up to that point on the

6  termination issue.

7          MR. ELLISON:  Well --

8          THE COURT:  Subject to the appeal rights.

9          MR. ELLISON:  But she had won it from the board of

10 police commissioners.  The board of police commissioners had

11 -- had passed on the chief's request to make the suspension

12 without pay and the board of police commissioners said no,

13 it's going to be with pay.

14         THE COURT:  She won on that issue, but --

15         MR. ELLISON:  Yeah.

16         THE COURT:  -- she -- she lost on -- didn't she, on

17 the police trial board disciplinary hearing in December 3,

18 2012 when they terminated her.  They decided to uphold the

19 chief's termination decision, didn't they?

20         MR. ELLISON:  They did, Your Honor.  And --

21         THE COURT:  Okay.

22         MR. ELLISON:  And  --

23         THE COURT:  So that's what she was appealing when --

24 to the arbitration.

25         MR. ELLISON:  She was -- she was appealing that

1  She was -- she was appealing the decision of three individuals

2  who are subordinate to the chief of police and who frankly,

3  Your Honor, never reversed the chief on a dismissal.  It's --

4         THE COURT:  Well, that's not -- there's no evidence

5  in the record on that, but --

6         MR. ELLISON:  I understand that, Your Honor.

7         THE COURT:  Of course there's no -- there's no --

8  there's no written termination decision from that board in the

9  record either yet.

10         MR. ELLISON:  Right.

11         THE COURT:  Was there a written decision by the way?

12         MR. ELLISON:  I believe that there was a written

13  decision, Your Honor.

14         THE COURT:  All right.  So --

15         MR. ELLISON:  And I will tell Your Honor that the

16  reason arbitration was added to the collective bargaining

17  agreement was to bring some confidence to the adjudicative

18  process under the grievance procedure.  Simply leaving it with

19  the trial boards was saying that the chief's decision stands.

20         THE COURT:  Okay.  So getting back to the fair

21  contemplation test as articulated by these cases I've

22  quoted --

23         MR. ELLISON:  Right.

24         THE COURT:  Why did Ms. Hughes at the petition date

25  July 2013 when -- when the decision to terminate her had been

1 | upheld by this --

2 |         MR. ELLISON:  By the trial board.

3 |         THE COURT:  -- police trial board and her appeal

4 | from that was not yet decided by the arbitrator but the matter

5 | was pending and submitted to the arbitrator.  Why wasn't --

6 | you know, why isn't it accurate to say that she -- a possible

7 | discrimination claim, one that she would have in her view if

8 | the arbitrator upheld the termination decision, was within her

9 | fair contemplation at the petition date.  Do you see what I'm

10 | getting at?

11 |         MR. ELLISON:  I -- I see what you mean.

12 |         THE COURT:  It's the concept of a possible claim is

13 | -- is -- I mean it's -- it's kind of vague but it's a broad --

14 | seems like a very broad standard.

15 |         MR. ELLISON:  I -- I -- I appreciate that it's

16 | broad, but I also want to emphasize here, Your Honor's point

17 | it's vague.  And to the extent that those cases follow

18 | Signature Combs, Signature Combs is much more definite about

19 | knowing that you have a claim and it's just a matter of in the

20 | -- in -- in the case of the plaintiff in Signature Combs, they

21 | know that they have a legal obligation to incur response

22 | costs, they just haven't hired the contractor yet.

23 |     So if you know that then you've got a claim even though

24 | you -- you couldn't sue under CERCLA until you actually hire

25 | the contractor.  And it's not a question -- if -- if the

1 | plaintiff in Signature Combs said well, I don't know if I'm

2 | going to have to incur these costs because I don't know how

3 | serious the toxic release is and I don't know if that triggers

4 | my obligation under the law there would -- there would have

5 | been a different outcome there.

6 | But the -- the Court in Signature Combs said that there's

7 | -- there's much more certainty involved as to when the claim

8 | -- when notice to the plaintiff arises.  And here we just

9 | don't have that certainty because it was an either/or.

10 | THE COURT:  All right.  What else did you have to

11 | say?

12 | MR. ELLISON:  Well, Your Honor, I -- I addressed in

13 | my brief as well the issues about the notice to her of her

14 | right to file a claim and I think you've addressed it in your

15 | colloquy with Mr. Swanson.  So I don't -- I don't have

16 | anything further other than what I -- what's in the papers.

17 | THE COURT:  Do you agree that your estoppel argument

18 | is -- is -- really only addresses the question of whether Ms.

19 | Hughes might be able to be allowed to file a late proof of

20 | claim in the bankruptcy case and have it allowed even though

21 | it's late if I rule that this is a pre-petition claim rather

22 | than the issue of whether this is a pre-petition --

23 | MR. ELLISON:  Yes.

24 | THE COURT:  -- or it's a post-petition claim.

25 | MR. ELLISON:  Correct.

1           THE COURT:  Okay.  Anything else?

2           MR. ELLISON:  No.  Thank you, sir.

3           THE COURT:  All right.  Thank you.  Mr. Swanson, if

4   you wanted to reply you may do so.

5           MR. GREEN:  Your Honor, with your permission, may I

6   -- I reply on behalf of the city?

7           THE COURT:  Mr. Green, sure.

8           MR. GREEN:  Thank you, Your Honor.  I just want to

9   step back and talk about the reply, but also talk about this

10  case in the context of the world of bankruptcy a little bit.

11  Because really what we have here is the collusion of two

12  different worlds, one being of course what would happen

13  outside of a bankruptcy case and what would happen inside of a

14  bankruptcy case.

15      And when we talk about when a claim accrues and when it

16  doesn't accrue, that works fine when you're dealing with a two

17  party dispute or a singular proceeding.  And it doesn't work

18  at all in the context of a collective proceeding and I think

19  that's what Congress when it passed the Bankruptcy Code

20  intended when it said, and did what it did and defined claim

21  as broadly as it could conceivably define it.

22      The legislative history as Mr. Swanson pointed out, it is

23  clear the definition of claim which has no temporal limitation

24  is as broad as one could -- could contemplate.  And -- and the

25  reason is because just as an estate is created on the filing,

1  the claim pool has to be fixed, whether it's -- whether these

2  claims have accrued, whether they're mature, whether they're

3  liquidated, whether they're contingent.  We have to deal with

4  assets at a point in time and claims at a point in time.

5      If accrual were the test, and I'm sure this is why

6  Grossman's, 3rd Circuit overruled Frenville and Grossman's were

7  the test you couldn't have your asbestos cases, you couldn't

8  have your products liability cases, you couldn't have a whole

9  host of cases unless one of two things happened.

10     You dealt with those claims as best as you could and

11 that's why we have the definition of claim and that's why we

12 have the estimation procedure in 502(c) and that's why we have

13 a lot of other things.  Where I guess theoretically we would

14 have to wait till the expiration of the longest statute of

15 limitations with respect to the accrual of any type of claim.

16     So the ruling here isn't really just important for this

17 singular matter, but it's important for this case and it's

18 important for bankruptcy jurisprudence generally.  And that's

19 why these claims all have to be -- if you had any knowledge of

20 this.  That's why we talk about possibility, fair

21 contemplation.

22     You're on notice that in May there may -- you may have a

23 claim and you'd better assert it.  Any other -- any other

24 interpretation that requires an actual accrual under state law

25 causes the collective bankruptcy proceeding to fail.  And in

1  fact I would posit that if this were a Chapter 7 and the

2  assets were immediately liquidated, everybody -- if accrual

3  was the test as opposed to fair contemplation or debtor's

4  conduct, everybody's claim that had not yet accrued including

5  Ms. Hughes' claim will receive no distribution because the

6  assets in a Chapter 7 case would be liquidated by a trustee

7  expeditiously, promptly as directed in 704.  The proceeds

8  distributed to all the claims that had accrued.  There would

9  be nothing left for parties with legitimate unmatured,

10  unliquidated contingent claims to recover.

11      So ironically anything that deals with any -- any system

12  that relies on the accrual of claims will leave those

13  claimants out of bankruptcy process at least in the Chapter 7

14  contract -- context.  And ironically forces a creditor to

15  argue for one test over the other test in the context of the

16  chapter that is filed.

17      So this issue is a very important issue.  It goes really

18  to the essence of what we're talking about.  And that's why

19  Courts say fair contemplation.  If you have any knowledge that

20  you may have a claim, file a claim.

21      And I think Your Honor is correct.  I think these claims

22  to the extent I'm not reading more into the questioning than I

23  may be reading, the answer is that this is undoubtedly a

24  pre-petition claim.  There may or may not be a basis for

25  allowing an extension under Pioneer or elsewhere to file a

1  late and have treated timely the claim as unsecured.

2      But there is little doubt that the conduct and the fair

3  contemplation are -- are overwhelmingly satisfied in this

4  case.  And that this proof of claim should have been filed for

5  our collective proceeding to work.

6      So understanding the questions that go to when the claim

7  accrued, frankly will be in -- in the city's view, would be of

8  -- of no moment.  If -- if -- if they were aware that there

9  was a possibility that the claim existed.  Because applicable

10 state law may define rights, but how those rights are treated

11 in bankruptcy for this collective proceeding to work overrides

12 or supersedes that.

13      THE COURT:  Well, you're arguing, I think against

14 using the accrual test that the 3rd Circuit adopted but later

15 rejected.  But you're -- you're -- you seem to be arguing more

16 than that in here.  And -- and perhaps -- perhaps without

17 saying so, you seem to be arguing that, at least implicitly,

18 that the formulation of the test if it -- if it's as Mr.

19 Ellison says is in the Signature Combs case, is not correct.

20 It does not take as broad a view of what's a claim under the

21 Bankruptcy Code as it ought to.

22      If -- if that's viewed as a minimum requirement.  That

23 the creditor knew that all the pieces were in place for them

24 to have a claim,

25      MR. GREEN:  I -- I believe for the system to work,

1  the -- the real test, forget whether it's -- and I -- and I

2  realize the cases don't say this, but I think from a normative

3  standpoint the test ought to be debtor's conduct or their

4  contemplation.

5      Because the whole objective of the process that the

6  statutory scheme that's put in place is to treat all claims as

7  pre-petition claims regardless of whether they have -- you

8  know, automatic acceleration of all debt.  Why?  Because we

9  have to deal with that debt.  Why do we have to deal with that

10  debt?  Because we believe something has a moment in time

11  within the state.

12      And if you don't deal with all that debt you have no

13  ability to do that.  So even though for instance, and I'll end

14  up reading it.  Even if the loan agreement didn't have a

15  contractual provision which it often does that says it's

16  accelerated upon the filing of the bankruptcy, the Bankruptcy

17  Code accelerates that debt.

18      When asked if it was contingent, it could be contingent.

19  It was unmatured, unliquidated.  It satisfied a number of

20  those components in 101-5(a).  But -- but they all go to the

21  same thing and other than in extreme due process cases, that's

22  really all you've got carved out is due process cases from a

23  pre-petition claim treatment.

24      If you knew or had reason enough -- the concepts of

25  constructive notice.  I don't know you exist.  You may have

1 been exposed to asbestos three years ago and you haven't

2 manifested a thing. And I have to give you personal notice if

3 I know you and you're certainly going to be bound by that even

4 though you haven't manifest any injury, even though under --

5 under non-bankruptcy law you couldn't have asserted that

6 claim.

7 But if I don't know you, I can obtain notice by

8 publication because it's the best. It's -- it's the only

9 notice that's reasonably calculated to apprise if I don't have

10 personal notice that you exist. To bring you into the

11 bankruptcy forum to assert any claim you have.

12 So the distinctions we've been discussing about the

13 accrual of the claim from a bankruptcy standpoint are not

14 particularly relevant, shouldn't be particularly relevant, and

15 couldn't be particularly relevant for the statutory scheme to

16 work in a collective proceeding, particularly when you

17 translate it to a Chapter 7 case. Not really in all cases and

18 we certainly aren't going to have a different rule for

19 determining when a claim is pre-petition as opposed to

20 post-petition based on the happenstance of what chapter the

21 debtor happens to file and commence its case in.

22 THE COURT: Do you view Ms. Hughes' claim,

23 discrimination claim as of the petition date as being a -- a

24 yes, you're arguing it's a pre-petition claim. So the claim

25 existed at the petition date. Do you view it as a contingent

1  claim at that time?

2      MR. GREEN:  You know, I don't know.  I mean it

3  certainly required certain things to occur.  It -- it -- it

4  is, even though you can make the comparison with the

5  guarantee, how the guarantee has been executed although

6  certain actions have taken place that start that process.

7     We don't know yet if someone will default under a

8  guarantee.  We don't know yet how the Court will ultimately

9  rule.  But it's certainly a -- and certainly in addition to

10 that maybe -- what does unmatured mean?  What does unmatured

11 mean?  Non-accrued.

12     THE COURT:  Well, I'm focusing on contingent right

13 now.

14     MR. GREEN:  Okay.  Fair enough, Your Honor.

15     THE COURT:  So let's --

16     MR. GREEN:  Fair enough.  No, no, let's --

17     THE COURT:  So it's -- the answer is it could be,

18 you don't know.

19     MR. GREEN:  The answer is, I think it probably is a

20 contingent claim.  Because it requires an event outside the

21 power of the -- of the claimant him or herself or itself much

22 like I would say -- much like a default of a primary borrower

23 and the guarantor incurs liability under a document that had

24 been executed.

25     So, you know, I guess I would say it is contingent but

1 | it's a -- it's a -- it's a fine line where you stop one and

2 | can go into the other where actually the disjunctive is used

3 | in claim because it has to be one of -- it -- it -- it's

4 | inclusive of all of these types of claims for the -- for the

5 | -- for the jurisprudential reason that I tried to describe.

6 | So the short answer is yes, I believe it's likely to be a

7 | contingent claim.

8 |         THE COURT:  All right.  Anything else you'd like to

9 | say, Mr. Green?

10 |        MR. GREEN:  No, Your Honor.  Thank you very much.

11 |        THE COURT:  Thank you.  Well, thank you to both

12 | sides and all attorneys on this matter for your arguments

13 | today.  That's very helpful to help me sort out the issues and

14 | the arguments.  I'm going to try to do that.

15 |     I want to take a bit more time to think about the

16 | arguments and the authorities and the issues that the parties

17 | have presented, both orally and in writing in connection with

18 | this motion by the city before I make a ruling.  And so I'm

19 | not going to rule at this moment on the motion.

20 |     And I also want to -- I want the parties to put into the

21 | record three documents if they -- if and to the extent they

22 | exist before I make my ruling.  Which I can consider, I intend

23 | to consider for whatever value and -- and impact they may

24 | have.  And I'm not predicting how great an impact they'll

25 | have, but I do want them in the record.  And I want to have a

1  chance to review them.

2      The three things are to the extent they exist.  First,

3  any writing by which the police trial board either terminated

4  Ms. Hughes or upheld the chief of police's decision to

5  terminate Ms. Hughes as a result of the hearing that occurred

6  on December 3, 2012 as alleged in Paragraph 19 of the city's

7  motion.  Second, the written decision of the arbitrator that

8  ultimately upheld that termination decision.  And third, the

9  particular provisions of the applicable collective bargaining

10  agreement in effect as of the bankruptcy petition date that

11  spell out the procedure, including appeal procedures that

12  apply -- that applied to the city's efforts to terminate Ms.

13  Hughes.

14      I don't need the entire collective bargaining agreement,

15  but just a copy of the provisions that spell out this -- this

16  procedural structure that the parties have described and

17  apparently agreed it sounds like existed at the time that

18  applied here to Ms. Hughes and the city's effort to terminate

19  her.  I can require the city to file these things, perhaps the

20  parties can stipulate to these things and jointly file them,

21  but I want them in the record.

22      So Mr. Swanson, any problem filing these things?  You

23  weren't sure if there's actually a written decision on the

24  board.

25      MR. SWANSON:  To the extent that they exist.

1          THE COURT:  Yeah, sure to the extent they exist.

2          MR. SWANSON:  I -- I --

3          THE COURT:  If -- if they don't exist, if they're

4    not in writing, any of this stuff, tell me.  It sounds like

5    the only thing that might apply to is the termination decision

6    of the police trial board.

7          MR. SWANSON:  That seems likely to me, but I -- I

8    don't have any -- I'm guessing there was a collective

9    bargaining agreement of course.  And, you know, so yeah, to

10   the extent they exist, I will file them.

11         THE COURT:  All right.  Mr. Ellison, I forget what

12   you said.  You said -- you said you thought that that decision

13   of the police trial board was written.  Did you say that?

14         MR. ELLISON:  I don't know if I said that, Your

15   Honor, but typically they are written.

16         THE COURT:  You're not sure if this one is.

17         MR. ELLISON:  Correct.

18         THE COURT:  All right.  Well, Mr. Ellison, I assume

19   that whatever Mr. Swanson finds in terms of these writings

20   that you will have no problem in stipulating to their

21   authenticity of these documents.  That's not necessarily

22   stipulating that these are relevant or how relevant they are,

23   what relevance they have, but simply stipulating to the

24   authenticity of the documents as part of the stipulation,

25   filing them as a supplement to the city's motion.  Do you have

1  any problem with that?

2      MR. ELLISON:  I -- I have no problem with that, Your

3  Honor.  I -- I expect that Mr. Swanson will send them to me

4  before he files them and ask me if they're accurate and then

5  I'll stipulate and if they are in fact accurate, I will freely

6  stipulate.

7      THE COURT:  Well, then what -- what I want then is

8  for Mr. Swanson for the city through counsel to file these

9  copies of these three things that I've said I want as a

10 supplement to the city's motion.

11     To the extent of that Mr. Ellison on behalf of Ms. Hughes

12 can stipulate to the authenticity of the documents.  I'd like

13 that to be filed also as part of this supplement.  Mr.

14 Swanson, I want to set a deadline for these things to be

15 filed.  How soon should I set that deadline for?

16     MR. SWANSON:  Two weeks from today, would that be

17 acceptable, Your Honor?

18     THE COURT:  That's fine with me.  That's July 29,

19 2015.  One moment.  I -- I have in mind announcing and

20 explaining my ruling on this motion orally through a bench

21 opinion rather than in a written opinion interest in getting

22 it out sooner rather than later.  Just because his one I want

23 to do this way.  I might change my mind later, but this is

24 what I want to do.

25     So I want to set a further hearing date for the purpose

1  of the Court giving a bench opinion on this motion.  I'd like

2  to do it on the first Wednesday after this supplement is filed

3  which would be Wednesday, August 5 at 1:30 p.m.  And if -- let

4  me know each side whether that date and time works on your

5  calendar.

6          MR. ELLISON:  Yes, Your Honor, it does.

7          MR. SWANSON:  Yes, Your Honor, it does.

8          THE COURT:  All right.  So we'll schedule the motion

9  for further hearing for the purposes of that -- solely for the

10  purpose of giving that bench opinion.  I'll prepare and enter

11  a procedural type order that reflects the -- the supplement

12  being filed and the further hearing date and so forth.

13      But it's just going to be a bench opinion.  It's not

14  going to be a further argument opportunity.  Because of that

15  as I usually do with bench opinions hearings, I'll -- I'll

16  extend to the parties a invitation if you want to take

17  advantage of it, of attending that hearing by telephone if you

18  want to.

19      You're certainly welcome to be here in person, but if you

20  want to attend by phone so it will save you some travel time

21  since it's not going to be an occasion for you to argue

22  anything, but rather just to listen to me talk, you're welcome

23  to do that.  But as I said, I'm always happy to have -- have

24  you here in person if you want to do it that way.

25      Either one can do -- one can go by phone, one can come in

1 | person or both in person, however you want to do it.  If you

2 | do want to attend by telephone, I just need you to make

3 | arrangements with -- with my Court Recorder which for purposes

4 | of the Detroit case is Ms. Siccula who is -- who you can reach

5 | by calling -- you can call my chambers if you don't have her

6 | number and make arrangements for -- to attend by phone.

7 |     And do that at -- at least a couple of days before the

8 | August 5 date.  And otherwise just you can come in person and

9 | we'll do it that way.  So all right.  So that's -- that's it

10 | for this matter for the day.  Thank you and we'll see you all

11 | next time or hear from you all next time, or you'll hear from

12 | me.  So thanks.

13 |     MR. ELLISON:  Thank you..

14 |     MR. SWANSON:  Thank you.

15 |     MR. GREEN:  Thank you.

16 |     THE CLERK:  All rise.  Court is adjourned.

17 |     (Court Adjourned at 4:25 p.m.)

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

1

2

3

4

5

6

7  We certify that the foregoing is a correct transcript from the

8  electronic sound recording of the proceedings in the

9  above-entitled matter.

10

11 /s/Deborah L. Kremlick, CER-4872          Dated: 7-20-15
   Jamie Laskaska

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Case No. 18-1203**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

H.D.V. – GREEKTOWN, LLC; 415 EAST CONGRESS, LLC; K AND P, INCORPORATED dba Déjà vu, dba Zoo Bar,

      Plaintiffs – Appellants

v.

CITY OF DETROIT, MI

      Defendant – Appellee

and

MAJED DABISH

      Defendant.

_____

## <u>CORRECTED DEFENDANT-APPELLEE CITY OF DETROIT'S APPEAL BRIEF</u>

CITY OF DETROIT LAW DEPARTMENT
Lawrence T. Garcia P54890
Corporation Counsel

Linda D. Fegins P31980
Senior Assistant Corporation Counsel
2 Woodward Avenue, Suite 500
Detroit, MI  48226
(313) 237-3022
fegil@detroitmi.gov

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

### Disclosure of Corporate Affiliations
### And Financial Interest

Sixth Circuit
Case No: **18-1203**       Case Name: **H.D.V. – Greektown, et al v. City of Detroit**

Name of Counsel: _____ **Linda D. Fegins** _____

Pursuant to 6th Cir. R. 26.1, __**City of Detroit**_____
Name of Party

Makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No

2.  Is there a publicly owned corporation, not a party to the appeal that has a financial interest in the outcome?
    If Yes, list the identity of such corporation and the nature of the financial interest:

> No

---

### CERTIFICATE OF SERVICE

I certify that on July 5, 2018, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

/s/Linda D. Fegins (P31980)
2 Woodward Avenue, Suite 500
Detroit, MI  48226
Office:  237-3022 / Fax: 224-5505
Email:  fegil@detroitmi.gov

---

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES ........................................................................ ii

STATEMENT CONCERNING ORAL ARGUMENT ........................................... v

JURISDICTIONAL STATEMENT .............................................................. 1

STATEMENT OF THE ISSUES PRESENTED ................................................ 2

COUNTER-STATEMENT OF FACTS AND NATURE OF THE CASE ............ 3

SUMMARY OF ARGUMENT .................................................................... 15

STANDARD OF REVIEW ........................................................................ 17

ARGUMENT ......................................................................................... 19

    I.     PLAINTIFFS ARE NOT ENTITLED TO AN ENHANCEMENT OF THEIR FEES AND COSTS. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE FEE ENHANCEMENT REQUESTED BY PLAINTIFFS. ....................... 19

        A.    The Sixth Circuit Court Of Appeals Has Determined That Plaintiffs-Appellants Are Not Entitled To An Enhancement And Therefore That Constitutes The Law Of The Case And Cannot Not Now Ask For Enhancement. ............................................. 19

        B.    The District Court Did Not Abuse Its Discretion In Denying the 1000% Enhancement Fee. ........................................... 24

        C.    Plaintiffs Are Not Entitled To An Enhancement Of Their Fees And Costs Due To The Effect Of The City Of Detroit's Bankruptcy On The Rate And Time For Payment Of Their Claims And Their Request Violates The Language Of The Bankruptcy Confirmation Plan. ............................................. 27

CONCLUSION ....................................................................................... 34

CERTIFICATE OF COMPLIANCE ............................................................. 35

DESIGNATION OF RECORD .................................................................... 36

i

# INDEX OF AUTHORITIES

## CASES

*Bartholomew v. Town of Collierville,*
  409 F.3d 684 (6th Cir.2005) ...................................................................17

*Binta B ex rel SA v. Gordon*,
  710 F3d 608 (6th Cir. 2013) .......................................................... 17, 20

*Coal Resources v Gulf and Western Industries Inc.,*
  865 F.2d 761 (6th Cir. 1989) ...............................................................23

*CSX Transp., Inc. v. Tenn. State Bd. of Equalization,*
  964 F.2d 548 (6th Cir.1992) .................................................................17

*DeLorean v. Gully,*
  118 B.R. 932 (E.D. Mich. 1990)...........................................................34

*Gonter v. Hunt Valve Co., Inc*.,
  510 F.3d 610 (6th Cir. 2007) ................................................................17

*H.D.V. - Greektown, LLC v. City of Detroit,*
  660 F. App'x 375 (6th Cir. 2016) ..................................... 4, 10, 11, 12

*H.D.V. – Greektown, LLC v City of Detroit,*
  568 F.3d 609 (6th Cir. 2009) ..................................................................5

*Hanover Ins. Co. v. American Eng. Co.,*
  105 F.3d 306 (6th Cir.1997) .................................................................23

*Hensley v Eckerhart*,
  461 US 424; 103 S Ct 1933; 76 L Ed 2d 40 (1983) .................................... 11, 18

*In re City of Detroit*,
  838 F.3d 792 (6th Cir. 2016)
  cert. denied sub nom. *Ochadleus v City of Detroit,*
  137 S.Ct. 1584 (2017); cert denied sub nom
  *Quinn v City of Detroit*, 137 S.Ct. 22270 (2017). ....................................8

ii

*In re City of Detroit,*
No. 13-53846, 2015 WL 603888 (Bankr. E.D. Mich. Feb 12, 2015) .................30

*In re City of San Bernardino*,
566 B.R. 46 (C.D. Cal. 2017) ................................................................32

*Jarreau-Griffin v. City of Vallejo*,
531 B.R. 829 (E.D. Cal. 2015) .............................................................32

*McKay v. City of Detroit (In re City of Detroit)*,
700 F. App'x 511 (6th Cir. 2017) .......................................................32

*McMurtry v Paul Revere Life Ins,Co*,
67 Fed Appx 290 (6th Cir. 2003) .......................................................23

*Moon v. Unum Provident Corp.*,
461 F.3d 639 (6th Cir. 2006) .............................................................17

*Pennsylvania* v. *Delaware Valley Citizens' Council for Clean Air*,
478 U.S. 546, 106 S.Ct. 3088, 92 L. Ed. 2d 439(1986) ......................... 24, 25, 26

*Perdue* v. *Kenny A. ex rel. Winn*,
559 U.S. 542, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010) .............................. passim

*Petition of U.S. Steel Corp.*,
479 F.2d 489 (6th Cir.1999) ...............................................................23

*Singleton v. Smith*,
241 F.3d 534 (6th Cir.2001) ...............................................................17

*The Northeastern. Ohio Coal for the Homeless v. Husted*,
831 F.3d 686 (6th Cir. 2016) .............................................................11

*United States v O'Dell*,
320 F.3d 674(6th Cir. 2003) ...............................................................23

*United States v Campbell*,
168 F.3d 263(6th Cir. 1999) ...............................................................22

## **STATUTES**

iii

11 U.S.C. § 943 ...................................................................................................30

11 U.S.C. § 944a .................................................................................................33

11 U.S.C. §§ 1123(a)(4), 901(a) .........................................................................32

28 USC § 1291 ......................................................................................................1

42 U.S.C. §1988 (b) ............................................................................................17

42 U.S.C. § 1983 .................................................................................................33

42 U.S.C. § 1988 ................................................................................. 5, 15, 17, 27

## **RULES**

Federal Rule of Appellate Procedure 32(a)(7)......................................................35

## **<u>STATEMENT CONCERNING ORAL ARGUMENT</u>**

Defendant-Appellant believes that the decisional process will be aided by this Court's opportunity to pose questions concerning the facts and important factors involved in this case.

v

# JURISDICTIONAL STATEMENT

Defendant concurs that this court is vested with appellate jurisdiction pursuant to 28 USC § 1291.

1

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

I.    DID THE DISTRICT COURT ABUSE ITS DISCRETION BY DENYING APPELANTS' SECOND REQUEST FOR AN ATTORNEY'S FEE ENHANCEMENT IN THEIR SECOND MOTION FOR ATTORNEY'S FEES BECAUSE THERE WERE NO GROUNDS FOR AN ENHANCEMENT COUPLED WITH THE FACT THAT THE SIXTH CIRCUIT COURT OF APPEALS DENIED AN ENHANCEMENT IN THIS CASE ON THE ORIGINAL ATTORNEY FEE REQUEST, BANKRUPTCY IS NOT A FACTOR WHICH SHOULD SERVE AS A BASIS FOR AN ENHANCEMENT AND APPELLANTS' REQUEST VIOLATES THE SPECIFIC LANGUAGE OF THE BANKRUPTCY CONFIRMATION PLAN?

Defendant-Appellee answers:               "No."

Plaintiffs- Appellants answered:           "Yes."

The district court answered:               "No."

2

## COUNTER-STATEMENT OF FACTS AND NATURE OF THE CASE
## THE PARTIES AND THE PRESENT LAWSUIT.

This Second Supplemental Motion for attorney's fees and costs appeal arises out of Plaintiffs-Appellants', H.D.V.-Greektown, 415 East Congress, and K&P, Inc (Appellants) adult and entertainment business First Amendment claim that the City of Detroit failed to approve the transfer of the topless activity permit from K & P to HDV and constitutional challenges to the City's Zoning provisions and sign regulations.

In this appeal Plaintiff-Appellants HDV and KPS (Appellants) seek recovery of an additional $79,853.00 in attorney fees and $4,353.17 in costs claimed to have been incurred between January 11, 2012 and September 20, 2016.  Plaintiffs filed a Second Supplemental Motion for Attorney's Fees and Costs for the same on September 20, 2016 (R. 174, Plaintiffs Second Supplemental Motion for Attorney's Fees,( "Second Attorney Fee Motion") Page ID #5251-5784).  In addition, Plaintiffs seek an enhancement of 1000%, due to the fact that their final award will be reduced, like all unsecured, non-priority pre-petition claims against the City of Detroit, due to the City's 2013 Chapter 9 bankruptcy filing.

The Sixth Circuit Court of Appeals denied Plaintiffs' request for an enhancement arising from this same case pursuant to its Motion for Attorney's Fees and Costs wherein they sought over $1.5 million in attorney fees. *H.D.V. -*

3

*Greektown, LLC v. City of Detroit*, 660 F. App'x 375, 378 (6th Cir. 2016).

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants, H.D.V.-Greektown, 415 East Congress, and K&P, Inc., which are in the adult entertainment business, alleged that Defendant, City of Detroit, violated their First Amendment rights by hindering the operation of their businesses with regulations and failure to approve transfer of a topless activity permit from K&P to H.D.V. (R. 1, Verified Complaint ¶ 14, 15, Page ID# 348, 349, 342-344).

The district court held that the adult use zoning provisions were unconstitutional. The District Court denied Plaintiffs' requested injunctive and declaratory relief as to the zoning ordinances. The district court found the sign ordinances were facially constitutional, but were unconstitutional as applied to Plaintiffs.  Also, in its February 8, 2008 order, the District Court rejected all of Plaintiffs' facial challenges to the City's sign ordinance provisions. The Court issued an order holding that the City's denial of the transfer petition had been an unconstitutional act. (R. 126, Order Denying Motion to Amend/Correct, Page ID# 3408-3415).

### The Appellants' 2008 Appeal to the Sixth Circuit.

In March 2008, the corporate Plaintiffs filed an appeal of these rulings with the Court of Appeals for the Sixth Circuit.  The Sixth Circuit reversed the district

4

court's denial of their request for injunctive and declaratory relief.  However, the Sixth Circuit Court of Appeals affirmed the district court's ruling and found the City's sign ordinance provisions constitutional.  See _H.D.V. – Greektown, LLC v City of Detroit_, 568 F.3d 609, 623-625 (6th Cir. 2009).

On August 23, 2011, Plaintiffs obtained a $2.95 million settlement in this § 1983 action in full satisfaction of their damages claims. (R. 145, Consent Decree, Page ID#4317-4321).  The parties stipulated that the Court would decide the issue of attorney's fees pursuant to 42 U.S.C. § 1988 and that Plaintiffs were prevailing parties for purposes of determining such fees and costs.

### Motion For Attorney Fees After The Settlement

October 4, 2011, the Plaintiffs filed the Motion for Attorney Fees and costs under 42 U.S.C. §1988. In their motion, they requested payment of $1,310,914.50 in attorney fees and $197,013.90 in costs, for a total of $1,507,928.47.  (R. 148, Motion for Attorney fees, Page ID # 4329-4335).

On November 10, 2011, the City filed its Answer and Brief in Opposition to Plaintiffs' Motion for Attorney Fees and Cost asserting that Appellants were not to entitled to several categories of fees and cost and that other category of fees  to which they were entitled were  grossly excessive.   (R. 152, 153, Defendant's Answer to Motion for Attorney Fees and Costs and Exhibits, Page ID# 4668-4723, 4726-4895).

5

On December 5, 2011, Appellants filed a reply to the City's response to their motion (R. 155, Reply in Support of Motion for Attorney Fees, Page ID# 4902-4945) requesting additional costs not contained in their initial petition. Plaintiffs later filed a Supplement to Plaintiffs Motion requesting $21,980.00 in attorney fees and $1,539.34 in costs which resulted in $1,322, 894.55 in attorney's fees and $199,746.06 in costs. (R. 157, Supplement to Plaintiffs Motion for Attorney Fees and Costs, Page ID# 5048-5053). Plaintiffs requested a staggering total of $1,532,640.61 in attorney fees and costs, or approximately 51% of the total damage award. (R. 157, Supplement to Plaintiff's Motion for Attorney Fees, Page ID# 5048-5053).

On May 23, 2013, the Magistrate issued a Report and Recommendation. (R. 162, Report and Recommendation, Page ID# 5114-5134).    In his report and recommendation, the Magistrate agreed with the City that the Plaintiffs' fees and costs request was excessive in certain respects, and recommended an award of $372,118.19 in attorney fees and costs in the amount of $13,283.93, for a total award of $385,401.12. (R. 162, Page ID# 5129-5130).

Specifically, the R&R recommended that the Court reduce Plaintiffs' request for attorney fees by 60%. (R. 162, Report and Recommendation (R&R), Page ID# 5114-5134). The R&R further recommended that the Court decline to grant a fee enhancement, and impose a 3% cap on the fees incurred litigating the attorney fee

6

issue ("fees for fees"). (*Id.*).

On June 5, 2013, the Plaintiffs filed Objections to the Magistrate's Report and Recommendation. (R. 164, Objections, Page ID# 5140-5173).

Due to the filing of the City of Detroit's Bankruptcy Petition and the proceedings, the Motion for Attorney fees and Report and Recommendation were stayed until the bankruptcy proceedings were completed. Text Only Order of 8/23/2013).

### The City of Detroit 's Bankruptcy Case.

On July 18, 2013 ("Petition Date"), the City commenced this chapter 9 case ("Bankruptcy Case"). The Sixth Circuit Court of Appeals explained the deplorable state of the City's financial affairs and further stated:

> In bankruptcy, the City crafted a series of "intricate and carefully woven" settlements with almost all of its creditors and stakeholders. Those settlements were memorialized in the Eighth Amended Plan for the Adjustment of Debts of the City of Detroit ("Plan"). After extensive hearings, the bankruptcy court confirmed the Plan in a Confirmation Order dated November 12, 2014. . . .

> Overall, the Plan eliminated approximately $7 billion in debt and freed approximately $1.7 billion in revenue for reinvestment into City services and infrastructure, including public services, blight remediation, information technology, and public transportation. The Plan took effect

7

on December 10, 2014, and the City began
implementation immediately.

*In re City of Detroit*, 838 F.3d 792, 795, 796 (6th Cir. 2016), *cert. denied sub nom.*

*Ochadleus v. City of Detroit*, 137 S. Ct. 1584 (2017), and *cert. denied sub nom.*

*Quinn v. City of Detroit*, 137 S. Ct. 2270 (2017)

More than one thousand objections were filed to the Plan.  Plaintiffs-
Appellants did not file an objection or otherwise object to the Plan.

However, they filed proofs of claim months earlier in the case concerning their
fee awards. In February 2014 K&P, HDV and 415 East Congress each filed a claim
against the City in the amount of $1,563,107.76 for attorney's fees and attached their
Motions for the same and billing hours. [Claim Nos. 1925, 1845 and 1841,
respectively) See Bankruptcy Case No. 13-53846  .

As a result, Appellants had full knowledge of the case and the significant
events occurring in the case because they were receiving actual notice of those events
as a result of the filing of their proofs of claim.

Article II.B.3.u of the Plan specifically provides that Class 14 (other
unsecured claims) claimholders, "in full satisfaction of such Allowed Claim, shall
receive . . . a Pro Rata share" of the allotted distributions of B Notes for the class.
Plan at p.44.  There is a fixed amount of B Notes for Class 14 claims. The City's
Disclosure Statement for the Plan estimated that Class 14 creditors would receive

8

approximately 10-13%.  [Doc. No. 4391 at p.41]. The Plan contained a discharge

provision making the Plan and treatment of claims under the Plan will be in exchange

for and in complete satisfaction, discharge and release of all Claims arising on or

before the Effective Date of the Plan. Plan, Art. III.D.4, at p.50.  Further, the Plan's

injunctive provision states, in pertinent part:

> **Injunction**
>
> **On the Effective Date, except as otherwise provided herein or in the Confirmation Order,**
>
> a. **all Entities that have been, are or may be holders of Claims against the City…shall be permanently enjoined from taking any of the following actions against or affecting the City or its property…**
>
>> 1. **commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affect the City of its property . . . .**
>>
>> 5. **proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and**
>>
>> 6. **taking any actions to interfere with the implementation or consummation of the Plan.**

Plan, Art. III.D.5, at p.50-51 (emphasis added). (R. 174-3, Order Confirming Eighth

Amendment Plan, Docket 8272, Filed 11/12/14, Page ID# 5292-5516, Injunction,

9

Page ID# 5510 ; R. 174-4 Class 14 Unsecured Claims, Docket 4391, Page ID# 5517-5713)

The Court also retained jurisdiction to enforce the Plan injunction and to resolve any suits that may arise in connection with the consummation, interpretation or enforcement of the Plan.  Plan, Art. VII.F, G, I, at p.72.

## District Court's 2015 Order

On March 31, 2015, the district court affirmed the Magistrate's Recommendation in denying attorney fees for the 2003 litigation and the criminal proceedings involving Monica Conyers and Sam Riddle.  Further, the court adopted a 60% percent across the board reduction of attorney fees due to Plaintiffs' excessive billing for all other categories. (R. 169, Order Granting in Part and Denying in Part Motion for Attorney Fees, Page ID# 5214-5223).

## 2016 Sixth Circuit Court Of Appeals Decision

Plaintiffs filed a Notice of Appeal on April 20, 2015. (R. 170, Notice of Appeal, Page ID# 5224-5226).

On August 23, 2016, the Sixth Circuit affirmed in part, reversed in part, and remanded the case to the district court.  *H.D.V. - Greektown, LLC v. City of Detroit*, 660 F. App'x 375, 378 (6th Cir. 2016).  The Sixth Circuit held that the district court abused its discretion when it failed to adequately explain why a 60% reduction was

10

appropriate. *Id.* at 385.  The Sixth Circuit remanded the case for a more detailed explanation of the Court's 60% reduction on several categories of fees and costs. The Sixth Circuit also ruled that the district court had erred in limiting the fees recoverable for the attorney fee motion itself to 3% of the total fees awarded. Instead, the Court ruled that the "fees for fees" award had to be based on the traditional reasonableness standard stated in *Hensley v Eckerhart*, 461 US 424; 103 S Ct 1933; 76 L Ed 2d 40 (1983). The Court further held that the award must be recalculated in light of the Sixth Circuit's decision in *The Northeastern Ohio Coal for the Homeless v. Husted*, 831 F.3d 686, 720 (6th Cir. 2016). *Id.* at 387 which removed a 3% cap on "fees for fees.

Further, the Sixth Circuit Court of Appeals specifically denied the fee enhancement requested by Plaintiffs-Appellants.

However, the Court upheld nearly all of the other rulings of the District Court, holding that:

- Plaintiffs were entitled to no fees or costs for an earlier 2003 lawsuit raising similar issues ($143,362.58);

- Plaintiffs were entitled to no fees or costs related to a criminal matter involving Monica Conyers ($16,200);

- Although Plaintiffs had standing to assert declaratory relief claims on behalf of the "Jane Roe" Plaintiffs (who were dismissed before the settlement and who recovered nothing), the Sixth circuit determined that Plaintiffs were not entitled to full fees  for representing them as

11

adding them should not have been so onerous as to warrant the award of the entirety requested by Appellants.

- The District court did not abuse its discretion in declining to award full fees for the BZA/Condition 18 proceedings. The Sixth Circuit noted that while the City attempted to enforce Condition 18 during the proceedings, "Appellants do not show that it was an issue substantial enough to justify an award of full fees – a burden that falls entirely on its shoulders."

*H.D.V. - Greektown, LLC v. City of Detroit*, *supra* 660 F. App'x at 385-386.

Plaintiffs-Appellants argued that they were entitled to a fee because the case is rare or exceptional, they obtained superior results and the case was undesirable because it involved an adult entertainment business. The Sixth Circuit held that the Appellants have not shown that the district court abused its discretion in deciding to award a fee enhancement. *Id.* at 386–387.

**On Remand – Second Supplemental Motion for Attorney's Fees and Costs**

In their Second Supplemental Motion for Attorney's Fees and Costs [174], Plaintiffs argued that they are entitled to additional attorney fees and costs, such as costs related to appellate litigation. Plaintiffs further argue that they are entitled to a substantial fee enhancement because of the City of Detroit's bankruptcy status. (R. 174, Plaintiffs Second Supplemental Motion, Page ID# 5251-5784)

In its Response, Defendant did not contest Plaintiffs' right to recover the additional attorney fees and costs associated with the appeal. (R. 176, Defendants

12

Response to Second Supplemental Motion, Page ID# 5786-5805).    Moreover, Defendant conceded that Plaintiffs' hourly rates are reasonable. Although Defendant maintains that the total amount Plaintiffs seek is excessive, Defendant nevertheless waived any objections contesting the total time incurred by counsel in preparing the instant Motion.  However, Defendant argued that Plaintiffs are neither entitled to bill in quarter-hour increments for all tasks, nor entitled to an enhancement of fees. (R. 176, Page ID #5786-5805.

On September 28, 2017, the District Court Magistrate recommended that the Court grant in part and deny in part Plaintiffs' Second Supplemental Motion [174]. (R. 179, Report and Recommendation (R&R), Page ID#5886-5904).  In particular, the R&R: accepted Plaintiffs' claimed hourly rates in computing the lodestar as reasonable (Section III-A); and   Plaintiffs' "fees for fees" award request as reasonable (Section III-B); recommended an 80% reduction to certain fees and a 10% reduction to remaining fees (Section III-C); recommended awarding costs associated with the appeal, but reducing quarter-hour billing to one-tenth hour billing (Section III-D); and recommended denying Plaintiffs' request for a fee enhancement (Section III-D). Id.

The R&R recommended that the Court award Plaintiffs-Appellants' counsel a total of $905,718.65, subject to the orders of the Bankruptcy Court. (R. 180, Errata

13

Sheet To R & R, Page ID# 5905-5906).

On October 12, 2017, Plaintiffs filed an Objection [181] to the R&R. Plaintiffs solely objected to the Magistrates R &R which declined to impose a fee enhancement. (R. 181, Plaintiffs' Objection, Page ID# 5907-5920).

The District Court Judge Tarnow awarded Plaintiffs' counsel a total of $905,718.65 in attorney fees and costs, subject to the orders of Bankruptcy Court as recommended by the Magistrate's R&R. (R. 182, Order Adopting In Part , R&R (179 and 180), Page ID # 5921-5930. The court overruled Plaintiffs' Objections. (*Id* at Page ID #5927-5928). Judge Tarnow also agreed that Plaintiffs were not entitled to a 1000% enhancement fee because of the bankruptcy. (*Id* at 5928-5930).

14

# SUMMARY OF ARGUMENT

The goal of attorney fees under 42 U.S.C. §1988 is to aid civil rights, not lawyers. *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010) (the statute's aim is "not to provide a form of economic relief to improve the financial lot of attorneys")

The Sixth Circuit Court of Appeals ruled that the district court did not abuse its discretion in denying an enhancement in Plaintiffs first Motion for Attorney's Fees and Cost.  This Second Supplemental Motion for Attorney's Fees arises out of the same factual and legal issues. Thus, the law of the case doctrine precluded the district court, and now prevents this Court, from entertaining Appellants' enhancement argument.

The district court's denial of an enhancement did not constitute an abuse of discretion. The District Court Judge was correct in determining that nothing was "rare" or   exceptional about this case that justified an enhancement. Appellants failed to meet their burden to demonstrate that any of the factors they addressed make this case one of the rare cases or exceptional cases in which they are entitled to a 1000% enhancement. Appellants failed to present sufficient reasons for an enhancement.   It is neither "rare" nor "exceptional" for an otherwise valid claim against a bankrupt debtor to be paid at a greatly reduced rate, often over a significant period of time.  This is the very nature of the bankruptcy process.

15

Appellants are attempting to evade the bankruptcy laws by asking this court to undermine the Bankruptcy Confirmation Plan determination of how and when creditors will be paid. This Court should not be swayed by Plaintiffs- Appellants assertion  that a 1,000% increase in the *attorney fee* component of the 2006 Action is necessary to ensure that municipalities do not use their "financial precariousness to violate individual civil rights,".  Appellants' Br. at 25 This argument ignores that the Bankruptcy Code does not treat a civil rights claim any differently than any other claim.  The bankruptcy process treats all similarly situated creditors the same.

This court must reject Appellants' self-serving speculative argument that treating their attorneys just like every other creditor in the City's Bankruptcy will spell the end of civil rights litigation.  It is not at all remarkable or unusual that civil rights claims would be expunged, paid out on a diminished pro rata scale, or otherwise treated like any other claim in bankruptcy.  *See, e.g.*, *McKay v. City of Detroit (In re City of Detroit)*, 700 F. App'x 511, 512–13 (6th Cir. 2017) (affirming settlement agreement in which claimant exchanged his 42 U.S.C. § 1983 claim against City officials for a Class 14 claim against the City). Appellants' request is a collateral attack on the Plan and violates the discharge and injunction provisions in the Bankruptcy Plan and Confirmation Order and should be denied.

16

## STANDARD OF REVIEW

## STANDARD OF REVIEW AND GENERAL RULES APPLICABLE TO MOTIONS FOR ATTORNEY FEES AND COSTS UNDER 42 U.S.C. §1988

This Court reviews a district court's award of attorneys' fees and costs for abuse of discretion, *Singleton v. Smith,* 241 F.3d 534, 538 (6th Cir.2001). A district court abuses its discretion "when it relies on clearly erroneous findings of fact, when it improperly applies the law, or uses an erroneous legal standard." *Binta B ex rel SA v. Gordon*, 710 F3d 608, 618 (6th Cir. 2013). An abuse exists when the court has "a definite and firm conviction that the trial court committed a clear error of judgment". *Moon v. Unum Provident Corp*., 461 F.3d 639, 642 (6th Cir. 2006) (internal quotations omitted).

The reviewing court, however, "cannot overturn a district court solely because it would have made a different decision under the circumstances." *Bartholomew v. Town of Collierville,* 409 F.3d 684, 686 (6th Cir.2005) (quoting *CSX Transp., Inc. v. Tenn. State Bd. of Equalization,* 964 F.2d 548, 556 (6th Cir.1992)).

42 U.S.C. §1988 permits "reasonable attorney's fee[s]" to prevailing parties in the court's discretion 42 U.S.C. §1988 (b). Reasonable fees strike the balance of (1) being "adequately compensatory to attract competent counsel", but not (2) "producing a windfall for lawyers." *Gonter v. Hunt Valve Co., Inc*., 510 F.3d 610,

17

616 (6th Cir. 2007) (emphasis omitted).  *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010) .

Determination of an appropriate fee award "should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1982).

18

# **ARGUMENT**

## I.    **PLAINTIFFS ARE NOT ENTITLED TO AN ENHANCEMENT OF THEIR FEES AND COSTS.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE FEE ENHANCEMENT REQUESTED BY PLAINTIFFS.**

Appellants  are not entitled to a 1000% fee enhancement in this case for three reasons. First, the Sixth Circuit Court of Appeals previously  rejected their argument that Plaintiffs were entitled to an enhancement. The decision constitutes the law of the case in this appeal and the matter should not be reviewed again. Second, none of the factors warranting an enhancement apply in the instant case. Third, the City of Detroit's Bankruptcy is not a factor that should be considered in granting an enhancement in light of the Final Bankruptcy Order as will be discussed herein.

### A.    **The Sixth Circuit Court Of Appeals Has Determined That Plaintiffs-Appellants Are Not Entitled To An Enhancement And Therefore That Constitutes The Law Of The Case And Cannot Not Now Ask For Enhancement.**

Appellants   requested a 10% enhancement  fee in its Motion  for Attorneys' Fees and Costs and in their First Supplemental Motion for Attorney Fees and Costs. Plaintiffs argued that they are entitled to an enhanced fee because of (1) "the

19

egregious nature of Defendants' actions;" (2) "the superior result obtained;" (3) the "undesirability" of this case; and (4) the fact that the rates requested are "below market as compared to other experienced " (R. 148, Plaintiffs Motion for Attorney Fees and Costs,  Page ID# 4329-4373).

The Sixth Circuit Court of Appeals held "we conclude that the denial was not an abuse of discretion." *HDV supra* at 660  _____. The Court expounded:

Appellants requested a 10% fee enhancement, which was denied. We conclude that the denial was not an abuse of discretion. Fee "enhancements may be awarded in 'rare' and 'exceptional' circumstances." Perdue, 559 U.S. at 552 (citations omitted). Appellants bear the burden of producing specific evidence that they are entitled to the fee enhancement. *Id.* at 553. Here, Appellants present no viable arguments for why this is a rare or exceptional circumstance.  Nor do they present sufficient specific evidence demonstrating that they are entitled to a fee enhancement First, Appellants assert that their counsel bills below market rate, but those concerns are already addressed through the lodestar method, which calculates fees based on the prevailing market rate. *Binta B. ex rel. S.A.,* 710 F.3d at 627 (citing *Missouri v. Jenkins by No. 15-1449, H.D.V. - Greektown, LLC v. City*

20

*of Detroit Agyei,* 491 U.S. 274, 285-86 (1989)). A fee enhancement may be appropriate when the prevailing market rate fails to afford adequate compensation. See *Perdue,* 559 U.S. at 554-55 ("[A]n enhancement may be appropriate where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value."). Appellants have not shown that this is the case.

Second, Appellants argue that they obtained superior results. Although there are a few circumstances in which superior results would justify a fee enhancement, the Supreme Court has noted that those "circumstances are indeed 'rare' and 'exceptional,' and require specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'" Id. at 554 (citation omitted). Appellants have not made that showing here. Finally, Appellants' argue that the case was undesirable because it involved an adult entertainment business, but they offer no evidence that counsel representing adult entertainment businesses are subject to any undue pressure on their ability to obtain clients or adequate compensation for their work in representing them. As it is Appellants' burden to produce specific evidence, this argument

21

fails because they do not substantiate it. *C. T. Barnes v. City of Cincinnati,* 401 F.3d 729, 746 (6th Cir. 2005) (affirming a fee enhancement based, in part, on two affidavits from attorneys attesting that the case was highly controversial).

Accordingly, the Sixth Circuit Court of Appeals has ruled and Plaintiffs are not entitled to a second bite of the apple for the court to determine that it is entitled to an enhancement of their attorney's fees and costs. This Second Supplemental Motion for Attorney's Fees arises out of the same factual and legal issues as the First Motion for Attorney's Fees and the First Supplemental Motion for Attorney's Fees. Plaintiffs are merely seeking additional fees for the appellate litigation and additional work performed . There are no new factors recognized by this Court that justify legally or factually avoiding the law of the case.

Thus, the law of the case doctrine precluded the district court, and now prevents this Court, from again entertaining Appellants' enhancement argument. Under the doctrine of the law of the case, determinations of the court of appeals of issues of law are binding on both the district court on remand and the court of appeals upon subsequent appeal*." United States v Campbell*, 168 F.3d 263, 265(6th Cir. 1999). That doctrine forecloses relitigation of issues expressly, by necessary inference from the disposition or *impliedly* decided by the appellate court as the

22

decided issue constitutes the law of the case. See *United States v O'Dell*, 320 F.3d 674, 679(6th Cir. 2003) (emphasis in original); *Coal Resources v Gulf and Western Industries Inc.,* 865 F.2d 761, 766 (6th Cir. 1989) (citations omitted).   When a case has been remanded by an appellate court, the trial court is bound to "proceed in accordance with the mandate and law of the case as established by the appellate court." *Hanover Ins. Co. v. American Eng. Co.,* 105 F.3d 306, 312 (6th Cir.1997) quoting *Petition of U.S. Steel Corp.,* [479 F.2d] 489, 493 (6th Cir.), *cert. denied,* 414 U.S. 859[, 94 S.Ct. 71, 38 L.Ed.2d 110] (1973). The "law of the case" doctrine precludes a court from "reconsideration of identical issues." *Id. McMurtry v Paul Revere Life Ins Co*, 67 Fed Appx 290, 295–96 (6th Cir. 2003) "Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case."

None of three reasons for reconsideration of the law of the case are applicable here. A court may reconsider a ruling "(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice"). *McMurtry v Paul Revere Life Ins Co*, 67 Fed Appx 290, 295–96 (6th Cir. 2003).

Plaintiffs- Appellants filed their Bankruptcy claims and attached their Motion

23

for Attorney Fees Request in Bankruptcy Court. They had full notice and knowledge of the Bankruptcy Confirmation Plan as to how  all Plaintiff litigant creditors were going to  be paid including the time table. They filed no objections to the same. They should have raised the issue of the of the 1000% enhancement fee due to the bankruptcy factor in the first appeal involving their Motion for Attorney's Fees and Costs and the First Motions for Supplemental Attorney's Fees and Cost.

### B.    The District Court Did Not Abuse Its Discretion In Denying the 1000% Enhancement Fee.

The district court did not abuse its discretion in declining to increase or otherwise adjust its lodestar calculation.  An enhancement is no longer justified on the basis of factors such as the novelty of the issues, the complexity of the litigation, the high quality of the representation, "results obtained" or the number of people benefitting in the action.  See *Perdue v. Kenny, supra* 559 U.S. at 553.   ("an attorney's performance" and the "novelty and complexity of a case" are presumably reflected in the attorney's billable hours and "may not be used as a ground for an enhancement").   See also *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L. Ed. 2d 439(1986) (Delaware Valley I).  All these factors are considered subsumed in the calculation of the

24

lodestar, because they are deemed to be adequately reflected in the hourly rate and the number of hours expended on the litigation. *Delaware Valley I*, 478 U.S. at 565. See *Perdue*, 559 US at 585.

The court in *Perdue* has stressed that this statute was not intended to produce financial windfalls for attorneys. Perdue v. Kenny A. ex rel. Winn, 599 U.S. 542, 552 (2010). Section's 1988's chief goal, the court holds, is to "enforce the covered civil rights statutes, not to provide a form of economic relief to improve the financial lot of attorneys." *Id.* The Supreme Court in *Perdue* found that if the lodestar amount is adequate if it yields a fee that is sufficient to achieve the objectives of a § 1988 civil rights case. *Id.* Moreover, enhancements are only awarded in "rare" and "exceptional" circumstances. *Id.* at 545. To determine whether a circumstance is "rare" or "exceptionable" the court looks to limited factors, such as, true market value of attorney's services, if there is an exceptional outlay of expenses, or if the attorney's performance involves an exceptional delay in payment of fees. *Id.* at 555-556. The court has found that usually an attorney is awarded an enhancement for litigating a § 1988 case, because of the presumption that a typical attorney in a § 1988 suit will not be paid until the end of the litigation, if paid at all, due to the status of the § 1988 plaintiff, a person who usually cannot afford counsel. *Id.* at 556.

25

§1988 serves an important public purpose. <u>Id.</u> at 559. The purpose is to make it possible for persons who do not have sufficient resources are able to bring a civil rights claim to vindicate their rights. In fact, "[i]n many cases attorney's fees awarded under 1988 are not paid by the individuals responsible for the constitutional or statutory violations on which the judgment is based." *Id.* The Supreme Court in *Perdue* noted that attorney fees are paid by state and local tax payers. *Id.* The Court recognized that because "state and local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services." *Id.*

The Magistrate and the District Court judge correctly noted that there was nothing exceptional or "rare" about this case which would warrant an enhanced fee award. This case does not meet the very difficult standards and rare circumstances announced in *Delaware Valley I, supra* 106 S.Ct. at 3099 (attorney work is so superior and outstanding that is far exceeds expectations, which would justify an enhanced attorney fee award. This case did not present unusually complex or novel legal issues, but even if it had, this would have been reflected in the number of hours spent on the case.

It is the burden of the party seeking such an enhancement to present sufficient reasons for an enhancement. Appellants have failed to present sufficient evidence

26

and facts to prove their claim. The reasons offered by the Plaintiffs to support the 1000% upward adjustment are without merit. Plaintiffs suggest that this bankruptcy case makes this case rare and unfair due to the delayed payment plan under the Bankruptcy plan.

> **C.    Plaintiffs Are Not Entitled To An Enhancement Of Their Fees And Costs Due To The Effect Of The City Of Detroit's Bankruptcy On The Rate And Time For Payment Of Their Claims And Their Request Violates The Language Of The Bankruptcy Confirmation Plan.**

Appellants  argue that the Court should enhance their fee award by 1000% because their ultimate recovery will be reduced due to the City of Detroit's bankruptcy filing in 2013.  Plaintiffs argue that under *Perdue v Kenny A.*, 559 U.S. 542 (2010), an attorney fee award under 42 U.S.C. §1988 may be enhanced or increased beyond the traditional lodestar calculation due to "rare" and "exceptional" circumstances, and that the City's bankruptcy constitutes such a situation.  Plaintiffs argue that to fail to award a substantial enhancement would amount to a "mockery of justice" and would "subvert the entire purpose of §1988."

It is neither "rare" nor "exceptional" for an otherwise valid claim against a bankrupt debtor to be paid at a greatly reduced rate, often over a significant period of time.  This is the very nature of the bankruptcy process.  Each of the City of

Detroit's 3,976[1] creditors in its bankruptcy proceeding would dispute that receiving a fraction of the value of one's claim against the City is rare or exceptional, within the meaning of *Perdue*.

Moreover, enhancing Plaintiffs' attorney fee claims in this case due to the effect of the City's bankruptcy would be grossly unfair to all of the other claimants in the City's bankruptcy, whose ultimate payouts will be dramatically less than the fair value of their claims. Every unsecured, non-priority claimant or creditor of the City will receive less than the full value of its claim due to the City's bankruptcy. The City's bankruptcy creditors include those who have suffered catastrophic personal injuries or other life-altering calamities. It would be completely unjust and inequitable for creditor claimants who have prevailing claims for such alleged constitutional violation of false arrest and excessive force to receive a reduced recovery on their bankruptcy claims, while Plaintiffs' claims are artificially enlarged, so that their eventual recovery through the bankruptcy is larger.

*Perdue* and other Supreme Court cases identify the relevant factors for fee enhancement. There is nothing intrinsically rare or different about this First Amendment case that would warrant a 1000% enhancement for these corporate

---

[1]This number is taken from the claims register in the City's bankruptcy case, which is a public record that may be reviewed through the website of KCC Associates.

creditors.  The District Court Magistrate aptly characterized this case.  In discussing it, the court held:

> The Sixth Circuit affirmed this Court's previous denial of a fee enhancement based on a consideration of factors intrinsic to this case.  Those are the only factors relevant to the fee enhancement issue.  There is nothing essential about this case that differentiates it from any other fee petition or award where the City of Detroit was the defendant.  If we accept the argument that the bankruptcy court's order of confirmation justifies a fee enhancement in the Plaintiff's case, then it would permit a fee enhancement in every City of Detroit case.  In effect, Plaintiffs are asking this Court to modify a final order of the bankruptcy court.
>
> I recognized that the reduction of fees by virtue of the bankruptcy plan is a bitter pill for Plaintiffs to swallow.  But it does not, as Plaintiffs hyperbolically claim, "make a mockery of justice."  Thousands of other creditors of the City of Detroit will endure the same consequences as Plaintiffs.  That is the nature of bankruptcy, and it is not a "rare and exceptional" circumstance as envisioned by *Perdue*.  Plaintiffs' request for a fee enhancement should be denied. (R. 179, R&R, Page ID# 5901-

29

5902). (footnote omitted).

The City's bankruptcy proceeding is completely irrelevant to the calculation of Plaintiffs' fee award in this case. All claims against the City should be calculated and evaluated without any consideration of whether the claims will be paid at a reduced rate or over a certain period of time. For these reasons, Judge Tarnow properly determined that no fee enhancement is warranted. He enunciated:

> Furthermore, although Plaintiffs may face an exceptional delay in the payment of fees, the delay was not "unjustifiably caused by the defense." *See Perdue,* 559 U.S. at 556 (explaining that fee enhancement may be appropriate particularly where the defense unjustifiably cause the delay). The R&R appropriately characterizes Plaintiffs' Objection as a request to modify the Bankruptcy Court's final order. The Court cannot, and will not, grant Plaintiffs' sweeping request. *See In re City of Detroit,* NO. 13-53846, 2015 WL 603888, at *3 (Bankr. E.D. Mich. Feb 12, 2015) (noting that 11 U.S.C. § 943 authorizes bankruptcy courts to "monitor the payment of fees and the reimbursement of expenses in or in connection with a chapter case …."). As the R&R explains, the "nature of bankruptcy … is not a 'rare and exceptional' circumstance as evisoned by *Perdue.*" Accordingly,

30

the Court overrules Plaintiffs' Objection and adopts Section III-E of the R&R. (R. 182, Order, Page ID# 5928-5930).

Appellant is attempting to evade the bankruptcy laws by asking this court to undermine the Bankruptcy Plan Order determination of how a class of creditor litigants will be paid and when by asking for a 1000% enhancement.

This Court should not be swayed by Plaintiffs- Appellants assertion that a 1,000% increase in the *attorney fee* component of the 2006 Action is necessary to ensure that municipalities do not use their "financial precariousness . . . as a standing blank check to violate individual civil rights,". Appellants' Br. at 25. This argument ignores that the Bankruptcy Code does not treat a civil rights claim any differently than any other claim: for example, if an individual whose civil rights have been violated does not file a claim with the bankruptcy court, that claim will be barred, just like an ordinary contract or tort claim. Plaintiffs cannot decide that it can evade the Bankruptcy process by asking the court to grant a 1000% enhancement because it believes the City can afford to pay it as a result of the Bankruptcy. The bankruptcy process treats all similarly situated creditors the same and eliminates opt-out behavior. If the 1000% fee enhancement were granted, it will still be paid with B Notes, just more of those B Notes will go to the Plaintiffs at the expense of other creditors by reducing their share ratably. Other innocent creditors should not bear

31

the costs of the requested fee enhancement as such treatment would violate a fundamental pillar of bankruptcy law that similarly situated creditors are treated the same. *See e.g.* 11 U.S.C. §§ 1123(a)(4), 901(a).

This court must reject Plaintiffs-Appellants' self-serving speculative argument that treating their attorneys just like every other creditor in the City's Bankruptcy will spell the end of civil rights litigation, it is not at all remarkable or unusual that civil rights claims would be expunged, paid out on a diminished pro rata scale, or otherwise treated like any other claim in bankruptcy. *See, e.g.*, *McKay v. City of Detroit (In re City of Detroit)*, 700 F. App'x 511, 512–13 (6th Cir. 2017) (affirming settlement agreement in which claimant exchanged his 42 U.S.C. § 1983 claim against City officials for a Class 14 claim against the City); *In re City of San Bernardino*, 566 B.R. 46, 56 (C.D. Cal. 2017) (confirming plan of adjustment that paid litigation claimants, including civil rights plaintiffs, 1% return on their claims, and provided for injunction preventing plaintiffs from enforcing judgments against indemnified city employees, where such enforcement would expose the city to potentially "uncapped" payouts); *Jarreau-Griffin v. City of Vallejo*, 531 B.R. 829, 831–33 (E.D. Cal. 2015) (noting that plaintiffs' claims against the municipal debtor for *Monell* violations was discharged unless plaintiffs did not receive actual notice of the bankruptcy).

32

Plaintiffs-Appellants' request for an enhanced attorney fee award violates the discharge and injunction provisions in the Plan and Confirmation Order.  The Plaintiffs had actual notice and every opportunity to object to the Plan and argue that their claims for attorneys' fees should be paid in full but they took no action. Section 944(a) of the Bankruptcy Code, the provisions of a confirmed plan bind the debtor and any creditor.  11 U.S.C. § 944(a).  Plaintiffs-Appellants' argument is an impermissible collateral attack on the Plan and Confirmation Order that should be rejected by this Court as a ground for seeking a 1000% enhancement without a factual or legal basis in law. *See DeLorean v. Gully,* 118 B.R. 932, 935 n.1 (E.D. Mich. 1990) (noting that a collateral attack is a request for relief, which, if granted, "must in some fashion overrule a previous judgment.")

The Plan specifically provides that distributions on Class 14 claims were to be made Pro Rata and in full satisfaction of the underlying claims.  Plan, Art. II.B.3.u, at p.44.  The Plan discharge provision also specifically reiterates that "the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date."  Plan, Art. III.D.4, at p.50. Furthermore, claimholders are barred from "proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan."  Plan, Art. III.D.5,

33

at p.50.  Plaintiffs by using the bankruptcy as a ground for an enhancement when the Court of Appeals found no merit in the same and when they had notice of the same on February 14, 2014 is an attempt to evade the purpose and Orders of the Plan. They have directly violated the Plan, the City's discharge, and the Plan injunction by pursuing litigation with the boldly proclaimed goal of obtaining full payment of their claims against the City in contravention of the treatment provided by the Plan for Class 14 claims.

## CONCLUSION

For the reasons stated above, Defendant-Appellee, the City of Detroit, requests that this Honorable Court affirm the decision of the district court.

/s/Linda D. Fegins (P31980)
Senior Assistant Corporation Counsel
Attorney for City of Detroit
2 Woodward Avenue, Suite 500
Detroit, MI 48226
(313) 237-3022
fegil@detroitmi.gov

Dated:  July 5, 2018

34

Case No. 18-1203

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

H.D.V. – GREEKTOWN, LLC; 415 EAST CONGRESS, LLC; K AND P, INCORPORATED dba Déjà vu, dba Zoo Bar,

      Plaintiffs – Appellants

v.

CITY OF DETROIT, MI

      Defendant – Appellee

and

MAJED DABISH

      Defendant.

_____

## CERTIFICATE OF COMPLIANCE

      The undersigned hereby certifies that the brief of Defendants-Appellees complies with Federal Rule of Appellate Procedure 32(a)(7), in that except for the corporate disclosure statement, table of contents, table of authorities, and statement with respect to oral argument, the brief contains 7,046 words.

                    /s/Linda D. Fegins (P31980)
                    Senior Assistant Corporation Counsel
                    Attorney for City of Detroit
                    2 Woodward Avenue, Suite 500
                    Detroit, MI 48226
                    (313) 237-3022

Dated:  July 5, 2018          fegil@detroitmi.gov

35

**Case No. 18-1203**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

H.D.V. – GREEKTOWN, LLC; 415 EAST CONGRESS, LLC; K AND P, INCORPORATED dba Déjà vu, dba Zoo Bar,

      Plaintiffs – Appellants

v.

CITY OF DETROIT, MI

      Defendant – Appellee

and

MAJED DABISH

      Defendant.

_____

## DEFENDANT-APPELLEE CITY OF DETROIT'S
## DESIGNATION OF RECORD

Pursuant to Sixth Circuit Rule 29, Defendant-Appellee, designates the following filings in the district court for inclusion in the record on Appeal in addition to those identified in the Plaintiff's Designation of Record:

36

| RECORD NO. | DESCRIPTION OF ENTRY | PAGE ID# |
|---|---|---|
| 1 | COMPLAINT with Exhibits A-L | 341-390 |
| 11 05/15/2006 | ANSWER to Complaint with Affirmative Defenses | 405-447 |
| 22 01/23/2007 | AMENDED ORDER striking 17 Motion for partial summary judgment | 684-686 |
| 23 01/30/2007 | MOTION for Summary Judgment (*Partial Summary Judgment)* with Exhibits | 803-848; 713-716, 703-708 150-155 159-324 328-340 1-50 101 109-138 |
| 25 02/20/2007 | RESr REPONSE to 23 MOTION for Summary Judgment (*Partial Summary Judgment)* plus Brief in Opposition to Motion for Partial Summary Judgment with Exhibits A-B | 893-932 |
| 29 04/18/2007 | Secosecond MOTION for Partial Summary Judgment with Exhibits A-N. | 1088-1120 |
| 30 05/09/2007 | RESRESPONSE to 29 Second MOTION for Partial Summary Judgment *and Brief in Opposition to Motion* | 1121-1149 |
| 31 05/10/2007 | RESPONSE to 29 Second MOTION for Partial Summary Judgment [*AMENDED Answer and Brief in Opposition*] with Exhibits A-H | 1150-1237 |
| 40 06/14/2007 | REPLY to Response re 29 Second MOTION for Partial Summary Judgment with Exhibits 1-3. | 1286-1315 |
| 41 06/28/2007 | SUR-REPLY re 29 Second MOTION for Partial Summary Judgment. | 1316-1330 |
| 45 07/24/2007 | NOTICE by K and P, Incorporated, H.D.V. - Greektown, L. L. C., 415 East Congress, L. L. C. re 23 MOTION for Summary Judgment (*Partial* | 1385-1445 |

37

| | | |
|---|---|---|
| | *Summary Judgment) Notice of Filing in Support of Plaintiffs' [first] Mtn for Partial Summary Judgment* with Exhibits 1-2 | |
| 46<br>07/27/2007 | MOTION for Leave to File *First Amended Complaint* | 1446-1457 |
| 48<br>08/06/2007 | ORDER granting in part and denying in part 23 Motion for Summary Judgment; granting in part and denying in part 29 Motion for Partial Summary Judgment. | 1465-1477 |
| 49<br>08/10/2007 | RESPONSE to 46 MOTION for Leave to File *First Amended Complaint* with Exhibit A | 1478-1493 |
| 51<br>08/17/2007 | MOTION to Amend/Correct 48 Order on Motion for Summary Judgment, Order on Motion for Partial Summary Judgment with Exhibits A-C | 1503-1536<br>1540-1567 |
| 52<br>08/21/2007 | REPLY to Response re 46 MOTION for Leave to File *First Amended Complaint* | 1570-1575 |
| 55<br>09/07/2007 | ORDER granting 54 Motion for Leave to File | 1588-1589 |
| 57<br>09/18/2007 | RESPONSE to 51 MOTION to Amend/Correct 48 Order on Motion for Summary Judgment, Order on Motion for Partial Summary Judgment MOTION to Amend/Correct 48 Order on Motion for Summary Judgment, Order on Motion for Partial Summary Judgment with Exhibit A | 1596-1629 |
| 59<br>10/23/2007 | REPLY to Response re 51 MOTION to Amend/Correct 48 Order on Motion for Summary Judgment, Order on Motion for Partial Summary Judgment MOTION to Amend/Correct 48 Order on Motion for Summary Judgment, Order on Motion for Partial Summary Judgment with Exhibit A | 1632-1644 |
| 66<br>01/29/2008 | EXHIBIT *I (July 26, 2007 letter from Detroit Buildings and Safety Engineering Department requesting additional documentation relating to sign application)* re 31 Response to Motion | 1653-1654 |
| 67 | MOTION for Leave to File *Supplemental Brief in* | 1655-1673 |

| 01/31/2008 | *Support of Plaintiffs' Second Motion for Partial Summary Judgment* with Exhibits A-B | |
|---|---|---|
| 68 02/06/2008 | RESPONSE to 67 MOTION for Leave to File *Supplemental Brief in Support of Plaintiffs' Second Motion for Partial Summary Judgment* | 1674-1678 |
| 69 02/07/2008 | ORDER granting 46 Motion for Leave to File; granting 47 Motion; denying 51 Motion to Amend/Correct | 1679-1680 |
| 70 02/14/2008 | ORDER granting in part and denying in part 29 Motion for Partial Summary Judgment | 1681-1698 |
| 71 03/06/2008 | NOTICE OF APPEAL by K and P, Incorporated, H.D.V. - Greektown, L. L. C. | 1699-1701 |
| 72 03/06/2008 | NOTICE OF APPEAL by K and P, Incorporated, H.D.V. - Greektown, L. L. C., 415 East Congress, L. L. C.. | 1702-1704 |
| 74 03/26/2008 | TRANSCRIPT of Civil held on March 13, 2007, Motion for Partial Summary Judgment | Not accessible online |
| 75 04/08/2008 | AMENDED COMPLAINT filed by Jane Roe I, Jane Roe II, Jane Roe III, Jane Roe IV, K and P, Incorporated, H.D.V. - Greektown, L. L. C., 415 East Congress, L. L. C. against Detroit, City of with Exhibits A–L | 1750-2133 |
| 77 05/06/2008 | ANSWER to Amended Complaint with Affirmative Defenses | 2134-2179 |
| 79 05/07/2008 | TRANSCRIPT of Motions held on January 29, 2008. | Not accessible online |
| 81 02/26/2009 | MOTION for Leave to File *Second Amended Complaint* by K and P, Incorporated, Jane Roe I, Jane Roe II, Jane Roe III, Jane Roe IV, H.D.V. - Greektown, L. L. C. with Exhibit 1 | 2229-2370 |
| 82 03/12/2009 | RESPONSE to 81 MOTION for Leave to File *Second Amended Complaint* | 2371-2375 |
| 83 04/29/2009 | ORDER granting 81 Motion for Leave to File | 2376-2377 |
| 84 | AMENDED COMPLAINT *(Second)* filed by K | 2378-2766 |

39

| | | |
|---|---|---|
| 05/11/2009 | and P, Incorporated, Jane Roe I, Jane Roe II, Jane Roe III, Jane Roe IV, H.D.V. - Greektown, L. L. C. with Exhibits A-L. | |
| 85 06/03/2009 | ANSWER to Amended Complaint with Affirmative Defenses | 2767-2813 |
| 86 06/12/2009 | JUDGMENT from U.S. Court of Appeals - Sixth Circuit re 72 Notice of Appeal filed by 415 East Congress, L. L. C., K and P, Incorporated, H.D.V. - Greektown, L. L. C., 71 Notice of Appeal filed by 415 East Congress, L. L. C., K and P, Incorporated, H.D.V. - Greektown, L. L. C. - Disposition: district court's denial of the plaintiffs' request that it declare the present owner's operation of the cabaret lawful and enjoin the City from enforcing the adult-use provisions of the zoning ordinances is reversed and remanded. With respect to the sign ordinances, district court's orders are affirmed | 2814 |
| 88 08/12/2009 | ORDER re 86 Appeal Order/Opinion/Judgment | 2816-2818 |
| 90 8/27/2009 | AMENDED ORDER re 88 Order | 2821-2822 |
| 92 09/25/2009 | MOTION to Amend/Correct 48 Order on Motion for Summary Judgment, Order on Motion for Partial Summary Judgment *[City of Detroit's Motion to Revise 8-6-07 Order Pursuant to FRCP 54]* with Exhibits A-E | 2825-2856 |
| 100 10/27/2009 | RESPONSE to *Defendants Motion to Revise Order* with Exhibits A-D | 2911-3031 |
| 101 10/27/2009 | Third MOTION for Partial Summary Judgment by K and P, Incorporated, H.D.V. - Greektown, L. L. C. with Exhibits A-E | 3032-3108 |
| 104 11/17/2009 | REPLY to Response *to City's Motion to Revise August 6, 2007 Order Pursuant to FRCP 54* | 3114-3122 |

40

| 105 12/02/2009 | RESPONSE to 101 Third MOTION for Partial Summary Judgment filed by Detroit, City of with Exhibits A-H | 3123-3189 |
|---|---|---|
| 108 12/21/2009 | REPLY to Response re 101 Third MOTION for Partial Summary Judgment filed by K and P, Incorporated, H.D.V. - Greektown, L. L. C. with Exhibits A-B | 3201-3222 |
| 113 02/02/2010 | STIPULATION AND ORDER re 104 Reply to Response to Motion | 3234-3235 |
| 114 02/02/2010 | STIPULATION AND ORDER re 105 Response to Motion | 3236-3237 |
| 116 03/05/2010 | EXHIBIT *[Supplemental Exhibit F (Chapter 61 Amendments) in Support of Motion to Revise Order]* with Exhibit F | 324-3243 |
| 117 03/12/2010 | ORDER denying 92 Motion to Amend/Correct. | 3317-3323 |
| | | |
| | | |
| 122 09/08/2010 | ORDER granting in part and denying in part 101 Motion for Partial Summary Judgment | 3349-3374 |
| 123 09/22/2010 | MOTION to Amend/Correct 122 Order on Motion for Partial Summary Judgment by 415 East Congress, L. L. C. | 3375-3404 |
| 125 10/22/2010 | ORDER re 123 MOTION to Amend/Correct 122 Order on Motion for Partial Summary Judgment filed by 415 East Congress, L. L. C., K and P | 3406-3407 |
| 126 11/18/2010 | ORDER denying 123 Motion to Amend/Correct | 3408-3415 |
| 135 03/22/2011 | JOINT FINAL PRETRIAL ORDER | 3873-3923 |
| 138 03/25/2011 | TRIAL BRIEF by 415 East Congress, L. L. C., H.D.V. - Greektown, L. L. C., K and P, Incorporated | 3926-3946 |

41

| | | |
|---|---|---|
| 139<br>03/25/2011 | TRIAL BRIEF by City of Detroit with Exhibit A | 3946-3978 |
| 142<br>03/28/2011 | RESPONSE to 133 Joint MOTION in Limine *[to exclude testimony by Defendant's expert, Mauricio Kohn]* with Exhibits A-F | 4096-4274 |
| 144<br>08/09/2011 | STIPULATION of Dismissal by Jane Roe I, Jane Roe II, Jane Roe III, Jane Roe IV | 4314-4316 |
| 145<br>08/23/2011 | CONSENT DECREE | 4317-4321 |
| 148<br>10/04/2011 | MOTION for Attorney Fees *and Costs* by 415 East Congress, L. L. C., H.D.V. - Greektown, L. L. C., K and P, Incorporated with Exhibits A-G | 4329-4662 |
| 152<br>11/10/2011 | RESPONSE to 148 MOTION for Attorney Fees *and Costs* filed by Detroit, City of with Exhibits A-Z | 4668-4877 |
| 153<br>11/10/2011 | RESPONSE to 148 MOTION for Attorney Fees *and Costs* with Exhibits AA-CC | 4878-4895 |
| 155<br>12/05/2011 | REPLY to Response re 148 MOTION for Attorney Fees *and Costs* filed by 415 East Congress, L. L. C., H.D.V. - Greektown, L. L. C., K and P, Incorporated with Exhibits A-N | 4902-5041 |
| 157 | SUPPLEMENTAL BRIEF re 148 MOTION for Attorney Fees *and Costs* with Exhibit A | 5048-5060 |
| 158<br>04/11/2012 | AFFIDAVIT of Eric B. Gaabo re 152 Response to Motion *[Amended Exhibit A to City's brief in opposition to remaining plaintiffs' motion for attorney fees and costs (this is identical to Exhibit A to brief filed 11-10-11, except that this affidavit is signed and notarized)]* | 5061-5068 |
| 161<br>08/15/2012 | TRANSCRIPT of Motion For Attorney Fees held on 6-28-12. (Transcriber: Linda M. Cavanagh) | 5071-5113 |
| 162<br>05/23/2013 | REPORT AND RECOMMENDATION re: 148 MOTION for Attorney Fees *and Costs* | 5114-5134 |
| 164<br>06/06/2013 | OBJECTION to *Magistrate's Report and Recommendation (Dkt. 162)* by All Plaintiffs | 5140-5173 |

42

| 167 | RESPONSE to 148 MOTION for Attorney Fees *and Costs City's Response to Remaining Plaintiffs' Objections to Magistrate's Report* filed by Detroit, City of with Exhibits A-C | 5177-5208 |
|---|---|---|
| 168 | SUGGESTION OF BANKRUPTCY Upon the Record by Detroit, City of [NOTICE OF SUGGESTION OF PENDENCY OF BANKRUPTCY CASE AND APPLICATION OF THE AUTOMATIC STAY] | 5209-5212 |
| | TEXT-ONLY ORDER re 162 REPORT AND RECOMMENDATION re 148 MOTION for Attorney Fees *and Costs* filed by 415 East Congress, L. L. C., K and P, Incorporated, H.D.V. - Greektown, L. L. C., 148 MOTION for Attorney Fees *and Costs* filed by 415 East Congress, L. L. C., K and P, Incorporated, H.D.V. - Greektown, L. L. C.. PURSUANT TO PENDING BANKRUPTCY PROCEEDINGS, MOTION FOR ATTORNEY FEES AND REPORT AND RECOMMENDATION ARE STAYED UNTIL BANKRUPTCY PROCEEDINGS ARE COMPLETED. PLAINTIFF AND DEFENDANT DIRECTED TO CONTACT THE COURT AS SOON AS THE BANKRUPTCY STAY HAS BEEN LIFTED. Signed by District Judge Julian Abele Cook. (KDoa) (Entered: 08/23/2013) | |
| 169 03/31/2015 | ORDER granting in part and denying in part 148 Motion for Attorney Fees; adopting 162 Report and Recommendation. Signed by District Judge Arthur J. Tarnow. (MLan) (Entered: 03/31/2015) | 5214-5223 |
| 170 04/20/2015 | NOTICE OF APPEAL by 415 East Congress, L. L. C., H.D.V. - Greektown, L. L. C., K and P, Incorporated re 169 Order on Motion for Attorney Fees, Order on Report and Recommendation. Receipt No. 0645-5124768 – Fee $505 – Fee Status: Fee Paid. (Hoffer, | 5224-5226 |

43

| | | |
|---|---|---|
| | Matthew) (Entered: 04/20/2015) | |
| 172<br>08/23/2016 | OPINION from U.S. Court of Appeals - Sixth Circuit re 170 Notice of Appeal, filed by 415 East Congress, L. L. C., K and P, Incorporated, H.D.V. - Greektown, L. L. C. [Appeal Case Number 15-1449] (Ahmed, N) (Entered: 08/23/2016) | 5228-5248 |
| 173<br>09/14/2016 | MANDATE from U.S. Court of Appeals - Sixth Circuit as to 172 Appeal Order/Opinion/Judgment, 170 Notice of Appeal, filed by 415 East Congress, L. L. C., K and P, Incorporated, H.D.V. - Greektown, L. L. C. [Appeal Case Number 15-1449] (Ahmed, N) | 5249-5250 |
| 174<br>09/20/2016 | Second MOTION ATTORNEY FEES AND COSTS re 148 MOTION for Attorney Fees *and Costs Supplemental* by 415 East Congress, L. L. C., H.D.V. - Greektown, L. L. C., K and P, Incorporated. (Attachments: # 1 Index of Exhibits Index of Exhibits, # 2 Exhibit Affidavit of Bradley J. Shafer, # 3 Exhibit Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (Doc 8272), # 4 Exhibit "Class 14 - Other Unsecured Claims" have an "Estimated Percentage Recovery" of 10-13 percent (Doc 4391), # 5 Exhibit Motion for an Order Approving Reserve Amounts (Doc 9351), # 6 Exhibit Order Approving Reserve Amounts (Doc 9701)) (Shafer, Bradley) | 5251-5268<br>Exhibits<br>5271-5784 |
| 176<br>10/04/2016 | RESPONSE to 174 Second MOTION ATTORNEY FEES AND COSTS re 148 MOTION for Attorney Fees *and Costs Supplemental* filed by All Defendants. (Attachments: # 1 Index of Exhibits, # 2 Exhibit A - Brumitte v Astrue, # 3 Exhibit B - Hawkins v Astrue, # 4 Exhibit C - Hagan v MRS Assoc., Inc., # 5 Exhibit D - Dzwonkowski v Dzwonkowski, # 6 Exhibit E - examples of documents reviewed as noted in billing | 5786-5805<br>Exhibits<br>5806-5875 |

44

| | statements, # 7 Exhibit F - highlighted billing entries charged at 0.25 hours) (Gaabo, Eric) | |
|---|---|---|
| 179 09/28/2017 | REPORT AND RECOMMENDATION RECOMMENDING GRANTING IN PART AND DENYING IN PART PLAINTIFFS' 174 Second MOTION ATTORNEY FEES AND COSTS re 148 MOTION for Attorney Fees *and Costs Supplemental* filed by 415 East Congress, L. L. C., K and P, Incorporated, H.D.V. - Greektown, L. L. C. - Signed by Magistrate Judge R. Steven Whalen. | 5886-5904 |
| 180 10/03/2017 | ERRATA SHEET TO 179 REPORT AND RECOMMENDATION - re 174 Second MOTION ATTORNEY FEES AND COSTS re 148 MOTION for Attorney Fees *and Costs Supplemental* filed by 415 East Congress, L. L. C., K and P, Incorporated, H.D.V. - Greektown, L. L. C. - Signed by Magistrate Judge R. Steven Whalen. | 5905-5906 |
| 181 10/12/2017 | OBJECTION to 179 Report and Recommendation by 415 East Congress, L. L. C., H.D.V. - Greektown, L. L. C., K and P, Incorporated. (Hoffer, Matthew) | 5907-5920 |
| 182 01/25/2018 | ORDER adopting in part 179 Report and Recommendation; Overruling 181 Objections and granting in part and denying in part 174 Second Motion for Attorney's Fees. Signed by District Judge Arthur J. Tarnow. | 5921-5930 |
| 183 02/22/2018 | NOTICE OF APPEAL by 415 East Congress, L. L. C., H.D.V. - Greektown, L. L. C., K and P, Incorporated re 182 Order on Motion - Free, Order on Report and Recommendation. | 5931 |

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2018, I electronically filed the foregoing paper with the Clerk of the United States Sixth Circuit Court of Appeals, using the ECF system, which will send notification of such filing to all attorneys of record.

/s/ Linda D. Fegins (P31980)
Attorney for Defendant
2 Woodward Ave., Ste. 500
Detroit, Michigan 48226
Telephone: (313) 237-3022
Facsimile: (313) 224-5505
fegil@detroitmi.gov

45

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | Eastern District of Michigan | | PROOF OF CLAIM |
|---|---|---|---|

Name of Debtor:

City of Detroit, Michigan

Case Number:

13-53846

**FILED**

FEB 20 2014

US Bankruptcy Court
MI Eastern District

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
SHAFER & ASSOCIATES, P.C.

Name and address where notices should be sent:
3800 CAPITAL CITY BLVD
SUITE 2
LANSING, MI 48906

Telephone number: (517) 886-6560    email: brad@bradshaferlaw.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
(*If known*)

Filed on: _____

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number:        email:

**RECEIVED**

FEB 24 2014

KURTZMAN CARSON CONSULTANTS

1. **Amount of Claim as of Date Case Filed:**      $            1,563,107.76

If all or part of the claim is **secured**, complete item 4.

If all or part of the claim is entitled to **priority**, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. **Basis for Claim:** 42 U.S.C. Section 1988
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as:<br><br>UNLIQUIDATED<br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

4. **Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐Real Estate  ☐Motor Vehicle  ☐Other
Describe:

**Value of Property:** $ _____

**Annual Interest Rate** _____% ☐Fixed  or  ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$_____

**Basis for perfection:** _____

**Amount of Secured Claim:** $_____

**Amount Unsecured:** $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Credits.** The amount of all payments on this claim has been credited for the purpose of makin



13-53846-tjt   Doc 12852   Filed 07/11/18   Entered 07/11/18 16:53:36   Page 422200060000049 1
276

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**RECEIVED**

**FEB 24 2014**

**KURTZMAN CARSON CONSULTANTS**

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor. ☐ I am the creditor's authorized agent. ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Brad J. Shafer
Title: President
Company: Shafer & Associates, P.C.
Address and telephone number (if different from notice address above):

_____ (Signature) _____ (Date) 2-20-14

Telephone number: (517) 886-6560    email: brad@bradshaferlaw.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

LAW OFFICES
SHAFER **&** ASSOCIATES, P.C.
A PROFESSIONAL CORPORATION
3800 CAPITAL CITY BLVD., SUITE 2
LANSING, MI 48906
E-MAIL info@bradshaferlaw.com
PHONE: 517-886-6560
FAX: 517-886-6565

BRADLEY J. SHAFER
ALSO MEMBER, AZ BAR
Brad@bradshaferlaw.com

MATTHEW J. HOFFER
Matt@bradshaferlaw.com

February 20, 2014

## SUMMARY OF ATTACHED DOCUMENTS

      This is a summary of the attached documents, authorized under Federal Rule of Bankruptcy Procedure 3001(c). Attached is the Consent Decree declaring Shafer & Associates, P.C.'s clients the prevailing parties in that action, which serves as the basis for these claims. Also attached is a summary of invoices reflecting the full amount of attorney fees and costs claimed under 42 U.S.C. § 1988 (the statute that mandates an award of attorney fees and costs to a prevailing party in a civil rights action), which is claimed by the creditors. After Shafer & Associates, P.C. timely filed a motion for attorneys' fees and costs, Magistrate Steven Whalen issued a Report & Recommendation. Shafer & Associates timely filed an objection to the Report & Recommendation, which was followed by the City of Detroit's own objections. The bankruptcy proceeding was then initiated before Judge Cook adjudicated the motion.

      There are four potential creditors: Shafer & Associates, P.C., and its clients in the federal action: HDV Greektown, LLC, K & P, Inc., and 415 East Congress St, LLC. Each creditor asserts a claim for the full amount because the clients and the law firm jointly assert the claim to the attorneys' fees and costs. The total amount claimed is $1,563,107.76, but this number appears on each of the four separate proof of claim forms to preserve all claims. Because all amounts are owed but yet to be determined by the trial court judge, the proper amount is currently unliquidated for all four creditors.

Very truly yours,

**SHAFER & ASSOCIATES, P.C.**

By:    **Bradley J. Shafer**

# PROOF OF CLAIM FORM B-10

## INDEX OF ATTACHMENTS

| Tab | Document |
| --- | --- |
| 1 | Summary of Billing up to December 31, 2011 |
| 2 | Invoices from January 1, 2012 through July 17, 2013 |
| 3 | Consent Decree |
| 4 | Magistrate's Report & Recommendation |
| 5 | Plaintiff's Objection to Report & Recommendation |
| 6 | Defendant's Response to Plaintiff's Objections |