# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND BAR DATE ORDER AND (II) REQUIRING THE DISMISSAL WITH PREJUDICE OF CERTAIN PARTIES FROM THE FEDERAL COURT ACTION FILED BY THOMAS SANDUSKY

The City of Detroit, Michigan ("City"), by its undersigned counsel, files its *Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and Bar Date Order and (II) Requiring the Dismissal with Prejudice of Certain Parties From the Federal Court Action Filed by Thomas Sandusky* ("Motion"). In support of this Motion, the City respectfully states as follows:

## I.    Introduction

1.    On June 6, 2017, Thomas Sandusky ("Plaintiff"), as personal representative of the estate of Hal Sandusky ("Sandusky"), filed a federal court lawsuit against the City seeking monetary damages on account of alleged events that occurred on or before June 28, 2013 – the date Sandusky died. The filing of the lawsuit violates the discharge and injunction provisions in the City's confirmed Plan. The City informed Plaintiff of these violations and asked Plaintiff to voluntarily dismiss the City from his federal court lawsuit, but to no avail. As a

result, the City is left with no choice but to seek an order barring and permanently enjoining Plaintiff from asserting and prosecuting the claims described in the federal court action against the City or property of the City and requiring him to dismiss the federal court action with prejudice to the extent it seeks any such relief.

## II. Background

### A. Plaintiff Files a Complaint in Federal Court in June 2017 Based on Pre-Petition Claims

2. On June 6, 2017, Plaintiff, as Sandusky's personal representative, filed a complaint ("Complaint") against the City, the Detroit Police Department, and a number of "Detroit Police Officer Defendants": Commander Mounsey, Lt. Johnson, Richard Knox, Gerald Robinson, Michelle Baker, Sgt. Brady Bruenton, Sgt. Jeffrey O'Keefe, Sgt. David Newkirk, Sgt. McWhorter, Sgt. Steven Ford, Officer Brian Ross, Officer Kevin Zarosly, Officer William O'Brien, Officer Yasmin Cooper, Officer Shunta Small, Officer J. Morgan, and Officer Berry, in the United States District Court for the Eastern District of Michigan, case number 17-11784 ("Federal Court Action"). The Complaint is attached as Exhibit 6-1.

3. Plaintiff asserts that on June 25, 2013, Sandusky was arrested in the City following an incident at his girlfriend's home. Complaint ¶ 29. At or around the time of the incident, Sandusky had cut his arm on a broken window, and sustained two serious, deep lacerations to his right arm as well as a laceration on his head. *Id.* ¶ 30. Sandusky was allegedly taken to the hospital by certain of the

Defendant Police Officer Defendants. *Id.* ¶ 31. Plaintiff alleges that following treatment at the hospital, Sandusky was discharged from the hospital on June 25, 2013, with specific instructions to call a physician in the event of redness, pain or swelling develops in the area of the stitches on Sandusky's arm. *Id.* ¶ 33.

4.      Sandusky was then booked in jail. *Id.* ¶ 35. Plaintiff alleges that while Sandusky was incarcerated between June 25 and 27, 2013, the injury to Sandusky's right forearm became infected and septic and that he was not provided with follow up medical care as directed in his hospital discharge instructions. *Id.* ¶¶ 39-40.

5.      Plaintiff alleges that during the evening of June 27, 2013, a fellow detainee notified Defendant Newkirk that Sandusky was vomiting and that it sounded as if Sandusky had fallen and struck his head. *Id.* ¶ 42. Plaintiff also alleges that Sandusky was not responding to verbal commands given by Defendant Newkirk. *Id.* ¶ 45. Plaintiff then alleges that Defendant Newkirk and other officers initiated CPR and utilized a defibrillator in an attempt to revive and resuscitate Sandusky in his cell but were unsuccessful. *Id.* ¶ 49.

6.      Sandusky was taken to the hospital, but the "medical staff was unable to revive Decedent, and at 12:56 a.m. on June 28, 2013, Decedent was pronounced dead." *Id.* ¶ 54.

7.     The Complaint contains three counts. Complaint, PgID 10-21.  Each

count stems from alleged events preceding Sandusky's death on June 28, 2013.

*Id.*   Count I asserts deliberate indifference to Sandusky's well-being and serious

medical needs.  *Id.* ¶ 61. Paragraph 62 of the Complaint lists numerous events

which allegedly occurred on June 25-27, 2013.  *Id.* ¶ 62.  Paragraph 63 of the

Complaint then asserts that the "above described conduct of the Defendants, as

specifically set forth above, was the proximate cause of Plaintiff's Decedent's

death…"  *Id.* ¶ 63. Counts II and III assert similar claims based on the alleged

events of June 25-27, 2013.

8.     On May 5, 2018, the City filed a motion for summary judgment in the

Federal Court Action on additional grounds to address, among other issues, any

relief sought against the Detroit Police Officer Defendants in their individual

capacity ("Summary Judgment Motion").   The Summary Judgment Motion is

attached as Exhibit 6-2.

## B.     The City's Bankruptcy Case

9.     On July 18, 2013 ("Petition Date"), the City filed this chapter 9 case.

10.     On October 10, 2013, the City filed its *Motion Pursuant to Section*

*105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c),*

*for Entry of an Order Establishing Bar Dates for Filing Proofs of Claim and*

*Approving Form and Manner of Notice Thereof* ("Bar Date Motion") [Doc. No.

1146], which was approved by order of this Court on November 21, 2013 ("Bar Date Order"). [Doc. No. 1782].

11. The Bar Date Order established February 21, 2014 ("General Bar Date") as the deadline for filing claims against the City. Paragraph 6 of the Bar Date Order states that the

> following entities must file a proof of claim on or before the Bar Date…any entity: (i) whose prepetition claim against the City is not listed in the List of Claims or is listed as disputed, contingent or unliquidated; and (ii) that desires to share in any distribution in this bankruptcy case and/or otherwise participate in the proceedings in this bankruptcy case associated with the confirmation of any chapter 9 plan of adjustment proposed by the City…

Bar Date Order ¶ 6.

12. Paragraph 22 of the Bar Date Order also provides that:

> Pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(2), **any entity that is required to file a proof of claim in this case pursuant to the Bankruptcy Code, the Bankruptcy Rules or this Order with respect to a particular claim against the City, but that fails properly to do so by the applicable Bar Date, shall be forever barred, estopped and enjoined from: (a) asserting any claim against the City or property of the City** that (i) is in an amount that exceeds the amount, if any, that is identified in the List of Claims on behalf of such entity as undisputed, noncontingent and liquidated or (ii) is of a different nature or a different classification or priority than any Scheduled Claim identified in the List of Claims on behalf of such entity (any such claim under subparagraph (a) of this paragraph being referred to herein as an "<u>Unscheduled Claim</u>"); (b) voting upon, or receiving

distributions under any Chapter 9 Plan in this case in respect of an Unscheduled Claim; or (c) with respect to any 503(b)(9) Claim or administrative priority claim component of any Rejection Damages Claim, asserting any such priority claim against the City or property of the City.

13. The Bar Date Order also approved the form and manner of notice of the Bar Dates. *See, e.g.*, Bar Date Order ¶¶ 3, 23-26. In accordance with the Bar Date Order, notice of the General Bar Date was published in several newspapers. [Doc. Nos. 3007, 3008, 3009].

14. Neither Plaintiff nor any representative of the Sandusky estate filed a proof of claim.

15. On October 22, 2014, the City filed its *Eighth Amended Plan of the Adjustment of Debts of the City of Detroit* ("Plan"). [Doc. No. 8045], which this Court confirmed on November 12, 2014. [Doc. No. 8272].

16. The discharge provision in the Plan provides:

Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date. Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date, discharge the City from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based

on such debt is allowed pursuant to section 502 of the
Bankruptcy Code or (ii) the Holder of a Claim based on
such debt has accepted the Plan.

Plan, Art. III.D.4, at p.50.

17.     Further, the Plan injunction set forth in Article III.D.5 provides in

pertinent part:

**Injunction**

**On the Effective Date, except as otherwise provided herein
or in the Confirmation Order,**

**a.      all Entities that have been, are or may be holders of
Claims against the City…shall be permanently enjoined from
taking any of the following actions against or affecting the City or
its property…**

**1.      commencing, conducting or continuing in any
manner, directly or indirectly, any suit, action or other
proceeding of any kind against or affect the City of its property…**

**5.      proceeding in any manner in any place
whatsoever that does not conform or comply with the provisions
of the Plan or the settlements set forth herein to the extent such
settlements have been approved by the Bankruptcy Court in
connection with Confirmation of the Plan; and**

**6.      taking any actions to interfere with the
implementation or consummation of the Plan.**

Plan, Article III.D.5, at pp.50-51 (emphasis added).

18.     The Court also retained jurisdiction to enforce the Plan injunction and

to resolve any suits that may arise in connection with the consummation,

interpretation or enforcement of the Plan.  Plan, Art. VII. F, G, I, at p.72.

## III.   **Argument**

19.    Plaintiff violated the Plan's injunction and discharge provisions when he filed the Federal Court Action to assert claims and otherwise seek relief against the City.   And, he continues to violate them by persisting in prosecuting the Federal Court Action.

20.    The Plan's discharge provision[1] states that the "rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date." Plan Art. III.D.4, at p.50.   Neither Plaintiff nor any representative of Sandusky's estate ever filed a proof of claim in the City's bankruptcy case. Consequently, Plaintiff does not have a right to a distribution or payment under the Plan on account of the claims asserted in the Federal Court Action.   Plan, Art. III.D.5, at p.50 ("[A]ll entities that have been, are or may be holders of Claims against the City . . . shall be permanently enjoined from . . . proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan."). *See also* Plan, Art. I.A.19, at p.3; Art. I.A.134, at p.11; Art. VI.A.1, at p.67 ("Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of a Disputed Claim until such

---

[1] Only "claims against officers or employees of the City *in their individual capacity* under 42 U.S.C. §1983" (emphasis added) are excepted from the discharge and injunction provisions of the Plan, pursuant to paragraphs 30 and 32 of the Confirmation Order.

31780304.4\022765-00213
13-53846-tjt   Doc 12877   Filed 08/20/18   Entered 08/20/18 09:26:01   Page 8 of 83

Claim becomes an Allowed Claim.").  Any claims that Plaintiff may have had were discharged, and the Plan enjoins Plaintiff from pursuing them.

21.     Even if Plaintiff could somehow seek relief on his claims against the City or its property (which he cannot), the proper and only forum for doing so would be in this Bankruptcy Court.  There is therefore no set of circumstances under which Plaintiff is or would have been permitted to commence and prosecute the Federal Court Action against the City or its property.

## IV.   <u>Conclusion</u>

22.     As such, the City respectfully requests that this Court enter an order in substantially the same form as the one attached as Exhibit 1, (a) granting the Motion and (b) requiring Plaintiff to dismiss, or cause to be dismissed, with prejudice the City of Detroit, the Detroit Police Department and each of the persons named as defendants in their official capacity from the Federal Court Action.  The City sought, but did not obtain, concurrence to the relief sought in the Motion.

Respectfully submitted,

By: /s/ Marc N. Swanson
    Jonathan S. Green (P33140)
    Marc N. Swanson (P71149)
    MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    green@millercanfield.com
    swansonm@millercanfield.com

    Charles N. Raimi (P29746)
    Deputy Corporation Counsel
    City of Detroit Law Department
    2 Woodward Avenue, Suite 500
    Coleman A. Young Municipal Center
    Detroit, Michigan 48226
    Telephone: (313) 237-5037
    Facsimile: (313) 224-5505
    raimic@detroitmi.gov

    ATTORNEYS FOR THE CITY OF DETROIT

Dated: August 20, 2018

## EXHIBIT LIST

| | |
|---|---|
| Exhibit 1 | Proposed Order |
| Exhibit 2 | Notice |
| Exhibit 3 | None |
| Exhibit 4 | Certificate of Service |
| Exhibit 6-1 | Complaint |
| Exhibit 6-2 | Summary Judgment Motion |

## EXHIBIT 1 – PROPOSED ORDER

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## [PROPOSED] ORDER GRANTING CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND BAR DATE ORDER AND (II) REQUIRING THE DISMISSAL WITH PREJUDICE OF CERTAIN PARTIES FROM THE FEDERAL COURT ACTION FILED BY THOMAS SANDUSKY

This matter, having come before the court on the City of Detroit's *Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and Bar Date Order and (II) Requiring the Dismissal with Prejudice of Certain Parties From the Federal Court Action Filed by Thomas Sandusky* ("Motion"), upon proper notice and a hearing, the Court being fully advised in the premises, and there being good cause to grant the relief requested,

**THE COURT ORDERS THAT:**

1.    The Motion is granted.

2.    Within five days of the entry of this Order, Thomas Sandusky shall dismiss, or cause to be dismissed, with prejudice, the City of Detroit, the Detroit Police Department and each of the following defendants in their official capacity

from Case No. 17-11784 filed with the United States District Court for the Eastern District of Michigan, Southern Division: Commander Mounsey, Lt. Johnson, Richard Knox, Gerald Robinson, Michelle Baker, Sgt. Brady Bruenton, Sgt. Jeffrey O'Keefe, Sgt. David Newkirk, Sgt. McWhorter, Sgt. Steven Ford, Officer Brian Ross, Officer Kevin Zarosly, Officer William O'Brien, Officer Yasmin Cooper, Officer Shunta Small, Officer J. Morgan, and Officer Berry.

3. The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

31780304.4\022765-00213

## EXHIBIT 2 – NOTICE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## NOTICE OF OPPORTUNITY TO RESPOND TO
## CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER
## (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND BAR
## DATE ORDER AND (II) REQUIRING THE DISMISSAL WITH
## PREJUDICE OF CERTAIN PARTIES FROM THE FEDERAL COURT
## ACTION FILED BY THOMAS SANDUSKY

The City of Detroit has filed its *Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and Bar Date Order and (II) Requiring the Dismissal with Prejudice of Certain Parties From the Federal Court Action Filed by Thomas Sandusky.*

**<u>Your rights may be affected.</u>  You should read these papers carefully and discuss them with your attorney.**

If you do not want the Court to enter an Order granting the City of Detroit's *Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and Bar Date Order and (II) Requiring the Dismissal with Prejudice of Certain Parties From the Federal Court Action Filed by Thomas Sandusky* within 14 days, you or your attorney must:

1.    File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above. You must also mail a copy to:

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2.    If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
     Marc N. Swanson (P71149)
     150 West Jefferson, Suite 2500
     Detroit, Michigan 48226
     Telephone: (313) 496-7591
     Facsimile: (313) 496-8451
     swansonm@millercanfield.com

Dated:  August 20, 2018

# EXHIBIT 3 - NONE

## EXHIBIT 4 – CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 20, 2018, the foregoing City of Detroit's *Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and Bar Date Order and (II) Requiring the Dismissal with Prejudice of Certain Parties From the Federal Court Action Filed by Thomas Sandusky* was filed and served via the Court's electronic case filing and notice system and served upon counsel as listed below, via first class mail and electronic mail:

Geoffrey N. Fieger
Todd J. Weglarz
Fieger, Fieger, Kenney & Harrington
19390 West Ten Mile Road
Southfield, MI 48075
t.weglarz@fiegerlaw.com

By: /s/ Marc N. Swanson
Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Dated: August 20, 2018

# EXHIBIT 5 – NONE

# **EXHIBIT 6-1 – COMPLAINT**

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

| | | |
|---|---|---|
| Thomas Sandusky | ) | |
| | ) | |
| | ) | Civil Action No. 17-cv-11784 |
| *Plaintiff.* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Commander Mounsey, et al | ) | Hon. Nancy G. Edmunds |
| | ) | |
| | ) | |
| *Defendant.* | ) | |

### SUMMONS IN A CIVIL ACTION

To:     City of Detroit


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Todd J. Weglarz
> Fieger, Fieger, Kenney & Harington, PC
> 19390 West 10 Mile Road
> Southfield, MI 48075
> 248-355-5555


If you fail to respond, judgment by default may be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.


*DAVID J. WEAVER, CLERK OF COURT*

By:  _s/LGranger_____
     *Signature of Clerk or Deputy Clerk*

Date of Issuance:  June 8, 2017_____



AO 440 (Rev. 06/12) Summons in a Civil Action

---

# Summons and Complaint Return of Service

---

Case No. 17-cv-11784
Hon. Nancy G. Edmunds

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)*     City of Detroit

was received by me on *(date)*

    ❏ I personally served the summons on the individual at *(place)*

                    on *(date)*     ; or

    ❏ I left the summons at the individual's residence or usual place of abode with *(name)*

                  , a person of suitable age and discretion who resides there,

on *(date)*     , and mailed a copy to the individual's last known address; or

    ❏ I served the summons on *(name of individual)*     , who is

designated by law to accept service of process on behalf of *(name of organization)*

                    on *(date)*     ; or

    ❏ I returned the summons unexecuted because     ; or

    ❏ Other *(specify)*:

My fees are $     for travel and $     for services, for a total of $

I declare under penalty of perjury that this information is true.

Date:

                    *Server's signature*

                    *Printed name and title*

                    *Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

THOMAS SANDUSKY, as
Personal Representative of the Estate of
HAL SANDUSKY, Deceased,

    Plaintiff,

v.

COMMANDER MOUNSEY, LT. JOHNSON,
RICHARD KNOX, GERALD ROBINSON,
MICHELLE BAKER, SGT. BRADY BRUENTON,
SGT. JEFFREY O'KEEFE, SGT. DAVID NEWKIRK,
SGT. MCWHORTER, SGT. STEVEN FORD,
OFFICER BRIAN ROSS, OFFICER KEVIN
ZAROSLY, OFFICER WILLIAM O'BRIEN,
OFFICER YASMIN COOPER, OFFICER SHUNTA
SMALL, OFFICER J. MORGAN, OFFICER BERRY,
DETROIT POLICE DEPARTMENT, AND CITY OF
DETROIT, a Municipal Corporation,
Jointly and Severally,

    Defendants.

Case No. 17 -
Hon.

GEOFFREY N FIEGER (P30441)
TODD J. WEGLARZ (P48035)
Attorney for Plaintiff
19390 W. 10 Mile Road
Southfield, MI 48075
(248) 355-5555
(248) 355-5148 (fax)
t.weglarz@fiegerlaw.com

---

## COMPLAINT AND JURY DEMAND

There is no other civil action arising out the same transaction or occurrence as alleged in this complaint, and pursuant to MCL 600.5507(2), there have been zero (0) prior actions filed by this Plaintiff concerning prison conditions.

Todd J. Weglarz (P48035)

{00369345.DOCX}

1

NOW COMES Plaintiff, THOMAS SANDUSKY, as Personal Representative of the Estate of HAL SANDUSKY, deceased, by and through his attorneys, Fieger, Fieger, Kenney & Harrington, P.C., and for his Complaint against Defendants, states as follows:

## JURISDICTION AND VENUE

1.      That this Court has jurisdiction of this action under the provisions of Title 28 of the United States Code, Sections 1331 and 1343, and also has pendent jurisdiction over all state claims that arise out of the nucleus of operative facts common to Plaintiff's federal claims.

2.      That Plaintiff brings this suit against each and every Defendant in both their individual and official capacities.

3.      That each and every act of Defendants, as set forth herein, were done by those Defendants under the color and pretense of the statutes, ordinances, regulations, laws, customs, and usages of the State of Michigan, and by virtue of, and under the authority of, each individual Defendant's employment with the State of Michigan.

4.      That the amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees.

## GENERAL ALLEGATIONS

5.      Plaintiff hereby restates and re-alleges paragraphs one through four (4) of this Complaint as if fully stated herein.

6.      At all times relevant, Plaintiff THOMAS SANDUSKY, was the lawful Personal Representative of the Estate of HAL SANDUSKY, Deceased (hereinafter "Sandusky" or "Decedent").

{00369345.DOCX}                    2

FIEGER, FIEGER, KENNEY & HARRINGTON, P.C. • A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD • SOUTHFIELD MICHIGAN 48075 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

7.     At all times relevant, Decedent HAL SANDUSKY, was a resident of the City of Detroit, County of Wayne, and State of Michigan, and was entitled to all the rights, privileges, and immunities accorded to all U.S. citizens and residents of Wayne County and the State of Michigan.

8.     At all times relevant, Plaintiff THOMAS SANDUSKY was and is a resident of the City of Southfield, County of Oakland, State of Michigan.

9.     At all times relevant, Defendant COMMANDER MOUNSEY (hereinafter "MOUNSEY"), was acting under color of law and in the course and scope of his employment as a Police Officer / Commanding Officer for the Detroit Police Department, located in the City of Detroit, County of Wayne, State of Michigan.

10.     At all times relevant, Defendant LT. JOHNSON (hereinafter "JOHNSON"), was acting under color of law and in the course and scope of his employment as a Police Officer / Lieutenant for the Detroit Police Department, located in the City of Detroit, County of Wayne, State of Michigan.

11.     At all times relevant, Defendant RICHARD KNOX (hereinafter "KNOX"), was acting under color of law and in the course and scope of his employment as a Police Officer / Supervising Officer for the Detroit Police Department, located in the City of Detroit, County of Wayne, State of Michigan.

12.     At all times relevant, Defendant GERALD ROBINSON (hereinafter "ROBINSON"), was acting under color of law and in the course and scope of his employment as a Police Officer / Supervising Officer for the Detroit Police Department, located in the City of Detroit, County of Wayne, State of Michigan.

{00369345.DOCX}                                     3

FIEGER, FIEGER, KENNEY& HARRINGTON, P.C. · A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD · SOUTHFIELD MICHIGAN 48075 · TELEPHONE (248) 355-5555 · FAX (248) 355-5148

13.   At all times relevant, Defendant MICHELLE BAKER (hereinafter "BAKER"), was acting under color of law and in the course and scope of his employment as a Police Officer / Supervising Officer for the Detroit Police Department, located in the City of Detroit, County of Wayne, State of Michigan.

14.   At all times relevant, Defendant SGT. BRADY BRUENTON (hereinafter "BRUENTON"), was acting under color of law and in the course and scope of his employment as a Police Officer / Sergeant for the Detroit Police Department, located in the City of Detroit, County of Wayne, State of Michigan.

15.   At all times relevant, Defendant SGT. JEFFREY O'KEEFE (hereinafter "O'KEEFE"), was acting under color of law and in the course and scope of his employment as a Police Officer / Sergeant for the Detroit Police Department, located in the City of Detroit, County of Wayne, State of Michigan.

16.   At all times relevant, Defendant SGT. DAVID NEWKIRK (hereinafter "NEWKIRK"), was acting under color of law and in the course and scope of his employment as a Police Officer / Sergeant for the Detroit Police Department, located in the City of Detroit, County of Wayne, State of Michigan.

17.   At all times relevant, Defendant SGT. MCWHORTER (hereinafter "MCWHORTER"), was acting under color of law and in the course and scope of his employment as a Police Officer / Sergeant for the Detroit Police Department, located in the City of Detroit, County of Wayne, State of Michigan.

18.   At all times relevant, Defendant SGT. STEVEN FORD (hereinafter "FORD"), was acting under color of law and in the course and scope of his employment as a Police Officer

FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.  •  A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD • SOUTHFIELD MICHIGAN 48075 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

{00369345.DOCX}

4

/ Sergeant for the Detroit Police Department, located in the City of Detroit, County of Wayne, State of Michigan.

      19.    At all times relevant, Defendant OFFICER BRIAN ROSS (hereinafter "ROSS"), was acting under color of law and in the course and scope of her employment as an Police Officer for the Detroit Police Department, located in the City of Detroit, County of Wayne, State of Michigan.

      20.    At all times relevant, Defendant OFFICER KEVIN ZAROSLY (hereinafter "ZAROSLY"), was acting under color of law and in the course and scope of his employment as a Police Officer for the Detroit Police Department, located in the City of Detroit, County of Wayne, State of Michigan.

      21.    At all times relevant, Defendant OFFICER WILLIAM O'BRIEN (hereinafter "O'BRIEN"), was acting under color of law and in the course and scope of his employment as a Police Officer for the Detroit Police Department, located in the City of Detroit, County of Wayne, State of Michigan.

      22.    At all times relevant, Defendant OFFICER YASMIN COOPER (hereinafter "COOPER"), was acting under color of law and in the course and scope of his employment as a Police Officer for the Detroit Police Department, located in the City of Detroit, County of Wayne, State of Michigan.

      23.    At all times relevant, Defendant OFFICER SHUNTA SMALL (hereinafter "SMALL"), was acting under color of law and in the course and scope of his employment as a Police Officer for the Detroit Police Department, located in the City of Detroit, County of Wayne, State of Michigan.

FIEGER, FIEGER, KENNEY & HARRINGTON, P.C. · A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD · SOUTHFIELD MICHIGAN 48075 · TELEPHONE (248) 355-5555 · FAX (248) 355-5148

{00369345.DOCX}

5

24.     At all times relevant, Defendant OFFICER J. MORGAN (hereinafter "MORGAN"), was acting under color of law and in the course and scope of his employment as a Police Officer for the Detroit Police Department, located in the City of Detroit, County of Wayne, State of Michigan.

25.     At all times relevant, Defendant OFFICER BERRY (hereinafter "BERRY"), was acting under color of law and in the course and scope of his employment as a Police Officer for the Detroit Police Department, located in the City of Detroit, County of Wayne, State of Michigan.

26.     At all times relevant, Defendant DETROIT POLICE DEPARTMENT was acting under color of law as a police department located within the City of Detroit, State of Michigan.

27.     At all times relevant, Defendant CITY OF DETROIT was as a municipal corporation located within the State of Michigan.

## FACTUAL ALLEGATIONS

28.     Plaintiff hereby restates and re-alleges each and every allegation contained in paragraphs one through twenty seven (27) as though fully set forth herein.

29.     On June 25, 2013, at approximately 6:05 p.m., Decedent, a thirty five year old man, was arrested in the City of Detroit following an incident at his girlfriend's home.

30.     At or around the time of the incident, Decedent had cut his arm on a broken window, and sustained two serious, deep lacerations to his right arm as well as a laceration on his head.

31.     Arresting officers ROSS and ZAROSLY took Decedent to the hospital for treatment of the lacerations to his right arm and head.

{00369345.DOCX}                                6

FIEGER, FIEGER, KENNEY & HARRINGTON, P.C. • A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD • SOUTHFIELD MICHIGAN 48075 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

32.     The Decedent was admitted to the hospital at approximately 6:31 p.m., where he had his wounds examined and treated, which involved x-rays, irrigation, and 10 stitches in his lacerated right arm.

33.     Following examination and treatment, Decedent was discharged from the hospital on June 25, 2013 at approximately 10:50 p.m, with specific instructions to call a physician in the event redness, pain, or swelling develops in the area of Decedent's stitches.

34.     At all times relevant, Decedent's injuries were known to all Defendants.

35.     Decedent, a pre-trial detainee, was booked into the Detroit Police Department, 2nd Precinct jail, located at 13530 Lesure in the City of Detroit.

36.     Upon information and belief, following booking, Decedent was placed into Cell No. 2CO2.

37.     Defendants were required to perform regular cell checks and/or or provide wellness / medical follow up care of Decedent following his booking and placement in the cell.

38.     Upon information and belief, Defendants MOUNSEY, JOHNSON, KNOX, ROBINSON, BAKER, BRUENTON, O'KEEFE, NEWKIRK, MCWHORTER, FORD, ROSS, ZAROSLY, O'BRIEN, COOPER, SMALL, MORGAN, and BERRY were on duty between the dates of June 25 and June 27, 2013.

39.     While incarcerated between June 25 and June 27, 2013, the injury to Decedent's right forearm became infected and septic, causing redness, pain, and / or swelling, which would have been visible upon observation of Decedent.

40.     Despite the increasing infection and sepsis, marked by redness, pain, and / or swelling in Decedent's right forearm, he was not provided with follow up medical care as directed in his hospital discharge instructions.

FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.   •   A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD • SOUTHFIELD MICHIGAN 48075 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

41.     At approximately 9:30 p.m. on June 27, 2013, Decedent requested tissue from Defendant SMALL.

42.     On June 27, 2013, at or around 10:30 p.m., a fellow detainee notified Defendant NEWKIRK that Decedent was vomiting, and also that it sounded as if Decedent had fallen and struck his head.

43.     Defendant NEWKIRK entered Decedent's cell and observed vomit and diarrhea in the toilet, and notified Defendant BRUENTON.

44.     At 10:36, Defendant BRUENTON advised Defendant NEWKIRK that a scout car should be requested to respond to the 2nd Precinct in order to transport Decedent to the hospital for treatment.

45.     At 10:30 p.m. Decedent was observed by Defendant SMALL to be conscious and breathing, but not responding to verbal commands given by Defendant NEWKIRK.

46.     At approximately 11:00 p.m. on June 27, 2013, during a cell check, Defendant O'BRIEN noted that Decedent was unresponsive.

47.     When Defendants made entry into Decedent's cell, he was observed to be lying on his back with a faint pulse.

48.     Defendant NEWKIRK directed Defendants SMALL and O'BRIEN to call 911 and obtain the automatic defibrillator.

49.     Defendant NEWKIRK initiated CPR and utilized the defibrillator in an attempt to revive and resuscitate Decedent in his cell, but attempts to do so were unsuccessful.

50.     Defendants SMALL, O'BRIEN, and NEWKIRK carried Decedent to the scout car.

{00369345.DOCX}                                  8

51.     Defendants SMALL, O'BRIEN, and NEWKIRK continued in their attempts to resuscitate Decedent while in the back of the scout car, which remained parked in the precinct garage.

52.     At approximately 11:16 p.m., Detroit Fire Department - EMS Division Medic 5 arrived to take over CPR and transport Decedent to the hospital.

53.     At the time of their arrival, paramedics noted that Decedent was unconscious, with no circulation and no spontaneous breathing, and also that his right arm showed evidence of bleeding.

54.     Sinai Grace Hospital medical staff was unable to revive Decedent, and at 12:56 a.m. on June 28, 2013, Decedent was pronounced dead.

55.     The medical examiner determined that the cause of death was due to *septic shock due to right arm laceration infection*, as well as blunt force trauma.

56.     The medical examiner noted that Decedents right arm had a broad area of skin mottling and sloughing with blister formation showing evidence of infection and sepsis, specifically covering an area approximately 15 inches x 3 inches on his forearm.

57.     Upon autopsy, a blood culture indicated that Decedent was infected with Group A streptococcus.

58.     That as a proximate result of the actions and inactions described herein, Plaintiff's Decedent and his Estate suffered injuries and damages which include, but are not limited to, the following:

    a.     Death;

    b.     Reasonable medical, hospital, funeral and burial expenses;

    c.     Conscious pain and suffering, physical and emotional;

FIEGER, FIEGER, KENNEY & HARRINGTON, P.C. · A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD · SOUTHFIELD MICHIGAN 48075 · TELEPHONE (248) 355-5555 · FAX (248) 355-5148

(00369345.DOCX)

9

d.   Humiliation and / or mortification;

e.   Mental anguish;

f.   Economic damages;

g.   Loss of love, society, and companionship;

h.   Loss of gifts, gratuities, and other items of economic value;

i.   Parental guidance, training, and support;

j.   Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

k.   Attorney fees and costs pursuant to 42 USC § 1988;

l.   Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, *et seq.*

## COUNT I

### DELIBERATE INDIFFERENCE

### VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 USC § 1983 (ALL DEFENDANTS)

59.   Plaintiff hereby restates and re-alleges each and every allegation contained in paragraphs one through fifty eight (58) as if fully set forth herein.

60.   That the acts or omissions by all Defendants were unreasonable and performed knowingly, deliberately, indifferently, intentionally, maliciously, and with gross negligence, callousness, and deliberate indifference to Plaintiff's Decedent's well-being and serious medical needs.

61.   That the aforementioned Defendants adopted, promulgated, encouraged, condoned, and/or tolerated official customs, policies, practices, and/or procedures, including

FIEGER, FIEGER, KENNEY& HARRINGTON, P.C. • A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD • SOUTHFIELD MICHIGAN 48075 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

such for failing to train and/or supervise its employees/agents, were the motivating force for the individuals Defendants' conduct as described herein, such that same also amounted to a deliberate indifference to Plaintiff's Decedent's well-being and serious medical needs.

62.     That the conduct of the aforementioned Defendants, individually, corporately and as agents of said individual Defendants, deprived Plaintiff's Decedent of his clearly established rights, privileges, and immunities guaranteed him under the United States Constitution, specifically those set forth under the and 8th and 14th Amendments to same, as evidenced by the following particulars:

a. Disregarding the discharge instructions provided by Decedent's physician upon his discharge from the hospital on June 25, 2013, which specifically stated that medical care was required if the Decedent's developed redness, pain or swelling in his injured right arm;

b. Observing and disregarding Decedent's obviously infected and septic condition prior to June 27, 2013 at 9:30 p.m.;

c. Failing to obtain follow-up medical care for Decedent's obviously infected and septic condition, despite physician directives to do so, prior to June 27, 2013 at 9:30 p.m.;

d. In the alternative, failing to observe and check on Decedent after placing him in his cell on June 25, 2013, despite all Defendants knowing that Decedent had suffered serious injuries at or around the time of his arrest, causing delay in treatment of Decedent's infected and septic condition;

e. Failing to request follow up medical care and assistance for Decedent following his June 25, 2013 arrest and booking, despite all Defendants knowing that Decedent had suffered serious injuries at or around the time of his arrest;

f. Failing to provide follow up medical care and assistance for Decedent following his June 25, 2013 arrest and booking, despite all Defendants knowing that Decedent had suffered serious injuries at or around the time of his arrest;

g. Failing to transfer patient to a physician or hospital for further workup, monitoring, observation, and supportive measures, despite all Defendants

FIEGER, FIEGER, KENNEY & HARRINGTON, P.C. • A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD • SOUTHFIELD MICHIGAN 48075 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

knowing that Decedent had suffered serious injuries at or around the time of his arrest;

h. Failing to immediately call EMS on the night of June 27, 2013, when it was known to all Defendants at 10:30 p.m. that Decedent was exhibiting signs of serious illness and / or medical complications of his injuries;

i. Failing to immediately call EMS on the night of June 27, 2013, when it was known to all Defendants at 10:30 p.m. that Decedent had fallen and struck his head;

j. Failing to emergently transport Decedent to the hospital on June 27, 2013, when it was known to all Defendants at 10:30 p.m. that Decedent was exhibiting signs of serious illness and / or medical complications of his injuries;

k. Failing to emergently transport Decedent to the hospital on June 27, 2013, when it was known to all Defendants at 10:30 p.m. that Decedent had fallen and struck his head;

l. Failing to properly train and supervise the individuals within the aforementioned facility having custodial and/or care giving responsibilities over Decedent to ensure Decedent's serious medical needs were timely and properly tended to, and to ensure the above breaches / deviations were not committed.

63.    That the above described conduct of the Defendants, as specifically set forth above, was the proximate cause of Plaintiff's Decedent's death and other injuries and damages to him and his Estate, including but not limited to the following:

a.    Death;

b.    Reasonable medical, hospital, funeral and burial expenses;

c.    Conscious pain and suffering, physical and emotional;

d.    Humiliation and / or mortification;

e.    Mental anguish;

f.    Economic damages;

g.    Loss of love, society, and companionship;

FIEGER, FIEGER, KENNEY & HARRINGTON, P.C. • A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD • SOUTHFIELD MICHIGAN 48075 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

{00369345.DOCX}                                    12

h.    Loss of gifts, gratuities, and other items of economic value;

i.    Parental guidance, training, and support;

j.    Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

k.    Attorney fees and costs pursuant to 42 USC § 1988;

l.    Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, *et seq.*

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against Defendants, jointly and severally, and award an amount in excess of Seventy Five Thousand ($75,000.00) Dollars exclusive of costs, interest, attorney fees, as well as punitive and exemplary damages.

## COUNT II

### STATE LAW CLAIMS OF GROSS NEGLIGENCE, AND/OR WANTON AND WILLFUL MISCONDUCT

### ALL DEFENDANTS

64.    Plaintiff hereby restates and re-alleges each and every allegation contained in paragraphs one through sixty-three (63) as if fully set forth herein.

65.    That all Defendants had knowledge of each and every factual allegation set forth above.

66.    That in taking custody of Plaintiff's Decedent, all Defendants undertook and owed a duty to Decedent to make reasonable efforts to care for him in a reasonable and prudent manner, to exercise due care and caution, and in such operation as the rules of the common law

FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.  •  A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD • SOUTHFIELD MICHIGAN 48075 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

require and in accordance with the customs, policies and procedures of the City of Detroit and / or the Detroit Police Department.

67.    That notwithstanding the aforementioned duties, the aforementioned Defendants took into custody, incarcerated, and monitored Decedent in an extremely careless, grossly negligent, reckless, and wanton and willful manner without concern whatsoever for his safety and welfare, and failed to tend to Decedent's serious medical needs, including, but not limited to, the following particulars by way of illustration and not limitation:

    a. Disregarding the discharge instructions provided by Decedent's physician upon his discharge from the hospital on June 25, 2013, which specifically stated that medical care was required if the Decedent's developed redness, pain or swelling in his injured right arm;

    b. Observing and disregarding Decedent's obviously infected and septic condition prior to June 27, 2013 at 9:30 p.m.;

    c. Failing to obtain follow-up medical care for Decedent's obviously infected and septic condition, despite physician directives to do so, prior to June 27, 2013 at 9:30 p.m.;

    d. In the alternative, failing to observe and check on Decedent after placing him in his cell on June 25, 2013, despite all Defendants knowing that Decedent had suffered serious injuries at or around the time of his arrest, causing delay in treatment of Decedent's infected and septic condition;

    e. Failing to request follow up medical care and assistance for Decedent following his June 25, 2013 arrest and booking, despite all Defendants knowing that Decedent had suffered serious injuries at or around the time of his arrest;

    f. Failing to provide follow up medical care and assistance for Decedent following his June 25, 2013 arrest and booking, despite all Defendants knowing that Decedent had suffered serious injuries at or around the time of his arrest;

    g. Failing to transfer patient to a physician or hospital for further workup, monitoring, observation, and supportive measures, despite all Defendants knowing that Decedent had suffered serious injuries at or around the time of his arrest;

FIEGER, FIEGER, KENNEY& HARRINGTON, P.C.  •  A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

FIEGER, FIEGER, KENNEY & HARRINGTON, P.C. • A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD • SOUTHFIELD MICHIGAN 48075 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

h. Failing to immediately call EMS on the night of June 27, 2013, when it was known to all Defendants at 10:30 p.m. that Decedent was exhibiting signs of serious illness and / or medical complications of his injuries;

i. Failing to immediately call EMS on the night of June 27, 2013, when it was known to all Defendants at 10:30 p.m. that Decedent had fallen and struck his head;

j. Failing to emergently transport Decedent to the hospital on June 27, 2013, when it was known to all Defendants at 10:30 p.m. that Decedent was exhibiting signs of serious illness and / or medical complications of his injuries;

k. Failing to emergently transport Decedent to the hospital on June 27, 2013, when it was known to all Defendants at 10:30 p.m. that Decedent had fallen and struck his head;

l. Failing to properly train and supervise the individuals within the aforementioned facility having custodial and/or care giving responsibilities over Decedent to ensure Decedent's serious medical needs were timely and properly tended to, and to ensure the above breaches / deviations were not committed.

68.    That the above described actions and/or inactions violated MCL 691.1407 in that they amounted to gross negligence, specifically conduct so reckless as to demonstrate a substantial disregard for whether an injury resulted, to assault and battery, and/or false imprisonment.

69.    That the above described conduct of the Defendants, as specifically set forth above, was the proximate cause of Plaintiff's Decedent's death and other injuries and damages to her and her Estate, including but not limited to the following:

a.    Death;

b.    Reasonable medical, hospital, funeral and burial expenses;

c.    Conscious pain and suffering, physical and emotional;

d.    Humiliation and / or mortification;

e.    Mental anguish;

(00369345.DOCX)                    15

f.      Economic damages;

g.      Loss of love, society, and companionship;

h.      Loss of gifts, gratuities, and other items of economic value;

i.      Parental guidance, training, and support;

j.      Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

k.      Attorney fees and costs pursuant to 42 USC § 1988;

l.      Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, *et seq.*

WHEREFORE, Plaintiff requests that this Honorable Court enter a Judgment in favor of Plaintiff and against Defendants in an amount in excess of Seventy Five Thousand ($75,000.00) Dollars, plus costs, interest and attorney fees.

## COUNT III

### 42 U.S.C. § 1983 – SUPERVISORY LIABILITY

### DEFENDANTS CITY OF DETROIT, DETROIT POLICE DEPARTMENT, AND MOUNSEY, JOHNSON, KNOX, ROBINSON, BAKER, BRUENTON, O'KEEFE, NEWKIRK, and MCWHORTER

70.     Plaintiff hereby restates and re-alleges each and every allegation contained in paragraphs one through sixty nine (69) as if fully set forth herein.

71.     At all times relevant, Defendants CITY OF DETROIT, DETROIT POLICE DEPARTMENT, and MOUNSEY, JOHNSON, KNOX, ROBINSON, BAKER, BRUENTON, O'KEEFE, NEWKIRK, and MCWHORTER participated in training and/or encouraging police

FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.  •  A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD • SOUTHFIELD MICHIGAN 48075 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

(00369345.DOCX)                16

officers to enforce federal and state law without regard to the constitutional rights of citizens to be free from violations of the 8th and 14th Amendments to the United States Constitution.

72.   At all times relevant, Defendants CITY OF DETROIT, DETROIT POLICE DEPARTMENT, and MOUNSEY, JOHNSON, KNOX, ROBINSON, BAKER, BRUENTON, O'KEEFE, NEWKIRK, and MCWHORTER refused to provide police officers any training with regard to the constitutional rights of citizens to be free from violations of the 8th and 14th Amendments to the United States Constitution; refused to provide police officers with copies of the Detroit Police Department policies and procedures, and refused to show the police officers where to locate copies of the City of Detroit and / or Detroit Police Department policies and procedures.

73.   At all times relevant, Defendants CITY OF DETROIT, DETROIT POLICE DEPARTMENT, and MOUNSEY, JOHNSON, KNOX, ROBINSON, BAKER, BRUENTON, O'KEEFE, NEWKIRK, and MCWHORTER knew or should have known that the training and supervision of police officers was inadequate for the tasks that each individual was performing, as described in the preceding paragraphs.

74.   At all times relevant, there was a complete failure to train and supervise police officers and/or the training and supervision of the police officers was so reckless that future violations of the constitutional rights of citizens to be free from violations of the 8th and 14th Amendments to the United States Constitution, as described in the preceding paragraphs, were likely to occur.

75.   At all times relevant, Defendants CITY OF DETROIT, DETROIT POLICE DEPARTMENT, and MOUNSEY, JOHNSON, KNOX, ROBINSON, BAKER, BRUENTON, O'KEEFE, NEWKIRK, and MCWHORTER were on notice that the training and/or supervision

FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.  •  A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD • SOUTHFIELD MICHIGAN 48075 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

of police officers with regard to the constitutional rights of citizens to be free from violations of the 8th and 14th Amendments to the United States Constitution was inadequate and reckless, as described in the preceding paragraphs.

76.     At all times relevant, Defendants CITY OF DETROIT, DETROIT POLICE DEPARTMENT, and MOUNSEY, JOHNSON, KNOX, ROBINSON, BAKER, BRUENTON, O'KEEFE, NEWKIRK, and MCWHORTER's response to this knowledge was so inadequate as to show a complete disregard for whether the police officers would violate the constitutional rights of citizens to be free from violations of the 8th and 14th Amendments to the United States Constitution.

77.     Defendants CITY OF DETROIT, DETROIT POLICE DEPARTMENT, and MOUNSEY, JOHNSON, KNOX, ROBINSON, BAKER, BRUENTON, O'KEEFE, NEWKIRK, and MCWHORTER implicitly authorized, approved, or knowingly acquiesced in the deliberate indifference to the serious medical needs and cruel and unusual punishment of citizens, and knew or should have known that such treatment would deprive them of their constitutional rights.

78.     At all times relevant, there was a clear and persistent pattern of violations of citizens' constitutional rights to be free from violations of the 8th and 14th Amendments to the United States Constitution, as described in the preceding paragraphs.

79.     At all times relevant, Defendants CITY OF DETROIT, DETROIT POLICE DEPARTMENT, and MOUNSEY, JOHNSON, KNOX, ROBINSON, BAKER, BRUENTON, O'KEEFE, NEWKIRK, and MCWHORTER knew or should have known that there was a clear and persistent pattern of violations of citizens' constitutional rights to be free from violations of

FIEGER, FIEGER, KENNEY & HARRINGTON, P.C. · A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD · SOUTHFIELD MICHIGAN 48075 · TELEPHONE (248) 355-5555 · FAX (248) 355-5148

the 8th and 14th Amendments to the United States Constitution, as described in the preceding paragraphs.

80.    Defendants CITY OF DETROIT, DETROIT POLICE DEPARTMENT, and MOUNSEY, JOHNSON, KNOX, ROBINSON, BAKER, BRUENTON, O'KEEFE, NEWKIRK, and MCWHORTER tolerated the police officers' repeated violations of the 8th and 14th Amendments to the United States Constitution, which allowed the police officers to continue to engage in this unlawful behavior.

81.    Defendants CITY OF DETROIT, DETROIT POLICE DEPARTMENT, and MOUNSEY, JOHNSON, KNOX, ROBINSON, BAKER, BRUENTON, O'KEEFE, NEWKIRK, and MCWHORTER refused to discipline police officers who violated citizens' constitutional rights to be free from violations of the 8th and 14th Amendments to the United States Constitution, failed to fully investigate allegations of misconduct, looked the other way and, thus, tacitly encouraged such behavior. In doing so, Defendants MOUNSEY, JOHNSON, KNOX, ROBINSON, BAKER, BRUENTON, O'KEEFE, NEWKIRK, and MCWHORTER condoned, ratified or encouraged the police officers to violate the 8th and 14th Amendments to the United States Constitution as a matter of policy.

82.    That the conduct of the aforementioned Defendants, individually, corporately and as agents of said individual Defendants, deprived Plaintiff's Decedent of his clearly established rights, privileges, and immunities guaranteed him under the United States Constitution, specifically those set forth under the 8th and 14th Amendments to same, as evidenced by the following particulars:

a.    Permitting Plaintiff's Decedent and other prisoners to be treated in a manner consistent with deliberate indifference to their serious medical needs;

b.    Failing to properly train and supervise the individuals within the aforementioned facility having custodial and/or care giving responsibilities over Decedent to

FIRGER, FIRGER, KENNEY& HARRINGTON, P.C. • A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD • SOUTHFIELD MICHIGAN 48075 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

ensure Decedent's serious medical needs, as well as that of other prisoners, were timely and properly tended to, and to ensure the above breaches / deviations were not committed.

c.  Tolerating the conduct of individuals within the aforementioned facility having custodial and/or care when it was apparent that there was a pattern of treatment of Decedent and other prisoners in a manner consistent with deliberate indifference to their serious medical needs;

d.  Failing to discipline the individuals within the aforementioned facility having custodial and/or care when it was apparent that they were treating Decedent and other prisoners in a manner consistent with deliberate indifference to their serious medical needs.

83.  That the above described conduct of the Defendants, as specifically set forth above, was the proximate cause of Plaintiff's Decedent's death and other injuries and damages to her and her Estate, including but not limited to the following:

a.  Death;

a.  Reasonable medical, hospital, funeral and burial expenses;

b.  Conscious pain and suffering, physical and emotional;

c.  Humiliation and / or mortification;

d.  Mental anguish;

e.  Economic damages;

f.  Loss of love, society, and companionship;

g.  Loss of gifts, gratuities, and other items of economic value;

h.  Parental guidance, training, and support;

i.  Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

j.  Attorney fees and costs pursuant to 42 USC § 1988;

k.  Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, *et seq.*

{00369345.DOCX}                                        20

FIEGER, FIEGER, KENNEY & HARRINGTON, P.C. · A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD · SOUTHFIELD MICHIGAN 48075 · TELEPHONE (248) 355-5555 · FAX (248) 355-5148

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against Defendants, jointly and severally, and award an amount in excess of Seventy Five Thousand ($75,000.00) Dollars exclusive of costs, interest, attorney fees, as well as punitive and exemplary damages.

## PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully submitted by:

Dated:   June 6, 2017

TODD J. WEGLARZ (P48035)
Attorneys for Plaintiff
19390 W. 10 Mile Road
Southfield, MI  48075
(248) 355-5555
(248) 355-5148 (fax)
t.weglarz@fiegerlaw.com

FIEGER, FIEGER, KENNEY & HARRINGTON, P.C. • A PROFESSIONAL CORPORATION
19390 WEST TEN MILE ROAD • SOUTHFIELD MICHIGAN 48075 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

{00369345.DOCX}

21

# EXHIBIT 6-2 – SUMMARY JUDGMENT MOTION

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**THOMAS SANDUSKY,** as P/R of Estate of **HAL SANDUSKY, Deceased**

               Plaintiff,

-vs-

**COMMANDER MOUNSEY, LT. JOHNSON, RICHARD KNOX, GERALD ROBINSON, MICHELLE BAKER, SGT. BRADY BRUENTON, SGT. JEFFREY O'KEEFE, SGT. DAVID NEWKIRK, SGT. MCWHORTER, SGT. STEVEN FORD, OFFICER BRIAN ROSS, OFFICER KEVIN ZAROSLY, OFFICER WILLIAM O'BRIEN, OFFICER YASMIN COOPER, OFFICER SHUNTA SMALL, OFFICER J. MORGAN, OFFICER BERRY, DETROIT POLICE DEPARTMENT, AND CITY OF DETROIT, a Municipal Corporation, Jointly and Severally,**

               Defendants.

Honorable Nancy G. Edmunds
Case No: 17-11784

_____/

| | |
|---|---|
| **GEOFFREY N. FIEGER (P30441)** | **KRYSTAL A CRITTENDON (P49981)** |
| **TODD J. WEGLARZ (P48035)** | **CHRISTINA V. KENNEDY (P68992)** |
| **FIEGER, FIEGER, KENNEY** | **CITY OF DETROIT LAW DEPT.** |
|    **& HARRINGTON** | Attorneys for Defendants |
| Attorneys for Plaintiff | 2 Woodward Ave., Suite 500 |
| 19390 West Ten Mile Rd. | Detroit, MI  48226 |
| Southfield, MI  48075 | (313) 237-3031 (Phone) |
| (248) 355-5555 (Phone) | critk@detroitmi.gov |
| t.weglarz@fiegerlaw.com | kennedych@detroitmi.gov |

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    **NOW COME** Defendants, CITY OF DETROIT, DETROIT POLICE

DEPARTMENT and Several DETROIT POLICE OFFICERS (identified in

caption), by their undersigned counsel, state the following as their Motion For Summary Judgment brought pursuant to FR Civ P 56:

1.     This is a §1983 action in which Plaintiff, as Personal Representative, alleges in Count I, Eighth and Fourteenth Amendment violations of his decedent's constitutional rights as a result of Plaintiff's decedent's death after being in the custody of the Detroit Police Department.  In Count II, Plaintiff alleges state tort claims against Defendants for gross negligence and/or wanton and willful misconduct.  In Count III,  Plaintiff claims that Defendant City of Detroit and nine (9) Defendant Police Officers have supervisory liability pursuant to 42 USC § 1983 for alleged violations of the Eighth and Fourteenth Amendments to the United States Constitution.

2.     The discovery deadline was May 1, 2018 and the dispositive motion deadline is June 1, 2018 and Plaintiff has not taken the deposition of any of the seventeen (17) named Defendants.

3.     Relative to Counts I and III, a plaintiff seeking to impose liability on a municipality under § 1983 must identify an underlying municipal policy or custom causing the alleged injury.   Pembauer v Cincinnati, 475 US 469 (1986). A municipality may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may be

2

said to fairly represent official policy, inflicts the injury". <u>Monell</u> v <u>New York</u> <u>Department of Social Services</u>, 436 US 685; 98 SCt 2018; 56 LEd 611(1978).  The policy or custom must be ***the*** "moving force" behind the constitutional deprivation. <u>City of Canton</u> v <u>Harris</u>, 489 US 378 (1989); <u>Searcy</u> v <u>City of Dayton</u>, 38 F3d 282 (CA 6, 1994).

4.    It is undisputed the City of Detroit did not have a policy or custom, promulgated by a policymaker, which was the moving force behind Plaintiff Decedent's alleged constitutional deprivation.    Therefore, the City of Detroit is entitled to summary judgment as a matter of law.

5.     Moreover, with respect to the constitutional claims asserted against the defendant police officers, pursuant to 42 U.S.C. § 1983, a police officer who acts in good faith in performing his job duties is entitled to qualified immunity from the imposition of liability.

6.    A governmental officer must violate an individual's clearly established constitutional rights before the defense of qualified immunity is unavailable to the official, so long as the officer believed his or her conduct did not violate those rights and  the officer's belief was objectively reasonable.  <u>Davis</u> v <u>Sherer</u>, 468 U.S. 183, <u>reh</u> <u>den</u> 468 U.S. 1226 (1984).

3

7.     In the case at hand, Plaintiff has not established and cannot establish that the individually-named defendants violated any of his decedent's constitutionally protected rights.

8.     With respect to Count II, Defendant City of Detroit is immune from liability regarding Plaintiff's state tort claims and no exception to immunity is applicable. MCL 691.1401 <u>et. seq.</u>

9.     Regarding the individually-named defendant police officers, the Governmental Immunity Act at MCL 691.1407 provides that employees of governmental agencies are immune from the imposition of tort liability arising out of the exercise or discharge of a governmental function unless their conduct arises to the level of "gross negligence."  MCL 619.1407(2)(c).

10.     Specifically, the rule provides, that a governmental employee is immune from the imposition of liability, so long as, "(c) The... employee's... conduct does not amount to gross negligence that is ***the proximate cause*** of the injury or damage."  MCL 619.1407(2)(c).  (Emphasis added).

11.     A plaintiff must establish that a government employee acted in some grossly negligent manner which proximately caused Plaintiff's injuries. <u>McMillan</u> v <u>State Highway Comm.</u>, 426 Mich 46, 51 (1986).

4

12.     The phrase "the proximate cause" as used in the employee provision of the governmental immunity act, MCL 691.1407(2), means the one most immediate, efficient, and direct cause preceding an injury, not "a proximate cause." Robinson v City of Detroit, 462 Mich 439, reh den (2000).

13.     In the case at hand, "the one most immediate, efficient, and direct cause preceding" the decedent's death was cardiac arrest, and not any actions (or inactions) of the individually-named Defendants.

14.     Finally, Plaintiff's claims against the City of Detroit Police Department must be dismissed because the Department is not an entity amenable to suit. McPherson v Fitzpatrick, 63 Mich App 461; 234 NW2d 566 (1975).

15.     Pursuant to FR Civ P 56, "... judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law".

**WHEREFORE** Defendants, CITY OF DETROIT, DETROIT POLICE DEPARTMENT and DETROIT POLICE DEPARTMENT, respectfully request that this honorable Court enter an order for summary judgment and dismiss all of Plaintiffs' claims against Defendants with prejudice.

5

Respectfully submitted,

CITY OF DETROIT LAW DEPARTMENT

***S/ Krystal A. Crittendon***
KRYSTAL A. CRITTENDON (P49981)
Attorney for Defendants
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Detroit, MI 48226
(313) 237-3031
critk@detroitmi.gov

Dated:      May10, 2018

6

# **Table of Contents**

Table of Contents ...................................................................... i

Index of Authorities ................................................................... ii

Statement of Issues Presented .....................................................

Introduction ...........................................................................

Statement of Material Facts ........................................................

Standard of Review ..................................................................

Argument..............................................................................

A.    Defendant City of Detroit is Entitled to Judgment As a Matter of Law Because It Is Undisputed that No City of Detroit Custom, Police or Practice, Promulgated By A Policymaker, was the Moving Force Behind Plaintiff's Decedent's Injury…………………………………………………………… 6

B.    The Individually-Named Defendants Are Entitled to Qualified Good Faith Immunity from the Imposition of Liability on Plaintiff's Federal Claims Pursuant to 42 USC § 1983 …..………………………………………………..… 12

C.    Defendant City of Detroit is Entitled to Judgment As a Matter of law Regarding Plaintiff's State Tort Claim Because It is Immune From Liability Pursuant to MCL 691.1401 et. seq. and No Exception is Applicable………………………………..… 19

D.    The Actions, or Inactions, of the Individually-Named Defendants were not "the proximate Cause" of the Decedent's Death; these Defendants, therefore, are Entitled to Summary Disposition as a matter of Law Pursuant to the Governmental Immunity Act, MCL691.1407 and Michigan case law …………………… 20

E.    Defendant Detroit Police Department is Entitled to Judgment as a Matter of law Because it is Not Amenable to Suit ……….. 24

Conclusion ……………………………………………………… 25

i

# Index of Authorities

## Cases

Anderson v Creighton, 483 U.S. 635; 107 S. Ct. 3034; 97 L. Ed. 2d 523 (1987)……………………………………………………………………13, 14

Anderson v Liberty Lobby, 477 U.S. 242 (1986) ………………………..……. 7

Celotex Corp v Caltrett, 477 US 317, 322; 106 SCt 2548; 91 LEd 2d 265 (1986)……………………………………………………………………7, 9, 10

City of Canton v Harris, 489 US 378 (1989) …………………………………… 8

Davey v Tomlinson, 627 F. Supp. 1455, 1465 (1986) …………………………..13

Davis v Scherer, 486 U.S. 183; 104 S. Ct. 3012; 82 L. Ed. 2d 139 (1984) …........14

Dedes v Asche, 446 Mich 99 (1984) ………………………………………… 22

Dominige v Telb, 831 F.2d 673 (1987) ………………………………… 13, 14

Donta v. Hooper, 774 F.2d 716 (1985) ………………………………………..13

Farmer v Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)……………………………………………………………………… 16

Garretson v City of Madison Heights, 407 F.3d 789, 797 (6th Cir.2005)……………………………………………………………………16, 17

German v Killeen, 495 F.Supp. 822 (D.Mich 1980) …………………………….. 5

Graham v Connor, 490 US 386; 109 SCt 1865; 104 LEd2d 443 (1989) ………… 11

Harlow v Fitzgerald, 457 U.S. 800; 102 S. Ct. 2727; 73 L. Ed. 2d 396 (1982)……12

Hiland Dairy Co. v Kroger Co., 402 F.2d 968 (8th Cir. 1968), cert. denied, 395 U.S. 961…………………………………………………………………………… 5

ii

Holt v Artic, 843 F.2d 242 (1988) ………………………………………… 13

Improvement Co. v Munson, 14 Wall 442, 20 L.Ed.967 (1872)…………………11

Jaroslawicz v Seedman, 528 F.2d 727 (2d Cir. 1975) …………………………… 6

Kennedy v City of Cleveland, 797 F.2d 199 (1986) ……………………………..13

Lozo v Lyncy, 625 F Supp 950, 953 (D. Conn 9186) …………………………… 8

Pembauer v Cincinnati, 475 US 469 (1986) ……………………………………... 8

Poe v Haydon, 853 F.2d 418 (1988) ……………………………………13, 14

Malley v Briggs, 106 S. Ct. 1092 (1986) ………………………………………… 13

Meredith v Hardy, 554 F.2d 764 (5th Cir. 1977) …………………………….. 6

McPherson v Fitzpatrick, 63 Mich App 461; 234 NW2d 566 (1975) …………… 25

Michigan Hospital Association v Department of Social Services, 738 F.Supp. 1080 (D.Mich. 1990) …………………………………………………………………… 5

Mitchell v Forsyth, 472 U.S. 511; 105 S. Ct. 2806; 86 L. Ed. 2d 411 (1985)…… 15

Monell v New York Department of Social Services, 436 US 685; 98 SCt 2018; 56 LEd 611(1978) ………………………………………………………..…… 7,8

Moomey v City of Holland, 490 F.Supp. 188 (W.D. Mich. 1980) ……………... 25

Moore v City of Detroit, 128 Mich App 491, appeal denied, 222 Mich 891(1983)……………………………………………………………………… 21

Oklahoma City v Tuttle, 471, US 808, 85 L Ed2d 791, 105 S.Ct 2427 (1985) ……………………………………………………………………………….. 7

Pembauer v Cincinnati, 475 US 469 (1986)……………………………………….. 8

iii

Poe v Haydon, 853 F.2d 418 (1988) ……………………………………………13

Robinson v Bibb, 840 F.2d 349 C.A. 6, 1987)………………………………… 14

Robinson v City of Detroit, 462 Mich 439, reh den (2000) ……………………… 22

Robinson v Via, 821 R.2d 913, 920-921 (C.A. 2, 1987) ……………………….. 15

Ross v Consumers Power Co. (On Rehearing), 420 Mich 567; 363 NW 2d 641 (1984)………………………………………………………………………… 19, 20

Ruiz-Bueno v Scott, 639 Fed.Appx. 354 (2016) …………………………………16

Searcy v City of Dayton, 38 F3d 282 (CA 6, 1994) ……………………………… 8

Street v J.C. Bradford & Co., 886 F2d 1472, 1479-80 (CA 6, 1989) …………..6, 7

Sudul v City of Hamtramck, 221 Mich App 455; 562 NW2d 478 (1997)………. 19

Summers v Leis, 368 F.3d 881, 886 (6th Cir. 2004) ……………………………… 5

Walker Distributing Co. v Lucky Lager Brewing, 323 F.2d (9th Cir. 1963) ……… 5

**Federal Court Rules**

Federal Rule of Civil Procedure 12(b)(6)………………………………………13

Federal Rule of Civil Procedure 56………..……………………………5, 6, 9, 10

**Statutes**

42 USC § 1983…………………………………………………………….... 7, 8, 9

MCL 691.1401 et. seq…………………………………………………19, 20, 22

iv

## I.   <u>Statement of Issues Presented</u>

A governmental agency, such as the City of Detroit, may be held liable for the deprivation of an individual's federal constitutional rights only where, through the implementation of the agency's policies, customs, or practices, the agency directly causes such deprivation. In the absence of any evidence establishing the existence of a City policy, custom, or practice causally related to an alleged deprivation, do Plaintiff's federal constitutional claims fail?

Pursuant to 42 U.S.C. § 1983, a police officer who acts in good faith in performing his job duties is entitled to qualified immunity from the imposition of liability. A governmental officer must violate an individual's clearly established constitutional rights before the defense of qualified immunity is unavailable to the official, so long as the officer believed his or her conduct did not violate those rights and  the officer's belief was objectively reasonable.   Plaintiff has not established that the individually-named defendant Police Officers violated any clearly established constitutional rights.   In the absence of such a showing, can the defendant Police officers held liable for alleged constitutional deprivations or are they qualifiedly immune from the imposition of liability pursuant to 42 U.S.C. § 1983?

Pursuant to the Governmental Immunity Act at MCLA 691.1407, all governmental agencies shall be immune from tort liability in all cases wherein the governmental agency is engaged in the exercise or discharge of a governmental function," except as otherwise provided in the Act. In Michigan, the operation of a police department is a "governmental function."  The Act further provides that there are only four, statutory exceptions to a governmental agency's immunity from the imposition of

v

tort liability.  The City of Detroit, as a governmental agency, is immune from the imposition of tort liability on claims of Gross Negligence.   Moreover, with the exception of the negligent operation of a motor vehicle exception to governmental immunity, a municipality is not vicariously liable for the actions of its employees.  May a Plaintiff hold a governmental agency liable on a state tort theory of liability which is not an exception to the Governmental Immunity Act?

Pursuant to the Governmental Immunity Act, a governmental employee acting within the scope of his or her authority and engaged in the exercise or discharge of a governmental function is immune from the imposition of liability for negligent acts unless their conduct arises to the level of "gross negligence."  MCL 691.1407, provides that a governmental employee, acting on behalf of a governmental agency and while in the course of employment, can only be liable for injuries if his conduct is "*the* proximate cause" of a plaintiff's injury.  The Michigan Supreme Court has held that as used in the employee provision of the Governmental Immunity Act, MCL 691.1407(2), "*the* proximate cause" means the one most immediate, efficient, and direct cause preceding an injury, not "a proximate cause.  If an individual's alleged "gross negligence" is not the "most immediate, efficient, and direct cause preceding an injury," then may an alleged injured party still hold that individual liable on a gross negligence theory of liability pursuant to MCL 691.1407?

The relationship between the City of Detroit, creature of Michigan law, and its Police Department is governed by Michigan law.  Pursuant to that law, the Police Department, as a sub-entity of the municipal corporation, lacks status as a distinct entity and, therefore, cannot sue or be sued.  Given that prohibition, may a plaintiff maintain a cause of action against the Detroit Police Department?

vi

## II.   **Introduction**

Plaintiff brings this cause of action as the Personal Representative of his father's estate,  claiming 42 USC § 1983 civil rights and violations of the Eighth and Fourteenth Amendments to the United States Constitution arising out of Plaintiff's Decedent's death while in the custody of the Detroit Police Department.  It is undisputed the City of Detroit did not have a policy or custom, promulgated by a policymaker, which was the moving force behind Plaintiff's Decedent's alleged constitutional deprivation.  It is also undisputed City of Detroit is immune regarding Plaintiff's state tort claims and the City of Detroit Police Department, a sub-entity of City of Detroit, is not amenable to suit. Further, with respect to the constitutional claims asserted against the defendant police officers, all Defendants acted in good faith in performing their job duties and did not violate any of the decedent's clearly established constitutional rights.  The individually-named Defendants are, therefore, entitled to qualified immunity from the imposition of liability.  Finally, the defendant police officers cannot be held liable on Plaintiff's gross negligence claim because their alleged negligence is not "the" proximate cause of the decedent's death. Therefore, Defendants are entitled to summary judgment as a matter of law and this cause of action must be dismissed with prejudice.

## DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

**NOW COME** Defendants, CITY OF DETROIT, DETROIT POLICE DEPARTMENT and Several DETROIT POLICE OFFICERS (identified in caption), by their undersigned counsel, state the following as their Brief in Support of their Motion For Summary Judgment brought pursuant to FR Civ P 56:

### III.   Statement of Material Facts

On June 25, 2013, Plaintiff's Decedent, Hal Sandusky, physically attacked his live-in girlfriend, Stephanie Tullos, at their home in the City of Detroit.   After the assault, Mr. Sandusky left the home, but returned and banged on the door so hard that he broke a window and cut his right arm.  He then gained entry into the home and armed with a knife, grabbed Ms. Tullos from behind by the hair, placed the knife to her throat and threatened to kill her.  Three occupants of the home, Alberto Jackson, Michael Rodriguez and Lewis Angel, struggled with Mr. Sandusky in an effort to prevent Ms. Tullos from being stabbed.  The fight erupted into the street. During the struggle, Ms. Tullos' brother hit Mr. Sandusky in the head with a baseball bat.  Ms. Tullos and several witnesses then flagged down Detroit Police Department ("DPD") Officers Brian Ross and Gregory McWhorter who had been dispatched to the location when one of the witnesses called 911.  (See Exhibit A – DPD Arrest Report of Ross and McWhorter).

Officers Ross and McWhorter observed lacerations and blood on Mr. Sandusky's arm and head and conveyed him to Detroit Receiving Hospital.  Plaintiff

was treated in the emergency room by Dr. Sarah E. Albers, M.D., his laceration was sutured, the site was irrigated, he was given an antibiotic dressing and was discharged back into the custody of the Detroit Police Department and taken to the DPD Second Precinct.  (See Exhibit B – Detroit Receiving Hospital records).

On June 26, 2013, Mr. Sandusky was interrogated by members of DPD's Domestic Violence Unit.  An Investigator's Report was prepared and was then reviewed and signed by DPD Sergeant Richard Knox. The warrant which was presented to the Wayne County Prosecutor's Office recommended that Mr. Sandusky be charged with Felonious Assault, Larceny from Person and Assault and Battery.  Mr. Sandusky, therefore, remained in DPD custody.  (See Exhibit C – Investigator's Report).

On June 27, 2013, Police Officer Shunta Small and Sergeant David Newkirk were working in the cell block of the DPD Second Precinct.  At approximately 10:30 p.m., the officers were told that Mr. Sandusky had fallen in his cell.  Officer Small and Sergeant Newkirk went to check on him and found him breathing, but not responsive to commands.  Sergeant Newkirk contacted DPD Communications and Sergeant Brady Bruenton ordered a DPD vehicle to transport Mr. Sandusky to the hospital.  Before Mr. Sandusky could be transported he became unresponsive. Officer William O'Brien, Officer Small and Sergeant Newkirk immediately began to administer Cardio Pulmonary Resuscitation ("CPR") to Mr. Sandusky.

2

Lieutenant Dennis Johnson ordered an Emergency Medical Services (EMS) unit to be dispatched to the Second Precinct. (See Exhibit D – DPD Police Report of David Newkirk).

While the Police Officers were waiting for the EMS unit to arrive, Officer O'Brien retrieved an Automatic Defibrillator and gave it to Sergeant Newkirk, who was still administering CPR with Officers Small. Sergeant Newkirk administered automatic defibrillation and after several minutes when resuscitation efforts failed, Sergeant Newkirk and Officers O'Brien, Leon Berry and Ian Wincher extracted Mr. Sandusky from his holding cell and carried him to the precinct garage, where he was placed inside a scout car and readied for transport to the hospital. While Sergeant Newkirk was continuing CPR, an EMS unit arrived and began rendering aid. Mr. Sandusky was transferred to the EMS unit and transported to Sinai-Grace Hospital, where he was given and EKG which demonstrated to the emergency room physicians that Plaintiff was suffering from "cardiac arrest." The Cardio Team was consulted, but Plaintiff was later pronounced dead. (See Exhibit E – Sinai-Grace Hospital record).

On June 29, 2013, Assistant Wayne County Medical Examiner Avneesh Gupta, M.D. performed an autopsy on Mr. Sandusky. He concluded that a culture taken of Mr. Sandusky's blood was positive for cocci (streptococcus pyogenes

3

serogroup A), that the tissue surrounding his lacerated wounds on the right arm/elbow showed evidence of infection and sepsis and that the manner of death was accidental. (See Exhibit F – Wayne County Medical Examiner's Autopsy Report of Hal Sandusky). Dr. Gupta also noted that Mr. Sandusky had a normal platelet count. He further noted that Mr. Sandusky had a 420 gm enlarged heart, that the aorta had mild athrosclerosis and that the left ventricle was hypertrophied. Despite the normal platelet count and irregular findings regarding Mr. Sandusky's enlarged heart and left ventricle, Dr. Gupta attributed infection and sepsis as the cause of death. Defendants experts have opined that Mr. Sandusky died of cardiac arrest, and not sepsis. (See Exhibit G – Report of Dr. Ernest P. Chiodo, M.D.).

Mr. Sandusky's son, Thomas Sandusky, has now filed the instant lawsuit as Personal Representative of Hal Sandusky's estate against the City of Detroit, the Detroit Police Department and seventeen (17) DPD Police Officers. Defendants filed a Notice of Non-Party Fault against Sinai-Grace Hospital and Dr. Sarah E. Albers, M.D., the physician who treated the decedent for his injuries and released the decedent back into DPD custody. Plaintiff has not sought to add either Sinai-Grace Hospital or Dr. Albers as party-defendants. None of the Defendants have been deposed and discovery is now closed. For the following reasons, Plaintiff's claims against all Defendants must fail.

4

## IV.    Authority
## The FRCP 12(b)(6) and 56 Predicates

Any pleading which sets forth a claim for relief may be challenged by a Rule 12(b)(6) motion.  Walker Distributing Co. v Lucky Lager Brewing, 323 F.2d (9th Cir. 1963).    Such a motion tests the legal sufficiency of the pleading. German v Killeen, 495 F.Supp. 822 (D.Mich 1980).  Consequently, the court must limit its inquiry to the pleading alone.  Michigan Hospital Association v Department of Social Services, 738 F.Supp. 1080 (D.Mich. 1990).  Rule 12(b)(6) motions serve a useful purpose in disposing of legal issues with a minimum of time and expense to the parties.  Hiland Dairy Co. v Kroger Co., 402 F.2d 968 (8th Cir. 1968), cert. denied, 395 U.S. 961.

In accordance with FRCP 56, any party may move for summary judgement on the ground there is no genuine issue of fact, and when as a consequence, judgment is proper as a matter of law.  Various matters in addition to the pleadings may be considered in connection with an FRCP 56 summary judgment motion.  Such matters may include affidavits, depositions, answers to interrogatories, and admissions, and oral testimony.  Federal Rule of Civil Procedure 56(e), 56(c) and 43(e).  A district court may not delay in deciding whether officers are entitled to qualified immunity if the defense is properly raised prior to discovery.  Summers v Leis, 368 F.3d 881, 886 (6th Cir. 2004).

In deciding an FRCP 56 motion, the court must concern itself solely with the existence of any genuine issue of material fact, and must view the pleadings, the supporting matters, and all reasonable inference drawn therefrom in the light most favorable to the non-moving party.  <u>Jaroslawicz</u> v <u>Seedman</u>, 528 F.2d 727 (2d Cir. 1975).  Consequently, when the pleadings, the supporting matters, and reasonable inferences demonstrate a material factual dispute, summary judgment is inappropriate.  <u>Meredith</u> v <u>Hardy</u>, 554 F.2d 764 (5th Cir. 1977).  Not every issue of fact or conflicting inference, however, presents a genuine issue of material fact requiring denial of an FRCP 56 summary judgment motion.  <u>Anderson</u> v <u>Liberty Lobby</u>, 477 U.S. 242 (1986).  Instead, the substantive law governing the case will determine what issues are material.  <u>Street</u> v <u>J.C. Bradford & Co.</u>, 886 F.2d 1472 (6th Cir. 1989).   The party opposing an FRCP 56 motion must also present more than a mere scintilla of affirmative evidence to establish a material factual dispute. <u>Street</u> v <u>J.C. Bradford & Co.</u>, <u>Id</u>.  A simple showing of some degree of metaphysical doubt regarding the material facts is insufficient.  <u>Street</u> v <u>J.C. Bradford & Co.</u>, <u>Id</u>.

## V.    <u>Argument</u>

**A.    Defendant City of Detroit is Entitled to Judgment As a Matter of Law Because It Is Undisputed that No City of Detroit Custom, Police or Practice, Promulgated By A Policymaker, was the Moving Force Behind Plaintiff's Decedent's Injury.**

Summary judgment is proper "if the pleadings, depositions, answers to

6

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FR Civ P 56 (c). The plain language of Rule 56(c) mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. Celotex Corp v Caltrett, 477 US 317, 322; 106 SCt 2548; 91 LEd 2d 265 (1986). The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Street v J.C. Bradford & Co., 886 F2d 1472, 1479-80 (CA 6, 1989).

The City of Detroit cannot be held vicariously liable under Section 1983 for an alleged violation of rights protected by the U.S. Constitution. Monell v New York City Dept. of Social Services, 436 US 658 (1978). Rather, a plaintiff must plead and prove that his injury was caused by action taken "pursuant to official municipal policy of some nature." Id. at 691. In Oklahoma City v Tuttle, 471, US 808, 85 L Ed2d 791, 105 S.Ct 2427 (1985), the Supreme Court held that the mere occurrence of a constitutional violation of an officer of a municipality is insufficient to show the existence of a municipal policy underlying the violation.

7

A plaintiff seeking to impose liability on a municipality under § 1983 must identify an underlying municipal policy or custom causing the alleged injury. Pembauer v Cincinnati, 475 US 469 (1986). A municipality may be liable under § 1983 only when execution of a government's policy or custom whether made by its lawmakers or by those whose edicts may be said to fairly represent official policy, inflicts the injury. Monell, supra. The policy or custom must be *the* "moving force" behind the constitutional deprivation. City of Canton v Harris, 489 US 378 (1989); Searcy v City of Dayton, 38 F3d 282 (CA 6, 1994).

For a plaintiff to prevail on a claim against a municipality brought pursuant to Section 1983, he cannot merely to allege in conclusory terms the existence of a wrongful policy; he must set "forth facts showing the existence of the offending custom or policy." Lozo v Lyncy, 625 F Supp 950, 953 (D. Conn 9186). Monell did not create a no-fault system of municipal liability for constitutional violations. That is to say, a municipal policy or custom must itself be wrongful before it can serve as the basis for municipal liability.

The Supreme Court held in City of Canton, supra, that a failure to train its police officers can give rise to municipal liability" only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact ... Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality - a 'policy' as defined by our prior cases - can a city be

8

liable for such failure under Sec. 1983." Id. at 388.

It is because of this fault element of municipal liability under Sec. 1983 that a plaintiff is required to identify the wrongful policy or custom underlying the alleged constitutional violation, not merely allege the existence of such a policy or custom in conclusory terms: a plaintiff cannot point to a wrongful policy or custom without identifying that policy or custom.

In the instant case, Plaintiff simply alleges that the officers deprived his decedent of his rights pursuant to an inadequate policy of the City of Detroit. The mere allegation of constitutional deprivation without legal or factual support will not withstand a Motion for Summary Judgment. Celotex Corp. v Cattnett, 477 US 317, 91 L.Ed.2d 265, 106 S. Ct 2548 (1986). Thus, Plaintiff fails to make a showing sufficient to establish the existence of an essential element, i.e., the alleged unconstitutional policy of the City of Detroit.

With reference to Fed.R.Civ.P.56, it is significant that the issue raised in the motion goes to the Plaintiff's case in chief rather than an affirmative defense and that the Plaintiff accordingly bears the burden of proof of that issue. In Celotex, supra, the Supreme Court noted that:

> ...the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party, who fails to make a showing sufficient to establish the

9

existence of an element essential to that party's case, and on which that party will bear the burden of proof at the trial.  In such a case there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.   The moving party is 'entitled to judgment as a matter of law' sufficient showing on an essential element of her case with respect to which she has the burden of proof.'   [T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict.   verdict under Federal Rule of Civil Procedure 50(a)...' [cite omitted] 91 L.Ed2d at 273-274.

The Court accordingly held that there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar material negating the opponent's claim" noting that" [o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses..." Id. at 274.  The Celotex holding was followed and developed in Anderson v Liberty Lobby, 477 U.S. 242, 91 L.Ed.2d 202, 106 S. Ct 2505 (1986), decided the same day as Celotex.  In Anderson, the Court emphasized that not just any issue of fact is sufficient to avoid summary judgment.  Rather, the issue must be both material and genuine.  A fact issue is material only if' it might affect the outcome of the suit under the governing law." 477 U.S. 248.  "Factual disputes that are irrelevant or unnecessary will not be counted." Id.  A fact issue is genuine only

10

if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." Id.  The Court pointed out that this standard mirror the standard

for a directed verdict under Federal Rule of Civil Procedure (50 (a)" Id. at 250.  It is

defined that standard by quoting from Improvement Co. v Munson, 14 Wall 442, 20

L.Ed.967 (1872):

> Nor are judges any longer required to submit a
> question to a jury merely because some evidence
> has been introduced by the party having the burden
> of proof, unless the evidence be of such a charter
> that it would warrant the jury in finding a verdict in
> favor of that party.  Formerly it was held that if there
> was what is called a scintilla, of evidence in support
> of a case the judge was bound to leave it to the jury,
> but recent decisions of high authority have
> established a more reasonable rule, that in every
> case, before the evidence is left to the jury, there is
> a preliminary question for the judge, not whether
> there is literally no evidence, but whether there is
> any upon which a jury could properly proceed to
> find a verdict for the party producing it, upon whom
> the onus of proof is imposed.

This motion, then, is essentially a challenge to Plaintiff, now that discovery is

closed, to marshall his evidence and show that he has a case that can be submitted

to a jury.  Plaintiff cannot produce any City of Detroit policy or custom which was

the moving force behind his decedent's death.  Graham v Connor, 490 US 386; 109

SCt 1865; 104 LEd2d 443 (1989).   Further, Plaintiff cannot show City of Detroit

has failed to train, supervise, investigate, or discipline police officers engaged in any

such unconstitutional conduct.  Even if such policies or customs did exist, Plaintiff cannot show that a policymaker implemented the policies or customs.   Further, Plaintiff cannot show that such a policy, implemented by a policymaker, was the moving force behind the officers' alleged unconstitutional acts.  Based on the discovery conducted, or lack thereof, in this case, it is undisputed that any alleged unconstitutional acts were not done in accordance with a City of Detroit policy. Plaintiff's constitutional claims against Defendant City of Detroit, therefore, must fail.

**B.    The Individually-Named Defendants Are Entitled to Qualified Good Faith Immunity from the Imposition of Liability on Plaintiff's Federal Claims Pursuant to 42 USC § 1983.**

The doctrine of qualified immunity holds that "governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v Fitzgerald, 457 U.S. 800; 102 S. Ct. 2727; 73 L. Ed. 2d 396 (1982).

There must be an objective analysis of the officers' action in light of the facts known in determining whether an officer is entitled to qualified immunity.  Id. Subjective factors of the officer's subjective state of mind such as bad faith or malice may not be considered and are irrelevant to the determination of the officers'

12

immunity.  Id.; Holt v Artic, 843 F.2d 242 (1988); Davey v Tomlinson, 627 F. Supp. 1455, 1465 (1986); Malley v Briggs, 106 S. Ct. 1092 (1986).

The resolution of the issue of whether the Defendants' conduct violated clearly established law is purely a matter of law for the court to determine.  Donta v. Hooper, 774 F.2d 716 (1985); Dominige v Telb, 831 F.2d 673 (1987).

A plaintiff seeking damages against a government official should normally include in his original complaint all of the factual allegations necessary to sustain a conclusion that his constitutional rights were violated, and also that these rights are so clearly established when the acts were committed that any officer in the defendants' position, measured objectively would have clearly understood that he was under an affirmative duty to have refrained from such conduct.  Anderson v Creighton, 483 U.S. 635; 107 S. Ct. 3034; 97 L. Ed. 2d 523 (1987); Poe v Haydon, 853 F.2d 418 (1988).  A plaintiff's failure to do so precludes him from proceeding further, even from engaging in discovery, since the plaintiff has failed to allege acts that are outside the scope of the defendant's immunity.  Kennedy v City of Cleveland, 797 F.2d 199 (1986).

Since the standard is the objective reasonableness of the officer's conduct, even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability "unless it is demonstrated that their conduct was

13

unreasonable under the objective applicable standard." <u>Davis</u> v <u>Scherer</u>, 486 U.S. 183; 104 S. Ct. 3012; 82 L. Ed. 2d 139 (1984).

A defendant may properly challenge the sufficiency of the complaint under F.R.C.P. 12(b)(6), on the basis that he was entitled to qualified immunity because the facts pleaded would not show that his conduct violated clearly established law of which a reasonable person would have known at the time. <u>Dominique</u>, supra at 831 F.2d 677. A defendant may also raise the issue on motion for summary judgment. <u>Id</u>.

In <u>Anderson</u> v <u>Creighton</u>, <u>supra</u>, the court held that whether an official protected by qualified immunity may be held personally liable for an alleged unlawful official action generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were `clearly established' at the time it.

In determining whether the law was clearly established, the court must look to federal constitutional, statutory and case law existing at the time. <u>Poe</u>, <u>supra</u>, 853 F.2d 424; and <u>Dominique</u>, supra at 831 F.2d 677. The key focus will be on the United States Supreme decisions and cases in this circuit (Sixth Circuit Court of Appeals) and then decisions from other circuits. See <u>Robinson</u> v <u>Bibb</u>, 840 F.2d 349 C.A. 6, 1987).

There are a number of ways in which a defendant official may establish a

14

defense of qualified immunity under Section 1983.  <u>Robinson</u> v <u>Via</u>, 821 R.2d 913, 920-921 (C.A. 2, 1987).

Even if the interest asserted by plaintiff was clearly of a type generally protected by federal law, the defendants are entitled to immunity as a matter of law if it was not clear at the time of the acts "that an exception did not permit those acts." <u>Id.</u>  For example, in <u>Mitchell</u> v <u>Forsyth</u>, 472 U.S. 511; 105 S. Ct. 2806; 86 L. Ed. 2d 411 (1985), the United States Attorney General was entitled to qualified immunity from a suit seeking damages for a warrantless wiretap because, although an individual's right to be free of intrusions was well established, there was, at the time of the challenged wiretap, a legitimate unresolved question as to the existence of national-security exception permitting such a wiretap.  If the contours of the plaintiff's federal rights and the police officer's permissible actions were clearly delineated at the time of the acts complained of, a police officer may enjoy qualified immunity if it was objectively reasonable for him to believe that his acts did not violate these rights.  <u>Id</u>.  This route focuses on the particular facts of the case and inferences and if it can be concluded that it was objectively reasonable for a police officer to believe that his acts did not violate those rights, then the officer is entitled to the defense.

The test for alleged violations of the Fourteenth Amendment has both an

15

objective and subjective component. Farmer v Brennan, 511 U.S. 825, 832, 114

S.Ct. 1970, 128 L.Ed.2d 811 (1994). In Ruiz-Bueno v Scott, 639 Fed.Appx. 354

(2016), fifty-three jail officials were sued for damages pursuant to § 1983 by the

administrator of the estate of a pretrial detainee who died of a preexisting heart

condition after one month in an Ohio correctional facility. In the 30 days before he

died, the decedent gained more than 30 pounds of fluid and his legs and feet became

swollen and blistered. Defendants moved for summary judgment, asserting, in part,

that they were entitled to qualified immunity from plaintiff's § 1983 claims. In

determining whether defendants acted with "deliberate indifference to the

substantial risk of serious harm," the Court, (citing Garretson v City of Madison

Heights, 407 F.3d 789, 797 (6th Cir.2005)), held that "critical to the subjective

inquiry is the requirement of specific evidence that *each individual defendant* acted

with deliberate indifference." Id. at 359. The Court held:

> Peterson's heart condition obviously constitutes an
> objective, substantial risk of serious harm, given that it
> ultimately caused his demise. But for the vast majority of
> the defendants - - none of whom are medical professionals
> - - there is no evidence that they were subjectively aware
> of this risk. Nothing in the record shows that they thought
> Peterson needed additional medical attention, and they
> reasonably relied on the judgment of numerous doctors
> and nurses , who saw Peterson at least three times a week,
> but were not aware of his heart condition. Id. at 359-60.

In concluding that all defendants were entitled to summary judgment, the appellate

16

court held that "the Fourteenth Amendment does not permit claims against jail officials for negligence, that is, claims regarding what jail officials *should have known or should have* done. Instead, it requires deliberate indifference to a known substantial risk of serious harm." Id. at 361-62.

In Garretson, supra, a pretrial detainee informed the booking police officers at the Madison Heights Police Department that she was an insulin-dependent diabetic and that she would need insulin on the night that she was arrested and taken to jail. She was not given insulin nor were arrangements made for it to be administered, despite claiming that she told more than one officer of her condition. She also claimed that she suffered symptoms of insulin deprivation and high blood sugar and that she knocked on the cell door to get assistance, with no response. Plaintiff was subsequently hospitalized for diabetic ketoacidosis.

The Court held that for Plaintiff to prevail on her claim that the defendant jail officers violated her Fourteenth Amendment rights by exhibiting a deliberate indifference to her medical needs, Plaintiff "must also show that the officers subjectively had a sufficiently culpable state of mind in denying [her] medical care." Id. at 797. "Thus, it is insufficient for Garretson to show 'a question of fact whether the police officers . . . should have known' that she was at risk of ketoacidosis or other diabetic illness, she must also show that they did know of her serious medical

17

conditions." Id. at 797.

In the case at hand, Defendants Brian Ross and Gregory McWhorter lawfully arrested Plaintiff's decedent and conveyed him to the hospital for medical treatment for injuries sustained during the commission of the assault for which the decedent was arrested. The hospital treated the patient and discharged him back into the custody of DPD. After tendering Mr. Sandusky into the custody of officers at the DPD's Second Precinct, Officers Ross and McWhorter had no further contact with Mr. Sandusky. Neither of these defendants did anything or failed to do anything that can even remotely be viewed as violative of any of Mr. Sandusky's constitutional rights.

Upon discovering Mr. Sandusky unconscious in his cell, Sergeants David Newkirk and Brady Bruenton and Officers Shunta Small and William O'Brien attempted to resuscitate Mr. Sandusky and prepared him for transport to the hospital when resuscitation efforts failed. Lieutenant Dennis Johnson called 911. It is unclear as to why the Plaintiff has sued the other twelve (12) Defendants or what Plaintiff alleges they did or failed to do that violated the decedent's constitutional rights. There is absolutely no evidence that any of the defendants knew or should have known of the fact that Mr. Sandusky was suffering from any significant medical conditions which posed a serious risk of harm. Thus, the individually-

18

named Defendants are entitled to good faith immunity from Plaintiff's claim that

they acted with deliberate indifference to the decedent's serious medical needs.

**C.    Defendant City of Detroit is Entitled to Judgment As a Matter of law Regarding Plaintiff's State Tort Claim Because It is Immune From Liability Pursuant to MCL 691.1401 et. seq. and No Exception is Applicable.**

MCLA 691.1407(1) grants municipalities immunity from tort liability, and

in pertinent part, provides as follows:

> Except as otherwise provided in this act, all governmental agencies shall be immune from tort liabilities in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function."

In Ross v Consumers Power Co. (On Rehearing), 420 Mich 567; 363 NW 2d

641 (1984), the Michigan Supreme Court held that governmental agencies are

immune from tort liability arising out of any governmental function, such functions

being activities expressly or impliedly mandated or authorized by constitution,

statute or law. Id at 620; Sudul v City of Hamtramck, 221 Mich App 455, 482; 562

NW2d 478 (1997). The Ross court took pains to point out that governmental

agencies had a broad grant of immunity, while in contrast, immunity afforded to

individual governmental employees was far less. Ross, supra at 635; Sudul, supra

at 482. In determining whether immunity exists for governmental agencies, the

focus is simply on the general nature of the activity. Id.

Although governmental agencies are afforded broad immunity and the provisions of the governmental immunity statute are to be strictly construed, there are several narrowly drawn statutory exceptions whereby an action in tort can be brought against a governmental agency. To avoid governmental immunity, the Plaintiff must state a claim which meets one of the exceptions enumerated in the statute. <u>Ross</u> at 621, n. 34, 363 NW2d 641 (1984). The Act provides for exceptions to immunity (i.e. defective highway, defective building, negligent operation of a motor vehicle), none of which exist in this case or have been pled in Plaintiff's Complaint. Therefore, the City of Detroit is immune from liability and summary judgment of the State tort claims is proper.

> **D.   The Actions, or Inactions, of the Individually-Named Defendants were not "the proximate Cause" of the Decedent's Death; these Defendants, therefore, are Entitled to Summary Disposition as a matter of Law Pursuant to the Governmental Immunity Act, MCL 691.1407 and Michigan Case Law.**

Pursuant to the Governmental Immunity Act, "gross negligence," and not merely "ordinary negligence" is the standard for a negligence claim asserted against a governmental employee acting within the scope of his employment. In the case at hand, it is clear that Plaintiff will not be able to establish a "gross negligence" claim against the individually-named Defendants. Plaintiff premises his "gross

20

negligence" claim against these Defendants upon an alleged failure by tend to the Decedent's serious medical needs. The Governmental Immunity Act at MCL 691.1407 provides, in pertinent part, that employees of governmental agencies are immune from the imposition of tort liability arising out of the exercise or discharge of a governmental function unless their conduct arises to the level of "gross negligence." Specifically, at section 1407(2), the Act provides:

> Each... employee of a governmental agency... shall be immune from tort liability for injuries to persons or damages to property caused by the... employee... while in the course of employment... while acting on behalf of a governmental agency if all of the following are met:
>
> (a) The... employee... is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The... employee's... conduct does not amount to gross negligence that is *the proximate cause* of the injury or damage. (emphasis added).

MCL 691.1407(2)(c) defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." The management, operation and control of a police department is a governmental function. Moore v City of Detroit, 128 Mich App 491, appeal denied, 222 Mich 891(1983).

The Michigan Supreme Court has held that the phrase "the proximate cause"

21

as used in the employee provision of the Governmental Immunity Act, MCL 691.1407(2), means the one most immediate, efficient, and direct cause preceding an injury, not "a proximate cause."  <u>Robinson</u> v <u>City of Detroit</u>, 462 Mich 439, rehearing denied, 618 NW2d 590 (2000).

In <u>Robinson</u>, Plaintiffs sought to impose civil liability upon individual police officers involved in high speed chases when the pursued vehicles collided with roadside obstacles or other vehicles not involved in the pursuit.  To reach that portion of its holding regarding whether the officer's decision to initiate pursuit, or the pursuit itself, proximately caused the asserted injuries or harm, the court conducted an exhaustive analysis of the employee provision of the Governmental Tort Liability Act, and the causal nexus required thereunder to impose liability on individual governmental employees.  MCL 691.1407(2)(c).  In doing so, the Court reversed its earlier decision in <u>Dedes</u> v <u>Asche</u> which embraced an erroneous interpretation of the statute's causal language.  <u>Dedes</u> v <u>Asche</u>, 446 Mich 99 (1984).  In <u>Dedes</u>, the Court effectively interpreted "the proximate cause" in subsection (c) to mean "a proximate cause".  MCL 691.1407(2)(c).  Such an expansive interpretation allowed liability to rest upon remotely involved defendants so long as their acts or omissions could be construed as having contributed in some manner to the causal chain of events eventually resulting in plaintiff's purported injury or harm.

Re-examining its position in <u>Robinson</u>, however, the Court considered the GTLA's legislative history, applied the commonly accepted rules of statutory construction, and employed the rules of grammar to determine that the legislature's deliberate use of the phrase "the proximate cause" in sub-section (c) requires a strict interpretation of the statute's plainly restrictive language. Specifically, the Court found that through its deliberate choice of restrictive causal language, the legislature contemplated civil liability predicated upon one cause only. The Court continued its analysis by defining "the proximate cause" as "(t)he one most immediate, efficient, and direct cause of the plaintiff's injuries. . ." Consequently, to avoid a governmental employee's statutory immunity, a plaintiff must demonstrate the employee's conduct was grossly negligent, and such grossly negligent conduct was, in the direct and restrictive sense defined in <u>Robinson</u>, the one most immediate, efficient, and direct cause of the injury or harm of which plaintiff complains.

In the case at hand, the actions or inactions of the individually-named Defendants were not "the one most immediate, efficient, and direct cause preceding" Plaintiff's decedent's death. The cause of Hal Sandusky's death was (according to Defendant's expert), cardiac arrest caused by an enlarged heart and defective left ventricle. Cardiac arrest would, therefore, be the most immediate case of death. Even assuming, arguendo, that Plaintiff died of sepsis (as alleged by Plaintiff in his

23

Complaint), then sepsis would be the most immediate cause of death. That being the case, no liability can be imposed upon the individually-named Defendants pursuant to the "gross negligence" exception to the Governmental Immunity Act and these Defendants are entitled to summary judgment as a matter of law.

### E. Defendant Detroit Police Department is Entitled to Judgment as a Matter of law Because it is Not Amenable to Suit.

Plaintiff's claims against the City of Detroit Police Department must be dismissed because the Department is not an entity amenable to suit. The " persons " against whom Plaintiff attempts to state his Sec. 1983 claim and tort claims include the City of Detroit and the City of Detroit Police Department as distinct defendants. The relationship between the City, creature of Michigan law, and its Police Department is governed by Michigan law. Pursuant to that law, the Police Department lacks status as a distinct entity and therefore cannot be sued:

> The formation of any city department, be it water, fire or police, together with its rules, regulations and department heads and administrators, is only a means of promoting the efficient operation of the municipality. A municipal department, board or commission, such as the Detroit Police Department, is unable to raise funds for payment and is not liable in tort. *O'Leary v. Marquette Board of Fire and Water Commissioners*, 79 Mich. 281, 44 N.W. 608 (1890). Therefore, the police department is not liable in a tort action directed solely against said department and such an action, if directed against the City of Detroit, would be defeated on the basis of governmental

24

immunity.

<u>McPherson</u> v <u>Fitzpatrick</u>, 63 Mich.App. 461, 463-464, 234 N.W.2d 566 (1974).

In <u>Moomey</u> v <u>City of Holland</u>, 490 F.Supp. 188 (W.D. Mich. 1980), the court held that the city is the real party in interest when a plaintiff sues both a Michigan city and its police department under 42 U.S.C. § 1983.  As the Detroit Police Department cannot sue or be sued, dismissal of all claims against it must be granted.

## **<u>CONCLUSION</u>**

Based on the foregoing, Defendants are entitled to judgment as a matter of law and this Court should dismiss all claims against Defendants with prejudice.

Respectfully submitted,

CITY OF DETROIT LAW DEPARTMENT
*S/ Krystal A. Crittendon*
KRYSTAL A. CRITTENDON (P49981)
Attorney for Defendants
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Detroit, MI 48226
(313) 237-3031
critk@detroitmi.gov

Dated:      May 10, 2018

25