# U.S. Bankruptcy Court
## Eastern District of Michigan (Detroit)
## Bankruptcy Petition #: 13–53846–tjt

*Date filed:* 07/18/2013
*Plan confirmed:* 11/12/2014

*Assigned to:* Judge Thomas J. Tucker
Chapter 9
Voluntary
No asset

| | | |
|---|---|---|
| ***Debtor In Possession***<br>**City of Detroit, Michigan**<br>2 Woodward Avenue<br>Suite 1126<br>Detroit, MI 48226<br>WAYNE–MI<br>Tax ID / EIN: 38–6004606 | represented by | **Bruce Bennett**<br>555 S. Flower Street<br>50th Floor<br>Los Angeles, CA 90071<br>(213) 489–3939<br>Email: bbennett@jonesday.com |

**Eric D. Carlson**
150 West Jefferson
Suite 2500
Detroit, MI 48226
313–496–7567
Email: carlson@millercanfield.com

**Mary Beth Cobbs**
2 Woodward Avenue
Suite 500
Detroit, MI 48226
313–237–3075
Fax : 313–224–5505
Email: cobbm@detroitmi.gov

**Tamar Dolcourt**
500 Woodward Ave.
Suite 2700
Detroit, MI 48226
313–234–7161
Email: tdolcourt@foley.com

**Timothy A. Fusco**
150 West Jefferson
Suite 2500
Detroit, MI 48226–4415
(313) 496–8435
Email: fusco@millercanfield.com

**Eric B. Gaabo**
2 Woodward Avenue
Ste. 500
Detroit, MI 48226
313–237–3052
Email: gaabe@detroitmi.gov

**Jonathan S. Green**
150 W. Jefferson

Ste. 2500
Detroit, MI 48226
(313) 963–6420
Email: green@millercanfield.com

**David Gilbert Heiman**
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586–7175
Email: dgheiman@jonesday.com

**Robert S. Hertzberg**
4000 Town Center
Suite 1800
Southfield, MI 48075–1505
248–359–7300
Fax : 248–359–7700
Email: hertzbergr@pepperlaw.com

**Kelly Houk**
400 Renaissance Center
Detroit, MI 48243
313–568–6530
Email: khouk@dykema.com
*TERMINATED: 08/23/2017*

**Jeffrey S. Kopp**
Foley & Lardner LLP
500 Woodward Avenue
Suite 2700
Detroit, MI 48226
(313) 234–7100
Fax : (313) 234–2800
Email: jkopp@foley.com

**Deborah Kovsky–Apap**
Pepper Hamilton LLP
4000 Town Center
Suite 1800
Southfield, MI 48075
(248) 359–7300
Fax : (248) 359–7700
Email: kovskyd@pepperlaw.com

**Kay Standridge Kress**
4000 Town Center
Southfield, MI 48075–1505
(248) 359–7300
Fax : (248) 359–7700
Email: kressk@pepperlaw.com

**Stephen S. LaPlante**
150 W. Jefferson Ave.
Suite 2500
Detroit, MI 48226
(313) 496–8478
Email: laplante@millercanfield.com

**Heather Lennox**
222 East 41st Street
New York, NY 10017
212–326–3939
Email: hlennox@jonesday.com

**John D. Mulvihill**
20 W. Washington
Suite 2
Clarkston, MI 48346
(248) 625–3131
Email: jdmassistant@sbcglobal.net

**Scott Eric Ratner**
One Penn Plaza
Suite 3335
New York, NY 10119
212–594–5000
Email: dperson@teamtogut.com

**John A. Simon**
500 Woodward Avenue
Suite 2700
Detroit, MI 48226
(313) 234–7100
Email: jsimon@foley.com

**Ronald A. Spinner**
150 West Jefferson
Suite 2500
Detroit, MI 48226
(313) 496–7829
Email: spinner@millercanfield.com

**Marc N. Swanson**
Miller Canfield Paddock and Stone, P.L.C
150 W. Jefferson
Suite 2500
Detroit, MI 48226
(313) 496–7591
Email: swansonm@millercanfield.com

**Albert Togut**
One Penn Plaza
Suite 3335
New York, NY 10119
212–594–5000
Email: dperson@teamtogut.com

**John H. Willems**
150 W. Jefferson
Suite 2500
Detroit, MI 48226
313–496–7544
Email: willems@millercanfield.com

**Stanley L. de Jongh**
Two Woodward Ave., 5th Floor
Suite 500
Detroit, MI 48226
313–237–5031
Fax : 313–224–5505
Email: jongsl@detroitmi.gov

*U.S. Trustee*          represented by **Sean M. Cowley (UST)**
**Daniel M. McDermott**          United States Trustee
          211 West Fort Street

Suite 700
Detroit, MI 48226
(313) 226–3432
Email: Sean.cowley@usdoj.gov

**Richard A. Roble (UST)**
United States Trustee
211 West Fort Street
Suite 700
Detroit, MI 48226
(313) 226–6769
Email: Richard.A.Roble@usdoj.gov

*Creditor Committee*
**Committee of Unsecured
Creditors**
*TERMINATED: 03/03/2014*

represented by **Brett Howard Miller**
1290 Avenue of the Americas
40th Floor
New York, NY 10104
(212) 468–8051
Email: bmiller@mofo.com,whildbold@mofo.com
*TERMINATED: 03/03/2014*

**Geoffrey T. Pavlic**
AF Group
200 N. Grand River Ave.
Lansing, MI 48933
(517) 708–5146
Fax : (248) 352–4488
Email: Geoffrey.Pavlic@afgroup.com
*SELF– TERMINATED: 11/19/2014*

**Mark H. Shapiro**
25925 Telegraph Rd.
Suite 203
Southfield, MI 48033–2518
(248) 352–4700
Fax : (248) 352–4488
Email: shapiro@steinbergshapiro.com
*TERMINATED: 03/03/2014*

*Creditor Committee*
**Charlene Hearn**
PO Box 6612
Detroit, MI 48206

*Creditor Committee*
**Craig Steele**

*Retiree Committee*
**Official Committee of Retirees**

represented by **Sam J. Alberts**
1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005–3364
(202) 408–7004
Email: sam.alberts@dentons.com
*SELF– TERMINATED: 03/13/2015*

**Paula A. Hall**
401 S. Old Woodward Ave.
Suite 400
Birmingham, MI 48009
(248) 971–1800
Email: hall@bwst–law.com

**Claude D. Montgomery**
620 Fifth Avenue
New York, NY 10020
(212) 632–8390
Email: claude.montgomery@dentons.com,docketny@dentons.com

**Carole Neville**
1221 Avenue of the Americas
25th Floor
New York, NY 10020
(212) 768–6889
Email: carole.neville@dentons.com

**Matthew Wilkins**
401 S. Old Woodward Ave.
Suite 400
Birmingham, MI 48009
(248) 971–1800
Email: wilkins@bwst–law.com

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 11/12/2013 | | 1665 | Motion *of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims* Filed by Debtor In Possession City of Detroit, Michigan (Lennox, Heather) (Entered: 11/12/2013) |
| 11/21/2013 | | 1782 | Order, Pursuant To Sections 105, 501 And 503 Of The Bankruptcy Code And Bankruptcy Rules 2002 And 3003(c), Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (RE: related document(s)1146 Establishing Ch. 9 Bar Dates for Filing Proofs of Claim filed by Debtor In Possession City of Detroit, Michigan, 1769 Stipulation filed by Debtor In Possession City of Detroit, Michigan, 1742 Order Regarding Submission of Order Establishing Claims Bar Date). Proof of Claim Deadline is February 21, 2014 at 4:00 P.M. Eastern Time. (ckata) Modified on 11/21/2013 (Sam R.). (Entered: 11/21/2013) |
| 12/24/2013 | | 2302 | Order, Pursuant To Sections 105 And 502 Of The Bankruptcy Code, Approving Alternative Dispute Resolution Procedures To Promote The Liquidation Of Certain Prepetition Claims (Related Docs. #2297 Stipulation By and Between The City of Detroit and the Public Safety Unions Re: an Order Resolving Motion of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims / Amended Stipulation (Related Docket Nos. 1665 & 2272). Filed by Debtor In Possession City of Detroit, Michigan. and 1665 Motion of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims Filed by Debtor In Possession City of Detroit, Michigan ). (ckata) (Entered: 12/24/2013) |
| 05/02/2014 | | 4384 | Order Granting Ex Parte Emergency Motion of Debtor for an Order Extending the Deadline for Filing the Final Disclosure Statement Set Forth in the Court's Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [Docket No. 4202]. Disclosure Statement due by 5/5/2014 at 12:00 p.m. (Related Doc # 4382). (Steinle, J) (Entered: 05/02/2014) |

| | | | |
|---|---|---|---|
| 06/18/2014 | | 5410 | Written Response To City Of Detroit Objection Claim Number 2846 Filed By Edith Woodberry (related document(s): 4834 Objection to Claim Number of Claimant Edith Woodberry Claim No 2846. ) Filed by Creditor Edith Woodberry (ckata) (Entered: 06/18/2014) |
| 06/20/2014 | | 5505 | Reply to (related document(s): 5410 Response filed by Creditor Edith Woodberry, 5411 Response filed by Creditor Penny Mabin, 5413 Response filed by Creditor Lavan Woodberry, 5414 Response filed by Creditor LaJeff Woodberry, 5415 Response filed by Creditor Happy Woodberry, 5416 Response filed by Creditor Garfield Woodberry, 5417 Response filed by Creditor Cranston Woodberry, 5418 Response filed by Creditor Cavel Woodberry, 5419 Response filed by Creditor Adam Woodberry, 5420 Response filed by Creditor Phebe Lee Woodberry) Filed by Debtor In Possession City of Detroit, Michigan (Attachments: # 1 Exhibit 1: Wayne County Circuit Court Order # 2 Exhibit 2: Acknowledgment of payment # 3 Exhibit 3: Lis Pendens) (Dolcourt, Tamar) (Entered: 06/20/2014) |
| 06/25/2014 | | 5586 | Order Regarding Objections to Claims Numbers 2846, 2880, 2883, 2888, 2889, 2902, 2905, 3006, 3271 and 3278 (Related Doc # 4834), Regarding Objection to Claim(s) (Related Doc # 4835), Regarding Objection to Claim(s) (Related Doc # 4836), Regarding Objection to Claim(s) (Related Doc # 4837), Regarding Objection to Claim(s) (Related Doc # 4838), Regarding Objection to Claim(s) (Related Doc # 4839), Regarding Objection to Claim(s) (Related Doc # 4840), Regarding Objection to Claim(s) (Related Doc # 4841), Regarding Objection to Claim(s) (Related Doc # 4843), Regarding Objection to Claim(s) (Related Doc # 4859). (ckata) (Entered: 06/25/2014) |
| 07/09/2014 | | 5872 | Order Pursuant to 11 U.S.C. § 105(a) and Fed.R.Bankr.P.3007 Approving Claim Objection Procedures (Related Doc # 5871 Stipulation By and Between City of Detroit and United States of America Re: Approving Claim Objection Procedures Filed by Debtor In Possession City of Detroit, Michigan and Related Doc # 5270 Motion For Entry of an Order Approving Claim Objection Procedures Filed by Debtor In Possession City of Detroit, Michigan). (AGF) (Entered: 07/09/2014) |

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-------------------------------------------------------x
                     :

In re                     :        Chapter 9

                     :

CITY OF DETROIT, MICHIGAN,   :        Case No. 13-53846

                     :

            Debtor.     :        Hon. Steven W. Rhodes

                     :

                     :

-------------------------------------------------------x

## MOTION OF DEBTOR, PURSUANT TO SECTIONS 105 AND 502 OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER APPROVING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES TO PROMOTE THE LIQUIDATION OF CERTAIN PREPETITION CLAIMS

        The City of Detroit (the "City") hereby moves the Court, pursuant to sections 105 and 502 of title 11 of the United States Code (the "Bankruptcy Code") for the entry of an order[1] approving alternative dispute resolution procedures to promote the resolution of certain prepetition claims.  In support of this Motion, the City respectfully represents as follows:

---

[1]    This Motion includes certain attachments that are labeled in accordance with Rule 9014-1(b)(1) of the Local Rules of the Bankruptcy Court for the Eastern District of Michigan (the "Local Rules").  Consistent with Local Rule 9014-1(b), a copy of the proposed form of order granting this Motion is attached hereto as Exhibit 1.  A summary identifying each included attachment by exhibit number is appended to this Motion.

13-53846-tjt   Doc 12858-1   Filed 02/20/18   Entered 02/20/18 14:36:45   Page 10 of 219
13-53846-tjt   Doc 16635-1   Filed 02/29/18   Entered 02/29/18 14:24:38   Page 9 of 92

7

## General Background

1. On July 18, 2013 (the "Petition Date"), the City filed a petition for relief in this Court, thereby commencing the largest chapter 9 case in history.

2. Incorporated in 1806, Detroit is the largest city in Michigan. As of December 2012, the City had a population of less than 685,000 (down from a peak population of nearly 2 million in 1950). Over the past several decades, the City has experienced significant economic challenges that have negatively impacted employment, business conditions and quality of life.

3. As of June 30, 2013 — the end of the City's 2013 fiscal year — the City's liabilities exceeded $18 billion (including, among other things, general obligation and special revenue bonds, unfunded actuarially accrued pension and other postemployment benefit liabilities, pension obligation certificate liabilities and related derivative liabilities). As of June 30, 2013, the City's accumulated unrestricted general fund deficit was approximately $237 million.

4. In February 2013, a state review team determined that a local government financial emergency exists in the City. Thereafter, in March 2013, Kevyn D. Orr was appointed, and now serves as, emergency manager with respect to the City (in such capacity, the "Emergency Manager") under Public Act 436 of 2012, the Local Financial Stability and Choice Act, MCL § 141.1541, *et seq.*

("PA 436").  Under Section 18(1) of PA 436, the Emergency Manager acts exclusively on behalf of the City in this chapter 9 case.  MCL § 141.1558.

## The List of Claims and the Bar Date Motion

5.     On the Petition Date, the City filed its List of Creditors Pursuant to Section 924 of the Bankruptcy Code and Bankruptcy Rule 1007 (Docket No. 16) (the "Original List of Creditors").

6.     On August 1, 2013, the City filed its Amended List of Creditors Pursuant to Section 924 of the Bankruptcy Code and Bankruptcy Rule 1007 (Docket No. 258) (the "Amended List of Creditors"), which replaced the Original List of Creditors and redacted certain personal information therein.

7.     On September 30, 2013, the City filed its Second Amended List of Creditors and Claims, Pursuant to Sections 924 and 925 of the Bankruptcy Code (Docket No. 1059), which supplemented and amended the information in the Amended List of Creditors and also constitutes the City's list of claims under section 925 of the Bankruptcy Code (as amended or supplemented from time to time, the "List of Claims").

8.     On October 10, 2013, the City filed the Motion of Debtor, Pursuant to Sections 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), for Entry of an Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof (Docket

13-53846-tjt   Doc 12658-1   Filed 02/29/18   Entered 02/29/18 14:36:45   Page 9 of 92

13-53846-tjt   Doc 12658-1   Filed 02/29/18   Entered 02/29/18 14:24:38   Page 9 of 219

3

9

No. 1146) (the "Bar Date Motion"), in which the City requested that the Court establish a general bar date for creditors to file proofs of claim asserting prepetition liabilities against the City (the "General Bar Date"). The Court has scheduled a hearing on the Bar Date Motion to be held on November 14, 2013 (Docket No. 1335).

## Jurisdiction

9.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

10.     On October 8, 2013, the Court entered an order (Docket No. 1114) (the "Ryan Order") denying a tort claimant's request for relief from the automatic stay of sections 362 and 922 of the Bankruptcy Code, subject to the City's filing, on or before November 12, 2013, "a motion for approval of an efficient process for liquidating all of the tort claims or a motion for extension of time to file such a motion." Ryan Order, at 1.

13-53846-tjt   Doc 1853-1   Filed 08/20/13   Entered 08/20/13 16:24:38   Page 4 of 92
13-53846-tjt   Doc 1865   Filed 11/12/13   Entered 11/12/13 14:30:45   Page 4 of 219

10

11. Consistent with the Court's comments in the Ryan Order,[2] the City hereby seeks the entry of an order, pursuant to sections 105 and 502 of the Bankruptcy Code, approving a set of mandatory alternative dispute resolution procedures (collectively, the "ADR Procedures") to promote the efficient liquidation of tort claims and other Designated Claims (as defined below).

## The ADR Procedures

12. The City has developed the ADR Procedures in consultation with the Wayne County Mediation Tribunal Association (the "MTA"). The MTA is an independent nonprofit organization created in 1979 by the Third Judicial Circuit Court of Michigan to provide a pool of mediators and to administer procedures for the out-of-court resolution of certain cases brought in the Circuit Court. Since that time, the MTA's role has expanded to include varied alternative dispute resolution services including, as applicable herein, case evaluation ("Case Evaluation") and arbitration services.

13. The MTA's leading role in providing Case Evaluation services in the Detroit area is recognized by Local Rule 16.3 of the United States District Court for the Eastern District of Michigan, which also incorporates Rule 2.403 of the Michigan Court Rules of 1985 ("MCR") setting forth various procedures for Case Evaluation. In addition, where Case Evaluation alone is unsuccessful in

---

[2] The proposed ADR Procedures also carry out the intent of the guidelines for mediation promulgated by this Court in Local Rule 7016-2.

resolving a claim, the MTA has substantial experience facilitating and coordinating binding arbitration proceedings.

14.     The ADR Procedures are designed to promote the resolution of each Designated Claim without full-blown litigation, while safeguarding the procedural rights of the Designated Claimants (as defined below) and the City. The ADR Procedures provide a structure that will:  (a) first promote direct settlement discussions and exchange of information between the parties; and (b) absent a settlement by direct discussions of the parties, promote liquidation of the Designated Claims through Case Evaluation and, with the agreement of the parties, binding arbitration.  The City proposes to implement the ADR Procedures on the terms contained on Exhibit 6 attached hereto and incorporated herein by reference.  A summary of the primary terms of the ADR Procedures follows:[3]

15.     Claims Subject to the ADR Procedures.  The City and its professionals have engaged in an extensive review and analysis of the City's actual and alleged liabilities in connection with the production of the List of Claims.

---

[3]     The description of the ADR Procedures contained herein is intended to be a summary for the convenience of the Court and parties in interest and is not intended to modify any of the ADR Procedures set forth more fully in Exhibit 6 hereto.  As such, the summary of the ADR Procedures in this Motion is qualified in all respects by the more detailed terms of the ADR Procedures.  In the event of any conflict between the text of this Motion and the ADR Procedures, the ADR Procedures shall govern.  All capitalized terms used but not defined in the Motion have the meanings given to such terms in the ADR Procedures.

13-53846-tjt   Doc 12873-1   Filed 08/20/16   Entered 08/20/18 14:30:24   Page 12 of
13-53846-tjt   Doc 12873-1   Filed 11/12/18   Entered 11/12/18 14:30:45   Page 12 of
219

12

The City anticipates that it will receive literally thousands of proofs of claim asserting liabilities that the City disputes, including hundreds of disputed tort claims.[4]  In addition, multiple motions to lift the automatic stay of sections 362 and 922 of the Bankruptcy Code (collectively, the "Lift Stay Motions") already have been filed in this case, which continue to burden the City and this Court.[5]  Many of these Lift Stay Motions relate to tort claims and other claims asserted against the City.  The City developed the ADR Procedures to promote the efficient liquidation of Designated Claims.[6]

16.    One of the goals of the City's review has been to determine the most efficient and appropriate manner of liquidating disputed claims.  Through these efforts, the City intends to identify certain disputed claims (collectively,

---

[4]    As of the date hereof, only approximately 118 claims have been filed against the City.  However, it is anticipated that the notice of the General Bar Date will be sent to over 120,000 potential creditors, many of which will file proofs of claims.  In addition, Schedule H to the List of Claims identifies over 1,800 parties who may hold disputed tort and other litigation claims.

[5]    See, e.g., Docket Nos. 183, 268, 308, 312, 742, 755, 800, 828, 1035, 1057, 1103, 1122, 1137, 1155, 1266, 1307, 1314, 1336, 1488.  A number of Lift Stay Motions have involved requests for nonmonetary relief from the City, including, for example, quiet-title actions and requests that the City allow proceedings to continue to strip junior City liens from property with no equity to satisfy such liens.  The City has been developing a mechanism to preemptively address and resolve such requests for nonmonetary relief to minimize the need for court involvement.

[6]    Even where the City has designed certain claims already as candidates for the ADR Procedures, the City in its sole discretion may pursue the litigation of any particular claim outside of the ADR Procedures where it deems it more appropriate.

13-53846-tjt   Doc 2873-1   Filed 08/20/18   Entered 08/20/18 14:30:24   Page 13 of
219
13-53846-tjt   Doc 1865   Filed 11/21/13   Entered 11/21/13 14:16:45   Page 13 of 32
7
13

the "Designated Claims") that it believes could be liquidated more efficiently, cost effectively and/or expeditiously through an alternative dispute resolution process, rather than by traditional litigation. The City may designate for liquidation pursuant to the ADR Procedures any proof of claim timely asserted in these cases by serving a notice (an "ADR Notice") on the applicable claimant. The Designated Claims will not include, however, claims solely asserting workers' compensation liabilities against the City, which claims the City continues to resolve in the ordinary course pursuant to its usual workers' compensation procedures.

17.    The City already has determined that certain types of claims (collectively, the "Initial Designated Claims") are appropriate for liquidation through the ADR Procedures and should be considered to be Designated Claims even in advance of the City serving an ADR Notice on the applicable claimant. The Initial Designated Claims consist of any and all timely filed prepetition: (a) personal injury tort or wrongful death claims; (b) property damage claims; or (c) claims relating to the operation of motor vehicles for which the City is self-insured pursuant to chapter 31 of Michigan's Insurance Code of 1956, M.C.L. §§ 500.3101, et seq. Notably, many of the Initial Designated Claims are personal injury tort or wrongful death claims that this Court lacks jurisdiction to liquidate pursuant to 28 U.S.C. § 157(b)(5).

18. The proposed ADR Procedures are comprised of up to three stages: (a) offer exchange; (b) case evaluation; and (c) binding arbitration, if agreed to by the parties. The City and the holder of a Designated Claim (the "Designated Claimant") may settle a Designated Claim and terminate the ADR Procedures at any time. If the parties do not resolve the Designated Claim through the ADR Procedures, and if they have not agreed to binding arbitration of the Designated Claim, then, upon completion of the offer exchange and case evaluation stages of the ADR Procedures, the Designated Claim will proceed to litigation in an appropriate forum.

19. Given the potentially large number of Designated Claims and the limited staff in the City Law Department,[7] immediately initiating the ADR Procedures with respect to all Designated Claims or Initial Designated Claims on the same day and on the same schedule would not be feasible. The City, therefore, has built a degree of flexibility into the ADR Procedures to allow it to implement the ADR Procedures as promptly as practicable, but in a manner that does not overwhelm the City Law Department or the MTA. Accordingly, at each stage of the ADR Procedures, the City intends to prioritize the selection of Designated Claims based upon (a) the difference between any prior settlement offers made by the City and the Designated Claimant, (b) the nature and complexity of the

---

[7] It is anticipated that the City Law Department will be the primary group responsible for implementing the ADR Procedures for the City.

Designated Claim, (c) the status of any underlying lawsuit, (d) whether the Designated Claimant previously actively participated in settlement discussions or (e) any other considerations that the City deems relevant or appropriate in its sole discretion

20. <u>The Initial Injunction and the ADR Injunction</u>. At the outset of this process, the City requires sufficient time to initiate the ADR Procedures in a rational manner (with respect to the Initial Designated Claims, in particular) without repeated interruptions in the form of Lift Stay Motions that may be filed by certain Designated Claimants.

21. The ADR Procedures, therefore, contemplate that, for the period commencing on the date of entry of an order approving the relief requested herein (the "<u>ADR Order</u>") until the date that is 119 days after the General Bar Date (the "<u>Initial Designation Period</u>"), any Designated Claimant holding an Initial Designated Claim (and any other person or entity asserting an interest in such claim) will be enjoined (the "<u>Initial Injunction</u>") from filing or prosecuting, with respect to such Initial Designated Claim, any motion (a "<u>Stay Motion</u>") for relief from either (a) the automatic stay of sections 362 and 922 of the Bankruptcy Code, as modified and extended from time to time by orders of the Court (the "<u>Stay</u>"), or (b) any similar injunction (a "<u>Plan Injunction</u>") that may be imposed upon the confirmation or effectiveness of a plan of adjustment of debts in this case

(a "Chapter 9 Plan").  The Initial Injunction is separate and distinct from the ADR Injunction, as described and defined below.  Any Designated Claimant that is subject to the Initial Injunction shall instead become subject to the ADR Injunction upon service of an ADR Notice with respect to the underlying Designated Claim, whether that occurs during or after the Initial Designation Period.

22.     The City in its sole discretion (a) may elect not to send an ADR Notice to the holder of an Initial Designated Claim and (b) instead file and serve on the applicable Designated Claimant a notice that the Stay is lifted to permit the underlying claim to be liquidated in an appropriate non-bankruptcy forum.

23.     Upon service of an ADR Notice on any Designated Claimant, such Designated Claimant (and any other person or entity asserting an interest in the relevant Designated Claim) shall be enjoined (the "ADR Injunction") from filing or prosecuting any Stay Motion or otherwise seeking to establish, liquidate, collect on or enforce the Designated Claim(s) identified in the ADR Notice other than by liquidating the claim through the ADR Procedures.  The ADR Injunction shall expire with respect to a Designated Claim only when the ADR Procedures have been completed as to that Designated Claim.

24.     The Initial Injunction and the ADR Injunction shall be in addition to the Stay and any Plan Injunction.  Except as expressly set forth in the ADR Procedures or in a separate order of the Court, the expiration of the Initial

13-53846-tjt    Doc 18658-1    Filed 12/20/19    Entered 12/20/19 14:24:38    Page 17 of 91
13-53846-tjt    Doc 12658    Filed 02/20/18    Entered 02/20/18 16:26:45    Page 17 of 91
17
219

Injunction or the ADR Injunction shall not extinguish, limit or modify the Stay or any Plan Injunction, and the Stay and any Plan Injunction shall remain in place to the extent then in effect, except as otherwise provided in the ADR Procedures.

25.    Offer Exchange Procedures.  The first stage of the ADR Procedures will require the parties to exchange settlement offers (the "Offer Exchange Procedures"), thereby providing an opportunity to liquidate the underlying Designated Claim on a consensual basis without the need for further proceedings.  At any time following the entry of the ADR Order and the filing of a proof of claim,[8] the City may designate a claim for liquidation through the ADR Procedures by serving an ADR Notice, the ADR Order and the ADR Procedures on the Designated Claimant.[9]  The ADR Notice will serve as (a) notice that a claim has been designated by the City as a Designated Claim (if not already designated under the ADR Procedures as an Initial Designated Claim) and (b) notice that the Designated Claim has been submitted to the ADR Procedures. The ADR Notice will include an offer by the City to settle the Designated Claim (the "Settlement Offer") and may inform the Designated Claimant whether the City does or does not consent to binding arbitration of the Designated Claim if it is not

---

[8]    The ADR Procedures will not be initiated with respect to a claim unless and until a timely proof of claim is filed.

[9]    For transferred claims, the City also will serve a copy of the ADR Materials on the transferee identified in the notice of transfer of claim that has been filed with the Court.

13-53846-tjt    Doc 1158-1    Filed 08/29/13    Entered 08/29/13 14:26:38    Page 18 of 92
13-53846-tjt    Doc 12058-1    Filed 11/02/19    Entered 11/02/19 14:36:45    Page 92 of 92
12
219
18

settled through the Offer Exchange Procedures or subsequent Case Evaluation Procedures.

26.     The Designated Claimant is required to deliver a response (any such response, a "Permitted Response") to the City by no later than 28 days following the service of the ADR Notice. The Permitted Response must indicate the Designated Claimant's (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (a "Counteroffer"). Any Counteroffer may only propose an amount that, if agreed upon, will liquidate the Designated Claim, subject to treatment under a confirmed Chapter 9 Plan. The Counteroffer may not exceed the amount or improve the priority set forth in the Designated Claimant's most recent timely filed proof of claim or amended proof of claim (but may liquidate any unliquidated amounts expressly referenced in a proof of claim). The Designated Claimant also must indicate in its Permitted Response whether or not it consents to binding arbitration of the Designated Claim in the event the Designated Claim is not liquidated through the Offer Exchange Procedures or Case Evaluation.[10] If the Designated Claimant fails to provide a Permitted Response within the time period allowed, then the Designated Claim will advance automatically to Case Evaluation, as set forth below.

---

[10]     Any attempt to refuse binding arbitration in response to the ADR Notice will be ineffective, however, if the Designated Claimant previously consented in writing — either before or after the Petition Date — to binding arbitration as a means to resolve its claim(s).

13-53846-tjt    Doc 1608-1    Filed 11/12/13    Entered 11/12/13 14:30:45    Page 19 of 91
13-53846-tjt    Doc 12058-1    Filed 08/29/18    Entered 08/29/18 14:26:38    Page 19 of 219

13
219

19

27.     The City may, within 14 days of its receipt of a Counteroffer

accept or reject the Counteroffer or request further information in support of the

Designated Claim or Counteroffer, subject to the time limitations set forth in

Section II.A.5(d) of the ADR Procedures.  The City and the Designated Claimant

may thereafter continue to exchange revised Settlement Offers and Counteroffers

for a period of up to 21 days, on which date the Offer Exchange Procedures shall

be deemed to conclude and terminate.  If the Designated Claim has not been

resolved through this process, the liquidation of the Designated Claim will proceed

to Case Evaluation, subject to the City and the Designated Claimant's ongoing right

to settle the Designated Claim by mutual consent at any time.  Any date that the

Offer Exchange Procedures conclude without a resolution is referred to herein as

the "Offer Exchange Termination Date."

28.     Case Evaluation.  The next step of the ADR Procedures is Case

Evaluation before the MTA under the procedures set forth in MCR §§ 2.403 and

2.404, as modified by the ADR Procedures.[11]  As soon as reasonably practicable

following the Offer Exchange Termination Date, the City will serve upon the

applicable Designated Claimant and the Clerk of the MTA (the "ADR Clerk"), a

---

[11]     For example, MCR §§ 2.403(A-C) (relating to the assignment of cases to
         Case Evaluation) and 2.403(N-O) (relating to the posting of bonds for
         frivolous claims and defenses and the awarding of costs against a party that
         rejects a Case Evaluation and subsequently fails to achieve a superior result
         at trial) are expressly made inapplicable to the Case Evaluation proceedings.

13-53846-tjt    Doc 12058-1    Filed 02/29/16    Entered 02/29/16 14:26:38    Page 20 of 91
13-53846-tjt    Doc 1865-1    Filed 11/02/13    Entered 11/02/13 14:36:45    Page 34 of 91
14
219
20

notice that the Designated Claim has been referred for Case Evaluation.[12]

Additional parties may intervene in the Case Evaluation solely by agreement of the City and the applicable Designated Claimant.

29. The fees and costs for each Case Evaluation proceeding are $75.00 payable to the ADR Clerk by each party, except that, where one claim is derivative of another, the claims will be treated as a single claim with one fee to be paid and a single valuation of the claims to be made. If for any reason, however, the fees for any Case Evaluation proceeding exceed $75.00 per party, such fees will be borne equally by the parties.

30. As described in greater detail in the ADR Procedures, the purpose of Case Evaluation is to obtain a nonbinding, confidential, monetary valuation of the applicable Designated Claim that serves as a focal point for ongoing settlement negotiations between the parties. To this end, with respect to each Designated Claim that is not liquidated consensually pursuant to the Offer Exchange Procedures, the ADR Clerk will select a panel of three case evaluators (the "Case Evaluation Panel") and provide the members of the Case Evaluation

---

[12] In prioritizing among Designated Claims to refer to Case Evaluation, the City may consider, along with any other factors that the City deems relevant or appropriate in its sole discretion, (a) the difference between the final offers made by the City and the Designated Claimant during the Offer Exchange Procedures, (b) the nature and complexity of the Designated Claim, (c) the status of any underlying lawsuit or (d) whether the Designated Claimant returned the ADR Notice and its level of participation in the ADR Procedures.

Panel and the parties to the Case Evaluation with at least 42 days' notice of a short hearing before the Case Evaluation Panel on the legal and factual bases for the Designated Claim (the "Case Evaluation Hearing").

31.    At least 14 days prior to the scheduled date of the Case Evaluation Hearing, the parties will serve a short case summary and supporting documents on each other and the ADR Clerk, for delivery to the members of the Case Evaluation Panel.  Oral presentation at the Case Evaluation Hearing generally is limited to 15 minutes per side with the parties relying on documentary evidence as opposed to live testimony, and statements by the attorneys are not admissible in any court or evidentiary proceeding.

32.    Within 14 days following the Case Evaluation Hearing, the Case Evaluation Panel will issue its valuation of the Designated Claim (the "Evaluation").  Within 28 days following the issuance of the Evaluation, each party to the Case Evaluation proceeding files an acceptance or rejection of the Evaluation.  If all parties accept the Evaluation with respect to all claims between them, then a settlement shall be documented and made of record.  If any party rejects the Evaluation, then the parties shall have a further 28 days to attempt to negotiate a consensual settlement of the Designated Claim.  If no settlement is reached by the end of that period (the "Case Evaluation Termination Date"), then the Designated Claim shall proceed to binding arbitration, if applicable.

16
219
13-53846-tjt    Doc 12858-1    Filed 11/12/19    Entered 11/12/19 14:36:45    Page 22 of 92
13-53846-tjt    Doc 12858-1    Filed 11/12/19    Entered 11/12/19 14:36:45    Page 22 of 92    22

33.     <u>Binding Arbitration</u>.  Where the parties all have agreed to binding arbitration, the City shall serve a notice of arbitration on the ADR Clerk, the Designated Claimant and any other entities that were parties to the Case Evaluation as soon as reasonably practicable following the Case Evaluation Termination Date with respect to any Designated Claim.  Additional parties may intervene in the arbitration proceeding solely by agreement of the City and the other parties.  If the parties have not mutually agreed to binding arbitration, then the Designated Claim shall advance in accordance with the procedures for Unresolved Designated Claims set forth below.

34.     The arbitration of any Designated Claims shall be conducted by a single arbitrator selected by the ADR Clerk and shall be governed by the commercial arbitration rules of the American Arbitration Association (the "<u>AAA</u>"), as amended and effective on October 1, 2013, unless the parties agree otherwise (the "<u>Arbitration Rules</u>"), except where the Arbitration Rules are expressly modified by the terms of the ADR Procedures.  The fees and costs charged by the arbitrator and the MTA will be shared equally among the parties.

35.     The ADR Clerk shall select the arbitrator, subject to the parties' rights to request that the Court replace the arbitrator upon a showing of a reasonable inference of bias, and shall provide notice to the parties of his or her appointment.  All arbitration hearings (the "<u>Arbitration Hearings</u>") shall be

scheduled by the arbitrator, in consultation with the parties, and shall be conducted

in Detroit, Michigan. The arbitrator shall provide written notice to the parties of

the date, time and place of the Arbitration Hearings within 14 days following his or

her appointment. All fees and costs for arbitration proceedings will be shared

equally between the parties (unless otherwise previously agreed) and shall be

payable to the MTA.

36. Each of the parties shall be entitled to engage in limited

discovery, as set forth in the ADR Procedures, and shall submit to the arbitrator

and serve on the other parties a short pre-arbitration statement by no later than

14 days prior to the first date scheduled for the applicable Arbitration Hearing,

which must be held no later than 112 days after the date of appointment of the

arbitrator.

37. Any Arbitration Award shall only liquidate the applicable

Designated Claim and shall not raise or purport to determine any issues relating to

the potential treatment or priority of the Designated Claim in this chapter 9 case.

The ADR Procedures further provide that the Arbitration Award generally may not

provide the Designated Claimant with punitive damages, interest, attorneys' fees,

other fees and costs, penalties, any amounts already disallowed by the Court,

specific performance or other form of equitable remedy or any other relief

impermissible under applicable bankruptcy and nonbankruptcy law. The entry of

13-53846-tjt   Doc 12858-1   Filed 11/02/18   Entered 11/02/18 14:36:45   Page 24 of 92
13-53846-tjt   Doc 10053   Filed 08/20/18   Entered 08/20/18 14:26:38   Page 24 of 91
18
219
24

an Arbitration Award shall not grant the Designated Claimant any enforcement rights except as permitted under a Chapter 9 Plan, and the Stay and any Plan Injunction shall apply to the Arbitration Award. Any aspect of an Arbitration Award that violates the foregoing rules and limitations shall be void without further action of any court.

38.     Any Arbitration Award shall be final and binding. No party shall have the right to request vacation of an Arbitration Award except to the extent that it violates (a) the ADR Procedures, (b) the Bankruptcy Code or (c) the Federal Arbitration Act.

39.     <u>Approval and Satisfaction of any Settlement or Award</u>. A Designated Claimant holding a claim with respect to which settlement has been reached through the ADR Procedures will receive an allowed general unsecured nonpriority claim against the City that will be treated in accordance with the Chapter 9 Plan in the City's bankruptcy case *and not* a full cash payment of the settlement amount of the Designated Claim. Notwithstanding the foregoing, any disputes about the priority of a Designated Claim may be raised with and determined by the Court after the conclusion of the ADR Procedures.

40.     The ADR Procedures do not limit, expand or otherwise modify the City's authority to settle claims or the City's authority over its property and revenues under section 904 of the Bankruptcy Code. The authority to settle

Designated Claims pursuant to the ADR Procedures will be in addition to, and cumulative with, any existing authority to resolve claims against the City.

41. <u>Failure to Resolve a Designated Claim Through the ADR Procedures</u>. Designated Claims not resolved through the ADR Procedures ("<u>Unresolved Designated Claims</u>") shall proceed to litigation for liquidation. Unless the City agrees otherwise, liquidation of any Unresolved Designated Claim shall proceed in this Court (to the extent that this Court has subject matter jurisdiction over the Unresolved Designated Claim) as soon as practicable following the date that the ADR Procedures are concluded for an Unresolved Designated Claim (the "<u>ADR Completion Date</u>").[13] Such litigation will be initiated by the filing of a claim objection by the City (a "<u>Claim Objection</u>") within 35 days after the ADR Completion Date (the "<u>Claim Objection Deadline</u>"). Disputes over the subject matter jurisdiction of this Court shall be determined by this Court, and the Designated Claimants shall retain whatever rights they have to seek withdrawal of the reference, abstention of other procedural relief in connection with a Claim

---

[13] With respect to Unresolved Designated Claims, the ADR Completion Date will be the Case Evaluation Termination Date except where the ADR Procedures are terminated sooner, such as where Case Evaluation was conducted with respect to a Designated Claim prior to the Petition Date, and the parties do not agree to conduct a second round of Case Evaluation. In that instance, the ADR Completion Date will be the Offer Exchange Termination Date. In this regard, the City estimates that Case Evaluation already has been conducted with respect to approximately 30% of the Initial Designated Claims.

Objection. For the avoidance of doubt, consistent with 28 U.S.C. § 157(b)(5), personal injury tort and wrongful death claims shall not be heard by this Court.

42. If the Unresolved Designated Claim cannot be adjudicated in this Court because of lack of, or limitations upon, subject matter jurisdiction, or if the City does not file a Claim Objection by the Claim Objection Deadline (any such claim, a "Non-Bankruptcy Claim") then liquidation of any such Non-Bankruptcy Claim shall proceed in either: (a) the nonbankruptcy forum in which the Non-Bankruptcy Claim was pending on the Petition Date, if any, subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Non-Bankruptcy Claim was not pending in any forum on the Petition Date, then in the United States District Court for the Eastern District of Michigan or such other nonbankruptcy forum selected by the Designated Claimant that (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the Non-Bankruptcy Claim, (iii) has *in rem* jurisdiction over the property involved in the Non-Bankruptcy Claim (if applicable) and (iv) is a proper venue.

43. The Stay or any subsequent Plan Injunction (together, the "Stay/Injunction") shall be deemed modified solely for the purpose of, and to the extent necessary for, liquidating Non-Bankruptcy Claims in an appropriate non-bankruptcy forum (if applicable under the ADR Procedures) unless, within 35 days of the ADR Completion Date, the City files a notice (a "Stay Notice") that

13-53846-tjt   Doc 12858-1   Filed 02/29/16   Entered 02/29/16 16:25:38   Page 27 of 91
13-53846-tjt   Doc 12658-1   Filed 11/02/17   Entered 11/02/17 14:36:45   Page 27 of 92
24
219
27

it intends for the Stay/Injunction to remain in effect with respect to a Non-Bankruptcy Claim. If the City files a Stay Notice as set forth above, the Stay/Injunction shall remain in place and the applicable Designated Claimant may seek relief from the Stay/Injunction under the standards set forth in section 362(d) of the Bankruptcy Code.

44.     Notwithstanding anything herein, the City and any Designated Claimant may agree to terminate the ADR Procedures at any time and proceed to litigation of the applicable Designated Claim, as set forth herein.

## The Court Has Authority to Approve the ADR Procedures

45.     This Court is authorized under sections 105 and 502 of the Bankruptcy Code to approve the ADR Procedures. Section 105 of the Bankruptcy Code provides that:

> [t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.

11 U.S.C. § 105(a). This provision, in conjunction with section 502 of the Bankruptcy Code, supports the use of alternative dispute resolution procedures in bankruptcy cases for the expeditious resolution of disputed claims.[14] See Harchar

---

[14]     Section 502 of the Bankruptcy Code provides a framework for the allowance and disallowance of claims and grants bankruptcy courts broad authority to adjudicate matters within that section's ambit as core proceedings. See 11 U.S.C. § 502; 4 COLLIER ON BANKRUPTCY ¶ 502.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2013).

13-53846-tjt   Doc 12858-1   Filed 02/29/16   Entered 02/29/16 14:26:38   Page 28 of 91
13-53846-tjt   Doc 16658-1   Filed 11/12/19   Entered 11/12/19 14:36:45   Page 23 of 92
22
219
28

v. United States (In re Harchar), 694 F.3d 639, 645 (6th Cir. 2012) (Section 105 of

the Bankruptcy Code "provides the bankruptcy courts with authority to exercise

their equitable powers where necessary or appropriate to implement another

Bankruptcy Code provision."); Mitan v. Duval (In re Mitan), 573 F.3d 237, 246

(6th Cir. 2009) (noting "the broad grant of equitable power to bankruptcy courts

found within Section 105(a) [of the Bankruptcy Code]"); Cheesman v. Tenn.

Student Assistance Corp. (In re Cheesman), 25 F.3d 356, 360 (6th Cir. 1994)

("Several courts have suggested that the bankruptcy courts have broad equitable

powers to protect debtors pursuant to § 105(a) [of the Bankruptcy Code ].").[15]

46.    In addition, bankruptcy courts are empowered to

---

[15]    See also John Richards Homes Bldg. Co. v. Adell (In re John Richards
Homes Bldg. Co.), 404 B.R. 220, 227 (E.D. Mich. 2009) ("The clear
language of 11 U.S.C. § 105(a) grants this Court significant equitable
powers as well as latitude in framing the relief necessary to carry out both
the specific provisions of the [Bankruptcy Code] as well as its philosophical
underpinnings.") (citation and quotation marks omitted); see also In re A.H.
Robins Co., 88 B.R. 742, 752 (E.D. Va. 1988) (holding that section 105 of
the Bankruptcy Code, 28 U.S.C. § 1334 and the equitable power of the court
permitted the court to approve channeling provisions, which included
alternative dispute resolution procedures, to assist in the efficient
administration of the debtors' estates and ensure an orderly and fair
distribution to claimants), aff'd sub nom. Menard-Sanford v. Mabey (In re
A.H. Robins Co.), 880 F.2d 694 (4th Cir. 1989); Lyondell Chem. Co. v.
CenterPoint Energy Gas Servs. Inc. (In re Lyondell Chem. Co.), 402 B.R.
571, 587 n.33 (Bankr. S.D.N.Y. 2009) ("[T]he Bankruptcy Court has
authority under section 105 broader than the automatic stay provisions of
section 362 and may use its equitable powers to assure the orderly conduct
of the reorganization proceedings.") (citation and quotation marks omitted).

13-53846-tjt    Doc 12658-1  Filed 02/29/16  Entered 02/29/16 16:25:38  Page 29 of 91
13-53846-tjt    Doc 12658-1  Filed 11/02/19  Entered 11/02/19 14:36:45  Page 29 of 92    29
23
219

issue an order … prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically.

11 U.S.C. § 105(d)(2).

47.     The establishment of alternative dispute resolution procedures for resolving claims is supported by a well established federal policy in favor of permitting parties to resolve disputes through arbitration.  See Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc., 383 Fed. App'x 517, 520 (6th Cir. 2010) (noting that there is "strong federal policy favoring arbitration"); Eichinger v. Kelsey-Hayes Co., No. 09-14092, 2010 WL 2720931, at *3 (E.D. Mich. July 8, 2010) (same); UPF, Inc. v. Motoman, Inc., No. 05- 74929, 2006 WL 1195825, at *2 (E.D. Mich. May 2, 2006) (same); accord Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) ("[I]t is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied.") (citation and quotation marks omitted).

48.     This federal policy also applies in bankruptcy cases.  Indeed, this Court previously has ordered the establishment of mediation procedures to "promote the just, speedy and inexpensive resolution" of disputes within a large bankruptcy case.  See In re Collins & Aikman Corp., 376 B.R. 815, 815-16 (Bankr. E.D. Mich. 2007) (finding that it was "in the best interests of all of the parties" to order mediation procedures to resolve numerous adversary proceedings filed by the

litigation trust established pursuant to the debtors' confirmed plan of reorganization).[16] As one bankruptcy court has stated, "[c]onsensual resolution of litigation has been favored in the law from time immemorial, whether by the parties themselves, or through mediation or other techniques of dispute resolution." Hass v. Hass (In re Hass), 273 B.R. 45, 50 (Bankr. S.D.N.Y. 2002).

49.     Numerous courts have expressed approval for alternative dispute resolution methods, including arbitration, because alternative dispute resolution may offer several practical advantages over ordinary litigation.  As the United States Supreme Court has stated, "[t]he advantages of arbitration are many: it is usually cheaper and faster than litigation; it can have simpler procedural and evidentiary rules; [and] it normally minimizes hostility and is less disruptive of ongoing and future business dealings among the parties . . . ." Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 280 (1995) (quoting H.R. Rep.

---

[16]     See also Spierer v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.), 328 F.3d 829, 831 (6th Cir. 2003) (where the bankruptcy court issued an order establishing alternative dispute resolution procedures for the liquidation of tort claims against the debtor, affirming a ruling of the bankruptcy court denying the motion of certain claimants to lift the automatic stay as to their claims); Willis v. Litzler (In re TIC United Corp.), 194 Fed. App'x 187, 188 (5th Cir. 2006) (affirming a bankruptcy court's order establishing mandatory alternative dispute resolution procedures for all tort claims against the debtor; holding that the bankruptcy court had subject matter jurisdiction to order such relief and that such an order was appropriate because tort claims against the debtor, such as that of the appealing claimant, threatened to deplete the debtor's estate if the automatic stay were lifted to allow claims against the debtor to proceed in nonbankruptcy forums).

No. 97-542, at 13 (1982)); <u>Stout v. J.D. Byrider</u>, 228 F.3d 709, 714 (6th Cir. 2000)

(noting that the Federal Arbitration Act was enacted to, among other things,

"relieve court congestion . . . and to provide parties with a speedier and less costly

alternative to litigation"); <u>Nat'l Broad. Co. v. Bear Stearns & Co.</u>, 165 F.3d 184,

190-91 (2d Cir. 1999) ("The popularity of arbitration rests in considerable part on

its asserted efficiency and cost-effectiveness – characteristics said to be at odds

with full-scale litigation in the courts, and especially at odds with the broad-

ranging discovery made possible by the Federal Rules of Civil Procedure.") .

     50.    Consistent with these authorities and policies, courts have

approved alternative dispute resolution procedures in many other large bankruptcy

cases.  <u>See</u>, <u>e.g.</u>, <u>In re Penson Worldwide, Inc.</u>, No. 13-10061 (Bankr. D. Del.

July 31, 2013) (Order Pursuant to 11 U.S.C. § 105(a) Authorizing Implementation

of Alternative Dispute Resolution Procedures, Including Mandatory Mediation);

<u>In re Hostess Brands, Inc.</u>, No. 12-22052 (Bankr. S.D.N.Y. June 11, 2012) (Order,

Pursuant to Sections 105 and 502 of the Bankruptcy Code, Bankruptcy Rules 3007

and 9019 and Local Bankruptcy Rule 9019-1, Approving Alternative Dispute

Resolution Procedures to Promote the Resolution of Certain Prepetition Claims);

<u>In re Great Atl. & Pac. Tea Co.</u>, No. 10-24549 (Bankr. S.D.N.Y. Oct. 21, 2011)

(Order Approving Certain Personal Injury Resolution Procedures); <u>In re Motors</u>

<u>Liquidation Co.</u>, No. 09-50026 (Bankr. S.D.N.Y. Oct. 25, 2010) (Amended Order

Authorizing Implementation of Alternative Dispute Resolution Procedures); In re Dana Corp., No. 06-10354 (Bankr. S.D.N.Y. May 23, 2007) (Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019, Approving Alternative Dispute Resolution Procedures to Promote the Resolution of Certain Prepetition Claims); In re The Austin Co., No. 05-93363 (Bankr. N.D. Ohio Aug. 24, 2006) (Order Approving Debtors' Proposed (a) Claims Resolution Procedures for Contested Claims, and (b) Alternative Dispute Resolution Procedures for Liquidating Litigation Claims).

51.     Due to the nature of factual and legal issues involved in, or other circumstances related to, the numerous disputed personal injury and other claims in this case, the City believes that the ADR Procedures will expedite the resolution of Designated Claims and limit the number of additional Lift Stay Motions filed or prosecuted against the City and, therefore, promote the efficient and expeditious liquidation of the Designated Claims and facilitate completion of the City's restructuring.

52.     Since the Petition Date, the Stay generally has shielded the City from the burden and expense of litigating the claims of claimants who have not obtained a lifting or modification of the Stay.  The City realizes, however, that a process for liquidating disputed litigation claims is a necessary component of its restructuring, and, with respect to many of the Initial Designated Claims in

particular, the Court lacks jurisdiction to assist with the liquidation of the claims because they are personal injury tort or wrongful death claims.

53.     Moreover, particularly given the anticipated size of the disputed claims pool in this case, the City believes that a fair and efficient mechanism must be developed to liquidate disputed claims, where appropriate, short of full-blown litigation.  If the City were able to pursue the liquidation of the Designated Claims only through litigation, the administration and liquidation of these claims would result in a substantial drain on the City's limited resources.

54.     Thus, under the circumstances, the City believes that the ADR Procedures will assist the City, the Designated Claimants and the Court in the administration and liquidation of the Designated Claims, to the ultimate benefit of all stakeholders in this case.  Among other things, the ADR Procedures will:  (a) help minimize the expense, delay and uncertainty in liquidating the Designated Claims; (b) provide the City with a streamlined, well-defined and procedurally sound mechanism to pursue liquidation of many complex and significant disputed claims asserted in this case; (c) reduce the need to address the merits of the Designated Claims through full-blown litigation in this Court or other tribunals; (d) preserve the parties' respective procedural and substantive rights; and (e) provide a centralized mechanism for the liquidation of those Designated Claims that this Court lacks jurisdiction to liquidate.  Accordingly, the ADR Procedures

should be approved, and the City should be authorized to implement these procedures as described herein.

## Reservation of Rights

55.     The City files this Motion without prejudice to or waiver of its rights pursuant to section 904 of the Bankruptcy Code, and nothing herein is intended to, shall constitute or shall be deemed to constitute the City's consent, pursuant to section 904 of the Bankruptcy Code, to this Court's interference with (a) any of the political or governmental powers of the City, (b) any of the property or revenues of the City or (c) the City's use or enjoyment of any income-producing property.

## Notice

56.     Notice of this Motion has been given to (a) all entities that have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (or their counsel if known) and (b) all entities that are parties to litigation or that have threatened litigation against the City according to the City's books and records (or their counsel if known) as set forth on Schedule H to the List of Claims.[17]  The City submits that no other or further notice need be provided.

---

[17]     The City believes that all known holders of Initial Designated Claims are among the entities identified on Schedule H to the List of Claims.

29
13-53846-tjt    Doc 18658-1    Filed 02/20/18    Entered 02/20/18 16:25:38    Page 35 of 91
13-53846-tjt    Doc 18658-1    Filed 11/12/19    Entered 11/12/19 14:36:45    Page 35 of 91
219
35

## Statement of Concurrence

57.     Local Rule 9014-1(g) provides that "in a bankruptcy case unless it is unduly burdensome, the motion shall affirmatively state that concurrence of opposing counsel in the relief sought has been requested on a specified date and that the concurrence was denied."  Local Rule 9014-1(g).  Given the number of parties and potential parties involved in this case and the lack of known opposing parties who would be adversely impacted by the relief requested herein, it would be impracticable (and, with regard to unknown parties, impossible) for the City to affirmatively seek the concurrence of each opposing counsel interested in the relief sought herein.  Accordingly, the City submits that imposing the requirements of Local Rule 9014-1(g) in this matter would be "unduly burdensome" and requests that its requirements be waived.

## Statement Regarding Evidentiary Nature of Hearing

58.     The City believes that this Motion raises no factual issues and anticipates that an evidentiary hearing on this Motion will not be required.

## No Prior Request

59.     No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the City respectfully requests that the Court:  (a) enter an order substantially in the form attached hereto as Exhibit 1, granting the relief

requested herein; and (b) grant such other and further relief to the City as the Court may deem proper.

Dated:  November 12, 2013          Respectfully submitted,


                                   /s/ Heather Lennox
                                  David G. Heiman (OH 0038271)
                                  Heather Lennox (OH 0059649)
                                  JONES DAY
                                  North Point
                                  901 Lakeside Avenue
                                  Cleveland, Ohio  44114
                                  Telephone:  (216) 586-3939
                                  Facsimile:  (216) 579-0212
                                  dgheiman@jonesday.com
                                  hlennox@jonesday.com

                                  Bruce Bennett (CA 105430)
                                  JONES DAY
                                  555 South Flower Street
                                  Fiftieth Floor
                                  Los Angeles, California 90071
                                  Telephone:  (213) 243-2382
                                  Facsimile:  (213) 243-2539
                                  bbennett@jonesday.com

                                  Jonathan S. Green (MI P33140)
                                  Stephen S. LaPlante (MI P48063)
                                  MILLER, CANFIELD, PADDOCK AND
                                     STONE, P.L.C.
                                  150 West Jefferson
                                  Suite 2500
                                  Detroit, Michigan  48226
                                  Telephone:  (313) 963-6420
                                  Facsimile:  (313) 496-7500
                                  green@millercanfield.com
                                  laplante@millercanfield.com

                                  ATTORNEYS FOR THE CITY

# SUMMARY OF ATTACHMENTS

The following documents are attached to this Motion, labeled in accordance with Local Rule 9014-1(b).

| | |
|---|---|
| Exhibit 1 | Proposed Form of Order |
| Exhibit 2 | Notice |
| Exhibit 3 | None [Brief Not Required] |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | None [No Affidavits Filed Specific to This Motion] |
| Exhibit 6 | Proposed Alternative Dispute Resolution Procedures |

# EXHIBIT 1

## (Form of Proposed Order)

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
-----------------------------------------------------x
                                                     :
In re                                                : Chapter 9
                                                     :
CITY OF DETROIT, MICHIGAN,                           : Case No. 13-53846
                                                     :
                                Debtor.              : Hon. Steven W. Rhodes
                                                     :
                                                     :
                                                     :
-----------------------------------------------------x
```

## ORDER, PURSUANT TO SECTIONS 105 AND 502 OF THE BANKRUPTCY CODE, APPROVING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES TO PROMOTE THE LIQUIDATION OF CERTAIN PREPETITION CLAIMS

This matter coming before the Court on the Motion of Debtor,

Pursuant to Sections 105 and 502 of the Bankruptcy Code, For Entry of an Order

Approving Alternative Dispute Resolution Procedures to Promote the Liquidation

of Certain Prepetition Claims (the "Motion"), filed by the City of Detroit

(the "City"); the Court having reviewed the Motion and the proposed alternative

dispute resolution procedures attached to the Motion as Exhibit 6 (the "ADR

Procedures")[1] and having considered the statements of counsel and the evidence

adduced with respect to the Motion at a hearing before the Court (the "Hearing");

the Court finding that: (a) the Court has jurisdiction over this matter pursuant to

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings
       given to such terms in the ADR Procedures.

28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C.

§ 157(b); and (c) notice of the Motion and the Hearing was sufficient under the

circumstances; and the Court having determined that the legal and factual bases set

forth in the Motion and at the Hearing establish just cause for the relief granted

herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The ADR Procedures are approved in all respects, pursuant to

sections 105 and 502 of the Bankruptcy Code.  For the avoidance of doubt, all of

the terms and provisions of the ADR Procedures are approved, whether or not such

terms and provisions are restated below.

3.      The City is authorized to take any and all actions that are

necessary or appropriate to implement the ADR Procedures.  Nothing in this Order

or the ADR Procedures, however, shall obligate the City to settle or pursue

settlement of any particular Designated Claim.  Any such settlements may be

pursued and agreed upon as the City believes are reasonable and appropriate in its

sole discretion, subject to the terms and conditions set forth in the ADR Procedures.

4.      From the date of this Order until the date that is 119 days after

the General Bar Date, the holders of the Initial Designated Claims (and any other

person or entity asserting an interest in such claim) shall be enjoined (the "Initial Injunction") from filing or prosecuting Stay Motions with respect to such Initial Designated Claims.  The Initial Injunction is separate and distinct from the ADR Injunction as defined and described below

5.  Upon the service of an ADR Notice on any Designated Claimant, such Designated Claimant (and any other person or entity asserting an interest in the relevant Designated Claim) shall be enjoined (the "ADR Injunction") from filing or prosecuting any Stay Motion or otherwise seeking to establish, liquidate, collect on or enforce the Designated Claim(s) identified in the ADR Notice, other than by liquidating the claim through the ADR Procedures. The ADR Injunction shall expire with respect to a Designated Claim only when the ADR Procedures have been completed as to that claim.  For the avoidance of doubt, the City may serve an ADR Notice on any Designated Claimant at any time, and the ADR Injunction shall become effective at the time of service without any further action by the Court.

6.  Except as expressly set forth in the ADR Procedures, the expiration of the Initial Injunction and/or the ADR Injunction shall not extinguish, limit or modify the Stay or any Plan Injunction, which shall remain in place to the extent then in effect, except as otherwise provided in the ADR Procedures.

CLI-2150652v9

The Initial Injunction and the ADR Injunction shall be in addition to the Stay and any Plan Injunction.

7.     The City in its sole discretion (a) may elect not to send an ADR Notice to the holder of an Initial Designated Claim and (b) instead file and serve on the applicable Designated Claimant a notice (a "Stay Modification Notice") that the Stay is lifted to permit the underlying claim to be liquidated in an appropriate non-bankruptcy forum.  In that event, immediately upon the filing of the Stay Modification Notice, the Stay shall be deemed modified with respect to the applicable Initial Designated Claim solely to permit the liquidation of the claim in a non-bankruptcy forum.  The liquidation of any such Initial Designated Claim shall proceed in either (a) the non-bankruptcy forum in which the Initial Designated Claim was pending on the Petition Date, if any, subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Initial Designated Claim was not pending in any forum on the Petition Date, then in the United States District Court for the Eastern District of Michigan (the "District Court") or such other non-bankruptcy forum selected by the Designated Claimant that (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the claim, (iii) has *in rem* jurisdiction over the property involved in the Initial Designated Claim (if applicable) and (iv) is a

proper venue. If necessary, any disputes regarding the application of the foregoing terms, conditions and limitations shall be determined by this Court; provided that disputes about the jurisdiction of a matter presented to a non-bankruptcy court may be determined by such court.

8. The resolution of a Designated Claim pursuant to the ADR Procedures or the entry of an Arbitration Award shall not grant the Designated Claimant any enforcement rights except as permitted under a Chapter 9 Plan, and the Stay and any Plan Injunction shall apply to any such resolved Designated Claim or Arbitration Award. Any aspect of an Arbitration Award that violates the foregoing rules and limitations shall be void without further action of any court.

9. Designated Claims not resolved through the ADR Procedures ("Unresolved Designated Claims") shall proceed to litigation to be liquidated. Unless the City agrees otherwise, liquidation of any Unresolved Designated Claim shall proceed in this Court (to the extent that this Court has subject matter jurisdiction over the Unresolved Designated Claim) as soon as practicable following the date that the ADR Procedures are concluded for an Unresolved Designated Claim (the "ADR Completion Date"). Such litigation will be initiated by the filing of a claim objection by the City (a "Claim Objection") within 35 days after the ADR Completion Date (the "Claim Objection Deadline"). Disputes over

the subject matter jurisdiction of this Court shall be determined by this Court, and the Designated Claimants shall retain whatever rights they have to seek withdrawal of the reference, abstention or other procedural relief in connection with a Claim Objection.

10.     If an Unresolved Designated Claim cannot be adjudicated in this Court because of lack of, or limitations upon, subject matter jurisdiction, or if the City does not file a Claim Objection by the Claim Objection Deadline (any such claim, a "Non-Bankruptcy Claim"), then liquidation of any such Non-Bankruptcy Claim shall proceed in either (a) the non-bankruptcy forum in which the Non-Bankruptcy Claim was pending on the Petition Date, if any, subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Non-Bankruptcy Claim was not pending in any forum on the Petition Date, then in the District Court or such other nonbankruptcy forum selected by the Designated Claimant that (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the Non-Bankruptcy Claim, (iii) has *in rem* jurisdiction over the property involved in the Non-Bankruptcy Claim (if applicable) and (iv) is a proper venue.  If necessary, any disputes regarding the application of the foregoing terms, conditions and limitations shall be determined

by this Court; provided that disputes about the jurisdiction of a matter presented to a non-bankruptcy court may be determined by such court.

11.     The Stay or any subsequent Plan Injunction (together, the "Stay/Injunction") shall be deemed modified solely for the purpose of, and to the extent necessary for, liquidating Non-Bankruptcy Claims in an appropriate non-bankruptcy forum (as applicable under these ADR Procedures) unless, within 35 days of the ADR Completion Date, the City files a notice (a "Stay Notice") that it intends for the Stay/Injunction to remain in effect with respect to a Non-Bankruptcy Claim.  If the City files a Stay Notice as set forth above, the Stay/Injunction shall remain in place, and the applicable Designated Claimant may seek relief from the Stay/Injunction under the standards set forth in section 362(d) of the Bankruptcy Code.

12.     Nothing contained in this Order or the ADR Procedures shall (a) prevent the City and any Designated Claimant from settling any Designated Claim at any time or (b) limit, expand or otherwise modify the City's authority to settle or pay claims or the City's authority over its property and revenues under section 904 of the Bankruptcy Code.  The authority to settle Designated Claims pursuant to the ADR Procedures will be in addition to, and cumulative with, any existing authority to resolve claims against the City.

13.    The terms of this Order shall not be deemed to preclude any party in interest from objecting to any Designated Claim to the extent such entity has standing to assert an objection in accordance with Bankruptcy Code and applicable law.

14.    This Court shall retain jurisdiction for all purposes specified in the ADR Procedures and with respect to all disputes arising from or relating to the interpretation, implementation and/or enforcement of this Order and the ADR Procedures.

# EXHIBIT 2

## (Notice)

13-53846-tjt   Doc 13578-1   Filed 02/20/18   Entered 02/20/18 14:24:38   Page 49 of 91
13-53846-tjt   Doc 13658-1   Filed 11/12/19   Entered 11/12/19 14:36:43   Page 48 of 92
219
49

Form B20A (Official Form 20A)
12/1/10

# UNITED STATES BANKRUPTCY COURT
## Eastern District of Michigan

In re:

**CITY OF DETROIT, MICHIGAN,**

**Debtor.**

**Chapter: 9**

**Case No.: 13-53846**

**Judge:  Hon. Steven W. Rhodes**

Address:  2 Woodward Avenue, Suite 1126
          Detroit, Michigan  48226

Last four digits of Social Security or
Employer's Tax Identification (EIN) No(s).(if any):  38-6004606

## NOTICE OF MOTION OF DEBTOR,
### PURSUANT TO SECTIONS 105 AND 502 OF THE BANKRUPTCY CODE,
### FOR ENTRY OF AN ORDER APPROVING ALTERNATIVE DISPUTE RESOLUTION
### PROCEDURES TO PROMOTE THE LIQUIDATION OF CERTAIN PREPETITION CLAIMS

      The City of Detroit, Michigan (the "City") has filed papers with the Court seeking entry of an order, pursuant to sections 105 and 502 of the Bankruptcy Code, approving alternative dispute resolution procedures to promote the resolution of certain prepetition claims.

      **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

      If you do not want the court to grant the relief sought in the motion, or if you want the court to consider your views on the motion, **on or by November 26, 2013**, you or your attorney must:

1.         File with the court a written response or an answer, explaining your position at:[1]

### United States Bankruptcy Court
211 W. Fort Street, Suite 2100
Detroit, Michigan  48226

      If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.  All attorneys are required to file pleadings electronically.

---

[1]       Any response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

13-53846-tjt   Doc 12658-1   Filed 02/20/18   Entered 02/20/18 14:36:45   Page 49 of 92
13-53846-swr   Doc 1663   Filed 11/12/13   Entered 11/12/13 14:26:38   Page 50 of 219

50

You must also mail a copy to:

David G. Heiman
Heather Lennox
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114

Bruce Bennett
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071

Jonathan S. Green
Stephen S. LaPlante
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan  48226

2.      If a response or answer is timely filed and served, the Court will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

   **If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Dated:     November 12, 2013          Respectfully submitted,


/s/  Heather Lennox
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 963-6420
Facsimile:  (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY

# **EXHIBIT 4**

## **(Certificate of Service)**

# CERTIFICATE OF SERVICE

I, Heather Lennox, hereby certify that the foregoing Motion of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims was filed and served via the Court's electronic case filing and noticing system on this 12th day of November, 2013.

/s/ Heather Lennox

# **EXHIBIT 6**

## **(Proposed Alternative Dispute Resolution Procedures)**

------------------------------------------------------x
                       :

In re                         :         Chapter 9
                               :

CITY OF DETROIT, MICHIGAN,    :         Case No. 13-53846
                               :

                Debtor.      :         Hon. Steven W. Rhodes
                               :
                               :
------------------------------------------------------x

## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

On **[_____]**, 2013, the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") entered an order (Docket No. __) (the "ADR Order") in the above-captioned case under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") approving and adopting the following alternative dispute resolution procedures (the "ADR Procedures") with respect to certain claims asserted against the City of Detroit (the "City"):

I.    **CLAIMS SUBJECT TO THE
ADR PROCEDURES AND ADR INJUNCTION**

A.    **Claims Subject to the ADR Procedures**

The claims subject to the ADR Procedures consist of all claims designated by the City under the notice procedures set forth below (collectively, the "Designated Claims"). The City may designate for liquidation pursuant to the ADR Procedures any proof of claim timely asserted in these cases by serving a notice (the "ADR Notice") on the applicable claimant, if the City believes, in its sole discretion, that the ADR Procedures would promote the resolution of such claim and serve the intended objectives of the ADR Procedures. Without limiting the foregoing, any and all timely filed prepetition claims in the following categories shall be Designated Claims hereunder prior to the City serving an ADR Notice on the applicable claimant: (1) personal injury tort or wrongful death claims, (2) property damage claims or (3) claims relating to the operation of motor vehicles for which the City is self-insured pursuant to chapter 31 of Michigan's

Insurance Code of 1956, M.C.L. §§ 500.3101, et seq. (collectively, the "Initial Designated Claims")  The holders of the Designated Claims, including Initial Designated Claims, are referred to herein as the "Designated Claimants."

The Designated Claims shall not include claims solely asserting workers' compensation liabilities against the City, which claims the City continues to resolve in the ordinary course pursuant to its usual workers' compensation procedures.

## B.    Injunctions in Support of the ADR Procedures

The Bankruptcy Court has established **[_____, 2014]** as the general bar date for filing proofs of claim in the City's chapter 9 case (the "General Bar Date").  For the period commencing on the date of entry of the ADR Order until the date that is 119 days after the General Bar Date (the "Initial Designation Period"), any Designated Claimant holding an Initial Designated Claim (and any other person or entity asserting an interest in such claim) shall be enjoined (the "Initial Injunction") from filing or prosecuting, with respect to such Initial Designated Claim, any motion (a "Stay Motion") for relief from either (1) the automatic stay of sections 362 and 922 of the Bankruptcy Code, as modified and extended from time to time by orders of the Bankruptcy Court (the "Stay"), or (2) any similar injunction (a "Plan Injunction") that may be imposed upon the confirmation or effectiveness of a plan of adjustment of debts confirmed in the City's chapter 9 case (a "Chapter 9 Plan").  The Initial Injunction is separate and distinct from the ADR Injunction as defined and described below.  Any Designated Claimant that is subject to the Initial Injunction with respect to an Initial Designated Claim shall instead become subject to the ADR Injunction upon the service of an ADR Notice with respect to the underlying Designated Claim, as described in the following paragraph, whether that occurs during or after the Initial Designation Period.

Upon service of an ADR Notice on any Designated Claimant under Section II.A.1 below, such Designated Claimant (and any other person or entity asserting an interest in the relevant Designated Claim) shall be enjoined (the "ADR Injunction") from filing or prosecuting any Stay Motion or otherwise seeking to establish, liquidate, collect on or enforce the Designated Claim(s) identified in the ADR Notice, other than by liquidating the claim through the ADR Procedures described herein.  The ADR Injunction shall expire with respect to a Designated Claim only when the ADR Procedures have been completed as to that Designated

Claim.[1]  For the avoidance of doubt, the City may serve an ADR Notice on any Designated Claimant at any time, and the ADR Injunction shall become effective at the time of service without any further action by the Bankruptcy Court.

Except as expressly set forth herein or in a separate order of the Bankruptcy Court, the expiration of the Initial Injunction or the ADR Injunction shall not extinguish, limit or modify the Stay or any Plan Injunction, and the Stay and any Plan Injunction shall remain in place to the extent then in effect, except as otherwise provided herein.  The Initial Injunction and the ADR Injunction shall be in addition to the Stay and any Plan Injunction.

With respect to any Initial Designated Claim, the City in its sole discretion (1) may elect not to send an ADR Notice to the Designated Claimant (i.e., not send the claim to the ADR Procedures) and (2) instead may file and serve on the applicable Designated Claimant a notice that the Stay is lifted to permit the underlying claim to be liquidated in a non-bankruptcy forum consistent with the terms, conditions and limitations of Section II.E.2 below (a "Stay Modification Notice").  In that event, immediately upon the filing of the Stay Modification Notice, the Stay shall be deemed modified with respect to the applicable Initial Designated Claim solely to permit the liquidation of the claim in a non-bankruptcy forum consistent with the terms, conditions and limitations of Section II.E.2 below.

## II.  THE ADR PROCEDURES

### A.  Offer Exchange Procedures

The first stage of the ADR Procedures will be the following offer exchange procedures that require the parties to exchange settlement offers and thereby provide an opportunity to resolve the underlying Designated Claim on a consensual basis without any further proceedings (the "Offer Exchange Procedures").

---

[1]  The ADR Procedures expire upon any resolution of a Designated Claim through the ADR Procedures, upon the Case Evaluation Termination Date (as defined below) for Designated Claims not resolved though the ADR Procedures or at any other time that the ADR Procedures are terminated by agreement of the parties or the terms hereof.

1. *Service of the ADR Notice*
   *and Settlement Offer by the City*

(a)    At any time following the filing of a proof of claim by the applicable Designated Claimant, [2] the City may serve upon the Designated Claimant, at the address listed on the Designated Claimant's most recently filed proof of claim or amended proof of claim, as well as upon any counsel of record in these cases for the Designated Claimant, the following materials (collectively, the "ADR Materials"):  (i) an ADR Notice, [3] (ii) a copy of the ADR Order and (iii) a copy of these ADR Procedures.  For transferred claims, the City also shall serve a copy of the ADR Materials on the transferee identified in the notice of transfer of claim.  The ADR Notice shall serve as (i) notice that a claim has been designated by the City as a Designated Claim (if not already designated herein as an Initial Designated Claim) and (ii) notice that the Designated Claim has been submitted to the ADR Procedures.  Promptly following the service of the ADR Materials on any Designated Claimant, the City shall file a notice with the Court indicating that the Designated Claim has been submitted to the ADR Procedures.

(b)    In the ADR Notice, the City:  (i) may request that the Designated Claimant verify or, as needed, correct, clarify or supplement certain information regarding the Designated Claim; (ii) shall include an offer by the City to settle the Designated Claim (a "Settlement Offer"); and (iii) may state whether the City consents to the adjudication of the Designated Claim by binding arbitration, as set forth below, if the Designated Claim is not resolved pursuant to the Offer Exchange Procedures.  The ADR Notice shall require the Designated Claimant to sign and return the ADR Notice along with a Permitted Response (as defined below) to the City so that it is received by the City no later than 28 days [4] after the mailing of the ADR Notice (the "Settlement Response Deadline").

---

[2]    The ADR Procedures will not be initiated with respect to a claim unless and until a timely proof of claim is filed.

[3]    The form of the ADR Notice is attached hereto as Annex 1 and incorporated herein by reference.  Although the City anticipates that the ADR Notice will be substantially in the form of Annex 1, the City reserves the right to modify the ADR Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

[4]    Rule 9006(a) of the Federal Rules of Bankruptcy Procedure shall apply to all time periods calculated in the ADR Procedures.

(c)     *Failure to sign and return the ADR Notice or to include a Permitted Response with the returned ADR Notice by the Settlement Response Deadline shall be deemed to be a denial by the Designated Claimant of the Settlement Offer, and the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.*

## 2.     *The Permitted Responses*

The only permitted responses to a Settlement Offer (together, the "Permitted Responses") are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (as further defined below, a "Counteroffer").  *If the ADR Notice is returned without a response or with a response that is not a Permitted Response, the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.*

## 3.     *The Counteroffer*

The Counteroffer shall be signed by an authorized representative of the Designated Claimant and shall identify the proposed amount that the Designated Claimant will accept as a prepetition claim against the City in settlement of the Designated Claim.  The Counteroffer may not exceed the amount or improve the priority set forth in the Designated Claimant's most recent timely filed proof of claim or amended proof of claim (but may liquidate any unliquidated amounts expressly referenced in a proof of claim).[5]  *A Counteroffer may not be for an unknown, unliquidated or indefinite amount or priority, or the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.* All Counteroffers shall be for prepetition claims payable pursuant to the Chapter 9 Plan.  See Section II.D below.

## 4.     *Consent to Subsequent Binding Arbitration*

As described in Sections II.B and II.C below, in the absence of a settlement at the conclusion of the Offer Exchange Procedures, the ADR Procedures contemplate submitting Designated Claims to Case Evaluation (as defined below).  Where no settlement is reached following Case Evaluation, the ADR Procedures contemplate submitting Designated Claims to binding arbitration,

---

[5]     A Designated Claimant may not amend its proof of claim solely for the purpose of proposing a Counteroffer of a higher amount or a better priority. Any dispute over the validity of any Counteroffer may be submitted by the City to the Bankruptcy Court for review.

if the City and the Designated Claimant both agree to binding arbitration of the applicable Designated Claim. When returning the ADR Notice, therefore, the Designated Claimant is required to notify the Debtors if it consents to (and thereby opts in to) or does *not* consent to (and thereby opts out of) binding arbitration in the event that its Designated Claim ultimately is not resolved through the Offer Exchange Procedures or Case Evaluation. If the Designated Claimant returns the ADR Notice without expressly notifying the Debtors that it consents to, and seeks to opt into, binding arbitration, the Designated Claimant shall be deemed to have opted out of binding arbitration. Any Designated Claimant that does not consent to binding arbitration in its response to the ADR Notice may later consent in writing to binding arbitration, subject to the agreement of the City. If the City did not consent to binding arbitration in the ADR Notice, it may later consent to binding arbitration at any time in the process by providing a written notice to the Designated Claimant (including through an Arbitration Notice, as defined below). Consent to binding arbitration, once given, cannot subsequently be withdrawn. In addition, any attempt to refuse binding arbitration in the response to the ADR Notice shall be ineffective if the Designated Claimant previously consented in writing to binding arbitration as a means to resolve its claim(s), either before or after the commencement of the City's chapter 9 case on July 18, 2013 (the "<u>Petition Date</u>").

5.     *<u>The City's Response to a Counteroffer</u>*

The City must respond to any Counteroffer within 14 days after its receipt of the Counteroffer (the "<u>Response Deadline</u>"), by returning a written response (as further defined below, a "<u>Response Statement</u>"). The Response Statement shall indicate that the City either: (a) accepts the Counteroffer; (b) rejects the Counteroffer, with or without making a revised Settlement Offer (a "<u>Revised Settlement Offer</u>"); (c) requests additional information or documentation so that the City may respond in good faith to the Counteroffer; or (d) terminates the Offer Exchange Procedures and advances the Designated Claim the next step of the ADR Procedures, as set forth below.

      (a)     *The City's Rejection of the Counteroffer*
                    *Without Making a Revised Settlement Offer*

If the City rejects the Counteroffer without making a Revised Settlement Offer, (i) the Offer Exchange Procedures will be deemed terminated with respect to the Designated Claim and (ii) the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.

(b)    *The City's Failure to Respond*

If the City fails to respond to the Counteroffer by the Response Deadline:  (i) the Counteroffer will be deemed rejected by the City, (ii) the Offer Exchange Procedures will be deemed terminated with respect to the Designated Claim and (iii) the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.

(c)    *Revised Settlement Offer*

If the City makes a Revised Settlement Offer by the Response Deadline, the Designated Claimant may accept the Revised Settlement Offer by providing the City with a written statement of acceptance no later than 14 days after the date of service of the Revised Settlement Offer (the "Revised Settlement Offer Response Deadline").  If the Designated Claimant does not accept the Revised Settlement Offer by the Revised Settlement Offer Response Deadline, the Revised Settlement Offer will be deemed rejected, and the Designated Claim automatically will advance to the next step of the ADR Procedures, as set forth below.

(d)    *Request for Additional Information*

If the City requests additional information or documentation by the Response Deadline, the Designated Claimant shall serve such additional information or documentation so that it is received by the City within 14 days after such request.  If the Designated Claimant timely responds, the City shall have 14 days to provide an amended Response Statement, which may include a Revised Settlement Offer as a counter to the Counteroffer.  If the City does not provide an amended Response Statement within this period, or if the Designated Claimant fails to provide the requested information or documentation within the time allotted, the Designated Claim automatically will proceed to the next step of the ADR Procedures, as set forth below.

6.    *Offer Exchange Termination Date*

Upon mutual written consent, the City and a Designated Claimant may exchange additional Revised Settlement Offers and Counteroffers for up to 21 days after the later of (a) the Revised Settlement Offer Response Deadline or (b) the expiration of the applicable timeframes provided for in Section II.A.5(d) above with respect to requesting, receiving and responding to additional information or documentation.  Any date that the Offer Exchange Procedures

conclude without a resolution is referred to herein as the "<u>Offer Exchange Termination Date</u>."

      7.    *Ability to Settle Claims*

Nothing herein shall limit the ability of a Designated Claimant and the City to settle a Designated Claim by mutual consent at any time. All such settlements shall be subject to the terms of Section II.D below.

## B.    Case Evaluation

The next step of the ADR Procedures following the Offer Exchange Procedures is case evaluation ("<u>Case Evaluation</u>") before the Wayne County Mediation Tribunal Association (the "<u>MTA</u>") under the procedures set forth in Rules 2.403 and 2.404 of the Michigan Court Rules of 1985 ("<u>MCR</u>"), as provided for by Rule 16.3 of the Local Rules of the United States District Court for the Eastern District of Michigan. Copies of MCR §§ 2.403 and 2.404 are attached hereto collectively as <u>Annex II</u>.

All Designated Claims not settled through the Offer Exchange Procedures shall be referred to Case Evaluation unless the City and the applicable Designated Claimant previously have undergone Case Evaluation with respect to the applicable Designated Claim.[6] Additional parties may intervene in the Case Evaluation process solely by agreement between the City and the applicable Designated Claimant.

      1.    *Prioritization of Referral of*
              *Designated Claims to Case Evaluation*

As soon as reasonably practicable following the Offer Exchange Termination Date with respect to any Designated Claim, the City shall issue to the applicable Designated Claimant, any other parties to the Case Evaluation and the Clerk of the MTA (the "<u>ADR Clerk</u>"), a notice of case evaluation (a "<u>Case Evaluation Notice</u>") substantially in the form attached hereto as <u>Annex III</u>. Given the large number of actual and potential prepetition litigation claims asserted or to

---

[6]   Where the City and the applicable Designated Claimant previously underwent Case Evaluation with respect to the applicable Designated Claim, then the Designated Claim will proceed to the next step of the ADR Procedures unless the parties agree to conduct Case Evaluation once again with respect to the Designated Claim.

-8-

be asserted against the City, however, the City anticipates that it will be necessary to prioritize the initiation of Case Evaluation proceedings. In prioritizing among Designated Claims, the City may consider, along with any other factors the City deems relevant or appropriate in its sole discretion, (a) the absolute or relative difference between the final offers made by the City and the applicable Designated Claimant during the Offer Exchange Procedures, (b) the nature and complexity of the Designated Claim, (c) the status of any underlying lawsuit or (d) whether the Designated Claimant returned the ADR Notice and its level of participation in the ADR Procedures.

2.     *Summary of Case Evaluation Rules and Procedures*

Except to the extent modified by the terms of these ADR Procedures, the Case Evaluation of any Designated Claim shall be governed by the rules and procedures set forth in MCR §§ 2.403 and 2.404. The following provisions of MCR § 2.403, however, are expressly inapplicable to these Case Evaluation procedures: (a) MCR §§ 2.403(A-C) (relating to the assignment of cases to Case Evaluation) and (b) MCR §§ 2.403(N-O) (relating to the posting of bonds for frivolous claims and defenses and the awarding of costs against a party that rejects a Case Evaluation and subsequently fails to achieve a superior result at trial).

The purpose of the Case Evaluation process is to obtain a nonbinding, confidential, monetary valuation of each Designated Claim that serves as a focal point for ongoing settlement negotiations between the parties. Each Designated Claim shall be evaluated by a panel of three case evaluators (the "Case Evaluation Panel"). The Case Evaluation Panel hears the arguments of the parties at a short hearing (the "Case Evaluation Hearing") and, within 14 days following the Case Evaluation Hearing, issues its written evaluation of the Designated Claim.

(a)     *Fees and Costs for Case Evaluation, Derivative Claims*

Pursuant to MCR § 2.403(H), the fees and costs for each Case Evaluation proceeding will be $75.00 payable by each party to the ADR Clerk. Where one claim is derivative of another within the Case Evaluation proceeding, the claims will be treated as a single claim, with one fee to be paid and a single valuation to be made by the Case Evaluation Panel.[7]

---

[7]     If for any reason the costs for any Case Evaluation proceeding exceeds $75.00 per party, such costs shall be borne equally by each of the parties.

(b)     *Scheduling of the Case Evaluation Hearing*

The ADR Clerk shall select the members of the Case Evaluation Panel in accordance with MCR § 2.404(C).  The ADR Clerk shall set a time and place for the Case Evaluation Hearing, consistent with MCR § 2.403(G)(1), and provide notice to the members of the Case Evaluation Panel and the parties to the Case Evaluation at least 42 days prior to the date set for the Case Evaluation Hearing. Adjournments of the Case Evaluation Hearing may be granted only for good cause.

(c)     *The Case Evaluation Summary*

At least 14 days prior to the date scheduled for the Case Evaluation Hearing, each party shall serve a copy of a case evaluation summary (a "Case Evaluation Summary") and supporting documents on the other parties to the Case Evaluation and file a proof of service and three copies of the Case Evaluation Summary with the ADR Clerk.  The Case Evaluation Summary shall consist of a concise statement setting forth the party's factual and legal position on issues presented by the Designated Claim.  The Case Evaluation Summary shall not exceed 20 pages, double spaced, exclusive of attachments.  Quotations and footnotes may be single spaced.  At least one-inch margins shall be used, and printing shall not be smaller than 12-point font.  See MCR § 2.403(I)(3).

(d)     *Conduct of the Case Evaluation Hearing*

The Case Evaluation Hearing shall be conducted in accordance with MCR § 2.403(J).  Thus, for example:  (i) oral presentation shall be limited to 15 minutes per side unless multiple parties or unusual circumstances warrant addition time; (ii) no testimony will be taken or permitted of any party, (iii) factual information having a bearing on damages or liability must be supported by documentary evidence, if possible; and (iv) statements by the attorneys and the briefs or summaries are not admissible in any court or evidentiary proceeding.

(e)     *The Case Evaluation Panel's Decision*

Within 14 days following the Case Evaluation hearing, the Case Evaluation Panel will estimate the value of the Designated Claim (the "Evaluation") and notify each party of the Evaluation in writing.  The Case Evaluation Panel shall only liquidate the monetary value, if any, of the Designated Claim in light of the evidence and arguments presented at in the Case Evaluation Summary and at the Case Evaluation Hearing and shall not raise or purport to determine any issues relating to the potential treatment or priority of the Designated Claim in this

chapter 9 case. All claims subject to an Evaluation shall be prepetition claims subject to treatment under a Chapter 9 Plan.

(f) *Acceptance or Rejection of the Evaluation*

Within 28 days following the issuance of the Evaluation by the Case Evaluation Panel, each of the parties shall file a written acceptance or rejection of the Evaluation with the ADR Clerk. Each acceptance or rejection must encompass all claims as between any two parties to the Case Evaluation. The failure to file a written acceptance or rejection within 28 days constitutes a rejection of the Evaluation.

If the ADR Clerk informs such parties that they both have accepted the Evaluation then the Designated Claim shall be deemed settled, and the settlement as between such parties shall be documented and made of record in accordance with the procedures set forth in Section II.D below.

If one or both parties rejects the Evaluation, then the parties shall have a further 28 days to negotiate a consensual settlement of the Designated Claim. If no settlement is reached by the end of this period (the "Case Evaluation Termination Date") then the Designated Claim shall proceed to binding arbitration, if applicable.

## C. **Binding Arbitration**

If the Designated Claimant previously consented in writing to binding arbitration as a means to resolve its claim(s) as set forth above (either in its response to the ADR Notice or by the terms of a separate written agreement either before or after the Petition Date), and if the City agrees to binding arbitration, then the Designated Claim shall be subject to binding arbitration, if such claim is not resolved in the Offer Exchange Procedures or in Case Evaluation. [8] If the Designated Claimant has not expressly consented to binding arbitration in its

---

[8] The City's agreement to arbitration with respect to any Designated Claim shall be set forth in the Arbitration Notice, as defined below. If, in any case, the City deems it necessary or appropriate in its discretion to resolve multiple Designated Claims on a consolidated basis then the matter may proceed to binding arbitration solely with the consent of all parties. Similarly, any claims held by the Designated Claimants against co-defendants of the City shall not be resolved by binding arbitration absent the consent of the applicable co-defendants.

response to the ADR Notice and has not otherwise expressly consented to binding arbitration, or if the City has not consented to binding arbitration, at the conclusion of Case Evaluation, the liquidation of the Designated Claim shall advance in accordance with the procedures for Unresolved Designated Claims set forth below.

### 1. _Arbitration Notice_

Where the parties have agreed to binding arbitration, as soon as reasonably practicable following the Case Evaluation Termination Date with respect to any Designated Claim, the City shall serve on the applicable Designated Claimant (or their counsel if known), any other parties to the Case Evaluation and the ADR Clerk, a notice of arbitration (an "Arbitration Notice") substantially in the form attached hereto as Annex IV. Additional parties may intervene in the binding arbitration process solely by agreement between the City and the applicable Designated Claimant.

### 2. _Arbitration Rules and Procedures_

The arbitration of any Designated Claims shall be conducted by a single arbitrator selected by the ADR Clerk and shall be governed by the commercial arbitration rules of the American Arbitration Association (the "AAA"), as amended and effective on October 1, 2013 unless the parties agree otherwise (the "Arbitration Rules"), except where the Arbitration Rules are expressly modified by the terms of these ADR Procedures. In the event of any conflict between the Arbitration Rules and the ADR Procedures, the ADR Procedures shall control.

#### (a) _Governing Law_

The ADR Procedures, as they relate to arbitration proceedings, are governed by title 9 of the United States Code (the "Federal Arbitration Act"), except as modified herein.

#### (b) _Selection of Arbitrator_

The ADR Clerk shall select the arbitrator and provide notice to the arbitrator and the parties of his or her appointment. Any person appointed as an arbitrator: (i) must be an impartial, neutral person; (ii) must be experienced (either from past arbitrations or former employment) in the law that is the subject of the Designated Claim; (iii) must have no financial or personal interest in the proceedings or, except when otherwise agreed by the parties, in any related matter; and (iv) upon appointment, must disclose any circumstances likely to create a

reasonable inference of bias. In the event that an arbitrator discloses circumstances likely to create a reasonable inference of bias, either (i) the parties may agree that such arbitrator may be replaced by the ADR Clerk or (ii) in case the parties disagree, the party seeking to replace the arbitrator may petition the Bankruptcy Court to make a final decision with respect to the replacement of the arbitrator.

(c)     *Fees and Costs for Binding Arbitration; Sharing*

The City is in the process of negotiating a rate with the MTA for arbitrations under these ADR Procedures. Unless the parties expressly have agreed otherwise in writing (either before or after the Petition Date) as part of an agreement to submit Designated Claims to binding arbitration, the fees and costs charged by the arbitrator and the MTA shall be shared equally among the parties; provided, however, that the arbitrator, in the arbitrator's sole discretion, may assess fees and costs against any party that the arbitrator finds to be abusing or unduly delaying the arbitration process. The arbitrator shall submit invoices to the MTA, which shall invoice the parties, according to the MTA's ordinary practices then in effect and subject to the MTA's ordinary payment terms then in effect.

(d)     *Time and Location of Arbitration Hearings*

All arbitration hearings shall be scheduled by the arbitrator, in consultation with the parties and shall be conducted in Detroit, Michigan unless otherwise agreed by all of the parties and the arbitrator.

No more than one case shall be scheduled per arbitrator per hearing day. There shall be no more than three days of arbitration hearings scheduled by in any calendar week containing no legal holidays and no more than two days of arbitration hearings in any calendar week containing a legal holiday.

To the maximum extent practicable, the scheduling of arbitration hearings shall give due consideration to the convenience of the parties. The arbitrator shall provide written notice of the date, time and place of the arbitration to the parties within 14 days after the arbitrator's appointment.

(e)     *Pre-Hearing Matters*

Any pre-hearing issues, matters or disputes (other than with respect to merits issues) shall be presented to the arbitrator telephonically (or by such other method agreed to by the arbitrator and the parties) for expeditious, final and binding resolution. Any pre-hearing issue, matter or dispute (other than with respect to merits issues) must be presented to the arbitrator not later than 21 days

prior to the arbitration hearing so as to permit the arbitrator to review and rule upon the requests by telephonic or email communication at least five days prior to the arbitration hearing.

(f)    *Limited Discovery*

There shall be no interrogatories. Any requests for production of documents, electronically stored information and things ("Document Requests") shall be made in writing and shall be served by electronic mail and overnight mail no later than by 5:00 p.m., Eastern Time, on a weekday that is not a legal holiday, no fewer than 42 days before the arbitration hearing, and shall be limited to no more than ten requests, including discrete subparts. Items requested in the Document Requests must be produced within 28 days after service of the Document Requests. Affidavits permitted under the Arbitration Rules (e.g., Rule 32 of the AAA rules) must be submitted at least 21 days prior to the scheduled arbitration hearing. Each party may depose up to three witnesses. Each deposition shall be limited to three hours. All depositions must be completed at least 21 days prior to the arbitration hearing. All documents, affidavits and deposition transcripts from discovery shall be confidential and shall not be either (i) disclosed to any person or party not participating in the arbitration proceeding or (ii) used for any purpose other than in connection with the arbitration proceeding, except as provided herein. Subject to approval by the arbitrator upon written request, each party may depose up to two additional witnesses and may serve up to five additional Document Requests. Any request for such additional depositions or Document Requests, and any objection to initial or additional requests for depositions or Document Requests, shall be made in writing and shall be submitted to the arbitrator and the applicable party within such time as to permit the arbitrator no fewer than three days in which to review and rule upon the request so that the ruling is issued, by telephonic or email communication, at least 14 days prior to the first such deposition or the deadline for production, as applicable. The arbitrator shall approve the request only if the requested depositions or Document Requests are directly relevant to and necessary for the complete presentation of any party's case in the arbitration. Notwithstanding anything to the contrary in this paragraph (f), the arbitrator may modify any term of discovery set forth herein for good cause.

(g)    *Pre-Arbitration Statement*

On or before 14 days prior to the scheduled arbitration hearing, each party shall submit to the arbitrator and serve on the other party or parties by electronic mail and overnight mail a pre-arbitration statement (the "Pre-Arbitration

Statement"). The Pre-Arbitration Statement shall not exceed 20 pages, double spaced, exclusive of attachments. Quotations and footnotes may be single spaced. At least one-inch margins shall be used, and printing shall not be smaller than 12-point font.

(h) *Arbitration Hearing*

Unless otherwise agreed by the parties and the arbitrator or as provided herein, and subject to the limitations on number of arbitration hearings per week as set forth in Section II.C.2(d) above, the arbitration hearing must be held no later than 112 days after the date of appointment of the arbitrator. Each party shall have a maximum of three hours, including any rebuttal and cross-examination, within which to present its position at the arbitration hearing. The arbitration hearing is open only to the parties, their counsel and any witnesses. Non-party witnesses shall be sequestered. No post-hearing briefs may be filed, unless the arbitrator requests such briefs, in which case such briefing shall be subject to the issues, timing and page limitations the arbitrator imposes. There shall be no reply briefs.

(i) *Arbitration Awards*

The arbitrator shall issue a short written opinion and award (the "Arbitration Award") within 14 days after the last day of the arbitration hearing, provided that the arbitrator can extend such period up to 30 days after the last day of the arbitration hearing. The arbitrator shall not be compensated for more than eight hours of deliberations on and preparation of the Arbitration Award. In no event shall the amount of any Arbitration Award exceed the claim amount shown on the Designated Claimant's most recent proof of claim prior to the service of the Arbitration Notice.

Any Arbitration Award shall only liquidate the applicable Designated Claim and shall not raise or purport to determine any issues relating to the potential treatment or priority of the Designated Claim in this chapter 9 case. The Arbitration Award may not award the Designated Claimant with: (i) punitive damages; (ii) interest, attorneys' fees or other fees and costs, unless permissible under section 506(b) of the Bankruptcy Code; (iii) an award under any penalty rate or penalty provision of the type specified in section 365(b)(2)(D) of the Bankruptcy Code; (iv) amounts associated with obligations that are subject to disallowance under section 502(b) of the Bankruptcy Code; (v) specific performance, other compulsory injunctive relief, restrictive, restraining or prohibitive injunctive relief or any other form of equitable remedy; or (vi) any

-15-

relief not among the foregoing, but otherwise impermissible under applicable bankruptcy or non-bankruptcy law. The entry of an Arbitration Award shall not grant the Designated Claimant any enforcement or collection rights except as permitted under a Chapter 9 Plan, and the Stay and any Plan Injunction shall apply to the Arbitration Award. Any aspect of an Arbitration Award that violates the foregoing rules and limitation shall be void without further action of any court.

(j)     *Vacation of Arbitration Awards*

All Arbitration Awards shall be final and binding. Other than the Designated Claimants' identities, the claims register number(s) assigned to the applicable arbitrated Designated Claims, the dollar amounts of the Designated Claims as awarded in the Arbitration Awards, and except as otherwise required by law, all Arbitration Awards shall be treated as confidential. No party shall have the right to request that an Arbitration Award be vacated except: (i) in the event that an Arbitration Award violates the Bankruptcy Code or these ADR Procedures, such as by purporting to grant priority status to any Arbitration Award, in which case any application to vacate must be made to the Bankruptcy Court; or (ii) pursuant to the provisions of the Federal Arbitration Act, in which case any application to vacate must be to the United States District Court for the Eastern District of Michigan. Any further proceedings shall be governed by the Federal Arbitration Act. Failure to timely apply to vacate shall result in the loss of any vacation rights. Once the Arbitration Award is final, the City shall update the claims docket in this case accordingly and may file any notice of the liquidated amount of the Designated Claim that it deems necessary or appropriate for such purpose.

(k)     *Modification of the Arbitration Procedures*

The arbitration procedures described herein may be modified only after the appointment of an arbitrator in the applicable arbitration proceeding and only upon the mutual written consent of the applicable arbitrator and each of the parties.

D.      **Approval and Satisfaction of Any Settlement or Arbitration Award**

**If you hold a Designated Claim with respect to which settlement has been reached through the ADR Procedures or an Arbitration Award has been entered, please read the following carefully. Except as otherwise agreed by the City, you will receive an allowed general unsecured nonpriority claim**

against the City that will be treated in accordance with the Chapter 9 Plan in the City's bankruptcy case *and not* a full cash payment of the settlement amount of your Designated Claim. **Notwithstanding the foregoing, any disputes about the priority of a Designated Claim may be raised with and determined by the Bankruptcy Court after the conclusion of the ADR Procedures.** Payment of any settlement or award under the ADR Procedures shall be governed by the procedures set forth in this Section II.D.

1. *Settlements Permitted at Any Stage of ADR Procedures*

Designated Claims may be settled by the City and a Designated Claimant before or during the Offer Exchange Procedures, Case Evaluation or any arbitration proceeding, or at any other point in the process. Nothing herein shall prevent the parties from settling any claim at any time.

2. *Release*

All settlements shall include a release of all claims relating to the underlying occurrence, including the Designated Claim and the Designated Claimant's claim against any other party with respect to whom the Stay applies pursuant to sections 362 and 922 of the Bankruptcy Code or orders of the Bankruptcy Court.

3. *Settlement Reporting*

By no later than the 91st day following the General Bar Date or as soon thereafter as reasonably practicable, and every 91 days thereafter, the City will file a report with the Bankruptcy Court that identifies all Designated Claims and the status of each such Designated Claim as it moves through the stages of these ADR Procedures.

4. *Satisfaction of Any Settlement or Award*

Payment of any settlement or award on account of any Designated Claim arising prior to the Petition Date shall be in the form of an allowed general unsecured nonpriority claim to be paid in the amount and form as set forth in the Chapter 9 Plan, except (a) as otherwise agreed by the City; or (b) with respect to the priority of the claim, as determined by the Bankruptcy Court as provided in Section II.D above. Notwithstanding the foregoing, nothing herein shall limit, expand or otherwise modify the City's authority to settle or pay claims or the City's authority over its property and revenues under section 904 of the Bankruptcy Code. The authority to settle Designated Claims pursuant to the ADR Procedures will be

in addition to, and cumulative with, any existing authority to resolve claims against the City.

## E. **Failure to Resolve a Designated Claim Through ADR Procedures**

### 1. *Liquidation of Unresolved Designated Claims in Bankruptcy Court*

Designated Claims not resolved through the ADR Procedures ("Unresolved Designated Claims") shall proceed to litigation to be liquidated. Unless the City agrees otherwise, liquidation of any Unresolved Designated Claim shall proceed in the Bankruptcy Court (to the extent that the Bankruptcy Court has subject matter jurisdiction over the Unresolved Designated Claim) as soon as practicable following the date that the ADR Procedures are concluded for an Unresolved Designated Claim (the "ADR Completion Date").[9] Such litigation will be initiated by the filing of a claim objection by the City (a "Claim Objection") within 35 days after the ADR Completion Date (the "Claim Objection Deadline"). Disputes over the subject matter jurisdiction of the Bankruptcy Court shall be determined by the Bankruptcy Court, and the Designated Claimants shall retain whatever rights they have to seek withdrawal of the reference, abstention or other procedural relief in connection with a Claim Objection. *For the avoidance of doubt, consistent with 28 U.S.C. § 157(b)(5), personal injury tort and wrongful death claims shall not be heard by the Bankruptcy Court and shall be subject to Section II.E.2 below.*

### 2. *Liquidation of Unresolved Designated Claims in Other Courts*

If the Unresolved Designated Claim cannot be adjudicated in the Bankruptcy Court because of lack of, or limitations upon, subject matter jurisdiction or if the City does not file a Claim Objection by the Claim Objection Deadline (any such claim, a "Non-Bankruptcy Claim"), then liquidation of any such Non-Bankruptcy Claim shall proceed in either (a) the non-bankruptcy forum in which the Non-Bankruptcy Claim was pending on the Petition Date, if any,

---

[9]    With respect to Unresolved Designated Claims, the ADR Completion Date will be the Case Evaluation Termination Date except where the the ADR Procedures are terminated sooner, such as where Case Evaluation was conducted with respect to a Designated Claim prior to the Petition Date, and the parties do not agree to conduct a second round of Case Evaluation. In that instance, the ADR Completion Date will be the Offer Exchange Termination Date.

subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Non-Bankruptcy Claim was not pending in any forum on the Petition Date, then in the United States District Court for the Eastern District of Michigan or such other nonbankruptcy forum selected by the Designated Claimant that (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the Non-Bankruptcy Claim, (iii) has *in rem* jurisdiction over the property involved in the Non-Bankruptcy Claim (if applicable) and (iv) is a proper venue. If necessary, any disputes regarding the application of this Section II.E.2 shall be determined by the Bankruptcy Court; provided that disputes about the jurisdiction of a matter presented to a non-bankruptcy court may be determined by such court.

The Stay or any subsequent Plan Injunction (together, the "Stay/Injunction") shall be deemed modified solely for the purpose of, and to the extent necessary for, liquidating Non-Bankruptcy Claims in an appropriate non-bankruptcy forum (as applicable under these ADR Procedures) unless, within 35 days of the ADR Completion Date, the City files a notice (a "Stay Notice") that it intends for the Stay/Injunction to remain in effect with respect to a Non-Bankruptcy Claim. If the City files a Stay Notice as set forth above, the Stay/Injunction shall remain in place, and the applicable Designated Claimant may seek relief from the Stay/Injunction under the standards set forth in section 362(d) of the Bankruptcy Code.

Notwithstanding anything herein, the City and any Designated Claimant may agree to terminate the ADR Procedures at any time and proceed to litigation of the applicable Designated Claim, as set forth herein.

F.    **Duty to Negotiate in Good Faith**

During the period of the ADR Procedures, the Designated Claimant and the City shall negotiate in good faith in an attempt to reach an agreement for the compromise of the applicable Designated Claim.

G.    **Failure to Comply with the ADR Procedures**

If a Designated Claimant fails to comply with the ADR Procedures, negotiate in good faith or cooperate with the City as may be necessary to effectuate the ADR Procedures, the Bankruptcy Court may, after notice and a hearing, find such conduct to be in violation of the ADR Order or an abandonment of or failure to prosecute the Designated Claim, or both. Upon such findings, the Bankruptcy Court may, among other things, disallow and expunge the Designated Claim, in whole or part, or grant such other or further remedy deemed just and appropriate

-19-

CLI-2154344v13

13-53846-tjt    Doc 12058-1    Filed 02/29/18    Entered 02/29/18 16:45:38    Page 74 of 91
13-53846-tjt    Doc 12883-1    Filed 11/02/19    Entered 11/02/19 14:26:38    Page 74 of 219    74

under the circumstances, including, without limitation, awarding attorneys' fees, other fees and costs to the City.

Dated: [_____], 2013                    BY ORDER OF THE COURT

CLI-2154344v13

# ANNEX I

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-------------------------------------------------------x
:
In re                     :        Chapter 9
:
CITY OF DETROIT, MICHIGAN,    :        Case No. 13-53846
:
               Debtor.    :        Hon. Steven W. Rhodes
:
:
-------------------------------------------------------x

## ADR NOTICE

Service Date:

Designated Claimant(s):

Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

**Deadline to Respond:**

        By this ADR Notice, the City of Detroit (the "City") hereby submits the above-identified claim(s) (the "Designated Claim(s)") in the City's chapter 9 case to alternative dispute resolution, pursuant to the procedures (the "ADR Procedures") established by the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims, entered by the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") on [_____], 2013.  A copy of the ADR Procedures is enclosed for your reference.

        The City has reviewed your Designated Claim(s) and, pursuant to the ADR Procedures, offers the amount(s) set forth below as a general unsecured

nonpriority claim in full and final settlement of your Designated Claim(s) (the "<u>Settlement Offer</u>").

*You are required to return this ADR Notice with a Permitted Response (as defined below) to the Settlement Offer by no later than the **Deadline to Respond** indicated above.*

In addition, to the extent your most recent proof(s) of claim does not: (a) state the correct amount of your Designated Claim(s); (b) expressly identify each and every cause of action and legal theory on which you base your Designated Claim(s); (c) include current, correct and complete contact information of your counsel or other representative; or (d) provide all documents on which you rely in support of your Designated Claim(s), you hereby are requested to provide all such information and documentation with your Permitted Response.

IF YOU DO NOT RETURN THIS ADR NOTICE WITH THE REQUESTED INFORMATION AND A PERMITTED RESPONSE TO THE SETTLEMENT OFFER TO **[INSERT THE CITY'S REPRESENTATIVE]** SO THAT IT IS RECEIVED BY THE DEADLINE TO RESPOND, YOU WILL BE DEEMED TO HAVE REJECTED THE SETTLEMENT OFFER AND THE LIQUIDATION OF YOUR DESIGNATED CLAIMS WILL ADVANCE TO CASE EVALUATION AS SET FORTH IN SECTION II.B OF THE ADR PROCEDURES.

IN ADDITION, YOU ARE REQUIRED TO INDICATE EXPRESSLY WHETHER YOU CONSENT TO **BINDING ARBITRATION** YOUR DESIGNATED CLAIM CANNOT BE SETTLED THROUGH THE OFFER EXCHANGE PROCEDURES OR CASE EVALUATION. PLEASE COMPLETE THE APPROPRIATE BOX BELOW TO INDICATE WHETHER YOU DO OR DO NOT CONSENT TO **BINDING ARBITRATION**. *IF YOU DO NOT COMPLETE THE BOX BELOW, YOU WILL BE DEEMED TO HAVE REJECTED BINDING ARBITRATION WITH RESPECT TO YOUR DESIGNATED CLAIM.* PLEASE NOTE THAT YOUR CONSENT TO **BINDING ARBITRATION** CANNOT SUBSEQUENTLY BE WITHDRAWN.

*In addition, any attempt to opt out of binding arbitration in the response to this Notice shall be ineffective if you previously have consented in writing (either prepetition or postpetition) to binding arbitration as a means to resolve your claim(s). Details about the arbitration process, including the sharing of fees, are set forth in Section II.C of the ADR Procedures.*

CLI-2154344v13
-2-
13-53846-tjt    Doc 12858-1    Filed 02/29/18    Entered 02/29/18 14:26:38    Page 78 of
219
13-53846-tjt    Doc 13658-1    Filed 11/02/19    Entered 11/02/19 14:36:45    Page 92 of 92    78

Note that binding arbitration will only take place if **all parties** to a claim dispute – including the City – agree to submit the dispute to arbitration. **[Optional:  May add statement about the City's consent to binding arbitration, if desired.]**

YOU MUST RESPOND TO THE FOLLOWING SETTLEMENT OFFER:

**Settlement Offer**:  The City offers you an allowed general unsecured nonpriority claim in the amount of **[$_____]** against the City in full satisfaction of your Designated Claim(s), to be satisfied in accordance with any plan of adjustment of debts confirmed and implemented in the City's chapter 9 case.

The only permitted responses (the "Permitted Responses") to the Settlement Offer are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (a "Counteroffer").  Accordingly, please select your Permitted Response below:

_____ I/we agree to and accept the terms of the Settlement Offer.

**or**

_____ I/we reject the Settlement Offer.  However, I/we will accept an allowed general unsecured claim against the City in the amount of $_____ in full satisfaction of the Designated Claim(s), to be satisfied in accordance with any plan of adjustment of debts confirmed and implemented in the City's chapter 9 case.

SECTION II.A.3 OF THE ADR PROCEDURES SETS FORTH THE RESTRICTIONS ON COUNTEROFFERS.  YOUR COUNTEROFFER MAY NOT INCLUDE UNKNOWN, UNLIQUIDATED OR SIMILAR AMOUNTS AND MAY NOT EXCEED THE AMOUNT OR IMPROVE THE PRIORITY SET FORTH IN YOUR MOST RECENT TIMELY FILED OR AMENDED PROOF OF CLAIM.  YOU MAY NOT AMEND YOUR PROOF OF CLAIM SOLELY FOR THE PURPOSE OF PROPOSING A COUNTEROFFER OF A HIGHER AMOUNT OR A BETTER PRIORITY.  IF YOU RETURN THIS FORM WITH A COUNTEROFFER THAT DOES NOT COMPLY WITH THE TERMS OF THE ADR PROCEDURES YOU WILL BE DEEMED TO HAVE REJECTED THE SETTLEMENT OFFER AND THE LIQUIDATION OF YOUR

DESIGNATED CLAIMS WILL ADVANCE TO CASE EVALUATION AS SET FORTH IN SECTION II.B OF THE ADR PROCEDURES.

Please indicate below whether you consent to binding arbitration with respect to the Designated Claim(s):

_____ I/WE **CONSENT** TO BINDING ARBITRATION.

_____ I/WE **DO NOT CONSENT** TO BINDING ARBITRATION.

I acknowledge that my/our consent to binding arbitration, once given, cannot be withdrawn.

[Signature of the Designated Claimant's Authorized Representative]

By: _____

[Printed Name]

**[N.B. – Additional Signature Lines as Needed.]**

[Signature of the Designated Claimant's Authorized Representative]

By: _____

[Printed Name]

# ANNEX II

## Rule 2.403 Case Evaluation

(A) Scope and Applicability of Rule.

(1) A court may submit to case evaluation any civil action in which the relief sought is primarily money damages or division of property.

(2) Case evaluation of tort cases filed in circuit court is mandatory beginning with actions filed after the effective dates of Chapters 49 and 49A of the Revised Judicature Act, as added by 1986 PA 178.

(3) A court may exempt claims seeking equitable relief from case evaluation for good cause shown on motion or by stipulation of the parties if the court finds that case evaluation of such claims would be inappropriate.

(4) Cases filed in district court may be submitted to case evaluation under this rule. The time periods set forth in subrules (B)(1), (G)(1), (L)(1) and (L)(2) may be shortened at the discretion of the district judge to whom the case is assigned.

(B) Selection of Cases.

(1) The judge to whom an action is assigned or the chief judge may select it for case evaluation by written order after the filing of the answer

(a) on written stipulation by the parties,

(b) on written motion by a party, or

(c) on the judge's own initiative.

(2) Selection of an action for case evaluation has no effect on the normal progress of the action toward trial.

(C) Objections to Case Evaluation.

(1) To object to case evaluation, a party must file a written motion to remove from case evaluation and a notice of hearing of the motion and serve a copy on the attorneys of record and the ADR clerk within 14 days after notice of the order assigning the action to case evaluation. The motion must be set for hearing within 14 days after it is filed, unless the court orders otherwise.

(2) A timely motion must be heard before the case is submitted to case evaluation.

(D) Case Evaluation Panel.

(1) Case evaluation panels shall be composed of 3 persons.

(2) The procedure for selecting case evaluation panels is as provided in MCR 2.404.

(3) A judge may be selected as a member of a case evaluation panel, but may not preside at the trial of any action in which he or she served as a case evaluator.

(4) A case evaluator may not be called as a witness at trial.

(E) Disqualification of Case Evaluators. The rule for disqualification of a case evaluator is the same as that provided in MCR 2.003 for the disqualification of a judge.

(F) ADR Clerk. The court shall designate the ADR clerk specified under MCR 2.410, or some other person, to administer the case evaluation program. In this rule and MCR 2.404, "ADR clerk" refers to the person so designated.

(G) Scheduling Case Evaluation Hearing.

(1) The ADR clerk shall set a time and place for the hearing and send notice to the case evaluators and the attorneys at least 42 days before the date set.

(2) Adjournments may be granted only for good cause, in accordance with MCR 2.503.

(H) Fees.

(1) Each party must send a check for $75 made payable in the manner and within the time specified in the notice of the case evaluation hearing. However, if a judge is a member of the panel, the fee is $50. If the order for case evaluation directs that payment be made to the ADR clerk, the ADR clerk shall arrange payment to the case evaluators. Except by stipulation and court order, the parties may not make any other payment of fees or expenses to the case evaluators than that provided in this subrule.

(2) Only a single fee is required of each party, even where there are counterclaims, cross-claims, or third-party claims. A person entitled to a fee waiver under MCR 2.002 is entitled to a waiver of fees under this rule.

(3) If one claim is derivative of another (e.g., husband-wife, parent-child) they must be treated as a single claim, with one fee to be paid and a single award made by the case evaluators.

(4) Fees paid pursuant to subrule (H) shall be refunded to the parties if

(a) the court sets aside the order submitting the case to case evaluation or on its own initiative adjourns the case evaluation hearing, or

(b) the parties notify the ADR clerk in writing at least 14 days before the case evaluation hearing of the settlement, dismissal, or entry of judgment disposing of the action, or of an order of adjournment on stipulation or the motion of a party.

If case evaluation is rescheduled at a later time, the fee provisions of subrule (H) apply regardless of whether previously paid fees have been refunded.

(5) Fees paid pursuant to subrule (H) shall not be refunded to the parties if

(a) in the case of an adjournment, the adjournment order sets a new date for case evaluation and the fees are applied to the new date, or

(b) the request for and granting of adjournment is made within 14 days of the scheduled case evaluation, unless waived for good cause.

Penalties for late filing of papers under subrule (I)(2) are not to be refunded.

(I) Submission of Summary and Supporting Documents.

(1) Unless otherwise provided in the notice of hearing, at least 14 days before the hearing, each party shall

(a) serve a copy of the case evaluation summary and supporting documents in accordance with MCR 2.107, and

(b) file a proof of service and three copies of a case evaluation summary and supporting documents with the ADR clerk.

(2) Each failure to timely file and serve the materials identified in subrule (1) and each subsequent filing of supplemental materials within 14 days of the hearing, subjects the offending attorney or party to a $150 penalty to be paid in the manner specified in the notice of the case evaluation hearing. An offending attorney shall not charge the penalty to the client, unless the client agreed in writing to be responsible for the penalty.

(3) The case evaluation summary shall consist of a concise summary setting forth that party's factual and legal position on issues presented by the action. Except as permitted by the court, the summary shall not exceed 20 pages double spaced, exclusive of attachments. Quotations and footnotes may be single spaced. At least one inch margins must be used, and printing shall not be smaller than 12-point font.

(J) Conduct of Hearing.

(1) A party has the right, but is not required, to attend a case evaluation hearing. If scars, disfigurement, or other unusual conditions exist, they may be demonstrated to the panel by a personal appearance; however, no testimony will be taken or permitted of any party.

(2) The rules of evidence do not apply before the case evaluation panel. Factual information having a bearing on damages or liability must be supported by documentary evidence, if possible.

(3) Oral presentation shall be limited to 15 minutes per side unless multiple parties or unusual circumstances warrant additional time. Information on settlement negotiations not protected under MCR 2.412 and applicable insurance policy limits shall be disclosed at the request of the case evaluation panel.

(4) Statements by the attorneys and the briefs or summaries are not admissible in any court or evidentiary proceeding.

(5) Counsel or the parties may not engage in ex parte communications with the case evaluators concerning the action prior to the hearing. After the evaluation, the case evaluators need not respond to inquiries by the parties or counsel regarding the proceeding or the evaluation.

(K) Decision.

(1) Within 14 days after the hearing, the panel will make an evaluation and notify the attorney for each party of its evaluation in writing. If an award is not unanimous, the evaluation must so indicate.

(2) Except as provided in subrule (H)(3), the evaluation must include a separate award as to each plaintiff's claim against each defendant and as to each cross-claim, counterclaim, or third-party claim that has been filed in the action. For the purpose of this subrule, all such claims filed by any one party against any other party shall be treated as a single claim.

(3) The evaluation may not include a separate award on any claim for equitable relief, but the panel may consider such claims in determining the amount of an award.

(4) In a tort case to which MCL 600.4915(2) or MCL 600.4963(2) applies, if the panel unanimously finds that a party's action or defense as to any other party is frivolous, the panel shall so indicate on the evaluation. For the purpose of this rule, an action or defense is "frivolous" if, as to all of a plaintiff's claims or all of a defendant's defenses to liability, at least 1 of the following conditions is met:

(a) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the opposing party.

(b) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(c) The party's legal position was devoid of arguable legal merit.

(5) In an action alleging medical malpractice to which MCL 600.4915 applies, the evaluation must include a specific finding that

(a) there has been a breach of the applicable standard of care,

(b) there has not been a breach of the applicable standard of care, or

(c) reasonable minds could differ as to whether there has been a breach of the applicable standard of care.

(L) Acceptance or Rejection of Evaluation.

(1) Each party shall file a written acceptance or rejection of the panel's evaluation with the ADR clerk within 28 days after service of the panel's evaluation. Even if there are separate awards on multiple claims, the party must either accept or reject the evaluation in its entirety as to a particular opposing party. The failure to file a written acceptance or rejection within 28 days constitutes rejection.

(2) There may be no disclosure of a party's acceptance or rejection of the panel's evaluation until the expiration of the 28-day period, at which time the ADR clerk shall send a notice indicating each party's acceptance or rejection of the panel's evaluation.

(3) In case evaluations involving multiple parties the following rules apply:

(a) Each party has the option of accepting all of the awards covering the claims by or against that party or of accepting some and rejecting others.

However, as to any particular opposing party, the party must either accept or reject the evaluation in its entirety.

(b) A party who accepts all of the awards may specifically indicate that he or she intends the acceptance to be effective only if

(i) all opposing parties accept, and/or

(ii) the opposing parties accept as to specified coparties.

If such a limitation is not included in the acceptance, an accepting party is deemed to have agreed to entry of judgment, or dismissal as provided in subrule (M)(1), as to that party and those of the opposing parties who accept, with the action to continue between the accepting party and those opposing parties who reject.

(c) If a party makes a limited acceptance under subrule (L)(3)(b) and some of the opposing parties accept and others reject, for the purposes of the cost provisions of subrule (O) the party who made the limited acceptance is deemed to have rejected as to those opposing parties who accept.

(M) Effect of Acceptance of Evaluation.

(1) If all the parties accept the panel's evaluation, judgment will be entered in accordance with the evaluation, unless the amount of the award is paid within 28 days after notification of the acceptances, in which case the court shall dismiss the action with prejudice. The judgment or dismissal shall be deemed to dispose of all claims in the action and includes all fees, costs, and interest to the date it is entered, except for cases involving rights to personal protection insurance benefits under MCL 500.3101 *et seq.*, for which judgment or dismissal shall not be deemed to dispose of claims that have not accrued as of the date of the case evaluation hearing.

(2) If only a part of an action has been submitted to case evaluation pursuant to subrule (A)(3) and all of the parties accept the panel's evaluation, the court shall enter an order disposing of only those claims.

(3) In a case involving multiple parties, judgment, or dismissal as provided in subrule (1), shall be entered as to those opposing parties who have accepted the portions of the evaluation that apply to them.

(N) Proceedings After Rejection.

(1) If all or part of the evaluation of the case evaluation panel is rejected, the action proceeds to trial in the normal fashion.

(2) If a party's claim or defense was found to be frivolous under subrule (K)(4), that party may request that the court review the panel's finding by filing a motion within 14 days after the ADR clerk sends notice of the rejection of the case evaluation award.

(a) The motion shall be submitted to the court on the case evaluation summaries and documents that were considered by the case evaluation panel. No other exhibits or testimony may be submitted. However, oral argument on the motion shall be permitted.

(b) After reviewing the materials submitted, the court shall determine whether the action or defense is frivolous.

(c) If the court agrees with the panel's determination, the provisions of subrule (N)(3) apply, except that the bond must be filed within 28 days after the entry of the court's order determining the action or defense to be frivolous.

(d) The judge who hears a motion under this subrule may not preside at a nonjury trial of the action.

(3) Except as provided in subrule (2), if a party's claim or defense was found to be frivolous under subrule (K)(4), that party shall post a cash or surety bond, pursuant to MCR 3.604, in the amount of $5,000 for each party against whom the action or defense was determined to be frivolous.

(a) The bond must be posted within 56 days after the case evaluation hearing or at least 14 days before trial, whichever is earlier.

(b) If a surety bond is filed, an insurance company that insures the defendant against a claim made in the action may not act as the surety.

(c) If the bond is not posted as required by this rule, the court shall dismiss a claim found to have been frivolous, and enter the default of a defendant whose defense was found to be frivolous. The action shall proceed to trial as to the remaining claims and parties, and as to the amount of damages against a defendant in default.

(d) If judgment is entered against the party who posted the bond, the bond shall be used to pay any costs awarded against that party by the court under any applicable law or court rule. MCR 3.604 applies to proceedings to enforce the bond.

(4) The ADR clerk shall place a copy of the case evaluation and the parties' acceptances and rejections in a sealed envelope for filing with the clerk of the court. In a nonjury action, the envelope may not be opened and the parties may not reveal the amount of the evaluation until the judge has rendered judgment.

(O) Rejecting Party's Liability for Costs.

(1) If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

(2) For the purpose of this rule "verdict" includes,

(a) a jury verdict,

(b) a judgment by the court after a nonjury trial,

(c) a judgment entered as a result of a ruling on a motion after rejection of the case evaluation.

(3) For the purpose of subrule (O)(1), a verdict must be adjusted by adding to it assessable costs and interest on the amount of the verdict from the filing of the complaint to the date of the case evaluation, and, if applicable, by making the adjustment of future damages as provided by MCL 600.6306. After this adjustment, the verdict is considered more favorable to a defendant if it is more than 10 percent below the evaluation, and is considered more favorable to the plaintiff if it is more than 10 percent above the evaluation. If the evaluation was zero, a verdict finding that a defendant is not liable to the plaintiff shall be deemed more favorable to the defendant.

(4) In cases involving multiple parties, the following rules apply:

(a) Except as provided in subrule (O)(4)(b), in determining whether the verdict is more favorable to a party than the case evaluation, the court shall consider only the amount of the evaluation and verdict as to the particular pair of parties, rather than the aggregate evaluation or verdict as to all parties. However, costs may not be imposed on a plaintiff who obtains an aggregate verdict more favorable to the plaintiff than the aggregate evaluation.

(b) If the verdict against more than one defendant is based on their joint and several liability, the plaintiff may not recover costs unless the verdict is more favorable to the plaintiff than the total case evaluation as to those defendants, and a defendant may not recover costs unless the verdict is more favorable to that defendant than the case evaluation as to that defendant.

(c) Except as provided by subrule (O)(10), in a personal injury action, for the purpose of subrule (O)(1), the verdict against a particular defendant shall not be adjusted by applying that defendant's proportion of fault as determined under MCL 600.6304(1)-(2).

(5) If the verdict awards equitable relief, costs may be awarded if the court determines that

(a) taking into account both monetary relief (adjusted as provided in subrule [O][3]) and equitable relief, the verdict is not more favorable to the rejecting party than the evaluation, or, in situations where both parties have rejected the evaluation, the verdict in favor of the party seeking costs is more favorable than the case evaluation, and

(b) it is fair to award costs under all of the circumstances.

(6) For the purpose of this rule, actual costs are

(a) those costs taxable in any civil action, and

(b) a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation.

For the purpose of determining taxable costs under this subrule and under MCR 2.625, the party entitled to recover actual costs under this rule shall be considered the prevailing party.

(7) Costs shall not be awarded if the case evaluation award was not unanimous. If case evaluation results in a nonunanimous award, a case may be ordered to a subsequent case evaluation hearing conducted without reference to the prior case evaluation award, or other alternative dispute resolution processes, at the expense of the parties, pursuant to MCR 2.410(C)(1).

(8) A request for costs under this subrule must be filed and served within 28 days after the entry of the judgment or entry of an order denying a timely motion for a new trial or to set aside the judgment.

(9) In an action under MCL 436.1801, if the plaintiff rejects the award against the minor or alleged intoxicated person, or is deemed to have rejected such an award under subrule (L)(3)(c), the court shall not award costs against the plaintiff in favor of the minor or alleged intoxicated person unless it finds that the rejection was not motivated by the need to comply with MCL 436.1801(6).

(10) For the purpose of subrule (O)(1), in an action filed on or after March 28, 1996, and based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, a verdict awarding damages shall be adjusted for relative fault as provided by MCL 600.6304.

(11) If the "verdict" is the result of a motion as provided by subrule (O)(2)(c), the court may, in the interest of justice, refuse to award actual costs.

## Rule 2.404 Selection of Case Evaluation Panels

(A) Case Evaluator Selection Plans.

(1) Requirement. Each trial court that submits cases to case evaluation under MCR 2.403 shall adopt by local administrative order a plan to maintain a list of persons available to serve as case evaluators and to assign case evaluators from the list to panels. The plan must be in writing and available to the public in the ADR clerk's office.

(2) Alternative Plans.

(a) A plan adopted by a district or probate court may use the list of case evaluators and appointment procedure of the circuit court for the circuit in which the court is located.

(b) Courts in adjoining circuits or districts may jointly adopt and administer a case evaluation plan.

(c) If it is not feasible for a court to adopt its own plan because of the low volume of cases to be submitted or because of inadequate numbers of available case evaluators, the court may enter into an agreement with a neighboring court to refer cases for case evaluation under the other court's system. The agreement may provide for payment by the referring court to cover the cost of administering case evaluation. However, fees and costs may not be assessed against the parties to actions evaluated except as provided by MCR 2.403.

(d) Other alternative plans must be submitted as local court rules under MCR 8.112(A).

(B) Lists of Case Evaluators.

(1) Application. An eligible person desiring to serve as a case evaluator may apply to the ADR clerk to be placed on the list of case evaluators. Application forms shall be available in the office of the ADR clerk. The form shall include an optional section identifying the applicant's gender and racial/ethnic background. The form shall include a certification that

(a) the case evaluator meets the requirements for service under the court's selection plan, and

(b) the case evaluator will not discriminate against parties, attorneys, or other case evaluators on the basis of race, ethnic origin, gender, or other protected personal characteristic.

(2) Eligibility. To be eligible to serve as a case evaluator, a person must meet the qualifications provided by this subrule.

(a) The applicant must have been a practicing lawyer for at least 5 years and be a member in good standing of the State Bar of Michigan. The plan may not require membership in any other organization as a qualification for service as a case evaluator.

(b) An applicant must reside, maintain an office, or have an active practice in the jurisdiction for which the list of case evaluators is compiled.

(c) An applicant must demonstrate that a substantial portion of the applicant's practice for the last 5 years has been devoted to civil litigation matters, including investigation, discovery, motion practice, case evaluation, settlement, trial preparation, and/or trial.

(d) If separate sublists are maintained for specific types of cases, the applicant must have had an active practice in the practice area for which the case evaluator is listed for at least the last 3 years.

If there are insufficient numbers of potential case evaluators meeting the qualifications stated in this rule, the plan may provide for consideration of alternative qualifications.

(3) Review of Applications. The plan shall provide for a person or committee to review applications annually, or more frequently if appropriate, and compile one or more lists of qualified case evaluators. Persons meeting the qualifications specified in this rule shall be placed on the list of approved case evaluators. Selections shall be made without regard to race, ethnic origin, or gender.

(a) If an individual performs this review function, the person must be an employee of the court.

(b) If a committee performs this review function, the following provisions apply.

(i) The committee must have at least three members.

(ii) The selection of committee members shall be designed to assure that the goals stated in subrule (D)(2) will be met.

(iii) A person may not serve on the committee more than 3 years in any 9 year period.

(c) Applicants who are not placed on the case evaluator list or lists shall be notified of that decision. The plan shall provide a procedure by which such an applicant may seek reconsideration of the decision by some other person or committee. The plan need not provide for a hearing of any kind as part of the reconsideration process. Documents considered in the initial review process shall be retained for at least the period of time during which the applicant can seek reconsideration of the original decision.

(4) Specialized Lists. If the number and qualifications of available case evaluators makes it practicable to do so, the ADR clerk shall maintain

(a) separate lists for various types of cases, and,

(b) where appropriate for the type of cases, separate sublists of case evaluators who primarily represent plaintiffs, primarily represent defendants, and neutral case evaluators whose practices are not identifiable as representing primarily plaintiffs or defendants.

(5) Reapplication. Persons shall be placed on the list of case evaluators for a fixed period of time, not to exceed seven years, and must reapply at the end of that time in the manner directed by the court.

(6) Availability of Lists. The list of case evaluators must be available to the public in the ADR clerk's office.

(7) Removal from List. The plan must include a procedure for removal from the list of case evaluators who have demonstrated incompetency, bias, made themselves consistently unavailable to serve as a case evaluator, or for other just cause.

(8) The court may require case evaluators to attend orientation or training sessions or provide written materials explaining the case evaluation process and the operation of the court's case evaluation program. However, case evaluators may not be charged any fees or costs for such programs or materials.

(C) Assignments to Panels.

(1) Method of Assignment. The ADR clerk shall assign case evaluators to panels in a random or rotating manner that assures as nearly as possible that each case evaluator on a list or sublist is assigned approximately the same number of cases over a period of time. If a substitute case evaluator must be assigned, the same or similar assignment procedure shall be used to select the substitute. The ADR clerk shall maintain records of service of case evaluators on panels and shall make those records available on request.

(2) Assignment from Sublists. If sublists of plaintiff, defense, and neutral case evaluators are maintained for a particular type of case, the panel shall include one case evaluator who primarily represents plaintiffs, one case evaluator who primarily represents defendants, and one neutral case evaluator. If a judge is assigned to a panel as permitted by MCR 2.403(D)(3), the judge shall serve as the neutral case evaluator if sublists are maintained for that class of cases.

(3) Special Panels. On stipulation of the parties, the court may appoint a panel selected by the parties. In such a case, the qualification requirements of subrule (B)(2) do not apply, and the parties may agree to modification of the procedures for conduct of case evaluation. Nothing in this rule or MCR 2.403 precludes parties from stipulating to other ADR procedures that may aid in resolution of the case.

(D) Supervision of Selection Process.

(1) The chief judge shall exercise general supervision over the implementation of this rule and shall review the operation of the court's case evaluation plan at least annually to assure compliance with this rule. In the event of noncompliance, the court shall take such action as is needed. This action may include recruiting persons to serve as case evaluators or changing the court's case evaluation plan.

(2) In implementing the selection plan, the court, court employees, and attorneys involved in the procedure shall take all steps necessary to assure that as far as reasonably possible the list of case evaluators fairly reflects the racial, ethnic, and gender diversity of the members of the state bar in the jurisdiction for which the list is compiled who are eligible to serve as case evaluators.

13-53846-tjt    Doc 13658-1    Filed 02/29/18    Entered 02/29/18 16:25:38    Page 92 of 92
13-53846-tjt    Doc 12058-1    Filed 11/22/19    Entered 11/22/19 14:26:45    Page 96 of 219
219
92

# **ANNEX III**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

-------------------------------------------------------x
:
In re                         :         Chapter 9
:
CITY OF DETROIT, MICHIGAN,    :         Case No. 13-53846
:
             Debtor.     :         Hon. Steven W. Rhodes
:
:
-------------------------------------------------------x

## CASE EVALUATION NOTICE

Service Date:

Claimant(s):

Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

       By this Case Evaluation Notice, the City of Detroit (the "City") hereby submits the above-identified claim(s) (the "Designated Claim(s)") in the City's chapter 9 case to **case evaluation**, pursuant to the procedures (the "ADR Procedures") established by the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims, entered by the United States Bankruptcy Court for the Eastern District of Michigan on [_____], 2013. The City has been unable to resolve your Designated Claim(s) on a consensual basis through the offer exchange component of the ADR Procedures. THEREFORE, YOUR DESIGNATED CLAIM(S) WILL PROCEED TO CASE EVALUATION, PURSUANT TO THE ADR PROCEDURES.

       In accordance with the ADR Procedures, a copy of this Case Evaluation Notice has been served upon the Clerk (the "ADR Clerk") of the

Wayne County Mediation Tribunal Association (the "MTA"). As described more fully in the ADR Procedures, the ADR Clerk will select a panel of three evaluators to conduct the case evaluation, set a time and place for the case evaluation hearing and provide you with at least 42 days notice of the hearing. Adjournments of the case evaluation hearing may be granted only for good cause. The ADR Procedures also require you and the City to share the administrative fees and costs of case evaluation charged by the mediation.

A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section II.B of the ADR Procedures, concerning **case evaluation**.

[Signature of the City's Authorized Person]

# ANNEX IV

```
------------------------------------------------------x
                                                      :
In re                                                 :      Chapter 9
                                                      :
CITY OF DETROIT, MICHIGAN,                             :      Case No. 13-53846
                                                      :
                               Debtor.                :      Hon. Steven W. Rhodes
                                                      :
                                                      :
------------------------------------------------------x
```

## ARBITRATION NOTICE

Service Date:

Claimant(s):

Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:


   By this Arbitration Notice, the City of Detroit (the "City") hereby submits the above-identified claim(s) (the "Designated Claim(s)") in the City's chapter 9 case to **binding arbitration**, pursuant to the procedures (the "ADR Procedures") established by the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims, entered by the United States Bankruptcy Court for the Eastern District of Michigan on **[_____]**, 2013. The City has been unable to resolve your Designated Claim(s) on a consensual basis through the offer exchange component of the ADR Procedures or through case evaluation.  THE CITY **[PREVIOUSLY HAS CONSENTED]/[HEREBY CONSENTS]** TO BINDING ARBITRATION OF THE DESIGNATED CLAIM(S).  YOU PREVIOUSLY HAVE CONSENTED TO BINDING ARBITRATION.  THEREFORE, YOUR DESIGNATED CLAIM(S) WILL

PROCEED TO BINDING ARBITRATION, PURSUANT TO THE ADR
PROCEDURES.

   In accordance with the ADR Procedures, a copy of this Arbitration
Notice has been served upon the Clerk (the "ADR Clerk") of the Wayne County
Mediation Tribunal Association (the "MTA"). As described more fully in the
ADR Procedures, the ADR Clerk will select an arbitrator to conduct the arbitration
hearing and provide notice to you and the arbitrator of his or her appointment.
All arbitration hearings are scheduled by the arbitrator, in consultation with the
parties and are conducted in Detroit, Michigan unless otherwise agreed by all of
the parties and the arbitrator. Generally, the arbitration hearing must be held no
later than 112 days after the date of appointment of the arbitrator. The ADR
Procedures also require you and the City to share the administrative fees and costs
of arbitration charged by the MTA.

   A complete copy of the ADR Procedures is enclosed for your
reference. Please refer to Section II.C of the ADR Procedures, concerning **binding
arbitration**.

     [Signature of the City's Authorized Person]

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-----------------------------------------------------x
:
In re                              : Chapter 9
:
CITY OF DETROIT, MICHIGAN,    : Case No. 13-53846
:
               Debtor.      : Hon. Steven W. Rhodes
:
:
-----------------------------------------------------x

## ORDER, PURSUANT TO SECTIONS 105, 501 AND 503 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND 3003(c), ESTABLISHING BAR DATES FOR FILING PROOFS OF <u>CLAIM AND APPROVING FORM AND MANNER OF NOTICE THEREOF</u>

This matter coming before the Court on the Motion of Debtor,

Pursuant to Sections 105, 501 and 503 of the Bankruptcy Code and Bankruptcy

Rules 2002 and 3003(c), for Entry of an Order Establishing Bar Dates for Filing

Proofs of Claim and Approving Form and Manner of Notice Thereof

(the "<u>Motion</u>"),[1] filed by the City of Detroit (the "<u>City</u>"); the City having filed the

Notice of Filing of Amended Exhibits 6.1 and 6.2 to Motion of Debtor, Pursuant to

Sections 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002

and 3003(c), for Entry of an Order Establishing Bar Dates for Filing Proofs of

---

[1]     Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

13-53846-tjt Doc 12872-1 Filed 08/20/18 Entered 08/20/18 14:21:38 Page 99 of
219
13-53846-tjt Doc 12872 Filed 11/21/18 Entered 11/21/18 09:24:03 Page 99 of 99

Claim and Approving Form and Manner of Notice Thereof (Docket No. 1330)

(the "Amended Exhibits"); the following responses to the Motion (collectively,

the "Responses") having been filed:

(a)    The Response (Docket No. 1360) of the Michigan Council 25 of the American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees ("AFSCME");

(b)    The Response (Docket No. 1365) of the Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit Police Lieutenants & Sergeants Association and the Detroit Police Command Officers Association (collectively, the "Public Safety Unions");

(c)    The Response (Docket No. 1372) of the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit;

(d)    The Response (Docket No. 1424) (the "Retiree Committee Response") of the Official Committee of Retirees (the "Retiree Committee");

(e)    The Response (Docket No. 1432) of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW");

(f)    The Response (Docket No. 1438) of the Retired Detroit Police Members Association, concurring in the Retiree Committee Response;

(g)    The Response (Docket No. 1442) (the "Retiree Association Response") of the Retired Detroit Police & Fire Fighters Association, Donald Taylor, the Detroit Retired City Employees Association and Shirley V. Lightsey (collectively, the "Retiree Association Parties");[2]

(h)    The Response (Docket No. 1460) (the "Assured Response") of Assured Guaranty Municipal Corp.;

---

[2]    The Retiree Association Response corrected an earlier Response (Docket No. 1430), filed by the Retiree Association Parties.

13-53846-tjt   Doc 12939-1   Filed 08/20/18   Entered 08/20/18 14:20:38   Page 100 of
13-53846-tjt   Doc 1782   Filed 11/21/13   Entered 11/21/13 09:44:03   Page 92 of 95
219
100

(i)     The Response (Docket No. 1461) of National Public Finance Guarantee Corporation joining in the Assured Response;

(j)     The Response (Docket No. 1465) of Ambac Assurance Corporation joining in the Assured Response; and

(k)     The supplemental Response (Docket No. 1523) of the Public Safety Unions.

The City having filed the Reply in Support of Motion of Debtor, Pursuant to Sections 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), for Entry of an Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof (the "Reply"); the Court having reviewed the Motion, the Amended Exhibits, the Responses and the Reply and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing"); the Court finding that:  (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and (c) notice of the Motion and the Hearing was sufficient under the circumstances; and the Court having determined that the legal and factual bases set forth in the Motion, the Amended Exhibits, the Reply and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED, as set forth herein, and the
Responses are resolved or addressed by the terms of this Order or as set forth on
the record of the Hearing.

2.      As used herein, (a) the term "claim" has the meaning given to
such term in section 101(5) of the Bankruptcy Code, (b) the term "entity" has the
meaning given to such term in section 101(15) of the Bankruptcy Code and (c) the
term "governmental unit" has the meaning given to such term in section 101(27) of
the Bankruptcy Code.

3.      The form of (a) Notice of Deadlines for Filing of Proofs of
Claim attached as Exhibit B to the Reply and attached hereto as <u>Annex I</u> (the "<u>Bar
Date Notice</u>") and (b) the proof of claim form attached as Exhibit 6.3 to the Motion
and attached hereto as <u>Annex II</u> (the "<u>Proof of Claim Form</u>" and, together with the
Bar Date Notice, the "<u>Bar Date Notice Package</u>"), and the manner of providing
notice of the Bar Dates proposed in the Motion, are approved in all respects
pursuant to Bankruptcy Rules 2002(a)(7) and 2002(l).  The form and manner of
notice of the Bar Dates approved herein are deemed to fulfill the notice
requirements of the Bankruptcy Code and the Bankruptcy Rules.  As such, the
Debtors are authorized to serve the Bar Date Notice Package in the manner
described in paragraphs 23 through 26 below.  In addition, the City is authorized to

make non-substantive edits or corrections to the Bar Date Notice and the Proof of Claim form, consistent with the terms of this Order.

4. Except as otherwise provided in this Order, all entities (including, without limitation, individuals, partnerships, corporations, joint ventures and trusts) that assert claims against the City that arose (or are deemed to have arisen) prior to July 18, 2013 (any such claim, a "Prepetition Claim") must file a proof of claim in writing in accordance with the procedures described herein by 4:00 p.m., Eastern Time, on February 21, 2014 (the "General Bar Date").

5. Except as otherwise provided in this Order, the General Bar Date applies to all types of Prepetition Claims, including secured claims, unsecured priority claims and unsecured nonpriority claims. For the avoidance of doubt, the General Bar Date shall apply to claims asserting administrative expense priority under section 503(b)(9) of the Bankruptcy Code ("503(b)(9) Claims"). The filing of a proof of claim form shall satisfy the procedural requirements for the assertion of 503(b)(9) Claims. All administrative claims under section 503(b) of the Bankruptcy Code, other than 503(b)(9) Claims and the administrative portions of Rejection Damages Claims (as defined below), shall not be deemed proper if asserted by proof of claim.

6. Subject to the provisions of paragraphs 16 through 19 of this Order with respect to holders of claims subject to the Rejection Damages Bar Date,

13-53846-tjt  Doc 12938-1  Filed 08/2018  Entered 08/206 69:14:20 38  Page 103 of
13-53846-tjt  Doc 1782  Filed 11/24/2018  Entered 11/24/2018 69:14:20 38  Page 103 of
5
219
103

the Amended Claims List Bar Date and the Governmental Bar Date, and the exceptions described in paragraph 8 below, the following entities must file a proof of claim on or before the General Bar Date:

(a)    Any entity:  (i) whose prepetition claim against the City is not listed in the List of Claims or is listed as disputed, contingent or unliquidated; and (ii) that desires to share in any distribution in this bankruptcy case and/or otherwise participate in the proceedings in this bankruptcy case associated with the confirmation of any chapter 9 plan of adjustment proposed by the City (a "Chapter 9 Plan"); and

(b)    Any entity that believes that its prepetition claim is improperly classified in the List of Claims or is listed in an incorrect amount or priority and that desires to have its claim allowed in a classification, priority or amount other than that identified in the List of Claims, *provided that* any holder of GO Bonds (as defined below) asserting a claim solely for principal and interest in connection with such bonds is not required to file a proof of claim to preserve its right to a *pro rata* share of distributions on account of the amount of principal and interest under such bonds listed in the City's List of Claims.

7.    The following procedures for the filing of proofs of claim shall apply:

(a)    Proofs of claim must be on the Proof of Claim Form or otherwise conform substantially to Official Bankruptcy Form No. 10;

(b)    Proofs of claim must be filed by mailing the original proof of claim or delivering the original proof of claim by hand or overnight courier either to:  (a) the City of Detroit Claims Processing Center c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245; or (b) the Clerk of the Court, United States Bankruptcy Court for the Eastern District of Michigan, 211 West Fort Street, Suite 1700, Detroit, Michigan 48226.  Proofs of claim submitted by facsimile, electronic mail or electronic (ECF) court filing shall not be accepted and shall not be deemed properly filed;

13-53846-tjt   Doc 12930-1   Filed 08/2016   Entered 08/2016 09:14:20:38   Page 104 of
13-53846-tjt   Doc 1782   Filed 11/24/2013   Entered 11/24/2013 09:44:03   Page 96 of 95 of
219
104

(c)     Proofs of claim will be deemed timely filed only if <u>actually received</u> by the City's claims agent, Kurtzman Carson Consultants LLC ("<u>KCC</u>"), or the Court at the addresses set forth in the foregoing subparagraph on or before the applicable Bar Date.  If a creditor wishes to receive acknowledgement of receipt of a proof of claim by KCC or the Clerk of this Court (the "<u>Clerk's Office</u>"), the creditor also must submit to KCC or Clerk's Office by the applicable Bar Date and concurrently with submitting its original proof of claim:  (i) a copy of the original proof of claim; and (ii) for claims submitted to KCC or by mail to the Clerk's Office, a self-addressed, postage prepaid return envelope; and

(d)     Proofs of claim must (i) be signed by the claimant or by an authorized agent of the claimant; (ii) include any documents upon which the claim is based (or, if such documents are voluminous, a summary) or an explanation as to why the documents are not available; (iii) be written in the English language; and (iv) be denominated in United States currency.  Any claimant that provides a summary in lieu of the documentation required by Bankruptcy Rule 3001 shall transmit the documents in support of its claim to KCC and the City within ten days after the date of any written request by the City for such documents.

8.     Entities holding the following claims (to the extent such claims would be subject to the General Bar Date) shall <u>not</u> be required to file proofs of claim in this chapter 9 case on account of such claims:

(a)     Any claim for liabilities associated with post-employment benefits under the City's Health and Life Insurance Benefit Plan, the Supplemental Death Benefit Plan or other non-pension post-employment welfare benefits, including unfunded actuarially accrued liabilities (any such claim, a "<u>Healthcare Liability Claim</u>").

(b)     Any claim by present or potential future beneficiaries of the City's two pension systems, the General Retirement System and the Police and Fire Retirement System, for pension benefits or unfunded pension liabilities (any such claim, a "<u>Pension Liability Claim</u>").

(c)     Any claim of (or on behalf of) an active employee for ordinary course compensation and employment benefits, including, without limitation, wages, salaries, employee medical benefits and/or insurance

benefits ("Ordinary Course Compensation Claims"), *provided*, *however*, that Ordinary Course Compensation Claims shall not include claims asserted or to be asserted in any lawsuit or similar proceeding even where such claims assert as damages an entitlement to wages, salaries, employee medical benefits and/or insurance benefits.

(d)     Any claim by a holder for the repayment of principal, interest and/or other applicable fees and charges on or under (i) the Secured Bonds or (ii) the COPs.

(e)     Any claim by a holder for the repayment of principal or interest on or under the City's unlimited tax general obligation bonds, limited tax general obligation bonds and general fund bonds (collectively, the "GO Bonds") to preserve its right to a *pro rata* share of distributions on account of the amount of principal and interest under such bonds listed in the City's List of Claims.

(f)     Any claim arising from an ordinary course entitlement to an income tax refund (to the extent of such claimed entitlement) asserted through the City's established income tax refund procedures, *provided*, *however*, that entities holding any other Prepetition Claims or causes of action related to income tax matters that are not properly asserted through the City's established income tax refund procedures must file a proof of claim by the General Bar Date.

(g)     Any claim with respect to which the holder already has filed a signed proof of claim against the City with the Clerk's Office or KCC in a form substantially similar to Official Bankruptcy Form No. 10;

(h)     Any claim that is listed on the List of Claims if (i) the claim is not listed as "disputed," "contingent" or "unliquidated;" and (ii) such entity agrees with the amount, nature and priority of the claim as set forth in the List of Claims;

(i)     Any claim that previously has been allowed by order of the Court;

(j)     Any claim that has been paid in full by the City; and

(k)     Any claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an expense of administration (other than any

503(b)(9) Claim or any portion of a Rejection Damages Claim asserting administrative priority under section 503(b) of the Bankruptcy Code).

9.     Nothing herein shall operate to limit or deny the right of: (a) any employee or retiree to vote on any Chapter 9 Plan proposed by the City in this case with respect to Healthcare Liability Claims or Pension Liability Claims that they may possess; or (b) any entity to file any proof of claim that such entity deems necessary or appropriate, subject to any rights the City or other parties in interest may have to object to any such proof of claim.

10.     For the avoidance of doubt, the following entities should file proofs of claim to the extent the filing of such claim is not otherwise made unnecessary by the terms of the foregoing paragraph 8:  (a) employees and retirees asserting Prepetition Claims *other than* Healthcare Liability Claims, Pension Liability Claims or Ordinary Course Compensation Claims and (b) insurers of the GO Bonds asserting claims in connection with such bonds.

11.     Each of the Public Safety Unions may file one or more omnibus proofs of claim by the General Bar Date for its members with respect to (a) claims related to grievances for its respective members and/or (b) defense and indemnification claims arising from tort claims asserted or that may be asserted by third parties against the City and/or such Public Safety Union member(s), subject to the City's right to object to any such claims.  The filing of any such omnibus

proof of claim is without prejudice to the right of any Public Safety Union member to file a claim on his or her own behalf.

12.    The Retiree Committee may file one or more protective proofs of claim on behalf of retirees and their beneficiaries on account of Healthcare Liability Claims and Pension Liability Claims, subject to the City's rights to object to such claims.  For the avoidance of doubt, it is not necessary for the Retiree Committee to file any such proof of claim:  (a) to preserve the rights of retirees and their beneficiaries to receive any distributions from the City to which they may be entitled; or (b) to vote on any Chapter 9 Plan, to the extent such retirees and beneficiaries otherwise would be entitled to do so.  In addition, nothing herein shall preclude the Retirement Systems from filing proofs of claim on behalf of retirees and beneficiaries on account of Pension Liability Claims, nor shall this Order constitute a judicial determination of the proper party or parties to assert any claim.

13.    UAW may file one or more omnibus proofs of claim on behalf of UAW-represented employees and former employees, regardless of the nature of such claims, including, without limitation, claims for post-retirement health obligations, pension obligations (whether benefits, underfunding or otherwise) or other compensation, subject to the City's right to object to any such claims. The City shall reasonably cooperate with UAW in providing names and addresses of City retirees who are former employees of UAW-represented City bargaining

13-53846-tjt   Doc 12873-1   Filed 02/20/18   Entered 02/20/18 14:21:38   Page 108 of
13-53846-tjt   Doc 12873-1   Filed 11/21/18   Entered 11/21/18 09:24:03   Page 108 of
219
10
108

units to the extent the City has such information.  The filing of any such omnibus proof of claim is without prejudice to the right of any UAW-represented employee or former employee to file a claim on his or her own behalf.

14.     AFSCME may file one or more omnibus proofs of claim on behalf of AFSCME-represented employees and former employees, regardless of the nature of such claims, including, without limitation, claims for post-retirement health obligations, pension obligations (whether benefits, underfunding or otherwise) or other compensation, subject to the City's right to object to any such claims.  The City shall reasonably cooperate with AFSCME in providing names and addresses of City retirees who are former employees of AFSCME-represented City bargaining units to the extent the City has such information.  The filing of any such omnibus proof of claim is without prejudice to the right of any AFSCME-represented employee or former employee to file a claim on his or her own behalf.

15.     For the avoidance of doubt, the classification, priority and treatment of claims for principal and interest under the GO Bonds pursuant to any Chapter 9 Plan shall not be affected by any provision of this Order or by whether or not the holders of GO Bonds file or do not file proofs of claim.

16.     Any entities asserting claims arising from or relating to the rejection of executory contracts or unexpired leases, in accordance with

section 365 of the Bankruptcy Code and pursuant to an order of this Court entered prior to the confirmation of the City's Chapter 9 Plan (a "Rejection Order"), or claims otherwise related to such rejected agreements, including (a) secured claims, unsecured priority claims and unsecured nonpriority claims that arose or are deemed to have arisen prior to the Petition Date and (b) administrative claims under section 503(b) of the Bankruptcy Code (collectively, "Rejection Damages Claims") are required to file proofs of claim by the later of (a) the General Bar Date and (b) 4:00 p.m., Eastern Time, on the first business day that is at least 30 days after the entry of the applicable Rejection Order (the "Rejection Damages Bar Date"). For the avoidance of doubt, all prepetition and postpetition claims of any kind or nature relating to executory contacts or unexpired leases rejected by a Rejection Order must be filed by the Rejection Damages Bar Date. Rejection Orders entered after the date of entry of this Order shall include a description of the Rejection Damages Bar Date in the text of the Rejection Order.

17. Each entity asserting a Rejection Damages Claim with an administrative claim component must file, along with its proof of claim, a detailed statement describing the nature and basis of the portion of the Rejection Damages Claim asserting an administrative priority under section 503(b) of the Bankruptcy Code (the "Administrative Claim Supplement"). The filing of a proof of claim form, along with an attached Administrative Claim Supplement, if applicable, shall

13-53846-tjt   Doc 12873-1   Filed 08/20/18   Entered 08/20/18 14:21:38   Page 110 of
13-53846-tjt   Doc 1782-1   Filed 11/21/13   Entered 11/21/13 09:24:03   Page 112 of 110
219

satisfy the procedural requirements for the assertion of a Rejection Damages Claim (including any administrative claim included therein).

18.     The City shall retain the right to:  (a) dispute, or assert offsets or defenses against, any Filed Claim or any Scheduled Claim as to nature, amount, liability, classification, priority or otherwise; (b) subsequently designate any Scheduled Claim as disputed, contingent or unliquidated; and (c) otherwise amend or supplement the List of Claims.  If the City amends or supplements the List of Claims after the Service Date, the City shall give notice of any such amendment or supplement to the holders of claims affected thereby, including notice of the applicable Amended Claims List Bar Date to file proofs of claim in response to the amendment or supplement to the List of Claims.

19.     In particular, if the City amends or supplements its List of Claims to:  (a) reduce the undisputed, noncontingent and liquidated amount of a claim; (b) change the nature, classification or priority of a Scheduled Claim in a manner adverse to the listed creditor; or (c) add a new Scheduled Claim to the List of Claims with respect to a party that was not previously served with notice of the Bar Dates (in each case, a "Modified Claim"), the affected claimant shall be permitted to file a proof of claim, or amend any previously filed proof of claim, in respect of the Modified Claim in accordance with the procedures described herein by the later of (a) the General Bar Date; and (b) 4:00 p.m., Eastern Time, on the

13-53846-tjt   Doc 12878-1   Filed 08/20/18   Entered 08/20/18 14:21:38   Page 111 of 139
13-53846-tjt   Doc 2782-1   Filed 11/21/13   Entered 11/21/13 09:24:03   Page 111 of 139
13
219
111

first business day that is at least 30 days after the date that notice of the applicable amendment to the List of Claims is served on the claimant (the "Amended Claims List Bar Date").  By contrast, if the amendment to the List of Claims improves the amount or treatment of a previously listed or filed claim, a claimant that previously was served with a notice of the Bar Dates is not permitted to file additional claims by the Amended Claims List Bar Date; *provided*, *however*, that nothing contained herein shall be construed to limit, enhance or otherwise affect a claimant's right to amend a timely filed proof of claim.

20.     Nothing contained in this Order shall preclude the City from objecting to any claim, whether listed or filed, on any grounds.  In addition, nothing herein limits, or is intended to limit, any claimant's rights to defend against any objection.

21.     Pursuant to Bankruptcy Rule 3002(c)(1), the date by which governmental units shall file proofs of claim in this case shall be the later of: (a) the first business day that is at least 180 days following the date of the entry of an order for relief in this case; and (b) any Rejection Damages Bar Date or Amended Claims List Bar Date applicable to the governmental unit.

22.     Pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(2), any entity that is required to file a proof of claim in this case pursuant to the Bankruptcy Code, the Bankruptcy Rules or this Order

with respect to a particular claim against the City, but that fails properly to do so by the applicable Bar Date, shall be forever barred, estopped and enjoined from: (a) asserting any claim against the City or property of the City that (i) is in an amount that exceeds the amount, if any, that is identified in the List of Claims on behalf of such entity as undisputed, noncontingent and liquidated or (ii) is of a different nature or a different classification or priority than any Scheduled Claim identified in the List of Claims on behalf of such entity (any such claim under subparagraph (a) of this paragraph being referred to herein as an "Unscheduled Claim"); (b) voting upon, or receiving distributions under any Chapter 9 Plan in this case in respect of an Unscheduled Claim; or (c) with respect to any 503(b)(9) Claim or administrative priority claim component of any Rejection Damages Claim, asserting any such priority claim against the City or property of the City.

23. Within five business days after the entry of this Order or as soon as practicable thereafter, the City, through KCC or otherwise, shall serve the Bar Date Notice Package by first class mail, postage prepaid (or equivalent service), on:

(a) all known potential claimants (or their counsel, if known), including all entities identified as potential claim holders in the List of Claims;

(b) the Trustees;

(c) counsel to the Official Committee of Retirees appointed in this case;

13-53846-tjt   Doc 12878-1   Filed 08/20/18   Entered 08/20/18 14:21:38   Page 15 of 39
13-53846-tjt   Doc 1782-1   Filed 11/21/13   Entered 11/21/13 09:24:03   Page 113 of 39
15
219
113

(d)     all parties that have requested notice of the proceedings in this case as of the date of this Order;

(e)     all parties that have filed proofs of claim in this case as of the date of this Order;

(f)     all known parties to executory contracts and unexpired leases with the City, including all parties to executory contracts and unexpired leases rejected by a Rejection Order, if any, as of the date of this Order;

(g)     all known parties to pending litigation with the City;

(h)     the United States Attorney for this District; and

(i)     all federal and state environmental protection agencies for this jurisdiction.

24.     The City also shall serve the Bar Date Notice on the holders of the GO Bonds. If DTC has not already provided the Institutional Nominee List to the City as of the date of this Order, DTC is directed to provide the City with the Institutional Nominee List within three business days of this date or as soon as practicable thereafter. Service of the Bar Date Notice by electronic mail on those holders of the GO Bonds that previously consented in writing to receive notices regarding the GO Bonds by electronic mail shall constitute adequate notice of the Bar Dates on such holders.

25.     As part of the Bar Date Package, the City shall mail one or more Proof of Claim Forms (as appropriate) to the parties receiving the Bar Date Notice. Except with respect to holders of GO Bonds, for holders of Scheduled Claims listed in the List of Claims, the Proof of Claim Form mailed to such entities

13-53846-tjt   Doc 12878-1   Filed 08/20/18   Entered 08/20/18 14:21:38   Page 16 of 89
13-53846-tjt   Doc 12878-1   Filed 11/21/18   Entered 11/21/18 09:24:03   Page 96 of 89   114
16
219

shall indicate how the City has listed the creditor's claim in the List of Claims, including: (a) the amount of the claim, if any; (b) whether the claim is listed as disputed, contingent or unliquidated; and (c) whether the claim is listed as a secured claim or an unsecured nonpriority claim. Along with Proof of Claim Forms distributed to the holders of GO Bonds, the City will provide a schedule identifying the amount listed in the List of Claims for each series of GO Bonds.

26. Pursuant to Bankruptcy Rule 2002(f), the City shall publish the Bar Date Notice, once, in the *Detroit Free Press*, *The Detroit News* and national editions of *USA Today* and *The Wall Street Journal* at least 28 days prior to the General Bar Date, which publication is hereby approved and shall be deemed good, adequate and sufficient publication notice of the Bar Dates. The City is authorized to modify the Bar Date Notice to the extent necessary or appropriate to conform the Bar Date Notice to publication and minimize expense.

27. The City and KCC are authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of this Order.

28. The entry of this Order is without prejudice to the right of the City to seek a further order of this Court fixing a date by which holders of claims or interests not subject to the Bar Dates established herein must file such proofs of claim or interest or be barred from doing so.

29.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation, implementation and/or enforcement of this Order.


Signed on November 21, 2013

<div style="text-align: right">

_____/s/ Steven Rhodes_____
Steven Rhodes
United States Bankruptcy Judge

</div>

13-53846-tjt   Doc 12872-1   Filed 09/20/18   Entered 09/20/18 14:21:38   Page 116 of
13-53846-tjt   Doc 1782-1   Filed 11/21/13   Entered 11/21/13 09:24:03   Page 98 of 89
18
219
116

# ANNEX I

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

```
-------------------------------------------------------------------x
                                        :
In re                                   :        Chapter 9
                                        :
CITY OF DETROIT, MICHIGAN,              :        Case No. 13-53846
                                        :
                         Debtor.        :        Hon. Steven W. Rhodes
                                        :
                                        :
-------------------------------------------------------------------x
```

## INFORMATION ABOUT DEADLINES TO FILE CLAIMS

---

### OVERVIEW – KEY POINTS

- This document is a legal notice concerning the bankruptcy case of the City of Detroit, Michigan. This document is being sent to all parties that may be owed money by the City (known as "creditors").

- **The Overview on this page describes the key terms of this document. Please read the entire document carefully for further details. On the following pages, each section of this document includes a summary of the main points, followed by more detailed information.**

- In bankruptcy, creditors may be required to file claim forms stating the amount of money owed to them as of the day the bankruptcy was filed. This document explains how to file claims.

- **Many creditors in the City's bankruptcy case <u>are not required</u> to file a claim**. This document explains who is required to file a claim and who is not required to file a claim. If you are not required to file a claim, then you do not need to take any action at this time to preserve your right to vote on or receive payments under a restructuring plan.

- **The following parties are <u>not</u> required to file a claim** *(for further information, see Section 1 of this document)*:

  o **City retirees and their beneficiaries** are not required to file claims for pension or healthcare benefits or other post-employment welfare benefits.

  o **City employees and their beneficiaries** are not required to file claims for pension or healthcare benefits, routine wages or other employment benefits.

  o **Taxpayers** are not required to file claims for routine income tax refunds.

  o **Bondholders** holding any of the bonds identified on the "Schedule of Secured Bonds" on the last two pages of this document and **holders of Certificates of Participation** issued by the City are not required to file claims for the repayment of principal, interest and/or other applicable fees and charges.

  o **Other bondholders** holding general obligation bonds are not required to file claims to receive their *pro rata* share of distributions on account of the amount of principal and interest calculated by the City.

- If you are required to file a claim against the City, you must do so by **February 21, 2014 at 4:00 p.m., Eastern Time**. A form that you may use to file your claim is provided with this document. *For further information, and other special deadlines for certain creditors, see Sections 3 and 4 of this document.*

- Claims may be mailed or hand delivered to the City's agent (Kurtzman Carson Consultants) or to the Court at the addresses provided in Section 5 of this document.

- After reading this document, if you have any questions regarding the filing of a claim, you may contact the City of Detroit Claims Hotline toll-free during normal business hours at **(877) 298-6236**. Please note that the people answering the hotline phone number are not able to provide legal advice. If you have questions about your legal rights, including whether you need to file a claim, you should talk to a lawyer.

**[Note: This Overview and the Summaries herein are for the service version, not the publication version, of this Notice.]**

13-53846-tit Doc 12873-1 Filed 08/20/18 Entered 08/20/18 14:21:38 Page 118 of
13-53846-swr Doc 1782-1 Filed 11/21/13 Entered 11/21/13 09:24:03 Page 118 of
219
118

<p style="text-align:center"><u>**NOTICE OF DEADLINES FOR FILING OF PROOFS OF CLAIM**</u><br/>
**(GENERAL BAR DATE IS FEBRUARY 21, 2014**<br/>
**AT 4:00 P.M., EASTERN TIME)**</p>

**TO ALL PERSONS AND ENTITIES WITH CLAIMS**
**AGAINST THE CITY OF DETROIT, MICHIGAN (THE "<u>CITY</u>"):**

On **[_____]**, 2013, the United States Bankruptcy Court for the Eastern District of Michigan (the "<u>Court</u>") entered an order (Docket No. **[____]**) (the "<u>Bar Date Order</u>") establishing certain deadlines for the filing of proofs of claim in the chapter 9 bankruptcy case of the City.

By the Bar Date Order, the Court established **<u>February 21, 2014 at 4:00 p.m., Eastern Time</u>** (the "<u>General Bar Date</u>"), as the general claims bar date for filing proofs of claim in the City's case.  As described below, certain claimants are <u>not</u> required to file proofs of claim with respect to their claims, and the Bar Date Order also establishes different bar dates with respect to certain categories of claims.  <u>See</u> Section 1 for more information. ***To determine if you need to file a proof of claim in this case and the applicable deadline and instructions for filing a proof of claim, please read this Notice carefully.***

### *List of Claims*

On September 30, 2013, the City filed its Second Amended List of Creditors and Claims, Pursuant to Sections 924 and 925 of the Bankruptcy Code (Docket No. 1059), which constitutes the City's list of claims (as amended or supplemented from time to time, the "<u>List of Claims</u>") under section 925 of title 11 the United States Code (the "<u>Bankruptcy Code</u>").  Any claim identified on the List of Claims is referred to herein as a "<u>Scheduled Claim</u>."

### *Proof of Claim Form*

For your convenience, enclosed with this Notice is a proof of claim form (the "<u>Claim Form</u>"), which identifies on its face the amount, nature and classification of your claim(s), if any, listed in the City's List of Claims. *If you are the holder of a general obligation bond (defined in Section 1 as GO Bonds), please note that the List of Claims identifies the City's calculation of the total bond debt by series as of commencement of the City's bankruptcy case on July 18, 2013, and the List of Claims does not identify the amount owed to any particular bondholder.  If you are a holder of a GO Bond, the amount listed by the City in the List of Claims for each series of GO Bonds is provided with your Claim Form.*

A blank copy of the Claim Form is available on the City's restructuring website at www.kccllc.net/detroit, along with all other documents filed in the City's bankruptcy case.  **[Note:  The preceding two paragraphs are for the service version, not the publication version, of this Notice.]**

For the convenience of potential claimants, a proof of claim form prepared for use in the City's chapter 9 case (the "<u>Claim Form</u>"), along with all other documents filed in the City's bankruptcy case, is available on the City's restructuring website at www.kccllc.net/detroit.  **[Note:  This paragraph is for the publication version of this Notice.]**

### *Certain Definitions*

The following definitions come from the Bankruptcy Code and are provided for your convenience.

As used in this Notice the term "<u>entity</u>" has the meaning given to it in section 101(15) of the Bankruptcy Code and includes, among other things, individuals, partnerships, corporations, joint ventures and trusts.

As used in this Notice, the term "<u>claim</u>" means, as to or against the City and in accordance with section 101(5) of the Bankruptcy Code:  (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

## SECTION 1 — WHO IS NOT REQUIRED TO FILE A PROOF OF CLAIM

---

**SUMMARY**

- **Section 1 describes which of the City's creditors <u>are not required</u> to file a claim.  It states that the following creditors, among others, are <u>not</u> required to file a claim:**

   o **City retirees and their beneficiaries** are not required to file claims for pension or healthcare benefits or other post-employment welfare benefits.  *The City will work with retiree representatives to establish an appropriate process for retirees and their beneficiaries to vote on and receive payments under any restructuring plan.*

   o **City employees and their beneficiaries** are not required to file claims for pension or healthcare benefits, routine wages or other employment benefits.  *The City will work with employee representatives to establish an appropriate process for employees to vote on and receive payments under any restructuring plan.*

   o **Taxpayers** are not required to file claims for routine income tax refunds.  *The City will continue to process routine income tax refunds according to its usual procedures.*

   o **Bondholders** holding any of the bonds identified on the "Schedule of Secured Bonds" on the last two pages of this Notice and **holders of Certificates of Participation** issued by the City are not required to file claims for the repayment of principal, interest and/or other applicable fees and charges.  *In each case, the applicable trustee or other agent has agreed to file the claim on behalf of the holders.*

   o **Other bondholders** holding general obligation bonds are not required to file claims to receive their *pro rata* share of distributions on account of the amount of principal and interest listed on the City's list of claims.  *See Section 8 for more details about the list of claims.*

- A restructuring plan is a document that explains how the City proposes to pay the amounts it owes to its creditors.  Once filed, this plan will be available for creditors to review.  **If you are not required to file a claim, you do not need to complete and return a claim form, and you will still keep your rights to vote on a restructuring plan and receive payments under the plan.**  Who gets to vote on the plan will be determined at a later date.  The amount you may receive under the plan also will be determined later.  The plan may propose that you receive less than the amount you are owed.

- **Even if you are not required to file a claim form, you are permitted to do so.**

---

The Bar Date Order provides that entities holding the following claims **are not required to** file proofs of claim on account of such claims to preserve any right they may have to receive distributions from the City and vote on any chapter 9 plan of adjustment (a "<u>Plan</u>") proposed by the City:

   (a)     Claims of retirees, employees or other beneficiaries for (a) post-employment benefits under the City's Health and Life Insurance Benefit Plan, the Supplemental Death Benefit Plan or other non-pension post-employment welfare benefits, including unfunded actuarially accrued liabilities (any such claim, a "<u>Retirement Healthcare Claim</u>") and (b) pension benefits (any such claim, a "<u>Pension Claim</u>") under the City's two retirement systems, the General Retirement System and the Police and Fire Retirement System (together, the "<u>Retirement Systems</u>").  In consultation with the Official Committee of Retirees appointed in the Chapter 9 Case (the "<u>Retiree Committee</u>"), other groups representing the interests of current and future recipients of post-employment healthcare and pension benefits and, in the case of Pension Claims, the Retirement Systems, the City intends to establish an appropriate mechanism for such retirees, employees or other beneficiaries to vote on any Plan with respect to any pension and healthcare claims they may possess.

   (b)     Claims of active employees for ordinary course compensation and employment benefits including, without limitation, wages, salaries, employee medical benefits and insurance benefits ("<u>Ordinary Course Compensation Claims</u>").  The City intends to continue to pay Ordinary Course Compensation Claims in the normal course.  Accordingly, active employees need not file proofs of claim on account of Ordinary Course Compensation Claims.  For the avoidance of doubt, claims asserted or to be asserted in any lawsuit or similar proceeding are not Ordinary Course

Compensation Claims even where the claims assert as damages an entitlement to wages, salaries, employee medical benefits and/or insurance benefits.

(c)    Any claim by a holder for the repayment of principal, interest and/or other applicable fees and charges on or under (i) the bonds identified on the "Schedule of Secured Bonds" on the last two pages of this Notice (collectively, the "Secured Bonds") or (ii) any certificates of participation issued by the City (collectively, the "COPs"). In each case, the trustee or similar entity with respect to the applicable series of Secured Bonds or COPs has informed the City that, consistent with Bankruptcy Rule 3003(c), it intends to: (i) file any proofs of claim against the City on behalf of the holders of the Secured Bonds and the COPs; and (ii) provide notice to the holders of the Secured Bonds and the COPs.

(d)    Any claim by a holder for the repayment of principal or interest on or under the City's unlimited tax general obligation bonds, limited tax general obligation bonds and general fund bonds (collectively, the "GO Bonds" or "general obligations bonds") to preserve its right to a *pro rata* share of payments on account of the amount of principal and interest under such bonds listed in the List of Claims. Holders of GO Bonds with claims for amounts beyond principal and interest under these bonds are required to file claims for those additional amounts unless another exception applies. Also, the insurers of the GO Bonds must file any claims relating to the GO Bonds by the General Bar Date. The classification, priority and treatment of claims for principal and interest under the GO Bonds pursuant to any Chapter 9 Plan shall not be affected by any provision of the Bar Date Order or by whether or not the holders of GO Bonds file or do not file proofs of claim.

(e)    Any claim arising from an ordinary course entitlement to an income tax refund (to the extent of such claimed entitlement) asserted through the City's established income tax refund procedures, provided, however, that entities holding any other Prepetition Claims or causes of action related to income tax matters that are not properly asserted through the City's established income tax refund procedures must file a proof of claim by the General Bar Date.

(f)    Any claim with respect to which the holder already has filed a signed proof of claim against the City with the Clerk of this Court in a form substantially similar to Official Bankruptcy Form No. 10.

(g)    Any claim that is listed on the List of Claims if (i) the claim is not listed as "disputed," "contingent" or "unliquidated;" and (ii) such entity agrees with the amount, nature and priority of the claim as set forth in the List of Claims.

(h)    Any claim that previously has been allowed by order of the Court.

(i)    Any claim that has been paid in full by the City.

(j)    Any claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an expense of administration (other than any 503(b)(9) Claim or any portion of a Rejection Damages Claim asserting administrative priority under section 503(b) of the Bankruptcy Code).

*For the avoidance of doubt, nothing herein or in the Bar Date Order affects any right that the claimants identified in subsections (a) through (h) of this Section 1 may have to vote on and receive distributions under any Plan proposed by the City. Further, nothing herein or in the Bar Date Order should be construed as an agreement by the City or a determination by the Court that any particular party is the proper holder of any specific claim against the City with the right to vote on any Plan proposed by the City and receive distributions from the City on account of such claim.*

*Nothing in this Section 1 limits the right of any entity (including, without limitation, the City, the Retiree Committee, the Retirement Systems or the City's unions, employees, retirees, bondholders, bond insurers, trustees, paying agents or any other entity) to (a) assert any proof of claim authorized under the Bankruptcy Code or (b) object to any proof of claim on any grounds to the extent permitted under the Bankruptcy Code.*

## SECTION 2 — WHO MUST FILE A PROOF OF CLAIM

<table>
<tr><td align="center"><strong>SUMMARY</strong></td></tr>
</table>

- **Section 2 explains who must file a claim.  If none of the exceptions in Section 1 apply to you, then you must file a claim.**

- Note that the instructions in this document are for filing claims for any amounts owed to you by the City that "arose" before July 18, 2013, when this bankruptcy case was filed.  That may include amounts promised to you before July 18, 2013, even if they were not due until later.

- If you are the holder of a bond listed at the end of this document, or the holder of a Certificate of Participation, a trustee or agent has indicated that it will file a claim on your behalf.

- If you hold general obligation bonds, you are not required to file claims for your *pro rata* share of distributions on account of the amount of principal and interest listed on the City's list of claims.  *See Section 8 for more details about the list of claims.*  Claims for other amounts should be filed by the deadline.

- **Even if you are not required to file a claim form, you are permitted to do so.**

If none of the exceptions described in Section 1 applies, and if you have a claim that arose or is deemed to have arisen prior to the Filing Date (any such claim, a "<u>Prepetition Claim</u>"), you MUST file a proof of claim to share in distributions from the City's bankruptcy case and to vote on a Plan.  Claims based on acts or omissions of the City that occurred before the Filing Date must be filed on or prior to the applicable Bar Date, even if such claims are not now fixed, liquidated or certain or did not mature or become fixed, liquidated or certain before the Filing Date.

Except where one of the exceptions described in Section 1 applies (or where the Rejection Damages Bar Date, the Amended Claims List Bar Date or the Governmental Bar Date applies to establish a different deadline), the following entities must file proofs of claim on or before the General Bar Date:

(a)     any entity (i) whose Prepetition Claim against the City is not listed in the City's List of Claims or is listed as "disputed," "contingent" or "unliquidated" and (ii)  that desires to share in any distribution in this bankruptcy case and/or otherwise participate in the proceedings in this bankruptcy case associated with the confirmation of any Plan; and

(b)     any entity that believes its Prepetition Claim is improperly classified in the List of Claims or is listed in an incorrect amount or priority and that desires to have its claim allowed in a classification, priority or amount other than that identified in the List of Claims, *provided that* any holder of GO Bonds asserting a claim for principal and interest in connection with such bonds is not required to file a proof of claim to preserve its right to a *pro rata* share of distributions on account of the amount of principal and interest under such bonds listed in the City's List of Claims.

*Note that the Bar Date Order should not be construed as an agreement by the City or a determination by the Court that any particular party is the proper holder of any specific claim against the City with the right to vote on any Plan proposed by the City and receive distributions from the City on account of such claim.*

-5-

13-53846-tjt   Doc 12873-1   Filed 08/20/18   Entered 08/20/18 14:21:38   Page 123 of
13-53846-tjt   Doc 1782   Filed 11/21/13   Entered 11/21/13 09:24:03   Page 4 of 39      122
219

---

**SUMMARY**

- Section 3 states that the general deadline for creditors to file claims is **February 21, 2014 at 4:00 p.m., Eastern Time.**

- "Bar date" is the legal term for the deadline to file a claim form.

- There are other later deadlines for filing claims that apply to certain parties. Additional information about these deadlines will be sent to those parties. These deadlines also are explained in Section 3.

---

The Bar Date Order establishes the following bar dates for filing proofs of claim in this case (collectively, the "Bar Dates"):

(a) The General Bar Date. Pursuant to the Bar Date Order, except as described below, all entities holding claims against the City that arose (or are deemed to have arisen) prior to the commencement of this case are required to file proofs of claim by the General Bar Date (i.e., by February 21, 2014 at 4:00 p.m., Eastern Time). This case was commenced on July 18, 2013 (the "Filing Date"). The General Bar Date applies to all types of claims against the City that arose prior to the Filing Date, including secured claims, unsecured priority claims and unsecured nonpriority claims. For the avoidance of doubt, the General Bar Date applies to all claims asserting administrative expense priority under section 503(b)(9) of the Bankruptcy Code, subject to Section 4 below.

(b) The Rejection Damages Bar Date. Pursuant to the Bar Date Order, any entity asserting claims arising from or relating to the rejection of executory contracts or unexpired leases, in accordance with section 365 of the Bankruptcy Code and pursuant to an order entered prior to the confirmation and effectiveness of a Plan (any such order, a "Rejection Order"), or claims otherwise related to such rejected agreements, including (i) secured claims, unsecured priority claims and unsecured nonpriority claims that arose or are deemed to have arisen prior to the Filing Date and (ii) administrative claims under section 503(b) of the Bankruptcy Code (collectively, "Rejection Damages Claims") are required to file proofs of claim by the later of (a) the General Bar Date and (b) 4:00 p.m., Eastern Time, on the first business day that is at least 30 days after the entry of the relevant Rejection Order. The later of these dates is referred to in this Notice as the "Rejection Damages Bar Date." *For the avoidance of doubt, all prepetition and postpetition claims of any kind or nature arising from or relating to executory contacts or unexpired leases rejected by a Rejection Order must be filed by the Rejection Damages Bar Date.* In accordance with the Bar Date Order, any Rejection Order entered by the Bankruptcy Court will specify the Rejection Damages Bar Date applicable to any executory contracts or unexpired leases rejected thereunder.

(c) The Amended Claims List Bar Date. Pursuant to the Bar Date Order, if, subsequent to the date of this Notice, the City amends or supplements its List of Claims to: (i) reduce the undisputed, noncontingent and liquidated amount of a claim; (ii) change the nature, classification or priority of a Scheduled Claim in a manner adverse to the listed creditor; or (iii) add a new Scheduled Claim to the List of Claims with respect to a party that was not previously served with notice of the Bar Dates (in each case, a "Modified Claim"), the affected claimant shall be permitted to file a proof of claim, or amend any previously filed proof of claim, in respect of the Modified Claim in accordance with the procedures described herein by the later of (i) the General Bar Date; and (ii) 4:00 p.m., Eastern Time, on the first business day that is at least 30 days after the date that notice of the applicable amendment to the List of Claims is served on the claimant (the "Amended Claims List Bar Date"). The City will provide notice of any Amended Claims List Bar Date to affected claimants. Affected claimants that previously filed a proof of claim (any such claim, a "Filed Claim") with respect to the liabilities giving rise to any Modified Claim need not refile their proof of claim because the Filed Claim is deemed to supersede and replace the original Scheduled Claim and the Modified Claim. In addition, if the City's amendment to the List of Claims improves the amount or treatment of a Scheduled Claim or a Filed Claim, a claimant that previously was served with a notice of the Bar Dates is not permitted to file additional claims by

the Amended Claims List Bar Date; provided, however, that nothing contained in the Bar Date Order shall be construed to limit, enhance or otherwise affect a claimant's right to amend a timely filed proof of claim. In addition, notwithstanding the foregoing, nothing contained herein precludes the City from objecting to any Scheduled Claim or Filed Claim on any grounds.

(d) The Governmental Bar Date. Governmental units (as defined in section 101(27) of the Bankruptcy Code) are not subject to the General Bar Date. Pursuant to Bankruptcy Rule 3002(c)(1), the date by which governmental units must file proofs of claim in this case (the "Governmental Unit Bar Date") is the later of: (i) the first business day that is at least 180 days following the date of the entry of an order for relief in this case; and (ii) any Rejection Damages Bar Date or Amended Claims List Bar Date applicable to the governmental unit. No order for relief has yet been entered in the City's chapter 9 case, and proceedings to establish the City's eligibility to be a chapter 9 debtor are ongoing at this time. If the City prevails in establishing eligibility, the Court will enter an order for relief consistent with section 921(d) of the Bankruptcy Code. **[Update as appropriate at time that this Notice is finalized.]** The City will provide notice of the entry of an order for relief to all known creditors that are governmental units of the Court's entry of an order for relief and the resulting Governmental Bar Date.

## SECTION 4 — WHAT TO FILE

### SUMMARY

- Section 4 explains the paperwork for filing a claim.

- The claim form is sometimes called a "proof of claim."

- You must complete and sign the claim form and provide all necessary supporting documentation or a summary of this documentation.

- The amount owed to you must be listed in U.S. dollars, and the form must be filled out in English.

- The claim form includes instructions and explanations to assist you.

- A claim form is enclosed. Extra copies are available for free on the internet at www.kccllc.net/detroit.

As noted above, the City is enclosing a Claim Form for use in this case, or you may use another proof of claim form that conforms substantially to Official Bankruptcy Form No. 10. If your claim is listed by the City on its List of Claims (other than claims arising from GO Bonds), the attached Claim Form sets forth: (a) the amount of your claim (if any) as listed by the City; (b) whether your claim is listed as disputed, contingent or unliquidated; and (c) whether your claim is listed as a secured claim or an unsecured nonpriority claim. *If you are the holder of a GO Bond, please note that the List of Claims identifies the City's calculation of the total bond debt by series as of the Filing Date, and the List of Claims does not identify the amount owed to any particular bondholder. If you are a holder of a GO Bond, the amount listed by the City in the List of Claims for each series of GO Bonds is provided with your Claim Form.*

You will receive a different Claim Form for each claim listed in your name by the City. You may utilize the Claim Form(s) provided by the City to file your claim. Additional proof of claim forms may be obtained at the following websites: (a) www.kccllc.net/detroit for a blank Claim Form designed specifically for this case or (b) www.uscourts.gov/bkforms for a copy of Official Bankruptcy Form No. 10. **[Note: The preceding two paragraphs are for the service version, not the publication version, of this Notice.]**

To file your claim, you may use (a) the Claim Form specifically prepared for this chapter 9 case, which is available at www.kccllc.net/detroit or (b) another proof of claim form that conforms substantially to Official Bankruptcy Form No. 10 (which form is available at www.uscourts.gov/bkforms). **[Note: This paragraph is for the publication version of this Notice.]**

All proof of claim forms must be **signed** by the claimant or by an authorized agent of the claimant. The proof of claim form must be written in English and be denominated in United States currency. You should attach to your completed proof of claim form any documents on which the claim is based (the "<u>Supporting Documents</u>") (or, if the Supporting Documents are voluminous, you may attach a summary) or an explanation as to why the documents are not available. If you file a summary of the Supporting Documents because they are voluminous, you must transmit the Supporting Documents to (a) the City of Detroit Claims Processing Center (as defined below) and (b) the City within ten days after the date of a written request by the City for such documents.

Each entity asserting a Rejection Damages Claim with an administrative claim component must file, along with its proof of claim, a detailed statement describing the nature and basis of the portion of the Rejection Damages Claim asserting an administrative priority under section 503(b) of the Bankruptcy Code (the "<u>Administrative Claim Supplement</u>").

Under the Bar Date Order, the filing of a proof of claim form satisfies the procedural requirements for the assertion of any administrative priority claims under section 503(b)(9) of the Bankruptcy Code. Likewise, the filing of a proof of claim form, along with an attached Administrative Claim Supplement, if applicable, satisfies the procedural requirements for the assertion of a Rejection Damages Claim (including any administrative claim included therein). Claims asserting administrative expense priority (a) under section 503(b)(9) of the Bankruptcy Code or (b) as a portion of a Rejection Damages Claim must be filed by the General Bar Date and the Rejection Damages Bar Date, respectively.

***All other administrative claims under sections 503(b) and 507(a)(2) of the Bankruptcy Code will not be deemed proper if asserted by proof of claim. The City intends to establish a process for the assertion of such claims at a future date if and to the extent necessary or appropriate. Note that the claim priorities provided under subsections (a)(1) and (a)(3) through (a)(10) of section 507 of the Bankruptcy Code are inapplicable in chapter 9 pursuant to section 901(a) of the Bankruptcy Code.***

<u>**SECTION 5 — WHEN AND WHERE TO FILE**</u>

---

**SUMMARY**

- Section 5 explains that claims may be mailed or hand delivered to ***either***:  (a) the City's Claims Processing Center in California or (b) the Clerk's Office at the Bankruptcy Court in Detroit, Michigan.

- The addresses for filing are listed in Section 5 below.

- All claims must be received by **February 21, 2014 at 4:00 p.m., Eastern Time**, if that deadline applies to you.

- **All claims must be mailed or delivered by hand.  Fax and e-mail submissions are not allowed.  Also, electronic filing of claims on the Court's docketing system is not permitted.**

- If you would like to receive an acknowledgment of your filing, you must provide an extra copy of your claim. If you are filing your claim by mail, or delivering it to the claims center in California, you also must provide a self-addressed, postage prepaid return envelope.

---

All proofs of claim must be mailed or delivered so as to be received **on or before the applicable Bar Date**, at either one of the following two locations:

(a)       the City of Detroit Claims Processing Center at the following address:

<div align="center">

**City of Detroit Claims Processing Center**
**c/o Kurtzman Carson Consultants, LLC**
**2335 Alaska Avenue**
**El Segundo, CA  90245**

</div>

(b)      the Clerk's office at the Court (the "Clerk's Office") at the following address:

**Office of the Clerk of Court**
**United States Bankruptcy Court**
**for the Eastern District of Michigan**
**211 West Fort Street**
**Suite 1700**
**Detroit, MI  48226**

Proofs of claim will be deemed filed only when **actually received** by the City of Detroit Claims Processing Center or the Clerk's Office on or before the applicable Bar Date.  **Proofs of claim may NOT be delivered by facsimile or electronic mail transmission**.  Any submissions by facsimile, electronic mail or electronic (ECF) court filing will not be accepted and will not be deemed filed until a proof of claim is submitted by one of the methods described above.

Proof of claim forms will be collected from the City of Detroit Claims Processing Center and the Clerk's Office, docketed and maintained by the City's claims agent, KCC.  If you wish to receive acknowledgement of receipt of a proof of claim, you must submit by the applicable Bar Date and concurrently with submitting your original proof of claim (a) a copy of the original proof of claim and (b) for claims submitted to KCC or by mail to the Clerk's Office, a self-addressed, postage prepaid return envelope.

## SECTION 6 — EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**SUMMARY**

- Section 6 provides special rules for creditors asserting claims arising from contracts that the City rejects during its bankruptcy case.

- "Rejecting" a contract is a special bankruptcy power that allows the City to stop performing certain agreements upon approval of the Bankruptcy Court.

As described in Section 3 above, any entity wishing to assert a Rejection Damages Claim must file a proof of claim for any prepetition or postpetition damages caused by such rejection, or any other prepetition or postpetition claims of any kind or nature whatsoever relating to the rejected agreement, by the Rejection Damages Bar Date.

## SECTION 7 — CONSEQUENCES OF FAILURE TO FILE
## A PROOF OF CLAIM BY THE APPLICABLE BAR DATE

**SUMMARY**

- Section 7 explains what happens if you are required to file a claim by the deadline, but do not.

- In that case, you will lose the right to vote on or receive payments under the City's restructuring plan.

ANY ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM WITH RESPECT TO A PARTICULAR CLAIM AGAINST THE CITY, BUT THAT FAILS TO DO SO BY THE APPLICABLE BAR DATE DESCRIBED IN THIS NOTICE, SHALL BE FOREVER BARRED, ESTOPPED AND ENJOINED FROM THE FOLLOWING:  (A) ASSERTING ANY CLAIM AGAINST THE CITY OR PROPERTY OF THE CITY THAT (I) IS IN AN AMOUNT THAT EXCEEDS THE AMOUNT, IF ANY, THAT IS IDENTIFIED IN THE LIST OF CLAIMS ON BEHALF OF SUCH ENTITY AS UNDISPUTED, NONCONTINGENT AND

LIQUIDATED OR (II) IS OF A DIFFERENT NATURE OR A DIFFERENT CLASSIFICATION OR PRIORITY THAN ANY CLAIM IDENTIFIED IN THE LIST OF CLAIMS ON BEHALF OF SUCH ENTITY (ANY SUCH CLAIM BEING REFERRED TO IN THIS NOTICE AS AN "UNSCHEDULED CLAIM"); (B) VOTING UPON, OR RECEIVING DISTRIBUTIONS UNDER, ANY PLAN IN THIS CHAPTER 9 CASE IN RESPECT OF AN UNSCHEDULED CLAIM; OR (C) WITH RESPECT TO ANY 503(B)(9) CLAIM OR ADMINISTRATIVE PRIORITY CLAIM COMPONENT OF ANY REJECTION DAMAGES CLAIM, ASSERTING ANY SUCH PRIORITY CLAIM AGAINST THE CITY OR PROPERTY OF THE CITY.

### SECTION 8 — THE CITY'S LIST OF CLAIMS

<div style="border:1px solid">

**SUMMARY**

- Section 8 explains that the City filed a list of the claims that it believes it owes.

- The enclosed claim form will show how the City listed your claim. A copy of the claim list also is available on the internet at www.kccllc.net/detroit.

- Note that the City's bond debt was listed by bond series. Individual bondholders were not listed. The claim form sent to holders of general obligation bonds will include a list of all series of general obligation bonds, showing the City's calculation of the total principal and interest as of the date the bankruptcy was filed.

- If your claim is on the claim list, that means the City may have filed a claim for you. Please review the information carefully. If the City listed your claim with any of these labels, you cannot rely on the City's claim: "contingent" or "unliquidated" or "disputed." If you see any of these words next to your claim, you must file the claim form by the deadline if the claim deadline applies to you. *The parties listed in Section 1 do __not__ have to file a claim form by the deadline.*

</div>

You may be listed as the holder of a claim against the City in the City's List of Claims. To determine if and how you are listed on the List of Claims, please refer to the descriptions set forth on the enclosed proof of claim form(s) regarding the nature, amount and status of your claim(s). See Section 10 below for instructions regarding how to access the List of Claims. If you received postpetition payments from the City on account of your claim, the information on the enclosed proof of claim form may reflect the net remaining amount of your claims.

If you rely on the City's List of Claims, it is your responsibility to determine that the claim is accurately listed in the List of Claims. However, you may rely on the enclosed form, which sets forth (a) the amount of your claim (if any) as listed; (b) specifies whether your claim is listed in the List of Claims as disputed, contingent or unliquidated; and (c) identifies whether your claim is listed as a secured, unsecured priority or unsecured nonpriority claim. *If you are the holder of a GO Bond, please note that the List of Claims identifies the City's calculation of the total bond debt by series as of the Filing Date, and the List of Claims does not identify the amount owed to any particular bondholder. If you are a holder of a GO Bond, the amount listed by the City in the List of Claims for each series of GO Bonds is provided with your Claim Form.*

As described above, if you agree with the nature, amount and priority of your claim as listed in the City's List of Claims, and if your claim is not described in the Schedules as "disputed," "contingent" or "unliquidated," you do not need to file a proof of claim. Otherwise, or if you decide to file a proof of claim, you must do so before the applicable Bar Date in accordance with the procedures set forth in this Notice. **[Note: This Section 8 is for the service version, not the publication version, of this Notice.]**

## SECTION 9 — RESERVATION OF RIGHTS

---

**SUMMARY**

- Section 9 explains that the City has the right to "object" to any claim you may file.

- This means that the City can challenge your claim in Court. If the City challenges your claim, you will be notified.

---

The City reserves the right to (a) dispute, or to assert offsets or defenses against, any filed claim or any claim listed or reflected in the List of Claims as to nature, amount, liability, priority, classification or otherwise; (b) subsequently designate any listed claim as disputed, contingent or unliquidated; and (c) otherwise amend or supplement the List of Claims. Nothing contained in this Notice shall preclude the City from objecting to any claim, whether listed or filed, on any grounds. Nothing herein or in the Bar Date Order limits, or is intended to limit, any claimant's rights to defend against any objection.


## SECTION 10 — ADDITIONAL INFORMATION

---

**SUMMARY**

- Section 10 explains how you can get more information.

- If you have questions, you can call the **City of Detroit Claims Hotline toll-free at (877) 298-6236** between 9:00 a.m. and 5:00 p.m., Eastern Time, Monday through Friday. Or you can write to the address below.

- Information also will be available on the internet at www.kccllc.net/detroit.

- The people at the hotline cannot give you legal advice. Legal advice cannot be provided through the mailing address below or the City's website. If you want legal advice, you must contact a lawyer.

---

Copies of the City's List of Claims, the Bar Date Order and other information and documents regarding the City's chapter 9 case are available free of charge on KCC's website at www.kccllc.net/detroit or for a fee at the Court's website at https://ecf.mieb.uscourts.gov. A login identification and password to the Court's Public Access to Court Electronic Records ("PACER") are required to access this information through the Court's website and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov. The List of Claims and other documents filed in this case may be accessed electronically, between the hours of 8:30 a.m. and 4:00 p.m., Eastern Time, Monday through Friday, at the public access terminals located in the Clerk's Office on the 17th Floor of the courthouse at 211 West Fort Street, Detroit, Michigan 48226. Copies of documents may be printed at the Clerk's Office for a charge.

If you require additional information regarding the filing of a proof of claim, you may contact the City of Detroit Claims Hotline toll-free at **(877) 298-6236** between 9:00 a.m. and 5:00 p.m., Eastern Time, Monday through Friday. You also may contact the City's claims agent, KCC, directly by writing to:

<div align="center">

City of Detroit Claims Processing Center
c/o Kurtzman Carson Consultants, LLC
2335 Alaska Avenue
El Segundo, CA 90245

</div>

**PLEASE NOTE THAT KCC IS NOT PERMITTED TO PROVIDE LEGAL ADVICE. YOU CANNOT GET LEGAL ADVICE BY CALLING THE CITY OF DETROIT CLAIM HOTLINE OR BY WRITING TO THE CITY OF DETROIT CLAIMS PROCESSING CENTER. YOU SHOULD CONSULT AN ATTORNEY REGARDING ANY MATTERS NOT COVERED BY THIS NOTICE OR FOR ANY LEGAL ADVICE, SUCH AS WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

Dated: [_____], 2013        BY ORDER OF THE COURT

-11-

13-53846-tjt   Doc 12873-1   Filed 08/20/18   Entered 08/20/18 14:21:38   Page 128 of 189
13-53846-tjt   Doc 17832-1   Filed 11/21/18   Entered 11/21/18 09:24:03   Page 90 of 89
219        128

## SCHEDULE OF SECURED BONDS

The applicable trustee or similar entity with respect to the following series of bonds has informed the City that it intends to: (a) file any proofs of claim against the City on behalf of the holders of these bonds; and (b) provide notice to the holders of the bonds.

| Secured Bond | Trustee or Similar Entity | Secured Bond | Trustee or Similar Entity |
|---|---|---|---|
| Sewage Disposal System Revenue Bond Series 1998-A | U.S. Bank National Association ("U.S. Bank") | Sewage Disposal System State Revolving Fund Revenue Bonds Series 2004-SRF2 | U.S. Bank |
| Sewage Disposal System Revenue Bond Series 1998-B | U.S. Bank | Sewage Disposal System State Revolving Fund Revenue Bonds Series 2004-SRF3 | U.S. Bank |
| Sewage Disposal System Revenue Bond Series 1999-A | U.S. Bank | Sewage Disposal System State Revolving Fund Revenue Bonds Series 2007-SRF1 | U.S. Bank |
| Sewage Disposal System Revenue Bond Series 2001-B | U.S. Bank | Sewage Disposal System State Revolving Fund Revenue Bonds Series 2009-SRF1 | U.S. Bank |
| Sewage Disposal System Revenue Bond Series 2001(C)(1) | U.S. Bank | Sewage Disposal System State Revolving Fund Revenue Bonds Series 2010-SRF1 | U.S. Bank |
| Sewage Disposal System Revenue Bond Series 2001(C)(2) | U.S. Bank | Sewage Disposal System State Revolving Fund Revenue Bonds Series 2012-SRF1 | U.S. Bank |
| Sewage Disposal System Revenue Bond Series 2001-D | U.S. Bank | | |
| Sewage Disposal System Revenue Bond Series 2001-E | U.S. Bank | Water Supply System Revenue Bond Series 1993 | U.S. Bank |
| Sewage Disposal System Revenue Bond Series 2003-A | U.S. Bank | Water Supply System Revenue Bond Series 1997-A | U.S. Bank |
| Sewage Disposal System Revenue Bond Series 2003-B | U.S. Bank | Water Supply System Revenue Bond Series 2001-A | U.S. Bank |
| Sewage Disposal System Revenue Bond Series 2004-A | U.S. Bank | Water Supply System Revenue Bond Series 2001-C | U.S. Bank |
| Sewage Disposal System Revenue Bond Series 2005-A | U.S. Bank | Water Supply System Revenue Bond Series 2003-A | U.S. Bank |
| Sewage Disposal System Revenue Bond Series 2005-B | U.S. Bank | Water Supply System Revenue Bond Series 2003-B | U.S. Bank |
| Sewage Disposal System Revenue Bond Series 2005-C | U.S. Bank | Water Supply System Revenue Bond Series 2003-C | U.S. Bank |
| Sewage Disposal System Revenue Bond Series 2006-A | U.S. Bank | Water Supply System Revenue Bond Series 2003-D | U.S. Bank |
| Sewage Disposal System Revenue Bond Series 2006-B | U.S. Bank | Water Supply System Revenue Bond Series 2004-A | U.S. Bank |
| Sewage Disposal System Revenue Bond Series 2006-C | U.S. Bank | Water Supply System Revenue Bond Series 2004-B | U.S. Bank |
| Sewage Disposal System Revenue Bond Series 2006-D | U.S. Bank | Water Supply System Revenue Bond Series 2005-A | U.S. Bank |
| Sewage Disposal System Revenue Bond Series 2012-A | U.S. Bank | Water Supply System Revenue Bond Series 2005-B | U.S. Bank |
| Sewage Disposal System State Revolving Fund Revenue Bonds Series 1992-B SRF | U.S. Bank | Water Supply System Revenue Bond Series 2005-C | U.S. Bank |
| Sewage Disposal System State Revolving Fund Revenue Bonds Series 1993-B SRF | U.S. Bank | Water Supply System Revenue Bond Series 2006-A | U.S. Bank |

13-53846-tjt Doc 12872-1 Filed 08/20/18 Entered 08/20/18 14:21:38 Page 129 of 89
13-53846-tjt Doc 12872-1 Filed 11/21/18 Entered 11/21/18 09:24:03 Page 91 of 89
219
129

| Secured Bond | Trustee or Similar Entity | Secured Bond | Trustee or Similar Entity |
|---|---|---|---|
| Sewage Disposal System State Revolving Fund Revenue Bonds Series 1997-B SRF | U.S. Bank | Water Supply System Revenue Bond Series 2006-B | U.S. Bank |
| Sewage Disposal System State Revolving Fund Revenue Bonds Series 1999-SRF1 | U.S. Bank | Water Supply System Revenue Bond Series 2006-C | U.S. Bank |
| Sewage Disposal System State Revolving Fund Revenue Bonds Series 1999-SRF2 | U.S. Bank | Water Supply System Revenue Bond Series 2006-D | U.S. Bank |
| Sewage Disposal System State Revolving Fund Revenue Bonds Series 1999-SRF3 | U.S. Bank | Water Supply System Revenue Bond Series 2011-A | U.S. Bank |
| Sewage Disposal System State Revolving Fund Revenue Bonds Series 1999-SRF4 | U.S. Bank | Water Supply System Revenue Bond Series 2011-B | U.S. Bank |
| Sewage Disposal System State Revolving Fund Revenue Bonds Series 2000-SRF1 | U.S. Bank | Water Supply System Revenue Bond Series 2011-C | U.S. Bank |
| Sewage Disposal System State Revolving Fund Revenue Bonds Series 2000-SRF2 | U.S. Bank | Water Supply System State Revolving Fund Revenue Bonds Series 2005-SRF1 | U.S. Bank |
| Sewage Disposal System State Revolving Fund Revenue Bonds Series 2001-SRF1 | U.S. Bank | Water Supply System State Revolving Fund Revenue Bonds Series 2005-SRF2 | U.S. Bank |
| Sewage Disposal System State Revolving Fund Revenue Bonds Series 2001-SRF2 | U.S. Bank | Water Supply System State Revolving Fund Revenue Bonds Series 2006-SRF1 | U.S. Bank |
| Sewage Disposal System State Revolving Fund Revenue Bonds Series 2002-SRF1 | U.S. Bank | Water Supply System State Revolving Fund Revenue Bonds Series 2008-SRF1 | U.S. Bank |
| Sewage Disposal System State Revolving Fund Revenue Bonds Series 2002-SRF2 | U.S. Bank | | |
| Sewage Disposal System State Revolving Fund Revenue Bonds Series 2002-SRF3 | U.S. Bank | Distributable State Aid Second Lien Bonds (Unlimited Tax General Obligation) Series 2010-A | U.S. Bank |
| Sewage Disposal System State Revolving Fund Revenue Bonds Series 2003-SRF1 | U.S. Bank | Distributable State Aid General Obligation Limited Tax Bonds Series 2010 | U.S. Bank |
| Sewage Disposal System State Revolving Fund Revenue Bonds Series 2003-SRF2 | U.S. Bank | Distributable State Aid Third Lien Bonds (Limited Tax General Obligation) Series 2012-A(2), (A2-B), (B) & (B)(2) | U.S. Bank |
| Sewage Disposal System State Revolving Fund Revenue Bonds Series 2004-SRF1 | U.S. Bank | | |
| | | Detroit Building Authority Bonds: Revenue Refunding Bonds Parking System- Series 1998-A | The Bank of New York Mellon Trust Company, National Association |

13-53846-tjt Doc 12873-1 Filed 08/20/18 Entered 08/20/18 14:21:38 Page 130 of
13-53846-tjt Doc 12873-1 Filed 11/21/13 Entered 11/21/13 09:24:03 Page 92 of 89
219
130

# **ANNEX II**

B10 (Official Form 10) (04/13) (Modified)

| UNITED STATES BANKRUPTCY COURT | EASTERN DISTRICT of MICHIGAN | CHAPTER 9<br>PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: City of Detroit, Michigan | Case Number: 13-53846 | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Name and address where notices should be sent:

**COURT USE ONLY**

❏ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
(*If known*)

Filed on:_____

Telephone number:                 email:

Name and address where payment should be sent (if different from above):

❏ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number:                 email:

**1. Amount of Claim as of Date Case Filed:**          $_____

If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.
❏ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** _____
   (See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** _____   **3a. Debtor may have scheduled account as:**_____
   (See instruction #3a)

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
   $_____

**Nature of property or right of setoff:** ❏ Real Estate  ❏ Motor Vehicle  ❏ Other
**Describe:**

**Basis for perfection:** _____

**Value of Property:** $_____

**Amount of Secured Claim:**   $_____

**Annual Interest Rate (when case was filed)_____% ❏ Fixed  or  ❏ Variable**

**Amount Unsecured:**   $_____

**5. Amount of Claim Entitled to Priority as an Administrative Expense under 11 U.S.C. §§ 503(b)(9) and 507(a)(2).**   $_____

**5b. Amount of Claim Otherwise Entitled to Priority. Specify Applicable Section of 11 U.S.C. § _____.**   $_____

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)* DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction # 8)
 Check the appropriate box.

❏ I am the creditor.   ❏ I am the creditor's authorized agent.   ❏ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ❏ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: _____
Title:
Company:
Address and telephone number (if different from notice address above):
_____        _____
                              (Signature)                         (Date)

Telephone number:                email:

                              219

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
For the convenience of creditors, the Court, Name of Debtor and Case Number already have been completed on this modified proof of claim form.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:** State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as listed by the debtor on the Second Amended List of Creditors and Claims, Pursuant to Sections 924 and 925 of the Bankruptcy Code (Docket No. 1059), as it may be amended or supplemented from time to time.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority as a Administrative Expense Under 11 U.S.C. §§ 503(b)(9) and 507(a)(2).**
If any portion of the claim is entitled to priority under U.S.C. §§ 503(b)(9) and 507(a)(2), state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011.
If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## _____ DEFINITIONS _____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form by sending or delivering the form to one of the addresses provided below.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.
A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority as an Administrative Expense Under 11 U.S.C. §§ 503(b)(9) and 507(a)(2)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims. In a chapter 9 case, 11 U.S.C. § 503(b)(9) may provide priority status to claims for "the value of goods received by the debtor within 20 days before the date of commencement of a case … in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9).

Pursuant to 11 U.S.C. § 901(a), the priorities accorded certain claims under 11 U.S.C. § 507(a)(1) and (a)(3-10) are inapplicable in a chapter 9 case.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax identification, or financial-account number, only the initials of a minor's name, and only the year of a person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## _____ INFORMATION _____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at http://www.kccllc.net/Detroit

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

PLEASE SEND OR DELIVER COMPLETED PROOFS OF CLAIM TO:
City of Detroit Claims Processing Center
c/o KCC
2335 Alaska Avenue
El Segundo, CA 90245
-or-
Office of the Clerk of Court
United States Bankruptcy Court
for the Eastern District of Michigan
211 West Fort Street, Suite 1700
Detroit, MI 48226

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-----------------------------------------------------x
                                                      :
In re                                                 : Chapter 9
                                                      :
CITY OF DETROIT, MICHIGAN,                            : Case No. 13-53846
                                                      :
                              Debtor.                 : Hon. Steven W. Rhodes
                                                      :
                                                      :
-----------------------------------------------------x

<div style="border:1px solid black;">

## NOTICE

This order is the proposed order that the parties submitted for entry, except that the Court has added paragraph 20 addressing claims under 42 U.S.C. § 1983 pending in the district court.

</div>

## ORDER, PURSUANT TO SECTIONS 105 AND 502 OF THE BANKRUPTCY CODE, APPROVING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES TO PROMOTE THE LIQUIDATION OF CERTAIN PREPETITION CLAIMS

This matter coming before the Court on the Motion of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims (Docket No. 1665) (the "ADR Procedures Motion"), filed by the City of Detroit (the "City"); the following responses to the ADR Procedures Motion having been filed (collectively, the "Filed Responses"):

    (a)    the response (Docket Nos. 1763 and 1765) of Jeffrey Sanders;

    (b)    the objection (Docket No. 1828) (the "Cooperatives Response") of

13-53846-tjt    Doc 2879-1    Filed 09/20/18    Entered 09/20/18 14:20:38    Page 181 of
13-53846-tjt    Doc 2802    Filed 12/24/13    Entered 12/24/13 20:47:00    Page 1 of 61
219
134

LaSalle Town Houses Cooperative Association, Nicolet Town Houses Cooperative Association and St. James Cooperative;

(c)    the limited objection (Docket No. 1834) of the Police and Fire Retirement System of the City of Detroit and the General Retirement System (together, the "<u>Retirement Systems</u>");

(d)    the objection (Docket No. 1866) (the "<u>Ryan Response</u>") of Deborah Ryan;

(e)    the limited objection (Docket No. 1902) of the Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit Police Lieutenants & Sergeants Association and the Detroit Police Command Officers Association (collectively, the "<u>Public Safety Unions</u>");

(f)    the objection (Docket No. 1915) of the Michigan Council 25 the American Federation of State, County and Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees ("<u>AFSCME</u>"); and

(g)    the objection (Docket No. 2211) of certain alleged prepetition claimants.

The City also having received informal responses (collectively, the "<u>Informal Responses</u>" and, together with the Filed Responses, the "<u>Responses</u>") from the following parties:

(a)    the United States Department of Justice (the "<u>DOJ</u>");

(b)    Financial Guaranty Insurance Company ("<u>FGIC</u>");

(c)    Ambac Assurance Corporation ("<u>Ambac</u>"); and

(d)    Amalgamated Transit Union Local 26 ("<u>ATU</u>").

The City having filed the Reply in Support of Motion of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving

Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims (the "Reply"); Walter Swift and Deborah Ryan jointly having filed the Motion to Substitute Petitioner Swift to Replace Petitioner Ryan Regarding Her Objections to Motion of Debtor for an Order Approving ADR Proceedings (Docket No. 2140) (the "Substitution Motion"); the Court having reviewed the ADR Procedures Motion, the Filed Responses, the Reply and the Substitution Motion and having considered the statements of counsel and the evidence adduced with respect to the ADR Procedures Motion and the Substitution Motion at a hearing before the Court (the "Hearing"); the Court being advised that the Alternative Dispute Resolution Procedures attached hereto as Annex I (the "ADR Procedures")[1] and the terms of this Order resolve the Responses of (a) the Retirement Systems, (b) the Public Safety Unions, (c) AFSCME, (d) the DOJ, (e) FGIC, (f) Ambac and (g) ATU; the Court further being advised that the Ryan Response is resolved, subject to the City's and the Public Safety Unions' agreement that, by separate order of the Court, the Stay will be lifted solely to the extent necessary to allow the lawsuit captioned Ryan v. City of Detroit, et al., Case No. 11-cv-10900 (E.D. Mich.) (the "Ryan Lawsuit"), to proceed to judgment, thereby liquidating the claims of Deborah Ryan against the City and the current or former Public Safety Union member defendants in the Ryan Lawsuit; the Court

---

[1] Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the ADR Procedures.

13-53846-tjt   Doc 2902-1   Filed 12/24/13   Entered 12/24/13 10:17:00   Page 136 of 219

13-53846-swr   Doc 2879-1   Filed 08/20/18   Entered 08/20/18 14:20:38   Page 136 of 136

having entered the Order for Relief from the Automatic Stay to Allow Class Action to Proceed (Docket No. 2223) (the "Cooperatives Order"); the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b) and (c) notice of the ADR Procedures Motion and the Hearing was sufficient under the circumstances; and the Court having determined that the legal and factual bases set forth in the ADR Procedures Motion, the Reply and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The ADR Procedures Motion is GRANTED, as set forth herein, and the Substitution Motion is DENIED.  The Informal Responses are resolved by the terms of this Order, the Cooperatives Response is mooted by the Cooperatives Order, and the remaining Filed Responses are overruled to the extent not resolved or addressed by the ADR Procedures and the terms of this Order.

2.      The ADR Procedures are approved in all respects, pursuant to sections 105 and 502 of the Bankruptcy Code.  For the avoidance of doubt, all of the terms and provisions of the ADR Procedures are approved, whether or not such terms and provisions are restated below.

3.      The City is authorized to take any and all actions that are necessary or appropriate to implement the ADR Procedures.  Nothing in this Order

13-53846-tjt   Doc 2970-1   Filed 08/20/18   Entered 08/20/18 14:20:38   Page 187 of
219
13-53846-tjt   Doc 2902   Filed 12/24/13   Entered 12/24/13 20:47:00   Page 4 of 61      137

or the ADR Procedures, however, shall obligate the City to settle or pursue settlement of any particular Designated Claim.  Any such settlements may be pursued and agreed upon as the City believes are reasonable and appropriate in its sole discretion, subject to the terms and conditions set forth in the ADR Procedures.

4.      Notwithstanding any other provision of this Order to the contrary, the following claims (collectively, the "Excluded Claims") shall not be Initial Designated Claims or Designated Claims and shall not otherwise be subject to the ADR Procedures, provided, however, that nothing herein shall preclude (a) the City and the applicable claimant from agreeing to submit any Excluded Claim to the ADR Procedures or (b) the City from seeking to establish in the future, by separate motion, alternative dispute resolution procedures in connection with any Excluded Claim(s) (or the holder of an Excluded Claim from opposing such requested relief):

(a)      claims solely for unpaid pension contributions, unfunded actuarially accrued pension liabilities and/or unpaid pension benefits (whether asserted by the Retirement Systems or directly or derivatively by or on behalf of retirees or active employees, and whether filed by the applicable claimant or scheduled by the City);

(b)      claims for liabilities associated with post-employment benefits under the City's Health and Life Insurance Benefit Plan, the Supplemental Death Benefit Plan or other non-pension post-employment welfare benefits, including unfunded actuarially accrued liabilities;

(c)      claims arising from labor-related grievances;

(d)    claims solely asserting workers' compensation liabilities against the City;

(e)    claims, if any, arising from or related to (i) that certain GRS Service Contract 2005 between the Detroit General Retirement System Service Corporation and the City of Detroit, dated May 25, 2005, (ii) that certain PFRS Service Contract 2005 between the Detroit Police and Fire Retirement System Service Corporation and the City of Detroit, dated May 25, 2005, (iii) that certain GRS Service Contract 2006 between the Detroit General Retirement System Service Corporation and the City of Detroit, dated June 7, 2006 and (iv) that certain PFRS Service Contract 2006 between the Detroit Police and Fire Retirement System Service Corporation and the City of Detroit, dated June 7, 2006;

(f)    claims by holders for amounts owed under the City's unlimited tax general obligation bonds, limited tax general obligation bonds and general fund bonds (collectively, the "<u>GO Bonds</u>") and claims by bond insurers related to the GO Bonds; and

(g)    claims filed by the United States government.

5.    From the date of this Order until the date that is 119 days after the General Bar Date, the holders of the Initial Designated Claims (and any other person or entity asserting an interest in such claim) shall be enjoined (the "<u>Initial Injunction</u>") from filing or prosecuting Stay Motions with respect to such Initial Designated Claims.  The Initial Injunction is separate and distinct from the ADR Injunction as defined and described below.

6.    Upon the service of an ADR Notice on any Designated Claimant, such Designated Claimant (and any other person or entity asserting an interest in the relevant Designated Claim) shall be enjoined (the "<u>ADR Injunction</u>")

13-53846-tjt   Doc 2872-1   Filed 03/04/2016   Entered 03/04/2016 14:20:08   Page 180 of 219
13-53846-tjt   Doc 2902   Filed 12/24/13   Entered 12/24/13 10:47:00   Page 96 of 101
139

from filing or prosecuting any Stay Motion or otherwise seeking to establish, liquidate, collect on or enforce the Designated Claim(s) identified in the ADR Notice, other than by liquidating the claim through the ADR Procedures. The ADR Injunction shall expire with respect to a Designated Claim only when the ADR Procedures have been completed as to that claim. For the avoidance of doubt, the City may serve an ADR Notice on any Designated Claimant at any time, and the ADR Injunction shall become effective at the time of service without any further action by the Court.

7.     Certain Designated Claims (each, a "Multi-Party Tort Claim") arise out of personal injury actions: (a) asserted concurrently against the City and one or more current or former Public Safety Union members (each, a "Public Safety Union Member"); and (b) with respect to which, the applicable Public Safety Union Member seeks related defense costs and/or an indemnification claim from the City (any such Public Safety Union Member, an "Indemnification Claimant," and any such claim, an "Indemnification Claim"). When a Multi-Party Tort Claim is designated as a Designated Claim to proceed to the ADR Procedures, any related Indemnification Claim also shall be designated by the City as a Designated Claim to proceed through the ADR Procedures along with the Multi-Party Tort Claim. Concurrently with the service of an ADR Notice on any Designated Claimant for a Multi-Party Tort Claim, the City shall serve a copy of

13-53846-tjt   Doc 2972-1   Filed 08/09/2018   Entered 08/09/2018 14:20:38   Page 140 of
13-53846-tjt   Doc 2302   Filed 12/24/2013   Entered 12/24/2013 20:17:00   Page 7 of 81
7
219
140

the ADR Notice on the Public Safety Unions and on any related Indemnification Claimant known to the City. Thereafter, the Indemnification Claimant shall participate in the attempted resolution of the Multi-Party Tort Claim and the related Indemnification Claim pursuant to the ADR Procedures, with the goal of resolving all related claims in a single settlement. Any dispute regarding whether the City is required to pay the defense costs of, or indemnify, any Indemnification Claimant shall be resolved pursuant to the City's and the Public Safety Unions' ordinary course nonbankruptcy procedures, and not by this Court or through the ADR Procedures, and, notwithstanding the Initial Injunction and the ADR Injunction, the Public Safety Unions may seek relief from the Stay/Injunction for this purpose.

8.       Except as expressly set forth in the ADR Procedures, the expiration of the Initial Injunction and/or the ADR Injunction shall not extinguish, limit or modify the Stay or any Plan Injunction (the "Stay/Injunction"), which shall remain in place to the extent then in effect, except as otherwise provided in the ADR Procedures. The Initial Injunction and the ADR Injunction shall be in addition to the Stay/Injunction.

9.       The City in its sole discretion (a) may elect not to send an ADR Notice to the holder of an Initial Designated Claim and (b) instead file and serve on the applicable Designated Claimant a notice (a "Stay Modification Notice") that

the Stay/Injunction is lifted to permit the underlying claim to be liquidated in an appropriate non-bankruptcy forum.  In that event, immediately upon the filing of the Stay Modification Notice, the Stay/Injunction shall be deemed modified with respect to the applicable Initial Designated Claim solely to permit the liquidation of the claim in a non-bankruptcy forum; provided, however, that, solely in the case of a Multi-Party Tort Claim, the Stay/Injunction will be deemed modified with respect to the Multi-Party Tort Claim and any related Indemnification Claims 35 days after the filing of the Stay Modification Notice unless the Public Safety Unions or the applicable Indemnification Claimant(s) file a motion requesting that the Stay/Injunction remain in place (any such motion, a "Stay Preservation Motion").  If a Stay Preservation Motion is filed, then the Court will determine whether relief from the Stay/Injunction is appropriate with respect to the Multi-Party Tort Claim pursuant to the standards set forth in section 362(d) of the Bankruptcy Code.

      10.    If the Stay/Injunction is modified as a result of a Stay Modification Notice, the liquidation of each applicable Initial Designated Claim shall proceed in either:  (a) the non-bankruptcy forum in which the Initial Designated Claim was pending on the Petition Date, if any, subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Initial Designated Claim was not pending in any forum on the Petition Date, then

13-53846-tjt   Doc 2972-1   Filed 08/20/18   Entered 08/20/18 14:20:38   Page 142 of
142

9

219

in the United States District Court for the Eastern District of Michigan

(the "District Court") or such other non-bankruptcy forum selected by the

Designated Claimant that (i) has personal jurisdiction over the parties, (ii) has

subject matter jurisdiction over the claim, (iii) has in rem jurisdiction over the

property involved in the Initial Designated Claim (if applicable) and (iv) is a

proper venue.  For the avoidance of doubt, all proceedings against the City or any

Indemnification Claimant relating to an Initial Designated Claim following the

liquidation of the Initial Designated Claim shall remain subject to the

Stay/Injunction, absent further order of the Court.  If necessary, any disputes

regarding the application of the foregoing terms, conditions and limitations shall be

determined by this Court; provided that disputes about the jurisdiction of a matter

presented to a non-bankruptcy court may be determined by such court.

      11.    The resolution of a Designated Claim pursuant to the ADR

Procedures or the entry of an Arbitration Award pursuant to the ADR Procedures[2]

shall not grant the Designated Claimant any enforcement rights except as permitted

under a Chapter 9 Plan, and the Stay/Injunction shall apply to any such resolved

Designated Claim or Arbitration Award.  For the avoidance of doubt, all

proceedings against the City or any Indemnification Claimant relating to a

---

[2]     For the avoidance of doubt, "Arbitration Award" refers to an arbitration
award as defined by the ADR Procedures Motion and the ADR Procedures
and not to any award issued pursuant to the City and the Public Safety
Unions' labor arbitration procedures.

Designated Claim following the resolution of the Designated Claim or the entry of an Arbitration Award shall remain subject to the Stay/Injunction, absent further order of the Court. Any aspect of an Arbitration Award that violates the foregoing rules and limitations shall be void without further action of any court.

12. Designated Claims not resolved through the ADR Procedures ("Unresolved Designated Claims") shall proceed to litigation to be liquidated. Unless the City agrees otherwise, liquidation of any Unresolved Designated Claim shall proceed in this Court (to the extent that this Court has subject matter jurisdiction over the Unresolved Designated Claim) as soon as practicable following the date that the ADR Procedures are concluded for an Unresolved Designated Claim (the "ADR Completion Date"). Such litigation will be initiated by the filing of a claim objection by the City (a "Claim Objection") within 35 days after the ADR Completion Date (the "Claim Objection Deadline"). Disputes over the subject matter jurisdiction of this Court shall be determined by this Court, and the Designated Claimants shall retain whatever rights they have to seek withdrawal of the reference, abstention or other procedural relief in connection with a Claim Objection.

13. If an Unresolved Designated Claim cannot be adjudicated in this Court because of lack of, or limitations upon, subject matter jurisdiction, or if the City does not file a Claim Objection by the Claim Objection Deadline (any

such claim, a "Non-Bankruptcy Claim"), then liquidation of any such Non-Bankruptcy Claim shall proceed in either: (a) the non-bankruptcy forum in which the Non-Bankruptcy Claim was pending on the Petition Date, if any, subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Non-Bankruptcy Claim was not pending in any forum on the Petition Date, then in the District Court or such other nonbankruptcy forum selected by the Designated Claimant that (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the Non-Bankruptcy Claim, (iii) has in rem jurisdiction over the property involved in the Non-Bankruptcy Claim (if applicable) and (iv) is a proper venue. If necessary, any disputes regarding the application of the foregoing terms, conditions and limitations shall be determined by this Court; provided that disputes about the jurisdiction of a matter presented to a non-bankruptcy court may be determined by such court.

14. The Stay/Injunction shall be deemed modified with respect to any Non-Bankruptcy Claim unless, within 35 days of the ADR Completion Date, the City files a notice (a "Stay Notice") that it intends for the Stay/Injunction to remain in effect with respect to a Non-Bankruptcy Claim. If the City files a Stay Notice, the Stay/Injunction shall remain in place, and the applicable Designated Claimant may seek relief from the Stay/Injunction under the standards set forth in section 362(d) of the Bankruptcy Code. In addition, with respect to any Non-

13-53846-tjt    Doc 12872-1    Filed 08/20/18    Entered 08/20/18 14:20:38    Page 145 of
13-53846-tjt    Doc 13078    Filed 12/24/18    Entered 12/24/18 16:17:00    Page 145 of
219

12                                                                                          145

Bankruptcy Claims that are Multi-Party Tort Claims, an Indemnification Claimant may file a motion within 35 days of the ADR Completion Date seeking to maintain the Stay/Injunction as to the Indemnification Claimant for good cause shown.

15.     If the City does not file a Stay Notice (or, in the case of Multi-Party Tort Claims, no Indemnification Claimant asserts and establishes cause to maintain the Stay/Injunction) with respect to a Non-Bankruptcy Claim, then the Stay/Injunction shall be deemed modified solely for the purpose of, and to the extent necessary for, liquidating such Non-Bankruptcy Claim in an appropriate non-bankruptcy forum (as applicable under the ADR Procedures).  For the avoidance of doubt, following the liquidation of a Non-Bankruptcy Claim, all proceedings against the City or any Indemnification Claimant relating to the Non-Bankruptcy Claim shall remain subject to the Stay/Injunction, absent further order of the Court.

16.     Nothing contained in this Order or the ADR Procedures shall (a) prevent the City and any Designated Claimant (including any Indemnification Claimant) from settling any Designated Claim at any time or (b) limit, expand or otherwise modify the City's authority to settle or pay claims or the City's authority over its property and revenues under section 904 of the Bankruptcy Code.  The

authority to settle Designated Claims pursuant to the ADR Procedures will be in addition to, and cumulative with, any existing authority to resolve claims against the City.

17.     The terms of this Order shall not be deemed to preclude any party in interest from objecting to any Designated Claim to the extent such entity has standing to assert an objection in accordance with Bankruptcy Code and applicable law.

18.     Nothing herein shall be deemed to limit, expand or otherwise affect (a) any rights of the Public Safety Unions to obtain discovery from the City with respect to Multi-Party Tort Claims if the Stay/Injunction is modified, (b) any rights of the Public Safety Unions to obtain information from the City necessary to identify any potential Indemnification Claims prior to the Claims Bar Date or (c) any rights of the City to object to any such discovery requests, and all such rights are preserved.

19.     This Court shall retain jurisdiction for all purposes specified in the ADR Procedures and with respect to all disputes arising from or relating to the interpretation, implementation and/or enforcement of this Order and the ADR Procedures.

**20.     Notwithstanding anything in this Order, the "ADR Procedures" that this Order approves (Annex 1), or in the ADR Procedures**

13-53846-tjt   Doc 12873-1   Filed 02/20/18   Entered 02/20/18 14:20:38   Page 147 of
13-53846-tjt   Doc 2302   Filed 12/24/13   Entered 12/24/13 16:17:00   Page 14 of
219
14
147

**Motion, all lawsuits alleging claims against the City, its employees or both under 42 U.S.C. § 1983 that are pending in the United States District Court are referred to Chief United States District Judge Gerald Rosen for mediation under such procedures as he determines.**

Signed on December 24, 2013

<div align="right">

_____/s/ Steven Rhodes_____
Steven Rhodes
United States Bankruptcy Judge

</div>

# **ANNEX I**

ATI-2587951v7

13-53846-tjt Doc 12873-1 Filed 02/20/18 Entered 02/20/18 14:21:38 Page 149 of
219
13-53846-tjt Doc 2302-1 Filed 12/24/13 Entered 12/24/13 10:17:00 Page 96 of 61 149

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
-------------------------------------------------------x
                                    :
In re                               :         Chapter 9
                                    :
CITY OF DETROIT, MICHIGAN,          :         Case No. 13-53846
                                    :
                        Debtor.     :         Hon. Steven W. Rhodes
                                    :
                                    :
-------------------------------------------------------x
```

## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

On [_____], 2013, the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") entered an order (Docket No. __) (the "ADR Order") in the above-captioned case under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") approving and adopting the following alternative dispute resolution procedures (the "ADR Procedures") with respect to certain claims asserted against the City of Detroit (the "City"):

## I.   CLAIMS SUBJECT TO THE ADR PROCEDURES AND ADR INJUNCTION

### A.   Claims Subject to the ADR Procedures

The claims subject to the ADR Procedures consist of all claims designated by the City under the notice procedures set forth below (collectively, the "Designated Claims").  The City may designate for liquidation pursuant to the ADR Procedures any proof of claim, other than Excluded Claims (as defined below), timely asserted in these cases by serving a notice (the "ADR Notice") on the applicable claimant, if the City believes, in its sole discretion, that the ADR Procedures would promote the resolution of such claim and serve the intended objectives of the ADR Procedures.  Without limiting the foregoing, any and all timely filed prepetition claims, other than Excluded Claims, in the following categories shall be Designated Claims hereunder prior to the City serving an ADR Notice on the applicable claimant:  (1) personal injury tort or wrongful death claims, (2) property damage claims or (3) claims, to the extent not

satisfied in the ordinary course, relating to the operation of motor vehicles for which the City is self-insured pursuant to chapter 31 of Michigan's Insurance Code of 1956, M.C.L. §§ 500.3101, et seq. (collectively, the "Initial Designated Claims") The holders of the Designated Claims, including Initial Designated Claims, are referred to herein as the "Designated Claimants."

Notwithstanding any provision of the ADR Procedures or the ADR Order to the contrary, the following claims (collectively, the "Excluded Claims") shall not be Initial Designated Claims or Designated Claims and shall not otherwise be subject to these ADR Procedures, provided, however, that nothing herein shall preclude (a) the City and the applicable claimant from agreeing to submit any Excluded Claim to the ADR Procedures or (b) the City from seeking to establish in the future, by separate motion, alternative dispute resolution procedures in connection with any Excluded Claim(s):

1. claims solely for unpaid pension contributions, unfunded actuarially accrued pension liabilities and/or unpaid pension benefits (whether asserted by the Police and Fire Retirement System of the City of Detroit or the General Retirement System of the City of Detroit or directly or derivatively by or on behalf of retirees or active employees, and whether filed by the applicable claimant or scheduled by the City);

2. claims for liabilities associated with post-employment benefits under the City's Health and Life Insurance Benefit Plan, the Supplemental Death Benefit Plan or other non-pension post employment welfare benefits, including unfunded actuarially accrued liabilities;

3. claims arising from labor-related grievances;

4. claims solely asserting workers' compensation liabilities against the City;

5. claims, if any, arising from or related to (i) that certain GRS Service Contract 2005 between the Detroit General Retirement System Service Corporation and the City of Detroit, dated May 25, 2005, (ii) that certain PFRS Service Contract 2005 between the Detroit Police and Fire Retirement System Service Corporation and the City of Detroit, dated May 25, 2005, (iii) that certain GRS Service Contract 2006 between the

Detroit General Retirement System Service Corporation and the City of Detroit, dated June 7, 2006 and (iv) that certain PFRS Service Contract 2006 between the Detroit Police and Fire Retirement System Service Corporation and the City of Detroit, dated June 7, 2006;

6.      claims by holders for amounts owed under the City's unlimited tax general obligation bonds, limited tax general obligation bonds and general fund bonds (collectively, the "<u>GO Bonds</u>") and claims by bond insurers related to the GO Bonds; and

7.      claims filed by the United States government.

## B.     <u>Injunctions in Support of the ADR Procedures</u>

The Bankruptcy Court has established February 21, 2014, at 4:00 p.m., Eastern Time, as the general bar date for filing proofs of claim in the City's chapter 9 case (the "<u>General Bar Date</u>"). For the period commencing on the date of entry of the ADR Order until the date that is 119 days after the General Bar Date (the "<u>Initial Designation Period</u>"), any Designated Claimant holding an Initial Designated Claim (and any other person or entity asserting an interest in such claim) shall be enjoined (the "<u>Initial Injunction</u>") from filing or prosecuting, with respect to such Initial Designated Claim, any motion (a "<u>Stay Motion</u>") for relief from either (1) the automatic stay of sections 362 and 922 of the Bankruptcy Code, as modified and extended from time to time by orders of the Bankruptcy Court (the "<u>Stay</u>"), or (2) any similar injunction (together with the Stay, the "<u>Stay/Injunction</u>") that may be imposed upon the confirmation or effectiveness of a plan of adjustment of debts confirmed in the City's chapter 9 case (a "<u>Chapter 9 Plan</u>"). The Initial Injunction is separate and distinct from the ADR Injunction as defined and described below. Any Designated Claimant that is subject to the Initial Injunction with respect to an Initial Designated Claim shall instead become subject to the ADR Injunction upon the service of an ADR Notice with respect to the underlying Designated Claim, as described in the following paragraph, whether that occurs during or after the Initial Designation Period.

Upon service of an ADR Notice on any Designated Claimant under Section II.A.1 below, such Designated Claimant (and any other person or entity asserting an interest in the relevant Designated Claim) shall be enjoined (the "<u>ADR Injunction</u>") from filing or prosecuting any Stay Motion or otherwise seeking to establish, liquidate, collect on or enforce the Designated Claim(s) identified in the ADR Notice, other than by liquidating the claim through the ADR Procedures

ATI-2587951v7
13-53846-tjt   Doc 12873-1   Filed 02/20/18   Entered 02/20/18 14:20:38   Page 152 of
13-53846-tjt   Doc 12872   Filed 12/24/13   Entered 12/24/13 10:17:00   Page 15 of
219                                                                          152

described herein.  The ADR Injunction shall expire with respect to a Designated Claim only when the ADR Procedures have been completed as to that Designated Claim.[1]  For the avoidance of doubt, the City may serve an ADR Notice on any Designated Claimant at any time, and the ADR Injunction shall become effective at the time of service without any further action by the Bankruptcy Court.

Except as expressly set forth herein or in a separate order of the Bankruptcy Court, the expiration of the Initial Injunction or the ADR Injunction shall not extinguish, limit or modify the Stay/Injunction, and the Stay/Injunction shall remain in place to the extent then in effect, except as otherwise provided herein.  The Initial Injunction and the ADR Injunction shall be in addition to the Stay/Injunction.

The City in its sole discretion (1) may elect not to send an ADR Notice to the holder of an Initial Designated Claim (i.e., not send the claim to the ADR Procedures) and (2) instead may file and serve on the applicable Designated Claimant a notice that the Stay/Injunction is lifted to permit the underlying claim to be liquidated in a non-bankruptcy forum consistent with the terms, conditions and limitations of Section II.E.2 below (a "Stay Modification Notice").  In that event, immediately upon the filing of the Stay Modification Notice, the Stay/Injunction shall be deemed modified with respect to the applicable Initial Designated Claim solely to permit the liquidation of the claim in a non-bankruptcy forum; provided, however, that, solely in the case of a Multi-Party Tort Claim (as defined below), the Stay/Injunction will be deemed modified with respect to the Multi-Party Tort Claim and any related Indemnification Claim (as defined below) 35 days after the filing of the Stay Modification Notice unless the applicable Indemnification Claimant(s) or their union representatives file a motion requesting that the Stay/Injunction remain in place (any such motion, a "Stay Preservation Motion").  If a Stay Preservation Motion is filed, then the Bankruptcy Court will determine whether relief from the Stay/Injunction is appropriate with respect to the Multi-Party Tort Claim pursuant to the standards set forth in section 362(d) of the Bankruptcy Code.

---

[1]    The ADR Procedures expire upon any resolution of a Designated Claim through the ADR Procedures, upon the Case Evaluation Termination Date (as defined below) for Designated Claims not resolved though the ADR Procedures or at any other time that the ADR Procedures are terminated by agreement of the parties or the terms hereof.

### C. Multi-Party Tort Claims

Certain Designated Claims (each, a "Multi-Party Tort Claim") arise out of personal injury actions (a) asserted concurrently against the City and one or more current or former members of the Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit Police Lieutenants & Sergeants Association or the Detroit Police Command Officers Association (each such member, a "Public Safety Union Member") and (b) with respect to which, the applicable Public Safety Union Member seeks related defense costs and/or an indemnification claim from the City (any such Public Safety Union Member, an "Indemnification Claimant," and any such claim, an "Indemnification Claim"). When a Multi-Party Tort Claim is designated as a Designated Claim to proceed to the ADR Procedures, any related Indemnification Claim also shall be designated by the City as a Designated Claim to proceed through the ADR Procedures along with the Multi-Party Tort Claim. Concurrently with the service of an ADR Notice on any Designated Claimant for a Multi-Party Tort Claim, the City shall serve a copy of the ADR Notice on any related Indemnification Claimant known to the City. Thereafter, the Indemnification Claimant shall participate in the attempted resolution of the Multi-Party Tort Claim and the related Indemnification Claim pursuant to the ADR Procedures, with the goal of resolving all related claims in a single settlement. Any dispute regarding whether the City is required to pay the defense costs of, or indemnify, any Indemnification Claimant shall be resolved pursuant to the City's and the Public Safety Unions' ordinary course nonbankruptcy procedures, and not by the Bankruptcy Court or through the ADR Procedures, and, notwithstanding the Initial Injunction and the ADR Injunction, the Public Safety Unions may seek relief from the Stay/Injunction for this purpose.

## II. THE ADR PROCEDURES

### A. Offer Exchange Procedures

The first stage of the ADR Procedures will be the following offer exchange procedures that require the parties to exchange settlement offers and thereby provide an opportunity to resolve the underlying Designated Claim on a consensual basis without any further proceedings (the "Offer Exchange Procedures").

ATI-2587951v7
13-53846-tjt   Doc 12873-1   Filed 08/20/18   Entered 08/20/18 14:20:38   Page 154 of
219

1. *Service of the ADR Notice*
   *and Settlement Offer by the City*

(a)    At any time following the filing of a proof of claim by the applicable Designated Claimant, [2] the City may serve upon the Designated Claimant, at the address listed on the Designated Claimant's most recently filed proof of claim or amended proof of claim, as well as upon any counsel of record in these cases for the Designated Claimant, the following materials (collectively, the "ADR Materials"):  (i) an ADR Notice, [3] (ii) a copy of the ADR Order and (iii) a copy of these ADR Procedures.  For transferred claims, the City also shall serve a copy of the ADR Materials on the transferee identified in the notice of transfer of claim.  The ADR Notice shall serve as (i) notice that a claim has been designated by the City as a Designated Claim (if not already designated herein as an Initial Designated Claim) and (ii) notice that the Designated Claim has been submitted to the ADR Procedures.  Promptly following the service of the ADR Materials on any Designated Claimant, the City shall file a notice with the Court indicating that the Designated Claim has been submitted to the ADR Procedures.

(b)    In the ADR Notice, the City:  (i) may request that the Designated Claimant verify or, as needed, correct, clarify or supplement certain information regarding the Designated Claim; (ii) shall include an offer by the City to settle the Designated Claim (a "Settlement Offer"); and (iii) may state whether the City consents to the adjudication of the Designated Claim by binding arbitration, as set forth below, if the Designated Claim is not resolved pursuant to the Offer Exchange Procedures.  The ADR Notice shall require the Designated Claimant to sign and return the ADR Notice along with a Permitted Response (as defined below) to the City so that it is received by the City no later than 28 days [4] after the mailing of the ADR Notice (the "Settlement Response Deadline").

---

[2]    The ADR Procedures will not be initiated with respect to a claim unless and until a timely proof of claim is filed.

[3]    The form of the ADR Notice is attached hereto as Annex 1 and incorporated herein by reference.  Although the City anticipates that the ADR Notice will be substantially in the form of Annex 1, the City reserves the right to modify the ADR Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

[4]    Rule 9006(a) of the Federal Rules of Bankruptcy Procedure shall apply to all time periods calculated in the ADR Procedures.

(c)     *Failure to sign and return the ADR Notice or to include a Permitted Response with the returned ADR Notice by the Settlement Response Deadline shall be deemed to be a denial by the Designated Claimant of the Settlement Offer, and the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.*

## 2.     *The Permitted Responses*

The only permitted responses to a Settlement Offer (together, the "Permitted Responses") are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (as further defined below, a "Counteroffer").  *If the ADR Notice is returned without a response or with a response that is not a Permitted Response, the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.*

## 3.     *The Counteroffer*

The Counteroffer shall be signed by an authorized representative of the Designated Claimant and shall identify the proposed amount that the Designated Claimant will accept as a prepetition claim against the City in settlement of the Designated Claim.  The Counteroffer may not exceed the amount or improve the priority set forth in the Designated Claimant's most recent timely filed proof of claim or amended proof of claim (but may liquidate any unliquidated amounts expressly referenced in a proof of claim).[5]  *A Counteroffer may not be for an unknown, unliquidated or indefinite amount or priority, or the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.* All Counteroffers shall be for prepetition claims payable pursuant to the Chapter 9 Plan.  See Section II.D below.  With the agreement of the City, postpetition claims may be submitted to the ADR Procedures along with any related prepetition claims.

## 4.     *Consent to Subsequent Binding Arbitration*

As described in Sections II.B and II.C below, in the absence of a settlement at the conclusion of the Offer Exchange Procedures, the ADR Procedures contemplate submitting Designated Claims to Case Evaluation (as defined below).  Where no settlement is reached following Case Evaluation, the

---

[5]     A Designated Claimant may not amend its proof of claim solely for the purpose of proposing a Counteroffer of a higher amount or a better priority. Any dispute over the validity of any Counteroffer may be submitted by the City to the Bankruptcy Court for review.

ADR Procedures contemplate submitting Designated Claims to binding arbitration, if the City and the Designated Claimant both agree to binding arbitration of the applicable Designated Claim (or in the case of Multi-Party Tort Claims, all parties agree). When returning the ADR Notice, therefore, the Designated Claimant is required to notify the Debtors if it consents to (and thereby opts in to) or does *not* consent to (and thereby opts out of) binding arbitration in the event that its Designated Claim ultimately is not resolved through the Offer Exchange Procedures or Case Evaluation. If the Designated Claimant returns the ADR Notice without expressly notifying the Debtors that it consents to, and seeks to opt into, binding arbitration, the Designated Claimant shall be deemed to have opted out of binding arbitration. Any Designated Claimant that does not consent to binding arbitration in its response to the ADR Notice may later consent in writing to binding arbitration, subject to the agreement of the City. If the City did not consent to binding arbitration in the ADR Notice, it may later consent to binding arbitration at any time in the process by providing a written notice to the Designated Claimant (including through an Arbitration Notice, as defined below). Consent to binding arbitration, once given, cannot subsequently be withdrawn. In addition, any attempt to refuse binding arbitration in the response to the ADR Notice shall be ineffective if the Designated Claimant previously consented in writing to binding arbitration as a means to resolve its claim(s), either before or after the commencement of the City's chapter 9 case on July 18, 2013 (the "Petition Date").

5. *The City's Response to a Counteroffer*

The City must respond to any Counteroffer within 14 days after its receipt of the Counteroffer (the "Response Deadline"), by returning a written response (as further defined below, a "Response Statement"). The Response Statement shall indicate that the City either: (a) accepts the Counteroffer; (b) rejects the Counteroffer, with or without making a revised Settlement Offer (a "Revised Settlement Offer"); (c) requests additional information or documentation so that the City may respond in good faith to the Counteroffer; or (d) terminates the Offer Exchange Procedures and advances the Designated Claim the next step of the ADR Procedures, as set forth below.

(a) *The City's Rejection of the Counteroffer Without Making a Revised Settlement Offer*

If the City rejects the Counteroffer without making a Revised Settlement Offer, (i) the Offer Exchange Procedures will be deemed terminated

with respect to the Designated Claim and (ii) the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.

(b)    *The City's Failure to Respond*

If the City fails to respond to the Counteroffer by the Response Deadline:  (i) the Counteroffer will be deemed rejected by the City, (ii) the Offer Exchange Procedures will be deemed terminated with respect to the Designated Claim and (iii) the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.

(c)    *Revised Settlement Offer*

If the City makes a Revised Settlement Offer by the Response Deadline, the Designated Claimant may accept the Revised Settlement Offer by providing the City with a written statement of acceptance no later than 14 days after the date of service of the Revised Settlement Offer (the "Revised Settlement Offer Response Deadline").  If the Designated Claimant does not accept the Revised Settlement Offer by the Revised Settlement Offer Response Deadline, the Revised Settlement Offer will be deemed rejected, and the Designated Claim automatically will advance to the next step of the ADR Procedures, as set forth below.

(d)    *Request for Additional Information*

If the City requests additional information or documentation by the Response Deadline, the Designated Claimant shall serve such additional information or documentation so that it is received by the City within 14 days after such request.  If the Designated Claimant timely responds, the City shall have 14 days to provide an amended Response Statement, which may include a Revised Settlement Offer as a counter to the Counteroffer.  If the City does not provide an amended Response Statement within this period, or if the Designated Claimant fails to provide the requested information or documentation within the time allotted, the Designated Claim automatically will proceed to the next step of the ADR Procedures, as set forth below.

6.    *Offer Exchange Termination Date*

Upon mutual written consent, the City and a Designated Claimant may exchange additional Revised Settlement Offers and Counteroffers for up to 21 days after the later of (a) the Revised Settlement Offer Response Deadline or (b) the expiration of the applicable timeframes provided for in Section II.A.5(d)

ATI-2587951v7
13-53846-tjt    Doc 12873-1   Filed 08/20/18   Entered 08/20/18 14:20:38   Page 158 of
219
13-53846-tjt    Doc 13073   Filed 12/24/18   Entered 12/24/18 10:17:00   Page 15 of 60
158

above with respect to requesting, receiving and responding to additional information or documentation. Any date that the Offer Exchange Procedures conclude without a resolution is referred to herein as the "Offer Exchange Termination Date."

7. *Ability to Settle Claims*

Nothing herein shall limit the ability of a Designated Claimant and the City to settle a Designated Claim by mutual consent at any time. All such settlements shall be subject to the terms of Section II.D below.

**B.    Case Evaluation**

The next step of the ADR Procedures following the Offer Exchange Procedures is case evaluation ("Case Evaluation") before the Wayne County Mediation Tribunal Association (the "MTA") under the procedures set forth in Rules 2.403 and 2.404 of the Michigan Court Rules of 1985 ("MCR"), as provided for by Rule 16.3 of the Local Rules of the United States District Court for the Eastern District of Michigan. Copies of MCR §§ 2.403 and 2.404 are attached hereto collectively as Annex II.

All Designated Claims not settled through the Offer Exchange Procedures shall be referred to Case Evaluation unless the City and the applicable Designated Claimant previously have undergone Case Evaluation with respect to the applicable Designated Claim.[6] Additional parties may intervene in the Case Evaluation process solely by agreement between the City and the applicable Designated Claimant.

1. *Prioritization of Referral of*
   *Designated Claims to Case Evaluation*

As soon as reasonably practicable following the Offer Exchange Termination Date with respect to any Designated Claim, the City shall issue to the applicable Designated Claimant, any other parties to the Case Evaluation and the Clerk of the MTA (the "ADR Clerk"), a notice of case evaluation (a "Case

---

[6]    Where the City and the applicable Designated Claimant previously underwent Case Evaluation with respect to the applicable Designated Claim, then the Designated Claim will proceed to the next step of the ADR Procedures unless the parties agree to conduct another Case Evaluation with respect to the Designated Claim.

-10-

Evaluation Notice") substantially in the form attached hereto as <u>Annex III</u>.  Given the large number of actual and potential prepetition litigation claims asserted or to be asserted against the City, however, the City anticipates that it will be necessary to prioritize the initiation of Case Evaluation proceedings.  In prioritizing among Designated Claims, the City may consider, along with any other factors the City deems relevant or appropriate in its sole discretion, (a) the absolute or relative difference between the final offers made by the City and the applicable Designated Claimant during the Offer Exchange Procedures, (b) the nature and complexity of the Designated Claim, (c) the status of any underlying lawsuit or (d) whether the Designated Claimant returned the ADR Notice and its level of participation in the ADR Procedures.

<div align="center">2.    <em><u>Summary of Case Evaluation Rules and Procedures</u></em></div>

Except to the extent modified by the terms of these ADR Procedures, the Case Evaluation of any Designated Claim shall be governed by the rules and procedures set forth in MCR §§ 2.403 and 2.404.  The following provisions of MCR § 2.403, however, are expressly inapplicable to these Case Evaluation procedures:  (a) MCR §§ 2.403(A-C) (relating to the assignment of cases to Case Evaluation) and (b) MCR §§ 2.403(N-O) (relating to the posting of bonds for frivolous claims and defenses and the awarding of costs against a party that rejects a Case Evaluation and subsequently fails to achieve a superior result at trial).

The purpose of the Case Evaluation process is to obtain a nonbinding, confidential, monetary valuation of each Designated Claim that serves as a focal point for ongoing settlement negotiations between the parties.  Each Designated Claim shall be evaluated by a panel of three case evaluators (the "<u>Case Evaluation Panel</u>").  The Case Evaluation Panel hears the arguments of the parties at a short hearing (the "<u>Case Evaluation Hearing</u>") and, within 14 days following the Case Evaluation Hearing, issues its written evaluation of the Designated Claim.

<div align="center">(a)    <em>Fees and Costs for Case Evaluation, Derivative Claims</em></div>

Pursuant to MCR § 2.403(H), the fees and costs for each Case Evaluation proceeding will be $75.00 payable by each party to the ADR Clerk.  Where one claim is derivative of another within the Case Evaluation proceeding, the claims will be treated as a single claim, with one fee to be paid and a single valuation to be made by the Case Evaluation Panel.  In addition, with the agreement of all of the parties, Multi-Party Tort Claims also may be treated as a

<div align="center">-11-</div>

ATI-2587951v7

13-53846-tjt    Doc 12878-1  Filed 08/20/18  Entered 08/20/18 14:20:38  Page 160 of
13-53846-tjt    Doc 12873-1  Filed 12/24/18  Entered 12/24/18 10:17:00  Page 161 of
219
160

single claim, with one fee to be paid and a single valuation to be made by the Case Evaluation Panel.[7]

        (b)    *Scheduling of the Case Evaluation Hearing*

The ADR Clerk shall select the members of the Case Evaluation Panel in accordance with MCR § 2.404(C). The ADR Clerk shall set a time and place for the Case Evaluation Hearing, consistent with MCR § 2.403(G)(1), and provide notice to the members of the Case Evaluation Panel and the parties to the Case Evaluation at least 42 days prior to the date set for the Case Evaluation Hearing. Adjournments of the Case Evaluation Hearing may be granted only for good cause.

        (c)    *The Case Evaluation Summary*

At least 14 days prior to the date scheduled for the Case Evaluation Hearing, each party shall serve a copy of a case evaluation summary (a "Case Evaluation Summary") and supporting documents on the other parties to the Case Evaluation and file a proof of service and three copies of the Case Evaluation Summary with the ADR Clerk. The Case Evaluation Summary shall consist of a concise statement setting forth the party's factual and legal position on issues presented by the Designated Claim. The Case Evaluation Summary shall not exceed 20 pages, double spaced, exclusive of attachments. Quotations and footnotes may be single spaced. At least one-inch margins shall be used, and printing shall not be smaller than 12-point font. See MCR § 2.403(I)(3).

        (d)    *Conduct of the Case Evaluation Hearing*

The Case Evaluation Hearing shall be conducted in accordance with MCR § 2.403(J). Thus, for example: (i) oral presentation shall be limited to 15 minutes per side unless multiple parties or unusual circumstances warrant addition time; (ii) no testimony will be taken or permitted of any party, (iii) factual information having a bearing on damages or liability must be supported by documentary evidence, if possible; and (iv) statements by the attorneys and the briefs or summaries are not admissible in any court or evidentiary proceeding.

        (e)    *The Case Evaluation Panel's Decision*

Within 14 days following the Case Evaluation hearing, the Case Evaluation Panel will estimate the value of the Designated Claim (the "Evaluation")

---

[7]    If for any reason the costs for any Case Evaluation proceeding exceeds $75.00 per party, such costs shall be borne equally by each of the parties.

-12-

13-53846-tjt   Doc 12873-1   Filed 12/24/18   Entered 12/24/18 10:17:00   Page 93 of 161

and notify each party of the Evaluation in writing. The Case Evaluation Panel shall only liquidate the monetary value, if any, of the Designated Claim in light of the evidence and arguments presented at in the Case Evaluation Summary and at the Case Evaluation Hearing and shall not raise or purport to determine any issues relating to the potential treatment or priority of the Designated Claim in this chapter 9 case. All claims subject to an Evaluation shall be prepetition claims subject to treatment under a Chapter 9 Plan.

(f) *Acceptance or Rejection of the Evaluation*

Within 28 days following the issuance of the Evaluation by the Case Evaluation Panel, each of the parties shall file a written acceptance or rejection of the Evaluation with the ADR Clerk. Each acceptance or rejection must encompass all claims as between any two parties to the Case Evaluation. The failure to file a written acceptance or rejection within 28 days constitutes a rejection of the Evaluation.

If the ADR Clerk informs such parties that they both have accepted the Evaluation then the Designated Claim shall be deemed settled, and the settlement as between such parties shall be documented and made of record in accordance with the procedures set forth in Section II.D below.

If one or both parties rejects the Evaluation, then the parties shall have a further 28 days to negotiate a consensual settlement of the Designated Claim. If no settlement is reached by the end of this period (the "Case Evaluation Termination Date") then the Designated Claim shall proceed to binding arbitration, if applicable.

## C. **Binding Arbitration**

If the Designated Claimant previously consented in writing to binding arbitration as a means to resolve its claim(s) as set forth above (either in its response to the ADR Notice or by the terms of a separate written agreement either before or after the Petition Date), and if the City agrees to binding arbitration, then the Designated Claim shall be subject to binding arbitration, if such claim is not resolved in the Offer Exchange Procedures or in Case Evaluation.[8] If the

---

[8] The City's agreement to arbitration with respect to any Designated Claim shall be set forth in the Arbitration Notice, as defined below. In the case of Multi-Party Tort Claims, or if the City otherwise deems it necessary or appropriate in its discretion to resolve multiple Designated Claims on a

-13-

ATI-2587951v7
13-53846-tjt   Doc 12073-1   Filed 12/24/18   Entered 12/24/18 14:20:38   Page 162 of
219
13-53846-swr   Doc 2308-1   Filed 02/20/18   Entered 02/20/18 14:20:38   Page 162 of   162

Designated Claimant has not expressly consented to binding arbitration in its response to the ADR Notice and has not otherwise expressly consented to binding arbitration, or if the City has not consented to binding arbitration, at the conclusion of Case Evaluation, the liquidation of the Designated Claim shall advance in accordance with the procedures for Unresolved Designated Claims set forth below.

1.     *Arbitration Notice*

Where the parties have agreed to binding arbitration, as soon as reasonably practicable following the Case Evaluation Termination Date with respect to any Designated Claim, the City shall serve on the applicable Designated Claimant (or their counsel if known), any other parties to the Case Evaluation and the ADR Clerk, a notice of arbitration (an "<u>Arbitration Notice</u>") substantially in the form attached hereto as <u>Annex IV</u>.  Additional parties may intervene in the binding arbitration process solely by agreement between the City and the applicable Designated Claimant.

2.     *Arbitration Rules and Procedures*

The arbitration of any Designated Claims shall be conducted by a single arbitrator selected by the ADR Clerk and shall be governed by the commercial arbitration rules of the American Arbitration Association (the "<u>AAA</u>"), as amended and effective on October 1, 2013 unless the parties agree otherwise (the "<u>Arbitration Rules</u>"), except where the Arbitration Rules are expressly modified by the terms of these ADR Procedures.  In the event of any conflict between the Arbitration Rules and the ADR Procedures, the ADR Procedures shall control.

(a)     *Governing Law*

The ADR Procedures, as they relate to arbitration proceedings, are governed by title 9 of the United States Code (the "<u>Federal Arbitration Act</u>"), except as modified herein.

---

(continued…)

consolidated basis, the matter may proceed to binding arbitration solely with the consent of all parties.

ATI-2587951v7
13-53846-tjt   Doc 13072-1   Filed 12/24/18   Entered 12/24/18 10:17:00   Page 163 of
219

(b)     *Selection of Arbitrator*

The ADR Clerk shall select the arbitrator and provide notice to the arbitrator and the parties of his or her appointment.  Any person appointed as an arbitrator:  (i) must be an impartial, neutral person; (ii) must be experienced (either from past arbitrations or former employment) in the law that is the subject of the Designated Claim; (iii) must have no financial or personal interest in the proceedings or, except when otherwise agreed by the parties, in any related matter; and (iv) upon appointment, must disclose any circumstances likely to create a reasonable inference of bias.  In the event that an arbitrator discloses circumstances likely to create a reasonable inference of bias, either (i) the parties may agree that such arbitrator may be replaced by the ADR Clerk or (ii) in case the parties disagree, the party seeking to replace the arbitrator may petition the Bankruptcy Court to make a final decision with respect to the replacement of the arbitrator.

(c)     *Fees and Costs for Binding Arbitration; Sharing*

The City is in the process of negotiating a rate with the MTA for arbitrations under these ADR Procedures.  Unless the parties expressly have agreed otherwise in writing (either before or after the Petition Date) as part of an agreement to submit Designated Claims to binding arbitration, the fees and costs charged by the arbitrator and the MTA shall be shared equally among the parties; provided, however, that the arbitrator, in the arbitrator's sole discretion, may assess fees and costs against any party that the arbitrator finds to be abusing or unduly delaying the arbitration process.  The arbitrator shall submit invoices to the MTA, which shall invoice the parties, according to the MTA's ordinary practices then in effect and subject to the MTA's ordinary payment terms then in effect.

(d)     *Time and Location of Arbitration Hearings*

All arbitration hearings shall be scheduled by the arbitrator, in consultation with the parties and shall be conducted in Detroit, Michigan unless otherwise agreed by all of the parties and the arbitrator.

No more than one case shall be scheduled per arbitrator per hearing day.  There shall be no more than three days of arbitration hearings scheduled by in any calendar week containing no legal holidays and no more than two days of arbitration hearings in any calendar week containing a legal holiday.

To the maximum extent practicable, the scheduling of arbitration hearings shall give due consideration to the convenience of the parties.  The

arbitrator shall provide written notice of the date, time and place of the arbitration to the parties within 14 days after the arbitrator's appointment.

(e)     *Pre-Hearing Matters*

Any pre-hearing issues, matters or disputes (other than with respect to merits issues) shall be presented to the arbitrator telephonically (or by such other method agreed to by the arbitrator and the parties) for expeditious, final and binding resolution. Any pre-hearing issue, matter or dispute (other than with respect to merits issues) must be presented to the arbitrator not later than 21 days prior to the arbitration hearing so as to permit the arbitrator to review and rule upon the requests by telephonic or email communication at least five days prior to the arbitration hearing.

(f)     *Limited Discovery*

There shall be no interrogatories. Any requests for production of documents, electronically stored information and things ("Document Requests") shall be made in writing and shall be served by electronic mail and overnight mail no later than by 5:00 p.m., Eastern Time, on a weekday that is not a legal holiday, no fewer than 42 days before the arbitration hearing, and shall be limited to no more than ten requests, including discrete subparts. Items requested in the Document Requests must be produced within 28 days after service of the Document Requests. Affidavits permitted under the Arbitration Rules (e.g., Rule 32 of the AAA rules) must be submitted at least 21 days prior to the scheduled arbitration hearing. Each party may depose up to three witnesses. Each deposition shall be limited to three hours. All depositions must be completed at least 21 days prior to the arbitration hearing. All documents, affidavits and deposition transcripts from discovery shall be confidential and shall not be either (i) disclosed to any person or party not participating in the arbitration proceeding or (ii) used for any purpose other than in connection with the arbitration proceeding, except as provided herein. Subject to approval by the arbitrator upon written request, each party may depose up to two additional witnesses and may serve up to five additional Document Requests. Any request for such additional depositions or Document Requests, and any objection to initial or additional requests for depositions or Document Requests, shall be made in writing and shall be submitted to the arbitrator and the applicable party within such time as to permit the arbitrator no fewer than three days in which to review and rule upon the request so that the ruling is issued, by telephonic or email communication, at least 14 days prior to the first such deposition or the deadline for production, as applicable. The arbitrator shall approve the request only if the requested depositions or Document

-16-

Requests are directly relevant to and necessary for the complete presentation of any party's case in the arbitration. Notwithstanding anything to the contrary in this paragraph (f), the arbitrator may modify any term of discovery set forth herein for good cause.

(g)     *Pre-Arbitration Statement*

On or before 14 days prior to the scheduled arbitration hearing, each party shall submit to the arbitrator and serve on the other party or parties by electronic mail and overnight mail a pre-arbitration statement (the "Pre-Arbitration Statement"). The Pre-Arbitration Statement shall not exceed 20 pages, double spaced, exclusive of attachments. Quotations and footnotes may be single spaced. At least one-inch margins shall be used, and printing shall not be smaller than 12-point font.

(h)     *Arbitration Hearing*

Unless otherwise agreed by the parties and the arbitrator or as provided herein, and subject to the limitations on number of arbitration hearings per week as set forth in Section II.C.2(d) above, the arbitration hearing must be held no later than 112 days after the date of appointment of the arbitrator. Each party shall have a maximum of three hours, including any rebuttal and cross-examination, within which to present its position at the arbitration hearing. The arbitration hearing is open only to the parties, their counsel and any witnesses. Non-party witnesses shall be sequestered. No post-hearing briefs may be filed, unless the arbitrator requests such briefs, in which case such briefing shall be subject to the issues, timing and page limitations the arbitrator imposes. There shall be no reply briefs.

(i)     *Arbitration Awards*

The arbitrator shall issue a short written opinion and award (the "Arbitration Award") within 14 days after the last day of the arbitration hearing, provided that the arbitrator can extend such period up to 30 days after the last day of the arbitration hearing. The arbitrator shall not be compensated for more than eight hours of deliberations on and preparation of the Arbitration Award. In no event shall the amount of any Arbitration Award exceed the claim amount shown on the Designated Claimant's most recent proof of claim prior to the service of the Arbitration Notice.

Except as otherwise agreed in writing by the parties in advance of the arbitration, any Arbitration Award shall only liquidate the applicable Designated

Claim and shall not raise or purport to determine any issues relating to the potential treatment or priority of the Designated Claim in this chapter 9 case. The Arbitration Award may not award the Designated Claimant with: (i) punitive damages; (ii) interest, attorneys' fees or other fees and costs, unless permissible under section 506(b) of the Bankruptcy Code; (iii) an award under any penalty rate or penalty provision of the type specified in section 365(b)(2)(D) of the Bankruptcy Code; (iv) amounts associated with obligations that are subject to disallowance under section 502(b) of the Bankruptcy Code; (v) specific performance, other compulsory injunctive relief, restrictive, restraining or prohibitive injunctive relief or any other form of equitable remedy; or (vi) any relief not among the foregoing, but otherwise impermissible under applicable bankruptcy or non-bankruptcy law. The entry of an Arbitration Award shall not grant the Designated Claimant any enforcement or collection rights except as permitted under a Chapter 9 Plan, and the Stay/Injunction shall apply to the Arbitration Award. For the avoidance of doubt, all proceedings against the City or any Indemnification Claimant relating to a Designated Claim following the entry of an Arbitration Award shall remain subject to the Stay/Injunction, absent further order of the Bankruptcy Court. Any aspect of an Arbitration Award that violates the foregoing rules and limitations shall be void without further action of any court.

(j)     *Vacation of Arbitration Awards*

All Arbitration Awards shall be final and binding. Other than the Designated Claimants' identities, the claims register number(s) assigned to the applicable arbitrated Designated Claims, the dollar amounts of the Designated Claims as awarded in the Arbitration Awards, and except as otherwise required by law, all Arbitration Awards shall be treated as confidential. No party shall have the right to request that an Arbitration Award be vacated except: (i) in the event that an Arbitration Award violates the Bankruptcy Code or these ADR Procedures, such as by purporting to grant priority status to any Arbitration Award, in which case any application to vacate must be made to the Bankruptcy Court; or (ii) pursuant to the provisions of the Federal Arbitration Act, in which case any application to vacate must be to the United States District Court for the Eastern District of Michigan. Any further proceedings shall be governed by the Federal Arbitration Act. Failure to timely apply to vacate shall result in the loss of any vacation rights. Once the Arbitration Award is final, the City shall update the claims docket in this case accordingly and may file any notice of the liquidated amount of the Designated Claim that it deems necessary or appropriate for such purpose.

-18-

ATI-2587951v7
13-53846-tjt    Doc 12878-1  Filed 08/24/18  Entered 08/24/18 14:20:38  Page 167 of
13-53846-tjt    Doc 13078-1  Filed 12/24/18  Entered 12/24/18 16:17:00  Page 167 of
219

The arbitration procedures described herein may be modified only after the appointment of an arbitrator in the applicable arbitration proceeding and only upon the mutual written consent of the applicable arbitrator and each of the parties.

**D.     Approval and Satisfaction of Any Settlement or Arbitration Award**

**If you hold a Designated Claim with respect to which settlement has been reached through the ADR Procedures or an Arbitration Award has been entered, please read the following carefully. Except as otherwise agreed by the City, you will receive an allowed general unsecured nonpriority claim against the City that will be treated in accordance with the Chapter 9 Plan in the City's bankruptcy case *and not* a full cash payment of the settlement amount of your Designated Claim. Notwithstanding the foregoing, any disputes about the priority of a Designated Claim may be raised with and determined by the Bankruptcy Court after the conclusion of the ADR Procedures.** Payment of any settlement or award under the ADR Procedures shall be governed by the procedures set forth in this Section II.D.

1.    *Settlements Permitted at Any Stage of ADR Procedures*

Designated Claims may be settled by the City and a Designated Claimant before or during the Offer Exchange Procedures, Case Evaluation or any arbitration proceeding, or at any other point in the process. Nothing herein shall prevent the parties from settling any claim at any time.

2.    *Release*

All settlements shall include a release of all claims relating to the underlying occurrence, including the Designated Claim and the Designated Claimant's claim against any other party with respect to whom the Stay/Injunction applies.

3.    *Settlement Reporting*

By no later than the 91st day following the General Bar Date or as soon thereafter as reasonably practicable, and every 91 days thereafter, the City will file a report with the Bankruptcy Court that identifies all Designated Claims

ATI-2587951v7
13-53846-tjt    Doc 12878-1  Filed 08/20/18  Entered 08/20/18 14:21:38  Page 168 of
219
13-53846-tjt    Doc 13073-1  Filed 12/24/18  Entered 12/24/18 16:17:30  Page 95 of  168

and the status of each such Designated Claim as it moves through the stages of these ADR Procedures.

4. *Satisfaction of Any Settlement or Award*

Payment of any settlement or award on account of any Designated Claim arising prior to the Petition Date shall be in the form of an allowed general unsecured nonpriority claim to be paid in the amount and form as set forth in the Chapter 9 Plan, except (a) as otherwise agreed by the City; or (b) with respect to the priority of the claim, as determined by the Bankruptcy Court as provided in Section II.D above. Notwithstanding the foregoing, nothing herein shall limit, expand or otherwise modify the City's authority to settle or pay claims or the City's authority over its property and revenues under section 904 of the Bankruptcy Code. The authority to settle Designated Claims pursuant to the ADR Procedures will be in addition to, and cumulative with, any existing authority to resolve claims against the City.

For the avoidance of doubt, all proceedings against the City (or, in the case of Multi-Party Tort Claims, against the applicable Indemnification Claimant) following the liquidation of any settlement or award shall remain subject to the Stay/Injunction, absent further order of the Court.

**E. Failure to Resolve a Designated Claim Through ADR Procedures**

1. *Liquidation of Unresolved Designated Claims in Bankruptcy Court*

Designated Claims not resolved through the ADR Procedures ("Unresolved Designated Claims") shall proceed to litigation to be liquidated. Unless the City agrees otherwise, liquidation of any Unresolved Designated Claim shall proceed in the Bankruptcy Court (to the extent that the Bankruptcy Court has subject matter jurisdiction over the Unresolved Designated Claim) as soon as practicable following the date that the ADR Procedures are concluded for an Unresolved Designated Claim (the "ADR Completion Date").[9] Such litigation will

_____

[9] With respect to Unresolved Designated Claims, the ADR Completion Date will be the Case Evaluation Termination Date except where the the ADR Procedures are terminated sooner, such as where Case Evaluation was conducted with respect to a Designated Claim prior to the Petition Date, and the parties do not agree to conduct a second round of Case Evaluation. In that

-20-

ATI-2587951v7
13-53846-tjt   Doc 12878-1   Filed 02/20/18   Entered 02/20/18 14:21:03   Page 169 of
13-53846-tjt   Doc 13078-1   Filed 12/24/18   Entered 12/24/18 16:17:20   Page 96 of
219
169

be initiated by the filing of a claim objection by the City (a "Claim Objection") within 35 days after the ADR Completion Date (the "Claim Objection Deadline"). Disputes over the subject matter jurisdiction of the Bankruptcy Court shall be determined by the Bankruptcy Court, and the Designated Claimants shall retain whatever rights they have to seek withdrawal of the reference, abstention or other procedural relief in connection with a Claim Objection. *For the avoidance of doubt, consistent with 28 U.S.C. § 157(b)(5), personal injury tort and wrongful death claims shall not be heard by the Bankruptcy Court and shall be subject to Section II.E.2 below.*

### 2. *Liquidation of Unresolved Designated Claims in Other Courts*

Except as provided below, if the Unresolved Designated Claim cannot be adjudicated in the Bankruptcy Court because of lack of, or limitations upon, subject matter jurisdiction or if the City does not file a Claim Objection by the Claim Objection Deadline (any such claim, a "Non-Bankruptcy Claim"), then liquidation of any such Non-Bankruptcy Claim shall proceed in either (a) the non-bankruptcy forum in which the Non-Bankruptcy Claim was pending on the Petition Date, if any, subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Non-Bankruptcy Claim was not pending in any forum on the Petition Date, then in the United States District Court for the Eastern District of Michigan or such other nonbankruptcy forum selected by the Designated Claimant that (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the Non-Bankruptcy Claim, (iii) has *in rem* jurisdiction over the property involved in the Non-Bankruptcy Claim (if applicable) and (iv) is a proper venue. If necessary, any disputes regarding the application of this Section II.E.2 shall be determined by the Bankruptcy Court; provided that disputes about the jurisdiction of a matter presented to a non-bankruptcy court may be determined by such court.

The Stay/Injunction shall be deemed modified with respect to any Non-Bankruptcy Claim as set forth herein unless, within 35 days of the ADR Completion Date, the City files a notice (a "Stay Notice") that it intends for the Stay/Injunction to remain in effect with respect to a Non-Bankruptcy Claim. If the City files a Stay Notice, the Stay/Injunction shall remain in place, and the applicable Designated Claimant may seek relief from the Stay/Injunction under the

---

(continued…)

instance, the ADR Completion Date will be the Offer Exchange Termination Date.

ATI-2587951v7
13-53846-tjt    Doc 12873-1  Filed 02/20/18  Entered 02/20/18 14:21:08  Page 170 of
219
13-53846-tjt    Doc 12073-1  Filed 12/24/18  Entered 12/24/18 10:17:00  Page 170 of
170

standards set forth in section 362(d) of the Bankruptcy Code. In addition, with respect to any Non-Bankruptcy Claims that are Multi-Party Tort Claims, an Indemnification Claimant may file a motion within 35 days of the ADR Completion Date seeking to maintain the Stay/Injunction as to the Indemnification Claimant for good cause shown.

If the City does not file a Stay Notice (or in the case of Multi-Party Tort Claims, no Indemnification Claimant asserts and establishes cause to maintain the Stay/Injunction) with respect to a Non-Bankruptcy Claim, then the Stay/Injunction shall be deemed modified solely for the purpose of, and to the extent necessary for, liquidating such Non-Bankruptcy Claim in an appropriate non-bankruptcy forum, as provided for above. For the avoidance of doubt, following the liquidation of a Non-Bankruptcy Claim, all proceedings against the City or any Indemnification Claimant relating to the Non-Bankruptcy Claim shall remain subject to the Stay/Injunction, absent further order of the Bankruptcy Court.

Notwithstanding anything herein, the City and any Designated Claimant may agree to terminate the ADR Procedures at any time and proceed to litigation of the applicable Designated Claim, as set forth herein.

## F.    Duty to Negotiate in Good Faith

During the period of the ADR Procedures, the Designated Claimant and the City shall negotiate in good faith in an attempt to reach an agreement for the compromise of the applicable Designated Claim.

## G.    Failure to Comply with the ADR Procedures

If a Designated Claimant fails to comply with the ADR Procedures, negotiate in good faith or cooperate with the City as may be necessary to effectuate the ADR Procedures, the Bankruptcy Court may, after notice and a hearing, find such conduct to be in violation of the ADR Order or an abandonment of or failure to prosecute the Designated Claim, or both. Upon such findings, the Bankruptcy Court may, among other things, disallow and expunge the Designated Claim, in whole or part, or grant such other or further remedy deemed just and appropriate under the circumstances, including, without limitation, awarding attorneys' fees, other fees and costs to the City.

Dated: [_____], 2013                    BY ORDER OF THE COURT

ATI-2587951v7
13-53846-tjt    Doc 12873-1    Filed 02/24/18    Entered 02/24/18 14:20:38    Page 171 of
219
13-53846-swr    Doc 2307    Filed 12/24/13    Entered 12/24/13 10:17:00    Page 98 of 160    171

# ANNEX I

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

-------------------------------------------------------x
```
                                :
In re                           :          Chapter 9
                                :
CITY OF DETROIT, MICHIGAN,      :          Case No. 13-53846
                                :
                  Debtor.       :          Hon. Steven W. Rhodes
                                :
                                :
```
-------------------------------------------------------x

## ADR NOTICE

Service Date:

Designated Claimant(s):

Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

**Deadline to Respond:**

       By this ADR Notice, the City of Detroit (the "Chttps_City") hereby submits the above-identified claim(s) (the "Designated Claim(s)") in the City's chapter 9 case to alternative dispute resolution, pursuant to the procedures (the "ADR Procedures") established by the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims, entered by the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") on [_____], 2013. A copy of the ADR Procedures is enclosed for your reference.

       The City has reviewed your Designated Claim(s) and, pursuant to the ADR Procedures, offers the amount(s) set forth below as a general unsecured

ATI-2587951v7
13-53846-tjt Doc 12872-1 Filed 12/24/18 Entered 12/24/18 10:17:00 Page 173 of 219
13-53846-tjt Doc 23078-1 Filed 02/20/18 Entered 02/20/18 14:21:38 Page 173 of 219

nonpriority claim in full and final settlement of your Designated Claim(s) (the "Settlement Offer").

You are required to return this ADR Notice with a Permitted Response (as defined below) to the Settlement Offer by no later than the **Deadline to Respond** indicated above.

In addition, to the extent your most recent proof(s) of claim does not: (a) state the correct amount of your Designated Claim(s); (b) expressly identify each and every cause of action and legal theory on which you base your Designated Claim(s); (c) include current, correct and complete contact information of your counsel or other representative; or (d) provide all documents on which you rely in support of your Designated Claim(s), you hereby are requested to provide all such information and documentation with your Permitted Response.

IF YOU DO NOT RETURN THIS ADR NOTICE WITH THE REQUESTED INFORMATION AND A PERMITTED RESPONSE TO THE SETTLEMENT OFFER TO **[INSERT THE CITY'S REPRESENTATIVE]** SO THAT IT IS RECEIVED BY THE DEADLINE TO RESPOND, YOU WILL BE DEEMED TO HAVE REJECTED THE SETTLEMENT OFFER AND THE LIQUIDATION OF YOUR DESIGNATED CLAIMS WILL ADVANCE TO CASE EVALUATION AS SET FORTH IN SECTION II.B OF THE ADR PROCEDURES.

IN ADDITION, YOU ARE REQUIRED TO INDICATE EXPRESSLY WHETHER YOU CONSENT TO **BINDING ARBITRATION** YOUR DESIGNATED CLAIM CANNOT BE SETTLED THROUGH THE OFFER EXCHANGE PROCEDURES OR CASE EVALUATION. PLEASE COMPLETE THE APPROPRIATE BOX BELOW TO INDICATE WHETHER YOU DO OR DO NOT CONSENT TO **BINDING ARBITRATION**. *IF YOU DO NOT COMPLETE THE BOX BELOW, YOU WILL BE DEEMED TO HAVE REJECTED BINDING ARBITRATION WITH RESPECT TO YOUR DESIGNATED CLAIM*. PLEASE NOTE THAT YOUR CONSENT TO **BINDING ARBITRATION** CANNOT SUBSEQUENTLY BE WITHDRAWN.

In addition, any attempt to opt out of binding arbitration in the response to this Notice shall be ineffective if you previously have consented in writing (either prepetition or postpetition) to binding arbitration as a means to resolve your claim(s). Details about the arbitration process, including the sharing of fees, are set forth in Section II.C of the ADR Procedures.

ATI-2587951v7
-2-
13-53846-tjt   Doc 12078-1   Filed 08/20/18   Entered 08/20/18 14:20:38   Page 174 of
13-53846-tjt   Doc 2807-2   Filed 12/24/13   Entered 12/24/13 16:17:00   Page 91 of
219                                                                                      174

Note that binding arbitration will only take place if **all parties** to a claim dispute – including the City – agree to submit the dispute to arbitration. **[Optional:  May add statement about the City's consent to binding arbitration, if desired.]**

YOU MUST RESPOND TO THE FOLLOWING SETTLEMENT OFFER:

**Settlement Offer**:  The City offers you an allowed general unsecured nonpriority claim in the amount of **[$_____]** against the City in full satisfaction of your Designated Claim(s), to be satisfied in accordance with any plan of adjustment of debts confirmed and implemented in the City's chapter 9 case.

The only permitted responses (the "Permitted Responses") to the Settlement Offer are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (a "Counteroffer").  Accordingly, please select your Permitted Response below:

_____ I/we agree to and accept the terms of the Settlement Offer.

**or**

_____ I/we reject the Settlement Offer.  However, I/we will accept an allowed general unsecured claim against the City in the amount of $_____ in full satisfaction of the Designated Claim(s), to be satisfied in accordance with any plan of adjustment of debts confirmed and implemented in the City's chapter 9 case.

SECTION II.A.3 OF THE ADR PROCEDURES SETS FORTH THE RESTRICTIONS ON COUNTEROFFERS.  YOUR COUNTEROFFER MAY NOT INCLUDE UNKNOWN, UNLIQUIDATED OR SIMILAR AMOUNTS AND MAY NOT EXCEED THE AMOUNT OR IMPROVE THE PRIORITY SET FORTH IN YOUR MOST RECENT TIMELY FILED OR AMENDED PROOF OF CLAIM.  YOU MAY NOT AMEND YOUR PROOF OF CLAIM SOLELY FOR THE PURPOSE OF PROPOSING A COUNTEROFFER OF A HIGHER AMOUNT OR A BETTER PRIORITY.  IF YOU RETURN THIS FORM WITH A COUNTEROFFER THAT DOES NOT COMPLY WITH THE TERMS OF THE ADR PROCEDURES YOU WILL BE DEEMED TO HAVE REJECTED THE SETTLEMENT OFFER AND THE LIQUIDATION OF YOUR

ATI-2587951v7
13-53846-tjt   Doc 12873-1   Filed 02/20/18   Entered 02/20/18 14:20:38   Page 175 of
-3-
219
13-53846-tjt   Doc 12073-1   Filed 12/24/18   Entered 12/24/18 10:17:00   Page 175 of   175

DESIGNATED CLAIMS WILL ADVANCE TO CASE EVALUATION AS SET FORTH IN SECTION II.B OF THE ADR PROCEDURES.

> Please indicate below whether you consent to binding arbitration with respect to the Designated Claim(s):
>
> _____ I/WE **CONSENT** TO BINDING ARBITRATION.
>
> _____ I/WE **DO NOT CONSENT** TO BINDING ARBITRATION.
>
> I acknowledge that my/our consent to binding arbitration, once given, cannot be withdrawn.

[Signature of the Designated Claimant's Authorized Representative]

By: _____
[Printed Name]

**[N.B. – Additional Signature Lines as Needed.]**

[Signature of the Designated Claimant's Authorized Representative]

By: _____
[Printed Name]

ATI-2587951v7
13-53846-tjt   Doc 12873-1   Filed 08/20/18   Entered 08/20/18 14:21:38   Page 176 of
-4-
219
13-53846-tjt   Doc 12873   Filed 12/24/18   Entered 12/24/18 10:17:00   Page 177 of   176

# ANNEX II

ATI-2587951v7
13-53846-tjt    Doc 12872-1  Filed 08/20/18  Entered 08/20/18 14:21:38  Page 177 of
219
13-53846-tjt    Doc 2302-1  Filed 12/24/13  Entered 12/24/13 16:17:00  Page 94 of 62   177

**Rule 2.403 Case Evaluation**

(A) Scope and Applicability of Rule.

(1) A court may submit to case evaluation any civil action in which the relief sought is primarily money damages or division of property.

(2) Case evaluation of tort cases filed in circuit court is mandatory beginning with actions filed after the effective dates of Chapters 49 and 49A of the Revised Judicature Act, as added by 1986 PA 178.

(3) A court may exempt claims seeking equitable relief from case evaluation for good cause shown on motion or by stipulation of the parties if the court finds that case evaluation of such claims would be inappropriate.

(4) Cases filed in district court may be submitted to case evaluation under this rule. The time periods set forth in subrules (B)(1), (G)(1), (L)(1) and (L)(2) may be shortened at the discretion of the district judge to whom the case is assigned.

(B) Selection of Cases.

(1) The judge to whom an action is assigned or the chief judge may select it for case evaluation by written order after the filing of the answer

(a) on written stipulation by the parties,

(b) on written motion by a party, or

(c) on the judge's own initiative.

(2) Selection of an action for case evaluation has no effect on the normal progress of the action toward trial.

(C) Objections to Case Evaluation.

(1) To object to case evaluation, a party must file a written motion to remove from case evaluation and a notice of hearing of the motion and serve a copy on the attorneys of record and the ADR clerk within 14 days after notice of the order assigning the action to case evaluation. The motion must be set for hearing within 14 days after it is filed, unless the court orders otherwise.

(2) A timely motion must be heard before the case is submitted to case evaluation.

(D) Case Evaluation Panel.

(1) Case evaluation panels shall be composed of 3 persons.

(2) The procedure for selecting case evaluation panels is as provided in MCR 2.404.

(3) A judge may be selected as a member of a case evaluation panel, but may not preside at the trial of any action in which he or she served as a case evaluator.

(4) A case evaluator may not be called as a witness at trial.

ATI-2587951v7

13-53846-tjt   Doc 12873-1   Filed 08/20/18   Entered 08/20/18 14:21:38   Page 178 of
219
13-53846-tjt   Doc 13073   Filed 12/24/18   Entered 12/24/18 10:47:00   Page 95 of 62   178

(E) Disqualification of Case Evaluators. The rule for disqualification of a case evaluator is the same as that provided in MCR 2.003 for the disqualification of a judge.

(F) ADR Clerk. The court shall designate the ADR clerk specified under MCR 2.410, or some other person, to administer the case evaluation program. In this rule and MCR 2.404, "ADR clerk" refers to the person so designated.

(G) Scheduling Case Evaluation Hearing.

(1) The ADR clerk shall set a time and place for the hearing and send notice to the case evaluators and the attorneys at least 42 days before the date set.

(2) Adjournments may be granted only for good cause, in accordance with MCR 2.503.

(H) Fees.

(1) Each party must send a check for $75 made payable in the manner and within the time specified in the notice of the case evaluation hearing. However, if a judge is a member of the panel, the fee is $50. If the order for case evaluation directs that payment be made to the ADR clerk, the ADR clerk shall arrange payment to the case evaluators. Except by stipulation and court order, the parties may not make any other payment of fees or expenses to the case evaluators than that provided in this subrule.

(2) Only a single fee is required of each party, even where there are counterclaims, cross-claims, or third-party claims. A person entitled to a fee waiver under MCR 2.002 is entitled to a waiver of fees under this rule.

(3) If one claim is derivative of another (e.g., husband-wife, parent-child) they must be treated as a single claim, with one fee to be paid and a single award made by the case evaluators.

(4) Fees paid pursuant to subrule (H) shall be refunded to the parties if

(a) the court sets aside the order submitting the case to case evaluation or on its own initiative adjourns the case evaluation hearing, or

(b) the parties notify the ADR clerk in writing at least 14 days before the case evaluation hearing of the settlement, dismissal, or entry of judgment disposing of the action, or of an order of adjournment on stipulation or the motion of a party.

If case evaluation is rescheduled at a later time, the fee provisions of subrule (H) apply regardless of whether previously paid fees have been refunded.

(5) Fees paid pursuant to subrule (H) shall not be refunded to the parties if

(a)  in the case of an adjournment, the adjournment order sets a new date for case evaluation and the fees are applied to the new date, or

(b)  the request for and granting of adjournment is made within 14 days of the scheduled case evaluation, unless waived for good cause.

Penalties for late filing of papers under subrule (I)(2) are not to be refunded.

ATI-2587951v7

13-53846-tjt   Doc 13072-1  Filed 12/24/18  Entered 12/24/18 10:17:00  Page 96 of 60
13-53846-tjt   Doc 12978-1  Filed 08/20/18  Entered 08/20/18 14:21:38  Page 179 of 219

(I) Submission of Summary and Supporting Documents.

(1) Unless otherwise provided in the notice of hearing, at least 14 days before the hearing, each party shall

(a) serve a copy of the case evaluation summary and supporting documents in accordance with MCR 2.107, and

(b) file a proof of service and three copies of a case evaluation summary and supporting documents with the ADR clerk.

(2) Each failure to timely file and serve the materials identified in subrule (1) and each subsequent filing of supplemental materials within 14 days of the hearing, subjects the offending attorney or party to a $150 penalty to be paid in the manner specified in the notice of the case evaluation hearing. An offending attorney shall not charge the penalty to the client, unless the client agreed in writing to be responsible for the penalty.

(3) The case evaluation summary shall consist of a concise summary setting forth that party's factual and legal position on issues presented by the action. Except as permitted by the court, the summary shall not exceed 20 pages double spaced, exclusive of attachments. Quotations and footnotes may be single spaced. At least one inch margins must be used, and printing shall not be smaller than 12-point font.

(J) Conduct of Hearing.

(1) A party has the right, but is not required, to attend a case evaluation hearing. If scars, disfigurement, or other unusual conditions exist, they may be demonstrated to the panel by a personal appearance; however, no testimony will be taken or permitted of any party.

(2) The rules of evidence do not apply before the case evaluation panel. Factual information having a bearing on damages or liability must be supported by documentary evidence, if possible.

(3) Oral presentation shall be limited to 15 minutes per side unless multiple parties or unusual circumstances warrant additional time. Information on settlement negotiations not protected under MCR 2.412 and applicable insurance policy limits shall be disclosed at the request of the case evaluation panel.

(4) Statements by the attorneys and the briefs or summaries are not admissible in any court or evidentiary proceeding.

(5) Counsel or the parties may not engage in ex parte communications with the case evaluators concerning the action prior to the hearing. After the evaluation, the case evaluators need not respond to inquiries by the parties or counsel regarding the proceeding or the evaluation.

(K) Decision.

ATI-2587951v7

13-53846-tjt Doc 12873-1 Filed 08/20/18 Entered 08/20/18 14:21:38 Page 180 of 219
13-53846-tjt Doc 13073 Filed 12/24/18 Entered 12/24/18 16:17:00 Page 97 of 61 180

(1) Within 14 days after the hearing, the panel will make an evaluation and notify the attorney for each party of its evaluation in writing. If an award is not unanimous, the evaluation must so indicate.

(2) Except as provided in subrule (H)(3), the evaluation must include a separate award as to each plaintiff's claim against each defendant and as to each cross-claim, counterclaim, or third-party claim that has been filed in the action. For the purpose of this subrule, all such claims filed by any one party against any other party shall be treated as a single claim.

(3) The evaluation may not include a separate award on any claim for equitable relief, but the panel may consider such claims in determining the amount of an award.

(4) In a tort case to which MCL 600.4915(2) or MCL 600.4963(2) applies, if the panel unanimously finds that a party's action or defense as to any other party is frivolous, the panel shall so indicate on the evaluation. For the purpose of this rule, an action or defense is "frivolous" if, as to all of a plaintiff's claims or all of a defendant's defenses to liability, at least 1 of the following conditions is met:

(a) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the opposing party.

(b) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(c) The party's legal position was devoid of arguable legal merit.

(5) In an action alleging medical malpractice to which MCL 600.4915 applies, the evaluation must include a specific finding that

(a) there has been a breach of the applicable standard of care,

(b) there has not been a breach of the applicable standard of care, or

(c) reasonable minds could differ as to whether there has been a breach of the applicable standard of care.

(L) Acceptance or Rejection of Evaluation.

(1) Each party shall file a written acceptance or rejection of the panel's evaluation with the ADR clerk within 28 days after service of the panel's evaluation. Even if there are separate awards on multiple claims, the party must either accept or reject the evaluation in its entirety as to a particular opposing party. The failure to file a written acceptance or rejection within 28 days constitutes rejection.

(2) There may be no disclosure of a party's acceptance or rejection of the panel's evaluation until the expiration of the 28-day period, at which time the ADR clerk shall send a notice indicating each party's acceptance or rejection of the panel's evaluation.

(3) In case evaluations involving multiple parties the following rules apply:

(a) Each party has the option of accepting all of the awards covering the claims by or against that party or of accepting some and rejecting others.

ATI-2587951v7

13-53846-tjt   Doc 12872-1   Filed 02/20/18   Entered 02/20/18 14:21:38   Page 181 of
13-53846-tjt   Doc 13073-1   Filed 12/24/18   Entered 12/24/18 16:17:00   Page 98 of 160   181
219

However, as to any particular opposing party, the party must either accept or reject the evaluation in its entirety.

(b) A party who accepts all of the awards may specifically indicate that he or she intends the acceptance to be effective only if

  (i) all opposing parties accept, and/or

  (ii) the opposing parties accept as to specified coparties.

If such a limitation is not included in the acceptance, an accepting party is deemed to have agreed to entry of judgment, or dismissal as provided in subrule (M)(1), as to that party and those of the opposing parties who accept, with the action to continue between the accepting party and those opposing parties who reject.

(c) If a party makes a limited acceptance under subrule (L)(3)(b) and some of the opposing parties accept and others reject, for the purposes of the cost provisions of subrule (O) the party who made the limited acceptance is deemed to have rejected as to those opposing parties who accept.

(M) Effect of Acceptance of Evaluation.

(1) If all the parties accept the panel's evaluation, judgment will be entered in accordance with the evaluation, unless the amount of the award is paid within 28 days after notification of the acceptances, in which case the court shall dismiss the action with prejudice. The judgment or dismissal shall be deemed to dispose of all claims in the action and includes all fees, costs, and interest to the date it is entered, except for cases involving rights to personal protection insurance benefits under MCL 500.3101 *et seq.*, for which judgment or dismissal shall not be deemed to dispose of claims that have not accrued as of the date of the case evaluation hearing.

(2) If only a part of an action has been submitted to case evaluation pursuant to subrule (A)(3) and all of the parties accept the panel's evaluation, the court shall enter an order disposing of only those claims.

(3) In a case involving multiple parties, judgment, or dismissal as provided in subrule (1), shall be entered as to those opposing parties who have accepted the portions of the evaluation that apply to them.

(N) Proceedings After Rejection.

(1) If all or part of the evaluation of the case evaluation panel is rejected, the action proceeds to trial in the normal fashion.

(2) If a party's claim or defense was found to be frivolous under subrule (K)(4), that party may request that the court review the panel's finding by filing a motion within 14 days after the ADR clerk sends notice of the rejection of the case evaluation award.

  (a) The motion shall be submitted to the court on the case evaluation summaries and documents that were considered by the case evaluation panel. No other exhibits or testimony may be submitted. However, oral argument on the motion shall be permitted.

ATI-2587951v7

13-53846-tjt   Doc 12873-1   Filed 08/20/18   Entered 08/20/18 14:21:38   Page 182 of
182
13-53846-tjt   Doc 13073-1   Filed 12/24/18   Entered 12/24/18 10:17:00   Page 94 of
219

(b) After reviewing the materials submitted, the court shall determine whether the action or defense is frivolous.

(c) If the court agrees with the panel's determination, the provisions of subrule (N)(3) apply, except that the bond must be filed within 28 days after the entry of the court's order determining the action or defense to be frivolous.

(d) The judge who hears a motion under this subrule may not preside at a nonjury trial of the action.

(3) Except as provided in subrule (2), if a party's claim or defense was found to be frivolous under subrule (K)(4), that party shall post a cash or surety bond, pursuant to MCR 3.604, in the amount of $5,000 for each party against whom the action or defense was determined to be frivolous.

(a) The bond must be posted within 56 days after the case evaluation hearing or at least 14 days before trial, whichever is earlier.

(b) If a surety bond is filed, an insurance company that insures the defendant against a claim made in the action may not act as the surety.

(c) If the bond is not posted as required by this rule, the court shall dismiss a claim found to have been frivolous, and enter the default of a defendant whose defense was found to be frivolous. The action shall proceed to trial as to the remaining claims and parties, and as to the amount of damages against a defendant in default.

(d) If judgment is entered against the party who posted the bond, the bond shall be used to pay any costs awarded against that party by the court under any applicable law or court rule. MCR 3.604 applies to proceedings to enforce the bond.

(4) The ADR clerk shall place a copy of the case evaluation and the parties' acceptances and rejections in a sealed envelope for filing with the clerk of the court. In a nonjury action, the envelope may not be opened and the parties may not reveal the amount of the evaluation until the judge has rendered judgment.

(O) Rejecting Party's Liability for Costs.

(1) If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

(2) For the purpose of this rule "verdict" includes,

(a) a jury verdict,

(b) a judgment by the court after a nonjury trial,

(c) a judgment entered as a result of a ruling on a motion after rejection of the case evaluation.

ATI-2587951v7

13-53846-tjt   Doc 12873-1   Filed 08/20/18   Entered 08/20/18 14:21:38   Page 183 of
219
13-53846-tjt   Doc 13073   Filed 12/24/18   Entered 12/24/18 10:17:00   Page 95 of   183

(3) For the purpose of subrule (O)(1), a verdict must be adjusted by adding to it assessable costs and interest on the amount of the verdict from the filing of the complaint to the date of the case evaluation, and, if applicable, by making the adjustment of future damages as provided by MCL 600.6306. After this adjustment, the verdict is considered more favorable to a defendant if it is more than 10 percent below the evaluation, and is considered more favorable to the plaintiff if it is more than 10 percent above the evaluation. If the evaluation was zero, a verdict finding that a defendant is not liable to the plaintiff shall be deemed more favorable to the defendant.

(4) In cases involving multiple parties, the following rules apply:

(a) Except as provided in subrule (O)(4)(b), in determining whether the verdict is more favorable to a party than the case evaluation, the court shall consider only the amount of the evaluation and verdict as to the particular pair of parties, rather than the aggregate evaluation or verdict as to all parties. However, costs may not be imposed on a plaintiff who obtains an aggregate verdict more favorable to the plaintiff than the aggregate evaluation.

(b) If the verdict against more than one defendant is based on their joint and several liability, the plaintiff may not recover costs unless the verdict is more favorable to the plaintiff than the total case evaluation as to those defendants, and a defendant may not recover costs unless the verdict is more favorable to that defendant than the case evaluation as to that defendant.

(c) Except as provided by subrule (O)(10), in a personal injury action, for the purpose of subrule (O)(1), the verdict against a particular defendant shall not be adjusted by applying that defendant's proportion of fault as determined under MCL 600.6304(1)-(2).

(5) If the verdict awards equitable relief, costs may be awarded if the court determines that

(a) taking into account both monetary relief (adjusted as provided in subrule [O][3]) and equitable relief, the verdict is not more favorable to the rejecting party than the evaluation, or, in situations where both parties have rejected the evaluation, the verdict in favor of the party seeking costs is more favorable than the case evaluation, and

(b) it is fair to award costs under all of the circumstances.

(6) For the purpose of this rule, actual costs are

(a) those costs taxable in any civil action, and

(b) a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation.

For the purpose of determining taxable costs under this subrule and under MCR 2.625, the party entitled to recover actual costs under this rule shall be considered the prevailing party.

ATI-2587951v7

(7) Costs shall not be awarded if the case evaluation award was not unanimous. If case evaluation results in a nonunanimous award, a case may be ordered to a subsequent case evaluation hearing conducted without reference to the prior case evaluation award, or other alternative dispute resolution processes, at the expense of the parties, pursuant to MCR 2.410(C)(1).

(8) A request for costs under this subrule must be filed and served within 28 days after the entry of the judgment or entry of an order denying a timely motion for a new trial or to set aside the judgment.

(9) In an action under MCL 436.1801, if the plaintiff rejects the award against the minor or alleged intoxicated person, or is deemed to have rejected such an award under subrule (L)(3)(c), the court shall not award costs against the plaintiff in favor of the minor or alleged intoxicated person unless it finds that the rejection was not motivated by the need to comply with MCL 436.1801(6).

(10) For the purpose of subrule (O)(1), in an action filed on or after March 28, 1996, and based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, a verdict awarding damages shall be adjusted for relative fault as provided by MCL 600.6304.

(11) If the "verdict" is the result of a motion as provided by subrule (O)(2)(c), the court may, in the interest of justice, refuse to award actual costs.

## Rule 2.404 Selection of Case Evaluation Panels

(A) Case Evaluator Selection Plans.

(1) Requirement. Each trial court that submits cases to case evaluation under MCR 2.403 shall adopt by local administrative order a plan to maintain a list of persons available to serve as case evaluators and to assign case evaluators from the list to panels. The plan must be in writing and available to the public in the ADR clerk's office.

(2) Alternative Plans.

(a) A plan adopted by a district or probate court may use the list of case evaluators and appointment procedure of the circuit court for the circuit in which the court is located.

(b) Courts in adjoining circuits or districts may jointly adopt and administer a case evaluation plan.

(c) If it is not feasible for a court to adopt its own plan because of the low volume of cases to be submitted or because of inadequate numbers of available case evaluators, the court may enter into an agreement with a neighboring court to refer cases for case evaluation under the other court's system. The agreement may provide for payment by the referring court to cover the cost of administering case evaluation. However, fees and costs may not be assessed against the parties to actions evaluated except as provided by MCR 2.403.

(d) Other alternative plans must be submitted as local court rules under MCR 8.112(A).

ATI-2587951v7

(B) Lists of Case Evaluators.

(1) Application. An eligible person desiring to serve as a case evaluator may apply to the ADR clerk to be placed on the list of case evaluators. Application forms shall be available in the office of the ADR clerk. The form shall include an optional section identifying the applicant's gender and racial/ethnic background. The form shall include a certification that

(a) the case evaluator meets the requirements for service under the court's selection plan, and

(b) the case evaluator will not discriminate against parties, attorneys, or other case evaluators on the basis of race, ethnic origin, gender, or other protected personal characteristic.

(2) Eligibility. To be eligible to serve as a case evaluator, a person must meet the qualifications provided by this subrule.

(a) The applicant must have been a practicing lawyer for at least 5 years and be a member in good standing of the State Bar of Michigan. The plan may not require membership in any other organization as a qualification for service as a case evaluator.

(b) An applicant must reside, maintain an office, or have an active practice in the jurisdiction for which the list of case evaluators is compiled.

(c) An applicant must demonstrate that a substantial portion of the applicant's practice for the last 5 years has been devoted to civil litigation matters, including investigation, discovery, motion practice, case evaluation, settlement, trial preparation, and/or trial.

(d) If separate sublists are maintained for specific types of cases, the applicant must have had an active practice in the practice area for which the case evaluator is listed for at least the last 3 years.

If there are insufficient numbers of potential case evaluators meeting the qualifications stated in this rule, the plan may provide for consideration of alternative qualifications.

(3) Review of Applications. The plan shall provide for a person or committee to review applications annually, or more frequently if appropriate, and compile one or more lists of qualified case evaluators. Persons meeting the qualifications specified in this rule shall be placed on the list of approved case evaluators. Selections shall be made without regard to race, ethnic origin, or gender.

(a) If an individual performs this review function, the person must be an employee of the court.

(b) If a committee performs this review function, the following provisions apply.

(i) The committee must have at least three members.

(ii) The selection of committee members shall be designed to assure that the goals stated in subrule (D)(2) will be met.

ATI-2587951v7

13-53846-tjt   Doc 12873-1  Filed 08/20/18  Entered 08/20/18 14:20:38  Page 186 of
219
13-53846-tjt   Doc 13078-1  Filed 12/24/18  Entered 12/24/18 16:17:00  Page 93 of 61   186

(iii) A person may not serve on the committee more than 3 years in any 9 year period.

(c) Applicants who are not placed on the case evaluator list or lists shall be notified of that decision. The plan shall provide a procedure by which such an applicant may seek reconsideration of the decision by some other person or committee. The plan need not provide for a hearing of any kind as part of the reconsideration process. Documents considered in the initial review process shall be retained for at least the period of time during which the applicant can seek reconsideration of the original decision.

(4) Specialized Lists. If the number and qualifications of available case evaluators makes it practicable to do so, the ADR clerk shall maintain

(a) separate lists for various types of cases, and,

(b) where appropriate for the type of cases, separate sublists of case evaluators who primarily represent plaintiffs, primarily represent defendants, and neutral case evaluators whose practices are not identifiable as representing primarily plaintiffs or defendants.

(5) Reapplication. Persons shall be placed on the list of case evaluators for a fixed period of time, not to exceed seven years, and must reapply at the end of that time in the manner directed by the court.

(6) Availability of Lists. The list of case evaluators must be available to the public in the ADR clerk's office.

(7) Removal from List. The plan must include a procedure for removal from the list of case evaluators who have demonstrated incompetency, bias, made themselves consistently unavailable to serve as a case evaluator, or for other just cause.

(8) The court may require case evaluators to attend orientation or training sessions or provide written materials explaining the case evaluation process and the operation of the court's case evaluation program. However, case evaluators may not be charged any fees or costs for such programs or materials.

(C) Assignments to Panels.

(1) Method of Assignment. The ADR clerk shall assign case evaluators to panels in a random or rotating manner that assures as nearly as possible that each case evaluator on a list or sublist is assigned approximately the same number of cases over a period of time. If a substitute case evaluator must be assigned, the same or similar assignment procedure shall be used to select the substitute. The ADR clerk shall maintain records of service of case evaluators on panels and shall make those records available on request.

(2) Assignment from Sublists. If sublists of plaintiff, defense, and neutral case evaluators are maintained for a particular type of case, the panel shall include one case evaluator who primarily represents plaintiffs, one case evaluator who primarily represents defendants, and one neutral case evaluator. If a judge is assigned to a panel as permitted by MCR 2.403(D)(3), the judge shall serve as the neutral case evaluator if sublists are maintained for that class of cases.

(3) Special Panels. On stipulation of the parties, the court may appoint a panel selected by the parties. In such a case, the qualification requirements of subrule (B)(2) do not apply, and the parties may agree to modification of the procedures for conduct of case evaluation. Nothing in this rule or MCR 2.403 precludes parties from stipulating to other ADR procedures that may aid in
resolution of the case.

(D) Supervision of Selection Process.

(1) The chief judge shall exercise general supervision over the implementation of this rule and shall review the operation of the court's case evaluation plan at least annually to assure compliance with this rule. In the event of noncompliance, the court shall take such action as is needed. This action may include recruiting persons to serve as case evaluators or changing the court's case evaluation plan.

(2) In implementing the selection plan, the court, court employees, and attorneys involved in the procedure shall take all steps necessary to assure that as far as reasonably possible the list of case evaluators fairly reflects the racial, ethnic, and gender diversity of the members of the state bar in the jurisdiction for which the list is compiled who are eligible to serve as case evaluators.

# ANNEX III

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

-------------------------------------------------------x
                                            :
In re                                       :          Chapter 9
                                            :
CITY OF DETROIT, MICHIGAN,                  :          Case No. 13-53846
                                            :
                        Debtor.             :          Hon. Steven W. Rhodes
                                            :
                                            :
-------------------------------------------------------x

## <u>CASE EVALUATION NOTICE</u>

Service Date:

Claimant(s):

Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

      By this Case Evaluation Notice, the City of Detroit (the "<u>City</u>") hereby submits the above-identified claim(s) (the "<u>Designated Claim(s)</u>") in the City's chapter 9 case to **case evaluation**, pursuant to the procedures (the "<u>ADR Procedures</u>") established by the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims, entered by the United States Bankruptcy Court for the Eastern District of Michigan on [_____], 2013. The City has been unable to resolve your Designated Claim(s) on a consensual basis through the offer exchange component of the ADR Procedures. THEREFORE, YOUR DESIGNATED CLAIM(S) WILL PROCEED TO CASE EVALUATION, PURSUANT TO THE ADR PROCEDURES.

      In accordance with the ADR Procedures, a copy of this Case Evaluation Notice has been served upon the Clerk (the "<u>ADR Clerk</u>") of the

ATI-2587951v7

13-53846-tjt   Doc 12873-1   Filed 02/20/18   Entered 02/20/18 14:20:38   Page 190 of
13-53846-tjt   Doc 12873   Filed 12/24/13   Entered 12/24/13 10:17:00   Page 97 of 61
219
190

Wayne County Mediation Tribunal Association (the "MTA").  As described more fully in the ADR Procedures, the ADR Clerk will select a panel of three evaluators to conduct the case evaluation, set a time and place for the case evaluation hearing and provide you with at least 42 days notice of the hearing.  Adjournments of the case evaluation hearing may be granted only for good cause. The ADR Procedures also require you and the City to share the administrative fees and costs of case evaluation charged by the mediation.

A complete copy of the ADR Procedures is enclosed for your reference.  Please refer to Section II.B of the ADR Procedures, concerning **case evaluation**.

[Signature of the City's Authorized Person]

-2-

ATI-2587951v7
13-53846-tjt    Doc 12873-1    Filed 02/24/18    Entered 02/24/18 10:14:20    Page 191 of 219
13-53846-tjt    Doc 13078-1    Filed 04/20/18    Entered 04/20/18 14:31:38    Page 98 of 160    191

# **ANNEX IV**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
-------------------------------------------------x
                                        :
In re                                   :        Chapter 9
                                        :
CITY OF DETROIT, MICHIGAN,              :        Case No. 13-53846
                                        :
                    Debtor.             :        Hon. Steven W. Rhodes
                                        :
                                        :
-------------------------------------------------x
```

## ARBITRATION NOTICE

Service Date:

Claimant(s):

Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

   By this Arbitration Notice, the City of Detroit (the "<u>City</u>") hereby submits the above-identified claim(s) (the "<u>Designated Claim(s)</u>") in the City's chapter 9 case to **binding arbitration**, pursuant to the procedures (the "<u>ADR Procedures</u>") established by the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims, entered by the United States Bankruptcy Court for the Eastern District of Michigan on [_____], 2013. The City has been unable to resolve your Designated Claim(s) on a consensual basis through the offer exchange component of the ADR Procedures or through case evaluation.  THE CITY **[PREVIOUSLY HAS CONSENTED]/[HEREBY CONSENTS]** TO BINDING ARBITRATION OF THE DESIGNATED CLAIM(S).  YOU PREVIOUSLY HAVE CONSENTED TO BINDING ARBITRATION.  THEREFORE, YOUR DESIGNATED CLAIM(S) WILL

PROCEED TO BINDING ARBITRATION, PURSUANT TO THE ADR PROCEDURES.

       In accordance with the ADR Procedures, a copy of this Arbitration Notice has been served upon the Clerk (the "<u>ADR Clerk</u>") of the Wayne County Mediation Tribunal Association (the "<u>MTA</u>").  As described more fully in the ADR Procedures, the ADR Clerk will select an arbitrator to conduct the arbitration hearing and provide notice to you and the arbitrator of his or her appointment. All arbitration hearings are scheduled by the arbitrator, in consultation with the parties and are conducted in Detroit, Michigan unless otherwise agreed by all of the parties and the arbitrator.  Generally, the arbitration hearing must be held no later than 112 days after the date of appointment of the arbitrator.  The ADR Procedures also require you and the City to share the administrative fees and costs of arbitration charged by the MTA.

       A complete copy of the ADR Procedures is enclosed for your reference.  Please refer to Section II.C of the ADR Procedures, concerning **binding arbitration**.

                            [Signature of the City's Authorized Person]

B10 (Official Form 10) (04/13) (Modified)

| UNITED STATES BANKRUPTCY COURT    EASTERN DISTRICT of MICHIGAN | CHAPTER 9 PROOF OF CLAIM |
|---|---|

**Name of Debtor:** City of Detroit, Michigan    **Case Number:** 13-53846

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
EDITH WOODBERRY

**FILED**

**FEB 2 1 2014**

US Bankruptcy Court
MI Eastern District

**Name and address where notices should be sent:**
EDITH WOODBERRY
803 GLADSTONE
DET MI 48202

**Telephone number:** 313 963 8677    **email:** NA

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
(If known)

Filed on: _____

**Name and address where payment should be sent (if different from above):**

**Telephone number:**    **email:**

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**RECEIVED**

**FEB 2 4 2014**

KURTZMAN CARSON CONSULTANTS

**1. Amount of Claim as of Date Case Filed:** $ 3,000,000.00

If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.
☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** CITY TOOK REAL PROPERTY WITHOUT PAYING JUST COMPENSATION
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** NA

**3a. Debtor may have scheduled account as:** NA
(See instruction #3a)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:** $ —

**Nature of property or right of setoff:** ☒ Real Estate ☐ Motor Vehicle ☐ Other
**Describe:**

**Basis for perfection:** EMINENT DOMAIN

**Value of Property:** $ 3,000,000.00

**Amount of Secured Claim:** $ 3,000,000.00

**Annual Interest Rate (when case was filed)** _____% ☐ Fixed or ☐ Variable

**Amount Unsecured:** $ — 0 —

**5. Amount of Claim Entitled to Priority as an Administrative Expense under 11 U.S.C. §§ 503(b)(9) and 507(a)(2).** $ NA

**5b. Amount of Claim Otherwise Entitled to Priority.** Specify Applicable Section of 11 U.S.C. § US Const 5th Am  $ 3,000,000.00

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)* DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction # 8)
Check the appropriate box.

☒ I am the creditor.  ☐ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

**Print Name:** EDITH WOODBERRY
**Title:** NA
**Company:**
**Address and telephone number (if different from notice address above):**

*Edith Woodberry*    (Signature)    (Date)

**Telephone number:**    **email:**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
-----------------------------------------------------x
                                    :
In re                               : Chapter 9
                                    :
CITY OF DETROIT, MICHIGAN,          : Case No. 13-53846
                                    :
                     Debtor.        : Hon. Steven W. Rhodes
                                    :
                                    :
-----------------------------------------------------x
```

## ORDER GRANTING *EX PARTE* EMERGENCY MOTION OF DEBTOR FOR AN ORDER EXTENDING THE DEADLINE FOR FILING THE FINAL DISCLOSURE STATEMENT SET FORTH IN THE COURT'S FOURTH AMENDED ORDER ESTABLISHING PROCEDURES, DEADLINES AND HEARING DATES RELATING TO THE DEBTOR'S PLAN OF ADJUSTMENT [DOCKET NO. 4202]

This matter coming before the Court on the *Ex Parte* Emergency Motion of Debtor for an Order Extending the Deadline for Filing the Final Disclosure Statement Set Forth in the Court's Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtors' Plan of Adjustment [Docket No. 4202] (the "Motion"),[1] filed by the City of Detroit, Michigan (the "City"); the Court having reviewed the Motion; the Court finding that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

---

[1]   Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and

(c) good cause for the relief requested in the Motion has been established;

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED.

2.    The deadline for the City to file its final Disclosure Statement is

hereby extended until 12:00 p.m. (Eastern Time) on May 5, 2014.

3.    All other provisions of the Court's Fourth Amended Order

Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtors'

Plan of Adjustment (Docket No. 4202) remain in full force and effect.

.

**Signed on May 02, 2014**

_____/s/ Steven Rhodes_____
**Steven Rhodes**
**United States Bankruptcy Judge**

CLI-2209386v1
-2-
13-53846-tjt  Doc 12858-1  Filed 09/02/14  Entered 09/02/14 17:16:38  Page 197 of
13-53846-tjt  Doc 4358-1  Filed 09/02/14  Entered 09/02/14 17:16:38  Page 197 of
219
196

# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DIVISION OF MICHIGAN
## SOUTHERN DIVISION

```
_____ x
                                          :    Chapter 9
In re                                     :
                                          :    Case No. 13-53846
CITY OF DETROIT, MICHIGAN                 :
                                          :    Hon. Steven W. Rhodes
                         Debtor           :
_____ x
```

2014 JUN 18 P 1:24
U.S. BANKRUPTCY CO. MICHIGAN-DETROIT
FILED

## WRITTEN RESPONSE TO CITY OF DETROIT OBJECTION
## CLAIM NUMBER 2846 FILED BY EDITH WOODBERRY

Edith Woodberry, appearing in pro per, responds to the City of Detroit objection to claim number 2846 (the "Claim") as follows.

1.     On February 21, 2014, Edith Woodberry submitted the "Claim" on form B10 (Official Form 10) (04/13) (Modified) Claim Number 2846 with a copy of a lien in the amount of three million dollars she filed with the Wayne County, Michigan Register of Deeds attached.

2.     The lien filed with the Register of Deeds identified the Subject Property, which the City took, via eminent domain, without paying just compensation to owner Edith Woodberry.

3.     The Subject Property is an 18 unit apartment building with three commercial units located at 445 E Fisher Freeway Detroit, MI and 2457 Beaubien Detroit, MI.

4.     The Fifth Amendment to the United States Constitution mandates the payment of just compensation when government takes private property.

5.     The City of Detroit, in its objection, does not deny that it took the Subject Property without paying "just compensation."

6.     It is unconscionable for the City of Detroit to object to the Proof of Claim for failure to comply with Rule 3001(f) where Claimant used the form supplied by the City of Detroit. The "Claim" was submitted on the Proof of Claim form provided by the City of Detroit and approved by the Bankruptcy Court. Claimant filled out the Proof of Claim form in its entirety.

13-53846-tjt Doc 12878-1 Filed 09/20/18 Entered 09/20/18 14:21:38 Page 198 of 197
13-53846-swr Doc 5470 Filed 06/18/14 Entered 06/18/14 13:47:58 Page 1 of 2
219

7.     Claimant's Proof of Claim sufficiently apprised the City of Detroit of the nature of the "Claim" and the parties involved. The City of Detroit, with minimal effort, can determine the validity of the "Claim" with the information provided in the Proof of Claim.

8.     It is fraud (dolus) for the City to object to the "Claim" where evidence corroborating the "Claim" is in the City's sole possession and the City requested and was granted an Order denying Edith Woodberry's motion to subpoena that evidence and certain City employees, etc.

9.     The City of Detroit has not provided one iota of evidence challenging the validity of the "Claim", which the City of Detroit admits it must do in order to shift the burden of persuasion from the City of Detroit to Claimant. See Paragraph 19 of the City of Detroit Objection.

10.    If the burden of persuasion somehow shifted to Claimant, due process mandates that this Court must allow Claimant opportunity to meet the burden of persuasion.

11.    The valuation of the Subject Property submitted by Claimant is sufficient. According MCL 213.61(2) Claimant is permitted to testify to the value of Claimant's property.

12.    Edith Woodberry seeks to preserve her right to adjudicate the "Claim" post Chapter 9 bankruptcy proceedings.

13.    Oral argument is not requested.

For the reasons stated above, Claimant, Edith Woodberry, appearing in pro per, ask this Court to deny the relief requested by the City of Detroit and enter an order preserving Claim Number 2846.


Respectfully submitted,

_Edith Woodberry_


CERTIFICATE OF SERVICE

Copy of written response to Debtor's Objection was hand delivered to John H Simon Esq, City of Detroit at his place of business on June 18, 2014.

_Edith Woodberry_

## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

------------------------------------------------------- x

In re

CITY OF DETROIT, MICHIGAN,

                 Debtor

------------------------------------------------------- x

:   Chapter 9
:
:   Case No. 13-53846
:
:   Hon. Steven W. Rhodes
:
:

## DEBTOR'S OMNIBUS REPLY TO RESPONSES TO OBJECTIONS TO CLAIM NUMBERS 3278, 3271, 3006, 2905, 2902, 2889, 2888, 2883, 2880 AND 2846 FILED BY WOODBERRY CLAIMANTS

The Debtor, the City of Detroit (the "<u>City</u>"), by and through its undersigned counsel, for its omnibus reply (the "<u>Reply</u>") to the responses (the "<u>Responses</u>") to the City's objection (the "<u>Objections</u>") to claim numbers 3278, 3271, 3006, 2905, 2902, 2889, 2888, 2883, 2880 and 2846 (collectively the "<u>Woodberry Claims</u>") filed by each claimant (collectively the "<u>Woodberry Claimants</u>"), respectfully states as follows:

## <u>INTRODUCTION</u>

Various members of the Woodberry family filed 10 proofs of claim against the City related to an eminent domain proceeding. The Responses filed identified the property as being located at 2457 Beaubien, Detroit, Michigan (the "<u>Property</u>"). The Woodberry Claims total $12 million dollars. However, what the Woodberry Claims and the Responses fail to mention is that the Property was the subject of a condemnation action which was resolved in 2009 by the Wayne County Circuit Court. The Wayne County Circuit Court awarded the City the Property and the defendants in that actions, including all of the Woodberry Claimants, were paid compensation pursuant to the Circuit Court's order. This matter has been long since resolved, and the

<div align="center">1</div>

4823-0150-5563.1

13-53846-tjt Doc 12870-1 Filed 08/00/18 Entered 08/00/18 04:61:38 Page 200 of
219
13-53846-tjt Doc 35061 Filed 08/20/14 Entered 08/20/14 20:05:23 Page 175 of 199

Woodberry Claims should be disallowed and expunged.

## BACKGROUND

1.     On February 21, 2014, the Woodberry Claimants filed each of the Woodberry Claims.  Edith Woodberry filed and signed her own claim.  Crantson Woodberry, an attorney licensed by the state of Michigan, filed his own claim and signed the proofs of claim for all the other Woodberry Claimants as their authorized agent.

2.     On May 15, 2014, the City filed the Objections, asserting that the Woodberry Claims, as filed, did not meet the requirements of Fed. R. Bankr. P. 3001 [Dkt. Nos. 4843, 4841, 4840, 4839, 4838, 4837, 4836, 4835, 4834, and 4859].  Among other things, the City argued that the Woodberry Claimants had not identified the property at issue, and had provided no evidence to support the valuation of the Woodberry Claims.

3.     On June 18, 2014, The Woodberry Claimants filed the Responses.  The Responses identified the Property as 2457 Beaubien, Detroit, Michigan.

4.     The Responses continue to assert that the City owes the Woodberry Claimants money for the taking of the Property by eminent domain.

5.     The Property was the subject of a condemnation action filed in 2005 in the Wayne County Circuit Court, Case No. 05-522129-CC.  Each of the Woodberry Claimants was a named defendant.  On April 28 2009, the Wayne County Circuit Court entered a judgment in favor of the City, confirming that the title passed to the City effective July 27, 2005, and ordering the payment of just compensation to the defendants (the "2009 Order").  The 2009 Order is attached hereto as Exhibit 1.

6.     In the 2009 Order, the Wayne County Circuit Court ordered that the just compensation for the Property was $240,000, minus amounts owed by the defendants to the City for rent and water services, as well as previously paid compensation amounts.  2009 Order, p. 2.

2

4823-0150-5563.1

13-53846-tjt   Doc 12870-1   Filed 08/20/18   Entered 08/20/18 20:48:38   Page 201 of 219
13-53846-tjt   Doc 13505   Filed 09/20/14   Entered 09/20/14 20:05:23   Page 2 of 5     200

7. The 2009 Order also provides that "this Judgment shall be with prejudice to any further assertion of claims by Defendants against the City arising directly or indirectly, in whole or in part, from the taking of the Subject Property." 2009 Order, p. 3

8. None of the Defendants appealed the 2009 Order.

9. Edith Woodberry received $83,294.72 of compensation prior to the 2009 Order and signed an acknowledgement to that effect (the "Acknowledgment"). The Acknowledgement is attached hereto as Exhibit 2.

10. Certain other defendants also received compensation totaling $9,000.00. These defendants included Happy Woodberry, Phoebe Woodberry, Adam Woodberry, Cavel Woodberry, Penny Mabin, and Cranston Woodberry, as well as other defendants who have not filed claims in the bankruptcy.

11. In 2012, Edith Woodberry filed a *lis pendens* against the Property, claiming that the Property's value was $2 million. The notice of lis pendens is attached hereto as Exhibit 3.

12. Edith Woodberry filed a proof of claim in the amount of $3 million, and each of the other Woodberry Claimants filed their claims for $1 million, totaling $12 million.

## ARGUMENT

13. The Woodberry Claims should be disallowed and expunged because they are frivolous and constitute an abuse of the bankruptcy process.

14. The Property was the subject of condemnation proceedings which were resolved nearly five years ago. The Wayne County Circuit Court ordered the Property turned over to the City and that compensation be paid. The City complied with the 2009 Order.

15. The 2009 Order provides that it is <u>with prejudice</u> as to any other claims against the city related to the condemnation of the Property. Any further attempt to seek additional

3

compensation for the Property is barred under the 2009 Order.

16. Furthermore, none of the Defendants appealed the 2009 Order. They may not now come to this Court, five years later, and seek an end-run around an order they chose not to appeal when they had the opportunity to do so.

17. The Woodberry Claims are also barred under res judicata. The elements of res judicata are: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies;' (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006).

18. Here, there was a final decision by a court of competent jurisdiction, and the Woodberry Claims are a subsequent action between the same parties. The issue of the value of the Property was litigated and determined, and there is an identity of the causes of action because the two actions would be sustained by the same evidence. Therefore, the Woodberry Claims are barred.

19. The Woodberry Claims, filed five years after the Wayne County Circuit Court resolved the condemnation matter are nothing more than an attempt to re-litigate issues which have long been determined. This Court should not countenance such an abuse of the bankruptcy process. The Woodberry Claims should be disallowed and expunged by this Court.

WHEREFORE, the City respectfully requests that this Court enter an order disallowing and expunging the Claim and the Response, and granting the City such other and further relief as this Court may deem just and proper.

4

4823-0150-5563.1
13-53846-tjt Doc 12870-1 Filed 08/20/18 Entered 08/20/18 04:01:38 Page 203 of 219
13-53846-tjt Doc 3505 Filed 06/20/14 Entered 06/20/14 20:03:23 Page 4 of 5
202

Dated: June 20, 2014

FOLEY & LARDNER LLP

By: /s/ Tamar N. Dolcourt
John A. Simon (P61866)
Tamar N. Dolcourt (P73425)
500 Woodward Ave., Ste. 2700
Detroit, MI 48226
313.234.7100
jsimon@foley.com
tdolcourt@foley.com
*Counsel for the Debtor, City of Detroit,*
*Michigan*

4823-0150-5563.1
13-53846-tjt Doc 12870-1 Filed 08/00/18 Entered 08/00/18 04:21:38 Page 204 of
13-53846-tjt Doc 5505 Filed 06/20/14 Entered 06/20/14 20:03:23 Page 5 of 5 203
219

# EXHIBIT 1

13-53846-tjt   Doc 13375-1   Filed 06/20/18   Entered 06/20/18 14:01:28   Page 205 of
219
13-53846-tjt   Doc 3303-1   Filed 03/20/14   Entered 03/20/14 20:03:21   Page 1 of   204

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

CITY OF DETROIT, a Michigan municipal
corporation,

                      Plaintiff,             CASE NO. 05-522129-CC

v.                           HON. DAPHNE MEANS CURTIS

JONATHAN SOBELOFF, Trustee under the Will
of Benjamin Rich, deceased, EDITH WOODBERRY;
the ESTATE OF JAMES FULLER, deceased,
DELORES WILLIAMS, WILLIE FULLER and wife,
if any, PATRICIA LOVE a/k/a AUDREY LOVE,
FRANKLIN FULLER and wife, if any, WAYNE
FULLER and wife, if any, DOUGLAS FULLER and
wife, if any, HAPPY WOODBERRY, CRAIG JONES
and wife, if any, MICHAEL JONES and wife, if any,
PHEBE WOODBERRY, ADAM WOODBERRY and
wife, if any, CAVEL WOODBERRY and wife, if any,
PENNY MABIN, CRANSTON WOODBERRY, Esq.,
CRANSTON WOODBERRY and wife, if any, ROZLYN
HARRISON, WARREN GAITHER and wife, if any,
DOROTHY ROBINSON, ROGER WOODBERRY and
wife, if any, LAVAN WOODBERRY and wife, if any,
or the JOHN DOE or JANE DOE unknown,

                      Defendants.

05-522129-CC   7/27/2005
JDG DAPHNE MEANS CURTIS
DETROIT CITY OF
VE
SOBELOFF JONATHAN

FILED
CATHY M. GARRETT
WAYNE COUNTY CLERK
APR 2 8 2009
BY Cheryl Braceml

WILLIAMS ACOSTA, PLLC
ATTORNEYS AND COUNSELORS
535 GRISWOLD STREET, SUITE 1000
DETROIT, MI 48226-3692

Bernard J. Youngblood
Wayne County Register of Deeds
May 05, 2009 10:23 AM
Liber 47893 Page 863-886
#209188465 JDG FEE: $94.00

WILLIAMS ACOSTA, PLLC
Avery K. Williams (P34731)
Krystal N. Lyons (P61982)
Co-Counsel for Plaintiff
535 Griswold Street, Suite 1000
Detroit, Michigan 48226
(313) 963-3873

EDITH WOODBERRY
In Pro Per
Defendant
445 E. Fisher Freeway
Detroit, Michigan 48201

JOHN M. NADER (P41610)
City of Detroit Law Department
Co-Counsel for Plaintiff
660 Woodward Avenue, Suite 1650
Detroit, Michigan 48226
(313) 237-3034

CRANSTON WOODBERRY (P44755)
Attorney for Defendants
2457 Beaubien Street
Detroit, Michigan 48201
(313) 575-9774

## JUDGMENT

At a session of said Court held in the City of Detroit, County of
Wayne, State of Michigan on **APR 2 8 2009**

PRESENT: HON. **HONORABLE DAPHNE MEANS CURTIS**
                   Circuit Court Judge

This matter having come before the Court upon the City of Detroit's ("the City")

Motion for Summary Disposition; oral argument having been heard; the Court being fully

advised in the premises and having granted the City's Motion for Summary Disposition and having dismissed all of Defendants Edith Woodberry's, Craig Jones', Michael Jones', Happy Woodberry's, Phoebe Woodberry's, Adam Woodberry's, Cavel Woodberry's, Penny Mabin's, Cranston Woodberry's, Rozlyn Harrison's, Roger Woodberry's and Lavan Woodberry's ("Defendants") counterclaims in their entirety (*see* Exhibit 1 - Order Regarding City of Detroit's Motion for Summary Disposition) and having denied Defendants' Motion for Reconsideration (*see* Exhibit 2);

**IT IS HEREBY ORDERED AND ADJUDGED** that the City shall pay to Defendants just compensation for the property located at 2457 Beaubien Street, in Detroit, Michigan 48201 ("Subject Property") in the amount of Two Hundred Forty Thousand ($240,000.00) Dollars (the "Judgment Amount"), less the following amounts which shall be deducted from the Judgment Amount:

(1) just compensation previously paid to Defendant Edith Woodberry in the amount of $83,294.72 (*see* Exhibit 3);

(2) just compensation previously paid to Defendants Craig Jones, Michael Jones, Happy Woodberry, Phoebe Woodberry, Adam Woodberry, Cavel Woodberry, Penny Mabin, Cranston Woodberry, Rozlyn Harrison's and Roger Woodberry in the amount of $9,000.00 (*see* Exhibit 4);

(3) rent due the City from Defendants in the amount of $21,600.00 plus an additional $1,350.00 per month for each month after February 28, 2009 that Defendants hold over and retain possession of and part of the Subject Property, in accordance with the Court's October 2, 2008 Order Regarding City of Detroit's Motion to Deduct Rent, Water Bill and Costs Associated with Eviction from Defendants' Estimated Just Compensation (*see* Exhibit 5);

(4) $19,688.69 for water and sewer services provided to Defendants by the City's Water and Sewerage Department, in accordance with the Court's October 2, 2008 Order Regarding City of Detroit's Motion to

WILLIAMS ACOSTA, PLLC
ATTORNEYS AND COUNSELORS
535 GRISWOLD STREET, SUITE 1000
DETROIT, MI 48226-3692

2

Deduct Rent, Water Bill and Costs Associated with Eviction from Defendants' Estimated Just Compensation (*see* Exhibit 5);

(5)    any and all costs incurred by the City in connection with its having to engage the Wayne County Sheriff and/or its agents to forcibly remove and/or evict Defendants and their possessions from the Subject Property in accordance with the Court's October 2, 2008 Order of Eviction and the Court's October 2, 2008 Order Regarding City of Detroit's Motion to Deduct Rent, Water Bill and Costs Associated with Eviction from Defendants' Estimated Just Compensation (*see* Exhibits 5 and 6); and

(6)    any taxes, assessments or tax liens that are due and/or delinquent, subject only to the appropriate proration based upon the date of entry of this Order and Defendants' final surrender of physical possession of the Subject Property to the City ;

**IT IS FURTHER ORDERED AND ADJUDGED** that title to the Subject Property, which is more fully described in the attached Exhibit 7, passed to the City by operation of law effective July 27, 2005, the date the City filed its Complaint to acquire the Subject Property by eminent domain.

**IT IS FURTHER ORDERED AND ADJUDGED** that a copy of this Judgment may be recorded with the Wayne County Register of Deeds and recording said Judgment shall be in lieu of a Deed of Conveyance;

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendants shall immediately surrender possession of the Subject Property to the City;

**IT IS FURTHER ORDERED AND ADJUDGED** that this Judgment shall be with prejudice to any further assertion of claims by Defendants against the City arising directly or indirectly, in whole or in part, from the taking of the Subject Property; and

**IT IS FURTHER ORDERED AND ADJUDGED** that the Judgment Amount includes any and all payments due to Defendants for real estate, fixtures, business

WILLIAMS ACOSTA, PLLC
ATTORNEYS AND COUNSELORS
535 GRISWOLD STREET, SUITE 1000
DETROIT, MI 48226-3692

3

interruption, going concerns, loss of rents, just compensation, leasehold interests, relocation expenses and any other costs, expenses, compensation or damages, attorneys' fees, expert fees, witness fees, and appraisal costs, if any, real or imagined, that are attributable, in whole or in part, to this taking.

Pursuant to MCR 2.602(A)(3), this Judgment does not resolve the last of any claims and it does not close this case.

**HONORABLE DAPHNE MEANS CURTIS**

_____
CIRCUIT JUDGE

A TRUE COPY
CATHY M. GARRETT
WAYNE COUNTY CLERK
DEPUTY CLERK

WILLIAMS ACOSTA, PLLC
ATTORNEYS AND COUNSELORS
535 GRISWOLD STREET, SUITE 1000
DETROIT, MI 46226-3692

S:\Brush Park - 2410\123 - Sobeloff\pleadings\Judgment 1-27-09.doc

No. **A** 46926

E-314 BK.

STATE OF MICHIGAN,
County of Wayne } ss.



### CERTIFIED COPY —"LAW"

I, CATHY M. GARRETT, Clerk of Wayne County, and Clerk of the Circuit Court for the County of Wayne, do hereby certify that the above and the foregoing is a true and correct copy of _____ Judgment _____

_____

entered in the above entitled cause by said Court, as appears of record in my office. That I have compared the same with the original, and it is a true transcript therefrom, and of the whole thereof.

In Testimony Whereof, I have hereunto set my hand and affixed the seal of said Court and County, at Detroit, this day of _____ A.D. 20 _____

CATHY M. GARRETT, Clerk

Fee, $ _____ _____, Deputy Clerk

# EXHIBIT 2

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

CITY OF DETROIT, a Michigan
Municipal Corporation,

                   Plaintiff,

vs.

JONATHAN SOBELOFF, Trustee under the
will of Benjamin Rich, deceased; EDITH
WOODBERRY; and JAMES FULLER, and
wife, if any;

                   Defendants.

C. A. No.   00-001737-CC

Hon. Isidore B. Torres

Parcel 123

---

JAMES C. COBB, JR., P.C.
JAMES C. COBB, JR., (P23139)
Attorney for Plaintiff
615 Griswold, Suite 1415
Detroit, Michigan 48226
(313) 961-3433

EDITH WOODBERRY
Defendant in Propia Persona
445 E. Fisher Freeway
Detroit, Michigan 48201
(313) 963-8677

---

ORLANDO AVANT (P56341)
ORLANDO AVANT & ASSOCIATES
Attorney for Defendant Fuller
24361 Greenfield, Suite 206
Southfield, Michigan 48075
(248) 552-0757

---

## ACKNOWLEDGMENT OF RECEIPT OF

## CASH PAYMENT OF ESTIMATED JUST COMPENSATION



EXHIBIT
3

I, EDITH WOODBERRY, hereby acknowledge receipt of the sum of EIGHTY

SEVEN THOUSAND, TWO HUNDRED AND NINETY FOUR AND 72/100 ($87,294.72)

DOLLARS in cash paid to me by the City of Detroit in the courtroom of Judge Michael F.

Sapala, 1701 Coleman A. Young Municipal Center, Detroit, Michigan, on August 14,

2003.

I further acknowledge that the above sum is being paid to me by the City of

Detroit in cash upon order of the Court as payment in full of my share of the estimated

just compensation (as amended) for the taking of the subject property in this case,
*Plaintiff, City of Detroit's*

above-captioned.

_Edith Woodberry_
EDITH WOODBERRY


Dated:       August 14, 2003

# EXHIBIT 3

13-53846-tif Doc 13878-1 Filed 06/20/18 Entered 06/20/18 14:01:28 Page 214 of 219
13-53846-tif Doc 5303-3 Filed 06/20/14 Entered 06/20/14 20:05:21 Page 1 of 2 213
219

CITY OF DETROIT, a Municipal Corporation,

        Plaintiff

-vs-

EDITH WOODBERRY, et al

        Defendant

                        /

Case No. 05-522129-CC

Bernard J. Youngblood
Wayne County Register of Deeds
March 15, 2012 09:16 AM
Inst:2012060777 LP Pages:1
Liber:49638 Page:1083

## LIS PENDENS

Notice is hereby given that City of Detroit CONDEMNATION proceedings are pending in the Wayne County Circuit Court, **Case No. 05-522129-CC. The City of Detroit, using its POWER of EMMINET DOMAIN** filed the CONDEMNATION COMPLAINT at bar, to "take" Defendant Edith Woodberry's fee simple ownership interest in an 18 unit apartment building located at 2457 Beaubien Street (aka 445 Fisher Freeway Drive, Detroit Michigan, 48201. The property's best use fair market value is two million dollars ($2,000,000.00). The Wayne County Circuit Court lacked in personam jurisdiction over defendant Edith Woodberry at the commencement of said Condemnation proceedings and hereto-thereafter. The City of Detroit has not paid Defendant Edith Woodberry just Compensation to date. The Legal description of Subject Property (Parcel 123) is as follows:

        **CITY of DETROIT**
        Lots 10 and 11, except the west of 6 feet for ally,
        Crane and Wesson's Plat, according to the recorded
        Plat thereof, as recorded in Liber 37 of Deeds, Page
        488, Wayne County Records. Parcel 123

        Property ID No: 01003770-1

        Commonly known as 2457 Beaubien Street

FILED March 14, 2012

                        *Edith Woodberry*
                        Edith Woodberry

Subscribed and sworn to before me
on this 14 day of March, 2012.

Notary Public – Acting in Wayne County

My commission on: 10|15|2012

Drafted by Edith Woodberry
Please return to Edith Woodberry, 803 Gladstone, Detroit MI 48202.
Refer any phone inquiries to Edith Woodberry, Telephone: 313.963.8677

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                          Chapter 9
City of Detroit, Michigan,                      Case No. 13-53846
      Debtor.                       Hon. Steven W. Rhodes
_____/

### Order Regarding Objections to Claims Numbers
### 2846, 2880, 2883, 2888, 2889, 2902, 2905, 3006, 3271 and 3278

For the reasons stated on the record in open Court on June 25, 2014, it is hereby ordered that the City's objections to claims numbers 2846, 2880, 2883, 2888, 2889, 2902, 2905, 3006, 3271 and 3278 are overruled without prejudice. (Dkt. Nos. 4834, 4838, 4836, 4841, 4837, 4859, 4839, 4840, 4843, and 4835)

It is further ordered that until the further order of the Court, these claims are deemed contingent and unliquidated, and for balloting purposes are estimated at $0.

It is further ordered that the Court abstains from fixing these claims in favor of the state court proceeding in which these claims are pending.

.

**Signed on June 25, 2014**

                            **/s/ Steven Rhodes**
                            **Steven Rhodes**
                            **United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

```
------------------------------------------------- X
                                                   :     Chapter 9
IN RE                                              :
                                                   :     Case No. 13-53846
CITY OF DETROIT, MICHIGAN,                         :
                                                   :     Hon. Steven W. Rhodes
                         DEBTOR                     :
------------------------------------------------- X
```

## ORDER PURSUANT TO 11 U.S.C. § 105(a) AND FED. R. BANKR. P. 3007
## APPROVING CLAIM OBJECTION PROCEDURES

Upon the Motion, dated June 10, 2014 (the "Motion"),[1] of the City of Detroit,

Michigan (the "City"), pursuant to section 105(a) of title 11, United States Code (the "Bankruptcy

Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

requesting approval of certain claim objection procedures intended to streamline the claims process

and conserve the City's resources, all as more fully described in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§

157 and 1334; and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the Motion having been

provided, and it appearing that no other or further notice need be provided; upon resolution of the

Objection to the Motion filed by the United States of America, and the Concurrence in the

Objection filed by the Equal Employment Opportunity Commission, and a hearing having been

held to consider the relief requested in the Motion (the "Hearing") or no Hearing being required;

and upon the record of the Hearing and all of the proceedings had before the Court; and the Court

having found and determined that the relief sought in the Motion is in the best interest of the

City, its creditors, and all parties in interest, and that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the Claim Objection Procedures set forth in the Motion are approved as provided herein; and it is further;

ORDERED that, notwithstanding anything to the contrary in Bankruptcy Rule 3007, the City, and other parties in interest, in addition to those grounds set forth in Bankruptcy Rule 3007(d), are authorized to file Omnibus Objections to claims seeking reduction, reclassification, or disallowance of claims on one or more of the following grounds (the "Additional Permitted Grounds"):

(a)     the amount claimed contradicts the City's books and records;

(b)     the claims were incorrectly classified;

(c)     the claims do not identify a valid basis for any liability of the City;

(d)     the claims do not include sufficient documentation to ascertain the validity of such claim or fail to specify the asserted claim amount (other than "unliquidated"), to the extent not already covered by Bankruptcy Rule 3007(d)(6);

(e)     the claims have been addressed by the Plan or otherwise are not subject to the claims process in this case

(f)     the claims have been settled, waived or withdrawn pursuant to an agreement with the City;

(g)     the claims are objectionable under section 502(e)(1) of the Bankruptcy Code; and

(h)     the claims are objectionable under section 502(d) of the Bankruptcy Code; and it is further

ORDERED that the City is authorized to file Omnibus Objections to no more than 100 claims at a time on the Additional Permitted Grounds; and it is further

ORDERED that, except as expressly provided herein, the City shall comply with the requirements for Omnibus Objections set forth in Bankruptcy Rule 3007(e), except that in the

4819-2298-1660.1
13-53846-tjt   Doc 12872-1   Filed 08/30/18   Entered 08/30/18 14:21:38   Page 218 of
13-53846-tjt   Doc 3072   Filed 07/09/14   Entered 07/09/14 11:46:58   Page 218 of
219                                                                                                    217

event the City objects to a claim of the United States, its agencies, departments or agents in an omnibus objection governed by this Order, the City will provide a customized notice to such claimant. Such notice will: (a) include the omnibus objection but not the exhibits, (b) identify the claim to which an objection is being filed by number, and the grounds for such objection, and (c) notify the claimant of the steps it must take to contest the objection; and it is further

ORDERED that the City will file a Declaration in support of each Omnibus Objection filed on one of the Additional Permitted Grounds; and it is further

ORDERED that in the event a timely response to an Omnibus Objection is filed, the initial hearing on the response shall be non-evidentiary; and it is further

ORDERED that any order sustaining an Omnibus Objection shall be a final order for each claim referenced in the Omnibus Objection as if an individual objection had been filed for such claim; and it is further

ORDERED that nothing in this Order shall constitute an admission of the validity, nature, amount, or priority of any claim asserted in this case; and it is further

ORDERED that entry of this Order is without prejudice to the City's right to seek entry of an order modifying or supplementing the relief granted herein; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

.

**Signed on July 09, 2014**

_____/s/ Steven Rhodes_____
**Steven Rhodes**
**United States Bankruptcy Judge**

4819-2298-1660.1

13-53846-tjt Doc 12872-1 Filed 09/09/18 Entered 09/09/18 14:21:38 Page 3 of 8
13-53846-tjt Doc 5872 Filed 07/09/14 Entered 07/09/14 11:46:58 Page 219 of 219

218