UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,      .      Docket No. 13-53846
        MICHIGAN,           .
                     .      Detroit, Michigan
                     .      May 23, 2018
            Debtor.       .      1:36 p.m.
. . . . . . . . . . . . . . . .

HEARING RE. OBJECTION TO CLAIM NUMBER OF CLAIMANT
DEBTORS SIXTIETH AND SIXTY-FIRST OBJECTION TO CERTAIN CLAIMS
(NO VALID BASIS FOR ANY LIABILITY OF THE CITY).
WAYNE COUNTY TREASURER'S MOTION FOR RELIEF FROM
AUTOMATIC STAY
BEFORE THE HONORABLE THOMAS J. TUCKER
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the City of      Miller, Canfield, Paddock & Stone
Detroit:             By:  MARC SWANSON
                     150 West Jefferson
                     Detroit, MI  48226
                     (313) 496-7591

For Claimant         CHARLES IDELSOHN
Heidi Peterson:      P.O. Box 856
                     Detroit, MI  48231-0856
                     (586) 450-0128

Claimants:           Edith Woodberry
                     Cranston Woodberry
                     803 Gladstone
                     Detroit, MI  48202

                     LaJeff Woodberry
                     18283 Muirland
                     Detroit, MI  48221

                     Derrez Payne
                     16590 Woodbine
                     Detroit, MI  48219

                     Pamela Booker
                     15741 Lamphere
                     Detroit, MI  48221

                     Theresa Holmes

```
Court Recorder:       Jamie Laskaska
                      United States Bankruptcy Court
                      211 West Fort Street
                      21st Floor
                      Detroit, MI  48226-3211
                      (313) 234-0068

Transcribed By:       Lois Garrett
                      1290 West Barnes Road
                      Leslie, MI  49251
                      (517) 676-5092
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1          THE CLERK:  Please rise.  This Court is back in

2     session.  You may be seated.  The Court will call the matter

3     of the City of Detroit, Michigan, 13-53846.

4          THE COURT:  All right.  Good afternoon to everyone.

5     Let's have those present enter their appearances starting

6     with counsel for the City of Detroit, please.

7          MR. SWANSON:  Good afternoon, your Honor.  Marc

8     Swanson from Miller, Canfield, Paddock & Stone on behalf of

9     the city.  Along here with me is Rebecca Wilhelm from the

10    City of Detroit.

11         THE COURT:  I'm sorry.  I didn't catch the name --

12    last name.

13         MR. SWANSON:  Rebecca Wilhelm.

14         THE COURT:  All right.  Thank you.  And, sir, you

15    are?

16         MR. IDELSOHN:  Good afternoon, your Honor.  Charles

17    Idelsohn, attorney, on behalf of Claimant Heidi Peterson.

18         THE COURT:  On behalf of Heidi what?

19         MR. IDELSOHN:  Peterson, P-e-t-e-r, sometimes I

20    spell it s-o-n.  I think perhaps it's s-e-n at the end.

21         THE COURT:  And you're Mr. Idelsohn.

22         MR. IDELSOHN:  Yes, I am, your Honor.

23         THE COURT:  All right.  We have others in the

24    courtroom.  If there are any other attorneys in the

25    courtroom, I'd like you to enter your appearance now.  If not

1    and you're here to respond or to argue about a claim

2    objection filed by the city on your own behalf, then I'll ask

3    you to come up to the podium when we get to your --

4    discussing your claim.  So on that basis then we'll go ahead.

5    Mr. Swanson, go ahead.

6          MR. SWANSON:  Thank you, your Honor.  Thank you,

7    your Honor.  There were eight omnibus objections up for

8    hearing today, the fifty-fifth omnibus through the sixty-

9    second.  The Court has entered orders on the sixtieth and

10   sixty-first, so we have remaining the fifty-fifth through the

11   fifty-ninth and the sixty-second omnibus objection.

12         May it please the Court, I'll begin with the fifty-

13   fifth omnibus objection that was filed at Docket Number

14   12760.  We were contacted by Mr. Ira Todd, Jr.  There was a

15   stipulation filed for the withdrawal of the objection with

16   respect to his claim at Docket 12795.  An order was entered

17   approving that stipulation, and we'd ask that the Court grant

18   the objection with respect to the remaining claims because

19   there were no timely responses filed.

20         THE COURT:  Yeah.  I was surprised that you did not

21   file a certificate of no response and submit an order after

22   this order regarding Todd was entered, but the -- I did see

23   there were no objections or responses filed to that fifty-

24   fifth omnibus claim objection other than this Ira Todd matter

25   which was dealt with, so I will grant the relief you're

1  requesting.  So I'll ask you to submit your proposed order

2  regarding the fifty-fifth omnibus objection to claims, and

3  those -- that objection will be sustained.

4       MR. SWANSON:  Thank you, your Honor.

5       THE COURT:  And I'll waive any further presentment

6  of the order.

7       MR. SWANSON:  Thank you, your Honor.  If it pleases

8  the Court, I'm going to skip the fifty-sixth and move to the

9  fifty-seventh, and we could come back to the fifty-sixth

10  because I think there may be more argument involved on the

11  fifty-sixth.

12       THE COURT:  Well, what about the -- perhaps we could

13  jump to the fifty-eighth --

14       MR. SWANSON:  Yes.

15       THE COURT:  -- because that looks like another one

16  where there were no responses filed to the claim objection.

17  Am I right?

18       MR. SWANSON:  That's correct, your Honor, and we'd

19  ask that the Court grant the objection other than with

20  respect to the claim of -- well, T&T Management's claim was

21  expunged through a separate order, so with respect to the

22  remaining claims, we'd ask that the Court grant the

23  objection.

24       THE COURT:  I will do that.  There were no timely

25  responses filed to that fifty-eighth omnibus claim objection

1   other than what T&T Management filed, and that's been

2   resolved by separate order, so if you will please submit a

3   proposed order on that, and, again, I'll waive presentment of

4   that order.

5           MR. SWANSON:  Thank you, your Honor.

6           THE COURT:  All right.  And then you were on the

7   next one.  What?  Fifty-seventh, did you say?

8           MR. SWANSON:  Fifty-seventh omnibus objection.

9           THE COURT:  All right.  Go ahead.

10          MR. SWANSON:  We have two -- or one filed response,

11  and then we received one informal response to the fifty-

12  seventh omnibus objection.  With respect to the filed

13  response, we received a response from Mr. Dujon Johnson.  I

14  don't know if Mr. Johnson has appeared here in court today.

15  It doesn't appear that he has.

16          THE COURT:  Well, let me ask.  Is Dujon or Dujon

17  Johnson present or is there anyone here on his behalf?  I

18  hear nothing, so it appears he has not appeared.  Go on, Mr.

19  Swanson.

20          MR. SWANSON:  Well, your Honor, for the reasons set

21  forth in the objection, there was an ADR order that was

22  entered.  The ADR order contained certain procedures,

23  including the procedure of serving stay modification notices

24  and providing the Court with the authority to enforce the ADR

25  order if it wasn't complied with through the expungement and

disallowance of claims.  We served Mr. Johnson with a stay

modification notice.  No action has been taken.  There is no

action that was indicated that was taken in the response, and

we'd ask that the Court expunge Mr. Johnson's claim.  And

there was another informal response with --

THE COURT:  Before we get to that, let's --

MR. SWANSON:  Yes.

THE COURT:  Let me ask about Johnson.

MR. SWANSON:  Yes.

THE COURT:  I did read the letter that he filed.

It's at Docket 12781.  He refers in this letter, this

response that he filed to your claim objection, to some sort

of judgment rendered by some court apparently against the

city, something to do with the illegal towing of a car.  What

is that about?  Do you know?

MR. SWANSON:  I don't know.  I have his claim here.

I believe I have his claim.  Well, I have a state court

docket here, Case Number -- 36th Judicial District Court.

There was a judgment entered, but it appears that it was set

aside in this case.

THE COURT:  Is this a case filed by Mr. Johnson

against the city?

MR. SWANSON:  Dujon Johnson, plaintiff, City of

Detroit, defendant, yes, so it was filed by him.  There was a

default issued, a default filed, default judgment, judgment

1    by default entered, motion to set aside default, motion to

2    set aside default judgment granted, order to set aside

3    default judgment entered.

4         THE COURT:  When was that order entered?

5         MR. SWANSON:  8-21 of '13.

6         THE COURT:  And this lawsuit was filed before the

7    bankruptcy petition was filed then I assume?

8         MR. SWANSON:  It looks like it was filed on December

9    18th of 2012.

10        THE COURT:  So pre-petition.  And has anything

11   happened, according to the state court docket, since the

12   order of August 21, 2013?

13        THE COURT:  I haven't looked into this docket.  I

14   have his claim, which attaches a docket, and it said after 8-

15   21, 2013, the order to set aside default judgment entered.

16   There's a notice to appear issued on 9-9, 2013, or maybe for

17   9-9, 2013.  On 8-23-13 there was an order for administrative

18   closing due to bankruptcy stay.  On 8-26, 2013, another order

19   for administrative closing due to bankruptcy stay.  On 9-4,

20   2013, future calendar date removed, and that's the last entry

21   on the docket that was attached to his claim, so it does

22   appear that there was a judgment, but the judgment was

23   vacated.

24        THE COURT:  All right.  When was Mr. Johnson served

25   with the notice of stay modification?  Do you know?

1    MR. SWANSON:  It should be in our objection.  Let me
2    find this.  Exhibit 4.
3    THE COURT:  Oh, I see.  There's a -- in your Exhibit
4    2 there's a column --
5    MR. SWANSON:  Yeah.
6    THE COURT:  -- with a docket number of the stay
7    modification notice; right?
8    MR. SWANSON:  Yes.  It's at --
9    THE COURT:  And on this one it's 8671, so this is
10   something that was filed as well as served on the claimant.
11   MR. SWANSON:  Correct.
12   THE COURT:  And 8671, do you have the date handy on
13   that?  I can look it up.
14   MR. SWANSON:  I don't.  I can certainly look it up
15   for the Court.
16   THE COURT:  Yeah.  I'd like to know that.
17   MR. SWANSON:  Sure.  Your Honor, it was December
18   11th of 2014.
19   THE COURT:  All right.  I see the notice.  All
20   right.  All right.  Then with respect to Mr. Johnson,
21   although he did file a response, a timely response to the
22   claim objection, he has failed to appear today for reasons
23   unknown -- failed to appear at the hearing for reasons
24   unknown to prosecute his response to the claim objection,
25   and, of course, the same notice of the claim objection which

1  told him of the claim objection and of the deadline to

2  respond to it also included in it the hearing date and gave

3  notice that he had to appear at the hearing if he wanted to

4  contest the claim objection.  Mr. Johnson has not appeared,

5  and for that reason I will sustain the claim objection in the

6  fifty-seventh objection as to Mr. Johnson's claim, which is

7  included in that list of the claims objected to by that

8  objection.  I think you were then going to talk about the

9  informal response.

10       MR. SWANSON:  Yeah.  There was a -- a lady named

11  Tracy Marshall contacted my office with respect to a claim

12  filed by Layton White, Claim Number 647.  Ms. Marshall

13  indicated that she would attend the hearing.  She contacted

14  us after the response deadline on -- she contacted us on

15  Friday, May 18th.  And no written response was filed, and I

16  would ask the Court expunge that claim and all the other

17  claims in the fifty-seventh omnibus objection.

18       THE COURT:  The attorney's name is what again?

19       MR. SWANSON:  Tracy Marshall.  She has power of

20  attorney over Mr. Layton White, so I don't know if she is an

21  attorney actually.

22       THE COURT:  Oh, I see.

23       MR. SWANSON:  Yeah.

24       THE COURT:  Power of attorney.  And the claimant is

25  Layton White, you say.

1          MR. SWANSON:  Correct.

2          THE COURT:  Okay.  One second.  All right.  Is the

3    creditor, Layton White, present, or is there anyone here on

4    behalf of Layton White?  I hear nothing.  This creditor has

5    failed to file a timely response.  The response to the claim

6    objection was due no -- to be filed no later than a week ago

7    today -- has failed to file a timely response, in fact,

8    failed to file any written response to date to this claim

9    objection and has failed to appear at today's hearing whether

10   either in person or through any attorney, and so for that

11   reason the Court will sustain the claim objection as to

12   Layton White's claim as part of the fifty-seventh omnibus

13   claim objections.  So that resolves -- or that deals with all

14   claims covered by the fifty-seventh omnibus objection; right?

15         MR. SWANSON:  Yes, your Honor.

16         THE COURT:  All right.  So as to the fifty-seventh

17   omnibus objection, I'll ask you to submit your proposed order

18   then, Mr. Swanson.  I'll waive presentment of the order, and

19   I'll sustain those claim objections.

20         MR. SWANSON:  Thank you, your Honor.

21         THE COURT:  Before we get too much farther, let me

22   ask, just so I'm clear on this, Mr. Idelsohn, which of these

23   claim objections -- numbered claim objections is your claim

24   covered by Heidi Peterson?  Do you know or Mr. Swanson?

25         MR. IDELSOHN:  I'm sorry, your Honor.

1          THE COURT:  Somebody tell me.

2          MR. IDELSOHN:  I don't remember the number, but I

3     believe it's three pages in on the filing in the boxes about

4     three numbers down.  That page is Heidi Peterson.  It's a

5     four-digit number, 87 something something, something like

6     that.  I'm sorry, your Honor.  I don't recall.

7          THE COURT:  Mr. Swanson, do you know?

8          MR. SWANSON:  If your Honor will allow me one

9     second, I'd --

10         THE COURT:  Sure.

11         MR. SWANSON:  -- endeavor to figure that out.  Your

12    Honor, it's the fifty-fifth omnibus objection.

13         THE COURT:  Well, that's one we already called and I

14    already said I'm going to sustain in toto except for the

15    claim of Ira Todd, which is separately dealt with, so we went

16    right by Mr. Idelsohn here when we talked about that without

17    giving him a chance to speak, and I think I should do that.

18    Let's go back to the fifty-fifth for a moment and talk about

19    that.

20         MR. IDELSOHN:  Yes, your Honor.  Thank you.

21         THE COURT:  Fifty-fifth omnibus claim objection.

22    One moment, please.  First of all, Mr. Idelsohn, you did not

23    file any written response on behalf of Ms. Peterson --

24         MR. IDELSOHN:  That is correct.

25         THE COURT:  -- to the claim objection; is that

right?

MR. IDELSOHN: That is correct, your Honor.

THE COURT: Well, why not?

MR. IDELSOHN: Your Honor, I'm having some difficulty communicating from my brain to my hands, and although I did write something by hand, I was not able to get it onto the proper format to then submit it to PACER and pay the PACER fee so that I could have it here before the Court in a timely fashion. I do have, your Honor, a very short text from Ms. Peterson to me wherein she expresses precisely what she wants everyone to know, and if the Court would allow, I could read it into the record.

THE COURT: If you want, I'll let you say whatever you want to say. Go ahead.

MR. IDELSOHN: Yes, your Honor. I am quoting from a text that was texted to me by Heidi Peterson on April 30th, 2018, at 1:35 p.m. Oh, I think I had the phone back then set on -- at a time that was 14 hours ahead, so the time may be 14 hours off. And I quote, "I" -- and this is Heidi Peterson, and I quote, "I want the city to respect the right of property to the ones who bought and paid for it versus those who can physically seize it and hold those in the city and" -- and she would be saying, "I want, and hold those in the city accountable for helping the gangs of squatters and for flooding my house and not removing the fraud lien in a

1  timely manner when they knew my child was lead poisoned.  No

2  one but me should have right to control the property I

3  bought," so if the Court would allow a brief synopsis of what

4  happened here --

5        THE COURT:  Well, just a minute.

6        MR. IDELSOHN:  Yes, your Honor.

7        THE COURT:  Just a minute.  Just a minute.

8        MR. IDELSOHN:  Yes, your Honor.

9        THE COURT:  This fifty-fifth omnibus claim

10  objection --

11        MR. IDELSOHN:  Yes, your Honor.

12        THE COURT:  -- specifically the objection to your

13  client's claim, the claim of Heidi Peterson --

14        MR. IDELSOHN:  Yes, your Honor.

15        THE COURT:  -- is that the claim that was

16  litigated --

17        MR. IDELSOHN:  Yes, your Honor.

18        THE COURT:  -- in the case of Ms. Peterson,

19  according to Exhibit 2 to the claim objection in the Wayne

20  County Circuit Court --

21        MR. IDELSOHN:  Yes, your Honor.

22        THE COURT:  -- and on March 16, 2015, the Wayne

23  County Circuit Court granted summary disposition for the City

24  of Detroit, so --

25        MR. IDELSOHN:  Yes, your Honor.

1          THE COURT:  -- Ms. Peterson litigated her claim in

2     the Wayne County Circuit Court and lost?

3          MR. IDELSOHN:  Yes, your Honor.

4          THE COURT:  Is that correct?

5          MR. IDELSOHN:  Yes, your Honor.

6          THE COURT:  Well, then what's left to do here?  Why

7     shouldn't the claim be disallowed for that reason?

8          MR. IDELSOHN:  May it please the Court, I believe

9     that -- and please forgive me, your Honor, if I'm misquoting

10    the bankruptcy rules, but I think it's Rule 101, I think.  I

11    believe that this Court has equitable powers, and I'm asking

12    the Court to recognize what is a terrible situation in the

13    State of Michigan in that within the City of Detroit

14    squatters can enter a place of residence, do a tiny little

15    repair like break out a front little pane of glass ten inches

16    by six inches from the front door, repair it, put a lien then

17    on the title.  It's not a good situation because squatters

18    then get some sort of foothold.  I want the Court to please

19    recognize that this is an ongoing situation even now, even as

20    the city is curing itself and rebuilding itself, and that

21    this particular -- well, let's call it a virus for lack of a

22    better term.  The squatter virus is rampant, and it -- what

23    it does is it takes anyone who has a real property interest

24    and if they're absent for any period of time allows anyone to

25    come in and set up a communal living space and waste that

1  property and get away with it.  The police, once they are
2  allowed to enter a premises in the city, if they're shown any
3  piece of paperwork by the squatters, feel it's their duty to
4  keep hands off.  The water people, if they're shown any piece
5  of paper by the squatters, they feel it's their duty to turn
6  services on in the name of the squatters.  These are just a
7  few of the examples, your Honor.  But as a court of equity,
8  I'm asking that the Court just please recognize as we move
9  into this wonderful new existence of the City of Detroit that
10  we still have this squatter virus and people still get away
11  with it.  Take old people, for example.  They're away from
12  their house.

13          THE COURT:  Excuse me, Mr. Idelsohn.

14          MR. IDELSOHN:  Yes, your Honor.  Yes, your Honor.
15  Yes, your Honor.

16          THE COURT:  We have to shorten this up a bit.

17          MR. IDELSOHN:  Yes, your Honor.  Yes, your Honor.

18          THE COURT:  I guess my question really is how can
19  the Court possibly do anything other than disallow the claim
20  filed in this bankruptcy case by Ms. Peterson given that the
21  claim was litigated and decided against her by the Wayne
22  County Circuit Court?  Isn't that binding on the city as well
23  as Ms. Peterson as a matter of res judicata?

24          MR. IDELSOHN:  Well --

25          THE COURT:  By the way, did you represent her in

1   that state court action?

2          MR. IDELSOHN:  Yes, your Honor.

3          THE COURT:  Oh, so you're very familiar with what

4   happened there.

5          MR. IDELSOHN:  She started the state court action.

6   She hired me.  We went into the state court.  They awakened

7   me with the fact that the city had a bankruptcy, and we came

8   here.  Then after the stay was lifted, we went back and

9   finished up, and Ms. Peterson had an incident of -- not a --

10  a very horrible incident with her daughter, did not attend

11  the summary disposition hearing, and the case was disallowed.

12  There was a tremendous amount of exhibits that Ms. Peterson

13  had filed on her own through the Wayne County's electronic

14  system, and his Honor, Judge Ryan, I think, on the record

15  disallowed those exhibits because she had filed them on her

16  own.  And, frankly, I think the only way --

17         THE COURT:  Did you attend the summary disposition

18  motion hearing?

19         MR. IDELSOHN:  At that, yes.

20         THE COURT:  You did?

21         MR. IDELSOHN:  Yes.

22         THE COURT:  And summary disposition was granted in

23  favor of the city and against Ms. Peterson on her claims by

24  the --

25         MR. IDELSOHN:  Yes.

1          THE COURT:  -- Wayne County Circuit Court; right?

2          MR. IDELSOHN:  Yes, but the Court --

3          THE COURT:  Was there an appeal from that judgment?

4          MR. IDELSOHN:  There was no appeal.  The Court did

5 not allow itself to see the exhibits that existed.  The Court

6 chose to remove the exhibits from the city's filing system.

7 The city was totally electronic.  There was a huge volume of

8 exhibits.  Ms. Peterson didn't attend.  There was a traumatic

9 incident to her young daughter at the time.  The Court never

10 had an opportunity to see the exhibits because we're in a

11 modern, modern age where the exhibits don't physically appear

12 in the Court's file.  They're just out there in some cyber

13 existence.

14          THE COURT:  Well, so there was no appeal.

15          MR. IDELSOHN:  None.

16          THE COURT:  Excuse me.  You or Ms. Peterson or both

17 may feel that the Wayne County Circuit Court summary

18 disposition decision and judgment was wrong, was erroneous,

19 was unfair, should be revisited, but all of that is -- all of

20 that would have to be addressed to the Wayne County Circuit

21 Court or the Court of -- Michigan Court of Appeals on any

22 appeal, and there's been nothing raised or appealed on that,

23 as I understand you, so it's a final judgment for March 2015,

24 and why doesn't res judicata and this Court's obligation

25 under the full faith and credit statute -- the federal full

1  faith and credit statute require this Court to recognize that

2  judgment and disallow the claim since the debtor litigated

3  the claim and lost?  I mean I'm having trouble seeing any

4  basis on which I could possibly do anything else.

5         MR. IDELSOHN:  I refer the Court back to Rule 101.

6         THE COURT:  You made me think of Section 105(a) of

7  the Bankruptcy Code.

8         MR. IDELSOHN:  I stand corrected, your Honor.

9         THE COURT:  I think that's probably what you're

10  referring to.

11         MR. IDELSOHN:  Yes, please.

12         THE COURT:  And that section is commonly cited for

13  the proposition that bankruptcy courts are courts of

14  equity --

15         MR. IDELSOHN:  Yes, your Honor.

16         THE COURT:  -- that kind of notion.  All right.

17  Anything else you want to say, Mr. Idelsohn?

18         MR. IDELSOHN:  I would hope that this Honorable

19  Court understands that my being here is not meant to be

20  frivolous.  The lady was harmed, and we weren't able to get

21  the redress from the city that we thought we should, and,

22  yes, your Honor, I understand the lawsuits, the res judicata,

23  and so on.  I'm speechless about not having a response to res

24  judicata, but I would hope -- again, your Honor, please, I

25  would hope that somehow some way the Bankruptcy Courts can

1    begin to recognize this.

2          And if I may, your Honor, I'd like to share with

3    this Honorable Court what's happened within these four walls

4    of this 211 Fort Street.  Years ago a lot of people in the

5    City of Detroit were losing because of mortgages.  The

6    Bankruptcy Court here, this Bankruptcy Court, the Eastern

7    District of Michigan, Southern Division, took it upon

8    themselves to set up a program to somehow be able to work

9    with these people to somehow offer them some sort of

10   protection.  I cannot fill in the details, but I know that it

11   exists, and I don't know if it's appropriate to ask the Court

12   to take judicial notice of it, but it did happen here.  And

13   so what I'm hoping is that somehow some way that the Eastern

14   District of Michigan, Southern Division, will recognize the

15   squatters in the City of Detroit and have -- and allow itself

16   to provide a similar sort of assistance.

17         THE COURT:  All right.  Well, thank you, Mr.

18   Idelsohn.

19         MR. IDELSOHN:  You're welcome, your Honor.

20         THE COURT:  Whatever merit there may be to your

21   suggestions about the need for something to be done about

22   this squatter-related problem or problems that you've

23   described, those things really are not relevant to what we're

24   doing here today.  What we're doing here today, as it relates

25   to your client, Heidi Peterson, concerns the City of

 1    Detroit's fifty-fifth omnibus objection to claims, which

 2    includes an objection to the claim of Ms. Peterson filed in

 3    this bankruptcy case, and I must disallow that claim.  The

 4    Court has no -- while Bankruptcy Courts are generally stated

 5    to be courts of equity in some senses and while Section

 6    105(a) does give the Bankruptcy Court certain powers, none of

 7    that permits the Bankruptcy Court in a bankruptcy case to

 8    ignore principles of res judicata.  Specifically here it's

 9    undisputed that Ms. Peterson's claim, which is the subject of

10    the objection to claim, was litigated by Ms. Peterson and the

11    City of Detroit in the Wayne County Circuit Court and that in

12    March 2015 -- excuse me -- the Wayne County Circuit Court

13    granted summary disposition in favor of the City of Detroit,

14    and in that Ms. Peterson's claim failed.  She lost.  She

15    litigated and lost the claim, and that judgment of the state

16    court was not appealed.  It is, therefore, a judgment of a

17    state court of Michigan that this Court must give full faith

18    and credit to under the federal full faith and credit statute

19    and under principles of res judicata and collateral estoppel,

20    perhaps also the -- what's known as the Rooker-Feldman

21    Doctrine, all of which essentially mean in this context that

22    this Court must recognize that Ms. Peterson's claim has been

23    litigated and lost and must give full faith and credit to

24    that state court judgment by which she lost her claim.  And

25    for that reason this Court must disallow the claim of Ms.

1 | Peterson and will do that as part of the relief on the fifty-
2 | fifth omnibus objection. I note as an additional basis for
3 | that result as well the fact that Ms. Peterson did not timely
4 | file a written response to the claim objection, which was due
5 | no later than Wednesday of last week. Her claim will be
6 | disallowed for that additional reason. There's no -- there's
7 | been no valid excuse that I can glean from what you've said
8 | for her failure to timely file a written response to the
9 | claim objection, but even apart from that on the merits
10 | there's simply no way the Court can do other than disallow
11 | the claim, and so that's the ruling. Thank you.

12 | MR. IDELSOHN: Thank you, your Honor.

13 | THE COURT: Yep. So, Mr. Swanson, getting back to
14 | you, as we discussed earlier regarding the fifty-fifth
15 | omnibus, then I do -- if you submit the proposed order as we
16 | discussed sustaining the claim objection.

17 | Now, let me next note something about the fifty --
18 | hold on -- the fifty-seventh omnibus claim objection which we
19 | were talking about earlier.

20 | MR. SWANSON: Yes, your Honor.

21 | THE COURT: I've been told by my courtroom deputy
22 | that she's been informed that a few minutes ago Mr. White --
23 | that would be Layton White, I believe -- has come into the
24 | courtroom. One moment. And Mr. White is the one who you
25 | said someone contacted you last Friday about an informal

1  objection.  I do want to give Mr. White, if he's here, an

2  opportunity to speak, so is Layton White present or is anyone

3  here on behalf of Layton White?  Last call.  Layton White.

4  Layton White in the courtroom?  Anyone here on behalf of

5  Layton White?  Well, I guess I'm misinformed then.  I was

6  told he had just walked into the courtroom shortly after we

7  finished our discussion of the fifty-seventh, so he's not

8  here, so we'll move on.  So the fifty-seventh will be

9  sustained as we discussed earlier.

10       MR. SWANSON:  Your Honor, if I may, Mr. Dujon

11  Johnson, who is subject to the fifty-seventh, has appeared in

12  court.

13       THE COURT:  Oh, I see.

14       MR. SWANSON:  And I spoke with Mr. Johnson for a few

15  minutes.  If the Court would allow us at an opportunity,

16  perhaps after the Woodberry objection, if we could have a few

17  minutes to see if we can resolve the claim.  It's a very

18  small claim, and the city came to the hearing today

19  attempting to see if it could be resolved.

20       THE COURT:  That's fine.  All right.  So we will --

21  we'll pull the fifty-seventh omnibus claim objection out of

22  the category of going to be sustained and submit an order,

23  and we'll leave that pending and open for further discussion

24  after we finish talking about the other claim objections

25  today.  Okay.  Thank you.  So what's next, Mr. Swanson?

1    MR. SWANSON:  Your Honor, we have two objections

2    remaining.  We have the fifty-sixth omnibus objection and the

3    sixty-second omnibus objection.  With respect to the fifty-

4    sixth --

5    THE COURT:  Well, wait a minute.  Wait a minute.

6    One second.

7    MR. SWANSON:  Oh, I apologize, your Honor.

8    THE COURT:  I think we have three left.

9    MR. SWANSON:  We do have three left.

10   THE COURT:  Yeah.

11   MR. SWANSON:  I jumped ahead.  I apologize.

12   THE COURT:  All right.  Anyway, go on.

13   MR. SWANSON:  The fifty-ninth omnibus objection,

14   your Honor, filed at Docket 12766, there was a response filed

15   by Mrs. Brogue at Docket 12770.  The city filed a reply to

16   Mrs. Brogue's objection at Docket 12804.  Mrs. Brogue

17   contacted me this morning via phone and indicated that she

18   was under the care of a doctor and may not be able to attend

19   the hearing.  She did not ask for an adjournment, and she

20   asked what the Court would do if she did not attend, and I

21   said I don't know what the Court is going to do if you don't

22   attend, but, you know, I plan on moving forward.  That was

23   the last that I heard from Mrs. Brogue.  And the city

24   believes that this claim should be disallowed.  The claim

25   provides, first off, no basis other --

1    THE COURT:  You attached the copy of the proof of

2  claim of Ms. Brogue to your reply, which I have reviewed, by

3  the way, Docket 12804, as you say.

4    MR. SWANSON:  Yeah.

5    THE COURT:  And I did review your reply and the

6  exhibits attached to it, which included the copy of the proof

7  of claim of Ms. Brogue and I think her written response,

8  which I also saw, so, anyway, go on.

9    MR. SWANSON:  Well, we think there's several bases

10  here, your Honor, to disallow the claim.  First, Ms. Brogue

11  has not complied with the ADR order.  She was served with the

12  stay modification notice and has taken no action.  Second,

13  there's no --

14    THE COURT:  Was there a lawsuit filed by Ms. Brogue

15  ever?

16    MR. SWANSON:  Not that I am aware of, your Honor.

17    THE COURT:  All right.  Go on.

18    MR. SWANSON:  Second, the basis for the claim is

19  notice of service and filings.  That's not a legally

20  cognizable basis to assert liability against the city.  The

21  response doesn't provide any further claims or insight into

22  why Ms. Brogue feels that she has a legally valid claim

23  against the city, and under the terms of the ADR order she

24  was ordered to liquidate her claim.  She took no action to

25  liquidate her claim, and the city would ask that the Court

1   expunge the claim.

2          THE COURT:  One moment.  The docket number for the

3   notice of stay modification for Ms. Brogue was Docket 8386,

4   according to your chart.

5          MR. SWANSON:  Okay.

6          THE COURT:  One second.  I see on the Court's docket

7   that was filed -- that notice -- stay modification notice was

8   filed on November 21, 2014, and you're saying that after that

9   notice was served Ms. Brogue did nothing to pursue a claim by

10  filing a lawsuit anywhere and, to your knowledge, has never

11  filed a lawsuit against the city before or after the

12  bankruptcy filing --

13         MR. SWANSON:  That's correct, your Honor.

14         THE COURT:  -- through the present.

15         MR. SWANSON:  Correct.

16         THE COURT:  All right.  With respect to the claim of

17  Ms. Brogue, it's unfortunate if Ms. Brogue is not able to

18  attend today's hearing because of illness.  I'm not going to

19  let that -- I'll assume that's why she's not here, but I'm

20  not going to let that hold matters up with respect to her

21  claim because the response -- the written response to the

22  claim objection filed by Ms. Brogue utterly fails, in my

23  view, to state any valid or even arguably valid response to

24  the claim objection and the grounds stated in the claim

25  objection and does really nothing to explain at all the basis

 1    for Ms. Brogue's claim, why she has not pursued it in any

 2    court after having been served with the stay modification

 3    notice back in November 2014, and also it's -- it is apparent

 4    from reviewing the proof of claim itself -- and by the way,

 5    the response filed by Ms. Brogue to the claim objection is at

 6    Docket 12770.  It was filed April 26, 2018, and I have

 7    reviewed it.  The proof of claim filed by Ms. Brogue, which

 8    is attached as an exhibit to the city's reply at Docket

 9    Number 12804, utterly fails to state any basis for the claim.

10    It doesn't even state the amount of the claim.  It's a bunch

11    of question marks.  And basis for claim it says notices of

12    service and filings, and there's just nothing on the proof of

13    claim order or any attachments to the proof of claim to --

14    that even arguably establishes a valid or asserts a valid

15    basis for any -- Ms. Brogue to have any claim against the

16    City of Detroit in any amount, so the proof of claim itself

17    is utterly inadequate in addition to the fact that Ms. Brogue

18    has done nothing to pursue or to prosecute the claim after

19    the -- being given notice of the stay modification on the

20    terms of the ADR order, which required her to pursue her

21    claim in a court other than Bankruptcy Court to liquidate the

22    claim -- prosecute it and liquidate it.  None of that has

23    been done, and so for all of those reasons I will sustain the

24    city's objection to her claim as part of the fifty-ninth

25    omnibus claim objections, and so that's the ruling regarding

1  Ms. Brogue's claim.

2          Now, that was the only response filed to the fifty-
3  ninth, wasn't it?

4          MR. SWANSON:  Yes, your Honor.

5          THE COURT:  Now, we have a number of people sitting
6  in the audience.  There may be in the audience people who
7  have filed -- who have not filed a written response to the
8  claim objection and who are here and want to be heard about
9  claims, and I have no idea which of these numbered claim
10  objections that may be or what their situation is, so we may
11  be stumbling around a little bit about that.  I do want
12  anyone who's here who has filed a proof of claim to have an
13  opportunity to speak so I can hear what they may have to say,
14  so we'll have to see how that plays out, but barring any
15  changes to my ruling, the fifty-ninth -- yet today in the
16  hearing, the fifty-ninth omnibus objection to claims will be
17  sustained in its entirety.  I'll ask you to submit a proposed
18  order.  I'll waive presentment of the order.

19          MR. SWANSON:  Thank you, your Honor.

20          THE COURT:  All right.  Next one you want to
21  discuss.

22          MR. SWANSON:  The fifty-sixth omnibus objection,
23  your Honor.

24          THE COURT:  All right.  Go ahead.

25          MR. SWANSON:  Your Honor, we received one filed --

1    or there were two filed responses.  The first was filed by

2    Sandra Guntzviller, and there was a stipulation and order

3    entered resolving that objection.  The only unresolved

4    objection to the fifty-sixth omnibus objection or the only

5    unresolved response is the Woodberry reply which was filed at

6    Docket Number 12805.

7         THE COURT:  That is the one -- well, Edith Woodberry

8    filed a response at Docket 12791; right?

9         MR. SWANSON:  Let's see here.

10        THE COURT:  That's what I had for this.  Edith

11   Woodberry's --

12        MR. SWANSON:  Yes, your Honor.

13        THE COURT:  Yeah.

14        MR. SWANSON:  Excuse me.

15        THE COURT:  Yeah.

16        MR. SWANSON:  The city's reply was filed at Docket

17   12805.

18        THE COURT:  Yeah.  Edith Woodberry -- her claim was

19   listed as one of the claims for the fifty-sixth omnibus

20   objection, and then I noticed that there are other persons

21   named Woodberry who I think are subject -- I think were

22   subject to the -- must have been the sixty-second omnibus,

23   and they filed responses, so I assume we're going to talk

24   about all those together.

25        MR. SWANSON:  Yes, your Honor.  The city was

1  prepared to talk -- to address both the fifty-sixth and

2  sixty-second --

3       THE COURT:  One second.

4       MR. SWANSON:  -- omnibus objection.

5       THE COURT:  Well, with respect to the sixty-second,

6  my understanding from reviewing the file, at least, is that

7  responses to this debtor's sixty-second omnibus claim

8  objection were filed by -- there were two responses, one

9  filed by Pamela Booker and then one filed by -- jointly by a

10 number of individuals, most of whom had the last name

11 Woodberry, and so I think what we should do is talk about all

12 the Woodberry related claims together.  Perhaps before we do

13 that we could talk about the claim of Pamela Booker and her

14 response to the sixty-second.  Does that make sense?

15      MR. SWANSON:  Yes, your Honor.

16      THE COURT:  Why don't we do that?  And then we'll

17 come back to the Woodberry matters.

18      MR. SWANSON:  Thank you, your Honor.  Similar to Ms.

19 Brogue, Ms. Booker has taken no action despite being afforded

20 the opportunity to liquidate her claim.

21      THE COURT:  Before we go on, is Pamela Booker here?

22 Would you come up, please?  All right, ma'am.  Would you

23 enter your appearance into the microphone there for the

24 record, please?  You are?

25      MS. BOOKER:  Pamela Booker.

1    THE COURT:  All right.  Good afternoon, Ms. Booker.

2  Now, you're here without an attorney, I assume?

3    MS. BOOKER:  Yes.

4    THE COURT:  All right.  That's fine.  You have a

5  right to represent yourself if you want to do that in this

6  matter, and we'll go ahead.  So we'll hear from Mr. Swanson

7  first, and then we'll hear from you.  And I did read your

8  written response that you filed to this claim objection.  Go

9  ahead, Mr. Swanson.

10    MR. SWANSON:  Thank you, your Honor.  The basis for

11  the objection is the alternative dispute resolution order

12  that was entered by this Court.  That order authorized the

13  city to serve stay modification notices on claimants who

14  filed proofs of claim, and those stay modification notices

15  provided that the claimant was to liquidate their claim in a

16  nonbankruptcy forum.  The ADR procedures, which were attached

17  to the ADR order, contain a procedure for their enforcement,

18  which provides that if the claimants do not comply with the

19  ADR order, of which the stay modification notice is an

20  exhibit, the Court has the authority to find that the

21  claimant has abandoned or failed to prosecute his or her

22  claim, and the Court can expunge the claim.  The city filed a

23  stay modification notice on Ms. Booker, and the city is

24  unaware of any action Ms. Booker has taken to liquidate her

25  claim.  Furthermore, your Honor, the basis of --

1    THE COURT:  Excuse me.  Let me get Exhibit 2 here.

2    This is -- the docket number for the stay modification notice

3    that's listed in your Exhibit 2 to the sixty-second omnibus

4    objection for Ms. Booker is 10250.  Do you have the date for

5    that handy?

6    MR. SWANSON:  I don't, your Honor.  I can look it

7    up.

8    THE COURT:  I can look it up.  One second.  That

9    stay modification notice was filed on November 3, 2015, so go

10   on.  You were saying?

11   MR. SWANSON:  Well, so it's been, you know,

12   approximately two and a half years since the stay

13   modification notice was filed, and the city is not aware of

14   any action taken by Ms. Booker to liquidate her claim.

15   Further, the basis of the claim does not explain why

16   the city would have any liability.  The basis is property

17   damage from a fallen tree.  There's no support in the claim,

18   and there's no support in the response to -- for an assertion

19   that the city has any legal liability for a fallen tree.  The

20   city would, thus, request that the Court expunge the claim.

21   Thank you.

22   THE COURT:  Ms. Booker, as I said, I did review the

23   letter you sent to the Court which was filed on May 14, 2018.

24   MS. BOOKER:  Yes.

25   THE COURT:  For the record, that's at Docket 12783

1 on the Court's docket. What would you like to say about this
2 claim objection by the city?

3 MS. BOOKER: I don't think it's fair because it was
4 city owned property, and the tree fell onto the house. I
5 tried to get city services to remove this tree, you know, to
6 do what they should do in regards to service, and -- but they
7 wouldn't do it. They started off, gave me a work order, and
8 then they just flat out refused to do anything. And when I
9 heard about the bankruptcy, I thought, well this is the way
10 for me to try to get them to pay for my damages. And when
11 they agreed to pay the initial amount, I thought, okay,
12 they're agreeing to accept responsibility. It had been such
13 a long time. The inside plaster, different things -- the
14 ceiling fell, and I was just asking them also to take -- to
15 do that and lost rent, and it came to $21,000.

16 THE COURT: What do you mean? You referred to when
17 they agreed to pay the initial amount. Are you saying the
18 city agreed at some point to pay something to you for this?

19 MS. BOOKER: Yes.

20 THE COURT: Well, tell me about that.

21 MS. BOOKER: Well, just the very first claim. They
22 just said they would -- let me see if I even have a copy of
23 it. I thought it would be a part of the court record. I
24 might not even have that, but Attorney -- what's her name?
25 Let me see. I think I have that. No. This is a different

1   group of attorneys now.  I don't have that, your Honor.

2           THE COURT:  Well, your claim, I think, that we're

3   talking about in this bankruptcy case is an amended claim

4   that you filed --

5           MS. BOOKER:  Yes.

6           THE COURT:  -- in July of 2015.  The amount of the

7   claim is $21,250.  It's Claim Number 3836, and the -- it says

8   as basis for claim, property damage from fallen tree.  And I

9   think there may be some pictures, some photographs that

10  you --

11          MS. BOOKER:  Yes.

12          THE COURT:  -- attached to the claim when you filed

13  the amended claim --

14          MS. BOOKER:  Yes.

15          THE COURT:  -- and some other documents.  There's a

16  proposal and contract, some sort of -- I assume it's some

17  sort of estimate for some work --

18          MS. BOOKER:  Yes.

19          THE COURT:  -- being done that you were implying was

20  work required because of the fallen tree damage --

21          MS. BOOKER:  Yes.

22          THE COURT:  -- right?

23          MS. BOOKER:  Yes.

24          THE COURT:  So November 3, 2015, the city filed and

25  sent to you a copy of a document -- or a document called

1   "Stay Modification Notice."  It was a -- about a five-page

2   document, but the upshot of it was that the automatic stay

3   that normally applies in the bankruptcy case to prevent

4   creditors from going off and suing the city on claims that

5   arose before the bankruptcy case was filed was being modified

6   so that you could then go ahead and sue the city in an

7   appropriate non-bankruptcy court of your choosing if you

8   hadn't already done so.  Is it correct that you have never

9   sued the city in any court for this fallen tree damage --

10          MS. BOOKER:  No.

11          THE COURT:  -- matter?

12          MS. BOOKER:  No, your Honor.

13          THE COURT:  You've not done that?

14          MS. BOOKER:  No.

15          THE COURT:  Obviously you filed your proof of

16   claim -- your amended proof of claim in this court, in the

17   Bankruptcy Court, but other than that you've not done any --

18   filed anything in any court anywhere about this; is that

19   right?

20          MS. BOOKER:  No.

21          THE COURT:  Okay.  So why have you not filed a

22   lawsuit against the city after you got -- after this November

23   3, 2015, stay modification notice?

24          MS. BOOKER:  Well, basically I tried to get an

25   attorney, and I just wasn't able to get anyone, you know,

1   that -- well, the people that I talked to I just totally felt

2   discouraged actually, and then I just hoped that I would hear

3   something else from the Court and go from there, but that's

4   the only thing I can say, your Honor.

5           THE COURT: Well, if I exercise my discretion -- I'm

6   not saying this is going to be the outcome, but I'm asking

7   you sort of a hypothetical question at this point. If I

8   exercise my discretion to respond to the city's claim

9   objection here based on the ADR notice and the ADR order

10   procedures not being complied with by you instead of

11   disallowing your claim I would have discretion to give you a

12   bit more time to go out and pursue your claim, I think. Mr.

13   Swanson can respond if he thinks that I can't or shouldn't do

14   that, but let's assume for a minute that I can do that and I

15   do that. If I did that, I would set a deadline by which you

16   would have to sue the city in some appropriate non-bankruptcy

17   court on this claim and then prosecute that lawsuit. Do you

18   want me to give you that sort of relief, that sort of time,

19   or is it just a waste of time because you've tried to get an

20   attorney and you can't and you don't want to pursue the case

21   without an attorney?

22           MS. BOOKER: Well, I didn't really think I could

23   after this point that I really would need one. I don't

24   really know exactly what to do, and so --

25           THE COURT: Well, it appears to me -- it seems to me

1   the best outcome --

2        MS. BOOKER:  Um-hmm.

3        THE COURT:  -- you can achieve in this claim

4   objection proceeding today is an order from this Court that

5   gives you some additional time -- requires you by a date

6   certain to file suit against the city on this claim --

7        MS. BOOKER:  Thank you, your Honor.

8        THE COURT:  -- in some appropriate non-bankruptcy

9   court; that is, some court other than this Bankruptcy Court.

10  What county are you -- is this in Wayne County?

11       MS. BOOKER:  Yes.

12       THE COURT:  Yeah.  So Wayne County Circuit Court,

13  for example, as an example, and to do that by a date certain

14  or your claim will be disallowed.  And then the idea, though,

15  of the stay modification notice and ADR procedures with the

16  stay modification notice here such as happened with you is

17  you were given the modification to the automatic stay to

18  permit you to file suit on your claim against the city in

19  some other court, some non-bankruptcy court, and to do what's

20  called liquidate your claim to prosecute your lawsuit to

21  judgment basically or to settle, agreed judgment settlement

22  amount where that court would set the amount of your claim,

23  either say, yes, you have a valid claim and you're entitled

24  to damages, "X" amount of dollars, fill in -- you know, they

25  would set the amount, or say, no, you're not entitled to any

1  relief, and you lose.  That's what I mean when I say

2  "liquidate your claim," and that's what the court does --

3  would do in the lawsuit.

4         And the city's argument in this claim objection here

5  involving your claim is that you were free to do that and you

6  had -- you were obligated to do that, pursue the claim, file

7  suit on the claim and pursue the claim in litigation at some

8  other court beginning promptly after November 3, 2015, when

9  the city filed and served on you the stay modification

10 notice, and the city's position, as I understand it, is I

11 shouldn't give you any more time.  I should say, okay, time

12 is up.  It's been way too long.  Plenty of time has passed.

13 You haven't done anything, so I should rule that you've

14 abandoned your claim and disallow the claim, and that's it.

15 But if I give you more time, you know, you're going to have

16 to go out and file suit by a date certain, and I'll set a

17 deadline, and you have to do it.  And if you don't do it,

18 your claim is going to get disallowed in this bankruptcy

19 case.  If you do it and let's say you win -- let's say you go

20 to Wayne County Circuit Court.  You file suit, get a judgment

21 eventually at some point.  You get a judgment let's say, you

22 know, for $20,000 against the city, and they don't appeal,

23 and that's the judgment.  Then you would have the ability to

24 argue in this court your claim should be allowed in the

25 bankruptcy case in the amount of $20,000, the amount set by

1   the state court, and then you should have rights to share and

2   distribution along with other creditors in the same class

3   where your claim is under the city's plan of adjustment.  So

4   if you want the Court to give you more time and a further

5   opportunity to file suit to prosecute your claim in some

6   nonbankruptcy court, I need to know that.

7           MS. BOOKER:  I do, your Honor.

8           THE COURT:  All right.  And you're thinking that if

9   I give you that additional time and set a deadline that you

10  will actually do something.  You will file suit.  You won't

11  just let the time go and nothing happens.

12          MS. BOOKER:  No, I won't do that.

13          THE COURT:  All right.  Well, let me hear from --

14  further from Mr. Swanson on behalf of the city.  Mr. Swanson,

15  I've raised the prospect for the first time, I think, in my

16  questioning of Ms. Booker here about the possibility of the

17  Court giving her some more time to file suit.  What do you

18  want to say about that?

19          MR. SWANSON:  Well, your Honor, obviously the city

20  believes that 2-1/2 years is a sufficient amount of time, but

21  if the Court were inclined to grant additional time, the city

22  would ask that it be a short period of time, perhaps two or

23  three weeks, and that any complaint that was filed also be

24  provided to me so that I'm aware that the state court suit

25  was filed.

1    THE COURT:  All right.  My ruling with respect to

2   Ms. Booker is that I will give her a bit more time to file

3   suit on her claim in an appropriate non-bankruptcy court.

4   Ms. Booker, the city has argued that I should only give you

5   two or three weeks.  How much time do you want me to give you

6   to file this lawsuit on your claim?

7    MS. BOOKER:  I can go to the Circuit Court myself

8   and initiate it, your Honor?

9    THE COURT:  Well, you can represent yourself in a

10   lawsuit if you want to.  That's up to you.  You can have an

11   attorney or you can represent yourself, but that's your

12   decision.

13    MS. BOOKER:  Okay.

14    THE COURT:  I don't have any control over what you

15   do and what the proceedings are that will occur once you file

16   a lawsuit in Wayne County Circuit Court, for example.  That

17   court has its own court rules and procedures that will apply,

18   and they'll apply to you whether you have an attorney or not,

19   I assume, but, anyway, how much time do you want me to give

20   you?

21    MS. BOOKER:  Thirty days.

22    THE COURT:  All right.  I will do that.  So 30 days

23   from today is Friday, June 22nd, 2018.  So the ruling with

24   respect to the claim objection against Ms. Booker's claim on

25   the fifty -- sorry -- sixty-second omnibus claim objection is

1  that rather than the Court disallow her claim at this time

2  based on the grounds argued in the claim objection, the Court

3  will -- Ms. Booker will be allowed until no later than June

4  22, 2018, to file suit against the city on her claim in an

5  appropriate non-bankruptcy court, and I will also include in

6  the order that Ms. Booker must promptly, upon filing any such

7  suit, must send a copy of her complaint to Mr. Swanson here,

8  attorney for the city in the bankruptcy case, in addition to

9  other -- whatever other requirements state law may impose on

10  you serving a summons and complaint on the city like you

11  would normally have to do in any state court lawsuit against

12  the city.  Mr. Swanson -- Ms. Booker, I think you have Mr.

13  Swanson's name and address from the claim objection which you

14  got in the mail; right?

15           MS. BOOKER:  Yes.  Yes, your Honor.

16           THE COURT:  So you know where to send it.

17           MS. BOOKER:  Yes.

18           THE COURT:  Just put it in the mail to him at that

19  address of his that's in the claim objection.  And the order

20  also will say that if you do not file suit on or before June

21  22, 2018, the city may file an affidavit of noncompliance and

22  submit a proposed order disallowing your claim in which case

23  the Court may disallow your claim without further notice or

24  hearing.  So you understand what's required here?

25           MS. BOOKER:  Yes, your Honor, I do.

1    THE COURT:  All right.  So you should receive a

2  copy -- I'll prepare and enter an order with respect to Ms.

3  Booker, and, Ms. Booker, you should receive a copy of that

4  order in the mail from our clerk's office within the next few

5  days.  But you understand what's required?

6    MS. BOOKER:  Yes, I do.

7    THE COURT:  Okay.  So to the extent the city has

8  argued in today's hearing, by the way, about Ms. Booker's

9  claim that her proof of claim is such that it fails to state

10  a valid basis for any relief or claim -- any valid claim

11  against the city for the reasons that Mr. Swanson argued in

12  today's hearing, I'm going to overrule that argument without

13  prejudice for the reason that it was not -- it was not stated

14  in the claim objection as a basis for disallowing the claim.

15  So, Mr. Swanson, then does that leave us then the Woodberry

16  matters?

17    MR. SWANSON:  Yes, your Honor.

18    THE COURT:  That plus Mr. Johnson, which we're going

19  to revisit in a little bit, that's it for today; right?

20    MR. SWANSON:  Yes, your Honor.

21    MS. BOOKER:  Thank you, your Honor.

22    THE COURT:  All right.  Thank you, Ms. Booker.

23  Before we go further, let me ask whether there is anyone in

24  the courtroom here who hasn't -- other than Mr. Johnson, who

25  we're going to deal with later, who is here to argue about a

1   city's claim -- objection to your claim which we -- other

2   than the persons involved in what we're referring to as the

3   Woodberry matters?  Anyone else here to argue or be heard

4   about any claims other than those dealing with the Woodberry

5   matters and Mr. Johnson?  I want to make sure we don't miss

6   someone.  Ma'am, you're raising your hand.  Come on up to the

7   microphone and tell me who you are, please.

8           MS. HOLMES:  I'm Theresa Holmes, and this is other

9   than the Woodberry claim.  And this is concerning to my son,

10  Derrez Payne.  We didn't get a chance to file the motion when

11  it was given to us on the 18th of April because --

12          THE COURT:  I'm sorry.  Whose claim is it?

13          MS. HOLMES:  It's my son.  He was 16 years old at

14  the time he was beaten by the Detroit Police Department,

15  and --

16          THE COURT:  Well, first of all, would you spell your

17  name, for me?  Theresa Holmes?

18          MS. HOLMES:  Holmes, H-o-l-m-e-s.

19          THE COURT:  And your son's name is Derrez?

20          MS. HOLMES:  Yes, D-e-r-r-e-z --

21          THE COURT:  Yes.

22          MS. HOLMES:  -- Payne, P-a-y-n-e.

23          THE COURT:  Now, did either you or Mr. Payne, your

24  son, file a claim in the bankruptcy case?

25          MS. HOLMES:  No.  It was filed when -- we filed it

1  against the City of Detroit, and when the City of Detroit

2  went into bankruptcy, that's how we entered into it.

3      THE COURT:  In other words, you filed a lawsuit

4  against the city --

5      MS. HOLMES:  Yes.

6      THE COURT:  -- before the city filed bankruptcy?

7      MS. HOLMES:  Yes.

8      THE COURT:  And then after the city filed

9  bankruptcy, there was a deadline for any creditors of the

10  city to file what's called a proof of claim.  Did you do that

11  or did your son do that?

12      MS. HOLMES:  No.

13      THE COURT:  No?

14      MS. HOLMES:  We had a lawyer representing us at the

15  time, and it went all through that, and he just told us it

16  was in bankruptcy and just to wait to hear from the

17  Bankruptcy Court.

18      THE COURT:  All right.  Let me interrupt you for

19  just a second.  Mr. Swanson, you raised your hand.  Do you

20  know where this claim is in the -- in your claim objections,

21  if anywhere?

22      MR. SWANSON:  Yes, your Honor.  We figured out that

23  it's in the fifty-seventh omnibus objection, a claim of --

24      THE COURT:  All right.  One moment.  In looking at

25  Exhibit 2 to the fifty-seventh omnibus claim objection --

1  that's Docket 12764 -- I see there is a claim number 1125

2  filed by Derrez Payne in the amount of $300,000, general

3  unsecured claim.  Notice of stay modification was filed at

4  Docket 9383.  Is that the claim you're identifying, Mr.

5  Swanson?

6  　　　　MR. SWANSON:  Yes, your Honor.

7  　　　　THE COURT:  All right.  From this, Ms. Holmes, it

8  looks like there was a proof of claim filed in the bankruptcy

9  case on behalf of Mr. Payne, Claim Number 1125, so, anyway,

10  so what do you want to say about this?

11  　　　　MS. HOLMES:  Well, when they sent us the letter

12  saying that it should be -- it was objected to, I was in the

13  hospital.  I had some medical issues that I had to go

14  through, so I wasn't able to get an attorney to represent us

15  at the time or to file the motion that we needed to file.

16  And I feel that it's not justified to be dropped at this

17  time.

18  　　　　THE COURT:  Well, let me ask you now, your son, Mr.

19  Payne --

20  　　　　MS. HOLMES:  Yes.

21  　　　　THE COURT:  -- is how old?

22  　　　　MS. HOLMES:  He's 25 now.

23  　　　　THE COURT:  25 now?  All right.  So -- and this is a

24  claim -- this proof of claim was filed by him rather than by

25  you?

1    MS. HOLMES:  Well, he was 16 when this happened, so

2    I was over him, and I'm the one that initially filed it.  And

3    at that time, I was in the name of Henderson.

4    THE COURT:  All right.  So you're talking about the

5    lawsuit that was filed.

6    MS. HOLMES:  Yes.

7    THE COURT:  By the time the proof of claim was filed

8    in the bankruptcy case, was Mr. Payne an adult?  What was he?

9    MS. HOLMES:  He might have reached the age of 18 or

10   19 because I believe it was filed --

11   THE COURT:  When did the incident happen that led to

12   the lawsuit?

13   MS. HOLMES:  I beg your pardon.

14   THE COURT:  When did the incident happen that led to

15   the lawsuit?

16   MS. HOLMES:  In 2010.

17   THE COURT:  All right.  And at that time your son

18   was 16.

19   MS. HOLMES:  Was 16.

20   THE COURT:  Okay.  So by 2013 he would have been

21   roughly 19 years old.

22   MS. HOLMES:  Yes.

23   THE COURT:  City filed their bankruptcy case in July

24   of 2013.  The deadline for filing proofs of claim, I believe,

25   was in February of 2014, so by that time he would have been

1    20 years old roughly, but in any event, over 18.

2              MS. HOLMES:  Right.

3              THE COURT:  All right.  And so presumably the claim

4    was filed in his name.  It looks like it was.  So -- and

5    obviously now Mr. Payne is an adult obviously.

6              MS. HOLMES:  Yes.

7              THE COURT:  Is he in the courtroom?  Is he here?

8              MS. HOLMES:  Yes, he's here.

9              THE COURT:  Mr. Payne, would you come up?  Ms.

10   Holmes, to the extent we're talking about a claim by your son

11   and since he's an adult, he can represent himself in this

12   bankruptcy case in responding to this claim objection, you

13   cannot represent him unless you're an attorney licensed to

14   practice in Michigan.  I assume you're not.

15             MS. HOLMES:  No.

16             THE COURT:  All right.  Then you cannot represent

17   him in this matter.

18             MS. HOLMES:  Okay.

19             THE COURT:  If you filed your own claim, you know,

20   as his mother in the bankruptcy case you could represent

21   yourself with respect to your own claim, but it doesn't

22   appear that that's what we're talking about.  The claim was

23   filed by Mr. Payne in the bankruptcy case, and so, you know,

24   he needs -- he can argue about it today, but you can't

25   represent him in this court.

1    MS. HOLMES:  Okay.

2    THE COURT:  And so anyway, Mr. Payne, would you --

3    for the record, you are who again?

4    MR. PAYNE:  Derrez Kierre Payne.

5    THE COURT:  All right.  So you've heard the

6    discussion we've had with your mother here in the last few

7    minutes.

8    MR. PAYNE:  Yes.

9    THE COURT:  All right.  So what do you want to say

10   about the city's claim objection, Mr. Payne?

11   MR. PAYNE:  It's just I didn't know about till the

12   last minute, like all the paperwork they sent to me and stuff

13   like that.  I didn't know about it till the last minute

14   because at first I thought it was dismissed.  When I went to

15   Bankruptcy Court years ago, I thought it was dismissed, so I

16   didn't really know about everything until now.  I just know

17   about what happened when I was young.  And I tried to get

18   lawyers and stuff when they sent the paper, but it's like

19   nobody didn't want to represent over another lawyer.  They

20   didn't want to pick up his case.

21   THE COURT:  So was there a lawyer representing you

22   in the lawsuit that was filed before the bankruptcy?

23   MR. PAYNE:  Yes.

24   THE COURT:  And so why isn't that lawyer here

25   representing you now?

1    MR. PAYNE:  Because when they went into bankruptcy,

2  he dropped out because he said he wasn't going to get paid,

3  so it's like he dropped out because the case went into

4  bankruptcy.

5    THE COURT:  And what court was this lawsuit filed

6  in?  Was it Wayne County Circuit Court?  Do you know?

7    MR. PAYNE:  I can't remember.

8    THE COURT:  All right.  Well, okay.  So do you

9  want -- what do you want the Court to do about this objection

10  to your claim that the city filed here?

11    MR. PAYNE:  I want to go on with the case.

12    THE COURT:  You want -- do you want more time?  Do

13  you want this Court to give you more time to prosecute --

14  pursue and prosecute your lawsuit that you filed before the

15  bankruptcy?

16    MR. PAYNE:  Yes.

17    THE COURT:  How much time do you want?

18    MR. PAYNE:  How much time can I get, your Honor?

19    THE COURT:  Not a lot.  You heard me give Ms. Booker

20  30 days.  You would have to do something to get the state

21  court to -- essentially to reactivate your lawsuit.

22    MR. PAYNE:  Right.

23    THE COURT:  It may be that the state court where the

24  lawsuit was filed has had this administratively closed since

25  the time of the filing of the city's bankruptcy case and has

1   done nothing more about it --

2          MR. PAYNE:  Right.

3          THE COURT:  -- probably because that court has no

4   idea that the city issued -- filed and served this stay

5   modification notice that allowed you to go forward with the

6   case --

7          MR. PAYNE:  Right.

8          THE COURT:  -- some time ago, and so that court

9   would probably not do anything.  So you or your attorney on

10  your behalf would have to take some action -- appropriate

11  action in that court where the lawsuit is pending to get that

12  court to -- essentially to reactivate the case and start

13  moving it forward so that you could prosecute the lawsuit

14  against the city in that court --

15         MR. PAYNE:  Right.

16         THE COURT:  -- to judgment if you can't get it

17  settled, so you're going to have to take some action.  The

18  precise form of action or thing you'll have to do in that

19  court to get the case reactivated is something that I can't

20  give you advice about.  I can't give you legal advice about

21  that, and I don't really know the precise steps you have to

22  take in that particular court.  I don't even know what court

23  it is because you're not -- it doesn't sound like you're

24  terribly sure about it.

25         MR. PAYNE:  Right.

1      THE COURT:  So we're probably talking about no more

2  than 30 days for you to get the case reactivated and get it

3  moving.

4      MR. PAYNE:  Okay.  Do I go back through my lawyer to

5  get the information?

6      THE COURT:  Who was your lawyer before?  Do you

7  remember?

8      MR. PAYNE:  David Turner.

9      THE COURT:  I'm sorry.

10      MR. PAYNE:  David Turner.  Turner, something like

11  that.

12      THE COURT:  You know, it's up to you what lawyer you

13  want to use.  If you want to use --

14      MR. PAYNE:  Don't no lawyer --

15      THE COURT:  -- try to get David Turner to continue

16  representing you in the thing, sure.  Go talk to him.

17      MR. PAYNE:  Don't no lawyer want to represent me

18  because it's after so many years of the case.

19      THE COURT:  Well, you can either pursue that lawsuit

20  with a lawyer, a lawyer of your choosing -- obviously any

21  such lawyer would have to be willing to take the case.  You'd

22  both have to be willing for that person to be your lawyer in

23  the case or you can represent yourself in the case.  Those

24  are the choices.  But the case would have to get going.  You

25  have to get going on it if you're going to -- if you're going

1  to pursue it rather than just let it sit and do nothing for

2  years and years.

3       MR. PAYNE:  I never -- like we never let it sit.

4  It's just our lawyer said he was going to handle everything,

5  and by him handling everything he's saying he would get back

6  to us when like he hears something or he'd find out things or

7  anything I need to sign or anything, he would contact us.  He

8  never contacted us.  He just let the case go into bankruptcy,

9  and then he dropped out, and don't no lawyer want to pick up

10 after him.

11      THE COURT:  The lawyer you're talking about, is that

12 this Mr. Turner?

13      MR. PAYNE:  Yes.

14      THE COURT:  All right.  One second.  Did he file the

15 proof of claim for you in the bankruptcy case?  Do you know?

16      MR. PAYNE:  I think he did everything for me

17 because --

18      THE COURT:  Do you know whether he filed your proof

19 of claim for you?

20      MR. PAYNE:  Yeah.

21      THE COURT:  He did?  One second.  All right.  Well,

22 let me give Mr. Swanson a chance to be heard further about

23 the city's objection to your claim, please.  Mr. Swanson, one

24 second.  Okay.  Go ahead, Mr. Swanson.

25      MR. SWANSON:  Thank you, your Honor.  We've been

1  furiously trying to figure out what this claim involves

2  because there was no response filed to it.  There was a

3  withdrawal filed by the attorney, Christopher Trainor, in

4  this bankruptcy case, and Judge Rhodes on December 10th,

5  2014, at Docket 8653 approved the withdrawal of Mr. Perez's

6  attorney, Mr. Trainor.

7          THE COURT:  His withdrawal as counsel for Mr. Perez

8  in this bankruptcy case?

9          MR. SWANSON:  Correct, your Honor.

10         THE COURT:  Yeah.  Go on.

11         MR. SWANSON:  And then there was also a withdrawal

12 filed in the state court suit, I believe, on July 22nd, 2014.

13 We just looked that up.

14         THE COURT:  So where is the state court suit?

15         MR. SWANSON:  Wayne County Circuit.

16         THE COURT:  Okay.  And is the -- as far as you know,

17 the status is what?  It's administratively closed since the

18 bankruptcy was filed?

19         MR. SWANSON:  Yes.  I believe the last two entries I

20 saw were a motion to withdraw, order granting that motion,

21 and an administrative closure.

22         THE COURT:  Okay.  So, anyway, go on.

23         MR. SWANSON:  Well, your Honor, no written response

24 obviously was filed to the city's objection, and the deadline

25 to do so has passed.  It appears that the Court may be

1  inclined to grant Mr. Perez some additional time to take

2  action in that state court case to reopen the case, and I

3  would ask that your Honor have the same procedure, if the

4  Court is inclined to do that, as it just imposed on Ms.

5  Booker, a short period of time, and, you know, service of

6  whatever action Mr. Perez takes on me.  I'm not accepting

7  service on behalf of the city, but I just want to be informed

8  so that if we do need to file an affidavit with the Court, I

9  can file that truthfully and honestly.

10  THE COURT:  All right.  Thank you.  In the case of

11  Mr. Payne here, which his claim is one of the claims objected

12  to, again, by the city's fifty-seventh omnibus claim

13  objection, Docket 12764, what I'll do is I'll prepare and

14  enter a separate order regarding Mr. Payne's claim and the

15  objection to claim.  Mr. Payne, what the order will say is

16  that very much like what I described when I was speaking to

17  Ms. Booker, Pamela Booker -- and I don't know if you heard

18  that before, but what the order will say is that I will give

19  you until 30 days from today, June 22, 2018, to take

20  appropriate action to reactivate the lawsuit pending in Wayne

21  County Circuit Court.  By the way, Mr. Swanson, do you have a

22  case number, a name for that case?

23  MR. SWANSON:  Yes, your Honor.

24  THE COURT:  I want to put that in the order, so what

25  is it?

1        MR. SWANSON:  The case number is 12-013105-cv --

2    z -- sorry -- cz.

3        THE COURT:  CZ, yes.

4        MR. SWANSON:  That's it, your Honor.

5        THE COURT:  And the parties in the caption are what?

6        MR. SWANSON:  There are numerous parties.

7        THE COURT:  Lead plaintiff, lead defendant.  First

8    plaintiff.

9        MR. SWANSON:  Derrez Payne is listed as the only

10   plaintiff.

11       THE COURT:  Yes.

12       MR. SWANSON:  And the City of Detroit is listed as

13   one of seven defendants.  All of the other defendants are

14   individuals.

15       THE COURT:  So I can -- what I'll call it is Derrez

16   Payne versus City of Detroit, et al., and I'll list the case

17   number, and so that will make clear what Wayne County Circuit

18   Court case we're talking about here for everyone's reference.

19   So the order will require you to take appropriate action, Mr.

20   Payne, no later than June 22, 2018, to reactivate that

21   lawsuit in the Wayne County Circuit Court.  And anything that

22   you file in that case to try to reactive it you need to serve

23   a copy of that on Mr. Swanson here, Attorney Marc Swanson,

24   who's here at this table.  He's attorney for the city in

25   connection with this claim objection in this bankruptcy case.

1   You or your mother or one of you or both must have a copy of

2   the claim objection that brings you to court today.  If you

3   look in that claim objection, at the end of the claim

4   objection itself it will -- it's signed by Mr. Swanson.

5   You'll see his name, his law firm name, their address, so you

6   mail it to -- mail a copy of anything you file to Mr.

7   Swanson.  Now, you'll still have to serve the city and the

8   other parties in the case as the local -- as the court's --

9   the state court's rules require.  Mr. Swanson is -- as I

10  said, he's not acting as counsel for the city in the state

11  court lawsuit.  Mr. Swanson is, by the way, not an employee

12  of the City of Detroit.  He's an outside attorney who

13  represents the city in connection with certain matters in

14  this bankruptcy case, so don't think of him as the attorney

15  for the city in your state court lawsuit.  He's not.  All

16  right.  So you need -- but you need to send him a copy of

17  anything that's filed, anything you file in that case so

18  he'll be aware of it.

19          Now, if, Mr. Payne, you fail to comply with this

20  order in taking appropriate action to reactivate that state

21  court lawsuit by June 22, 2018, if you fail to do that, as

22  the order will say, the city may file in this bankruptcy case

23  an affidavit of noncompliance saying that you didn't do it

24  and may submit a proposed order disallowing your claim in

25  this bankruptcy case, and the Court may disallow your claim

1   without further notice or hearing.  So that's what the order

2   is going to say, the gist of what it's going to say.  You

3   should receive a copy of the order in the mail from our

4   clerk's office within the next few days, but I need to have a

5   current address from you because since you didn't file a

6   written response to the claim objection, I don't know what

7   your current address is, so give that to me, and Mr. Swanson

8   will have it that way, too.

9              MR. PAYNE:  It's 14121 Patton, P-a-t-t-o-n.

10             THE COURT:  Start over again.  It's what?

11             MR. PAYNE:  14121 Patton.

12             THE COURT:  14121 --

13             MR. PAYNE:  Patton, P-a-t-t-o-n.  48223 is the area

14  code.

15             THE COURT:  Patton is the street?

16             MR. PAYNE:  Yes.

17             THE COURT:  P-a-t-t-o-n?

18             MR. PAYNE:  Yes.

19             THE COURT:  And that's Detroit?

20             MR. PAYNE:  Yes.

21             THE COURT:  And you're saying the zip code is 48223?

22             MR. PAYNE:  Yes.

23             THE COURT:  All right.  So that's an address -- if

24  something is mailed by our clerk's office, you'll get mail

25  there.  You'll get the mail there.

1          MR. PAYNE:  Okay.  And I'll just --

2          THE COURT:  Right?

3          MR. PAYNE:  Right.

4          THE COURT:  All right.  That's okay.

5          MR. PAYNE:  Can I just take that, take it down to

6     the court that I filed the case at?

7          THE COURT:  I don't know what you're saying.

8          MR. PAYNE:  The paper that you're -- like the

9     documents you're all sending me, I'll just use that in the

10    court?

11         THE COURT:  The order I send you will just be an

12    order saying basically what I just described.

13         MR. PAYNE:  Right.

14         THE COURT:  What you have to file in the Wayne

15    County Circuit Court to try to reactive your case is

16    something different.  That Court may want to see a copy of

17    any orders this Court has issued, and you can show it to

18    them, but that --

19         MR. PAYNE:  Okay.  That's what I was asking.

20         THE COURT:  I don't know what's required there, and

21    I'm not advising you about that.  I encourage you to try to

22    find an attorney to represent you in this action in this

23    effort to reactivate that state court lawsuit and to

24    prosecute it, but, you know, it's up to you.  If you want an

25    attorney, you can get one.  If you don't, can't, or won't or

1   don't want to have an attorney, then you got to do it on your

2   own --

3           MR. PAYNE:  Right.

4           THE COURT:  -- representing yourself basically,

5   so -- all right.  So you'll be getting that order within the

6   next few days from our clerk's office, but you understand

7   what's required.

8           MR. PAYNE:  Yes.

9           THE COURT:  All right.  Okay.  So thank you then.

10  That concludes the matters regarding the claim of Mr. Payne,

11  which is part of the fifty-seventh omnibus claim objections.

12  The fifty-seventh is one we're going to come back to, as we

13  discussed earlier, to talk a little bit more about Mr.

14  Johnson in a bit.

15          Now I think I'll ask it again just to make sure.  Is

16  there anyone in the audience here who wanted to speak about a

17  claim other than the claim involving the Woodberrys or Mr.

18  Johnson?  Anyone else?  Apparently not.  All right.  Let's

19  hear, Mr. Swanson, about the Woodberry matter.

20          MS. EDITH WOODBERRY:  I'm Edith Woodberry, in pro

21  per.

22          THE COURT:  Any of the Woodberrys who want to speak,

23  come on up to this table here, please, if you would, or

24  people involved in the Woodberry matter come up to the table

25  and just have a seat there.  And I'll give you a chance to

1   speak after we hear from Mr. Swanson here about it.  Hold on.

2          MS. EDITH WOODBERRY:  I don't hear well.

3          THE COURT:  All right.  So this -- in talking about

4   the Woodberry matters then, we're talking about -- just to

5   recapitulate a bit, we're talking about the debtor's fifty-

6   sixth omnibus claim objection as it relates to the claim of

7   Edith Woodberry, right --

8          MS. EDITH WOODBERRY:  Right.

9          MR. SWANSON:  Yes, your Honor.

10         THE COURT:  -- and then the debtor's sixty-second

11  omnibus objection as it relates to several other individuals

12  named Woodberry who jointly filed a response to that claim

13  objection.  One second.  All right.  Let me ask those who are

14  here then about the Woodberry matter, would you identify

15  yourselves?  Speak into the microphones there at the table

16  and identify yourselves for the record, please.  Ma'am, you

17  are who?

18         MS. EDITH WOODBERRY:  Edith Woodberry, in pro per.

19         THE COURT:  All right.  Sir?

20         MR. CRANSTON WOODBERRY:  I'm Cranston Woodberry, in

21  pro per.

22         THE COURT:  Sir?

23         MR. LAJEFF WOODBERRY:  LaJeff Woodberry, in pro per.

24         THE COURT:  All right.  Okay.  So that covers

25  everyone who's here to speak about the Woodberry matter on

1  behalf of the Woodberrys or the claimants.  The only other

2  person out in the courtroom is the court security officer and

3  Mr. -- you're Mr. Johnson; right?

4          MS. JOHNSON:  Yes.

5          THE COURT:  Okay.  All right.  So, Mr. Swanson, go

6  ahead.

7          MR. SWANSON:  Thank you, your Honor.  In 2005 the

8  city filed a lawsuit against several of the Woodberrys.

9  They're listed here, the ones that filed proofs of claim, in

10  paragraph 2 of the city's response filed at Docket 12805.  It

11  was a condemnation action, and in 2009 the Wayne County

12  Circuit Court entered a judgment granting the city's motion

13  for summary judgment.  That judgment provided that the city

14  would make certain payments to the Woodberrys, which it did,

15  and there were acknowledgements filed by the Woodberrys that

16  they received those payments, and that judgment also provided

17  that it would be with prejudice to any further assertion of

18  claims by defendants against the city arising directly or

19  indirectly in whole or in part from the taking of the subject

20  property, and that judgment was entered in April of 2009.

21  Your Honor, the --

22          THE COURT:  I did see the judgment.

23          MR. SWANSON:  Yeah.

24          THE COURT:  It's attached.  A copy is attached to

25  your reply I think you may have mentioned.  Go on.

1        MR. SWANSON: Yep. The city, with different

2  counsel, filed an objection to the Woodberrys' claims in 2014

3  or 2015, and there was a hearing in front of Judge Rhodes.

4  We attached the transcript to our objection. And what Judge

5  Rhodes focused on was a portion of that April 28th, 29th,

6  2009, judgment, which said pursuant to Rule 2.602(a)(3) this

7  judgment does not resolve the last of any claims and does not

8  close this case. At that hearing the city's counsel was

9  unsure what, if anything, remained in this case, and Judge

10  Rhodes said, well, I'm not sure. We're going to allow the

11  state court to take appropriate action, and I'm going to

12  overrule the objection without prejudice at that time.

13        So once we received the Woodberrys' response, what

14  we did is we pulled the state court docket. We attached

15  that, I believe, as Exhibit 8 to our reply. That state court

16  docket provides that essentially after the April 29 judgment

17  there's been a few entries. We actually got the file, which

18  was put on -- you know, passed into storage in the state

19  court. We got that yesterday. We pulled the orders.

20  There's been, you know, no order overruling the April 2009

21  judgment. There's been no order affecting that April 2009

22  judgment. And spoke with the city law department, do not

23  believe that there is anything at all left to be done in this

24  case. The Woodberrys were served with stay modification

25  notices. Nothing has been done in the state court suit for

1    the past nine years, and under the ADR order and the stay

2    modification notice procedure, if the Woodberrys wanted to

3    assert any sort of further claims, they had to take some

4    action in the state court case, and no action has been taken,

5    and, thus, we would ask that the Court expunge these claims.

6    The Woodberrys have already received compensation from the

7    city as provided in the April 2009 judgment and the

8    acknowledgements filed by the Woodberrys.

9         THE COURT:  So is the April 2009 judgment -- I think

10   the file date on it is April 28, 2009, and it's attached, as

11   you say, to your reply at Docket 12805.  Is that judgment

12   even now not yet appealable to the Michigan Court of Appeals

13   because of the statement at the end of the judgment saying

14   that pursuant to MCR 2.602(a)(3) this judgment does not

15   resolve the last of any claims and it does not close this

16   case?

17        MR. SWANSON:  I don't believe it's appealable as a

18   final order, but that's not the only avenue for appeal from a

19   state court order.  They certainly could have filed a motion

20   for leave to appeal the order and then --

21        THE COURT:  Well, what -- if the Woodberrys are

22   given a bit more time to try to take steps to get the Wayne

23   County Circuit Court to either modify that statement in the

24   April 2009 judgment or enter -- file something in its case

25   saying that that judgment, in fact, does resolve the last of

1 the claims and closes the case so that they can appeal as of

2 right to the Michigan Court of Appeals then and they go do

3 that, will they be able under the Michigan Court Rules to

4 then file a notice of appeal and appeal that judgment even

5 now? Do you know?

6 MR. SWANSON: I don't know the answer to that, your

7 Honor.

8 THE COURT: I mean part of your argument is if they

9 wanted to do that, they should have done that a long time ago

10 obviously, but is that possible at this point?

11 MR. SWANSON: I don't know.

12 THE COURT: It might be?

13 MR. SWANSON: It might be.

14 THE COURT: And I assume you have no idea why the

15 circuit judge put that language in at the end of the April

16 2009 judgment.

17 MR. SWANSON: We have no idea.

18 THE COURT: All right. Let me hear from those --

19 the Woodberrys who wish to speak about this. I recognize

20 none of you are represented by attorneys. None of you are

21 attorneys, I assume.

22 MS. EDITH WOODBERRY: I'm representing myself.

23 THE COURT: And so you can each speak on your own

24 behalf about this claim objection, so I guess, Edith

25 Woodberry, you're up first, so you can come on up and say

1   what you'd like.

2          MS. EDITH WOODBERRY:  Your Honor, I am responding to

3   the complaint that I got half of that stuff.  I will admit

4   that I haven't the slightest idea of what some of the court

5   cases and stuff that they were naming mentioning numbers -- I

6   myself don't know what they're -- because I don't have the

7   Bankruptcy Court rules, so I don't know what those rules say.

8   I'm speaking as a person who believes in Jesus Christ as the

9   son of God, and God is well pleased with me.  I am, too.

10         I would say at -- I would ask this Court to deny the

11  city's motion, and the basis for asking the Court to deny I'm

12  going to rely on -- I think his name is Charles Raimi,

13  Raimi's declaration in support of the debtor's sixty-second

14  objections to certain claims.  In his -- he made this

15  declaration under the penalty of perjury that it was true.

16  In it --

17         THE COURT:  I have that declaration of Mr. Raimi,

18  and I have read it, but go ahead.

19         MS. EDITH WOODBERRY:  Okay.  Well --

20         THE COURT:  What about that?

21         MS. EDITH WOODBERRY:  Well, in it he gives an

22  Exhibit 2 in which whatever stays he's referring to were in

23  it, he claims that the city's ongoing claims or

24  reconciliation process involves the collective effort of a

25  team of employees assembled from personnel specifically

1   familiar with the operations and liabilities of the city.

2   This team works together in conjunction with the city's

3   counsel, the city's financial advisor, the city's claim agent

4   to review proofs of claims against the city.  And in it he

5   says that -- he lists me on his exhibits as being one of the

6   persons who did not respond to the -- let me see so I can see

7   this good.  I'll say this.  You said you had it, but I'll say

8   what he said.  He said the claim is abandoned until to

9   prosecute his or her claims consequently each of the claims

10  at Exhibit 2 should be disallowed.  Well, I have responded to

11  the claim, and in my responses my proofs are in the hands of

12  the City of Detroit, and so I went to the City of Detroit and

13  asked for a copy of their files against me so I could get

14  these proofs that the city wanted.  The Bankruptcy Court --

15  that's where I went to.  The Bankruptcy Court informed me

16  that the Bankruptcy Court do not have the city files at all,

17  that they allowed the city to keep their files in a special

18  thing offset, and they gave me a number, but I don't remember

19  the number that they gave me that the city has complete

20  control of the city files.  The Bankruptcy Court now at this

21  point don't have nothing that the city had done.  So I went

22  to the city to get a copy of their file so I could see what

23  it was I needed to respond to.  The city did not give me the

24  files, but what did happen, the lady who's in the Bankruptcy

25  Court -- I went back to the Bankruptcy Court.  When I was

1   there, the bankruptcy told me that this -- a lady that was in

2   there was in charge of the city files, that the Bankruptcy

3   Court had nothing to do with the city files, that these was

4   in complete control of the files, and whatever I wanted I'd

5   have to get it from the city.  Well, the city clerk --

6   there's a lady that was in charge whose name I don't know.

7   She gave me a copy of my response to the claim -- to what I

8   was seeking from the Bankruptcy Court.  And what I was

9   seeking from the Bankruptcy Court was delayed.  I'll say what

10  it was.  In 2014 I had said my last three things was -- 2014,

11  yes.  And I was not seeking --

12          THE COURT:  Ms. Woodberry -- excuse me.  Excuse me.

13  Ms. Woodberry --

14          MS. EDITH WOODBERRY:  I was not --

15          THE COURT:  Excuse me.  Excuse me.  We need to move

16  this along a little bit.

17          MS. EDITH WOODBERRY:  Okay.  That's what I'm doing,

18  but the truth might be long.

19          THE COURT:  Well hold it.  Stop.  Stop.  Let me ask

20  you a question or two --

21          MS. EDITH WOODBERRY:  Okay.  Fine.

22          THE COURT:  -- if I may.  You have this judgment

23  that the city has been referring to from the Wayne County

24  Circuit Court, April 28, 2009, a long time ago, but this

25  judgment which the Wayne County Circuit Court entered

1  judgment against a number of people, including yourself, as I

2  understand it, in this condemnation action that was filed by

3  the city -- and there's language at the end of that judgment

4  saying the judgment doesn't resolve the last of the claims

5  and doesn't close the case.  That language may have created

6  an inability on your part and the part of your fellow

7  defendants in the case to appeal that judgment to the

8  Michigan Court of Appeals if you had wanted to do that, and

9  so something needed to be done further to remove that barrier

10  in the state court judgment to -- perhaps to an appeal.  And

11  so no appeal was ever filed, as I understand it, to that

12  judgment.  Just a minute.  Just a minute.  And is it true

13  that now you and your fellow Woodberrys who are here today

14  want the opportunity to go back to the state courts and to

15  appeal that judgment?  Is that what you want to do with that?

16        MS. EDITH WOODBERRY:  Could I say this here?  I

17  think I appealed the judgment to the state, Lansing, and I

18  think that I got an order saying that I needed a leave to

19  appeal if that was -- I needed a leave to appeal so,

20  therefore, it was not in their jurisdiction to respond.  So I

21  went back to the city -- to the court and asked the judge.  I

22  didn't write a motion.  I just was before her because she had

23  ordered that whatever monies that the city was going to give

24  us be put in escrow because the city said they had put it in

25  escrow, so the Judge, she told them put it into escrow and

 1   told me that combined with whatever money she was giving me

 2   for my personal property that nobody owned but me that I

 3   should give them a portion of money, and I would not do that,

 4   so she said that she's going to leave the money -- put it in

 5   escrow because I said you're taking the property from me, so

 6   why -- I don't have any authority once they took the property

 7   away from me, and then they're telling me what they're going

 8   to give me from my taking my property, not theirs.  These are

 9   just people that was in an 18-unit apartments, and it was

10   more than the Woodberrys, although you just have the

11   Woodberrys before you.

12           THE COURT:  Are you trying -- do you want to try

13   again to appeal this judgment from April 28, 2009?

14           MS. EDITH WOODBERRY:  Yes.  I'm asking the judge

15   to -- this Court to deny the city's motion that's before

16   them.  That's what I'm -- that's what I'm asking the judge.

17           THE COURT:  But the reason you're doing that --

18   you're asking me that is because you want an opportunity to

19   try again to appeal --

20           MS. EDITH WOODBERRY:  Well --

21           THE COURT:  -- excuse me -- to appeal the April 2009

22   judgment of the Wayne County Circuit Court?

23           MS. EDITH WOODBERRY:  Right.

24           THE COURT:  And that, of course, would have to be

25   appealed to the Michigan Court of Appeals, not something the

1    Bankruptcy Court would decide.

2          MS. EDITH WOODBERRY:  No.  I was never asking the

3    Bankruptcy Court --

4          THE COURT:  Yeah.

5          MS. EDITH WOODBERRY:  -- to appeal it.

6          THE COURT:  All right.

7          MS. EDITH WOODBERRY:  I was asking the Bankruptcy

8    Court to deny the motion based on the fact that the case is

9    still pending.  It's still pending --

10          THE COURT:  All right.

11          MS. EDITH WOODBERRY:  -- in the --

12          THE COURT:  So you want to take some kind of action

13    in the state court, the Wayne County Circuit Court, to enable

14    you to appeal that judgment from April 2009; is that right?

15          MS. EDITH WOODBERRY:  Yeah.  I have taken that

16    action, but the Court denied my motion to sign a final -- to

17    put her -- if it's a final decision of the Court to put it in

18    writing so the appeals court can have jurisdiction over it.

19    Right now the appeals courts say they do not have

20    jurisdiction over it until it's a final thing.

21          THE COURT:  Are you telling me that you asked the

22    state court judge --

23          MS. EDITH WOODBERRY:  I asked Judge --

24          THE COURT:  Excuse me.  Don't interrupt me.  Let me

25    finish.

1    MS. EDITH WOODBERRY:  Okay.

2    THE COURT:  Are you telling me that you asked the

3  state -- at some point in time you asked the state court

4  judge, the Wayne County Circuit judge, to put something in

5  writing in the case saying that the -- all the claims have

6  been resolved and that the case is closed so that you then

7  could file a notice of appeal appealing the April 2009

8  judgment?

9    MS. EDITH WOODBERRY:  Yes, I did.

10    THE COURT:  And when did you ask for that?

11    MS. EDITH WOODBERRY:  Oh, I asked for it maybe -- I

12  really don't know when, but it's -- I asked for it.  I don't

13  know.  I could not tell you right now the time and when, but

14  I asked for it.  Not only that, I asked for -- they said that

15  they put the money in escrow.  I asked them for the escrow

16  account number.

17    THE COURT:  I don't want to hear about escrow.

18    MS. EDITH WOODBERRY:  Well --

19    THE COURT:  What I want to know is if you asked the

20  state court to do that, when did you ask, and what did the

21  state court say in response?

22    MS. EDITH WOODBERRY:  Judge Curtis said that she was

23  not going to do it until I gave the other Woodberrys part of

24  whatever she had awarded me, and I wasn't going to do that.

25  That was my property and mine alone.

1    THE COURT:  Is there anything written from Judge

2  Curtis that says that?

3    MS. EDITH WOODBERRY:  She would not do it.  She said

4  it's on a transcript.

5    THE COURT:  And was this back in 2009?

6    MS. EDITH WOODBERRY:  No.  It was -- might have been

7  later than -- it could have been in 9 because they evicted me

8  at the same time.

9    THE COURT:  All right.  So if I give you more time

10  to take action to try to arrange things somehow so that you

11  can appeal --

12    MS. EDITH WOODBERRY:  Well --

13    THE COURT:  -- the state court judgment, do you

14  intend to do something?

15    MS. EDITH WOODBERRY:  To me, your Honor, the ball is

16  in the city's hand.  I don't know what to do to make the city

17  do -- and the court and the judge -- the judge has since

18  resigned, but I don't know what to do to make them conform

19  with their laws.  I haven't the slightest idea where to go

20  now to make them --

21    THE COURT:  Have you talked to an attorney about

22  this?

23    MS. EDITH WOODBERRY:  I don't have no money, your

24  Honor.

25    THE COURT:  So the answer is no?

1    MS. EDITH WOODBERRY:  The answer is no.  I did go to

2  Legal Aid, and Legal Aid told me because there was money

3  involved they could not represent me.

4    THE COURT:  All right.  I'd like to give the other

5  Woodberrys here an opportunity to speak now, so let me do

6  that.

7    MS. EDITH WOODBERRY:  And, your Honor, could I make

8  one thing clear for this record?  These other people, they're

9  just like people to me.  They're not a part of my claim in my

10  case.

11    THE COURT:  All right.  Cranston Woodberry, would

12  you like to -- did you want to say anything?

13    MR. CRANSTON WOODBERRY:  Yeah.  He wanted --

14    THE COURT:  I don't care which of you goes first.

15    MR. CRANSTON WOODBERRY:  Okay.

16    THE COURT:  All right.  So you're LaJeff Woodberry?

17    MR. LAJEFF WOODBERRY:  Yes, your Honor.

18    THE COURT:  All right.  Some on up to the podium,

19  please.

20    MR. LAJEFF WOODBERRY:  Good afternoon, your Honor.

21  LaJeff Woodberry, in pro per.  First I want to say that I was

22  never a part of the original suit against -- actually, the

23  attorney referred to Woodberrys; however, I was an injured

24  party because I have an interest in the property, and that's

25  why I took my case to the Bankruptcy Court.  I just wanted to

1  put that out first.  And the Bankruptcy Court, I guess,

2  apparently -- what you was getting to because the judge

3  didn't make a final order that we weren't allowed to appeal

4  it, so we like in limbo not able to do anything, but yet the

5  city is still holding our property and not compensating us

6  for it.  And with that being said, 2009 the city took the

7  property, which we can say that, you know, they didn't

8  operate, I guess, in good faith because right after that they

9  went into bankruptcy.  And, you know, it's just not fair for

10 them to take our property and not compensate and not just

11 compensate because I heard them say "compensate," but the

12 word is "just compensation."  I mean I got a $5 million house

13 and you give me a hundred thousand.  Okay.  You're

14 compensating me, but that doesn't cut the mustard, you know.

15 It has to be just compensation, and that's --

16        THE COURT:  Well, you said -- excuse me.  You said

17 you weren't part of the state court -- the Wayne County

18 Circuit Court lawsuit.

19        MR. LAJEFF WOODBERRY:  Right.

20        THE COURT:  Have you ever filed suit yourself?

21        MR. LAJEFF WOODBERRY:  No, I've never filed suit,

22 your Honor.

23        THE COURT:  Have you ever taken any action in any

24 court outside of the Bankruptcy Court to try to pursue this

25 claim that you say you have?

1          MR. LAJEFF WOODBERRY:  Only through the Bankruptcy

2     Court, your Honor.

3          THE COURT:  All right.  Why haven't you taken action

4     on your own behalf either to intervene -- seek to intervene

5     in the existing lawsuit or file your own lawsuit?

6          MR. LAJEFF WOODBERRY:  Well, to be honest with

7     you -- and I hate to bring this up -- I was actually in fear

8     because at the time I was working for the city, and, you

9     know, my livelihood was on the line, so I kind of just was

10    sitting back hoping that the city would do the right thing

11    and just compensate my family as well as my mother.

12         THE COURT:  Do you work for the city now?

13         MR. LAJEFF WOODBERRY:  No.  I'm since retired, your

14    Honor.

15         THE COURT:  Since when?

16         MR. LAJEFF WOODBERRY:  2017, February.

17         THE COURT:  All right.  So if the Court -- if this

18    Court gives you and the other Woodberrys a bit more time to

19    do something, to take action --

20         MR. LAJEFF WOODBERRY:  Um-hmm.

21         THE COURT:  -- to try to pursue your claims or any

22    appeals that you want to pursue in the state court system,

23    are you going to do something?

24         MR. LAJEFF WOODBERRY:  Absolutely, and I have to be

25    honest with you because I have to find a mechanism because I

1  do recall where my mother did go and try to see things, and

2  they said because the court didn't make a final order, she

3  wasn't allowed to appeal it to the next level, and that was

4  the Catch 22 that we've been in for so long here.  And I

5  don't know if the Bankruptcy Court can compel the state court

6  to make a final order.  I don't know the mechanisms with

7  that, but I'm --

8          THE COURT:  The answer is no.  I cannot compel.

9          MR. LAJEFF WOODBERRY:  Okay.

10          THE COURT:  This Court cannot the compel the state

11  court to do something --

12          MR. LAJEFF WOODBERRY:  Okay.

13          THE COURT:  -- like that, but that doesn't mean that

14  a party in what you described as a Catch 22 can't do

15  something in the state court system about that.

16          MR. LAJEFF WOODBERRY:  Okay.

17          THE COURT:  And so that's the place where you got to

18  go and do something.

19          MR. LAJEFF WOODBERRY:  Okay.

20          THE COURT:  And you got to do something.

21          MR. LAJEFF WOODBERRY:  Okay.

22          THE COURT:  If I give you more time, you can't just

23  let it sit, and I'm sure you guys don't want to let it just

24  sit.

25          MR. LAJEFF WOODBERRY:  Of course not.

1          THE COURT:  You want to get moving; right?

2          MR. LAJEFF WOODBERRY:  Absolutely, your Honor, and I

3     appreciate it.

4          THE COURT:  All right.  So have you talked to a

5     lawyer about this?

6          MR. LAJEFF WOODBERRY:  No, I haven't spoken to a

7     lawyer only because I was under the impression that --

8          THE COURT:  Are you going to?

9          MR. LAJEFF WOODBERRY:  After hearing you, I

10    definitely will find out what I need to do to --

11         THE COURT:  Well, I ask because you've got what

12    sounds like a bit of a -- a really pretty unusual procedural

13    problem --

14         MR. LAJEFF WOODBERRY:  Um-hmm.

15         THE COURT:  -- in the state court case and state

16    court system in this lawsuit.

17         MR. LAJEFF WOODBERRY:  Um-hmm.

18         THE COURT:  And it might be well for you to talk to

19    a lawyer who can give you some advice about what needs to be

20    done here --

21         MR. LAJEFF WOODBERRY:  Okay.

22         THE COURT:  -- to allow the Woodberrys to try to

23    appeal --

24         MR. LAJEFF WOODBERRY:  Um-hmm.

25         THE COURT:  -- the 2009 judgment or to take other

1 appropriate action in the state court to pursue their claims

2 or appeals of their claims, to do something to get it moving

3 because it appears to be a rather tricky problem, so --

4         MR. LAJEFF WOODBERRY:  Okay.

5         THE COURT:  But I think you get the idea.

6         MR. LAJEFF WOODBERRY:  Right.

7         THE COURT:  So what else do you want to say?

8         MR. LAJEFF WOODBERRY:  Just one thing just for the

9 record, you know, because I think this is a Fifth Amendment

10 type of issue, a constitutional issue, and it's basically the

11 city's obligation to pay just compensation cannot be

12 reorganized or discharged in the Bankruptcy Court because

13 it's our constitutional right if the city is going to take

14 our property.

15         THE COURT:  Well, I saw -- somebody I think --

16         MR. LAJEFF WOODBERRY:  The constitution mandates

17 that they just compensate us.

18         THE COURT:  I think you made that -- a point like

19 that in the written response --

20         MR. LAJEFF WOODBERRY:  Okay.

21         THE COURT:  -- that you and the others filed to the

22 claim objections, but, you know, we have to be clear here

23 that we're talking about two different things.  The issue of

24 whether you have a claim that is discharged or was discharged

25 in the city's bankruptcy case is one issue.  That's

1　dischargeability of a debt.  The issue of whether you have a

2　claim that is to be deemed an allowed claim in the bankruptcy

3　case for purposes of receiving a distribution under the

4　city's confirmed plan of adjustment is a different issue.

5　　　　MR. LAJEFF WOODBERRY:  Okay.

6　　　　THE COURT:  And it's that -- that's the issue we're

7　talking about now and dealing with now in this claim

8　objection.  The city is objecting to proofs of claim filed by

9　you and the others and asking me to disallow it so that you

10　would not have a claim allowed in the bankruptcy case that

11　would get you the right to any distribution under the

12　confirmed plan of adjustment.  It is a different issue.  It

13　may be related in some ways, but it's a different issue of

14　whether you have a claim that is not discharged in the city's

15　bankruptcy case, so I don't want to -- I don't want anybody

16　to get confused about -- confuse one for the other.  We're

17　talking today only about the objection to your claim and

18　what's to be done about that claim not only in the bankruptcy

19　case but outside of bankruptcy and whether I should allow you

20　and the others to -- still some time to take action in the

21　state court system to try to litigate that claim.  Anyway,

22　what else do you want to say?  Anything else?

23　　　　MR. LAJEFF WOODBERRY:  No, your Honor.  Thank you

24　for the information.

25　　　　THE COURT:  One second.  I see, Mr. Woodberry, that

1    you were present during the hearing that was held on June 25,

2    2014, in this bankruptcy case before Judge Rhodes.  He was

3    the judge assigned to the case before I was.  I came in -- he

4    retired, and I was appointed to take his place as the judge

5    in the case about two and a half, three years ago.  And you

6    were present, and you did speak a little bit during the

7    hearing I see from the transcript, so that was June 25, 2014.

8           MR. LAJEFF WOODBERRY:  Yes, your Honor.

9           THE COURT:  At that time Judge Rhodes ruled that he

10   was going to abstain from any action regarding the claim of

11   you and the others in order to allow the state court to do

12   whatever is left to be done in the case and for the state

13   court proceedings and any appeals to go forward in the state

14   court.  Have you done anything since that time -- that's June

15   25, 2014 -- to try to move things forward in the state court

16   system?

17          MR. LAJEFF WOODBERRY:  I haven't done anything but

18   wish that the Court would do as the judge was also waiting

19   for the Court to do, to do the process, make the final

20   judgment so we can do our part, and that's what I was waiting

21   for, too.

22          THE COURT:  All right.  Anything else you want to

23   say then?

24          MR. LAJEFF WOODBERRY:  No, your Honor.

25          THE COURT:  All right.  Mr. Cranston Woodberry, if

1   you wanted to say anything, I'll give you an opportunity to

2   speak, too.

3         MR. LAJEFF WOODBERRY:  Thank you, your Honor.

4         THE COURT:  Thank you.

5         MR. CRANSTON WOODBERRY:  Your Honor, I would just

6   like to add that if you're inclined to give us time to file

7   an appeal that that might be a good way to go.  And the other

8   thing I would add to expedite time perhaps we could ask the

9   city to stipulate to entry of a final order so that we can

10  actually go ahead and do the appeal and get along with the

11  process because the problem has been that nobody has been

12  accountable for anything throughout this whole process.

13        We also met with the city attorney shortly after the

14  June 25th hearing before Judge Rhodes, and we were in

15  negotiations, but some kind of way that broke down because

16  the attorney we were negotiating with left the city and a new

17  attorney took his place, but he never contacted us, and I

18  guess we were like sitting waiting to hear from the city and

19  never heard anything from the city, so if an appeal is the

20  way to go, I think we can at least go that way.

21        THE COURT:  Now, Mr. Woodberry, you were a defendant

22  in the Wayne County Circuit Court case; is that correct?

23        MR. CRANSTON WOODBERRY:  Yes.

24        THE COURT:  Okay.  By the way, did any of you have

25  an attorney in that case?

1        MR. CRANSTON WOODBERRY:  We were -- I was the

2   attorney for them in that case.

3        THE COURT:  Are you an attorney?

4        MR. CRANSTON WOODBERRY:  Yes.

5        THE COURT:  Oh, I see.  I didn't realize --

6        MR. CRANSTON WOODBERRY:  Okay.

7        THE COURT:  -- you're an attorney.

8        MR. CRANSTON WOODBERRY:  Yes.

9        THE COURT:  Okay.  And licensed in Michigan to

10  practice?

11       MR. CRANSTON WOODBERRY:  Correct, yes.

12       THE COURT:  Oh, I see.  Okay.  All right.  So are

13  you -- I didn't understand that you were acting as an

14  attorney for the other Woodberrys in this hearing today.  Are

15  you?

16       MR. CRANSTON WOODBERRY:  I can act as attorney, but

17  the problem is I'm not in the federal system where you do the

18  electronic filing, and so I couldn't file anything

19  electronically, and so I had to act in pro per, but I

20  wouldn't have a problem acting as the attorney, not Mrs.

21  Woodberry, though.  She prefers to appear in pro per.

22       THE COURT:  In the state court lawsuit that led to

23  the 2009 judgment, you were the attorney for -- were you the

24  attorney for all the defendants?

25       MR. CRANSTON WOODBERRY:  Except Mrs. Woodberry.

1          THE COURT:  Except Edith Woodberry?

2          MR. CRANSTON WOODBERRY:  Yes.

3          THE COURT:  So you heard what Edith Woodberry said

4  in today's hearing about some sort of attempt to appeal or to

5  get leave to appeal that was denied.  What can you tell me

6  about any efforts that were made after entry of the Wayne

7  County Circuit Court's April 28, 2009, judgment to appeal in

8  some way?

9          MR. CRANSTON WOODBERRY:  We actually filed an

10  appeal, and the appeal was sent back because the order wasn't

11  a final order.

12          THE COURT:  And when that -- and that happened what?

13  In 2009?

14          MR. CRANSTON WOODBERRY:  I would assume within the

15  21 days that they permit to file an appeal, yes.

16          THE COURT:  Okay.  So the Michigan Court of Appeals

17  dismissed the appeal apparently then.

18          MR. CRANSTON WOODBERRY:  Correct, yes.

19          THE COURT:  Okay.  When that happened, did you do

20  something in the state court to try to get a final order

21  entered?

22          MR. CRANSTON WOODBERRY:  No.

23          THE COURT:  You did not?  Have you ever?

24          MR. CRANSTON WOODBERRY:  Beyond filing the claim of

25  appeal, no.

1    THE COURT:  No.  You appealed, and it was dismissed,
2    right --

3        MR. CRANSTON WOODBERRY:  Yes, it was.

4        THE COURT:  -- for lack of a final --

5        MR. CRANSTON WOODBERRY:  I'm having a memory lapse
6    because that was so long ago, but I believe that it was
7    basically sent back.  It wasn't even dismissed.

8        THE COURT:  Okay.  So after that happened, you
9    realized, okay, we need a final order --

10       MR. CRANSTON WOODBERRY:  Correct.

11       THE COURT:  -- entered in the state court -- in the
12   trial court so we can get a -- we can appeal.  Did you take
13   any action at any time after that through now to do that?

14       MR. CRANSTON WOODBERRY:  I don't recall exactly what
15   we did, but as Ms. Edith Woodberry said, we were back before
16   Judge Curtis, and we requested that she make a final order,
17   which she refused to do because, as Ms. Woodberry stated,
18   that she said that we had to apportion the just compensation
19   amongst ourself, the proposed just compensation, which has
20   never -- which never happened because nobody could figure out
21   how to apportion it.  Then we filed a motion for Judge Curtis
22   to do the apportionment, and she declined to apportion.

23       THE COURT:  I think Edith Woodberry said Judge
24   Curtis is now retired.

25       MR. CRANSTON WOODBERRY:  Yes.

1          THE COURT:  Perhaps because the case is maybe viewed

2     as closed, you don't -- do you know who the successor judge

3     would be now on the case or you don't know that?

4          MR. CRANSTON WOODBERRY:  I don't know.  Only thing I

5     would know would be to file a motion in front of the chief

6     judge.

7          THE COURT:  Yeah.  Perhaps a different judge today

8     would view the matter differently, but who knows.

9          MR. CRANSTON WOODBERRY:  Who knows, yeah.

10         THE COURT:  Is there anything written, any written

11    orders from Judge Curtis about this final order issue and

12    what you described as her decisions not to enter a final

13    order?

14         MR. CRANSTON WOODBERRY:  No.  Well, I really can't

15    recall.  I can't -- just off the top of my head, I can't

16    recall.

17         THE COURT:  Okay.  Anything else you'd like to say?

18         MR. CRANSTON WOODBERRY:  That would be basically --

19    I think they covered pretty much --

20         THE COURT:  All right.

21         MR. CRANSTON WOODBERRY:  -- all the issues.

22         THE COURT:  All right.  Well, thank you.  Mr.

23    Swanson, you can reply if you want to, but one of the

24    questions I have for you is what should the Court do if I

25    decide to give the Woodberrys another 30 days to do

1  something?  What is the something that I should require them

2  to do?

3          MR. SWANSON:  I think the something certainly for

4  the parties like LaJeff -- and I believe there's one other

5  claimant that didn't -- who are not parties to the original

6  suit -- they would have to file some legal action to

7  liquidate the claim they filed in the bankruptcy case.

8          THE COURT:  I suppose that perhaps could take the

9  form of a motion for leave to intervene, reopen and intervene

10  in the existing lawsuit.

11          MR. SWANSON:  I agree.

12          THE COURT:  Barring that -- that's the only lawsuit,

13  so barring that they'd have to file a new one of their own --

14          MR. SWANSON:  I agree with that, your Honor, yes.

15          THE COURT:  -- right?

16          MR. SWANSON:  Yes.

17          THE COURT:  I mean are those the only choices for

18  those parties?

19          MR. SWANSON:  I can't think of any other choices.

20          THE COURT:  Now, claimants subject to your claim

21  objection who are not parties to the 2009 suit -- you say

22  LaJeff is not.  Anyone else in there?

23          MR. SWANSON:  I don't believe Garfield Woodberry is

24  a party.  I just noticed that myself.

25          THE COURT:  Garfield Woodberry?

1      MR. SWANSON:  Correct, your Honor.  Garfield

2   Woodberry is not listed on the April 28, 2009, judgment nor

3   is LaJeff Woodberry.

4      THE COURT:  All right.  And Garfield Woodberry is

5   listed in your Exhibit 2 to your sixty-second claim objection

6   I see.

7      MR. SWANSON:  Correct, your Honor.

8      THE COURT:  There's a number of Woodberrys who are

9   not here in court today who are a part of that claim

10   objection; right?

11      MR. SWANSON:  That's correct, your Honor.

12      THE COURT:  And all the others were parties to the

13   case you're saying?

14      MR. SWANSON:  Yes, your Honor.  There is one

15   Woodberry, Adam Woodberry.  We noted in footnote one to our

16   response that he was not party to the response that the

17   Woodberry claimants filed, and, thus, the city would ask that

18   his claim be expunged.

19      THE COURT:  Was he a party to the 2009 lawsuit --

20      MR. SWANSON:  Yes, your Honor.

21      THE COURT:  -- the judgment?  Well, all right.  So

22   if I decide to give -- in my discretion to give Woodberrys 30

23   days to do something, to move the state court proceedings

24   forward to the extent it's possible, to appeal or whatever

25   else they may want to do, what is it I should require them to

1  do within the 30 days?  Move to reopen the case, state court

2  case?  Seek leave to intervene, file a motion for the entry

3  of a final order?  How should I word that?  What should I say

4  in the city's view?  What does the city think I should say?

5      MR. SWANSON:  Your Honor, I think the Woodberrys

6  have expressed that their desire is to appeal the April 28th,

7  2009, judgment.  Unbeknownst to the city, they allege that

8  there was a previous appeal filed of that judgment, and the

9  basis for denial of that appeal was that the order wasn't

10 final.  It seems to me that the Woodberrys need to take some

11 steps in the state court suit to prompt the state court to

12 consider that order final or enter another order which states

13 that that order is final so that they can appeal that order.

14 It seems like that's the last step to be taken in that

15 lawsuit to liquidate the claims.

16     THE COURT:  All right.  Well, what else do you want

17 to say about the Woodberry claims?

18     MR. SWANSON:  The city did address the discharge

19 argument filed -- asserted by the Woodberrys in its response.

20 It stands by that response.  That was a plan objection which

21 was never raised.  There's a broad discharge provision in the

22 confirmation order.  There's certain very limited narrow

23 exceptions to that discharge that are identified in the

24 confirmation order.  This is not one of them, and the city

25 would ask that that argument --

1          THE COURT:  That's a different issue, isn't it?

2          MR. SWANSON:  It's a different issue.

3          THE COURT:  You agree.

4          MR. SWANSON:  I agree.

5          THE COURT:  Yeah.  Okay.  What else?  Anything else,

6   Mr. Swanson?

7          MR. SWANSON:  And unless the Court has anything

8   further for me, the city has nothing.

9          THE COURT:  No, I don't.  Well, I am going to give

10  the Woodberry claimants 30 days to take appropriate action to

11  try to get the state court lawsuit in which the April 28,

12  2009, judgment was entered reactivated and seek an order of

13  some sort -- an appropriate order of some sort that would

14  permit them the opportunity to appeal the April 28, 2009,

15  judgment or otherwise seek relief from that judgment in this

16  Wayne County Circuit Court case, and I'll prepare and enter

17  an order that says that.  June 22, 2018, will be the deadline

18  for that.  And as with the other orders -- similar orders

19  that I'm entering as a result of today's hearing, I'll

20  require that any of the Woodberrys who file any such --

21  anything of that type in the Wayne County Circuit Court or

22  any other state court at the same time serve by mail a copy

23  of what you file on Mr. Swanson here, who's the attorney for

24  the city in the bankruptcy case, not in the state court case.

25  And the order I'm going to prepare and enter will also say

1   that if the Woodberry claimants do not comply with the

2   requirements of this order to take action by June 22, then

3   the city may file an affidavit of noncompliance and submit a

4   proposed order disallowing the claims of all the Woodberrys

5   in this bankruptcy case and that the Court may disallow the

6   claims for that reason.

7       Now, with respect to the city's -- so to the extent

8   the city is asking the court in the fifty-sixth omnibus

9   objection to disallow the claim of Edith Woodberry and in the

10  sixty-second omnibus objection to disallow the claims of the

11  other named Woodberry claimants, that -- I'm not going to do

12  that, but I am going to enter the order of the type that I've

13  just described giving the Woodberry claimants 30 days to take

14  appropriate action.

15      Now, the city has asked the Court to disallow the

16  claim of Adam Woodberry, which is one of the Woodberry

17  claimants listed in the sixty-second claim objection, because

18  Adam Woodberry did not file a written response to the claim

19  objection.  I'm going to deny that request.  I think, if I at

20  this stage, at least, were to disallow the claim of Adam

21  Woodberry while not disallowing the claims of the other

22  Woodberry claimants, it would simply -- have the potential of

23  simply adding more fuel to the fire, so to speak, in terms of

24  procedural complications and uncertainties and complexities

25  that we don't need more of in this -- in relation to the

1    Woodberry claims, so I'm not going to disallow that.  I'm

2    going to make Adam Woodberry part of the same 30-day take

3    action type order that I've described here.

4          So that's the ruling with respect to the claims of

5    the Woodberry claimants.  So, Mr. Swanson, I'm going to -- as

6    I said, I'm going to prepare this order with regard to the

7    Woodberrys.

8          With respect to the city's fifty-sixth and sixty-

9    second omnibus claim objections, other than the claims of the

10   Woodberrys -- and I think Pamela Booker was in the sixty-

11   second -- other than her, I'll sustain the objections to

12   claim, and so I'll ask you to prepare and enter an order that

13   does that.  I'll waive presentment of that order.  Just

14   please submit it.  I'll review it.  So you're excepting from

15   those orders the Woodberry claims and the Pamela Booker

16   claims because I'm going to deal with those by separate order

17   that I'm going to do. Does that -- do you understand what I'm

18   saying?  Any questions about that?

19         MR. SWANSON:  No, your Honor.

20         THE COURT:  Okay.  Now, does that for today then

21   leave us only with the matter of Mr. Johnson's claim under

22   the fifty-seventh omnibus objection?

23         MR. SWANSON:  Yes, your Honor.

24         THE COURT:  And you said you wanted a bit of time

25   now at end of the hearing to talk to Mr. Johnson.  How much

1  time do you want?  It's up to you.

2         MR. SWANSON:  Your Honor, could we have till 4:15?

3         THE COURT:  Sure.  I'll be back out at 4:15, and

4  we'll recall the case, and we'll talk about the claim of Mr.

5  Johnson at that point.  Now, if you are ready for me to come

6  back out sooner than that, let my courtroom deputy know, and

7  I'll be happy to come out sooner.  Otherwise I'll be back at

8  4:15.  If you need a bit more time than 4:15, let us know

9  that, too.  I'm flexible.  So we're going to get it done

10  today, but I'm rather flexible on time, so, anyway, go ahead.

11         MR. SWANSON:  Thank you, your Honor.

12         MR. CRANSTON WOODBERRY:  Thank you, your Honor.

13         THE COURT:  Thank you.

14         THE CLERK:  All rise.  Court is in recess.

15      (Recess at 3:57 p.m., until 4:21 p.m.)

16         THE CLERK:  All rise.  Court is back in session.

17  You may be seated.

18         THE COURT:  All right.  Thank you.  Mr. Swanson,

19  where are we on the -- regarding the claim of Mr. Johnson

20  here?

21         MR. SWANSON:  Thank you, your Honor.  I'm pleased to

22  announce that the parties have come to an agreement on the

23  claim.  The claim is going to be -- and we'll submit a

24  stipulation and order to this effect -- Claim 1032 will be

25  allowed under the plan as a Class 15 convenience claim in the

1   amount of $5,300.  In complete and final satisfaction of

2   Claim 1032 the city shall pay $1,325 to claimant within 120

3   days of entry of the order, and that's the treatment provided

4   for Class 15 of the plan, which is 25 percent of the allowed

5   amount.

6           THE COURT:  That's the convenience --

7           MR. SWANSON:  Convenience class claim, yeah.

8           THE COURT:  -- class, yeah.  All right.  Mr.

9   Johnson, could you come up to the podium a minute, please?

10          THE COURT:  For the record, your name is?

11          MR. JOHNSON:  Dr. M. Dujon Johnson.

12          THE COURT:  I'm sorry.

13          MR. JOHNSON:  Dr. M. Dujon Johnson, M. Dujon

14   Johnson.

15          THE COURT:  And Dujon is D-u-j-o-n?

16          MR. JOHNSON:  Yes.  It's M space D-u-j-o-n.

17          THE COURT:  All right.  And you heard Mr. Swanson

18   just now describe what he said is a settlement between the

19   city and yourself regarding the Claim Number 1032 that you

20   filed in the city's bankruptcy case; correct?

21          MR. JOHNSON:  That's correct.

22          THE COURT:  All right.  And just for the record, did

23   Mr. Swanson correctly state the terms of your agreement with

24   the city?

25          MR. JOHNSON:  He did.

 1          THE COURT:  All right.  So you agree to that

 2   treatment of your claim and to the entry of an order stating

 3   that.

 4          MR. JOHNSON:  I do.

 5          THE COURT:  All right.  Anything else you want to

 6   say about this?

 7          MR. JOHNSON:  No, your Honor.

 8          THE COURT:  All right.  Well, thank you, and thank

 9   you to everyone.  Mr. Swanson, so that concludes everything

10   regarding the fifty-seventh omnibus objection; right?

11          MR. SWANSON:  Yes, your Honor.

12          THE COURT:  Okay.  All right.  So you'll submit a --

13   after you file the stipulation a proposed order regarding Mr.

14   Johnson's claim, and remind me on the fifty-seventh.  Was

15   there another one?

16          MR. SWANSON:  I believe it was the -- Perez might

17   have been his last name.

18          THE COURT:  Yes.

19          MR. SWANSON:  I have the note here.

20          THE COURT:  Yes.

21          MR. SWANSON:  Yeah.

22          THE COURT:  Derrez Payne.  That one?

23          MR. SWANSON:  Derrez Payne, yeah, yeah.

24          THE COURT:  Yeah.  And as to that one, I'm going to

25   do an order --

1        MR. SWANSON:  Yes.

2        THE COURT:  -- separate order, and I think all

3   other -- the ruling was all other claims, subject to that

4   objection, the objection is being sustained; right?

5        MR. SWANSON:  Yes, your Honor.

6        THE COURT:  So that piece of it you're going to

7   cover by submitting a proposed order on those -- on that part

8   of it.

9        MR. SWANSON:  Yes, your Honor.

10        THE COURT:  All right.  Okay.  Okay.  Great.  So

11   I'll look forward to you submitting all these orders you're

12   going to submit.  I'll do the orders that I said I would do

13   and hopefully not screw it up too bad, and if you see any

14   errors, though, in any of the orders that I enter or in any

15   of the minute entries, for that matter, that are entered

16   regarding today's matters, the matters we heard today, please

17   let my courtroom deputy know because I want to get it right,

18   and so hopefully we will, but who knows, so -- all right.

19   Thank you.

20        MR. SWANSON:  Thank you.

21        THE CLERK:  All rise.  Court is adjourned.

22        (Proceedings concluded at 4:25 p.m.)

INDEX

<u>WITNESSES:</u>

    None

<u>EXHIBITS:</u>

    None

       I certify that the foregoing is a correct transcript from the sound recording of the proceedings in the above-entitled matter.

/s/ Lois Garrett            September 5, 2018
_____     _____

Lois Garrett