18-009704-CK    FILED IN MY OFFICE    Cathy M. Garrett    WAYNE COUNTY CLERK    8/7/2018 11:10 AM    Susan Dixson

Marine Adams Law PC • 7650 2nd Ave, Suite 113 • Detroit, MI 48202 • Phone: (313) 961-5535 • Fax: (313) 961-9897

## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

TWW EMPLOYMENT SERVICES,

Plaintiff,

v

CITY OF DETROIT, CITY OF DETROIT
WORKFORCE DEVELOPMENT; DETROIT
EMPLOYMENT SOLUTIONS CORPORATION,
INC.,

Defendants.

Case No. 2018 - _____ - CK
HON.

/

Anthony Adams(P33695)
Lynn L. Marine-Adams (P47239)
MARINE ADAMS LAW PC
*Counsel for the Plaintiff*
7650 2nd Ave., Suite 113
Detroit, Michigan 48202
(313) 961-5535; Fax (313) 961-9897
aadams@marineadamslawpc.com

/

There are no prior cases between the Parties.

## VERIFIED COMPLAINT

NOW COMES Plaintiff, TWW Employment Solutions, LLC, by and through its attorneys, Marine Adams Law PC, and for its Verified Complaint against the City of Detroit, City of Detroit Workforce Development Department and Detroit Employment Services Corporation, Inc. collectively referred to as Defendants states as follows:

## PARTIES

1.    Plaintiff, TWW Employment Solutions, LLC ("TWW") is a Michigan limited liability corporation existing under the laws of the state of Michigan.

2.    TWW is a female owned minority business.

1

18-009704-CK   FILED IN MY OFFICE   WAYNE COUNTY CLERK   8/7/2018 11:10 AM   Susan Dixson

Marine Adams Law PC • 7650 2ⁿᵈ Ave. Suite 113 • Detroit, MI 48202 • Phone: (313) 961-5535 • Fax: (313) 961-9897

Cathy M. Garrett

3.     Defendant, City of Detroit ("Detroit"), is a corporate body politic organized and existing under the laws of the state of Michigan.

4.     Defendant, Detroit Workforce Development Department ("WDD"), is formally a department of the city of Detroit.

5.     Detroit Employment Solutions Corporation, Inc. ("DESC") is a non-profit corporation existing under the laws of the state of Michigan and is a successor entity of Detroit Workforce Development Department.

## JURISDICTION

6.     Jurisdiction is appropriate because the amount in controversy is Four Hundred Six Hundred and Sixty-Six Thousand Eight Hundred and Twenty-Five (\$466, 825.00)

## VENUE

7.     Venue is appropriate in the 3rd Judicial Circuit of Michigan as the actions complained of occurred in the city of Detroit, Wayne County, Michigan.

## GENERAL ALLEGATIONS

8.     Plaintiff, TWW had a contract with the city of Detroit through WDD.

9.     The contract allowed TWW to perform employment services for disadvantaged Detroit residents.

10.    TWW was, in fact, once of WDD's most successful contractors in job readiness for Detroit residents.

11.    A copy of TWW's contract is attached as Exhibit A.

2

18-009704-CK    FILED IN MY OFFICE    WAYNE COUNTY CLERK    Cathy M. Garrett    8/7/2018 11:10 AM    Susan Dixson

Marine Adams Law PC • 7650 2ⁿᵈ Ave. Suite 113 • Detroit. MI 48202 • Phone: (313) 961-5535 • Fax: (313) 961-9897

12. That funding for this program came from the state of Michigan Department of Licensing and Regulatory Affairs as provided under statues of the state of Michigan and matched by federal funds for job employment and training.

13. TWW's contract with the city of Detroit was a cost reimbursable contract.

14. TWW had, in fact, to expend money in order to receive reimbursement from the Defendants.

15. That no general fund money of Defendant Detroit was involved in the administration of this contract, and thus cannot be barred by the bankruptcy of Defendant Detroit.

16. On June 7, 2012 the former Executive Director of TWW received a Notice of Contract Non-Renewal from WDD.

17. A portion of the rationale for non-renewal resulted from the fact that TWW had not completed audits for fiscal years 2008, 2009 and 2010.

18. As a result of TWW's failure to obtain the necessary audits, WDD stood to lose Five Million Two Hundred and Thirty-Five Thousand and Seven Hundred and Sixteen Dollars and Four Cents ($5,235,716.04) in state and federal funds.

TWW had, in fact, paid a retainer for the audits to be completed.

19. TWW did, in fact obtain the necessary draft audits, and Defendants Detroit and WDD did not lose any federal or state grant money to pay all costs under this contract.

20. This letter indicated that their final service delivery date would be August 31, 2012.

21. A copy of said Notice of Contract Non-Renewal is attached as Exhibit B.

3

18-009704-CK   FILED IN MY OFFICE   Marine Adams Law PC • 7650 2ⁿᵈ Ave, Suite 113 • Detroit, MI 48202 • Phone: (313) 961-5535 • Fax: (313) 961-9897   WAYNE COUNTY CLERK   Cathy M. Garrett   8/7/2018 11:10 AM   Susan Dixson

22. As of the date of Non-Renewal TWW had an outstanding balance of Four Hundred and Eighty-Thousand Three Hundred and Thirty-Nine Dollars and Seventy-Nine Cents ($486,339.79) remaining under its contract.

TWW has, inf act, expended all amounts due and owing to it for services rendered.

23. In addition, TWW also received another letter dated June 7, 2017, which indicated that WDD was de-obligating $254,000.00 from its contract to transfer services to another vendor.

24. That the amount WDD established to de-obligate was based on the Defendants City of Detroit and WDD's erroneous assumption that the Plaintiff had not expended amounts remaining under the contract.

25. That TWW had in fact expended amounts above the amounts stated by the Executive Director of WDD to be de-obligated.

26. Because of the hap hazard manner of close out by Defendant WDD, TWW continued to provide services to the bulk of clients under its contract with the full knowledge and consent of WDD.

27. A copy of the de-obligation letter is attached as Exhibit C.

28. That upon information and belief the contract funds were never de-obligated in Defendant Detroit's financial systems.

29. Under the June 7, 2012 non-renewal letter WDD was supposed to initiate contract close out actions which required WDD performing certain tasks relative to finalizing the contract. TWW notes for the record that it finalized all actions required by it under the close out process identified in the June 7, 2012 de-obligation letter.

4

30. In accordance with the terms and conditions of their contract and services delivered and received by WDD TWW had outstanding direct and reimbursable expenses totaling Four Hundred and Sixty-Six Thousand Eight Hundred and Twenty-Five ($466,825.00).

31. A copy of said final invoices is attached as Exhibit D.

32. In accordance with the contract TWW has requested payment of these expenses.

33. To date, TWW has not received any federal or state reimbursement for actual expenses incurred in delivery of the services under the contract.

34. Pursuant to the terms and conditions of the contract, TWW is entitled to recover all amounts and expenses incurred prior to the Notice of Contract Non-Renewal and through the final date of service delivery, which was August 31, 2012.

35. The validity of this contract was recognized by Detroit Employment Services Corporation in a letter to TWW dated October 9, 2012.attached as **Exhibit E**.

36. That in that letter the former President and CEO of DESC, who had also served as Executive Director of WDD, indicated that TWW would receive its final payment provided the requirements of the letter were met.

37. TWW, in fact, complied with all the terms and conditions of this letter and did not receive any compensation for services rendered.

38. Upon information and belief all other contracts who were closed out during this period received their funding.

18-009704-CK   FILED IN MY OFFICE   Cathy M. Garrett   WAYNE COUNTY CLERK   8/7/2018   11:10 AM   Susan Dixson

Marine Adams Law PC • 7650 2nd Ave, Suite 113 • Detroit. MI 48202 • Phone: (313) 961-5535 • Fax: (313) 961-9897

## COUNT I
## CITY OF DETROIT AND DETROIT WORKFORCE DEVELOPMENT DEPARTMENT
## (BREACH OF CONTRACT)

39.    Plaintiff incorporates by reference the allegations contained in paragraphs
1 through 38.

40.    The City of Detroit was a recipient of federal and state funds to fund job
employment training efforts through WDD.

41.    That contracts under this program did not involve any general fund money
from the city of Detroit.

42.    The city of Detroit, through WDD, was responsible for administering this
program in a manner consistent with federal and state guidelines, and in accordance with
its contract terms.

43.    The city of Detroit was a trustee for these funds for the benefit of contractors
performing services under the program.

44.    As trustee the city of Detroit had a fiduciary obligation to properly expend
funds administered under this program.

45.    That TWW, as contractor WDD, was a beneficiary of these funds.

46.    That the City of Detroit and WDD breached its contractual duty by failing to
properly close out TWW's contract and reimburse it for actual expenses incurred for work
performed for the program.

47.    That the City of Detroit's and WDD's failure to pay outstanding balance is a
breach of TWW's contract with the City of Detroit.

48.    That TWW is entitled to recover against the City of Detroit and WDD for its
breach of the terms and conditions of the contract.

6

49. Specifically, Defendants failed to follow the termination provision as outlined in Section XVI of its contract with Defendants city of Detroit and WDD.

**WHEREFORE**, Plaintiff, TWW is entitled to recover all outstanding of its contract against Detroit in the amount of $466,825.00 for Defendants City of Detroit and WDD's breach of contract.

## COUNT II
## DETROIT EMPLOYMENT SOLUTIONS CORPORATION
## (BREACH OF CONTRACT)

50. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 49.

51. Defendant Detroit Employment Solutions Corporation is a successor entity to the city of Detroit's Workforce Development Department.

52. DESC was chartered by Defendant Detroit to carry out its responsibilities to provide job employment and training for Detroit residents.

53. That upon information and belief DESC succeeded to the obligations of Workforce Development Department.

54. That is acceptance and assignment of the obligations of TWW's contract are recognized by its letter to TWW dated October 9, 2012, a copy of which is attached as **Exhibit E**.

55. That the October 9, 2012 letter spelled out certain preconditions to TWW receiving final payment.

56. The first condition was for DESC to complete a walkthrough of the TWW facility to inventory equipment for pick-up.

7

57.    That the inventory was in fact conducted by DESC.

58.    The second precondition established by DESC was to pick up the equipment from TWW.

59.    DESC did in fact pick up the equipment it inventoried.

60.    The third precondition for payment was the release of Forty Thousand ($40,000.00) dollars towards its final payment to TWW upon receipt of all past due Single Audits reports for 2008, 2009 and 2011.

61.    That copies of said audits are attached as **Exhibits F.**

62.    That having satisfied all conditions established for payment DESC is liable for the balance of the contract amounts expended by TWW in delivery of its services to the corporation.

63.    DESC it is directly liable for its failure to perform the contract in accordance with its terms and conditions.

**WHEREFORE**, Plaintiff, TWW is entitled to recover all outstanding of its contract against Detroit in the amount of $466,825.00 for Defendant DESC's breach of contract.

## COUNT III
## QUANTUM MERUIT (ALTERNATIVE THEORY OF RECOVERY)

64.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 63.

65.    The Plaintiff rendered services to clients of the Defendants in a manner consistent with the guidelines established by the program.

8

Marine Adams Law PC • 7650 2ⁿᵈ Ave. Suite 113 • Detroit, MI 48202 • Phone: (313) 961-5535 • Fax: (313) 961-9897    18-009704-CK    FILED IN MY OFFICE    WAYNE COUNTY CLERK    Cathy M. Garrett    8/7/2018 11:10 AM    Susan Dixson

66.     That because of the nature of the contract Plaintiff had to expend monies to provide services for the Defendants to receive compensation under the terms and conditions of the contract.

67.     This contract is termed a "cost reimbursable" contract.

68.     Plaintiff expended in excess of $466.825.00 performing services for the Defendants.

69.     That copies of Plaintiff's invoices are attached as Exhibit B

70.     That the services performed by the Plaintiff was with the full consent of all the Defendants.

71.     Plaintiff having expended these funds, is now entitled to recover all amounts due and owing for services rendered on behalf of the Defendants.

**WHEREFORE**, Plaintiff is entitled to recover $466,825.00 and all fees, cost and expenses incurred as a result of bringing this action.

By: _____
**Terrie Weathers Henderson**

Respectfully submitted,

MARINE ADAMS LAW, PC

By: ___/s/ Anthony Adams_____
**Anthony Adams, Esq. (P33965)**
*Counsel for Plaintiff*
7650 2ⁿᵈ Ave, Suite 113
Detroit, MI 48202
(313)961-5535; Fax (313) 961-9897
aadams@marineadamslawpc.com

Dated: August 3, 2018                    lmadams@marineadamslawpc.com

9

18-009704-CK   FILED IN MY OFFICE   Cathy M. Garrett   WAYNE COUNTY CLERK   8/7/2018 11:10 AM   Susan Dixson

Marine Adams Law PC • 7650 2nd Ave, Suite 113 • Detroit, MI 48202 • Phone: (313) 961-5535 • Fax: (313) 961-9897

**PROOF OF SERVICE:** The undersigned certifies that a copy of the forgoing VERIFIED COMPLAINT WITH EXHIBITS was served upon the attorneys of record, or parties appearing in pro per, in the above matter by causing the same to be:

**Served upon them via MiFile True Filing and U.S. Mail.**

on **August 7, 2018**.

**ANTHONY ADAMS, ESQ.**

10

18-009704-CK   FILED IN MY OFFICE   Cathy M. Garrett   WAYNE COUNTY CLERK   8/7/2018 11:10 AM   Susan Dixson

# EXHIBIT
# A

Susan Dixson   8/7/2018 11:10 AM   WAYNE COUNTY CLERK   Cathy M. Garrett   FILED IN MY OFFICE   18-009704-CK

JOBS, EDUCATION & TRAINING

CONTRACT FOR DETROIT WORKFORCE DEVELOPMENT - LINE-ITEM

TROIT WORKFORCE
LOPMENT DEPARTMENT
V. MILWAUKEE
.OIT, MI 48202

CONTRACTOR: TWW Employment Solutions
151 W. Fort Street
Detroit, MI 48226

CONTRACT
# 2854040

FEDERAL I.D. # 38-2778996

MODIFICATION
#

**A. PROGRAM:**

(1) Applicable Regulations: Jobs, Education & Training (JET), TANF _X_ State GF/GP _NA_

(2) Jobs, Education & Training Activity: Job Search / Job Placement _X_, Job/Voc. Skills _NA_

OJT _NA_   CWEP _NA_   OTHER _NA_   (Specify) _NA_

(3) Project Name: _Job Search/Job Readiness_

**B. GRANT RECIPIENT OBLIGATION:** INITIAL _X_   MODIFIED _NA_   $1,049,890.00

**C. PERFORMANCE PERIOD:** INITIAL _X_   MODIFIED _NA_   FROM _10/1/11_   TO _9/30/12_

**D. MODIFICATION:** This Modification - INCREASES _NA_   DECREASES _NA_   DOES NOT CHANGE _NA_ the total Grant Recipient cost of $ _NA_ by $ _NA_ for the period: _NA_ to: _NA_

**E.**

| GRANT SOURCE # | FY | COST CATEGORY | AMOUNT |
|---|---|---|---|
| JET- CFDA # 93.558 | 12 | Direct Client Services | $966,789.00 |
| JET- CFDA # 93.558 | 12 | Information Technology | $83,101.00 |
| GRANT TOTAL | XXX | XXX | $1,049,890.00 |
| CONTRACT TOTAL | XXX | XXX | $1,049,890.00 |

**F. MATCH:** This contract _NA_ requires _X_ does not require matching funds. The match is: $ _-0-_

**G. PROCUREMENT:** Contractor is a: Public Agency _NA_, Private-for-Profit _X_, Private-Non-Profit Corporation _NA_, Partnership _NA_, Sole Proprietorship _NA_. The Contractor has been selected in accordance with appropriate provisions for Competitive Bidding _X_.

**H. FINANCIAL ARRANGEMENTS:**
(1) _X_ Reimbursement   (3) _NA_ Special Bank Account
(2) _NA_ Advance Payment
(4) Supportive Service Payments
(a) _X_ by Detroit Workforce Development Department

**INSURANCE AND BONDING:**
(1) _X_ Workers Compensation   (3) _X_ Automobile Liability
(2) _X_ Public (General) Liability   (4) _X_ Fidelity Bonding at $ _100,000_

**CONTENTS:** This Contract consists of this page, the Contract Specifications and the attached EXHIBITS numbering _1_ through _VIIIB_; and also the following SPECIAL PROVISIONS : _1,2,3_

GRAM PLANNER: Barkley Scott   PHONE: 313-664-5527   FISCAL PLANNER: George Valikodath   PHONE: 313-664-5587

)11

Susan Dixson

8/7/2018 11:10 AM

WAYNE COUNTY CLERK

Cathy M. Garrett

FILED IN MY OFFICE

18-009704-CK

# JOBS, EDUCATION & TRAINING

## Line-Item

### TABLE OF CONTENTS

FACE SHEET ............................................................................................................................................... i

CLEARANCES ............................................................................................................................................ ii

INSURANCE BINDERS/CERTIFICATES ................................................................................................ iii

SPECIAL PROVISION ............................................................................................................................... iv

CONTRACT GENERAL SPECIFICATIONS ............................................................................................ 1-14

SECTION I:   STATEMENT OF PURPOSE ............................................................................................. 1

SECTION II:   STATEMENT OF WORK ................................................................................................. 1

SECTION III:   PERIOD OF PERFORMANCE ........................................................................................ 1-2

SECTION IV:   CONSIDERATIONS ......................................................................................................... 2
    1. AMOUNT ........................................................................................................................................ 2
    2. ADJUSTMENT OF AMOUNT IF REQUIRED FOR GRANT ...................................................... 2
    3. RECONSIDERATION IN EVENT OF ADDED FUNDING SOURCE ......................................... 2
    4. RECONSIDERATION IN EVENT OF OTHER SOURCE WITHDRAWAL ................................. 2
    5. PAYMENT IN ACCORDANCE WITH LINE-ITEM BUDGET ................................................... 2
    6. AUTHORIZED COSTS PRIOR TO EXECUTION ....................................................................... 2
    7. SUPPORTIVE SERVICE PAYMENTS ......................................................................................... 2
    8. REIMBURSEMENT FOR DISALLOWED COSTS ...................................................................... 2
    9. REIMBURSEMENT FOR DISALLOWED SUPPORTIVE SERVICE PAYMENTS .................... 2-3
    10. PROGRAM INCOME ................................................................................................................... 3

SECTION V:   ARRANGEMENTS AND CONDITIONS OF PAYMENTS .............................................. 3
    1. METHOD OF PAYMENT ............................................................................................................... 3
    2. PAYMENT CONTINGENT UPON SUFFICIENT GRANT FUNDS, CONTINUED REAUTHORIZATION ......... 3
    3. HOLD HARMLESS CLAUSE ....................................................................................................... 3
    4. PAYMENT REQUIRES CONTRACT EXECUTION, FINANCE DEPT. APPROVAL ................. 3
    5. ADVANCE PAYMENT PROCEDURES ....................................................................................... 3-4
    6. INVOICING REQUIREMENTS ..................................................................................................... 4
    7. SEPARATE INVOICES, AUDIT TRAILS FOR EACH GRANT .................................................. 4
    8. PAYMENT CONDITIONS ............................................................................................................. 4
    9. WITHHELD PAYMENT FOR CLOSE OUT .................................................................................. 4

SECTION VI:   CLIENTS TO BE SERVED ............................................................................................. 4
    1. ALL JOBS, EDUCATION & TRAINING PARTICIPANTS REFERRED SHALL BE SERVED ... 4

SECTION VII:   PERSONNEL, SUPPLIES AND EQUIPMENT ............................................................. 4
    1. GENERAL CONTRACTOR RESPONSIBILITY .......................................................................... 5
    2. CONTRACTOR PERSONNEL LIST ............................................................................................. 5
    3. CITY/STATE/FEDERAL OWNERSHIP OF PROPERTY; INVENTORY CERTIFICATION ....... 5
    4. CONTRACTOR LIABILITY FOR PROPERTY LOSS .................................................................. 5
    5. EQUIPMENT PROCUREMENT PROCEDURES .......................................................................... 5-6
    6. PROHIBITION OF PROPERTY REMOVAL ................................................................................ 6
    7. CONTRACTOR PERSONNEL POLICIES ..................................................................................... 6
    8. BASIS FOR CONTRACTOR PERSONNEL COSTS ..................................................................... 6
    9. CONTRACTOR STAFF ADHERENCE TO CONTRACT ............................................................ 6
    10. OVERTIME .................................................................................................................................. 6
    11. OUT OF TOWN TRAVEL ........................................................................................................... 7
    12. LOCAL TRAVEL ......................................................................................................................... 7
    13. DRIVER'S LICENSE: VEHICLE INSURANCE .......................................................................... 7
    14. STAFF TRAINING EXPENDITURES ......................................................................................... 7

SECTION VIII:   FAIR EMPLOYMENT PRACTICES, AFFIRMATIVE ACTION ................................ 7
    1. COMPLIANCE WITH LAWS RE: NON-DISCRIMINATION ..................................................... 7
    2. NON-DISCRIMINATION RE: PROGRAM CALLED FOR HEREIN .......................................... 7
    3. AFFIRMATIVE ACTION DEFINED ............................................................................................ 7
    4. SANCTIONS FOR NON-COMPLIANCE ..................................................................................... 8
    5. REQUIREMENTS APPLICABLE TO SUBCONTRACTORS ...................................................... 8
    6. VIOLATIONS AS BREACH OF CONTRACT .............................................................................. 8

Susan Dixson

8/7/2018 11:10 AM

WAYNE COUNTY CLERK    Cathy M. Garrett

FILED IN MY OFFICE

18-009704-CK

JOBS, EDUCATION & TRAINING

Line-Item

TABLE OF CONTENTS

SECTION IX:   FACILITY REVIEW .......................................................................................................... 8
    1. CITY APPROVAL OF FACILITY............................................................................................ 8
    2. FACILITY CODE VIOLATIONS............................................................................................. 8

SECTION X:   HOLD HARMLESS (WAIVER AND INDEMNITY) AND INSURANCE......................... 8
    1. LIABILITIES FOR CONTRACTOR STAFF INJURIES.......................................................... 8
    2. LIABILITIES FOR TORTIOUS ACTS, PERFORMANCE FAILURE ...................................... 8
    3. LIABILITIES FOR CITY STAFF INJURIES........................................................................... 9
    4. DEFENSE AGAINST ACTIONS ARISING FROM CLAIMS HERE ....................................... 9
    5. RESPONSIBILITY RE: PROPERTY/LOSS.............................................................................. 9
    6. INSURANCE REQUIREMENTS............................................................................................. 9
    7. INSURED BY WELL RATED INSURERS................................................................................ 9
    8. INSURANCE REQUIREMENTS FOR SUBCONTRACTORS .................................................. 9
    9. ADDITIONAL COVERAGE REQUIREMENTS...................................................................... 9-10
    10. OTHER INSURANCE REQUIREMENTS ............................................................................. 10
    11. NOTIFICATION RE: CHANGES......................................................................................... 10
    12. DEFINITIONS OF "CITY" & "ASSOCIATES"..................................................................... 10

SECTION XI:   GENERAL PROVISIONS................................................................................................. 10
    1. COMPLIANCE WITH FEDERAL LAWS, STATE LAWS, REGULATIONS ........................... 10
    2. COMPLIANCE WITH APPLICABLE LAWS, ORDINANCES, ETC....................................... 10
    3. PROHIBITION AGAINST DIVESTITURE OF RESPONSIBILITY......................................... 10
    4. UNDELEGATED POWERS REMAIN WITH CITY................................................................. 10
    5. NO CONTRACTOR AUTHORITY TO BIND CITY............................................................... 10
    6. NO UNAUTHORIZED SUBCONTRACTS ............................................................................. 10
    7. NO UNAUTHORIZED SUBCONTRACT TERMINATION...................................................... 11
    8. NO SATELLITE CORPORATIONS....................................................................................... 11
    9. PROHIBITION ON LOBBYING............................................................................................ 11
    10. COMPLIANCE WITH REGULATIONS RE: COPYRIGHTS, PATENTS................................ 11

SECTION XII:   STIPULATIONS ............................................................................................................ 11
    1. PROGRAM AND FINANCIAL GOALS................................................................................. 11
    2. REPROGRAMMING, RE-OBLIGATION............................................................................... 11
    3. CONTRACT PERFORMANCE REVIEW................................................................................ 11
    4. CITY OPTIONS UPON FINDING UNSATISFACTORY PERFORMANCE ............................ 11-12
    5. CITY MEETINGS OR TRAINING SESSIONS........................................................................ 12
    6. SUBMISSION OF LEGAL DOCUMENTS.............................................................................. 12
    7. COORDINATION WITH CITY, OTHER AGENCIES.............................................................. 12
    8. NOTIFICATION RE: OTHER FUNDING SOURCES ............................................................. 12
    9. NOTIFICATION RE: SHARED COSTS ................................................................................. 12
    10. AUTHORIZATION OF EXCESS SHARED STAFF COSTS..................................................... 12
    11. NOTIFICATION RE: REDUCTION OF OTHER FUNDING ................................................. 12
    12. GRIEVANCE PROCEDURE................................................................................................ 12-13
    13. AUTHORIZED SIGNATURE SHEET .................................................................................. 13
    14. SPECIAL BANK ACCOUNT............................................................................................... 13
    15. SUPPORTIVE SERVICES PAYMENTS, CONTRACTOR RESPONSIBILITY ......................... 13
    16. UNAUTHORIZED SALES, PURCHASE REQUIREMENTS PROHIBITION .......................... 13
    17. PELL GRANT.................................................................................................................... 13
    18. DEFINITION OF UNSUBSIDIZED PLACEMENT, OTHER PLACEMENT REQUIREMENTS ......... 13-14

SECTION XIII:   RECORDS, REPORTS AND AUDITS ............................................................................ 14
    1. GENERAL REQUIREMENTS............................................................................................... 14
    2. FINANCIAL RECORDS....................................................................................................... 14
    3. COST RECORDING AND REPORTING, COST CATEGORIES FOR JOBS, EDUCATION & TRAINING........ 14
    4. ACCOUNTING PROCEDURES ........................................................................................... 15
    5. AUDITS BY CITY................................................................................................................ 15
    6. ANNUAL INDEPENDENT AUDIT REQUIREMENTS ........................................................... 15
    7. REPORTING REQUIREMENTS FOR SUPPORTIVE SERVICE PAYMENTS.......................... 15
    8. RECORD KEEPING FOR EXCUSED ABSENCES................................................................. 15
    9. PROGRAM ACTIVITY RECORD KEEPING.......................................................................... 15-16
    10. MONTHLY REPORTS........................................................................................................ 16
    11. COMPUTERIZED INFORMATION SYSTEM REPORTS ...................................................... 16
    12. OTHER REPORTS............................................................................................................. 16
    13. CLOSE-OUT DOCUMENTS .............................................................................................. 16
    14. PRESERVATION OF RECORDS......................................................................................... 16
    15. SUBMITTAL REQUIREMENTS ......................................................................................... 16

October 5, 2010

Susan Dixson     8/7/2018  11:10 AM

WAYNE COUNTY CLERK

Cathy M. Garrett

FILED IN MY OFFICE

18-009704-CK

JOBS, EDUCATION & TRAINING

Line-Item

## TABLE OF CONTENTS

SECTION XIV:  MONITORING AND CORRECTIVE ACTION............................................................................ 16
   1. PERFORMANCE ESSENTIAL TO LIFE OF CONTRACT .................................................... 16
   2. REGULAR PERFORMANCE ASSESSMENT, OJT WORKSITE MONITORING ........................ 16
   3. NON-COMPLIANCE, CORRECTIVE ACTION.................................................................. 16
   4. NO CONTRACTOR DEFAULT WITHOUT FAULT OR NEGLIGENCE................................... 16-17
   5. ASSISTANCE TO MONITORING, ACCESS TO FACILITY RECORDS.................................... 17
   6. CONTRACTOR STAFF TO COOPERATE WITH MONITOR................................................ 17
   7. MONITORING VISITS WITHOUT PRIOR NOTIFICATION ............................................... 17
   8. RIGHT TO WITHHOLD FUNDS..................................................................................... 17

SECTION XV:  MODIFICATIONS ......................................................................................................... 17
   1. NO CONTRACT CHANGE WITHOUT CITY APPROVAL................................................... 17
   2. NO ORAL UNAUTHORIZED CITY MODIFICATION ....................................................... 17
   3. REQUIREMENT FOR WRITTEN REQUEST FOR MODIFICATION ...................................... 17
   4. CITY MODIFICATION AUTHORITY .............................................................................. 17
   5. CONTRACTOR COOPERATION FOR MODIFICATION...................................................... 17
   6. MODIFICATION OR TERMINATION AUTHORITY AFTER EVALUATION .............................. 17

SECTION XVI:  TERMINATIONS............................................................................................................ 18
   1. CITY TERMINATION AUTHORITY ............................................................................... 18
   2. EFFECTUATION OF TERMINATION.............................................................................. 18
   3. REQUIREMENTS UPON TERMINATION......................................................................... 18
   4. FINAL PAYMENT AFTER TERMINATION ...................................................................... 18
   5. NO CONTRACTOR ENTITLEMENT FOR SERVICES PERFORMED BY CITY AFTER TERMINATION ............................ 18-19
   6. CONTRACTORS SUBJECT TO CIVIL SUIT IF IT FAILS TO REFUND UNEARNED OR DISALLOWED FUNDS................. 19

SECTION XVII:  DISPUTES ................................................................................................................... 19
   1. CITY DECISIVE IN DISPUTES; APPEAL PROCEDURES..................................................... 19
   2. PERFORMANCE PENDING A FINAL DECISION................................................................ 19

SECTION XVIII:  EXHIBITS................................................................................................................... 19

SIGNATURE PAGES:

   RESOLUTION OF CORPORATE AUTHORITY
   SIGNATURE PAGE
   ACKNOWLEDGMENT
   CERTIFICATION REGARDING DEBARMENT, SUSPENSION, INELIGIBILITY AND VOLUNTARY EXCLUSION

EXHIBIT PAGE

18-009704-CK   FILED IN MY OFFICE   WAYNE COUNTY CLERK   8/7/2018 11:10 AM   Cathy M. Garrett   Susan Dixson

## DEFINITIONS

The following words and expressions or pronouns used in their stead shall wherever they appear in this *Contract,* be construed as follows:

*"Additional Services"* shall mean any *Services* in addition to those set out in *Exhibit I* which are related to fulfilling the objectives herein stated, are not contained in the original *Services* as designated in this *Contract* or any *Exhibit* thereto and are agreed upon by the parties by written *Amendment.*

*"Amendment"* shall mean any and all modifications or changes in this *Contract* that have been mutually agreed upon by the *City* and the *Contractor* in writing, approved by the *City Council* and incorporated herein.

*"Associates"* shall mean in reference to the *Contractor,* its personnel, employees, consultants, subcontractors, agents, parent company, or any entities associated, affiliated, or subsidiary to the *Contractor,* now existing or hereinafter created, their agents and employees.

*"City"* shall mean the City of Detroit, a municipal corporation, acting through the office or Department named in the *Contracts* as contracting for the *Services* herein on behalf of the *City.*

*"City Council"* shall mean the legislative body of the City of Detroit.

*"Contract"* shall mean each of the various provisions and parts of this document including all *Exhibits* and *Amendments* as set forth herein. It shall denote a contract executed and approved by the appropriate *City* Departments or offices and by the *City Council.*

*"Contractor"* shall mean the contracting party hereto, whether incorporated as a firm or individual, or whether a partnership or any combination thereof, and its heirs or successors, personnel, representatives, executors, administrators and assigns.

*"Exhibit I"* shall include the *Statement of Work* and all pertinent data relating to performance of the *Services.*

*"Exhibit II"* shall include the method of payment for the *Contract,* hourly rates, if any, and all the reimbursable expenses allowable, if any, to be paid to the *Contractor* in the performance of the Services set forth in this *Contract.*

October 5, 2010

Susan Dixson    8/7/2018  11:10 AM    WAYNE COUNTY CLERK    Cathy M. Garrett    FILED IN MY OFFICE    18-009704-CK

# CITY OF DETROIT
## BUILDINGS AND SAFETY ENGINEERING DEPARTMENT

### PROPERTY CHECK STATEMENT – VIOLATIONS OF RECORD AND/OR FEES DUE

Thow Employment Solutions
**Applicant**

10-3-11
**Date**

151 W, Fort
**Address**

963 8382  EXT 1042
**Telephone #**

Detroit          MI
**City**                    **State**

46226
**Zip Code**

WE REQUEST A CHECK OF THE DEPARTMENTAL RECORDS TO INDICATE THE CURRENT
STATUS OF THE PROPERTY LISTED BELOW WITH REGARD TO EXISTING RECORDS,
VIOLATIONS OF RECORDS AND/OR FEES OWED,

151  W, Fort   Det 48226
**Location**

Commercial
**Building Use**

**CASE NO:** MRC 11-02574

| ROOM NO. | DIVISION | CHECKED BY | DATE | FEES DUE | LP NO. | AMOUNT DUE |
|---|---|---|---|---|---|---|
| | | | FOR DEPARTMENTAL USE ONLY | | | |
| 406 | MECHANICAL | SH | 10/3/11 | YES | SEE ATTACHED | |
| 408 | ELECTRICAL | MS | 10/3/11 | | OPEN PERMIT ELE2011-02969 | |
| 408 | PLUMBING | SL | 10/3/11 | YES | SEE ATTACHED | |
| 402 | BUILDINGS | Ol | 10/3/11 | O | | O |
| 402 | LICENSES & PERMITS | MH | 10/03/11 | yes | see Attached | |
| 412 | HOUSING | | 10/5/11 | No | | |
| 434 | DEMOLITION | TA | 10/3/11 | NO | | |
| 412 | PROPERTY MAINTENANCE | PW | 10/3/11 | 312 ⁰⁰ | | 312⁰⁰ |

**NOTE:** The Property Check does not constitute a Certificate of Approval nor preclude
the possibility of latent violations,

*Caution: Any delinquent/open fees on this property become the responsibility of the new owner.*

Should further

Susan Dixson    8/7/2018 11:10 AM    WAYNE COUNTY CLERK    Cathy M. Garrett    FILED IN MY OFFICE    18-009704-CK

# REQUEST FOR INCOME TAX CLEARANCE

REQUESTING DEPARTMENT/DIVISION: DWDD    CONTACT: C. MUBIRK    PHONE: 664-5519
B. Scott    664-5527

Type of Clearance: ☐ New    ☐ Renewal (Please submit 30 days prior to submitting bid or expiration date)

**A.**

| To: | For: | |
|---|---|---|
| City of Detroit | Individual | TWW |
| Income Tax Division | or Company Name | EMPLOYMENT SOLUTIONS |
| Coleman A. Young Municipal Center | | |
| 2 Woodward Avenue, Ste. 512 | Address | 151 W. FORT |
| Detroit, MI 48226 | | |

Phone: (313) 224-3328 or 224-3329

| Fax:   (313) 224-4588 | City | DETROIT MI |
|---|---|---|
| | State | MI    Zip Code 48226 |
| | Telephone | 963 8382    Fax # 962-8487 |

**B.** Name of Chief Financial Officer/Authorized Contact Person
(include address if different from above)    Telephone # 963-8382 EXT 1024
WENDY RICKETT    Fax # 962 8487

Employer Identification or Social Security Number    Spouse Social Security Number
61-149 4462

Nature of Contract: WORK FORCE TRAINING    BID/CONTRACT AMOUNT (if known):
Labor: $1,249,875  Material: $

Contract # (if known) _____

**C.** ALL QUESTIONS MUST BE ANSWERED TO EXPEDITE APPROVAL PROCESS. ANY QUESTION NOT ANSWERED MAY RESULT IN A DENIAL OF INCOME TAX CLEARANCE

Check One:  ☐ Individual    ☒ Corporation    ☐ Partnership

INDIVIDUALS ANSWER QUESTIONS 1,2,3,4.

1. Have you filed joint returns with spouse during the last seven (7) years? (If yes, include spouse SSN above) ☐ Yes ☐ No

| | Yes | No |
|---|---|---|
| 2. Are you a student, and/or claimed as a dependent on someone else's tax return? | ☐ Yes | ☐ No |
| 3. Were you employed during the last seven (7) years? | ☐ Yes | ☐ No |
| 4. Were you a resident of Detroit during the last seven (7) years? | ☐ Yes | ☐ No |

CORPORATIONS AND PARTNERSHIPS ANSWER QUESTIONS 5,6,7.

| | Yes | No |
|---|---|---|
| 5. Is the company a new business in Detroit? If yes, attach Employer Registration (Form DSS-4). | ☐ Yes | ☒ No |
| 6. Will the company have employees working in Detroit? | ☒ Yes | ☐ No |
| 7. Will the company use sub-contractors or independent contractors in Detroit? | ☐ Yes | ☒ No |

**D.** FOR INCOME TAX USE ONLY

Has the contractor complied with the provisions of the City Income Tax Ordinance?    N. ADANANDUS    FEB 07 2012    FEB 07 2013

| | | | | | |
|---|---|---|---|---|---|
| ☒ Yes | ☐ No | Signature _____ | Date | Expires _____ |
| | ☐ No | Signature _____ | Date _____ | Expires _____ |
| ☐ Yes | ☐ No | Signature _____ | Date _____ | Expires _____ |

VISIT OUR WEBSITE FOR INFORMATION AND TAX FORMS AT www.ci.detroit.mi.us

18-009704-CK    Cathy M. Garrett    WAYNE COUNTY CLERK    8/7/2018 11:10 AM    Susan Dixson

## PURCHASING DIVISION
# VENDOR CLEARANCE REQUEST

Submit to:    Revenue Collections
Purchasing Vendor
1012 Coleman A. Young Municipal Center
Detroit, MI 48226
(313) 224 – 4087 (Telephone)
(313) 224 – 4238 (Fax)

Nature of Contract    JET TRAINING SERVICES.
Contract Amount    $1,249,875

Business Type: (X) Corp    ( ) Partnership ( ) Sole Proprietorship ( ) Personal Services
Business Name    TWW EMPLOYMENT SOLUTIONS

Business Address    151 W. FORT STREET    DETROIT MI 48226

Ward/Item #    FORMER ADDRESS . 1505 WOODWARD

F.I.D. NO.    61-1494462

City Personal Property I.D. #    02991802.01

Owner(s) Name    TERRIE W    HENDERSON

Owner(s) SS#    375 60 6254

Contact Person    TERRIE W HENDERSON
Phone Number    313 463 8382    EXT 104    313 506 9435
Fax Number    313 963 3412
Owner(s) Home Address    1466 SEMINOLE
                                         DET MI    ( ) Lease    (X) Own

### Please do not write below this line for department use only.

Real Property    Special Assessment    Personal Property    Other Receivable

( ) Denied    ( ) Denied    ( ) Denied    ( ) Denied
(X) Approved    (X) Approved    (X) Approved    (X) Approved

Comments: _____

Please mail, fax or drop off this Vendor Request Form to the Revenue Collection Unit at the address
indicated above. You will responsible for keeping the clearance and submitting a photocopy to Purchasing
with your bid package.                                                                         AUG 1 5 2012

Signature (City of Detroit)    2-10-2012    Expiration Date
                                              Date

Susan Dixson    8/7/2018 11:10 AM    WAYNE COUNTY CLERK    Cathy M. Garrett    FILED IN MY OFFICE    18-009704-CK

... Report

Class: 02    CITY OF DETROIT

NW EMPL URBST ELEVITION
151 W FORT

|  | << 2012 Statement (Current Year Statement) >> |  |  |  |
| --- | --- | --- | --- | --- |
| Pages 3 to 4. Other Personal Property | Claimed Value | Depr | Depr.Value |
| Section G. Other Assessable Personal Property | 0 | 100 | 0 |
| Section H. Assessable Tools | 0 | 100 | 0 |
| Section I. Qualified Personal Property | 0 | 100 | 0 |
| Section M. Leasehold Improvements | 0 | TBL | 0 |
| Section N. Buildings on Leased Land | 0 | TBL | 0 |
| Section O. Rental Information | 0 | 100 | 0 |
| 13. Idle Equipment | 0 | TBL | 0 |
| 14. Construction in Progress | 0 | 50 | 0 |
| 15 & 16. Cable, Utility & Cellular Assets | 0 | TBL | 0 |

| Total Cost New= | 0 | TCV= | 0 | Assessed Value= | 0 |
| --- | --- | --- | --- | --- | --- |

| 2012 Est. T.C.V. 02990261.04 |  |  |  |  | = | 0 |
| --- | --- | --- | --- | --- | --- | --- |

Est. TCV/Total Floor Area = 0.00

| 2011 Assessed | MBOR | S.E.V. | Base for Cap | C.P.I. | |
| --- | --- | --- | --- | --- | --- |
| 0 | 0 | 0 | 0 | 0.00 | |

| 2012 | New | Eq. Adjustment | Loss | Additions | Tax Adjustment | Losses |
| --- | --- | --- | --- | --- | --- | --- |
| | 0 | 0 | 0 | 0 | 0 | 0 |

| 2012 Assessed | MBOR | S.E.V. | Capped | ->Taxable<- | PRE/MBT |
| --- | --- | --- | --- | --- | --- |
| 0 | 0 | 0 | 0 | 0 | 0 |

William PLumpe

Susan Dixson    8/7/2018 11:10 AM    WAYNE COUNTY CLERK    Cathy M. Garrett    FILED IN MY OFFICE    18-009704-CK

ACCOUNTS RECEIVABLE CLEARANCE FORM
PLEASE FORWARD IN DUPLICATE TO ROOM 1012 (或1016).
COLEMAN A. YOUNG MUNICIPAL CENTER
REVENUE COLLECTIONS – (313) 224-4807

SECTION A:    From: ☐CITY ENGINEERING ☐HEALTH ☐LAW ☐POLICE
☐RECREATION ☐WATER & SEWERAGE
☒OTHER: __DETROIT WORKFORCE DEVELOPMENT DEPARTMENT__

ADDRESS OF DEPARTMENT: __707 W. MILWAUKEE__
CONTACT PERSON: _C. Mubisy_    PHONE NUMBER __(313) 664- 5519__
DATE SENT: _4/30/11_

**X SECTION B: CORPORATION**
CORPORATION NAME: _TWW Employment Solutions / former Address 1505 Woodward_
ADDRESS __151 W. Fort__    Detroit, MI 48226
{ } OWN   {x} LEASE   { } CURRENT TAX IDENTIFICATION NUMBER: _61- 1494462_
OTHER CITY/STATE TAX IDENTIFICATION NUMBER(S) PREVIOUSLY USED: _NA- 0299 0261.04_
CONTACT PERSON: _Margaret Rainer_   PHONE NUMBER: _(313) 963-8382_   _EXT 1024_
   _Wendy Rickett_

**SECTION C: PARTNERSHIP**
BUSINESS NAME:
ADDRESS:
☐OWN    ☐LEASE    CURRENT TAX IDENTIFICATION NUMBER"
OTHER CITY/STATE TAX IDENTIFICATION NUMBER(S) PREVIOUSLY USED:
A. PARTNER'S NAME:
HOME ADDRESS:        PHONE NUMBER:
                       CITY/STATE/ZIP:
☐OWN    ☐LEASE    SOCIAL SECURITY NUMBER:
OTHER CITY PROPERTY OWNED ADDRESSES:
B. PARTNER'S NAME:
HOME ADDRESS:        PHONE NUMBER:
                       CITY/STATE/ZIP:
☐OWN    ☐LEASE    SOCIAL SECURITY NUMBER:
OTHER PROPERTY ADDRESSES OWNED WITHIN DETROIT:
CONTACT PERSON:        PHONE NUMBER:

**SECTION D: SOLE PROPRIETORSHIP**

OWNER'S NAME:
HOME ADDRESS:
CITY/STATE/ZIP:        ☐OWN ☐LEASE
BUSINESS NAME:
BUSINESS ADDRESS:
SOCIAL SECURITY NUMBER:        ☐OWN ☐LEASE
CITY/STATE/ZIP:        PHONE NUMBER:
CURRENT TAX IDENTIFICATION NUMBER:
OTHER CITY/STATE TAX IDENTIFICATION NUMBER(S) PREVIOUSLY USED:
OTHER PROPERTY ADDRESSES OWNED WITHIN DETROIT:

**SECTION E: PERSONAL SERVICES**

NAME:
HOME ADDRESS:
CITY/STATE/ZIP:        ☐OWN ☐LEASE
SOCIAL SECURITY NUMBER:
OTHER PROPERTY ADDRESSES OWNED WITHIN DETROIT:    PHONE NUMBER:

| For TREASURY COLLECTION USE ONLY! | For INCOME TAX DIVISION USE ONLY! |
|---|---|
| ☑APPROVED   ☐DENIED WITH ATTACHMENTS | ☐APPROVED   ☐DENIED WITH ATTACHMENTS |
| ☑ANCE VALID UNTIL   AUG 1 5 2012 | CLEARANCE VALID UNTIL |
| _Mary Shaw_ 2-10-2012 | |
| SIGNATURE    DATE | SIGNATURE      DATE |

~sed 7/00



# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 11/01/2011 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

**IMPORTANT:** If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Herbert Gibson | | |
|---|---|---|---|
| ITG Advisors 248-233-7870    248-281-5305 26300 Telegraph Rd Suite 201 Southfield, MI 48033 | PHONE (A/C, No, Ext): 248-233-7870 | | FAX (A/C, No): 248-281-5305 |
| | E-MAIL ADDRESS: hgibson@itgadvisors.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED TWW Employment Solutions, LLC 151 W. Fort St. Detroit, MI 48226 | INSURER A : Philadelphia Indemnity Insurance Co | | |
| | INSURER B : Liberty Mutual Insurance Company | | |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES    CERTIFICATE NUMBER:    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** ✓ COMMERCIAL GENERAL LIABILITY | ✓ | | PHPK733256 | 06/12/2011 | 05/12/2012 | EACH OCCURRENCE | $ 1000000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100000 |
| | CLAIMS-MADE ✓ OCCUR | | | | | | MED EXP (Any one person) | $ 5000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1000000 |
| | | | | | | | GENERAL AGGREGATE | $ 2000000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: POLICY PRO-JECT LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2000000 |
| | | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** ANY AUTO | | | PHPK733256 | 06/12/2011 | 06/12/2012 | COMBINED SINGLE LIMIT (Ea accident) | $ 1000000 |
| | ALL OWNED AUTOS    SCHEDULED AUTOS | | | | | | BODILY INJURY (Per person) | $ |
| | ✓ HIRED AUTOS ✓ NON-OWNED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | ✓ UMBRELLA LIAB ✓ OCCUR EXCESS LIAB CLAIMS-MADE | | | PHPK733256 | 06/12/2011 | 06/12/2012 | EACH OCCURRENCE | $ 5000000 |
| | | | | | | | AGGREGATE | $ 5000000 |
| | DED RETENTION $ 10000 | | | | | | | $ |
| B | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | WC5-34S-529187-011 | 08/17/2011 | 08/17/2012 | WC STATU-TORY LIMITS    OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 100000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 100000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 500000 |
| A | Professional Liability | | | PHPK733256 | 06/12/2011 | 06/12/2012 | Coverage Limit: $1,000,000 agg | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
City of Detroit Employment & Training is listed as additional insured with respect to policy.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| City of Detroit Employment & Training 707 W. Milwaukee Ave Detroit, MI 48202 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)    The ACORD name and logo are registered marks of ACORD

Susan Dixson    8/7/2018 11:10 AM    WAYNE COUNTY CLERK    Cathy M. Garrett    FILED IN MY OFFICE    18-009704-CK

## COVENANT OF EQUAL OPPORTUNITY
### (Application for Clearance – Terms Enforced After Contract is Awarded)

I, being a duly authorized representative of the _Employment Solutions_ (hereinafter "Contractor"), do hereby enter into a Covenant of Equal Opportunity (hereinafter "Covenant") with the City of Detroit, ("hereinafter" City); obligating the Contractor and all sub-contractors not to discriminate against any employee or applicant for employment, training, education, or apprenticeship connected directly or indirectly with the performance of the contract, with respect to his or her hire, promotion, job assignment, tenure, terms, conditions or privileges of employment because of race, color, religious beliefs, public benefit status, national origin, age, marital status, disability, sex, sexual orientation, or gender identity or expression.

I understand that it is my responsibility to ensure that all potential sub-contractors are reported to the City of Detroit Human Rights Department and have a current _Contract Specific_ Clearance on file prior to working on any City of Detroit contract. I further understand that the City of Detroit reserves the rights to require additional information prior to, during, and at any time after the Clearance is issued.

Furthermore, I understand that this covenant is valid for the life of the contract and that a breach of this covenant shall be deemed a material breach of the contract and subject to damages in accordance with the City of Detroit Code, Ordinance No. 27-3-2, Section (e).

RFQ / PO No. __2854040__

Printed Name of Contractor: __TWW Employment Solutions__

(Type or Print Legibly)

Contractor Address: __151 W. Fort Detroit MI 46226__
             (City)                                 (State)      (Zip)

Contractor Phone/E-mail: __963 8382 Ext 1042__
                      (Phone)                       (E-mail)

Printed Name & Title of Authorized Representative: __TERRIE W. HENDERSON__

Signature of Authorized Representative: _Terri W Henderson_

Date: __10-3-11__

\*\*\* This document MUST be notarized \*\*\*

Signature of Notary: _Wendy Rickett_

Printed Name of Seal of Notary: __Wendy Rickett__

My Commission Expires: __10 / 15 / 2012__

For Office Use Only:
Cov Rec'd: ____ / ____ in            Department Name:
☐ Accepted by:                       ☐ Rejected by:
Please email or fax Covenant and EOC to Director of Human Rights Department 1026 CAYMC at HumanRightSCL@detroitmi.gov or fax (313) 224-3434.

(Rev.)Form.HRS2010-01

Effective Date 12/1/10

SPECIAL PROVISION

Number One

Procurement Policies, Guidelines and Standards

It is understood and agreed by the parties hereto that this contract is subject to Workforce Investment Act (WIA) Title I, Jobs, Education & Training (JET), and American Recovery and Reinvestment Act (ARRA), procurement policies, guidelines, and standards contained in the:

- ❖ Federal Register, WIA Rules and Regulations, Administrative Rules, Costs and Limitations.

- ❖ Department of Licensing and Regulatory Affairs (LARA), Office of Workforce Development (OWD) Policy Issuance (PI) 04-03 Index: IV.

- ❖ The DOL regulations at 29 CFR 95.27 and 29 CFR 97.22. All recipients and sub-recipients must follow these Federal allowable cost principles that apply to their kind of organizations.

- ❖ Cost Principles for State, Local, and Indian Tribal Governments, OMB Circular A-87.

- ❖ OMB Circular A-102, Grants and Cooperative Agreements with State and Local Governments, as amended.

- ❖ Cost Principles for Non-Profit Organizations, OMB Circular A-122.

- ❖ Cost Principles for Educational Institutions, OMB Circular A-21

- ❖ Office of Management and Budget OMB Circular for Uniform Administrative Requirements for Grants and Cooperative Agreements to State and Local Governments, The Common Rule, and subsequent changes.

- ❖ OMB Circular A-110, Administrative Requirements for Grants and Agreements with Institutions of Higher Education, Hospitals, and other Non-Profit Organizations, as amended.

- ❖ Principles for Determining Costs Applicable to Research and Development Under Grants and Contracts with Hospitals, Appendix E of 45 CFR part 74.

- ❖ For all contracts in excess of $25,000, administrative, contractual, or legal remedies in instances where contractors violate or breach contract terms. The contract clause must also provide for sanctions or penalties, as appropriate. *[Common Rule .36(i)(1); A-110 .48(a); LARA/OWD PI 04-03]*

- ❖ Termination for cause and for convenience by the awarding agency, including the process for exercising the clause and any basis for settlement. *[Common Rule .36(i)(2) – Contracts in excess of $10,000; A-110 .48(b) & DLEG/OWD PI 04-03 – Contracts in excess of $25,000]*

- ❖ Compliance with Executive Order 11246 of September 24, 1965, entitled "Equal Employment Opportunity," as amended by Executive Order 11375 of October 13, 1967, and as supplemented in 41 CFR Part 60. *[Common Rule .36(i)(3) – Construction contracts in excess of $10,000; A-110 Appendix A.1. - All contracts]*

- ❖ Contracts for construction or repair shall comply with the Copeland "Anti-Kickback" Act (18 U.S.C 874) as supplemented in 29 CFR Part 3. *[Common Rule .36(i)(4) – All amounts; A-110 Appendix A.2 – In excess of $2,000]*

- ❖ All construction contracts in excess of $2,000 shall comply with the Davis-Bacon Act (40 U.S.C. 276a to 276a-7) as supplemented by 29 CFR Part 5. *[Common Rule .36(i)(5); A-110 Appendix A.3]*

❖ All contracts in excess of $2,500 that involve employment of mechanics or laborers and all construction contracts in excess of $2,000 shall comply with Sections 103 and 107 of the Contract Work Hours and Safety Standards Act (40 U.S.C. 327-330) as supplemented by 29 CFR Part 5. *[Common Rule .36(i)(6); A-110 Appendix A.4]*

❖ Notice of awarding agency requirements and regulations pertaining to reporting. *[Common Rule .36(i)(7)]*

❖ Notice of awarding agency requirements and regulations pertaining to patent rights with respect to any discovery of invention, which arises or is developed in the course of or under such contract. *[Common Rule .36(i)(8)]*

❖ Awarding agency requirements and regulations pertaining to copyrights and rights in data. *[Common Rule .36(i)(9)]*

❖ Access by the grantee, the subgrantee, the Federal grantor agency, the Comptroller General of the United States, or any of their duly authorized representatives to any books, documents, papers, and records of the contractor which are directly pertinent to that specific contract for the purpose of making audit, examination, excerpts, and transcriptions. *[Common Rule .36(i)(10); A-110 .48(d)]*

❖ Retention of all required records for three years after grantees or subgrantees make final payments and all other pending matters are closed. *[Common Rule .36(i)(11)]*

❖ Contracts in excess of $100,000 shall comply with all applicable standards, orders, or requirements issued under Section 306 of the Clean Air Act (42 U.S.C. 18579h00, section 508 of the Clean Water Act (33 U.S.C. 1368), Executive Order 11738, and Environmental Protection Agency regulations (40 CFR part 15). *[Common Rule .36(i)(12); A-110 Appendix A.6]*

❖ Mandatory standards and policies relating to energy efficiency, which are contained in the state energy conservation plan issued in compliance with the Energy and Conservations Act (Pub. L. 94-163, 89 Stat. 871). *[Common Rule .36(i)(13)]*

❖ For construction or facility improvement contracts or subcontracts in excess of $25,000, the necessary bonding obtained from companies holding certificates of authority as acceptable sureties pursuant to 31 CFR Part 223 "Surety Companies Doing Business with the United States." *[Common Rule .36(h); A-110 .48 (c); DLEG/OWD 04-03]*

Minimum Requirements:

● A bid guarantee from each bidder equivalent to five percent of the bid price.

● A performance bond on the part of the contractor for 100 percent of the contract price.

● A payment bond on the part of the contract for 100 percent of the contract price.

❖ A provision for contractors who apply or bid for an award of $100,000 or more to comply with the Bryd Anti-Lobbying Amendment (31 U.S.C. 1352). *[A-110 Appendix A.7]*

❖ A provision requiring compliance with the debarment and suspension requirements of Executive Orders 12549 and 12689. *[A-110 Appendix A.8]*

❖ Other requirements as defined by the Federal Awarding Agency. These include provisions related to program and administrative regulations, and Single Audit requirements. *[Various: TAG II-10-8]*

18-009704-CK    FILED IN MY OFFICE    Cathy M. Garrett    WAYNE COUNTY CLERK    8/7/2018 11:10 AM    Susan Dixson

SPECIAL PROVISION

Number Two

## EQUAL OPPORTUNITY POLICY GUIDANCE COMPLIANCE

It is understood and agreed by the parties hereto that all programs operated through the state's workforce development and One Stop delivery systems are covered by the procedures designated in the Equal Opportunity Policy Guidance issued by the Department of Licensing and Regulatory Affairs (LARA) and dated June 2001.

Such programs specifically include:

- Workforce Investment Act (WIA) Title I Programs
- American Recovery and Reinvestment Act (ARRA)
- Employment Service (ES)
- Jobs, Education & Training (JET)
- Food Assistance Employment and Training (FAE&T) Program

## REGULATORY REFERENCES

- 29 CFR Part 37, Implementation of the Nondiscrimination and Equality Opportunity Provisions of the Workforce Investment Act of 1998; Final Rule;

- 29 U.S.C. 557b, Designation of the Office of Disability Employment Policy (ODEP) as a distinct and separate component of the Department of Labor;

- 45 CFR Part 80, Nondiscrimination Under Programs Receiving Federal Assistance through the Department of Health and Human Services, Effectuation of Title VI of the Civil Rights Act of 1964;

- 7 CFR Part 15.1-15.12, Nondiscrimination In Federally Assisted Programs of the U.S. Department of Agriculture, Effectuation of Title VI of the Civil Rights Act of 1964;

- 29 CFR, Part 32, Nondiscrimination on the Basis of Handicap in Programs and Activities Receiving or Benefiting From Federal Financial Assistance;

- 29 CFR, Part 35, Nondiscrimination on the Basis of Age in Programs and Activities Receiving Federal Financial Assistance from the Department of Labor; Proposed Rule;

- 29 CFR Part 36, Nondiscrimination on the Basis of Sex in Education Programs and Activities Receiving Federal Financial Assistance; Proposed Rule

- 29 CFR Part 31, Limited English proficiency (LEP) pursuant to Title VI of the Civil Rights Act of 1964, its implementing regulations, and Section 188 of the Workforce Investment Act of 1998.

*Reference: Equal Opportunity Policy Guidance, MDCD, Date Issued June 2001, p.1.

May 3, 2011

Susan Dixson    8/7/2018  11:10 AM    WAYNE COUNTY CLERK    Cathy M. Garrett    FILED IN MY OFFICE    18-009704-CK

SPECIAL PROVISION

Number Three

Program Accessibility And Reasonable Accommodation

The tenets of this contract are governed by the Americans with Disabilities Act (P.L. 101-336), particularly, 28 CFR PART 35, which prohibits discrimination on the basis of disability by public entities.

As an outgrowth of the Detroit Workforce Development Department's ("DWDD") capacity-building programs for customers with disabilities, all Workforce Investment Act ("WIA"), Job, Education & Training ("JET"), and American Recovery and Reinvestment Act (ARAA) service providers are required to guarantee customers with disabilities[1] full access to all programs, facilities, services, and activities without prejudice. In addition, every service provider must include customers with disabilities in their program recruitment efforts and evidence nondiscrimination in the communication and delivery of workforce services. Contractors are prohibited from excluding, segregating or treating people with disabilities unequally.

It is stipulated that:

(1)    Agency personnel *must* continue to audit the overall accessibility of their program to customers *and* employees with disabilities, and make reasonable accommodations, as necessary. Acceptable compliance documentation, including customer satisfaction surveys and a DWDD-approved accessibility checklist, must be maintained by the contractor.

)      Contract staff *will* fully cooperate with Detroit Workforce Development Department ("DWDD") monitors when they conduct an evaluation of the contractor's demonstrated policies and practice of inclusion. An annual assessment of the organization's quality of service delivery to customers with disabilities will be included in the monitoring process.

(3)    The contractor, in order to continue to receive DWDD funding, *must* register and attend all mandatory and ongoing disability awareness workshops made available through the Detroit Workforce Development Department and its partners. Said contractor *must* seek to incorporate lessons learned by creating a barrier-free environment for customers with and without disabilities so that service capacity is optimized throughout the WIA, JET, or other provider system. Maintaining documentation of improvements in program accessibility should be included as a part of the management plan.

---

[1]Note: A disability is an impairment, either mental or physical, that " limits one or more major life activities." Major life activities include the ability to care for self, learn, work, walk, see, hear, speak, breathe, or maintain social relationships, among others.

Susan Dixson

8/7/2018 11:10 AM

WAYNE COUNTY CLERK

Cathy M. Garrett

FILED IN MY OFFICE

18-009704-CK

Jobs, Education, Training (JET)

Line Item

## CITY OF DETROIT
## ACTING BY AND THROUGH THE
## DETROIT WORKFORCE DEVELOPMENT DEPARTMENT
## CONTRACT WITH

### TWW Employment Solutions
(Agency Name)

This Contract is entered into by and between THE CITY OF DETROIT, MICHIGAN, a municipal corporation, organized under the laws of the State of Michigan, hereinafter, referred to as the "CITY," and TWW Employment Solutions is a private- for- profit corporation hereinafter, referred to as the "CONTRACTOR."

The City has received a grant from the Department of Licensing and Regulatory Affairs, for the planning and delivery of Detroit Workforce Development services in the jurisdiction of the City of Detroit, Michigan, as provided under Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA) of 1996 and Michigan P.A. 223 of 1995, which authorizes the use of state funds to match Federal PRWORA funds for JET programs, and Title IV, Part A of the Social Security Act, as amended, which provides for Welfare to Work programs, and/or as provided under laws and regulations as may be promulgated from time-to-time.

It has been determined that the delivery of services authorized in the City's grant requires the competent performance of job readiness, barrier removal and job development, including but not limited to job placement as an integral activity under the City's Detroit Workforce Development system, and which the Contractor hereby affirms that it understands and is well qualified to provide, and moreover desires to provide.

The Contractor has been duly selected in accordance with applicable federal, state, and City regulations and policies. The parties hereby agree that this contract shall include the RFP to which contractor responded, the contractor's proposal, the statement of work and JET Protocol to this contract.

The City and the Contractor do mutually agree as follows:

### SECTION I: STATEMENT OF PURPOSE

The City desires to provide Detroit Workforce Development services within its jurisdiction according to goals and purposes as set forth in the City's approved plan, and the purpose of this Contract is to engage the professional services of the Contractor for the provision of Detroit Workforce Development services and to define the terms and conditions of this undertaking.

### SECTION II: STATEMENT OF WORK

The Contractor shall perform in accordance with the JET Protocol, City, State, Federal, DWDD Policies by amendments or otherwise in response thereto, the definitive Statement of Work incorporated by reference in this Contract, which may include, but is not necessarily limited to, statements pertaining to the specialized services to be provided, enrollment, placement, and retention standards for participants, the specific tasks to be performed, work schedule, performance goals and standards, and staffing arrangements; and shall perform in accordance with such subsequent revisions and modifications of the Statement of Work as are included herein and/or negotiated and agreed upon by the parties, in writing.

### SECTION III: PERIOD OF PERFORMANCE

The Contractor shall commence on the effective date, 10/1/11, to perform the functions set forth in the Statement of Work attached to this contract, as well as all other included terms attached hereto, and subsequent revisions and modifications of it as negotiated in writing with the City, and shall complete said performance not later than 9/30/12.

Susan Dixson

8/7/2018  11:10 AM

WAYNE COUNTY CLERK

Cathy M. Garrett

FILED IN MY OFFICE

18-009704-CK

Jobs, Education, Training (JET)

Line Item

**PROVIDED HOWEVER,** this Agreement may be extended for such period and on such terms as may be mutually agreed upon by the parties in writing.

## SECTION IV: CONSIDERATIONS

1. For the satisfactory performance of services as defined in this contract, including but not limited to the Statement of Work and for all authorized costs incurred in furtherance of said performance, the Contractor shall be paid by the City, in accordance with the arrangements and conditions outlined in Section V, an amount not to exceed: One Million Forty Nine Thousand Eight Hundred Ninety Dollars ($1,049,890).

2. The total amount of this Contract is subject to adjustment by the City if the minimum number of clients to be served is adjusted or if any change is made in the City's grant which affects this Contract or if the Contractor has failed to perform any of the requirements of the contract or abide by any City, State or Federal rule, regulation or directive.

3. The entire Contract, including the budget, is subject to reconsideration and renegotiation should another funding agency participate in the program as described in the Statement of Work, during the period specified in Section III, if such participation would entail use of the staff, equipment, facilities, or other items which are funded wholly or partly under this Contract.

4. If the Contractor is dependent on another funding source(s) for whole or partial funding of staff, equipment, facilities or other items which are essential for effective Contractor performance under this Contract, the entire Contract is subject to further reconsideration and renegotiation should said other funding source(s) withdraw or reduce the Contractor's funding so as to substantially affect Contractor performance under this Contract.

5. As indicated in Section H, "Financial Arrangements," of the Face Sheet hereof, the basis for payment by the City to the Contractor under this Contract is a line-item budget; and such payment shall be for costs incurred in accordance with, and not in excess of, the line-item cost amount detailed in said budget, which budget is included as Exhibit IIB in this Contract. The City reserves the right to approve or reject reimbursement of any incurred costs which are not specified in the line-item budget included in this Contract, and to decline payment for any line item for which services were not performed in an acceptable manner to DWDD.

6. Authorized Contractor costs incurred before the execution date of this Contract but during the period of performance indicated in Section III are allowable, subject to the terms and conditions of this Contract.

7. If, as indicated in Section H, "Financial Arrangements," Item 4 of the Face sheet hereof, the program called for under this Contract requires payment of supportive service payments:

   a. Funds will be allocated for that purpose by the City to the extent that said funds are available. These funds shall not be considered part of the Contract budget. Such funds will be maintained in an account provided for by the City or its designee.

   b. Any funds not expended in any such account, however, or deemed unlikely by the City to be spent, will be subject to reallocation by the City. The Contractor shall not rely upon supportive service payments for the successful performance of this contract.

8. The Contractor shall reimburse the City for any amounts paid to the Contractor for costs incurred for performance under this Contract, if such costs are subsequently disallowed by the City, by the LARA, the U.S. Department of Labor, or by any other duly authorized agency. The Contractor is entitled to appeal any decision regarding disallowed costs in accordance with relevant federal, state, or City grievance procedures to the director of DWDD.

9. In the event of disallowance by the City, by the State of Michigan, by the U.S. Department of Labor, or by any other uly empowered public agency, of the costs of supportive service payments paid to or for participants receiving services hereunder, which disallowance arises from violations by the Contractor of federal, state, or City regulations or policies, including those included in Exhibit IIB, the Contractor shall reimburse the City for the amount of the disallowed costs.

10. Any program income generated hereunder shall be subject to the guidelines contained in Exhibit IID. As required under 29 CRF 95.24 or 29 CFR 97.25(g)(2), such income shall be used prior to the submission of the close-out package for

Line Item

this Contract and shall, as the City shall stipulate, (a) be expended by the Contractor for grant purposes, subject to all terms, conditions, limitations, and cost categories applicable to the grant for this Contract, or (b) be returned to the City, via check, in a timely fashion. Program income includes income from service fees, usage or rental fees for property acquired with grant funds, from the sale of commodities, interest income earned on advances of grant funds, and revenues earned by a governmental or non-profit service provider under a fixed price or reimbursable award that are in excess of the actual costs incurred in providing services, provided however that no charge shall be made to any eligible participant for contractors services.

## SECTION V: ARRANGEMENTS AND CONDITIONS OF PAYMENT

1. Payment of the Contractor's authorized costs shall be by check and be subject to the arrangements and conditions described herein.

2. Payment of funds is contingent upon (1) the City receiving funds in sufficient amount from the Grantor and (2) continued authorization for the program activities called for herein; and is therefore subject to amendment or termination in the event of the non-receipt of such funds or authorization. The City reserves the right to delay such payments until receipt of such adequate funds. The City may decline payment for any services not performed in an acceptable manner.

3. The Contractor shall hold harmless the City of Detroit, its officers, representatives, and employees, acting by and through the Detroit Workforce Development Department, a Michigan Works! Agency, from any claims, costs, charges, obligations, fees, losses, damages, liabilities, and expenses associated with the execution of program activities related to the JET (WF), or other programs or activities funded through the Department of Licensing and Regulatory Affairs (LARA), U.S. Department of Labor (USDOL), or any other entity, in the event that funding, for these programs or activities, is not forthcoming from LARA, USDOL, or any other entity.

4. Contractor understands that this contract is not fully executed and no payment will be made without the approval of the Finance Director, City of Detroit. No such approval will be granted without prior occurrence of the following:

   a. Contract approval by appropriate City of Detroit departments, including the Detroit Workforce Development, Budget, Finance, Law, and Purchasing Departments.

   b. Contract approval by resolution of the City Council of the City of Detroit.

   c. Contract execution by the Purchasing Director, City of Detroit.

5. If, as indicated in Section H, "Financial Arrangements," Item 2 of the Face Sheet, payment for services shall be by way of advance payments, such payments will be made by the City in amounts equal to the Contractor's interim cash needs, but such payment shall be in accordance with Federal requirements, which requires that cash advances be disbursed within a maximum of three (3) days of their receipt from the City. Such advance payments will be made according to the following procedures:

   a. The contractor will submit to the City an initial request for an advance which will schedule cash payments needed to the first day of the next month. This request will outline a schedule of payment dates which will enable the Contractor to provide the services outlined in the Statement of Work.

   b. Following the initial request, fifteen days before the first day of the next calendar month, and fifteen days before the first of each month thereafter, the Contractor will submit a request for an advance which will provide a schedule of payments for the coming month. Each request by the Contractor for payment will be accompanied by three (3) signed copies of the City's form entitled "Contractor Request for Cash Advance."

   c. The City's payment of the Contractor's Request for Cash Advance will be based on: (a) projected needs minus any surplus cash from the previous payment or (b) projected needs plus any deficit from the previous month which is approved, wholly or partially, for reimbursement; but such payment will also be subject to the conditions described in item 7 of this Section. "Projected Needs" is the amount of funds projected to be expended for a period not to exceed one month (maximum of 31 days).

Jobs, Education, Training (JET)

Line Item

d. The City reserves the right at its sole discretion to advance cash amounts to up to 25% of the total contract amount on a case-by-case basis, in accordance with grantor regulations.

6. For the purpose of cost reimbursement, the Contractor shall utilize the DWDD "Contractor's Invoice" form together with such supporting documentation as the City shall specify. Each month, the Contractor shall submit a supporting statement, which shows expenditures by budget line-item. For all costs that are shared with other funding agencies, documentation shall be submitted which shows 100 percent of each such shared cost, together with the portion of each cost that shall be charged to each funding agency, and also shows the method, plan, or rationale used to allocate such shared cost among said funding agencies.

7. If this Contract calls for funding under more than one grant, separate invoices and supporting documentation shall be submitted for line-item expenditures under each grant and clear and separate audit trails shall be maintained to support such invoices.

8. Payment by the City of the Contractor's request for (invoice) or cash advances shall be contingent upon the following:

a. In the case of cost reimbursement (requests), receipt by the City of the Contractor's monthly invoices (at least two copies), together with adequate supporting information by the fifth working day of each month, and any other records required by the City; and

b. The condition that the Contractor's invoiced expenses are satisfactorily documented by payroll, time sheets, invoices, and other records; and are in accord with and do not exceed, without the prior written approval of the City, any of the cost-item rates and totals contained in the budget included with this contract. Failure to produce the documentation shall constitute a basis for charge-back to the Contractor for a period not to exceed seven (7) years after termination of the Contract.

c. Receipt by the City of Monthly Reports and other reports called for in this Contract or requested by the City according to schedules indicated in this Contract or as specified by the City.

d. The condition that the Contractor's performance does not constitute such non-compliance with Contract program goals, standards, conditions, specifications, and requirements, as determined by the City, as to warrant withholding of payment of the Contractor's invoice (costs) or cash advance (requests) pending either corrective action to remove said non-compliance or a Contract termination settlement, or as to warrant the application of such penalties for non-performance as may be called for herein.

e. The initial payment is at the discretion of the City and may not be made until Detroit Workforce Development Department staff has verified that the Contractor has established a satisfactory accounting system.

9. Up to 10 % of the total amount of the Contract may be withheld from payment against possible penalty for non-performance and until the close-out documents are reviewed and approved unless special circumstances shall exist, as determined by the City, that warrant the waiver of such withholding.

## SECTION VI: CLIENTS TO BE SERVED

1. The Contractor will accept as participants all persons referred by the Wayne County Department of Human Services to participate in the JET program called for herein.

## SECTION VII: PERSONNEL, SUPPLIES AND EQUIPMENT

1. During the full period of the Contract, the Contractor shall maintain sufficient qualified personnel as may be specified from time-to-time by DWDD, and furnish all equipment and supplies and all other materials necessary to sustain the program as described in the Contract Statement of Work. It is the Contractor's responsibility to maintain, service, and if necessary, replace said equipment and supplies. As staff terminate and are replaced, contractor shall advise DWDD and provide the resume of new staff within five (5) working days.

### Line Item

2. Upon request of the City, the Contractor shall furnish to the City a complete list (indicating name and title) of all Contractor personnel whose compensation, fringe benefits, or expenses shall be reimbursed, either wholly or partly under this Contract. In the event of any change in staff provided for under this Contract, for whom a complete list has initially been provided, the Contractor shall notify the City of such change, in writing, within five days of said change. The City shall not be liable for any employee costs in excess of the annual salary for any individual employee and shall not pay for accrued vacation, sick, or personal time.

3. All property, equipment, or teaching aids, referred to as inventory, (other than supply items, as determined by the City) that are non-consumable (defined as having a usable life of one year or more) and that were acquired with Work First, or other grant funds under previous line-item contracts with the City, shall be considered assets of the City and are transferable to the City. Title and ownership shall be vested in (a) the City of Detroit, if the acquisition cost is less than $5,000.00, and (b) the LARA, if the acquisition cost is $5,000.00 or more. Such inventory must be identified and tagged with the City of Detroit label accordingly. The Contractor shall prepare the Inventory Certificate and Certified Contractor Inventory for equipment acquired with grant funds with a per unit acquisition cost of $400.00 or more and submit it to the City in accordance with the instructions included in Exhibit V. Further, an updated Inventory Certification and Government Property Inventory shall be submitted on a timely basis to include new purchases. The Detroit Workforce Development Department's Contract Administration Fiscal Unit must be notified in writing of all equipment purchased with Work First, or other grant funds to arrange for the property to be tagged with a City of Detroit Tag Number within thirty days of purchase.

4. The Contractor shall be liable for any loss or damage to government property which results from failure on the part of the Contractor to maintain and administer a program for maintenance, repair, protection, and preservation of government property.

5. The expenditure of funds provided for the purchase, lease, or rental of property or equipment must be in accordance with the following:

   a. The Contractor will endeavor, to the extent practicable (as affected by such considerations as item quality, suitability, and availability), to acquire all items at the lowest possible price.

   b. For all items having a unit cost of $1.00 or more, purchase, lease, or rental shall require the prior written approval of the Detroit Workforce Development Department. To obtain such approval, the Contractor must submit documentary evidence of current price quotations from at least three (3) vendors and such other documentation as shall be specified. All submissions shall be forwarded to:

   c. For all purchases utilizing federal funds, documented records must be maintained to detail the significant history of each procurement, including but not limited to:

      1. Rationale for the method of procurement

      2. Vendor selection based on competitive pre-bid estimate, bids/quotes and cost price analysis from a minimum of three (3) sources (either written, and/or electronic/online or telephonic)

      3. Justification of profit (if applicable)

   The records must be maintained and available for inspection, monitoring and/or audit by the City of Detroit and other related agencies.

   1. *Contracts – Fiscal Contract Administration Unit*
      *c/o (George Valikodath)*
      Detroit Workforce Development Department
      707 West Milwaukee Avenue, 5th floor
      Detroit, Michigan 48202

6. The removal from the Contractor's premises of any property or equipment acquired with State of Michigan, Work First, or other grant funds under this or previous contracts without the prior written approval of the City is prohibited.

## Line Item

7. All employees of the Contractor for whom reimbursement shall be sought under this Contract shall be bound by all pertinent, duly-established personnel policies, regulations, and practices of the Contractor which are in effect during the Contract period, with such exceptions as are deemed warranted by the City. The Contractor shall make available a copy of such personnel policies, etc., and submit any revisions or changes that may occur during this Contract to the City. The City is not required and does not agree to adhere to the personnel policies of the Contractor.

8. The basis for determining labor costs incurred for all Contractor employees for whom reimbursement is sought under this Contract shall be actual time devoted to Contract work rounded to the nearest quarter-hour or other appropriate period stipulated in the Contractor's personnel regulations, with such exceptions for excused employee absences as are stated in the applicable Contractor personnel regulations effective during the Contract period. Contract must have on file Code of Standard/Conflict of Interest in accordance with Section .42 of OMB Circular A-110 and Section .36(b)(3) of the Common Rule.

9. All Contractor employees to be retained and funded for the hours and performance period specified in the budget herein shall be available for, and will perform, the Contract work specified herein during said hours and period; and said employees shall have no commitments or obligations arising from other employment or contractual relationships as would prevent, interfere with, or hinder work hereunder during said hours and period.

10. No personnel expense shall be incurred and charged under this Contract at overtime rates or at any rate in excess of those indicated in the budget enclosed as Exhibit II without prior written approval of the City.

11. All out-of-town travel undertaken in furtherance of, and reimbursable under, this Contract, which travel is defined herein, unless otherwise specified in the Contract Statement of Work, as travel beyond a radius of 50 miles of the Contractor's Detroit Office, shall be subject to prior written approval by the City. All such out-of-town travel shall be at tourist, coach, or less than first-class fares unless itinerary or non-availability dictate otherwise. Per diem expenses shall be allowed when lodging is required, but such expenses shall be in accordance with regulations and rates established by the State of Michigan and with the City's policies, and shall be subject to Contract budget limitations agreed to by the parties. The City's approved per diem rate will be used for determining fractional parts of a day for continuous travel of more than 24 hours. For travel of less than 24 hours, when a night's lodging is not required, the per diem expense shall be at such lesser rate as is approved by the City. However, no per diem shall be allowed when the travel period is 10 hours or less during the same calendar day, except when the travel period is 6 hours or more and begins before 6:00 A.M. or terminates after 8:00 P.M. Detailed records of such travel shall be maintained. Failure to preserve and provide such records may be grounds for reimbursement disallowance by the City.

12. All local travel by automobile by any Contractor employee that is undertaken in furtherance of, and is reimbursable under, this Contract shall be reimbursed at such rate(s) as is agreed upon by the parties and is specified in the Contract Statement of Work and Budget. All such local travel shall be documented on signed forms indicating the date, odometer readings (starting and ending), the miles traveled, and the destination and purpose for each trip. The form to be used for this purpose must be approved by the City. Failure to preserve and provide such documentation may be grounds for reimbursement disallowance by the City.

13. Prior to authorizing an employee or participant to drive a vehicle in furtherance of this Contract, the Contractor shall verify that said employee or participant has a valid driver's license. The Contractor shall not authorize a privately-owned vehicle to be driven in furtherance hereof unless said vehicle is insured against liability and property damage with coverage that, at the least, meets State minimum requirements. Further, the Contractor shall not authorize any person to drive any vehicle in furtherance hereof unless the Contractor has complied with the agency insurance requirements specified herein in Section X, Item 6.

14. Any expenditure for in-service staff training which is reimbursable under this Contract shall require prior written approval from the City. Request for approval for expenditures for in-service training shall be made in writing and shall include the following: a brief description of the nature of the program or project, the estimated cost, the number of staff to anticipate, and the benefits to staff as they relate to their job responsibilities and functions under this Contract.

## SECTION VIII: FAIR EMPLOYMENT PRACTICES, EQUAL OPPORTUNITY

1. In accordance with the United States Constitution and all Federal legislation and regulations governing fair employment practices and equal employment opportunity, including but not limited to, Title VI of the Civil Rights Act of