## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

### REPLY IN SUPPORT OF CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE CONFIRMATION ORDER AND BAR DATE ORDER AGAINST TWW EMPLOYMENT SOLUTIONS, LLC

## I.     Introduction

TWW admits that it improperly sued the City of Detroit in its state court lawsuit.  TWW, however, refuses to dismiss the Detroit Workforce Development Department ("WDD") because it now alleges that the WDD is not a department of the City even though it stated in its complaint that the WDD was a department of the City.  WDD was in fact formerly a department of the City and any claims TWW may have against it were discharged and enjoined by the Confirmation Order, barred by the Bar Date Order and fail under Michigan law. Consequently, the City respectfully requests that the Court enter an order directing TWW to dismiss the City and the WDD with prejudice from its state court lawsuit.

## II.     Argument

In its brief in opposition to the City's Motion, TWW now asserts that the WDD is "separate and completely legal distinct entity from the city of Detroit. It

32268303.2\022765-00213

has its own corporate powers, operates with a separate board of directors, and has control over all funds necessary to govern its operations." Brief in Opposition at 3 [Doc. No. 12917]. TWW further asserts that the Detroit Employment Solutions Corporation ("DESC") -- the third defendant in the state court lawsuit -- was "successor-in-interest" to WDD. Brief in Opposition, p. 1.

In support of this assertion, TWW attached four exhibits to its Brief. These exhibits do not show that the WDD is a separate entity from the City or that the DESC was the successor in interest to the WDD. Instead, they simply demonstrate that the entity now known DESC has undergone several name changes since it was first incorporated in 1984 as "The Detroit Private Industry Council" and that two of these names sound similar to the Detroit Workforce Development Department. Brief in Opposition, Exhibit A. As set forth in the Plaintiff's exhibits, the Detroit Private Industry Council changed its name to the Detroit Workforce Development Board in 1994, and then to the Detroit Workforce Development Board Corporation in 2011, before a final name change to DESC on June 29, 2012. Brief in Opposition, Exhibits A-D. Notwithstanding the evolution of its legally chosen name over time, the entity now known as DESC has always maintained its character as an independently incorporated Michigan corporation and has never been a department of the City or even had the word department in its name.

32268303.2\022765-00213

In that regard, the Complaint names three defendants: (1) the City of Detroit; (2) "Defendant, Detroit Workforce Development Department ('WDD') is formally a department of the city of Detroit"; and (3) Detroit Employment Solutions Corp, Inc.  Complaint ¶¶ 3-5.[1]  Paragraph 8 of the Complaint further alleges that "Plaintiff, TWW had a contract with the city of Detroit through WDD." Complaint ¶ 8. Indeed, the contract attached to the Complaint as Exhibit A, provides that the two parties to the contract were TWW and the "City of Detroit acting by and through the Detroit Workforce Development Department." Doc. No. 12905-1, page 28 of 33.  There are numerous references throughout the contract to the Detroit Workforce Development Department but none to the Detroit Workforce Development Board or the Detroit Workforce Development Board Corporation. *See e.g.* Contract ¶ 5(c)(3), Doc. No. 12905 -1, page 32 of 33; Contract, Exhibit 1, Attachment C, Doc. No. 12905-4, page 15 of 34; Contract, Exhibit 1, Attachment D, Doc. No. 12905-4, page 18 of 34; Contract Exhibit III, C, Doc. No. 12905-6, page 19 or 34; Contract Exhibit V, Doc. No. 12905-6, page 23 or 34; Contract Exhibit VIII, Doc. No. 12905-6, page 28 of 34.

In fact, the WDD was a department of the City. As set forth in the attached excerpt from the Executive Organizational Plan of the City from 2002, the WDD

---

[1] The Complaint was attached to the City's Motion [Doc. No. 12905] as exhibit 6-1.

was a department of the City in the Executive Branch.  Exhibit 1, Executive

Organizational Plan, p. 125; *see also* Exhibit 2, Departmental Budget Information,

Detroit Workforce Development Department; Exhibit 3, City Council Resolutions

from 2010 (these resolutions approve acceptance of grant funds and authorize a

commensurate City budget appropriation).

In 2012, the City determined that it would transition day to day

administration of the work that was being completed by the WDD to an external

fiscal agent – the Detroit Workforce Development Board Corporation, now known

DESC.  *See* Exhibit 4, City Council document ("Submitting responses to budget

questions from City Council Member Kenneth V. Cockrel, Jr. regarding the

Transitioning of the Detroit Workforce Development Department to the Detroit

Workforce Board Inc.").  Such a transition was available to the City as an option

under § 117 of the Workforce Investment Act of 1998 ("WIA"), P.L. 105-220.  *See*

Exhibit 5.  This transition is also reflected in the Notice of Contract Non-Renewal

attached as Exhibit B to the Complaint, which distinguishes between the WDD and

the Detroit Workforce Development Board Corporation.  Complaint, Exhibit B,

Doc. No. 12905-7, page 13 of 34.  This Notice of Non-Renewal was dated June 7,

2012, and on the letterhead of the City of Detroit Workforce Development

Department.  It provides in pertinent part

> The ***Detroit Workforce Development Department (DWDD)*** has
> determined that due to your organization's failure to meet required

contract standards, the option for renewal of your PY 2011-12 Jobs, Education and Training (JET) contact will not be offered by the *Detroit Workforce Development Board (DWDB) Corporation*. To this end, and in accordance with your current contract expiration, your final service delivery date is August 31, 2012.

Our goal is to ensure continuity of services for program participants and the successful transfer of all related program documents and equipment to the *Detroit Workforce Development Board (DWDB) Corporation* in accordance with the provisions of *Section XVI: Terminations* of your contract.

Complaint, Exhibit B (emphasis added). Accordingly, the Notice of Contract Non-Renewal reflects the transition from the WDD to the Workforce Development Board Corporation, as local fiscal agent for the City, during the summer of 2012. Approximately three weeks after the Notice of Contract Non-Renewal, the Detroit Workforce Development Board Corporation changed its name to the DESC. As a result, the letter dated October 9, 2012, that was attached as Exhibit E to the Complaint was from the DESC to TWW.

In short, TWW's new position has no merit. The entity that it sued in its Complaint was the WDD, a former department of the City, because the WDD was named in the contract. As such, TWW's lawsuit was enjoined and discharged by the Confirmation Order and barred by the Bar Date Order because a lawsuit against a department of the City is one against the City itself. *See Haverstick Enterprises, Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 992 (6th Cir. 1994)

32268303.2\022765-00213

Further, TWW's claims against WDD fail for the additional reason that a department of a municipal corporation "is not a legal entity against whom a suit can be directed." *Haverstick Enters., Inc. v Fin. Fed. Credit, Inc.*, 803 F. Supp. 1251, 1256 (E.D. Mich. 1992), (citing *Moomey v. City of Holland*, 490 F. Supp. 188 (W.D. Mich. 1980) and *Michonski v. City of Detroit*, 162 Mich. App. 485, 413 N.W.2d 438 (1987)). The Sixth Circuit affirmed the dismissal, writing "Under the law of Michigan, a municipal police department is a creature of the municipality. A suit against a city police department in Michigan is one against the city itself, because the city is the real party in interest." 32 F.3d 989 (6th Cir. 1994) (citations omitted). Thus, even if WDD still existed as a City department (it does not), a law suit could not be brought against it.

## III. Conclusion

For the reasons set forth above, the City respectfully requests that this Court enter an order in substantially the same form as the one attached as Exhibit 1 to the City's Motion requiring TWW to dismiss or caused to be dismissed with prejudice the claims against the City and the WDD in the state court case pending in the Circuit Court for the County of Wayne.

- 6 -

Dated: October 19, 2018

Respectfully submitted,

By: /s/ Marc N. Swanson
    Marc N. Swanson (P71149)
    MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 19, 2018, he filed the *Reply in Support of the City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against TWW Employment Solutions, LLC* ("Motion") using the court's CM/ECF system which provided notice of the filing to all registered participants in this matter. The undersigned further certifies that on the same day, a copy of the Motion was served upon the following via United States mail:

Anthony Adams
7650 2nd Ave, Suite 113
Detroit, MI 48202

By: /s/ Marc N. Swanson
    Marc N. Swanson
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

October 19, 2018

- 1 -

# DESCRIPTIONS OF MAYOR'S OFFICE,

## CITY DEPARTMENTS,

## AND SPECIAL AGENCIES

### SEC. 20. RESERVED

Editor's note—Section 20 formerly contained an organizational chart of city department. Due to changes in city departments this former chart has been considered obsolete.

### SEC. 30. CHARTER OF THE CITY OF DETROIT*

As Adopted by Vote of the People
on November 6, 1973; Effective July 1, 1974

## ARTICLE 7. THE EXECUTIVE BRANCH: PROGRAMS, SERVICES AND ACTIVITIES

### Sec. 7-101. Existing programs, services and activities.

When this Charter takes effect, all executive and administrative agencies and functions existing under title 7 of the 1918 Charter or by ordinance or resolution and not superseded by this Charter shall continue with the force and effect of ordinance until superseded by action taken under sections 7-102 or 7-104.

### Sec. 7-102. Assignment of authorized functions.

The Mayor shall prepare an executive organization plan, which, consistent with law and this Charter, sets forth all agencies of the executive branch and assigns authorized programs, services and activities to each agency.

The plan as proposed by the mayor shall be filed with the city council and made public. The city council shall study and conduct hearings on the plan and may request the mayor to make modifications in it. Sixty business days after filing of the plan with the city council, it shall become effective, with such modifications as are accepted by the mayor, unless disapproved by a resolution adopted by a ⅔ majority of city council members serving. All amendments to the plan must originate with the mayor and are subject to the same procedure in taking effect.

The plan shall include the office of mayor, the 5 departments created by article 6 [Budget, Planning, Finance, Law and Personnel] and all departments or functions created by article 7 [†] or continued by section 7-101. However, the plan may not provide for more than 35 departments, exclusive of any department organized under specific statutory authority, unless authority for a greater number is granted under Section 7-104.

The mayor may not reassign or combine the functions of staff departments, but may, except as to departments created under chapters 3 [Arts], 9 [Historical], 10 [Human Rights], 11 [Police], 15 [Water &

*Editor's note—This portion of the Executive Organization Plan includes §§ 7-101—7-104 of the Charter of the City of Detroit, included in this Code as Pt. I, Home Rule Charter. Material in brackets in this excerpt from the Charter has been included by the city for purposes of annotation.

†Health and Sanitation, Arts, Building, Planning and Development, Consumer Affairs, Environmental Protection, Fire, Historical, Human Rights, Police, Public Lighting, Recreation, Transportation, Water and Sewerage, and Zoological Parks.

Sewerage] and 16 [Zoological Parks] of this article, assign any of the functions of an operating department to a staff department, reassign the functions of one operating department to another operating department or combine operating departments.

### Sec. 7-103. Advisory commissions.

Commissions of citizens to advise any agency of the executive branch, or branch offices of any agency, in the determination of its policies and budgets and the implementation of its programs, services and activities may be created by executive order. Appointments to the commissions shall be made by and members serve at the pleasure of the mayor.

The mayor shall endeavor to make city-wide commissions as representative of the entire city as possible and any commission created to advise a branch office of any agency as representative of the people being served as possible.

All members of advisory commissions shall be residents of Detroit unless the mayor shall expressly specify otherwise in the executive order and state reasons for allowing non-residents to serve.

### Sec. 7-104. Change in number of authorized functions.

Subject to the general provisions of this Charter, the city may, by ordinance, increase the number of departments of the executive branch beyond the number contemplated by this Charter.

The city may, by ordinance, authorize additional programs, services, or activities; or discontinue authorized programs, services or activities.

### SEC. 40. MAYOR'S OFFICE*

Summary of Office's Purposes:

To implement and administer programs, services and activities of City Government in order to provide the citizens of Detroit with a well-run, well-managed, safe and clean city.

Administration:

The Mayor is the Chief Executive Official of the City of Detroit and the conservator of the peace. The Mayor appoints the Deputy Mayor and any other necessary Executive Assistants. He appoints the Press Secretary, Secretarial Staff, the Director and Deputy Director of Neighborhood City Halls, the Neighborhood City Hall Managers and Assistant Neighborhood City Halls Managers.

Number of Employees on Departmental Payroll as of 4-1-94: 78

Administrative Offices:
    Mayor's Office
    1126 City-County Building
    Detroit, MI 48226

---

*Editor's note—Item No. 1 of Amendment No. 1 and Item No. 3 of Amendment No. 6 to the Executive Organization Plan (EOP) both filed by the Mayor on April 12, 2006, approved by city council resolution and effective July 7, 2006, transferred the consumer advocacy function from the former Consumer Affairs Department to the Office of the Mayor, (Neighborhood City Halls).

Amendment No. 3 and Item No. 5 of Amendment No. 6 to the EOP both filed by the Mayor on April 12, 2006, approved by city council resolution and effective July 7, 2006 transferred of the functions of the former Department of Senior Citizens relating to senior citizens advocacy, information and referral activities to the Office of the Mayor, (Neighborhood City Halls).

Amendment No. 7 to the EOP filed by the Mayor on April 12, 2006, approved by city council resolution and effective July 7, 2006, transferred the Citizen Radio Patrol Program from the Office of the City Clerk to the Office of the Mayor, (Neighborhood City Halls).

Amendment No. 9 to the EOP filed by the Mayor on April 12, 2006, approved by city council resolution and effective July 7, 2006, transferred the 3-1-1 Call Center to the Office of the Mayor.

13-53846-tjt    Doc 12922    Filed 10/19/18    Entered 10/19/18 15:30:16    Page 11 of 34

## SEC. 110. RESERVED*

## SEC. 120. DEPARTMENT OF CULTURE, ARTS AND TOURISM†

Summary of Departmental Purposes:

This new department will centralize the City's present efforts, which are fragmented and dispersed throughout several departments and agencies, to advocate, coordinate and implement actions which promote the arts and cultural life in the City of Detroit.

## SEC. 130. DETROIT WORKFORCE DEVELOPMENT DEPARTMENT‡

Summary of Departmental Purposes:

To provide job training and employment opportunities for adults and youth who are experiencing severe difficulties in obtaining employment and who are economically disadvantaged, unemployed or underemployed.

Administration:

The Mayor appoints the Director-Employment and Training Department, who is the Chief Executive Officer of the department. The Director appoints the Deputy Director-Employment and Training Department with the Mayor's consent.

Number of Employees on Departmental Payroll as of 4-1-94: 171

Administrative Offices:
>       707 West Milwaukee
>       Detroit, MI 48202

Major Functional Areas:
>       Administrative Services
>       Participant Services
>       Summer and Michigan Youth Corps
>       Job Training
>       Senior Citizens Training
>       Dislocated Workers Services
>       Classroom Training
>       Employment Opportunity Programs

---

**\*Editor's note**—Amendment No. 1 to the Executive Organization Plan (EOP) filed by the mayor on April 12, 2006, approved by city council resolution and effective July 7, 2006, eliminated the Consumer Affairs Department, formerly included as § 110 of this plan, and provided for the transfer of the functions of this former department as follows:

1. Transferring the responsibilities of the Consumer Advocacy Division of the Consumer Affairs Department, Agency 16, found at Section 110 of the EOP, to the Office of the Mayor, (Neighborhood City Halls), Agency 33, found at Section 40 of the Executive Organization P/an, to provide broader information and referral services and a coordinated approach including use of the Customer Outreach Service Team (COST) to increase citizen access. This same transfer was also approved by Item No. 4 of Amendment No. 6 to the EOP, filed and approved on the same dates as Amendment No. 1 above.

2. Transferring the responsibilities of the Licenses and Permits Division of the Consumer Affairs Department, Agency 16, found at Section 110 of the Executive Organization, Plan, to the Buildings & Safety Engineering Department (BS&E), Agency 13, found at Section 60 of the EOP to utilize BS&E's expertise and experience in the licensing and permit area.

3. Transferring the responsibilities of the Weights and Measures Division of the Consumer Affairs Department, Agency 16, found at Section 110 of the EOP, to the Fleet Control Unit of the Detroit Police Department, Agency 37, found at Section 270 of the EOP, which already enforces traffic laws and regulations and inspects taxicab meter seals.

**†Editor's note**—As proposed by the Mayor on May 16, 1995, to the City Council, the Executive Organization Plan has been amended by the creation of the Department of Cultural Affairs. In 2004 this department was renamed the Department of Culture, Arts and Tourism.

**‡Editor's note**—This department was renamed in 2004 and formerly named as the Employment and Training Department.

13-53846-tjt    Doc 12922    Filed 10/19/18    Entered 10/19/18 15:30:16    Page 12 of 34

## SEC. 140. DEPARTMENT OF ENVIRONMENTAL AFFAIRS*

Summary of Departmental Purposes:

The purpose of this department is management and coordination of the environmental policy and environmental affairs of the City of Detroit, with the ultimate goals of 1) protection and conservation of the environment and natural resources of the City; 2) protection of the health, safety and welfare of the People of the City; and 3) promotion of improved social and economic conditions of the City. Among other functions, this department will develop and implement coordinated environmental policies for the City; manage and coordinate compliance by the City with federal, state and local environmental laws and regulations, with the support of legal counsel; advise and consult with agencies of the federal, state and other local governments; provide technical support and assistance in environmental grant applications; and conduct public outreach and public education regarding environmental issues.

## SEC. 150. FINANCE DEPARTMENT†

Summary of Departmental Purposes:

To administer the overall fiscal and financial affairs of the City. To provide services and controls for accounting, cash management, procurement and revenue collection functions. The Finance Department also operates the public markets.

THIS IS A CHARTER MANDATED DEPARTMENT.

Administration:

The Mayor appoints the Finance Director who is the Chief Executive Officer of the Department. The Finance Director also oversees the accounts, assessments, treasury and purchasing divisions.

The Finance Director appoints the Deputy Finance Director with the Mayor's consent. The Finance Director appoints the Chief Accounting Officer, Treasurer and Purchasing Director with Mayoral approval. These appointees administer their respective Divisions. A three member Board of Assessors is created by City Charter. The Mayor appoints the Chief Assessor and two assessors, and may remove them for cause. Appointments are to three year terms with one term expiring each year. The board members must possess the qualifications required by law for assessing officers.

Number of Employees on Departmental Payroll as of 4-1-94: 500

Administrative Offices:

Finance Department       —   1200 City-County Building

---

*Editor's note—As proposed by the Mayor on May 16, 1995, to the City Council, the Executive Organization Plan has been amended by the creation of the Department of Environmental Affairs.

Proposed Amendment No. 3 of May 15, 2002, transferred environmental code enforcement functions from the Department of Public Works to Environmental Affairs Compliance and Enforcement Division. Proposed Amendment No. 4 of May 15, 2002, transferred the Planning and Development Department Development Division Environmental Section to Environmental Affairs Brownfield Redevelopment Program. Proposed Amendment No. 5 of May 15, 2002, transferred Buildings and Safety Engineering Department solid waste zoning ordinance enforcement functions to the Environmental Affairs Compliance and Enforcement Division.

Editor's note—Amendment No. 5 proposed by the Mayor on April 12, 2006, approved by City Council Resolution and effective July 7, 2006 transferred all environmental control inspectors, including rodent control, from the Health & Wellness Promotion Department, and the Public Works Department, to the Environmental Affairs Department.

†Editor's note—Amendment No. 3 to the Executive Organization Plan filed by the Mayor on April 12, 2006, approved by City Council Resolution and effective July 7, 2006 created an Office of Targeted Business Development in the Finance Department.

Editor's note—An amendment to the Executive Organization Plan approved by City Council resolution on June 29, 2010 reassigned fire and police medical unit worker's compensation and related services from the Fire Department, Agency No. 24, and from the Police Department, Agency No. 37, to the Risk Management Division of the Finance Department, Agency No. 23.

13-53846-tjt    Doc 12922    Filed 10/19/18    Entered 10/19/18 15:30:16    Page 13 of 34

|                      |   |                           |
|----------------------|---|---------------------------|
| Accounts Division    | — | 801 City-County Building  |
| Assessments Division | — | 804 City-County Building  |
| Treasury Division    | — | 650 City-County Building  |
| Purchasing Division  | — | 912 City-County Building  |

Major Functional Areas:
- Administrative Services
- Accounts Payable
- Assessing
- Purchasing
- Market Operations
- Property Tax
- Income Tax Operation
- Debt Management
- Parking Meter Collections
- Revenue Collections
- Accounts and Records
- Accounting and Pre-Audits
- Risk Management
- Pension
- Greater Detroit Resource Recovery Authority (for payroll purposes)
- Detroit Building Authority (for payroll purposes)

## SEC. 160. FIRE DEPARTMENT*

Summary of Departmental Purposes:

To protect life and property from fire; to inspect public buildings and other places for the enforcement of all laws, ordinances and regulations relating to fire prevention and safety; to investigate the causes and origins of fires, and prosecute perpetrators of arson; to provide emergency transportation to a hospital for the sick and injured; and to maintain a state of preparedness for civil or natural disaster.

Administration:

The Mayor appoints the Fire Commissioner and the Deputy Fire Commissioner. The Fire Commissioner is the Chief Executive Officer of the Department. The Fire Commissioner with Mayoral approval, appoints the Chief of Fire Operations and two Deputy Fire Chiefs from the Battalion Fire Chiefs in the fire fighting division. The Fire Commissioner appoints the Fire Marshall, who serves at the pleasure of the Fire Commissioner. (Note: A recent arbitration decision provides that the Assistant Fire Marshall shall be promoted to Fire Marshall.)

Number of Employees on Departmental Payroll as of 4-1-94: 1676

Administrative Offices:
Fire
250 West Larned
Detroit, MI 48226

---

*Editor's note—Amendment Nos. 4 and 6 to Executive Organization Plan, proposed by the Mayor on April 12, 2006, approved by City Council Resolution and effective July 7, 2006, transferred the responsiblity of inventory stores and the repair of fire apparatus to the General Services Department.

Editor's note—An amendment to the Executive Organization Plan approved by City Council resolution on June 29, 2010 reassigned the fire medical unit worker's compensation and related services from the Fire Department, Agency No. 24 to the Risk Management Division of the Finance Department, Agency No. 23.

Emergency Medical Services
900 Merrill Plaisance
Detroit, MI 48203

Major Functional Areas:
Administrative Services
Training Academy
Fire Fighting
Apparatus Maintenance
Fire Investigations
Emergency Medical Service
Communication System
Fire Inspections and Education
Marine Operations-Fireboat
Airport Operations-Crashcrew

## SEC. 165. GENERAL SERVICES DEPARTMENT*

Major Functional Areas:
Grounds Maintenance
Vehicle Maintenance
Facilities Maintenance
Building Operations
Inventory Management

## SEC. 170. DEPARTMENT OF HEALTH AND WELLNESS PROMOTION†

Summary of Departmental Purposes:

The mission of the Detroit Health Department is to "protect and promote the health of the residents of the City of Detroit". Our responsibilities include prevention and control of disease and injury, prevention and control of environmental hazards, and protecting the health of vulnerable populations.

*Editor's note—Amendment No. 4 to the Executive Organization Plan (EOP) filed by the mayor on April 12, 2006, approved by city council resolution and effective July 7, 2006, created the General Services Department and included the following provisions:

1. Create the General Services Department.

2. Transfer the equipment maintenance function from the Recreation Department, Agency 39, found at Section 300 of the EOP, into the new General Services Department.

3. Consolidate the grounds maintenance function from the Recreation Department; Agency 39, found at Section 300 of the EOP, and the vacant lot cleanup and non-park forestry functions from the Department of Public Works, Agency 19, found at Section 290 of the EOP, and transferring them as an integrated function to the General Services Department.

4. Transfer the vehicle management function from the Department of Public Works, Agency 19, found at Section 290 of the EOP, into the new General Services Department.

5. Transfer the facilities management function from the Finance Department Agency 23, found at Section 150 of the EOP, into the new General Services Department.

6. Centralize building operations including security, and maintenance staff from various agencies into the new General Services Department.

7. Transfer the repair of fire apparatus function from the Fire Department Agency 24, found at Section 160 of the EOP, into the new General Services Department.

8. Create a new Inventory Management function by transferring stores from Fire Apparatus Recreation and Public Lighting Department.

Items 1—3 of Amendment No. 6 to the EOP reiterated and restated the transfer of functions to the General Services Department. Amend. No. 6 was filed and approved on the same dates as Amend. No. 4 above.

†Editor's note—Amendment No. 5 proposed by the Mayor on April 12, 2006, approved by City Council Resolution and effective July 7, 2006 transferred all environmental control inspectors, including rodent control, from the Health & Wellness Promotion Department, and the Public Works Department, to the Environmental Affairs Department.

13-53846-tjt    Doc 12922    Filed 10/19/18    Entered 10/19/18 15:30:16    Page 15 of 34

## MISSION

The Detroit Workforce Development Department (DWDD) promotes the economic self-sufficiency of Detroit residents and provides qualified workers to local employers through the delivery of cost-effective, high quality employment, training, and education services in partnership with businesses, faith- and community-based organizations, education and training institutions, and governmental agencies.

The Detroit Workforce Development Department will initiate restructuring efforts in order to develop structural balance by bringing costs in line with revenue while improving city services.

## DESCRIPTION

The Detroit Workforce Development Department provides employment and training services to Detroit residents and businesses.

DWDD operates four Detroit One-Stop Career Service Centers that administer Workforce Investment Act (WIA) programs for youth, adults, and dislocated workers. Through the Detroit One-Stop Career Service Centers, DWDD provides core, intensive, and training services to eligible participants, including Temporary Assistance to Needy Families (TANF) recipients, dislocated workers, former prisoners, and individuals with disabilities. Core services include, but are not limited to, outreach, orientation, intake, assessment, job search, and job placement assistance. Intensive services include comprehensive and specialized assessment, case management, group counseling, and short-term pre-vocational services. Training services include on-the-job training, skill upgrading, and occupational skills training.

The Department also oversees the operation of industry-focused Career Centers and two welfare reform programs. The welfare reform programs include the Jobs, Education and Training (JET) and the Food Assistance Employment and Training Program (FAE&T). These programs provide employment, training, and support services to welfare and food stamps recipients. The Career Centers provide eligible Detroit residents with training and employment in high growth/high demand careers and industries for the metropolitan Detroit area. DWDD's Career Centers are currently focusing on the hospitality/retail, construction, transportation, and healthcare industries.

DWDD implements two federal funded grant programs: The Promoting Responsible Fatherhood Program and the Community-Based Job Training Project. The Promoting Responsible Fatherhood Program provides assistance to unemployed and low-income Detroit fathers. The Program is designed to help fathers gain the skills and resources necessary to become economically self-sufficient and to provide financial support for their children. In a partnership with CVS, Goodwill Industries, and Wayne County Community College District, the Community-Based Job Training Project provides employment and training services that prepare eligible Detroit residents for management careers in the retail industry.

The Department also provides employment and training-related services through four federal Earmarks. These earmarks include the following programs: Individual Development Account (IDA) Program, Adult Access to Education (AATE) Program, Business-to-Youth Mentoring

Program, and the Bridges to Success Program. The IDA Program helps WIA-eligible recipients purchase a home, start or expand a business, or obtain college degree. The AATE Program provides tuition assistance to TANF recipients who are pursuing a baccalaureate degree in a high demand, high growth occupation. The Business-to-Youth Mentoring Program provides mentoring services to Detroit youth who are 14 to 15 years old. The Bridges to Success Program provides intensive employment-focused case management, life skills and job readiness training, and transitional jobs to returning citizens (ex-offenders).

DWDD assists employers with their workforce needs. The Department is responsible for finding and developing jobs with employers. Its Business Service Group (BSG) helps businesses find, train, and retain its workforce. DWDD also provides employers with assessments and testing, prescreening services, office space for recruiting and interviewing, and information about various tax incentives regarding hiring low-income individuals and fidelity bonding services.

DWDD also helps employers train and retain their existing workforce through its Incumbent Worker Training (IWT) Program.

DWDD provides employment and training programs that help eligible youth overcome barriers to academic and employment success. Youth Services Activity includes programs specifically designed to meet the growing need for job opportunities and training for disadvantaged Detroit youth. Services may also include career planning and one or more of the following activities:

- Tutoring, study skills training, and instruction leading to secondary school completion, including dropout prevention strategies.
- Alternative secondary school offerings.
- Summer employment opportunities directly linked to academic and occupational learning.
- Paid and unpaid work experiences, including internships and job shadowing.
- Occupational skill training.
- Leadership development opportunities, which may include such activities as positive social behavior and soft skills, decision making, team work, and other activities.
- Supportive services.
- Adult mentoring for a duration of at least twelve (12) months that may occur both during and after program participation.
- Follow up services.
- Comprehensive guidance and counseling, including drug and alcohol abuse counseling, as well as referrals to counseling, as appropriate to the needs of the individual youth.

## MAJOR INITIATIVES FOR
## FY 2009-10

The Detroit Workforce Development Department is committed to working with the Mayor's Office, the Office of Targeted Business Development, and other city Departments to revitalize the city's economy by creating new job opportunities and developing new industries.

The Department is motivated to refocus its efforts to address the national economic recession as well as acute economic conditions in the metropolitan Detroit area which have occurred due to downsizing and massive layoffs in the auto manufacturing industry.

In addition, DWDD is focused on improving the number of summer job opportunities made available to Detroit's youth.

DWDD is also responding to changing program requirements mandated by federal and state governments concerning the Temporary Assistance to Needy Families (TANF) and the Workforce Investment Act (WIA) – DWDD's two largest funding stream. The Department's major initiatives include the following activities:

- Focus on the Mayor's key economic sectors (energy, life sciences, transportation, film industry, and healthcare) in order to promote new job and industry creation.
- Improve the services provided by DWDD's One-Stops Career Service Centers in order to deliver cost-effective, high quality, employment, training and support services.
- Develop training that support new business creation and small business development. DWDD will implement a new Career Center that focuses on entrepreneurial training. The Entrepreneurship Center will help coach and support individuals in starting up a business for self-employment.
- Develop a new Rapid Response Unit that will enable DWDD to provide services for plant closings and mass layoffs.
- Improve customer service by extending the Department's service hours to better accommodate job seekers and employers.
- Expand and improve the training opportunities provided through the Mayor's Scholarship Program.
- Improve the services provided through the state's Jobs, Education, and Training (JET) in partnership with the Department of Human Services and Michigan Rehabilitation Services in order to provide TANF recipients with comprehensive career development assistant.
- Improve the Department's contract management process to ensure that all DWDD's contractors adhere to appropriate performance standards and outcomes and ensure that contracts are executed, and contractors are paid, in a timely manner.
- In partnership with employers, training providers, faith-based and community organizations, improve the employment and training services provided by DWDD's industry-focused Career Centers.
- Administer the Energy Conservation Apprentice Readiness (ECAR) Program in order to develop apprentices who can work on local road construction projects.
- Evaluate Michigan's education and training providers in order to ensure that Detroit residents are provided with effective training programs that meet the need of employers.
- Sustain long-term, partnerships with employers in order to place Detroiters in job openings.
- Increase efforts to improve Detroit's literacy rate by developing ten (10) Literacy Centers throughout the city in collaboration with the Michigan Department of Energy, Labor, and Economic Growth (DELEG).
- Increase the number of summer jobs provided to Detroit youth by building on DWDD's partnership with the Detroit Youth Employment Consortium (through the Skillman Foundation) and developing subsidized and unsubsidized summer employment opportunities with the public, private, and non-profit sector.

- Sustain the employment and training opportunities created by the American Recovery and Reinvestment Act of 2009 (The Recovery Act).

## PLANNING FOR THE FUTURE FOR FY 2010-11, FY 2011-12, and BEYOND

The future plans for Detroit Workforce Development Department call for the planning, development, and administration of employment and training services that will provide improved services to job seekers and employers through the improvement of strategic partnerships with the entire career development community, including workforce and economic development agencies. DWDD will focus its efforts on the following future goals:

- Develop strong, strategic relationships with the business community in order to provide employers with a 21st Century workforce in order to participate in the global economy.
- Increase outreach efforts to further develop and enhance partnerships with other workforce development agencies, education and training providers, faith-

and community-based organizations, human service agencies, and other city Department that provide service to adults and youth.
- Improve customer satisfaction by making sure that DWDD staff and contractors provide superior customer service.
- Create innovative employment, training, and support services programs that address and resolve barriers faced by Detroit residents.
- Identify local employment and training custom designed training program options to assist employers to grow their businesses and make their work force more productive.
- Identify and create programs for former prisoners (returning citizens) that will help them become productive members of Detroit neighborhoods.
- Develop more academic enrichment and work experience programs for youth that will help prepare them for higher education and meaningful employment.

# DEPARTMENTAL BUDGET INFORMATION
## DETROIT WORKFORCE DEVELOPMENT DEPARTMENT (21)



## PERFORMANCE GOALS, MEASURES AND TARGETS

| Type of Performance Measure:<br>List of Measures | 2008-09<br>Actual | 2009-10<br>Projection | 2010-11<br>Target |
|---|---|---|---|
| **Outputs:  Units of Activity directed toward Goals** | | | |
| WIA Adult GED's or other credentials obtained | 92.4% | 93% | 93% |
| **Outcome:  Results or Impacts of Program Activities** | | | |
| WIA Adult Entered Employment Rate | 75.7% | 80% | 82% |
| WIA Adult Employment Retention Rate | 77.3% | 80% | 82% |

## DEPARTMENTAL BUDGET INFORMATION
## DETROIT WORKFORCE DEVELOPMENT DEPARTMENT (21)

**EXPENDITURES**

| | 2008-09 Actual Expense | 2009-10 Redbook | 2010-11 Mayor's Budget Rec | Variance | Variance Percent |
|---|---|---|---|---|---|
| Salary & Wages | $ 19,358,030 | $ 8,443,950 | $ 7,635,157 | $ (808,793) | -10% |
| Employee Benefits | 10,419,058 | 5,123,020 | 4,686,567 | (436,453) | -9% |
| Prof/Contractual | 6,138,863 | 4,671,737 | 1,048,418 | (3,623,319) | -78% |
| Operating Supplies | 804,248 | 234,999 | 230,001 | (4,998) | -2% |
| Operating Services | 13,281,950 | 7,737,507 | 7,895,754 | 158,247 | 2% |
| Fixed Charges | 47,396 | 68,000 | 68,000 | - | 0% |
| Capital Equipment | 136,240 | 10,000 | 10,000 | - | 0% |
| Other Expenses | 53,421,550 | 33,847,394 | 40,946,747 | 7,099,353 | 21% |
| TOTAL | $ 103,607,335 | $ 60,136,607 | $ 62,520,644 | $ 2,384,037 | 4% |
| POSITIONS | 103 | 131 | 125 | (6) | -5% |

**REVENUES**

| | 2008-09 Actual Revenue | 2009-10 Redbook | 2010-11 Mayor's Budget Rec | Variance | Variance Percent |
|---|---|---|---|---|---|
| Rev from Use of Assets | $ 35,920 | $ - | $ - | $ - | 0% |
| Grants/Shared Taxes | 77,672,882 | 59,134,907 | 61,518,944 | 2,384,037 | 4% |
| Miscellaneous | 1,197,673 | 1,000,000 | 1,000,000 | - | 0% |
| TOTAL | $ 78,906,475 | $ 60,134,907 | $ 62,518,944 | $ 2,384,037 | 4% |

### Detroit Workforce Development Department
**A Michigan Works! Agency**
**Finance and Administrative Services**
March 23, 2010

Honorable City Council:
Re: Authority to accept additional funds for WIA Adult from the Michigan Department of Energy, Labor & Economic Growth.

The Detroit Workforce Development Department has received total funding in the amount of $8,672,469.00 for WIA Adult from the Michigan Department of Energy, Labor & Economic Growth.

Your Honorable Body previously approved appropriation amounting to $8,664,496.00 for this grant. The Detroit Workforce Development Department, therefore, requests your authorization to increase Appropriation 12795 by $7,973.00 for fiscal year 2010.

The Detroit Workforce Development Department respectfully requests your Honorable Body to adopt the following resolution with a Waiver of Reconsideration.

Respectfully submitted,
LARRY HIGHTOWER
Director

Approved:
PAMELA SCALES
Budget Director

By Council Member Jenkins:
Resolved, That the Detroit Workforce Development Department be and is hereby authorized to increase 2009-10 Appropriation No. 12795 — WIA Adult FY 2010 by $7,973.00 from $8,664,496 to $8,672,469; Now be it further

Resolved, That the Finance Director be and is hereby authorized to establish the necessary accounts, honor vouchers and payrolls when presented in accordance with the foregoing communication and regulations of the Michigan Department of Energy, Labor and Economic Growth.

Adopted as follows:
Yeas — Council Members Brown, Cockrel, Jr., Jenkins, Jones, Kenyatta, Spivey, Tate, Watson, and President Pugh — 9.

Nays — None.

### Detroit Workforce Development Department
**A Michigan Works! Agency**
**Finance and Administrative Services**
March 19, 2010

Honorable City Council:
Re: Authority to accept Jobs, Education, and Training (JET GF/GP) General Fund/General Purpose Funds from the Michigan Department of Energy, Labor & Economic Growth (DELEG).

The Detroit Workforce Development Department has received total funding in the amount of $4,753,229 from the Michigan Department of Energy, Labor and Economic Growth.

Your Honorable Body previously approved appropriations amounting to $4,500,000 for this grant. The Detroit Workforce Development Department, therefore requests your authorization to increase Appropriation Number 12785 by $253,229 for fiscal year 2010.

The Detroit Workforce Development Department plans to use the allocated funding to provide employment related services to JET recipients in accordance with DELEG policy.

The Detroit Workforce Development Department respectfully requests your Honorable Body to adopt the following resolution with a Waiver of Reconsideration.

Respectfully submitted,
LARRY HIGHTOWER
Director

Approved:
PAMELA SCALES
Budget Director
FLOYD STANLEY
Deputy Finance Director

By Council Member Jenkins:
Resolved, That the Detroit Workforce Development Department be and is hereby authorized to increase 2009-10 Appropriation No. 12785 — JET GF/GP by $253,229 from $4,500,000 to $4,753,229; Now be it further

Resolved, That the Finance Director be and is hereby authorized to establish the necessary accounts, honor vouchers and payrolls when presented in accordance with the foregoing communication and regulations of the Michigan Department of Energy, Labor and Economic Growth.

Adopted as follows:
Yeas — Council Members Brown, Cockrel, Jr., Jenkins, Jones, Kenyatta, Spivey, Tate, Watson, and President Pugh — 9.

Nays — None.

### Detroit Workforce Development Department
**A Michigan Works! Agency**
**Finance and Administration Services**
April 6, 2010

Honorable City Council:
Re: Authority to accept WIA Rapid Response Joint Adjustment Committee (JAC DET #10-2) Program Funding from the Michigan Department of Energy, Labor and Economic Growth (DELEG).

The Detroit Workforce Development Department has received funding in the amount of $10,450.00 for the WIA Rapid Response Program Joint Adjustment Committee (JAC DET #10-2) from the Michigan Department of Energy, Labor and Economic Growth.

The Detroit Workforce Development Department plans to use the expected funding to cover Rapid Response expenditures associated with the establishment and maintenance of a Joint Adjustment

## RECONSIDERATIONS
NONE.

---

## RESOLUTION
By ALL COUNCIL MEMBERS:
THE FOLLOWING ITEM(S) ARE BEING REFERRED TO THE BUDGET, FINANCE AND AUDIT STANDING COMMITTEE:

### FINANCE DEPARTMENT/PURCHASING DIVISION

Submitting the following Finance Department/Purchasing Division Contracts:

1. Submitting reso. autho. **Contract No. 2796123** — 100% City Funding — To Furnish: Extension of P.O. #2796123 — Period not to exceed six (6) months (June 15, 2012 through December 14, 2012) or until a new contract is effective whichever is sooner to allow for the rebidding of a contract — Increase contract by $210,000.00 ($900,000 to $1,110,000.00) to meet upcoming department demands for moving services — BDM LLC, 1301 W. Lafayette, Suite 419, Detroit, MI 48226 — Total estimated cost: $210,000.00. **Finance.**

2. Submitting report relative to Cumulative Weekly Reports for All Contracts Valued at $5,000.00 to $25,000.00 during the period of May 1, 2012 through May 20, 2012.

### LAW DEPARTMENT

3. Submitting responses to questions from City Council Member Kenneth V. Cockrel, Jr. regarding FY 2012-13 Budget.

4. Submitting responses to questions from City Council Member Andre L. Spivey regarding FY 2012-13 Budget.

### AIRPORT DEPARTMENT

5. Submitting responses to questions from City Council Members Kenneth V. Cockrel, Jr. and Saunteel Jenkins regarding FY 2012-13 Budget.

### BUDGET DEPARTMENT/MUNICIPAL PARKING DEPARTMENT

6. Submitting responses to questions from City Council Fiscal Analyst Irvin Corley, Jr. regarding FY 2012-13 Budget.

### WORKFORCE DEVELOPMENT DEPARTMENT

7. Submitting responses to budget questions from City Council Member Kenneth V. Cockrel, Jr. regarding the Transitioning of the Detroit Workforce Development Department to the Detroit Workforce Development Board, Inc.

Adopted as follows:

Yeas — Council Members Brown, Cockrel, Jr., Jenkins, Jones, Kenyatta, Spivey, Tate, Watson, and President Pugh — 9.

Nays — None.

---

## RESOLUTION
By ALL COUNCIL MEMBERS:
THE FOLLOWING ITEM(S) ARE BEING REFERRED TO THE INTERNAL OPERATIONS STANDING COMMITTEE:

### LAW DEPARTMENT

1. Submitting reso. autho. Legal Representation and Indemnification in lawsuit of Markell Allen a/k/a Erik Rex vs. City of Detroit, et al, USDC Case No. 10-11612, for P.O. Dieasree Curry and Sgt. Kenneth Christensen.

2. Submitting reso. autho. Legal Representation and Indemnification in lawsuit of Laturra Houze vs. James Minano and John Doe, W.C.C.C. Case No. 11-009213 NO, for P.O. James Minano.

Adopted as follows:

Yeas — Council Members Brown, Cockrel, Jr., Jenkins, Jones, Kenyatta, Spivey, Tate, Watson, and President Pugh — 9.

Nays — None.

---

## RESOLUTION
By ALL COUNCIL MEMBERS:
THE FOLLOWING ITEM(S) ARE TO BE REFERRED TO THE PLANNING AND ECONOMIC DEVELOPMENT STANDING COMMITTEE:

### PLANNING AND DEVELOPMENT DEPARTMENT

1. Submitting reso. autho. to Apply for and Accept the Emergency Solutions Grant (ESG) for the Purpose of Homeless Prevention and Rapid Re-housing from the Department of Housing and Urban Development (HUD) in the amount of $914,815.00. (The Homeless Emergency Assistance and Rapid Transition to Housing Act of 2009 (HEARTH Act) which was enacted into law on May 20, 2009, consolidated three of the separate homeless assistance programs administered by HUD under the McKinney-Vento Homeless Assistance Act into a single grant program, and revises the Emergency Shelter Grants program and renames it as the Emergency Solutions Grants (ESG) program. The City of Detroit received its final ESG allocation of $1,626,338 in 2011; on January 4, 2012 the U.S. Department of HUD provided a second allocation of $914,815 in ESG Funds to the City of Detroit as a Substantial Amendment to its 2011 Annual Action Plan.)

2. Submitting reso. autho. Public Hearing for Anew Life Prosthetics and Orthotics, LLC. Petition #2291; Application to Establish an Obsolete Property Rehabilitation District, in the area of 6438 Woodward, Detroit, Michigan in accordance with Public Act 146 of 2000.

3. Submitting reso. autho. Public Hearing for Wholesale Distribution Center Rehabilitation Project No. 3 — Development: Parcel 528; bounded by Dequindre, Hale, St. Aubin & Mack. (The department is in receipt of an offer from Pellerito Foods, Inc., a Michigan Corporation, to purchase the above-captioned property for the amount of $90,500 and to develop

SEC. 117. <<NOTE: 29 USC 2832.>>  LOCAL WORKFORCE INVESTMENT BOARDS.

    (a) Establishment.--There shall be established in each local area of
a State, and certified by the Governor of the State, a local workforce
investment board, to set policy for the portion of the statewide
workforce investment system within the local area (referred to in this
title as a ``local workforce investment system'').
    (b) Membership.--
            (1) State criteria.--The Governor of the State, in
        partnership with the State board, shall establish criteria for
        use by chief elected officials in the local areas for
        appointment of

[[Page 112 STAT.955]]

        members of the local boards in such local areas in accordance
        with the requirements of paragraph (2).
            (2) Composition.--Such criteria shall require, at a minimum,
        that the membership of each local board--
                    (A) shall include--
                            (i) representatives of business in the local
                        area, who--
                                    (I) are owners of businesses, chief
                                executives or operating officers of
                                businesses, and other business
                                executives or employers with optimum
                                policymaking or hiring authority;
                                    (II) represent businesses with
                                employment opportunities that reflect
                                the employment opportunities of the
                                local area; and
                                    (III) are appointed from among
                                individuals nominated by local business
                                organizations and business trade
                                associations;
                            (ii) representatives of local educational
                        entities, including representatives of local
                        educational agencies, local school boards,
                        entities providing adult education and literacy
                        activities, and postsecondary educational
                        institutions (including representatives of
                        community colleges, where such entities exist),
                        selected from among individuals nominated by
                        regional or local educational agencies,
                        institutions, or organizations representing such
                        local educational entities;
                            (iii) representatives of labor organizations
                        (for a local area in which employees are
                        represented by labor organizations), nominated by
                        local labor federations, or (for a local area in
                        which no employees are represented by such
                        organizations), other representatives of
                        employees;
                            (iv) representatives of community-based
                        organizations (including organizations
                        representing individuals with disabilities and
                        veterans, for a local area in which such
                        organizations are present);
                            (v) representatives of economic development
                        agencies, including private sector economic
                        development entities; and
                            (vi) representatives of each of the one-stop
                        partners; and
                    (B) may include such other individuals or

representatives of entities as the chief elected
official in the local area may determine to be
appropriate.
          (3) Authority of board members.--Members of the board that
represent organizations, agencies, or other entities shall be
individuals with optimum policymaking authority within the
organizations, agencies, or entities.
          (4) Majority.--A majority of the members of the local board
shall be representatives described in paragraph (2)(A)(i).
          (5) Chairperson.--The local board shall elect a chairperson
for the local board from among the representatives described in
paragraph (2)(A)(i).

     (c) Appointment and Certification of Board.--
          (1) Appointment of board members and assignment of
responsibilities.--

[[Page 112 STAT.956]]

               (A) In general.--The chief elected official in a
          local area is authorized to appoint the members of the
          local board for such area, in accordance with the State
          criteria established under subsection (b).
               (B) Multiple units of local government in area.--
                    (i) In general.--In a case in which a local
               area includes more than 1 unit of general local
               government, the chief elected officials of such
               units may execute an agreement that specifies the
               respective roles of the individual chief elected
               officials--
                              (I) in the appointment of the
                         members of the local board from the
                         individuals nominated or recommended to
                         be such members in accordance with the
                         criteria established under subsection
                         (b); and
                              (II) in carrying out any other
                         responsibilities assigned to such
                         officials under this subtitle.
                    (ii) Lack of agreement.--If, after a
               reasonable effort, the chief elected officials are
               unable to reach agreement as provided under clause
               (i), the Governor may appoint the members of the
               local board from individuals so nominated or
               recommended.
               (C) Concentrated employment programs.--In the case
          of a local area designated in accordance with section
          116(a)(2)(B), the governing body of the concentrated
          employment program involved shall act in consultation
          with the chief elected official in the local area to
          appoint members of the local board, in accordance with
          the State criteria established under subsection (b), and
          to carry out any other responsibility relating to
          workforce investment activities assigned to such
          official under this Act.
          (2) Certification.--
               (A) In general.--The Governor shall, once every 2
          years, certify 1 local board for each local area in the
          State.
               (B) Criteria.--Such certification shall be based on
          criteria established under subsection (b) and, for a
          second or subsequent certification, the extent to which
          the local board has ensured that workforce investment
          activities carried out in the local area have enabled
          the local area to meet the local performance measures.

(C) Failure to achieve certification.--Failure of a
local board to achieve certification shall result in
reappointment and certification of another local board
for the local area pursuant to the process described in
paragraph (1) and this paragraph.
        (3) Decertification.--
                (A) Fraud, abuse, failure to carry out functions.--
        Notwithstanding paragraph (2), the Governor may
        decertify a local board, at any time after providing
        notice and an opportunity for comment, for--
                        (i) fraud or abuse; or
                        (ii) failure to carry out the functions
                specified for the local board in any of paragraphs
                (1) through (7) of subsection (d).
                (B) Nonperformance.--Notwithstanding paragraph (2),
        the Governor may decertify a local board if a local area
        fails to meet the local performance measures for such

[[Page 112 STAT.957]]

local area for 2 consecutive program years (in
accordance with section 136(h)).
                (C) Plan.--If the Governor decertifies a local board
        for a local area under subparagraph (A) or (B), the
        Governor may require that a new local board be appointed
        and certified for the local area pursuant to a
        reorganization plan developed by the Governor, in
        consultation with the chief elected official in the
        local area, and in accordance with the criteria
        established under subsection (b).
        (4) Single state area.--Notwithstanding subsection (b) and
paragraphs (1) and (2), if a State described in section 116(b)
indicates in the State plan that the State will be treated as a
local area for purposes of the application of this title, the
Governor may designate the State board to carry out any of the
functions described in subsection (d).

    (d) Functions of Local Board.--The functions of the local board
shall include the following:
        (1) Local plan.--Consistent with section 118, each local
board, in partnership with the chief elected official for the
local area involved, shall develop and submit a local plan to
the Governor.
        (2) Selection of operators and providers.--
                (A) Selection of one-stop operators.--Consistent
        with section 121(d), the local board, with the agreement
        of the chief elected official--
                        (i) shall designate or certify one-stop
                operators as described in section 121(d)(2)(A);
                and
                        (ii) may terminate for cause the eligibility
                of such operators.
                (B) Selection of youth providers.--Consistent with
        section 123, the local board shall identify eligible
        providers of youth activities in the local area by
        awarding grants or contracts on a competitive basis,
        based on the recommendations of the youth council.
                (C) Identification of eligible providers of training
        services.--Consistent with section 122, the local board
        shall identify eligible providers of training services
        described in section 134(d)(4) in the local area.
                (D) Identification of eligible providers of
        intensive services.--If the one-stop operator does not
        provide intensive services in a local area, the local
        board shall identify eligible providers of intensive

services described in section 134(d)(3) in the local
area by awarding contracts.
      (3) Budget and administration.--
            (A) Budget.--The local board shall develop a budget
      for the purpose of carrying out the duties of the local
      board under this section, subject to the approval of the
      chief elected official.
            (B) Administration.--
                  (i) Grant recipient.--
                        (I) In general.--The chief elected
                  official in a local area shall serve as
                  the local grant recipient for, and shall
                  be liable for any misuse of, the grant
                  funds allocated to the local area under
                  sections 128 and 133, unless the chief
                  elected official reaches an agreement
                  with the Governor for the

                  Governor to act as the local grant
                  recipient and bear such liability.
                        (II) Designation.--In order to
                  assist in the administration of the
                  grant funds, the chief elected official
                  or the Governor, where the Governor
                  serves as the local grant recipient for
                  a local area, may designate an entity to
                  serve as a local grant subrecipient for
                  such funds or as a local fiscal agent.
                  Such designation shall not relieve the
                  chief elected official or the Governor
                  of the liability for any misuse of grant
                  funds as described in subclause (I).
                        (III) Disbursal.--The local grant
                  recipient or an entity designated under
                  subclause (II) shall disburse such funds
                  for workforce investment activities at
                  the direction of the local board,
                  pursuant to the requirements of this
                  title, if the direction does not violate
                  a provision of this Act. The local grant
                  recipient or entity designated under
                  subclause (II) shall disburse the funds
                  immediately on receiving such direction
                  from the local board.
                  (ii) Staff.--The local board may employ staff.
                  (iii) Grants and donations.--The local board
      may solicit and accept grants and donations from
      sources other than Federal funds made available
      under this Act.
      (4) Program oversight.--The local board, in partnership with
the chief elected official, shall conduct oversight with respect
to local programs of youth activities authorized under section
129, local employment and training activities authorized under
section 134, and the one-stop delivery system in the local area.
      (5) Negotiation of local performance measures.--The local
board, the chief elected official, and the Governor shall
negotiate and reach agreement on local performance measures as
described in section 136(c).
      (6) Employment statistics system.--The local board shall
assist the Governor in developing the statewide employment
statistics system described in section 15(e) of the Wagner-
Peyser Act.
      (7) Employer linkages.--The local board shall coordinate the

workforce investment activities authorized under this subtitle
and carried out in the local area with economic development
strategies and develop other employer linkages with such
activities.
            (8) Connecting, brokering, and coaching.--The local board
shall promote the participation of private sector employers in
the statewide workforce investment system and ensure the
effective provision, through the system, of connecting,
brokering, and coaching activities, through intermediaries such
as the one-stop operator in the local area or through other
organizations, to assist such employers in meeting hiring needs.


    (e) Sunshine Provision.--The local board shall make available to the
public, on a regular basis through open meetings, information regarding
the activities of the local board, including information

[[Page 112 STAT.959]]

regarding the local plan prior to submission of the plan, and regarding
membership, the designation and certification of one-stop operators, and
the award of grants or contracts to eligible providers of youth
activities, and on request, minutes of formal meetings of the local
board.
    (f ) Limitations.--
            (1) Training services.--
                    (A) In general.--Except as provided in subparagraph
                (B), no local board may provide training services
                described in section 134(d)(4).
                    (B) Waivers of training prohibition.--The Governor
                of the State in which a local board is located may,
                pursuant to a request from the local board, grant a
                written waiver of the prohibition set forth in
                subparagraph (A) (relating to the provision of training
                services) for a program of training services, if the
                local board--
                        (i) submits to the Governor a proposed request
                    for the waiver that includes--
                                (I) satisfactory evidence that there
                            is an insufficient number of eligible
                            providers of such a program of training
                            services to meet local demand in the
                            local area;
                                (II) information demonstrating that
                            the board meets the requirements for an
                            eligible provider of training services
                            under section 122; and
                                (III) information demonstrating that
                            the program of training services
                            prepares participants for an occupation
                            that is in demand in the local area;
                        (ii) makes the proposed request available to
                    eligible providers of training services and other
                    interested members of the public for a public
                    comment period of not less than 30 days; and
                        (iii) includes, in the final request for the
                    waiver, the evidence and information described in
                    clause (i) and the comments received pursuant to
                    clause (ii).
                    (C) Duration.-- <<NOTE: Applicability.>> A waiver
                granted to a local board under subparagraph (B) shall
                apply for a period of not to exceed 1 year. The waiver
                may be renewed for additional periods of not to exceed 1
                year, pursuant to requests from the local board, if the
                board meets the requirements of subparagraph (B) in
                making the requests.

        (D) Revocation.--The Governor may revoke a waiver
granted under this paragraph during the appropriate
period described in subparagraph (C) if the State
determines that the local board involved has engaged in
a pattern of inappropriate referrals to training
services operated by the local board.
      (2) Core services; intensive services; designation or
certification as one-stop operators.--A local board may provide
core services described in section 134(d)(2) or intensive
services described in section 134(d)(3) through a one-stop
delivery system described in section 134(c) or be designated or
certified as a one-stop operator only with the agreement of the
chief elected official and the Governor.
      (3) Limitation on authority.--Nothing in this Act shall be
construed to provide a local board with the authority to mandate
curricula for schools.

[[Page 112 STAT.960]]

   (g) Conflict of Interest.--A member of a local board may not--
      (1) vote on a matter under consideration by the local
board--
        (A) regarding the provision of services by such
member (or by an entity that such member represents); or
        (B) that would provide direct financial benefit to
such member or the immediate family of such member; or
      (2) engage in any other activity determined by the Governor
to constitute a conflict of interest as specified in the State
plan.

   (h) Youth Council.--
      (1) Establishment.--There shall be established, as a
subgroup within each local board, a youth council appointed by
the local board, in cooperation with the chief elected official
for the local area.
      (2) Membership.--The membership of each youth council--
        (A) shall include--
          (i) members of the local board described in
subparagraph (A) or (B) of subsection (b)(2) with
special interest or expertise in youth policy;
          (ii) representatives of youth service
agencies, including juvenile justice and local law
enforcement agencies;
          (iii) representatives of local public housing
authorities;
          (iv) parents of eligible youth seeking
assistance under this subtitle;
          (v) individuals, including former
participants, and representatives of
organizations, that have experience relating to
youth activities; and
          (vi) representatives of the Job Corps, as
appropriate; and
        (B) may include such other individuals as the
chairperson of the local board, in cooperation with the
chief elected official, determines to be appropriate.
      (3) Relationship to local board.--Members of the youth
council who are not members of the local board described in
subparagraphs (A) and (B) of subsection (b)(2) shall be voting
members of the youth council and nonvoting members of the board.
      (4) Duties.--The duties of the youth council include--
        (A) developing the portions of the local plan
relating to eligible youth, as determined by the
chairperson of the local board;
        (B) subject to the approval of the local board and

consistent with section 123--
                    (i) recommending eligible providers of youth
                activities, to be awarded grants or contracts on a
                competitive basis by the local board to carry out
                the youth activities; and
                    (ii) conducting oversight with respect to the
                eligible providers of youth activities, in the
                local area;
            (C) coordinating youth activities authorized under
        section 129 in the local area; and
            (D) other duties determined to be appropriate by the
        chairperson of the local board.

[[Page 112 STAT.961]]

    (i) Alternative Entity.--
        (1) In general.--For purposes of complying with subsections
    (a), (b), and (c), and paragraphs (1) and (2) of subsection (h),
    a State may use any local entity (including a local council,
    regional workforce development board, or similar entity) that--
            (A) is established to serve the local area (or the
        service delivery area that most closely corresponds to
        the local area);
            (B) is in existence on December 31, 1997;
            (C)(i) is established pursuant to section 102 of the
        Job Training Partnership Act, as in effect on December
        31, 1997; or
            (ii) is substantially similar to the local board
        described in subsections (a), (b), and (c), and
        paragraphs (1) and (2) of subsection (h); and
            (D) includes--
                    (i) representatives of business in the local
                area; and
                    (ii)(I) representatives of labor organizations
                (for a local area in which employees are
                represented by labor organizations), nominated by
                local labor federations; or
                    (II) (for a local area in which no employees
                are represented by such organizations), other
                representatives of employees in the local area.
        (2) References.--References in this Act to a local board or
    a youth council shall be considered to include such an entity or
    a subgroup of such an entity, respectively.