# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

City of Detroit, Michigan

Debtor

Bankruptcy Case No: 13-53846

Judge Thomas J. Tucker

Chapter 9

## MOTION FOR LEAVE TO COMPLY *NUNC PRO TUNC,* WITH ORDER OF SEPTEMBER 29, 2016 DEADLINE FOR AMENDING COMPLAINT

Plaintiff, Jerome Collins, through counsel, moves this Bankruptcy Court pursuant to[1] and this Court's inherent powers to manage its own docket, and Order of Judge Friedman, dated July 19, 2018, for leave, *nunc pro tunc,* to file an Amended Complaint, the intent of which is clarify that Plaintiff is not seeking relief from the City of Detroit or any of its employees, or police officers in their official capacities.

In support of his motion, Collins states as follows:

1. His claim arose on or about July 6, 2013, when he was terminated from employment and when his request to be reinstated as a police officer was denied after he was acquitted by a Wayne County jury of charges arising from alleged misconduct in office.

2. Internal proceedings were derailed when the City filed bankruptcy.

3. That in all candor, Plaintiff's ability to press his fairly straightforward desire to resume his career became ensnared in the BR proceedings, which complicated jurisdictional

---

[1] The term *'nunc pro tunc'* is a Latin phrase that means *'now for then.'* *Fanellli v Hensley (matter of Triangle Chemicals, Inc.),* 697 F.2d 1280, 1285 (5th Cir 1983) Bankruptcy Courts has the inherent power to enter *nunc pro tunc* orders. *See In re Call,* 30 B.R. 374, 379 (Bankr S.D. Ohio 1984)

interaction between the District Court and the Bankruptcy Court, and Movant's efforts to navigate between the two.

4. That as the most recent order from the District Court indicates, in its view, this Honorable Court has "*. . . retain(ed) jurisdiction over any and all matters arising from the interpretation and implementation of this Order*" of September 29, 2016 with respect to amending Plaintiff's Complaint in order to dismiss with prejudice the City of Detroit, its officers in their official capacity from Collins' lawsuit with respect to financial exposure. It is unclear whether the Order also prohibits equitable relief to which Collins might be able to demonstrate entitlement.[2] (**Exhibit 1**, Order of Judge Friedman denying Collins' Motion for Reconsideration, ECF 42 PageID. 723, Page 1 of 4).

5. Further, in Judge Friedman's opinion suggested that in order for Collins to pursue this matter, he must obtain from the Bankruptcy Court an order to amend his complaint, dismissing claims against the individual Defendants' being sued in their official capacity, page 3 of Friedman's opinion. (**See Exhibit 2**, Collins' Amended Complaint deleting any reference to the City of Detroit and the Defendants' being sued in their official capacity).

6. That the delays have not prejudiced the City nor the Defendant, in their individual capacities, because the City has always defended itself and its employees.

---

[2] Though perhaps misguided, or misdirected to the District Court, have always been made in good faith and for relief that clearly sounds under settled federal law on the U.S. Constitution.

WHEREFORE, Movant requests leave *nunc pro tunc* to file his proposed amended complaint that clearly pleads claims against individuals and not against the City of Detroit or any of its officials or agents in any official capacity.

                                        BENJAMIN WHITFIELD, JR & ASSOCIATES, P.C.

                                        /s/ Benjamin Whitfield, Jr.
                                            Benjamin Whitfield, Jr. (P23562)
                                            613 Abbott Street
                                            Detroit, Michigan 48226
                                            (313) 961-1000
                                            benwlaw4822@aol.com

Dated:  December 21, 2018

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                          Bankruptcy Case No: 13-53846

City of Detroit, Michigan                       Judge Thomas J. Tucker

    Debtor                      Chapter 9

## MEORANDUM OF SUPPORT OF MOTION FOR RELIEF NUNC PRO TUNC

This Court has the authority to enter a *nunc pro tunc* order pursuant to 11 USC 105, Bankruptcy Procedure Rule 1007, and Bankruptcy Court's "inherent authority".

In the instant case, this Court has recognized that there might be more than the usual confusion or uncertainty regarding jurisdiction or procedure. To assure that justice would be done this Court retained jurisdiction. Its jurisdiction arises under 11 USC 105 and the court's inherent authority to control its own docket. Accordingly, *nunc pro tunc* relief is contemplated as a reasonable exercise of the court's discretion and jurisdiction. Also, the fact that undersigned counsel failed to comply with this Court's order as a result of inadvertence and not neglect there is no prejudice to either party in granting Collins' request that the Court reissue its order *nunc pro tunc*.

Moreover, a copy of the Amended Complaint reflects that the individual officers are being sued in their unofficial capacity which is incompliance with this court's order.

Respectfully Submitted,

Benjamin Whitfield, Jr. & Associates, P.C.

By: ___/s/ Benjamin Whitfield, Jr.___
    Benjamin Whitfield, Jr. (P23562)
    Attorney for Plaintiff

Dated: December 10, 2018

I, LaTausha Simmons, certify that on December 10, 2018,
I e-filed a copy of Plaintiff's Motion to the
attorney of record at their last known address.

*/s/LaTausha Simmons*
LaTausha Simmons

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME COLLINS,

     Plaintiff,

vs.

     Civil Action No. 15-CV-11756

     HON. BERNARD A. FRIEDMAN

CITY OF DETROIT, et al.,

     Defendants.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

     Plaintiff has filed a motion for reconsideration [docket entry 37] of the Court's May 18, 2018, order denying his motion for leave to file an amended complaint. The Court denied plaintiff's motion for leave to amend the complaint because the proposed amended complaint he sought to file (on this and on previous occasions) did not comply with a September 29, 2016, order of the Bankruptcy Court requiring plaintiff "[n]o later than October 5, 2016, . . . [to] dismiss, or cause to be dismissed, Case No 15-11756 . . . to the extent it seeks any relief against the City of Detroit . . . [or] against any current or former employee of the City of Detroit in his/her official capacity." In re City of Detroit, Case No. 13-53846 (docket entry 11597). On this, and on previous occasions, plaintiff failed to explain either why he did not comply with this order or why his failure to comply should be excused. In its May 18 order, the Court noted that "[w]hile the Court must permit amendments to pleadings 'when justice . . . requires,' Fed. R. Civ. P. 15(a), justice does not require the Court to permit an amendment that does not comply, in terms of timing or substance,[1]

---

[1] Substantively, the most recent version of plaintiff's proposed amended complaint (the "corrected amended" version attached as an exhibit to the instant motion for reconsideration) appears to comply with the Bankruptcy Court's order, at least in part, because it eliminates the City of Detroit and its police department as defendants, sues the individual defendants in their

with an order of the Bankruptcy Court."

The Bankruptcy Court issued its September 29, 2016, order on the city's motion "for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring the Dismissal with Prejudice of the Federal Court Action filed by Jerome Collins to the extent it Seeks Relief against the City of Detroit or property of the City of Detroit." Id. (docket entry 10182). The basis for this motion was that plaintiff, by commencing the instant lawsuit on May 15, 2015, did so after the bar date (February 21, 2014) set by the Bankruptcy Court for the filing of prepetition claims against the city. The Bankruptcy Court granted the city's motion and ordered as follows:

> 2. No later than October 5, 2016, Jerome Collins must dismiss, or cause to be dismissed, Case No 15-11756 filed with the United States District Court for the Eastern District of Michigan, Southern Division, and captioned Jerome Collins vs. City of Detroit, Detroit Police Department, Ralph Godbee, former Police Chief, Mattie Lewis, former Police Officer, and John Does, whose identities are presently unknown to the extent it seeks any relief against the City of Detroit or property of the City of Detroit, including to the extent it seeks any relief against any current or former employee of the City of Detroit in his/her official capacity.
>
> 3. The Court will retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

So far as the Court is aware, plaintiff did not challenge the Bankruptcy Court's order either by filing a motion for reconsideration in that court or by appealing to this Court. Nor did

---

individual capacities only, and deletes requests for injunctive relief against the city and its police department. Nonetheless, as defendants note in their response brief, any judgment against the individuals would in effect be a judgment against the city insofar as the city must, or decides to, indemnify defendants, all of whom appear to be current or former city employees. Therefore, it is possible that the proposed "corrected amended" complaint runs afoul of the Bankruptcy Court's order requiring plaintiff to dismiss his complaint "to the extent it seeks any relief against . . . property of the City of Detroit." This is an issue for the Bankruptcy Court to determine as a "matter[] arising from the interpretation . . . of" its September 29, 2016, order.

2

plaintiff comply with the order. Several months later, on April 14, 2017, plaintiff filed a motion with this Court "for an order of dismissal of complaint against defendants in their official capacities *non pro tunc* [sic]," which he ended with the following sentence: "Wherefore, Plaintiff would request the dismissal of the City of Detroit and above individuals in their official capacity as ordered by the bankruptcy court on September 29, 2016." The Court denied this motion because "[p]laintiff seeks to be excused from missing a filing deadline imposed by the Bankruptcy Court; plaintiff must apply to that court, not this Court, for any such relief." It does not appear that plaintiff ever filed a motion with the Bankruptcy Court seeking that court's permission to comply with its September 29, 2016, order long after the October 5, 2016, deadline for amending his complaint.

If plaintiff wishes to pursue this matter, he must obtain from the Bankruptcy Court an order permitting him to amend his complaint, which that court ordered him to do by October 5, 2016. As noted above, the Bankruptcy Court indicated in its September 29 order that it "will retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order." Plaintiff's continued efforts to amend his complaint after having missed the Bankruptcy Court's deadline fall within "the interpretation or implementation of this Order." Accordingly,

IT IS ORDERED that plaintiff's motion for reconsideration is denied.

Dated: July 19, 2018
Detroit, Michigan

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

3

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 19, 2018.

s/Johnetta M. Curry-Williams
Case Manager

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JEROME COLLINS,

      Plaintiff,

vs.

                              Case No: 2:15-CV-11756-BAF-EAS

RALPH GODBEE, former Police Chief, JAMES
CRAIG, Detroit Chief of Police MATTIE LEWIS, STEVEN
DOLUNT, JAMES MOORE, WHITNEY WALTON,
TODD SEVENKESEN, LT. PASTELLA WILLIAMS,
DEPUTY CHIEF RENEE HALL and SARGEANT
DETERIC LEVER, in their individual capacities
Jointly and Severally

           Defendants.

BENJAMIN WHITFIELD, JR. (P23562)
Benjamin Whitfield, Jr. & Associates, PC
Attorneys for Plaintiff
613 Abbott Street
Detroit, MI 48226
Phone: (313) 961-1000
Email: benwlaw123@aol.com

## AMENDED COMPLAINT AND JURY DEMAND

NOW COMES, Plaintiff Jerome Collins, by and through his attorneys, Whitfield and

Associates, PC, by Benjamin Whitfield, Jr., and for his Amended Complaint against the Ralph

Godbee, former Police Sergeant Mattie Lewis, Steven Dolunt, Whitney Walton, Todd

Sevenkesen, and Lt. Pastella Williams, Deputy Chief Renee Hall and Sergeant Deteric Lever,

Jointly and Severally, alleges as follows:

1.     This action is for damages brought against the above-named individual

defendants, in their individual capacities for damages, pursuant to *42 USC §§§ 1983, 1985 and*

1

*1998, Fourth, Sixth and Fourteenth Amendments to the United States Constitution* and under the statutory and common law of the State of Michigan.

## JURISDICTION AND VENUE

2.     Jurisdiction is founded upon 28 USC Section 1331, Section 1343 and upon the pendent jurisdiction of this Court to adjudicate claims under Michigan law.

3.     Venue is proper because all of the acts or omissions complained of herein occurred within this District.

## PARTIES

4.     That at all times pertinent hereto, Plaintiff Jerome Collins was a resident of this District.

5.     That at all times pertinent hereto, Defendant Ralph Godbee was, upon information and belief, an employee or agent, and served as either Assistant Chief or Chief of Defendant Detroit Police Department.

6.     Defendant Godbee is being sued for actions taken in his individual capacity, under Color of Law and within the scope of his employment as a Command Officer employed by the Detroit Police Department.

7.     That at all times pertinent hereto, Defendant Mattie Lewis was, upon information and belief, a resident of this District and was employed as a police officer holding the rank of Sergeant for the Defendant Detroit Police Department.

8.     That at all times relevant hereto, Defendant Lewis was acting in her individual capacity under Color of Law.

9.     That at all times pertinent hereto, Steven Dolunt, was a resident of this District and was acting in his individual capacity under color of law.

2

10.   That at all times pertinent hereto, James Moore, upon information and belief, was a resident of this District and was acting in his individual capacity under color of law.

11.   That at all times pertinent hereto, Whitney Walton, upon information and belief, was a resident of this District and was acting in his individual capacity under color of law.

12.   That at all times pertinent hereto, Todd Sevenkesen, upon information and belief, was acting in his individual capacity under color of law.

13.   That at all times pertinent hereto, Lt. Pastella Williams, upon information and belief, was acting in his individual capacity under color of law.

14.   That at all times pertinent hereto, Deputy Chief Renee Hall, upon information and belief, was acting in her individual capacity under color of law.

15.   That at all times pertinent hereto, Sergeant Deteric Lewis, upon information and belief, was acting in his individual capacity under color of law.

16.   That each of the above said Defendants, at all times relevant hereto, was acting in their individual capacities and under Color of Law within the scope of their employment as a police officer employed by the Detroit Police Department.

## COMMON ALLEGATIONS

17.   Plaintiff hereby incorporates and repeats Paragraphs 1-18, as though fully restated herein.

18.   That, on September 20, 1993, the Detroit Police Department hired Plaintiff as a police officer, and vested in him all the powers, duties, obligations and responsibilities attendant to or associated with the position of officers of the Detroit Police Department.

19.   That Plaintiff performed his assigned duties as well or better than others in the same position.

3

20.     That, prior to commencing said employment with Defendant, Plaintiff, among other things, coached and played semi-professional softball.  Plaintiff listed on his employment application, his coaching and athletic background.

21.     DPD officials, near the beginning of September 2004, assigned Plaintiff to the Ninth Precinct, where he worked in the Community Relations unit under the supervision of Commander Vivian Talbert.

22.     That, near mid-September 2004, Commander Talbert instructed Plaintiff that, as part of an on-going crime fighting initiative, his primary task in Community Relations was to develop after-school sports programs for youth, particularly adolescent males in the community.

23.     That Commander Talbert further directed Plaintiff that he was required to work each day from 2:00 PM to 10:00 PM, five days a week (M-F) to achieve his Community Relations goal of working with such adolescents after school because that time span was when the need was greatest.

24.     That, in early 2006, the Ninth Precinct was merged with the Fifth Precinct to form the Eastern District, where DPD assigned Plaintiff to work under the supervision of Defendant Mattie Lewis, a Sergeant, who headed the Community Relations Unit of the newly created district.

25.     That, following the merger, Sergeant Lewis ordered Plaintiff to continue to perform his community relations duties from 2:00 p.m. -10:00 p.m., even though DPD's official records and logs would continue to show that he was scheduled to work from 12:00 AM to 8:00 PM.

4

26.     That, consistent with the goals of the Community Relations detail, Plaintiff organized youths from the community into competitive football, bowling, baseball, and basketball teams and/or leagues.

27.     That, in furtherance of his community relations duties, Plaintiff organized regular after-school practice sessions that included teams from Detroit and surrounding municipalities.

28.     That, when he arrived at work each day, Plaintiff checked in with Defendant Lewis, who posted Plaintiff's weekly schedules in the Eastern District's Community Relations Office, and also provided copies of these schedules to Defendant Deputy Chief Godbee and the Eastern District's two Commanders, i.e., James Moore and Steven Dulunt.

29.     That Plaintiff continued on this 2:00 p.m. – 10:00 p.m., schedule, with the knowledge, support, and approval of Plaintiff's supervisory officers, until September 2008 when Plaintiff's estranged wife inquired as to Plaintiff's hours in a letter to DPD.

30.     That an anonymous letter sent to DPD in November 2009 raised similar inquiries.

31.     That DPD's Internal Affairs Unit investigated the September 2008 letter from Plaintiff's estranged wife, it and found that it lacked merit.

32.     That an Internal Affairs investigation of the November 2009 letter, however, found, based on hours he allegedly had not worked but for which he had been paid, that Plaintiff had committed larceny by false pretense, for an amount in excess of one hundred dollars ($100.00).

33.     In defense against the above IA findings:

   a.  Plaintiff repeatedly explained that he had not committed larceny, since his actual hours worked based on his activity logs were in excess of those DPD paid him for.

   b.  Plaintiff repeatedly explained that his supervisor had only approved his 2:00 PM-10:00 PM work schedule, but, in fact,

5

had ordered him to work those hours dating back to his original
assignment by Commander Talbert in 2004, and reiterated by
Sgt. Lewis in 2006 after the merger.

c.  Plaintiff advised Internal Affairs that Deputy Chief Godbee and
the two commanders, not only had full knowledge of his
schedule, but had approved it and had also attended Plaintiff's
teams sporting events.

d.  Plaintiff explained that it was improbable that a Community
Relations outreach initiative such as DPD sought could have
functioned within the time listed on the daily logs, given that
all sports programs serving young men generally lasted until
9:00 PM or 9:30 PM.

34.    That, in spite of Plaintiff's explanations, on or about January 10, 2010, DPD
issued a directive that:

a.  caused Plaintiff to be suspended from his position as a law
enforcement officer and his paychecks to be suspended;
b.  caused felony criminal charges to be initiated against him in
Wayne county,
c.  caused Plaintiff to lose certification as a law enforcement
officer, and, thus impaired or destroyed, his ability to find law
enforcement work elsewhere.

35.    That based upon the investigation performed by IA in response to an anonymous
letter, Plaintiff was charged by the Wayne County Prosecutor.

36.    That after his December 8, 2011, acquittal in the above criminal court jury trial,
Plaintiff filed a grievance to challenge the DPD's administrative action that suspended him
without pay. Said grievance was assigned case no. 10-005.

37.    That, on June 12, 2013, an arbitration hearing convened on Plaintiff's grievance
for back pay and reinstatement based on his acquittal of all charges in the criminal court
proceedings. The arbitrator was one Linda Ashford.

6

38.   That the automatic stay resulting from the City of Detroit's bankruptcy filing, caused the June 12, 2013 hearing to be adjourned without a decision, which remains presently unresolved.

39.   That, consistent with DPD's policy manuals, Plaintiff, made a March 15, 2012, request for all pertinent records, documents, and notes that related to his grievance; but, while Defendants provided certain records and documents, they secretly withheld Sergeant Lewis's July 6, 2010 Garrity.

40.   That Plaintiff did not learn of the existence of Sergeant Lewis's Garrity, until his July 6, 2013, trial board hearing, when Internal Affairs investigator Donald Svenkesen testified that DPD had taken Lewis's Garrity.

41.   That, in the face of Plaintiff's repeated requests for Lewis's Garrity, Defendants, intentionally and with reckless disregard for Plaintiff's due process rights, withheld this document and other exclusionary information, including initiative reports, showing his Community Relations activity being performed as scheduled.

42.   That, since Lewis's records provided the alleged basis for DPD's decision to bring criminal proceedings against Plaintiff, to discipline him and terminate his employment, her Garrity, which indicated her purposeful or inadvertent failure to keep accurate activity logs, would have undermined the stated basis for DPD's discharge decision.

43.   That after completion of the trial board hearing as to Grievance # 10-005 which resulted in Plaintiff's termination, the Detroit Police Officers' Association (DPOA) acted pursuant to the Collective Bargaining Agreement and appealed Plaintiff's termination to an arbitrator.

44.     That Plaintiff, in preparation for his arbitration hearing, once more requested Lewis's Garrity, but DPD continued wrongfully to withhold or conceal Lewis' Garrity in violation of Plaintiff's due process rights.

45.     Defendants intentionally failed, neglected or refused to provide Plaintiff with a copy of Sergeant Lewis's Garrity, both at the prosecutorial stage, at the disciplinary hearing, at the trial board stage and at the arbitration phase, even though it contained vital exculpatory information material to any defenses that Plaintiff might have established to DPD's baseless charges.

46.     That, Defendants' improper, and unlawful withholding or concealment of Lewis's Garrity which was necessary to Collins' defense was so prejudicial, so injurious and so wanton as to constitute a failure of Due Process, under the State and federal constitutions.

47.     That, because Lewis's Garrity contained directly exculpatory information, Defendants repeated and willful failure to produce it upon demand, not only materially and adversely impacted Plaintiff's litigation strategies, but also demonstrated a fraudulent intent to conceal its existence for the purpose of impeding or obstructing Collins' ability to defend himself.

48.     That Defendants also subjected Plaintiff to disparate treatment based on sex, as shown by the following facts:

   a.  As a result of the same investigation DPD initiated similar administrative charges against Plaintiff and Sergeant Mattie Lewis and Officer Kenyetta Borden, both African-American females.;
   b.  DPD suspended each female officer with pay;
   c.  At the trial board each female officer was given a lesser form of punishment than Plaintiff and, afterwards, returned to work.

49.    That due to Defendants' conduct, as set forth above, Plaintiff suffered the following injuries and damages:

    a.  Being wrongfully suspended from his job without pay, de-certified as a law enforcement officer, arrested and, thereafter, prosecuted;

    b.  Severe emotional distress from the period of his suspension to the present;

    c.  Physical manifestations of emotional distress, including, but not limited to, sleeplessness, irritability, loss of appetite, headaches and other symptoms;

    d.  Fright, shock, indignity, humiliation and embarrassment of being wrongfully charged, suspended, arrested and prosecuted.

    e.  Loss of enjoyment of daily activities;

    f.  Loss of employment opportunity;

    g.  Payment of or indebtedness for significant attorney fees;

    h.  Many of Plaintiff's injuries and damages are likely to be permanent

    i.  Other damages which may be revealed through discovery.

### COUNT I
### VIOLATION OF DUE PROCESS RIGHTS AND EQUAL PROTECTION UNDER *THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION & 42 U.S. C & 1983*

50.    Plaintiff hereby incorporates and repeats Paragraphs 1-49, as though stated in their entirety.

51.    Defendants acted under Color of Law and pursuant to statute, custom, usage, or practice, individually and in concert with one another, unlawfully, maliciously, and intentionally and with deliberate indifference and callous disregard of Plaintiff's established rights, deprived Plaintiff of his liberty and property interests without due process of law and denied Plaintiff equal protection of the law, in violation of the Fourteenth Amendment to the Constitution of the United States and in violation of 42 USC, Section 1983.

52.    The Section 1983 Defendants, i.e., Moore, Walton, Serta, Dolun, Lewis, and Williams are liable to Plaintiff for violating his Constitutional rights as follows:

9

a. The policies, procedures, and the statutes of the Detroit Police Rules and Policies embody property and liberty interests for the Plaintiff that are protected by the United States Constitution, which the §1983 Defendants violated, among other things, by withholding material evidence, and, which they, thereby, also deprived Plaintiff of his right to due process and liberty;

b. Plaintiff's good name and reputation, honor, and integrity, were connected with and inseparable from his employment status as a Detroit Police Officer, his certification from the police academy, and his ability to pursue his law enforcement career, and his income, and each constituted an enforceable liberty and property interest protected by the due process clause of the fourteenth amendment; the procedure employed or ignored by the §1983 Defendants deprived Plaintiff of his liberty and property interests and violated his right to due process and to liberty.

53.   Plaintiff had a substantive right to equal treatment without regard to gender, and the §1983 Defendants violated plaintiff's right to equal protection under the law;

54.   Plaintiff had a substantive right to equal protection, and the §1983 defendants, in their arbitrary and capricious actions, treated plaintiff differently than other persons who were similarly situated and deprived plaintiff of his right to equal protection under the law.

55.   The Defendants with exposure under *§1983*, acted in clear violation of established constitutional rights that a reasonable person would have known were applicable, and the *§1983* defendants were so obviously unlawful that only unknowledgeable persons, who knowingly violated the law, would have behaved towards plaintiff as they did. A competent public official would have recognized that plaintiff's rights were being violated.

56.   The Defendants with exposure under *section 1983* inflicted such measures upon plaintiff in a manner calculated to cause monetary damages, past, present and future, to inflict reputational damage, and to hinder and impede his promotional and earning potential, to inflict

10

grievous emotional suffering, including embarrassment, outrage, severe and grievous emotional anguish, pain, humiliation, anxiety and injury.

## COUNT II

### DUE PROCESS AND EQUAL PROTECTION VIOLATIONS UNDER *ARTICLE I, SECTIONS 2 AND 17 OF THE 1963 MICHIGAN CONSTITUTION* AS TO DEFENDANTS GODBEE, LEWIS, DOLUNT, MOORE, WALTON, SEVENKESEN, AND WILLIAMS

57.     Plaintiff hereby incorporates and repeats Paragraphs 1-56, as though stated in their entirety.

58.     Defendants Godbee, Lewis, Dolunt, Moore, Walton, Sevenkesen, and Williams, acted under color of law and pursuant to statute, custom, usage or practice, individually and in concert with one another, when they unlawfully, maliciously, and intentionally, and with deliberate indifference and callous disregard of Plaintiff's rights, deprived Plaintiff of his liberty and property interests without due process of law and denied Plaintiff equal protection under the law, in violation of Article 1, Section 2 and 17 of the Michigan Constitutions by denying him fair and just treatment in the investigation conducted by DPD and the Defendants which resulted in his wrongful termination.

59.     The aforementioned defendants, (to the extent that any other Constitutional remedies are deemed unavailable) are liable to Plaintiff for violating his constitutional rights under the *Michigan Constitution of 1963*, consistent with and provided in the allegation set forth herein.

60.     These acts, as well as others, were in violation of defendants' affirmative duties to secure Plaintiff's constitutionally protected rights.

## COUNT III
### SEX DISCRIMINATION UNDER *42 USC §1983* AS TO ALL DEFENDANTS

11

61.  Plaintiff hereby incorporates and repeats Paragraphs 1-60, as though stated in their entirety.

62.  Plaintiff has a constitutionally protected right to fair and equal treatment regardless of his gender. This right is protected by the Equal Protection Clause of the Fourteenth Amendment.

63.  Defendants, without conducting the required investigation, discriminatorily determined that unlawful discrepancies existed between Plaintiff's daily activity logs and his official schedule.

64.  Further, Defendants, without conducting the required investigation, or conducting one that was biased, or relied upon perjured testimony, or Brady type concealment of exculpatory evidence discriminatorily revoked Plaintiff's law enforcement certification as a police officer and repeatedly refused his request for re-certification to Plaintiff's ongoing harm.

65.  These acts, as well as others, were in violation of Defendants' affirmative duties to secure Plaintiff's constitutionally protected rights.

66.  Defendants and their agents, acting under color of state law and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutionally protected rights.

67.  As a direct and proximate result of Defendants' policies, practices, customs, failure to train or improperly-provided training, Plaintiff was deprived of his constitutionally protected rights, suffered damages, including, but not limited to, loss earnings, mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of reputation coupled with his wrongful termination.

## COUNT IV
## GROSS NEGLIGENCE AS TO ALL DEFENDANTS

68.     Plaintiff hereby incorporates and repeats Paragraphs 1-67, as though stated in their entirety.

69.     Defendants, at all times relevant or material hereto, were under a duty to act reasonably so as to avoid causing injury with respect to Plaintiff's constitutional rights.

70.     Defendants breached their duties, at each stage of the disciplinary proceedings, including arbitration, by their refusal after being requested to provide to Plaintiff or his attorneys copies of all documents, records, notes and memoranda that were pertinent to the disciplinary charges against him, the denial of which severely impaired his ability to defend himself.

71.     Defendants' conduct breached that duty by deliberately concealing and failing to disclose the above-captioned material and exculpatory evidence.

72.     Defendants' conduct constituted gross negligence and is an exception to the defense of governmental immunity.

73.     Defendants' breaches were the direct and proximate cause of Plaintiff's damages.

## COUNT V
## TORTIOUS INTERFERENCE WITH THE COLLECTIVE BARGAINING AGREEMENT AS TO ALL INDIVIDUAL DEFENDANTS

74.     Plaintiff hereby incorporates and repeats Paragraphs 1-73, as though stated in their entirety.

75.     Plaintiff, at all times material hereto, was a member of the Detroit Police Officers Association ("DPOA"), which was the exclusive bargaining agent for non-supervisory Detroit Police Officers.

76.     Defendants Godbee, Lewis, Dolunt, Moore, Walton, Sevenkesen, and Defendants, Hall and Lever, acted with intentional and willful malice and bad faith, with deliberate indifference for the consequences of their actions, and outside the scope of any legitimate

13

governmental function, and in complete failure to follow DPD's policies and procedures, when they unjustly instigated DPD's breach of its contract with Plaintiff, based on allegations that they knew or should have known to be false and pursued on investigatory/hearing procedures they knew to be *partisan and inadequate under settled precedent or constitutional standards* when they caused DPD to terminate Plaintiff.

77.   As a direct and proximate result of the actions of Godbee, Lewis, Dolunt, Moore, Walton, Sevenkesen, Stair Williams, Hall and Lever, Defendants. Plaintiff suffered monetary damages, impairment of his professional reputation, severe and grievous emotional suffering, embarrassment and outrage.

## COUNT VI
## VIOLATIONS OF ELLIOTT-LARSEN CIVIL RIGHTS
## LAWS – SEXUAL DISCRIMINATION

78.   Plaintiff hereby incorporates and repeats Paragraphs 1-77, as though stated in their entirety.

79.   Plaintiff is an "employee" within the meaning of the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws Ann. Section 37.2201, et. seq. (the "Act").

80.   Plaintiff, an African-American male, is a member of a protected class.

81.   Defendants, on July 6, 2013, wrongly terminated Plaintiff from his 19 years and 9 months employment as a law enforcement officer.  Plaintiff had earned numerous awards, honor or citations over the course of his distinguished career.

82.   Defendants, treated similarly situated female employees, i.e., Police Officers Lewis and Bordee, differently by according them lesser punishments for similar infractions and failing to provide Plaintiff due process rights.

83.   Prior to his July 6, 2013 termination, Plaintiff was a certified law enforcement officer, who performed the duties as well or better than other similarly situated employees.

## COUNT VII
## FRAUDULENT OMISSION OR SILENT FRAUD

84.   Plaintiff hereby incorporates and repeats Paragraphs 1-83 as though stated in their entirety.

85.   That while the employment contract between Plaintiff and Defendants Detroit Police Department and DPD was in force, said Defendants obtained material information i.e., Sgt Lewis' Garrity, from its employees or agents that it had a continuing duty under Michigan law to act in good faith, and disclose to Plaintiff if suppression would render previously conveyed representations, untrue or misleading. *Lawyers Title Ins v First Federal Sav Bank, U.S. Fidelity & Guaranty v Black, 412 Mich 99, 116, 313 N.W.2d 77 (1981); 744 F. Supp 778, 787 (ED Mich 1990)*

86.   Defendants breached their duty by suppressing Sgt. Lewis Garrity's which contained sworn testimony that was directly exculpatory as to Plaintiff.

## COUNT VIII
## INTENTIONAL INFLICTION OF MENTAL AND
## EMOTIONAL DISTRESS AS TO ALL DEFENDANTS

87.   Plaintiff hereby incorporates and repeats Paragraphs 1-88, as though stated in their entirety.

88.   Defendants, and each of them, acted in an extreme and outrageous manner when acting under color of state law, they haphazardly and without adequate investigation, imposed on Plaintiff a series of disciplinary measures that culminated in his wrongful discharge.

89.   That Defendants, thereby, intentionally, to or recklessly, inflicted severe emotional distress upon Plaintiff by terminating him from his position.

90. That Defendants' actions caused Plaintiff severe emotional distress.

91. As a direct and proximate result of Defendants' actions, Plaintiff suffered injury and damages, including, but not limited to, loss of earnings, mental anguish, physical and emotional distress, humiliation, embarrassment, needless notoriety in the media, and an irreparable loss of reputation.

## COUNT XI

### MALICIOUS CRIMINAL PROSECUTION

92. Plaintiff hereby incorporates and repeats Paragraphs 1-91, as though stated in their entirety.

93. The named Defendant were actively instrumental in causing Plaintiff to be prosecuted, or in causing the prosecution to be continued wrongfully by withholding exculpatory evidence, such as Sgt. Lewis' Garrity Transcript. Or, by convincing witnesses to testify falsely by offering them various incentives.

94. The criminal action ended in Wayne County Circuit Court in Plaintiff's favor.

95. That no reasonable persons in Defendants' circumstances would have believed that there were grounds for causing Plaintiff to be arrested or prosecuted.

96. That the Defendants acted primarily for a purpose other than to bring the Plaintiff to justice.

97. That Plaintiff was harmed, by way of example, and not limitation, by being suspended without pay and ultimately terminated after nearly 20 years on the force. And not reinstated after he was acquitted by a jury while other officers accused of fa more egregious offenses have been reinstated immediately after being acquitted

16

98.    The Defendants conduct was a substantial factor in causing Plaintiff's harm by attempting to frame him through knowingly false testimony, or suborned perjury of witnesses.

99.    The malicious actions of the Defendants caused Plaintiff to suffer injury, damage, loss or harm that is compensable under *42 UC § 1983.*

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendants, for the following relief:

1.  Legal Relief:

    a.  a judgment for lost wages, including back-pay and front-pay, in whatever amount he is found to be entitled;
    b.  compensatory damages in whatever amount he is found to be entitled;
    c.  punitive and exemplary damages commensurate with the wrong and Defendants' ability to pay;
    d.  an award of interest, costs and reasonable attorney fees.

2.  Equitable Relief

    a.  an award of interest, costs, and reasonable attorney fees;

    b.  Any other equitable relief that appears appropriate at the time of trial.

3.  Damages for Mental and Emotional Distress

    a.  an award for Plaintiff's emotional injury and suffering, his shock, fright, outrage, humiliation, un-justified publicity;

    b.  an award for punitive and exemplary damages, attorney fees, costs and interest, as may be allowed under law;

    c.  such other relief as the court may find equitable and just.

17

Respectfully Submitted,

Benjamin Whitfield, Jr. & Associates, P.C

By: ___/s/ Benjamin Whitfield, Jr.___
      Benjamin Whitfield, Jr. (P23562)
      Attorney for Plaintiff
      613 Abbott St
      Detroit, MI 48226
      Phone: (313) 961-1000
      Email: benwlaw123@aol.com

Dated:   March 9, 2018