## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

### CITY OF DETROIT'S *EX PARTE* MOTION FOR AN ORDER SHORTENING NOTICE AND SCHEDULING AN EXPEDITED HEARING ON THE CITY OF DETROIT'S AND THE DETROIT POLICE AND FIRE PENSION BOARD'S JOINT MOTION FOR THE ENTRY OF AN ORDER ENFORCING CONFIRMATION ORDER AGAINST DANIEL J. SALKOWSKI, JEFFREY HAMM, AND RICHARD MAKULSKI

The City of Detroit ("City") moves for the entry of an *ex parte* order pursuant to Rules 9006(c)(1) and 9007 of the Federal Rules of Bankruptcy Procedures and Rule 9006-1(b) of the Local Rules of the United States Bankruptcy Court for the Eastern District of Michigan (a) shortening the notice period with respect to the *Joint Motion of the City of Detroit and the Police and Fire Retirement System of the City of Detroit, Michigan for the Entry of an Order Enforcing the Plan of Adjustment and Confirmation Order Against Daniel J. Salkowski, Jeffrey Hamm, and Richard Makulski* ("Motion," Doc. No. 13090) and (b) scheduling a hearing on the Motion on or before August 15, 2019. In support of this *Ex Parte* Motion, the City respectfully states as follows:

1. On July 25, 2019, Daniel J. Salkowski, Jeffrey Hamm, and Richard Makulski (collectively, the "Plaintiffs") commenced a state court action against the

34136851.5\022765-00213

City that is barred by the City's confirmed plan of adjustment. In their state court action, the Plaintiffs completely ignore the heavily-negotiated and binding pension settlement codified in the plan - a settlement that was "[t]he final component of the Grand Bargain" and "border[ed] on the miraculous." Supplemental Opinion Regarding Plan Confirmation, Approving Settlements, and Approving Exit Financing (the "Confirmation Opinion," Doc. No. 8993), pp. 35-36 (citations omitted).

2.      Plaintiffs and their counsel have known about the matter at issue here for many months – if not years. But, without notice to the City or any of the other defendants in the state court action, and in disregard of the due process protections in the Michigan Court Rules that govern such actions, the Plaintiffs, alleging "emergency," improperly sought and obtained an *ex parte* temporary restraining order ("TRO").[1] The TRO compelled the City and the PFRS to violate the terms of the confirmed plan of adjustment and the pension settlement embodied therein because it requires the City to employ Plaintiffs beyond the date on which the confirmed Plan and pension settlement mandate that they retire. There is a hearing scheduled in the state court on the TRO on August 15, 2019 at 9:30 a.m. The City

---

[1] A copy of the TRO and other relevant documents filed in the state court are attached to the Motion as exhibits.

34136851.5\022765-00213

respectfully requests that this Court hold a hearing on the Motion on or before August 15.

3.      This Court has the authority to grant an expedited hearing on the Motion pursuant to Bankruptcy Rule 9006(c)(1), which provides that "when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced."  Fed. R. Bankr. P. 9006(c)(1).  Local Rule 9006-1(b) further provides that "a party may file a motion for an *ex parte* order reducing or enlarging the time for a party to take any action or file any paper."  E.D. Mich. LBR 9006-1(b).

4.      In addition, pursuant to Bankruptcy Rule 9007, "[w]hen notice is to be given under the [Bankruptcy Rules], the court shall designate, if not otherwise specified herein, the time within which, the entities to whom, and the form and manner in which the notice shall be given."  Fed. R. Bankr. P. 9007.

5.      These rules provide the Court with the authority to enter an *ex parte* order scheduling a hearing on shortened notice and approving the manner of notice of the hearing.

6.      As emphasized in the attached Affidavit of Robert Distelrath, Chief of Fire Operations for the City of Detroit's Fire Department, the TRO is causing the City harm.  *See* Declaration of Robert Distelraff, Exhibit 5-A.  Based on the

Plaintiffs' impending retirement, the City Fire Department planned to promote other fire fighters in the department. Those promotions are now on hold. *Id.* The TRO harms the members scheduled to be promoted as to salary, average final calculations for retirement and deferred retirement option plan ("DROP") options. *Id.* This TRO also harms the department by disrupting the deployment of manpower, and lowering the morale within the department. *Id.*

7. Further, as set forth in the declaration of Kelly Tapper, the Assistant Executive Director of the PFRS ("PFRS Declaration"), the TRO is causing or will cause the following additional harms to the City:

    (a) By restraining the City from completing Plaintiffs' retirement process, the TRO forces the City to violate its Plan. *See* Plan, Art. II.B.3.q.ii (discussing Class 10 – PFRS Pension Claims) *and* Plan, attachment I.A.254.a (*Combined Plan for the Police and Fire Retirement System of the City of Detroit, Michigan*), Art. 12, Section 12.1 (Doc. No. 8045-1, p. 502 of 809) (limiting DROP participation to five years).

    (b) This Plan violation is a default under the DIA settlement agreement which must be reported to the DIA settlement "Funders" and which, in principle, threatens continued funding of the DIA settlement. *See* Plan, attachment I.A.126 (*Principal Terms of DIA Settlement*), Conditions to Future Funding Obligations (Doc. No. 8045-1, p. 71 of 809).

    (c) Allowing Plaintiffs to postpone retirement also violates the Memorandum of Understanding between the City and the Detroit Fire Fighters Association. *See* Exhibit A to PFRS Declaration, p. 3, DROP ACCOUNTS ("No more than 5 years of DROP participation for employees not already in DROP as of June 30, 2014.")

- 4 -

(d)     The TRO encourages other members affected by the five-year DROP limitation to seek similar, if still improper, relief.

(e)     IRS regulations mean that the TRO, if upheld, would have tax implications for the retirement system, including a possible adverse qualification determination which would affect all members of the system.

Exhibit 5-B.

8.     Because of the speed with which this matter is moving in the State Court and the ongoing harm from the improper TRO, the City respectfully requests that its motion to enforce be heard on or before August 15, 2019, with any responses filed by the Plaintiffs to be due 48 hours prior to the hearing.

WHEREFORE, the City respectfully requests that the Court enter an order, in substantially the same form as the one attached as Exhibit 1, granting the relief requested in this *Ex Parte* Motion and granting such further relief as the Court deems appropriate.

34136851.5\022765-00213

Dated: August 9, 2019

Respectfully submitted,

By: /s/ Marc N. Swanson
    Jonathan S. Green (P33140)
    Marc N. Swanson (P71149)
    MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    green@millercanfield.com
    swansonm@millercanfield.com

    Charles N. Raimi (P29746)
    Deputy Corporation Counsel
    City of Detroit Law Department
    2 Woodward Avenue, Suite 500
    Coleman A. Young Municipal Center
    Detroit, Michigan  48226
    Telephone: (313) 237-5037
    Facsimile: (313) 224-5505
    raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

- and –

By: /s/  Jennifer K. Green

    Jennifer K. Green (P69019)
    Ronald A. King (45088)
    Shannon L. Deeby (P60242)
    Clark Hill PLC
    151 S. Old Woodward Ave., Suite 200
    Birmingham, MI  48009
    (248) 988-2315
    jgreen@clarkhill.com

Attorneys for Police and Fire Retirement System
for the City of Detroit

34136851.5\022765-00213

## SUMMARY OF ATTACHMENTS

The following documents are attached to this Motion, labeled in accordance with Local Rule 9014-1(b).


Exhibit 1    Proposed Form of Order

Exhibit 2    None [Motion Seeks Ex Parte Relief]

Exhibit 3    None [Brief Not Required]

Exhibit 4    Certificate of Service

Exhibit 5A  Affidavit of Robert Distelrath

Exhibit 5B  PFRS Declaration

Exhibit 6    None

# **EXHIBIT 1**

Proposed Order

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## ORDER GRANTING CITY OF DETROIT'S
## *EX PARTE* MOTION FOR AN ORDER SHORTENING NOTICE AND SCHEDULING AN EXPEDITED HEARING ON THE JOINT MOTION OF THE CITY OF DETROIT AND THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, MICHIGAN FOR THE ENTRY OF AN ORDER ENFORCING THE PLAN OF ADJUSTMENT AND CONFIRMATION ORDER AGAINST DANIEL J. SALKOWSKI, JEFFREY HAMM, AND RICHARD MAKULSKI

This case is before the Court on the *City of Detroit's* Ex Parte *Motion for an Order Shortening Notice and Scheduling an Expedited Hearing on the Joint Motion of the City of Detroit and the Police and Fire Retirement System of the City of Detroit, Michigan for the Entry of an Order Enforcing the Plan of Adjustment and Confirmation Order Against Daniel J. Salkowski, Jeffrey Hamm, and Richard Makulski* (Docket # 13090). The Court, having reviewed the *Ex Parte* Motion and having found that notice of the *Ex Parte* Motion was sufficient under the circumstances; having determined after due deliberation that the relief requested in the *Ex Parte* Motion is in the best interests of the Debtor and its creditors; having determined that good and sufficient cause has been shown;

1. The *Ex Parte* Motion (Docket # [_____]) is GRANTED.

2. The Court will hold an expedited hearing on [**] on the *Joint Motion of the City of Detroit and the Police and Fire Retirement System of the City of Detroit, Michigan for the Entry of an Order Enforcing the Plan of Adjustment and Confirmation Order Against Daniel J. Salkowski, Jeffrey Hamm, and Richard Makulski* (Docket # 13090, the "<u>Motion</u>").

3. Responses to the Motion must be filed ***no later than [**]***.

4. The terms and conditions of this Order will be immediately effective and enforceable upon its entry.

5. The City must serve a copy of this Order on the Motion respondents ***no later than today, August [**], 2019, at 5:00 p.m. EDT***, and must file proof of such service no later than August [**], 2019, at 5:00 p.m. EDT. Such service must be by both overnight mail and by a method that will cause the receipt by respondents of the served documents today by 5:00 p.m., such as hand-delivery, fax, or e-mail.

# **EXHIBIT 2**

Not Applicable

# **EXHIBIT 3**

Not Applicable

## EXHIBIT 4 – CERTIFICATE OF SERVICE

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 9, 2019, he served a copy of the foregoing *City of Detroit's* Ex Parte *Motion for an Order Shortening Notice and Scheduling an Expedited Hearing on Joint Motion of the City of Detroit and the Police and Fire Retirement System of the City of Detroit, Michigan for the Entry of an Order Enforcing the Plan of Adjustment and Confirmation Order Against Daniel J. Salkowski, Jeffrey Hamm, and Richard Makulski* upon the person listed below, via electronic mail and first class mail.

Elizabeth A. Ferguson
Law Offices of Elizabeth A. Ferguson, PLLC
Attorney for Plaintiffs
55 Southbound Gratiot
Mount Clemens, MI 48043
lizferguson@lawofficeseaferguson.com

Dated:  August 9, 2019

By: /s/ Marc N. Swanson
Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

## **EXHIBIT 5-A**

Affidavit of Robert Distelrath

34136851.5\022765-00213

DANIEL J. SALKOWSKI
JEFFRREY HAMM
RICHARD MAKULSKI

Case No. 2019-009993-CL
Hon. John A. Murphy

      **Plaintiffs**

V

CITY OF DETROIT,
DETROIT POLICE & FIRE PENSION BOARD
DETROIT FIRE FIGHTERS ASSOCIATION, LOCAL 344

      Defendants

ELIZABETH A. FERGUSON (P53645)
Law Ofcs of Elizabeth A Ferguson, PLLC
Attorney for Plaintiffs
55 S Gratiot
Mount Clemens, MI 48043
586-206-0157
lizferguson@lawofficeseaferfuson.com

LETITIA C. JONES (P52136)
City of Detroit Law Department
2 Woodward, #500
Detroit, MI 48226
(313) 237-3002
jonelc@detroitmi.gov

### AFFIDAVIT – ROBERT DISTELRATH

I, Robert Distelrath, being first duly sworn, hereby state the following in the above captioned matter:

1) I am employed with the City of Detroit in the Fire Department as the Chief of Fire Operations.

2) Plaintiffs elected the option of retiring under the DROP program, which provides for retirement in five years.

3) Letters were sent to the Plaintiffs giving notice of the retirement dates.

4) Based on Plaintiff's expected retirements, the department issued promotions to other members of the department.

5) The recent TRO filed by Plaintiffs prevents the implementation of the promotions that have been in the works causing irreparable harm to the promoted members and the Department;

6) The TRO harms the members scheduled to be promoted as to salary, average final calculations for retirement, and DROP options.

7) The TRO harms the department by disrupting the deployment of manpower, and lowering the morale within the department,

8) The TRO affects the negotiated contract by causing uncertainty of the DROP process moving forward and causes further litigation on an issue negotiated by the City and the Union.

9) If called to testify on this matter, I can competently testify to the facts as stated in this affidavit.

Date: August 5, 2019

By: _____

**Robert Distelrath**, *Affiant*

*Subscribed and sworn before me*
*On* __5th__ *day of August, 2019*

_____
Myria Ross, Notary Public
Wayne County, MI
My Commission expires __9-3-2024__

MYRIA ROSS
Notary Public, State of Michigan
County of Wayne
My Commission Expires Sep. 03, 2024
Acting in the County of Wayne

# **EXHIBIT 5-B**

PFRS Declaration

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## DECLARATION OF KELLY TAPPER IN SUPPORT OF THE CITY OF DETROIT'S AND THE DETROIT POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT'S JOINT MOTION FOR THE ENTRY OF AN ORDER ENFORCING CONFIRMATION ORDER AGAINST DANIEL J. SALKOWSKI, JEFFREY HAMM, AND RICHARD MAKULSKI

I, Kelly Tapper, submit this declaration in support of the *Joint Motion of the City of Detroit and the Police and Fire Retirement System of the City of Detroit for the Entry of an Order Enforcing the Plan of Adjustment and Confirmation Order Against Daniel J. Salkowski, Jeffrey Hamm, and Richard Makulski* ("Motion").

1.     I am the Assistant Executive Director of the Police and Fire Retirement System of the City of Detroit, Michigan ("PFRS").

2.     Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge or are based upon information provided to me by PFRS employees or its legal counsel.  If I am called to testify, I can and will testify to the facts set forth in this declaration.

3.     I have reviewed the *Temporary Restraining Order and Order to Show Cause* ("TRO") entered by Honorable John A. Murphy, Judge in the Third Circuit

Court for Wayne County, Michigan, in Case Number 2019-009993-CL ("State Court Case") on August 1, 2019. I have also reviewed the complaint in the State Court Case.

4.       I understand the TRO as enjoining the City and PFRS from completing the retirement process for the Plaintiffs in the State Court Case.

5.       I also understand that the Plaintiffs were required to retire on August 7 or 8, 2019 ("Effective Date").

6.       On October 22, 2014, the City filed its *Eighth Amended Plan of the Adjustment of Debts of the City of Detroit* ("Plan"), which this Court confirmed on November 12, 2014.  [Doc. Nos. 8045 & 8272].

7.       The Plan provides for a new plan for the pension system, which is called the Combined Plan for the Police and Fire Retirement System of the City of Detroit, Michigan (Amendment and Restatement Effective July 1, 2014) ("Plan Document").  The Plan Document was attached to the Plan as an exhibit.  Plan, pp. 38-39; Exhibits I.A.254.a, Exhibit I.A.281.

8.       The PFRS, among other things, administers the Plan in conformance with the Plan Document.

9.       The Plan Document has two components: Component I of the Plan Document applies to benefits accrued by members of the PFRS on or after July 1, 2014, and to the operation of the PFRS on or after July 1, 2014 (i.e., to active

- 2 -

employees). The Plan identifies Component I as the "New PFRS Active Pension Plan." *See* Exhibit I.A.254.a to the Plan, Doc. No. 8045-1, page 448, 456 of 809.

10. Under the Plan, the New PFRS Active Pension Plan governs pension benefits for service on or after July 1, 2014:

> Each Holder of a PFRS Pension Claim who is an Active Employee shall receive, in addition to his or her PFRS Adjusted Pension Amount, as such amount may be modified herein, such additional pension benefit for service on or after July 1, 2014 consistent with the terms and conditions of the New PFRS Active Pension Plan Formula and the New PFRS Active Pension Plan.

Plan, Article II.B.q.E, p. 39.

11. Component II of the Plan Document generally applies to benefits accrued by members of the PFRS prior to July 1, 2014. The Plan identifies Component II as the "Prior PFRS Pension Plan." *See* Exhibit I.A.281, Doc. No. 8045-1, page 590, 599 of 809.

12. The final version of the Plan Document (i.e. the New PFRS Active Pension Plan and the Prior PFRS Pension Plan) was attached as Exhibit E to Emergency Manager Order 44.

13. The New PFRS Active Pension Plan provides a retirement benefit referred to as the "Deferred Retirement Option Program" ("DROP").

14. Based on my review of the records of the PFRS, the earliest date on which any of the Plaintiffs attained 20 years of service was August 8 or August 9,

2014, making it the first date that any of the Plaintiffs were eligible to retire and thus begin participation in DROP.

15.     The New PFRS Active Pension Plan limits DROP participation to a maximum of five years.  PFRS Plan, ¶ 12.1(2).

16.     Each plaintiff executed a DROP application in advance of attaining 20 years of service which set the DROP effective date on the date each attained 20 years of service.

17.     In each case, the effective date occurred after July 1, 2014.

18.     The DROP applications clearly state that the election to DROP is irrevocable, a requirement consistent with IRS regulations.

19.     PFRS cannot legally permit any plan participant with a DROP effective date after July 1, 2014 to remain in DROP more than five years.

20.     Compliance with the TRO after the Effective Date will cause PFRS to violate New PFRS Active Pension Plan, which includes the DROP terms.  *Id.*

21.     The City's compliance with the TRO after the Effective Date will thus cause the PFRS to violate the Confirmation Order.

22.     Under the Plan, PFRS is required to certify to the City Treasurer and to the Foundation for Detroit's Future that it is in compliance with the Plan and Plan Documents as a condition of receipt of continued "Grand Bargain" funding.

34151423.4\022765-00213

23.     Violation of the Plan Documents will constitute a default under the operative documents and require reporting and remedial measures.

24.     Compliance with the TRO after the Effective Date will also violate provisions of the *Memorandum of Understanding between the City and the Detroit Fire Fighters Association*, a true copy of which is attached as Exhibit A, exposing PFRS to liability to other Detroit Fire Fighters Association members.

25.     PFRS is aware of other potentially impacted members who will likely seek a similar remedy if the Plaintiffs are allowed to postpone retirement beyond the five years provided by the DROP program in the New PFRS Active Pension Plan.

26.     IRS regulations require that if a mistake was made for one participant of the DROP program, (*i.e.*, by processing a DROP application incorrectly as the Plaintiffs allege in their Complaint), PFRS will have to correct the mistake by taking all impacted members (in addition to the Plaintiffs) out of DROP, even participants who entered DROP knowing full well that there was a five-year limitation.

27.     Compliance with the IRS regulations discussed above would also subject the New PFRS Active Pension Plan to a possible adverse qualification determination which would affect all members of the New PFRS Active Pension Plan.

28.     The accounting and crediting and debiting of various DROP and New PFRS Active Pension Plan accounts to comply with the TRO will be an extraordinary administrative undertaking which may have negative unintended consequences on other New PFRS Active Pension Plan members participating in DROP other than the Plaintiffs.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

By: _____
Kelly Tapper

Executed on August 8, 2019

34151423.4\022765-00213

# EXHIBIT 1

## Memorandum of Understanding between the City
## and the Detroit Fire Fighters Association

# MEMORANDUM OF UNDERSTANDING
## REGARDING THE POLICE AND FIRE RETIREMENT SYSTEM
### BETWEEN
### THE CITY OF DETROIT
### AND
### THE DETROIT FIRE FIGHTERS ASSOCIATION

This Memorandum of Understanding is made and entered into this _6_ day of November, 2014, by and between the City of Detroit ("City") and the Detroit Fire Fighters Association ("DFFA" or the "Association").

WHEREAS, on July 18, 2013, the City filed for protection under Chapter 9 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1550; and

WHEREAS, on December 5, 2013, the U.S. Bankruptcy Court for the Eastern District of Michigan ("Bankruptcy Court") ruled that the City is eligible to be a debtor under Chapter 9 of the U.S. Bankruptcy Code; and

WHEREAS, the City's duty to bargain with the Association over changes to terms and conditions of employment has been suspended pursuant to Public Act 436, MCL § 141.1541 *et seq.*; and

WHEREAS, on August 16, 2013 the Bankruptcy Court ordered the City and the Association to participate in Court-supervised mediation regarding the terms of a successor collective bargaining agreement, including retirement benefits for current employees; and

WHEREAS, the City and the Association agree that it is in the best interests of the City and its employees for the City to provide fiscally responsible but high quality retirement benefits to its future retirees; and

WHEREAS, in connection with the mediation, the City and the Association have discussed ways to address the unfunded liabilities of the Police and Fire Retirement System ("PFRS") and to reach an agreement to provide sustainable retirement benefits to future retirees of the City; and

WHEREAS, benefit accruals under the PFRS ceased effective June 30, 2014, pursuant to Ordinance No. 12-14; and

WHEREAS, effective July 1, 2014, employees represented by certain City unions, including the DFFA, became eligible to participate in the Combined Plan for the Police and Fire Retirement System of the City of Detroit, Michigan (the "Combined Plan"), which consists of provisions relating to benefits accrued by members under PFRS prior to July 1, 2014 ("Old PFRS") and provisions relating to benefits accrued by members under PFRS on and after July 1, 2014 ("New PFRS"); and

1

WHEREAS, this Memorandum of Understanding supplements any collective bargaining agreements entered into between the City and the Association and/or any Act 312 Arbitration Award pertaining to the Association and the City until the expiration of this Memorandum of Understanding;

NOW, THEREFORE, it is agreed that the City and the Association have entered into this Memorandum of Understanding, and any proposals or counter-proposals made during related discussions by either the City or the Association, but not included in this Memorandum of Understanding, are hereby withdrawn. The City and the Association further agree as follows:

A.    The Police and Fire Retirement System.  During the term of this Memorandum of Understanding, pension benefits for eligible employees represented by the DFFA shall be in accordance with this Memorandum of Understanding, as follows:

1.    City Contribution.  The City shall contribute to New PFRS, on an annual basis, an amount equal to twelve and one-quarter percent (12.25%) of each eligible employee's base compensation.   A portion of such contribution will be credited to a rate stabilization fund.

2.    Employee Contribution.  Eligible employees hired by the City on or before June 30, 2014 shall make pre-tax contributions equal to six percent (6%) of their base compensation to New PFRS (pre-risk shifting).  Eligible employees hired or rehired by the City on and after July 1, 2014 shall make pre-tax contributions equal to eight percent (8%) of their base compensation to New PFRS (pre-risk shifting).

3.    Plan Terms.  Except as set forth herein, the following key terms relating to New PFRS shall apply to benefits accrued by eligible employees on and after July 1, 2014 and prior to January 1, 2024:

| BENEFIT FORMULA | Final Average Compensation (average base compensation over last 5 consecutive years of employment) x Years of Service earned after June 30, 2014 x 2.0%.  Average base compensation does not include overtime, unused sick leave, longevity payments, or any other form of bonus or additional compensation – just the employee's base salary. |
|---|---|
|  | Actual time for benefit accrual is actual time served. For vesting service, an eligible employee must work 1,000 hours in a 12-month period to accrue a year of service. |

2

| | |
|---|---|
| **NORMAL RETIREMENT AGE** | Age 50 with 25 years of service, with the following 7 year transition period for New PFRS benefits only:<br><br>Fiscal Year           Age and Service<br>2015                   Age 43 and 20 years<br>2016                   Age 43 and 20 years<br>2017                   Age 44 and 21 years<br>2018                   Age 45 and 22 years<br>2019                   Age 46 and 23 years<br>2020                   Age 47 and 24 years<br>2021 and thereafter    Age 50 and 25 years<br><br>Unreduced frozen Old PFRS benefits are payable in accordance with the requirements of PFRS as in effect on June 30, 2014 (that is, when an employee reaches 20 or 25 years of credited service, whichever applied to the employee as of June 30, 2014 under Old PFRS). |
| | 10 Years of Service for vesting. |
| | Deferred vested pension -- 10 years of service and age 55. |
| | Duty Disability - consistent with Old PFRS. |
| | Non-Duty Disability – consistent with Old PFRS. |
| | Non-Duty Death Benefit for Surviving Spouse – consistent with Old PFRS. |
| | Duty Death Benefit for Surviving Spouse – consistent with Old PFRS. |
| **COLA** | 1% compounded, variable. |
| **DROP ACCOUNTS** | Available for frozen Old PFRS benefits and future accrued benefits under New PFRS for employees who are eligible to retire under concurrent eligibility requirements. No more than 5 years of DROP participation for employees not already in DROP as of June 30, 2014. DROP accounts will be managed by PFRS instead of ING, if administratively and legally feasible. If managed by PFRS, interest will be credited to DROP accounts at a rate equal to 75% of the actual net investment return of PFRS, but in no event lower than 0% or higher than 7.75%. |
| **ANNUITY SAVINGS** | Voluntary Annuity Savings Fund contributions up to 10% of after-tax pay. Interest will be credited at the actual net investment rate of return for PFRS, but will in no event be lower than 0% or higher than 5.25%. No in-service withdrawals permitted. |
| | Investment Return/Discount rate – 6.75%. |

3

| | |
|---|---|
| **RISK SHIFTING** | If the funding level is less than 90% (using the fair market value of assets), COLAs will be eliminated (to the extent applicable).<br><br>If the funding level is 90% or lower (using the fair market value of assets and a 3-year look back period), the following corrective actions will be taken in the order listed below, until the PFRS actuaries can state that by virtue of the use of corrective action, and a 6.75% discount rate and return assumption, the funding level is projected to be 100% on a market value basis within the next 5 years:<br><br>  1. eliminate COLAs (if applicable);<br>  2. use amounts credited to the rate stabilization fund to fund accrued benefits;<br>  3. increase employee contributions by 1% per year (6% to 7% for current actives and 8% to 9% for new employees in year 1) for up to 5 years;<br>  4. increase employee contributions (active and new employees) by an additional 1% per year;<br>  5. increase employee contributions (active and new employees) by an additional 1% per year;<br>  6. implement a 1 year COLA fallback;<br>  7. implement a second 1 year COLA fallback;<br>  8. increase employee contributions by an additional 1% per year; and<br>  9. increase City contributions consistent with applicable actuarial principles and PERSIA. |

a) In accordance with the 2014-2019 collective bargaining agreement between the City and the DFFA ("CBA"), the ten percent (10%) cap on annual contributions to the Annuity Savings Account will not apply to payments of accrued sick leave into an Annuity Savings Account made pursuant to Article 24, Section I.8.c of the CBA.

b) Employees in the DFFA bargaining unit will have the option to participate in a one-time irrevocable "roll-in election" with respect to calculation of their frozen accrued benefits under Old PFRS. The purpose of this roll-in election is to give each eligible employee the option to allocate a portion of his or her unused sick pay bank to the employee's Average Final Compensation, which in turn will be used to determine the employee's frozen accrued benefits under Old PFRS as of June 30, 2014. If the employee elects to roll-in a portion of his or her unused sick pay, the employee's Average Final Compensation will include the portion of the employee's sick pay bank determined as of June 30, 2014 that would have been included in the member's Average Final Compensation in accordance with the terms of Old PFRS, as though the employee had retired on June 30, 2014 with 20 or 25 years of service (whichever applied to the employee as of June 30, 2014 under Old PFRS). In the event an employee terminates employment with the City prior to attaining 20 or 25

4

years of service (whichever applied to the employee as of June 30, 2014 under Old PFRS), the employee's roll-in election will be nullified. If an employee makes a roll-in election, the employee's unused sick leave bank will be reduced by the number of hours included in the employee's Average Final Compensation calculation and the employee may not use those hours for sick leave or receive the value in cash when the employee retires. The form for making a roll-in election will be available to employees on-line, and paper copies of the form will also be made available. An eligible employee wishing to roll-in a portion of his or her unused sick pay must sign the form in the presence of a witness and return the form to the PFRS office no later than November 15, 2014. The one-time roll-in election will have no impact on benefits accrued under New PFRS.

c)     For avoidance of doubt, 'eligible to retire under concurrent eligibility requirements' of the Combined Plan means that an Association member with accrued benefits under Old PFRS may retire upon attaining 20 or 25 years of service (whichever requirement applied to the employee as of June 30, 2014 under Old PFRS), regardless of age. This member would immediately receive a frozen pension under Old PFRS. If the member does not meet the age and years of service requirements of the New PFRS, he or she will begin receiving an additional payment (actuarially reduced to reflect early commencement) based on his or her accrued benefit under New PFRS when he or she turns 55. He or she can begin receiving an unreduced normal retirement benefit under New PFRS when he/she reaches age 62.

The age 50 and 25 years of service requirements of New PFRS apply only to New PFRS and are subject to the 7 year transition period set forth above. The transition applies to New PFRS benefits as set forth below:

1.     Under the transition, after July 1, 2014, an Association member who reaches 20 years of service and age 43 on or before June 30, 2015 can retire anytime after reaching 20 years of service and age 43, and he or she will immediately receive an unreduced accrued New PFRS benefit.

2.     Beginning on July 1, 2015, an Association member who reaches 20 years of service and age 43 on or before June 30, 2016 can retire anytime after reaching 20 years of service and age 43, and he or she will immediately receive an unreduced accrued New PFRS benefit.

3.     After June 30, 2020, an Association member must be at least 50 years old with 25 years of service to retire and immediately receive his or her unreduced accrued New PFRS benefit.

5

An Association member who does not meet these New PFRS requirements will not begin receiving his or her unreduced accrued New PFRS benefit until the Association member reaches age 62 and has been credited with 10 years of service. An Association member with 10 years of service may elect to retire at age 55 with an actuarially reduced benefit.

d) Section 1.4 (Board of Trustees – Membership; Appointment) of the New PFRS and Article III, Section 2 of the Old PFRS (Membership of Board) shall not be modified during the term of the CBA.

e) The City will remit to the New PFRS all contributions withheld from employees' pay checks.

The City shall promptly transfer these employees' contributions to the new PFRS, but in no event shall such City transfers be made later than the 15th day of the month following the month of the pay dates when the employees' contributions are withheld by the City (hereinafter "Contribution Due Date"). (By way of illustration and example only, the City must transfer to the New PFRS by no later than February 15 all of the employees' contributions withheld on the pay dates of the immediately preceding January.)

If the City does not transfer the employees' withheld contributions to the New PFRS by the Contribution Due Date, these contributions shall be deemed delinquent contributions (hereinafter "Delinquent Contributions"). The City shall be liable to the New PFRS in the amount of the Delinquent Contributions and any Lost Earnings ("Lost Earnings") on the Delinquent Contributions, which would have been earned on the employees' contributions, had the City timely made the transfer of these employees' contributions.

Notwithstanding the above, the City shall be liable for Lost Earnings in an amount not less than the applicable corporate underpayment rate(s), effective during the delinquency, established under Section 6621(a)(2) of the Internal Revenue Code.

B. Reservation of Rights by City. This Memorandum of Understanding shall in no way be construed to interfere with, or add additional requirements with respect to, the City's rights to modify the terms of any pension plan document currently in effect, or that may be in effect during the term of this Memorandum of Understanding, including but not limited to the Combined Plan; provided, however, that the City shall not modify the terms of the applicable pension plan(s), in any manner that conflicts with those terms set forth in Section A above, unless the City is ordered to do so by the Bankruptcy Court in the plan of adjustment dated August 20, 2014 (as it may be amended, modified or supplemented, "Plan of Adjustment") in the case *In re: City of Detroit*, Case No. 13-53846 or as set forth in Section D below.

6

C.     Compliance with Plan of Adjustment.  The terms of this Memorandum of Understanding are subject to confirmation of the Plan of Adjustment and may be modified therein to achieve confirmation of the Plan of Adjustment.  Any proposed modification to the Plan of Adjustment is subject to the rights of the DFFA to object to same.  During the term of this Memorandum of Understanding, the City shall not make any modifications to the terms of the Combined Plan that are contrary to the terms of the Plan of Adjustment as confirmed by the Bankruptcy Court.

D.     Compliance with Public Act 183.  Notwithstanding any provision of this Memorandum of Understanding that can be construed to the contrary, this Memorandum of Understanding will not be construed to require the City to fall out of compliance with the requirements of Public Act 183, House Bill 5568 ("PA 183").  In the event that the City determines that it has fallen out of compliance with, or is reasonably likely to fall out of compliance with PA 183, the City will provide written notice to the Association, and offer to meet and confer with the Association for a period not longer than thirty (30) days to discuss potential modifications to the terms of the Memorandum of Understanding in order to comply with the requirements of PA 183.  To the extent that the City and the Association are unable to reach an agreement within thirty (30) days, the City may make any necessary modifications to ensure compliance with PA 183.

E.     Duration.  This Memorandum of Understanding will become effective upon approval by the Mayor of the City of Detroit and the Treasurer of the State of Michigan and shall remain in effect until December 31, 2023.  The City and the Association hereby agree to waive any and all collective bargaining rights with respect to pension benefits, including but not limited to benefits provided under, and any other issues relating to, the Combined Plan (the "Waived Issues") from the date that this Memorandum of Understanding is executed through December 31, 2023.  The parties acknowledge that they are enjoined from collective bargaining regarding the Waived Issues through June 30, 2023 and further agree to waive any right to raise any of the Waived Issues in any Act 312 arbitration proceeding.  The City and the Association agree that they may engage in collective bargaining regarding the Waived Issues beginning June 30, 2023, but that no modifications may be made with respect to any Waived Issue until after December 31, 2023.

F.     Grievance and Arbitration:  Any dispute pertaining to the provision of benefits pursuant to this Memorandum of Understanding shall be subject to the grievance and arbitration procedures set forth in Articles 8 and 9 of the CBA or any comparable provision set forth in a successor collective bargaining agreement entered into between the City and the DFFA.

G.     In resolving any dispute pertaining to provision of benefits pursuant to this Memorandum of Understanding, the Arbitrator shall be bound by the terms of this Memorandum of Understanding, the Combined Plan, and the Plan of Adjustment, and shall have no authority to issue any award or order that is contrary to the terms of these documents.

7

IN WITNESS WHEREOF, the parties hereto have affixed their signatures below:

Dated this _6_ day of November 2014.

DETROIT FIRE FIGHTERS ASSOCIATION:   CITY OF DETROIT:

_____
Jeffrey Pegg, President

_____
Teresa Singleton, Vice President

_____
Martin McClung, Secretary

_____
Robert Shinske, Treasurer

_____
Michael E. Duggan, Mayor

_____
Michael A. Hall, Director of Labor Relations

_____
Edsel Jenkins, Executive Fire Commissioner

_____
Office of the State Treasurer, Michigan

_____
Kevyn Orr, Emergency Manager

8

# **EXHIBIT 6**

Not Applicable