# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN,

           Debtor.

_____/

Case No. 13-53846

Hon. Thomas J. Tucker

Chapter 9

## RESPONDENTS' RESPONSE AND OBJECTIONS TO JOINT MOTION OF THE CITY OF DETROIT AND THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, MICHIGAN FOR THE ENTRY OF AN ORDER ENFORCING THE PLAN OF ADJUSTMENT AND CONFIRMATION ORDER AGAINST DANIEL J. SALKOWSKI, JEFFREY HAMM, AND RICHARD MAKULSKI

The City of Detroit and the Police and Fire Retirement System of the City of Detroit have filed a motion to enforce the Plan of Adjustment and Confirmation Order against three Detroit Firefighters who sought equitable relief from the DROP program because they were misled about the terms of the program and their applications were processed at a time that the program had been suspended. In support of this Objection, Respondents respectfully state as follows:

**I.  Introduction**

1.  On July 25, 2019, Daniel J. Salkowski, Jeffery Hamm, and Richard Makulski (collectively referred to as Plaintiffs) filed an action in the Wayne County Circuit Court seeking equitable relief from the Detroit Firefighters DROP program because they were repeatedly misled by the Defendants regarding their retirement options, and without their knowledge, were put into a retirement program that was different than what they had signed up for.

1

The collective bargaining agreement between the City of Detroit and the Detroit Fire Fighters Association provides for a DROP retirement program.  When fire fighters are reaching eligibility for retirement, they are allowed to submit an application indicating they intend to retire at a future date.  At the time the Plaintiffs submitted their application paperwork to start the process of selecting terms under the DROP program, the program was unlimited, which meant they could continue working as Detroit Fire Fighters without having a specific deadline to retire. The Emergency Manager for the City of Detroit made a decision to suspend the DROP program effective July 1, 2014.  The suspension of the DROP program was not common knowledge among the Detroit Firefighters, so Plaintiffs were not aware that the program was being suspended.  The City of Detroit Human Resources Department did not notify the Plaintiffs when they submitted their initial application that the program was suspended or that the terms of the DROP program were being changed.  After submitting their DROP applications for the unlimited DROP program, Plaintiffs were repeatedly assured they were in the unlimited DROP program. They did not find out that they were placed in a five-year DROP program until after the Detroit Police and Fire Retirement System (DPFRS) approved their retirement applications, four months after the applications had been initially filed.  This approval took place the same day that the City and the Detroit Fire Fighters Association Local 344 (DFFA) ratified a new collective bargaining agreement.  At that point in time, Plaintiffs still had not been told that their applications were accepted while the DROP program was suspending or that the DROP program was changed from unlimited to five years.  The Movants' Joint Motion states that the Plaintiffs "completely ignore" the heavily negotiated settlement that went into the Plan of Adjustment.  This is a mischaracterization.  Plaintiffs were aware of the Plan, but were also aware that both the DFFA representing the Plaintiffs and the DPFRS were discussing the issues raised by the Plaintiffs and

2

a second set of Firefighters (not a party to this action or the action Plaintiffs filed in Wayne County Circuit Court) to discuss their issues and whether or not any action could be taken to resolve these problems. Discussions had been ongoing, with the DFFA expressing concerns to the local members that the DPFRS had made errors regarding how Plaintiffs' applications had been handled and processed. See attached exhibit 1. The DPFRS held a vote regarding one firefighter's concerns about how his application had been processed, and in a 7-7 vote, the motion to resolve that firefighter's concerns failed. At no time during these discussions did either the DFFA or the DPFRS notify the Plaintiffs or other firefighters that the Plan of Adjustment prohibited any discussion or resolution of the DROP issues.

2.  It is accurate that Plaintiffs and counsel were aware of the issues with the DROP program. Plaintiffs had been attempting to resolve the issue but had been unable to get any relief or clear confirmation that nothing could or would be done. Counsel had previously been working with another firefighter who had similar issues to the Plaintiffs, but who withdrew from the lawsuit just prior to it being filed in Wayne County Circuit Court. While working with that individual, counsel had contact with attorneys for both the DFFA and the DPFRS. Counsel had emailed Chris Legghio, attorney for the DFFA, on October 18, 2018, about the issues. See attached exhibit 2. Counsel and Mr. Leggio later spoke by telephone during discussions earlier in 2019. At that time Mr. Legghio's expressed concern that the Plaintiffs had not yet received notice they were being retired, so the issue did not yet appear ripe for action. Counsel also contacted the DPFRS by letter on March 8, 2016 and again on April 19, 2016. Counsel did not receive a response from Ron King, attorney for the DPFRS, until October 24, 2017. See attached exhibit 3. That response did not address the issues raised in the original letters. Both Mr.

3

Legghio and Mr. King were aware that a lawsuit was a possibility, and Mr. King had previously informed counsel by phone that he would accept service on the lawsuit.

It is accurate that Plaintiffs requested a ex parte temporary restraining order from the Wayne County Circuit Court when the lawsuit was filed. The Plaintiffs were facing imminent loss of their positions and the ex parte request was made to ensure Plaintiffs would not be terminated while the case was being litigated. The Court granted that request and a hearing was scheduled to discuss the ex parte TRO and whether it should become an injunction. The City's statement that it contacted counsel to request that the case be voluntarily dismissed, and that counsel ignored that request is disingenuous. The City sent an email to counsel on Thursday, August 8, 2019, and then served the motion on August 9, 2019. Counsel was in court and had not had an opportunity to review the email and reply before the motion was filed and served.

## II.   Jurisdiction

3.   Plaintiffs do not contest the jurisdiction of this Court to hear the City's Motion or Plaintiff's Objections. Counsel had an opportunity to discuss the issues further with counsel for the DFFA and the DPFRS at the hearing in Wayne County Circuit Court and at the hearing regarding the ex parte TRO, acknowledged that the information provided by the DPFRS during discussions prior to the hearing makes this Court a more appropriate forum to address these issues.

## III.   Factual Background

### A. The Plaintiff's State Court Lawsuit

4.   Plaintiffs admit the statements in paragraph 4 of the Motion.

5.   Plaintiffs admit the statements in paragraph 5 of the Motion

6.   Plaintiffs admit the statements in paragraph 6 of the Motion.

7. Plaintiffs admit the statements in paragraph 7 of the Motion.

8. Plaintiffs admit the statements in paragraph 8 of the Motion but clarifies that the final acceptance of the applications occurred when the DPFRS voted to approve their applications on November 6, 2014. Prior to that date the applications were pending.

9. Plaintiffs admit the statements in paragraph 9 of the Motion and clarifies that a union official informed one of the Plaintiffs that the DROP plan was changing but said he could not provide further information because of a gag order in the Bankruptcy Court.

10. Plaintiffs admit that they received an informational bulletin from the DFFA in August 2015 informing them that the DROP rules had changed and points out this information was received nine months after the DPFRS gave final approval to their applications.

11. Plaintiffs admit the statements in paragraph 11 of the Motion.

12. Plaintiffs admit the statements in paragraph 12 of the Motion.

13. Plaintiffs admit the statement in paragraph 13 of the Motion but would like to point out that the paperwork Plaintiffs submitted did not indicate that the DROP plan they were signing up for was limited to five years. Plaintiffs further state that they were repeatedly told during the process that they were signing up for an unlimited DROP program. See exhibit 4, Plaintiffs affidavits, which were provided as part of the Wayne County Circuit Court case.

14. Plaintiffs deny that the Michigan Court Rules were violated. Plaintiffs admit that an ex parte request for a temporary restraining order was made based on the fact that the Plaintiffs were facing imminent loss of their jobs, wages, and benefits, and that providing notice of a hearing date would be problematic because of the timing. Plaintiffs admit the timeline included in the Motion. Plaintiffs further point out that the Wayne County

Circuit Court, had the court believed that Plaintiffs had not met the burden under the Michigan Court Rule or felt the order needed to be amended, could have chosen to deny the ex parte request and scheduled the matter for a hearing. The Wayne County Circuit Court did ask that the order be revised once prior to signing it, for purposes of adding the date of the hearing.

15. Plaintiffs admit that they were aware of the impending retirement dates and the timing of filing the complaint and request for an ex parte temporary restraining order. Plaintiffs point out that there had been ongoing discussions about their issues with the DPFRS and the DFFA, and throughout the entire process they were led to believe that the DPFRS and DFFA were working on ways to address the issues of the Plaintiffs. When it became painfully obvious that the Plaintiffs were not going to get any relief in time to prevent the retirement, a decision was made to file the complaint and request for the ex parte TRO.

**B. The City's Disclosure Statement and Bankruptcy Plan**

16. Plaintiff admits the statements in paragraph 16 of the Motion.
17. Plaintiffs do not have specific information on when the Fourth Amended Disclosure Plan was filed but have no information to indicate that the statements in paragraph 17 are incorrect.
18. Plaintiffs admit they later found out the DROP plan was suspended but did not have the specific information stated in paragraph 18 of the Motion, nor were they aware that their participation in DROP would be limited to five years. While going through the application process they were repeatedly told they had applied for and were in the unlimited DROP.

19. Plaintiffs deny they were aware they would be in a new DROP program that was limited to five years. Plaintiffs were repeatedly told they had applied for and were in the unlimited DROP.

20. Plaintiffs acknowledge that the City and DPFRS claim that the Plaintiffs were served with the papers identified in paragraph 20, but deny they received them. Plaintiffs further state that during the discussions between the Plaintiffs, the DFFA, and the DPFRS, which took place after the alleged date of service between Plaintiffs, at no point did anyone state that Plaintiffs were or should have been aware of the change because they were served notice of the change as part of the bankruptcy process. In addition, Plaintiffs, after the date they were allegedly served this notice, had conversations with staff in the City's Human Resources department. Those staff members confirmed with the Plaintiffs that they were in the unlimited DROP program.

21. Plaintiffs do not have specific information on this Court's entry of an order approving the Disclosure Statement but has no information to indicate that the statements in paragraph 21 are incorrect.

22. Plaintiffs do not have specific information on the filing of the Eighth Amended Plan of Adjustment but has no information to indicate that the statements in paragraph 22 are incorrect. Plaintiffs note that the confirmation date was after the effective date of the new collective bargaining agreement between the City of Detroit and the DFFA, and the date the DPFRS voted to accept the Plaintiffs' DROP applications.

23. Plaintiffs acknowledge that the City and DPFRS claim that the Plaintiffs were served with the papers identified in paragraph 23, but deny they received them. Plaintiffs note that the service of the documents was after effective date of the new collective bargaining

7

agreement between the City of Detroit and the DFFA, and the date the DPFRS voted to accept the Plaintiffs' DROP applications.

**C. The PFRS Settlement and the New PFRS Active Pension Plan**

24. Plaintiffs do not have specific information on Class 10 of the Plan but have no information to indicate that the statements in paragraph 24 are incorrect.

25. Plaintiffs admit there is a new plan as stated in paragraph 25 but deny that they should be considered members of the new plan. Plaintiffs were repeatedly told they had applied and were being processed in the unlimited DROP program. The Movants appear to be ignoring that Plaintiffs brought up the DROP issue when they found out they were being placed in the five year DROP, and that the DFFA and the DPFRS were both reviewing and discussing the issues as it appeared that the Plaintiffs had not been given proper information and were being pushed into the new plan without having been informed the plan had been changed.

26. Plaintiffs admit the new PFRS Active Pension Plan, Component I exists but denies that they knew or should have known this was the plan for which they applied.

27. Plaintiffs admit that the Plan includes this language but denies that they knew or should have known about the Plan applying to them, based on repeated statements made to them that they were signing up for the unlimited DROP.

28. Plaintiffs admit the new PFRS Active Pension Plan, Component II exists but denies that they knew or should have known this was the plan for which they applied.

29. Plaintiffs do not have specific information on how the final version of the Plan Document was processed or attached to the Emergency Manager Order but have no information to indicate that the statements in paragraph 28 are incorrect.
8

13-53846-tjt    Doc 13103    Filed 08/23/19    Entered 08/23/19 11:35:42    Page 8 of 17

30. Plaintiffs admit the statements made in paragraph 30 of the Motion but deny that this should apply to them due to the repeated statements that they were in the unlimited DROP.

**D. The Plan and the PFRS Settlement**

31. Plaintiffs have no information to indicate that the statements made in paragraph 31 are incorrect but points out that while the language discusses where funding comes from and that the Court found the settlement fair and reasonable, this language does not address the specific issues of the Plaintiffs. Plaintiffs are not challenging whether the changes to the pension plan as a whole are unfair or unreasonable. Plaintiffs are arguing that the application of the new plan to their specific cases is unfair and unreasonable because the Plaintiffs were not informed that the old plan was suspended or frozen, and when they filed their applications, they were not notified that the plan was changing. As the Movants have already pointed out in their Motion, the Plan was not confirmed by the court until after the Plaintiffs' applications had become irrevocable. Prior to their applications becoming irrevocable, they had been repeatedly told that they were filing for the unlimited DROP. Plaintiffs are not seeking to undo all of the hard work that went into the bankruptcy plan. Plaintiffs are asking the Court to recognize that the Plaintiffs were repeatedly misled and misinformed as to what they were applying for, and to recognize that after they found out, it was acknowledged by both the DFFA and the DPFRS that there were issues for these specific Plaintiffs and one other person who is not a party to this case. Plaintiffs are seeking relief limited only to their specific situations.

### E. The Injunction and Exculpation Provisions in the Plan

32. Plaintiffs were not notified that trying to resolve their concerns with the DFFA or the DPFRS was prohibited by an injunction, and neither the DFFA or the DPFRS claimed that the injunction would prevent them from discussing or attempting to resolve these concerns. In fact, the DFFA specifically asked union members to provide information on their concerns if they believed they had been adversely affected by the implementation of the new retirement plan. See attached exhibit 5. The DPFRS made a motion and took a vote on whether a member's claim, similar to the claims of the Plaintiffs, should be corrected by the DPFRS. See attached exhibit 6. While that motion failed on a 7-7 vote, at no point did either the DFFA or the DPFRS tell anyone that any action of any kind, directly or indirectly, was prohibited. The DFFA and the DPFRS first made the argument that they would be violating the injunction by discussing a resolution at the hearing in Wayne County Circuit Court. A lawsuit had been discussed in prior conversations, and again, no mention that discussing the lawsuit or filing it would be an issue with the injunction. Plaintiffs are not seeking to disrupt the Plan; Plaintiffs are trying to get equitable relief to resolve the issues created when they were misled and misinformed about the DROP program. It appears the Movants and the DFFA continued to mislead the Plaintiffs by discussing the Plaintiffs situations with them and discussing potential options to resolve the situation, but then relying on an injunction that allegedly prohibits those kinds of discussions or potential resolutions from taking place, and using that injunction against the Plaintiffs.

33. The Plaintiffs are seeking equitable relief only, in an attempt to address the fact that the Plaintiffs were misled and misinformed as to what their status was and the DROP plan

they would be placed in. There has been no attempt to seek any damages from the Movants or the DFFA. Plaintiffs are simply trying to resolve a problem that has been under discussion with no headway; at no point prior to the filing of the lawsuit had the Movants or DFFA attempted to rely on the Plan of Adjustment or any injunction provisions to inform the Plaintiffs that this matter cannot be reviewed or resolved. Instead, they sympathized with the Plaintiffs, discussed what was going on, discussed what options may or may not be available, and basically dragged things on until the Plaintiffs had no other choice but to give up or seek assistance through the court system.

34. Plaintiffs have no information to indicate that the statement in paragraph 34 are incorrect.

**F. Harm to the City and the PFRS Caused by the TRO and the Lawsuit**

35. Plaintiffs dispute this paragraph. The Movants addressed the ex parte TRO by placing Plaintiffs on a paid administrative leave. The ex parte TRO was dissolved by the Wayne County Circuit Court when the case was dismissed for lack of jurisdiction, with the Court stating on the record that this matter is related to the bankruptcy and that it would be better addressed in response to Movants' Motion, of which the Wayne County Circuit Court was aware. Plaintiffs dispute that their actions have caused a lowering of the morale within the department. Plaintiffs' own morale was harmed by Movants' and DFFA's recognition of the situation, ineffective addressing of those issues, and the misleading behavior that led the Plaintiffs to believe the matters were legitimately being discussed and resolutions explored, contrary to the Movants' and DFFA's current position that they are not allowed to discuss or resolve anything because of the injunction. In addition, Plaintiffs are not the only group with issues related to the DROP program. There is another group, albeit with a much weaker claim, that has also raised

11

concerns about how firefighters were notified of changes to the DROP provision. It appears that there is plenty of blame to go around regarding morale issues, if anyone chooses to lay blame.

36. Plaintiffs leave the Movants to their proofs on the issue of additional harm and whether it violates the plan. At this point the ex parte TRO has been dissolved, the Plaintiffs are no longer on administrative leave and there has been no information provided to indicate Movants have taken any action at all to report this issue under any settlement agreement or settlement "Funders."

37. Plaintiffs dispute paragraph 37. While Plaintiffs recognized that the Movants would file whatever pleadings they deemed appropriate, had the Movants been honest with the Plaintiffs in the time period leading up to the filing of the original suit in Wayne County Circuit Court, the lawsuit may never have been filed. The Movants waited until the lawsuit was filed to bring up their concerns about the injunction and the prohibitions on the Movants and/or the DFFA discussing the Plaintiffs' issues about the DROP program. Instead, the DPFRS and the DFFA repeatedly discussed the issues, sought input from the DFFA membership who had been negatively affected by the changes to the DROP program, and even went to a vote on one member's request to be relieved from the DROP program because of the lack of information about changes to the program, apparently in violation of the injunction in the Plan of Adjustment. Had the DPFRS and the DFFA been honest that they had no authority to make any changes or correct any errors made and that it would be in violation of the injunction if they tried, this situation may have been avoided.

## IV. Argument

38. The Plaintiffs do not seek to destroy the "miraculous" plan created in the bankruptcy. Plaintiffs are simply seeking equitable relief because they were not notified when they applied that the DROP program was closed and were repeatedly told that they were in the unlimited DROP program during the filing and processing of their DROP application materials.

39. Plaintiffs request approval of the court to discuss a potential resolution of this matter. Plaintiffs are not seeking an unlimited DROP, but instead are seeking terms more in line with what they expected when they filed their paperwork. When the Plaintiffs filed, they were planning to work longer than five years, and had they known that the unlimited DROP they were applying for would only be five years, they would have refrained from filing their paperwork. As the Movants stated in their motion, firefighters could file their paperwork to coincide with reaching 20 years of service. The DROP election dates that they selected coincided with their 20 years of service dates and were the earliest dates the Plaintiffs could have selected. These were not the last dates they could have selected, and had they known that they would be forced to retire five years later, they could have made the informed decision to delay filing their applications until closer to the dates they actually intended to retire. Instead, Plaintiffs were misled about the program they were in and did not find out differently until it was too late.

40. Plaintiff recognizes Movants' argument about the plan benefits, but again states that this was not the plan the Plaintiffs were signing up for and was not the plan they were told they would be in when they submitted their paperwork and while the paperwork was being processed.

41. Plaintiff recognizes Movants' argument about the plan benefits, but again states that this was not the plan the Plaintiffs were signing up for and was not the plan they were told they would be in when they submitted their paperwork and while the paperwork was being processed.

42. Plaintiffs admit the timing of the filing of their applications, but again disputes that they had the appropriate information to know what they were signing up for when the papers were submitted. During the discussions involving the Plaintiffs and other DFFA members, they were made aware other members of their class attempted to submit their DROP applications and were either refused the ability to submit, were told that the applications were being returned, or were required to confirm that they knew the DROP program was only five years. None of those actions were taken regarding the Plaintiffs. Instead, they were repeatedly led to believe that they would be in the unlimited DROP.

43. The Movants again rely on their statements that the Plaintiffs knew or should have known that the five year DROP would apply to them, and appears to be stating that the statements made to Plaintiffs that they were signing up for the unlimited DROP program could not be misleading because paperwork had been sent to them previously as part of the bankruptcy case. As previously stated, none of the Plaintiffs are aware of or familiar with the paperwork the Movants stated was sent to them, but they are all aware of the conversations they had with the City's HR department as well as the conversations they had with the DFFA and the DPFRS. At no time did the DFFA or the DPFRS take any steps to notify Plaintiffs after they started complaining about the misrepresentations that they were bound by the terms of the Plan of Adjustment and that the Plan prevented the DFFA or the DPFRS from attempting to resolve these issues. The Movants appear to be

14

asking this Court to ignore everything said to the Plaintiffs when they filed for the DROP program and after those applications were approved, and done by the DFFA and the DPFRS after the Plaintiffs and other firefighters started to complain, in favor of copies of paperwork that was sent out before Plaintiffs filed their applications.

44. Compensatory damages, including attorney fees and costs, should not be assessed in this matter. Plaintiffs were misled not just on the terms of the DROP program, but were further misled, apparently in violation of the discharge injunction Movants seek to hold against Plaintiffs, when the DPFRS and the DFFA repeatedly discussed the issues and potential resolutions with the Plaintiffs and other firefighters. The DPFRS entertained a motion on the issue of another firefighter under similar circumstances, but the vote failed 7-7. If the DPFRS honestly believed that Plaintiffs attempts to address their issues was a violation of the injunction, it likely would not have taken the issue to a vote. It is unclear what the DPFRS would have done had the vote been 8-6 and the motion passed, as it appears passing that motion also would have been a violation of the injunction. It would be unfair to allow the Movants to repeatedly violate the injunction but then hold the Plaintiffs to the injunction, especially when the Plaintiffs were not aware of it and had no way to know it applied in this situation, based on the actions and statements of the DPFRS and the DFFA.

45. As Movants' state in the Motion, it must be shown by clear and convincing evidence that the creditor had knowledge of a definite and specific order but still violated it. In this case, Plaintiffs did not have knowledge of a definite and specific order. Plaintiffs did not have notice that there was an injunction that prohibited Plaintiffs from seeking redress for the misleading and misrepresentations related to their applications for the DROP

15

program. Both the DPFRS and the DFFA repeatedly talked to and worked with the Plaintiffs prior to filing the suit, exploring and discussing resolutions to this matter. At no time was it made clear that taking any action to try to resolve this would be a violation of a definite and specific order, specifically the injunction. In fact, both the DPFRS and the DFFA took actions to try to resolve things, with the DPFRS holding a vote on one member's concern. While that vote failed on a 7-7 tie, it is reasonable to believe that that none of the members of that Board believed that the injunction applied to them or their actions. At least 7 of those members believed that they could and should take action to relieve that specific member from the DROP election because of the problems. The DFFA likewise spent time exploring and investigating the issue, as well as discussing possible resolutions, but again did not appear to believe that the injunction applied to them or prohibited them from exploring options to resolve the situation. It would be unfair to hold Plaintiffs to a standard of knowingly violating a definite and specific order when the parties who now claim to be protected by that order knowingly engaged in behavior that they apparently did not think violated that definite and specific order.
46. Plaintiffs were aware of the Confirmation Plan, but as previously stated, had no specific knowledge that seeking to resolve these issues would violate any injunction issued by the Court. At no point prior to the Movants filing this motion did the injunction come up, and it appears clear that the DPFRS and DFFA, who ostensibly should be much more aware of the injunction than anyone else as they claim to be governed by it, repeatedly took actions that appear to be in violation of the injunction.

### V. Conclusion

47. Plaintiffs respectfully request that this Court recognize that the Plaintiffs have been repeatedly misled and misinformed about their applications for the DROP program, and allow the injunction to be temporarily lifted, if the Court determines the injunction does apply to this specific situation, so that the parties can appropriately discuss and resolve the issues related to the Plaintiffs' DROP application.  Plaintiffs request that the Court deny Movants' request for attorney fees and costs, as there is not clear and convincing evidence that the Plaintiffs were aware of a definite and specific injunction prohibiting the attempted resolution of this matter, and the Movants failed to give Plaintiffs adequate time to review and respond to its's email request to withdraw the case before filing this Motion.  The Wayne County Circuit Court case has already been dismissed on the grounds of lack of jurisdiction.

Dated: August 23, 2019                                 Respectfully submitted,


/s/ Elizabeth A. Ferguson
Elizabeth A. Ferguson (P53645)
Law Offices of Elizabeth A. Ferguson, PLLC
Attorney for the Plaintiffs/Respondents
55 Southbound Gratiot
Mount Clemens, MI 48043
(586) 206-0157  (t)   (586) 261-4835 (f)
lizferguson@lawofficeseaferguson.com