**EXHIBIT 1 - DFFA MEETING MINUTES DATED JANUARY 28, 2019, pages 14-16**



# Detroit Fire Fighters Association
## I.A.F.F. Local 344

**GENERAL MEMBERSHIP** — **OFFICIAL MINUTES**

## REGULAR MEETING HELD JANUARY 28, 2019

---

**LEGGHIO & ISRAEL, P.C.**
ATTORNEYS AND COUNSELORS AT LAW

STUART M. ISRAEL
CHRISTOPHER P. LEGGHIO
KEVIN P. KALES
JOHN G. ADAM
MEGAN B. BOELSTLER
LAUREN E. CRUMMEL
CARLA T. BLAKEY
NICHOLAS R. NAHAT

306 South Washington, Suite 600
Royal Oak, Michigan 48067
248-398-5900
fax 248-398-2662
www.legghioisrael.com

DOWNRIVER OFFICE
www.kevinkales.com
3133 Van Horn Road
Trenton, MI 48183
313-381-0805

November 2, 2018

Via Email Only

Mike Nevin
President
DFFA Local 344
333 West Fort Street, Suite 1420
Detroit, MI 48226

RE: DROP Matters

Dear Mike:

This letter addresses DROP and, in particular, possible Union responses to the complaints raised by two groups of fire fighters who are aggrieved with the current DROP procedure.

Below we summarize the pertinent factual background to DROP and the fire fighters' complaints. We also explain that, should the Union wish to pursue these matters, the Union has essentially three (3) options.

But, as also discussed below, the Union's options -- such as they are -- are limited and involve procedural and substantive obstacles.

I. PERTINENT BACKGROUND

A. DROP Before and After the City's Bankruptcy and Plan of Adjustment (POA)

Created in the DFFA's 2001-2008 CBA, the original DROP was *unlimited*. That is, there was no fixed mandatory retirement date for those who elected DROP.

---

Mike Nevin
President
DFFA Local 344
*DROP Matters*
November 2, 2018
Page 2

In July 2012, it appears DROP was changed from *unlimited* to five (5) years under City-imposed employment terms (CET).

A March 25, 2013 Act 312 Arbitration Award re-established DROP as *unlimited*.

On July 1, 2014, the Governor-appointed Emergency Manager (EM) *closed* the DROP Program.

On December 10, 2014, the Bankruptcy Court approved the POA. Under the POA and the terms of the new Police and Fire Retirement System (PFRS) Pension Plan, fire fighters who elected DROP can generally work for only five (5) years after making their DROP election.

This five (5) year DROP limitation is currently in effect.

B. The Claims of *July 2014 Claimants*

Several fire fighters -- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ -- applied for DROP in 2014 with the understanding that the DROP was *unlimited*. They applied for DROP apparently without understanding that the EM had declared DROP closed, or without understanding the then POA-required five (5) year limit.

Nothing in the DROP application process at that time, nor anything the Pension Board or its staff said, indicated that DROP was closed or limited.

Later, these *July 2014 Claimants* learned that their DROP was actually limited to five (5) years and their City employment would terminate five (5) years after their irrevocable DROP election. For many of the *July 2014 Claimants*, their employment termination/retirement due date is fast approaching. ▓▓▓▓▓▓ termination date is, we understand, August 2019.

---

Mike Nevin
President
DFFA Local 344
*DROP Matters*
November 2, 2018
Page 3

For relief, these *July 2014 Claimants* wish to avoid DROP's five (5) year limitation. Stated simply, they wish to continue their employment beyond their rapidly approaching DROP-required retirement date.

C. The Claims of *July 2012 Claimants*

The *July 2012 Claimants* never applied for the DROP.

The *July 2012 Claimants* refrained from applying for DROP in 2012 because, they state, they understood that DROP was limited to five (5) years. Later, under the March 2013 Act 312 Arbitration, an *unlimited* DROP was re-established. But, by this time, the *July 2012 Claimants* were ineligible for DROP as a result of, among other things, their own promotions.

The *July 2012 Claimants* now argue that, had they known in 2012 that DROP would later be deemed *unlimited*, they would have applied for DROP in 2012. So, the *July 2012 Claimants* urge, they have been wrongly deprived of *unlimited* DROP.

For relief, these *July 2012 Claimants* want to restore the status quo *ante* -- i.e., they wish to be placed in the position of being able to elect *unlimited* DROP, as others did in 2012.

D. Recent DROP Developments -- the POA

In September 2018, the City asked the Bankruptcy Court for permission to "adjust" the POA DROP to ten (10) years from five (5) years for DPLSA and DPCOA members only.

In light of recent DPOA/City negotiations -- and the resulting DPOA contract extension -- we anticipate the City will soon seek to include DPOA members in its pending request to the Bankruptcy Court to extend DROP to ten (10) years.

---

Mike Nevin
President
DFFA Local 344
*DROP Matters*
November 2, 2018
Page 4

II. DFFA OPTIONS

We can discuss in detail whether the Union has any duty or standing to pursue claims on behalf of either or both of the *July 14 Claimants* and the *July 2012 Claimants*.

At the outset, however, we do not believe the Union has any duty to pursue these matters. This is particularly so for the *July 2014 Claimants*, who can pursue their individual and uniquely fact-intensive claims directly with the Pension Board.

As explained below, at least one *July 2014 Claimant* already has pursued his personal claims with the Pension Board.

Beyond that, there are legitimate standing and timing issues in either case for the Union.

That said, on behalf of the *July 2012 Claimants* and the *July 2014 Claimants*, the DFFA could:

1. ask the Pension Board for relief; and/or

2. grieve the impending termination or forced retirement of the *July 2014 Claimants*.

III. ASSESSMENT OF THE CLAIMS

The claims of each group are equity based, *i.e.*, based primarily on notions of fairness. But, neither group has particularly strong claims -- although the claims of the *July 2014 Claimants* have a greater equity appeal.

The *July 2014 Claimants* are, in many respects, the victims of the Pension Board's own mistakes. The Pension Board permitted the *July 2014 Claimants* to


---

**Mike Nevin**
President
DFFA Local 344
*DROP Matters*
November 2, 2018
Page 5

apply for DROP even *after* the EM had closed DROP as of July 1, 2014. The Pension Board's conduct and pertinent documents at the time -- *e.g.*, its acceptance of DROP applications, DROP-related documents' omission of DROP's limitations -- did *not* inform the DROP applicants that they were irrevocably applying for a five (5) year DROP.

But, the *July 2014 Claimants* have procedural obstacles to their claims. Specifically, in February 2015, one of the *July 2014 Claimants* -- ▓▓▓ - asked the Pension Board for relief from his irrevocable July 15, 2014 DROP application. (It was approved effective August 11, 2014.)

▓▓▓▓▓ submitted material to the Pension Board that explained his and other DROP-applicants' misunderstanding about the DROP's duration when they applied for DROP.

Their confusion is a result of the Pension Board's misleading representations -- both written and behavioral. For example, the DROP application documents did not require applicants to acknowledge the limited duration of DROP. (Now, for example, the current DROP application requires, in all capital letters, an applicant's acknowledgment of DROP's limited five (5) year duration.)

In a June 25, 2015 open session, however, the Pension Board rejected Mr. ▓▓▓ equity argument. By a tie Pension Board vote, a motion to grant Mr. ▓▓▓ relief failed.

Thereafter, Mr. ▓▓▓▓▓ engaged personal counsel. In October 2017, counsel to the Pension Board told Mr. Baumann's personal attorney of the Pension Board's June 2015 action. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The Pension Board's attorney stated that the Pension Board's 2015 failure/refusal to grant Mr. ▓▓▓ requested relief:

> stands as [the Board's] final determination concerning ▓▓▓▓▓ request for relief.

---

**Mike Nevin**
President
DFFA Local 344
*DROP Matters*
November 2, 2018
Page 6

So, there is at least a preliminary indication of the Pension Board's refusal to grant relief to this participant or other *July 2014 Claimants*.

The *July 2012 Claimants* -- which we understand is a larger group than the *July 2014 Claimants* -- have a more difficult problem then the *July 2014 Claimants*.

The *July 2014 Claimants* assert claims of DROP-related misrepresentation. The *July 2012 Claimants*, on the other hand, simply claim that had they known the future in 2012 -- *viz.*, that the then-future March 2013 Act 312 Arbitration Award would deem DROP *unlimited* -- they would have applied for DROP before March 25, 2013.

Later developments -- *i.e.*, their promotions -- prejudiced the *July 2012 Claimants'* ability to later apply for DROP.

This claim has obvious flaws. First, it is hard to effectively argue that one is unfairly injured because one could not foresee the future -- *i.e.*, the March 2013 Act 312 Award. No one can.

Moreover, it is virtually impossible to establish the status quo *ante* here because the City's bankruptcy was litigated and resolved based on the then extant facts. Stated another way, the Bankruptcy Court approved the POA in 2014 based on, among other things, the number of DROP fire fighters then in existence. At a minimum, we believe the POA precludes relief to the *July 2012 Claimants*.

Presumably, the *July 2012 Claimants* made their 2012 decision to decline DROP based on the best evidence and information available at the time. The fact that a later March 2013 Act 312 Award temporarily granted *unlimited* DROP does not necessarily make the *July 2012 Claimants* victims.

---

**Mike Nevin**
President
DFFA Local 344
*DROP Matters*
November 2, 2018
Page 7

## IV. THE CITY'S SEPTEMBER 13, 2018 MOTION TO MODIFY THE POA REGARDING DROP

In September 2018, the City asked the Bankruptcy Court to modify the POA with regard to DROP. Specifically, the City asked the Court to increase the DROP from five (5) years to ten (10) years for DPLSA and DPCOA members only.

Later, the City negotiated an extension of its current DPOA contract. This new DPOA-CBA similarly extends DROP to ten (10) years.

Given these new developments, it is reasonable to assume the City would extend DROP to ten (10) years for the DFFA in contract negotiations. We do not know, however, whether this presumed City agreement to extend DROP to ten (10) years for DFFA is too "expensive" -- *viz.*, that the City's other contract demands for this DROP extension are otherwise unacceptable to DFFA.

In any event, collective bargaining is another way the Union could address at least the claims of the *July 2014 Claimants*. We do not believe, however, that the "had I known" claims of the *July 2012 Claimants* can be resolved in collective bargaining.

If you have any questions, please call.

Sincerely,

*Christopher P. Legghio/DKK*

Christopher P. Legghio

Enclosure

---

## DROP SUMMARY

Many of you have been asking about the DROP program and how many years you may be in DROP. The way to read the informational chart below is:

Start with the <u>Rank you Dropped at</u>, then look at the effective dates, if you dropped between that timeframe the term would be to the right.

| Rank/DROP Effective Date | Term in Drop |
|---|---|
| **Fire Fighters** | |
| July 2009 to June 30 2014 | Unlimited |
| July 1 2014 to present | 5 Year Maximum |
| **Sergeants, Captains, Lieutenants** | |
| July 2009 to March 31, 2011 | Unlimited |
| April 1, 2011 to June 30, 2014 | 10 years |
| July 1, 2014 to present | 5 years |
| **Chief** | |
| July 2009 to June 30 2014 | unlimited |
| July 1 2014 to present | 5 years |

Should you have any further questions or concerns, please contact the union office (313) 962-7546.

Fraternally,

*Jeffrey M. Pegg*
President
Detroit Fire Fighters Association
Local 344



# REGULAR MEETING HELD JANUARY 28, 2019
Page 16 of 16

**ADJOURNMENT:**      **MOTION: SMITH / REEDY**
To adjourn at 8:16 p.m.
**CU**

                                                                    Fraternally,
                                                                    THOMAS M. GEHART
                                                                    Secretary – Local 344