# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## DFFA'S REPLY TO THE CITY'S AND THE PFRS' JOINT MOTION TO ENFORCE PLAN OF ADJUSTMENT AND CONFIRMATION ORDER (R13090)

Christopher P. Legghio (P27378)
Megan B. Boelstler (P79125)
Legghio & Israel, P.C.
306 South Washington Avenue, Suite 600
Royal Oak, Michigan 48067-3837
(248) 398-5900
cpl@legghioisrael.com
mbb@legghioisrael.com

Attorneys for DFFA

# TABLE OF CONTENTS

LIST OF ABBREVIATIONS AND ACRONYMS ................................................. ii

INTRODUCTION ..............................................................................................1

PERTINENT BACKGROUND AND PROCEDURAL HISTORY ........................1

ARGUMENT ......................................................................................................2

    I.    PLAINTIFFS MISUNDERSTAND THE POA AND INJUNCTION ..................................................................................2

    II.    THE DFFA DID NOT MISLEAD OR MISINFORM PLAINTIFFS ................................................................................4

# LIST OF ABBREVIATIONS AND ACRONYMS

For concision and readability, the following abbreviations and acronyms are used in this brief:

**Bankruptcy Court:** United States Bankruptcy Court, Eastern District of Michigan

**CBA:** Collective bargaining agreement(s)

**City:** City of Detroit

**Confirmation Order:** Supplemental Opinion regarding POA (see below) Confirmation, approving settlements, and approving exit financing (R8993, pp. 35-36)

**DFFA:** Detroit Fire Fighters Association, IAFF Local 344

**DROP:** Deferred Retirement Option Plan

**Joint Motion:** The City's and the PFRS' (see below) Joint Motion to Enforce Plan of Adjustment (R8045) and Confirmation Order (R8272) Against Daniel J. Salkowski, Jeffrey Hamn and Richard Makulski.

**MOU:** Memorandum of Understanding

**Plaintiffs:** Plaintiffs in the Salkowski WCCC Case No. 2019-009993-CL -- Daniel J. Salkowski, Jeffrey Hamm, and Richard Makulski

**PFRS:** Pension and Fire Retirement System of the City

**POA:** Eighth Amended Plan of the Adjustment of Debts of the City of Detroit; United States Bankruptcy Court, Eastern District of Michigan, Chapter 9 Case No. 13-53846

| | |
|---|---|
| ***Response and Objections:*** | *Plaintiffs' August 23, 2019 Response and Objections to the City's and the PFRS' Joint Motion* |
| ***TRO:*** | *Temporary Restraining Order* |
| ***WCCC:*** | *Wayne County Circuit Court* |
| ***WCCC Case:*** | *Respondents' DROP-related suit filed in Wayne County Circuit Court, Salkowski et al. v. City of Detroit, the Detroit Police and Fire Pension Board, and Detroit Fire Fighters Association Local 344, Case No. 2019-009993-CL (Judge John A. Murphy), dismissed with prejudice (Exs. 1 and 2).* |

## INTRODUCTION

This is the DFFA's response to the City's and PFRS' Joint Motion. (R13090). More specifically, this DFFA response addresses *Plaintiffs'* Response and Objections to the City's and the PFRS' Joint Motion. (R13103).[1]

In their rambling, legally-impoverished argument, Plaintiffs broadly blame others -- including the DFFA -- for their late recognition and understanding of the POA's clear ten (10) year injunction against pension changes, including changes to the terms of the DROP Program.

As explained below, Plaintiffs' claims of being misled or misinformed about the DFFA's efforts to address their DROP Program concerns and the interplay between the POA and DROP Program are demonstrably false.

## PERTINENT BACKGROUND AND PROCEDURAL HISTORY

On July 25, 2019, Plaintiffs sued the City, the PFRS and the DFFA in WCCC. (Ex. 1, Complaint).

Plaintiffs sought relief from the five (5) year DROP Program terms, which required Plaintiffs to retire in August 2019. On August 1, 2019, without a hearing, WCCC Judge Murphy issued a TRO restraining Plaintiffs' retirements.

---

[1] Plaintiffs actually designate themselves as "Respondents" in their Response and Objections, but were Plaintiffs in the WCCC lawsuit that precipitated the City's and PFRS' Joint Motion.

1

On August 9, 2019, the City and PFRS filed their Joint Motion with this Court. (R13090). By their Joint Motion, the City and the PFRS sought, *inter alia*, an order requiring Plaintiffs to dismiss their WCCC lawsuit -- a remedy that is now moot, as explained below.

On August 21, 2019, WCCC Judge Murphy, pursuant to the parties' stipulated order, dissolved the TRO, denied Plaintiffs' preliminary injunction request, and dismissed Plaintiffs' WCCC action *with prejudice*. (Ex. 2).

On August 23, 2019, Plaintiffs filed their Response and Objections to the Joint Motion. Plaintiffs claim that the DFFA falsely mislead them about the DFFA's efforts with regard to Plaintiffs' belated objections to DROP's mandatory retirement obligations and the role of the POA *vis a vis* DROP. (R13103).

## ARGUMENT

I. **PLAINTIFFS MISUNDERSTAND THE POA AND INJUNCTION**

Plaintiffs misunderstand the POA and its ten (10) year pension injunction. Similarly, Plaintiffs misunderstand the DFFA's review of their pre-WCCC litigation DROP complaints.

Throughout their Response and Objections, Plaintiffs repeatedly claim that the DFFA misled or misinformed them about the POA's pension injunction and its significance to their issues. For example, according to Plaintiffs, the DFFA did not:

2

> …notify the Plaintiffs…that the Plan of Adjustment **prohibited any discussion** or resolution of the DROP issues." (R13103, ¶1, pp. 2-3; see also ¶32, p. 10; ¶35, p. 11).

These claims are untrue.

As early as 2015, DROP-electees knew of DROP's five (5) year mandatory retirement terms and were specifically directed to documents which linked the DROP Program to the POA.

Indeed, Plaintiffs' counsel received specific information from PFRS' counsel in 2017 about the DROP Program's connection to the POA and clear directions as to where to review the "publicly accessible" documents that clearly married the POA and DROP Program:

> The terms governing PFRS's pension benefits are presently memorialized in the Combined Plan, as amended by the Emergency Manager via Order No. 44, December 8, 2014, effective July 1, 2014. This document is publicly accessible on PFRS's website at: http://www.pfrsderoit.or/Resources/Combined-Plan-Document. (Ex. 4).[2]

And, the POA is publicly available online (https://detroitmi.gov/document/eighth-amended-plan-adjustment-debts-city-detroit).

---

[2] The *Combined Plan* is an element of the POA. (Plan, pp. 38-39, Ex. I.A.254.a).

## II. THE DFFA DID NOT MISLEAD OR MISINFORM PLAINTIFFS

Beginning at least in May 2018, the DFFA addressed Plaintiffs' concerns and sensitized the Plaintiffs *and their counsel*, about the substantative, procedural and bankruptcy-related jurisdictional issues related to Plaintiffs' concerns with DROP's mandatory retirement terms.

The DFFA informed *all* of its members that any resolution regarding DROP would require this Bankruptcy Court's approval, and involved standing and procedural obstacles. See, e.g., R13103, Ex. 1, the DFFA's legal counsel's November 2, 2018 letter to the DFFA, published in the DFFA's minutes on January 28, 2019 ("the Union's options -- such as they are -- are limited and involve procedural and substantive obstacles"; "the City asked the Bankruptcy Court for permission to 'adjust' the POA DROP to ten (10) years").

Further, the DFFA/City MOU regarding pension, which is part of the CBA ratified by the DFFA membership in November 2014, specified that the MOU was subject to *confirmation of the POA*, and that the City could *not* modify pensions contrary to the POA. (R13090, Ex. 6J, ¶¶B and C).

Plaintiffs allege that their "morale was harmed" by the DFFA's "ineffective addressing" of DROP issues, and its "misleading behavior" that, Plaintiffs claim, led them to "believe the matters were legitimately being discussed and resolutions [were being] explored." (R13103, ¶35, p. 11).

4

The DFFA did *not* ineffectively address Plaintiffs' issues or mislead Plaintiffs about the DFFA's efforts to genuinely resolve this nettlesome problem.

Rather, the DFFA was highly responsive to Plaintiffs' belated concerns with DROP's mandatory retirement and extensively and genuinely reviewed the limited options that resulted from the POA's ten (10) year pension injunction.

The DFFA conducted DROP-dedicated membership meetings to assess and understand Plaintiffs' concerns. And, the DROP-dedicated letters from the DFFA's counsel demonstrate the DFFA's earnest effort to understand and/or resolve the DROP "issue." (R13103, Ex. 1).

The DFFA's consideration of, or attentiveness to, Plaintiffs' DROP concerns is not evidence of misleading or misinforming Plaintiffs about their legal dilemma. Rather, the DFFA's actions demonstrate a Union's appropriate and timely attention to its members' concerns or issues -- even when resolution of the issues may, ultimately, be beyond the Union's powers to effectively grieve or resolve without Bankruptcy Court approval.

*/s/Megan B. Boelstler*
Christopher P. Legghio (P27378)
Megan B. Boelstler (P79125)
Legghio & Israel, P.C.
306 South Washington Avenue, Suite 600
Royal Oak, Michigan 48067-3837
(248) 398-5900
cpl@legghioisrael.com;
mbb@legghioisrael.com

September 13, 2019     Attorneys for DFFA