# EXHIBIT 1

STATE OF MICHIGAN

IN THE THIRD CIRCUIT COURT FOR WAYNE COUNTY

DANIEL J. SALKOWSKI,

JEFFREY HAMM,

RICHARD MAKULSKI

    Plaintiffs

v.                                        Case No. 2019-     -CL

                                                Hon.

CITY OF DETROIT, THE DETROIT POLICE AND

FIRE PENSION BOARD, DETROIT FIRE

FIGHTERS ASSOCIATION LOCAL 344,

    Defendants,

_____/

ELIZABETH A. FERGUSON (P53645)
Law Offices of Elizabeth A. Ferguson, PLLC
Attorney for Plaintiffs
55 Southbound Gratiot
Mount Clemens, MI 48043
586-206-0157  586-261-4835 (fax)
_____/

There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

### VERIFIED COMPLAINT AND REQUEST FOR INJUNCTION

### JURISDICTION AND VENUE

1. All Plaintiffs are active members of the Detroit Fire Department and presently work within Wayne County.

2. The City of Detroit is an incorporated city within Wayne County.

3. The Detroit Police and Fire Pension Board operates as the pension board responsible for the pensions of the members of the Detroit Fire Department, including Plaintiffs.

4. Detroit Fire Fighters Association (DFFA) Local 344 is the local union representing Plaintiffs in all collective bargaining matters involving the Detroit Fire Department and the City of Detroit.

5. The actions underlying this complaint occurred within Wayne County.

6. Plaintiffs are seeking equitable relief regarding mishandling of Deferred Retirement Option Plan (DROP) applications that resulted in Plaintiffs receiving benefits different than what they were promised.

## BACKGROUND FACTS

7. On March 26, 2013, Kevyn D. Orr became the Emergency Manager (EM) for the City. Mr. Orr was responsible for issuing orders to rectify the financial emergencies facing the City.

8. On or about July 18, 2013, the City of Detroit (City) filed for Chapter 9 bankruptcy protection in the Bankruptcy Court in the Eastern District of Michigan.

9. At the time the City filed for bankruptcy protection, the collective bargaining agreement between the Detroit Fire Department and the DFFA Local 344 provided for a Deferred Retirement Option Plan (DROP) that allowed members of the DFFA an unlimited time to participate in the retirement program after declaring their intention to retire.

10. Effective July 1, 2014, the DROP program was closed to, and no longer a distribution option with respect to the frozen accrued benefit of, members represented by the DFFA.

The Plaintiffs were not notified that the DROP program was closed and no longer accepting applications.

11. At the time the DROP program was closed, terms of a new DROP program had not yet been determined.

12. Plaintiffs all submitted DROP applications just before or shortly after the DROP program was closed. The DROP applications for the Plaintiffs, including those who submitted applications after the DROP program was closed, were processed by the City of Detroit and/or the Detroit Police and Fire Pension Board.

13. There is a three-part process for filing and completing the DROP process:
    a. Plaintiffs each had to apply with Human Resources at the City/County Building, giving notice of their intent to retire and participate in the DROP program;
    b. Plaintiffs then were given an appointment with a Police and Fire Pension System representative to go over the pension amount, DROP calculations, benefits, and complete and sign off on each issue;
    c. The final step occurs when the Detroit Police and Fire Pension Board votes on whether to accept the application.

14. Neither the City of Detroit nor the Detroit Police and Fire Pension Board notified the Plaintiffs at the time they submitted their DROP paperwork that the DROP program was closed, nor were they informed as their paperwork was processed that the DROP program had been closed.

15. Plaintiffs began hearing rumors around August 2014 that the DROP program was changing but were unable to get specific information due to a gag order issued within the bankruptcy proceeding.

16. In November 2014 a collective bargaining agreement between the City and DFFA was reached reopening the DROP program and changing the time of the DROP program from unlimited to five years.

COUNT 1

17. Plaintiff Salkowski submitted his DROP application on or about July 14 or July 15, 2014, after the DROP program was closed and applications were no longer being accepted. On July 22, 2014 he participated in a DROP interview with a Ms. Carter from the City's Human Resource Department. At the time of his DROP application, the DROP program was still recognized as unlimited, and Ms. Carter informed him it was an unlimited DROP plan on August 13, 2014.
18. Plaintiff Hamm submitted his DROP application on June 9, 2014, prior to the DROP program's closure. At the time his application was submitted, the DROP program was unlimited.
19. Plaintiff Makulski submitted his DROP application on July 7, 2014, after the DROP program was closed and no longer accepting applications. At the time he submitted his application, the DROP program was still recognized as unlimited.
20. Under the terms of the DROP, once a member decides to participate in the DROP program, the election becomes irrevocable and cannot be changed.
21. The City and/or Pension Board did not notify Plaintiffs that the DROP program was closed prior to accepting their applications, nor did the City and/or Pension Board notify the Plaintiffs while the applications were pending that the unlimited DROP program they were led to believe they had signed up for was changing to a five year program. At least

two of the Plaintiffs were told while continuing the DROP paperwork process that the DROP program was still unlimited.

22. Plaintiffs did not find out until around August 2014 that the DROP program was suspended and no longer accepting applications. Plaintiff Baumann was informed by other firefighters who had filed applications for the DROP program that they had been notified that the program was suspended, and their applications were not being processed. None of the Plaintiffs were notified their applications were suspended and the City and Pension Board continued to process their applications without regard for the fact that Plaintiffs were being treated differently than other Firefighters who had filed for the DROP program and had their applications suspended.

23. The City of Detroit and the DFFA ratified the 2014-2019 collective bargaining agreement on November 6, 2014. Immediately after the collective bargaining agreement was ratified, the Pension Board voted to accept the DROP applications from the Plaintiffs.

24. Plaintiffs were not notified prior to the collective bargaining ratification that the DROP program had been changed.

25. On or about August 10, 2015, the DFFA distributed an informational bulletin to union members informing them of the new DROP dates.

26. Plaintiff Salkowski immediately contacted the Pension Board and was told that he was in the five-year program and that his concerns about the change from unlimited to a five-year program was a union issue.

27. Plaintiff Salkowski contacted the DFFA and the DFFA admitted to Plaintiff Salkowski that the Pension Board made a mistake by allowing members to file applications after the DROP program was closed but stated Plaintiff Salkowski was still in the five-year DROP program.

28. Plaintiff Hamm submitted his DROP application while the program was unlimited, but he is being forced to retire under the five-year DROP plan even though that is not the plan in place when he submitted his paperwork.

29. The Defendants mishandled the Plaintiffs' DROP application paperwork when it accepted DROP applications from Plaintiffs Salkowski and Makulski after the DROP program was closed, and continued to process those applications without notifying Plaintiffs that the program was changing or that the Plaintiffs would be placed in a five-year DROP. The Defendants mishandled Plaintiff Hamm's DROP application when they accepted his application prior to the suspension of the DROP program, while it was an unlimited program, and then unilaterally processed it as a five-year drop without notice to Plaintiff Hamm.

30. The Defendants misrepresented the terms of the DROP program to Plaintiffs when Plaintiffs were not told that the program was limited to five years, and when Defendants informed Plaintiff Salkowski and Plaintiff Hamm that the program was still unlimited.

31. As a result of the Defendants' misrepresentations and decision to accept and process the Plaintiffs' DROP applications when the DROP program had been suspended, Plaintiffs are not getting the benefits they were entitled to when they submitted their applications for the DROP program.

32. As a result of the Pension Board's decision to vote and accept the applications immediately after the collective bargaining agreement was ratified, without informing Plaintiffs that the benefits had changed, Plaintiffs are not receiving the benefits they were entitled to when they submitted their DROP applications.

33. As a result of Defendants' actions, all of the Plaintiffs are being forced into retirement sooner than they expected when they submitted their DROP applications.

Wherefore, Plaintiffs respectfully request that this Court grant Plaintiffs equitable relief and order that they be included in the unlimited DROP program that Plaintiffs were told was in place when they filed their DROP applications.

## COUNT II

34. Plaintiffs individual and collectively incorporate by reference all statements made in Paragraphs 7 through 33.
35. The DFFA has admitted to Plaintiffs that the DROP program had been suspended and the Pension Board made a mistake in allowing Plaintiffs to submit DROP applications, but the DFFA has refused and/or failed to file a grievance or take other action to address the Plaintiffs' issues.
36. It is not clear that the City of Detroit leadership is aware of this situation involving the Plaintiffs, but it does appear that the City's Human Resources department was operating on the belief that the DROP program was unlimited when the Plaintiffs applied.
37. The DFFA and the Pension Board appear to be blaming each other for the situation, but neither is taking any action to fix the problems they created when the Plaintiffs' applications were accepted after the Emergency Manager ordered the DROP program closed to new applications and when they failed to notify the Plaintiffs of the changes to the DROP program or allow the Plaintiffs to rescind their applications after discovering they had been misled by the City's Human Resources office, the DFFA, and the Pension Board.
38. All of the Plaintiffs have been notified that they are scheduled to retire in August 2019 and are facing imminent threat of losing their positions.

39. All of the Plaintiffs have been told they are required to complete their final paperwork and exit procedures to retire, and if they do not complete that process, they will be terminated by the Detroit Fire Department.

40. Plaintiffs have been diligently attempting to resolve this issue, but while they have received sympathy and acknowledgements that their applications should not have been accepted and they were not informed of the changes to the program, no one is taking action to stop the retirement process.

41. The Eighth Amended Plan for the Adjustment of Debts of the City of Detroit, dated October 22, 2014, gives the Retirement Board discretionary authority to determine the rights and status of members, retirees, beneficiaries, and other persons under the retirement system. In this case, the Board has the ability to determine that the Plaintiffs were misled throughout the DROP process and to take action to correct the situation, but the Board has instead decided to pass the blame to others and continue to enforce actions the Board took when it allowed the DROP applications to be processed and approved, knowing that the DROP program had been suspended.

42. Plaintiffs will be irreparably harmed if the Defendants are allowed to force Plaintiffs to retire rather than correct the problems that Defendants created by misrepresenting the DROP program at the time Plaintiffs applied.

43. Defendants will not be harmed by requiring Defendants to maintain Plaintiffs as active employees while this matter is pending. Plaintiffs Salkowski and Makulski appear to be the only members of the DFFA that were mislead as to the terms of their DROP program and whose applications were processed while the DROP program was suspended. Plaintiff Hamm appears to be the only member who applied prior to the closing of the

DROP program and while the program was truly still unlimited, but who is being forced into the 5-year program with the rest of the Plaintiffs.

44. An injunction is proper in this matter because of the irreparable harm the Plaintiffs are facing with their imminent forced retirement.

45. There is no harm to the public interest if an injunction is issued in this case.

Wherefore, Plaintiffs respectfully request that this Court exercise its equitable powers and issue an injunction prohibiting Defendants City of Detroit and the Detroit Police and Fire Pension Board from forcing Plaintiffs to retire in August 2019 and allowing Plaintiffs to continue in their roles with the Detroit Fire Department pending resolution of this matter.

I swear that the above statements are true to the best of my information, knowledge, and belief.

/s/ Daniel Salkowski
Daniel Salkowski

/s/ Richard Makulski
Richard Makulski

/s/ Jeffrey Hamm
Jeffrey Hamm

/s/ Elizabeth A. Ferguson
Elizabeth A. Ferguson (P53645)
Law Offices of Elizabeth A. Ferguson, PLLC
Attorney for Plaintiffs
55 Southbound Gratiot
Mount Clemens, MI 48043
(586) 206-0157  (586) 261-4835 (fax)