**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CITY OF DETROIT'S MOTION TO IMPLEMENT DISTRIBUTIONS OF B NOTES TO HOLDERS OF ALLOWED CLASS 14 CLAIMS UNDER THE CITY'S CONFIRMED PLAN OF ADJUSTMENT**

The City of Detroit, by its undersigned counsel, files this Motion to Implement Distributions of B Notes to Holders of Allowed Class 14 Claims Under the City's Confirmed Plan of Adjustment ("<u>Motion</u>"). In support of this Motion, the City respectfully states as follows:

**I.**    **<u>INTRODUCTION</u>**

Class 14 of the City's confirmed plan of adjustment provides that each holder of an allowed class 14 claim is to receive a pro rata distribution of B Notes. However, as a practical matter, in order to receive its portion of B Notes, each holder must have or establish an individual brokerage account and provide the account number and other pertinent information relative to that account to the City or its disbursing agent. Without such account and other relevant information, the disbursing agent cannot distribute the B Notes to those holders.

The City understands that some claimants may not have existing or established brokerage accounts. Frankly, many claimants may not even be aware

33923336.20\022765-00213

that they need one. Consistent with the confirmed plan of adjustment, to address this problem, the City proposes to provide all class 14 claimants, both those claimants with allowed claims and those claimants whose claims have not been allowed or disallowed, with a notice informing them of this requirement and a list of financial institutions that can assist them in establishing and opening the requisite brokerage account ("Notice"). The Notice is attached as Exhibit 6-1. This Notice would also instruct each claimant that it must provide the City with certain necessary tax information. Once this Notice is mailed to a claimant, the City proposes that such claimant have up to 6 months to provide the City with the required tax information and to open a brokerage account and provide the City with his or her brokerage account information. In the absence of timely providing such information by the end of the 6 month period, the City requests that it be authorized to cancel any B Notes to which the claimant would otherwise have been entitled and that any distributions of interest and related income due to such claimant would irrevocably revert to the City at that time.

## II.    <u>JURISDICTION AND VENUE</u>

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Pursuant to Article VII of the Plan, this Court retained jurisdiction to "Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan." Plan, Article V.D, p. 70.

33923336.20\022765-00213

This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. BACKGROUND

### A. The City Confirms its Plan

2. On October 22, 2014, the City filed the *Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (October 22, 2014)* [Doc. No. 8045] ("Plan"). Capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the Plan.

3. On November 12, 2014, this Court entered an Order confirming the Plan. [Doc. No. 8272] ("Confirmation Order").

4. The Plan became effective on December 10, 2014 ("Effective Date").

### B. Class 14 of the Plan

5. Class 14 of the Plan provides that "each Holder of an Allowed Other Unsecured Claim…shall receive…a Pro Rata share of approximately $16.48 million in New B Notes and (B) distributions in accordance with Section II.B.3.p.i.A." Plan, Article II.B.3.u.i, p. 44. Each Holder of an Allowed Other Unsecured Claim is sometimes referred to in this Motion as an "Allowed Claimholder."

6. Consistent with the terms of the Plan, on the Effective Date, the City issued a total of $20,596,747 in aggregate principal amount of New B Notes

on account of Allowed Other Unsecured Claims in Class 14. This amount consists of Series 2014B-1 in the principal amount of $20,376,922 ("Series 2014B-1 Notes") and Series 2014B-2 in the principal amount of $219,825 ("Series 2014B-2 Notes" and, together with the Series 2014B-1 Notes, the "B Notes").

7.     The principal terms of the B Notes were set forth on Exhibit I.A.246 to the Plan. Exhibit 6-2, Doc. No. 8045-1, page 314 of 809. The B Notes mature 30 years after the Effective Date and bear interest at the rate of 4% per annum for the first 20 years and 6% per annum for years 21 to 30. Holders of B Notes receive payments of interest only for the first 10 years. Beginning in year 11, in addition to payments of interest, payments of principal on the B Notes are required in amounts necessary to amortize the B Notes in 20 annual installments through mandatory sinking fund redemptions.[1] The B Notes were originally structured such that principal would amortize in equal annual installments. However, in 2018, the City purchased a portion of the B Notes through a tender program. The purchase caused a portion of the B Notes to be cancelled, resulting in an overall reduction of the principal amount of B Notes outstanding. This reduction was applied to certain principal installments in varying amounts, such that annual installments are no longer equal.

---

[1] The B Notes are subject to optional redemption prior to maturity at any time.

33923336.20\022765-00213

### C. The Reserve Order

8.      In contemplation of an interim distribution of B Notes, the City filed the *Motion of the City of Detroit, Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code and Bankruptcy Rule 3021, For an Order Approving Reserve Amounts for Certain Disputed or Unliquidated Unsecured Claims in Connection with Distributions to be Made Under the Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* [Doc. No. 9351] ("Reserve Motion").[2]  Consistent with the terms of the Plan, the Reserve Motion sought approval of the establishment and maintenance of a reserve ("Disputed Unsecured Claim Reserve") that would permit interim distributions to be made to holders of Allowed Claims under the Plan before all proofs of claim were Allowed or Disallowed.

9.      This Court entered an order approving the Reserve Motion [Doc. No. 9701] ("Reserve Order").   The Reserve Order authorized and approved a Disputed Unsecured Claims Reserve in the amount of $1.035 billion, subject to subsequent modification as set forth in the Reserve Motion.  Reserve Order ¶ 2. The fact that the Disputed Unsecured Claims Reserve was over $1 billion made an

---

[2] The City also filed a reply in support of the Reserve Motion on April 10, 2015, at docket number 9652.  As set forth in the reply, the City made certain minor modifications to the Schedule of Liquidated Amounts and Schedule of Reclassification Claims that were attached to the Reserve Motion as Exhibit 6.1 and Exhibit 6.6, respectively.

interim distribution impractical and costly.[3]  The Reserve Order also approved rules to assist in the administration of the Disputed Unsecured Claims Reserve ("Reserve Administration Rules").  Reserve Motion ¶ 26, Reserve Order ¶ 3.

10.      In accordance with the Reserve Administration Rules and the liquidation of more than 3,800 proofs of claim to date, the City believes that a recalculation of the Disputed Unsecured Claim Reserve is appropriate and intends to decrease the amount of the Disputed Unsecured Claim Reserve to approximately $98 million on account of disputed claims ("Disputed Class 14 Claims" and together with the Allowed Claimholders, the "Class 14 Claimants").  This represents a decrease of approximately $900 million. Further, approximately $63 million of the $98 million reserve is on account of four claims for which the claimants are seeking a 1000% enhancement of their claims to account for the fact that unsecured claims will not be paid in full.  Claim Nos. 1841, 1845, 1857, and 1925.[4]

---

[3] Article V.F. of the Plan on page 65 provides that "Except where the Plan requires the making of a Distribution on account of a particular Allowed Claim within a particular time, the Disbursing Agent shall have the authority to select Distribution Dates that, in the judgment of the Disbursing Agent, provide Holders of Allowed Claims with payments as quickly as reasonably practicable while limiting the costs incurred in the distribution process.  Upon the selection of a Distribution Date by the Disbursing Agent, the Disbursing Agent shall File a notice of such Distribution Date that provides information regarding the Distribution to be made."

[4] On May 24, 2019, the Sixth Circuit Court of Appeals ruled in favor of the City and against these claimants on their requests for a 1000% fee enhancement.

33923336.20\022765-00213

11.     Decreasing the Disputed Unsecured Claim Reserve to $98 million will enable larger distributions to be made to Allowed Claimholders sooner and without prejudice to the Holders of Disputed Claims or Claims which have not yet been Allowed.

12.     Currently, there are approximately 115 Allowed Claims in Class 14, totaling approximately $200 million.

**D.     The Disbursing Agent**

13.     All Distributions of B Notes will be made by the City's disbursing agent, U.S. Bank National Association ("Disbursing Agent"). On the Effective Date, and in accordance with Article V.A. of the Plan, the City and the Disbursing Agent entered into the Class 14 Disbursing Agent Agreement ("Disbursing Agreement"). Exhibit 6-3; Plan, Article V.A, p. 64.[5]

14.     As set forth in the Disbursing Agreement, the B Notes were issued to the Disbursing Agent in registered "book entry" form through The Depository Trust Company ("DTC"), a depository and clearing agency for various types of securities, including municipal debt instruments. The delivery of the B Notes in

---

[5] Article V.A. of the Plan provides that "The City may act as Disbursing Agent or may employ or contract with other Entities to act as the Disbursing Agent or to assist in or make the Distributions required by the Plan. Any Disbursing Agent appointed by the City will serve without bond. Other than as specifically set forth in the Plan, the Disbursing Agent shall make all Distributions required to be made under the Plan." Plan, Article V.A, p. 64.

33923336.20\022765-00213

registered, book entry form eliminates the need for physical movement of securities certificates in connection with primary and secondary market trades, and therefore facilitates the ability of the Holder to sell the B Notes. However, access to the DTC system is limited to financial institutions that maintain a participant relationship with DTC. As a result, initial Distributions of B Notes and any subsequent trades must be executed through a broker/dealer. This means that every Allowed Claimholder must have a brokerage account to receive its initial pro rata Distribution of B Notes and must provide pertinent information concerning its brokerage account to the Disbursing Agent. Neither the City nor the Disbursing Agent has any of this information for any Allowed Claimholder.

15. As a result, the Disbursing Agent provided the City with the form attached as Exhibit B to the Notice ("Brokerage Account Form"), which includes a space for each Class 14 Claimant to provide his or her brokerage account information and other pertinent information needed by the Disbursing Agent for the Distribution of B Notes. The City's claims agent, Kurtzman Carson Consultants ("KCC"), will insert the name of the Class 14 Claimant on the Brokerage Account Form prior to sending the form to the Class 14 Claimant in order to minimize any unnecessary confusion. Each Class 14 Claimant will need to complete the Brokerage Account Form and return it to the Disbursing Agent in order to receive a Distribution of B Notes if, when and to the extent it becomes an

33923336.20\022765-00213

Allowed Claimholder.[6]  For those Class 14 Claimants without brokerage accounts, a list of financial institutions that provide brokerage accounts and related services, and their respective contact information is set forth on Exhibit D to the Notice ("Set Up Your Brokerage Account Form").  A Class 14 Claimant can contact one of the financial institutions on the Set Up Your Brokerage Account Form to set up his or her own, individual brokerage account.  After the brokerage account is set up, the Class 14 Claimant would then need to complete and return the Brokerage Account Form to the City or Disbursing Agent.

16.     In addition to B Notes, the Disbursing Agent also holds the interest payments made by the City on the Class 14 B Notes that have accrued and been paid since the Effective Date. The interest payments received by the Disbursing Agent have been invested by the Disbursing Agent in accordance with the Disbursement Agreement for the benefit of Allowed Claimholders pending Distributions to the Allowed Claimholders (such interest payments and investment income currently in the possession of the Disbursing Agent and any future interest payments and investment income that may hereafter come into the possession of the Disbursing Agent, are referred to collectively as the "Related Income").

---

[6] Compliance with these procedural requirements is necessary, but alone is not sufficient, to receive a Distribution of B Notes and Related Income (defined below) under the Plan.  Each Class 14 Claimant must first become an Allowed Claimholder before and as a precondition to receiving such distributions.

33923336.20\022765-00213

17.     As of July 31, 2019, the amount of Related Income available for Distribution to the Allowed Claimholders was $3,633,681.98.

18.     Consistent with Article V.I.2 of the Plan, the City will mail each Allowed Claimholders' Pro Rata Distribution of the Related Income to the "addresses set forth in the City's records unless such addresses are superseded by proofs of Claim or transfers of Claim Filed pursuant to Bankruptcy Rule 3001." Plan, Article V.I.2, p. 65.  To receive a Distribution of Related Income, each Class 14 Claimant will also need to complete a W-8 or W-9 Form (as appropriate) ("Tax Form")[7] and return it to the Disbursing Agent.[8]  Exhibit C to the Notice.  Again, KCC will insert the name of the Class 14 Claimant on the Tax Form before sending them to the Class 14 Claimant in order to minimize any unnecessary confusion.

19.     Unless a Class 14 Claimant has complied with the requirements of Fed.R.Bankr.P. 3001(e)(2) concerning a transfer of claim (other than for security

---

[7] The City proposes to provide the Class 14 Claimants with a W-9 Form as exhibit C to the Notice.  As set forth on the W-9 Form, the W-9 Form is for use by U.S. citizens or other U.S. persons (as defined on the W-9 Form).  To the extent the W-9 Form is not applicable to a Class 14 Claimant, such Class 14 Claimant will need to complete a W-8 Form and return the W-8 Form to the Disbursing Agent.

[8] Again, compliance with this procedural requirement is necessary, but alone is not sufficient, to receive a Distribution of B Notes and Related Income under the Plan. Each Class 14 Claimant must first become an Allowed Claimholder before and as a precondition to receiving such distributions and comply with any other requirements set forth in the Plan.

- 10 -

after a proof of claim has been filed) or properly filed a change of address form, the Notice (defined below), Brokerage Account Form, and Tax Form shall be sent to the name and address where notices should be sent as identified in the proof of claim. Further, unless a Class 14 Claimant has complied with the requirements of Fed.R.Bankr.P. 3001(e)(2) concerning a transfer of claim (other than for security after a proof of claim has been filed), the name of the creditor on the Brokerage Account Form and the name on the Tax Form must match the name of the creditor on the proof of claim form and the Distribution will be made in the name of the creditor on the proof of claim form.

## IV.  RELIEF REQUESTED

20.    By this Motion, the City respectfully requests that the Court enter an order, substantially in the form attached as <u>Exhibit 1</u> (a) authorizing the City to provide the Class 14 Claimants, both those which are Allowed Claimholders and those Class 14 Claimants whose claims have not been allowed or disallowed, with (i) the Notice attached as Exhibit 6-1, including Exhibits A-D to the Notice, (ii) the Brokerage Account Form attached as Exhibit B to the Notice (iii) the Set Up Your Brokerage Account Form attached as Exhibit D to the Notice, (iv) the Tax Form attached as Exhibit C to the Notice, and (v) a prepaid, preaddressed envelope addressed to the City's claims agent, KCC  ("<u>Envelope</u>"), for the Class 14 Claimants to return the completed Brokerage Account Form and the Tax Form (b)

ordering that unless a Class 14 Claimant returns a completed copy of both the Brokerage Account Form and the Tax Form within six months after service any (i) Distribution of B Notes to which a Class 14 Claimant may be entitled under the Plan will be cancelled and of no further force or effect and (ii) Distribution of Related Income now owing or which may hereafter come due to a Class 14 Claimant will irrevocably revert to the City, in each case, pursuant to Section 347(b) of the Bankruptcy Code.

## V.   BASIS FOR RELIEF REQUESTED

21.     Pursuant to the Plan, each Allowed Claimholder shall receive a Pro Rata Distribution of B Notes. Plan, Article II.B.3.u.i, p. 44.   The Plan also authorized the City to contract with the Disbursing Agent to provide Distributions to Allowed Claimholders.  Plan, Article V.A, p. 64.  The Disbursing Agent will not be able to carry out its duties under the Plan of distributing B Notes and Related Income to Allowed Claimholders unless it receives a completed Brokerage Account Form and Tax Form from each Allowed Claimholder that is to receive a Distribution of B Notes.  Consequently, in order to implement the terms of the Plan, every Allowed Claimholder must provide the Disbursing Agent with a

33923336.20\022765-00213

completed Brokerage Account Form and Tax Form as a condition of receiving a Distribution of B Notes and Related Income.[9]

22. The Plan also provides a mechanism to ensure that Allowed Claimholders claim their Distributions of B Notes. In that regard, the Plan provides that

> **Any Holder of an Allowed Claim that does not claim an undeliverable or unclaimed Distribution within six months after the Effective Date shall be deemed to have forfeited its claim to such Distribution and shall be forever barred and enjoined from asserting any such claim against the City or its property.** In such cases, any Cash held by the City on account of such undeliverable or unclaimed Distributions shall become the property of the City free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary. Any New Securities held for distribution on account of such Claims shall be canceled and of no further force or effect. Nothing contained in the Plan shall require any Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

Plan, Article V.I.4, p. 66 (emphasis in original).[10]

23. It further provides that Distributions will revert to the City if a claimholder does not provide a completed Tax Form within six months of the City's initial request to the claimholder:

---

[9] Article VIII.E. of the Plan also provides that "The City is authorized to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan." This provision provides further support for the relief requested in this Motion.

[10] "New Securities" under the Plan includes B Notes. Plan, Article I.A.256, p. 21.

33923336.20\022765-00213

The City may require, as a condition to making a Distribution, that the Holder of an Allowed Claim provide the City or any Disbursing Agent with a complete Form W-8, W-9 or other Tax information, certifications and supporting documentation, as applicable.

If the City makes such a request and the Holder of an Allowed Claim fails to comply before the date that is 180 days after the initial request is made, the amount of such Distribution shall irrevocably revert to the City and any Claim in respect of such Distribution shall be released and forever barred from assertion against the City and its property.

Plan, Article V.J.2, p. 67.

24.     These plan provisions are consistent with section 347(b) of the

Bankruptcy Code, made applicable to this bankruptcy case by section 901(a) of the

Bankruptcy Code.  Section 347(b) provides in pertinent part as follows:

Any security, money or other property remaining unclaimed at the expiration of the time allowed in a case under chapter 9 . . . of this title for . . .  the performance of any other act as a condition to participation in the distribution under any plan confirmed under section 943(b) of this title . . . becomes property of the debtor . . .

11 U.S.C. §347(b).

25.     Each Allowed Claimholder must complete and return the Brokerage

Account Form and applicable Tax Form to claim its Distribution and to receive a

Distribution of Related Income. As Class 14 provides that Distributions were to

commence "on or as soon as reasonably practicable after the Effective Date," the

City proposes that the six month requirement set forth in Article V.I.4 not

commence until the date that the City mails the Notice and Brokerage Account

- 14 -

Form to each Class 14 Claimant.  The Notice will explicitly state a definitive date – which will be 180 days after the Brokerage Account Form and Tax Form are served by first class mail – by which the Brokerage Account Form and applicable Tax Form must be returned.  Ninety days after the initial notice is served, the City will mail a second notice to each Class 14 Claimant that has not returned a Brokerage Account Form and Tax Form.

26.     If the Brokerage Account Form and applicable Tax Form are not returned within six months after the City's initial request (a) the City shall be authorized to cancel any B Notes held for Distribution to that Allowed Claimholder and those B Notes shall be of no further force or effect and (b) all Distributions of Related Income to that Allowed Claimholder will irrevocably revert to the City and any Claim in respect of such Distribution or Distributions shall be released and forever barred from assertion against the City and its property, in accordance with the Plan and section 347(b) of the Bankruptcy Code.

## VI.    NOTICE

27.     The City has served this Motion by first-class mail on all known Class 14 Claimants.  Given the nature of the relief requested, the City respectfully submits that no other or further notice of this Motion need be given.

## VII.   CONCLUSION

WHEREFORE, the City respectfully requests that this Court enter an Order, substantially in the form annexed as Exhibit 1, granting the relief requested herein and granting the City such other and further relief as this Court may deem just and proper.

Dated: September 17, 2019

CITY OF DETROIT LAW DEPARTMENT

By: */s/ Charles N. Raimi*
Charles N. Raimi (P29746)
Mary Beth Cobb (P40080)
James Noseda (P52563)
Attorneys for the City of Detroit
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
Phone - (313) 224-4550
Email - raimic@detroitmi.gov

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: */s/ Marc N. Swanson*
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Phone - (313) 496-6420
Facsimile - (313) 496-8451
Email - swansonm@millercanfield.com

*Counsel for the City of Detroit, Michigan*

- 16 -

## <u>EXHIBIT LIST</u>

Exhibit 1        Proposed Order

Exhibit 2        Notice of Motion and Opportunity to Object

Exhibit 3        N/A

Exhibit 4        Certificate of Service

Exhibit 5        N/A

Exhibit 6-1     Notice

Exhibit 6-2     Principal Terms of New B Notes

Exhibit 6-3     Disbursing Agreement

33923336.20\022765-00213

**EXHIBIT 1**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**ORDER GRANTING THE CITY OF DETROIT'S MOTION TO**
**IMPLEMENT DISTRIBUTIONS OF B NOTES TO HOLDERS OF**
**ALLOWED CLASS 14 CLAIMS UNDER THE CITY'S CONFIRMED**
**PLAN OF ADJUSTMENT**

This matter having come before the Court on the *City of Detroit's Motion to*
*Implement Distributions of B Notes to Holders of Allowed Class 14 Claims Under*
*the City's Confirmed Plan of Adjustment* (the "Motion," [Doc. No. [_____]])[1],
notice having been given by first-class mail to all known holders of alleged Class
14 Claims under the Plan, and no further notice being necessary or required, a
hearing having been held on the Motion, the Court being fully advised in the
premises, and there being good and sufficient cause to grant the relief requested,

**THE COURT ORDERS THAT:**

1.      The Motion is granted.

---

[1] Capitalized terms used but not otherwise defined in this Order shall have the
meanings given to them in the Motion.

2.    The forms of the Notice, Brokerage Account Form, Tax Form, and the Set up Your Brokerage Account Form in substantially the same form as those appended to the Notice are approved.  The City is authorized to insert the name of the Class 14 Claimant on the Tax Form and the Brokerage Account Form before such forms are served on such Class 14 Claimant.

3.    The City is authorized and directed to serve copies of this Order, the Notice, the Brokerage Account Form, the Tax Form, the Set Up Your Brokerage Account Form and the Envelope on each known Class 14 Claimant (other than those Class 14 Claimants whose claims have been disallowed, withdrawn or expunged) by first-class mail. Unless a Class 14 Claimant has complied with the requirements of Fed.R.Bankr.P. 3001(e)(2) concerning a transfer of claim (other than for security after a proof of claim has been filed) or properly filed a change of address form, the Notice, Brokerage Account Form, and Tax Form shall be sent to the name and address where notices should be sent as identified in the proof of claim.  Further, unless a Class 14 Claimant has complied with the requirements of Fed.R.Bankr.P. 3001(e)(2) concerning a transfer of claim (other than for security after a proof of claim has been filed),  the name of the creditor on the Brokerage Account Form and the name on the Tax Form must match the name of the creditor on the proof of claim from and the Distribution will be made in the name of the creditor on the proof of claim form.

4. The City is further authorized to make modifications that the City in good faith believes are nonmaterial to the Notice, Brokerage Account Form, Tax Form and the Set Up Your Brokerage Account Form, both before and after completion of such forms, in each case, that in its opinion are necessary or appropriate to effectuate the relief provided for by this Order.

5. With respect to each Class 14 Claimant that has not returned a properly completed and valid copy of the Brokerage Account Form and the applicable Tax Form within 90 days of service, the City is authorized to send a second copy of the Notice, the Brokerage Account Form, the Tax Form, the Set Up Your Brokerage Account Form and the Envelope to such Class 14 Claimant by first-class mail.

6. If a Class 14 Claimant fails to return a properly completed and valid Tax Form and Brokerage Account Form to KCC at the address set forth on the Notice on or before 180 days after the date on which the Brokerage Account Form and the Tax Form are served (a) all Distributions of Related Income now owing or which may hereafter come due to such Class 14 Claimant shall irrevocably revert to the City and any Claim in respect of such Distribution or Distributions shall be released and forever barred from assertion against the City and its property; (b) the City is authorized and directed to cancel any B Notes held for Distribution to a Class 14 Claimant, and those B Notes shall be of no further force or effect and (c)

- 3 -

the proof of claim(s) filed by such Class 14 Claimant will be disallowed and expunged. In addition to any other requirements in this Order, at law or otherwise, to be considered properly completed and valid within the meaning of this paragraph, the name of the creditor on the proof of claim must match the name and signature on the Brokerage Account Form and the name on the Tax Form.

7.     The City is authorized to take any other action necessary or appropriate to further implement the terms of this Order and to make the Distributions to the Allowed Claimholder under the Plan, including, without limitation, to make: (a) any change or modification to any completed Tax Form or Brokerage Account Form that the City receives from any Class 14 Claimant that the City in good faith believes is not material and will not affect the amount or timing of any Distribution to such Allowed Claimholder, or (b) any modifications to the claims register at the appropriate time or times under paragraph 6 above.

8.     This Order is entered in furtherance of this Court's reserved jurisdiction to enter any orders that may be necessary or appropriate to implement or consummate the provisions of the Plan, and to ensure that Distributions to Holders of Allowed Class 14 Claims are accomplished pursuant to the provisions of the Plan. The City and its Related Entities in implementing and enforcing the terms of this Order and the Plan are entitled to all of the privileges and protections

of the Plan, including the exculpation set forth in Art. III. D.6., in connection therewith.

9.     This Order does not modify the Plan or the Confirmation Order. Each and every term and condition in the Plan and Confirmation Order, including without limitation, those with respect to the Allowed Claims and Distributions, remains in full force and effect.

10.     This Court retains jurisdiction over the interpretation and enforcement of this Order.

**EXHIBIT 2**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**NOTICE OF OPPORTUNITY TO OBJECT TO CITY OF DETROIT'S MOTION TO IMPLEMENT DISTRIBUTIONS OF B NOTES TO HOLDERS OF ALLOWED CLASS 14 CLAIMS UNDER THE CITY'S CONFIRMED PLAN OF ADJUSTMENT**

The City of Detroit has filed the foregoing *Motion to Implement Distributions of B Notes to Holders of Allowed Class 14 Claims Under the City's Confirmed Plan of Adjustment.*

**Your rights may be affected.** **You should read these papers carefully and discuss them with your attorney.**

If you do not want the Court to enter an Order granting the *City Of Detroit's Motion to Implement Distributions of B Notes to Holders of Allowed Class 14 Claims Under the City's Confirmed Plan of Adjustment,* within 14 days, you or your attorney must:

33923336.20\022765-00213

1.    File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above.  You must also mail a copy to:

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2.   If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
       Marc N. Swanson (P71149)
       150 West Jefferson, Suite 2500
       Detroit, Michigan 48226
       Telephone: (313) 496-7591
       Facsimile: (313) 496-8451
       swansonm@millercanfield.com

Dated:  September 17, 2019

33923336.20\022765-00213

# EXHIBIT 3

None

# EXHIBIT 4

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 17, 2019, he filed the foregoing *City Of Detroit's Motion to Implement Distributions of B Notes to Holders of Allowed Class 14 Claims Under the City's Confirmed Plan of Adjustment* ("Motion"), using the Court's electronic filing system, which sends notice of the filing to all ECF participants registered to receive notice in this case. The City has engaged a Noticing Agent, which will serve the Motion by first-class mail on all known Class 14 Claimants and on all parties requesting notices listed on the Master Service List, and file a subsequent Proof of Service after it has performed the service.

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

September 17, 2019

## **EXHIBIT 5**

None

# **EXHIBIT 6-1**

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

|  |  |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## NOTICE REGARDING DISTRIBUTIONS TO CLASS 14 CLAIMANTS

*PLEASE READ THIS NOTICE CAREFULLY. YOU MAY BE ENTITLED TO A DISTRIBUTION BUT YOU NEED TO COMPLETE AND RETURN THE FORMS IDENTIFIED BELOW ON OR BEFORE _____, 2020, OR YOUR POTENTIAL DISTRIBUTIONS WILL BE FOREVER CANCELLED AND IRREVOCABLY REVERT TO THE CITY OF DETROIT.*

**PLEASE TAKE NOTICE THAT** the *Eighth Amended Plan for the Adjustment of Debts* ("Plan") filed by the City of Detroit ("City") went into effect on December 10, 2014 ("Effective Date"). The Plan is available online, free of charge at http://www.kccllc.net/Detroit . All capitalized terms used but not defined in this *Notice Regarding Distributions to Class 14 Claimants* ("Notice") have the meanings ascribed to those terms in the Plan. The summaries of the Plan contained in this Notice are qualified by reference to the Plan itself. In the event of any inconsistency or conflict between the terms of this Notice and the Plan, the terms of the Plan will control.

**PLEASE TAKE FURTHER NOTICE THAT** you filed or otherwise asserted a Claim against the City that may be treated under the Plan as a Class 14 Other Unsecured Claim ("Class 14").

**PLEASE TAKE FURTHER NOTICE THAT** this Notice is being sent to Holders of Allowed Claims and Holders of Disputed Claims in Class 14. However, only Holders of Allowed Claims in Class 14 will receive a Distribution under the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** in accordance with the Plan, each Holder of an Allowed Class 14 Claim is to receive a Pro Rata Share of New B Notes and certain related income ("Related Income"). Additional information regarding the New B Notes and Related Income is attached to this Notice as **Exhibit A.**

**PLEASE TAKE FURTHER NOTICE THAT** to receive a Distribution of a Pro Rata share of New B Notes and Related Income **you must complete and return (a) the Brokerage Account Form attached as Exhibit B and (b) the W-9 Form attached as Exhibit C (or a W-8 Form if the W-9 Form is not applicable to you)**. Please note that the W-9 Form is for use by

- 1 -

U.S. citizens and other U.S. persons (as defined in the W-9 Form). If you are not a U.S. citizen or other U.S. person, please obtain and complete a W-8 Form (together with the W-9 Form, the "Tax Form").  The deadline to return the Brokerage Account Form and the Tax Form is_____.You may use the prepaid, preaddressed envelope included with this Notice to return the forms.  You must mail the completed forms to the following address:

City of Detroit Claims Processing Center
c/o KCC
222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245

You may not email or fax the forms.   You should read the tax form instructions carefully, **and use the attached version only**.  You must provide a social security number *or* employer identification number, but *not both*; and you must sign the certification in original signature (no electronic signatures).

PLEASE TAKE FURTHER NOTICE that the name of the creditor on your proof of claim must match the name and signature on the Brokerage Account Form and the name on the Tax Form.  If the names do not match, the City may reject the forms and, if the forms are rejected, you will not receive a Distribution.

PLEASE TAKE FURTHER NOTICE THAT if you do not currently have a brokerage account, please refer to **Exhibit D,** which contains (i) information regarding FINRA's "BrokerCheck®" website, which contains a national directory of registered broker-dealers, (ii) a list of several registered broker-dealers provided by the National Association of Securities Professionals, which focuses on minority-owned broker-dealers and (iii) links to educational resources and information regarding the process of opening a brokerage account.  **Exhibit D** is being provided for informational purposes only.  The City makes no representation as to the registration status, quality, cost, capabilities or performance of any broker-dealer listed therein or accessed using the resources provided therein, or of any broker-dealer listed on FINRA's BrokerCheck® website, and the inclusion or exclusion of any broker-dealer from the resources at **Exhibit D** is not a recommendation of or against such broker-dealer.

PLEASE TAKE FURTHER NOTICE THAT <u>if you fail to return both a completed</u> <u>Tax Form and a Brokerage Account Form on or before_____, 2020 (a) all</u> <u>Distributions of Related Income now owing or which may hereafter come due to you shall</u> <u>irrevocably revert to the City and any Claim in respect of such Distribution or</u> <u>Distributions shall be released and forever barred from assertion against the City and its</u> <u>property and (b) the City is authorized and directed to cancel any B Notes held for</u> <u>Distribution to you, and those B Notes shall be of no further force or effect.</u>

PLEASE TAKE FURTHER NOTICE that you have the sole and exclusive responsibility for the satisfaction and payment of any Tax imposed on you on account of any Distribution, including income, withholding and other Tax obligations.  You are urged to consult with your tax advisor about possible tax consequences.

PLEASE TAKE FURTHER NOTICE that the attorneys for the City of Detroit cannot provide you with legal or tax advice. You should contact your own attorney or tax advisor if you have any questions. If your legal counsel has questions, he or she may contact paralegal, Robin Wysocki, at 313.496.7631. Please do not contact the Bankruptcy Court.

Dated: _____, 2019

ATTORNEYS FOR THE CITY OF DETROIT

By: /s/ Marc N. Swanson
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

- 3 -

**EXHIBIT A**

**Additional Information Regarding New B Notes and Related Income**

<u>Class 14 B Notes</u>

Under the Plan, $20,596,747 of the City of Detroit's Financial Recovery Bonds, Series 2014B-1 ("<u>Series 2014B-1 Notes</u>") and Series 2014B-2 ("<u>Series 2014B-2 Notes</u>" and together with the Series 2014B-1 Notes, the "<u>B Notes</u>") (in the respective principal amounts of $20,376,922 and $219,825) were issued and allocated to Class 14 (the portion of the B Notes allocated to Class 14 is referred to as the "<u>Class 14 B Notes</u>") on the Effective Date, to be Distributed to Holders of Allowed Class 14 Claims. The total amount of B Notes issued by the City on the Effective Date to satisfy the claims of various creditors was $631,964,145, of which $434,311,789 remains outstanding. As stated above, only $20,596,747 of the B Notes are available to be distributed to Holders of Allowed Class 14 Claims.

Under the terms of the Plan, the B Notes were issued in "book entry" form through The Depository Trust Company. While the delivery of the B Notes in registered, book entry form enables the Holder (which will be you if B Notes are distributed to you) to sell the Class 14 B Notes, it also requires Distributions and any trades to be executed through a broker/dealer.

**The City makes no representation regarding the market value of the B Notes. You should consult with a financial advisor in connection with any decision whether to hold or sell any B Notes and the price at which to sell such B Notes, should you decide to do so.**

<u>Disbursing Agent Under the Plan</u>

Since the Effective Date, the Class 14 B Notes have been held in escrow by U.S. Bank National Association as Disbursing Agent under the Plan for the benefit of the Holders of Allowed Class 14 Claims. The Disbursing Agent also holds the interest payments made by the City on the Class 14 B Notes since the Effective Date. The interest payments received by the Disbursing Agent have been invested by the Disbursing Agent for the benefit of the Holders of Allowed Class 14 Claims pending Distributions to the Holders of Allowed Class 14 Claims. In order to permit Distributions of Class 14 B Notes and related interest payments and investment income (the related interest payments and investment income are referred to as "<u>Related Income</u>") before all Class 14 Claims have either been Allowed or Disallowed, the Plan contemplates the possibility of making interim, partial Distributions of Class 14 B Notes and Related Income to the Holders of Allowed Class 14 Claims as and when more accurate information becomes available regarding the projected total aggregate dollar amount of all Allowed Class 14 Claims, in amounts that will not exceed each such Holder's Pro Rata share of Class 14 B Notes and Related Income.

**Disclosure Documents**

On the Effective Date, the City posted a Disclosure Statement describing terms of the B Notes, and providing various financial and demographic information regarding the City, together with a Continuing Disclosure Undertaking to periodically update certain financial and operating information regarding the City while the B Notes remain outstanding. The Disclosure Statement and subsequent filings pursuant to the Continuing Disclosure Undertaking can be found at: https://emma.msrb.org/Security/Details/A2B79DC529DA39AA75FAEE3644EDD7690

**Interest Rates**

The B Notes bear interest at the rate of 4% per annum until April 1, 2034 and thereafter at the rate of 6% per annum until maturity or redemption. Interest is payable on April 1 and October 1 each year calculated on the basis of twelve 30-day months and a 360-day year. Interest on the B Notes is not exempt from federal income tax.

**Maturity, Amortization and Redemption Provisions**

The B Notes are stated to mature on April 1, 2044, and are subject to redemption in whole or in part prior to maturity at the option of the City on any date on 30 days' prior written notice, at par and accrued interest to the redemption date. The B Notes are also subject to mandatory sinking fund redemption prior to maturity, in part, by lot, on the redemption dates and in the principal amounts set forth below, at a redemption price equal to the principal amount thereof, without premium, together with accrued interest thereon to the date fixed for redemption.

On December 13, 2018 the City purchased $192,227,454 of Series 2014B-1 Notes and $5,424,902 of Series 2014B-2 Notes through a tender offering program. The City applied the amounts purchased as a reduction of principal against all or a portion of mandatory sinking fund redemption requirements which would otherwise have occurred in 2025 through 2033.

The table below reflects the mandatory sinking fund redemption requirements for the B Notes which remain outstanding as of the date hereof in the aggregate principal amount of $434,311,789.

### Mandatory Sinking Fund Redemption Requirements

| April 1 of the Year | Principal Amount of Series 2014B-1 Notes | Principal Amount of Series 2014B-2 Notes |
|---|---|---|
| 2025 | $ 2,411,066 | $ 0 |
| 2026 | 2,256,986 | 0 |
| 2027 | 2,128,183 | 0 |
| 2028 | 1,977,770 | 0 |
| 2029 | 1,807,988 | 0 |
| 2030 | 1,616,461 | 0 |
| 2031 | 23,874,105 | 0 |
| 2032 | 24,095,750 | 736,738 |
| 2033 | 25,056,264 | 770,205 |
| 2034 | 30,828,003 | 770,205 |
| 2035 | 30,828,003 | 770,205 |
| 2036 | 30,828,003 | 770,205 |
| 2037 | 30,828,003 | 770,205 |
| 2038 | 30,828,003 | 770,205 |
| 2039 | 30,828,003 | 770,205 |
| 2040 | 30,828,003 | 770,205 |
| 2041 | 30,828,003 | 770,205 |
| 2042 | 30,828,003 | 770,205 |
| 2043 | 30,828,003 | 770,205 |
| 2044[*] | 30,827,990 | 770,203 |
| | $ 424,332,593 | $ 9,979,196 |

*Maturity

**EXHIBIT B**

BROKERAGE ACCOUNT AND DIRECTION FORM

Name of Creditor as set forth on proof of claim form:

_____

The above-named Creditor hereby designates the broker-dealer named below to receive the Creditor's Distribution of B-Notes in accordance with the *Notice Regarding Status of New B Notes to be Distributed to the Holders of Allowed Class 14 Claims* dated _____, 20__ (the "Notice"). The Creditor acknowledges that neither the City nor the Disbursing Agent is obligated to confirm the accuracy of the information provided in this Brokerage Account and Direction Form, and that any Distribution of New B Notes is subject in all respects to the terms and conditions of the Notice, Plan and Order of the Bankruptcy Court.

| **Broker-Dealer Information** (to be provided by broker/dealer) | |
|---|---|
| DTC Participant/Broker Name | |
| DTC Participant Broker # | |
| DTC Participant Contact Information (Name, Phone #) | |
| For Further Credit To | |
| FFC A/C # | |

Signature of Creditor:

_____

Date:_____

By **no later than** _____, 20___, you must mail this notice to the City of Detroit at the following address:

City of Detroit Claims Processing Center
c/o KCC
222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245

- B-1 -

**Exhibit C**

W-9 Form

34084288.10\022765-00213

| Form **W-9** (Rev. October 2018) Department of the Treasury Internal Revenue Service | **Request for Taxpayer Identification Number and Certification** ▶ Go to *www.irs.gov/FormW9* for instructions and the latest information. | **Give Form to the requester. Do not send it to the IRS.** |
|---|---|---|

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

**2** Business name/disregarded entity name, if different from above

<table>
<tr><td rowspan="6"><strong>Print or type.</strong><br>See <strong>Specific Instructions</strong> on page 3.</td><td colspan="2"><strong>3</strong> Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only <strong>one</strong> of the following seven boxes.</td><td><strong>4</strong> Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):</td></tr>
<tr><td>☐ Individual/sole proprietor or single-member LLC</td><td>☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate</td><td>Exempt payee code (if any) _____</td></tr>
<tr><td colspan="2">☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ ____</td><td rowspan="2">Exemption from FATCA reporting code (if any) _____</td></tr>
<tr><td colspan="2"><strong>Note:</strong> Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is <strong>not</strong> disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.</td></tr>
<tr><td colspan="2">☐ Other (see instructions) ▶</td><td>(Applies to accounts maintained outside the U.S.)</td></tr>
<tr><td colspan="2"><strong>5</strong> Address (number, street, and apt. or suite no.) See instructions.</td><td rowspan="2">Requester's name and address (optional)</td></tr>
<tr><td></td><td colspan="2"><strong>6</strong> City, state, and ZIP code</td></tr>
</table>

**7** List account number(s) here (optional)

---

### Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

**Social security number**

| | | | – | | | – | | | | |
|---|---|---|---|---|---|---|---|---|---|---|

**or**

**Employer identification number**

| | | – | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|

---

### Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

| **Sign Here** | Signature of U.S. person ▶ | Date ▶ |
|---|---|---|

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

### Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding, *later.*

Cat. No. 10231X

Form **W-9** (Rev. 10-2018)

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting*, later, for further information.

**Note:** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien;

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;

• An estate (other than a foreign estate); or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States.

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items.

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 24% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the instructions for Part II for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See *Exempt payee code*, later, and the separate Instructions for the Requester of Form W-9 for more information.

Also see *Special rules for partnerships*, earlier.

## What is FATCA Reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See *Exemption from FATCA reporting code*, later, and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account; for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

# Specific Instructions

## Line 1

You must enter one of the following on this line; **do not** leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account (other than an account maintained by a foreign financial institution (FFI)), list first, and then circle, the name of the person or entity whose number you entered in Part I of Form W-9. If you are providing Form W-9 to an FFI to document a joint account, each holder of the account that is a U.S. person must provide a Form W-9.

**a. Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

**Note: ITIN applicant:** Enter your individual name as it was entered on your Form W-7 application, line 1a. This should also be the same as the name you entered on the Form 1040/1040A/1040EZ you filed with your application.

**b. Sole proprietor or single-member LLC.** Enter your individual name as shown on your 1040/1040A/1040EZ on line 1. You may enter your business, trade, or "doing business as" (DBA) name on line 2.

**c. Partnership, LLC that is not a single-member LLC, C corporation, or S corporation.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

**d. Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on line 2.

**e. Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulations section 301.7701–2(c)(2)(iii). Enter the owner's name on line 1. The name of the entity entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2, "Business name/disregarded entity name." If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

## Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, you may enter it on line 2.

## Line 3

Check the appropriate box on line 3 for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box on line 3.

| IF the entity/person on line 1 is a(n) . . . | THEN check the box for . . . |
|---|---|
| • Corporation | Corporation |
| • Individual<br>• Sole proprietorship, or<br>• Single-member limited liability company (LLC) owned by an individual and disregarded for U.S. federal tax purposes. | Individual/sole proprietor or single-member LLC |
| • LLC treated as a partnership for U.S. federal tax purposes,<br>• LLC that has filed Form 8832 or 2553 to be taxed as a corporation, or<br>• LLC that is disregarded as an entity separate from its owner but the owner is another LLC that is not disregarded for U.S. federal tax purposes. | Limited liability company and enter the appropriate tax classification. (P= Partnership; C= C corporation; or S= S corporation) |
| • Partnership | Partnership |
| • Trust/estate | Trust/estate |

## Line 4, Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space in line 4 any code(s) that may apply to you.

**Exempt payee code.**

• Generally, individuals (including sole proprietors) are not exempt from backup withholding.

• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.

• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space in line 4.

1—An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2—The United States or any of its agencies or instrumentalities

3—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

4—A foreign government or any of its political subdivisions, agencies, or instrumentalities

5—A corporation

6—A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or possession

7—A futures commission merchant registered with the Commodity Futures Trading Commission

8—A real estate investment trust

9—An entity registered at all times during the tax year under the Investment Company Act of 1940

10—A common trust fund operated by a bank under section 584(a)

11—A financial institution

12—A middleman known in the investment community as a nominee or custodian

13—A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for ... | THEN the payment is exempt for ... |
|---|---|
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 5[2] |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) written or printed on the line for a FATCA exemption code.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B—The United States or any of its agencies or instrumentalities

C—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i)

E—A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i)

F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G—A real estate investment trust

H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I—A common trust fund as defined in section 584(a)

J—A bank as defined in section 581

K—A broker

L—A trust exempt from tax under section 664 or described in section 4947(a)(1)

M—A tax exempt trust under a section 403(b) plan or section 457(g) plan

**Note:** You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

### Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns. If this address differs from the one the requester already has on file, write NEW at the top. If a new address is provided, there is still a chance the old address will be used until the payor changes your address in their records.

### Line 6

Enter your city, state, and ZIP code.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN.

If you are a single-member LLC that is disregarded as an entity separate from its owner, enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note:** See *What Name and Number To Give the Requester*, later, for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at *www.SSA.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/Businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. Go to *www.irs.gov/Forms* to view, download, or print Form W-7 and/or Form SS-4. Or, you can go to *www.irs.gov/OrderForms* to place an order and have Form W-7 and/or SS-4 mailed to you within 10 business days.

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note:** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if item 1, 4, or 5 below indicates otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see *Exempt payee code*, earlier.

**Signature requirements.** Complete the certification as indicated in items 1 through 5 below.

- C-5 -

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), ABLE accounts (under section 529A), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) other than an account maintained by an FFI | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 3. Two or more U.S. persons (joint account maintained by an FFI) | Each holder of the account |
| 4. Custodial account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 5. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee[1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner[1] |
| 6. Sole proprietorship or disregarded entity owned by an individual | The owner[3] |
| 7. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulations section 1.671-4(b)(2)(i)(A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 8. Disregarded entity not owned by an individual | The owner |
| 9. A valid trust, estate, or pension trust | Legal entity[4] |
| 10. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 11. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 12. Partnership or multi-member LLC | The partnership |
| 13. A broker or registered nominee | The broker or nominee |

| For this type of account: | Give name and EIN of: |
|---|---|
| 14. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 15. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulations section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or DBA name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships*, earlier.

**\*Note:** The grantor also must provide a Form W-9 to trustee of trust.

**Note:** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records From Identity Theft

Identity theft occurs when someone uses your personal information such as your name, SSN, or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Pub. 5027, Identity Theft Information for Taxpayers.

Victims of identity theft who are experiencing economic harm or a systemic problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at *spam@uce.gov* or report them at *www.ftc.gov/complaint*. You can contact the FTC at *www.ftc.gov/idtheft* or 877-IDTHEFT (877-438-4338). If you have been the victim of identity theft, see *www.IdentityTheft.gov* and Pub. 5027.

Visit *www.irs.gov/IdentityTheft* to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

- C-7 -

## EXHIBIT D

### BROKER-DEALER INFORMATIONAL RESOURCES

*This Exhibit D is being provided for informational purposes only. The City makes no representation as to the registration status, quality, cost, capabilities or performance of any broker-dealer listed therein or accessed using the resources provided therein, or of any broker-dealer listed on FINRA's BrokerCheck® website, and the inclusion or exclusion of any broker-dealer from the resources at herein is not a recommendation of or against such broker-dealer.*

FINRA BrokerCheck®

If you need to find a brokerage firm or broker, the Financial Industry Regulatory Authority (FINRA) maintains a free tool called BrokerCheck® at https://brokercheck.finra.org/. You may use this tool to perform searches (e.g., you may search for brokerage firms in your area by clicking on the tab called "FIRM", entering your city, state or zip code, clicking on the SEARCH button and then reviewing entries that indicate the firm is a "Brokerage Firm *Regulated by FINRA*"). You may then review report summaries on brokerage firms or brokers. You then have the option to download, print, or click through a complete report about a firm or broker's background. The BrokerCheck® report reflects information that FINRA requires brokers, brokerage firms, and regulators to report as part of the securities industry's registration and licensing process. Answers to frequently asked questions regarding BrokerCheck® are available at https://www.finra.org/investors/brokercheck-faq

Broker-Dealers Provided by National Association of Securities Professionals

Kathleen Colin
Oppenheimer & Co.
313-886-1200
kathleen.colin@opco.com

Fred Prime
Loop Capital
fred.prime@loopcapital.com

Darnell Jackson
Morgan Stanley
248-258-1788
darnell.jackson@morganstanley.com

Thomas Seabron
Morgan Stanley
248-848-8066
thomas.h.seabron@morganstanley.com

Charles Sprinkle
MBS Securities
800-967-9045
csprinkle@mbssecurities.com

Aubrey Lee Jr.
Merrill Lynch Wealth Management
248-488-5414
aubrey_leejr@ml.com

James Haddon
Ramirez Asset Management
212-248-0531
james.haddon@ramirezam.com

- D-1 -

Links to Educational/Informational Resources

- *Smartasset*- "How to Open a Brokerage Account"
  https://smartasset.com/investing/how-to-open-a-brokerage-account

- *Investopedia*- "How to Open an Online Brokerage Account"
  https://www.investopedia.com/how-to-open-an-online-brokerage-account-4588908

- *Investopedia*- "Best Brokers for Beginners 2019"
  https://www.investopedia.com/best-brokers-for-beginners-4587873

**EXHIBIT 6-2**

33923336.20\022765-00213

**EXHIBIT I.A.246**

PRINCIPAL TERMS OF NEW B NOTES

# NEW B NOTES
## SUMMARY OF PRINCIPAL TERMS[1]

On the Effective Date, the City shall issue the New B Notes and distribute them as set forth in the Plan. The definitive documentation governing the New B Notes shall provide generally for the following terms:

| | |
|---|---|
| Obligation | The City's obligations with respect to the New B Notes shall be a general and unsecured obligation of the City. |
| Initial Principal Amount | $632.0 million. |
| Interest Rate | 4.0% for the first 20 years; 6.0% for years 21 through 30. |
| Maturity | 30 years. |
| Amortization | Interest only for 10 years; amortization in 20 equal annual installments beginning on the interest payment date nearest to the 11th anniversary from issuance. |
| Disclosure | The City will provide a continuing disclosure undertaking under 17 C.F.R. § 240.15c2-12 in connection with the delivery of the New B Notes. |

---

[1] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan.

**EXHIBIT 6-3**

33923336.20\022765-00213

# CLASS 14 DISBURSING AGENT AGREEMENT

**THIS DISBURSING AGENT AGREEMENT** (this "Agreement") dated as of December 10, 2014, is made by and between the City of Detroit, County of Wayne, State of Michigan (the "City") and U.S. Bank National Association, as escrow agent and disbursing agent hereunder (the "Agent," and together with the City, the "Parties"). Capitalized terms used in this Agreement without definitions shall have the meanings given to them in the Plan of Adjustment and the Order.

WHEREAS, on March 1, 2013, the Governor (the "Governor") of the State of Michigan (the "State") determined that a financial emergency existed within the City pursuant to the Local Government Fiscal Responsibility Act, Act 72, Public Acts of Michigan, 1990, as amended ("Act 72"); and

WHEREAS, on March 14, 2013, the Governor confirmed that a financial emergency existed within the City and, pursuant to Act 72, assigned to the Local Emergency Financial Assistance Loan Board established pursuant to the Emergency Municipal Loan Act, Act 243 Public Acts of Michigan, 1980, as amended (the "Board") the responsibility for managing the financial emergency; and

WHEREAS, on March 14, 2013, pursuant to Act 72, the Board appointed Kevyn D. Orr as Emergency Financial Manager for the City; and

WHEREAS, by operation of law the financial emergency continues to exist within the City pursuant to the Local Financial Stability and Choice Act, Act 436, Public Acts of Michigan, 2012 ("Act 436") and the Emergency Financial Manager continued in the capacity of the Emergency Manager for the City under Act 436 until the Effective Date; and

WHEREAS, on the Petition Date, in accordance with Act 436 and the approval of the Governor, the Emergency Manager filed on behalf of the City a petition for relief pursuant to chapter 9 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"); and

WHEREAS, on October 22, 2014, the City filed the Eighth Amended Plan of Adjustment on behalf of the City to provide for the adjustment of the debts of the City pursuant to and in accordance with Chapter 9 of the Bankruptcy Code; and

WHEREAS, the Plan of Adjustment provides, among other things, for the satisfaction of certain claims of unsecured creditors as set out in the Plan of Adjustment in exchange for the receipt of Pro Rata shares of New B Notes, also known as Financial Recovery Bonds, Series 2014B (the "2014B Bonds") and certain distributions thereon; and

WHEREAS, pursuant to the Plan of Adjustment, on August 11, 2014, the Emergency Manager issued his Bond Order No. 5 (the "Order") to authorize the issuance of the 2014B Bonds in the form of Financial Recovery Bonds in one or more series in an aggregate principal amount of not to exceed Six Hundred Thirty-Two Million Dollars ($632,000,000) under Section

36a of the Home Rule City Act, Act 279, Public Acts of Michigan, 1909, as amended ("Act 279"); and

WHEREAS, on November 12, 2014, the Bankruptcy Court entered an order confirming the Plan of Adjustment; and

WHEREAS, the City has established the Effective Date of the Plan of Adjustment; and

WHEREAS, pursuant to the terms of the Order, an Authorized Officer of the City has made further determinations and decisions regarding the 2014B Bonds, and has memorialized such determinations in a supplemental order (the "Supplemental Order"); and

WHEREAS, pursuant to the Supplemental Order, the 2014B Bonds have been subdivided into two series: the Series 2014B(1) Bonds and the Series 2014B(2) Bonds; and

WHEREAS, the City has executed Series 2014B Bonds Documents and issued the Series 2014B(1) Bonds and the Series 2014B(2) Bonds, in the forms of the Bonds authorized under Section 36a of Act 279, the Order, and the Supplemental Order, and has distributed, or will distribute, Pro Rata shares of the Series 2014B(1) Bonds and Series 2014B(2) Bonds to the holders of the particular unsecured claims, as provided in the Plan of Adjustment; and

WHEREAS, pursuant to the Plan of Adjustment, Section 404 of the Order, and Section 404 of the Supplemental Order, the Agent holds in escrow the portion of the Series 2014B(1) Bonds and the Series 2014B(2) Bonds allocated to the Holders of Allowed Other Unsecured Claims in Class 14 under the Plan of Adjustment (the "Class 14 Claims") on account of such Class 14 Claims, and shall disburse a Pro Rata Share of the 2014B Bonds to the Holders of such Claims as provided in the Plan of Adjustment; and

WHEREAS, the City has engaged the services of the Agent to act on its behalf in providing escrow and disbursing agent services for the portions of the Series 2014B(1) Bonds and the Series 2014B(2) Bonds allocated to satisfy the Class 14 Claims; and

WHEREAS, the Agent has agreed to act as the City's escrow agent and disbursing agent, as described in Section V.A. of the Plan of Adjustment, of the portions of the Series 2014B(1) Bonds and the Series 2014B(2) Bonds allocated to satisfy the Class 14 Claims upon the terms and conditions set forth herein.

NOW, THEREFORE, the parties hereto agree as follows:

1. <u>General Services to be Provided by the Agent</u>. The Agent shall:

(a) Serve as Agent for the City, on the terms set forth in this Agreement, with respect to the Series 2014B(1) Bonds and the Series 2014B(2) Bonds allocated to satisfy the Class 14 Claims pursuant to the Plan of Adjustment.

(b) Open, maintain and hold two accounts, including subaccounts, as necessary, in the name of the City designated (i) the "Series 2014B(1) Disbursing Account," into which

2

the Agent shall deposit the Series 2014B(1) Bonds in the amount of $20,376,922; and (ii) the "Series 2014B(2) Disbursing Account," into which the Agent shall deposit $219,825 of Series 2014B(2) Bonds. The Agent shall hold the Series 2014B(1) Bonds allocable to the Class 14 Claims and the Series 2014B(2) Bonds allocable to the Class 14 Claims, and all additional cash, cash equivalents and securities (and all certificates and instruments representing the same) deposited with, or otherwise delivered to, the Agent on account of the Series 2014B(1) Bonds allocable to the Class 14 Claims and the Series 2014B(2) Bonds allocable to the Class 14 Claims, and all interest, investment income, cash and other proceeds from time to time received in respect of any or all of the foregoing (together, all such 2014B Bonds and proceeds related thereto, the "Disbursable Assets"). The City shall deliver written notice to the Agent in advance of each deposit or delivery of the Disbursable Assets.

(c)  Invest all cash held in the Series 2014B(1) Disbursing Account and the Series 2014B(2) Disbursing Account in the Permitted Investments, as hereinafter defined, or as otherwise directed by the City in writing.  The Agent shall have no responsibility or liability for any loss that may result from any investment or sale of investment made consistent with this Agreement.  The Agent is hereby authorized, in making or disposing of any investment permitted by this Agreement, to deal with itself (in its individual capacity) or with any one or more of its affiliates, whether it or any such affiliate is acting as agent of the Agent or for any third person or dealing as principal for its own account. The City acknowledges that the Agent is not providing investment supervision, recommendations, or advice.

> "Permitted Investments" means and includes the following as consistent with Act 20, Public Acts of Michigan, 1943, as amended, as then in effect:  mutual funds registered under the investment company act of 1940, title I of chapter 868, 54 Stat. 789, 15 USC 80a-1 to 80a-3 and 80a-4 to 80a-64, that have been rated at the time of purchase within the highest classification established by not less than two standard rating services and so long as the portfolio of such mutual funds is limited to bonds and other obligations on which the full and timely payment of principal and interest is unconditionally guaranteed by the full faith and credit of the United States.

(d)  Disburse, as applicable, cash to each Holder of an Allowed Class 14 Claim and securities to the applicable DTC Participant, as defined under the rules of the Depository Trust Company, as the securities depository of the Series 2014B Bonds, for each Holder of an Allowed Class 14 Claim from the Series 2014B(1) Disbursing Account and the Series 2014B(2) Disbursing Account pursuant to Section 2(d) hereof.

(e)  Present to the Paying Agent for payment all maturing securities or any securities called for redemption in the Series 2014B(1) Disbursing Account and the Series 2014B(2) Disbursing Account and collect proceeds therefrom.

2.  Satisfaction of Claims.

3

(a)    On the Effective Date, the City shall issue the 2014B Bonds as provided in the Plan of Adjustment on account of the Class 14 Claims and other claimants.  An Authorized Officer of the City shall arrange for delivery of the portion of the Series 2014B(1) Bonds and Series 2014B(2) Bonds allocated to the Class 14 Claims to the Agent to satisfy the Class 14 Claims, as provided in the Plan of Adjustment and the Supplemental Order, and as set forth in Section 2(d) hereof.

(b)    On the Effective Date, the Agent shall receive:

(i)    $20,376,922 of Series 2014B(1) Bonds, to be distributed among the Holders of Allowed Class 14 Claims, pursuant to Sections 2(d)(i)(A) and 2(d)(ii)(A) hereof; and

(ii)    $219,825 of Series 2014B(2) Bonds, to be distributed among the Holders of Allowed Claims in Class 14 Claims, pursuant to Sections 2(d)(ii)(A) and 2(d)(ii)(B) hereof.

(c)    The City will periodically provide the Agent with information, in substantially similar form to the attached Exhibit C (which form may be updated or modified from time to time as necessary or appropriate), related to the Class 14 Claims, including, but not limited to, the identity of the Holders thereof; the allowance or disallowance of individual Class 14 Claims; disbursement addresses; and direction related to Interim Disbursements (as herein defined), including the dates of Interim Disbursements, the identity of the Holders of Allowed Class 14 Claims to receive Interim Disbursements (with the W-8 or W-9 form, as appropriate and if required, attached if the Parties agree that the City rather than the Agent will collect these forms under Section 22 hereof), the amounts of the Allowed Class 14 Claims the disbursements are being made on account of, the address of such Holders (if changed), and the face amount of any Disputed Class 14 Claims or other reserves.  For disbursements of Series 2014B Bonds, the information shall also include CUSIPs, participant instructions (number and identifying information), the distribution date, and authorization to distribute the Disbursable Assets.  Each Party agrees to provide such other information from time to time as the other Party may reasonably request in order to effectuate disbursements hereunder.

(d)    Disbursements:

(i)    Interim Disbursements:  Upon receipt of information pursuant to Section 2(c) hereof and as directed by the City, the Agent shall periodically disburse from the respective Disbursing Accounts Pro Rata shares of the Disbursable Assets to the Holders of Allowed Class 14 Claims (the "Interim Disbursements") until the Class 14 Determination Date (as herein defined).  This direction shall identify the nature and specific amounts of Disbursable Assets to be disbursed and the specific Holders of an Allowed Class 14 Claim to receive such disbursements.  Upon receipt of such direction, the Agent shall disburse:

4

(A) The applicable Pro Rata share of the Disbursable Assets attributable to the 2014B(1) Bonds to each identified Holder of an Allowed Class 14 Claim, less any amounts previously distributed; and

(B) The applicable Pro Rata share of Disbursable Assets attributable to the 2014B(2) Bonds to each identified Holder of an Allowed Class 14 Claim, less any amounts previously distributed.

(ii) Final Disbursements: The Agent shall hold the remaining Disbursable Assets in the respective Disbursing Accounts, until it has been notified by the City that all Class 14 Claims are liquidated, non-contingent, and Allowed (the "Class 14 Determination Date"). On the Class 14 Determination Date, the City will notify the Agent of the final accounting of the Class 14 Claims, shall direct the Agent to disburse the remaining Pro Rata Shares to the Class 14 claimants, and shall provide the Agent the notice required by Section V.F. of the Plan of Adjustment. Upon receipt of such direction and notice, the Agent shall cause the notice to be filed with the Bankruptcy Court, and thereafter disburse:

(A) A Pro Rata share of the Disbursable Assets attributable to the 2014B(1) Bonds to each Holder of an Allowed Class 14 Claim, less any amounts previously distributed; and

(B) A Pro Rata share of Disbursable Assets attributable to the 2014B(2) Bonds to each Holder of an Allowed Class 14 Claim, less any amounts previously distributed.

(e) The Agent shall not: (i) make any disbursements of Series 2014B Bonds on account of any Class 14 Claim if the amount to be disbursed to the specific holder of such claim has an economic value of less than $25.00; and (ii) make any fractional disbursements of Series 2014B Bonds in denominations other than multiples of $1.00. Where a fractional portion of a Series 2014B Bond otherwise would be called for under the Plan of Adjustment, the actual disbursement shall reflect a rounding down to the nearest whole Series 2014B Bond in an authorized denomination. Upon the Final Disbursement, the Agent shall disburse any Disbursable Assets withheld pursuant to this provision as directed by the City.

(f) If the Agent receives notice from the City pursuant to Section 2(c) hereof that a Disputed Class 14 Claim has become an Allowed Class 14 Claim, the Agent shall make an initial disbursement pursuant to Section 2(d) hereof to the holder of such Allowed Class 14 Claim on the first disbursement date that is at least 30 days after the date on which a Disputed Claim becomes an Allowed Claim. Such initial disbursement shall include all previous amounts that would have been disbursed to such holder on account of such Allowed Class 14 Claim had such claim been Allowed as of the Effective Date. All subsequent disbursements shall continue as if such previously Disputed Claim had been an Allowed Claim on the Effective Date.

5

3.     <u>Powers of the Agent</u>. The Agent is authorized and empowered to:

(a) Hold 2014B Bonds and cash in the Agent's name for the benefit of the Holders of Allowed Class 14 Claims, until this Agreement is terminated as provided in Section 7 or the Agent resigns as provided in Section 11(g).

(b) Administer and disburse the Disbursable Assets consistent with this Agreement.

(c) Employ agents other than its employees and delegate to them such ministerial and other nondiscretionary duties as it sees fit and to rely upon information furnished by such agents.

(d) Make, execute, acknowledge and deliver any and all documents of transfer and conveyance and other instruments that may be necessary or appropriate to carry out its duties and powers.

4.     <u>Reports</u>. The Agent shall furnish to the City a monthly statement of the Series 2014B(1) Disbursing Account and the Series 2014B(2) Disbursing Account reflecting all activity during the month, and an inventory of the Disbursable Assets including their market value as of month end. The Agent will furnish such other reports as the City may reasonably request, including reports to the City's accountants or examiners, but no more frequently than monthly, or as otherwise ordered by the Bankruptcy Court.

5.     <u>Fees</u>. The Agent shall receive compensation from the City as set forth in Exhibit A attached to this Agreement, as amended from time to time by the Parties. The Agent shall also be reimbursed by the City for its reasonable and documented out-of pocket expenses during the performance of the Agent's duties under this Agreement.

6.     <u>Authorized Persons</u>. The City shall furnish a list to the Agent of persons authorized to act on behalf of the City for the purpose of transmitting instructions to the Agent concerning the Disbursable Assets in the Series 2014B(1) Disbursing Account and the Series 2014B(2) Disbursing Account. An initial list is attached hereto within Exhibit B. The Agent shall have no duty to confirm whether the information on Exhibit B is current. Unless and until written notice of any changes to Exhibit B shall be delivered to and acknowledged by the Agent, the Agent shall be entitled to assume that such information is current.

7.     <u>Amendment and Termination</u>. This Agreement may be amended by written agreement of the Parties at any time. This Agreement shall continue in effect until the final disbursements have been made pursuant to Section 2(d), or if earlier, when terminated by either party upon 30 days' prior written notice to the other party. Upon termination, all cash and other Disbursable Assets held in the Series 2014B(1) Disbursing Account and the Series 2014B(2) Disbursing Account shall be delivered by the Agent to the City or to any other person in accordance with the City's written instruction.

6

8. <u>Indemnification and Limitation on Liability</u>. To the extent permitted by applicable law, the City agrees to indemnify, defend and hold the Agent and its employees, directors, agents, affiliates, successors and assigns harmless from and against any and all damages, claims, liabilities, losses, costs and expenses (including without limitation attorney's fees and expenses) ("Losses"), that may be imposed on, incurred by, or asserted against the Agent by reason of its acceptance of this account or the performance of its duties under this Agreement, including, but not limited to Losses incurred by the Agent as a result of its following directions and/or any action or inaction of the Agent or of any other authorized parties, including third parties, regarding the Series 2014B(1) Disbursing Account and the Series 2014B(2) Disbursing Account, unless such Losses are finally adjudicated to have been directly caused by the gross negligence or willful misconduct of the Agent. IN NO EVENT SHALL THE AGENT BE LIABLE FOR ANY SPECIAL, INDIRECT OR CONSEQUENTIAL LOSSES OR DAMAGES OF ANY KIND (INCLUDING, WITHOUT LIMITATION, LOST PROFITS) FROM ANY ACTION TAKEN OR OMITTED TO BE TAKEN BY IT, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND REGARDLESS OF THE FORM OF ACTION. The foregoing indemnification shall survive any termination or assignment of this Agreement and any resignation or removal of the Agent.

9. <u>Notices</u>. All notices, instructions, requests, demands, and other communications under this Agreement shall be in writing and shall be deemed to have been duly given (a) on the date of service if delivered personally to the Party to whom notice is to be given, (b) on the day of transmission if sent by facsimile transmission to the facsimile number given below, and written confirmation of receipt is obtained promptly after completion of transmission, (c) on the day of transmission if sent by electronic mail ("e-mail") to the e-mail address given below, and written confirmation of receipt is obtained promptly after completion of transmission, (d) on the day after delivery via Federal Express or similar overnight courier service or the Express Mail service maintained by the United States Postal Service, or (e) on the fifth day after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid, and properly addressed, return receipt requested, to the party as follows:

Notices to the City shall be directed and mailed as follows:

City of Detroit
1200 Coleman A. Young Municipal Center
Two Woodward Avenue
Detroit, MI 48226
Attention: John Naglick, Jr., Finance Director
Tel: (313) 224-4776
Fax: (313) 224-4466
E-mail: naglickj@detroitmi.gov

With a copy to (such copy not constituting notice):

City of Detroit

Office of Corporation Counsel
Coleman A. Young Municipal Center
Two Woodward Avenue
Detroit, MI 48226
Attention: Melvin Hollowell, Corporation Counsel
Tel: (313) 224-4550
Fax: (313) 224-5505
E-mail: hollowellm@detroitmi.gov

Notices to the Agent shall be directed and mailed as follows:

U.S. Bank National Association
535 Griswold, Suite 550
Detroit, Michigan 48226
Attention:  Susan Brown, Corporate Trust Services
Tel:  (313) 234-4711
Fax: (313) 963-9428
E-mail: susan.brown5@usbank.com

Either party may change its address for purposes of the paragraph by giving the other party written notice of the new address in the manner set forth above.

10.     Inspection Privileges.   The books, records, documents, accounting procedures, and practices of the Agent relevant to this Agreement are subject to examination by the City, or its designated independent public accountants, during normal business hours and subject to other reasonable conditions, upon at least two (2) business days' prior written notice to the Agent, and at the requesting party's expense.

11.     Regarding the Agent.

(a)  The Agent shall not be liable for any action taken or not taken under this Agreement so long as it shall have acted in good faith and without gross negligence or willful misconduct.

(b)  The rights and obligations of the City may not be assigned or delegated to any other person without the written consent of the Agent.  Subject to the foregoing, the terms and provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  No other persons shall have any rights under this Agreement.

(c)  The Agent is permitted to rely upon the written direction provided to it pursuant to this Agreement. The Agent shall have no implied duties beyond the express duties set forth herein.  Under no circumstance will the Agent be deemed to be a fiduciary to any party or any other person under this Agreement.

8

(d)  The Agent shall not be required to expend or risk its own funds or otherwise incur financial liability (other than expenses or liabilities otherwise required to be incurred by the express terms of this Agreement) in the performance of its duties hereunder if it believes that repayment of such funds, or adequate indemnity, is not assured to it.

(e)  The Agent shall have the right, but not the obligation, to consult with counsel or other such professionals of the Agent's choice (which may be counsel to the City or professionals engaged by it) and shall not be liable for action taken or omitted to be taken by the Agent in good faith in accordance with the advice or counsel of such professionals.

(f)  Any corporation or association into which the Agent is converted or merged, or with which it is consolidated, or to which it sells or transfers all or substantially all of its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation, or transfer to which the Agent is a party, shall be and become the successor to the Agent under this Agreement and shall have and succeed to all of the rights, powers, duties, immunities and privileges as its predecessor, without the execution or filing of any instrument or paper or the performance of any other act.

(g)  The Agent may resign as such following the giving of 30 calendar days' prior written notice to the City.  The City may remove the Agent upon 30 calendar days' prior written notice to the Agent along with payment of all fees and expenses to which the Agent is entitled through the date of termination.  The duties of the Agent shall terminate 30 days after recipient's receipt of such notice (or as of such earlier date as may be mutually agreed by the Agent and the City).   The Agent shall deliver the cash and other Disbursable Assets then in the Series 2014B(1) Disbursing Account and the Series 2014B(2) Disbursing Account to a successor Agent in accordance with the City's written direction.  If the City fails to appoint a successor prior to the expiration of 30 calendar day notice period, the Agent may, in its sole discretion, deliver the cash and other Disbursable Assets in the Series 2014B(1) Disbursing Account and the Series 2014B(2) Disbursing Account to the City, or may petition the Bankruptcy Court for the appointment of a successor Agent.

(h)  The Agent may assume the genuineness of, and may rely on, any written notice or communication from any person on Exhibit B, without further verification, and shall be protected in doing so by the City.  The Agent may request, and has the right to rely on, a certificate from the City as to factual matters related to the subject matter hereof.

(i)  In the event of any disagreement or the presentation of adverse claims or demands in connection with the Disbursable Assets, the Agent shall, at its option, be entitled to refuse to comply with any such claims or demands during the continuance of such disagreement and may refrain from delivering any items affected thereby, and in so doing, the Agent shall not become liable to the City or the Holders of Class 14 Claims, or any of them, or to any other person, due to its failure to comply with any such adverse claim or demand. The Agent shall be entitled to continue without liability, to refrain or refuse to act: (a) until all the rights and adverse claimants have been finally adjudicated by the Bankruptcy

9

Court, after which time the Agent shall be entitled to act in conformity with such adjudication; or (b) until all differences shall have been adjusted by agreement and the Agent shall have been notified thereof and shall have been directed in writing signed jointly or in counterpart by the City and by all persons making adverse claims or demands, at which time the Agent shall be protected in acting in compliance therewith.

(j)    The Agent shall not be responsible or liable for any failure or delay in the performance of its obligation under this Agreement arising out of or caused, directly or indirectly, by circumstances beyond its reasonable control, including, without limitation, acts of God; earthquakes; fire; flood; wars; acts of terrorism; civil or military disturbances; sabotage; epidemic; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications services; accidents; labor disputes; acts of civil or military authority or governmental action; it being understood that the Agent shall use commercially reasonable efforts that are consistent with accepted practices in the banking industry to resume performance as soon as reasonably practicable under the circumstances.

(k)    In the event that the Series 2014B(1) Disbursing Account and the Series 2014B(2) Disbursing Account, or any Disbursable Assets contained therein, shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree, shall be made or entered by any court order affecting the property deposited or held under this Agreement, the Agent shall promptly notify the City of such action, and is hereby authorized, in its sole discretion, to obey and comply with all writs, orders or decrees so entered or issued, and in the event that the Agent obeys or complies with any such writ, order or decree it shall not be liable to the City or any other person, firm or corporation, by reason of such compliance notwithstanding that such writ, order, or decree be subsequently reversed, modified, annulled, set aside, or vacated.

(l)  The Agent is not responsible for any recitals of fact or for any statement contained in any disclosure memorandum, or for the validity or sufficiency of this Agreement or the 2014B Bonds except as to its authority to enter into this Agreement.  The Distribution Agent has no duty to enforce any obligations of the City in connection with the Plan of Adjustment, the Settlement Agreement, the 2014B Bonds, or this Agreement.

12.    <u>Tax Matters.</u>    The Agent shall comply with all Tax withholding and reporting requirements imposed on it by any governmental unit, and all disbursements made pursuant to the Plan of Adjustment shall be subject to such withholding and reporting requirements.  In the event that the City receives an order from a governmental unit directing it to withhold any disbursements to be made to a Holder of a Class 14 Claim, the Agent shall comply with the terms of such order.  Any amounts withheld and paid to such governmental unit shall be treated as if made directly to the Holder of the Class 14 Claim.

The Agent is authorized to take any actions it determines, in its reasonable discretion, to be necessary or appropriate to comply with such withholding and reporting requirements,

10

including withholding any disbursements pending receipt of information necessary to facilitate such disbursements, or establishing any other mechanisms it believes are reasonable and appropriate.

Nothing in this Agreement shall be deemed to impose any responsibility on behalf of the Agent to satisfy or pay any Tax imposed on any Holder of a Class 14 Claim on account of any disbursements to be made hereunder.

13.    RESERVED

14.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument. The exchange of copies of this Agreement and of signature pages by facsimile or PDF transmission shall constitute effective execution and delivery of this Agreement as to the Parties hereto and may be used in lieu of the original Agreement for all purposes. Signatures of the Parties hereto transmitted by facsimile or PDF shall be deemed to be their original signatures for all purposes.

15.    Governing Law. This Agreement and all transactions hereunder shall be governed by, interpreted, construed and enforced in accordance with the laws of the State of Michigan.

16.    Entire Agreement. This Agreement is the final integration of the agreement of the Parties with respect to the matters covered by it and supersedes any prior understanding or agreement, oral or written, with respect thereto.

17.    Conflict. In the event any provision of this Agreement is in conflict with, or is in any manner inconsistent with the provisions of the Plan of Adjustment or the Confirmation Order, the provisions in the Plan of Adjustment or the Confirmation Order will control.

18.    Severability. The invalidity of any portion of this Agreement shall not affect the validity of the remainder hereof so long as the intent and purposes of this Agreement would still be fulfilled.

19.    Security Procedure For Funds Transfers. The Agent shall confirm each funds transfer instruction received in the name of the City by means of the security procedure selected by the City and communicated to the Agent through a signed certificate in the form of Exhibit B attached hereto, which upon receipt by the Agent shall become a part of this Agreement. Once delivered to the Agent, Exhibit B may be revised or rescinded only by a writing signed by an authorized representative of the City. Such revisions or rescissions shall be effective only after actual receipt and following such period of time as may be necessary to afford the Agent a reasonable opportunity to act on it. If a revised Exhibit B or a rescission of an existing Exhibit B is delivered to the Agent by an entity that is a successor-in-interest to the City, such document shall be accompanied by additional documentation satisfactory to the Agent showing that such entity has succeeded to the rights and responsibilities of the City under this Agreement.

11

The Parties understand that the Agent's inability to receive or confirm funds transfer instructions pursuant to the security procedure selected by the City may result in a delay in accomplishing such funds transfer, and agree that the Agent shall not be liable for any loss caused by any such delay.

20.   Publication; Disclosure.   By executing this Agreement, the City and the Agent acknowledge that this Agreement (including related attachments) contains certain information that is sensitive and confidential in nature and agree that such information needs to be protected from improper disclosure, including the publication or dissemination of this Agreement and related information to individuals or entities not a party to this Agreement. The City further agrees to take reasonable measures to mitigate any risks associated with the publication or disclosure of this Agreement and information contained therein, including, without limitation, the redaction of the manual signatures of the signatories to this Agreement, or, in the alternative, publishing a conformed copy of this Agreement. If the City must disclose or publish this Agreement or information contained therein pursuant to any regulatory, statutory, or governmental requirement, as well as any judicial or administrative order, subpoena, or discovery request, it shall notify the Agent in writing at the time of execution of this Agreement of the legal requirement to do so. If the City becomes aware of any threatened or actual unauthorized disclosure, publication or use of this Agreement, the City shall promptly notify the Agent in writing and shall be liable for any unauthorized release or disclosure.

21.   Jurisdiction and Venue.   The Bankruptcy Court will be the exclusive venue for any court proceeding between or among the Parties arising out of, or in connection with, this Agreement. The Parties hereby submit to and consent irrevocably to the jurisdiction of such court for these purposes.

22.   Cooperation.   Each Party will cooperate with the other Party for the purpose of effectuating the provisions of this Agreement, including, but not limited to, arranging for the disbursements of Series 2014B to Class 14 Claimants who do not have their own brokerage accounts, and for making such determinations and taking such actions as are necessary regarding tax withholding and reporting requirements.

*[Signature page is attached]*

12

**IN WITNESS WHEREOF,** authorized officers of the parties have duly executed this Agreement as of the day and year first written above.

CITY OF DETROIT

By: _____

Name: _KEVYN D. ORR_

Title: _EMERGENCY MANAGER_

U.S. BANK NATIONAL ASSOCIATION

By: _____

Name: _Susan T. Brown_

Title: _Sr. Vice President_

# CLASS 14 DISBURSING AGENT AGREEMENT

## EXHIBIT A
## DISBURSING AGENT'S FEE SCHEDULE



**Schedule of Fees for Services as
Escrow and Disbursing Agent
For
Class 14 Disbursing Agent Agreement**

| | | |
|---|---|---|
| CTS01010A | Acceptance Fee  The acceptance fee includes the administrative review of documents, initial set-up of the account, and other reasonably required services up to and including the closing.  This is a one-time, non-refundable fee, payable at closing. | $5,000 |
| CTS07460 | Escrow and Disbursing Agent Quarterly fee for the standard escrow agent services associated with the administration of the account.  Administration fees are payable in arrears. | $20,000 |
| CTS10880 | Disbursement / Draw - SEI Charge per item disbursed.  Includes the wire fee.  Disbursement / Draw - SEI Charge per item disbursed.  Includes the check fee. | $50.00  $25.00 |
| CTS10980 | Free Receive / Deliver - SEI Charge for free receipt and / or delivery of collateral. | $50.00 |
| | Direct Out of Pocket Expenses  Reimbursement of expenses associated with the performance of our duties, including but not limited to publications  legal counsel after the initial close, travel expenses and filing fees. | At Cost |
| | Extraordinary Services  Extraordinary Services are duties or responsibilities of an unusual nature, including termination, but not provided for in the governing documents or otherwise set forth in this schedule. A reasonable charge will be assessed based on the nature of the services and the responsibility involved. At our option, these charges will be billed at a flat fee or at our hourly rate then in effect. | |

Account approval is subject to review and qualification.  Fees are subject to change at our discretion and upon written notice.  Fees paid in advance will not be prorated.  The fees set forth above and any subsequent modifications thereof are part of your agreement.  Finalization of the transaction constitutes agreement to the above fee schedule, including agreement to any subsequent changes upon proper written notice.  In the event your transaction is not finalized, any related out-of-pocket expenses will be billed to you directly.  Absent your written instructions to sweep or otherwise invest, all sums in your account will remain uninvested and no accrued interest or other compensation will be credited to the account.  Payment of fees constitutes acceptance of the terms and conditions set forth.

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT:
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.
For a non-individual person such as a business entity, a charity, a Trust or other legal entity we will ask for documentation to verify its formation and existence as a legal entity. We may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

**CLASS 14 DISBURSING AGENT AGREEMENT**

**EXHIBIT B**
**AUTHORIZED PERSONS AND NOTICE**

     The City certifies that the names, titles, telephone numbers, e-mail addresses, and specimen signatures set forth in Parts I and II of this Exhibit B identify the persons authorized to provide direction and initiate or confirm transactions, including funds transfer instructions, on behalf of the City, and that the option checked in Part III of this Exhibit B is the security procedure selected by the City for use in verifying that a funds transfer instruction received by the Agent is that of the City.

     The City has reviewed each of the security procedures and has determined that the option checked in Part III of this Exhibit B best meets its requirements; given the size, type, and frequency of the instructions it will issue to the Agent. By selecting the security procedure specified in Part III of this Exhibit B, the City acknowledges that it has elected to not use the other security procedures described and agrees to be bound by any funds transfer instruction, whether or not authorized, issued in its name and accepted by the Agent in compliance with the particular security procedure chosen by the City.

     NOTICE: The security procedure selected by the City will not be used to detect errors in the funds transfer instructions given by the City. If a funds transfer instruction describes the beneficiary of the payment inconsistently by name and account number, payment may be made on the basis of the account number even if it identifies a person different from the named beneficiary. If a funds transfer instruction describes a participating financial institution inconsistently by name and identification number, the identification number may be relied upon as the proper identification of the financial institution. Therefore, it is important that the City take such steps as it deems prudent to ensure that there are no such inconsistencies in the funds transfer instructions it sends to the Agent.

**Part I**

**Name, Title, Telephone Number, Electronic Mail ("e-mail") Address, and Specimen Signature for person(s) designated to provide direction, including, but not limited to, funds transfer instructions, and to otherwise act on behalf of the City**

| Name | Title | Telephone No. | Email address | Specimen Signature |
|------|-------|---------------|---------------|--------------------|
|      |       |               |               |                    |
|      |       |               |               |                    |
|      |       |               |               |                    |

**Part II**

**Name, Title, Telephone Number, and E-mail Address for person(s) designated to confirm funds transfer instructions**

| Name | Title | Telephone No. | Email address |
|------|-------|---------------|---------------|
|      |       |               |               |
|      |       |               |               |

B-1

**Part III**

**Means for delivery of instructions and/or confirmations**

The security procedure to be used with respect to funds transfer instructions is checked below:

☐ *Option 1. Confirmation by telephone call-back.* The Agent shall confirm funds transfer instructions by telephone call-back to a person at the telephone number designated on Part II above. The person confirming the funds transfer instruction shall be a person other than the person from whom the funds transfer instruction was received, unless only one person is designated in both Parts I and II of this Exhibit B.

☐ *Option 2. Confirmation by e-mail.* The Agent shall confirm funds transfer instructions by e-mail to a person at the e-mail address specified for such person in Part II of this Exhibit B. The person confirming the funds transfer instruction shall be a person other than the person from whom the funds transfer instruction was received, unless only one person is designated in both Parts I and II of this Exhibit B. The City understands the risks associated with communicating sensitive matters, including time sensitive matters, by e-mail. The City further acknowledges that instructions and data sent by e-mail may be less confidential or secure than instructions or data transmitted by other methods. The Agent shall not be liable for any loss of the confidentiality of instructions and data prior to receipt by the Agent.

    ☐ CHECK box, if applicable:
        If the Agent is unable to obtain confirmation by e-mail, the Agent may, at its discretion, confirm by telephone call-back, as described in Option 1.

☐ *Option 3. Delivery of funds transfer instructions by password protected file transfer system only - no confirmation.* The Agent offers the option to deliver funds transfer instructions through a password protected file transfer system. If the City wishes to use the password protected file transfer system, further instructions will be provided by the Agent. If the City chooses this Option 3, it agrees that no further confirmation of funds transfer instructions will be performed by the Agent.

☐ *Option 4. Delivery of funds transfer instructions by password protected file transfer system with confirmation.* Same as Option 3 above, but the Agent shall confirm funds transfer instructions by ☐ telephone call-back or ☐ e-mail (must check at least one, may check both) to a person at the telephone number or e-mail address designated on Part II above. By checking a box in the prior sentence, the party shall be deemed to have agreed to the terms of such confirmation option as more fully described in Option 1 and Option 2 above.

Dated this _____ day of _____, 2014

By _____

B-2

## CLASS 14 DISBURSING AGENT AGREEMENT

### EXHIBIT C
### FORM OF NOTICE TO DISBURSING AGENT

### CITY OF DETROIT

CLASS 14 DISBURSING NOTICE
COVER PAGE

NOTICE #: _____     DATE: _____

There are _____ Claim Information Schedules attached hereto.

TYPE OF NOTICE

[__]  **Interim Disbursements**

The Agent shall disburse Pro Rata shares of the Disbursable Assets to the Holders of Allowed Class 14 Claims based on the following information:

Interim Disbursement #: _____     Date of Disbursement: _____

Total Dollar Amount of Allowed Class 14 Claims: _____

Total Face Amount and Reserves for Class 14 Claims: _____

Calculation of Pro Rata Percentage: _____

Aggregate Principal Amount 2014B(1) Notes Per $1,000 Allowed Class 14 Claim: _____

Aggregate Principal Amount 2014B(2) Notes Per $1,000 Allowed Class 14 Claim: _____

See Attached Claim Information Schedule for Detailed Claim-by-Claim Disbursement Information.

[__]  **Final Disbursement**

Total Dollar Amount of Allowed Class 14 Claims (Final): _____

Calculation of Pro Rata Percentage: _____

Aggregate Principal Amount 2014B(1) Notes Per $1,000 Allowed Class 14 Claim: _____

Aggregate Principal Amount 2014B(2) Notes Per $1,000 Allowed Class 14 Claim: _____

See Attached Claim Information Schedule for Detailed Claim-by-Claim Disbursement Information.

C-1

This Notice, and the attached Claim Information schedule, is consistent with the Plan of Adjustment and the Confirmation Order as approved by the Bankruptcy Court in the City of Detroit's Bankruptcy Case (Bankr. E.D. Mich. Case No. 13-53846). The Agent is authorized to take all action directed by this Notice.

By: _____  _____
    (Signature)                        (Date)

    _____
    (Name)

    _____
    (Title)

# CLASS 14 DISBURSING AGENT AGREEMENT

## EXHIBIT C
## FORM OF NOTICE TO DISBURSING AGENT

### CITY OF DETROIT

CLASS 14 DISBURSING NOTICE
CLAIM INFORMATION SCHEDULE

| Disbursement Amount ($) | Total Adj. Value | 2016 BQ1 Shares | % Adj. Paid (OBOR) | % OBOR | % WHH (CQ1+CQ2 WHH) | % TBC (CQ) | Status | Creditor/Notice Name | Address 1 | Address 2 | Address/City | City | State | Zip | Country | TIN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

22481345.22\022765-00202