# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S OBJECTION TO CLAIM NUMBER 1862 FILED BY DETROIT POLICE OFFICERS' ASSOCIATION

The City of Detroit ("City") objects to claim number 1862 ("Claim No. 1862") filed by the Detroit Police Officers' Association ("Objection"), stating as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this Objection and the resulting contested matter under 28 U.S.C. §§ 157 and 1334 and Article VII, Section A of the Plan (defined below).  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND FACTS

2.     On February 20, 2014, the Detroit Police Officers' Association ("DPOA") filed Claim 1862 in an unliquidated amount based on two general sets of claims and six lawsuits or appeals.[1]  Claim 1862 is attached as **Exhibit 4**.

---

[1] The six lawsuits are:  Wayne County Circuit Court case numbers  12-010859-CL and 13-004974-CL; Michigan Court of Appeals case numbers 312439 and 315299; Wayne County Court of Claims case number 12-000080-MK; and MERC case number D12-D0354.

3.     The first claim generally relates to the imposition by the City of what are referred to as the "City Employment Terms" and identifies several causes of action related thereto including (a) the constitutionality of Public Act 4, (b) the enforcement and applicability of compulsory arbitration of labor disputes in the police and fire departments, (c) the enforceability of the City employment terms post the referendum of Public Act 4; and (d) the entitlement to back pay and other financial remuneration (collectively, the "CET Claim").  Claim 1862, p. 3.  The CET Claim lists the following lawsuits and appeals as relevant: "Detroit Police Officers' Association v. City of Detroit, Court of Claims (Wayne County) Case Nos. 12-010859 and 12-000080-MK, and Michigan Court of Appeals Case Nos. 312439 and 315299."[2]  *Id.*  These lawsuits are closed and the DPOA is no longer pursuing this claim against the City.  *See* **Exhibit 8**, Docket Sheets.  As such, the CET Claim should be disallowed and expunged.

4.     The second claim "results from a complaint for judicial review of part of an Act 312 arbitration award which was issued on March 13, 2013, and in particular involves the City's challenge to a 5% wage increase for DPOA members which was to take effect January 1, 2014."  This second claim is referred to as the "Wage Claim."  Claim 1862, p 3.  The Wage Claim identifies Wayne County

---

[2] Case number 12-010859 is actually a Wayne County Circuit Court case.

Circuit Court case number 13-004974-CL and Michigan Employment Relations Commission ("MERC") case number D12-D0354 ("MERC Case").

5.     On or about June 22, 2012, the DPOA filed a petition ("Petition") under 1969 P.A. 312, M.C.L § 423.231, as amended ("Act 312"), with MERC. **Exhibit 6,** Complaint ¶ 7.  The Petition was held in abeyance as a result of M.C.L. §§ 141.1501-1531 ("PA 4").  Complaint ¶ 7.

6.     On June 30, 2012, the labor contract between the City and the DPOA expired.     **Exhibit 5,** Roumell Award, p. 2.   Faced with several years of expenditures exceeding revenues, the City took aggressive steps to address its financial distress.   One such step was implementing revised City Employment Terms ("CETs") for non-union employees and union employees under expired collective bargaining agreements. *Declaration of Kevyn D. Orr in Support of City of Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code*, p. 10, ¶14 [Doc. No. 11] ("Orr Declaration").  Among other things, the CETs provided for: (a) wage reductions; (b) caps/reductions on vacation/holiday pay/overtime/sick days; (c) the reduction of pension multipliers; and (d) changes to healthcare coverage. Orr Declaration, pp. 46-47, ¶ 66.

7.     On July 18, 2012, the City instituted the CETs with the DPOA. Roumell Award, p. 2.  The CETs included a 10% wage cut for police officers in the DPOA.  Roumell Award, p. 3; Complaint ¶ 9.

8.     Upon the suspension of PA 4[3] on or about August 3, 2012, MERC began to process the Petition. *See* Complaint ¶ 10.

9.     There were 146 issues in dispute in the MERC Case, including the 10% wage cut. Roumell Award, pp. 2-3.

10.     On March 25, 2013, the arbitration panel in the MERC Case issued the *Panel's Findings, Opinion and Order* ("Roumell Award"). The Roumell Award is attached as **Exhibit 5.** With respect to the 10% wage cut, the Roumell Award provided for a 5% restoration effective January 1, 2014. Roumell Award, pp. 106-07.

11.     On April 15, 2013, the City filed its *Complaint for Judicial Review of Part of an Act 312 Arbitration Award* ("Complaint") in the Wayne County Circuit Court, case number 13-004974.[4] The Complaint is attached as **Exhibit 6**.

---

[3] The history of PA 4 dates back to 1990 when the Michigan Legislature enacted PA 72. PA 72 allowed the State to intervene with respect to municipalities facing financial crises by appointing an emergency manager to assume many of the powers ordinarily held by local elected officials. Effective on March 16, 2011, the Legislature enacted PA 4 which repealed PA 72. However, a referendum on PA 4 was initiated. Under Michigan Attorney General opinion number 7267, dated August 6, 2012, PA 4 was suspended when the state Board of Canvassers certified the referendum. Michigan voters later rejected PA 4 on November 5, 2012, reviving PA 72. On December 27, 2012, Public Act 436 of 2012 (the Local Financial Stability and Choice Act, M.C.L. §§ 141.1541-141.1575, "PA 436") was passed. Kevyn Orr took office as the City emergency financial manager under PA 72 on March 25, 2013. When PA 436 became effective on March 28, 2013, PA 72 was repealed and Kevyn Orr became City emergency manager under PA 436.

[4] This action was stayed by the filing of the City's bankruptcy case and later administratively closed. Ex. 9, docket sheet of case number 13-004974.

12.     As set forth in the Complaint, the Roumell Award should be vacated because the arbitration panel did not adopt the last offer of either party in violation of M.C.L. § 423.238.  Complaint, p. 4.  Instead of selecting the last offer of the DPOA (elimination of the 10% wage decrease) or the City (no wage increase), the Roumell Award provided for a 5% increase.  This decision violated Michigan law.

13.     The Complaint further asserted that the Roumell Award should be vacated for the additional reason that it failed to accord the "ability to pay" factor the most significance as required by M.C.L. § 423.239[5] in rendering its wage award.  Complaint, pp. 4-5.

14.     On July 18, 2013 ("Petition Date"), the City filed a petition for relief in this Court.

15.     The automatic stay that came into effect under Bankruptcy Code section 362 prevented the 5% restoration from taking effect.

16.     Instead, the DPOA and the City negotiated a new Master Agreement ("Master Agreement") which was signed in October 2014.  The Master Agreement is attached as **Exhibit 7**.  Section 40 of the Master Agreement provides for an 8% wage increase effective from the first payroll period after ratification of the Master Agreement.  Master Agreement, p. 63.  It also provided for 2.5% wage increases

---

[5] The Complaint has a typographical error, listing this as "M.C.L. 243.239."

effective July 1 of 2016, 2017, and 2018. After describing the wage increases, section 40 provides that:

> In addition to the foregoing, DPOA members shall receive their pro rata share of the lump sum payments described in Section 5 of the July 8, 2014 Term Sheet between the DPOA and the City of Detroit. **In all other respects, this wage provision supersedes any prior agreement or term sheet between the parties.**

Master Agreement, p. 63 (emphasis added).

17.    On October 22, 2014, the City filed its *Eighth Amended Plan of the Adjustment of Debts of the City of Detroit (October 22, 2014)* [Doc. No. 8045] ("Plan"), which the Court confirmed with slight modifications by order entered on November 12, 2014 [Doc. No. 8272] ("Confirmation Order").

18.    The Plan lists the Master Agreement as item number 24 on Exhibit II.D.5, Schedule of Postpetition Collective Bargaining Agreements.

19.    Article II, Part D, Section 5 of the Plan states that collective bargaining agreements listed on Exhibit II.D.5 survive confirmation of the Plan, remain unaffected by the Confirmation Order, and will be performed in the ordinary course of the City's business. Plan, p. 46

## ARGUMENT

20.    Bankruptcy Code section 502(b)(1) provides

> Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the

amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

11 U.S.C. § 502(b)(1).

21. Claim 1862 should be disallowed and expunged because it is unenforceable against the City under applicable law.

22. The CET Claim fails because all of the lawsuits underlying it have been closed.

23. The Wage Claim also fails for at least two reasons. First, the Roumell Award never took effect because of the automatic stay that came into effect with the City's bankruptcy filing. It was then superseded by the Master Agreement. Second, the Roumell Award violated Michigan law because the option chosen by the arbitration panel did not adopt the last offer of either party in violation of M.C.L. § 423.238.

*The Roumell Award Was Stayed, Then Superseded*

24. Bankruptcy Code section 362(a)(1) provides

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title [. . .] operates as a stay, applicable to all entities, of—

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was [. . .] commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1).

25. The Petition under Act 312 was a "judicial, administrative, or other action or proceeding against the" City, as stated in section 362(a)(1). Thus further actions related to the Petition were stayed upon the City's filing for bankruptcy protection.

26. The City's appeal of the Roumell Award was also stayed by the City's filing for bankruptcy protection. *E.g.*, *Cathey v. Johns-Manville Sales Corporation, et al.,* 711 F.2d 60, 62 (6th Cir. 1983) (automatic stay applies to appeals taken by debtor prior to the filing of a bankruptcy petition); *In re Iezzi*, 504 B.R. 777, 783-84 (Bankr. E.D. Pa. 2014) ("The automatic stay stays all appeals in proceedings that were originally brought against the debtor, regardless of whether the debtor is the appellant or appellee. Stated slightly differently, if an action would be stayed in the trial court, it is stayed on appeal.") (citations, alterations, and internal quotation marks omitted).

27. DPOA never sought to have the stay modified or vacated in order to proceed with the Complaint at any time during the bankruptcy case.

28. Thus, the Roumell Award did not take effect on January 1, 2014.

29. Before the City confirmed its Plan, the City and the DPOA reached agreement on the Master Agreement. The Master Agreement superseded any prior wage terms. Master Agreement, p. 63. It contains no provisions for retroactively implementing wage increases.

30. For these reasons, the Roumell Award was superseded before it could take effect and DPOA has no claim under the Roumell Award.

*The Roumell Award Violated Michigan Law*

31. In an Act 312 arbitration, the arbitration panel is required to base its findings, opinions and order upon the factors identified in M.C.L § 423.239. Of these, the arbitration panel must give most significance to the financial ability of the unit of government to pay. M.C.L. § 423.239; Roumell Award, pp. 13-14.

32. Further, with respect to each economic issue, including the 10% wage cut, each party is required to submit to the arbitration panel its last offer of settlement before the beginning of the hearing. *See* M.C.L. § 423.238 ("The arbitration panel shall identify the economic issues in dispute and direct each of the parties to submit to the arbitration panel and to each other its last offer of settlement on each economic issue before the beginning of the hearing.")

33. Michigan law also requires that each party submit its last offer of settlement before the hearing because, when issuing its decision, the arbitration

panel must "adopt the last offer of settlement which, in the opinion of the arbitration panel, more nearly complies with the applicable factors prescribed in section 9."[6]  M.C.L. § 423.238.  Under the law, there is no opportunity for an arbitration panel to impose a different solution than one proposed by the parties to the arbitration.

34.     Under M.C.L. § 423.242, orders of an arbitration panel are reviewable by the circuit court for the county in which the dispute arose.  The circuit court may review whether the arbitration panel was without or exceeded its jurisdiction or whether its order was unsupported by competent, material and substantial evidence on the whole record.  *Id.*

35.     As set forth in the Roumell Award, the last offer of settlement submitted by the DPOA on the 10% wage cut issue provided that, effective January 1, 2013, the 10% wage reduction would be restored for the remaining term of the two year labor contract.  Complaint ¶14; Roumell award, pp. 101-02.  The last offer of settlement submitted by the City on the 10% wage cut provided that if the arbitration panel determined that there would be a two year collective bargaining agreement (July 1, 2012, to June 30, 2014), there would be no wage increase from the wage rates in existence under the CETs.  Complaint ¶ 13, Roumell Award, pp. 98-102.  In short, the 10% wage cut would remain intact.

---

[6] M.C.L. § 423.239.

36.     The arbitration panel did not, however, select either the last offer of the City (0%) or the DPOA (10%). Instead, the arbitration panel awarded a 5% restoration effective January 1, 2014. Roumell Award, pp. 106-07. As a result, this decision violated M.C.L. § 423.238 and it should be vacated on this basis alone.

37.     Further, the Roumell Award should be vacated for the additional (although unnecessary) reason that it failed to accord the ability to pay factor the most significance as required by M.C.L. § 423.239 in rendering its wage award. Complaint, pp. 4-5.

38.     With respect to ability to pay, the arbitration panel asserted that there could be funds to pay for a 5% restoration because "the Emergency Manager has nine months to reorganize the Department to bring efficiencies to the Department, including controlling overtime." Roumell Award, p. 108. With respect to overtime, the arbitration panel wrote "there are provisions to work out, including 12 hour shifts and perhaps an arrangement of a dual eight hour/12 hour program which can eliminate, according to the Department, substantial overtime." Roumell Award, p. 108. It also wrote that the City could save money if it adopted "the techniques used in the suburban courts and departments where a supervisor can conduct pre-trials and arrange for pleas from citizens to avoid having Officers appear in court." Roumell Award, p. 107-08. The arbitration panel also

commented that the City could save money to pay for the wage restoration by not having uniformed officers sitting behind counters issuing licenses when this work could be done by civilian officers.  Roumell Award, pp. 109-10.

39.     The arbitration panel's decision on the City's financial ability to pay missed the mark entirely.  Offering a few helpful suggestions on where the City could cut police expenses ignores the reality of the challenges faced by the City.

40.     As has been emphasized by this Court, the City had financially run out of time when it filed for bankruptcy in July 2013.  At that time, the City's debt was estimated at $18,000,000,000.  *Opinion Regarding Eligibility* ("Opinion," Doc. No. 1945), p. 14.[7]  The City "was spending much more money than it was receiving, and only making up the difference through expensive and even catastrophic borrowings."  *Id.* at 106.  It "was operating on a 'razor's edge' . . . ." *Id.*  For example, in May 2013, the City defaulted on approximately $54,000,000 in pension contributions.  *Id.*  It also "stopped paying its trade creditors to avoid running out of cash."  *Id.* at 107.  The next month, it deferred a $5,000,000 fiscal year end payment on its pension obligations and also did not make a scheduled $39,700,000 payment on its "Certificates of Participation" or "COPs."  *Id.* at 106.  "But for these and other deferments, the City would have completely run out of cash by the end of 2013."  *Id.* at 107.

---

[7] *Also available at In re City of Detroit, Mich.*, 504 B.R. 97, 113 (Bankr. E.D. Mich. 2013).

41.     The overwhelming debt load carried consequences.  The City could not properly invest in its police force, resulting in priority one response times of over five times the national average of 11 minutes.  *Id.*, p. 21.  Its fire-fighting abilities were similarly compromised, and frequently only one third of its ambulances were operational.  *Id.*  Two thirds of the City's parks closed in 2009, and half of the remainder were to close in 2013.  *Id.*, p. 22.  The Bankruptcy Court observed

> The evidence before the Court establishes that for decades, however, the City of Detroit has experienced dwindling population, employment, and revenues. This has led to decaying infrastructure, excessive borrowing, mounting crime rates, spreading blight, and a deteriorating quality of life.
>
> The City no longer has the resources to provide its residents with the basic police, fire and emergency medical services that its residents need for their basic health and safety.

*Id.*, p. 5.  The Court termed this condition "service insolvency."  *Id.* at 108.

42.     Under these circumstances, the idea that the City could have found resources to increase police wages lacks credibility.  The City could not even afford the wages it was paying at the time.  Chief Craig's testimony convinced the Court of this fact.

> Most powerfully, however, the testimony of Chief Craig established that the City was in a state of "service delivery insolvency" as of July 18, 2013, and will

continue to be for the foreseeable future. He testified that the conditions in the local precincts were "deplorable." "If I just might summarize it in a very short way, that everything is broken, deplorable conditions, crime is extremely high, morale is low, the absence of leadership." He described the City as "extremely violent," based on the high rate of violent crime and the low rate of "clearance" of violent crimes. He stated that the officers' low morale is due, at least in part, to "the fact that they had lost ten percent pay; that they were forced into a 12-hour work schedule," and because there was an inadequate number of patrolling officers, and their facilities, equipment and vehicles were in various states of disrepair and obsolescence.

*Id.* at 107 (citations omitted). "Indeed, while the City's tumbling credit rating, its utter lack of liquidity, and the disastrous COPs and swaps deal might more neatly establish the City's 'insolvency' under 11 U.S.C. § 101(32)(C), it is the City's service delivery insolvency that the Court finds most strikingly disturbing in this case." *Id.* at 108. Under the circumstances, it is simply inconceivable that the City could have mustered cash to increase police officer pay.

43.     Consequently, the City respectfully requests that Claim No. 1862 be disallowed and expunged for the reasons set forth above.

## RESERVATION OF RIGHTS

44.     The City files this Objection without prejudice to or waiver of its rights under section 904 of the Bankruptcy Code, and nothing herein is intended to constitute, constitutes, or may be deemed to constitute the City's consent, under section 904 of the Bankruptcy Code, to the Court's interference with (a) any of the

political or governmental powers of the City, (b) the property or revenues of the City, or (c) the City's use or enjoyment of any income-producing property.

45.     The City expressly reserves the right to amend, modify, or supplement this Objection.  Should the Court dismiss or overrule one or more grounds of objection stated in this Objection, the City reserves its right to object to the Claim on other procedural and substantive grounds, and on the merits of the underlying claim.  The City also expressly reserves any and all rights, claims, defenses, and objections it may have against DPOA in any of the lawsuits named in this Objection.

## NOTICE

46.     The City has provided notice of this Objection to DPOA's attorney. In light of the nature of the relief requested, the City respectfully submits that no other or further notice of the relief requested in this Objection need be given.

## NO PRIOR REQUEST

47.     No previous request for the relief requested herein has been made to this or any other court.

WHEREFORE, the City respectfully asks this Court to enter an order, substantially in the form attached as Exhibit 1, granting the relief requested in this Objection and further relief as this Court may deem just and proper.

Dated: October 29, 2019

Respectfully submitted,

By: /s/ Marc N. Swanson
    Jonathan S. Green (P33140)
    Marc N. Swanson (P71149)
    MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 963-6420
    Facsimile: (313) 496-8451
    green@millercanfield.com
    swansonm@millercanfield.com

          and

    Charles N. Raimi (P29746)
    Deputy Corporation Counsel
    City of Detroit Law Department
    2 Woodward Avenue, Suite 500
    Coleman A. Young Municipal Center
    Detroit, Michigan  48226
    Telephone: (313)-237-0470
    Facsimile: (313) 224-5505
    raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

## <u>EXHIBIT LIST</u>

Exhibit 1    Proposed Order

Exhibit 2    Notice

Exhibit 3    Certificate of Service

Exhibit 4    Claim No. 1862

Exhibit 5    Roumell Award

Exhibit 6    Complaint

Exhibit 7    Master Agreement

Exhibit 8    CET Claim Docket Sheets

Exhibit 9    Docket Sheet of Case Number 13-004974

<u>**EXHIBIT 1: PROPOSED ORDER**</u>

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**ORDER SUSTAINING CITY OF DETROIT'S OBJECTION TO CLAIM
NUMBER 1862 FILED BY DETROIT POLICE OFFICERS'
ASSOCIATION**

Upon review of the *City of Detroit's Objection to Claim Number 1862 Filed
by Detroit Police Officers' Association* ("Objection"),[8] seeking entry of an order
disallowing and expunging Claim No. 1862; and it appearing that this Court has
jurisdiction over the Objection under 28 U.S.C. §§ 157 and 1334 and Article VII of
the Plan; and the Court finding that this is a core proceeding under 28 U.S.C.
§ 157(b)(2); and the Court finding that venue of this proceeding and the Objection
in this District is proper under 28 U.S.C. §§ 1408 and 1409; and it appearing that
the relief requested in the Objection is in the best interests of the City and its
creditors; and due and proper notice of the Objection having been given as
provided in the Objection; and it appearing that no other or further notice of the
Objection need be given; and any objections or other responses to the Objection

---

[8] Capitalized terms used but not otherwise defined herein shall have the meaning
ascribed to them in the Objection.

having been overruled or withdrawn; and the Court finding that the legal and factual bases set forth in the Objection and at the hearing establish just cause for the relief granted; and after due deliberation and good and sufficient cause appearing therefore;

IT IS ORDERED that:

1.    The Objection is sustained.

2.    Claim No. 1862 filed by Detroit Police Officers' Association is disallowed and expunged in its entirety.

3.    The City's claims agent is authorized to update the claims register to reflect the relief granted in this Order.

4.    The City is authorized to take all actions necessary to effectuate the relief granted under this Order in accordance with the Objection.

5.    Notice of the Objection as provided therein is good and sufficient notice of such objection, and the requirements of Bankruptcy Rule 3007(a) and the local rules of the Court are satisfied by such notice.

**EXHIBIT 2: NOTICE**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**NOTICE OF THE CITY OF DETROIT'S OBJECTION TO 1862 FILED BY
DETROIT POLICE OFFICERS' ASSOCIATION**

**PLEASE TAKE NOTICE THAT** the City of Detroit ("City") has filed an objection to claim number 1862 ("Claim") filed by Detroit Police Officers' Association because there is no basis for liability on the part of the City because the claim is unenforceable against the City under applicable law ("Objection").

If you do not want the court to change your Claim, or grant the relief requested in the Objection, then on or before **December 11, 2019**, you or your lawyer must:

1.	File with the court, at the address below, a written response to the objection. Unless a written response is filed and served by the date specified, the court may decide that you do not oppose the objection to your claim.

Clerk of the Court
United States Bankruptcy Court
211 W. Fort Street, Suite 2100
Detroit, MI 48226

If you mail your response to the Court for filing, you must mail it early enough so that the Court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

    2.    A copy of your response must also be mailed to counsel for the City:

Marc N. Swanson<br>
Miller, Canfield, Paddock and Stone, PLC<br>
150 West Jefferson Ave., Ste. 2500<br>
Detroit, MI 48226

    3.    You must also attend the hearing on the objection scheduled to be held on **December 18, 2019** at 1:30 p.m. in Courtroom 1925, 211 W. Fort Street, Detroit, MI 28226 unless your attendance is excused by mutual agreement between yourself and the objector's attorney.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the objection to your claim, in which event the hearing will be canceled and the objection sustained.**

MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.

By: /s/ Marc N. Swanson
    Marc N. Swanson (P71149)
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

Dated: Dated: October 29, 2019

# EXHIBIT 3: CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 29, 2019, he electronically filed the foregoing *City of Detroit's Objection to Claim Number 1862 Filed by Detroit Police Officers' Association* ("Objection") with the Clerk of the Court which will provide notice of the filing to all ECF participants registered in this case. A copy of the Objection was also served upon the following, via first class mail, on the same date:

Julie Beth Teicher
Erman, Teicher, Zucker & Freedman, P.C.
400 Galleria Officentre, Suite 444
Southfield MI 48034

By: /s/ Marc N. Swanson
  Marc N. Swanson
  150 West Jefferson, Suite 2500
  Detroit, Michigan 48226
  Telephone: (313) 496-7591
  Facsimile: (313) 496-8451
  swansonm@millercanfield.com

Dated: October 29, 2019