# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Judge Thomas J. Tucker |
| | ) | |
| _____ | ) | |

## STIPULATION FOR AN ORDER CONCERNING CLAIMANTS AFSCME (CLAIM NUMBER 2958) AND THE COALITION OF DETROIT UNIONS (CLAIM NUMBER 2851)

The City of Detroit, Michigan ("City"), AFSCME Council 25 and Its Affiliated Detroit Locals, on behalf of themselves and their affiliated locals, officers, agents, employees and members ("AFSCME"), and the Coalition of Detroit Unions, on behalf of itself and its members and their officers, agents, employees and members ("Coalition" and, together with AFSCME, sometimes referred to as "Claimants" and, together with the City, "Parties") stipulate and agree ("Stipulation") as follows:

1.    On September 17, 2019, the City filed its *Motion to Implement Distributions of B Notes to Holders of Allowed Class 14 Claims Under the City's Confirmed Plan of Adjustment* [Doc. No. 13126] ("Motion"). Capitalized terms

34598944.20\022765-00213

used but not otherwise defined in this Stipulation shall have the meanings ascribed to them in the Motion.

2.    AFSCME holds an Allowed Class 14 Claim under the Plan in the amount of $95,380,410.00 ("AFSCME Allowed Claim") pursuant to a stipulation with the City appearing at Docket Number 11753, and an Order of this Court appearing at Docket Number 11754.

3.    Coalition holds an Allowed Class 14 Claim under the Plan in the amount of $14,771,270.00 ("Coalition Allowed Claim") pursuant to a stipulation with the City appearing at Docket Number 11753, and an Order of this Court appearing at Docket Number 11754.

4.    Coalition is made up of a voluntary association of individual unions, acting together, whose Claims have been aggregated and Allowed in the Coalition Allowed Claim. The individual unions are identified in Section 4.(a) – (m) below (each, individually, a "Coalition Union" and, collectively, "Coalition Unions") , together with their respective percentages of the Coalition Allowed Claim (pursuant to an agreement among the Coalition Unions):

(a)    Association of City of Detroit Supervisors (2.74%);

(b)    Association of Municipal Inspectors (0.98%);

(c)    Association of Professional and Technical Employees (12.87%);

34598944.20\022765-00213

(d)     Michigan Building and Construction Trades Council (16.46%);

(e)     Detroit Income Tax Investigators Association (1.46%);

(f)     International Union of Operating Engineers, Local 324 (4.57%);

(g)     Detroit Police Detention Officers Association (0.85%);

(h)     Senior Accountants, Analysts and Appraisers Association (18.84%);

(i)     SEIU Local 517M (3.54%);

(j)     Teamsters, Local 214 (33.23%);

(k)     UAW PAA Local 2211 (3.11%);

(l)     UAW Local 412, legal assistants (0.61%); and

(m)     UAW Local 212, civilian police investigators (0.73%).

Each individual who is a member of a Coalition Union or of AFSCME shall be referred to as a "Union Member" and, collectively, as "Union Members." The City has played no role in identifying the Coalition Unions or allocating the respective percentages of the Coalition Allowed Claim among the Coalition Unions and, as a result, the City shall not be liable or otherwise responsible for the accuracy of their identities or percentage allocations of the Coalition Allowed Claim among the Coalition Unions.

5.     The Distributions[1] under the Plan to the respective Claimants on account of the AFSCME Allowed Claim and the Coalition Allowed Claim are intended to be held by "qualified settlement funds" within the meaning of Treasury Regulation 1.468B-1.  In order to effectuate Distributions regarding the AFSCME Allowed Claim and the Coalition Allowed Claim, two separate qualified settlement funds will be established, the "AFSCME Bankruptcy Fund" and the "Coalition Bankruptcy Fund" (together, the "Funds").  The B Notes allocated to Claimants will be Distributed by the City (or its Disbursing Agent) to an account established by the Funds which will be identified by each of the Claimants on the Brokerage Account Form.  The account will be established by a DTC-capable brokerage firm capable of receiving the B Notes electronically and the account will be titled in the name of the respective Funds.  The Claimants shall require the Funds to comply with orders of this Court pertaining to Distributions under the Plan relating to the AFSCME Allowed Claim and the Coalition Allowed Claim, including the Distribution Order (as defined in Section 16 below).  The Distribution Order is modified with respect to Claimants only to provide that the name of the creditor on the Brokerage Account Form and Tax Form with respect to the (a) AFSCME Allowed Claim will be the AFSCME Bankruptcy Fund and (b) the Coalition

---

[1] Under the Plan, the defined term "Distribution" means any initial or subsequent payment or transfer made on account of an Allowed Claim under or in connection with the Plan. Distributed means a payment or transfer of a Distribution as that term is defined in the Plan.

34598944.20\022765-00213

Bankruptcy Claim will be the Coalition Bankruptcy Fund. The Brokerage Account Forms will be completed by the respective Claimants or any other person or entity expressly authorized by the Claimants to do so. The Tax Form will be completed in accordance with section 6(a) below. All B Notes and other Distributions to Claimants concerning the AFSCME Allowed Claim and the Coalition Allowed Claim shall be Distributed in accordance with the Plan and the Distribution Order to their respective Funds.

6. To satisfy section 468B of the Internal Revenue Code of 1986, and Treas. Reg. section 1.468B, and to facilitate subsequent distributions to Coalition Unions and Union Members, AFSCME and the Coalition will each retain a firm to serve as a qualified claims administrator ("Claims Administrator"). The Claims Administrator shall be charged with administration of the AFSCME Bankruptcy Fund and Coalition Bankruptcy Fund, and the subsequent distributions of B Notes (or any proceeds thereof) and other distributions within each Fund to AFSCME, the Coalition Unions and their respective Union Members. The agreements between AFSCME and the Coalition, respectively, and the Claims Administrator will provide that the Claims Administrator will:

(a) under the direction of AFSCME and the Coalition, respectively, establish and oversee all aspects of the AFSCME Bankruptcy Fund and the Coalition Bankruptcy Fund and the funds therein,

respectively, including completing the Tax Form in accordance with section 5 above;

(b)     administer all aspects of any distribution of the AFSCME Allowed Claim to any Union Member of AFSCME where AFSCME has designated to the Claims Administrator that the Union Member is entitled to a share of the AFSCME Allowed Claim;

(c)     administer all aspects of any distribution of the Coalition Allowed Claim to any Union Member of a Coalition Union where the applicable Coalition Union has designated to the Claims Administrator that the Union Member is entitled to a portion of the Coalition Allowed Claim;

(d)     provide notice of the claim to the Union Members of AFSCME or a Coalition Union, which AFSCME or a Coalition Union, respectively, has determined is entitled to receive a share of the AFSCME Allowed Claim or Coalition Allowed Claim, and address any questions or concerns from Union Members;

(e)     solely be responsible for calculation and satisfaction of all tax obligations incurred in connection with the AFSCME Bankruptcy Fund and Coalition Bankruptcy Fund concerning

the B Notes, any proceeds thereof, and any other funds concerning the AFSCME Allowed Claim and Coalition Allowed Claim, respectively, and the administration and satisfaction of employment and payroll taxes and any necessary State and Federal withholdings. Only the Claims Administrator (and not the City and its agents) will be responsible for the preparation, securing of necessary signatures, and filing of tax returns and other documents and information required by applicable law in respect of the Funds, which includes the specific returns described in Treas. Reg 1.468B-2;

(f) calculate the share of the settlement amount allocable to each Union Member, including the amount necessary for any tax withholdings, and, after withholding or paying the tax amount, distribute amounts to each Union Member; and

(g) perform or take (or refrain from performing or taking) any other actions in connection with the Funds as may be directed by AFSCME or the Coalition necessary to effectuate the distribution of the B Notes, any proceeds thereof, and any other funds in the Funds.

The City shall have no responsibility, duty or liability for any actions or

34598944.20\022765-00213

inactions of the Claims Administrator in connection with its duties, responsibilities, obligations or otherwise. The Claims Administrator has been selected and appointed solely by the Claimants, and without input of the City, to serve as the Claimants' agent (or independent contractor) to aid and assist the Claimants in facilitating the receipt and subsequent distribution of Distributions that Claimants receive from the City (or Disbursing Agent) under the Plan.

7.    AFSCME will oversee and be solely responsible for the portion of the Coalition Allowed Claim allocated to Detroit Police Detention Officers Association (0.85%), Detroit Income Tax Investigators Association (1.46%), and Association of Municipal Inspectors (0.98%) as those locals are affiliated with AFSCME. AFSCME represents and warrants to the City that it has the power and authority, and is legally entitled, to do so.

8.    A certain portion of the Distribution on account of the AFSCME Allowed Claim, as determined by AFSCME with the assistance of a Claims Administrator, will be held in the AFSCME Bankruptcy Fund as an administrative expense, to be paid to AFSCME as reimbursement for costs incurred in connection with the City's bankruptcy case and attendant litigation, and in effectuating the terms of this Order.

9.    A certain portion of the Distribution on account of the Coalition Allowed Claim, as determined by the Coalition with the assistance of a Claims

34598944.20\022765-00213

Administrator, will be held in the Coalition Bankruptcy Fund as an administrative expense, to be paid to the Coalition Unions and subsequently distributed among the Coalition Unions according to their documented costs, as determined by such Claims Administrator, as reimbursement for such costs incurred in the City's bankruptcy case and attendant litigation, and in effectuating the terms of this Order.

10. Taxes, expenses, and costs incurred in connection with or otherwise relating to the implementation of this Order, including the establishment of the Funds, disbursements of amounts from the Funds, and selection and appointment of the Claims Administrator, and any fees and expenses of tax counsel or accountants and mailing expenses relating to the filing or failure to file any tax returns, will be paid only from the B Notes (or their proceeds) and funds being held within the AFSCME Bankruptcy Fund and Coalition Bankruptcy Fund, respectively, as well as income that might be earned on those amounts. The Claims Administrator will be obligated to withhold from distribution any funds necessary to pay such taxes, fees and expenses as well as any taxes that might be required to be withheld pursuant to law. The City shall have no liability, responsibility, duty or obligation of any kind for filing any such tax returns or withholding or paying any taxes associated with or relating to the Funds.

11.     Neither AFSCME nor the Coalition (nor the Coalition Unions) will be liable or responsible for any tax obligations in connection with the B Notes (or any proceeds thereof) or other funds distributed to Union Members.  Those obligations will be the responsibility of the Union Members and the Claims Administrator who will make any tax withholdings or payments required by law prior to such distribution, and will inform the Union Member of such withholdings or payments. AFSCME will only be responsible for any tax obligations in respect of B Notes (or the proceeds thereof) and funds distributed directly to it from the AFSCME Bankruptcy Fund.  The Coalition or applicable Coalition Union will only be responsible for any tax obligations in respect of B Notes (or the proceeds thereof) and funds distributed directly to them from the Coalition Bankruptcy Fund.

12.     The City will not be responsible or liable for any tax obligations associated with the issuance, distribution, investment, or liquidation of B Notes, any proceeds thereof, or any other funds distributed pursuant to the Plan, this Order or otherwise.  The employer share of any applicable payroll taxes for the payment amounts allocated to AFSCME and Coalition, and their Union Members, will be paid exclusively from those B Notes (or the proceeds thereof) or any other funds Distributed to the AFSCME Bankruptcy Fund on account of the AFSCME Allowed Claim or the Coalition Bankruptcy Fund on account of the Coalition Allowed Claim.  The City shall have no obligation to "gross-up" the Distributions

- 10 -

under the Plan to the Funds to pay or reimburse the Funds for any State or Federal taxes or any other fees, costs or expenses, all such amounts being the sole responsibility of the Funds and the Claims Administrator.

13.    Any B Notes and funds not distributed from the AFSCME Bankruptcy Fund (i.e., a check is not cashed after being sent to a Union Member) will be remitted to AFSCME as an administrative expense, treated as reimbursement for costs incurred in the City's bankruptcy case and attendant litigation. Any B Notes and funds intended to be sent to a Union Member who is deceased will be distributed to the estate of the deceased Union Member. In the absence of an open estate, the distribution with be handled pursuant to M.C.L.A. § 408.480, as if the payment from the Claims Administrator is being paid by an employer under AFSCME's direction to the Claims Administrator.

14.    Any B Notes and funds not distributed out of the Coalition Bankruptcy Fund (i.e., a check is not cashed after being sent to an Union Member of a Coalition Union) will be remitted to the applicable Coalition Union as an administrative expense, treated as reimbursement for costs incurred in the City's bankruptcy case and attendant litigation. Any B Notes and funds intended to be sent to a Union Member who is deceased will be distributed to the estate of the deceased Union Member. In the absence of an open estate, the distribution will be handled pursuant to M.C.L.A. § 408.480, as if the payment from the Claims

34598944.20\022765-00213

Administrator is being paid by an employer under the Coalition's or applicable Coalition Union's direction to the Claims Administrator.

15.     Neither the City, the Disbursing Agent, nor any of their respective agents, attorneys or employees shall have any liability, responsibility, duty or obligation of any kind, whether for the filing of any tax returns, payment of any taxes or otherwise, under this Stipulation, or for the truth, accuracy or allocation of the distributions among the Coalition Unions or AFSCME, or the actions or inactions of the Claims Administrator. AFSCME and the Coalition shall each indemnify and hold the City, the Disbursing Agent, and their respective agents, attorneys and employees harmless from and of any claim made against the City brought about due to an act or omission of AFSCME, the Coalition or the Claims Administrator for which AFSCME, the Coalition or the Claims Administrator is responsible under the terms of this Stipulation and Order approving this Stipulation or as a result of any representations made by any of them in this Stipulation.   This Stipulation is entered into by the City exclusively for the administrative convenience of AFSCME and the Coalition in order to aid in the implementation of the Plan, pursuant to the Court's retained jurisdiction under Article VII of the Plan. The City makes no representations or warranties of any kind regarding the accuracy or completeness of the statements or legal analysis or effects set forth in this Stipulation, and undertakes no duty or obligation in this Stipulation that is not

34598944.20\022765-00213

imposed on the City by the Plan or other Orders of this Court. This Stipulation is not intended to, and does not, modify or amend the Plan or the order confirming the Plan in any respect.

16. Neither this Stipulation nor any order granting or approving this Stipulation as an Order of this Court will become effective until the order attached to the contemporaneously filed certificate of no response to the Motion ("Distribution Order") has been entered by this Court.

17. This Stipulation resolves the informal objections raised by the Coalition and AFSCME to the Motion. As set forth in the contemporaneously filed certificate of no response to the Motion, the City states that no other objections have been filed to the Motion. As such, AFSCME and the Coalition consent to the entry of the Distribution Order as modified in section five above. Each Claimant reserves the right to petition this Court for the modification of any process, procedure or mechanism described in this Stipulation, which may become necessary, appropriate or helpful to the Claimant and its agents in receiving any Distributions under the Plan and in any subsequent distributions thereof, provided that, in each case, such modification does not increase any direct or indirect cost to the City, or modify the Plan or the order confirming the Plan at docket number 8272. The City expressly reserves the right to contest any proposed modification. The Parties further acknowledge and agree that the City has not consented to (or

- 13 -

waived) any right concerning any proposed modification, whether under section 904 of the Bankruptcy Code or otherwise, and the City reserves its right under section 904 to expressly consent or withhold its consent to any such proposed modification concerning any matter that may be subject to section 904.

Dated: November 11, 2019         CITY OF DETROIT LAW DEPARTMENT

By: */s/ Charles N. Raimi*
Charles N. Raimi  (P29746)
Attorney for the City of Detroit
2 Woodward Avenue, Ste. 500
Detroit,  Michigan 48226
(313) 224-4550
raimic@detroitmi.gov

Dated: November 11, 2019         CITY OF DETROIT

By: */s/ Marc N. Swanson*
Marc N. Swanson (P71149)
Miller, Canfield, Paddock & Stone, PLC
Attorney for City of Detroit
150 West Jefferson, Ste. 2500
Detroit, Michigan  48226
(313) 963-6420
swansonm@millercanfield.com

Dated: November 11, 2019         By: */s/ Richard G. Mack, Jr.*
Richard G. Mack, Jr.
Miller Cohen, PLC
Attorney for Claimant AFSCME
600 West Lafayette Blvd., 4th Floor
Detroit  Michigan  48226
(313) 964-4454
richardmack@millercohen.com

- 14 -

Dated: November 11, 2019

By: */s/ Richard G. Mack, Jr.*
Richard G. Mack, Jr.
Miller Cohen, PLC
Attorney for Claimant Coalition
600 West Lafayette Blvd., 4th Floor
Detroit  Michigan  48226
(313) 964-4454
richardmack@millercohen.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|                                   |     |                          |
| --------------------------------- | --- | ------------------------ |
|                                   | )   |                          |
| In re:                            | )   | Chapter 9                |
|                                   | )   |                          |
| CITY OF DETROIT, MICHIGAN,        | )   | Case No. 13-53846        |
|                                   | )   |                          |
| Debtor.                           | )   | Judge Thomas J. Tucker   |
|                                   | )   |                          |
| _____ | )   |                          |

**ORDER APPROVING STIPULATION CONCERNING CLAIMANTS
AFSCME (CLAIM NUMBER 2958) AND THE
COALITION OF DETROIT UNIONS (CLAIM NUMBER 2851)**

Upon the Stipulation (Dkt. No.____)[1] between the City of Detroit, Michigan

("City"), AFSCME Council 25 and Its Affiliated Detroit Locals, on behalf of

themselves and their affiliated locals, officers, agents, employees and members

("AFSCME"), and the Coalition of Detroit Unions, on behalf of itself and its

members and their officers, agents, employees and members ("Coalition" and,

together with AFSCME, sometimes referred to as "Claimants" and, together with

the City, "Parties"); the Court having reviewed the Stipulation, being otherwise

apprised of the matter, and having found that due and proper notice has been given;

and there being good cause; NOW THEREFORE, IT IS ORDERED THAT:

_____

[1] Capitalized terms not otherwise defined in this Order shall have the meanings
given to them in the Stipulation.

- 1 -

1.     The Stipulation is approved.

2.     Coalition is made up of a voluntary association of individual unions, acting together, whose Claims have been aggregated and Allowed in the Coalition Allowed Claim. The individual unions are identified in Section 2.(a) – (m) below (each, individually, a "Coalition Union" and, collectively, "Coalition Unions") , together with their respective percentages of the Coalition Allowed Claim (pursuant to an agreement among the Coalition Unions):

    (a)     Association of City of Detroit Supervisors (2.74%);

    (b)     Association of Municipal Inspectors (0.98%);

    (c)     Association of Professional and Technical Employees (12.87%);

    (d)     Michigan Building and Construction Trades Council (16.46%);

    (e)     Detroit Income Tax Investigators Association (1.46%);

    (f)     International Union of Operating Engineers, Local 324 (4.57%);

    (g)     Detroit Police Detention Officers Association (0.85%);

    (h)     Senior Accountants, Analysts and Appraisers Association (18.84%);

    (i)     SEIU Local 517M (3.54%);

    (j)     Teamsters, Local 214 (33.23%);

(k)    UAW PAA Local 2211 (3.11%);

(l)    UAW Local 412, legal assistants (0.61%); and

(m)    UAW Local 212, civilian police investigators (0.73%).

Each individual who is a member of a Coalition Union or of AFSCME shall be referred to as a "<u>Union Member</u>" and, collectively, as "<u>Union Members</u>." The City has played no role in identifying the Coalition Unions or allocating the respective percentages of the Coalition Allowed Claim among the Coalition Unions and, as a result, the City shall not be liable or otherwise responsible for the accuracy of their identities or percentage allocations of the Coalition Allowed Claim among the Coalition Unions.

3.    The Distributions[2] under the Plan to the respective Claimants on account of the AFSCME Allowed Claim and the Coalition Allowed Claim are intended to be held by "qualified settlement funds" within the meaning of Treasury Regulation 1.468B-1. In order to effectuate Distributions regarding the AFSCME Allowed Claim and the Coalition Allowed Claim, two separate qualified settlement funds will be established, the "<u>AFSCME Bankruptcy Fund</u>" and the "<u>Coalition Bankruptcy Fund</u>" (together, the "<u>Funds</u>"). The B Notes allocated to Claimants

---

[2] Under the Plan, the defined term "Distribution" means any initial or subsequent payment or transfer made on account of an Allowed Claim under or in connection with the Plan. Distributed means a payment or transfer of a Distribution as that term is defined in the Plan.

will be Distributed by the City (or its Disbursing Agent) to an account established by the Funds which will be identified by each of the Claimants on the Brokerage Account Form. The account will be established by a DTC-capable brokerage firm capable of receiving the B Notes electronically and the account will be titled in the name of the respective Funds. The Claimants shall require the Funds to comply with orders of this Court pertaining to Distributions under the Plan relating to the AFSCME Allowed Claim and the Coalition Allowed Claim, including the Distribution Order (as defined in Section 14 below). The Distribution Order is modified with respect to Claimants only to provide that the name of the creditor on the Brokerage Account Form and Tax Form with respect to the (a) AFSCME Allowed Claim will be the AFSCME Bankruptcy Fund and (b) the Coalition Bankruptcy Claim will be the Coalition Bankruptcy Fund. The Brokerage Account Forms will be completed by the respective Claimants or any other person or entity expressly authorized by the Claimants to do so. The Tax Form will be completed in accordance with section 4(a) below. All B Notes and other Distributions to Claimants concerning the AFSCME Allowed Claim and the Coalition Allowed Claim shall be Distributed in accordance with the Plan and the Distribution Order to their respective Funds.

4. To satisfy section 468B of the Internal Revenue Code of 1986, and Treas. Reg. section 1.468B, and to facilitate subsequent distributions to Coalition

Unions and Union Members, AFSCME and the Coalition will each retain a firm to serve as a qualified claims administrator ("Claims Administrator"). The Claims Administrator shall be charged with administration of the AFSCME Bankruptcy Fund and Coalition Bankruptcy Fund, and the subsequent distributions of B Notes (or any proceeds thereof) and other distributions within each Fund to AFSCME, the Coalition Unions and their respective Union Members. The agreements between AFSCME and the Coalition, respectively, and the Claims Administrator will provide that the Claims Administrator will:

(a)     under the direction of AFSCME and the Coalition, respectively, establish and oversee all aspects of the AFSCME Bankruptcy Fund and the Coalition Bankruptcy Fund and the funds therein, respectively, including completing the Tax Form in accordance with section 3 above;

(b)     administer all aspects of any distribution of the AFSCME Allowed Claim to any Union Member of AFSCME where AFSCME has designated to the Claims Administrator that the Union Member is entitled to a share of the AFSCME Allowed Claim;

(c)     administer all aspects of any distribution of the Coalition Allowed Claim to any Union Member of a Coalition Union

where the applicable Coalition Union has designated to the Claims Administrator that the Union Member is entitled to a portion of the Coalition Allowed Claim;

(d) provide notice of the claim to the Union Members of AFSCME or a Coalition Union, which AFSCME or a Coalition Union, respectively, has determined is entitled to receive a share of the AFSCME Allowed Claim or Coalition Allowed Claim, and address any questions or concerns from Union Members;

(e) solely be responsible for calculation and satisfaction of all tax obligations incurred in connection with the AFSCME Bankruptcy Fund and Coalition Bankruptcy Fund concerning the B Notes, any proceeds thereof, and any other funds concerning the AFSCME Allowed Claim and Coalition Allowed Claim, respectively, and the administration and satisfaction of employment and payroll taxes and any necessary State and Federal withholdings. Only the Claims Administrator (and not the City and its agents) will be responsible for the preparation, securing of necessary signatures, and filing of tax returns and other documents and information required by

- 6 -

applicable law in respect of the Funds, which includes the specific returns described in Treas. Reg 1.468B-2;

(f)    calculate the share of the settlement amount allocable to each Union Member, including the amount necessary for any tax withholdings, and, after withholding or paying the tax amount, distribute amounts to each Union Member; and

(g)    perform or take (or refrain from performing or taking) any other actions in connection with the Funds as may be directed by AFSCME or the Coalition necessary to effectuate the distribution of the B Notes, any proceeds thereof, and any other funds in the Funds.

The City shall have no responsibility, duty or liability for any actions or inactions of the Claims Administrator in connection with its duties, responsibilities, obligations or otherwise. The Claims Administrator has been selected and appointed solely by the Claimants, and without input of the City, to serve as the Claimants' agent (or independent contractor) to aid and assist the Claimants in facilitating the receipt and subsequent distribution of Distributions that Claimants receive from the City (or Disbursing Agent) under the Plan.

5.    AFSCME will oversee and be solely responsible for the portion of the Coalition Allowed Claim allocated to Detroit Police Detention Officers

Association (0.85%), Detroit Income Tax Investigators Association (1.46%), and Association of Municipal Inspectors (0.98%) as those locals are affiliated with AFSCME. AFSCME represents and warrants to the City that it has the power and authority, and is legally entitled, to do so.

6. A certain portion of the Distribution on account of the AFSCME Allowed Claim, as determined by AFSCME with the assistance of a Claims Administrator, will be held in the AFSCME Bankruptcy Fund as an administrative expense, to be paid to AFSCME as reimbursement for costs incurred in connection with the City's bankruptcy case and attendant litigation, and in effectuating the terms of this Order.

7. A certain portion of the Distribution on account of the Coalition Allowed Claim, as determined by the Coalition with the assistance of a Claims Administrator, will be held in the Coalition Bankruptcy Fund as an administrative expense, to be paid to the Coalition Unions and subsequently distributed among the Coalition Unions according to their documented costs, as determined by such Claims Administrator, as reimbursement for such costs incurred in the City's bankruptcy case and attendant litigation, and in effectuating the terms of this Order.

8. Taxes, expenses, and costs incurred in connection with or otherwise relating to the implementation of this Order, including the establishment of the

Funds, disbursements of amounts from the Funds, and selection and appointment of the Claims Administrator, and any fees and expenses of tax counsel or accountants and mailing expenses relating to the filing or failure to file any tax returns, will be paid only from the B Notes (or their proceeds) and funds being held within the AFSCME Bankruptcy Fund and Coalition Bankruptcy Fund, respectively, as well as income that might be earned on those amounts. The Claims Administrator will be obligated to withhold from distribution any funds necessary to pay such taxes, fees and expenses as well as any taxes that might be required to be withheld pursuant to law. The City shall have no liability, responsibility, duty or obligation of any kind for filing any such tax returns or withholding or paying any taxes associated with or relating to the Funds.

9. Neither AFSCME nor the Coalition (nor the Coalition Unions) will be liable or responsible for any tax obligations in connection with the B Notes (or any proceeds thereof) or other funds distributed to Union Members. Those obligations will be the responsibility of the Union Members and the Claims Administrator who will make any tax withholdings or payments required by law prior to such distribution, and will inform the Union Member of such withholdings or payments. AFSCME will only be responsible for any tax obligations in respect of B Notes (or the proceeds thereof) and funds distributed directly to it from the AFSCME Bankruptcy Fund. The Coalition or applicable Coalition Union will only be

responsible for any tax obligations in respect of B Notes (or the proceeds thereof) and funds distributed directly to them from the Coalition Bankruptcy Fund.

10.    The City will not be responsible or liable for any tax obligations associated with the issuance, distribution, investment, or liquidation of B Notes, any proceeds thereof, or any other funds distributed pursuant to the Plan, this Order or otherwise.  The employer share of any applicable payroll taxes for the payment amounts allocated to AFSCME and Coalition, and their Union Members, will be paid exclusively from those B Notes (or the proceeds thereof) or any other funds Distributed to the AFSCME Bankruptcy Fund on account of the AFSCME Allowed Claim or the Coalition Bankruptcy Fund on account of the Coalition Allowed Claim.  The City shall have no obligation to "gross-up" the Distributions under the Plan to the Funds to pay or reimburse the Funds for any State or Federal taxes or any other fees, costs or expenses, all such amounts being the sole responsibility of the Funds and the Claims Administrator.

11.    Any B Notes and funds not distributed from the AFSCME Bankruptcy Fund (i.e., a check is not cashed after being sent to a Union Member) will be remitted to AFSCME as an administrative expense, treated as reimbursement for costs incurred in the City's bankruptcy case and attendant litigation.  Any B Notes and funds intended to be sent to a Union Member who is deceased will be distributed to the estate of the deceased Union Member.  In the absence of an open

estate, the distribution with be handled pursuant to M.C.L.A. § 408.480, as if the payment from the Claims Administrator is being paid by an employer under AFSCME's direction to the Claims Administrator.

12.   Any B Notes and funds not distributed out of the Coalition Bankruptcy Fund (i.e., a check is not cashed after being sent to an Union Member of a Coalition Union) will be remitted to the applicable Coalition Union as an administrative expense, treated as reimbursement for costs incurred in the City's bankruptcy case and attendant litigation.   Any B Notes and funds intended to be sent to a Union Member who is deceased will be distributed to the estate of the deceased Union Member.   In the absence of an open estate, the distribution will be handled pursuant to M.C.L.A. § 408.480, as if the payment from the Claims Administrator is being paid by an employer under the Coalition's or applicable Coalition Union's direction to the Claims Administrator.

13.   Neither the City, the Disbursing Agent, nor any of their respective agents, attorneys or employees shall have any liability, responsibility, duty or obligation of any kind, whether for the filing of any tax returns, payment of any taxes or otherwise, under the Stipulation or this Order, or for the truth, accuracy or allocation of the distributions among the Coalition Unions or AFSCME, or the actions or inactions of the Claims Administrator.   AFSCME and the Coalition shall each indemnify and hold the City, the Disbursing Agent, and their respective

agents, attorneys and employees harmless from and of any claim made against the City brought about due to an act or omission of AFSCME, the Coalition or the Claims Administrator for which AFSCME, the Coalition or the Claims Administrator is responsible under the terms of the Stipulation or this Order or as a result of any representations made by any of them in the Stipulation or this Order. The Stipulation and this Order was entered into by the City exclusively for the administrative convenience of AFSCME and the Coalition in order to aid in the implementation of the Plan, pursuant to the Court's retained jurisdiction under Article VII of the Plan. The City makes no representations or warranties of any kind regarding the accuracy or completeness of the statements or legal analysis or effects set forth in the Stipulation or this Order, and undertakes no duty or obligation in the Stipulation or this Order that is not imposed on the City by the Plan or other Orders of this Court. This Order is not intended to, and does not, modify or amend the Plan or the order confirming the Plan in any respect.

14. This Order will not become effective until the order attached to the contemporaneously filed certificate of no response to the Motion ("Distribution Order") has been entered by this Court.

15. This Order resolves the informal objections raised by the Coalition and AFSCME to the Motion. As set forth in the contemporaneously filed certificate of no response to the Motion, the City states that no other objections

have been filed to the Motion. As such, AFSCME and the Coalition consent to the entry of the Distribution Order as modified in section three above. Each Claimant reserves the right to petition this Court for the modification of any process, procedure or mechanism described in this Order, which may become necessary, appropriate or helpful to the Claimant and its agents in receiving any Distributions under the Plan and in any subsequent distributions thereof, provided that, in each case, such modification does not increase any direct or indirect cost to the City, or modify the Plan or the order confirming the Plan at docket number 8272. The City expressly reserves the right to contest any proposed modification. The Parties further acknowledge and agree that the City has not consented to (or waived) any right concerning any proposed modification, whether under section 904 of the Bankruptcy Code or otherwise, and the City reserves its right under section 904 to expressly consent or withhold its consent to any such proposed modification concerning any matter that may be subject to section 904.

16.     This Court retains jurisdiction over the interpretation and enforcement of this Order.