In re:

Bankruptcy Case No. 13-53846
Judge Thomas J. Tucker
Chapter 9

City of Detroit

     Debtor,

---

## RESPONSE TO
## CITY OF DETROIT'S OBJECTION TO CLAIM NUMBER 3631
## <u>FILED BY MARVIN SEALES</u>

Now Comes, Designated Claimant Marvin Seales, by and through his attorneys, *FIEGER LAW*, and hereby files his Response to City of Detroit's Objection to Claim Number 3631, stating as follows:

1. Designated Claimant Marvin Seales admits the allegation in paragraph 1.

2. Claimant Seales neither admits nor denies the allegation in paragraph 2.

3. Claimant Seales neither admits nor denies the allegation in paragraph 3.

4. Claimant Seales neither admits nor denies the allegation in paragraph 4.

5. Claimant Seales neither admits nor denies the allegation in paragraph 5.

6. Claimant Seales neither admits nor denies the allegation in paragraph 6.

7. Claimant Seales neither admits nor denies the allegation in paragraph 7.

8. Claimant Seales neither admits nor denies the allegation in paragraph 8.

9. Claimant Seales neither admits nor denies the allegation in paragraph 9.

10. Claimant Seales denies the allegation in paragraph 10. Marvin Seales first filed his Proof of Claim, sending it by U.S. Postal Service First Class Mail to the City of Detroit Claims Processing Center in El Segundo, California, on February 11, 2014, as directed. Mr. Seales' claim was allowed and designated Claim Number 3631.

11. Claimant Seales admits that on April 28, 2015, the City served a Stay Modification Notice on Seales, related to his Claim No. 3631, allowing Seales to re-open and continue to prosecute the U.S. District Court Lawsuit which had been stayed and administratively closed due to the City's bankruptcy filing.

12. Claimant admits that the U.S. District Court granted Defendant City of Detroit's Amended Motion for Partial Summary Judgment dismissing claims against the City. Claimant denies that the claim is not enforceable against the City for the reason that in the underlying case, a Judgement was ultimately rendered favor of Seales against Officer Thomas Zberkot, a member of the Detroit Police Officers Association who the City has agreed to indemnify Zberkot in said Judgment.

13. Claimant Seales denies that the claim may be expunged for the reason that a judgement was ultimately rendered favor of Seales against Officer Thomas Zberkot, a member of the Detroit Police Officers Association who the City has agreed to indemnify and pay any amounts ultimately due after the exhaustion of all appeals. (See, attached **Exhibit 1**; Order-ECF #8272, Paragraphs 22, 29, 30; and Escrow Agreement- RECITALS, ARTICLE 4 – GENERAL PROVISIONS) The expungement of Seales' claims against the City must not expunge the City's obligation to indemnify Zberkot.

14. Claimant Seales does not object to the relief requested so long as the expungement of Seales' claims against the City does not materially and adversely affect or change the City's obligation to indemnify Zberkot.

15. Claimant neither admits nor denies the allegation in paragraph 15.


WHEREFORE, Designated Claimant Marvin Seales respectfully requests that the Court grant the relief requested as it pertains to Seales' direct claim against the City so long as the expungement of Seales' claims against the City does not materially and adversely affect or change the City's obligation to indemnify Zberkot and respectfully requests that this Court enter an order, substantially in the form attached as **Exhibit 2**, granting the relief requested

3

herein and granting the City such other and further relief as the Court may deem

just and proper.

Respectfully submitted,
*Fieger Law*

Date: December 2, 2019

Geoffrey N. Fieger (P30441)
James S, Craig (P52691)
Attorneys for Designated Claimant
19390 W. Ten Mile Rd.
Southfield, MI 48075
(248) 355-5555

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2019, I filed the foregoing with the
Clerk of the Court in the traditional manner and by US Mail to:

Marc N. Swanson, Esq.
*Miller, Canfield,*
  *Paddock & Stone, PLC*
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

Charles N. Raimi, Esq.
*City of Detroit Law Department*
2 Woodward Avenue, Suite 500
Coleman A. Young Municipal Center
Detroit, Michigan 48226

James S. Craig

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

---------------------------------------------------x
: 
In re                         :      Chapter 9
: 
CITY OF DETROIT, MICHIGAN,   :      Case No. 13-53846
: 
              Debtor.    :      Hon. Steven W. Rhodes
: 
: 
: 
---------------------------------------------------x

## ORDER CONFIRMING EIGHTH AMENDED PLAN FOR
## THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT

(vi) the DIA Settlement, in each case that such holder has, had or may have against the City's Related Entities, the State, the State Related Entities and the Released Parties; *provided, however*, that any such Liability of the Foundations, the DIA Funders and the CFSEM Supporting Organization and their Related Entities shall be released only to the extent that such Liability, if any, arises from any such entity's participation in the DIA Settlement.

21. Nothing in paragraph 20 hereof shall (a) affect the liability of the City, its Related Entities and the Released Parties that otherwise would result from any act or omission to the extent that act or omission subsequently is determined in a Final Order to have constituted gross negligence or willful misconduct; or (b) release (i) the City's obligations under the Plan or (ii) any defenses that any party may have against the City, its Related Entities, the State, the State Related Entities or the Released Parties.

22. For the avoidance of doubt, notwithstanding anything in the Plan or this Order (including paragraph 20) to the contrary, claims against officers or employees of the City in their individual capacity under 42 U.S.C. § 1983 shall not be released.

23. If the State Contribution Agreement is consummated, each holder of a Pension Claim will be deemed forever to release, waive and discharge all Liabilities arising from or related to the City, the Chapter 9 Case, including the

-80-

affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors or assigns, if any, of any of the foregoing. All settlements (including, without limitation, the Settlements), compromises, releases (including, without limitation, the Plan Releases), waivers, discharges, exculpations and injunctions set forth in the Plan shall be, and hereby are, operative, effective and binding on all Persons who may have had standing to assert any settled, released, discharged, exculpated or enjoined causes of action, and no other Person or entity shall possess such standing to assert such causes of action after the Effective Date. The compromises and settlements (including, without limitation, the Settlements) embodied in the Plan, along with the treatment of any associated Allowed Claims, shall not be subject to any collateral attack or other challenge by any Entity in any court or other forum.

**F.    Discharge of Claims**

29.    The Plan discharge provisions set forth in Section III.D.4 of the Plan are approved in all respects, are incorporated herein in their entirety, are so ordered and shall be immediately effective on the Effective Date of the Plan without further order or action on the part of the Court or any other party.

30.    In accordance with Section III.D.4 of the Plan, except as specifically provided otherwise in the Plan or this Order, as of the Effective Date, pursuant to sections 524(a)(1), 524(a)(2) and 944(b) of the Bankruptcy Code, all

-87-

debts of the City shall be, and hereby are, discharged, and such discharge will void any judgment obtained against the City at any time, to the extent that such judgment relates to a discharged debt; *provided that*, in accordance with section 944(c)(1) of the Bankruptcy Code, such discharge shall not apply to (a) debts specifically exempted from discharge under the Plan, (b) debts held by an Entity that, before the Confirmation Date, had neither notice nor actual knowledge of the Chapter 9 Case, (c) claims against officers or employees of the City in their individual capacity under 42 U.S.C. § 1983 or (d) Claims of (i) T&T Management, Inc., (ii) HRT Enterprises and (iii) the John W. and Vivian M. Denis Trust related to condemnation or inverse condemnation actions against the City alleging that the City has taken private property without just compensation in violation of the Takings Clause of the Fifth Amendment to the United States Constitution.

**G.    Release of Liens**

31.    The release and discharge of all Liens against the City's property set forth in Section IV.M of the Plan are approved in all respects, are incorporated herein in their entirety, are so ordered and shall be immediately effective on the Effective Date of the Plan without further order or action on the part of the Court. As of the Effective Date, (a) the holders of such Liens are hereby authorized and directed to release any collateral or other property of the City (including any cash collateral) held by such holder and to take such actions as

-88-

## ESCROW AGREEMENT

This Escrow Agreement (this "Agreement") is entered into as of May 10, 2019, by and among Marvin Seales, a natural person ("Seales"); City of Detroit, a municipal corporation under laws of Michigan (the "City"); and Comerica Bank, a Texas banking association (in its capacity as escrow holder hereunder, the "Escrow Holder").

## RECITALS

This Agreement is being entered into in reference to the following facts:

A.    A judgement was rendered in favor of Seales in a civil action styled as *Marvin Seales v. Thomas Zberkot,* now pending in the United States District Court, Eastern District of Michigan, Southern Division (the "Court"), case number 12-11679 (the "Case"). Although the judgment was entered against only Officer Thomas Zberkot, the City has agreed to pay any amounts ultimately due after the exhaustion of all appeals.  To ensure such payment is timely made, the City is funding the escrow created by this Agreement.

B.    On April 19, 2019, the Court entered judgement in the Case in favor of Seales and against the City in the amount of $2,910,075, inclusive of costs, interest and attorney fees (the "Judgement").  The Judgment further provides that interest will accrue on the Judgment as provided by law and in accordance with the Judgment terms.

C. Thomas Zberkot, through the City intends to appeal the Judgment.  Seales and the City have agreed that during the pendency of the City's appeal of the Judgement, the City will deposit $5,820,150 (the "Escrow Deposit") into an escrow to secure Seale's right to collect the full amount due under the Judgment if and to the extent the Judgment is affirmed on appeal.

D.    Seales and the City desire that the Escrow Holder act as escrow holder for the Escrow Deposit and the disbursement thereof, all in accordance with the terms hereof.  The Escrow Holder is willing to act in that capacity.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties hereto hereby agree as follows.

## ARTICLE 1 – DEPOSIT

1.1    Appointment. The Escrow Holder shall act as escrow holder for the Escrow Funds, as hereinafter defined, subject to the terms hereof.

1.2    Escrow Deposit.

(a)    Within fourteen (14) days after the date of the execution and delivery of this Agreement by all parties hereto, the City shall remit the Escrow Deposit to a bank account of the Escrow Holder identified by the Escrow Holder (the "Escrow Account"), by wire transfer of funds in accordance with the Escrow Holder's wire transfer of funds instructions (with those Escrow

1

Deposit, when deposited into the Escrow Account in accordance with Subsections 1.2(b) and (c) hereof, as increased in accordance with Section 1.3 and all as reduced from time to time in accordance with the procedures specified herein, being hereinafter referred to as the "Escrow Funds").

(b)     The Escrow Deposit, remitted to the Escrow Holder by wire transfer of funds in accordance with the Escrow Holder's wire transfer of funds instructions, is deemed deposited into the Escrow Account when the Escrow Holder has confirmed its receipt thereof.

(c)     If for any reason, the City remits the Escrow Deposit to the Escrow Holder by means other than by wire transfer of funds in accordance with the Escrow Holder's wire transfer of funds instructions, e.g., by means of a check, the Escrow Holder shall, nevertheless accept that remittance, but the funds represented thereby are deemed deposited into the Escrow Account only when the Escrow Holder has confirmed the collectability thereof.

(d)     The Escrow Holder shall deposit and hold all Escrow Funds in the Escrow Account until such funds are disbursed therefrom in accordance with the terms hereof.

(e)     Upon request from time to time, the Escrow Holder shall notify Seales and the City of the amount of the Escrow Funds then held in the Escrow Account.

1.3     <u>Investment</u>.

(a)     The Escrow Holder shall deposit the Escrow Funds in a Comerica Bank, Premium Business Money Market account, which is a deposit account offered by Comerica Bank.

(b)     Interest shall accrue on the Escrow Funds at a per annum rate equal 1.85% until the first date after the date of this Agreement on which there is a change in the Federal Funds Target Rate, as defined below. After that date, interest shall accrue on the Escrow Funds at a per annum rate equal to .65% less than the Federal Funds Target Rate in effect from time to time. Accordingly, as and when the Federal Funds Target Rate changes, the rate of interest accruing on the Escrow Funds shall change.

(c)     "<u>Federal Funds Target Rate</u>" means, for any day, a fluctuating interest rate per annum equal to the interest rate set by the Federal Reserve Board's monetary policymaking body, the Federal Reserve Open Market Committee as the Federal Funds Target Rate.

(d)     Except as expressly provided above, the Escrow Holder is not be obligated to earn any other yield or rate of return on the Escrow Funds. All interest and other earnings on the Escrow Funds shall become part thereof and disbursed as provided in this Agreement.

## ARTICLE 2 – PAYMENTS

2.1    Mutual Agreement Payments.

(a)    If at any time Seales and the City *resolve* the Case by mutual agreement, then Seales and the City shall give the Escrow Holder their joint direction in substantially in the form and on the terms of Exhibit "A" attached hereto ("Joint Directions"), signed and delivered by an Authorized Representative of Fieger, Fieger, Kenny & Harrington, PC, for Seales and an Authorized Representative of the City.  Each Joint Direction shall specify (i) the payee(s) of the Escrow Funds, (ii) the amount of the Escrow Funds to be disbursed to each payee  and (iii) the bank account(s) of the payee to which the specified Escrow Funds are to be remitted.

(b)    "Authorized Representative" means (i) with respect to the City, either of John Naglick, Chief Deputy Chief Financial Officer, Finance Director Office of the Chief Financial Officer, or Charles N. Raimi, deputy corporation counsel, or other persons identified by the City as the successor of that person in title, each acting alone; and (ii) with respect to Seales, either of Geoffrey Feiger or James J. Harrington IV, each acting alone.

(c)    Promptly after the Escrow Holder's actual receipt of any Joint Directions the Escrow Holder shall, without further instruction or notice, remit the Escrow Funds in accordance with the Joint Directions.

2.2    Final Judgement Payments.

(a)    If Seales and the City and  *do not resolve* the Case by mutual agreement and at the conclusion of all appeals of the Judgment, the Court of Appeals or the United States Supreme Court enters a final order thereon (a "Final Order"), then Seales or the City shall concurrently deliver to the Escrow Holder and to Seales or the City, as applicable, a notice substantially in the form and on the terms of Exhibit "B" attached hereto (each an "Final Order Notice"), signed by an Authorized Representative of an Authorized Representative for Seales and an Authorized Representative of the City. The Final Order Notice shall state (i) a Final Order has been issued resolving the Case,  (ii) the payees to whom the Escrow Funds are to be remitted to satisfy the Final Order, and (iii) the bank account(s) of those payees to which the specified Escrow Funds is/are to be remitted, accompanied in each case, by a complete copy of the Final Order.

(b)    Promptly after the Escrow Holder's actual receipt of the Final Order Notice the Escrow Holder shall, without further instruction or notice, remit the of Escrow Funds in accordance the Final Order Notice.

3

## ARTICLE 3 – ESCROW PROCEDURES

3.1    Records and Escrow Funds Disbursements.

(a)    The Escrow Holder shall keep accurate records of all transactions hereunder.

(b)    The Escrow Holder is not obligated to disburse more than the amount of the Escrow Funds.

(c)    Notwithstanding any provision hereof to the contrary, the Escrow Holder is not obligated to disburse Escrow Funds any earlier than twenty-four (24) hours after its confirmed receipt thereof, at least eight (8) of which are business banking hours.

(d)    The Escrow Holder shall disburse the Escrow Funds by wire transfer of funds whenever such funds are required to be disbursed in accordance with Article 2 unless expressly directed otherwise by the payee thereof.

3.2    Duties.  The Escrow Holder's duties hereunder shall be determined solely by the express terms of this Agreement.  The Escrow Holder's duties are purely contractual in nature.  Nothing in this Agreement shall be construed to give rise to any fiduciary obligations of the Escrow Holder with respect to Seales or the City.

3.3    Disputes.

(a)    In the event of any disagreement or the presentation of any adverse claim or demand in connection with the disbursement of the Escrow Funds, then the Escrow Holder may, at its option, after providing notice to, as applicable, Seales and/or the City of such disagreement or adverse claim or demand, refuse to comply with any such claims or demands during the continuance of such disagreement and may refrain from delivering any item affected hereby, and in so doing, the Escrow Holder shall not become liable to the undersigned or to any other person, due to its failure to comply with such adverse claim or demand.  If Seales and/or the City, as appropriate, does/do not provide satisfactory assurances to the Escrow Holder that it may act in accordance with the other provisions of this Agreement, the Escrow Holder shall be entitled to continue, without liability, to refrain and refuse to act until:

(i)    authorized to disburse the Escrow Funds by an order from a court purporting to have jurisdiction of the parties and the Escrow Funds, after which time the Escrow Holder shall be entitled to act in conformity with such order; or

(ii)    the Escrow Holder (1) shall have been notified that all differences shall have been adjusted by agreement, and (2) shall have been directed in writing to take certain actions with respect to the Escrow Funds subject to the adverse claim or demand, signed or in counterpart by Seales and/or the City, as appropriate, and by all persons making adverse claims or demands, at which time the Escrow Holder shall be protected in acting in compliance therewith.

(b)    At any time prior to the Escrow Holder's receipt of a court order or a notice, as provided in clauses "(i)" or "(ii)" of Subsection 3.3(a), the Escrow Holder may, but is not

4

required to, file a suit in interpleader in the Court and obtain an order from the court requiring the parties to interplead and litigate in such court adverse claims or demands raised pursuant to this <u>Section 3.3</u>. In the event such interpleader suit is brought, the Escrow Holder shall *ipso facto* be fully released and discharged from all obligations to further perform any and all duties or obligations imposed upon it in relation to the disputed amount. The City, as appropriate, shall to reimburse the Escrow Holder for all costs, expenses, and reasonable attorney's fees expended or incurred by the Escrow Holder in connection with such adverse claim or demand.

3.4    <u>Liability Limited</u>.

(a)    The Escrow Holder shall not be liable to anyone whatsoever by any reason of error of judgment or for any act done or step taken or omitted by them in good faith or for any mistake of fact or law or for anything which they may do or refrain from doing in connection herewith unless caused by or arising out of its own gross negligence or willful misconduct, as determined by a final, non-appealable judgement issued pursuant to <u>Sections 4.2</u> and <u>4.3</u> hereof.

(b)    In no event shall the Escrow Holder be liable for any indirect, special, consequential or punitive damages.

3.5    <u>Reliance on Documents, Etc</u>.

(a)    The Escrow Holder may rely on and shall be protected in acting in reliance upon any joint directions, disbursement notice and any other instructions or directions furnished to it in writing or pursuant to any provisions of this Agreement. The Escrow Holder may treat as genuine, and as the document it purports to be, any letter, paper, or other document furnished to it and believed by it to be genuine and to have been signed and presented by the proper party or parties. The Escrow Holder has no duty to independently verify the truth or accuracy of any statement contained therein or the signatures thereof.

(b)    Seales and the City and shall not include the Escrow Holder's name in any document unless such document has been approved in writing by the Escrow Holder, except with regard to those documents pertaining to and referring to Escrow Holder's functions as escrow holder pursuant to this Agreement.

3.6    <u>Indemnification</u>.

(a)    The City shall indemnify, defend, and hold harmless the Escrow Holder from and against all losses, damages, costs, charges, payments, liabilities, and expenses, including all costs of litigation, investigation and reasonable legal fees incurred by the Escrow Holder and arising directly or indirectly out of its role of as escrow holder pursuant to this Agreement, except as caused by its willful misconduct or gross negligence as determined by a final, non-appealable judgement issued pursuant to <u>Sections 4.2</u> and <u>4.3</u> hereof.

(b)    Any action taken or omitted by the Escrow Holder in good faith, in accordance with the opinion of its legal counsel of its choice is, per se, not grossly negligent or willful misconduct.

(c) The provisions of this <u>Section 3.6</u> shall survive the termination of this Agreement.

3.7 <u>Compensation</u>.

(a) The City shall pay the following to the Escrow Holder, as compensation for its services hereunder: (i) a $3,000 non-refundable startup fee, payable upon the Escrow Holder's execution of this Agreement; (ii) an annual renewal fee of $1,500 due on each anniversary date of this Agreement on which the Escrow Holder holds Escrow Funds in accordance with this Agreement; and (iii) a $50 bank wiring fee for each wire transfer of funds, both in and out of the Escrow Account.

(b) Payment of the startup fee in full is a condition precedent to the Escrow Holder's obligations hereunder.

(c) If the City fails to pay any fee or other sums owing to the Escrow Holder hereunder, then if and when any of the Escrow Funds are payable to the City by the terms hereof, the Escrow Holder may pay out of and charge to those Escrow Funds all such fees and sums.

3.8 <u>Customer Identification</u>.

(a) As a condition precedent to the Escrow Holder's obligations hereunder, Seales and the City shall each deliver to the Escrow Holder such identification as required by law and the Escrow Holder's customer identification program rules and documents evidencing that Seales and the City is authorized to enter into this Agreement and the identify the persons authorized to act on their behalf, all as Escrow Holder may require.

(b) Without limiting the generality <u>Subsection 3.8(a)</u>, the City shall deliver to the Escrow Holder (i) a copy of its organizational documents, e.g., articles of incorporation, operating agreement, etc., (ii) a completed certificate of authority in the form approved by the Escrow Holder, reflecting the names and titles of the City's Authorized Representatives and an original handwritten exemplar of such persons signature and (iii) a completed IRS from W-9 for Seales.

3.9 <u>Resignation</u>.

(a) The Escrow Holder may resign as the escrow holder at any time by giving thirty (30) days' notice thereof to Seales and the City. The Escrow Holder's resignation shall become effective on the thirtieth day. Upon notice or resignation by the Escrow Holder, Seales and the City shall appoint a replacement escrow holder within such thirty (30)-day period. The Escrow Holder shall deliver the Escrow Funds to such replacement escrow holder upon (a) notice of the appointment of a new escrow holder and (b) payment to the Escrow Holder in full of all fees due the Escrow Holder.

(b) If no such replacement or substitute has been appointed within 30 days of the Escrow Holder's notice of resignation, then the Escrow Holder may, at the expense of the City, petition the Court or any other court of competent jurisdiction for the appointment of a successor

EXECUTION VERSION

escrow holder. Upon appointment of a successor escrow holder, the Escrow Holder shall forward all documents and deposits pertaining to the escrow to the successor.

## ARTICLE 4 – GENERAL PROVISIONS

4.1 <u>Notices</u>.

(a) In order to be effective under the terms hereof, any notice, request, instruction, approval, waiver, demand or other communication required or permitted to be given hereunder to be given shall be (i) in writing, (ii) delivered to the address specified herein and (iii) delivered to such address either personally, by certified mail, return receipt requested, postage prepaid, or by transmission by a telecommunications device.

(b) Any such writing so addressed and delivered shall be effective (x) on the day when personally served, including delivery by overnight mail and courier service, (y) on the third business day after its deposit in the United States mail, and (z) on the business day of confirmed transmission by telecommunications device.

(c) Until notice of a change thereof is served as provided in this <u>Section 4.1</u>, the addresses of the parties hereto shall be as follows:

If to the City:
City of Detroit
Christa McClellan, Treasurer
Coleman A. Young Municipal Center
2 Woodward Avenue, Suite 1200
Detroit, Michigan 48226
Email: Mcclellanc@detroitmi.gov

With a copy to:
Charles Rami, Deputy Corporation Counsel
City of Detroit Law Department
City of Detroit
Coleman A. Young Municipal Center
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
Email: raimic@detroitmi.gov

If to the Escrow Holder:
Business Deposit Services – SCFS
Comerica Bank
411 West Lafayette Boulevard
Detroit, Michigan 48226
Attention Ops Manager
Facsimile No. (313) 222-3900

If to Seales:
Marvin Seales
20305 Fleetwood Drive
Detroit, Michigan 48225

With a copy to:
Fieger, Fieger, Kenny & Harrington, PC
19390 West Ten Mile Road
Southfield, Michigan 48075
Attention James Harrington IV and Stephanie Arndt
Facsimile No. 248-355-5148
Email: james@figerlaw.com and
s.arndt@figerlaw.com

7

With copies to:
Special Corporate Financial Services
Comerica Bank
411 West Lafayette Boulevard
Detroit, Michigan 48226
Attention Bryan Cooley
Facsimile No. (313) 222-3900

4.2    Governing Law and Waiver of Jury Trial.

(a)    This Agreement and the rights and obligations of the parties hereto shall be governed by and construed and enforced in accordance with the substantive laws of the state of Michigan without regard to any conflicts of law provisions thereof that would result in the application of the laws of any other jurisdiction.

(b)    EACH OF THE PARTIES HERETO HEREBY KNOWINGLY AND VOLUNTARILY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION BASED ON ANY MATTER ARISING OUT OF, OR IN CONNECTION WITH, OR RELATING TO THIS AGREEMENT.

4.3    Jurisdiction and Venue.

(a)    Each of the parties hereto submits to the non-exclusive personal jurisdiction of the courts of the Wayne County, Michigan, as an appropriate place for resolving all disputes concerning the Escrow Holder's actions hereunder and irrevocably waives any objection which it may now or hereafter have to the venue of any such court and any claim of inconvenient forum.

(c)    Any claim or action of any kind (including, but not limited to, any claims for breach of contract), against the Escrow Holder arising out of or connected with this Agreement shall be barred and waived unless asserted by the commencement of a court proceeding within one year after the accrual of the action or claim. This limitation shall also apply to claims which might otherwise be asserted against as a "set-off," credit, cross-complaint, or defense. This section and the forgoing limitation shall survive termination of this Agreement.

4.4    Effect of Agreement.  This Agreement shall inure to the benefit of, and be binding upon, the respective successors and assigns of the parties hereto.

4.5    Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but which together shall constitute one and the same instrument. Delivery of an executed counterpart of this Agreement by facsimile shall be equally effective as delivery of a manually executed counterpart of this Agreement.

4.6    USA Patriot Act Notice.  The Escrow Holder notifies the other parties hereto that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56, signed into law October 26, 2001) (the "Act") the Escrow Holder is required to obtain, verify and record information that identifies the other parties to this Agreement, which information includes the

8

name and address of those parties and other information that will allow the Escrow Holder to identify them in accordance with the Act. In particular:

> To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or entity that opens an account.

> WHAT THIS MEANS FOR YOU: when you open an account, we will ask the name and address of the entity and other information that will allow us to identify the business or organization. We may also ask to see identifying documents.

4.7    No Third-Party Beneficiaries.  None of Seales, the City or the Escrow Holder intends that any rights, duties or restrictions contained herein shall inure to the benefit of any third party.

4.8    Severability.  If any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, then to the maximum extent permitted by law, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement.

4.9    Final Agreement and Amendments.

(a)    This Agreement is intended by Seales, the City and the Escrow Holder to be the final, complete, and exclusive expression of the agreement between the Escrow Holder and each of them. This Agreement supersedes all prior oral or written agreements between the Escrow Holder and any other party hereto relating to the subject matter hereof.

(b)    No modification, rescission, waiver, release, or amendment of any provision of this Agreement shall be made, except by a written agreement signed by the parties hereto by a duly authorized officer thereof.

[SIGNATURES ON NEXT PAGE. BALANCE OF PAGE INTENTIONALLY LEFT BLANK.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed and delivered by and through its duly authorized representative as of the date and the year first above written.

"SEALES"                                                    "CITY"
                                                            City of Detroit

                                                            By _____
_____                                   Christa J. McLellan, Deputy CFO/Treasurer
        Marvin Seales

"ESCROW HOLDER"
Comerica Bank

By _____
        Cheryl Sickon
        Vice President-Special Corporate
        Financial Services

10

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed and delivered by and through its duly authorized representative as of the date and the year first above written.

"SEALES"

                   "CITY"
                   City of Detroit

                   By _____

_____
Marvin Seales

                   Christa J. McLellan, Deputy CFO/Treasurer

"ESCROW HOLDER"
Comerica Bank


By _____
        Cheryl Sickon
        Vice President-Special Corporate
        Financial Services

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed and delivered by and through its duly authorized representative as of the date and the year first above written.

"SEALES"

Marvin Seales

"CITY"
City of Detroit

By _____
Christa J. McLellan, Deputy CFO/Treasurer

"ESCROW HOLDER"
Comerica Bank

By _____
Cheryl Sickon
Vice President-Special Corporate
Financial Services

10

EXECUTION VERSION

## EXHIBIT "A" TO ESCROW AGREEMENT

## [FORM OF] JOINT DIRECTIONS NO. __

TO:        Business Deposit Services – SCFS
Comerica Bank ("Escrow Holder")
Attention Ops Manager
Facsimile No. (313) 222-3900

FROM:     Marvin Seales ("Seales") and City of Detroit (the "City").

COPIES TO:  Special Corporate Financial Services
Comerica Bank
Attention Bryan Cooley
Facsimile No. (313) 222-3900

SUBJECT:  Escrow Agreement among the Escrow Holder, Seales and the City
("Agreement")

DATE:      _____, 201___

These are the Joint Directions of Seales and the City referenced in Subsection 2.1(a) of the Agreement. Initially capitalized terms used herein without definition, have the meaning ascribed thereto in the Agreement.

Seales and the City have resolved the Case by mutual agreement. Accordingly, each of Seales and the City direct the Escrow Holder to, without further notice or instruction, disburse Escrow Funds in a total amount of $_____, as follows:

| Payee | Amount | Payee Bank Account |
|---|---|---|
| _____ | $_____ | Bank account number ___, in the name of "_____," maintained at the branch of _____ Bank, ABA number _____, located at _____, attention _____, reference: _____. |

IN WITNESS WHEREOF, Seales and the City have executed and delivered these Joint Directions by and through their respective duly authorized officers as of the date and year first-above written.

Marvin Seales
By Fieger, Fieger, Kenny & Harrington, PC

City of Detroit

By _____
   Authorized Representative

By _____
   Authorized Representative

11

## EXHIBIT "B" TO ESCROW AGREEMENT

## [FORM OF] FINAL ORDER NOTICE

TO:     Business Deposit Services – SCFS
Comerica Bank ("Escrow Holder")
Attention Ops Manager
Facsimile No. (313) 222-3900

FROM:     Marvin Seales ("Seales") and City of Detroit (the "City")

COPIES TO:

Special Corporate Financial Services
Comerica Bank
Attention Bryan Cooley
Facsimile No. (313) 222-3900

SUBJECT:     Escrow Agreement among the Escrow Holder, Seales and the City ("Agreement").

DATE:     [_____], 201__

This a Final Order Notice referenced in Subsection 2.2(a) of the Agreement. Initially capitalized terms used herein without definition, have the meaning ascribed thereto in the Agreement.

A Final Order has been issued resolving the Case. Attached hereto is a complete and accurate copy of the Final Order. The Final Order is final and non-appealable, from a court of competent jurisdiction.

The amount of the Escrow Funds required to satisfy the Final Order is $_____, being [as applicable: [all] or [less than all of the Escrow Funds], which is be disbursed as follows:[1]

| Payee | Amount | Payee Bank Account |
|---|---|---|
| _____ | $_____ | Bank account number ___, in the name of "_____," maintained at the branch of _____ Bank, ABA number _____, located at _____, attention _____, reference: _____. |

Promptly after its actual receipt of this Final Order Notice the Escrow Holder is hereby instructed, without further notice or instruction, to disburse the Escrow Funds in accordance herewith.

---

[1] If the amount of funds required to satisfy the Final Order is less than the total amount thereof, then a payee shall include the City.

IN WITNESS WHEREOF, the undersigned have executed and delivered this Final Order Notice by and through its duly authorized representative as of the date and year first-above written.

City of Detroit

Marvin Seales
By Fieger, Fieger, Kenny & Harrington, PC

By _____
    Authorized Representative

By _____
    Authorized Representative

13

EXECUTION VERSION

ATTACH COPY OF FINAL ORDER

**EXHIBIT 1: PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

City of Detroit, Michigan,

        Debtor,

Bankruptcy Case No.  13-53846
Judge Thomas J. Tucker
Chapter 9

---

**ORDER SUSTAINING IN PART THE CITY OF DETROIT'S OBJECTION**
**TO CLAIM NUMBER 3631 FILED BY MARVIN SEALES**

This case is before the Court on the motion entitled "City of Detroit's Objection to Claim Number 3631 Filed by Marvin Seales" and the Court being fully advised in the premises,

IT IS ORDERED that:

1. The Objection is sustained.

2. Claim No. 3631 filed by Marvin Seales is hereby disallowed and expunged in its entirety, pursuant to Section 502(b) of the Bankruptcy Code.  This expungement, however, shall in no way expunge or materially or adversely affect or change the City's obligation to indemnify Thomas Zberkot, a member of the Detroit Police Officers Association and judgment debtor of Marvin Seales, who's judgment remains unsatisfied and whom the City has previously agreed to indemnify.

3. The City's claims agent is authorized to update the claims register to reflect the relief granted in this Order.

4. The City is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Objection.