UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

        Debtor.
_____/

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

## ANSWER IN OPPOSITION TO THE CITY OF DETROIT'S OBJECTION TO CLAIM NUMBER 1862 FILED BY THE DETROIT POLICE OFFICERS ASSOCIATION ("DPOA")

The Detroit Police Officers Association ("DPOA"), through its counsel, Law Office of Barbara A. Patek, PLC and Gregory Moore Jeakle & Brooks, P.C., files this Answer in Opposition to the City of Detroit's Objection to Claim Number 1862 Filed by the DPOA (the "Answer"). In support of its Answer, the DPOA states the following:

### INTRODUCTION

1. The DPOA seeks an order overruling the City of Detroit's Objection to Claim Number 1862 [Doc. No. 13152] (the "Objection") and allowing the DPOA's Wage Claim[1] for the time period January 1, 2014 through October 1, 2014, the

---

[1] Unless otherwise indicated, capitalized terms are as defined by the Objection. The parties have previously resolved the issues related to that portion of Claim No. 1862 that dealt with the CETs. See Order Modifying Claim No. 1862, Doc. No. 13190.

effective date of the Master Agreement. See Objection, Exhibit 7[Doc. No.13152-5, p. 24].

2. The Wage Claim is based on the Roumell Award. The City's Objection must be overruled because, as set forth herein, (a) the Roumell Award created a binding, final collective bargaining agreement that was not stayed or otherwise affected by the City's appeal of that award in *City of Detroit v. DPOA*, Wayne County Circuit Court Case No. 13-004974 (the "Wage Claim Appeal"), and the City defaulted on its obligation to pay the wage increase required by the Roumell Award; (b) the Master Agreement, which was not effective until October 1, 2014, did not supersede the Roumell Award as to the 5% wage increase prior to October 1, 2014; (c) the DPOA had no obligation to take any action as to the Wage Claim Appeal, since the Wage Claim Appeal did not stay or otherwise affect the Roumell Award; and (d) because the City abandoned its Wage Claim Appeal, this Court should reject the City's effort to now litigate the issues it raised as untimely.

*The History of the Wage Claim*

3. Through its assertion of its omnibus Wage Claim, the DPOA sought to preserve the rights of each of its individual members to the wage increase required by the contract created by the Roumell Award after the City defaulted on its obligations thereunder, even as DPOA members continued to perform theirs.

The Wage Claim is part of one of several omnibus claims, Claim No. 1862, filed on behalf of the DPOA's individual members.[2] It was filed on February 20, 2014, pursuant to this Court's February 11, 2014 Order Approving Stipulation By and Between the City of Detroit and the Public Safety Unions Regarding Proofs of Claim to Be Filed by Public Safety Unions (the "Order"), [Docket No. 2678], which authorized the DPOA, as one of the Public Safety Unions to which the Order applies, to file certain omnibus claims on behalf of its individual members. All the DPOA's other omnibus claims have been resolved.

4. The City's Objection to the Wage Claim is particularly galling because the Roumell Award was an executory contract under which the City defaulted even as DPOA members continued to perform their obligations under that contract. As has been undisputed in these proceedings (and, as the Roumell Award found), the City police officers who continued to perform in the face of the City's default and who stand to benefit from the Wage Claim are the same, "vastly underpaid" officers who, even in the face of the City's service delivery

---

[2] The DPOA reserves its right to seek to have each affected individual member's claim under the omnibus Wage Claim treated as a Convenience Claim as allowed by the Plan and as has been the practice with other individual claims resolved under omnibus claims filed by the DPOA on behalf of its members. If the Court allows the Wage Claim, the DPOA is prepared to address this issue, if necessary, by separate motion.

insolvency, *In re City of Detroit*, 504 B.R. 97, 121, 169-170 (E.D. Mich. Bankr. 2013) (the "Eligibility Opinion"), stood with the City and showed up for work under daunting conditions throughout these bankruptcy proceedings.

5. While progress has been made, as recently as April of this year, the City and its Police Chief acknowledged the City's present, continuing difficulty in retaining police officers that is a result of its economic challenges. *See* Second Motion for Authority to Modify the Confirmed Plan of Adjustment to Revise the "DROP" Program for Police Officers, Doc. No. 13048, p. 33, Exhibit 5, Declaration of City Police Chief James Craig.

6. However, the sterile procedural history set forth in the City's Objection fails to acknowledge the much bleaker picture that City police officers faced six years ago when these proceedings began. The Eligibility Opinion detailed the City's service delivery insolvency and found that, as a result of the pay and manpower cuts that had been imposed by the City could not, ". . . reduce its employee expenses without further endangering public safety." Eligibility Opinion at 121, 169-170.

7. Police Chief James Craig testified to the challenges the City and its police officers faced at that time. Oct. 25 Trial Transcript, R. 1501, pgs. 177-215. Among those challenges was the very low morale of City police officers, caused, in significant part, by a ten percent pay cut and 12-hour workday

schedule forced on City police officers and their lack of voice and decision making in the department. *Id.,* pg. 193. As the chief told this Court (and consistent with the Roumell Award's findings), the City's police department was undermanned, its officers underpaid and their working conditions "deplorable." *Id*., pgs. 204-05. According to Craig, the morale of the City's police officers ". . . was the lowest . . . [he had] . . . seen of any police department [he'd] ever worked, including when . . . [he] . . . worked . . . [in Detroit] . . . in the 70's." *Id.*, pg. 192. It is in this context that that the City objects to its police officers receiving even the pennies on the dollar that the Wage Claim would provide them. This Court must reject that Objection.

<u>The Roumell Award Created a Final, Binding Collective Bargaining Contract Between the City and the DPOA.</u>

8. As the Objection acknowledges, the Roumell Award is an arbitration award rendered pursuant to Act 312, MCL 423.231, *et seq* on March 25, 2013. The Roumell Award was issued and, thereby became effective, just three days before Kevyn Orr's appointment as the City's emergency manager. Arbitration panels appointed under Act 312 have "the extraordinary power of writing the terms of a new [labor] contract. . ." *AFSCME Local 1518 v. St. Clair County Board of Commissioners,* 43 Mich. App. 342, 344 (1972). An arbitration award rendered under Act 312 is "final and binding on the parties." MCL 423.240.

Furthermore, while Act 312 awards are subject to review by the courts, such review does not stay the award. MCL 423.242.

9. As such, the Wage Claim Appeal did not stay the Roumell Award, and the collective bargaining agreement written by the Roumell Award was final and binding as of March 25, 2013.

10. The City never sought to reject the contract created by Roumell Award under the mechanism provided by PA 436, MCL 141.1552(k) or the Bankruptcy Code, 11 U.S.C. §365. As such, it remained a final and binding contract under which the City was in default as of January 1, 2014. As noted above, DPOA members continued to perform their duties under the contract despite this default and the other challenges they faced.

11. Because the pre-petition Roumell Award established a final and binding collective bargaining agreement between the City and the DPOA as of March 25, 2013, DPOA members each had a claim for the 5% wage increase the City failed to pay them beginning January 1, 2014. Their right to the 5% increase ended on October 1, 2014, when the Master Agreement became effective and controlling as to their wage rates.

*<u>The Master Agreement Does Not Supersede the Wage Increase Required by the Roumell Award Prior to the Effective Date of the Master Agreement (i.e., the 5% Increase Required from January 1, 2014 through September 30, 2014).</u>*

12. While the DPOA concedes that the Master Agreement supersedes the wage increase provided by the Roumell Award as of the Master Agreement's effective date, the Master Agreement was not effective until October 1, 2014. It does not cover the period from January 1, 2014 to September 30, 2014.

13. The wage increases described by the Master Agreement are all prospective. See Objection, Exhibit 7, Doc. No. 13152-5, p.6, 24. The wage provisions of the Master Agreement, by their terms, cover the time period from "September __, 2014 through June 30, 2019," *Id.* at p. 6, and the signature page of the Master Agreement shows that its actual, effective date was October 1, 2014. *Id.* at p. 24.

14. Furthermore, the Roumell Award is not a "'prior agreement or term sheet between the parties.'" Objection, p. 6. Rather, the Roumell Award is a contract written and imposed by the arbitrator, pursuant to Act 312, MCL 423.231, *et seq*, as a result of an impasse in negotiations between the DPOA and the City. *AFSCME Local 1518, supra.*

15. As such, the Wage Claim based on the 5% increase required by the Roumell Award for the time period pre-dating the Master Agreement (i.e., January 1, 2014 through September 30, 2014) is not superseded by the Master Agreement and must be allowed.

7
13-53846-tjt    Doc 13193    Filed 12/11/19    Entered 12/11/19 13:11:09    Page 7 of 19

*Because the Wage Claim Appeal did not Impact the March 25, 2013 Effective Date of the Roumell Award, under applicable Michigan law, the DPOA was not Required to Take any Further Action to Perfect DPOA Members' Wage Claim.*

16. Under Act 312, the pendency of an appeal of an arbitration award to the circuit court, "shall not automatically stay the order of the arbitration panel." MCL 423.242. The City took no action to stay the Roumell Award when it filed the Wage Claim Appeal, and the Roumell Award remained effective after the Wage Claim Appeal was filed.

17. While the bankruptcy petition stayed the DPOA's ability to enforce the Roumell Award, DPOA members' claim to the 5% wage increase was preserved when the DPOA timely filed the omnibus Wage Claim as part of Claim No. 1862 after the City defaulted.

18. Because the City took no action to stay the Roumell Award, no action was required of the DPOA once the bankruptcy stay was modified, and the Wage Claim must be allowed.

*Having Abandoned Multiple Opportunities to Challenge the Roumell Award, the City Cannot Ask this Court to Revisit the Issues it Abandoned When it Failed to Pursue its Wage Claim Appeal.*

19. The City filed its Wage Claim Appeal on April 15, 2013. Had it chosen to do so (and, if it believed the facts would have supported it), the City could have invoked the mechanisms provided by PA 436, MCL 141.1552(k) pre-petition or 11 U.S.C.§365, post-petition, to reject the final and binding collective

bargaining agreement that resulted from the Roumell Award. Instead, it elected to unilaterally default on the wage increase required by the Roumell Award.

20. On July 28, 2017, the City issued a stay modification notice for the DPOA's Wage Claim. See **Exhibit A.** While the stay modification notice allowed the DPOA to "promptly" liquidate its wage claim if that was necessary, no action was required, since the Roumell Award was, by law, final and binding on the parties. MCL 423.240.

21. Furthermore, although the City knew the DPOA intended to enforce its Wage Claim, even after if sent the July 28, 2017 notice of stay modification, the City took no action to prosecute its Wage Claim Appeal.

22. By failing to promptly pursue it Wage Claim Appeal even after it modified the stay, the City effectively abandoned the Wage Claim Appeal and the issues it raised. This Court should, therefore, reject the City's efforts to litigate its Wage Claim Appeal as untimely, and allow the Wage Claim for the time period that pre-dates the Master Agreement.

23. Alternatively, the Objection should be denied without prejudice to allow the City to attempt to pursue its Wage Claim Appeal, including the issue of its timeliness, in the Wayne County Circuit Court, the non-bankruptcy forum in which it is pending.

**RELIEF REQUESTED**

WHEREFORE, the DPOA respectfully requests that the Court enter an order that denies the City's Objection and allows the DPOA's omnibus Wage Claim for the time period January 1, 2014 through September 30, 2014. The DPOA further respectfully request that the order be without prejudice to the DPOA's right to have its individual members' wage claims treated as convenience claims. Alternatively, the DPOA requests that the Objection be denied without prejudice to the City's right to attempt to pursue its Wage Claim Appeal in the Wayne County Circuit Court.

Respectfully submitted by,

LAW OFFICE OF BARBARA A, PATEK, P.L.C.

By: */s/ Barbara A. Patek*
Barbara A. Patek (P34666)
Co-Counsel for the DETROIT POLICE OFFICERS ASSOCIATION
27 E. Flint St., Suite 2
Lake Orion, MI 48362
Telephone: (248) 814-9470
Facsimile: (248) 814-8231
E-mail: pateklaw@gmail.com

and

By: */s/ James Moore*
James M. Moore, Esq. (P17929)
Gregory Moore Jeakle & Brooks, P.C.
65 Cadillac Square Ste. 3727
Detroit, MI 48226
(313) 964-5600
jim@unionlaw.net
Co-Counsel for the DETROIT POLICE OFFICERS ASSOCIATION

DATED: December 11, 2019

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

       Debtor.
_____/

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on December 11, 2019, the Answer in Opposition to the City of Detroit's Objection to Claim Number 1862 Filed by the DPOA and Certificate of Service were electronically filed with the Clerk of the Court for the United States Bankruptcy Court, Eastern District of Michigan, Southern Division using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically.

    Respectfully submitted,

    LAW OFFICE OF BARBARA A, PATEK, P.L.C.

    By: */s/ Barbara A. Patek*
        Barbara A. Patek (P34666)
        Co-Counsel for the DETROIT POLICE OFFICERS ASSOCIATION
        27 E. Flint St., Suite 2

Lake Orion, MI 48362  
Telephone: (248) 814-9470  
Facsimile: (248) 814-8231  
E-mail: pateklaw@gmail.com

DATED: December 11, 2019

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

In re                                : Chapter 9

CITY OF DETROIT, MICHIGAN,           : Case No. 13-53846

                Debtor. : Hon. Thomas J. Tucker

---

## STAY MODIFICATION NOTICE

| | |
|---|---|
| Date Proof of Claim Filed: | 2/20/2014 |
| Designated Claimant: | Detroit Police Officers Association (DPOA) |
| Address: | Julie Beth Teicher<br>Erman, Teicher, Zucker & Freedman, P.C.<br>400 Galleria Officentre, Suite 444<br>Southfield MI 48034 |
| Proof of Claim Number: | 1862 |
| Caption of Any Pending Related Lawsuit: | None |
| Case Number: | Not applicable |
| Court: | Not applicable |
| Co-Defendants (if any): | Not applicable |

By this Stay Modification Notice, the City of Detroit ("the City") hereby provides notice that it has elected to permit the liquidation in a non-bankruptcy forum of the above-identified proof of claim ("the Claim") in the City's case ('the Chapter 9 Case") under chapter 9 of title 11 of the United States Code ('the Bankruptcy Code"), pursuant to the procedures ('the ADR

{K:\DOCS\LIT\GAABE\A13000\FORM\EG6534.DOC}

Procedures") established by the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims (Docket No. 2302) ('the ADR Order"), entered by the United States Bankruptcy Court for the Eastern District of Michigan ('the Bankruptcy Court") on December 24, 2013.[205]

Section I.A of the ADR Procedures provides that the City may designate any proof of claim timely filed in the Chapter 9 Case (other than certain "Excluded Claims") for liquidation pursuant to the ADR Procedures by serving an ADR Notice on the applicable claimant. Any proof of claim designated for liquidation through the ADR Procedures is referred to as a "Designated Claim." Section I.A of the ADR Procedures further provides that certain timely filed proofs of claim (other than Excluded Claims) (collectively, 'the Initial Designated Claims") shall be deemed to be Designated Claims subject to the ADR Procedures prior to the City serving an ADR Notice on the applicable claimant.

Paragraph 9 of the ADR Order provides, however, that the City in its sole discretion (a) may elect not to send an ADR Notice to any holder of an Initial Designated Claim and (b) instead file and serve on the applicable Designated Claimant a Stay Modification Notice with respect to the Initial Designated Claim. In that event, except as provided below with respect to Multi-Party Tort Claims, immediately upon the filing of the Stay Modification Notice: (a) the automatic stay of sections 362 and 922 of the Bankruptcy Code, as modified and extended from time to time by orders of the Bankruptcy Court ("the Stay"); or (b) any similar injunction (together with the Stay, "the Stay/Injunction") that may be imposed upon the confirmation or

---

[205] Capitalized terms not otherwise defined herein have the meanings given to them in the ADR Order.

effectiveness of a plan of adjustment of debts confirmed in the City's chapter 9 case (a "Chapter 9 Plan") is deemed modified with respect to the applicable Initial Designated Claim solely to permit the liquidation of the claim in a non-bankruptcy forum.

Certain Designated Claims (each, a "Multi-Party Tort Claim") arise out of personal injury actions (a) asserted concurrently against the City and one or more current or former members of the Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit Police Lieutenants & Sergeants Association or the Detroit Police Command Officers Association (each such member, a "Public Safety Union Member") and (b) with respect to which, the applicable Public Safety Union Member seeks related defense costs and/or an indemnification claim from the City (any such Public Safety Union Member, an "Indemnification Claimant," and any such claim, an "Indemnification Claim"). Concurrently with the filing of a Stay Modification Notice for a Multi-Party Tort Claim, the City shall serve a copy of the ADR Notice of the Public Safety Unions and on any related Indemnification Claimant known to the City. Pursuant to paragraph 9 of the ADR Order, solely in the case of Multi-Party Tort Claims, the Stay/Injunction is not deemed modified immediately upon the filing of the Stay Modification Notice. Instead, the Stay/Injunction is deemed modified with respect to the Multi-Party Tort Claim and any related Indemnification Claims 35 days after the filing of the Stay Modification Notice unless the Public Safety Unions or the applicable Indemnification Claimant(s) file a Stay Preservation Motion. If a Stay Preservation Motion is filed, then the Court will determine whether relief from the Stay/Injunction is appropriate with respect to the Multi-Party Tort Claim pursuant to the standards set forth in section 362(d) of the Bankruptcy Code. The City believes that the Claim **does not constitute** a Multi-Party Tort Claim.

Upon modification of the Stay/Injunction as a result of the filing and service of a Stay Modification Notice, the liquidation of each applicable Initial Designated Claim shall proceed in either: (a) the non-bankruptcy forum in which the Initial Designated Claim was pending on the Petition Date, if any, subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Initial Designated Claim was not pending in any forum on the Petition Date, then in the United States District Court for the Eastern District of Michigan or such other non-bankruptcy forum selected by you that (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the claim, (iii) has in rem jurisdiction over the property involved in the Initial Designated Claim (if applicable) and (iv) is a proper venue.

**The City has reviewed the Claim and has elected, pursuant to paragraph 9 of the ADR Procedures, to permit the liquidation of the Claim in a non-bankruptcy forum. Note that, if you do not promptly proceed with the prosecution of the Claim in the applicable non-bankruptcy forum, the City reserves its right to seek appropriate relief from the non-bankruptcy forum or the Bankruptcy Court, including, without limitation, the disallowance and expungement of the Claim.** A copy of this Stay Modification Notice may be filed with the non-bankruptcy court in which the Claim is to be liquidated as notice of the lifting of the Stay/Injunction to permit the applicable non-bankruptcy forum to adjudicate the liquidation of the Claim for purposes of the Chapter 9 Case.

Following liquidation of the Claim, whether by settlement or final judgment, you will receive an allowed general unsecured non-priority claim against the City, in the liquidated amount of the claim, which will be treated in accordance with the terms of any Chapter 9 Plan, and not a full cash payment of the liquidated amount of the Claim. For the avoidance of doubt, pursuant to paragraph 10 of the ADR Order, all proceedings against the City (or any

Indemnification Claimant) relating to the Claim following the liquidation of the Claim shall remain subject to the Stay/Injunction, absent further order of the Bankruptcy Court.

If necessary, any disputes regarding the application of the foregoing terms, conditions and limitations, the ADR Procedures or the ADR Order shall be determined by the Bankruptcy Court; provided that disputes about the jurisdiction of a matter presented to a non-bankruptcy court may be determined by such court.

                                          City of Detroit Law Department

                                          By:    */s/ Mary Beth Cobbs*
                                                      Mary Beth Cobbs (P-40080)
                                                        Assistant Corporation Counsel
                                                        2 Woodward Ave, Suite 500
                                                        Detroit, MI 48226
                                                        Phone: (313) 237-3075
                                                        Email: cobbm@detroitmi.gov

Dated: July 28, 2017