UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

        Debtor.

_____/

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

## AMENDED ANSWER IN OPPOSITION TO THE CITY OF DETROIT'S OBJECTION TO CLAIM NUMBER 1862 FILED BY THE DETROIT POLICE OFFICERS ASSOCIATION ("DPOA")

The Detroit Police Officers Association ("DPOA"), through its counsel, Law Office of Barbara A. Patek, PLC and Gregory Moore Jeakle & Brooks, P.C., files this Amended Answer in Opposition to the City of Detroit's Objection to Claim Number 1862 Filed by the DPOA (the "Amended Answer")[1]. The DPOA has conferred with the City, who has no objection to the filing of the Amended Answer. In support of its Amended Answer, the DPOA states the following:

### INTRODUCTION

1. The DPOA seeks an order overruling the City of Detroit's Objection to Claim Number 1862 [Doc. No. 13152] (the "Objection") and allowing the DPOA's Wage Claim[2] for the time period January 1, 2014 through October 1, 2014, the

_____

[1] Attached as **Exhibit B** is a redline of the Amended Answer.
[2] Unless otherwise indicated, capitalized terms are as defined by the Objection. The parties have previously resolved the issues related to that portion of Claim No.

effective date of the Master Agreement. See Objection, Exhibit 7[Doc. No.13152-5, p. 24], or, alternatively, requiring the City to pay in full all wages owed pursuant to the Roumell Award during the time period January 1, 2014 through October 1, 2014, based on the City's failure to reject the Roumell Award.

2. The Wage Claim is based on the Roumell Award. The City's Objection must be overruled because, as set forth herein, (a) the Roumell Award created a binding, final collective bargaining agreement that was not stayed or otherwise affected by the City's appeal of that award in *City of Detroit v. DPOA*, Wayne County Circuit Court Case No. 13-004974 (the "Wage Claim Appeal"), and the City defaulted on its obligation to pay the wage increase required by the Roumell Award; (b) the Master Agreement, which was not effective until October 1, 2014, did not supersede the Roumell Award as to the 5% wage increase prior to October 1, 2014; (c) the DPOA had no obligation to take any action as to the Wage Claim Appeal, since the Wage Claim Appeal did not stay or otherwise affect the Roumell Award; (d) the City never rejected the Roumell Award and, as such, the City's post-petition obligation for the amounts owed pursuant to the Roumell Award rode through the bankruptcy unaffected; and (e)

1862 that dealt with the CETs. See Order Modifying Claim No. 1862, Doc. No. 13190.

because the City abandoned its Wage Claim Appeal, this Court should reject the City's effort to now litigate the issues it raised as untimely.

*The History of the Wage Claim*

3. Through its assertion of its omnibus Wage Claim, the DPOA sought to preserve the rights of each of its individual members to the wage increase required by the contract created by the Roumell Award after the City defaulted on its obligations thereunder, even as DPOA members continued to perform theirs. The Wage Claim is part of one of several omnibus claims, Claim No. 1862, filed on behalf of the DPOA's individual members.[3] It was filed on February 20, 2014, pursuant to this Court's February 11, 2014 Order Approving Stipulation By and Between the City of Detroit and the Public Safety Unions Regarding Proofs of Claim to Be Filed by Public Safety Unions (the "Order"), [Docket No. 2678], which authorized the DPOA, as one of the Public Safety Unions to which the Order applies, to file certain omnibus claims on behalf of its individual members. All the DPOA's other omnibus claims have been resolved.

---

[3] The DPOA reserves its right to seek to have each affected individual member's claim under the omnibus Wage Claim treated as a Convenience Claim as allowed by the Plan and as has been the practice with other individual claims resolved under omnibus claims filed by the DPOA on behalf of its members. If the Court allows the Wage Claim, the DPOA is prepared to address this issue, if necessary, by separate motion.

4. The City's Objection to the Wage Claim is particularly galling because the Roumell Award was an executory contract under which the City defaulted on its wage obligations even as DPOA members continued to perform their obligations under that contract. As has been undisputed in these proceedings (and, as the Roumell Award found), the City police officers who continued to perform in the face of the City's default and who stand to benefit from the Wage Claim are the same, "vastly underpaid" officers who, even in the face of the City's service delivery insolvency, *In re City of Detroit*, 504 B.R. 97, 121, 169-170 (E.D. Mich. Bankr. 2013) (the "Eligibility Opinion"), stood with the City and showed up for work under daunting conditions throughout these bankruptcy proceedings.

5. While progress has been made, as recently as April of this year, the City and its Police Chief acknowledged the City's present, continuing difficulty in retaining police officers that is a result of its economic challenges. *See* Second Motion for Authority to Modify the Confirmed Plan of Adjustment to Revise the "DROP" Program for Police Officers, Doc. No. 13048, p. 33, Exhibit 5, Declaration of City Police Chief James Craig.

6. However, the sterile procedural history set forth in the City's Objection fails to acknowledge the much bleaker picture that City police officers faced six years ago when these proceedings began. The Eligibility Opinion detailed the City's

service delivery insolvency and found that, as a result of the pay and manpower cuts that had been imposed by the City could not, ". . . reduce its employee expenses without further endangering public safety." Eligibility Opinion at 121, 169-170.

7. Police Chief James Craig testified to the challenges the City and its police officers faced at that time. Oct. 25 Trial Transcript, R. 1501, pgs. 177-215. Among those challenges was the very low morale of City police officers, caused, in significant part, by a ten percent pay cut and 12-hour workday schedule forced on City police officers and their lack of voice and decision making in the department. *Id.,* pg. 193. As the chief told this Court (and consistent with the Roumell Award's findings), the City's police department was undermanned, its officers underpaid and their working conditions "deplorable." *Id.*, pgs. 204-05. According to Craig, the morale of the City's police officers ". . . was the lowest . . . [he had] . . . seen of any police department [he'd] ever worked, including when . . . [he] . . . worked . . . [in Detroit] . . . in the 70's." *Id.*, pg. 192. It is in this context that that the City objects to its police officers receiving even the pennies on the dollar that the Wage Claim would provide them. This Court must reject that Objection.

*The Roumell Award Created a Final, Binding Collective Bargaining Contract Between the City and the DPOA.*

8. As the Objection acknowledges, the Roumell Award is an arbitration award rendered pursuant to Act 312, MCL 423.231, *et seq* on March 25, 2013. The Roumell Award was issued and, thereby became effective, just three days before Kevyn Orr's appointment as the City's emergency manager. Arbitration panels appointed under Act 312 have "the extraordinary power of writing the terms of a new [labor] contract. . ." *AFSCME Local 1518 v. St. Clair County Board of Commissioners,* 43 Mich. App. 342, 344 (1972). An arbitration award rendered under Act 312 is "final and binding on the parties." MCL 423.240. Furthermore, while Act 312 awards are subject to review by the courts, such review does not stay the award. MCL 423.242.

9. Because the Wage Claim Appeal did not stay the Roumell Award, MCL 423.242, the collective bargaining agreement written by the Roumell Award was final and binding as of March 25, 2013.

10. The City never rejected the contract created by Roumell Award under the mechanism provided by PA 436, MCL 141.1552(k), or the Bankruptcy Code, 11 U.S.C. §365. Pursuant to the final and binding contract created by the Roumell Award, the City owed DPOA the wage increase the Roumell Award required. As noted above, DPOA members continued to perform their duties under the contract despite this default and the other challenges they faced.

11. Because the pre-petition Roumell Award established a final and binding collective bargaining agreement between the City and the DPOA as of March 25, 2013, DPOA members each had, at minimum, a claim for the 5% wage increase the City failed to pay them beginning January 1, 2014. Their right to the 5% increase ended on October 1, 2014, when the Master Agreement became effective and controlling as to their wage rates.

*The Master Agreement Does Not Supersede the Wage Increase Required by the Roumell Award Prior to the Effective Date of the Master Agreement (i.e., the 5% Increase Required from January 1, 2014 through September 30, 2014).*

12. While the DPOA concedes that the Master Agreement supersedes the wage increase provided by the Roumell Award as of the Master Agreement's effective date, the Master Agreement was not effective until October 1, 2014. It does not cover the period from January 1, 2014 to September 30, 2014.

13. The wage increases described by the Master Agreement are all prospective. See Objection, Exhibit 7, Doc. No. 13152-5, p.6, 24. The wage provisions of the Master Agreement, by their terms, cover the time period from "September __, 2014 through June 30, 2019," *Id.* at p. 6, and the signature page of the Master Agreement shows that its actual, effective date was October 1, 2014. *Id.* at p. 24.

14. Furthermore, the Roumell Award is not a "'prior agreement or term sheet between the parties.'" Objection, p. 6. Rather, the Roumell Award is a contract

written and imposed by the arbitrator, pursuant to Act 312, MCL 423.231, *et seq*, as a result of an impasse in negotiations between the DPOA and the City. *AFSCME Local 1518, supra.*

15. As such, the Wage Claim based on the 5% increase required by the Roumell Award for the time period pre-dating the Master Agreement (i.e., January 1, 2014 through September 30, 2014) is not superseded by the Master Agreement and must be allowed.

*Because the Wage Claim Appeal did not Impact the March 25, 2013 Effective Date of the Roumell Award, under applicable Michigan law, the DPOA was not Required to Take any Further Action to Perfect DPOA Members' Wage Claim.*

16. Under Act 312, the pendency of an appeal of an arbitration award to the circuit court, "shall not automatically stay the order of the arbitration panel." MCL 423.242. The City took no action to stay the Roumell Award when it filed the Wage Claim Appeal, and the Roumell Award remained effective after the Wage Claim Appeal was filed.

17. While the bankruptcy petition stayed the DPOA's ability to enforce the Roumell Award, DPOA members' claim to the 5% wage increase was preserved when the DPOA timely filed the omnibus Wage Claim as part of Claim No. 1862 after the City defaulted.

8

18. Because the City took no action to stay the Roumell Award, no action was required of the DPOA once the bankruptcy stay was modified, and the Wage Claim must be allowed.

*Because the City never rejected the Roumell Award, it rode through the bankruptcy unaffected, and the City owes DPOA members the wage increase that was effective from January 1, 2014 until October 1, 2014, the effective date of the collective bargaining agreement negotiated during the bankruptcy.*

19. The Roumell Award, while unenforceable against the City prior to confirmation, *In re Orange County,* 179 BR 177, 182 (Bankr. C. D. Cal. 1985), was never rejected by the City. As an unrejected executory contract, it created a post-petition obligation that required the City pay DPOA members a 5% wage increase, effective January 1, 2014. That wage increase governed the employment relationship between DPOA members and the City of Detroit until October 1, 2014, the effective date of the collective bargaining agreement negotiated during the bankruptcy. As such, the Roumell Award governed the wages the City of Detroit was obliged to pay DPOA member until October 1, 2014.

20. Under the Plan, unless otherwise rejected, the City assumed all executory contracts to which it was a party:

"[e]xcept as otherwise provided in the Plan, in any contract, instrument, release or other agreement or document entered into in connection with the Plan or in a Final Order of the Bankruptcy Court, or as requested in any motion Filed by the City on or prior to the Effective Date, on the Effective

9

Date, pursuant to section 365 of the Bankruptcy Code, the City will be deemed to assume all Executory Contracts . . . to which it is a party."

See Plan, Doc. No. 8045, p. 52-53. See also **Exhibit C,** Plan Excerpt.

21.    The Plan defines an Executory Contract as "a contract to which the City is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code." See Plan, Doc. 8045, p.20. The Roumell Award, which, by law, created a collective bargaining agreement between the City and the DPOA, MCL 423.240; *AFSCME Local 1518 v. St. Clair County Board of Commissioners, supra,* 43 Mich. App. at 344, is an executory contract under section 365 of the Bankruptcy Code. *See, e.g., National Labor Relations Board v. Bildisco*, 465 U.S. 513 (1984); *In re Orange County, supra*.

22.    Exhibit II.D.6 of the Plan identifies the executory contracts the City rejected at the time of confirmation. Neither the DPOA collective bargaining agreement created by the Roumell Award nor the Roumell Award are listed on Exhibit II.D.6. See Doc. No. 8045-10, pp.44, 67-68; see also **Exhibit D,** Excerpt from Plan Exhibit II.D.6.

23.    Furthermore, the Plan expressly provides that, ". . . [A]ny assumed Executory Contracts . . . will survive and remain unaffected by the entry of the Confirmation Order." See Plan, pp. 52-53 and **Exhibit C**.

10

24.     This is consistent with applicable bankruptcy law.  As the court noted in *In re Hernandez*:

> 'If the debtor fails to either assume or reject the contract by separate order or in its plan, it appears that the contract would continue in existence .... if the debtor continues operating, arguably the contract passes through the bankruptcy and remains a liability of the reorganized entity.'

287 BR 795, 800 (Bankr. D. Ariz. 2002), *quoting* 3 Collier on Bankruptcy, § 365.02[2][d] (15th Ed. Rev.1999); *see also* 7 Collier on Bankruptcy, § 1123.02[2] (15th Ed. Rev.1999).

25.     As the *Hernandez* court noted, this principle was recognized in the context of a collective bargaining agreement in Justice Brennan's concurring and dissenting opinion in *Bildisco, supra:*

> In the unlikely event that the contract is neither accepted nor rejected, it will "ride through" the bankruptcy proceeding and be binding on the debtor even after a discharge is granted. The nondebtor party's claim will therefore survive the bankruptcy proceeding.

26.465 U.S. at 546 n. 12 (Citations omitted).

27.     This case involves just such an "unlikely event." Under applicable non-bankruptcy law, the Wage Claim Appeal did not stay the Roumell Award wage increase. *AFSCME Local 1518, supra.* Furthermore, similar to section 365 of the Bankruptcy Code, Michigan law authorized the City to reject the award, MCL 141.1552(k), which it chose not to do.  As such, the Roumell Award, until it was superseded by the new DPOA collective bargaining agreement on October 1, 2014, rode through the bankruptcy unaffected, and the City should

11

be obliged to pay the unpaid wages it owes to the individual DPOA members for the affected time period.

*Having Abandoned Multiple Opportunities to Challenge the Roumell Award, the City Cannot Ask this Court to Revisit the Issues it Abandoned When it Failed to Pursue its Wage Claim Appeal.*

28. The City filed its Wage Claim Appeal on April 15, 2013. Had it chosen to do so (and, if it believed the facts would have supported it), the City could have invoked the mechanisms provided by PA 436, MCL 141.1552(k) pre-petition or 11 U.S.C.§365, post-petition, to reject the final and binding collective bargaining agreement that resulted from the Roumell Award. Instead, it elected to unilaterally default on the wage increase required by the Roumell Award.

29. On July 28, 2017, the City issued a stay modification notice for the DPOA's Wage Claim. See **Exhibit A.** While the stay modification notice allowed the DPOA to "promptly" liquidate its wage claim if that was necessary, no action was required, since the Roumell Award was, by law, final and binding on the parties. MCL 423.240.

30. Furthermore, although the City knew the DPOA intended to enforce its Wage Claim, even after if sent the July 28, 2017 notice of stay modification, the City took no action to prosecute its Wage Claim Appeal.

31. By failing to promptly pursue it Wage Claim Appeal even after it modified the stay, the City effectively abandoned the Wage Claim Appeal and the issues it

13-53846-tjt    Doc 13225    Filed 01/12/20    Entered 01/12/20 21:16:06    Page 12 of 46

raised. This Court should, therefore, reject the City's efforts to litigate its Wage

Claim Appeal as untimely, and allow the Wage Claim for the time period that

pre-dates the Master Agreement.

32. Alternatively, the Objection should be denied without prejudice to allow the

City to attempt to pursue its Wage Claim Appeal, including the issue of its

timeliness, in the Wayne County Circuit Court, the non-bankruptcy forum in

which it is pending.

## **RELIEF REQUESTED**

WHEREFORE, the DPOA respectfully requests that the Court enter an order

that denies the City's Objection to the DPOA's omnibus Wage Claim The DPOA

further requests that the Court find that the City's obligation for the amounts owed

pursuant to the Wage Claim for the time period January 1, 2014 through September

30, 2014 are post-petition obligations of the City that are unaffected by the

Bankruptcy. To the extent that the Court finds that the Wage Claim should be treated

as a claim in these bankruptcy proceedings, the DPOA respectfully requests that any

order allowing the Wage Claim be without prejudice to the DPOA's right to have its

individual members' wage claims treated as convenience claims. Alternatively, to

the extent the Court finds that the City has not abandoned its appeal of the Wage

Claim, the DPOA requests that the Objection be denied without prejudice to the

City's right to attempt to pursue its Wage Claim Appeal in the Wayne County Circuit Court.

Respectfully submitted by,

LAW OFFICE OF BARBARA A, PATEK, P.L.C.

By: _/s/ Barbara A. Patek_____
Barbara A. Patek (P34666)
Co-Counsel for the DETROIT POLICE OFFICERS ASSOCIATION
27 E. Flint St., Suite 2
Lake Orion, MI 48362
Telephone: (248) 814-9470
Facsimile: (248) 814-8231
E-mail: pateklaw@gmail.com

and

By: _/s/ James Moore_____
James M. Moore, Esq. (P17929)
Gregory Moore Jeakle & Brooks, P.C.
65 Cadillac Square Ste. 3727
Detroit, MI 48226
(313) 964-5600
jim@unionlaw.net
Co-Counsel for the DETROIT POLICE OFFICERS ASSOCIATION

DATED: January 12, 2020

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

        Debtor.

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

_____/

## LIST OF EXHIBITS

Exhibit A        Stay Modification

Exhibit B        Redline – Amended Answer

Exhibit C        Plan Excerpt

Exhibit D        Plan Exhibit II.D.6 Excerpt

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Bankruptcy Case No. 13-53846

City of Detroit, Michigan,

Honorable Thomas J. Tucker
Chapter 9

            Debtor.
_____/

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on January 12, 2020, the Amended Answer in Opposition to the City of Detroit's Objection to Claim Number 1862 Filed by the DPOA and Certificate of Service were electronically filed with the Clerk of the Court for the United States Bankruptcy Court, Eastern District of Michigan, Southern Division using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically.

Respectfully submitted,

LAW OFFICE OF BARBARA A, PATEK, P.L.C.

By:  */s/ Barbara A. Patek*
        Barbara A. Patek (P34666)
        Co-Counsel for the DETROIT POLICE
        OFFICERS ASSOCIATION
        27 E. Flint St., Suite 2
        Lake Orion, MI 48362
        Telephone: (248) 814-9470
        Facsimile: (248) 814-8231

2

E-mail:  [pateklaw@gmail.com](mailto:pateklaw@gmail.com)

DATED:   January 12, 2020

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
--------------------------------------------------    x
                                                      :
In re                                                 :      Chapter 9
                                                      :
CITY OF DETROIT, MICHIGAN,                            :      Case No. 13-53846
                                                      :
                           Debtor.                    :      Hon. Thomas J. Tucker
                                                      :
--------------------------------------------------    :
                                                      x
```

## STAY MODIFICATION NOTICE

Date Proof of Claim Filed:      2/20/2014

Designated Claimant:            Detroit Police Officers Association (DPOA)

Address:                        Julie Beth Teicher
                                Erman, Teicher, Zucker & Freedman, P.C.
                                400 Galleria Officentre, Suite 444
                                Southfield MI 48034

Proof of Claim Number:          1862

Caption of Any Pending
Related Lawsuit:                None

Case Number:                    Not applicable

Court:                          Not applicable

Co-Defendants (if any):         Not applicable

By this Stay Modification Notice, the City of Detroit ("the City") hereby provides notice that it has elected to permit the liquidation in a non-bankruptcy forum of the above-identified proof of claim ("the Claim") in the City's case ("the Chapter 9 Case") under chapter 9 of title 11 of the United States Code ("the Bankruptcy Code"), pursuant to the procedures ("the ADR

{K:\DOCS\LIT\GAABE\A13000\FORM\EG6534.DOC}

Procedures") established by the Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims (Docket No. 2302) ('the ADR Order"), entered by the United States Bankruptcy Court for the Eastern District of Michigan ('the Bankruptcy Court") on December 24, 2013.[205]

Section I.A of the ADR Procedures provides that the City may designate any proof of claim timely filed in the Chapter 9 Case (other than certain "Excluded Claims") for liquidation pursuant to the ADR Procedures by serving an ADR Notice on the applicable claimant. Any proof of claim designated for liquidation through the ADR Procedures is referred to as a "Designated Claim." Section I.A of the ADR Procedures further provides that certain timely filed proofs of claim (other than Excluded Claims) (collectively, 'the Initial Designated Claims") shall be deemed to be Designated Claims subject to the ADR Procedures prior to the City serving an ADR Notice on the applicable claimant.

Paragraph 9 of the ADR Order provides, however, that the City in its sole discretion (a) may elect not to send an ADR Notice to any holder of an Initial Designated Claim and (b) instead file and serve on the applicable Designated Claimant a Stay Modification Notice with respect to the Initial Designated Claim. In that event, except as provided below with respect to Multi-Party Tort Claims, immediately upon the filing of the Stay Modification Notice: (a) the automatic stay of sections 362 and 922 of the Bankruptcy Code, as modified and extended from time to time by orders of the Bankruptcy Court ("the Stay"); or (b) any similar injunction (together with the Stay, "the Stay/Injunction") that may be imposed upon the confirmation or

---

[205]     Capitalized terms not otherwise defined herein have the meanings given to them in the ADR Order.

effectiveness of a plan of adjustment of debts confirmed in the City's chapter 9 case (a "Chapter 9 Plan") is deemed modified with respect to the applicable Initial Designated Claim solely to permit the liquidation of the claim in a non-bankruptcy forum.

Certain Designated Claims (each, a "Multi-Party Tort Claim") arise out of personal injury actions (a) asserted concurrently against the City and one or more current or former members of the Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit Police Lieutenants & Sergeants Association or the Detroit Police Command Officers Association (each such member, a "Public Safety Union Member") and (b) with respect to which, the applicable Public Safety Union Member seeks related defense costs and/or an indemnification claim from the City (any such Public Safety Union Member, an "Indemnification Claimant," and any such claim, an "Indemnification Claim"). Concurrently with the filing of a Stay Modification Notice for a Multi-Party Tort Claim, the City shall serve a copy of the ADR Notice of the Public Safety Unions and on any related Indemnification Claimant known to the City. Pursuant to paragraph 9 of the ADR Order, solely in the case of Multi-Party Tort Claims, the Stay/Injunction is not deemed modified immediately upon the filing of the Stay Modification Notice. Instead, the Stay/Injunction is deemed modified with respect to the Multi-Party Tort Claim and any related Indemnification Claims 35 days after the filing of the Stay Modification Notice unless the Public Safety Unions or the applicable Indemnification Claimant(s) file a Stay Preservation Motion. If a Stay Preservation Motion is filed, then the Court will determine whether relief from the Stay/Injunction is appropriate with respect to the Multi-Party Tort Claim pursuant to the standards set forth in section 362(d) of the Bankruptcy Code. The City believes that the Claim **does not constitute** a Multi-Party Tort Claim.

Upon modification of the Stay/Injunction as a result of the filing and service of a Stay Modification Notice, the liquidation of each applicable Initial Designated Claim shall proceed in either: (a) the non-bankruptcy forum in which the Initial Designated Claim was pending on the Petition Date, if any, subject to the City's right to seek removal or transfer of venue or other procedural relief; or (b) if the Initial Designated Claim was not pending in any forum on the Petition Date, then in the United States District Court for the Eastern District of Michigan or such other non-bankruptcy forum selected by you that (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the claim, (iii) has in rem jurisdiction over the property involved in the Initial Designated Claim (if applicable) and (iv) is a proper venue.

**The City has reviewed the Claim and has elected, pursuant to paragraph 9 of the ADR Procedures, to permit the liquidation of the Claim in a non-bankruptcy forum. Note that, if you do not promptly proceed with the prosecution of the Claim in the applicable non-bankruptcy forum, the City reserves its right to seek appropriate relief from the non-bankruptcy forum or the Bankruptcy Court, including, without limitation, the disallowance and expungement of the Claim.** A copy of this Stay Modification Notice may be filed with the non-bankruptcy court in which the Claim is to be liquidated as notice of the lifting of the Stay/Injunction to permit the applicable non-bankruptcy forum to adjudicate the liquidation of the Claim for purposes of the Chapter 9 Case.

Following liquidation of the Claim, whether by settlement or final judgment, you will receive an allowed general unsecured non-priority claim against the City, in the liquidated amount of the claim, which will be treated in accordance with the terms of any Chapter 9 Plan, and not a full cash payment of the liquidated amount of the Claim. For the avoidance of doubt, pursuant to paragraph 10 of the ADR Order, all proceedings against the City (or any

Indemnification Claimant) relating to the Claim following the liquidation of the Claim shall remain subject to the Stay/Injunction, absent further order of the Bankruptcy Court.

If necessary, any disputes regarding the application of the foregoing terms, conditions and limitations, the ADR Procedures or the ADR Order shall be determined by the Bankruptcy Court; provided that disputes about the jurisdiction of a matter presented to a non-bankruptcy court may be determined by such court.

City of Detroit Law Department

By:    */s/ Mary Beth Cobbs*
       Mary Beth Cobbs (P-40080)
       Assistant Corporation Counsel
       2 Woodward Ave, Suite 500
       Detroit, MI 48226
       Phone: (313) 237-3075
       Email: cobbm@detroitmi.gov

Dated: July 28, 2017

# EXHIBIT B

**EXHIBIT B**
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

        Debtor.

_____/

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

### <span style="color:red">AMENDED</span> ANSWER IN OPPOSITION TO THE CITY OF DETROIT'S OBJECTION TO CLAIM NUMBER 1862 FILED BY THE DETROIT POLICE OFFICERS ASSOCIATION ("DPOA")

The Detroit Police Officers Association ("DPOA"), through its counsel, Law Office of Barbara A. Patek, PLC and Gregory Moore Jeakle & Brooks, P.C., files this <span style="color:red">Amended</span> Answer in Opposition to the City of Detroit's Objection to Claim Number 1862 Filed by the DPOA (the "<span style="color:red">Amended</span> Answer~~").~~")[1]. <span style="color:red">The DPOA has conferred with the City, who has no objection to the filing of the Amended Answer.</span> In support of its <span style="color:red">Amended</span> Answer, the DPOA states the following:

### INTRODUCTION

1. The DPOA seeks an order overruling the City of Detroit's Objection to Claim Number 1862 [Doc. No. 13152] (the "Objection") and allowing the DPOA's

---

[1] <span style="color:red">Attached as **Exhibit B** is a redline of the Amended Answer.</span>

Wage Claim[2] for the time period January 1, 2014 through October 1, 2014, the effective date of the Master Agreement. See Objection, Exhibit 7[Doc. No.13152-5, p. ~~24].~~24], or, alternatively, requiring the City to pay in full all wages owed pursuant to the Roumell Award during the time period January 1, 2014 through October 1, 2014, based on the City's failure to reject the Roumell Award.

2. The Wage Claim is based on the Roumell Award. The City's Objection must be overruled because, as set forth herein, (a) the Roumell Award created a binding, final collective bargaining agreement that was not stayed or otherwise affected by the City's appeal of that award in *City of Detroit v. DPOA*, Wayne County Circuit Court Case No. 13-004974 (the "Wage Claim Appeal"), and the City defaulted on its obligation to pay the wage increase required by the Roumell Award; (b) the Master Agreement, which was not effective until October 1, 2014, did not supersede the Roumell Award as to the 5% wage increase prior to October 1, 2014; (c) the DPOA had no obligation to take any action as to the Wage Claim Appeal, since the Wage Claim Appeal did not stay or otherwise affect the Roumell Award; ~~and (d~~(d) the City never rejected the

---

[2] Unless otherwise indicated, capitalized terms are as defined by the Objection. The parties have previously resolved the issues related to that portion of Claim No. 1862 that dealt with the CETs. See Order Modifying Claim No. 1862, Doc. No. 13190.

Roumell Award and, as such, the City's post-petition obligation for the amounts owed pursuant to the Roumell Award rode through the bankruptcy unaffected; and (e) because the City abandoned its Wage Claim Appeal, this Court should reject the City's effort to now litigate the issues it raised as untimely.

*The History of the Wage Claim*

3. Through its assertion of its omnibus Wage Claim, the DPOA sought to preserve the rights of each of its individual members to the wage increase required by the contract created by the Roumell Award after the City defaulted on its obligations thereunder, even as DPOA members continued to perform theirs. The Wage Claim is part of one of several omnibus claims, Claim No. 1862, filed on behalf of the DPOA's individual members.[3] It was filed on February 20, 2014, pursuant to this Court's February 11, 2014 Order Approving Stipulation By and Between the City of Detroit and the Public Safety Unions Regarding Proofs of Claim to Be Filed by Public Safety Unions (the "Order"), [Docket No. 2678], which authorized the DPOA, as one of the Public Safety Unions to which the Order applies, to file certain omnibus claims on behalf of

---

[3] The DPOA reserves its right to seek to have each affected individual member's claim under the omnibus Wage Claim treated as a Convenience Claim as allowed by the Plan and as has been the practice with other individual claims resolved under omnibus claims filed by the DPOA on behalf of its members. If the Court allows the Wage Claim, the DPOA is prepared to address this issue, if necessary, by separate motion.

3

its individual members.  All the DPOA's other omnibus claims have been
resolved.

4. The City's Objection to the Wage Claim is particularly galling because the
Roumell Award was an executory contract under which the City defaulted on
its wage obligations even as DPOA members continued to perform their
obligations under that contract. As has been undisputed in these proceedings
(and, as the Roumell Award found), the City police officers who continued to
perform in the face of the City's default and who stand to benefit from the
Wage Claim are the same, "vastly underpaid" officers who, even in the face of
the City's service delivery insolvency, *In re City of Detroit*, 504 B.R. 97, 121,
169-170 (E.D. Mich. Bankr. 2013) (the "Eligibility Opinion"), stood with the
City and showed up for work under daunting conditions throughout these
bankruptcy proceedings.

5. While progress has been made, as recently as April of this year, the City and its
Police Chief acknowledged the City's present, continuing difficulty in retaining
police officers that is a result of its economic challenges. *See* Second Motion
for Authority to Modify the Confirmed Plan of Adjustment to Revise the
"DROP" Program for Police Officers, Doc. No. 13048, p. 33, Exhibit 5,
Declaration of City Police Chief James Craig.

6.  However, the sterile procedural history set forth in the City's Objection fails to acknowledge the much bleaker picture that City police officers faced six years ago when these proceedings began. The Eligibility Opinion detailed the City's service delivery insolvency and found that, as a result of the pay and manpower cuts that had been imposed by the City could not, ". . . reduce its employee expenses without further endangering public safety." Eligibility Opinion at 121, 169-170.

7.  Police Chief James Craig testified to the challenges the City and its police officers faced at that time. Oct. 25 Trial Transcript, R. 1501, pgs. 177-215. Among those challenges was the very low morale of City police officers, caused, in significant part, by a ten percent pay cut and 12-hour workday schedule forced on City police officers and their lack of voice and decision making in the department. *Id.,* pg. 193. As the chief told this Court (and consistent with the Roumell Award's findings), the City's police department was undermanned, its officers underpaid and their working conditions "deplorable." *Id.*, pgs. 204-05. According to Craig, the morale of the City's police officers ". . . was the lowest . . . [he had] . . . seen of any police department [he'd] ever worked, including when . . . [he] . . . worked  . . . [in Detroit] . . . in the 70's." *Id.*, pg. 192.   It is in this context that that the City

objects to its police officers receiving even the pennies on the dollar that the Wage Claim would provide them. This Court must reject that Objection.

*The Roumell Award Created a Final, Binding Collective Bargaining Contract Between the City and the DPOA.*

8. As the Objection acknowledges, the Roumell Award is an arbitration award rendered pursuant to Act 312, MCL 423.231, *et seq* on March 25, 2013. The Roumell Award was issued and, thereby became effective, just three days before Kevyn Orr's appointment as the City's emergency manager. Arbitration panels appointed under Act 312 have "the extraordinary power of writing the terms of a new [labor] contract. . ." *AFSCME Local 1518 v. St. Clair County Board of Commissioners,* 43 Mich. App. 342, 344 (1972). An arbitration award rendered under Act 312 is "final and binding on the parties." MCL 423.240. Furthermore, while Act 312 awards are subject to review by the courts, such review does not stay the award. MCL 423.242.

9. ~~As such,~~Because the Wage Claim Appeal did not stay the Roumell Award, ~~and~~MCL 423.242, the collective bargaining agreement written by the Roumell Award was final and binding as of March 25, 2013.

10. The City never ~~sought to reject~~rejected the contract created by Roumell Award under the mechanism provided by PA 436, MCL 141.1552(k~~)~~), or the Bankruptcy Code, 11 U.S.C. §365. ~~As such, it remained a~~ Pursuant to the final and binding contract ~~under which~~created by the Roumell Award, the City ~~was~~

~~in default as of January 1, 2014~~owed DPOA the wage increase the Roumell Award   required. As noted above, DPOA members continued to perform their duties under the contract despite this default and the other challenges they faced.

11. Because the pre-petition Roumell Award established a final and binding collective bargaining agreement between the City and the DPOA as of March 25, 2013, DPOA members each had, at minimum, a claim for the 5% wage increase the City failed to pay them beginning January 1, 2014. Their right to the 5% increase ended on October 1, 2014, when the Master Agreement became effective and controlling as to their wage rates.

*The Master Agreement Does Not Supersede the Wage Increase Required by the Roumell Award Prior to the Effective Date of the Master Agreement (i.e., the 5% Increase Required from January 1, 2014 through September 30, 2014).*

12. While the DPOA concedes that the Master Agreement supersedes the wage increase provided by the Roumell Award as of the Master Agreement's effective date, the Master Agreement was not effective until October 1, 2014. It does not cover the period from January 1, 2014 to September 30, 2014.

13. The wage increases described by the Master Agreement are all prospective. See Objection, Exhibit 7, Doc. No. 13152-5, p.6, 24. The wage provisions of the Master Agreement, by their terms, cover the time period from "September __, 2014 through June 30, 2019," *Id.* at p. 6, and the signature page of the Master

7

Agreement shows that its actual, effective date was October 1, 2014. *Id.* at p. 24.

14. Furthermore, the Roumell Award is not a "'prior agreement or term sheet between the parties.'" Objection, p. 6. Rather, the Roumell Award is a contract written and imposed by the arbitrator, pursuant to Act 312, MCL 423.231, *et seq*, as a result of an impasse in negotiations between the DPOA and the City. *AFSCME Local 1518, supra.*

15. As such, the Wage Claim based on the 5% increase required by the Roumell Award for the time period pre-dating the Master Agreement (i.e., January 1, 2014 through September 30, 2014) is not superseded by the Master Agreement and must be allowed.

*Because the Wage Claim Appeal did not Impact the March 25, 2013 Effective Date of the Roumell Award, under applicable Michigan law, the DPOA was not Required to Take any Further Action to Perfect DPOA Members' Wage Claim.*

16. Under Act 312, the pendency of an appeal of an arbitration award to the circuit court, "shall not automatically stay the order of the arbitration panel." MCL 423.242. The City took no action to stay the Roumell Award when it filed the Wage Claim Appeal, and the Roumell Award remained effective after the Wage Claim Appeal was filed.

17. While the bankruptcy petition stayed the DPOA's ability to enforce the Roumell Award, DPOA members' claim to the 5% wage increase was

preserved when the DPOA timely filed the omnibus Wage Claim as part of Claim No. 1862 after the City defaulted.

18. Because the City took no action to stay the Roumell Award, no action was required of the DPOA once the bankruptcy stay was modified, and the Wage Claim must be allowed.

*Because the City never rejected the Roumell Award, it rode through the bankruptcy unaffected, and the City owes DPOA members the wage increase that was effective from January 1, 2014 until October 1, 2014, the effective date of the collective bargaining agreement negotiated during the bankruptcy.*

19. The Roumell Award, while unenforceable against the City prior to confirmation, *In re Orange County,* 179 BR 177, 182 (Bankr. C. D. Cal. 1985), was never rejected by the City. As an unrejected executory contract, it created a post-petition obligation that required the City pay DPOA members a 5% wage increase, effective January 1, 2014. That wage increase governed the employment relationship between DPOA members and the City of Detroit until October 1, 2014, the effective date of the collective bargaining agreement negotiated during the bankruptcy.  As such, the Roumell Award governed the wages the City of Detroit was obliged to pay DPOA member until October 1, 2014.

20. Under the Plan, unless otherwise rejected, the City assumed all executory contracts to which it was a party:

"[e]xcept as otherwise provided in the Plan, in any contract, instrument, release or other agreement or document entered into in connection with the Plan or in a Final Order of the Bankruptcy Court, or as requested in any motion Filed by the City on or prior to the Effective Date, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the City will be deemed to assume all Executory Contracts . . . to which it is a party."

See Plan, Doc. No. 8045, p. 52-53. See also **Exhibit C,** Plan Excerpt.

21.     The Plan defines an Executory Contract as "a contract to which the City is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code." See Plan, Doc. 8045, p.20. The Roumell Award, which, by law, created a collective bargaining agreement between the City and the DPOA, MCL 423.240; *AFSCME Local 1518 v. St. Clair County Board of Commissioners, supra,* 43 Mich. App. at 344, is an executory contract under section 365 of the Bankruptcy Code. *See, e.g., National Labor Relations Board v. Bildisco*, 465 U.S. 513 (1984); *In re Orange County, supra.*

22.     Exhibit II.D.6 of the Plan identifies the executory contracts the City rejected at the time of confirmation. Neither the DPOA collective bargaining agreement created by the Roumell Award nor the Roumell Award are listed on Exhibit II.D.6. See Doc. No. 8045-10, pp.44, 67-68; see also **Exhibit D,** Excerpt from Plan Exhibit II.D.6.

23.     Furthermore, the Plan expressly provides that, ". . . [A]ny assumed

Executory Contracts . . . will survive and remain unaffected by the entry of the

Confirmation Order." See Plan, pp. 52-53 and **Exhibit C**.

24.     This is consistent with applicable bankruptcy law.  As the court noted in *In re Hernandez*:

'If the debtor fails to either assume or reject the contract by separate order or in its plan, it appears that the contract would continue in existence .... if the debtor continues operating, arguably the contract passes through the bankruptcy and remains a liability of the reorganized entity.'

287 BR 795, 800 (Bankr. D. Ariz. 2002), *quoting* 3 Collier on Bankruptcy, § 365.02[2][d] (15th Ed. Rev.1999); *see also* 7 Collier on Bankruptcy, § 1123.02[2] (15th Ed. Rev.1999).

25.     As the *Hernandez* court noted, this principle was recognized in the context of

a collective bargaining agreement in Justice Brennan's concurring and dissenting

opinion in  *Bildisco, supra:*

In the unlikely event that the contract is neither accepted nor rejected, it will "ride through" the bankruptcy proceeding and be binding on the debtor even after a discharge is granted. The nondebtor party's claim will therefore survive the bankruptcy proceeding.

26.465 U.S. at 546 n. 12 (Citations omitted).

27.     This case involves just such an "unlikely event." Under applicable non-

bankruptcy law, the Wage Claim Appeal did not stay the Roumell Award wage

increase. *AFSCME Local 1518, supra.* Furthermore, similar to section 365 of

the Bankruptcy Code, Michigan law authorized the City to reject the award,

11

MCL 141.1552(k), which it chose not to do. As such, the Roumell Award, until it was superseded by the new DPOA collective bargaining agreement on October 1, 2014, rode through the bankruptcy unaffected, and the City should be obliged to pay the unpaid wages it owes to the individual DPOA members for the affected time period.

*Having Abandoned Multiple Opportunities to Challenge the Roumell Award, the City Cannot Ask this Court to Revisit the Issues it Abandoned When it Failed to Pursue its Wage Claim Appeal.*

19.28. The City filed its Wage Claim Appeal on April 15, 2013. Had it chosen to do so (and, if it believed the facts would have supported it), the City could have invoked the mechanisms provided by PA 436, MCL 141.1552(k) pre-petition or 11 U.S.C.§365, post-petition, to reject the final and binding collective bargaining agreement that resulted from the Roumell Award. Instead, it elected to unilaterally default on the wage increase required by the Roumell Award.

20.29. On July 28, 2017, the City issued a stay modification notice for the DPOA's Wage Claim. See **Exhibit A.** While the stay modification notice allowed the DPOA to "promptly" liquidate its wage claim if that was necessary, no action was required, since the Roumell Award was, by law, final and binding on the parties. MCL 423.240.

21.30. Furthermore, although the City knew the DPOA intended to enforce its Wage Claim, even after if sent the July 28, 2017 notice of stay modification, the City took no action to prosecute its Wage Claim Appeal.

22.31. By failing to promptly pursue it Wage Claim Appeal even after it modified the stay, the City effectively abandoned the Wage Claim Appeal and the issues it raised. This Court should, therefore, reject the City's efforts to litigate its Wage Claim Appeal as untimely, and allow the Wage Claim for the time period that pre-dates the Master Agreement.

23.32. Alternatively, the Objection should be denied without prejudice to allow the City to attempt to pursue its Wage Claim Appeal, including the issue of its timeliness, in the Wayne County Circuit Court, the non-bankruptcy forum in which it is pending.

### **RELIEF REQUESTED**

WHEREFORE, the DPOA respectfully requests that the Court enter an order that denies the City's Objection and allowsto the DPOA's omnibus Wage Claim The DPOA further requests that the Court find that the City's obligation for the amounts owed pursuant to the Wage Claim for the time period January 1, 2014 through September 30, 2014. The DPOA further are post-petition obligations of the City that are unaffected by the Bankruptcy. To the extent that the Court finds that the Wage Claim should be treated as a claim in these bankruptcy proceedings, the DPOA

respectfully ~~request~~requests that ~~the~~any order allowing the Wage Claim be without

prejudice to the DPOA's right to have its individual members' wage claims treated

as convenience claims. ~~Alternatively~~Alternatively, to the extent the Court finds that

the City has not abandoned its appeal of the Wage Claim, the DPOA requests that

the Objection be denied without prejudice to the City's right to attempt to pursue its

Wage Claim Appeal in the Wayne County Circuit Court.

Respectfully submitted by,

LAW OFFICE OF BARBARA A, PATEK, P.L.C.

By:    _/s/ Barbara A. Patek_
        Barbara A. Patek (P34666)
        Co-Counsel for the DETROIT POLICE
        OFFICERS ASSOCIATION
        27 E. Flint St., Suite 2
        Lake Orion, MI  48362
        Telephone: (248) 814-9470
        Facsimile: (248) 814-8231
        E-mail:  pateklaw@gmail.com

and

By:    _/s/ James Moore_
        James M. Moore, Esq. (P17929)
        Gregory Moore Jeakle & Brooks, P.C.
        65 Cadillac Square Ste. 3727
        Detroit, MI 48226
        (313) 964-5600
        jim@unionlaw.net
        Co-Counsel for the DETROIT POLICE
        OFFICERS ASSOCIATION

DATED: ~~December 11, 2019~~January 12, 2020

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Bankruptcy Case No. 13-53846

City of Detroit, Michigan,

Honorable Thomas J. Tucker

Chapter 9

        Debtor.

_____/

## LIST OF EXHIBITS

Exhibit A          Stay Modification

Exhibit B          Redline – Amended Answer

Exhibit C          Plan Excerpt

Exhibit D          Plan Exhibit II.D.6 Excerpt

# EXHIBIT C

District Court Claim; or (B) if the Allowed amount of such Indirect 36th District Court Claim is equal to or more than $100,000.00, Cash equal to 33% of the Allowed amount of such Indirect 36th District Court Claim, plus simple interest on outstanding amounts at a rate of five percent per annum, payable in five equal annual installments, with the first installment to be paid on or as soon as reasonably practicable after the Effective Date and the remaining four installments to be paid on the date of the first four anniversaries of the Effective Date or, if any such date is not a Business Day, on the first Business Day thereafter.

### ii. Further Obligation of City, State and 36th District Court.

Subject to the terms of the 36th District Court Settlement, the treatment of Allowed Indirect 36th District Court Claims set forth in Section II.B.3.x.i shall fulfill any obligation of the City and the 36th District Court that may exist with respect to all Indirect 36th District Court Claims. Nothing in Section II.B.3.x.i prevents the Holder of an Indirect 36th District Court Claim from seeking further relief or payment from the State with respect to such Indirect 36th District Court Claim to the extent such Claim is not satisfied pursuant to the Plan.

### C. Confirmation Without Acceptance by All Impaired Classes.

The City requests Confirmation under section 1129(b) of the Bankruptcy Code in the event that any impaired Class does not accept or is deemed not to accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Plan shall constitute a motion for such relief.

### D. Treatment of Executory Contracts and Unexpired Leases.

#### 1. Assumption.

Except as otherwise provided in the Plan, in any contract, instrument, release or other agreement or document entered into in connection with the Plan or in a Final Order of the Bankruptcy Court, or as requested in any motion Filed by the City on or prior to the Effective Date, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the City will be deemed to assume all Executory Contracts and Unexpired Leases to which it is a party. Notwithstanding the foregoing, Retirement System Indemnity Obligations shall not be assumed under the Plan and shall be discharged. For the avoidance of doubt, the City shall assume the Tunnel Lease pursuant to this Section II.D.1.

#### 2. Assumption of Ancillary Agreements.

Each Executory Contract and Unexpired Lease assumed pursuant to Section II.D.1 will include any modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract or Unexpired Lease, unless any such modification, amendment, supplement, restatement or other agreement is rejected pursuant to Section II.D.6 or designated for rejection in accordance with Section II.D.3.

#### 3. Approval of Assumptions and Assignments.

The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumption of Executory Contracts and Unexpired Leases pursuant to Sections II.D.1 and II.D.2 (and any related assignment) as of the Effective Date, except for Executory Contracts or Unexpired Leases that (a) have been rejected pursuant to a Final Order of the Bankruptcy Court, (b) are subject to a pending motion for reconsideration or appeal of an order authorizing the rejection of such Executory Contract or Unexpired Lease, (c) are subject to a motion to reject such Executory Contract or Unexpired Lease Filed on or prior to the Effective Date, (d) are rejected pursuant to Section II.D.6 or (e) are designated for rejection in accordance with the last sentence of this paragraph. An order of the Bankruptcy Court (which may be the Confirmation Order) entered on or prior to the Confirmation Date will specify the procedures for providing notice to each party whose Executory Contract or Unexpired Lease is being assumed pursuant to the Plan of: (a) the Executory Contract or Unexpired Lease being assumed; (b) the Cure Amount Claim, if any, that the City believes it would be obligated to pay in connection with such assumption; (c) any assignment of an Executory Contract or Unexpired Lease; and (d) the procedures for such party to object to

-45-

the assumption of the applicable Executory Contract or Unexpired Lease, the amount of the proposed Cure Amount Claim or any assignment of an Executory Contract or Unexpired Lease. If an objection to a proposed assumption, assumption and assignment or Cure Amount Claim is not resolved in favor of the City, the applicable Executory Contract or Unexpired Lease may be designated by the City for rejection, which shall be deemed effective as of the Effective Date.

4.        **Payments Related to the Assumption of Executory Contracts and Unexpired Leases.**

To the extent that such Claims constitute monetary defaults, the Cure Amount Claims associated with each Executory Contract or Unexpired Lease to be assumed pursuant to the Plan will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, at the option of the City: (a) by payment of the Cure Amount Claim in Cash on the Effective Date or (b) on such other terms as are agreed to by the parties to such Executory Contract or Unexpired Lease. If there is a dispute regarding: (a) the amount of any Cure Amount Claim, (b) the ability of the City or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (c) any other matter pertaining to the assumption of such contract or lease, the payment of any Cure Amount Claim required by section 365(b)(1) of the Bankruptcy Code will be made within 30 days following the entry of a Final Order resolving the dispute and approving the assumption.

5.        **Contracts and Leases Entered Into After the Petition Date.**

Contracts, leases and other agreements entered into after the Petition Date by the City, including (a) any Executory Contracts or Unexpired Leases assumed by the City and (b) the collective bargaining agreements identified on Exhibit II.D.5, will be performed by the City in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts or Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

6.        **Rejection of Executory Contracts and Unexpired Leases.**

On the Effective Date, each Executory Contract and Unexpired Lease that is listed on Exhibit II.D.6 shall be deemed rejected pursuant to section 365 of the Bankruptcy Code. The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the later of: (a) the Effective Date or (b) the resolution of any objection to the proposed rejection of an Executory Contract or Unexpired Lease. Each contract or lease listed on Exhibit II.D.6 shall be rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease. The City reserves its right, at any time on or prior to the Effective Date, to amend Exhibit II.D.6 to delete any Executory Contract or Unexpired Lease therefrom, thus providing for its assumption pursuant to Section II.D.1, or add any Executory Contract or Unexpired Lease thereto, thus providing for its rejection pursuant to this Section II.D.6. The City will provide notice of any amendments to Exhibit II.D.6 to the parties to the Executory Contracts or Unexpired Leases affected thereby and to the parties on the then-applicable service list in the Chapter 9 Case. Listing a contract or lease on Exhibit II.D.6 shall not constitute an admission by the City that such contract or lease is an Executory Contract or Unexpired Lease or that the City has any liability thereunder. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall be treated as Class 14 Claims (Other Unsecured Claims), subject to the provisions of section 502 of the Bankruptcy Code.

7.        **Rejection Damages Bar Date.**

Except as otherwise provided in a Final Order of the Bankruptcy Court approving the rejection of an Executory Contract or Unexpired Lease, Claims arising out of the rejection of an Executory Contract or Unexpired Lease must be Filed with the Bankruptcy Court and served upon counsel to the City on or before the later of: (a) 45 days after the Effective Date; or (b) 45 days after such Executory Contract or Unexpired Lease is rejected pursuant to a Final Order or designated for rejection in accordance with Section II.D.3. Any Claims not Filed within such applicable time periods will be forever barred from receiving a Distribution from, and shall not be enforceable against, the City.

# EXHIBIT D

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| DETROIT GENERAL RETIREMENT SYSTEM SERVICE CORPORATION | - | - | GRS SERVICE CONTRACT 2005, DATED MAY 25, 2005, BY AND BETWEEN THE CITY AND THE DETROIT GENERAL RETIREMENT SYSTEM SERVICE CORPORATION | NO DEPARTMENT INDICATED |
| DETROIT GENERAL RETIREMENT SYSTEM SERVICE CORPORATION | - | - | GRS SERVICE CONTRACT 2006, DATED JUNE 7, 2006, BY AND BETWEEN THE CITY AND THE DETROIT GENERAL RETIREMENT SYSTEM SERVICE CORPORATION, AS THEREAFTER AMENDED | NO DEPARTMENT INDICATED |
| DETROIT HISPANIC | 20401 | 2564466 | JOB SEARCH AND PLACEMENT | EMPLOYMENT AND TRAINING DEPARTMENT |
| DETROIT HOUSING COMMISSION | 1033965 | 2801908 | FUNDING AGREEMENT | DEPARTMENT OF PUBLIC WORKS |
| DETROIT HOUSING COMMISSION | 1033965 | 2833063 | FUNDING AGREEMENT | DEPARTMENT OF PUBLIC WORKS |
| DETROIT HOUSING COMMISSION | 1033965 | 2669571 | | HOUSING DEPARTMENT |
| DETROIT LIGHT HOUSE PROGRAM | 1001492 | 2501736 | MEDICAID SUBSTANCE ABUSE | HEALTH DEPARTMENT |
| DETROIT LIGHT HOUSE PROGRAM | 1001492 | 2515558 | SUBSTANCE ABUSE FYE 9/99 | HEALTH DEPARTMENT |
| DETROIT MEDICAL CENTER | 20097 | 2501916 | MEDICAL SERVICES | NO DEPARTMENT INDICATED |
| DETROIT METRO CONVENTION | 1027508 | 2615728 | | CIVIC CENTER DEPARTMENT |
| DETROIT NEIGHBORHOOD & FAMILY INITIATIVE | 1018914 | 2520602 | EMPOWERMENT ZONE - PUBLIC SERVICE | PLANNING AND DEVELOPMENT DEPARTMENT |
| DETROIT NEIGHBORHOOD DEVELOPMENT CORP | 1035571 | 2539512 | NEIGHBORHOOD REVITALIZATION | PLANNING AND DEVELOPMENT DEPARTMENT |
| DETROIT NONPROFIT HOUSING CORPORATION | 10641 | 2514457 | NOF PUBLIC SERVICE CONTRACT | FINANCE DEPARTMENT |
| DETROIT POLICE AND FIRE RETIREMENT SYSTEM SERVICE CORPORATION | - | - | PFRS SERVICE CONTRACT 2005, DATED MAY 25, 2005, BY AND BETWEEN THE CITY AND THE DETROIT POLICE AND FIRE RETIREMENT SYSTEM SERVICE CORPORATION | NO DEPARTMENT INDICATED |
| DETROIT POLICE AND FIRE RETIREMENT SYSTEM SERVICE CORPORATION | - | - | PFRS SERVICE CONTRACT 2006, DATED JUNE 7, 2006, BY AND BETWEEN THE CITY AND THE DETROIT POLICE AND FIRE RETIREMENT SYSTEM SERVICE CORPORATION, AS THEREAFTER AMENDED | NO DEPARTMENT INDICATED |
| DETROIT PUBLIC SCHOOLS | 1835 | 2587295 | | HUMAN SERVICES DEPARTMENT |
| DETROIT PUBLIC SCHOOLS | 1835 | 2557062 | 2001-2002 HEAD START CONTRACT | HUMAN SERVICES DEPARTMENT |
| DETROIT PUBLIC SCHOOLS | 1835 | 2532505 | HEAD START PROGRAM | HUMAN SERVICES DEPARTMENT |
| DETROIT PUBLIC SCHOOLS | 1835 | 2617076 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| DETROIT PUBLIC SCHOOLS | 1835 | 2657665 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| DETROIT PUBLIC SCHOOLS | 1835 | 2663934 | | WORKFORCE DEVELOPMENT DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| PROJECT GET | 20363 | 2806247 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| PROVIDENCE COMMUNITY SERVICES/ROSS IES | 1095234 | 2778467 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| PROVIDENCE COMMUNITY SERVICES/ROSS IES | 1095234 | 2778477 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| PROVIDENCE COMMUNITY SERVICES/ROSS IES | 1095234 | 2761554 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| PROVIDENCE COMMUNITY SERVICES/ROSS IES | 1095234 | 2778661 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| PVS TECHNOLOGIES INC | 24231 | 2501270 | | SEWERAGE DEPARTMENT |
| R L WINIGER & COMPANY | 1033182 | 2506508 | INVESTIGATIVE SERVICES | FINANCE DEPARTMENT |
| RALPH CALDER & ASSOC | 20041 | 2502210 | PATTON PARK POOL/RECREATION FACILITY | RECREATION DEPARTMENT |
| RAM CONSTRUCTION SERVICES OF MICHIGAN | 1104845 | 2786314 | CONSTRUCTION CONTRACT | RECREATION DEPARTMENT |
| RAMA RAO & ALFRED INC | 15030 | 2502274 | A/E SERVICES  WATER WORKS | NO DEPARTMENT INDICATED |
| RAMA RAO & ALFRED INC | 15030 | 2500977 | BLUEHILL STATION ADDITIONS | NO DEPARTMENT INDICATED |
| RAMA RAO & ALFRED INC | 15030 | 2767688 | CONTRACT FOR PROFESSIONAL SERVICES | INFORMATION TECHNOLOGY SERVICES |
| RANDALL S LEVINE PC DBA LEVINE & LEVINE PC | 1017685 | 2513748 | LEGAL SERVICES | OMBUDSPERSON |
| RANDY LANE PC | 1070228 | 2879763 | CONTRACT FOR ACCOUNTING SERVICES | FINANCE DEPARTMENT |
| RAYMOND JONES MD | 10770 | 2513137 | DRUG TREATMENT PROGRAM PHYSICIAN | HUMAN SERVICES DEPARTMENT |
| RAYMOND JONES MD | 10770 | 2544138 | DRUG TREATMENT PROGRAM PHYSICIAN | HUMAN SERVICES DEPARTMENT |
| RAYMOND JONES MD | 10770 | 2508115 | SERVICES FOR DRUG TREATMENT PROGRAM | FINANCE DEPARTMENT |
| RAYMOND JONES MD | 10770 | 2559423 | PHISICIAN FOR DRUG TREATMENT PROGRAM | FINANCE DEPARTMENT |
| RAYMOND JONES MD | 10770 | 2591480 | | HUMAN SERVICES DEPARTMENT |
| REACH INC | 17260 | 2504789 | NOF-PUBLIC SERVICE CONTRACT | FINANCE DEPARTMENT |
| REACH PROJECT INC | 1048827 | 2599632 | | HEALTH DEPARTMENT |
| REDSTONE ARCHITECTS | 1001648 | 2506677 | CAMPUS MARTIUS PARK DEVELOPMENT | RECREATION DEPARTMENT |
| REID & REID PC | 1012544 | 2633008 | | LAW DEPARTMENT |
| RENAISSANCE PROPERTIES INC | 1032580 | 2562053 | | FINANCE DEPARTMENT |
| RENAISSANCE PROPERTIES INC | 1032580 | 2534576 | | HUMAN SERVICES DEPARTMENT |
| RESOURCE DATA SYSTEMS CORP | 10349 | 2500772 | LAW DEPARTMENT COMPUTER SYSTEMS | LAW DEPARTMENT |
| RESOURCE NETWORK | 1007604 | 2560345 | JOB SEARCH AND PLACEMENT | EMPLOYMENT AND TRAINING DEPARTMENT |
| RESOURCE NETWORK | 1007604 | 2726455 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| RESOURCE NETWORK | 1007604 | 2778663 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| RESPONSE NETWORK | 1103012 | 2771949 | CUSTOM SOFTWARE DEVELOPMENT | POLICE DEPARTMENT |
| RIGHT ASSOCIATES /JANNOTTA BRAY & ASSOCIATES | 20383 | 2511677 | EXECUTIVE COACHING SERVICES | HUMAN RESOURCES DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| RILEY ROUMELL & CONNOLLY PC | 1060612 | 2623897 | | LAW DEPARTMENT |
| RILEY ROUMELL & CONNOLLY PC | 1060612 | 2623906 | | LAW DEPARTMENT |
| RILEY ROUMELL & CONNOLLY PC | 1060612 | 2623942 | | LAW DEPARTMENT |
| RLI INSURANCE COMPANY | 1099957 | 2765028 | | WATER DEPARTMENT |
| ROBERT C BIRKS MD PC | 7251 | 2578999 | | HUMAN SERVICES DEPARTMENT |
| ROBERT C BIRKS MD PC | 7251 | 2592085 | | HUMAN SERVICES DEPARTMENT |
| ROBERT MATHEWS & ASSOCIATES INC | 1059586 | 2620918 | | HUMAN SERVICES DEPARTMENT |
| ROBERT SEDLER | 9851 | 2769756 | CONSULTANT SERVICES | LAW DEPARTMENT |
| ROSE & ROSE | 15597 | 2500750 | LEGAL SERVICES | NO DEPARTMENT INDICATED |
| ROSS LEARNING INC | 10675 | 2562588 | WF WTW TIREMAN/GREYDALE PY 2002 | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2562593 | WF & WTW FORT WAYNE PY 2002 | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2554055 | BASIC LITERACY & COORDINATION | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2562407 | WF & WTW LTC PY 2002 | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2549631 | WTW COMPETITIVE COORDINATION | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2537106 | WIA ITA IMPLEMENTATION PY 01 | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2540277 | WF & FOOD STAMP ITA PY 01 | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2572344 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2624160 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2599059 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROY F WESTON INC | 16868 | 2512933 | ENVIRONMENTAL SERVICES - FICS #74431 | FINANCE DEPARTMENT |
| ROY F WESTON INC | 16868 | 2501574 | WATERFRONT RECLAMATION PROJECT | LAW DEPARTMENT |
| ROYAL ROOFING CO INC | 13119 | 2730710 | ROOF REPLACEMENT | RECREATION DEPARTMENT |
| S D HAMILTON GROUP | 1019484 | 2603327 | | FINANCE DEPARTMENT |
| SABRE CONTRACTING LLC | 1106108 | 2797979 | RENOVATIONS | RECREATION DEPARTMENT |
| SACRED HEART MAJOR SEMINARY | 1576 | 2501491 | FICS CONTRACT 078684  SPO 2510159 | HEALTH DEPARTMENT |
| SACRED HEART REHABILITATION CENTER, INC | 1013401 | 2507443 | MEDICAID S.A. FYE 9/99 SACRED HEART | HEALTH DEPARTMENT |
| SAFE CENTER INC | 19547 | 2501207 | | NO DEPARTMENT INDICATED |
| SAFE CENTER INC | 19547 | 2557542 | FAMILY SERVICES AND COUNSELING | FINANCE DEPARTMENT |
| SAFE CENTER INC | 19547 | 2533141 | EMERGENCY SERVICES | HUMAN SERVICES DEPARTMENT |
| SALVATION ARMY BOOTH SERVICES | 15401 | 2510155 | TRANSITIONAL HOUSING | FINANCE DEPARTMENT |
| SANDERS & JOHNSON PLLC | 1003611 | 2538824 | LEGAL SERVICES | LAW DEPARTMENT |
| SANDERS & JOHNSON PLLC | 1003611 | 2538789 | LEGAL SERVICES | LAW DEPARTMENT |
| SANDERS & JOHNSON PLLC | 1003611 | 2538820 | LEGAL SERVICES: CLAUDE NELSON V CITY | LAW DEPARTMENT |
| SANDERS & JOHNSON PLLC | 1003611 | 2505098 | LEGAL SERVICES | FINANCE DEPARTMENT |
| SANDERS & JOHNSON PLLC | 1003611 | 2538816 | BRADFORD ERVING V CITY/HAYWARD | LAW DEPARTMENT |
| SANDERS & JOHNSON PLLC | 1003611 | 2538794 | EST. OF TOMMIE THOMAS V CITY | LAW DEPARTMENT |
| SANDERS & JOHNSON PLLC | 1003611 | 2534988 | PATRICK HATFIELD V CITY | LAW DEPARTMENT |