## ARTICLE 5. ELIGIBILITY FOR RETIREMENT

### Sec 5.1. Eligibility for Unreduced Normal Retirement Benefit

Any Member who attains his or her Normal Retirement Age while employed by the City may retire upon written application filed with the Board setting forth the date on which the Member desires to be retired. The date of retirement shall be effective as of the first day following the later of (i) the Member's last day on the City payroll, or (ii) the date the Member executes and files an application for retirement, notwithstanding that the Member may have separated from service during the notification period. Such a Member shall be entitled to receive an unreduced Retirement Allowance calculated as provided in Section 6.1 and payable in a form of payment selected by the Member pursuant to Section 8.1.

### Sec 5.2. Eligibility for Deferred Vested Retirement Benefit

Any Member who terminates employment with the City prior to satisfying the requirements for receipt of a retirement benefit under Section 5.1 and who is credited with ten (10) or more years of Vesting Service upon his or her termination of employment (regardless of Age) shall be entitled to receive an unreduced Retirement Allowance calculated pursuant to Section 6.1 commencing at any time following his or her Attainment of Age sixty-two; provided that any member of DPLSA or DPCOA who is credited with ten (10) or more years of Vesting Service upon his or her termination of employment (regardless of Age) shall be entitled to receive an unreduced Retirement Allowance commencing at any time following his or her Attainment of Age fifty-five. Any Member (other than a member of DPLSA or DPCOA), may elect to begin receiving a Retirement Allowance following his or her Attainment of Age fifty-five, actuarially reduced for commencement prior to age sixty-two, in lieu of an unreduced Retirement Allowance beginning at age sixty-two. The Retirement Allowance payable to a Member who makes such an election shall be the Actuarial Equivalent of the deferred Retirement Allowance that would be payable to the Member at his Normal Retirement Date pursuant to Section 6.1, assuming the Member terminated employment on the early retirement date, as determined by the Plan Actuary based upon factors, assumptions and methods adopted by the Board upon recommendation of the Investment Committee. Deferred vested retirement benefits shall be payable in accordance with a form of payment selected by the Member pursuant to Section 8.1.

### Sec 5.3. Eligibility for Disability Retirement Benefit – Duty Disability

(1) If, prior to attainment of his or her Normal Retirement Date, a Member shall become Totally Disabled for duty by reason of injury, illness or disease resulting from performance of duty and if, pursuant to Section 5.6, the Board shall find such injury, illness or disease to have resulted from the performance of duty, on written application to the Board by or on behalf of such Member or by the head of his or her Department such Member shall be retired, notwithstanding that during such period of notification he or she may have separated from service and provided further that the Medical Director, after examination of such Member shall certify to the Board the Member's Total Disability. A Member who retires as a result of duty disability shall receive for a period of twenty-four months the sum of:

- 26 -

(a)   a basic benefit equal to fifty percent (50%) of his or her Final Compensation at the time his or her duty disability retirement begins, and

(b)   a supplemental benefit equal to sixteen and two-thirds percent (16-2/3%) of his or her Final Compensation at the time his or her duty disability retirement begins.

Subject to Section 9.5, on the first day of each Plan Year, a Member's duty disability benefit will be increased as provided in Section 6.2.

(2)   After a Member receives benefits hereunder for a period of twenty-four months, the Board will determine whether the Member is disabled from any occupation. If the Member is disabled from any occupation, the Member shall continue to receive the benefit provided in paragraphs (1)(a) and (1)(b) until such time as the Member would have attained twenty-five years of Credited Service had he or she continued in active service with the City. At that time, the Member shall continue to receive the benefit described in paragraph 1(a) above; however, benefits described in paragraph (1)(b) above will cease. If the Member is not disabled from any occupation, he or she shall continue to receive the benefit described in paragraph (1)(a) above; benefits described in paragraph (1)(b) will cease.

(3)   Duty disability benefits shall continue to be paid to a Member on duty disability retirement after the Member has attained twenty-five years of Credited Service to the earlier of (i) the Member's Attainment of Age sixty-five, or (ii) the date the Member ceases to be Totally Disabled as determined by the Board. Upon termination of disability or Attainment of Age sixty-five, a Member with twenty-five years of Credited Service shall be eligible to receive a Retirement Allowance as provided in Section 6.1. The amount of such Retirement Allowance shall be equal to the amount which would have been payable to the Member if the Member's conversion from duty disability retirement to a Retirement Allowance had occurred on the date the Member attained twenty-five years of Credited Service.

(4)   If a Member on duty disability retirement returns to active service with the City and shall re-qualify for duty disability retirement for the same or related reasons within twenty-four months of his or her return to active service, then the disability shall be deemed a continuation of the prior Total Disability and the period of the Member's active service following the return to work will not qualify the Member to be entitled to a new initial determination of disability for purposes of determining the benefit payable to the Member. Instead, such Member will return to duty disability retirement benefits based on the number of months of disability with which the Member was credited at the time of his or her return to active service, as if there had not been a break in his or her period of duty disability retirement.

(5)   During the period a Member is eligible to receive duty disability benefits under this Section 5.3, the Member shall continue to be credited with Credited Service until the Member accrues twenty-five years of Credited Service, at which time accrual of Credited Service shall cease.

- 27 -

(6)　In the event that a recipient of a duty disability retirement benefit receives earned income from gainful employment during a calendar year, the amount of the Member's disability benefit payable during the next subsequent Plan Year will be adjusted so it does not exceed the difference between (i) the Member's Compensation at the date of duty disability, increased by the Pension Improvement Factor (Escalator) (if any) applicable to such benefit pursuant to Section 6.2 during the period of duty disability, and (ii) the amount of the Member's remuneration from gainful employment during the prior calendar year. The amount of income received by a Member shall be determined by the Board based upon information received from the Member or based upon information secured from other reliable sources. Furnishing such information to the Board at such times as the Board shall require shall be a condition for the Member's continued eligibility for duty disability benefits. In the event a Member's Retirement Allowance was not appropriately reduced for any period in which he or she is engaged in a gainful occupation, the Board shall adjust future benefit payments to such Member until the amount of the overpayment is recouped by the Retirement System.

**Sec 5.4.　Eligibility for Disability Retirement Benefit – Non-Duty Disability**

(1)　Upon the application of a Member or the Member's Department head, a Member who becomes totally and permanently disabled prior to his or her Normal Retirement Age in the employ of the City not resulting from the performance of duty shall be retired by the Board; provided that the Medical Director shall certify to the Board after a medical examination, that such Member is Totally Disabled. Such a Member shall receive the following applicable benefits:

(a)　If such Member has less than five years of Credited Service at the time of his or her disability retirement, his or her Accumulated Mandatory Employee Contributions standing to his or her credit in the Accumulated Mandatory Employee Contributions Fund shall be returned to him or her, or at his or her option he or she shall receive a cash refund annuity which shall have the Actuarial Equivalent Value of his or her Accumulated Mandatory Employee Contributions. For purposes of this Section 5.4(1)(a), a "cash refund annuity" is an annuity that provides a death benefit equal to the positive difference, if any, between the original cost of the annuity and the sum of annuity payments received by the Member prior to his or her death.

(b)　If such Member has five or more years of Credited Service at the time of his or her disability retirement, he or she shall receive a disability Retirement Allowance commencing as of the date of disability computed in accordance with the provisions of Section 6.1 and payable in any of the optional forms provided in Section 8.1 hereof. His or her annual Straight Life Retirement Allowance shall not be less than twenty per cent (20%) of his or her Average Final Compensation.

(2)　If a Member receiving non-duty disability retirement benefits is or becomes engaged in a gainful occupation, business, or employment paying more than the difference between the disabled Member's Retirement Allowance increased by the Pension Improvement Factor (Escalator) (if any) applicable to such benefit pursuant to Section 6.2, and his or

her Average Final Compensation determined as of the date of non-duty disability, the Member's Retirement Allowance shall be reduced by the amount of such difference. If the amount of the Member's earnings changes, the Retirement Allowance may be adjusted accordingly. The amount of income received by a Member shall be determined by the Board based upon information received from the Member or based upon information secured from other reliable sources. Furnishing such information to the Board at such times as the Board shall require shall be a condition for the Member's continued eligibility for non-duty disability benefits. In the event a Member's Retirement Allowance was not appropriately reduced for any period in which he or she is engaged in a gainful occupation, the Board shall adjust future benefit payments to such Member until the amount of the overpayment is recouped by the Retirement System.

**Sec 5.5.   Disability Retirees; Reexamination**

(1)     At least once each year following the retirement of a Member under Section 5.3 or Section 5.4, the Board shall require that such disabled Member who has not attained his or her Normal Retirement Age undergo a medical examination, to be made by, or under the direction of the Medical Director; provided, however, that medical examinations shall not be required if the Medical Director determines that the Member's condition is permanent and there is no need for further reexamination. Members shall be reimbursed for reasonable costs actually incurred by the Members in connection with such examinations. Should any such Retiree who has not attained Normal Retirement Age fail to submit to a required medical examination, the Member's Retirement Allowance may be suspended by the Board until the examination is completed. Should such failure continue for one year, all of the disabled Member's rights in and to the duty or non-duty disability Retirement Allowance may be revoked by the Board. If upon such examination of a Member, the examiner reports that the Member is no longer Totally Disabled, and such report is concurred in by the Board, the Member shall be restored to active service with the City and the Retirement Allowance paid pursuant to Section 5.3 or Section 5.4 shall be suspended until the Member terminates active service with the City.

(2)     A disabled Member who has been, or shall be, reinstated to active service in the employ of the City shall again become an active Member. All Credited Service at the time of reinstatement, in the case of a duty disabled Member, or at the time of the disability retirement, for a non-duty disabled Member, shall be restored to the Member; provided that, if a non-duty disabled Member received a distribution of his or her Accumulated Mandatory Contributions following the disability retirement pursuant to Section 5.4(1)(a), the Member recontributes the Accumulated Mandatory Contributions to the Retirement System within two years of his or her re-employment date. If a Member who receives a distribution of his or her Accumulated Mandatory Contributions fails to recontribute such amount to the Retirement System within two years of re-employment, only the Credited Service earned on and after the Member's re-employment date shall be taken into consideration in determining his or her Retirement Allowance.

**Sec 5.6. Disability Benefits; Procedures for Determination of Disability**

(1)    The Board shall establish procedures for determining whether a Member is Totally Disabled. Such procedures shall be consistent with any collective bargaining agreements between the City and the unions covering Police Employees and Fire Employees.

(2)    If a Member is determined to be Totally Disabled under Section 5.3(1) or 5.4(1), the Board or its designee will examine the pension file, including the submissions of the Member and the Police or Fire Department, to determine if there is any dispute as to whether the disability "resulted from the performance of duty" within the meaning of the Combined Plan. If it is undisputed that the disability did result from the performance of duty, the Board will grant duty disability retirement benefits. If it is undisputed that the disability did not result from the performance of duty, the Board will grant non-duty disability retirement benefits, provided the Member meets the other conditions of eligibility. If the performance of duty issue is in dispute, the Board will refer the matter to arbitration by a member of the Disability Retirement Review Board ("DRRB"). The decision of the DRRB member as to whether the disability resulted from the performance of duty shall be final and binding upon the Member, the Department and the Board. The DRRB shall consist of three qualified arbitrators who will be individually assigned in rotating order to decide the matters referred to arbitration by the Board. The three members of the DRRB shall be disinterested persons qualified as labor arbitrators and shall be selected in accordance with agreements between the City and the unions representing Members. The procedure for the termination of DRRB members and the selection of new DRRB members also shall be carried out in accordance with the agreements between the City and the unions representing Members.

(3)    The hearing before a member of the DRRB will be conducted in accordance with the following procedures:

    (a)    The Member and the City will have the right to appear in person or otherwise may be represented by counsel if they wish and will be afforded an equal opportunity to present evidence relevant to the issues;

    (b)    A court reporter will be present and make a stenographic record of the proceedings;

    (c)    The hearing will be closed to the public, except that the Member may select one person to be with him or her in the hearing room; provided, however, that person may not testify;

    (d)    The witnesses will be sequestered;

    (e)    The witnesses will be sworn by the court reporter and testify under oath;

    (f)    The Member may not be called by the City as an adverse witness;

    (g)    The DRRB member will apply the rules of evidence and follow the procedures which are customarily applied and followed in labor arbitration cases;

(h)    If the Member wishes to have an employee of the City released from duty to appear as a witness on his or her behalf, the Member may so inform the Board in writing which, in turn, will submit a written request to the appropriate Department executive for the release of the employee for the purpose of so testifying;

(i)    The DRRB member will afford the parties an opportunity for the presentation of oral argument and/or the submission of briefs;

(j)    The DRRB member will issue a written decision containing credibility resolutions as necessary, findings of fact and conclusions with respect to all relevant issues in dispute;

(k)    The authority of the DRRB member is limited to deciding whether or not the Member's disability "resulted from the performance of duty" within the meaning of the Combined Plan. The DRRB member shall have no authority to add to, subtract from, modify or disregard the terms of the Combined Plan; and

(l)    The costs associated with the hearing, including the arbitrator's fees and expenses and the court reporter's fees and expenses, will be paid by the Retirement System.

(4)    If a disabled Member is determined by the Board to no longer be Totally Disabled, he or she may appeal that determination within seven (7) days thereof by filing a written request with the Board for a re-examination. The Board shall promptly arrange for such re-examination. The Member's disability benefits will be continued pending that final and binding medical finding, and if the finding is that the Member is no longer Totally Disabled, his or her disability benefits will be further continued while the Police or Fire Department conducts such examinations and/or investigations as necessary to determine whether the Member is qualified for reappointment to active duty. In the event that the examinations and/or investigations conducted by the Police Department result in a determination that a Member is not qualified, for medical reasons, for reappointment to active duty, disability benefits will be continued.

(5)    The Board shall not act upon or grant the application filed by a Member who, although he or she is not capable of performing the full duties of a Police Employee or Fire Employee, has not suffered any diminishment of his or her base wages or benefits because he or she is either:

(a)    regularly assigned to a position, the full duties of which he or she is capable of performing; or

(b)    assigned to a restricted duty position, unless the Member's Department advises that it intends to seek a disability retirement for the Member in the foreseeable future.

(6)    The provisions in paragraph (5) above are not intended to and will not:

(a)    affect the right of a Member to seek a disability retirement when no restricted duty position is available; or

- 31 -

(b) restrict in any way the existing authority of the Chief of Police or the Fire Commissioner to seek a duty or non-duty disability retirement for a Member or for that Member, at that time, to request a duty or non-duty disability retirement.

### Sec 5.7. Return of Accumulated Mandatory Contributions to Non-Vested Member

If a Member ceases employment with the City other than by reason of retirement, death or Disability, the Member may elect to receive distribution of the Accumulated Mandatory Employee Contributions made to the Retirement System by such Member. If a Member elects to receive his or her Accumulated Mandatory Employee Contributions, such amounts shall be paid to the Member in a lump sum payment or in equal monthly installments for a period not to exceed three years, according to such rules and regulations as the Board may adopt from time to time. Other than as provided in Section 3.2(2), a Member who receives a refund of his or her Accumulated Mandatory Employee Contributions shall not receive a Retirement Allowance from Component I of the Retirement System.

### Sec 5.8. Benefits Offset by Workers' Compensation and Benefits; Subrogation

(1) Any amounts which may be paid or payable to a Member, Retiree, or Beneficiary on account of disability or death under the provisions of any Workers' Compensation, pension, or similar law, except federal Social Security old-age and survivors' and disability insurance benefits, shall be an offset against any amounts payable from funds of the Retirement System (Component I and Component II combined) on account of the same disability or death. If the present value of the benefits payable under said Workers' Compensation, pension, or similar law, is less than the Retirement Allowance payable by the Retirement System (under both Component I and Component II), the present value of the said Workers' Compensation, pension, or similar legal benefit shall be deducted from the amounts payable by the Retirement System (under both Component I and Component II), and such amounts as may be provided by the Retirement System, so reduced, shall be payable as provided in this Combined Plan Document.

(2) In the event a person becomes entitled to a pension payable by the Retirement System because of an accident or injury caused by the act of a third party, the Retirement System shall be subrogated to the rights of said person against such third party to the extent of the benefit which the Retirement System pays or becomes liable to pay.

## ARTICLE 6. RETIREMENT ALLOWANCE; VARIABLE PENSION IMPROVEMENT FACTOR (ESCALATOR)

### Sec 6.1.   Retirement Allowance

The Retirement Allowance payable to a Member commencing at the later of his or her Normal Retirement Age or his or her actual retirement from employment with the City in the form of a Straight Life Retirement Allowance shall be equal to two percent (2%) of the Member's Average Final Compensation multiplied by the Member's years (computed to the nearest one-twelfth (1/12th) year) of Credited Service earned after June 30, 2014.

### Sec 6.2.   Variable Pension Improvement Factor (Escalator)

Except as provided in Section 9.5, beginning July 1, 2015 and effective the first day of each Plan Year thereafter, the Board may determine that the annual Retirement Allowance of a Member payable under this Component I shall be increased by a factor of one percent (1.0%), compounded ("Pension Improvement Factor (Escalator)"); provided, that the recipient of said Retirement Allowance shall have been receiving a Retirement Allowance for a period of not less than twelve months prior to the first day of such Plan Year.

# ARTICLE 7. DEATH BENEFITS

## Sec 7.1. Accidental Death Benefit; Performance of Duty

(1) If a Member is killed in the performance of duty in the service of the City, or dies as the result of illness contracted or injuries received while in the performance of duty in the service of the City, and such death, illness, or injury resulting in death, is found by the Board to have resulted from the actual performance of duty in the service of the City, the following benefits shall be paid:

   (a) the Accumulated Mandatory Employee Contributions standing to his or her credit in the Accumulated Mandatory Employee Contributions Fund at the time of his or her death shall be paid to such person or persons as the Member shall have nominated by written designation duly executed and filed with the Board. If no such designated person survives the Member, the said Accumulated Mandatory Employee Contributions shall be paid to the Member's legal representative, subject to paragraph (e) of this Section 7.1(1).

   (b) the Member's surviving Spouse shall receive a pension of five-elevenths of the Member's Final Compensation payable for the Spouse's lifetime. If the Member's child or children under age eighteen years also survive the deceased Member, each such child shall receive a pension of one-tenth of such Final Compensation; provided, that if there are more than two such surviving children under age eighteen years, each such child's pension shall be an equal share of seven thirty-thirds of such Final Compensation. Upon the death, marriage, adoption, or Attainment of Age eighteen years of any such child, his or her pension shall terminate and there shall be a redistribution of the benefit by the Board to the deceased Member's remaining eligible children, if any; provided, that in no case shall any such child's pension exceed one-tenth of the Member's Final Compensation. In no case shall the total of the benefits provided for in this paragraph (b), payable on account of the death of a Member exceed two-thirds of the Member's Final Compensation.

   (c) if no surviving Spouse survives the deceased Member or if the Member's surviving Spouse dies before his or her youngest unmarried surviving child attains Age eighteen years, his or her unmarried child or children under Age eighteen years shall each receive a pension of one-fourth of the Member's Final Compensation; provided that if there are more than two such surviving children under Age eighteen years, each such child's pension shall be an equal share of one-half of such Final Compensation. Upon the death, marriage, adoption, or Attainment of Age eighteen years of any such child, his or her pension shall terminate and there shall be a redistribution by the Board to the deceased Member's remaining eligible children, if any; provided, that in no case shall any such child's pension exceed one-fourth of the Member's Final Compensation.

   (d) if the Member has no surviving Spouse or surviving children under Age eighteen years and if the Member leaves surviving either a father or mother or both, whom

- 34 -

the Board shall find to be actually dependent upon such Member for financial support, such dependent father and mother shall each receive a pension of one-sixth of the Member's Final Compensation.

(e)     If a Member dies intestate, without having designated a person or persons, as provided in paragraph (a) of this Section 7.1(1), and without heirs, the amount of his or her Accumulated Mandatory Employee Contributions in the Accumulated Mandatory Employee Contribution Fund, not to exceed a reasonable sum, to be determined by the Board, shall be used to pay his or her burial expenses, provided the Member leaves no other estate sufficient for such purpose. Any balance credited to such Member in the Accumulated Mandatory Employee Contribution Fund which is not used for burial expenses shall remain a part of the funds of the Retirement System and shall be transferred to the Pension Accumulation Fund.

## Sec 7.2.     Non-Duty Death Benefits

The surviving Spouse of any Member who dies while in the employ of the City (other than in the performance of duty) after the date such Member has earned ten or more years of Vesting Service, shall receive a Retirement Allowance computed in the same manner in all respects as if said Member had (i) retired effective on the day preceding the Member's death, notwithstanding that the Member had not attained Normal Retirement Age, (ii) elected a Joint and One Hundred Percent Survivor Allowance as described in Section 8.1, and (iii) nominated the surviving Spouse as Beneficiary.

## Sec 7.3.     Refund of Accumulated Mandatory Contributions Upon Death of Member

If a Member who is not covered by Section 7.1 or 7.2 dies while employed by the City or following termination of employment but prior to commencement of a Retirement Allowance, the Member's Accumulated Mandatory Employee Contributions to the Retirement System at the time of death shall be paid to the Beneficiary nominated in a written designation duly executed by the Member and filed with the Board. In the event there is no such designated Beneficiary surviving, the Member's Accumulated Mandatory Employee Contributions shall be paid to the Member's estate. If a Member who dies without a legal will has not nominated a Beneficiary, the Member's Accumulated Mandatory Employee Contributions at the time of death may be used to pay burial expenses if the Member leaves no other estate sufficient for such purpose. Such expenses shall not exceed a reasonable amount as determined by the Board. Any balance credited to such Member in the Accumulated Mandatory Employee Contribution Fund which is not used for burial expenses shall remain a part of the funds of the Retirement System and shall be transferred to the Pension Accumulation Fund.

13-53846-tjt    Doc 13236-3    Filed 01/28/20    Entered 01/28/20 13:27:01    Page 10 of 46

## ARTICLE 8. FORMS OF PAYMENT

**Sec 8.1.    Retirement Allowance Options**

(1)    Until the date the first Retirement Allowance payment check is issued, any Member may elect to receive a Straight Life Retirement Allowance payable throughout life, or the Member may elect to receive the Actuarial Equivalent of the Straight Life Retirement Allowance computed as of the effective date of retirement, in a reduced Retirement Allowance payable throughout life, and nominate a Beneficiary, in accordance with the options set forth below:

     (a)    *Option One.  Modified Cash Refund Annuity.*  A Retiree will receive a reduced Retirement Allowance for as long as he or she lives, provided that if the Retiree dies before payment of the Accumulated Mandatory Employee Contributions made to the Retirement System on and after July 1, 2014 has been received in an aggregate amount equal to, but not exceeding the Retiree's Accumulated Mandatory Employee Contributions at the time of retirement, the difference between said Accumulated Mandatory Employee Contributions and the aggregate amount of annuity payments already received, shall be paid in a single lump sum to a Beneficiary nominated by written designation duly executed by the Member and filed with the Board.  If there is no such designated Beneficiary surviving said Retiree, any such difference shall be paid to the Retiree's estate.

     (b)    *Option Two.  Joint and One Hundred Percent Survivor Allowance.*  Upon the death of a Retiree who elected a Joint and One Hundred Percent Survivor Allowance, one hundred percent of the Member's reduced Retirement Allowance shall be paid to and continued throughout the life of the Beneficiary nominated by written designation duly executed and filed with the Board prior to the date the first payment of the Retirement Allowance becomes due.

     (c)    *Option "A".  Joint and Seventy-Five Percent Survivor Allowance.*  Upon the death of a Retiree who elected a Joint and Seventy-Five Percent Survivor Allowance, seventy-five percent of the Member's reduced Retirement Allowance shall be continued throughout the life of and paid to the Beneficiary nominated by written designation duly executed by the Member and filed with the Board prior to the date the first payment of the Retirement Allowance becomes due.

     (d)    *Option Three.  Joint and Fifty Percent Survivor Allowance.*  Upon the death of a Retiree who elected a Joint and Fifty Percent Survivor Allowance, fifty percent of the Member's reduced Retirement Allowance shall be continued throughout the life of and paid to the Beneficiary nominated by written designation duly executed by the Member and filed with the Board prior to the date the first payment of the Retirement Allowance becomes due.

     (e)    *Option "B".  Joint and Twenty-Five Percent Survivor Allowance.*  Upon the death of a Retiree who elected a Joint and Twenty-Five Percent Survivor Allowance, twenty-five percent of the Member's reduced Retirement Allowance shall be

- 36 -

continued throughout the life of and paid to the Beneficiary nominated by written designation duly executed by the Member and filed with the Board prior to the date the first payment of the Retirement Allowance becomes due.

(2) *Joint and Survivor Optional Forms of Payment.* The Joint and Survivor Optional Forms of Payment provided under the Retirement System shall be made available in either the standard form or the pop-up form, as follows:

    (a) *Standard Form.* Under the Standard Form, the reduced Retirement Allowance shall be paid throughout the lifetime of the Retiree.

    (b) *Pop-up Form.* Under the Pop-up Form, the reduced Retirement Allowance shall be paid throughout the lifetime of the Retiree and the designated Beneficiary. In the event of the death of the designated Beneficiary during the lifetime of the Retiree, the amount of the Retirement Allowance payable to the Retiree shall be changed to the amount that would have been payable had the Retiree elected the Straight Life Retirement Allowance Form of Payment.

### Sec 8.2. Disposition of Surplus Benefits upon Death of Retiree and Beneficiary

If under a Joint and One Hundred Percent Survivor allowance, a Joint and Seventy-Five Percent Survivor allowance, a Joint and Fifty Percent Survivor allowance or a Joint and Twenty-Five Percent Survivor allowance as provided for under Section 8.1, both a Retiree and Beneficiary die before they have received in Retirement Allowance payments an aggregate amount equal to the Retiree's Accumulated Mandatory Employee Contributions (and if the Retiree makes an election pursuant to Section 10.4(2), his or her Accumulated Voluntary Employee Contributions) at the time of retirement, the difference between the said Accumulated Mandatory Employee Contributions (and Accumulated Voluntary Employee Contributions, if applicable) and the aggregate amount of Retirement Allowances paid to the Retiree and Beneficiary, shall be paid in a single lump sum to such person or persons nominated by written designation of the Retiree duly executed and filed with the Board. If there is no such person or persons surviving the Retiree and the Beneficiary, any such difference shall be paid to the estate of the Retiree or the Beneficiary, whichever of them is the last to die.

## ARTICLE 9. FUNDING AND RESERVES

### Sec 9.1.    Funding Objective of the Retirement System

The funding objective of Component I of the Retirement System is to establish and receive City and Member contributions during each Plan Year that are sufficient to fully cover the actuarial cost of benefits anticipated to be paid on account of Credited Service rendered by Members during the Plan Year (the normal cost requirements of the Retirement System), and to amortize the unfunded actuarial costs of benefits likely to be paid on account of Credited Service rendered on or after July 1, 2014 and before the first day of the Plan Year (the unfunded actuarial accrued liability of Component I of the Retirement System).

### Sec 9.2.    Funds

Component I of the Retirement System shall consist of the Accumulated Mandatory Employee Contribution Fund, the Accumulated Voluntary Contribution Fund, the Pension Accumulation Fund, the Rate Stabilization Fund, the Deferred Retirement Option Program Fund (if applicable), the Medical Benefits Account Fund, the Expense Fund and the Income Fund, as follows:

(1)    The Accumulated Mandatory Employee Contribution Fund shall be the Fund in which shall be accumulated the contributions of Members to provide their Retirement Allowances. Upon the retirement, termination, disability or death of a Member with a Retirement Allowance, the Member's Accumulated Mandatory Employee Contributions shall be deemed to be part of the Pension Reserve which shall be used to pay the Member's or Beneficiary's Retirement Allowance.

(2)    The Accumulated Voluntary Employee Contribution Fund shall be the Fund in which shall be accumulated the voluntary after-tax contributions of Members, together with earnings thereon.

(3)    The Pension Accumulation Fund shall be the fund in which shall be accumulated reserves for the Retirement Allowances and other benefits payable from that portion of the City's annual contribution as is designated by the City to be utilized for payment of Retirement Allowances, and amounts transferred to Component I as provided in Section G-2(f) of Component II to finance Transition Cost (as defined in Section G-2(f) of Component II), together with earnings thereon, and from which shall be paid Retirement Allowances and other benefits on account of Members.

(4)    The Rate Stabilization Fund shall be the Fund to which shall be credited the City's contributions in excess of the amount of the City's contribution which is credited to the Pension Accumulation Fund, together with earnings thereon, and amounts transferred to Component I as provided in Section G-2(f) of Component II.

(5)    The Deferred Retirement Option Plan Fund shall be the fund in which shall be accumulated the amounts credited to the DROP Accounts of Members who have elected to participate in the DROP Program pursuant to Article 12, together with earnings

- 38 -

thereon, provided that the DROP Accounts are held and invested within the Retirement System.

(6)     The Medical Benefits Account Fund shall be the fund in which shall be accumulated the amounts contributed to the Retirement System for the purposes of funding Medical Benefits, together with earnings thereon.

(7)     The Expense Fund shall be the fund to which shall be credited funds, if any, provided to the Retirement System by the City to pay the administrative expenses of the Retirement System, and from which shall be paid certain expenses incurred in connection with the administration and operation of the Retirement System.

(8)     The Income Fund shall be the Fund to which shall be credited all interest, dividends, and other income derived from the investments of the assets of Component I of the Retirement System and earnings thereon, all gifts and bequests received by Component I of the Retirement System, and all other moneys credited to Component I of the Retirement System, the disposition of which is not specifically provided for in this Article 9. There shall be paid or transferred from the Income Fund, all amounts required to credit earnings and losses to the various Funds of the Retirement System in accordance with the provisions of Component I of this Combined Plan Document. Amounts credited to the Income Fund in excess of amounts needed to credit earnings and losses of the Retirement System as provided in this Component I for any Plan Year shall be used in the following manner in the following order: (i) to pay administrative expenses of Component I (to the extent there are insufficient funds for this purpose credited to the Expense Fund), and/or (ii) transferred to the Pension Accumulation Fund and used to pay Retirement Allowances and other benefits on account of Members.

### Sec 9.3.    Method of Financing Retirement System Benefits

(1)     The pension liabilities for Members under this Component I shall be determined by the Plan's Actuary using the Entry Age Actuarial Cost Method of actuarial valuation.

(2)     The City's annual contribution to finance the prospective pension liabilities during the nine Plan Year period commencing July 1, 2014 and ending June 30, 2023 shall be (a) eleven and two-tenths percent (11.2%) of the Compensation of active employees who are members of the DFFA (for pay periods ending on or before November 6, 2014) and members of DPOA (for pay periods ending on or before October 3, 2014) and (b) twelve and one-quarter percent (12.25%) of the Compensation of active employees who are members of the DPCOA, the DPLSA, the DPOA (for pay periods beginning on or after October 3, 2014) and the DFFA (for pay periods beginning on or after November 6, 2014). A portion of the City's annual contribution for each Plan Year shall be credited to the Pension Accumulation Fund and a portion shall be credited to the Rate Stabilization Fund, each amount as determined by the City in its sole discretion. For plan years commencing July 1, 2023 and later, the accrued pension liabilities for Members shall be determined by the Actuary using reasonable and appropriate actuarial assumptions approved by the Board and the Investment Committee. The City's annual contributions to finance the normal cost of benefits and any such unfunded accrued pension liabilities

- 39 -

shall be determined by the Actuary amortizing such unfunded accrued pension liabilities over a period or periods of future years as established by the Board and approved by the Investment Committee.

(3)     Except as provided in Section 9.5, for each Plan Year, a Member who was an active employee as of June 30, 2014 ("current active") shall contribute to the Retirement System an amount equal to six percent (6%) of his or her Compensation for such Plan Year and a Member who is hired or rehired by the City on or after July 1, 2014 ("new employee") shall contribute to the Retirement System an amount equal to eight percent (8%) of his or her Compensation for such Plan Year. A Member's Mandatory Employee Contributions for the Plan Year beginning July 1, 2014 and ending June 30, 2015 shall commence as of the Member's first payroll date occurring in August 2014. The officer or officers responsible for processing the payroll shall cause a Member's Mandatory Employee Contributions to be deducted from the Member's Compensation on each and every payroll, for each and every payroll period, from the later of (i) the Member's first payroll date occurring in August 2014 and (ii) the Member's date of hire, to the date he or she ceases to be an active Member. The contribution shall be deducted from a Member's Compensation, notwithstanding that the minimum compensation provided by law for any Member shall be reduced thereby. Payment of compensation, less said Mandatory Employee Contributions, shall be a complete discharge of all claims and demands whatsoever for the services rendered by the said Member during the period covered by such payment. Member Mandatory Employee Contributions will be used for the purpose of funding the normal cost of the Retirement System.

### Sec 9.4.    Member Contributions Picked-Up

(1)     The City shall pick up Member Mandatory Employee Contributions required pursuant to Sections 9.3(3) and 9.5 in accordance with Code Section 414(h).

(2)     The picked-up contributions, although designated as employee contributions shall be treated as City contributions for the purpose of determining a Member's tax treatment under the Internal Revenue Code. The City shall pay the contributions picked-up on behalf of a Member from the same source of funds that are used for paying compensation to the Member.

(3)     The City shall pick up Member Mandatory Employee Contributions by a reduction in the Member's cash salary or an offset against a future salary increase, or both. The City shall designate the Mandatory Employee Contributions that are picked-up and paid to the Retirement System as employer contributions and not as employee contributions. No Member who participates in the Retirement System shall have the option of choosing to receive the contributed amounts directly instead of having those amounts paid by the City to the Retirement System.

### Sec 9.5.    Fiscal Responsibility: Benefit Reductions and Increased Funding Obligations

(1)     To safeguard the long-term actuarial and financial integrity of the Retirement System, in the event the funding level of Component I of the Retirement System projected over a

- 40 -

five year period falls below ninety percent (90%), the Trustee may not award the variable Pension Improvement Factor (Escalator) described in Section 6.2 to any individual beginning with the Plan Year following the Plan Year in which such determination is made and continuing until the funding level is restored to not less than ninety percent (90%).

(2) In the event the funding level of the Retirement System projected over a five year period falls below ninety percent (90%), the following remedial action shall be required in the order set forth below, beginning with the Plan Year following the Plan Year in which such determination is made and continuing until the funding level is projected to be not less than one hundred percent (100%) on a market value basis within the next five years:

(a) the remedial action required in Section 9.5(1) shall be implemented or continued;

(b) all amounts credited to the Rate Stabilization Fund shall be transferred to the Pension Accumulation Fund for the purposes of funding benefits payable under the Retirement System;

(c) Mandatory Employee Contributions for active and new employees shall be increased by one percent (1%) per year for up to the next following five Plan Years;

(d) Mandatory Employee Contributions for active and new employees shall be increased by an additional one percent (1%) per year for up to the next following five Plan Years;

(e) Mandatory Employee Contributions for active and new employees shall be increased by an additional one percent (1%) per year for up to the next following five Plan Years;

(f) the Retirement Allowance payable to a Retiree shall not include the variable Pension Improvement Factor (Escalator) that was most recently paid to the Retiree on the date the funding level is projected to fall below ninety percent (90%);

(g) the Retirement Allowance payable to a Retiree shall not include the variable Pension Improvement Factor (Escalator) that was most recently added to the Member's Retirement Allowance for the Plan Year preceding the Plan Year referenced in paragraph (f) above;

(h) Mandatory Employee Contributions for active and new employees shall be increased by an additional one percent (1%) per year for up to the next following five Plan Years; and

(i) contributions made to the Retirement System by the City shall be increased, consistent with applicable actuarial principles and the *Public Employee Retirement System Investment Act, as amended, MCL 38.1132 et seq.*

– 41 –

(3)     For purposes of this Section 9.5, the "funding level" of Component 1 of the Retirement System shall mean the ratio of the market value of the assets of Component 1 of the Retirement System to the actuarial accrued liability of Component 1 of the Retirement System. The actuarial accrued liability shall be calculated by the Plan's Actuary utilizing an interest rate assumption of six and three-quarters percent (6.75%) and other reasonable assumptions as directed by the Board upon the recommendation of the Investment Committee. The market value of assets shall be determined on the basis of a three-year look back period of smoothed investment returns.

## ARTICLE 10. VOLUNTARY EMPLOYEE CONTRIBUTIONS

### Sec 10.1. Voluntary Employee Contributions; Amount; Vesting

Subject to procedures established by the Board, a Member who is covered by a collective bargaining agreement with the City that permits the Member to make Voluntary Employee Contributions to Component I of the Retirement System may elect to contribute a whole percentage not less than one percent (1%) nor more than ten percent (10%) of his or her Compensation for a Plan Year to a Voluntary Employee Contribution Account maintained on his or her behalf under Component I of the Retirement System. A Member represented by the DPOA may elect to reduce the amount paid to him or her by the City for accumulated sick leave in excess of 400 hours by a whole percentage not less than one percent (1%) nor more than one hundred percent (100%) of such amount and have such amount contributed by the City to a Voluntary Employee Contribution Account maintained on his or her behalf under Component I of the Retirement System. Voluntary Employee Contributions shall be made to the Retirement System on an after-tax basis. Amounts credited to a Member's Voluntary Employee Contribution Account shall be one hundred percent (100%) vested at all times.

### Sec 10.2. Changing an Election to Contribute

A Member may change or revoke an election to make Voluntary Employee Contributions to the Retirement System pursuant to this Article 10 in such manner and with such advance notice as the City shall determine. Notwithstanding the foregoing, a Member shall be permitted to change such election not less frequently than annually.

### Sec 10.3. Individual Member Accounting; Crediting of Earnings

The Board shall maintain a Voluntary Employee Contribution Account on behalf of each Member who elects to make Voluntary Employee Contributions to the Retirement System. Each Plan Year, a Member's Voluntary Employee Contribution Account shall be credited with earnings at a rate equal to the actual net investment rate of return on the assets of the Retirement System for the second Fiscal Year immediately preceding the Fiscal Year in which the earnings are credited; in no event, however, shall the earnings rate credited to a Member's Voluntary Employee Contribution Account for any Plan Year be less than zero percent (0%) nor greater than five and one-quarter percent (5.25%).

### Sec 10.4. Distribution of Accumulated Voluntary Employee Contributions

(1)  If a Member ceases employment with the City other than by reason of death, the Member may elect to receive distribution of the Accumulated Voluntary Employee Contributions credited to his or her Voluntary Employee Contribution Account. If a Member elects to receive his or her Accumulated Voluntary Employee Contributions, such amounts shall be paid to the Member in a lump sum payment or in equal monthly installments for a period not to exceed three years, according to such rules and regulations as the Board may adopt from time to time.

(2)  In lieu of receiving distribution of his or her Accumulated Voluntary Employee Contributions as provided in Section 10.4(1), a Member may elect to have the Actuarial

- 43 -

Equivalent Value of his or her Accumulated Voluntary Employee Contributions added to his or her Retirement Allowance and paid in the form of an annuity described in Section 8.1. Any such annuity shall be subject to market rates of investment return and other market-related assumptions, as adopted by the Board upon recommendation of the Investment Committee.

(3)     If a Member dies while employed by the City or following termination of employment but prior to receiving distribution of the Member's Accumulated Voluntary Employee Contributions, the amounts credited to the Member's Voluntary Employee Contribution Account at the time of death shall be paid to the Beneficiary nominated in a written designation duly executed by the Member and filed with the Board. In the event there is no such designated Beneficiary surviving, the Member's Accumulated Voluntary Employee Contributions shall be paid to the Member's estate. If a Member who dies without a legal will has not nominated a Beneficiary, the Member's Accumulated Voluntary Employee Contributions at the time of death may be used to pay burial expenses if the Member leaves no other estate sufficient for such purpose. Such expenses shall not exceed a reasonable amount as determined by the Board.

# ARTICLE 11. LOAN PROGRAM FOR VOLUNTARY EMPLOYEE CONTRIBUTIONS

## Sec 11.1. The Loan Program

A loan program shall be available to Members who have amounts credited to a Voluntary Employee Contributions Account under Component I of the Retirement System. The Board is authorized to adopt rules and regulations, from time to time, to govern the administration and the operation of the loan program. Copies of the rules shall be made available to eligible Members in the offices of the Retirement System. Any loans granted or renewed under the Retirement System shall be made and administered pursuant to and in compliance with Section 72(p) of the Internal Revenue Code and regulations thereunder.

## Sec 11.2. Eligibility for Loan

Subject to the rules and procedures established by the Board, loans may be made to eligible Members from such Member's Voluntary Employee Contribution Account. An eligible Member is any Member who has participated in the Retirement System for twelve months or more. Former Members, Spouses and Beneficiaries are not eligible to receive any loans from the Retirement System. No Member shall have more than two outstanding loans from the Retirement System (Component I and/or Component II) at any time. A Member who has previously defaulted on a loan under either Component I or Component II shall not be eligible for a loan from the Retirement System.

## Sec 11.3. Amount of Loan

An eligible Member who has satisfied applicable rules and procedures established by the Board may borrow from his or her Voluntary Employee Contribution Account an amount which does not exceed the lesser of (i) fifty percent (50%) of the Member's Voluntary Employee Contribution Account balance, and (ii) Fifteen Thousand Dollars ($15,000.00), in each case reduced by: (1) the Member's highest outstanding loan balance under the Retirement System (both Component I and Component II) during the one year period ending on the day before the date on which the loan is made, or (2) the outstanding loan balance under the Retirement System (both Component I and Component II) on the date on which the loan is made, whichever is less. The minimum loan amount shall be One Thousand Dollars ($1,000.00).

## Sec 11.4. Terms and Conditions

In addition to such rules and procedures that are established by the Board, all loans shall comply with the following terms and conditions:

(a) Each loan application shall be made in writing.

(b) All loans shall be memorialized by a collateral promissory note for the amount of the loan, including interest, payable to the order of the Retirement System and properly executed by the Member.

(c) Each loan shall be repaid by substantially equal payroll deductions over a period not to exceed five years, or, where the loan is for the purpose of buying a

- 45 -

principal residence, a period not to exceed fifteen years. In no case shall the amount of the payroll deduction be less than Twenty Dollars ($20.00) for any two-week pay period. A Member receiving a loan will be required to authorize payroll deductions from his or her compensation in an amount sufficient to repay the loan over its term.

(d) An amount equal to the principal amount of the loan to a Member (but not more than one half of the Member's vested interest in the Defined Contribution Plans of the Retirement System) will be designated as collateral for guaranteeing the loan.

(e) Each loan shall bear interest at a rate determined by the Board. The Board shall not discriminate among Members in its determination of interest rates on loans. However, loans initiated at different times may bear different interest rates, where, in the opinion of the Board, the difference in rates is supported by a change in market interest rates or a change in the Retirement System's current assumed rate of return. The loan interest rate shall bear a reasonable relationship to market rates for secured loans of a similar duration and shall bear a reasonable relationship to the costs to the Retirement System of administering the loan. The loan interest rate shall be calculated in a manner that will not negatively affect either the City's costs with respect to the Retirement System or the investment return allocated to Members.

(f) Loan repayments shall be suspended during a period of military service, as permitted by Section 414(u)(4) of the Internal Revenue Code. A Member who has an outstanding loan balance from the Retirement System who is absent from employment with the City, and who has satisfied the requirements of Section 414(u) of the Internal Revenue Code shall not be required to make loan repayments to the Retirement System during said periods of absence.

## Sec 11.5. Loan Balance

A Member's outstanding loan balance shall be considered a directed investment by the Member and interest payments shall be credited to the Member's Voluntary Employee Contribution Account (provided that the interest credited to the Member's Voluntary Employee Contribution Account shall be reduced appropriately to cover the administrative costs of the loan program and avoid negatively affecting the City's costs or the Retirement System's investment returns), and shall not be part of the Retirement System's net investment income or part of the Member's Voluntary Employee Contribution Account balance for the purpose of allocation of net investment income under the Retirement System.

## Sec 11.6. Default

In the event a Member defaults on a loan before the loan is repaid in full, the unpaid balance thereof will become due and payable and, to the extent that the outstanding amount is not repaid by the end of the calendar quarter which follows the calendar quarter in which the last payment was received, such amount shall be deemed to have been distributed to the Member for tax purposes, consistent with Section 72(p) of the Internal Revenue Code.

- 46 -

### Sec 11.7.  Distribution

No distribution shall be made to a Member, former Member, Spouse or Beneficiary from the Retirement System until all outstanding loan balances and applicable accrued interest have been repaid or offset against amounts distributable to the Member from the Retirement System.

### Sec 11.8.  Annual Report

The Retirement System shall include, in its annual report to all Members, an accounting of the loan program established by this Component I, which contains the number and amount of loans made, the costs of administering the program, the amount of payments made including interest received by the Retirement System, the amount of loans outstanding, including any defaults or delinquencies, and an evaluation as to whether the interest charged in the Fiscal Year covered the costs of administering the loan program.

## ARTICLE 12. DEFERRED RETIREMENT OPTION PLAN ("DROP") PROGRAM

### Sec 12.1. General Provisions

The following provisions are hereby established as the Deferred Retirement Option Plan ("DROP") Program under Component I, which shall be available to Members who are covered by collective bargaining agreements with the City that permit such Members to participate in the DROP program and those non-union executives of the Police Department and the Fire Department.

(1) In lieu of terminating employment and accepting a Retirement Allowance under the Component I, any Member of the Retirement System who is eligible for the DROP program and who is eligible to immediately retire and receive an unreduced Retirement Allowance under Section 5.1 may elect to participate in the DROP program and defer the receipt of his or her Retirement Allowance in accordance with the provisions of this Article 12. Any such election shall be irrevocable.

(2) A Member shall be entitled to participate in the DROP program under Component I for a maximum of five years. At the end of such five year period of participation in the DROP program, the Member shall be retired from employment.

### Sec 12.2. Conversion to Retirement Allowance

Upon the effective date of a Member's participation in the DROP program, the Member shall cease to accrue a Retirement Allowance pursuant to Section 6.1 and shall elect a form of payment for his or her Retirement Allowance pursuant to Section 8.1. Seventy-five percent (75%) of the monthly Retirement Allowance (including applicable variable Pension Improvement Factor (Escalator) increases) that would have been payable, had the Member elected to terminate employment with the City on the effective date of his or her DROP election and receive an immediate Retirement Allowance, shall be paid into a DROP Account established on behalf of the Member under the Retirement System or in an entity selected by the Board.

### Sec 12.3. Investment of DROP Assets

(1) ING was previously selected by the Board as the DROP administration and investment entity for Members who elect to participate in the DROP program. ING shall continue to be the DROP administration and investment entity, unless and until such time as the Board terminates the agreement with ING as provided in paragraph (4) or determines that it is administratively feasible for the DROP program to be administered and invested under the Retirement System.

(2) As soon as possible after July 1, 2014, the Board shall determine whether it is administratively feasible for the DROP program to be administered and the assets in DROP accounts invested under the Retirement System. If the Board determines that it is feasible to administer the DROP program under the Retirement System, the Board shall promptly take appropriate steps to implement such decision.

- 48 -

(3)    If amounts credited to a DROP Account are invested under the Retirement System, such amounts shall be comingled with the assets of the Retirement System for investment purposes and shall be invested by the Trustees. A Member's DROP Account shall be credited with annual earnings at a rate equal to seventy-five percent (75%) of the actual net earnings rate of the assets of the Retirement System; however, in no event shall the earnings rate applied to a Member's DROP Account for any Plan Year be less than zero percent (0%) nor greater than seven and three-quarters percent (7.75%).

(4)    The Board of Trustees previously entered into an administrative services agreement with ING. Such agreement shall remain in effect until such time as it is terminated by the Board as provided therein.

(5)    The Board of Trustees may replace ING with a trust-type vehicle or the Board may determine that amounts subject to a DROP election will be invested with Retirement System assets as provided above.

(6)    Any fees associated with the maintenance of DROP Accounts outside of the Retirement System shall be paid by the Members by means of deduction from their DROP Accounts.

### Sec 12.4. Distribution of Amounts Credited to DROP Account

A Member shall not receive a distribution of amounts credited to his or her DROP Account prior to his or her termination of employment with the City. Upon termination of employment, a Member who is a participant in the DROP program shall receive, at his or her option either a lump sum payment from the DROP Account equal to the amount then credited to the DROP Account or an annuity based upon the amount credited to his or her DROP Account. Any such annuity shall be subject to market rates of interest return and other market-related assumptions as adopted by the Board upon recommendation of the Investment Committee. In addition, one hundred percent (100%) of the Member's monthly Retirement Allowance that otherwise would have been paid as of the date the Member's participation in the DROP program commenced (together with any applicable variable Pension Improvement Factor (Escalator) increases) shall commence to the Member in accordance with the form of payment selected by the Member at the commencement of his or her participation in the DROP program. Termination of employment includes termination of any kind, such as resignation, retirement, discharge or disability.

### Sec 12.5. Death of Member While Participating in the DROP Program

If a Member dies while participating in the DROP program, a lump sum payment equal to the Member's DROP Account balance shall be paid to the Beneficiary named by the Member, or if no Beneficiary has been designated, to the Member's estate. In addition, one hundred percent (100%) of the Member's Retirement Allowance (together with any applicable variable Pension Improvement Factor (Escalator) increases) that would have been paid to the Member but for the Member's decision to participate in the DROP program will be restored. Survivor benefits, if any, shall be paid in accordance with the payment option elected by the deceased Member at the time the Member elected to participate in the DROP program.

### Sec 12.6. Disability of Member While Participating in the DROP Program

If a Member becomes Totally Disabled while participating in the DROP program and while still an Employee and his or her employment with the City is terminated because he or she is Totally Disabled, such Member (a) shall be immediately retired and one hundred percent (100%) of the Retirement Allowance that would have been paid to the Member as of the date the Member's participation in the DROP program commenced (together with any applicable variable Pension Improvement Factor (Escalator) increases) will commence in accordance with the payment option selected by the Member at the commencement of the Member's participation in the DROP program as provided in Section 12.1(2), and (b) shall be entitled to receive payment of the funds in his or her DROP Account (in the form of a lump sum or other Actuarially Equivalent form of payment described in Section 8.1). Such Member shall not be entitled to disability retirement benefits under Section 5.3 or Section 5.4 hereof.

### Sec 12.7. Cost Neutrality

(1) The DROP program shall be effective only for as long as it is cost-neutral to the City, provided however, that the DROP program shall continue during the pendency of proceedings, described in paragraph (2) below, designed to restore the Retirement System to cost neutrality.

(2) If the City contends that the DROP program is not cost-neutral, including, but not limited to, making the City's annual contribution to the Retirement System higher than it would be if the DROP program was not in effect, the Board and the City, along with the Plan Actuary and an actuary appointed by the City (who will be an associate or a fellow of the Society of Actuaries and a member of the American Academy of Actuaries) shall meet and confer in good faith regarding the cost. If the Board and the City are unable to reach an agreement as to cost, the matter shall be submitted to a third, independent, actuary chosen or agreed upon by the Plan Actuary and the City's actuary. This actuary, when rendering a decision, will be limited to ordering implementation of changes necessary to make the DROP program cost-neutral. Upon the implementation of changes necessary to make the DROP program cost-neutral, Members shall have thirty days to elect to either (a) retire from active employment with the City, or (b) withdraw from the DROP program and resume active participation in Component I of the Retirement System. The Board shall notify DROP participants of these changes prior to implementation. Those DROP participants resuming participation in Component I of the Retirement System shall not accumulate Credited Service for any time that they were participating in the DROP program (under either Component I or Component II). Those not making either election shall continue to participate in the DROP program.

(3) In the event the DROP program cannot be changed to restore cost neutrality, it shall be discontinued and Members participating in the DROP program at that time shall have the option to either (i) retire, or (ii) continue active employment with the City and resume active participation in Component I of the Retirement System. DROP participants resuming participation in Component I of the Retirement System shall not accumulate Credited Service for the time during which such DROP participants participated in the DROP program (under either Component I or Component II).

- 50 -

## ARTICLE 13. LIMITATION ON BENEFITS AND CONTRIBUTIONS

Sec 13.1. Compliance With Code Section 415(b) And Regulations

(1) Notwithstanding any other provision of this Combined Plan Document, the defined benefit component of the Retirement System shall be administered in compliance with the provisions of Code Section 415(b) and regulations thereunder that are applicable to governmental plans.

(2) The maximum annual benefit accrued by a Member during a "limitation year" (which shall be the Plan Year) and the maximum annual benefit payable under the Retirement System to a Member at any time within a Plan Year, when expressed as an annual benefit in the form of a straight life annuity (with no ancillary benefits), shall be equal to $160,000 (as such amount is adjusted pursuant to Code Section 415(d) for such Plan Year).

(3) Notwithstanding the foregoing:

    (a) if the benefit under the Retirement System is payable in any form other than a straight life annuity, the determination as to whether the limitation described in Section 13.1(2) has been satisfied shall be made, in accordance with the regulations prescribed by the Secretary of the Treasury, by adjusting such benefit to the Actuarially Equivalent straight life annuity beginning at the same time, in accordance with Section 13.1(9) or (10);

    (b) if the benefit under the Retirement System commences before Age sixty-two, the determination of whether the limitation set forth in Section 13.1(2) (the "Dollar Limit") has been satisfied shall be made, in accordance with regulations prescribed by the Secretary of the Treasury, by reducing the Dollar Limit so that the Dollar Limit (as so reduced) is equal to an annual benefit payable in the form of a straight life annuity, commencing when such benefit under the Retirement System commences, which is Actuarially Equivalent to a benefit in the amount of the Dollar Limit commencing at Age sixty-two (adjusted for participation of fewer than 10 years, if applicable); provided, however, if the Retirement System has an immediately commencing straight life annuity commencing both at Age sixty-two and the age of benefit commencement, then the Dollar Limit (as so reduced) shall equal the lesser of (i) the amount determined under this Section 13.1(3)(b) without regard to this proviso, or (ii) the Dollar Limit multiplied by a fraction the numerator of which is the annual amount of the immediately commencing straight life annuity under the Retirement System and the denominator of which is the annual amount of the straight life annuity under the Retirement System, commencing at Age sixty-two; and

    (c) if the benefit under the Retirement System commences after Age sixty-five, the determination of whether the Dollar Limit has been satisfied shall be made, in accordance with regulations prescribed by the Secretary of the Treasury, by increasing the Dollar Limit so that the Dollar Limit (as so increased) is equal to an

- 51 -

annual benefit payable in the form of a straight life annuity, commencing when the benefit under the Retirement System commences, which is Actuarially Equivalent to a benefit in the amount of the Dollar Limit commencing at Age sixty-five; provided, however, if the Retirement System has an immediately commencing straight life annuity commencing both at Age sixty-five and the Age of benefit commencement, the Dollar Limit (as so increased) shall equal the lesser of (i) the amount determined under this Section 13.1(3)(c) without regard to this proviso, or (ii) the Dollar Limit multiplied by a fraction the numerator of which is the annual amount of the immediately commencing straight life annuity under the Retirement System and the denominator of which is the annual amount of the immediately commencing straight life annuity under the Retirement System, commencing at Age sixty-five.

(4)   The adjustments in Sections 13.1(3)(b) shall not apply to a Member with at least 15 years of Credited Service as a Police Member or a Fire Member within the meaning of Code Section 415(b)(2)(H). In addition, the adjustments in Sections 13.1(3)(b) and 13.1(6) shall not apply to benefits payable on account of the disability or the death of a Member.

(5)   Notwithstanding the foregoing provisions of this Section 13.1, except as provided in Section 13.1(6), the maximum annual benefit specified in Section 13.1(2) above shall not apply to a particular Retirement System benefit if (a) the annual amount of such Retirement System benefit, together with the aggregate annual amount of any other pensions payable with respect to such Member under all other defined benefit plans maintained by the City, does not exceed $10,000 for the Plan Year or any prior Plan Year, and (b) the Member was not at any time a participant in a Defined Contribution Plan maintained by the City.

(6)   In the case of a Member who has less than ten years of participation in the Retirement System, the limitation set forth in Section 13.1(2) shall be such limitation (without regard to this Section 13.1(6)), multiplied by a fraction, the numerator of which is the number of years of participation in the Retirement System (or parts thereof) credited to the Member and the denominator of which is ten. In the case of a Member who has less than ten years of Vesting Service, the limitations set forth in Section 13.1(2) and in Section 13.1(5) shall be such limitations (determined without regard to this Section 13.1(6)) multiplied by a fraction, the numerator of which is the number of years of Vesting Service, or parts thereof, credited to the Member and the denominator of which is ten. The adjustment in this Section 13.1(6) shall not apply to benefits paid on account of the disability or death of a Member.

(7)   Notwithstanding anything in this Section 13.1 to the contrary, if the annual benefit of a Member who has terminated employment with the City is limited pursuant to the limitations set forth in Section 13.1(2), such annual benefit shall be increased in accordance with the cost-of-living adjustments of Code Section 415(d).

(8)   For purposes of determining actuarial equivalence under Paragraph (b) or (c) of Section 13.1(3), the interest rate assumption shall be five percent (5%) and the mortality table used shall be the applicable mortality table specified by the Board.

- 52 -

(9) The Actuarially Equivalent straight life annuity for purposes of adjusting any benefit payable in a form to which Code Section 417(e)(3) does not apply, as required by Paragraph (a) of Section 13.1(3), is equal to the greater of (a) the annual amount of the straight life annuity payable under the Retirement System commencing at the same annuity starting date as the form of benefit payable to the Member, or (b) the annual amount of the straight life annuity commencing at the same annuity starting date that has the same actuarial present value as the form of benefit payable to the Member, computed using the interest rate and mortality assumptions set forth in Section 13.1(8).

(10) The Actuarially Equivalent straight life annuity for purposes of adjusting any benefit payable in a form to which Code Section 417(e)(3) applies, as required by Paragraph (a) of Section 13.1(3), is equal to the greatest of (a) the annual amount of the straight life annuity commencing at the same annuity starting date that has the same Actuarial Equivalent present value as the form of benefit payable to the Member, (b) the annual amount of the straight life annuity commencing at the same annuity starting date that has the same actuarial present value as the form of benefit payable to the Member, computed using a five and one-half percent (5.5%) interest rate assumption and the applicable mortality table specified by the Board, or (c) the annual amount of the straight life annuity commencing at the same annuity starting date that has the same actuarial present value as the form of benefit payable to the Member, computed using the applicable interest rate and the applicable mortality table, both as specified by the Board, divided by 1.05.

(11) For purposes of applying the limitations set forth in this Section 13.1, all qualified defined benefit plans (whether or not terminated) ever maintained by the City shall be treated as one defined benefit plan.

(12) For purposes of this Section 13.1, the term "compensation" shall include those items of remuneration specified in Treasury Regulation § 1.415(c)-2(b) and shall exclude those items of remuneration specified in Treasury Regulation § 1.415(c)-2(c), taking into account the timing rules specified in Treasury Regulation § 1.415(c)-2(e), but shall not include any amount in excess of the limitation under Code Section 401(a)(17) in effect for the year. The term "compensation" as defined in the preceding sentence shall include any payments made to a Member by the later of (a) two and one-half months after the date of the Member's severance from employment with the City or (b) the end of the limitation year that includes the date of the Member's severance from employment with the City, provided that, absent a severance from employment, such payments would have been paid to the Member while the Member continued in employment with the City and are regular compensation for services performed during the Member's regular working hours, compensation for services outside the Member's regular working hours (such as overtime or shift differential pay), commissions, bonuses or other similar compensation.

(13) This Section 13.1 shall be administered in conformity with the regulations issued by the Secretary of the Treasury interpreting Code Section 415 including, but not limited to those interpreting Section 415(b)(2)(H), and any regulation providing for the "grandfathering" of any benefit accrued prior to the effective date of such regulations or statutory provision.

- 53 -

**Sec 13.2. Compliance with Code Section 415(c) and Regulations**

(1)   The "Annual Addition" with respect to a Member for a limitation year shall in no event exceed the lesser of:

    (a)   $40,000 (adjusted as provided in Code Section 415(d)); or

    (b)   One hundred percent (100%) of the Member's compensation, as defined in Code Section 415(c)(3) and regulations issued thereunder, for the limitation year.

(2)   The Annual Addition with respect to a Member for a limitation year means the sum of his or her Voluntary Employee Contributions made to the Retirement System, and the employer contributions, employee contributions and forfeitures allocated to his or her accounts under any other qualified Defined Contribution Plan (whether or not terminated) maintained by the City, and the amounts described in Code Sections 415(l)(2) and 419A(d)(2) allocated to his or her account.

(3)   In the event the Annual Addition to the Retirement System on behalf of a Member would otherwise exceed the amount that may be applied for his or her benefit under the limitation contained in this Section 13.2, the limitation shall be satisfied by reducing the Member's Voluntary Employee Contributions to the extent necessary and distributing such amounts to the Member.

- 54 -

## ARTICLE 14. RETIREMENT SYSTEM ADMINISTRATION

### Sec 14.1.  Board of Trustees as Retirement System Administrator

(1)  The Retirement Board shall have the power and authority to manage and administer the Retirement System in accordance with the provisions of this Combined Plan Document.

(2)  The Retirement Board shall provide procedures for the processing and review of benefit claims, corrections of errors, and similar matters, as further described in Section 14.2.

(3)  The Retirement Board and the Retirement System shall not make any payment to active or retired Members or Beneficiaries other than payments that are required by the Retirement System as established by this Combined Plan Document. This prohibition applies to all payments that are not authorized by this Combined Plan Document, whether such payments are those commonly referred to as a "thirteenth check" or payments by any other name.

### Sec 14.2.  Powers and Duties of Board

(1)  The Board shall have the following powers and duties:

  (a)  exclusive authority regarding the  administration, management and operation of the Retirement System, including, but not limited to, the right to contract for office space, computer hardware and software, and human resource services (any or all of which may be obtained from the City), and to make rules and regulations with respect to the operation of the Retirement System not inconsistent with the terms of the Combined Plan Document and applicable law, and to amend or rescind such rules and regulations;

  (b)  to determine questions of law or fact that may arise as to the rights of any person claiming rights under the Retirement System;

  (c)  to determine the contributions to the Retirement System required of the City and Members pursuant to the documents governing operation of the Retirement System, including the Plan of Adjustment;

  (d)  to construe and interpret the provisions of the Retirement System and to reconcile any inconsistencies;

  (e)  to perform ministerial functions, whether or not expressly authorized, which the Board may deem necessary or desirable in carrying out its duties under the Retirement System;

  (f)  except to the extent authority is vested in the Investment Committee, authority to employ, contract and pay for professional services including, but not limited to, actuarial, investment, legal, accounting, medical, and any other services that the Board considers necessary for the proper operation of the Retirement System;

- 55 -

(g) except to the extent authority or responsibility is vested in the Investment Committee, to arrange for annual audits of the records and accounts of the Retirement System by a certified public accountant or by a firm of certified public accountants pursuant to generally accepted auditing standards;

(h) to prepare an annual report for the Retirement System for each Fiscal Year in compliance with generally accepted accounting principles. The report shall contain information regarding the financial, actuarial, and other activities of the Retirement System during the Fiscal Year. The Board shall furnish a copy of the annual report to the Mayor and finance director of the City, to the chair of the City Council and the Investment Committee. The report shall also contain a review of the latest actuarial valuation of the Retirement System;

(i) to maintain or cause to be maintained such separate funds and accounts as are required to be maintained under the provisions of Components I and II of the Combined Plan Document and such additional accounts as the Board deems necessary or expedient for the proper administration of the Retirement System and the administration and investment of the assets of the Retirement System. The Board shall maintain suitable records, data and information in connection with the performance of its functions, including, but not limited to, accurate and detailed accounts of all investments, receipts, disbursements, and other actions, including the proportionate interest therein and contributions of each Member who has made contributions to the Retirement System;

(j) to correct any error in the records of the Retirement System that results in overpayment or underpayment of contributions to the Retirement System by the City or a Member, or overpayment or underpayment of benefits to a Member, former Member, or Beneficiary by the Retirement System. In the event of overpayment to a Member, former Member or Beneficiary, the Board may, as far as practicable, adjust future payments to such individual in such a manner that the Actuarial Equivalent of the benefit to which such individual was entitled shall be paid;

(k) to the extent permissible under Michigan law (and consistent with the Retirement System's favorable tax qualified status under Code Section 401(a)), purchase one or more insurance policies to indemnify any person and such person's heirs and legal representatives who is made a party to (or threatened to be made a party to) any action, suit or proceeding whether brought by or in the right of the Board, the Investment Committee or the Retirement System or otherwise, by reason of the fact that such person is or was a Board member, Investment Committee member, director, officer, employee or agent of the Board (or an advisory body or committee of the Board) or the Retirement System. The insurance policies purchased by the Board shall not indemnify any person who is judicially determined to have incurred liability due to fraud, gross negligence or malfeasance in the performance of his or her duties; and

- 56 -

(l)      except to the extent authority or responsibility is vested in the Investment Committee, to perform any other function that is required for the proper administration of the Retirement System.

## Sec 14.3.  Executive Director; Employees

The Board shall employ on behalf of the Retirement System an executive director and any other employees for which the Board establishes positions.  The executive director shall do all of the following:

(a)      manage and administer the Retirement System under the supervision and direction of the Board;

(b)      annually prepare and submit to the Board for review, amendment, and adoption an itemized budget projecting the amount required to pay the Retirement System's expenses for the following Fiscal Year; and

(c)      perform such other duties as the Board shall delegate to the executive director.

The executive director, unless such power is retained by the Board, shall determine the compensation of all employees of the Retirement System (except the executive director, whose compensation shall be determined by the Board and the chief investment officer, whose compensation shall be determined by the Investment Committee) and such compensation shall be payable from the Retirement System.  Any person employed by the Retirement System may but need not be an employee of the City.

## Sec 14.4.  Discretionary Authority

The Board shall have sole and absolute discretion to:

(a)      interpret the provisions of the Retirement System;

(b)      make factual findings with respect to any and all issues arising under the Retirement System;

(c)      determine the rights and status of Members, Retirees, Beneficiaries and other persons under the Retirement System;

(d)      decide benefit claims and disputes arising under the Retirement System pursuant to such procedures as the Board shall adopt; and

(e)      make determinations and findings (including factual findings) with respect to the benefits payable hereunder and the persons entitled thereto as may be required for the purposes of the Retirement System.

### Sec 14.5. Administrator's Decision Binding

The Board's decision on any matter arising in connection with administration and interpretation of the Retirement System shall be final and binding on Members, Retirees and Beneficiaries.

## ARTICLE 15. MANAGEMENT OF FUNDS

### Sec 15.1. Board as Trustee of Retirement System Assets

The Board of Trustees shall be the trustee of the funds held under the Retirement System, shall receive and accept all sums of money and other property paid or transferred to it by or at the direction of the City, and subject to the terms of Article 16, shall have the power to hold, invest, reinvest, manage, administer and distribute such money and other property subject to all terms, conditions, limitations, and restrictions imposed on the investment of assets of public employee retirement systems or plans by *Act No. 314* of the *Public Acts of 1965, being sections 38.1132 et seq. of the Michigan Compiled Laws*, as amended.

### Sec 15.2. Maintenance of Segregated Funds

The Board of Trustees shall maintain separate funds as required for the proper administration of the Retirement System and shall not commingle the assets held under the Retirement System for the purpose of funding benefits accrued by Members prior to July 1, 2014, together with earnings and losses on such assets (or replacement assets), as more fully described in Component II of this Combined Plan Document, with the assets of the Retirement System held for the purpose of paying benefits accrued by Members on and after July 1, 2014 as described in this Component I of the Combined Plan Document. Notwithstanding the foregoing, the assets held under Components I and II of this Combined Plan Document may be commingled for investment purposes, and transferred as provided in Section G-2(f) of Component II.

### Sec 15.3. Custodian of Funds

The Board of Trustees shall appoint or employ custodians of the assets of the Retirement System. The custodians shall perform all duties necessary and incidental to the custodial responsibility and shall make disbursements as authorized by the Board.

### Sec 15.4. Exclusive Purpose

All money and other assets of the Retirement System shall be held by the Trustees and invested for the sole purpose of paying benefits to Members and Beneficiaries and shall be used for no other purpose other than payment of the reasonable expenses of maintaining the Retirement System. In exercising its discretionary authority with respect to the management of the money and other assets of the Retirement System, the Trustees shall exercise the care, skill, prudence and diligence under the circumstances then prevailing, that a person acting in a like capacity and familiar with such matters, would use in the conduct of an enterprise of like character with like aims.

### Sec 15.5. Prohibited Conduct

Members of the Board and employees of the Retirement System are prohibited from:

(1)     Having any beneficial interest, direct or indirect, in any investment of the Retirement System;

(2)      Being an obligor or providing surety for any money loaned to or borrowed from the Retirement System;

(3)      Except as provided in Article 11, borrowing any money or other assets of the Retirement System; and

(4)      Receiving any pay or other compensation from any person, other than compensation paid by the Retirement System, with respect to investments of the Retirement System.

- 60 -

## ARTICLE 16. INVESTMENT OF RETIREMENT SYSTEM ASSETS

### Sec 16.1. Investment Powers of the Board and the Investment Committee

Subject to the requirements set forth in this Article 16, the Board shall have the power and authority to manage, control, invest and reinvest money and other assets of the Retirement System subject to all terms, conditions, limitations, and restrictions imposed on the investment of assets of public employee retirement systems or plans by *Act No. 314* of the *Public Acts of 1965, being sections 38.1132 et seq. of the Michigan Compiled Laws*, as amended. Notwithstanding anything in this Combined Plan Document to the contrary, for the twenty year period following the effective date of the Plan of Adjustment, the Investment Committee shall make recommendations to the Board with respect to investment management matters as provided in this Article 16.

All investment management decisions made by the Board, as more fully described in Section 16.2, shall require a recommendation by an affirmative vote of the Investment Committee as provided in this Combined Plan Document. The Board shall take no action with respect to any matter for which the Investment Committee has responsibility and authority, including the investment management matters described in Section 16.2, unless and until such action has been approved by affirmative vote of the Investment Committee. All actions and recommendations of the Investment Committee shall be forwarded to the Board for consideration and are subject to Board approval. If (a) the Board fails to approve or disapprove an investment management decision that has been recommended by an affirmative vote of the Investment Committee, and such failure continues for forty-five days after the date that the recommendation was made to the Board, or (b) the Board disapproves an investment management decision within such forty-five day period but fails to provide to the Investment Committee within such forty-five day period a detailed written response outlining the reasons for such disapproval, then the Investment Committee and the chief investment officer are authorized to implement the decision.

If the Board disapproves an investment management decision within such forty-five day period and provides to the Investment Committee within such forty-five day period a detailed written response outlining the reasons for such disapproval, then the Investment Committee shall have forty-five days after the receipt of the Board response to either (a) withdraw the recommended investment management decision, or (b) request, in writing, a conference with the Board to be held within ten days, but not less than five business days, of the request by the Investment Committee to discuss the disapproval by the Board described in the written response. Any such conference shall be conducted with at least three independent Investment Committee members present in person or by phone. Within ten days of the commencement of the conference or twenty days following the Investment Committee's request for a conference if no conference is held, the Investment Committee shall either withdraw the recommended investment management decision or provide the Board with a written explanation of the Investment Committee's decision to proceed with the recommended investment management decision. After delivery of such written explanation by the Investment Committee, the Investment Committee and the chief investment officer are authorized to implement the decision. Any action taken by the Board or the Investment Committee in violation of the terms of this Article 16 shall constitute an *ultra vires* act and the Investment Committee or the Board is

granted the express right to seek to preliminarily enjoin such action without the need to show irreparable harm.

## Sec 16.2. Investment Management

(1) For purposes of this Combined Plan, "investment management decisions" and "investment management matters" shall include:

    (a) development of an investment policy statement with sound and consistent investment goals, objectives, and performance measurement standards which are consistent with the needs of the Retirement System;

    (b) within 120 days after the effective date of the Plan of Adjustment, placement of all of the assets of the Retirement System not already under qualified management with qualified investment managers selected by the Investment Committee;

    (c) evaluation, retention, termination and selection of qualified managers to invest and manage the Retirement System's assets;

    (d) review and affirmation or rejection of the correctness of any and all calculations, actuarial assumptions and/or assessments used by the Actuary including, but not limited to (i) those underlying the restoration of pension benefits, funding levels and amortization thereof, all in accordance with the pension restoration program attached to the Plan of Adjustment (as more fully described in Article K of Component II of this Combined Plan Document), (ii) those underlying the determination of annual funding levels and amortization thereof, and (iii) on or after Fiscal Year 2024, the recommended annual contributions to the Retirement System in accordance with applicable law;

    (e) in accordance with approved actuarial work as provided in paragraph (d) above and based on the annual actuarial valuation reports and any other projections or reports as applicable from the Actuary or other professional advisors, the determination of the extent of restoration of pension benefits, including but not limited to the payment of all or a portion of the lost COLA payments, all in conformance with the pension restoration program attached to the Plan of Adjustment;

    (f) communication of the Retirement System's investment goals, objectives, and standards to the investment managers, including any material changes that may subsequently occur;

    (g) determination and approval of the Retirement System's investment and asset allocation guidelines, taking into account the appropriate liquidity needs of the Retirement System;

    (h) the taking of corrective action deemed prudent and appropriate when an investment manager fails to perform as expected;

- 62 -

(i)      interpretation of Retirement System governing documents, existing law, the Plan of Adjustment or other financial determination that could affect funding or benefit levels;

(j)      review and approval, prior to final issuance, of the annual audit and all financial reports prepared on behalf of the Retirement System and meet and confer with the Auditor or other professional advisors as necessary prior to approval of the annual audit or other financial reports;

(k)      determination of the funding status of the Retirement System and any remedial action to be taken pursuant to Section 9.5; and

(l)      performance of an asset/liability valuation study for the Retirement System every three years, or more often as requested by the Investment Committee or the Board.

All actions of the Investment Committee shall comply with the provisions of pertinent federal, state, and local laws and regulations, specifically *Public Act 314* and *Plan Investment Guidelines.*

## Sec 16.3.   Best Practices

Prior to adopting investment guidelines and asset allocation policies, selecting investment managers or adopting investment return assumptions, the Investment Committee shall have an understanding of and shall give appropriate consideration to the following:

(a)      the fiduciary best practices and institutional standards for the investment of public employee retirement system plan assets;

(b)      the objective to obtain investment returns above the established actuarial investment return assumption to support the restoration of benefits under the pension restoration program described in the Plan of Adjustment and Component II of this Combined Plan Document, to the extent that it is prudent and consistent with the overall funding, liquidity needs and actuarial assumptions governing the Retirement System; and

(c)      the liquidity needs of the Retirement System.

## Sec 16.4.   Chief Investment Officer

The Investment Committee shall have the exclusive power to select, retain and terminate the services of a chief investment officer for the Retirement System. The Investment Committee shall determine any and all compensation and other terms of employment of any chief investment officer hired by it. The chief investment officer shall report directly to the Investment Committee and the Executive Director of the Board. The chief investment officer shall be responsible for assisting the Investment Committee and the Board with respect to oversight of the Retirement System's investment portfolio. The chief investment officer shall

- 63 -

provide such periodic reports relating to the Retirement System's assets to the Investment Committee and the Board as it or they shall request.

## Sec 16.5. Investment Consultants

The Board and/or Investment Committee may retain the services of one or more investment consultants who shall be responsible for assisting the Board and the Investment Committee with oversight of the Retirement System's investment portfolio. Any such investment consultant shall be a registered advisor with the United States Securities and Exchange Commission and shall be a nationally recognized institutional investment consultant with expertise in the investment of public pension plan assets. Any such investment consultant shall acknowledge in writing its role as investment fiduciary with respect to the Retirement System as defined in the *Public Employee Retirement System Investment Act, as amended, MCL 38.1132 et seq.* The Board or the Investment Committee, as appropriate, shall determine the compensation and other terms of employment of any investment consultant hired by it. The duties of an investment consultant may include, but shall not be limited to:

    (a)    providing an asset/liability valuation study for the Retirement System;

    (b)    reviewing the Retirement System's asset allocation based on current market assumptions;

    (c)    identifying and recommending to the Investment Committee and the Board appropriate investment strategies based on the financial condition of the Retirement System;

    (d)    implementing the approved investment strategies, such as recommending to the Investment Committee, for Board approval, an asset allocation strategy, building an investment structure for the Retirement System, and identifying qualified investment managers (through an organized search process) to execute and implement investment strategies;

    (e)    monitoring and evaluating the ongoing progress of the investment managers toward stated investment goals and objectives;

    (f)    recommending to the Investment Committee and the Board any necessary corrective actions, including adjustments to the investment structure or investment management organizations in the event of a deviation from expectations;

    (g)    communicating the investment policies of the Retirement System to the investment managers;

    (h)    reviewing the investment policies with the appropriate employees of the Retirement System;

    (i)    aiding the Investment Committee in providing recommendations on issues relating to rebalancing and cash flow management, securities lending, transition management, cash equalization and other investment related topics;

(j)    attending Investment Committee and Board meetings in person, or telephonically, as needed or as requested;

(k)    meeting with the Investment Committee and the Board to provide detailed quarterly performance reports and executive summaries of performance;

(l)    meeting with the Investment Committee and the Board to review capital markets and inform the Board and Retirement System employees on the current investment environment; and

(m)    meeting with the Investment Committee and the Board to provide recommendations on asset allocation, investment structure, and manager selections.

## ARTICLE 17. RETIREE MEDICAL ACCOUNT

### Sec 17.1. Establishment of Account

A Medical Benefits Account shall be established and maintained under the Retirement System out of which the Board shall pay the cost, which would otherwise be borne by the City, for certain medical and related benefits provided under the plans or programs maintained by the City to provide Medical Benefits (the "Medical Plans") for the benefit of the Medical Beneficiaries. The provisions of this Article 17 are intended to comply with Section 401(h) of the Code and shall be construed to comply therewith.

### Sec 17.2. Effective Date

Medical Benefits shall be paid from the Medical Benefits Account beginning October 19, 2014 or such other date recommended by an enrolled actuary (within the meaning of Section 7701(a)(35) of the Code) and approved by the Board and Investment Committee.

### Sec 17.3. Funding of Benefits

Subject to the Plan of Adjustment and the right reserved to the City to amend or terminate the provision of Medical Benefits under its general power to amend the Combined Plan Document under Section 18.6, the City expects and intends to make actuarially determined contributions under the Retirement System from time to time to fund the Medical Benefits Account. The assets of the Medical Benefits Account may be invested together with the other assets of the Retirement System, in which case earnings of the Retirement System shall be allocated to the Medical Benefits Account on a reasonable basis or such assets may be invested separately. In any event, no part of the Retirement System, other than the assets of the Medical Benefits Account, shall be available to pay for any part of the cost of Medical Benefits.

The amount determined by the City to be contributed for any Plan Year pursuant to the paragraph above shall be reasonable and ascertainable and shall not exceed the total cost for such Plan Year of providing Medical Benefits to the Medical Beneficiaries, determined in accordance with generally accepted actuarial methods and assumptions that are reasonable in view of the provisions and coverage of the medical and other welfare plans providing such benefits, the funding medium and any other applicable considerations. At the time the City makes a contribution to the Trustee, the City shall designate the portion thereof that is allocable to the Medical Benefits Account.

### Sec 17.4. Limitation on Contributions

At all times the aggregate of the contributions made by the City to provide Medical Benefits shall not exceed twenty-five percent (25%) of the sum of the aggregate contributions made by the City to the Plan under Sections 9.3, 9.4 and 9.5, other than the contributions to fund past service credits, plus the aggregate contributions to the Medical Benefits Account. In the event that a contribution under Section 17.3 shall exceed the amount described in the preceding sentence, such contribution shall be reduced by the excess amount.

- 66 -

## Sec 17.5.   Impossibility of Diversion

In no event, prior to the satisfaction of all liabilities to provide Medical Benefits shall the Medical Benefits Account be used for, or diverted to, any purpose other than the payment of such benefits and any necessary or appropriate expenses of administration associated therewith. Any amounts credited to the Medical Benefits Account following the satisfaction of all such liabilities shall be returned to the City.

## Sec 17.6.   Administration

The Medical Plans shall continue to be administered, and claims processed, under their respective terms.  The interpretation and administration of the terms of this Article 17 shall be as provided in the provisions of the Combined Plan Document.

## Sec 17.7.   Right to Amend or Terminate Medical Plans

The City expressly reserves the exclusive right, retroactively to the extent permitted by law, to amend, modify, change, terminate or revoke any medical or other welfare plan or policy maintained by the City that provides medical or other welfare benefits, including but not limited to Medical Benefits, and to require Members, former Members, their eligible Spouses and dependents to pay all or any portion of the cost of such medical benefits.

## Sec 17.8.   Reversion

At no time prior to the satisfaction of all liabilities under the Retirement System to provide Medical Benefits, shall any part of the Medical Benefits Account be used for any purpose other than providing Medical Benefits, and any necessary or appropriate expenses attributable to the administration of the Medical Benefits Account.  If any residual assets remain in the Medical Benefits Account after the satisfaction of all obligations of the City to provide Medical Benefits to the Medical Beneficiaries, such assets shall be returned to the City.  In the event a Medical Beneficiary's interest in the Medical Benefits Account is forfeited prior to the termination of the Retirement System, an amount equal to such forfeiture shall be applied as soon as possible to reduce the City's contributions to the Medical Benefits Account.

## Sec 17.9.   Limitation of Rights

A Medical Beneficiary shall have no right, title or claim in any specific asset of the Medical Benefits Account, but shall have the right only to the Medical Benefits provided from time to time under the Medical Benefits Account.

## ARTICLE 18. MISCELLANEOUS

### Sec 18.1.  Nonduplication of Benefits

If any Member is a participant in another defined benefit pension plan, retirement system or annuity plan sponsored by the City (including Component II of this Retirement System) and the Member is or becomes entitled to accrue pension benefits under such plan or retirement system (including Component II of this Retirement System) with respect to any period of service for which he or she is entitled to accrue a benefit under Component I of this Retirement System, such Member shall not be eligible to accrue or receive payment of a benefit under Component I with respect to such period of service.

### Sec 18.2.  Assignments Prohibited

The right of a person to a pension, annuity, the return of Accumulated Voluntary Employee Contributions and/or the return of Accumulated Mandatory Employee Contributions, the Retirement Allowance itself, to any optional form of benefit, to any other right accrued or accruing to any person under the provisions of this Retirement System, and the monies in the various funds of the Retirement System shall not be assignable and shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency law, or any other process of law whatsoever, except as specifically provided in this Combined Plan Document or by an eligible domestic relations order of a lawful court.

### Sec 18.3.  Protection Against Fraud

A person who, with intent to deceive, makes any statements or reports required under this Retirement System that are untrue, or who falsifies or permits to be falsified any record or records of this Retirement System, or who otherwise violates, with intent to deceive, any terms or provisions of the Retirement System, shall be subject to prosecution under applicable law.

### Sec 18.4.  Errors

If any change or error in the records results in any person receiving from the Retirement System more or less than the person would have been entitled to receive from the Retirement System had the records been correct, the Board shall correct such error and, as far as practicable, shall adjust the payment in such a manner that the Actuarially Equivalent benefit of the benefit to which such person was correctly entitled shall be paid.

### Sec 18.5.  Conviction of Felony; Forfeiture of Rights

If a Member or Retiree shall be convicted of by a court of competent jurisdiction or enters a nolo contendere plea accepted by a court for a felony against the City arising out of his or her service as an employee of the City and while a Member of the Retirement System, the court may order the forfeiture of all or a portion of the rights of the Member to benefits hereunder, except the return of his or her Accumulated Contributions, as provided in the *Public Employee Retirement Benefits Forfeiture Act, MCL 38.2701, et. seq.* In such case, the Retirement System shall pay to an individual, if any, who would otherwise be a Beneficiary of the Member or Retiree whose retirement benefit is being forfeited under this Section 18.5 an

- 68 -

Actuarially Equivalent monthly retirement allowance at the Age that the Member or Retiree would have become eligible for unreduced retirement benefits under the Retirement System.

### Sec 18.6. Amendment; Termination; Exclusive Benefit

The City reserves the right to amend the Combined Plan Document created hereunder at any time; such amendments may include termination of the Retirement System; provided, however, that following the effective date of the Plan of Adjustment, no amendment other than amendments permitted under the terms of the Plan of Adjustment (including amendments contemplated in Section K-3(5) of Component II) may be made to the terms, conditions and rules of operation of the Retirement System, the Combined Plan Document or any successors plan or trust that govern the calculation of pension benefits during the period ending June 30, 2023, nor may any amendment or termination deprive any Member, former Member or Beneficiary of any then vested benefit under the Retirement System, except as provided in the Plan of Adjustment. Notwithstanding the foregoing, the City and the Board have the authority to amend the Combined Plan Document as necessary to retain the tax qualified status of the Retirement System under the Internal Revenue Code. The City shall make no amendment or amendments to the Retirement System which causes any part of the assets of the Retirement System to be used for, or diverted to, any purpose other than the exclusive benefit of Members, former Members or their Beneficiaries; provided, that the City may make any amendment necessary, with or without retroactive effect, to comply with applicable federal law. Any amendment of the Retirement System by the City must be approved by the Council or a person standing in the stead of the Council.

Upon termination of the Retirement System or upon complete discontinuance of contributions to the Retirement System, the rights of all Members to benefits accrued to the date of such termination or discontinuance, to the extent then funded, shall be nonforfeitable.

### Sec 18.7. Expenses of Administration; Forfeitures Not to Increase Benefits

All expenses relating to administration of Component I of the Retirement System shall be paid from the assets maintained under this Component I and all expenses relating to administration of Component II of the Retirement System shall be paid from the assets maintained under Component II. Any forfeitures arising under the Retirement System due to a Member's termination of employment or death, or for any other reason, shall be used to pay expenses of the appropriate Component of the Retirement System and shall not be applied to increase the benefits any Member would otherwise receive under the Retirement System at any time prior to termination of the Retirement System.

### Sec 18.8. Required Distributions - Compliance with Code Section 401(a)(9) and Regulations

The Retirement System will apply the minimum distribution requirements of Code Section 401(a)(9) in accordance with the final regulations issued thereunder, notwithstanding any provision in the Combined Plan Document to the contrary. Pursuant to Code Section 401(a)(9)(A)(ii), a Member's interest must begin to be distributed by the later of (i) the April 1 of the calendar year following the calendar year that he or she attains the Age of seventy and one-

- 69 -

half (70-1/2), or (ii) April 1 of the calendar year following the year in which he or she retires. Distributions will be made in accordance with Regulations Sections 1.401(a)(9)-2 through 1.401(a)(9)-9. The provisions of this Section 18.8 and the regulations cited herein and incorporated by reference override any inconsistent plan distribution options.

### Sec 18.9.  Direct Rollovers

(1)    For purposes of compliance with Code Section 401(a)(31), a distributee may elect, at the time and in the manner prescribed by the Board, to have any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover.

   (a)    For purposes of this Section 18.9, the following terms shall have the following meanings:

   (b)    "Direct rollover" means a payment by the Retirement System to an eligible retirement plan specified by a distributee.

   (c)    "Distributee" means a Member or former Member. It also includes the Member's or former Member's surviving Spouse, a Spouse or former spouse who is the alternate payee under an eligible domestic relations order, or a nonspouse Beneficiary who is a designated beneficiary as defined by Code Section 401(a)(9)(E). However, a nonspouse Beneficiary may only make a direct rollover to an individual retirement account or individual retirement annuity established for the purpose of receiving the distribution, and the account or annuity will be treated as an "inherited" individual retirement account or annuity.

   (d)    "Eligible retirement plan" means any of the following that accepts a distributee's eligible rollover distribution:

      (i)    a qualified trust described in Code Section 401(a);

      (ii)    an annuity plan described in Code Section 403(a);

      (iii)    an annuity contract described in Code Section 403(b);

      (iv)    an individual retirement account described in Code Section 408(a);

      (v)    an individual retirement annuity described in Code Section 408(b);

      (vi)    a Roth IRA described in Code Section 408A; or

      (vii)    a plan eligible under Code Section 457(b) that is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or a political subdivision of a state that agrees to separately account for amounts transferred into that plan from the Retirement System.

- 70 -

(e) "Eligible rollover distribution" means any distribution of all or any portion of the balance to the credit of a distributee under the Retirement System, except that an eligible rollover distribution does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or the life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated Beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Code Section 401(a)(9); the portion of any distribution that is not includible in gross income; and any other distribution which the Internal Revenue Service does not consider eligible for rollover treatment, such as any distribution that is reasonably expected to total less than $200 during the year. Notwithstanding the foregoing, a portion of a distribution will not fail to be an "eligible rollover distribution" merely because the portion consists of after-tax contributions that are not includible in Member's gross income upon distribution from the Retirement System. However, such portion may be transferred only (i) to an individual retirement account or annuity described in Code Section 408(a) or (b) or to a qualified defined contribution plan described in Code Section 401(a) that agrees to separately account for amounts so transferred (and earnings thereon), including separately accounting for the portion of the distribution that is includible in gross income and the portion of the distribution that is not so includible; (ii) to a qualified defined benefit plan described in Code Section 401(a) or to an annuity contract described in Code Section 403(b) that agrees to separately account for amounts so transferred (and earnings thereon), including separately accounting for the portion of the distribution that is includible in gross income and the portion of the distribution that is not so includible; or (iii) to a Roth IRA described in Code Section 408A.

## Sec 18.10. Construction

Words in the singular should be read and construed as though used in the plural, and words in the plural should be read and construed as though used in the singular, where appropriate. The words "hereof", "herein", and "hereunder" and other similar compounds of the word "here", shall mean and refer to Component I and/or Component II of this Combined Plan Document or to the Combined Plan Document in its entirety, as the context may require, and not to any particular provision or section thereof. The table of contents, article and section headings are included for convenience of reference, and are not intended to add to, or subtract from, the terms of the Combined Plan Document or the Retirement System created hereunder.

## Sec 18.11. Severability

If any section or part of a section of this Combined Plan Document or provision relating to the Retirement System is for any reason held to be invalid or unconstitutional, such holding shall not be construed as affecting the validity of the remaining sections of the Combined Plan Document or Retirement System or of the Combined Plan Document or Retirement System in its entirety.