**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| In re: City of Detroit, Michigan, Debtor. | Bankruptcy Case No. 13-53846 Judge Thomas J. Tucker Chapter 9 |
|---|---|

**CITY OF DETROIT'S MOTION TO ENFORCE CONFIRMATION ORDER AGAINST THE SHEET METAL WORKERS' LOCAL UNION NO. 80 PENSION TRUST FUND AND ELECTRICAL WORKERS' PENSION TRUST FUND OF LOCAL UNION #58, I.B.E.W., DETROIT MICHIGAN**

The City of Detroit, Michigan ("City") by its undersigned counsel, Miller, Canfield, Paddock and Stone, PLC, files this *Motion to Enforce the Confirmation Order Against the Sheet Metal Workers' Local Union No. 80 Pension Trust Fund and Electrical Workers' Pension Trust Fund of Local Union #58, I.B.E.W., Detroit Michigan* ("Motion"). In support of this Motion, the City respectfully states as follows:

## I. Introduction

Two pension trust funds assert that the City owes them approximately $300,000 because the City withdrew from the applicable pension funds in 2016. On several occasions, the City requested that the funds provide documents to substantiate their claim. To date, however, the funds have not provided any such substantiation. The City conducted its own investigation and, to the extent the

funds have valid claims (which the City disputes), the City's bankruptcy plan bars these claims. Consequently, the City respectfully requests that the Court enforce the plan and enjoin the funds from pursuing their claims and pay back all amounts that the City has paid under protest.

## II. Background

### A. Sheet Metal Fund

1. On or about March 31, 2020, the City of Detroit ("City") received a Notice of Assessment of Employer Withdrawal Liability ("Sheet Metal Fund Notice") from the Sheet Metal Workers' Local Union No. 80 Pension Trust Fund ("Sheet Metal Fund"), dated March 25, 2020. **Sheet Metal Fund Notice, Ex. 6A.**

2. The Sheet Metal Fund Notice asserts that the City "has been determined to have completely withdrawn from the Sheet Metal Workers' Local Union No. 80 Pension Trust Fund…" and that the "Fund's actuary has determined that the City of Detroit's withdrawal liability to be $123,614." **Ex. 6A.**

3. The Sheet Metal Fund alleges that the City withdrew from the Fund in January 2016, but it failed to notify the City of the alleged associated withdrawal liability until 2020. **Exhibit 6N.** Section 1399(b)(1) of title 29 of the United States Code obligates the Fund to notify the City as soon as practicable after a complete or partial withdrawal of the amount of the alleged liability, providing a schedule of liability payments, and a demand for payment in accordance with the schedule. 29

U.S.C. § 1399(b)(1). To date, the Sheet Metal Fund has failed to justify its untimely notification.

4. In response to the Sheet Metal Fund Notice, on April 23, 2020, the City requested that the Sheet Metal Fund produce "all relevant documents regarding the notice of assessment, including but not limited to: Pension Plan documents, any documents related to . . . determining the amount of the determined withdrawal liability, the names of the employees that were in the respective . . . Locals . . . and all other relevant documents." **City Request to Sheet Metal Dated April 23, Ex 6B.**

5. On May 21, 2020, the Sheet Metal Fund produced some documents, but did not produce any documents purporting to show that the City was obligated to contribute to the Sheet Metal Fund.

6. Consequently, again on May 27, 2020, the City requested that the Sheet Metal Fund "produce all available files and documents (including electronic documents or emails), in the custody or control of [the Fund], or other third party agents, relating in any away to (i) these unions/pension funds/employees past or current relationships to or dealing with the City, or (ii) the claims now being asserted against the City." **City Request to Sheet Metal Dated May 27, Ex. 6C.**

7. In this correspondence, the City explained that the City's bankruptcy, passage of time and the COVID-19 pandemic have prevented the City from being

able to locate historical files, complete its own due diligence or engage an independent review of the situation.

8. The Sheet Metal Fund refused to produce additional documents.

9. Accordingly, on June 25, 2020, pursuant to 29 U.S.C. §1399(b)(2)(A), the City submitted a formal request for a complete review as to the Sheet Metal Fund Notice, as supplemented by the Sheet Metal Fund's May 21, 2020 and June 22, 2020 correspondence. **City Request to Sheet Metal Dated June 25, Ex. 6D.** The City also requested that the Sheet Metal Fund provide various documents and information to the City no later than July 2, 2020. **Ex. 6D.**

10. To date, the Sheet Metal Fund has not produced any documents demonstrating that the City is obligated to contribute to the Sheet Metal Fund. The lack of information provided by the Sheet Metal Fund has further prohibited the City from determining whether there is a liability at all.

11. On July 21, 2020, having not received any response from the Sheet Metal Fund, the City sent a letter to Sheet Metal Workers' Local Union No. 80, requesting documents that purport to establish that it has any obligation to contribute to the Sheet Metal Fund, including copies of any collective bargaining agreement which allegedly obligates the City to contribute to the Sheet Metal Fund. **City Letter to Sheet Metal Dated July 21, Ex. 6E**. To date, Sheet Metal Workers' Local Union No. 80 has not responded.

12.     The City conducted a diligent search of its records and has found no documentation to support the claims in the Sheet Metal Fund Notice.

**B.     IBEW Fund**

13.     On or about April 7, 2020, the City received a Notice of Assessment of Employer Withdrawal Liability ("IBEW Fund Notice", and together with the Sheet Metal Fund Notice, the "Notices") from the Electrical Workers' Pension Trust Fund of Local Union #58, I.B.E.W., Detroit Michigan ("IBEW Fund" and together with the Sheet Metal Fund, the "Funds"), dated March 30, 2020.   **IBEW Fund Notice, Exhibit 6F.**

14.     The IBEW Fund Notice asserts that the City "has been determined to have completely withdrawn from the Electrical Workers' Pension Trust Fund of Local Union #58…" and that the "Fund's actuary has determined that the City of Detroit's withdrawal liability to be $167,555." **Ex. 6F.**

15.     The IBEW Fund alleges that the City withdrew from the Fund in January, 2016, but it failed to notify the City of the alleged associated withdrawal liability until 2020.  **Exhibit 6N.** Section 1399(b)(1) of title 29 of the United States Code obligates the Fund to notify the City as soon as practicable after a complete or partial withdrawal of the amount of the alleged liability, providing a schedule of liability payments, and a demand for payment in accordance with the schedule. To

date, the IBEW Fund has failed to justify its untimely notification. 29 U.S.C. §1399(b)(1)

16.    In response to the IBEW Fund Notice, on April 23, 2020, the City requested that the IBEW Fund produce "all relevant documents regarding the notice of assessment, including but not limited to: Pension Plan documents, any documents related to . . . determining the amount of the determined withdrawal liability, the names of the employees that were in the respective . . . Locals . . . and all other relevant documents." **City Request to IBEW Dated April 23, Ex. 6G.**

17.    On May 21, 2020, the IBEW Fund produced some documents, but did not produce any documents purporting to show that the City was obligated to contribute to the IBEW Fund. **Ex. 6G.**

18.    Consequently, again on May 27, 2020, the City requested that the IBEW Fund "produce all available files and documents (including electronic documents or emails), in the custody or control of [the Fund], or other third party agents, relating in any away to (i) these unions/pension funds/employees past or current relationships to or dealing with the City, or (ii) the claims now being asserted against the City." **Ex. 6C.**  The IBEW Fund refused to produce additional documents.

19.    In this correspondence, the City explained that the City's bankruptcy case, the passage of time and the COVID-19 pandemic have prevented the City

from being able to locate historical files, complete its own due diligence or engage an independent review of the situation.

20. The IBEW Fund refused to produce additional documents.

21. Accordingly, on June 25, 2020, pursuant to 29 U.S.C. §1399(b)(2)(A), the City submitted a formal request for a complete review as to the IBEW Fund Notice, as supplemented by the IBEW Fund's May 21, 2020 and June 22, 2020 correspondence. **City Request to IBEW Dated June 25, Ex. 6H.** The City also requested that the IBEW Fund provide various documents and information to the City no later than July 2, 2020. **Ex. 6H**.

22. To date, the IBEW Fund has not produced any documents demonstrating that the City is obligated to contribute to the IBEW Fund. The lack of information provided by the IBEW Fund has further prohibited the City from determining whether there is a liability at all.

23. On July 21, 2020, having not received any response from the IBEW Fund, the City sent a letter to IBEW Local Union #58, requesting documents that purport to establish that it has any obligation to contribute to the IBEW Fund, including copies of any collective bargaining agreement which allegedly obligates the City to contribute to the IBEW Fund. **City Request to IBEW Dated July 21, Ex. 6I.** To date, IBEW Local Union #58 has not responded.

24.    The City conducted a diligent search of its records and has found no documentation to support the claims in the IBEW Fund Notice.

**C.    City's Payment to Funds**

25.    On August 3, 2020, the City paid under the protest the first scheduled quarterly payment in the amount of $29,232.50 to the Electrical Workers' Union, Local 58 Pension Trust and the amount of $9,737 to the Sheet Metal Workers', Local 80 Pension Trust on account of the alleged withdrawal liability.    **Exhibit 6L.**

**D.    The DWSD and the Great Lakes Water Authority**

26.    The Funds asserted that the employees at issue were employed by the Detroit Water and Sewerage Department ("DWSD") and that the alleged withdrawal event occurred on or around January 2016, which, as described below, is the same month in which employees of the DWSD were transferred to the Great Lakes Water Authority ("Authority") and the Authority assumed the DWSD's collective bargaining agreements with respect to such employees. Consequently, the City reviewed the records of the DWSD and Authority to determine whether the Funds claims were related to the transition.

27.    During the City's bankruptcy case, on September 9, 2014, the City, State of Michigan, County of Oakland, County of Wayne and County of Macomb entered into a Memorandum of Understanding Regarding the Formation of the

Great Lakes Water Authority ("MOU"). *See* Doc. No. 7357. The MOU was a framework for the creation of a regional water and sewer/stormwater authority which would operate, control and improve both the Water and Sewage Disposal Systems owned by the City and operated by the Detroit Water and Sewerage Department ("DWSD"). *Id.*

28. The MOU resolved almost 40 years of litigation in the United States District Court for the Eastern District of Michigan, Case Number 77-71100.

29. The District Court had, in a series of orders issued between 2011 and 2013, used its equitable powers to grant DWSD autonomy from the City with respect to ratemaking, procurement, collective bargaining, and finance, which allowed DWSD to restructure its operations and negotiate its own collective bargaining agreements. U.S.D.C. E.D. Mich, Case No. 77-71100, Doc. Nos. 2397, 2410, 2528.

30. As a result, DWSD modified work rules, reduced the number of employees and negotiated collective bargaining agreements with a reduced number of unions.

31. Since at least 2012, if not before,[1] DWSD has had no collective bargaining agreements with either the IBEW or the Sheet Metal Workers. As

[1] The District Court's Order dated November 4, 2011, provided that "DWSD employees are members of 20 different collective bargaining units, each of which

*Continued on next page.*

some bargaining units, notably AFSCME Local 207 and Senior Accountants and Analysts Association, continued to challenge some of these changes, as well as representation rights, these did not include the IBEW or the Sheet Metal Workers.

32. The MOU provided a framework for the establishment of the Great Lakes Water Authority ("Authority") to lease the regional water system and the regional sewage treatment system from the City for a term of at least 40 years. The MOU authorized the parties to negotiate the terms of the leases, an agreement between the City and the Authority relating to the operation, management and improvement of the Detroit local water supply system and local sewer system, and a transition and shared services agreement. The MOU was approved by the Governor, the State Treasurer and the Bankruptcy Court in the *Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* [Doc. No. 8272] ("Confirmation Order"), which provided that the MOU was approved in all respects. Confirmation Order ¶ J.38, pp. 94-95.

33. The Confirmation Order further provided:

> The City is hereby authorized to enter into, and take any action necessary to perform under or implement, the terms of the Memorandum of Understanding and any final agreement resulting therefrom creating a regional water and sewer/stormwater authority to

---

*Continued from previous page.*

has its own collective bargaining agreement ("CBA") that expires on June 30, 2012. (*See* Docket Entry No. 2409, Ex. C, Appx. 12). The list of unions at Docket Entry No. 2409, Ex. C, Appx. 12 does not list the IBEW or Sheet Metal Workers.

> be called the Great Lakes Water Authority (the "GLWA") in accordance with, and subject to all approvals and consents required under, State law, the DWSD Tender Order, all documents related to the 2014 DWSD Refinancing Obligations, all documents related to the 2014 Revenue Refinancing Bonds, all documents related to the 2014 Revenue and Revenue Refinancing Bonds and the DWSD Bond Documents. The GLWA transaction contemplated in the Memorandum of Understanding, if consummated, would constitute a Qualifying DWSD Transaction as such term is defined in the Plan.

Confirmation Order ¶ J.38, pp. 94-95.

34. The articles of incorporation for the Authority were filed with the State on November 26, 2014, at which point the Authority came into existence. The parties completed negotiation of the leases and related agreements in June, 2015, and the City and the Authority executed them on June 12, 2015. The leases and related documents could not become effective until a number of conditions were satisfied, including the assignment of all customer and vendor contracts and all collective bargaining agreements relating to employees who transferred to the Authority and the approval by the District Court. All of the conditions were satisfied by December 2015, and on December 15, 2015, Judge Cox issued his order and opinion approving the transfer of the regional systems to the Authority and the related agreements and actions. Doc. No. 2573. The leases and all related operating agreements became effective on January 1, 2016, at which time the Authority assumed those collective bargaining agreements and became the successor employer for the transferring employees.

35. As of January 1, 2016, neither the City nor DWSD retained any liability with respect to the employees who transferred to the Authority, including liability in respect of pension contributions for those employees. *See* **Ex. 6J,** Regional Water Supply System Lease between the City and Authority, section 4.2, p. 16 ("The Authority shall be a successor employer for those DWSD employees who transfer their employment to the Authority, and the Authority shall assume and honor DWSD's collective bargaining agreements with respect to such employees set forth in Schedule F attached hereto."); **Ex. 6K,** Regional Sewage Disposal System Lease between the City and Authority, section 4.2, p. 16 ("The Authority shall be a successor employer for those DWSD employees who transfer their employment to the Authority, and the Authority shall assume and honor DWSD's collective bargaining agreements with respect to such employees set forth in Schedule F attached hereto.").

**E. The City's Bankruptcy Case**

36. On October 22, 2014, the City filed its *Eighth Amended Plan of the Adjustment of Debts of the City of Detroit* [Doc. No. 8272] ("Plan"). Collective bargaining agreements were generally treated in one of two ways under the Plan.

37. First, article II.D.5 of the Plan states that collective bargaining agreements listed on Exhibit II.D.5 survive confirmation of the Plan, remain unaffected by the Confirmation Order, and will be performed in the ordinary

course of the City's business. Plan, p. 46. No agreements with the IBEW or Sheet Metal Workers are identified on Exhibit II.D.5.

38. Second, Article II.D.6 of the Plan[2] states that "On the Effective Date, each Executory Contract and Unexpired Lease that is listed on Exhibit II.D.6 shall be deemed rejected pursuant to section 365 of the Bankruptcy Code." Exhibit II.D.6 lists "All collective bargaining agreements that had expired prior to confirmation to the extent that they purported to, or would be determined by applicable law to, provide continuing contractual benefits to employees or former employees of the City." Doc. No. 8045-10, p. 77. "Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall be treated as Class 14 Claims (Other Unsecured Claims), subject to the provisions of section 502 of the Bankruptcy Code." Plan, Art. II.D.6.

39. Consequently, to the extent that there was a collective bargaining agreement which obligated the City to contribute to the Funds, it was rejected in the bankruptcy case.

40. As a result, through the issuance of the Notices and related collection efforts, the Funds have violated the discharge and injunction provisions in the Plan.

41. The discharge provision in the Plan provides:

[2] Plan, p. 46 (Doc. No. 8045, p. 53 of 82; Doc. No. 8272, p. 186 of 225).

> Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date. Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date, discharge the City from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (ii) the Holder of a Claim based on such debt has accepted the Plan.

Plan, Art. III.D.4, at p.50.

42. Further, the Plan injunction set forth in Article III.D.5 provides in pertinent part:

> **Injunction**
>
> **On the Effective Date, except as otherwise provided herein or in the Confirmation Order,**
>
> **a. all Entities that have been, are or may be holders of Claims against the City…shall be permanently enjoined from taking any of the following actions against or affecting the City or its property…**
>
> **1. commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affect the City of its property…**
>
> **5. proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan or the settlements set forth herein to the extent such**

**settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and**

**6. taking any actions to interfere with the implementation or consummation of the Plan.**

Plan, Article III.D.5, at pp. 50-51 (emphasis supplied).

43. The Court also retained jurisdiction to enforce the Plan injunction and to resolve any suits that may arise in connection with the consummation, interpretation or enforcement of the Plan. Plan, Art. VII. F, G, I, at p.72.

44. Through the issuance of the Notices and related collection efforts, the Funds violated the discharge and injunction provisions in the Plan.

## III. Conclusion

45. To the extent the Motion is opposed, the City reserves the right to seek discovery from the Unions and Funds.

46. The City thus respectfully requests that this Court enter an order, in substantially the same form as the one attached as Exhibit 1 enjoining the Funds from pursuing the claims set forth in the Notices and requiring the Funds to pay to the City all amounts that the City has paid under protest. The City sought, but did not obtain, concurrence to the relief requested in the Motion from the Funds.

Dated: August 28, 2020

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Attorneys for the City of Detroit

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| In re: City of Detroit, Michigan, Debtor. | Bankruptcy Case No. 13-53846 Judge Thomas J. Tucker Chapter 9 |
|---|---|

## EXHIBIT LIST

| | |
|---|---|
| Exhibit 1 | Proposed Order |
| Exhibit 2 | Notice of Opportunity to Object |
| Exhibit 3 | None |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | None |
| Exhibit 6A | Sheet Metal Fund Notice |
| Exhibit 6B | City Request to Sheet Metal Dated April 23 |
| Exhibit 6C | City Request to Sheet Metal/IBEW Dated May 27 |
| Exhibit 6D | City Request to Sheet Metal Dated June 25 |
| Exhibit 6E | City Letter to Sheet Metal Dated July 21 |
| Exhibit 6F | IBEW Fund Notice |
| Exhibit 6G | City Request to IBEW Dated April 23 |
| Exhibit 6H | City Request to IBEW Dated June 25 |
| Exhibit 6I | City Request to IBEW Dated July 21 |

| | |
|---|---|
| Exhibit 6J | Regional Water Supply System Lease between the City and Authority |
| Exhibit 6K | Regional Sewage Disposal System Lease between the City and Authority |
| Exhibit 6L | Payments under Protest |
| Exhibit 6M | City of Detroit Payment Schedule for Sheet Metal |
| Exhibit 6N | City of Detroit Payment Schedule for IBEW |

**EXHIBIT 1 – PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| In re: | Bankruptcy Case No. 13-53846 |
|---|---|
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**ORDER GRANTING CITY OF DETROIT'S MOTION TO ENFORCE CONFIRMATION ORDER AGAINST THE SHEET METAL WORKERS' LOCAL UNION NO. 80 PENSION TRUST FUND AND ELECTRICAL WORKERS' PENSION TRUST FUND OF LOCAL UNION #58, I.B.E.W., DETROIT MICHIGAN**

This matter, having come before the Court on the *Motion to Enforce the Confirmation Order Against the Sheet Metal Workers' Local Union No. 80 Pension Trust Fund and Electrical Workers' Pension Trust Fund of Local Union #58, I.B.E.W.* ("Motion"),[3] upon proper notice and a hearing, the Court being fully advised in the premises, and there being good cause to grant the relief requested,

**THE COURT ORDERS THAT:**

1. The Motion is granted

2. The Funds are permanently enjoined from taking any of the action on the claims asserted in the Notices against or affecting the City or its property

[3] Capitalized terms used but not otherwise defined in this Order shall have the meanings given to them in the Motion.

3. Within three days of the entry of this Order, the Electrical Workers' Union, Local 58 Pension Trust Fund shall pay to the City the amount of $29,232.50 and the Sheet Metal Workers', Local 80 Pension shall pay to the City the amount of $9,737. Each Fund shall refund any other amounts that the City pays to it under protest.

4. The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

**EXHIBIT 2 – NOTICE**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| In re: City of Detroit, Michigan, Debtor. | Bankruptcy Case No. 13-53846 Judge Thomas J. Tucker Chapter 9 |
|---|---|

**NOTICE OF OPPORTUNITY TO OBJECT TO CITY OF DETROIT'S MOTION**

The City of Detroit has filed the *Motion to Enforce the Confirmation Order Against the Sheet Metal Workers' Local Union No. 80 Pension Trust Fund and Electrical Workers' Pension Trust Fund of Local Union #58, I.B.E.W., Detroit Michigan* ("Motion").

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney.**

If you do not want the Court to enter an Order granting the Motion, within 14 days, you or your attorney must:

1. File with the court a written response or an answer, explaining your position at:[4]

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above. You must also mail a copy to:

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

---

[4] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
     Marc N. Swanson (P71149)
     150 West Jefferson, Suite 2500
     Detroit, Michigan 48226
     Telephone: (313) 496-7591
     Facsimile: (313) 496-8451
     swansonm@millercanfield.com

Dated: August 28, 2020

**EXHIBIT 3 – NONE**

## EXHIBIT 4 – CERTIFICATE OF SERVICE

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| In re: City of Detroit, Michigan, Debtor. | Bankruptcy Case No. 13-53846 Judge Thomas J. Tucker Chapter 9 |
|---|---|

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 28, 2020, he served a copy of the foregoing *Motion to Enforce the Confirmation Order Against the Sheet Metal Workers' Local Union No. 80 Pension Trust Fund and Electrical Workers' Pension Trust Fund of Local Union #58, I.B.E.W., Detroit Michigan* upon the following parties by first class mail and, where an email address is listed, by email:

**Funds:**

Barbara A. Patek
Law Office of Barbara A. Patek PLC
27 E. Flint Street, Suite 2
Lake Orion, MI 48362
pateklaw@gmail.com

Joseph W. Uhl
Watkins, Pawlick, Calati & Prifti, PC
1423 E. 12 Mile Road
Madison Heights, MI 48071
juhl@wpcplaw.com

Sheet Metal Workers' Local Union No. 80
Fringe Benefit Funds
PO Box 1408

Troy, MI 48099-1408

Electrical Workers' Joint Boards of Trustee
PO Box 71337
Madison Heights, MI 48071-0337

**Sheet Metal Workers' Local Union No. 80:**

Tim Mulligan
Business Manager
Sheet Metal Workers' Local Union No. 80
17100 W. Twelve Mile Road
Southfield, MI 48076-2115
tmulligan@smw80.org

Sheet Metal Workers Local Union 80 Fringe Benefit Funds
Sachs Waldman Professional Corporation
1423 E. 12 Mile Rd.
Madison Heights, MI 48071
epatterson@sachswaldman.com

**IBEW Local Union #58:**

Brian D. Richard
Business Manager/Financial Secretary
IBEW Local Union #58
1358 Abbott Street
Detroit, MI 48226
ibew58@ibewlocal58.org

Electrical Workers Fringe Benefit Funds of Local #58, IBEW
c/o Dianne S. Ruhlandt, Esq.
Erman, Teicher, Zucker & Freedman, P.C.
28400 Northwestern Hwy Ste 200
Southfield, MI 48034-8348
druhlandt@ermanteicher.com

DATED: August 28, 2020

By: /s/ Marc N. Swanson

Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

**EXHIBIT 5 – NONE**