UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

          Debtor.

_____/

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

**JOINT MOTION OF THE DETROIT POLICE OFFICERS ASSOCIATION
AND CITY OF DETROIT FOR ENTRY OF AN ORDER AUTHORIZING
AND APPROVING (A) SETTLEMENT OF CLAIM 1862, (B)
DISTRIBUTION PROCEDURES FOR CLAIM 1862,
AND (C) RELATED RELIEF**

The City of Detroit ("City") and the Detroit Police Officers Association

("DPOA") file this Joint Motion of the Detroit Police Officers Association and

City of Detroit for Entry of an Order Authorizing and Approving (A) Settlement of

Claim 1862, (B) Distribution Procedures for Claim 1862, and (C) Related Relief

("Motion"). In support of its Motion, the City and the DPOA jointly state the

following:

**I.**      **Introduction**

      1.    Through this Motion, the DPOA and City seek entry of an order in

substantially the same form as the proposed order attached as **Exhibit 1**, which

authorizes and approves (a) the settlement between the City and DPOA of Claim

1862 set forth herein and in the proposed order (b) and the DPOA's proposed

distribution procedures to distribute the proceeds of the settlement between the City

- 1 -

and the DPOA of Claim 1862 among members of the DPOA.   This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334, and Article VI of the Plan (defined below).   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## II.    Background

2.    The DPOA is the exclusive bargaining agent for and representative of the City's police officers ("members"). The DPOA represents that it is authorized and empowered to act on behalf of and bind the members to the settlement set forth in this Motion and the proposed order.

3.    On February 20, 2014, the DPOA filed proof of claim number 1862 ("Claim 1862") on behalf of its members in an unliquidated amount. Claim 1862 asserts a claim based on a 5% wage increase awarded DPOA members ("Wage Claim").   All other claims asserted and included in Claim 1862 have been withdrawn. *See* Doc. No. 13189.

4.    On October 22, 2014, the City filed its *Eighth Amended Plan of the Adjustment of Debts of the City of Detroit (October 22, 2014)* [Doc. No. 8045] ("Plan"), which the Court confirmed with slight modifications by order entered on November 12, 2014 [Doc. No. 8272] ("Confirmation Order").   Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the Plan.

36838108.14/022765.00213

5. Class 14 of the Plan provides that "each Holder of an Allowed Other Unsecured Claim…shall receive…a Pro Rata share of approximately $16.48 million in New B Notes and (B) distributions in accordance with Section II.B.3.p.i.A." Plan, Article II.B.3.u.i, p. 44.

6. Consistent with the terms of the Plan, on the Effective Date, the City issued a total of $20,596,747 in aggregate principal amount of New B Notes on account of Allowed Other Unsecured Claims in Class 14. This amount consists of Series 2014B-1 in the principal amount of $20,376,922 ("Series 2014B-1 Notes") and Series 2014B-2 in the principal amount of $219,825 ("Series 2014B-2 Notes" and, together with the Series 2014B-1 Notes, the "B Notes"). Except to the extent previously authorized by the Court, the B Notes are presently held by the Disbursing Agent (defined below) under the Plan pending Distribution.

7. The principal terms of the B Notes were set forth on Exhibit I.A.246 to the Plan. Exhibit 6-2, Doc. No. 8045-1, page 314 of 809. The B Notes mature 30 years after the Effective Date and bear interest at the rate of 4% per annum for the first 20 years and 6% per annum for years 21 to 30. Holders of B Notes receive payments of interest only for the first 10 years. Beginning in year 11, in addition to payments of interest, payments of principal on the B Notes are required in amounts

necessary to amortize the B Notes in 20 annual installments through mandatory sinking fund redemptions.[1]

8.    All Distributions of B Notes under the Plan will be made by the City's disbursing agent, U.S. Bank National Association ("Disbursing Agent"). On the Effective Date, and in accordance with Article V.A. of the Plan, the City and the Disbursing Agent entered into the Class 14 Disbursing Agent Agreement ("Disbursing Agreement"). Exhibit 6-3; Plan, Article V.A, p. 64.[2]

9.    As set forth in the Disbursing Agreement, the B Notes were issued to the Disbursing Agent in registered "book entry" form through The Depository Trust Company ("DTC"), a depository and clearing agency for various types of securities, including municipal debt instruments. The delivery of the B Notes in registered, book entry form eliminates the need for physical movement of securities certificates in connection with primary and secondary market trades, and therefore facilitates the ability of the Holder to sell the B Notes. However, access to the DTC system is limited to financial institutions that maintain a participant relationship with DTC. As a result, initial Distributions of B Notes and any subsequent trades must be

---

[1] The B Notes are subject to optional redemption prior to maturity at any time.

[2] Article V.A. of the Plan provides that "The City may act as Disbursing Agent or may employ or contract with other Entities to act as the Disbursing Agent or to assist in or make the Distributions required by the Plan. Any Disbursing Agent appointed by the City will serve without bond. Other than as specifically set forth in the Plan, the Disbursing Agent shall make all Distributions required to be made under the Plan." Plan, Article V.A, p. 64.

executed through a broker/dealer. This means that every allowed claimholder must have a brokerage account to receive its initial pro rata Distribution of B Notes and must provide pertinent information concerning its brokerage account to the Disbursing Agent.

10.     In addition to B Notes, the Disbursing Agent also holds the interest payments made by the City on the Class 14 B Notes that have accrued and been paid since the Effective Date. The interest payments received by the Disbursing Agent have been invested by the Disbursing Agent in accordance with the Disbursing Agreement for the benefit of Allowed Claimholders pending Distributions to the Allowed Claimholders (such interest payments and investment income currently in the possession of the Disbursing Agent and any future interest payments and investment income that may hereafter come into the possession of the Disbursing Agent are referred to collectively as the "Related Income").

11.     On September 17, 2019, the City filed its *Motion to Implement Distributions of B Notes to Holders of Allowed Class 14 Claims Under the City's Confirmed Plan of Adjustment* [Doc. No. 13126] ("Distribution Motion"). On November 13, 2019, the Court entered an Order approving the Distribution Motion [Doc. No. 13173] ("Distribution Order").

12.     The Distribution Order requires each Class 14 Claimant to return a properly completed and valid copy of a Brokerage Account Form (as defined in the

36838108.14/022765.00213

Distribution Order) and the applicable Tax Form (as defined in the Distribution Order). Distribution Order, paragraph 5.

13. On October 29, 2019, the City filed its objection to the Wage Claim [Doc. No. 13152]. The DPOA filed an amended answer opposing the City's objection on January 12, 2020 [Doc. No. 13225]. The City filed a reply on February 7, 2020 [Doc. No. 13241].

14. This Court held a hearing on the objection on March 7, 2020. Following that hearing, the DPOA and the City continued good faith negotiations to resolve and finally settle the Wage Claim. Granting this Motion will accomplish that.

## III. Settlement of the Wage Claim

15. Subject to the entry of an order granting and approving this Motion, the DPOA and the City have agreed to fully, finally and irrevocably settle the Wage Claim (that represents the final component of Claim 1862) and to the procedural mechanics described in the Order and in the Supplemental Order (A) Authorizing the Establishment of Qualified Settlement Fund, (B) Appointing Fiduciary, (C) Approving Distribution Procedures for Claim 1862 and (D) for Related Relief (the "Supplemental Distribution Order"), which is attached as **Exhibit 6B**. These proposed orders will facilitate further distributions by the DPOA among eligible past and current members of the DPOA. Pursuant to the terms of the settlement, the DPOA, on behalf of its past and current members, will hold an Allowed Class 14

Claim in the amount of $12.5 million ("Allowed Claim 1862").  This liquidation and classification of Allowed Claim 1862 fully, finally and irrevocably resolves the Wage Claim and Claim 1862 in its entirety.   The City and the DPOA have also agreed that Allowed Claim 1862 will not be subject to reconsideration under Section 502(j) of the Bankruptcy Code, Fed. R. Bankr. P 9024 or otherwise for any reason.

## IV.    Proposed Distribution Procedures for the Allowed Claim 1862

16.   DPOA Wage Claimants. The DPOA has identified 1650 current or former DPOA members who, as set forth below, would have benefitted if the 5% raise that is asserted as the basis of the Wage Claim had gone into effect on January 1, 2014 ("DPOA Wage Claimants").  The DPOA Wage Claimants are identified on **Exhibit 6A** (filed under seal). The DPOA Wage Claimants include anyone who, during the time period beginning on January 1, 2014 and running through and including September 30, 2014 (the "Relevant Time Period"), was employed by the City as a Detroit police officer (and no others).[3]  In order to identify the DPOA Wage Claimants, the DPOA reviewed its membership lists (which included all Detroit police officers) from the Relevant Time Period and included anyone on those lists.

---

[3] During the Relevant Time Period, under applicable law, the Public Employment Relations Act, MCL 423.201 et seq, the DPOA was the recognized exclusive collective bargaining representative for all police officers employed by the City of Detroit.

36838108.14/022765.00213

In an effort to maximize the benefit of the Wage Claim to its members and to minimize administrative costs, the DPOA sought to be inclusive and to treat all of the DPOA Wage Claimants, regardless of how long they served during the Relevant Time Perion, the same in the distribution process. As such, **Exhibit 6A** includes anyone who was a DPOA member for even a single day during the Relevant Time Period.

17.     The DPOA adopted the proposed distribution process because the DPOA believes and the City does not dispute[4] that it is both impractical and administratively inefficient for Distributions under the Plan on account of Allowed Claim 1862 to be allocated by the DPOA among the 1650 individual DPOA Wage Claimants and, thereafter, distributed among them directly by the DPOA.

18.     As such, subject to this Court's authorization and approval, the DPOA proposes an alternative process, a process which the City supports in further implementation of the Plan.

19.     The DPOA's proposed distribution process has three components: (a) the creation by the DPOA of a Qualified Settlement Fund (the "Fund"), consistent with Treasury Regulation 1.468B-1, and the appointment of a fiduciary by the DPOA so that the B Notes to which the DPOA is entitled by virtue of Allowed Claim

---

[4] The City does not have any obligation under the Plan or otherwise to make a distribution to the DPOA Wage Claimants. Instead, the City's obligation would be to make one distribution to the DPOA directly.

36838108.14/022765.00213

No. 1862 can be received, marketed and sold for the benefit of the DPOA Wage Claimants; (b) the transfer and deposit of the proceeds of the sale of the B Notes to an account in the name of the Fund for the benefit of the DPOA Wage Claimants; and (c) the retention by DPOA of a claims administrator to oversee and distribute the proceeds in the Fund to the DPOA Wage Claimants. The administrative costs and fees to facilitate the proposed distribution process will be paid exclusively from the Fund and not by the City or the DPOA.

20.     The DPOA acknowledges, understands and agrees that the City makes no representations or warranties of any kind, whether express or implied, regarding the value, marketability or otherwise in respect of Allowed Claim 1862, including the value, number or amount of B Notes which are to be Distributed in respect of Allowed Claim 1862 and sold on behalf of the DPOA and the DPOA Wage Claimants, the proceeds of the B Notes that are or are likely to be received on any sale or sales of the B Notes or that are distributed to the Fund, or the allocation, administration or distribution of those proceeds by the Claims Administrator (defined below) among the DPOA Wage Claimants.  Further, the City undertakes no duty or obligation that is not expressly imposed on the City by the Plan or other orders of this Court, and the parties are asking the Court to so find in the order approving this Motion.  This Motion is not intended to, and does not, modify or amend the Plan or the Confirmation Order in any respect.

21. In order to complete the distribution of Allowed Claim 1862 to the DPOA Wage Claimants, the DPOA has selected and plans to retain the services of the following professionals ("Professionals"): (a) a qualified broker/dealer, Loop Capital Markets, LLC ("Loop Capital"); (b) a fiduciary, Homer W. McClarty, who will serve as trustee for the Fund ("McClarty"); (c) Huntington Bank ("Huntington"); (d) a qualified broker/dealer, Huntington Securities, Inc. ("HSI"); (e) an experienced claims administrator, Epiq Class Action Claims & Solutions, Inc. ("Claims Administrator"); and (f) any additional or other or different professionals to assist it with the administration of Allowed Claim 1862. The distribution process for which the DPOA seeks approval is set forth below.

## A. Sale and Liquidation of the B Notes

22. In order to receive its share of the B Notes, the DPOA will contract with Huntington, who will act as escrow agent for the Fund. An escrow account will be established to allow Huntington/HSI to receive the B Notes for the purpose of delivering the B Notes to an account held by the Fund with Loop Capital.

23. The DPOA also seeks, through the Supplemental Order, the establishment of the Fund, which will be the owner of the B Notes for the benefit of the DPOA Wage Claimants, and the appointment of a trustee, who will direct Loop Capital, the broker dealer selected by the DPOA, to market and sell the B Notes on behalf of the Fund, as agent.

24.     In order to minimize administrative costs and in an effort to maximize the distribution to the DPOA Wage Claimants, the City has agreed, subject to this Court's approval, to make a single Distribution of B Notes and Related Income on account of Allowed Claim 1862 ("Wage Claim Proceeds") to the DPOA at the same time as the final distribution of B Notes is made by the City to holders of Allowed Class 14 claims under the Plan generally (exclusive of specific holders which may have received or may receive their final distributions of B Notes pursuant to prior or future orders of the Court). Furthermore, if there is one or more partial distributions of B Notes and Related Income to holders of Allowed Class 14 Claims generally, the City agrees to hold the DPOA's share of such B Notes and Related Income for the benefit of DPOA, and to make a single distribution (including the amount of any partial distributions to the DPOA which were withheld from the partial distributions made to the holders of Allowed Class 14 Claims generally) to the DPOA at the time of the final distribution of B Notes under the Plan to holders of Allowed Class 14 Claims generally.

25.     As noted above, the DPOA will also contract with an approved broker/dealer, Loop Capital, which, promptly upon Huntington's receipt of the B Notes, will market and sell the B Notes at McClarty's direction.  Huntington will then, at McClarty's direction, receive and deposit the cash proceeds of the liquidated B Notes into the Fund and deliver the B Notes to Loop Capital. Loop Capital will be

36838108.14/022765.00213

compensated 1% of the sales proceeds of the B Notes. Such compensation shall be subtracted from the cash proceeds of the liquidated B Notes. McClarty will be paid exclusively by the Claims Administrator at McClarty's direction from the cash proceeds of the Fund and not by the City or the DPOA.

### B.    The DPOA Wage Claimants

26.    The DPOA asserts that the Wage Claim is based on a 5% wage increase that, pursuant to the Roumell Award, would have been effective for active DPOA members beginning as of January 1, 2014, but which was superseded by the collective bargaining agreement negotiated between the City and the DPOA in this bankruptcy case effective October 1, 2014. Hence, the DPOA believes and has maintained that the Wage Claim covers DPOA members' wages from January 1, 2014 through and including October 1, 2014 ("Wage Claim Period").

27.    In order to maximize the benefit of the Wage Claim to affected DPOA members, the DPOA intends to distribute the Wage Claim Proceeds on a *pro rata* basis to anyone who was an active DPOA member and who served the City as a sworn police officer at *any* time during the Wage Claim Period (each such DPOA Wage Claimant to receive 1/1650 of the total amount to be distributed to DPOA Wage Claimants).

28.    The DPOA, based upon its own records and available City payroll records has compiled a list of the DPOA Wage Claimants, which are identified on

**Exhibit 6A**, which will be filed under seal pursuant to this Court's January 15, 2021 order [Docket No. 1331] to protect the names of the City's police officers. Each of the DPOA Wage Claimants identified on **Exhibit 6A** will be entitled to receive a *pro rata* share of the net proceeds of the Wage Claim from the Fund as determined by the DPOA and Claims Administrator. Each DPOA Wage Claimant's *pro rata* share will be based on the net proceeds of the Allowed Wage Claim, after payment of all administrative costs associated with the sale and distribution of the Allowed Wage Claim to the DPOA Wage Claimants (the "Net Proceeds"). The Net Proceeds will include both the Related Income and the proceeds of the B Notes. The Net Proceeds will be divided and distributed equally among the DPOA Wage Claimants, and any withholding tax required by law will be withheld by the Claims Administrator from each DPOA Wage Claimant's share of the Net Proceeds and will be submitted to the appropriate taxing authorities by the Claims Administrator.

29.     The City has played no role and will play no role (a) in identifying the DPOA Wage Claimants or determining the method for allocating the Wage Claim Proceeds among them, (b) in identifying, recommending, retaining or supervising the Professionals, or (c) in the administration of the Fund or distribution of the Wage Claim Proceeds in the Fund by the Claims Administrator or McClarty to the DPOA Wage Claimants. As a result, the City will not be liable or otherwise responsible for the accuracy of the identities or other pertinent information regarding the DPOA

Wage Claimants, allocation or withholding of amounts of the Wage Claim Proceeds among them, the qualifications or duties and responsibilities of the Professionals retained by the DPOA, or anything else addressed in the DPOA's proposed distribution procedures set forth in this Motion or the proposed orders authorizing and approving it.

## C. The Claims Administrator, the Fund and the Proposed Distribution Process

30. As noted above, the Fund will be established to receive the B Notes and the Wage Claim Proceeds, and all administrative expenses, whether incurred by any of the Professionals, including without limitation, Huntington, HSI, Claims Administrator, Loop Capital, McClarty or any other professional retained by the DPOA, will be paid from the Fund. Establishing the Fund should allow the Wage Claim Proceeds to pass directly to the DPOA Wage Claimants, without tax consequences to the DPOA or any withholding obligation to the City, although the City makes no representation, warranty or promise in that regard, and the DPOA acknowledges, understands and agrees that it is relying and will be relying exclusively on its own professional advice and judgment in that regard.

31. McClarty, the proposed trustee, is an experienced Chapter 7 trustee and also has experience with the sale of municipal bonds. A short biography of McClarty is attached as **Exhibit 6C**. McClarty will advise the DPOA, for the benefit of the DPOA Wage Claimants, as to matters related to the receipt, marketing and any

36838108.14/022765.00213

proposed sale of the B Notes and will direct the escrow agent in that regard. McClarty is also prepared to assist the Claims Administrator in the oversight of the distribution of the Wage Claim Proceeds, if necessary.

32.     The Claims Administrator is an experienced claims administrator with extensive experience administering settlement funds in bankruptcy cases and otherwise. The Claims Administrator, with the assistance and cooperation of the DPOA and, as necessary, the trustee, will oversee the distribution of the Wage Claim Proceeds from the Fund.  The Claims Administrator will provide notice to the DPOA Wage Claimants, set up a database of the DPOA Wage Claimant's contact information, administer payments and withhold any required taxes from the payments, complete any necessary tax reporting, and provide informational support to the DPOA Wage Claimants. A copy of the services agreement between the DPOA and the Claims Administrator is attached as **Exhibit 6D (filed under seal).**

33.     The DPOA believes that the proposed distribution process will maximize the benefits of the Wage Claim (Allowed Claim 1862) to the DPOA Wage Claimants. It is inclusive in that it maximizes the number of members who are entitled to recover as DPOA Wage Claimants. Any current or former DPOA member who served or continues to serve the City as a police officer at any time during the Wage Claim Period is entitled to recover. The proposed *pro rata* distribution will also maximize the benefit to each DPOA Wage Claimant by avoiding costly

- 15 -

additional administrative expenses that would be required if the distribution process were to treat the DPOA Wage Claimants on other than a *pro rata* basis.

**D.     Tax and Related Provisions**

34.     The Distributions under the Plan to the DPOA on account of the Allowed Claim 1862 are intended to be held by "qualified settlement funds" within the meaning of Treasury Regulation 1.468B-1.  The Fund will be established by the Supplemental Order in order to effectuate Distributions regarding Allowed Claim 1862.  The B Notes allocated to the DPOA will be Distributed by the City (or the Disbursing Agent) to an account established by the Fund which will be identified by the DPOA on the Brokerage Account Form.  The account will be established by a DTC-capable brokerage firm capable of receiving the B Notes electronically and the account will be titled in the name of the Fund in accordance with the terms of the Supplemental Order.

35.     The DPOA shall require the Fund to comply with orders of this Court pertaining to Distributions under the Plan relating to Allowed Claim 1862, including the Distribution Order.  The Distribution Order is modified with respect to the DPOA to provide that the name of the creditor on the Brokerage Account Form and Tax Form will be the DPOA Bankruptcy Fund and to allow the DPOA to complete the Brokerage Account Form according to the terms of the Supplemental Order. The Supplemental Order allows the DPOA to defer completing the Brokerage Account

Form and Tax Form until it receives notice from the City that a final distribution is to be made to the holders of Allowed Class 14 Claims. The Brokerage Account Form and Tax Form will be completed by McClarty or any other person or entity expressly authorized by the DPOA to do so in accordance with the terms of the Supplemental Order. All Distributions of B Notes and Related Income that would otherwise be distributed to the DPOA concerning Allowed Claim 1862 shall be Distributed in accordance with the Plan and the Distribution Order to the Fund (and not the DPOA).

36. To satisfy section 468B of the Internal Revenue Code of 1986, and Treas. Reg. section 1.468B, and to facilitate subsequent distributions to DPOA Wage Claimants, the DPOA has retained McClarty and the Claims Administrator. McClarty will facilitate and direct the sale of the B Notes and the subsequent distribution of the net proceeds of the sale of the B Notes. McClarty will be available, as necessary, to assist the Claims Administrator. The Claims Administrator shall be charged with administration of the Fund, and the subsequent distributions of the Related Income and any proceeds of the sale of the B Notes and other distributions within Fund to the DPOA and the DPOA Wage Claimants. The agreement between the DPOA and the Claim Administrator provides that the Claims Administrator will:

      (a)    provide notice of the distribution to each of the DPOA Wage Claimants promptly before the time of the final distribution;

36838108.14/022765.00213

(b)    solely be responsible for calculation and satisfaction of all tax obligations concerning the B Notes, any proceeds thereof, including the Wage Claim Proceeds, and any other funds concerning Allowed Claim 1862, and the administration and satisfaction of employment and payroll taxes and any necessary State and Federal withholdings. Only the Claims Administrator (and not the City or any of its agents) will be responsible for the preparation, securing of necessary signatures, and filing of tax returns and other documents and information required by applicable law in respect of the Fund, which includes the specific returns described in Treas. Reg 1.468B-2; and

(c)    calculate the share of the settlement amount allocable to each DPOA Wage Claimant, including the amount necessary for any tax withholdings, and, after withholding or paying the tax amount, distribute net amounts to each DPOA Wage Claimant.

*See* **Exhibit 6E.**

37.    The City shall have no responsibility, duty or liability for any actions or inactions of the Claims Administrator or McClarty in connection with their respective duties, responsibilities, obligations or otherwise. The Claims Administrator and McClarty have been selected and appointed solely by the DPOA,

and without input of the City, to serve as the DPOA's agent (or independent contractor) to aid and assist the DPOA in facilitating the receipt and subsequent distribution of Distributions that the DPOA receives, or are otherwise Distributed under the Plan at the direction of DPOA or the Claim Administrator on account of Allowed Claim 1862, from the City (or Disbursing Agent) under the Plan.

38.     Further, the City will not be responsible or liable for any tax obligations associated with the issuance, distribution, investment, or liquidation of B Notes, any proceeds thereof, or any other funds distributed pursuant to the Plan, the proposed orders or otherwise.  The employer share of any applicable payroll taxes for the payment amounts allocated or made to the DPOA and its members will be paid exclusively from those B Notes (or the proceeds thereof) or any other funds Distributed to the Fund on account of Allowed Claim 1862. The City shall have no obligation to "gross-up" the Distributions under the Plan to the Fund to pay or reimburse the Fund for any State or Federal taxes or any other fees, costs or expenses, all such amounts being the sole responsibility of the Fund and the Claims Administrator.

39.     Neither the City, the Disbursing Agent, nor any of their respective agents, attorneys or employees shall have any liability, responsibility, duty or obligation of any kind, whether for the filing of any tax returns, payment of any taxes or otherwise, under this Motion or the proposed orders, or for the truth,

36838108.14/022765.00213

accuracy or allocation of the distributions of the Fund, or the actions or inactions of the Claims Administrator or other Professionals. The DPOA shall, and hereby does, indemnify and hold the City, the Disbursing Agent, and their respective agents, attorneys and employees harmless from and of any claim made against the City brought about due to an act or omission of any Professional or the DPOA for which any Professional or the DPOA is responsible under the terms of this Motion or the proposed orders or as a result of any representations made by any of them in Motion or the proposed orders. The proposed orders are entered into by the City exclusively for the administrative convenience of the DPOA in order to aid in the implementation of the Plan, pursuant to the Court's retained jurisdiction under Article VII of the Plan. The City makes no representations or warranties of any kind regarding the accuracy or completeness of the statements or legal analysis or effects set forth in this Motion or the proposed orders and undertakes no duty or obligation in this Motion or the proposed order that is not imposed on the City by the Plan or other Orders of this Court.

### E. Notice

40. The Motion is being served via ECF on all parties that are registered for ECF service in this bankruptcy case.

### RELIEF REQUESTED

36838108.14/022765.00213

WHEREFORE, the DPOA and the City jointly request that the Court enter an order in the form attached as **Exhibit 1,** which (a) authorizes and approves the settlement of proposed Allowed Claim 1862, by and between the DPOA and the City, (b) Allows the Allowed Claim 1862, (c) authorizes and approves the Supplemental Order and the proposed distribution process and procedures proposed by the DPOA in this Motion to facilitate the liquidation, administration and distribution of the proceeds of Allowed Claim 1862, and (d) grants other further and related relief to effectuate their settlement set forth in the proposed order.

Dated: February 3, 2021

Respectfully submitted by,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
By: /s/ *Marc N. Swanson*
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Phone - (313) 496-6420
Facsimile - (313) 496-8451
Email - swansonm@millercanfield.com
*Counsel for the City of Detroit, Michigan*

CITY OF DETROIT LAW DEPARTMENT

By: */s/ Charles N. Raimi*
Charles N. Raimi (P29746)
Mary Beth Cobb (P40080)

James Noseda (P52563)
Attorneys for the City of Detroit
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
Phone - (313) 224-4550
Email - raimic@detroitmi.gov

and

LAW OFFICE OF BARBARA A, PATEK, P.L.C.

By: /s/ Barbara A. Patek
Barbara A. Patek (P34666)
Co-Counsel for the Detroit Police Officers
Association
27 E. Flint St., Suite 2
Lake Orion, MI 48362
Telephone: (248) 814-9470
Facsimile: (248) 814-8231
E-mail: pateklaw@gmail.com

and

By: /s/ James Moore
James M. Moore, Esq. (P17929)
Gregory, Moore, Brooks & Clark, PC
28 West Adams, Suite 300
Detroit MI 48226-1613
313.964.5600
Fax: 313.964.2125
jim@unionlaw.net
Co-Counsel for the DETROIT POLICE
OFFICERS ASSOCIATION

# EXHIBIT LIST

| | |
|---|---|
| Exhibit 1 | Proposed Order |
| Exhibit 2 | Notice of Opportunity to Respond |
| Exhibit 3 | None |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | None |
| Exhibit 6-A | DPOA Wage Claimants (Filed Under Seal) |
| Exhibit 6-B | Supplemental Distribution Order |
| Exhibit 6-C | Biography of Homer W. McClarty |
| Exhibit 6-D | Services Agreement (Filed Under Seal) |
| Exhibit 6-E | Email Agreement with Claims Administrator |

36838108.14/022765.00213

## Exhibit 1 – Proposed Order

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

                                      Bankruptcy Case No. 13-53846

City of Detroit, Michigan,                        Honorable Thomas J. Tucker

                                        Chapter 9

           Debtor.

_____/

**ORDER AUTHORIZING AND APPROVING (A) SETTLEMENT OF CLAIM 1862, (B) DISTRIBUTION PROCEDURES FOR CLAIM 1862, AND (C) RELATED RELIEF**

Upon the Joint Motion of the City of Detroit and the Detroit Police Officer Association for the entry of an Order Authorizing and Approving (A) Settlement of Claim 1862, (B) Distribution Procedures for Claim 1862, and (C) Related Relief ("Motion");[1] the Court having reviewed the Motion, being otherwise apprised of the matter, and having found that due and proper notice has been given; and there being good and sufficient cause therefore;

IT IS ORDERED THAT:

1.      The Motion is granted to the extent set forth in this Order.

2.      Claim 1862 is Allowed in the reduced amount of $12,500,000.00 and shall be treated under the Plan as a Class 14 Other Unsecured Claim ("Allowed

_____

[1] Capitalized terms not otherwise defined in this Order shall have the meanings given to them in the Motion.

36850948.13/022765.00213

Claim 1862"). This liquidation and classification of Allowed Claim 1862 shall fully, finally and irrevocably resolve and settle the Wage Claim and Claim 1862 in its entirety. Allowed Claim 1862 shall not be reconsidered under Section 502(j) of the Bankruptcy Code, Fed. R. Bankr. P. 9024 or otherwise for any reason.

3. The City is authorized to make a single Distribution of B Notes and Related Income on account of Allowed Claim 1862 ("Wage Claim Proceeds") to the DPOA at the same time as the final distribution of B Notes is made by the City to the holders of Allowed Class 14 Claims under the Plan generally (exclusive of specific holders which may have received or may receive their final distributions of B Notes pursuant to prior or future orders of the Court). Furthermore, if there is one or more partial distributions of B Notes and Related Income to holders of Allowed Class 14 Claims generally, the City is authorized to hold the DPOA's share of such B Notes and Related Income for the benefit of DPOA, and to make a single distribution (including the amount of any partial distributions to the DPOA which were withheld from the partial distributions made to the holders of Allowed Class 14 Claims generally) at the time of the final distribution of B Notes under the Plan to holders of Allowed Class 14 Claims generally.

4. The form of the Supplemental Order (A) Authorizing the Establishment of Qualified Settlement Fund, (B) Appointing Fiduciary, (C) Approving Distribution

36850948.13/022765.00213

Procedures for Claim 1862 and (D) for Related Relief (the "<u>Supplemental Order</u>") attached to the Joint Motion as Exhibit 6B is authorized and approved.

5.      In order to facilitate the Distribution of the Wage Claim to the DPOA Wage Claimants and minimize the administrative costs associated with the Wage Claim, promptly upon receipt of notice from the City of the City's intent to make a final distribution to holders of Allowed Class 14 Claims, the DPOA shall submit the Supplemental Order to the Court for entry. The notice may be provided to the DPOA through their counsel via email to the following email addresses: Barbara A. Patek, pateklaw@gmail.com and James M. Moore, jim@unionlaw.com .

6.      The DPOA is authorized to distribute the Wage Claim Proceeds to the DPOA Wage Claimants on a *pro rata* basis as follows:

>    a.      Upon receipt of the notice that the City intends to make a final distribution of the B Notes and Related Income to the holders of Allowed Class 14 Claims generally, the DPOA will submit the Supplemental Order to the Court for entry;

>    b.      Upon entry of the Supplemental Order, the Professionals retained by the DPOA will take the steps necessary to open the following accounts: (i) an escrow account so that the B Notes required by Allowed Claim 1862 can be distributed to the Fund through a qualified broker/dealer for the purpose of marketing and selling the B Notes and (ii) a bank

36850948.13/022765.00213

account so that the Related Income and the net proceeds of the sale of the B Notes can be deposited for the purpose of distribution to the DPOA Wage Claimants.

c.    In addition, upon entry of the Supplemental Order, the Claims Administrator will notify each of the DPOA Wage Claimants identified on Exhibit 6A (filed under seal) by mail. The DPOA will also post notice of the distribution process, including copies of this Order and the Supplemental Order on its website, and the Claims Administrator will set up a toll-free number to which inquiries about the distribution process can be made.

d.    Each of the 1650 DPOA Wage Claimants will be entitled to receive a $1/1650^{th}$ share of the Net Proceeds, from which the Claims Administrator will deduct from each DPOA Wage Claimant's distribution and pay any necessary withholding taxes to the appropriate governmental entities. After deduction of any necessary taxes, the Claims Agent will make payment by check to each of the DPOA Wage Claimants of the net amount.

7.    The City shall not be liable or otherwise responsible for the accuracy of the identities or other pertinent information regarding the DPOA Wage Claimants, providing notice, the allocation or withholding of amounts of the Wage Claim Proceeds among the DPOA Wage Claimants, the identification, qualifications,

4

duties and responsibilities of the Professionals or other professionals retained by the DPOA, or anything else addressed in the DPOA's proposed distribution procedures set forth in the Motion, this Order or the Supplemental Order.

8. The Court approves the DPOA's acknowledgment and agreement that the City makes no representations or warranties of any kind, whether express or implied, regarding the value, marketability or otherwise in respect of Allowed Claim 1862, including the value, number or amount of B Notes which are to be Distributed in respect of Allowed Claim 1862 and sold on behalf of the DPOA and the DPOA Wage Claimants, the proceeds of the B Notes that are or are likely to be received on any sale or sales of the B Notes or that are distributed to the Fund, or the allocation, administration or distribution of those proceeds by the Claims Administrator among the DPOA Wage Claimants.

9. The City shall have no duty or obligation that is not expressly imposed on the City by the Plan or other orders of this Court. This Order is not intended to, and does not, modify or amend the Plan or the Confirmation Order in any respect.

10. The DPOA shall comply with all provisions in the Distribution Order, as modified by this Order and the Supplemental Order, including, without limitation, by providing the City with a properly completed and valid Brokerage Account Form and Tax Form no later than 14 days after the entry of the Supplemental Order at the address identified in the Distribution Order.

36850948.13/022765.00213

11.     The B Notes allocated to the DPOA shall be Distributed by the City (or the Disbursing Agent) to an account established by the Fund, which will be identified by the DPOA on the Brokerage Account Form.  The account shall be established by a DTC-capable brokerage firm capable of receiving the B Notes electronically and the account shall be titled in the name of the Fund.

12.     The DPOA shall require the Fund and its fiduciary to comply with orders of this Court pertaining to Distributions under the Plan relating to Allowed Claim 1862, including the Distribution Order.  The Distribution Order is modified with respect to the DPOA (a) to provide that the name of the creditor on the Brokerage Account Form and Tax Form will be the DPOA Bankruptcy Fund and (b) to defer the DPOA's obligation to complete the Brokerage Account Form and the Tax Form until the City notifies the DPOA of its intent to make a final distribution to the holders of Allowed Class 14 Claims, as further set forth in the Supplemental Order. The Brokerage Account Form and Tax Form shall be completed by the DPOA or any other person or entity expressly authorized by the DPOA to do so. All Distributions of B Notes and Related Income that would otherwise be distributed to the DPOA concerning Allowed Claim 1862 shall be Distributed in accordance with the Plan and the Distribution Order to the Fund (and not the DPOA).

13.     To satisfy section 468B of the Internal Revenue Code of 1986, and Treas. Reg. section 1.468B, and to facilitate subsequent distributions to the DPOA

36850948.13/022765.00213

Wage Claimants, the DPOA has retained the Claims Administrator to serve as a qualified claims administrator. As required by the terms of the Supplemental Order, McClarty, as trustee for the Fund, shall be charged with overseeing and directing the receipt and sale of the B Notes and any proceeds thereof, and the Claims Administrator shall be charged with other distributions within Fund to the DPOA and the DPOA Wage Claimants. The agreement between the DPOA and the Claims Administrator shall and does provide that the Claims Administrator will:

(a)     provide notice of this Order and the Supplemental Order to the DPOA Wage Claimants as set forth in paragraph 6c of this Order;

(b)     solely be responsible for calculation and satisfaction of all tax obligations concerning the B Notes, any proceeds thereof, including the Wage Claim Proceeds, and any other funds concerning Allowed Claim 1862, and the administration and satisfaction of employment and payroll taxes and any necessary State and Federal withholdings. Only the Claims Administrator (and not the City or any of its agents) will be responsible for the preparation, securing of necessary signatures, and filing of tax returns and other documents and information required by applicable law in respect of the Fund, which includes the specific returns described in Treas. Reg 1.468B-2; and

7

(c)     calculate the share of the settlement amount allocable to each DPOA Wage Claimant, including the amount necessary for any tax withholdings, and, after withholding or paying the tax amount, distribute net amounts to each DPOA Wage Claimant.

14.     The City shall have no responsibility, duty or liability for any actions or inactions of the Claims Administrator or McClarty in connection with their respective duties, responsibilities, obligations or otherwise. The Claims Administrator and McClarty have been selected and appointed solely by the DPOA, and without input of the City, to serve as the DPOA's agent (or independent contractor) to aid and assist the DPOA in facilitating the receipt and subsequent distribution of Distributions that the DPOA receives, or are otherwise Distributed under the Plan at the direction of DPOA or the Claim Administrator on account of Allowed Claim 1862, from the City (or Disbursing Agent) under the Plan.

15.     Taxes, expenses, and costs incurred in connection with or otherwise relating to the implementation of this Order or the Supplemental Order, including the establishment of the Fund, disbursements of amounts from the Fund, and selection and appointment of the Professionals, and any fees and expenses of tax counsel or accountants and mailing expenses relating to the filing or failure to file any tax returns, shall be paid only from the B Notes (or their proceeds) and funds being held in the Fund, respectively, as well as past and future income that might be

8

earned on those amounts. The Claims Administrator shall be obligated to withhold from distribution any funds necessary to pay such taxes, fees and expenses as well as any taxes that might be required to be withheld pursuant to law. The City shall have no liability, responsibility, duty or obligation of any kind for filing any such tax returns or withholding or paying any taxes associated with or relating to the Fund or any distribution or other payment by the Fund.  All administrative expenses, fees and costs, whether incurred by any of the Professionals, including without limitation, McClarty, HSI, Huntington, the Claims Administrator, Loop Capital, or any other professional retained by the DPOA shall be paid from the Fund and the City shall have no obligation to pay or reimburse any such administrative expenses, fees or costs.

16.     The City shall not be responsible or liable for any tax obligations associated with the issuance, distribution, investment, or liquidation of B Notes, any proceeds thereof, or any other funds distributed pursuant to the Plan, this Order, the Supplemental Order or otherwise.  The employer share of any applicable payroll taxes for the payment amounts allocated or made to the DPOA and its members shall be paid exclusively from those B Notes (or the proceeds thereof) or any other funds Distributed to the Fund on account of Allowed Claim 1862. The City shall have no obligation to "gross-up" the Distributions under the Plan to the Fund to pay or reimburse the Fund for any State or Federal taxes or any other fees, costs or

36850948.13/022765.00213

expenses, all such amounts being the sole responsibility of the Fund and the Claims Administrator.

17.     Neither the City, the Disbursing Agent, nor any of their respective agents, attorneys or employees shall have any liability, responsibility, duty or obligation of any kind, whether for the filing of any tax returns, payment of any taxes or otherwise, under this Order or the Supplemental Order, or for the truth, accuracy or allocation of the distributions of the Fund, or the actions or inactions of the Claims Administrator or the other Professionals. DPOA shall, and hereby does, indemnify and hold the City, the Disbursing Agent, and their respective agents, attorneys and employees harmless from and of any claim made against the City brought about due to an act or omission of any Professional or the DPOA or for which any Professional or the DPOA is responsible under the terms of this Order or the Supplemental Order or as a result of any representations made by any of them in this Order or the Supplemental Order.   This Order is entered into by the City exclusively for the administrative convenience of the DPOA in order to aid in the implementation of the Plan, pursuant to the Court's retained jurisdiction under Article VII of the Plan. The City makes no representations or warranties of any kind regarding the accuracy or completeness of the statements or legal analysis or effects set forth in this Order or the Supplemental Order, and shall have no duty or obligation in this Order or the

10

Supplemental Order that is not imposed on the City by the Plan or other Orders of this Court.

18.     The Order does not constitute an admission of wrongdoing by either the DPOA or the City.

19.     The DPOA on its behalf and on behalf its past, present, and future members, agents, legal representatives, attorneys, affiliates, predecessors, successors and assigns (collectively, the "Releasing Parties") shall, and hereby does, release and forever discharge the City and its past, present, and future agents, attorneys, employees, representatives, successors and assigns (collectively, the "Released Parties") from any and all claims (as such term is defined in the Bankruptcy Code), causes of action, counterclaims, liabilities, demands, obligations, setoffs, defenses, suits, debts, actions, or sums of money including attorneys' fees and costs, whether known or unknown, alleged or unalleged, vested or contingent, that the Releasing Parties might have against the Released Parties arising from or related to the acts or events alleged in Claim 1862.

20.     The City's claims agent is authorized to update the claims register in accordance with the terms of this Order.

21.     The Court retains jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

36850948.13/022765.00213

## <u>EXHIBIT 2 – NOTICE</u>

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

         Debtor.

_____/

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

**NOTICE OF OPPORTUNITY TO RESPOND TO JOINT MOTION OF THE DETROIT POLICE OFFICERS ASSOCIATION AND CITY OF DETROIT FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING (A) SETTLEMENT OF CLAIM 1862, (B) DISTRIBUTION PROCEDURES FOR CLAIM 1862, <u>AND (C) RELATED RELIEF</u>**

      The City of Detroit and the Detroit Police Officers Association have filed the

*Joint Motion of the Detroit Police Officers Association and City of Detroit for Entry*

*of an Order Authorizing and Approving (A) Settlement of Claim 1862, (B)*

*Distribution Procedures for Claim 1862, and (C) Related Relief* ("Motion").

      <u>**Your rights may be affected.**</u>  **You should read these papers carefully**

**and discuss them with your attorney.**

      If you do not want the Court to enter an Order granting the Motion, within 14

days, you or your attorney must:

36838108.14/022765.00213

1. File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above. You must also mail a copy to:

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the Motion and you will be served with a notice of the date, time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

36838108.14/022765.00213

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
        Marc N. Swanson (P71149)
        150 West Jefferson, Suite 2500
        Detroit, Michigan 48226
        Telephone: (313) 496-7591
        Facsimile: (313) 496-8451
        swansonm@millercanfield.com

Dated:  February 3, 2021

**Exhibit 3 - None**

36838108.14/022765.00213

**Exhibit 4 – Certificate of Service**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

|  |  |
|---|---|
| City of Detroit, Michigan, | Bankruptcy Case No. 13-53846 |
|  | Honorable Thomas J. Tucker |
|  | Chapter 9 |
| Debtor. | |

_____/

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 3, 2021, he filed the foregoing *Joint Motion of the Detroit Police Officers Association and City of Detroit for Entry of an Order Authorizing and Approving (A) Settlement of Claim 1862, (B) Distribution Procedures for Claim 1862, and (C) Related Relief* with the court, using the court's ECF system, which will provide notice of the filing to all registered participants in this matter.

By: /s/ Marc N. Swanson
        Marc N. Swanson (P71149)
        150 West Jefferson, Suite 2500
        Detroit, Michigan 48226
        Telephone: (313) 496-7591
        Facsimile: (313) 496-8451
        swansonm@millercanfield.com

Dated: February 3, 2021

# Exhibit 5 - None

36838108.14/022765.00213

## Exhibit 6-A - DPOA Wage Claimants (Filed Under Seal)

36838108.14/022765.00213

**<u>Exhibit 6-B - Supplemental Distribution Order</u>**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

           Debtor.

_____/

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

**SUPPLEMENTAL ORDER (A) AUTHORIZING THE ESTABLISHMENT OF QUALIFIED SETTLEMENT FUND, (B) APPOINTING FIDUCIARY AND APPROVING DISTRIBUTION PROCEDURES FOR CLAIM 1862 AND (C) FOR RELATED RELIEF**

This matter is before the Court pursuant to this Court's Order Authorizing and Approving (A) Settlement of Claim 1862, (B) Distribution Procedures for Claim 1862, and (C) Related Relief [Docket No. __] (the "Order Approving Settlement").[1] The DPOA has received notice of the City's intent to make the final distribution to the holders of Allowed Class 14 Claims under the Plan pursuant to the Order Approving Settlement and the Distribution Order [Docket No. 13173]. The Court finds good cause for the entry of this Order;

      IT IS ORDERED THAT:

_____

[1] Capitalized terms not otherwise defined in this Order shall have the meanings given to them in the Order Approving Settlement.

36838108.14/022765.00213

1.     The Court previously having found good cause for the establishment of a Qualified Settlement Fund for the purpose of receiving and distributing the proceeds of Allowed Claim 1862, the DPOA and/or its duly appointed trustee are authorized to establish the Fund for the benefit of the DPOA Wage Claimants.

2.     Homer W. McClarty ("McClarty") is appointed as trustee for the Fund for the benefit of the DPOA Wage Claimants. In his capacity as trustee, McClarty is authorized to direct the Fund to receive the B Notes and Related Income, to oversee and direct Loop Capital in the marketing and sale of the B Notes, to direct the payment of any administrative fees associated with the sale and marketing of the B Notes, and to direct the transfer of the Net Proceeds of the B Notes to the Huntington Bank account for the purpose of allowing the Claims Administrator to distribute those proceeds to the DPOA Wage Claimants. McClarty is further authorized to take any action approved by the DPOA to assist the Claims Administrator in the distribution of the proceeds of the Allowed Claim 1862 to the DPOA Wage Claimants, including the directing of the opening of any necessary bank or brokerage accounts. McClarty is authorized to complete and sign any documentation necessary to the completion of his duties as trustee.

3.     McClarty, as trustee for the Fund, is to complete the Brokerage Account Form and Tax Form so that it is received by the City at the address set forth in the

36838108.14/022765.00213

Distribution Order within 14 days after the entry of this Order as required by the Order Approving Settlement.

4. McClarty's obligations as trustee do not diminish, reduce or eliminate the contractual obligations of any of the other Professionals to the DPOA or the Fund, including but not limited to the obligations of Huntington, Loop Capital and Epic.

5. This Court retains jurisdiction to enforce the terms of this Order.

36838108.14/022765.00213

# Exhibit 6-C - Biography of Homer W. McClarty

36838108.14/022765.00213

MORGAN & McCLARTY, P.C.
Attorneys and Counselors
19785 West Twelve Mile Road #331
Southfield, MI 48076
{248} 352-7686
(248) 352-7734 {Fax}

Homer W. McClarty                                    June Elloie Morgan {1949-1989}
hwmcclarty@morganmcclarty.com

## HOMER W. McCLARTY

I received my B.A. from Sacred Heart Seminary in Detroit, Michigan, in 1967, with a major in Philosophy and a minor in English and Classical Languages. I attended the University of Michigan in Ann Arbor, Michigan, and received a Masters Degree in Social Work with an emphasis on administration. I then attended the University of Detroit Law School and received my J.D. in May, 1976. In November, 1976, I was admitted to the State Bar of Michigan. From 1976 through 1979, I engaged in the practice of law as assistant corporation counsel for the City of Detroit. I have been in private practice since 1980 with an emphasis on corporate and commercial transactions. I was appointed a Private Panel Trustee for Chapter 7 cases in May of 1990 for the United States Bankruptcy Court for the Eastern District of Michigan.

Over the past 30 years, I have served as a Chapter 7 and Chapter 11 Operating Trustee on a variety of matters.

Presently, I am a Chapter 7 Trustee over approximately 45 asset cases as well as approximately 1200 no asset cases annually.

# **Exhibit 6-D - Services Agreement (Filed Under Seal)**

36838108.14/022765.00213

**Exhibit 6-E - Email Agreement with Claims Administrator**

36838108.14/022765.00213

**Barbara A. Patek**

| | |
|---|---|
| From: | Mcpherson, Dawn <Dawn.Mcpherson@epiqglobal.com> |
| Sent: | Friday, January 29, 2021 5:16 PM |
| To: | Barbara A. Patek |
| Cc: | 'Jim Moore' |
| Subject: | RE: CITY OF DETROIT - CORRECTED |

Agreed our end.

I also double checked internally and we are good with the service agreement being filed under seal so that no one can see it.

**Dawn McPherson, Esq.**
Epiq | Director
Mobile: +1 206 779 0398
Email: dawn.mcpherson@epiqglobal.com

**People. Partnership. Performance.**
www.epiqglobal.com

*This electronic mail (including any attachments) may contain information that is privileged, confidential, and/or otherwise protected from disclosure to anyone other than its intended recipient(s). If you have received this message in error, please notify the sender immediately by reply email of the inadvertent transmission and then immediately delete the original message (including any attachments) in its entirety.*

---

**From:** Barbara A. Patek [mailto:pateklaw@gmail.com]
**Sent:** Friday, January 29, 2021 1:39 PM
**To:** Mcpherson, Dawn <Dawn.Mcpherson@epiqglobal.com>
**Cc:** 'Jim Moore' <Jim@unionlaw.net>
**Subject:** RE: CITY OF DETROIT - CORRECTED

**CAUTION:** This email originated from outside of Epiq. Do not click links or open attachments unless you recognize the sender and know the content is safe. Report phishing to the phish alert button or forward to phishing@epiqglobal.com.

Dawn - Please see attached, which adds the highlighted sentence to paragraph 13. This was just added by the City. Can you confirm Can you confirm that paragraph 13 is consistent with the terms of the agreement (also attached), i.e., that Epiq, as a qualified claims administrator, will undertake those tasks? Thanks so much, and thanks for your continued assistance.

Barb

> " 13. To satisfy section 468B of the Internal Revenue Code of 1986, and Treas. Reg. section 1.468B, and to facilitate subsequent distributions to the DPOA Wage Claimants, the DPOA has retained the Claims Administrator to serve as a qualified claims administrator. As

1

required by the terms of the Supplemental Order, McClarty, as trustee for the Fund, shall be charged with overseeing and directing the receipt and sale of the B Notes and any proceeds thereof, and the Claims Administrator shall be charged with other distributions within Fund to the DPOA and the DPOA Wage Claimants. The agreement between the DPOA and the Claims Administrator shall provide that the Claims Administrator will:

(a)     provide notice of this Order and the Supplemental Order to the DPOA Wage Claimants as set forth in paragraph 6c of this Order;

(b)     solely be responsible for calculation and satisfaction of all tax obligations concerning the B Notes, any proceeds thereof, including the Wage Claim Proceeds, and any other funds concerning Allowed Claim 1862, and the administration and satisfaction of employment and payroll taxes and any necessary State and Federal withholdings. Only the Claims Administrator (and not the City or any of its agents) will be responsible for the preparation, securing of necessary signatures, and filing of tax returns and other documents and information required by applicable law in respect of the Fund, which includes the specific returns described in Treas. Reg 1.468B-2; and

(c)     calculate the share of the settlement amount allocable to each DPOA Wage Claimant, including the amount necessary for any tax withholdings, and, after withholding or paying the tax amount, distribute net amounts to each DPOA Wage Claimant.