UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | No. 13-53846 |
| Debtor. | Hon. Thomas J. Tucker |
| _____/ | |

**INTERESTED PARTY RICHARD SNYDER'S MOTION FOR (A) AN EVIDENTIARY HEARING AND (B) AN ORDER HOLDING THE MICHIGAN DEPARTMENT OF ATTORNEY GENERAL IN CONTEMPT AND GRANTING RELATED RELIEF**

Interested Party former Michigan Governor Richard Snyder hereby moves for an evidentiary hearing and for an order holding the Michigan Department of Attorney General (the "Department") and its responsible personnel in civil contempt and granting related relief for violating this Court's orders mandating the confidentiality of documents and communications related to the mediations Chief U.S. District Judge (Ret.) Gerald E. Rosen ("Chief Judge Rosen") and his designees conducted. In support of this Motion,[1] Governor Snyder respectfully states as follows:

---

[1] In accordance with Local Bankruptcy Rule 9014-1(c), attached hereto as **Exhibit 1** is a proposed order, attached hereto as **Exhibit 2** is a completed Notice of Motion and Opportunity to Object, and attached hereto as **Exhibit 4** is a certificate of service showing service on those parties entitled to service under ECF Procedure 12(b).

## PRELIMINARY STATEMENT

1. As has been well publicized, Governor Snyder currently is the subject of a state criminal prosecution related to the Flint Water Crisis. In discovery in that case, the Department recently produced to Governor Snyder, and, on information and belief, other parties, several thousand documents that appear on their face to fall within the scope of this Court's orders requiring mediation confidentiality. Because the Department has produced only a small fraction of the millions of documents it says it plans to produce, future violations of this Court's orders are likely absent intervention by this Court.

2. Accordingly, Governor Snyder respectfully requests that this Court (a) hold an evidentiary hearing to determine how the Department's violations of this Court's orders requiring mediation confidentiality came about and (b) enter an order (i) holding the Department and its responsible personnel in contempt; (ii) imposing sanctions appropriate to coerce the Department's compliance with this Court's orders requiring mediation confidentiality, including, without limitation, awarding Governor Snyder his reasonable attorney fees incurred in bringing this Motion; and (iii) granting such other and further relief as may be just and proper.[2]

---

[2] Pursuant to Local Bankruptcy Rule 9014-1(h), on May 6, 2021, counsel for Governor Snyder sought to ascertain whether the Department concurs in the relief requested. Michigan Solicitor General Fadwa Hammoud did not respond.

## JURISDICTION

3. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) because it is a matter concerning the administration of the estate. This matter also is a core proceeding because it is a matter arising in a case under title 11; as a matter related to the enforcement of this Court's orders, it could arise only in this bankruptcy case. *See, e.g.*, *In re City of Detroit*, 614 B.R. 255, 262 (Bankr. E.D. Mich. 2020). This Court retained jurisdiction over matters of this nature under the City of Detroit's confirmed plan of adjustment. R.8045, Eighth Amended Plan of Adjustment at Art. VII.O (retaining jurisdiction to "enforce or clarify any orders previously entered by the Bankruptcy Court in the Chapter 9 case"); *see also* R.8272, Confirmation Order at 125–26.

## BACKGROUND

**The mediation orders requiring confidentiality**

4. This Court's use of mediation to resolve this historic bankruptcy case is well known. Shortly after the City of Detroit filed its bankruptcy petition in July 2013, this Court appointed Chief Judge Rosen to serve as chief judicial mediator in this case. R.322, 8/13/13 Order at 1. This Court's order (the "August 13, 2013, Mediation Order") allowed Chief Judge Rosen to designate additional mediators. *Id.* It also provided that "[a]ll proceedings, discussions, negotiation, and writings

incident to mediation shall be privileged and confidential, and shall not be disclosed, filed or placed in evidence." *Id.*

5. Over time, Chief Judge Rosen exercised his authority to designate additional mediators, and his team grew to include U.S. District Judge Victoria Roberts, then-U.S. Bankruptcy Judge Elizabeth Perris, then-senior U.S. District Judge Wiley Daniel, former U.S. Bankruptcy and U.S. District Judge David Coar, Attorney Eugene Driker, U.S. District Judge Sean Cox, and U.S. District Judge David Lawson. R.542, 8/20/13 Announcement at 2; R.8468, 11/26/14 Order at 1. As provided in the August 13, 2013, Mediation Order, this Court from time to time referred certain matters to mediation before Chief Judge Rosen or members of his mediation team. This Court's referral orders regularly reminded the parties of their obligations under the August 13, 2013, Mediation Order to guard the confidentiality of documents and communications produced during mediation. *E.g.*, R.8468, 11/26/14 Order at 1; R.10227, 10/13/15 Order at 2.

6. This Court also issued at least two specific orders addressing the confidentiality of materials and communications related to the mediation conducted by Judge Cox of issues related to the potential establishment of an authority to operate certain assets of the Detroit Water and Sewerage Department. In the first order, this Court reiterated the confidentiality terms in the August 13, 2013, Mediation Order, and allowed specific communications to be shared with

principals of certain parties participating in the mediation. R.9176, 2/6/15 Order at 1–2. This Court's second order authorized the parties to discuss the final terms of the agreements negotiated during the mediation but made clear that "discussions which occurred during the mediation of the agreements . . . and all drafts of such agreements and related documents, shall remain privileged and confidential and shall not be disclosed." R.9964, 6/11/15 Order at 2.

7. Representatives from the State of Michigan and the Department received notice, at a minimum, of the August 13, 2013, Mediation order, submitted to this Court's jurisdiction, and participated in mediation during this bankruptcy case. *E.g.*, R.116, Notice of Appearance at 1; R.117, Notice of Appearance at 1; R.178, Notice of Appearance at 1; R.527, 8/20/13 Notice at 1; R.738, 9/6/13 Notice at 2; R.1105, 10/7/13 Order to Appear at 2; R.1291, 10/21/13 Order to Appear at 2; R.6068, 7/16/14 Order to Appear at 1. Further, the Department appeared as counsel to the State of Michigan and the Michigan Attorney General in this bankruptcy case. *E.g.*, R.116, Notice of Appearance at 1; R.117, Notice of Appearance at 1; R.178, Notice of Appearance at 1.

**Governor Snyder's state criminal case**

8. On January 14, 2021, the Department unsealed indictments against Governor Snyder and eight other defendants related to the Flint Water Crisis.[3] The

---

[3] A copy of Governor Snyder's indictment is attached hereto as **Exhibit 6**.

Department's prosecution team is led by Michigan Solicitor General Fadwa Hammoud and Wayne County Prosecuting Attorney Kym Worthy. Shortly after announcing the charges, the Department's prosecution team advised counsel to Governor Snyder that they intend to produce approximately 6.5 terabytes of data (representing approximately 21 million documents) to Governor Snyder and the other defendants in the criminal cases.

9. Based on the large number of documents identified by the prosecution and fearing that the Department included privileged documents in its estimated totals, on January 20, 2021, counsel for Governor Snyder asked SG Hammoud whether the Department used a taint or "filter" team to identify and segregate privileged materials they seized during the course of the investigation from materials the prosecution could appropriately review and use. SG Hammoud advised that the Department did not use a taint team.

10. The Department is producing documents to Governor Snyder and the other state criminal defendants on a rolling basis. So far, the Department has produced approximately four million documents. The Department's productions to date have included tens of thousands of documents that appear to be protected by the attorney–client privilege, the attorney work product doctrine, executive privilege, and other protections. Many of them are marked as such in the subject lines of e-mail. Notably, it appears that the Department's productions to Governor

Snyder include not only attorney–client communications between Governor Snyder and his counsel but also communications between the other state criminal defendants and their counsel. This too was brought to the attention of SG Hammoud, Prosecutor Worthy, and their team again last month.

**The Department produces thousands of documents apparently covered by this Court's confidentiality orders**

11. The Department's productions also included thousands documents and communications that appear to be subject to the confidentiality mandate in this Court's mediation orders. For instance, thousands of documents contain the email address[4] of one or more of the mediators and may be subject to this Court's orders requiring confidentiality:

| Mediator | Number of Hits |
|---|---:|
| Judge Gerald Rosen | 2,959 |
| Judge Victoria Roberts | 598 |
| Judge Elizabeth Perris | 447 |
| Judge Wiley Daniel | 18 |
| Judge David Coar | 46 |

---

[4] To determine the numbers reported in the table below, Governor Snyder searched the full text of documents produced to date by the Department for the business email address used by each mediator. Among other things, this search would capture individual email messages from, to, or copying a mediator, as well as email message chains that include a message from, to, or copying a mediator, such as an email message from a lawyer to his client forwarding an email message from a mediator and providing legal advice regarding the mediator's email message. Governor Snyder is unsure whether this table captures all of the documents containing an email address of one or more of the mediators because of technical limitations associated with the Department's production methodology for certain productions.

| Mediator | Number of Hits |
|---|---:|
| Eugene Driker | 1,980 |
| Judge Sean Cox | 8,376 |

12. Although Governor Snyder has not substantively reviewed every document containing a mediator's email address to determine if they are subject to this Court's orders, the review to date shows that many of them are. Among other things, many of documents include communications among mediators and parties regarding the substantive issues being mediated.[5] On information and belief, the other state criminal defendants, including some parties who did not participate in any mediations related to this bankruptcy case, received the same set of documents.[6]

13. Notably, many of the documents explicitly state that they are privileged and confidential and subject to this Court's orders requiring confidentiality. The Department easily could have identified and segregated those documents using industry-standard privilege screening protocols and tools. The

---

[5] In keeping with this Court's mediation confidentiality orders, Governor Snyder is not attaching any presumptively confidential documents to this Motion. A sample of the documents is available for this Court's *in camera* review if requested.

[6] On May 6, 2021, having identified documents that are confidential under this Court's orders in the Department's production to Governor Snyder, counsel for Governor Snyder contacted the lead counsel for the other eight defendants being prosecuted by SG Hammoud and Prosecutor Worthy, informed them of the Department's breach of the Court's orders requiring mediation confidentiality, and requested that they neither review nor disseminate the material.

Department inexplicably opted not to do so here, despite numerous warnings about its failure to use a taint team and the need to protect privileged information. Instead, the Department appears to have dumped all of the data it collected on every state criminal defendant—flagrantly disregarding any privileges or confidentiality protections it was violating in the process, including this Court's orders requiring mediation confidentiality.

## ARGUMENT

14. "[C]ourts have long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an injunction or 'compensate the complainant for losses' stemming from the defendant's noncompliance with an injunction." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (quoting *United States v. United Mine Workers*, 330 U.S. 258, 303–04 (1947)). Pursuant to section 105(a) of the Bankruptcy Code and its inherent power as a court, this Court has authority to enter such orders in bankruptcy cases. *E.g.*, *id.*; *In re City of Detroit*, 614 B.R. 255, 264 (Bankr. E.D. Mich. 2020) ("Bankruptcy courts have civil contempt powers. Those powers 'flow from Bankruptcy Code § 105(a) and the inherent power of a court to enforce compliance with its lawful orders.'" (quoting *In re Walker*, 257 B.R. 493, 496 (Bankr. N.D. Ohio 2001))). To prevail on motion for a civil contempt order, the movant must establish three elements:

(1) the party violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts;

(2) the party did so with knowledge of the court's order; and

(3) there is no fair ground of doubt as to whether the order barred the party's conduct—i.e., no objectively reasonable basis for concluding that the party's conduct might be lawful.

*City of Detroit*, 614 B.R. at 265–66. The movant must prove the first two elements by clear and convincing evidence. *Id.* at 266. The nonmovant may avoid being held in contempt by proving that its compliance with the order at issue was impossible. *Id.*; *see also Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998).

15. Here, there is at a minimum sufficient cause to hold an evidentiary hearing to determine how the Department's violations of this Court's orders requiring mediation confidentiality—which are an injunction under a different name—came about. Indeed, the Department's production of documents and communications protected by those orders is prima facie cause for holding the Department in civil contempt:

    a. <u>Violation of Definite and Specific Order</u>. This Court's August 13, 2013, Mediation Order and its subsequent orders could not have been more definite and specific: "[a]ll proceedings, discussions, negotiation, and writings incident to mediation shall be privileged and confidential, and shall not be disclosed, filed or placed in evidence."

R.322, 8/13/13 Order at 1; *see also* R.9964, 6/11/15 Order at 2 ("[D]iscussions which occurred during the mediation of the agreements . . . and all drafts of such agreements and related documents, shall remain privileged and confidential and shall not be disclosed."). The Department violated that mandate by disclosing documents and communications incident to mediation in this bankruptcy case.

b. <u>The Party Did So with Knowledge of the Court's Order</u>. The Department participated in mediation subject to this Court's orders both directly and as counsel to other state entities and officials, so it undoubtedly was aware of this Court's orders requiring confidentiality. R.527, 8/20/13 Notice at 1; R.738, 9/6/13 Notice at 2; R.1105, 10/7/13 Order to Appear at 2; R.1291, 10/21/13 Order to Appear at 2. Indeed, media accounts regarding the mediation proceedings in this bankruptcy case referenced their confidential nature. *E.g.*, Chad Livengood, *Bankruptcy Judge Orders Mediation on Detroit Water Shutoffs*, Detroit News (Sept. 3, 2014), https://bit.ly/3eDNS5l.

c. <u>No Fair Ground of Doubt as to Whether the Order Barred the Party's Conduct</u>. Again, this Court's August 13, 2013, Mediation Order and

its subsequent orders were explicit: documents and communications related to the mediation "shall be privileged and confidential, and shall not be disclosed, filed or placed in evidence." R.322, 8/13/13 Order at 1; *see also* R.9964, 6/11/15 Order at 2 ("[D]iscussions which occurred during the mediation of the agreements . . . and all drafts of such agreements and related documents, shall remain privileged and confidential and shall not be disclosed.").

16. Accordingly, Governor Snyder respectfully requests that this Court set an evidentiary hearing and, following such hearing, enter an order holding the Department and its responsible personnel in contempt and imposing sanctions appropriate to coerce the Department's compliance with this Court's orders requiring mediation confidentiality, including, without limitation, awarding Governor Snyder his reasonable attorney fees incurred in bringing this Motion.

## CONCLUSION

For the foregoing reasons, Governor Snyder respectfully requests that this Court (a) hold an evidentiary hearing to determine how the Department's violations of the confidentiality orders came about and (b) enter an order (i) holding the Department and its responsible personnel in contempt; (ii) imposing sanctions appropriate to coerce the Department's compliance with this Court's orders requiring mediation confidentiality, including, without limitation, awarding

Governor Snyder his reasonable attorney fees incurred in bringing this Motion; and (iii) granting such other and further relief as may be just and proper.

Dated: May 12, 2021

*/s/ Stephen B. Grow*
Brian P. Lennon
Charles N. Ash
Stephen B. Grow (P39622)
WARNER NORCROSS + JUDD LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
616.752.2000
blennon@wnj.com
cash@wnj.com
sgrow@wnj.com

Attorneys for Interested Party Richard Snyder

21720740