# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In Re:

City of Detroit, Michigan

     Debtor.

_____/

Bankruptcy No. 13-53846
Honorable Judge Thomas J. Tucker
Chapter 9

## MOTION TO COMPEL CITY TO WAIVE B-NOTE AND BROKERAGE ACCOUNT REQUIREMENTS OF ORDER GRANTING THE CITY OF DETROIT'S MOTION TO IMPLEMENT DISTRIBUTIONS OF B NOTES TO HOLDERS OF ALLOWED CLASS 14 CLAIMS UNDER THE CITY'S CONFIRMED PLAN OF ADJUSTMENT (DOC # 13173 – ENTERED 11-13-19), AND/OR TO SET ASIDE THE REQUIREMENTS OF THE ORDER, AND TO COMPEL THE CITY TO MAKE DISTRIBUTIONS TO ATTORNEYS FOR CLASS 14 CLAIMANTS, INSTEAD

Class 14 Claimants, Jennifer Gilstrap, Frank Daviston, Shuntina Guest, and La-Sheryl Williams, who are represented by the Law Offices of Kelman & Fantich (hereinafter collectively referred along with Romano Law, PLLC as "Attorneys"), as well as Tammy Howard as personal representative of the Estate of Shelton Bell, Gregory Brazel a/k/a Gregory Brazell, Curtis Morris, Velma Denson, Michael McKay, Taesean Parnell, a minor by his next friend Corliss Thomas, and Raymond Thompson, Jr., represented by Romano Law, PLLC, who all have collectible settlements against the City of Detroit (hereinafter collectively referred to as the "Claimants"), hereby move to compel the City of Detroit (hereinafter referred to as the "City') to waive the B Note and brokerage account requirement set forth in the

1

Order Granting the City of Detroit's Motion to Implement Distributions of B Notes to Holders of Allowed Class 14 Claims Under the City's Confirmed Plan of Adjustment (Doc #13173 – Entered 11/13/19) (hereinafter referred to as the "Order"), and to compel the City to instead make distributions to the Attorneys, for the reasons set forth herein.

1.     On May 11, 2021, debtors counsel sent Claimants, via Attorneys, correspondence entitled Final Notice Account Form and W-9 Form, and Notice Regarding Distributions to Class 14 Claimants (the "Notice"). (*See Notice* - **Exhibit "1".**)

2.     In the Notice, counsel for Debtor, Marc Swanson, indicated that the City was preparing to make initial distributions and that **Claimants will not receive a distribution unless they comply with a certain Notice Regarding Distributions to Class 14 Claimants.**

3.     In the Notice, Mr. Swanson indicated that:

> **If a Class 14 Claimant fails to return a properly completed and valid Tax Form and Brokerage Account Form** to KCC at the address set forth on the Notice on or before 180 days after the date on which the Brokerage Account Form and the Tax Form are served (a) **all Distributions of Related Income now owing or which may hereafter come due to such Class 14 Claimant will irrevocably revert to the City <u>and any Claim in respect of such Distribution or Distributions will be released and forever barred</u> from assertion against the City and its property;** (b) the City is authorized and directed to cancel any B notes held for distribution to a Class 14 Claimant, and those B Notes will be of no further force or effect and (c) the proof of

2

claim(s) filed by such Class 14 Claimant will be disallowed and expunged. (see Exhibit "A p. 6)

4.    Mr. Swanson also cavalierly states in his letter, as follows:

> **Please do not submit responses other than properly completed forms as any other response will not preserve your claim. _Numerous other claimants_ have complied with the Distribution Order without the extensions that have been afforded to you; the City will not entertain objections at this late date that you are unable to open a brokerage account, whether due to COVID-19 or any other Reason.** (See Exhibit "A" – P. 7 – emphasis added).

5.    Mr. Swanson has overlooked a key point in his letter, i.e. that Attorneys have spent the last year attempting to set up brokerage accounts for Claimants.

6.    However, the efforts of Attorneys to set up the brokerage accounts demanded by the City have been met with several issues:

a.    Counsel for Claimants called all named brokerages on the list. **A majority of them did not even know that they were on this list and further stated they could not, or were not interested in providing the requested account1;**

b.    Some of the brokerages would assist, however **_they required significant fees, and would not allow the Claimants to maintain a zero balance._** Given that the Claimants do not have substantial means at this time, they would be expected to furnish a brokerage account with the required minimum balance, and routinely pay fees **_indefinitely._**

c.    Attorneys attempted to set up a brokerage account in their own names, on behalf of Claimants, but these efforts were rejected by the brokerage firms.

---

1 Claimants have attempted to work with Fidelity, Huntington, Comerica, TCF, Chemical Bank, JP Morgan Chase, PNC, and Flagstar banks.

3

7.    Remarkably, Mr. Swanson has given Claimants until *May 25, 2021* to get these brokerage accounts set up, **despite it being physically impossible to do.**

8.    Moreover, when Mr. Swanson was alerted to this issue **earlier in 2020, he would take *anywhere from weeks to four months to respond*,** yet now, at this late date, Mr. Swanson suddenly requires a level of urgency which he, himself, did not grant Attorneys, in responding (or failing to respond) to their communications last year seeking to resolve this issue.

9.    In fact, as discussed in the attached Brief, the Order at issue does not even require that the disbursements be made solely in B Notes, nor does it require that the City force the Claimants and/or their attorneys to set up brokerage accounts.

10.    Instead, the Order grants the City great leeway to waive these requirements, to ensure the primary purpose of the Order, which was not to set up brokerage accounts, but to ensure the Claimants received the money from the City.

11.    Finally, as discussed within the attached Brief, the Order grants the Court continuing jurisdiction to effectuate the primary purpose of the Order, which again, was not for the City to set up brokerage accounts, but to ensure the Claimants received the money they were owed from the City.

12.    It is evident that on behalf of his client, the City, Mr. Swanson is doing whatever he can to avoid complying with the Order and ensuring payment to Claimants, in violation of the Order.

4

13.  Mr. Swanson has also been informed that the City's decision to make payments to Claimants in B Notes via Brokerage Accounts in their names, would not only violate the attorney liens of Attorneys, and place the City on the hook for additional damages and attorney fees, but would also constitute *numerous ethical violations*, as more fully discussed in the attached Brief.

WHEREFORE, for the reasons stated above, and as more fully set forth in the Brief attached hereto, Claimants respectfully request that this Honorable Court grant their Motion, and enter an Order permitting an alternative method for disbursement of the funds at issue to the Attorneys, on behalf of the Claimants, ***which do not violate the attorney liens of the Attorneys nor violate the Michigan Rules of Professional Conduct.***

Respectfully submitted:          LAW OFFICES OF KELMAN & FANTICH

Dated: 5-24-21                    /s/ Adam J. Gantz
                                  BRIAN L. FANTICH (P60935)
                                  CARRA J. STOLLER (P64540)
                                  ADAM J. GANTZ (P58558)
                                  Attorneys for Plaintiff
                                  30903 Northwestern Highway, Suite 270
                                  Farmington Hills, MI 48334
                                  (248) 855-0100
                                  agantz@gantzassociates.com
                                  kelmanandassociates@yahoo.com

5

In Re:

City of Detroit, Michigan

     Debtor.

_____/

Bankruptcy No. 13-53846
Honorable Judge Thomas J. Tucker
Chapter 9

## BRIEF IN SUPPORT OF MOTION TO COMPEL CITY TO WAIVE B-NOTE AND BROKERAGE ACCOUNT REQUIREMENTS OF ORDER GRANTING THE CITY OF DETROIT'S MOTION TO IMPLEMENT DISTRIBUTIONS OF B NOTES TO HOLDERS OF ALLOWED CLASS 14 CLAIMS UNDER THE CITY'S CONFIRMED PLAN OF ADJUSTMENT (DOC # 13173 – ENTERED 11-13-19), AND/OR TO SET ASIDE THE REQUIREMENTS OF THE ORDER, AND TO COMPEL THE CITY TO MAKE DISTRIBUTIONS TO ATTORNEYS FOR CLASS 14 CLAIMANTS, INSTEAD

Claimants hereby submit the following Brief in support of their Motion seeking to compel the City to waive the B Note and brokerage account requirement set forth in the Order, and to compel the City to instead make distributions to the Attorneys, for the reasons set forth below.

## STATEMENT OF FACTS

Attorneys are the attorneys for the above-referenced Claimants, who are holders Class 14 claims against the City.

The City is and has been aware that Attorneys are the attorneys for the claimants, and have a lien on the proceeds of any payout from the City to the Claimants, as evidenced by certain notices from the City, directed to the attorneys,

6

on behalf of the claimants (hereinafter referred to as the "Notices). (*See Notices* –
**Exhibit 1**.)

Notwithstanding that the City is aware that the Attorneys represent the
Claimants and possess attorney liens against the proceeds of any distribution by the
City to the Claimants, the City sent the above-referenced notices to the Attorneys,
essentially alerting the Attorneys that the City would not honor their attorney liens,
would not make any distributions to Attorneys on behalf of the Claimants, and would
instead send the Claimants' proceeds in the form of B Notes, to a brokerage account,
which could only be accessed by the Claimants, and not the Attorneys. (*See Notices*
- **Exhibit 1**.)

As discussed below, the Notices are not only improper, in that they violate the
attorney lien of the Attorneys, but they also contain material misrepresentations as
to the ability of the Claimants to open brokerage accounts, and the willingness of
certain entities to permit the Claimants to open brokerage accounts in the first place.
(*See Notices, at Exhibit D – Broker-Dealer Informational Resources* – **Exhibit 1**.)

Attorneys have contacted every single Broker-Dealer listed on the Broker-
Dealer Informational Resources list, and confirmed that a total of **none of them** will
permit Attorneys or Claimants to open a Brokerage account sufficient to allow the
City to make distributions of B Notes to Claimants.

7

In fact, the efforts of Attorneys to set up the brokerage accounts required by the City have been met with several issues:

    a. Counsel for Claimants called all named brokerages on the list. **A majority of them did not even know that they were on this list and further stated they could not, or were not interested in providing the requested account2;**

    b. Some of the brokerages would assist, however they incurred significant fees, and ***would not allow the Claimants to maintain a zero balance.*** Given that the Claimants do not have substantial means at this time, they would be expected to furnish a brokerage account with the required minimum balance, and routinely pay fees ***indefinitely.***

    c. Attorneys attempted to set up a brokerage account in their own names on behalf of Claimants, but these efforts were rejected by the brokerage firms.

Mr. Swanson has given Claimants until ***May 25, 2021*** to get these brokerage accounts set up, **despite it being physically impossible to do.** Moreover, when Mr. Swanson was alerted to this issue **earlier in 2020**, he would take *anywhere from weeks to four months to respond.*

Based on the above, it is evident that on behalf of his client, the City, Mr. Swanson is doing whatever he can to avoid payment to Claimants.

Finally, as set forth above, the City's plan to distribute proceeds directly to the Claimants in the form of B Notes to a brokerage account, which would only be

---

2 Claimants have attempted to work with Fidelity, Huntington, Comerica, TCF, Chemical Bank, JP Morgan Chase, PNC, and Flagstar banks.

8

accessible by the Claimants and not their Attorneys, would violate Attorneys' lien on the proceeds to be distributed by the City.

As such, on several occasions, including September 4, 2020, January 25, 2021 and May 19, 2021, Claimants attorneys communicated with City attorney, Marc N. Swanson, and advised him of the above-stated issues, and made clear to him that the distribution plan was not workable, and more importantly, that if the City were to insist on making the distributions in this fashion, it would be a violation not only of the Attorneys' liens, but of the Michigan Rules of Professional Conduct.

Notwithstanding that the Order at issue makes clear that the City is "authorized to waive or modify any requirement under this Order with respect to any Allowed Claimholder that the City in good faith believes is necessary or appropriate to effectuate the relief provided in this Order or the Plan", and further notwithstanding that the City is on notice that a deviation is required not only in order to ensure the distributions at issue are made, but further to make sure that any such distribution does not violate Attorneys' lien, and further notwithstanding that City's attorneys are well compensated, highly respected, and fully expected to follow the requirements of the law and Rules of Professional Conduct, City's attorney has failed and/or refused to waive the B Note/brokerage account requirements with respect to the Claimants at issue, thus prompting the filing of the instant Motion.

## STANDARD OF REVIEW

Local Rule 9014-1 governs the instant Motion, and requires that

> (a)     Motion Required. Unless permitted otherwise by applicable rule, a party seeking relief must file a motion. This rule also applies to a fee application under Local Rule 2016-1(a) or (b). For purposes of this rule, an objection to a claim of exemption will be deemed to be a motion.

> (b)     Deadline for Response. Except as otherwise ordered by the court or applicable rule, the deadline to respond to any motion is 14 days after service (21 days after service for matters covered by F.R.Bankr.P. 2002(a)).

## LAW AND ANALYSIS

**A.     THE CITY'S ATTEMPT TO MAKE DIRECT PAYMENT TO CLAIMANTS IN B NOTES, TO A BROKERAGE ACCOUNT ACCESSIBLE ONLY TO CLAIMANTS, WOULD CONSTITUTE A KNOWING THIRD PARTY VIOLATION OF A VALID ATTORNEY LIEN.**

Pursuant to MCL 500.3148(1), an attorney:

> is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

*See also Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431; 814

NW2d 670, 677 (2012).

Moreover, **any recovery of overdue personal protection benefits payable**

**under an automobile no-fault insurance policy which is secured through the**

10

**efforts of an attorney is a judgment or fund against which a lien by the attorney for his fee can attach.** *Miller v DAIIE*, 139 Mich App 565, 572; 362 NW2d 837 (1984).

**An attorney's lien is enforceable against a third party where the third party has actual notice of the lien** or "where circumstances known to the third party are such that the third party ought to have inquired as to the claim of the attorney." *Miller*, *supra*; see also *Nichols v Waters*, 201 Mich 27, 34; 167 NW 1 (1918). ("contracts with attorneys for contingent fees with a lien on the amount recovered either by settlement or judgment are valid, and **after proper notice thereof the opposing party is held obligated to recognize the same at his peril**")

As set forth within the Statement of Facts above, the City and its attorneys are fully aware that Attorneys hold a lien on the proceeds of any settlement between the City and the Claimants.

Our courts have determined that either correspondence from an attorney, or the filing and service of a lawsuit by an attorney on behalf of a claimant, each constitute notice sufficient to protect a lien interest, as follows:

> **The trial court here found that, because the letter of March 12 and the complaint both informed defendant that plaintiff was represented by attorneys, defendant had sufficient notice of the attorney's lien.**

> To support the trial court's findings, the intervening plaintiffs point to two Michigan cases, *Grand Rapids & I R Co v Cheboygan Circuit Judge*, supra, and *Lehman v Detroit, G H & M R Co*, 180 Mich 362;

11

147 NW 628 (1914). In the former case, the attorney expressly informed the defendant that he had a lien on any judgment or settlement. The Court found that such notice was sufficient, even though the details of the attorney's special agreement with his client were not revealed. 161 Mich 189-190.

*Miller v DAIIE*, 139 Mich App 565, at 569-570, 572; 362 NW2d 837 (1984).

Based on the foregoing, the City is on notice of Attorneys' lien on the proceeds of any distribution by the City to the Claimants, yet the City seeks to contravene and violate Attorneys' liens, by making payment to the Claimants, directly, in the form of B Notes to a brokerage account which Attorneys do not have access to and cannot set up.

The City should therefore be compelled to comply with the provisions of Paragraph 7 of the Order at issue, or the Order should be set aside with respect to the payments required to be made to Claimants, such that the liens of the Attorneys are not violated.

**B.  THE ORDER AUTHORIZES THE CITY TO WAIVE THE REQUIREMENT TO ISSUE PAYMENT IN B NOTES INTO A BROKERAGE ACCOUNT, <u>THE ORDER MAKES CLEAR THAT ITS PURPOSE IS TO ENSURE PROPER PAYMENT TO THE CLAIMANTS</u>, AND PURSUANT TO THE ORDER, THE COURT RETAINS JURISDICTION TO ENSURE THE PURPOSE OF THE ORDER IS ACCOMPLISHED. THE CITY SHOULD THEREFORE BE COMPELLED TO SET ASIDE THE B NOTE AND BROKERAGE ACCOUNT PROVISIONS OF THE ORDER, OR THOSE PROVISIONS SHOULD BE SET ASIDE BY THE COURT, AND THE CITY SHOULD BE COMPELLED TO MAKE PAYMENT IN THE FORM OF U.S. CURRENCY TO THE ATTORNEYS, ON BEHALF OF THE CLAIMANTS.**

12

Paragraph 7 of the Order states, in pertinent part, as follows:

> The City is authorized to take any other action necessary or appropriate to further implement the terms of this Order and to make the Distributions to the Allowed Claimholder under this Plan, including, without limitation…. The City is further authorized to waive or modify any requirement under this Order with respect to any Allowed Claimholder that the City in good faith believes is necessary or appropriate to effectuate the relief provided in this Order or the Plan.

Paragraph 8 of the Order states, in pertinent part, as follows:

> This Order is entered in furtherance of this Court's reserved jurisdiction to enter any orders that may be necessary or appropriate to implement or consummate the provisions of the Plan, and to ensure that Distributions to Holders of Allowed Class 14 Claims are accomplished pursuant to the provisions of the Plan….

Finally, Paragraph 10 of the Order states that "[t]his Court retains jurisdiction over the implementation and enforcement of this Order."

(*See Order* – Doc. #13173 – 11/13/19.)

Based on the foregoing, and for the reasons set forth above with respect to the the difficulties and hardships caused by the B note/brokerage account requirements of the Order on Claimants, the City should be compelled to comply with the waiver requirements of Paragraph 7 of the Order, or in the alternative, the Court should exercise its continuing jurisdiction as set forth in Paragraphs 8 and 10 of the Order, set aside the Order as it relates to the Claimants, and compel the City to make any/all

13

distributions on behalf of the Claimants to the Attorneys, in regular currency, as opposed to B Notes.

**C.    THE CITY SHOULD BE COMPELLED TO WAIVE THE B-NOTE/BROKERAGE ACCOUNT REQUIREMENTS, AS IT RELATES TO THE CLAIMANTS, AS SET FORTH IN PARAGRAPH 7 OF THE ORDER, OR SAID PROVISIONS OF THE ORDER SHOULD BE SET ASIDE WITH RESPECT TO THE CLAIMANTS, TO ENSURE THAT THE CITY DOES NOT VIOLATE THE MICHIGAN RULES OF PROFESSIONAL CONDUCT.**

Pursuant to MRPC Rule 1.15(b)), a lawyer shall:

> (1) promptly notify the client or third person when funds or property in which a client or third person has an interest is received;
>
> (2) preserve complete records of such account funds and other property for a period of five years after termination of the representation; and
>
> (3) promptly pay or deliver any funds or other property that the client or third.

The State Bar of Michigan has issued written opinions regarding this rule, including as follows:

> MRPC 1.15(d) requires that "[a]ll client or third person funds" be deposited into an IOLTA or non-IOLTA account. "Client or third person funds" include unearned legal fees and unincurred expenses that have been paid in advance, funds in which a third person has an interest, and funds in which two or more persons (one of whom may be the lawyer) claim an undivided interest. When the funds received are unearned fees and unincurred costs or expenses, they must be held in trust until earned or expended. [...]

14

A lawyer is not permitted to commingle the lawyer's funds with client or third person funds. When funds are received from a client or third person in a "lump sum" that represents a combination of earned funds or incurred expenses along with unearned funds or unincurred expenses, the entire sum must be placed in trust and then any earned funds or incurred expenses must be promptly withdrawn.

Upon receipt of client or third person funds, lawyers are obligated to determine whether the funds should be deposited into an IOLTA or a non-IOLTA account.[3]

Here, the City, through its attorneys, seek to circumvent payment to Attorneys, and prevent Attorneys from placing the funds into Attorneys' IOLTA accounts, and instead the City seeks to make payment into brokerage accounts held not by Attorneys, but directly by the Claimants. (*See Notices* – **Exhibit 1**.)

Clearly, the City's actions would violate MRPC 1.15, and the Court should either compel the City to comply with the waiver provisions of Paragraph 7 of the Order, as set forth in Section B above, or the Court or in the alternative, the Court should exercise its continuing jurisdiction, as set forth in Paragraphs 8 and 10 of the Order, set aside the Order as it relates to the Claimants, and compel the City to make any/all distributions on behalf of the Claimants to the Attorneys, in regular currency, as opposed to B Notes.

---

3 See https://www.michbar.org/opinions/ethics/numbered_opinions/r-021; See Also **MRPC 1.2; 1.5(a); 1.8(e); 1.15(a), (b), (c), (d), (e), (g), (h) and (j); 1.15A(a); 1.16(d);** R-7; RI-10; RI-69; RI-92; RI-93; RI-107; RI-189; RI-330; *Grievance Administrator v. Cooper*, **482 Mich 1079; 757 NW2d 867 (2008)** rev'g *Grievance Administrator v. Cooper*, **Case No. 06-36-GA (Sep 17, 2007).**

15

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Honorable Court compel the City to waive the B Note/Brokerage account requirements of the Order, as set forth in Paragraph 7 of the Order, or otherwise that the Court set aside the B Note/Brokerage account requirements of the Order as it relates to the Claimants, and compel the City to make any/all disbursements to Attorneys in U.S. currency, so as to avoid any violations of the above-referenced provisions of the Michigan Rules of Professional Conduct, by the City and its attorneys.

Respectfully submitted:         LAW OFFICES OF KELMAN & FANTICH

Dated: 5-24-21           /s/ Adam J. Gantz
                             BRIAN L. FANTICH (P60935)
                             CARRA J. STOLLER (P64540)
                             ADAM J. GANTZ (P58558)
                             Attorneys for Plaintiff
                             30903 Northwestern Hwy., Ste. 270
                             Farmington Hills, MI 48334
                             (248) 855-0100
                             agantz@gantzassociates.com
                             kelmanandassociates@yahoo.com

## PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause via the Court's e-file system to the attorneys of record for the City, on 5-24-21. I declare under penalty of perjury that the statement above is true to the best of my knowledge, information and belief.

                             /s/ Trish M. DeVellis
                             Trish M. DeVellis – Legal Assistant

16

# EXHIBIT "1"

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                          Chapter 9

City of Detroit, Michigan,                      Case No. 13-53846

       Debtor.                          Hon. Thomas J. Tucker

_____/

### CERTIFICATE OF SERVICE

I, Lydia Do, certify and say that I am employed by Kurtzman Carson Consultants LLC (KCC), the claims and noticing agent for the Debtor in the above-captioned case.

On May 11, 2021, at my direction and under my supervision, employees of KCC caused to be served the following documents via First Class Mail on the service list attached hereto as **Exhibit A**:

- **Letter re Final Notice Account Form and W-9 Form [attached hereto as Exhibit B]**

- **Notice Regarding Distributions to Class 14 Claimants** (includes the Brokerage Account Form, the Tax Form, the Set Up Your Brokerage Account Form) [attached as Exhibit 6-1 to Docket No. 13126]

- **Return Envelope**

Dated:  May 18, 2021

/s/ Lydia Do
Lydia Do
KCC
222 N. Pacific Coast Highway,
Suite 300
El Segundo, CA 90245

# EXHIBIT A

| CreditorName | CreditorNoticeName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Abraham Greer and Sandra Greer | c/o Atty the Rubinstein Law Firm | Jan Jeffrey Rubinstein (P57937) | 30150 Telegraph Rd., Ste 444 | Bingham Farms | MI | 48025 |
| Bell, Shelton (estate Of) Plr, Tammy Howard | Romano, Daniel G. | Romano Law PLLC | 23880 Woodward Ave | Pleasant Ridge | MI | 48069 |
| Bell, Shelton Jr, Est. Of Bhpr Tammy Howard | Romano, Daniel G. | Romano Law PLLC | 23880 Woodward Ave | Pleasant Ridge | MI | 48069 |
| Brazeil, Gregory | | 25657 Southfield Rd | | Southfield | MI | 48075 |
| Brazeil, Gregory | Romano, Daniel G | Romano Law PLLC | 23880 Woodward | Pleasant Ridge | MI | 48069 |
| Curtis Morris | Romano Law, PLLC | 23880 Woodward Ave | | Pleasant Ridge | MI | 48069 |
| Daviston, Frank | Bachteal, Robert | Law Offices of Kelman & Fantich | 30833 Northwestern Hwy Ste 206 | Farmington Hills | MI | 48334 |
| Daviston, Frank | Fantich, Brian L. | Law Office of Kelman & Fantich | 30833 Northwestern Hwy Ste 206 | Farmington Hills | MI | 48334 |
| Daviston, Frank | Law office of Kelman & Fantich | 30903 Northwestern Hwy Ste 270 | | Farmington Hills | MI | 48334 |
| Denson, Velma | Romano, Daniel G. | Romano Law PLLC | 23880 Woodward Ave | Pleasant Ridge | MI | 48069 |
| Denson, Velma | | 326555 Evergreen Rd. | Suite 1500 | Southfield | MI | 48076 |
| Dilstrap, Jenniger | Law Offices of Kelman & Fantich | 30903 Northwestern Hwy Ste 270 | | Farmington Hills | MI | 48334 |
| Guest, Shuntina | Bachteal, Robert | Law Offices of Kelman & Fantich | 30833 Northwestern Hwy Ste 206 | Farmington Hills | MI | 48334 |
| Guest, Shuntina | Fantich, Brian L. | Law Office of Kelman & Fantich | 30833 Northwestern Hwy Ste 206 | Farmington Hills | MI | 48334 |
| Guest, Shuntina | Guest, Shuntina / Law Office of Kelman & Fantich | 30903 Northwestern Hwy Ste 270 | | Farmington Hills | MI | 48334 |
| Law Offices of Kelman & Fantich | | 30903 Northwestern Hwy #270 | | Farmington Hills | MI | 48334 |
| McKay, Michael | Romano, Daniel G. | Romano Law PLLC | 23880 Woodward Ave | Pleasant Ridge | MI | 48069 |
| Parnell, Taessean a minor by his next friend Corliss Thomas | Romano Law, PLLC | 23880 Woodward Ave | | Pleasant Ridge | MI | 48069 |
| Raymond Thompson | Daniel Romano | Romano Law PLLC | 23880 Woodward Ave | Pleasant Ridge | MI | 48069 |
| Roman Law | | 23880-23880 Woodward Ave | | Pleasant Ridge | MI | 48069 |
| The Rubinstein Law Firm | | 30150 Telegraph Road, Suite 444 | | Bingham Farms | MI | 48025 |
| Thompson, Jr., Raymond | Romano, Daniel G. | Romano Law PLLC | 23880 Woodward Ave | Pleasant Ridge | MI | 48069 |
| Williams, La-sheryl | Bachteal, Robert | Law Offices of Kelman & Fantich | 30833 Northwestern Hwy Ste 206 | Farmington Hills | MI | 48334 |
| Williams, La-sheryl | Fantich, Brian L. | Law Offices of Kelman & Fantich | 30833 Northwestern Hwy Ste 206 | Farmington Hills | MI | 48334 |
| Williams, La-sheryl | | 30903 Northwestern Hwy, Ste 270 | | Farmington Hills | MI | 48334 |

# EXHIBIT B

Founded in 1852
by Sidney Davy Miller

# MILLER CANFIELD

MICHIGAN
ILLINOIS
NEW YORK
OHIO
WASHINGTON, D.C.
CANADA
CHINA
MEXICO
POLAND
QATAR

MARC N. SWANSON
TEL (313) 496-7591
FAX (313) 496-8451
E-MAIL swansonm@millercanfield.com

**Miller, Canfield, Paddock and Stone, P.L.C.**
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
TEL (313) 963-6420
FAX (313) 496-7500
www.millercanfield.com

May 11, 2021

Re: City of Detroit Bankruptcy – FINAL NOTICE Brokerage Account Form and W-9 Form

**PLEASE TAKE NOTICE that you have not returned properly completed Brokerage Account and/or W-9 Forms by the specified deadline. Under the terms of the Distribution Order, the City has no obligation to consider your claim further and may treat your claim as waived. Nonetheless, by this letter the City is providing you with a final opportunity to comply with the Distribution Order. Your properly completed forms must be actually received by KCC no later than May 25, 2021, or your claim will be expunged from the claims register and you will not receive distributions or further correspondence regarding your claim.**

Dear Claimant:

We represent the City of Detroit ("City") in bankruptcy case number 13-53846 in the Bankruptcy Court for the Eastern District of Michigan ("Court"). In September of 2019, the City filed its *Motion to Implement Distributions of B Notes to Holders of Allowed Class 14 Claims under the City's Confirmed Plan of Adjustment* ("Motion") with the Court, seeking Court permission to begin making distributions to creditors holding Class 14 claims under the City's confirmed bankruptcy plan. The Motion was approved by the Bankruptcy Court by order entered on November 13, 2019, at docket number 13173 in the City's bankruptcy case ("Distribution Order").

In the Motion, the City committed to providing all "Class 14 Claimants"[1] who will or may receive distributions under the plan with notice and instructions to complete and return (1) a Brokerage Account Form, and (2) W-9 Form. The Court ordered that these forms be returned by no later than June 24, 2020.

---

[1] This term is defined in the Motion and in the City's confirmed plan and generally refers to creditors in the City's bankruptcy case with claims against the City in excess of $25,000. For additional details, please refer to these documents which may be found on the City's bankruptcy website (http://www.kccllc.net/detroit), or consult with your counsel.

37602183.4/022765.00213
13-53846-tjt   Doc 13366   Filed 05/18/21   Entered 05/18/21 22:30:32   Page 5 of 7
13-53846-tjt   Doc 13372   Filed 05/24/21   Entered 05/24/21 15:33:32   Page 22 of 24

**You are receiving this letter because the City is preparing to make initial distributions. This is a final notice that you will not receive a distribution unless you take immediate action to comply with the Distribution Order.**

You have either failed to submit a Brokerage Account Form or W-9 Form, or one or both of these forms that you previously submitted were improperly filled out. Further, you were granted an extension to submit properly completed forms to comply with the Distribution Order, but as of the date of this letter, you have not done so. Your failure to return properly completed Brokerage Account and W-9 Forms means that you have not complied with the Distribution Order and, under its terms, have waived your right to receive Class 14 distributions under the plan.

Brokerage Account Form Requirements:

The Motion requires, among other things, that each claimant entitled to receive a distribution of B Notes must establish an individual brokerage account. As explained in the Motion, the B Notes were issued "in registered book entry" form through The Depository Trust Company ("DTC")." (*See* Motion at ¶ 14). Consequently, distributions of B Notes *must* be executed through a broker/dealer that maintains a relationship with the DTC. *Id.*

W-9 Form Requirements:

As stated in the Distribution Order, "the name of the creditor on the Brokerage Account Form and the name on the [W-9] Form must match the name of the creditor on the proof of claim form and the Distribution will be made in the name of the creditor on the proof of claim form." (*See* Distribution Order at ¶ 3). Only one name is permitted on the W-9 form.

A copy of the Motion was served on you and your attorney, either via email or via first-class mail as evidenced by the certificates of service filed with the Court on September 19 and September 27, 2019. Neither you nor your attorney objected to the Motion and the time allowed for challenging the Motion has passed, which led to the Court entering its Distribution Order.

Paragraph 6 of the Distribution Order states, in pertinent part:

> **If a Class 14 Claimant fails to return a properly completed and valid Tax Form and Brokerage Account Form** to KCC at the address set forth on the Notice on or before 180 days after the date on which the Brokerage Account Form and the Tax Form are served (a) **all Distributions of Related Income now owing or which may hereafter come due to such Class 14 Claimant will irrevocably revert to the City <u>and any Claim in respect of such Distribution or Distributions will be released and forever barred</u> from assertion against the City and its property**; (b) the City is authorized and directed to cancel any B Notes held for Distribution

37602183.4/022765.00213

13-53846-tjt    Doc 13366    Filed 05/18/21    Entered 05/18/21 22:30:32    Page 6 of 7
13-53846-tjt    Doc 13372    Filed 05/24/21    Entered 05/24/21 15:33:32    Page 23 of 24

to a Class 14 Claimant, and those B Notes will be of no further force or effect and (c) the proof of claim(s) filed by such Class 14 Claimant will be disallowed and expunged.

(*See* Distribution Order at ¶ 6) (emphasis added).

Please do not submit responses other than properly completed forms as any other response will not preserve your claim. Numerous other claimants have complied with the Distribution Order without the extensions that have been afforded to you; the City will not entertain objections at this late date that you are unable to open a brokerage account, whether due to COVID-19 or any other reason.

Please return a properly completed Brokerage Account Form and W-9 Form so that it is actually received by KCC by no later than **May 25, 2021**. You may use the prepaid, preaddressed envelope included with this Notice to return the forms. You may also mail them to KCC at the following address.

City of Detroit Claims Processing Center
c/o KCC
222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245

Please be advised that you should contact your own attorney or tax advisor if you have any questions.

Very truly yours,

Miller, Canfield, Paddock and Stone, P.L.C.

By: /s/ Marc N. Swanson _____
      Marc N. Swanson

MNS

37602183.4/022765.00213

13-53846-tjt   Doc 13366   Filed 05/18/21   Entered 05/18/21 22:30:32   Page 7 of 7
13-53846-tjt   Doc 13372   Filed 05/24/21   Entered 05/24/21 15:33:32   Page 24 of 24