UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                    Chapter 9

CITY OF DETROIT, MICHIGAN,                Case No. 13-53846

        Debtor.                           Hon. Thomas J. Tucker
_____/

**MICHIGAN DEPARTMENT OF ATTORNEY GENERAL'S
RESPONSE IN OPPOSITION TO
RICHARD SNYDER'S MOTION FOR (A) AN EVIDENTIARY
HEARING AND (B) AN ORDER HOLDING THE MICHIGAN
DEPARTMENT OF ATTORNEY GENERAL IN CONTEMPT
AND GRANTING RELATED RELIEF**

The Michigan Department of Attorney General (the "Department")

respectfully submits this response in opposition to *Richard Snyder's*

*Motion For (A) An Evidentiary Hearing And (B) An Order Holding The*

*Michigan Department Of Attorney General In Contempt And Granting*

*Related Relief* (Dkt. No. 13361, the "Motion") and states as follows:

## INTRODUCTION

1.     The Department takes its duty to protect privileged and

confidential materials very seriously.  From the beginning of the

Department's investigation and prosecution of crimes related to the

Flint water crisis, the Department has taken several steps to preserve privilege and to prevent the disclosure of confidential information. At the onset of the criminal investigation, the Department erected a conflict wall (the "Flint Conflict Wall") between attorneys representing state agencies in civil suits arising from the Flint water crisis (the "Flint Civil Team"), and attorneys investigating and prosecuting crimes stemming from the crisis (the "Flint Criminal Team"). In its investigation, the Flint Criminal Team has obtained tens of millions of pages of documents pertaining to the Flint water crisis. To protect any sensitive information contained in those documents, the Flint Criminal Team used computer-aided review to separate potentially privileged materials, notified defendants receiving productions of documents that the documents may contain privileged information and that such privilege is not waived, and most notably, the team has only produced documents subject to a protective order agreed to by all parties.

2.　Apparently, concerned that the protective order his lawyers helped negotiate did not go far enough, Mr. Snyder did not make any effort to strengthen the protection of privileged documents in the Flint criminal cases but instead came to this Court seeking to hold the

Department in contempt for producing to him documents that he alleges contain confidential mediation negotiations as part of this bankruptcy case.

3.    The Department respectfully submits that Mr. Snyder's contempt motion does nothing to further the goal of protecting privileged and confidential information in this case.  That is so, in part, because the Motion does not establish grounds for contempt.  First, Mr. Snyder is no longer governor and has no standing to bring the Motion or to appear on behalf of the State of Michigan. Second, the Motion lacks merit because the Department has taken all reasonable steps to protect privileged and confidential information, and its actions do not warrant contempt.  The Flint Criminal Team has an ethical and legal obligation to share certain information with the Flint defendants, but it has taken all reasonable steps to fulfill those obligations while still protecting sensitive information.  The Department remains committed to maintaining those protections moving forward.

4.    To that end, the Department attaches hereto, as Exhibit A, a proposed order amending the Court's current mediation order to acknowledge that the parties in the Flint criminal cases may have

privileged or confidential mediation documents from this case and to prohibit those parties from introducing into evidence or otherwise disclosing such documents without an order of this Court. The Department believes this belt-and-suspenders approach in conjunction with steps already taken in the criminal cases, will best protect sensitive mediation negotiations in this case and all privileged information generally.

5. Accordingly, the Department respectfully requests that the Court deny Mr. Snyder's Motion for sanctions and instead enter the attached order providing for the further protection of privileged mediation materials in the Flint criminal cases.

## BACKGROUND

6. Movant Richard Snyder is the former governor of Michigan, holding office from 2011 to 2018. (*Michigan's Governors, 1835 to Present*, STATE OF MICHIGAN, https://www.michigan.gov/formergovernors/0,4584,7-212--54132--,00.html (last visited May 20, 2021).) During his time in office, Mr. Snyder was involved in two events relevant to this Motion: (i) he appointed an emergency manager for the City of Detroit and authorized

that emergency manager to file the above-captioned bankruptcy case;
and (ii) he appointed several emergency managers for the City of Flint
who carried out the switch to the Flint River for the city's drinking
water—a decision that had disastrous consequences for the people of
Flint. (*See Final Report*, Flint Water Advisory Task Force,

https://www.michigan.gov/documents/snyder/FWATF_FINAL_REPORT
_21March2016_517805_7.pdf (last visited May 20, 2021).)

7.     Mr. Snyder is no longer governor. (*Id.*) In 2019, Gretchen
Whitmer became governor and continues to hold that office. (*Id.*)

8.     Also in 2019, Dana Nessel took office as attorney general of
Michigan. (*Department of Attorney General*, STATE OF MICHIGAN,
https://www.michigan.gov/ag/ (last visited May 20, 2021).)  Days after
taking office, Attorney General Nessel announced that Solicitor General
Fadwa Hammoud, along with Wayne County Prosecutor Kym L.
Worthy, would take control of the criminal investigation and
prosecution of crimes stemming from the Flint water crisis. (*New
Solicitor General Hammoud To Lead Flint Criminal Cases*, STATE OF
MICHIGAN, Jan. 15, 2019, https://www.michigan.gov/ag/0,4534,7-359-
92297_47203-487522--,00.html (last visited May 20, 2021).)

9.     Because other attorneys within the Department were representing state officials in civil cases arising from the Flint water crisis, the Department erected the Flint Conflict Wall to prohibit the exchange of information between the Flint Civil Team and the Flint Criminal Team. (*Flint Water Crisis*, STATE OF MICHIGAN, https://www.michigan.gov/ag/0,4534,7-359-82917_97602---,00.html (last visited May 20, 2021).)  To ensure that the Flint Conflict Wall completely segregated information among both teams, the Department placed *all* "Department of Attorney General Staff hired before December 30, 2018" on the Flint Civil Team. (*See Fifth Amended Notice of Conflict Wall*, attached hereto as Exhibit B.)[1]

10.    On January 8, 2021, after a year of grand jury proceedings, the Flint Criminal Team obtained indictments against Mr. Snyder and eight other individuals for their roles in the Flint water crisis. Mr. Snyder's criminal case is pending in the 67th District Court as *People v. Snyder*, Case No. 21-G00046-SM, before the Honorable Judge William H. Crawford II.

---

[1] Exhibit B represents the current iteration of the Flint Conflict Wall. New staff members have been added to Flint Criminal Team, but the Flint Civil Team has remained unchanged since the wall's inception.

6

11. As part of its investigation, the Flint Criminal Team has obtained evidence from many sources, including the Flint Civil Team. On May 28, 2019, the Flint Criminal Team obtained a court-authorized search warrant to seize information contained on several computer servers hosted by third-party vendor KLDiscovery and used by the Flint Civil Team. (*See May 28, 2019 Search Warrant*, attached hereto as Exhibit C.) The warrant requested only information related to the Flint water crisis investigation. Specifically, the warrant sought, in relevant part:

> a. All original information, data, or files, whether electronic or paper, that were provided to the Service Provider, KLDiscovery, by any State of Michigan representative for potential inclusion in any KLDiscovery workspaces related to the Flint Water Crisis Investigation (FWCI).
>
> b. All unredacted State of Michigan (SOM) Data related to the Flint Water Crisis Investigation (FWCI) that is stored at premises owned, maintained, controlled, leased, rented, or operated by the Service Provider, KLDiscovery. The Service Provider, KLDiscovery is required to disclose the following information to Affiant.

(Ex. C at 1.)

12. The Flint Criminal Team executed the search warrant, seizing several million pages of documents electronically stored on the

7

computer servers.  Although Mr. Snyder has not identified any specific documents in his Motion, the Flint Criminal Team believes that any documents related to this bankruptcy case in the possession of the Flint Criminal Team were obtained pursuant to the May 28, 2019 search warrant.

13.    Given the tremendous volume of documents involved in the Flint investigation, the Flint Criminal Team has taken several steps to protect any sensitive information obtained in its investigation while still complying with its ethical obligations to disclose relevant information to Mr. Snyder and the other criminal defendants.  The team employed a computer-assisted review process to identify potentially privileged documents that have no relation to the Flint water crisis.  The Flint Criminal Team has also prefaced the production of documents to the criminal defendants with emails explaining that "[t]he productions may also contain documents subject to privilege," but that "[t]he productions of these documents does not waive any privilege." (*See, e.g.*, *April 9, 2021 email to M. Lane et al.*, attached hereto as <u>Exhibit D</u>.)

14.     *Second*, in consultation with the criminal defense attorneys, the Flint Criminal Team sought and obtained an agreed protective order that limits the parties' use of any confidential or other sensitive documents received in the course of the Flint criminal prosecutions. (*See March 31, 2021 Protective Order*, attached hereto as <u>Exhibit E</u>.) The Criminal Team solicited input from the criminal defense attorneys regarding the contents of the protective order, and their changes were incorporated.

15.     On May 12, 2021, Mr. Snyder filed the present Motion for a contempt order, claiming that certain documents he received from the Flint Criminal Team in his criminal case were improperly produced because they are subject to this Court's prior mediation orders requiring confidentiality. (Dkt. 13361 at 2.)  The orders cited in the Motion require that "discussions which occurred during the mediation of the agreements … and all drafts of such agreements and related documents, shall remain privileged and confidential and shall not be disclosed." (Motion at 11.)  Mr. Snyder seeks an evidentiary hearing to determine whether the Department should be held in contempt and seeks sanctions in the form of the cost of bringing his Motion. (*Id.*)

16.     The Department believes that any mediation documents in possession of the parties to the Flint water criminal cases remain privileged, confidential, and protected under the steps already taken in the case. But out of an abundance of caution, the Department proposes entry of the order attached hereto as Exhibit A to ensure that such documents remain protected and under the control of this Court.

## ARGUMENT

17.     Mr. Snyder's Motion should be denied because he does not have standing, and even if he did, his Motion fails on the merits because he has not put forth a *prima facie* case to sanction the Department or hold it in contempt.  Instead, the Department respectfully requests entry of an order modifying the current mediation order to acknowledge that the parties in the Flint criminal cases have received confidential mediation materials and are prohibited from disclosing them without further order of this Court.

## I.     The contempt motion should be denied.

### A.  Mr. Snyder Lacks Standing.

18.     "As this Court has held several times, a party who files a motion seeking relief in a bankruptcy case, or who objects to another

party's motion for relief, must have a pecuniary interest in the outcome of the motion, in order to have standing." *In re TAJ Graphics Enters., LLC*, 592 B.R. 668, 670-71 (Bankr. E.D. Mich. 2018) (collecting cases); *accord Khan v. Regions Bank (In re Khan)*, 544 F. App'x 617, 619-20 (6th Cir. 2013). Where a party has no such pecuniary interest in the outcome of a proceedings, "[]he should not [be] allowed to clutter up the proceedings with h[is] pleadings." *In re S. State St. Bldg. Corp.*, 140 F.2d 363, 366-67 (7th Cir. 1943).

19.     This standard applies with equal force in chapter 9 proceedings. Indeed, section 1109 of the Bankruptcy Code (which defines standing in chapter 11 cases) applies in chapter 9 cases. 11 U.S.C. §901(a). Accordingly, just as in a chapter 11 case, for a party to have standing in a chapter 9 case, he must be an entity with "a direct legal interest at issue in the case, rather than an entity that is merely interested in its outcome." *In re Bridgeport*, 128 B.R. 30, 31-32 (Bankr. D. Conn. 1991).

20.     *In re Saffold*, 373 B.R. 39 (Bankr. N.D. Ohio 2007), is instructive. There, a mortgage lender sought sanctions against the debtor for filing multiple bankruptcy petitions that the lender alleged to

be improper. The lender previously held a note on the debtor's home and had obtained a money judgment and foreclosure against the debtor. But after it obtained the judgment, the lender assigned the debtor's note to a different party. After the assignment, the lender merged with another firm and ceased to exist. Nonetheless, the lender appeared in the debtor's case seeking sanctions against the debtor. The lender asserted that it had standing because it was the record holder of the judgment previously obtained against the debtor.

21. The court disagreed, denying the lender's sanctions motion because the lender could not meet the constitutional requirements for standing, let alone the narrower jurisprudential standing requirements in a bankruptcy case. *Saffold*, 373 B.R. at 46. The court noted that the lender no longer had any interest in the debtor's bankruptcy and therefore would not "be helped by a favorable decision by the court on the sanction motion." *Id.* at 45. Put simply, the lender could not be an interested party "asserting its own rights because it ha[d] none." *Id.*; *accord In re Emergency Room Mobile Servs., L.L.C.*, 529 B.R. 676, 693-94 (N.D. Tex. 2015) (affirming denial of a contempt motion because movant "lack[ed] standing to pursue a civil contempt order").

22.     So too here.  Mr. Snyder has declared himself an "interested party" in the title of his Motion (Motion at 1), but just saying it does not make it true.  Mr. Snyder has the burden of *proving* standing, *Saffold*, 373 B.R. at 43, but he does not even attempt to explain what pecuniary interest he has in the outcome of this Motion or in any part of Detroit's bankruptcy case.  He is not a creditor.  He is not a secured lender.  He is not even a tax-paying citizen of Detroit.  He is an interloper in this case and "should not [be] allowed to clutter up the proceedings with h[is] pleadings." *S. State St. Bldg. Corp.*, 140 F.2d at 366-67.[2]

23.     Of course, Mr. Snyder used to be the governor of Michigan, but that does not give him standing now to file the instant Motion. There is only one governor at a time, and that governor is Gretchen Whitmer.  A *former* governor does not have standing. *See Karcher v. May*, 484 U.S. 72, 77 (1987) (former legislators who previously had intervened in a lawsuit in their official capacities did not have standing to appeal because "they no longer h[e]ld those offices" and "[t]he

---

[2] Mr. Snyder cannot even meet the broader requirements for Article III standing because he has not shown (and cannot show) any "injury in fact" he suffered as a result of the conduct alleged in his Motion. *See Tenn. Republican Party (16-3360) v. SEC*, 863 F.3d 507, 517 (6th Cir. 2017).

authority to pursue the lawsuit on behalf of the legislature belong[ed] to those who succeeded [the former legislators] in office"); *Newman v. Graddick*, 740 F.2d 1513, 1517-18 (11th Cir. 1984) ("The successor state officials, upon taking office, became parties to this suit and to the consent decree through automatic substitution and stand in the shoes of their predecessors.").[3] Indeed, Rule 25 of the Federal Rules of Civil Procedure, which is applicable here,[4] explicitly provides that "[t]he officer's successor is automatically substituted as a party" when "a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending." FED. R. CIV. P. 25(d).

24.    Mr. Snyder therefore lacks standing and his Motion should be denied. *See Saffold*, 373 B.R. at 46 ("Leader Mortgage Co.'s motion for sanctions against the debtor is denied because Leader does not have

---

[3] *C.f. In re O.P.M. Leasing Servs., Inc.*, 21 B.R. 983, 986 (S.D.N.Y. 1981) ("It should be noted that Weissman's former position as an officer of O.P.M. does not create any inherent rights in this matter. In major bankruptcies, there are often hundreds of former officers of insolvent corporations, and there is no authority for the proposition that their former employment bestows any rights *per se* in the corporation's bankruptcy proceedings.").

[4] Bankruptcy Rule 7025 incorporates Rule 25 in adversary proceedings and Bankruptcy Rule 9014(c), in turn, incorporates Bankruptcy Rule 7025 in contested matters.

standing to raise that issue."); *accord Emergency Room Mobile Servs.*,
529 B.R. at 693-94.

## B. The motion is without merit.

25.     Even if Mr. Snyder did have standing to bring his Motion
(and he does not), the Motion still should be denied because it does not
make a *prima facie* case for sanctions or contempt.  A party seeking
contempt must establish "by clear and convincing evidence that '[the
party] violate(d) a definite and specific order of the court requiring him
to perform or refrain from performing a particular act or acts with
knowledge of the court's order.'" *In re Kalabat*, 592 B.R. 134, 141
(Bankr. E.D. Mich. 2018) (internal citation omitted).  The movant also
must show that "there is no fair ground of doubt as to whether the order
barred the party's conduct." *In re City of Detroit*, 614 B.R. 255, 265-66
(E.D. Mich. 2020).

26.     Here, the allegations in the Motion all stem from the conduct
of attorneys on the Flint Criminal Team, none of whom were parties to
the mediation in this bankruptcy case and therefore could not have
knowingly violated any of the Court's mediation orders. Further, the
Flint Criminal Team's conduct is not sanctionable because the team has

taken all reasonable steps to protect sensitive information while still fulfilling its ethical obligation to disclose relevant information to the criminal defendants in the Flint water prosecutions.

> **i.    The allegations in the motion are based on the conduct of attorneys on the Flint Criminal Team, none of whom were involved in the Detroit Bankruptcy.**

27.    As an initial matter, the Department notes that Mr. Snyder seeks to hold the *entire* Department in contempt, even though the allegations in the Motion focus *only* on the actions of the Flint Criminal Team.  As discussed above, the Flint Conflict Wall has effectively split the Department down the middle on all matters relating to the Flint water crisis.

28.    Screening mechanisms like the Flint Conflict Wall are not uncommon in government offices.  Frequently, the Department must represent multiple parties on different sides of a dispute. Michigan's Rules of Professional Conduct expressly note that lawyers in the Department of Attorney General and other prosecutorial offices "may be authorized to represent several government agencies in intragovernmental legal controversies in circumstances where a private lawyer could not represent multiple private clients," and may also "have

16

authority to represent the 'public interest' in circumstances where a private lawyer would not be authorized to do so." (*Michigan Rules of Professional Conduct*, Preamble.)  Courts have therefore recognized that the Department may be tasked with representing parties adverse to each other and must "set up a conflict wall and appoint assistant attorneys general to argue both sides of the dispute." *League of Women Voters of Mich. V. Sec'y of State*, 331 Mich. App. 156, 202 n.1 (2020) (Boonstra, J., concurring in part and dissenting in part).  Just last week, the Michigan Supreme Court sought supplemental briefing in a matter and "respectfully request[ed] the Attorney General to submit separate briefs arguing both sides of the above questions." *In re Indep. Citizens Redistricting Comm'n For State Legislative & Cong. Dist.'s Duty To Redraw Dists. By Nov. 1, 2021*, S.C. No. 162891, Order, May 20, 2021.

29.    Here, Mr. Snyder alleges that the document productions by the Flint Criminal Team violated mediation orders entered by this Court in 2013 and 2015. (Motion at 11-12.)  But, as explained above, the Flint Criminal Team consists entirely of staff hired into the Department *after* December 30, 2018. (*See* Ex. B.)  Thus, no one involved in the

17

production of documents to the Flint criminal defendants worked for the Department in 2013 or 2015, had any involvement in mediation in this case, or could have discussed with members of the Flint Civil Team the contents of any documents from this case obtained pursuant to a search warrant in the Flint investigation. In short, no attorney on the Flint Criminal Team could have knowingly violated a mediation order entered by this Court because they were not a party to the mediation and could not discuss with other attorneys any mediation documents obtained through a search warrant without violating the Flint Conflict Wall.

30.    To the extent members of the Flint Civil Team were involved in mediation in this case, they too have not violated the Court's orders because they have no knowledge or control over the Flint Criminal Team's use or production of documents. The documents were seized from the Flint Civil Team pursuant to a search warrant and therefore the Flint Civil Team did nothing to compromise the privileged nature of the documents. *See Fossyl v. Watson*, No. 1:02cv722, 2006 U.S. Dist. LEXIS 98406, at *7-8 (S.D. Ohio Sep. 5, 2006) (party acted reasonably where it was "compelled to disclose the privileged documents" and did

so "involuntarily" when "faced with a Grand Jury subpoena"); *accord*

*Leibel v. GMC*, 250 Mich. App. 229, 241 (2002) (without an intentional,

voluntary act to break privilege, attorney-client privilege remains

protected).

31.    Thus, there has been no knowing violation of the Court's

mediation orders because the Flint Criminal Team was not a party to

the Detroit bankruptcy mediations and the Flint Civil Team has no

involvement in the conduct at issue in the Motion.

   **ii.    Mr. Snyder has not shown that there is "No Fair Ground Of Doubt" that the Department violated the mediation orders.**

32.    Finally, Mr. Snyder has not shown that there is "no fair

ground of doubt" that the Flint Criminal Team's conduct violated the

Court's mediation orders because the Department has taken all

reasonable steps to balance its ethical disclosure obligations with the

protection of sensitive information.  The Court's mediation orders cited

by Mr. Snyder require that certain documents "remain privileged and

confidential" and "not be disclosed." (Motion at 11.)

33.    Here, any privileged or confidential documents produced by

the Flint Criminal Team to the Flint defendants *remain* privileged and

confidential. *See Fossyl*, No. 1:02cv722, 2006 U.S. Dist. LEXIS 98406, at *7-8; *Leibel*, 250 Mich. App. at 241. Indeed, the Flint Criminal Team has asserted as much in notices preceding document productions to Mr. Snyder and the other Flint criminal defendants. (*See, e.g.,* Ex. E.)

34. Further, the Flint Criminal Team has not disclosed any confidential or privileged material except where it is obligated to do so and *only* pursuant to an agreed protective order that binds the receiving parties. "Under due process principles, the prosecution is obligated to disclose evidence that is both favorable to the defendant and material to the determination of guilt or punishment." *People v. Fink*, 456 Mich. 449, 454 (1998). Because reasonable minds may differ as to what evidence meets either of those criteria, prosecutors must err on the side of disclosure. *United States v. Agurs*, 427 U.S. 97, 108 (1976) (cautioning prosecutors to "resolve doubtful questions in favor of disclosure").

35. Prosecutors routinely must strike a balance between their competing obligations to produce evidence to defendants while also protecting sensitive information. *See Freed v. Grand Court Lifestyles, Inc.*, 100 F. Supp. 2d 610, 614-15 (S.D. Ohio 1998) (collecting cases in

which confidential information was properly produced as part of criminal prosecutions); *accord In re Grand Jury Proceedings*, 148 F.3d 487, 493 (5th Cir. 1998) (recognizing the prosecutor's obligation to use confidential mediation documents and noting that "any interest [the parties] have in the confidentiality of their mediation sessions will have to give way to the public interest in the administration of criminal justice") *Id.* at 493; *United States v. Edwards*, 83 F. Supp. 2d 723, 732 (M.D. La. 1999) (recognizing same and noting that "the public's interest in the administration of criminal justice outweighs the confidentiality of a mediation session if there is probable cause to believe a crime has been committed")

36. Here, the documents produced to the Flint criminal defendants are directly relevant to the Flint water prosecution. The Flint Criminal Team is prohibited from discussing the specifics of the cases against the defendants until the court unseals the grand jury transcripts. But it does not take any great leap of the imagination to surmise that negotiations regarding the provision and financing of drinking water in southeast Michigan could be related to a criminal

prosecution stemming from decisions made about Flint's drinking water supply.

37.    Nonetheless, the Flint Criminal Team has only produced documents to the defendants subject to a protective order and the other measures described above.  Accordingly, the Flint Criminal Team has only "disclosed" documents pursuant to its ethical and legal obligations and only pursuant to a protective order and other measures taken to protect sensitive information.  That is not the sort of disregard for a court order that merits sanctions, and Mr. Snyder's Motion should be denied.

## II.    The Court should amend its mediation order to explicitly protect documents produced in the Flint water criminal cases.

38.    The Department respectfully submits that a more effective method than a contempt order to protect privileged and confidential mediation documents in this case is to amend the Court's current mediation confidentiality order.  To that end, the Department has attached a proposed order as Exhibit A, which acknowledges that parties to the Flint criminal cases may be in possession of privileged mediation documents, binds those parties under the Court's mediation

22

confidentiality order, and prohibits the disclosure of those documents absent an order for this Court.

## CONCLUSION

**WHEREFORE**, the Department respectfully requests that the Court (i) deny the Motion; (ii) enter the proposed order attached hereto as Exhibit A; and (iii) grant such other relief as the Court deems just and proper.

DATED: May 26, 2021

Respectfully submitted,

*/s/ John D. VanDeventer*

John D. VanDeventer
MICHIGAN DEPARTMENT OF
ATTORNEY GENERAL
G. Mennen Williams Building
525 W. Ottawa Street
P.O. Box 30212
Lansing, MI 48909
(517) 335-7622
vandeventerj@michigan.gov

Fadwa A. Hammoud
MICHIGAN DEPARTMENT OF
ATTORNEY GENERAL
3030 W. Grand Boulevard
Cadillac Place, Suite 10-200
Detroit, MI 48202
(313) 456-3870
hammoudf1@michigan.gov

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                           Chapter 9

CITY OF DETROIT, MICHIGAN,                        Case No. 13-53846

      Debtor.                                Hon. Thomas J. Tucker
_____/

## CERTIFICATE OF SERVICE

I, John D. VanDeventer, certify that I caused a copy of the

foregoing *Response in Opposition to Richard Snyder's Motion for (A) an*

*evidentiary hearing and (B) an Order holding the Michigan Department*

*of Attorney General in contempt and granting related relief* to be served

upon all counsel of record via email through the Court's ECF

notification system on May 26, 2021.

*/s/ John D. VanDeventer*

MICHIGAN DEPARTMENT OF
ATTORNEY GENERAL
G. Mennen Williams Building
525 W. Ottawa Street
P.O. Box 30212
Lansing, MI 48909
(517) 335-7622
vandeventerj@michigan.gov

24