# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## THE CITY OF DETROIT'S RESPONSE TO
## CLASS 14 CLAIMANTS' MOTION FOR RELIEF FROM ORDER

The City of Detroit ("City") files this Response to the *Class 14 Claimants'*
*Motion for Relief From Order* ("Motion," Doc, No. 13377), filed by Class 14
Claimants Abraham Greer and Abraham Greer as Representative of the Estate of
Sandra Greer (collectively, the "Claimholder") who are represented by the
Rubinstein Law Firm ("Attorneys"), respectfully stating as follows:

## I.    INTRODUCTION

The Attorneys ask the Court to rewrite the City's Plan to make the City
distribute cash instead of New B Notes to the Claimholder[1] and then to divert this
cash from this Claimholder to the Attorneys.

The Motion suffers from numerous errors.  First, the Motion seeks relief from
the *Order Granting the City of Detroit's Motion to Implement Distributions of B*
*Notes to Holders of Allowed Class 14 Claims Under the City's Confirmed Plan of*

---

[1] Although the Motion does not directly reference making distributions in cash, the
proposed order submitted with the Motion would require all distributions to the
Claimholder to be made to the Attorneys instead and paid "in U.S. Currency."

- 1 -

*Adjustment* ("Brokerage Order," Doc. No. 13173) but does not discuss the requirements for such relief or demonstrate that the Attorneys meet them.

Second, the Attorneys incorrectly conclude that the requirement for a brokerage account stems from the Brokerage Order alone. It does not. That provision comes from the Plan,[2] which requires the City to distribute New B Notes[3] to Holders of Allowed Class 14 Claims. Thus, even if the Attorneys could show that they were entitled to relief from any of the terms of the Brokerage Order (they are not), it would not yield the results the Attorneys seek.

Finally, the Plan provides that the Claimholder (and not the Attorneys) will receive New B Notes. The Claimholder is not entitled to any relief from the Plan, which was confirmed over six years ago, substantially consummated, and upheld on appeal. *Ochadleus v. City of Detroit (In re City of Detroit, Mich.)*, 838 F.3d 792 (6th Cir. 2016). Nor can the Court order the City to distribute cash instead of distributing New B Notes to the Claimholder. Bankruptcy Code section 904 prevents this Court from issuing such an order to the City unless (a) the relief is required by the City's Plan (it is not) or (b) the City consents (it does not). In addition, it is illogical to

---

[2] *Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (October 22, 2014)* ("Plan"), filed at Docket Number 8045 and confirmed as modified by order entered at Docket Number 8272.

[3] Capitalized terms not otherwise defined in this Response have the meanings ascribed to them in the Plan.

- 2 -

suggest that the form of the consideration, and its inherent value, can be altered or changed by alleged creditors more than six years after the Effective Date of the Plan.

The Motion should be denied.

## II.   BACKGROUND

### A.   The requirement to Distribute New B Notes to Class 14 Claimants

The treatment for Holders of Allowed Class 14 Claims is provided for in Article II, Section B.3.u of the Plan.

#### u.  Class 14 – Other Unsecured Claims.

#### i. Treatment.

> Unless such Holder agrees to a different treatment of such Claim, each Holder of an Allowed Other Unsecured Claim, in full satisfaction of such Allowed Claim, shall receive (A) on or as soon as reasonably practicable after the Effective Date, a Pro Rata share of approximately $16.48 million in New B Notes and (B) distributions in accordance with Section II.B.3.p.i.A.

Plan, Art. II.B.3.u.  The Plan contains no provisions that would allow or require the City to substitute other property for these New B Notes.

The Plan provides that Distributions on Claims are to be made to Holders of Allowed Claims.  Plan, Art. V.B ("Except as otherwise provided in the Plan, [. . .] each Holder of an Allowed Claim shall receive [. . .] the Distributions that the Plan provides for Allowed Claims in the applicable Class.").  A "Distribution" is "any initial or subsequent payment or transfer made on account of an Allowed Claim under or in connection with the Plan."  Plan, Art. I.A.135.  A "Holder" is simply "an

- 3 -

Entity holding a Claim." Plan, Art. I.A.214. And Claims needed to be filed by February 21, 2014 ("Bar Date"). ("Bar Date Order," Doc. No. 1782), ¶ 4.

Thus, the Plan directs the City to provide each Holder of an Allowed Class 14 Claim with a *pro rata* share of New B Notes; it does not provide the City with the obligation to substitute cash for the New B Notes or to make Distributions to entities other than the Holder of Class 14 Claims.

Article V.D of the Plan states that the Holders of Claims became fixed as of the Distribution Record Date.

> With the exception of Bond Claims, neither the City nor any Disbursing Agent will have any obligation to recognize the transfer of, or the sale of any participation in, any Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute only to those Holders of Allowed Claims (including Holders of Claims that become Allowed after the Distribution Record Date) that are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date. With the exception of the Bond Claims, the City and any Disbursing Agent shall instead be entitled to recognize and deal for all purposes under the Plan with only those record Holders stated on the official Claims Register as of the close of business on the Distribution Record Date.

Plan, Art. V.D. In the Plan, the "Distribution Record Date" is the "Confirmation Date," defined as the date the Court entered the Order confirming the Plan. Plan, Art. I.A.70, 138. That was November 12, 2014. Doc. No. 8272. Thus, the owners of Claims became fixed as of November 12, 2014, and the City need not recognize

- 4 -

attempts to sell or transfer claims after that date, nor is it obligated to entertain or consider Claims not timely filed by the Bar Date under the Bar Date Order.

The order confirming the Plan reaffirms that Distributions are to be "effectuated pursuant to Section II.B and Article V of the Plan." Doc. No. 8272, ¶ 49. The Plan's treatment is consistent with the requirements of the Bankruptcy Rules. *See* Fed. R. Bankr. P. 3021 ("[A]fter a plan is confirmed, distribution shall be made to creditors whose claims have been allowed.").

### B. The Brokerage Motion and Brokerage Order

To receive a share of the New B Notes, a Holder of an Allowed Claim must have a brokerage account. Over a year and a half ago, on September 17, 2019, the City proposed a process by which it would notify any potential Holder of a Class 14 Claim of the necessity of opening a brokerage account and provide what assistance it could in the process. *See generally City of Detroit's Motion to Implement Distributions of B Notes to Holders of Allowed Class 14 Claims Under the City's Confirmed Plan of Adjustment* ("Brokerage Motion," Doc. No. 13126), pp. 1-2. The Brokerage Motion expressly contemplated that all potential Class 14 Claimants would be governed by this process, defining the term "Class 14 Claimants" to include both "Allowed Claimholders" and holders of "Disputed Class 14 Claims." Brokerage Motion, ¶ 10.

- 5 -

The City submitted forms that it proposed to use to inform Class 14 Claimants of the Distribution process and to collect the information necessary to make the Distributions (e.g., the number of the account into which the claimant wished to have the New B Notes placed, tax information, and so forth). One such form, the *Notice Regarding Distributions to Class 14 Claimants* ("Notice," attached as Exhibit 6-1 to the Brokerage Motion), explained that the Plan required distribution of New B Notes and "Related Income"[4] in satisfaction of Allowed Class 14 Claims. Exhibit D to the Notice explained how to find a broker, and provided a sample list of brokers, although the Exhibit cautioned that the list was "***provided for informational purposes only***" (emphasis in original) and that the City made no representation or recommendation as to any broker listed.

The Claimholder was served with the Brokerage Motion[5] and had the opportunity to object but filed no response. The Court reviewed and approved the City's proposed form and process. *See* Brokerage Order.

The City noted in the Brokerage Motion that the Plan allows it to request proper tax and disbursement information and that, if a claimant does not timely provide this information, the claimant waives the right to any Distributions under

---

[4] Defined in the Notice as "related interest payments and investment income" concerning the New B Notes.

[5] *See* Certificate of Service filed at Docket Number 13129, Ex. C (pp. 14-18, showing first class mail service), page 1, second line from the top.

- 6 -

the Plan.  Brokerage Motion, ¶ 22-26; *see also*, Plan, Art. V.I.4 and V.J.2.  The Court's Brokerage Order reaffirmed these provisions.  Brokerage Order, ¶ 6.  The Brokerage Order incorporated the definitions used in the Brokerage Motion, so that it governed holders of any potential Class 14 Claim, allowed or disputed.  Brokerage Order, p.1 n.1; Brokerage Motion, ¶ 10.

The City identified and served Holders of 132 Class 14 Claims who might receive a Distribution with a "Brokerage Package" containing (a) a copy of the Brokerage Order; (b) the Notice; and (c) a self-addressed, postage paid return envelope to KCC (the City's Claims Agent).  Declaration of Lydia Do, ¶ 10, attached as **Exhibit 1**.  Over the next year, eleven of these Claims were either expunged or withdrawn by the Holders of the Claims.

Eighty claimants thus far have returned the brokerage forms.  Decl. of Lydia Do, ¶ 11.  Sixty-eight of these were properly completed, although a few were returned by claimants whose Claims were expunged.  One of the improperly filled out forms was returned by the Claimholder.  The City has not received responses from approximately 43 eligible New B Note recipients.  As a result, their Distributions have been forfeited under the Brokerage Order and the Plan.

## C.    The Claimholder

The Claimholder refused to establish a brokerage account and has thus waived any right it may have had to receive a Distribution under the Plan.

37745783.3/022765.00213

The Claimholder submitted forms that initially were incorrectly completed because, instead of establishing a brokerage account, the Brokerage Account and Direction Form included the name of The Rubinstein Law Firm and the P number of Jan Rubinstein. The Claimholder did not submit tax forms.

The Brokerage Order states that "the name of the creditor on the Brokerage Account Form and the name on the Tax Form must match the name of the creditor on the proof of claim . . . ." *See* Brokerage Order, ¶ 3. The Attorneys are not creditors in this case as they did not file a proof of claim (by the Bar Date or otherwise) and are not listed as Holders on the claim filed by the Claimholder.

On June 18, 2020, the City sent a letter to the Claimholder identifying the errors and providing until June 25, 2020, to submit properly completed forms. (Doc. No. 13296, Certificate of Service.) In response, the Claimholder submitted another incorrect Brokerage Account and Direction Form and the tax form improperly listed the The Rubinstein Law Firm instead of the Claimholder.

On July 13, 2020, the City sent a second letter to the Claimholder identifying the errors and providing until August 13, 2020, to submit properly completed forms. (Doc. No. 13304, Certificate of Service.) The Claimholder then submitted a properly completed tax form, but the Brokerage Account and Direction Form was submitted in blank, other than being signed by The Rubinstein Law Firm.

- 8 -

In a third and final attempt to resolve these issues, in addition to the communications detailed above, on May 11, 2021, the City sent a notice to the Claimholder ("<u>Final Notice</u>"), informing it that it was no longer entitled to a distribution because it had not complied with the Brokerage Order. See Brokerage Order, ¶ 6. (Doc. No. 13366, Certificate of Service.)

The Final Notice provided one last extension, until May 25, 2021, for the Claimholder to submit properly completed forms or be forever barred from receiving a distribution and asserting their claim against the City. See Brokerage Order, ¶¶ 4, 7. The Attorneys then filed the Motion. Prior to filing the Motion, none of the Attorneys objected to the Brokerage Motion, sought relief from the Brokerage Order, or sought to modify the Plan's treatment of Class 14 Claims.

After the Motion was filed, on or about June 2, 2021, the City's claims Agent received new forms from the Claimholder. The City is verifying that these forms have been properly completed, although they do appear properly filled out as of the filing of this Response.

### D. The Motion

On May 24, 2021, the Attorneys filed the Motion.[6] Ostensibly, they filed the

---

[6] On May 21, 2021, the Attorneys filed their first *Class 14 Claimants' Motion for Relief from Order*, but the Court ordered it stricken from the record for use of the improper ECF filing event. (Doc. Nos. 13369, 13370.) On May 24, the Attorneys filed a second similar motion, but the Court issued a notice that the pleading was
*Continued on next page.*

37745783.3/022765.00213

Motion on behalf of their Claimholder, although the Motion is filed in support of rights asserted by the Attorneys, not the Claimholder.

The Motion asks that the Court order the City to "waive the B Note/Brokerage Account requirements of" the Brokerage Order and further order the City to "make any/all disbursements required to be made to the above-cited Claimants to their respective Attorneys" and these distributions be made "in U.S. Currency." Proposed Order attached to Motion.

For the first request, it is not clear how "waiving" any portion of the Brokerage Order would help the Attorneys or their Claimholder. If the forms submitted by the Claimholder are not correct, the requested waiver would not change either the Plan's requirement that Class 14 Claimants receive New B Notes or the forfeiture of those New B Notes if a Claimholder refuses to cooperate to claim them. *See* Plan Art. II.B.3.u, V.B, V.I.4., and V.J.2. If the forms <u>are</u> correct, then it proves conclusively that the Attorneys and Claimholder do not require the relief they seek.

For the second and third requests, the Attorneys do not set forth any legal authority that they believe would allow the Court to order the City to deviate from the terms of the City's confirmed Plan.

---

deficient because it lacked a fourteen-day notice to the City, a proof of service, and a proposed order. (Doc. Nos. 13371, 13373.) The Motion is the corrected version.

- 10 -

Additionally, the Attorneys have neither briefed the appropriate standard for relief from an order (*see* Fed. R. Bankr. P. 9024 *and* Fed. R. Civ. P. 60(b)) nor offered an explanation as to how the Motion meets that standard. At best, the Attorneys offer a variety of reasons and excuses as to why they seek this relief. Although the Attorneys claim they have attempted to set up accounts and cannot open them in two weeks, it remains unclear why so many other claimants have succeeded in opening accounts where these Attorneys have failed. *See* Motion, ¶¶ 5-7; Decl. of Lydia Do, ¶ 11. This claim is made even more baffling by the fact that the Claimholder <u>has</u> returned forms that appear to be properly filled out, indicating that it certainly was possible to open a brokerage account. In any event, the Attorneys still blame the City's attorneys for their delay, without explaining what they think the City should have done to help them open these brokerage accounts. Motion, ¶ 8. Or, for that matter, any obligation they think the City has or had to do so. They also complain that they cannot set up a brokerage account for Sandra Greer, who apparently has passed away, but do not explain what steps they have taken to try to amend proof of claim 1064, which still lists Ms. Greer as a Claimholder. Motion, p. 4 n.4; Claim 1064, first page (**attached as Exhibit 2**).

Finally, the Attorneys complain that they are different from any other Class 14 Claimant, in that the Claim held by their Claimholder remains disputed. Motion, ¶¶ 7, 10, 12. They do not explain why that excerpts them from the terms of the

- 11 -

Brokerage Order, which applies to all potential Class 14 Claims, allowed or otherwise. Brokerage Order, p.1 n.1; Brokerage Motion, ¶ 10.

## III. ARGUMENT

### A. The Attorneys have neither outlined the proper legal test for relief from an order, nor shown that they qualify for such relief.

The first decretal paragraph of the proposed order the Attorneys supplied with their Motion begins with "**IT IS HEREBY ORDERED** that the City of Detroit shall waive the B Note/Brokerage account requirements of the Order Granting [. . .]." (Motion, unnumbered exhibit at Doc No. 13372-2, page 1 of 2.) The Attorneys seek relief from the order confirming the Plan and the Brokerage Order.[7]

A motion for relief from an order is made under Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9024, which applies Federal Rule of Civil Procedure ("Civil Rule") 60 to cases under the Bankruptcy Code. As set forth in Civil Rule 60(b), the grounds for relief from a final order include

      (1) mistake, inadvertence, surprise, or excusable neglect;

      (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

      (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

---

[7] There is no rule of procedure for asking a court to force an opposing party to grant relief that is expressly subject to the opposing party's discretion.

37745783.3/022765.00213

> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Civil Rule 60.  The Motion does not mention or cite to Civil Rule 60.  Based on the arguments made in the Motion, it does not seem the Attorneys are arguing that they have made some mistake or neglect; they attribute all fault to the City's actions. Likewise, the Motion does not refer to new evidence or fraud, nor does it claim that the Brokerage Order is void or "satisfied" in some manner.  That leaves Civil Rule 60(b)(6), which only applies where (b)(1) through (b)(5) do not.  *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988) (relief cannot be had under subsection (b)(6) if it would have been available under the earlier subsections).

The Sixth Circuit

> has stated that Rule 60(b)(6) provides relief "only in exceptional and extraordinary circumstances," which are defined as those "unusual and extreme situations where principles of equity mandate relief." *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 387 (6th Cir.2001) (citations and emphases omitted).  In addition to the requirement of exceptional circumstances, a Rule 60(b)(6) movant must also satisfy the three equitable factors required for Rule 55 relief: (1) lack of prejudice to the plaintiff; (2) a meritorious defense; and (3) whether the defendant's culpable conduct led to the judgment. *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433 (6th Cir.1996).

37745783.3/022765.00213

*Exp.-Imp. Bank of U.S. v. Advanced Polymer Scis., Inc.*, 604 F.3d 242, 247 (6th Cir. 2010). Here, the Attorneys argue that (1) they cannot open brokerage accounts for their clients at some of the firms the City named as a courtesy,[8] (2) they can open accounts at other firms, but there might be unspecified charges that the Attorneys or their clients are unwilling to incur, (3) the Attorneys could not set up brokerage accounts in their clients' names over which the Attorneys could maintain control, and (4) they should not be required to open an brokerage account because their Claimholder's Claim has not yet been liquidated. Motion, pp. 3-5. This hardly qualifies as "exceptional and extraordinary circumstances," especially when (a) the need for a brokerage account to receive New B Notes has been known since the notices approved by the Brokerage Order were served over a year and a half ago,[9] (b) the fact that the Brokerage Order applied to all Class 14 Claimants, whether their Claims were allowed or not, was known since the Brokerage Motion was filed and the Attorneys did not object, and (c) the Attorneys admit they can open accounts,

---

[8] The Attorneys state on pages four and five of their Motion that some of the brokerages listed by the City will not work with them. Although the City made clear in Exhibit D to the Notice that it could not guaranty that the brokerages listed would work with or be suitable for working with claimants, the City notes that a number of them have been able to assist other claimants. *Compare* Motion, p. 4, n.4 *with* Decl. of Lydia Do, ¶ 12.

[9] In fact, in 2014, the City's Disclosure Statement explained that Class 14 Claimants would be receiving New B Notes in exchange for their claims. *See* Disclosure Statement, p. 41 (Doc. No. 4391) *and* Certificate of Service (Doc. No. 6177). The fact that claimants will be getting New B Notes has been known for seven years.

- 14 -

albeit possibly subject to unspecified fees. Indeed, based on the forms returned to the City's Claims Agent, the Claimholder <u>appears to have recently opened a brokerage account</u>, proving that the Claimholder does not require the relief that the Attorneys seek in the Motion.

Because the Attorneys do not meet the standard for seeking relief from the Brokerage Order, the Motion should be denied.

### B. Even if the Attorneys were granted full relief from the Brokerage Order, the Attorneys would still not get the relief they seek.

The Attorneys' belief that the requirement to open a brokerage account stems from the Brokerage Order is mistaken. As discussed previously, that requirement comes from the Plan itself. *See* Plan, Art. II.B.3.u. Likewise, the Plan, the order confirming it, and the Bankruptcy Rules require the City to Distribute New B Notes to Holders of Allowed Class 14 Claims. Plan, Art. V.B; Doc. No. 8272, ¶ 49; Bankruptcy Rule 3021. All the Brokerage Order does is (1) approve the forms used to provide notice and to collect the necessary brokerage account and tax information to make the Distributions (Brokerage Order, ¶ 2); (2) approve the process to serve these forms and affirm the entities to whom Distributions are to be made (*Id.*, ¶¶ 3, 5); (3) grant the City some leeway in order to help parties who are making good-faith attempts to comply with the Brokerage Order (*Id.*, ¶¶ 4, 7); and (4) affirm the consequences set forth in the Plan for failure to comply with its requirements (*Id.*,

37745783.3/022765.00213

¶ 6).  The Brokerage Order does not modify the Plan or the order confirming it.  (*Id.*, ¶ 9).

Assuming *arguendo* that this Court entered an order stating that the Attorneys and Claimholder did not have to comply with the terms of the Brokerage Order (and assuming that the forms returned by the Claimholder are defective), they would be no better off than they are now.  Granting relief from the Brokerage Order would not provide the City with the ability to transfer the New B Notes to the Claimholder because the City still would lack the necessary tax or brokerage account information to do so.  Relief from the Brokerage Order would not rewrite the Plan; thus, the City still would have no ability to transform the New B Notes into cash or to substitute the Attorneys as recipients for the Claimholder.  Indeed, if the Claimholder receives relief from the Brokerage Order and thus does not provide the City with proper documentation, the Claims held by the Claimholder simply would be undeliverable. In that instance, the Plan makes clear that each such Claimholder "**shall be deemed to have forfeited its claim to such Distribution and shall be forever barred and enjoined from asserting any such claim against the City or its property.**"  Plan, Art. V.I.4 (boldface in Plan).

Thus, even if the Attorneys succeed in getting relief from the Brokerage Order, the only relief they would be getting would be to "free" themselves and their clients from the sole mechanism to recover on the Claims held by the Claimholder.

Thus, to the extent that the Motion seeks relief from the Brokerage Order, it should be denied because relief from the Brokerage Order would change nothing; the Claimholder would still have forfeited their Claims.

### C. The Attorneys Cannot Ask the Court to Order the City to Deviate from the Terms of the Plan.

As noted earlier, the Attorneys want the Court to compel the City to (1) "waive the B Note and brokerage account requirement set forth" in the Brokerage Order and (2) make distributions (x) to the Attorneys and (y) in cash instead of New B Notes. Motion, pp. 2, 16. As just discussed, the City can only Distribute the New B Notes promised under the Plan to a Class 14 Claimant if that claimant has a brokerage account to receive them. And, the promise to Distribute New B Notes is set forth in the Plan, not the Brokerage Order, so "waiving" the brokerage account requirement only has significance if the Court can also order the City to substitute cash for the New B Notes. There are multiple problems with this request.

First and foremost, the Attorneys would need relief from the Plan which has been substantially consummated and upheld on appeal by the District Court and the Sixth Circuit. The Plan provides for Distributions to Holders of Allowed Claims, not to those who assert interests in those claims, such as the Attorneys. As noted previously, the Holders of Claims became fixed as of November 12, 2014. Plan, Art. I.A.70, 138; Plan, Art. V.D, Doc. No. 8272. If the Attorneys wanted the City to recognize their asserted interests in the Claimholder' Claims, they needed to have

- 17 -

the Claimholder include them as Holders on the filed proofs of claim. Alternately, the Attorneys might have filed claim transfers under Federal Rule of Bankruptcy Procedure 3001(e)(2) or (4), so long as the transfers were completed by 5:00 p.m. on November 12, 2014. At this late date, however, this option no longer exists. Plan, Art. V.D.

Additionally, these Distributions are to be of New B Notes, not cash, as the Attorneys request. Plan, Art. II.B.3.u.

Second, the request runs afoul of 11 U.S.C. § 904, which states

> Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with--
>
> (1) any of the political or governmental powers of the debtor;
>
> (2) any of the property or revenues of the debtor; or
>
> (3) the debtor's use or enjoyment of any income-producing property.

11 U.S.C. § 904. The Sixth Circuit has held, in an appeal from this very bankruptcy case, that this section "limits the bankruptcy court's authority over the municipal debtor." *City of Detroit,* 841 F.3d at 695 (quoting *In re City of Stockton*, 486 B.R. 194, 198 (Bankr. E.D. Cal. 2013)).

> In the overall construct, § 904 performs the role of the clean-up hitter in baseball. Its preambular language "[n]otwithstanding any power of the court, . . . the court

37745783.3/022765.00213

may not, by any stay, order, or decree, in the case or otherwise . . ." is so comprehensive that it can only mean that a federal court can use no tool in its toolkit—no inherent authority power, no implied equitable power, no Bankruptcy Code § 105 power, no writ, no stay, no order—to interfere with a municipality regarding political or governmental powers, property or revenues, or use or enjoyment of income-producing property. *As a practical matter, the § 904 restriction functions as an anti-injunction statute—and more.*

*Id.* at 695-96 (quoting *Ass'n of Retired Emps. of the City of Stockton v. City of Stockton (In re City of Stockton)*, 478 B.R. 8, 20 (Bankr. E.D. Cal. 2012)) (emphasis added by Sixth Circuit to *Stockton* opinion language).

Unless the City consents (it does not), or the Attorneys point to Plan language requiring the City to pay cash on behalf of Allowed Class 14 Claims, and pay it to a Claimant's attorney instead of the Claim Holder (there is no such provision), section 904 prevents the Court from issuing an order telling the City what to do with its property.

The Attorneys cannot ask the Court to modify the Plan so that it provides for the relief the Attorneys prefer, either. "No party other than the debtor may propose a plan, section 941, or modification of a plan, section 942." *In re Richmond Unified Sch. Dist.*, 133 B.R. 221, 225 (Bankr. N.D. Cal. 1991).

Thus, the Attorneys cannot ask this Court to modify the City's Plan or to order the City to act in a manner inconsistent with the Plan. This is yet another reason why the Attorneys' request cannot be granted. The Motion should be denied.

- 19 -

### D. The Attorneys' misrepresentation of the purpose of Michigan Rule of Professional Conduct 1.15 does not avail them.

The Attorneys claim that requiring the Claimholder to open brokerage accounts violates Michigan Rule of Professional Conduct 1.15, but this is neither true nor would it excuse the Claimants' failure to open brokerage accounts if it were.

As the Attorneys must realize, MRPC 1.15 is a directive to *attorneys*, not third parties.  Here, MRPC 1.15 governs what the Attorneys must do if and when they receive proceeds on behalf of their clients.  MRPC 1.15 (beginning "A *lawyer* shall . . . ." and listing duties) (emphasis added); *see also* MRPC Preamble:  A Lawyer's Responsibilities (noting that "Some of the rules are imperatives, cast in terms of 'shall' or 'shall not'" and that "[t]hese define proper conduct for purposes of professional discipline.").  Directives governing how the Attorneys are to act vis-à-vis their clients do not bind anyone other than the Attorneys themselves.

Further, MRPC 1.15 is solely for client protection, not attorney collection. The Attorneys observe in their brief that the rule requires the Attorneys to notify their clients if they receive property on their clients' behalf, preserve records of this property, and promptly pay or deliver the property to the clients.  Brief attached to Motion (quoting MRPC 1.15).  The Attorneys also say that the ethics rules prevent them from commingling client property with property of their own or of others.  *Id.* These directives protect clients, not attorneys.  They do not apply when a client

- 20 -

receives its own funds directly, and cannot be interpreted as a tool for *preventing* a client from directly receiving funds.

Indeed, because of MRPC 1.15, if the City were able to Distribute the New B Notes to the Attorneys directly (it can't), the Attorneys would not necessarily be entitled to simply claim their fees if there is any dispute at all over the amount of the fees or the ownership of the proceeds. *Kasben v. Hoffman*, 278 Mich. App. 466, 472-73 (2008) ("Further, even if an attorney has a claim against funds held for a client, the attorney may not unilaterally seize the funds. Rather, the attorney must hold the funds separately until the dispute is resolved.") (citing MRPC 1.15). Thus, the Attorneys' argument (*i.e.*, because the Attorneys must safeguard any client funds they receive, the City must ignore the Plan's terms and hand over Class 14 claim proceeds directly to the Attorneys) is a non sequitur and logical fallacy; the conclusion does not follow from the premise.

In any event, even if being required to open brokerage accounts *would* violate the Michigan Rules of Professional Conduct in some way (it doesn't), the Attorneys' refusal to comply with the terms of the Plan and the Brokerage Order is not the proper way to raise and address that issue. "If [the Attorneys] did not agree with this Court's decision, the[ir] proper avenue for recourse was to appeal the Order." *Yoppolo v. Walter (In re Walter)*, 265 B.R. 753, 759 (Bankr. N.D. Ohio 2001); *see also Brown v. City of Upper Arlington*, 637 F.3d 668, 671 (6th Cir. 2011) (citing

- 21 -

*United States v. United Mine Workers of Am.,* 330 U.S. 258, 294 (1947)). The Claimholder and their Attorneys are bound by the Brokerage Order until and unless they convince this Court to modify that Order. They also are bound by the terms of the confirmed Plan. Even if this Plan requirement were confirmed in error (it wasn't), the terms of the Plan remain binding. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) (holding that a confirmed plan is binding even if provisions are confirmed in error). These terms will not be set aside unless the City (and only the City) requests a major modification of the Plan at this late date (it won't) and the Court approves (which the City believes would be unlikely). *Richmond Unified Sch. Dist.*, 133 B.R. at 225 (holding that only a debtor can propose modifications to a chapter 9 plan).

Thus, the Attorneys' attempt to convert client protections into attorney collection tools does not provide grounds for granting the Motion.

## CONCLUSION

For all of these reasons, the Motion should be denied. The City also respectfully submits that under 28 U.S.C. § 1927 this Court should sanction the Claimholder and their Attorneys for unreasonably and vexatiously multiplying the proceedings through the filing of the Motion for the reasons set forth above. The City may also provide the Attorneys with notice under Federal Rule of Bankruptcy Procedure 9011(c).

37745783.3/022765.00213

CITY OF DETROIT LAW DEPARTMENT

By: */s/ Charles N. Raimi*
Charles N. Raimi (P29746)
Attorneys for the City of Detroit
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
Phone - (313) 237-5037/(313)
Email - raimic@detroitmi.gov


MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: */s/ Marc N. Swanson*
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
Ronald A. Spinner (P73198)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Counsel for the City of Detroit, Michigan

Dated: June 7, 2021

37745783.3/022765.00213

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE OF THE CITY OF DETROIT'S RESPONSE TO CLASS 14 CLAIMANTS' MOTION FOR RELIEF FROM ORDER

The undersigned hereby certifies that on June 7, 2021, he caused a copy of

*The City of Detroit's Response to Motion to Class 14 Claimants' Motion for Relief*

*From Order* to be served upon counsel for the Movants via ECF and first class mail

as listed below.

The Rubinstein Law Firm
30150 Telegraph Road, Ste. 444
Bingham Farms, MI 48025

By: /s/ Marc N. Swanson
Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Dated: June 7, 2021

# EXHIBIT 1

## **<u>Declaration of Lydia Do</u>**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## DECLARATION OF LYDIA DO IN SUPPORT OF THE
## CITY OF DETROIT'S RESPONSE TO
## CLASS 14 CLAIMANTS' MOTION FOR RELIEF FROM ORDER

1.  I am Lydia Do, Senior Consultant for Kurtzman Carson Consultants ("KCC").

2.  I am over the age of 18 years old, have personal knowledge of the facts contained in this declaration, and if called as a witness, can competently testify to the facts it contains.

3.  KCC was engaged by the City of Detroit to provide services to the City in connection with its bankruptcy case, including providing service of certain documents filed in the City's bankruptcy case.

4.  On September 17, 2019, the City filed the *City of Detroit's Motion to Implement Distributions of B Notes to Holders of Allowed Class 14 Claims Under the City's Confirmed Plan of Adjustment* ("Brokerage Motion") in order to establish procedures for the pro rata distribution of New B Notes to holders of Allowed Class 14 Claims. [Doc. No. 13126].

5.  The City asked KCC to serve claimants with the Brokerage Motion.

37745770.3/022765.00213

6. On September 17, 2019, KCC served the Brokerage Motion via First-Class Mail and via email to the members of Class 14. Lydia Do, Senior Consultant of Corporate Restructuring Services for KCC, filed a certificate of service on September 19, 2019 to this effect. [Doc. No. 13129, Certificate of Service (discussing service of the Brokerage Motion on a list of class 14 claim holders attached as Exhibits A, B and C to the Certificate of Service)].

7. On November 13, 2019, the Court approved the Brokerage Motion, entering its *Order Granting the City of Detroit's Motion to Implement Distributions of B Notes to Holders of Allowed Class 14 Claims Under the City's Confirmed Plan of Adjustment* ("Brokerage Order"). [Doc. No. 13173].

8. The City asked KCC to serve "Brokerage Packages" to Class 14 claim holders. Each Brokerage Package contained

(a) A copy of the *Order Granting the City of Detroit's Motion to Implement Distributions of B Notes to Holders of Allowed Class 14 Claims Under the City's Confirmed Plan of Adjustment*;

(b) *Notice Regarding Distributions to Class 14 Claimants* (including the Brokerage Account Form, the Tax Form, the Set Up Your Brokerage Account Form) [attached as Exhibit 6-1 to Brokerage Motion]; and

(c) a self-addressed, postage paid return envelope to KCC.

*See* Certificate of Service Brokerage Package, (defined below).

9. On December 27, 2019, KCC served the Brokerage Package via First-Class Mail to the members of Class 14. I filed a certificate of service on January 6,

2

2020, to this effect. [Doc. No. 13215, Certificate of Service Brokerage Package (discussing service of the Brokerage Package on a list of class 14 claim holders attached as Exhibit A to the Certificate of Service Brokerage Package].

10.     Exhibit A to the Certificate of Service Brokerage Package indicates 132 claimants were served, including the Claimholder.[1]

11.     Since the Brokerage Packages were served, 80 claimants have returned Brokerage Account and Direction Forms (collectively, "Distribution Forms") either directly to KCC or to KCC via attorneys at Miller Canfield.

12.     As of the date of this declaration, KCC has received Distribution Forms that include information for brokerage accounts at the following financial institutions:

(a)     TD Ameritrade;

(b)     Comerica Securities;

(c)     Fidelity Investments;

(d)     ETrade Securities LLC;

(e)     JP Morgan Securities, LLC;

(f)     PFS Investments;

(g)     UBS Financial Services Inc.;

(h)     Edward Jones;

---

[1] Defined terms not otherwise defined have the meaning ascribed to them in the Response.

37745770.3/022765.00213

(i)     Merrill Lynch;

(j)     JPM Securities;

(k)     James Haddon Ramirez Asset Management;

(l)     Oppenheimer & Co., Inc.;

(m)     Wells Fargo Bank;

(n)     Bank of NY Mellon;

(o)     Woodbury Financial;

(p)     Interactive Brokers;

(q)     Merril Edge;

(r)     RBC Capital Markets;

(s)     Samuel A. Ramirez & Co.;

(t)     Morgan Stanley;

(u)     Baird;

(v)     Fifth Third;

(w)     Huntington National Bank;

(x)     Huntington Securities, Inc.

(y)     American Enterprise Investments;

(z)     Charles Schwab;

(aa)    Concorde Investment Services, LLC;

(bb)    JP Morgan Chase Bank, NA;

(cc)    Manufacturers & Traders Trust Company; and

(dd)   Wells Fargo Clearing Services

13.    KCC maintains records of this type in the ordinary course of its business.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

By: _____
Lydia Do
Senior Consultant
Kurtzman Carson Consultants

Executed on June 7, 2021

37745770.3/022765.00213

**EXHIBIT 2**

**<u>Claim Number 1064</u>**

B10 (Official Form 10) (04/13) (Modified)

| UNITED STATES BANKRUPTCY COURT    EASTERN DISTRICT of MICHIGAN | CHAPTER 9 PROOF OF CLAIM |
|---|---|

| Name of Debtor: City of Detroit, Michigan | Case Number: 13-53846 | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

**Abraham Greer and Sandra Greer**

Name and address where notices should be sent:

c/o atty The Rubinstein Law Firm
Jan Jeffrey Rubinstein (P57937)
30150 Telegraph Rd., Ste. 444
Bingham Farms, MI 48025

Telephone number: (248) 220-1515    email: jjrubinstein@yahoo.com

Name and address where payment should be sent (if different from above):

Telephone number:    email:

**COURT USE ONLY**

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____
(*If known*)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

RECEIVED
FEB 18 2014
KURTZMAN CARSON CONSULTANTS

1. **Amount of Claim as of Date Case Filed:**    $1,500,000.00

If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.
☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. **Basis for Claim:** <u>Sewer backup causing property damage</u> and health problem
   (See instruction #2)

3. **Last four digits of any number by which creditor identifies debtor:**    0085

3a. Debtor may have scheduled account as: _____
(See instruction #3a)

4. **Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:

**Value of Property:** $ _____

**Annual Interest Rate** (when case was filed) _____% ☐ Fixed  or ☐ Variable

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$ _____

**Basis for perfection:** _____

**Amount of Secured Claim:**    $ _____

**Amount Unsecured:**    $ _____

5. **Amount of Claim Entitled to Priority as an Administrative Expense under 11 U.S.C. §§ 503(b)(9) and 507(a)(2).**    $ _____

5b. **Amount of Claim Otherwise Entitled to Priority. Specify Applicable Section of 11 U.S.C. §** _____    $ _____

6. **Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)
$0.00

7. **Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (*See instruction #7, and the definition of "redacted".*) DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:    lawsuit was not filed yet when bankruptcy filed.  See attached supporting documents.

8. **Signature:** (See instruction # 8)
Check the appropriate box.

☐ I am the creditor.  ☒ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Jan Jeffrey Rubinstein
Title: attorney
Company: The Rubinstein Law Firm
Address and telephone number (if different from notice address above):

(Signature)    2/13/14    (Date)

Telephone number:    email:

*Penalty for presenting fraudulent claim.* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

13-53846-tjt   Doc 13307   Filed 06/07/21   Entered 06/07/21 ... Page 32 of 32

13538461402180000000000034