UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

In re

CITY OF DETROIT, MICHIGAN,

    Debtor.
_____/

Chapter 9

No. 13-53846

Hon. Thomas J. Tucker

**REPLY IN SUPPORT OF
INTERESTED PARTY RICHARD SNYDER'S MOTION FOR (A) AN
EVIDENTIARY HEARING AND (B) AN ORDER HOLDING THE
MICHIGAN DEPARTMENT OF ATTORNEY GENERAL IN
CONTEMPT AND GRANTING RELATED RELIEF**

Interested Party former Michigan Governor Richard Snyder submits this reply to the Michigan Department of Attorney General's (the "Department") response (R.13375, the "Response") filed in opposition to his *Motion for (a) an Evidentiary Hearing and (b) an Order Holding the Michigan Department of Attorney General in Contempt and Granting Related Relief* (R.13361, the "Motion"). In support of this reply and the Motion, Governor Snyder respectfully states as follows:

## REPLY ARGUMENT

**I. Governor Snyder has standing to seek sanctions regarding violations of this Court's mediation orders because he continues to be subject to them himself.**

1. As a threshold matter, Governor Snyder has standing to seek sanctions for the Department's violations of this Court's orders requiring mediation confidentiality. The Department appears to concede that, during his two terms as governor, Governor Snyder participated in communications that are confidential under this Court's mediation orders. *See* Resp. ¶ 23. Thus, the Department apparently agrees that Governor Snyder was himself subject to the restrictions in the orders and, like all of the participants in the mediation proceedings, had, at least at that time, an interest in the confidentiality of the proceedings. *See, e.g.*, *Grimes v. Bessner*, No. 17-CV-12860, 2018 WL 3956356, at *1 (E.D. Mich. Aug. 17, 2018) ("Confidentiality is paramount to the success of a mediation program

because it encourages candor between the participants." (quoting *Hand v. Walnut Valley Sailing Club*, No. 10-CV-1296, 2011 WL 3102491, at *4–5 (D. Kan. July 20, 2011))); *Fields-D'Arpino v. Rest. Assocs.*, Inc., 39 F. Supp. 2d 412, 417 (S.D.N.Y. 1999) ("[C]ourts have implicitly recognized that maintaining expectations of confidentiality is critical [to the success of mediation]." (collecting cases)).

2. Bafflingly, however, the Department suggests that Governor Snyder's interest in the confidentiality of the mediation proceedings and his obligations under this Court's orders requiring mediation confidentiality ceased when he left office in 2019. Resp. ¶ 23. The Department's position defies not only Governor Snyder's understanding of his obligations under the orders, but also logic. It cannot be that, the day after his term as governor ended, Governor Snyder was free to disclose the contents of discussions during mediation. Governor Snyder's obligations in his official capacity may well have ceased when his term ended, but his obligations in his individual capacity—and corresponding interest in all other participants upholding their end of the bargain under the orders—did not.

3. Indeed, had the tables been turned and Governor Snyder disclosed clearly marked and Court-order–protected mediation communications of the various judicial mediators, Eugene Driker, and Emergency Manager Kevyn Orr (as the Department has now done), Governor Snyder would have expected to be called to account for his breach of this Court's orders. Saying "I'm no longer governor;

2

it's Gretchen Whitmer's problem" would have been no escape hatch for Governor Snyder to avoid accountability. The Department's argument defies logic.

4. The Department also asserts that Governor Snyder lacks standing because he has no pecuniary interest in this bankruptcy case. *E.g.*, Resp. ¶ 22. The Department's argument relies on a fundamental misunderstanding of the parties who qualify as "a party in interest" in a bankruptcy case. Section 1109(b) of the Bankruptcy Code provides that "a party in interest . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Although the Bankruptcy Code does not define the phrase "party in interest," courts have interpreted it to mean "that anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains." *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992) (Posner, J.); *accord In re RnD Eng'g, LLC*, 556 B.R. 303, 311 (Bankr. E.D. Mich. 2016) (following *James Wilson*).

5. As discussed above, Governor Snyder remains subject to this Court's orders requiring mediation confidentiality, and he has a corresponding interest in all other mediation participants upholding their obligations under the orders as well. In other words, Governor Snyder has a legally protected interest (one recognized and protected by this Court when it issued its orders requiring mediation confidentiality) that could be affected by this proceeding, because he, like the other

participants in mediation, has a continuing interest in the confidentiality of mediation communications. Accordingly, Governor Snyder has standing as a "party in interest" pursuant to section 1109.[1]

II. **The fact that certain members of the Department were hired after the mediation proceedings in this case has no bearing on whether the Department violated this Court's orders.**

6. The Department next argues that it has not violated this Court's orders requiring mediation confidentiality because, *after* the Court entered those orders, it erected a conflict wall separating the Department personnel handling civil and criminal matters related to the Flint Water Crisis, and hired the personnel responsible for producing the confidential mediation documents that have now been disclosed. Resp. ¶ 29. This argument, too, defies common sense. An organization cannot avoid preexisting obligations simply by hiring new employees and tasking them with breaching the organization's obligations as opposed to the employees who were originally involved in the undertaking of those obligations.

---

[1] The Department abortively asserts, in a footnote, that Governor Snyder lacks Article III standing because he has suffered no injury in fact. Resp. ¶ 22 n.2. Governor Snyder, however, has been injured by the Department's breach of its confidentiality obligations, in the same manner as the other participants in the mediations and the mediators themselves. Moreover, Governor Snyder has incurred significant legal cost identifying the Court-protected mediation materials that were improperly disclosed, informing other defendants to not disseminate the materials further, and bringing this breach to the Court's attention through the Motion.

7. The Department's Response includes as Exhibit B a purported *Fifth Amended Notice of Conflict Wall*. That, and the Department's website, identify Attorney General (AG) Dana Nessel as the top Department official on the Civil Team—the side that continues to represent the State of Michigan and Governor Snyder in the Flint Water civil cases. Solicitor General (SG) Fadwa Hammoud is identified as the top Department official for the Criminal Team. *See* Resp. at Ex. B; *see also* https://www.michigan.gov/ag/0,4534,7-359-82917_97602---,00.html.

8. Through a FOIA request to the Department, it appears that, despite the conflict wall, AG Nessel and SG Hammoud have met 354 times in the past two years—from January 2019 to January 2021. *See* **Exhibit 7**; Excerpts from May 4, 2021 Response to FOIA Request. The fact that AG Nessel and SG Hammoud—on opposite sides of the so-called Flint Water conflict wall—have met so frequently since 2019 raises, at a minimum, the appearance that the protections asserted by the Department about the effectiveness of the so-called conflict wall should be called into question.

9. Moreover, when Governor Snyder recently sought assistance from the Assistant Attorneys General (AAGs) on his side of the conflict wall regarding how his attorney-client privileged communications, attorney-work product, executive-privileged materials, and his communications covered by this Court's multiple mediation confidentiality orders were not protected and have now been disclosed,

he was denied access to his own attorneys in the Department. *See* **Exhibit 8**: R. Snyder ltr. to C. Grossi, dated 5.25.21 and **Exhibit 9**: C. Grossi ltr. to R. Snyder, dated 5.27.21.

10. From Deputy Attorney General (DAG) Grossi's response to Governor Snyder, and the Department's recent admission that the Civil Team had no role in the challenged disclosures made by the Criminal Team, it appears that Governor Snyder's lawyers on the civil side of the conflict wall may now be protecting their colleagues on the criminal side of the conflict wall. Indeed, it is noteworthy that even after the Department filed its Response in this case on May 26, 2021, absolving the Civil Team of any responsibility for the disclosure of Court-protected mediation materials, DAG Grossi has not answered Governor Snyder's questions, nor has the Civil Team requested relief of this Court as to its mediation protected communications that the Criminal Team has now disclosed to nine defendants. Did Governor Snyder's lawyers in the Department inform SG Hammoud's team that they were seizing Court-protected materials? And after SG Hammoud's team seized these materials from the Department's eDiscovery vendor, KLDiscovery, did Governor Snyder's lawyers in the Department inquire of the Criminal Team whether they intended to use a taint or filter team to protect privileged and Court-protected communications? This is why limited discovery on this issue, to include

evidentiary hearings, is necessary to identify the specific Department personnel responsible for this flagrant breach of the Court's mediation confidentiality orders.

### III. The Department's assertion that it has done the best it could to protect privileged and confidential information under the circumstances is false.

11. The Department's assertion that it "takes its duty to protect privileged and confidential materials very seriously" rings hollow. *See* Resp. ¶ 1. The Department's failure to use a taint or filter team after seizing documents in 2019 from the Civil Team's eDiscovery vendor eviscerates this claim. Counsel for Governor Snyder began asking the prosecution about its use of a taint team in January 2021. *See* **Exhibit 10**: Disc. Req. ¶ 12, dated 1.19.21. The following day, after repeated similar requests, SG Hammoud finally admitted that her team did not use a taint team. **Exhibit 11**: Email from SG Hammoud to B. Lennon, dated 1.20.21.

12. Then, after one of the Criminal Team's initial disclosures of documents revealed that Governor Snyder's privileged communications with his lawyers—in the Department, the Executive Office of the Governor, and with his private attorneys at both Warner Norcross + Judd and Barris Sott Denn & Driker— had been disclosed by the Criminal Team, undersigned counsel brought this concern directly to the attention of SG Hammoud, who dismissed our concerns for protecting privileged information. *See* **Exhibit 12**: Email from B. Lennon to SG

Hammoud, dated 4.13.2021. Moreover, based on information and belief, AAGs on the Civil Team tried unsuccessfully to claw back their attorney-client and work product privileged materials from the Criminal Team. *See* **Exhibit 13**: Email from C. Grossi to C. Chamberlain, Counsel for Nick Lyon, dated 5.25.21. If called to testify, we expect the AAGs on the Civil Team will testify that they warned their colleagues on the Criminal Team about the existence of privileged and Court-protected mediation confidential materials in the data and materials the Criminal Team seized from the Civil Team's eDiscovery vendor in 2019. Governor Snyder has tried for several weeks to confirm this but has been denied access to the AAGs on his side of the conflict wall—his lawyers in the Flint civil cases—who assuredly can answer this question. *See* **Exhibits 8 & 9**.

13. If the Department was truly serious about protecting privileged and Court-protected confidential materials, it would have followed the well-established prosecutorial protocols of either using a taint team or an independent master to identify and segregate privileged and Court-protected mediation materials from that which the prosecution team can properly possess, review, and use. The Department's AAGs (at least on the civil side of the conflict wall) know what a taint team is and how it is used, as they have routinely used taint teams in other well-publicized cases involving seized materials likely to contain privileged information. Despite numerous warnings from undersigned counsel, and we

suspect AAGs on the Civil Team, the Criminal Team admittedly disclosed privileged and Court-protected mediation communications and other mediation documents to all the Flint Water criminal defendants with pending charges in Genesee County, most of whom had nothing to do with the City of Detroit bankruptcy proceedings and were not parties covered by this Court's orders.

14. While completely avoiding its critical failure to use a taint or filter team, the Department argues that, since it has purportedly done the best it could to protect the confidentiality of documents subject to this Court's mediation orders, Governor Snyder has not shown that there is "no fair ground of doubt" that the Department violated the orders. Resp. ¶¶ 32–37. These arguments also fail.

15. As a threshold matter, the Department inexplicably contends that its disclosure of the mediation documents did not affect their privileged and confidential nature. It is difficult to discern how that is true in any practical sense. According to the Department, the personnel responsible for producing the documents are not subject to this Court's orders, yet those same employees carefully reviewed the mediation documents to determine that the Department was constitutionally required to produce these documents to the state criminal defendants. Resp. ¶¶ 29, 34–37. In other words, according to the Department, its own employees on the Criminal Team have breached the confidentiality of the mediation documents this Court ordered to be protected.

9

16. The Department next tries to hide behind its obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, to justify its disclosure to all the criminal defendants evidence that is purportedly favorable to the defendant and material to guilt or punishment. Resp. ¶¶ 34–37. The Department represents that the mediation documents produced to the state criminal defendants "are directly relevant to the Flint water prosecution," indicating that they relate only to the mediation proceeding related to the Detroit Water and Sewerage Department. Resp. ¶ 36. Even a cursory review of the Department's productions to date, however, shows that this representation is false. The productions include mediation documents concerning the Detroit Institute of Art (AG_SG_PROD0016_0000036040), statements regarding the United Auto Workers Union's participation in the mediation (AG_SG_PROD0016_0000045467), statements from various Foundations (*see, e.g.*, AG_SG_PROD0016_0000154225), and legal discussions regarding another county's authority to make certain decisions (AG_SG_PROD0017_0000006435). None of these documents are relevant in the Flint criminal cases. Moreover, these documents certainly do not constitute evidence that is favorable to the Flint criminal defendants or material to guilt or punishment. Rather, it is indicative that the Criminal Team did not go through any *Brady* analysis as they claim to have done in the Department's Response. Instead, the Department's Criminal Team

reviewed and produced everything to everyone, regardless of whose privilege they breached. Importantly for this Court's analysis, with respect to the documents covered by this Court's mediation confidentiality orders, this recklessness resulted in a clear and egregious violation of the Court's orders.

**IV. The Department's representation that the challenged disclosed documents are covered by the existing state court protective order is false. If it were true, then why is the Department now moving for an amendment of the protective order to include the challenged materials?**

17. The Department also audaciously represents that it has produced the mediation documents subject to a protective order entered in the state court criminal cases. Resp. ¶ 37. The plain text of the protective order, however, shows that the Department's representation is not true. Resp. Ex. E at 2.

18. Moreover, the day after the Department filed its Response, Chris Kessel, AG Nessel's former law partner who now works for SG Hammoud on the Civil Team, contacted Governor Snyder's counsel (and the counsel for the other defendants), seeking a modification of the existing state court protective order. *See* **Exhibit 14**: Email exchange between C. Kessel and B. Lennon, dated 5.27.21. If the Department believed that the existing protective order in state court sufficiently covered the Court's mediation materials, as it asserted to this Court in its Response brief, then why did the Department seek a modification of said protective order the following day? On June 9, 2021, the Department filed its *Motion to Amend*

*Protective Order* in People v. Snyder. **Exhibit 15**: Department's Mot. for Proposed Am. Protective Order. The Department filed similar motions in other pending cases. Paragraph 1(b) of the proposed Amended Protective Order (**Exhibit 15**) appears to add language that attempts to cover its tracks vis-à-vis its disclosure of Court-protected mediation documents. The Department's representation that the existing state court protective order covered its disclosure of this Court's mediation materials was clearly false, and its subsequent remedial measures in state court are both proof of the false representation and wholly inadequate to address the remedies needed to address its clear breach of this Court's orders.

## V. The Court should not enter the Department's proposed order.

19. Similarly, the Department's proposed resolution of a *Second Order Amending Mediation and Confidentiality Order*, Exhibit A to its Response, completely misses the mark. Rather than admitting its violation of the Court orders and offering a solution that would rectify the breach and provide this Court (and all the judicial mediators and parties to this historic mediation) with assurances that no further disclosures will be made, the Department seeks cover for its clear transgression, and asks this Court to essentially bless all future disclosures of privileged and Court-protected materials to all criminal defendants. The Department's request is audacious, and such an order would be unprecedented.

Moreover, the Department's proposed amended order would bind third parties—that is, parties who were never part of this his historic bankruptcy proceeding and therefore never subject to this Court's previous mediation confidentiality orders. If this Court is to intervene in the state criminal case, it should not be an order to bind non-parties, but instead to direct the Department to: (1) claw back all privileged and Court-protected materials from all criminal defendants; (2) establish a taint team or hire an independent master to segregate all privileged and Court-protected mediation materials; (3) hold in contempt the Department personnel on the Flint Water Criminal Team responsible for this clear breach of the Court's mediation confidentiality orders; and (4) order the Department to pay reasonable attorneys' fees and costs to Governor Snyder.

## CONCLUSION

For the reasons stated herein and in the Motion, Governor Snyder respectfully requests that this Court (a) hold an evidentiary hearing to determine how the Department's violations of the confidentiality orders came about and (b) enter an order (i) holding the Department and its responsible personnel in contempt; (ii) imposing sanctions appropriate to coerce the Department's compliance with this Court's orders requiring mediation confidentiality, including, without limitation, awarding Governor Snyder his reasonable attorney fees

incurred in bringing this Motion; and (iii) granting such other and further relief as may be just and proper.

| | |
|---|---|
| Dated: June 10, 2021 | */s/ Stephen B. Grow* <br> Brian P. Lennon <br> Charles N. Ash <br> Stephen B. Grow <br> WARNER NORCROSS + JUDD LLP <br> 150 Ottawa Avenue NW, Suite 1500 <br> Grand Rapids, MI 49503 <br> 616.752.2000 <br> blennon@wnj.com <br> cash@wnj.com <br> sgrow@wnj.com <br><br> Attorneys for Interested Party Richard Snyder |

21846530-2