UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Chapter 9

CITY OF DETROIT, MICHIGAN,                          Case No. 13-53846

   Debtor.                                          Hon. Thomas J. Tucker

_____/

**RESPONDENT'S STATEMENT REGARDING RICHARD
SNYDER'S JULY 1, 2021 DESCRIPTION OF DISCOVERY**

# INTRODUCTION

The Flint Criminal Team respectfully asks this Court to deny Mr. Snyder's requested discovery for two reasons. First, in addition to the fact that Mr. Snyder lacks standing generally, he is a uniquely inappropriate entity to probe into the office currently prosecuting him in Flint. Permitting him to do so would short-circuit the criminal proceedings in which he is a defendant and compromise the integrity of that case. Second, despite his representations that he is seeking "limited" discovery, the requested discovery is shockingly overbroad, bearing no discernible relationship to the core issues before this Court.

Even if the Court were to permit discovery, the Flint Criminal Team respectfully submits that the fruits of such discovery should be subject only to *in camera* review; there is no articulable need for Mr. Snyder—an individual—to obtain this discovery.

## I. This Court should bar Mr. Snyder from further participation in this matter.

Mr. Snyder's lack of standing and his status as a criminal defendant in the Flint water cases make his discovery requests wholly improper. This Court observed that it does not need a live, justiciable controversy between parties to entertain a potential violation of its orders, but here the Court is being asked to permit a non-party to take extensive discovery in a matter in which he has no interest. Worse still, the Court essentially would be appointing Mr. Snyder—a

criminal defendant in an ongoing prosecution by the Flint Criminal Team—to serve as this Court's deputy in its inquiry toward his prosecutors. That conflict is untenable. Courts "cannot allow the bankruptcy court to be used as a gratuitous arsenal of heavy weaponry for state court combatants" who lack standing. *In re Lapointe*, 39 B.R. 80, 81 (Bankr. W.D. Ky. 1984). Because Mr. Snyder lacks standing to participate in this matter, this Court should conclude that it lacks authority to grant Mr. Snyder the discovery he requests.

**II.     Mr. Snyder has not made a prima facie showing as to any of the contempt factors.**

Mr. Snyder concedes that relief cannot be warranted unless he shows by "clear and convincing evidence" that (1) the mediation orders were "definite and specific" as to the Flint Criminal Team, in particular, (2) the Flint Criminal Team acted with knowledge of these orders; and (3) there is no objectively reasonable basis for concluding that the Flint Criminal Team's conduct might have been lawful. *In re City of Detroit*, 614 B.R. 255, 264 (E.D. Mich. 2020).[1]

---

[1] As already explained in Respondent's response brief, these inquiries must occur through the lens of the Department's conflict wall, which ensured that no one with institutional knowledge of the bankruptcy proceedings ever worked on the Flint Criminal Team. Tellingly, Mr. Snyder—whose accusations are leveled exclusively at the actions of the Flint Criminal Team—is unable to allege that anyone violated a particular rule of professional conduct or other principle of law. Instead, he resorts to rank speculation, suggesting that the wall might have been violated because members of each side have met regarding unrelated topics. (Dkt. 13391, at 5.) This kind of bare suspicion, divorced from any applicable law, does not justify discovery.

Mr. Snyder tacitly admits that his discovery requests are a fishing expedition, stating only that he "seeks discovery to unearth facts that will enable him to carry his burden." (Dkt. 13411, at 2.) At the hearing held on June 16, 2021, Mr. Snyder revealed how threadbare his suspicion of the Flint Criminal Team's "knowledge" really is: Because the Detroit bankruptcy proceedings were newsworthy, he concludes, the Flint Criminal Team—whose members were not involved in the bankruptcy proceedings—must have known about the contents of three orders buried among over ten thousand docket entries. This does not comprise a prima facie case that justifies further discovery.

### III. The discovery requests are overbroad.

By Mr. Snyder's own circumscription, there is a single issue at bar potentially amenable to factual development: Whether the Flint Criminal Team knew about the mediation orders. (Dkt. 13411, at 2.) This is a binary, yes-or-no inquiry. The other two inquiries identified in *In re City of Detroit* need no factual development beyond what has already occurred.[2]

---

[2] Whether "a definite and specific order of the court" required the Flint Criminal Team to "refrain from performing a particular act" can be determined by reference to the docket, the orders, and the documents in issue here. In any event, for the reasons already stated in in its prior briefing, the Flint Criminal Team, as a nonparty, contests that this element is met. The order plainly is directed only to the parties, and the single mention of confidentiality—phrased in the passive voice—does not comprise a "definite and specific" instruction to the Flint Criminal Team, nor was it served on them. Whether there is "no objectively reasonable basis for concluding that the party's conduct might be lawful" likewise can be determined by reference to the docket, the orders, and the documents in issue here. Regardless, the Flint Criminal Team maintains that disclosing materials relevant to the prosecution of the Flint Defendants was both

3

Given the narrow scope of this preliminary inquiry, it is obvious that Mr. Snyder—his foot in the door—is attempting to shoulder that door wide open by brute force. His inquisition would elicit information irrelevant to this court's civil-contempt inquiry, especially the "knowledge" prong. In particular, Mr. Snyder asks (and the Flint Criminal Team answers):

- "[W]ho in the Department, on both sides of the conflict wall, did what and when that resulted in this breach of the Court's Mediation Confidentiality Orders?" (Dkt. 13411, at 2.)
    - The fact of the production to the criminal defendants of the documents is conceded, and "discovery' is not needed to understand why or when the Flint Criminal Team disclosed the documents. Both are known to Mr. Snyder and this Court.
    - No answer to these questions possibly can bear on whether the Flint Criminal Team knew of the existence of the orders.
- "Who made the decision not to use a taint team, which could have easily identified these privileged documents?" (*Id.*)
    - A taint team tasked with identifying "privileged" documents would not have "easily identified" anything vis-à-vis the order without knowledge of the court order.
- "Was anyone in the Department concerned about the lack of a taint team or other protocols to protect privileged information?" (*Id.*)
    - Because there is no reason even to suspect that the Flint Criminal Team knew about the order, it does not make sense to ask whether they were concerned about complying with it.

---

legal and constitutionally required given the reasonable steps the team took to protect the documents.

- - o Stated differently, even if the Flint Criminal Team *did* know about the order, the answer to this question (and the others) still would have no relationship to the three contempt factors.
- "Did anyone even review or search the documents before they were disclosed to all nine criminal defendants?" (*Id.*)
  - o Same answer.
- "And if these documents were reviewed by the prosecution team, how was that review performed?" (*Id.* at 2–3.)
  - o Again: The method for review is irrelevant if there was no knowledge of the order.

In sum, Mr. Snyder's requests all incorrectly presume knowledge that the Flint Criminal Team flatly denies, and they misconstrue the scope of this Court's contempt inquiry. That is not enough to justify "discovery," least of all to an entity who has no business before this Court and is fiercely opposed to the Flint Criminal Team in a separate criminal proceeding.

## CONCLUSION AND RELIEF REQUESTED

The Flint Criminal Team respectfully asks this Court to recognize that Mr. Snyder lacks the authority to further participate in these proceedings—least of all as a recipient of discovery into the inner workings of his prosecutors' office. Even if it is appropriate for Mr. Snyder to participate, this Court should circumscribe the issues regarding knowledge and the mediation order and conclude, as a result, that the scope of the discovery requested by Mr. Snyder is unduly broad and irrelevant to this Court's contempt inquiry.

Respectfully submitted,

/s/ John D. VanDeventer
MICHIGAN DEPARTMENT OF
ATTORNEY GENERAL
G. Mennen Williams Building
525 W. Ottawa Street
P.O. Box 30212
Lansing, MI 48909
(517) 335-7622
vandeventerj@michigan.gov
Illinois P# 6315809


Fadwa Hammoud
MICHIGAN DEPARTMENT OF
ATTORNEY GENERAL
Cadillac Place, Suite 10-200
3030 W. Grand Boulevard
Detroit, MI 48202
(313) 456-0240
Hammoudf1@michigan.gov
P74185

Dated: July 8, 2021

6

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on July 8, 2021, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/s/ John D. VanDeventer
MICHIGAN DEPARTMENT OF
ATTORNEY GENERAL
G. Mennen Williams Building
525 W. Ottawa Street
P.O. Box 30212
Lansing, MI 48909
(517) 335-7622
vandeventerj@michigan.gov
Illinois P# 6315809

SG FW Snyder, R. (USDC)/AG Resp Re Snyder's Description of Discovery 2021.07.08