**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DISTRICT**

In re:                                        Bankruptcy Case No. 13-53846

City of Detroit, Michigan,                    Judge Thomas J. Tucker

   Debtor.                                     Chapter 9
_____/


**MOTION OF DETROIT FIRE FIGHTERS ASSOCIATION (DFFA)**
**FOR THE ENTRY OF AN ORDER ENFORCING THE PLAN OF**
**ADJUSTMENT AGAINST:**

**CHRISTOPHER MCGHEE**
**NORMAN BROWN**
**CRAIG BROWN**
**JAMES WASHINGTON**
**SHANNON FERGUSON**
**JUNIUS PERRY, AND**
**ORLANDO POTTS**

Christopher P. Legghio (P27378)
Megan B. Boelstler (P79125)
Legghio & Israel, P.C.
306 S. Washington, Suite 600
Royal Oak, MI 48067
(248) 398-5900
cpl@legghioisrael.com
mbb@legghioisrael.com

Attorneys for DFFA

# GUIDE TO PARTIES AND CITATIONS

For purposes of readability and concision, the following abbreviations, acronyms, and citations are used in this Motion:

1.      "**Bankruptcy Court**" refers to the United States Bankruptcy Court, Eastern District of Michigan.

2.      "**CBA**" refers to collective bargaining agreements generically.

3.      The "**2014 CBA**" refers specifically to the 2014-2019 collective bargaining agreement and its extension to July 2020, between the DFFA and the City. *See POA below.*

4.      "**City**" refers to the City of Detroit.

5.      "**FAC**" refers to Plaintiffs' First Amended Complaint, Ex. 6A. References to the FAC are cited by paragraph, such as "**¶ 50**."

6.      "**Confirmation Order**" or "**CO**" refers to the Order Confirming Eighth Amended Plan for the Adjustment of Debts for the City of Detroit, Docket #8272. The CO and Plan of Adjustment (see no. 15 below) are collectively referred to as the "**POA**."

7.      "**DFD**" refers to the Detroit Fire Department.

8.      "**DFFA**" or "**Movant**" is the Defendant Detroit Fire Fighters Association, Local 344.

9.      "**DFFA Officers**" refer to Defendant DFFA President Thomas Gehart, Vice President William Harp, Secretary John Cangialosi, Treasurer Christopher Smith, and former president Michael Nevin.

10.     "**Effective Date**" is December 10, 2014, the date the POA became effective. (Docket #8649).

11.     "**EM**" refers to Emergency Manager Kevin Orr who was appointed by the Governor in March 2013 pursuant to MCL 141.1549(1).

12.     "**Grand Bargain**" refers to a significant, complicated feature of the confirmed POA, that provided, among other things, that the PFRS (see below) would be funded by other entities than the City, including the State. (*See, e.g.*, Docket #8272, pp. 33, 38-39, 65; Docket #8993, pp. 40-41, 104, 117).

i

**13.** "**PFRS**" refers to Police and Fire Retirement System of the City of Detroit.

**14.** "**Plaintiffs**" refer to Christopher McGhee, Norman Brown, Craig Brown, James Washington, Shannon Ferguson, Junius Perry, and Orlando Potts.

**15.** "**Plan Document**" refers to the POA-provided new plan for the PFRS, which is called the Combined Plan for the Police and Fire Retirement System of the City of Detroit, Michigan (Amendment and Restatement Effective July 1, 2014).

**16.** "**POA**"-- the City Bankruptcy Plan of Adjustment which included a ten (10) year injunction against any pension changes. (Docket #8045). By its terms, the 2014 CBA is incorporated into the POA.

**17.** "**WCCC**" -- Wayne County Circuit Court.

**18.** "**WCCC suit**" -- Plaintiffs' WCCC lawsuit, *Christopher McGhee, et al., v. City of Detroit, et al.*, (WCCC No. 20-006272-CD).

- Q: [Defense Counsel]…you ask the Court to give you, restore the seniority that existed before you went on duty disability [2005], ***to award you 15 years of seniority while you were on duty disability*** [2005 to 2018]***, and to increase your pension benefits based on the new calculations of your seniority***. That's one of the things you want from the Court. Am I correct on that?

  A: Yes.

  -- Ex. 6H, *Plaintiff Orlando Potts*, deposition testimony at p. 62 in WCCC suit (emphasis added)

- ". . . the POA altered the previously-existing pension-related rights and other rights of many of the City's active and retired employees."

  -- Hon. Thomas J. Tucker, United States Bankruptcy Judge

  *In re: City of Detroit, Michigan* (Case No. 13-53846), Docket #13274, p. 18.

# TABLE OF CONTENTS

GUIDE TO PARTIES AND CITATIONS ................................................................ i

TABLE OF AUTHORITIES ...............................................................................v

    I.     INTRODUCTION ..............................................................................1

    II.    FACTS ..............................................................................................3

          A.    The POA ...............................................................................4

          B.    The 2014 CBA ......................................................................7

          C.    Plaintiffs' WCCC Suit .........................................................9

          D.    Plaintiffs' and Plaintiffs' Counsel Had Notice of Conflict Between Plaintiffs' WCCC Suit and the POA .........................11

    III.   JURISDICTION ................................................................................12

    IV.   ARGUMENT ....................................................................................14

          A.    The Issue -- Plaintiffs' WCCC Suit Violates the POA And Its Injunctions ................................................................14

          B.    Plaintiffs' and Plaintiffs' Counsel Liability for Costs and Fees .....................................................................................16

    V.    CONCLUSION .................................................................................17

13-53846-tjt    Doc 13430    Filed 08/30/21    Entered 08/30/21 15:58:02    Page 5 of 35

# TABLE OF AUTHORITIES

**CASES**

*Allard v. Coenen (In re Trans-Indus., Inc.)*, 49 B.R. 21 (Bankr. E.D. Mich. 2009) ........................................................................................................13

*Holley v. Oliver, PLLC*, 473 B.R. 212, 215-216 (Bankr. E.D. Mich. 2012) .... 16, 17

*Salkowski, et al. v. City of Detroit, the Detroit Police and Fire Pension Board, and Detroit Fire Fighters Association Local 344*, WCCC Case No. 2019-009993-CL (Judge John A. Murphy) ....................................................15

**STATUTES**

28 U.S.C. §1334(b) .......................................................................... 12, 13

28 U.S.C. §157 (b)(1) ............................................................................12

28 U.S.C. §157(a) ..................................................................................12

28 U.S.C. §157(b)(2)(O) ........................................................................12

**RULES**

Local Rule 83.50(a) (E.D. Mich.) ..........................................................12

The DFFA ("DFFA" or "Movant") files this *Motion for the Entry of an Order Enforcing the POA* ("Motion") against Plaintiffs.

In support of this Motion, the Movant respectfully state as follows:

## I.    INTRODUCTION

This is a Motion to bar a pending WCCC suit.

The suit was filed by seven (7) current and former fire fighters. Each Plaintiff took extended duty disability retirements from the City *prior to* the City's bankruptcy and the effective dates of the POA and the 2014 CBA. Plaintiffs have either returned to the City employment or taken a general retirement. One (1) Plaintiff remains on duty disability retirement.

The DFFA asks, among other things, that the Court hold each Plaintiff and their counsel in contempt of Court for violating the POA and, in particular, the POA's pension-related injunction.

Plaintiffs' WCCC suit is an effort to circumvent the POA and the 2014 CBA, which was negotiated with mediation assistance ordered by the Bankruptcy Court. The Hon. Victoria Roberts mediated the negotiation of the 2014 CBA, which is incorporated into the POA.

1

Plaintiffs' lawsuit is operatic: the 2014 CBA, Plaintiffs claim, is an "*illegal document . . . created pursuant to a conspiracy . . . with the intent and purpose of violating . . . Plaintiffs' civil rights* (emphasis added). "[1]

It seeks relief that would improperly amend the POA -- by changing the "terms, conditions, and rules of operation. . . that govern the calculation of pension benefits." Similarly, Plaintiffs wish to amend the 2014 CBA seniority and pension provisions.

Beyond what is permitted by the POA and the 2014 CBA, Plaintiffs wish to increase their pension benefits based upon the extended periods of time during which each Plaintiff was on duty disability retirement from the City.

The lead Plaintiff, Christopher McGhee, is emblematic of Plaintiffs' POA-prohibited and sensibility-offending demands: for sixteen (16) years, McGhee was a duty disabled retiree, *i.e.*, not working for the City. He now demands seniority, rank, and increased pension benefits calculated on the sixteen (16) years he was on duty disability retirement from the City.

Bereft of any legal basis, Plaintiffs' WCCC suit simply seeks to avoid the inevitable and, admittedly, unpleasant seniority and pension reductions incident to the City's bankruptcy -- reductions shared by countless other City employees.

---

[1] The 2014 CBA was not only negotiated with the Hon. Victoria Roberts' mediation assistance, it is incorporated into this Court-approved POA, and was approved by the EM and the Michigan State Treasurer. (Exs. 6D and 6E).

This WCCC suit is a POA-prohibited challenge to one of the "many ways in which the POA altered...previously-existing pension-related rights..."

Plaintiffs seek this relief despite clear POA injunction and exculpation language and equally-clear 2014 CBA language regarding duty disability seniority and pension benefits. And, despite a recent, unrelated but probative arbitration decision (2021) that specifically confirmed the 2014 CBA's two (2) year seniority limitation for duty disability retirees who return to City employment.

Plaintiffs' claims improperly burden the PFRS with pension expenses that defy the POA and the 2014 CBA and jeopardize the Grand Bargain. They are a textbook example of the type of pension benefit extravagance -- indeed, profligacy -- that the POA, and its component agreements, specifically sought to eradicate.

Plaintiffs' effort to avoid the effect of the bankruptcy, the POA, and the Bankruptcy Court-mediated 2014 CBA, is a civil contempt matter properly before this Court. Absent relief from this Court, the City and the DFFA face the "devastating possibility that a state court could grant relief that effectively amends the [POA]" and jeopardizes the "Grand Bargain." (Docket # 13385, p. 4).

## II. FACTS

1. On July 18, 2013, the City filed this Chapter 9 case.

### A.    The POA

2.    The POA was confirmed on November 12, 2014. It consists of the "Eighth Amended Plan for the Adjustment of Debts for the City of Detroit," and all of its exhibits, filed October 22, 2014,[2] and the "Order Confirming Eighth Amended Plan for the Adjustment of Debts for the City of Detroit," filed November 12, 2014.[3]

3.    The POA became effective on December 10, 2014.[4]

4.    The treatment of pension claims in the City's proposed POA was a "significant issue" in the bankruptcy.  (Docket #8993,  pp. 38-39).

5.    A significant number of pension creditors -- *e.g.*, retirees and future retirees -- objected to any reduction or impairment of pension claims.  (Docket #8993, p. 39).

6.    "A substantial majority" of PFRS creditors (read: retirees and future retirees) voted in favor of the City's POA and "accepted the necessity of shared sacrifice for the common good of the City."  (Docket #8993, pp. 40-41).

7.    The POA changed the "previously-existing pension-related rights and other rights of many of the City's active and retired employees," including fire fighters.  (Docket #13274, pp. 4, 18).

---

[2] Docket #8045.

[3] Docket #8272.

[4] *See* Notice of (I) Entry of Order Confirming Eighth Amended Plan for the Adjustment of Debts for the City of Detroit and (II) Occurrence of Effective Date, filed December 10, 2014 (Docket #8649).

8.     The POA contains a "very broad" injunction with respect to litigation that challenges the POA.  (Docket #13274, p. 14).  It precludes, among other things, litigation that "does not conform . . . or comply with . . ." the terms of the POA or "the settlements" contained in the POA and approved by the Bankruptcy Court.  It bars too litigation that interferes with the "implementation and consummation" of the POA:

> Injunction
>
> On the Effective Date, except as otherwise provided herein or in the Confirmation Order,
>
> > a. *all Entities that have been, are or may be holders of Claims against the City…shall be permanently enjoined from taking any of the following actions against or affecting the City or its property*…
> >
> > > 1. *commencing,    conducting    or continuing in any manner, directly or indirectly,  any  suit,  action  or  other proceeding  of  any  kind  against  or affecting the City or its property…*
> > >
> > > 5. *proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan or the settlements set forth herein* to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and

> 6. ***taking any actions to interfere with the implementation or consummation of the Plan.***

POA, Article III.D.5, pp. 50-51 (emphasis altered); see also Docket #13274, pp. 14-15.

9.     More specifically, the POA enjoins any action that amends the "terms [and] conditions . . . of the PFRS," including those terms that govern the "calculation or amount of PFRS benefits":

> Except as may be required to maintain the tax-qualified status of the PFRS or to comply with the terms of the Plan, the City, ***the trustees of the PFRS and all other persons or entities shall be enjoined from and against the subsequent amendment of the terms, conditions and rules of operation of the PFRS***, or any successor plan or trust***, that govern the calculation of pension benefits*** (including the PFRS Adjusted Pension Amount, accrual of additional benefits, the DIA Proceeds Default Amount, the Prior PFRS Pension Plan, the PFRS Restoration Payment, the New PFRS Active Pension Plan Formula and the terms of the New PFRS Active Pension Plan) or against any action that governs the selection of the investment return assumption described in Section II.B.3.q.ii.B, the contribution to the PFRS ***or the calculation or amount of PFRS pension benefits for the period ending June 30, 2023***, notwithstanding whether that subsequent amendment or act is created or undertaken by contract, agreement (including collective bargaining agreement), statute, rule, regulation, ordinance, charter, resolution or otherwise by operation of law.

POA, Article II.B.3.q.ii.G (emphasis altered).

10.     The POA also contains a broad -- *i.e.*, "to the fullest extent permitted" -- exculpation provision that protects the City and City-affiliated parties who

negotiated and implemented the POA, the pension settlement, and CBAs negotiated in service of the POA and the pension settlement:

> From and after the Effective Date, ***to the fullest extent permitted under applicable law and except as expressly set forth in this Section, neither the City, its Related Entities (including the members of the City Council, the Mayor and the Emergency Manager)***, to the extent a claim arises from actions taken by such Related Entity in its capacity as a Related Entity of the City, the State, the State Related Entities, the Exculpated Parties nor the Released Parties ***shall have or incur any liability to any person or Entity for any act or omission in connection with, relating to or arising out of the City's restructuring efforts and the Chapter 9 Case, including*** the authorization given to file the Chapter 9 Case, *the* formulation, preparation, ***negotiation***, dissemination, consummation, implementation, confirmation or approval (as applicable) of the Plan, the property to be distributed under the Plan, the settlements implemented under the Plan, the Exhibits, the Disclosure Statement, ***any contract***, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan or the management or operation of the City….

POA, p. 51 (emphasis added).

11. All Plaintiffs received Court-approved timely notice of the POA terms.[5]

## B. The 2014 CBA

12. Incorporated into the POA, the 2014 CBA is one of the "key settlements that are the result of extensive arm's length negotiations (often conducted within the context of Court-ordered mediation) . . . ." (Docket #8272, p. 20).

---

[5] Docket #2823, #9000.

13.     The 2014 CBA is subject to "post-confirmation ongoing jurisdiction of the Bankruptcy Court." (Ex. 6E).

14.     The POA-incorporated 2014 CBA requires that fire fighters, who are *rehired* by the City after a duty disability retirement of over two (2) years, must restart their City seniority at zero.

15.     Arbitrator George Roumell affirmed this clear 2014 CBA language in his May 12, 2021 decision. (Ex. 6D).

16.     Seniority is a variable in the calculus of fire fighters' pension benefit. (Ex. 6E).

17.     Earlier, *pre-bankruptcy* CBAs were more seniority-generous -- and therefore, more pension expensive -- for returning-to-work duty disability retirees, *i.e.*, these earlier *pre-bankruptcy* CBAs permitted duty disability fire fighters to "freeze" their pre-disability retirement seniority service and, for many years, "earn" virtually unlimited seniority even while on duty disability retirement from the City. (Ex. 6D).

18.     Later -- but still *pre-bankruptcy* -- CBAs "capped" the amount of seniority a fire fighter could "earn" while on duty disability retirement. (Ex. 6D).

19. The 2014 CBA changed this generous, costly pension benefit. This change was designed to lower City and PFRS costs.[6]

### C. Plaintiffs' WCCC Suit

20. In July 2020, Plaintiffs -- all current and former fire fighters who took duty disability retirement from the City -- sued the City, several City officials, the DFFA, its current officers, and a former DFFA officer.[7]

21. Some Plaintiffs returned to City employment after their duty disability retirement. Others did not.

22. All Plaintiffs, who returned to work, did so *after* the 2014 CBA's effective date.

23. Plaintiffs were on, or have been on, duty disability retirement from the City for periods between three (3) to seventeen (17) years.[8]

---

[6] The City's PFRS indebtedness, which created significant PFRS underfunding issues, was cited as one of the main reasons for the City's bankruptcy. See, *e.g.*, Docket #13090 pp. 13-15, citing Docket #8272, pp. 35-36.

[7] The 7 Plaintiffs sued 11 Defendants. The Plaintiffs' FAC contains 13 state and federal counts, 254 paragraphs, and seeks $10 million in "damages." (Ex. 6A).

[8] Plaintiffs' duty disability periods were as follows: McGhee (***16 years***); Craig Brown (***4 years***); Norman Brown (***15 years***); Washington (***nearly 4 years***); and Perry (***9 years***); Potts (***15 years***); and Ferguson (***over 17 years***). (See ¶¶56-155).

24.     Two (2) Plaintiffs, who did not return to work, were on disability retirement for fifteen (15) and seventeen (17) years. One took a general retirement after his duty disability (Potts) and the other remains on duty disability (Ferguson).[9]

25.     All Plaintiffs concede -- in their pleadings and their testimony -- that their suit challenges:

   a.  *how* the 2014 CBA was negotiated;

   b.  the 2014 CBA's substantive terms, in particular its seniority and pension terms as they related to duty disability retirements; and

   c.  the City's and DFFA's observance -- current, retroactive, and prospective -- of the 2014 CBA terms regarding seniority and pensions. (*See, e.g*., Ex. 6I).

26.     Plaintiffs claim they were not given the same seniority advantages as fire fighters who took duty disability retirement ***prior to*** the POA and bankruptcy-mediated 2014 CBA, and who later returned to work or took general retirement. (Ex. 6F, p. 3).

27.     This difference in treatment, Plaintiffs contend, has damaged them in the form of lost wages and lower pension benefits upon retirement. (*E.g.*, Ex. 6A, FOC ¶¶ 51, 164, 175).[10]

---

[9] Potts was on a disability retirement for 15 years, but rejected the City's offer to return him to work and "converted his disability retirement to a general retirement." (¶¶136-155). Ferguson has been on duty disability since 2003 -- over 17 years. (¶¶106-125).

[10] Plaintiffs also claim compensatory damages.

28.     Plaintiffs demand that the earliest, *pre-bankruptcy* and most favorable CBA duty disability retirement terms should apply to them -- regardless of the POA, the clear 2014 CBA language or the declared mission of the City bankruptcy.[11] (*E.g.*, Ex. 6G, p. 35).

29.     They are entitled, Plaintiffs claim, to the higher ranks, higher pay, and **increased pensions** that follow a fire fighter's seniority under the pension and seniority terms of the earliest and most generous *pre-bankruptcy* CBAs. (*Id.*).

**D.     Plaintiffs' and Plaintiffs' Counsel Had Notice of Conflict Between Plaintiffs' WCCC Suit and the POA**

30.     Plaintiffs have known about the POA and its injunction terms since at least 2014 (*See, e.g.*, Certificates of Service, Docket #2823 and #9000).

31.     Plaintiffs and their counsel have specifically known -- for some time -- about the conflict between their pension benefits-driven WCCC suit and the POA. (*E.g.*, Ex. 6C).[12]

---

[11] One Plaintiff's case demonstrates Plaintiffs' WCCC suit: Plaintiff Norman Brown, a fire fighter with only 6 years' active duty, suffered a duty disability injury (wrist) in 2003, at 33 years old. Thereafter, he was on duty disability retirement for **15 years** -- until January 2018. While on duty disability, he declined surgery, was never hospitalized, and failed to engage in any physical therapy. (Ex. 6G, N. Brown 10, 108, 127, 129). Now, in his WCCC suit, he seeks **21** years of seniority credit, a higher rank, and the increased pay and **increased pension** that would follow a 21-year City employee (6 years active + **15 years** duty disability retirement).

[12] In addition to Exhibit 6C, a letter, DFFA reiterated this notice in other correspondence.

32. Plaintiffs and their counsel ignored the specific notices of this conflict. (*E.g.*, Ex. 6C).

33. Instead, Plaintiffs and their counsel continue to pursue their WCCC litigation that seeks to compel the City, DFFA, and the PFRS to, among other things, violate the confirmed POA and its dramatic pension settlement terms.

34. As a result, the Movant asks this Court for an Order that:

> (i) bars and permanently enjoins the Plaintiffs from asserting and prosecuting the claims asserted in their WCCC suit;
>
> (ii) requires Plaintiffs to dismiss the WCCC suit *with prejudice*; and
>
> (iii) assesses against Plaintiffs and their counsel damages incurred by the DFFA as a direct result of Plaintiffs' wrongful pursuit of their WCCC suit, in particular because Plaintiffs and their counsel were given specific notice of the conflict between their WCCC suit and the POA.

35. The DFFA anticipates that the City and, perhaps, the PFRS will join with the DFFA in this Motion. (See Docket #13385, p. 4).

## III. JURISDICTION

36. The Court has subject matter jurisdiction over this Chapter 9 bankruptcy case and this contested matter under 28 U.S.C. §1334(b), 157(a) and 157 (b)(1), and Local Rule 83.50(a) (E.D. Mich.).

37. This is a core proceeding under 28 U.S.C. §157(b)(2)(O), because it is a proceeding "affecting…the adjustment of the debtor-creditor…relationship." This

is also a core proceeding "arising in" a case under Title 11, within the meaning of 28 U.S.C. §1334(b).

38.     As this Motion seeks to enforce the confirmed Chapter 9 POA, it is a proceeding "arising in" a case under Title 11. It is a proceeding that "by its very nature, could arise only in bankruptcy cases." *Allard v. Coenen (In re Trans-Indus., Inc.)*, 49 B.R. 21, 27 (Bankr. E.D. Mich. 2009).

39.     The Court retained jurisdiction under the POA to enforce the POA pension injunctions and to resolve any suits that may arise in connection with the consummation, interpretation or enforcement of the POA. POA, Article VII.F, G, I, p. 72.

40.     The City and City officials are included within the definition of Exculpated Parties. POA Article I.A.180, pp. 14-15.

41.     The Bankruptcy Court has the authority to require Plaintiffs to dismiss its WCCC suit.  See, e.g., Docket #13274, p. 29.

## IV.  ARGUMENT

### A. The Issue -- Plaintiffs' WCCC Suit Violates the POA And Its Injunctions

The issue before this Court is whether Plaintiffs' WCCC suit violates the POA and its injunctions. (See Docket #13274, pp. 18-19).[13]

Plaintiffs' WCCC suit seeks to undue the POA's plain terms, and those of the 2014 CBA. It seeks to impose upon the PFRS additional costs that were intentionally reduced in the POA and the 2014 CBA -- a contract negotiated in the extraordinary context of an EM and Bankruptcy Court-ordered mediation.[14]

This Court has addressed and summarily rejected similar post-bankruptcy pension-implicated claims -- also brought in WCCC by aggrieved fire fighters -- that

---

[13] This issue in this case is **not** the fairness of the POA's -- and the POA-incorporated 2014 CBA's -- alteration of pre-2014 seniority and pension benefits for duty disabled retirees.  See Docket #13274, pp. 18-19 ("But any issue about whether the POA's alteration of Respondents' rights was fair or just is not properly before the Court in this contempt proceeding. The issue is whether Respondents violated the POA and its injunction.").

[14] In their WCCC suit, Plaintiffs argue that the City's initial inadvertent application of *pre*-bankruptcy, *pre*-POA, and *pre*-2014 CBA duty disability seniority terms to some Plaintiffs created a "right" for all Plaintiffs.  This is a "right" that removed them, Plaintiffs assert, from the plain terms of the 2014 CBA.  This is a non-starter. For several reasons, Plaintiffs' claims are simply wrong.  No matter. How the City complied with the POA and 2014 CBA -- even belatedly -- is of no moment.  The timing of the City's compliance does not create for Plaintiffs seniority rights and pension rights that conflict with the POA and 2014 CBA.  The only issue before the Court is whether Plaintiffs' WCCC suit violates the POA and its injunctions. (See Docket #13274, pp. 18-19).

sought to avoid the uncomfortable pension-related changes wrought by the POA and the 2014 CBA. (Docket #13274 and #13275.)

In Docket #13274 and #13275, this Court found that plaintiffs' WCCC suit, *Salkowski, et al. v. City of Detroit, the Detroit Police and Fire Pension Board, and Detroit Fire Fighters Association Local 344*, WCCC Case No. 2019-009993-CL (Judge John A. Murphy), was an "effort to avoid" changes in pension benefits that were a function of the POA and the 2014 CBA. As such, this Court found plaintiffs' suit in *Salkowski, et al.* to be in violation of the POA and its injunctions. (Docket #13274 and #13275).

This Court found the *Salkowski* Plaintiffs in civil contempt of this Court "for violating the injunction contained in the confirmed" POA.

Plaintiffs' WCCC suit is not unlike *Salkowski, et al.*

Plaintiffs' WCCC suit here is barred by the heavily-negotiated and binding pension settlement enshrined in the POA -- a settlement that was "[t]he final component" of a significant and difficult negotiation. (Docket #8993, pp. 35-36 (citations omitted)).

Under Section 944(a) of the Bankruptcy Code, the Plaintiffs are bound by the POA and all its applicable terms.

**B.      Plaintiffs' and Plaintiffs' Counsel Liability for Costs and Fees**

The Court may award compensatory damages, including attorneys' fees and costs, when a creditor violates a discharge injunction despite having knowledge or it. *Holley v. Oliver, PLLC*, 473 B.R. 212, 215-216 (Bankr. E.D. Mich. 2012).

For a court to impose compensatory sanctions, it must be shown by clear and convincing evidence that the creditor had knowledge of a definite and specific order yet still violated it. *Id.* at 215.

Once a knowing violation of an order by a creditor has been shown, the burden shifts to the creditor.  To avoid sanctions, the creditor must show that it "took all reasonable steps within [its] power to comply with the court's order."  *Id.* (citation and internal quotation marks omitted).

Here, Plaintiffs and their counsel were timely given notice of the POA and its injunctions' terms, as well as the POA-incorporated 2014 CBA.  Still, they pursued their seniority- and pension-driven WCCC suit.

Plaintiffs and their counsel cannot show that they "took all reasonable steps" when they knowingly filed their FAC despite the POA injunctions. *Holley*, 473 B.R. at 215.  Claiming, as Plaintiffs do, that the 2014 CBA is an "illegal document. . . created pursuant to a conspiracy" to violate Plaintiffs' civil rights prevents the Plaintiffs from arguing an "all reasonable steps" defense.

The undisputed pedigree and origins of the POA-incorporated 2014 CBA impeach any such defense for Plaintiffs.

## V.  CONCLUSION

The DFFA respectfully requests that the Court enter an order, in substantially the same form as attached Exhibit 1, that:

    (i)    bars and permanently enjoins the Plaintiffs from asserting and prosecuting the claims asserted in their WCCC suit;

    (ii)    requires Plaintiffs to dismiss the WCCC suit *with prejudice*; and

    (iii)    assesses against Plaintiffs and their counsel damages incurred by the DFFA as a direct result of Plaintiffs' wrongful pursuit of their WCCC suit, in particular because Plaintiffs and their counsel were given specific notice of the conflict between their WCCC suit and the POA.

/s/ Christopher P. Legghio
Christopher P. Legghio (P27378)
Megan B. Boelstler (P79125)
Legghio & Israel, P.C.
306 S. Washington, Suite 600
Royal Oak, MI 48067
(248) 398-5900
cpl@legghioisrael.com
mbb@legghioisrael.com

August 30, 2021        Attorneys for DFFA

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DISTRICT**

In re:                                        Bankruptcy Case No. 13-53846

City of Detroit, Michigan,                    Judge Thomas J. Tucker

      Debtor.                            Chapter 9

_____/

*EXHIBIT LIST TO:*

**MOTION OF DETROIT FIRE FIGHTERS ASSOCIATION (DFFA)**
**FOR THE ENTRY OF AN ORDER ENFORCING THE PLAN OF**
**ADJUSTMENT AGAINST:**

**CHRISTOPHER MCGHEE**
**NORMAN BROWN**
**CRAIG BROWN**
**JAMES WASHINGTON**
**SHANNON FERGUSON**
**JUNIUS PERRY, AND**
**ORLANDO POTTS**

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| Exhibit 1 | Proposed Order |
| Exhibit 2 | Notice of Opportunity to Object |
| Exhibit 3 | None |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | None |
| Exhibit 6A | WCCC - First Amended Complaint |
| Exhibit 6B | Emergency Manager Order 44 and Exhibit C |
| Exhibit 6C | April 23, 2021 Letter to Plaintiffs' Counsel |
| Exhibit 6D | May 12, 2021 Roumell Opinion and Award, Gr. No. 20-20 |
| Exhibit 6E | CBA Excerpts (duration clause and MOU) |
| Exhibit 6F | Plaintiffs' Initial Disclosures |

1

| | |
|---|---|
| Exhibit 6G | Norman Brown Transcript Excerpts (pgs 10, 35, 108, 127, 129) |
| Exhibit 6H | Orland Potts Transcript Excerpts (p. 62) |
| Exhibit 6I | Norman Brown's and Plaintiff's Counsel's Request for Admissions Response, Excerpt |

# EXHIBIT 1

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DISTRICT

In re:                                   Bankruptcy Case No. 13-53846

City of Detroit, Michigan,               Judge Thomas J. Tucker

    Debtor.                          Chapter 9

_____/


## ORDER GRANTING MOTION OF DETROIT FIRE FIGHTERS ASSOCIATION (DFFA) FOR THE ENTRY OF AN ORDER ENFORCING THE PLAN OF ADJUSTMENT AGAINST:

## CHRISTOPHER MCGHEE
## NORMAN BROWN
## CRAIG BROWN
## JAMES WASHINGTON
## SHANNON FERGUSON
## JUNIUS PERRY, AND
## ORLANDO POTTS


This case is before the Court on the *Motion of Detroit Fire Fighters Association (DFFA) for the Entry of an Order Enforcing the Plan of Adjustment Against: Christopher McGhee, Norman Brown, Craig Brown, James Washington, Shannon Ferguson, Junius Perry, and Orlando Potts*. (Docket #_____), upon proper notice and a hearing, the Court being fully advised in the premises, and there being good cause to grant the relief requested,

1

**THE COURT ORDERS THAT:**

1.      The Motion (Docket #_____) is GRANTED.

2.      Plaintiffs are barred and permanently enjoined from asserting and prosecuting the claims asserted in Plaintiffs' WCCC lawsuit, *Christopher McGhee, et al., v. City of Detroit, et al.*, (WCCC No. 20-006272-CD).

3.      Plaintiffs shall immediately dismiss their WCCC suit, *Christopher McGhee, et al., v. City of Detroit, et al.*, (WCCC No. 20-006272-CD), *with prejudice*; and

4.      Plaintiffs and their counsel shall pay damages incurred by the DFFA as a direct result of Plaintiffs' wrongful pursuit of their WCCC suit.

5.      The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

# EXHIBIT 2

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DISTRICT

In re:

City of Detroit, Michigan,

     Debtor.

_____/

Bankruptcy Case No. 13-53846

Judge Thomas J. Tucker

Chapter 9

## NOTICE OF OPPORTUNITY TO OBJECT TO MOTION OF DETROIT FIRE FIGHTERS ASSOCIATION (DFFA) FOR THE ENTRY OF AN ORDER ENFORCING THE PLAN OF ADJUSTMENT AGAINST: CHRISTOPHER MCGHEE, NORMAN BROWN, CRAIG BROWN, JAMES WASHINGTON, SHANNON FERGUSON, JUNIUS PERRY, AND ORLANDO POTTS

The DFFA has filed papers with the Court requesting the Court to enforce the Plan of Adjustment Against Christopher McGhee, Norman Brown, Craig Brown, James Washington, Shannon Ferguson, Junius Perry, and Orlando Potts.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney.**

If you do not want the Court to enter an Order granting the *Motion of Detroit Fire Fighters Association (DFFA) for the Entry of an Order Enforcing the Plan of Adjustment Against: Christopher McGhee, Norman Brown, Craig Brown, James Washington, Shannon Ferguson, Junius Perry, and Orlando Potts*, within 14 days, you or your attorney must:

1.    File with the court a written response or an answer, explaining your

1

position at:[1]

<div align="center">

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

</div>

If you mail your response to the court for filing, you must mail it early enough

so that the court will **receive** it on or before the date stated above. You must also

mail a copy to:

<div align="center">

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

</div>

2.      If a response or answer is timely filed and served, the clerk will
schedule a hearing on the Motion and you will be served with a notice of the date,
time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that**

**you do not oppose the relief sought in the motion or objection and may enter an**

**order granting that relief.**

<div align="right">

/s/Megan B. Boelstler
Christopher P. Legghio (P27378)
Megan B. Boelstler (P79125)
Legghio & Israel, P.C.
306 S. Washington, Suite 600
Royal Oak, MI 48067
(248) 398-5900
cpl@legghioisrael.com
mbb@legghioisrael.com

</div>

August 30, 2021                    Attorneys for DFFA

---

[1] Response or answer must comply with Fed. R. Civ. P. 8(b), (c) and (e).

## EXHIBIT 3 - NONE

# EXHIBIT 4

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DISTRICT

In re:                                            Bankruptcy Case No. 13-53846

City of Detroit, Michigan,                        Judge Thomas J. Tucker

      Debtor.                                Chapter 9
_____/

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 30, 2021, she served a copy of the foregoing ***Motion of Detroit Fire Fighters Association (DFFA) for the Entry of an Order Enforcing the Plan of Adjustment Against: Christopher Mcghee, Norman Brown, Craig Brown, James Washington, Shannon Ferguson, Junius Perry, and Orlando Potts*** upon counsel for Christopher McGhee, Norman Brown, Craig Brown, James Washington, Shannon Ferguson, Junius Perry, and Orlando Potts, via first class mail and e-mail to the following:

Herbert A. Sanders (P43031)
The Sanders Law Firm PC
Attorneys for Plaintiff
615 Griswold St. Suite 913
Detroit, MI 48226
(313) 932-0099 / (313) 962-0044
haslawpc@gmail.com

Shawndrica N. Simmons (P70608)
Simmons Legal dba The Law Chic
Attorney for Plaintiffs
77 Bagley St
Pontiac, MI 4834 1
(248) 732-7559
simmonslegal@LawChic.com

/s/Christopher P. Legghio
Christopher P. Legghio (P27378)
Megan B. Boelstler (P79125)
Legghio & Israel, P.C.
306 S. Washington, Suite 600
Royal Oak, MI 48067
(248) 398-5900
cpl@legghioisrael.com
mbb@legghioisrael.com

August 30, 2021                                   Attorneys for DFFA

## EXHIBIT 5 - NONE