| | |
|---|---|
| **RISK SHIFTING** | If the funding level is less than 90% (using the fair market value of assets), COLAs will be eliminated (to the extent applicable).<br><br>If the funding level is 90% or lower (using the fair market value of assets and a 3-year look back period), the following corrective actions will be taken in the order listed below, until the PFRS actuaries can state that by virtue of the use of corrective action, and a 6.75% discount rate and return assumption, the funding level is projected to be 100% on a market value basis within the next 5 years:<br><br>1. eliminate COLAs (if applicable);<br>2. use amounts credited to the rate stabilization fund to fund accrued benefits;<br>3. increase employee contributions by 1% per year (6% to 7% for current actives and 8% to 9% for new employees in year 1) for up to 5 years;<br>4. increase employee contributions (active and new employees) by an additional 1% per year;<br>5. increase employee contributions (active and new employees) by an additional 1% per year;<br>6. implement a 1 year COLA fallback;<br>7. implement a second 1 year COLA fallback;<br>8. increase employee contributions by an additional 1% per year; and<br>9. increase City contributions consistent with applicable actuarial principles and PERSIA. |

a) In accordance with the 2014-2019 collective bargaining agreement between the City and the DFFA ("CBA"), the ten percent (10%) cap on annual contributions to the Annuity Savings Account will not apply to payments of accrued sick leave into an Annuity Savings Account made pursuant to Article 24, Section I.8.c of the CBA.

b) Employees in the DFFA bargaining unit will have the option to participate in a one-time irrevocable "roll-in election" with respect to calculation of their frozen accrued benefits under Old PFRS. The purpose of this roll-in election is to give each eligible employee the option to allocate a portion of his or her unused sick pay bank to the employee's Average Final Compensation, which in turn will be used to determine the employee's frozen accrued benefits under Old PFRS as of June 30, 2014. If the employee elects to roll-in a portion of his or her unused sick pay, the employee's Average Final Compensation will include the portion of the employee's sick pay bank determined as of June 30, 2014 that would have been included in the member's Average Final Compensation in accordance with the terms of Old PFRS, as though the employee had retired on June 30, 2014 with 20 or 25 years of service (whichever applied to the employee as of June 30, 2014 under Old PFRS). In the event an employee terminates employment with the City prior to attaining 20 or 25

years of service (whichever applied to the employee as of June 30, 2014 under Old PFRS), the employee's roll-in election will be nullified. If an employee makes a roll-in election, the employee's unused sick leave bank will be reduced by the number of hours included in the employee's Average Final Compensation calculation and the employee may not use those hours for sick leave or receive the value in cash when the employee retires. The form for making a roll-in election will be available to employees on-line, and paper copies of the form will also be made available. An eligible employee wishing to roll-in a portion of his or her unused sick pay must sign the form in the presence of a witness and return the form to the PFRS office no later than November 15, 2014. The one-time roll-in election will have no impact on benefits accrued under New PFRS.

c) For avoidance of doubt, 'eligible to retire under concurrent eligibility requirements' of the Combined Plan means that an Association member with accrued benefits under Old PFRS may retire upon attaining 20 or 25 years of service (whichever requirement applied to the employee as of June 30, 2014 under Old PFRS), regardless of age. This member would immediately receive a frozen pension under Old PFRS. If the member does not meet the age and years of service requirements of the New PFRS, he or she will begin receiving an additional payment (actuarially reduced to reflect early commencement) based on his or her accrued benefit under New PFRS when he or she turns 55. He or she can begin receiving an unreduced normal retirement benefit under New PFRS when he/she reaches age 62.

The age 50 and 25 years of service requirements of New PFRS apply only to New PFRS and are subject to the 7 year transition period set forth above. The transition applies to New PFRS benefits as set forth below:

1. Under the transition, after July 1, 2014, an Association member who reaches 20 years of service and age 43 on or before June 30, 2015 can retire anytime after reaching 20 years of service and age 43, and he or she will immediately receive an unreduced accrued New PFRS benefit.

2. Beginning on July 1, 2015, an Association member who reaches 20 years of service and age 43 on or before June 30, 2016 can retire anytime after reaching 20 years of service and age 43, and he or she will immediately receive an unreduced accrued New PFRS benefit.

3. After June 30, 2020, an Association member must be at least 50 years old with 25 years of service to retire and immediately receive his or her unreduced accrued New PFRS benefit.

5

An Association member who does not meet these New PFRS requirements will not begin receiving his or her unreduced accrued New PFRS benefit until the Association member reaches age 62 and has been credited with 10 years of service. An Association member with 10 years of service may elect to retire at age 55 with an actuarially reduced benefit.

d) Section 1.4 (Board of Trustees – Membership; Appointment) of the New PFRS and Article III, Section 2 of the Old PFRS (Membership of Board) shall not be modified during the term of the CBA.

e) The City will remit to the New PFRS all contributions withheld from employees' pay checks.

The City shall promptly transfer these employees' contributions to the new PFRS, but in no event shall such City transfers be made later than the 15th day of the month following the month of the pay dates when the employees' contributions are withheld by the City (hereinafter "Contribution Due Date"). (By way of illustration and example only, the City must transfer to the New PFRS by no later than February 15 all of the employees' contributions withheld on the pay dates of the immediately preceding January.)

If the City does not transfer the employees' withheld contributions to the New PFRS by the Contribution Due Date, these contributions shall be deemed delinquent contributions (hereinafter "Delinquent Contributions"). The City shall be liable to the New PFRS in the amount of the Delinquent Contributions and any Lost Earnings ("Lost Earnings") on the Delinquent Contributions, which would have been earned on the employees' contributions, had the City timely made the transfer of these employees' contributions.

Notwithstanding the above, the City shall be liable for Lost Earnings in an amount not less than the applicable corporate underpayment rate(s), effective during the delinquency, established under Section 6621(a)(2) of the Internal Revenue Code.

B. Reservation of Rights by City. This Memorandum of Understanding shall in no way be construed to interfere with, or add additional requirements with respect to, the City's rights to modify the terms of any pension plan document currently in effect, or that may be in effect during the term of this Memorandum of Understanding, including but not limited to the Combined Plan; provided, however, that the City shall not modify the terms of the applicable pension plan(s), in any manner that conflicts with those terms set forth in Section A above, unless the City is ordered to do so by the Bankruptcy Court in the plan of adjustment dated August 20, 2014 (as it may be amended, modified or supplemented, "Plan of Adjustment") in the case *In re: City of Detroit*, Case No. 13-53846 or as set forth in Section D below.

6

C. <u>Compliance with Plan of Adjustment</u>. The terms of this Memorandum of Understanding are subject to confirmation of the Plan of Adjustment and may be modified therein to achieve confirmation of the Plan of Adjustment. Any proposed modification to the Plan of Adjustment is subject to the rights of the DFFA to object to same. During the term of this Memorandum of Understanding, the City shall not make any modifications to the terms of the Combined Plan that are contrary to the terms of the Plan of Adjustment as confirmed by the Bankruptcy Court.

D. <u>Compliance with Public Act 183</u>. Notwithstanding any provision of this Memorandum of Understanding that can be construed to the contrary, this Memorandum of Understanding will not be construed to require the City to fall out of compliance with the requirements of Public Act 183, House Bill 5568 ("<u>PA 183</u>"). In the event that the City determines that it has fallen out of compliance with, or is reasonably likely to fall out of compliance with PA 183, the City will provide written notice to the Association, and offer to meet and confer with the Association for a period not longer than thirty (30) days to discuss potential modifications to the terms of the Memorandum of Understanding in order to comply with the requirements of PA 183. To the extent that the City and the Association are unable to reach an agreement within thirty (30) days, the City may make any necessary modifications to ensure compliance with PA 183.

E. <u>Duration</u>. This Memorandum of Understanding will become effective upon approval by the Mayor of the City of Detroit and the Treasurer of the State of Michigan and shall remain in effect until December 31, 2023. The City and the Association hereby agree to waive any and all collective bargaining rights with respect to pension benefits, including but not limited to benefits provided under, and any other issues relating to, the Combined Plan (the "<u>Waived Issues</u>") from the date that this Memorandum of Understanding is executed through December 31, 2023. The parties acknowledge that they are enjoined from collective bargaining regarding the Waived Issues through June 30, 2023 and further agree to waive any right to raise any of the Waived Issues in any Act 312 arbitration proceeding. The City and the Association agree that they may engage in collective bargaining regarding the Waived Issues beginning June 30, 2023, but that no modifications may be made with respect to any Waived Issue until after December 31, 2023.

F. <u>Grievance and Arbitration</u>: Any dispute pertaining to the provision of benefits pursuant to this Memorandum of Understanding shall be subject to the grievance and arbitration procedures set forth in Articles 8 and 9 of the CBA or any comparable provision set forth in a successor collective bargaining agreement entered into between the City and the DFFA.

G. In resolving any dispute pertaining to provision of benefits pursuant to this Memorandum of Understanding, the Arbitrator shall be bound by the terms of this Memorandum of Understanding, the Combined Plan, and the Plan of Adjustment, and shall have no authority to issue any award or order that is contrary to the terms of these documents.

7

IN WITNESS WHEREOF, the parties hereto have affixed their signatures below:

Dated this 6 day of November 2014.

DETROIT FIRE FIGHTERS ASSOCIATION:

_____
Jeffrey Pegg, President

_____
Teresa Singleton, Vice President

_____
Martin McClung, Secretary

_____
Robert Shinske, Treasurer

CITY OF DETROIT:

_____
Michael E. Duggan, Mayor

_____
Michael A. Hall, Director of Labor Relations

_____
Edsel Jenkins, Executive Fire Commissioner

_____
Office of the State Treasurer, Michigan

_____
Kevyn Orr, Emergency Manager

8