UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------- x
: 
In re : Chapter 9
: 
CITY OF DETROIT, MICHIGAN, : Case No. 13-53846
: 
Debtor. : Judge Thomas J. Tucker
---------------------------------------------- x

**CITY OF DETROIT'S REPLY IN SUPORT OF THE
MOTION OF DETROIT FIRE FIGHTERS ASSOCIATION (DFFA)
FOR THE ENTRY OF AN ORDER ENFORCING THE PLAN
OF ADJUSTMENT AGAINST: CHRISTOPHER MCGHEE, NORMAN
BROWN, CRAIG BROWN, JAMES WASHINGTON, SHANNON
FERGUSON, JUNIUS PERRY, AND ORLANDO POTTS**

The City of Detroit, by and through its undersigned counsel, submits its reply in support of the *Motion of Detroit Fire Fighters Association (DFFA) for the Entry of an Order Enforcing the Plan of Adjustment Against: Christopher McGhee, Norman Brown, Craig Brown, James Washington, Shannon Ferguson, Junius Perry, and Orlando Potts* (collectively, the "Plaintiffs") [Doc. No. 13430] ("Motion").

The Plaintiffs' sole argument for asserting that they are not "preempted from pursuing their cause of action" is that they "could not have ascertained through the exercise of reasonable due diligence that they had a claim at the time the petition for bankruptcy was filed." Response, Doc. No. 13455, p. 32. This argument ignores, however, the plain language of the plan injunction, which enjoins their lawsuit

regardless of whether the Plaintiffs ascertained that they had a claim when the City filed for bankruptcy. Accordingly, this Court should order the dismissal with prejudice of the lawsuit and find the Plaintiffs in civil contempt.

**I.     The Lawsuit Should Be Dismissed with Prejudice Because It Violates the POA**

In their state court lawsuit, the Plaintiffs seek to avoid the limitations on duty disability seniority that are contained in the Master Agreement between the City of Detroit and the Detroit Fire Fighters Association 2014-2019 ("Master Agreement") and the amended and restated Combined Plan for the Police and Fire Retirement System of the City of Detroit ("New PFRS Plan").[1] As explained in an arbitration decision dated May 12, 2021 ("Arbitration Decision"), these limitations are set forth in Article 12 of the Master Agreement and Article 5 of the New PFRS Plan. Motion, Exhibit 6D, Arbitration Decision, pp. 8-11. Additionally, Appendix A to the New PFRS Plan provides that the "Board of Trustees shall administer the Retirement System consistent with the pension provisions of the 2014-2019 collective bargaining agreement between the City of Detroit and the Detroit Firefighters Association." Doc. No. 13090-1, p. 179 of 179. Yet, the Plaintiffs seek to rewrite

---

[1] The New PFRS Plan can be found at docket number 13090-1, p. 14 of 179. The provisions of the Master Agreement referenced in this reply were attached as Exhibit 6E to the Motion and Exhibit 2 to the Response.

- 2 -
38284151.4/022765.00213
13-53846-tjt    Doc 13467    Filed 10/28/21    Entered 10/28/21 17:19:24    Page 2 of 14

the Master Agreement and thereby change the pension provisions of the New PFRS Plan.

Both the Master Agreement and the New PFRS Plan were incorporated into the City's bankruptcy plan, however, and thus the Plaintiffs are enjoined from pursuing their lawsuit pursuant to the injunction in the City's bankruptcy plan.

In an opinion dated April 6, 2020 ("April 2020 Opinion"), this Court issued its ruling on a similar motion filed by the City to enforce its bankruptcy plan and the terms of the New PFRS Plan against three fire fighters that filed a state court lawsuit against the City. *In re City of Detroit, Michigan*, 614 B.R. 255, 260-61 (Bankr. E.D. Mich. 2020). In that case, the firefighters sought to avoid the limitations on the DROP program that were contained in the New PFRS Plan. Here, the Plaintiffs seek to avoid the limitations on duty disability seniority that are contained in the Master Agreement and the New PFRS Plan. The analysis of the City's bankruptcy plan, the New PFRS Plan, and the injunction in the City's bankruptcy plan is largely the same with respect to Plaintiffs as it was for the three fighters subject to the April 2020 Opinion.

As the Court explained in its April 2020 Opinion,

> The plan of adjustment in this Chapter 9 bankruptcy case was confirmed on November 12, 2014. It consists of the "Eighth Amended Plan for the Adjustment of Debts for the City of Detroit," and all of its exhibits, filed October 22, 2014 (the "Plan"), and the "Order Confirming Eighth Amended Plan for the Adjustment of Debts for the City of Detroit," filed November 12, 2014 (the "Confirmation

- 3 -

Order"). (The Plan and the Confirmation Order are collectively referred to as the "POA."). The POA became effective on December 10, 2014.

**B. The amendment of the PFRS Plan under the POA**

One of the many effects of the POA was to change the City's pension plan applicable to its fire fighters. That pension plan is called the "Combined Plan for the Police and Fire Retirement System of the City of Detroit, Michigan" (the "PFRS Plan"). As part of the POA, the PFRS Plan that was in effect before confirmation of the City's POA (the "Old PFRS Plan") was amended and restated, effective July 1, 2014. Although the amended and restated PFRS Plan (the "New PFRS Plan") was stated to be effective July 1, 2014, it did not actually come into effect until the Effective Date of the City's POA — *i.e.*, December 10, 2014. As the City points out, the New PFRS Plan was actually defined to be part of the City's proposed Plan, which was later confirmed and became part of the POA.

The New PFRS Plan came into being, after confirmation of the City's POA, by virtue of Order No. 44 issued by the City's Emergency Manager, Kevin D. Orr. That Emergency Manager Order was entitled "Emergency Manager[,] City of Detroit, Order No. 44[,] Final Emergency Manager Order" ("EM Order No. 44"), and it was signed by the Emergency Manager on December 8, 2014, in contemplation of the upcoming Effective Date of the confirmed POA.

[…]

The City's adoption of the New PFRS Plan took effect on December 10, 2014, when the confirmed POA became effective.

*City of Detroit, Mich.*, 614 B.R. at 260-61 (footnotes omitted, alterations in original).[2]

---

[2] Emergency Manager Order No. 44 was attached to the Motion as Exhibit 6B at docket number 13430-1. The Master Agreement is identified in Emergency Manager Order No. 44 at p. 54 of 56 of docket number 13430-1.

As this Court also explained in the April 2020 Opinion, the New PFRS Plan was defined to be part of the POA.

> The Plan defined the "Plan" to mean "this plan of adjustment and all Exhibits attached hereto or referenced herein, as the same may be amended, restated, supplemented, or otherwise modified." The word "Exhibits," in turn, is defined to mean "the documents listed on the 'Table of Exhibits' included herein ...," and that Table of Exhibits includes Exhibit I.A.254.a, entitled "Form of New PFRS Active Pension Plan" and Exhibit I.A.254.b, entitled "Principal Terms of New PFRS Active Pension Plan." These two exhibits were attached to the Plan when it was filed on October 22, 2014. The first of these exhibits, Exhibit I.A.254.a, is entitled "Combined Plan for the Police and Fire Retirement System of the City of Detroit, Michigan[,] Amendment and Restatement Effective July 1, 2014." That exhibit is in substance the same as the New PFRS Plan discussed in Parts III.B and III.C of this Opinion, with the new five-year limitation for participation in the DROP Program.
>
> The Confirmation Order expressly confirmed the "Plan," as that term is defined in the Plan.

*Id.* at 266–67 (footnotes omitted, alterations in original).[3] Similarly, the Master Agreement provided that it was incorporated into and became a part of both the plan of adjustment and order confirming plan of adjustment. Motion, Exhibit 6E, Master Agreement, Doc. No. 13430-3, p. 3.

And, because the New PFRS Plan and Master Agreement were defined to be part of the POA, the injunction in the POA applies to lawsuits which seek to avoid the terms of the Master Agreement and the New PFRS Plan. As this Court found,

---

[3] In this instance the "five-year limitation for participation in the DROP program" is the limitation on seniority for duty disability.

the injunction provision in the POA is "very broad" and provides, in pertinent part,

> 5. Injunction.
>
> On the Effective Date, except as otherwise provided herein or in the Confirmation Order,
>
>> a. **all Entities that have been, are or may be holders of Claims against the City,** Indirect 36th District Court Claims or Indirect Employee Indemnity Claims, along with their Related Entities, **shall be permanently enjoined from taking any of the following actions against or affecting the City or its property,** DIA Corp. or its property, the DIA Assets, the Released Parties or their respective property and the Related Entities of each of the foregoing, with respect to such claims (other than actions brought to enforce any rights or obligations under the Plan and appeals, if any, from the Confirmation Order):
>>
>>> 1. **commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the City or its property** (including (A) all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice, (B) Indirect 36th District Court Claims and (C) Indirect Employee Indemnity Claims);
>>>
>>> ....
>>>
>>> 5. **proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan** or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and
>>>
>>> 6. **taking any actions to interfere with the implementation or consummation of the Plan.**

*Id.* at 266 (bold face in original).

The term "Claims" used in the first sentence of the injunction provision is defined by the POA to mean "a claim, as defined in section 101(5) of the Bankruptcy Code against the City." POA, p. 6. Section 101(5) of the Bankruptcy Code defines "claim" to mean

> **(A)** right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> **(B)** right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

As this Court has held, "Congress intended by this language to adopt the broadest available definition of claim." *In re City of Detroit, Michigan,* 548 B.R. 748, 761 (Bankr. E.D. Mich. 2016) (internal citations and quotations omitted).

The injunction in the Plan bars the lawsuit filed by the Plaintiffs.

First, the Plaintiffs "have been, are or may be holders of Claims against the City" as of the effective date of the POA because each was on duty disability prior to the City's bankruptcy filing and each is asserting that the changes to seniority duty disability implemented under the New PFRS Plan and Master Agreement are invalid. Motion, Exhibit 6A, Plaintiffs' First Amended Complaint (Plaintiff McGhee, ¶¶ 58-59; Plaintiff N. Brown, ¶¶ 66-67; Plaintiff C. Brown, ¶¶ 86-87; Plaintiff Washington,

¶¶ 98-99; Plaintiff Ferguson, ¶¶ 108-109; Plaintiff Perry, ¶¶ 128-129; Plaintiff Potts, ¶¶ 138-139).[4]

Second, the Master Agreement and the New PFRS Plan were incorporated into the POA.

Third, the change to duty disability seniority applies to each of the Plaintiffs because they took duty disability retirements prior to the City's bankruptcy filing. *Id.* Because each Plaintiff sought to return from duty disability after December 10, 2014, the new limitations on duty disability seniority which were contained in the Master Agreement and the New PFRS Plan applied to each of them. Thus, under the POA, each of the Plaintiffs is subject to the limitations on duty disability seniority in the Master Agreement and the New PFRS Plan.

Fourth, the Plaintiffs' state court lawsuit is an effort to avoid the limitations on duty disability seniority, therefore is inconsistent with the POA, and thus violated the injunction in the POA.

---

[4] The case cited by the Plaintiffs–*O'Loghlin*–dealt with a different issue than the one before this Court. There, the issue was whether a creditor's claim was discharged by the plan of adjustment at issue in that case. Response, pp. 33-34. Here, the issue is whether the Plaintiffs' lawsuit is enjoined by the specific injunctive provisions in the POA (which it is). Plaintiffs also misconstrue the paragraph in the confirmation order to which they cite on p. 35 of their Response. That paragraph does not permit the Plaintiffs to file a lawsuit to avoid the limitations on duty disability seniority established by the POA. If the Plaintiffs' logic were correct, the POA and all of its exhibits could be challenged in state court so long as the lawsuit was commenced after the effective date of the Plan.

Consequently, the Plaintiffs each violated the parts of the injunction that enjoined them from "commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the City or its property"; from "proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan"; and from "taking any actions to interfere with the implementation or consummation of the Plan." The City respectfully requests that this Court order the Plaintiffs to dismiss their state court lawsuit with prejudice.

## II. Plaintiffs' Other Arguments Lack Merit

The Plaintiffs make a few other assertions that neither excuse their violation of the injunction nor happen to be true.

First, the Plaintiffs assert that City and the DFFA conspired to ignore the statute of limitations. Response, p. 9, ¶¶ 116-18. This is false. To begin with, in the City's experience, arbitrators are generally reluctant to dismiss grievances on procedural grounds. And, there are specific circumstances that an arbitrator would evaluate before he or she would even consider dismissing on timeliness, including but not limited to, whether the defense of timeliness was raised at the first opportunity and when the union or union member found out about the alleged violation. Here, the Plaintiffs have not shown that the DFFA was aware of the improper application of seniority prior to the point when the DFFA initiated

discussions on this issue with the City. An arbitrator likely would have found that holding those discussions with the City in an attempt to rectify the issue would have tolled the statute the limitations. Finally, even if the City denies a grievance as untimely, there will still be an arbitration held to determine if denial based on timeliness was proper.

Second, the Plaintiffs falsely assert that the City has "failed to consistently apply" the Master Agreement and the New PFRS Plan. Response, p. 1. After the DFFA brought the improper application of the seniority provisions to the City's attention, the City agreed to adjust the seniority so that it would be applied in accordance with the New PFRS Plan. Although Plaintiffs continue to claim that the City has not uniformly applied the seniority duty disability provisions in the Master Agreement and New PFRS Plan and have conducted discovery in the state court lawsuit on this point, they have not identified any specific examples or individuals.

### III. The Elements of Civil Contempt Are Established in This Case

The Plaintiffs should be held in civil contempt. The April 2020 Opinion identified the requirements for a finding of civil contempt:

> the elements that must be proven for a court to find a party in civil contempt are that (1) the party violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts; (2) the party did so with knowledge of the court's order; and (3) there is no fair ground of doubt as to whether the order barred the party's conduct—*i.e.*, no objectively reasonable basis for concluding that the party's conduct might be lawful. And at least as to

38284151.4/022765.00213

13-53846-tjt    Doc 13467    Filed 10/28/21    Entered 10/28/21 17:19:24    Page 10 of 14

the first two of these elements, the moving party must prove them by clear and convincing evidence.

*City of Detroit, Mich.*, 614 B.R. at 265–66.

All three elements are satisfied. First, as explained above, the Plaintiffs violated the injunction provision in the POA through the filing and continued prosecution of the lawsuit. Second, by letter dated April 23, 2021, the DFFA's counsel informed the Plaintiffs' counsel that the "Plaintiffs' claims raise issues within the exclusive jurisdiction of the Bankruptcy Court, *i.e.,* that they are contrary to the Bankruptcy Court's approved Plan of Adjustment ('POA')." Motion, Exhibit 6C. Yet, the Plaintiffs have not dismissed the lawsuit. Finally, there is no fair ground of doubt as to whether the POA bars the Plaintiffs' conduct. Indeed, the Plaintiffs never assert that the claims in their lawsuit are consistent with the seniority duty disability limitations. Instead, they take the position that the lawsuit is proper because they brought it years after the effective date. As such, there is no fair ground of doubt as to whether the POA injunction barred the Plaintiffs' conduct. There is no objectively reasonable basis for concluding that the Plaintiffs' conduct "might be lawful" and not barred by the POA injunction. If the Plaintiffs or their attorney interpreted the POA and its injunction otherwise, that was based on "an objectively unreasonable understanding of" the POA. Consequently, this Court should hold the Plaintiffs in civil contempt.

October 28, 2021                    Respectfully submitted,

                                    MILLER, CANFIELD, PADDOCK AND
                                    STONE, P.L.C.

                                    By: /s/ Marc N. Swanson
                                        Marc N. Swanson (P71149)
                                        150 West Jefferson, Suite 2500
                                        Detroit, Michigan 48226
                                        Telephone: (313) 496-7591
                                        Facsimile: (313) 496-8451
                                        swansonm@millercanfield.com

                                    ATTORNEYS FOR THE CITY OF DETROIT

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

---------------------------------------------- x
: 
In re : Chapter 9
: 
CITY OF DETROIT, MICHIGAN, : Case No. 13-53846
: 
Debtor. : Judge Thomas J. Tucker
---------------------------------------------- x

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 28, 2021, he filed the foregoing *City of Detroit's Reply in Support of the Motion of Detroit Fire Fighters Association (DFFA) for the Entry of an Order Enforcing the Plan of Adjustment Against: Christopher McGhee, Norman Brown, Craig Brown, James Washington, Shannon Ferguson, Junius Perry, and Orlando Potts* with the Court, using the Court's ECF system, which will provide notice of the filing to all registered participants in this case and also served the same document upon the following parties in the manner indicated:

*Via Email:*

| | |
|---|---|
| Herbert A. Sanders<br>haslawpc@gmail.com | Shawndrica N. Simmons<br>simmonslegal@LawChic.com |
| Christopher P. Legghio<br>mbb@legghioisrael.com | |

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

October 28, 2021