# EXHIBIT 1

**A They're allowing it.**
Q They're allowing it. Okay. Anything else? Anything else?
**A No.**
Q Okay. On page 29 of Exhibit 1, Paragraph 223, Paragraph 223, can you read that to yourself.
**A It hasn't come up yet.**
MR. McFARLANE: Oh, my apologies. I forgot I have to share.
**THE WITNESS: You said 223?**
MR. LEGGHIO: Yes.
**THE WITNESS: Okay.**
Q (BY MR. LEGGHIO) Now, I'm going to read part of that paragraph into the record, and ask you a question.
You say, Defendants committed per se wrongful acts and/or lawful acts with malice without justification for the purpose of invading the business relationship, your business relationship.
Now, do you have any facts to support a claim that the Union or the Union Officers that you've sued have acted with malice in the handling of this matter for you, any facts at all that they acted with malice.
MR. SANDERS: Objection, form. You can answer.
**THE WITNESS: The fact that they said they don't represent me.**
Q (BY MR. LEGGHIO) Okay. Anything else?

**A No.**
Q Okay. Just the mere statement that they say they don't represent you, that is what you claim is malice. Is there -- anything else in that statement that made you believe it was malice?
**A You faded out at the end.**
Q Do you have anything else that was made, any statement made in that conversation, other than your statement that they said they don't represent you, that you claim is evidence of malice?
**A You're referring to the conversation with Ms. Day, right?**
Q That's what you were referring to, right; you said that's the fact, for you, of malice, when they said they don't represent you, am I correct?
**A Yes.**
Q Okay. Anything else that was said, then or at any other time, that supports your claim that the Union and the Union Defendants have acted with malice with regard to their treatment of this matter?
**A No.**
Q If you could turn to page 34 of your Complaint, and look at Paragraphs 241 and, I mean, 251 and 252, and read those to yourself.
**A Okay.**
Q Now, I'm asking again on behalf of the Union and the Union

Officers. Do you have any facts to support your claim that the Union and the Union Officers conspired to engage in a civil conspiracy against you? Any facts at all that support a claim that the Union and the City were conspiring against you?
**A The City couldn't be allowed to do what they've done without the Union allowing it.**
Q Okay. Well, that's an assumption, that's not a fact.
MR. SANDERS: Object to form.
Q (BY MR. LEGGHIO) Just tell me what -- if you're --
MR. SANDERS: That is an assumption; that's argumentative.
Q (BY MR. LEGGHIO) If you're drawing a conclusion, Mr. Ferguson, that's fine, but I want to know if you have any facts to support your claim that they engaged in a conspiracy?
**A I'm not privy to documentation or specific conversations that may go back and forth between the City and the Union, but the City can't do what the Union doesn't allow them to do. So if there's a policy that's been implemented, or something that's been breached, it's because the Union hasn't, you know, hasn't stood up for it, and checked the City, if you will.**
Q Okay. Do you have any documents to support the notion that they conspired, that the City and the Union, and the Union Defendants conspired against you?

**A They have a working relationship. I don't have documents, but again, the City can't do certain things without the Union signing off or allowing it, or permitting it to happen, if you will.**
Q Do you have anyone who told you that the City and the Union, and the Union Defendants are conspiring against you in your claims?
**A No.**
Q Now, you claim in all of your counts in this lawsuit, that you have suffered a loss of seniority, loss of earnings, loss of earning capacity, past and future lost earnings, the value of fringe and pension benefits. Those are your losses.
Let me ask you this: You are asking the Court in this case to, among other things, to give you, or restore you what you believe are increased pension benefits, am I correct?
**A Among other things, yes.**
Q Okay. So I mean, the theory being that if you prevail, that you will have a pension as calculated based on the seniority that is all years you were employed by the City, as well as the years you were off, and based on any higher rank you would have gotten; that's part of your claim, isn't it?
**A Yes.**
Q Okay. You also claim you suffered mental and emotional distress, embarrassment, humiliation, anxiety about future, about the future, and damage to your good name and

**seniority up to 25 years, before my 25th anniversary.**
Q Okay. Ronald Foster, is he an officer of the Union?
**A He was. He's retired now.**
Q When did he tell you this?
**A I don't know. Maybe 2013, '14, something like that.**
Q Okay. What was his position with the Union?
**A He was a seventh battalion director.**
Q That's not a Union position.
**A Well, okay.**
Q I mean, was there a Union officer who made some representations to you?
**A I don't know what his position was. He worked for the Union. This is what he told me.**
Q Okay. And he told you that you were entitled -- in 2013, 2014, you were already on disability, weren't you?
**A That's correct.**
Q And are you telling me that at that point he told you that -- and you were in California from my -- from the notes I've got.
He told you that you were going to -- entitled to come back to work with your

seniority as it was as if you had never left?
**A That's correct.**
Q Okay. Now, when you were off of work in 2014 and 2015, you were not relying on the Union to be off of work. You were off of work because you were disabled; correct?
MR. SANDERS: Objection, form, foundation, mischaracterization of the witness' previous testimony.
You can answer.
**THE WITNESS: I was off because the department doctor placed me off.**
BY MR. LEGGHIO:
Q Yeah, I understand that. I mean, I'm not quibbling with you, Mr. McGhee. I just want to make sure we're clear.
You're claiming that you took actions based on your reliance on certain things. But the fact of the matter is, you would agree, wouldn't you, that all the time you were off, you were only off because you were disabled; not because someone promised you seniority when you returned or anything else.
You were disabled, and you were off because you couldn't do the work?

MR. SANDERS: Objection, mischaracterization of the witness' prior testimony.
MR. LEGGHIO: Well, then clear it up.
BY MR. LEGGHIO:
Q Were you ever off work when you were not disabled?
MR. SANDERS: Objection, form, foundation.
He's already answered that.
MR. LEGGHIO: I don't think he has. But go ahead, Mr. McGhee.
**THE WITNESS: No.**
BY MR. LEGGHIO:
Q Okay. So in paragraph 191 on page 23 of the Complaint, I'm going to read it into the record:
"Defendants' promises were clear, definite, and unequivocal and were specifically made to induce plaintiff to render the contemplated services and actions for the stated period for defendants' benefit."
When you say "defendants

promises," I want you to focus, for my purposes, on the Union. Are you saying that the Union promised you clearly, definitely, and unequivocally that you would return from Union disability with the seniority intact at the time as stated in 1992? Is that what you're claiming?
**A I don't understand the question. But I'm going by the contract I was hired under. That's what the contract I was hired under said.**
Q You pled to the court that:
"The defendants' promises promised you that you were going to get the seniority that you were entitled to under the 1992 contract if you went on duty disability; that their promises were clear, definite, and unequivocal."
Do you see that in paragraph 191?
**A Yes.**
Q So you claim the Union told you clearly, definitely, and unequivocally that whatever your seniority rights were under the 1992 contract when you were signed, you would carry

Page 90

those with you forward for any time of duty disability while you were employed?
**A A member of the Union, Ronald Foster, told me that.**
Q Okay.
**A But the paragraph, itself, states that.**
Q I'm sorry, what states that?
**A The contract that I was hired under in 1992.**
Q You're referring to the 1992 Collective Bargaining Agreement?
**A That's correct.**
Q Okay. Anything else?
**A Not that I can think of right now, sir.**
Q Okay. Can you turn to page 26 of Exhibit Number 1, which is DFFA0027.
And when you get there, will you read paragraph 202 to yourself?
**A (Witness reviewing document.) Yup, got it.**
Q Now, just for chronology purposes, can I --
MR. LEGGHIO: Megan, can I get the witness' face on the screen here?
BY MR. LEGGHIO:
Q Just for chronology purposes, Mr. McGhee, when you came back to work in 2016 your seniority was -- the demotion occurred in 2019; am I

Page 91

correct?
**A I thought it was '20. Might have been '19, yeah.**
Q 2020 -- no, it's 2019.
Now, what I want to understand is since you returned to work in 2016 have you ever been disabled?
MR. SANDERS: Objection to the form, but you can answer.
**THE WITNESS: I'm injured right now.**
BY MR. LEGGHIO:
Q I'm not talking about injuries. I'm talking about disabilities. Are you disabled?
MR. SANDERS: That's why I objected to the form. That has a particular legal connotation. I don't know if this witness knows exactly what it is.
BY MR. LEGGHIO:
Q I'll flush it out for him. Since you returned to work since 2016 have you gone on disability duty retirement from the City of Detroit at any time?
**A No.**
Q You've gone on days, but you've not gone on

Page 92

duty disability retirement since 2016?
**A Correct.**
Q Okay. Are you on J's currently?
**A Yes.**
Q How long have you been on J's?
**A Since October 31st.**
Q Of 2020?
**A Yes.**
Q And what are you on J's for?
**A I've got a bad ankle.**
Q So you have been off of work since October through June. That's eight months?
**A Yes.**
Q Okay. But you're not collecting duty disability?
**A No.**
Q Okay. Paragraph 202 of Exhibit 1 says that:
"Defendants discriminated against plaintiff and harassed them by subjecting them to humiliation and discrimination to which other workers were not subject, all because of their disability or former disabilities."
So before we get to that, have

Page 93

you applied for duty disability retirement as a result of your ankle injury?
**A I have not.**
Q Tell me what facts you have that the Union discriminated against you and harassed you by subjecting you to humiliation and discrimination to which other workers were not subject because you were disabled.
How has the Union harassed you?
**A By filing a grievance that got me demoted.**
Q Okay. So your term of the word "harassment" refers to the Union filing a grievance challenging how the City warranted seniority for people that returned from duty disability?
**A No, that's not what I said. They filed a grievance that got me demoted.**
Q Well, that's what I just said. You used the word "harassment." Is that what you claim is harassment, that when the Union filed a grievance that resulted in your demotion, that was harassment?
MR. SANDERS: Objection, form, foundation.
He answered the question. He's answered that question.

Page 60

A Correct.
Q Do you have any facts to support the notion that the Union denied you an opportunity to, quote, "present your side of the story?"
A Repeat.
Q Do you have any facts to support the notion that the Union prevented you from presenting, quote, "your side of the story?"
A I did not have a hearing or a time to be heard, but no, I have no facts.
Q In other words, the City didn't say to you, you can come on down and present your side of the story? You don't have facts to suggest that the Union said no, no, we're going to interfere with that. You're not going to be able to do that? The Union didn't obstruct you in any way in presenting your position, did they?
A No.
MR. SANDERS: Objection, form.
Q (By Mr. Legghio) Turn to 0035, Mr. Potts. If you could focus your attention on Paragraph 251 and 252. Read those to yourself and then when you finish, please let me know.
A Okay.
Q All right. In 251, you allege that the Union and its officers engaged in a civil conspiracy. Do you mean a conspiracy that involved just the Union or do you mean a conspiracy between the Union, its officers and someone with the City?

Page 61

A The Union and the City.
Q Okay, and what facts do you have to support the notion that the Union and the City engaged in a civil conspiracy against you?
A I don't have any facts.
Q You say in Paragraph 252 that:
"The facts as delineated above reveal that that there was a concerted action by the Defendants," the Union's I'm asking about, "to accomplish a criminal or unlawful purpose or a lawful purpose by criminal or unlawful means."
What facts do you have that the Union engaged in concerted action to accomplish a criminal act?
A I do not have any facts.
Q Do you have any notion of what criminal act you're referring to in this paragraph of the Complaint?
A No, I don't.
Q Do you have any facts to support the claim that the Union engaged in concerted action for a lawful purpose by criminal or unlawful means, that they were going to do something lawful, but they were going to do it in a criminal way. Do you have any facts to support that notion?

Page 62

A No facts.
Q Count XIII, you ask for relief in Paragraph 254 of the First Amended Complaint and, among other things, I want to make sure we're clear, that you ask the Court to give you, restore the seniority that existed before you went on duty disability, to award you 15 years of seniority while you were on duty disability, and to increase your pension benefits based on the new calculations of your seniority. That's one of the things you want from the Court. Am I correct on that?
A Yes.
Q Now, I'm going to direct your attention —
MR. LEGGHIO: Mr. Sanders, we're going to be working off of the second batch of exhibits, Volume 2, and in particular, I'm going to go to Exhibit 25.
MR. SANDERS: How much more time do you anticipate?
MR. LEGGHIO: I am going to be here for a little bit. Do you want to break here?
MR. SANDERS: Okay. I thought we were near wrapping this up.
MR. LEGGHIO: We can break here for a half hour, 40 minutes if you want?
MR. SANDERS: All right. Why don't we do that.

Page 63

MR. LEGGHIO: Okay. Return back at 12:30?
MR. SANDERS: That's fine.
MR. LEGGHIO: Okay. Thank you.
(At 11:46 a.m., recess taken)
MR. LEGGHIO: Okay.
(At 12:32 p.m., back on the record)
Q (By Mr. Legghio) I am going to start with page 0627. Mr. Potts, I just want to make sure that given your testimony today that I'm not misunderstanding anything, so these are your responses to the Request for Admissions that were filed with you and I'm going to take you through a couple of them and I want you to first look on page 0627, number 2, and I am going to read it into the record.
"Potts did not file a grievance regarding the matters alleged in the Complaint."
Your response was:
"Neither admits nor deny at this time."
Now, I want to make sure we're clear. You never filed a grievance regarding any matter contained in your First Amended Complaint. Am I correct?
A Correct.
Q Looking at Paragraph 3, the admission that's requested is that before you filed your Complaint, you had no

TAMARA A. O'CONNOR
248.882.1331 toconnorrptg@aol.com

a54e59a9-e225-4caa-8c85-38c1a838de5f