# EXHIBIT 1

Page 62

1 A   They're allowing it.
2 Q   They're allowing it. Okay. Anything else? Anything else?
3 A   No.
4 Q   Okay. On page 29 of Exhibit 1, Paragraph 223, Paragraph 223,
5     can you read that to yourself.
6 A   It hasn't come up yet.
7       MR. McFARLANE: Oh, my apologies. I forgot I have
8     to share.
9       THE WITNESS: You said 223?
10      MR. LEGGHIO: Yes.
11      THE WITNESS: Okay.
12 Q  (BY MR. LEGGHIO) Now, I'm going to read part of that
13    paragraph into the record, and ask you a question.
14      You say, Defendants committed per se wrongful acts
15    and/or lawful acts with malice without justification for the
16    purpose of invading the business relationship, your business
17    relationship.
18      Now, do you have any facts to support a claim that the
19    Union or the Union Officers that you've sued have acted with
20    malice in the handling of this matter for you, any facts at
21    all that they acted with malice.
22      MR. SANDERS: Objection, form. You can answer.
23      THE WITNESS: The fact that they said they don't
24    represent me.
25 Q  (BY MR. LEGGHIO) Okay. Anything else?

Page 63

1 A   No.
2 Q   Okay. Just the mere statement that they say they don't
3     represent you, that is what you claim is malice. Is there --
4     anything else in that statement that made you believe it was
5     malice?
6 A   You faded out at the end.
7 Q   Do you have anything else that was made, any statement made
8     in that conversation, other than your statement that they
9     said they don't represent you, that you claim is evidence of
10    malice?
11 A  You're referring to the conversation with Ms. Day, right?
12 Q  That's what you were referring to, right; you said that's the
13    fact, for you, of malice, when they said they don't represent
14    you, am I correct?
15 A  Yes.
16 Q  Okay. Anything else that was said, then or at any other
17    time, that supports your claim that the Union and the Union
18    Defendants have acted with malice with regard to their
19    treatment of this matter?
20 A  No.
21 Q  If you could turn to page 34 of your Complaint, and look at
22    Paragraphs 241 and, I mean, 251 and 252, and read those to
23    yourself.
24 A  Okay.
25 Q  Now, I'm asking again on behalf of the Union and the Union

Page 64

1     Officers. Do you have any facts to support your claim that
2     the Union and the Union Officers conspired to engage in a
3     civil conspiracy against you? Any facts at all that support
4     a claim that the Union and the City were conspiring against
5     you?
6 A   The City couldn't be allowed to do what they've done without
7     the Union allowing it.
8 Q   Okay. Well, that's an assumption, that's not a fact.
9       MR. SANDERS: Object to form.
10 Q  (BY MR. LEGGHIO) Just tell me what -- if you're --
11      MR. SANDERS: That is an assumption; that's
12    argumentative.
13 Q  (BY MR. LEGGHIO) If you're drawing a conclusion, Mr.
14    Ferguson, that's fine, but I want to know if you have any
15    facts to support your claim that they engaged in a
16    conspiracy?
17 A  I'm not privy to documentation or specific conversations that
18    may go back and forth between the City and the Union, but the
19    City can't do what the Union doesn't allow them to do. So if
20    there's a policy that's been implemented, or something that's
21    been breached, it's because the Union hasn't, you know,
22    hasn't stood up for it, and checked the City, if you will.
23 Q  Okay. Do you have any documents to support the notion that
24    they conspired, that the City and the Union, and the Union
25    Defendants conspired against you?

Page 65

1 A   They have a working relationship. I don't have documents,
2     but again, the City can't do certain things without the Union
3     signing off or allowing it, or permitting it to happen, if
4     you will.
5 Q   Do you have anyone who told you that the City and the Union,
6     and the Union Defendants are conspiring against you in your
7     claims?
8 A   No.
9 Q   Now, you claim in all of your counts in this lawsuit, that
10    you have suffered a loss of seniority, loss of earnings, loss
11    of earning capacity, past and future lost earnings, the value
12    of fringe and pension benefits. Those are your losses.
13      Let me ask you this: You are asking the Court in this
14    case to, among other things, to give you, or restore you what
15    you believe are increased pension benefits, am I correct?
16 A  Among other things, yes.
17 Q  Okay. So I mean, the theory being that if you prevail, that
18    you will have a pension as calculated based on the seniority
19    that is all years you were employed by the City, as well as
20    the years you were off, and based on any higher rank you
21    would have gotten; that's part of your claim, isn't it?
22 A  Yes.
23 Q  Okay. You also claim you suffered mental and emotional
24    distress, embarrassment, humiliation, anxiety about future,
25    about the future, and damage to your good name and

Page 86

1 seniority up to 25 years, before my 25th
2 anniversary.
3 Q Okay. Ronald Foster, is he an officer of the
4 Union?
5 A He was. He's retired now.
6 Q When did he tell you this?
7 A I don't know. Maybe 2013, '14, something like
8 that.
9 Q Okay. What was his position with the Union?
10 A He was a seventh battalion director.
11 Q That's not a Union position.
12 A Well, okay.
13 Q I mean, was there a Union officer who made some
14 representations to you?
15 A I don't know what his position was. He worked
16 for the Union. This is what he told me.
17 Q Okay. And he told you that you were
18 entitled -- in 2013, 2014, you were already on
19 disability, weren't you?
20 A That's correct.
21 Q And are you telling me that at that point he
22 told you that -- and you were in California
23 from my -- from the notes I've got.
24 He told you that you were going
25 to -- entitled to come back to work with your

Page 87

1 seniority as it was as if you had never left?
2 A That's correct.
3 Q Okay. Now, when you were off of work in 2014
4 and 2015, you were not relying on the Union to
5 be off of work. You were off of work because
6 you were disabled; correct?
7 MR. SANDERS: Objection, form,
8 foundation, mischaracterization of the witness'
9 previous testimony.
10 You can answer.
11 THE WITNESS: I was off because
12 the department doctor placed me off.
13 BY MR. LEGGHIO:
14 Q Yeah, I understand that. I mean, I'm not
15 quibbling with you, Mr. McGhee. I just want to
16 make sure we're clear.
17 You're claiming that you took
18 actions based on your reliance on certain
19 things. But the fact of the matter is, you
20 would agree, wouldn't you, that all the time
21 you were off, you were only off because you
22 were disabled; not because someone promised you
23 seniority when you returned or anything else.
24 You were disabled, and you were
25 off because you couldn't do the work?

Page 88

1 MR. SANDERS: Objection,
2 mischaracterization of the witness' prior
3 testimony.
4 MR. LEGGHIO: Well, then clear
5 it up.
6 BY MR. LEGGHIO:
7 Q Were you ever off work when you were not
8 disabled?
9 MR. SANDERS: Objection, form,
10 foundation.
11 He's already answered that.
12 MR. LEGGHIO: I don't think he
13 has. But go ahead, Mr. McGhee.
14 THE WITNESS: No.
15 BY MR. LEGGHIO:
16 Q Okay. So in paragraph 191 on page 23 of the
17 Complaint, I'm going to read it into the
18 record:
19 "Defendants' promises were clear,
20 definite, and unequivocal and were
21 specifically made to induce plaintiff
22 to render the contemplated services
23 and actions for the stated period for
24 defendants' benefit."
25 When you say "defendants

Page 89

1 promises," I want you to focus, for my
2 purposes, on the Union. Are you saying that
3 the Union promised you clearly, definitely, and
4 unequivocally that you would return from Union
5 disability with the seniority intact at the
6 time as stated in 1992? Is that what you're
7 claiming?
8 A I don't understand the question. But I'm going
9 by the contract I was hired under. That's what
10 the contract I was hired under said.
11 Q You pled to the court that:
12 "The defendants' promises promised
13 you that you were going to get the
14 seniority that you were entitled to
15 under the 1992 contract if you went
16 on duty disability; that their
17 promises were clear, definite, and
18 unequivocal."
19 Do you see that in
20 paragraph 191?
21 A Yes.
22 Q So you claim the Union told you clearly,
23 definitely, and unequivocally that whatever
24 your seniority rights were under the 1992
25 contract when you were signed, you would carry

Page 90

1 those with you forward for any time of duty
2 disability while you were employed?
3 A A member of the Union, Ronald Foster, told me
4 that.
5 Q Okay.
6 A But the paragraph, itself, states that.
7 Q I'm sorry, what states that?
8 A The contract that I was hired under in 1992.
9 Q You're referring to the 1992 Collective
10 Bargaining Agreement?
11 A That's correct.
12 Q Okay. Anything else?
13 A Not that I can think of right now, sir.
14 Q Okay. Can you turn to page 26 of Exhibit
15 Number 1, which is DFFA0027.
16 And when you get there, will you
17 read paragraph 202 to yourself?
18 A (Witness reviewing document.) Yup, got it.
19 Q Now, just for chronology purposes, can I --
20 MR. LEGGHIO: Megan, can I get
21 the witness' face on the screen here?
22 BY MR. LEGGHIO:
23 Q Just for chronology purposes, Mr. McGhee, when
24 you came back to work in 2016 your seniority
25 was -- the demotion occurred in 2019; am I

Page 91

1 correct?
2 A I thought it was '20. Might have been '19,
3 yeah.
4 Q 2020 -- no, it's 2019.
5 Now, what I want to understand
6 is since you returned to work in 2016 have you
7 ever been disabled?
8 MR. SANDERS: Objection to the
9 form, but you can answer.
10 THE WITNESS: I'm injured right
11 now.
12 BY MR. LEGGHIO:
13 Q I'm not talking about injuries. I'm talking
14 about disabilities. Are you disabled?
15 MR. SANDERS: That's why I
16 objected to the form. That has a particular
17 legal connotation. I don't know if this
18 witness knows exactly what it is.
19 BY MR. LEGGHIO:
20 Q I'll flush it out for him. Since you returned
21 to work since 2016 have you gone on disability
22 duty retirement from the City of Detroit at any
23 time?
24 A No.
25 Q You've gone on days, but you've not gone on

Page 92

1 duty disability retirement since 2016?
2 A Correct.
3 Q Okay. Are you on J's currently?
4 A Yes.
5 Q How long have you been on J's?
6 A Since October 31st.
7 Q Of 2020?
8 A Yes.
9 Q And what are you on J's for?
10 A I've got a bad ankle.
11 Q So you have been off of work since October
12 through June. That's eight months?
13 A Yes.
14 Q Okay. But you're not collecting duty
15 disability?
16 A No.
17 Q Okay. Paragraph 202 of Exhibit 1 says that:
18 "Defendants discriminated against
19 plaintiff and harassed them by
20 subjecting them to humiliation and
21 discrimination to which other workers
22 were not subject, all because of
23 their disability or former
24 disabilities."
25 So before we get to that, have

Page 93

1 you applied for duty disability retirement as a
2 result of your ankle injury?
3 A I have not.
4 Q Tell me what facts you have that the Union
5 discriminated against you and harassed you by
6 subjecting you to humiliation and
7 discrimination to which other workers were not
8 subject because you were disabled.
9 How has the Union harassed you?
10 A By filing a grievance that got me demoted.
11 Q Okay. So your term of the word "harassment"
12 refers to the Union filing a grievance
13 challenging how the City warranted seniority
14 for people that returned from duty disability?
15 A No, that's not what I said. They filed a
16 grievance that got me demoted.
17 Q Well, that's what I just said. You used the
18 word "harassment." Is that what you claim is
19 harassment, that when the Union filed a
20 grievance that resulted in your demotion, that
21 was harassment?
22 MR. SANDERS: Objection, form,
23 foundation.
24 He answered the question. He's
25 answered that question.

## Page 60

1 A Correct.
2 Q Do you have any facts to support the notion that the
3    Union denied you an opportunity to, quote, "present your
4    side of the story?"
5 A Repeat.
6 Q Do you have any facts to support the notion that the
7    Union prevented you from presenting, quote, "your side of
8    the story?"
9 A I did not have a hearing or a time to be heard, but no, I
10    have no facts.
11 Q In other words, the City didn't say to you, you can come
12    on down and present your side of the story? You don't
13    have facts to suggest that the Union said no, no, we're
14    going to interfere with that. You're not going to be
15    able to do that? The Union didn't obstruct you in any
16    way in presenting your position, did they?
17 A No.
18       MR. SANDERS: Objection, form.
19 Q (By Mr. Legghio) Turn to 0035, Mr. Potts. If you could
20    focus your attention on Paragraph 251 and 252. Read
21    those to yourself and then when you finish, please let me
22    know.
23 A Okay.
24 Q All right. In 251, you allege that the Union and its
25    officers engaged in a civil conspiracy. Do you mean a

## Page 61

1    conspiracy that involved just the Union or do you mean a
2    conspiracy between the Union, its officers and someone
3    with the City?
4 A The Union and the City.
5 Q Okay, and what facts do you have to support the notion
6    that the Union and the City engaged in a civil conspiracy
7    against you?
8 A I don't have any facts.
9 Q You say in Paragraph 252 that:
10       "The facts as delineated above reveal that
11       that there was a concerted action by the
12       Defendants," the Union's I'm asking about, "to
13       accomplish a criminal or unlawful purpose or a
14       lawful purpose by criminal or unlawful means."
15    What facts do you have that the Union engaged in
16    concerted action to accomplish a criminal act?
17 A I do not have any facts.
18 Q Do you have any notion of what criminal act you're
19    referring to in this paragraph of the Complaint?
20 A No, I don't.
21 Q Do you have any facts to support the claim that the Union
22    engaged in concerted action for a lawful purpose by
23    criminal or unlawful means, that they were going to do
24    something lawful, but they were going to do it in a
25    criminal way. Do you have any facts to support that

## Page 62

1    notion?
2 A No facts.
3 Q Count XIII, you ask for relief in Paragraph 254 of the
4    First Amended Complaint and, among other things, I want
5    to make sure we're clear, that you ask the Court to give
6    you, restore the seniority that existed before you went
7    on duty disability, to award you 15 years of seniority
8    while you were on duty disability, and to increase your
9    pension benefits based on the new calculations of your
10    seniority. That's one of the things you want from the
11    Court. Am I correct on that?
12 A Yes.
13 Q Now, I'm going to direct your attention —
14       MR. LEGGHIO: Mr. Sanders, we're going to
15    be working off of the second batch of exhibits, Volume 2,
16    and in particular, I'm going to go to Exhibit 25.
17       MR. SANDERS: How much more time do you
18    anticipate?
19       MR. LEGGHIO: I am going to be here for a
20    little bit. Do you want to break here?
21       MR. SANDERS: Okay. I thought we were
22    near wrapping this up.
23       MR. LEGGHIO: We can break here for a half
24    hour, 40 minutes if you want?
25       MR. SANDERS: All right. Why don't we do

## Page 63

1    that.
2       MR. LEGGHIO: Okay. Return back at 12:30?
3       MR. SANDERS: That's fine.
4       MR. LEGGHIO: Okay. Thank you.
5    (At 11:46 a.m., recess taken)
6       MR. LEGGHIO: Okay.
7    (At 12:32 p.m., back on the record)
8 Q (By Mr. Legghio) I am going to start with page 0627.
9    Mr. Potts, I just want to make sure that given your
10    testimony today that I'm not misunderstanding anything,
11    so these are your responses to the Request for Admissions
12    that were filed with you and I'm going to take you
13    through a couple of them and I want you to first look on
14    page 0627, number 2, and I am going to read it into the
15    record.
16       "Potts did not file a grievance regarding
17       the matters alleged in the Complaint."
18    Your response was:
19       "Neither admits nor deny at this time."
20    Now, I want to make sure we're clear. You never filed a
21    grievance regarding any matter contained in your First
22    Amended Complaint. Am I correct?
23 A Correct.
24 Q Looking at Paragraph 3, the admission that's requested is
25    that before you filed your Complaint, you had no

18 (Pages 60 to 63)

TAMARA A. O'CONNOR
248.882.1331    toconnorrptg@aol.com
13-53846-tjt    Doc 13471-2    Filed 11/01/21    Entered 11/01/21 10:04:05    Page 5 of 5

a54e59a9-e225-4caa-8c85-38c1a838de5f