# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S MOTION TO ESTABLISH PROCEDURES FOR DISTRIBUTION OF NEW B NOTES TO HOLDERS OF ALLOWED CLASS 14 CLAIMS UNDER THE CITY'S PLAN OF ADJUSTMENT

The City of Detroit ("City"), by its undersigned counsel, moves the Court to establish procedures for the distribution of New B Notes to holders of Allowed Class 14 Claims ("Motion"). In support, the City respectfully states as follows:

## I. INTRODUCTION

The City's Plan[1] states that each holder of an Allowed Class 14 Claim is to receive a Pro Rata distribution of New B Notes, plus any accrued interest. Previously, the City moved for,[2] and this Court established by order,[3] procedures for

---

[1] *Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (October 22, 2014)*, filed on October 22, 2014 [Doc. No. 8045], and confirmed as modified on November 12, 2014 [Doc. No. 8272] ("Plan"). Undefined capitalized terms in this Motion have the meanings assigned to them in the Plan or the Brokerage Motion (defined below), as applicable.

[2] *City of Detroit's Motion to Implement Distributions of B Notes to Holders of Allowed Class 14 Claims Under the City's Confirmed Plan of Adjustment* ("Brokerage Motion," Doc. No. 13126).

[3] *Order Granting the City of Detroit's Motion to Implement Distributions of B Notes to Holders of Allowed Class 14 Claims Under the City's Confirmed Plan of Adjustment* ("Brokerage Order," Doc. No. 13173).

38065196.17/022765.00213

gathering the tax and account information necessary for the City to distribute "New B Notes" to Claimholders (defined below) under the Plan. The City followed these procedures, gathered the needed information, and is preparing to make its first and final Distribution of New B Notes to Claimholders.

New B Notes are securities. Transferring securities electronically is very different from the day-to-day electronic cash transfer transactions with which people may be familiar. Because there are manual steps involved in a securities transfer, a large batch of transfers (such as the City intends to make) may not be completed in a single day and may, in fact, take a few days to complete. Further, although each individual transfer of securities from one brokerage firm to another is nearly instantaneous, disbursement of securities received by a recipient brokerage firm into the proper customer account is not—each brokerage firm apparently processes incoming transfers on its own schedule.

When a recipient brokerage firm attempts to complete a transfer from its holding account to a customer's account, it may find that the information provided by the transferring brokerage firm is incorrect (i.e., it does not clearly identify a customer account with the recipient brokerage firm) or run into some other issue. In that instance, the recipient brokerage firm will transfer the securities back to the originating brokerage firm, usually with (but sometimes without) a brief explanation of the problem. This transfer back can take place days or, in rare cases, weeks after

38065196.17/022765.00213

the initial transfer was made, although the City understands the vast majority are accomplished within a week.

As a result, when the City's disbursing agent, U.S. Bank National Association ("Disbursing Agent"), attempts to distribute New B Notes to the accounts designated by Claimholders, (1) it is not certain that every transfer will be successful, and (2) it may take some time (the precise amount of which may vary by recipient brokerage firm) for the City's Disbursing Agent to learn which transfers were successful and which transfers were not. Although it seems likely that most failed transfers will be caused by a Claimholder providing improper information on its Brokerage Account Form, some may fail for other reasons.

In short, the City must prepare for the likelihood that some transfers will not succeed and that it may take some time for this to become known to the City. The City wants to ensure that each Claimholder has the opportunity to claim the distribution due it under the Plan and thus proposes that it provide Claimholders with a defined period of time to correct any transfer or account issues that may arise. At the same time, the City also understands the need to promptly finish this bankruptcy case and its required distributions under the Plan. It cannot hold the case up indefinitely waiting for a handful of Claimholders to fill out their Brokerage Account Forms correctly.

38065196.17/022765.00213

The City thus seeks Court approval of procedures that afford Claimholders whose transfers are unsuccessful with a reasonable opportunity to correct issues that prevented that success, while at the same time sets defined time limits so that the bankruptcy case can continue toward completion.

## II.   JURISDICTION AND VENUE

1.   This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.  Under Article VII of the Plan, this Court retained jurisdiction to "[e]nsure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan."  Plan, Art. VII.D, p. 70.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).  Venue is proper before this Court under 28 U.S.C. § 1409.

## III.   BACKGROUND

### A.   Class 14 of the Plan

2.   On October 22, 2014, the City filed its Plan.  This Court entered an order modifying and confirming it on November 12, 2014 ("Confirmation Order," Doc. No. 8272).  The Plan became effective December 10, 2014 ("Effective Date").

3.   Class 14 of the Plan deals with "Other Unsecured Claims."

4.   The Plan states that "each Holder of an Allowed Other Unsecured Claim [. . .] shall receive (A) [. . .] a Pro Rata share of approximately $16.48 million

in New B Notes and (B) distributions in accordance with Section II.B.3.p.i.A." Plan, Art. II.B.3.u.i, p. 44.

5.     Article II.B.3.p.i.A adds approximately $4.12 million in additional New B Notes to the $16.48 million to be distributed to Holders of Allowed Other Unsecured Claims ("Claimholder"). Plan, Art. II.B.3.p.i.A, 2nd para, part (3), p. 37.

6.     On the Effective Date, the City issued New B Notes in an aggregate principal amount of $20,596,747 on account of Allowed Other Unsecured Claims in Class 14. These New B Notes consist of Series 2014B-1 in the principal amount of $20,376,922 ("2014B-1 Notes") and Series 2014B-2 in the principal amount of $219,825 ("2014B-2 Notes" and, with the 2014B-1 Notes, "B Notes").

**B.     The Disbursing Agent**

7.     All Distributions of B Notes will be made by the Disbursing Agent in accordance with the Class 14 Disbursing Agent Agreement ("Disbursing Agreement").[4]

8.     The B Notes were issued to the Disbursing Agent in registered "book entry" form through The Depository Trust Company ("DTC"), a depository and clearing agency for various types of securities, including municipal debt instruments.

---

[4] The Plan permits the City to act as Disbursing Agent or employ another to act as Disbursing Agent in its stead. Plan, Art. V.A, p. 64. A copy of the Disbursing Agreement is attached as Exhibit 6-3 to the Brokerage Motion.

38065196.17/022765.00213

Although this facilitates the ability of recipients to sell the B Notes, it means that each Claimholder needs a brokerage account to receive B Notes. *Id*., ¶ 7.

9.      In addition to B Notes, the Disbursing Agent also holds interest that has accrued on the B Notes.  The Disbursing Agent has invested this interest in accordance with the Disbursing Agreement pending Distribution.  The interest and investment income (collectively, "Related Income") must also be Distributed to Claimholders.

10.      As of September 10, 2021, $5,332,904.06 of Related Income was available for Distribution to Claimholders.

**C.      The Brokerage Motion and Brokerage Order**

11.      The Plan requires that the Disbursing Agent comply with tax and reporting requirements when making Distributions.  Plan, Art. V.J.2., p. 66.

12.      The Disbursing Agent thus needs Claimholder tax information, as well as account information, to report Distributions to the Internal Revenue Service.

13.      Tax and brokerage account information is not routinely collected during bankruptcy cases and is not contained on a proof of claim.

14.      To gather this information, the City filed its Brokerage Motion.  The Disbursing Agent provided the City with forms which the City included in a notice mailed to all Claimholders ("Brokerage Notice," Brokerage Motion, Ex. 6-1).

15. These forms included a Brokerage Account Form (Brokerage Notice, Exhibit B) and a Tax Form (Brokerage Notice, Exhibit C). The Brokerage Notice instructed Claimholders to fill out and return the forms to the City's claims agent, Kurtzman Carson Consultants ("KCC").

16. In the Brokerage Motion, the City proposed to mail the Brokerage Notice with a return envelope to all claimants who were or might become Claimholders. The City would allow recipients 180 days to return the necessary forms. For recipients who did not return the forms within 90 days, the City had the discretion to (and did) send a reminder.

17. The City noted in the Brokerage Motion that neither it nor its Disbursing Agent could make Distributions to Claimholders who failed to return the forms. The City also observed that, under the Plan, undeliverable or unclaimed Distributions are deemed canceled and forfeited to the City. The cancellation and forfeiture of B Notes to the City will not increase or otherwise affect the amount or timing of any other Distributions of B Notes to Claimholders with Allowed Class 14 Claims.

18. Accordingly, the City asked the Court to order that Claimholders who failed to return the necessary forms or returned improperly filled out forms within the allotted time forfeit their claims and the right to receive Distributions.

38065196.17/022765.00213

19. Finally, to maximize the number of forms returned, the City asked the Court to grant it discretion to work with those trying in good faith to comply but who needed extra assistance or time.

20. The Court entered the Brokerage Order, approving the Brokerage Motion.

**D.     Gathering the Distribution Information**

21. KCC first served the Brokerage Notice on possible claimants on December 27, 2019.  (Certificate of Service, Doc. No. 13215.)  A follow up mailing occurred on April 30, 2020.  (Certificate of Service, Doc. No. 13282.)  Additional mailings and letters were sent to certain individual claimants to resolve issues.

22. While this was taking place, the City continued resolving claims. Ultimately, 122 Class 14 Claims were Allowed for Distribution.

23. As of the filing of this Motion, 75 Claimholders have returned tax and Brokerage Account Forms that appear to be filled out correctly so that Distributions can be attempted to those Claimholders.[5]

---

[5] The Detroit Police Officers Association ("DPOA") has not yet returned a Brokerage Account Form for its Allowed Claim Number 1862.  It does not need to do so until the final B Note Distribution is to be made.  *See* Doc. No. 13346, ¶ 3.  As this Distribution likely will be the final one, the DPOA is working to get this information now.

38065196.17/022765.00213

24. The Disbursing Agent informs the City, however, that there is no way to verify in advance whether the information returned on the Brokerage Account Forms is correct.

25. A Distribution to the indicated accounts will be attempted. It is reasonable to expect that Distributions to some Claimholders may be unsuccessful.

26. To prepare for this possibility, the City proposes that this Court approve procedures which give each Claimholder with a failed or unsuccessful Distribution the opportunity to correct any issues before the Distribution on its Allowed Class 14 Claim is forfeited to the City.

## IV.  THE PROCESS FOR CLASS 14 CLAIM DISTRIBUTIONS

27. Although this Motion seeks relief regarding the transfer of B Notes, it sets forth the planned Class 14 Distribution process in full for context.

### A.  The Distribution Date Notice

28. First, a "Distribution Date" must be chosen for the B Notes. Once chosen, a notice must be filed "that provides information regarding the Distribution to be made." Plan, Art. V.F. The City will file this notice ("Distribution Notice"), providing the date on which the Disbursing Agent will begin distributing B Notes and the amount of B Notes to be distributed to each Claimholder. The Distribution Notice will also list those Claimholders who did not comply with the Brokerage Order and thus will not receive a Distribution under the Plan.

- 9 -

29.     The City will file the Distribution Notice at least ten business days prior to initiating the Distribution with the Disbursing Agent.

**B.      The Update of the Disputed Unsecured Claims Reserve**

30.     When the Distribution Notice is filed, the City will also file an updated calculation of the amount (if any) of the Disputed Unsecured Claims Reserve.[6] Reserve Rule (f), approved as part of the Reserve Motion that set up the Disputed Unsecured Claims Reserve requires the City "to file with the Court a notice of the calculation of the then-current Disputed Unsecured Claims Reserve" at least ten business days prior to making a Distribution to Claimholders.

**C.      The Procedure for Distributing the B Notes**

31.     After the Distribution Date Notice and the updated Disputed Unsecured Claims Reserve are filed with this Court, the City proposes the following additional procedures for the distribution of B Notes:

1.  Using information from the Distribution Notice and from the returned Brokerage Forms, the City will direct the Disbursing Agent to transfer B Notes to Claimholders. The Disbursing Agent will notify the City when this has been done.

---

[6] The Plan requires the City to establish a reserve for disputed unsecured claims. Plan, Art. VI.B. To initially set up the Disputed Unsecured Claims Reserve, the City filed a motion with the Court ("Reserve Motion," Doc. No. 9351) which it later refined ("Reserve Reply," Doc. No. 9652). The Court approved the Reserve Motion as modified by the Reserve Reply. (Doc. No. 9701.) The Reserve Motion included certain rules ("Reserve Rules," Reserve Motion, ¶ 26) for managing the Disputed Unsecured Claims Reserve. The Disputed Unsecured Claims Reserve was initially set at $1.035 billion but currently stands at $98 million. (Doc. No. 13127.)

- 10 -

2. Ten business days after all transfers have been made, and afterwards as needed, the Disbursing Agent will inform the City as to which transfers were unsuccessful and, if known, the reason for the failure.

3. The City will send Distribution Failure Notices (defined below) to Claimholders with failed transfers. The Distribution Failure Notices will include the information that was used to attempt the transfer and will provide the recipient with 30 days to either send a new Brokerage Account Form or correct any issues.

4. After at least 30 days have passed from the sending of a Distribution Failure Notice, the City will direct the Disbursing Agent to make a second attempt of the failed transfer, using new account information if provided on a returned Brokerage Account Form or the originally-provided information otherwise. For the avoidance of doubt, unless the City receives a new Brokerage Account Form, the City will use the originally-provided information to make this second attempt. The City is not required or obligated to accept or take any action on any instructions or information provided by a Claimholder, including instructions or information which may be provided by email, letter, phone call or any other type of oral or written communication, with respect to a Distribution other than in a properly completed and timely received Brokerage Account Form.

5. Ten business days after the second attempt is made, and afterwards from time to time as needed, the Disbursing Agent will inform the City as to which transfers failed a second time. Distributions to these Claimholders will be deemed "Undeliverable or Unclaimed" as defined in Article V.I.4 of the Plan and forfeited to the City. No further or subsequent Distributions need be made to these Claimholders.

32. The process is designed to accommodate the possibly varying schedules of the brokerage firms selected by Claimholders. Although the City is informed that virtually all transfers should be confirmed as successful or unsuccessful within ten business days of initiation, the possibility exists that one or

38065196.17/022765.00213

two brokerage firms may take longer to notify the Disbursing Agent of a failed or unsuccessful transfer, so the process takes this into account.

33.     Also, it is possible that a brokerage firm might reject a transfer even if a Claimholder submitted proper forms, so the process does not require a Claimholder to submit a new Brokerage Account form, though it provides that opportunity in case the Claimholder elects to do so.

34.     The City believes that this process affords any Claimholders whose distributions are initially unsuccessful a reasonable opportunity to address problems. It also provides finality.  If, after all the notices and time provided, a Claimholder is unable or unwilling to make it possible for the City to distribute B Notes to it, the City proposes that the Claimholder's claim be deemed undeliverable and forfeited. This is the same process and result that was authorized and approved by this Court for claims for which there were no tax or brokerage forms returned at all.

**D.     The Procedure for Distributing Interest Checks**

35.     Following the B Note distribution, the City will file a Distribution Notice with respect to accrued interest.  The Disbursing Agent will issue checks with accrued interest to Claimholders as of the date noted in the Distribution Notice.

36.     Consistent with the terms of the Plan, the City will mail Claimholder checks to the respective addresses shown on the claims register, which contains the addresses supplied with the original filed proofs of claim as modified by any

38065196.17/022765.00213

subsequent change of address forms filed with the Court.  Plan, Article V.I.2, p. 65 (stating that "Distributions to Holders of Allowed Claims shall be made at the addresses set forth in the City's records unless such addresses are superseded by proofs of Claim or transfers of Claim Filed pursuant to Bankruptcy Rule 3001.")

37.     Future interest payments on distributed B Notes will occur through the brokerage system as the City makes interest payments on the B Notes.

## IV.     RELIEF REQUESTED

38.     By this Motion, the City respectfully asks that the Court enter an order, substantially in the form attached as Exhibit 1 (i) authorizing the City to provide those Claimholders whose Distribution of B Notes is unsuccessful with the notice attached as **Exhibit 6** ("Distribution Failure Notice"), along with a prepaid, preaddressed envelope addressed to KCC, for the Claimholders to return a revised Brokerage Account Form if desired; and (ii) ordering that, if a subsequent attempted Distribution to a Claimholder should fail, then the Claimholder is deemed as having failed to return a properly completed and valid Brokerage Account Form and the Claimholder will be treated accordingly under paragraph 6 of the Brokerage Order, with its right to receive B Notes and Related Income cancelled.

## V.     BASIS FOR RELIEF REQUESTED

39.     Article VIII.E. of the Plan states that "[t]he City is authorized to [. . .] take such actions as may be necessary or appropriate to effectuate, implement and

38065196.17/022765.00213

further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan." Plan, p. 71.

40. Under the Plan, each Claimholder is to receive a Pro Rata Distribution of B Notes. Plan, Art. II.B.3.u.i, p. 44. The City is authorized to contract with the Disbursing Agent to provide Distributions to Claimholders. Plan, Art. V.A, p. 64.

41. The Disbursing Agent cannot Distribute B Notes to a Claimholder unless it receives a fully and properly completed Brokerage Account Form from such Claimholder. Return of a fully and properly completed Brokerage Account Form is thus a precondition to receiving a Distribution.

42. As discussed in the Brokerage Motion, undeliverable or unclaimed Distributions revert to the City. Plan, Art. V.I.4, p. 66. Likewise, a Claimholder loses its right to Distributions if it does not provide requested tax information to the City. Plan, Art. V.J.2, p. 67.

43. On this basis, the Court ordered that any "Class 14 Claimant [that] fails to return a properly completed and valid Tax Form and Brokerage Account Form" to the City in a timely fashion loses its right to a Distribution. Brokerage Order, ¶ 6.

44. For the reasons outlined above, it is possible that some Distributions of B Notes to Claimholders may fail. The City believes it is proper to give Claimholders with failed distributions a chance to rectify whatever issues may exist, so long as it does not unduly prolong the City's bankruptcy case.

45.    The City proposes to send Distribution Failure Notices to Claimholders whose transfers of B Notes fail (if any).   The City will mail the first batch of Distribution Failure Notices to any such Claimholders ten business days after the transfers were attempted, because most transfers should be confirmed as successful or unsuccessful within that time.   If additional unsuccessful transfers are later identified, those Claimholders also will be sent a Distribution Failure Notice.

46.    The proposed Distribution Failure Notice will give a Claimholder whose Distribution was unsuccessful (1) notice that its Distribution was unsuccessful, (2) a copy of the forms it sent in, as received by KCC, and (3) the brokerage name, account number, and "For Further Credit" information that was obtained from these forms, as used by the Disbursing Agent to attempt the Distribution.   This will allow a Claimholder to determine if the information was properly taken from its forms and entered into the system used for the attempted transfer of B Notes.

47.    In case a Claimholder believes that its account information was misread (possibly due to legibility issues with its Brokerage Account Forms) or wishes to use a different account than the one initially provided, the Distribution Failure Notice will provide each Claimholder with a fresh Brokerage Account Form and a pre-paid, preaddressed return envelope to submit corrected information.   The Distribution

38065196.17/022765.00213

Failure Notice will make clear **in boldface type** the deadline ("Distribution Failure Notice Deadline") by which KCC must receive the new Brokerage Account Form.

48. If a Claimholder believes that its account information was properly taken from the Brokerage Account Form, it can contact its brokerage firm to address any issues, such as an account being closed for dormancy or other concerns. Again, the Distribution Failure Notice will make clear **in boldface type** that this must occur by the Distribution Failure Notice Deadline. If a new Brokerage Account Form is not received by the applicable Distribution Failure Notice Deadline, the City will use the information provided on the original Brokerage Account Form to make the second attempt.

49. The Distribution Failure Notice Deadline will be at least 30 days from the date of mailing to ensure sufficient time for recipients to act, if desired.

50. After a Distribution Failure Notice Deadline passes, the Disbursing Agent will re-attempt the Distribution to that Claimholder. For Claimholders who timely return properly completed Brokerage Account Forms, the new information on the Brokerage Account Forms will be used; for all others, information previously received will be used.

51. If a Claimholder's Distribution fails a second time, despite receiving the Brokerage Notice authorized by the Brokerage Order and the Distribution Failure

Notice, the Claimholder's Distribution should be found to be "undeliverable" as that term is used in the Plan. Plan, Art. V.I.4, p. 66.

52.    Accordingly, for each Claimholder whose Distribution fails a second time, the City proposes that (a) the City be authorized to cancel any B Notes held for Distribution to that Claimholder and those B Notes will be of no further force or effect, (b) all Distributions of Related Income to that Claimholder will permanently and irrevocably revert to the City, and (c) any Claim in respect of such Distributions will be released and forever barred from assertion against the City and its property, in accordance with the Plan.

53.    This is the same treatment that the Court already authorized and approved in paragraph 6 of the Brokerage Order for Claimholders who fail timely to return properly completed Brokerage Account Forms.

54.    As part of the relief sought, the City asks the Court to grant it the discretion (but without creating or undertaking any duty or obligation) to continue to work with Claimholders who seek to resolve transfer issues in good faith but need extra time or assistance, such as Claimholders whose brokerage firms are slow in reporting failed transfers. This flexibility will not prejudice the amount or timing of any other distributions of B Notes or Related Income to the Holders of other Allowed Class 14 Claims because any cancelled or forfeited B Notes and Related Income are not distributed to such Holders, but rather are returned or revert to the City.

## VI. NOTICE

55.     The City filed this Motion using the Court's electronic filing system, which sends notice of the filing to all ECF participants registered to receive notice in this case.  The City's claim agent, KCC, will serve the Motion by first-class mail on all parties who originally received service of the Brokerage Motion (*i.e.*, all parties who are or, at the time, might have become Claimholders), as well as all parties requesting notices listed on the Master Service List.  KCC will file a proof of service soon afterward.  The City respectfully submits that no other or further notice of this Motion need be given.

## VII. CONCLUSION

WHEREFORE, the City respectfully requests that this Court enter an Order, substantially in the form attached as Exhibit 1, granting the relief requested and such other and further relief as this Court may deem just and proper.

Dated: November 24, 2021

CITY OF DETROIT LAW DEPARTMENT

By: */s/ Charles N. Raimi*
    Charles N. Raimi (P29746)
    Mary Beth Cobb (P40080)
    James Noseda (P52563)
    Attorneys for the City of Detroit
    2 Woodward Avenue, Suite 500
    Detroit, Michigan 48226
    Phone - (313) 224-4550
    Email - raimic@detroitmi.gov

- 18 -

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ *Marc N. Swanson*
     Marc N. Swanson (P71149)
     Ronald A. Spinner (P73198)
     150 West Jefferson, Suite 2500
     Detroit, Michigan 48226
     Phone - (313) 496-6420
     Facsimile - (313) 496-8451
     Email - swansonm@millercanfield.com

*Counsel for the City of Detroit, Michigan*

38065196.17/022765.00213

## <u>EXHIBIT LIST</u>

Exhibit 1       Proposed Order

Exhibit 2       Notice of Motion and Opportunity to Object

Exhibit 3       N/A

Exhibit 4       Certificate of Service

Exhibit 5       N/A

Exhibit 6       Distribution Failure Notice

38065196.17/022765.00213

**EXHIBIT 1**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**ORDER GRANTING CITY OF DETROIT'S MOTION TO ESTABLISH**
**PROCEDURES FOR DISTRIBUTION OF NEW B NOTES TO**
**HOLDERS OF ALLOWED CLASS 14 CLAIMS**
**UNDER THE CITY'S PLAN OF ADJUSTMENT**

This matter having come before the Court on the *City of Detroit's Motion to Establish Procedures for Distribution of New B Notes to Holders of Allowed Class 14 Claims Under the City's Plan of Adjustment* (the "Motion," [Doc. No. [_____]])[1], notice having been given by first-class mail to all known holders of Class 14 Claims under the Plan, and no further notice being necessary or required, a hearing having been held on the Motion, the Court being fully advised in the premises, and there being good and sufficient cause to grant the relief requested,

**THE COURT ORDERS THAT:**

1.      The Motion is granted in all respects.

---

[1] Capitalized terms used but not otherwise defined in this Order have the meanings given to them in the Motion.

2. The form of the Distribution Failure Notice in substantially the same form as attached to the Motion is authorized and approved. The City shall set the deadline for responding to a Distribution Failure Notice at least 30 days from the date of the mailing of that Distribution Failure Notice.

3. The City is authorized to serve, by first-class mail, copies of this Order, the Distribution Failure Notice, a Brokerage Account Form, and a pre-paid return envelope on any Claimholder to whom the Disbursing Agent unsuccessfully attempted to Distribute B Notes. Unless a Claimholder has complied with the Plan and the requirements of Federal Rule of Bankruptcy Procedure 3001(e)(2) concerning a transfer of claim (other than for security after a proof of claim has been filed) or properly filed a change of address form, the foregoing documents are to be sent to the name and address for notice identified in the proof of claim.

4. For Claimholders who elect to return a new Brokerage Account Form, unless the Claimholder has complied with the Plan and the requirements of Federal Rule of Bankruptcy Procedure 3001(e)(2) concerning a transfer of claim (other than for security after a proof of claim has been filed), the name of the creditor on the Brokerage Account Form must match the name of the creditor on the proof of claim form and the Distribution will be made in the name of the creditor on the proof of claim form. If a Claimholder returns a Brokerage Account Form that does not comply with this paragraph of this Order, the City is authorized to disregard the

38065196.17/022765.00213

Brokerage Account Form and rely on Brokerage Account Forms previously submitted by the Claimholder that do comply with this paragraph, if any.

5.     The City is authorized to make modifications to Distribution Failure Notices and Brokerage Account Forms, both before and after these documents have been filled out, that the City in good faith believes are nonmaterial and necessary or appropriate to effectuate the relief provided for by this Order.  The City is not required or obligated to accept or take any action on any instructions or information provided by a Claimholder, including instructions or information which may be provided by email, letter, phone call or any other type of oral or written communication, with respect to a Distribution other than a properly completed and timely received Brokerage Account Form.

6.     If the Disbursing Agent attempts to Distribute B Notes to a Claimholder after the deadline identified in a Distribution Failure Notice served on that Claimholder has passed, and if that Distribution is not successful, then for that Claimholder, (a) all Distributions of Related Income now owing or which later may come due to such Claimholder shall irrevocably revert to the City and any Claim in respect of such Distributions shall be released and forever barred from assertion against the City and its property; (b) the City is authorized and directed to cancel any B Notes held for Distribution to that Claimholder, and those B Notes shall be of no

38065196.17/022765.00213

further force or effect and (c) the proof of claim(s) filed by that Claimholder will be disallowed and expunged.

7.      The City is authorized but not obligated to take any other action necessary or appropriate to further implement the terms of this Order, including, without limitation, to extend a Distribution Failure Notice deadline.

8.      The City's claims agent is authorized and directed to revise the claims register as necessary to effect the terms of this Order (including, without limitation, the relief specified in paragraph 6 of this Order).

9.      This Order is entered in furtherance of this Court's reserved jurisdiction to enter any orders that may be necessary or appropriate to implement or consummate the provisions of the Plan, and to ensure that Distributions to Claimholders are accomplished in accordance with the provisions of the Plan.

10.      In implementing and enforcing the terms of this Order and the Plan, the City and its Related Entities are entitled to all privileges and protections of the Plan, including the exculpation set forth in Article III.D.6., in connection herewith and therewith.

11.      This Order does not modify the Plan or the Confirmation Order.  Each and every term and condition in the Plan and Confirmation Order, including, without limitation, those with respect to the Allowed Claims and Distributions, remains in full force and effect.

12. This Court retains jurisdiction over the interpretation and enforcement of this Order.

38065196.17/022765.00213

## EXHIBIT 2

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**NOTICE OF OPPORTUNITY TO OBJECT TO**
**CITY OF DETROIT'S MOTION TO ESTABLISH PROCEDURES**
**FOR DISTRIBUTION OF NEW B NOTES TO HOLDERS**
**OF ALLOWED CLASS 14 CLAIMS UNDER THE**
**CITY'S PLAN OF ADJUSTMENT**

The City of Detroit has filed the foregoing *City of Detroit's Motion to Establish Procedures for Distribution of New B Notes to Holders of Allowed Class 14 Claims Under the City's Plan of Adjustment* (the "Motion").

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney.**

If you do not want the Court to enter an Order granting the Motion*,* within 14 days, you or your attorney must:

1. File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
226 West Second Street
Flint, Michigan 48502

---

[1] Response or answer must comply with Fed. R. Civ. Proc. 8(b), (c) and (e).

- 1 -

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above. You must also mail a copy to:

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the Motion and you will be served with a notice of the date, time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
     Marc N. Swanson (P71149)
     150 West Jefferson, Suite 2500
     Detroit, Michigan 48226
     Telephone: (313) 496-7591
     Facsimile: (313) 496-8451
     swansonm@millercanfield.com

Dated: November 24, 2021

38065196.17/022765.00213

# **EXHIBIT 3**

None

# EXHIBIT 4

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 24, 2021, he filed the foregoing *City of Detroit's Motion to Establish Procedures for Distribution of New B Notes to Holders of Allowed Class 14 Claims Under the City's Plan of Adjustment* ("Motion"), using the Court's electronic filing system, which sends notice of the filing to all ECF participants registered to receive notice in this case. The City has engaged a noticing agent, which will serve the Motion by first-class mail on all known Holders of Allowed Other Unsecured Claims, on all parties who received service of the *City of Detroit's Motion to Implement Distributions of B Notes to Holders of Allowed Class 14 Claims Under the City's Confirmed Plan of Adjustment* (Doc. No. 13126), and on all parties requesting notices listed on the Master Service List and will file a proof of service to that effect.

By: /s/ Marc N. Swanson
    Marc N. Swanson (P71149)
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

November 24, 2021

# **EXHIBIT 5**

None

38065196.17/022765.00213

# **EXHIBIT 6**

## **DISTRIBUTION FAILURE NOTICE**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## NOTICE REGARDING FAILED DISTRIBUTIONS TO CLASS 14 CLAIMANTS

### PLEASE READ THIS NOTICE CAREFULLY!

On [**Transfer Date, 2021**], the City of Detroit's Disbursing Agent attempted to transfer "New B Notes" to the brokerage account you identified on account of a Class 14 Claim you hold in the City of Detroit's Bankruptcy Case. **The Distribution was unsuccessful. It is possible that the account information you previously provided was incorrect or illegible. The Distribution might have been unsuccessful for additional or other reasons.**

You have until [**Date 30 days from mailing**] ("Deadline") to correct any issues that are preventing you from receiving this Distribution. If you wish to resubmit account information for the same or for a different brokerage account, a form and return envelope is included. **Forms submitted must be mailed in time so that they are actually received by the City of Detroit Claims Processing Center (address below) by no later than the Deadline noted above; it is not enough to have your envelope postmarked by that date. If you are unsure if your form will arrive in time, consider using expedited mail service or an overnight delivery service. Forms may not be faxed or emailed.** If you believe the City of Detroit has the correct information for your brokerage account, you should contact your broker to discuss and resolve any issue(s).

After the Deadline noted above, the City of Detroit's Distribution Agent will make **one final attempt** to transfer New B Notes to your account using information you previously provided (or, if timely received by the Deadline indicated above, updated information). **If your Distribution is unsuccessful a second time, your Class 14 Claim will be marked "undeliverable" and will be forfeited and expunged from the claims register.** If your Class 14 Claim is forfeited, any Distributions you might otherwise have received on your Class 14 Claim will be cancelled and will irrevocably revert to the City of Detroit.

**PLEASE TAKE NOTICE THAT** the *Eighth Amended Plan for the Adjustment of Debts* ("Plan") filed by the City of Detroit ("City") and confirmed as modified by the Bankruptcy Court went into effect on December 10, 2014 ("Effective Date"). The Plan is available online, free of charge, at http://www.kccllc.net/Detroit. All capitalized terms used in this *Notice Regarding Failed Distributions to Class 14 Claimants* ("Notice") but not defined in the Notice have the meanings defined for them in the Plan.

38079069.8/022765.00213

**PLEASE TAKE FURTHER NOTICE THAT** the Plan grouped Claims into different classes, and that Class 14 was established for certain Other Unsecured Claims filed against the City.

**PLEASE TAKE FURTHER NOTICE THAT** you filed or otherwise asserted an Other Unsecured Claim against the City that is being treated as a Class 14 Claim under the Plan. The claims register maintained by the City's claims agent shows you as holding the following claim:

> Claim number:      [Claim Number]
> Claimant name:     [Name of Creditor]

**PLEASE TAKE FURTHER NOTICE THAT** Holders of Allowed Class 14 Claims are to receive a Pro Rata Share of New B Notes and certain related income, such as interest ("Related Income"). A prior *Notice Regarding Distributions to Class 14 Claimants* ("Prior Notice") describing the New B Notes and Related Income was previously mailed to you.

**PLEASE TAKE FURTHER NOTICE THAT** the Prior Notice explained that you needed to complete and return a "Brokerage Account Form" and a W-9 or W-8 tax form (as those terms were defined in the Prior Notice) in order to receive a Distribution on your Class 14 Claim. You are receiving this Notice because the City's records indicate that you returned these forms. Copies of the forms the City received in connection with your Class 14 Claim are included with this Notice.

**PLEASE TAKE FURTHER NOTICE THAT**, on [Filing Date, 2021], the City filed a notice with the Bankruptcy Court and served it on all parties in this Bankruptcy Case (the "Distribution Notice"). The Distribution Notice announced that a Distribution of New B Notes to Holders of Class 14 Claims was scheduled for [Transfer Date, 2021]. The transfer was to be attempted using the information gathered from your forms, as shown below:

> Brokerage name:       [Broker Name]
> Claimant account #:    [Account Number]
> For further credit to:  [For Further Credit]

**PLEASE TAKE FURTHER NOTICE THAT**, on [Transfer Date, 2021], the City's Disbursing Agent attempted to Distribute New B Notes to this account. **The Distribution was not successful**.

**PLEASE TAKE FURTHER NOTICE THAT**, the City is sending you this Notice to provide you the opportunity to determine what caused the Distribution to be unsuccessful and to correct it. If the information shown above does not reflect the information you believe the City should use for the transfer (*e.g.*, because it is incorrect or outdated), a new Brokerage Account Form and a prepaid, preaddressed return envelope are included with this Notice so that you can send corrected information by the Deadline at the top of the notice. If you return the Brokerage Account Form, please make sure the information provided is clear and legible. **If you believe the account information shown above is correct and that the Distribution was not successful because of some other reason(s), you need not return the Brokerage Account Form.**

If the information above appears correct, then you should contact your broker **as soon as possible** to determine why the Distribution failed so that you can take any corrective action you and your broker deem appropriate by the Deadline. At a minimum, you should alert your broker that the

38079069.8/022765.00213

City was unable to distribute New B Notes to your account, that a subsequent Distribution will be attempted shortly, and that the broker should make sure that your account is ready to receive the Distribution.

**PLEASE TAKE FURTHER NOTICE THAT the Deadline to return replacement Brokerage Account Forms and correct any problems with your account is [Date 30 days from mailing].** **Forms must be received by the Deadline; there will be no grace period or extension.** Please be sure to allow sufficient time for mail delivery to be completed by this date. If you have doubts or concerns as to whether the Brokerage Account Form will be received on time, you should consider using an expedited or overnight delivery service. Any replacement Brokerage Account Forms must be sent to the following address (you may not email or fax Brokerage Account Forms):

> City of Detroit Claims Processing Center
> c/o KCC
> 222 N. Pacific Coast Highway, Suite 300
> El Segundo, CA 90245

As before, the name of the creditor listed on your proof of claim must match the name and signature on the Brokerage Account Form. If the names do not match, the City may reject the Brokerage Account Form and, if the Brokerage Account Form is rejected, you will lose your right to any future Distributions.

**PLEASE TAKE FURTHER NOTICE THAT the City will make only <u>one</u> more attempt to Distribute New B Notes to your brokerage account on account of your Allowed Class 14 Claim. If this next Distribution is not successful, (a) all Distributions of Related Income now owing or which later might otherwise have come due to you will irrevocably revert to the City, (b) any B Notes held for Distribution to you will be canceled and will be of no further force or effect and (c) and any Claim in respect of such Distribution or Distributions will be released and forever barred from assertion against the City and its property.**

**PLEASE TAKE FURTHER NOTICE** that the attorneys for the City of Detroit cannot provide you with legal or tax advice. You should contact your own attorney, tax advisor, or broker if you have any questions. If your legal counsel has questions, he or she may contact paralegal, Robin Wysocki, at 313.496.7631. Please do not contact the Bankruptcy Court; the staff there is unable to provide legal or tax guidance.

**PLEASE TAKE FURTER NOTICE THAT** this *Notice Regarding Failed Distributions to Class 14 Claimants* is being delivered in accordance with the *Order Granting City of Detroit's Motion to Establish Procedures for Distribution of New B Notes to Holders of Allowed Class 14 Claims* [Doc. No.  ].

38079069.8/022765.00213

Dated: [Date of Mailing], 2021

ATTORNEYS FOR THE CITY OF DETROIT

By: /s/ Marc N. Swanson
 Jonathan S. Green (P33140)
 Marc N. Swanson (P71149)
 Ronald A. Spinner (P73198)
 MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
 150 West Jefferson, Suite 2500
 Detroit, Michigan 48226

- 4 -

**EXHIBIT A**

BROKERAGE ACCOUNT AND DIRECTION FORM

Name of Creditor as set forth on proof of claim form:

[Name of Creditor]

The above-named Creditor hereby designates the broker-dealer named below to receive the Creditor's Distribution of B-Notes in accordance with the *Notice Regarding Failed Distributions to Class 14 Claimants* dated [Date of Mailing], 2021 (the "*Notice*"). The Creditor acknowledges that neither the City nor the Disbursing Agent is obligated to confirm the accuracy of the information provided in this Brokerage Account and Direction Form, and that any Distribution of New B Notes is subject in all respects to the terms and conditions of the Notice, Plan, and Order of the Bankruptcy Court.

| **Broker-Dealer Information** (to be provided by broker/dealer) | |
|---|---|
| DTC Participant/Broker Name | |
| DTC Participant Broker # | |
| DTC Participant Contact Information (Name, Phone #) | |
| For Further Credit To | |
| FFC A/C # | |

Signature of Creditor:

_____

Date:_____

**By no later than [Date 30 days from mailing], the City of Detroit must RECEIVE this notice at the following address. You are responsible for ensuring that the form is sent in time to be received by this date – there will be no grace period or extensions**.

City of Detroit Claims Processing Center
c/o KCC
222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245