## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST ROBERT WERSHE JR.

The City of Detroit, Michigan ("City") by its undersigned counsel, Miller, Canfield, Paddock and Stone, PLC, files this *Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Robert Wershe Jr.* ("Motion").  In support of this Motion, the City respectfully states as follows:

## I.     Introduction

1.      On July 20, 2021, Robert Wershe Jr. ("Plaintiff") filed a federal court lawsuit against the City seeking monetary damages on account of alleged events that occurred a decade or more before the City filed for bankruptcy.  The filing of the lawsuit violates the discharge and injunction provisions in the City's confirmed Plan and the Bar Date Order (each as defined below).  The City informed the Plaintiff of these violations and asked him to voluntarily dismiss the City from his federal court lawsuit, but to no avail.  As a result, the City is left with no choice but to seek an order barring and permanently enjoining the Plaintiff from asserting and prosecuting the claims described in the federal court action against the City or property of the

- 1 -

City and requiring the Plaintiff to dismiss the federal court action with prejudice to the extent it seeks any such relief.

## II.    Factual Background

### A.    The City's Bankruptcy Case

2.    On July 18, 2013 ("Petition Date"), the City filed this chapter 9 case.

3.    On October 10, 2013, the City filed its *Motion Pursuant to Section 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), for Entry of an Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* ("Bar Date Motion") [Doc. No. 1146], which was approved by order of this Court on November 21, 2013 ("Bar Date Order"). [Doc. No. 1782].

4.    The Bar Date Order established February 21, 2014, as the deadline for filing claims against the City.  Paragraph 6 of the Bar Date Order states that the

> following entities must file a proof of claim on or before the Bar Date…any entity: (i) whose prepetition claim against the City is not listed in the List of Claims or is listed as disputed, contingent or unliquidated; and (ii) that desires to share in any distribution in this bankruptcy case and/or otherwise participate in the proceedings in this bankruptcy case associated with the confirmation of any chapter 9 plan of adjustment proposed by the City…

Bar Date Order ¶ 6.

5.    Paragraph 22 of the Bar Date Order also provides that:

Pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(2), **any entity that is required to file a proof of claim in this case pursuant to the Bankruptcy Code, the Bankruptcy Rules or this Order with respect to a particular claim against the City, but that fails properly to do so by the applicable Bar Date, shall be forever barred, estopped and enjoined from: (a) asserting any claim against the City or property of the City** that (i) is in an amount that exceeds the amount, if any, that is identified in the List of Claims on behalf of such entity as undisputed, noncontingent and liquidated or (ii) is of a different nature or a different classification or priority than any Scheduled Claim identified in the List of Claims on behalf of such entity (any such claim under subparagraph (a) of this paragraph being referred to herein as an "Unscheduled Claim"); (b) voting upon, or receiving distributions under any Chapter 9 Plan in this case in respect of an Unscheduled Claim; or (c) with respect to any 503(b)(9) Claim or administrative priority claim component of any Rejection Damages Claim, asserting any such priority claim against the City or property of the City.

6.     The Plaintiff did not file a proof of claim in the City's bankruptcy case.

7.     On October 22, 2014, the City filed its *Eighth Amended Plan of the Adjustment of Debts of the City of Detroit* ("Plan"), which this Court confirmed on November 12, 2014.  [Doc. Nos. 8045 & 8272].

8.     The discharge provision in the Plan provides:

Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date.  Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date, discharge the

- 3 -

City from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (ii) the Holder of a Claim based on such debt has accepted the Plan.

Plan, Art. III.D.4, at p.50.

9.     Further, the Plan injunction set forth in Article III.D.5 provides in pertinent part:

**Injunction**

**On the Effective Date, except as otherwise provided herein or in the Confirmation Order,**

**a.     all Entities that have been, are or may be holders of Claims against the City…shall be permanently enjoined from taking any of the following actions against or affecting the City or its property…**

**1.     commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affect the City of its property…**

**5.     proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and**

**6.     taking any actions to interfere with the implementation or consummation of the Plan.**

Plan, Article III.D.5, at pp.50-51 (emphasis added).

- 4 -

10. The Court also retained jurisdiction to enforce the Plan injunction and to resolve any suits that may arise in connection with the consummation, interpretation or enforcement of the Plan. Plan, Art. VII. F, G, I, at p.72.

**B. Plaintiff's United States District Court Lawsuit**

11. On July 20, 2021, the Plaintiff filed a complaint against the City and certain individuals, in the United States District Court for the Eastern District of Michigan, commencing case number 21-11686 ("Lawsuit"). On September 14, 2021, the Plaintiff filed his *First Amended Complaint* ("Amended Complaint") against the City and other individuals in their individual capacity. The Amended Complaint is attached as Exhibit 6-1. The docket sheet for the Lawsuit is attached as Exhibit 6-2.

12. In the Amended Complaint, the Plaintiff asserts claims which arise from or relate to Plaintiff's alleged work as a confidential informant in the mid 1980's, the alleged wrongful conviction of Plaintiff in 1987, Plaintiff's grand jury testimony in 1992 or 1993, and his parole hearing in March 2003. Amended Complaint ¶¶ 30-32, 64, 78, 81, 102, 104, 117-120, 125, and 132-135; Affidavit of Richard Wershe Jr. (attached to the First Amended Complaint at ECF No. 4-1) ¶¶ 6, 9, 26, 28, 32, 37.

13. On September 30, 2021, the City of Detroit moved to dismiss the Lawsuit because the Plaintiff's claims are barred by the statute of limitations. The

- 5 -

motion to dismiss is attached as Exhibit 6-3. On November 22, 2021, the Plaintiff filed a response to the motion to dismiss and on December 1, 2021, the City filed its reply in support of the motion to dismiss. The District Court has not ruled on the motion to dismiss.

### III. Argument

14. The Plaintiff violated the Plan's injunction and discharge provisions when he filed the Lawsuit to assert claims and otherwise seek relief against the City. And, he continues to violate them by persisting in prosecuting the Lawsuit. This Court has required the dismissal of similar lawsuits because their filing violated the Plan and Bar Date Order. Doc. Nos. 11296 and 13025; *see also Sanford v. City of Detroit, et al*, No. 17-13062, (E.D. Mich. Dec. 4, 2018).

15. The Plan's injunction prohibited the filing of the Lawsuit and requires that it be dismissed with prejudice. Plan, Article III.D.5, at pp.50-51.

16. Further, the Plan's discharge provision states that the "rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date." Plan Art. III.D.4, at p.50. The Plaintiff did not file a proof of claim in the City's bankruptcy case. Consequently, he does not have a right to a distribution or payment under the Plan on account of the claims asserted in the Lawsuit. Plan, Art. III.D.5, at p.50 ("[A]ll entities that have been, are or may be

- 6 -

holders of Claims against the City . . . shall be permanently enjoined from . . . proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan."). *See also* Plan, Art. I.A.19, at p.3; Art. I.A.134, at p.11; Art. VI.A.1, at p.67 ("Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim."). Any claims that Plaintiff may have had were discharged, and the Plan enjoins the Plaintiff from pursuing them. The Bar Date Order also forever barred, estopped and enjoined the Plaintiff from pursuing the claims asserted in the Amended Complaint.

17. Even if the Plaintiff could somehow seek relief on his claims against the City or its property (which he cannot), the proper and only forum for doing so would be in this Bankruptcy Court. There is therefore no set of circumstances under which Plaintiff is or would have been permitted to commence and prosecute the Lawsuit against the City or its property.

## IV. Conclusion

18. The City thus respectfully requests that this Court enter an order, in substantially the same form as the one attached as Exhibit 1, (a) directing the Plaintiff to dismiss, or cause to be dismissed, the City with prejudice from the Lawsuit; (b) permanently barring, estopping and enjoining the Plaintiff from asserting the claims alleged in, or claims related to, the Lawsuit against the City or property of the City;

38530484.2/022765.00213

and (c) prohibiting the Plaintiff from sharing in any distribution in this bankruptcy

case.  The City sought, but did not obtain, concurrence to the relief requested in the

Motion.

Dated: January 4, 2022         MILLER, CANFIELD, PADDOCK AND
                               STONE, P.L.C.

                               By: /s/ Marc N. Swanson
                               Marc N. Swanson (P71149)
                               150 West Jefferson, Suite 2500
                               Detroit, Michigan 48226
                               Telephone: (313) 496-7591
                               Facsimile: (313) 496-8451
                               swansonm@millercanfield.com

                               Attorneys for the City of Detroit

38530484.2/022765.00213

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## EXHIBIT LIST

| | |
|---|---|
| Exhibit 1 | Proposed Order |
| Exhibit 2 | Notice of Opportunity to Object |
| Exhibit 3 | None |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | None |
| Exhibit 6-1 | Complaint |
| Exhibit 6-2 | Docket Sheet |
| Exhibit 6-3 | Motion to Dismiss |

**EXHIBIT 1 – PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| In re: | Bankruptcy Case No. 13-53846 |
|---|---|
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**ORDER GRANTING CITY OF DETROIT'S MOTION FOR THE**
**ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND**
**CONFIRMATION ORDER AGAINST ROBERT WERSHE JR.**

This matter, having come before the Court on the Motion to Enforce Order, Pursuant to Sections 105, 501, and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), Establishing Bar Dates for Filing of Proofs of Claim and Approving Form and Manner of Notice Thereof Against Robert Wershe Jr. ("Motion"),[1] upon proper notice and a hearing, the Court being fully advised in the premises, and there being good cause to grant the relief requested,

**THE COURT ORDERS THAT:**

1. The Motion is granted.

2. Within five days of the entry of this Order, Robert Wershe Jr. must dismiss, or cause to be dismissed, the City of Detroit with prejudice from the case

---

[1] Capitalized terms used but not otherwise defined in this Order shall have the meanings given to them in the Motion.

captioned as *Robert Wershe Jr. v City of Detroit, a Municipal Corporation, Defendants, et. al*, filed in the United States District Court for the Eastern District of Michigan and assigned Case No. Case No. 21-cv-11686 ("Lawsuit").

3.     Robert Wershe Jr. is permanently barred, estopped and enjoined from asserting claims asserted in the Lawsuit or claims arising from or related to the Lawsuit against the City of Detroit or property of the City of Detroit.

4.     Robert Wershe Jr. is prohibited from sharing in any distribution in this bankruptcy case.

5.     The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

## EXHIBIT 2 – NOTICE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## NOTICE OF OPPORTUNITY TO OBJECT TO CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST ROBERT WERSHE JR.

The City of Detroit has filed papers with the Court requesting the Court to enforce the Order, Pursuant To Sections 105, 501, and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), Establishing Bar Dates For Filing Proofs Of Claim and Approving Form and Manner Of Notice Thereof Against Robert Wershe Jr.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney.**

If you do not want the Court to enter an Order granting the *City Of Detroit's Motion To Enforce Order, Pursuant To Sections 105, 501, and 503 Of The Bankruptcy Code and Bankruptcy Rules 2002 and 3003(C), Establishing Bar Dates For Filing Proofs Of Claim and Approving Form and Manner Of Notice Thereof Against Robert Wershe Jr.,* within 14 days, you or your attorney must:

1.    File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above.  You must also mail a copy to:

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2.    If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
       Marc N. Swanson (P71149)
       150 West Jefferson, Suite 2500
       Detroit, Michigan 48226
       Telephone: (313) 496-7591
       Facsimile: (313) 496-8451
       swansonm@millercanfield.com

Dated: January 4, 2022

**EXHIBIT 3 – NONE**

## EXHIBIT 4 – CERTIFICATE OF SERVICE

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 4, 2022, he served a copy of the foregoing **CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST ROBERT WERSHE JR.** upon counsel for Robert Wershe Jr., in the manner described below:

Via first class mail and email:

Ayad Law, PLLC
Nabih H. Ayad
William D. Savage
645 Griswold St., Ste 2202
Detroit, MI 48226
Ayadlaw@hotmail.com

DATED:  January 4, 2022

By: /s/ Marc N. Swanson
    Marc N. Swanson (P71149)
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

# EXHIBIT 5 – NONE

38530484.2/022765.00213

# EXHIBIT 6-1 – AMENDED COMPLAINT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RICHARD WERSHE, JR,

*Plaintiff,*

*v.*

THE CITY OF DETROIT; WILLIAM JASPER, former Detroit Police Officer, individually; KEVIN GREENE, former Detroit Police Officer, individually; CAROL DIXON as representative of the estate of JAMES DIXON, former Federal Bureau of Investigations agent, individually; HERMAN GROMAN, former Federal Bureau of Investigations, individually; LYNN HELLAND, former Assistant United States Attorney; and E. JAMES KING former Assistant United States Attorney; and UNKNOWN ASSISTANT UNITED STATES ATTORNEY; jointly and severally,

*Defendants*

Case No. 21-CV-11686

Hon. Laurie J. Michelson

**FIRST AMENDED VERIFIED COMPLAINT AND JURY DEMAND**

A Y A D   L A W,   P . L . L . C .
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

AYAD LAW, PLLC
Nabih H. Ayad (P59518)
William D. Savage (P82146)
Attorney for Plaintiff
645 Griswold St., Ste 2202
Detroit, MI 48226
P: 313.983.4600
F: 313.983.4665
ayadlaw@hotmail.com

## FIRST AMENDED VERIFIED COMPLAINT

NOW COMES, Plaintiff Richard Wershe, Jr (hereinafter "Plaintiff"), by and through his attorneys at Ayad Law, PLLC, and does hereby make the following complaint:

### PRELIMINARY STATEMENT

It is anticipated that Defendants in this action will assert a defense based on the statutory limitations periods of Plaintiff's causes of action. However, the undersigned counsel has done extensive research as to that issue, and feels confident in bringing this action based on the relatively recent (and commendable) trend of federal courts to apply equitable tolling of limitation periods in cases brought by recently released prisoners against the criminal justice system and those that had the power to keep them imprisoned. "Thus, the Court concludes that in the prison context, reasonable fear of retaliation may be sufficient to constitute extraordinary circumstances warranting equitable tolling, particularly if the person threatening retaliation is a defendant or another official who could be or was influenced by a defendant." *Davis v Jackson*, No. 15-CV-5359 (KMK), 2016 WL 5720811, at *11 (SDNY, September 30, 2016).

The emerging doctrine holds that when a prisoner has a legitimate fear of retaliation for exercising their rights, equitable tolling must be considered. Here, Plaintiff Wershe actually has been retaliated against by the justice system, and

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

received wise counsel from his prior two attorneys (William Bufalino and Ralph Musilli) to forego seeking legal redress until he was out of prison for fear of retaliation.[1]

## THE PARTIES

1. Plaintiff RICHARD J. WERSHE, Jr. is a recently released prisoner. Plaintiff is also known by the pseudonym White Boy Rick, a name given to him by the news media and never used by himself or his acquaintances. Born July 18, 1969, Plaintiff spent 32 years and 7 months in prison, only being released last year on July 20 of 2020. Plaintiff is the longest serving sentence bestowed on a minor, for a nonviolent offense, in the history of the State of Michigan, 32 years and 7 months; His entire adult life until his release less than a year ago. Prior to his arrest in 1987, and as of now in 2021, Plaintiff resides in Eastern District of Michigan.

2. Defendant THE CITY OF DETROIT is the municipality which operated the Detroit Police Department and employed the individual police officers that participated in the Joint Federal Bureau of Investigations-Detroit Police Department Task Force which abused Plaintiff as a minor.

---

[1] See attached Affidavits of Richard J. Wershe, Jr., his fiancée Michelle MacDonald, and his former attorneys widow Ms. Lynn Hoover.

A Y A D   L A W ,   P . L . L . C .
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

3. Defendant WILLIAM JASPER, is a former Detroit Police Officer. Upon information and belief, he lives in Eastern District of Michigan.  He is being sued in his individual capacity.

4. Defendant KEVIN GREENE, is a former Detroit Police Officer. Upon information and belief, he lives in Eastern District of Michigan.  He is being sued in his individual capacity.

5. Defendant CAROL DIXON is sued in her capacity as representative of the estate of JAMES DIXON. James Dixon is a former Federal Bureau of Investigations agent. Upon information and belief, he lived and passed in Eastern District of Michigan; his wife, Carol Dixon, currently lives in the Eastern District of Michigan; and his estate is in the Eastern District of Michigan. He is being sued in his individual capacity.

6. Defendant HERMAN GROMAN, is a former Federal Bureau of Investigations agent. Upon information and belief, he lives in Eastern District of Michigan. He is being sued in his individual capacity.

7. Defendant LYNN HELLAND is a former Assistant United States Attorney for the Eastern District of Michigan and was the head of the public corruption unit at the United States Attorneys Office for the Eastern District of Michigan. He worked closely with Defendant Herman Groman on Operation Backbone. Upon information and belief, he lives in Eastern District of Michigan. He is being sued in his individual capacity.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

8.  Defendant EDWARD JAMES KING is a former Assistant United States Attorney for the Eastern District of Michigan. He was a lead attorney working with the Drug Enforcement Agency in the 1990's to convict Detroit gang members. Upon information and belief, he lives in Eastern District of Michigan. He is being sued in his individual capacity.

9.  Defendant UNKNOWN ASSISTANT UNITED STATES ATTORNEY is a former Assistant United States Attorney for the Eastern District of Michigan. He is whoever Lynn Helland referred to when he told Plaintiff in 2003 that his 'boss' had unsealed Plaintiff's grand jury testimony would not allow any Assistant United States Attorney to advocate for Plaintiff's release from prison. Upon information and belief, he lives in Wayne County, Michigan. He is being sued in his individual capacity.

### JURISDICTION & VENUE

10. Under U.S. Const. Art. III §2, this Court has jurisdiction because the rights sought to be protected herein are secured by the United States Constitution. Jurisdiction is proper pursuant to 28 U.S.C. § 1331, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), *et seq.*, 5 USC § 702, 5 USC § 706, the United States Constitution, and federal common law.

11. This action seeks declaratory relief pursuant to the Declaratory Judgement Act, 28 USC §§ 2201-2, Rules 57 and 65 of the Federal Rules of Civil

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

Procedure, and pursuant to the general, legal, and equitable powers of this Court.

12. This action seeks damages pursuant to 28 USC § 1343(a)(4) and 28 USC § 1357.

13. Venue is proper under 28 USC § 1391(e) because the Defendants in this action are United States officers or employees and a substantial part of the events giving rise to the claims herein occurred in this judicial district for the Eastern District of Michigan.

## FACTUAL BACKGROUND

### *CHAPTER ONE: CHILD ABUSE*

14. In 1980's Plaintiff sister started dating a known drug dealer. Plaintiff's father became concerned and contacted the FBI to ask if they could help get this drug dealer out of her life.

15. In 1984, FBI Agent James (Jim) Dixon (the estate of which is sued here as represented by surviving spouse Carol Dixon, hereinafter all referenced collectively as "Dixon") met with Plaintiff's father at a McDonalds, where he had taken Plaintiff. Dixon agreed to help Plaintiff's father on the condition that Plaintiff's father identify individuals in photographs which Dixon had brought with him.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

16. There, Plaintiff was able to identify most of the individuals in the photographs because, like nearly all of his classmates and neighborhood friends, he knew the individuals from neighborhood gossip.

17. Dixon was apparently impressed with Plaintiff's knowledge, because within a few days, he drove up alongside Plaintiff as he walked home from school and told Plaintiff to "get in" to his vehicle.

18. Plaintiff, being a 14-year-old child with the fear of law enforcement common to East Detroiter's at that time, felt compelled to do as he was told by this law enforcement agent, a figurative and literal authority figure.

19. Although he did not want to out of fear, Plaintiff complied with Dixon's demands

20. Mr. Dixon's unannounced visits with Plaintiff quickly became a regular occurrence, occurring dozens of times over the course of the next several months, with Dixon introducing Plaintiff to other law enforcement from both the Federal Bureau of Investigations ("FBI") and the Detroit Police Department ("DPD") that were part of a joint taskforce (the "taskforce").

21. At no point during his time working as a confidential informant did Plaintiff feel he was free to disobey the taskforce officers when they demanded he get into their vehicles.

22. Although the taskforce agents and officers made absolutely clear to Plaintiff that he was not to speak of their dealings to anyone, in order to attempt to

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

cover their abuse, they would occasionally give Plaintiff some cash to keep from talking.

23. Knowing how fundamentally wrong and outrageous it was to endanger a child, Dixon and the taskforce hid this fact in their official files by using Plaintiff's father's name, Richard J. Wershe, Sr., in their reporting, instead of Plaintiff's name: Richard J. Wershe, Jr.

24. In approximately August of 1984, Dixon introduced Plaintiff to his coworker, FBI Agent Herman (Herm) Groman ("Groman").

25. Dixon then stopped interacting with Plaintiff while Groman began accosting Plaintiff much more frequently than Dixon had, multiple times a week and sometimes each day for several days in a row.

26. Like Dixon, Groman would randomly accost Plaintiff while he walked to or from school, to the store, to friends' houses, to or from the basketball court, or even show up at Plaintiff's home unannounced.

27. **Unlike Dixon, Groman asked for Plaintiff to act as more than just an informant and began having Plaintiff engage in extremely more dangerous criminal drug-related activity.**

28. Thereupon, Groman introduced Plaintiff to DPD officers William (Billy) Jasper ("Jasper"), Kevin Greene ("Greene") who were part of the task force.

A Y A D   L A W ,   P . L . L . C .
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

29. Although Plaintiff was hesitant to keep cooperating, Groman and the task force pressured Plaintiff to continue down this dangerous path, thereby risking his life.

30. Plaintiff, at the tender age of 15 years, was of a malleable and impressionable mindset and did what the FBI agent and DPD officers demanded he do, that is go into drug houses he did not know, in areas of the city he did not know, and ask to buy drugs from people he did not know, because Groman, Jasper, Greene and other law enforcement officers assured him that they "would be right there" if anything went wrong.

31. **At the time, being a child, Plaintiff did not fully comprehend that, despite their supposed best intentions, the task force would be completely unable to save him should one of the many violent drug dealers or their criminal henchmen decide to shoot Plaintiff for nosing in on their drug operation**.

32. **In the months of August, September, October, and November of 1984, Groman, Jasper, and/or Greene would pick Plaintiff up in his car and make him go purchase drugs from drug houses throughout the greater Detroit area, return with the drugs, allow them to take a small sampling of the drugs, and then leave with the remainder of the drugs, with instructions to sell them**.

33. Plaintiff, although clearly an adolescent with little business sense, thanks to the task force, was frequently in the same place, at the same time as Johnny

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

**9 |** Page

Curry, the leader of a dangerous drug-trafficking gang known as the Curry Gang or the Curry Brothers Gang.

34. It is no surprise that then that Plaintiff likely raised suspicion amongst these dangerous criminals, who likely suspected him to be an informant.

35. In November of 1984, there was an attempted assignation of Plaintiff whereby he was shot at point blank range with a .357 magnum, cutting his large intestine in half and, and only surviving by the grace of God.

36. **Grosman, Jasper, and Greene went to see Plaintiff in the hospital for the sole purpose of persuading and coercing him into lying about the circumstances of his attempted assassination**.

37. **Instead of pulling him out, they further endangered him by coercing him to stay a confidential informant.**

38. After being shot, Plaintiff did as he was told by Groman, Jasper, and Greene and lied about his attempted murder, stating that it was all just a big "accident."

39. Yet, it was obvious to most that the shooting was not an accident, Plaintiff was told to cover it up to greatly increase his credibility on the 'streets' and, more importantly to the Defendants that it would allow them to continue their abuse of Plaintiff.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

40. Not only did Defendants continue their abuse, but Plaintiff ended up doing for more 'jobs' for the task force after he was shot than he ever did before he was shot.

41. In fact, Defendants gave 15-year-old Plaintiff a fake ID stating that he was 21 and sent him to Las Vegas with thousands of dollars of cash, to go undercover.

42. When Plaintiff was first criminally charged, he gained notoriety in the local news and been dubbed by the media as "White Boy Rick."

43. The media dubbed Plaintiff a drug "king pin," and accusation that was false in every sense.

44. Plaintiff had no employees, agents, or underlings, and no criminals had allegiance to Plaintiff, at any time.

45. Plaintiff was young and completely unable to comprehend in an adult sense the dangers of being a 'rising star' in the drug trade in a highly contested drug-war battleground of 1980's Detroit.

46. Plaintiff's fame and notoriety made him a local legend amongst his peers, but amongst adults as well.

47. In 1987, when the media coverage of "White Boy Rick" exploded, Plaintiff became a local and national celebrity, easily recognized and often followed and photographed by Detroit news reporters.

48. By this time, Grosman, Jasper, Greene, and the other members of the task force had ended their contacts with Plaintiff, likely to save themselves from

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

legal action should they have been caught using a 14/15-year old as a drug dealer-informant.

49. Plaintiff was now a 16-year-old child, known on sight by most of Detroit as a notorious drug king pin, in a city being ravaged by drug warfare, both between rival drug gangs and the Detroit Police Department, and with no trusted adults that he could contact for any guidance.[2]

50. Accordingly, criminals attempted to murder Plaintiff on multiple occasions.

51. On one occasion, a drive-by shooting occurred at Plaintiff's father's house while Plaintiff's jeep was parked outside. His father's house was shot, 15 to 20 bullets struck his jeep, and at least one bullet flew within a foot of Plaintiff's father's head while he sat and watched television in his family room.

52. On another occasion, Plaintiff was the passenger of a car in which he was driving with his friend, Roy (last name unknown), and a van pulled up alongside them while they were stopped at a light at Harper Avenue and Outer Drive, when the van's door swung open and an occupant opened fire on Plaintiff.

53. Plaintiff's friend ran the red light, sped through the intersection, and the pair escaped uninjured.

---

[2] The task force that Plaintiff had worked with focused on two types of criminals, Curry Gang members and corrupt Detroit Police Officers. Accordingly, Plaintiff was afraid of ever having to call on the Detroit Police Department (outside of the task force) for help.

54. But hitmen should not have been Plaintiff's only concern. Now that he was falsely promoted as a drug king pin in a city which was clamoring for law enforcement to punch back at the drug traffickers, Plaintiff was also an irresistible target for Detroit Police Officers, whom potentially knew nothing of Plaintiff's past career as an informant with a specialized federal-local joint "task force." **Thanks to Defendants, Plaintiff had become a target for the drug gangs as well as a target for law enforcement**.

55. Accordingly, on May 22, 1987, at the age of 17, upon information and belief, Plaintiff was set up and taken down by Detroit Police.

56. While driving to his grandmother's house with a friend (where Plaintiff often parked his car), Plaintiff and his friend were pulled over by Detroit Police.

57. There, although Plaintiff allowed the DPD officers to search his vehicle, a conflict ensued as the DPD officers became aggressive with Plaintiff and his friend.

58. Frightened, Plaintiff did as any child would do, and ran away.

59. When DPD caught Plaintiff less than an hour later, they beat him so badly, including whipping him with their pistols, that he had to be hospitalized at Detroit Receiving Hospital overnight.

60. Hours after Plaintiff's hospitalization at the hands of DPD, DPD allegedly received a 911 call tipping them off to a large box full of cocaine that was

A Y A D  L A W ,  P . L . L . C .
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

later used as evidence against Plaintiff in the case that put him in prison for 32 years 7 months.

61. **This was despite the fact that none of the many witnesses who witnessed Plaintiff flee that day saw Plaintiff running with a box, despite trying the DPD forensic technicians could recover no fingerprints from the box, and when the 911 tape was requested DPD stated that the 911 call had happened right as the tape was being changed, so they claimed there was not tape recording to give**.

62. In 1978, Michigan passed what became known as the 650-lifer law (MCL 333.7401) which, before its revision, **mandated that anyone convicted of possessing 650 grams of cocaine or more be sentenced to life without the possibility of parole**.[3]

63. At his trial, Plaintiff was alleged to have possessed more than 650 grams of cocaine with an intent to distribute it.

64. **In 1987, while still a minor, Plaintiff was convicted and sentenced to life without parole**.[4]

---

[3] After Plaintiff's sentencing, Reforms to the 650-lifer law in Michigan drug crime cases now have changed the mandatory life sentence requirement to 20 years to life, **with eligibility for parole**.

[4] This sentence, as applied to Plaintiff, was later held unconstitutional by the Supreme Court of the United States: "1) Eighth Amendment prohibits imposition of life without parole sentence on juvenile offender who did not commit homicide, and 2) State must give juvenile nonhomicide offender sentenced to life without parole meaningful opportunity to obtain release." *Graham v Florida*, 560 US 48; 130 S Ct 2011; 176 L Ed 2d 825 (2010), as mod (July 6, 2010).

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

### CHAPTER TWO: DEFENDANTS' CONTINUED UNLAWFUL ACTION

65. In 1991, while Plaintiff was in prison, Defendant Groman introduced Defendant Lynn Helland ("Helland") an Assistant United States Attorney with the Eastern District of Michigan.

66. Both Groman and Helland wanted Plaintiff to play a key role in a large sting-operation to take down corrupt Detroit Police and politicians, among others. This was deemed "Operation Backbone."

67. Although Plaintiff initially did not want to participate, Helland persisted and persuaded the then 20-year-old Plaintiff that if he helped them, **they would always do everything in their power to get Plaintiff released from prison**.

68. Operation Backbone was a success, with some 13 Detroit Police and public officials being arrested as a result of the operation.

69. Helland then, arranged to have Plaintiff placed in the witness protection program while in prison, out of fear that elements of the corrupt Detroit Police Department that he had helped to strike a blow, would be able to retaliate against him while he was imprisoned.

70. This relocation and giving of a fake identity had a massive psychological effect, (essentially cutting Plaintiff off from his family to the point that he did not see his father for 15 years and saw his mother only twice in as many years) on Plaintiff as the thought that the same law enforcement that he had looked up to as a child, and worked with, just a few years ago, would potentially have

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

him killed while he was in prison, drove home for Plaintiff the absolute dehumanizing vulnerability that accompanied being locked up; his existence was not just jeopardized by prison gangs, but by the entire \*justice\* apparatus itself.

71. **Now, after having to be relocated into the witness protection program, Plaintiff's attorney William Bufalino's advice to not attempt legal action against any of the law enforcement that had caused his imprisonment made sense in an entirely more serious way.**

72. **Plaintiff was terrified of his captors. And the hopelessness inevitably instilled by his sentence of life without parole sapped the 'fight' out of him the entire time he was incarcerated**.

73. In approximately 1992, federal agents from the Drug Enforcement Agency ("DEA") along with Assistant United States Attorneys ("AUSA") from the Eastern District of Michigan E. James King ("King") approached Plaintiff for more life-risking help and asked him to testify before a grand jury against members of the Best Friends gang.

74. Once again fearing for his safety, Plaintiff at first refused.

75. Yet King assured Plaintiff that he had nothing to worry about because he guaranteed the indictments of these criminals and Plaintiff's testimony before the grand jury would always be sealed and never be released, specifically to protect those testifying against the gangsters.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

76. This guarantee from the Assistant United States Attorney assuaged Plaintiff's fears and he agreed, on the condition that King do everything in his power going forward to assist Plaintiff in getting his sentence commuted.

77. **King agreed to do everything in his power to get Plaintiff's sentence commuted in exchange for his grand jury testimony against the very dangerous and deadly 'Best Friends' gang.**

78. **The parties having reached an agreement, sometime between 1992 and 1993, Plaintiff testified before the grand jury regarding the Detroit gangsters and drug pushers as requested, giving very powerful testimony against the Best Friends gang.**

79. **At the grand jury testimony, he was again assured that nothing he said could ever be used against him in any way**.

*CHAPTER THREE: THE UNLAWFUL RENEGING ON THE AGREEMENT*

80. In July of 1998, Michigan's Governor John Engler reformed the Michigan lifer law, allowing prisoners such as Plaintiff to become eligible for parole after serving 15 years in prison.

81. After the reforming of the law, Plaintiff became eligible for parole in 2002 and was in early 2003, Plaintiff was given notice by the Michigan Parole Board of his upcoming March 2003 parole hearing.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

82. Plaintiff felt that, finally, all of the life-endangering work he did for FBI agent Groman, the DEA agents, AUSA Helland, and King, while in prison was about to pay off with the Defendants keeping their end of the agreement.

83. Without Plaintiff, Operation Backbone would never have happened and the 13 corrupt Detroit Police Department officials would never have been charged.

84. Without Plaintiff, members of several Detroit's infamous drug gangs would never have been taken off the streets.

85. In preparation for his parole hearing, Plaintiff began calling the Justice Department actors that had promised to help him: starting with Assistant United States Attorney Lynn Helland, the head of the public corruption unit at the Eastern District of Michigan, to ask for him to do his end of the agreement and advocate at the hearing.

86. **Plaintiff, however, received devastating news from Helland. Namely, the deal was off and that they would not be performing their end of the agreement.**

87. **Helland informed Plaintiff that one of his superiors at the office had told him he, he nor James King could advocate for Plaintiff in the future because the United States Attorneys Office for the Eastern District of Michigan now had an official stance regarding Plaintiff: That they did not support his release (breaching their agreement with Plaintiff).**

88.**<u>The United States Attorneys Office for the Eastern District of Michigan</u>**
**<u>sent a letter to that effect to the Michigan Parole Board to consider at</u>**
**<u>Plaintiff's hearing.</u>**

89. Plaintiff experienced then a worse heartbreak and suffocating sense of hopelessness than he felt when he was first convicted of life without parole.

90. Come the day of his parole hearing, Plaintiff's nightmare turned surreal as Detroit Police Officers that he had never met before testified at his hearing, quoting directly from Plaintiff's sealed grand jury testimony.

91. Plaintiff had been assured years earlier, in the mid 1990's, that his grand jury testimony would never become public and could never be used against him.

92. If he had not received that promise, Plaintiff never would have testified as he did before the grand jury, for his own safety and well-being.

93. In a bathroom break at his hearing, Plaintiff told his then attorney, Bufalino, that the Parole Board was quoting from his sealed testimony before the grand jury.

94. Bufalino's response was to tell Plaintiff not to dare make the accusation that his sealed testimony had been illegally distributed at the hearing and further to keep his mouth shut about it until after he get out of prison.

95. One of the Detroit Police Officers who Plaintiff never met before and who testified against Plaintiff was William Rice ("Rice").

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

96. Upon information and belief, at the time of Plaintiff's hearing, Rice was the head of, or a high-level official in, the Detroit Police Department's homicide division.

97. **In 2016, Rice signed a sworn affidavit stating that prior to Plaintiff's hearing, he had received a curated transcript of the testimony which Plaintiff gave to the grand jury and which was supposed to be sealed**.

98. Although officer Rice did not know Plaintiff he came and testified before the parole board as though he had dealt with him based on the illegally released grand jury testimony. Hence, the grand jury testimony that Plaintiff was assured would never be used against him, was used against Plaintiff to deny him parole.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

<u>AFFIDAVIT OF WILLIAM R. RICE</u>

STATE OF MICHIGAN    )
                     ) ss
COUNTY OF Manistee   )

I, WILLIAM R. RICE, being first duly sworn, verify and affirm that the following statements and information are made freely and voluntary:

1. My name is William R. Rice. I was a Detroit Police Officer for 55 years, prior to my retirement in 2006. For 29 years of my police career, I was assigned to the homicide section.

2. During the period of time I was in the homicide section, I was thoroughly knowledgeable with every homicide investigation that was opened or ongoing.

3. In or about 2003 I was contacted and informed that I had been selected by my superiors to testify at a parole hearing for Richard Wershe, Jr., also known as "White Boy Rick".

4. I advised the prosecution that, while I was aware of the impact that drugs were having on the community, the violence associated with the drug trade, and the difficulties involved in investigating drug related homicides, I did not know Richard Wershe, Jr.

<sup>5</sup>

A Y A D  L A W  P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

99. <u>**Someone at the United States Attorneys Office for the Eastern District of Michigan (herein named as Defendant Unknown Assistant United States Attorney) had unlawfully published the sealed testimony to be used against Plaintiff at his hearing before the Michigan Parole Board**</u>.

---

<sup>5</sup> This document has been reviewed and verified by Plaintiff.

**100.**      **The significance of this leaked document is not to be taken lightly as the grand jury testimony that was presented to the Michigan Parole Board absolutely materially was the dispositive factor in the Board's decision to not allow Plaintiff parole, as it associated Plaintiff with the very dangerous Best Friends gang network.**

**101.**      **This information about Plaintiff's iner dealings and knowledge of the Best Friends gang would never have been able to be known had it not been for Plaintiff's own grand jury testimony which he would have never given had he known that 1) the Defendants were going to reneg on their deal and 2) that they would go even further and use the testimony to keep him in prison for another 17 years of hell.**

102.      The results of the publishing of Plaintiff's sealed testimony were, as expected, that he was denied parole at his 2003 hearing.

103.      The psychological and emotional effects from Plaintiff's utter betrayal at the hands of Helland, Groman, King, and the Unidentified AUSA cannot be overstated.

104.      After 2003, Plaintiff fell into deep depression and despair for many years.

105.      During his depression, and desiring some emotional connection to the outside world and to his family, Plaintiff attempted to facilitate the purchase of a car for his mother from Florida while in prison.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

106.     In 2005, Plaintiff was charged with racketeering.

107.     After being kept in solitary confinement for 16 months, Plaintiff was given an ultimatum by the Florida prosecutor: Either plead guilty, or they would indict Plaintiff's mother and sister.

108.     Plaintiff chose to spare his mother and sister, and pled guilty to the trumped and ridiculous charges.

109.     The judge in the Florida case even made a note of this on the record, stating that Plaintiff had only agreed to the guilty plea because the Florida prosecutor had threatened to indict his mother and sister.

110.     Plaintiff was sentenced to five years in Florida prison, to be served after his life sentence.

111.     In approximately 2004, Plaintiff became represented by new counsel, Mr. Ralph Musilli ("Musilli") who began working diligently to get Plaintiff released from prison.

112.     **Plaintiff, having all but resigned himself to the belief that he would spend the rest of his life in prison, inquired with Musilli about potentially taking legal action against the defendants named herein, but Musilli assured Plaintiff there was a real possibility of him being released on parole and, therefore, Plaintiff did not take action against these named defendants because he truly believed they would exert their vast influence unduly to keep him in prison**.

113.     In 2017, Plaintiff was finally paroled by the Michigan Parole Board.

114.     He never left government custody, however. Instead, Plaintiff was transferred immediately to a Florida prison, where he served five years.

115.     Plaintiff was finally released from prison on July 20, 2020.

116.     Plaintiff had spent 32 and 7 months years in prison.

117.     But-for Plaintiff's work as a confidential informant in the 1980's, Plaintiff never would have been shot.

118.     But-for Plaintiff's work as a confidential informant in the 1980's, Plaintiff never would have been sentenced to life in prison without parole.

119.     But-for Plaintiff's key role in Operation Backbone in the early 1990's, Plaintiff never would have had to have been placed in the witness protection program and lived in fear of his life while in prison.

120.     But-for Plaintiff's testimony to the grand jury in the mid-1990's, which Plaintiff was promised could never be used against him, Plaintiff never would have lost his chance at being paroled in 2003 and would not have had to do 17 additional grueling years in Prison.

### COUNT I
### § 1983 Fifth Amendment Substantive Due Process Violation
### Unconstitutional Indoctrination of Child into Criminal Society
### (*As to Defendants Jasper and Greene*)

121.     Plaintiff and every child have a substantive due process right to be free from government grooming and indoctrination into criminality.

A Y A D   L A W ,   P . L . L . C .
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

122.   This right is clear from the history of our culture and was or should have been obvious to the law enforcement officers that taught Plaintiff to deal drugs.

123.   Defendants taught Plaintiff how to deal drugs and encouraged him, with the undue influence of adult authority figures over children, in this behavior and as a direct result, Plaintiff became a drug dealer.

124.   The upholding of the right of children to be free from government grooming or indoctrination must be upheld if the United States of America is to have a free and ordered society.

125.   Defendants' actions in continuously taking 14-16-year-old Plaintiff into their custody and control, couching him on how to commit serious felonies, providing him with large amounts of illicit drugs, and instructing him on how to behave like a high-level criminal, absolutely shocks the conscience to the point were several documentaries and a Hollywood film have been made recounting the almost unbelievable sequence of governmental abuses.

126.   But-for Defendants' actions in grooming and indoctrinating Plaintiff into becoming a notorious drug dealer, Plaintiff would never have been shot in the abdomen at point blank range with a .357 magnum.

127.   But-for Defendants' actions in grooming and indoctrinating Plaintiff as a child, Plaintiff never would have spent his entire adult life (32 years and 7 months) up until now in the small, dark, cages that were his prison cells.

A Y A D   L A W ,   P . L . L . C .
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

128.    As a direct result of Defendants' above-described unlawful acts, Plaintiff suffered 32 and 7 months years in prison. Plaintiff still suffers residual physical and psychological injuries as a direct result of Defendants above-described actions including but not limited to: severe anxiety, severe depression, severe paranoia, severe digestive issues, and incurable abdominal pains.

WHEREFORE, as Plaintiff's injuries are a direct result of Defendants' clear violation of his obvious constitutional rights, justice demands that this Honorable Court grant Plaintiff's requested relief.

### COUNT II
### § 1983 *Monell* Liability
### Substantive Due Process Violation
### (*As to Defendant City of Detroit*)

129.    Detroit Police Department Defendants William Jasper and Kevin Greene acted in the above-described manners, in violation of Plaintiff's above-described constitutional rights, pursuant to official and/or unofficial Detroit Police Department policy.

130.    The City of Detroit was the moving force behind Plaintiff's injuries in that it sanctioned, officially and unofficially, the abuse of Plaintiff by his use as a child informant and drug dealer and the use of his sealed grand jury testimony against him at his parole hearing.

131.     Defendant The City of Detroit, through its deliberate conduct, had a "policy or custom" that caused the above-described violation of Plaintiff's rights.

132.     The indoctrination of Plaintiff as a 14-year-old child into a drug dealer was the direct result of the City of Detroit's official policy regarding its joint task force with the FBI and the extreme war on drugs.

133.     Additionally or alternatively, the indoctrination of Plaintiff as a 14-year-old child into a drug dealer was the direct result of a final decision maker at the City of Detroit ratifying it.

134.     Additionally or alternatively, the indoctrination of Plaintiff as a 14-year-old child into a drug dealer was the direct result of the City of Detroit's inadequate training as to the use of children in repeated, continued, and dangerous operations where they were entrusted with the custody of large amounts of illicit drugs.

135.     Additionally or alternatively, the indoctrination of Plaintiff as a 14-year-old child into a drug dealer was the direct result of the City of Detroit's custom of indifference and tolerance to federal constitutional rights violations.

136.     As a direct result of Defendants' above-described unlawful acts, Plaintiff suffered 32 and 7 months years in prison. Plaintiff still suffers residual physical and psychological injuries as a direct result of Defendants above-described actions including but not limited to: severe anxiety, severe

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

depression, severe paranoia, severe digestive issues, and incurable abdominal pains.

WHEREFORE, as Plaintiff's injuries are a direct result of Defendants' clear violation of his obvious constitutional rights, justice demands that this Honorable Court grant Plaintiff's requested relief.

## COUNT III
### § 1983 *Monell* Liability
### Procedural Due Process Violation
### (*As to Defendant City of Detroit*)

137.    Detroit Police Department Defendants William Jasper and Kevin Greene acted in the above-described manners, in violation of Plaintiff's above-described constitutional rights, pursuant to official and/or unofficial Detroit Police Department policy.

138.    The City of Detroit was the moving force behind Plaintiff's injuries in that it sanctioned, officially and unofficially, the abuse of Plaintiff by his use as a child informant and drug dealer and the use of his sealed grand jury testimony against him at his parole hearing.

139.    Defendant The City of Detroit, through its deliberate conduct, had a "policy or custom" that caused the above-described violation of Plaintiff's rights.

140.    Official policy 2 – The acquiring of Plaintiff's sealed grand jury testimony and its distribution to Detroit Police Officers, including William

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

Rice, who were then instructed to go testify against Plaintiff as if from their personal knowledge was the result of an official policy of the City of Detroit.

141.   Additionally or alternatively, the acquiring of Plaintiff's sealed grand jury testimony and its distribution to Detroit Police Officers, including William Rice, who were then instructed to go testify against Plaintiff as if from their personal knowledge was the result of the ratification of a final decision maker at the City of Detroit and/or its Detroit Police Department, as William Rice was a high-ranking Detroit Police Department official at the time (head of the homicide unit) and he testified that he was commanded to review the sealed grand jury testimony and testify at Plaintiff's 2003 parole hearing.

142.   Additionally or alternatively, the acquiring of Plaintiff's sealed grand jury testimony and its distribution to Detroit Police Officers, including William Rice, who were then instructed to go testify against Plaintiff as if from their personal knowledge was the result of the City of Detroit's custom or policy of inadequate training as to the unlawfulness of using sealed testimony in said fashion and testifying so as to make it appear that the officer had first-hand knowledge of the events they described.

143.   Additionally or alternatively, the acquiring of Plaintiff's sealed grand jury testimony and its distribution to Detroit Police Officers, including William Rice, who were then instructed to go testify against Plaintiff as if

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

from their personal knowledge was the direct result of a policy or custom of

indifference and tolerance of constitutional violations by the City of Detroit

employees and their police.

144.    As a direct result of Defendant the City of Detroit's above-described

illegal policy or custom, Plaintiff suffered severe injury as a direct result of

Defendants' above-described actions in the form of doing another 17 years in

prison, in having his parole denied, in having his hope and faith in humanity

shattered.

WHEREFORE, as Plaintiff's injuries are a direct result of Defendants' clear violation

of his obvious constitutional rights, justice demands that this Honorable Court grant

Plaintiff's requested relief.

## COUNT IV
### § 1983 Fourth Amendment Illegal Seizure Violation
### Taking Plaintiff into Custody Throughout Childhood
### (*As to Defendants Jasper and Greene*)

145.    Plaintiff has a Fourth Amendment right, applicable to the States via the

Fourteenth Amendment, to be free from unlawful government seizures of his

person.

146.    Defendants violated said right, continuously, when they unlawfully

seized Plaintiff time and again in 1984 through 1986, through a show of force

and authority at Plaintiff, ordering him to get into their vehicles, go into drug

houses, etc.

A Y A D   L A W ,   P . L . L . C .
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

147.    Plaintiff, a child, submitted to all of the above-described shows of force and authority.

148.    The injuries from the above-described violations of Plaintiff's Fourth Amendment right to be free from unlawful government seizure eventually led to his indoctrination as a drug dealing criminal and his serving 32 years and 7 months in prison. Plaintiff still suffers residual physical and psychological injuries as a direct result of Defendants above-described actions including but not limited to: severe anxiety, severe depression, severe paranoia, severe digestive issues, and incurable abdominal pains.

WHEREFORE, as Plaintiff's injuries are a direct result of Defendants' clear violation of his obvious constitutional rights, justice demands that this Honorable Court grant Plaintiff's requested relief.

**COUNT V**
**§ 1983 Conspiracy to Violate First Amendment**
**Right to Family Integrity**
**(*As to Defendants Jasper and Greene*)**

149.    Plaintiff had a First Amendment right to family integrity as a minor child in the 1980's.

150.    Defendants Jasper and Greene deprived Plaintiff of that right by indoctrinating and grooming him into a criminal drug dealer and then failing to take any action to mitigate his separation from his family as a direct and obvious result of their actions.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

151.    The Defendants had a single purpose in conspiring to violate Plaintiff's right to be with his family by having his 1) become a drug dealer and/or 2) be sent to prison.

152.    Defendants each participated in bringing about the constitutional violation by indoctrinating, grooming, or otherwise making Plaintiff into a drug dealing criminal. Defendants Jasper and Greene both forced Plaintiff to buy and sell drugs, to associate with gangsters, and condoned his keeping of drugs and eventual drug dealing.

153.    As the indoctrination and grooming of Plaintiff to become a drug dealer at such a young, tender, age did itself rob Plaintiff of his family integrity, it also failed to afford Plaintiff adequate due process of law, as is required before government interference with one's First Amendment right to familial integrity.

154.    As a direct result of Defendants actions, Plaintiff spent 32 years and 7 months away from his family, was not allowed to say goodbye to his father or attend his funeral, was not allowed to raise his children, and even became a grandfather while in prison. Now that he is out, Plaintiff is practically a stranger to those closest to him.

WHEREFORE, as Plaintiff's injuries are a direct result of Defendants' clear violation of his obvious constitutional rights, justice demands that this Honorable Court grant Plaintiff's requested relief.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

## COUNT VI
### *Bivens* Fifth Amendment Substantive Due Process Violation
### Unconstitutional Indoctrination of Child into Criminal Society
### (*As to Defendants Dixon and Groman*)

155.     Plaintiff and every child have a substantive due process right to be free

from government grooming and indoctrination into criminality.

156.     This right is clear from the history of our culture and was or should

have been obvious to the law enforcement officers that taught Plaintiff to deal

drugs.

157.     Defendants taught Plaintiff how to deal drugs and encouraged him, with

the undue influence of adult authority figures over children, in this behavior

and as a direct result, Plaintiff became a drug dealer.

158.     The upholding of the right of children to be free from government

grooming or indoctrination must be upheld if the United States of America is

to have a free and ordered society.

159.     Defendants' actions in continuously taking 14-16-year-old Plaintiff into

their custody and control, couching him on how to commit serious felonies,

providing him with large amounts of illicit drugs, and instructing him on how

to behave like a high-level criminal, absolutely shocks the conscience to the

point were several documentaries and a Hollywood film have been made

recounting the almost unbelievable sequence of governmental abuses.

160.     But-for Defendants' actions in grooming and indoctrinating Plaintiff into becoming a notorious drug dealer, Plaintiff would never have been shot in the abdomen at point blank range with a .357 magnum.

161.     But-for Defendants' actions in grooming and indoctrinating Plaintiff as a child, Plaintiff never would have spent his entire adult life (32 years and 7 months) up until now in the small, dark, cages that were his prison cells.

162.     As a direct result of Defendants' above-described unlawful acts, Plaintiff suffered 32 and 7 months years in prison. Plaintiff still suffers residual physical and psychological injuries as a direct result of Defendants above-described actions including but not limited to: severe anxiety, severe depression, severe paranoia, severe digestive issues, and incurable abdominal pains.

WHEREFORE, as Plaintiff's injuries are a direct result of Defendants' clear violation of his obvious constitutional rights, justice demands that this Honorable Court grant Plaintiff's requested relief.

### COUNT VII
*Bivens* **Fifth Amendment Due Process Violation**
**Breaching Promise of Immunity**
(***As to Defendants Groman, Helland, and King***)

163.     Plaintiff has a clearly established Fifth Amendment right, applicable to the States via the Fourteenth Amendment, to the government's keeping its relied-on promises in all criminal judicial proceedings against Plaintiff.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

164.    In exchange for Plaintiff's life-endangering assistance in Operation Backbone, Defendants agreed to advocate for Plaintiff's release from prison at a meaningful time and in a meaningful way.

165.    Plaintiff acted in reliance on the Defendants' promise that they would vehemently advocate for his release, at a meaningful time and in a meaningful way, when he cooperated against his former close friend Cathy Valos and many Detroit Police Department officials in Operation Backbone.

166.    Defendants breached their agreement with Plaintiff, in violation of his due process rights, when in 2003 at his first parole hearing Defendants refused to advocate for Plaintiff's release and, in fact, advocated for his permanent incarceration.

167.    Plaintiff suffered severe injury as a direct result of Defendants' above-described actions in the form of doing another 17 years in prison, in having his parole denied, in having his hope and faith in humanity shattered.

168.    Plaintiff's injury was suffered anew every day for the entire remainder of his time in prison as he was burdened with the residual paranoia that comes with having been an informant against members of gangs with prison presences and corrupt police officers which require one to be put into a witness protection program while in prison.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

WHEREFORE, as Plaintiff's injuries are a direct result of Defendants' clear violation of his obvious constitutional rights, justice demands that this Honorable Court grant Plaintiff's requested relief.

**COUNT VIII**
***Bivens* Fifth Amendment Due Process Violation**
**Publication of Sealed Grand Jury Testimony**
(***As to Defendants Unknown Assistant United States Attorney***)

169.    Plaintiff has a clearly established Fifth Amendment right, applicable to the States via the Fourteenth Amendment, to the government's keeping its relied-on promises in all criminal judicial proceedings against Plaintiff.

170.    In exchange for Plaintiff's life-endangering assistance in giving sealed grand jury testimony against high-ranking members of powerful drug gangs, Defendants agreed both that Plaintiff's testimony would never be used against him and to advocate for Plaintiff's release from prison at a meaningful time and in a meaningful way.

171.    Plaintiff acted in reliance on the Defendants' promise that his testimony before the grand jury would never be published or used against him and that they would vehemently advocate for his release, at a meaningful time and in a meaningful way, when he cooperated and testified against powerful gang members in gangs that had large presences in his prison.

172.    Defendants breached their agreement with Plaintiff when they refused to advocate for his release in 2003 at his first parole hearing, submitted a letter

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

advocating for his continued life sentence, and published part or all of Plaintiff's testimony before a grand jury that was sealed and elicited from Plaintiff with the promise by Defendants that it would never be used in any such way.

173.    Plaintiff suffered severe injury as a direct result of Defendants' above-described actions in the form of doing another 17 years in prison, in having his parole denied, in having his hope and faith in humanity shattered.

WHEREFORE, as Plaintiff's injuries are a direct result of Defendants' clear violation of his obvious constitutional rights, justice demands that this Honorable Court grant Plaintiff's requested relief.

### COUNT IX
***Bivens* Conspiracy to Violate Fifth Amendment Due Process Rights Breaching of Promise / Publication of Sealed Grand Jury Testimony (*As to Defendants Helland, King, and Unknown Assistant United States Attorney*)**

174.    As stated above, Plaintiff had a clearly established Fifth Amendment right, applicable to the States via the Fourteenth Amendment, to the government's keeping its relied-on promises in all criminal judicial proceedings against Plaintiff.

175.    This right included the right to the Defendants' keeping the promise which Plaintiff relied on to not have his sealed testimony published to the

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

Michigan Parole Board and Detroit Police Department for consideration at Plaintiff's parole hearings.

176.     Additionally, Plaintiff has a fifth amendment procedural due process right to not have his sealed testimony published for consideration by the Michigan Parole Board, regardless of his reliance and/or promises not to publish it.

177.     Defendants had a singular plan to violate Plaintiff's above-described constitutional right by publishing his sealed grand jury testimony to his parole board.

178.     Defendants acted in concert to elicit the grand jury testimony from Plaintiff and then publish it.

179.     On Plaintiff's 2003 phone call with Defendant AUSA Lynn Helland, Helland told Plaintiff expressly that his "boss," named in this matter as Unknown Assistant United States Attorney, had obtained the sealed grand jury testimony.

180.     Defendants acted in concert when the grand jury testimony was acquired by the Detroit Police Department for review by its officers to enable them to testify against Plaintiff at his 2003 parole hearing.

181.     Defendants violated Plaintiff's said due process right when they published part or all of Plaintiff's testimony before a grand jury that was sealed

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

and elicited from Plaintiff with the promise by Defendants that it would never be used in any such way.

182.    Plaintiff suffered severe injury as a direct result of Defendants' above-described actions in the form of doing another 17 years in prison, in having his parole denied, in having his hope and faith in humanity shattered.

WHEREFORE, as Plaintiff's injuries are a direct result of Defendants' clear violation of his obvious constitutional rights, justice demands that this Honorable Court grant Plaintiff's requested relief.

### COUNT X
### *Bivens* **Fourth Amendment Illegal Seizure Violation**
### **Taking Plaintiff into Custody Throughout Childhood**
### (*As to Defendants Dixon and Groman*)

183.    Plaintiff has a Fourth Amendment right, applicable to the States via the Fourteenth Amendment, to be free from unlawful government seizures of his person.

184.    Defendants violated said right, continuously, when they unlawfully seized Plaintiff time and again in 1984 through 1986, through a show of force and authority at Plaintiff, ordering him to get into their vehicles, go into drug houses, etc.

185.    Plaintiff, a child, submitted to all of the above-described shows of force and authority.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

186.     The injuries from the above-described violations of Plaintiff's Fourth
Amendment right to be free from unlawful government seizure eventually led
to his indoctrination as a drug dealing criminal and his serving 32 years and 7
months in prison. Plaintiff still suffers residual physical and psychological
injuries as a direct result of Defendants above-described actions including but
not limited to: severe anxiety, severe depression, severe paranoia, severe
digestive issues, and incurable abdominal pains.

WHEREFORE, as Plaintiff's injuries are a direct result of Defendants' clear violation
of his obvious constitutional rights, justice demands that this Honorable Court grant
Plaintiff's requested relief.

**COUNT XI**
***Bivens* Conspiracy to Violate First Amendment**
**Right to Family Integrity**
**(*As to Defendants Dixon and Groman*)**

187.     Plaintiff had a First Amendment right to family integrity as a minor
child in the 1980's.

188.     Defendants Dixon and Groman deprived Plaintiff of that right by
indoctrinating and grooming him into a criminal drug dealer and then failing
to take any action to mitigate his separation from his family as a direct and
obvious result of their actions.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

189.    The Defendants had a single purpose in conspiring to violate Plaintiff's right to be with his family by having his 1) become a drug dealer and/or 2) be sent to prison.

190.    Defendants each participated in bringing about the constitutional violation by indoctrinating, grooming, or otherwise making Plaintiff into a drug dealing criminal. Defendants Dixon and Groman both forced Plaintiff to buy and sell drugs, to associate with gangsters, and condoned his keeping of drugs and eventual drug dealing.

191.    As the indoctrination and grooming of Plaintiff to become a drug dealer at such a young, tender, age did itself rob Plaintiff of his family integrity, it also failed to afford Plaintiff adequate due process of law, as is required before government interference with one's First Amendment right to familial integrity.

192.    As a direct result of Defendants actions, Plaintiff spent 32 and 7 months years away from his family, was not allowed to say goodbye to his father or attend his funeral, was not allowed to raise his children, and even became a grandfather while in prison. Now that he is out, Plaintiff is practically a stranger to those closest to him.

WHEREFORE, as Plaintiff's injuries are a direct result of Defendants' clear violation of his obvious constitutional rights, justice demands that this Honorable Court grant Plaintiff's requested relief.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

## CONCLUSION AND RELIEF REQUESTED

Practitioners of law often fall into the mindset that for every legal question, there is either an answer to be found in our courts' jurisprudence or, at least, caselaw from which analogies can be made. However, sometimes the clearest answer is not the legal answer, but the equitable one. What these defendants helped do to Plaintiff is atrocious. There is no other case like Plaintiff's in United States history where a 14-year-old is used by federal and state law enforcement, shot and almost killed for his confidential informing, and then not just abandoned by the law enforcement he served but actively and unconstitutionally betrayed by them. Criminals have been wrongly convicted, minors have been given life sentences, but never has a child-confidential informant been so abused by law enforcement as these agents and officers abused Plaintiff. As one former FBI agent finally had the courage to admit in a 2012 letter to the Michigan Parole Board, no law enforcement agency lifted a

finger when Plaintiff was tried, out of a fear of 'embarrassment' for having so abused a child.

**Page 1 of 4**

Gregory H. Schwarz

June 19, 2012

RECEIVED
MI DEPT OF CORRECTIONS

JUN 2 2 2012

Michigan Parole Board
State of Michigan
Department of Corrections
Grandview Plaza Building
PO Box 30003
Lansing, MI 48909

Parole Board

Dear Parole Board Members,

Twenty five years have now passed on a sentence for Richard Wershe, Jr. As you know this case was for the crime of Possession of Controlled Substance of more than 650 grams. On 01/15/88 he received a life sentence. In federal court those with the same offense received only three years and yet Richard got life without parole. Richard was 17 years of age at the time. He is now 43years old and a man who regrets the actions of his youthful decisions. If I recall there were judges whom stated they disagreed with the law as it was far too stringent. I write this letter to you on behalf of numerous former agents of the federal government, former Police officers who had direct dealings with Richard and concerned citizens who have learned of his confinement and no apparent future with the parole board.

A compelling factor was that Richard was being used by the federal government and various police agencies as an operative or source. I know you were advised of this information at the time of his other hearings. During the various investigations he was directed to operate in the drug community and provide information to law enforcement. He performed these duties under the promise that he would receive consideration should he become involved himself. He did but as we know, no department or agency came to his rescue. At the time, his age was a factor and would have been an embarrassment to the federal government. As stated, several agencies promised intervention but it never occurred. Richard continued to cooperate.

After confinement, Richard was asked about the murder of a small boy, Damion Lucas by a particular gang. He provided information on that homicide as to the identity of the shooters which was covered up by the Detroit Police Department. I spoke to Michael Cox of Wayne County who, in front of me, stated that his cooperation would be of great help to the State. He provided the exact information the state needed and the state did nothing. On another matter, AUSA James King, in the presence of FBI Agents said he would get Wershe relief after he provided information on Best Friends which was a joint task force investigation. That consideration never occurred. Again USA Lynn Helland stated the office would help him if he provided information on the case involving Jimmy Harris, former Detroit Police officer. While Richard kept his end of the bargain and, provided most of the information, the federal government backed away.

A Y A D   L A W ,   P . L . L . C .
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

6

Indeed, this is a unique case. Plaintiff is the youngest FBI informant in this history of this nation, known to this Plaintiff. Plaintiff also holds the record as the longest serving prisoner convicted as a juvenile on a nonhomicide offense in the State of Michigan. Our Constitution, our justice system, and God-given right to all humanity calls on this Court to finally bring justice to a man whose life has been taken from him at the tender age of 14 all the way up to 51 years of age. For conduct that was not of his free will, but that of a minor who has been used, abused, reused, and re-abused by those that have sworn to protect and serve this country.

Plaintiff's story has been told in multiple film documentaries and a Hollywood movie. Many people know Plaintiff's story in detail, and virtually all who do feel Plaintiff was unfairly and despicably abused by law enforcement.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgement in his favor against all Defendants, jointly and severally, and issue an order containing the following relief:

    a) Declaring that Defendants the City of Detroit, Dixon, Groman, Jasper, and Greene violated Plaintiff's Fifth Amendment rights when they indoctrinated him into becoming a drug dealer;

---

6 This document has been reviewed and verified by Plaintiff.

b) Declaring that Defendants the City of Detroit, Helland and King violated Plaintiff's Fifth Amendment due process rights when they broke their promises to him to advocate on his behalf at his trial and before the Michigan Parole Board;

c) Declaring that Defendants Helland, King, and Unknown Assistant United States Attorney violated Plaintiff's Fifth Amendment due process rights when they conspired to publish his sealed grand jury testimony;

d) Declaring that Defendants Dixon, Groman, Jasper, and Greene violated Plaintiff's Fourth Amendment due process right to be free from unlawful arrests, which was then ratified by the City of Detroit, when they continuously used their authority to stop Plaintiff and force him into their vehicles to answer questions or receive drugs for drug dealing;

e) Declaring that all Defendants violated Plaintiff's First Amendment right to family integrity;

f) Ordering Defendants to pay Plaintiff $100,000,000 for their intentional violations of his constitutional rights;

g) Ordering Defendants to pay Plaintiff's costs and attorney fees under the equal access to justice act; and

h) Any and all such other relief that this Court deems just and equitable including any tolling of limitations periods necessary to accomplish justice.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully demands a trial-by-jury of his peers on all of the foregoing claims.

## VERIFICATION

I have read the attached verified complaint and to the best of my knowledge, recollection, and belief, its contents are true, accurate, and correct.

Executed on:      _____

Signed:           _____
                  Plaintiff

Respectfully submitted;

AYAD LAW, PLLC

*/s/Nabih H. Ayad*
Nabih H. Ayad (P59518)
William D. Savage (P82146)
*Attorneys for Plaintiff*
645 Griswold St., Ste 2202
Detroit, MI 48226
P: 313.983.4600
F: 313.983.4665
Dated: September 14, 2021          ayadlaw@hotmail.com

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully demands a trial-by-jury of his peers on all of the foregoing claims.

## VERIFICATION

I have read the attached verified complaint and to the best of my knowledge, recollection, and belief, its contents are true, accurate, and correct.

Executed on: 10 - 10 - 21

Signed: _Richard S. Wieske Jr._

Plaintiff

Respectfully submitted;

AYAD LAW, PLLC

/s/Nabih H. Ayad
Nabih H. Ayad (P59518)
William D. Savage (P82146)
Attorneys for Plaintiff
645 Griswold St., Ste 2202
Detroit, MI 48226
P: 313.983.4600
F: 313.983.4665
ayadlaw@hotmail.com

Dated: September 10, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I filed the foregoing paper and any

attachments with the Clerk of Courts using the ECF electronic filing system.

Respectfully submitted;

AYAD LAW, PLLC

*/s/Nabih H. Ayad*
Nabih H. Ayad (P59518)
William D. Savage (P82146)
*Attorneys for Plaintiff*
645 Griswold St., Ste 2202
Detroit, MI 48226
P: 313.983.4600
F: 313.983.4665
ayadlaw@hotmail.com

Dated: September 14, 2021

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

## <u>AFFIDAVIT OF RICHARD J. WERSHE, Jr.</u>

I, RICHARD J. WERSHE, Jr, do depose and state the following under penalty of

perjury:

1. I have personal knowledge of the facts alleged herein.

2. I am competent and able to testify if called to do so.

3. I make this affidavit of my own free will.

4. I am also known as White Boy Rick, although I nor my friends and family

   have ever used that nickname.

5. I was born on July 18, 1969.

6. In 1984, at age 14, I was approached by FBI officer Jim Dixon to become an

   informant for the FBI and a joint task force it operated with the Detroit Police

   Department.

7. As a fourteen-year-old to sixteen-year-old, I did not feel capable of denying

   or resisting the FBI agents and DPD officers when they gave me orders to get

   into their cars, trucks, or vans.

8. The law enforcement officers were very assertive and I recall that they never

   asked me anything politely, but only gave me commands.

9. I was a child while I worked for law enforcement in 1984-86, and did not fully

   comprehend the danger it placed me in.

1

10. When I went into dangerous drug houses, I did so because members of the FBI-DPD task force (often Groman, Jasper, or Greene) would parked in a van nearby and tell me: "It's okay, we're right here watching. They can't do anything to you, we're right here."

11. Looking back, it is hard for me to believe that I believed them that they would keep me safe, but I did because I was a child and only because I was a child.

12. After I was shot, Groman, Jasper, and Greene all came to my hospital bed and told me that I needed to say that the shooting was just an accident, that we had just been "playing" when I got shot. They said that would be "better for everyone."

13. I see now they meant themselves, because they would have all gotten fired and hopefully charged criminally if it came out that they were using a 14-15-year old confidential informant as a drug dealer.

14. I still have nightmares about being shot, where I remember laying on the floor bleeding out and begging Walker to call 9-1-1, and him just staring at me coldly, watching me die. Then him and his friend trying to stuff me into their car to go dump my dying body somewhere.

15. Looking back now, I see how gravely risky my actions were and how irresponsible the FBI (James Dixon, Herman Groman) and the Detroit Police (William Jasper, Kevin Greene) were to put me in such dangerous situations.

16. Had I not been an informant for the task force, I would never have gotten involved with drug gangs or criminality of any sort.

17. When I was convicted, I was incensed that the FBI and DPD, or at least members of the task force James Dixon, Herman Groman, William Jasper, and Kevin Greene did not come forward to assist me in criminal proceedings.

18. I recall I asked my then attorney William Bufalino if I could sue them, he told me to "keep my mouth shut" until I was out. He said it would be stupid for me to go after powerful law enforcement individuals like I wanted to and that it would ruin any chance we had of ever getting me out of prison. He assured me that any law enforcement or United States attorneys I sued would either have me attacked or killed in prison or ensure that I never got out, should I ever get a chance to be released early.

19. When I was 18, when I was first in prison, I was on the phone with my mom and I saw another prisoner stab a different prisoner in the neck. I remember I said "I have to go" and hung up.

20. I remember it terrified me. That was my introduction to life on the inside and that is something you never forget.

21. The lesson their being that life is fragile in prison. If someone wants you dead, its easy if you are in prison.

3

22. It was an assassination in prison. So when my attorneys or others said I could get killed while in prison for bringing a lawsuit, or causing problems for people on the outside with influence, I knew it was true.

23. Bufalino also assured me that I would have 1 year after I got out of prison to bring any lawsuits against the law enforcement responsible for my prison sentence, anyway, so I should wait.

24. I learned again while in prison that William Bufalino's advice about law enforcement possibly retaliating against me was exactly correct when the federal government had to put me in witness protection while in prison, because I was going to help them with Operation Backbone, a sting operation against corrupt Detroit Police.

25. I knew that if the federal government was so afraid that the state law enforcement would have me killed while I was in prison, that the danger of retaliation for going after law enforcement was real and that I needed to not bring any lawsuits against law enforcement while I was in prison if I wanted to ever get out of prison.

26. In 1991, Herman Groman and Lynn Hellend approached me and offered to do everything they could to get me out of prison if I helped them with a drug sting operation against corrupt Detroit cops.

4

27. I agreed only because I wanted out of prison so badly and I believed them when they said they would keep their end of the agreement.

28. Between 1994 and 1995, Assistant United States Attorney James King came to me and said that I testified before a grand jury about members of the Best Friends gang, he would go "balls to the wall" to get me out of prison.

29. I obviously was very concerned over my safety to testify against the Best Friends gang, just like I was concerned over helping take down corrupt Detroit police, but King assured me that my testimony would be kept under "seal."

30. So I agreed to that too, even though the testimony was in some senses incriminating, because I was promised it would never see the light of day after the grand jury heard it.

31. I agreed so that King and the United States Attorneys Office for the Eastern District of Michigan would help get me out of prison.

32. In 2003 when I first became eligible for parole, I saw law enforcement retaliate against me first hand, confirming my fears of retaliation by law enforcement.

33. The United States Attorneys Office of the Eastern District of Michigan illegally unsealed the grand jury testimony I had given, and that Lynn Hellend and James King had promised me would never be used against me, and sent it to the Michigan Parole Board right before my first parole hearing.

5

34. As well, the United States Attorneys Office for the Eastern District of Michigan sent a letter saying that they did not support my release, breaking the promise that was made to me.

35. That was all retaliation for testimony and information I had given years back.

36. I am confident that I would have been released on parole in 2003 had it not been for the United State Attorney letter and the unsealing of my grand jury testimony, especially because the Parole Board had done a home inspection for me, which is something that I have seen over my many years in prison is only done when the parole board itself believes that they will be letting a prisoner out on parole.

37. I was told by multiple federal attorneys and federal law enforcement, including Lynn Hellend in a phone call in 2003, that this was because someone in charge at the United States Attorneys Office for the Eastern District of Michigan was retaliating against me for having helped the federal government take down corrupt Detroit police.

38. I know I was the target of retaliation by law enforcement/individuals at the Department of Justice while I was in prison and I am 100% certain that I would not be out of prison today had I brought any legal actions against the law enforcement and Assistant United States Attorneys whose actions

6

resulted in my being in prison and not getting released on parole for so many years.

39. Later, I got as my attorney Ralph Musili. Ralph was a great attorney and I have great respect for him.

40. It was Ralph Musili that got me out. Instead of suing law enforcement and United States Attorneys for what they did to me, he sued the Michigan Parole Board for denying me a parole hearing. That lawsuit went up to the Sixth Circuit on appeal and the parole board agreed to let me out if we dropped the appeal, so we did, and I was finally paroled out.

41. I shared with Ralph my desire to take legal action against James Dixon, Herman Groman, William Jasper, Kev Greene, Lynn Hellend, James King, and their respective government agencies, and his advice to me was very similar as attorney Bufalino's.

42. Ralph told me to keep my head down and not rock the boat, to not try to sue any law enforcing on the outside because there was a high chance that they would retaliate against me and make sure I stayed in prison forever.

43. Just like Bufalino, Ralph Musili assured me on many occasions that I would have one years after I got out of prison to bring my lawsuit.

44. To me, it made absolute sense to wait until I was out before I tried to take action against the people responsible for getting me in prison.

45. If they could make sure I went to prison in the first place, it is obvious that they could make sure I didn't get out of prison.

46. As soon as I got out of prison, I worked diligently and began speaking with attorneys about bringing a potential lawsuit.

47. While I was in prison, every day was like being forced to relive my betrayal by James Dixon, Herman Groman, William Jasper, Kevin Greene, Lynn Hellend, James King, and their respective government agencies as I constantly worried about being attacked for informing, cooperating, and testifying against dangerous gangs and corrupt cops.

48. I still have nightmares about the horrors of prison, violence and cruelty by prisoners and prisons guards, getting shot, being set up and betrayed by the feds and Assistant United States Attorneys.

49. I continuously contacted all of the above to try to get them to help me as they promised they would and they continuously refused to do so.

8

50. There is no doubt in my mind, after what James Dixon, Herman Groman,

William Jasper, Kevin Greene, Lynn Hellend, James King, and their

respective government agencies did to me, twice, that they would have

retaliated against me while I was in prison and ensure that, either by natural

causes or not, I died in prison.

FURTHER AFFIANT SAYETH NOT.

I declare under penalty of perjury that the foregoing is true and correct. (28 US Code § 1746.)

Dated this _____ day of _____ 20_____.

_____
(Signature of Affiant)


_____
(Printed name of Affiant)

9

50. There is no doubt in my mind, after what James Dixon, Herman Groman,

William Jasper, Kevin Greene, Lynn Hellend, James King, and their

respective government agencies did to me, twice, that they would have

retaliated against me while I was in prison and ensure that, either by natura

causes or not, I died in prison.

FURTHER AFFIANT SAYETH NOT.

I declare under penalty of perjury that the foregoing is true and correct. (28
US Code § 1746.)

Dated this ___20<u>th</u>___ day of ___July_____ 20 _21___.

_Richard S. Weishe Sr._____
(Signature of Affiant)

_Richard S. Weishe JR._____
(Printed name of Affiant)

9

## <u>AFFIDAVIT OF MICHELLE MacDONALD</u>

I, MICHELLE MacDONALD, do depose and state the following under penalty of perjury:

1. I have personal knowledge of the facts alleged herein.

2. I am competent and able to testify if called to do so.

3. I make this affidavit of my own free will.

4. I am the fiancée of Mr. Richard Wershe, Jr., known in the news as "White Boy Rick."

5. I have known Rick since we were in middle school together.

6. When Rick was paroled to serve a prison sentence in Florida, I went down to visit him.

7. Rick and I currently live together.

8. Rick frequently wakes us both up from sleep by having nightmares, which jar him awake and which he has told me are about his being shot when he was 15, and then later his being left in prison after the FBI, Detroit Police, and United States Attorneys for the Eastern District of Michigan broke their agreement with him to help him get out of prison if he risked his life to help them.

9. Rick and I have discussed his potential lawsuits against the law enforcement agents and the government many times over the years.

1

10. Rick has always maintained that he could not bring any lawsuits until he was out of prison because it would be "stupid" and "crazy" to bring a lawsuit against the government while he was in prison, as he believed that it would either get him killed or get him stuck in prison forever, by retaliation from those he sued.

11. I believe Rick was correct in that and I am happy he is out and can now bring his lawsuit.

12. I also heard at least twice his attorney Mr. Ralph Musilli tell him not to bring a lawsuit while he was in prison and risk retaliation and that he would have one year after he got out of prison to bring any such lawsuit.

13. I remember these conversations because it was hard for Rick to wait so long.

FURTHER AFFIANT SAYETH NOT.

    I declare under penalty of perjury that the foregoing is true and correct. (28 US Code § 1746.)

Dated this _____ day of _____ 20_____.

_____
(Signature of Affiant)

_____
(Printed name of Affiant)

2

10. Rick has always maintained that he could not bring any lawsuits until he was out of prison because it would be "stupid" and "crazy" to bring a lawsuit against the government while he was in prison, as he believed that it would either get him killed or get him stuck in prison forever, by retaliation from those he sued.

11. I believe Rick was correct in that and I am happy he is out and can now bring his lawsuit.

12. I also heard at least twice his attorney Mr. Ralph Musilli tell him not to bring a lawsuit while he was in prison and risk retaliation and that he would have one year after he got out of prison to bring any such lawsuit.

13. I remember these conversations because it was hard for Rick to wait so long.

FURTHER AFFIANT SAYETH NOT.

I declare under penalty of perjury that the foregoing is true and correct. (28 US Code § 1746.)

Dated this ___19th___ day of ___July___ 20 _21_ .

_Michelle MacDonald_
(Signature of Affiant)

_Michelle MacDonald_
(Printed name of Affiant)

2

## <u>AFFIDAVIT OF MS. LYNNE HOOVER</u>

I, LYNN HOOVER, do depose and state the following under penalty of perjury:

1.  I have personal knowledge of the facts alleged herein.

2.  I am competent and able to testify if called to do so.

3.  I make this affidavit of my own free will.

4.  My late husband was Ralph Musilli, a well-known and highly respected Michigan Attorney.

5.  My husband represented Mr. Richard Wershe, who is known in the media as "White Boy Rick" for many years.

6.  Throughout many years of my husband's representing Mr. Werhse, he and I often discussed the case in detail.

1

7.  It has always been my understanding that Mr. Wershe should not take any legal action against the government, law enforcement officers, or United States Attorneys (as Mr. Wershe wanted to) until he was out of prison, or else they would retaliate against him and he would never get out of prison.

FURTHER AFFIANT SAYETH NOT.

I declare under penalty of perjury that the foregoing is true and correct. (28 US Code § 1746.)

Dated this _____ day of _____ 20_____.

_____
(Signature of Affiant)

_____
(Printed name of Affiant)

7. It has always been my understanding that Mr. Wershe should not take any legal action against the government, law enforcement officers, or United States Attorneys (as Mr. Wershe wanted to) until he was out of prison, or else they would retaliate against him and he would never get out of prison.

FURTHER AFFIANT SAYETH NOT.

I declare under penalty of perjury that the foregoing is true and correct. (28 US Code § 1746.)

Dated this _19th_ day of _July_ 20_21_.

_Lynne hoover_
(Lynne Hoover)

_Lynne Hoover_
(Printed name of Affiant)

# EXHIBIT 6-2 – DOCKET SHEET

# U.S. District Court
## Eastern District of Michigan (Detroit)
## CIVIL DOCKET FOR CASE #: 2:21-cv-11686-LJM-EAS

Wershe v. City of Detroit et al                          Date Filed: 07/20/2021
Assigned to: District Judge Laurie J. Michelson          Jury Demand: Plaintiff
Referred to: Magistrate Judge Elizabeth A. Stafford      Nature of Suit: 440 Civil Rights: Other
Demand: $9,999,000                                       Jurisdiction: Federal Question
Cause: 28:1331 Federal Question: Bivens Act

**Plaintiff**

**Richard Wershe, Jr**                 represented by    **Nabih H. Ayad**
                                                         Ayad Law, P.L.L.C.
                                                         645 Griswold Street
                                                         Suite 2202
                                                         Detroit, MI 48226
                                                         313-983-4600
                                                         Fax: 313-983-4665
                                                         Email: filing@ayadlawpllc.com
                                                         *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**City of Detroit**                    represented by    **Gregory B. Paddison**
                                                         City of Detroit
                                                         Law Department
                                                         Coleman A. Young Municipal Center
                                                         2 Woodward Ave., Ste. 500
                                                         Detroit, MI 48226
                                                         313-237-0435
                                                         Fax: 313-224-5505
                                                         Email: paddisong@detroitmi.gov
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**William Jasper**                     represented by    **Gregory B. Paddison**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Kevin Greene**                       represented by    **Gregory B. Paddison**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**James Dixon**

*Deceased*

**Defendant**

**Herman Groman**      represented by   **Paul C. Quast**
DOJ-Civ
Torts Branch, Civil Division
P.O. Box 7146
Benjamin Franklin Station
Washington, DC 20044-7146
202-616-4150
Fax: 202-616-4314
Email: paul.c.quast@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Unknown Former Assistant United States
Attorney**

**Defendant**

**Carol Dixon**      represented by   **Paul C. Quast**
*as Represenative of the Estate of James
Dixon*          (See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Edward James King**      represented by   **Paul C. Quast**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lynn A. Helland**      represented by   **Paul C. Quast**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 07/20/2021 | 1 | COMPLAINT , *VERIFIED* filed by Richard Wershe, Jr against All Defendants with Jury Demand. Plaintiff requests summons issued. Receipt No: AMIEDC-8543457 - Fee: $ 402. County of 1st Plaintiff: Wayne - County Where Action Arose: Wayne - County of 1st Defendant: Wayne. [Previously dismissed case: No] [Possible companion case(s): None] (Attachments: # 1 Exhibit Affidavit of Richard Wershe, Jr, # 2 Exhibit Affidavit of Michelle MacDonald, # 3 Exhibit Affidavit of Lynn Hoover) (Ayad, Nabih) (Entered: 07/20/2021) |
| 07/20/2021 | 2 | SUMMONS Issued for *City of Detroit, James Dixon, Kevin Greene, Herman Groman, Lynn Hellend, James King, Unknown Former Assistant United States Attorney, Jasper William* (DAll) (Entered: 07/20/2021) |
| 07/20/2021 |   | A United States Magistrate Judge of this Court is available to conduct all proceedings in this civil action in accordance with 28 U.S.C. 636c and FRCP 73. The Notice, Consent, and Reference of a Civil Action to a Magistrate Judge form is available for download at http://www.mied.uscourts.gov (DAll) (Entered: 07/20/2021) |
| 07/30/2021 |   | REQUEST for SUMMONS for William Jasper. (Ayad, Nabih) (Entered: 07/30/2021) |

| 07/30/2021 | 3 | SUMMONS Issued for *William Jasper* (TTho) (Entered: 07/30/2021) |
|---|---|---|
| 09/14/2021 | 4 | AMENDED COMPLAINT with Jury Demand filed by All Plaintiffs against Carol Dixon. NEW PARTIES ADDED. (Attachments: # 1 Exhibit Affidavit of Richard Wershe, Jr, # 2 Exhibit Affidavit of Michelle MacDonald, # 3 Exhibit Affidavit of Lynn Hoover) (Ayad, Nabih) (Entered: 09/14/2021) |
| 09/15/2021 | | Addition of Parties to CM/ECF: Defendants Edward James King, Lynn A. Helland. Reason: Parties were omitted and incorrectly added to CM/ECF (Ayad, Nabih) (Entered: 09/15/2021) |
| 09/15/2021 | | REQUEST for SUMMONS for Edward James King. (Ayad, Nabih) (Entered: 09/15/2021) |
| 09/15/2021 | | REQUEST for SUMMONS for Carol Dixon. (Ayad, Nabih) (Entered: 09/15/2021) |
| 09/15/2021 | | REQUEST for SUMMONS for Lynn A. Helland. (Ayad, Nabih) (Entered: 09/15/2021) |
| 09/15/2021 | 5 | SUMMONS Issued for *Edward James King* (DPer) (Entered: 09/15/2021) |
| 09/15/2021 | 6 | SUMMONS Issued for *Carol Dixon* (DPer) (Entered: 09/15/2021) |
| 09/15/2021 | 7 | SUMMONS Issued for *Lynn A. Helland* (DPer) (Entered: 09/15/2021) |
| 09/30/2021 | 8 | MOTION to Dismiss by City of Detroit. (Attachments: # 1 Document Continuation Issues, Authorities, and Brief, # 2 Index of Exhibits Index of Exhibits, # 3 Exhibit Exhibit A, # 4 Exhibit Exhibit B, # 5 Exhibit Exhibit C, # 6 Exhibit Exhibit D) (Paddison, Gregory) (Entered: 09/30/2021) |
| 10/13/2021 | 9 | ORDER Regarding Determination of 8 MOTION to Dismiss filed by City of Detroit. Signed by District Judge Laurie J. Michelson. (EPar) (Entered: 10/13/2021) |
| 10/15/2021 | 10 | MOTION for Extension of Time to File Response/Reply as to 8 MOTION to Dismiss by Richard Wershe, Jr. (Ayad, Nabih) Modified on 10/15/2021 (LHos).[DOCUMENT ENTITLED STIPULATION TO EXTEND BRIEFING DEADLINES IN DEFENDANT CITY OF DETROIT'S MOTION TO DISMISS] (Entered: 10/15/2021) |
| 10/15/2021 | 11 | STIPULATION re 8 MOTION to Dismiss *to Extend Filing Deadlines by 30 Days* by Richard Wershe, Jr (Ayad, Nabih) (Entered: 10/15/2021) |
| 10/18/2021 | | TEXT-ONLY ORDER: GRANTING the 10 MOTION for Extension of Time to File Response/Reply to 8 MOTION to Dismiss (**Response due by 11/20/2021 and Reply due by 12/5/2021**). Issued by District Judge Laurie J. Michelson. (EPar) (Entered: 10/18/2021) |
| 10/18/2021 | 12 | MOTION TO EXTEND Summonses *of Defendant King and Defendant Helland by 90 days* by Richard Wershe, Jr. (Attachments: # 1 Exhibit Exhibit A - Emails with Plaintiff's Georgia Process Server Showing Attempted Services, # 2 Exhibit Exhibit B - Emails with Plaintiff's Local Process Server Showing Attempted Service of Process) (Ayad, Nabih) (Entered: 10/18/2021) |
| 10/19/2021 | 13 | ORDER Granting 12 Motion to Extend Summons. Signed by District Judge Laurie J. Michelson. (EPar) (Entered: 10/19/2021) |
| 10/21/2021 | 14 | NOTICE of Joinder/Concurrence in 8 MOTION to Dismiss filed by City of Detroit by Kevin Greene, William Jasper (Paddison, Gregory) (Entered: 10/21/2021) |
| 11/08/2021 | 15 | MOTION for Extension of Time to File Answer by Carol Dixon, Herman Groman, Lynn A. Helland, Edward James King. (Quast, Paul) (Entered: 11/08/2021) |
| 11/09/2021 | 16 | ORDER Granting 15 Motion for Extension of Time to Answer Carol Dixon answer due 1/14/2022; Herman Groman answer due 1/14/2022; Lynn A. Helland answer due 1/14/2022. Signed by District Judge Laurie J. Michelson. (EPar) (Entered: 11/09/2021) |

| 11/22/2021 | 17 | Joint MOTION for Order *File Exhibits in the Traditional Manner* by All Plaintiffs. (Ayad, Nabih) (Entered: 11/22/2021) |
| 11/22/2021 | 18 | Joint MOTION for Order *to File Response In Excess of Brief Page Limitations* by Richard Wershe, Jr. (Ayad, Nabih) (Entered: 11/22/2021) |
| 11/22/2021 | | TEXT-ONLY ORDER: Granting Plaintiff's Unopposed Motion for Leave to File Exhibits in the Traditional Manner 17 . The Exhibits shall be submitted in USB Flash drive format if possible. Issued by District Judge Laurie J. Michelson. (EPar) (Entered: 11/22/2021) |
| 11/22/2021 | 19 | RESPONSE to 8 MOTION to Dismiss filed by All Plaintiffs. (Attachments: # 1 Index of Exhibits Index of Exhibits to Plaintiff's Response in City of Detroit's Motion to Dismiss in Lieu of Answer, # 2 Exhibit 2nd Aff'd of Richard Wershe Jr, # 3 Exhibit Report of Dr. Friedberg, # 4 Exhibit CV of Dr Friedberg, # 5 Exhibit Excerpts from Transcript of "White Boy" Documentary, # 6 Exhibit "White Boy" Documentary DVD filed in Traditional Manner) (Ayad, Nabih) (Entered: 11/22/2021) |
| 11/23/2021 | | TEXT-ONLY ORDER : Plaintiff's Unopposed Motion for Leave to File in Excess of Brief Page Limitations 18 is GRANTED. The response brief is extended 15 additional pages. Issued by District Judge Laurie J. Michelson. (EPar) (Entered: 11/23/2021) |
| 12/01/2021 | 20 | REPLY to Response re 8 MOTION to Dismiss filed by City of Detroit, Kevin Greene, William Jasper. (Paddison, Gregory) (Entered: 12/01/2021) |
| 12/06/2021 | 21 | STIPULATION AND ORDER Withdrawing Defendant City of Detroit's Motion to Strike Plaintiff's Reply on Timeliness Grounds. Signed by District Judge Laurie J. Michelson. (EPar) (Entered: 12/06/2021) |
| 12/09/2021 | 22 | Ex Parte MOTION for Alternate Service *Of Defendant King* by Richard Wershe, Jr. (Attachments: # 1 Index of Exhibits Index of Exhibits, # 2 Exhibit Exhibit A - Summons, # 3 Exhibit Exhibit B - Order Extending Summons, # 4 Exhibit Intelius Report, # 5 Exhibit Affidavit of Non-Service, # 6 Exhibit Emails between Plaintiff's Counsel and Process Server) (Ayad, Nabih) (Entered: 12/09/2021) |
| 12/10/2021 | 23 | ERRATA Sheet re: 22 Ex Parte MOTION for Alternate Service *Of Defendant King* filed by Richard Wershe, Jr. by Richard Wershe, Jr (Ayad, Nabih) (Entered: 12/10/2021) |
| 12/17/2021 | 24 | ORDER Granting Plaintiff's Ex-Parte Motion for Alternate Service 22 . Signed by District Judge Laurie J. Michelson. (EPar) (Entered: 12/17/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/03/2022 13:11:14 | | | |
| **PACER Login:** | mcps3037 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:21-cv-11686-LJM-EAS |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

# EXHIBIT 6-3 – MOTION TO DISMISS

38530484.2/022765.00213

<u>UNITED STATES DISTRICT COURT</u>
<u>EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION</u>

ROBERT WERSHE JR.,                          Case No.: 2:21-cv-11686
    Plaintiff,                              Hon. Laurie J. Michelson

- vs -

CITY OF DETROIT, WILLIAM JASPER, KEVIN GREENE, CAROL DIXON,
JAMES DIXON, HERMAN GROMAN, LYNN HELLAND, and E. JAMES KING,
    Defendants.

                                                                     /

AYAD LAW, PLLC                          CITY OF DETROIT LAW DEPARTMENT
Nabih H. Ayad (P59518)                  Gregory B. Paddison (P75963)
William D. Savage (P82146)              Attorney for CITY OF DETROIT
Attorneys for Plaintiff                 Coleman A. Young Municipal Center
645 Griswold St., Ste. 2202             2 Woodward Ave., Ste. 500
Detroit, MI 48226                       Detroit, MI 48226
(313) 983-4600                          (313) 237-0435
ayadlaw@hotmail.com                     paddisong@detroitmi.gov
                                                                    /

<u>CITY OF DETROIT'S MOTION TO DISMISS IN LIEU OF AN ANSWER</u>
<u>AND BRIEF IN SUPPORT THEREOF</u>

**NOW COMES**, Defendant, CITY OF DETROITby and through its attorney, Gregory B. Paddison, and for Defendant's Motion to Dismiss in Lieu of an Answer, relies upon the statements of fact and law, as set forth in the accompanying Brief.

**WHEREFORE**, Defendant, CITY OF DETROIT, respectfully requests that this Honorable Court grant Defendant's Motion to Dismiss in Lieu of an Answer and further grant any other relief deemed just and appropriate.

                                      Respectfully Submitted,
                                      CITY OF DETROIT LAW DEPARTMENT

Dated: September 30, 2021        /s/  Gregory B. Paddison
                                                    Gregory B. Paddison (P75963)
                                                    Attorney for Defendants

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

ROBERT WERSHE JR.,                          Case No.: 2:21-cv-11686
    Plaintiff,                          Hon. Laurie J. Michelson

- vs -

CITY OF DETROIT, WILLIAM JASPER, KEVIN GREENE, CAROL DIXON,
JAMES DIXON, HERMAN GROMAN, LYNN HELLAND, and E. JAMES KING,
    Defendants.

_____/

### BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS IN LIEU OF AN ANSWER

    **NOW COMES**, Defendant, CITY OF DETROIT, by and through its attorney,

Gregory B. Paddison, and for Defendant's Motion to Dismiss in Lieu of an Answer,

states as follows:

### ISSUES PRESENTED

1. ARE PLAINTIFF'S CLAIMS AGAINST CITY OF DETROIT BARRED BY THE STATUTE OF LIMITATIONS?

        Defendant Responds: Yes.
        Plaintiff Presumably Responds: No.

### TABLE OF AUTHORITIES

FEDERAL COURT RULES

    1. Fed. R. Civ. P. 12(b)(6)

FEDERAL STATUTORY AUTHORITY

    1. 42 USC § 1983

UNITED STATES SUPREME COURT AUTHORITY

1

1. *Ashcroft v Iqubal*, 556 US 663 (2009)
2. *Bell Atlantic Corp. v Twombly*, 550 US 544 (2007)

6TH CIRCUIT AUTHORITY

1. *Chippewa Trading Company v. Cox,* 365 F.3d 538 (6th Cir.2004)
2. *Guy v. Lexington–Fayette,* 488 Fed. Appx. 9 (6th Cir.2012)

DISTRICT COURT AUTHORITY

1. *Jones v. Schmaker,* 2019 WL 2949964 (W.D. Mich. July 9, 2019)
2. *Kirschke v. Schooley*, 2020 WL 3036389 (E.D. Mich. June 4, 2020)
3. *Massey v. Frank,* 2019 WL 1109756 (W.D. Mich. Mar. 11, 2019)
4. *Peterson v. Ostrander,* 2016 WL 2956360 (W.D. Mich. May 23, 2016)

OTHER CIRCUIT & DISTRICT COURT AUTHORITY

1. *Davis v Jackson*, 2016 WL 5720811 (SDNY, September 30, 2016)

MICHIGAN OTHER

1. MCL § 600.5805(10)
2. MCL § 600.5851(9)

## BACKGROUND, OVERVIEW OF ALLEGATIONS, AND PRELIMINARY STATEMENT

Very few cases require little to no introduction and this may be one of them.

The story of Richard Wershe Jr. a/k/a/ "White Boy Rick" is well known, so much so

that it is the story of both non-fiction domentaries and motion picture feature films.

Summarily, as outlined in Plaintiff's Complaint,[1] in the mid-1980s Plaintiff, a minor

at the time, became a narcotics informant for various law enforcement personnel. In

---

[1] Doc. No.: 4.

2

the years that followed Plaintiff continued engaging in the drug trade before ultimately being arrested, tried, and convicted to life in prison without a chance of parole. Following changes in the law and continued protests by the public and media, Plaintiff was ultimately released from prison on July 20, 2020, after spending more than thirty-two (32) years incarcerated.

As against Defendant, CITY OF DETROIT, Plaintiff asserts a 42 USC § 1983 *Monell* claim under Substantive Due Procees (Count II) and Procedural Due Process (Count III) theories of Liability.

Plaintiff's counsel, apparently conceding that under typical circumstances, that claims being asserted in this action would be barred by the Statute of Limitations, opens the Complaint by stating:[2]

> It is anticipated that Defendants in this action will assert a defense based on the statutory limitations periods of Plaintiffs causes of action. However, the undersigned counsel has done extensive research as to that issue, and feels confident in bringing this action based on the relatively recent (and commendable) trend of federal courts to apply equitable tolling of limitation periods in cases brought by recently released prisoners against the criminal justice system and those that had the power to keep them imprisoned. "Thus, the Court concludes that in the prison context, reasonable fear of retaliation may be sufficient to constitute extraordinary circumstances warranting equitable tolling, particularly if the person threatening retaliation is a

---

[2] *Id*. at Pg. ID 83-84.

defendant or another official who could be or was influenced by a defendant."[3]

The emerging doctrine holds that when a prisoner has a legitimate fear of retaliation for exercising their rights, equitable tolling must be considered. Here, Plaintiff Wershe actually has been retaliated against by the justice system, and received wise counsel from his prior two attorneys (William Bufalino and Ralph Musilli) to forego seeking legal redress until he was out of prison for fear of retaliation.

*****

However, Plaintiff's reliance on *Davis*, **an unpublished District Court Opinion from the Southern District of New York**, is misplaced and the Plaintiff's claim of a "relatively recent (and commendable) trend of federal courts to apply equitable tolling of limitation periods in cases brought by recently released prisoners against the criminal justice system and those that had the power to keep them imprisoned[,]" patently ignores recent Michigan precedent which explicitly rejects this claim. For the reasons set forth more fully hereinafter, Plaintiff's claims against City of Detroit are outside the Statute of Limitations thereby warranting Dismissal.

### STANDARDS OF REVIEW

Motions brought pursuant to Fed. R. Civ. P. 12(b)(6) test the legal sufficiency of the pleadings and the court must limit its inquiry to the pleadings alone.[4] Such

---

[3] Citing, *Davis v Jackson*, 2016 WL 5720811, at *11 (SDNY, September 30, 2016).

[4] *German v Killeen*, 495 F Supp 822 (D. Mich. 1980).

4

motions have long been recognized as serving a useful purpose in disposing of legal issues within a minimum of time and expense to the parties.[5]  Fed. R. Civ. P. 12(b)(6) provides for dismissal of a case where the Complaint fails to state a claim upon which relief may be granted.  When reviewing a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."[6]  But this Court "need not accept as true legal conclusions or unwarranted factual inferences."[7]  Legal conclusions masquerading as factual allegations will not suffice.[8]  To defeat a Motion to Dismiss brought under Fed. R. Civ. P. 12(b)(6), the complaint must allege sufficient facts, as to each material element, so a decision in his or her favor is conceivable under the legal theory the plaintiff advances.[9]  Plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action;

---

[5] *Hilland Dairy Inc. v Kroger Co.*, 403 F2d 968 (8th Cir. 1968).

[6] *DirectTV, Inc v Treesh*, 487 F3d 471, 476 (6th Cir 2007).

[7] *Id.*

[8] *Eidson v State of Tenn.*, 510 F3d 631, 634 (6th Cir 2007).

[9] *Scheid v Fanny Farmer Candy Shops, Inc.*, 859 F3d 434 (6th Cir 1988).

5

they must show entitlement to relief."[10]

In *Bell Atlantic Corp. v Twombly*,[11] the Supreme Court explained that "a plaintiff's obligations to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]  Factual allegations must be enough to raise a right to relief above the speculative level[.]"[12]  Dismissal is appropriate if the plaintiff fails to offer sufficient factual allegations that make the asserted claim plausible on its face.[13]  The Supreme Court clarified this standard in *Ashcroft v Iqbal*:[14]

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and

---

[10] *LULAC v Bredesen*, 500 F3d 523, 527 (6th Cir 2007).

[11] 550 US 544, 556 (2007).

[12] *Id*. at 555.

[13] *Id*. at 570.

[14] 556 US 663 (2009).

plausibility of entitlement to relief.[15]

*****

## APPLICABLE LAW & ARGUMENT

1. ARE PLAINTIFF'S CLAIMS AGAINST CITY OF DETROIT BARRED BY THE STATUTE OF LIMITATIONS?

The statute of limitations for a § 1983 action in Michigan is three (3) years, based upon Michigan's three-year statute of limitations for injury to a person or property.[16] "A federal court must borrow state statutes of limitations **and tolling rules** in a § 1983 action."[17] It is well established that Michigan does not recognize extra-statutory tolling of statutes of limitation and four (4) cases illustrate this point precisely:

_Kirschke v. Schooley_:[18]

To state a federal civil rights claim, a plaintiff must show that: (1) the defendant is a person who acted under the color of state or federal law, and

---

[15] _Id_. at 678 (quotations omitted), citing _Twombley_, supra.

[16] MCL § 600.5805(10); _Chippewa Trading Company v. Cox,_ 365 F.3d 538, 543 (6th Cir.2004).

[17] _Guy v. Lexington–Fayette Urban County Government,_ 488 Fed. Appx. 9, 18 (6th Cir.2012) [**emphasis added**].

[18] No. 2:20-CV-11118, 2020 WL 3036389, at *2–3 (E.D. Mich. June 4, 2020) [citations omitted] (Exhibit "A").

7

(2) the defendant's conduct deprived the plaintiff of a federal right, privilege, or immunity.

If the allegations in a complaint show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim upon which relief may be granted.

State statutes of limitations and tolling principles apply to determine the timeliness of claims raised in lawsuits brought pursuant to 42 USC § 1983. Section 1983 civil rights actions are governed by the state statute of limitations for personal injury actions. For such actions in Michigan, the statute of limitations is three years. Accrual of the claims for relief is a question of federal law. The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis for the action...

Plaintiff's Prisoner Civil Rights Complaint is untimely. In his pleadings, he raises claims concerning events that occurred from June, 2016 through December, 2016 while he was confined at the Thumb Correctional Facility in Lapeer, Michigan. Plaintiff knew or had reason to know of the events and injuries giving rise to his complaint at the time of those events. Consequently, his civil rights claims accrued in 2016 with the last event, the alleged improper prison transfer, occurring on December 29, 2016. Plaintiff, however, did not sign and date his Prisoner Civil Rights Complaint until April 7, 2020, more than three months after Michigan's three-year limitations period ended. This action is therefore untimely. Moreover, **Michigan law no longer tolls the running of the statute of limitations while a plaintiff is incarcerated. And**

8

**it is well-established that ignorance of the law does not warrant equitable tolling of a statute of limitations**.[19] Plaintiff's Prisoner Civil Rights Complaint is untimely and must be dismissed for failure to state a claim upon which relief may be granted under 42 USC § 1983…

The Court further concludes that an appeal from this decision cannot be taken in good faith. This case is closed. No further pleadings should be filed in this matter.

*****

*Jones v. Schmaker*:[20]

To state a claim under 42 USC § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 USC § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. Accrual of the claim for relief, however, is a question of federal law. The statute of

---

[19] Noting, "[i]n fact, Michigan law does not permit equitable tolling; rather tolling must be based on statute" (citations omitted).

[20] No. 1:19-CV-195, 2019 WL 2949964, at *2 (W.D. Mich. July 9, 2019) [citations omitted] (Exhibit "B").

9

limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action.

Plaintiff's complaint is untimely. He asserts claims arising in June and July of 1998. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, his claims accrued in 1998. However, he did not file his complaint until March of 2019, well past Michigan's three-year limit. Moreover, **Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. Because Plaintiff's claims are barred by the applicable statute of limitations, his complaint is subject to dismissal for failure to state a claim**.

*****

*Peterson v. Ostrander*:[21]

To state a claim under 42 USC § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 USC § 1983. For civil rights suits filed in Michigan under §

---

[21] No. 1:16-CV-104, 2016 WL 2956360, at *2 (W.D. Mich. May 23, 2016) [citations omitted] (Exhibit "C").

10

1983, the statute of limitations is three years. Accrual of the claim for relief, however, is a question of federal law.  The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action.

Plaintiff's complaint is untimely. He asserts claims arising in November 2012. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, his claims accrued in 1997. However, he did not file his complaint until January 26, 2016,[2] beyond Michigan's three-year limit. Moreover, **Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated.  Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. Where, as here, "the allegations...show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim...." The Court therefore will dismiss the action as untimely**.

*****

*Massey v. Frank*:[22]

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 USC § 1983 or under *Bivens*. For civil rights suits filed in Michigan, the statute of limitations is three years. Accrual of the claim for relief, however, is a question of federal law. The statute of

---

[22] No. 1:19-CV-115, 2019 WL 1109756, at *3 (W.D. Mich. Mar. 11, 2019) [citations omitted] (Exhibit "D").

11

limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action.

Plaintiff's complaint is untimely. He asserts claims related to his indictment, arrest, and guilty plea that would have arisen in 2007. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, his claims accrued that same year. However, he did not file his complaint until February 2019**,** well past Michigan's three-year limit. Moreover, **Plaintiff cannot rely on equitable tolling because Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated.  Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations**.

A complaint may be dismissed as frivolous if it is time-barred by the appropriate statute of limitations. The Sixth Circuit has repeatedly held that when a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate.  Accordingly, Plaintiff's action can be dismissed as frivolous because it is barred by the statute of limitations.

*****

Having established that equitable tolling does not apply to this action, there can be no question that Plaintiff's claims in this matter arose long before July 20, 2018, being three (3) years prior to the filing of Plaintiff's Complaint. Looking to the allegations stated in Plaintiff's Complaint, the **latest possible** date on which **any** of Plaintiff's claims against CITY OF DETROIT could have begun to run was in 2003:

12

102)   The results of the publishing of Plaintiff's sealed testimony were, as expected that he was denied parole **at his 2003 hearing**;[23]

130)   The City of Detroit was the moving force behind Plaintiff's injuries in that it sanctioned, officially and unofficially, the abuse of Plaintiff by his use as a child informant and drug dealer **and the use of his sealed grand jury testimony against him at his parole hearing**;[24]

140)   Official policy 2 - The acquiring of Plaintiffs sealed grand jury Testimony and its distribution to Detroit Police Officers, including William Rice, who were then instructed to go testify against Plaintiff as if from their personal knowledge was the result of an official policy of the City of Detroit;[25]

141)   Additionally or alternatively, the acquiring of Plaintiffs sealed grand jury testimony and its distribution to Detroit Police Officers, including William Rice, who were then instructed to go testify against Plaintiff as if from their personal knowledge was the result of the ratification of a final decision maker at the City of Detroit and/or its Detroit Police Department, as William Rice was a high-ranking Detroit Police Department official at the time (head of the homicide unit) and he

---

[23] Doc. No.: 4, Pg. ID 103, ¶102 (**emphasis added**).

[24] *Id.* at Pg. ID 107, ¶ 130; Pg. ID 109, ¶ 138 (**emphasis added**).

[25] *Id.* at Pg. 109-110, ¶ 140.

13

testified that he was commanded to review the sealed grand jury testimony and testify **at Plaintiffs 2003 parole hearing**;[26]

142) Additionally or alternatively, the acquiring of Plaintiffs sealed grand jury testimony and its distribution to Detroit Police Officers, including William Rice, who were then instructed to go testify against Plaintiff as if from their personal knowledge was the result of the City of Detroit's custom or policy of inadequate training as to the unlawfulness of using sealed testimony in said fashion and testifying so as to make it appear that the officer had first-hand knowledge of the events they described;[27]

143) Additionally or alternatively, the acquiring of Plaintiffs sealed grand jury testimony and its distribution to Detroit Police Officers, including William Rice, who were then instructed to go testify against Plaintiff as if from their personal knowledge was the direct result of a policy or custom of indifference and tolerance of constitutional violations by the City of Detroit employees and their police;[28]

144) As a direct result of Defendant the City of Detroit's above-described illegal policy or custom, Plaintiff suffered severe injury as a direct result of Defendants' above-described actions **in the form of doing**

---

[26] *Id*. at Pg. ID 110, ¶ 141 (**emphasis added**).

[27] *Id*. at ¶ 142.

[28] *Id*. at Pg. ID 110-11, ¶ 143.

14

**another 17 years in prison, in having his parole denied**, in having his hope and faith in humanity shattered.[29]

\*\*\*\*\*

The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. Plaintiff has acknowledged in a sworn Affidavit that the last *alleged* act for which City of Detroit of any officer, agent, or employee thereof could be held liable for occurred in 2003, that he wished to take legal action against the named Defendants in this matter, and that he was advised that he would have one (1) year after being released from prison to file suit.[30] However, as noted above, **it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations**. Accordingly, Plaintiff's Complaint against City of Detroit is beyond the Statute of Limitations and should be dismissed.

## CONCLUSION

**WHEREFORE**, Defendant, CITY OF DETROIT, respectfully requests that this Honorable Court grant Defendant's Motion to Dismiss in Lieu of an Answer and further grant any other relief deemed just and appropriate.

Respectfully Submitted,
CITY OF DETROIT LAW DEPARTMENT

---

[29] *Id*. at Pg. ID 111, ¶ 144 (**emphasis added**).

[30] Doc. No.: 4-1 Pg. ID 134-136, ¶¶ 32, 36, 41, 43.

15

Dated: September 30, 2021                    /s/   <u>Gregory B. Paddison</u>
                                                   Gregory B. Paddison (P75963)
                                                   Attorney for Defendants

16

<u>UNITED STATES DISTRICT COURT</u>
<u>EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION</u>

ROBERT WERSHE JR.,                          Case No.: 2:21-cv-11686
        Plaintiff,                          Hon. Laurie J. Michelson

- vs -

CITY OF DETROIT, WILLIAM JASPER, KEVIN GREENE, CAROL DIXON,
JAMES DIXON, HERMAN GROMAN, LYNN HELLAND, and E. JAMES KING,
        Defendants.
_____/

<u>INDEX OF EXHIBITS</u>

**Exhibit "A"**    -    *Kirschke v. Schooley,*
                       2020 WL 3036389 (E.D. Mich. June 4, 2020)

**Exhibit "B"**    -    *Jones v. Schmaker,*
                       2019 WL 2949964 (W.D. Mich. July 9, 2019)

**Exhibit "C"**    -    *Peterson v. Ostrander,*
                       2016 WL 2956360 (W.D. Mich. May 23, 2016)

**Exhibit "D"**    -    *Massey v. Frank,*
                       2019 WL 1109756 (W.D. Mich. Mar. 11, 2019)

                                    Respectfully Submitted,
                                    CITY OF DETROIT LAW DEPARTMENT

Dated: September 30, 2021        /s/   <u>Gregory B. Paddison</u>
                                       Gregory B. Paddison (P75963)
                                       Attorney for Defendants

2020 WL 3036389
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Moses R. KIRSCHKE, #384285, Plaintiff,

v.

Scott SCHOOLEY, et al., Defendants.

CASE NO. 2:20-CV-11118
|
Signed 06/04/2020

**Attorneys and Law Firms**

Moses R. Kirschke, Coldwater, MI, pro se.

**OPINION AND ORDER OF SUMMARY DISMISSAL**

VICTORIA A. ROBERTS, UNITED STATES DISTRICT
JUDGE

I.

*1 This a *pro se* prisoner civil rights case brought pursuant to
42 U.S.C. § 1983. In his Prisoner Civil Rights Complaint,
Michigan prisoner Moses R. Kirschke ("Plaintiff"), currently
confined at the Lakeland Correctional Facility in Coldwater,
Michigan, alleges that his constitutional rights were violated
while was confined at the Thumb Correctional Facility in
Lapeer, Michigan from June, 2016 through December, 2016.
In particular, Plaintiff alleges that employees at the Thumb
Correctional Facility denied him envelopes for sending
legal mail, denied him the use of a typewriter, unfairly
restricted his law library access, failed to investigate and
act upon his grievances and complaints, threatened him, and
improperly transferred him to another prison, the Lakeland
Correctional Facility. He names Thumb Deputy Warden Scott
Schooley, Thumb Resident Unit Managers Alan Greason
and K. Kennedy, Thumb Assistant Resident Unit Supervisor
Brian Rousseau, Thumb Law Librarian Anthony Valone,
and Thumb Transfer Coordinator Natalie Farnsworth as the
defendants in this action and sues them in their personal
capacities. He seeks compensatory and punitive damages,
costs, and any other appropriate relief. The Court granted
Plaintiff leave to proceed without prepayment of the filing fee
for this action. 28 U.S.C. § 1915(a)(1).

II.

Under the Prison Litigation Reform Act of 1996 ("PLRA"),
the Court is required to *sua sponte* dismiss an *in forma
pauperis* complaint before service on a defendant if it
determines that the action is frivolous or malicious, fails to
state a claim upon which relief can be granted, or seeks
monetary relief against a defendant who is immune from such
relief. 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)
(B). The Court is similarly required to dismiss a complaint
seeking redress against government entities, officers, and
employees which it finds to be frivolous or malicious, fails
to state a claim upon which relief may be granted, or seeks
monetary relief from a defendant who is immune from such
relief. 28 U.S.C. § 1915A. A complaint is frivolous if it
lacks an arguable basis either in law or in fact. *Denton v.
Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*,
490 U.S. 319, 325 (1989).

A *pro se* civil rights complaint is to be construed
liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).
Nonetheless, Federal Rule of Civil Procedure 8(a) requires
that a complaint set forth "a short and plain statement of
the claim showing that the pleader is entitled to relief," as
well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)
(2), (3). The purpose of this rule is to "give the defendant
fair notice of what the claim is and the grounds upon which
it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,
555 (2007) (citation omitted). While notice pleading does not
require "detailed" factual allegations, it does require more
than the bare assertion of legal principles or conclusions. *Id.*
Rule 8 "demands more than an unadorned, the defendant-
unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556
U.S. 662, 678 (2009). "A pleading that offers 'labels and
conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do.' " *Id.* (quoting *Twombly*, 550
U.S. at 555). "Nor does a complaint suffice if it tenders 'naked
assertion[s]' devoid of 'further factual enhancement.' " *Id.*
(quoting *Twombly*, 550 U.S. at 557).

*2 To state a federal civil rights claim, a plaintiff must
show that: (1) the defendant is a person who acted under
the color of state or federal law, and (2) the defendant's
conduct deprived the plaintiff of a federal right, privilege, or

Kirschke v. Schooley, Slip Copy (2020)

2020 WL 3036389

immunity. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978); *Harris v. Circleville*, 583 F.3d 356, 364 (6th Cir. 2009).

If the allegations in a complaint show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim upon which relief may be granted. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Jones* and holding that if, on the face of a complaint, the allegations show that relief is barred by an affirmative defense (lack of exhaustion), the complaint is subject to dismissal for failure to state a claim).

### III.

State statutes of limitations and tolling principles apply to determine the timeliness of claims raised in lawsuits brought pursuant to 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). Section 1983 civil rights actions are governed by the state statute of limitations for personal injury actions. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). For such actions in Michigan, the statute of limitations is three years. Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam). Accrual of the claims for relief is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis for the action. *Collyer*, 98 F.3d at 220.

Plaintiff's Prisoner Civil Rights Complaint is untimely. In his pleadings, he raises claims concerning events that occurred from June, 2016 through December, 2016 while he was confined at the Thumb Correctional Facility in Lapeer, Michigan. Plaintiff knew or had reason to know of the events and injuries giving rise to his complaint at the time of those events. Consequently, his civil rights claims accrued in 2016 with the last event, the alleged improper prison transfer, occurring on December 29, 2016. Plaintiff, however, did not sign and date his Prisoner Civil Rights Complaint until April 7, 2020, more than three months after Michigan's three-year limitations period ended. This action is therefore untimely.[1] Moreover, Michigan law no longer tolls the running of the statute of limitations while a plaintiff is incarcerated. Mich. Comp. Laws § 600.5851(9). And it is well-established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. General Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *see also Mason v. Department of Justice*, No. 01-5701, 2002 WL 1334756, *2 (6th Cir. June 17, 2002).[2] Plaintiff's Prisoner Civil Rights Complaint is untimely and must be dismissed for failure to state a claim upon which relief may be granted under 42 U.S.C. § 1983.

### IV.

**\*3** Accordingly, for the reasons stated, the Court **DISMISSES WITH PREJUDICE** Plaintiff's Prisoner Civil Rights Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A. The Court further concludes that an appeal from this decision cannot be taken in good faith. 28 U.S.C. § 1915(a)(3); *Coppedge v. United States*, 369 U.S. 438, 445 (1962). This case is closed. No further pleadings should be filed in this matter.

**IT IS SO ORDERED**.

**All Citations**

Slip Copy, 2020 WL 3036389

---

**Footnotes**

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.   2

1   Plaintiff alleges that he learned that family members would not visit him at the Lakeland Correctional Facility shortly after his December 29, 2016 transfer and that, on or about January 7, 2017, he discovered that Lakeland had elevated levels of lead in their drinking water. Even using January 7, 2017 as the latest "event" or "injury" for purposes of the start of the limitations period, this action is still untimely by three months. Additionally, the Court notes that Plaintiff does not raise legal claims involving the Lakeland drinking water in this action. Rightly so given that the named defendants are employed at the Thumb Correctional Facility and are not responsible for the conditions of confinement at Lakeland.

2   In fact, Michigan law does not permit equitable tolling; rather tolling must be based on a statute. *Citizens Bank v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, No. 11-CV-14502, 2012 WL 5828623, *8 n. 2 (E.D. Mich. July 6, 2012) (citing *Livingston v. C. Michael Villar, P.C.*, No. 299687, 2012 WL 639322, *2 (Mich. Ct. App. Feb. 28, 2012) (per curiam)); *accord Weathers v. Holland Police Dept.*, No. 1:13-cv-1349, 2015 WL 357058, *5 (W.D. Mich. Jan. 27, 2015).

---

End of Document

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:21-cv-11686-LJM-EAS  ECF No. 8-4, PageID.174  Filed 09/30/21  Page 1 of 3

Jones v. Schmaker, Not Reported in Fed. Supp. (2019)

2019 WL 2949964
Only the Westlaw citation is currently available.
United States District Court, W.D.
Michigan, Southern Division.

Larry Darnell JONES, Plaintiff,
v.
M. SCHMAKER et al., Defendants.

Case No. 1:19-cv-195
|
Signed 07/09/2019

**Attorneys and Law Firms**

Larry Darnell Jones, D'Iberville, MS, pro se.

**OPINION**

ROBERT J. JONKER, CHIEF UNITED STATES DISTRICT
JUDGE

*1  This is a civil rights action brought by a former state
prisoner under 42 U.S.C. § 1983. Plaintiff is proceeding
*in forma pauperis*. Therefore, the Court is required to dismiss
this action if the complaint is frivolous, malicious, fails to
state a claim upon which relief can be granted, or seeks
monetary relief from a defendant immune from such relief.
28 U.S.C. § 1915(e)(2). The Court must read Plaintiff's
*pro se* complaint indulgently, *see* Haines v. Kerner, 404
U.S. 519, 520 (1972), and accept Plaintiff's allegations as
true, unless they are clearly irrational or wholly incredible.
Denton v. Hernandez, 504 U.S. 25, 33 (1992). Applying
these standards, the Court will dismiss Plaintiff's complaint
for failure to state a claim.

**Discussion**

**I. Factual allegations**
Plaintiff is a former prisoner who was previously incarcerated
with the Michigan Department of Corrections (MDOC) at
the Oaks Correctional Facility (ECF) in Manistee, Manistee
County, Michigan. The events about which he complains
occurred at that facility. Plaintiff sues Resident Unit Officer
M. Schmaker, Sergeant Unknown Shockley, Lieutenant K.

Miller, Resident Unit Manager B. Topping, Resident Unit
Officer Unknown Lynk, Resident Unit Officer Unknown
Lee, Resident Unit Officer Unknown Farnquist, Sergeant
Unknown Hall, Resident Unit Officer T. Holden, Resident
Unit Officer J. Sephamaki, Sergeant Susan Norton, Resident
Unit Officer Glen Smith, Resident Unit Officer Unknown
Kartes, Resident Unit Officer Unknown Hainstock, Resident
Unit Officer D. Fournier, Psychologist Ed Loftus, Captain B.
Brennan, Nurse Anita Young, and Unknown Party Jane Doe.

Plaintiff alleges that on June 17, 1998, Defendants Schmaker,
Shockley, Miller, Topping, Lynk, Lee, Farnquist, Hall,
Holden, and Sephamaki physically and sexually assaulted
Plaintiff while he was in restraints. On June 28, 1998,
Defendants Norton, Smith, Kartes, Hainstock, and Fournier
placed poison in Plaintiff's food in an attempt to murder him
so they could cover up the sexual and physical assaults that
occurred on June 17, 1998. Plaintiff alleges that Defendant
Loftus violated his rights by having Plaintiff involuntarily
placed in a psych unit at the Huron Valley Center in order
to cover up the crimes committed by the other named
Defendants. Plaintiff also claims that Defendant Young lied in
response to his grievances in order to protect her coworkers.

Plaintiff seeks compensatory, punitive, and special damages,
as well as equitable relief.

**II. Failure to state a claim**
A complaint may be dismissed for failure to state a claim if it
fails " 'to give the defendant fair notice of what the ... claim
is and the grounds upon which it rests.' " Bell Atl. Corp.
v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v.
Gibson, 355 U.S. 41, 47 (1957)). While a complaint need not
contain detailed factual allegations, a plaintiff's allegations
must include more than labels and conclusions. Twombly,
550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009) ("Threadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not
suffice."). The court must determine whether the complaint
contains "enough facts to state a claim to relief that is
plausible on its face." Twombly, 550 U.S. at 570. "A claim
has facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that
the defendant is liable for the misconduct alleged." Iqbal,
556 U.S. at 679. Although the plausibility standard is not
equivalent to a " 'probability requirement,' ... it asks for more

Case 2:21-cv-11686-LJM-EAS ECF No. 8-4, PageID.175 Filed 09/30/21 Page 2 of 3

Jones v. Schmaker, Not Reported in Fed. Supp. (2019)

than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

**\*2** To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at \*1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220. [1]

Plaintiff's complaint is untimely. He asserts claims arising in June and July of 1998. Plaintiff had reason to know of the "harms" done to him at the time they occurred. [2] Hence, his claims accrued in 1998. However, he did not file his complaint until March of 2019, well past Michigan's three-year limit. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* Mich. Comp. Laws § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at \*2 (6th Cir. June 17, 2002). [3] Because Plaintiff's claims are barred by the applicable statute of limitations, his complaint is subject to dismissal for failure to state a claim. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

## Conclusion

**\*3** Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.

A judgment consistent with this opinion will be entered.

## All Citations

Not Reported in Fed. Supp., 2019 WL 2949964

## Footnotes

Case 2:21-cv-11686-LJM-EAS ECF No. 8-4, PageID.176 Filed 09/30/21 Page 3 of 3

Jones v. Schmaker, Not Reported in Fed. Supp. (2019)

1    28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. Id. at 382.

2    Indeed, Plaintiff originally filed suit on the claim but then voluntarily dismissed it in 2000. His attempt to resuscitate the case was unsuccessful. Jones v. Schmaker, No. 18-1722 (6th Cir. Nov. 8, 2018). This did not preclude a new suit, if the limitations period permitted it. Id. at n.1. But the applicable limitations period plainly expired long before Plaintiff filed this new action.

3    In fact, Michigan does not permit equitable tolling on any basis. See Weathers v. Holland Police Dept., No. 1:13-cv-1349, 2015 WL 357058, at *5 (W.D. Mich. Jan. 27, 2015); see also Chandler v. Wackenhut, No. 1:08-cv- 1197, 2010 WL 307908, at *9-10 (W.D. Mich. Jan. 19, 2010).

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works.

3

2016 WL 2956360
Only the Westlaw citation is currently available.
United States District Court, W.D.
Michigan, Southern Division.

Brian Dwight PETERSON, Plaintiff,

v.

David OSTRANDER et al., Defendants.

Case No. 1:16-cv-104
|
Signed 05/23/2016

**Attorneys and Law Firms**

Brian Dwight Peterson, Carson City, MI, pro se.

## OPINION

Janet T. Neff, United States District Judge

**\*1** This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see* Haines v. Kerner, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. Denton v. Hernandez, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

### Factual Allegations

Plaintiff Brian Dwight Peterson presently is incarcerated at the Carson City Correctional Facility, though the actions about which he complains occurred while he was incarcerated at the Kalamazoo County Jail (KCJ). He sues the following Defendants: Sheriff (unknown) Fuller, Captain (unknown) Shull, and Lieutenant (unknown) Kipp, all of the Kalamazoo

County Sheriff Department; and City of Kalamazoo Police Detectives David Caswell and Sheila Goodell; and City of Kalamazoo Police Officer David Ostrander.

Plaintiff alleges that, while being held in KCJ in 2012, he was prevented from sending and receiving mail for some period of time, ostensibly in violation of his First and Eighth Amendment rights. Plaintiff alleges that he submitted a grievance to Defendant Shull on November 11, 2012, and filed another grievance with Officer Garrett (not a Defendant) on November 21, 2012. Plaintiff claims that he received no responses to his grievances. Further, Plaintiff alleges that he was denied access to a law library during that period. He contends that Defendants told him that his right to access the courts was met by having an attorney. Plaintiff conclusorily suggests that, had he been able to receive mail and access the law library, he might have been able to arrange for bail or to obtain a change in venue. Plaintiff also complains that he learned that a warrant had issued authorizing the search of his mail, but he was personally unable to obtain a copy of the warrant. Plaintiff apparently ultimately received a copy of the warrant, which he attaches to his complaint. (*See* ECF No. 1-1, PageID.16.)

For relief, Plaintiff seeks compensatory and punitive damages.

### Discussion

#### I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails " 'to give the defendant fair notice of what the...claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal,

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 1

Peterson v. Ostrander, Not Reported in Fed. Supp. (2016)

Case 2:21-cv-11686-LJM-EAS ECF No. 8-5, PageID.178 Filed 09/30/21 Page 2 of 3

556 U.S. at 679. Although the plausibility standard is not equivalent to a " 'probability requirement,'...it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

**\*2** To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at \*1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220. [1]

Plaintiff's complaint is untimely. He asserts claims arising in November 2012. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, his claims

accrued in 1997. However, he did not file his complaint until January 26, 2016, [2] beyond Michigan's three-year limit. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* MICH. COMP. LAWS § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at \*2 (6th Cir. June 17, 2002).

The statute of limitations is tolled for the period during which a plaintiff's available state remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000). According to Plaintiff's allegations, however, the grievance response period at KCJ was two weeks. Even allowing for tolling during the grievance process, therefore, more than three years have passed since the date of Plaintiff's alleged injury.

Where, as here, "the allegations...show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim...." *Jones v. Bock*, 549 U.S. 199, 215 (2007). The Court therefore will dismiss the action as untimely.

## Conclusion

**\*3** Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g.,

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 2

by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 2956360

## Footnotes

1    28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

2    Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Plaintiff states that he placed a copy of the complaint in the prison mail on January 26, 2016. The complaint was received by the Court on February 1, 2016. The Court has given Plaintiff the benefit of the earlier filing date.

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works. 3

Case 2:21-cv-11686-LJM-EAS ECF No. 8-6, PageID.180 Filed 09/30/21 Page 1 of 4
Massey v. Frank, Not Reported in Fed. Supp. (2019)
2019 WL 1109756

2019 WL 1109756
Only the Westlaw citation is currently available.
United States District Court, W.D.
Michigan, Southern Division,
Southern Division.

Scott Alan MASSEY, Plaintiff,

v.

Hagen W. FRANK et al., Defendants.

Case No. 1:19-cv-115
|
Signed 03/11/2019

**Attorneys and Law Firms**

Scott Alan Massey, Butner, NC, pro se.

## OPINION

Paul L. Maloney, United States District Judge

**\*1** This is a civil rights action brought by a federal prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see* Haines v. Kerner, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. Denton v. Hernandez, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint because it is frivolous and fails to state a claim.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Federal Bureau of Prisons at the Federal Medical Center in Butner, North Carolina. Plaintiff sues the following federal and state officials: Assistant United States Attorney Hagen

W. Frank in Grand Rapids, Michigan; Sergeant Detective Cyndee Gochanour, who works for the Michigan State Police in Jonesville, Michigan; and Investigator of Interstate Commerce Mark O'Riordan, who works for the Secret Service Agency in Washington, D.C.

In July 2007, Plaintiff was indicted and arrested for charges related to possession of child pornography. (*See* Indictment, *United States v. Massey*, 1:07-cr-175 (W.D. Mich.), ECF No. 1.) In October 2007, Plaintiff signed an agreement to plead guilty to the following: distribution of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1), and 2256(8); possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), and 2256(8); and attempting to entice an individual to travel for criminal sexual activity, in violation of 18 U.S.C. § 2422(a). (*See* Plea Agreement, *United States v. Massey*, 1:07-cr-175 (W.D. Mich.), ECF No. 19.) He entered his guilty plea the following month. On March 26, 2008, the Honorable Robert J. Jonker sentenced Plaintiff to a total term of 360 months in prison. (*See* Judgment, *id.* at ECF No. 31.)

In his complaint, Plaintiff asserts eight claims, none of which contain any intelligible supporting facts. For instance, in claim one he alleges, "Contract plea agreement of guilt perjurous regarding stipulated facts within the borders thereof and therefore nullified/void by default being in breach of truth and accuracy upon offering and submission to district court." (Compl., ECF No. 1, PageID.4.) Plaintiff is apparently attacking the contents and validity of his plea agreement, but the Court cannot discern the factual basis for this claim.

In claim two, Plaintiff asserts, "Indictment leading to contract creation referred to in claim one is deficient of district court valid evidence clearly declared to be listed/recorded as discovery material at arraignment...in contradiction to direct appeal counsel's clear affirmation on June 1, 2018 said discovery 'is not part of district court record[.]' " (*Id.*) In other words, Plaintiff appears to be attacking the validity of the indictment against him, but the basis for his attack is unclear.

**\*2** Claims three through eight suffer from similar deficiencies. Claim three apparently challenges the fact that an unidentified proffer or "illusion of proffer" is not part of the district court record. (*Id.*) Claim four asserts that an unidentified defendant "took advantage" and "acted discriminately" toward Plaintiff, without any supporting facts. (*Id.*, PageID.5.) Claim five apparently contends that

**Massey v. Frank, Not Reported in Fed. Supp. (2019)**

2019 WL 1109756

Defendant Gochanour made false representations to support an arrest warrant, but Plaintiff does not identify the false representations. Claim six makes a conclusory assertion that Defendant Gochanour deprived Plaintiff of his right to equal protection under the Fourteenth Amendment. Claim seven asserts that Defendant Gochanour deprived Plaintiff of his right to due process and a fair trial by testifying as a government witness because she was "perjurous" and "inadmissible for testimony." (*Id.*) Plaintiff provides no facts to support these conclusions. Finally, in claim eight, Plaintiff alleges that Defendant O'Riordan was "complicit" in depriving Plaintiff of his civil rights because he "stood mute in observance and witness" of Gochanour's actions. (*Id.*)

II. Analysis

Plaintiff's complaint suffers from a number of deficiencies: it fails to state a claim, it is barred by the statute of limitations, it appears to be challenging the basis for his conviction, which is not a proper subject of a civil rights action under § 1983 or *Bivens* unless his conviction has been overturned, some of the claims—particularly the challenge to the criminal indictment — have been waived by Plaintiff's guilty plea, and Defendant Frank is likely immune from suit. The Court will address only the first two deficiencies.

**A. Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails " 'to give the defendant fair notice of what the...claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) ). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not

equivalent to a " 'probability requirement,'...it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2) ); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i) ).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Where a person alleges that a "federal" actor has violated his or her federal constitutional rights, the claim arises under the doctrine of *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court recognized an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). This implied cause of action is "the federal analog to suits brought against state officials" under 42 U.S.C. § 1983. *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006). To state a claim that is cognizable in a *Bivens* action, the plaintiff must plead two essential elements: first, that she has been deprived of rights secured by the Constitution or laws of the United States, and second, that the defendants acted under color of federal law. *Bivens*, 403 U.S. at 397.

**\*3** Plaintiff fails to state a claim under § 1983 or *Bivens*. As indicated above in the Court's description of the

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2

2019 WL 1109756

complaint, Plaintiff's allegations are vague and conclusory. They are not supported by any facts from which to reasonably infer that any Defendant has deprived Plaintiff of a constitutional right. Indeed, it is difficult to determine the subject matter of Plaintiff's complaint, let alone Defendants' involvement. And as to Defendant Frank, Plaintiff does not name him at all in the body of the complaint. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has not done so here. In short, Plaintiff's allegations do not satisfy the minimal pleading standards required to state a claim.

## B. Statute of Limitations

Plaintiff's complaint is also barred by the statute of limitations. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983 or under *Bivens*. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220. [1]

Plaintiff's complaint is untimely. He asserts claims related to his indictment, arrest, and guilty plea that would have arisen in 2007. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, his claims accrued that same year. However, he did not file his complaint until February 2019**,** well past Michigan's three-year limit. Moreover, Plaintiff cannot rely on equitable tolling because Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* Mich. Comp. Laws § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380,

385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

A complaint may be dismissed as frivolous if it is time-barred by the appropriate statute of limitations. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). The Sixth Circuit has repeatedly held that when a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate. *See Dellis*, 257 F.3d at 511; *Beach v. Ohio*, No. 03-3187, 2003 WL 22416912, at *1 (6th Cir. Oct. 21, 2003); *Castillo v. Grogan*, No. 02-5294, 2002 WL 31780936, at *1 (6th Cir. Dec. 11, 2002); *Duff v. Yount*, No. 02-5250, 2002 WL 31388756, at *1-2 (6th Cir. Oct. 22, 2002); *Paige v. Pandya*, No. 00-1325, 2000 WL 1828653 (6th Cir. Dec. 5, 2000). Accordingly, Plaintiff's action can be dismissed as frivolous because it is barred by the statute of limitations.

## Conclusion

**\*4** Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the complaint will be dismissed because it is frivolous and fails to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

**Massey v. Frank, Not Reported in Fed. Supp. (2019)**

2019 WL 1109756

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1109756

## Footnotes

1    28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

---

**End of Document**    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2021 Thomson Reuters. No claim to original U.S. Government Works.    4