> *\* Do you have 5 years experience in the Fire Fighting Division on Active Duty*
>
> *I met all requirements and was selected in June 2018. There were no grievances from members nor rejections from the Union. (See Application & Selection, Page 25) Since we are not using the promotional provisions found on pages 19-24 of the CBA, seniority has no bearing on my position and, as a dues-paying member in good standing, I will need assistance with this matter before any adverse action is taken against me.*

72. N. Brown's inquiry was ignored.

73. He was demoted January 27, 2020 to the position of Fire Fighter, at a pay rate of approximately $59,000/yr.

74. The disciplinary action taken against N. Brown was without just cause.

75. On or about February 3, 2020, N. Brown filed a grievance concerning his demotion.

76. On or about March 11, 2020, N. Brown wrote to Defendant Gehart.

77. At that time, he reiterated his concern that he believed he and others had been discriminated against on the basis of their prior disability.

78. N. Brown expressed concern that the Union had not followed the CBA when processing the Union grievance.

79. N. Brown expressed concern that there are other areas of the CBA that the City has not complied with, and the Union has failed to seek consistent universal enforcement.

80. His inquiries were ignored, and he was informed by the Union that they would not pursue the grievance that he had filed concerning his demotion.

81. Once again on March 16, 2020, N. Brown wrote a letter to Defendant Gehart in which he stated in part:

> ...my promotion to Fire Prevention was based on the administered examination results and the oral interview.
>
> Another situation that I found to be disturbing is my demotion from FFD to Fire Fighter. Prior to my duty disability status, I met the department's requirements to apply for and become a Fire Fighter Driver applicant. I was later promoted to the classification of FFD after satisfactorily meeting the departments mandatory standards. When I returned to duty, my classification according to the department was FFD and, during my retraining period at the RTC, Chief Green ordered Pump Apparatus Operator and Qualified Driver's Training classes which I completed and was certified.
>
> Over the past few months, during my inquiries I found that I am not "similarly situated" as the City suggests. For example, several members were returned to the Fire Fighting Division, systemically promoted, and later retired.

82. His inquires to the Union were ignored.

### Allegations as to Plaintiff Craig Brown

83. Plaintiff Craig Brown's date of birth is April 29, 1973.

84. C. Brown became employed with the Detroit Fire Department on or about January 25, 1999.

85. C. Brown underwent a disability retirement on or about May 6, 2013.

86. C. Brown underwent treatment for his injury, and was returned to work on or about May 8, 2017.

87. After returning to work, on or about January 27, 2020, C. Brown was stripped of his prior 11 years of seniority and given a new seniority date with 2 years and 8 months of seniority.

88. The disciplinary action taken against C. Brown was without just cause

89. On or about February 6, 2020, C. Brown filed a grievance challenging the loss of his seniority.

90. However, the Union refused to pursue the grievance.
91. C. Brown sent a letter to Defendant Harp requesting an explanation as to why the Union was refusing to pursue his grievance, however, he did not receive a response to his inquiry.
92. Further, on or about March 21, 2020, C. Brown complained to the Union Executive Board and Defendant Crosson that his Return to Duty Seniority Adjustment had been miscalculated.
93. He indicated that his duty disability date was incorrect, as well as his indicated previous service time.
94. However, he never received any response from the Union or Ms. Crosson as it relates to the concerns he expressed.

### Allegations as to Plaintiff James Washington

95. Plaintiff James Washington's date of birth is November 30, 1961.
96. Washington became employed with the Detroit Fire Department on or about August 10, 1992.
97. Washington underwent a disability retirement on or about March 15, 2013.
98. Washington underwent treatment for his injury and was rehired by the City of Detroit on or about September 26, 2016.
99. After returning to work, he was promoted through the seniority system, achieved the rank of Fire Sergeant, and was earning $68,547.00/year.
100. Washington was demoted on or about January 27, 2020 to the position of Fire Fighter at a pay rate of $59,417.00/year.
101. The disciplinary action taken against Washington was without just cause

102. Washington filed a grievance concerning his loss of seniority and demotion on or about January 27, 2020.

103. On or about February 11, 2020, Washington sent separate letters to Defendant Gehart, Defendant Harp, Defendant Cangialosi, and Defendant Smith seeking that the Union represent him concerning his loss of seniority and demotion.

104. The Union refused to honor his request.

### Allegations as to Plaintiff Shannon Ferguson

105. Plaintiff Shannon Ferguson's date of birth is December 19, 1967.

106. Ferguson became employed with the Detroit Fire Department on or about August 1994.

107. Ferguson underwent a disability retirement in 2003.

108. Ferguson submitted a request to return to work letter February 2018.

109. Ferguson received a letter from the City in September 2018 clearing him to return to duty.

110. Ferguson spoke with Defendant Crosson, and she told him she would contact him after she scheduled his return to work.

111. He had several conversations with Defendant Crosson in 2018 and 2019 in which she stated that she was working on his return to work.

112. On March 10, 2020, Ferguson received a certified letter from the City.

113. The letter was dated February 27 2020, and postmarked March 5, 2020.

114. The letter informed him that he must return to work by March 3, 2020 or be considered a voluntary quit.

115. Ferguson spoke with Defendant Crosson, however, she was unaware how to direct him to return to work.

116. She advised Ferguson that there was a new CBA that would prevent him from retaining his seniority status upon return to work.

117. She indicated that Ferguson would return as a new hire, with no seniority.

118. Defendant Crosson also stated that she was unclear if the new CBA would affect Ferguson's ability to return to work, and that she would seek clarification and contact him.

119. Defendant Crosson never gave Ferguson further instructions on how to complete the return to work process.

120. Ferguson made additional attempts to contact Crosson for instructions on how to return to work, however, Defendant Crosson never responded to his inquires.

121. On or about March 20, 2020 Ferguson received a call from Kelly Tapper concerning his return to work.

122. She stated that because Ferguson had reached the 25th anniversary of his seniority date on August 8, 2019, he was no longer eligible to be considered to return to work.

123. If Ferguson had been allowed to return to work, he should have been promoted through the seniority system, achieved the rank of Fire Sergeant, and been earning $68,547.00/year.

124. The denial of his right to return to work was disciplinary action, and it was without just cause.

### Allegations as to Plaintiff Junius Perry

125. Plaintiff Perry's date of birth is December 19, 1976.
126. Perry became employed with the Detroit Fire Department on or about January, 1999.
127. Perry underwent a disability retirement in 2010.
128. Perry underwent treatment as a result of his injury.
129. Perry sent a letter to the City of Detroit seeking to return to work on or about June 2019.
130. Perry was found to be fit to return to work by the City on or about July 18, 2019.
131. Perry was finally allowed to return to work in March 2020.
132. Perry was denied the opportunity to maintain the seniority he had accumulated prior to his disability, and he was returned to work in the position of Fire Fighter at a pay rate of $59,417.00/year.
133. Perry should have been promoted through the seniority system and achieved the rank of Fire Sergeant upon his returned to work, at a rate of pay of $68,547.00/year.
134. The disciplinary action taken against Perry was without just cause.

### Allegations as to Plaintiff Orlando Potts

135. Plaintiff Orlando Pott's date of birth is April 23, 1971.
136. Potts became employed with the Detroit Fire Department on or about March 11,1991.
137. Potts underwent a disability retirement in June 2005.
138. Potts was approved to return to work on or about June 21, 2018.

139. Potts made several attempts to speak to Ms. Crosson about arranging to return to work.

140. He finally spoke to her on July 23, 2018, at which time Ms. Crosson responded and indicated that she would get back to him about the process of returning to work.

141. He continued to call and left several voice messages in hopes of expediting the process of reinstatement.

142. On or about August 27, 2018 he received a voicemail from Ms. Crosson stating that she was waiting to hear from another department.

143. Mr. Potts began to email Ms. Crosson inquiring as to when he could return to work.

144. His initial email was on September 19, 2018 and several emails followed.

145. However, he continued to receive no direction from Ms Crosson.

146. On or about May 23, 2019, Potts emailed Ms. Crosson, and she replied and stated that the Department was addressing a grievance regarding the matter, and when the grievance process was completed, she would be in touch with him.

147. On or about March 4, 2020 Potts received a letter stating to return to work no later than Monday, March 3, 2020.

148. Potts attempted to call Ms. Crosson to gain clarity concerning the letter he had received.

149. Several days thereafter, Potts was contacted by Ms. Crosson, and she informed him that he had to return to work, and start his career over.

150. She stated he would lose all of his seniority; and if he didn't return, his pension checks would stop, and would be considered a Voluntary Quit.

151. Thereafter, Potts converted his disability retirement to a general retirement.

152. At the time Potts went out on a disability retirement, he was a lieutenant in the Fire Marshall Division earning $63,251.00/year.

153. Potts should have been allowed to return to work with his accumulated seniority.

154. If he had been allowed to return to work with his accumulated seniority, he would have achieved the rank of Captain, and been earning over $80,000/year.

## COUNT I
## VIOLATION OF DUTY OF FAIR REPRESENTATION
## BY THE UNION AND THE DEFENDANT UNION OFFICERS, PAST AND PRESENT

155. Plaintiffs hereby incorporate by reference each allegation in each of the previous paragraphs as if fully restated herein.

156. The Union (through the representation of the named Defendant Union Officers) had a duty of fair representation to the Plaintiffs who were members of the bargaining unit it represented and/or beneficiaries of the Union's representation of its members.

157. The Union was obligated to refrain from engaging in conduct that was arbitrary, discriminatory or in bad faith.

158. As the exclusive bargaining agent, the Union had a duty to fairly represent both members and non- members who were within the bargaining unit.

159. The duty of fair representation included the Union's responsibility to bargain for and to enforce the collective bargaining agreement, as well as process meritorious grievances filed by the employees within the bargaining unit in a manner that was not arbitrary, discriminatory, or in bad faith.

160. The Union breached each obligation owed to the Plaintiffs as delineated pursuant to the above facts.

161. As a direct and proximate result of the violation of Plaintiffs' rights as alleged, they have suffered loss of seniority, loss of earnings and earning capacity, past and future lost earnings, the value of fringe and pension benefits; they have sustained mental and emotional distress, embarrassment, humiliation, anxiety about the future, damage to their good name and reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful occupation of their choice all of which damages continue into the future.

## COUNT II
## BREACH OF FIDUCIARY DUTY
## BY THE UNION AND THE DEFENDANT UNION OFFICERS, PAST AND PRESENT

162. Plaintiffs hereby incorporate by reference each allegation in each of the previous paragraphs as if fully restated herein.

163. There was a fiduciary relationship had between the Union (as represented by its officers, who are named Defendants) and the Plaintiffs.

164. A fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another.

165. The Union as fiduciary owed the Plaintiffs duties of loyalty, honesty, due care, good faith, and fair dealing.

166. The Plaintiffs relied upon the judgment, advice and actions of the Union to their detriment.

167. The Union breached the fiduciary duty it owed to the Plaintiffs.

168. As a result of the breach by the Defendant Union, the Plaintiffs were caused to suffer damages.

169. Relief is warranted wherein the Union's position of influence was abused and/or confidences have been reposed and/or betrayed.

170. The Union as the fiduciary had a duty to act for the benefit of the Plaintiffs regarding matters within the scope of the relationship.

171. The violation of the fiduciary duty was a proximate cause of the damages the Plaintiffs have suffered.

172. As a direct and proximate result of the violation of Plaintiffs' rights as alleged, they have suffered loss of seniority, loss of earnings and earning capacity, past and future lost earnings, the value of fringe and pension benefits; they have sustained mental and emotional distress, embarrassment, humiliation, anxiety about the future, damage to their good name and reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful occupation of their choice all of which damages continue into the future.

## COUNT III
## BREACH OF CONTRACT
## VIOLATION BY ALL DEFENDANTS

173. Plaintiffs hereby incorporate by reference each allegation in each of the previous paragraphs as if fully restated herein.

174. The Plaintiffs were parties to, and/or beneficiaries of a valid, enforceable contract/collective bargaining agreement had between the Union, and the City of Detroit.