# EXHIBIT C

20-006272-CD FILED IN MY OFFICE  Cathy M. Garrett  WAYNE COUNTY CLERK  5/12/2020 6:50 PM  Laverne Chapman

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

CHRISTOPHER MCGHEE, NORMAN BROWN,
CRAIG BROWN, JAMES WASHINGTON,
SHANNON FERGUSON, JUNIUS PERRY,
and ORLANDO POTTS

Case No.     CD
Judge:

        Plaintiffs,

v.

CITY OF DETROIT,
ERIC JONES - EXECUTIVE FIRE COMMISSIONER,
REGINALD JENKINS – 2ND DEPUTY COMMISSIONER,
ROBERT DISTELRATH - CHIEF OF DEPARTMENT
FIRE FIGHTING DIVISION,
KEMIA CROSSON – EMPLOYEE SERVICES CONSULTANT,
DETROIT FIRE FIGHTERS ASSOCIATION LOCAL 344,
MICHAEL NEVIN – FORMER PRESIDENT
THOMAS GEHART – PRESIDENT,
WILLIAM HARP – VICE PRESIDENT,
JOHN A. CANGIALOSI – SECRETARY
CHRISTOPHER A. SMITH - TREASURER

*In their Individual and Official Capacities,
Jointly & Severally,*

        Defendants.

_____/

**Herbert A. Sanders (P43031)**
**The Sanders Law Firm, P.C.**
Attorney for Plaintiffs
The Ford Building
615 Griswold, Suite 913
Detroit, Michigan 48226
(313) 962-0099 (Phone)
(313) 962-0044 (Fax)
haslawpc@gmail.com
_____/

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.

# COMPLAINT

NOW COME the Plaintiffs, by and through their Attorney, Herbert A. Sanders of THE SANDERS LAW FIRM, P.C., and for their Complaint they state as follows:

1. This is an action to enforce civil rights arising out of the Plaintiffs' relationship with Defendants.

## PARTIES

2. Plaintiff Christopher McGhee is a resident of the City of Detroit, County of Wayne, State of Michigan.

3. Plaintiff Norman Brown is a resident of the City of Southfield, County of Oakland, State of Michigan.

4. Plaintiff Craig Brown is a resident of the City of Sterling Heights, County of Macomb, State of Michigan.

5. Plaintiff James Washington is a resident of the City of Warren, County of Macomb, State of Michigan.

6. Plaintiff Shannon Ferguson is a resident of the City of Detroit, County of Wayne, State of Michigan.

7. Plaintiff Junius Perry is a resident of the City of Warren, County of Macomb, State of Michigan.

8. Plaintiff Orlando Potts is a resident of the City of Romulus, County of Wayne, State of Michigan.

9. At all times relevant hereto, Plaintiffs were employed by the Defendant City of Detroit, in the County of Wayne, City of Detroit, State of Michigan.

10. At all times relevant hereto, Plaintiffs were members of the Detroit Fire Fighters Association, Local 344.

11. At all times relevant hereto, Defendant City of Detroit (also referred to herein as the City) was and is a municipal corporation located in Wayne County, Michigan operating under, and subject to, the Constitution and laws of the State of Michigan and the United States.

12. Defendant Eric Jones, Executive Fire Commissioner, at all times relevant hereto was an employee and agent of the City of Detroit, and the City of Detroit is therefore vicariously liable for his actions.

13. Defendant Reginald Jenkins – 2nd Deputy Commissioner, at all times relevant hereto was an employee and agent of the City of Detroit, and the City of Detroit is therefore vicariously liable for his actions.

14. Defendant Robert Distelrath, Chief of Department Fire Fighting Division, at all times relevant hereto was an employee and agent of the City of Detroit, and the City of Detroit is therefore vicariously liable for his actions.

15. Defendant Kemia Crosson, Employee Services Consultant, at all times relevant hereto was an employee and agent of the City of Detroit, and the City of Detroit is therefore vicariously liable for her actions.

16. Defendant City of Detroit had a Respondent Superior relationship with all of the named Defendant City employees.

17. At all times relevant hereto, Defendant Detroit Fire Fighters Association, Local 344 (also referred to herein as DFFA and/or the Union) was chartered with the International Association of Fire Fighters (IAFF), and is the union representative of fire fighters that are employed by the City of Detroit.

3

18. Defendant Michael Nevin, Former President, at all times relevant hereto was an employee and agent of the Detroit Fire Fighters Association, and the Detroit Fire Fighters Association is therefore vicariously liable for his actions.

19. Defendant Thomas Gehart, President, at all times relevant hereto was an employee and agent of the Detroit Fire Fighters Association, and the Detroit Fire Fighters Association is therefore vicariously liable for his actions.

20. Defendant William Harp, Vice President, at all times relevant hereto was an employee and agent of the Detroit Fire Fighters Association, and the Detroit Fire Fighters Association is therefore vicariously liable for his actions.

21. Defendant John A. Cangialosi, Secretary, at all times relevant hereto was an employee and agent of the Detroit Fire Fighters Association, and the Detroit Fire Fighters Association is therefore vicariously liable for his actions.

22. Defendant Christopher A. Smith, Treasurer, at all times relevant hereto was an employee and agent of the Detroit Fire Fighters Association, and the Detroit Fire Fighters Association is therefore vicariously liable for his actions.

23. Defendant DFFA had a Respondent Superior relationship with the named Defendant Union officers.

**GENERAL ALLIGATIONS**

24. The amount in controversy is in excess of $10,000,000.00 exclusive of interest, costs, and attorney fees.

25. The events giving rise to this cause of action occurred in the City of Detroit, County of Wayne, State of Michigan.

26. Prior to 2014, the Collective Bargaining Agreement (CBA) had between the City and DFFA allowed a fire fighter that had retired as a result of a duty disability to maintain his/her accumulated seniority if they returned to the employ of the City of Detroit as a fire fighter.

27. Additionally, the CBA allowed an employee that returned to work after a duty disability retirement to achieve and assume the rank of his/her class on an accelerated basis.

28. Specifically, the 2001-2008 CBA had between DFFA and the City stated in part:

> **Section 9. Seniority - C. Forfeitures 8 (a)-(b)**
>
> (a) Seniority credit for promotions to any position in the Department shall be frozen and cease to accumulate for any member on a disability retirement for three (3) years or more. In the event such person is returned to active service, he/she shall be reinstated with his/her frozen seniority.
>
> (b) Persons who return to active service from duty disability retirement after one (1) or more years of absence must attend and successfully complete a re-entry training program including a performance physical evaluation that is conducted by the Fire Training Division and approved by the Chief of Fire Operations and Executive Fire Commissioner.
>
> \*\*\*
>
> **Section 9. Seniority - E. Promotions and Transfers - Fire Fighting Division**
>
> 1. General: Promotions in the Fire Department shall be based on length of service therein. The officers or employee thereof having served the longest period in any position shall be advanced to fill any vacancy in the next higher position, if he/she shall have the qualifications therefore.

> *a. Promotions shall be based solely upon seniority provided the senior employee shall satisfy qualifications for the position for which he/she is to be promoted[1].* See Exhibit 1.

29. Prior to 2014, in reliance upon the longstanding disability retirement policy, a litany of fire fighters, including the Plaintiffs, retired with a duty disability injury, and sometime thereafter returned to the employ of the City of Detroit as a fire fighter.

30. Those individuals were allowed to return as fire fighters, maintain their seniority, and advance to the rank of their entry class.

31. On November 6, 2014, the City and the DFFA entered into a new CBA 2014-2019. See Exhibit 2.

32. **Article 12 Seniority - D (2) of the 2014-2019 CBA**, states that employees who retire from service as a result of a duty disability, shall lose their seniority.

33. Pursuant to the new CBA provision, they shall no longer be allowed to return to the employ of the City and maintain their accumulate seniority, or advance to the rank of their original class.

34. However, after implementation of the new CBA provision in 2014, no duty disability retired fire fighter was ever notified by the City or the Union that they would lose all of their seniority if they returned to work for the City.

35. To the contrary, after negotiation of the 2014-2019 CBA, the City continued to return many fire fighters to duty with their previous seniority in tack, without objection from the Union; and officers were allowed to assume the rank that their original class had achieved.

---

[1] Based upon information and belief, the 2001-2008 CBA was mutually extended through 2013.

36. The Defendants had conspired to selectively enforce the new provision of the 2014-2019 CBA.

37. In fact, after 2014 the City and the Union agreed to allow some fire fighters to return from duty disability retirement, maintain their previous seniority, be promoted in accordance with their class ranking, and retire after receiving the promotion with a pension based upon the ranking that they had achieved with their original class.

38. Thereafter, in continuation of the conspiracy to selectively enforce the new provision of the 2014 CBA, in May 2019, the Union filled a grievance maintaining that the City had violated the CBA by returning fire fighters to duty with their seniority after a disability retirement.

39. The grievance was filed in violation of the CBA years after the Union first became aware that fire fighters were returning from a duty disability and being allowed to maintain their previous seniority.

40. In accordance with the 2014-2019 CBA; *"Any grievance not filed within ten (10) calendar days of the occurrence of the alleged violation or within ten (10) calendar days of an Employee or the Association becoming aware of an alleged violation will be considered untimely and will not be processed"*.

41. However, in furtherance of their conspiracy, the Defendants conspired to ignore the CBA statute of limitations, and the grievance was recognized and acknowledged by the City.

42. Thereafter, without cause, the Defendants agreed to take disciplinary action against the Plaintiffs.

43. The Defendants put in place an alleged blanket demotion of all disability retirement returnees that had returned to work for the City after 2014.

44. As a result, the Plaintiffs were stripped of the seniority they had accumulated prior to their retirement, and in many instances demoted.

45. The Plaintiffs were not afforded any type of hearing prior to the disciplinary actions taken against them.

46. The Defendants' goal was to strip the Plaintiffs of their seniority, and take away any promotion which was the result of the systematic seniority promotion.

47. The disparate treatment and lack of due process in which the stripping of seniority and promotions occurred was presented to the Union on numerous occasions by those victimized, however they refused to assist the Plaintiffs, or provide them with representation.

48. The Plaintiffs filed grievances and wrote letters to both the Union and the City in an effort to address the disparate treatment; however, their efforts fell on deaf ears.

49. The City nor the Union made any effort to address the injustice that was being done to the Plaintiffs.

50. Defendants intentionally deprived the Plaintiffs of the opportunity to collect a larger pension.

51. All of the Plaintiffs affected by the conspiracy of the Defendants, which deprived them of their seniority and promotions (or promotional opportunities) were over the age of 40.

52. All of the Plaintiffs affected by the conspiracy of the Defendants, which deprived them of their seniority and promotions (or promotional opportunities) were formerly disabled.

53. In accordance with the CBA discipline and demotions shall only occur when there is just cause.

54. The Defendants did not have just cause to discipline and/or demote the Plaintiffs.

### Allegations as to Plaintiff Christopher McGhee

55. Plaintiff McGhee's date of birth is June 24, 1963.

56. McGhee became employed with the Detroit Fire Department on or about March 9, 1992.

57. McGhee underwent a disability retirement on or about December 26, 1999.

58. After undergoing surgery and therapy as a result of his injury, McGhee was rehired by the City of Detroit, and returned to work on or about June 21, 2016.

59. After returning to work, he was promoted through the seniority system, achieved the rank of Lieutenant on October 10, 2019, in accordance with his class ranking, and was earning a salary of $72,000/year.

60. McGhee was stripped of the seniority he had earned prior to his disability retirement, and demoted on or about January 27, 2020 to the position of Fire Fighter at a pay rate of $59,417.00/year.

61. The disciplinary action taken against McGhee was without just cause.

62. McGhee requested through Defendant Harp that a grievance be pursued on his behalf.

63. However, Defendant Harp and the Union refused to pursue the grievance.

## Allegations as to Plaintiff Norman Brown

64. Plaintiff Norman Brown's date of birth is January 26, 1969.

65. N. Brown underwent a disability retirement in 2003.

66. After rehabilitation, he returned to work in January 2018 as a fire fighter.

67. Thereafter he was promoted through testing (as opposed to the seniority system) to the rank of Lieutenant on July 30, 2018 and was earning approximately $71,000/year.

68. On or about October 10, 2019, N. Brown wrote a letter to the DFFA expressing his concern that he had been informed by the City of Detroit that his seniority would be reduced and he would be demoted as a result of a grievance filed by the DFFA concerning promotions received by him and other fire fighters.

69. N. Brown further expressed that the grievance was not filed in a timely manner.

70. N. Brown requested that a grievance be filed on his behalf, and he further requested an opportunity to meet with a Union representative.

71. On December 20, 2019, N. Brown wrote a letter to Defendant Harp in which he expressed:

> *I am writing today in the hopes of clearing up any confusion as it pertains to my potential demotion resulting from your May 2019 Grievance. The Grievance stated the City was in violation of (seniority) Article 12 Section 7 found on Pages 17 & 18 of the CBA which states:*
>
>> *An employee shall lose his seniority due to absence from work for any reason in excess of two (2) years.*
>
> *As you know, my position with Fire Prevention is not the result of seniority. Bulletin #4/18 gives clear requirements for the position to Fire Prevention which state:*
>
>> *\*Are you a current Detroit Fire Employee*