# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re*:

CITY OF DETROIT, MICHIGAN

*Debtor.*

Case No. 13-53846

Hon. THOMAS J. TUCKER

Chapter 9

| | |
|---|---|
| AYAD LAW, PLLC | MILLER, CANFIELD, PADDOCK |
| Nabih H. Ayad (P59518) | AND STONE, PLC |
| William D. Savage (P82146) | Marc N. Swanson (P71149) |
| Attorney for Plaintiff | *Attorney for City of Detroit* |
| 645 Griswold St., Ste 2202 | 150 West Jefferson, Suite 2500 |
| Detroit, MI 48226 | Detroit, MI 48226 |
| P: 313.983.4600 | P: (313) 496-7591 |
| F: 313.983.4665 | F: (313) 496-8451 |
| nabihayad@ayadlawpllc.com | swansonm@millercanfield.com |
| williamsavage@ayadlawpllc.com | |

## RICHARD WERSHE, JR'S RESPONSE TO THE CITY OF DETROIT'S MOTION TO ENFORCE JUDGMENT AND REQUEST FOR STAY OF BANKRUPTCY COURT PROCEEDINGS (CORRECTED CERTIFICATE OF SERVICE)[1]

Richard Wershe, Jr. (hereinafter "Wershe") by and through his attorneys at

Ayad Law, PLLC, hereby states the following in response to Debtor the City of

Detroit's (hereinafter "Detroit") Motion for Order Enforcing The Bar Date Order and

---

[1] This Response was originally filed on February 1, 2022, with a defective Certificate of Service. This counsel received a mailed letter from this Court notifying Plaintiff that they had 7 days to correct the defect, on February 10, 2022. The notice was dated February 2, 2022. Counsel from Ayad Law, PLLC called this Court and spoke with a Clerk who assured counsel that this correction could be filed today without issue from the date of the notice letter.

Confirmation Order Against Richard Wershe, Jr. and requests that this Honorable Court stay any further bankruptcy proceedings on this matter pending the ruling of the district court on the matter.

Wershe incorporates by reference the highly relevant brief, which he filed in case no. 2:21-cv-11686-LJM-EAS, in response to the motion and brief filed by the City of Detroit and attached to their motion pending before this Court as an exhibit. See **Exhibit A, Plaintiff's Response to Defendant City of Detroit's Motion to Dismiss, filed in District Court.**

## LAW AND ARGUMENT

I.   **Wershe's claim is not dischargeable because he was not afforded proper notice in accord with his due process rights, in light of his special circumstance of being afraid to take action against Detroit, as is evidenced by his participation in the federal prisoners' witness protection program while imprisoned.**

For assisting the federal government in catching approximately a dozen corrupt Detroit police and officials, Plaintiff was placed in the prisoners witness protection program, to hide him from those connected to corrupt Detroit officials who may be able to facilitate the killing or injuring of Wershe while he was behind bars. It defies logic then to require that Wershe be required by this honorable Court to have brought an action against Detroit, while he was still in harms way.

"**Inadequate notice is a defect which precludes discharge of a claim in bankruptcy**… For notice purposes, bankruptcy law divides claimants into two

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

types, 'known' and 'unknown.' " *Chemetron Corp v Jones*, 72 F3d 341, 346 (CA 3, 1995) (emphasis added, citations omitted).

> **Discharge of the claims of future unknown claimants raises questions regarding due process. Notice is "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality...."** Lack or inadequacy of notice of a bankruptcy prevents a claimant from having the opportunity to participate meaningfully in a bankruptcy proceeding to protect his or her claim. See 11 U.S.C. § 342(a) ("There shall be given such notice as is appropriate ... of an order for relief ... under [the Bankruptcy Code]."). **Inadequate notice accordingly "precludes discharge of a claim in bankruptcy**."
>
> As the District Court noted, we generally hold that for unknown claimants, like the Plaintiffs, notice by publication in national newspapers is sufficient… **But whether adequate notice has been provided depends on the circumstances of a particular case**. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and **afford them an opportunity to present their objections**." ("**The level of process due to a party prior to the deprivation of a property interest ... is highly dependent on the context. As the Supreme Court has repeatedly emphasized, '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.' "**

*Wright v Owens Corning*, 679 F3d 101, 107–08 (CA 3, 2012) (emphasis added, citations omitted).

Here, the 'context' is that Wershe was in the federal witness protection program for 15 years, hiding from Detroit police and Detroit officials for his having assisted the federal government in anti-corruption actions against them. It was the federal government itself which had felt the witness protection program necessary, and so there can be no doubt that Wershe's fear that he may be killed (especially

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

while confined with prison gangs) if he exposed himself by taking action against Detroit in its bankruptcy action is well-founded.

It is ridiculous to consider that an individual's due process could be met by an entity's having published an ad in a newspaper, when the individual is in government-sanctioned hiding from the entity for fear for his very life. That is exactly the situation here and it calls for a ruling that Wershe's due process was not met by the notice provided by Detroit's publishing of a claims due date.

Despite a diligent search, this counsel has not found a case directly on point with these special circumstances. However, there are many cases which illustrate the flexibility inherent in due process notice requirements. For instance, in *Wright v Owens Corning*, 679 F3d 101, 108 (CA 3, 2012) unknown plaintiffs were given notice, but owing to a law in place at the time they received the notice, were under the mistaken impression that their creditor rights would be preserved even if they did not file notices of claims. (The notices themselves were not defective, as nothing in them was inaccurate.) Later, although the plaintiffs had received notice that would normally be adequate, and indeed were adequate to most of the unknown creditors who received them, in consideration of the Plaintiffs' special circumstances, the court determined that due process required a ruling that their claims had not been discharged. "**Though the Debtors' notices were sufficient as to most unknown claimants, the Plaintiffs' situation differed significantly from that of the typical unknown claimant… Due process affords a re-do in these special situations to**

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

**be sure all claimants have equal rights. We thus hold that, for persons who have 'claims' under the Bankruptcy Code based solely on the retroactive effect of the [new] rule… those claims are not discharged...**" *Id.*

Wherefore, Wershe's special case should be considered carefully by this Court, as it is clear that he could not have received fair notice and an opportunity to be heard while actively hiding from the debtor who was to provide said notice. Accordingly, as to Richard Wershe's claim against the City of Detroit only, a ruling that that claim would not be discharged by the 2013 bankruptcy is warranted.

**II. As Wershe was prevented by his fear of retaliation from taking action against the City of Detroit, in bankruptcy proceedings or otherwise, his claim was not legally 'contemplatable' until after he was released from prison and, therefore, cannot be discharged by the 2013 bankruptcy.**

In much the same vein of reasoning as argued above, owing to Wershe's valid fear of retaliation while imprisoned, his claim against Detroit could not be 'contemplated' until he was released from prison in 2020, well after the 2013 bankruptcy.

"A 'matured claim' is one that is 'unconditionally due and owing,' while an 'unmatured claim,' is 'one which is not yet due and owing.' *In re Cleveland*, 349 B.R. 522, 532 (Bankr.E.D.Tenn.2006) (citation omitted). As Wershe has not yet received a money judgment against the City of Detroit, his claim is very clearly unmatured. "There are limits to how remote or contingent a claim can be, consistent with creditors' rights to due process. Courts have therefore developed several different

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

tests to decide when a contingent or unmatured claim arises for bankruptcy purposes." *In re City of Detroit, Michigan*, 548 BR 748, 762 (2016). "The… 'fair contemplation test'… is the correct approach." *Id*, 763.

The aptly named test requires a court to ask when a potential creditors claim became 'contemplatable' and, whatever date the court chooses is the date that the potential creditors claims arose. This test "has the advantage of allowing the Court to examine **all of the circumstances** surrounding a particular claim—the debtor's conduct, the parties' pre-petition relationship, the parties' knowledge, the elements of the underlying claim—and use its best judgment to determine **what is fair to the parties, in context**." *Id*. As courts have pointed out regarding this test, "one approach may not fit all circumstances." *In re Huffy Corp.*, 424 B.R. 295, 301 (Bankr.S.D.Ohio 2010).

The special circumstances of this case absolutely demand application of this test to prevent the City of Detroit from discharging Wershe's claim against them, should he receive a judgment in his favor.

**III. Just as the District Court is in the process of determining, the facts of Wershe's case require his claims to be equitably tolled, and the same considerations are applicable in bankruptcy court and lead to the same conclusion.**

In the district court, as Plaintiff anticipated, Defendant the City of Detroit has presented a statute of limitations defense. However, the research presented by Plaintiff in the district court, which Defendant failed to include in their exhibits,

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

shows that Plaintiff is entitled to equitable tolling of that statute of limitations period, just as he is entitled to equitable tolling of any limitations period in this bankruptcy matter. (See **Exhibit A, Plaintiff's Response to Defendant City of Detroit's Motion to Dismiss, filed in District Court**.)

According to bankruptcy courts in the Sixth Circuit:

> **The common law doctrine of equitable tolling is "read into every federal statute of limitation"** including the statute of limitation found in 11 U.S.C. § 549(d). *Consolidated Partners Inv. Co. v. Lake*, 152 B.R. 485, 492 (Bankr.N.D.Ohio 1993) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946)). See also *Morton v. Kievit* (*In re Vallecito Gas, LLC*), 461 B.R. 358, 397–98 (Bankr.N.D.Tex.2011). **The applicability of equitable tolling is a fact based decision and, consequently, "the bankruptcy court determines whether equitable tolling governs in any given case."** *Moratzka v. Pomaville* (*In re Pomaville*), 190 B.R. 632, 636 (Bankr.D.Minn.1995).

> *In re Anderson*, 511 BR 481, 498 (2013) (emphasis added).

The above case was affirmed by the Sixth Circuit bankruptcy appeal panel, which stated:

> [T]he Panel concludes that the bankruptcy court did not abuse its discretion in determining that the statutes of limitation found in 11 U.S.C. § 549 and 11 U.S.C. § 550 were equitably tolled… Accordingly, for the reasons stated in the bankruptcy court's thorough and well-reasoned opinion… we affirm.

> *In re Anderson*, 510 BR 113 (2014).

Relevant here is the prisoner-fear-of-retaliation doctrine, which Plaintiff has presented to the district court and which holds, "…**that in the prison context, reasonable fear of retaliation may be sufficient to constitute extraordinary**

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

**circumstances warranting equitable tolling, particularly if the person threatening retaliation is a defendant or another official who could be or was influenced by a defendant.**" *Davis v Jackson*, No. 15-CV-5359 (KMK), 2016 WL 5720811, at *11 (SDNY, September 30, 2016) (emphasis added).

Here, Plaintiff not only had a legitimate fear of retaliation, but actually has been retaliated against by Defendant and those in Defendant's employ, and received wise counsel from his prior two attorneys (William Bufalino and Ralph Musilli) to forego seeking legal redress until he was out of prison for fear of retaliation.[2] See Detroit's **Exhibit 6-1, Excerpt from Affidavit of Former Detroit Police Officer William Rice, Affirming that he was sent to tell damaging lies about Plaintiff at his 2015 parole hearing, at page 21**.

 a. *Like the Second Circuit's test utilized in Davis v Jackson, the Sixth Circuit uses the Supreme Court's two-factor test, in addition to the Sixth Circuit's traditional five-factor analysis.*

The United States Supreme Court has held that "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: **(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."** *Holland v Florida*, 560 US 631, 655; 130 S Ct 2549, 2566; 177 L Ed 2d 130 (2010) (emphasis added). The Sixth Circuit has adopted this test.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

---

[2] See attached Affidavits of Richard J. Wershe, Jr., his fiancée Michelle MacDonald, and his former attorneys widow Ms. Lynn Hoover.

*Zappone v United States*, 870 F3d 551, 556 (CA 6, 2017).[3] Of great significance here, the Supreme Court in *Holland v Florida* specifically referenced the Second Circuit, which uses an equitable tolling doctrine nearly identical to the one adopted by the Supreme Court, in overturning the Eleventh Circuit's "too rigid" and unforgiving tolling doctrine. "Because the Court of Appeals' application of the equitable tolling doctrine… conflicts with the approach taken by other Circuits, we granted [certiorari]. Compare [this case] with, *e.g., Baldayaque v. United States*, 338 F.3d 145, 152–153 (**C.A.2 2003) (applying a less categorical approach**)." *Holland*, 560 US 631, 644–45; 130 S Ct 2549, 2560; 177 L Ed 2d 130 (2010) (emphasis added).

---

[3] The Sixth Circuit's law requires that both the two-factor test of *Holland v Florida* and the five-factor test of *Andrews v Orr*, 851 F2d 146, 151 (CA 6, 1988) be considered. However, the 'writing is on the wall' as to the abrogation of the obsolete Andrews factors. *Patterson v Lafler*, 455 Fed Appx 606, 609 (CA 6, 2012). [The five factors historically used in the Sixth Circuit to analyze equitable-tolling claims were "(1) lack of actual notice… [etc.] However, over time we decided that these factors are neither comprehensive nor always relevant; and that each case had to be examined on its own facts. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir.2002). Even more recently, we held both that *Holland* [*v Florida*]'s two-part test replaced the *Andrews* test, and that meeting all five factors of the *Andrews* test does not necessarily demonstrate the "extraordinary circumstance" that *Holland* requires. *Hall v. Warden, Lebanon Corr. Inst*., 662 F.3d 745, 749–50 (6th Cir.2011). Thus, we do not find it necessary to discuss the *Andrews* factors; *Holland* is the relevant test.] *Zappone v United States*, 870 F3d 551, 556–57 (CA 6, 2017) [The government urges us to adopt the two-part *Holland* test to assess the timeliness of the … state-law claims, asserting that it is more streamlined and avoids the drawbacks of the five-factor approach this court has identified in previous cases. Although these observations are persuasive, our hands are mostly tied. Because … this court has previously applied the five-factor approach…, the law-of-the-circuit doctrine precludes us from supplanting that approach to embrace a new equitable-tolling standard… ("Under the law-of-the-circuit doctrine, only the Court sitting *en banc* may overrule published circuit precedent, absent an intervening Supreme Court decision or a change in the applicable law.")]

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

The Sixth Circuit also counsels the consideration of its five 'historic' factors in the equitable tolling context. Those five factors are: "(1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Andrews v Orr*, 851 F2d 146, 151 (CA 6, 1988).

**Factors (1), (2), and (5):** Here, Plaintiff's 'notice' or lack of notice of his filing deadline is a tangential issue at best as it was Plaintiff's great fear of retaliation which prevented him from bringing suit years earlier, when he would have liked to. Yet Plaintiff's causes of action are, independently, entitled to equitable tolling based solely on his two former attorneys counseling that he would have one year from the date of his release from custody to file any suit. Significantly, *Holland v Florida*, 560 US 631, 655; 130 S Ct 2549, 2566; 177 L Ed 2d 130 (2010) which gives us the two-factor equitable tolling test was a case in which the Supreme Court specifically overturned the Eleventh Circuits rule **that attorney negligence alone could not be grounds for equitable tolling**. Here, both of Plaintiff's two prior attorneys warned him that 'going after' Defendants could both ruing his chances of ever being a free man, and get him killed and, assured Plaintiff that he could consider the matter later as they incorrectly stated that he would have one year after his release from prison to bring any lawsuit, **when that was untrue and had been so for years at the time**

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

**of their counsel**. See **Affidavit of Plaintiff's former attorney's wife, Lynne Hoover, ECF No. 4-3, PageID 143**. The Supreme Court's holding in *Holland v. Florida* reaffirms the elemental wisdom that, if anyone, a plaintiff can be expected to trust their own attorney. Afterall, if one cannot be expected to trust their own attorney, whom are they supposed to trust for guidance in their cases?

**Factor (3)**: See Section II(a)(3), below.

**Factor (4)**: Defendant's will likely claim that they have been prejudiced by the passage of time since Plaintiff's claim accrued. Yet any alleged prejudice due to the passing of time would doubly effect Plaintiff, who was incarcerated (unable to keep records, communicate freely, maintain relationships with potential witnesses, etc.) and so it is Plaintiff and not Defendant, that is unfairly prejudiced by the time elapsed. Accordingly, Defendant the City of Detroit (and others) will suffer no discernable prejudice from the tolling of the limitations period; Only Plaintiff is prejudiced by the passage of time.

More significant than any of the five-factors is the Supreme Court's factor which asks did "some extraordinary circumstance st[and] in [Plaintiff's] way[?]" *Holland, supra.* Several did, as Plaintiff was prevented from bringing his claims much earlier by a very real fear of legal, physical, and/or psychological retaliation by the Detroit law enforcement community. The granting of equitable tolling to cases in which a prisoner had a fear of retaliation is the future of federal common law. The case *Davis v. Jackson*, No. 15 Civ. 5359 (KMK), 2016 WL 5720811,

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

(S.D.N.Y. Sept. 30, 2016), which Plaintiff discussed in the preliminary statement of his complaint, illustrates this point as it is already a highly regarded opinion amongst the federal judiciary, having been cited approvingly and as authority in over 20 cases, from different circuits. [4], [5]

> In this circuit, fear of retaliation has been recognized as a basis for equitable estoppel in at least one context: litigation by prison inmates under 42 U.S.C. § 1983. See *Davis v. Jackson*, No. 15 Civ. 5359 (KMK), 2016 WL 5720811, at *9 (S.D.N.Y. Sept. 30, 2016) (holding that, given the "unique context and the substantial control that correction officers exert over inmates," an inmate's "reasonable fear of retaliation may be sufficient to constitute extraordinary circumstances warranting equitable tolling").

> *Geiss v Weinstein Co Holdings LLC*, 383 F Supp 3d 156, 173 (SDNY, 2019), app dis (Oct. 1, 2021).

---

[4] **_Davis v Jackson_ has been cited as authority since its issuing and up until the present**. *Stone #1 v Annucci*, No. 20-CV-1326 (RA), 2021 WL 4463033, at *12 (SDNY, September 28, 2021); *Philips v Smith*, No. 19-CV-2019 (CS), 2021 WL 4224957, at *6 (SDNY, September 15, 2021); *Junior v Erie Co Med Ctr Corp*, No. 18-CV-01014-LJV-JJM, 2019 WL 4279949, at *10 (WDNY, August 19, 2019), report and recommendation adopted No. 18-CV-1014, 2019 WL 4276613 (WDNY, September 9, 2019); *Funk v Belneftekhim*, No. 14-CV-0376 (BMC), 2019 WL 3035124, at *2 (EDNY, July 11, 2019); *Wheeler v Slanovec*, No. 16-CV-9065 (KMK), 2018 WL 2768651, at *6 (SDNY, June 8, 2018); *Brown v Smithem*, No. 15-CV-1458 (BKS/CFH), 2017 WL 1155825, at *7 (NDNY, February 28, 2017), report and recommendation adopted No. 915CV01458BKSCFH, 2017 WL 1155827 (NDNY, March 27, 2017).

[5] **_Davis v Jackson_ is also highly cited as authority for its holdings on law unrelated to equitable tolling**: *Morrow v Bauersfeld*, No. 919CV1628DNHCFH, 2020 WL 3118520, at *4 (NDNY, June 12, 2020); *Fowler v City of New York*, No. 19 CIV. 4703 (LGS), 2020 WL 1151297, at *2 (SDNY, March 10, 2020); *Hamilton v Edwards*, No. 14-CV-6308 CJS, 2019 WL 1862828, at *4 (WDNY, April 25, 2019); *Fabricio v Griffin*, No. 16 CV 8731 (VB), 2019 WL 1059999, at *8 (SDNY, March 6, 2019); *Marhone v Cassel*, No. 16-CV-4733 (NSR), 2018 WL 4189518, at *5 (SDNY, August 31, 2018); *Abujayyab v City of New York*, No. 15 CIV. 10080 (NRB), 2018 WL 3978122, at *3 (SDNY, August 20, 2018); *Ennis v New York Dept of Parole*, No. 518CV00501GTSTWD, 2018 WL 3869151, at *4 (NDNY, June 12, 2018), report and recommendation adopted No. 518CV0501GTSTWD, 2018 WL 3862683 (NDNY, August 14, 2018); *Wallace v Warden of MDC*, No. 14CIV6522PACHBP, 2016 WL 6901315, at *4 (SDNY, November 23, 2016); *Lehal v Cent Falls Det Facility Corp*, No. 13CV3923 (DF), 2016 WL 7377238, at *10 (SDNY, November 21, 2016).

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

**<u>Many federal courts in other circuits have cited the case as authority</u>**:

*Gabbidon v Wilson*, No. CV 1:19-00828, 2021 WL 625232, at *10 (SDW Va, February 17, 2021). [Distinguishing the defendant's caselaw because "the plaintiff there was not incarcerated, which, for the well-articulated reasons in *Davis* (discussed above), makes a big difference."] *Solman v Corl*, No. 3:15-CV-1610 (JCH), 2018 WL 2337129, at *8 (D Conn, May 23, 2018). [Regarding exhaustion.] *Parnell v Lashbrook*, No. 16-CV-1144-NJR, 2017 WL 2876526, at *6 (SD Ill, July 6, 2017). *DeGrave, v State of Wisconsin*, No. 21-CV-256-WMC, 2021 WL 5371393, at *3 (WD Wis, November 18, 2021).

1. ***Plaintiff's fear of retaliation based on specific actions and threats, including his placement into the prisoner's witness protection program for which he went by a false identity for 15 years for working against corrupt members of the Detroit law enforcement community, is absolutely an extraordinary circumstance requiring equitable tolling.***

As a preliminary matter, Plaintiff's valid fear of retaliation for taking action against Defendants existed when his claims accrued, which means his statute of limitations was immediately tolled until he was no longer suffered from such fear. Although state law governs the length of the statute of limitations, federal law governs the accrual date. *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007). Under § 1983, "the statute of limitations begins to run when the plaintiff knows or has reason to know that the act providing the basis of ... [the] injury has occurred." *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007). In other words, courts "look to the event that should have alerted the typical lay person to protect his or her rights." Id.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

(internal quotations omitted); see also, *Peterson v. Ostrander*, 17-2160, 2018 WL 4739692, at *2 (6th Cir., Apr. 6, 2018). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984). In applying this standard, courts seek to determine "what event should have alerted the typical lay person to protect his or her rights. In *Wallace v. Kato*, the Supreme Court stated that **a § 1983 claim accrues when the plaintiff has "a complete and present cause of action."** *Wallace*, 549 U.S. at 388.

Here, Plaintiff's case accrued only after he turned eighteen and, by that time, he was already imprisoned as a result of the Defendants' wrongdoing. Then, his case would have been statutorily tolled until 1994, when Michigan's prisoner-tolling statute ceased being effective. **By that time, Plaintiff was already well-aware of the retaliation against him as the federal government had placed him in the witness protection program, in prison, giving him a fake name and life's story and transferring him to a different prison. It defies logic to expect that someone in the federal witness protection program for concern of retaliation by corrupt Detroit law enforcement should be expected to blow their cover by bringing suit against the law enforcement responsible for his imprisonment in the first place**.

The extraordinary nature of Plaintiff's circumstances cannot genuinely be disputed. His circumstances are in fact so extraordinary that a famous documentary, "White Boy" and a Hollywood movie starring Matthew McConaughey have been

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

made depicting his extraordinary circumstances. The Supreme Court has already settled that fear of retaliation can excuse an inmate's failure to exhaust administrative remedies. See *Ross v Blake*, 578 US 632, 644; 136 S Ct 1850, 1859; 195 L Ed 2d 117 (2016) (holding that administrative exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation") **For the exact same reasons, it can and has caused Plaintiff to fear suing his true captors, the Defendant's of this case, until now**.

"Nowhere in our society is more forceful and sustained control over persons exercised than in its prisons ...." Craig Haney, *Psychology and the Limits to Prison Pain Confronting the Coming Crisis in Eighth Amendment Law*, 3 Psychol. Pub. Pol'y & L. 499, 499 (1997). Such sustained control tends to result in "adverse psychological effects" that invariably have "behavioral consequences." Jason J. Ben, *America's Need to Explore Alternatives to Incarceration: Can America Purport to Be the "Land of the Free" When It Currently Is the World's Leading Incarcerator?*, 30 S.U. L. Rev. 349, 356 (2003). When these "negative psychological effects of imprisonment" become "chronic and deeply internalized," inmates experience:

> [D]ependence on the external constraints of institutional structure and contingencies; hypervigilance, interpersonal distrust and suspicion of threat or personal risk; emotional over-control, alienation and psychological distancing as a defense against exploitation and awareness of the riskiness and unpredictability of emotional investments in relationships; social withdrawal and isolation; incorporation of exploitative informal rules and norms of prison

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

culture; diminished sense of self-worth and personal value; and posttraumatic stress reactions to the pains of imprisonment.

Zieva Dauber Konvisser, *Psychological Consequences of Wrongful Conviction in Women and the Possibility of Positive Change*, 5 DePaul J. for Soc. Just. 221, 241 (2012) (internal quotation marks omitted).

Plaintiff has been imprisoned his entire adult life until recently. Retaliation and fear of retaliation are natural consequences of an inmate's unique psychological environment. And that fear of retaliation is not merely speculative or conjectural, as "**it is clear that the level of actual retaliation, as well as the perception of likely retaliation among ... inmates ... constitutes the single most important and difficult obstacle to inmates' use of the system [to protect their rights]**." Vincent M. Nathan, *Evaluation of the Inmate Grievance System Ohio*, Ohio Dep't of Rehab. & Corr. 28 (Feb. 13, 2001), *https://www.law.umich.edu/facultyhome/margoschlanger/Documents/Resources/Prison_and_Jail_Grievance_Policies/Ohio_Nathan_Evaluation_Grievance_System.pdf*.

"[T]he specter of retaliation, a real and ever-present force in an inmate's life, can reasonably be said to be outside of an inmate-plaintiff's control. Thus, the Court concludes that in the prison context, reasonable fear of retaliation may be sufficient to constitute extraordinary circumstances warranting equitable tolling, particularly if the person threatening retaliation is a defendant or another official who could be

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

or was influenced by a defendant." Davis v Jackson, No. 15-CV-5359 (KMK), 2016 WL 5720811, at *11 (SDNY, September 30, 2016).

Generalized allegations of fear of retaliation are not sufficient to establish "extraordinary circumstances" warranting application of equitable tolling. See *Nicoloudakis v Bocchini*, No. CV 13-2009 (MAS), 2016 WL 3617959, at *3 (DNJ, July 1, 2016) ("Generalized fear of reprisal is not enough to warrant equitable tolling ...."); *Rosenblum v. Yates*, No. 09-CV-3302, 2011 WL 590750, at *3 (E.D. Cal. Feb. 10, 2011) (finding that the plaintiff's "generalized allegation ... [of] fear of retaliation" was "insufficient to meet his high burden"). **Here, however, Plaintiff has pled specific instances of actual retaliation against him from the Defendant's or those acting on behalf of the Defendants, especially Defendant the City of Detroit**.

1) As a 15 year old working for Detroit and federal law enforcement, Plaintiff was shot and nearly killed an agent of then Mayor Coleman A. Young's nephew-in-law, John Curry, and law enforcement acted with impunity to keep Plaintiff in their control. **See Ex. A sub E "White Boy" Documentary at 00:26:17,327 to 00:29:28,601, Ex. A sub D Transcript ¶ 1-2; Pltf's Aff'd, ECF No. 4-1, PageID.131, ¶ 12-15.**

2) Convicted Detroit hit-man Nate Boon Craft admitted to accepting a payment from top Detroit law enforcement Gil Hill to kill Plaintiff and, indeed, Plaintiff narrowly escaped his own murder when Boon pulled up alongside his

A Y A D   L A W,   P . L . L . C .
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

friends car and attempted to shoot him, with Plaintiff being saved by his friend speeding away. **See Ex. A sub E "White Boy" Documentary at 00:38:56,501 to 00:42:06,649, Ex. A sub D Transcript ¶ 3.; Ex. A Second Aff'd of Richard Wershe ¶ 5.**

3) Plaintiff's conviction was the result of falsified evidence planted under a porch and attributed to him. **See Ex. A sub E "White Boy" Documentary at 00:46:48,765 to 00:47:03,780, Ex. A sub D Transcript ¶ 5; Pltf's Comlpaint, ECF No. 4, PageID.94-95, ¶ 60-61.**

4) Upon his arrest, Plaintiff was beaten so brutally by law enforcement that he had to be hospitalized. **See Ex. A sub E "White Boy" Documentary at 00:46:39,172 to 00:47:03,780, Ex. A sub D Transcript ¶ 4; Pltf's Compaint, ECF No. 4, PageID.94, ¶ 59.; Ex. A sub A Second Aff'd of Richard Wershe ¶ 7.**

5) Plaintiff's first day in prison, he witnessed a fellow inmate get 'hit,' *i.e*, an attempted retaliatory murder, by being stabbed in the neck, to which the prison guard made the threatening comment: "Get ready, Wershe, that happens every day in here". **See Pltf's Aff'd, ECF No. 4-1, PageID.132, ¶ 19-21.**

6) After Plaintiff was approached by the FBI to use him for information and connections as part of Operation Backbone to discover police corruption, former Detroit mayor Coleman Young endangered Plaintiff's life by calling him a "stool-pigeon" an archaic term for a police informant. **See Ex. A sub E "White Boy" Documentary at 00:55:52,474 to 00:56:11,035, Ex. D Transcript ¶ 7.**

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

7) in approximately 1991, federal law enforcement had already made Plaintiff aware that, based on what he knew about the law enforcement he had worked with could endanger his life, and required his being placed in the prisoner witness protection program, relocated, and given a fake identification for fifteen (15) years. **See Pltf's Complaint, ECF No. 4, PageID.96, ¶ 69-70; Pltf's Aff'd ECF No. 4-1, PageID 133., ¶ 24.**

8) Plaintiff's former attorneys each instructed Plaintiff to not sue Defendants for the stated reason that it could get him killed or ruin his chances of ever being released from prison. **Pltf's Aff'd ECF No. 4-1, PageID 133., ¶ 24; Aff'd ECF No. 4-3, PageID 143., ¶ 24.**

9) When Plaintiff was finally eligible for parole, the powers Plaintiff feared took direct action against him by releasing to Plaintiff's parole board Plaintiff's sealed grand jury testimony (used in the conviction of multiple murderous Detroit gangsters), which Plaintiff had only given based on law enforcement's promises that it would always remain sealed so as never to endanger his life. **See Pltf's Complaint, ECF No. 4, PageID.86, ¶ 9; Pltf's Aff'd, ECF No. 4-1, PageID 134., ¶ 33.**

10) Former head of Detroit Police's homicide unit, William Rice, testified that he was ordered by his superiors in the City of Detroit to falsely testify against Plaintiff at his parole hearing. **See Ex. A sub E "White Boy" Documentary at 01:01:50,625 to 01:03:11,788, Ex. D Transcript ¶ 10.; Pltf's Complaint, ECF No. 4, PageID.100-101, ¶ 95-98.**

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

11) Plaintiff's former attorney at his criminal trial, Edward Gardner, drafted and signed a letter from the Wayne County Prosecutor's office emphatically arguing that Plaintiff must never be released. **See Ex. A sub E "White Boy" Documentary at 00:59:30,025 to 01:01:24,348, Ex. D Transcript ¶ 10.; Pltf's Aff'd, ECF No. 1-1, PageID 53., ¶ 34-36.; Pltf's Complaint, ECF No. 4, PageID.117-118, ¶ 172.**

12) Defendant Lynn Helland explicitly told Plaintiff that he was reneging on his agreement with Plaintiff because his superiors had intervened and wanted Plaintiff to remain incarcerated. **Pltf's Complaint, ECF No. 4, PageID.99, ¶ 86-87; Pltf's Aff'd, ECF No. 4-1, PageID 134-135., ¶ 32-34.**

13) Plaintiff was indicted on trumped-up charges in Florida of running an auto-theft ring from prison, and members of the Detroit law enforcement community contacted prosecutors in Florida to request that they do everything in their power to convict Plaintiff. **See Ex. A sub E "White Boy" Documentary at 01:05:13,034 to 01:06:19,685, Ex. D Transcript ¶ 11.; Pltf's Complaint, ECF No. 4, PageID.104, ¶ 106; Ex. A sub A Second Aff'd of Richard Wershe, ¶ 9-10.**

14) Plaintiff was unconstitutionally and horrifically placed in solitary confinement for fifteen (15) months to elicit a confession regarding the Florida charges and, in the end, Plaintiff took a plea deal when Florida prosecutors threatened to charge his mother and sister. **See Ex. A sub E "White Boy" Documentary at 01:05:13,034 to 01:06:19,685, Ex. D Transcript ¶ 11.; Pltf's**

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

Complaint, ECF No. 4, PageID.104, ¶ 107-110; Ex. A Second Aff'd of Richard Wershe, ¶ 10-11.

15) Plaintiff's former attorneys each instructed Plaintiff to not sue Defendants for the stated reason that it could get him killed or ruin his chances of ever being released from prison. **Pltf's Aff'd, ECF No. 4-1, PageID 132, 136., ¶ 18, 41-43.**

Each of the above 15 facts exceeds what is required under federal tolling doctrine to toll a statute of limitations period for fear of retaliation. "[I]nmates may show extraordinary circumstances for purposes of equitable tolling where they allege specific facts showing that a reasonable fear of retaliation." *Davis*, No. 15-CV-5359 (KMK), 2016 WL 5720811, at *11 (SDNY, September 30, 2016). Whereas the federal law on the issue merely requires that one have a specific reason for the fear, such as a questionable remark from a prisoner guard, etc, Plaintiff has related over a dozen actual instances of abuse and/or retaliation at the hands of Defendants or their agents.

   2. ***Not only do the above facts more than meet the standard for fear of retaliation based on articulable facts of implied threats, but all of Plaintiff's articulated fears are also validated by expert medical diagnosis.***

Plaintiff has already been diagnosed with Post Traumatic Stress Syndrome based on the above experiences by an expert <u>who for years performed psychological evaluations of Detroit Police for Defendant the City of Detroit</u>, renowned expert Dr. Larry Friedberg, PhD. See **Exhibit B, November 17, 2021 Report of Dr. Friedberg, PhD** and **Exhibit C, Curriculum Vitae of Dr. Larry**

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

**Friedberg, PhD**. Dr. Friedberg's extensive testing and diagnosis of Plaintiff has revealed that his fear of retaliation is real. "**Richard Wershe Jr. was frightened to file a lawsuit until August of this year.**" Ex. B at ¶ 1.

> Psychological Testing yields the following conclusions, **which are relevant to the anxiety which led Mr. Wershe to delay filing his lawsuit**:
>
> \*\*\*
>
> Per his valid Trauma Symptoms Inventory- Second Edition (TSI-2) Mr. Wershe displays significant Intrusive Experiences (T=72) and Posttraumatic Stress (T=60). Intrusive Experiences refer to post-traumatic reactions and symptoms including flashbacks, upsetting memories easily triggered by current events, and repetitive thoughts of an unpleasant previous experience which intrude into awareness.
>
> **These scores validate his reports of suffering from Post-Traumatic Stress Disorder (PTSD) and are consistent with his reported fears of retaliation, fears which he reported were present throughout his incarceration from age 18 through his release in 2020 and his period of probation**.
>
> **All of this test data is consistent with my conclusion that Mr. Wershe's reason for not filing a lawsuit sooner was due to fear of negative consequences (re-imprisonment, violence, or other retaliation) which might have occurred after filing a lawsuit sooner**.
>
> **Ex. B at ¶ 6(g)-(h) and page 3**.

Accordingly, Plaintiff has not only alleged specific facts adequate for a finding of a fear of retaliation, but has actually shown that 1) he suffered from real retaliation, not just a fear of retaliation, 2) federal agents shared his fears that me may be retaliated against while in prison for taking action against the Detroit law enforcement community, and 3) Defendant the City of Detroit's own police

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

psychologist has validated that Plaintiff's fears were real and are the cause of the delay in his filing suit to vindicate his constitutional rights.

### 3. *Plaintiff pursued his rights diligently, especially considering his great trauma and valid fear of physical and legal retaliation, in working to summon the courage to file this lawsuit within one year of the ending of his parole period.*

As stated above, Plaintiff remained afraid of retaliation for some time after his incarceration, as he remained technically in custody by way of his parole from prison in Florida, for an additional year. As Plaintiff told Dr. Friedberg, and as Dr. Friedberg validates, Plaintiff was afraid that he could be "reimprisoned" at any time after his release, on falsified charges. **Ex. B at page 3**. Further, Plaintiff's intense fear of retaliation lingered (and lingers) for many months after his parole ended, in part from the massively traumatic and unconstitutional putting of Plaintiff into solitary confinement or 'the hole' for sixteen (16) months in 2015-16.

> c. He was placed in solitary confinement ("the hole") for 1[6] consecutive months while in a Florida prison. He said he found this "traumatizing":
>> 1) Published research indicates that isolation/segregation/solitary confinement, the worst punishment shy of a death sentence, is itself harmful to inmates. Both psychologically healthy inmates and mentally ill inmates suffer to a substantial degree while in segregation (Scharrf Smith, 2006; Metzler and Fellner, 2013; Kupers, 2008; Grassian, 2006) and afterwards.
>> 2) Solitary confinement can cause severe psychiatric harm, per Kupers (2008). Grassian (2006), who evaluated inmates in solitary confinement in a series of studies, summarized this harm in his paper, *Psychiatric Effects of Solitary Confinement*:
>>> Per Grassian, common features of the harm caused by solitary confinement include: 1) Perceptual distortions, illusions, and hallucinations; 2) Panic attacks; 3) Difficulties with thinking,

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

concentration, and memory- including, for some, acute psychotic, confusional states; 4) Intrusive obsessional thoughts-including aggressive fantasies of retaliation; 5) Paranoia, including persecutory fears; and 6) Problems with impulse control, including violence.

3) Scharff Smith (2006) reviewed the literature on the effects of solitary confinement: "for many prisoners, the effects are substantial…"

i. He cited international studies, in addition to North American research, all of which led him to conclusions similar to Grassian. He cited short-term effects similar to Grassian, with the addition of somatization symptoms, depression, massive, free-floating anxiety, and panic attacks.

ii. Panic, paranoia, and lethargy are common reactions to solitary confinement. Preexisting paranoid symptoms can deteriorate in isolation into "overt psychosis." Lethargy, he observed, based on his review of research, is part of a "complete breakdown or disintegration of the identity of the isolated individual…" This breakdown, caused by prolonged isolation, includes somatic problems, hallucinations, anxiety, and loss of control (crying, lethargy, fits of rage); this condition reaches a state that resembles, or is, psychosis. Physical and social isolation is also strongly related to suicide, thoughts of suicide, and self-mutilation.

iii. "Solitary confinement harmed prisoners who were not mentally ill on admission to prison and worsens the mental health of those who were (Scharff Smith, 2006)." The most dramatic effects are hallucinations, major depression, and psychoses.

iv. The duration of segregation is directly related to its detrimental effects: For nearly all prisoners, being held in extended isolated confinement (longer than 3 months) "causes lasting emotional damage if not full-blown psychosis and functional disability (Kupers, 2008)."

4) Anxiety, self-isolation, and mistrust are key components of the expected result of solitary confinement, which are likely to amplify the anxiety and mistrust already likely present in Mr. Wershe.

**Ex. A sub B at page 2**.

Therefore, Plaintiff undeniably suffered from a very real fear of reincarceration at the hands of the Detroit law enforcement community, or worse,

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

that he would simply be assassinated upon bringing suit. It is accordingly a near miracle that Plaintiff has, through the encouragement and counseling of those closest to him, had the absolute courage to bring this lawsuit for a shred of justice for the destruction of his life. **Despite all of the fear, Plaintiff has diligently pursued his rights and taken action against Defendant the City of Detroit**.

## IV. Considering the special circumstances described above, Wershe should be allowed to partake in the bankruptcy pan and receive some form of compensation.

The City of Detroit has already negotiated adjustment of its debt with the holders of §1983 civil rights claims against it, and Wershe's circumstances certainly suggest that he should be entitled to do the same. For instance, in *In re City of Detroit*, 700 Fed Appx 511 (CA 6, 2017) an individual entered into an agreement with the City of Detroit to waive their § 1983 claims against individual Detroit police officers, in order to receive payment on an unsecured claim against the City of Detroit, pursuant to terms of city's confirmed Chapter 9 plan, receiving cents on the dollar, but payment in compensation for his constitutional injuries all the same.

As the Court in the case above noted, **this greatly financially benefitted the City of Detroit because the it would have been liable to indemnify the individual Detroit police officers for any judgment against them, and those dollar amounts would be in no way subject to the bankruptcy**.[6] Here, Wershe has sued three

---

[6] Many other courts have held as much: "*Demery* and *Ronwin*, both cases involving sovereign immunity, found that a claim against a state official was not essentially one against the state for

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

former Detroit Police officers in their individual capacities in the district court, and all defendants jointly and severally, and the City of Detroit will be contractually obligated to indemnify those individual defendants, should Wershe prevail on his claims. Accordingly, it would behoove Detroit to do as it has done in the past, and attempt to negotiate Wershe's participation in the 2013 bankruptcy plan.

**V.** **Even if the City of Detroit was able to discharge the portion of Wershe's claim that accrued prepetition, Wershe would be entitled to bring his claim for the injury of being incarcerated from 2014 to 2020.**

Debtor the City of Detroit is not in bankruptcy currently and they have not been for several years, since December 10, 2014 to be exact. In fact, the bankruptcy at issue appears to have accomplished its purpose relatively quickly: "The bankruptcy eradicated $7 billion in debt, eliminated billions more in future payments and health-care obligations for retired city workers and saved DIA artwork from a forced sale."[7] But, what is important here, is that since the City of Detroit has been out of bankruptcy, Wershe spent another approximately six years in prison. As Wershe alleges in the district court complaint attached to Detroit's motion:

---

sovereign immunity purposes, **even though state law required the state to indemnify the official**. This court believes that under the same reasoning, a claim against a City official **is not essentially one against the City for bankruptcy discharge purposes, even if state law requires the City to indemnify the official**." *VW ex rel Barber v City of Vallejo*, No. CIV. S-12-1629, 2013 WL 3992403, at *6 (ED Cal, August 2, 2013). **"[W]e hold that California's indemnification statutes do not render a judgment or concomitant fee award against an indemnifiable municipal employee a liability of the municipal employer for purposes of adjusting or discharging the debts of a Chapter 9 debtor.**" *Deocampo v Potts*, 836 F3d 1134, 1143 (CA 9, 2016).

[7] https://www.freep.com/story/money/business/2019/12/09/detroit-bankruptcy-anniversary/2586744001/

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

Plaintiff's injury was suffered anew every day for the entire remainder of his time in prison as he was burdened with the residual paranoia that comes with having been an informant against members of gangs with prison presences and corrupt police officers which require one to be put into a witness protection program while in prison.

District Court First Amended Complaint, ECF No. 4, PageID, 116, ¶168.

Accordingly, Wershe should be entitled to compensation on his claim for all of the time he spent imprisoned and in fear owing to the City of Detroit's wrongdoing. See the continuing violation doctrine, generally. *Hensley v City of Columbus*, 557 F3d 693, 697 (CA 6, 2009) ["[A] law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years."]

Accordingly, it is not certain if Wershe's claims against the City of Detroit accrued before or after the 2013/14 bankruptcy, and the district court should be allowed to parse these facts prior to a final order from this honorable Court.

**VI. Wershe's claim against Detroit should be ruled exempt from dischargability pursuant to the intentional torts exception to bankruptcy, as all of the defendants conduct as alleged by Plaintiff was undeniably 'willful and malicious' according to the law.**

"Bankruptcy is both a creditor's remedy and a debtor's right… But discharging debts sometimes harms creditors, so there are statutory exceptions. Some debts are not dischargeable because of their type, e.g.,… willful or malicious injury..." *In re Patel*, 565 F3d 963, 967 (CA 6, 2009). "Elements of willful and malicious injury discharge exception are the following: (1) willful conduct; (2) malice; and (3)

causation." *In re Butcher*, Bkrtcy.C.D.Cal.1996, 200 B.R. 675, affirmed 226 B.R. 283. "For purposes of exception to discharge for debts arising out of willful and malicious injury, rule of better reasoning is that which equates 'willful and malicious' with 'deliberate and intentional.' " *In re Donnelly*, Bkrtcy.D.Or.1980, 6 B.R. 19.

Here, Wershe alleges that three former Detroit police officers violated his substantive due process rights, amongst others, by coercing him into living a life of crime and becoming a drug dealer at the age of 14. The conduct of ordering Wershe into their vehicles, of coercing Wershe to purchase and sell drugs, of providing Wershe with the money to do so, all can only be said to have been 'deliberate and intentional' acts. Further, the element of causation is established as, had the Detroit police not provided young Wershe with the money to purchase drugs and driven him to the drug houses, he never would have become "White Boy Rick" and, therefore, never would have gone down the path that led to his unjust record-breaking incarceration.

"Determining whether debt is nondischargeable on grounds of willful and malicious injury involves two-part test: debt must have been incurred both willfully and maliciously." *Ford Motor Credit Co. v. Rose*, W.D.Va.1995, 183 B.R. 742. "[W]illful and malicious are two different characteristics; they should not be lumped together to create an amorphous standard to prevent discharge for any conduct that may be judicially considered to be deplorable." *Roussel v. Clear Sky Properties*, LLC, C.A.8 (Ark.) 2016, 829 F.3d 1043. " '[W]illful' means deliberate or intentional;

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

'malicious' means in conscious disregard of one's duties or without just cause or excuse and does not require ill will or specific intent to do harm." *Wheeler v. Laudani*, C.A.6 (Mich.) 1986, 783 F.2d 610.

Here, the police were duty-bound to protect Wershe. Instead, as they got him shot through the abdomen at the age of 15, and then sent him to Las Vegas with a fake ID, bullet proof vest, and lots of cash to buy drugs. The harm this conduct produced can only be said to have been the obvious, foreseeable, result of such police misconduct. "Generally, injury is "willful and malicious," for nondischargeability purposes, when wrongful act done intentionally necessarily produces harm that results." *In re Kaperonis*, Bkrtcy.S.D.N.Y.1993, 156 B.R. 736. The Detroit police defendants simply have no justification or excuse. "For purposes of nondischargeability on grounds of willful and malicious injury, it need only be shown that debtor act without lawful justification or excuse; actual malice need not be shown." *In re Hall*, Bkrtcy.S.D.Ohio 1989, 98 B.R. 777.[8]

Wherefore, the Wershe's claim against the City of Detroit must not be ruled dischargeable, as the intentional tort exception applies.

## VII. This Court should grant Wershe's request for a stay pending the findings of the district court, in the case which is pending before it.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

---

[8] "[F]or purposes of discharge exception for willful and malicious injury, it does not require showing of spite, ill will, personal animosity, or subjective intent to injure." *In re Sateren*, Bkrtcy.D.N.D.1995, 183 B.R. 576.

The district court is in a unique and well-suited position to parse through the complicated facts at issue both in the case before it, and in the motion pending now before this Court. Accordingly, Wershe is requesting that the district court be allowed to proceed with its adjudication and fact-finding/development prior to any final decision on this matter by this Court, including any appeals of the district court case.

Further, if this Honorable court should find that there is any procedural deficiency with this matter, given the complicated and decades long nature of this case, this counsel humbly requests that he be afforded the opportunity to promptly correct it. Especially should any additional documents need to be filed with the Court.

## CONCLUSION AND RELIEF REQUESTED

WHEREFORE, Wershe humbly requests that this honorable Court enter an order containing the following relief:

a) Fully DENYING Detroit's motion;

b) Declaring Wershe's claim against Detroit not dischargeable;

c) Entering a stay in this case pending the resolution of the district court case and any appeals;

d) Any and all such other relief as this Court deems just and equitable.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

Respectfully submitted;

AYAD LAW, PLLC

*/s/Nabih H. Ayad*
Nabih H. Ayad (P59518)
William D. Savage (P82146)
*Attorneys for Plaintiff*
645 Griswold St., Ste 2202
Detroit, MI 48226
P: 313.983.4600
F: 313.983.4665
nabihayad@ayadlawpllc.com
Dated: February 10, 2022     williamsavage@ayadlawpllc.com

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

**AYAD LAW, P.L.L.C.**
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665