**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CITY OF DETROIT'S REPLY IN SUPPORT OF ITS MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST RICHARD WERSHE JR.**

## I.    <u>Introduction</u>

The Court should reject Wershe's attempt to assert claims against the City that arose no later than 2003 and were discharged in the City's bankruptcy case. As an unknown creditor of the City, notice by publication was sufficient to satisfy the requirements of due process and discharge Wershe's claims. Further, the exception to discharge that Wershe cites in section 523 of the Bankruptcy Code does not apply in a chapter 9 case.

This Court should also reject Wershe's argument that he did not contemplate his claims against the City until after he was released from prison because he admits that he discussed these claims with his former attorneys prior to the City's bankruptcy filing. Similarly, Wershe's request to file an untimely proof of claim at this extremely late stage should be denied. In the next several months, the City will make its first and final distribution to class 14 unsecured creditors in this case.

Allowing Wershe to file a proof of claim nearly eight years after the bar date would almost certainly delay a final distribution by several years while Wershe's claims are litigated. This would severely prejudice both the City and its creditors that have been waiting patiently for a distribution on their claims.

Finally, there is no valid reason to stay the City's motion filed against Wershe at docket number 13491 ("Motion"). This Court is in the best position to interpret its own orders and consider the prejudice to the City and its creditors. The City respectfully requests that this Court grant the Motion.

## II.    Background

### A.    The City's Bankruptcy Case

On July 18, 2013 ("Petition Date"), the City filed this chapter 9 case.

On November 21, 2013, this Court entered an order approving the City's motion to establish a bar date for filing claims [Doc. No. 1782] ("Bar Date Order"). The Bar Date Order established February 21, 2014 ("Bar Date") as the deadline for filing claims against the City. Paragraph 26 of the Bar Date Order permitted the City to publish notice ("Bar Date Notice") of the Bar Date "which publication is hereby approved and shall be deemed good, adequate and sufficient publication notice of the Bar Dates." Bar Date Order ¶ 26. The City published the Bar Date Notice in accordance with the Bar Date Order. *See* Doc. Nos. 3007 (Detroit News and Free Press), 3008 (USA Today) and 3009 (Wall Street Journal).

2

On March 11, 2014, this Court entered the Solicitations Procedure Order at docket number 2984. In compliance with the Solicitation Procedures Order, on May 9, 2014, the City caused a copy of the Confirmation Hearing Notice (as defined in the Solicitation Procedures Order) to be published in the national editions of the Wall Street Journal and USA Today and the daily editions of the Detroit Free Press and the Detroit News.[1] Confirmation Order (as defined below) ¶15(e), p. 19 of 225.

On October 22, 2014, the City filed the Eighth Amended Plan of the Adjustment of Debts of the City of Detroit (October 22, 2014) [Doc. No. 8045] ("Plan"). On November 12, 2014, this Court entered an Order confirming the Plan [Doc. No. 8272] ("Confirmation Order"). In the Confirmation Order, the Court found and ordered that due and proper notice had been given with respect to the hearing on the confirmation of the Plan and the deadlines and procedures for filing objections to the Plan. Confirmation Order, pp. 8, 73 of 225

This Court further found and ordered that

The Confirmation Hearing Notice and the subsequent scheduling orders entered by the Court provided due and proper notice of the Confirmation Hearing and all relevant dates, deadlines, procedures and other information relating to the Plan and/or the solicitation of votes

---

[1] Affidavit of Publication of Confirmation Hearing Notice in the Detroit Free Press and the Detroit News, dated July 22, 2014 (Docket No. 6209), at page 2; Affidavit of Publication of Confirmation Hearing Notice in USA Today, dated July 22, 2014 (Docket No. 6211), at page 2; Affidavit of Publication of Confirmation Hearing Notice in the Wall Street Journal, dated July 24, 2014 (Docket No. 6253), at page 2.

38731558.4/022765.00213

thereon, including, without limitation, the Voting Deadline, the Objection Deadline (as such term was defined in the Confirmation Hearing Notice), the time, date and place of the Confirmation Hearing and the release provisions in the Plan.

All persons entitled to receive notice of the Disclosure Statement, the Plan and the Confirmation Hearing received proper, timely and adequate notice in accordance with the Solicitation Orders, applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and have had an opportunity to appear and be heard with respect thereto.

Confirmation Order, pp. 20-21 of 225, ¶¶15(k), (l).

With respect to the discharge of claims, the Confirmation Order provides in relevant part that

…all debts of the City shall be, and hereby are, discharged, and such discharge will void any judgment obtained against the City at any time, to the extent that such judgment relates to a discharged debt; provided that, in accordance with section 944(c)(1) of the Bankruptcy Code, such discharge shall not apply to … (b) debts held by an Entity that, before the Confirmation Date, had neither notice nor actual knowledge of the Chapter 9 Case.

Confirmation Order ¶ 30, pp. 91-92 of 225

The Plan became effective on December 10, 2014 ("Effective Date"). Notice of the Confirmation Order and the Effective Date was published in the Wall Street Journal (Doc. No. 8973), USA Today (Doc. No. 8972), and both the Detroit News and Detroit Free Press (Doc. No. 8971). Confirmation Order ¶ 72, p. 120 of 225.

## B.    Wershe is Paroled and Files the District Court Case

As Wershe admits, "[i]n 2017, Plaintiff was finally paroled by the Michigan Parole Board. He never left government custody, however. Instead, Plaintiff was

38731558.4/022765.00213

transferred immediately to a Florida prison, where he served five years," which arose from a 2006 racketeering conviction in Florida, wholly unrelated to the claims underlying the current action. *See* Wershe's Response, Doc. No. 13511 ("Response"), Exhibit A (Plaintiff's Response to Defendant City of Detroit's Motion to Dismiss *In Lieu* of an Answer) at Page ID 249; Motion, Exhibit 6-1, Amended Complaint at ¶¶ 105-110, Page ID 103-04.

On July 20, 2020, Wershe was released from jail. Amended Complaint ¶ 1. On July 20, 2021, Wershe filed a complaint against the City and others in the United States District Court for the Eastern District of Michigan, case number 21-11686 ("District Court Case"). On September 14, 2021, Wershe filed his First Amended Complaint ("Amended Complaint"), which was attached to the Motion as Exhibit 6-1.

In the Amended Complaint, Wershe asserts two claims against the City, in Counts II and III. Amended Complaint, ¶¶ 129-144, Page ID 107-111.

The claim in Count II of the Amended Complaint is for actions allegedly taken by Detroit Police Department Defendants William Jasper and Kevin Greene in 1984 when Wershe was 14 or 15 years old. Amended Complaint ¶¶ 30, 32, 36, 38, 47, 48, 129-36; Page ID 90-93, 107-109. In that regard, paragraphs 36 and 37 of the Amended Complaint allege:

> Grosman, Jasper, and Greene went to see Plaintiff in the hospital for
> the sole purpose of persuading and coercing him into lying about the

circumstances of his alleged assignation. Instead of pulling him out, they further endangered him by coercing him to stay a confidential informant.

Amended Complaint ¶¶ 36-37. Wershe alleges that the City is liable for these actions by "1983 *Monell* Liability." Amended Complaint, page ID 107. Wershe repeats throughout Count II that these actions occurred when he was "a 14-year-old child." Amended Complaint ¶¶ 132-135, Page ID 108. Indeed, Wershe alleges that he no longer had contact with Defendants Jasper and Greene after 1987. Amended Complaint ¶¶ 47-48, Page ID 92-93.

The claim in Count III of the Amended Complaint seeks to hold the City liable for the "acquiring of Plaintiff's sealed grand jury testimony and its distribution to Detroit Police Officers, including William Rice, who were then instructed to go testify against Plaintiff as if from their personal knowledge was the result of an official policy of the City of Detroit." Amended Complaint ¶ 140, Page ID 109-10. Wershe alleges that this occurred in 2003 for the 2003 parole hearing. Amended Complaint ¶ 141, Page ID 110; *see also* Amended Complaint ¶¶ 80-104, 144. Page ID 98-103, 111.

Years before Plaintiff filed the District Court Case, in March, 2017, the "White Boy" documentary, cited twenty-three times in Plaintiff's Response to

Defendant City of Detroit's Motion to Dismiss ("District Court Response")[2], was released.[3] **Exhibit 1**, Reply to Plaintiff's Response to Defendants' Motion to Dismiss ("District Court Reply"), Page ID 299-30. In that documentary, Wershe and his former attorney, Ralph Musilli,[4] made numerous allegations against the City, including allegations which form the basis for the claims asserted in Counts II and III of the Amended Complaint.

- With respect to the assassination alleged in paragraphs 36 and 37 of the Complaint (which is incorporated into Count II of the Amended Complaint), Wershe states "The police told me to say the shooting was an accident because it was the best way to sweep it under the rug and I could continue to work for them if I said it was an accident." District Court Response, Exhibit D ¶ 2, Page ID 291.

- Wershe and Musilli allege that there was a conspiracy to deny Wershe parole at the same 2003 parole hearing that is the subject of Count III of the Amended Complaint. District Court Response, Page ID 247-48, Ex. D ¶ 10, Page ID 293-94; Response, pages 19-20 of 32, ¶¶ 10-11. Further, a former Detroit Police Department detective alleges that he was "approached by Deputy Chief Dennis Richardson, and I was told that I was gonna go to the parole hearing. The goal of the hearing was to make sure that he was not released." *Id.*

- Wershe alleges that he assisted in the conviction of a dozen high-ranking members of the Detroit Police Department as part of Operation Backbone. District Court Response, Page ID 246-47, Ex. D ¶ 2, Page ID 290-91.

---

[2] The District Court Response was attached as an Exhibit to the Response. Exhibit D to the District Court Response contains transcribed excerpts from the "White Boy" Netflix Documentary. Exhibit E to the District Court Response is the "White Boy" Netflix Documentary.

[3] https://www.deadlinedetroit.com/articles/27723/trailer_netflix_now_showing_richard_wershe_jr_documentary_--_white_boy

[4] Wershe discusses Mr. Mussili in paragraphs 39-42 of his declaration attached as an Exhibit to the Amended Complaint. Page ID 136.

- Wershe alleges that former Mayor of Detroit Coleman Young endangered his life by identifying him as an informant as part of Operation Backbone. District Court Response, Exhibit D ¶ 7, Page ID 292-93.

The documentary also makes additional claims including that

- Wershe was set up by police and had fabricated evidence used against him. District Court Response, Page ID 243-44; Exhibit D ¶¶ 4-5, Page ID 291-92

- Wershe was beaten to the point of hospitalization. District Court Response Page ID 243-44; Exhibit D ¶ 4, Page ID 291-92.

- Wershe believed that members of law enforcement were conspiring to have him murdered. District Court Response Exhibit D ¶ 3, Page ID 291.

## III.    Wershe's Claim Was Discharged

Wershe argues that his claim was not discharged because he did not have proper notice and also because it falls within the "intentional torts" exception to discharge. Both arguments fail: As an unknown creditor, Wershe was provided with publication notice and the "intentional torts" exception does not apply to chapter 9 of the Bankruptcy Code.

### A.    Wershe was Afforded Proper Notice and His Claim was Discharged

Wershe was afforded proper notice of the City's bankruptcy case and his claim was discharged. Wershe does not argue that he was a known creditor. Indeed, throughout the Response, Wershe states that he did not assert to the City – or even contemplate – any claims against the City until well after the Effective Date due to his fear of retaliation. Response, pp. 5, 22-24.  As an unknown creditor of the City,

8

notice by publication was sufficient to satisfy the requirements of due process. Wershe's claims are discharged.

The cases cited by Wershe support the City's position. Wershe first case cites to *Chemetron*, which states as follows with respect to known versus unknown creditors:

> The central issue before us is whether plaintiffs were "known" or "unknown" claimants at the time of the bankruptcy court's order. If claimants were "known" creditors, then due process entitled them to actual notice of the bankruptcy proceedings. Absent such notice, their suit may proceed. If claimants were "unknown" creditors, however, then notice by publication was sufficient to satisfy the requirements of due process and their claims are barred, absent some other basis for relief. We hold that the claimants in the instant case were "unknown" creditors.

*Chemetron Corp. v. Jones*, 72 F.3d 341, 345–46 (3d Cir. 1995); *see also Monson v. City of Detroit*, No. 18-10638, 2019 WL 1057306, at *10 (E.D. Mich. Mar. 6, 2019) (Because Monson was an unknown creditor, he was entitled only to constructive notice, not actual notice).

The *Chemetron* court went on to hold that publication notice in national newspapers satisfies the due process concerns of the unknown creditors:

> Having held that claimants were "unknown" creditors, we have little difficulty holding that the notice which Chemetron published in the *New York Times* and the *Wall Street Journal* was sufficient. It is well established that, in providing notice to unknown creditors, constructive notice of the bar claims date by publication satisfies the requirements of due process. *New York,* 344 U.S. at 296, 73 S.Ct. at 301. Such notice must be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an

9

opportunity to present their objections." *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657. We find that Chemetron's notice met this standard.

*Chemetron Corp. v. Jones*, 72 F.3d 341, 348–49 (3d Cir. 1995).[5]

In accordance with the Bar Date Order, the Solicitations Procedure Order and the Confirmation Order, the City provided publication notice of the Bar Date, the deadlines and procedures for filing objections to the Plan and the confirmation of the Plan. This Court has already found and ordered that such notice was sufficient. Wershe provides no basis to vacate those orders and findings. As a result, the Plan's exception to discharge for entities that did not have notice is not applicable here.[6] The Court should reject Wershe's arguments that he did not have proper notice. Wershe's claim was discharged.

---

[5] The other case cited by Wershe on this point, *Wright v. Owens Corning*, 679 F.3d 101, 108–09 (3d Cir. 2012) also supports the City's argument that Wershe's claims were discharged. The *Wright* court found that the "Debtors' notices were sufficient as to most unknown claimants" but not with respect to the specific claimants at issue due to a change in the controlling law on whether those specific claimants held claims. There has not been any similar change in law here.
*See e.g. In re City of Detroit, Michigan*, 548 B.R. 748, 763 (Bankr. E.D. Mich. 2016) (describing the tests to determine when a claim arose).

[6] Wershe fails to allege that he did not have actual knowledge of the City's case. As a result, even if this Court were to find that he did not have notice, his claim would still be discharged because he has failed to allege that he did not have actual knowledge.

10

**B.      Section 523 Does Not Apply in a Chapter 9 Bankruptcy Case**

Later in the Response, Wershe argues that his claim "should be ruled exempt from dischargeability pursuant to the intentional torts exception to bankruptcy, as all of the defendants conduct as alleged by Plaintiff was undeniably 'willful and malicious' according to law." Response, p. 27.[7]  This argument fails because section 523 of the Bankruptcy Code does not apply to Chapter 9 cases. 11 U.S.C. § 901(a).

**IV.      Wershe's Claim Was Within His Fair Contemplation When the City Filed for Bankruptcy**

Wershe alleges in the Amended Complaint that the events underlying his claims against the City occurred in the 1980s and in 2003.[8]  As such, these events occurred a decade or more before the City filed for bankruptcy and the alleged claims arising from these events were within Wershe's fair contemplation when the City filed for bankruptcy in 2013.  *See e.g. In re City of Detroit, Michigan*, 548 B.R. 748, 763 (Bankr. E.D. Mich. 2016). Although Wershe asserts that he could not contemplate these claims until he was released from prison in 2020, Wershe admits that prior to the City's bankruptcy, in 2003 at his parole hearing, he asked his former

---

[7] Wershe does not cite to a Bankruptcy Code section to support this argument but presumably he is referring to section 523(a)(6).

[8] The Court should also reject Wershe's argument that he is entitled to "bring his claim for the injury of being incarcerated from 2014 to 2020" because the basis for this claim is the same events which occurred between ten and twenty-nine years before the City filed for bankruptcy.  Response, pp. 26-27. Wershe's claim arose prepetition and is barred.

attorney, Ralph Bufalino, about making a claim that his sealed grand jury testimony had been illegally distributed (which is the same accusation that forms the basis for Count III of the Amended Complaint). Amended Complaint ¶¶ 71, 92-94; Affidavit of Richard Wershe Jr. (attached to the Amended Complaint at ECF No. 4-1) ¶¶ 18, 23-24, 43 ("Just like Bufalino, Ralph Musili assured me on many occasions that I would have on years after I got out of prison to bring my lawsuit."); Response, p. 19 of 32, ¶ 8. In 2004, Wershe retained new counsel, Ralph Musilli. Amended Complaint ¶ 111. Wershe states that he "inquired with Musilli about potentially taking legal action against the defendants named herein…" Amended Complaint ¶112. The Amended Complaint and Wershe's affidavit directly contradict his new allegation that he did not contemplate these claims until 2020. Wershe and his attorney, Ralph Musilli, also asserted claims against the City in the 2017 documentary. Wershe's story is simply not credible. Further, this Court and others have consistently held that prisoners in jail must still comply with claim filing deadlines even when their convictions were overturned (which did not happen here) years after the Bar Date. *See* Doc. Nos. 11296; *Sanford v. City of Detroit*, No. 17-13062, 2018 WL 6331342, at *5 (E.D. Mich. Dec. 4, 2018); *Monson v. City of Detroit*, No. 18-10638, 2019 WL 1057306, at *8 (E.D. Mich. Mar. 6, 2019).[9]

---

[9] Along these same lines, as set forth in the City's Motion to Dismiss in the District Court Case (Exhibit 6-3 to the Motion), Michigan does not recognize extra-

38731558.4/022765.00213

**V.    Equitable Tolling Cannot be Used to Extend the Proof of Claim Deadline**

Wershe then spends the next twenty pages of his brief arguing that he is entitled to the "equitable tolling of any limitations period in this bankruptcy matter."[10] Yet, equitable tolling has been universally rejected by Bankruptcy Courts to extend the deadline to file a proof of claim. The one case Wershe cites in support of the application of the doctrine did not actually apply equitable tolling to a proof of claim deadline. Instead, the *Anderson* court applied equitable tolling to extend the statute of limitations for unauthorized postpetition transfers. *See In re Anderson*, 511 B.R. 481, 498 (Bankr. S.D. Ohio 2013), *aff'd*, 510 B.R. 113 (B.A.P. 6th Cir. 2014).

Courts have uniformly rejected applying equitable tolling to extend the deadline to file a proof of claim. *In re Gardenhire,* 209 F.3d 1145 (9th Cir.2000) (declining to apply equitable tolling to extend a proof of claim deadline); *In re Sykes*, 451 B.R. 852, 861 (Bankr. S.D. Ill. 2011) (The court did not find any cases which applied equitable tolling.    "Instead, the existing authority suggests that equitable tolling may *not* be used as a mechanism to allow otherwise untimely filed claims."); *In re Mackinder-Manous*, No. 13-21211, 2015 WL 790883, at *4

---

statutory tolling of statutes of limitations or toll the statute of limitations while a plaintiff is incarcerated. Motion to Dismiss, Page ID 160-165.

[10] Wershe does not identify any specific limitations period. For purposes of this Reply, the City assumes that Wershe is referring to the Bar Date (which is not a statute of limitations).

13

(Bankr. E.D. Ky. Feb. 24, 2015) (declining to apply equitable tolling to extend a proof of claim deadline); *In re Brooks*, 370 B.R. 194, 197 (Bankr. C.D. Ill. 2007) ("Likewise, the doctrine of equitable tolling has been rejected as a basis to extend the claim bar date.") *See also In re Greenig,* 152 F.3d 631 (7th Cir.1998) (The Seventh Circuit concluded that the bankruptcy court 'acted improperly in that it allowed the creditor to circumvent Rule 3002(c) and file an untimely proof of claim because of equitable considerations).

The restraint on bankruptcy courts' equitable powers was most recently reinforced by the United States Supreme Court in *Law v. Siegel,* 134 S.Ct. 1188 (2014), in which the Supreme Court held that, although § 105 gives a bankruptcy court statutory authority to carry out the provisions of the Code, "a bankruptcy court may not contravene specific statutory provisions" in carrying out those powers.

This Court should follow the other courts which have considered the issue and decline to apply equitable tolling to extend a proof of claim deadline.[11]

## VI. Wershe Has Failed to Demonstrate Excusable Neglect

Wershe cannot satisfy the more demanding "excusable neglect" requirement under Fed. R. Bankr. P. 9006(b)(1). As this Court explained earlier in this case, the

---

[11] Even if equitable tolling were to apply, this Court should utilize it to extend the Bar Date because Wershe had proper notice of the case as explained in section II and III of this reply and for the reasons explained in section VI with respect to excusable neglect.

38731558.4/022765.00213

Supreme Court's decision in *Pioneer* is the leading case on what "excusable neglect" means. *In re City of Detroit, Michigan*, 576 B.R. 552, 558 (Bankr. E.D. Mich. 2017) (*citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)).

The factors discussed by the Court in *Pioneer* weigh heavily against finding that Wershe's neglect is excusable because Wershe has not offered a credible reason for his extraordinary delay in seeking to file a proof of claim in this case and the reasons he has offered do not amount to any valid excuse for his delay.

## A. "The length of the delay and its potential impact on judicial proceedings"

The length of Wershe's delay in seeking to file a late proof of claim is extraordinary. The deadline to file claims was February 21, 2014. The Response was not filed until nearly eight years later on February 10, 2022. Wershe admits that he discussed these claims with his former attorneys beginning in 2003. The Response was also filed nearly five years after Wershe made similar claims in the "White Boy" Rick Documentary and was paroled. This factor weighs strongly against finding that Wershe's neglect is excusable.

## B. "The danger of prejudice to" the opposing party

Wershe's extraordinary delay in seeking to file a proof of claim in this case creates a danger of prejudice to the City and will have an impact on judicial proceedings in this case. *See In re City of Detroit, Michigan*, 576 B.R. 552, 558–60

(Bankr. E.D. Mich. 2017) ("Allowing creditors to casually ignore the deadline for filing proofs of claim would run the risk of creating chaos in such a large case, and undermining the confidence of all parties in interest."). Further, the City has resolved all objections to class 14 claims and expects to make its first and final distribution to class 14 creditors under the Plan in the next several months. *See* City of Detroit's Status Report on Bankruptcy Case, Doc. No. 13478, pp. 7-10. Allowing Wershe to file an untimely proof of claim would likely delay a final distribution for several years. For these reasons, the "danger of prejudice" and "potential impact on judicial proceedings" factors under *Pioneer* weigh against finding excusable neglect here.

### C. "Whether the movant acted in good faith"

Wershe has not acted in good faith. He did not file a motion in the City's bankruptcy case seeking to file an untimely proof of claim. Instead, he filed suit against the City in federal district court seeking to avoid the issue altogether. Further, Wershe has asserted these same claims against the City since at least 2003. This factor weighs heavily against finding excusable neglect.

### D. "The reason for the delay, including whether it was within the reasonable control of the movant."

Wershe has not offered a credible reason for his extraordinary delay in seeking to file a proof of claim in this case, and the reasons he has offered do not amount to any valid excuse for his delay. Since the release of the documentary in 2017, Wershe has been asserting claims against the City. As such, his fear of retaliation defense is

16

not credible and should be rejected. Further, Wershe cites no cases which hold that a creditor can be excused from filing a proof of claim due to the fear of retaliation. This factor also weighs strongly against a finding of excusable neglect.

## VII. The Court Should Not Stay the Adjudication of the City's Motion

Finally, the Court should reject Wershe's request for a stay of the Motion in this bankruptcy case while the District Court adjudicates the City's motion to dismiss in the District Court Case. This Court is in the best position to interpret and enforce its own orders and to evaluate the prejudice to the City and its creditors by delaying the final distribution to class 14 creditors. This Court should reject Wershe's request for a stay.

Dated: February 28, 2022

Miller, Canfield, Paddock and Stone, PLC

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Attorneys for the City of Detroit

17

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION**

RICHARD WERSHE JR.,                          Case No.: 2:21-cv-11686
     Plaintiff,                          Hon. Laurie J. Michelson

- vs -

CITY OF DETROIT, *et al*,
     Defendants.

                                        /

**REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

1. **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SHOULD BE STRICKEN AS UNTIMELY.**

Defendant, CITY OF DETROIT, filed it's Motion to Dismiss on September 30, 2021.[1] Plaintiff's Response was originally due on October 21, 2021.[2] On October 15, 2021, Defendants stipulated to extend this deadline to November 20, 2021.[3] Plaintiff's Response was not filed until November 22, 2021.[4] A Motion to Dismiss is a dispositive motion,[5] and a party **must** file a response within twenty-one days

---

[1] Doc. No.: 8.

[2] L.R. 7.1.

[3] Doc. No.: 11.

[4] Doc. No.: 19.

[5] L.R. 7.1(e)(1)(A).

1

after service.[6] "When an act may or must be done within a specified time, the court may, for good cause, extend the time … on motion made after the time has expired if the party failed to act because of excusable neglect."[7] Despite Defendants' stipulation to extend the time for Plaintiff to file his Response, Plaintiff failed to timely do so, offering no explanation for the untimeliness or failure to seek and additional extension of time by which to respond. A party is not entitled to disregard the Federal Rules of Civil Procedure.[8]  Nor is a party entitled to disregard the Local Rules of this Court. As such, the Court is not obligated to consider Plaintiff's response,[9] and should treat Defendants' motion as unopposed.[10]

2.  EVEN IF PLAINTIFF COULD BENEFIT FROM EQUITABLE AND/OR JUDICIAL TOLLING, HIS CLAIMS ARE NONETHELESS TIME-BARRED.

As Plaintiff admits, "[i]n 2017, Plaintiff was finally paroled by the Michigan Parole Board. He never left government custody, however. Instead, Plaintiff was transferred immediately to a Flordia prison, where he served five years,"[11] which

---

[6] *Id.* at 7.1 (e)(1)(B).

[7] Fed. R. Civ. Proc. 6(b)(1)(B).

[8] *Carman v. Treat,* 7 F.3d 1379, 1381 (8th Cir.1993).

[9] See, *U.S. v. Pleasant,* 12 F. App'x 262, 269 (6th Cir.2001).

[10] See, *Festa v. Cornier,* 2007 WL 2331946, *1 (D.P.R. Aug.13, 2007).

[11] Doc. No.: 19 at Pg. ID 249.

2

arose from a 2006 racketeering conviction in Flordia wholly unrelated to the claims underlying this action.[12]

Assuming, *arguendo*, that Michigan's absence of an equitable tolling provision appliable to prisoners is, on the facts of this case, inconsistent with the Consitution, United States' law, or contrary to federal policies goals, and that equitable tolling *may* be applied in this action,[13] Plaintiff's claims are nonetheless untimely. "More significant than any of the five-factors is the Supreme Court's factor which asks did "some extraordinary circumstance st[and] in [Plaintiff's way[?].""[14] The purported 'extraordinary circumstance' asserted by Plaintiff here was an alleged "fear of retaliation for taking action against Defendants …," which Plaintiff suggests "means his statute of limitations was immediately tolled until he was no longer suffered [*sic*] from such fear."[15] However, Plaintiff was paroled on all charges underlying this action by the Michigan Parole Board in April of 2017, at which time any alleged fear of retaliation for taking action against Defendants was obviated.[16]  Should Plaintiff

---

[12] Doc. No.: 4 at ¶¶ 105-110, Pg. ID 103-04.

[13] A feat yet to occur amongst prisoner civil rights cases in Michigan since the 1994 amendments to MCL § 600.5851.

[14] Doc. No.: 19 at Pg. ID 263; citing, *Holland*, 560 US 631 (2010).

[15] *Id*. at Pg. ID 265.

[16] If not in February of 2016, after Gil Hill dies and the Wayne County Prosecutor's Officer reversed course and now supporting his release from prison. Doc. No.: 19 at

3

argue that his fear of retaliation continued even after he was released from Michigan prison in April of 2017, it must be noted that the "White Boy" Documentary,[17] cited **twenty-three** times in Plaintiff's Response, was released in March of 2017.[18] Plaintiff cannot then argue that he "feared retaliation for taking action against Defendants" in the form of a lawsuit, but did not fear retaliation for releasing a documentary wherein Plaintiff alleges, *inter alia*, that he was set up by police; beaten to the point of hospitalization; had fabricated evidence used against him, could prove a police cover up related to the murder of a thirteen year-old boy, believed that members of law enforcement and politicians were conspiring to have him murdered, admitted to assisting in the conviction of a dozen high-ranking members of the Detroit Police Department, and more.[19-20] Nor does it matter.

---

Pg. ID 248.

[17] Doc. No.: 19-6 (Plaintiff's Response at Exhibit "E"), filed in the traditional manner.

[18] https://www.deadlinedetroit.com/articles/16995/documentary_on_white_boy_rick_debuts_at_freep_film_festival_this_month\

[19] Doc. No.: 19 at Pg. ID 243-46.

[20] Assuming that Plaintiff's fear of retaliation at the hands or direction of Detroit Police Officers, while in the custody of the Michigan or Federal Correctional Facilities warrants any legitimate consideration. Although this Motion is not the appropriate venue for such discussion, permitting subjective and unrealized fear of retaliation by non-corrections members of law enforcement, may "open the door" for incarcerated individuals to use subjective allegations to invalidate well established principles of timeliness. Such relief would constitute the type of federal

4

Even in jurisdictions where statutes of limitation are tolled during a period of incarceration, the statute of limitations are not tolled for a Plaintiff released from custody and then rearrested on a separate charge. This is true regardless of whether Plaintiff was on parole for the original charge while serving his sentence for the later.[21] Hence, *even if* Plaintiff is correct in asseting that "his statute of limitations was immediately tolled until he was no longer suffered [*sic*] from such [fear of retaliation],"[22] this tolling would only have applied until March or April of 2017. Plaintiff's Complaint was not filed until September 14, 2021.[23] This reasoning, and more, also negates Plaintiff's argument in favor of judicial tolling, premised upon confusion of the law. Of importance MCL § 600.5851(3-4), appearing in both the pre and post 1994 amendment versions, provides in relevant parts:

> (3) To be considered a disability, the [disability] must exist at the time the claim accrues. If the disability comes into existence after the claim has accrued, a court shall not recognize the disability under this section for the purpose of modifying the period of limitations; and

---

judicial supervision of state prisons systems against which the Supreme Court has warned time and again. See generally, *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble,* 429 U.S. 101 (1976).

[21] *Arnold v. D.C.*, 211 F. Supp. 2d 144, 147–48 (D.D.C. 2002); *Burrell v. Newsome,* 883 F.2d 416, 420 (5th Cir.1989); *Kaiser v. Cahn,* 510 F.2d 282, 286 (2d Cir.1974); *Boag v. Chief of Police*, 669 F.2d 587, 589 (9th Cir. 1982).

[22] *Id*. at Pg. ID 265.

[23] Doc. No.: 4.

(4) A person shall not tack successive disabilities. A court shall recognize only those disabilities that exist at the time the claim first accrues and that disable the person to whom the claim first accrues for the purpose of modifying the period of limitations.[24]

The "disability" that Plaintiff alleges to have prevented him from pursuing his claims relative to this action ended when Plaintiff was paroled by the Michigan Parole Board in April of 2017, if not with the release of "White Boy," the month prior, and his continued incarceration on the racketeering charge was a new disasility that did not exist at the time the claims asserted in this action accrued, nor is Plaintiff permitted to tack his subsequent disability (incarceration in Flordia) for purposes of modifying the period of limitations.  As such, even under the pre-1994 version of MCL § 600.5851(1), Plaintiff was required to have brought his claims no later than the one-year anniversary of being Paroled for the charges underlying this action. "[R]elease from imprisonment" means either of the following: (a) A final release or discharge from imprisonment in a county jail; [or] (b) Release on parole or a final release or discharge from imprisonment in a state or federal correctional facility."[25]

Additionally, Plaintiff's mistaken belief that incarceration still tolled the limitations period does not warrant equitable tolling.[26]  Imprisonment ceased to toll

---

[24] MCL § 600.5851(3-4).

[25] MCL § 600.5851(1).

[26] See, *Rose v. Dole,* 945 F.2d 1331, 1335-36 (6th Cir.1991) [*per curiam*].

6

the statute of limitations on April 1, 1994, subject to a one-year grace period.[27] According to Plaintiff, attorneys William Buffalino and Ralph Musili informed Plaintiff that he would have one (1) year after being released from prison to bring a civil action against the Defendants in this case.[28] However, William Buffalino and Ralph Musili continued and/or began representing Plaintiff for **more than a decade after** the April 1, 1994 amendment to MCL § 600.5851.[29][30] As repeatedly stated, ignorance of the law does not warrant equitable tolling of a statute of limitations.

## CONCLUSION

**WHEREFORE**, Defendants, CITY OF DETROIT, WILLIAM JASPER, and KEVIN GREENE, respectfully request that this Honorable Court grant Defendant's Motion to Dismiss and further grant any other relief deemed just and appropriate.

Respectfully Submitted,
CITY OF DETROIT LAW DEPARTMENT

Dated: December 1, 2021            /s/    Gregory B. Paddison
                                          Gregory B. Paddison (P75963)
                                          Attorney for Defendants

---

[27] See, MCL § 600.5851(9), (10).

[28] Doc. No.: 4-1 at ¶ 43, Pg. ID 136.

[29] See Doc. No.: 4, at ¶ 93, Pg. ID 100 (attorney Buffalino representing Plaintiff at a Parole Hearing in 2003). See also, Doc. No.: 4-1 at ¶¶ 39-44, Pg. ID 136.

[30] All of which ignores that the statements attributed to attorneys Buffalino and Musili are hearsay.

7

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 28, 2022, he filed *City of Detroit's Reply in Support of Its Motion for the Entry of An Order Enforcing the Bar Date Order and Confirmation Order Against Richard Wershe Jr.* using the Court's ECF system which will provide notice of the filing to all registered participants in this case.

Dated: February 28, 2022

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com