EXHIBIT 1

# STATE OF MICHIGAN

# IN THE 7TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF GENESEE

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff,

v

JARROD AGEN
GERALD AMBROSE
RICHARD BAIRD
DARNELL EARLEY
NICOLAS LYON
NANCY PEELER
EDEN WELLS,

        Defendants.

Case No. 21-047372-FH (Agen)
21-047373-FH (Ambrose)
21-047374-FH (Ambrose)
21-047375-FH (Baird)
21-047376-FH (Earley)
21-047377-FH (Earley)
21-047378-FH (Lyon)
21-047379-FH (Peeler)
21-047380-FH (Wells)

HON. ELIZABETH A. KELLY

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S "MOTION FOR PROTECTIVE ORDER AND DISCOVERY PURSUANT TO MCR 6.201(E) AND 6.201(J)"

At a session of said Court held in the Courthouse,
In the City of Flint, County of Genesee, Michigan
Friday, November 19, 2021:

PRESENT: THE HONORABLE ELIZABETH A. KELLY

## BACKGROUND

Defendant, NICOLAS LYON, filed with this Court a "Motion for Protective Order and Discovery Pursuant to MCR 6.201(E) and 6.201(J)", in the above-captioned cases. Oral arguments were heard on October 12, 2021, and the above referenced defendants joined in Defendant's motion. Therefore, this order is controlling over all above-captioned cases.

On April 7, 2021, this Court entered protective orders in *People v Agen, People v Ambrose, People v Baird, People v Earley, People v Lyon, People v Peeler,* and *People v Wells*, which were stipulated to by all defendants. Now, among other things, Defendant seeks an additional protective

1

order. More specifically, Defendant requests this Court to (1) enter a protective order barring the People from reviewing or producing any seized documents until a protocol can be established to allow for the proper evaluation of the privileged material, (2) enter an order authorizing Defendant to seek discovery into the People's seizure, review, and production of privileged documents, and (3) set a status conference to discuss the proposed discovery into the taint issue and the appropriate protocol for the review of the documents for privilege by an outside party.

## ANALYSIS

### I. INTRODUCTION

"On a motion and a showing of good cause, the court may enter an appropriate protective order." MCR 6.201(E). MCR 6.201(E) provides guidance on what a court may consider when determining "good cause." MCR 6.201(E) states in relevant part:

> In considering whether good cause exists, the court shall consider the parties' interests in a fair trial; the risk to any person of harm, undue annoyance, intimidation, embarrassment, or threats; the risk that evidence will be fabricated; and the need for secrecy regarding the identity of informants or other law enforcement matters.

Notably, if this Court finds "good cause" and enters a protective order, "it must seal and preserve the record of the hearing for review in the event of an appeal." *Id.*

"[T]here is no right to discover information or evidence that is protected from disclosure by constitution, statute, or privilege, including information or evidence protected by a defendant's right against self-incrimination, except as provided in subrule (2)." MCR 6.201(C)(1) Additionally, if a party fails to abide by MCR 6.201, this Court, "may order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances." MCR 6.201(J). According to the Michigan Court of Appeals, "[w]hen determining the appropriate remedy for discovery violations, the trial court must

2

balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252 (2002).

## II. ATTORNEY-CLIENT PRIVILEGE

The attorney-client privilege has a long history in the common-law and in Michigan's statutory authority. In 1883, the Michigan Supreme Court held, "[t]here is a privilege of secrecy as to what passes between attorney and client . . . ." *Passmore v Passmore's Estate*, 50 Mich 626, 627 (1883). Likewise, MCL 767.5a(2) states, "[a]ny communications between attorneys and their clients . . . are hereby declared to be privileged and confidential when those communications were necessary to enable the attorneys" to serve as legal counsel. The privilege, is designed "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Leibel v Gen Motors Corp*, 250 Mich App 229, 237 (2002) (quoting *Upjohn v United States*, 449 US 383, 389 (1981)). In other words, "[t]he purpose of the privilege is to allow a client to confide in his or her attorney secure in the knowledge that the communication will not be disclosed." *People v Waclowski*, 286 Mich App 634, 693 (2009). Notably, the attorney-client privilege is personal to the client, and only the client has the authority to waive it. *Id.* at 693-94.

Likewise, the attorney work-product doctrine ensures that "any notes, working papers, memoranda, or similar materials, prepared by an attorney in anticipation of litigation are protected from discovery." *Leibel*, 250 Mich App at 244. Pursuant to MCR 2.302(B)(3)(a), the attorney work-product doctrine states, "in ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a part concerning the litigation." In fact, the United States Supreme Court held, "it is essential that a lawyer work with a certain

3

degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v Taylor*, 329 US 495, 510 (1947). Notably, the Court defined work-product as "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." *Id.* at 511. "At its core, the work-product doctrine shelters the mental processes of the attorney providing a privileged area within which he can analyze and prepare his client's case." *United States v Nobels*, 422 US 225, 238 (1975).

### (1) THE PURPOSE OF TAINT TEAMS

As mentioned above, the attorney-client privileges protect parties from the production of privileged materials. Here, Defendant alleges that the People violated this privilege by producing and reviewing privileged materials. Central to this allegation is the fact that the People did not use a team of prosecutors and/or agents unconnected to the proceeding who could review and evaluate whether materials seized included privileged documents. In other words, Defendant takes issue with the fact that the People did not use a taint team.

Taint teams are used by prosecutors in some criminal cases where search warrants may result in the discovery of privileged materials. As indicated by the Michigan Court of Appeals, "[i]n the case where a potentially privileged communication does get caught up in an otherwise lawful search, there are also steps that can be taken to identify and segregate privileged information from the rest, including filter agents or taint teams." *People v Joly*, 2021 WL 935704 at *7. Other courts have further emphasized the importance of taint teams in specific circumstances. The United States Sixth Circuit Court stated, "government taint teams seem to be used primarily in limited, exigent circumstances in which government officials have already obtained the physical control of potentially-privileged documents through the exercise of a search warrant." *In re Grand Jury Subpoenas*, 454 F3d 511, 522 (6th Cir 2006). As such, "the potentially-privileged documents are already in the government's possession, and so the use of the taint team to sift the wheat from the

4

chaff constitutes an action respectful of, rather than injurious to, the protection of privilege." *Id.* Here, the People did not implement a taint team and the Defendant alleges that the documents seized contain privileged material.

### (2) THE GOOD CAUSE REQUIREMENT

Here, the question is a simple one: whether the Defendant has demonstrated the good cause necessary for this Court to enter a new protective order. As before mentioned, "[o]n a motion and a showing of good cause, the court may enter an appropriate protective order. MCR 6.201(E). As stated in MCR 6.201(E):

> In considering whether good cause exists, the court shall consider the parties' interests in a fair trial; the risk to any person of harm, undue annoyance, intimidation, embarrassment, or threats; the risk that evidence will be fabricated; and the need for secrecy regarding the identity of informants or other law enforcement matters.

Therefore, this Court may enter a protective order after determining that "good cause" exists to promote a fair trial.

Defendant alleges that the People are in possession of privileged materials belonging to the defendants in the above-mentioned cases. The Defendant also alleges that the People have reviewed and produced privileged materials and plan to continue reviewing and producing more privileged materials. As a result, Defendant claims that he has demonstrated the "good cause" necessary for the issuance of a new protective order in this matter.

Conversely, the People oppose the issuance of a protective order because they deny violating the Defendant's attorney-client privilege and because Defendant has not demonstrated "outrageous misconduct by the government." See *Joly*, 2021 WL 935704, at *4. However, the issuance of a protective is not contingent on determining whether the government's actions were "outrageous misconduct." Instead, this Court is simply tasked with determining whether there is "good cause" to enter the proposed protective order. Unfortunately, the People provided little

5

13-53846-tjt    Doc 13538-1    Filed 04/13/22    Entered 04/13/22 16:26:25    Page 5 of 8

written argument disputing the presence of "good cause"—instead focusing on whether Defendant proved a constitutional violation.

Despite not currently tasked with determining whether a constitutional violation exists, this Court is interested in mitigating the potential of a future violation. Although likely slowing the discovery process, taint teams are commonly used to prevent the dissemination and review of privileged materials and this Court believes that the use of a taint team will help ensure a fair trial in this matter. Moreover, this Court believes that the burden of a taint team on the People will be slight in contrast to the benefits it will provide in this case. The taint team will protect defendants' attorney-client privilege, while shielding the People from allegations of constitutional violations. As a result, Defendant has demonstrated "good cause" because the use of a taint team will promote the parties' interest in a fair trial. Therefore, this Court orders the People to implement a taint team to facilitate the discovery in this matter.

### III. REQUEST FOR ADDITIONAL DISCOVERY

Defendant requests an evidentiary hearing to flesh out his allegations against the People. The People object to Defendant's request and insist that there are other remedies that are more appropriate if the Court determines that there were violations of the attorney-client privilege.

A defendant is generally entitled to an evidentiary hearing where the admissibility of evidence is challenged on constitutional grounds. *People v Reynolds*, 93 Mich App 516, 519 (1979). However, "where it is apparent to the court that the challenges are insufficient to raise a constitutional infirmity, or where the defendant fails to substantiate the allegations of infirmity with factual support, no hearing is required." *People v Johnson*, 202 Mich App 281, 285 (1993). This Court's decision "whether to hold an evidentiary hearing is reviewed for an abuse of discretion." *People v Unger*, 278 Mich App 210, 216–17 (2008). Notably, "[a]n abuse of discretion

6

13-53846-tjt    Doc 13538-1    Filed 04/13/22    Entered 04/13/22 16:26:25    Page 6 of 8

occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id.* at 217.

The attorney-client privilege is not a constitutional right because a "[v]iolation of the privilege is not, by itself, tantamount to a due-process violation and alone does not warrant suppression of derivative evidence." *Joly*, 2021 WL 935704 at *5. However, "[c]ase law has long recognized that outrageous misconduct by the government in detecting and obtaining incriminating evidence can rise to the level of a due-process violation." *Id.* "When the violation occurs in the context of gathering pretrial evidence, courts have developed a remedy referred to as the 'exclusionary rule.'" *Id.*

Moreover, in *Joly*, the Michigan Court of Appeals outlined the elements necessary to show a colorable claim of "outrageous misconduct." *Id.* More specifically, the court stated:

> To make a colorable claim of 'outrageousness,' a defendant must show all of the following: "(1) the government's objective awareness of an ongoing, personal attorney-client relationship between [the attorney] and the defendant; (2) deliberate intrusion into that relationship; and (3) actual and substantial prejudice."

*Id.*

Here, the key issue is whether an evidentiary hearing is appropriate. As mentioned above, a defendant is generally entitled to an evidentiary hearing where the admissibility of evidence is challenged on constitutional grounds. *Reynolds*, 93 Mich App at 519. However, a violation of a privilege is not a due-process violation unless there is a colorable claim of outrageous misconduct. *Joly*, 2021 WL 935704 at *5. Therefore, Defendant is entitled to an evidentiary hearing if he is able to show "outrageous misconduct" by the prosecution.

Here, Defendant asserts privilege over documents that were disseminated through discovery. However, Defendant is unable to demonstrate all the factors required to show "outrageous misconduct." In particular, Defendant is unable to show actual and substantial prejudice. Notably, Defendant has not made a showing that the People double downed and used

7

the alleged privileged material in their preparation or litigation of this matter. Since Defendant is unable to show prejudice, Defendant is unable to show "outrageous misconduct" and Defendant's constitutional claim must fail. Therefore, this Court is not persuaded that Defendant is entitled to an evidentiary hearing in this matter. Moreover, the case law is clear that the exclusionary rule hangs over the head of the People and provides an adequate deterrence against any potential misconduct.

## IV. CONCLUSION

For the foregoing reasons, this Court shall enter a protective order barring the People from reviewing and/or producing any seized documents until the People can establish a taint/filter team to review the discovery in this matter. Once the taint/filter team is implemented, this Court's discovery suspension is lifted. Conversely, this Court will denies Defendant's request to seek discovery into the People's seizure, review, and production of privileged documents.

**NOW, THEREFORE, IT IS ORDERED:** Defendant's "Motion for Protective Order and Discovery Pursuant to MCR 6.201(E) and 6.201(J)" is GRANTED in part and DENIED in part for the reasons stated above.

Dated: 11/19/2021

ELIZABETH A. KELLY (P71790)
Circuit Judge