# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S STATUS REPORT ON BANKRUPTCY CASE

On December 10, 2022, the Court entered its *Order Requiring the City to File a Further Status Report by June 3, 2022* ("Order," Doc. No. 13482). The Order provided that the City of Detroit ("City") must file a further status report, updating the December 2, 2021, status report ("Previous Status Report," Doc. No. 13478), and "discussing whether the Chapter 9 bankruptcy case should then be closed, and if not, why not, and if not, when the City contends that the case will be ready to be closed." Order, p. 1. The City files this Report in accordance with that directive, respectfully stating as follows:

## I.      INTRODUCTION

The bankruptcy case may be closed when case administration is complete, subject to the retained jurisdiction of the Court over the case for as long as necessary for the successful implementation of the Plan. 11 U.S.C. § 945. Although the City has made significant progress since the filing of the Previous Status Report, there are still a few critical matters remaining before case administration can be considered complete, including one issue that directly threatens the successful implementation

- 1 -

of the Plan.  This Report summarizes those known and reasonably foreseeable matters.

***First***, the City must distribute New B Notes[1] to the Holders of Allowed Class 14 Other Unsecured Claims.  Recently, on May 20, 2022, the Court entered an order approving the first and final distribution to Holders of Allowed Class 14 Other Unsecured Claims ("Distribution Order") [Doc. No. 13570].  The City is prepared to make this distribution but is first waiting on the denial of the recently filed motion by Richard Wershe Jr., seeking to file a $100 million unsecured claim more than eight years after the bar date, and the granting of the City's motion to enforce the Plan of Adjustment and claims bar date order against Mr. Wershe.

***Second***, in November 2021, the City's police and fire retirement system ("PFRS") officially adopted a drastic acceleration of the amortization of the unfunded actuarial accrued liability of the PFRS Component II (legacy) plan.  This action violates the Plan of Adjustment and threatens the City's ability to fully and successfully implement the Plan of Adjustment. The City has been preparing and intends to file in the next thirty days, a motion with this Court to enforce the Plan of

---

[1] Terms that are capitalized but not defined in this Report have the meanings ascribed to them in the City's *Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* ("Plan of Adjustment"), as filed as Docket Number 8045 and confirmed with minor modifications by this Court's order filed at Docket Number 8272.

39208263.3/022765.00213

Adjustment against the PFRS. This issue was discussed in the Previous Status Report at pages 10-17, which discussion the City incorporates here.

***Third,*** in addition to the Wershe Motion to Enforce and the soon to be filed motion to enforce against the PFRS, there are three motions to enforce orders of this Court that remain outstanding. These motions are discussed in detail below.

Consequently, the City requests that this Court not close this bankruptcy case now or at any time in the near future. Instead, the City requests that the Court require the City to file another status report in six months so that the City and the Court can reevaluate the status of the case then. The City is available and willing to address any questions the Court may have regarding this Report or the continuing administration of this case.

## II.   BACKGROUND

### A.   The Distribution Process

1.     On September 17, 2019, the City filed the *City of Detroit's Motion to Implement Distributions of B Notes to Holders of Allowed Class 14 Claims Under the City's Confirmed Plan of Adjustment* [Doc. No. 13126] ("Brokerage Motion") in order to establish procedures for the *pro rata* distribution of New B Notes to Holders of Allowed Class 14 Claims.

2.     The Court approved the Brokerage Motion, entering its *Order Granting the City of Detroit's Motion to Implement Distributions of B Notes to Holders of*

39208263.3/022765.00213

*Allowed Class 14 Claims Under the City's Confirmed Plan of Adjustment* [Doc. No.

13173] ("Brokerage Order").

3.      The Brokerage Order approved both the form of the notice of the

obligations imposed by the Brokerage Order ("Notice") and the forms of the

Brokerage Account Form and Tax Form (collectively, the "Distribution Forms") to

be served on and used by Holders of Class 14 Claims as described in and attached

to the Brokerage Motion.  Brokerage Order, ¶ 2.

4.      Under the Brokerage Order, if a Class 14 Claimant fails to return

properly filled out Distribution Forms within 180 days of being initially served with

the Distribution Forms, the Class 14 Claimant releases any right to distributions that

otherwise would be due to the Class 14 Claimant and the claimant's claim will be

disallowed and expunged from the claims register.  Brokerage Order, ¶ 6.

5.      On November 24, 2021, the City filed its *Motion to Establish*

*Procedures for Distribution of New B Notes to Holders of Allowed Class 14 Claims*

*Under the City's Plan of Adjustment* [Doc. No. 13476] ("Procedures Motion"). The

Procedures Motion was filed to establish procedures if a distribution to a

Claimholder failed.   On December 22, 2021, this Court entered an order granting

the Procedures Motion.  (Doc. No. 13488.)

6.      On March 16, 2022, the City filed its *Motion for an Order (A)*

*Approving First and Final Distribution of New B Notes to Holders of Allowed Class*

39208263.3/022765.00213

*14 Claims Under the City's Plan of Adjustment and (B) Granting Other Related*

*Relief* [Doc. No. 13521] ("Distribution Motion").  The Distribution Motion provided

"interested parties the opportunity to review the planned Distribution and to timely

raise any concerns they may have or be permanently and forever barred, estopped,

and enjoined from raising any objection to the proposed first and final Distribution

or asserting any Class 14 Claim against the City or any of its property."  Distribution

Motion, p. 3.

7.      The Distribution Motion included, as Exhibit 6-B, a list of all Holders

of Allowed Class 14 Claims whom the City believed were entitled to receive a

Distribution under the Plan.[2]

8.      The City received informal objections to the Distribution Motion, which

resulted in a few Claims being added to Exhibit 6-B.  A revised Exhibit 6-B,

reflecting these changes, was attached to the City's certification to the Court that no

timely formal objections were received to the Distribution Motion and that all

informal objections had been resolved.  (Doc. No. 13568.)

9.      The Court approved the Distribution Motion by entering the

Distribution Order.  In the Distribution Order, the Court found that the revised

Exhibit 6-B contains a complete and exhaustive list of Allowed Class 14 Claims and

---

[2] For informational purposes, the Distribution Motion also included Exhibit 6-C, a list of all Holders of Allowed Class 14 Claims who had not provided the City with tax and brokerage account information and thus had waived their Claims.

that only claims on the revised Exhibit 6-B will receive Distributions under Class 14 of the Plan.  Distribution Order, ¶ 2.  The Distribution Order further states that "no other alleged Holder of a Class 14 Claim will be entitled to a Distribution under the Plan, and each such other alleged Holder of a Class 14 Claim will be permanently estopped, barred, and enjoined from seeking a Distribution or any other relief from the City or any of its property." *Id.*, ¶ 8.

10.     The City is prepared to make its first and final distribution to Holders of Allowed Class 14 Claims upon resolution of the Wershe Motion to Enforce and Motion to File Late Claim (each as defined below).

**B.      Motions to Enforce**

**1.      Motion to Enforce Against Richard Wershe**

11.      On July 20, 2021, more than seven years after the Bar Date, Richard Wershe Jr. filed a lawsuit against the City in the District Court for the Eastern District of Michigan ("District Court") seeking monetary damages on account of alleged events that occurred a decade or more before the City filed for bankruptcy.

12.     As a result, on January 4, 2022, the City filed its *Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Richard Wershe Jr.* [Doc. No. 13491] ("Wershe Motion to Enforce").

13.     The Court conducted a hearing on the Wershe Motion to Enforce on April 20, 2022.  The Wershe Motion to Enforce is pending before this Court.

39208263.3/022765.00213

14.     On May 9, 2022, Wershe filed *Richard Wershe, Jr's Motion for Entry of Notice of Claim After Bar Date* [Doc. No. 13560] ("Motion to File Late Claim," and with the Wershe Motion to Enforce, the "Wershe Filings"), seeking leave to file a $100 million unsecured claim against the City more than eight years after the Bar Date. The City filed an objection to the Motion to File Late Claim on May 23, 2022. (Doc. No. 13572.) As the City explained in its objection, out of an abundance of caution, the City currently does not intend to make a Distribution to Holders of Allowed Class 14 Claims until the Wershe Filings are resolved. The City reserves the right to make a final Distribution under the authority provided to it in the Distribution Order prior to resolution of the Wershe Filings, however.

### 2.     DFFA Motion to Enforce

15.     On August 30, 2021, the DFFA filed its *Motion of Detroit Fire Fighters Association (DFFA) for the Entry of an Order Enforcing the Plan of Adjustment Against: Christopher McGhee, Norman Brown, Craig Brown, James Washington, Shannon Ferguson, Junius Perry, and Orlando Potts* [Doc. No. 13430] ("DFFA Firefighters Motion"). The City concurred in the DFFA Firefighters Motion. (Doc. No. 13438.)

16.     The Court conducted oral argument on the DFFA Firefighters Motion on January 12, 2021, and scheduled a bench opinion. *See* Docket Nos. 13477, 13493, and 13508.

39208263.3/022765.00213

17.     On February 22, 2022, this Court entered an Order cancelling the bench opinion because the Court decided to enter a written opinion.  (Doc. No. 13515.) The Court has not yet issued its written opinion.

### 3.     Motion to Enforce Against Metris-Shamoon, et. al

18.     On April 6, 2022, the City filed its *City of Detroit's Motion for the Entry of an Order Enforcing the Bate Date Order and Confirmation Order Against Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris and Julia Metris* [Doc. No. 13532] ("Metris Motion to Enforce").   As explained in the Metris Motion to Enforce, the plaintiffs filed a lawsuit against the City that is barred by the claims bar date order entered in this bankruptcy case and the Plan of Adjustment.

19.     On May 17, 2022, the plaintiffs filed a response to the Metris Motion to Enforce.  (Doc. No. 13565.)  On May 27, 2022, the Court entered an Order setting a deadline of June 10, 2022, for the City to file any reply in support of the Metris Motion to Enforce.   (Doc. No. 13576.)

### 4.     Motion to Enforce Against DFFA

20.     On May 27, 2022, the City filed its *City of Detroit's Motion for the Entry of an Order Enforcing the Confirmation Order Against the DFFA* ("DFFA Grievance Motion," Doc. No. 13575.).  As the DFFA Grievance Motion explains, the DFFA filed a grievance which violated the Plan of Adjustment.  The DFFA has until June 10, 2022, to respond to the DFFA Grievance Motion.

- 8 -

**5.      Soon to be Filed Motion to Enforce Against the PFRS**

21.      As the City explained in the Previous Status Report at pages 10-17, in November 2021, the PFRS officially adopted a drastic acceleration of the amortization of the unfunded actuarial accrued liability ("UAAL") of the PFRS Component II (legacy) plan.  This action violates the Plan of Adjustment and threatens the City's ability to implement the Plan of Adjustment fully and successfully.  In the next thirty days, the City intends to file a motion to enforce the Plan of Adjustment against the PFRS.

**C.      The One Remaining Class 15 Claim**

22.      As of the filing of the Previous Status Report, only one claim remained to be liquidated, claim number 799 of Daryl Cain ("Cain Claim").

23.      The Cain Claim is being liquidated in the District Court, Case Number 13-10525 ("Cain Case") under this Court's *Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims* (Doc. No. 2302) and this Court's order at docket number 13269.  (Doc. No. 13269, ¶ 2.).

24.      Even though the Cain Claim is not fully resolved, the City confirmed that it is a Class 15 Claim.  (Doc. Nos. 13246, 13249, 13258, 13269, 13278, 13281, 13285, 13286.)

39208263.3/022765.00213

13-53846-tjt    Doc 13578    Filed 06/03/22    Entered 06/03/22 09:34:19    Page 9 of 15

25.    The District Court originally granted the City summary judgment in the Cain Case in September of 2016.  Cain Case, Doc. Nos. 44, 45.

26.    In October of 2017, after appeal, the Sixth Circuit reversed the District Court's grant of summary judgment to the City, directing the District Court to hold further proceedings in the matter.  *Id.*, Doc. Nos. 52, 53.

27.    Since then, the District Court has granted Cain's motion for trial by jury and reopened discovery.  *Id.*, Doc. No. 70.

28.    At one point, Cain was assigned counsel.  *Id.*, Doc. No. 55.  Counsel later moved to withdraw, and the District Court granted the request.[3]  *Id.*, Doc. Nos. 62, 64.  Cain moved again for counsel to be appointed, but his request was denied.  *Id.*, Doc. Nos. 71, 73, 74.

29.    On or about November 22, 2021, Magistrate Judge Patricia T. Morris conducted a status and settlement conference, but a settlement was not reached.  Cain had made an offer to settle, then withdrew it, and demands a jury trial.

30.    There are no scheduling orders currently on the Cain Case docket.

31.    Further, Cain recently was served with the Distribution Motion but did not object.  Doc. Nos. 13522 (pp. 13 and 21 of 22), 13534.

---

[3] Cain apparently approved of counsel's withdrawal.  The District Court referred to a letter from Cain where he accused counsel of violating his constitutional rights and made other complaints.  "Clearly, there has been a breakdown in the attorney-client relationship."  Cain Case, Doc. No. 64.

39208263.3/022765.00213

32. The Cain Claim is not included on the list of claims to receive a distribution of New B Notes as a Class 14 Claim. (Doc. No. 13568, Ex. 6-B.)

33. Paragraph 8 of the Distribution Order bars Cain from asserting again that the Cain Claim should be treated as a Class 14 Claim.

34. As a claim subject to treatment under Class 15 of the Plan of Adjustment, any distribution on the Cain Claim will be paid by the City directly in cash (albeit with the cash payout capped at $6,250). This amount can be reserved for and later resolved without keeping the City's bankruptcy case open.

35. Consequently, the City does not believe it is required to wait for final liquidation of the Cain Claim before making a distribution of New B Notes or closing this bankruptcy case.

## III. THIS CASE HAS NOT BEEN "FULLY ADMINISTERED"

36. In the City's confirmed Plan of Adjustment, the Court retained jurisdiction to "[e]nter a final decree closing the Chapter 9 Case pursuant to section 945(b) of the Bankruptcy Code[.]" Plan, Art. VII.P (Doc. No. 8045, p. 78 of 82; Doc. No 8272, p. 211 of 225).

37. Section 945(b) states that "Except as provided in subsection (a) of this section, the court shall close the case when administration of the case has been completed." 11 U.S.C. § 945(b). Subsection (a) states that a bankruptcy court may

39208263.3/022765.00213

retain jurisdiction for whatever time is necessary for successful plan implementation. 11 U.S.C. § 945(a).

38. The Bankruptcy Code does not explain when administration of a chapter 9 case is complete and, to the City's knowledge, only one reported decision has addressed the question. *In re Lake Lotawana Cmty. Improvement Dist.*, Case No. 10-44629-can9; 2017 WL 1968282 (Bankr. W.D. Mo. May 11, 2017).

39. The *Lake Lotawana Community Improvement District* court noted that neither the Bankruptcy Code nor the Bankruptcy Rules offer guidance as to when a chapter 9 case has been administered. *Id.* at *2. The court then observed

> Returning to § 945(b) then, cannons of statutory construction require that when Congress does not define a term, courts must give it its ordinary meaning. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). Black's Law Dictionary defines "administration" as the "judicial action in which a court undertakes the management and distribution of property." Black's Law Dictionary 49 (9th ed. 2009).

*Id.* at *3.

40. Thus, the court determined that a case is administered when there is no longer anything for the court to manage in the case. *Id.*

41. In this case, there are several matters that must be addressed prior to the closing the case. First and foremost, the Wershe Filings need to be resolved. Once that is done, New B Notes must be distributed to Class 14 Claim Holders in accordance with the Distribution Order. Also, the DFFA Firefighters Motion, the

- 12 -

Metris Motion to Enforce, and the DFFA Grievance Motion must be resolved. Finally, the City will soon file a motion to enforce against the PFRS. That motion will also need to be resolved to ensure that the City's bankruptcy case remains a success. These significant issues prevent the City's bankruptcy case from being closed at this time.

## IV. CONCLUSION

42. For the reasons described above, the City respectfully requests that the Court not close this bankruptcy case now or in the near future. Instead, the City requests that the Court require the City to file another status report in six months so that the City and this Court can reevaluate the status of the case then. The City is available and willing to address any questions the Court may have regarding this Report or the continuing administration of this case.

Dated: June 3, 2022

CITY OF DETROIT LAW DEPARTMENT

By: */s/ Charles N. Raimi*
Charles N. Raimi (P29746)
Attorneys for the City of Detroit
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
Phone - (313) 237-5037/(313)
Email - raimic@detroitmi.gov

MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.

- 13 -

By: /s/ *Marc N. Swanson*
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Counsel for the City of Detroit,
Michigan

- 14 -

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2022, I electronically filed the *City of Detroit's Status Report on Bankruptcy Case* with the Clerk of the Court via the Court's ECF electronic filing system which will serve notice to all ECF participants.

By: /s/ *Marc N. Swanson*
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Counsel for the City of Detroit, Michigan

Dated: June 3, 2022