UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re:<br>City of Detroit, Michigan,<br>   Debtor. | Bankruptcy Case No. 13-53846<br>Judge Thomas J. Tucker<br>Chapter 9 |

**REPLY BRIEF IN SUPPORT OF
CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER
ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER
AGAINST DEBRA METRIS-SHAMOON, MUKHLIS SHAMOON,
CARL VERES, PAUL METRIS AND JULIA METRIS**

In accordance with this Court's orders,[1] the City of Detroit, Michigan ("City") files this Reply Brief in support of its Motion,[2] respectfully stating as follows.

**I. Introduction**

Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris, and Julia Metris (collectively, the "Plaintiffs") raise a number of arguments previously raised and rejected by this Court and others in their Response[3] to the City's Motion. These arguments did not avail prior respondents and should be rejected again now.

---

[1] Docket Numbers 13576 and 13585.

[2] *City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris and Julia Metris* (Doc. No. 13532).

[3] *Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris and Julia Metris Response in Opposition to Debtor City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order (Dkt #13532)* (Doc. No. 13565).

The Plaintiffs make three arguments in trying to resist the City's Motion. First, they claim they were known creditors, and thus were entitled to service of notice of the City's bankruptcy case.[4] Making a few calls to the police department does not suffice to put the City on notice that the Plaintiffs would allege a claim against the City, however. Nor does alleging that the City was generally aware of problems in its police department. The Plaintiffs' argument has been raised in similar circumstances and been rejected by two federal court judges in this District.

Plaintiffs next say that their claims were not within their "fair contemplation" pre-petition even though the facts that gave rise to them occurred in 2012. This argument also has been rejected by this Court and others. In fact, as the District Court observed in its Opinion regarding the Lawsuit,[5] the Plaintiffs agree that the statute of limitations began to run on their claims on September 13, 2012. Thus, if they had any claims at all, September 13, 2012, is the date as of which they knew of or should have been able to discover them, had they exercised diligence. Moreover, it is contradictory for Plaintiffs to assert that *they* were unaware they had a claim, but in the same breath, argue that the *City* must have known that they did.

---

[4] They also claim to somehow have been unaware that the City had filed for bankruptcy protection until 2015. *See, e.g.*, Response, Ex. H., *Declaration of Debra Metris-Shamoon*, ¶¶ 11, 14 (declaring under penalty of perjury that one of the Plaintiffs, despite being aware of media reports regarding the City's narcotics unit, was unaware that the City itself had filed for bankruptcy protection).

[5] Capitalized but undefined terms have the meanings ascribed to them in the Motion.

Finally, the Plaintiffs argue that the City should be barred both by equitable estoppel and by laches from filing its Motion, but these arguments are unavailing. Regarding estoppel, the Plaintiffs do not (and cannot) point to any representation that the City made on which they could have relied. Indeed, the Plaintiffs only say that the City delayed in asserting its discharge as a defense. But, under binding Sixth Circuit case law, debtors are not obligated to raise discharge as a defense. Thus, delay in asserting discharge cannot qualify as a representation for estoppel purposes. Moreover, the Plaintiffs admit they were aware of the bankruptcy case when they filed their suit, so they cannot claim to be ignorant of the "true facts," as required for estoppel to apply. For similar reasons, laches is also inapplicable.

For these reasons, the Court should grant the City's Motion.

## II. Argument

### A. The Plaintiffs were unknown creditors. The publication notice City's Plan provided them with constructive notice of the City's bankruptcy case. They were not entitled to anything further.

#### 1. Debtors are not required to make an exhaustive search for claims such as the ones the Plaintiffs now assert.

It takes more than a few phone calls to the police department to put a municipality on notice that there may be a claim against it. That is essentially all that the Plaintiffs say that they did. As a result, they were not "known creditors" and they received the notice they were due.

The *Monson* court recently summarized which creditors must receive actual notice of a bankruptcy case and which may receive notice by publication.

> Bankruptcy law distinguishes between known and unknown creditors. Unknown creditors may be notified by publication; but known creditors are entitled to actual notice. Known creditors are those whose claims or identities are "readily ascertainable" by the debtor. Readily ascertainable means a debtor, through "reasonably diligent efforts" could discover a creditor's claim. "Reasonably diligent efforts" does not require impracticable and extended searches in the name of due process. Rather, a debtor must home in on its own books and records. Typically, that means the debtor has something in its possession, either a demand for payment or some communication with a debtor concerning the existence of the creditor's claim.

*Monson v. City of Detroit*, No. 18-10638, 2019 WL 1057306, at *9 (E.D. Mich. March 6, 2019) (citations and quotation marks omitted).

In *Monson*, a person was wrongly convicted and imprisoned pre-petition. *Id.*, at *1-6. He was released in 2017 and sued the City two years later. *Id.*, at *6. Just like the Plaintiffs, Monson alleged "that prior to the bankruptcy the City knew its police department had a pattern and practice of unconstitutional arrests and interrogations. And in its possession the police department had all the information it needed to conclude Monson was a victim of those unconstitutional patterns and practices." *Id.*, at *9. He argued that the police had sufficient information for the City to conclude that he had a claim. *Id.* Monson thus insisted that the City should have known he was a creditor and provided him actual notice of its case. *Id.* He

argued that his claims were not discharged because the City did not provide him with this notice. *Id.*

The District Court disagreed. At the time of the City's bankruptcy filing, Monson's claim against the City was foreseeable, but remained contingent on him overturning his conviction. *Id.*, at *9-10. And "neither Monson nor his lawyers in the clinic ever provided anything to the City that amounted to a demand for payment or a communication concerning the existence of his future claim." *Id.*, at *9. Thus, Monson was an unknown creditor and publication notice sufficed. *Id.*, at *9-10.

Though issued only recently, the *Monson* court's analysis already has been followed by at least one other court. *Burton v. Sanders*, No. 20-11948, 2021 WL 168543, at *9 (E.D. Mich. Jan. 1, 2021).

### 2. The Plaintiffs' brief interactions with the Detroit Police Department fail to constitute sufficient indication that the City should have been aware of their alleged claim.

The Plaintiffs claim that a handful of telephone calls to the Detroit Police Department and the release of Adam Shamoons' firearms without having to sign papers should have put the City on notice that Plaintiffs had a claim against the City. Response, Ex. H (Decl. of Debra Metris Shamoon), Doc. No. 13565-15, ¶¶ 9-10; Ex. G (Decl. of Adam Shamoon), Doc. No. 13565-14, ¶ 6-10. They also argue for many pages in their Response that the City was aware of problems in its police department. Even if all of these statements are true (and the City does not concede that they are),

- 5 -
39230686.8/022765.00213

13-53846-tjt    Doc 13588    Filed 06/24/22    Entered 06/24/22 16:24:55    Page 5 of 18

they are essentially the same allegations rejected in *Monson*. Indeed, the strongest allegation leveled by the Plaintiffs to put the City on notice of their alleged claims is that they "threatened to retain an attorney." Response, Ex. G (Decl. of Adam Shamoon), Doc. No. 13565-14, ¶ 9. This does not rise to the level of "either a demand for payment or some communication with a debtor concerning the existence of the creditor's claim." *Monson*, 2019 WL 1057306, at *9. The Plaintiffs thus were unknown creditors at the time of the City's bankruptcy filing.

This Court entered an order directing and approving the manner of publication for the notice of the claims bar date.[6] The Plaintiffs do not suggest that the City failed in any way to comply with this order. Thus, as unknown creditors, the Plaintiffs received sufficient notice of the claims bar date.

> **B. Plaintiffs' claims were within their fair contemplation as of 2012 and thus were pre-petition claims.**
>
> **1. This Court uses the "fair contemplation" test to determine when a claim arose.**

This Court has adopted the fair contemplation test to decide when a contingent or unmatured claim arises for bankruptcy purposes. Under the fair contemplation test, a claim arises pre-petition if the creditor "could have ascertained through the

---

[6] *Order, Pursuant to Sections 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(C), Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof*, Doc. No. 1782, ¶ 26. The *Burton* court noted this order in its analysis. *Burton*, 2021 WL 168443, at *5.

- 6-
39230686.8/022765.00213

13-53846-tjt    Doc 13588    Filed 06/24/22    Entered 06/24/22 16:24:55    Page 6 of 18

exercise of reasonable due diligence that it had a claim" at the time the petition was filed. *In re City of Detroit*, 548 B.R. 748, 763 (Bankr. E.D. Mich. 2016) (quoting *Signature Combs, Inc. v. United States*, 253 F. Supp. 2d 1028, 1037 (W.D. Tenn. 2003)). A plaintiff need not know for certain that it has an actionable claim because "certainty is not the standard. The standard is whether the contingent claim was within [the plaintiff's] fair contemplation." *Id.* at 767. If events giving rise to an alleged claim occur pre-petition, and a claimant is aware of these events pre-petition, then the claim is within the claimant's fair contemplation pre-petition, even if the claimant is not certain the claim is actionable until after the petition is filed. *Id.*

The Sixth Circuit recently stated that "[t]he statutory period [for a § 1983 claim] begins to run when the plaintiff <u>knows or has reason to know</u> that the act providing the basis of his or her injury has occurred." *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 n.8 (6th Cir. 2020) (citation and internal quotation marks omitted, emphasis added). The accrual date for a section 1983 claim is thus the date as of which a party could ascertain that it had a claim by exercising reasonable due diligence.

Three courts in this district have considered situations where a plaintiff was aware it had a claim against the City pre-petition but did not file a section 1983 claim against the City until after the petition date. In each case, the court concluded that the claim was within the plaintiff's fair contemplation pre-petition. *Burton*, 2021

WL 168543, at *4; *Monson*, 2019 WL 1057306, at *8-9; *Sanford v. City of Detroit*, No. 17-13062, 2018 WL 6331342, at *5-6 (E.D. Mich. Dec. 4, 2018).

> **2. The Plaintiffs' allegations and the District Court's Opinion show that their alleged claims were within their fair contemplation pre-petition.**

Here, the Plaintiffs do not dispute that the event giving rise to their alleged claims occurred on September 13, 2012; they acknowledge that on the first page of their Response brief. They explain in some detail how they contacted the Detroit Police Department several times over the following weeks. They were not motivated to investigate whether they might have a claim based on this event until 2015, however, when they saw media reports of other claimants attempting to pursue claims against the City. *See* Response, p. 3. Thus, they did not "exercise reasonable due diligence" until 2015, and want to use their delay as an excuse for why they did not contemplate that they had a claim until after the claims bar date had passed. This is not how the "fair contemplation" test works, though.

In fact, the District Court determined in its Opinion, attached as Exhibit 2 to the Motion, that the Plaintiffs were aware of their claim pre-petition: "Here, although the parties agree that the statute of limitations began to run on September 13, 2012, the date Plaintiffs became aware of the alleged constitutional violations, they disagree as to if, and for how long, the statute of limitations tolled." Opinion, p. 13 (Motion Ex. 6-2, Doc. No. 13532-2, p. 14 of 52) (emphasis added). As noted

39230686.8/022765.00213

previously, that means that September 13, 2012, is the date on which the Plaintiffs knew or had reason to know of their claims—i.e., the date as of which the claims were within the Plaintiffs' fair contemplation. *Garza*, 972 F.3d at 867 n.8. The fact that they waited a few years before investigating their potential claim does not convert it to a post-petition claim. *City of Detroit*, 548 B.R. at 763-67. Their claims (to the extent they had any) were pre-petition claims and are now barred because the Plaintiffs did not file a proof of claim as required. *Burton*, 2021 WL 168543, at *4; *Monson*, 2019 WL 1057306, at *8-9; *Sanford*, 2018 WL 6331342, at *5-6.

> **C. The Plaintiffs' discussion of equitable estoppel and laches are equally unavailing.**
>
> > **1. Equitable estoppel does not apply in this instance.**
> >
> > > **a. Equitable estoppel generally requires an affirmative assertion upon which a party relies to its detriment. It only applies to omissions where there is a duty to speak.**

The doctrine of equitable estoppel requires:

> 1) conduct or language amounting to a representation of material facts; 2) the party to be estopped must be aware of the true facts; 3) the party to be estopped must intend that the representation be acted on or act such that the party asserting the estoppel has a right to believe it so intended; 4) the party asserting the estoppel must be unaware of the true facts; and 5) the party asserting the estoppel must detrimentally and justifiably rely on the representation.

*Qassis v. Republic Bank (In re Luna Pier Land Dev., LLC)*, 325 B.R. 735, 739 (Bankr. E.D. Mich. 2005) (quoting *King v. Henderson*, 2000 WL 1478360, at *5 (6th Cir. Sept. 27, 2000)).

It is possible, though difficult, to make an estoppel argument based on a party's failure to speak, rather than on an affirmative representation, but only "where there exists a duty to make factual disclosures." *Louden v. Fed. Land Bank of Louisville (In re Louden)*, 106 B.R. 109, 112 (Bankr. E.D. Ky. 1989). As the Sixth Circuit explained,

> [b]efore there can be an estoppel by mere silence, facts must be alleged and proved showing a duty and opportunity to speak; that the party to be estopped knew or had reason to believe, that the holder of the obligation would rely on the silence of the party to be estopped, and did rely on his silence, and was injured thereby.

*C. I. T. Corp. v. Janis*, 418 F.2d 960, 982–83 (6th Cir. 1969).

### b. Under binding Sixth Circuit case law, debtors are not obligated to raise discharge as a defense.

Debtors have no duty to raise their discharge as a defense in any civil action, thanks to the Bankruptcy Code.

Section 524(a)(1) and (2) apply in chapter 9 bankruptcy cases. 11 U.S.C. § 901(a). Section 524(a)(2) states that a discharge "operates as an injunction against the commencement . . . of an action . . . to collect . . . any [debt discharged under section 944] . . . ." The Sixth Circuit has explained what this means.

> The concern of the drafters of § 524 was that a creditor whose debt was discharged would bring suit "in a local court after the granting of the discharge, and if the debtor failed to plead the discharge affirmatively, the defense was deemed waived and an enforceable judgment could then be taken against him or her." To avoid such abuses:

- 10 -

39230686.8/022765.00213

13-53846-tjt    Doc 13588    Filed 06/24/22    Entered 06/24/22 16:24:55    Page 10 of 18

> [S]ection 524(a) declares that any judgment on a discharged debt in any forum other than the bankruptcy court is null and void as it affects the personal liability of the debtor.... Accordingly, if a creditor brings a collection suit after discharge, and obtains a judgment against the debtor, the judgment is rendered null and void by section 524(a). The purpose of the provision is to make it absolutely unnecessary for the debtor to do anything at all in the collection action.

*Hamilton v. Herr (In re Hamilton)*, 540 F.3d 367, 372-73 (6th Cir. 2008) (quoting 4 COLLIER ON BANKRUPTCY ¶ 524.LH [1], at 524–61 (Sept.2005) (Lawrence P. King ed., 15th ed. rev.). For this reason, "a debtor need not raise his discharge in bankruptcy as an affirmative defense, because thanks to § 524(a) 'such an affirmative defense is unnecessary and has been since 1970.'" *Id.* at 373 (citation omitted).

In addition to section 524, the Plan includes a similar injunction, as discussed on pages 4 and 5 of the Motion. Plan, Art. III.D.5, pp. 50-51. Even if a creditor feels that a discharge injunction is erroneously entered as applied to it, it still must comply with the injunction until it seeks and obtains relief from the injunction. *See, e.g., Kravis, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 838 (7th Cir. 1998) (citing *United States v. United Mine Workers*, 330 U.S. 258, 293 (1947)). It cannot violate the injunction, then complain that the debtor failed to object to its violation of a court order. *See Hamilton*, 540 F.3d at 372-73.

39230686.8/022765.00213

> c. **The Plaintiffs point to no affirmative representation upon which to base their estoppel argument. Instead, they rely on the City's delay in asserting its discharge as a defense. Under Sixth Circuit law, they cannot use that delay to justify their violation of both section 524 and the Plan injunction.**

The Plaintiffs identify no plausible basis for their estoppel claim. They do not identify any City representation upon which they could have relied. They also do not claim that they were unaware of the City's bankruptcy case as of the date they filed their lawsuit. Response, Ex. H., *Declaration of Debra Metris-Shamoon*, ¶ 14. As such, they cannot claim that they were "unaware of the true facts." *Luna Pier Land Dev.*, 325 B.R. at 739. Instead, they essentially argue that they have gotten away with violating the discharge injunction for a while, and thus should be permitted to continue getting away with it. But, the City was never obligated to raise discharge as a defense. *Hamilton*, 540 F.3d at 372-73. Thus, the City's delay in doing so cannot constitute an "omission" for equitable estoppel, and the Plaintiff's attempt to assert equitable estoppel fails. *C. I. T. Corp.*, 418 at 982–83.

> 2. **Because a debtor is never required to raise the discharge injunction as a defense, laches does not apply. But, even if laches were applicable, it would not help the Plaintiffs here.**
>
>   a. **The first step in evaluating a laches is to determine whether it applies. It does not apply here.**

"Laches is the negligent and unintentional failure to protect one's rights." *Kehoe Component Sales, Inc. v. Best Lighting Prods., Inc.*, 796 F.3d 576, 584 (6th Cir. 2015) (quoting *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408

(6th Cir. 2002)). Application of laches is often left to the discretion of the trial court, though there are circumstances in which it will not apply at all. *See Chirco v. Crosswinds Cmtys., Inc.*, 474 F.3d 227, 231 (6th Cir. 2007). For example, laches usually cannot circumvent a legislature's judgment to shorten a statute of limitations. *Id.* at 231-33. Here, both the discharge injunction in the Plan and 11 U.S.C. § 524(a) prevent the invocation of laches because the City cannot be "late" in asserting a defense that it is not obligated to assert in the first instance. *Hamilton*, 540 F.3d at 372-73. In other words, because a debtor *never* needs to raise "discharge" as a defense, a debtor cannot "negligently" fail to protect its rights by not asserting its discharge.

By 2015, before they filed suit, the Plaintiffs were well aware of the City's bankruptcy case. Response, Ex. H., *Declaration of Debra Metris-Shamoon*, ¶ 14. Knowing of the City's bankruptcy, they sued anyway. The City was not obligated to raise discharge as a defense. *Hamilton*, 540 F.3d at 372-73. The Plaintiffs cannot now complain that they wasted their time and efforts pursuing the City in violation of the discharge injunction. Laches simply does not apply.

> **b.** **Even if laches could apply to a debtor's failure to raise "discharge" as a defense, it would not avail the Plaintiffs here as their position is unchanged.**

Even if laches were applicable, it requires more than delay. The delay must work some disadvantage to a party, such as the entry of (and reliance on) court orders

or reliance on the validity of a sale of property. *In re Ottoman*, 621 B.R. 768, 791-92 (Bankr. E.D. Mich. 2020). A delay that does not change the relative positions of the parties or convey an unfair advantage to a party will not support the application of laches. *NLRB v. Taylor Mach. Prods., Inc.*, 136 F.3d 507, 514 (6th Cir. 1998).

Here, the Plaintiffs do not and cannot point to any change in their relative position. They are still in the same position as they were before—barred from pursuing their claim by their failure to file a proof of claim and by the discharge injunction. The Plaintiffs' only complaint is that they incurred expenses as they litigated their case in violation of the City's discharge, which they should not have been doing in the first place. This is insufficient to invoke laches; if all it took was persistence and a debtor's lapse to break through a discharge injunction, then a discharge injunction (and section 524) would be of little protection.

        **c.**    **Laches does not help the Plaintiffs because the City's delay in raising discharge was not unreasonable and the City pursued other valid arguments in the interim.**

Further, as an equitable doctrine, laches requires a showing that a party failed to act diligently. If a party errs but corrects that error promptly, it argues against application of laches. *See Luna Pier Land Dev.*, 325 B.R. at 740. Likewise, if the party trying to assert laches acted itself improperly, it cannot seek to apply laches. *Id.* at 740-41.

Here, the City's previous counsel did not raise discharge as a defense even as it pursued other defenses to Plaintiffs' claims. When the City's previous counsel withdrew from this case in December of 2021,[7] the City of Detroit's Law Department reviewed the matter and noticed that Plaintiff's claims arose prepetition. In her next filing, counsel rectified the error by raising the issue to the District Court and referring the matter to undersigned counsel,[8] asking undersigned counsel to file the Motion. In contrast, the Plaintiffs sued the City post-petition, fully aware of the City's bankruptcy case, and in violation of both the Bankruptcy Code and the Plan discharge injunction. The City submits that, even were laches to apply (and the City contends it does not), then Plaintiffs have not shown that it should be applied under these circumstances. *Luna Pier Land Dev.,* 325 B.R. at 740-41.

---

[7] *See Stipulated Order of Substitution of Counsel*, Case No. 18-13683, Doc. No. 151, entered Dec. 7, 2021 (substituting Crystal Olmstead of the City of Detroit Legal Department for Crystal B. Olmstead in replacement of attorneys James M. Surwiec, Lindsey R. Johnson, and James P. Allen, Sr.).

[8] *See Joint Factual and Procedural Summary*, Case No. 18-13683, Doc. No. 156, filed Mar. 30, 2022, p. 6, stating

> Defendant claims the Plaintiffs' claims are barred by bankruptcy. The incident that is the subject of this lawsuit occurred in 2012. The City of Detroit filed for bankruptcy in 2013. The Plaintiffs did not file a claim in bankruptcy court; as such their claims are barred. Further, even if their claims were not barred, the recovery is limited based on the bankruptcy order. The City has referred this matter to its bankruptcy counsel for review.

## IV. Conclusion

For all of these reasons, the Court should grant the City's Motion and such further relief as it deems appropriate.

Dated: June 24, 2022

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Attorneys for the City of Detroit

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re:<br>City of Detroit, Michigan,<br>                Debtor. | Bankruptcy Case No. 13-53846<br>Judge Thomas J. Tucker<br>Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 24, 2022, he served a copy of the foregoing *Reply Brief in Support of City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris and Julia Metris* on counsel for Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris and Julia Metris, in the manner described below and via the Court's ECF system which will provide notice to all registered parties:

Via email:

Dennis A Dettmer
Dettmer & Dezsi, PLLC
1523 N. Main St.
Royal Oak, MI 48067
Email: ddettmeresq@yahoo.com

Michael R. Dezsi
Law Office of Michael R. Dezsi, PLLC
1523 N. Main St.
Royal Oak, MI 48067
Email: mdezsi@dezsilaw.com

DATED: June 24, 2022

>By: /s/ Marc N. Swanson
> Marc N. Swanson (P71149)
> 150 West Jefferson, Suite 2500
> Detroit, Michigan 48226
> Telephone: (313) 496-7591
> Facsimile: (313) 496-8451
> swansonm@millercanfield.com