UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | No. 13-53846 |
| Debtor. | Hon. Thomas J. Tucker |

_____ /

**SUPPLEMENTAL RESPONSE  TO COURT'S MARCH 30, 2022 ORDER AND RENEWED REQUEST FOR LIMITED DISCOVERY IN INTERESTED PARTY RICHARD SNYDER'S MOTION FOR (A) AN EVIDENTIARY HEARING AND (B) AN ORDER HOLDING THE MICHIGAN DEPARTMENT OF ATTORNEY GENERAL IN CONTEMPT AND GRANTING RELATED RELIEF**

## Introduction

On May 12, 2021, after learning that the Michigan Department of Attorney General's Office ("the Department" or "AG's Office") had violated this Court's August 13, 2013 Mediation Order (Dkt. No. 322, 8/13/13 Order) by disclosing confidential mediation documents, former Michigan Governor Richard Snyder ("Governor Snyder") filed his *Motion for (a) an Evidentiary Hearing and (b) an Order Holding the Michigan Department of Attorney General in Contempt and Granting Related Relief* (the "Motion") seeking an evidentiary hearing and order holding the Department in contempt.  (Dkt. No. 13361, 5/12/21 Mot.)  The Motion set off a flurry of briefing and led to a June 16, 2021 Hearing during which Governor

Snyder's counsel and counsel from the Department argued about the relief sought and the nature of the Department's violations. This Court followed with an order on June 17, 2021. (Dkt. No. 13399, 6/17/2021 Op & Order.)

On March 30, 2022, this Honorable Court ordered undersigned counsel for former Michigan Governor Richard Snyder to provide the Court with "any order requiring the use of a taint team by the Michigan Department of Attorney General to review documents, including the order or orders that were the subject of the application for leave that was denied by the Michigan Court of Appeals on March 24, 2022, in the case of *People of Michigan v. Nicholas Lyon*, No. 360124." (Dkt. No. 13527, 3/30/22 Order ("March 30 Order").) On April 13, 2022, Governor Snyder filed his initial response. (Dkt. No. 13538, 4/13/22 Response to Court's March 30 Order.) This supplemental response provides an update on the status of the state court taint proceedings and orders and Governor Snyder's to-date unsuccessful efforts to convince the state courts to claw back mediation and other privileged documents disclosed by the Department. In addition, this supplemental response presents new and troubling evidence that has arisen since April 13, 2022, of inaccurate statements of the AG's office to this Court in both pleadings and during the June 16, 2021 Hearing. In light of that new information Governor Snyder urgently renews his request for limited discovery, an evidentiary hearing, and an order holding the Department in contempt.

2

## I. Update on Taint Team Orders and Governor Snyder's unsuccessful efforts to intervene to prevent further improper disclosures to claw back privileged and bankruptcy court protected documents already disclosed

As an initial matter, Governor Snyder will provide an update on the various taint team orders. The requested "taint team" orders include:

- Judge Elizabeth A. Kelly's November 19, 2021 Order referenced by this Court in footnote 2 of its March 22 Order (Ex. 1);

- Judge Kelly's January 7, 2022 Order denying the Michigan Attorney General's ("AG's") Motion for Reconsideration (Ex. 2);

- Judge Kelly's February 10, 2020 Order denying Governor Snyder's Motion to Intervene in *People v. Lyon* to participate in taint team protocols (Ex. 3);

- The Michigan Court of Appeals Order denying the AG's Motion for Leave to Appeal (Ex. 4); and

- The AG's Application for Leave to Appeal (Ex. 5), Mr. Lyon's Answer (Ex. 6), and Governor Snyder's Amicus Brief (Ex. 7) (without exhibits) are included as a reference for the Court to the arguments made by the respective parties on this issue.

As referenced in the Court's March 30 Order, on June 16, 2021, this Court held oral argument on the Motion. During that hearing, this Court inquired whether any of the nine defendants in the state criminal cases were seeking relief regarding the Department's disclosure of privileged documents. (Ex. 8, 6/16/21 Hr'g Tr. 27-28.) At the time, neither Governor Snyder nor any of the other former State or City

3

of Flint officials who remain under indictment had taken formal action against the AG's Office in the Genesee County courts. (*Id*. at 28.)

In response to the Flint Criminal Team's utter disinterest in its ethical obligations and the Mediation Order of this Court, Governor Snyder on September 8, 2021, filed a motion in the 67th District Court seeking a protective order to temporarily halt all further document productions, prohibit the Flint Criminal Team from reviewing those documents, and to conduct an evidentiary hearing to determine how this all happened and what sanctions and other remedies are appropriate. (Ex. 9, 9/8/21 Snyder Mot. for PO.) Nicolas Lyon filed a similar motion in the 7th Judicial Circuit Court the day before. (Ex. 10, 9/7/21 Lyon Mot. for PO.) While Judge Crawford is holding Governor Snyder's motion for protective order in abeyance,[1] Judge Kelly has since issued several taint team orders in *People v. Lyon*. (*See* Exs. 1-3).

Judge Kelly took issue with the Flint Criminal Team's failure to implement a taint team, acknowledging the beneficial nature of taint teams in criminal prosecutions, which effectively shield a defendant's protected documents from the

---

[1] Judge Crawford held the motion in abeyance because proceedings before Judge Crawford are stayed pending Governor Snyder's appeal of Judge Crawford's denial of Governor Snyder's Motion to Dismiss for Lack of Jurisdiction by the One-Judge Grand Jury and Lack of Venue in the City of Flint. That appeal is pending before the Honorable F. Kay Behm of the Genesee County Circuit Court, who heard oral argument on April 28, 2022.

prying eyes of the prosecution and others. (Ex. 1, 11/19/21 Order 3-5.) Accordingly, Judge Kelly ordered "the People to implement a taint team to facilitate discovery," stating this was absolutely necessary to "mitigate[e] the potential of a future [constitutional] violation,"[2] and to "ensure a fair trial in this matter." (*Id.* at 6 (cleaned up).) As a result, discovery is now paused (at least in the proceedings before Judge Kelly in the 7th Circuit Court) "until the People can establish a taint/filter team to review the discovery." (*Id.* at 8.) Judge Kelly further ordered the Flint Criminal Team to "provide a detailed written protocol for the establishment and implementation of the taint team." (Ex. 2, 1/7/22 Order.) This protocol must be provided to each defendant for "review and approval," and "[i]f there are any terms or procedures that cannot be agreed to," then those issues must be brought to Judge Kelly's attention for resolution. (*Id.*)

The Department's disclosures in the underlying state court criminal cases are not limited to confidential mediation documents protected by this Court's Orders. Rather, that violation of the Court's order is a result of the Flint Criminal Team's refusal to screen for other confidential, privileged documents despite repeated warnings, in utter disregard of the due process rights of the nine criminal defendants under indictment, including Governor Snyder.

---

[2] The Court noted it was not "currently tasked with determining whether a constitutional violation exists," thereby refusing to render an opinion on the existence of such a violation. (Ex. 1, 11/19/21 Order 6.)

In addition to confidential mediation documents protected by this Court's Orders, it is now beyond dispute that the Flint Criminal Team's initial document productions are riddled with other documents protected from disclosure under the doctrines of mediation privilege, executive privilege, attorney-client communication privilege, and work-product. The Flint Criminal Team even disclosed communications regarding Governor Snyder's legal strategy in the underlying criminal prosecution. (*See, e.g.*, Privilege log regarding examples of privileged materials in People's 3/30/21 production (Ex. 11, 9/8/21 Snyder Mot. for PO at Ex. D-22).)

The privileged information disclosed to date is not solely Governor Snyder's. The Flint Criminal Team's initial document productions also contain privileged communications between former Michigan Department of Health & Human Services Director Nicolas Lyon, Richard Baird, and the other defendants with their respective counsel. Thus, the Flint Criminal Team produced Governor Snyder's privileged information to the other defendants (including confidential mediation documents), and similarly produced the other defendants' privileged information to Governor Snyder. On review, Governor Snyder estimates that over 24,000 documents in the March 30, 2021 production alone (just a single production out of several) may be subject to this Court's mediation orders and attorney-client, work-product privilege.

Contrary to what the Department represented at the June 16, 2021 hearing, the Flint Criminal Team, led by Solicitor General ("SG") Fadwa Hammoud, was fully aware that the documents seized likely contained sensitive, confidential material. They produced it *despite* receiving express warnings from attorneys both outside and inside the AG's office, both before and after SG Hammoud and her Flint Criminal Team executed search warrants on the Department's Flint Civil Team and its e-Discovery vendor. Specifically, AG Nessel, SG Hammoud, and/or their staffs received the following warnings:

- On February 11, 2019, Assistant Attorney General ("AAG") Peter Manning informed AG Dana Nessel and others about the need to inform SG Hammoud that the Flint Civil Team needed to review the contents of 12 boxes of material to avoid "the potential that evidence could be tainted." (Ex. 12; Email from P. Manning to AG Nessel, 2/11/19);

- On March 28, 2019, AAG Richard Kuhl wrote to SG Hammoud explaining how the documents were produced to her predecessor, the Office of Special Counsel ("OSC") and requesting to meet with her to specifically discuss "how to handle privilege issues" in the documents related to Flint water crisis, among other things. (Ex. 13; Email from R. Kuhl to F. Hammoud, 3/28/19);

- On May 7, 2019, Deputy AG ("DAG") Christina Grossi, referring to an earlier meeting with SG Hammoud writes, "we wanted to alert you that there could be attorney-client privileged information contained on them. To the extent that there is privileged information contained on the hard drives, the State does not want its cooperation to be construed as a waiver of any of our privileges." (Ex. 14; Email from C. Grossi to F. Hammoud, 5/7/19);

- On May 28, 2019, Director Lyon's counsel warned SG Hammoud that the indiscriminate seizure of data "may very well include privileged attorney-client communications and attorney work product." (Ex. 15, 5/28/19 Ltr. from C. Chamberlain to SG Hammoud.); and

- On July 11, 2019, Flint Civil AAG Eric Jamison wrote to the Flint Criminal Team (and copying DAG Grossi) that "some of the information you may be seeking could be protected by the attorney-client communication privilege, the attorney work product doctrine, or deliberative process privilege" and that "[a]n in-person interview would be very cumbersome in terms of dealing with potential privilege issues." (Ex. 16; Email from E. Jamison to S. Miller, 7/11/19).

Then, immediately after the indictments were unsealed in January 2021, Governor Snyder's counsel raised this exact issue with SG Hammoud, asking multiple times—both in open court and in writing—whether a taint or filter team had been put into place to ensure privileged documents were not improperly disclosed to the prosecution. (Ex. 17, 1/20/21 Ltr. from B. Lennon to SG Hammoud.) On April 13, 2021, Governor Snyder's counsel wrote SG Hammoud again, requesting that an independent taint or filter team be established to identify and claw back all the privileged and protected documents that the prosecution had already improperly disclosed. (Ex. 18, 4/13/21 Email from B. Lennon to SG Hammoud.) SG Hammoud refused.

Even lawyers from within the AG's Office renewed their warnings to the Flint Criminal Team that its search warrants had swept up thousands of privileged and confidential documents. On April 2, 2021, AAG Richard Kuhl, a civil-side AAG,

warned SG Hammoud in an e-mail that the seized documents "likely contain thousands of privileged communications between assistant attorney general[s] and their client agencies." (Ex. 19, 4/2/2021 Email from R. Kuhl to SG Hammoud.) And even after the Flint Criminal Team began producing these documents, AAG Margaret Bettenhausen, also a civil-side AAG, sent an email to numerous attorneys (but not to Governor Snyder's attorneys), stating, "[i]t has recently come to our attention that your law firm has received documents that are from the materials seized via search warrant from the Michigan Department of Attorney General and our vendor, KL Discovery. Many of those documents are subject to the attorney client privilege or constitute attorney work product." (Ex. 20, 4/9/2021 Email from M. Bettenhausen to Law Firms.) Indeed, these warnings were ignored, as the Flint Criminal Team continued to review and produce even more privileged and protected information to Governor Snyder, Director Lyon, and the other defendants weeks later.[3]

---

[3] Specifically, on April 28, 2021, the prosecution produced even more documents protected by the attorney-client privilege, including emails between Governor Snyder's in-house counsel and Warner Norcross + Judd LLP attorneys regarding the 2016 Investigative Subpoena. (*See*, e.g., AG-SG-PROD0022-0000371440; AG-SG-PROD0022-0000371839; AG-SG-PROD0023-0000232419.) To protect Governor Snyder's attorney-client privilege and work product communications, these documents will be provided to this Court for *in camera* review upon request.

Unfortunately, there is no relief for Governor Snyder in Judge Kelly's orders, nor vindication of this Court's mediation order, because Judge Kelly's orders do not cover confidential bankruptcy mediation documents and Judge Kelly denied Governor Snyder's Motion to Intervene in *People v. Lyon* for the limited purpose of having "a seat at the table" regarding taint team protocols. Judge Kelly denied Governor Snyder's motion but noted, without explanation or detail, that his privileges would be protected. (*See* Ex. 3.) Governor Snyder's efforts to work cooperatively with the Flint Criminal Team to protect mediation and other privileged documents have similarly been rebuffed. Before his request to intervene, on December 9, 2021, Governor Snyder's counsel sent SG Hammoud a letter requesting the opportunity to work together in a collaborative fashion, specifically citing the concerns raised by this Court regarding any further disclosure of confidential mediation documents. (Ex. 21, 12/9/21 Ltr. from B. Lennon to SG Hammoud.) SG Hammoud never responded.

Nearly seven months after Judge Kelly ordered the Government to initiate a taint team, on June 1, 2022, the AG's Office *finally* provided its initial proposal for the establishment of that team. (*See* Ex. 22, 6/1/22 AG Ltr.) The AG's Office did not include Governor Snyder's attorney in that correspondence despite the fact that Judge Kelly had stated in her order denying Governor Snyder's motion to intervene that his privileges would be protected. Mr. Lyon's counsel responded on July 22,

2022. (Ex. 23, 7/22/22 Ltr. from R. DeWaard to AG's Office.) Counsel for Mr. Lyon stated, as an initial matter, that, as "you presupposed in your letter, [your] proposal is woefully inadequate to comply with Judge Kelly's November 19, 2021 and January 7, 2022 Orders requiring the establishment of a taint team." (*Id.*) He continued: "It is disappointing that *seven months* after being ordered to do so, the People provided a proposal that fails to address even basic taint team protocols and concerns, reflecting either a lack of real work on the project and/or the lack of a good faith effort to comply with the Court's Orders." (*Id.* (emphasis added).)

## II. New Evidence that the AG's Office misled this Court during the June 16, 2021 hearing when it represented that the conflict wall prevented communications between members on either side of the conflict wall.

Governor Snyder recently received documents in response to FOIA requests that call into question the accuracy of statements the AG's Office made to this Court both at the June 16, 2021 oral argument and in the AG's pleadings. This development underscores the urgency of Governor Snyder's requested relief for limited discovery. Governor Snyder respectfully renews that request here.

At that hearing, the Department's Chief Legal Counsel John VanDeventer went to great lengths to explain the impenetrable conflict wall preventing attorneys in the AG's Office on the civil and criminal sides of the Flint matter from communicating with each other. Indeed, a review of VanDeventer's strong assertions indicates how stark the supposed-conflict wall was and how it prevented

communications from the attorneys on either side. VanDeventer stated that "the whole point of the conflict wall, *is to block the flow of information* on a particular matter or a particular case between parties who otherwise would interact with each other." (Ex. 8, 6/16/21 Hr'g Tr. 37 (emphasis added); *see also id.* at 46 ("The whole point of an ethical wall is to protect the flow of information from one side to the other."))

It was this conflict wall that prevented the criminal team from even knowing of the mediation privilege. According to VanDeventer:

> [W]hen the criminal team received these documents, pursuant to a search warrant, they had no ability to go to the attorneys on the other side of the conflict wall and say, can we go through these documents with you and determine what, if any, privilege applies to each and every one. There's a block on the flow of information between the two teams. [*Id.* at 43.]

In short, the criminal attorneys were barred from "consult[ing] with the civil team about how to use the documents [once] they were seized pursuant to the court order." (*Id.*) This meant that that there were two separate "teams within the Department that have completely separate knowledge from each other." (*Id.* at 46.) "That's the whole point of the wall." (*Id.*)

And it was the conflict wall that led to the violations of this Court's Order regarding mediation materials. As VanDeventer explained, what the conflict wall "does prevent us from doing is consulting with the civil team about potential court

orders that may apply to any one of the 20 million documents that were seized as part of the search warrant." (*Id.* at 48.) The attorneys simply could not communicate about these important matters because they were "walled off from discussing [Flint] with each other." (*Id.* at 49.) According to VanDeventer, this was the clear meaning of the "very broad" Fifth Amended Notice of Conflict Wall: "[T]he members of the civil team are prohibited from engaging in *any* discussions concerning the Flint water crisis criminal matters with members of the criminal team." (*Id.* (emphasis added) (citing to Dkt. No. 13375-3).)

Indeed, VanDeventer denied any breaching of the wall. He rejected the idea that "somehow that [the conflict wall] has been breached because there has been hundreds of meetings between the two [sides] over the past two years." (*Id.* at 36.) While VanDeventer conceded that the Solicitor General and Attorney General had met "regularly on any number of matters," these had "absolutely nothing to do with the Flint water crisis." (*Id.* at 37.) VanDeventer reassured this Court that the AG's office "take[s] the conflict wall *very* seriously." (*Id.* at 50 (emphasis added).)[4]

---

[4] VanDeventer stated that "if we had sat down and walked through the documents with the civil team that we received pursuant to the search warrant, the complaint we would be hearing from the criminal defendants would be that we violated the conflict wall." (Ex. 8, 6/16/21 Hr'g Tr. 50.) Yet, at the same time, VanDeventer contradicted himself, stating, "when the issue of the mediation documents was raised . . . we did reach out to the . . . civil team and said the allegations in this motion are that there are confidential mediation documents and we worked with them to craft the language for this amended protective order." (*Id.* at 51.) Perhaps this was VanDeventer's tacit way of acknowledging that the flow of information between the

Unfortunately, VanDeventer's words are more fable than truth. Documents obtained via FOIA requests and now in Governor Snyder's possession demonstrate that the conflict wall both *before* and *after* the June 2021 hearing has been more like an open door. Thus, even when VanDeventer assured this Court that the conflict wall prevented the flow of "any" information between either side of the wall, the AG's Office already had been waltzing through that wall as if it were not there at all. The AG's Office has continued the broad exchange of information over and through the wall since then, most particularly with respect to modifications to the protective order in Michigan state court.

## A.     Pre-Hearing communications between both sides of the conflict wall.

The FOIA documents demonstrate that there were dozens of emails exchanged between members of the Flint Criminal and Flint Civil teams between February 11, 2019 and this Court's June 16, 2021 oral argument on Governor Snyder's pending Motion.[5] For instance, on March 16, 2021, in response to an inquiry from State Senator Runestad and the Detroit Free Press, attorneys on both

---

two sides of the wall was not as prohibited as he repeatedly insisted during the hearing. At the very least, he should have to explain himself and the actions of the Attorney General's office. Thus, this is yet another reason for this Court to grant Governor Snyder his requested relief.

[5] The complete set of FOIA documents is quite voluminous and thus Governor Snyder has not attached them all to this supplement. However, Governor Snyder can make the complete set available if the Court desires.

sides of the walls exchanged emails regarding the proper response. (Ex. 24, 3/16/21 Rossman-McKinney Email to Multiple Attorneys.) Criminal and Civil attorneys chimed in on how best to word the response. Among those weighing in were AG Nessel (Civil), SG Hammoud (Criminal), and DAG Grossi (Civil), among others. Indeed, Nessel sent an email to the whole group telling them that the final answer looked good. (Ex. 25, 4/16/21 Nessel Email to Multiple Attorneys.)

That same day, Nessel and Hammoud emailed with the AG's communications team seemingly about the statement. (Ex. 26, 4/16/21 Rossman-McKinney Email to Nessel, Hammoud, and Amber McCann.) And within that discussion, one can see that Hammoud directly emailed Nessel about the process for charging persons in the Flint water investigations. (*Id.*)

Likewise, in preparing Nessel for a talk to the Genesee County Bar Association, civil *and* criminal members of the Flint team exchanged emails about what Nessel could and could not say in response to questions about the Flint situation from the association. (Ex. 27, 2/19/21 R. Kuhl Email to Nessel, Hammoud, et al.) The Attorney General's communications director specifically emailed people on both sides of the conflict wall asking them to weigh in on the questions. (*Id.*)

That was not all. Despite VanDeventer's claims that the conflict wall "prohibited" persons on both sides of the wall from "*any* discussions concerning the Flint water crisis," (Ex. 8, 6/12/21 Hr'g Tr. 49 (emphasis added)), the criminal side

of the wall frequently sent updates about the criminal case to members on both sides of wall. For instance, on March 8, 2021, Hammoud provided an update to Nessel (Civil), Grossi (Civil), VanDeventer (Criminal) and a number of others regarding a hearing in Jarrod Agen's case. (Ex. 28, 3/8/21 Hammoud Email to Nessel, Grossi, VanDeventer, et al.) Ten days later, on March 18, 2021, Hammoud gave an update regarding Governor Snyder's motion to quash to Nessel (Civil), Grossi (Civil), VanDeventer (Criminal) and a number of others. (Ex. 29, 3/18/21 Hammoud Email to Nessel, Grossi, VanDeventer, et al; *see also*, Ex. 30, 3/30/21 Hammoud Email to Nessel, Grossi, VanDeventer, et al.)

The month before this Court's hearing on the question of the mediation order, VanDeventer himself emailed Nessel the response brief filed with this Court. (Ex. 31, 5/26/21 J. VanDeventer Email to Nessel.) While VanDeventer gave little background, the email belies his claim that he and Nessel do not communicate regarding the Flint Water Investigation—despite being on different sides of the conflict wall.

## B. Post-Hearing communications between both sides of the conflict wall.

The wall was just as porous after VanDeventer's assurances to this Court. For instance, as this Court may recall, VanDeventer attempted to persuade this Court at oral argument that the state court protective order covered the Detroit Bankruptcy

Mediation documents. But this Court quickly saw through that smokescreen. The Court stated:

> I think the point I think of the contempt motion really is that—and part of what I'm focusing on here is, there's— the mediation confidentiality orders entered by this Court didn't just say you can produce these mediation-related documents to somebody as long as there's some court order requiring them to keep them quiet, or some protective order. It's broader than that. It says, these documents shall not be disclosed. Period. And that means to anyone. And these were disclosed, these documents were disclosed to the nine defendants in these criminal cases and their attorneys and they were disclosed by a department, Michigan Department of Attorney General, that had knowledge of the mediation order. [Ex. 8, 6/16/21 Hr'g Tr. at 47-48.]

Despite the clear statement from this Court that a state court protective order could not excuse the Department's conduct, immediately after the hearing, the Department (both Criminal and Civil sides working together) worked up an amended protective order to try to excuse its conduct. In those discussions, members of both sides of the wall were weighing in on the best possible language for the amended protective order. For instance, in a July 21, 2021 email, Peter Manning (Civil) sent an email back to VanDeventer (Criminal) regarding proposed language in one paragraph of the protective order. (Ex. 32, 7/21/21 P. Manning Email to VanDeventer, et al.) Included on the email were Nessel, Grossi, Hammoud, and Osikowicz. (*Id.*) A day later, VanDeventer responded saying that the criminal team was good with

Manning's edits. (Ex. 33, 7/22/21 J. VanDeventer Email to Manning.) Nessel thanked everyone a short time later for their work. (Ex. 34, 7/22/21 D. Nessel Email to Group.)

The very next day, Manning responded to an email Osikowicz circulated with a revised draft of the protective order to VanDeventer, Grossi, Manning, and Hammoud, yet again violating the conflict wall. (Ex. 35, 7/23/21 P. Manning Email to Osikowicz.) There were still more edits and the civil and criminal Flint Water attorneys continued to discuss the protective order as evidenced by an email from Hammoud to the entire group thanking them for the edits and urging filing as soon as possible. (Ex. 36, 7/23/21 F. Hammoud Email to Group.) Nessel responded later that day stating: "Nice Work, everyone!" (Ex. 37, 7/23/21 D. Nessel Email to Group.) A week later, the Department submitted its Amended Motion for an Amended Protective Order to try to cover its tracks. (Ex. 38, 7/29/21 Amended Motion for an Amended Prot. Order.)[6]

Many from the same group—civil *and* criminal—were exchanging emails to review a short supplemental statement for this Court informing it of the filing of the

---

[6] All this Court need do to understand the Department's attempted ploy is compare Paragraph 1.b. of the proposed amended protective order (which expressly references the "Detroit Mediation Documents") with the actual protective order (which does not reference the "Detroit Mediation Documents" (see Dkt. No. 13375-6)). Judge Kelly summarily denied the Department's Amended Motion.

motion for an amended protective order. (Ex. 39, 7/30/21 P. Manning Email to Group.) VanDeventer solicited comments from both sides of the wall on the document. (Ex. 40, 7/30/21 J. VanDeventer Email to Group.)

The criminal side of the wall continued to give updates to members of both sides of the wall. For instance, Bryant Osikowicz, a member of the criminal team, sent updates to Hammoud *and* Nessel about a Flint criminal hearing on August 10, 2021. (Ex. 41, 8/10/21 B. Osikowicz Email to Nessel & Hammoud.) A month later, Osikowicz emailed Nessel, Hammoud, Grossi, and others about a hearing adjournment. (Ex. 42, 9/10/21 B. Osikowicz Email to Nessel, Hammoud, et al.) In October, Osikowicz gave an update about another hearing. (Ex. 43, 10/10/21 B. Osikowicz Email to Nessel, Hammoud, et al.)

The Solicitor General was involved in such wall-breaking conversations as well. For instance, Hammoud forwarded an update to Nessel from Chris Kessel on the criminal side. (Ex. 44, 6/25/21 F. Hammoud to Nessel Email.) The next month Hammoud forwarded an update about a motion to compel in Judge Kelly's courtroom to Nessel, Grossi, and VanDeventer. (Ex. 45, 7/14/21 F. Hammoud Email to Nessel, Grossi, VanDeventer, et al.)

The takeaway is that the Attorney General's office either has a flawed understanding regarding what blocking the flow of information between the two sides of the wall means or was telling this Court one thing while doing another.

Recall that according to VanDeventer, the conflict wall is "very broad" and means that "members of the civil team are *prohibited* from engaging in *any* discussions concerning the Flint water crisis criminal matters with members of the criminal team." (Ex. 8, 6/16/21 Hr'g Tr. at 49 (emphasis added) (citing to Dkt. No. 13375-3).) The numerous emails cited above—which are just a sample of those received—contradict that statement. The conflict wall is a sham, and the Attorney General's office has ignored it. This Court should order limited discovery and an evidentiary hearing to get to the bottom of the Department's lack of candor with this Court.

## Conclusion

This Court should grant Governor Snyder's requested relief. Governor Snyder has been stymied in his efforts to have a seat at the table in the state circuit court's taint team protocol determination. More importantly, the state courts have already declined to hold the Department accountable for its breach of this Court's mediation order meaning his recourse before this Court is even more critical. Accordingly, Governor Snyder asks this Court to grant his motion.

Respectfully submitted,

Dated: August 8, 2022

*/s/ Stephen B. Grow*
Brian P. Lennon
Charles N. Ash
Stephen B. Grow
WARNER NORCROSS + JUDD LLP

150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
616.752.2000
blennon@wnj.com
cash@wnj.com
sgrow@wnj.com

Attorneys for Interested Party Richard
Snyder

26756222-14