# Exhibit 1

**STATE OF MICHIGAN**

**IN THE 7TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF GENESEE**

PEOPLE OF THE STATE OF MICHIGAN,

|  |  |
|---|---|
| Plaintiff, | Case No. 21-047372-FH (Agen) |
| | 21-047373-FH (Ambrose) |
| v | 21-047374-FH (Ambrose) |
| | 21-047375-FH (Baird) |
| JARROD AGEN | 21-047376-FH (Earley) |
| GERALD AMBROSE | 21-047377-FH (Earley) |
| RICHARD BAIRD | 21-047378-FH (Lyon) |
| DARNELL EARLEY | 21-047379-FH (Peeler) |
| NICOLAS LYON | 21-047380-FH (Wells) |
| NANCY PEELER | |
| EDEN WELLS, | HON. ELIZABETH A. KELLY |
| Defendants. | |

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S "MOTION FOR PROTECTIVE ORDER AND DISCOVERY PURSUANT TO MCR 6.201(E) AND 6.201(J)"**

At a session of said Court held in the Courthouse,
In the City of Flint, County of Genesee, Michigan
Friday, November 19, 2021:

PRESENT: THE HONORABLE ELIZABETH A. KELLY

**BACKGROUND**

Defendant, NICOLAS LYON, filed with this Court a "Motion for Protective Order and Discovery Pursuant to MCR 6.201(E) and 6.201(J)", in the above-captioned cases. Oral arguments were heard on October 12, 2021, and the above referenced defendants joined in Defendant's motion. Therefore, this order is controlling over all above-captioned cases.

On April 7, 2021, this Court entered protective orders in *People v Agen*, *People v Ambrose*, *People v Baird*, *People v Earley*, *People v Lyon*, *People v Peeler*, and *People v Wells*, which were stipulated to by all defendants. Now, among other things, Defendant seeks an additional protective

1

order. More specifically, Defendant requests this Court to (1) enter a protective order barring the People from reviewing or producing any seized documents until a protocol can be established to allow for the proper evaluation of the privileged material, (2) enter an order authorizing Defendant to seek discovery into the People's seizure, review, and production of privileged documents, and (3) set a status conference to discuss the proposed discovery into the taint issue and the appropriate protocol for the review of the documents for privilege by an outside party.

**ANALYSIS**

**I.    INTRODUCTION**

"On a motion and a showing of good cause, the court may enter an appropriate protective order." MCR 6.201(E). MCR 6.201(E) provides guidance on what a court may consider when determining "good cause." MCR 6.201(E) states in relevant part:

> In considering whether good cause exists, the court shall consider the parties' interests in a fair trial; the risk to any person of harm, undue annoyance, intimidation, embarrassment, or threats; the risk that evidence will be fabricated; and the need for secrecy regarding the identity of informants or other law enforcement matters.

Notably, if this Court finds "good cause" and enters a protective order, "it must seal and preserve the record of the hearing for review in the event of an appeal." *Id.*

"[T]here is no right to discover information or evidence that is protected from disclosure by constitution, statute, or privilege, including information or evidence protected by a defendant's right against self-incrimination, except as provided in subrule (2)." MCR 6.201(C)(1) Additionally, if a party fails to abide by MCR 6.201, this Court, "may order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances." MCR 6.201(J). According to the Michigan Court of Appeals, "[w]hen determining the appropriate remedy for discovery violations, the trial court must

2

balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252 (2002).

## II. ATTORNEY-CLIENT PRIVILEGE

The attorney-client privilege has a long history in the common-law and in Michigan's statutory authority. In 1883, the Michigan Supreme Court held, "[t]here is a privilege of secrecy as to what passes between attorney and client . . . ." *Passmore v Passmore's Estate*, 50 Mich 626, 627 (1883). Likewise, MCL 767.5a(2) states, "[a]ny communications between attorneys and their clients . . . are hereby declared to be privileged and confidential when those communications were necessary to enable the attorneys" to serve as legal counsel. The privilege, is designed "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Leibel v Gen Motors Corp*, 250 Mich App 229, 237 (2002) (quoting *Upjohn v United States*, 449 US 383, 389 (1981)). In other words, "[t]he purpose of the privilege is to allow a client to confide in his or her attorney secure in the knowledge that the communication will not be disclosed." *People v Waclowski*, 286 Mich App 634, 693 (2009). Notably, the attorney-client privilege is personal to the client, and only the client has the authority to waive it. *Id.* at 693-94.

Likewise, the attorney work-product doctrine ensures that "any notes, working papers, memoranda, or similar materials, prepared by an attorney in anticipation of litigation are protected from discovery." *Leibel*, 250 Mich App at 244. Pursuant to MCR 2.302(B)(3)(a), the attorney work-product doctrine states, "in ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a part concerning the litigation." In fact, the United States Supreme Court held, "it is essential that a lawyer work with a certain

3

RECEIVED by MSC 5/18/2022 2:30:38 PM

degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v Taylor*, 329 US 495, 510 (1947). Notably, the Court defined work-product as "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." *Id.* at 511. "At its core, the work-product doctrine shelters the mental processes of the attorney providing a privileged area within which he can analyze and prepare his client's case." *United States v Nobels*, 422 US 225, 238 (1975).

### (1) THE PURPOSE OF TAINT TEAMS

As mentioned above, the attorney-client privileges protect parties from the production of privileged materials. Here, Defendant alleges that the People violated this privilege by producing and reviewing privileged materials. Central to this allegation is the fact that the People did not use a team of prosecutors and/or agents unconnected to the proceeding who could review and evaluate whether materials seized included privileged documents. In other words, Defendant takes issue with the fact that the People did not use a taint team.

Taint teams are used by prosecutors in some criminal cases where search warrants may result in the discovery of privileged materials. As indicated by the Michigan Court of Appeals, "[i]n the case where a potentially privileged communication does get caught up in an otherwise lawful search, there are also steps that can be taken to identify and segregate privileged information from the rest, including filter agents or taint teams." *People v Joly*, 2021 WL 935704 at *7. Other courts have further emphasized the importance of taint teams in specific circumstances. The United States Sixth Circuit Court stated, "government taint teams seem to be used primarily in limited, exigent circumstances in which government officials have already obtained the physical control of potentially-privileged documents through the exercise of a search warrant." *In re Grand Jury Subpoenas*, 454 F3d 511, 522 (6th Cir 2006). As such, "the potentially-privileged documents are already in the government's possession, and so the use of the taint team to sift the wheat from the

4

RECEIVED by MSC 5/18/2022 2:30:38 PM

chaff constitutes an action respectful of, rather than injurious to, the protection of privilege." *Id.* Here, the People did not implement a taint team and the Defendant alleges that the documents seized contain privileged material.

## (2) THE GOOD CAUSE REQUIREMENT

Here, the question is a simple one: whether the Defendant has demonstrated the good cause necessary for this Court to enter a new protective order. As before mentioned, "[o]n a motion and a showing of good cause, the court may enter an appropriate protective order. MCR 6.201(E). As stated in MCR 6.201(E):

> In considering whether good cause exists, the court shall consider the parties' interests in a fair trial; the risk to any person of harm, undue annoyance, intimidation, embarrassment, or threats; the risk that evidence will be fabricated; and the need for secrecy regarding the identity of informants or other law enforcement matters.

Therefore, this Court may enter a protective order after determining that "good cause" exists to promote a fair trial.

Defendant alleges that the People are in possession of privileged materials belonging to the defendants in the above-mentioned cases. The Defendant also alleges that the People have reviewed and produced privileged materials and plan to continue reviewing and producing more privileged materials. As a result, Defendant claims that he has demonstrated the "good cause" necessary for the issuance of a new protective order in this matter.

Conversely, the People oppose the issuance of a protective order because they deny violating the Defendant's attorney-client privilege and because Defendant has not demonstrated "outrageous misconduct by the government." See *Joly*, 2021 WL 935704, at *4. However, the issuance of a protective is not contingent on determining whether the government's actions were "outrageous misconduct." Instead, this Court is simply tasked with determining whether there is "good cause" to enter the proposed protective order. Unfortunately, the People provided little

5

written argument disputing the presence of "good cause"—instead focusing on whether Defendant proved a constitutional violation.

Despite not currently tasked with determining whether a constitutional violation exists, this Court is interested in mitigating the potential of a future violation. Although likely slowing the discovery process, taint teams are commonly used to prevent the dissemination and review of privileged materials and this Court believes that the use of a taint team will help ensure a fair trial in this matter. Moreover, this Court believes that the burden of a taint team on the People will be slight in contrast to the benefits it will provide in this case. The taint team will protect defendants' attorney-client privilege, while shielding the People from allegations of constitutional violations. As a result, Defendant has demonstrated "good cause" because the use of a taint team will promote the parties' interest in a fair trial. Therefore, this Court orders the People to implement a taint team to facilitate the discovery in this matter.

## III.    REQUEST FOR ADDITIONAL DISCOVERY

Defendant requests an evidentiary hearing to flesh out his allegations against the People. The People object to Defendant's request and insist that there are other remedies that are more appropriate if the Court determines that there were violations of the attorney-client privilege.

A defendant is generally entitled to an evidentiary hearing where the admissibility of evidence is challenged on constitutional grounds. *People v Reynolds*, 93 Mich App 516, 519 (1979). However, "where it is apparent to the court that the challenges are insufficient to raise a constitutional infirmity, or where the defendant fails to substantiate the allegations of infirmity with factual support, no hearing is required." *People v Johnson*, 202 Mich App 281, 285 (1993). This Court's decision "whether to hold an evidentiary hearing is reviewed for an abuse of discretion." *People v Unger*, 278 Mich App 210, 216–17 (2008). Notably, "[a]n abuse of discretion

RECEIVED by MSC 5/18/2022 2:30:38 PM

occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id.* at 217.

The attorney-client privilege is not a constitutional right because a "[v]iolation of the privilege is not, by itself, tantamount to a due-process violation and alone does not warrant suppression of derivative evidence." *Joly*, 2021 WL 935704 at *5. However, "[c]ase law has long recognized that outrageous misconduct by the government in detecting and obtaining incriminating evidence can rise to the level of a due-process violation." *Id.* "When the violation occurs in the context of gathering pretrial evidence, courts have developed a remedy referred to as the 'exclusionary rule.'" *Id.*

Moreover, in *Joly*, the Michigan Court of Appeals outlined the elements necessary to show a colorable claim of "outrageous misconduct." *Id.* More specifically, the court stated:

> To make a colorable claim of 'outrageousness,' a defendant must show all of the following: "(1) the government's objective awareness of an ongoing, personal attorney-client relationship between [the attorney] and the defendant; (2) deliberate intrusion into that relationship; and (3) actual and substantial prejudice."

*Id.*

Here, the key issue is whether an evidentiary hearing is appropriate. As mentioned above, a defendant is generally entitled to an evidentiary hearing where the admissibility of evidence is challenged on constitutional grounds. *Reynolds*, 93 Mich App at 519. However, a violation of a privilege is not a due-process violation unless there is a colorable claim of outrageous misconduct. *Joly*, 2021 WL 935704 at *5. Therefore, Defendant is entitled to an evidentiary hearing if he is able to show "outrageous misconduct" by the prosecution.

Here, Defendant asserts privilege over documents that were disseminated through discovery. However, Defendant is unable to demonstrate all the factors required to show "outrageous misconduct." In particular, Defendant is unable to show actual and substantial prejudice. Notably, Defendant has not made a showing that the People double downed and used

7

RECEIVED by MSC 5/18/2022 2:30:38 PM

the alleged privileged material in their preparation or litigation of this matter. Since Defendant is unable to show prejudice, Defendant is unable to show "outrageous misconduct" and Defendant's constitutional claim must fail. Therefore, this Court is not persuaded that Defendant is entitled to an evidentiary hearing in this matter. Moreover, the case law is clear that the exclusionary *rule* hangs over the head of the People and provides an adequate deterrence against any potential misconduct.

## IV.    CONCLUSION

For the foregoing reasons, this Court shall enter a protective order barring the People from reviewing and/or producing any seized documents until the People can establish a taint/filter team to review the discovery in this matter. Once the taint/filter team is implemented, this Court's discovery suspension is lifted. Conversely, this Court will denies Defendant's request to seek discovery into the People's seizure, review, and production of privileged documents.

**NOW, THEREFORE, IT IS ORDERED:** Defendant's "Motion for Protective *Order* and Discovery Pursuant to MCR 6.201(E) and 6.201(J)" is GRANTED in part and DENIED in part for the reasons stated above.

Dated: 11 / 19 / 2021

ELIZABETH A. KELLY (P71790)
Circuit Judge

8

RECEIVED by MSC 5/18/2022 2:30:38 PM

# Exhibit 2

STATE OF MICHIGAN


A TRUE COPY
Genesee County Clerk

RECEIVED by MSC 5/18/2022 2:30:38 PM

IN THE 7TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF GENESEE

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff,

v

JARROD AGEN
GERALD AMBROSE
RICHARD BAIRD
DARNELL EARLEY
NICOLAS LYON
NANCY PEELER
EDEN WELLS,

      Defendants.

Case No. 21-047372-FH (Agen)
21-047373-FH (Ambrose)
21-047374-FH (Ambrose)
21-047375-FH (Baird)
21-047376-FH (Earley)
21-047377-FH (Earley)
21-047378-FH (Lyon)
21-047379-FH (Peeler)
21-047380-FH (Wells)

HON. ELIZABETH A. KELLY

/

## ORDER DENYING MOTION FOR RECONSIDERATION; DENYING REQUEST FOR LEAVE TO RESPOND TO MOTION FOR RECONSIDERATION; AND MODIFYING ORDER OF NOVEMBER 19, 2021

At a session of said Court held in the Courthouse,
In the City of Flint, County of Genesee, Michigan
January 7, 2022

PRESENT: THE HONORABLE ELIZABETH A. KELLY

## RECONSIDERATION

This matter having come before this Court on the People's Motion for Reconsideration, this Court having considered the Motion and accompanying Brief, and the People having failed to demonstrate a "palpable error by which the court and the parties have been misled' or that "a different disposition of the motion must result from correction of the error" MCR 2.110(F)(3), therefore the Motion is hereby DENIED.

1

Defendant Lyon filed a Request for Leave to Respond to the Motion for Reconsideration, the Court did not review the attached Response and DENIES leave to respond.

## MODIFICATION OF ORDER OF NOVEMBER 19, 2021

To further assist the parties, the People shall provide a detailed written protocol for the establishment and implementation of the taint team, as previously ordered. The written protocol will be provided to each defendant for review and approval. If there are any terms or procedures that cannot be agreed to, those issues shall be brought before this Court for decision.

This modification and the original Order are applied prospectively; previously disclosed discovery will be addressed if a defendant requests further review by this Court.

IT IS SO ORDERED.

Dated: 1/7/2022

ELIZABETH A. KELLY (P71790)
Circuit Judge

RECEIVED by MSC 5/18/2022 2:30:38 PM

# Exhibit 3

| STATE OF MICHIGAN | PARTY NOTIFICATION | CASE NO. |
|---|---|---|
| 7TH JUDICIAL CIRCUIT | | 21-047378-FH |

Court Address   GENESEE COUNTY
COUNTY CLERK
900 S. SAGINAW
FLINT MI 48502

Court telephone no.
810-257-3257

Mailing Date: 2/18/22

Mail To:
Brian Lennon
150 Ottawa Ave. NW
STE 1500
Grand Rapids, MI. 49503

Judge: ELIZABETH A. KELLY

| Plaintiff | | Defendant |
|---|---|---|
| PEOPLE OF MICHIGAN | V | NICOLAS LYON |

IN THE MATTER OF PEOPLE V NICHOLAS LYON, DEFENDANT, RICHARD DALE SNYDER,
PROPOSED INTERVENOR:  ENCLOSED PLEASE FIND ORDER DENYING PROPOSED INTERVENOR'S
"MOTION TO INTERVENE"

THIS NOTICE HAS ALSO BEEN SENT TO:
~~FLINT BONDING~~
~~BRY~~ANT PATRICK OSIKOWICZ
RONALD G. DEWAARD
REGAN ANN GIBSON
BRION B. DOYLE
JOHN J. BURSCH
DANA M. NESSEL



STATE OF MICHIGAN

## IN THE 7TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF GENESEE

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff,                Case No. 21-047378-FH

v                                HON. ELIZABETH A. KELLY

NICHOLAS LYON,

        Defendant.

---

RICHARD DALE SNYDER,

        Proposed Intervenor.

---

### ORDER DENYING PROPOSED INTERVENOR'S "MOTION TO INTERVENE"

At a session of said Court held in the Courthouse,
In the City of Flint, County of Genesee, Michigan
Friday, February 11, 2022:

PRESENT: THE HONORABLE ELIZABETH A. KELLY

#### Introduction

Proposed Intervenor, RICHARD DALE SNYDER (hereinafter "Proposed Intervenor"),

has filed with this Court a "Motion to Intervene." On September 7, 2021, several defendants joined

in Nicholas Lyon's motion for protective order and discovery. On November 19, 2021, this Court

ultimately ordered that the People establish a taint/filter team to review the discovery in the felony

criminal cases. Furthermore, on January 7, 2022, this Court clarified that the current parties will

need to provide a "detailed written protocol for the establishment and implementation of a taint

team." Now, on January 19, the Proposed Intervenor filed this motion to intervene. Pursuant to MCR 2.119(E)(3), no oral arguments were heard on this motion. This Court dispenses oral arguments and relies on the motion, answer, and supporting briefs.

**Standard of Review**

This Court's decision whether to grant a motion to intervene is reviewed for an abuse of discretion. *Precision Pipe & Supply, Inc. v. Meram Constr., Inc.*, 195 Mich. App. 153, 156 (1992). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Radeljak v. DaimlerChrysler Corp.*, 475 Mich. 598, 603 (2006).

**Analysis**

### A. MCR 2.209 may apply to criminal actions under certain circumstances. It does not apply in this criminal action.

First, MCR 2.209, the rule on intervention, may apply to criminal actions, but Michigan Courts have not grappled with this issue directly. Through way of MCR 6.001(D), the provisions of the rules of civil procedure can also apply to criminal cases unless there is an exception under MCR 6.001(D)(1)-(4). If an exception applies, MCR 2.209 would not be applicable outside of civil actions. Here, although the court rule does not directly mention criminal matters, the court rule is meant to preserve a party's interest that may not otherwise be represented. Since there is not a clear exception, this Court cannot definitively deny that a third party may have an interest to preserve, even in a criminal action.

In relevant part, MCR 2.209(A)(3) states that "a person has a right to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately

Page **2** of **5**

represented by existing parties." Under MCR 2.209(A)(3), the Court acknowledges that a party

may have standing to intervene in a criminal proceeding; however, in *People v. Sledge*, a case cited

by the Proposed Intervenor, the right to intervene was granted in large part because of the "legally

protected interest" with regard to a First Amendment constitutional violation. 312 Mich App 516,

528-29 (2015). The attorney-client privilege is not a constitutional right. *People v. Joly*, 2021 WL

935704 at *5. The Proposed Intervenor cites one Alabama federal district court case that references

third parties are "occasionally" allowed to intervene in a criminal action. See *United States v.

Carmichael*, 342 F. Supp. 2d 1070, 1072 (MD Ala 2004). Simply put, the Court does not find this

non-binding opinion persuasive for a favorable ruling during criminal cases where prior orders of

this Court establish boundaries for discovery, including attorney-client privilege matters. If

considered under the *Carmichael* case, there appears to be a substantial threshold for these motions

in *criminal actions*, and this Court does not find the Proposed Intervenor's arguments compelling

enough to overcome that threshold either. *Id*.

As illustrated by this Court's previous order to implement a taint team, this Court is well-

aware of the importance of attorney-client privilege and took action to preserve those interests.

Moreover, the Proposed Intervenor has a more appropriate forum. The Court sees no reason for

continuous involvement or briefings in these criminal actions under a motion to intervene, as the

Proposed Intervenor has his own pending action and may address his concerns there. The taint

team is to address **all** privileged communications and is not limited to communications of the

defendants.

### B. Untimely Filing

As a prerequisite to filing a motion to intervene, the court rule demands a "timely

application." MCR 2.209(A). The Proposed Intervenor's motion was received on January 19,

2022 on an issue that was before the Court and ruled on several months ago. This Court has briefed, ruled, and published orders on the matters that the Proposed Intervenor wishes to intervene. At this time, the Court's order that implemented a taint/filter team is the subject of a pending application for leave to appeal in the Michigan Court of Appeals. Therefore, as the court rule states, the Court must take into consideration the timeliness of this filing. MCR 2.209. Here, the Court does not find the filing of this motion timely for the foregoing reasons.

### C. Undue Delay

Additionally, the Court must account for the delay that granting a motion to intervene could have on these criminal proceedings. It is well established that "a [trial] court has inherent powers to manage its own affairs so as to achieve the orderly and expeditious disposition of cases." See *House of Representatives & Senate v. Governor*, 333 Mich. App. 325, 365, 960 N.W.2d 125, 147, rev'd in part sub nom. *House of Representatives v. Governor*, 506 Mich. 934, 949 N.W.2d 276 (2020). Furthermore, granting this motion could open the door to relitigation on issues that have been ruled on, or on issues that may be pending in another court. This Court further finds that a favorable outcome on this motion would cause an undue delay in these criminal proceedings.

### Conclusion

This Court reviewed the Proposed Intervenor's motion, which the Proposed Intervenor asks this Court to consider under MCR 2.209(A). After considering the Proposed Intervenor's motion, the Court has determined that the Proposed Intervenor is not entitled to relief because; (1) the motion fails to provide a proper basis for intervention in a criminal proceedings, (2) the motion is untimely, and (3) the motion could cause an undue delay in criminal proceedings. Therefore, for the foregoing reasons, the Proposed Intervenor's motion is denied.

**NOW, THEREFORE, IT IS ORDERED:** Proposed Intervenor's "Motion to Intervene" is DENIED for the reasons stated above.

Dated: 2 / 10 / 2022

_____
ELIZABETH A. KELLY (P71790)
Circuit Judge

# Exhibit 4

# Court of Appeals, State of Michigan

## ORDER

People of MI v Nicolas Lyon

Docket No.    360124

LC No.        21-047378-FH

Mark J. Cavanagh
Presiding Judge

Kathleen Jansen

Deborah A. Servitto
Judges

The application for leave to appeal is DENIED for lack of merit in the grounds presented.

Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

March 24, 2022
Date

Chief Clerk

# Exhibit 5

RECEIVED by MSC 5/18/2022 2:30:38 PM

STATE OF MICHIGAN
IN THE SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,        Supreme Court No.

     Plaintiff-Appellant,

                                          Court of Appeals No.

v                                        356809

NICOLAS LYON,                    Genesee County Circuit Court No.
                                            21-047378-FH

     Defendant-Appellee.

                                                    /

## THE PEOPLE'S APPLICATION FOR LEAVE TO APPEAL

                                    Fadwa A. Hammoud (P74185)
                                      Solicitor General

                                      Kim Worthy (P38875)
                                      Wayne County Prosecutor

                                      Christopher Kessel (P71960)
                                      Gallant Fish (P82196)
                                      Molly Kettler (P59877)
                                    Assistant Attorney General
                                      Attorney for the Plaintiff-Appellee
                                      Solicitor General's Division
                                      3030 W. Grand Boulevard
                                      Suite 10-200
                                      Detroit, MI 48202
                                      (313)456-3870

Dated: May 18, 2022

# TABLE OF CONTENTS

Page

Index of Authorities ...................................................................................... ii

Exhibits ............................................................................................................ iv

Statement of Jurisdiction ............................................................................. v

Statement of Question Presented ............................................................... vi

Court Rules Involved .................................................................................... vii

Introduction ..................................................................................................... 1

Statement of Facts and Proceedings ......................................................... 3

Standard of Review ...................................................................................... 11

Argument ........................................................................................................ 12

I.    The circuit court abused its discretion by finding good cause to enter a protective order requiring the People to implement a taint team. .................. 12

    A.    Ordering the implementation of a taint team is unprecedented in Michigan. ............................................................................................ 12

    B.    The circuit court abused its discretion by reframing Lyon's legal theories and faulting the People for not responding to those non-existent legal theories. ......................................................................... 14

    C.    The circuit court abused its discretion by concluding that the benefits of a taint team would outweigh the burdens it would impose. ................................................................................................. 18

Conclusion and Relief Requested ............................................................. 20

# INDEX OF AUTHORITIES

**Cases**

*Holman v Rasak,*
   486 Mich 429, n 10 (2010) ....................................................................... 11

*In re Grand Jury Subpoenas,*
   454 F3d at 522 ........................................................................................ 13

*People v Banks,*
   249 Mich App 247 (2002) ........................................................................ 18

*People v Bart,*
   220 Mich App 1 (1996) ............................................................................ 14

*People v Joly,*
   336 Mich App 388 (2021) ............................................................. 8, 13, 15

*People v Phillips,*
   468 Mich 583 (2003) ................................................................................ 12

*United States v Taylor,*
   764 F Supp 2d 230 (D Me, 2011) ........................................................... 13

**Statutes**

MCL 600.232 ................................................................................................. v

MCL 767.3 ..................................................................................................... 3

MCL 767.4 ..................................................................................................... 3

**Other Authorities**

AG Press Release, available at https://www.michigan.gov/ag/0,4534,7-359-
   92297_92299-499753--,00.html ............................................................. 3

**Rules**

MCR 2.110(F)(3 ........................................................................................... 20

RECEIVED by MSC 5/18/2022 2:30:38 PM

MCR 6.201(E)...................................................................................vii, 12, 14

MCR 6.201(E)..................................................................................... 12

MCR 6.201(J) ..................................................................................... 18

MCR 7.202(6)(b) ................................................................................. v

MCR 7.305(C)(2) ................................................................................. v

## Constitutional Provisions

Const 1963, art I, § 24(1) .................................................................. 11

RECEIVED by MSC 5/18/2022 2:30:38 PM

## EXHIBITS

Pl's Ex 1-CC Order Denying Motion for Reconsideration Taint Team (Lyon)

Pl's Ex 2- COA Order Denying Leave (Lyon)

Pl's Ex 3- GJ Indictment (Lyon)

Pl's Ex 4- Discovery Letter (logistics) 2.12.2021 (Lyon)

Pl's Ex 5 – Def's Motion for Taint Team (Lyon)

Pl's Ex 6- Earley and Wells Joinder in Pending Motion for Protective Order (Lyon)

Pl's Ex 7- People's Resp to Mot for Protective Oder – Taint Team (Lyon)

Pl's Ex 8- People v. Joly (Lyon)

Pl's Ex 9 CC Order Granting Taint Team (Lyon)

Pl's Ex 10 – People's Motion for Reconsideration (Lyon)

Pl's Ex 11- CC Transcript 10/12.2021 (Lyon)

RECEIVED by MSC 5/18/2022 2:30:38 PM

## STATEMENT OF JURISDICTION

Plaintiff-Appellant People of the State of Michigan seek leave to appeal the 7th Circuit Court's January 7, 2022, order denying the People's motion for reconsideration. (1/17/2022 Order (Pl's Ex. 1).) The circuit court's order is not a final order as defined by MCR 7.202(6)(b).

The Court of Appeals denied the People's Application for Leave to Appeal in an order dated March 24, 2022. (COA Order (Pl's Ex. 2).) This Court has jurisdiction to grant leave to appeal pursuant to MCR 7.305(C)(2) and MCL 600.232.

This application is timely pursuant to MCR 7.305(C)(2), having been filed less than 56 days after the Court of Appeals' denial of the People's initial Application for Leave to Appeal.

## STATEMENT OF QUESTION PRESENTED

1.     A protective order can issue only upon good cause shown.  Here, the trial court issued a protective order halting all review and production of discovery until the People implement a "taint team"—a form of relief unsupported by precedent or the facts of this case—and it did so without considering the totality of the parties' arguments regarding good cause.  Did the trial court abuse its discretion by concluding there was good cause to direct the People to establish and utilize a taint team?

Appellant's answer:      Yes.

Appellee's answer:      No.

Trial court's answer:      No.

Court of Appeals answer: Did not answer.

# COURT RULES INVOLVED

MCR 6.201(E) provides

On motion and a showing of good cause, the court may enter an appropriate protective order. In considering whether good cause exists, the court shall consider the parties' interests in a fair trial; the risk to any person of harm, undue annoyance, intimidation, embarrassment, or threats; the risk that evidence will be fabricated; and the need for secrecy regarding the identity of informants or other law enforcement matters. On motion, with notice to the other party, the court may permit the showing of good cause for a protective order to be made in camera. If the court grants a protective order, it must seal and preserve the record of the hearing for review in the event of an appeal.

RECEIVED by MSC 5/18/2022 2:30:38 PM

# INTRODUCTION

The issue raised in this interlocutory appeal will determine whether the remainder of this prosecution is measured in months or years. Should the trial court's order below remain in effect, the result would be years-long, and unnecessary delay in this and the other eight criminal cases arising out of the Flint Water Crisis.

Despite repeated claims by Defendant-Appellee Nicholas Lyon that the People violated his constitutional rights by reviewing and utilizing privileged material, there has been no proof supporting these allegations. That is because no such activity occurred. Rather, the Defendants have used these claims in support of a broader goal to have the prosecutors in this case disqualified.

The trial court agreed that no evidence exists to support such drastic action. Yet the court ordered extreme and unnecessary measures, nonetheless. Specifically, as a condition precedent to processing unreviewed documents, the People and the Defendants must agree on a "taint team" to conduct an independent review. As set forth fully below, this obligation is not just unjustified—it is unworkable, threatening to shut down the prosecution altogether.

Neither Lyon nor the trial court have cited any case where a Michigan court has ever ordered the creation of taint team. Instead, the trial court ruled based on assumptions that had not been briefed by the parties. The trial court did not explain why a taint team is necessary to protect against potential misconduct, nor did it adequately consider the immense costs associated with the utilization of a

taint team in this case—both the financial burden for the People and the burden of indefinite delay for the court, the Defendants, and the Flint victims.

The People respectfully request that this Court grant interlocutory leave to appeal to consider whether the circuit court abused its discretion in ordering this remedy.

## STATEMENT OF FACTS AND PROCEEDINGS

In January 2020, at the request of the People, the Genesee County Circuit Court appointed Judge David J. Newblatt as a one-person grand jury, pursuant to MCL 767.3 and MCL 767.4, to investigate crimes arising out of the Flint Water Crisis. Over the course of its term, the one-person grand jury indicted nine defendants, including Lyon, for crimes stemming from their actions or inactions relating to the Flint Water Crisis. The grand jury charged Lyon with nine counts of involuntary manslaughter and one count of willful neglect of duty. (GJ Indictment (Pl's Ex 3.))

Lyon, along with five of the other defendants indicted by the grand jury, was previously charged in connection with his action or inaction relating to the Flint Water Crisis. The prior charges were brought by the Office of Special Counsel (OSC), appointed by former Attorney General Bill Schuette. 6/13/19 AG Press Release, available at https://www.michigan.gov/ag/0,4534,7-359-92297_92299-499753--,00.html. In June 2019, the present prosecution team, led by Solicitor General Fadwa Hammoud and Wayne County Prosecutor Kym Worthy, voluntarily dismissed the pending charges without prejudice. *Id.* This action was prompted in part by concerns regarding the investigation conducted by the OSC, particularly in the area of evidence collection. *Id.*

### 1. The People obtain the documents at issue, many of which pose obstacles to efficient review.

Not surprisingly, considering the subject matter and the procedural history of this case, the body of evidence that the People have obtained is extensive. This

body of evidence contains documents inherited from the OSC, including documents collected from publicly available sources, by investigative subpoenas, through voluntary productions, and by other investigative methods. The body of evidence also includes documents obtained by the present prosecution team through its own investigation, which has involved the execution of search warrants, the issuance of subpoenas, and other means of investigation. Notably, the trial court's order pertains only to "seized" documents. (November 19, 2021, Order at 8. (Pl's Ex 9.))

Altogether, the People have collected multiple terabytes of data from over one thousand sources and have thus far processed over twenty million documents that are potentially relevant to the Flint Water Crisis investigation. These documents range in length from several pages to thousands of pages. This number does not account for data that has yet to be processed and uploaded by the People's e-discovery vendor, including an unknown number of additional documents.

Importantly, the People received these documents in a variety of formats. Many were compilations of scanned physical documents, with scan qualities so low as to preclude electronic text recognition. For these documents, search terms or artificial intelligence-assisted review is largely inefficient and inaccurate. Other documents consist of numerous emails collected by the producing party and consolidated into a single document. As a result of these poor production methods, the metadata identifying an email's sender and recipient were obfuscated, making review of those emails for relevance or privilege a monumental task. In many instances, these problems are compounded; for example, documents consisting of

thousands of emails were printed, mixed with other documents, and then scanned together into massive files.

Of course, the People have reviewed hundreds of thousands of these documents. Once these materials were provided to the People, they were uploaded into an electronic workspace created by the People's discovery vendor, N1 Discovery. From there, N1 Discovery, upon direction from the People, identified potentially relevant material in that repository.

This relevancy search primarily used two methods. First, N1 Discovery utilized specific search terms. This method was effective only for properly formatted documents where electronic text recognition was possible. Second, N1 Discovery identified all documents attributable to specific custodians.[1] Again, only a subset of these documents was searchable using electronic text recognition. While the custodians' materials included documents that could be easily searched, they also often included scanned documents from the custodian's office, documents from a custodian's computer, and materials in other formats unrecognizable through electronic means. As a result, this latter portion of the material was reviewed manually.

Altogether, N1 Discovery, in partnership with contracted document reviewers, analyzed approximately 800,000 documents. Of these, approximately

---

[1] As used in this appeal, "custodian" or "custodianship" simply means the source of the material without regard to its content, e.g., a particular person the producing party identifies as the source of the evidence. For example, if an email was found in the inbox of a person named John Smith, Smith is the custodian of that email.

RECEIVED by MSC 5/18/2022 2:30:38 PM

500,000 were identified as potentially relevant and forwarded to the People. This relatively limited review, focusing only on subset of the over 20,000,000 documents provided to the People and conducted by non-attorney reviewers, required approximately three months of labor and $250,000.00 in costs.

### 2. The circuit court orders the People to cease review of certain materials pending formation of a "taint team."

Shortly after Lyon's arraignment on his charges, the People began rolling productions of discovery. The People prioritized the production of materials that were produced to the State from the defendants' custody. (February 12, 2021 Letter, p 2 ("We are currently preparing productions that include all 9 defendants' custodianships and aim to have the associated data ready within approximately two weeks.") (Pl's Ex 4))

On September 7, 2021, eight months after his arraignment, Lyon filed the motion for protective order that is the subject of this appeal.[2] (September 7, 2021 Lyon Br (Pl's Ex 5).) In his motion, Lyon alleged not only that the documents in the People's custody included privileged materials, but also that the People reviewed and used those privileged materials and intended to continue such wrongdoing in the future. (*Id.*) Specifically, Lyon asserted:

> It is undisputed that (1) the prosecution are in the possession of privileged materials belonging to Mr. Lyon and others, including privileged information that was obtained in violation of the Conflict Wall; (2) the prosecution has reviewed and produced a portion of that privileged material; and (3) the prosecution intends to continue

---

[2] Defendants Eden Wells and Darnell Earley joined Lyon's motion. (Pl's Ex 6)

RECEIVED by MSC 5/18/2022 2:30:38 PM

reviewing, producing, and ultimately utilizing privileged materials.
[(*Id*. at 18.)]

It is worth noting that nowhere in his brief does Lyon actually specify to which "privilege" he is referring. Nevertheless, based on this assertion, Lyon sought multiple forms of relief. Lyon asked the court to first enter a protective order halting any review or production of discovery by the People until a protocol could be established for the review of privileged materials by an outside entity. (*Id*.) Lyon then asked the Court to authorize him to conduct discovery into "the seizure, review, and production process employed by the prosecution to date." (*Id*. at 19.) Lyon argued that such discovery was necessary "to determine the scope of the violation of his rights and the appropriate remedy for the violation," in particular, whether "the prosecution team should be disqualified." (*Id*.) Lyon also sought an evidentiary hearing on these issues. (*Id*.)

In response, the People argued that Lyon had not made even a prima facie showing of misconduct entitling him to relief. (Pl's Resp Br (Pl's Ex 7).) The People did not dispute Lyon's contention that the body of documents obtained via search warrant included privileged materials. The People vigorously disputed, however, Lyon's contention that the People intended to review and use such materials. (*Id*. at 10.)

To demonstrate the complete lack of foundation for Lyon's assertions, the People noted that Lyon had received the entirety of the grand jury record, which contained the evidence supporting the People's case against him. (*Id*. at 10.) Despite possessing this record, Lyon identified nothing in the record indicating that

the People had reviewed or used, directly or indirectly, any privileged materials in its case against Lyon. (*Id.*) Nor did Lyon make any offer of proof as to the prejudice he had suffered as a result of the People's alleged misconduct. (*Id.*) In light of this, relying on the standard set forth by this Court in *People v Joly*, 336 Mich App 388 (2021) (Pl's Ex 8), which Lyon used as the basis for his motion, the People argued that Lyon had failed to articulate a colorable claim of misconduct that would entitle him to his requested relief. (Pl's Resp Br at 19 (Pl's Ex 7).) Moreover, the People noted that the exclusionary rule served as an effective deterrent against any misconduct. (*Id.* at 15.)

On November 19, 2021, the circuit court entered an order granting in part and denying in part Lyon's motion. (11/19/2021 Order (Pl's Ex 9).) Regarding Lyon's request for discovery and an evidentiary hearing, the court held that Lyon had failed to show entitlement to such relief. The court explained that Lyon was unable to make a colorable claim under *Joly* that the People had violated his constitutional rights. (*Id.* at 7–8.) Further, the court noted that "the case law is clear that the exclusionary rule hangs over the head of the People and provides an *adequate deterrence* against any potential misconduct." (*Id.* at 8 (emphasis added).)

Despite expressly acknowledging that such deterrence was "adequate,", the court granted Lyon's motion for a protective order. Specifically, the court barred the People from any review or production of seized materials "until the People can establish a taint/filter team to review the discovery in this matter." (*Id.*) The court justified this protective order by explaining:

Despite not currently tasked with determining whether a constitutional violation exists, this Court is interested in mitigating the potential of a future violation. Although likely slowing the discovery process, taint teams are commonly used to prevent the dissemination and review of privileged materials and this Court believes that the use of a taint team will help ensure a fair trial in this matter. Moreover, this Court believes that the burden of a taint team on the People will be slight in contrast to the benefits it will provide in this case. The taint team will protect defendants' attorney-client privilege, while shielding the People from allegations of constitutional violations. As a result, Defendant has demonstrated "good cause" because the use of a taint team will promote the parties' interest in a fair trial. Therefore, this Court orders the People to implement a taint team to facilitate the discovery in this matter. [*Id.* at 6.]

On December 12, 2021, the People filed a motion for reconsideration or, alternatively, clarification. (Pl's Mtn for Recon (Pl's Ex 10).) The People argued that the circuit court had erred in finding good cause for a protective order, taking issue in particular with the court's conclusion that the burden of a taint team for the People would be slight. (*Id.* at 7–11.) The People argued that a taint team in fact would cause indefinite delay. (*Id.*) In the alternative, the People sought clarification from the court on the scope of the taint team's review. (*Id.* at 12–13.)

On January 7, 2022, the circuit court denied the People's motion for reconsideration. (1/7/2022 Order (Pl's Ex 11).) The court's order clarified that the taint team's review would be prospective only, that is, limited to the documents that had not yet been disclosed through discovery. (*Id.*)

On January 28, 2022, the People filed an Application for Leave to Appeal the circuit court's denial of the People's motion for reconsideration. The Court of Appeals denied the Application for Leave to Appeal in an order dated March 24, 2022. (COA Order Pl's Ex. 2).

Since the denial of the People's motion to reconsider, the People have been working towards creating the filtering process. The process will be submitted to the circuit court and all Flint defendants for potential implementation. However, as with all other aspects of this case, there will most certainly be substantial litigation surrounding the proposed filtering process. (1/7/22 Order, p 2 ("If there are any terms or procedures that cannot be agreed to, those issues shall be brought before this Court for decision.") (Pl's Ex 11 )

### 3. The People would suffer substantial harm by awaiting final judgment.

By barring further review and production of discovery, the circuit court's protective order halts forward progress in this prosecution until a taint team can review all discovery not yet produced by the People. Because of the size and nature of the documents at issue, this would be a monumental task.

The volume of documents alone would make review by a taint team a lengthy and costly process. The People have received evidence from over one thousand sources to date, and thus far have uploaded over twenty million documents, with the remaining number of documents unknown. Even if these documents were all formatted ideally for processing, uploading, and reviewing, a taint team review would require tremendous time and resources.

But the documents are not formatted in a way that is conducive to review. As discussed, many of the documents are not reviewable using search terms or assistance from artificial intelligence. Further, those documents that are

searchable cannot easily be segregated from those that are not. As a result, a review using search terms or assistance from artificial intelligence cannot be guaranteed to be thorough or accurate. Instead, for a taint team to conduct a review of all the documents provided to the People, it would need to manually review a significant portion of the over twenty million documents. This reality moves the burden of implementing a taint team from difficult to nearly impossible.

Muddying the waters even further, it is difficult to know the true breadth and depth of this task because the trial court has not ruled on the parameters of the filtering process. There could be anywhere between one and seventeen million documents that will require review. If 1 million, a team of 30 attorneys could accomplish the task in just over 5 months at a cost of approximately $2,200,000. If 17 million, it could take the same team just over 7.3 years and cost upwards of $37,000,000.

Importantly, these burdens would not fall only on the People. While the People would shoulder the burden of the financial costs, the burden of a years-long delay would be shared by the People, the Defendants, and the circuit court—not to mention the victims of the Flint Water Crisis. See Const 1963, art I, § 24(1)

Before this substantial harm is imposed, the People respectfully request that this Court grant interlocutory leave to appeal and reverse the circuit court.

### STANDARD OF REVIEW

"A trial court's decision on a motion for a protective order in discovery context is reviewed for an abuse of discretion." *Holman v Rasak*, 486 Mich 429, n 10 (2010)

RECEIVED by MSC 5/18/2022 2:30:38 PM

(citation omitted).  A decision constitutes an abuse of discretion where it "falls outside the range of reasoned and principled outcomes." *Id.* (citation omitted).

Although the decision whether to grant a protective order is reviewed for abuse of discretion, "[i]nterpretation of a court rule is treated like interpretation of a statute[;] it is a question of law that is reviewed de novo." *People v Phillips*, 468 Mich 583 (2003).

## ARGUMENT

This appeal concerns the circuit court's issuance of a protective order pursuant to MCR 6.201(E).  That rule provides, in pertinent part:

> On motion and a showing of good cause, the court may enter an appropriate protective order.  In considering whether good cause exists, the court shall consider the parties' interests in a fair trial; the risk to any person of harm, undue annoyance, intimidation, embarrassment, or threats; the risk that evidence will be fabricated; and the need for secrecy regarding the identity of informants or other law enforcement matters.  On motion, with notice to the other party, the court may permit the showing of good cause for a protective order to be made in camera.  [MCR 6.201(E)).]

**I.    The circuit court abused its discretion by finding good cause to enter a protective order requiring the People to implement a taint team.**

    **A.    Ordering the implementation of a taint team is unprecedented in Michigan.**

In finding good cause to issue its protective order, the circuit court premised its ruling on the finding that "taint teams are commonly used."  (11/19/2021 Order at 6 (Pl's Ex 9).)  In support of this conclusion, the circuit court relied primarily on dicta in *People v Joly*, 336 Mich App 388, 405 (2021), which observed that a taint team is one of several "steps that can be taken to identify and segregate privileged

RECEIVED by MSC 5/18/2022 2:30:38 PM

information from the rest." The court also likely relied on Lyon's representation, in his brief, that "prosecutors executing warrants typically employ 'taint' or 'filter teams.'" (9/7/21 Lyon Br at 14 (Pl's Ex 5).) In support of this assertion, Lyon also relied on *Joly*, as well as a Sixth Circuit case, *In re Grand Jury Subpoenas*, 454 F3d 511, 522–23 (CA6 2006).

Contrary to the circuit court's suggestion and Lyon's assertion, no Michigan case law supports the conclusion that taint teams have historically been used in Michigan, much less ordered by Michigan courts. In fact, *Joly* is the *only Michigan case* to use the terms "taint team," "filter team," or "filter agent" in any context.

In support of its singular reference to a taint team, *Joly* cited *United States v Taylor*, 764 F Supp 2d 230 (D Me, 2011), but even that case was by no means definitive in supporting the use of taint teams. The court in *Taylor* observed that the parties to that case were unable to identify a binding decision addressing the use of a taint team and noted that the court's own search did "not yield clear answers." *Id.* at 234.

*In re Grand Jury Subpoenas*, which Lyon cites in support of his assertion that taints teams are common practice, is similarly equivocal. That case merely observed that "taint teams seem to be used primarily in limited, exigent circumstances." *In re Grand Jury Subpoenas*, 454 F3d at 522. The court made no mention of a taint team being either common or necessary.

The unprecedented relief ordered by the court calls into question the court's power to order such relief through a protective order. Even assuming the court had this power, however, the lack of support for the court's initial and foundational reason for

finding good cause—i.e., its conclusion that "taint teams are commonly used"—renders the order an abuse of discretion. See *People v Bart*, 220 Mich App 1 (1996).

**B. The circuit court abused its discretion by reframing Lyon's legal theories and faulting the People for not responding to those non-existent legal theories.**

In addition to being built on a faulty premise, the circuit court's reasoning also misconstrued the parties' arguments. Lyon argues that MCR 6.201(E)'s "good cause" standard was met precisely because the People were both "reviewing" and "utilizing" privileged materials. (9/7/21 Lyon Br at 15 ("[T]he prosecution intends to continue reviewing, utilizing, and producing the privileged materials . . . .").) Apart from background law, Lyon relied exclusively on case law addressing violations of the privilege that were "so severe as to lead to the exclusion of key evidence, disqualification of prosecutors, and even dismissal of criminal cases." (*Id.* at 14.) Lyon applied this case law to his inaccurate premises—i.e., prosecutorial review and use of privileged material—stating that, because it is "undisputed" that "the prosecution intends to continue reviewing, producing, and ultimately utilizing privileged materials," he established good cause justifying issuance of a protective order. (*Id.* at 18.) As the trial court ultimately recognized, these accusations lacked any support.

Moreover, in Lyon's motion, he raised federal constitutional claims, stating that "[c]ourts have long recognized the invasion of the attorney-client and work privileges by the government in a criminal case may violate the Sixth Amendment right to counsel and the right to due process," and citing Sixth Amendment case

RECEIVED by MSC 5/18/2022 2:30:38 PM

law. (*Id.* at 13–14. See also *id.* at 12 (accusing the People of violating "federal law"), 19 (same).) He insisted that *Joly*'s three-part test for "outrageous misconduct" resolved such claims. (*Id.* at 13.) Although Lyon sought to disclaim his constitutional theories at the hearing, he again referenced *Joly* in clarifying the thrust of his motion: "The record before this Court I submit to you is that there is a prima facia [*sic*] case that this *Joly* [*sic*] test is met right now[,] that there is a violation [of the Sixth Amendment]." (10/12/21 Hr'g Tr at 23 (Pl's Ex 11).)

Lyon thus circumscribed his "good cause" argument in terms of his constitutional claim, resting on only his suspicions about the People's past and future use of privileged materials. He presented all of his allegations through the lens of *Joly*, which set forth the "due-process test involving attorney-client communications." *Joly*, 338 Mich App at 401. The People responded in kind, vigorously disputing Lyon's claims about how the privileged documents had been handled and would be handled in the future and applying the *Joly* framework that Lyon invoked.

In sum, Lyon argued that the "good cause" standard was met because the People's practices ran afoul of the framework set forth in *Joly*. The trial court sided with the People and held that Lyon had not satisfied *Joly*'s factors. (11/19/21 Order at 7–8 (Pl's Ex 9).) That should have been the end of the matter.

Initially, the circuit court appeared to appreciate the boundaries of Lyon's argument, correctly construing his motion as alleging only that the People (1) possessed privileged materials and (2) "reviewed and produced privileged

materials and plan to continue reviewing and producing more privileged materials."
(11/19/21 Order at 5 (Pl's Ex 9).) "*As a result*," summarized the trial court,
"Defendant claims that he has demonstrated the 'good cause' necessary" for
issuance of a protective order. (*Id.* (emphasis added).) The trial court correctly
noted that the People denied any violation of the privilege and disputed Lyon's
factual assertions. (See *id.* at 5–6 (Pl's Ex 9). See also Pl's Resp Br at 10 ("[T]he
People do not intend to seek out, review, and utilize privileged materials, either
directly or derivatively.") (Pl's Ex 7).)[3]

    But the court then diverged from the parties' framing of this issue.
Notwithstanding Lyon's repeated references to the Sixth Amendment, due process,
and "federal law," the trial court concluded that it was "not currently tasked with
determining whether a constitutional violation exists." (11/19/21 Order at 6 (Pl's Ex
9).) Instead, the court stated that it was "simply tasked" with determining whether
Lyon had shown good cause for a protective order. The court lamented its belief
that the People "provided little argument disputing the presence of 'good cause'—
instead focusing on whether [Lyon] proved a constitutional violation." (*Id.* at 5–6.)
In the interest of "mitigating the potential of a future violation," the trial court
proceeded to rule in part in Lyon's favor based on a number of assumptions that the
parties did not brief. (*Id.* at 6.)

---

[3] Specifically, the People alleged that Lyon failed to allege "outrageous misconduct,"
which comprised independent failures to allege deliberate intrusion into the
attorney-client relationship or to allege actual and substantial prejudice.

RECEIVED by MSC 5/18/2022 2:30:38 PM

By reframing the parties' arguments, the trial court abused its discretion. Lyon *did* make constitutional claims, which the People identified and answered. These constitutional claims formed the exclusive basis of his argument as to good cause. By failing to recognize this, the circuit court incorrectly faulted the People for not addressing good cause.

In addition to misconstruing Lyon's argument, the circuit court also supported its finding of good cause based on a supposed benefit to the People: "shielding the People from allegations of constitutional violations." (*Id*.) By disputing that a taint team was appropriate, however, the People clearly disclaimed any such benefit, arguing instead that the exclusionary rule would adequately serve this purpose. (Pl's Resp Br at 1 (Pl's Ex 7).) As set forth in the parties' briefing, Lyon has not set forth even a prima facie claim of a constitutional violation. The People have committed no wrongdoing, have the utmost respect for Lyon's and others' right to a fair trial, and respectfully decline to be so "shielded." Although the People appreciate the trial court's concern, that concern is misplaced when the party it is meant to benefit has made it clear that it would prefer to shoulder that risk in lieu of the alternative. This is particularly true given the extreme burden attendant to that alternative.

Thus, the trial court abused its discretion by misconstruing the parties' arguments, prejudicing the People, who responded to the motion on its terms and in good faith. Further, the trial court abused its discretion by seeking to protect the People from mere "*allegations* of constitutional violations" at the expense of the

People and absent any offer of proof that a constitutional violation was looming. Although this latter consideration might appear at first blush to be of minor importance, its place within the context of the trial court's balancing test renders it material and prejudicial.

### C. The circuit court abused its discretion by concluding that the benefits of a taint team would outweigh the burdens it would impose.

The circuit court's clearest abuse of discretion was in its conclusion "that the burden of a taint team on the People will be slight in contrast to the benefits it will provide in this case." (11/19/21 Order at 6 (Pl's Ex 9).) The court reached this conclusion without seeking the input of the parties or informing the parties that it was considering this line of inquiry. And when the People filed a motion for reconsideration delineating the *extreme* burden of a taint team, the trial court denied the motion without explaining its reasoning. (1/7/22 Order at 1 (Pl's Ex 1).) This compounded the court's abuse of discretion.

As set forth in the People's motion for reconsideration, the burden of a taint team is difficult to overstate. (Cite to Mot) To the extent this issue was properly before the court, nothing in the record supports the trial court's conclusion—which explains the trial court's failure to explain that conclusion.[4] In fact, Lyon himself

---

[4] Importantly, Lyon cannot argue that he preserved any argument that the benefits of a taint team outweigh its burdens. In a drive-by fashion, he cited an inapposite case dealing with cut-and-dried discovery violations, MCR 6.201(J). (9/7/21 Lyon Br at 11, citing *People v Banks*, 249 Mich App 247 (2002).) Thereafter, Lyon never engaged in a burden/benefit analysis. As the party with the burden of showing entitlement to protective order, Lyon forfeited this argument.

admitted that some seventeen million documents remained to be produced, and he included a section in his brief dedicated to the scale of the undertaking. (9/7/21 Lyon Br at 1 ("[T]he prosecution has produced only 4 million of the 21 million documents claimed to be in its possession[.]") (Pl's Ex 5); *id.* at 9–10.) Lyon further told the circuit court that the dismissed cases—after which Lyon would have the People model its investigation—entailed a "process and production [that] occurred over the course of years, at great expense." (*Id.* at 2.) And this despite the prior cases involving a smaller body of evidence.

Moreover, as the People argued in their motion for reconsideration, the benefits of a taint team that the trial court identified are already provided by the exclusionary rule. (Pl's Mtn for Recon at 11 (Pl's Ex 10).) The exclusionary rule protects Lyon's rights both by deterring the People from misconduct and by ensuring that any privileged material is not used to prejudice him. As the court itself recognized, "the exclusionary rule hangs over the head of the People and provides an adequate deterrence against any potential misconduct." (11/19/21 Order at 8 (Pl's Ex 9).) The court's order does not attempt to reconcile this fact with its conclusion that a taint team is necessary to "protect defendants' attorney-client privilege, while shielding the People from allegations of constitutional violations." (*Id.* at 6.)

Further, the exclusionary rule avoids the immense burdens associated with a taint team. Unlike a taint team, the exclusionary rule limits any privilege dispute to only those documents that play a potentially pivotal role in the prosecution. If

the People were to attempt to use, either directly or derivatively, a document which is the subject of a privilege dispute, then the parties can bring this limited dispute before the Court. By contrast, a taint team would require the resolution of any disputes over any of the millions of documents comprising the discovery in this case.

Precisely because the circuit court failed to explain its reasoning regarding the burdens and benefits of a taint team—and because the trial court's conclusion was incorrect—the People attempted to clarify the facts through its motion for reconsideration. The trial court denied the motion in a summary order stating only that the "palpable error" standard in MCR 2.110(F)(3) had not been met. (1/7/22 Order at 1 (Pl's Ex __).) In so doing, the trial court abused its discretion.

## CONCLUSION AND RELIEF REQUESTED

The trial court incorrectly construed the claims and reasoning arising out of Lyon's motion for a protective order. It compounded that misconstruction by offering a rationale that lacked legal support and was contrary to undisputed facts. And upon this sandy legal and factual foundation it awarded novel relief so burdensome that it could effectively cease further progress in these important prosecutions.

The People respectfully ask this Court to grant leave to appeal and reverse the circuit court's decision to grant a protective order requiring the People to halt all discovery and convene a taint team. In the alternative, this Court should remand the matter to the Court of Appeals for review on the merits of these issues.

Respectfully submitted,

Fadwa A. Hammoud (P74185)
Solicitor General

Kim Worthy (P38875)
Wayne County Prosecutor

*Christopher Kessel*

Christopher Kessel (P71960)
Assistant Attorney General
Attorney for the Plaintiff-Appellee
Solicitor General's Division
3030 W. Grand Boulevard
Suite 10-200
Detroit, MI 48202
(313)456-3870

Dated:  May 18, 2022

SG FW Lyon, N/ App for Leave to Appeal of Plaintiffs-Appellants the People of the State of Michigan AG-2021-0310514-C

RECEIVED by MSC 5/18/2022 2:30:38 PM