UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Thomas J. Tucker |
| _____/ | |

**RESPONDENT MICHIGAN DEPARTMENT OF ATTORNEY GENERAL'S REPLY TO NON-PARTY RICHARD SNYDER'S AUGUST 8, 2022, SUPPLEMENTAL RESPONSE**

**I.     Snyder's August 8, 2022, filing is vexatious.**

On March 30, 2022, this Court ordered non-party Richard Snyder to provide it with copies of certain court orders relating to the implementation of a taint team. (Dkt. 13527.) He did so in April 2022. (Dkt. 13538.) Snyder has now filed a "supplemental response" to this Court's order, comprising 20 pages of grievances unrelated to this Court's confidentiality orders. (Snyder Supp. Br., Dkt. 13605.) Snyder's combined 412-page filing references no state court orders that have issued since his April 2022 filing and, as a result, bears no discernible relationship to this Court's March 30, 2022, order.[1]

---

[1] Snyder indicated via this Court's CM/ECF system that he filed his "supplemental response" in relation to this Court's March 30, 2022 order.

1

If it must occur at all, the mudslinging in Snyder's recent filing should occur in the state courts. Snyder complains that the circuit court, which does not have jurisdiction over his case, rejected his attempt to insert himself in the proceedings before that court. (*Id.* at 20.) But this is not a reason to entertain his grievances here; in fact, quite the opposite is true. Snyder's attempt to burden this court with a long list of state-law issues is an affront to federalism and comity. (*See also* 6/16/21 Hr'g Tr. at 27:14–18 (recognizing that Snyder's privilege claims are not relevant to this Court's mediation orders).) In fact, the state circuit court rejected Snyder's attempt to intervene precisely because he had an appropriate forum in which to raise his concerns: the state district court, where his criminal case is pending. (See 2/10/22 Mich. Cir. Ct. Order at 3, Ex. 3 to Snyder Supp. Br., Dkt. 13605-1.) The same is even truer here, where Snyder's arguments about the privilege are entirely irrelevant.

On June 17, 2021, this Court ordered the Department not to disclose any documents or information covered by its confidentiality provisions. (6/17/21 Order at 4–5 & n. 6, Dkt. 13399.) The Department has complied. Snyder does not disagree. That should be the end of the matter, as far as Snyder is concerned. By submitting his patently irrelevant August 8, 2022, filing without leave of court, Snyder reveals his true intent to open up a new front in his criminal defense—not to vindicate any interest in this proceeding.

## II. Snyder's discussion of the Conflict Wall itself demonstrates a "lack of candor" toward this Court.

One component of Snyder's most recent filing merits further discussion. Seizing on a statement plucked from its context, Snyder accuses the Department of a "lack of candor" toward this Court at the June 16, 2021, hearing, alleging that former Assistant Attorney General John VanDeventer, the Criminal Team's counsel at the time, told this Court that the Department's Fifth Amended Conflict Wall prohibited *any and all* communications regarding the Flint Water Crisis between the two sides of the wall. In other words, Snyder says the Criminal Team affirmatively misrepresented the legal effect of the Conflict Wall. Fourteen months after that hearing, Snyder presents a sample of innocuous cross-wall communications regarding Flint that supposedly proves his point, and he says he needs to conduct discovery to "get to the bottom" of this issue. (Snyder Supp. Br. at 20; *see also id.* at 13 n. 4 (asserting that, "[a]t the very least," the Criminal Team's counsel "should have to explain himself").) Luckily, these accusations can be dispelled with a cursory review of the record.

As AAG VanDeventer explained, the Conflict Wall—which the Criminal Team provided to this Court, (DAG 5/26/21 Br. at 6, Dkt. 13375; Conflict Wall, Ex. B to DAG 5/26/21 Br., Dkt. 13375-3)—prohibits communication between the two sides of the wall "unless consistent with the [Michigan] Rules of Professional Conduct." This Court initiated a discussion about "that 'unless' provision," in

3

13-53846-tjt    Doc 13608    Filed 08/18/22    Entered 08/18/22 15:51:37    Page 3 of 7

which AAG VanDeventer explained the Criminal Team's position that coordinating with the Civil Team on a holistic review of millions of documents was inconsistent with the Michigan Rules of Professional conduct. (6/16/21 Hr'g Tr. at 47–49.) This Court was *not* potentially left with the impression that the Conflict Wall barred all cross-wall communications without exception.

Moreover, in addition to filing the Conflict Wall itself, the plain language of which permits very limited communications consistent with the Rules of Professional Conduct, AAG VanDeventer stated that, "in respond[ing] to Mr. Snyder's motion, I have spoken with attorneys on the civil team"; he further told this Court that the Criminal Team "worked with the civil team to draft an order in the criminal cases . . . to resolve this issue once and for all." (6/16/21 Hr'g Tr. at 33; *id.* at 49–50; *id.* at 59 (Snyder's counsel notes "hear[ing] counsel speak to conversations with the civil team").) Crucially, *Snyder acknowledges these statements*, albeit in a footnote, and he permits that they functioned as acknowledgments of the Conflict Wall's true scope. (Snyder Supp. Br. at 13 n. 4.)

There was no "lack of candor." If there is any lack of candor here, it is Snyder's demonstrably false representation that the Criminal Team intended to mislead this Court. No reasonable person attending the June 16, 2022, hearing would have reached this conclusion. Former AAG VanDeventer appropriately acknowledged certain cross-wall communications, submitted the Conflict Wall

4

itself, and answered this Court's questions about the carve-out in the Conflict Wall. It is particularly telling that Snyder needs to rely on cherry-picked *summaries* of the Conflict Wall—rather than the Conflict Wall itself, or the Rules of Professional Conduct that govern it—in order to make his argument that the Conflict Wall was breached.

### III. Snyder's further participation in this matter is counterproductive, prejudicial to the Department, and legally improper.

The Flint Criminal Team respectfully asks this Court to hold that Snyder lacks standing to use this Court's authority to divide and conquer the Flint Water Crisis prosecution. "[C]ontempt proceedings are between the parties to a case." *Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locs. 21 & 4*, 721 F.3d 1122, 1131 (9th Cir. 2013) (quotation omitted); *United States v. Am. Soc. of Composers, Authors & Publishers*, 341 F.2d 1003, 1007 (2d Cir. 1965). To have standing to prosecute a charge of contempt, Snyder must, at the very least, explain how he was personally *injured* by the alleged violation. *Accord In re Sofer*, 507 B.R. 444, 450 (Bankr. E.D.N.Y. 2014). By muddying the waters with pages upon pages of allegations related to attorney-client privileges, as well as baseless and irresponsible ethical allegations, Snyder confirms he has no articulable injury related to the mediation orders. To be sure, there is an interest in the sanctity of the mediation orders, but it is held by this Court and the City of Detroit.

Snyder's vexatious August 8, 2022, filing, while simply an irrelevant distraction vis-à-vis the mediation orders, nevertheless required a response due to the seriousness of its ethical accusations. The Criminal Team is therefore prejudiced by Snyder's continued use of this Court to air his grievances in a way that cannot be left unanswered.

To be clear: The Criminal Team agrees with this Court that, now that the matter of its mediation orders has been brought to its attention, it must pursue a resolution. The Criminal Team looks forward to fully cooperating with that resolution. However, this Court does not need—and did not ask for—a self-appointed deputy, eager to stomp his feet because he "has been stymied in his efforts to have a seat at the table in the state circuit court[.]" (Snyder Supp. Br. at 20.) In fact, Snyder admits point-blank that he is using this Court as his own personal tool, presuming that this Court is considering "his recourse." (*Id.* ("[T]he state courts have already declined to hold the Department accountable for its breach of this Court's mediation order meaning his recourse before this Court is even more critical.").)

## CONCLUSION AND RELEIF REQUESTED

There is no longer any doubt that Snyder is using this proceeding as a weapon in his state-court criminal defense. This comes at the expense of this Court, the Criminal Team, the taxpayers, and the myriad parties monitoring this

Chapter 9 action. Snyder's ethical accusations, in particular, are as irresponsible as they are wasteful. This Court should disregard Snyder's August 8, 2022, filing and instruct him to seek leave before submitting future filings.

Respectfully submitted,

*/s/ Daniel Ping*
Daniel Ping
MICHIGAN DEPARTMENT OF ATTORNEY GENERAL
3030 W. Grand Boulevard
Cadillac Place, Suite 10-200
Detroit, MI 48202
(517) 335-7632
pingd@michigan.gov
P81482

Fadwa Hammoud
MICHIGAN DEPARTMENT OF ATTORNEY GENERAL
3030 W. Grand Boulevard
Cadillac Place, Suite 10-200
Detroit, MI 48202
(313) 456-0240
miag@michigan.gov
P74185

Dated: August 18, 2022

SG FW Snyder, R (USDC) AG Reply Re: Snyder Supp Response AG2021-0309218-C

7