# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

In re:                                                  Case No. 13-53846

City of Detroit, Michigan,                              Judge Thomas J. Tucker

Debtor.                                                 Chapter 9

## Amended NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1. Name(s) of appellant(s):
   Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris & Julie Metris

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

   For appeals in an adversary proceeding.
   ❏ Plaintiff
   ❏ Defendant
   ❏ Other (describe) _____

   For appeals in a bankruptcy case and not in an adversary proceeding.
   ❏ Debtor
   ☒ Creditor - Plaintiffs
   ❏ Trustee
   ❏ Other (describe) _____

### Part 2: Identify the subject of this appeal

1. Describe the judgment, order, or decree appealed from: Doc 13617 & 13618 Order & Opinion

2. State the date on which the judgment, order, or decree was entered: 08/26/2022

### Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: Creditor-Plaintiffs/Appellants        Attorney: Michael R. Dezsi (P64530)
   Debra Metris-Shamoon                         c/o Dettmer & Dezsi, PLLC
   Mukhlis Shamoon                              1523 N. Main St.
   Julia and Paul Metris                        Royal Oak, MI 48067
   Carl Veres

2. Party: Debtor-Appellee                       Attorney: Mark Swanson (P71149)
                                                Miller, Canfield, Paddock, and Stone, PLC
                                                150 W. Jefferson, Suite 2500
                                                Detroit, MI 48226

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

❑ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

_/s/ Michael R. Dezsi_
Signature of attorney for appellant(s) (or appellant(s) if not represented by an attorney)

Date: 09/08/2022

Name, address, and telephone number of attorney (or appellant(s) if not represented by an attorney):
Michael R. Dezsi (P64530)
1523 N. Main St.
Royal Oak, MI 48067
(313) 757-8112

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

[**Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Case No. 13-53846

CITY OF DETROIT, MICHIGAN,  Chapter 9

Debtor.  Judge Thomas J. Tucker

_____/

**ORDER GRANTING THE CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST DEBRA METRIS-SHAMOON, ET AL. (DOCKET # 13532)**

This case is before the Court on the motion by the City of Detroit, entitled "City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris and Julia Metris" (Docket # 13532, the "Motion"). Today the Court has filed a written opinion regarding the Motion (Docket # 13617). For the reasons stated in that Opinion,

IT IS ORDERED that:

A.  The Motion is granted.

B.  No later than September 2, 2022, the Respondents Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris and Julia Metris (the "Respondents") must dismiss, or cause to be dismissed, the City of Detroit with prejudice from the case of *Debra Metris-Shamoon, et al. v. City of Detroit, et al.*, Case No. 18-cv-13683 (United States District Court, E.D. Michigan) (the "District Court Case").

C.  Each of the Respondents is permanently barred, estopped and enjoined from asserting claims asserted in the District Court Case or claims arising from or related to the District Court Case against the City of Detroit or property of the City of Detroit.

D. Each of the Respondents is prohibited from sharing in any distribution in this bankruptcy case.

E. The Court will retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

**Signed on August 26, 2022**



/s/ Thomas J. Tucker
**Thomas J. Tucker
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                    Case No. 13-53846

CITY OF DETROIT, MICHIGAN,                                Chapter 9

         Debtor.                                       Judge Thomas J. Tucker
_____/

**OPINION REGARDING THE CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST DEBRA METRIS-SHAMOON, ET AL. (DOCKET # 13532)**

This case is before the Court on the motion by the City of Detroit (the "City"), entitled "City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris and Julia Metris" (Docket # 13532, the "Motion"). As suggested by its title, the Motion seeks relief against the following individuals: Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris and Julia Metris (collectively, the "Respondents"). The City seeks injunctive and declaratory relief to prevent the Respondents from continuing to prosecute claims against the City that were discharged in this bankruptcy case.

The Respondents objected to the Motion, and argue that their claims were not discharged. The Court held a telephonic hearing on the Motion on August 24, 2022, then took the Motion under advisement. For the following reasons, the Court will grant the Motion.

The Court has reviewed and carefully considered all of the papers filed by the City and the Respondents concerning the Motion,[1] and all of the written and oral arguments of the parties. The Court finds and concludes as follows.

---

[1] Docket ## 13532, 13565, and 13588.

1. Each of the Respondents joined in filing and prosecuting claims against the City in the case of *Debra Metris-Shamoon, et al. v. City of Detroit, et al.*, Case No. 18-cv-13683 (United States District Court, E.D. Michigan) (the "District Court Case"), including the most recent statement of their claims, contained in their Second Amended Complaint filed on July 8, 2021 (the "Second Amended Complaint").[2]

2. Each of the Respondents' claims against the City arose several months before the City filed its petition commencing this Chapter 9 bankruptcy case on July 18, 2013. All of the events forming the basis of the Respondents' claims occurred on September 13, 2012. The claims arose on that date, when officers of the Detroit Police Department conducted what the Respondents have called an "unlawful raid" on the home of two of the Respondents in Shelby Township, Michigan, and seized certain property.[3] In their Second Amended Complaint, the Respondents alleged the following about the events of September 13, 2012:

> 9. In September 2012, Plaintiffs Deborah Metris-Shamoon and Mukhlis Shamoon were the lawful and licensed operator of a marijuana grow facility located at their residence in Shelby Township, Michigan.
>
> 10. On or about September 13, 2012, Defendants, acting under color of law and as officers of Defendant City of Detroit's Narcotics Unit, conducted an unlawful raid of Plaintiffs' home in Shelby Township, Michigan. The raid was supervised by, among others, Sgt. Joe Tucker[4] of the Detroit Police Department.
>
> 11. Officers gained entry into Plaintiffs' residence via forced entry

---

[2] A copy of the Second Amended Complaint appears as Exhibit 6-3 to the Motion (Docket # 13532-2).

[3] *See* Respondents' Br. (Docket # 13565) at pdf p. 3.

[4] Sgt. Joe Tucker is no relation to the undersigned judge.

with at least one of the officers' weapons drawn.

12. The Officers purposefully concealed their identities during the raid and neither knocked or announced their presence before making a forced entry into Plaintiffs' home.

13. At no time during the raid did any of the officers show or present to Plaintiffs a lawfully issued search warrant.

14. During the raid, the officers destroyed Plaintiffs' home. Plaintiffs were unlawfully searched and seized within the meaning of the fourth amendment during the raid.

15. For an unknown duration of time, the officers extensively tore apart Plaintiffs' property and removed, without lawful authority, marijuana plants and other related legitimate and lawful by-products of Plaintiffs' business.

16. The officers had no probable cause to seize and/or arrest Plaintiffs nor were Plaintiffs ever shown a search or arrest warrant.

17. The officers also confiscated, without lawful authority, an Armsport 12-gauge shotgun, a BSA 9mm handgun, a Winchester Wildcat .22 Rifle, a BSR .45 Caliber Colt handgun, and money totaling $315.00 from Plaintiffs' residence.

18. At no time were Plaintiffs ever given a copy of any search warrant or a list of items that were unlawfully seized from their property.

19. Plaintiffs were eventually released by Defendants and never charged with any violations of law.

20. During the raid, Plaintiff Mukhlis Shamoon was placed in handcuffs which the officers left on him after leaving the property such that Mukhlis was forced to wear the handcuffs for approximately ten hours.

21. Following the raid, Defendants produced a search warrant and affidavit sworn out by Defendant Geelhood in which Defendant falsely swore to facts in an attempt to manufacture probable cause.

22. In particular, Defendant Geelhood falsely swore to having

conducted surveillance of the Plaintiffs' home and having witnessed illegal drug transactions at Plaintiffs' residence.

23. Defendant Geelhood also falsely swore to having relied on a confidential informant to establish probable cause.[5]

3. Under what is known as the "fair contemplation" test, all of the Respondents' claims against the City arose pre-petition — *i.e.*, before July 18, 2013 — because before that date, the Respondents "'could have ascertained through the exercise of reasonable due diligence that [they] had a claim'" against the City, based on the events of September 13, 2012. *See In re City of Detroit, Michigan*, 548 B.R. 748, 763 (Bankr. E.D. Mich. 2016) (citation omitted).[6]

4. In addition, the Respondents each admitted and agreed, in the District Court Case, that their claims against the City, which are brought under 42 U.S.C. § 1983, accrued for statute of limitations purposes on September 13, 2012, because that is "the date [the Respondents] became aware of the alleged constitutional violations."[7]

5. When the City filed its bankruptcy petition on July 18, 2013, and from that date until well after the December 10, 2014 Effective Date of the City's confirmed plan of adjustment (the "Relevant Time"), each of the Respondents was an "unknown creditor" of the City, rather than a "known creditor," as those concepts are defined in cases such as *Chemetron Corp. v. Jones*, 72

---

[5] Second Amended Complaint at ¶¶ 9-23.

[6] The "fair contemplation" test "looks at whether there was a pre-petition relationship between the debtor and the creditor, 'such as contract, exposure, impact or privity,' such that a possible claim is within the fair contemplation of the creditor at the time the petition is filed. . . . Under this test, a claim is considered to have arisen pre-petition if the creditor 'could have ascertained through the exercise of reasonable due diligence that it had a claim' at the time the petition is filed." *Id.* (citations omitted).

[7] *See* Ex. 6-2 to Respondents' Resp. (Docket # 13532-2) at 13 (district court opinion, filed in the District Court Case on June 25, 2021).

4

F.3d 341, 345-46 (3d Cir. 1995) and *Monson v. City of Detroit*, Case No. 18-10638, 2019 WL 1057306, at *9-10 (E.D. Mich. Mar. 6, 2019). As unknown creditors, the Respondents validly could be, and were, given adequate notice of the City's bankruptcy case by publication only.[8] As a result, each of the Respondents had adequate notice of the City's bankruptcy case, beginning shortly after it was filed on July 18, 2013.

6. The Respondents were "unknown creditors" of the City during the Relevant Time because during that time, the Respondents' claims against the City were not "readily ascertainable" by the City. The Court agrees with the following statements of law by the court in *Monson*, including its statement of what "readily ascertainable" means in this context:

> Bankruptcy law distinguishes between known and unknown creditors. Unknown creditors may be notified by publication; but known creditors are entitled to actual notice. Known creditors are those whose claims or identities are "readily ascertainable" by the debtor. Readily ascertainable means a debtor, through "reasonably diligent efforts" could discover a creditor's claim. "Reasonably diligent efforts" does not require "impracticable and extended searches . . . in the name of due process." Rather, a debtor must home in on its "own books and records." Typically, that means the debtor has something in its possession, either a "demand for payment" or "some communication with a debtor concerning the existence of the creditor's claim."

*Monson*, 2019 WL 1057306, at *9 (citations omitted).

7. The Respondents have not presented or alleged any facts that could permit the Court to find that their claims against the City were "readily ascertainable" by the City during the

---

[8] The Respondents do not dispute that the notices by publication in this bankruptcy case were adequate, as to unknown creditors.

Relevant Time. For example, there is no evidence that at any time before April 23, 2015,[9] any of the Respondents communicated any demand for payment to the City or communicated to the City the existence of a claim against the City. None of the phone calls to the Detroit Police Department that allegedly were made by Respondent Debra Metris-Shamoon and her son, Adam Shamoon,[10] described in their Declarations,[11] constituted a demand for payment on any claim or a communication of the existence of a claim against the City.[12] Nor is there any evidence that at any time before April 23, 2015, the City's books and records indicated that any of the Respondents had or alleged any claims against the City.

8. All of the Respondents' claims against the City were discharged, under the discharge provisions in the City's confirmed plan of adjustment, on that plan's Effective Date of December 10, 2014. *See* Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City

---

[9] April 23, 2015 is the date of a letter mailed by the Respondents' attorney to the City's Legal Department, requesting documents for the putative class action of *Davis v. City of Detroit*, Case No. 15-10547 (E.D. Mich.). *See* Ex. D to Respondents' Resp. (Docket # 13565-11). During the hearing on the Motion, the Respondents' attorney identified the sending of this letter and its enclosure as the first time that the City was made aware that any of the Respondents were putative class members in the *Davis* case. (Ultimately, the *Davis* case was not certified as a class action, and was settled.) The Respondents filed their own action against the City and others — the District Court Case — on November 26, 2018.

[10] Adam Shamoon is not one of the Respondents, and did not join as a plaintiff in the District Court Case. He was not present when the September 13, 2012 raid occurred. Four guns belonging to Adam Shamoon were seized in the raid, but they were later returned to him.

[11] Exs. G and H to the Respondents' Resp. (Docket ## 13565-14 and 13565-15).

[12] The allegations about these phone calls can fairly be summarized as follows. First, Adam Shamoon says that in the days and weeks soon after the raid, he called the police department three times, during which he asked why his parents' house was raided, and to seek the return of his four guns that had been seized. He was given no information or explanation about the raid, but he was permitted to pick up his guns. (*See* Ex. G to the Respondents' Resp. (Docket # 13565-14). Second, Debra Metris-Shamoon says that she called the police department twice, asking why the police had raided her home and demanding to see a warrant. She received no explanation. (*See* Ex. H to the Respondents' Resp. (Docket # 13565-15).

of Detroit, filed November 12, 2014 (Docket # 8272, the "OCP") at 87-88; Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (Docket # 8045, copy attached to OCP at Docket # 8272 (App. I), the "Plan") at 50, Article III.D.4.[13]

9. Under the injunction provisions in the OCP and in the confirmed Plan, all of the Respondents are barred and enjoined from pursuing any of their discharged claims against the City, in the District Court Case or otherwise. *See* OCP at 89-91; Plan at 50-51, Article III.D.5.

10. Under the Court's November 21, 2013 Order, cited by the City's Motion as the "Bar Date Order" (Docket # 1782), the deadline for filing a proof of claim in this bankruptcy case was February 21, 2014. It is undisputed that none of the Respondents ever filed a proof of claim in this bankruptcy case.

11. Under ¶ 22 of the Bar Date Order, the Respondents are barred from receiving any distributions in this bankruptcy case, and the Respondents are "forever barred, estopped and enjoined from . . . asserting any claim against the City or property of the City[.]" *See* Bar Date Order at 14-15, ¶ 22.

12. The Respondents argue that the doctrines of equitable estoppel and laches preclude the City from seeking the relief it now seeks. These arguments are based on the City's delay in seeking the relief it now seeks, and the City's delay in raising the bankruptcy discharge in any way as a defense in the District Court Case. While the City has not adequately explained the

---

[13] Contrary to the Respondents' argument, the "gross negligence or willful misconduct" exception to a certain release that is contained in the Plan, in Article III.D.7.a, at 52, does not apply to the Respondents' claims. For one thing, and as the City correctly argued during the hearing, that release and its exception apply only to claims of "holder[s] of a Claim that vote[d] in favor of the Plan." (Article III.D.7.a of Plan at 52). None of the Respondents voted in favor of the Plan, or voted on the Plan at all. Indeed, none of the Respondents ever filed a proof of claim in this bankruptcy case.

7

reason(s) for its delay, the Court cannot apply either equitable estoppel or laches to bar the City's relief. Neither of these doctrines can be used to deprive the City of the benefit of its bankruptcy discharge.

13. Even if the City had delayed raising the bankruptcy discharge until after suffering an adverse judgment on the Respondents' claims in the District Court Case, the City could not be deprived of the benefit of the bankruptcy discharge. Any such adverse judgment would be deemed "void ab initio" under binding case law in the Sixth Circuit. *See Hamilton v. Herr (In re Hamilton)*, 540 F.3d 367, 373-76 (6th Cir. 2008). Under *Hamilton*, a debtor who is faced with a lawsuit asserting a claim that was discharged in bankruptcy has no duty to do anything. Based on 11 U.S.C. §§ 524(a)(1) and 524(a)(2),[14] the court in *Hamilton* held that it is "absolutely unnecessary for the debtor to do anything at all in [such an] action." *Id.* at 373 (quoting 4 Collier on Bankruptcy ¶ 524.LH[1] at 524-57 (Sept. 2005) (Lawrence P. King ed., 15th ed. rev.)). "[A]ny judgment on a discharged debt in any forum other than the bankruptcy court is . . . rendered null and void by section 524(a)." *Id.*

---

[14] Sections 524(a)(1) and 524(a)(2) apply in Chapter 9 cases. *See* 11 U.S.C. § 901(a). Those provisions in § 524(a) state:

> (a) A discharge in a case under this title—
>
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1192, 1228, or 1328 of this title, whether or not discharge of such debt is waived; [and]
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

14.  It follows that the City's delay in seeking the relief it now seeks cannot be used to deny such relief, under equitable doctrines like equitable estoppel and laches, or otherwise.

For the reasons stated in this Opinion, the City's Motion must be granted. The Court will enter a separate Order granting the City the relief it seeks.

**Signed on August 26, 2022**        /s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**