# EXHIBIT A (PART 2)

# ARTICLE C.  DEFINITIONS

**Sec. C-1.**      **Definitions.**

Unless a different meaning is plainly required by context, for purposes of this Component II the following words and phrases have the meanings respectively ascribed to them by this Section C-1:

(1)      *Accrued Service* shall mean a Member's credited service for employment rendered before the date of an actuarial valuation of the Retirement System and before July 1, 2014.

(2)      *Accumulated Contributions* shall mean the sum of all amounts deducted from the compensation of a Member and credited to his or her individual account in the Annuity Savings Fund, together with Regular Interest, as provided in this Component II of the Combined Plan.

(3)      *Annuity* shall mean payments derived from the Accumulated Contributions of a Member.

(4)      *Annuity Reserve* shall mean the present value of all payments to be made on account of any Annuity, or benefits in lieu of any Annuity, computed on the basis of such mortality tables and Regular Interest as shall be adopted by the Board of Trustees.

(5)      *Average Final Compensation* shall mean:

a.      With respect to an "Old Plan Member" (an employee described in Section F-2(a)) the current maximum salary for the rank(s), grade(s) or position(s) held by the Member over the sixty (60) months immediately preceding the earlier of:  (i) the date his or her employment with the City last terminated and (ii) June 30, 2014.  The salary shall be obtained from the official compensation schedule for the Fiscal Year in which the earlier of the dates described in (i) or (ii) occurs and an average shall be determined.  A Member who retires on or after July 1, 2000 (for DPCOA and DFFA members) or July 1, 1998 (for all other Members) and in each case prior to July 1, 2014 shall have the Member's most recent full longevity payment included in his or her Average Final Compensation.

b.      With respect to a "New Plan Member" (an employee described in Section F-2(b)) the current maximum salary for the rank(s), grade(s) or position(s) held by the Member over the sixty (60) months immediately preceding the earlier of:  (i) the date his or her employment with the City last terminated and (ii) June 30, 2014.  The salary shall be obtained from the official compensation schedule for the Fiscal Year in which the earlier of the dates described in (i) or (ii) occurs and an average shall be determined. If more than one (1) rank, grade or position has been held over the sixty (60)

month period, a weighted average is determined based on time spent in each rank, grade or position during this sixty (60) month period.

(i) A Member who retires on or after July 1, 2000 (for DPCOA and fire equivalents) or July 1, 1998 (for all other Members) and in each case prior to July 1, 2014 shall have the Member's most recent full longevity payment included in his or her Average Final Compensation.

(ii) Effective July 1, 2000, Average Final Compensation shall be calculated for members of the DPCOA, executive members and their fire equivalents by using the current maximum salary for the rank(s), grade(s) or position(s) held by the Member over the thirty-six (36) months immediately preceding the earlier of: (i) the date his or her employment with the City last terminated and (ii) June 30, 2014.

c. With respect to reduced duty disability retirements occurring on or after July 1, 1992, notwithstanding the provisions of Article F, Part B, Section F-8, for those Members who receive benefits under Article F, Part B, Section F-9(a), the Average Final Compensation used in the computation of the reduced duty disability allowance shall mean the maximum salary at the earlier of (i) the date of conversion to reduced duty disability retirement for the rank(s), grade(s), or positions(s) which were held by the Member over the sixty (60) months prior to his or her duty disability retirement and (ii) June 30, 2014.

d. Subject to Section B-1(f), for purposes of computing the Average Final Compensation received by a Member who retires on or after July 1, 2008 and prior to July 1, 2014, the Member shall have the option of adding the value of the three year average of twenty-five percent (25%) of the Member's unused accrued sick leave at the time of retirement to the earnings used in computing the Average Final Compensation.

e. The Average Final Compensation for "Old Plan" and "New Plan" Members represented by DFFA retiring on or after July 1, 1992 or on or after July 1, 2000 for Members represented by DPOA is calculated pursuant to paragraph (b) above. The salary is obtained from the Official Compensation Schedule for the Fiscal Year prior to the earlier of (i) the Member's elective date of retirement and (ii) June 30, 2014 and an average shall be determined.

f. Effective July 1, 2000, for Members represented by DFFA with a parity relationship with the DPCOA Inspector, Average Final Compensation shall be calculated pursuant to paragraph (b)(ii) above. The salary is obtained from the Official Compensation Schedule for the Fiscal Year

prior to the earlier of (i) the Member's elective date of retirement and (ii) June 30, 2014 and an average shall be determined.

g. For Members represented by DFFA who have a parity relationship with the DPLSA and the DPCOA Inspector, who retire on or after July 1, 1998 and for those having a parity relationship with the DPOA who retire on or after July 1, 2000 and in each case prior to July 1, 2014, the amount of the Member's most recent full longevity payment shall be included in the definition of Average Final Compensation.

h. Subject to Section B-1(f), all Members represented by DFFA who retire on or after July 1, 2008 and prior to July 1, 2014, may choose to receive the 3-year average of twenty-five percent (25%) of the unused accrued sick leave bank and have that sum included in the average compensation used to compute the Members' service Pension portion of their Retirement Allowance.

i. Subject to Section B-1(f), non-union uniformed Police and Fire executives represented by DPCOA who retire on or after January 15, 2010 and prior to July 1, 2014 may choose to receive the 3-year average of twenty-five percent (25%) of the unused accrued sick leave bank, and have that sum included in the Average Final Compensation used to compute the Members' service Pension portion of their Retirement Allowance.

j. Subject to Section B-1(f), a Member represented by DPLSA who retires on or after July 1, 2008 and prior to July 1, 2014 may choose to receive the 3-year average of twenty-five percent (25%) of eighty-five percent (85%) of his or her unused accrued sick leave bank, and have that sum included in the Average Final Compensation used to compute the Member's service Pension of their Retirement Allowance.

(6) *Beneficiary* shall mean any person or persons (designated by a Member pursuant to procedures established by the Board) who are in receipt of a Retirement Allowance or Pension payable from funds of the Retirement System due to the participation of a Member.

(7) *Decrement Probabilities* shall mean the probabilities of a Member's withdrawal from City employment, death while in the employ of the City, retirement from City employment with a Pension payable from funds of the Retirement System, and death after retirement.

(8) *Final Compensation* shall mean the annual rate of earnable compensation of a Member at the earlier of (i) the time of termination of employment or (ii) June 30, 2014. Effective July 1, 1992 and prior to July 1, 2014, compensation shall also include the value of the percentage reduction in compensation for non-union employees, pursuant to ordinance, resolution or executive order. In cases of any doubt regarding these values, the decisions of the Board of Trustees shall be

controlling to implement the intention that no non-union employee will suffer a diminution of Pension benefits computation due to reduction in compensation because of fiscal emergency and that Pension benefits with respect to Fiscal Years beginning July 1, 1992 and ending June 30, 2014 should always be computed as if no reduction in compensation occurred due to ordinance, resolution or executive order or directive.

(9) *Fire Employees* (formerly referred to as "Firemen") shall mean all employees of the Fire Department who have taken the oath of office as prescribed in Section 12 of Chapter XXI of Title IV of the 1918 Detroit City Charter employed therein prior to November 10, 1937, and who shall be in the employ of the Fire Department of the City of Detroit prior to the effective date of this amendment and restatement and, where the context requires, all persons who shall take the said oath of office and become members of the Fire Department thereafter.

(10) *Fire Fighter* shall mean the rank in the Fire Department currently or previously classified by the civil service commission as Fire Fighter.

(11) *Member* shall mean any member of the Retirement System who has not retired.

(12) *Membership Service* shall mean the total service rendered as a Police Employee or Fire Employee prior to July 1, 2014.

(13) *New Plan* shall mean the plan originally created by Title IX, Chapter VII, Article IV, Section 1(D) of the 1918 City of Detroit Charter as amended through June 30, 1974 and continued in effect through June 30, 2014 by Article 11, Section 102 of the City of Detroit Charter.

(14) *Old Plan* shall mean the plan originally created by Title IX, Chapter VII, Article IV, Section 1(A) and (B) of the 1918 City of Detroit Charter as amended through June 30, 1974 and continued in effect through June 30, 2014 by Article 11, Section 102 of the City of Detroit Charter.

(15) *Patrolman* shall mean the rank in the Police Department currently or previously known as patrolman.

(16) *Pension* shall mean the portion of a Retirement Allowance which is paid for by appropriations made by the City and contributions made by any other entity.

(17) *Pension Reserve* shall mean the present value of all payments to be made on account of any Pension, or benefit in lieu of any Pension, computed upon the basis of such mortality tables and Regular Interest as shall be adopted by the Board of Trustees.

(18) *Police Employees* (formerly referred to as "Policemen") shall mean all employees of the Police Department who have taken the oath of office as prescribed in Section 12 of Chapter XXI of Title IV of the 1918 Detroit City Charter, and who shall be in the employ of the Police Department of the City of Detroit prior to the

effective date of this amendment and restatement and, where the context requires, all persons who shall take the said oath of office and become members of the Police Department thereafter.

(19)     *Prior Service* shall mean service in the military rendered prior to July 1, 2014 as provided in Section E-3.

(20)     *Regular Interest* shall mean, for a period of five years from the effective date of the Retirement System interest at four per centum per annum, compounded annually.    For the subsequent five year period, and each five year period beginning thereafter but prior to July 1, 2013, Regular Interest shall be such rate of interest as the Board of Trustees, in its discretion, may determine and adopt. For Fiscal Years beginning on and after July 1, 2013:

     a.     the annual rate of return for purposes of determining the Regular Interest to be credited to a Member's account in the Annuity Savings Fund shall not be less than zero and shall not be greater than the lesser of (i) 5.25% or (ii) the actual investment return net of expenses of the Retirement System's invested reserves for the second Fiscal Year immediately preceding the Fiscal Year in which the Regular Interest is credited; and

     b.     the rate(s) of Regular Interest adopted by the Board from time to time as necessary for the operation of the Retirement System on an actuarial basis shall not violate the Plan of Adjustment.

(21)     *Retiree* shall mean any Member who has retired with a Pension payable from funds of the Retirement System.

(22)     *Retirement* shall mean for any Member that such Member has retired, with a Pension payable from the funds of the Retirement System.

(23)     *Retirement Allowance* shall mean the sum of the Annuity and the Pension.

(24)     *Retirement System or System* shall mean the Police and Fire Retirement System of the City of Detroit created and established by Title IX, Chapter VII of the 1918 Charter of the City as amended through June 30, 1974 and continued in effect by the provisions of the July 1, 1974 City Charter, and as set forth in the Combined Plan effective as of July 1, 2014 and this amendment and restatement of the Combined Plan.

(25)     *Salary Factors* shall mean the ratio between a Member's rate of compensation as of the date of an actuarial valuation of the Retirement System and his or her rate of compensation as of the earlier of (i) the date of his or her Retirement and (ii) June 30, 2014.

(26)     *Service* shall mean service with the City as a Police Employee or Fire Employee.

The following terms shall have the meanings given to them in the Sections of this Combined Plan Document set forth opposite such term:

| | |
|---|---|
| 2023 UAAL Amortization | Section K-3(3)b |
| Accrued Liability Fund | Section G-4(a) |
| additional years | Section F-9(a)(3) |
| Adjusted Pension Benefit | Section K-1(1) |
| Annuity Reserve Fund | Section G-3 |
| Annuity Savings Fund | Section G-2(a) |
| ASF Return Excess | Section G-2(f) |
| Authority | Section K-2(1) |
| cash refund annuity | Section F-11(b)(1) |
| Cashable Sick Leave | Section B-1(f) |
| Certificate of Default | Section K-2(7) |
| COLA | Section K-1(1) |
| Deferred Retirement Option Plan (DROP) | Section B-1(h), Article I |
| Disability Retirement Review Board/DRRB | Section F-12(b) |
| Eligible Pensioner | Section K-2(5) |
| Estimated Adjusted Annual Household Income | Section K-2(3)b |
| Expense Fund | Section G-7 |
| Federal Poverty Level | Section K-2(6) |
| Freeze | Section B-1 |
| Freeze Date | Section B-1 |
| Frozen Accrued Benefit | Section B-1(d) |
| Funding Conditions | Section K-1(1) |
| Funded Level | Section K-3(2)a |
| Funding Proceeds | Section G-4(a) |
| Funding Target | Section K-3(2)a, K-3(3)a, K-3(4)a |
| Governor | Section K-3(5) |
| Income Stabilization Benefit | Section K-2(2) |
| Income Stabilization Benefit Plus | Section K-2(3) |
| Income Stabilization Fund | Section K-2(4) |
| New Plan Member | Section F-2(b) |
| Old Plan Member | Section F-2(a) |
| Optional Forms | Section F-23 |
| Option 1. Modified Cash Refund Annuity | Section F-23(a)(1) |
| Option 2. Joint and Last Survivorship Retirement Allowance | Section F-23(a)(2) |
| Option 3. Joint and Seventy-Five Percent Survivor Allowance | Section F-23(a)(3)· |
| Option 3(A). Modified Joint and Last Survivorship Allowance | Section F-23(a)(4) |
| Option 3(B). Joint and Twenty-Five Percent Survivor Allowance | Section F-23(a)(5) |
| Participant Loan Program | Section J-1 |
| Pension Accumulation Fund | Section G-5 |
| Pension Funding Transaction | Section G-4(a) |

Pension Improvement Factor (Escalator)          Section F-14, K-1(1)
Pension Reserve Fund                            Section G-6
Pension Restoration Agreement                   Section K-3
Pop-up Form                                     Section F-23(b)(ii)
Restoration Reserve Account                     Section K-3(2)a
Restoration Reserve Suspension Trigger          Section K-3(2)d, K-3(3)a, K-3(4)a
Restoration Target                              Section K-3(2)a, K-3(3)a, K-3(4)a
Sick Leave Election                             Section B-1(f)
Standard Form                                   Section F-23(b)(i)
State Treasurer                                 Section K-2(1)
Straight Life Retirement Allowance              Section F-23(a)
Survivors Benefit Fund                          Section G-11
Transition Cost                                 Section G-2(f)
UAAL                                            Section G-4(a)
Waterfall Classes                               Section K-3(1)

# ARTICLE D.  MEMBERSHIP

## Sec. D-1.  Generally.

Subject to Section B-1, the membership of Component II of the Retirement System shall consist of the following:

(a)     All Police Employees and Fire Employees who were in service on or after July 1, 1941, but prior to January 1, 1969; provided, however, that any Police Employee or Fire Employee who, on or before July 1, 1941, shall have been in the employ of the Police or Fire Department for a period of twenty years, or who shall have a total of twenty years of creditable service, shall be excluded from the provisions hereof and shall retain for himself or herself, his or her wife, children, dependent mother and dependent sister all rights and privileges provided by Chapters XV and XXI of title IV of the 1918 Detroit City Charter, unless any such Police Employee or Fire Employee, on or before June 1, 1941, shall file with the City Controller his or her written election to become a Member of the Retirement System, in which event he or she shall be a Member; such excluded Police Employee not electing to become a Member, from and after July 1, 1941, while he or she remains an active member of the Police Department, shall pay five per cent of each salary payment into the fund for retired Police Employees, and any such excluded Fire Employee not electing to become a Member, from and after July 1, 1941, while he or she remains an active member of the Fire Department, shall pay five per cent of each salary payment into the Fire Department Pension and Retirement Fund, and such salary contributions shall hereafter be used toward the payments of Retirement Allowances provided for under Chapter XV, Section 14, subsections (1), (2), and (3) thereof.  On retirement, the contributions of such excluded members shall cease.

(b)     All persons who became Police Employees or Fire Employees on or after July 1, 1941, but prior to January 1, 1969, and who are confirmed as Police Employees or Fire Employees according to the rules and regulations of the respective Departments shall thereupon become Members of the Retirement System, subject, however, to the following provisions:

(i)     Any person who shall become a Police Employee or Fire Employee at an attained Age of thirty-one years or more may become a Member of the Retirement System only by vote of the Board of Trustees who shall fix the rate of contribution of such Member on a basis recommended by the Actuary for the attained Age of such Member.

(ii)    Any appointive official of the Police Department or Fire Department appointed from the membership thereof shall be permitted to remain a Member of the Retirement System, paying contributions and entitled to benefits as though he or she had remained in the rank, grade or position held at the date of his or her appointment.

13-53846-tjt    Doc 13634-2    Filed 09/09/22    Entered 09/09/22 18:47:23    Page 9 of 79

(iii)    Any Police Employee or Fire Employee who, prior to being confirmed, shall be killed or Totally Disabled as the result of the performance of active duty, shall be deemed to have been a Member of the Retirement System.

(c)    Any Member as defined in paragraph (a) or (b) of this Section D-1 who shall be transferred to a civilian position in his or her Department shall continue as a Member, subject to all the obligations of a Member.

(d)    All persons who became Police Employees or Fire Employees on or after January 1, 1969 and prior to July 1, 2014 and who are not individuals re-employed with the Police and Fire Departments on or after January 1, 1969 and prior to July 1, 2014, and who are confirmed as Police Employees or Fire Employees according to the rules and regulations of the respective Departments shall thereupon become Members of Component II of the Retirement System subject, however, to the following provisions:

(i)    Any person who shall become a Police Employee or Fire Employee at an attained Age of thirty-one years or more may become a Member of the Retirement System only by vote of the Board of Trustees who shall fix the rate of contribution of such Member on a basis recommended by the actuary for the attained Age of such Member.

(ii)    Any appointive official of the Police Department or Fire Department appointed from the membership thereof shall be permitted to remain a Member of the Retirement System, paying contributions and entitled to benefits as though he or she had remained in the rank, grade or position held at the date of his or her appointment.

(iii)    Any Police Employee or Fire Employee who, prior to being confirmed, shall be killed or Totally Disabled as the result of the performance of active duty, shall be deemed to have been a Member of Component II of the Retirement System.

(iv)    Any Member as defined in Section D-1(a), (b), or (c) who was separated from service by resignation or dismissal or discharge who subsequently again becomes a Member prior to July 1, 2014 shall be considered a Member for all purposes under this Component II under Section D-1(a), (b), or (c) and shall not be considered a Member under Section D-1(d).

(v)    Any Member as defined in Section D-1(d) who shall be transferred to a civilian position in his or her Department shall continue as a Member, subject to all the obligations of a Member.

**Sec. D-2.    Membership election option prior to July 1, 2014.**

Any person who is a Member as defined in Section D-1(a), (b), or (c) who was in active service on January 1, 1969, shall have had the option to elect to become a Member of the Retirement System as defined in Section D-1(d) by filing his or her written election with the Board of Trustees on or before January 31, 1969, or any Retiree who retired on or before

December 31, 1968, under the provisions of Article F, Part B, Section F-8, who returns to active service prior to July 1, 2014 shall have the option to elect to become a Member of Component II of this Retirement System as defined in Section D-1(d), by filing his or her written election with the Board of Trustees on or before the earlier of (i) thirty days after his or her return to active service and (ii) June 30, 2014. The election shall be effective on the date that it is filed with the Board of Trustees.

**Sec. D-3.**      **Cessation of membership.**

(a)      Should a Member die or become a Retiree or be separated from service by resignation, dismissal, or disability, he or she shall thereupon cease to be a Member.

(b)      Any person who became a Member under Section D-1(a), (b), or (c) and ceases to be a Member, as provided in Section D-3(a), and who becomes a Police Employee or Fire Employee prior to July 1, 2014, shall again become a Member of Component II of the Retirement System, under section D-1(a), (b), or (c) subject to the provisions of Article G, Section G-2(d).

(c)      Any person who became a Member under Section D-1(d) and ceases to be a Member, as provided in Section D-3(a), and who becomes a Police Employee or Fire Employee prior to July 1, 2014, shall again become a Member of Component II of the Retirement System under Section D-1(d), subject to the provisions of Article G, Section G-2(d).

(d)      Any Member of the Retirement System from the Fire Department who retires as a Member of the Retirement System and who is rehired prior to July 1, 2014 as a civilian Member of the Fire Department may elect on or before June 30, 2014 to again become a Member of Component II of the Retirement System, subject to the provisions of Article G, Section G-2(d).

# ARTICLE E. SERVICE CREDITABLE.

## Sec. E-1.    Members to file statement of service, etc.

Under such rules and regulations as the Board of Trustees shall adopt, each Police Employee and Fire Employee who shall become a Member prior to July 1, 2014 shall file a detailed statement of all prior service rendered by him or her as an employee of the Police Department or Fire Department, for which he or she claims credit, and of such other facts as the Board of Trustees may require, for the proper operation of the Retirement System.

## Sec. E-2.    Credit for service.

The Board of Trustees shall fix and determine by appropriate rules and regulations how much service in any year is equivalent to a year of service, but in no case shall less than six months' service constitute one year, nor shall more than one year of service be creditable for all service in one calendar year. The Board of Trustees shall not allow credit as service for any period of more than one month during which the Member was or shall be absent without pay provided that if a Member shall be transferred prior to July 1, 2014 from his or her Department payroll to the payroll of any city, county or state government or the federal government by his or her Department head during peace times, then such Member shall continue to be a Member of the System and shall be required to make regular contributions into the Annuity Savings Fund; and provided further, that if a Member, so transferred, shall fail to make such contributions for three consecutive months, he or she shall cease to be a Member of the Retirement System four months (of 31 days each) after the due date of his or her first defaulted Annuity contribution; and provided further, that any Member who was or shall be suspended from duty and subsequently reinstated to duty without further disciplinary action, shall receive total credit for the time of such period or periods of suspension, but in no case shall credit be granted for any period after June 30, 2014.

## Sec. E-3.    Employees in military service commencing prior to July 1, 2014.

(a)    If a Member of the Retirement System was drafted, or enlisted into military, naval, marine, or other service of the United States government during time of war, or if a Member was drafted into such service during time of peace, and prior to the earlier of (i) ninety days from the date of his or her separation from such government service or from the date peace was or shall be established by treaty, whichever date was or shall be earlier, and (ii) June 30, 2014 resumed or shall resume employment as a Police Employee or Fire Employee, then such government service rendered prior to July 1, 2014 shall be credited to him or her as a Member of the Retirement System. During the period of such government service of a Member, his or her contributions to the Annuity Savings Fund shall be suspended and the balance in the Annuity Savings Fund, standing to his or her credit as of the last payroll date preceding his or her leave of absence from the service of his or her Department shall be accumulated at Regular Interest. Prior to July 1, 2014, even though the applicant may have been unable to satisfy all the foregoing requirements, the Board of Trustees had the power to grant the privileges provided for by this section in exceptional or extraordinary cases.

(b)     A Member on the City payroll on or after January 1, 1979 and prior to July 1, 2014 who, prior to employment in the City service, was called to or entered any full time military service of the United States during time of war, period of compulsory military service, or period of unusual emergency as defined in an ordinance of the City, shall have the required period of active duty which occurs prior to July 1, 2014 credited him or her as Membership Service, subject to the following conditions and limitations:

    (1)     The Member files a written election with the Board of Trustees, before the earlier of (i) 180 days following the effective date of this provision or 180 days from the date of his or her first employment in the City service, whichever is most recent, and (ii) June 30, 2014, to claim military service credit under the provisions of this section.  A Member who is included in a collective bargaining unit shall file a written election to claim military service credit with the Board of Trustees within 180 days following the date of a negotiated approval and acceptance of this section by his or her duly authorized bargaining agent as transmitted to the Board of Trustees by the Labor Relations Director or, in the case of Members hired subsequent to the transmittal of approval and acceptance by his or her duly authorized bargaining agent, within 180 days from the date of his or her first employment in the City service; provided that any such election is required to be filed prior to July 1, 2014.

    (2)     The Member furnishes the Board of Trustees such information as the Board of Trustees determines necessary to verify the amount of military service claimed.

    (3)     The Member pays to the Pension Accumulation Fund of the Retirement System an amount equal to five percent (5%) of the Member's annual rate of compensation at the time of payment multiplied by the years or parts of years of military service claimed.

    (4)     The required payment shall be made under one of the following options:

        a.     Payment in full within 30 days of the election to claim military service.

        b.     Payment in equal bi-weekly installments by payroll deduction over a 36 month period starting 30 days following the election to claim military service.  Interest shall accrue during the period of installment payments at the compound rate of 5 percent per annum.  Payments must be completed prior to application for retirement.

        c.     If a Member has sufficient funds in the principal portion of his or her Annuity, he or she may authorize the Board to transfer such funds to the Pension Accumulation Fund to meet the required payment.

    (5)     In the event a Member who has filed the required election of this benefit, and who would be eligible for a Pension in all respects except for paying the full

amount, dies prior to completion of the payment required in paragraph (4) preceding, the person otherwise entitled to a Retirement Allowance may pay the full amount due within 30 days of the Member's death to become eligible for an additional Pension credit under this section.

(6) Military service credited under the provisions of Section 54-30-3(c) of the 1964 Detroit City Code shall not be claimed or credited under the provisions of this section.

(7) Military service which is or will be the basis of service credit under any other public employee retirement program shall not be claimed or credited under the provisions of this section.

(8) In no case shall more than 3 years of pre-employment military service be credited a Member on account of military service. For the purpose of this limitation, military service credited pursuant to Section 54-30-3(a) of the 1964 Detroit City Code shall be combined with military service created pursuant to this section.

(9) The required payments made to the Pension Accumulation Fund for military service credit pursuant to this section shall, upon application by the Member or his or her estate, be returned without interest to any Member who dies or leaves City employment prior to being eligible for a Pension.

(10) Only honorable military service during the following periods shall be covered by this Section E-3(b):

World War II — December 8, 1941 to July 1, 1946.

Korean Conflict — June 27, 1950 to December 31, 1953.

Vietnam Conflict — August 5, 1964 to May 7, 1975.

(11) The military service credit pursuant to this section shall not apply toward meeting the minimum service and age requirements for vesting, for a non-duty disability Pension or for a service Pension. Such service credit may be used in meeting the minimum time needed for an automatic Option Two Pension in case of death of a Member.

(12) In no case shall benefits be based on the military service credit provided by this section unless the Member shall have been credited a minimum of eight years of service credit not including military service credit.

(13) Special service, contractual, part time, seasonal and summer camp employees are not eligible for the military service credit.

(14) In cases of doubt, the Board of Trustees will determine whether a Member is entitled to the benefits of this section consistent with the requirements and limitations herein.

(15) Any member of DFFA, DPCOA or DPLSA who performed military service prior to employment by the City and membership in the Retirement System may, prior to July 1 2014, claim service credit as a Member of the Retirement System for time spent in the military service.

(16) Effective December 15, 2008, any member of DFFA, DPCOA or DPLSA who has performed any honorable military service prior to July 1, 2014 may, prior to July 1, 2014, claim up to thirty-six (36) months service in Pension time for time spent in the military. However, the Member will be required to purchase this military service credit as provided above.

(17) Effective March 8, 2007, all DPOA bargaining unit members who have served in the military prior to July 1, 2014 may, prior to July 1, 2014, purchase a maximum of three (3) years Pension time.

**Sec. E-4.    Verification of service claimed.**

Subject to the above restrictions and to such other rules and regulations as the Board of Trustees may adopt, the Board of Trustees shall verify, as soon as practicable after the filing of such statements of service, the service therein claimed.

**Sec. E-5.    Prior Service certificates.**

Upon verification of the statements of service, the Board of Trustees shall issue Prior Service certificates, certifying to each Member the length of Prior Service rendered, with which he or she is credited. A Prior Service certificate shall be final and conclusive for retirement purposes as to such service; provided, however, that within one year from the date of issuance or modification of such certificate the Board of Trustees on its own motion or on the request of a Member may modify or correct the Prior Service certificate.

**Sec. E-6.    Creditable service at retirement.**

Creditable service at retirement, on which the Retirement Allowance of a Member shall consist of the Membership Service rendered by him or her prior to July 1, 2014 and, if he or she has a Prior Service certificate in full force and effect as of July 1, 2014, the amount of service certified thereon.

# ARTICLE F.  BENEFITS PROVIDED TO MEMBERS

## Part A - Service Retirement Allowance

**Sec. F-1.**   **Petition for retirement, mandatory age.**

(a)     Any Member as defined in Article D, Section D-1 (a), (b), or (c) in service may file with the Board of Trustees his or her written application for retirement setting forth the date not less than fifteen days nor more than ninety days subsequent to the filing thereof, on which he or she desires to be retired; and provided the Board of Trustees shall determine that the Member, at the date so specified for his or her retirement will have a total of twenty-five years or more of creditable service he or she shall on the date specified be retired, notwithstanding that during such period of notification he or she may have separated from service.

Provided, further, that in the case of any Fire Fighter as defined in Article D, Section D-1 (a), (b) or (c) having served twenty-five years or more of creditable service, upon recommendation of the Board of Fire Commissioners, the Fire Fighter shall be retired forthwith, by the Board of Trustees.

(b)     Any Member as defined in Article D, Section D-1 (d) in service may file with the Board of Trustees his or her written application for retirement setting forth the date not less than fifteen days nor more than ninety days subsequent to the filing thereof, on which he or she desires to be retired; and provided the Board of Trustees shall determine that the Member, at the date so specified for his or her retirement, will have a total of twenty-five years (effective as of March 8, 2007, twenty years for members of DPOA and their fire equivalents) or more of creditable service and has attained Age fifty-five, he or she shall on the date specified be retired, notwithstanding that during such period of notification he or she may have separated from service.

Provided, further, that, effective July 1, 1983 for members of DPOA and fire equivalents and June 30, 1986 for DPLSA and fire equivalents and new Members, a Member described in Article D, Section D-1(d) shall be eligible to retire upon attainment of twenty-five years (effective as of March 8, 2007, twenty years for members of DPOA and their fire equivalents) or more of creditable service, regardless of Age.  Effective July 1, 1998 (June 30, 2001 for DPOA members and their fire equivalents), the time on or before June 30, 2014 a Member is on layoff from service of the City shall be included in actual service rendered to the City for purposes of determining whether a Member has twenty-five years or twenty years of creditable service prior to July 1, 2014.  The Pension benefit to which such Member is entitled shall be based only on his or her actual years of creditable service. Effective July 1, 1989, the minimum Age requirement for deferred Pensions payable for post 1969 Members represented by DPOA and hired before June 30, 1985 shall be eliminated.

Notwithstanding the foregoing provisions, effective October 15, 2014, a DPLSA member shall be eligible to terminate employment with the City and commence

receipt of a Retirement Allowance (or make an election to participate in the DROP program as provided in Article I) under this Component II provided the Member satisfies the following requirements:

| Fiscal Year | Age and Service |
| --- | --- |
| 2015 | Age 45 and 24 years |
| 2016 | Age 46 and 23 years |
| 2017 | Age 47 and 23 years |
| 2018 | Age 48 and 22 years |
| 2019 | Age 49 and 23 years |
| 2020 and thereafter | 25 years of service |

(c)     Effective June 30, 2001, any Member represented by DPOA and fire equivalents who has been laid off shall be eligible to retire at what would have been the Member's 25th anniversary.  To determine eligibility for retirement, the Member's actual service time and time on lay off up to and including June 30, 2014 shall be combined.  To calculate the Member's Retirement Allowance for members of DFFA, however, only actual service time through June 30, 2014 shall be used.  For DFFA members having a parity relationship with the DPLSA and the DPCOA Inspector, only lay off time which occurred between July 1, 1973 and July 1, 1998 will be credited.  Effective in accordance with the specific date and terms of the DPLSA award in Act 312 No. D98 F-0944, Members represented by DPCOA shall have the right to retire on their 25th anniversary date, notwithstanding any service time prior to July 1, 2014 they may have lost due to any layoffs, as provided in such award.

(d)     Any Member represented by DPOA who was hired on or after July 1, 1985 and who leaves City employment after being vested shall not be eligible for Pension benefits until said individual reaches his or her sixty-second birthday.

(e)     Any Member of the Retirement System as defined in Article D, Section D-1(a), (b), (c), and (d) who shall reach the Age of sixty years shall be retired forthwith, or on the first day of the calendar month next succeeding that in which the Member shall have reached Age sixty.  On the written request of the Member and of the Commissioner of Police or the Board of Fire Commissioners, as the case may be, the Board of Trustees may continue such Member in active service for a period of two years beyond his or her sixtieth birthday, and on the expiration of such period, on like request, may continue such Member in active service for a further period of two years.

(f)     Any Member of the Retirement System who satisfies the requirements for a Pension as defined in Article F, Section F-5 shall be eligible upon ninety days notice to make an irrevocable election to receive an immediate Retirement Allowance, actuarially reduced for early commencement, in lieu of a deferred Retirement Allowance.

(g)     Any Member of the Retirement System who was in the service of the City on or after July 1, 1941 but prior to January 1, 1969 and who was still an active Member on July 1, 1983 for DPLSA and fire equivalents and July 1, 1986 for DPOA members and fire equivalents shall have the option of retiring under the Old Plan or the New Plan.

(h)     Pursuant to Section 411(e) of the Internal Revenue Code, as in effect in 1974, an employee shall be 100 percent vested in his or her Retirement System accrued benefit upon attaining normal retirement hereunder while in service.

## Sec. F-2.    Old Plan/New Plan

Effective July 1, 1986, Members of the Retirement System as defined under the terms of the Retirement System in effect on July 1, 1977, who were in service on or after July 1, 1941 but prior to January 1, 1969, and are active Members on July 1, 1986 shall have the option of retiring under the Old Plan or the New Plan.

(a)     *Amount of allowance – Old Plan Members*.  Upon his or her retirement from service, a Member as defined in Article D, Section D-1(a), (b), or (c) ("Old Plan Member") shall receive a straight life Retirement Allowance which shall consist of the benefits provided in paragraphs (1) and (2) below; and he or she shall have the right to elect an option provided for in Part H of this Article F:

  (1)     An Annuity which shall be the Actuarial Equivalent of the Member's Accumulated Contributions standing to his or her credit in the Annuity Savings Fund at the time of his or her retirement; and

  (2)     A Pension which, when added to the Member's Annuity, will provide a straight life Retirement Allowance equal to two percent (2.0%) of his or her Average Final Compensation, multiplied by the number of years, and fraction of a year, of his or her creditable service through the earlier of (i) the date of retirement and (ii) June 30, 2014, not to exceed twenty-five years; provided, that the Retirement Allowance of a Police Employee shall in no case exceed fifteen twenty-seconds of the maximum earnable compensation of a Patrolman and the Retirement Allowance of a Fire Fighter shall not exceed fifteen twenty-seconds of the maximum earnable compensation of a Fire Fighter (and if either or both of the said ranks shall be hereafter abolished, the equivalent thereof), each as of the earlier of (i) the date of retirement and (ii) June 30, 2014.  The foregoing Pension limitation shall not apply to any Police Employee or Fire Employee who on July 1, 1941, shall be entitled to a certificate for twenty years or more of prior service and who remains under the provisions of Chapter XV or Chapter XXI of Title IV of the 1918 Detroit City Charter.

(b)     *Amount of allowance – New Plan Members*.  Upon his or her retirement from service, a Member as defined in Article D, Section D-1(d) ("New Plan Member") shall receive a straight life Retirement Allowance which shall consist of the benefits provided in paragraphs (1) and (2) below; and he or she shall have the right to elect an option provided for in Part H of this Article F:

  (1)     An Annuity which shall be the Actuarial Equivalent of the Member's Accumulated Contributions standing to his or her credit in the Annuity Savings Fund at the time of his or her retirement; and

(2) A Pension which, when added to his or her Annuity, will provide a straight life Retirement Allowance equal to:

    a. two and one-half percent (2.5%) of the Member's Average Final Compensation multiplied by the number of years and fraction of a year of his or her creditable service each as of the earlier of (i) the date of retirement and (ii) June 30, 2014, for the first twenty-five (25) years of such service; and

    b. two and one-tenths percent (2.1%) of the Member's Average Final Compensation multiplied by the number of years and fraction of a year of his or her creditable service each as of the earlier of (i) the date of retirement and (ii) June 30, 2014 in excess of twenty-five (25) years, subject to a maximum of thirty-five (35) years.

## Sec. F-3.    Pension Multiplier

(a) Notwithstanding Section F-2(a)(2) and F-2(b)(2), effective July 1, 1992 each Member who retires on or after that date shall be entitled to a Pension which, when added to the Annuity, will provide a straight life Retirement Allowance equal to 2.1% of his or her Average Final Compensation, multiplied by the number of years and fraction of a year, of his or her creditable service each as of the earlier of (i) the date of retirement and (ii) June 30, 2014, not to exceed thirty-five (35) years of service for New Plan Members and twenty-five (25) years of service for Old Plan Members.

(b) Effective July 1, 1997 or for DPCOA members the effective date of the CET-DPCOA, each Member who retires shall be entitled to a Pension which when added to the Annuity will provide a straight life Retirement Allowance equal to 2.5% (or 2.1% for DPCOA members) of his or her Average Final Compensation multiplied by the number of years and fraction of year of his or her creditable service each as of the earlier of (i) the date of retirement and (ii) June 30, 2014 for the first twenty-five (25) years or, in the case of a DPCOA member of his or her creditable service earned or accrued on or after the effective date of the CET-DPCOA and prior to July 1, 2014. For Members represented by DFFA, DPCOA and DPLSA, the multiplier shall be 2.1% for each year of service through June 30, 2014 over twenty-five (25) years. Maximum years of service for Pension credit shall be thirty-five (35) years for New Plan Members and twenty-five (25) years for Old Plan Members.

(c) Effective September 1, 2011, each Member represented by DPOA who retires shall only be entitled to a Pension which, when added to the Annuity, will provide a straight life Retirement Allowance equal to 2.1% of his or her Average Final Compensation multiplied by the number of years and fraction of a year of his or her creditable service earned or accrued on or after September 1, 2011 and prior to July 1, 2014. Hence, for the first twenty-five (25) years of service accrued on or after September 1, 2011 and prior to July 1, 2014, the multiplier shall no longer be 2.5%; rather, 2.1%. Maximum years of service for Pension credit shall be thirty-five (35) years for New Plan Members and twenty-five (25) years for Old Plan Members.

Service credit accrued prior to September 1, 2011 will be unaffected by this Section F-3(c).

(d) Each DPLSA member who retires shall only be entitled to a Pension which, when added to the Annuity, will provide a straight life Retirement Allowance equal to 2.1% of his or her Average Final Compensation multiplied by the number of years and fraction of a year of his or her creditable service earned or accrued following the date of the Act 312 Award in D09 G-0786 and prior to July 1, 2014. Hence, for the first twenty-five (25) years of service accrued after the date of the Act 312 Award and prior to July 1, 2014, the multiplier shall no longer be 2.5% as stated in paragraph (b) above. Maximum years of service for Pension credit shall be thirty-five (35) years for New Plan Members and twenty-five (25) years for Old Plan Members.

**Sec. F-4.    Disposition of surplus benefits upon death of retired member.**

In the event a retired Member dies before he or she has received in straight life Retirement Allowance payments an aggregate amount equal to his or her Accumulated Contributions standing to his or her credit in the Annuity Savings Fund at the time of his or her retirement, the difference between his or her said Accumulated Contributions and the said aggregate amount of straight life Retirement Allowance payments received by him or her shall be paid to such person or persons as he or she shall have nominated by written designation duly executed and filed with the Board of Trustees. If there is no such designated person or persons surviving the said deceased Retiree such difference, if any, shall be paid to his or her legal representative. No benefits shall be paid under this Section F-4 on account of the death of such a retired Member if he or she had elected Option 1, 2, 3, 3A or 3B provided for in Part H of this Article F.

**Sec. F-5.    Retirement allowance for certain persons leaving City employment after eight years service (40 & 8).**

(a) Should any DPLSA member or any fire equivalent who (1) has attained age forty years of Age, and (2) has acquired eight or more years of credited service, or any Member who terminates employment with the City on or after August 29, 2003 with ten or more years of credited service leave the employ of the Police Department or Fire Department prior to the date he or she would have first become eligible to retire as provided in this Part A, for any reason except his or her retirement or death, he or she shall be entitled to a Retirement Allowance computed according to Section F-2 (a) or (b) of this Article F, whichever is applicable, as said Section was in force as of the earlier of (i) the date his or her employment with the City last terminated or (ii) June 30, 2014; provided, that he or she does not withdraw his or her Accumulated Contributions from the Annuity Savings Fund. The Member's Retirement Allowance shall begin the first day of the calendar month next following the month in which his or her application for benefits is filed with the Board of Trustees, on or after the date he or she would have been eligible to retire had he or she continued in City employment. Notwithstanding the foregoing, prior to March 3, 2008 the Retirement Allowance of a DPOA member or a fire equivalent hired on or after July 1, 1985 shall not begin prior to the date on which the Member reaches his or her sixty-second

birthday. Unless otherwise provided in this Component II, such person shall not receive service credit for the period of his or her absence from the City Police Department and/or Fire Department employ prior to July 1, 2014, nor shall his or her Beneficiary be entitled to any other benefit afforded in this Component II, except the benefits provided in Part A, Section F-2(a) or (b) or Part F of this Article F, whichever is applicable, subject to the above provisions, notwithstanding, his or her membership has terminated.

(b)     Effective August 28, 2003, DPOA members and fire equivalents who terminate employment after ten (10) years of service shall be vested and shall have all options afforded to 40 & 8 Retirees.

**Sec. F-6.     Reduced Early Pension Benefits (40 & 8 Vesting Retirees)**

(a)     Members who terminate employment and who are eligible for a Pension pursuant to Article F, Part A, Section F-5 of Component II (40 & 8) shall have the option of receiving an immediate, but reduced early Pension benefit in lieu of a deferred Pension.

(b)     This reduced early Pension benefit shall not result in an increase in City contribution rates; therefore, the value of the Reduced Early Pension Benefit shall be the Actuarial Equivalent of the 40 & 8 Pension.

(c)     For employees represented by DFFA in ranks or classifications with a parity relationship to employees represented by the DPLSA and employees in higher ranks or classifications, upon termination, a vested employee must within 90 calendar days make an irrevocable election as to whether or not to take this option.

(d)     Individuals represented by DFFA, DPOA or DPLSA, who terminated employment prior to July 1, 1986, are not eligible for this option.

(e)     An employee who receives a lump sum payment for accumulated time upon termination is not allowed to have that time count towards his or her retirement service.

(f)     Since Members (other than DPOA and fire equivalents) are eligible to begin collecting their vested Pension as soon as they would have been eligible to retire had they continued their City employment, minimum retirement age (i.e., Age 55) shall not be a factor in computing the actuarially reduced Pension benefit.

(g)     All DFFA members, except those members in ranks or classifications with a parity relationship to employees represented by the DPOA, electing to receive the reduced early Pension benefits shall receive from the City upon separation full pay for fifty percent (50%) of the unused sick bank amounts. This provision shall have no effect on a Member electing to receive the deferred 40 & 8 vested Pension who shall continue to be reimbursed for unused sick time in accordance with an applicable collective bargaining agreement.

## Part B — Total Disability Pension and Retirement Allowances

**Sec. F-7.      Duty disability.**

If a Member shall become Totally Disabled for duty by reason of injury, illness or disease resulting from performance of duty and if the Board of Trustees shall find such injury, illness or disease to have resulted from the performance of duty, on written application to the Board of Trustees by or on behalf of such Member or by the head of his or her Department such Member shall be retired, notwithstanding that during such period of notification he or she may have separated from service; provided, the Medical Director, after examination of such Member shall certify to the Board of Trustees his or her Total Disability. If said Member was separated from service after filing of the written application, and he or she had attained twenty-five years or more of service prior to the date of separation, the Board of Trustees, shall retire said Member, under this Part B.

**Sec. F-8.      Duty disability benefits; Members in service on or after July 1, 1941 but prior to January 1, 1969.**

(a)      A Member, as defined under Article D, Section D-1(a), (b), or (c), shall receive the following benefits:

    (1)      Each such Member shall receive a disability Pension of fifty percent (50%), or such other higher percentage that is in effect and applies to such Member, of the Member's Average Final Compensation at the earlier of (i) the time of disability retirement and (ii) June 30, 2014. On the date that a Member, who retired under Section F-7 and who receives benefits under this Section F-8, would have accrued twenty-five years of creditable service had the Member continued in active service, or on the date that the Member reaches age sixty, whichever comes first, the Member shall be eligible for optional benefits as provided Part H of this Article F.

    (2)      In addition to the disability Pension provided for in Section F-8(a)(1), any Member who receives a disability Pension pursuant to Section F-8(a)(1) and has not accrued a total of twenty-five (25) years of creditable service as of the earlier of (i) the date of the Member's disability retirement and (ii) June 30, 2014 shall receive a supplemental disability payment in the amount of sixteen and two-thirds percent (16-2/3%) of the Member's Average Final Compensation at the earlier of (i) the time of disability retirement or (ii) June 30, 2014. This supplemental payment shall terminate upon the expiration of the period when a Member who retired under Section F-7 of this Part B and who receives benefits under Section F-8(a)(1) would have accrued twenty-five years of creditable service had the Member continued in active service, or on the date that the Member reaches Age sixty, whichever comes first.

    Effective July 1, 1992 for DPLSA members, the Average Final Compensation used in this computation shall mean the current maximum salary for the rank(s), grade(s) or position(s) which would have been held by the Member over the sixty

months prior to the earlier of (i) the date of retirement (reduced disability/service retirement when the Member would have attained a total of twenty-five years of credited service) had he or she continued working in that classification which he or she held at the time of his or her disability or (ii) June 30, 2014. For Members who begin receiving such benefits on or after July 1, 1998 and before July 1, 2014, the amount of the Member's most recent full longevity payment shall be included in the definition of Average Final Compensation.

Effective July 1, 1992 for DFFA and DPOA members, the Average Final Compensation used in this computation shall be the highest average annual compensation that would have been received by such a Member had he or she continued working in the classification he or she held at the time of his or her disability, during any period of five consecutive years, selected by the Member, contained within the last ten years immediately preceding the earlier of (i) expiration of the period when the Member would have attained a total twenty-five years of creditable service and (ii) June 30, 2014.

Effective July 1, 2000, the Average Final Compensation used in this computation shall mean the current maximum salary, including the annual longevity payment provided above, for the rank(s), grade(s) or position(s) which would have been held by the Member over the thirty-six (36) months prior to the earlier of (i) the date of disability retirement or (ii) June 30, 2014.

(3)     In the case of a Member retired under Section F-8 who receives benefits under F-8(a)(1) and F-8(a)(2), the Accumulated Contributions standing to the Member's credit at the date of retirement shall continue to be held in the Annuity Savings Fund and Regular Interest shall be credited thereto. If such Member dies before the date upon which the Member would have achieved a total of twenty-five years of creditable service had the Member continued in active service and before such Member reaches Age sixty, the balance of the member's Annuity Savings Account including interest thereon shall be paid as provided in Part D and Part E of this Article F.

(b)     This Section shall be applicable only to those Members receiving benefits on the date of adoption of this Section who are not covered by the arbitration decision regarding the DPOA which became effective July 1, 1995, or the arbitration decision regarding the DPLSA which became effective June 30, 1998.

(c)     This Section does not rescind any substantive rights of disability Retirees from the Retirement System who retired prior to the July 1, 1995 arbitration award, or the substantive rights of disability Retirees from the DPLSA who retired prior to the June 30, 1998 arbitration award.

(d)     This Section does not amend any computations used to determine disability benefits payable under this Section F-8, or result in an increase or decrease in such disability benefits.

**Sec. F-9.**     **Duty disability benefits; Members beginning service on or after January 1, 1969 and becoming disabled prior to the dates set forth in Section F-10.**

(a)     A Member, as defined under Article D, Section D-1(d), who retired under Section F-7, shall receive the following benefits:

(1)     Each such Member shall receive a disability Pension of fifty percent (50%), or such other higher percentage that is in effect and applies to such Member, of the Member's Average Final Compensation at the earlier of (i) the time of disability retirement or (ii) June 30, 2014. On the date that a Member who retired under Section F-7 of this Part B and who receives benefits under this Section would have accrued twenty-five years of creditable service had the Member continued in active service, or on the date that the Member reaches Age sixty, whichever comes first, the Member shall be eligible for optional benefits as provided Part H of this Article F.

(2)     In addition to the disability Pension provided for in Section F-8(a)(1) of this Part B, any Member who receives a disability Pension pursuant to Section F-9(a)(1) of this Part B and who has not accrued a total of twenty-five years or more of creditable service as of the date of the Member's disability retirement shall receive a supplemental disability payment in the amount of sixteen and two-thirds percent (16-2/3%) of the Member's Average Final Compensation at the time of the Member's disability retirement. This supplemental payment shall terminate when a Member who retires under Section F-7 and who receives benefits under Section F-9(a)(1) would have accrued twenty-five years of creditable service had he or she continued in active service or on the date that the Member reaches Age sixty, whichever comes first.

(3)     In addition to the disability Pension provided for in Section F-9, any Member who receives a disability Pension pursuant to Section F-9(a)(1) and who has accrued more than twenty-five years ("additional years") of creditable service as of the earlier of (i) the date of the Member's disability retirement and (ii) June 30, 2014 shall receive another supplemental disability payment equal to two percent (2%), or such other higher percentage that is in effect and applies to such Member, of the Member's Average Final Compensation as of the earlier of such dates, multiplied by the number of additional years of creditable service the Member has accrued; provided, however, that such supplemental disability payment shall not exceed twenty percent (20%), or such other higher percentage that is in effect and applies to such Member, of the Member's Average Final Compensation as of the earlier of (i) the date of the Member's disability retirement and (ii) June 30, 2014.

(4)     In the case of a Member who retires under Section F-7 and who receives benefits described under Section F-9(a)(1) through (3), the Accumulated Contributions standing to the Member's credit at the date of disability retirement shall continue to be held in a separate fund in the Annuity Savings Fund and Regular Interest shall be credited thereto. If such Member dies prior

to the time when the Member would have achieved a total of twenty-five years of creditable service had the Member continued in active service and before such Member reaches Age sixty, the amount of the Member's Accumulated Contributions so set aside and interest thereon shall be paid as provided in Part D and Part E of this Article. F

(5)     The amendment of Section F-9(a)(1) shall not result in an increase or decrease in the amount of disability benefits payable to Members.

(b)     This Section shall be applicable to those Members receiving benefits on the effective date of this Section F who are not covered by the arbitration decision regarding the DPOA which became effective July 1, 1995, or the arbitration decision regarding the DPLSA which became effective June 30, 1998. This Section does not rescind any substantive rights of disability Retirees from the Retirement System who retired prior to the July 1, 1995 arbitration award, or the substantive rights of disability Retirees from DPLSA who retired prior to the June 30, 1998 arbitration award.

(c)     This Section does not amend any computations used to determine benefits under Section F-9 of this Part, or result in an increase or decrease in such benefits.

**Sec. F-10.     Duty Disability benefits; DFFA, DPOA and DPLSA members beginning service on or after January 1, 1969 and becoming disabled on or after the dates set forth below.**

(a)     This Section F-10 shall be applicable to:

(1)     DFFA employees who file applications for disability retirement on or after July 1, 1995 and who have a parity relationship with the DPOA and on or after June 30, 1998, for DFFA employees with a parity relationship with the DPLSA and the DPCOA Inspector;

(2)     all DPLSA employees who file applications for disability retirement on or after June 30, 1998; and

(3)     all DPOA members who file applications for disability retirement on or after July 1, 1995.

(b)     A Member who retires as a result of duty disability shall receive for a period of twenty-four months the sum of:

(i)     a basic benefit equal to 50% of the Member's Final Compensation at the earlier of (i) the time his or her duty disability retirement begins or (ii) June 30, 2014; and

(ii)    a supplemental benefit equal to 16-2/3% of the Member's Final Compensation at the earlier of (i) the time his or her duty disability retirement begins or (ii) June 30, 2014.

Subject to Sections K-1 and K-3, on July 1st of each year, the benefits determined under paragraphs (i) and (ii) above then payable will each be increased by adding to said amounts the product of the initial amount of said benefit which was computed at the time the duty disability retirement began and the applicable Pension Improvement Factor (Escalator).

(c)     After a Member receives benefits hereunder for a period of twenty-four months, the Board will determine whether the Member is disabled from any occupation. If the Member is disabled from any occupation, the Member shall continue to receive the benefit provided in paragraphs (b)(i) and (b)(ii) until such time as the Member would have attained twenty-five years of creditable service had he or she continued in active service with the City. At that time, the Member shall continue to receive the benefit described in paragraph (b)(i) above; however, benefits described in paragraph (b)(ii) above will cease. If the Member is not disabled from any occupation, he or she shall continue to receive the benefit described in paragraph (b)(i) above; benefits described in paragraph (b)(ii) will cease.

(d)     Duty disability retirement benefits shall continue to be paid to a Member on duty disability retirement after the Member has attained twenty-five years of creditable service, to the earlier of (i) the Member's attainment of Age sixty-five, or (ii) termination of disability as determined by the Board. Upon termination of disability or attainment of Age sixty-five, a Member with twenty-five years of creditable service shall be eligible to receive a service Retirement Allowance. The amount of such service Retirement Allowance shall be the same amount which would have been payable if the conversion from duty disability retirement to service retirement had occurred at the date of attaining twenty-five years of creditable service. In the event that the examinations and/or investigations conducted by the Police Department result in a determination that a DPOA Member is not qualified for reappointment as a Police Employee for medical reasons, disability benefits will be continued.

(e)     If a Member on duty disability retirement returns to active service and within a twenty-four month period re-qualifies for duty disability retirement for the same or related reasons he or she had been retired, then the disability shall be deemed a continuation of the prior disabling condition and the period of the return to work will not have caused the Member to be entitled to a new initial determination of benefit amounts as set forth in paragraph (b) above. Instead, such Member will return to retirement at the point he or she had reached in sub-paragraphs (b), (c) or (d) above as if there had not been a break in his or her period of placement on duty disability retirement.

(f)     Disability retirement benefits shall continue to be considered benefits provided by the City pursuant to the 1918 Detroit City Charter, as amended, which are paid instead of and not in addition to any benefits under the State Workers' Disability Compensation Act.

(g)     Survivor benefit coverage applicable to active Members shall be continued during the period a Member is eligible for a duty disability benefit. Upon conversion to a

service Retirement Allowance as provided in paragraph (d), automatic survivor benefit coverage shall terminate. At that time, the Member shall have the right to elect an optional form of payment in the same manner as if he or she had retired from active membership on the conversion date.

(h)     Pension Credit While on Duty Disability Status

(1)     While a Member is eligible to receive duty disability benefits, the Member shall continue to accrue Pension service credit.

(2)     The accrual of Pension service credit under paragraph (h)(1) will cease on the earlier of (i) the date the Member has twenty-five years of creditable service, or (ii) June 30, 2014.

(i)     Earnings Offset

(1)     In the event that a recipient of a duty disability retirement benefit receives earned income from gainful employment during a calendar year, the amount of the Member's disability benefit payable during the next subsequent Fiscal Year will be adjusted so it does not exceed the difference between (i) the Member's base salary at the date of disability, increased by 2.25% times the number of full years from the date of disability to the year in which the earnings offset is applied, and (ii) the amount of remuneration from gainful employment during the prior calendar year.

(2)     The earnings test shall be based on information the Board may periodically require from a duty disability benefit recipient or has secured from other reliable sources. Furnishing such information shall be a condition for a Member's continued eligibility for a duty disability benefit. In the event a Member's Retirement Allowance was not appropriately reduced for any period in which he or she is engaged in a gainful occupation, the Board shall adjust future benefit payments to such Member until the amount of the overpayment is recouped by the Retirement System.

(j)     The Annuity withdrawal provision of the Retirement System will continue to apply to Members on duty disability. If a duty disability recipient elects Annuity withdrawal after attaining twenty-five years of creditable service, the applicable benefit reduction will offset the duty disability benefit until the conversion date, after which it will offset the converted service Retirement Allowance.

**Sec. F-11.     Non-duty disability.**

(a)     On written application to the Board by or on behalf of a Member or by the head of his or her Department, a Member, who becomes Totally Disabled for duty by reason of injury, illness or disease not resulting from the performance of duty as determined by the Board of Trustees, shall be retired by the Board of Trustees. If said Member was separated from service after the filing of the written application and had attained

twenty-five years or more of creditable service prior to the date of separation, the Board shall retire said Member, under this Part B.

(b)     A Member retired under paragraph (a) above shall receive the following applicable benefits:

(1)     If such Member has less than five years of creditable service at the time of his or her disability retirement, his or her Accumulated Contributions standing to his or her credit in the Annuity Savings Fund shall be returned to the Member, or at his or her option, he or she shall receive a cash refund annuity which shall be the Actuarial Equivalent of his or her Accumulated Contributions. For purposes of this Section F-11(b)(1), a "cash refund annuity" is an annuity that provides a death benefit equal to the positive difference, if any, between the original cost of the annuity and the sum of annuity payments received by the Member prior to his or her death.

(2)     If such Member has five or more years of creditable service at the time of his or her disability retirement, he or she shall receive a disability Retirement Allowance computed in accordance with the provisions of this Article F, Part A, Section F-2(a) or (b), whichever is applicable, and he or she shall have the right to elect an Option provided for in Part H of this Article F. The Member's Straight Life Retirement Allowance shall not be less than twenty per cent of his or her Average Final Compensation as of the earlier of (i) the date of his or her disability retirement and (ii) June 30, 2014. Such Retirement Allowance shall be subject to Parts I and K of this Article F.

(3)     If a Member receiving non-duty disability benefits has any Accumulated Contributions standing to his or her credit in the Annuity Savings Fund when the Member would have attained twenty-five years (effective as of March 8, 2007, twenty years for DPOA members and fire equivalents) of creditable service, such Member may withdraw the balance of such Accumulated Contributions at that time.

(4)     If a Member receiving non-duty disability retirement benefits is or becomes engaged in a gainful occupation, business, or employment paying more than the difference between the disabled Member's Retirement Allowance and Average Final Compensation, the Member's Retirement Allowance shall be reduced by the amount of such difference. If the amount of the Member's earnings changes, the Retirement Allowance may be adjusted accordingly. The amount of income received by a Member shall be determined by the Board based upon information received from the Member or based upon information secured from other reliable sources. Furnishing such information to the Board at such times as the Board shall require shall be a condition for the Member's continued eligibility for non-duty disability benefits. In the event a Member's Retirement Allowance was not appropriately reduced for any period in which he or she is engaged in a gainful occupation, the Board

shall adjust future benefit payments to such Member until the amount of the overpayment is recouped by the Retirement System.

**Sec. F-12.** **Disability retirement procedures.**

(a)    The Board shall establish procedures for determining whether a Member is disabled. Such procedures shall be consistent with any collective bargaining agreements between the City and the unions covering Police Employees and Fire Employees.

(b)    If a Member is determined to be disabled, the Board or its designee will examine the pension file, including the submissions of the Member and the Police or Fire Department, to determine if there is any dispute as to whether the disability "resulted from the performance of duty" within the meaning of the Combined Plan. If it is undisputed that the disability did result from the performance of duty, the Board will grant duty disability retirement benefits. If it is undisputed that the disability did not result from the performance of duty, the Board will grant non-duty disability retirement benefits, provided the Member meets the other conditions of eligibility. If the performance of duty issue is in dispute, the Board will refer the matter to arbitration by a member of the Disability Retirement Review Board ("DRRB"). The decision of the DRRB member as to whether the disability resulted from the performance of duty shall be final and binding upon the Member, the Department and the Board. The DRRB shall consist of three qualified arbitrators who will be individually assigned in rotating order to decide the matters referred to arbitration by the Board. The three members of the DRRB shall be disinterested persons qualified as labor arbitrators and shall be selected in accordance with agreements between the City and the unions representing Members. The procedure for the termination of DRRB members and the selection of new DRRB members also shall be carried out in accordance with the agreements between the City and the unions representing Members.

(c)    The hearing before a member of the DRRB will be conducted in accordance with the following procedures:

    (1)    The Member and the City will have the right to appear in person or otherwise may be represented by counsel if they wish and will be afforded an equal opportunity to present evidence relevant to the issues;

    (2)    A court reporter will be present and make a stenographic record of the proceedings;

    (3)    The hearing will be closed to the public, except that the Member may select one person to be with him or her in the hearing room; provided, however, that person may not testify;

    (4)    The witnesses will be sequestered;

    (5)    The witnesses will be sworn by the court reporter and testify under oath;

(6)   The Member may not be called by the City as an adverse witness;

(7)   The DRRB member will apply the rules of evidence and follow the procedures which are customarily applied and followed in labor arbitration cases;

(8)   If the Member wishes to have an employee of the City released from duty to appear as a witness on his or her behalf, the Member may so inform the Board in writing which, in turn, will submit a written request to the appropriate Department for the release of the employee for the purpose of so testifying;

(9)   The DRRB member will afford the parties an opportunity for the presentation of oral argument and/or the submission of briefs;

(10)  The DRRB member will issue a written decision containing credibility resolutions as necessary, findings of fact and conclusions with respect to all relevant issues in dispute;

(11)  The authority of the DRRB member is limited to deciding whether or not the Member's disability "resulted from the performance of duty" within the meaning of the Combined Plan. The DRRB member shall have no authority to add to, subtract from, modify or disregard the terms of the Combined Plan; and

(12)  The costs associated with the hearing, including the arbitrator's fees and expenses and the court reporter's fees and expenses, will be paid by the Retirement System.

(d)   If a disabled Member is determined by the Board or its delegate to no longer be disabled, he or she may appeal that determination within seven (7) days thereof by filing a written request with the Board for a re-examination. The Board shall promptly arrange for such re-examination. The Member's disability benefits will be continued pending that final and binding medical finding, and if the finding is that the Member is no longer disabled, his or her disability benefits will be further continued while the Police or Fire Department conducts such examinations and/or investigations as necessary to determine whether the Member is qualified for reappointment to active duty. In the event that the examinations and/or investigations conducted by the Police Department result in a determination that a Member represented by DPLSA is not qualified, for medical reasons, for reappointment to active duty, disability benefits will be continued.

(e)   The Board shall not act upon or grant the application filed by a Member who, although he or she is not capable of performing the full duties of a Police Employee or Fire Employee, has not suffered any diminishment of his or her base wages or benefits because he or she is either:

(1)     regularly assigned to a position, the full duties of which he or she is capable of performing; or

(2)     assigned to a restricted duty position, unless the Member's Department advises that it intends to seek a disability retirement for the Member in the foreseeable future.

(f)     The provisions in paragraph (e) above are not intended to and will not:

(1)     affect the right of a Member to seek a disability retirement when no restricted duty position is available; or

(2)     restrict in any way the existing authority of the Chief of Police or the Fire Commissioner to seek a duty or non-duty disability retirement for a Member or for that Member, at that time, to request a duty or non-duty disability retirement.

(g)     DPCOA and DPLSA members who are retired on disability Pensions pursuant to this Part B prior to July 1, 2014 shall be entitled to lump sum payments of all accumulated time from the date that the Board of Trustees determines that they are entitled to such a Pension but not later than June 30, 2014. These members shall not be required to utilize such time delaying their retirement dates.

## Part C — Escalation and Change in Compensation, Rank

**Sec. F-13.        Generally.**

Subject to Sections K-1(1) and K-3, if hereafter the rate of compensation of the rank, grade or position on which the service Retirement Allowance, disability Pension or disability Retirement Allowance of a Member who was hired prior to July 1, 1969 or is a Beneficiary of such a Member as defined in Article D, Section D-1(a), (b), or (c) is based shall be changed, his or her service Retirement Allowance, disability Pension, or disability Retirement Allowance shall be changed proportionately, and if such rank, grade, or position shall have been abolished, his or her service Retirement Allowance, disability Pension, or disability Retirement Allowance shall be changed in proportion to the change made in the compensation of the existing rank, grade, or position most nearly approximating the rank, grade, or position so abolished.

**Sec. F-14.        Increase of Benefits; Pension Improvement Factor (Escalator).**

On and after July 1, 1969, and the first of July of each year thereafter until July 1, 1992, the Pension portion of any Retirement Allowance or death benefit of a Member or Beneficiary of a Member as defined in Article D, Section D-1(d), which is paid or payable under this Component II shall be increased at the rate of two per cent (2.0%) per annum computed on the basis of the amount of the Pension received at the time of retirement.

Subject to Sections K-1(1) and K-3, on or after July 1, 1992 and the first of July each year thereafter, the Pension portion of any Retirement Allowance or death benefit of a Member or Beneficiary of a Member as defined in Article D, Section D-1(d), (including those Members

who opt to retire under the New Plan provisions) shall be increased at the rate of two and twenty-five one-hundredths per cent (2.25%) per annum computed on the basis of the amount of the Pension received at the time of retirement.

Subject to Sections K-1(1) and K-3, effective for Members who retire on or after July 1, 1997 (July 1, 1998 for DPCOA members, DPLSA members and DFFA members with a parity relationship with DPCOA and July 1, 2001 for DPOA members and their fire equivalents), the Pension Improvement Factor (Escalator) described in this Section shall be re-computed each Fiscal Year on the basis of the amount of Pension received in the previous Fiscal Year (i.e., the 2.25% per annum escalation amount shall be compounded).

Pension benefits for DPCOA members under Component II based on service rendered after November 30, 2012 shall not be subject to any escalation amounts.

The Pension portion of any Retirement Allowance or death benefit of a Member, or Beneficiary of a Member as defined in Article D, Section D-1(d) of the Combined Plan provisions, and Article 51.G. of the DPLSA collective bargaining agreement or Article 3.K. of the DPOA collective bargaining agreement (to include those Members who opt out to retire under the New Plan provisions) earned after April 1, 2011 (for DPLSA members) or September 1, 2011 (for DPOA members), shall not be increased whatsoever, per annum or otherwise. Subject to Sections K-1(1) and K-3, the Pension portion of any Retirement Allowance or death benefit of a Member, or Beneficiary of a Member as defined herein, accrued prior to April 1, 2011 (for DPLSA members) or September 1, 2011 (for DPOA members), shall still be increased as provided herein. Hence, Pension benefits earned based on service rendered after April 1, 2011 (for DPLSA members) or September 1, 2011 (for DPOA members) will no longer receive the 2.25% per annum escalation amount. Subject to the Plan of Adjustment, the 2.25% per annum escalation amount shall continue to apply to Pension benefits earned based on service rendered before April 1, 2011 (for DPLSA members) or September 1, 2011 (for DPOA members).

### Sec. F-15. Payment.

Subject to Sections K-1(1) and K-3, the escalation factor contained in Section F-14 above shall be payable to the Member or Beneficiary of a Member as defined in Article D, Section D-1(d), notwithstanding any Retirement Allowance or Pension amount limitation provisions in this Component II to the contrary.

### Part D — Death Benefits.

### Sec. F-16. Generally.

If a Member, or a Retiree who was a Member, is killed in the performance of his or her duty or dies as the result of illness contracted or injuries received while in the performance of his or her duty and such death, illness or injuries resulting in death, is found by the Board of Trustees to have resulted from the performance of his or her duty, the following applicable benefits shall be paid, subject to Part I, Section F-25, of this Article F.

(a)     The Accumulated Contributions standing to his or her credit in the Annuity Savings Fund at the time of his or her death shall be paid to such person or persons as he or

she shall have nominated by written designation duly executed and filed with the Board of Trustees. If there is no such designated person surviving, his or her said Accumulated Contributions shall be paid to his or her legal representative, subject to paragraph (e) of this Section F-16.

(b)     A Member's surviving Spouse shall receive a Pension of five-elevenths of the maximum earnable compensation for the rank of Patrolman or Fire Fighter as the case may be determined as of the earlier of (i) the date of death or (ii) June 30, 2014. If his or her child or children under Age eighteen years also survive the deceased Member each such child shall receive a Pension of one-tenth of such maximum earnable compensation as of the earlier of (i) the date of death or (ii) June 30, 2014; provided, that if there are more than two such surviving children under Age eighteen years, each such child's Pension shall be an equal share of seven thirty-thirds of such maximum earnable compensation. Upon the death, marriage, adoption, or Attainment of Age eighteen years of any such child his or her Pension shall terminate and there shall be a redistribution by the Board of Trustees to the deceased Member's remaining eligible children, if any; provided, that in no case shall any such child's Pension exceed one-tenth of such maximum earnable compensation. In no case shall the total of the Pensions, provided for in this paragraph (b), payable on account of the death of a Member exceed two-thirds of the maximum earnable compensation for the rank of Patrolman or Fire Fighter, as the case may be, determined as of the earlier of (i) the date of the Member's death or (ii) June 30, 2014.

Effective July 1, 1986, widows of Police Department or Fire Department employees who have been receiving a flat monthly benefit of $300.00 should receive an increase of $500.00 per month thereby making the flat monthly benefit $800.00.

(c)     If no Spouse survives the deceased Member or if his or her surviving Spouse dies or remarries before his or her youngest unmarried surviving child attains Age eighteen years, his or her unmarried child or children under age eighteen years shall each receive a Pension of one-fourth of the maximum earnable compensation for the rank of Police Employee or Fire Employee, as the case may be, as of the earlier of (i) the date of the Member's death or (ii) June 30, 2014; provided that if there are more than two such surviving children under Age eighteen years, each such child's Pension shall be an equal share of one-half of such maximum earnable compensation. Upon the death, marriage, adoption, or Attainment of Age eighteen years of any such child his or her Pension shall terminate and there shall be a redistribution by the Board of Trustees to the deceased Member's remaining eligible children, if any; provided, that in no case shall any such child's Pension exceed one-fourth of the maximum earnable compensation for the rank of Patrolman or Fire Fighter, as the case may be, determined as of the earlier of (i) the date of the Member's death, and (ii) June 30, 2014.

(d)     If there is no surviving Spouse and if there are no children under Age eighteen years surviving such deceased Member and if he or she leaves surviving either a father or mother or both, whom the Board of Trustees shall find to be actually dependent upon such Member for financial support, such dependent father and mother shall each

receive a Pension of one-sixth of the maximum earnable compensation for the rank of Patrolman or Fire Fighter, as the case may be, determined as of the earlier of (i) the date of the Member's death, and (ii) June 30, 2014.

(e)     If a Member dies intestate, without having designated a person or persons, as provided in sub-section (a) of this Section F-16, and without heirs, the amount of his or her Accumulated Contributions in the Annuity Savings Fund, not to exceed a reasonable sum, to be determined by the Board of Trustees, shall be used to pay his or her burial expenses, provided he or she leave no other estate sufficient for such purpose; any balance credited to such Member in the Annuity Savings Fund, and not used for burial expenses shall remain a part of the funds of the Retirement System and shall be credited to the Pension Accumulation Fund.

(f)     If the maximum earnable compensation for the rank of Patrolman or Fire Fighter, as the case may be, is subsequently changed, the Pensions provided in this Section F-16 for Beneficiaries of Members as defined in Article D, Section D-1(a), (b), or (c) shall be proportionately changed; provided, however, that no increases shall be made after June 30, 2014.

(g)     The maximum earnable compensation for the rank of Patrolman or Fire Fighter, as the case may be, to be used in computing the Pensions provided in this Section for Beneficiaries of Members as defined in Article D, Section D-1(d) shall be the maximum earnable compensation of the rank of Patrolman or Fire Fighter as established by the City's budget for the Fiscal Year in which occurs the earlier of (i) the date of the Member's death, and (ii) June 30, 2014.

## Part E — Nonduty Death.

### Sec. F-17.     Payment of Accumulated Contributions.

If a Member, or a Member who retires after June 30, 1965 under Part B, Section F-7 of this Article F, dies and no Pension or Pensions become payable under this Component II on account of his or her death, the Accumulated Contributions standing to his or her credit in the Annuity Savings Fund at the time of death shall be paid to such person or persons as he or she shall have nominated by written designation duly executed and filed with the Board of Trustees. If there is no such designated person or persons surviving the said Member, his or her said Accumulated Contributions shall be paid to his or her legal representative. If such Member dies intestate, without having designated a person as above provided, and without heirs, his or her said Accumulated Contributions not to exceed a reasonable sum to be determined by the Board of Trustees, shall be used to pay his or her burial expenses, provided he or she leaves no other estate sufficient for such purpose; and any balance credited to such Member in the Annuity Savings Fund not so used for burial expenses shall be transferred to the Survivors Benefit Fund.

### Sec. F-18.     Allowances to surviving spouses.

Upon the death of a Member, or a Member who retires after June 30, 1965 under Part B, Section F-7 of this Article F, and such death is found by the Board of Trustees not to have resulted from the performance of his or her duty, the applicable Retirement Allowances provided

in paragraphs (a), (b), (c) and (d) of Section F-1 shall be paid from the Survivors Benefit Fund, to the extent of available funding, and shall be subject to paragraphs (e), (f) and (g) of Section F-1.

(a) His or her surviving Spouse shall receive a Retirement Allowance computed in the same manner in all respects as if the said Member had (1) regularly retired on the earlier of (i) the day preceding the date of his or her death, or (ii) June 30, 2014, notwithstanding that he or she might not have acquired twenty-five years of creditable service, in the case of a Member as defined in Article D, Section D-1(a), (b), or (c), or notwithstanding that he or she might not have acquired twenty-five years of service or more and had not attained age fifty-five, in the case of a Member as defined in Article D, Section D-1(d); (2) elected Option 2 provided for in Part H of this Article F; and (3) nominated his or her surviving Spouse as joint Beneficiary; provided, that in no case shall the Retirement Allowance payable to such joint Beneficiary be less than twenty per cent of said Member's Average Final Compensation as of the earlier of (i) the Member's date of death, and (ii) June 30, 2014. If a Member who had less than twenty-five years of creditable service dies prior to July 1, 2001, the Retirement Allowance payable to the surviving Spouse shall be terminated in the event the surviving Spouse remarries.

(b) His or her unmarried child or children under Age eighteen years shall each receive a Retirement Allowance of one-seventh of the annual maximum earnable compensation of the rank of a Patrolman or a Fire Fighter, as the case may be determined as of the earlier of (i) the Member's date of death, and (ii) June 30, 2014; provided, that if there are more than two such children, each child shall receive a Retirement Allowance of an equal share of two-sevenths of said annual maximum earnable compensation. Upon any such child's adoption, marriage, death or Attainment of Age eighteen years, whichever occurs first, his or her Retirement Allowance shall terminate, and there shall be a redistribution by the Board of Trustees to the deceased Member's remaining eligible children under Age eighteen years; provided, that in no case shall the Retirement Allowance payable to any such child exceed one-seventh of the said annual maximum earnable compensation.

(c) If, at the time of the said Member's death, there shall be neither a surviving Spouse nor children eligible for a Retirement Allowance provided for in this Section F-18, each of his or her parents shall receive a Retirement Allowance of one-seventh of the annual maximum earnable compensation of a Patrolman, or a Fire Fighter, as the case may be determined as of the earlier of (i) the Member's date of death, and (ii) June 30, 2014; provided, that the Board of Trustees finds that such parent was dependent upon the said Member for at least fifty per cent of his or her financial support. Upon the remarriage of any such parent, his or her Retirement Allowance shall thereupon terminate.

(d) In the event all the Retirement Allowances provided for in this Section F-18, payable on account of the death of a Member terminate before there has been paid an aggregate amount equal to the said Member's Accumulated Contributions standing to his or her credit in the Annuity Savings Fund at the time of death, the difference

13-53846-tjt   Doc 13634-2   Filed 09/09/22   Entered 09/09/22 18:47:23   Page 35 of 79

between his or her said Accumulated Contributions and the said aggregate amount of Retirement Allowances shall be paid to such persons as the said Member shall have nominated by written designation duly executed and filed with the Board of Trustees. If there are no such designated person or persons surviving the said Member such difference, if any, shall be paid to his or her legal representative.

(e)     In no case shall any Retirement Allowance be paid under this Section F-18 on account of the death of a Member if any benefits are paid under Part D of this Article F on account of his or her death. The Retirement Allowance provided for in this Section F-18 shall be subject to Part I of this Article F.

(f)     All benefits provided in this Part E for Beneficiaries of Members as defined in Article D, Section D-1(a), (b), or (c) shall be based on the maximum earnable compensation of the rank of Patrolman or Fire Fighter, as the case may be determined as of the earlier of (i) the Member's date of death, or (ii) June 30, 2014. Subject to the Plan of Adjustment, if a Member died before July 1, 2014 and the compensation of such rank shall be changed prior to July 1, 2014, the benefits provided shall be changed proportionately. All benefits provided in this Part E for Beneficiaries of Members as defined in Article D, Section D-1(d) shall be based on the maximum earnable compensation of the rank of Patrolman or Fire Fighter as established in the City's budget for the year of the earlier of (i) the Member's death or (ii) June 30, 2014.

(g)     In the event a Member has withdrawn his or her Accumulated Contributions from the Annuity Savings Fund and has not returned in full all amounts due the fund by him or her, the survivors benefits provided in paragraphs (a), (b), (c) and (d) of this Section F-18 shall be reduced to the proportion that the Member's Accumulated Contributions standing to his or her credit in the Annuity Savings Fund, at the time of his or her death bears to the amount his or her Accumulated Contributions would have been had he or she not made a withdrawal from the Annuity Savings Fund.

**Part F — Termination of Membership Otherwise than
by Retirement, Death or Becoming a Beneficiary.**

**Sec. F-19.     Payment of benefits to employees who became Members before January 1, 1969.**

If the membership of a Member as defined in Article D, Section D-1(a), (b), or (c) shall terminate for any reason other than retirement, his or her becoming a Beneficiary, or death, the Member shall be paid the Accumulated Contributions standing to the credit of his or her individual account in the Annuity Savings Fund, such payment to be made within ninety days after such termination of membership; provided, however, that if a Member eligible for retirement shall resign or be dismissed from service, the Board of Trustees, on the written petition of such Member filed within one year from his or her separation from service and prior to the withdrawal of his or her Accumulated Contributions in the Annuity Savings Fund, shall grant such Member a service Retirement Allowance computed in accordance with Article F, Part A, Section F-2(a), subject to the provisions of Part G of this Article F.

**Sec. F-20.**     **Payment of benefits to employees who became Members on or after January 1, 1969.**

If the membership of a Member as defined in Article D, Section D-1(d) shall terminate for any reason other than retirement, his or her becoming a Beneficiary or death, he or she shall be paid the Accumulated Contributions standing to the credit of his or her individual account in the Annuity Savings Fund, such payment to be made within ninety days after such termination of membership; provided, however, that if a Member having twenty-five or more years of service and having attained age fifty-five shall resign or be dismissed from service, the Board of Trustees, on the written petition of such Member filed within one year from his or her separation from service and prior to the withdrawal of his or her Accumulated Contributions in the Annuity Savings Fund, shall grant such Member a service Retirement Allowance computed in accordance with Article F, Part A, Section F-2(b), subject to the provisions of Part G of this Article F.

**Sec. F-21.**     **Deferred vested benefits.**

A Member (i) whose employment is terminated before August 28, 2003 and who is credited with eight or more years of creditable service and has attained Age forty, or (ii) whose employment is terminated after August 27, 2003 and who is credited with ten or more years of creditable service, but in each case less than twenty-five years (effective as of March 8, 2007, twenty years for DPOA members and fire equivalents) of creditable service shall be eligible to receive a full Retirement Allowance under Component II beginning on the date upon which the Member would have been eligible to commence a full Retirement Allowance had he or she continued in the service of the City until such date. Alternatively, such Member may elect to receive an actuarially reduced early Retirement Allowance at any time following his or her termination of employment with the City.

Part G — Conviction of Felony.

**Sec. F-22.**     **Forfeiture of rights.**

If a Member or Retiree as defined in Article D, Section D-1(a), (b), (c) or (d) shall be convicted of by a court of competent jurisdiction or enters a nolo contendere plea accepted by a court for a felony against the City arising out of his or her service as an employee of the City and while a Member of the Retirement System, the court may order the forfeiture of all or a portion of the rights of the Member to benefits hereunder, except the return of his or her Accumulated Contributions, as provided in the *Public Employee Retirement Benefits Forfeiture Act, MCL 38.2701, et. seq.* In such case, the Retirement System shall pay to an individual, if any, who would otherwise be a Beneficiary of the Member or Retiree whose retirement benefit is being forfeited under this Section F-22 an Actuarially Equivalent monthly Retirement Allowance at the Age that the Member or Retiree would have become eligible for unreduced retirement benefits under the Retirement System.

## Part H — Option Elections.

**Sec. F-23.**    **Generally.**

(a)    Prior to the first payment of any Retirement Allowance normally due, except a disability Pension payable under Part B, Sections F-8 and F-11 of this article, a Member may elect to receive his or her Retirement Allowance as a Straight Life Retirement Allowance payable throughout the Member's life, or the Member may elect to receive the Actuarial Equivalent, as of the date of the Member's retirement, of his or her Straight Life Retirement Allowance in a reduced Retirement Allowance payable throughout the Member's life and nominate a joint Beneficiary, in accordance with the provisions of Options 1, 2, 3, 3(A) or 3(B) as follows:

(1)    OPTION 1. *Modified Cash Refund Annuity.* Under Option 1, a Member will receive a reduced Retirement Allowance. If a Member who selected Option 1 dies before full payment of the Annuity has been received, the person or persons nominated by that Member's written designation duly executed by the Member and filed with the Board of Trustees shall receive in a single payment the difference between the present value of the Member's Annuity on the date the Member retired, minus the amount of Annuity payments already paid to the Member. If there is no such designated person(s) surviving the retired deceased Member, such difference, if any, shall be paid to the Member's legal representative.

(2)    OPTION 2. *Joint and Last Survivorship Retirement Allowance.* Under Option 2, upon a Member's death, payment of a reduced Retirement Allowance shall be continued through the life of and paid the person having an insurable interest in the Member's life and nominated by written designation duly executed by the Member and filed with the Board of Trustees prior to the first payment of the Member's Retirement Allowance is due.

(3)    OPTION 3. *Joint and Seventy-Five Percent Survivor Allowance.* Under Option 3, upon a Member's death, payment of seventy-five percent (75%) of the Member's reduced Retirement Allowance shall be continued throughout the life of and paid to the person having an insurable interest in the Member's life and nominated by that Member's written designation duly executed by the Member and filed with the Board of Trustees prior to the date the first payment of the Retirement Allowance is due.

(4)    OPTION 3(A). *Modified Joint and Last Survivorship Allowance.* Under Option 3(A), upon a Member's death, payment of one-half (50%) of the Member's reduced Retirement Allowance shall be continued throughout the life of and paid to the person having an insurable interest in the Member's life and nominated by that Member's written designation duly executed by the Member and filed with the Board of Trustees prior to the date the first payment of the Retirement Allowance is due.

13-53846-tjt    Doc 13634-2    Filed 09/09/22    Entered 09/09/22 18:47:23    Page 38 of 79

(5) OPTION 3(B). *Joint and Twenty-Five Percent Survivor Allowance*. Under Option 3(B), upon a Member's death, payment of twenty-five percent (25%) of the Member's reduced Retirement Allowance shall be continued throughout the life of and paid to the person having an insurable interest in the Member's life and nominated by that Member's written designation duly executed by the Member and filed with the Board of Trustees prior to the date the first payment of the Retirement Allowance is due.

(b) The Joint and Survivor Optional Forms of Payment provided under Options 2, 3, 3(A) and 3(B) shall be made available in either the standard form or the pop-up form, as follows:

(i) *Standard Form*. Under the Standard Form, the reduced Retirement Allowance shall be paid throughout the lifetime of the Retiree.

(ii) *Pop-up Form*. Under the Pop-up Form, the reduced allowance shall be paid throughout the lifetime of the Retiree and the designated Beneficiary. In the event of the death of the designated Beneficiary during the lifetime of the Retiree, the amount of the allowance shall be changed to the amount that would have been payable had the Retiree elected the Straight Life Form of Payment. The actuarial cost of the change in benefit shall be borne by the Member who seeks change in his or her election.

In addition, a Member may elect to have all or part of his or her Accumulated Contributions paid to the Member in a single sum or used to purchase an annuity contract from an insurance company of his or her choice in which case, any annuity payments attributable to such amount under the Retirement System shall not be payable from the Annuity Reserve fund but shall be the responsibility of the insurance company. A Member's Retirement Allowance shall be reduced by the Actuarial Equivalent of the amount so paid or used.

(c) This Section does not rescind any substantive rights of disability Retirees from the Retirement System who retired prior to the arbitration decision regarding DPOA members that became effective on July 1, 1995, or the arbitration decision regarding DPLSA members that became effective on June 30, 1998.

(d) This Section does not amend any computations used to determine benefits under Part B, Sections F-8 and F-11 of this Component II, or result in an increase or decrease in such benefits.

(e) Retirees of the Retirement System shall be entitled to change their Pension option from either Option 2, Option 3, Option 3(A) or Option 3(B) to a Straight Life Retirement Allowance after they have commenced collection of the Pension if the Member's Beneficiary predeceases the Member. The actuarial cost of the change in benefit shall be borne by the Member who seeks change in his or her option election. The pop-up option shall be based upon the investment return assumption as recommended by the Plan Actuary and adopted by the Board of Trustees.

### Sec. F-24.  Disposition of surplus benefits upon death of Member and Beneficiary.

In the event a Member elected Option 2, 3, 3(A) or 3(B) provided for in Section F-23 of this Part H and both the Member and his or her designated joint Beneficiary die before there has been paid in Retirement Allowances an aggregate amount equal to his or her Accumulated Contributions standing to his or her credit in the Annuity Savings Fund at the time of his or her retirement, the difference between his or her said Accumulated Contributions and the said aggregate amount of Retirement Allowances paid shall be paid to the said retired Member's Beneficiary or legal representative.

## Part I — Pension Offset by Compensation Benefits.

### Sec. F-25.  Generally.

Any amounts which may be paid under the provisions of any workmen's compensation, or pension, or similar law to a Member, or to the dependents of a Member on account of any disability or death, shall be offset against and payable out of funds provided by the City under the provisions of the Retirement System on account of the same disability or death. In case the present value of the total commuted benefits under said workmen's compensation, pension, or similar law, is less than the Pension Reserve or benefits otherwise payable from the funds provided by the City under this Retirement System, then the present value of the commuted payments shall be deducted from the Pension Reserve, and such benefits as may be provided by the Pension Reserve, so reduced, shall be payable under the provisions of the Retirement System.

## Part J — Monthly Payments.

### Sec. F-26.  Generally.

Unless otherwise herein provided, all benefits payable under this Retirement System shall be paid in equal monthly installments.

## Part K — Re-Examination of Beneficiaries.

### Sec. F-27.  Authority of Board.

(a)  Once each year during the retirement of a Member on a disability Pension or a disability Retirement Allowance and at least once in every three year period thereafter the Board of Trustees shall require any disability Retiree, if he or she would not then be eligible for a service Retirement Allowance had he or she remained in active service, to undergo a medical examination at a place to be fixed by the Board of Trustees. If the Retiree shall be required to travel more than twenty miles to reach such place, the Board of Trustees shall pay his or her reasonable traveling expenses. Should such disability Retiree refuse to submit to such examination, his or her disability Pension or disability Retirement Allowance may be discontinued until he or she shall submit to such examination and should such refusal continue for one year, all of the Member's rights in and to a Pension may be revoked by the Board of Trustees. If, on medical examination of a Beneficiary, the Board of Trustees determines that the Retiree is physically able and capable of resuming active duty, he

13-53846-tjt   Doc 13634-2   Filed 09/09/22   Entered 09/09/22 18:47:23   Page 40 of 79

or she shall be restored to such duty and his or her other disability Pension or disability Retirement Allowance shall cease. Such Member so restored to active duty shall be returned to duty in a rank or grade equivalent to or higher than the rank or grade in which he or she was serving at the time of his or her last retirement and his or her compensation shall be that provided for the rank or grade in which he or she is restored to service. It shall be the duty of the Commissioner of Police or the Board of Fire Commissioners to restore such Member to duty forthwith.

(b)     If the Board of Trustees determines that a disabled Old Plan Member is engaged in a gainful occupation, paying more than the difference between his or her Final Compensation as of the earlier of (i) the date of disability or (ii) June 30, 2014 and his or her disability Pension, or disability Retirement Allowance, the amount of his or her Pension or Retirement Allowance shall be reduced to an amount, which together with the amount earned by the Member, shall equal the amount of such Final Compensation. If the Board of Trustees determines that a disabled New Plan Member is engaged in a gainful occupation, paying more than the difference between his or her base salary at the earlier of (i) the date of disability or (ii) June 30, 2014, increased by two and twenty-five one hundredths percent (2.25%) for each full year from the date of disability and prior to July 1, 2014 and his or her disability Pension, or disability Retirement Allowance, the amount of his or her Pension or Retirement Allowance shall be reduced to an amount, which together with the amount earned by him or her, shall equal the amount of such base salary. Should his or her earnings be later changed, the amount of his or her Pension or Retirement Allowance may be further modified in like manner.

(c)     A disability Retiree who shall be reinstated to active service prior to July 1, 2014 as provided in this Section, shall from the date of such restoration again become a Member of the Retirement System, and he or she shall contribute to the Retirement System thereafter in the same manner and at the same rate as he or she paid prior to his or her disability retirement. A disability Retiree who shall be reinstated to active service after June 30, 2014, shall from the date of such restoration become an active Member of the Retirement System and shall accrue future benefits pursuant to Component I. He or she shall contribute to the Retirement System at the rate required of active Members pursuant to Component I. Any Prior Service and Membership Service on the basis of which his or her service was computed at the time of his or her disability retirement shall be restored to full force and effect, and he or she shall be given service credit under Component I or Component II, as applicable, for the period of time he or she was in retirement due to such disability, except in the case of non-duty disability.

### Part L — Withdrawal of Accumulated Contributions

**Sec. F-28.     Member With Twenty or Twenty-Five Years of Service.**

Effective July 1, 1982, a Member with twenty-five years or more of creditable service (effective as of March 8, 2007, twenty years for DPOA members and fire equivalents) shall be allowed to withdraw either a portion or the full amount of his or her Accumulated Contributions,

one time only, whether or not the Member retires. A Member shall make such election prior to the receipt of his or her first retirement benefit check.

### Sec. F-29. Disabled Member

A Member who is receiving disability benefits (duty or non-duty) from the Retirement System and who has twenty-five years (effective as of March 8, 2007, twenty years for DPOA members and fire equivalents) or more of creditable service shall have the right to withdraw the full amount of his or her Accumulated Contributions. If such Member withdraws his or her Accumulated Contributions, his or her Retirement Allowance shall be actuarially reduced to reflect such withdrawal.

### Sec. F-30. Optional Annuity Withdrawal

(a)     A Member shall have the right to elect to receive on the effective date of his or her service retirement a partial or total refund of his or her Accumulated Contributions. If a Member makes such an election, an Annuity payable under any Retirement Allowance or reduced Retirement Allowance shall be reduced proportionally. If the total Accumulated Contributions are withdrawn, no Annuity shall be payable.

The limitation of fifteen twenty-seconds of the maximum earnable compensation of a Police Employee and Fire Employee continues in effect. For purposes of determining the fifteen twenty-seconds limitation, a computation based on the Annuity which is an Actuarial Equivalent of the Accumulated Contributions standing to a Member's credit in the Annuity Savings Fund prior to any partial or total refund will be used.

On or after July 1, 1974, Members or former Members who are entitled to begin to receive the 40 & 8 benefit provided under Section F-6 will be entitled to the Annuity refund withdrawal option.

On or after July 1, 1974, non-duty disability Retirees represented by DFFA, DPCOA and DPLSA who retired pursuant to Article D, Section D-1(a), (b) or (c) prior to having twenty-five years of service credit, shall be entitled to the Annuity refund withdrawal option on the date he or she would have had twenty-five years of service credit had he or she continued as an active employee. Said option shall only apply to the balance of Accumulated Contributions, if any, remaining to such Retiree's credit in accordance with the existing Annuity refund provisions.

Survivor benefit beneficiaries as defined in Title IX, Chapter VII, Article VI, Part E, Section 2, parts (a), (b) and (c) of the 1918 City Charter in effect as of June 30, 1974, and continued in effect by Section 11-102 of the City Charter shall be entitled to the Annuity withdrawal refund option subject to the same rules that would have been applicable to the deceased Member had he or she not died. Said option shall only apply to the balance of Accumulated Contributions, if any, remaining to the applicable Member's credit.

In any case of doubt, the Board of Trustees shall decide whether a Member or Beneficiary is entitled to an Annuity refund withdrawal option.

(b)     A Member shall have the right on or after the effective date of his or her becoming eligible for a full service Retirement Allowance (Members who have either twenty or twenty-five years of creditable service depending upon the applicable bargaining unit) to elect to receive a partial or total refund of his or her Accumulated Contributions to the Annuity Savings Fund. If a Member makes such an election, an Annuity payable under any Retirement Allowance or reduced Retirement Allowance shall be reduced proportionally. If the total Accumulated Contributions are withdrawn, no Annuity shall be payable.

If a Member makes such an election, the Retirement Allowance shall be reduced to reflect the value of the Annuity withdrawn. The amount of the Annuity at the time of such election shall be the amount used at the time of retirement for purposes of computing the Retirement Allowance.

All members (except DPOA members retiring prior to July 1, 1982) who complete their required years of service, shall have the right to withdraw all or part of their Accumulated Contributions whether they choose to retire or not.

Effective July 21, 2000 for DFFA members having a parity relationship with the DPOA and for the DPCOA Inspector, and effective July 1, 2003 for DPLSA members, and effective July 21, 2000 for DPOA members, a Member who has elected to retire and elected to withdraw his or her Annuity for the purposes of calculating his or her Retirement Allowance (thereby lowering the Retirement Allowance), may nevertheless choose to leave the Annuity in the Retirement System collecting Regular Interest with the option of a one-time withdrawal of the Annuity funds at a later date.

For a DPCOA, DPLSA or DFFA member or an employee with a parity relationship with the DPLSA and for the DPCOA Inspector who retires on or after July 1, 1990, and who has made or makes an election to receive a total or partial refund of his or her Accumulated Contribution to the Annuity Savings Fund, there shall be no reduction of Retirement Allowances due to the portion of withdrawal representing interest credits. For members of DFFA and DPLSA, this subsection shall be controlled by the requirements of the Act 312 arbitration award issued June 25, 1990 (MERC Case No. B89 C-0622, page numbers 22 and 23).

Effective January 15, 2010 for members of DPCOA and fire equivalents, or December 15, 2008 for DPLSA and fire equivalents, or March 8, 2007 for DPOA members and fire equivalents, a Member who retires and elects to leave a balance in the Annuity Savings Fund shall have the option of receiving a quarterly payment of interest earnings only or to take periodic withdrawals of principal, in addition to a one time complete withdrawal. Members of DPCOA and DPLSA and their fire equivalents must make their elections a minimum of thirty days before the beginning of a quarter; the beginning of a quarter is defined as March 1, June 1, September 1, and December 1.

An employee represented by DFFA, DPCOA or DPLSA who is entitled to a Retirement Allowance under Article F, Part A, Section F-5 of the Retirement System and who leaves the employ of the Police or Fire Department of the City on or after July 1, 1982 shall have the right to elect to receive on the effective date of termination a partial or total refund of his or her Accumulated Contributions. The Pension portion of his or her Retirement Allowance shall be computed as if the Member had not withdrawn his or her Accumulated Contributions from the Annuity Savings Fund until the date he or she was eligible to retire had he or she continued in City employment.

(c)  Effective in accordance with the specific date and terms of the DPOA award in Act 312 No. D98 E-0840 (Chairman Donald F. Sugerman, dated July 21, 2000), a DPOA member shall have the right to leave his or her withdrawn Annuity in the Retirement System and accumulating Regular Interest, as provided herein.

(d)  Effective July 1, 1974, a Member who holds the rank of police inspector and above and who is not covered by a collective bargaining agreement shall, notwithstanding any other provisions of Component II to the contrary, have the right to elect to receive on the effective date of his or her service retirement a partial or total refund of his or her Accumulated Contributions. Effective as of March 8, 2007, a DPOA and fire equivalent Retiree who elects not to withdraw his or her Accumulated Contributions as of the effective date of his or her service retirement shall have the option of receiving a quarterly payment of interest credited to his or her Accumulated Contributions or to receive periodic withdrawals of the contributions such Retiree made to Component II of the Retirement System. If a Member makes such an election, an Annuity payable under any Retirement Allowance or reduced Retirement Allowance shall be reduced proportionately. If the total Accumulated Contributions are withdrawn no Annuity shall be payable with respect to such withdrawn amounts.

# ARTICLE G.  METHOD OF FINANCING.

## Sec. G-1.       General.

The funds of Component II of the Retirement System shall be the Annuity Savings Fund, Annuity Reserve Fund, Pension Accumulation Fund, Pension Reserve Fund, Deferred Retirement Option Plan Fund, Expense Fund and the Survivors Benefit Fund.

## Sec. G-2.       Annuity Savings Fund.

(a)     The Annuity Savings Fund shall be the fund in which shall be accumulated at Regular Interest, in accordance with the limitations that are contained in Section C-1(20) of this Component II, the contributions deducted from the compensation of Members prior to the first payroll date occurring in August 2014 to provide for their Annuities. Subject to Section B-1(c), the contributions of a Member as defined in Article D, Section D-1(a), (b) or (c) shall be five percent of a Member's compensation until the Member has acquired twenty-five years of creditable service.  Subject to Section B-1(c), the contribution of a Member as defined in Article D, Section D-1(d) shall be five percent of his or her compensation until he or she has acquired at least twenty-five years of creditable service (effective as of March 8, 2007, twenty years for DPOA members and fire equivalents) and attained age fifty-five.  No Member shall have the option of choosing to receive the compensation required to be contributed hereunder directly instead of having such amounts paid by the City to the Annuity Savings Fund.

(b)     The City shall cause the contributions provided for in paragraph (a) above to be deducted from the compensation of each Member on each and every payroll, for each and every payroll period, from the date of his or her entrance in the System to the earlier of (i) the date he or she ceases to be a Member or (ii) the last payroll date occurring in July 2014.

(c)     The deductions provided for herein shall be made notwithstanding that the minimum compensation provided by law for any Member shall be reduced thereby.  Every Member shall be deemed to consent and agree to the deductions made and provided for herein, and payment of his or her salary or compensation, less said deduction, shall be a full and complete discharge and acquittance of all claims and demands whatsoever for the services rendered by such person during the period covered by such payments, except as to the benefits provided under this Retirement System.  The amounts to be deducted shall be deducted by the City Treasurer and when deducted shall be paid into the Annuity Savings Fund and shall be credited to the individual account of the Member from whose compensation said deduction was made.

(d)     If, under the provisions of this Component II, any person shall withdraw or be paid any part or all of his or her Accumulated Contributions and shall thereafter again become a Member on or before June 30, 2014, he or she shall, in addition to the contributions provided for in paragraph (a) above, redeposit in the Annuity Savings Fund, by an increased rate of contribution to be determined by the Board of Trustees,

(e) or by a single payment, such amount that his or her Accumulated Contributions at the date of his or her eligibility for retirement will be the same amount it would have been had no withdrawal or payment been made therefrom.

(e) Except as is otherwise provided in this Component II, upon the death or retirement of a Member, his or her Accumulated Contributions shall be transferred from the Annuity Savings Fund to the Annuity Reserve Fund.

(f) In any Plan Year during the period beginning on or after July 1, 2014 and ending June 30, 2023 in which the annual rate of return credited to the accounts of Members investing in the Annuity Savings Fund as provided in paragraph (a) is less than the actual rate of return net of expenses of the Retirement System's invested assets for the second Plan Year immediately preceding the Plan Year in which the annual rate of return is credited ("ASF Return Excess"), an amount equal to the value of the ASF Return Excess shall be transferred to the Pension Accumulation Fund maintained under Component I of the Combined Plan and shall be used to fund the Transition Cost relating to Component I. The Transition Cost is a measure of the liability that Component I of the Retirement System has at its inception; due to the fact that, at its inception, Members in Component I of the Retirement System receive vesting and eligibility credit under Component I for service that was earned prior to July 1, 2014 and is otherwise credited to Members under Component II of the Retirement System, as such Transition Cost is calculated by the Plan Actuary. In the event there is an ASF Return Excess for a Plan Year following the Plan Year in which such transfers have fully funded the Transition Cost relating to Component I, fifty percent (50%) of such ASF Return Excess shall be transferred to the Pension Accumulation Fund maintained under Component II and the remaining fifty percent (50%) of such ASF Return Excess shall be transferred to Component I and credited to the Rate Stabilization Fund maintained under Component I. "Transition Cost" shall be determined by the Plan Actuary.

## Sec. G-3.    Annuity Reserve Fund.

The Annuity Reserve Fund shall be the fund from which shall be paid all Annuities payable as provided in this Component II, except Annuities which are payable from the Survivors Benefit Fund. Should a disability Retiree be restored to active service, his or her Annuity Reserve at the time shall be transferred from the Annuity Reserve Fund to the Annuity Savings Fund and credited to his or her individual account therein.

## Sec. G-4.    Alternative Financing Method.

Except as provided regarding the Survivors Benefit Fund, the Pension Accumulation Fund shall be the fund in which shall be accumulated reserves for the Pensions and other benefits payable from contributions made by the City and other third-party entities, and from which transfers shall be made as provided in this section.

(a)    *Accrued Liability Fund.* Pursuant to *Ordinance No. 05-05*, which authorized the creation of the Detroit Police and Fire Retirement System Service Corporation, the

City entered into a transaction ("the Pension Funding Transaction") to obtain funds as an alternative to those available through the traditional funding mechanism described in Section G-5. The proceeds generated by the Pension Funding Transaction (or any Additional Pension Funding Transaction) that were deposited into the Retirement System will be termed the "Funding Proceeds." The Funding Proceeds were deposited into a new Fund in the Retirement System called the Accrued Liability Fund. The purpose of the Funding Proceeds is to fund all or part of the theretofore unfunded accrued liabilities ("UAAL") of the Retirement System. The Funding Proceeds are assets of the Retirement System and will be applied, together with all other assets of the Retirement System, to fund the Retirement System's obligation to pay accrued benefits, as adjusted in the Plan of Adjustment.

This Accrued Liability Fund shall contain only the Funding Proceeds of the Pension Funding Transaction, the Additional Pension Funding Transaction and any earnings thereon. Prior to Fiscal Year 2013, funds were transferred each Fiscal Year (or monthly portion thereof) from the Accrued Liability Fund to the Pension Accumulation Fund as provided in the documents governing the Retirement System, including *Ordinance No. 5-05.*

(b)     As soon as practicable following the effective date of the Plan of Adjustment, any amounts remaining credited to the Accrued Liability Fund shall be transferred to the Pension Accumulation Fund and the Accrued Liability Fund shall cease to exist.

**Sec. G-5.     Contributions to and payments from Pension Accumulation Fund.**

Contributions to and payments from the Pension Accumulation Fund shall be made as follows:

(a)     For Fiscal Years commencing prior to July 1, 2014, upon the basis of such assumptions as to future financial experiences as the Board of Trustees shall from time to time adopt, the Actuary annually computed the City's contribution, expressed as a percent of active Member contributions, to provide the Pension Reserves covering the Pensions or other City-financed benefits to which Members might be entitled or which might be payable at the time of their discontinuances of City employment under this Component II; provided, such contribution percents shall not be less than amounts which, expressed as percents of active Member compensation, will remain level from generation to generation of Detroit citizens.    Upon the retirement or death of a Member, the Pension Reserve for any benefits payable on his or her behalf shall be transferred from the Pension Accumulation Fund to the Pension Reserve Fund, to the extent of there being assets in the Pension Accumulation Fund.

(b)     Subject to the Plan of Adjustment, for Fiscal Years commencing prior to July 1, 2014 and on and after July 1, 2023, the Board of Trustees annually ascertained and reported to the Mayor and the Council the amount of contributions due the Retirement System by the City, and the Council shall appropriate and the City shall pay such contributions to the Retirement System during the ensuing Fiscal Year. When paid, such contributions shall be credited to the Pension Accumulation Fund.

(c)     For Fiscal Years commencing after June 30, 2014 and prior to July 1, 2023, the City shall make contributions to the Pension Accumulation Fund only as provided in the Plan of Adjustment.

**Sec. G-6.     Retiree payments from Pension Reserve Fund; reinstatement of disability Retirees to active service.**

Except as to the Survivor's Benefit Fund, the Pension Reserve Fund shall be the fund from which shall be paid Pensions on account of Members.  Should a disability Retiree be reinstated to active service, the Member's Pension Reserve, at that time, shall be transferred from the Pension Reserve Fund to the Pension Accumulation Fund.

**Sec. G-7.     Expense Fund.**

The Expense Fund shall be the fund to which shall be credited all money provided by the City, if any, to pay the administration expenses of Component II, and from which shall be paid the expenses necessary in connection with the administration and operation of Component II.

**Sec. G-8.     Deferred Retirement Option Plan Fund.**

The Deferred Retirement Option Plan Fund shall be the fund in which shall be accumulated the amounts credited to the DROP Accounts of Members who have elected to participate in the DROP Program pursuant to Article I, together with earnings thereon, provided that the DROP Accounts are held and invested within the Retirement System.

**Sec. G-9.     Appropriations prior to July 1, 2014 and after June 30, 2023.**

(a)     The Board of Trustees shall certify to the City Council the amount of the appropriation necessary to pay to the various funds of Component II of the Retirement System the amounts payable by the City as enumerated in this Component II, according to legal budget procedure.

(b)     To cover the requirements of Component II prior to July 1, 2014 and after June 30, 2023, such amounts as shall be necessary to cover the needs of Component II shall be paid into the Pension Accumulation Fund and the Expense Fund by special appropriations or transfers to the Retirement System; provided, however that no transfers can be made from the Accrued Liability Fund other than the annual transfer of the scheduled amortizing amount, or transfers under special circumstances pursuant to Section G-4 (as in effect prior to July 1, 2014).

**Sec. G-10.     Maintenance of reserves.**

The maintenance of the Annuity Reserves in the Annuity Reserve Fund and the Pension Reserves in the Pension Reserve Fund are hereby made obligations of the Pension Accumulation Fund. Except as provided in Section G-2(f), all income, interest, and dividends derived from deposits and investments authorized by this Component II, which are not required for the allowance of interest to the funds of the Retirement System as provided herein, shall be credited to the Pension Accumulation Fund. Prior to July 1, 2014, the moneys credited to the Accrued

Liability Fund were credited to the Pension Accumulation Fund only to the extent authorized pursuant to the terms of the Retirement System as in effect prior to July 1, 2014. Any contributions by the City to the Retirement System from any fund impressed by law with a certain and definite purpose shall be accounted for separately.

**Sec. G-11.**    **Survivors Benefit Fund.**

(a)    The Survivors Benefit Fund shall be the fund in which shall be accumulated, at Regular Interest, the reserves for survivors benefits provided for in Article F, Part E, Section F-18, hereof, and from which such benefits shall be paid, but only to the extent sufficient assets are credited to the fund at the time a claim for benefits is made. In the event there are insufficient assets credited to the Survivor's Benefit Fund to pay the benefits provided under this Section G-10, such benefits thereafter shall be payable from the Pension Reserve Fund.

(b)    After June 30, 1965 and prior to July 1, 1986, each Member shall contribute to the Survivors Benefit Fund one per cent of his or her compensation paid by the City until he or she has acquired twenty-five years of creditable service. The City shall cause the said contributions to be deducted from the Member's compensation, on each and every payroll, for each and every payroll period so long as he or she remains a Member and has not acquired twenty-five years of creditable service. Each and every Member shall be deemed to consent and agree to the said deductions. Said contributions, when deducted, shall be credited to the Survivors Benefit Fund and shall in no case become a part of the said Member's Accumulated Contributions, nor be subject to refund.

(c)    Each Member who retires after June 30, 1965, under Part B, Section F-7 of Article F shall, prior to July 1, 1986, contribute to the Survivors Benefit Fund one per cent of his or her final compensation as defined until he or she would have had a total of twenty-five years of creditable service had he or she continued in active service. The Retirement System shall cause the said contribution to be deducted from the Pension of each such retired Member on each and every retirement roll, for each and every retirement roll period, so long as he or she is receiving a Pension under Part B, Section F-8(a) of Article F. Each and every such retired Member who is receiving a Pension under Part B, Section F-8(a) of Article F shall be deemed to consent and agree to said deductions. Said contributions, when deducted, shall be credited to the Survivors Benefit Fund and shall in no case become a part of said Member's Accumulated Contributions, nor be subject to refund.

(d)    Effective July 1, 1986, the contributions, required by Article G, Section G-10(b) and G-10(c), to the Survivors Benefit Fund were eliminated for union members. For Fiscal Years ending prior to July 1, 2014, the City shall make the contributions necessary to maintain the benefit level by contributing that amount necessary to replace the contributions of members of DFFA and DPOA to the Survivor's Benefit Fund.

(e)     For Fiscal Years ending prior to July 1, 2014, upon the basis of such mortality and other tables of experience, and Regular Interest, as the Board of Trustees shall from time to time adopt, the Actuary shall annually compute the liabilities for benefits being paid from the Survivors Benefit Fund. The Board of Trustees shall report to the Mayor and the City Council the amount of contributions to be made by the City to the Survivors Benefit Fund, and the City Council shall appropriate and the City shall pay such amount to the Retirement System during the ensuing Fiscal Year. When paid, such appropriations shall be credited to the Survivors Benefit Fund. For Fiscal Years commencing prior to July 1, 2014, if the balance in the fund is not sufficient to fully cover the liabilities so computed, the City shall appropriate and pay, in the ensuing Fiscal Year, the amount of such insufficiency. For Fiscal Years commencing on and after July 1, 2014, the City shall not make any contributions to the Survivor's Benefit Fund.

(f)     Upon the death of a Member on whose account survivors benefits become payable as provided in Article F, Part B, Section F-8, hereof, his or her Accumulated Contributions standing to his or her credit in the Annuity Savings Fund at the time of his or her death shall be transferred from the Annuity Savings Fund to, and shall become a part of, the Survivors Benefit Fund, notwithstanding any provisions in this Component II to the contrary.

## Sec. G-12.     Computation of Annuity and Pension Reserve liabilities for Members, Retirees and Beneficiaries.

In computing the Annuity and Pension Reserve liabilities for Members, Retirees and Beneficiaries, the Board of Trustees shall cause the following annual Decrement Probabilities, Salary Factors and interest assumption to be used.

(a)     The annual Decrement Probabilities and Salary Factors to be used in evaluating the Annuity and Pension liabilities for Members shall be as shown in Tables 1 and 2 hereinafter set forth.

(b)     The total of active Member annual compensation shall be assumed to increase three percent per annum, compounded annually.

(c)     The mortality assumption for Retirees and Beneficiaries shall be the mortality rates contained in the 1971 group annuity male mortality table, without setback for men and set back five years for women.

(d)     The investment return assumption shall be five percent per annum, compounded annually, for Fiscal Years commencing prior to July 1, 2014.

(e)     For Fiscal Years commencing on or after July 1, 2014, the Annuity and Pension Reserve liabilities shall be calculated in a manner which is consistent with the Plan of Adjustment.

## TABLE 1.

**City of Detroit Policemen and Firemen
Retirement System
Active Member Annual**

**Probabilities
and Salary Factors**

| Age | Withdrawal from Service | Death in Service | Salary Factors |
|---|---|---|---|
| 18 | .04120 | .00098 | .10561 |
| 19 | .04090 | .04099 | .11327 |
| 20 | .04030 | .00100 | .12126 |
| 21 | .04000 | .00101 | .12988 |
| 22 | .03960 | .00102 | .13913 |
| 23 | .03910 | .00103 | .14913 |
| 24 | .03890 | .00104 | .15971 |
| 25 | .03840 | .00105 | .17068 |
| 26 | .03800 | .00107 | .18204 |
| 27 | .03700 | .00108 | .19347 |
| 28 | .03600 | .00111 | .20527 |
| 29 | .03480 | .00113 | .21712 |
| 30 | .03340 | .00117 | .22916 |
| 31 | .03200 | .00121 | .24124 |
| 32 | .03000 | .00126 | .25321 |
| 33 | .02730 | .00133 | .26522 |
| 34 | .02370 | .00143 | .27753 |
| 35 | .01990 | .00154 | .29015 |
| 36 | .01500 | .00168 | .30306 |
| 37 | .01160 | .00184 | .31637 |
| 38 | .00850 | .00204 | .32995 |
| 39 | .00600 | .00227 | .34405 |
| 40 | .00390 | .00252 | .35851 |
| 41 | .00210 | .00281 | .37333 |
| 42 | .00090 | .00313 | .38861 |
| 43 | .00000 | .00348 | .40435 |
| 44 | .00000 | .00387 | .42051 |
| 45 | .00000 | .00429 | .43709 |
| 46 | .00000 | .00475 | .45395 |
| 47 | .00000 | .00526 | .47144 |
| 48 | .00000 | .00582 | .48929 |
| 49 | .00000 | .00643 | .50750 |
| 50 | .00000 | .00710 | .52639 |
| 51 | .00000 | .00783 | .54560 |
| 52 | .00000 | .00864 | .56535 |

| Age | Withdrawal from Service | Death in Service | Salary Factors |
|---|---|---|---|
| 53 | .00000 | .00953 | .58548 |
| 54 | .00000 | .01051 | .60612 |
| 55 | .00000 | .01157 | .62711 |
| 56 | .00000 | .01270 | .64867 |
| 57 | .00000 | .01392 | .67066 |
| 58 | .00000 | .01520 | .69319 |
| 59 | .00000 | .01656 | .71610 |
| 60 | .00000 | .01802 | .73939 |
| 61 | .00000 | .01959 | .76316 |
| 62 | .00000 | .02133 | .78747 |
| 63 | .00000 | .02322 | .81211 |
| 64 | .00000 | .02526 | .83715 |
| 65 | .00000 | .02750 | .86258 |
| 66 | .00000 | .03000 | .88848 |
| 67 | .00000 | .03277 | .91514 |
| 68 | .00000 | .03584 | .94264 |
| 69 | .00000 | .03919 | .97094 |
| 70 | .00000 | .04278 | 1.00000 |

## TABLE 2.

**City of Detroit Policemen and Firemen
Retirement System
Annual Probabilities of Age and Service
Retirement Applicable to Members
Who Are Eligible to Retire**

| Age | Probabilities of Retirement |
|-----|------------------------------|
| 45 | 25% |
| 46 | 25 |
| 47 | 25 |
| 48 | 25 |
| 49 | 25 |
| 50 | 25 |
| 51 | 25 |
| 52 | 25 |
| 53 | 25 |
| 54 | 20 |
| 55 | 20 |
| 56 | 15 |
| 57 | 10 |
| 58 | 15 |
| 59 | 30 |
| 60 | 100 |

**Sec. G-13.    Determination of City's annual contribution — Disability Pension liabilities.**

For Fiscal Years commencing prior to July 1, 2014 and after June 30, 2023, the City's annual contribution, expressed as a percent of active Member compensation, to finance disability Pensions shall be determined by dividing the average of the Pension Reserve liabilities for disability retirements incurred during the three Fiscal Years ending with the date of the valuation by one percent of the active Members' annual compensation used in the valuation.

**Sec. G-14.    Determination of City's annual contribution — Death Pension liabilities.**

For Fiscal Years commencing prior to July 1, 2014 and after June 30, 2023, the City's annual contribution, expressed as a percent of active Member compensation, to finance death-in-service Pensions shall be determined by dividing the average of the Pension reserve liabilities for death-in-service claims incurred during the three Fiscal Years ending with the date of the valuation by one percent of the active Member's annual compensation used in the valuation.

**Sec. G-15.    Determination of City's annual contribution — Actuarial evaluation of annuity and Pension Reserve liabilities.**

The Annuity and Pension Reserve liabilities for Members, Retirees and Beneficiaries shall be actuarially evaluated as set forth in this Article G and the Plan of Adjustment.

**Sec. G-16.    Determination of City's annual contribution — Service Pension liabilities for Fiscal Years commencing prior to July 1, 2014 and after June 30, 2023.**

(a)    The service Pension liabilities for Members shall be determined using the entry age-normal cost method of actuarial valuation.

(b)    The City's annual contribution, expressed as a percent of active Member compensation, to finance the prospective service Pension liabilities shall be determined by dividing the total of the individual annual normal costs of the active Members by one percent (1%) of the active Members' annual compensation used in the valuation.

(c)    The City's annual contribution, expressed as a percent of active Member compensation, to finance any unfunded Accrued Service Pension liabilities, including instances in which assets exceed liabilities, shall be determined by dividing such unfunded Accrued Service Pension liabilities by one percent (1%) of the present value of future compensation payable during a period of future years. Such period of future years shall be thirty years for the actuarial valuation as of June 30, 1974, decreasing one (1) year at each subsequent June 30th until a twenty year period is reached, which twenty year period shall be used in each subsequent actuarial valuation until June 30th, 2004 when the period shall again be thirty years.

**Sec. G-17.    Board of trustees to compute City's annual contribution.**

Based upon the provisions of this Article, including any amendments, the Board of Trustees shall compute the City's annual contributions for Fiscal Years commencing prior to July 1, 2014 and after June 30, 2023, expressed as a percent of active Member compensation, to the Retirement System for the Fiscal Year beginning July 1, 1975, using actuarial valuation data as of June 30, 1974, and for each subsequent Fiscal Year prior to July 1, 2014 and after June 30, 2023 using actuarial valuation data as of the June 30th date which date is a year and a day before the first day of such Fiscal Year. The Board shall report to the Mayor and to the City Council the contribution percents so computed, and such contribution percents shall be used in determining the contribution dollars to be appropriated by the City Council and paid to the Retirement System. For each Fiscal Year beginning July 1, 1975 and each Fiscal Year thereafter ending prior to July 1, 2014 and for each Fiscal Year beginning after June 30, 2023, such contribution dollars shall be determined by multiplying the applicable contribution percent for such Fiscal Year by the Member compensation paid for such Fiscal Year; provided that for the one Fiscal Year beginning July 1, 1975 and ending June 30, 1976, such Member compensation so used shall not exceed 106.09 percent of the active Members' annual compensation used in the actuarial valuation determining such contribution percent.

**Sec. G-18.     Employer Contribution**

Effective January 1, 1987 for members of DFFA and DPLSA or upon issuance of the 1986-89 Act 312 Award for members of DPOA, the employee contributions to the Annuity Fund, although designated as employee contributions, shall be paid by the City in lieu of contributions by the employee.  The employee shall not have the option of choosing to receive the contributed amount directly instead of having them paid by the City to the Annuity Fund. There shall be no additional contribution expense to the City, and the amounts so contributed by the City on behalf of the employee shall be treated, for tax purposes, as employer contributions and thus shall not be taxable to the employee until these amounts are distributed or made available to the employee.

This provision shall not affect the amount or benefit level of the Retirement Allowance, or the City's obligation with respect thereto.

## ARTICLE H. MISCELLANEOUS.

**Sec. H-1.**     **Recall of Retirees during emergencies.**

During an emergency declared by the Commissioner of Police or the Board of Fire Commissioners, the Commissioner or the Board of Fire Commissioners, as the case may be, shall have power, with the consent of a Retiree, to recall to active duty a Retiree for such period of service as the commissioner or the Board of Fire Commissioners shall deem advisable; provided, however, that the foregoing power shall not apply in the case of a Retiree who has reached the age of sixty-four years, and provided further, that any Retiree so recalled may, at any time, separate from active duty on his or her own application or by order of the Commissioner or the Board of Fire Commissioners.  A Retiree so recalled shall serve in the rank at which he or she retired, or a higher rank, and shall receive the pay of such rank without deduction.  On subsequent separation from active duty, such Retiree shall resume the Retiree status held by him or her prior to such recall.

# ARTICLE I. DEFERRED RETIREMENT OPTION PLAN.

**Sec. I-1.**      **General provisions.**

For periods on and after July 1, 2014, the Deferred Retirement Option Plan ("DROP") Program under Component II shall be available to Members who are covered by collective bargaining agreements with the City that permit such Members to participate in the DROP program and non-union executives of the Police Department and the Fire Department.

(a)     In lieu of terminating employment and accepting a Retirement Allowance under the Component II, any Member of the Retirement System who is eligible for the DROP program and who is eligible to immediately receive an unreduced Retirement Allowance may elect to participate in the DROP program and defer the receipt of his or her Retirement Allowance in accordance with the provisions of this Article I. Any such election shall be irrevocable.

(b)     Participation in the DROP program for Members for who elected to participate in the DROP program prior to July 1, 2014 shall be limited to ten years. Participation for Members who elect to participate in DROP program after June 30, 2014 shall be limited to five years. At the end of such five (or ten) year period of participation in the DROP program, the Member shall be retired from employment with the City.

**Sec. I-2.**      **Conversion to Retirement Allowance**

Upon the effective date of a Member's participation in the DROP program, the Member shall cease to accrue a Retirement Allowance under Component I and shall elect a form of payment for his or her Retirement Allowance pursuant to Part H of Article F. Seventy-five percent (75%) of the monthly Retirement Allowance (including applicable variable Pension Improvement Factor (Escalator) increases) that would have been payable, had the Member elected to terminate employment with the City on the effective date of his or her DROP election and receive an immediate Retirement Allowance, shall be paid into a DROP Account established on behalf of the Member under the Retirement System or in an entity selected by the Board.

**Sec. I-3.**      **Investment of DROP assets**

(a)     ING was previously selected by the Board as the DROP administration and investment entity for Members who elect to participate in the DROP program. ING shall continue to be the DROP administration and investment entity, unless and until such time as the Board terminates the agreement with ING as provided in paragraph (d) or determines that it is administratively feasible for the DROP program to be administered and invested under the Retirement System.

(b)     As soon as possible after July 1, 2014, the Board shall determine whether it is administratively feasible for the DROP program to be administered and the assets in DROP accounts to be invested under the Retirement System. If the Board determines that it is feasible to administer the DROP program under the Retirement System, the Board shall promptly take appropriate steps to implement such decision.

(c)     If amounts credited to DROP accounts are invested under the Retirement System, such amounts shall be comingled with the assets of the Retirement System for investment purposes and shall be invested by the Trustees. A Member's DROP account shall be credited with annual earnings at a rate equal to seventy-five percent (75%) of the actual net earnings rate of the assets of the Retirement System; however, in no event shall the earnings rate applied to a Member's DROP account for any Plan Year be less than zero percent (0%) nor greater than seven and three-quarters percent (7.75%).

(d)     The Board of Trustees previously entered into an administrative services agreement with ING. Such agreement shall remain in effect until such time as it is terminated by the Board as provided therein.

(e)     The Board of Trustees may replace ING with a trust-type vehicle or the Board may determine that amounts subject to a DROP election will be invested with Retirement System assets as provided above.

(f)     Any fees associated with the maintenance of DROP Accounts outside of the Retirement System shall be paid by the Members by means of deduction from their DROP Accounts.

## Sec. I-4.     Distribution of amounts credited to DROP Account

A Member shall not receive a distribution of amounts credited to his or her DROP Account prior to his or her termination of employment with the City. Upon termination of employment, a Member who is a participant in the DROP program shall receive, at his or her option either a lump sum payment from the DROP Account equal to the amount then credited to the DROP Account or an annuity based upon the amount credited to his or her DROP Account. Any such annuity shall be subject to market rates of interest return and other market-related assumptions as adopted by the Board upon recommendation of the Investment Committee. In addition, one hundred percent (100%) of the Member's monthly Retirement Allowance that otherwise would have been paid as of the date the Member's participation in the DROP program commenced (together with any applicable variable Pension Improvement Factor (Escalator) increases) shall commence to the Member in accordance with the form of payment selected by the Member at the commencement of his or her participation in the DROP program. Termination of employment includes termination of any kind, such as resignation, retirement, discharge or disability.

## Sec. I-5.     Death of Member while participating in the DROP program

If a Member dies while participating in the DROP program, a lump sum payment equal to the Member's DROP Account balance shall be paid to the Beneficiary named by the Member, or if no Beneficiary has been designated, to the Member's estate; provided, notwithstanding anything to the contrary herein, the Member's adjusted DROP Account balance under Component II upon the Member's death while participating in the DROP program shall not be less than total system DROP payments into his or her account (not including earnings and losses). In addition, one hundred percent (100%) of the Member's Retirement Allowance

(together with any applicable variable Pension Improvement Factor (Escalator) increases) that would have been paid to the Member but for the Member's decision to participate in the DROP program will be restored. Survivor benefits, if any, shall be paid in accordance with the payment option elected by the deceased Member at the time the Member elected to participate in the DROP program.

## Sec. I-6.     Disability of Member While Participating in the DROP Program

If a Member becomes Totally Disabled while participating in the DROP program and while still an Employee and his or her employment with the City is terminated because he or she is Totally Disabled, such Member (a) shall be immediately retired and one hundred percent (100%) of the Retirement Allowance that would have been paid to the Member as of the date the Member's participation in the DROP program commenced (together with any applicable variable Pension Improvement Factor (Escalator) increases) will commence in accordance with the payment option selected by the Member at the commencement of the Member's participation in the DROP program as provided in Section I-2, and (b) shall be entitled to receive payment of the funds in his or her DROP Account (in the form of a lump sum or other Actuarially Equivalent form of payment described in Part H of Article F). Such Member shall not be entitled to disability retirement benefits under Article F hereof.

## Sec. I-7.     Cost Neutrality

(a)     The DROP program shall be effective only for as long as it is cost-neutral to the City, provided however, that the DROP program shall continue during the pendency of proceedings, described in paragraph (2) below, designed to restore the Retirement System to cost neutrality.

(b)     If the City contends that the DROP program is not cost-neutral, including, but not limited to, making the City's annual contribution to the Retirement System higher than it would be if the DROP program was not in effect, the Board and the City, along with the Plan Actuary and an actuary appointed by the City (who will be an associate or a fellow of the Society of Actuaries and a member of the American Academy of Actuaries) shall meet and confer in good faith regarding the cost. If the Board and the City are unable to reach an agreement as to cost, the matter shall be submitted to a third, independent, actuary, chosen or agreed upon by the Plan Actuary and the City's actuary. This actuary, when rendering a decision, will be limited to ordering implementation of changes necessary to make the DROP program cost-neutral. Upon the implementation of changes necessary to make the DROP program cost-neutral, Members shall have thirty days to elect to either (a) retire from active employment with the City, or (b) withdraw from the DROP program and resume active participation in Component I of the Retirement System. The Board shall notify DROP participants of these changes prior to implementation. Those DROP participants resuming participation in Component I of the Retirement System shall not accumulate Credited Service for any time that they were participating in the DROP program (under either Component I or Component II). Those not making either election shall continue to participate in the DROP program.

(c)    In the event the DROP program cannot be changed to restore cost neutrality, it shall be discontinued and Members participating in the DROP program at that time shall have the option to either (i) retire, or (ii) continue active employment with the City and resume active participation in Component I of the Retirement System. DROP participants resuming participation in Component I of the Retirement System shall not accumulate Credited Service for the time during which such DROP participants participated in the DROP program (under either Component I or Component II).

## ARTICLE J.  PARTICIPANT ANNUITY SAVINGS FUND LOAN PROGRAM

**Sec. J-1.**     **Participant Annuity Savings Fund Loan Program**

A Participant Annuity Savings Fund Loan Program (Participant Loan Program) will be established and available to bargaining unit Members.  Its terms will be as follows:

(a)     Any loans granted or renewed shall conform to the requirements of Section 72(p) of the Internal Revenue Code and the regulations thereunder.  Such loan program shall be established in writing by the Board of Trustees in conformity with the terms of the Combined Plan Document and applicable collective bargaining agreements, and must include, but need not be limited to the following:

   (1)     The identity of the administrator of the Participant Loan Program;

   (2)     A procedure to apply for loans, the amount of loan that will be approved or denied, and limitations, if any, on the types and amount of loans offered;

   (3)     The procedure under the program for determining a reasonable rate of interest;

   (4)     The events constituting default and the steps that will be taken to preserve plan assets.

(b)     The Participant Loan Program shall be contained in a separate written document copies of which shall be made available in the offices of the Retirement System for Members.  The Board of Trustees is authorized to adopt rules and regulations, from time to time, to govern the administration and the operation of this program.  Copies of the rules shall also be made available to prospective participating Members of the Retirement System in the offices of the Retirement System.

(c)     Subject to the rules and procedures established by the Board, loans may be made to Members from such Member's contributions to the Annuity Savings Fund.  Former Members, Spouses of Members, and Beneficiaries are not eligible to receive any loans from the Retirement System.  Subject to rules and procedures established by the Board, a Member who has been in the Retirement System for twelve months or more is eligible to apply for a loan.  No Member shall have more than two outstanding loans from the Retirement System (Component I and/or Component II) at any time.  A Member who has previously defaulted on a loan under either Component I or Component II of the Combined Plan shall not be eligible for a loan from the Retirement System.

(d)     A Member who has satisfied applicable rules and procedures may borrow from his or her Annuity Savings Fund account an amount, which does not exceed fifty percent (50%) of the Member's vested accumulated balance, up to fifteen thousand dollars ($15,000.00) reduced by: (1) the highest outstanding balance of loans from the Retirement System during the one year period ending on the day before the date on which the loan is made (under both Component I and Component II), or (2) the outstanding balance of loans from the Retirement System on the date on which the

loan is made (under both Component I and Component II), whichever is less. The minimum loan amount shall be one thousand dollars ($1,000.00).

(e)    In addition to such rules and procedures that are established by the Board, all loans shall comply with the following terms and conditions:

   (1)    Loan applications shall be in writing.

   (2)    All loans shall be memorialized by a promissory note made to the Retirement System and properly executed by the Member.

   (3)    Loan shall be repaid by equal payroll deductions over a period not to exceed five years, or, where the loan is for the purpose of buying a principal residence, a period not to exceed fifteen years. In no case shall the amount of the payroll deduction be less than twenty dollars ($20.00) for any two-week period.

   (4)    Each loan granted under Component II shall be made against the assignment of the Member's entire right, title, and interest in and to the Annuity Savings Fund supported by the Member's collateral promissory note for the amount of the loan, including interest payable to the order of the Board of Trustees. `

   (5)    Each loan shall bear interest at a rate determined by the Board. The Board shall not discriminate among Members in its determination of interest rates on loans. Loans initiated at different times may bear different interest rates, where, in the opinion of the Board, the difference in rates is supported by a change in market interest rates or a change in the Retirement System's current assumed rate of return. The loan interest rate shall bear a reasonable relationship to market rates for secured loans of a similar duration and shall bear a reasonable relationship to the costs to the Retirement System of administering the Retirement System. The loan interest rate shall be calculated in a manner that will not negatively affect the City's costs relating to the Retirement System or the return to Members.

   (6)    Loan repayments shall be suspended under this Retirement System as permitted by Section 414(u)(4) of the Internal Revenue Code. A Member who has an outstanding loan balance from the Retirement System who is absent from employment with the City, and who has satisfied the requirements of Section 414(u) of the Internal Revenue Code shall not be required to make loan repayments to the Retirement System during said periods of absence.

(f)    A Member's outstanding loan balance shall be considered a directed investment by the Member and interest payments shall be credited to the Member's account balance (provided that the interest credited shall be reduced appropriately to cover the administrative cost of the loan program and avoid negatively affecting the City's costs or the Retirement System's investment returns), and shall not be part of net investment income or part of the Member's account balance for the purpose of allocation of net investment income under Article G.

(g)     No distributions shall be made to a Member, former Member, or Beneficiary until all loan balances drawn on the applicable vested accumulated balance and applicable accrued interest have been repaid or offset against the distributable Annuity Savings Fund account balance.

(h)     The Retirement System shall include, in its annual report to all Members, an accounting of the loan program established by this Component II, which contains the number and amount of loans made, the costs of administering the program, the amount of payments made including interest received by the Retirement System, the amount of loans outstanding, including any defaults or delinquencies, and an evaluation as to whether the interest charged in the Fiscal Year covered the costs of administering the loan program.

## ARTICLE K.  SPECIAL PLAN OF ADJUSTMENT PROVISIONS

**Sec. K-1.        Benefit Changes implemented in accordance with the terms of the Plan Of Adjustment**

Notwithstanding anything in Articles A, C, D or E to the contrary, as of the effective dates set forth below and during the period that ends no earlier than June 30, 2023, the following changes in benefits provided under Component II of the Combined Plan shall be implemented:

(1)     <u>Reduction in Escalation</u>.  With respect to all Pension benefits payable on or after July 1, 2014, the Escalation or Pension Improvement Factor (for purposes of this Section K-1(1) each a "COLA") provided in Part C of Article F of this Component II that will be applied to the monthly Pension benefit of a Member, Retiree, surviving Beneficiary or vested former employee will be 45% of the COLA provided for in Part C of Article F of this Component II, any collective bargaining agreement applicable to Members, other contracts or ordinances; provided, however, that the Board and the Investment Committee shall determine on the effective date of the Plan of Adjustment and not less frequently than annually thereafter that the "Funding Conditions" as defined herein have been satisfied, and in the event that such Funding Conditions have not been satisfied then the COLA that will be applied to the monthly Pension benefit of a Member, Retiree, surviving Beneficiary or vested former employee will be reduced in proportion to the funding which is not received by the Retirement System ("Adjusted Pension Benefit").

For purposes of this Section K-1, the term "Funding Conditions" shall mean that (i) Class 10 and Class 11 voted in favor of the Plan of Adjustment in accordance with the procedures for such vote under the Plan of Adjustment, (ii) the Plan of Adjustment is confirmed by the U.S. Bankruptcy Court, and (iii) the funds that are pledged to be contributed to the Retirement System pursuant to the terms of the State Contribution Agreement and the DIA Settlement Documents have been received.

(2)     <u>Effect of Payment Default</u>.  In the event that all or a portion of the funds pledged to be contributed to the Retirement System pursuant to the terms of the DIA Settlement Agreement are not received by the Retirement System, the Board shall proportionately reduce the COLA to be applied to the monthly Pension benefit of any Member, Retiree, surviving Beneficiary, employee and former employee to the extent of such default.

**Sec. K-2.        Income Stabilization Benefits**

(1)     The provisions of this Section K-2 shall become effective only if each of the Conditions Precedent (as that term is defined in the State Contribution Agreement) have been met to the satisfaction of the Authority and the State Treasurer (each as defined in the State Contribution Agreement), unless any one

or more of such conditions are waived in writing executed by the Authority and the State Treasurer.

(2) Beginning not later than 120 days after the effective date of the Plan of Adjustment, Component II of the Combined Plan shall pay, in accordance with this Section K-2, an annual supplemental pension income stabilization benefit ("Income Stabilization Benefit") to each Eligible Pensioner (as defined in Section K-2(5)) equal to the lesser of either (i) the amount needed to restore an Eligible Pensioner's reduced annual pension benefit to 100% of the amount of the annual pension benefit that the Eligible Pensioner received from the Retirement System in 2013; or (ii) the amount needed to bring the total annual 2013 household income of the Eligible Pensioner up to 130% of the Federal Poverty Level for 2013. The Income Stabilization Benefit as determined under this Section K-2(2) will not increase after the date on which the Income Stabilization Benefit is determined. The Income Stabilization Benefit payable to an Eligible Pensioner will terminate immediately at such time as the Eligible Pensioner ceases to qualify as an Eligible Pensioner.

(3) To the extent an Eligible Pensioner's Estimated Adjusted Annual Household Income (as defined in this Section K-2) in any calendar year after the first year that the Eligible Pensioner receives a benefit under this Section K-2 is less than 105% of the Federal Poverty Level in that year, the Eligible Pensioner will receive an additional "Income Stabilization Benefit Plus" benefit commencing as of the next following July 1.

    a. The Income Stabilization Benefit Plus benefit for a calendar year will be equal to the lesser of either (i) the amount needed to restore 100% of the Eligible Pensioner's Pension benefit, as increased by any Pension Improvement Factor (Escalator), under Component II of the Combined Plan; or (ii) the amount needed to bring the Eligible Pensioner's Estimated Adjusted Annual Household Income in that calendar year up to 105% of the Federal Poverty Level in that year.

    b. An Eligible Pensioner's "Estimated Adjusted Annual Household Income" for any year will be the sum of (i) the Eligible Pensioner's 2013 total household income (per his or her (or in the case of a minor child, his or her legal guardian's) 2013 income tax return or equivalent documentation), less the Pension benefit paid to the Eligible Pensioner by the Retirement System in 2013, as adjusted for inflation or Social Security COLA increases; (ii) the Adjusted Pension Benefit that is payable to the Eligible Pensioner for that year as determined under Section K-1, (iii) any pension restoration payment to the Eligible Pensioner as determined under Section K-3; and (iv) the Eligible Pensioner's Income Stabilization Benefit.

(4) A separate recordkeeping fund called the "Income Stabilization Fund" shall be established by the Board for the sole purpose of paying the Income Stabilization

Benefits and Income Stabilization Benefits Plus to Eligible Pensioners. Any funds received by the Retirement System that is designated by the City as UTGO Bond Tax Proceeds or a contribution to the Income Stabilization Fund shall be credited by the Board to the Income Stabilization Fund. The assets credited to the Income Stabilization Fund will be invested on a commingled basis with assets of the Retirement System and will be credited with a pro-rata portion of the earnings and losses of the Retirement System. Amounts credited to the Income Stabilization Fund may not be used for any purpose other than the payment of Income Stabilization Benefits and Income Stabilization Benefit Plus benefits to Eligible Pensioners, except as expressly provided in Section K-2(7).

(5) For purposes of this Section K-2, an "Eligible Pensioner" is a Retiree or surviving Spouse who is at least 60 years of age or a minor child receiving survivor benefits, each as of the effective date of the Plan of Adjustment, whose benefit will be reduced as provided in Section K-1, and who is eligible to receive Income Stabilization Benefits because (i) such individual is receiving monthly pension benefits from the Retirement System as of the effective date of the Plan of Adjustment, and (ii) such individual has a total annual household income equal to or less than 140% of the federal poverty level in 2013 (per his or her (or in the case of a minor child, his or her legal guardian's) 2013 income tax return or equivalent documentation).

   a. An eligible individual must apply for an Income Stabilization Benefit in accordance with procedures established by the Authority and provide such substantiation of the individual's aggregate annual household income as is required by the State in its sole discretion.

   b. The initial determination of Eligible Pensioners, and amount of the Income Stabilization Benefit payable to each Eligible Pensioner shall be made by the State in its sole discretion. The State shall transmit the list of Eligible Pensioners to the Investment Committee and the Board. The Board, with the assistance of the Investment Committee shall be responsible for administering the Income Stabilization Fund and annually certifying to the State Treasurer that it has administered the requirements for eligibility and payment of benefits with respect to Eligible Pensioners in accordance with the terms of the State Contribution Agreement.

   c. After the initial determination of Eligible Pensioners is made, no new individuals will be eligible to receive an Income Stabilization Benefit or an Income Stabilization Benefits Plus benefit at any time in the future.

   d. An Eligible Pensioner will cease to be an Eligible Pensioner as of the earlier of (i) the Eligible Pensioner's death or (ii) with respect to any minor child receiving survivor benefits, the date the minor child reaches the Age of 18 years.

(6)     For purposes of this Section K-2, the "Federal Poverty Level" means the poverty guidelines published each year in the Federal Register by the United States Department of Health and Human Resources.

(7)     In the event that, in 2022 (provided that the State has not issued a Certificate of Default (as defined in the State Contribution Agreement) with respect to the Retirement System at any time prior to 2022), it is the opinion of at least 75% of the independent members of the Investment Committee that the assets of the Income Stabilization Fund exceed the Income Stabilization Benefits and Income Stabilization Benefits Plus benefits anticipated to be made to Eligible Pensioners by the Retirement System in the future ("Excess Assets"), the Investment Committee may, in its sole discretion, recommend to the Board that all or a portion of the Excess Assets, in an amount not to exceed $35 million, be used to fund the Adjusted Benefits payable by the Retirement System. The Investment Committee shall have the right to engage professional advisers to assist in making this determination and such expenses shall be paid by the Retirement System.

(8)     In the event that any funds remain in the Income Stabilization Fund on the date upon which there are no Eligible Pensioners under the Retirement System, such funds shall be used to fund the Adjusted Benefits payable by the Retirement System.

## Sec. K-3.     Restoration of Pension Benefits

The following rules shall govern how COLA benefits (as described in Section K-1(1)), that are reduced as part of the Plan of Adjustment, shall be restored during the thirty year period following the confirmation order issued by the Bankruptcy court in *In Re City of Detroit, Michigan,* Case No. 13-53846. The pension restoration process shall be supervised, and restoration decisions undertaken by the Investment Committee and in accordance with the pension governance provisions set forth in the State Contribution Agreement and exhibits thereto. The pension restoration program shall be deemed a part of this Component II, but in the event of any conflict between the language set forth herein and the pension restoration agreement attached to and made a part of the Plan of Adjustment ("Pension Restoration Agreement"), the terms of the Pension Restoration Agreement will govern.

(1)     *Waterfall Classes.*

There will be three Waterfall Classes:

a.      Waterfall Class 1 – Retirees, in retirement benefit pay status as of June 30, 2014, and their surviving Spouses and Beneficiaries.

b.      Waterfall Class 2 – Retirees, who entered into retirement benefit pay status after June 30, 2014, and their surviving Spouses and Beneficiaries, and who are in pay status as of the end of the Fiscal Year prior to the year in which the restoration decision is made.

<blockquote>

c.    Waterfall Class 3 – All Retirees, surviving Spouses, and Beneficiaries in pay status and all other Members who as of June 30, 2014 are not in retirement benefit pay status.

</blockquote>

(2)    *Restoration of Benefits Through June 30, 2023.*

<blockquote>

a.    Each year in conjunction with the annual actuarial valuation report, the Plan Actuary will project the funded ratio of the Retirement System as of 2023 based upon the market value of plan assets relative to the actuarial accrued liabilities (the "Funded Level"). This projection will be further based upon a 6.75% assumed rate of investment return which is net of expenses (administrative and investment), future employer contributions as set forth in the Plan of Adjustment (subject to conditions in the Plan of Adjustment), and such other actuarial assumptions as utilized by the Plan Actuary. For purposes of restoration of benefits through June 30, 2023, the Funding Target will be a 75% funded ratio, and the Restoration Target will be a 78% funded ratio, both projected to June 30, 2023. For purposes of calculating the funded ratio, the assets in the Restoration Reserve Account will be excluded. Each year, if the Plan Actuary projects that the Funded Level as of 2023 (excluding Restoration Reserve Account assets to avoid double counting) exceeds the Restoration Target (i.e., exceeds 78%), a credit of assets for bookkeeping purposes will be made into a new notional Restoration Reserve Account. The notional credit will be an amount equal to the excess of assets above the amount projected to be needed to satisfy the Restoration Target. Once the Restoration Reserve Account is established, each year thereafter, Restoration Account assets will be credited with interest in an amount equal to the net return on Retirement System investments but capped at the actuarially assumed rate of investment return (i.e., 6.75% for the period through June 30, 2023). In the event of net losses, the credited asset value of the Restoration Reserve Account will be diminished to reflect such losses and any required transfer to the PFRS Pension Reserve Fund as provided herein.

b.    Actual restoration payments and restoration credits will work as follows: each year, in conjunction with the preparation of the annual actuarial valuation report and following establishment of the Restoration Reserve Account, the Plan Actuary will determine whether there are sufficient funds in such account to restore COLA benefits in a minimum incremental amount of 10% or more. For example: if a Retiree's then current COLA benefit is a 1.0% annual compounded COLA, the minimum incremental restoration would increase the COLA benefit to 1.225%. COLA restoration only will occur if the funding level in the Restoration Reserve Account can fund 100% of the COLA increase over the actuarially-projected lives of the eligible recipient Waterfall Class. If the Plan Actuary certifies that the Restoration Reserve Account as of the end of the prior Fiscal Year satisfies the required funding level for one or more increments of restoration, then in the next immediate Fiscal Year actual

</blockquote>

COLA restoration payments will be made to PFRS Waterfall Class 1 members in such increments until an amount sufficient to fund 66% of the value of their future COLA payments (e.g., a 1.5% compound COLA, or as otherwise applicable) has been funded. At that juncture, and to the extent that additional assets in the Restoration Reserve Account would fully fund COLA restoration in at least one minimum 10% increment (i.e., amounts equal to 10% of the value of future COLA payments), Waterfall Class 2 members will receive COLA restoration, until an amount sufficient to fund 66% of the value of their future COLA payments has been funded. At that juncture, and to the extent that additional assets in the Restoration Reserve Account would fully fund COLA restoration in at least one minimum 10% increment (i.e., amounts equal to 10% of the value of future COLA payments), Waterfall Class 3 members will receive COLA restoration on a pro-rata basis. For Waterfall Class 3 members who are in pay status at that time of restoration, they will receive COLA payments; for active employees at the time of restoration, they will receive credits granting them a right upon retirement to receive COLA restoration equal to the 10% increments that are fully funded to Waterfall Class 3 members. For example: assume there are sufficient assets credited to the Restoration Reserve Account as of the end of a Fiscal Year to fully fund 66% of the value of the COLA for all Waterfall Class 1 and Class 2 members for their actuarially projected lives. To the extent additional assets remain in the Restoration Reserve Account to fully fund at least a 10% COLA increment for Waterfall Class 3 members for their actuarially projected lives, then (i) all Retirees would receive a restoration payment of 76% of the value of their COLAs (their having already received by virtue of their membership in Waterfall Classes 1 and 2 an increase to 66% of the value of their COLAs) and also a 10% COLA increment would be credited to eligible active employees which would be included in their benefit payments upon retirement (thus causing their COLAs to increase in value from 45% to 55%). Restoration amounts actually paid from the Restoration Reserve Account will be debited from such account. Restoration payments will be calculated and paid on a prospective basis only.

c. Once restoration payments and credits begin, as long as the Restoration Reserve Account continues to have assets to fund 100% of an incremental COLA restoration amount for such Waterfall Class for their actuarially projected lives, the restoration payments and credits will continue; provided, however, that in the event the Restoration Reserve Account, after having sufficient assets to fund 100% of two or more increments, falls below 100% for the second or greater increment, the annual amounts to pay such second or greater increment can continue until the Restoration Reserve Account lacks any assets to fund such additional increment. For example, assume a 10% increment in Waterfall Class 1 requires $10 million in assets to be fully funded for the Waterfall Class members' actuarially projected lives, and that based on Fiscal Year 2018 results the

Restoration Reserve Account has assets of $22 million so as to fund two increments of restoration in Fiscal Year 2019. Assume further that in the following year the Restoration Reserve Account drops in value to $17 million; in such event two increments could still be paid, and the second increment would cease being paid only if the value of assets in the Restoration Reserve Account dropped to or below $10 million (in the event they dropped below $10 million, the first increment also would cease being paid). For purposes of restoration reduction, restoration increments will be taken away in reverse order in which they were granted (i.e. last in, first out).

d. If the Funded Level (excluding Restoration Reserve Assets) projected to 2023 falls below 76% (hereinafter, "Restoration Reserve Suspension Trigger"), then, until such time as the projected Funded Level in 2023 is 76% or above, further interest credits to the notional Restoration Reserve Account will cease notwithstanding the actual net Retirement System investment returns for the Fiscal Year in question. Furthermore, if the Funded Level projected to 2023 falls below the Funding Target (i.e., 75%) then restoration payments to Retirees and credits to active employees in the following year will be modified in the following manner: (1) funds previously credited to the Restoration Reserve Account will be notionally transferred and credited to the Pension Reserve Fund in sufficient amounts to restore the projected Funded Level in 2023 to 75%; (2) following such transfer, the remaining assets in the Restoration Reserve Account shall be applied to make restoration payments in accordance with and pursuant to the same mechanism described in paragraph c.

e. In connection with preparation of the actuarial report for Fiscal Year 2023, the Plan Actuary will determine whether the Retirement System has satisfied the Permanent Restoration Target, which shall be 78%. Transfers from the Restoration Reserve Account for credit to the Pension Reserve Fund may be made in such amounts as are necessary to satisfy the Permanent Restoration Target. If following such transfers, the Funded Level as of June 30, 2023 has satisfied the Permanent Restoration Target (i.e., 78%), then the residual amounts, if any, in the Restoration Reserve Account (which will necessarily represent excess not necessary to satisfy the Permanent Restoration Target), and which fully fund one or more increments of COLA restoration payments for one or more Waterfall Classes for their actuarially projected lives, shall be transferred from the Restoration Reserve Account and credited to the Pension Reserve Fund and the applicable incremental COLA payments shall be permanently restored for the applicable Waterfall Class and shall no longer be variable from year to year.

f. Following receipt of the actuarial reports for 2019, and in the event that the projected Funded Level of the Retirement System as of 2023 is less than 76%, the Plan Actuary shall revisit the restoration calculations that it

made during each of the prior four (4) years. It shall recalculate each such prior year's Funded Level projection, this time by assuming the lesser of (i) $4.5 million in annual administrative expenses until 2023, or (ii) an amount of annual administrative expenses until 2023 equal to the average annual normal course administrative expenses in the prior four (4) years applicable to Component II, in addition to a net 6.75% annual investment return. If such retrospective recalculation indicates that fewer amounts would have transferred to the Restoration Reserve Account than actually were transferred during such look back period, then the Restoration Reserve Account shall be debited by the lesser of (i) this difference (plus interest at a rate equal to the rate that was credited to the Restoration Reserve Account during the look-back period or (ii) the dollars that were actually paid out in restoration payments during such look-back period (plus interest at a rate equal to the rate that was credited to the Restoration Reserve Account during the look-back period); or (iii) the amount required to increase the projected 2023 Funded Level to 76%.

(3)   *Restoration of Benefits from July 1, 2023 to June 30, 2033.*

a.   If and to the extent that all COLA payments have not been restored as of June 30, 2023 pursuant to Section (2)(e), then during this period and for purposes of variable restoration, the Funding Target, the Restoration Target, the Permanent Restoration Target and the Restoration Reserve Suspension Trigger shall be as set forth below, all projected as of June 30, 2033:

| 2023 Funded Level | 2033 Funding Target/Restoration Target |
|---|---|
| 78% | 81%/84% |
| 77% | 80%/83% |
| 76% | 79%/82% |
| 75% | 78%/81% |
| 74% or lower | 3% >than 2023 Funded Level %/81% |

2033 Permanent Restoration Target - Same as 2033 Restoration Target

2033 Restoration Reserve Suspension Trigger – 1% higher than the projected Funding Target for all time periods

b.   The same rules for restoration payments that applied during the period ending June 30, 2023 shall apply (including ceasing interest credits in the event of a Restoration Reserve Suspension Trigger, and making Restoration Account asset transfers to the Pension Reserve Fund in the event the 2033 Funded Level falls below the 2033 Funding Target), except as follows. For purposes of determining whether the 2033 Restoration Target has been satisfied, the Plan Actuary shall project investment returns through June 30, 2033 using the then current investment return assumption

which is assumed to be net of expenses (administrative and investment), and the then applicable actuarial assumptions as utilized in the annual actuarial valuation. Further, the Plan Actuary shall assume, merely for purposes of determining whether the Restoration Target is satisfied, that the annual City contribution amount shall be the annual amount necessary to fund the Retirement System based upon an amortization of the actual 2023 UAAL (using the market value of assets) over 30 years (hereinafter, the "2023 UAAL Amortization") and in such manner that the resulting annual contributions would achieve the applicable Funding Target (pursuant to paragraph b) as of 2033. Such projected, hypothetical contributions shall be for purposes only of making restoration determinations, and shall not necessarily be the actual contributions made or required to be made by the City or recommended during such period; all of which shall be determined independent of the restoration calculation process. For purposes of calculating the funded ratio, the assets in the Restoration Reserve account will be excluded.

c.      To the extent that the City's actual contributions to the Retirement System in any of the Fiscal Years 2024 (i.e., the year ending June 20, 2024) through 2033 are greater than the projected annual contribution under the 2023 UAAL Amortization, such amounts, and any investment earnings thereon, shall be notionally credited to a new bookkeeping account in the Retirement System called the Extra Contribution Account. In determining pension restoration during the period from Fiscal Year 2024 through 2033, none of the amounts in the Extra Contribution Account shall be considered for purposes of determining the projected Funded Level for purposes of determining whether the Retirement System has attained the Restoration Target or the Permanent Restoration Target. To the extent that the City's actual contributions in any of the Fiscal Years 2024 through 2033 are less than the City's projected annual contribution under the 2023 UAAL Amortization, such difference and any investment earnings thereon shall be notionally allocated to the Pension Reserve Fund.

d.      Each year, in addition to the notional credit of amounts that exceed the amount necessary to satisfy the Restoration Target, existing notional Restoration Account assets will be credited with interest equal to the net return on Retirement System investments; however, such interest shall not exceed the then investment return assumption. In the event of net losses on the Retirement System's investments, the notional assets credited to the Restoration Reserve Account will be reduced to reflect such losses.

e.      In connection with preparation of the actuarial report for Fiscal Year 2033, the Plan Actuary will determine whether the Retirement System has satisfied the applicable Permanent Restoration Target (i.e., the 2033 Restoration Target). Transfers from the Restoration Reserve Account for credit to the Pension Reserve Fund may be made in such amounts as are necessary to satisfy the Permanent Restoration Target. If following such

transfers the funding level as of June 30, 2033 has satisfied the applicable Permanent Restoration Target, then the residual amounts in the Restoration Reserve Account, if any (which will necessarily represent excess not necessary to satisfy the Permanent Restoration Target), and which fully fund one or more increments of COLA restoration payments for one or more Waterfall Classes, shall be transferred from the Restoration Reserve Account and credited to the Pension Reserve Fund and the applicable incremental COLA payments shall be permanently restored for the applicable Waterfall Class and shall no longer be variable from year to year.

f.  Following receipt of the actuarial report for 2028, and in the event that the projected Funded Level as of 2033 is less than 79%, the Plan Actuary shall revisit the restoration calculations that it made during each of the prior four (4) years. It shall recalculate each such prior year's Funded Level projection, this time by assuming the lesser of (i) $4.5 million in annual administrative expenses until 2033, or (ii) an amount of annual administrative expenses until 2033 equal to the average annual normal course administrative expenses in the prior four (4) years applicable to Component II, in addition to a net 6.75% annual investment return. If such retrospective recalculation indicates that fewer amounts would have transferred to the Restoration Reserve Account than actually were transferred during such look back period, then the Restoration Reserve Account shall be debited by the lesser of (i) this difference (plus interest at a rate equal to the rate that was credited to the Restoration Reserve Account during the applicable look-back period) or (ii) the dollars that were actually paid out in restoration payments during such look-back period (plus interest at a rate equal to the rate that was credited to the Restoration Reserve Account during the applicable look-back period); or (iii) the amount required to increase the projected 2033 Funded Level to 79%.

(4)  *Restoration of Benefits from July 1, 2033 to June 30, 2043.*

a.  If and to the extent that all COLA payments have not been restored pursuant to Section (3)(f) as of June 30, 2033, then during the period ending June 30, 2043 and for purposes of variable restoration, the Funding Target, the Restoration Target, the Permanent Restoration Target and the Restoration Reserve Suspension Trigger shall be as set forth below, all projected as of June 30, 2043.

| 2023 Funded Level | 2043 Funding Target/Restoration Target |
|---|---|
| 78% | 84%/87% |
| 77% | 83%/86% |
| 76% | 82%/85% |
| 75% | 81%/84% |
| 74% or lower | 3% > than 2023 Funded Level %/84% |

- 149 -

<u>2043 Permanent Restoration Target</u> - Same as 2043 Restoration Target

<u>2043 Restoration Reserve Suspension Trigger</u> – 1% higher than the projected Funding Target for all time periods

b.    The same rules for restoration that applied during the period ending June 30, 2033 shall otherwise apply (including ceasing interest credits in the event of a Restoration Reserve Suspension Trigger, and the making of notional asset transfers from the Restoration Reserve Account to the Pension Reserve Fund in the event the 2043 Funded Level falls below the 2043 Funding Target) and shall be rolled forward. For example, for purposes of determining whether the 2043 Restoration Target has been satisfied, the Plan Actuary shall project annual contributions using the same 2023 UAAL Amortization. For purposes of calculating the funded ratio, the assets in the Restoration Reserve account will be excluded, and no Extra Contribution Account assets shall be included for purposes of determining whether the Funded Level meets the Restoration Target or Permanent Restoration Target, including any additions to such account after 2033.

c.    In connection with preparation of the annual actuarial valuation report for Fiscal Year 2043, the Plan Actuary will determine whether the Retirement System has satisfied the applicable Permanent Restoration Target, as set forth in paragraph a above. Transfers from the Restoration Reserve Account for credit to the Pension Reserve Fund may be made in such amounts as are necessary to satisfy the Permanent Restoration Target. If following such transfers the Funded Level as of June 30, 2043 is equal to or greater than the applicable Permanent Restoration Target, then the residual amounts in the Restoration Reserve Account, if any (which will necessarily represent excess not necessary to satisfy the Permanent Restoration Target), shall be transferred from the Restoration Reserve Account and credited to the Pension Reserve Fund and the applicable incremental COLA payments shall be permanently restored for the applicable Waterfall Class and shall no longer be variable from year to year.

(5)    *Modification of the Pension Restoration Program.*

If at any time after July 1, 2026, the Investment Committee by vote of five of its seven Members, or the Board of Trustees by a greater than 66% vote, determines that a change in relevant circumstances has occurred, or there was a mutual mistake of fact in developing the Pension Restoration Agreement attached to and made a part of the Plan of Adjustment, such that the continued operation of the Pension Restoration Agreement and this Section K-3 without amendment will: (a) materially harm the long-term economic interests of the City or Retirement System; (b) materially impair the City's ability to fully fund over a reasonable period the then existing frozen benefit liabilities; or (c) materially hinder the Restoration Program, if as of that juncture (and for purposes of applying this

subsection K-3(5) annual funding levels (excluding the Extra Contribution Account) had materially exceeded the applicable Restoration Targets for a substantial period yet without any material actual restoration of benefits as contemplated herein having been made, the Investment Committee or the Board, as the case may be, shall provide written notice to the other entity of such a determination and of the need to amend the Pension Restoration Agreement and this Section K-3 (it being understood that the post-Chapter 9, 40-year amortization period (to 2053) to fully fund frozen liabilities is, unless the relevant facts demonstrate otherwise, presumptively reasonable). The Investment Committee and the Board shall then meet to negotiate amendments to the Pension Restoration Agreement that address the identified risk of harm or impairment, but which also considers the Agreement's objective of providing pension restoration. Such negotiations shall take into account reasonable actions the City has pursued or could pursue to mitigate such harm or impairment. Any such amendments shall require the approval of a majority vote of the combined members of the Investment Committee and Board (persons who sit on both the Board and Investment Committee shall have one vote). Such parties shall consult with the Mayor, City Council and the Governor in connection with such negotiation.

If the Board, acting through a majority, and the Investment Committee, acting through a majority, cannot agree to such amendments with the 90-day period following the provision of such notice by the determining party, then the Board and Investment Committee shall proceed to mediation upon demand from either the Board or the Investment Committee. In this regard, within 30-days following expiration of the 90-day period the Board and the Investment Committee shall each select a mediator from the list of approved mediators for the United States District Court for the Eastern District of Michigan. The two selected mediators shall appoint a third neutral mediator from the approved list. Each party shall furnish a written statement to the mediators within 30 days of selection of the neutral mediator. Representatives of the Mayor and the Governor shall be consulted in connection with such mediations. If following a 90-day mediation period following submission of the written statements the matter is not settled, then either the Investment Committee or the Board can file an action in the United Stated District Court for the Eastern District of Michigan asking it to declare, *inter alia*, whether or in what manner to amend the Pension Restoration Agreement and this Section K-3.

# APPENDIX A

The following provisions shall also have general applicability to the Combined Plan for the Police and Fire Retirement System of the City of Detroit, Michigan:

## MCLS Const. Art. IX, § 24 (2003)

### § 24.    Public pension plans and retirement systems, obligation.

Sec. 24.   The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.

Financial benefits arising on account of service rendered in each Fiscal Year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities.

## ARTICLE 11.
## RETIREMENT PLANS

**Sec. 11-101. City's Duties**.

1.     The City shall provide, by ordinance, for the establishment and maintenance of retirement plan coverage for city employees.

2.     Financial benefits arising on account of service rendered in each Fiscal Year shall be funded during that year and that funding shall not be used for financing unfunded accrued liabilities.

3.     The accrued financial benefits of active and retired city employees, being contractual obligations of the city, shall in no event be diminished or impaired.

**Sec. 11-102. Continuation of Existing Plans**.

The retirement plans of the city existing when this Charter takes effect, including the existing governing bodies for administering those plans, the benefit schedules for those plans and the terms for accruing rights to and receiving benefits under those plans shall, in all respects, continue in existence exactly as before unless changed by this Charter or an ordinance adopted in accordance with this article.

**Relevant Provisions of the**
**Detroit City Code**

## Sec. 47-1-2. Detroit Police and Fire Retirement System.

Notwithstanding any collective bargaining agreement or other documents governing terms of employment to the contrary, effective as of July 1, 2014, the Detroit Police and Fire Retirement System shall hereinafter be memorialized in a separate written document entitled "Combined Plan for the Police and Fire Retirement System of the City of Detroit, Michigan," which shall comprise the exclusive terms of the Detroit Police and Fire Retirement System and be kept in the Office of the City Clerk for the City of Detroit.

## Collective Bargaining Agreements.

Except to the extent otherwise provided in the Plan of Adjustment, under Michigan Law if there is any conflict between the Retirement System provisions and collective bargaining agreement provisions, the terms of the collective bargaining agreement control.

(a)     The Board of Trustees shall administer the Retirement System consistent with the pension provisions of the 2014-2019 collective bargaining agreement between the City of Detroit and the Detroit Police Officers Association with respect to police officers covered by said collective bargaining agreement.

(b)     The Board of Trustees shall administer the Retirement System consistent with the pension provisions of the 2014-2019 collective bargaining agreement between the City of Detroit and the Detroit Police Lieutenants and Sergeants Association.

(c)     The Board of Trustees shall administer the Retirement System consistent with the pension provisions of the 2014-2019 collective bargaining agreement between the City of Detroit and the Detroit Police Command Officers Association.

(d)     The Board of Trustees shall administer the Retirement System consistent with the pension provisions of the 2014-2019 collective bargaining agreement between the City of Detroit and the Detroit Fire Fighters Association.

CLI-202268614v2