# EXHIBIT J



September 28, 2020

Board Trustees, General Retirement System of the City of Detroit;
Board Trustees, Police and Fire Retirement System of the City of Detroit;
Investment Committee Trustees, General Retirement System of the City of Detroit; and
Investment Committee Trustees, Police and Fire Retirement System of the City of Detroit
One Detroit Center
500 Woodward Avenue, Suite 3000
Detroit, Michigan  48226

Attention:  Mr. David Cetlinski, Executive Director

**Re: City Funding Presentations**

Dear Trustees:

We have been asked to provide comments on the City's recent presentation regarding the development of a funding policy for 2024 and beyond. Please note that we have not received numerical details of the City's proposal and have not been asked or attempted to verify the numerical accuracy of the presentations. Therefore, our comments are limited to the general information contained in the presentations and the City's verbal comments made at the meetings.

We appreciate this opportunity to comment and we commend the City for the initiative they have taken regarding the development of a funding policy for 2024 and beyond. However, as the actuary for the Retirement Systems, we have some concerns about the funding policy that is being proposed by the City. They are outlined below.

**The City stated that its budget is not sustainable with a 30-year level dollar amortization.**

The City has established a Retiree Protection Fund (RPF) and included projections using those funds to partially offset contributions based on a 30-year level dollar amortization, referred to in the presentation as the RPF Plan. A 30-year amortization is the longest allowable under Michigan law. The City then states "But City Budget not sustainable with current RPF Plan" on a slide that shows a City budget shortfall each year from FY 2020 to FY 2029. This is of critical importance to the Retirement Systems.

As part of the verbal presentation, the City representatives indicated that the City's financial situation had worsened during the pandemic. They indicated that not only has there been significant lost tax revenue due to the shutdowns, but that they believe tax revenue may be permanently reduced. They also indicated that they successfully closed near term budget gaps only by taking advantage of funds available through the CARES act.

13-53846-tjt    Doc 13634-11    Filed 09/09/22    Entered 09/09/22 18:47:23    Page 2 of 5

As actuaries for the Retirement Systems, we do not have the data (nor the technical expertise) to assess the City's financial situation. However, assuming those comments to be accurate, ***the Retirement Systems face significant risk that the City will default on <u>any</u> funding policy, even the absolute minimum 30-year amortization***.

The City's argument relative to their financial position seems to favor accelerating contributions rather than delaying or reducing them and supports our continued recommendation of getting as much money as possible into the retirement system trust as soon as possible, preferably now.

**The City is proposing a benefit payment plan that allows for the Retirement Systems to run out of money.**

The City's proposal discusses a fixed initial 30-year rolling amortization (of unfunded liability) method that is intended to transition to pay-as-you go funding in 2045 (when benefit payments are projected to be lower than the fixed contributions). As we understand it, the proposed annual contribution amount would increase by 1% every year. ***There is a risk with a fixed contribution schedule that assets in the trust could deplete before the City is able to afford paying benefits directly. In other words, there is a risk that promised benefits will not be paid under this approach.*** The City indicated that from its perspective a fixed contribution schedule is more important than the risk that plan assets will deplete or that benefits may not be paid. We are not in favor of a policy that increases the risks of depletion of trust assets.

Our specific comments on the mechanics of this method are:

- *A fixed contribution schedule does not reflect gains and losses that will occur*. Presumably, the 1% annual increase in contributions is intended to mitigate the risk that the fixed contributions will fall below the minimum required by Michigan law. There was some discussion related to potential future adjustments if Plan experience results in an insolvency before the City believes it can afford the annual pay-as-you-go benefits. However, exactly how and when the initial contribution is determined and how and when future contribution adjustments are made are not detailed in the presentation. We would suggest that these details are critical and should be completely known before any decision is made regarding the viability of the proposed funding policy.
- *The initial period being used is too long*. In order to reduce the risk of Plan insolvency or the need to make future adjustments to any fixed contribution schedule, we recommend a higher initial contribution such as one determined with a shorter initial amortization period. In mature plans like the Legacy plans, the risk of plan insolvency is increased when amortization periods are longer than 10 or 15 years.
- *The City's proposal is a non-traditional funding method*. There may be standard methods that could be used to meet the same objectives and we would suggest they should be used instead. Again, we recommend use of a traditional funding method that funds 100% of the liabilities in the plan and that pays all plan benefits from the system trust.



It seems to be implicit in the City's proposal that the fixed contributions will be compared with a 30-year rolling amortization of the unfunded actuarial accrued liability with each valuation, arguably the minimum required by Michigan Law. In our opinion, a 30-year rolling amortization is an inappropriate actuarially determined contribution for the annual valuations for closed plans of this maturity and is a significant departure from all of our previous discussions about funding policy with the Boards and Investment Committees. As the actuary for the Retirement Systems, we reiterate the need for a funding policy that stipulates an appropriate actuarially determined contribution – even if its sole purpose is to be used in comparison to a fixed contribution schedule. Again, we reiterate our recommendation for closed amortization periods (dropping one year each year) of 20 years or less.

We expect that our projection tool can easily model a fixed contribution schedule as described in the City's presentation. However, the full technical details of the City's exact proposal for funding have not yet been provided to us. Once they are, we can then perform scenario/sensitivity tests of the proposal using our projection tool. We suggest that this should be done before any decisions are made regarding the viability of the policy. Please see one of our several supplemental reports for a more complete discussion of funding policies in general (for example, the Police and Fire report, dated January 11, 2019 or the General Employees report, dated September 18, 2019).

**Other Comments**

The presentation referred to the use of "outdated" mortality assumptions. In an effort to clear up any confusion, we would remind everyone of the following:

- The actuarial assumptions to be used in bankruptcy modeling were agreed upon by all parties (as required by the Court) and were different than those used in the actuarial valuations preceding the Bankruptcy;
- The City, the Retirement System and the Retiree Group, and their representative actuaries were the parties involved in the selection; and
- The mortality tables currently used in the subsequent actuarial valuations of the Retirement Systems were based on a study of mortality experience performed after the bankruptcy discussions had ended.

The City compared unfunded liabilities from the POA projections with unfunded liabilities from the June 30, 2014 actuarial valuations and attributed all of the difference in those numbers to the change in mortality which they verbally referred to as "the mortality mistake". Please note that POA unfunded liability amounts were:

- Developed by the City's actuaries (not the Retirement System's actuaries);
- Based on different census data (the June 30, 2014 census data was not available during the bankruptcy mediation – there has been significant data auditing/cleanup by the Retirement Systems and the City since Bankruptcy); and



- Possibly based on different assets. While we did not perform the POA projections and cannot definitively state what was used, we can state that we did not have final asset information available to use until after we had completed our participation in the mediation – final asset information was used for the June 30, 2014 valuation which was published in 2015.

We would appreciate the opportunity to meet with you to go over these comments in detail.

Sincerely,

*Kenneth G. Alberts*

Kenneth G. Alberts

*Judith A. Kermans*

Judith A. Kermans, EA, FCA, MAAA

*David T. Kausch*

David T. Kausch, FSA, EA, FCA, MAAA, PhD

KGA/JAK/DTK:dj

cc:  Gail Oxendine, City of Detroit Retirement Systems
     Kelly Tapper, City of Detroit Retirement Systems
     Ryan Bigelow, City of Detroit Retirement Systems
     Jamal Adora, GRS

