# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## REPLY BRIEF IN SUPPORT OF
## CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER
## ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER
## AGAINST DEBRA METRIS-SHAMOON, MUKHLIS SHAMOON,
## CARL VERES, PAUL METRIS AND JULIA METRIS

In accordance with this Court's orders,[1] the City of Detroit, Michigan ("City")

files this Reply Brief in support of its Motion,[2] respectfully stating as follows.

## I.    Introduction

Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris, and Julia

Metris (collectively, the "Plaintiffs") raise a number of arguments previously raised

and rejected by this Court and others in their Response[3] to the City's Motion.  These

arguments did not avail prior respondents and should be rejected again now.

---

[1] Docket Numbers 13576 and 13585.

[2] *City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris and Julia Metris* (Doc. No. 13532).

[3] *Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris and Julia Metris Response in Opposition to Debtor City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order (Dkt #13532)* (Doc. No. 13565).

The Plaintiffs make three arguments in trying to resist the City's Motion. First, they claim they were known creditors, and thus were entitled to service of notice of the City's bankruptcy case.[4] Making a few calls to the police department does not suffice to put the City on notice that the Plaintiffs would allege a claim against the City, however. Nor does alleging that the City was generally aware of problems in its police department. The Plaintiffs' argument has been raised in similar circumstances and been rejected by two federal court judges in this District.

Plaintiffs next say that their claims were not within their "fair contemplation" pre-petition even though the facts that gave rise to them occurred in 2012. This argument also has been rejected by this Court and others. In fact, as the District Court observed in its Opinion regarding the Lawsuit,[5] the Plaintiffs agree that the statute of limitations began to run on their claims on September 13, 2012. Thus, if they had any claims at all, September 13, 2012, is the date as of which they knew of or should have been able to discover them, had they exercised diligence. Moreover, it is contradictory for Plaintiffs to assert that *they* were unaware they had a claim, but in the same breath, argue that the *City* must have known that they did.

---

[4] They also claim to somehow have been unaware that the City had filed for bankruptcy protection until 2015. *See, e.g.*, Response, Ex. H., *Declaration of Debra Metris-Shamoon*, ¶¶ 11, 14 (declaring under penalty of perjury that one of the Plaintiffs, despite being aware of media reports regarding the City's narcotics unit, was unaware that the City itself had filed for bankruptcy protection).

[5] Capitalized but undefined terms have the meanings ascribed to them in the Motion.

39230686.8/022765.00213

Finally, the Plaintiffs argue that the City should be barred both by equitable estoppel and by laches from filing its Motion, but these arguments are unavailing. Regarding estoppel, the Plaintiffs do not (and cannot) point to any representation that the City made on which they could have relied. Indeed, the Plaintiffs only say that the City delayed in asserting its discharge as a defense. But, under binding Sixth Circuit case law, debtors are not obligated to raise discharge as a defense. Thus, delay in asserting discharge cannot qualify as a representation for estoppel purposes. Moreover, the Plaintiffs admit they were aware of the bankruptcy case when they filed their suit, so they cannot claim to be ignorant of the "true facts," as required for estoppel to apply. For similar reasons, laches is also inapplicable.

For these reasons, the Court should grant the City's Motion.

## II. Argument

### A. The Plaintiffs were unknown creditors. The publication notice City's Plan provided them with constructive notice of the City's bankruptcy case. They were not entitled to anything further.

#### 1. Debtors are not required to make an exhaustive search for claims such as the ones the Plaintiffs now assert.

It takes more than a few phone calls to the police department to put a municipality on notice that there may be a claim against it. That is essentially all that the Plaintiffs say that they did. As a result, they were not "known creditors" and they received the notice they were due.

39230686.8/022765.00213

The *Monson* court recently summarized which creditors must receive actual notice of a bankruptcy case and which may receive notice by publication.

> Bankruptcy law distinguishes between known and unknown creditors. Unknown creditors may be notified by publication; but known creditors are entitled to actual notice. Known creditors are those whose claims or identities are "readily ascertainable" by the debtor. Readily ascertainable means a debtor, through "reasonably diligent efforts" could discover a creditor's claim. "Reasonably diligent efforts" does not require impracticable and extended searches in the name of due process. Rather, a debtor must home in on its own books and records. Typically, that means the debtor has something in its possession, either a demand for payment or some communication with a debtor concerning the existence of the creditor's claim.

*Monson v. City of Detroit*, No. 18-10638, 2019 WL 1057306, at *9 (E.D. Mich. March 6, 2019) (citations and quotation marks omitted).

In *Monson*, a person was wrongly convicted and imprisoned pre-petition. *Id.*, at *1-6. He was released in 2017 and sued the City two years later. *Id.*, at *6. Just like the Plaintiffs, Monson alleged "that prior to the bankruptcy the City knew its police department had a pattern and practice of unconstitutional arrests and interrogations. And in its possession the police department had all the information it needed to conclude Monson was a victim of those unconstitutional patterns and practices." *Id.*, at *9. He argued that the police had sufficient information for the City to conclude that he had a claim. *Id.* Monson thus insisted that the City should have known he was a creditor and provided him actual notice of its case. *Id.* He

- 4 -

39230686.8/022765.00213

argued that his claims were not discharged because the City did not provide him with this notice. *Id.*

The District Court disagreed. At the time of the City's bankruptcy filing, Monson's claim against the City was foreseeable, but remained contingent on him overturning his conviction. *Id.*, at *9-10. And "neither Monson nor his lawyers in the clinic ever provided anything to the City that amounted to a demand for payment or a communication concerning the existence of his future claim." *Id.*, at *9. Thus, Monson was an unknown creditor and publication notice sufficed. *Id.*, at *9-10.

Though issued only recently, the *Monson* court's analysis already has been followed by at least one other court. *Burton v. Sanders*, No. 20-11948, 2021 WL 168543, at *9 (E.D. Mich. Jan. 1, 2021).

**2.** **The Plaintiffs' brief interactions with the Detroit Police Department fail to constitute sufficient indication that the City should have been aware of their alleged claim.**

The Plaintiffs claim that a handful of telephone calls to the Detroit Police Department and the release of Adam Shamoons' firearms without having to sign papers should have put the City on notice that Plaintiffs had a claim against the City. Response, Ex. H (Decl. of Debra Metris Shamoon), Doc. No. 13565-15, ¶¶ 9-10; Ex. G (Decl. of Adam Shamoon), Doc. No. 13565-14, ¶ 6-10. They also argue for many pages in their Response that the City was aware of problems in its police department. Even if all of these statements are true (and the City does not concede that they are),

39230686.8/022765.00213

they are essentially the same allegations rejected in *Monson*. Indeed, the strongest allegation leveled by the Plaintiffs to put the City on notice of their alleged claims is that they "threatened to retain an attorney." Response, Ex. G (Decl. of Adam Shamoon), Doc. No. 13565-14, ¶ 9. This does not rise to the level of "either a demand for payment or some communication with a debtor concerning the existence of the creditor's claim." *Monson*, 2019 WL 1057306, at *9. The Plaintiffs thus were unknown creditors at the time of the City's bankruptcy filing.

This Court entered an order directing and approving the manner of publication for the notice of the claims bar date.[6] The Plaintiffs do not suggest that the City failed in any way to comply with this order. Thus, as unknown creditors, the Plaintiffs received sufficient notice of the claims bar date.

**B.    Plaintiffs' claims were within their fair contemplation as of 2012 and thus were pre-petition claims.**

**1.    This Court uses the "fair contemplation" test to determine when a claim arose.**

This Court has adopted the fair contemplation test to decide when a contingent or unmatured claim arises for bankruptcy purposes. Under the fair contemplation test, a claim arises pre-petition if the creditor "could have ascertained through the

---

[6] *Order, Pursuant to Sections 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(C), Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof*, Doc. No. 1782, ¶ 26. The *Burton* court noted this order in its analysis. *Burton*, 2021 WL 168443, at *5.

39230686.8/022765.00213

exercise of reasonable due diligence that it had a claim" at the time the petition was filed. *In re City of Detroit*, 548 B.R. 748, 763 (Bankr. E.D. Mich. 2016) (quoting *Signature Combs, Inc. v. United States*, 253 F. Supp. 2d 1028, 1037 (W.D. Tenn. 2003)). A plaintiff need not know for certain that it has an actionable claim because "certainty is not the standard. The standard is whether the contingent claim was within [the plaintiff's] fair contemplation." *Id.* at 767. If events giving rise to an alleged claim occur pre-petition, and a claimant is aware of these events pre-petition, then the claim is within the claimant's fair contemplation pre-petition, even if the claimant is not certain the claim is actionable until after the petition is filed. *Id.*

The Sixth Circuit recently stated that "[t]he statutory period [for a § 1983 claim] begins to run when the plaintiff <u>knows or has reason to know</u> that the act providing the basis of his or her injury has occurred." *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 n.8 (6th Cir. 2020) (citation and internal quotation marks omitted, emphasis added). The accrual date for a section 1983 claim is thus the date as of which a party could ascertain that it had a claim by exercising reasonable due diligence.

Three courts in this district have considered situations where a plaintiff was aware it had a claim against the City pre-petition but did not file a section 1983 claim against the City until after the petition date. In each case, the court concluded that the claim was within the plaintiff's fair contemplation pre-petition. *Burton*, 2021

- 7 -

WL 168543, at *4; *Monson*, 2019 WL 1057306, at *8-9; *Sanford v. City of Detroit*, No. 17-13062, 2018 WL 6331342, at *5-6 (E.D. Mich. Dec. 4, 2018).

>   **2.    The Plaintiffs' allegations and the District Court's Opinion show that their alleged claims were within their fair contemplation pre-petition.**

Here, the Plaintiffs do not dispute that the event giving rise to their alleged claims occurred on September 13, 2012; they acknowledge that on the first page of their Response brief.  They explain in some detail how they contacted the Detroit Police Department several times over the following weeks.  They were not motivated to investigate whether they might have a claim based on this event until 2015, however, when they saw media reports of other claimants attempting to pursue claims against the City.  *See* Response, p. 3.  Thus, they did not "exercise reasonable due diligence" until 2015, and want to use their delay as an excuse for why they did not contemplate that they had a claim until after the claims bar date had passed.  This is not how the "fair contemplation" test works, though.

In fact, the District Court determined in its Opinion, attached as Exhibit 2 to the Motion, that the Plaintiffs were aware of their claim pre-petition:  "Here, although the parties agree that the statute of limitations began to run on September 13, 2012, the date Plaintiffs became aware of the alleged constitutional violations, they disagree as to if, and for how long, the statute of limitations tolled."  Opinion, p. 13 (Motion Ex. 6-2, Doc. No. 13532-2, p. 14 of 52) (emphasis added).  As noted

- 8 -

previously, that means that September 13, 2012, is the date on which the Plaintiffs knew or had reason to know of their claims—i.e., the date as of which the claims were within the Plaintiffs' fair contemplation. *Garza*, 972 F.3d at 867 n.8. The fact that they waited a few years before investigating their potential claim does not convert it to a post-petition claim. *City of Detroit*, 548 B.R. at 763-67. Their claims (to the extent they had any) were pre-petition claims and are now barred because the Plaintiffs did not file a proof of claim as required. *Burton*, 2021 WL 168543, at *4; *Monson*, 2019 WL 1057306, at *8-9; *Sanford*, 2018 WL 6331342, at *5-6.

    **C.**     **The Plaintiffs' discussion of equitable estoppel and laches are equally unavailing.**

        **1.**     **Equitable estoppel does not apply in this instance.**

            **a.**     **Equitable estoppel generally requires an affirmative assertion upon which a party relies to its detriment. It only applies to omissions where there is a duty to speak.**

The doctrine of equitable estoppel requires:

> 1) conduct or language amounting to a representation of material facts; 2) the party to be estopped must be aware of the true facts; 3) the party to be estopped must intend that the representation be acted on or act such that the party asserting the estoppel has a right to believe it so intended; 4) the party asserting the estoppel must be unaware of the true facts; and 5) the party asserting the estoppel must detrimentally and justifiably rely on the representation.

*Qassis v. Republic Bank (In re Luna Pier Land Dev., LLC)*, 325 B.R. 735, 739 (Bankr. E.D. Mich. 2005) (quoting *King v. Henderson*, 2000 WL 1478360, at *5 (6th Cir. Sept. 27, 2000)).

39230686.8/022765.00213

It is possible, though difficult, to make an estoppel argument based on a party's failure to speak, rather than on an affirmative representation, but only "where there exists a duty to make factual disclosures." *Louden v. Fed. Land Bank of Louisville (In re Louden)*, 106 B.R. 109, 112 (Bankr. E.D. Ky. 1989). As the Sixth Circuit explained,

> [b]efore there can be an estoppel by mere silence, facts must be alleged and proved showing a duty and opportunity to speak; that the party to be estopped knew or had reason to believe, that the holder of the obligation would rely on the silence of the party to be estopped, and did rely on his silence, and was injured thereby.

*C. I. T. Corp. v. Janis*, 418 F.2d 960, 982–83 (6th Cir. 1969).

### b.   Under binding Sixth Circuit case law, debtors are not obligated to raise discharge as a defense.

Debtors have no duty to raise their discharge as a defense in any civil action, thanks to the Bankruptcy Code.

Section 524(a)(1) and (2) apply in chapter 9 bankruptcy cases. 11 U.S.C. § 901(a). Section 524(a)(2) states that a discharge "operates as an injunction against the commencement . . . of an action . . . to collect . . . any [debt discharged under section 944] . . . ." The Sixth Circuit has explained what this means.

> The concern of the drafters of § 524 was that a creditor whose debt was discharged would bring suit "in a local court after the granting of the discharge, and if the debtor failed to plead the discharge affirmatively, the defense was deemed waived and an enforceable judgment could then be taken against him or her." To avoid such abuses:

- 10-

> [S]ection 524(a) declares that any judgment on a
> discharged debt in any forum other than the bankruptcy
> court is null and void as it affects the personal liability
> of the debtor.... Accordingly, if a creditor brings a
> collection suit after discharge, and obtains a judgment
> against the debtor, the judgment is rendered null and
> void by section 524(a). The purpose of the provision is
> to make it absolutely unnecessary for the debtor to do
> anything at all in the collection action.

*Hamilton v. Herr (In re Hamilton)*, 540 F.3d 367, 372-73 (6th Cir. 2008) (quoting 4

COLLIER ON BANKRUPTCY ¶ 524.LH [1], at 524–61 (Sept.2005) (Lawrence P. King

ed., 15th ed. rev.). For this reason, "a debtor need not raise his discharge in

bankruptcy as an affirmative defense, because thanks to § 524(a) 'such an

affirmative defense is unnecessary and has been since 1970.'" *Id.* at 373 (citation

omitted).

In addition to section 524, the Plan includes a similar injunction, as discussed

on pages 4 and 5 of the Motion. Plan, Art. III.D.5, pp. 50-51. Even if a creditor

feels that a discharge injunction is erroneously entered as applied to it, it still must

comply with the injunction until it seeks and obtains relief from the injunction. *See,*

*e.g.*, *Kravis, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 838 (7th

Cir. 1998) (citing *United States v. United Mine Workers*, 330 U.S. 258, 293 (1947)).

It cannot violate the injunction, then complain that the debtor failed to object to its

violation of a court order. *See Hamilton*, 540 F.3d at 372-73.

- 11-

    **c.**    **The Plaintiffs point to no affirmative representation upon which to base their estoppel argument. Instead, they rely on the City's delay in asserting its discharge as a defense. Under Sixth Circuit law, they cannot use that delay to justify their violation of both section 524 and the Plan injunction.**

The Plaintiffs identify no plausible basis for their estoppel claim. They do not identify any City representation upon which they could have relied. They also do not claim that they were unaware of the City's bankruptcy case as of the date they filed their lawsuit. Response, Ex. H., *Declaration of Debra Metris-Shamoon*, ¶ 14. As such, they cannot claim that they were "unaware of the true facts." *Luna Pier Land Dev.*, 325 B.R. at 739. Instead, they essentially argue that they have gotten away with violating the discharge injunction for a while, and thus should be permitted to continue getting away with it. But, the City was never obligated to raise discharge as a defense. *Hamilton*, 540 F.3d at 372-73. Thus, the City's delay in doing so cannot constitute an "omission" for equitable estoppel, and the Plaintiff's attempt to assert equitable estoppel fails. *C. I. T. Corp.*, 418 at 982–83.

    **2.**    **Because a debtor is never required to raise the discharge injunction as a defense, laches does not apply. But, even if laches were applicable, it would not help the Plaintiffs here.**

    **a.**    **The first step in evaluating a laches is to determine whether it applies. It does not apply here.**

"Laches is the negligent and unintentional failure to protect one's rights." *Kehoe Component Sales, Inc. v. Best Lighting Prods., Inc.*, 796 F.3d 576, 584 (6th Cir. 2015) (quoting *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408

- 12-

(6th Cir. 2002)).  Application of laches is often left to the discretion of the trial court, though there are circumstances in which it will not apply at all.  *See Chirco v. Crosswinds Cmtys., Inc.*, 474 F.3d 227, 231 (6th Cir. 2007).  For example, laches usually cannot circumvent a legislature's judgment to shorten a statute of limitations.  *Id.* at 231-33.  Here, both the discharge injunction in the Plan and 11 U.S.C. § 524(a) prevent the invocation of laches because the City cannot be "late" in asserting a defense that it is not obligated to assert in the first instance.  *Hamilton*, 540 F.3d at 372-73.  In other words, because a debtor *never* needs to raise "discharge" as a defense, a debtor cannot "negligently" fail to protect its rights by not asserting its discharge.

By 2015, before they filed suit, the Plaintiffs were well aware of the City's bankruptcy case.  Response, Ex. H., *Declaration of Debra Metris-Shamoon*, ¶ 14.  Knowing of the City's bankruptcy, they sued anyway.  The City was not obligated to raise discharge as a defense.  *Hamilton*, 540 F.3d at 372-73.  The Plaintiffs cannot now complain that they wasted their time and efforts pursuing the City in violation of the discharge injunction.  Laches simply does not apply.

> **b.** **Even if laches could apply to a debtor's failure to raise "discharge" as a defense, it would not avail the Plaintiffs here as their position is unchanged.**

Even if laches were applicable, it requires more than delay.  The delay must work some disadvantage to a party, such as the entry of (and reliance on) court orders

- 13-

39230686.8/022765.00213

or reliance on the validity of a sale of property. *In re Ottoman*, 621 B.R. 768, 791-92 (Bankr. E.D. Mich. 2020). A delay that does not change the relative positions of the parties or convey an unfair advantage to a party will not support the application of laches. *NLRB v. Taylor Mach. Prods., Inc.*, 136 F.3d 507, 514 (6th Cir. 1998).

Here, the Plaintiffs do not and cannot point to any change in their relative position. They are still in the same position as they were before—barred from pursuing their claim by their failure to file a proof of claim and by the discharge injunction. The Plaintiffs' only complaint is that they incurred expenses as they litigated their case in violation of the City's discharge, which they should not have been doing in the first place. This is insufficient to invoke laches; if all it took was persistence and a debtor's lapse to break through a discharge injunction, then a discharge injunction (and section 524) would be of little protection.

> **c.** **Laches does not help the Plaintiffs because the City's delay in raising discharge was not unreasonable and the City pursued other valid arguments in the interim.**

Further, as an equitable doctrine, laches requires a showing that a party failed to act diligently. If a party errs but corrects that error promptly, it argues against application of laches. *See Luna Pier Land Dev.,* 325 B.R. at 740. Likewise, if the party trying to assert laches acted itself improperly, it cannot seek to apply laches. *Id.* at 740-41.

- 14-

Here, the City's previous counsel did not raise discharge as a defense even as it pursued other defenses to Plaintiffs' claims. When the City's previous counsel withdrew from this case in December of 2021,[7] the City of Detroit's Law Department reviewed the matter and noticed that Plaintiff's claims arose prepetition. In her next filing, counsel rectified the error by raising the issue to the District Court and referring the matter to undersigned counsel,[8] asking undersigned counsel to file the Motion. In contrast, the Plaintiffs sued the City post-petition, fully aware of the City's bankruptcy case, and in violation of both the Bankruptcy Code and the Plan discharge injunction. The City submits that, even were laches to apply (and the City contends it does not), then Plaintiffs have not shown that it should be applied under these circumstances. *Luna Pier Land Dev.*, 325 B.R. at 740-41.

---

[7] *See Stipulated Order of Substitution of Counsel*, Case No. 18-13683, Doc. No. 151, entered Dec. 7, 2021 (substituting Crystal Olmstead of the City of Detroit Legal Department for Crystal B. Olmstead in replacement of attorneys James M. Surwiec, Lindsey R. Johnson, and James P. Allen, Sr.).

[8] *See Joint Factual and Procedural Summary*, Case No. 18-13683, Doc. No. 156, filed Mar. 30, 2022, p. 6, stating

Defendant claims the Plaintiffs' claims are barred by bankruptcy. The incident that is the subject of this lawsuit occurred in 2012. The City of Detroit filed for bankruptcy in 2013. The Plaintiffs did not file a claim in bankruptcy court; as such their claims are barred. Further, even if their claims were not barred, the recovery is limited based on the bankruptcy order. The City has referred this matter to its bankruptcy counsel for review.

39230686.8/022765.00213

## IV. Conclusion

For all of these reasons, the Court should grant the City's Motion and such further relief as it deems appropriate.

Dated: June 24, 2022

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Attorneys for the City of Detroit

39230686.8/022765.00213

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 24, 2022, he served a copy of the foregoing *Reply Brief in Support of City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris and Julia Metris* on counsel for Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris and Julia Metris, in the manner described below and via the Court's ECF system which will provide notice to all registered parties:

Via email:

Dennis A Dettmer
Dettmer & Dezsi, PLLC
1523 N. Main St.
Royal Oak, MI 48067
Email: ddettmeresq@yahoo.com

Michael R. Dezsi
Law Office of Michael R. Dezsi, PLLC
1523 N. Main St.
Royal Oak, MI 48067
Email: mdezsi@dezsilaw.com

DATED:  June 24, 2022

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

39230686.8/022765.00213

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                    Case No. 13-53846

CITY OF DETROIT, MICHIGAN,                                Chapter 9

            Debtor.                                       Judge Thomas J. Tucker
_____/

**OPINION REGARDING THE CITY OF DETROIT'S MOTION FOR THE ENTRY OF
AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER
AGAINST DEBRA METRIS-SHAMOON, ET AL. (DOCKET # 13532)**

This case is before the Court on the motion by the City of Detroit (the "City"), entitled

"City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and

Confirmation Order Against Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris

and Julia Metris" (Docket # 13532, the "Motion").  As suggested by its title, the Motion seeks

relief against the following individuals: Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres,

Paul Metris and Julia Metris (collectively, the "Respondents").  The City seeks injunctive and

declaratory relief to prevent the Respondents from continuing to prosecute claims against the

City that were discharged in this bankruptcy case.

The Respondents objected to the Motion, and argue that their claims were not discharged.

The Court held a telephonic hearing on the Motion on August 24, 2022, then took the Motion

under advisement.  For the following reasons, the Court will grant the Motion.

The Court has reviewed and carefully considered all of the papers filed by the City and

the Respondents concerning the Motion,[1] and all of the written and oral arguments of the parties.

The Court finds and concludes as follows.

_____

[1] Docket ## 13532, 13565, and 13588.

1. Each of the Respondents joined in filing and prosecuting claims against the City in the case of *Debra Metris-Shamoon, et al. v. City of Detroit, et al.*, Case No. 18-cv-13683 (United States District Court, E.D. Michigan) (the "District Court Case"), including the most recent statement of their claims, contained in their Second Amended Complaint filed on July 8, 2021 (the "Second Amended Complaint").[2]

2. Each of the Respondents' claims against the City arose several months before the City filed its petition commencing this Chapter 9 bankruptcy case on July 18, 2013. All of the events forming the basis of the Respondents' claims occurred on September 13, 2012. The claims arose on that date, when officers of the Detroit Police Department conducted what the Respondents have called an "unlawful raid" on the home of two of the Respondents in Shelby Township, Michigan, and seized certain property.[3] In their Second Amended Complaint, the Respondents alleged the following about the events of September 13, 2012:

> 9. In September 2012, Plaintiffs Deborah Metris-Shamoon and Mukhlis Shamoon were the lawful and licensed operator of a marijuana grow facility located at their residence in Shelby Township, Michigan.
>
> 10. On or about September 13, 2012, Defendants, acting under color of law and as officers of Defendant City of Detroit's Narcotics Unit, conducted an unlawful raid of Plaintiffs' home in Shelby Township, Michigan. The raid was supervised by, among others, Sgt. Joe Tucker[4] of the Detroit Police Department.
>
> 11. Officers gained entry into Plaintiffs' residence via forced entry

---

[2] A copy of the Second Amended Complaint appears as Exhibit 6-3 to the Motion (Docket # 13532-2).

[3] *See* Respondents' Br. (Docket # 13565) at pdf p. 3.

[4] Sgt. Joe Tucker is no relation to the undersigned judge.

with at least one of the officers' weapons drawn.

12. The Officers purposefully concealed their identities during the raid and neither knocked or announced their presence before making a forced entry into Plaintiffs' home.

13. At no time during the raid did any of the officers show or present to Plaintiffs a lawfully issued search warrant.

14. During the raid, the officers destroyed Plaintiffs' home. Plaintiffs were unlawfully searched and seized within the meaning of the fourth amendment during the raid.

15. For an unknown duration of time, the officers extensively tore apart Plaintiffs' property and removed, without lawful authority, marijuana plants and other related legitimate and lawful by-products of Plaintiffs' business.

16. The officers had no probable cause to seize and/or arrest Plaintiffs nor were Plaintiffs ever shown a search or arrest warrant.

17. The officers also confiscated, without lawful authority, an Armsport 12-gauge shotgun, a BSA 9mm handgun, a Winchester Wildcat .22 Rifle, a BSR .45 Caliber Colt handgun, and money totaling $315.00 from Plaintiffs' residence.

18. At no time were Plaintiffs ever given a copy of any search warrant or a list of items that were unlawfully seized from their property.

19. Plaintiffs were eventually released by Defendants and never charged with any violations of law.

20. During the raid, Plaintiff Mukhlis Shamoon was placed in handcuffs which the officers left on him after leaving the property such that Mukhlis was forced to wear the handcuffs for approximately ten hours.

21. Following the raid, Defendants produced a search warrant and affidavit sworn out by Defendant Geelhood in which Defendant falsely swore to facts in an attempt to manufacture probable cause.

22. In particular, Defendant Geelhood falsely swore to having

3

conducted surveillance of the Plaintiffs' home and having witnessed illegal drug transactions at Plaintiffs' residence.

23. Defendant Geelhood also falsely swore to having relied on a confidential informant to establish probable cause.[5]

3.  Under what is known as the "fair contemplation" test, all of the Respondents' claims against the City arose pre-petition — *i.e.*, before July 18, 2013 — because before that date, the Respondents "'could have ascertained through the exercise of reasonable due diligence that [they] had a claim'" against the City, based on the events of September 13, 2012. *See In re City of Detroit, Michigan*, 548 B.R. 748, 763 (Bankr. E.D. Mich. 2016) (citation omitted).[6]

4.  In addition, the Respondents each admitted and agreed, in the District Court Case, that their claims against the City, which are brought under 42 U.S.C. § 1983, accrued for statute of limitations purposes on September 13, 2012, because that is "the date [the Respondents] became aware of the alleged constitutional violations."[7]

5.  When the City filed its bankruptcy petition on July 18, 2013, and from that date until well after the December 10, 2014 Effective Date of the City's confirmed plan of adjustment (the "Relevant Time"), each of the Respondents was an "unknown creditor" of the City, rather than a "known creditor," as those concepts are defined in cases such as *Chemetron Corp. v. Jones*, 72

---

[5] Second Amended Complaint at ¶¶ 9-23.

[6] The "fair contemplation" test "looks at whether there was a pre-petition relationship between the debtor and the creditor, 'such as contract, exposure, impact or privity,' such that a possible claim is within the fair contemplation of the creditor at the time the petition is filed. . . . Under this test, a claim is considered to have arisen pre-petition if the creditor 'could have ascertained through the exercise of reasonable due diligence that it had a claim' at the time the petition is filed." *Id.* (citations omitted).

[7] *See* Ex. 6-2 to Respondents' Resp. (Docket # 13532-2) at 13 (district court opinion, filed in the District Court Case on June 25, 2021).

4

F.3d 341, 345-46 (3d Cir. 1995) and *Monson v. City of Detroit*, Case No. 18-10638, 2019 WL

1057306, at *9-10 (E.D. Mich. Mar. 6, 2019). As unknown creditors, the Respondents validly

could be, and were, given adequate notice of the City's bankruptcy case by publication only.[8] As

a result, each of the Respondents had adequate notice of the City's bankruptcy case, beginning

shortly after it was filed on July 18, 2013.

6. The Respondents were "unknown creditors" of the City during the Relevant Time

because during that time, the Respondents' claims against the City were not "readily

ascertainable" by the City. The Court agrees with the following statements of law by the court in

*Monson*, including its statement of what "readily ascertainable" means in this context:

> Bankruptcy law distinguishes between known and unknown
> creditors. Unknown creditors may be notified by publication; but
> known creditors are entitled to actual notice. Known creditors are
> those whose claims or identities are "readily ascertainable" by the
> debtor. Readily ascertainable means a debtor, through "reasonably
> diligent efforts" could discover a creditor's claim. "Reasonably
> diligent efforts" does not require "impracticable and extended
> searches . . . in the name of due process." Rather, a debtor must
> home in on its "own books and records." Typically, that means the
> debtor has something in its possession, either a "demand for
> payment" or "some communication with a debtor concerning the
> existence of the creditor's claim."

*Monson*, 2019 WL 1057306, at *9 (citations omitted).

7. The Respondents have not presented or alleged any facts that could permit the Court to

find that their claims against the City were "readily ascertainable" by the City during the

---

[8] The Respondents do not dispute that the notices by publication in this bankruptcy case were
adequate, as to unknown creditors.

Relevant Time. For example, there is no evidence that at any time before April 23, 2015,[9] any of the Respondents communicated any demand for payment to the City or communicated to the City the existence of a claim against the City. None of the phone calls to the Detroit Police Department that allegedly were made by Respondent Debra Metris-Shamoon and her son, Adam Shamoon,[10] described in their Declarations,[11] constituted a demand for payment on any claim or a communication of the existence of a claim against the City.[12] Nor is there any evidence that at any time before April 23, 2015, the City's books and records indicated that any of the Respondents had or alleged any claims against the City.

8. All of the Respondents' claims against the City were discharged, under the discharge provisions in the City's confirmed plan of adjustment, on that plan's Effective Date of December 10, 2014. *See* Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City

---

[9] April 23, 2015 is the date of a letter mailed by the Respondents' attorney to the City's Legal Department, requesting documents for the putative class action of *Davis v. City of Detroit*, Case No. 15-10547 (E.D. Mich.). *See* Ex. D to Respondents' Resp. (Docket # 13565-11). During the hearing on the Motion, the Respondents' attorney identified the sending of this letter and its enclosure as the first time that the City was made aware that any of the Respondents were putative class members in the *Davis* case. (Ultimately, the *Davis* case was not certified as a class action, and was settled.) The Respondents filed their own action against the City and others — the District Court Case — on November 26, 2018.

[10] Adam Shamoon is not one of the Respondents, and did not join as a plaintiff in the District Court Case. He was not present when the September 13, 2012 raid occurred. Four guns belonging to Adam Shamoon were seized in the raid, but they were later returned to him.

[11] Exs. G and H to the Respondents' Resp. (Docket ## 13565-14 and 13565-15).

[12] The allegations about these phone calls can fairly be summarized as follows. First, Adam Shamoon says that in the days and weeks soon after the raid, he called the police department three times, during which he asked why his parents' house was raided, and to seek the return of his four guns that had been seized. He was given no information or explanation about the raid, but he was permitted to pick up his guns. (*See* Ex. G to the Respondents' Resp. (Docket # 13565-14). Second, Debra Metris-Shamoon says that she called the police department twice, asking why the police had raided her home and demanding to see a warrant. She received no explanation. (*See* Ex. H to the Respondents' Resp. (Docket # 13565-15).

of Detroit, filed November 12, 2014 (Docket # 8272, the "OCP") at 87-88; Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (Docket # 8045, copy attached to OCP at Docket # 8272 (App. I), the "Plan") at 50, Article III.D.4.[13]

9. Under the injunction provisions in the OCP and in the confirmed Plan, all of the Respondents are barred and enjoined from pursuing any of their discharged claims against the City, in the District Court Case or otherwise. *See* OCP at 89-91; Plan at 50-51, Article III.D.5.

10. Under the Court's November 21, 2013 Order, cited by the City's Motion as the "Bar Date Order" (Docket # 1782), the deadline for filing a proof of claim in this bankruptcy case was February 21, 2014. It is undisputed that none of the Respondents ever filed a proof of claim in this bankruptcy case.

11. Under ¶ 22 of the Bar Date Order, the Respondents are barred from receiving any distributions in this bankruptcy case, and the Respondents are "forever barred, estopped and enjoined from . . . asserting any claim against the City or property of the City[.]" *See* Bar Date Order at 14-15, ¶ 22.

12. The Respondents argue that the doctrines of equitable estoppel and laches preclude the City from seeking the relief it now seeks. These arguments are based on the City's delay in seeking the relief it now seeks, and the City's delay in raising the bankruptcy discharge in any way as a defense in the District Court Case. While the City has not adequately explained the

---

[13] Contrary to the Respondents' argument, the "gross negligence or willful misconduct" exception to a certain release that is contained in the Plan, in Article III.D.7.a, at 52, does not apply to the Respondents' claims. For one thing, and as the City correctly argued during the hearing, that release and its exception apply only to claims of "holder[s] of a Claim that vote[d] in favor of the Plan." (Article III.D.7.a of Plan at 52). None of the Respondents voted in favor of the Plan, or voted on the Plan at all. Indeed, none of the Respondents ever filed a proof of claim in this bankruptcy case.

reason(s) for its delay, the Court cannot apply either equitable estoppel or laches to bar the City's relief. Neither of these doctrines can be used to deprive the City of the benefit of its bankruptcy discharge.

13. Even if the City had delayed raising the bankruptcy discharge until after suffering an adverse judgment on the Respondents' claims in the District Court Case, the City could not be deprived of the benefit of the bankruptcy discharge. Any such adverse judgment would be deemed "void ab initio" under binding case law in the Sixth Circuit. *See Hamilton v. Herr* (*In re Hamilton*), 540 F.3d 367, 373-76 (6th Cir. 2008). Under *Hamilton*, a debtor who is faced with a lawsuit asserting a claim that was discharged in bankruptcy has no duty to do anything. Based on 11 U.S.C. §§ 524(a)(1) and 524(a)(2),[14] the court in *Hamilton* held that it is "absolutely unnecessary for the debtor to do anything at all in [such an] action." *Id.* at 373 (quoting 4 Collier on Bankruptcy ¶ 524.LH[1] at 524-57 (Sept. 2005) (Lawrence P. King ed., 15th ed. rev.)). "[A]ny judgment on a discharged debt in any forum other than the bankruptcy court is . . . rendered null and void by section 524(a)." *Id.*

---

[14] Sections 524(a)(1) and 524(a)(2) apply in Chapter 9 cases. *See* 11 U.S.C. § 901(a). Those provisions in § 524(a) state:

> (a) A discharge in a case under this title—

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1192, 1228, or 1328 of this title, whether or not discharge of such debt is waived; [and]

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

8

14.  It follows that the City's delay in seeking the relief it now seeks cannot be used to deny such relief, under equitable doctrines like equitable estoppel and laches, or otherwise.

For the reasons stated in this Opinion, the City's Motion must be granted.  The Court will enter a separate Order granting the City the relief it seeks.

Signed on August 26, 2022



/s/ Thomas J. Tucker
Thomas J. Tucker
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Case No. 13-53846

CITY OF DETROIT, MICHIGAN,                          Chapter 9

        Debtor.                                    Judge Thomas J. Tucker
_____ /

**ORDER GRANTING THE CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN
ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER
AGAINST DEBRA METRIS-SHAMOON, ET AL. (DOCKET # 13532)**

This case is before the Court on the motion by the City of Detroit, entitled "City of

Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order

Against Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris and Julia Metris"

(Docket # 13532, the "Motion"). Today the Court has filed a written opinion regarding the

Motion (Docket # 13617). For the reasons stated in that Opinion,

IT IS ORDERED that:

A. The Motion is granted.

B. No later than September 2, 2022, the Respondents Debra Metris-Shamoon, Mukhlis

Shamoon, Carl Veres, Paul Metris and Julia Metris (the "Respondents") must dismiss, or cause

to be dismissed, the City of Detroit with prejudice from the case of *Debra Metris-Shamoon, et al.*

*v. City of Detroit, et al.*, Case No. 18-cv-13683 (United States District Court, E.D. Michigan)

(the "District Court Case").

C. Each of the Respondents is permanently barred, estopped and enjoined from asserting

claims asserted in the District Court Case or claims arising from or related to the District Court

Case against the City of Detroit or property of the City of Detroit.

D.  Each of the Respondents is prohibited from sharing in any distribution in this bankruptcy case.

E.  The Court will retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

**Signed on August 26, 2022**



/s/ Thomas J. Tucker
_____
Thomas J. Tucker
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                                              Case No. 13-53846

City of Detroit, Michigan,                          Judge Thomas J. Tucker

Debtor.                                             Chapter 9

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1. Name(s) of appellant(s):
   Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris & Julie Metris

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.
- ☐ Plaintiff
- ☐ Defendant
- ☐ Other (describe) _____

For appeals in a bankruptcy case and not in an adversary proceeding.
- ☐ Debtor
- ☒ Creditor - Plaintiffs
- ☐ Trustee
- ☐ Other (describe) _____

### Part 2: Identify the subject of this appeal

1. Describe the judgment, order, or decree appealed from: Doc 13617 & 13618 Order & Opinion

2. State the date on which the judgment, order, or decree was entered:  08/26/2022

### Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: _____    Attorney: _____
                                          _____
                                          _____

2. Party: _____    Attorney: _____
                                          _____
                                          _____

# Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

❑ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

# Part 5: Sign below

  s/*Michael R. Dezsi*

Date: 09/06/2022

Signature of attorney for appellant(s) (or appellant(s) if not represented by an attorney)

Name, address, and telephone number of attorney (or appellant(s) if not represented by an attorney):

Michael R. Dezsi (P64530)

1523 N. Main St.

Royal Oak, MI 48067

(313) 757-8112

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

[**Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                        Case No. 13-53846

CITY OF DETROIT, MICHIGAN,                    Chapter 9

                Debtor.                       Judge Thomas J. Tucker
_____ /

**ORDER GRANTING THE CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN
ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER
AGAINST DEBRA METRIS-SHAMOON, ET AL. (DOCKET # 13532)**

This case is before the Court on the motion by the City of Detroit, entitled "City of

Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order

Against Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris and Julia Metris"

(Docket # 13532, the "Motion"). Today the Court has filed a written opinion regarding the

Motion (Docket # 13617). For the reasons stated in that Opinion,

IT IS ORDERED that:

A. The Motion is granted.

B. No later than September 2, 2022, the Respondents Debra Metris-Shamoon, Mukhlis

Shamoon, Carl Veres, Paul Metris and Julia Metris (the "Respondents") must dismiss, or cause

to be dismissed, the City of Detroit with prejudice from the case of *Debra Metris-Shamoon, et al.

v. City of Detroit, et al.*, Case No. 18-cv-13683 (United States District Court, E.D. Michigan)

(the "District Court Case").

C. Each of the Respondents is permanently barred, estopped and enjoined from asserting

claims asserted in the District Court Case or claims arising from or related to the District Court

Case against the City of Detroit or property of the City of Detroit.

D.  Each of the Respondents is prohibited from sharing in any distribution in this bankruptcy case.

E.  The Court will retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

**Signed on August 26, 2022**



/s/ Thomas J. Tucker

Thomas J. Tucker
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                            Case No. 13-53846

CITY OF DETROIT, MICHIGAN,                        Chapter 9

      Debtor.                                 Judge Thomas J. Tucker
_____ /

**OPINION REGARDING THE CITY OF DETROIT'S MOTION FOR THE ENTRY OF
AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER
AGAINST DEBRA METRIS-SHAMOON, ET AL. (DOCKET # 13532)**

     This case is before the Court on the motion by the City of Detroit (the "City"), entitled

"City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and

Confirmation Order Against Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris

and Julia Metris" (Docket # 13532, the "Motion").  As suggested by its title, the Motion seeks

relief against the following individuals: Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres,

Paul Metris and Julia Metris (collectively, the "Respondents").  The City seeks injunctive and

declaratory relief to prevent the Respondents from continuing to prosecute claims against the

City that were discharged in this bankruptcy case.

     The Respondents objected to the Motion, and argue that their claims were not discharged.

The Court held a telephonic hearing on the Motion on August 24, 2022, then took the Motion

under advisement.  For the following reasons, the Court will grant the Motion.

     The Court has reviewed and carefully considered all of the papers filed by the City and

the Respondents concerning the Motion,[1] and all of the written and oral arguments of the parties.

The Court finds and concludes as follows.

_____
   [1]  Docket ## 13532, 13565, and 13588.

1. Each of the Respondents joined in filing and prosecuting claims against the City in the case of *Debra Metris-Shamoon, et al. v. City of Detroit, et al.*, Case No. 18-cv-13683 (United States District Court, E.D. Michigan) (the "District Court Case"), including the most recent statement of their claims, contained in their Second Amended Complaint filed on July 8, 2021 (the "Second Amended Complaint").[2]

2. Each of the Respondents' claims against the City arose several months before the City filed its petition commencing this Chapter 9 bankruptcy case on July 18, 2013. All of the events forming the basis of the Respondents' claims occurred on September 13, 2012. The claims arose on that date, when officers of the Detroit Police Department conducted what the Respondents have called an "unlawful raid" on the home of two of the Respondents in Shelby Township, Michigan, and seized certain property.[3] In their Second Amended Complaint, the Respondents alleged the following about the events of September 13, 2012:

> 9. In September 2012, Plaintiffs Deborah Metris-Shamoon and Mukhlis Shamoon were the lawful and licensed operator of a marijuana grow facility located at their residence in Shelby Township, Michigan.
>
> 10. On or about September 13, 2012, Defendants, acting under color of law and as officers of Defendant City of Detroit's Narcotics Unit, conducted an unlawful raid of Plaintiffs' home in Shelby Township, Michigan. The raid was supervised by, among others, Sgt. Joe Tucker[4] of the Detroit Police Department.
>
> 11. Officers gained entry into Plaintiffs' residence via forced entry

---

[2] A copy of the Second Amended Complaint appears as Exhibit 6-3 to the Motion (Docket # 13532-2).

[3] *See* Respondents' Br. (Docket # 13565) at pdf p. 3.

[4] Sgt. Joe Tucker is no relation to the undersigned judge.

2

with at least one of the officers' weapons drawn.

12. The Officers purposefully concealed their identities during the raid and neither knocked or announced their presence before making a forced entry into Plaintiffs' home.

13. At no time during the raid did any of the officers show or present to Plaintiffs a lawfully issued search warrant.

14. During the raid, the officers destroyed Plaintiffs' home. Plaintiffs were unlawfully searched and seized within the meaning of the fourth amendment during the raid.

15. For an unknown duration of time, the officers extensively tore apart Plaintiffs' property and removed, without lawful authority, marijuana plants and other related legitimate and lawful by-products of Plaintiffs' business.

16. The officers had no probable cause to seize and/or arrest Plaintiffs nor were Plaintiffs ever shown a search or arrest warrant.

17. The officers also confiscated, without lawful authority, an Armsport 12-gauge shotgun, a BSA 9mm handgun, a Winchester Wildcat .22 Rifle, a BSR .45 Caliber Colt handgun, and money totaling $315.00 from Plaintiffs' residence.

18. At no time were Plaintiffs ever given a copy of any search warrant or a list of items that were unlawfully seized from their property.

19. Plaintiffs were eventually released by Defendants and never charged with any violations of law.

20. During the raid, Plaintiff Mukhlis Shamoon was placed in handcuffs which the officers left on him after leaving the property such that Mukhlis was forced to wear the handcuffs for approximately ten hours.

21. Following the raid, Defendants produced a search warrant and affidavit sworn out by Defendant Geelhood in which Defendant falsely swore to facts in an attempt to manufacture probable cause.

22. In particular, Defendant Geelhood falsely swore to having

3

conducted surveillance of the Plaintiffs' home and having witnessed illegal drug transactions at Plaintiffs' residence.

23. Defendant Geelhood also falsely swore to having relied on a confidential informant to establish probable cause.[5]

3.  Under what is known as the "fair contemplation" test, all of the Respondents' claims against the City arose pre-petition — *i.e.*, before July 18, 2013 — because before that date, the Respondents "'could have ascertained through the exercise of reasonable due diligence that [they] had a claim'" against the City, based on the events of September 13, 2012. *See In re City of Detroit, Michigan*, 548 B.R. 748, 763 (Bankr. E.D. Mich. 2016) (citation omitted).[6]

4.  In addition, the Respondents each admitted and agreed, in the District Court Case, that their claims against the City, which are brought under 42 U.S.C. § 1983, accrued for statute of limitations purposes on September 13, 2012, because that is "the date [the Respondents] became aware of the alleged constitutional violations."[7]

5.  When the City filed its bankruptcy petition on July 18, 2013, and from that date until well after the December 10, 2014 Effective Date of the City's confirmed plan of adjustment (the "Relevant Time"), each of the Respondents was an "unknown creditor" of the City, rather than a "known creditor," as those concepts are defined in cases such as *Chemetron Corp. v. Jones*, 72

---

[5] Second Amended Complaint at ¶¶ 9-23.

[6] The "fair contemplation" test "looks at whether there was a pre-petition relationship between the debtor and the creditor, 'such as contract, exposure, impact or privity,' such that a possible claim is within the fair contemplation of the creditor at the time the petition is filed. . . . Under this test, a claim is considered to have arisen pre-petition if the creditor 'could have ascertained through the exercise of reasonable due diligence that it had a claim' at the time the petition is filed." *Id.* (citations omitted).

[7] *See* Ex. 6-2 to Respondents' Resp. (Docket # 13532-2) at 13 (district court opinion, filed in the District Court Case on June 25, 2021).

4

F.3d 341, 345-46 (3d Cir. 1995) and *Monson v. City of Detroit*, Case No. 18-10638, 2019 WL 1057306, at *9-10 (E.D. Mich. Mar. 6, 2019). As unknown creditors, the Respondents validly could be, and were, given adequate notice of the City's bankruptcy case by publication only.[8] As a result, each of the Respondents had adequate notice of the City's bankruptcy case, beginning shortly after it was filed on July 18, 2013.

6. The Respondents were "unknown creditors" of the City during the Relevant Time because during that time, the Respondents' claims against the City were not "readily ascertainable" by the City. The Court agrees with the following statements of law by the court in *Monson*, including its statement of what "readily ascertainable" means in this context:

> Bankruptcy law distinguishes between known and unknown creditors. Unknown creditors may be notified by publication; but known creditors are entitled to actual notice. Known creditors are those whose claims or identities are "readily ascertainable" by the debtor. Readily ascertainable means a debtor, through "reasonably diligent efforts" could discover a creditor's claim. "Reasonably diligent efforts" does not require "impracticable and extended searches . . . in the name of due process." Rather, a debtor must home in on its "own books and records." Typically, that means the debtor has something in its possession, either a "demand for payment" or "some communication with a debtor concerning the existence of the creditor's claim."

*Monson*, 2019 WL 1057306, at *9 (citations omitted).

7. The Respondents have not presented or alleged any facts that could permit the Court to find that their claims against the City were "readily ascertainable" by the City during the

---

[8] The Respondents do not dispute that the notices by publication in this bankruptcy case were adequate, as to unknown creditors.

Relevant Time.  For example, there is no evidence that at any time before April 23, 2015,[9] any of the Respondents communicated any demand for payment to the City or communicated to the City the existence of a claim against the City.  None of the phone calls to the Detroit Police Department that allegedly were made by Respondent Debra Metris-Shamoon and her son, Adam Shamoon,[10] described in their Declarations,[11] constituted a demand for payment on any claim or a communication of the existence of a claim against the City.[12]  Nor is there any evidence that at any time before April 23, 2015, the City's books and records indicated that any of the Respondents had or alleged any claims against the City.

8.  All of the Respondents' claims against the City were discharged, under the discharge provisions in the City's confirmed plan of adjustment, on that plan's Effective Date of December 10, 2014.  *See* Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City

---

[9]  April 23, 2015 is the date of a letter mailed by the Respondents' attorney to the City's Legal Department, requesting documents for the putative class action of *Davis v. City of Detroit*, Case No. 15-10547 (E.D. Mich.).  *See* Ex. D to Respondents' Resp. (Docket # 13565-11).  During the hearing on the Motion, the Respondents' attorney identified the sending of this letter and its enclosure as the first time that the City was made aware that any of the Respondents were putative class members in the *Davis* case. (Ultimately, the *Davis* case was not certified as a class action, and was settled.)  The Respondents filed their own action against the City and others — the District Court Case — on November 26, 2018.

[10]  Adam Shamoon is not one of the Respondents, and did not join as a plaintiff in the District Court Case.  He was not present when the September 13, 2012 raid occurred.  Four guns belonging to Adam Shamoon were seized in the raid, but they were later returned to him.

[11]  Exs. G and H to the Respondents' Resp. (Docket ## 13565-14 and 13565-15).

[12]  The allegations about these phone calls can fairly be summarized as follows.  First, Adam Shamoon says that in the days and weeks soon after the raid, he called the police department three times, during which he asked why his parents' house was raided, and to seek the return of his four guns that had been seized.  He was given no information or explanation about the raid, but he was permitted to pick up his guns. (*See* Ex. G to the Respondents' Resp. (Docket # 13565-14).  Second, Debra Metris-Shamoon says that she called the police department twice, asking why the police had raided her home and demanding to see a warrant.  She received no explanation. (*See* Ex. H to the Respondents' Resp. (Docket # 13565-15).

of Detroit, filed November 12, 2014 (Docket # 8272, the "OCP") at 87-88; Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (Docket # 8045, copy attached to OCP at Docket # 8272 (App. I), the "Plan") at 50, Article III.D.4.[13]

9.  Under the injunction provisions in the OCP and in the confirmed Plan, all of the Respondents are barred and enjoined from pursuing any of their discharged claims against the City, in the District Court Case or otherwise.  *See* OCP at 89-91; Plan at 50-51, Article III.D.5.

10.  Under the Court's November 21, 2013 Order, cited by the City's Motion as the "Bar Date Order" (Docket # 1782), the deadline for filing a proof of claim in this bankruptcy case was February 21, 2014.  It is undisputed that none of the Respondents ever filed a proof of claim in this bankruptcy case.

11.  Under ¶ 22 of the Bar Date Order, the Respondents are barred from receiving any distributions in this bankruptcy case, and the Respondents are "forever barred, estopped and enjoined from . . . asserting any claim against the City or property of the City[.]"  *See* Bar Date Order at 14-15, ¶ 22.

12.  The Respondents argue that the doctrines of equitable estoppel and laches preclude the City from seeking the relief it now seeks.  These arguments are based on the City's delay in seeking the relief it now seeks, and the City's delay in raising the bankruptcy discharge in any way as a defense in the District Court Case.  While the City has not adequately explained the

---

[13]  Contrary to the Respondents' argument, the "gross negligence or willful misconduct" exception to a certain release that is contained in the Plan, in Article III.D.7.a, at 52, does not apply to the Respondents' claims.  For one thing, and as the City correctly argued during the hearing, that release and its exception apply only to claims of "holder[s] of a Claim that vote[d] in favor of the Plan."  (Article III.D.7.a of Plan at 52).  None of the Respondents voted in favor of the Plan, or voted on the Plan at all. Indeed, none of the Respondents ever filed a proof of claim in this bankruptcy case.

reason(s) for its delay, the Court cannot apply either equitable estoppel or laches to bar the City's relief. Neither of these doctrines can be used to deprive the City of the benefit of its bankruptcy discharge.

13. Even if the City had delayed raising the bankruptcy discharge until after suffering an adverse judgment on the Respondents' claims in the District Court Case, the City could not be deprived of the benefit of the bankruptcy discharge. Any such adverse judgment would be deemed "void ab initio" under binding case law in the Sixth Circuit. *See Hamilton v. Herr* (*In re Hamilton*), 540 F.3d 367, 373-76 (6th Cir. 2008). Under *Hamilton*, a debtor who is faced with a lawsuit asserting a claim that was discharged in bankruptcy has no duty to do anything. Based on 11 U.S.C. §§ 524(a)(1) and 524(a)(2),[14] the court in *Hamilton* held that it is "absolutely unnecessary for the debtor to do anything at all in [such an] action." *Id.* at 373 (quoting 4 Collier on Bankruptcy ¶ 524.LH[1] at 524-57 (Sept. 2005) (Lawrence P. King ed., 15th ed. rev.)). "[A]ny judgment on a discharged debt in any forum other than the bankruptcy court is . . . rendered null and void by section 524(a)." *Id.*

---

[14] Sections 524(a)(1) and 524(a)(2) apply in Chapter 9 cases. *See* 11 U.S.C. § 901(a). Those provisions in § 524(a) state:

> (a) A discharge in a case under this title—
>
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1192, 1228, or 1328 of this title, whether or not discharge of such debt is waived; [and]
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

14.  It follows that the City's delay in seeking the relief it now seeks cannot be used to deny such relief, under equitable doctrines like equitable estoppel and laches, or otherwise.

For the reasons stated in this Opinion, the City's Motion must be granted.  The Court will enter a separate Order granting the City the relief it seeks.

Signed on August 26, 2022



/s/ Thomas J. Tucker

Thomas J. Tucker
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

In re:                                          Case No. 13-53846

City of Detroit, Michigan,                      Judge Thomas J. Tucker

Debtor.                                         Chapter 9

## Amended NOTICE OF APPEAL AND STATEMENT OF ELECTION

## Part 1: Identify the appellant(s)

1. Name(s) of appellant(s):
   Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris & Julie Metris

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

   For appeals in an adversary proceeding.
   ☐ Plaintiff
   ☐ Defendant
   ☐ Other (describe) _____

   For appeals in a bankruptcy case and not in an adversary proceeding.
   ☐ Debtor
   ☒ Creditor - Plaintiffs
   ☐ Trustee
   ☐ Other (describe) _____

## Part 2: Identify the subject of this appeal

1. Describe the judgment, order, or decree appealed from: Doc 13617 & 13618 Order & Opinion

2. State the date on which the judgment, order, or decree was entered: _08/26/2022_____

## Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: Creditor-Plaintiffs/Appellants      Attorney: Michael R. Dezsi (P64530)
   Debra Metris-Shamoon                        c/o Dettmer & Dezsi, PLLC
   Mukhlis Shamoon                             1523 N. Main St.
   Julia and Paul Metris                       Royal Oak, MI 48067
   Carl Veres

2. Party: _Debtor-Appellee___    Attorney: Mark Swanson (P71149)
                                            Miller, Canfield, Paddock, and Stone, PLC
                                            150 W. Jefferson, Suite 2500
                                            Detroit, MI 48226

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

❑ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5: Sign below**

 /s/ Michael R. Dezsi                                      Date:   09/08/2022
Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Name, address, and telephone number of attorney
(or appellant(s) if not represented by an attorney):
 Michael R. Dezsi (P64530)
 1523 N. Main St.
 Royal Oak, MI 48067
 (313) 757-8112

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

[**Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                            Case No. 13-53846

CITY OF DETROIT, MICHIGAN,                        Chapter 9

　　　　　Debtor.                                    Judge Thomas J. Tucker

_____/

**ORDER GRANTING THE CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST DEBRA METRIS-SHAMOON, ET AL. (DOCKET # 13532)**

This case is before the Court on the motion by the City of Detroit, entitled "City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris and Julia Metris" (Docket # 13532, the "Motion"). Today the Court has filed a written opinion regarding the Motion (Docket # 13617). For the reasons stated in that Opinion,

IT IS ORDERED that:

A. The Motion is granted.

B. No later than September 2, 2022, the Respondents Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris and Julia Metris (the "Respondents") must dismiss, or cause to be dismissed, the City of Detroit with prejudice from the case of *Debra Metris-Shamoon, et al. v. City of Detroit, et al.*, Case No. 18-cv-13683 (United States District Court, E.D. Michigan) (the "District Court Case").

C. Each of the Respondents is permanently barred, estopped and enjoined from asserting claims asserted in the District Court Case or claims arising from or related to the District Court Case against the City of Detroit or property of the City of Detroit.

D.  Each of the Respondents is prohibited from sharing in any distribution in this bankruptcy case.

E.  The Court will retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

Signed on August 26, 2022

 /s/ Thomas J. Tucker

Thomas J. Tucker
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Case No. 13-53846

CITY OF DETROIT, MICHIGAN,                      Chapter 9

        Debtor.                                 Judge Thomas J. Tucker

_____/

**OPINION REGARDING THE CITY OF DETROIT'S MOTION FOR THE ENTRY OF
AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER
AGAINST DEBRA METRIS-SHAMOON, ET AL. (DOCKET # 13532)**

This case is before the Court on the motion by the City of Detroit (the "City"), entitled

"City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and

Confirmation Order Against Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres, Paul Metris

and Julia Metris" (Docket # 13532, the "Motion").  As suggested by its title, the Motion seeks

relief against the following individuals: Debra Metris-Shamoon, Mukhlis Shamoon, Carl Veres,

Paul Metris and Julia Metris (collectively, the "Respondents").  The City seeks injunctive and

declaratory relief to prevent the Respondents from continuing to prosecute claims against the

City that were discharged in this bankruptcy case.

The Respondents objected to the Motion, and argue that their claims were not discharged.

The Court held a telephonic hearing on the Motion on August 24, 2022, then took the Motion

under advisement.  For the following reasons, the Court will grant the Motion.

The Court has reviewed and carefully considered all of the papers filed by the City and

the Respondents concerning the Motion,[1] and all of the written and oral arguments of the parties.

The Court finds and concludes as follows.

_____

[1] Docket ## 13532, 13565, and 13588.

1. Each of the Respondents joined in filing and prosecuting claims against the City in the case of *Debra Metris-Shamoon, et al. v. City of Detroit, et al.*, Case No. 18-cv-13683 (United States District Court, E.D. Michigan) (the "District Court Case"), including the most recent statement of their claims, contained in their Second Amended Complaint filed on July 8, 2021 (the "Second Amended Complaint").[2]

2. Each of the Respondents' claims against the City arose several months before the City filed its petition commencing this Chapter 9 bankruptcy case on July 18, 2013. All of the events forming the basis of the Respondents' claims occurred on September 13, 2012. The claims arose on that date, when officers of the Detroit Police Department conducted what the Respondents have called an "unlawful raid" on the home of two of the Respondents in Shelby Township, Michigan, and seized certain property.[3] In their Second Amended Complaint, the Respondents alleged the following about the events of September 13, 2012:

> 9. In September 2012, Plaintiffs Deborah Metris-Shamoon and Mukhlis Shamoon were the lawful and licensed operator of a marijuana grow facility located at their residence in Shelby Township, Michigan.
>
> 10. On or about September 13, 2012, Defendants, acting under color of law and as officers of Defendant City of Detroit's Narcotics Unit, conducted an unlawful raid of Plaintiffs' home in Shelby Township, Michigan. The raid was supervised by, among others, Sgt. Joe Tucker[4] of the Detroit Police Department.
>
> 11. Officers gained entry into Plaintiffs' residence via forced entry

---

[2] A copy of the Second Amended Complaint appears as Exhibit 6-3 to the Motion (Docket # 13532-2).

[3] *See* Respondents' Br. (Docket # 13565) at pdf p. 3.

[4] Sgt. Joe Tucker is no relation to the undersigned judge.

2

with at least one of the officers' weapons drawn.

12. The Officers purposefully concealed their identities during the raid and neither knocked or announced their presence before making a forced entry into Plaintiffs' home.

13. At no time during the raid did any of the officers show or present to Plaintiffs a lawfully issued search warrant.

14. During the raid, the officers destroyed Plaintiffs' home. Plaintiffs were unlawfully searched and seized within the meaning of the fourth amendment during the raid.

15. For an unknown duration of time, the officers extensively tore apart Plaintiffs' property and removed, without lawful authority, marijuana plants and other related legitimate and lawful by-products of Plaintiffs' business.

16. The officers had no probable cause to seize and/or arrest Plaintiffs nor were Plaintiffs ever shown a search or arrest warrant.

17. The officers also confiscated, without lawful authority, an Armsport 12-gauge shotgun, a BSA 9mm handgun, a Winchester Wildcat .22 Rifle, a BSR .45 Caliber Colt handgun, and money totaling $315.00 from Plaintiffs' residence.

18. At no time were Plaintiffs ever given a copy of any search warrant or a list of items that were unlawfully seized from their property.

19. Plaintiffs were eventually released by Defendants and never charged with any violations of law.

20. During the raid, Plaintiff Mukhlis Shamoon was placed in handcuffs which the officers left on him after leaving the property such that Mukhlis was forced to wear the handcuffs for approximately ten hours.

21. Following the raid, Defendants produced a search warrant and affidavit sworn out by Defendant Geelhood in which Defendant falsely swore to facts in an attempt to manufacture probable cause.

22. In particular, Defendant Geelhood falsely swore to having

3

> conducted surveillance of the Plaintiffs' home and having witnessed illegal drug transactions at Plaintiffs' residence.
>
> 23. Defendant Geelhood also falsely swore to having relied on a confidential informant to establish probable cause.[5]

3. Under what is known as the "fair contemplation" test, all of the Respondents' claims against the City arose pre-petition — *i.e.*, before July 18, 2013 — because before that date, the Respondents "'could have ascertained through the exercise of reasonable due diligence that [they] had a claim'" against the City, based on the events of September 13, 2012. *See In re City of Detroit, Michigan*, 548 B.R. 748, 763 (Bankr. E.D. Mich. 2016) (citation omitted).[6]

4. In addition, the Respondents each admitted and agreed, in the District Court Case, that their claims against the City, which are brought under 42 U.S.C. § 1983, accrued for statute of limitations purposes on September 13, 2012, because that is "the date [the Respondents] became aware of the alleged constitutional violations."[7]

5. When the City filed its bankruptcy petition on July 18, 2013, and from that date until well after the December 10, 2014 Effective Date of the City's confirmed plan of adjustment (the "Relevant Time"), each of the Respondents was an "unknown creditor" of the City, rather than a "known creditor," as those concepts are defined in cases such as *Chemetron Corp. v. Jones*, 72

---

[5] Second Amended Complaint at ¶¶ 9-23.

[6] The "fair contemplation" test "looks at whether there was a pre-petition relationship between the debtor and the creditor, 'such as contract, exposure, impact or privity,' such that a possible claim is within the fair contemplation of the creditor at the time the petition is filed. . . . Under this test, a claim is considered to have arisen pre-petition if the creditor 'could have ascertained through the exercise of reasonable due diligence that it had a claim' at the time the petition is filed." *Id.* (citations omitted).

[7] *See* Ex. 6-2 to Respondents' Resp. (Docket # 13532-2) at 13 (district court opinion, filed in the District Court Case on June 25, 2021).

4

F.3d 341, 345-46 (3d Cir. 1995) and *Monson v. City of Detroit*, Case No. 18-10638, 2019 WL

1057306, at *9-10 (E.D. Mich. Mar. 6, 2019). As unknown creditors, the Respondents validly

could be, and were, given adequate notice of the City's bankruptcy case by publication only.[8] As

a result, each of the Respondents had adequate notice of the City's bankruptcy case, beginning

shortly after it was filed on July 18, 2013.

      6. The Respondents were "unknown creditors" of the City during the Relevant Time

because during that time, the Respondents' claims against the City were not "readily

ascertainable" by the City. The Court agrees with the following statements of law by the court in

*Monson*, including its statement of what "readily ascertainable" means in this context:

> Bankruptcy law distinguishes between known and unknown
> creditors. Unknown creditors may be notified by publication; but
> known creditors are entitled to actual notice. Known creditors are
> those whose claims or identities are "readily ascertainable" by the
> debtor. Readily ascertainable means a debtor, through "reasonably
> diligent efforts" could discover a creditor's claim. "Reasonably
> diligent efforts" does not require "impracticable and extended
> searches . . . in the name of due process." Rather, a debtor must
> home in on its "own books and records." Typically, that means the
> debtor has something in its possession, either a "demand for
> payment" or "some communication with a debtor concerning the
> existence of the creditor's claim."

*Monson*, 2019 WL 1057306, at *9 (citations omitted).

      7. The Respondents have not presented or alleged any facts that could permit the Court to

find that their claims against the City were "readily ascertainable" by the City during the

---

[8] The Respondents do not dispute that the notices by publication in this bankruptcy case were adequate, as to unknown creditors.

Relevant Time. For example, there is no evidence that at any time before April 23, 2015,[9] any of the Respondents communicated any demand for payment to the City or communicated to the City the existence of a claim against the City. None of the phone calls to the Detroit Police Department that allegedly were made by Respondent Debra Metris-Shamoon and her son, Adam Shamoon,[10] described in their Declarations,[11] constituted a demand for payment on any claim or a communication of the existence of a claim against the City.[12] Nor is there any evidence that at any time before April 23, 2015, the City's books and records indicated that any of the Respondents had or alleged any claims against the City.

8. All of the Respondents' claims against the City were discharged, under the discharge provisions in the City's confirmed plan of adjustment, on that plan's Effective Date of December 10, 2014. *See* Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City

---

[9] April 23, 2015 is the date of a letter mailed by the Respondents' attorney to the City's Legal Department, requesting documents for the putative class action of *Davis v. City of Detroit*, Case No. 15-10547 (E.D. Mich.). *See* Ex. D to Respondents' Resp. (Docket # 13565-11). During the hearing on the Motion, the Respondents' attorney identified the sending of this letter and its enclosure as the first time that the City was made aware that any of the Respondents were putative class members in the *Davis* case. (Ultimately, the *Davis* case was not certified as a class action, and was settled.) The Respondents filed their own action against the City and others — the District Court Case — on November 26, 2018.

[10] Adam Shamoon is not one of the Respondents, and did not join as a plaintiff in the District Court Case. He was not present when the September 13, 2012 raid occurred. Four guns belonging to Adam Shamoon were seized in the raid, but they were later returned to him.

[11] Exs. G and H to the Respondents' Resp. (Docket ## 13565-14 and 13565-15).

[12] The allegations about these phone calls can fairly be summarized as follows. First, Adam Shamoon says that in the days and weeks soon after the raid, he called the police department three times, during which he asked why his parents' house was raided, and to seek the return of his four guns that had been seized. He was given no information or explanation about the raid, but he was permitted to pick up his guns. (*See* Ex. G to the Respondents' Resp. (Docket # 13565-14). Second, Debra Metris-Shamoon says that she called the police department twice, asking why the police had raided her home and demanding to see a warrant. She received no explanation. (*See* Ex. H to the Respondents' Resp. (Docket # 13565-15).

of Detroit, filed November 12, 2014 (Docket # 8272, the "OCP") at 87-88; Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (Docket # 8045, copy attached to OCP at Docket # 8272 (App. I), the "Plan") at 50, Article III.D.4.[13]

9.   Under the injunction provisions in the OCP and in the confirmed Plan, all of the Respondents are barred and enjoined from pursuing any of their discharged claims against the City, in the District Court Case or otherwise.  *See* OCP at 89-91; Plan at 50-51, Article III.D.5.

10.   Under the Court's November 21, 2013 Order, cited by the City's Motion as the "Bar Date Order" (Docket # 1782), the deadline for filing a proof of claim in this bankruptcy case was February 21, 2014.  It is undisputed that none of the Respondents ever filed a proof of claim in this bankruptcy case.

11.   Under ¶ 22 of the Bar Date Order, the Respondents are barred from receiving any distributions in this bankruptcy case, and the Respondents are "forever barred, estopped and enjoined from . . . asserting any claim against the City or property of the City[.]"  *See* Bar Date Order at 14-15, ¶ 22.

12.   The Respondents argue that the doctrines of equitable estoppel and laches preclude the City from seeking the relief it now seeks.  These arguments are based on the City's delay in seeking the relief it now seeks, and the City's delay in raising the bankruptcy discharge in any way as a defense in the District Court Case.  While the City has not adequately explained the

---

[13]   Contrary to the Respondents' argument, the "gross negligence or willful misconduct" exception to a certain release that is contained in the Plan, in Article III.D.7.a, at 52, does not apply to the Respondents' claims.  For one thing, and as the City correctly argued during the hearing, that release and its exception apply only to claims of "holder[s] of a Claim that vote[d] in favor of the Plan." (Article III.D.7.a of Plan at 52).  None of the Respondents voted in favor of the Plan, or voted on the Plan at all. Indeed, none of the Respondents ever filed a proof of claim in this bankruptcy case.

7

reason(s) for its delay, the Court cannot apply either equitable estoppel or laches to bar the City's relief. Neither of these doctrines can be used to deprive the City of the benefit of its bankruptcy discharge.

13. Even if the City had delayed raising the bankruptcy discharge until after suffering an adverse judgment on the Respondents' claims in the District Court Case, the City could not be deprived of the benefit of the bankruptcy discharge. Any such adverse judgment would be deemed "void ab initio" under binding case law in the Sixth Circuit. *See Hamilton v. Herr* (*In re Hamilton*), 540 F.3d 367, 373-76 (6th Cir. 2008). Under *Hamilton*, a debtor who is faced with a lawsuit asserting a claim that was discharged in bankruptcy has no duty to do anything. Based on 11 U.S.C. §§ 524(a)(1) and 524(a)(2),[14] the court in *Hamilton* held that it is "absolutely unnecessary for the debtor to do anything at all in [such an] action." *Id.* at 373 (quoting 4 Collier on Bankruptcy ¶ 524.LH[1] at 524-57 (Sept. 2005) (Lawrence P. King ed., 15th ed. rev.)). "[A]ny judgment on a discharged debt in any forum other than the bankruptcy court is . . . rendered null and void by section 524(a)." *Id.*

---

[14] Sections 524(a)(1) and 524(a)(2) apply in Chapter 9 cases. *See* 11 U.S.C. § 901(a). Those provisions in § 524(a) state:

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1192, 1228, or 1328 of this title, whether or not discharge of such debt is waived; [and]

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

8

14. It follows that the City's delay in seeking the relief it now seeks cannot be used to deny such relief, under equitable doctrines like equitable estoppel and laches, or otherwise.

For the reasons stated in this Opinion, the City's Motion must be granted. The Court will enter a separate Order granting the City the relief it seeks.

Signed on August 26, 2022



/s/ Thomas J. Tucker
_____
Thomas J. Tucker
United States Bankruptcy Judge

9

In re:

CITY OF DETROIT, MICHIGAN,

**Debtor.**

_____/

Debra Metris-Shamoon, Muhklis Shamoon,
Carl Veres, Julia and Paul Metris,

**Appellant,**

**v.**

City of Detroit, MI

**Appellee.**

**Case No.:** 13-53846

Chapter 9
Judge Thomas T. Tucker

**Adv. No.:**

---

**CAUSE OF ACTION/NATURE OF SUIT:**   (This matter is referred to the district court for the following reasons)

| | | |
|---|---|---|
| __x__ | [422] 28 U.S.C. 158 | Bankruptcy Appeal |
| _____ | [422] 28 U.S.C. 158 | Motion for Leave to Appeal |
| _____ | [423] 28 U.S.C. 157(d) | Motion for Withdrawal of Reference |
| _____ | [423] 28 U.S.C. 157(c) (1) | Proposed Findings of Fact and Conclusions of Law |
| _____ | [423] 28 U.S.C. 158 (c) (a) | Order of Contempt |

**Date:** _09/08/2022_        **Name:** ___ /s/Michael R. Dezsi (P64530) _____

Respectfully submitted,

_/s/Michael R. Dezsi_
Dettmer & Dezsi, PLLC
1523 N. Main St.
Royal Oak, MI 48067
(313) 757-8112
mdezsi@dezsilaw.com
P64530

| Name and Address of Interested Parties |
| --- |

Debra Metris-Shamoon, Mukhlis Shamoon,
Carl Veres, Julie and Paul Metris,
c/o Dettmer & Dezsi, PLLC
Dennis A. Dettmer (P12708)
Michael R. Dezsi (P64530)
Counsel for Creditor-Plaintiffs/Appellants
1523 N. Main St.
Royal Oak, MI 48067
ddettmeresq@yahoo.com
mdezsi@dezsilaw.com


MILLER, CANFIELD, PADDOCK, AND STONE, PLC
Marc N. Swanson (P71149)
Attorney for City of Detroit, Appellee
150 W. Jefferson, Suite 2500
Detroit, MI 48226
(313) 496-7591 T
(313) 496-8451 F
swansonm@millercanfield.com

*In re:*                                    Case No. 13-53846
                                            Hon. Thomas J. Tucker
CITY OF DETROIT, MICHIGAN,                  Chapter 9

      *Debtor.*

---

DENNIS A. DETTMER (P12708)          MILLER, CANFIELD, PADDOCK
MICHAEL R. DEZSI (P64530)           AND STONE, PLC
*Counsel for Plaintiffs-Creditors/Appellants*   Marc N. Swanson (P71149)
*Debra Metris-Shamoon, et al.,*     Attorney for City of Detroit,
Dettmer & Dezsi, PLLC               Debtor/Appellees
1523 N. Main St.                    150 W. Jefferson, Suite 2500
Royal Oak, MI 48067                 Detroit, MI 48226
(313) 757-8112                      (313) 496-7591 T
ddettmeresq@yahoo.com               (313) 496-8451 F
mdezsi@dezsilaw.com                 swansonm@millercanfield.com

---

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of September, 2022, I electronically filed and served a copy of the Notice of Appeal (Doc 13624), Amended Notice of Appeal and Statement of Election, Civil Cover Sheet and Proof of Service with the Clerk of the Court using the ECF system which will send notification to all interested parties and attorneys of record in this case. I further certify that on September 8, 2022, I served a copy of the Notice of Appeal (Doc 13624), Amended Notice of Appeal and Statement of Election, Civil Cover Sheet and Proof of Service upon counsel for the City of Detroit via email at:

MILLER CANFIELD, PADDOCK AND STONE, PLC
MARC N. SWANSON (P71149)
*Attorney for City of Detroit*
150 W. Jefferson, Suite 2500
Detroit, MI 48226
swansonm@millercanfield.com


September 8, 2022                    By:    */s/ Michael R. Dezsi*
                                           MICHAEL R. DEZSI
                                           DETTMER & DEZSI, PLLC,
                                           1523 N. Main St.
                                           Royal Oak, MI 48067
                                           (313) 757-8112 Office
                                           (313) 887-0420 Fax
                                           mdezsi@dezsilaw.com
                                           P64530