• The transaction should not be affected by the reversal or modification of any of this Court's orders, including the order confirming the plan.

For these reasons, the Court approves the proposed exit financing.

## XII. CONCLUSION

There has been much discussion throughout this case about how a chapter 9 case is different from the other types of bankruptcy cases. It is, but only around the edges. In fundamental ways, the **Detroit** bankruptcy case is just like every one of the other 30,609 bankruptcy cases that were filed in our court in 2013. In every case, a debtor needs help, made mistakes, took unwarranted risks, accepted bad advice, exercised bad judgment, was too long in denial, or had just plain bad luck.

**\*277** But no matter, our society holds dear the values of a fresh start and of second chances. That value is manifested with brilliant clarity in our bankruptcy laws. And that value is manifested the same in this $18 billion case as it was in the no asset chapter 7 cases that were filed just before and just after this case was filed on July 18, 2013.

The current leadership of the City is now getting the City back from the emergency manager and from us in the bankruptcy world. The City will have the fresh start that it needs and deserves under our federal bankruptcy laws. It is now the responsibility of City leadership to implement this plan. The City's true and full fresh start depends on it.

The people of the City of **Detroit** have a passion for this City that is remarkable in its breadth, in its expression, and in its unwavering endurance. They are about to get their City back. It is their City.

A large number of them told the Court that they were angry that their City was taken from them and put into bankruptcy. They said that in their court papers. They said that in their statements in court. They said that in their blogs, letters, and protests. The Court heard them.

The Court urges the people of the City of **Detroit** not to forget that anger. Their enduring and collective memory of what happened here, and their memory of their anger about it, will be exactly what will prevent this from ever happening again. It must never happen again.

When Fredia Butler testified during the confirmation hearing, she quoted the great wisdom of Marian Wright Edelman, who said, "Democracy is not a spectator sport." Trial Tr. 44:3–4, Oct. 15, 2014. (Dkt. # 8033) And so the Court asks the people of the City, for the good of the City's fresh start, to move past their anger, to join in the work that is necessary to fix this City, and to help your City leaders do that. It is your City.

We have used the fitting phrase, the Grand Bargain, to describe the group of agreements that will fix the City's pension problem. In our nation, we join together in the promise and in the ideal of a much grander bargain. It is the bargain by which we interact with each other and with our government, all for the common good. That grander bargain, enshrined in our Constitution, is democracy. It is now time to restore democracy to the people of the City of **Detroit**. The Court urges the people of the City of **Detroit** to participate in that democracy, and hopes that they will soon realize its full, vibrant and everlasting potential.

**All Citations**

524 B.R. 147, 60 Bankr.Ct.Dec. 124

## Footnotes

1   This opinion supplements the opinion that the Court announced on the record on November 7, 2014. *See* Trial Tr., Nov. 7, 2014. (Dkt. # 8257)

2   Unless otherwise specified, all references to code sections in this opinion are to the bankruptcy code, title 11 of the United States Code.

3   To fill out this chronology, it is important to note that on June 3, 2014, the Michigan Legislature enacted, and on June 19 and 20, 2014, the governor signed into law, the package of bills necessary to implement the Grand Bargain and for other purposes related to the City's plan of adjustment. These bills became effective on June 20, 2014. They include:

PA 181 (2014), "Michigan Financial Review Commission Act"

PA 182 (2014), "An Act to amend 1909 PA 279"

PA 183 (2014), "An Act to amend 1909 PA 279"

PA 184 (2014), "An Act to amend 2011 PA 152"

PA 185 (2014), "An Act to amend 1965 PA 314"

PA 186 (2014), "An Act to amend 2000 PA 489"

PA 187 (2014), "Michigan Settlement Administration Authority Act"

PA 188 (2014), "An Act to amend 1984 PA 431"

PA 189 (2014), "An Act to amend 1969 PA 312"

PA 190 (2014), "An Act to amend 1978 PA 566"

A summary of this package of bills prepared by the Michigan House Fiscal Agency is available at: www.legislature.mi.gov/documents/2013-2014/billanalysis/House/pdf/2013-HLA-5566-7780ED85.pdf.

4   These parties are William Ochadleus, Shelton Hayes, Shirley Berger, Raymond Yee, Frederick T. McClure Jr., John Clark, Jim Benci, Janice Butler, Morris Wells, Melvin F. Williams Sr., Kimberly Ann Sanders, Sarah E. Giddens, Deborah Ward, Jackie Fulbright, Catherine Tuttle, Rita Serra, Martin Treadwell, Ed Gaines, Barbara Triplett–Decrease, John J. O'Neill, Roy McCalister, Polly McCalister, Gail Wilson Turner, Loletha Porter Coleman, Afford Coleman, Jessie Banks, Lester Coleman, Deborah Lark, Moses Lark, Sharon Cowling, Michael Cowling, Robert Jackson, Rashelle Pettway, Michael A. Adams, John Hawkins, Laura Isom, Duane McKissic, Herbert Moreland, Cynthia Diane Moreland, Henry Ellis, Keith Jackson Sr., Deborah Robinson, James Alexander Jr., Debra J. Fair, Brenda Goss Andrews, Jamie Fields, Ricardo C. Jenkins, Jacqueline Jackson, Tommie Carodine, Lawrence V. Porter, Robbin Rivers, James R. Younger, Roscoe Mayfield, Charles Barbieri, Craig Schwartz, Glenda Cole–Dixon, Walter Long Jr., George Graves, Terrance Anderson, David Anderson, Nancy Fowler, George Chester, Anthony Klukowski Jr., Todd Klukowski, Roger Klukowski, Lois Klukowski–Hogen, Patricia E. McCabe, Daniel P. Root, Jeannetta Washington, Mike Foley, James Jones, Joe Smith, Reggie Barnes, Calvin Adkins, Jack Aliotta, Patti Graves, Andy Smith, Steve Leggatt, Paula Day, Deborah McCreary, Greg Jones, Andrew White, Christine Marie Jepsen, John Jepsen, Alicia Terry, Joyce Daniel, Bryan Glover, Tobi Ascione Young, Greg Huizar, Lori Gallman, Beverly Hoffman–Nichols, Barbara Stafford, Micelle Pierson, Shelley I. Foy, Parrie Lee Highgate, Renee Ellis–Sumpter, David Pomeroy, Jim Lemaux, Eric Heckman, Shelley Holderbaum, Keith Oleniacz, Edgardo Aponte, Jon Gardner, Judith Norwood, Kenneth Emerson, Patricia Lofton, Karen Leskie, Roosevelt Lawrence Jr., Sonja Hollis, William Anderson, Derek Hicks, Marsha Thompson–Kidd, Yvonne Williams Jones, Lula Millender, William Davis, Evelyn Owen Smith, Cecily McClellan, Belinda A. Myers–Florence, Jesse J. Florence, Sr., Paulette Brown, Linda White, Jo Fuller, David Malhalab, Gerald Williams, Douglas Kuykendall, Nancy Kuykendall, Roger Saledo, Darius Clay, Nyra Turner Blackmon, and Rheuben Blackmon.

5   These parties are Jerry Ashley, Shumithia Baker, David Booth, Branden Brooks, Angel Brown, Teran Brown, Wendy Jefferson, Floyd Brunson, Laverne Covington, Ezekiel Davis, Jeremiah Duren, Otis Evans, Darnell

13-53846-tjt    Doc 13663-2    Filed 10/31/22    Entered 10/31/22 16:55:43    Page 2 of
102

Fields, Keitha Gomez, Cheval Gomez, Jermaine Green, Terry Hardison IV, Anthony Harmon, Donald Harris, Rodney Heard, Tommie Hickey, Kevin Ivie, James Jackson, Leinathan Jelks, Quentin King, Daniel Lattanzio, April Lee, Mario Littlejohn, Ray Lizzamore, Orlando Marion, James Matson, Dave Mazur, Kevin McDonald, Kevin McGillivary, Robert McCowen, Michael McKay, Melvin Miller, Eddie Moore, Curtis Morris, Gary Musser, Winter Owens, Porter Hondra, Woodrow Roberson, Bradley Schick, Ali Sobh, Daniel Soto, Samyia Speed, Douglas Taylor, Jeffrey Theriot, Raymond Thompson, Jr., Bernard White, Christina Wilmore, and Joseph Wright.

6    The City's plan to address its blight and to modernize its police, fire and EMS services is addressed in the Court's discussion of the feasibility of the plan of adjustment in part X.D.9. below.

7    Another release in the plan is also the subject of objections. Specifically, the § 1983 creditors object to the provision in the plan that would release officers of the City from claims against them in their individual capacity under 42 U.S.C. § 1983. Relying on the discussion of *Dow Corning* here, the Court sustains that objection in part X.J.2.c. below.

8    In *In re Valley Health System*, 429 B.R. 692, 714 n. 57 (Bankr.C.D.Cal.2010), the court suggested in dicta, "Section 105(a) is not applicable to chapter 9 cases." This is mistaken. Section 103(f) states, "Except as provided in section 901 of this title, only chapters 1 and 9 of this title apply in a case under such chapter 9." Because § 105 is in chapter 1, it does apply in a chapter 9 case. As a result, the statutory premise on which *Dow Corning* authorized third party releases in chapter 11 case also applies in chapter 9.

9    As discussed in part III.E., under the DIA settlement, the DIA and certain donors and foundations will pay $466 million to the GRS and the PFRS over 20 years. The State Contribution of $194.8 million is payable immediately, but is considered to be the net present value of $350 million paid over 20 years at a 6.75% discount rate. The amount payable over 20 years, therefore, would be $816 million: $466 million from the DIA settlement and $350 million from the State Contribution. Although confusing, this is the amount that the parties commonly identify as the funding that the Grand Bargain makes available to the pension plans.

10   This settlement was actually the third settlement that these parties had reached. The first was for approximately $230 million, which the parties had reached before the City filed this case. The City deemed that this settlement was an executory contract, so it filed a motion and a corrected motion to assume this contract under § 365. (Dkt. 17 and 157) When the parties determined that the Court was not likely to approve that settlement, they engaged in mediation and negotiated a second settlement for $165 million. (Dkt. # 2341) On January 17, 2014, the Court denied approval of that settlement, concluding that it was too high under the *Bard* standards. (Dkt. # 2511) The parties then negotiated the settlement for $85 million, which the Court did approve.

11   *See In re City of Stockton, Cal.*, 486 B.R. 194, 199 (Bankr.E.D.Cal.2013) ("Hence, § 904 means that the City can expend its property and revenues during the chapter 9 case as it wishes.... When a chapter 9 debtor files a Rule 9019 motion to have the court approve a compromise or settlement, the municipality 'consents' for purposes of § 904 to judicial interference with the property or revenues of the debtor needed to accomplish the proposed transaction.").

In *Stockton*, the court suggested that an unapproved settlement in a chapter 9 case might still be the basis for a confirmation objection under § 1129(b)(1) that the plan unfairly discriminates or is not fair and equitable, or an objection under § 1129(a)(2) that the plan is not proposed in good faith or by a means

forbidden by law. *Id.* at 199–200 No such objections are raised in this case as to the Great Lakes Water Authority.

Moreover, although in a chapter 11 case, § 363(b) requires court approval of a non-ordinary course transfer like this, § 901 does not make that section applicable in a chapter 9 case. *See In re Richmond Unified Sch. Dist.,* 133 B.R. 221, 225 (Bankr.N.D.Cal.1991) ("[T]he debtor is free to use, sell or lease property without regard to the restrictions in section 363.").

12    The reference in § 943(b)(1) to § 103(e) appears to be a mistake. Section 103(e) states:

Scope of Application—Subchapter V of chapter 7 of this title shall apply only in a case under such chapter concerning the liquidation of an uninsured State member bank, or a corporation organized under section 25A of the Federal Reserve Act, which operates, or operates as, a multilateral clearing organization pursuant to section 409 of the Federal Deposit Insurance Corporation Improvement Act of 1991.

11 U.S.C. § 103(e). The reference probably should be to § 103(f), which provides, "Except as provided in section 901 of this title, only chapters 1 and 9 of this title apply in a case under such chapter 9."

13    Section 901 also identifies other sections of chapter 11 that apply in chapter 9 cases. These include §§ 1122, [⊡]1123(a)(1), [⊡]1123(a)(2), [⊡]1123(a)(3), [⊡]1123(a)(4), [⊡]1123(a)(5), [⊡]1123(b), [⊡]1123(d), 1124, 1125, 1126(a), 1126(b), 1126(c), 1126(e), 1126(f), 1126(g), 1127(d), and 1128. These sections will be reviewed as necessary to address the parties' objections to confirmation.

14    Subsequently, as part of the DWSD settlement, the parties agreed that the fees and expenses of the U.S. Bank National Association in its capacity as trustee would be subject to a separate arbitration process to determine their reasonableness. (Dkt. # 7028)

15    It is worth observing that almost all of the secondary sources seem to agree with the majority of the courts that review all of the fees. This observation, however, must be tempered by the further observation that, like the cases, the secondary authorities have also not rigorously analyzed the question. *See, e.g.,* 5 Norton Bankr.L. & Prac.3d § 90:20 (2014) ("Third, the municipality must disclose all amounts paid for services in the case incident to the plan, and the amounts must be reasonable. This includes attorney's fees.") (footnotes omitted); Francis J. Lawall & J. Gregg Miller, Debt Adjustments for Municipalities under Chapter 9 of the Bankruptcy Code: A Collier Monograph, § 8[ix] (2012) ( "Section 943(b)(3) requires that the plan fully disclose all amounts paid for services or expenses in the chapter 9 case or incident to the plan. Section 943(b)(3) further requires that all such services or expenses be reasonable.") (footnotes omitted); 1981 Norton Ann. Survey of Bankr.Law 5 ("[T]he municipality must disclose all amounts paid for services in the case as incident to the plan and such amounts must be reasonable."); Elizabeth M. Watkins, In Defense of the Chapter 9 Option: Exploring the Promise of a Municipal Bankruptcy as a Mechanism for Structural Political Reform, 39 J. Legis. 89, 95 (2012–2013) ("A municipality must pay legal and financial professionals to administer the case and to subsequently monitor compliance with the reporting requirements of the readjustment plan. These costs can easily range in the seven figures. Of course, this carries the risk that the bankruptcy court might reject the readjustment plan entirely ....") (footnotes omitted); Eric S. Pommer & Mark M. Friedman, Municipal Bankruptcy and Its Effects on Governmental Contractors, 25 Pub. Cont. L.J. 249, 259 (1996) ("all amounts paid by the debtor-municipality or by any person for services or expenses in the case or incident to the plan have been fully disclosed and are reasonable"); and David S. Kupetz, Municipal Debt Adjustment Under the Bankruptcy Code, 27 Urb. Law. 531, 568 (1995) ("The only court approval required is the retroactive approval necessary in order to satisfy the condition for confirmation of a plan of adjustment set forth in § 943(b)(3).").

One secondary source specifically acknowledges the issue but concludes without discussion that § 943(b) (3) applies only to fees to be paid. *See* Stanley H. McGuffin, Chapter 9 As a Remedy for Financially Stressed

Municipalities, 2011 WL 5053634, at *9 ("It should be noted that the statute appears to have prospective application by virtue of the phrase 'to be paid.' Consequently, it is unclear whether the debtor must disclose fees previously paid or if the court must make a reasonableness determination as to such fees.").

Collier on Bankruptcy adopts both positions. *Compare* 6 Collier on Bankruptcy ¶ 943.03[3] at 943–19 ("Section 943(b)(3) requires that the plan must disclose all amounts paid for services or expenses in the case or incident to the plan, and that the amounts paid be reasonable.") *with* 6 Collier on Bankruptcy, ¶ 901.04[13][c] at 901–26.2 ("Indeed, section 943(b)(3) requires that professional fees to be paid under a plan must be disclosed and must be reasonable.").

16    The Court notes that in another significant respect, the plain language of the statute leads to a bizarre and demonstrably unintended result. To repeat, the language of § 943(b)(3) is "all amounts to be paid by the debtor or by any person for services or expenses in the case or incident to the plan have been fully disclosed and are reasonable." Applying this language literally would require a determination of the reasonableness of any fees paid by "any person for services in the case." This would include determining the reasonableness of the fees of all of the professionals in the case, including the professionals retained by all of the creditors.

*In re Colorado Centre Metro. Dist.,* 139 B.R. 534 (Bankr.D.Colo.1992), pointed out exactly how bizarre this can become. It observed, "[I]f the Court determines that the fees paid by a creditor to its attorney are unreasonable, the debtor's plan cannot be confirmed. Such an interpretation would enable an antagonistic creditor to purposefully overpay his attorney in order to defeat the debtors plan—a truly absurd result." *Id.* at 535.

The legislative history readily solves this problem by explaining what the phrase "by any person" was intended to accomplish. It states:

The inclusion of the phrase "by any person" is intended solely to prevent the petitioner from circumventing the requirement of this paragraph by making payments indirectly through some third person for the benefit of the petitioner. It is not intended that the court examine all payments made to all attorneys and agents that are in any way connected with the case.

H.R. REP. No. 94–686, 33–34(1975), *reprinted in* 1976 U.S.C.C.A.N. 539, 571–72.

The point is that this legislative history explicitly admits that Congress did not intend for the language of § 943(b)(3) to be applied literally, at least in this respect. It also casts doubt on how carefully § 943(b)(3) was drafted.

17    The City did not offer expert testimony on whether an increase in tax rates might yield greater revenue for property taxes, arguing that expert testimony is generally not required on the subject of "tax saturation." Trial Tr. 49–53, Oct. 27, 2014. (Dkt. # 8156) The Court finds that the City's proof is sufficient on this issue even though the City did not proffer expert testimony. This finding does not suggest, however, that an expert is never required on this issue. It may be that in some cases, expert testimony is necessary to meet the requirements of *Everglades Drainage District,* 319 U.S. at 419–420, 63 S.Ct. 1141 discussed above.

18    Mr. Malhotra explained that "legacy costs" include debt service on the LTGO and UTGO bonds, principal and interest payments on the COPs, payments owed to the COP Swap Counterparties, pension contributions, and retiree health benefits. *See* Ex. 33, City of **Detroit** Proposal for Creditors dated June 14, 2013 at 90–91; *see also* Trial Tr. 70, Sept. 29, 2014. (Dkt. # 7819) (further describing legacy costs as, "the costs that were not associated with providing service or operations today, so ... exclude[ing] the majority of the share of the costs related to the active employees and supplies as well as ... the costs associated with debt that the city had taken on in prior periods.").

19    The Court uses the phrase "under the plan" here to refer to the City's financial projections that take into account all of the benefits of the plan, including the RRIs.

20    Here, the Court is not referring to the cash balance required by the Grand Bargain Legislation. *See* [📄]Mich. Comp. Laws § 117.4t(1)(c)(vi) ("A financial plan ... shall ... (c) Include a general fund reserve for each fiscal year to cover potential reductions in projected revenues or increases in projected expenditures equal to not less than 5% of the projected expenditures for the fiscal year."). The Court is referring to the contingency that is built into the City's annual budget as an operating expense. *See* Ex. 793 at 7; Trial Tr. 160, Sept. 29, 2014. (Dkt. # 7819)

21    As explained in part III.L.3. above, the primary use of the parking revenues will be to satisfy the New C Notes that the City will issue under the plan. However, for the sake of clarity, the Court discusses them here as simply a source of City revenue.

22    Page 8 of City Exhibit 793 shows the cash balance on a year-by-year basis. The City's actual cash balance at the end of FY2014 was $154.4 million, due to a surplus of $118.4 million for FY2014. *Id.* at 8.

    Because of a projected deficit in FY2015 of $78.8 million related to the implementation of certain RRIs, the City's projected cash balance drops to $75.6 million at the end of FY2015. *Id.* at 8. The City then projects that it will be able to maintain that cash balance of $75.6 million through FY2019 by deferring implementation of other Reinvestment and Restructuring Initiatives and selling certain assets, such as older city-owned vehicles and copper wire from the decommissioning of the Public Lighting Authority. *Id.* at 10–12. At that point, the City projects that its cash balance will begin to slightly improve each year, such that by the end of FY2023, the City will have this $81.2 million cash balance. *Id.* at 8.

23    As discussed in part III.F. above, the City's obligations to the GRS and the PFRS are fixed under the plan from FY2014–FY2023. During this time, as the City works to stabilize its finances and implement the RRIs, the majority of the City's contributions to the GRS and the PFRS will come from the DWSD, the State Contribution Agreement, and the Grand Bargain funding. *See* Ex. 793 at 3. However, after 2023, the City projects the retirement systems will remain somewhat underfunded. *See* Ex. 12000 at 133. The balance of the underfunding in 2023 will be amortized over a thirty year period of time. *Id.*

24    As a matter of dicta, the Court finds merit in the City's argument that the discount rate for valuing a long-term liability should reflect the nature of that liability rather than the market rate of return on assets. It does appear to the Court that the conventional linking of the assumed rate of return and the discount rate for municipal pensions in this country is a substantial contributing factor in their UAAL and that it is time to reconsider that convention.

    The Court finds less merit in excluding the third party contributions from the calculation of the pension plans' recovery percentage in this case. It is at least arguable that those contributions were on account of City assets, specifically, the DIA assets and the claim by the City's pension plans against the State for relief from their unfunded liability based on article IX, § 24 of the Michigan constitution and the State's failure to act to prevent the underfunding. If the connection between those assets and the third party contributions is found to exist, then the cases that the City cites in support of excluding the third party contributions are distinguishable and in fairness, those contributions arguably should be included in the recovery calculations.

    Moreover, *City of Avon Park* seems to require that result. There, the City's fiscal agent, Crummer, could have potentially recovered on three financial stakes in the City's plan. The district court found one reasonable but did not evaluate the other two. [📄]311 U.S. at 143, 61 S.Ct. 157. The Supreme Court stated, "Clearly, however, no finding could be made ... that the compensation to be received by the fiscal agent was

reasonable without passing on the worth of the aggregate of all the emoluments accruing to the Crummer interests as a result of consummation of the plan[.]" [FN]*Id.* at 144, 61 S.Ct. 157 (citation omitted).

As a final matter of dicta, the Court finds that whether to consider the 10% recovery on pension creditors' OPEB claims when deciding whether the treatment of their pension claims discriminates against unsecured creditors is a closer question. Normally, it would not seem appropriate to consider the recovery that creditors will realize on their claims in one class when determining whether the treatment of their claims in another class unfairly discriminates. The equities arguably tip, however, when the creditors are employees and retirees, and are or were mission-critical, contributing their time, labor and skill to advance the interests of not only the City, but also its other creditors, as discussed in part X.H.3.A. below.

25   *See* **Detroit** City Code § 47–2–18(c) (providing that the Pension Accumulation Fund of the GRS, from which pensions are paid, shall consist of the "accumulated reserves for the pensions and other benefits payable from the contributions made by the City ..."); **Detroit** City Code § 47–2–19 (specifying how the City's annual contribution to GRS shall be calculated and providing for no funding source other than the City); 1964 **Detroit** City Code § 54–2–1 (Ord. No. 77–H) (" 'Pension' means the portion of a retirement allowance which is paid for by appropriations made by the city.") (Chapter 54 of the 1964 **Detroit** City Code (as amended and supplemented from time to time by City Ordinance) was saved from repeal by Section 11–102 of the 1974, 1997 and 2012 **Detroit** City Charters and is incorporated by reference in Chapter 47 of the 1984 **Detroit** City Code.); 1964 **Detroit** City Code §§ 54–43–4 (Ord. No. 76–H), 54–43–5 (Ord. No. 04–05) (providing that the City shall fund the Pension Accumulation Fund of the PFRS), §§ 54–2–3 (Ord. No. 77–H), 54–2–4 (Ord. No. 77–H), 54–2–6 (Ord. No. 77–H), 54–2–7 (Ord. No. 77–H), 54–43–3 (Ord. No. 39–05) (specifying how the City's annual contribution to the PFRS shall be calculated and providing for no funding source other than the City).

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

13-53846-tjt   Doc 13663-2   Filed 10/31/22   Entered 10/31/22 16:55:43   Page 7 of 102

# EXHIBIT 16

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
---------------------------------------------------x
                                   :
In re                              :        Chapter 9
                                   :
CITY OF DETROIT, MICHIGAN,         :        Case No. 13-53846
                                   :
                    Debtor.        :        Hon. Steven W. Rhodes
                                   :
                                   :
---------------------------------------------------x
```

## ORDER CONFIRMING EIGHTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT



EXHIBIT

Ex. 16

# TABLE OF CONTENTS

FINDINGS OF FACT AND CONCLUSIONS OF LAW .......................................4

Jurisdiction and Venue ................................................................................4

Modifications of the Plan ...........................................................................5

Standards for Confirmation Under Section 943 of the
Bankruptcy Code ........................................................................................6

    Section 943(b)(1)..................................................................................6

        Section 1122.........................................................................7

        Section 1123(a)(1).................................................................7

        Section 1123(a)(2).................................................................8

        Section 1123(a)(3).................................................................8

        Section 1123(a)(4).................................................................8

        Section 1123(a)(5)...............................................................10

        Section 1123(b)(1)...............................................................10

        Section 1123(b)(2)...............................................................10

        Section 1123(b)(3)...............................................................11

        Section 1123(b)(5)...............................................................11

        Section 1123(b)(6)...............................................................11

        Section 1123(d).....................................................................12

        Section 1127(d).....................................................................12

        Section 1129(a)(2).................................................................12

        Section 1129(a)(3).................................................................19

        Section 1129(a)(6).................................................................20

        Section 1129(a)(8).................................................................21

        Section 1129(a)(10) ..............................................................21

        Section 1129(b)(1) – Unfair Discrimination...........................21

        Sections 1129(b)(1), (b)(2) – Fair and Equitable....................25

    Section 943(b)(2)................................................................................26

    Section 943(b)(3)................................................................................27

-i-

13-53846-swr    Doc 8272    Filed 11/12/14    Entered 11/12/14 16:25:07    Page 2 of 225
13-53846-tjt    Doc 13663-2    Filed 10/31/22    Entered 10/31/22 16:55:43    Page 10 of
102

Section 943(b)(4)..............................................................29

Section 943(b)(5)..............................................................30

Section 943(b)(6)..............................................................30

Section 943(b)(7)..............................................................31

    Best Interests of Creditors.........................................31

    Feasibility.................................................................36

Executory Contracts.........................................................42

Settlements and Releases...................................................43

    The DIA Settlement..................................................44

    The UTGO Settlement..............................................48

    The LTGO Settlement...............................................52

    The OPEB Settlement...............................................53

    The 36th District Court Settlement ............................54

    The Syncora Settlement ............................................55

    The FGIC/COP Settlement.........................................58

ASF Recoupment.............................................................60

Plan Releases .................................................................63

Miscellaneous ................................................................66

    Exit Facility .............................................................66

    Waiver of Stay of Confirmation Order ........................68

ORDER ...............................................................................68

A.    Confirmation of Plan..................................................68

B.    Findings of Fact and Conclusions of Law......................69

C.    Approval of Settlements.............................................70

D.    Approval of Releases and Exculpation ........................78

E.    Order Binding on All Parties.......................................86

F.    Discharge of Claims.................................................87

G.    Release of Liens......................................................88

H.    Injunction...............................................................89

| | | |
|---|---|---|
| I. | State Contribution Agreement | 93 |
| J. | DWSD Authority Transaction | 94 |
| K. | ASF Recoupment | 95 |
| L. | Survival of Indemnities | 98 |
| M. | Issuance of New Securities and Exemption From Securities Laws | 99 |
| N. | Executory Contracts and Unexpired Leases | 100 |
| O. | Plan Distributions | 103 |
| P. | Retained Causes of Action | 103 |
| Q. | Claims Bar Dates and Other Claims Matters | 104 |
| R. | Plan Implementation | 109 |
| S. | Cancellation of Existing Bonds, Bond Documents, COPs and COP Documents | 110 |
| T. | Binding Effect of Prior Orders | 114 |
| U. | Final Order; Waiver of Stay | 115 |
| V. | Reversal | 115 |
| W. | Notice of Confirmation of Plan | 115 |
| X. | Miscellaneous Provisions | 116 |
| Y. | No Diminution of State Power | 124 |
| Z. | Post-Effective Date Governance | 125 |
| AA. | Retention of Jurisdiction | 125 |

| | |
|---|---|
| Appendix I | Plan of Adjustment |
| Appendix II | Confirmation Notice |

-iii-

13-53846-swr   Doc 8272   Filed 11/12/14   Entered 11/12/14 16:25:07   Page 4 of 225
13-53846-tjt   Doc 13663-2   Filed 10/31/22   Entered 10/31/22 16:55:43   Page 12 of 102

holders of Claims against the City be afforded an opportunity to change previously

cast acceptances or rejections of the Fourth Amended Plan as filed with the Court.

The filing of the Plan, and the disclosure of certain modifications and amendments

to the Fourth Amended Plan contained therein on the record at the Confirmation

Hearing, constitute due and sufficient notice thereof under the circumstances of the

Chapter 9 Case. Accordingly, the Plan is properly before the Court, and, except as

set forth in the Plan or later orders of the Court, all votes cast with respect to the

Fourth Amended Plan prior to the filing of the Plan shall be binding and shall

apply with respect to the Plan.

### STANDARDS FOR CONFIRMATION
### UNDER SECTION 943 OF THE BANKRUPTCY CODE

F.      The evidentiary record of the Confirmation Hearing and

the Confirmation Standards Exhibit support the findings of fact and conclusions of

law set forth in the following paragraphs.

G.      The Court's supplemental opinion regarding confirmation of the

Plan (the "Confirmation Opinion"), to be issued, is incorporated fully herein.

-6-

13-53846-swr    Doc 8272    Filed 11/12/14    Entered 11/12/14 16:25:07    Page 10 of 225
13-53846-tjt    Doc 13663-2    Filed 10/31/22    Entered 10/31/22 16:55:43    Page 13 of
102

no distributions under the Plan.[23] Therefore, Class 16 is conclusively presumed to reject the Plan in accordance with section 1126(g) of the Bankruptcy Code, and no votes were solicited from holders of Class 16 Claims.[24]

r)    The Plan was voted on by each Class of impaired Claims that was entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Orders.

s)    Each of Classes 5, 7, 8, 9, 10, 11, 12, 13 and 17 have accepted the Plan by at least two-thirds in amount and a majority in number of the Claims in such Classes actually voting.[25]

t)    The voting declarations admitted into evidence as City Exhibits 764 and 765, and the Second Supplemental Voting Declaration, set forth the tabulation of votes, as required by the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.[26]

16.    *Section 1129(a)(3)*. The Plan has been proposed (a) in good faith; (b) with honesty, sincerity and good intentions; (c) with a basis for expecting that an adjustment of the City's debts and an operational restructuring of the City can be effected in accordance with the purpose of chapter 9, and that the Plan is feasible; and (d) not by any means forbidden by law. The Plan and the treatment of Claims thereunder are, and the process pursuant to which the City has sought Confirmation thereof has been, fundamentally fair to the City's creditors.

---

[23]    *See* Plan, at § II.B.3.w.i.

[24]    *See id.*.

[25]    *See* Second Supplemental Voting Declaration, at ¶¶ 8-9.

[26]    *See id.* at Exhibits A-C.

-19-

The purpose of the Plan is to adjust the City's debts to enable the City to reverse its decades-long financial decline, eliminate its service delivery insolvency, restore adequate municipal services to its residents and meet its future financial obligations, consistent with the overarching remedial purpose of chapter 9 and the objectives and purposes of the Bankruptcy Code. The City's good faith in proposing the Plan and its prior versions, and fundamental fairness in dealing with its creditors, is further evidenced by the fact that the Plan (a) incorporates multiple key settlements that are the result of extensive arm's length negotiations (often conducted within the context of Court-ordered mediation) between the City and representatives of a large proportion of its creditors, (b) has been proposed with the support of the City's largest creditor constituencies and (c) is feasible (*see* ¶¶ N.10-18 below). In so finding, the Court has considered the totality of the circumstances in this Chapter 9 Case.

17. *Section 1129(a)(6)*. Section III.A.7 of the Plan provides that the obtaining of any authorizations, consents and regulatory approvals necessary under applicable nonbankruptcy law is a specific condition to the effectiveness of the Plan, consistent with the language of section 1129(a)(6) of the Bankruptcy Code.[27] The Board of Water Commissioners will continue to have all authority to set and approve the water and sewerage rates charged by the DWSD,

---

[27]   *See* Plan, at § III.A.7.

-20-

25.     Moreover, the Plan's treatment of Pension Claims is the result of a collection of interconnected settlements. The factors that inform the reasonableness of each individual settlement are the same factors that inform the Court's judgment regarding the fairness of discrimination under the Plan. Because each such settlement is fair and reasonable, the discrimination in claim treatment resulting from such settlements also is fair.

26.     The treatment of Limited Tax General Obligation Bond Claims, Unlimited Tax General Obligation Bond Claims and Indirect 36th District Court Claims also is fair because, in each instance, such treatment is the result of arm's-length, intensely negotiated and reasonable settlements between the City and the respective creditors and their representatives and is based on the asserted differing legal rights of, and litigation brought by, such parties. Specifically, a reasonable basis exists for the differential treatment of Limited Tax General Obligation Bond Claims and Unlimited Tax General Obligation Bond Claims, because the treatment of such Claims reflects (a) the results of protracted and comprehensively negotiated settlements between the City and the holders of such Claims and (b) the claimants' arguments to relative priority and security under State law. In addition, the Plan's treatment of Indirect 36th District Court Claims is related to the City's mission, and therefore is fair, because of the City's continuing legal and funding relationship with the 36th District Court.

-24-

13-53846-swr    Doc 8272    Filed 11/12/14    Entered 11/12/14 16:25:07    Page 28 of 225
13-53846-tjt    Doc 13663-2    Filed 10/31/22    Entered 10/31/22 16:55:43    Page 16 of
102

would lack the resources and ability to satisfy such judgment levies. In such a scenario, the City's pension obligations alone likely would quickly eradicate any meaningful recoveries for other unsecured creditors outside of chapter 9.

9.   Dismissal of the Chapter 9 Case would deprive the City of the benefit of the Reinvestment Initiatives. Without such reinvestment, the City's ability to provide basic services would continue to decline below even today's inadequate levels. Without the ability to provide adequate levels of basic services, the City would be unable to reverse the exodus of residents and businesses from the City that has depleted the City's tax base, reduced land values and led to widespread abandonment and blight. In addition, the Plan offers financial benefits that would be unavailable to the City in the event of dismissal, including the $816 million that will be contributed to the Retirement Systems in connection with the Grand Bargain, the Exit Facility and the cost savings to be realized by the Reinvestment Initiatives and the Settlements under the Plan.

10.   *Feasibility*. The Plan is feasible, within the meaning of section 943(b)(7) of the Bankruptcy Code. On and after the Effective Date, it is more likely than not that the City will be able to (a) make all payments contemplated by the Plan without a significant probability of default and

-36-

(b) sustainably provide adequate municipal services to its residents.[41] The City has demonstrated a reasonable prospect that the City will successfully implement the Plan and the Reinvestment Initiatives.[42]

11. The City's revenue and expense projections contained in (a) the ten-year summary of the Reinvestment Initiatives (the "10-Year Reinvestment Initiative Summary") introduced into evidence as City Exhibit 108 (July 2014); (b) the ten-year statement of projected cash flows (the "10-Year Forecast") introduced into evidence as City Exhibits 109 (July 2014), 733 (September 2014), 780 (October 2014), 781 (October 2014) and 782 (October 2014); (c) the forty-year statement of projected cash flows (the "40-Year Forecast") introduced into evidence as City Exhibits 111 (July 2014), 734 (September 2014), 779 (October 2014) and 793 (October 2014); and (d) the ten-year statement of projected cash flows of the City's water and sewage disposal funds introduced into evidence as part of City Exhibit 3 (collectively with the 10-Year Reinvestment Initiative Summary, the 10-Year Forecast and the 40-Year Forecast, the "Projections"), are reasonable, made in good faith, accurate,

---

[41]    See Court's Exhibit 12000 (Expert Report of Martha E.M. Kopacz), at 202-03; Court's Exhibit 12002 (Second Supplemental Expert Report of Martha E.M. Kopacz), at 5-6.

[42]    See Court's Exhibit 12000 (Expert Report of Martha E.M. Kopacz), at 29, 164-65, 202-03; Court's Exhibit 12002 (Second Supplemental Expert Report of Martha E.M. Kopacz), at 5-6.

-37-

consistent with other financial projections made by the City and based upon assumptions that are reasonable when considered individually or collectively.[43]

        12.    The City will have employees that have the necessary skill and commitment to implement, and perform according to the terms of, the Plan. The City will also have adequate systems, controls and procedures (as modified, modernized and developed by the Reinvestment Initiatives) to (a) monitor the City's financial and operational performance and (b) minimize and eliminate fraud, abuse and waste (both in the City's day-to-day operations and in the implementation of the Reinvestment Initiatives).[44]

        13.    The City is beginning to implement appropriate controls to reasonably ensure the City's ongoing compliance with the terms of the Plan.[45] These controls include, but are not limited to: (a) the Michigan Financial Review Commission (the "Financial Review Commission") established pursuant to Public Act 181 of 2014, M.C.L. §§ 141.1631, *et seq.* ("PA 181" or the "Financial Review Commission Act"); (b) the requirements imposed by Public Act 182 of 2014,

---

[43]     *See* Court's Exhibit 12000 (Expert Report of Martha E.M. Kopacz), at 10, 200-01; Court's Exhibit 12001 (Supplemental Expert Report of Martha E.M. Kopacz), at 3-4; Court's Exhibit 12002 (Second Supplemental Expert Report of Martha E.M. Kopacz), at 5-6.

[44]     *See* Court's Exhibit 12002 (Second Supplemental Expert Report of Martha E.M. Kopacz), at 29-30.

[45]     *See* Court's Exhibit 12000 (Expert Report of Martha E.M. Kopacz), at 175, 202.

-38-

M.C.L. § 117.4s-t ("PA 182" and, together with PA 181, the "Grand Bargain Legislation"), that the City (i) adopt a sound, multi-year financial plan, (ii) appoint a Chief Financial Officer and (iii) post its financial forecasts and contracts to the City's official website; and (c) the adoption of governance and financial oversight mechanisms for the Retirement Systems in connection with the State Contribution Agreement. The Financial Review Commission will have broad authority, under the Grand Bargain Legislation, to obtain and review the City's financial records on an ongoing basis, and to conduct financial audits of the City.[46]

14.    The Reinvestment Initiatives provide for the reinvestment of approximately $1.7 billion in the City between the Effective Date and June 30, 2023. The Reinvestment Initiatives will allow the City to achieve approximately $483 million in additional revenue and $358 million in cost savings during that same period, resulting in net reinvestment in the City of approximately $877 million. The Reinvestment Initiatives are reasonably designed to, and more likely than not will, ensure that the City will be able to (a) remedy its service delivery insolvency and provide adequate municipal services to its residents, (b) meet its financial obligations on a prospective basis, (c) promote the stability of

---

[46]    *See* M.C.L. § 141.1636.

-39-

13-53846-swr    Doc 8272    Filed 11/12/14    Entered 11/12/14 16:25:07    Page 43 of 225
13-53846-tjt    Doc 13663-2    Filed 10/31/22    Entered 10/31/22 16:55:43    Page 20 of 102

adequate and significantly improved municipal and public safety services to City residents and businesses.[49] The Mayor's office and the City Council have been consulted in connection with the City's restructuring and are committed to working in concert to implement the Plan and the Reinvestment Initiatives.[50]

17. It is more likely than not that the Plan is sustainable over the long term.[51] Based on the Projections, the City will have sufficient liquidity to sustain normal municipal operations, issue and perform under the New Securities, satisfy the Settlements and otherwise meet its financial obligations after the Effective Date. The amount and terms of the Exit Facility are reasonable. The City will have sufficient resources to service the Exit Facility. The Plan and the Exit Facility will enable the City to resolve onerous debts related to the City's excessive prepetition borrowing. The City's commitment, under the Plan, to use its best efforts to prepay the New LTGO Bonds on the Effective Date, or as soon as reasonably practicable thereafter, is both reasonable and feasible. Credit markets

---

[49] *See* Court's Exhibit 12000 (Expert Report of Martha E.M. Kopacz), at 201-02.

[50] *See* Joint Notice of Transition Plan (Docket No. 7681), Exhibit A (Detroit City Council Resolution adopted Sept. 25, 2014), at 2-3 ("The City Council supports the confirmation and implementation of a Plan of Adjustment.... After, and assuming, confirmation of the Plan of Adjustment, the City Council will support the City's implementation of the confirmed Plan of Adjustment.").

[51] *See* Court's Exhibit 12001 (Supplemental Expert Report of Martha E.M. Kopacz), at 3-4.

-41-

(a) any of the COP Swap Exculpated Parties to the Syncora Exculpated Parties or
FGIC or (b) the Syncora Exculpated Parties or the FGIC/COP Exculpated Parties
to any of the COP Swap Exculpated Parties. For the avoidance of doubt,
notwithstanding anything in the Plan or this paragraph to the contrary, officers or
employees of the City acting in their individual capacity shall not be exculpated
from liability for claims asserted pursuant to 42 U.S.C. § 1983.

**E.     Order Binding on All Parties**

28.     Subject to the provisions of Section III.A of the Plan, in
accordance with section 944(a) of the Bankruptcy Code and notwithstanding any
otherwise applicable law, upon the occurrence of the Effective Date, the terms of
the Plan and this Order shall be binding upon, and inure to the benefit of: (a) the
City; (b) any and all holders of Claims (irrespective of whether (i) any such Claim
is impaired under the Plan, (ii) proof of any such Claim has been filed or deemed
filed under section 501 of the Bankruptcy Code, (iii) any such Claim is allowed
under section 502 of the Bankruptcy Code or (iv) whether the holders of such
Claims accepted, rejected or are deemed to have accepted or rejected the Plan);
(c) the registered and beneficial holders of COPs; (d) any other person giving,
acquiring or receiving property under the Plan; (e) any and all non-Debtor parties
to Executory Contracts or Unexpired Leases with the City; (f) any party to any
Settlement; and (g) the respective heirs, executors, administrators, trustees,

-86-

13-53846-swr   Doc 8272   Filed 11/12/14   Entered 11/12/14 16:25:07   Page 90 of 225
13-53846-tjt   Doc 13663-2   Filed 10/31/22   Entered 10/31/22 16:55:43   Page 22 of
102

affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors or assigns, if any, of any of the foregoing. All settlements (including, without limitation, the Settlements), compromises, releases (including, without limitation, the Plan Releases), waivers, discharges, exculpations and injunctions set forth in the Plan shall be, and hereby are, operative, effective and binding on all Persons who may have had standing to assert any settled, released, discharged, exculpated or enjoined causes of action, and no other Person or entity shall possess such standing to assert such causes of action after the Effective Date. The compromises and settlements (including, without limitation, the Settlements) embodied in the Plan, along with the treatment of any associated Allowed Claims, shall not be subject to any collateral attack or other challenge by any Entity in any court or other forum.

**F.      Discharge of Claims**

29.      The Plan discharge provisions set forth in Section III.D.4 of the Plan are approved in all respects, are incorporated herein in their entirety, are so ordered and shall be immediately effective on the Effective Date of the Plan without further order or action on the part of the Court or any other party.

30.      In accordance with Section III.D.4 of the Plan, except as specifically provided otherwise in the Plan or this Order, as of the Effective Date, pursuant to sections 524(a)(1), 524(a)(2) and 944(b) of the Bankruptcy Code, all

-87-

# EXHIBIT 17

**Plan of Adjustment - 40 year projections**

## City of Detroit
Plan of Adjustment - 40 year projections



EXHIBIT

Ex. 17

(Trial ex. 793

The attached Plan of Adjustment preliminary forecast (the "POA Financial Projections"), its assumptions and underlying data are the product of the Client and its management ("Management") and consist of information obtained solely from the Client. With respect to prospective financial information relative to the Client, Ernst & Young LLP ("EY") did not examine, compile or apply agreed upon procedures to such information in accordance with attestation standards established by the AICPA and EY expresses no assurance of any kind on the information presented. It is the Client's responsibility to make its own decision based on the information available to it. Management has the knowledge, experience and ability to form its own conclusions related to the Client's POA Financial Projections. There will usually be differences between forecasted and actual results because events and circumstances frequently do not occur as expected and those differences may be material. EY takes no responsibility for the achievement of forecasted results. Accordingly, reliance on this report is prohibited by any third party as the projected financial information contained herein is subject to material change and may not reflect actual results.



City's
Exhibit
793

10/20/2014 6:12 PM

City's Ex 793



**City of Detroit**

Exhibit 1

Plan of Adjustment - 40 year projections
Assumptions
(*$ in millions*)

| Plan of Adjustment - 40 year projections | | |
| --- | --- | --- |
| General Fund Cash Flows | GF 40yr cash flows | $4.3b funds available for unsecured claims |
| | Minimum cash requirement | Based on 2 months of payroll through FY23 and the 5% cash reserve thereafter |
| | DIP financing | Quality of Life ($120m @ 3.5% assumed to be refinanced as part of exit facility) |
| | Exit financing | $160.0m tax-exempt note @ 5.75% maturing in FY30 |
| | | $115.0m taxable note @ 5.75% maturing in FY23 |
| | | Allocation and amortization are subject to tax counsel review |
| | Swap treatment | $85m settlement |
| | Contingency | Reflects 1.0% of total revenues |
| Revenue stream from DWSD | Pension | $429m for pension in the first 10 years |
| | OPEB | 12.1% of OPEB - current retirees payments |
| | POC | 11.5% of total POC payments |
| Reimbursement from other funds | Reimbursements from Parking (non-GF) and Library | |
| DIA settlement | Foundations | $366m over 20 years |
| | DIA | $100m over 20 years |
| State settlement | Contributions to pension | $195m in FY15 |
| Unsecured Claims treatment | | |
| LTGO (Class 7) | Note A2 and Note B reserves | $55m settlement note and $17.3m Note B reserves |
| UTGO (Class 8) | Note A1 | $288m note funded with pass-through UTGO millage |
| POC (Class 9) - Syncora | Notes C and B | $21m of Note C and $23.5m of Note B |
| POC (Class 9) - FGIC | Notes C and B | $67m of Note C and $74.2m of Note B |
| PFRS Pension (Class 10) | *State and DIA Settlements* | |
| | Contributions (years 1-10) | Estimated to be $261m from foundations / State settlement |
| | Contributions (years 11-40) | UAAL as of June 30, 2023 estimated to be ~$681m amortized over |
| | | 30yr, including contributions in second decade from DIA and foundations |
| | Discount rate | 6.75% |
| | Targeted funded status as of 2023 | 78% |
| GRS Pension (Class 11) | *State and DIA Settlements* | |
| | Contributions (years 1-10) | Estimated to be $99m from State settlement; $429m from DWSD; $45m from DIA; $146m from GF & other funds |
| | Contributions (years 11-40) | UAAL as of June 30, 2023 estimated to be ~$695m amortized over |
| | | 30yr, including contributions in second decade from DIA and foundations |
| | Discount rate | 6.75% |
| | Targeted funded status as of 2023 | 70% |
| OPEB (Class 12) | Note B, Note B reserves, and cash | $450m of Note B, $42.7m Note B reserves, and $20m cash |
| DDA (Class 13) | Note B | $4m of Note B |
| Other unsecured (Class 14) | Note B and Note B reserves | $16m of Note B and $4.1m Note B reserves |
| 36DC (Class 17) | Cash payment | $2.2m cash (~$500k upfront payment, and 4 equal annual payments thereafter of ~$400k) |

10/20/2014 6:12 PM

City's Ex 793-002

Plan of Adjustment - 40 year projections
Recovery summary
*($ in millions)*

## 10 Years

| Creditor | Class (a) | Claim | State settlement | DIA settlement | Cash | A1 | A2 | B | B (reserves) | C | 10 year $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Distributions | | Notes | | | |
| LTGO | 7 | $164 | | | | | $55 | | $6 | | $61 |
| UTGO | 8 | $388 | | | | $328 | | | | | $328 |
| POC - Syncora (b) | 9 | $354 | | | | | | $8 | | $22 | $30 |
| POC - FGIC (b) | 9 | $1,119 | | | | | | $25 | | $68 | $93 |
| PFRS pension | 10 | $1,250 | $96 | $165 | | | | | | | $261 |
| GRS pension (c) | 11 | $1,879 | $99 | $45 | $575 | | | | | | $719 |
| PFRS OPEB | 12 | $2,208 | | | $9 | | | $79 | $7 | | $95 |
| GRS OPEB | 12 | $2,095 | | | $11 | | | $74 | $7 | | $92 |
| DDA | 13 | $34 | | | | | | $1 | | | $1 |
| Other unsecured | 14 | $150 | | | | | | $6 | $1 | | $7 |
| MDIC | 17 | $6 | | | $2 | | | | | | $2 |
| | | $9,646 | $195 | $210 | $597 | $328 | $55 | $193 | $22 | $90 | $1,689 |

## 40 Years

| Creditor | Class (a) | Claim | State settlement | DIA settlement | Cash | A1 | A2 | B | B (reserves) | C | $ | $ PV (d) | % | | Adjusted % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Distributions | | Notes | | | | Illustrative Recoveries | | | |
| LTGO | 7 | $164 | | | | | $55 | | $33 | | $88 | $68 | 41% | | |
| UTGO | 8 | $388 | | | | $368 | | | | | $368 | $288 | 74% | | |
| POC - Syncora (b) | 9 | $354 | | | | | | $45 | | $29 | $74 | $41 | 12% | Includes settlement credit | 13% |
| POC - FGIC (b) | 9 | $1,119 | | | | | | $141 | | $91 | $232 | $130 | 12% | | 13% |
| PFRS pension | 10 | $1,250 | $96 | $233 | $1,325 | | | | | | $1,654 | $735 | 59% | Excludes State, Foundation, and DIA funding | 39% |
| GRS pension (c) | 11 | $1,879 | $99 | $233 | $1,809 | | | | | | $2,141 | $1,118 | 60% | | 48% |
| PFRS OPEB | 12 | $2,208 | | | $9 | | | $442 | $42 | | $493 | $231 | 10% | | |
| GRS OPEB | 12 | $2,095 | | | $11 | | | $416 | $40 | | $466 | $220 | 10% | | |
| DDA | 13 | $34 | | | | | | $7 | | | $7 | $3 | 10% | | |
| Other unsecured | 14 | $150 | | | | | | $31 | $8 | | $39 | $18 | 12% | | |
| MDIC | 17 | $6 | | | $2 | | | | | | $2 | $2 | 32% | | |
| | | $9,646 | $195 | $466 | $3,156 | $368 | $55 | $1,082 | $122 | $120 | $5,565 | $2,855 | | | |

### Description of notes

| Note | Face value | Interest rate | Recipients | Term | Comments |
|---|---|---|---|---|---|
| Note A1 | $287.6 | n/a | UTGO | 14 years | Represents ~87% of UTGO scheduled debt service |
| Note A2 | $55.0 | n/a | LTGO | n/a | Upfront payment; City retains the option to repay this note over 23 years |
| Note B (incl. reserves) | $632.0 | 4%, 4%, 6% | OPEB, LTGO, POC, Notes & Other unsec. | 30 years | 10 yrs interest only, and straight-line amortization thereafter |
| Note C | $88.4 | 5% | Syncora & FGIC | 12 years | $10m annual payment |

*Footnotes:*
(a) Excludes Secured Claims (Class 1 through Class 6), Convenience Claims (Class 15), and Subordinated Claims (Class 16).
(b) Distributions and illustrative recoveries do not include settlement credits in the nominal amount of $26m.
(c) Cash payments include DWSD contributions of $429m and other fund reimbursements of $94m (over the 40yr period).
(d) Present value amounts calculated assuming 5% discount rate.

10/20/2014 6:12 PM

City's Ex 793-003

Plan of Adjustment - 40 year projections
Preliminary forecast and distributions
($ in millions)

| | Growth after FY23 | 2014-2023 | 2024-2033 | 2034-2043 | 2044-2053 | 40-year total |
|---|---|---|---|---|---|---|
| **Revenues** | | | | | | |
| Municipal income tax | 2.4% - 2.8% | $ 2,770.3 | $ 3,510.0 | $ 4,590.6 | $ 6,059.3 | $ 16,930.2 |
| State revenue sharing | 0.1% - 1.7% | 2,000.5 | 2,121.0 | 2,307.1 | 2,533.2 | 8,961.8 |
| Wagering taxes | 1.0% | 1,732.6 | 1,905.6 | 2,105.0 | 2,325.2 | 8,068.4 |
| Property taxes | 1.5% - 2.2% | 1,074.0 | 1,369.6 | 1,640.0 | 1,903.2 | 5,986.8 |
| Utility users' taxes | 1.5% - 1.7% | 257.2 | 304.3 | 353.2 | 409.9 | 1,324.6 |
| Sales and charges for services | 2.0% | 1,118.0 | 1,161.2 | 1,415.5 | 1,725.5 | 5,420.2 |
| Other revenue | 2.0% | 706.9 | 747.2 | 918.3 | 1,119.7 | 3,492.1 |
| General Fund reimbursements | 2.0% | 265.0 | 238.8 | 291.1 | 354.9 | 1,149.8 |
| Transfers in for UTGO | n/a | 532.8 | 147.6 | 22.1 | - | 702.4 |
| Restructuring: | | | | | | |
| Department revenue initiatives | 2.0% | 482.9 | 586.2 | 714.6 | 871.1 | 2,654.8 |
| QOL / exit financing proceeds (net) | n/a | 241.4 | 27.5 | - | - | 268.9 |
| Total revenues | | 11,181.5 | 12,119.1 | 14,357.4 | 17,301.9 | 54,959.9 |
| **Expenditures** | | | | | | |
| Salaries/overtime/fringe - Public Safety (a) | 2.0% - 2.25% | (2,864.3) | (3,524.5) | (4,356.5) | (5,442.1) | (16,187.4) |
| Salaries/overtime/fringe - Non-Public Safety | 2.0% - 2.25% | (903.8) | (1,087.2) | (1,343.9) | (1,678.8) | (5,013.7) |
| Health benefits (b) | ~4% inflation cap beg. FY20 | (752.6) | (928.2) | (1,373.9) | (2,033.7) | (5,088.4) |
| OPEB payments - future retirees (a) | $1m per year uniform / 2% of wages non-uniform | (32.2) | (37.0) | (43.2) | (51.1) | (163.4) |
| Active pension plan (a) | 12.25% uniform / 5.75% non-uniform | (347.9) | (443.6) | (547.8) | (683.4) | (2,022.6) |
| Other operating expenses (c) | 2.0% | (3,073.2) | (3,437.4) | (4,190.1) | (5,107.7) | (15,808.5) |
| Restructuring: | | | | | | |
| Additional operating expenditures | 2.0% | (357.5) | (359.1) | (437.7) | (533.5) | (1,687.7) |
| Escrow proceeds (2012 refunding bonds) | n/a | 64.7 | - | - | - | 64.7 |
| Working capital | n/a | (0.8) | - | - | - | (0.8) |
| Secured debt service | n/a | (390.5) | (391.0) | (67.2) | - | (848.6) |
| Contributions to income stabilization fund | n/a | (17.8) | (2.2) | - | - | (20.0) |
| Swap interest set-aside | n/a | (104.1) | - | - | - | (104.1) |
| QOL / exit financing principal/interest payments | n/a | (292.9) | (126.0) | - | - | (418.9) |
| Reorganization (Capital investments) | 2.0% | (582.2) | (442.7) | (501.4) | (605.3) | (2,131.5) |
| Restructuring professional fees | n/a | (177.0) | - | - | - | (177.0) |
| Blight (excludes heavy commercial) | n/a | (420.0) | - | - | - | (420.0) |
| PLD decommission | n/a | (75.0) | - | - | - | (75.0) |
| Contingency | n/a | (98.9) | (120.9) | (143.6) | (173.0) | (536.4) |
| Reinvestment deferrals | n/a | 65.0 | 200.4 | (51.1) | (214.3) | - |
| Total expenditures | | (10,360.9) | (10,699.3) | (13,056.3) | (16,523.0) | (50,639.4) |
| Funds available for unsecured claims | | $ 820.6 | $ 1,419.8 | $ 1,301.1 | $ 779.0 | $ 4,320.5 |

*Footnotes:*
(a) Assumes pending DPOA & DFFA deals are cash flow neutral.
(b) Health benefits include $142.8m of OPEB payments for current retirees in FY 2014 ($123.8m) and FY 2015 ($19m).
(c) The impact of the first decade increase in DDOT subsidy is assumed to be offset by operational savings beyond 2023.

**Plan of Adjustment - 40 year projections**
**Preliminary forecast and distributions**
*($ in millions)*

| | 2014-2023 | 2024-2033 | 2034-2043 | 2044-2053 | 40-year total |
|---|---|---|---|---|---|
| **Sources** | | | | | |
| Funds available for unsecured claims | $ 820.6 | $ 1,419.8 | $ 1,301.1 | $ 779.0 | $ 4,320.5 |
| Revenue stream from DWSD - no transaction | | | | | |
| Pension | 428.5 | - | - | - | 428.5 |
| OPEB (based on 12.1% of OPEB - current retirees payments) | 21.7 | 44.3 | 42.4 | 6.5 | 114.8 |
| POC (based on 11.5% of total POC payments) | 14.2 | 11.9 | 8.0 | 1.2 | 35.3 |
| Subtotal: Revenue stream from DWSD | 464.4 | 56.1 | 50.5 | 7.7 | 578.6 |
| Reimbursement from other funds | 44.4 | 56.9 | 37.6 | 26.3 | 165.2 |
| Grand Bargain funding | | | | | |
| Foundation fundraising | 164.7 | 201.3 | - | - | 366.0 |
| DIA contributions | 45.0 | 55.0 | - | - | 100.0 |
| State settlement | 194.8 | - | - | - | 194.8 |
| **Total sources** | $ 1,733.9 | $ 1,789.1 | $ 1,389.2 | $ 813.0 | $ 5,725.2 |
| **Uses** | | | | | |
| Retiree payments | | | | | |
| PFRS pension payments | (260.7) | (517.7) | (464.5) | (311.3) | (1,554.2) |
| GRS pension payments | (718.5) | (530.4) | (474.0) | (317.7) | (2,140.7) |
| PFRS OPEB payments - current retirees | (9.1) | - | - | - | (9.1) |
| GRS OPEB payments - current retirees | (10.9) | - | - | - | (10.9) |
| Subtotal: retiree distributions | (999.2) | (1,248.1) | (938.5) | (628.9) | (3,814.8) |
| Note and cash payments | | | | | |
| Note A1 (UTGO) | (327.6) | (40.8) | - | - | (368.5) |
| Note A2 (LTGO) | (55.0) | - | - | - | (55.0) |
| Note B (incl. B reserves) | (214.9) | (470.2) | (450.6) | (68.9) | (1,204.6) |
| 36DC cash payments | (2.2) | - | - | - | (2.2) |
| Note C (POC) | (89.8) | (29.9) | - | - | (119.7) |
| Subtotal: note and cash payments | (689.5) | (541.0) | (450.6) | (68.9) | (1,750.0) |
| **Total distributions / total uses** | $ (1,688.7) | $ (1,789.1) | $ (1,389.2) | $ (697.8) | $ (5,564.8) |
| Surplus / (deficit) | $ 45.2 | $ - | $ - | $ 115.2 | $ 160.4 |
| Ending cash balance (a) | $ 81.2 | $ 81.2 | $ 81.2 | 196.4 | $ 196.4 |

*Footnote:*
(a) Includes 5% of budgeted expenditures as required by State law.

City's Ex 793-005

**Plan of Adjustment - 40 year projections**
**Preliminary forecast and distributions**
*($ in millions)*

| | 2014-2023 | 2024-2033 | 2034-2043 | 2044-2053 | 40-year total |
|---|---|---|---|---|---|
| **Total distributions to creditors** | | | | | |
| PFRS pension (c) | $ (260.7) | $ (617.7) | $ (464.5) | (311.3) | $ (1,654.2) |
| GRS pension (c) | (718.5) | (630.4) | (474.0) | (317.7) | (2,140.7) |
| PFRS OPEB (cash) | (9.1) | - | - | - | (9.1) |
| GRS OPEB (cash) | (10.9) | - | - | - | (10.9) |
| UTGO (Note A1) | (327.6) | (40.8) | - | - | (368.5) |
| LTGO (Note A2) | (55.0) | - | - | - | (55.0) |
| *Note B* | | | | | |
| PFRS OPEB (incl. B reserves) | (86.3) | (188.9) | (181.0) | (77.7) | (483.9) |
| GRS OPEB (incl. B reserves) | (81.2) | (177.7) | (170.3) | (26.0) | (455.1) |
| LTGO (B reserves) | (5.9) | (12.9) | (12.4) | (1.9) | (33.0) |
| POC - Syncora | (8.0) | (17.5) | (16.8) | (2.6) | (44.8) |
| POC - FGIC (B reserves) | (25.2) | (55.2) | (52.9) | (8.1) | (141.4) |
| DDA | (1.3) | (2.7) | (2.6) | (0.4) | (7.0) |
| Other unsecured items (incl. B reserves) | (7.0) | (15.3) | (14.7) | (2.2) | (39.3) |
| 36DC cash payments | (2.2) | - | - | - | (2.2) |
| POC - Syncora (Note C) | (21.6) | (7.2) | - | - | (28.8) |
| POC - FGIC (Note C) | (58.2) | (22.7) | - | - | (80.9) |
| **Total distributions to unsecured creditors** | (1,688.7) | (1,789.1) | (1,389.2) | (697.5) | (5,564.8) |
| Total secured debt service (including QOL/Exit financing) | (683.4) | (517.0) | (67.2) | - | (1,267.6) |
| **Total distributions to creditors** | $ (2,372.1) | $ (2,306.1) | $ (1,456.3) | (697.8) | $ (6,832.4) |
| Percentage of total revenues (including other sources) | 19.6% | 18.5% | 10.1% | 4.0% | 12.1% |

| | Claims (a) | | 40 years | | | |
|---|---|---|---|---|---|---|
| | $ in millions | % | Nominal (b) | % | PV @ 5.0% (b) | % |
| PFRS pension (c) | 1,250.0 | 13% | 1,325.2 | 106% | 481.8 | 39% |
| GRS pension (c) | 1,879.0 | 19% | 1,808.9 | 96% | 895.5 | 48% |
| PFRS OPEB | 2,207.8 | 23% | 493.1 | 22% | 231.1 | 10% |
| GRS OPEB | 2,095.2 | 22% | 466.0 | 22% | 219.6 | 10% |
| UTGO | 388.0 | 4% | 368.5 | 95% | 288.5 | 74% |
| LTGO | 163.5 | 2% | 88.0 | 54% | 67.5 | 41% |
| POC - Syncora | 354.4 | 4% | 73.6 | 21% | 41.3 | 12% |
| POC - FGIC (B reserves) | 1,118.8 | 12% | 232.3 | 21% | 130.4 | 12% |
| DDA | 33.6 | 0% | 7.0 | 21% | 3.2 | 10% |
| Other unsecured items | 150.0 | 2% | 39.3 | 26% | 18.0 | 12% |
| 36DC claims | 6.0 | 0% | 2.2 | 37% | 1.9 | 32% |
| **Total** | $ 9,646.4 | 100% | $ 4,904.0 | 51% | $ 2,378.7 | |

*Footnotes:*
(a) Subject to ongoing legal review/negotiation. Final allowed claim amounts under these categories may be materially different.
(b) Nominal pension system payments exclude $661m for PFRS and GRS (State settlement & art proceeds) for the calculation of recoveries.
(c) Retirement system pension claims based on actuarial valuation as of June 30, 2013. Assumes a 6.75% discount rate.

10/20/2014 6:12 PM

City's Ex 793-006

**Plan of Adjustment - 40 year projections**
**Preliminary forecast and distributions**
*($ in millions)*

| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2014-2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | | | | | |
| Municipal income tax | $ 247.9 | $ 256.2 | $ 262.3 | $ 268.3 | $ 274.0 | $ 279.9 | $ 286.0 | $ 292.2 | $ 298.5 | $ 304.9 | $ 2,770.3 |
| State revenue sharing | 191.2 | 196.6 | 198.7 | 200.3 | 202.0 | 203.8 | 205.6 | 199.1 | 200.8 | 202.5 | 2,000.5 |
| Wagering taxes | 169.9 | 168.2 | 169.0 | 169.9 | 171.6 | 173.3 | 175.0 | 176.8 | 178.6 | 180.3 | 1,732.6 |
| Property taxes | 114.9 | 102.6 | 100.8 | 102.4 | 102.6 | 103.9 | 106.8 | 109.7 | 113.3 | 117.0 | 1,074.0 |
| Utility users' taxes | 20.1 | 24.5 | 24.9 | 25.5 | 26.0 | 26.4 | 26.8 | 27.2 | 27.6 | 28.0 | 257.2 |
| Sales and charges for services | 131.5 | 118.0 | 115.8 | 113.6 | 111.4 | 109.2 | 107.0 | 104.4 | 103.3 | 104.0 | 1,118.0 |
| Other revenue | 79.8 | 86.2 | 78.0 | 66.5 | 65.3 | 65.5 | 65.8 | 66.2 | 66.6 | 66.9 | 706.9 |
| General Fund reimbursements | 29.8 | 43.7 | 41.7 | 21.4 | 21.4 | 21.4 | 21.4 | 21.4 | 21.4 | 21.4 | 265.0 |
| Transfers in for UTGO | 66.5 | 62.6 | 57.7 | 57.6 | 56.5 | 54.1 | 53.4 | 52.7 | 37.7 | 33.9 | 532.8 |
| Restructuring: | | | | | | | | | | | |
|   Department revenue initiatives | - | 95.2 | 45.1 | 49.7 | 52.9 | 42.5 | 46.9 | 46.8 | 51.3 | 52.5 | 482.9 |
|   QOL / exit financing proceeds (net) | - | 217.7 | 23.7 | - | - | - | - | - | - | - | 241.4 |
|     Total revenues | 1,051.6 | 1,371.6 | 1,117.7 | 1,075.1 | 1,083.7 | 1,080.0 | 1,094.8 | 1,096.5 | 1,099.0 | 1,111.5 | 11,181.5 |
| **Expenditures** | | | | | | | | | | | |
| Salaries/overtime/fringe - Public Safety (a) | (245.2) | (263.3) | (276.7) | (277.5) | (284.4) | (291.5) | (297.4) | (303.3) | (309.4) | (315.6) | (2,864.3) |
| Salaries/overtime/fringe - Non-Public Safety | (85.7) | (86.9) | (88.1) | (86.1) | (88.0) | (90.2) | (92.0) | (93.8) | (95.4) | (97.3) | (903.8) |
| Health benefits (b) | (173.0) | (67.1) | (52.4) | (55.9) | (60.0) | (63.6) | (66.1) | (68.7) | (71.5) | (74.3) | (752.6) |
| OPEB payments - future retirees (a) | - | (6.1) | (3.1) | (3.1) | (3.2) | (3.2) | (3.3) | (3.3) | (3.4) | (3.4) | (32.2) |
| Active pension plan (a) | - | (52.1) | (34.1) | (34.9) | (35.8) | (36.7) | (37.4) | (38.2) | (38.9) | (39.7) | (347.9) |
| Other operating expenses (c) | (291.3) | (320.1) | (326.5) | (303.5) | (304.8) | (302.0) | (302.2) | (303.3) | (309.4) | (310.3) | (3,073.2) |
| Restructuring: | | | | | | | | | | | |
|   Additional operating expenditures | - | (72.6) | (45.3) | (39.9) | (35.6) | (33.0) | (33.0) | (33.3) | (32.5) | (32.1) | (357.5) |
|   Escrow proceeds (2012 refunding bonds) | - | 64.7 | - | - | - | - | - | - | - | - | 64.7 |
|   Working capital | 13.4 | (34.2) | 4.0 | 4.0 | 4.0 | 4.0 | 4.0 | - | - | - | (0.8) |
|   Secured debt service | (35.4) | (39.4) | (39.4) | (39.4) | (39.4) | (39.4) | (39.5) | (39.5) | (39.5) | (39.6) | (390.5) |
|   Contributions to income stabilization fund | - | (2.5) | (2.3) | (2.3) | (2.2) | (2.1) | (2.1) | (2.0) | (1.3) | (1.1) | (17.8) |
|   Swap interest set-aside | (45.9) | (58.2) | - | - | - | - | - | - | - | - | (104.1) |
|   QOL / exit financing principal/interest payments | (0.7) | (10.3) | (15.8) | (15.8) | (15.8) | (15.8) | (19.8) | (52.4) | (59.6) | (64.9) | (292.9) |
|   Reorganization (Capital investments) | - | (139.5) | (106.4) | (65.6) | (50.2) | (43.6) | (51.9) | (46.0) | (40.4) | (38.6) | (582.2) |
|   Restructuring professional fees | (49.4) | (127.6) | - | - | - | - | - | - | - | - | (177.0) |
|   Blight (excludes heavy commercial) | - | (52.0) | (46.0) | (50.0) | (50.0) | (51.0) | (52.0) | (45.0) | (25.0) | (19.0) | (420.0) |
|   PLD decommission | - | (2.5) | (5.0) | (5.0) | (10.0) | (10.0) | (10.0) | (12.5) | (10.0) | - | (75.0) |
| Contingency | - | (11.5) | (10.9) | (10.8) | (10.8) | (10.8) | (10.9) | (11.0) | (11.0) | (11.1) | (98.9) |
| Reinvestment deferrals | - | - | 25.4 | 15.2 | (2.7) | 1.5 | 7.4 | 35.3 | 3.6 | (20.5) | 65.0 |
|     Total expenditures | (913.3) | (1,311.1) | (1,022.7) | (980.7) | (988.9) | (987.5) | (1,026.2) | (1,027.1) | (1,043.7) | (1,059.6) | (10,360.9) |
| **Funds available for unsecured claims** | $ 138.4 | $ 60.4 | $ 95.0 | $ 94.4 | $ 94.8 | $ 92.5 | $ 68.6 | $ 69.4 | $ 55.3 | $ 51.8 | $ 820.6 |

*Footnotes:*
(a) Assumes pending DPOA & DFFA deals are cash flow neutral.
(b) Health benefits include $142.8m of OPEB payments for current retirees in FY 2014 ($123.8m) and FY 2015 ($19m).
(c) The impact of the first decade increase in DDOT subsidy is assumed to be offset by operational savings beyond 2023.

10/20/2014 6:12 PM

**City's Ex 793-007**

**City of Detroit**

Plan of Adjustment - 40 year projections
Preliminary forecast and distributions
($ in millions)

| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2014-2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Preliminary forecast | | | | | | |
| **Sources** | | | | | | | | | | | |
| Funds available for unsecured claims | $ 138.4 | $ 60.4 | $ 95.0 | $ 94.4 | $ 94.8 | $ 92.5 | $ 68.6 | $ 69.4 | $ 55.3 | $ 51.8 | $ 820.6 |
| Revenue stream from DWSD - no transaction | | | | | | | | | | | |
| Pension | - | 65.4 | 45.4 | 45.4 | 45.4 | 45.4 | 45.4 | 45.4 | 45.4 | 45.4 | 428.5 |
| OPEB (based on 12.1% of OPEB - current retirees payments) | - | 2.6 | 2.4 | 2.4 | 2.4 | 2.4 | 2.4 | 2.4 | 2.4 | 2.4 | 21.7 |
| POC (based on 11.5% of total POC payments) | - | 1.4 | 1.6 | 1.6 | 1.6 | 1.6 | 1.6 | 1.6 | 1.6 | 1.6 | 14.2 |
| Subtotal: Revenue stream from DWSD | - | 69.4 | 49.4 | 49.4 | 49.4 | 49.4 | 49.4 | 49.4 | 49.4 | 49.4 | 464.4 |
| Reimbursement from other funds | - | (0.2) | 4.7 | 5.3 | 3.9 | 3.7 | 6.9 | 6.8 | 6.7 | 6.6 | 44.4 |
| Grand Bargain funding | | | | | | | | | | | |
| Foundation fundraising | - | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 164.7 |
| DIA contributions | - | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 45.0 |
| State settlement | - | 194.8 | - | - | - | - | - | - | - | - | 194.8 |
| Total sources | $ 138.4 | $ 347.7 | $ 172.4 | $ 172.4 | $ 171.3 | $ 168.9 | $ 148.2 | $ 148.9 | $ 134.7 | $ 131.1 | $ 1,733.9 |
| | | | | | | | | | | | |
| **Uses** | | | | | | | | | | | |
| Retiree payments | | | | | | | | | | | |
| PFRS pension payments | - | (114.3) | (18.3) | (18.3) | (18.3) | (18.3) | (18.3) | (18.3) | (18.3) | (18.3) | (260.7) |
| GRS pension payments | - | (188.2) | (76.9) | (76.9) | (76.8) | (76.6) | (56.5) | (56.5) | (55.2) | (54.9) | (718.5) |
| PFRS OPEB payments - current retirees | (0.1) | - | - | - | - | - | - | - | - | - | (0.1) |
| GRS OPEB payments - current retirees | (10.9) | - | - | - | - | - | - | - | - | - | (10.9) |
| Subtotal: retiree distributions | (20.0) | (302.5) | (95.2) | (95.2) | (95.1) | (94.9) | (74.8) | (74.8) | (73.5) | (73.2) | (999.2) |
| Note and cash payments | | | | | | | | | | | |
| Note A1 (UTGO) | - | (45.8) | (41.5) | (41.5) | (40.5) | (38.4) | (37.8) | (37.1) | (24.1) | (20.8) | (327.6) |
| Note A2 (LTGO) | - | (55.0) | - | - | - | - | - | - | - | - | (55.0) |
| Note B (ind. B reserves) | - | (12.6) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (214.9) |
| 35DC cash payments | - | (0.5) | (0.4) | (0.4) | (0.4) | (0.4) | - | - | - | - | (2.2) |
| Note C (POC) | - | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (89.8) |
| Subtotal: note and cash payments | - | (124.0) | (77.2) | (77.2) | (76.2) | (74.0) | (73.0) | (72.4) | (59.4) | (56.1) | (689.5) |
| Total distributions / total uses | $ (20.0) | $ (426.5) | $ (172.4) | $ (172.4) | $ (171.3) | $ (168.9) | $ (147.9) | $ (147.2) | $ (132.9) | $ (129.3) | $ (1,688.7) |
| | | | | | | | | | | | |
| Surplus / (deficit) | $ 118.4 | $ (78.8) | $ - | $ - | $ - | $ - | $ 0.3 | $ 1.7 | $ 1.7 | $ 1.8 | $ 45.2 |
| Ending cash balance (a) | $ 134.4 | $ 73.6 | $ 73.6 | $ 73.6 | $ 73.6 | $ 73.6 | $ 73.9 | $ 77.6 | $ 79.4 | $ 81.2 | $ 81.2 |
| Memo: | | | | | | | | | | | |
| FY14 expenditures to be spent in FY15 | (78.8) | 78.8 | - | - | - | - | - | - | - | - | |
| Adjusted surplus / (deficit) | $ 39.6 | $ - | $ - | $ - | $ - | $ - | $ 0.3 | $ 1.7 | $ 1.7 | $ 1.8 | $ 45.2 |

**Footnotes**

(a) Includes 5% of budgeted expenditures as required by State law.

City's Ex 793-008

**Appendices**

10/20/2014 6:12 PM

City's Ex 793-009

**Plan of Adjustment - 40 year projections**
**Bridge - 40 year adjustments since 7/2/2014**
*($ in millions)*

| | | 2014-2023 | | 2024-2033 | | 2034-2043 | | 2044-2053 | | 40-year total |
|---|---|---|---|---|---|---|---|---|---|---|
| POA (7/2/2014) surplus / (deficit) | $ | 45.2 | $ | 21.0 | $ | 29.7 | $ | 77.2 | $ | 173.1 |
| | | | | | | | | | | |
| Adjustments (a): | | | | | | | | | | |
| Financing changes | | (8.3) | | 11.8 | | - | | - | | 3.4 |
| POC settlement | | (89.5) | | (34.8) | | (2.9) | | (0.4) | | (127.7) |
| 36DC settlement | | (2.2) | | - | | - | | - | | (2.2) |
| Reinvestment deferrals & other differences | | 100.1 | | 2.1 | | (26.8) | | 38.4 | | 113.7 |
| Total adjustments | | (0.0) | | (21.0) | | (29.7) | | 38.0 | | (12.7) |
| | | | | | | | | | | |
| Adjusted surplus / (deficit) | $ | 45.2 | $ | - | $ | - | $ | 115.2 | $ | 160.4 |
| | | | | | | | | | | |
| Original ending cash balance (7/2/2014) | $ | 81.2 | $ | 102.2 | $ | 131.9 | $ | 209.1 | $ | 209.1 |
| Cumulative adjustments | | (0.0) | | (21.0) | | (50.7) | | (12.7) | | (12.7) |
| Ending cash balance | $ | 81.2 | $ | 81.2 | $ | 81.2 | $ | 196.4 | $ | 196.4 |

*Footnotes:*
(a) See next page for detailed adjustments.

10/20/2014 6:12 PM

City's Ex 793-010

**Plan of Adjustment - 40 year projections**
**Detail of Adjustments since 7/2/2014**
*($ in millions)*

| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2014-2023 | 2024-2033 | 2034-2043 | 2044-2053 | 40-year total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Financing changes** | | | | | | | | | | | | | | | |
| QOL / exit financing proceeds (net) | - | (34.1) | (17.1) | - | - | - | - | - | - | - | (51.2) | 27.5 | - | - | (23.7) |
| QOL / exit financing principal/interest payments | - | 3.1 | 2.2 | 2.2 | 2.2 | 30.8 | 19.4 | (5.8) | (5.6) | (5.4) | 42.9 | (15.7) | - | - | 27.2 |
| Total | - | (31.0) | (14.9) | 2.2 | 2.2 | 30.8 | 19.4 | (5.8) | (5.6) | (5.4) | (8.3) | 11.8 | - | - | 3.4 |
| **POC settlement** | | | | | | | | | | | | | | | |
| Note C (POC) | - | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (89.8) | (29.9) | - | - | (119.7) |
| Non-bankruptcy settlement items | - | (5.4) | (0.8) | (0.8) | (0.8) | (0.8) | (0.8) | (0.7) | (0.6) | (0.6) | (10.9) | (6.3) | (0.3) | - | (17.5) |
| Increased other fund reimbursements | - | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 1.6 | (0.4) | (1.1) | (0.2) | (0.1) |
| Increased DWSD revenue stream | - | 1.1 | 1.1 | 1.1 | 1.1 | 1.1 | 1.1 | 1.1 | 1.1 | 1.1 | 9.6 | 1.8 | (1.6) | (0.2) | 9.5 |
| Total | - | (14.0) | (9.5) | (9.5) | (9.5) | (9.5) | (9.5) | (9.4) | (9.3) | (9.3) | (89.5) | (34.8) | (2.9) | (0.4) | (127.7) |
| **36DC settlement** | - | (0.5) | (0.4) | (0.4) | (0.4) | (0.4) | - | - | - | - | (2.2) | - | - | - | (2.2) |
| **Reinvestment deferrals & other differences** | | | | | | | | | | | | | | | |
| Contingency | - | 1.9 | 0.4 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 2.4 | 0.1 | 0.0 | - | 2.4 |
| QOL proceeds - timing | (52.5) | 52.5 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Expenditures - timing | 131.2 | (131.2) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Blight - timing | - | 20.0 | - | (10.0) | (7.0) | (3.0) | - | - | - | - | - | - | - | - | - |
| Escrow proceeds (2012 refunding bonds) | - | 44.7 | - | - | - | - | - | - | - | - | 44.7 | - | - | - | 44.7 |
| Increased Parking EF revenue stream | - | (3.5) | 1.4 | 2.0 | 0.6 | 0.4 | 3.7 | 3.6 | 3.5 | 3.4 | 15.2 | 24.5 | 13.4 | 10.9 | 64.0 |
| Copper wire and other asset sales | - | 5.0 | 4.0 | 4.0 | 4.0 | 4.0 | 4.0 | - | - | - | 25.0 | - | - | - | 25.0 |
| Litigation settlement | - | 24.0 | - | - | - | - | - | - | - | - | 24.0 | - | - | - | 24.0 |
| POC swap settlement delay | - | 0.5 | - | - | - | - | - | - | - | - | 0.5 | - | - | - | 0.5 |
| Additional professional fees | - | (47.0) | - | - | - | - | - | - | - | - | (47.0) | - | - | - | (47.0) |
| Reinvestment deferrals | - | - | 19.0 | 11.8 | 7.1 | (22.3) | (17.3) | 13.3 | 12.4 | 11.3 | 35.2 | (22.5) | (40.2) | 27.5 | 0.0 |
| Other | - | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.1 |
| Total | 78.8 | (33.2) | 24.8 | 7.7 | 4.7 | (20.9) | (9.6) | 16.9 | 16.0 | 14.7 | 100.1 | 2.1 | (26.8) | 38.4 | 113.7 |
| **Total adjustments (Post 7/2/2104)** | $ 78.8 | $ (78.8) | $ - | $ - | $ (3.1) | $ - | $ 0.3 | $ 1.7 | $ 1.0 | $ (0.0) | $ (0.0) | $ (21.0) | $ (29.7) | $ 38.0 | $ (12.7) |
| | | | | | | | | | | | | | | | |
| **Original ending cash balance (7/2/2014)** | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 78.7 | $ 78.7 | $ 78.7 | $ 78.7 | $ 79.4 | $ 81.2 | $ 81.2 | $ 102.2 | $ 131.9 | $ 209.1 | $ 209.1 |
| Cumulative adjustments | 78.8 | (0.0) | (0.0) | (0.0) | (3.1) | (3.1) | (2.8) | (1.0) | (0.0) | (0.0) | (0.0) | (21.0) | (50.7) | (12.7) | (12.7) |
| **Ending cash balance** | $ 154.4 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.9 | $ 77.6 | $ 79.4 | $ 81.2 | $ 81.2 | $ 81.2 | $ 81.2 | $ 196.4 | $ 196.4 |

City's Ex 793-011

Plan of Adjustment - 40 year projections
Adjustments since 9/25/2014
*($ in millions)*

| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2014-2023 | 2024-2033 | 2034-2043 | 2044-2053 | 40-year total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Financing changes** | | | | | | | | | | | | | | | |
| QOL / exit financing proceeds (net) | - | (22.8) | (3.9) | - | - | - | - | - | - | - | (26.7) | 27.5 | - | - | 0.8 |
| QOL / exit financing principal/interest payments | - | (0.6) | - | - | - | - | - | - | - | - | (0.6) | - | - | - | (0.6) |
| Total | - | (23.3) | (3.9) | - | - | - | - | - | - | - | (27.2) | 27.5 | - | - | 0.3 |
| **FGIC settlement** | | | | | | | | | | | | | | | |
| Note C (POC) | - | (8.8) | (7.6) | (7.6) | (7.6) | (7.6) | (7.6) | (7.6) | (7.6) | (7.6) | (69.4) | (21.5) | - | - | (90.9) |
| Increased other fund reimbursements | - | 0.2 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 1.2 | (0.3) | (0.8) | (0.1) | (0.0) |
| Increased DWSD revenue stream | - | 1.0 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 7.4 | 1.1 | (1.3) | (0.2) | 7.1 |
| Total | - | (7.6) | (6.6) | (6.6) | (6.6) | (6.6) | (6.6) | (6.6) | (6.6) | (6.6) | (60.8) | (20.7) | (2.1) | (0.3) | (83.9) |
| **Reinvestment deferrals & other differences** | | | | | | | | | | | | | | | |
| Reinvestment deferrals | - | - | 5.1 | 0.7 | 2.1 | 2.2 | (1.1) | 3.0 | 3.1 | 3.2 | 18.3 | (31.3) | (11.3) | 24.3 | 0.0 |
| Reduction in professional fees | - | 5.0 | - | - | - | - | - | - | - | - | 5.0 | - | - | - | 5.0 |
| Increased Parking EF revenue stream | - | (3.5) | 1.4 | 2.0 | 0.6 | 0.4 | 3.7 | 3.6 | 3.5 | 3.4 | 15.2 | 24.5 | 13.4 | 10.9 | 64.0 |
| Copper wire and other asset sales | - | 5.0 | 4.0 | 4.0 | 4.0 | 4.0 | 4.0 | - | - | - | 25.0 | - | - | - | 25.0 |
| Litigation settlement | - | 24.0 | - | - | - | - | - | - | - | - | 24.0 | - | - | - | 24.0 |
| POC swap settlement delay | - | 0.5 | - | - | - | - | - | - | - | - | 0.5 | - | - | - | 0.5 |
| Total | - | 31.0 | 10.5 | 6.6 | 6.6 | 6.6 | 6.6 | 6.6 | 6.6 | 6.6 | 88.0 | (6.8) | 2.1 | 35.2 | 118.5 |
| Total adjustments (post 9/25/2014) | $ - | $ (0.0) | $ - | $ - | $ - | $ - | $ 0.0 | $ (0.0) | $ 0.0 | $ (0.0) | $ (0.0) | $ - | $ - | $ 34.9 | $ 34.9 |
| | | | | | | | | | | | | | | | |
| Original ending cash balance (9/25/2014) | $ 154.4 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.9 | $ 77.6 | $ 79.4 | $ 81.2 | $ 81.2 | $ 81.2 | $ 81.2 | $ 161.5 | $ 161.5 |
| Cumulative adjustments | - | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | 0.0 | (0.0) | (0.0) | (0.0) | (0.0) | 34.9 | 34.9 |
| Ending cash balance | $ 154.4 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.9 | $ 77.6 | $ 79.4 | $ 81.2 | $ 81.2 | $ 81.2 | $ 81.2 | $ 196.4 | $ 196.4 |

City's Ex 793-012

City of Detroit | Appendix 2a

Plan of Adjustment - 40 year projections
General Fund view
($ in millions)

| | Preliminary forecast | | | | Total |
| | 2014-2023 | 2024-2033 | 2034-2043 | 2044-2053 | 2014-2053 |
|---|---|---|---|---|---|
| **Operating revenues** | | | | | |
| Municipal income tax | $ 2,770.3 | $ 3,510.0 | $ 4,590.6 | $ 6,059.3 | $ 16,932.2 |
| State revenue sharing | 2,000.5 | 2,121.0 | 2,307.1 | 2,533.2 | 8,961.8 |
| Wagering taxes | 1,732.6 | 1,905.6 | 2,105.0 | 2,325.2 | 8,068.4 |
| Property taxes | 1,074.0 | 1,369.6 | 1,640.0 | 1,903.2 | 5,986.8 |
| Utility users' taxes | 257.2 | 304.3 | 353.2 | 409.9 | 1,324.6 |
| Other revenue | 2,622.7 | 2,794.8 | 2,647.0 | 3,200.0 | 10,764.5 |
| Departance revenue initiatives | 410.6 | 986.2 | 714.6 | 871.1 | 2,582.5 |
| Operating revenues | 10,867.8 | 12,991.6 | 14,357.4 | 17,301.9 | 54,618.7 |
| **Operating expenditures** | | | | | |
| Salaries/overtime/fringe (a) | (3,768.1) | (4,611.8) | (5,703.3) | (7,120.9) | (21,201.1) |
| Health benefits | (609.8) | (928.2) | (1,373.9) | (2,033.7) | (4,945.6) |
| OPEB payments - future retirees (a) | (32.2) | (37.0) | (61.2) | (51.1) | (143.4) |
| Active pension plan (a) | (247.9) | (443.6) | (547.4) | (683.4) | (2,022.6) |
| Other operating expenses (b) | (3,073.2) | (3,437.4) | (4,192.1) | (5,107.7) | (15,803.5) |
| Additional operating expenditures | (715.7) | (803.4) | (979.5) | (1,194.1) | (3,692.9) |
| Cost savings | 358.2 | 444.5 | 541.9 | 660.5 | 2,005.1 |
| Total operating expenditures | $ (8,188.7) $ | (9,816.8) $ | (12,293.0) $ | (15,530.3) $ | (45,828.9) |
| Net operating cash flows | $ 2,679.1 $ | 3,174.8 $ | 2,064.4 $ | 1,771.6 $ | 8,789.8 |
| **Financing cashflows** | | | | | |
| Secured debt service | $ (200.3) $ | (391.5) $ | (57.2) $ | - $ | (848.6) |
| Pension | (119.8) | (961.8) | (916.0) | (613.8) | (2,611.4) |
| Contributions to income stabilization fund | (17.8) | (2.2) | - | - | (20.0) |
| DWSD / other fund contributions for new notes | 52.9 | 83.0 | 65.5 | 18.9 | 221.2 |
| Note A1 (UTGO) | (127.6) | (60.2) | - | - | (348.5) |
| Note A2 (UTGO) | (55.0) | - | - | - | (55.0) |
| Note B (incl. B reserves) | (214.9) | (470.2) | (450.6) | (68.9) | (1,204.6) |
| 36DC cash payments | (2.2) | - | - | - | (2.2) |
| Note C (POC) | (99.8) | (29.9) | - | - | (119.7) |
| Total financing cashflows | $ (363.7) $ | (1,813.0) $ | (1,368.3) $ | (663.8) $ | (5,008.0) |
| Net cash flows available for capital investment | $ 1,515.3 $ | 461.7 $ | 696.1 $ | 1,107.8 $ | 3,781.0 |
| **Investment cashflows** | | | | | |
| Reorganization (Capital investments) | $ (582.2) $ | (442.7) $ | (501.4) $ | (605.3) $ | (2,131.5) |
| Blight (includes heavy commercial) | (420.0) | - | - | - | (420.0) |
| Hudson Hit funds & Plan escrow | 72.3 | - | - | - | 72.3 |
| PLD decentralization | (75.0) | - | - | - | (75.0) |
| Contingency | (98.9) | (120.9) | (140.6) | (173.0) | (536.4) |
| Reinvestment deferrals | 65.0 | 220.4 | (51.1) | (214.3) | - |
| Total investment cashflows | $ (1,038.7) $ | (343.2) $ | (694.1) $ | (992.6) $ | (3,090.6) |
| **Bankruptcy-related and other cashflows** | | | | | |
| QOL / exit financing principal/interest payments | $ (292.9) $ | (126.0) $ | - $ | - $ | (418.9) |
| QOL / exit financing proceeds (net) | 241.4 | 27.5 | - | - | 268.9 |
| Swap interest set-aside | (104.1) | - | - | - | (104.1) |
| OPEB payments - current retirees | (162.8) | - | - | - | (162.8) |
| Escrow proceeds (2012 refunding bonds) | 64.7 | - | - | - | 64.7 |
| Working capital | (0.8) | - | - | - | (0.8) |
| Restructuring professional fees (c) | (177.0) | - | - | - | (177.0) |
| Total bankruptcy cashflows | $ (431.4) $ | (98.5) $ | - $ | - $ | (530.0) |
| Surplus / (deficit) | $ 45.2 $ | 0.0 $ | (0.0) $ | 115.2 $ | 160.4 |
| Ending cash balance (a) | $ 81.2 $ | 81.2 $ | 81.2 $ | 196.4 $ | 196.4 |

*Footnotes:*
(a) Assumes pending DPOA & DFFA deals are cash flow neutral.
(b) The impact of the first decade increase in DDOT subsidy is assumed to be offset by operational savings beyond 2023.
(c) Any incremental professional fees are assumed to be funded by escrow account subject to State approval.

13 of 15 | 10/20/2014 6:12 PM

City's Ex 793-013

Plan of Adjustment - 10 year projections
General Fund view
($ in millions)

| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2014-2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Preliminary forecast | | | | | | |
| **Operating revenues** | | | | | | | | | | | |
| Municipal income tax | $ 247.9 | $ 256.2 | $ 262.3 | $ 268.3 | $ 274.0 | $ 279.9 | $ 286.0 | $ 292.2 | $ 298.5 | $ 304.9 | $ 2,770.3 |
| State revenue sharing | 191.2 | 196.6 | 198.7 | 200.3 | 202.0 | 203.8 | 205.6 | 199.1 | 200.8 | 202.5 | 2,000.5 |
| Wagering taxes | 169.9 | 182.2 | 169.0 | 169.9 | 171.4 | 173.3 | 175.0 | 176.8 | 178.6 | 180.3 | 1,732.6 |
| Property taxes | 114.9 | 102.6 | 100.8 | 102.4 | 102.6 | 103.9 | 106.8 | 109.7 | 113.3 | 117.0 | 1,074.0 |
| Utility users' taxes | 20.1 | 24.5 | 24.9 | 25.5 | 26.0 | 26.4 | 26.8 | 27.2 | 27.6 | 28.0 | 257.2 |
| Other revenue | 307.7 | 310.5 | 293.1 | 259.1 | 254.6 | 250.2 | 247.6 | 244.7 | 229.0 | 226.2 | 2,622.7 |
| Department revenue initiatives | - | 31.9 | 36.1 | 49.7 | 52.9 | 62.5 | 46.9 | 46.8 | 51.3 | 52.5 | 420.6 |
|    Operating revenues | 1,051.6 | 1,092.6 | 1,085.0 | 1,075.1 | 1,083.7 | 1,280.0 | 1,294.8 | 1,096.5 | 1,099.0 | 1,111.5 | 10,867.8 |
| **Operating expenditures** | | | | | | | | | | | |
| Salaries/overtime/fringe (a) | (531.0) | (532.2) | (544.8) | (563.4) | (572.5) | (581.8) | (589.4) | (597.1) | (604.8) | (612.9) | (5,768.1) |
| Health benefits | (49.2) | (48.0) | (52.4) | (53.9) | (60.0) | (63.6) | (64.1) | (68.7) | (71.5) | (74.3) | (605.8) |
| OPEB payments - future retirees (a) | - | (6.1) | (5.1) | (5.1) | (5.2) | (5.2) | (5.3) | (5.3) | (5.4) | (5.4) | (52.2) |
| Active pension plan (a) | - | (52.1) | (54.1) | (54.9) | (55.8) | (56.7) | (57.4) | (58.2) | (58.9) | (59.7) | (547.9) |
| Other operating expenses (b) | (291.3) | (320.1) | (326.9) | (303.5) | (304.8) | (022.0) | (022.2) | (025.3) | (309.4) | (310.3) | (3,075.2) |
| Additional operating expenditures | - | (88.9) | (82.3) | (82.7) | (83.6) | (78.3) | (78.7) | (75.0) | (76.1) | (71.9) | (715.7) |
| Cost savings | - | 11.3 | 37.0 | 42.8 | 43.0 | 45.3 | 45.7 | 41.7 | 41.6 | 39.8 | 358.2 |
|    Total operating expenditures | $ (571.5) | $ (549.2) | $ (526.3) | $ (501.0) | $ (511.8) | $ (820.3) | $ (831.5) | $ (844.0) | $ (860.5) | $ (872.8) | $ (8,150.7) |
| **Net operating cash flows** | $ 380.2 | $ 341.4 | $ 258.7 | $ 274.2 | $ 271.8 | $ 259.8 | $ 263.3 | $ 252.5 | $ 238.6 | $ 238.6 | $ 2,679.1 |
| **Financing cashflows** | | | | | | | | | | | |
| Secured debt service | $ (26.4) | $ (9.4) | $ (9.4) | $ (9.4) | $ (9.4) | $ (9.4) | $ (9.3) | $ (9.5) | $ (9.5) | $ (9.4) | $ (90.3) |
| Pension | - | (16.0) | (23.3) | (23.3) | (23.4) | (23.2) | (3.3) | (3.2) | (2.0) | (1.7) | (119.8) |
| Contributions to income stabilization fund | - | (2.3) | (2.3) | (2.3) | (2.2) | (2.1) | (2.1) | (0.0) | (0.3) | (1.1) | (17.8) |
| DWSD / other fund contributions for new notes | - | 0.8 | 5.7 | 6.3 | 4.9 | 4.7 | 8.6 | 7.9 | 7.8 | 7.7 | 53.9 |
| Note A1 (UTGO) | - | (43.8) | (41.5) | (41.5) | (40.5) | (38.4) | (37.8) | (37.1) | (24.1) | (22.8) | (327.6) |
| Note A2 (LTGO) | - | (55.0) | - | - | - | - | - | - | - | - | (55.0) |
| Note B (incl. B escrow) | - | (22.4) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (214.9) |
| MDC cash payments | - | (3.3) | (2.4) | (2.4) | (2.4) | (2.4) | - | - | - | - | (2.3) |
| Note C (POC) | - | (30.0) | (30.0) | (30.0) | (30.0) | (30.0) | (30.0) | (30.0) | (30.0) | (30.0) | (59.8) |
|    Total financing cashflows | $ (26.4) | $ (181.0) | $ (136.7) | $ (136.1) | $ (136.4) | $ (134.1) | $ (109.8) | $ (109.2) | $ (94.4) | $ (90.7) | $ (1,163.7) |
| **Net cash flows available for capital investments** | $ 344.7 | $ 60.3 | $ 122.3 | $ 138.0 | $ 135.5 | $ 125.7 | $ 153.5 | $ 143.3 | $ 144.2 | $ 148.0 | $ 1,515.3 |
| **Investment cashflows** | | | | | | | | | | | |
| Reorganization (Capital investments) | $ - | $ (139.5) | $ (106.4) | $ (63.6) | $ (50.2) | $ (43.6) | $ (51.9) | $ (46.0) | $ (40.4) | $ (38.6) | $ (582.2) |
| Blight (excludes heavy commercial) | - | (82.0) | (64.0) | (50.0) | (50.0) | (51.0) | (52.0) | (45.0) | (25.0) | (19.0) | (503.0) |
| Hardest Hit funds & Flex escrow | - | 63.3 | 9.0 | - | - | - | - | - | - | - | 72.3 |
| PLD decentralization | - | (2.3) | (5.0) | (15.0) | (10.0) | (10.0) | (10.0) | (12.5) | (10.0) | - | (75.0) |
| Contingency | - | (11.5) | (10.9) | (10.0) | (10.0) | (10.0) | (10.9) | (11.0) | (11.0) | (1.1) | (98.9) |
| Reinvestment deferrals | - | - | 25.4 | 15.2 | (2.7) | 1.5 | 7.4 | 35.3 | 3.6 | (20.3) | 48.0 |
|    Total investment cashflows | $ - | $ (172.2) | $ (134.0) | $ (126.2) | $ (122.7) | $ (113.9) | $ (117.4) | $ (79.2) | $ (59.6) | $ (69.3) | $ (1,038.7) |
| **Bankruptcy-related and other cashflows** | | | | | | | | | | | |
| QOL / exit financing principal/interest payments | $ (0.7) | $ (10.3) | $ (15.8) | $ (15.8) | $ (15.8) | $ (15.8) | $ (39.8) | $ (82.4) | $ (59.6) | $ (66.9) | $ (292.9) |
| QOL / exit financing proceeds (net) | - | 277.7 | 23.7 | - | - | - | - | - | - | - | 241.4 |
| Swap interest set-aside | (45.9) | (58.2) | - | - | - | - | - | - | - | - | (104.1) |
| OPEB payments - current retirees | (143.7) | (19.0) | - | - | - | - | - | - | - | - | (162.8) |
| Escrow proceeds (2012 refunding bonds) | - | 64.7 | - | - | - | - | - | - | - | - | 64.7 |
| Working capital | 13.4 | (34.2) | 4.0 | 4.0 | 4.0 | 4.0 | 4.0 | - | - | - | (0.8) |
| Restructuring professional fees (c) | (49.4) | (127.6) | - | - | - | - | - | - | - | - | (177.0) |
|    Total bankruptcy cashflows | $ (226.3) | $ 33.1 | $ 11.9 | $ (11.8) | $ (11.8) | $ (11.8) | $ (35.8) | $ (82.4) | $ (59.6) | $ (66.9) | $ (431.4) |
| **Surplus / (deficit)** | $ 128.4 | $ (78.8) | $ (0.0) | $ - | $ 0.0 | $ (0.0) | $ 0.3 | $ 1.7 | $ 1.7 | $ 1.8 | $ 45.2 |
| **Ending cash balance (a)** | $ 154.4 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.9 | $ 77.6 | $ 79.4 | $ 81.2 | $ 45.2 |

Footnotes:
(a) Assumes pending DPOA & DFFA deals are cash flow neutral.
(b) The impact of the first decade increase in DDOT subsidy is assumed to be offset by operational savings beyond 2023.
(c) Any incremental professional fees are assumed to be funded by escrow account subject to State approval.

14 of 15

10/20/2014 6:12 PM

City's Ex 793-014

This page intentionally left blank

City's Ex 793-015

# EXHIBIT 18

# Changes in Pension Terms Under the Plan

Admitted Sept. 29, 2014

| | GRS | PFRS |
|---|---|---|
| **Assumed Rate of Return** | | |
| Pre-petition (June 2013) | 7.9% | 8.0% |
| POA | 6.75% | 6.75% |
| **UAAL** | | |
| Pre-petition (June 2013) | $1,879M | $1,250M |
| POA | $894M | $553M |
| Target 2023 | $695M | $681M |
| **Funding Status** | | |
| Pre-petition (June 2013) | 53% | 71% |
| Target 2023 | 70% ✓ | 78% |
| Target 2053 ✓ | 100% ✓ | 100% ✓ |
| **POA Liability Reduction** | Yes | Yes |
| Plan Freeze | 4.5% | None |
| Monthly Pension Reduction | Eliminated | Reduced by 55% |
| COLA | Equivalent to 8.8% reduction in liability | N/A |
| ASF Recoupment | | |
| **Future Contributions** | | |
| Through 2023 | $719M | $261M |
| 2024-2053 ✓ | $1,422M ✓ | $1,393M ✓ |
| Total | $2,141M | $1,654M |

EXHIBIT
Ex 8.18

CITY'S
Exhibit
723

# EXHIBIT 19

Plan of Adjustment - 40 year projections

# City of Detroit
Plan of Adjustment - 40 year projections



EXHIBIT
Σx.19

(Trial ex. 111)

The attached Plan of Adjustment preliminary forecast (the "POA Financial Projections"), its assumptions and underlying data are the product of the Client and its management ("Management") and consist of information obtained solely from the Client. With respect to prospective financial information relative to the Client, Ernst & Young LLP ("EY") did not examine, compile or apply agreed upon procedures to such information in accordance with attestation standards established by the AICPA and EY expresses no assurance of any kind on the information presented. It is the Client's responsibility to make its own decision based on the information available to it. Management has the knowledge, experience and ability to form its own conclusions related to the Client's POA Financial Projections. There will usually be differences between forecasted and actual results because events and circumstances frequently do not occur as expected and those differences may be material. EY takes no responsibility for the achievement of forecasted results. Accordingly, reliance on this report is prohibited by any third party as the projected financial information contained herein is subject to material change and may not reflect actual results.



CITY'S
EXHIBIT
111

1 of 9

POA00706603

City's Ex 111



**Plan of Adjustment - 40 year projections**
**Assumptions**
*($ in millions)*

| Plan of Adjustment - 40 year projections | | |
|---|---|---|
| General Fund Cash Flows | GF 40yr cash flows | $4.3b funds available for unsecured claims |
| | DIP financing | Quality of Life ($120m @ 3.5% assumed to be refinanced as part of exit facility) |
| | Exit financing | $300m note @ 6.0% maturing in FY26 |
| | Swap treatment | $85m settlement |
| | Contingency | Reflects 1.0% of total revenues |
| Revenue stream from DWSD | Pension | $429m for pension in the first 10 years |
| | OPEB | 12.1% of OPEB - current retirees payments |
| | POC | 11.5% of total POC payments |
| Reimbursement from other funds | Reimbursements from Parking (non-GF) and Library | |
| Hypothetical art proceeds (a) | Foundations | $366m over 20 years |
| | DIA | $100m over 20 years |
| Hypothetical State settlement (a) | Contributions to pension | $195m in FY15 |
| Hypothetical claims treatment | | |
|   PFRS | | |
|     Pension | Contributions (years 1-10) | Estimated to be $261m from foundations / State settlement |
| | Contributions (years 11-40) | UAAL as of June 30, 2023 estimated to be ~$681m (b) amortized over 30yr, including contributions in second decade from DIA and foundations |
| | Discount rate | 6.75% |
| | Targeted funded status as of 2023 | 78% |
|   GRS | | |
|     Pension | Contributions (years 1-10) | Estimated to be $99m from State settlement; $429m from DWSD; $45m from DIA; $146m from GF & other funds |
| | Contributions (years 11-40) | UAAL as of June 30, 2023 estimated to be ~$695m (b) amortized over 30yr, including contributions in second decade from DIA and foundations |
| | Discount rate | 6.75% |
| | Targeted funded status as of 2023 | 70% |
|   UTGO | Hypothetical Note A1 | $287.5m note funded with pass-through UTGO millage |
|   LTGO | Hypothetical Note A2 | $55m settlement note |
|   Other unsecured | Hypothetical Notes B | $632m note paid over 30 years - $450m OPEB, $162m POC, $4m notes/loans and $16m other |

*Footnotes:*

(a) Hypothetical art and State settlement proceeds are subject to a consensual agreement with respect to the treatment of pension-related claims.

(b) Estimated pension contributions to retirement systems and unfunded pension liabilities as of June 30, 2023 are subject to change.

POA00706604

City's Ex 111-002



**Plan of Adjustment - 40 year projections**
**Recovery summary**
*($ in millions)*

## 10 Years

| Creditor | Claim | State settlement | Art proceeds | Cash | Notes A1 (UTGO) | Notes A2 (LTGO) | Notes B | 10 year $ |
|---|---|---|---|---|---|---|---|---|
| PFRS pension | $1,250 | $96 | $165 | | | | | $261 |
| GRS pension | $1,879 | $99 | $45 | $575 | | | | $719 |
| PFRS OPEB | $2,208 | | | $9 | | | $79 | $88 |
| GRS OPEB | $2,095 | | | $11 | | | $74 | $85 |
| UTGO | $388 | | | | $328 | | | $328 |
| LTGO | $164 | | | | | $55 | | $55 |
| POC | $1,473 | | | | | | $55 | $55 |
| Notes/loans payable | $34 | | | | | | $1 | $1 |
| Other unsecured items | $150 | | | | | | $6 | $6 |
| | $9,640 | $195 | $210 | $595 | $328 | $55 | $215 | $1,597 |

## 40 Years

| Creditor | Claim | State settlement | Art proceeds | Cash | Notes A1 (UTGO) | Notes A2 (LTGO) | Notes B | Illustrative Recoveries $ | Illustrative Recoveries $ PV (a) | Illustrative Recoveries % | | Adjusted % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PFRS pension | $1,250 | $96 | $233 | $1,325 | | | | $1,654 | $735 | 59% | Excludes State, Foundation, and DIA proceeds | 39% |
| GRS pension | $1,879 | $99 | $233 | $1,809 | | | | $2,141 | $1,118 | 60% | | 48% |
| PFRS OPEB | $2,208 | | | $9 | | | $443 | $452 | $212 | 10% | | |
| GRS OPEB | $2,095 | | | $11 | | | $415 | $426 | $201 | 10% | | |
| UTGO | $388 | | | | $368 | | | $368 | $288 | 74% | | |
| LTGO | $164 | | | | | $55 | | $55 | $52 | 32% | | |
| POC | $1,473 | | | | | | $308 | $308 | $141 | 10% | | |
| Notes/loans payable | $34 | | | | | | $7 | $7 | $3 | 10% | | |
| Other unsecured items | $150 | | | | | | $31 | $31 | $14 | 10% | | |
| | $9,640 | $195 | $466 | $3,154 | $368 | $55 | $1,205 | $5,443 | $2,767 | 29% | | |

### Description of Hypothetical notes

| Note | Face value | Interest rate | Recipients | Term | Comments |
|---|---|---|---|---|---|
| Note A1 | $287.5 | n/a | UTGO | 14 years | Represents ~87% of UTGO scheduled debt service |
| Note A2 | $55.0 | n/a | LTGO | n/a | Paid in full with proceeds from exit financing |
| Note B | $632.0 | 4%, 4%, 6% | OPEB, POC, Notes & Other unsec. | 30 years | 10 yrs interest only, and straight-line amortization thereafter |

*Footnotes:*
(a) Present value amounts calculated assuming 5% discount rate

POA00706605

City's Ex 111-003



**Plan of Adjustment - 40 year projections**
Preliminary forecast and distributions
*($ in millions)*

| | Growth after FY23 | 2014-2023 | 2024-2033 | 2034-2043 | 2044-2053 | 40-year total |
|---|---|---|---|---|---|---|
| **Revenues** | | | | | | |
| Municipal income tax | 2.4% - 2.8% | $ 2,770.2 | $ 3,510.0 | $ 4,590.6 | $ 6,059.3 | $ 16,930.1 |
| State revenue sharing | 0.1% - 1.7% | 2,000.5 | 2,121.0 | 2,307.1 | 2,533.2 | 8,961.8 |
| Wagering taxes | 1.0% | 1,732.6 | 1,905.6 | 2,105.0 | 2,325.2 | 8,068.4 |
| Property taxes | 1.5% - 2.2% | 1,074.0 | 1,369.6 | 1,640.0 | 1,903.2 | 5,986.8 |
| Utility users' taxes | 1.5% - 1.7% | 257.2 | 304.3 | 353.2 | 409.9 | 1,324.6 |
| Sales and charges for services | 2.0% | 1,118.0 | 1,161.2 | 1,415.5 | 1,725.5 | 5,420.2 |
| Other revenue | 2.0% | 712.8 | 753.5 | 918.5 | 1,119.7 | 3,504.5 |
| General Fund reimbursements | 2.0% | 264.1 | 238.8 | 291.1 | 354.9 | 1,149.0 |
| Transfers in for UTGO | n/a | 532.8 | 147.6 | 22.1 | - | 702.4 |
| Restructuring: | | | | | | |
|   Department revenue initiatives | 2.0% | 482.9 | 586.2 | 714.6 | 871.1 | 2,654.8 |
|   QOL / exit financing proceeds (net) | n/a | 292.7 | - | - | - | 292.7 |
|     **Total revenues** | | 11,237.8 | 12,097.9 | 14,357.6 | 17,301.9 | 54,995.2 |
| **Expenditures** | | | | | | |
| Salaries/overtime/fringe - Public Safety (a) | 2.0% - 2.25% | (2,864.3) | (3,524.5) | (4,356.5) | (5,442.1) | (16,187.4) |
| Salaries/overtime/fringe - Non-Public Safety | 2.0% - 2.25% | (903.8) | (1,087.2) | (1,343.9) | (1,678.8) | (5,013.7) |
| Health benefits (b) | ~4% inflation cap beg. FY20 | (752.6) | (928.2) | (1,373.9) | (2,033.7) | (5,088.4) |
| OPEB payments - future retirees (a) | $1m per year uniform / 2% of wages non-uniform | (32.2) | (37.0) | (43.2) | (51.1) | (163.4) |
| Active pension plan (a) | 12.25% uniform / 5.75% non-uniform | (347.9) | (443.6) | (547.8) | (683.4) | (2,022.6) |
| Other operating expenses (c) | 2.0% | (5,073.2) | (3,437.4) | (4,190.1) | (5,107.7) | (15,808.5) |
| Restructuring: | | | | | | |
|   Additional operating expenditures | 2.0% | (357.5) | (359.1) | (437.7) | (533.5) | (1,687.7) |
|   Working capital | n/a | (24.8) | - | - | - | (24.8) |
|   Secured debt service | n/a | (390.5) | (591.0) | (67.2) | - | (648.6) |
|   Contributions to income stabilization fund | n/a | (17.8) | (2.2) | - | - | (20.0) |
|   Swap interest set-aside | n/a | (103.7) | - | - | - | (103.7) |
|   QOL / exit financing principal/interest payments | n/a | (335.8) | (110.3) | - | - | (446.1) |
|   Reorganization (Capital investments) | 2.0% | (582.2) | (442.7) | (501.4) | (605.3) | (2,131.5) |
|   Restructuring professional fees (d) | n/a | (130.0) | - | - | - | (130.0) |
|   Blight (excludes heavy commercial) | n/a | (420.0) | - | - | - | (420.0) |
|   PLD decommission | n/a | (75.0) | - | - | - | (75.0) |
| Contingency | n/a | (101.3) | (121.0) | (143.6) | (173.0) | (538.8) |
| Reinvestment deferrals | n/a | 29.8 | 222.9 | (10.9) | (241.8) | - |
|     **Total expenditures** | | (10,482.8) | (10,661.1) | (13,016.1) | (16,550.4) | (50,710.3) |
| **Funds available for unsecured claims** | | $ 735.0 | $ 1,436.8 | $ 1,341.6 | $ 751.5 | $ 4,284.9 |

*Footnotes:*

(a) Assumes DPOA & DFFA deals consistent with that of DPLSA.

(b) Health benefits include $142.8m of OPEB payments for current retirees in FY 2014 ($123.8m) and FY 2015 ($19m).

(c) The impact of the first decade increase in DDOT subsidy is assumed to be offset by operational savings beyond 2023.

(d) Any incremental professional fees are assumed to be funded by escrow account subject to State approval.

POA00706606

City's Ex 111-004



Plan of Adjustment - 40 year projections
Preliminary forecast and distributions
($ in millions)

| | | 2014-2023 | | 2024-2033 | | 2034-2043 | | 2044-2053 | | 40-year total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Sources** | | | | | | | | | | |
| Funds available for unsecured claims | $ | 755.0 | $ | 1,436.8 | $ | 1,341.6 | $ | 751.5 | $ | 4,284.9 |
| Revenue stream from DWSD - no transaction | | | | | | | | | | |
| Pension | | 428.5 | | - | | - | | - | | 428.5 |
| OPEB (based on 12.1% of OPEB - current retirees payments) | | 19.9 | | 40.4 | | 38.7 | | 5.9 | | 105.0 |
| POC (based on 11.5% of total POC payments) | | 6.4 | | 13.9 | | 13.3 | | 2.0 | | 35.6 |
| Sub-total: Revenue stream from DWSD | | 454.8 | | 54.3 | | 52.1 | | 8.0 | | 569.1 |
| Reimbursement from other funds | | 27.6 | | 32.8 | | 25.2 | | 15.5 | | 101.2 |
| Hypothetical art proceeds | | | | | | | | | | |
| Foundation fundraising | | 164.7 | | 201.3 | | - | | - | | 366.0 |
| DIA contributions | | 45.0 | | 55.0 | | - | | - | | 100.0 |
| State settlement | | 194.8 | | - | | - | | - | | 194.8 |
| **Total hypothetical sources** | $ | 1,641.9 | $ | 1,780.2 | $ | 1,418.9 | $ | 775.0 | $ | 5,616.0 |
| **Uses** | | | | | | | | | | |
| Hypothetical retiree payments | | | | | | | | | | |
| PFRS pension payments | | (260.7) | | (617.7) | | (464.5) | | (311.3) | | (1,654.2) |
| GRS pension payments | | (718.6) | | (630.4) | | (474.0) | | (317.7) | | (2,140.7) |
| PFRS OPEB payments - current retirees | | (9.1) | | - | | - | | - | | (9.1) |
| GRS OPEB payments - current retirees | | (10.9) | | - | | - | | - | | (10.9) |
| Subtotal: hypothetical retiree distributions | | (999.3) | | (1,248.1) | | (938.5) | | (628.9) | | (3,814.9) |
| Hypothetical notes | | | | | | | | | | |
| Note A1 (UTGO) | | (327.5) | | (40.8) | | - | | - | | (368.4) |
| Note A2 (LTGO) | | (55.0) | | - | | - | | - | | (55.0) |
| Note B ($632m - 10yr Interest only) | | (214.9) | | (470.2) | | (450.6) | | (68.9) | | (1,204.6) |
| Subtotal: hypothetical notes | | (597.4) | | (511.1) | | (450.6) | | (68.9) | | (1,628.0) |
| **Total hypothetical distributions / total uses** | $ | (1,596.7) | $ | (1,759.2) | $ | (1,389.2) | $ | (697.8) | $ | (5,442.9) |
| Surplus / (deficit) | $ | 45.2 | $ | 21.0 | $ | 29.7 | $ | 77.2 | $ | 173.1 |
| Ending cash balance | $ | 81.2 | $ | 102.2 | $ | 131.9 | $ | 209.1 | $ | 209.1 |

POA00706607

City's Ex 111-005



**Plan of Adjustment - 40 year projections**
**Preliminary forecast and distributions**
*($ in millions)*

| | | 2014-2023 | 2024-2033 | 2034-2043 | 2044-2053 | 40-year total |
|---|---|---|---|---|---|---|
| **Total distributions to creditors** | | | | | | |
| PFRS pension (c) | $ | (260.7) $ | (617.7) $ | (464.5) $ | (311.3) | $ (1,654.2) |
| GRS pension (c) | | (718.6) | (630.4) | (474.0) | (317.7) | (2,140.7) |
| PFRS OPEB | | (9.1) | - | - | - | (9.1) |
| GRS OPEB | | (10.9) | - | - | - | (10.9) |
| UTGO (Note A1) | | (327.5) | (40.8) | - | - | (368.4) |
| LTGO (Note A2) | | (55.0) | - | - | - | (55.0) |
| **Note B** | | | | | | |
| PFRS OPEB | | (78.9) | (172.7) | (165.5) | (25.3) | (442.5) |
| GRS OPEB | | (74.1) | (162.1) | (155.3) | (23.7) | (415.2) |
| POC | | (55.0) | (120.4) | (115.4) | (17.6) | (308.5) |
| Notes/loans payable | | (1.3) | (2.7) | (2.6) | (0.4) | (7.0) |
| Other unsecured items | | (5.6) | (12.3) | (11.8) | (1.8) | (31.4) |
| Total hypothetical distributions to unsecured creditors | | (1,596.7) | (1,759.2) | (1,389.2) | (697.8) | (5,442.9) |
| Total secured debt service (including QOL/Exit financing) | | (726.3) | (501.3) | (67.2) | - | (1,294.7) |
| **Total distributions to creditors** | $ | (2,323.0) $ | (2,260.5) $ | (1,456.3) $ | (697.8) | $ (6,737.7) |
| Percentage of total revenues (including other sources) | | 19.2% | 18.2% | 10.1% | 4.0% | 12.0% |

---

| | Claims (a) | | 40 years | | | |
|---|---|---|---|---|---|---|
| | $ in millions | % | Nominal (b) | % | PV @ 5.0% (b) | % |
| PFRS pension (c) | 1,250.0 | 13% | 1,325.2 | 106% | 481.8 | 39% |
| GRS pension (c) | 1,879.0 | 19% | 1,808.9 | 96% | 895.5 | 48% |
| PFRS OPEB | 2,207.8 | 23% | 451.7 | 20% | 212.1 | 10% |
| GRS OPEB | 2,095.2 | 22% | 426.0 | 20% | 201.3 | 10% |
| Sub-total: Pension and OPEB | 7,432.1 | 77% | 4,011.8 | 54% | 1,790.6 | 24% |
| UTGO (Note A1) | 387.9 | 4% | 368.4 | 95% | 288.4 | 74% |
| LTGO (Note A2) | 163.5 | 2% | 55.0 | 34% | 52.4 | 32% |
| **Notes B (excl. OPEB)** | | | | | | |
| POC | 1,472.9 | 15% | 308.5 | 21% | 141.5 | 10% |
| Notes/loans payable | 33.6 | 0% | 7.0 | 21% | 3.2 | 10% |
| Other unsecured items | 150.0 | 2% | 31.4 | 21% | 14.4 | 10% |
| Sub-total: Note B (excl. OPEB) | 1,656.5 | 17% | 346.9 | 21% | 159.1 | 10% |
| Total | $ 9,640.0 | 100% | $ 4,782.1 | 50% | $ 2,290.5 | 24% |

*Footnotes:*
(a) Subject to ongoing legal review/negotiation. Final allowed claim amounts under these categories may be materially different.
(b) Nominal pension system payments have each been adjusted by $661m for PFRS and GRS combined (State settlement & art proceeds) for the calculation of recoveries.
(c) Retirement system pension claims based on actuarial valuation as of June 30, 2013.

POA00706608

City's Ex 111-006

Plan of Adjustment - 40 year projections
Preliminary forecast and distributions

| ($ in millions) | | | | | Preliminary forecast | | | | | | 2014-2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | |
| **Revenues** | | | | | | | | | | | |
| Municipal income tax | $ 247.9 | $ 256.2 | $ 262.3 | $ 268.3 | $ 274.0 | $ 279.9 | $ 286.0 | $ 292.2 | $ 298.5 | $ 304.9 | $ 2,770.2 |
| State revenue sharing | 191.2 | 196.6 | 198.7 | 200.3 | 202.0 | 203.8 | 205.6 | 199.1 | 200.8 | 202.5 | 2,000.5 |
| Wagering taxes | 169.9 | 168.2 | 169.0 | 169.9 | 171.6 | 173.3 | 175.0 | 176.8 | 178.6 | 180.3 | 1,732.6 |
| Property taxes | 114.9 | 102.6 | 100.8 | 102.4 | 102.6 | 103.9 | 106.8 | 109.7 | 113.3 | 117.0 | 1,074.0 |
| Utility users' taxes | 20.1 | 24.5 | 24.9 | 25.5 | 26.0 | 26.4 | 26.8 | 27.2 | 27.6 | 28.0 | 257.2 |
| Sales and charges for services | 131.5 | 118.0 | 115.8 | 113.6 | 111.4 | 109.2 | 107.0 | 104.4 | 103.3 | 104.0 | 1,118.0 |
| Other revenue | 79.8 | 86.6 | 78.7 | 67.3 | 66.0 | 66.3 | 66.6 | 66.9 | 67.2 | 67.5 | 712.8 |
| General Fund reimbursements | 29.8 | 42.9 | 41.7 | 21.4 | 21.4 | 21.4 | 21.4 | 21.4 | 21.4 | 21.4 | 264.1 |
| Transfers in for UTGO | 66.5 | 62.6 | 57.7 | 57.6 | 56.5 | 54.1 | 53.4 | 52.7 | 37.7 | 33.9 | 532.8 |
| Restructuring: | | | | | | | | | | | |
|   Department revenue initiatives | | 7.2 | 88.0 | 45.1 | 49.7 | 52.9 | 42.5 | 46.9 | 46.8 | 51.3 | 52.5 | 482.9 |
|   QOL / exit financing proceeds (net) | 52.5 | 199.4 | 40.8 | - | - | - | - | - | - | - | 292.7 |
|     Total revenues | 1,111.3 | 1,345.6 | 1,135.6 | 1,075.9 | 1,084.4 | 1,080.8 | 1,095.5 | 1,097.1 | 1,099.6 | 1,112.0 | 11,237.8 |
| **Expenditures** | | | | | | | | | | | |
| Salaries/overtime/fringe - Public Safety (a) | (245.2) | (263.3) | (276.7) | (277.5) | (284.4) | (291.5) | (297.4) | (303.3) | (309.4) | (315.6) | (2,864.3) |
| Salaries/overtime/fringe - Non-Public Safety | (85.7) | (86.9) | (88.1) | (86.1) | (88.0) | (90.2) | (92.0) | (93.8) | (95.4) | (97.3) | (903.8) |
| Health benefits (b) | (173.0) | (67.1) | (52.4) | (55.9) | (60.0) | (63.6) | (66.1) | (68.7) | (71.5) | (74.3) | (752.6) |
| OPEB payments - future retirees (a) | (3.0) | (3.1) | (3.1) | (3.1) | (3.2) | (3.2) | (3.3) | (3.3) | (3.4) | (3.4) | (32.2) |
| Active pension plan (a) | (18.8) | (33.3) | (34.1) | (34.9) | (35.8) | (36.7) | (37.4) | (38.2) | (38.9) | (39.7) | (347.9) |
| Other operating expenses (c) | (291.3) | (320.1) | (326.5) | (303.5) | (304.8) | (302.0) | (302.2) | (303.3) | (309.4) | (310.3) | (3,073.2) |
| Restructuring: | | | | | | | | | | | |
|   Additional operating expenditures | (8.0) | (64.6) | (45.3) | (39.9) | (35.6) | (33.0) | (33.0) | (33.3) | (32.5) | (32.1) | (357.5) |
|   Working capital | (39.8) | 15.0 | - | - | - | - | - | - | - | - | (24.8) |
|   Secured debt service | (35.4) | (39.4) | (39.4) | (39.4) | (39.4) | (39.4) | (39.5) | (39.5) | (39.5) | (39.6) | (390.5) |
|   Contributions to income stabilization fund | - | (2.5) | (2.3) | (2.3) | (2.2) | (2.1) | (2.1) | (2.0) | (1.3) | (1.1) | (17.8) |
|   Swap interest set-aside | (45.9) | (57.8) | - | - | - | - | - | - | - | - | (103.7) |
|   QOL / exit financing principal/interest payments | (0.7) | (13.4) | (18.0) | (18.0) | (18.0) | (46.6) | (59.1) | (56.6) | (54.0) | (51.4) | (335.8) |
|   Reorganization (Capital investments) | (20.6) | (118.9) | (106.4) | (65.6) | (50.2) | (43.6) | (51.9) | (46.0) | (40.4) | (38.6) | (582.2) |
|   Restructuring professional fees (d) | (82.2) | (47.8) | - | - | - | - | - | - | - | - | (130.0) |
|   Blight (excludes heavy commercial) | (2.0) | (100.0) | (46.0) | (40.0) | (43.0) | (48.0) | (52.0) | (45.0) | (25.0) | (19.0) | (420.0) |
|   PLD decommission | - | (2.5) | (5.0) | (15.0) | (10.0) | (10.0) | (10.0) | (12.5) | (10.0) | - | (75.0) |
|   Contingency | - | (13.5) | (11.4) | (10.8) | (10.8) | (10.8) | (11.0) | (11.0) | (11.0) | (11.1) | (101.3) |
|   Reinvestment deferrals | - | - | 6.4 | 3.4 | (9.8) | 23.8 | 24.7 | 22.0 | (8.9) | (31.8) | 29.8 |
|     Total expenditures | (1,051.7) | (1,219.1) | (1,048.3) | (988.6) | (995.2) | (997.0) | (1,032.3) | (1,034.6) | (1,050.5) | (1,065.5) | (10,482.8) |
| **Funds available for unsecured claims** | $ 59.6 | $ 126.5 | $ 87.3 | $ 87.2 | $ 89.2 | $ 83.8 | $ 63.3 | $ 62.6 | $ 49.0 | $ 46.5 | $ 755.0 |

*Footnotes*
(a) Assumes DPOA & DFFA deals are consistent with that of DPLSA.
(b) Health benefits include $142.8m of OPEB payments for current retirees in FY 2014 ($123.8m) and FY 2015 ($19m).
(c) The impact of the first decade increase in DDOT subsidy is assumed to be offset by operational savings beyond 2023.
(d) Any incremental professional fees are assumed to be funded by escrow account subject to State approval.

POA00706609

City's Ex 111-007



Plan of Adjustment - 40 year projections
Preliminary forecast and distributions
($ in millions)

| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2014-2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sources** | | | | | | | | | | | |
| Funds available for unsecured claims | $ 59.6 | $ 126.5 | $ 87.3 | $ 87.2 | $ 89.2 | $ 83.8 | $ 63.3 | $ 62.6 | $ 49.0 | $ 46.5 | $ 755.0 |
| Revenue stream from DWSD - no transaction | | | | | | | | | | | |
| Pension | - | 65.4 | 45.4 | 45.4 | 45.4 | 45.4 | 45.4 | 45.4 | 45.4 | 45.4 | 428.5 |
| OPEB (based on 12.1% of OPEB - current retirees payments) | - | 2.5 | 2.2 | 2.2 | 2.2 | 2.2 | 2.2 | 2.2 | 2.2 | 2.2 | 19.9 |
| POC (based on 11.5% of total POC payments) | - | 0.4 | 0.7 | 0.7 | 0.7 | 0.7 | 0.7 | 0.7 | 0.7 | 0.7 | 6.4 |
| Sub-total: Revenue stream from DWSD | - | 68.3 | 48.3 | 48.3 | 48.3 | 48.3 | 48.3 | 48.3 | 48.3 | 48.3 | 454.8 |
| Reimbursement from other funds | | 3.1 | 3.1 | 3.1 | 3.1 | 3.1 | 3.0 | 3.0 | 3.0 | 3.0 | 27.6 |
| Hypothetical art proceeds | | | | | | | | | | | |
| Foundation fundraising | - | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 164.7 |
| DIA contributions | - | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 45.0 |
| State settlement | - | 194.8 | - | - | - | - | - | - | - | - | 194.8 |
| Total hypothetical sources | $ 59.6 | $ 416.0 | $ 162.0 | $ 162.0 | $ 164.0 | $ 158.6 | $ 137.9 | $ 137.2 | $ 123.6 | $ 121.1 | $ 1,641.9 |
| **Uses** | | | | | | | | | | | |
| Hypothetical retiree payments | | | | | | | | | | | |
| PFRS pension payments | - | (114.3) | (18.3) | (18.3) | (18.3) | (18.3) | (18.3) | (18.3) | (18.3) | (18.3) | (260.7) |
| GRS pension payments | - | (188.2) | (76.9) | (76.9) | (76.8) | (76.6) | (56.5) | (56.5) | (55.2) | (54.9) | (718.6) |
| PFRS OPEB payments - current retirees | (9.1) | - | - | - | - | - | - | - | - | - | (9.1) |
| GRS OPEB payments - current retirees | (10.9) | - | - | - | - | - | - | - | - | - | (10.9) |
| Subtotal: hypothetical retiree distributions | (20.0) | (302.5) | (95.2) | (95.2) | (95.1) | (94.9) | (74.8) | (74.8) | (73.5) | (73.2) | (999.3) |
| Hypothetical notes | | | | | | | | | | | |
| Note A1 (UTGO) | - | (45.8) | (41.5) | (41.5) | (40.5) | (38.4) | (37.8) | (37.1) | (24.1) | (20.8) | (327.5) |
| Note A2 (LTGO) | - | (55.0) | - | - | - | - | - | - | - | - | (55.0) |
| Note B (3632m - 10yr Interest only) | - | (12.6) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (214.9) |
| Subtotal: hypothetical notes | - | (113.4) | (66.8) | (66.8) | (65.8) | (63.7) | (63.0) | (62.4) | (49.4) | (46.1) | (597.4) |
| Total hypothetical distributions / total uses | $ (20.0) | $ (416.0) | $ (162.0) | $ (162.0) | $ (160.9) | $ (158.6) | $ (137.9) | $ (137.2) | $ (122.9) | $ (119.3) | $ (1,596.7) |
| Surplus / (deficit) | $ 39.6 | $ 0.0 | $ - | $ - | $ 3.1 | $ - | $ - | $ - | $ 0.7 | $ 1.8 | $ 45.2 |
| Ending cash balance | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 78.7 | $ 78.7 | $ 78.7 | $ 78.7 | $ 79.4 | $ 81.2 | $ 81.2 |

POA00706610

City's Ex 111-008

⑧

# EXHIBIT 20

# City of Detroit
## Plan of Adjustment - 40 year projections

The attached Plan of Adjustment preliminary forecast (the "POA Financial Projections"), its assumptions and underlying data are the product of the Client and its management ("Management") and consist of information obtained solely from the Client. With respect to prospective financial information relative to the Client, Ernst & Young LLP ("EY") did not examine, compile or apply agreed upon procedures to such information in accordance with attestation standards established by the AICPA and EY expresses no assurance of any kind on the information presented. It is the Client's responsibility to make its own decision based on the information available to it. Management has the knowledge, experience and ability to form its own conclusions related to the Client's POA Financial Projections. There will usually be differences between forecasted and actual results because events and circumstances frequently do not occur as expected and those differences may be material. EY takes no responsibility for the achievement of forecasted results. Accordingly, reliance on this report is prohibited by any third party as the projected financial information contained herein is subject to material change and may not reflect actual results.



(Trial Ex. 734)

EXHIBIT
Ex. 20



CITY'S
Exhibit
734

Admitted Sept. 29, 2014, projection of Sept. 2014

9/25/2014 8:28 AM

POA00752751

**Plan of Adjustment - 40 year projections**

**Assumptions**

*($ in millions)*

| Plan of Adjustment - 40 year projections | | |
|---|---|---|
| General Fund Cash Flows | GF 40yr cash flows | $4.3b funds available for unsecured claims |
| | Minimum cash requirement | Based on 2 months of payroll through FY23 and the 5% cash reserve thereafter |
| | DIP financing | Quality of Life ($120m @ 3.5% assumed to be refinanced as part of exit facility) |
| | Exit financing | $160.0m tax exempt note @ 5.75% maturing in FY30 |
| | | $115.0m taxable note @ 5.75% maturing in FY24 |
| | Swap treatment | $85m settlement |
| | Contingency | Reflects 1.0% of total revenues |
| Revenue stream from DWSD | Pension | $429m for pension in the first 10 years |
| | OPEB | 12.1% of OPEB - current retirees payments |
| | POC | 11.5% of total POC payments |
| Reimbursement from other funds | Reimbursements from Parking (non-GF) and Library | |
| DIA settlement | Foundations | $366m over 20 years |
| | DIA | $100m over 20 years |
| State settlement | Contributions to pension | $195m in FY15 |
| Unsecured Claims treatment | | |
|   LTGO (Class 7) | Note A2 and Note B reserves | $55m settlement note and $4.2m Note B reserves |
|   UTGO (Class 8) | Note A1 | $288m note funded with pass-through UTGO millage |
|   POC (Class 9) - Syncora | Notes C and B | $21m of Note C and $23.5m of Note B |
|   POC (Class 9) - FGIC | Notes B reserves | $122.9m of Note B reserves |
|   PFRS Pension (Class 10) | *State and DIA Settlements* | |
| | Contributions (years 1-10) | Estimated to be $261m from foundations / State settlement |
| | Contributions (years 11-40) | UAAL as of June 30, 2023 estimated to be ~$681m amortized over 30yr, including contributions in second decade from DIA and foundations |
| | Discount rate | 6.75% |
| | Targeted funded status as of 2023 | 78% |
|   GRS Pension (Class 11) | *State and DIA Settlements* | |
| | Contributions (years 1-10) | Estimated to be $99m from State settlement; $429m from DWSD; $45m from DIA; $146m from GF & other funds |
| | Contributions (years 11-40) | UAAL as of June 30, 2023 estimated to be ~$695m amortized over 30yr, including contributions in second decade from DIA and foundations |
| | Discount rate | 6.75% |
| | Targeted funded status as of 2023 | 70% |
|   OPEB (Class 12) | Note B, Note B reserves, and cash | $450m of Note B, $11m Note B reserves, and $20m cash |
|   DDA (Class 13) | Note B | $4m of Note B |
|   Other unsecured (Class 14) | Note B and Note B reserves | $16m of Note B and $0.2m Note B reserves |
|   36DC (Class 17) | Cash payment | $2.2m cash (~$500k upfront payment, and 4 equal annual payments thereafter of ~$400k) |

POA00752752

Plan of Adjustment - 40 year projections
Recovery summary
($ in millions)

## 10 Years

| Creditor | Class (a) | Claim | State settlement | DIA settlement | Cash | Notes A1 | A2 | B | B (reserves) | C | 10 year $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| LTGO | 7 | $164 | | | | | $55 | | $1 | | $56 |
| UTGO | 8 | $388 | | | | $328 | | | | | $328 |
| POC - Syncora (b) | 9 | $354 | | | | | | $8 | | $20 | $28 |
| POC - FGIC | 9 | $1,119 | | | | | | | $42 | | $42 |
| PFRS pension | 10 | $1,250 | $96 | $165 | | | | | | | $261 |
| GRS pension (c) | 11 | $1,879 | $99 | $45 | $575 | | | | | | $719 |
| PFRS OPEB | 12 | $2,208 | | | $9 | | | $79 | $2 | | $90 |
| GRS OPEB | 12 | $2,095 | | | $11 | | | $74 | $2 | | $87 |
| DDA | 13 | $34 | | | | | | $1 | | | $1 |
| Other unsecured | 14 | $150 | | | | | | $6 | $0 | | $6 |
| 36DC | 17 | $6 | | | $2 | | | | | | $2 |
| | | $9,646 | $195 | $210 | $597 | $328 | $55 | $168 | $47 | $20 | $1,619 |

## 40 Years

| Creditor | Class (a) | Claim | State settlement | DIA settlement | Cash | Notes A1 | A2 | B | B (reserves) | C | Illustrative Recoveries $ | $ PV (d) | % | Adjusted % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LTGO | 7 | $164 | | | | | $55 | | $8 | | $63 | $56 | 34% | |
| UTGO | 8 | $388 | | | | $368 | | | | | $368 | $288 | 74% | |
| POC - Syncora (b) | 9 | $354 | | | | | | $45 | | $29 | $74 | $41 | 12% | 13% |
| POC - FGIC | 9 | $1,119 | | | | | | | $234 | | $234 | $107 | 10% | |
| PFRS pension | 10 | $1,250 | $96 | $233 | $1,325 | | | | | | $1,654 | $735 | 59% | 39% |
| GRS pension (c) | 11 | $1,879 | $99 | $233 | $1,809 | | | | | | $2,141 | $1,118 | 60% | 48% |
| PFRS OPEB | 12 | $2,208 | | | $9 | | | $442 | $11 | | $462 | $217 | 10% | |
| GRS OPEB | 12 | $2,095 | | | $11 | | | $416 | $10 | | $437 | $206 | 10% | |
| DDA | 13 | $34 | | | | | | $7 | | | $7 | $3 | 10% | |
| Other unsecured | 14 | $150 | | | | | | $31 | $0 | | $32 | $15 | 10% | |
| 36DC | 17 | $6 | | | $2 | | | | | | $2 | $2 | 32% | |
| | | $9,646 | $195 | $466 | $3,156 | $368 | $55 | $941 | $264 | $29 | $5,474 | $2,790 | | |

Adjusted % notes: Includes settlement credits (13%); Excludes State, Foundation, and DIA funding (39%, 48%)

## Description of notes

| Note | Face value | Interest rate | Recipients | Term | Comments |
|---|---|---|---|---|---|
| Note A1 | $287.6 | n/a | UTGO | 14 years | Represents ~ 87% of UTGO scheduled debt service |
| Note A2 | $55.0 | n/a | UTGO | n/a | Upfront payment; City retains the option to repay this note over 23 years |
| Note B (incl. reserves) | $622.0 | 4%, 5%, 6% | OPEB, LTGO, POC, Notes & Other unsec | 30 years | 10 yrs interest only, and straight line amortization thereafter |
| Note C | $21.3 | 5% | Syncora | 12 years | $2.4m annual payment |

Footnotes:

(a) Excludes Secured Claims (Class 1 through Class 6), Convenience Claims (Class 15), and Subordinated Claims (Class 16).
(b) Distributions and illustrative recoveries do not include settlement credits in the nominal amount of $6.3m.
(c) Cash payments include DWSD contributions of $429m and other fund reimbursements of $94m (over the 40yr period).
(d) Present value amounts calculated assuming 5% discount rate.

POA00752753

**Plan of Adjustment – 40 year projections**
**Preliminary forecast and distributions**
*($ in millions)*

| | Growth after FY23 | 2014-2023 | 2024-2033 | 2034-2043 | 2044-2053 | 40-year total |
|---|---|---|---|---|---|---|
| **Revenues** | | | | | | |
| Municipal income tax | 2.4% - 2.8% | $ 2,770.3 | $ 3,510.0 | $ 4,590.6 | $ 6,059.3 | $ 16,930.2 |
| State revenue sharing | 0.1% - 1.7% | 2,000.5 | 2,121.0 | 2,307.1 | 2,533.2 | 8,961.8 |
| Wagering taxes | 1.0% | 1,732.6 | 1,905.6 | 2,105.0 | 2,325.2 | 8,068.4 |
| Property taxes | 1.5% - 2.2% | 1,074.0 | 1,369.6 | 1,640.0 | 1,903.2 | 5,986.8 |
| Utility users' taxes | 1.5% - 1.7% | 257.2 | 304.3 | 353.2 | 409.9 | 1,324.6 |
| Sales and charges for services | 2.0% | 1,118.0 | 1,161.2 | 1,415.5 | 1,725.5 | 5,420.2 |
| Other revenue | 2.0% | 706.9 | 747.2 | 918.3 | 1,119.7 | 3,492.1 |
| General Fund reimbursements | 2.0% | 264.1 | 238.8 | 291.1 | 354.9 | 1,149.0 |
| Transfers in for UTGO | n/a | 532.8 | 147.6 | 22.1 | - | 702.4 |
| Restructuring: | | | | | | |
|   Department revenue initiatives | 2.0% | 482.9 | 586.2 | 714.6 | 871.1 | 2,654.8 |
|   QOL / exit financing proceeds (net) | n/a | 268.1 | - | - | - | 268.1 |
|     **Total revenues** | | 11,207.3 | 12,091.6 | 14,357.4 | 17,301.9 | 54,958.3 |
| **Expenditures** | | | | | | |
| Salaries/overtime/fringe - Public Safety (a) | 2.0% - 2.25% | (2,864.3) | (3,524.5) | (4,356.5) | (5,442.1) | (16,187.4) |
| Salaries/overtime/fringe - Non-Public Safety | 2.0% - 2.25% | (903.8) | (1,087.2) | (1,343.9) | (1,678.8) | (5,013.7) |
| Health benefits (b) | ~4% inflation cap beg. FY20 | (752.6) | (928.2) | (1,373.9) | (2,033.7) | (5,088.4) |
| OPEB payments - future retirees (a) | $1m per year uniform / 7% of wages non-uniform | (32.2) | (37.0) | (43.2) | (51.1) | (163.4) |
| Active pension plan (a) | 12.25% uniform / 5.75% non-uniform | (347.9) | (443.6) | (547.8) | (683.4) | (2,022.6) |
| Other operating expenses (c) | 2.0% | (3,073.2) | (3,437.4) | (4,190.1) | (5,107.7) | (15,808.5) |
| Restructuring: | | | | | | |
|   Additional operating expenditures | 2.0% | (357.5) | (359.1) | (437.7) | (533.5) | (1,687.7) |
|   Escrow proceeds (2012 refunding bonds) | n/a | 64.7 | - | - | - | 64.7 |
|   Working capital | n/a | (49.8) | - | - | - | (49.8) |
|   Secured debt service | n/a | (390.5) | (391.0) | (67.2) | - | (848.6) |
|   Contributions to income stabilization fund | n/a | (17.8) | (2.2) | - | - | (20.0) |
|   Swap interest set-aside | n/a | (103.7) | - | - | - | (103.7) |
|   QOL / exit financing principal/interest payments | n/a | (292.3) | (126.0) | - | - | (418.4) |
|   Reorganization (Capital investments) | 2.0% | (582.2) | (442.7) | (501.4) | (605.3) | (2,131.5) |
|   Restructuring professional fees | n/a | (182.0) | - | - | - | (182.0) |
|   Blight (excludes heavy commercial) | n/a | (420.0) | - | - | - | (420.0) |
|   PLD decommission | n/a | (75.0) | - | - | - | (75.0) |
| Contingency | n/a | (98.9) | (120.9) | (143.6) | (173.0) | (536.4) |
| Reinvestment deferrals | n/a | 46.7 | 231.6 | (39.8) | (238.6) | - |
|     **Total expenditures** | | (10,432.3) | (10,668.0) | (13,044.9) | (16,547.2) | (50,692.5) |
| **Funds available for unsecured claims** | | $ 775.0 | $ 1,423.6 | $ 1,312.4 | $ 754.7 | $ 4,265.8 |

*Footnotes:*

(a) Assumes pending DPOA & DFFA deals are cash flow neutral.

(b) Health benefits include $142.8m of OPEB payments for current retirees in FY 2014 ($123.8m) and FY 2015 ($19m).

(c) The impact of the first decade increase in DDOT subsidy is assumed to be offset by operational savings beyond 2023.

POA00752754

**Plan of Adjustment - 40 year projections**
**Preliminary forecast and distributions**
*($ in millions)*

| | 2014-2023 | 2024-2033 | 2034-2043 | 2044-2053 | 40-year total |
|---|---|---|---|---|---|
| **Sources** | | | | | |
| Funds available for unsecured claims | $ 775.0 | $ 1,423.6 | $ 1,312.4 | $ 754.7 | $ 4,265.8 |
| Revenue stream from DWSD - no transaction | | | | | |
|   Pension | 428.5 | - | - | - | 428.5 |
|   OPEB (based on 12.1% of OPEB - current retiree payments) | 20.4 | 41.4 | 39.7 | 6.1 | 107.5 |
|   POC (based on 11.5% of total POC payments) | 8.1 | 13.5 | 12.1 | 1.8 | 35.6 |
| Subtotal: Revenue stream from DWSD | 457.0 | 55.0 | 51.7 | 7.9 | 571.6 |
| Reimbursement from other funds | 28.0 | 32.7 | 25.0 | 15.5 | 101.2 |
| Grand Bargain funding | | | | | |
|   Foundation fundraising | 164.7 | 201.3 | - | - | 366.0 |
|   DIA contributions | 45.0 | 55.0 | - | - | 100.0 |
|   State settlement | 194.8 | - | - | - | 194.8 |
| **Total sources** | $ 1,664.5 | $ 1,767.6 | $ 1,389.2 | $ 778.1 | $ 5,599.4 |
| **Uses** | | | | | |
| Retiree payments | | | | | |
|   PFRS pension payments | (260.7) | (617.7) | (464.5) | (311.3) | (1,654.2) |
|   GRS pension payments | (718.5) | (630.4) | (474.0) | (317.7) | (2,140.7) |
|   PFRS OPEB payments - current retirees | (9.1) | - | - | - | (9.1) |
|   GRS OPEB payments - current retirees | (10.9) | - | - | - | (10.9) |
| Subtotal: retiree distributions | (999.2) | (1,248.1) | (938.5) | (628.9) | (3,814.8) |
| Note and cash payments | | | | | |
|   Note A1 (UTGO) | (327.6) | (40.8) | - | - | (368.5) |
|   Note A2 (LTGO) | (55.0) | - | - | - | (55.0) |
|   Note B (incl. B reserves) | (214.9) | (470.2) | (450.6) | (68.9) | (1,204.6) |
|   36DC cash payments | (2.2) | - | - | - | (2.2) |
|   Note C (POC) | (20.4) | (8.4) | - | - | (28.8) |
| Subtotal: note and cash payments | (620.1) | (519.4) | (450.6) | (68.9) | (1,659.0) |
| **Total distributions / total uses** | $ (1,619.3) | $ (1,767.6) | $ (1,389.2) | $ (697.8) | $ (5,473.9) |
| **Surplus / (deficit)** | $ 45.2 | $ - | $ - | $ 80.3 | $ 125.5 |
| **Ending cash balance (a)** | $ 81.2 | $ 81.2 | $ 81.2 | $ 161.5 | $ 161.5 |

*Footnotes:*
(a) Includes 5% of budgeted expenditures as required by State law.

9/25/2014 8:28 AM

POA00752755

**Plan of Adjustment - 40 year projections**
**Preliminary forecast and distributions**
*($ in millions)*

| | 2014-2023 | 2024-2033 | 2034-2043 | 2044-2053 | 40-year total |
|---|---|---|---|---|---|
| **Total distributions to creditors** | | | | | |
| PFRS pension (c) | $ (260.7) | $ (617.7) | $ (464.5) | $ (311.3) | $ (1,654.2) |
| GRS pension (c) | (718.5) | (630.4) | (474.0) | (317.7) | (2,140.7) |
| PFRS OPEB (cash) | (9.1) | - | - | - | (9.1) |
| GRS OPEB (cash) | (10.9) | - | - | - | (10.9) |
| UTGO (Note A1) | (327.6) | (40.8) | - | - | (368.5) |
| LTGO (Note A2) | (55.0) | - | - | - | (55.0) |
| *Note B* | | | | | |
| PFRS OPEB (incl. B reserves) | (80.8) | (176.8) | (169.4) | (25.9) | (453.0) |
| GRS OPEB (incl. B reserves) | (75.9) | (166.2) | (159.3) | (24.3) | (425.7) |
| LTGO (B reserves) | (1.4) | (3.1) | (3.0) | (0.5) | (8.0) |
| POC - Syncora | (8.0) | (17.5) | (16.8) | (2.6) | (44.8) |
| POC - FGIC (B reserves) | (41.8) | (91.4) | (87.6) | (13.4) | (234.3) |
| DDA | (1.3) | (2.7) | (2.6) | (0.4) | (7.0) |
| Other unsecured items (incl. B reserves) | (5.7) | (12.4) | (11.9) | (1.8) | (31.8) |
| 36DC cash payments | (2.2) | - | - | - | (2.2) |
| POC - Syncora (Note C) | (20.4) | (8.4) | - | - | (28.8) |
| **Total distributions to unsecured creditors** | (1,619.3) | (1,767.6) | (1,389.2) | (697.8) | (5,473.9) |
| **Total secured debt service (including QOL/Exit financing)** | (682.9) | (517.0) | (67.2) | - | (1,267.0) |
| **Total distributions to creditors** | $ (2,302.1) | $ (2,284.6) | $ (1,456.3) | $ (697.8) | $ (6,740.9) |
| Percentage of total revenues (including other sources) | 19.0% | 18.4% | 10.1% | 4.0% | 12.0% |

| | Claims (a) | | 40 years | | | |
|---|---|---|---|---|---|---|
| | $ in millions | % | Nominal (b) | % | PV @ 5.0% (b) | % |
| PFRS pension (c) | 1,250.0 | 13% | 1,325.2 | 106% | 481.8 | 39% |
| GRS pension (c) | 1,879.0 | 19% | 1,808.9 | 96% | 895.5 | 48% |
| PFRS OPEB | 2,207.8 | 23% | 462.1 | 21% | 216.9 | 10% |
| GRS OPEB | 2,095.2 | 22% | 436.6 | 21% | 206.1 | 10% |
| UTGO | 388.0 | 4% | 368.5 | 95% | 288.5 | 74% |
| LTGO | 163.5 | 2% | 63.0 | 39% | 56.0 | 34% |
| POC - Syncora | 354.4 | 4% | 73.6 | 21% | 41.3 | 12% |
| POC - FGIC (B reserves) | 1,118.8 | 12% | 234.3 | 21% | 107.4 | 10% |
| DDA | 33.6 | 0% | 7.0 | 21% | 3.2 | 10% |
| Other unsecured items | 150.0 | 2% | 31.8 | 21% | 14.6 | 10% |
| 36DC claims | 6.0 | 0% | 2.2 | 37% | 1.9 | 32% |
| Total | $ 9,646.4 | 100% | $ 4,813.1 | 50% | $ 2,313.2 | |

*Footnotes:*

(a) Subject to ongoing legal review/negotiation. Final allowed claim amounts under these categories may be materially different.

(b) Nominal pension system payments exclude $661m for PFRS and GRS (State settlement & art proceeds) for the calculation of recoveries.

(c) Retirement system pension claims based on actuarial valuation as of June 30, 2013. Assumes a 6.75% discount rate.

POA00752756

**Plan of Adjustment – 40 year projections**
**Preliminary forecast and distributions**
*($ in millions)*

| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2014-2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Preliminary forecast | | | | | | |
| **Revenues** | | | | | | | | | | | |
| Municipal income tax | $ 247.9 | $ 256.2 | $ 262.3 | $ 268.3 | $ 274.0 | $ 279.9 | $ 286.0 | $ 292.2 | $ 298.5 | $ 304.9 | $ 2,770.3 |
| State revenue sharing | 191.2 | 196.6 | 198.7 | 200.3 | 202.0 | 203.8 | 205.6 | 199.1 | 200.8 | 202.5 | 2,000.5 |
| Wagering taxes | 169.9 | 168.2 | 169.0 | 169.9 | 171.6 | 173.3 | 175.0 | 176.8 | 178.6 | 180.3 | 1,732.6 |
| Property taxes | 114.9 | 102.6 | 100.8 | 102.4 | 102.6 | 103.9 | 106.8 | 109.7 | 113.3 | 117.0 | 1,074.0 |
| Utility users' taxes | 20.1 | 24.5 | 24.9 | 25.5 | 26.0 | 26.4 | 26.8 | 27.2 | 27.6 | 28.0 | 257.2 |
| Sales and charges for services | 131.5 | 118.0 | 115.8 | 113.6 | 111.4 | 109.2 | 107.0 | 104.1 | 103.3 | 104.0 | 1,118.0 |
| Other revenue | 79.8 | 86.2 | 78.0 | 66.5 | 65.3 | 65.5 | 65.8 | 66.2 | 66.6 | 66.9 | 706.9 |
| General Fund reimbursements | 29.8 | 42.9 | 41.7 | 21.4 | 21.4 | 21.4 | 21.4 | 21.4 | 21.4 | 21.4 | 264.1 |
| Transfers in for UTGO | 66.5 | 62.6 | 57.7 | 57.6 | 56.5 | 54.1 | 53.4 | 52.7 | 37.7 | 33.9 | 532.8 |
| Restructuring: | | | | | | | | | | | |
|    Department revenue initiatives | - | 95.2 | 45.1 | 49.7 | 52.9 | 42.5 | 46.9 | 46.8 | 51.3 | 52.5 | 482.9 |
|    QOL / exit financing proceeds (net) | - | 240.5 | 27.6 | - | - | - | - | - | - | - | 268.1 |
|     Total revenues | 1,051.6 | 1,393.5 | 1,121.6 | 1,075.1 | 1,083.7 | 1,080.0 | 1,094.8 | 1,096.5 | 1,099.0 | 1,111.5 | 11,207.5 |
| **Expenditures** | | | | | | | | | | | |
| Salaries/overtime/fringe - Public Safety (a) | (245.2) | (263.3) | (276.7) | (277.5) | (284.4) | (291.5) | (297.4) | (303.3) | (309.4) | (315.6) | (2,864.3) |
| Salaries/overtime/fringe - Non-Public Safety | (85.7) | (86.9) | (88.1) | (86.1) | (88.0) | (90.2) | (92.0) | (93.8) | (95.4) | (97.3) | (903.8) |
| Health benefits (b) | (173.0) | (67.1) | (52.4) | (55.9) | (60.0) | (63.6) | (66.1) | (68.7) | (71.5) | (74.3) | (752.6) |
| OPEB payments - future retirees (a) | - | (6.1) | (3.1) | (3.1) | (3.2) | (3.2) | (3.3) | (3.3) | (3.4) | (3.4) | (32.2) |
| Active pension plan (a) | - | (52.1) | (34.1) | (34.9) | (35.8) | (36.7) | (37.4) | (38.2) | (38.9) | (39.7) | (347.9) |
| Other operating expenses (c) | (291.3) | (320.1) | (326.5) | (303.5) | (304.8) | (302.0) | (302.2) | (303.3) | (309.4) | (310.3) | (3,073.2) |
| Restructuring: | | | | | | | | | | | |
|    Additional operating expenditures | - | (72.6) | (45.3) | (39.9) | (35.6) | (33.0) | (33.0) | (33.3) | (32.5) | (32.1) | (357.5) |
|    Escrow proceeds (2012 refunding bonds) | - | 64.7 | - | - | - | - | - | - | - | - | 64.7 |
|    Working capital | 13.4 | (63.2) | - | - | - | - | - | - | - | - | (49.8) |
|    Secured debt service | (35.4) | (39.4) | (39.4) | (39.4) | (39.4) | (39.4) | (39.5) | (39.5) | (39.5) | (39.6) | (390.5) |
|    Contributions to income stabilization fund | - | (2.5) | (2.3) | (2.3) | (2.2) | (2.1) | (2.1) | (2.0) | (1.3) | (1.1) | (17.8) |
|    Swap interest set-aside | (45.9) | (57.8) | - | - | - | - | - | - | - | - | (103.7) |
|    QOL / exit financing principal/interest payments | (0.7) | (9.7) | (15.8) | (15.8) | (15.8) | (15.8) | (39.8) | (62.4) | (59.6) | (56.9) | (292.3) |
|    Reorganization (Capital investments) | - | (139.5) | (106.4) | (65.6) | (50.2) | (43.6) | (51.9) | (46.0) | (40.4) | (38.6) | (582.2) |
|    Restructuring professional fees | (49.4) | (132.6) | - | - | - | - | - | - | - | - | (182.0) |
|    Blight (excludes heavy commercial) | - | (82.0) | (46.0) | (50.0) | (50.0) | (51.0) | (52.0) | (45.0) | (25.0) | (19.0) | (420.0) |
|    PLD decommission | - | (2.5) | (5.0) | (15.0) | (10.0) | (10.0) | (10.0) | (12.5) | (10.0) | - | (75.0) |
| Contingency | - | (11.5) | (10.9) | (10.8) | (10.8) | (10.8) | (10.9) | (11.0) | (11.0) | (11.1) | (98.9) |
| Reinvestment deferrals | - | - | 20.3 | 14.5 | (4.7) | (0.7) | 8.5 | 32.3 | 0.5 | (23.7) | 46.7 |
|     Total expenditures | (913.3) | (1,344.2) | (1,031.8) | (985.4) | (995.0) | (993.7) | (1,029.1) | (1,030.1) | (1,046.8) | (1,062.8) | (10,432.3) |
| **Funds available for unsecured claims** | $ 138.4 | $ 49.3 | $ 89.8 | $ 89.8 | $ 88.7 | $ 86.3 | $ 65.7 | $ 66.4 | $ 52.2 | $ 48.6 | $ 775.0 |

*Footnotes:*

(a) Assumes pending DPOA & DFFA deals are cash flow neutral.

(b) Health benefits include $142.8m of OPEB payments for current retirees in FY 2014 ($123.8m) and FY 2015 ($19m).

(c) The impact of the first decade increase in DDOT subsidy is assumed to be offset by operational savings beyond 2023.

POA00752757

**Plan of Adjustment - 40 year projections**
**Preliminary forecast and distributions**
*($ in millions)*

| | 2014 | | Preliminary forecast | | | | | | | | 2014-2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | |
| **Sources** | | | | | | | | | | | |
| Funds available for unsecured claims | $ 138.4 | $ 49.3 | $ 89.8 | $ 89.8 | $ 88.7 | $ 86.3 | $ 65.7 | $ 66.4 | $ 52.2 | $ 48.6 | $ 775.0 |
| Revenue stream from DWSD - no transaction | | | | | | | | | | | |
|   Pension | - | 65.4 | 45.4 | 45.4 | 45.4 | 45.4 | 45.4 | 45.4 | 45.4 | 45.4 | 428.5 |
|   OPEB (based on 12.1% of OPEB - current retirees payments) | - | 2.5 | 2.2 | 2.2 | 2.2 | 2.2 | 2.2 | 2.2 | 2.2 | 2.2 | 20.4 |
|   POC (based on 11.5% of total POC payments) | - | 0.5 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 8.1 |
| Subtotal: Revenue stream from DWSD | - | 68.4 | 48.6 | 48.6 | 48.6 | 48.6 | 48.6 | 48.6 | 48.6 | 48.6 | 457.0 |
| Reimbursement from other funds | - | 3.2 | 3.2 | 3.2 | 3.2 | 3.2 | 3.0 | 3.0 | 3.0 | 3.0 | 28.0 |
| Grand Bargain funding | | | | | | | | | | | |
|   Foundation fundraising | - | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 164.7 |
|   DIA contributions | - | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 45.0 |
|   State settlement | - | 194.8 | - | - | - | - | - | - | - | - | 194.8 |
| **Total sources** | $ 138.4 | $ 339.0 | $ 164.8 | $ 164.8 | $ 163.7 | $ 161.3 | $ 140.6 | $ 141.3 | $ 127.1 | $ 123.5 | $ 1,664.5 |
| | | | | | | | | | | | |
| **Uses** | | | | | | | | | | | |
| Retiree payments | | | | | | | | | | | |
|   PFRS pension payments | - | (114.5) | (18.3) | (18.3) | (18.3) | (18.3) | (18.3) | (18.3) | (18.3) | (18.3) | (360.7) |
|   GRS pension payments | - | (188.2) | (76.9) | (76.9) | (76.8) | (76.6) | (56.5) | (56.5) | (55.2) | (54.9) | (718.5) |
|   PFRS OPEB payments - current retirees | (9.1) | - | - | - | - | - | - | - | - | - | (9.1) |
|   GRS OPEB payments - current retirees | (10.9) | - | - | - | - | - | - | - | - | - | (10.9) |
| Subtotal: retiree distributions | (20.0) | (302.5) | (95.2) | (95.2) | (95.1) | (94.9) | (74.8) | (74.8) | (73.5) | (73.2) | (999.2) |
| Note and cash payments | | | | | | | | | | | |
|   Note A1 (UTGO) | - | (45.8) | (41.5) | (41.5) | (40.5) | (38.4) | (37.8) | (37.1) | (24.1) | (20.8) | (327.6) |
|   Note A2 (LTGO) | - | (55.0) | - | - | - | - | - | - | - | - | (55.0) |
|   Note B (incl. B reserves) | - | (12.6) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (214.9) |
|   36DC cash payments | - | (0.5) | (0.4) | (0.4) | (0.4) | (0.4) | - | - | - | - | (2.2) |
|   Note C (POC) | - | (1.2) | (2.4) | (2.4) | (2.4) | (2.4) | (2.4) | (2.4) | (2.4) | (2.4) | (20.4) |
| Subtotal: note and cash payments | - | (115.2) | (69.6) | (69.6) | (68.6) | (66.4) | (65.5) | (64.8) | (51.8) | (48.5) | (620.1) |
| **Total distributions / total uses** | $ (20.0) | $ (417.7) | $ (164.8) | $ (164.8) | $ (163.7) | $ (161.3) | $ (140.3) | $ (139.6) | $ (125.3) | $ (121.7) | $ (1,619.3) |
| | | | | | | | | | | | |
| Surplus / (deficit) | $ 118.4 | $ (78.8) | $ - | $ - | $ - | $ - | $ 0.3 | $ 1.7 | $ 1.7 | $ 1.8 | $ 45.2 |
| Ending cash balance (a) | $ 154.4 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.9 | $ 77.6 | $ 79.4 | $ 81.2 | $ 81.2 |
| *Memo:* | | | | | | | | | | | |
|   FY14 expenditures to be spent in FY15 | (78.8) | 78.8 | - | - | - | - | - | - | - | - | - |
|   Adjusted surplus / (deficit) | $ 39.6 | $ - | $ - | $ - | $ - | $ - | $ 0.3 | $ 1.7 | $ 1.7 | $ 1.8 | $ 45.2 |

**Footnotes:**

(a) Includes 5% of budgeted expenditures as required by State law.

POA00752758

# Appendices

POA0075275 9

9/25/2014 8:28 AM

Plan of Adjustment - 40 year projections
Bridge - 40 year adjustments
*($ in millions)*

| | 2014-2023 | | 2024-2033 | | 2034-2043 | | 2044-2053 | | 40-year total | |
|---|---|---|---|---|---|---|---|---|---|---|
| POA (7/2/2014) surplus / (deficit) | $ | 45.2 | $ | 21.0 | $ | 29.7 | $ | 77.2 | $ | 173.1 |
| | | | | | | | | | | |
| Adjustments (a): | | | | | | | | | | |
| Financing changes | | 18.9 | | (15.7) | | - | | - | | 3.2 |
| POC settlement | | (28.8) | | (14.1) | | (0.8) | | (0.1) | | (43.8) |
| 36DC settlement | | (2.2) | | - | | - | | - | | (2.2) |
| Reinvestment deferrals & timing differences | | 12.1 | | 8.8 | | (28.9) | | 3.2 | | (4.8) |
| Total adjustments | | (0.0) | | (21.0) | | (29.7) | | 3.1 | | (47.6) |
| | | | | | | | | | | |
| Adjusted surplus / (deficit) | $ | 45.2 | $ | - | $ | - | $ | 80.3 | $ | 125.5 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| Original ending cash balance (7/2/2014) | $ | 81.2 | $ | 102.2 | $ | 131.9 | $ | 209.1 | $ | 209.1 |
| Cumulative adjustments | | (0.0) | | (21.0) | | (50.7) | | (47.6) | | (47.6) |
| Ending cash balance | $ | 81.2 | $ | 81.2 | $ | 81.2 | $ | 161.5 | $ | 161.5 |

*Footnotes:*

(a) See next page for detailed adjustments.

POA00752760

**Plan of Adjustment - 40 year projections**
Detail of Adjustments
*($ in millions)*

| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2014-2023 | 2024-2033 | 2034-2043 | 2044-2053 | 40-year total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Financing changes** | | | | | | | | | | | | | | | |
| QOL / exit financing proceeds (net) | - | (11.3) | (13.2) | - | - | 30.8 | - | - | (5.8) | (5.4) | (24.6) | - | - | - | (24.6) |
| QOL / exit financing principal/interest payments | - | 3.7 | 2.2 | 2.2 | 2.2 | 30.8 | 19.4 | (5.8) | (5.6) | (5.4) | 43.5 | (15.7) | - | - | 27.7 |
| Total | - | (7.7) | (11.0) | 2.2 | 2.2 | 30.8 | 19.4 | (5.8) | (5.6) | (5.4) | 18.9 | (15.7) | - | - | 3.2 |
| **POC settlement** | | | | | | | | | | | | | | | |
| Note C (POC) | - | (1.2) | (2.4) | (2.4) | (2.4) | (2.4) | (2.4) | (2.4) | (2.4) | (2.4) | (20.4) | (8.4) | - | - | (28.8) |
| Non-bankruptcy settlement items | - | (5.4) | (0.8) | (0.8) | (0.8) | (0.8) | (0.8) | (0.7) | (0.6) | (0.6) | (10.9) | (6.3) | (0.3) | - | (17.5) |
| Increased other fund reimbursements | - | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.3 | (0.1) | (0.3) | (0.0) | (0.0) |
| Increased DWSD revenue stream | - | 0.1 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 2.2 | 0.6 | (0.3) | (0.0) | 2.5 |
| Total | - | (6.4) | (2.9) | (2.9) | (2.9) | (2.9) | (2.9) | (2.8) | (2.7) | (2.7) | (28.8) | (14.1) | (0.8) | (0.1) | (43.8) |
| **36DC settlement** | - | (0.5) | (0.4) | (0.4) | (0.4) | (0.4) | - | - | - | - | (2.2) | - | - | - | (2.2) |
| **Reinvestment deferrals & timing differences** | | | | | | | | | | | | | | | |
| Contingency | - | 1.9 | 0.4 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 2.4 | 0.1 | 0.0 | - | 2.5 |
| QOL proceeds - timing | (52.5) | 52.5 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Expenditures - timing | 131.2 | (131.2) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Blight - timing | - | 20.0 | - | (10.0) | (7.0) | (3.0) | - | - | - | - | - | - | - | - | - |
| Escrow proceeds (2012 refunding bonds) | - | 44.7 | - | - | - | - | - | - | - | - | 44.7 | - | - | - | 44.7 |
| Additional professional fees | - | (52.0) | - | - | - | - | - | - | - | - | (52.0) | - | - | - | (52.0) |
| Reinvestment deferrals | - | - | 13.9 | 11.1 | 5.0 | (24.5) | (16.2) | 10.3 | 9.3 | 8.1 | 16.9 | 8.8 | (28.9) | 3.2 | (0.0) |
| Other | - | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.1 |
| Total | 78.8 | (64.1) | 14.3 | 1.1 | (2.0) | (27.5) | (16.2) | 10.3 | 9.3 | 8.1 | 12.1 | 8.8 | (28.9) | 3.2 | (4.8) |
| **Total adjustments (Post 7/2/2104)** | $ 78.8 | $ (78.8) | $ - | $ - | $ (3.1) | $ - | $ 0.3 | $ 1.7 | $ 1.0 | $ 0.0 | $ (0.0) | $ (21.0) | $ (29.7) | $ 3.1 | $ (47.6) |
| | | | | | | | | | | | | | | | |
| **Original ending cash balance (7/2/2014)** | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 78.7 | $ 78.7 | $ 78.7 | $ 78.7 | $ 79.4 | $ 81.2 | $ 81.2 | $ 102.2 | $ 131.9 | $ 209.1 | $ 209.1 |
| Cumulative adjustments | 78.8 | (0.0) | (0.0) | (0.0) | (3.1) | (3.1) | (2.8) | (1.0) | (0.0) | (0.0) | (0.0) | (21.0) | (50.7) | (47.6) | (47.6) |
| **Ending cash balance** | $ 154.4 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.9 | $ 77.6 | $ 79.4 | $ 81.2 | $ 81.2 | $ 81.2 | $ 81.2 | $ 161.5 | $ 161.5 |

POA00752761

Plan of Adjustment - 40 year projections
General Fund view
*($ in millions)*

| | Preliminary forecast | | | | Total | |
|---|---|---|---|---|---|---|
| | 2014-2023 | 2024-2033 | 2034-2043 | 2044-2053 | 2014-2053 | |
| **Operating revenues** | | | | | | |
| Municipal income tax | $ 2,770.3 | $ 3,510.0 | $ 4,590.6 | $ 6,059.3 | $ | 16,930.2 |
| State revenue sharing | 2,030.5 | 2,121.0 | 2,307.1 | 2,533.2 | | 8,961.9 |
| Wagering taxes | 1,732.6 | 1,905.6 | 2,105.0 | 2,325.2 | | 8,068.4 |
| Property taxes | 1,074.0 | 1,369.6 | 1,640.0 | 1,903.2 | | 5,986.8 |
| Utility users' taxes | 257.2 | 304.3 | 353.2 | 409.9 | | 1,324.6 |
| Other revenue | 2,621.8 | 2,294.8 | 2,647.9 | 3,200.0 | | 10,763.7 |
| Department revenue initiatives | 410.6 | 586.2 | 714.6 | 871.1 | | 2,582.5 |
|   Operating revenues | 10,866.9 | 12,091.6 | 14,357.4 | 17,301.9 | | 54,617.9 |
| **Operating expenditures** | | | | | | |
| Salaries/overtime/fringe (a) | (3,768.1) | (4,611.8) | (5,700.3) | (7,120.9) | | (21,201.1) |
| Health benefits | (609.8) | (928.2) | (1,373.9) | (2,033.7) | | (4,945.6) |
| OPEB payments - future retirees (a) | (32.2) | (37.0) | (43.2) | (51.1) | | (163.4) |
| Active pension plan (a) | (347.0) | (443.6) | (547.8) | (684.4) | | (2,022.8) |
| Other operating expenses (b) | (3,073.2) | (3,437.4) | (4,130.1) | (5,167.7) | | (15,808.5) |
| Additional operating expenditures | (715.7) | (903.6) | (779.5) | (1,194.1) | | (3,592.9) |
| Cost savings | 359.2 | 444.5 | 541.0 | 860.5 | | 2,605.1 |
|   Total operating expenditures | $ (8,188.7) | $ (9,916.9) | $ (12,293.0) | $ (15,530.3) | $ | (45,828.9) |
| **Net operating cash flows** | $ 2,678.2 | $ 2,274.8 | $ 2,064.4 | $ 1,771.6 | $ | 8,788.9 |
| **Financing cashflows** | | | | | | |
| Secured debt service | $ (590.3) | $ (591.0) | $ (67.2) | - | $ | (848.6) |
| Pension | (119.8) | (961.8) | (916.0) | (513.8) | | (2,611.4) |
| Contributions to income stabilization funds | (17.8) | (2.2) | - | - | | (20.0) |
| DWSD / other fund contributions for new notes | 30.1 | 57.7 | 54.1 | 8.3 | | 150.2 |
| Note A1 (LTGO) | (327.6) | (40.8) | - | - | | (368.5) |
| Note A2 (LTGO) | (55.0) | - | - | - | | (55.0) |
| Note B (incl. B reserves) | (214.9) | (470.2) | (450.6) | (68.9) | | (1,204.6) |
| MDC cash payments | (2.2) | - | - | - | | (2.2) |
| Note C (POC) | (20.4) | (8.4) | - | - | | (28.8) |
|   Total financing cashflows | $ (1,118.2) | $ (1,816.8) | $ (1,379.6) | $ (674.4) | $ | (4,988.0) |
| **Net cash flows available for capital investment** | $ 1,560.1 | $ 458.0 | $ 684.8 | $ 1,097.2 | $ | 3,800.0 |
| **Investment cashflows** | | | | | | |
| Reorganization (Capital investment) | $ (582.2) | $ (442.7) | $ (501.4) | $ (605.3) | $ | (2,131.5) |
| Blight (excludes heavy commercial) | (420.6) | - | - | - | | (420.6) |
| Hardest Hit funds & Fire escrow | 72.3 | - | - | - | | 72.3 |
| PLD deconversion | (75.0) | - | - | - | | (75.0) |
| Contingency | (98.9) | (120.9) | (143.6) | (173.0) | | (536.4) |
| Reinvestment deferrals | 46.7 | 231.6 | (39.8) | (238.6) | | - |
|   Total investment cashflows | $ (1,057.6) | $ (331.9) | $ (684.8) | $ (1,016.9) | $ | (3,090.6) |
| **Bankruptcy-related and other cashflows** | | | | | | |
| QOL / exit financing principal/interest payments | $ (292.3) | $ (126.0) | - | - | $ | (418.4) |
| QOL / exit financing proceeds (net) | 268.1 | - | - | - | | 268.1 |
| Swap interest set-aside | (103.7) | - | - | - | | (103.7) |
| OPEB payments - current retirees | (162.6) | - | - | - | | (162.6) |
| Escrow proceeds (2012 refunding bonds) | 64.7 | - | - | - | | 64.7 |
| Working capital | (49.8) | - | - | - | | (49.8) |
| Restructuring professional fees (c) | (182.0) | - | - | - | | (182.0) |
|   Total bankruptcy cashflows | $ (457.6) | $ (126.0) | - | $ - | $ | (583.7) |
| **Surplus / (deficit)** | $ 45.2 | $ 0.0 | $ (0.0) | $ 80.3 | $ | 125.5 |
| **Ending cash balance (a)** | $ 81.2 | $ 81.2 | $ 81.2 | $ 161.5 | $ | 161.5 |

*Footnotes*
(a) Assumes pending DPOA & DFFA deals are cash flow neutral.
(b) The impact of the first decade increase in DDOT subsidy is assumed to be offset by operational savings beyond 2023.
(c) Any incremental professional fees are assumed to be funded by escrow account subject to State approval.

9/25/2014 8:28 AM

POA00752762

**Plan of Adjustment - 10 year projections**
**General Fund view**
*($ in millions)*

| | | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | | 2014-2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Preliminary forecast | | | | | | | |
| **Operating revenues** | | | | | | | | | | | | | |
| Municipal income tax | $ | 247.9 | 256.2 | 262.3 | 268.3 | 274.0 | 279.9 | 286.0 | 292.2 | 298.5 | 304.9 | $ | 2,770.3 |
| State revenue sharing | | 191.2 | 196.6 | 198.7 | 200.3 | 202.0 | 203.8 | 205.6 | 199.1 | 200.8 | 202.5 | | 2,000.5 |
| Wagering taxes | | 169.9 | 168.2 | 169.0 | 169.0 | 171.6 | 173.3 | 175.0 | 176.8 | 178.6 | 180.3 | | 1,732.6 |
| Property taxes | | 114.0 | 102.6 | 100.8 | 102.4 | 102.6 | 103.9 | 106.8 | 109.7 | 113.3 | 117.0 | | 1,074.0 |
| Utility users' taxes | | 20.1 | 24.5 | 24.9 | 25.5 | 26.0 | 26.4 | 26.6 | 27.2 | 27.6 | 28.0 | | 257.2 |
| Other revenue | | 307.7 | 299.7 | 293.1 | 259.1 | 254.6 | 250.2 | 247.6 | 244.7 | 229.0 | 236.2 | | 2,621.8 |
| Department revenue initiatives | | - | 31.9 | 36.1 | 49.7 | 52.9 | 42.3 | 46.9 | 46.8 | 51.3 | 52.5 | | 410.6 |
| Operating revenues | | 1,051.2 | 1,069.7 | 1,085.0 | 1,075.1 | 1,783.7 | 1,080.0 | 1,094.8 | 1,096.5 | 1,089.0 | 1,111.5 | | 10,850.0 |
| **Operating expenditures** | | | | | | | | | | | | | |
| Salaries/overtime/fringe (a) | | (331.0) | (350.2) | (364.8) | (363.6) | (372.3) | (381.8) | (389.4) | (397.1) | (404.8) | (412.0) | | (3,766.1) |
| Health benefits | | (46.2) | (48.0) | (52.4) | (58.9) | (60.0) | (63.6) | (66.1) | (68.7) | (71.5) | (74.3) | | (609.8) |
| OPEB payments - future retirees (a) | | - | (6.1) | (3.1) | (3.1) | (3.2) | (3.2) | (3.3) | (3.3) | (3.4) | (3.4) | | (32.2) |
| Active pension plan (a) | | - | (52.1) | (34.1) | (34.9) | (35.8) | (36.7) | (37.4) | (38.2) | (38.9) | (39.7) | | (347.9) |
| Other operating expenses (b) | | (291.3) | (320.1) | (326.5) | (303.5) | (304.6) | (302.0) | (302.2) | (303.3) | (309.4) | (310.3) | | (3,073.2) |
| Additional operating expenditures | | - | (68.9) | (82.3) | (82.7) | (83.6) | (79.3) | (76.7) | (75.6) | (74.1) | (71.9) | | (715.7) |
| Cost savings | | - | 16.3 | 37.0 | 42.8 | 48.0 | 45.3 | 45.3 | 41.7 | 41.6 | 39.8 | | 358.2 |
| Total operating expenditures | $ | (671.5) | (846.2) | (826.3) | (801.0) | (811.6) | (821.3) | (931.5) | (844.6) | (860.5) | (872.8) | $ | (8,188.7) |
| **Net operating cash flows** | $ | 380.2 | 240.5 | 258.7 | 274.2 | 271.8 | 259.8 | 263.3 | 252.5 | 238.6 | 238.6 | $ | 2,678.2 |
| **Financing cashflows** | | | | | | | | | | | | | |
| Secured debt service | $ | (35.4) | (39.4) | (39.4) | (39.4) | (39.4) | (39.4) | (39.5) | (39.5) | (39.5) | (39.6) | $ | (390.5) |
| Pension | | - | (16.0) | (23.5) | (23.5) | (23.4) | (23.2) | (3.5) | (3.2) | (2.6) | (1.7) | | (119.8) |
| Contributions to income stabilization fund | | - | (2.5) | (2.3) | (2.3) | (2.2) | (2.1) | (2.1) | (2.0) | (1.3) | (1.1) | | (17.8) |
| DWSD / other fund contributions for new notes | | - | 3.1 | 3.4 | 3.4 | 3.4 | 3.4 | 3.4 | 3.4 | 3.4 | 3.4 | | 37.1 |
| Note A1 (LTGO) | | - | (45.8) | (41.5) | (41.5) | (40.5) | (38.4) | (37.8) | (37.1) | (24.1) | (20.8) | | (327.6) |
| Note A2 (LTGO) | | - | (55.0) | - | - | - | - | - | - | - | - | | (55.0) |
| Note B (incl. B reserves) | | - | (12.6) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | | (214.9) |
| 36DC cash payments | | - | (0.5) | (0.4) | (0.4) | (0.4) | (0.4) | - | - | - | - | | (2.2) |
| Note C (POC) | | - | (1.2) | (2.4) | (2.4) | (2.4) | (2.4) | (2.4) | (2.4) | (2.4) | (2.4) | | (20.4) |
| Total financing cashflows | $ | (35.4) | (169.9) | (131.4) | (131.4) | (130.3) | (127.8) | (106.9) | (106.2) | (91.3) | (87.5) | $ | (1,118.2) |
| **Net cash flows available for capital investment** | $ | 344.7 | 70.6 | 127.3 | 142.7 | 141.5 | 132.0 | 156.4 | 146.3 | 147.3 | 151.2 | $ | 1,560.1 |
| **Investment cashflows** | | | | | | | | | | | | | |
| Reorganization (Capital investments) | $ | - | (130.5) | (106.4) | (65.6) | (50.2) | (43.6) | (51.7) | (46.6) | (40.4) | (36.6) | $ | (582.0) |
| Blight (excludes heavy commercial) | | - | (92.0) | (46.0) | (56.0) | (56.0) | (51.0) | (52.0) | (45.0) | (25.0) | (19.0) | | (429.0) |
| Hardest Hit funds & Fire escrow | | - | 63.3 | 9.0 | - | - | - | - | - | - | - | | 72.3 |
| PLD decentralization | | - | (2.5) | (5.0) | (15.0) | (10.0) | (10.0) | (10.0) | (12.5) | (10.0) | - | | (75.0) |
| Contingency | | - | (11.5) | (10.9) | (10.8) | (10.6) | (10.8) | (10.6) | (11.0) | (11.0) | (11.1) | | (98.9) |
| Reinvestment deferrals | | - | - | 20.3 | 14.5 | (4.7) | (0.7) | 8.5 | 32.3 | 0.5 | (23.7) | | 46.7 |
| Total investment cashflows | $ | - | (172.2) | (139.1) | (126.9) | (123.7) | (116.1) | (116.3) | (82.2) | (85.9) | (92.5) | $ | (1,057.0) |
| **Bankruptcy-related and other cashflows** | | | | | | | | | | | | | |
| QOL / exit financing principal/interest payments | $ | (0.7) | (9.7) | (15.8) | (15.8) | (15.8) | (15.8) | (39.8) | (62.4) | (59.6) | (56.9) | $ | (292.3) |
| QOL / exit financing proceeds (b4) | | - | 240.5 | 27.6 | - | - | - | - | - | - | - | | 268.1 |
| Swap interest set-aside | | (45.5) | (57.8) | - | - | - | - | - | - | - | - | | (103.7) |
| OPEB payments - current retirees | | (145.7) | (19.0) | - | - | - | - | - | - | - | - | | (162.8) |
| Escrow proceeds (2012 refunding bonds) | | - | 64.7 | - | - | - | - | - | - | - | - | | 64.7 |
| Working capital | | 13.4 | (63.2) | - | - | - | - | - | - | - | - | | (49.8) |
| Restructuring professional fees (c) | | (35.4) | (132.6) | - | - | - | - | - | - | - | - | | (182.0) |
| Total bankruptcy cashflows | $ | (226.3) | (22.8) | 11.8 | (15.8) | (15.8) | (15.8) | (39.8) | (62.4) | (59.6) | (56.9) | $ | (457.8) |
| **Surplus / (deficit)** | $ | 118.4 | (78.8) | (0.0) | 0.0 | 0.0 | (0.0) | 0.3 | 1.7 | 1.7 | 1.8 | $ | 45.2 |
| **Ending cash balance (a)** | $ | 154.4 | 75.6 | 75.6 | 75.6 | 75.6 | 75.6 | 75.9 | 77.6 | 79.4 | 81.2 | $ | 81.2 |

*Footnotes*

*(a) Assumes pending DPOA & DFFA deals are cash flow neutral.*

*(b) The impact of the first decade increase in DDOT subsidy is assumed to be offset by operational savings beyond 2023.*

*(c) Any incremental professional fees are assumed to be funded by escrow account subject to State approval.*

POA00752763

**This page intentionally left blank**

POA00752764

# EXHIBIT 21

Ex. 779

Admitted Oct 21, 2014

# City of Detroit
Plan of Adjustment - 40 year projections

The attached Plan of Adjustment preliminary forecast (the "POA Financial Projections"), its assumptions and underlying data are the product of the Client and its management ("Management") and consist of information obtained solely from the Client. With respect to prospective financial information relative to the Client, Ernst & Young LLP ("EY") did not examine, compile or apply agreed upon procedures to such information in accordance with attestation standards established by the AICPA and EY expresses no assurance of any kind on the information presented. It is the Client's responsibility to make its own decision based on the information available to it. Management has the knowledge, experience and ability to form its own conclusions related to the Client's POA Financial Projections. There will usually be differences between forecasted and actual results because events and circumstances frequently do not occur as expected and those differences may be material. EY takes no responsibility for the achievement of forecasted results. Accordingly, reliance on this report is prohibited by any third party as the projected financial information contained herein is subject to material change and may not reflect actual results.



(Trial Ex. 779)

EXHIBIT
Ex. 21



Project Piston
City of Detroit

Exhibit 1

Plan of Adjustment - 40 year projections
Assumptions
*($ in millions)*

| | | |
|---|---|---|
| General Fund Cash Flows | GF 40yr cash flows | $4.3b funds available for unsecured claims |
| | Minimum cash requirement | Based on 2 months of payroll through FY23 and the 5% cash reserve thereafter |
| | DIP financing | Quality of Life ($120m @ 3.5% assumed to be refinanced as part of exit facility) |
| | Exit financing | $160.0m tax-exempt note @ 5.75% maturing in FY31 |
| | | $115.0m taxable note @ 5.75% maturing in FY24 |
| | Swap treatment | $85m settlement |
| | Contingency | Reflects 1.0% of total revenues |
| Revenue stream from DWSD | Pension | $429m for pension in the first 10 years |
| | OPEB | 12.1% of OPEB - current retirees payments |
| | POC | 11.5% of total POC payments |
| Reimbursement from other funds | Reimbursements from Parking (non-GF) and Library | |
| DIA settlement | Foundations | $366m over 20 years |
| | DIA | $100m over 20 years |
| State settlement | Contributions to pension | $195m in FY15 |
| **Unsecured Claims treatment** | | |
|     LTGO (Class 7) | Note A2 and Note B reserves | $55m settlement note and $17.4m Note B reserves |
|     UTGO (Class 8) | Note A1 | $288m note funded with pass-through UTGO millage |
|     POC (Class 9) - Syncora | Notes C and B | $21m of Note C and $23.5m of Note B |
|     POC (Class 9) - FGIC | Notes C and B | $67m of Note C and $74.2m of Note B |
|     PFRS Pension (Class 10) | *State and DIA Settlements* | |
| | Contributions (years 1-10) | Estimated to be $261m from foundations / State settlement |
| | Contributions (years 11-40) | UAAL as of June 30, 2023 estimated to be ~$681m amortized over 30yr, including contributions in second decade from DIA and foundations |
| | Discount rate | 6.75% |
| | Targeted funded status as of 2023 | 78% |
|     GRS Pension (Class 11) | *State and DIA Settlements* | |
| | Contributions (years 1-10) | Estimated to be $99m from State settlement; $429m from DWSD; $45m from DIA; $146m from GF & other funds |
| | Contributions (years 11-40) | UAAL as of June 30, 2023 estimated to be ~$695m amortized over 30yr, including contributions in second decade from DIA and foundations |
| | Discount rate | 6.75% |
| | Targeted funded status as of 2023 | 70% |
|     OPEB (Class 12) | Note B, Note B reserves, and cash | $450m of Note B, $42.7m Note B reserves, and $20m cash |
|     DDA (Class 13) | Note B | $4m of Note B |
|     Other unsecured (Class 14) | Note B and Note B reserves | $16m of Note B and $4m Note B reserves |
|     36DC (Class 17) | Cash payment | $2.2m cash (~$500k upfront payment, and 4 equal annual payments thereafter of ~$400k) |



13-53846-tjt    Doc 13663-2    Filed 10/31/22    Entered 10/31/22 16:55:43    Page 68 of 102

**Plan of Adjustment - 40 year projections**
**Preliminary forecast and distributions**
*($ in millions)*

| | Growth after FY23 | 2014-2023 | 2024-2033 | 2034-2043 | 2044-2053 | 40-year total |
|---|---|---|---|---|---|---|
| **Revenues** | | | | | | |
| Municipal income tax | 2.4% - 2.8% | $ 2,770.3 | $ 3,510.0 | $ 4,590.6 | $ 6,059.3 | $ 16,930.2 |
| State revenue sharing | 0.1% - 1.7% | 2,000.5 | 2,121.0 | 2,307.1 | 2,533.2 | 8,961.8 |
| Wagering taxes | 1.0% | 1,732.6 | 1,905.6 | 2,105.0 | 2,325.2 | 8,068.4 |
| Property taxes | 1.5% - 2.2% | 1,074.0 | 1,369.6 | 1,640.0 | 1,903.2 | 5,986.8 |
| Utility users' taxes | 1.5% - 1.7% | 257.2 | 304.3 | 353.2 | 409.9 | 1,324.6 |
| Sales and charges for services | 2.0% | 1,118.0 | 1,161.2 | 1,415.5 | 1,725.5 | 5,420.2 |
| Other revenue | 2.0% | 706.9 | 747.2 | 918.3 | 1,119.7 | 3,492.1 |
| General Fund reimbursements | 2.0% | 264.1 | 238.8 | 291.1 | 354.9 | 1,149.0 |
| Transfers in for UTGO | n/a | 532.8 | 147.6 | 22.1 | - | 702.4 |
| Restructuring: | | | | | | |
| Department revenue initiatives | 2.0% | 482.9 | 586.2 | 714.6 | 871.1 | 2,654.8 |
| QOL / exit financing proceeds (net) | n/a | 241.4 | 27.5 | - | - | 268.9 |
| Total revenues | | 11,180.6 | 12,119.1 | 14,357.4 | 17,301.9 | 54,959.1 |
| **Expenditures** | | | | | | |
| Salaries/overtime/fringe - Public Safety (a) | 2.0% - 2.25% | (2,864.3) | (3,524.5) | (4,356.5) | (5,442.1) | (16,187.4) |
| Salaries/overtime/fringe - Non-Public Safety | 2.0% - 2.25% | (903.8) | (1,087.2) | (1,343.9) | (1,678.8) | (5,013.7) |
| Health benefits (b) | ~4% inflation cap beg. FY20 | (752.6) | (928.2) | (1,373.9) | (2,033.7) | (5,088.4) |
| OPEB payments - future retirees (a) | $1m per year uniform / 2% of wages non-uniform | (32.2) | (37.0) | (43.2) | (51.1) | (163.4) |
| Active pension plan (a) | 12.25% uniform / 5.75% non-uniform | (347.9) | (443.6) | (547.8) | (683.4) | (2,022.6) |
| Other operating expenses (c) | 2.0% | (3,073.2) | (3,437.4) | (4,190.1) | (5,107.7) | (15,808.5) |
| Restructuring: | | | | | | |
| Additional operating expenditures | 2.0% | (357.5) | (359.1) | (437.7) | (533.5) | (1,687.7) |
| Escrow proceeds (2012 refunding bonds) | n/a | 64.7 | - | - | - | 64.7 |
| Working capital | n/a | 0.2 | - | - | - | 0.2 |
| Secured debt service | n/a | (390.5) | (391.0) | (67.2) | - | (848.6) |
| Contributions to income stabilization fund | n/a | (17.8) | (2.2) | - | - | (20.0) |
| Swap interest set-aside | n/a | (103.7) | - | - | - | (103.7) |
| QOL / exit financing principal/interest payments | n/a | (292.9) | (126.0) | - | - | (418.9) |
| Reorganization (Capital investments) | 2.0% | (582.2) | (442.7) | (501.4) | (605.3) | (2,131.5) |
| Restructuring professional fees | n/a | (177.0) | - | - | - | (177.0) |
| Blight (excludes heavy commercial) | n/a | (420.0) | - | - | - | (420.0) |
| PLD decommission | n/a | (75.0) | - | - | - | (75.0) |
| Contingency | n/a | (98.9) | (120.9) | (143.6) | (173.0) | (536.4) |
| Reinvestment deferrals | n/a | 60.2 | 204.7 | (51.1) | (213.8) | - |
| Total expenditures | | (10,364.4) | (10,694.9) | (13,056.3) | (16,522.4) | (50,638.0) |
| **Funds available for unsecured claims** | | $ 816.3 | $ 1,424.2 | $ 1,301.1 | 779.5 | $ 4,321.1 |

*Footnotes:*

(a) Assumes pending DPOA & DFFA deals are cash flow neutral.

(b) Health benefits include $142.8m of OPEB payments for current retirees in FY 2014 ($123.8m) and FY 2015 ($19m).

(c) The impact of the first decade increase in DDOT subsidy is assumed to be offset by operational savings beyond 2023.



**Plan of Adjustment - 40 year projections**
**Preliminary forecast and distributions**
*($ in millions)*

| | | 2014-2023 | | 2024-2033 | | 2034-2043 | | 2044-2053 | | 40-year total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Sources** | | | | | | | | | | |
| Funds available for unsecured claims | $ | 816.3 | $ | 1,424.2 | $ | 1,301.1 | $ | 779.5 | $ | 4,321.1 |
| **Revenue stream from DWSD - no transaction** | | | | | | | | | | |
| Pension | | 428.5 | | - | | - | | - | | 428.5 |
| OPEB (based on 12.1% of OPEB - current retirees payments) | | 21.7 | | 44.3 | | 42.4 | | 6.5 | | 114.8 |
| POC (based on 11.5% of total POC payments) | | 13.6 | | 12.4 | | 8.0 | | 1.2 | | 35.3 |
| Subtotal: Revenue stream from DWSD | | 463.8 | | 56.7 | | 50.5 | | 7.7 | | 578.6 |
| Reimbursement from other funds | | 44.3 | | 57.0 | | 37.6 | | 26.3 | | 165.2 |
| **Grand Bargain funding** | | | | | | | | | | |
| Foundation fundraising | | 164.7 | | 201.3 | | - | | - | | 366.0 |
| DIA contributions | | 45.0 | | 55.0 | | - | | - | | 100.0 |
| State settlement | | 194.8 | | - | | - | | - | | 194.8 |
| **Total sources** | $ | 1,728.9 | $ | 1,794.1 | $ | 1,389.2 | $ | 813.5 | $ | 5,725.7 |
| | | | | | | | | | | |
| **Uses** | | | | | | | | | | |
| **Retiree payments** | | | | | | | | | | |
| PFRS pension payments | | (260.7) | | (617.7) | | (464.5) | | (311.3) | | (1,654.2) |
| GRS pension payments | | (718.5) | | (630.4) | | (474.0) | | (317.7) | | (2,140.7) |
| PFRS OPEB payments - current retirees | | (9.1) | | - | | - | | - | | (9.1) |
| GRS OPEB payments - current retirees | | (10.9) | | - | | - | | - | | (10.9) |
| Subtotal: retiree distributions | | (999.2) | | (1,248.1) | | (938.5) | | (628.9) | | (3,814.8) |
| **Note and cash payments** | | | | | | | | | | |
| Note A1 (UTGO) | | (327.6) | | (40.8) | | - | | - | | (368.5) |
| Note A2 (LTGO) | | (55.0) | | - | | - | | - | | (55.0) |
| Note B (incl. B reserves) | | (214.9) | | (470.2) | | (450.6) | | (68.9) | | (1,204.6) |
| 36DC cash payments | | (2.2) | | - | | - | | - | | (2.2) |
| Note C (POC) | | (84.8) | | (34.9) | | - | | - | | (119.7) |
| Subtotal: note and cash payments | | (684.5) | | (546.0) | | (450.6) | | (68.9) | | (1,750.0) |
| **Total distributions / total uses** | $ | (1,683.7) | $ | (1,794.1) | $ | (1,389.2) | $ | (697.8) | $ | (5,564.8) |
| | | | | | | | | | | |
| **Surplus / (deficit)** | $ | 45.2 | $ | - | $ | - | $ | 115.7 | | 160.9 |
| **Ending cash balance (a)** | $ | 81.2 | $ | 81.2 | $ | 81.2 | $ | 196.9 | $ | 196.9 |

*Footnotes:*

(a) Includes 5% of budgeted expenditures as required by State law.



**Plan of Adjustment - 40 year projections**
**Preliminary forecast and distributions**
*($ in millions)*

| | | 2014-2023 | 2024-2033 | 2034-2043 | 2044-2053 | 40-year total |
|---|---|---|---|---|---|---|
| **Total distributions to creditors** | | | | | | |
| PFRS pension (c) | $ | (260.7) $ | (617.7) $ | (464.5) | (311.3) | $ (1,654.2) |
| GRS pension (c) | | (718.5) | (630.4) | (474.0) | (317.7) | (2,140.7) |
| PFRS OPEB (cash) | | (9.1) | - | - | - | (9.1) |
| GRS OPEB (cash) | | (10.9) | - | - | - | (10.9) |
| UTGO (Note A1) | | (327.6) | (40.8) | - | - | (368.5) |
| LTGO (Note A2) | | (55.0) | - | - | - | (55.0) |
| Note B | | | | | | |
| PFRS OPEB (incl. B reserves) | | (86.3) | (188.9) | (181.0) | (27.7) | (483.9) |
| GRS OPEB (incl. B reserves) | | (81.2) | (177.7) | (170.3) | (26.0) | (455.1) |
| LTGO (B reserves) | | (5.9) | (12.9) | (12.4) | (1.9) | (33.2) |
| POC - Syncora | | (8.0) | (17.5) | (16.8) | (2.6) | (44.8) |
| POC - FGIC (B reserves) | | (25.2) | (55.2) | (52.9) | (8.1) | (141.4) |
| DDA | | (1.3) | (2.7) | (2.6) | (0.4) | (7.0) |
| Other unsecured items (incl. B reserves) | | (7.0) | (15.3) | (14.6) | (2.2) | (39.1) |
| 36DC cash payments | | (2.2) | - | - | - | (2.2) |
| POC - Syncora (Note C) | | (20.4) | (8.4) | | | (28.8) |
| **Total distributions to unsecured creditors** | | **(1,683.7)** | **(1,794.1)** | **(1,389.2)** | **(697.8)** | **(5,564.8)** |
| **Total secured debt service (including QOL/Exit financing)** | | **(683.4)** | **(517.0)** | **(67.2)** | **-** | **(1,267.6)** |
| **Total distributions to creditors** | $ | **(2,367.1)** $ | **(2,311.1)** $ | **(1,456.3)** $ | **(697.8)** | $ **(6,832.4)** |
| Percentage of total revenues (including other sources) | | 19.6% | 18.5% | 10.1% | 4.0% | 12.1% |

| | Claims (a) | | 40 years | | | |
|---|---|---|---|---|---|---|
| | $ in millions | % | Nominal (b) | % | PV @ 5.0% (b) | % |
| PFRS pension (c) | 1,250.0 | 13% | 1,325.2 | 106% | 481.8 | 39% |
| GRS pension (c) | 1,879.0 | 19% | 1,808.9 | 96% | 895.5 | 48% |
| PFRS OPEB | 2,207.8 | 23% | 493.1 | 22% | 231.1 | 10% |
| GRS OPEB | 2,095.2 | 22% | 466.0 | 22% | 219.6 | 10% |
| UTGO | 388.0 | 4% | 368.5 | 95% | 288.5 | 74% |
| LTGO | 163.5 | 2% | 88.2 | 54% | 67.6 | 41% |
| POC - Syncora | 354.4 | 4% | 73.6 | 21% | 41.3 | 12% |
| POC - FGIC (B reserves) | 1,118.8 | 12% | 232.3 | 21% | 130.4 | 12% |
| DDA | 33.6 | 0% | 7.0 | 21% | 3.2 | 10% |
| Other unsecured items | 150.0 | 2% | 39.1 | 26% | 17.9 | 12% |
| 36DC claims | 6.0 | 0% | 2.2 | 37% | 1.9 | 32% |
| **Total** | $ 9,646.4 | 100% | $ 4,904.0 | 51% | $ 2,378.7 | |

**Footnotes:**

(a) Subject to ongoing legal review/negotiation. Final allowed claim amounts under these categories may be materially different.

(b) Nominal pension system payments exclude $661m for PFRS and GRS (State settlement & art proceeds) for the calculation of recoveries.

(c) Retirement system pension claims based on actuarial valuation as of June 30, 2013. Assumes a 6.75% discount rate.



**Plan of Adjustment - 40 year projections**
**Preliminary forecast and distributions**
*($ in millions)*

| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2014-2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | | | | | |
| Municipal income tax | $ 247.9 | $ 256.2 | $ 262.3 | $ 268.3 | $ 274.0 | $ 279.9 | $ 286.0 | $ 292.2 | $ 298.5 | $ 304.9 | $ 2,770.3 |
| State revenue sharing | 191.2 | 196.6 | 198.7 | 200.3 | 202.0 | 203.8 | 205.6 | 199.1 | 200.8 | 202.5 | 2,000.5 |
| Wagering taxes | 169.9 | 168.2 | 169.0 | 169.9 | 171.6 | 173.3 | 175.0 | 176.8 | 178.6 | 180.3 | 1,732.6 |
| Property taxes | 114.9 | 102.6 | 100.8 | 102.4 | 102.6 | 103.9 | 106.8 | 109.7 | 113.3 | 117.0 | 1,074.0 |
| Utility users' taxes | 20.1 | 24.5 | 24.9 | 25.5 | 26.0 | 26.4 | 26.8 | 27.2 | 27.6 | 28.0 | 257.2 |
| Sales and charges for services | 131.5 | 118.0 | 115.8 | 113.6 | 111.4 | 109.2 | 107.0 | 104.4 | 103.3 | 104.0 | 1,118.0 |
| Other revenue | 79.8 | 86.2 | 78.0 | 66.5 | 65.3 | 65.5 | 65.8 | 66.2 | 66.6 | 66.9 | 706.9 |
| General Fund reimbursements | 29.8 | 42.9 | 41.7 | 21.4 | 21.4 | 21.4 | 21.4 | 21.4 | 21.4 | 21.4 | 264.1 |
| Transfers in for UTGO | 66.5 | 62.6 | 57.7 | 57.6 | 56.5 | 54.1 | 53.4 | 52.7 | 37.7 | 33.9 | 532.8 |
| Restructuring: | | | | | | | | | | | |
| Department revenue initiatives | - | 95.2 | 45.1 | 49.7 | 52.9 | 42.5 | 46.9 | 46.8 | 51.3 | 52.5 | 482.9 |
| QOL / exit financing proceeds (net) | - | 212.8 | 28.6 | - | - | - | - | - | - | - | 241.4 |
| **Total revenues** | 1,051.6 | 1,365.9 | 1,122.6 | 1,075.1 | 1,083.7 | 1,080.0 | 1,094.8 | 1,096.5 | 1,099.0 | 1,111.5 | 11,180.6 |
| **Expenditures** | | | | | | | | | | | |
| Salaries/overtime/fringe - Public Safety (a) | (245.2) | (263.3) | (276.7) | (277.5) | (284.4) | (291.5) | (297.4) | (303.3) | (309.4) | (315.6) | (2,864.3) |
| Salaries/overtime/fringe - Non-Public Safety | (85.7) | (86.9) | (88.1) | (86.1) | (88.0) | (90.2) | (92.0) | (93.8) | (95.4) | (97.3) | (903.8) |
| Health benefits (b) | (173.0) | (67.1) | (52.4) | (55.9) | (60.0) | (63.6) | (66.1) | (68.7) | (71.5) | (74.3) | (752.6) |
| OPEB payments - future retirees (a) | - | (6.1) | (3.1) | (3.1) | (3.2) | (3.2) | (3.3) | (3.3) | (3.4) | (3.4) | (32.2) |
| Active pension plan (a) | - | (52.1) | (34.1) | (34.9) | (35.8) | (36.7) | (37.4) | (38.2) | (38.9) | (39.7) | (347.9) |
| Other operating expenses (c) | (291.3) | (320.1) | (326.5) | (303.5) | (304.8) | (302.0) | (302.2) | (303.3) | (309.4) | (310.3) | (3,073.2) |
| Restructuring: | | | | | | | | | | | |
| Additional operating expenditures | - | (72.6) | (45.3) | (39.9) | (35.6) | (33.0) | (33.0) | (33.3) | (32.5) | (32.1) | (357.5) |
| Escrow proceeds (2012 refunding bonds) | - | 64.7 | - | - | - | - | - | - | - | - | 64.7 |
| Working capital | 13.4 | (33.2) | 4.0 | 4.0 | 4.0 | 4.0 | 4.0 | - | - | - | 0.2 |
| Secured debt service | (35.4) | (39.4) | (39.4) | (39.4) | (39.4) | (39.4) | (39.5) | (39.5) | (39.5) | (39.6) | (390.5) |
| Contributions to income stabilization fund | - | (2.5) | (2.3) | (2.3) | (2.2) | (2.1) | (2.1) | (2.0) | (1.3) | (1.1) | (17.8) |
| Swap interest set-aside | (45.9) | (57.8) | - | - | - | - | - | - | - | - | (103.7) |
| QOL / exit financing principal/interest payments | (0.7) | (10.3) | (15.8) | (15.8) | (15.8) | (15.8) | (39.8) | (62.4) | (59.6) | (56.9) | (292.9) |
| Reorganization (Capital investments) | - | (139.5) | (106.4) | (65.6) | (50.2) | (43.6) | (51.9) | (46.0) | (40.4) | (38.6) | (582.2) |
| Restructuring professional fees | (49.4) | (127.6) | - | - | - | - | - | - | - | - | (177.0) |
| Blight (excludes heavy commercial) | - | (82.0) | (46.0) | (50.0) | (50.0) | (51.0) | (52.0) | (45.0) | (25.0) | (19.0) | (420.0) |
| PLD decommission | - | (2.5) | (5.0) | (15.0) | (10.0) | (10.0) | (10.0) | (12.5) | (10.0) | - | (75.0) |
| Contingency | - | (11.5) | (10.9) | (10.8) | (10.8) | (10.8) | (10.9) | (11.0) | (11.0) | (11.1) | (98.9) |
| Reinvestment deferrals | - | - | 20.5 | 15.2 | (2.7) | 1.5 | 7.4 | 35.3 | 3.6 | (20.5) | 60.2 |
| **Total expenditures** | (913.3) | (1,309.8) | (1,027.5) | (980.7) | (988.9) | (987.5) | (1,026.2) | (1,027.1) | (1,043.7) | (1,059.6) | (10,364.4) |
| **Funds available for unsecured claims** | $ 138.4 | $ 56.1 | $ 95.0 | $ 94.4 | $ 94.8 | $ 92.5 | $ 68.6 | $ 69.4 | $ 55.3 | $ 51.8 | $ 816.3 |

*Footnotes:*

(a) Assumes pending DPOA & DFFA deals are cash flow neutral.

(b) Health benefits include $142.8m of OPEB payments for current retirees in FY 2014 ($123.8m) and FY 2015 ($19m).

(c) The impact of the first decade increase in DDOT subsidy is assumed to be offset by operational savings beyond 2023.



**Plan of Adjustment - 40 year projections**
**Preliminary forecast and distributions**
*($ in millions)*

| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2014-2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sources** | | | | | | | | | | | |
| Funds available for unsecured claims | $ 138.4 | $ 56.1 | $ 95.0 | $ 94.4 | $ 94.8 | $ 92.5 | $ 68.6 | $ 69.4 | $ 55.3 | $ 51.8 | $ 816.3 |
| **Revenue stream from DWSD - no transaction** | | | | | | | | | | | |
| Pension | - | 65.4 | 45.4 | 45.4 | 45.4 | 45.4 | 45.4 | 45.4 | 45.4 | 45.4 | 428.5 |
| OPEB (based on 12.1% of OPEB - current retirees payments) | - | 2.6 | 2.4 | 2.4 | 2.4 | 2.4 | 2.4 | 2.4 | 2.4 | 2.4 | 21.7 |
| POC (based on 11.5% of total POC payments) | - | 0.8 | 1.6 | 1.6 | 1.6 | 1.6 | 1.6 | 1.6 | 1.6 | 1.6 | 13.6 |
| **Subtotal: Revenue stream from DWSD** | - | 68.8 | 49.4 | 49.4 | 49.4 | 49.4 | 49.4 | 49.4 | 49.4 | 49.4 | 463.8 |
| **Reimbursement from other funds** | - | (0.3) | 4.7 | 5.3 | 3.9 | 3.7 | 6.9 | 6.8 | 6.7 | 6.6 | 44.3 |
| **Grand Bargain funding** | | | | | | | | | | | |
| Foundation fundraising | - | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 164.7 |
| DIA contributions | - | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 45.0 |
| State settlement | - | 194.8 | - | - | - | - | - | - | - | - | 194.8 |
| **Total sources** | $ 138.4 | $ 342.7 | $ 172.4 | $ 172.4 | $ 171.3 | $ 168.9 | $ 148.2 | $ 148.9 | $ 134.7 | $ 131.1 | $ 1,728.9 |
| | | | | | | | | | | | |
| **Uses** | | | | | | | | | | | |
| **Retiree payments** | | | | | | | | | | | |
| PFRS pension payments | - | (114.3) | (18.3) | (18.3) | (18.3) | (18.3) | (18.3) | (18.3) | (18.3) | (18.3) | (260.7) |
| GRS pension payments | - | (188.2) | (76.9) | (76.9) | (76.8) | (76.6) | (56.5) | (56.5) | (55.2) | (54.9) | (718.5) |
| PFRS OPEB payments - current retirees | (9.1) | - | - | - | - | - | - | - | - | - | (9.1) |
| GRS OPEB payments - current retirees | (10.9) | - | - | - | - | - | - | - | - | - | (10.9) |
| **Subtotal: retiree distributions** | (20.0) | (302.5) | (95.2) | (95.2) | (95.1) | (94.9) | (74.8) | (74.8) | (73.5) | (73.2) | (999.2) |
| **Note and cash payments** | | | | | | | | | | | |
| Note A1 (UTGO) | - | (45.8) | (41.5) | (41.5) | (40.5) | (38.4) | (37.8) | (37.1) | (24.1) | (20.8) | (327.6) |
| Note A2 (LTGO) | - | (55.0) | - | - | - | - | - | - | - | - | (55.0) |
| Note B (incl. B reserves) | - | (12.6) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (25.3) | (214.9) |
| 36DC cash payments | - | (0.5) | (0.4) | (0.4) | (0.4) | (0.4) | - | - | - | - | (2.2) |
| Note C (POC) | - | (5.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (84.8) |
| **Subtotal: note and cash payments** | - | (119.0) | (77.2) | (77.2) | (76.2) | (74.0) | (73.0) | (72.4) | (59.4) | (56.1) | (684.5) |
| **Total distributions / total uses** | $ (20.0) | $ (421.5) | $ (172.4) | $ (172.4) | $ (171.3) | $ (168.9) | $ (147.9) | $ (147.2) | $ (132.9) | $ (129.3) | $ (1,683.7) |
| | | | | | | | | | | | |
| Surplus / (deficit) | $ 118.4 | $ (78.8) | $ - | $ - | $ - | $ - | $ - | $ 0.3 | $ 1.7 | $ 1.7 | $ 1.8 $ 45.2 |
| Ending cash balance (a) | $ 154.4 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.6 | $ 75.9 | $ 77.6 | $ 79.4 | $ 81.2 $ 81.2 |
| **Memo:** | | | | | | | | | | | |
| FY14 expenditures to be spent in FY15 | (78.8) | 78.8 | | | | | | - | | - | - |
| Adjusted surplus / (deficit) | $ 39.6 | $ - | $ - | $ - | $ - | $ - | $ 0.3 | $ 1.7 | $ 1.7 | $ 1.8 | $ 45.2 |

*Footnotes:*

(a) Includes 5% of budgeted expenditures as required by State law.



# EXHIBIT 22

Admitted Oct 3, 2014

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

Debtor,

_____/

Chapter 9

Case No. 13-53846

Hon. Steven W. Rhodes



EXHIBIT

Ex. 22

## EXPERT REPORT OF MARTHA E.M. KOPACZ
## REGARDING THE FEASIBILITY OF THE CITY OF DETROIT PLAN OF
## ADJUSTMENT

On April 22, 2014, Judge Rhodes entered an Order[1] appointing me as the Court's expert witness. Pursuant to that Order, "(t)he Court's expert shall investigate and a reach a conclusion on:

(a) Whether the City's plan is feasible as required by 11 U.S.C. § 943(b)(7); and

(b) Whether the assumptions that underlie the City's cash flow projections and forecasts regarding its revenues, expenses and plan payments are reasonable."

I am providing this Report under Fed. R. Evid. 706(a). Should additional information become available, I reserve the right to amend or supplement this Report.

_____

[1] Docket #4215, Order Appointing Expert Witness

Court's
Exhibit
**12000**

1

## Section A – Introduction, Scope and Approach

### Introduction

I am a Senior Managing Director with Phoenix Management Services, LLC ("Phoenix"), Boston, MA and my *curriculum vitae* is attached as Exhibit 1. I have been assisted throughout this engagement by my colleagues from Phoenix. My billing rate is $595 per hour and the billing rates of my colleagues range from $100 per hour to $550 per hour. As a courtesy, we are reducing our rates by 10% in this case. I have testified previously as noted in my proposal.[2]

### Scope and Approach

The scope of my engagement is limited to providing an opinion *only* as to feasibility of the Plan of Adjustment ("POA" or "Plan") of the City of Detroit ("Detroit" or the "City"). My engagement does not include providing an opinion regarding the best interest of creditors. There is little applicable case law related to what constitutes feasibility in a chapter 9 proceeding and even less guidance on my

---

[2] Docket #4068, Notice Regarding Interviews of Expert Witness Applicants, pages 266-267

2

role as the Court's independent expert. As such, I developed an approach for this assignment based upon my professional experience and taking into account the facts and circumstances of this matter that I believed to be most relevant. In large measure, I and my team, ("we") have followed the outline contained in my proposal, which is included below.[3]

- Understand the framework and methodology used to prepare the Ten-Year Plan including reliance on historical information
  - Conduct interviews of key personnel and financial advisors
  - Review documentation used to develop the forecasts
  - Review other third party information to independently verify assumptions
- Perform a detailed analysis of the Plan's financial and cash flow forecasts to determine baseline and critical assumptions
- Critique and analyze critical assumptions - those that have significant dollar and/or timing impact and, if not achieved, could decrease cash flow significantly
  - Revenue and/or cash receipts
  - Cost cutting initiatives
  - Reinvestment initiatives and capital spending
  - Interest rate variations
  - Provisions for contingencies
- Evaluate the execution risks associated with the Ten-Year Plan
  - Availability of financial and human capital
  - Reasonableness of timing assumptions
  - Reasonableness of dollar impact (cost or benefit)
  - Adequacy of contingencies
- Perform sensitivity analysis related to the forecast and critical assumptions, as appropriate, to better assess the achievability of the projections
- Form an opinion as to the feasibility of the Ten-Year Plan, as presented

---

[3]Docket #4068, Notice Regarding Interviews of Expert Witness Applicants, pages 256-257

3

Court's Ex 12000-003

- Prepare a written report supporting the opinion including additional information that facilitates communication and understanding by stakeholders of the likelihood of Plan success and the potential risks associated with Plan execution

We began with stakeholder interviews amongst the groups listed below. The "Contact Log" as directed in Judge Rhodes' Order, is included as Exhibit 3. This fact- and perception-gathering phase was important to understanding the current situation with the City, the status of bankruptcy case and how the City was approaching its restructuring.

- City of Detroit elected and appointed officials (including the Mayor, City Council President, Chief Financial Officer, Chief of Police and department heads)
- Emergency Manager
- City employees
- City of Detroit retained advisors
  - o Jones Day
  - o Ernst & Young
  - o Conway MacKenzie
  - o Miller Buckfire & Co.
- City's retirement systems (PFRS and GRS) and their advisors
- City's public safety labor unions and their advisors
- Creditor constituencies and their advisors
- Detroit Land Bank Authority
- Detroit Institute of Art and their advisors
- Charitable foundations and City benefactors

We then approached the analytical phase, which was iterative. We reviewed and analyzed documents relevant to the City's Plan and the financial projections. We reviewed other City data and third party information to provide background and

4

Court's Ex 12000-004

perspective on the Ten Year ("10 Yr") and Forty Year ("40 Yr") projections and the Restructuring and Reinvestment Initiatives ("RRIs"). We asked more questions of the City, its advisors and other stakeholders, requested more information, and analyzed that information. This process was repeated as necessary until our questions were answered. Some general categories of data, documents and information we reviewed and analyzed are identified below. A more complete listing is included in Exhibit 2.

- Court Documents – POA, Disclosure Statement, City Motions and Creditors' Objections, Eligibility Opinion, Court Orders, Court Docket
- May 5, 2014 and July 2, 2014 10 Yr projections, 40 Yr projections and RRIs, including working models
- Third Party Reports
  - Detroit Blight Removal Task Force Plan
  - Detroit Future City Strategic Framework Plan
  - Consulting reports – McKinsey
  - State and various task force reports on Detroit's financial condition
  - Various federal, state and regional government reports

We critiqued the methodology used to develop the financial projections, as well as the data and information used as the foundation for the assumptions. An explanation of these models is contained in Part II, Section E. We identified the assumptions used to create the June 2013 Baseline Projections and the assumptions that formed the 40 Yr projections. We identified and analyzed the assumptions contained in the RRIs and tested both projections (May 5th and July 2nd) for mathematical integrity.

5

Court's Ex 12000-005

My assessment focused primarily on operations that are accounted for in the City's General Fund. In addition to the City's General Fund activities, the City has numerous operations that are accounted for in Enterprise Funds. Only Enterprise Funds that have an impact on the City's General Fund were evaluated to determine their impact on the feasibility. [4]

## The Report

This Report is comprised of four parts. Part I includes my opinion and the building blocks I used to formulate that opinion. This includes background and contextual information that underpin my assessment as well as the definition I and my team formulated for "feasibility" which establishes the framework for my opinion. Part I includes Sections A through D.

Part II is comprised of Sections E through H and provides insight into the quantitative factors that impact my feasibility assessment. Part III consists of

---

[4]For example the Detroit Department of Transportation (DDOT) operates primarily as an Enterprise Fund but receives a significant subsidy from the General Fund to fund negative cash flow in the Enterprise Fund; therefore, the failure of DDOT to achieve its plans directly impacts the City General Fund.

6

Court's Ex 12000-006

Sections I through O and include those issues that affect feasibility in a qualitative

manner. Part IV contains the Conclusion. A Table of Contents follows.

Court's Ex 12000-007

## Table of Contents

PART I                                                                          **Page**

    Section A          **Introduction, Scope and Approach**          2

    Section B          **Statement of Expert's Opinion**               9

    Section C          **Feasibility Definition**                      12

    Section D          **Context**                                     22

PART II

    Section E          **City of Detroit Financial Forecast Summary**  31

    Section F          **Revenue and Macro Assumptions**               39

    Section G          **Operating Expenditures**                      64

    Section H          **RRIs and Non-Operating Expenditures**         85

PART III

    Section I          **Systems, Controls and Reporting**             111

    Section J          **Pensions**                                    124

    Section K          **Human Capital and Leadership**                157

    Section L          **Blight**                                      167

    Section M          **Post Confirmation Oversight**                 175

    Section N          **Unresolved Issues**                           180

    Section O          **Other Risks and Opportunities**               192

Part IV

    Section P          **Conclusion**                                  199

## Section B – Statement of Expert's Opinion

On April 22, 2014, Judge Rhodes entered an Order[5] appointing me as the Court's expert witness. Pursuant to that order, "(t)he Court's expert shall investigate and a reach a conclusion on:

(c) Whether the City's plan is feasible as required by 11 U.S.C. § 943(b)(7); and

(d) Whether the assumptions that underlie the City's cash flow projections and forecasts regarding its revenues, expenses and plan payments are reasonable."

This Report contains my expert opinion and the basis for that opinion. I was assisted by my colleagues at Phoenix Management Services LLC. My work has been guided by the approach that was outlined in my proposal[6] and discussed during

---

[5] Docket # 4215, Order Appointing Expert Witness

[6] Docket # 4068, Notice Regarding Interviews of Expert Witness Applicants, pages 256 and 257

9

Court's Ex 12000-009

my interview on April 18, 2014[7]. I, and members of my team, have conducted more than two hundred interviews and fact gathering meetings with persons involved in this matter or with persons I believed to be helpful to me in forming my opinion.

Based on this work, I conclude that:

(a) The City's plan is feasible as required by 11 U.S. C. § 943(b)(7); and

(b) The assumptions that underlie the City's plan of adjustment projections regarding its revenues, expenses and plan payments are reasonable.

It should be noted that this opinion is rendered in an environment where there are many factors that will have influence on the City's conditions post confirmation that are unknown and unknowable. Throughout this Report, I have noted some of these factors, while other factors may not even be recognized today as potentially having an impact. My opinion is necessarily limited by these unknown factors. It should be recognized, that these factors, when known, could have a material impact on my view of feasibility.

The above statement should only be viewed in the context of this entire Report. No reliance should be made on these statements outside of the context of this Report.

---

[7] Transcript of Hearing, April 18, 2014

10

Court's Ex 12000-010

The remainder of this Report will provide my definition of feasibility, the context in which I am rendering my opinion and my assessment of the key factors affecting my feasibility assessment. While my opinion is arguably very narrowly limited to "feasibility", the assessment I and my team did to arrive at my opinion is multifaceted. This Report attempts to clearly and succinctly lay out the foundation, framework and details supporting my opinion.

The following section, Section C, addresses my definition of feasibility and relies upon numerous resources – legal and otherwise – and my own experience to establish the benchmarks against which I assessed feasibility. Section D discusses the context in which I am rendering my opinion. While there are common experiences among every restructuring and even among municipalities, the unique mix that is Detroit and this chapter 9 proceeding, necessarily impact my perspective and opinion. My intent is not to rehash every issue or pleading that has occurred in this case or even Detroit's recent history, but rather, to highlight a few aspects of the facts and circumstances of this case which have had an important impact on the formulation of my opinion. The last sections of the Report provide a more in depth review of the issues, quantitative and qualitative, I found particularly relevant to my assessment of feasibility. By no means does this Report include every factor I reviewed or considered but does include those issues that shaped my opinion to the greatest extent.

Court's Ex 12000-011

## Section C – Feasibility Definition

### Defining a Feasibility Standard

Section 943(b)(7) of the Bankruptcy Code requires that before a plan of adjustment may be confirmed the Court must determine that the plan is feasible. However, the Bankruptcy Code does not define "feasible." Few chapter 9 cases address the feasibility requirement[8] and there is little in the way of authoritative writing published regarding feasibility. [9]

In assessing feasibility, I have examined available legal authority and consulted with counsel and other experienced professionals to assist in the formation of an appropriate approach to determining feasibility of the City's POA. Every

---

[8] In re *Mount Carbon Metropolitan District*, 242 B.R. 18, 31 (Bankr. D. Colo. 1999) ("The Code does not define feasibility in Chapter 9 nor does it specify what factors the Court should consider in determining whether the Plan is feasible. Due to the relative rarity of Chapter 9 cases, neither the parties nor the Court have found case law specifically addressing the issue.")

[9] Pryor, Scott C., <u>Who Bears the Cost?  The Necessity of Taxpayer Participation in Chapter 9</u>, (June 11, 2014) Available at SSRN, http://ssrn.com/abstract=2448997. The author referring to feasibility: "(w)hat is merely unclear in chapter 11 is an impenetrable fog in chapter 9."

12

restructuring professional, with some degree of experience, probably believes they understand what feasibility is and what it is not. However, in my early discussions with professionals in this case, my own research, and consultations with professionals not involved in the Detroit matter, I found a variety of nuanced points of view regarding a definition of feasibility. Therefore, while it will ultimately be up to the Court to articulate the precise legal parameters of feasibility in this Case, I, along with the Phoenix team, have developed the following feasibility definition (the "Standard"), which I believe is crucial to serving the Court's purpose for my appointment:

> *'Is it likely that the City of Detroit, after the confirmation of the Plan of Adjustment, will be able to sustainably provide basic municipal services to the citizens of Detroit and to meet the obligations contemplated in the Plan without the significant probability of a default?'*

## Two Dimensions of the Standard

While I believe that there are certain imposed limitations on feasibility within this Standard, I have taken a relatively structured approach to my view of what is included in feasibility. The Standard includes both quantitative and qualitative components:

<u>Quantitative</u>

- Are the projections contained in the POA mathematically correct and materially reasonable?
- Are the assumptions that the City has used to develop its projections individually, and when taken as a group, reasonable?
- Is there an adequate contingency included in the projections?

<u>Qualitative</u>

- Does the City have the human resources, or can it likely recruit the human resources, required to meet its obligations under the POA?
- Does the City have the appropriate systems and procedures to monitor its financial performance and to provide early warning signs of variances in performance that might cause the City to fall short of the projections and be unable to meet its obligations under the POA?
- Are there appropriate structures to ensure the City's compliance with the POA and with reasonable government standards of operation?
- Will the City be able to reasonably deliver a minimum level of municipal services?
- Is the City's trajectory sustainable?

The quantitative assessment of feasibility is straightforward but exacting. As

will be more fully discussed in Part II, the projections[10] in the POA are (correctly

---

[10] For purposes of this Report, "projections in the Plan" are inclusive of the 10 Yr plan, the 40 Yr plan and the RRIs. If only one of these is discussed, it will be noted. The term "forecast" is often used as a synonym for "projections". While this is not technically correct within accounting literature, the terms will be used interchangeably in this Report to provide variety. The term "model" is used in this Report to describe the one or more excel spreadsheets that together form a financial projection. A "values only model" or "flat model" is essentially a printout of the excel spreadsheets, although it may be provided in electronic format rather than in hard copy. A "working model" contains all the cell references, formulas and

14

so) quite detailed in many areas. Financial modeling is a highly subjective undertaking that is affected by the assumptions made and the professional biases of the analyst developing the model. Financial modeling is both a science and an art. When the analyst forecasts growing revenue, declining costs, or a change in headcount, he or she has a number of ways to write the mathematical formulas which arrive at the intended numbers. In this case, the POA projections are comprised of multiple forecasts, inclusive of hundreds of individual spreadsheets, prepared by many different individuals and then concatenated into what we all simply call the "projections"[11]. Simple questions, such as "are the salaries used to determine the cost of newly hired employees reasonable?" become detailed. For example, the salary estimates are multifaceted depending on which model and which analyst did the modeling and appear in many of the RRI projections. Because of this, the

_____

"macro" commands that are within the spreadsheets and allows a reviewer of the model to understand what the inputs and assumptions are that create the projections. It is in the working model that a reviewer can understand the "art" of the analyst's modeling.

[11] Expert Report of Charles M. Moore, CPA, CTP, CFF in re City of Detroit, Michigan. In footnote 2, Mr. Moore provides a similar explanation of modeling methodology: "Given the number and diversity of the departments my team and I examined, the specific methodology utilized was not exactly the same for each department. Notwithstanding any particular deviations that were necessary, this core methodology and approach was generally utilized across our analysis and development of the Reinvestment Initiatives." This is an example of differences that can occur within a model built by the same firm. There were also differences in modeling approach used by Conway MacKenzie, Mr. Moore's firm, and Ernst & Young, the City's other financial advisor.

15

quantitative assessment of "reasonableness" surrounding the individual assumptions, and assumptions taken as a group, of the POA projections was more involved than I would have expected.

The qualitative aspects of the Standard include what I have come to refer to, as "skill and will" and are as important as the quantitative assessment. Qualitative aspects also include external influences that can affect the implementation of the Plan. Part III, Section K – Leadership and Human Capital, discusses the City's need for more highly skilled employees. Another qualitative issue is the upcoming transition from the leadership of the Emergency Manager to the leadership of Mayor Duggan and his administration. When that transition occurs, there will be little more than three years remaining within which the current elected officials will have the responsibility to operate the City consistent with the POA – therefore political 'will' must be passed to future elected officials. This is not a problem limited to Detroit, but to all municipal proceedings. Section M – Post-Confirmation Oversight discusses ways to mitigate this variable.

## The Aspect of Time on the Standard

A municipal government is an entity designed to exist in perpetuity. Therefore, as we considered feasibility there is a requirement to determine the timeframe for the feasibility assessment. As we developed the feasibility Standard, we considered the following questions:

- Given the electoral system and the requirement for strong leadership, do we limit the timeframe to the next election cycle?
- Is there some other timeframe at which feasibility stops? For example, if after 5 years, visibility into the operations of the City becomes more opaque, do we only consider the first 5 years?
- Do we consider the timeframe over which financial commitments are made in the POA? That is, do we look at the restructured pension obligations of the retirees and current employees and attempt to determine whether the POA is feasible during their entire lifetimes?

Ultimately, we based our Standard on an indeterminate time period. However, I believe that the issues of feasibility must be viewed both in terms of their quantitative or qualitative impact <u>and</u> the time horizon over which the impacts may occur. That is, as the time horizon expands, so too does the magnitude required for an issue to impact feasibility. For example, a potential $50 million shortfall in year 1 will have a much more significant impact on the assessment of feasibility than the same shortfall in year 20.

17



## The Standard Allows for a Range of Values

An additional aspect to my definition of feasibility is the concept that the reasonableness of the quantitative and qualitative components of the Standard can be a range of values. When looking at the reasonableness of assumptions and projections, most people understand that "reasonable" can exist along a continuum. Projections can be reasonable and favor the views of the debtor and projections can be reasonable and favor the views of creditors. Of course, at the outer edges of "reasonable", values become unreasonable, either because they are exceptionally conservative or wildly aggressive. We have evaluated the assumptions imbedded with the financial forecasts within this continuum of reasonableness.

Detroit differs from a company emerging from chapter 11 in that the City does not have to be service delivery solvent to emerge from bankruptcy. It will be on a

Court's Ex 12000-018

trajectory towards service delivery solvency[12] and in some areas, the current level of service is adequate. I do not need to envision that Detroit will become a best in class municipality to determine that the POA is feasible. For Detroit, emerging from essential services failure to adequate and reasonable service delivery will be a success.[13]

## What Feasibility is Not

When we developed the feasibility definition, we also considered what feasibility does not include. First, and foremost, feasibility is not a guarantee. If the City were to propose a plan under which, based on reasonable assumptions, the City could not help but meet its obligations – effectively a guaranteed outcome – it is likely that while feasible, such plan would not satisfy the best interests of creditors test under section 943(b)(7) of the Bankruptcy Code.[14]

---

[12] Eligibility Opinion of Judge Rhodes

[13] Anderson, Michelle Wild "The New Minimal Cities" http://yalelawjournal.org/article/the-new-minimal-cities; March 2014

[14] The "best interest test of creditors" is specifically outside the scope of my appointment and as such, is not part of the opinion I have formed. See Docket #4215, Order Appointing Expert Witness, ¶2 and 3.

19

Court's Ex 12000-019

Similarly, but at the other end of the spectrum, a feasible plan should avoid visionary schemes primarily based on "mere hopes, desires and speculation"[15]. Further, the Court must determine whether there is a reasonable prospect of successful completion of the proposed plan.[16] As a point of reference, a frequently cited legal standard for feasibility in Chapter 11 is whether the factual showing at the plan confirmation hearing establishes a "reasonable assurance of success," though "success need not be guaranteed."[17]

Lastly, I do not believe the Standard entails: (1) whether the projections in the POA may generate more cash to distribute and therefore provide greater recoveries for creditors or (2) whether there may be alternative plans that could produce a better outcome for the City or its creditors. During my team's evaluation of feasibility, we have been exposed to numerous views on these subjects. Because this is outside my scope and not included in our Standard, I have not attempted to form, nor have I formed, any opinion on these matters.

---

[15] 242 B.R. 18 (1999) in re Mount Carbon Metropolitan District.

[16] Lawall, Francis J. and Miller, J. Gregg, Debt Adjustments for Municipalities Under Chapter 9 of the Bankruptcy Code, a Collier Monograph, 2012.

[17] Case, Stephen H., Some Confirmed Chapter 11 Plans Fail, So What?, 47 B.C. L. Rev. 59 (2005), http://lawdigitalcommons.bc.edu/bclr/vol47/iss1/4.

20

Court's Ex 12000-020

In summary, the Standard we have defined includes both quantitative and qualitative assessments of feasibility, including a risk assessment measured against a time horizon and allows for a reasonable range of values within the projections. This Standard is the backdrop against which the remainder of this Report should be read.

Court's Ex 12000-021

## Section D - Context

This section of the Report attempts to identify some of the contextual parameters for my expert opinion. The role as the Court's expert on feasibility is both vast and specific, and subsumed within a unique set of facts and circumstances surrounding the City of Detroit, its history and plethora of challenges. Included amongst these topics are:

- The impact of the bankruptcy process on the feasibility assessment
- An "as is" perspective of Detroit which anchors my opinion
- An explanation of what the Plan of Adjustment is and is not
- Identification of factors that affect my opinion separate and apart from the proposed POA

<u>Bankruptcy Process Impact</u>

I am humbled and honored to have been selected as the Court's expert in this matter. The speed with which this restructuring and bankruptcy case has progressed is nothing short of extraordinary. The speed has been both an advantage and a disadvantage to the feasibility of the POA.

22

Court's Ex 12000-022

The restructuring profession generally views quick trips through the bankruptcy process to be advantageous for a variety of reasons: less distraction of the management team, lower professional costs, more negotiated (vs. litigated) solutions, quicker payments to creditors, and less uncertainty for employees and vendors. This could all be true with the Detroit case.

However, I believe the speed of this proceeding has negatively impacted the level of feasibility of the POA. This bankruptcy has been largely focused on deleveraging the City, often to the exclusion of fixing the City's broken operations. The bilateral mediations between the City and the creditor groups worked well to quickly deliver settlements of key disputes. However, the lack of time available for multiparty negotiation has resulted in settlements that, taken in total, greatly reduce the contingency available in the Plan. Pain sharing is an important component of the restructuring process that helps ensure that all the stakeholders appreciate the "size of the pie" as opposed to creating the proverbial "win-lose" tug of war between the debtor and the creditor.

23

Court's Ex 12000-023

Detroit "As Is"

Detroit is at a tipping point. While some may consider the chapter 9 filing as the low point in this great City's history, I believe that it was the beginning of creating what can become a virtuous cycle of revitalization, improving economics and quality of life betterments for those who choose to live and work within the City. It is hard to imagine that people with such diverse political and socio-economic perspectives would have come together as they have in this process without the bankruptcy filing. Traditional political maneuverings are working to Detroit's advantage and residents have the prospect of once again living in a community that is more safe and supportive. Black, white, Republican, Democrat, poor, wealthy, educated, illiterate and everyone in between have an opportunity to contribute to the virtuous cycle of revitalization, or not.

The City of Detroit's chapter 9 filing has justifiably received extensive attention across international media and within legal and financial circles. The outcomes will be referenced extensively for years, for what was accomplished and arguably, what could have been accomplished during the proceedings. As the largest chapter 9 to date, if any municipality ever needed the protection and tools of the bankruptcy process, it is Detroit. At every level, Detroit was failing as a city – as measured by the shrinking of its population, useful infrastructure and purposeful

24

enterprises - and as a government – as measured by its inability to deliver essential services. Having spent a large amount of time in Detroit since my appointment, my interaction with citizens, City employees and stakeholders in the bankruptcy have influenced my view of both the in-court restructuring and the out-of-court work that is equally important to Detroit's ability to effectuate its POA.

## The Plan of Adjustment

Even after many years of practice with dysfunctional, insolvent, operationally troubled enterprises, I was confused by the City's projections in POA. Section E of this Report provides detail on how the projections and RRIs are structured. Suffice it to say that the "10 Yr projections", the "10 Yr/40 Yr projections," and the "Restructuring and Reinvestments Initiatives" form an unusual construct for a financial plan for an enterprise attempting to emerge from bankruptcy. The baseline projections ("10 Yr projection, Exhibit J to the Disclosure Statement) were prepared in June 2013 to show what would happen to the City without a restructuring, which they did very well. The "10 Yr/40 Yr projection" (Exhibit K in the Disclosure Statement) expands the baseline, steady state projection for the 40 Yr time horizon of the POA. Then, in order to begin to understand how the restructured Detroit might operate – delivering services and paying creditors – one must factor in the RRIs

25

Court's Ex 12000-025

contained in Exhibit J to the Disclosure Statement. This is convoluted and contributes to the feelings amongst many creditors in this case that the financial projections in the POA are a "black box" and that it was the City's intent to obfuscate important information. I choose to believe that is was simply an unfortunate result of two advisory firms sharing responsibilities[18] rather than one firm "owning" the financial projections start to finish, as is, and should be, the norm.

The City's Plan of Adjustment is primarily limited to a "balance sheet" restructuring, as chapter 11 veterans would characterize it, and it includes only some of the City's operations. This is loosely analogous to a company that files a bankruptcy for the parent company and some, but not all, of the subsidiaries. The chapter 9 proceeding has been overwhelmingly focused on deleveraging the City for the long term, reducing future obligations. That is good. However, the operational restructuring that often occurs with commercial reorganizations will be left largely to Mayor Duggan and his managers for the post confirmation period. That is

---

[18]Ernst & Young, originally retained by the City of Detroit in May 2011, and Conway MacKenzie, originally retained by the City of Detroit in January 2013, have served the City post-petition in a collaborative arrangement. Each firm has taken responsibility for certain aspects of typical debtor "financial advisory" services and the firms work well together. No comments herein should be construed as criticism of this collaboration; rather, I believe it would have been preferable for a single firm to have prepared a single, integrated financial projection for the POA.

26

Court's Ex 12000-026

unfortunate but is understandable given the speed with which this bankruptcy has occurred and the Emergency Manager's priorities during his similarly short tenure.

Readers of the POA should view the Plan projections as a "sources and uses" statement which describes cash available to fund delivery of some of the services the City provides and certain payments to creditors. As such, these projections are useful only for purposes of confirming the POA (or not, as the case may be) and directionally providing guidance for the City to plan its finances going forward for those operations that are addressed in the POA. It is important to understand that the POA projections are not a business plan for the City. They are not the City's budget. They are not the "financial plan" referenced in Public Acts 181 and 182 of 2014, also referred to as the "Grand Bargain" legislation.

The confusion about the projections in the POA and these other financial plans is evident within the City including its employees, amongst the media and the stakeholders. The projections in the POA have not been harmonized with the City's budget that was passed by the City Council on June 5, 2014. As such, any funding of the RRIs will require first identification of a funding source, and then approval by the CFO and Mayor, and finally, approval by the City Council of a budget amendment to support the appropriations. Although the City has many financial reporting priorities, it is highly advisable that the budget department amend the

27

Court's Ex 12000-027

approved June budget for the numerous anticipated changes post confirmation, harmonizing the current headcounts and spending levels with the RRIs that the City intends to execute in the coming year, and submit a new budget to the City Council for approval.

The sooner the City can divorce itself from the confusion created by the POA projections, the better. The City needs a multi-year Business Plan which can act as a single financial and operational plan, including all departments and enterprise activities (of which an amended budget would be a part) as well as capital plans that can be publicly communicated and compared to actual performance. A "bridge" should be prepared which identifies the components of the POA projections that are included in the City's Business Plan and then the POA projections can be archived.

Another confusion I believe exists in the POA is the investment plan for infrastructure and service delivery improvements that are required to revitalize the City. Those funds will necessarily come from reducing costs of existing service delivery either through efficiency improvements or elimination of activities. The media has created the impression that the City's investment of more than $1 billion over the course of the coming years is a "given". This is incorrect. There is no funding source for these investments, including blight removal, other than the Exit

28