UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                    Bankruptcy Case No. 13-53846

City of Detroit, Michigan,                Honorable Thomas J. Tucker

   Debtor.                                Chapter 9

_____

**DARELL CHANCELLOR'S RESPONSE IN OPPOSITION TO THE CITY OF DETROIT'S MOTION FOR ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST DARELL CHANCELLOR**

Darell Chancellor, by his Attorneys Johnson Law, PLC, responds to the City of Detroit's motion as follows:

**I.     Introduction**

1.     It is admitted that Chancellor filed the subject lawsuits which have been consolidated by order of the Federal District Court. Chancellor's claims did not accrue or arise until his conviction was vacated on March 24, 2020, and as such the filing of the lawsuit does not violate the discharge and injunction instructions in the City's confirmed plan in the Bar Date Order.

2.     The first notification that Plaintiff received that Defendant intended to assert a bankruptcy discharge wasn't provided until shortly before the filing of this motion in April of 2023. The case had been pending since Defendant filed their answer to the original complaint in July of 2020. Discovery had been continuing

and up to 30 depositions have already been taken. The City of Detroit did not raise a bankruptcy discharge as an affirmative defense pursuant to FRCP 8(c) in answer to the original complaint or the amended complaint as they were required to do. See *Mickowski v Visi-Trak Worldwide, LLC*, 415 F3d 501, 506 (6th Cir. 2005).

## II. Factual Background

### A. The City's Bankruptcy Case

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

### B. Chancellor's Lawsuits against the City and Officer Stephen Geelhood

12. Admitted.

13. Admitted.

14. Admitted.

15. Neither admit nor deny while noting that the state and federal claims involved distinct elements and defenses.

16. Prior to being tried and wrongfully convicted in 2012 of constructive possession of 450-990 grams of cocaine at issue in the pending civil action, between 2000 and 2003, Plaintiff plead guilty to charges of possessing narcotics less than 50 grams and one armed robbery. (Exhibit 1, Criminal General Information/Habitual). Notably, as he did in 2012, Plaintiff entered a not guilty plea in April of 2002, to a fraudulent gun charge that was falsely asserted against him by another notorious member of the Detroit Police Department—former Officer Melendez. (Exhibit 2, ROA). Officer Melendez was later fired for misconduct and the fraudulent gun charge against Plaintiff was dismissed on May 7, 2002.

17. Admitted.

18. Admitted.

19. Before being discharged from prison on parole in December of 2010, Plaintiff acquired the home on 9209 Robson Street in Detroit by quit claim deed which was recorded on November 9, 2010. While his home on Robson was being renovated, Plaintiff briefly stayed with his mother on 32nd Street. (Exhibit 3, Recorded Quit Claim Deed).

20. Admitted.

21. Admitted.

22. Admitted. Geelhood falsely alleged that he received information from a confidential informant (CI). Niether the City or Geelhood have ever been able to substantiate or confirm that the CI referenced in the subject affidavit ever existed.

23. Admitted. Long after Plaintiff had moved into his home with his wife, Katrice Alford, and his newborn son, Geelhood falsely swore to conducting surveillance at Plaintiff's mother's home on 32nd Street and to seeing Plaintiff purportedly conducting narcotic transactions. (Exhibit 4, Search Warrant/Affidavit). Moreover, he claimed to observe a Black male who was 5'8" and 180 pounds. *Id*. The LIEN information pulled up by the Detroit Police Department one day after the raid dated on November 2, 2011 didn't even substantiate the description in the affidavit that Geelhood falsely swore to. That LEIN identified Plaintiff as two inches taller at 5'10" and 50lbs heavier at 230 lb. (Exhibit 5, DPD LIEN Info).

24. Geelhood claimed to have discovered 450-999 grams of cocaine in a laundry hamper of clothes that was in a common room upstairs on 32nd Street next to a room that was occupied by Plaintiff's sister, Crystal Chancellor.

25. Admitted. It is undisputed that Plaintiff was not present at his mother's home when the search warrant was executed. Chancellor wasn't even arrested until he was pulled over on a traffic stop the next year on May 2, 2012. (Exhibit 6, Detainee Input Sheet).

26. Admitted.

27. Admitted. Plaintiff further alleges that he was wrongfully convicted and imprisoned for over eight years until the Wayne County Prosecutor's Office moved to have his conviction and sentence vacated on March 24, 2020. (Exhibit 7, Order to Vacate)

28. Admitted. Geelhood never accounted for the gross discrepancies in his descriptions of Plaintiff's weight and height versus Plaintiff's actual height and weight. Geelhood never corroborated his undocumented "sighting" of Plaintiff with something like a utility bill that connected Plaintiff to his mother's home, property search, or CLEAR . Yet at the criminal trial Geelhood insisted that Plaintiff was the same person he purportedly observed during his 30-minute surveillance the day before the raid.

29. Admitted.

30. Admitted.

31. Admitted. The two paragraphs quoted by the City of Detroit are allegations from Plaintiff's Second Amended Complaint. (ECF No. 13, PageID.100).

32. Admitted.

33. Admitted.

34. Admitted.

35. Admitted.

36. Admitted.

37. Admitted.

38. Admitted.

39. Admitted.

**C. Chancellor's Appeal**

40. Admitted.

41. Admitted. Judge Shapiro's dissent, however, was telling. (Exhibit 8, COA Dissent).

42. Admitted. The Conviction Integrity Unit, a division of the Wayne County Prosecutor's Office, began investigating Plaintiff's conviction in 2018 and ultimately concluded that Plaintiff had been wrongfully convicted as a result of Geelhood's false statements.

**III. Argument**

43. These allegations are denied as Plaintiff's claims did not accrue until his conviction was vacated on March 24, 2020.

44. It is disputed that under the "fair contemplation" test, Mr. Chancellor could have ascertained through the exercise of reasonable due diligence that he had a claim against the City. His claim did not accrue until it was found that Ofcr. Geelhood committed fraud in obtaining the subject search warrant.

45. It is denied that the plan's discharge provision applies to Mr. Chancellor as he did not have a responsibility to file a proof of claim as he did not, under the "fair contemplation" test, have a reason to file such claim.

46. It is denied that Plaintiff's claims should be barred by the discharge plan. In furtherance of this position, Plaintiff asserts that the City should be prohibited from raising this discharge claim due to the fact that they did not raise the claim in their affirmative defenses in answer to the complaint and amended complaint filed in violation of FRCP 8(c).

47. Mr. Chancellor denies the allegations in paragraph 47 as under the circumstances of this case, in which the City failed to assert the affirmative defense of bankruptcy discharge, the filing of the complaint in the United States District Court for the Eastern District of Michigan was appropriate.

## IV. Conclusion

48. Plaintiff requests the following relief:

   a. Plaintiff requests that the City of Detroit's motion be denied in its entirety;or

   b. That if the Court does grant a portion of the City of Detroit's motion, the order should be limited to:

   i. An order (a) directing Chancellor dismiss or cause to be dismissed his claims against the City and Geelhood in his representative capacity with prejudice from the lawsuit; (b) permanently barring, estopping and enjoining Chancellor from asserting claims alleged in, or claims related to the lawsuits against Geelhood (in his

7

13-53846-tjt    Doc 13699    Filed 06/09/23    Entered 06/09/23 16:48:53    Page 7 of 9

              representative capacity, and the City; (c) prohibiting Chancellor from sharing in any distribution in this bankruptcy case.

      c.      In the event the Court does grant a portion of the City's relief, Plaintiff requests that the Court deny the City's request to have the order apply to claims against "the property of the City" as said claims have never been made in the underlying lawsuit. There has never been a claim made by Mr. Chancellor against the City's property in this case (e.g. garnishment, foreclosure, etc.), and as such, the relief sought goes beyond the terms of the underlying lawsuit and is moot. Furthermore, if the Plaintiff is successful in his claims against Geelhood individually, the City may be responsible for indemnifying and that indemnity claim would not be subject the bankruptcy discharge pursuant to: *In re: City of Detroit*, 524 B.R. 147, 294-296 (U.S. Bankruptcy Ct. Ed. Mich 2014). If the Court to enter an order prohibiting Plaintiff from pursuing claims against "property of the City" an argument could be made that this would impermissibly apply to a potential indemnity claim and this should be avoided in this order;

      d.      As to Geelhood, Defendant has only asked for the relief sought applies to claims against Geelhood in his "representative capacity". This order should clearly state that any relief awarded does not apply to claims against Geelhood in his "individual capacity".

Respectfully submitted,

JOHNSON LAW, PLC

By: /s/Ayanna D. Hatchett
Ayanna D. Hatchett (P70055)
535 Griswold, Ste.2632
Detroit, MI 48226

Dated: June 9, 2023
(313)324-8300
ahatchett@venjohnsonlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 9, 2023, she served a copy of the foregoing **DARELL CHANCELLOR'S RESPONSE TO DEFENDANT, CITY OF DETROIT'S MOTION FOR ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION AGAINST DARELL CHANCELLOR** upon Counsel for City of Detroit:

- Mark Swanson, Esq.
  150 West Jefferson, Suite 2500
  Detroit, MI 48226
  swansonm@millercanfield.com