# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re

City of Detroit, Michigan,

     Debtor.

Bankruptcy Case No. 13-53846
Hon. Thomas J. Tucker
Chapter 9

_____/

## THE POLICE AND FIRE RETIREMENT SYSTEM'S MOTION TO ALTER OR AMEND PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9023, AND PURSUANT TO LOCAL RULE 9024-1 FOR RECONSIDERATION OF, THE COURT'S ORDER GRANTING THE CITY OF DETROIT'S MOTION TO ENFORCE PLAN OF ADJUSTMENT AGAINST THE POLICE AND FIRE RETIREMENT SYSTEM PENSION PLAN (DOCKET # 13602)

The Police and Fire Retirement System ("PFRS") hereby moves pursuant to Federal Rule of Bankruptcy Procedure 9023 to alter or amend, and pursuant to Local Rule 9024(a) for reconsideration of, the Court's Order Regarding the City of Detroit's Motion to Enforce Plan of Adjustment Against the Police and Fire Retirement System Pension Plan (Docket # 13602) ("Order") and its Opinion Regarding the City of Detroit Motion to Enforce Plan of Adjustment Against the Police and Fire Retirement System Pension Plan (the "Amortization Opinion") (Docket # 13704), dated June 26, 2023. Pursuant to Local Rule 9014-1, on July 10, 2023, the PFRS sought, but not receive, concurrence in this motion. WHEREFORE, the PFRS respectfully request that the Court grant this motion and alter or amend/reconsider its Order and the Amortization Opinion, deny the City's request to enforce the Plan of Adjustment, and clarify its ruling as to the scope of its ruling in the Amortization Opinion as more fully set forth below.

Respectfully submitted,

CLARK HILL PLC

s/Jennifer K. Green
Jennifer K. Green
Ronald A. King
151 S. Old Woodward Ave., Suite 200
Birmingham, MI 48009
(248) (248) 988-2315
jgreen@clarkhill.com
rking@clarkhill.com
Date: July 10, 2023     Attorneys for Creditor, PFRS

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re

City of Detroit, Michigan,

      Debtor.

Bankruptcy Case No. 13-53846
Hon. Thomas J. Tucker
Chapter 9

## EXHIBIT LIST

Exhibit 1    Proposed Order

Exhibit 2    None

Exhibit 3    Brief

Exhibit 4    Certificate of Service

Exhibit 5    None

Exhibit 6    None

**EXHIBIT 1 – PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re

City of Detroit, Michigan,

     Debtor.

Bankruptcy Case No. 13-53846
Hon. Thomas J. Tucker
Chapter 9

_____/

**ORDER GRANTING THE POLICE AND FIRE RETIREMENT SYSTEM'S MOTION TO ALTER OR AMEND PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9023, AND PURSUANT TO LOCAL RULE 9024-1 FOR RECONSIDERATION OF, THE COURT'S ORDER GRANTING THE CITY OF DETROIT'S MOTION TO ENFORCE PLAN OF ADJUSTMENT AGAINST THE POLICE AND FIRE RETIREMENT SYSTEM PENSION PLAN (DOCKET # 13602)**

This matter, having come before the Court on the Police and Fire Retirement System's Motion to Alter or Amend Pursuant to Federal Rule of Bankruptcy Procedure 9023, and Pursuant to Local Rule 2024-1 for Reconsideration of the Court's Order Granting the City of Detroit's Motion to Enforce Plan of Adjustment Against the Police and Fire Retirement System Pension Plan, upon proper notice and the Court being otherwise fully advised in the premises, and there being good cause to grant the relief requested,

**THE COURT ORDERS THAT:**

1. The Motion is granted.

2. The prior order dated June 26, 2023, is hereby vacated in full.

3. The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

The Police and Fire Retirement System ("PFRS") hereby moves pursuant to Federal Rule of Bankruptcy Procedure 9023 to alter or amend, and pursuant to Local Rule 9024(a) for reconsideration of, the Court's Order Regarding the City of Detroit's Motion to Enforce Plan of Adjustment Against the Police and Fire Retirement System Pension Plan (Docket # 13602) ("Order") and its Opinion Regarding the City of Detroit Motion to Enforce Plan of Adjustment Against the Police and Fire Retirement System Pension Plan (the "Amortization Opinion") (Docket # 13704), dated June 26, 2023. Pursuant to Local Rule 9014-1, on July 10, 2023, the PFRS sought, but not receive, concurrence in this motion. WHEREFORE, the PFRS respectfully request that the Court grant this motion and alter or amend/reconsider its Order and the Amortization Opinion, deny the City's request to enforce the Plan of Adjustment, and clarify its ruling as to the scope of its ruling in the Amortization Opinion as more fully set forth below.

**EXHIBIT 2 - NONE**

**EXHIBIT 3 - BRIEF**

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re

City of Detroit, Michigan,

      Debtor.

Bankruptcy Case No. 13-53846
Hon. Thomas J. Tucker
Chapter 9

_____/

## THE POLICE AND FIRE RETIREMENT SYSTEM'S MOTION TO ALTER OR AMEND PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9023, AND PURSUANT TO LOCAL RULE 9024-1 FOR RECONSIDERATION OF, THE COURT'S ORDER GRANTING THE CITY OF DETROIT'S MOTION TO ENFORCE PLAN OF ADJUSTMENT AGAINST THE POLICE AND FIRE RETIREMENT SYSTEM PENSION PLAN (DOCKET # 13602)

# TABLE OF CONTENTS

I. INTRODUCTION.................................................................................1

II. LEGAL STANDARDS........................................................................3

III. LEGAL ANALYSIS............................................................................3

   A. An Internal Inconsistency Exists in the Confirmation Opinion Itself On the Amortization and Interest Rate Issues, So It Cannot Serve as the "Plan"..............3

   B. There Was No Finding of Fact or Conclusion of Law In the Confirmation Opinion Approving an Amortization Or Extending the Interest Rate to 30 Years .
..................................................................................................................11

   C. The City's Experts Agreed at Trial That 6.75% Interest Ends 2023.............14

   D. The Parties Adopted the Same Language Governing Amortization Pre-Bankruptcy, Which Had Been Construed Under Michigan Law as Granting the PFRS Sole Discretion to Decide Amortization....................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re City of Detroit,*
 Mich., 504 B.R. 97 (Bkrtcy.E.D.Mich.,2013) ..................................... 24

*In re Conco, Inc.,*
 855 F.3d 703 (6th Cir. 2017) ........................................................... 23

*In re Dow Corning,*
 456 F.3d 668 (6th Cir. 2006) ........................................................... 23

*Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,*
 997 F.2d 581 (9th Cir. 1993) ........................................................... 23

*Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.,*
 616 F.3d 612 (6th Cir. 2010) ............................................................. 3

*PFRS v. City of Detroit,*
 270 Mich.App. 74 (2006), *leave denied*, 477 Mich. 892 (2006) ................ 21, 22

**Rules**

Federal Rules of Civil Procedure 59 ................................................. 3, 24

**Other Authorities**

Actuarial Valuation for Component II, pg. 2, available at
 https://cms2.revize.com/revize/rscd/val_0002_CompII%20Report
 %20Revised.pdf, last accessed July 8, 2023 ....................................... 17

ii

# I.    INTRODUCTION

The Court's Amortization Opinion[1] hinges on a sentence in the Confirmation Opinion which states that the remaining UAAL for the PFRS must be repaid using a 30-year amortization period at a 6.75% interest rate. The problem is that sentence is demonstrably wrong. The 6.75% interest rate does not extend for thirty years—it terminates after ten years under the express terms of the Plan, after which, just like amortization, the PFRS determines what interest rate to adopt based upon recommendations from its actuary and investment consultants.

Under the Plan, the PFRS was originally enjoined for a period of ten years from making changes to the "selection of the investment return assumptions [*i.e.*, the 6.75%]" as well as the calculation of the "contributions" owed by the City. After that, the PFRS was no longer enjoined from making changes to those terms. But this Court's new injunction re-starts the clock, and now the PFRS is enjoined from changing these terms for another thirty years. This is not only inconsistent with the Plan, it is also inconsistent with the Confirmation Opinion *itself*, which expressly approved the PFRS's ability to change terms after the ten-year "pension holiday" in a different section of the Opinion. Thus, elevating this one sentence (a sentence that contains errors, no less) to the status of the "Plan" has not only created irreconcilable inconsistences within the various Plan-related documents, it has also created an

---

[1] Capitalized and previously defined terms shall have the same meaning as above and as used in the City of Detroit's Motion to Enforce Plan of Adjustment (Dkt. No. 13602) and PFRS's Response (Dkt. No 13634).

inconsistency within the Confirmation Opinion. In one part of the Confirmation Opinion, the Court approved the settlement between the PFRS and the City, specifically quoted the Plan provisions setting the 6.75% interest rate for only ten years, and affirmed the parties' right to make changes to the "terms" surrounding the amount of the City's annual contribution after that ten years—but now this Court has essentially overruled that portion of the Confirmation Opinion. The Plan is clear—there was supposed to be a decade long "pause," followed by the resumption of the previously agreed upon process for calculating the City's required contribution, and a release of the injunction that forbid the City and the PFRS from making any changes for ten years. This Court already approved those precise terms. Rather confoundingly, a new injunction has issued, and instead of returning the discharge of key fiduciary obligations back to the PFRS at the end of the ten years, the City has somehow managed to extend the original ten-year injunction by *three more decades*.

This goes beyond an inconsistency between the Plan and the Confirmation Opinion. The issue here is that (i) the sentence relied upon by the Court was factually incorrect and an error to begin with, and (ii) elevating that sentence to the weight of the "Plan" has now created a contradiction within the Confirmation Opinion *itself*. Accordingly, the PFRS seeks reconsideration of the Court's ruling, and it also seeks clarity from the Court regarding its adoption of the sentence in the Confirmation Opinion which states that the post-2023 UAAL will be repaid over a 30-year

2

amortization period using a 6.75% interest rate, because the Plan expressly states that the 6.75% expires on June 30, 2023, and the PFRS is currently analyzing what interest rate to adopt for the following fiscal year. The City acknowledged during the hearing that the issue of whether the 6.75% interest rate could be amended by the PFRS after 2023 was not currently before the Court; however, the Court's adoption of the entirety of the sentence on page 231 of the Confirmation Opinion as "the Plan" raises the question of whether the PFRS is also enjoined from changing the assumed rate of return on a go-forward basis. In an abundance of caution, the PFRS therefore requests clarification that the 6.75% interest rate is not part of this Court's current injunction.

## II.    LEGAL STANDARDS

As a general rule, Federal Rules of Civil Procedure 59 is applicable and the bankruptcy court may alter or amend a judgment if there has been "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (citation omitted). Pursuant to 9024-1(a)(3), the movant seeking reconsideration must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

## III.    LEGAL ANALYSIS

**A.    An Internal Inconsistency Exists in the Confirmation Opinion *Itself* On the Amortization and Interest Rate Issues, So It Cannot Serve as the "Plan"**

The Court's Amortization Opinion ultimately rests on the following excerpt

from the Confirmation Opinion:

> The Plan provides the City with fixed payments toward the pension underfunding for FY2014-FY2023 . . . However, at the end of FY2023, the GRS and PFRS will remain significantly underfunded. Using the assumptions from the global pension settlement, including the 6.75% discount rate, the City projects that the PFRS will only achieve 78% funding, leaving a UAAL of 681 million. Ex. 793 at 2.[2] . . . **The City will then amortize the remaining UAAL for both plans over the next thirty years at an interest rate of 6.75%.**

(Conf. Op. at pg. 231) (emphasis added). The imposition of a 6.75% interest rate for thirty years is a blatant error, though. The Plan explicitly states that the 6.75% interest rate expires after only *ten* years, after which a new interest rate (and an amortization period) can be set by the PFRS—and notably, as will be set forth below, the Court approved that process in a different part of the Confirmation Opinion, which again, proves the point that this entire sentence is erroneous. And even if it was accurate, it was still merely lifted from the "summary page" of the Financial Projections and the two terms quoted above were expressly labeled by both the City *and the Court itself* (see directly above) as "assumptions"—not Plan terms. If both amortization and the 6.75% interest rate are now being imposed for thirty years, it would violate numerous provisions of the Plan and the PFRS Pension Plan, as will be set forth below.

### (1) The Plan's Ten-Year Injunction Against Changes to the Interest Rate and Other Terms Relating to the City's Contribution Amount

Under the Plan, the City's annual contributions were paused for ten years, and

---

[2] Exhibit 793 is a version of the Financial Projections admitted at the Confirmation Trial.

the only funding was from the Grand Bargain (*i.e.,* the Foundations and the State):

> During the Fiscal Years from the Effective date **through Fiscal Year 2023**, annual contributions shall be made to fund benefits accrued under the Prior PFRS Pension Plan only in the amounts identified on Exhibit II.B.3.1.ii.A. The exclusive source for such contributions shall be certain DIA proceeds and a portion of the State Contribution.

(Plan, Section II.B.3.q.ii.A) (emphasis added). After that ten-year period ended,

responsibility for funding the pensions reverts back to the City:

> After June 30, 2023 . . . the City will contribute sufficient funds required to pay each Holder of a PFRS Pension Claim his or her PFRS Adjusted Pension Amount in accordance with and as modified by the terms and conditions contained in the Plan and the Prior PFRS Pension Plan, in accordance with the State Contribution Agreement and exhibits thereto[.]"

*Id.* The only other express term in the Plan of Adjustment itself was the imposition

of 6.75% as the assumed rate of return, but again—only for a period of ten years:

> During the period that ***ends* on June 30, 2023**, the trustees of the PFRS… **shall adopt and maintain an investment return assumption** and discount rate for purposes of determining the assets and liabilities of the PFRS that **shall be 6.75%.**

(Plan, Section II.B.3.q.ii.B) (emphasis added). However, after that ten-year period, the

investment rate of return and other contribution-related "terms" could be changed:

> **G. No Changes in Terms for Ten Years.** … the City, the trustees of the PFRS and all other persons or entities shall be enjoined from and **against the subsequent amendment of the terms, conditions and rules of operation of the PFRS**, … **or against any action that governs the *selection of the investment return assumption* described in Section II.B.3.q.ii.B, *the contribution to the PFRS*** or the calculation or amount of PFRS pension benefits ***for the period ending June 30, 2023… [.]***

(Plan, Section II.B.3.q.ii.G) (emphasis added). The Plan imposed a ten-year

injunction. After that period ends on June 30, 2023, however, that injunction automatically *expires* and any of the "terms, conditions and rules of operation of the PFRS" including the "selection of the investment return assumption" (*i.e.*, the 6.75%) and "terms" relating to the City's annual "contribution to the PFRS" can be changed. The Court's recent adoption of the sentence imposing a 30-year amortization and extending the 6.75% interest rate to thirty years (instead of just ten) directly conflicts with these two provisions, which permit both the interest rate and any other "terms" that relate to the amount of the "contribution to the PFRS" to be amended after June 30, 2023. The Plan states that the parties are "enjoined" from making these changes for ten years— but this Court's holding erroneously extended that injunction to *thirty* years. This is radically inconsistent with the above two provisions from the Plan (Sections (B) and (G)) as well as several provisions of the PFRS Pension Plan, as will be set forth below.

### (2) The Ten Year Carve-Outs Under the PFRS Pension Plan

As it relates to funding policy decisions, every governing provision in both the Plan as well as the PFRS Pension Plan is tied to this ten-year period. After the ten-year "pension holiday," the Plan returns the normal funding policy decisions to the PFRS. If the Court intended to hold that the entire sentence on page 231 is now "the Plan of Adjustment," then the following provisions would be read out of the Plan altogether.

#### (i) *Article G-5(c) States that the Amount of the City's Contribution Is Not Limited by the Plan of Adjustment After 2023*

Under the PFRS Pension Plan adopted as part of the Plan, the City's contributions

are determined by the PFRS and are not solely dictated by the Plan after 2023:

> Sec. G-5.     Contributions to and payments from the Pension Accumulation Fund.     **Contributions to and payments from the Pension Accumulation Fund shall be made as follows:**
> &#42;&#42;&#42;
> (b)     Subject to the Plan of Adjustment, for Fiscal Years commencing prior to July 1, 2014, and **on or after July 1, 2023**, **the Board of Trustees** annually ascertained and reported to the Mayor and the Council **the amount of contributions due the Retirement System by the City,** and the Council shall appropriate and **the City shall pay such contributions to the Retirement System during the ensuing Fiscal Year** . . .
> (c)     For Fiscal Years commencing after June 30, 2014 and **prior to July 1, 2023**, **the City shall make contributions to the Pension Accumulation Fund only as provided in the Plan of Adjustment.**

(Dkt. No. 13090-1, PFRS Pension Plan, Article G-5) (emphasis added). In the

Amortization Opinion, the Court reasoned that Article G-5(b) contained the words

"subject to the Plan of Adjustment," and therefore, when viewed in conjunction with

the sentence in the Confirmation Opinion which cited to the Financial Projection's

assumption that these contributions would be paid over a thirty-year period, it meant

that the PFRS was constrained to calculate the annual contribution amount "based

on the 30-year amortization." (Amortization Opinion, pg. 32).     What the phrase

"subject to the Plan of Adjustment" meant in that section was a reference to the ten-

year annual contribution hiatus, not an amortization period: "Subject to the Plan of

Adjustment, for Fiscal Years … on or after July 1, 2023[.]"     If the Court's

interpretation was correct, this section should have said "after July 1, **2053.**"

Further, the Court's ruling ignores subsection (c). Article G-5(c) makes clear

that prior to June 2023, the City's contributions are "*only* as provided in the Plan of

Adjustment," but after June 2023, the PFRS Board determines the "amount of the contributions due" by the City. This is consistent with the Plan itself, which states that the parties are enjoined from making any changes to the City's "contributions" for ten years. After June 30, 2023, subsection (c) explicitly states that the City's "contributions" to the PFRS are no longer solely governed by the Plan of Adjustment. This is consistent with Article G in the Plan itself, which expressly states that the injunction preventing changes to the interest rate or other terms relating to the amount of the City's "contribution" was lifted at the end of that ten-year period.[3]

### (ii) After 2023, the Board Sets the "Amount of the Appropriation Necessary to Pay... for Component II"

The ten-year hiatus followed by a resumption of normal, unfettered payment obligations is echoed in the next section, too, which addresses appropriations by the City:

Sec. G-9. Appropriations prior to July 1, 2014 **and after June 30, 2023.**
(a) The Board of Trustees shall certify to the City Council the amount of the appropriation necessary to pay to the various funds of the Component II...
(b) To cover the requirements of Component II prior to July 1, 2014 and after June 30, 2023, such amounts as shall be necessary to cover the needs of Component II shall be paid . . . by special appropriations or transfers to the Retirement System[.]

---

[3] As previously stated, Article G from the Plan permits the parties to change terms after 2023:

**G. No Changes in Terms for Ten Years.** ... the City, the trustees of the PFRS and all other persons or entities shall be enjoined from and against the subsequent amendment of the terms, conditions and rules of operation of the PFRS, ... or against any action that governs the *selection of the investment return assumption* described in Section II.B.3.q.ii.B, *the contribution to the PFRS* or the calculation or amount of PFRS pension benefits *for the period ending June 30, 2023*[.]

(Plan of Adj., Section II.B.3.q.ii.G) (emphasis added).

*Id.* at Article G-9.  This says nothing about a required 6.75% interest or a 30-year amortization; to the contrary, it requires the PFRS to calculate the number and the City to pay whatever amount is "necessary to cover the needs of Component II."

> **(iii)** *After 2023, the Board "Computes the City's Annual Contributions" Based On Recommendations by Its Actuaries—Not Based Upon the Plan*

Lastly, Article G-17 expressly states that *the Board*—not the City—sets the contribution amount and that it is based upon *actuarial data*, not based on Plan terms:

> [T]he **Board of Trustees shall compute the City's annual contributions** for Fiscal Years commencing prior to July 1, 2014 **and after June 30, 2023**... **using actuarial valuation data**... The Board shall report to the Mayor and to the City Council the contribution percents so computed, and such contribution percents **shall be used in determining the contribution dollars to be appropriated by the City Council and paid to the Retirement System.**

*Id.* at Article G-17 (emphasis added).  This section, if it was intended to include a 30-year amortization and 6.75% interest rate until 2053, should have expressly stated so.  Instead, this Section directs the Board to make this decision based on "actuarial data" to compute the City's annual monetary contribution—not to apply a pre-determined 30-year amortization and a 6.75% interest rate assumption.[4]

> **(iv)   The PFRS Pension Plan Requires the IC to Determine All Actuarial Assumptions—Including Both Amortization & Interest Rate**

The new PFRS Plan also expressly confers the amortization and interest rate

---

[4]      Notably, all of this language is the same language that governed the operation of the PFRS *before the bankruptcy* and the Michigan Court of Appeals held this language means it is the PFRS Board's sole duty to select an amortization period, not the City.  This same exact language was re-adopted by the City and incorporated into the Plan.

decisions upon the PFRS Investment Committee ("IC"):

> [A]n Investment Committee is hereby created for the purpose of making recommendations to the Board of Trustees and ***taking action under and with respect to certain investment management matters relating to the Retirement System . . . The Investment Committee shall serve in a fiduciary capacity*** with respect to the investment management of Retirement System assets, ***determination of investment return assumptions***, and Board compliance with provisions of the governing documents[.]

(Dkt. No. 13663, Ex. 23, PFRS Plan, Art. I, Sec. 1.21). Once again, after 2023, the PFRS is the only body authorized under the Plan to make a "determination of investment return assumptions"—*i.e.*, the 6.75% investment return rate. This provision is directly at odds with the sentence this Court adopted as the "Plan" in its Amortization Opinion which states that the amortization and the investment return rate for the post-2023 UAAL would be 6.75% for thirty years, rather than set by the PFRS. The assignment of these duties to the IC was repeated in Article 16.2 of the PFRS Plan:

> (1) For purposes of this Combined Plan, "investment management decisions" and "investment management matters" shall include:
>
> * * *
>
> (d) ***review*** and affirmation or rejection of the correctness of ***any and all*** calculations, ***actuarial assumptions*** and/or assessments used by the Actuary including, but not limited to (i) those underlying the restoration of pension benefits, funding levels and ***amortization*** thereof... (ii*) those underlying the determination of annual funding levels and amortization thereof*, and (iii) on or after Fiscal Year 2024, ***the recommended annual contribution to the Retirement System*** in accordance with applicable law.

(PFRS Plan, Art. 16.2(1)(d)) (emphasis added). The City plucked one word out of this entire lengthy section ("correctness") and urged the Court to limit the IC's

authority to merely determining the "correctness" of these items, and the Court agreed. (Amortization Op., pg. 27-28). But such an interpretation wrongly strips the IC of any fiduciary discretion and relegates it to a purely ministerial function (one that IC members would not even be qualified to perform, as the City's position would result in the dubious situation where IC members are expected to be qualified to double check the "correctness" of actuarial calculations when they are not themselves trained actuaries). Instead, when read in full, this section clearly confers the right upon the IC to "review" any and all "actuarial assumptions" (which is what amortization and assumed rates of return are)—and then decide which ones to adopt.

Moreover, the Court's interpretation ignores Article 1.21, quoted above, which expressly states that the IC's role includes the "*determination* of investment return assumptions"—not just reviewing the "correctness" of those assumptions, but actually determining what they should be in the first place. Thus, the Plan is clear—the decision as to amortization period *and* assumed rate of return are within the sole discretion of the PFRS after the ten-year period ends.

## B. There Was No Finding of Fact or Conclusion of Law In the Confirmation Opinion Approving an Amortization Or Extending the Interest Rate to 30 Years

Despite the numerous explicit provisions placing actuarial assumptions such as amortization and the interest rate determinations within the PFRS's sole discretion, the Court has now adopted the following sentence over those sections of the Plan: "The City will then amortize the remaining UAAL for both plans over the next thirty years at an

11

interest rate of 6.75%." (Conf. Op., pg. 230). This is not a "ruling" as the City has claimed. This sentence is nothing more than a rote recitation of an exhibit used at trial and as will be set forth below, it is not even an accurate reflection of the assumption used by Malhotra for the limited purpose of his Financial Projections.

As set forth above, the key economic terms relating to the City's post-2023 UAAL repayment were subject to change at the end of the ten years. (Plan, Section II.B.3.q.ii.G). But the Projections had to include some sort of "best guess" as to the amount the UAAL would be after Year 10 and also what hypothetical terms might govern its repayment in order to show some level of "feasibility," which necessarily included using some sort of baseline assumption as to what the interest rate could be for those payments, as well as how long those payments could be made. *It was an unknown what interest rate would actually be selected because the Plan only set the 6.75% for a period of ten years—after that, it could be changed by the PFRS.* Thus, a number had to be inserted as a placeholder in order to permit some sort of mathematical calculation to be performed. It was not entirely illogical for those projections to use the assumption of 6.75% as the assumed rate of return, because that was the rate of return being applied during the 10-year "pension holiday" under the Plan. It was similarly not entirely illogical for the City to use a 30-year amortization because that was the amortization period being used prior to the bankruptcy case. Not surprisingly, the Court agreed and found the Financial

Projections were "reasonable." But that does not mean that those assumptions have now been converted into binding terms, superseding the Plan's express terms to the contrary.

### (a) The Court's Ruling as to the 6.75% Interest Rate

In contrast to the amortization issue (which the Court largely ignored in the Confirmation Opinion), the Court *did* make a detailed ruling as it related to the the 6.75% assumed rate of return to be applied for the ten-year period—presumably because the 6.75% interest rate is actually *in the Plan.* In support of the 6.75%, the City offered extensive expert testimony and the Court noted this detailed evidence:

> The City presented testimony from its actuaries to support the assumption that the City's investments will achieve the projected 6.75% growth rate. Glenn Bowen of Milliman testified that the 6.75% rate assumes a lower inflation rate than the vast majority of large public pension plans... The City also presented testimony from Alan Perry, another actuary from Milliman, who testified that the 6.75% rate is "at or near the bottom of the assumption that we would see for the largest public plans." . . . These two points support a conclusion that the City's assumptions regarding the investment return rate are conservative. Mr. Bowen testified that in November 2013, Milliman performed a series of calculations based on the City's asset allocations, and determined that the City could reasonably expect an investment return assumption of at least 7.2% ... **Based on this evidence, the Court concludes that the City's projection of the UAAL for both retirement systems at the end of FY2023, including the 6.75% investment return assumption, is reasonable and supports a finding that the plan is feasible.**

*Id.* at 232. After undertaking this detailed evidentiary analysis, the Court reached an actual *conclusion* that this evidence "supports *a finding* that the plan *is feasible.*" *This* is an example of an actual "finding of fact and conclusion of law." Not every single word in the Confirmation Opinion rises to that level. Notably, there is no similar "ruling" by the Court citing to any evidence in the record as it relates to the

amortization issue or the use of the 6.75% after 2023—because it was not actually contemplated that these two issues were set in stone after Year 10 under the Plan.[5]

In contrast, the only thing the Court said with respect to amortization and the interest rate to be applied for the UAAL *after* the pension holiday was a cite to an assumption used by the City for the limited purpose of its Financial Projection. (Conf. Op., pg. 231). This is not a finding of fact and conclusion of law. But even more important than this not being an actual "ruling" or "finding" by the Court is that this sentence is just plain ***wrong***. Not only is the 30-year amortization portion wrong, the second part of the sentence (relating to the 6.75% interest rate) is demonstrably incorrect under the Plan. The Plan could not be more clear that the 6.75% only lasts for ten years, not thirty. After that ten years was over, the PFRS was free to use whatever interest rate it wanted. *Id.* at Section G. Indeed, as will be shown below, (i) the experts all agree with this, and (i) the Court *itself* approved those terms.

**C.    The City's Experts Agreed at Trial That 6.75% Interest Ends 2023**
As the City's lead actuarial expert testified, the 6.75% ended on June 30, 2023:

> Q.    And are you familiar with the terms governing the use of the 6.75-percent investment return assumption?
> A.    Yes. . . ***During the period that ends on June 30, 2023***, the trustees of the PFRS … shall adopt and maintain an investment return assumption and discount rate for purposes of determining the assets and

---

[5]    Notably, nowhere in this section of the Confirmation Opinion—entitled "Evaluating the Risks in the City's Plan to Address Its Pension Obligations"—does the Court cite amortization as a "risk" to the City's pension plan. One would assume that if the Court believed amortization was so crucial to the Plan's feasibility, it would have identified the amortization period in the section literally entitled "[e]valuating the risks" to the City's Plan as it relates to the pensions.

liabilities of the PFRS that shall be 6.75% percent.

(Bowen Tr., pg. 221, Dkt. No. 13634, Ex. E) (emphasis added). In fact, Malhotra himself

admitted the 6.75% only lasted until 2023, not 2053—even though the Court later

mistakenly interpreted his Financial Projection summary page as meaning something else:

> Q.     Ok. Let's start at the top. There's something called an assumed
> rate of return. Please tell us how that has changed.
> A.     That has changed from 7.9 percent for GRS and eight percent for
> PFRS to **6.75 percent for GRS and PFRS, which is fixed for the next—
> through 2023**.
> Q.     And do you know how the rate of 6.75 percent was derived?
> A.     It was part of the settlement.

(Malhotra Tr., Ex. G to Dkt. No. 13634, p. 134) (emphasis added). Kopacz echoed this:

> The POA assumed investment rate of return of 6.75% was a heavily
> negotiated component of the POA . . . The POA stipulates the board of
> trustees of the PFRS and GRS **'must' maintain a 6.75% investment
> return assumption through the period ending June 30, 2023;
> thereafter, that rate is at the discretion of the Retirement Systems.**

(Kopacz Report, pg. 134, Dkt. No. 13663, Ex. 22) (emphasis added). As the City

itself even admitted, the PFRS had discretion post-2023 to set its own funding policy

terms. In late 2021, when the PFRS was debating the appropriate amortization

period to adopt for the Funding Policy to take effect post-2023, the City's legal

counsel flat out acknowledged that the PFRS had the discretion to the change the

assumptions and adopt a new Funding Policy and admitted this in an email to the PFRS:

> My understanding is that **from the City's perspective, the funding
> policy need not be adopted until October of next year**, which coincides
> with the timeframe that the City will begin work on the FY 2024
> budget. So, we are surprised at the rush to adopt something . . . **While
> we understand any funding policy can be changed next year**, hasty

adoption of a policy now significantly changes the dynamics.

(Dkt. No. 13603, Ex. 6, pg. 1) (emphasis added). The parties both knew Financial Projections did not control the amortization and assumed rate of return post-2023, because there were certain key terms the parties knew could be changed in the future—*i.e.*, after the ten-year hiatus—but it would then have been impossible to forecast things in a way to demonstrate feasibility with any level of certainty at confirmation. At the time of the confirmation trial no one knew what the interest rate would be changed to a decade later—whether it would be changed to 5% or 8%, for example—so the City had to use "assumptions" to come up with a "hypothetical" repayment schedule that would show how this could work for feasibility purposes. But that is wholly different than those two assumptions, which were used to demonstrate feasibility, somehow morphing into binding terms or "the Plan." In fact, contrary to the sentence in the Confirmation Opinion claiming that there was an amortization period and 6.75% interest rate both set for 30 years, Malhotra's Financial Projections do not actually state that the 6.75% interest rate would continue for 30 years—it was listed below amortization as a totally separate line item:

| PFRS Pension (Class 10) | *State and DIA Settlements* Contributions (years 1-10) | Estimated to be $261m from foundations/State settlement |
|---|---|---|
| | Contributions (years 11-40) | UAAL as of June 30, 2023 estimated to be ~ $681m amortized over 30yr, including contributions in second decade from DIA and foundations |
| | Discount rate | 6.75% |
| | Targeted funded status as of 2023 | 78% |

Thus, while the Court cited this page of the Financial Projection as the "evidence" that the Plan included a 30-year amortization and a 6.75% for thirty years, that

citation is clearly an error. As even Malhotra *himself* testified, the 6.75% interest rate was never intended to be carried out of over thirty years. And that is the danger of viewing a mere "summary page" of the Financial Projections in isolation and not reading that document in conjunction with the actual Plan—in reality, neither the 30-year amortization nor the 6.75% for 30 years are actually in the Plan. As the City *itself* cautioned readers when viewing the Financial Projections,[6] they must be reviewed in conjunction with the Plan document itself because the assumptions in the Financial Projections were subject to change.[7]

### b. Elevating the Sentence from Pg. 231 to "the Plan" Renders the Confirmation Opinion Inconsistent Because It Held Otherwise on Pg. 180.

Further bolstering the PFRS's position that the errant sentence on page 231 was nothing more than a recitation of an assumption used in a Financial Projection but not intended to operate as "the Plan" is that in a separate portion of the Confirmation Opinion, the Court *itself* made a *different* finding of fact and

---

[6]    The City expressly cautioned in the Disclosure Statement, that the "Projections are based upon a variety of estimates and assumptions" and that "some assumptions inevitably will not materialize and events and circumstances occurring subsequent to the date on which the projections were prepared may be different from those assumed" and "[e]ach of the Projections should be read in conjunction with the significant assumptions, qualifications, and notes set forth in the Disclosure Statement, the Plan… and other information submitted to the Bankruptcy court[.]" (Dkt. No. 4391, Fourth Am. Disc. Stmt., pg. 170).

[7]    And the City was right—these assumptions *did* change (dramatically). Ten years later, the UAAL for the PFRS was not $681 million as set forth in the Projections; it was $820 million as of June 2022 and the projected UAAL as of June 30, 2023 will be $860 million. The funding level was not 78% in 2023; it was only 74%. *Id.* at pg. 20. Actuarial Valuation for Component II, pg. 2, available at https://cms2.revize.com/revize/rscd/val_0002_CompII%20Report%20Revised.pdf, last accessed July 8, 2023.

conclusion of law as to the 6.75% issue, which *is* consistent with the Plan. And moreover, in that instance, the Court was specifically referencing the actual Plan and the parties' negotiated settlement—not merely pulling from the "summary page" which listed "assumptions" used in the Financial Projections. In an earlier section of the Confirmation Opinion entitled "The Terms of the Pension Global Settlement" and "Governance and Oversight", the Court explained the Plan terms as follows:

> The parties have further agreed that **until June 30, 2023** [*i.e.***, NOT thirty years**], the boards of trustees of each system will adopt and maintain an investment return assumption and discount rate of 6.75% for purposes of determining the assets and the liabilities of the pension systems.

> The plan also includes a provision that all parties are enjoined **until June 30, 2023** [**Again, NOT thirty years**] from making any amendments to the terms, conditions and rules of operation of the GRS and the PFRS relating to the calculation of pension benefits, the selection of investment return assumptions, or the contributions to the pension systems.

(Conf. Op. at 180) (emphasis added). Based on these terms, the court then concluded that it "finds that the pension settlement is reasonable and approves it." *Id.* at 182. *This* recitation of the *actual* Plan—not a citation pulled from the "summary page" of the Financial Projection—is the Court's true ruling as to how long the investment return assumptions and the amount of the City's contribution were set in stone for under the Plan. It was plainly ten years, *only.* And this Court approved it.

In the Court's recent Amortization Opinion, however, it adopted the errant sentence on page 231 of the Confirmation Opinion as controlling the amortization and interest rate issues, which renders the Confirmation Opinion itself internally

inconsistent. A side-by-side comparison of these two conflicting statements by the

Court as to how long the 6.75% interest rate applies is set forth below:

| Conf. Op. pg. 180 – 6.75% goes for only 10 years, or "until June 30, 2023" | Conf. Op. pg. 231 – 6.75% continues for another 30 years, or until 2053 |
|---|---|
| The parties have further agreed that until June 30, 2023, the boards of trustees of each system will adopt and maintain an investment return assumption and discount rate of 6.75% for purposes of determining the assets and liabilities of the pension systems.<br><br>The plan also includes a provision that all parties are enjoined until June 30, 2023 from making any amendment to the terms, conditions and rules of operation of the GRS and the PFRS relating to the calculation of pension benefits, the selection of investment return assumptions, or the contributions to the pension systems.<br><br>[source = Plan of Adjustment itself] | However, at the end of FY2023, the GRS and PFRS will remain significantly underfunded. Using the assumptions from the global pension settlement, including the 6.75% discount rate, the City projects that the PFRS will only achieve 78% funding, leaving a UAAL of $681 million. Ex. 793 at 2. For the GRS, the City projects a 70% funded status by the end of FY2023, leaving a UAAL of $695 million. Id. The City will then amortize the remaining UAAL for both plans over the next thirty years at an interest rate of 6.75%. Id. Between FY2024 and FY2033, the City *232 will receive an additional $68 million in Grand Bargain proceeds to pay toward the UAAL amortization for PFRS, and $188 million for GRS. The balance of the amortized UAAL will come from the City. Id. at 5.<br><br>[source = summary page of the Financial Projections] |

The entry on the left is a correct and accurate recitation of the Plan's terms—

after the ten-year pension holiday ends in June of 2023, the PFRS Board will once

again be permitted to change the assumed rate of return from 6.75% to some other

actuarially determined assumption, and the Board is also once again permitted to

calculate (on its own, without City interference) the "contributions" owed by the

City for its pension obligations, which necessarily includes the amortization period.

The entry on the right is a recitation of a Financial Projection (and not even

an accurate recitation, at that, since the 6.75% does not extend for 30 years) in which

the City had to include *some* sort of assumptions as the repayment terms, since they

were not yet set in stone and would not be until ten years later, after 2023. But it was never intended to have the weight of "the Plan"—it was merely intended to show a hypothetical repayment schedule in order to demonstrate feasibility.[8]

The Court's Amortization Opinion elevates the sentence on page 231 to "the Plan" and creates an obvious conflict within the Confirmation Opinion itself, which says in one place the 6.75% goes for ten years under "the Plan" but then later the 6.75% goes for thirty years (also, ostensibly, under the "Plan"). Such a result would be incongruous. The only fair read is the one posited by the PFRS. The Court would not have overridden the Plan's express terms on page 231 after having just approved those terms on page 180. In fact, we know the Court never intended to implicitly override the express terms of the pension settlement because the Court even acknowledged the role that the PFRS would play in the future to select these very assumptions. For example, the Court observed certain recommendations set forth by Kopacz should be adopted because "accurate financial reporting relating to the City's pension plans will be an essential tool *as the retirement systems* manage the plans' assets and liabilities and ***make critical decisions regarding future estimated rates of returns and annual funding requirements.***" (Conf. Op., pg. 233) (emphasis

---

[8]    The Court noted in the Amortization Opinion that the various iterations of the Financial Projections that the 30-year amortization did not change. True enough. But the PFRS had no reason to quibble with that assumption—a term had to be selected and dropped in as a placeholder for the time being. Further, while the 30-year amortization did not change as an assumption, neither did the express caveat by the City that this was a mere "assumption" that was subject to change.

added). In this excerpt, the Court (i) admits it is the "retirement systems" who make these "critical decisions," and (ii) these decisions expressly include both the "rates of return" as well as the "annual funding requirements."

**D.** **The Parties Adopted the Same Language Governing Amortization Pre-Bankruptcy, Which Had Been Construed Under Michigan Law as Granting the PFRS Sole Discretion to Decide Amortization**

For decades prior to the bankruptcy—from 1976 until 2014—the PFRS Board set the amortization period. See *PFRS v. City of Detroit,* 270 Mich.App. 74, 76 n.1 (2006), *leave denied,* 477 Mich. 892 (2006). In 2004, however, the City attempted to lengthen the amortization period in order to decrease the amount of its payments, so the PFRS sought a declaratory judgment that "it has the right to determine the time period for the financing of unfunded accrued pension liabilities" and argued that "under Michigan law, the Board has the authority to determine the amortization period and that Detroit must abide by its recommendation and pay the amount of pension contribution calculated by the Board." The Michigan court—interpreting the *same exact language that the City agreed to in the Bankruptcy and re-incorporated into the Plan via the PFRS Pension Plan*—agreed with the PFRS, reasoning:

> The [PFRS] Board is responsible for the general administration, management, and operation . . . Part of the Board's responsibilities is to ensure that the retirement system is properly funded. Accordingly, the Board, after consultation with an actuary, determines the amount of Detroit's annual pension contribution. . . one component of the pension contribution is the amount of time necessary for Detroit to meet the system's unfunded accrued liabilities. Logically, the amount of time permitted to satisfy the accrued liabilities, also known as the amortization period, affects

the amount Detroit is obligated to contribute to the plan each year.

The City cited a contrary ordinance but the Court rejected it, reasoning it "directly interferes with the Board's ***authority to decide the annual contribution, which includes a determination of the amortization period.*"* *Id.* at 82. "[B]ecause the Board has the responsibility to determine the employer's annual contribution to the system and to ensure that the system is adequately funded, an integral element of that calculation is how much the city must annually contribute to pay down its unfunded liabilities. Again, how long those liabilities are amortized, according to the calculations of the actuary, directly affects the adequacy of the system funding and the amount Detroit must pay each year." *Id.* The court found that the controlling language "is ***unequivocal*** that the Board determines the amount the employer (Detroit) contributes annually" which "necessarily includes the amount of time in which Detroit must pay the unfunded accrued pension liabilities because the period directly affects the amount Detroit must contribute to the plan each year." *Id.* at 81 n. 3-4 (emphasis added). Notably, the language the Michigan court found to be "unequivocal" ***is the same language that was reincorporated into the Plan by the City as Articles G-17 and G-5 to the PFRS Pension Plan***. *Id.* at n. 3-4. Thus, the PFRS's right to set the amortization period was not changed by the Plan—it was expressly retained by the Plan.

Further, the Plan's own choice of law clause states that the PFRS Pension Plan

is to be interpreting under Michigan law—and a Michigan court already interpreted the key language as requiring the PFRS decide amortization, not the City. The Plan specifically adopts Michigan law and provides that unless a rule of law or procedure is supplied by federal law,[9] then "the laws of the State of Michigan... shall govern the **rights, obligations, construction** and implementation of the Plan **and any contract** ... instrument, release **or other agreement or document entered into or delivered in connection with the Plan**." (Plan of Adj., pg. 71(I)) (emphasis added). The PFRS Pension Plan is a contract. The "construction" of that contract and the "rights" and "obligations" of the PFRS under that contract are all governed by Michigan law. A Michigan court has already construed the exact terminology used in the PFRS Pension Plan documents to mean that the PFRS has the "right" to decide amortization. This Court has now injected its own contrary construction, which is a violation of the Plan terms stating that Michigan substantive law governs this issue. Because the meaning of the key language in the PFRS Pension Plan has already been decided under Michigan law, this Court should not have construed the operative

---

[9] "In interpreting a confirmed plan, courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors." *In re Conco, Inc.*, 855 F.3d 703, 711 (6th Cir. 2017). "State law governs those interpretations, and under long settled contract law principles, if a plan term is unambiguous it is to be enforced as written, regardless of whether it is in line with prior parties obligations." *In re Dow Corning*, 456 F.3d 668, 676 (6th Cir. 2006). "Although a confirmed bankruptcy plan is a judgment rendered by a federal court in a case arising under federal law, because there is little need for a nationally uniform body of law regarding the interpretation of Chapter 11 plans and because state law is regularly incorporated into bankruptcy law, state law constitutes the federal rule of decision here and governs our interpretation of [the debtor's] plan." *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993).

language in the PFRS Pension Plan documents in a different manner—instead, it was bound by pre-existing state law directly on point, interpreting the exact same words, in a dispute between the exact same parties.[10] The City knowingly affirmed its prior arrangement with the PFRS and agreed to continue the same division of duties as between the parties that existed before the bankruptcy. If the City had wanted a different outcome, it could have changed the key provisions of the PFRS Pension Plan but it did not. Instead, the City chose to re-incorporate the same language assigning those rights to the PFRS. While there was an intervening bankruptcy, of course, the parties chose to reincorporate the same exact language and the only difference in those sections is the carve-out of the ten-year period where the PFRS was enjoined from deciding amortization for that time period.

In its Amortization Opinion, the Court quoted the same controlling language that the Michigan court interpreted as meaning that the Board controls the amortization decision and found that this language means nothing of the sort. (Amortization Op., pg. 29-32). The Court failed to even mention the Michigan state court case. This was an error of law subject to Rule 59 relief, and/or a palpable error

---

[10] While this case is from an intermediate court, the Michigan Supreme declined to grant leave so it stands as the highest court's holding in Michigan. *In re City of Detroit*, Mich., 504 B.R. 97, 155 (Bkrtcy.E.D.Mich.,2013) ("In construing questions of state law, the federal court must apply state law in accordance with the controlling decisions of the highest court of the state. . . If the state's highest court has not addressed the issue, the federal court must attempt to ascertain how that court would rule if it were faced with the issue. . . A federal court should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.") (citations omitted).

subject to reconsideration. The Court held that none of the PFRS Pension Plan provisions permit the PFRS to determine amortization because it states that its provisions are "subject to the Plan of Adjustment." *Id.* at 31-32. It would be one thing if the Plan itself—the portion that was specifically negotiated between the parties, that is—made mention of the alleged 30-year amortization. But the above analysis demonstrates that the Court, in the Confirmation Opinion, mistakenly relied on an assumption from the summary page of the Financial Projections, quoted that page inaccurately, and appears to have inadvertently misinterpreted the summary page as being reflective of the actual Plan rather than a mere "assumption" or "best guess" as to how repayment of the UAAL could look at the end of the ten-year pension holiday. Instead, after ten years, all actuarial assumptions reverted back to being determined at the discretion of the PFRS and extending the Plan's ten-year injunction to a thirty-year injunction was plainly erroneous. Accordingly, the Amortization Opinion should be reconsidered (or at a minimum, clarified), because it has now rendered the Confirmation Opinion internally inconsistent.

Respectfully submitted,

s/*Jennifer K. Green*
Jennifer K. Green
151 S. Old Woodward Ave., Suite 200
Birmingham, MI 48009
jgreen@clarkhill.com
*Attorney for Creditor PFRS*

## EXHIBIT 4 – CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re

City of Detroit, Michigan,

     Debtor.

Bankruptcy Case No. 13-53846
Hon. Thomas J. Tucker
Chapter 9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 10, 2023, she served a copy of the foregoing *Motion to Alter or Amend Pursuant to Federal Rule of Bankruptcy Procedure 9023, and Pursuant to Local Rule 9024-1 for Reconsideration of, The Court's Order Granting the City of Detroit's Motion to Enforce Plan of Adjustment against the Police and Fire Retirement System Pension Plan (Docket # 136302)* via the Court's ECF system which will provide service to all registered parties and in the manner described below:

Via first class mail and email:

Counsel to the City of Detroit
Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
swansonm@millercanfield.com

Counsel to the Investment Committee
Valerie Brader
RIVENOAK LAW GROUP PC
3331 W. Big Beaver Rd., Suite 109
Troy, MI 48084
valerie@rivenoaklaw.com

Dated: July 10, 2023

By: /s/ *Bridget L. Haicas*
Bridget L. Haicas
151 S. Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
Office (248) 988-1814
bhaicas@clarkhill.com

2

**EXHIBIT 5 - NONE**

**EXHIBIT 6 - NONE**