## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

### CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST RICHARD CADOURA

The City of Detroit, Michigan ("City") by its undersigned counsel, Miller, Canfield, Paddock and Stone, PLC, files this *Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Richard Cadoura* ("Motion"). In support of this Motion, the City respectfully states as follows:

## I. Introduction

1. On November 5, 2020, Richard Cadoura ("Cadoura") filed a lawsuit against the City of Detroit seeking monetary damages based on prepetition events. Cadoura's claims in the lawsuit arose prior to the City's bankruptcy filing in July of 2013. Consequently, Cadoura's filing and prosecution of these claims violates the discharge and injunction provisions in the City's confirmed Plan and the Bar Date Order (each as defined below).

2. The City informed Cadoura of these violations and asked him to consent to the relief requested in this Motion, but to no avail. As a result, the City

40916945.7/022765.00213

is left with no choice but to seek an order barring and permanently enjoining Cadoura from prosecuting the claims asserted in the lawsuit against the City.

## II. Factual Background

### A. The City's Bankruptcy Case

3.     On July 18, 2013 ("Petition Date"), the City filed this chapter 9 case.

4.     On October 10, 2013, the City filed its Motion Pursuant to Section 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), for Entry of an Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof ("Bar Date Motion") [Doc. No. 1146], which was approved by order of this Court on November 21, 2013 ("Bar Date Order"). [Doc. No. 1782].

5.     The Bar Date Order established February 21, 2014, as the deadline for filing claims against the City.  Paragraph 6 of the Bar Date Order states that the

> following entities must file a proof of claim on or before the Bar Date…any entity: (i) whose prepetition claim against the City is not listed in the List of Claims or is listed as disputed, contingent or unliquidated; and (ii) that desires to share in any distribution in this bankruptcy case and/or otherwise participate in the proceedings in this bankruptcy case associated with the confirmation of any chapter 9 plan of adjustment proposed by the City…

Bar Date Order ¶ 6.

6.     Paragraph 22 of the Bar Date Order also provides that:

> Pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(2), any entity that is required to file a proof of claim in

this case pursuant to the Bankruptcy Code, the Bankruptcy Rules or this Order with respect to a particular claim against the City, but that fails properly to do so by the applicable Bar Date, shall be forever barred, estopped and enjoined from: (a) asserting any claim against the City or property of the City that (i) is in an amount that exceeds the amount, if any, that is identified in the List of Claims on behalf of such entity as undisputed, noncontingent and liquidated or (ii) is of a different nature or a different classification or priority than any Scheduled Claim identified in the List of Claims on behalf of such entity (any such claim under subparagraph (a) of this paragraph being referred to herein as an "Unscheduled Claim"); (b) voting upon, or receiving distributions under any Chapter 9 Plan in this case in respect of an Unscheduled Claim; or (c) with respect to any 503(b)(9) Claim or administrative priority claim component of any Rejection Damages Claim, asserting any such priority claim against the City or property of the City.

7.     On October 22, 2014, the City filed its *Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* ("Plan"), which this Court confirmed on November 12, 2014. [Doc. Nos. 8045 & 8272].

8.     The discharge provision in the Plan provides:

Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date.  Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date, discharge the City from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (ii) the Holder of a Claim based on such debt has accepted the Plan.

Plan, Art. III.D.4, at p.50.

40916945.7/022765.00213

9.     Further, the Plan injunction set forth in Article III.D.5 provides in pertinent part:

**Injunction**

**On the Effective Date, except as otherwise provided herein or in the Confirmation Order,**

**a.     all Entities that have been, are or may be holders of Claims against the City…shall be permanently enjoined from taking any of the following actions against or affecting the City or its property…**

**1.     commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affect the City of its property…**

**5.     proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and**

**6.     taking any actions to interfere with the implementation or consummation of the Plan.**

Plan, Article III.D.5, at pp.50-51 (emphasis added).

10.     The Court also retained jurisdiction to enforce the Plan injunction and to resolve any suits that may arise in connection with the consummation, interpretation, or enforcement of the Plan.  Plan, Art. VII. F, G, I, at p.72.

**B.     Cadoura's Lawsuit Against the City**

11.     On August 22, 2019, Cadoura filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Summary Judgment

40916945.7/022765.00213

Opinion, **Exhibit 6C**, pp. 4-5; Summary Judgment Motion**, Exhibit 6F**, Page ID.334. His charge alleges that he made internal complaints regarding discrimination while previously by employed by the City. *Id.* It further alleges that Cadoura applied for an open position in November 2017, was offered the position, but had the offer rescinded because he is on a "do not rehire" list maintained by the City. *Id.*

12. On November 5, 2020, Cadoura filed a complaint ("Complaint") against the City in the United States District Court for the Eastern District of Michigan ("District Court"), commencing case number 20-12986 ("Federal Court Lawsuit"). A copy of the Complaint is attached as **Exhibit 6A** and the docket in the Federal Court Lawsuit is attached as **Exhibit 6B.** In the Complaint, Cadoura alleges that the City retaliated against him for filing an employment discrimination lawsuit against the City in 2009 ("2009 Lawsuit"). Complaint ¶¶ 18-19.

13. In the City's bankruptcy case, Cadoura filed proof of claim 682 for claims asserted in the 2009 Lawsuit. That claim was disallowed and expunged by this Court in the Disallowance Order.[1] The complaint for the 2009 Lawsuit and

---

[1] On June 8, 2017, the City filed a Motion to disallow and expunge proof of claim 682, among others. [Doc. No. 11901] ("Disallowance Motion"). Proof of Claim 682 is attached as Exhibit 6-1 to the Disallowance Motion. On June 27, 2017, the Court granted the Disallowance Motion, which disallowed and expunged claim 682. [Doc. No. 11930] ("Disallowance Order").

Proof of Claim 682 were attached as Exhibit 6-1 to the Disallowance Motion. Doc. No. 11901.

14.     In the Federal Court Lawsuit, the District Court provided the following factual background of Cadoura's hiring and employment history with the City:

> In 1998, the City hired Cadoura as an Emergency Medical Technician ("EMT") and paramedic in the Detroit Fire Department's Emergency Medical Services Division ("EMS"). ECF No. 33-13, PageID.296. Cadoura's "Summary of Conduct" with EMS lists thirteen disciplinary actions that occurred between July 2000 and December 11, 2011, although it appears that two were overturned and three were expunged. ECF No. 33-2, PageID.264. There are no commendations listed. *Id.* On March 1, 2012, Chief Jerald James, then Superintendent of EMS, emailed Sydney Zack, then 2nd Deputy Commissioner, concerning Cadoura's behavior. ECF No. 33-3. In particular, Chief James noted that Cadoura "ha[d] continuously displayed his refusal to comply with standing policies as well as not be receptive to direction from supervisory staff" and that "several supervisors" had contacted James "multiple times" regarding Cadoura's behavior. *Id.* at PageID.265-66. Cadoura had additional disciplinary charges in February 2013. *See* ECF No. 33-4.
>
> …
>
> Cadoura resigned from the EMS on June 3, 2013. ECF No. 33-5. He listed the reason for his resignation as "retirement." *Id.* at PageID.268. On June 10, 2013, Anthony Wade and Chief James completed the supervisor sections of the resignation notice form. *Id.* at PageID.269. They indicated that Cadoura had one written reprimand and one suspension in the prior eighteen months, his attendance and tardiness record needed improvement, and that his work behavior needed improvement. *Id.* at PageID.268-69. They did not recommend Cadoura for reinstatement because he had "pending discipline [and] poor work behavior." *Id.* at PageID.269. Brandi Richmond, Human Resources, concurred with the recommendation to not reinstate Cadoura on September 16, 2013. *Id.* at PageID.270.

40916945.7/022765.00213

*Opinion and Order Denying Defendant's Motion for Summary Judgment (ECF No. 33) and Setting New Dates*, pp. 2-3 ("Summary Judgment Opinion"), **Exhibit 6C.**

15.     The resignation notice form ("Resignation Form") was attached as Exhibit 4 to the City's Motion for Summary Judgment, Page IDs. 268-270. **Exhibit 6F.** It contains a space for a department recommendation on reinstatement, which was checked "No" and signed by Cadoura's supervisors on June 10, 2013. *Id.*

16.     Under the signatures, the Resignation Form states:

> Reinstatement is governed by Human Resources Rule 15.  To be eligible for Reinstatement, the applicant must have at least one year of prior service and resigned in good standing….

Summary Judgment Motion at PageID.269; *see also* Human Resources Rule 15, Reinstatement, **Exhibit 6G**, page 2 of 3.

17.     During his deposition, Cadoura stated that he resigned because he was about to get fired due to disciplinary issues:

> Q   Okay. And when did you leave the City?
>
> A   It was June 7th, 2013.
>
> Q   And why did you leave?
>
> A   I was working, you know, my regular shift with the regular partner that I had and before I made the decision to leave, I was brought before one of the HR personnel with then Chief Gerald James and we had a meeting.  Apparently, they had some issue with, they said that I couldn't be clean shaven every day and I told them, you know, that was never an issue before.  Why is it becoming an issue now and it became apparent that I didn't want to be discharged because they told me in that meeting that if things didn't change, then I would be subject to a discharge and I didn't want to be discharged from there.

40916945.7/022765.00213

Q   And so you resigned?

A   That's correct.

Q   Prior to your resignation did you have any pending discipline?

A   That's correct.

Summary Judgment Motion, Exhibit 12, Page ID.296-97.

18.     The District Court also discussed Cadoura's attempt to secure

subsequent employment from the City:

> Cadoura testified that at some point in 2017, he spoke to Chief Sean
> Larkins, Superintendent of EMS, at the Fire Department headquarters
> and indicated that he regretted leaving the City's employ. ECF No. 33-
> 13, PageID.299-300.  According to Cadoura, Larkins provided him a
> reinstatement application form and directed him to speak to Kemia
> Crosson, an Employee Services Consultant in the City's Human
> Resources Department. *Id.* at PageID.300; ECF No. 33-16, PageID.337.
> Cadoura completed the form and gave it to Crosson, but he never heard
> back.   33-13, PageID.300.   Cadoura's recollection seems to be
> supported by a contemporaneous email from Chief Larkins to Crosson.
> *See* ECF No. 37-9.  On February 24, 2017, Chief Larkins informed
> Crosson that she would "be receiving an application for rehire from a
> Richard Cadoura" and asked her to "pull his file and speak to [EMS]
> prior to making any decisions." *Id.* at PageID.508.  Belinda Brown, a
> recruiter in the City's Human Resources Department, testified that it
> was not common to pull an applicant's file prior to making a hiring
> decision.  ECF No. 33-18, PageID.347.
>
> …
>
> On January 13, 2018, Brown sent Cadoura a letter stating that he was no
> longer being considered for selection.  ECF No. 33-12.   Cadoura
> testified that Brown explained to him over the phone that the City had
> reviewed Cadoura's old employee file and discovered he had been
> discharged and placed on a "Do Not Rehire List."  ECF No. 33-13,
> PageID.300.   Cadoura clarified that he had resigned, not been
> discharged, and that he had never received an exit interview.  *Id.* at
> PageID.301.  Brown stated that exit interviews were mandatory so that
> the employee would know whether he or she was eligible for rehire in

40916945.7/022765.00213

the future. *Id.* Cadoura also pointed out that if he had been discharged, he should have had a show cause hearing. *Id.* At this point, Brown told him that "she thought that she said too much and hung up." *Id.*

Summary Judgment Opinion, pp. 5-8.

19.     In Count I of the Complaint, Cadoura alleges that the City retaliated against him in violation of Title VII of the Civil Rights Act of 1964 and in Count II, Cadoura alleges that retaliation in violation of the Elliott-Larsen Civil Rights Act ("ELCRA"). Complaint ¶¶ 23, 36.

20.     The District Court explained the elements of claims under Title VII and ELCRA:

> "Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII." *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014) (citing 42 U.S.C. § 2000e-3(a)). Likewise, "[u]nder [the] ELCRA, an employer is liable if it retaliates against an employee for having engaged in protected activity, *e.g.*, opposing a violation of the act's antidiscrimination provision." *White v. Dep't of Transportation*, 334 Mich. App. 98, 114, 964 N.W.2d 88, 96 (2020) (citation omitted). Retaliation claims pursuant to the ELCRA are analyzed under the same standard as claims pursuant to Title VII. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018).
>
> A Title VII retaliation claim can be established "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Laster*, 746 F.3d at 730 (quoting *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 538 (6th Cir.2008)). Where the plaintiff relies on circumstantial evidence, the court analyzes the retaliation claim under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). *Id.* Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of retaliation. *Id.* If the

- 9 -

plaintiff succeeds, the burden "shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (quoting *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)). If the defendant succeeds, the "burden shifts back to the plaintiff to demonstrate 'that the proffered reason was not the true reason for the employment decision.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

To establish a prima facie case of retaliation under Title VII, a plaintiff

> must demonstrate that: "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was `materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Jones v. Johanns*, 264 Fed. App'x. 463, 466 (6th Cir. 2007).

*Laster*, 746 F.3d at 730 (citation omitted).

…

To demonstrate pretext, a plaintiff "must produce evidence sufficient that a reasonable finder of fact could reject the employer's proffered reason." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007) (quoting *Haughton v. Orchid Automation*, 206 Fed. App'x. 524, 531 (6th Cir.2006)). A plaintiff can do this "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Id.* (quoting *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434 (6th Cir. 2002)).

Summary Judgment Opinion, pp. 11-12, 17-18.

21.     Cadoura asserts that the City's decision to not reinstate him in 2017 was due to the 2009 Lawsuit and his subsequent placement on the do not hire list.

Summary Judgment Response, pp. 6-7, **Exhibit 6D**. Cadoura alleges that "it is clear

- 10 -

that decision makers were aware of this lawsuit when they disciplined Mr. Cadoura, placed him on the 'do not rehire list' and denied reinstatement." Summary Judgment Response, p. 7. Cadoura, however, disputes that his placement on the "do not rehire list" was proper: "Plaintiff was placed on the 'do not rehire list' due to an alleged policy Defendant has that requires such a designation when someone retires/resigns with pending discipline as well as poor work behavior." Summary Judgment Response, p. 6.

22.     Cadoura further alleges that the City "used discipline as a means to suppress employees from promotion. Thus, a leap in logic is not required for a jury to find such actions were also undertaken when Mr. Cadoura was placed on the 'do not rehire list' and denied reinstatement." Summary Judgment Response, p. 7. Cadoura also asserts that the discipline which was issued to him prior to his resignation was improper. Summary Judgment Response, pp. 7-8.

23.     In sum, Cadoura alleges that he was not reinstated by the City due to the filing of the 2009 Lawsuit, the alleged improper discipline which resulted, and his ultimate placement on the do not rehire list.

24.     The District Court has left open several of these issues, including whether "recommending Plaintiff not be reinstated can be considered an adverse action in and of itself…" Summary Judgment Opinion, p. 14. Further, in its discussion of whether there was a legitimate non-retaliatory reason for the City's

action and pretext, the Court found that "there is a genuine dispute whether Plaintiff was, in fact, placed on the 'do not hire list' due to his pending discipline and poor work behavior, as opposed to his participation in the Employment Discrimination Action." Summary Judgment Opinion, p. 18.

25.     Again, in discussing whether there was a legitimate non-retaliatory reason for the City's action, the District Court left open the issue of whether the discipline of Cadoura was in retaliation of the 2009 Lawsuit:

> Barney testified that Plaintiff was known for advocating and highlighting deficiencies within the EMS and that the EMS administrators used the delayed adjudication of disciplinary actions as a tactic to sabotage promotions. **Thus, it is possible that some of Plaintiff's disciplinary actions were imposed due to his advocacy activities. This is supported by the fact that so many of his infractions were overturned or expunged.** Even if not, there is conflicting evidence in the record about whether the EMS has a policy mandating that any employee who resigns with pending disciplinary action be placed on a "do not rehire list." Former Chief James testified that he was aware of the lawsuit at the time that Plaintiff resigned. Given the evidence concerning the atmosphere at the EMS at the time, there is a genuine dispute as to whether the Employment Discrimination Action may have motivated Plaintiff's placement on a "do not rehire list."

Summary Judgment Opinion, pp. 18-19.[2]

---

[2] In the paragraph that followed the one quoted above, the District Court also addressed an argument that the City made on the first page of its reply brief in support of summary judgment. The City argued that the disciplinary issues were barred by its bankruptcy filing. *See* **Exhibit 6E** ("First these alleged disciplinary issues are time barred and also likely barred by the bankruptcy court."). The District Court held that "Plaintiff is not bringing a claim based on any conduct that occurred outside of the statute of limitations or that was alleged in the claim that was

- 12 -

## III. Argument

26. Cadoura violated the Plan's injunction and discharge provisions by filing the Federal Court Lawsuit. His claims in the Federal Court Lawsuit arise from prepetition events, including the 2009 Lawsuit, the alleged discipline, and the City's recommendation not to reinstate him in 2013, and were within Cadoura's fair contemplation at the time of the City's bankruptcy filing. Before the Petition Date, Cadoura "could have ascertained through the exercise of reasonable due diligence that [he] had a claim" against the City, based on the events which occurred from 2009 to June 2013, as detailed in the Summary Judgment Opinion and the City's Summary Judgment Motion and exhibits filed in the District Court. *See In re City of Detroit, Michigan*, 548 B.R. 748, 763 (Bankr. E.D. Mich. 2016) (citation omitted).

27. As set forth in the Summary Judgment Opinion, Cadoura resigned on June 3, 2013. Summary Judgment Opinion, p. 3; *see also* Summary Judgment Motion, Exhibit 4 at PageID.268 (Resignation Form). More importantly, he signed the Resignation Form, which contained a section for a "Departmental Recommendation" on Reinstatement and also contained the statement that to be reinstated, he must have resigned in good standing. As Cadoura testified, he

---

discharged in the bankruptcy proceedings." Summary Judgment Opinion, p. 19. The City is not arguing here that the claims asserted in the Complaint were also asserted in Proof of Claim 682 and thus discharged. Instead, the City is arguing that the claims asserted in the Complaint are barred and enjoined by the Bar Date Order and Confirmation Order because they were not included in any proof of claim.

- 13 -

resigned because he was about to get fired for disciplinary issues. He also had numerous documented disciplinary issues in the years before he resigned. Summary Judgment Motion, Page ID.264. As the District Court explained, "Cadoura's 'Summary of Conduct' with EMS lists thirteen disciplinary actions that occurred between July 2000 and December 11, 2011, although it appears that two were overturned and three were expunged." Summary Judgment Opinion, p. 2; *see also* Summary Judgment Motion, Exhibit 1, PageID.264. Each of these occurred prior to the Petition Date and any claims arising therefrom were within Cadoura's fair contemplation as of the Petition Date.

28. Indeed, Cadoura's situation is similar to a case decided by the Sixth Circuit, namely *Young v. Twp. of Green Oak*. 471 F.3d 674 (6th Cir. 2006). In *Young*, Larry Young worked as a police officer for the Green Oak Township Police Department starting in 1978. *Id.* at 675. He injured his back in a training exercise in 1992 and began receiving workman's compensation as a result. *Id.* at 675-76. Once he went on workman's compensation, he never returned to active duty. *Id.* at 676, 681.

29. Young stated that, also in 1992, he had learned that a fellow officer failed to report discharging his firearm during pursuit of a suspect. *Id.* at 676. He stated that he informed his supervisors, the Township, and others in accordance with policy. *Id.* Young claimed that around this time, he began getting harassed at work.

- 14 -

*Id.* In 1993, he applied for, but did not obtain a promotion, a decision that he attributed, at least in part, to his report of his fellow officer's misconduct. *Id.*

30. Young's workers' compensation benefits were stopped, restarted, and then challenged by the Township. *Id.* In 1995, Young sued the Township, alleging causes of action under ELCRA and other statutes for failure to promote, retaliation for filing a workers' compensation claim, and for age and disability discrimination. *Id.* at 677. In 1996, the trial court granted partial summary judgment to the Township on all but the retaliation claims, which claims the parties settled, bringing the suit to a close. *Id.* Young sued again in 1998 on various grounds, including breach of contract, failure to accommodate and disability discrimination in violation of ELCRA, and other claims. *Id.* at 678. The trial court granted summary judgment for defendants in this second case, and the court of appeals dismissed the appeal for want of prosecution. *Id.*

31. Young filed the complaint that became the basis for *Young* on May 13, 2002, in the District Court. *Id.* at 677, 678. The next month, the Township notified Young that it intended to hold a hearing before the Township Board of Trustees to terminate him.[3] *Id.* at 677. Young requested that his disabilities be accommodated instead so that he could return to active duty, but the Board issued a written decision on January 8, 2003, terminating his employment. *Id.* Young amended his complaint

---

[3] This hearing was required because Young was a Navy veteran. *Id.* at 675, 677.

40916945.7/022765.00213

to reflect this, asserting employment discrimination; deprivation of procedural due process; violations of the Americans with Disabilities Act, Michigan's Persons with Disabilities Civil Rights Act, and Michigan's Whistleblowers' Protection Act; and retaliatory discharge under 42 U.S.C. § 1983. *Id.* at 678. The Township moved for summary judgment on the grounds that res judicata barred all of these claims, and the District Court agreed. *Id.* The Sixth Circuit affirmed. *Id.* at 686.

32. The main issue was the determination of when Young's claims arose. If Young's claims arose prior to the lawsuit he lost in part and settled in part in 1996, and the lawsuit he lost in 1999, and if his claims were resolved by those lawsuits, then they were now barred by res judicata. The Sixth Circuit confirmed that, indeed, the claims had arisen long before the lawsuit in question had been filed and were barred.

33. Both the District Court and the Sixth Circuit discussed an earlier, unpublished opinion by the Sixth Circuit for the proposition that "a discrimination claim accrues when the operative decision is made, not when [a plaintiff] experiences the consequences of that decision." *Id.* at 679 (quoting *Yinger v. City of Dearborn*, 1997 WL 735323 (6th Cir. Nov. 18, 1997) (alteration in original)). Young's case was similar to *Yinger*, in that "both involve plaintiffs who had filed previous lawsuits raising substantially the same claims arising out of the same previous events against their respective police departments." *Id.* at 680. The District

- 16 -

Court and the Sixth Circuit agreed that "the case now on appeal constituted an attempt to challenge the Township's original, unchanged decision not to permit Young to return to work." *Id.* at 681. Although Young asserted that his claim was not ripe until he was actually terminated, the District Court found that the termination decision stemmed from the Township's original decision that Young was unable to return to work. *Id.* "An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination." *Id.* (quoting *Yinger*, 1997 WL 735323 at \*5 n.3). The Sixth Circuit concluded that "[a]ll of Young's employment discrimination and retaliation claims arise from the Township's refusal to return him to work," and thus affirmed the District Court's judgment against him. *Id.* at 682.

34. Although the City denies that it discriminated against Cadoura or otherwise treated him unfairly in any way, the fact remains that, even if it had, any claims Cadoura might have had against the City would have arisen prior to the City's filing of its bankruptcy petition. By Cadoura's own account, the issue was that he was placed on a "do not hire" list by the City prepetition. Any claims that arose from that had to be resolved within the City's bankruptcy process. He cannot now try to be rehired, or try again in a year, or in five, and claim that each attempt gives him a fresh opportunity to sue.

35. Instead, as the *Young* case makes clear (along with the *Yinger* case that it discusses), at the time the City filed its bankruptcy petition, it was within

40916945.7/022765.00213

Cadoura's fair contemplation that he would not be reinstated. Any claims he had or contemplated he would have had to have been filed in a proof of claim because those claims have been discharged. His Federal Court Lawsuit should be dismissed with prejudice.

36. Despite holding a pre-petition putative claim, however, Cadoura did not file a proof of claim in the City's bankruptcy case for the claims he asserts in the Complaint. The Plan's discharge provision states that the "rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date." Plan Art. III.D.4, at p.50.

37. Consequently, Cadoura does not have a right to a distribution or payment under the Plan on account of the claims asserted in the Complaint. Plan, Art. III.D.5, at p.50 ("[A]ll entities that have been, are or may be holders of Claims against the City . . . shall be permanently enjoined from . . . proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan."). *See also* Plan, Art. I.A.19, at p.3; Art. I.A.134, at p.11; Art. VI.A.1, at p.67 ("Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim."). The claims in the Complaint were discharged, and the Plan enjoins

40916945.7/022765.00213

Cadoura from pursuing them. The Bar Date Order also forever barred, estopped, and enjoined Cadoura from pursuing the claims asserted in the Complaint.

38. Even if Cadoura could somehow seek relief on his claims against the City, or its property (which he cannot), the proper and only forum for doing so would be in this Bankruptcy Court. There is therefore no set of circumstances under which Cadoura is, or would have been, permitted to commence and prosecute the claims asserted in the Complaint.

## IV. Conclusion

39. The City thus respectfully requests that this Court enter an order, in substantially the same form as the one attached as **Exhibit 1**, permanently barring, estopping and enjoining Cadoura from asserting the claims asserted in the Complaint against the City or property of the City.

40. The City sought, but did not obtain, concurrence to the relief requested in the Motion.

Dated: August 4, 2023                MILLER, CANFIELD, PADDOCK AND
                                     STONE, P.L.C.

                                     By: /s/ Marc N. Swanson
                                     Marc N. Swanson (P71149)
                                     150 West Jefferson, Suite 2500
                                     Detroit, Michigan 48226
                                     Telephone: (313) 496-7591
                                     Facsimile: (313) 496-8451
                                     swansonm@millercanfield.com
                                     Attorneys for the City of Detroit

- 19 -

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## EXHIBIT LIST

| | |
|---|---|
| Exhibit 1 | Proposed Order |
| Exhibit 2 | Notice of Opportunity to Object |
| Exhibit 3 | None |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | None |
| Exhibit 6A | Complaint |
| Exhibit 6B | Federal Court Lawsuit Docket |
| Exhibit 6C | Summary Judgment Opinion |
| Exhibit 6D | Summary Judgment Response |
| Exhibit 6E | Reply in Support of Summary Judgment |
| Exhibit 6F | Summary Judgment Motion |
| Exhibit 6G | Human Resources Rule 15, Reinstatement |

## EXHIBIT 1 – PROPOSED ORDER

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

### ORDER GRANTING CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST RICHARD CADOURA

This matter, having come before the Court on the *Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Richard Cadoura* ("Motion"),[1] upon proper notice and a hearing, the Court being fully advised in the premises, and there being good cause to grant the relief requested,

**THE COURT ORDERS THAT:**

1.      The Motion is granted.

2.      Within five days of the entry of this Order, Richard Cadoura shall dismiss, or cause to be dismissed, with prejudice the lawsuit captioned as Richard Cadoura v. The City of Detroit, Case Number 20-12986, United States District Court, Eastern District of Michigan ("Federal Court Lawsuit").

---

[1] Capitalized terms used but not otherwise defined in this Order shall have the meanings given to them in the Motion.

3.     Richard Cadoura is permanently barred, estopped and enjoined from asserting the claims asserted in the Federal Court Lawsuit or claims arising from or related to the Lawsuit against the City of Detroit or property of the City of Detroit.

4.     Richard Cadoura is prohibited from sharing in any distribution in this bankruptcy case.

5.     The Court shall retain jurisdiction over any and all matters arising from the enforcement, interpretation or implementation of this Order.

## EXHIBIT 2 – NOTICE

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**NOTICE OF OPPORTUNITY TO OBJECT TO CITY OF
DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING
THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST
RICHARD CADOURA**

The City of Detroit has filed papers with the Court requesting the entry of an

order enforcing the bar date order and confirmation order against Richard Cadoura.

**Your rights may be affected. You should read these papers carefully and**

**discuss them with your attorney.**

If you do not want the Court to enter an Order granting the *City of Detroit's*

*Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation*

*Order Against Richard Cadoura,* within 14 days, you or your attorney must:

1.    File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above.  You must also mail a copy to:

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2.    If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
      Marc N. Swanson (P71149)
      150 West Jefferson, Suite 2500
      Detroit, Michigan 48226
      Telephone: (313) 496-7591
      Facsimile: (313) 496-8451
      swansonm@millercanfield.com

Dated: August 4, 2023

## EXHIBIT 3 – NONE

# EXHIBIT 4 – CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 4, 2023, he served a copy of the foregoing **CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST RICHARD CADOURA** upon counsel for Richard Cadoura, in the manner described below:

Via first class mail and email:

Conner Gallagher
Carla D. Aikens, P.C.
615 Griswold St., Suite 709
Detroit, Michigan 48226
conner@aikenslawfirm.com

Carla D. Aikens
Carla D. Aikens, P.C.
615 Griswold Street, Suite 709
Detroit, MI 48226
carla@aikenslawfirm.com


DATED:  August 4, 2023

By: /s/ Marc N. Swanson
     Marc N. Swanson (P71149)
     150 West Jefferson, Suite 2500
     Detroit, Michigan 48226
     Telephone: (313) 496-7591
     Facsimile: (313) 496-8451
     swansonm@millercanfield.com

# EXHIBIT 5 – NONE