# EXHIBIT 6A
# Complaint

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RICHARD CADOURA, | ) |
| PLAINTIFF, | ) |
| | ) CIVIL ACTION NO. _____ |
| VS. | ) |
| CITY OF DETROIT, a Michigan Municipal Corporation, | ) HON. |
| DEFENDANT. | ) |

## COMPLAINT

PLAINTIFF, RICHARD CADOURA, by and through his attorneys, CARLA D. AIKENS, P.C., submit the following Complaint against DEFENDANT CITY OF DETROIT.

## JURY DEMAND

COMES NOW PLAINTIFF RICHARD CADOURA and hereby makes his demand for trial by jury.

## JURISDICTION

1. At all times relevant to this complaint, Plaintiff Richard Cadoura was a resident Washtenaw County in the State of Michigan.

2. Defendant is a Michigan Municipal Corporation, located exclusively in Wayne County, and in charge of operating and overseeing the Detroit Fire Department.

3. This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

4. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

1

## VENUE

5.      Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

6.      In 1999, Plaintiff was hired by Defendant as an Emergency Medical Technician and paramedic, where Plaintiff enjoyed a long-tenured and successful employment relationship with Defendant.

7.      On or around June of 2009, Plaintiff joined three other employees of Defendant Fire Department in a lawsuit against Defendant for violations of Michigan's anti-discrimination law in the handling of their employment; Case No. 09-010633-CZ, Hon. Prentis Edwards, presiding.

8.      Specifically, Plaintiff claimed that despite his ten years of working for Defendant's Fire Department, he was never provided with a meaningful opportunity to receive a promotion and was passed over for promotions based upon his race/ethnicity.

9.      Additionally, Plaintiff's 2009 claim had a count of hostile workplace environment related to Plaintiff.

10.     Eventually, Plaintiff and his co-plaintiff's claims were discharged in the City of Detroit's bankruptcy proceedings.

11.     Almost ten years later, in late 2017, Plaintiff was told by an agent of Defendant that there were employment openings for Emergency Medical Technicians/Basic Paramedics with the Detroit Fire Department, and that if he were to apply, considering his experience and skill, he would be hired.

12. As a result, Plaintiff applied for the position of Emergency Medical Technician/Basic Paramedic.

13. On December 4, 2017, Ms. Belinda Brown, a recruiter who worked for Defendant's human resources ("HR") department, contacted Plaintiff and informed him that his application had been selected, and that he needed to perform a physical agility test ("PAT") and turn in necessary paperwork.

14. Thereafter, Plaintiff was informed by agents of Defendant that after this paperwork was turned in and after he completed the PAT, he would be hired by Defendant as a basic paramedic.

15. Accordingly, Plaintiff completed the PAT and submitted the necessary paperwork to Defendant.

16. On January 9, 2018, Ms. Brown again contacted Plaintiff and informed him that he was, "all set," and that he could "put in [his] 2-weeks' notice [to his other employer]," and that he was set to begin the fire academy on January 22, 2018.

17. The week before Plaintiff was set to begin the academy, and after he had been told he was hired and that he could quit his other job, Ms. Brown informed Plaintiff that she needed to speak with him.

18. Days before Plaintiff was supposed to begin the academy Plaintiff spoke to Ms. Brown wherein she informed Plaintiff that despite the previous assurances of employment, and confirmation of hiring, Plaintiff was not eligible to work for Defendant because of his participation in his previous anti-discrimination lawsuit against Defendant and its fire department.

19. As a result, Defendant terminated the employment relationship with Plaintiff.

20.     Accordingly, within 300 days after being informed of this termination, Plaintiff filed an intake questionnaire with the Detroit office of the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant had committed violations of state and federal anti-discrimination law and he was being discriminated against in his hiring because of: (1) retaliation for his previous lawsuit, (2) his race, and (3) his national origin.

21.     Accordingly, on or around August 6, 2020, the EEOC sent Plaintiff his notice of his right to sue.

22.     Plaintiff requests the relief as described in the Prayer for Relief below.

## COUNT I
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000E, ET SEQ. ("TITLE VII")

23.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

24.     At all material times, Defendant was an employer and Plaintiff an employee, covered by, and within the meaning of Title VII.

25.     Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to retaliate against an employee for engaging in protected activity.

26.     A respondeat superior relationship existed because Ms. Brown undertook tangible decisions that affected Plaintiff's employment; e.g. terminating the employment relationship.

27.     Plaintiff engaged in protected activity when he took the following actions, including but not limited to, bringing suit against Defendant for their discriminatory employment practices.

28.     Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior, because, among other things, Defendant was a party to the lawsuit, and, even more, Ms. Brown specifically cited this lawsuit as the reason she was terminating the employment relationship.

29. Defendant and/or its agents took adverse employment actions against Plaintiff, including but not limited to Plaintiff's termination.

30. But for Plaintiff's participation in protected activity, Defendant would not have taken said adverse employment actions against Plaintiff.

31. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

32. Plaintiff notified Defendant and its agents of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

33. As a proximate result of the Defendant retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

34. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

35. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II
## RETALIATION IN VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101, et seq. ("ELCRA")

36. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

37. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of, the ELCRA.

38. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to retaliate against an employee who has engaged in protected activity.

39. A respondeat superior relationship existed because Ms. Brown undertook tangible decisions that affected Plaintiff's employment; e.g. terminating the employment relationship.

40. Plaintiff engaged in protected activity when he took the following actions, including but not limited to, bringing suit against Defendant for their discriminatory employment practices.

41. Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior, because, among other things, Defendant was a party to the lawsuit, and, even more, Ms. Brown specifically cited this lawsuit as the reason she was terminating the employment relationship.

42. Defendant and/or its agents took adverse employment actions against Plaintiff, including but not limited to Plaintiff's termination.

43. But for Plaintiff's participation in protected activity, Defendant would not have taken the adverse employment actions against Plaintiff.

44. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

45. Plaintiff notified Defendant and its agents of the unwelcomed conduct and Defendant failed to remedy the unwelcomed conduct.

46. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

47. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

48. Plaintiff requests relief as described in the Prayer for Relief below.

## **RELIEF REQUESTED**

PLAINTIFF, RICHARD CADOURA, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;

2.	Exemplary damages in whatever amount which Plaintiff is entitled;

3.	An award of lost wages and the value of fringe benefits, past and future;

4.	An award of interest, costs, and reasonable attorney fees; and

5.	An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  November 4, 2020

                                            Respectfully Submitted,

                                            /s/ Connor Gallagher _____
                                            Connor B. Gallagher (P82104)
                                            CARLA D. AIKENS, P.C.
                                            *Attorneys for Plaintiff*
                                            615 Griswold Ste. 709
                                            Detroit, MI 48226
                                            connor@aikenslawfirm.com