# EXHIBIT 6C

## Summary Judgment Opinion

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD CADOURA,

Plaintiff,                              Case No. 20-cv-12986

v.                              U.S. District Court Judge
                                        Gershwin A. Drain

THE CITY OF DETROIT,

Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 33) AND SETTING NEW DATES

### I.   INTRODUCTION

On November 5, 2020, Plaintiff Richard Cadoura initiated the instant employment action against Defendant City of Detroit ("the City" or "Detroit"). *See* ECF No. 1. Cadoura alleges that the City retaliated against him for an earlier employment discrimination lawsuit, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and Michigan's Elliot Larsen Civil Rights Act, M.C.L. 37.2101 *et seq.* ("ELCRA"). *See id.* Presently before the Court is the City's Motion for Summary Judgment. *See* ECF No. 33. Cadoura filed a response, *see* ECF No. 37, and the City replied, *see* ECF No. 38. Upon review of

1

the Parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter. Therefore, the Court will resolve the instant Motion on the briefs. *See* E.D. Mich. LR 7.1(f)(2). For the following reasons the Court will **DENY** Defendant's Motion for Summary Judgment (ECF No. 33).

## II. BACKGROUND

### A. Factual Background

#### 1. Cadoura's hiring and employment history

In 1998, the City hired Cadoura as an Emergency Medical Technician ("EMT") and paramedic in the Detroit Fire Department's Emergency Medical Services Division ("EMS"). ECF No. 33-13, PageID.296. Cadoura's "Summary of Conduct" with EMS lists thirteen disciplinary actions that occurred between July 2000 and December 11, 2011, although it appears that two were overturned and three were expunged. ECF No. 33-2, PageID.264. There are no commendations listed. *Id*. On March 1, 2012, Chief Jerald James, then Superintendent of EMS, emailed Sydney Zack, then 2nd Deputy Commissioner, concerning Cadoura's behavior. ECF No. 33-3. In particular, Chief James noted that Cadoura "ha[d] continuously displayed his refusal to comply with standing policies as well as not be receptive to direction from supervisory staff" and that "several supervisors" had contacted James

2

"multiple times" regarding Cadoura's behavior. *Id.* at PageID.265–66. Cadoura had additional disciplinary charges in February 2013. *See* ECF No. 33-4.

In contrast, Joseph Barney III—who served as an EMT, a paramedic, an Assistant Superintendent, a Captain of the EMS Training Academy, and a Shift Captain during his twenty-nine-year career with the City—testified that Cadoura was "a good EMT" in his opinion. ECF No. 37-3, PageID.446; *see also id.* at PageID.444. Barney testified that "the period up to the bankruptcy was a very ugly period" and that Cadoura had fought "hard to improve the lot for everybody at EMS." *Id.* at PageID.444. Barney further testified that in 2012 and 2013, the EMS administrators gave suspensions more freely than they do presently, and that this resulted in a violation of employees' "due process" rights under the Department's guidelines. *Id.* at PageID.446–47. These violations included delaying the adjudication and/or appeal of employees' disciplinary actions for a couple years. *Id.* at PageID.442. Some supervisors used these delays as a tactic for sabotaging an employee's eligibility for promotion. *Id.* at PageID.443.

Cadoura resigned from the EMS on June 3, 2013. ECF No. 33-5. He listed the reason for his resignation as "retirement." *Id.* at PageID.268. On June 10, 2013, Anthony Wade and Chief James completed the supervisor sections of the resignation notice form. *Id.* at PageID.269. They indicated that Cadoura had one written reprimand and one suspension in the prior eighteen months, his attendance and

3

tardiness record needed improvement, and that his work behavior needed improvement. *Id.* at PageID.268–69. They did not recommend Cadoura for reinstatement because he had "pending discipline [and] poor work behavior." *Id.* at PageID.269. Brandi Richmond, Human Resources, concurred with the recommendation to not reinstate Cadoura on September 16, 2013. *Id.* at PageID.270.

Donella James—who served as an EMT, a paramedic, a Lieutenant, an Assistant EMS Supervisor, and then EMS Captain during her twenty-five-year career with the City—testified that she was not aware of any Detroit policy mandating that an employee who resigned with pending disciplinary actions be placed on a "do not rehire list." ECF No. 37-4, PageID.453, PageID.460. However, she explained that issues such as who would be placed on a "do not rehire list" were solely the purview of the administrative office. *Id.* at PageID.460. John Sablowski—who also served as an EMT, a paramedic, a Lieutenant, and Acting Captain during his twenty-five-year career with the City—testified similarly. *See* ECF No. 37-5, PageID.467, PageID.73.

### 2. The earlier employment discrimination lawsuit

In May 2009, Cadoura and three other Detroit Fire Department employees filed a lawsuit against the City for violations of the ELCRA: *McCraken v. Cty. of Detroit*, No. 09-010633-CZ (Wayne Cnty. Cir.) (hereinafter "the Employment Discrimination Action"). ECF No. 33-6, PageID.273–80. Cadoura alleged that he

4

had not been given any meaningful opportunity to receive promotions and was passed over for promotions based on his race and ethnicity. *Id.* at PageID.276–80.

Detroit filed for Chapter 9 bankruptcy on July 18, 2013. Cadoura filed a bankruptcy claim with the United States Bankruptcy Court for the Eastern District of Michigan on February 14, 2014 for damages resulting from the Employment Discrimination Action. *See* ECF No. 33-6. On June 27, 2017, the bankruptcy court entered an order disallowing and expunging Cadoura's claim. ECF No. 33-7.

### 3. Cadoura's attempt to secure subsequent employment with the City

Cadoura testified that at some point in 2017, he spoke to Chief Sean Larkins, Superintendent of EMS, at the Fire Department headquarters and indicated that he regretted leaving the City's employ. ECF No. 33-13, PageID.299–300. According to Cadoura, Larkins provided him a reinstatement application form and directed him to speak to Kemia Crosson, an Employee Services Consultant in the City's Human Resources Department. *Id.* at PageID.300; ECF No. 33-16, PageID.337. Cadoura completed the form and gave it to Crosson, but he never heard back. 33-13, PageID.300. Cadoura's recollection seems to be supported by a contemporaneous email from Chief Larkins to Crosson. *See* ECF No. 37-9. On February 24, 2017, Chief Larkins informed Crosson that she would "be receiving an application for rehire from a Richard Cadoura" and asked her to "pull his file and speak to [EMS]

5

prior to making any decisions." *Id.* at PageID.508.   Belinda Brown, a recruiter in the City's Human Resources Department, testified that it was not common to pull an applicant's file prior to making a hiring decision.   ECF No. 33-18, PageID.347.

Cadoura testified that, later that year, he had a phone call with Assistant Chief Raymond Birch, who informed him that "the City was eager to bring back technicians that had a lot of experience that could mentor a lot of the younger group that were hiring in." *Id*.   Former Chief James testified that there "was a push to hire" during that period, and the Fire Department was reaching to out all former employees.   *See* ECF No. 37-6, PageID.490.   Thus, around November 2017, Cadoura applied for re-employment with the City as an EMT and paramedic by submitting an application and his resume.   ECF Nos. 33-8, 33-9.   On December 4, 2017, Brown sent Cadoura a letter indicating that he had been scheduled to take the Physical Agility Test ("PAT") for the EMT position a few days later.   ECF No. 33-10.   Cadoura testified that around the time he took the PAT, he expressed surprise that he was being considered for reinstatement given his disciplinary history.   ECF No. 33-13, PageID.300.   Brown told him that his fifteen years of service would "weigh heavily" in the consideration.   *Id*.

Brown sent Cadoura a "conditional offer of employment" on December 19, 2017 that was contingent on his successful completion of a criminal background investigation as well as driver's license, drug screen, and pre-employment medical

evaluations.  ECF No. 33-11, PageID.292.  On January 9, 2018, Brown sent Cadoura a text message stating that he was "all set," he could "put in [his] two weeks [*sic*] notice" at his current employment, and that the academy would start on January 22, 2018.  ECF No. 33-18, PageID.348.  Brown testified that she did not recall sending Cadoura the text message, *id.*, but Cadoura testified that he received it, *see* ECF No. 33-13, PageID.300.

Chief Larkins affirmed that in 2018, the then Assistant Superintendent of EMS (likely Birch) asked him if Cadoura and another applicant "were rehires."  ECF No. 38-2, PageID.523.  Thus, Chief Larkins emailed Crosson and Brown on January 12, 2018 to verify that Cadoura was "not a rehire."  ECF No. 33-15, PageID.335.  Brown confirmed that she had just received the personnel files for Cadoura and another applicant and that both were "not recommended for reinstatement."  *Id.*  Chief Larkins affirmed that he "had no knowledge of why Richard Cadoura . . . [was] placed on the do not re-hire list."  ECF No. 38-2, PageID.523.

On January 13, 2018, Brown sent Cadoura a letter stating that he was no longer being considered for selection.  ECF No. 33-12.  Cadoura testified that Brown explained to him over the phone that the City had reviewed Cadoura's old employee file and discovered he had been discharged and placed on a "Do Not Rehire List."  ECF No. 33-13, PageID.300.  Cadoura clarified that he had resigned, not been discharged, and that he had never received an exit interview.  *Id.* at PageID.301.

7

Brown stated that exit interviews were mandatory so that the employee would know whether he or she was eligible for rehire in the future. *Id.* Cadoura also pointed out that if he had been discharged, he should have had a show cause hearing. *Id.* At this point, Brown told him that "she though that she said too much and hung up." *Id.*

During the hiring push, the City contacted Brian Moore, a former Detroit Fire Department paramedic. ECF No. 37-6, PageID.490–91. Donella James recalled that Moore had had an issue workplace violence and another with patient care during his initial employment with the City. *See* ECF No. 37-4, PageID.457. Former Chief James testified that he listed Moore as a do not rehire because "[h]e killed a patient." ECF No. 37-6, PageID.489. Nevertheless, Moore was rehired. *Id.* Former Chief James had also "heard of people being rehired that were listed as do not rehire" and noted that "a whole bunch of people that had resigned and been terminated" were rehired. *Id.* In contrast, in his affidavit, Chief Larkins provided the names of three former employees, other than Cadoura, who were on the do not rehire list and were denied reinstatement and the name of a fourth employee that he thought, but was not certain, was also denied reinstatement. ECF No. 38-2, PageID.523.

## B. Procedural Background

On August 22, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). ECF No. 33-14. His charge alleges that he made internal complaints regarding discrimination while previously

8

employed by Defendant.  *Id.* at PageID.334.  It further alleges that Plaintiff applied for an open position in November 2017, was offered the position, but had the offer rescinded because he is on a do not rehire list.  *Id*.

As stated in Section I *supra*, Plaintiff initiated the instant action on November 5, 2020, bringing claims for retaliation under Title VII (Count I) and the ELCRA (Count II).  *See* ECF No. 1.  Defendant argues that both claims fail as a matter of law because Plaintiff cannot establish that the decisionmakers knew about his participation in a protected activity or that there was a causal connection between the protected activity and the decision not to rehire him.  ECF No. 33, PageID.254. For the following reasons, the Court disagrees.

## III.    LAW & ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998).  "A fact is material if its resolution will affect the outcome of the lawsuit."  *F.P. Dev., LLC v. Charter Twp. of Canton, Michigan*, 16 F.4th 198, 203 (6th Cir. 2021).  The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-

9

moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, no genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted).

"[T]he standard that a movant must meet to obtain summary judgment depends on who will bear the burden of proof at trial." *Pineda v. Hamilton Cty., Ohio*, 977 F.3d 483, 491 (6th Cir. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Thus, if the nonmoving party will bear the burden of proof on a claim, the movant "need only demonstrate that the nonmoving party has failed to 'make a showing sufficient to establish the existence of an essential element' of that claim." *Id.* (quoting *Celotex*, 477 U.S. at 322). Thereafter, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52; *see also Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[The] general rule [is] that a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." (quotation marks omitted)).

10

**B. Discussion**

"Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII." *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014) (citing 42 U.S.C. § 2000e–3(a)). Likewise, "[u]nder [the] ELCRA, an employer is liable if it retaliates against an employee for having engaged in protected activity, e.g., opposing a violation of the act's antidiscrimination provision." *White v. Dep't of Transportation*, 334 Mich. App. 98, 114, 964 N.W.2d 88, 96 (2020) (citation omitted). Retaliation claims pursuant to the ELCRA are analyzed under the same standard as claims pursuant to Title VII. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018).

A Title VII retaliation claim can be established "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Laster*, 746 F.3d at 730 (quoting *Imwalle v. Reliance Medical Products, Inc.,* 515 F.3d 531, 538 (6th Cir.2008)). Where the plaintiff relies on circumstantial evidence, the court analyzes the retaliation claim under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). *Id.* Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case of retaliation. *Id*. If the plaintiff succeeds, the burden "shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions."

11

*Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (quoting *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)).  If the defendant succeeds, the "burden shifts back to the plaintiff to demonstrate 'that the proffered reason was not the true reason for the employment decision.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

> To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate that: "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Jones v. Johanns,* 264 Fed. App'x. 463, 466 (6th Cir. 2007).

*Laster*, 746 F.3d at 730 (citation omitted).

Here, Defendant only disputes whether Plaintiff has established the second and fourth elements of a *prima facie* retaliation claim and argues that it has provided a legitimate non-retaliatory reason for its actions.  *See* ECF No. 33, PageID.254, PageID.258.

### 1.  Decisionmakers' knowledge

First, as stated in Section II, Subsection B *supra*, Defendant argues that Plaintiff cannot establish that the decisionmakers knew of his participation in the Employment Discrimination Action.  *See* ECF No. 33, PageID.254.

Defendant asserts there is no evidence in the record to support Plaintiff's allegation that Brown told him that he was not eligible to work for the City because of his prior antidiscrimination lawsuit.  *See* ECF No. 33, PageID.254 (citing ECF No. 1, PageID.3).   Specifically, Defendant contends that this allegation is contradicted by Plaintiff's EEOC charge and his deposition testimony regarding his conversations with Brown.  *Id.* at PageID.255.  Defendant also notes that Brown and Crosson both started working for the City after Plaintiff's resignation: in October 2016 and October 2013, respectively.  *Id.* at PageID.257; *see also* ECF No. 33-18, PageID.345.   Brown testified that she was unaware of the Employment Discrimination Action until the instant lawsuit.   ECF No. 33-18, PageID.345. Likewise, Chief Larkins affirmed that he "had no knowledge of any lawsuit filed by" Plaintiff.  *See* ECF No. 38-2, PageID.523.

Plaintiff counters that Chief James, who recommended that Plaintiff not be reinstated, testified that he was aware of the Employment Discrimination Action prior to Plaintiff's resignation and that "there was a buzz everywhere about it after it hit the news."  ECF No. 37, PageID.396 (quoting. ECF No. 37-6, PageID.487–88).  Moreover, Plaintiff asserts that Chief Larkins, who had been working for the City during the Employment Discrimination Action, deviated from normal hiring

13

procedure in directing Crosson to pull Plaintiff's file before making a hiring decision.[1]  *See id.* at PageID.398.

Viewing the evidence in the light most favorable to Plaintiff, *Anderson*, 477 U.S. at 255, the Court concludes that there is a question of fact as to whether Defendant was aware of Plaintiff's protected activity.  To the extent recommending Plaintiff not be reinstated can be considered an adverse action in and of itself, former Chief James, one of the people to make that decision, testified that he was aware of the Employment Discrimination Action prior to making the recommendation.  *See Nichols v. Snow*, No. 3:03-0341, 2006 WL 167708, at *18 (M.D. Tenn. Jan. 23, 2006) ("[I]t is well established that in some circumstances an employer's negative remarks or referral comments to a former employee's prospective employer can constitute an adverse employment action against the former employee." (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997)).  His knowledge is thus sufficient with respect to that particular action.

Even if only the actual decision not to rehire Plaintiff constitutes an adverse action, there is a question of fact as to whether at least Chief Larkins knew about the

---

[1] Relying on the February 24, 2017 email to Crosson, Plaintiff also contends that Chief Larkins improperly "inserted" himself into the hiring process.  ECF No. 37, PageID.398.  This argument seems to mischaracterize the evidence, given that Plaintiff himself testified that he reached out to Chief Larkins early 2017.  *See* ECF No. 33-13, PageID.299–300.

14

Employment Discrimination Action when making that decision.    Former Chief James testified that the Employment Discrimination Action received news coverage and was widely discussed in the EMS as a result.  It is reasonable to infer that Chief Larkins, who worked for the EMS at that time, would have heard about the lawsuit.[2] Indeed, it is implausible that someone as high ranking as Chief Larkins, even if he was not Chief at the time, would have been unaware that his division was being sued. The Court acknowledges that Chief Larkins disclaimed any knowledge of the lawsuit in his affidavit attached to Defendant's Reply—although the Court also notes that Chief Larkins affidavit does not specify when he learned of the lawsuit. Regardless, "a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan*, 572 U.S. at 656.

The Court also notes that while Defendant produced testimony from Brown and an affidavit from Chief Larkins disclaiming their knowledge of the Employment Discrimination Action, Defendant produced no such evidence for Crosson.  While Crosson started working for the City after Plaintiff's resignation, she still could have

---

[2] Likewise, the Court notes that the Assistant Superintendent who first asked Chief Larkins about whether Plaintiff was on the "do not hire" list was presumably employed by the City during the Employment Discrimination Action and that this could have served as motivation for the original inquiry about Plaintiff's application. As this induvial is now deceased, ECF No. 38-2, PageID.523, there is no testimony from him regarding his knowledge.

15

learned of the lawsuit from other employees, particularly when she was pulling Plaintiff's file and generally asking about him in order to make an employment decision. Thus, Defendant has not "demonstrate[d] that the nonmoving party has failed to 'make a showing sufficient to establish the existence of [this] element' of [his] claim." *Pineda*, 977 F.3d at 491 (quoting *Celotex*, 477 U.S. at 322).

As such, Defendant is not entitled to summary judgment on this element of Plaintiff's retaliation claims.

### 2.  Causation

Next, Defendant argues that Plaintiff has not established a causal connection between the protected activity and the decision not to rehire him. ECF No. 33, PageID.257. Specifically, Defendant asserts that its decision not to rehire Plaintiff was based on the recommendation not to rehire Plaintiff when he resigned, which he received due to his pending discipline and poor work behavior. *Id.*

To satisfy the causation element of a Title VII retaliation claim, the plaintiff must establish "but-for-causation," *i.e.*, "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Here, viewing the evidence in the light most favorable to Plaintiff, *Anderson*, 477 U.S. at 255, the Court concludes that there is a genuine issue of fact as to whether the Employment Discrimination Action was the "but-for" case of the Defendant's

16

decision not to rehire Plaintiff. Plaintiff contrasts himself with Brian Moore—who had at least one instance of workplace violence, was terminated for killing a patient, and former Chief James testified was placed on the "do not hire list," but whom Defendant nevertheless rehired during the push for more EMTs in 2017 and 2018. Plaintiff, in contrast seems to have been generally disciplined for losing equipment and insubordination, and a significant portion of his disciplinary actions were overturned or expunged. *See* ECF No. 33-2, PageID.264. Given that Moore's disciplinary record seems more egregious than Plaintiff's, even if not necessarily as long, a rational trier of fact could find that Plaintiff has established causation for his retaliation claims. *See Scott*, 550 U.S. at 380. Thus, Defendant is not entitled to summary judgment on this element of Plaintiff's retaliation claims.

### 3. Legitimate non-retaliatory reason for Defendant's actions and pretext

Finally, Defendant asserts that it has a legitimate non-retaliatory reason for its actions. ECF No. 33, PageID.258. Specifically, Defendant contends that it did not rehire Plaintiff because he was not recommended for reinstatement due to his pending discipline and poor work behavior. *Id.*

To demonstrate pretext, a plaintiff "must produce evidence sufficient that a reasonable finder of fact could reject the employer's proffered reason." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007) (quoting *Haughton*

17

*v. Orchid Automation*, 206 Fed. App'x. 524, 531 (6th Cir.2006)).  A plaintiff can do this "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Id.* (quoting *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434 (6th Cir. 2002)).

Again, viewing the evidence in the light most favorable to Plaintiff, *Anderson*, 477 U.S. at 255, the Court concludes there is a genuine question of fact as to whether Defendant's proffered reason for not hiring Plaintiff is pretextual.  Specifically, there is a question of fact with respect to whether the recommendation not to rehire Plaintiff actually motivated Defendant's decision or was sufficient to warrant not rehiring Plaintiff.

First, there is a genuine dispute whether Plaintiff was, in fact, placed on the "do not hire list" due to his pending discipline and poor work behavior, as opposed to his participation in the Employment Discrimination Action.  Barney testified that Plaintiff was known for advocating and highlighting deficiencies within the EMS and that the EMS administrators used the delayed adjudication of disciplinary actions as a tactic to sabotage promotions.  Thus, it is possible that some of Plaintiff's disciplinary actions were imposed due to his advocacy activities.  This is supported by the fact that so many of his infractions were overturned or expunged.  Even if not, there is conflicting evidence in the record about whether the EMS has a policy

18

mandating that any employee who resigns with pending disciplinary action be placed on a "do not rehire list." Former Chief James testified that he was aware of the lawsuit at the time that Plaintiff resigned. Given the evidence concerning the atmosphere at the EMS at the time, there is a genuine dispute as to whether the Employment Discrimination Action may have motivated Plaintiff's placement on a "do not rehire list."

In its Reply, Defendant contends that Barney's testimony regarding Plaintiff's disciplinary issues are time barred and possibly barred by the bankruptcy discharge. ECF No. 38, PageID.512. However, Defendant also asserts that it solely based its decision not to rehire Plaintiff on the recommendation not to reinstate, which was itself based on his pending discipline and poor work behavior. *See* ECF No. 33, PageID.258. Defendant cannot have it both ways. Plaintiff is not bringing a claim based on any conduct that occurred outside of the statute of limitations or that was alleged in the claim that was discharged in the bankruptcy proceedings. However, as Defendant implicitly notes in its own arguments, that conduct from that period is relevant to the factual basis for Plaintiff's current claims. Thus, they are properly considered at this time.

There are also questions of fact with respect to Defendant's decision not to rehire Plaintiff in 2018. As discussed *supra*, Plaintiff's disciplinary record appears to be less egregious than Moore's, both individuals were placed on the "do not rehire

list," but Moore was still rehired.  While Chief Larkins provides examples of three or four other employees on a "do not rehire list" who were denied reinstatement, Defendant does not provide details about those employees from which the Court could determine whether they are adequate comparators to Plaintiff.  Additionally former Chief James indicated that several other individuals who had been terminated or placed on a "do not rehire list" were still reinstated during the hiring push.  While the Court also lacks details about these individuals, including their names, Moore's rehiring coupled with this anecdote is sufficient to create a question of fact as to whether Defendant applied the "do not rehire lists" uniformly.  Thus, there is a question of fact as to whether Plaintiff's placement on a "do not rehire list" was, in fact, the motivating factor for Defendant's decision not to hire him or was a sufficient reason not to do so.

As such, the Court concludes Plaintiff has established pretext sufficient to survive summary judgment.

## IV.    CONCLUSION

Accordingly, for the reasons articulated above, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 33) is **GRANTED/DENIED**.

**IT IS FURTHER ORDERED** that the following dates shall govern in this matter:

| | |
|---|---|
| Facilitation/Mediation:[3] | July of 2023 |
| Motions *in Limine* cutoff: | August 1, 2023 |
| Joint Final Pretrial Order: | August 1, 2023 |
| Final Pretrial Conference: | August 21, 2023 at 2:00 p.m. |
| Motions in Limine Hearing: | August 21, 2023 at 2:00 p.m. |
| Trial date: | September 12, 2023 at 9:00 a.m. |

The practices and procedures set forth in this Court's April 20, 2022 Scheduling Order shall remain in effect.  ECF No. 22, PageID.207–13.

**IT IS SO ORDERED**.

/s/ Gershwin Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

---

[3] The parties shall submit the case to facilitation. A proposed stipulated order referring case to facilitation shall be submitted to the Court via the utilities function on CM/ECF no later than June 15, 2023. The proposed order must identify the facilitator and the date set for facilitation.  Facilitation must occur no later than July 31, 2023.

Dated:  June 8, 2023

## CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 8, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager

22