**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST KENNETH NIXON

The City of Detroit, Michigan ("<u>City</u>") by its undersigned counsel, Miller, Canfield, Paddock and Stone, PLC, files this *Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Kenneth Nixon* ("<u>Motion</u>"). In support of this Motion, the City respectfully states as follows:

## I.    Introduction

1.     On June 28, 2023, Kenneth Nixon ("<u>Nixon</u>") filed a lawsuit against the City seeking monetary damages on account of alleged events which occurred in 2005, approximately eight years before the City filed for bankruptcy. As a result, the filing of this lawsuit violates the discharge and injunction provisions in the City's confirmed Plan and the Bar Date Order (each as defined below).

2.     The City informed Nixon of these violations and asked him to voluntarily dismiss the City from the lawsuit, but to no avail. As a result, the City is left with no choice but to seek an order barring and permanently enjoining Nixon from asserting and prosecuting the claims described in the federal court action

- 1 -

against the City or property of the City and requiring Nixon to dismiss the City from the lawsuit with prejudice.

## II. Factual Background

### A. The City's Bankruptcy Case

3. On July 18, 2013 ("Petition Date"), the City filed this chapter 9 case.

4. On October 10, 2013, the City filed its Motion Pursuant to Section 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), for Entry of an Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof ("Bar Date Motion") [Doc. No. 1146], which was approved by order of this Court on November 21, 2013 ("Bar Date Order"). [Doc. No. 1782].

5. The Bar Date Order established February 21, 2014, as the deadline for filing claims against the City. Paragraph 6 of the Bar Date Order states that the

> following entities must file a proof of claim on or before the Bar Date…any entity: (i) whose prepetition claim against the City is not listed in the List of Claims or is listed as disputed, contingent or unliquidated; and (ii) that desires to share in any distribution in this bankruptcy case and/or otherwise participate in the proceedings in this bankruptcy case associated with the confirmation of any chapter 9 plan of adjustment proposed by the City…

Bar Date Order ¶ 6.

6. Paragraph 22 of the Bar Date Order also provides that:

> Pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(2), any entity that is required to file a proof of claim in

- 2 -

this case pursuant to the Bankruptcy Code, the Bankruptcy Rules or this Order with respect to a particular claim against the City, but that fails properly to do so by the applicable Bar Date, shall be forever barred, estopped and enjoined from: (a) asserting any claim against the City or property of the City that (i) is in an amount that exceeds the amount, if any, that is identified in the List of Claims on behalf of such entity as undisputed, noncontingent and liquidated or (ii) is of a different nature or a different classification or priority than any Scheduled Claim identified in the List of Claims on behalf of such entity (any such claim under subparagraph (a) of this paragraph being referred to herein as an "Unscheduled Claim"); (b) voting upon, or receiving distributions under any Chapter 9 Plan in this case in respect of an Unscheduled Claim; or (c) with respect to any 503(b)(9) Claim or administrative priority claim component of any Rejection Damages Claim, asserting any such priority claim against the City or property of the City.

7.     Nixon did not file a proof of claim.

8.     On October 22, 2014, the City filed its *Eighth Amended Plan of the Adjustment of Debts of the City of Detroit* ("Plan"), which this Court confirmed on November 12, 2014.  [Doc. Nos. 8045 & 8272].

9.     The discharge provision in the Plan provides:

Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date.  Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date, discharge the City from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (ii) the Holder of a Claim based on such debt has accepted the Plan.

- 3 -

Plan, Art. III.D.4, at p.50.

10. Further, the Plan injunction set forth in Article III.D.5 provides in pertinent part:

> **Injunction**
>
> **On the Effective Date, except as otherwise provided herein or in the Confirmation Order,**
>
> **a. all Entities that have been, are or may be holders of Claims against the City…shall be permanently enjoined from taking any of the following actions against or affecting the City or its property…**
>
> **1. commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affect the City of its property…**
>
> **5. proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and**
>
> **6. taking any actions to interfere with the implementation or consummation of the Plan.**

Plan, Article III.D.5, at pp.50-51 (emphasis added).

11. The Court also retained jurisdiction to enforce the Plan injunction and to resolve any suits that may arise in connection with the consummation, interpretation or enforcement of the Plan. Plan, Art. VII. F, G, I, at p.72.

- 4 -

**B.** **Nixon's Lawsuit Against the City**

12. On June 28, 2023, Nixon filed a complaint ("<u>Complaint</u>") against the City and five named police officers and other unidentified employees of the Detroit Police Department ("<u>Defendant Officers</u>") in their individual capacity,[1] in the United States District Court for the Eastern District of Michigan ("<u>District Court</u>"), commencing case number 23-11547 ("<u>Lawsuit</u>"). Complaint ¶¶ 18-19. A copy of the Complaint is attached as **Exhibit 6A** and the docket in the Federal Court Lawsuit is attached as **Exhibit 6B**.

13. In the Complaint, Nixon alleges that very late at night on May 19, 2005, a fire broke out at 19428 Charleston Street, Detroit and that two children of the five children living in the house perished in the fire. Complaint ¶¶ 20-21.

14. Nixon asserts that "he had absolutely nothing to do with this crime. At the time of the fire, Mr. Nixon was at home with Latoya Caulford, his then-girlfriend and the mother of his child, and some of Ms. Caulford's family members." Complaint ¶ 24.

---

[1] The Complaint does not appear to assert claims against the Defendant Officers in their official capacity. However, the City requests that this Court enter an order requiring the dismissal of any claims against the Defendant Officers in their official capacity as Nixon does not clearly state whether the claims against the Defendant Officers are limited to their individual capacity.

- 5 -

15. Nixon asserts that notwithstanding his "absolute innocence", he was arrested shortly after the fire based on a fabricated story from one of the children, Brandon Vaughn, who resided at 19428 Charleston Street. Complaint ¶¶ 28-36.

16. Nixon further asserts that the Defendants coerced an informant who resided in the same cellblock as Nixon to falsely state that Nixon had confessed to the crime. Complaint ¶¶ 49-57.

17. Nixon asserts that based on Vaughn's "coached testimony" and the "informant's fabricated testimony" he was convicted of arson, murder and attempted murder. At his sentencing, Nixon stated: "I would just like you to know that you're about to sentence an innocent man to prison." Complaint ¶¶ 59-60.

18. Nixon was convicted on September 21, 2005. Complaint ¶ 1.

19. Nixon further asserts that "Never giving up hope on proving his innocence, Plaintiff continued to pursue appeals and other means to secure his freedom." Complaint ¶¶ 6, 62.

20. In the lawsuit, Nixon seeks damages "for the period from May 20, 2005, the date he was falsely arrested and imprisoned, through each and every year to the present and into the future." Complaint ¶ 88.

### C. Nixon Unsuccessfully Appeals His Conviction

21. Nixon unsuccessfully appealed his conviction. *People v. Nixon*, No. 266033, 2007 WL 624704 (Mich. Ct. App. Mar. 1, 2007). *See also* **Exhibit 6C**,

- 6 -

Petition for Habeas Corpus ("Petition"), Appendix Item #1, PageID. 69. In his appeal, Nixon asserted that he was entitled to a new trial on the grounds of newly discovered evidence. *People v. Nixon*, No. 266033, 2007 WL 624704 at *1 (Mich. Ct. App. Mar. 1, 2007). Specifically, Nixon claimed that his codefendant and girlfriend, Latoya Caulford, who was acquitted of all charges in a separate jury trial, came forward after his trial and stated that Nixon did not commit the crimes because, when they occurred, he was with her in her room at a different home. *Id.* The court of appeals found that this was not newly discovered evidence and thus Nixon was not entitled to a new trial. *Id.*

22.     On appeal, Nixon also argued that the trial court abused its discretion when it allowed the prosecutor to play portions of his telephone calls from jail. *Id.* The court of appeals rejected this argument and found that the telephone calls were relevant. *Id*. at *2.

23.     Nixon further argued that the trial court erred when it admitted Brandon Vaughn's statement that identified Nixon as the person who started the fire. *Id.* at *3. The court of appeals found that the statements were not hearsay, but even if they were, they would be admissible as excited utterances. *Id.*

24.     Finally, Nixon asserted that he was denied effective assistance of counsel. The court of appeals also rejected this argument and stated that Nixon "clearly was not deprived of a fair trial." *Id.* at *4.

- 7 -

25. The court of appeals affirmed the trial court on March 1, 2007. *Id.*

26. The Michigan Supreme Court denied leave to appeal on September 10, 2007, and denied reconsideration on November 29, 2007. Petition, PageID. 3-4, 75-76, Appendix Items ## 2-3.

27. Nixon also filed a motion for relief from judgment in the trial court on December 8, 2008. *Id.* The trial court considered the merits of all the issues and denied relief by Opinion and Order entered July 17, 2009. Petition, PageID. 3-4, 77, Appendix Item #4.

28. Application for leave to appeal was filed and denied by the Michigan Court of Appeals on November 23, 2009, in docket no. 293476. Petition, PageID. 3-4, 79, Appendix Item #5. Application for leave to appeal was also denied by the Michigan Supreme Court in docket no. 140403, on September 9, 2010. Petition, PageID. 3-4, 80, Appendix Item #6.

### D. Nixon's Application for Writ of Habeas Corpus is Denied

29. On November 23, 2010, Nixon filed the Petition. *See* **Exhibit 6C**. The Petition was 102 pages, cited over 85 cases and contained 13 exhibits. *Id.*

30. In the Petition, Nixon asserted that there that was newly discovered evidence of actual innocence, that his counsel was ineffective, that his conviction was based on perjured evidence, that he was denied a fair trial due to prosecutorial misconduct, and that his appellate counsel was constitutionally ineffective.

- 8 -

31.     With respect to actual innocence, Nixon asserted that he had newly discovered evidence of actual innocence, which included evidence that the informant "fabricated testimony for the express purpose of obtaining early release so he could be home for his daughter's graduation." Petition, PageID. 5.

32.     Nixon also argued ineffective assistance of counsel. Petition, PageID. 5-8.  He asserted that his counsel was ineffective because his counsel did not obtain the results from a polygraph test he allegedly passed, failed to properly prepare witnesses, and failed to elicit testimony from witnesses which would have proven his innocence. *Id.*

33.     Nixon submitted a six-page affidavit in support of the Petition. Petition, PageID. 81, Appendix Item #7.  In the affidavit, Nixon again asserted that he was innocent.  PageID. 82, paragraph 7. He also filed the alleged polygraph results as appendix item 8.  Petition, PageID. 87-88.  The polygrapher concluded that Nixon was being truthful when he denied committing the crime.  *Id.* He further submitted affidavits and polygraph results from his girlfriend wherein she claimed that Nixon was with her when the crime was committed.  Petition, PageID. 89 - 94, Appendix Items ## 9-10.

34.     On September 28, 2012, the Magistrate Judge issued a 37-page report and recommendation, which recommended that the District Court deny the Petition. **Exhibit 6D**, Report and Recommendation.

40945379.5/022765.00213

35.     On October 11, 2012, Nixon filed his objections to the Report and Recommendation ("Objection").  **Exhibit 6E**, Objection.  In the Objection, Nixon again advanced several objections based on his claim of actual innocence. Objection, PageID. 1804-1807.  Nixon advanced several other objections, including that he passed a polygraph test.  Objection, PageID. 1807-1815.

36.     On November 12, 2012, the United States District Court for the Eastern District of Michigan issued a memorandum and order overruling Nixon's objections to the Report and Recommendation and denying Nixon's application for a writ of habeas corpus. *Nixon v. McQuiggin*, No. 10-14652, 2012 WL 5471128, at *1 (E.D. Mich. Nov. 9, 2012).

## III.    Argument

37.     Nixon violated the Plan's injunction and discharge provisions when he filed the Lawsuit to assert pre-petition claims and otherwise seek relief against the City.  And, he continues to violate them by persisting in prosecuting the Lawsuit.

38.     Under the "fair contemplation" test, Nixon's claim arose before the City's bankruptcy filing because, prior to the City's filing, Nixon "could have ascertained through the exercise of reasonable due diligence that he had a claim" against the City.  *In re City of Detroit, Michigan*, 548 B.R. 748, 763 (Bankr. E.D. Mich. 2016) (internal quotation marks and citation omitted).  Indeed, for years before the City filed for bankruptcy, Nixon had been arguing that he was innocent.

- 10 -

39.     For bankruptcy purposes, Courts agree that a claim for a wrongful conviction does not accrue when the conviction is vacated.  Instead, it arises when the claim first enters into the plaintiff's fair contemplation.  In one example, a court noted,

> It must be said here that all Sanford's claims against the City were within his "fair contemplation" before the City declared bankruptcy. He certainly contemplated the factual bases underlying the claims raised in the complaint, since he attempted repeatedly to argue actual innocence before the state courts since at least 2008, insisting that his confession was falsely obtained, concocted, and coerced.  Sanford correctly points out that he could not have sued the City until his convictions were set aside, which did not happen until after the bankruptcy.  But the courts that have considered the question uniformly have concluded that claims based on prepetition malicious prosecutions were barred, notwithstanding that the plaintiff could not file suit on his claims until his criminal conviction was overturned.

*Sanford v. City of Detroit*, No. 17-13062, 2018 WL 6331342, at *5 (E.D. Mich. Dec. 4, 2018); *see also Monson v. City of Detroit*, No. 18-10638, 2019 WL 1057306 at *8-9 (E.D. Mich. Mar. 6, 2019); *Burton v. Sanders*, No. 20-11948, 2021 WL 168543, at *4-6 (E.D. Mich. Jan. 1, 2021).

40.     The claim comes within the plaintiff's fair contemplation when the underlying events occur, such as the improper arrest, but certainly no later than the date of the trial at which the allegedly improper conviction occurs.

41.     This issue has arisen repeatedly in the City's bankruptcy case.  Doc. Nos. 11159, 13000 (prior motions to enforce).  In each instance, the Court recognized that, because the events that gave rise to the asserted claim occurred

- 11 -

prepetition, the claimant was able to (or should have been able to) contemplate that he had potential claims against the City and, accordingly, file a proof of claim in the City's bankruptcy case if he wished to participate in the case and recover on the claim. *See* Doc. Nos. 11296, 13025 (granting motions referenced above).

42.     The instant situation is no different.

43.     Nixon's lawsuit is based on claims stemming from actions that culminated in a conviction in 2005. Complaint ¶1.

44.     Nixon has proclaimed his innocence since 2005, including at trial, in several lengthy appeals and a petition for habeas corpus, all of which were denied. Each of these proclamations of innocence and events occurred prior to the City's bankruptcy filing.

45.     Thus, as in each of the prior cases before this Court, Nixon should have filed a proof of claim in the City's bankruptcy case if he wanted to assert a claim against the City. He did not. He is now barred from asserting any claim against the City or property of the City under the Bar Date Order and Plan.

46.     The Plan's discharge provision also states that the "rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date." Plan Art. III.D.4, at p.50.

- 12 -

47.     Consequently, Nixon does not have a right to a distribution or payment under the Plan on account of the claims asserted in the Lawsuit.  Plan, Art. III.D.5, at p.50 ("[A]ll entities that have been, are or may be holders of Claims against the City . . . shall be permanently enjoined from . . . proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan."). *See also* Plan, Art. I.A.19, at p.3; Art. I.A.134, at p.11; Art. VI.A.1, at p.67 ("Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim.").  Any claims that Nixon may have had were discharged, and the Plan enjoins Nixon from pursuing them.  The Bar Date Order also forever barred, estopped, and enjoined Nixon from pursuing the claims asserted in the Lawsuits.

48.     Even if Nixon could somehow seek relief on his claims against the City or its property (which he cannot), the proper and only forum for doing so would be in this Bankruptcy Court.  There is no set of circumstances under which Nixon is, or would have been, permitted to commence and prosecute the Lawsuit against the City or its property.

## IV.    Conclusion

49.     The City thus respectfully requests that this Court enter an order, in substantially the same form as the one attached as **Exhibit 1**: (a) directing Nixon to dismiss, or cause to be dismissed, with prejudice the City and the Defendant Officers

- 13 -

in their official capacity from the Lawsuit; (b) permanently barring, estopping and enjoining Nixon from asserting the claims alleged in, or claims related to, the Lawsuit against the City or property of the City; and (c) prohibiting Nixon from sharing in any distribution in this bankruptcy case. The City sought, but did not obtain, concurrence to the relief requested in the Motion.

Dated: August 24, 2023

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com
Attorneys for the City of Detroit

40945379.5/022765.00213

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## EXHIBIT LIST

Exhibit 1          Proposed Order

Exhibit 2          Notice of Opportunity to Object

Exhibit 3          None

Exhibit 4          Certificate of Service

Exhibit 5          None

Exhibit 6A         Complaint

Exhibit 6B         Federal Court Lawsuit Docket

Exhibit 6C         Petition for Habeas Corpus

Exhibit 6D         Report and Recommendation

Exhibit 6E         Objections to the Report and Recommendation

- 15 -

**EXHIBIT 1 – PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**ORDER GRANTING CITY OF DETROIT'S MOTION FOR THE**
**ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND**
**CONFIRMATION ORDER AGAINST KENNETH NIXON**

This matter, having come before the Court on the *City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Kenneth Nixon* ("Motion"),[1] upon proper notice and a hearing, the Court being fully advised in the premises, and there being good cause to grant the relief requested,

**THE COURT ORDERS THAT:**

1.      The Motion is granted.

2.      Within five days of the entry of this Order, Kenneth Nixon shall dismiss, or cause to be dismissed, with prejudice the City of Detroit and the Defendant Officers in their official capacity from the case captioned as *Kenneth*

---

[1] Capitalized terms used but not otherwise defined in this Order shall have the meanings given to them in the Motion.

*Nixon v. City of Detroit, et al.,* filed in the United States District Court for the Eastern District of Michigan and assigned case number 23-11547 ("<u>Lawsuit</u>").

3.      Kenneth Nixon is permanently barred, estopped and enjoined from asserting claims asserted in the Lawsuit or claims arising from or related to the Lawsuit against the City of Detroit or property of the City of Detroit.

4.      Kenneth Nixon is prohibited from sharing in any distribution in this bankruptcy case.

5.      The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

## EXHIBIT 2 – NOTICE

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

### NOTICE OF OPPORTUNITY TO OBJECT TO CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST KENNETH NIXON

The City of Detroit has filed papers with the Court requesting the entry of an order enforcing the bar date order and confirmation order against Kenneth Nixon.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney.**

If you do not want the Court to enter an Order granting the *City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Kenneth Nixon,* within 14 days, you or your attorney must:

1. File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above. You must also mail a copy to:

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
     Marc N. Swanson (P71149)
     150 West Jefferson, Suite 2500
     Detroit, Michigan 48226
     Telephone: (313) 496-7591
     Facsimile: (313) 496-8451
     swansonm@millercanfield.com

Dated: August 24, 2023

## EXHIBIT 3 – NONE

## EXHIBIT 4 – CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 24, 2023, he served a copy of the foregoing **CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST KENNETH NIXON** upon counsel for Kenneth Nixon, in the manner described below:

Via first class mail and email:

Jon Loevy
Loevy & Loevy
311 N. Aberdeen St., 3rd FL
Chicago, IL 60607
Email: jon@loevy.com

Isabella Aguilar
Loevy & Loevy
311 N. Aberdeen St.
Chicago, IL 60607
Email: aguilar@loevy.com

Gayle Horn
Loevy & Loevy
ATTN Lauren Lobata
311 North Aberdeen Street
Ste 3rd Floor
Chicago, IL 60607
Email: gayle@loevy.com

Julie H. Hurwitz
Goodman and Hurwitz, P.C.
1394 E. Jefferson Avenue
Detroit, MI 48207
Email:
jhurwitz@goodmanhurwitz.com

Kathryn Bruner James
Goodman and Hurwitz, P.C.
1394 E. Jefferson Avenue
Detroit, MI 48207
Email: kjames@goodmanhurwitz.com


DATED:  August 24, 2023

                              By: /s/ Marc N. Swanson
                                    Marc N. Swanson (P71149)
                                    150 West Jefferson, Suite 2500
                                    Detroit, Michigan 48226
                                    Telephone: (313) 496-7591
                                    Facsimile: (313) 496-8451
                                    swansonm@millercanfield.com

**EXHIBIT 5 – NONE**

40945379.5/022765.00213