## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST MARK CRAIGHEAD

The City of Detroit, Michigan ("City") by its undersigned counsel, Miller, Canfield, Paddock and Stone, PLC, files this *Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Mark Craighead* ("Motion"). In support of this Motion, the City respectfully states as follows:

## I.      Introduction

1.      On August 31, 2023, Mark Craighead ("Craighead") filed a lawsuit against the City seeking monetary damages on account of alleged events which occurred in 2002, more than ten years before the City filed for bankruptcy. As a result, the filing of this lawsuit violates the discharge and injunction provisions in the City's confirmed Plan and the Bar Date Order (each as defined below).

2.      The City informed Craighead of these violations and asked him to voluntarily dismiss the City from the lawsuit, but to no avail. As a result, the City is left with no choice but to seek an order barring and permanently enjoining Craighead from asserting and prosecuting the claims described in the federal court action

- 1 -

against the City, or property of the City, and requiring Craighead to dismiss the City from the lawsuit with prejudice.

## II.     Factual Background

### A.     The City's Bankruptcy Case

3.      On July 18, 2013 ("Petition Date"), the City filed this chapter 9 case.

4.      On October 10, 2013, the City filed its Motion Pursuant to Sections 105, 501, and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), for Entry of an Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof ("Bar Date Motion") [Doc. No. 1146], which was approved by order of this Court on November 21, 2013 ("Bar Date Order"). [Doc. No. 1782].

5.      The Bar Date Order established February 21, 2014, as the deadline for filing claims against the City.  Paragraph 6 of the Bar Date Order states that the

> following entities must file a proof of claim on or before the Bar Date…any entity: (i) whose prepetition claim against the City is not listed in the List of Claims or is listed as disputed, contingent or unliquidated; and (ii) that desires to share in any distribution in this bankruptcy case and/or otherwise participate in the proceedings in this bankruptcy case associated with the confirmation of any chapter 9 plan of adjustment proposed by the City…

Bar Date Order ¶ 6.

6.      Paragraph 22 of the Bar Date Order also provides that:

- 2 -

Pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(2), any entity that is required to file a proof of claim in this case pursuant to the Bankruptcy Code, the Bankruptcy Rules or this Order with respect to a particular claim against the City, but that fails properly to do so by the applicable Bar Date, shall be forever barred, estopped and enjoined from: (a) asserting any claim against the City or property of the City that (i) is in an amount that exceeds the amount, if any, that is identified in the List of Claims on behalf of such entity as undisputed, noncontingent and liquidated or (ii) is of a different nature or a different classification or priority than any Scheduled Claim identified in the List of Claims on behalf of such entity (any such claim under subparagraph (a) of this paragraph being referred to herein as an "<u>Unscheduled Claim</u>"); (b) voting upon, or receiving distributions under any Chapter 9 Plan in this case in respect of an Unscheduled Claim; or (c) with respect to any 503(b)(9) Claim or administrative priority claim component of any Rejection Damages Claim, asserting any such priority claim against the City or property of the City.

7.   Craighead did not file a proof of claim.

8.   On October 22, 2014, the City filed its *Eighth Amended Plan of the Adjustment of Debts of the City of Detroit* ("<u>Plan</u>"), which this Court confirmed on November 12, 2014.  [Doc. Nos. 8045 & 8272].

9.   The discharge provision in the Plan provides:

Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date.  Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date, discharge the

41288057.5/022765.00213

13-53846-tjt   Doc 13803   Filed 10/27/23   Entered 10/27/23 14:32:28   Page 3 of 34

City from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (ii) the Holder of a Claim based on such debt has accepted the Plan.

Plan, Art. III.D.4, at p.50.

10. Further, the Plan injunction set forth in Article III.D.5 provides in pertinent part:

> **Injunction**
>
> **On the Effective Date, except as otherwise provided herein or in the Confirmation Order,**
>
> **a.  all Entities that have been, are or may be holders of Claims against the City…shall be permanently enjoined from taking any of the following actions against or affecting the City or its property…**
>
> **1.  commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affect the City of its property…**
>
> **5.  proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and**
>
> **6.  taking any actions to interfere with the implementation or consummation of the Plan.**

Plan, Article III.D.5, at pp.50-51 (emphasis supplied).

- 4 -

11.    The Court also retained jurisdiction to enforce the Plan injunction and to resolve any suits that may arise in connection with the consummation, interpretation, or enforcement of the Plan.  Plan, Art. VII. F, G, I, at p.72.

**B.    Craighead's Lawsuit Against the City**

12.    On August 31, 2023, Craighead filed a complaint ("Complaint") against the City and four named police officers and other unidentified employees of the Detroit Police Department ("Defendant Officers") in their individual capacity, in the United States District Court for the Eastern District of Michigan ("District Court"), commencing case number 23-12243 ("Lawsuit").  Complaint ¶¶ 12-13, PageID.4.  A copy of the Complaint is attached as **Exhibit 6A** and the docket in the Federal Court Lawsuit is attached as **Exhibit 6B.**

13.    In the Complaint, Craighead alleges that on June 27, 1997, Chole Pruett ("Pruett") had been shot four times in the torso and his body discovered in an apartment. Complaint ¶ 14, PageID.5. Craighead further alleges that on the same day, at 2:35 a.m., a witness reported that a truck was on fire in Redford Township and that the truck belonged to Pruett. Complaint ¶¶ 14-15, PageID.5.

14.    Craighead asserts that he was working an overnight shift at Sam's Club Warehouse at the time of the murder and that he was interviewed in his home by Detroit police investigator Ronald Tate ("Investigator Tate") on August 29, 1997,

and cleared of having any responsibility for the crime. Complaint ¶¶18-19, PageID.5.

15.    Craighead states that the case went unsolved and on March 18, 1999, Investigator Tate again questioned Craighead in his home and cleared him from being a suspect a second time. Complaint ¶ 21, PageID.6.

16.    The Complaint states that in June 2000, a new team of investigators took on the case and, at that time, Lieutenant Jackson and Investigator Fisher came to Craighead's home and told him that he needed to come to the police station to answer questions about Pruett's death. Complaint ¶¶ 22-26, PageID.6.

17.    Craighead states that even though he was tired and hungry and asked if he could come in the next day, the officers gave him no choice but to accompany them immediately. Complaint ¶¶ 27-31, PageID.6 – PageID.7.

18.    Further, the Complaint alleges that Craighead was questioned without having been informed of his Miranda rights. Complaint ¶¶ 48-49, PageID.9.

19.    Craighead asserts that even though he was not under arrest, he was not allowed to leave or make any phone calls. Complaint ¶¶ 56-59, PageID.10.

20.    Craighead states that Defendant Officer Simon told him that he would not be allowed to leave until he took a polygraph test and that he would be released if took the test. Complaint ¶¶ 70-72, PageID.12.

- 6 -

21.     Craighead states that he agreed to take the polygraph test so he could go home and when the examination ended, he was falsely told that he had failed the test by polygraph technician, Defendant Sims. Complaint ¶¶ 75, 82, PageID.12-PageID.13.

22.     Craighead alleges that the actions of Defendants Fisher, Jackson, Simon, and Sims to falsely arrest him, deny him his right to counsel, wrongly incarcerate him, threaten him with life imprisonment, and withhold medical treatment, among other tactics, were designed to overbear his will. Complaint ¶ 95, PageID.15.

23.     Craighead further alleges that Defendant Simon suggested to Craighead that he had accidentally killed Pruett during an argument that turned into a struggle for a gun and the gun went off. Complaint ¶ 101, PageID.16. Defendant Simon allegedly told Craighead that if he told her that happened, that it could be considered self-defense, and she could help him by getting the charges reduced to avoid facing a life sentence. *Id*. She also allegedly told him that if he did so, he could bond out and the fight the charges outside of jail. *Id*.

24.     Further, Craighead states that after having no sleep for two days, being hungry, and having had his pleas for a lawyer and to leave ignored, he succumbed to the Defendants' efforts to coerce him to give a false confession, hoping he would

41288057.5/022765.00213

be released to resolve the situation out of custody. Complaint ¶ 103, PageID.16. Instead, he was charged with murder.  Complaint ¶¶ 103-104, PageID.16.

25.    Craighead alleges that Defendants caused him to be charged with murder despite knowing there was no evidence to support the charge.  Complaint ¶ 105, PageID.17.  Craighead asserts that his confession was demonstrably false. Complaint ¶ 106, PageID.17.  He further asserts that the forensic evidence from the crime scene showed that Pruett was shot multiple times in an execution style shooting, rather than a single gunshot and that the victim was lying prone on the ground when some of the shots were fired. Complaint ¶ 106, PageID.17.

26.    Craighead states that prior to trial he moved to "suppress the police statement that Mr. Craighead adopted after being arrested at his home three years after the crime had occurred and being held incommunicado, despite his brother's presence at the police station." **Exhibit 6E**, Craighead 2002 Appeal Brief (as defined below), p.2. The trial court, however, denied Craighead's request. **Exhibit 6E**, Craighead 2002 Appeal Brief, p.7.

27.    Craighead's trial began in June 2002. **Exhibit 6C**, Docket of criminal trial, case number 00-007900, p.3.

28.    Craighead asserts that at his trial in 2002 his defense "was that the statement extracted by Barbara Simon was false and that he was at work at the Sam's

Club in Farmington Hills the night Mr. Pruett was killed in Detroit." **Exhibit 6G**, Craighead 2010 Appeal Application, p.3.

29.     Craighead asserts that he was convicted based on fabricated evidence and that his false confession was used against him. Complaint ¶¶ 126-127, PageID.21.

30.     Craighead was found guilty in June 2002, and sentenced in August 2002.  **Exhibit 6G**, Craighead 2010 Appeal Application, p.1.

31.     Craighead asserts that he spent over seven years incarcerated for manslaughter, but he never gave up hope that he would someday be exonerated. Complaint ¶¶ 129-130, PageID.21.

## C.     Craighead's First Appeal

32.     After he was convicted, Craighead filed a motion for "new trial raising the issues of new evidence and misleading evidence with regard to the initial ruling on the Motion to Suppress Mr. Craighead's statement." **Exhibit 6E**, Craighead 2002 Appeal Brief (as defined below), p.13; *see also* **Exhibit 6C**, docket of criminal trial, case number 00-007900, p. 4. The motion was denied on May 17, 2005. *Id.* Following this ruling, Craighead filed a motion for reconsideration on June 13, 2005, which was also denied on June 27, 2005. *Id.*

33.     On September 15, 2002, Craighead filed his first appeal, *People of the State of Michigan v. Mark T. Craighead*, No. 243856. *See* **Exhibit 6D**, 2002 Appeal

41288057.5/022765.00213

Docket. Craighead's brief on appeal is attached as **Exhibit 6E** ("Craighead 2002 Appeal Brief").

34.     Craighead requested that the Court of Appeals vacate his convictions or, in the alternative, reverse the convictions and remand for a "fair trial." Craighead 2002 Appeal Brief, p. 13.

35.     In the Craighead 2002 Appeal Brief, Craighead asserted that:

> Mr. Craighead did not kill Pruitt [sic] and did not know who had. In 1997, he was working the night shift at Sam's Club on June 26th and June 27th and the building was locked during the shift, as it always was, so he could not have left undetected. He did not tell the police that he shot Pruitt [sic] and only signed the statement because his interrogator, Barbara Simon, told him he would be in prison for the rest of his life if he did not sign it. After being arrested, held overnight and not being allowed contact with anyone, he felt he had no choice but to comply with the police.

Craighead 2002 Appeal Brief, p.2; *see also* p.12 ("Mr. Craighead did not kill Pruitt [sic] and did not know who had killed him.").

36.     Craighead further emphasized that "[n]othing in the statement that Simon read was true. He signed the statement because he was broken down and Simon told him he would otherwise be there for the rest of his life." Craighead 2002 Appeal Brief, p.12.

37.     On appeal, Craighead also argued that his federal and state constitutional rights against unreasonable searches and seizures were violated when

he was arrested without a warrant or a showing of probable cause, and that his June 21, 2000, statement to the police was obtained as a result of the illegal arrest should have been suppressed. *People v. Craighead*, No. 243856, 2005 WL 3500831, at *2 (Mich. Ct. App. Dec. 22, 2005); Craighead 2002 Appeal Brief, pp. 14-22.

38.     Craighead asserted claims against the City and its police officers in the Craighead 2002 Appeal Brief:

> Unfortunately, the police conduct in this case was all too familiar and has been found to be blatantly illegal. This is borne out by two particular documents. The first is the June 5, 2002 letter to Corporation Counsel Ruth Carter from Steven H. Rosenbaum, Chief Special Litigation Section of the United States Attorney's Office. In the June 5th letter, Attorney Rosenbaum indicated that the Detroit Police Department:
>
> > **"defines an arrest as 'a taking of an individual into custody for further investigation,** booking or prosecution', **this policy implicitly permits the arrest of an individual with less than probable cause as a means to facilitate an investigation.** Indeed, some former DPD employees informed us that it was acceptable practice to arrest suspects without probable cause and then continue to investigate the case to develop probable cause prior to arraignment. **Gathering additional evidence after an arrest in order to establish probable cause for that arrest is unconstitutional. County of Riverside v McLaughlin,** 500 U.S. 44, 56 (1991)" (emphasis added) (Letter attached as Appendix D)

41288057.5/022765.00213

The second location for an explanation is the Consent Judgment that Judge Julian Abele Cook entered, which required, among many other relevant requirements, that officers must be instructed "that the `**possibility' that an individual committed a crime does not rise to the level of probable cause.**" (emphasis added) The Consent Judgment further instructed that the officers be given:

> "examples of scenarios faced by DPD officers and interactive exercises that illustrate proper police-community interactions, including scenarios which distinguish an investigatory stop from an arrest by the scope and duration of the police interaction; **between probable cause, reasonable suspicion and mere speculation; and voluntary consent from mere acquiescence to police authority.**" (emphasis added) (Consent Decree attached as Appendix E)

The facts of this case bear out all too well the problems that were infecting the Detroit Police Department at the time of this investigation and which ultimately led to entry of the Consent Judgment. Officers Fisher and Jackson engaged in a textbook list of illegal tactics in order to extract an incriminating statement from Mr. Craighead because they believed, i.e., speculated that he was responsible for the shooting.

Craighead 2002 Appeal Brief, pp.15-16 (emphasis supplied).

39. Craighead asserted additional claims against the City later in his brief:

> The trial court further failed to take into account the circumstances surrounding the arrest. Officer Jackson admitted that the Detroit Police do not always obtain a warrant even when they have probable cause for an arrest. Jackson's statement underlies the problems besieging the Detroit police department and the citizens of the City whose rights are being trampled every day by a cavalier

- 12 -

attitude toward the Constitution.

Craighead 2002 Appeal Brief, p. 20.

40.     The appeals court disagreed with Craighead's arguments. *People v. Craighead*, No. 243856, 2005 WL 3500831, at *2 (Mich. Ct. App. Dec. 22, 2005). Further, the appeals court found that given the circumstances, the trial court did not clearly err when it found that defendant knowingly and voluntarily waived his Miranda rights and affirmed the lower court in its opinion dated December 22, 2005. *Id.*

41.     Craighead sought leave to appeal to the Michigan Supreme Court, but leave was denied on May 2, 2007, in docket no. 130450. *People v. Craighead*, 477 Mich. 1124, 730 N.W.2d 245, 246 (2007)

**D.     Craighead Retains the Michigan Innocence Clinic**

42.     In December 2009, Craighead, represented by the Michigan Innocence Clinic, filed his initial motion for relief from judgment, asserting that he was entitled to relief from judgment based upon newly discovered evidence, which consisted of telephone records from Sam's Club in Farmington Hills in June 1997 that purportedly established that he made four telephone calls from inside of the locked store on the night of Pruett's death such that he could not have killed Pruett. *People v. Craighead*, No. 356393, 2021 WL 5027978, at *1 (Mich. Ct. App. Oct. 28, 2021), *appeal denied,* 509 Mich. 974, 972 N.W.2d 845 (2022); **Exhibit 6G**, Craighead 2010

41288057.5/022765.00213

Appeal Application, p.11. After an evidentiary hearing, the trial court denied Craighead's motion, reasoning that defendant failed to present credible evidence that he was the one who made telephone calls from inside the locked store on the night of Pruett's death such that there was no reasonable probability that the evidence would have affected the outcome of defendant's jury trial. *Id.* The trial court's ruling is set forth on pp.6-8 of the Plaintiff-Appellee's Brief in Opposition to Defendant's Delayed Application for Leave to Appeal, **Exhibit 6H**.

### E. Craighead's Second Appeal

43.     On December 6, 2010, Craighead filed another appeal. *People of the State of Michigan v. Mark T. Craighead*, No. 301465. *See* **Exhibit 6F,** 2010 Appeal Docket. Craighead's Delayed Application for Leave to Appeal is attached as **Exhibit 6G** ("Craighead 2010 Appeal Application.").

44.     In the 2010 appeal, Craighead was represented by the University of Michigan Innocence Claim and attorney Bridget McCormack, who later became the Chief Justice of the Michigan Supreme Court. *See* Craighead 2010 Appeal Application, cover page.

45.     In the 2010 appeal, Craighead asserted that "[i]n light of the compelling newly discovered evidence of Mr. Craighead's innocence, and the near certainty that this evidence would have led to a different outcome at trial, Mr. Craighead asks this

41288057.5/022765.00213

Court grant this application for leave to appeal . . . and order a new trial in this case." Craighead 2010 Appeal Application, p.vii.

46. Craighead plainly alleges that he "served more than seven years in prison for a crime that he did not commit." Craighead 2010 Appeal Application, p.1.

47. The alleged newly discovered evidence was "phone records newly discovered by the Michigan Innocence Clinic" which allegedly "establish that Mr. Craighead made a telephone call from Sam's Club to his friend . . . just eight minutes before Mr. Pruett's truck was discovered by police, engulfed in flames, in a vacant lot behind an elementary school in Redford Township." Craighead 2010 Appeal Application, pp.1-2; *see also* Craighead 2010 Appeal Application, pp.4, 7-11.

48. Based on the new evidence, Craighead asked the court to reverse the trial court's denial of a motion for relief from judgment and order a new trial where the phone records could be presented to a jury. **Exhibit 6I**, Reply Brief in Support of 2010 Application for Leave to Appeal, pp.8-9. Leave to appeal was denied by the appeals court on November 22, 2011, based on Craighead's failure to meet the burden for establishing an entitlement to relief under court rules. *See* **Exhibit 6J**, November 22, 2011 Court of Appeals Order.

49. Craighead sought appeal to the Michigan Supreme Court, but on October 15, 2012, the Supreme Court agreed with the court of appeals and denied his application for leave to appeal for the same reason. Craighead then further sought

- 15 -

reconsideration by the Supreme Court and reconsideration was denied on January 25, 2013, in docket no. 144415. **Exhibit 6K,** October 5, 2012 and January 25, 2013 Supreme Court Orders.

### F.     Craighead's Third Appeal

50.     On February 24, 2020, Craighead filed another motion for relief from judgment in the trial court which was ultimately granted on February 4, 2021. *See People v. Craighead*, No. 356393, 2021 WL 5027978, at *1 (Mich. Ct. App. Oct. 28, 2021), *appeal denied*, 509 Mich. 974, 972 N.W.2d 845 (2022).

51.     This was the third appeal arising out of the shooting death of Chole Pruett on or about June 27, 1997.

52.     With the continuing assistance of the Michigan Innocence Clinic, on June 1, 2023, Craighead asserts he was awarded a Certificate of Innocence. Complaint ¶¶ 131-132, PageID.21.

### G.     Craighead's Claims Against the City

53.     The Complaint contains 10 counts.

54.     Count I asserts a claim under 42 U.S.C. § 1983 for coerced confession in violation of the Fifth Amendment. In this count, Craighead asserts, among other things, that "Defendant City of Detroit had notice of a widespread practice by officers and agents of the Detroit Police Department under which individuals like Plaintiff who were suspected of criminal activity were routinely coerced against their

- 16 -

will to implicate themselves in crimes of which they were innocent." Complaint, ¶¶ 138-151, PageID.23 – PageID.26.

55.    Count II asserts a similar claim under 42 U.S.C. § 1983 for coerced confession in violation of Fourteenth Amendment. Complaint, ¶¶ 152- 157, PageID.27 – PageID.28.

56.    Count III asserts a claim under 42 U.S.C. § 1983 for Fourteenth Amendment Due Process. In this count, Craighead asserts that as a direct and proximate result of Defendant Officers of false inculpatory evidence, acting pursuant to the customs, policies and/or practices of the City, the Defendant Officers violated Craighead's due process rights. Complaint, ¶¶ 158-164, PageID.28 – PageID.30.

57.    Count IV asserts a claim under 42 U.S.C. § 1983 for Fourth and Fourteenth Amendment – Unreasonable Search and Seizure. Here, Craighead asserts that the Defendant Officers exerted influence to perpetuate a criminal prosecution against Craighead that was lacking in probable cause in spite of the fact that they knew Craighead was innocent. Complaint, ¶¶ 165-171, PageID.30 – PageID.32.

58.    Count V asserts a claim under 42 U.S.C. § 1983 for failure to intervene because the Defendant Officers allegedly stood by without intervening to prevent the violation of Plaintiff's constitutional rights. Complaint, ¶¶ 172 - 177, PageID.32 – PageID.33.

- 17 -

41288057.5/022765.00213

59.     Count VI asserts a claim under 42 U.S.C. § 1983 for supervisor liability because Supervisor Defendant Jackson allegedly gave direct orders that violated Craighead's constitutional rights. Complaint, ¶¶178 - 180, PageID.31– PageID.35.

60.     Count VII asserts a claim under 42 U.S.C. § 1983 for conspiracy to deprive constitutional rights. Complaint, ¶¶ 182- 188, PageID.35 – PageID.36.

61.     Count VIII asserts a claim under 42 U.S.C § 1983 for Municipal Liability Under *Monell*.  In this Count, Craighead asserts that the City enabled and approved flawed and erroneous police investigative methods that allegedly led to Craighead's wrongful conviction. Complaint, ¶¶ 189 – 197, PageID.36 – PageID.39.

62.     Count IX asserts a State Law Claim for Malicious Prosecution because the Defendant Officers falsely accused Craighead of criminal activity. Complaint, ¶¶198 – 205, PageID.40 – PageID.41.

63.     Count X asserts a State Law Claim for Civil Conspiracy because the Defendant Officers allegedly participated in a joint malicious prosecution of Craighead.  Complaint, ¶¶ 206-210, PageID.42 – PageID.43.

## III.    Argument

64.     Craighead violated the Plan's injunction and discharge provisions when he filed the Lawsuit to assert pre-petition claims and otherwise seek relief against the City.  And he continues to violate them by persisting in prosecuting the Lawsuit.

- 18 -

65. Under the "fair contemplation" test, Craighead's claim arose before the City's bankruptcy filing because, prior to the City's filing, Craighead "could have ascertained through the exercise of reasonable due diligence that he had a claim" against the City. *In re City of Detroit, Michigan*, 548 B.R. 748, 763 (Bankr. E.D. Mich. 2016) (internal quotation marks and citation omitted). Indeed, for years before the City filed for bankruptcy, during his trial and through two appeals, Craighead had been arguing that he was innocent and that his confession was illegally obtained.

66. For bankruptcy purposes, Courts agree that a claim for a wrongful conviction does not accrue when the conviction is vacated. Instead, it arises when the claim first enters into the plaintiff's fair contemplation. In one example, a court noted,

> It must be said here that all Sanford's claims against the City were within his "fair contemplation" before the City declared bankruptcy. He certainly contemplated the factual bases underlying the claims raised in the complaint, since he attempted repeatedly to argue actual innocence before the state courts since at least 2008, insisting that his confession was falsely obtained, concocted, and coerced. Sanford correctly points out that he could not have sued the City until his convictions were set aside, which did not happen until after the bankruptcy. But the courts that have considered the question uniformly have concluded that claims based on prepetition malicious prosecutions were barred, notwithstanding that the plaintiff could not file suit on his claims until his criminal conviction was overturned.

41288057.5/022765.00213

*Sanford v. City of Detroit*, No. 17-13062, 2018 WL 6331342, at *5 (E.D. Mich. Dec. 4, 2018); *see also Monson v. City of Detroit*, No. 18-10638, 2019 WL 1057306 at *8-9 (E.D. Mich. Mar. 6, 2019);[1] *Burton v. Sanders*, No. 20-11948, 2021 WL 168543, at *4-6 (E.D. Mich. Jan. 1, 2021).

67.     This issue has also arisen repeatedly in the City's bankruptcy case in similar motions to enforce the plan and bar date order. *See* Doc. Nos. 11159 (Siner), 13000 (Ricks), 13691 (Chancellor).   In each instance, the Court recognized that, because the events that gave rise to the asserted claim occurred prepetition, the claimant was able to (or should have been able to) contemplate that he had potential claims against the City and, accordingly, file a proof of claim in the City's bankruptcy case if he wished to participate in the case and recover on the claim. *See* Doc. Nos. 11296 (Siner), 13025 (Ricks), 13751 (Chancellor) (orders granting motions referenced above) and **Exhibit 6L,** Doc. No. 13792 (Hearing Transcript on Ricks); **Exhibit 6M,** Doc. No. 13793 (Hearing Transcript on Chancellor).

68.     Here, there are numerous instances of Craighead asserting the same types of claims that are raised in the Complaint in public court filings prior to the

---

[1] The instant facts are similar to the facts in *Monson*.  Indeed, Craighead alleged that "Defendant Simon was also responsible for Lamarr Monson's wrongful conviction. Defendant Simon interrogated Monson for hours, and eventually wrote out a false statement in which Monon admitted inculpatory information about the murder of Christina Brown, and which omitted Monson's alibi." Complaint ¶ 124. This Court should follow the *Monson* court and hold that Craighead's claims were discharged.

41288057.5/022765.00213

City's bankruptcy filing. In both the Complaint and in his public court filings, appeals and arguments prior to the City's bankruptcy case, Craighead claims that he is innocent, that his confession was illegally obtained and that the Detroit police engaged in illegal tactics. *Compare* Complaint, ¶¶ 138-51, PageID.23-PageID.26; Complaint, ¶¶ 158-64, PageID.28-PageID.30; Complaint, ¶¶ 189-97, PageID.36-PageID.39 and Craighead 2002 Appeal Brief, pp. 2, 15-16, 20; Craighead 2010 Appeal Application, pp.1-2.

69. In short, not only could Craighead fairly contemplate the claims in the complaint prior to the City's bankruptcy case, he wrote and argued them repeatedly in public court filings and arguments.

70. Thus, as in each of the prior cases before this Court, Craighead should have filed a proof of claim in the City's bankruptcy case if he wanted to assert a claim against the City. He did not. He is now barred from asserting any claim against the City or property of the City under the Bar Date Order and Plan.

71. The Plan's discharge provision also states that the "rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date." Plan Art. III.D.4, at p.50.

72. Consequently, Craighead does not have a right to a distribution or payment under the Plan on account of the claims asserted in the Lawsuit. Plan, Art.

- 21 -

III.D.5, at p.50 ("[A]ll entities that have been, are or may be holders of Claims against the City . . . shall be permanently enjoined from . . . proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan."). *See also* Plan, Art. I.A.19, at p.3; Art. I.A.134, at p.11; Art. VI.A.1, at p.67 ("Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim."). Any claims that Craighead may have had were discharged, and the Plan enjoins Craighead from pursuing them. The Bar Date Order also forever barred, estopped, and enjoined Craighead from pursuing the claims asserted in the Lawsuits.

73.     Even if Craighead could somehow seek relief on his claims against the City or its property (which he cannot), the proper and only forum for doing so would be in this Bankruptcy Court. There is no set of circumstances under which Craighead is, or would have been, permitted to commence and prosecute the Lawsuit against the City or its property.

## IV.     Conclusion

74.     The City thus respectfully requests that this Court enter an order, in substantially the same form as the one attached as **Exhibit 1**: (a) directing Craighead to dismiss, or cause to be dismissed, with prejudice the City and the Defendant Officers in their official capacity from the Lawsuit; (b) permanently barring, estopping and enjoining Craighead from asserting the claims alleged in, or

- 22 -

claims related to, the Lawsuit against the City or property of the City; and (c) prohibiting Craighead from sharing in any distribution in this bankruptcy case. The City sought, but did not obtain, concurrence to the relief requested in the Motion.

Dated: October 27, 2023

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com
Attorneys for the City of Detroit

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## EXHIBIT LIST

Exhibit 1          Proposed Order

Exhibit 2          Notice of Opportunity to Object

Exhibit 3          None

Exhibit 4          Certificate of Service

Exhibit 5          None

Exhibit 6A         Complaint

Exhibit 6B         Docket in the Federal Court Lawsuit

Exhibit 6C         Docket of criminal trial, case number 00-007900

Exhibit 6D         2002 Appeal Docket

Exhibit 6E         Craighead 2002 Appeal Brief

Exhibit 6F         2010 Appeal Docket

Exhibit 6G         Craighead 2010 Appeal Application

Exhibit 6H         Plaintiff-Appellee's Brief in Opposition to Defendant's
                   Delayed Application for Leave to Appeal

- 24 -

| | |
|---|---|
| Exhibit 6I | Reply Brief in Support of 2010 Application for Leave to Appeal. |
| Exhibit 6J | November 22, 2011 Court of Appeals Order |
| Exhibit 6K | October 5, 2012 and January 25, 2013 Supreme Court Orders |
| Exhibit 6L | Hearing Transcript on Ricks |
| Exhibit 6M | Hearing Transcript on Chancellor |

41288057.5/022765.00213

# EXHIBIT 1 – PROPOSED ORDER

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

### ORDER GRANTING CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST MARK CRAIGHEAD

This matter, having come before the Court on the *City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Mark Craighead* ("Motion"),[1] upon proper notice and a hearing, the Court being fully advised in the premises, and there being good cause to grant the relief requested,

**THE COURT ORDERS THAT:**

1.     The Motion is granted.

2.     Within five days of the entry of this Order, Mark Craighead shall dismiss, or cause to be dismissed, with prejudice the City of Detroit and the Defendant Officers (as such term is defined in the Complaint) in their official

_____

[1] Capitalized terms used but not otherwise defined in this Order shall have the meanings given to them in the Motion.

capacity from the case captioned as *Mark Craighead v. City of Detroit, et al.,* filed in the United States District Court for the Eastern District of Michigan and assigned case number 23-12243 ("Lawsuit").

3. Mark Craighead is permanently barred, estopped and enjoined from asserting claims asserted in the Lawsuit or claims arising from or related to the Lawsuit against the City of Detroit or property of the City of Detroit.

4. Mark Craighead is prohibited from sharing in any distribution in this bankruptcy case.

5. The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

## EXHIBIT 2 – NOTICE

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**NOTICE OF OPPORTUNITY TO OBJECT TO CITY OF
DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING
THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST
MARK CRAIGHEAD**

The City of Detroit has filed papers with the Court requesting the entry of an order enforcing the bar date order and confirmation order against Mark Craighead.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney.**

If you do not want the Court to enter an Order granting the *City of Detroit's Motion for the Entry of an Order Enforcing the Bar Date Order and Confirmation Order Against Mark Craighead,* within 14 days, you or your attorney must:

1.   File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above.  You must also mail a copy to:

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2.   If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
     Marc N. Swanson (P71149)
     150 West Jefferson, Suite 2500
     Detroit, Michigan 48226
     Telephone: (313) 496-7591
     Facsimile: (313) 496-8451
     swansonm@millercanfield.com

Dated:  October 27, 2023

# EXHIBIT 3 – NONE

## EXHIBIT 4 – CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 27, 2023, he served a copy of the foregoing **CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST MARK CRAIGHEAD** upon counsel for Mark Craighead, via the Court's CM/ECF service and in the manner described below:

Via first class mail and email:

**Arthur Loevy**
**Jon Loevy**
**Rachel Brady**
**Russell Ainsworth**
**Megan Colleen Pierce**
Loevy & Loevy
311 North Aberdeen
3rd Floor
Chicago, IL 60607
Email: arthur@loevy.com
Email: jon@loevy.com

Email: brady@loevy.com
Email: russell@loevy.com
Email: megan@loevy.com


DATED:  October 27, 2023

By: /s/ Marc N. Swanson
     Marc N. Swanson (P71149)
     150 West Jefferson, Suite 2500
     Detroit, Michigan 48226
     Telephone: (313) 496-7591
     Facsimile: (313) 496-8451
     swansonm@millercanfield.com

## EXHIBIT 5 – NONE