# Exhibit 6L - Hearing Transcript on Ricks

```
 1                  UNITED STATES BANKRUPTCY COURT
                    EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3
      IN RE:                     .    Case No.  2:13-53846-tjt
 4                               .    Chapter 9
      CITY OF DETROIT, MICHIGAN,  .
 5                               .
            Debtor.              .
 6                               .
      . . . . . . . . . . . . . . .
 7

 8

 9


10    TRANSCRIPT OF HEARING ON CITY OF DETROIT'S MOTION FOR ENTRY
        OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION
11                   ORDER AGAINST DESMOND RICKS

12

13

14            BEFORE THE HONORABLE THOMAS J. TUCKER
                 UNITED STATES BANKRUPTCY JUDGE
15
                  WEDNESDAY, MARCH 20, 2019
16                      DETROIT, MICHIGAN

17

18

19

20

21

22

23

24

25
```

```
1   APPEARANCES:

2   For the Debtor:              Miller Canfield Paddock &
                                    Stone, PLC
3                               By:  Marc N. Swanson
                                150 West Jefferson Street
4                               Suite 2500
                                Detroit, MI  48226
5                               (313) 496-7591

6   For Desmond Ricks:          Fieger Law
                                By:  James J. Harrington, IV
7                               19390 West 10 Mile Road
                                Southfield, MI  48075
8                               (248) 355-555

9   Court Recorder:             Jamie Laskaska
                                Clerk's Office
10                              U.S.  Bankruptcy Court
                                211 West Fort Street
11                              Detroit, MI  48226

12  Transcription Service:      Randel Raison
                                APLST, Inc.
13                              6307 Amie Lane
                                Pearland, TX  77584
14                              (713) 637-8864

15

16

17

18

19

20

21

22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.
```

1                    (Time Noted:  1:34 p.m.)

2              THE COURT CLERK:  Please rise.  This Court is back

3    in session.

4              You may be seated.

5              Court will call the matter of the City of Detroit,

6    Michigan, case number 13-53846.

7              THE COURT:  All right.  Good afternoon to each of

8    you.  Would you enter your appearances for the record,

9    please, starting with counsel for the City?

10             MR. SWANSON:  Thank you, Your Honor.  Marc Swanson

11   on behalf of the City of Detroit.

12             MR. HARRINGTON:  Good afternoon, Your Honor.

13   James J. Harrington on behalf of the Plaintiffs Ricks.

14             THE COURT:  All right.  Good afternoon again,

15   everyone.  This is the hearing, as you know, on the City of

16   Detroit's motion seeking relief against Desmond Ricks et al.,

17   motion for entry of an order enforcing the bar date order and

18   confirmation order, et cetera.

19             I have reviewed the papers filed by the parties

20   regarding this -- relating to this motion.  I have also done

21   some review of the record of the U.S. District Court in the

22   lawsuit that's pending over in District Court, which is

23   referred to and discussed in the motion and related papers.

24             So, Mr. Swanson, let me hear from you first.

25             MR. SWANSON:  Good afternoon.  Plaintiff Desmond

1    Ricks is suing the City on account of a claim which arises

2    from alleged unlawful events in 1992, and an alleged unlawful

3    conviction in 1992. The claims against the City are, in

4    Plaintiff's own words, based on the City's alleged policies

5    that were in effect, quote, "In and before March 5, 1992."

6    Reading from paragraph 81 of the complaint.

7         The claim is further based on alleged unlawful and

8    unconstitutional actions taken by the City's police officers

9    in 1992. It's undisputed that the alleged unlawful

10    conviction was in 1992, the actions by the City's police

11    officers were in 1992, and the City's alleged unlawful

12    policies were those in place in 1992, and the City didn't

13    file for bankruptcy until 2013, 21 years later. Yet,

14    Plaintiff claims that its claim is not barred by the City's

15    bankruptcy case and didn't arise until 2017.

16         And why does Plaintiff make this assertion? Well,

17    Plaintiff asserts that the proper test for the Court to

18    determine when the claim arose is the right to payment test.

19    That is the leading argument on page 1 of the Plaintiff's

20    objection to the City's motion.

21         As this Court knows, and as this Court has wrote

22    about, that test holds that a bankruptcy claim does not

23    accrue until the cause of action is ripe under non-

24    bankruptcy law. So under applicable federal law or

25    applicable state law.

1   This Court, however, rejected that test in an
2   opinion that's cited in the City's reply filed on Friday.
3   And instead of the right to payment test, the Court adopted
4   the fair contemplation test.

5   And under that test, a claim is considered to have
6   arisen pre-petition if the creditor could have ascertained
7   through the exercise of reasonable due diligence that it had
8   a claim at the time the petition is filed.

9   And as this Court wrote, this test allows the
10  Court to examine all the circumstances surrounding a
11  particular claim:  The Debtor's conduct, the parties' pre-
12  petition relationship, the parties' knowledge, the elements
13  of the underlying claim, and use its best judgment to
14  determine what is fair to the parties in context.

15  Now, attached as exhibit 17 to the City's reply
16  was a very recent District Court decision in the case *Sanford*
17  *v. City of Detroit*.  That case has many factual similarities
18  to the case here today.  It's an alleged unlawful conviction
19  case.  The alleged unlawful conviction occurred before the
20  City filed for bankruptcy.  The conviction was not overturned
21  until after the City exited from bankruptcy.

22  And the plaintiff in that case, Sanford, asserted
23  that the City's alleged customs, policies, and practices,
24  resulted in his unlawful conviction.  And that's the same
25  type of claim that the Plaintiff here is making against the

1  City.

2          And *Sanford* advanced the exact same argument that

3  the Plaintiff here is making to support its argument that the

4  claim is not subject to the Plan.  And that's the argument

5  that the pre-petition conviction was not overturned until

6  after the City exited bankruptcy, and, thus, the cause of

7  action was not ripe under non-bankruptcy law until after the

8  City exited bankruptcy, and, thus, it was not subject to the

9  City's Plan.

10          The Federal District Court rejected that argument,

11  and stating that Mr. Sanford certainly contemplated the

12  factual bases underlying the claims raised in his complaint

13  since he attempted repeatedly to argue actual innocence

14  before the State Court since at least 2008, insisting that

15  his confessions were falsely obtained, concocted, and

16  coerced.

17          *Sanford* correctly points out that he could not

18  have sued the City until his convictions were set aside,

19  which did not happen until after the bankruptcy.

20          But the courts that have considered the question

21  uniformly have concluded that claims based on pre-petition

22  malicious prosecutions were barred, notwithstanding that the

23  Plaintiff could not file suit on his claims until his

24  criminal conviction was overturned.  The case is on all fours

25  with the facts here.

1    And despite this Court's adoption of the fair

2 contemplation --

3    THE COURT:  There's actually an even more recent

4 case from the District Court similar to this case and similar

5 to *Sanford*, which maybe you're familiar with.  I happened to

6 cross it recently.  It was decided March 6, 2019.  It's

7 called *Monson*, M-O-N-S-O-N, *versus City of Detroit, et al.*

8 It's 2019 Westlaw 1057306, 1057306.

9    MR. SWANSON:  Wow.

10    THE COURT:  A decision by Judge Michelson, very

11 similar to *Sanford,* and same result as *Sanford*.  I happened

12 to cross it when I was looking for something else.

13    And so there's two District Judges in two

14 different cases, the District Court for this District, that

15 have ruled the way you've described as characterized as

16 *Sanford* and as you want the Court to rule in this matter.

17    And so I want to make both parties aware of that

18 case, that *Monson* case.  Were you aware of that?

19    MR. SWANSON:  I had run across it, Your Honor.

20    THE COURT:  Okay.  Well, so those are two cases

21 where the City defended an action brought against it in

22 District Court and raised the argument that you're raising in

23 this Court now on this motion in the District Court as a

24 defense and let the District Court decide the issue.

25    Why didn't the City let the District Court -- or

1  why isn't the City leaving it to the District Court in this

2  case, in the Ricks case, to decide the issues raised by this

3  motion?

4          MR. SWANSON:  Your Honor, I apologize.  I don't

5  have a great answer for you.  I was told by the City that

6  this claim had been asserted in the District Court and to

7  file a motion with you.  I never had any discussion about

8  filing a motion in the --

9          THE COURT:  Well, let me ask you this:  Do you

10  know why the City waited until January 30, 2019, to file this

11  motion in this Court when the case, the District Court case

12  against it by the Ricks, the Ricks parties, was filed back in

13  August 2017?  A year and a half or so, the City waited to

14  seek relief from this Court.  Do you know why that is?

15          MR. SWANSON:  I don't know why that is.

16          THE COURT:  The City, I noticed in looking at the

17  District Court record, the pending case, the Ricks case in

18  the District Court, the City filed a motion for summary --

19  the City and all Defendants filed a motion for summary

20  judgment in that case.  I'm sure you're familiar, as is your

21  opposing counsel, with that.

22          And in that motion -- and that was that, that was

23  filed on -- the City's motion was filed on February 6th, and

24  it raised a whole bunch of arguments, but one of the

25  arguments it raised was, the City of Detroit raised the same

1   argument that you're making in this current motion in its

2   summary judgment motion filed in the District Court.

3           And I did see that, and I did see the response to

4   that that was filed on March 6, 2019, by the Plaintiffs, the

5   Ricks plaintiffs, to that motion.

6           Now, in that response, the Ricks Plaintiffs argue

7   the fair contemplation test and they argue that they should

8   prevail on that fair contemplation test.  They make their

9   arguments there, and that's in a brief that they filed on

10  March 6, 2019, docket number 99 in the District Court case,

11  case number 17-12784.

12          So they made that argument about the fair

13  contemplation test on March 6th.  And that, of course, was

14  before your reply brief was filed in this case pointing out

15  the fair contemplation test, so forth, on March 15.

16          So we've got this issue, or these issues, being

17  raised simultaneously, essentially, in both cases, this

18  bankruptcy case and the District Court case.  Why shouldn't I

19  leave it to the District Court to decide this issue, as was

20  done in the *Monson* case and in the *Sanford* case, as those

21  Courts decided?

22          MR. SWANSON:  Well, Your Honor, this Court has, of

23  course, jurisdiction over the Plan, can enforce the Plan, has

24  jurisdiction over the bar date order, and the City's moving

25  and asking for relief in this Court.  I don't -- I don't --

1  THE COURT: Now, the District Court is aware that
2  you are doing this, I see from the District Court papers. I
3  saw there was a motion for extension of time, and the
4  District Court recently denied that motion.
5  And then in the course of that motion, and the
6  papers filed in that motion, and the District Court's ruling
7  on that motion, it's clear the District Court is aware the
8  City is making this same argument in this case, in this
9  bankruptcy case. And just didn't really say that this Court
10 shouldn't do that or, should or shouldn't do that, but just
11 basically noted it.
12 So it's just, you know, perhaps the City had a
13 deadline, I assume they had a deadline to file any summary
14 judgment motion in the Ricks case in District Court that they
15 had to meet, and I can understand that.
16 And when you file a motion for summary judgment,
17 you want to put in all your arguments. But by the time the
18 City filed its summary judgment motion in the District Court
19 case, you had already made the motion in this case.
20 MR. SWANSON: Yeah. And I checked before I came
21 here today. I believe the deadline for the City to file its
22 summary judgment motion in the District Court case was
23 February 6th, and I believe that it filed its motion --
24 THE COURT: And you filed it on the deadline?
25 MR. SWANSON: Not me.

1              THE COURT:  Yeah.

2              MR. SWANSON:  Yeah.

3              THE COURT:  Right.  The City Law Department.

4              MR. SWANSON:  City Law Department filed it on

5     February 6th.  And I saw that motion.  I saw -- I did check

6     the docket last week.  I saw that it had not been ruled on by

7     the District Court.  I wasn't aware that the City --

8              THE COURT:  It looks like there's a deadline --

9     the briefing isn't done yet.  I think there's a deadline of

10    March 27th for reply briefs to be filed in connection with

11    those motions --

12             MR. SWANSON:  Sure.

13             THE COURT:  -- in the District Court.  So it will

14    be sometime after that, presumably, before the District Court

15    makes any ruling on those motions.

16             But you want this court to go ahead and rule,

17    presumably, now, today, on your motion, and in your favor, as

18    a means, in your view, of what would shortcut and make

19    necessary the District Court ruling on this issue in the

20    District Court case.

21             MR. SWANSON:  Yes, Your Honor.

22             THE COURT:  Are there other cases like this

23    floating around out there in District Court where this same

24    issue is at play?

25             MR. SWANSON:  Not that I'm aware of.

1       THE COURT:  Okay.  Well, so perhaps you saw and

2   reviewed the summary judgment brief filed by the Ricks

3   Plaintiffs in the District Court.  That is the brief in which

4   they filed on March 6th in which they argued fair

5   contemplation.  That is that Ricks' claim was not within his

6   fair contemplation at the time the bankruptcy petition was

7   filed in the City's bankruptcy case.  Did you read that

8   brief?

9       MR. SWANSON:  I may have glanced at it, but I

10  don't --

11      THE COURT:  Okay.

12      MR. SWANSON:  I did not look at it in any detail.

13      THE COURT:  Well, it's only a couple --

14      MR. SWANSON:  Yeah.

15      THE COURT:  It's a couple pages long.

16      MR. SWANSON:  Yeah.

17      THE COURT:  But we'll hear, presumably, the same

18  kind of arguments, the same arguments, and maybe other

19  arguments, here from Mr. Harrington on that subject.

20      But, you know, in your opening motion and in the

21  response filed by the Ricks Plaintiffs to your motion, nobody

22  argues anything about the fair contemplation test.  Nobody

23  says a word about it.  It only gets discussed, you know,

24  application of it and what the test means and requires and

25  everything else, in your reply, right?  In this case.

1          MR. SWANSON:  That's true.

2          THE COURT:  Okay.  So my only clue at the moment

3    about what the Ricks Plaintiffs are going to argue about fair

4    contemplation is in what they filed in the District Court

5    case that I've just alluded to.

6          So I did read your reply brief, of course, and I

7    looked at the exhibits you attached to that in support of

8    your argument that Mr. Ricks was claiming innocence and

9    claiming all the facts that he needed to know as claims of

10   innocence and wrongful imprisonment and everything else long

11   before the City filed its bankruptcy petition in 2013.  I did

12   review those exhibits.

13         Do you want to say anything about those things or

14   that subject further before we hear from Mr. Harrington?

15         MR. SWANSON:  Yes, Your Honor.  I'd like to go

16   through the exhibits, because I think they certainly go to

17   Mr. Ricks fairly contemplating that he had a claim against

18   the City prior to the City's bankruptcy filing.

19         The first exhibit here is a deposition transcript

20   from Mr. Ricks on May 21, 2018.  The portions that were

21   excerpted from the deposition, however, talk about events in

22   Mr. Ricks' own words which occurred in 2009.  So Mr. Ricks

23   describes in 2009 that he saw -- this is in Exhibit 1.  He

24   saw an ad in the Bar Journal with the name of the expert

25   witness he used on the ballistic issue in 2009.  A gentleman

1    by the name of David G. Townsend.  And the ad is at Page 32

2    of 108 at Docket 13021.

3            And Mr. Ricks describes in 2009 his efforts to

4    contact Mr. Townsend because he believed that he had been

5    wrongfully convicted and he believed that the ballistics test

6    was a factor in that wrongful conviction.

7            The next exhibit, Your Honor, is a letter from the

8    state appellate defender officer dated August 6th, 2009.  And

9    they write to Mr. Ricks --

10            THE COURT:  That's exhibit 2, right?

11            MR. SWANSON:  That's exhibit 2.

12            THE COURT:  Yeah.

13            MR. SWANSON:  I write in response to your letters

14    regarding the Detroit Crime Lab.  The State Appellate

15    Defender Office is undertaking a complete review of our Wayne

16    County clients to determine whether tainted evidence from the

17    Detroit Crime Lab resulted in your -- resulted in conviction.

18            Again, it would certainly appear here Mr. Ricks

19    had made a claim to the State Appellate Defender Officer --

20    Office that a tainted crime lab played a -- played a role in

21    his conviction.

22            Exhibit number 3, Your Honor, is another letter

23    dated February 11, 2010 from the same sender, the State

24    Appellate Defender Office, which writes to Mr. Ricks:  "You

25    have expressed interest in having our office review your case

1  for potential Detroit Crime Lab issues."  Again, Mr. Ricks is

2  asserting that some malfeasance with the Detroit Crime Lab

3  resulted in his conviction.

4         Exhibit 4, Your Honor, dovetails with Exhibit 1.

5  This is a letter from David Townsend, the expert Mr. Ricks

6  used in his 1992 trial and ultimate conviction, writing to

7  Mr. Ricks that he was going to the prison to try to visit Mr.

8  Ricks but couldn't get there.

9         Exhibit 5, Your Honor, is a email dated June 22,

10  2011 and June 23, 2011.  The bottom email is from a lady

11  named Claudia Whitman, and Ms. Whitman was a investigator who

12  was working on Mr. Ricks' behalf.  Her official title, I

13  believe, is Director of National Capital Crime Assistance

14  Network, and she is writing here to a U.S. attorney about

15  contacting the University of Michigan Innocence Clinic to

16  work on Mr. Ricks' claim.  And this is in 2011.

17         Exhibit 6 is correspondence between the lady, Ms.

18  Whitman, that I just identified, and another man named

19  Roberto Guzman, who is a Senior Legal Assistant at the

20  People's Task Force to Free the Wrongfully Convicted, again

21  another individual that was working on Mr. Ricks' case,

22  talking about sending him, to Mr. Ricks, a letter regarding

23  some ballistic testing to the prison where Mr. Ricks was

24  incarcerated and that material not getting through to Mr.

25  Ricks.

1    Exhibit 7, again, some correspondence between Mr.

2  Guzman, the assistant at the People Task Force to Free the

3  Wrongfully Convicted, and Claudia Whitman, the investigator,

4  discussing efforts to contact some of the original agents who

5  made Mr. Ricks' arrest in 1992.

6    Exhibit 8 is a letter dated February 1, 2012, from

7  Mr. Ricks to the Bureau of Alcohol, Tobacco, and Firearm.  He

8  states quite clearly in the second paragraph on Page 1:  "I

9  have been incarcerated for the past 20 years for a crime that

10  I did not commit, but recently, I've been blessed to have the

11  assistance of Ms. Claudia Whitman.  She is the Director of

12  NDRAN of Cure ND -- NDRAN of Cure, which is a national

13  organization that reaches out to aid and assist the

14  wrongfully convicted."

15    And this is a letter where he essentially requests

16  that the Bureau provide him with access to the agents that

17  arrested him.

18    Page 2 of that letter also talks about Mr. Ricks,

19  in the middle there, having an affidavit from the independent

20  firearms examiner, David G. Townsend, the individual

21  identified in exhibit 1 and exhibit 4, in which he says that

22  the two slugs that he was given to test did not have any

23  blood or other trace evidence.

24    At the end of the letter he has a PS there which

25  says:  "I wrote to the United States Attorney, Barbara L.

1  McQuaid, and she directed me to you."

2          Exhibit 9 is that letter to Ms. McQuaid, or is one

3  of the letters to Ms. McQuaid, and this is written, again,

4  June 13th, 2012, a year before the City filed for bankruptcy,

5  written by David Moran, who I believe was a lawyer at the

6  Michigan Innocence Clinic, and Sally Larson, a student

7  attorney at the University of Michigan Innocence Clinic.  So

8  at that time Mr. Ricks had the University of Michigan

9  Innocence Clinic working on his behalf trying to overturn his

10  alleged unlawful conviction.

11          Exhibit 10 --

12          THE COURT:  This letter says in the first

13  paragraph:  "We do not represent Mr. Ricks," --

14          MR. SWANSON:  Oh.  Right.

15          THE COURT:  -- "but are investigating his claims

16  of innocence," et cetera.  So I'm not sure what that means

17  exactly, if they were investigating claims of innocence of

18  Mr. Ricks on his behalf.  I don't know why they said they

19  weren't representing him, but they were investigating his

20  claim.

21          MR. SWANSON:  Yes.

22          THE COURT:  Okay.

23          MR. SWANSON:  And I think the complaint makes a

24  reference to the Michigan Innocent Clinic playing a critical

25  role in his, in his -- in overturning his conviction.

1    So to the extent they were representing him, they

2  were certainly working on his behalf, to the extent there is

3  a difference, I suppose.

4    Exhibit 10 is a letter from the Michigan Innocence

5  Clinic.  This is six days after they wrote to Ms. McQuaid,

6  June 19, 2012, and this is to the City of Detroit Law

7  Department FOIA coordinator requesting, you know, it's a FOIA

8  request for information related to the homicide that he was

9  convicted of.

10    Exhibit 11, more emails between Sally Larson, who

11  was the student attorney who signed the letter to Ms.

12  McQuaid on behalf of the Michigan Innocence Clinic, to

13  Claudia Whitman, the investigator.  And in this letter the

14  parties are discussing the possibility of rerunning

15  ballistics from the 1992 conviction.

16    Exhibit 12, I believe, is similar.

17    Exhibit 13, another letter dated September 24,

18  2012, again, from Mr. Ricks to Ms. Larson, the student

19  attorney at the University of Michigan Law School and

20  Michigan Innocence Clinic, talking about new case law which I

21  believe Mr. Ricks asserts could or would help in overturning

22  his unlawful conviction.

23    Exhibit 14, these are emails between the Michigan

24  Innocence Clinic, again Ms. Sally Larson and Ms. Claudia

25  Whitman, regarding their notes on discussion of, you know,

1  ballistics experts.

2          Exhibit 15 --

3          THE COURT:  I noticed that exhibit 14 has as part

4  of it a copy of notes that Ms. Larson made of the phone

5  conversation that she had with David Townsend on October 2,

6  2012, where they're talking about the ballistics evidence and

7  problems with it, and so forth.

8          MR. SWANSON:  Yeah, in the Detroit Crime Lab.

9          THE COURT:  Go ahead.

10          MR. SWANSON:  Thank you.

11          Exhibit 15, is another set of emails between the

12  Michigan Innocence Clinic and Claudia Whitman, again talking

13  about ballistics and the bullets and, you know, that same

14  subject matter.

15          Exhibit 16 is a letter from Mr. Ricks dated

16  December 12, 2012, where one of the alleged witnesses in the

17  Plaintiff's complaint, named in the Plaintiff's complaint,

18  Ms. Strong, where he's writing to her, again discussing the

19  case and potential misidentification of him by Ms. Strong.

20          And so -- and this is -- this is -- there's more

21  that's similar to this.  We only attached --

22          THE COURT:  I noticed in that letter, exhibit 16,

23  the letter from Mr. Ricks to Ms. Strong, he does complain

24  about the police, and he refers to what the police did to me,

25  and he's angry and frustrated about what the police did to

1   me.  And he says -- he talks about the Detroit Crime Lab was

2   closed down in 2008 for doing bad testing on evidence, such

3   as guns and bullets.  I'm hoping that they will retest the

4   evidence in my case, and so forth.

5         The next -- the last page of his letter he says:

6   "The police have been running wild in Detroit doing all sorts

7   of corrupt and unethical things to lock people up.  Whether

8   innocent or not, they don't care."  That's the last page of

9   the exhibit 16 letter to Mr. Ricks to Ms. Strong.

10         Anyway, go on.

11         MR. SWANSON:  Well, Your Honor, I believe going

12   through those 16 exhibits we have conclusive evidence that

13   the claims Mr. Ricks is asserting in his complaint against

14   the City were within his fair contemplation well before the

15   City filed for bankruptcy.

16         When this Court applies the fair contemplation

17   contest it looks at a number of things:

18         The debtor's conduct.  The debtor's conduct here

19   all occurred in 1992.

20         The relationship between the parties is another

21   factor that the Court looks at.  The relationship between the

22   parties all occurred in 1992.

23         The Court also looks at the parties' knowledge.

24   Well, here, Mr. Ricks, he's demonstrated that he knew of this

25   potential claim probably from the minute that he alleges he

1  was unlawfully arrested, and certainly well before the City's

2  bankruptcy case, because the Michigan Innocence Clinic was

3  investigating this on his behalf.  He was contacting experts.

4  He was contacting witnesses.  All the while professing his

5  innocence and professing that issues with the Detroit Police

6  Department and Detroit Crime Lab led to his unlawful

7  conviction.

8         And, Your Honor, these are the same claims and

9  facts that formed the basis for Mr. Ricks' complaint against

10  the City of Detroit.  And sure, Your Honor, all of the

11  factors --

12         Oh, I guess, finally, this is a *Monell* claim that

13  the Plaintiff here is asserting against the City of Detroit,

14  and *Monell* holds municipalities may be held liable for the

15  constitutional violations of their employees only where the

16  municipality's policy or custom led to the violation, and

17  there can be no liability under *Monell* without an underlying

18  constitutional violation.

19         All of the constitutional violations that Mr.

20  Ricks is complaining about occurred in 1992, 21 years before

21  the City filed for bankruptcy.

22         And as exhibits 1 to 16 demonstrate, Mr. Ricks

23  knew of the factual bases, or at least was asserting the

24  factual bases for these alleged constitutional violations

25  well before the City filed for bankruptcy.

1    In short, Your Honor, all of the factors
2 considered under the fair contemplation test demonstrate that
3 the claims that were asserted by Ricks against the City arose
4 no later than 1992, and, thus, were subject to the discharge
5 in the City's Plan and the bar date order.

6    The City would thus respectfully request that this
7 Court enter an order dismissing the City of Detroit with
8 prejudice from the Federal District Court lawsuit asking the
9 Plaintiff -- requiring the Plaintiff to dismiss the City of
10 Detroit with prejudice from the lawsuit.

11    THE COURT:  With respect to the *Monell*, what you
12 characterize as the *Monell* claims, the claims against the
13 City that are asserted in the U.S. District Court complaint,
14 first amended complaint, I know accrual -- the accrual test
15 is not the test here, and I understand that.  I've written
16 about that, as you know, in the published opinion that you
17 cite in your brief.

18    But in terms of when a claim, a *Monell* claim
19 accrues in this kind of situation, is it correct to say that
20 in the case of someone wrongfully imprisoned, wrongfully
21 convicted, wrongfully imprisoned, because of violations of
22 that person's constitutional rights by police is the sort of
23 the theory that's alleged here, and then seeking liability
24 against the municipality because of its policies and
25 practices and so forth, does that claim only accrue when

1   there has been a reversal, vacation, dismissal of the

2   charges, conviction against the claimant?  I'm talking about

3   accrual here not -- accrual under non-bankruptcy law, not

4   when it arises for purposes of it being a bankruptcy claim.

5   Is that the case?

6           MR. SWANSON:  Your Honor, I have not researched

7   that.  I know that in the opinion that we cited, the *Sanford*

8   opinion, the District Court there, I believe, said that

9   *Sanford* correctly points out that he could not have sued the

10  City until his convictions were set aside, which did not

11  happen until after bankruptcy.

12          THE COURT:  All right.  I see.  So that's the

13  answer that the Court in the *Sanford* case gives to that.

14          MR. SWANSON:  Yeah.  And I have nothing to add to

15  that to support it or deny it.

16          THE COURT:  All right.  Anything else you'd like

17  to say?

18          MR. SWANSON:  No, Your Honor.

19          THE COURT:  All right.  Thank you.

20          Mr. Harrington?

21          MR. HARRINGTON:  Yes, Your Honor.  Thank you.

22          If I may speak briefly on the accrual as you were

23  asking in the non-bankruptcy setting?

24          THE COURT:  Sure.

25          MR. HARRINGTON:  Yes, Your Honor, you are correct

1   in the sense that the claim has not accrued until the

2   conviction has been set aside.

3           I mean, think about the practical ramifications if

4   say somebody like Mr. Ricks was to have filed his 1983 *Monell*

5   claim in 1990, 1995, the first thing that's going to be met

6   with is a simple 12(b)(6) motion.  I mean, there's --

7           THE COURT:  Well, you cite the *Heck* case --

8           MR. HARRINGTON:  Yes, we do.

9           THE COURT:  -- in your response to the City's

10  motion in this case.  Is it the *Heck* case, that Supreme Court

11  case, that stands for this proposition that a *Monell* type

12  claim in this kind of a situation, wrongful imprisonment,

13  wrongful conviction, does not arise until the conviction is

14  set aside?

15          MR. HARRINGTON:  That is accurate, Your Honor.

16          THE COURT:  It is.  Okay.

17          MR. HARRINGTON:  Now --

18          THE COURT:  It doesn't sound like the City

19  disputes that, really, so.  All right.

20          MR. HARRINGTON:  I don't think they do, because

21  it's -- I think you're just getting a little bit of context

22  because this is bankruptcy and that's -- what we're talking

23  about is non-bankruptcy with the accrual of the claim.

24          But it kind of dovetails and tailors into what

25  we're talking about here with the fair contemplation, because

1   as counsel was walking through all of these exhibits talking

2   about what Mr. Ricks was doing in contacting and really

3   professing his innocence, all he's doing is trying to build a

4   case.

5           And I think that is a distinction, that he's

6   trying to build a case, as opposed to being able, really, to

7   file a case.  And what was to happen if he files a proof of

8   claim without this determination that it was a wrongful

9   conviction?  The policy implications are very, very

10  interesting.

11          What is he really supposed to do?  He files this

12  claim, and he could face possible sanctions because he

13  doesn't have a claim.  He doesn't have a case until it's been

14  set aside.

15          I mean, if we were to go through and take a vote

16  on everybody in prison who believes that they were wrongfully

17  convicted, I think we'd see a pretty strong showing of hands.

18          And I don't think the policy and the underlying

19  intent of all of this is to put that type of a burden on all

20  of these inmates to say, hey, if you think you've got a, you

21  know, possible claim, although you might get sanctioned for

22  filing a frivolous either lawsuit or notice of claim, you

23  better -- you better do it.  And I don't think that's the

24  intent.  So I think --

25          THE COURT:  Well, Mr. Ricks had filed a proof of

1  claim in the City's bankruptcy case by the bar date, which I

2  think was February 13, 2014, or thereabouts.  If he had done

3  that, and, of course, that was a time when his conviction had

4  not yet been set aside.  That happened in 2017, it seems

5  undisputed in this case.  But it hadn't happened yet.  He was

6  still trying to get it -- get relief, get it set aside, get

7  freed, but he hadn't been yet.

8          So if he had filed a proof of claim then, it seems

9  to me in terms of that sort of bankruptcy world it would be

10  deemed a contingent claim.  That is, it's a claim that's

11  contingent upon obtaining -- setting aside of the conviction,

12  which had not happened yet.

13          And if that contingency doesn't come to pass, then

14  he would -- the City would never -- could never possibly owe

15  him a debt on a *Monell*-type claim.

16          But if it did come to pass later, at a later date,

17  the City might.  Or at least his claim wouldn't be subject to

18  dismissal, in effect, or rejection on the ground of *Heck,*

19  that it hadn't accrued yet.

20          In bankruptcy when a contingent claim is filed it

21  doesn't necessarily get disallowed just because it's a

22  contingent claim, but there is a provision in the Bankruptcy

23  Code for estimating contingent claims under certain

24  circumstances where you don't know if the contingency will

25  happen, or not yet.

1          And so there's a process for estimating for

2  purposes of claims allowance in the bankruptcy case.

3          So it's not enough when somebody files a

4  contingent claim like that, in this scenario I'm -- the

5  hypothetical scenario I'm describing, the City, it's not

6  enough for the City to have objected to that just on saying

7  it's contingent, the conviction hasn't been set aside yet, so

8  there's no claim accrued, so we owe them nothing.

9          It's not enough, because if the contingency occurs

10 later, that argument goes out the window.  So the claim, the

11 contingent claim has to be estimated.  That's the idea there.

12 Okay.

13         MR. HARRINGTON:  Understood.  And I don't --

14         THE COURT:  So it's not -- it's not just that the

15 claim would have been rejected out of hand in the bankruptcy

16 case only because it was then contingent.  You see what I'm

17 suggesting?

18         MR. HARRINGTON:  In concept, yes.

19         THE COURT:  Okay.

20         MR. HARRINGTON:  But I don't think that applies

21 here.  And how tenuous of a claim, or as you would maybe say,

22 how tenuous of a contingency would be allowed, would be okay,

23 would not be sanctionable or deemed to be a frivolous filing

24 with the Court.  I mean, I mean, how far --

25         THE COURT:  That's part of what bankruptcy courts

1  have to figure out when they are doing this type of claims

2  estimation process on a contingent claim that I've -- or on

3  an unmatured or contingent, either one, claim that I've been

4  describing to you.

5          MR. HARRINGTON:  Right.

6          THE COURT:  It's not necessarily an easy thing to

7  do.

8          MR. HARRINGTON:  And that's what I'm --

9          THE COURT:  It's not a -- there's no science to

10 that.  It's not a scientific precision.

11         MR. HARRINGTON:  Well, and that's what I'm getting

12 at.  Because what would have to happen is would be literally

13 a whole almost a trial within a trial on the evaluation of

14 Mr. -- the viability of his claim, and so we would literally

15 have a trial within a trial to determine how viable this is.

16         Because if that was the case, and if everybody who

17 is currently incarcerated at the hands of the Detroit Police

18 Department for, let's just say, you know, gross mishandling

19 of evidence -- and I'm not -- I'm not casting stones, I'm

20 just saying let's just assume that for this discussion.  How

21 many people would have to come forward and literally try

22 their case to say, Your Honor, look at my contingencies, if

23 this, and this, and then this, this, this, and this actually

24 come to fruition, then I'm going to have a great case.

25         And so where are we with that?  What is -- and

1 that's why I think when this Court, this Bankruptcy Court,

2 today, can look at all of the circumstances surrounding, and

3 I think with this imprisonment case it presents a bit of a

4 different picture, because without -- no matter what Mr.

5 Ricks thinks, no matter what he knows, no matter what he

6 says, what he researches, if he doesn't have the exoneration,

7 there is no claim. So I guess the question really for the

8 Court is, is how tenuous, I mean, how many times are

9 convictions really turned over?

10         So my position to the Court is, is that if you are

11 even looking at this, which I would ask you -- what I would

12 suggest that it doesn't apply, but if you're looking at this

13 as to the contingencies by as far removed in the, really, the

14 likelihood of him actually getting a conviction overturned

15 for somebody who has spent over 20-some years in prison, it

16 almost never happens.

17         So you're talking about, really, the Hail Mary of

18 all Hail Mary's happening and that's the contingency that

19 the, that the City wants you to, if you're going to apply

20 this contingency-type of analysis, they would look at this as

21 like a cover the eyes, and we're almost in March madness,

22 cover the eyes, inbound pass, without looking over the

23 shoulder and it's the swish and we win by one at the buzzer,

24 and --

25         THE COURT: You know, though, really, what you're

1  arguing sounds like an argument in substance.  An argument

2  against the fair contemplation test, rather than an argument

3  that says courts, Bankruptcy Courts should use the accrual

4  test, and the case law has rejected that.  I have rejected

5  that.

6          Many bankruptcy cases have rejected that accrual

7  test as inconsistent with Congressional intent in the very

8  broad definition of claim that's in the Bankruptcy Code.  And

9  you know that, because you've read -- you've read my opinion

10 in the City of Detroit case, I assume, that's cited.

11         MR. HARRINGTON:  Yes.

12         THE COURT:  And you've read the *Sanford* case, I

13 assume?

14         MR. HARRINGTON:  Yes.

15         THE COURT:  And have you read the *Monson* case?

16         MR. HARRINGTON:  I have not.

17         THE COURT:  Okay.

18         MR. HARRINGTON:  I will.

19         THE COURT:  It's very similar to *Sanford*.

20         MR. HARRINGTON:  And I would love it if the Court

21 did apply the accrual test, because then this would be

22 extremely easy.

23         But under the reasonable contemplation, or the --

24 I'm sorry, the fair contemplation test, as we look at it to

25 the Ricks case, I think creates a situation where how can he

1  reasonably contemplate that he has a claim?  Even in his

2  mind, he knows what he did.  He knows what he didn't do.

3          But, in order to get -- I mean, the mountains that

4  have to be moved for that to happen is really, I mean, there

5  is his subjective belief and then there is a reasonable

6  belief, and if we look at this, how could he -- we know that

7  he got out and he was exonerated.  But as we sit here

8  evaluating it before it could happen, how could we reasonably

9  believe, in light of all of the evidence, in light of what we

10  know, in light of 20-some years having been in prison, how

11  could we reasonably believe that he has a cause of action?

12          And so I guess even when you apply the fair

13  contemplation test, I believe that under the authority -- and

14  I appreciate the --

15          THE COURT:  Well, what about -- in relating to

16  that question, what about what David Townsend was saying, as

17  of October 2, 2012, in his phone call with Sally Larson of

18  the Michigan Innocence Project, about the ballistics tests

19  and the ballistics evidence in Mr. Ricks' case?

20          MR. HARRINGTON:  Yeah.

21          THE COURT:  That's exhibit 14 --

22          MR. HARRINGTON:  No, I --

23          THE COURT:  -- to the City's reply brief.

24          MR. HARRINGTON:  No, I understand.

25          THE COURT:  You've seen it.

1      MR. HARRINGTON:  Yes.  I know.  Where he's talking

2  about how, I think it was about the soft lead and talking --

3  correct me if I'm wrong.  Right?  Where he's talking about

4  the soft lead, he would expect to have seen more damage to

5  the, to the bullet.  He's just providing evidence in support

6  of that.

7      And look, I don't disagree that that evidence

8  brings it closer to whether or not he has a claim, but

9  there's still an incredible hurdle that has to be overcome to

10 get the conviction over --

11     THE COURT:  Is it fair to say that at least as

12 early as the time frame 2009 through 2012, time frame of

13 these exhibits that are attached to the City's reply, that

14 Mr. Ricks and his ballistics consultant, Mr. Townsend, and

15 the people at the Michigan Innocence Clinic, Project Clinic

16 that we're investigating this case for Mr. Ricks, with him,

17 all had reasons to believe that the ballistics evidence in

18 this case was simply wrong and bad evidence, and upon

19 retesting would lead to, it would lead to setting aside the

20 conviction?

21     MR. HARRINGTON:  Okay.  If I can break --

22     THE COURT:  Now, that last part is a little

23 trickier than the first part of my question.

24     MR. HARRINGTON:  Right.  Because the last part of

25 your question --

1          THE COURT:  You got to find the bullets.

2          MR. HARRINGTON:  Well --

3          THE COURT:  The real bullets you got to find.

4          MR. HARRINGTON:  Right.  But the last part of what

5 you just said is to overturn the conviction which presumes

6 that you can anticipate, number one, what a judge is going to

7 do, what an appellate court is going to do, and what the

8 highest court would do.  So that presumes quite a bit.

9          And one thing that my father taught me, who is an

10 attorney, is you never presume ever, ever, ever what a judge

11 is going to do.  So I think all that he can really assume is

12 that he is building and trying to build a case.

13          I mean, it's clear, there's no doubt he's trying

14 to, one, he's trying -- not trying to build a case, trying to

15 get out of prison for a crime he never committed.

16          But number two, he's trying to build evidence to

17 do just that.  But to make -- to have that evidence and to

18 take that leap to say that he knows, reasonably knows, that a

19 judge is going to side with him I think is way too far

20 tenuous and it comes back to the Hail Mary and it doesn't

21 fall within the fair contemplation because it is so tenuous.

22 Because it would require --

23          THE COURT:  In your view, when did it become not

24 so tenuous?  When in time?

25          MR. HARRINGTON:  When he was --

1       THE COURT: What event and when did it happen that
2 it became not so tenuous? We know in 2017 there came a time
3 when the conviction was vacated, I presume, or charges were
4 dismissed. It was over. He was freed. But at some point
5 before that event it must have become apparent that he had a
6 strong case for vindication.

7       MR. HARRINGTON: I will say this, and I know
8 you're going to say, Mr. Harrington, now you're arguing
9 accrual, but this is a rare circumstance where I believe the
10 roads have merged, and I believe that at the time that that
11 reversal of the conviction came down, was inked at that time,
12 and maybe even I would go so far as to say after all
13 appellate remedies have been expired, at that point in time
14 would be the time when we would apply his contemplation of
15 the claim.

16       Going through the fair contemplation analysis, I
17 think we get to the same location that you do under the
18 accrual, because otherwise to apply to, to -- because really
19 what it requires is, is it requires Mr. Ricks to have a
20 reasonable belief that the judge is going to set aside the
21 conviction. And I don't know a person in this world that
22 could ever reach that conclusion. It's just not possible.

23       And also, I'm not trying to go backwards or
24 sideways on anything. You know, or position obviously is
25 that we would ask that you deny the City's motion, or

1 alternatively abstain and have this heard by the District

2 Court, as one of the other cases have, and plus that this

3 case --

4        THE COURT: Well, wait a minute. You're saying if

5 I'm not inclined to -- if I'm not going to rule for you, I

6 should -- I should not rule and let the District Court

7 decide. But otherwise, you want me to decide.

8        MR. HARRINGTON: Judge, I'm just being an

9 advocate.

10        THE COURT: I mean, you can't do that. You can't

11 argue that. You want this Court to decide this, or don't

12 you?

13        MR. HARRINGTON: I want you to decide this, Your

14 Honor.

15        THE COURT: All right.

16        MR. HARRINGTON: I think I'm right on the

17 position.

18        THE COURT: But you want this Court to decide it.

19 You don't want me to abstain.

20        MR. HARRINGTON: No, Judge, I want you to decide

21 it.

22        THE COURT: Okay. All right. All right.

23        Well, so when -- the conviction was vacated, I

24 guess. Is that the right term?

25        MR. HARRINGTON: Yeah. Yeah. It was over --

1  yeah.  Overturned.

2          THE COURT:  What's the correct terminology of what

3  happened?  Some circuit judge, some Michigan circuit judge

4  vacated the conviction?   What was it?

5          MR. HARRINGTON:  For lack of a better term, I'm

6  just, I'm going to go with the --

7          THE COURT:  Maybe it's in your first amended

8  complaint.  But what happened exactly?

9          MR. HARRINGTON:  May I have just one second, Your

10  Honor?

11          THE COURT:  Yeah.  Uh-huh.

12          MR. HARRINGTON:  Because I don't believe that I --

13          THE COURT:  I'm looking at paragraph 78 of your

14  first amended complaint.  It's exhibit 6 to the City's motion

15  in this case, docket 13,000.

16          Well, it says when he was released.  Paragraph 78

17  says the day he was released from prison.  Paragraph 79 says

18  June 1, 2017, charges were dismissed by the Wayne County

19  Prosecutor's Office.  Maybe it doesn't say when the

20  conviction was actually vacated, or what.  Or is it in there

21  somewhere?

22          MR. HARRINGTON:  I'm looking, as well, Your Honor.

23  I apologize for not having it in my --

24          THE COURT:  I thought I saw somewhere, maybe I'm

25  thinking of a different case, but where some state court

1  vacated the conviction, ordered a new trial, did something.

2          MR. HARRINGTON:  Just a moment, Your Honor.

3          THE COURT:  Yeah.  Uh-huh.

4      (Pause)

5          MR. HARRINGTON:  What I do have, Your Honor, is

6  there is exhibit 4.  It looks like it was exhibit 4 to the

7  City of Detroit's motion dated June 1st, 2017, of a

8  motion/order of nolo -- I apologize for lack of

9  pronunciation, but *nolle p-r-o-s-e-q-u-i*, meaning that

10 they're not going to prosecute, and the case was dismissed

11 without prejudice.  And I think for --

12         THE COURT:  Okay.  Hold on one second.  I'm

13 looking at the City's exhibit 4, it's docket 13,000 in this

14 case.  Hold on.

15         MR. HARRINGTON:  I'm sorry, Your Honor.

16         THE COURT:  It's docket number 13,000 in this

17 case.  The motion, City motion, I'm looking at it.  It's

18 exhibit 4 you've just cited me to, right?

19         MR. HARRINGTON:  It looks like -- I apologize.  It

20 looks like it's exhibit -- if you look at exhibit 6, it's the

21 amended complaint, and it's exhibit 4 to the amended

22 complaint.

23         THE COURT:  Oh, I see.  Yeah.  All right.  I think

24 I'm there.  Hold on.

25         MR. HARRINGTON:  And that looks like the order.

1          THE COURT:  Okay.  It's State of Michigan, Third

2    Judicial Circuit, Wayne County, motion/order of *nolle*

3    *prosequi,* and there is a motion, I presume, by the

4    Prosecutor's Office, and an order granting that motion,

5    saying the motion is granted and the case is dismissed

6    without prejudice, June 1, 2017, signed by the judge.  That's

7    what you're talking about, right?

8          MR. HARRINGTON:  Yes.

9          THE COURT:  Okay.  So that would be when the,

10   basically when the City moved to dismiss the case and --

11   criminal case, and the judge granted it.

12          At some point before that date was there --

13   there's a conviction, a judgment of conviction and sentence

14   on the books before -- it must have been, something must have

15   been done with it before there could be a dismissal of the

16   case.  I mean, I'm just assuming, I'm guessing that that's

17   got to be true.  Was there some order that preceded this June

18   1, 2017 order that vacated the conviction, for example?  Do

19   you know?

20          MR. HARRINGTON:  I don't know.  At the -- I could,

21   I'd be happy to give you more procedural history on

22   supplemental briefing and I could limit it to two pages.

23          THE COURT:  Well, I'm kind of working my way

24   backwards a little bit in time chronologically.  And what I'm

25   trying to get to is, part of what I'm trying to get to is, at

1  some point -- assuming there was an order at some point in,

2  let's say in some time in 2017, before June 1, vacating the

3  conviction ordering a new trial, doing something that took

4  the conviction off the books and restored the case as a

5  pending criminal case that had to be dealt with, there must

6  have been a motion, a briefing, some sort of presentation to

7  the Court, even if it was just a stipulation between Mr.

8  Ricks and the Prosecutor's Office, something that triggered

9  that action by the Court.

10         And I'm asking, you know, what was that, and when

11  was that filed?  And in sort of working backwards it's, you

12  know, at some point, at least potentially, at some point

13  before there was actually an order vacating the conviction,

14  there must have been a reasonable anticipation by Mr. Ricks

15  or his attorneys that the conviction would be vacated.

16         MR. HARRINGTON:  Can I make a comment?

17         THE COURT:  And the question is:  When did that

18  happen?

19         MR. HARRINGTON:  Let me make a comment.

20         Hypothetically, if there was some type of motion

21  for a new trial, based on either newly discovered evidence or

22  something of that kind, and let's say the judge granted --

23  and I'm, and I'm -- literally, Judge, I'm just speaking out

24  of -- off the cuff.  If there was some type of motion for a

25  new trial, and say the judge granted it, I think you're

1  asking me, Mr. Harrington, okay, I see this order where

2  they're saying they're not going to prosecute anymore, but we

3  do know that there was a conviction, so we have this window

4  of time.

5       What happened in that window to get us to this

6  order that says no conviction?  Was there a motion for new a

7  trial that was granted by the judge?  Was there some, as you

8  say, stipulation?

9       And as I stand here today, Your Honor, I don't

10  have the answers to that.  I could have those answers to you

11  on extremely short order.  I can limit it to one to two pages

12  of just bullet point dates with the appropriate exhibits for

13  you to examine.  I just don't have those at my fingertips

14  now, and I --

15       THE COURT:  Well, the record in -- strictly

16  speaking, the record in this bankruptcy case, I think, does

17  not show when there was this new testing of bullets, which I

18  thought I remembered that there was new testing of bullets,

19  that showed that the bullets, the actual bullets that were

20  recovered from the deceased victim's body were not a match to

21  the gun that was connected to Mr. Ricks through his mother.

22       But there may be something about that in the

23  District Court record, which, of course, has -- you know, the

24  motion for summary, the cross motions for summary judgment

25  have a million exhibits.  There's tons of stuff in there, and

1  I didn't go and look through all that.  But do you know that?

2  Was there new testing that basically triggered this relief

3  from the conviction?

4        MR. HARRINGTON:  Well, I know that -- yes, I know

5  that there is testing from David Ballish, who is a retained

6  expert.  I know there is -- here's what I don't know, and I

7  know you want answers to this and I don't know the dates of

8  when that occurred.

9        And from listening to this Court, I do think that

10  it's important that we have those dates because I think it

11  would help analyze this.  But I don't have those dates, Your

12  Honor.

13        THE COURT:  You don't know offhand if there's

14  anything in the record of the District Court that I can look

15  at to get me to get that information?  I know if we dig, it

16  might be in there.

17        But I'm asking whether you happen to know offhand

18  where that may be, where that is in there.  I presume it

19  would be, if it's anywhere, it would be in one or more of the

20  summary judgment exhibits.

21        MR. HARRINGTON:  We would -- we would have to

22  consult with the motion, cross motions.

23        THE COURT:  As I said, there's a lot of exhibits

24  there.

25        MR. HARRINGTON:  Right.  We had two people from

1 our appellate department --

2          THE COURT:  Yeah.

3          MR. HARRINGTON:  -- writing it.  And I'm more of

4 trial counsel on the case --

5          THE COURT:  Okay.

6          MR. HARRINGTON:  -- and so I'm not going to -- I'm

7 not going to make anything up and I'm not going to

8 misrepresent and just say, yeah, it's there and just hope it

9 is.  But I would -- I'm making an oral request, I guess, to

10 be able to issue the Court supplemental briefing on these

11 just narrow issues and for the factual basis.

12          THE COURT:  Your view, I take it from what you've

13 said, of the fair contemplation test as applied in this case

14 is that the issue is at what point did Mr. Ricks first have

15 enough information to give him -- to justify a reasonable

16 belief, reasonable belief, that his conviction would be set

17 aside?

18          MR. HARRINGTON:  In June of '17 when --

19          THE COURT:  No, I'm saying --

20          MR. HARRINGTON:  Oh, I'm sorry.

21          THE COURT:  -- that's your view of how the -- what

22 the issue is under the fair contemplation test in this case.

23 Is that right?

24          MR. HARRINGTON:  Yes.  When -- yes.

25          THE COURT:  And --

1          MR. HARRINGTON:  I mean, that's --

2          THE COURT:  And how do we know when that was?

3          MR. HARRINGTON:  That's what I was just going to

4    say.

5          THE COURT:  Based on what's currently in the

6    record.

7          MR. HARRINGTON:  Well, I guess what we can look at

8    is the order of the June -- exhibit 4 of the of first amended

9    complaint, that is exhibit 6, to the Defendant -- the City of

10   Detroit's motion where -- it would be June 1st, 2017, where

11   they're not going to prosecute.

12         Where that decision is made, I believe that would

13   be -- that would be the time.  Because I -- and I think your

14   question, if I heard you correctly, was, Mr. Harrington,

15   based on the record that's in front of me, meaning the

16   motion, your response, and the reply.  Is that what you're

17   asking?

18         THE COURT:  Yeah.  I'm not including the District

19   Court record at this point.

20         MR. HARRINGTON:  That's what I thought.

21         THE COURT:  Though this Court I think technically

22   can take judicial notice of anything that's filed as a matter

23   of public record over in that District Court case.  It's

24   available to me electronically as I'm sitting right here at

25   my computer.  But, yeah.  Well, you're pegging it at the date

1   on which, the earliest date upon which the *Monell* claim could

2   have, could be deemed to have accrued. That's where you're

3   saying they merge. It's the same date.

4           MR. HARRINGTON: Yeah. Under the analysis of fair

5   contemplation versus accrual, whether you walk through the

6   steps of the fair contemplation, it ends up being the same

7   date as the accrual.

8           THE COURT: So how do we know though -- how do we

9   know that there wasn't some date or time before June 1, 2017,

10  and perhaps well before that time, when Mr. Ricks knew enough

11  of the facts, or knew facts that would give -- that would

12  justify a reasonable belief that his conviction would be set

13  aside?

14          MR. HARRINGTON: Sure. That's fairly -- I can

15  answer that. That's, in my mind, I think fairly simple.

16  Because if it's let's just say a set aside, and the

17  conviction was overturned, but let's say it comes about

18  through a motion for a new trial, well there is still a new

19  trial that is in place and the prosecutors could still have a

20  -- get a conviction.

21          And so if Mr. Ricks was to have immediately have

22  filed his 1983 *Monell* claim while this -- while the Wayne

23  County Prosecutor's Office still has the case open and

24  pending, well, if they go and get a conviction again, and

25  he's got his 1983 *Monell* claim, it all goes away. There is

1  no case.  I mean, it's -- it would be summarily dismissed on

2  its face, really, by 12(b)(6).  It wouldn't even -- I mean,

3  maybe Rule 56, but it would be -- it would be just gone.

4           THE COURT:  Well, what I'm getting at is it seems

5  to me that the record before me in this bankruptcy case, that

6  is the papers filed by the City and by you, your side,

7  relating to this motion, including these exhibits attached to

8  the City's reply brief, maybe don't necessarily enable this

9  Court to answer the question:  Was there a time before June

10  1, 2017, when Mr. Ricks had facts, knew facts, that would

11  justify a reasonable belief that his conviction would be

12  vacated and that he would not again be convicted?

13           You know, if, just hypothetically speaking, on,

14  you know, June 1, 2013, a month before the City filed its

15  bankruptcy case, facts came to light, facts became known that

16  made it clear that -- evidence and facts that made it clear

17  that Mr. Ricks was wrongfully convicted and that he -- that

18  the City had no -- or the county, county prosecutor had no

19  hope of convicting him in a new trial of this murder, then it

20  would seem to me under that hypothetical situation, clearly

21  under the fair contemplation test, the claim had to -- would

22  have to be deemed to have arisen at that time, pre-petition.

23  Do you see what I'm saying?

24           MR. HARRINGTON:  Yeah.  And if it -- can I add to

25  that, if I may?

1         THE COURT: So what I'm -- what I'm getting at is,

2 it seems to me the record doesn't, at present, doesn't

3 necessarily permit this Court to conclude that that time,

4 that time when that happened, that fair contemplation first

5 happened under the test you -- the way you framed the issue,

6 didn't have pre-petition before the June -- the July 2013

7 bankruptcy case filed.

8         MR. HARRINGTON: I agree with you. And if I may

9 add, for example, if there was something in the record where

10 the prosecutor's office walked into his cell and said, you

11 know, we've been looking over everything that you've

12 submitted to us. We've just got some paperwork to go over,

13 the City, Mr. Ricks, even though it wasn't our doing, screwed

14 up. You have a great case. We're going to do this

15 paperwork, your case will be dismissed, and then we want you

16 to file your 1983 claim against the City.

17         Now, pretty sure that didn't happen, but it would

18 -- I would be hard pressed to argue the position that I'm

19 arguing before this Court if those were the facts. Because

20 if at that time, and say, you know, I'm sorry the date and

21 year, the 2000 -- you know, pre-petition stuff, if that, if

22 that conversation happened under the reasonable contemplation

23 as to whether or not he has a case, he's being told by the

24 people prosecuting him that he does.

25         THE COURT: Well, but you don't have to go that

1    far to get to fair contemplation.

2              MR. HARRINGTON:  I know.  But --

3              THE COURT:  I mean, there's some -- let me, let me

4    ask it this way.  There's some event, or events, that

5    occurred that basically triggered or opened the door for Mr.

6    Ricks to get his conviction vacated and to be freed.

7              MR. HARRINGTON:  Yes.

8              THE COURT:  What was it?  Was it new ballistic

9    testing?  What was it?

10             MR. HARRINGTON:  It was the culmination of all of

11   the evidence that he had been getting.  But is the question

12   that you're asking me, is it what was the triggering event

13   through the court process that --

14             THE COURT:  What occurred.  What occurred that

15   made it possible, or even likely, or even inevitable, that

16   this conviction was going to be vacated?  What occurred?

17             MR. HARRINGTON:  Based on the record that you have

18   in front of you, I believe, Your Honor, that it is an

19   insufficient record to answer that exact question.

20             THE COURT:  Is there anything in your first

21   amended complaint which is in the record here in this case

22   that would give any clues about that?  That's a long

23   complaint, and I didn't read every paragraph, I confess.  I

24   was looking at things, certain specific things in there at

25   the time, and didn't go through and read them all.

1          MR. HARRINGTON:  Well, I'm going to start with,

2  again, with exhibit 4, which is the order that we've talked

3  about.  You also have, you know, the exhibit 3.  You also

4  have ballistics, you know, ballistics testing.  Same with

5  exhibit 2, there's forensic laboratory testing.  And those

6  are dated in March of 2017, November 2017.  And then the

7  order of the dismissal, or the nolle prosecution, ending up

8  dismissing the case was June 1st of '17.  So all three of

9  those pieces of evidence were obtained post-petition.

10         THE COURT:  Okay.  So you're pointing me to

11  exhibits to your first amended complaint that are in the

12  record in this case?

13         MR. HARRINGTON:  Yes, Your Honor.

14         THE COURT:  What about allegations in the first

15  amended complaint?  Do any of those shed a light on the

16  timing of these events that triggered the vindication,

17  essentially, of Mr. Ricks?

18         MR. HARRINGTON:  And specifically focusing on when

19  that date occurred?

20         THE COURT:  What the events were and when they

21  occurred, or at least what the events were.

22      (Pause)

23         MR. HARRINGTON:  I'm reading through paragraph 48

24  on page -- it looks like it's page 12, Your Honor.

25         THE COURT:  I see that.

1    MR. HARRINGTON:  That talks about testing done by

2 Detective Sergeant Dean Molnar.  He conducted some type of,

3 it looks like, test in April, May of 2017.

4    THE COURT:  I see that.  Anything else?

5    MR. HARRINGTON:  I'm going through it as I flip

6 the pages, Your Honor.

7    (Pause)

8    MR. HARRINGTON:  On -- again, and I turn back to

9 paragraph 78 which you had previously identified, talking

10 about May 26 when he was released from the Ionia Correctional

11 Facility.

12    THE COURT:  I mean, his conviction must have been

13 vacated, you would think, before that date, right?  There's

14 nothing in the first amended complaint, is there, showing

15 what happened to his conviction in that way.

16    MR. HARRINGTON:  And I've flipped through it and

17 I've read it, Your Honor.  No, I don't -- I don't believe

18 that's in there.  And as I've stated, I'd be, I'd be happy to

19 provide that with this Court.

20    THE COURT:  All right.  Anything else in the first

21 amended complaint you want to point me to?

22    MR. HARRINGTON:  No, Your Honor.

23    THE COURT:  Okay.  What else would you like to say

24 about the motion, then?

25    MR. HARRINGTON:  No, I have nothing else to add,

1   Your Honor.  Thank you for being so well read.

2            THE COURT:  All right.  Thank you.

3            Mr. Swanson, you may briefly reply in support of

4   your motion, if you would like.

5            MR. SWANSON:  Your Honor, two points.  The first

6   is, I wanted to correct something I said earlier.

7            In the City's summary judgment brief in the

8   District Court case, docket number 91, case 17-12784, on page

9   34, the City does argue that Plaintiff's claims are barred by

10  the applicable statute of limitations because accrual occurs

11  when a plaintiff has a complete and present cause of action.

12  That is when the plaintiff can file suit.

13           The City thus argued that all of Plaintiff's

14  claims in the Federal District Court action, I guess,

15  including those against the City, were time-barred under the

16  applicable statute of limitations.

17           THE COURT:  What does that have to do with

18  anything?  What's the point of that, of the -- of you making

19  this point?

20           MR. SWANSON:  Well, that the statute of

21  limitations would presumably run when the cause of action

22  accrued.  And the City's arguing and --

23           THE COURT:  When does the -- does the City make an

24  argument about when the cause of action accrued in that paper

25  there?

1          MR. SWANSON:  Well, it argues that the -- that Mr.

2   Ricks was free to file suit in 1992 on all of his claims.

3   And because he didn't file suit then when the cause of action

4   accrued, that that all of the claims are barred by statute of

5   limitations.

6          THE COURT:  Well, I must have misunderstood, then.

7   I thought the City, in connection with this motion, basically

8   was not disputing that the claim, the *Monell* claim, did not

9   accrue until the Ricks conviction was vacated, and that

10  didn't occur until 2017.

11         MR. SWANSON:  The City has taken --

12         THE COURT:  Isn't that what -- isn't that what you

13  were agreeing to?

14         MR. SWANSON:  Well, I tried to say, Your Honor

15  I -- you know, I had not looked into that and had not taken a

16  position.  I pointed the Court to a quote from the *Sanford*

17  case, but I didn't take a position on that issue in my

18  pleadings, and then I went --

19         THE COURT:  Well, what's the City -- tell me in

20  more detail, what's the City's argument about this in the

21  City -- in the Ricks case.

22         MR. SWANSON:  Sure.

23         THE COURT:  The cause of action under *Monell*

24  accrued in 1992, is the City saying?

25         MR. SWANSON:  In Michigan, a three-year statute of

1  limitations applies to federal claims brought under 43 U.S.C.

2  1983, citing a *Scott* decision from the Sixth Circuit.

3         THE COURT:  Yes.

4         MR. SWANSON:  And a *Wallace* decision from the

5  Supreme Court.

6         Quote, "Accrual occurs when the plaintiff has a

7  complete and present cause of action, and that is when the

8  Plaintiff can file suit," close quote.

9         The limitations period for Plaintiff's claim for

10  intentional infliction of severe emotional distress is also

11  three years, citing MCL 600.5805 subsection --

12         THE COURT:  Focus on the *Monell* claims, would you?

13         MR. SWANSON:  Sure.  I think they --

14         THE COURT:  That's the only claim that's asserted

15  against the City.  *Monell* is, right?

16         MR. SWANSON:  *Monell* is the only claim that's

17  asserted.

18         THE COURT:  It's number one in the first amended

19  complaint.

20         MR. SWANSON:  That's right.

21         THE COURT:  What does the City say about the

22  statute of limitations with respect to that claim in their

23  summary judgment motion in the City case -- in the Ricks

24  case?  Anything?

25         MR. SWANSON:  In 1992, there was no bar to play to

1  bringing suit against the City of Detroit and its police

2  officers.  Plaintiff failed to do so, and, therefore, his

3  claims are barred.

4          THE COURT:  And the statute of limitations is how

5  long?

6          MR. SWANSON:  Three years.

7          THE COURT:  The City says?

8          MR. SWANSON:  Yes.

9          THE COURT:  Three years.  Well, what about this

10 concept, is the City simply -- is the City saying the *Monell*

11 claims accrued in 1992 in that brief?

12         MR. SWANSON:  Yes.

13         THE COURT:  It is?  Is there -- what authority is

14 there for that proposition?

15         MR. SWANSON:  It cites *Scott v. Ambani*, 577 F. 3d

16 642, 646, a Sixth Circuit case, 2009.

17         THE COURT:  What about the *Heck* case?

18         MR. SWANSON:  The *Heck* case talks about malicious

19 prosecution.  I don't necessarily think that applies to a

20 *Monell* claim against a municipality.

21         THE COURT:  Okay.  So now are you -- are you now

22 saying that the City, in support of this motion in this

23 Court, is now saying that the *Monell* claims asserted in count

24 1 of the first amended complaint of the City in the Ricks

25 action against the City accrued in 1992?

1          MR. SWANSON: Yes.

2          THE COURT: They did. Okay. Now that, of course,

3 is not an argument you made in your reply brief.

4          MR. SWANSON: That's correct.

5          THE COURT: Or in your motion. In your reply

6 brief you said accrual isn't the test.

7          MR. SWANSON: Yeah. We don't think accrual is the

8 test.

9          THE COURT: It's fair contemplation. It's not

10 accrual.

11          MR. SWANSON: Yeah.

12          THE COURT: You know, if the -- if the claim

13 actually accrued before the bankruptcy was filed, even under

14 the accrual test, this claim would be barred by the discharge

15 order. Right?

16          MR. SWANSON: That's correct. I think Plaintiff

17 is -- to the City it's really not relevant when the claim

18 accrued, because the Court does not apply the accrual test.

19          The Court looks at the facts and circumstances

20 underlying this claim. The Court, in its opinion --

21          THE COURT: Well, if the claim accrued under non-

22 bankruptcy law pre-petition, isn't it always going to be

23 deemed a pre-petition claim under the fair contemplation

24 test?

25          MR. SWANSON: I think Plaintiff here would argue

1  that even if it accrued it wasn't within Plaintiff's fair

2  contemplation until the conviction was overturned, and

3  thus --

4       THE COURT:  You're not answering my question.

5  They're saying it didn't accrue until the conviction was

6  vacated.  They're saying that, and they're citing *Heck*.

7       But my question is:  Isn't it always going to be

8  the case that if a cause of action actually accrued under

9  applicable non-bankruptcy law before the bankruptcy petition

10  was filed, that claim is going to be deemed a pre-petition

11  claim under the fair contemplation test.

12       MR. SWANSON:  The fair contemplation test does not

13  include as a factor the date that the claim actually accrued.

14  And thus, you know, I haven't thought of --

15       THE COURT:  Well, it includes all relevant

16  circumstances.

17       MR. SWANSON:  Yes.

18       THE COURT:  Right?

19       MR. SWANSON:  I mean, it --

20       THE COURT:  All the circumstances surrounding a

21  particular claim, including the Debtor's conduct, the party's

22  pre-petition relationship, the party's knowledge, elements of

23  the underlying claim.

24       So I would think courts could consider if the

25  claim accrued under non-bankruptcy law, pre-petition,

1  certainly that would be a factor, if not conclusive, very

2  close to being conclusive, in establishing that it's a pre-

3  petition claim under the fair contemplation test, don't you

4  think?

5          MR. SWANSON:  I'm not going to argue with that

6  point.

7          THE COURT:  I'm trying to think.  It's kind of

8  hard for me to think of a situation where that wouldn't be

9  the case.

10         So if the claim really did accrue before the

11  conviction, Mr. Ricks' conviction was vacated, or whatever

12  happened to it, that puts a whole new light on this issue, I

13  think.

14         MR. SWANSON:  It very well might.  In the Court's

15  opinion that I cited in my reply there was, I believe, some

16  uncertainty in terms of whether those claims had accrued

17  under non-bankruptcy law prior to the petition date.  The

18  claims of Tanya Hughes, for one.

19         And this Court wrote, you know, that certainty is

20  not the standard.  It's not the standard that the Plaintiff

21  knew for sure that the claim had accrued or that they for

22  sure had a claim that which could be asserted.

23         The Plaintiff here professed his innocence from

24  day one, and starting in 2011, he employed, or he utilized,

25  the services of an investigator, a paralegal, a team of

1  lawyers, and his previous expert, to prove his innocence.  He
2  was -- he was telling all of these people that he had a claim
3  against the City of Detroit because he was unlawfully
4  convicted.

5         And he was pointing to the same evidence which
6  allegedly resulted in him being freed from prison.  In his
7  own words he had a claim in 2011.  We know it because he said
8  it.

9         Under the fair contemplation test rarely do you
10  get evidence that's this crystal clear that a Plaintiff knew
11  that they had a claim.  I mean, he said it in the letter, and
12  people on his behalf were telling the U.S. District Attorney
13  that he had a claim.  If that's not enough, I don't know what
14  does it.  All of the conduct here, again, occurred in 1992.
15  We have the Plaintiff on record --

16         THE COURT:  Is it enough under the fair
17  contemplation test for a claimant to subjectively think they
18  have a claim, or believe they have a claim, if that belief is
19  not objectively reasonable at the time?

20         MR. SWANSON:  Yes.

21         THE COURT:  You think it is?

22         MR. SWANSON:  I think if the Plaintiff believes
23  that they have a claim against the City that's within their
24  fair contemplation.  I mean, their subjective belief is part
25  of the fair contemplation test.  What do they believe?  Do

1  they believe they have a claim against the City or not?  We

2  don't necessarily need all of the objective evidence to line

3  up before the bar date for this Court to hold that a claim

4  within the Plaintiff's fair contemplation against the City.

5       I mean, as this Court wrote, Congress included the

6  words "contingent," "unmatured," "disputed" within the

7  definition, Section 1015, of the term "claim."

8       This Court also wrote that Congress used those

9  words because it wanted to adopt the broadest definition of

10 claim possible.

11      I don't see how this Court could rule that a

12 plaintiff who was putting down in writing and telling people

13 prior to the City's bankruptcy case that he had a claim

14 against the City, that that claim wasn't within his fair

15 contemplation.  I mean, he was asserting a claim.  He was

16 telling people he had a claim.  I don't know what else,

17 really, could cause the Court to rule that this was within

18 his fair contemplation.

19      Again, Your Honor, certainty is not the standard.

20 What Plaintiff continues to argue is that we have to wait

21 until this claim accrued under their theory of when accrual

22 occurred, and that's not the test.  The test is fair

23 contemplation, and we should take it from Mr. Ricks' own

24 words.  He knew he had a claim before the City filed for

25 bankruptcy.

1          Thank you.

2          THE COURT:  All right.  Thank you, both.  I'm

3  going to rule on this motion now.

4      (Pause)

5          THE COURT:  With respect to jurisdictional

6  matters.  First of all, this Court has subject matter

7  jurisdiction over this bankruptcy case and this contested

8  matter that's represented by the City's current motion and

9  which, of course, is contested by the Ricks plaintiffs.

10         And this is a core proceeding, and all of this is

11  true for the very same reasons that I stated that the matters

12  before me in the published opinion that I'm going to cite

13  were covered by the Court's subject matter jurisdiction and

14  were core proceedings.

15         And also, by the way, proceedings in which the

16  Court reserved jurisdiction to rule in the confirmed Chapter

17  9 plan.

18         The case, the prior case, of course, is the case

19  that the parties are aware of and the City cited in its

20  papers, and that's *In re City of Detroit, Michigan*, reported

21  at 548 Bankruptcy Reporter 748, and in particular the section

22  of that opinion at page 753 to 754 that's labeled Roman

23  numeral II jurisdiction.  I incorporate by reference what I

24  said there in that section, in that prior opinion, in this

25  bench opinion that I'm now giving as the basis for why the

1 Court has subject matter jurisdiction over this contested

2 matter and why this contested matter is a core proceeding.

3 That prior opinion I'll just, I'll refer to it as

4 this Court's 2016 opinion. That's the opinion that I just

5 cited.

6 And by the way, that was a decision of this Court

7 from 2016. It's the same opinion that was cited by the U.S.

8 District Court in the *Sanford* case, which the City has

9 attached to its reply brief, and which is reported at 2018

10 Westlaw 6331342, *Sanford versus City of Detroit,* a decision

11 of the U.S. District Court for this District from December 4,

12 2018. Judge Lawson is the district judge in that case.

13 That's the *Sanford* case, and I may refer to that, as well, in

14 this bench opinion.

15 Going back to my published 2016 opinion and

16 decision, however, I do reiterate and incorporate by

17 reference into this bench opinion, everything I said about

18 the applicable law, that is the law applicable to determining

19 whether a given claim or claims arose for bankruptcy purposes

20 before a bankruptcy petition was filed. And that discussion

21 is in the 2016 published opinion at 548 Bankruptcy Reporter

22 at pages 761 through 763.

23 In that part of the 2016 opinion, that's where

24 this Court discusses a couple of concepts that are key to the

25 issue before me on the present motion. And that is, first,

1  the concept and the rule of law, which is that in order to

2  have a pre-petition claim, that is a claim that is deemed to

3  have arisen before the filing of the bankruptcy case.  It is

4  not necessary for the claim to have accrued under an

5  applicable non-bankruptcy law such that a lawsuit could be

6  filed on it and sustained in the sense that all the elements

7  of the cause of action had accrued before the bankruptcy

8  petition was filed.

9        At 548 Bankruptcy Reporter, at 762 to 763, I

10  discussed that.  It's sometimes referred to as the accrual

11  test for determining when a claim arises.  Another name for

12  it sometimes given in the case law is it's sometimes called

13  the, quote, "right to payment," unquote test.  As described

14  in my prior opinion, 548 Bankruptcy Reporter, at 762 to 763,

15  that tests provides that a claim arises for bankruptcy

16  purposes only after each element of the claim has been

17  established.

18        It's essentially an accrual test.  As I said,

19  however, and reiterate now, but as I said in the 2016

20  opinion, that test had been widely rejected.  And this Court

21  rejected it in my 2016 opinion, and I do so now for the same

22  reasons and based on the same authorities that I cited in my

23  prior published opinion from 2016.

24        The second point is that instead of an accrual or

25  right to payment type test, or some other test among possible

1  tests for determining when a claim arises for purposes of --

2  for bankruptcy purposes, the Court adopts -- did adopt, and

3  reiterates now, that the correct test is the so-called fair

4  contemplation test.

5         And as I described it in my prior opinion,

6  including 548 Bankruptcy Reporter at 763, that test looks at,

7  quote:  "Looks at whether there was a pre-petition

8  relationship between the debtor and the creditor, such as

9  contract exposure, impact, or privity, such that a possible

10  claim is within the fair contemplation of the creditor at the

11  time the petition is filed," unquote.  That's at page 763 of

12  my prior opinion, and I'm omitting citations here on that.

13         I further said, and reiterate now, but I further

14  said in the prior opinion the following:  Quote, "Under this

15  test a claim that's considered to have arisen pre-petition if

16  the creditor -- the creditor ascertained through the exercise

17  of reasonable due diligence that it had a claim at the time

18  the petition was filed.  This test, which the Court will

19  refer to as the fair contemplation test, has the advantage of

20  allowing the Court to examine all the circumstances

21  surrounding a particular claim, the Debtor's conduct, the

22  party's prepetition relationship, the party's knowledge, the

23  elements of the underlying claim, and use its best judgment

24  to determine what is fair to the parties in context,"

25  unquote.  That's 548 Bankruptcy Reporter at 763.  And again,

1  I'm omitting citations.

2        Now, in saying this, and in adopting and

3  describing the fair contemplation test, one has to -- the

4  Court bears in mind and reiterates, as I discussed in the

5  prior -- the 2016 opinion, as well, that a claim as defined

6  in the Bankruptcy Code, Section 101, Sub 5, includes a right

7  to payment that is contingent and a right to payment that is

8  unmatured, so that it is possible to have a contingent claim,

9  or an unmatured claim, that still is a claim that has arisen

10  for bankruptcy purposes as of the bankruptcy petition date,

11  even though as of that date the creditor could not have

12  successfully filed suit and prevailed on such a claim under

13  applicable non-bankruptcy law because some event had not yet

14  occurred that had to occur in order for there to be a valid

15  claim that met all the elements under non-bankruptcy law for

16  such a claim.

17        And I discussed that, again, I reiterate what I

18  said in the prior opinion, in particular at pages 548

19  Bankruptcy Reporter, at 761 to 763, about that subject.

20        Now, the Ricks Plaintiffs here, in opposing the

21  City's present motion, have argued, among other things, that

22  under applicable non-bankruptcy law Mr. Ricks, Desmond Ricks,

23  that is, who is the Plaintiff who asserts a claim against the

24  City in Count 1 of the first amended complaint in the U.S.

25  District Court action, did not have any claim that had yet

1  accrued against the City of Detroit when the City of Detroit

2  filed its bankruptcy petition in this Chapter 9 bankruptcy

3  case in July 2013, because as of that time Mr. Ricks'

4  conviction, which he says was a wrongful conviction,

5  essentially was still on the books.

6        It had not been vacated or reversed or in any way

7  successfully challenged as of the date of the bankruptcy

8  petition in this Chapter 9 bankruptcy case, so that he could

9  not at that time, at the time of the bankruptcy petition,

10  have successfully prosecuted a civil claim against the City

11  of Detroit of the type, or types, that are alleged in Count 1

12  of the first amended complaint in the District Court action,

13  so-called *Monell*-type claims against the City.

14        Mr. Ricks argues that that is the applicable non-

15  bankruptcy law, and they, I believe, cite the *Heck* case for

16  that proposition.

17        Now, it develops during -- it develops during,

18  really, the City's reply portion of today's oral argument

19  that the City may now be contending, at least in this Court,

20  that the so-called *Monell* claims that Mr. Ricks is asserting

21  against the City in the District Court action actually

22  accrued much earlier than the date in which Mr. Ricks

23  obtained a vacation, or a reversal, or undoing of some sort,

24  under state law of his conviction, which happened,

25  apparently, in 2017.

1    I will assume for purposes of ruling on the City's

2 motion in this case that Mr. Ricks is correct, his counsel

3 and he are correct, in arguing that he did -- his claim, his

4 *Monell* claims against the City did not accrue under non-

5 bankruptcy law until his conviction was vacated, and that

6 this did not occur until some time in the first half of 2017.

7    So I am assuming for purpose of ruling on the

8 City's present motion, then, that Mr. Ricks did not have any

9 claim, so-called *Monell* claim, against the City of Detroit

10 that had accrued under applicable non-bankruptcy law as of

11 the date the City filed its bankruptcy petition in July 2013.

12    As I indicated, however, that's not the end of the

13 inquiry, because the accrual test, also known as the right to

14 payment test, as I discussed earlier, is not the applicable

15 test to determine when a claim or whether a claim has arisen

16 for bankruptcy purposes.

17    Now, as I further discussed in the 2016 opinion,

18 in detail, and as is true here, if it's undisputed, and it is

19 certainly correct, as the City points out and argues in its

20 motion, that if Mr. Ricks claims that he's asserting in the

21 District Court action against the City of Detroit did, in

22 fact, arise for bankruptcy purposes before the July 2013

23 bankruptcy petition date in this case, then those claims are,

24 in fact, barred by the discharge and by the confirmed plan

25 and by the claims bar date order in this bankruptcy case,

1 which the City cites and quotes from in detail in its opening

2 motion.

3         And so, if Mr. Ricks' claims against the City of

4 Detroit are deemed to have arisen for bankruptcy purposes

5 pre-petition, in other words, before the July 2013 bankruptcy

6 petition date in this case, then those claims are indeed --

7 have indeed been discharged and may not be pursued, and the

8 discharge injunction, and the injunction in the confirmed

9 plan in this case bar Mr. Ricks from pursuing such claims.

10         So back to the fair contemplation test.  The City

11 points to 16 different exhibits, numbered exhibits 1 through

12 16, that are attached to its reply brief filed in this case

13 at docket number 13021, all of which I have reviewed and

14 which the City's counsel talked about in today's hearing, but

15 before the hearing, I did review those, as well.

16         And all of those documents, and certainly those

17 documents when taken in combination, do make clear, in my

18 view, that from -- during the time period June of 2009, or

19 roughly -- or rather, some time in 2009, all the way through

20 and as late as October of 2012 -- I'm sorry, all the way

21 through December of 2012, Mr. Ricks, Desmond Ricks, while he

22 was still in prison under the conviction for murder that was

23 later vacated and the charges which were later dismissed in

24 2017, Mr. Ricks, during this time period, this pre-bankruptcy

25 petition time period 2009 through December 2012, had reason

to know and to believe, and had knowledge of facts to know
and believe, that he had a claim, albeit a then contingent
claim, against the City of Detroit.

The type of claims that basically for claims that
led to his wrongful conviction and wrongful imprisonment for
roughly two decades or more, against the City of Detroit.

The claims admittedly were still contingent
because Mr. Ricks had not yet, as of the bankruptcy petition
date, obtained relief or vindication from his murder
conviction in State Court, so the claims had not accrued yet.
And that event had to occur before he could successfully
pursue the claims.

So it was a contingent -- they were contingent
claims as of the bankruptcy petition date, but he did have
reason.

And he could have ascertained through the exercise
of reasonable due diligence that he had a claim at the time,
existing prior to the time of the filing of the bankruptcy
petition in this Chapter 9 case, in July 2013.

Of course, all of the conduct, the allegedly
wrongful conduct that forms the basis of Mr. Ricks' claims
against the City, occurred in 1992. As the City correctly
points out, Mr. Ricks certainly knew that.

And all of the policies and practices of the City
that formed the basis of Mr. Ricks' *Monell* claims existed as

1   of March 1992.  This is all alleged in the first amended

2   complaint of Mr. Ricks in the District Court.

3         And the exhibits submitted by the City show that

4   Mr. Ricks not only believed, but had reason to believe, that

5   he had a valid claim against the City and the police officers

6   involved in the investigation and prosecution of the murder

7   case against him that led to his conviction in 1992, that he

8   had a valid claim and he was working hard and diligently to,

9   as I think to use the term Plaintiff's -- Mr. Ricks' counsel

10  used in hearing today, to build that case, to build that

11  claim, build evidence for that claim.

12        But it was certainly well within his fair

13  contemplation, based upon the conduct of the Debtor that had

14  occurred back in 1992, the parties, the pre-petition

15  relationship between Mr. Ricks and the City and the City's

16  police personnel involved, and the knowledge that Mr. Ricks

17  had before this bankruptcy case was filed, it was certainly,

18  under all those circumstances, it was, in my view, within the

19  fair contemplation of Mr. Ricks that he had a claim, albeit a

20  contingent claim, against the City of Detroit that existed

21  before the bankruptcy, this bankruptcy case was filed.

22        And so the Court does rule, and in my view is

23  constrained to rule give the very broad scope of the

24  definition of claim under the Bankruptcy Code, as I discussed

25  in the 2016 opinion that I published. and the case law under

1   that definition, the Court is constrained to rule that the

2   claims asserted by Mr. Ricks in his first amended complaint,

3   Count 1 against the City in the District Court case, are pre-

4   petition claims, claims that arose for bankruptcy purposes

5   before the bankruptcy case here was filed.

6           As a result, under the confirmed plan and the

7   applicable law and the orders of this Court, Mr. Ricks'

8   claims against the City were discharged, and Mr. Ricks is

9   enjoined from pursuing or prosecuting any such claims by the

10  Court's orders and by the discharge injunction that applies

11  in this Chapter 9 bankruptcy case.

12          And so for those reasons, the City's motion will

13  be granted.  I will enter an order granting that motion now.

14          Mr. Swanson, in looking at the proposed order that

15  was attached to your motion, I guess my first question is:

16  Do you still want the Court to enter the order in the form

17  that was attached to your motion, or do you have any

18  modifications to that proposed order that you want to ask me

19  to make?

20          MR. SWANSON:  Your Honor, we would be fine with

21  this order.  I think we've learned that two of the three

22  Plaintiffs are not asserting any claims against the City, so

23  --

24          THE COURT:  I saw that you said that in your reply

25  brief.

1          MR. SWANSON:  Yeah.

2          THE COURT:  Does that require any change in the

3    order, though?  Or you are saying it doesn't?

4          MR. SWANSON:  No, I don't think it does.

5          THE COURT:  I don't either.

6          MR. SWANSON:  Yeah.

7          THE COURT:  Now, what I will -- one thing I do

8    question or have concern about, and that is paragraph number

9    4 of your proposed order.

10          You go beyond -- in the order, you go beyond

11   requiring the Plaintiffs to dismiss the City from the pending

12   District Court action and enjoining them from asserting

13   claims.

14          In paragraph 4, you have the Court ordering that

15   the three Plaintiffs in the Ricks case are prohibited from

16   sharing in any distribution in this bankruptcy case.

17          Now, you said in your motion that none of these

18   parties have filed any proof of claim in the bankruptcy case,

19   timely or otherwise, and that's still true, I assume?

20          MR. SWANSON:  Yes.

21          THE COURT:  All right.  So there's no possible way

22   given that, that they presently would have any argument to

23   share in any distribution of the bankruptcy case.  So isn't

24   this paragraph 4 unnecessary?

25          MR. SWANSON:  Yes.

1          THE COURT:  All right.  So take it out.  I'll ask

2     you to -- well, here's what I'm going to do in terms of

3     substantive change to the order.

4          Paragraph 2 says, within five days of the entry of

5     this order, the three Ricks parties shall each dismiss, or

6     cause to be dismissed, et cetera, the City from the pending

7     District Court case.

8          The form I want to use is instead of saying five

9     days after order, I want to set a specific calendar date as

10    the deadline for that.  And normally, I would say no later

11    than one week from the day, that would be March 27.  So

12    that's the date I would pick.

13         Now, just logistically, is that, do you think,

14    going to be a problem for you logistically, Mr. Harrington,

15    for your side to comply if the deadline is March 27th?

16         MR. HARRINGTON:  I'm pulling up my calendar, if I

17    may, Your Honor.  If that's okay?

18         THE COURT:  Sure.

19         MR. HARRINGTON:  The 27th is fine.

20         THE COURT:  All right.  And I think that's

21    actually the date on which summary judgment reply briefs are

22    due in the District Court currently, in any case.

23         All right.  So make that change to paragraph 2,

24    Mr. Swanson.  It will say no later than March 27, 2019,

25    Desmond Ricks, et cetera, shall each, and so forth.  You see

1  that?

2        MR. SWANSON:  Yes, Your Honor.

3        THE COURT:  All right.  And you're taking

4  paragraph 4 out.

5        MR. SWANSON:  Yes, Your Honor.

6        THE COURT:  The rest of the order is fine.  I'll

7  make some non-substantive changes in the first paragraph of

8  the order to recite the fact that the Court held a hearing

9  today, and for reasons stated by the Court on the record, and

10  so forth, that sort of stuff.

11        MR. HARRINGTON:  Your Honor?

12        THE COURT:  But I'll take care of that.

13        Now, let me -- I'm going to come to you in a

14  minute.

15        MR. HARRINGTON:  Yes, Your Honor.  Thank you.

16        THE COURT:  Mr. Swanson, do you have any questions

17  about the form of the revised order to submit?

18        MR. SWANSON:  No, Your Honor.  Thank you.

19        THE COURT:  All right.  Now, Mr. Harrington, same

20  question to you, form of the order.

21        MR. HARRINGTON:  Yes, Your Honor.  With respect to

22  this case, there are other individual Defendants, the

23  officers involved, that aren't subject to this Court's ruling

24  and do have indemnity from the City of Detroit.

25        My problem with paragraph 3, it talks about

1 Desmond Ricks, Ms. Cobb, Ms. Ricks, are each permanently

2 barred, estopped, and enjoined, from asserting any claims

3 asserted in the --

4 THE COURT: I see what you're getting at.

5 MR. HARRINGTON: So I've got an issue with that.

6 THE COURT: Yeah. How would you change that

7 language to narrow that to make clear that this order is --

8 and certainly, I'm not ruling this way, and we're not -- the

9 order is not -- should not be interpreted to mean that these

10 Ricks parties are enjoined from pursuing their claims against

11 the individuals named in the pending action in their

12 individual capacity rather than in their official capacity.

13 MR. HARRINGTON: Sure. And it's quite simple. I

14 don't think paragraph 3 is necessary at all with a dismissal

15 order against the City. Well, then, it's quite simple. I

16 can't go take City property, but I can pursue through -- I

17 can pursue the officers, and the officers through their

18 bargaining agreement with the City, has indemnity.

19 So I pursue the officers, but then the City of

20 Detroit satisfies any judgment in the event that we prevail

21 against the officers on the claims.

22 THE COURT: Well, if the City indemnifies the

23 officers and ends up paying something in the case because

24 they're indemnified, in the capacity of indemnifying the

25 individual Defendants for claims asserted against them in

1  their individual capacity, then that's a matter -- that's not

2  a matter of right that the Plaintiffs have against the City,

3  the Ricks have against the City. That's, rather, at most, a

4  right that the individuals would have against the City.

5  Right?

6       MR. HARRINGTON: Right. But a broad

7  interpretation of paragraph 3 would affect the substantial

8  rights of my client.

9       THE COURT: Well, let's do this, and you tell me

10  why this doesn't take care of it.

11       I do want to keep an injunction in paragraph 3,

12  but change the wording a bit, and perhaps this. Paragraph 3

13  now instead would say, list the three individuals, and say,

14  each is -- are each permanently, and we don't need barred and

15  estopped, we'll just say permanently enjoined from asserting

16  claims asserted in the lawsuit -- well, or the rest of it.

17       Or claims arising from or related to the lawsuit

18  against the City of Detroit or the property of the City of

19  Detroit. That seems to me narrow enough to not create a

20  problem for you, but perhaps we can add a sentence that makes

21  it absolutely clear.

22       MR. HARRINGTON: I would like that, Your Honor.

23       THE COURT: How would you propose to word a

24  sentence to add to paragraph 3 to do that? What language

25  would you like?

1    MR. HARRINGTON:  Why don't we start with, any and

2  all claims made by Plaintiff against the individual officers,

3  David Pauch, Donald Stawiasz, S-T-A-W-I-A-S-Z, and Robert

4  Wilson, are unaffected by this Court's ruling --

5    THE COURT:  Hold on.  Any and all claims made by?

6    MR. HARRINGTON:  Plaintiffs against -- do you need

7  the names of the officers again, Your Honor?

8    THE COURT:  I can get the names from the first

9  amended complaint.

10    MR. HARRINGTON:  Thank you.

11    THE COURT:  Right?  It's the three that are listed

12  in the caption of the first amended complaint, right?

13    MR. HARRINGTON:  Are unaffected by this Court's

14  ruling.

15    THE COURT:  Or how about unaffected by this order?

16    MR. HARRINGTON:  By this order.

17    THE COURT:  Yes.

18    MR. HARRINGTON:  And Plaintiffs may recover any

19  proceeds that would be paid or payable by the City of Detroit

20  through its appropriate collective bargaining agreement, or

21  otherwise indemnity.

22    I mean, it's how it works in all of these 1983

23  cases against the individual officer, because the only claim

24  --

25    THE COURT:  Wait a minute.  Claims unaffected by

1  this order.  I would want to say, any and all claims made by

2  Plaintiffs against the three, and list the three individuals,

3  comma, in their individual capacity, parentheses, as opposed

4  to in their official capacity, are unaffected by this order,

5  period.

6         Now, you want to say more than that, and what's

7  the more than that?  Why do we need to say Plaintiffs may

8  recover anything under the collective bargaining?

9         MR. HARRINGTON:  The only reason that I say that

10  -- the only reason I feel the necessity to say that, is

11  because of how broad paragraph 3 of that order reads by

12  trying to say that we can't recover any City of Detroit

13  property, because in essence the way that this works and the

14  way that this case will go down the track is if we prevail,

15  or if there's a settlement, or if there's any payment to come

16  from these officers, it gets paid by the City.

17         THE COURT:  But not because of -- again, not

18  because the Plaintiffs have any right against the City for

19  that.

20         Any right to indemnity is a right that's enjoyed

21  by the individuals against the City, not a right that the

22  Plaintiffs have against the City.  That's the distinction,

23  right?

24         MR. HARRINGTON:  Right.  Yeah.  Because it's the

25  bargaining agreement that the officers have by being a member

1   of the police force.  It's like almost an insurance agreement

2   that they're going to pay for, you know, if they're sued --

3            THE COURT:  How about this?  Add -- the sentence

4   we've been talking about is fine up to the point where they

5   aren't affected by this order.

6            And then add a sentence that says something like

7   this, and we can play with the wording, but something like

8   this.  This order does not -- well, what I want to say is

9   this order -- essentially, this order does not impair any

10  right to indemnity that the individual officers may have

11  against the City.

12           MR. HARRINGTON:  Fine.  Yeah.  I'm fine with that.

13           THE COURT:  Does that work?

14           MR. HARRINGTON:  Something to that extent.

15           THE COURT:  Does that work for you, Mr. Swanson?

16           MR. SWANSON:  Yes.

17           THE COURT:  All right.  So let me let me get it

18  down and I'll read it all to you and you guys can make sure

19  it's good.

20           MR. SWANSON:  Your Honor?

21           THE COURT:  Just a second.

22           MR. SWANSON:  Sure.

23        (Pause)

24           THE COURT:  All right.  So you want to say

25  something before I read it back to you?

1        MR. SWANSON:  Yes.  Am I responsible for putting

2 this in?  I just want to make sure I take careful notes if I

3 have --

4        THE COURT:  I'm going to read it now --

5        MR. SWANSON:  I will.

6        THE COURT:  -- and then you can comment or

7 question.  How's that?

8        MR. SWANSON:  All right.

9        THE COURT:  Both of you.

10        All right.  So now paragraph 3 will say, I'll try

11 to go through it.  It will say:  Desmond Ricks, Akilah Cobb,

12 and Desire'a Ricks, and then after that put a parenthesis and

13 say the, quote, Plaintiffs with a capital P, because we're

14 going to refer to that term later.  Okay.  Are each

15 permanently enjoined from asserting claims asserted in the

16 lawsuits or claims arising from or related to the lawsuit

17 against the City of Detroit or property of the City of

18 Detroit, period.

19        Then we add this sentence.  Any and all claims

20 made by the Plaintiffs against, and then we'll name the three

21 individuals who are named as defendants in the -- individual

22 defendants in the District Court, Pauch, Stawiasz, Wilson,

23 whatever that is, their names, any and all claims made

24 against, and list those three names, A, B, or C, comma, in

25 their individual capacity, parentheses, rather than in their

1  official capacity, close paren, are unaffected by this order,
2  period.

3          Let me make sure you got that much, Mr. Swanson.
4      (Pause)

5          THE COURT:  Okay.  Then the next sentence will
6  say, it's still on paragraph 3, the next sentence will say,
7  this order does not affect any right to indemnity that the
8  individual officers -- not officers, let's say --

9          MR. HARRINGTON:  The City may owe.

10          THE COURT:  No.  Hold on.  In the sentence before
11  when we list the individuals, the three names, let's define
12  them with parentheses, the capital I, Individual --
13  Individuals, put that in quotes, close paren.  Okay.  So
14  after the three names put paren, the quote capital I,
15  Individuals, close quote and close paren.  All right.

16          Then in the next final sentence it'll say, this
17  order does not affect any right to indemnity that the
18  Individuals, capital I, may have against the City, period.

19          So I'll read through it one more time and then
20  I'll ask for any questions or comments.

21          Paragraph 3.  Desmond Ricks, Akilah Cobb, and
22  Desire'a Ricks, paren capital P, Plaintiffs, in quotes, close
23  paren, are each permanently enjoined from asserting claims
24  asserted in the lawsuit or claims arising from or related to
25  the lawsuit against the City of Detroit or property of the

1 City of Detroit, period.  Any and all claims made by

2 Plaintiffs against, then the three names, A, B, or C, paren,

3 the capital I Individuals, in quotes, close paren, in their

4 individual capacity, paren, as opposed to their official

5 capacity, close paren, are unaffected by this order, period.

6 This order does not affect any right to indemnity that the

7 individuals may have against the City, period.  End of

8 paragraph 3.

9            Now, first question.  Mr. Swanson, did you get all

10 that down?

11           MR. SWANSON:  Yes, Your Honor.

12           THE COURT:  The second question is, did you have

13 any comments or questions about form?

14           MR. SWANSON:  The only comment that I would have

15 is that the first added sentence we have paren, rather than

16 official capacity, close paren.  I would propose to, after

17 that parentheses, define individuals there instead of after

18 their names.

19           THE COURT:  That's okay with me.  What about you,

20 Mr. Harrington?

21           MR. HARRINGTON:  I don't really understand the

22 change.  I think we're all talking about the same thing.

23           And just so we're all a hundred percent clear that

24 the spirit of all of this, whether we're saying potato or

25 potato, the spirit of all of this is that in the event that

1  there is a verdict against any one of these officers that any

2  issue of indemnity won't be encumbered or prohibited or

3  precluded in any way, shape, or form by this Court's ruling

4  on the City of Detroit claims.  I just want to make sure that

5  that's clear.  Right, counsel?

6          THE COURT:  So, Mr. Swanson, why do you need this

7  change you've just asked for?

8          MR. SWANSON:  I just thought it would -- it would

9  make clear that we're talking about the individuals in their

10  individual capacity and not their official capacity.  If the

11  Court prefers, it's like what --

12          THE COURT:  Let's leave it as-is.

13          MR. SWANSON:  Sure.

14          THE COURT:  Anything else?

15          MR. SWANSON:  No.

16          THE COURT:  What about you, Mr. Harrington?

17  Anything else?

18          MR. HARRINGTON:  No, Your Honor.

19          THE COURT:  All right.  So the order, then, will

20  have the change to paragraph 2 that I mentioned, the new

21  paragraph -- the revised paragraph 3 that we talked about.

22  Paragraph 4 comes out.  Paragraph 5 stays in, retaining

23  jurisdiction, that's fine.

24          And I'll ask Mr. Swanson to revise the order,

25  submit it.  I'll wait for the presentment of the revised

1  order, since we've discussed it in detail here.  And of

2  course before I sign it, I will make sure that it fully

3  complies with my ruling and what we've talked about here, and

4  I'll get that entered.

5           So that's it for today and for this matter.  Thank

6  you.

7           MR. HARRINGTON:  Thank you, Your Honor.

8           THE COURT CLERK:  All rise.

9                    (Time Noted:  3:41 p.m.)

10                        * * * * *

11                        CERTIFICATE

12     I, RANDEL RAISON, certify that the foregoing is a

13  correct transcript from the official electronic sound

14  recording of the proceedings in the above-entitled matter, to

15  the best of my ability.

16

17

18  _____        October 24, 2023

19  Randel Raison

20

21

22

23

24

25