## Exhibit 6M - Hearing Transcript on Chancellor

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                .   Case No. 2:13-53846-tjt
                        .   Chapter 9
CITY OF DETROIT, MICHIGAN,  .
                        .
      Debtor.        .
                        .
. . . . . . . . . . . . . . .

**TRANSCRIPT OF HEARING ON CITY OF DETROIT'S MOTION FOR ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST DARELL CHANCELLOR**

BEFORE THE HONORABLE THOMAS J. TUCKER
UNITED STATES BANKRUPTCY JUDGE

WEDNESDAY, OCTOBER 4, 2023
DETROIT, MICHIGAN

```
 1   APPEARANCES:

 2   For the Debtor:              Miller Canfield Paddock &
                                     Stone, PLC
 3                                By:  Marc N. Swanson*
                                  150 West Jefferson Street
 4                                Suite 2500
                                  Detroit, MI  48226
 5                                (313) 496-7591

 6   For Darell Chancellor:       Ven Johnson Law, PLC
                                  By:  Ven Johnson*
 7                                535 Griswold
                                  Suite 2600
 8                                Detroit, MI  48226
                                  (313) 324-8300
 9
     Court Recorder:              LaShonda Bryant
10                                Clerk's Office
                                  U.S. Bankruptcy Court
11                                211 West Fort Street
                                  Detroit, MI  48226
12
     Transcription Service:       Randel Raison
13                                APLST, Inc.
                                  6307 Amie Lane
14                                Pearland, TX  77584
                                  (713) 637-8864
15

16

17

18

19

20

21

22

23   *Appeared via AT&T Conference Call.

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

1                    (Time Noted:  1:30 p.m.)

2              THE COURT CLERK:  Judge Tucker presiding.

3              THE COURT:  Good afternoon to everyone.  This is

4  Judge Tucker on the phone.

5              Let's call our case that's scheduled for 1:30

6  p.m., please.

7              THE COURT CLERK:  We'll call the matter of the

8  City of Detroit, Michigan, case number 13-53846.

9              THE COURT:  All right.  Good afternoon again.

10 Let's begin by having entries of appearance for today's

11 hearing, first of all the attorney or attorneys for the City

12 of Detroit.

13             MR. SWANSON:  Good afternoon, Your Honor.  Marc

14 Swanson from Miller Canfield on behalf of the City of

15 Detroit.

16             THE COURT:  All right.  Good afternoon to you.

17             And the attorney for the Respondent, Darell

18 Chancellor, please?

19             MR. JOHNSON:  Good afternoon, Judge.  Ven Johnson

20 on behalf of Mr. Chancellor.

21             THE COURT:  All right.  Good afternoon to you.

22 And let me ask for the record, is there anyone else on the

23 phone who wants to enter an appearance in this case today?

24       (No response)

25             THE COURT:  I hear nothing.  So good afternoon.

1  This is the further continued hearing, continued from a week

2  ago to today, Wednesday afternoon of last week, regarding the

3  City of Detroit's motion for entry of an order enforcing the

4  bar date order and confirmation order against Darell

5  Chancellor.

6         For the record, that motion is filed at docket

7  number 13691 on the Court's docket in this case.

8         I have reviewed the motion, the response filed to

9  the motion by Mr. Chancellor, and the reply brief, or reply

10 filed by the City in support of the motion, plus the exhibits

11 that were filed with those papers.

12        So good afternoon.  Let's hear from each side.

13 I'll begin with counsel for the moving party, Mr. Swanson.

14        MR. SWANSON:  Thank you, Your Honor.  Marc

15 Swanson, Miller Canfield, on behalf of the City.

16        Your Honor, the Plaintiff raises two arguments in

17 response to the City's motion, both of which fail.

18        The first argument is that the claim arose pre-

19 petition under the fair contemplation test.  Plaintiff's

20 response in paragraphs 43 and 44 are the only two substantive

21 responses to the City's assertion that the fair contemplation

22 test applies and that the claim arose under it prepetition.

23        Plaintiff's response, however, is based on the

24 accrual test.  In paragraphs 43 and 44 of the response,

25 Plaintiff argues that the accrual test applies and that the

1  Plaintiff could not have filed a claim until the conviction

2  was vacated in 2020.

3          Now, Plaintiff's argument for the accrual test,

4  and the argument that a claim did not arise until a

5  conviction was vacated, have been rejected by this Court in

6  prior opinions and by the District Court here.

7          District Court Judge Michelson in *Monson,* District

8  Court Judge Borman and Burton, District Court Judge Lawson

9  and Sanford, and also in the *General Motors* bankruptcy case,

10 which I believe was cited in the *Sanford* opinion.

11         In each of those cases, with very similar facts,

12 the District Court held that the claim was discharged.

13         Now, with respect to the facts in this case, all

14 of the key events occurred prior to the City's bankruptcy

15 case.

16         On November 1 of 2011, Chancellor alleges that he

17 was not there when surveillance was performed on, allegedly,

18 his mother's house.

19         He also says on that date, you know, the

20 description was way off.  The person -- he weighed 180

21 pounds.  The person -- or the person allegedly surveilled

22 weighed 180 pounds.  He wore -- he weighed 245 pounds and had

23 glasses on.

24         November 2, 2011, is the date of the alleged false

25 affidavit.

1      May of 2012 is the date when Chancellor was

2   arrested.

3      Chancellor was tried in November of 2012.  He was

4   convicted in November of 2012.  He was sentenced in December

5   of 2012.  He began his sentence in December of 2012.

6      And in 2013, before the City filed for bankruptcy,

7   Mr. Chancellor also filed an appeal.

8      All along the way, Chancellor was proclaiming his

9   innocence, as evidenced by court filings and deposition

10   testimony.  And let's go through some of those court filings

11   and some of that evidence.

12      So when Chancellor was arrested, Chancellor stated

13   that he knew he was innocent.  And how do we know that?

14   Because we can go to his deposition transcript, which was

15   attached as exhibit 6F to the City's motion.

16      He was asked during his deposition, "When you were

17   arrested, did you believe that you were innocent?"

18      His response, "I know I was innocent."

19      This is on Page 49 of the deposition transcript,

20   lines 16 through 18.

21      In that regard, during his deposition,

22   Chancellor's attorney asked him:

23      Question, "Without belaboring the point, Darell,

24   what did it feel like to go to trial and be accused of a

25   crime that you didn't commit?"

1     Answer, "I mean, it felt terrible.  It feels more

2  terrible when you get found guilty of something you ain't

3  commit because it's like the justice system has failed you."

4     And that's his deposition transcript page 78,

5  lines 10 through 18.

6     During his trial, Chancellor testified and

7  proclaimed his innocence.  And how do we know that?  We can

8  turn to exhibit 6B, which is the trial transcript.  He said

9  that the drugs were not his.  He said that the guns were not

10 his.  And he said it couldn't have been him because the

11 person who was identified in the affidavit was not him

12 because he was shorter and heavier.  And that's page 78

13 through 84 of the trial transcript.

14     Mr. Chancellor also sent a letter to the judge who

15 was presiding over the State Court case, Judge Hathaway.  In

16 that letter he said he had, quote, "Been locked up for six

17 months for something I know nothing about.  The police got

18 the wrong person.  The evidence and the facts will show that

19 I haven't did anything."  That's exhibit 6H to the City's

20 motion, Your Honor.

21     On November 12, 2012, Chancellor was found guilty

22 of possession of cocaine.  According to Chancellor, and in

23 the second amended complaint in the Federal Court action,

24 Judge Hathaway explicitly relied on Geelhood's false

25 statement that identified Chancellor as the person who was

1   seen selling drugs from the target address.  Chancellor, of

2   course, denied during the trial and on appeal that Geelhood

3   had correctly identified him.

4          Chancellor was then sentenced on December 12,

5   2012, to a term of 14 years and 3 months to 30 years of

6   imprisonment.

7          Chancellor's attorney asked him what it felt like

8   to be, quote, "Wrongfully convicted."  "Every single day, the

9   question, every single day you're in that prison cell, jail

10  cell, precinct cell, being accused and ultimately wrongfully

11  convicted of doing something you didn't do, Darell, every

12  day, all day.  What did it feel like?"

13         Answer, "It felt terrible -- it feels terrible

14  when you know you ain't do something but you convicted for

15  it.  It was."

16         And that is from Mr. Chancellor's deposition

17  transcript on page 83 and 84.

18         On January 18, 2013, Chancellor appealed his

19  conviction, and his conviction was later affirmed, and the

20  Court of Appeals rejected his argument that he was a victim

21  of a mistaken identity.

22         Your Honor, Chancellor's claim arose pre-petition

23  long before his conviction was vacated.

24         Again, Chancellor argues that his claim against

25  the City did not arise until his conviction was vacated in

1  March of 2020.  That is the accrual test, Your Honor.

2          But as this Court has ruled, and the District

3  Court has uniformly ruled, the accrual test is not the test

4  to determine when a bankruptcy claim arises.  The test to

5  determine when a bankruptcy claim arises is the fair

6  contemplation test.

7          Again, this exact same argument that Mr.

8  Chancellor raises has been raised repeatedly, and denied.

9          With respect to the District Court cases.  I think

10  the *Sanford* case stated it quite well.  In that case the

11  Court said, referring to *Sanford*, he certainly contemplated

12  the factual bases underlying the claims raised in the

13  complaint since he attempted repeatedly to argue actual

14  innocence before the State Courts since at least 2008

15  insisting that his confession was falsely obtained,

16  concocted, and coerced.

17          *Sanford* correctly points out that he could not

18  have sued the City until his convictions were set aside,

19  which did not happen until after the bankruptcy.

20          But the courts that have considered the question

21  uniformly have concluded that claims based on pre-petition,

22  malicious prosecutions, were barred, notwithstanding that the

23  plaintiff could not file suit on his claims until his

24  criminal conviction was overturned.

25          The Court in *Monson* and *Burton* and this Court have

1  all had very similar rulings and findings, and there are no

2  facts in this case which could cause the Court to come to a

3  different conclusion.

4       In short, Your Honor, under the fair contemplation

5  test, Chancellor's claim arose before the City's bankruptcy

6  filing, because prior to the City's filing Chancellor could

7  have ascertained through the exercise of reasonable due

8  diligence that he had a claim against the City.

9       Your Honor, the second argument that was raised by

10  Mr. Chancellor in his response to the City's motion was

11  regarding raising discharge as an affirmative defense.

12       Now, Chancellor cited a Sixth Circuit case,

13  *Makowski,* for the proposition that the City had an

14  affirmative obligation to cite bankruptcy discharge as an

15  affirmative defense.

16       And Chancellor is wrong on a few levels here.

17       First, that decision was issued in 2005, and since

18  then, the Federal Rules of Civil Procedure have been amended

19  and they no longer require that discharge be raised as an

20  affirmative defense.

21       The City cited and quoted the Advisory Committee

22  notes which explain quite clearly why discharge and

23  bankruptcy was deleted from the list of affirmative defenses

24  and why discharge and bankruptcy does not need to be raised

25  as an affirmative defense.

1        If that weren't enough, Your Honor, this Court has

2   had the chance to consider a similar argument in a previous

3   case.

4        And this court, citing to another Sixth Circuit

5   case, decided later, *Hamilton v. Hertz*, 540 F. 3d 367.  And

6   this Court said, quote, "Even if the City had delayed raising

7   the bankruptcy discharge until after suffering an adverse

8   judgment on the Respondent's claims in the District Court

9   case, the City could not be deprived of the benefit of the

10  bankruptcy discharge.  Any such adverse judgment would be

11  deemed void *ab initio* under binding case law in the Sixth

12  Circuit."

13       And, again, I don't think we need to go any

14  further than that to see that the Plaintiff's argument that

15  the City had to raise bankruptcy discharge as an affirmative

16  defense fails, Your Honor.

17       In short, Your Honor, there were two arguments

18  raised by the Plaintiff here, both of which have been

19  rejected repeatedly.

20       No court that I'm aware of has applied the accrual

21  test to these facts and I think many courts have commented

22  that the accrual test has been uniformly rejected.

23       And the second argument that the Plaintiff makes

24  is based on a Sixth Circuit case that is no longer applicable

25  because the rule cited by that case has been revised.

1       And this Court has also had the opportunity to

2   consider a similar argument, and based on the Sixth Circuit

3   case, *Hamilton*, how that the City had no obligation to raise

4   discharge as an affirmative defense.

5       And thus, both of these arguments fail and the

6   City would respectfully request that the Court enter an order

7   granting its motion.

8       THE COURT:  All right.  Thank you, Mr. Swanson.

9       Mr. Johnson, I'll hear from you now, please.

10      MR. JOHNSON:  Thank you, Judge.  Good afternoon.

11  We'll say that never did I think I would be arguing a motion

12  in Bankruptcy Court, so I appreciate the Court's indulgence.

13      When I hear the City argue about fair

14  contemplation tests it sounds so, under these circumstances,

15  so unfair under the facts and circumstances that existed for

16  Darell Chancellor.

17      It's "Darell," to correct the record.  Darell

18  Chancellor.

19      As the Court knows, my client's conviction was

20  vacated on March 24, 2020.  And I understand about what

21  accrual test means.

22      And for the record, and I know the Court knows

23  this probably, and that is for his lawsuit Darell Chancellor

24  had no lawsuit, had no claim, had no recognizable injury,

25  until his conviction was vacated; hence wrongful conviction.

1          How it works, and what would be inherently unfair

2 and unjust, would be for someone to argue, or to be

3 successful in arguing, that although my client did not have a

4 valid cause of action, and while he is falsely in prison

5 serving a wrongful sentence, like he was from December of

6 2012 through even the petition date, Judge, of July 18, 2013.

7          So, in other words, for those eight months, if we

8 were to use those dates, that somehow after his wrongful

9 conviction he was suppose to know, while he's serving in

10 state prison, that it was somehow fair that he should have

11 contemplated to watch the City of Detroit's bankruptcy

12 proceedings to know that no one, no layperson would ever

13 know, let alone a convicted -- a wrongfully convicted person

14 in state penitentiary, would ever know that he had to file a

15 claim under the bankruptcy even though he hadn't been -- his

16 conviction hadn't been acquitted  -- or hadn't been entered

17 yet.

18          So when I hear the term "fair contemplation test,"

19 trying to attach that issue to this set of cases, is

20 absolutely, from my perspective, legally laughable.

21          I can read these other opinions.  I cannot believe

22 -- and I read it, so I know it happened, what the other

23 courts have said.  I can't -- I wasn't there and I didn't

24 argue it, and I'm really sad to see what they said, but that

25 is not, in and of itself, binding on this Court, as I

1    understand it.

2            And so how was it that Mr. Chancellor, wrongfully

3    serving a -- at that time for eight months a prison term on

4    something that ultimately he was found acquitted of years

5    later, yet he was supposed to know bankruptcy law.  He was

6    supposed to get notice of the City of Detroit's bankruptcy

7    itself.  It's not like the City sent it to him or that

8    anybody in prison would ever know that.

9            So there is no fair contemplation test that passed

10   here, Judge.  It's not fair for this -- for the City to argue

11   that his claim is barred before he had a claim, before he

12   even would know of a bankruptcy, because he's removed from

13   society.  There's no showing by the City that he should have

14   known about this, because there can be none.

15           And when we talk about fairness, then we can talk

16   about affirmative defenses.  And affirmative defenses, the

17   way that they've always been interpreted as a 9 or 10-year

18   former defense lawyer, they're legal defenses that should be

19   raised immediately so that we can have these discussions and

20   these fights, if you will, beforehand.

21           And then in the event that there's need for

22   factual development, then we could -- we could have that

23   during discovery.  And in this particular case there is no

24   other argument that a bankruptcy is a legal defense.

25           In a weird way, what I believe, going back to fair

 1 contemplation test, Judge, of my client, notice that my

 2 client's lawyers, me and my firm, who do civil rights

 3 litigation, not just in Michigan, but across the country, we

 4 never filed a motion or any claim with the City of Detroit

 5 because we never, ever expected that such an argument would

 6 be made that something that happened, a petition while my

 7 client was in prison, wrongfully, seven years before he was

 8 -- his conviction was vacated, that we should do something on

 9 his behalf, because we never believed, nor should we, in my

10 opinion, had believed that this claim was ever barred.

11         So to hold that my client had -- should have

12 fairly contemplated such a thing when his pretty

13 sophisticated lawyers didn't contemplate it, because no way

14 would we think it could apply, is, again, I believe,

15 something that the City fails to show as a matter of law.

16         And so we'd ask the Court under these

17 circumstances, and not identical to other cases that I'm

18 aware of, but obviously the City will say that they're

19 similar, that's their opinion, but under these circumstances,

20 Judge, we believe that as a matter of law to hold Mr.

21 Chancellor that he fairly could contemplate the City's

22 bankruptcy when he was pursuing his appeal -- which is what,

23 by the way, his lawyer did, and I might add again on his

24 behalf, lawyers involved in filing an appeal from SADO, just

25 so the, so the Court knows, no one ever advised Mr.

1 Chancellor, nor should they have for that matter, that he

2 should have filed a claim with the -- for the City's

3 bankruptcy, if you will, with the Bankruptcy Court, while

4 they're fighting an appeal.

5 And then there was another appeal even after that,

6 I might add. And there was also a District Court action, a

7 habeas corpus.

8 So you had multiple layers of lawyers involved, no

9 one ever told him that, but somehow he's supposed to have

10 figured out on his own while he is wrongfully serving prison

11 time back in late 2012 and 2013.

12 So we ask the Court to please deny this motion.

13 Thanks, Judge.

14 THE COURT: Mr. Johnson, a question. You may have

15 -- and I may understand this incorrectly, but I thought I

16 heard you in your argument just now to suggest, among many

17 other things, that Mr. Chancellor being in prison at the time

18 the City filed its bankruptcy case in July of 2013, and in

19 jail thereafter for some time, that he wouldn't have known of

20 the City's bankruptcy.

21 If that -- if you're making that argument or that

22 claim now, that's the very first time Mr. Chancellor has made

23 that argument to this Court.

24 There's nothing at all about that in the written

25 response filed to the City's motion here. Nothing. No

1  argument about that at all, no assertion of that at all.  Are

2  you saying -- are you trying to argue that now?

3          MR. JOHNSON:  Well, absolutely, Judge.  The City

4  has failed, as the moving party, has to obviously prove that

5  he did have notice.  And they've shown nothing of what notice

6  would have been made knowable to Mr. Chancellor, and that

7  would be a crucial element of the fair contemplation test.

8          What has the City shown this Court to rule as a

9  matter of law that my client knew or should have known about

10  the City's petition and the bar date of 7/18/13?  They've

11  done nothing.  They're simply arguing that.  So their

12  argument is, in essence, no different than mine.

13          THE COURT:  All right.  So I should -- you think I

14  should accept that as one of your arguments and consider the

15  merits of it even though it's being raised for the first time

16  in this oral argument and wasn't raised in the written

17  response?

18          MR. JOHNSON:  Judge, we argued in our written

19  response that, if you will, that there's no way that Mr.

20  Chancellor knew about this or could know about this.

21          So I don't think -- maybe it wasn't stated exactly

22  how I just stated it, but I think the argument is the same.

23  So I don't believe it's being raised, if you will, for the

24  first time.

25          But again, that's the City's burden, Judge, when

1   they're moving as a matter of law on this.

2          THE COURT:  Mr. Johnson, where in your written

3   response did you argue anywhere that there's no way that Mr.

4   Chancellor knew or could have known of the bankruptcy?  I

5   didn't see that in there anywhere.  Maybe I'm missing it.

6   Where is it?

7          MR. JOHNSON:  Well, I guess first and foremost,

8   Judge, how would somebody in prison ever know about

9   bankruptcy proceedings anywhere as a matter of common sense,

10  first and foremost?

11         THE COURT:  Mr. Johnson, excuse me.

12         MR. JOHNSON:  Yes, sir.

13         THE COURT:  Excuse me.  That's not my question.

14  Answer my question.  Where is it in your written paper?

15  Anywhere?

16         MR. JOHNSON:  Well, on page 14, Judge, I'm looking

17  at paragraph 47 of my brief.

18         THE COURT:  Hold on.

19         MR. JOHNSON:  Even if Chancellor could -- I'm

20  sorry.

21         THE COURT:  Hold on a minute.

22         MR. JOHNSON:  Yes, sir.

23         THE COURT:  Your response is filed, just for the

24  record, as docket 13699.  Where are you pointing to in there

25  now?

1          MR. JOHNSON:  On page 14, Judge, in paragraph 47.

2          THE COURT:  Wait a minute.  Page 14?  There's no

3 Page 14.

4          MR. JOHNSON:  Sorry, Judge.  I apologize to the

5 Court.  I was looking at the wrong thing.  I apologize to the

6 Court.

7          THE COURT:  So what's the answer?  Is it in there

8 somewhere, or not?

9          MR. JOHNSON:  Your Honor, I'm looking for it.  As

10 I said to the Court, I don't think it was stated exactly how

11 I said it.  But I'm reviewing it right now, Judge.  I

12 apologize to the Court.

13          THE COURT:  That's fine.  Take your time.

14          MR. JOHNSON:  Thank you, sir.

15      (Brief pause)

16          MR. JOHNSON:  Let me double check that I have the

17 right thing now, Judge.  Yes, Your Honor.  In page 6, please,

18 under Roman numeral III argument.

19          THE COURT:  I see page 6.  Go ahead.

20          MR. JOHNSON:  Thank you, Judge.  43, of course

21 these allegations are denied and Plaintiff's claim did not

22 accrue until his conviction was vacated on March 24, 2020;

23 44, it is undisputed -- it is disputed that under the fair

24 contemplation test Mr. Chancellor could have ascertained

25 through the exercise of reasonable due diligence that he had

1 a claim against the City. His claim did not accrue until it

2 was found that Officer Geelhood had committed fraud obtaining

3 the search warrant.

4         So what I said to this Court was exactly, fair --

5 under the fair contemplation test it is not fair, nor

6 established, that he could have ascertained through exercise

7 of reasonable due diligence that he had a claim against the

8 City.

9         And as the City told the Court in its argument,

10 they knew that Mr. -- as it pertains to this proceeding, they

11 knew that my client, Mr. Chancellor, was in prison starting

12 in December of '12 is what counsel told the Court, December

13 of 2012, which, of course, is about seven months before the

14 petition.

15         So I believe, yes, Judge, that we did present this

16 argument exactly in that fashion.

17         And I'm looking on Page 7 --

18         THE COURT: I don't -- I'm sorry. I'm sorry, I

19 don't see how paragraph 43 or 44 contains an argument or

20 asserts that Mr. Chancellor did not know of the City's

21 bankruptcy case.

22         MR. JOHNSON: Page 7, if I could, Judge, please,

23 in paragraph 45.

24         THE COURT: Well, all right. So now we're moving

25 to paragraph 45. Go ahead.

1  MR. JOHNSON: It is denied that the plan's

2  discharge provision applies to Mr. Chancellor as he did not

3  have a responsibility to file a proof of claim, as he did

4  not, under the fair contemplation test, have a reason to file

5  such a claim.

6  THE COURT: Yes.

7  MR. JOHNSON: So we were specifically arguing

8  about the fair contemplation test at the time when the

9  petition date was filed, 7/18/13, Judge.

10  THE COURT: Well, I think at least it's arguable,

11  anyway, that the fair contemplation test concerns whether in

12  this case Mr. Chancellor could have ascertained through the

13  exercise of reasonable diligence, due diligence, that he had

14  a claim against the City of Detroit having to do with this

15  wrongful conviction that he's been -- that he's alleged, not

16  whether he could have exercised, through reasonable due

17  diligence or otherwise, he could have ascertained that the

18  City had filed bankruptcy. That's a -- that's really a

19  different issue, isn't it?

20  MR. JOHNSON: I see it, Your Honor, as in an

21  exercise of due diligence did Mr. -- or should Mr. Chancellor

22  have known that he had a claim? He did not have a claim at

23  that time.

24  His claim that he had never materialized until

25  3/24/20, when his conviction was vacated. So he had no

1  claim.  There was no claim to assert yet, and that's why the

2  accrual test is important under the facts and the

3  circumstances of this analysis.

4         It does matter because it absolutely, definitively

5  goes to what a normal person, or in this case, forgive me, a

6  reasonable person, with a good caveat again of this person

7  being in a federal penitentiary, wrongfully, should know

8  relative to what claim was he supposed to have filed when he

9  didn't have a claim, yet.

10        So in other words, he's supposed to file a

11 bankruptcy claim while he's in federal -- or state prison, in

12 July or so of 2013, even though he does not have a valid

13 cause of action, nor does he know that he's going to get one,

14 because many people obviously believe, and I guess I think

15 the evidence shows that many people are innocent yet

16 convicted, and yet, under this area of law he has nothing, no

17 claim until he gets it vacated, which is a huge process, as

18 the Court probably knows.

19        But he ultimately is -- his claim does accrue on

20 3/24/20, yet again, seven years before that, he's supposed to

21 know to file a bankruptcy.

22        I think that that flies in the face of truth and

23 logic.  Most lay people don't know this, let alone somebody

24 who's now in a prison sentence for serving something for a

25 crime they didn't commit, that they're now supposed to figure

1  that out on their own.

2          THE COURT:  All right.  I think, you know, you're

3  going over ground you've already tread, and we got onto this

4  discussion when I was asking about an apparent argument

5  you're making today for the first time, I think, that Mr.

6  Chancellor did not have notice or knowledge of the City's

7  bankruptcy case.

8          Is there anything more you want to say about that

9  specific issue?

10          MR. JOHNSON:  No, Judge.  Thank you.

11          THE COURT:  All right.  Well, thank you, Mr.

12  Johnson.

13          Mr. Swanson, as I normally do, I'll give you a

14  brief opportunity as the moving party here to reply in

15  support of the motion, if you want.

16          MR. SWANSON:  Thank you, Your Honor.  Marc Swanson

17  on behalf of the City.

18          There was no argument about notice in the

19  Plaintiff's response.  If Chancellor wanted to make an

20  argument about notice, you would think that at least once in

21  the response he would have used the word "notice," and notice

22  is not used at all in the response.

23          You know, similar arguments were made in *Burton*

24  and *Monson,* and in each of those cases the Court found that

25  plaintiff was an unknown creditor and the constructive notice

1  that was provided during the City's bankruptcy case with

2  respect to the bar date order, the plan, and the confirmation

3  order, which this Court has found time and time again to have

4  been valid, to constitute adequate notice.

5          With respect to fair contemplation.  Mr. Johnson

6  said, you know, there was no lawsuit, there was no claim.

7  And I can agree, perhaps, that there wasn't a lawsuit until

8  2020, but there certainly was a claim.  There was a

9  contingent claim.

10         One of the orders that we cited in our papers was

11  this Court's order in the Desmond Ricks matter, which the

12  Court held an oral argument on in 2019.

13         And during that oral argument a very similar

14  argument was asserted by the plaintiff's counsel and the

15  Court correctly said that that it was a contingent claim,

16  that even if under applicable state or federal law a claim

17  did not accrue until a conviction was vacated.  For

18  bankruptcy purposes that's not the test.

19         The test is when the claim was fairly

20  contemplated, and it was fairly contemplated far before, and

21  at that point the plaintiff had a contingent claim, and that

22  should be what the Court finds here.

23         With respect to Plaintiff's argument on

24  affirmative defenses.  Plaintiff raised nothing new.

25  Plaintiff didn't distinguish this Court's prior opinion,

1 didn't distinguish the Sixth Circuit's opinion in *Hamilton*,

2 and didn't attempt to rescue the citation to a old Sixth

3 Circuit case which cited a prior version of a rule which is

4 no longer applicable.

5       For those reasons, Your Honor, the City would

6 respectfully request that the Court enter an order granting

7 its motion.

8       THE COURT: All right. Thank you. One moment,

9 please.

10    (Pause)

11       THE COURT: All right. Thank you, both. I'm

12 going to do what I hope is a fairly brief and concise oral

13 ruling now on this motion. One moment.

14    (Pause)

15       THE COURT: All right. Thank you.

16       The motion has been argued both in writing and

17 orally in today's hearing, the motion by the City of Detroit,

18 for entry of an order enforcing the bar date order and

19 confirmation order against Darell Chancellor, or Darell

20 Chancellor, I think it might be pronounced.

21       For the record, again, that motion is docket

22 number 13691.

23       The respondent, Mr. Chancellor, through counsel,

24 filed a response to the motion, written response. The

25 response was filed at docket number 13699 on the Court's

1 docket.

2          The Court has reviewed that response, the exhibits

3 that were filed with it, as well as the exhibits filed with

4 the City's papers, as well as the City's reply brief at

5 docket 13714, and I have considered the arguments in today's

6 -- made in today's hearing.

7          The first thing I'll cover and I'll say is that

8 this Court, the Bankruptcy Court here, has subject matter

9 jurisdiction over this matter, and this matter is a core

10 proceeding in which this Court has authority and jurisdiction

11 to make a final decision on the motion.

12          The authority for that I won't go into great

13 detail about.  What I'll do is cite and incorporate by

14 reference what I said in a couple of prior opinions in this

15 case about the subject of jurisdiction, core proceedings, and

16 those subjects, and also about the -- in these opinions about

17 the fact that this Court, in the plan of adjustment that was

18 confirmed by the Court, this Court retained jurisdiction to

19 rule on the very types of motions and disputes that's before

20 me with this motion and if necessary to enter injunctions to

21 further enforcing the confirmed plan of adjustment and other

22 orders of the Court in this case.

23          The earlier opinions of mine that cover this are,

24 first of all, the case of *In re City of Detroit, Michigan*,

25 548 Bankruptcy Reporter 748, a decision of mine from 2016

1   that's published, and that -- in particular, pages 753 and

2   754 of that opinion.

3           Again, I incorporate that discussion in the

4   section called Roman numeral II, Jurisdiction, in that

5   opinion by reference here and adopted and applied it in this

6   case, as well.

7           A second opinion on this subject is the decision

8   the Court made just a couple weeks ago, on September 18,

9   2023.  That's the case -- again it's *In re City of Detroit,*

10  *Michigan*.  It's not yet published in the Bankruptcy Reporter

11  as far as I know, but it is published.  It's reported at 2023

12  WestLaw 6131465.  It's also an opinion that is filed in this

13  bankruptcy case.  It's at docket number 13738.  Again, it's

14  September 18 of 2023.

15          The WestLaw citation for the jurisdictional

16  provisions is star pages 6 to 7.  The citation of the version

17  that's published, or that's filed on the Court's docket at

18  13738, is .pdf pages 13 to 14 of that opinion.

19          Again, I incorporate by reference what the Court

20  said there about subject matter jurisdiction, core

21  proceedings, the Court's authority to make a final

22  determination in this kind of matter.

23          Moving to the merits now of this dispute.

24          First of all, I do find and conclude that the --

25  from the undisputed facts that the claims alleged against the

1  City of Detroit and against Office Steven Geelhood in his

2  representative capacity, in the cases that are now pending in

3  the U.S. District Court for this District, those cases, the

4  two cases are the ones cited in the City's motion at page 5,

5  paragraphs 12 and 13, copies of complaints from those cases

6  are Exhibit 6B and 6C of the City's motion.

7          Those claims alleged against the City and against

8  Officer Geelhood in his representative capacity in those

9  cases were, in fact, discharged by the discharge in the

10  City's confirmed plan of adjustment, and Mr. Chancellor is,

11  in fact, barred and enjoined from filing and prosecuting

12  those claims.

13          That is distinct from the claims, any claims

14  alleged against Officer Geelhood in his -- solely in his

15  individual capacity.  Those were not -- they were not

16  discharged and are not enjoined.  So there is that

17  distinction, and that's a distinction that was raised in the

18  written response filed by Mr. Chancellor.

19          These claims against the City and Mr. Geelhood in

20  his representative capacity all arose before the bankruptcy

21  petition was filed in this Chapter 9 case on July 18, 2013,

22  and, therefore, were discharged.

23          First of all, the fair contemplation test that the

24  parties have argued about does indeed apply, as opposed to

25  the so-called accrual test.  I have already ruled that way in

1 prior opinions, and I reiterate that ruling now that the fair

2 contemplation test is the appropriate test to determine

3 whether a claim arose before or after the filing of a

4 bankruptcy petition.

5      A couple of places where I have ruled that way is,

6 first of all, in the City of Detroit case that I cited

7 earlier. The one that's 548 Bankruptcy Reporter 748, at page

8 763 of the Court's opinion.

9      In that case I ruled that the fair contemplation

10 test is the appropriate test to apply, and I discussed what

11 that test meant, and I incorporate that discussion and the

12 authority cited in that opinion by reference.

13      And the Court has applied that test in other -- in

14 deciding other motions in this bankruptcy case. But that's

15 really the leading case, by me at least, on that subject.

16      The fair contemplation test raises -- sets the

17 standard as being that a claim is considered to have arisen

18 pre-petition if the creditor could have ascertained through

19 the exercise of reasonable due diligence that it had a claim

20 at the time the bankruptcy petition is filed.

21      In my view, the answer here is clearly that, yes,

22 indeed, Mr. Chancellor could have, with the exercise of

23 reasonable diligence, ascertained that he had a claim against

24 the City of Detroit and against Mr. Geelhood in at least in

25 his representative capacity, before the City filed its

1 bankruptcy petition on July 18, 2013.

2     That's based upon the facts and events that

3 occurred that contribute to give rise to Mr. Chancellor's

4 claims.

5     The events that occurred in November 2011, May

6 2012, November 2012, including the conviction in the state

7 court, criminal conviction of Mr. Chancellor that occurred on

8 November 12 of 2012 for which he was sentenced to prison on

9 December 12 of 2012 and promptly thereafter did go to prison.

10     These events are described in detail, and I think

11 accurately so, in the City's motion. Again, docket 13691 at

12 paragraphs 20 to 38 of the motion.

13     Given those facts and events, all of which

14 occurred well before the City filed its bankruptcy petition

15 in July of 2013, it's clear to me that under the fair

16 contemplation test Mr. Chancellor could have ascertained

17 through the exercise of reasonable due diligence that he had

18 a claim against the City and against Mr. Geelhood in his

19 representative capacity before the petition was filed in this

20 bankruptcy case.

21     This test and this issue, that is whether the

22 claim arose pre-petition or not, is a distinct test and a

23 distinct issue from the question of whether or not a claimant

24 like Mr. Chancellor knew, or should have known, about the

25 City having filed bankruptcy, which is a different issue, and

1   I'm going to talk about that in a little bit.

2           This test -- this issue focuses on not that issue

3   but whether, rather, on whether the claimant, like Mr.

4   Chancellor here, could have ascertained with the --

5   reasonably ascertained or ascertained through the exercise of

6   reasonable due diligence that he had a claim at the time the

7   petition was filed.

8           The answer to that here is, yes, it's clear that

9   Mr. Chancellor knew of and believed to be true all the facts

10  that are recited in the City's motion that occurred before

11  the petition date.

12          He certainly knew, or thought he knew, and he

13  believed, that he was the victim of a wrongful conviction,

14  that he was the victim of a conviction that was obtained

15  through what he viewed at the time as false testimony by

16  Officer Geelhood, both in an affidavit that gave rise to --

17  that was used to get a search warrant at Mr. Chancellor's

18  mother's house in November of 2012, all the way through the

19  trial testimony of Officer Geelhood, that Mr. Chancellor

20  viewed as false.

21          He not only knew that and thought these things at

22  the time, but he also argued these things vociferously to the

23  courts, the state trial court, the State Court of Appeals, on

24  the appeal that he filed shortly after he filed his

25  conviction, and before -- and that appeal was filed before

1 | the bankruptcy case was filed, as well.

2 |     The claims arose pre-petition here under the fair

3 | contemplation test even though Mr. Chancellor's 2012

4 | conviction, criminal conviction, was not vacated until March

5 | 24, 2020, and which, of course, was the date that was well

6 | after the filing of the City's bankruptcy case in 2013.

7 |     Mr. Chancellor argues that his claims at issue did

8 | not arise until his conviction was vacated in March of 2020

9 | because his claims or cause of action under applicable law

10 | did not accrue until that conviction was vacated in March of

11 | 2020.

12 |     This is, in effect, an argument seeking to --

13 | asking the Court to apply the so-called right to payment or

14 | accrual test for determining when a bankruptcy claim arose.

15 |     That accrual test is discussed by this Court in

16 | its decision -- or opinion that I just cited a moment ago

17 | about the fair contemplation test, 548 Bankruptcy Reporter,

18 | at page 762.

19 |     And as the Court notes there, I think accurately

20 | so, and it's still accurate, that test has been widely

21 | rejected by the courts as not an appropriate test for -- not

22 | the appropriate test for determining when a claim arises,

23 | whether it arises before or after the bankruptcy.

24 |     As the City, I think, has correctly argued, as of

25 | the bankruptcy petition date in this case, July 18, 2013, Mr.

1  Chancellor had a claim as that claim -- the term claim is

2  defined under the Bankruptcy Code, it's Section 101 of the

3  Bankruptcy Code, even though the claim at that time was

4  contingent, or unmatured, or both, because the claim could

5  not be pursued until the conviction was vacated later.

6          Contingent claims, unmatured claims, are expressly

7  part of what is a claim within the meaning of the Bankruptcy

8  Code for purposes of determining whether a claim arose pre-

9  petition or post-petition.

10          And the cases in which I've discussed that include

11  the case I cited a moment ago, 548 Bankruptcy Reporter, this

12  time at page 761, and also at page 762 of that opinion.

13          So even though the claim was -- excuse me.  Even

14  though the claim was contingent and unmatured as of the

15  bankruptcy petition date, there still was a claim, and it

16  arose pre-petition under the appropriate test, which is the

17  fair contemplation test.

18          There are, as the City points out, a number of

19  similar cases that have applied the fair contemplation test

20  to find in cases and situations very similar to this one that

21  the claimant's claim arose before the filing of the

22  bankruptcy case and, therefore, it was barred and discharged.

23          Perhaps the closest case in terms of facts and the

24  discussion by the Court is the *Sanford* case cited by the

25  City, a decision of the District Court from this District

1  from 2018.  That's *Sanford v. City of Detroit*, 2018 WestLaw

2  6331342, a decision from December 4, 2018, by the U.S.

3  District Court, Judge Lawson.  It's star page 5 in the

4  WestLaw version of that opinion.

5         The Court discusses this subject, and I think the

6  discussion is applicable equally in this case, and fully

7  supports the Court's ruling now in this case.

8         I do want to talk about this notice issue that was

9  raised for the first time in today's hearing, in my view.

10        There seemed to be an argument or suggestion by

11  counsel for Mr. Chancellor in today's hearing that Mr.

12  Chancellor, who was in state prison, incarcerated in state

13  prison, when the City filed its bankruptcy case, may not have

14  had notice or knowledge of the City's bankruptcy case in time

15  to file a proof of claim, in time to pursue the claim through

16  the bankruptcy process, and at least certainly not as of the

17  bankruptcy petition date, July of 2013.

18        That argument, first of all, is an argument that's

19  made for the very first time in oral argument in the hearing

20  today by Mr. Chancellor.  There's no hint of such an

21  argument, in my view, in the written response filed by Mr.

22  Chancellor to the motion.

23        That argument, in my view, then, has been

24  forfeited by Mr. Chancellor.

25        But even if not forfeited, in my view the argument

1    is without merit because of the unknown creditor concept.

2            Now, the City didn't brief this.  They have argued

3    it in the hearing today in response to the new argument about

4    notice of the bankruptcy, but this concept and this -- the

5    concept of the unknown creditor is one that's out there in

6    the case law and it's in one of the reported published

7    opinions of this court in this very case.  It was published a

8    little more than a year ago now and that is -- one moment.

9    That's the -- that's the case of *In re City of Detroit,*

10   *Michigan,* 642 Bankruptcy Reporter 807, a decision of this

11   Court from August 26, 2022.

12           In that case the Court talked about the unknown

13   creditor concept, beginning at page 810, 642 Bankruptcy

14   Reporter at 810.

15           There, the Court held, as numerous other courts

16   have held, that a creditor in a bankruptcy case that was an

17   unknown creditor, as the concept is defined by the case law,

18   at the time of the bankruptcy filing, is a creditor for which

19   the debtor has no duty to serve notice specifically, of the

20   bankruptcy specifically, upon.

21           But rather, one for whom notice of the bankruptcy

22   case by publication only is sufficient to put the creditor on

23   notice of the bankruptcy case for purposes of due process and

24   other concerns under the law.

25           At pages 810 to 811, at 642 Bankruptcy Reporter, I

1  talk about this concept and applied it in that case. It

2  applies equally here.

3        The concept of an unknown creditor is, one, a

4  creditor in which the claim against the City was readily

5  ascertainable by the City during the relevant time. That is,

6  during the time period as of the filing and thereafter in the

7  bankruptcy case.

8        And by readily ascertainable the case law requires

9  there whether the respondent, the creditor, communicated any

10  demand for payment or otherwise communicated to the City

11  before the bankruptcy was filed, the existence of a claim

12  against the City.

13        If not, then the creditor is deemed an unknown

14  creditor unless  -- well, is deemed an unknown creditor and

15  the City may provide sufficient notice of the bankruptcy

16  filing for due process purposes and otherwise by publication.

17        This case of Mr. Chancellor's is a case of an

18  unknown creditor, and that at the time of the City's

19  bankruptcy filing, and at least until 2020 when Mr.

20  Chancellor's conviction was vacated that he filed, first

21  filed suit against the City for wrongful conviction related

22  claims.

23        Until then, he was not a known creditor to the

24  City. His claim, or claims, or existence of claims, were not

25  readily ascertainable by the City during that relevant time

period, and that is because there's simply no evidence or
argument made in the papers, or even today in the hearing by
Mr. Chancellor's counsel that Mr. Chancellor did anything to
communicate to the City that he believed he had a claim for a
wrongful conviction or wrongful conviction related claim
against the City at the time of the bankruptcy filing or any
time thereafter until 2020.

And so, being an unknown creditor he must be
deemed to have been given adequate notice of the City's
bankruptcy case by publication.

The Court noted in its decision in the earlier
case, 640 Bankruptcy -- 642 Bankruptcy Reporter, at 810, 811,
the fact the City did provide notice of its bankruptcy case
by publication properly.

And, of course, the City of Detroit filing
bankruptcy was no secret to anyone. It was very widely known
throughout the Detroit area, throughout Michigan, throughout
the United States, and beyond, at the time. It was the
largest municipal bankruptcy ever filed, I think still is,
the largest municipal bankruptcy ever filed in this country
and received enormous publicity.

And so given all of that -- and I should also
note, in the absence of any evidence provided by Mr.
Chancellor which he alleges or asserts that he didn't know of
the City's bankruptcy filing when it occurred, the argument

1   about notice, as I perceive it to have been made today, even
2   if not forfeited, is without merit and I must reject it for
3   the reasons that I have just stated.
4           So given that Mr. Chancellor's claims arose pre-
5   petition under the fair contemplation test, the claims
6   against the City and against Officer Geelhood in his
7   representative capacity were filed -- arose pre-petition
8   here.  Those claims were discharged under the City's
9   confirmed plan of adjustment, both under the terms of the
10  plan and the order confirming that plan, that confirmed the
11  plan in November of 2013 -- I'm sorry, no, November 2014.
12          And those provisions are cited and quoted in
13  detail in a prior opinion of this court in the opinion I've
14  just been citing, the 642 Bankruptcy Reporter 807 opinion, in
15  particular at page 812.  So I incorporate that reference --
16  that by reference.
17          The claims of Mr. Chancellor against the City and
18  Officer Geelhood in his representative capacity are barred
19  and enjoined under the bar date order that the City has
20  cited, the City's plan, and the order confirming plan.  All
21  of that is confirmed by what I wrote at 642 Bankruptcy
22  Reporter, at page 812, among other places in the published
23  opinions of mine, citing those particular provisions in the
24  bar date order of the plan and the order confirming plan.
25          And so the claims are discharged and Mr.

1  Chancellor is barred and enjoined already from pursuing them.

2          I will address briefly the argument of Mr.

3  Chancellor arguing that the City did not assert its

4  bankruptcy discharge as an affirmative defense in either of

5  the cases that are now pending in U.S. District Court, and I

6  presume also an argument that the City unreasonably delayed

7  in raising the issue of the bankruptcy discharge and

8  injunctions in the filing of this motion, and compared to the

9  timing and the time that the U.S. District Court cases have

10  been pending.

11          The City is correct, in my view, in everything

12  that it says and argues in its reply brief at docket 13714,

13  at pages 4 to 6, .pdf pages 4 to 6, of that -- of that brief

14  in responding to and refuting these arguments.

15          This Court held in the 642 Bankruptcy Reporter

16  case, at pages 812 to 813, citing the Sixth Circuit's

17  decision of *Hamilton v. Hertz,* that a bankruptcy debtor, like

18  the City of Detroit, has no duty to raise any sort of

19  affirmative defense or defense, or to do anything, in

20  response to claims being brought against it in a non-

21  bankruptcy court that have been discharged.

22          Any such action and any judgment, adverse judgment

23  suffered on such claims is void *ab initio* under the case law

24  and because of the bankruptcy discharge.

25          And so, it is simply not a valid argument to argue

1  anything like that the City's motion here is barred in any

2  way by the City's failure to plead as an affirmative defense

3  or otherwise raise, timely or otherwise, in the pending U.S.

4  District Court cases the discharge and bar date order and

5  injunction provisions that it's argued in this motion in this

6  Court.

7         And the City is also right that the 2010

8  amendments to Federal Rule of Civil Procedure 8(c)(1) did

9  eliminate from the list of affirmative defenses that had to

10 be pled in federal court actions generally the discharge, a

11 bankruptcy discharge.  That's no longer in the rule as an

12 affirmative defense that must be pled for the reasons that

13 I've discussed.

14        And so the Court is bound to reject those

15 arguments by Mr. Chancellor.

16        This Court, this Bankruptcy Court, does have

17 jurisdiction and authority to specifically enjoin Mr.

18 Chancellor's continued prosecution of the claims against the

19 City and the claim against Officer Geelhood in his

20 representative capacity.

21        The Court's opinion from September 18 that I cited

22 -- this year that I cited earlier points that out.  It cites

23 chapter and verse in the City's plan of adjustment, confirmed

24 plan of adjustment documents.  The plan and the order

25 confirming plan.

1    And for that I'll cite to this Court's decision,

2  2023 WestLaw Reporter 6131465, again at star pages 15 and 7,

3  and again this Court's docket, that's docket 13738, at .pdf

4  pages 31 and 14.

5    And so for these reasons, the Court will grant the

6  City's motion in the form of the proposed order that the City

7  filed with the motion in substance, with one change.

8    And that, Mr. Swanson and Mr. Johnson, the

9  changes, I will go ahead and add a paragraph to what's in the

10 order, the proposed order, that does say, for the record, and

11 I think it's clear and really not disputed, that the order

12 does not apply to claims asserted by Mr. Chancellor against

13 Officer Geelhood in his individual, solely in his individual

14 capacity.  I'll add that language myself.

15    So, Mr. Swanson, what I want you to do is simply

16 submit your proposed order as-is with no changes at all.

17 I'll take that and make changes to it, both substantive of

18 the type I just described and non-substantive.  Non-

19 substantive being things like in the first paragraph reciting

20 the fact of today's hearing and so forth.

21    So you submit that, I'll waive presentment of

22 that, and I will take the order, revise it, and get it

23 entered, and the motion will be granted on that basis.

24    That's it.  Thank you all.

25              (Time Noted:  2:33 p.m.)

1    <u>CERTIFICATE</u>

2         I, RANDEL RAISON, certify that the foregoing is a

3    correct transcript from the official electronic sound

4    recording of the proceedings in the above-entitled matter, to

5    the best of my ability.

6

7

8    _____          October 25, 2023

9    Randel Raison

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25