In re:                                              Case No. 13-53846

CITY OF DETROIT, MICHIGAN,                          Chapter 9

              Debtor.                      Judge Thomas J. Tucker

_____/

**OPINION REGARDING THE CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER ENFORCING THE BAR DATE ORDER AND CONFIRMATION ORDER AGAINST RICHARD CADOURA**

**I. Introduction**

The dispute now before the Court concerns a claim of racial discrimination filed in the United States District Court by a former fire department employee of the City of Detroit (the "City"). This Court must decide whether the claim arose, for bankruptcy purposes, before the City filed its bankruptcy petition, or in the alternative, only several years later. The answer to that question determines whether the claim was discharged and is barred.

For the reasons stated below, the Court concludes that the claim arose in January 2018, several years after the City filed its bankruptcy petition in 2013, and several years after the Court confirmed the City's plan of adjustment in 2014. As a result, the claim was not discharged in this bankruptcy case, and is not barred.

The case is before the Court on the City's motion entitled "City of Detroit's Motion For The Entry Of An Order Enforcing The Bar Date Order And Confirmation Order Against Richard Cadoura" (Docket # 13713, the "Motion"). Richard Cadoura ("Cadoura") filed a response objecting to the Motion (Docket # 13773), and the City filed a reply in support of the Motion (Docket # 13815). The Court held a telephonic hearing on the Motion on December 20, 2023,

and then took the Motion under advisement.

The Court has reviewed and carefully considered all of the papers filed by the City and by Cadoura concerning the Motion, and all of the written and oral arguments of the parties. For the reasons stated below, the Court will deny the City's Motion.

## II. Background

The facts stated below are undisputed and established by the record in this case, except as otherwise noted.

Cadoura is a former employee of the City. He worked for the City as an Emergency Medical Technician and paramedic from 1999 until he resigned, effective on June 7, 2013.

The City filed its Chapter 9 bankruptcy petition on July 18, 2013, commencing this bankruptcy case. On November 21, 2013, this Court entered an order setting February 21, 2014 as the deadline for filing claims against the City.[1] The Court entered an order confirming the City's proposed plan of adjustment on November 12, 2014.[2] The confirmed plan became effective on December 10, 2014.

Years before the City filed its bankruptcy case, in June 2009, while he was still employed by the City, Cadoura and three other City employees filed a lawsuit against the City and several of the City's Fire Department employees in the Wayne County, Michigan Circuit Court, captioned *Thomas McCracken, et al. v. City of Detroit, et al.*, Case No. 09-010633-CZ (Wayne County Circuit Court) (the "2009 Lawsuit"). In the 2009 Lawsuit, Cadoura alleged claims of racial discrimination against the City, based on the City's failure to promote Cadoura and alleged

---

[1] Docket # 1782, the "Bar Date Order."

[2] Docket # 8272, the "Confirmation Order."

harassment creating a hostile work environment.³

After the City filed its bankruptcy case, Cadoura filed a proof of claim, on January 31, 2014, in the amount of $100,000.00, based on the allegations in the 2009 Lawsuit.⁴ The City later moved for the disallowance of the claim,⁵ and after Cadoura failed to timely respond to that motion, the Court entered an order on June 27, 2017, disallowing and expunging Cadoura's claim.⁶ Cadoura did not file any other proofs of claim in this case.

In November 2017, Cadoura applied to be rehired by the City, as an emergency medical technician/paramedic in the fire department. In January 2018, the City denied Cadoura's application and refused to rehire him.

On November 5, 2020, Cadoura filed a lawsuit against the City in the United States District Court for the Eastern District of Michigan, captioned *Richard Cadoura vs. City of Detroit, etc.*, Case No. 2:20-cv-12986-GAD-APP (E.D. Mich.) (the "Pending Lawsuit"). In his complaint in the Pending Lawsuit,⁷ Cadoura alleges that the City's January 2018 refusal to rehire him was illegal retaliation for Cadoura's having filed the 2009 Lawsuit against the City, a protected activity under federal and state civil rights laws. Cadoura alleged that this violated

---

³ A copy of the First Amended Complaint filed in the 2009 Lawsuit was attached to the proof of claim that Cadoura filed in this bankruptcy case, and appears within the exhibits attached to the City's Motion, at Docket # 13713-6, pdf p. 31.

⁴ The proof of claim is Claim No. 682 in this case. A copy of the proof of claim appears within the exhibits attached to the City's Motion, at Docket # 13713-6, pdf p. 29.

⁵ In its motion filed on June 8, 2017, the City described the procedural history of the 2009 Lawsuit. (*See* Mot. (Docket # 11901) at pdf pp. 4-6).

⁶ Docket # 11930.

⁷ A copy of Cadoura's complaint in the Pending Lawsuit is attached to the City's Motion as Exhibit 6A (Docket # 13713-1).

Title VII of the Civil Rights Act of 1964 and Michigan's Elliott-Larsen Civil Rights Act.

The Pending Lawsuit remains pending. On June 8, 2023, the district court denied the City's motion for summary judgment.[8] The case is awaiting trial.

On August 4, 2023, the City filed its present Motion in this Court.

In the Motion, the City contends that Cadoura's claims alleged in the Pending Lawsuit were discharged in the City's bankruptcy case, and are barred, by the confirmed plan of adjustment and by the Bar Order entered in this case. This is so, the City contends, because Cadoura's claims in the Pending Lawsuit arose, for bankruptcy purposes, no later than June 2013, when Cadoura resigned from his employment with the City, and therefore the claims arose before the City filed bankruptcy on July 18, 2013. As such, the City says, the claims were discharged and are now barred. The City seeks an order requiring Cadoura to dismiss his Pending Lawsuit, with prejudice, and enjoining Cadoura from asserting the Pending Lawsuit claims. The City also seeks a declaration that Cadoura is prohibited from receiving any distribution in this bankruptcy case, because he did not timely file a proof of claim asserting the Pending Lawsuit claims.

Cadoura argues that his claims in the Pending Lawsuit did not arise, for bankruptcy purposes, until January 2018, when the City denied Cadoura's request to be rehired. As such, Cadoura contends, his claims were not discharged and are not barred.

## III. Jurisdiction

The City's Motion is a core proceeding, over which this Court has subject matter

---

[8] A copy of the district court's opinion and order denying summary judgment is attached to the City's Motion as Exhibit 6C (Docket # 13713-3).

jurisdiction. This is so for the same reasons the Court has stated in several earlier opinions on similar motions, two of which the Court now incorporates by reference into this Opinion. *See, e.g., In re City of Detroit, Michigan*, 653 B.R. 874, 883-84 (Bankr. E.D. Mich. 2023); *In re City of Detroit, Michigan*, 548 B.R. 748, 753-54 (Bankr. E.D. Mich. 2016).

## IV. Discussion

### A. The "fair contemplation" test

The City's Motion turns on whether Cadoura's claims in the Pending Lawsuit arose, for bankruptcy purposes, before the City filed bankruptcy on July 18, 2013. To determine this, the Court applies what is sometimes called the "fair contemplation" test. The Court discussed this test and the applicable law in detail in a 2016 opinion, and the Court incorporates that discussion by reference into this Opinion. *See In re City of Detroit, Michigan*, 548 B.R. 748, 761-63 (Bankr. E.D. Mich. 2016). This Court described the "fair contemplation" test in this way:

> [A]s explained in *In re Senczyszyn*, 426 B.R. 250 (Bankr. E.D. Mich. 2010), *aff'd,* 440 B.R. 750 (E.D. Mich. 2011):
>
> > The most widely adopted test, . . . has been alternately termed the "fair contemplation," "foreseeability," "pre-petition relationship," or "narrow conduct" test. It looks at whether there was a pre-petition relationship between the debtor and the creditor, "such as contract, exposure, impact or privity," such that a possible claim is within the fair contemplation of the creditor at the time the petition is filed.
>
> *Id.* at 257 . . . . Under this test, **a claim is considered to have arisen pre-petition if the creditor "could have ascertained through the exercise of reasonable due diligence that it had a claim"** at the time the petition is filed. *Signature Combs*, [*Inc. v. United States*, 253 F. Supp. 2d 1028, 1037 W.D. Tenn. 2003)] (quotation & citations omitted). This test, which the Court will

5

> refer to as the "fair contemplation test," has the advantage of
> allowing the Court to examine all of the circumstances surrounding
> a particular claim — the debtor's conduct, the parties' pre-petition
> relationship, the parties' knowledge, the elements of the underlying
> claim — and use its best judgment to determine what is fair to the
> parties, in context. As the *Huffy* court points out, "one approach
> may not fit all circumstances." [*In re Huffy Corp.*,] 424 B.R. 295,
> 303 (Bankr. S.D. Ohio 2010).

548 B.R. at 763 (emphasis added).

**B. Application of the "fair contemplation" test to this dispute**

The City argues, in effect, that under this test, *no later than June 2013*, the month before the City filed its bankruptcy case, Cadoura "could have ascertained through the exercise of reasonable due diligence that [he] had a claim" against the City for its refusal to rehire Cadoura *in January 2018*. When stated this way, at first glance, the City's argument seems to be self-defeating. But the City's argument requires a closer look.

The City argues that beginning on June 3, 2013, when Cadoura signed the City's resignation form, resigning effective June 7, 2013, Cadoura knew or should have known that the City would refuse to rehire or reinstate him in the future.

According to the City, Cadoura knew on June 3, 2013 that he was resigning while not in good standing, with disciplinary proceedings pending against him, and that he resigned to avoid being discharged. As a result, the City says, Cadoura knew that he was, or would be, categorized by the City as not recommended for reinstatement, and that under the City's policies, that would make it very unlikely or impossible for Cadoura ever to be rehired or reinstated. The City also alleges that its placement of Cadoura in this category — not recommended for reinstatement — in 2013 was in fact why the City later refused to rehire Cadoura in 2018. The City alleges that

6

this reason, rather than any motive to retaliate against Cadoura for filing the 2009 Lawsuit, was why the City refused to rehire Cadoura in 2018.

Cadoura disputes this. He alleges, in the Pending Lawsuit, that the reason why the City refused to rehire Cadoura in 2018 was because Cadoura had filed the 2009 Lawsuit against the City. Cadoura argues that the City's current explanation for refusing to rehire him is just a pretext. The district court found that there are genuine issues of material fact about this, in its opinion and order denying the City's summary judgment motion in the Pending Lawsuit.

Despite this ruling by the district court, the City asks this Court to find that in June 2013, Cadoura knew enough to expect that the City would not rehire him in the future, so that any claim based on the City's later refusal to rehire Cadoura was in Cadoura's "fair contemplation" in June 2013, and must be deemed to have arisen, for bankruptcy purposes, in June 2013.

The Court disagrees with the City's argument. The Court finds and concludes that Cadoura's claims in the Pending Lawsuit arose, for bankruptcy purposes, in January 2018. Cadoura first requested that the City rehire him in November 2017, and the City refused that request in January 2018. That is when Cadoura's claims in the Pending Lawsuit arose, for bankruptcy purposes.

In making this determination, the Court is mindful of what Cadoura's claims are in the Pending Lawsuit, and what they are not.

Cadoura's claims are *not* that the City is guilty of discrimination or illegal retaliation in any pre-bankruptcy conduct. It is true that in opposing the City's summary judgment motion in the Pending Lawsuit, Cadoura argued that the City made numerous disciplinary charges against him before he resigned in June 2013. Cadoura argued that these disciplinary charges were

7

themselves a form of illegal retaliation. And Cadoura argued that if the City placed him in a "not recommended for reinstatement" category when he resigned in 2013, that action also was illegal retaliation. But it is clear that Cadoura argued these earlier instances of alleged illegal retaliation merely as evidence, to try to help prove his allegation that the City's refusal in 2018 to rehire him was in retaliation for Cadoura's having filed the 2009 Lawsuit.

Cadoura's actual claims asserted in the Pending Lawsuit are limited to this: that the City's refusal to rehire Cadoura in 2018 was because Cadoura had filed the 2009 Lawsuit against the City, and therefore was illegal retaliation. Cadoura's claims in the Pending Lawsuit do ***not*** seek relief for any of the City's pre-bankruptcy conduct — *e.g.*, the City allegedly making numerous unfounded disciplinary charges against Cadoura, and allegedly placing Cadoura in a "not recommended for reinstatement" category when he resigned. This is clear from Cadoura's complaint filed in the Pending Lawsuit. And this is not contradicted by Cadoura's summary judgment arguments, or anything else in the record, in the Pending Lawsuit.

The City does not argue that Cadoura knew or had reason to know, in June 2013, that the City would refuse to rehire Cadoura more than four and one half years later *in retaliation for Cadoura's having filed the 2009 Lawsuit*, in violation of Title VII and Michigan's Elliott-Larsen Civil Rights Act. This alone defeats the City's argument that Cadoura's civil rights claims in the Pending Lawsuit arose in June 2013, before the City filed its bankruptcy case.

But the City argues that it is enough, to find that Cadoura's civil rights claims arose pre-petition, to show that in June 2013, Cadoura knew or had reason to know that the City would not rehire him in the future. The Court disagrees, but the City has not shown even that much.

The City has failed to show that at any time before January 2018, Cadoura knew or

8

should have known that he had a claim against the City for refusing to rehire him. That refusal by the City occurred, for the first and only time, in January 2018.[9] And the City has failed to show any of the following: (1) that the City's internal action of placing of Cadoura into a "not recommended for reinstatement" category in June 2013 necessarily meant that Cadoura could and would never be rehired by the City; or (2) at any time before January 2018, Cadoura knew, or had reason to know, that he had been placed into a "not recommended for reinstatement" category by the City; or (3) at any time before January 2018, Cadoura knew, or had reason to know, that being placed into a "not recommended for reinstatement" category by the City meant that the City would never rehire Cadoura, or even would be less likely ever to rehire Cadoura.

**1. The resignation form Cadoura signed on June 3, 2013**

The City points to the resignation form that Cadoura signed on June 3, 2013, which is entitled "Notice of Resignation[/] Evaluation and Recommendation for Reinstatement."[10] That is a three page form. On June 3, 2013, Cadoura filled out and signed Part 1 of that resignation form, which appears on the top half of the first page of the form. That form stated that Cadoura's reason for resigning merely was "Retirement." There is nothing in that part of the form to suggest that Cadoura would be categorized as not recommended for reinstatement, or that he

---

[9] This distinguishes the present case from two cases cited by the City, *Young v. Twp. of Green Oak*, 471 F.3d 674 (6th Cir. 2006); and *Yinger v. City of Dearborn*, No. 96-2384, 1997 WL 735323 (6th Cir. Nov. 18, 1997). Each of those cases involved a police officer who was either suspended (*Young*) or placed on indefinite medical leave (*Yinger*). In each case, the officer repeatedly requested that his employer allow him to return to work, and each time was refused. In each case the officer argued, in effect, that each refusal constituted a fresh act of discrimination, for purposes of applying the doctrine of *res judicata*. The Sixth Circuit rejected that argument in each case. In the present case, by contrast, Cadoura requested that the City rehire him only once, in November 2017, and the City refused that request only once, in January 2018.

[10] A copy of the fully completed version of this form appears within Exhibit 6F to the City's Motion (Docket # 13713-6) at pdf pp. 26-28.

9

13-53846-tjt    Doc 13881    Filed 01/05/24    Entered 01/05/24 08:52:29    Page 9 of 14

could never be rehired by the City.

The category of not recommended for reinstatement is suggested only by Parts 3 and 4 of the form, on pages 2-3. But it is obvious that those parts of the form, Parts 3-4, were filled out by City personnel, signed, and dated, all on dates after the June 3, 2013 date on which Cadoura signed Part 1 of the form.

Part 3, on page 2 of the form, titled "SUPERVISOR," was signed by two individuals on June 10, 2013, a week after Cadoura signed Part 1 on the first page of the form. That Part 3 indicated "Needs Improvement" for Cadoura's "ATTENDANCE AND TARDINESS RECORD," and for Cadoura's "Work Behavior."

In this Part 3, there was a place for a yes/no choice for the "Departmental Recommendation" about "Reinstatement," and there the "No" box was checked. On a line for "Comments (if reinstatement is NOT recommended, state reason):" it stated "Pending discipline, Poor work behavior."

The bottom of that page of the form contained the following printing:

> Reinstatement is governed by Human Resources Rule 15. To be eligible for Reinstatement, the applicant must have at least one year of prior service and resigned in good standing. Applications for reinstatement will be accepted for a period between three (3) months and twenty-four (24) months following the last day on the active payroll.[11]

This Part 3 of the form also indicates that an "exit interview" was conducted on June 10, 2013.

The City has cited no evidence that Cadoura ever received a copy of the completed Part 3 of the resignation form, or even a non-completed copy of Part 3, or that Cadoura ever saw that

---

[11] *Id.* at pdf p. 27.

part of the form or ever knew of its contents.  And while Part 3 of the form indicates that there was an exit interview conducted on June 10, 2013, the City has cited no independent evidence of any exit interview.  And Cadoura testified in his deposition in the Pending Lawsuit that he was *not* given any exit interview.[12]

Part 4 of the resignation form is on the third page of the form, and is titled "HUMAN RESOURCES DEPARTMENT, EMPLOYEE SERVICES DIVISION."  That Part 4 of the form stated that "The Human Resources Department concurs . . . with the Reinstatement Recommendation" of  "No" by the "employing department" in Part 3.  That Part 4 of the form was signed by the City's Brandi Richmon, but it was not signed until September 16, 2013, almost two months after the City filed its bankruptcy case.

The City has cited no evidence that Cadoura ever received a copy of the completed Part 4 of the resignation form, or that he ever knew of its contents.

**2. Human Resources Rule 15**

As quoted above, Part 3 of the resignation form referred to Human Resources Rule 15.  And the City cites that rule in support of its Motion.[13]  But the City has cited no evidence that Cadoura ever received a copy of that Rule 15, or that he ever knew of that Rule.

It is not clear that this Rule 15 even applied to Cadoura's effort to be rehired in 2017/2018.  The Rule is titled "Reinstatement," and refers only to reinstatement, not a rehiring.  Section 1.a of the Rule states requirements a person must meet in order to "submit a written

---

[12] *See* Richard Cadoura Dep. Tr. at 23 (Docket # 13713-4 at pdf p. 32).

[13] A copy of Human Resources Rule 15 is Exhibit 6G to the City's Motion (Docket # 13713-7).

11

application for reinstatement."¹⁴  In stating those requirements, Section 1.a makes clear that reinstatement under Rule 15 is available only to "[a] person who has previously been in the classified service for a continuous period of not less than one year, and who resigned from such service in good standing," *and* who submits the reinstatement application "within two years after leaving City service."¹⁵

Cadoura's application to be rehired was submitted in November 2017, which was four years and five months after Cadoura resigned and left City service.  An application for reinstatement under Rule 15 by Cadoura at that time clearly would be untimely, making him ineligible for "reinstatement" for that reason alone.  Yet there is no evidence, and the City does not contend, that the City refused to rehire Cadoura because he missed Rule 15's two-year deadline to apply for reinstatement.  Nor is there any evidence that the City ever communicated such an untimeliness to Cadoura as a reason for refusing to rehire him in January 2018.  Rather, the City alleges that it refused to rehire Cadoura only because he did not meet the "good standing" requirement of Rule 15 — *i.e.*, because Cadoura had resigned from his job in June 2013 while not in "good standing."

For these reasons, it is doubtful that Human Resources Rule 15 applied at all to Cadoura's 2017/2018 efforts to be rehired by the City.  But even if it did apply, Rule 15's definition of "good standing" was subjective, and gave broad discretion to the Human Resources Director.  It was such that the Human Resources Director could have chosen in January 2018 to find that Cadoura had resigned in June 2013 in "good standing."  More importantly, Cadoura

---

¹⁴  Human Resources Rule 15, Section 1.a (Docket # 13713-7) at pdf p. 2.

¹⁵  *Id.*

12

could not have known or had reason to know, before the City filed bankruptcy on July 18, 2013, what the Human Resources Director's subjective, discretionary "good standing" determination would be if Cadoura later applied for reinstatement or sought to be rehired. Section 2.d of Rule 15 states the "Good Standing" requirement, and then defines what "Good Standing" means, as follows:

> To be eligible for reinstatement, the former employee must have resigned in "good standing". "Good standing" shall mean a record of **good work performance as determined by the Human Resources Director** based upon the report(s) from the previous employing department(s) as described in Section (1), **and other relevant information available to the Human Resources Director**.[16]

This definition of "Good Standing" is a subjective standard, not an objective one. In fact, this definition leaves it entirely to the judgment and discretion of the Human Resources Director to decide whether an employee previously resigned while in "Good Standing."

Thus, even if Rule 15 applied to Cadoura's 2017/2018 request to be rehired (doubtful), and even if Cadoura knew of Rule 15 (not suggested by any evidence), Cadoura could not have known or have had reason to know, in July 2013, or at any time before January 2018, that he would be found to have resigned in June 2013 while not in "Good Standing."

**C. Result**

For the reasons stated above, under the "fair contemplation" test, Cadoura's claims in the Pending Lawsuit arose, for bankruptcy purposes, in January 2018. As a result, those claims are unaffected by this bankruptcy case. They were not discharged, and are not barred, by the

---

[16] Human Resources Rule 15, Section 2.d (Docket # 13713-7) at pdf p. 3 (emphasis added).

13

confirmed plan of adjustment, the Confirmation Order, or by the Bar Date Order.[17] Cadoura may continue to pursue his claims in the district court, where they await trial.

## V. Conclusion

For the reasons stated in this Opinion, the Court will enter an Order denying the City's Motion.

**Signed on January 5, 2024**



/s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**

---

[17] It also follows that Cadoura is not entitled to have any allowed claim in this bankruptcy case, or to receive any distribution in this bankruptcy case. Cadoura does not contend otherwise.