**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CITY OF DETROIT'S MOTION FOR AUTHORITY
TO MODIFY THE CONFIRMED PLAN OF ADJUSTMENT
WITH RESPECT TO THE COMBINED PLANS
FOR THE POLICE AND FIRE RETIREMENT SYSTEM AND
THE GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT
TO PERMIT A SUPPLEMENTAL ONE-TIME PAYMENT TO RETIREES**

The City of Detroit, Michigan ("City"), files its *City of Detroit's Motion for Authority to Modify the Confirmed Plan of Adjustment with Respect to the Combined Plans for the Police and Fire Retirement System and the General Retirement System of the City of Detroit to Permit a Supplemental One-Time Payment to Retirees* ("Motion").  In support of this Motion, the City respectfully states as follows:

## I.  Introduction

Although the City's retirees were spared significant reduction of their pensions in the City's bankruptcy case, they did not emerge completely unscathed under the City's plan of adjustment.  They, too, shared in the joint sacrifices made by all of the City's creditors and have expressed to the City the hardships that they have endured due to the pension reductions. In order to provide some relief to those retirees and beneficiaries, the City included a $10 million appropriation in the City's

Fiscal Year 2025 budget for a one-time supplemental check to each retiree or beneficiary, which was approved by the Detroit City Council.

The Combined Plans (as defined below) of the Police and Fire Retirement System ("PFRS") and the General Retirement System ("GRS"), however, arguably include restrictions on providing this additional one-time supplemental check to retirees. These restrictions were intended to prevent the City or the retirement systems from reinstating what was historically referred to as the "13th check" program. Although the proposed supplemental checks have, at times, also been referred to as a "13th check," they are by no means a reinstatement of the prior "13th check" program or anything like it. Historically, the "13th check" program provided payouts on so-called "excess returns" on retirement system investments. In contrast, the proposed one-time supplemental payments will have no impact on the funded status of the Combined Plans. Instead, the Combined Plans are merely serving as a pass-through conduit to facilitate distribution of funds specifically budgeted and appropriated from the general revenues of the City. Although the City could technically make the one-time payments itself, the City desires to transfer $5 million to the PFRS and $5 million to the GRS because they are in the best position to deliver the payments to the approximately 19,000 retirees and beneficiaries.

43248841.6/022765.00213

Thus, the City respectfully asks the Court to enter an order permitting the City to amend Component II of each of the Combined Plans as specified by the proposed order attached as **Exhibit 1**. This relief is supported by the PFRS and the GRS.

## II.    Background

### A.    Relevant background from the City's Bankruptcy Case.

1.    **This request relates to "Component II" of each of the City's two pension systems, relating to benefits earned prior to July 1, 2014.**

On July 18, 2013 ("Petition Date"), the City commenced this chapter 9 case ("Bankruptcy Case").   On November 12, 2014, the Bankruptcy Court entered an order confirming ("Confirmation Order") the *Eighth Amended Plan of the Adjustment of Debts of the City of Detroit (October 22, 2014)* ("Plan," Doc. No. 8045). On December 10, 2014 ("Effective Date"), the Plan became effective.  [Doc. No. 8649.]

Class 10 of the Plan provides for treatment of pension claims of the Police and Fire Retirement System of the City ("PFRS").  Plan, Art. II.B.3.q, p. 38.  These claims were allowed in the aggregate amount of approximately $1,250,000,000.  *Id.* The Plan provides that the PFRS pension plan in effect on the Petition Date would be frozen as of July 1, 2014.  *Supplemental Opinion Regarding Plan Confirmation, Approving Settlements, and Approving Exit Financing* ("Supplemental Opinion," Doc. No. 8993), p. 43 of 219.  This change and others are set forth in the Combined

3

Plan for the Police and Fire Retirement System of the City of Detroit, Michigan (Amendment and Restatement Effective July 1, 2014) ("Combined PFRS Plan"). The Combined PFRS Plan has two components: Component I, or the "New PFRS Active Pension Plan," applies to benefits accrued by PFRS members on and after July 1, 2014, and to the operation of the PFRS on and after July 1, 2014 (*i.e.*, to active employees). **Exhibit 6C**.[1] Component II generally applies to benefits accrued by PFRS members prior to July 1, 2014. The Plan identifies Component II as the "Prior PFRS Pension Plan." **Exhibit 6D**.

Similarly, Class 11 of the Plan provides for treatment of pension claims of the General Retirement System of the City ("GRS"). Plan, Art. II.B.3.r, p. 39. These claims were allowed in the aggregate amount of approximately $1,879,000,000. *Id.* The Plan froze the GRS pension plan in effect on the Petition Date as well. Supplemental Opinion, p. 43 of 219. Similar to the Combined PFRS Plan, a new Combined Plan for the General Retirement System of the City of Detroit, Michigan (Amendment and Restatement Effective July 1, 2014) was created ("Combined GRS Plan", and together with the Combined PFRS Plan, the "Combined Plans"), with a Component I that applies to benefits accrued by GRS members on and after July 1,

---

[1] Exhibits 6C through 6F are the retirement plans in the forms that were appended to the Final Emergency Manager Order, Order # 44, dated December 8, 2014.

43248841.6/022765.00213

2014 (**Exhibit 6E**), and a Component II that generally applies to benefits accrued by GRS members prior to July 1, 2014 (**Exhibit 6F**).

> 2. **Component II of each of the Combined Plans contains a broadly written restriction that may restrict each pension system's ability to distribute the payment contemplated here unless amended**

Prior to the City's bankruptcy filing, the GRS had made additional distributions of retirement system assets beyond those required by the retirement plans in the form of a "13th check." See *Fourth Amended Disclosure Statement with Respect to Fourth Amended Plan for the Adjustment of Debts of the City of Detroit*, Art. VII.B.5.b.iii.A, Doc. No. 4391 ("Disclosure Statement"), p. 121 of 197. The "13th check" program was funded with earnings that were over and above the assumed rate of return for the GRS. *Id.* This practice deprived the GRS of assets that would be needed to support liabilities, especially in light of the fact that in certain years, the GRS' investment returns inevitably would fall short of their assumed rates of return. *Id.*

To prevent this issue, the Combined PFRS Plan and the Combined GRS Plan state that no additional payments to retirees may be made other than those provided under each respective plan. The Combined PFRS Plan states this in two provisions

43248841.6/022765.00213

of Component I, each of which are incorporated into Component II.[2]  The Combined

GRS Plan likewise states this in two provisions of Component I, each of which are

incorporated into Component II, and also states it in one other provision of

Component II.[3]

The one-time supplemental check proposed here differs markedly from, and

should not be confused with, the "13th check" program that existed prior to the City's

bankruptcy filing.  *See* Disclosure Statement (defined below), Art. VII.B.5.b.iii.A,

p. 121 of 197, for a description of the "13th check" program.  The "13th checks"

issued by the General Retirement System in the pre-bankruptcy years were payouts

of so-called "excess returns" on retirement system investments in years when returns

exceeded expectations.  *Id.*  Of course, distributing "excess returns" in good years

meant that the retirement system had no counterbalance or excess for years when

---

[2] Exhibit 6C, p. 7, § 1.18(2) (stating that the PFRS "shall not make any payment to active or retired Members other than payments that are required by the governing documents of the [PFRS]"); *Id.*, p. 55 § 14.1(3) (similar); Exhibit 6D, pp. 73-74 (pp. 2 and 3 of Exhibit 6D PDF), § A-1(a), (d) (incorporating these Component I sections into Component II).

[3] Exhibit 6E, p. 7, § 1.16(2) (stating that the GRS "shall not make any payment to active or retired Members other than payments that are required by the governing documents of the [GRS]"); *Id.*, p. 46, § 13.1(3) (similar); Exhibit 6F, pp. 64-65 (second and third page of Exhibit 6F PDF), § A-1(a), (d) (incorporating these Component I sections into Component II); *Id.*, p. 93, § E-16(a) (similar to § 1.16(2) and § 13.1(3) of Component I).

6

returns failed to meet expectations. These distributions of excess plan assets contributed to the unfunded actuarial liability of the retirement system.

In this instance, the funds the City seeks to distribute here are budgeted and appropriated from the City's general revenues, not drawn from the resources of the retirement systems. Further, the City is not requesting any change to the City's existing commitment to make contributions to the retirements systems in the future.

Additionally, the City proposes that it transfer $5 million to the PFRS and $5 million to the GRS because the systems are in the best position to deliver these payments to the retirees and beneficiaries. **Exhibit 6A**, p. 1. In that regard, the GRS and PFRS already pay monthly retirement benefits to retirees and beneficiaries using direct deposit processed through the respective systems' payroll system. *Id.* Using the June 2023 census of retirees and beneficiaries as an example only, the census would result in a one-time supplemental check to GRS retirees and beneficiaries of $463[4] and PFRS retirees and beneficiaries of $601.[5]

In short, this distribution is truly supplemental to retirees; it does not draw down or adversely affect retirement system resources in any way.

---

[4] This figure is calculated by taking the $5 million contributed by the City and dividing it by the 10,792 retirees and beneficiaries receiving a benefit from Component II of the Combined GRS Plan. Exhibit 6A.

[5] This figure is calculating by taking the $5 million contributed by the City and dividing it by the 8,319 retirees and beneficiaries receiving a benefit from the Component II of the Combined PFRS Plan. Exhibit 6A.

43248841.6/022765.00213

## B. The proposed modifications to the Combined PFRS Plan and the Combined GRS Plan

In January 2025, the Detroit City Council approved the additional one-time supplemental payment. **Exhibits 6A** (Proposed Resolution Presented to City Council); and **6B** (Approval of City Council of Proposed Resolution).

The City thus proposes a clarifying modification to the Combined PFRS Plan and the Combined GRS Plan to enable this single proposed supplemental payment to be made to its retirees and beneficiaries out of the budgeted and appropriated general revenues of the City in 2025. The City proposes to add new section F-31 to Component II of the Combined PFRS Plan with the following language.

### Part M – 2025 Supplemental Distributions

### Sec. F-31.   2025 Additional Distribution

Notwithstanding any other provision of this Component II of the Retirement System, including without limitation, sections 1.18(2) and 14.1(3) of Component I (made applicable to Component II by section A-1(a) and (d) of Component II), the Retirement System and the Trustees charged with management of the System are authorized, in calendar year 2025, to make one additional payment to each Retiree and Beneficiary who was receiving benefits as of the first of the month prior to date on which the distribution is processed in an amount equal to five million dollars, divided equally by the number of Retirees and Beneficiaries eligible to receive such a distribution. The supplemental distributions authorized by this Section shall be funded by a separate 2025 appropriation and contribution to the Retirement System by the City in addition to the amounts the City is otherwise required to fund by this Component II.

43248841.6/022765.00213

Likewise, the City proposes to add new section E-20 to Component II of the Combined GRS Plan with the following language.

**Sec. E-20.    2025 Additional Distribution**

Notwithstanding any other provision of this Component II of the Retirement System, including without limitation, sections 1.16(2) and 13.1(3) of Component I (made applicable to Component II by section A-1(a) and (d) of Component II) and section E-16(a) of this Component II, the Retirement System and the Trustees charged with management of the System are authorized, in calendar year 2025, to make one additional payment to each Retiree and Beneficiary who was receiving benefits as of the first of the month prior to date on which the distribution is processed in an amount equal to five million dollars, divided equally by the number of Retirees and Beneficiaries eligible to receive such a distribution.  The supplemental distributions authorized by this Section shall be funded by a separate 2025 appropriation and contribution to the Retirement System by the City in addition to the amounts the City is otherwise required to fund by this Component II.

As noted in the resolution adopted by the Detroit City Council, the total cost to the City of this payment to both the PFRS and the GRS combined is $10 million.[6]

*See* **Exhibit 6B**.  The actuary for the Combined Plans, Gabriel, Roeder, Smith & Company, stated that the "financial impact to the Systems will be de-minimis."

**Exhibit 6G**, Actuary Report, p. 1.

---

[6] For reference, the total 2025 budget for the City is approximately $2.7 billion.  The General Fund constitutes approximately $1.46 billion of this amount.  *See* https://www.freep.com/story/news/local/michigan/detroit/2024/04/09/detroit-city-council-approves-budget-2025-fiscal-year/73178742007/.  The proposed payment accounts for approximately 0.7% of planned 2025 General Fund expenditures.

43248841.6/022765.00213

### III.  **Argument**

#### A.  **The Plan and Confirmation Order permit the modification.**

The Plan anticipates the possibility that modifications might become necessary at some point after confirmation.

> Subject to section 942 and 1127(d) of the Bankruptcy Code, the City may alter, amend or modify the Plan or the Exhibits at any time prior to or after the Confirmation Date but prior to the substantial consummation of the Plan.  A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended or modified so long as the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

Plan, Art. VIII.B., p. 71.

> The City is hereby authorized to make non-material modifications or amendments to the Plan at any time prior to the substantial consummation of the Plan, without further order of the Court.  In addition, without the need for a further order or authorization of this Court, but subject to the express provisions of this Order, the City shall be, and hereby is, authorized and empowered to make non-material modifications to the documents filed with the Court, including Exhibits or documents forming part of the evidentiary record at the Confirmation Hearing, in its reasonable business judgment as may be necessary or appropriate.

Confirmation Order, ¶ 73, p. 117; *see also id.*, ¶ 74 (noting that modifications to the Plan may not impair Class 9 treatment or adversely affect FGIC without FGIC's written consent).  Thus, prior to substantial consummation of the Plan, the City could

10

modify its Plan without Court approval. After substantial consummation, however, a Court order may be required. The Court retains jurisdiction to enter such an order.

> Pursuant to sections 105(c), 945 and 1142(b) of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 9 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to [. . .]

> Approve any modification of the Plan or approve any modification of the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any order, the Plan, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Confirmation Order, or enter any order in aid of confirmation pursuant to sections 945 and 1142(b) of the Bankruptcy Code, in such manner as may be necessary or appropriate to consummate the Plan [. . . .]

Plan, Art. VII.H, p. 70; *see also* Confirmation Order, ¶ 92, pp. 125-26 ("Notwithstanding the entry of this Order, from and after the Effective Date, the Court shall retain such jurisdiction over the Chapter 9 Case to the fullest extent permitted by law, including, among other things, jurisdiction over those matters and issues described in Article VII of the Plan . . . ."); 11 U.S.C. § 945(a) ("The court may retain jurisdiction over the case for such period of time as is necessary for the successful implementation of the plan.").

**B.    A confirmed and substantially consummated chapter 9 plan may be modified when no creditor will be treated less favorably by the modification.**

The Plan has been confirmed and substantially consummated. *In re City of Detroit, Mich.*, 838 F.3d 792, 799 (6th Cir. 2016), *cert. denied sub nom. Ochadleus v. City of Detroit, Mich.*, 137 S. Ct. 1584, 197 L. Ed. 2d 707 (2017), *and cert. denied sub nom. Quinn v. City of Detroit, Mich.*, 137 S. Ct. 2270, 198 L. Ed. 2d 714 (2017). However, it may still be modified to authorize the revisions proposed in this Motion.

"The Bankruptcy Code does not explicitly provide for modification of a plan after confirmation.  Neither did the Bankruptcy Act.  However, two cases have held that such modification is permissible."  6 COLLIER ON BANKRUPTCY ¶ 942.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citing *Am. United Life Ins. Co. v. Haines City, Fla.*, 117 F.2d 574 (5th Cir. 1941) and *Wells Fargo Bank & Union Trust Co. v. Imperial Irrigation Dist.*, 136 F.2d 539 (9th Cir. 1943)).

The *American United Life Insurance Company* case considered whether Congress's failure to include any provision in the Bankruptcy Act for post-confirmation modification of a Chapter IX plan meant that such modifications were impermissible.  117 F.2d at 576.  The Fifth Circuit considered an argument "against the possible modification of a confirmed plan [] based on the words of the statute [. . .] 'Before a plan is confirmed, changes and modifications may be made therein, with the approval of the judge after hearing,' etc.  The implication is urged that

12

afterwards changes cannot be made." *Id.* The court rejected that argument, stating that it was "unwilling to put a plan into such a strait jacket" and that "[t]here ought to be some leeway for such adjustments." *Id.* The main requirement is that the modification sought must be justified and fair. *Id.*

The *Wells Fargo Bank & Union Trust Company* court faced a slightly different question. In that case, the debtor sought to confirm a plan that contained provisions allowing for post-confirmation modification without court approval, so long as certain conditions were met. 136 F.2d at 548-50. The Ninth Circuit found these provisions permissible. *Id.* at 550. The fact that the Bankruptcy Act did not expressly provide for them did not make them unlawful. *Id.*

More recent cases agree. For example, in *Ault v. Emblem Corporation (In re Wolf Creek Valley Metropolitan District Number IV)*, one creditor wanted to buy property from another, but the second creditor would not sell to the first. 138 B.R. 610, 613 (D. Colo. 1992). In retaliation, the first creditor pressured the municipal debtor to amend its plan on the day of confirmation to the detriment of the second creditor and apparently without notice to him. *Id.* The amended plan was confirmed and the confirmation order became final before the second creditor was able to object. *Id.* The second creditor moved the bankruptcy court to amend the plan to "cure defects" in it, but the bankruptcy court denied the motion, in part because the

43248841.6/022765.00213

court felt that it could not authorize any amendments to the plan because the plan had been consummated. *Id.* at 613-14, 619.

The district court reversed, focusing on the fact that the sought-after plan modification affected only the two creditors. *Id.* at 620. Because of this, it was possible to amend the plan without disrupting the legitimate expectations of others. *Id.* The court felt this made modification of the confirmed plan possible. *Id.*

Another court reviewed the case law and concluded that post-confirmation modifications of chapter 9 plans are permissible. *In re Barnwell Cnty. Hosp.*, 491 B.R. 408, 414-16 (Bankr. D.S.C. 2013). That court found only one case that held to the contrary, *In re East Shoshone Hospital District*, No. 98-20934-9, 2000 WL 33712301 (Bankr. D. Idaho Apr. 27, 2000). *Id.* at 415, 416.

The *Barnwell* court distinguished *East Shoshone* on the basis that the proposed modification in *East Shoshone* "would dramatically alter the treatment of a creditor who objected to the modification,"[7] whereas the change under consideration in *Barnwell* would not. *Id.* at 416. The *Barnwell County Hospital* court also afforded more weight to the two published appellate court decisions, *Wolf Creek Valley Metropolitan District Number IV* and *American United Life Insurance*

---

[7] "Here the proposed modification changes dramatically the treatment of the Trust under the plan. It does not simply correct some overlooked matter nor does it address something which has arisen to the mutual surprise of the parties after confirmation." *E. Shoshone Hosp. Dist.*, 2000 WL 33712301 at *4.

43248841.6/022765.00213

*Company*, than it did to *East Shoshone*, an unpublished bankruptcy court opinion. *Id.* Finally, the *Barnwell* court noted that the plan at issue in its case expressly provided for modifications. *Id.* For these reasons, the court concluded it had the ability to approve a proposed modification to the confirmed chapter 9 plan. *Id.*

For these reasons, Colliers concludes that:

> Given the Bankruptcy Code's silence on postconfirmation modifications, there is no basis to impose a *per se* rule prohibiting such modifications. Whether based on the reasoning that: (i) a chapter 9 plan should not be confined to a "straightjacket" as a matter of equity; (ii) a plan of reorganization is a contract subject to modification for surprise or mistake; (iii) a plan itself can provide for postconfirmation modifications; (iv) a plan has not been consummated; or (v) the bankruptcy court has continuing jurisdiction over a chapter 9 plan under the terms of the plan and section 945(a), a bankruptcy court has sufficient authority to consider, after such notice and a hearing as is appropriate under the circumstances, postconfirmation modifications and authorize such modifications that are necessary for the successful adjustment of the chapter 9 debtor's debts.

6 COLLIER ON BANKRUPTCY ¶ 942.03 (footnotes and citations omitted).

Here, the Plan and Confirmation Order provide the City with the ability to make changes to the Plan prior to substantial confirmation *without a Court order*. Plan, Art. VIII.B, p. 71; Confirmation Order, ¶ 73, p. 117. They do not speak to changes after substantial consummation, the implication being that such changes at that time may require a Court order. In fact, the Court retained jurisdiction to enter

43248841.6/022765.00213

orders modifying the Plan if needed for that purpose. Plan, Art. VII.H, p.70; Confirmation Order, ¶ 92, pp. 125-26.[8]

The modification sought here affects only the City and its retirees—no other creditor is helped or harmed in any way—so the modification sought is permissible under the Plan and case law. *Wolf Creek Valley Metro. Dist. No. IV*, 138 B.R. at 620; *see also Am. United Life Ins.*, 117 F.2d at 576.

Further, these modifications arguably "remedy any [. . .] omission [. . .] in [. . .] the Plan" as noted in Article VII.H of the Plan. Plan, p. 70. The drafters of Component II in each Plan likely were not contemplating that the retirement systems might be asked to act as a conduit for distribution of specifically appropriated funds in this manner. Accordingly, neither Component II is drafted to address the situation described here, where the City has the means and the desire to provide additional

---

[8] The likely effect of the absence in the Plan or Confirmation Order of any restriction on amendments or modifications to the Combined Plans at any time after June 30, 2024, except as otherwise provided in the Plan, is that the City may already have the authority to make such amendments or modifications to the Combined Plans without the requirement of obtaining prior court authorization or approval thereof as a result of section 904 of the Bankruptcy Code. Plan, pp. 39, 42. Section 904 provides that unless the City "consents or the plan so provides" the Court may not interfere with the exercise of any governmental powers, or the use of any properties or revenues of the City, which would include this appropriation from the City's general fund. However, in an excess of caution and to avoid any uncertainty in light of the minimal reported precedent cited above, the City elected to proceed by this Motion. The City expressly reserves, and does not waive, any rights it may have under section 904.

16

43248841.6/022765.00213

relief for retirees—*i.e.*, an omission from the Plan documents that the City now seeks to address.

The cost of the proposed amendments has been accounted for and included in the City's adopted fiscal year 2025 budget. Furthermore, the cost of the proposed amendments does not negatively affect the claims of any of the City creditors, including the retirees themselves. Indeed, the actuary for the Combined Plans stated that the "financial impact for the Systems will be de-minimis." Exhibit 6G. As the proposed amendments are justified, fair, and do not affect any distribution to, or treatment of, any claim or creditor in any Class under the Plan except for City retirees—and as to retirees, the proposed amendments are a direct benefit, not a reduction of any prior promised claim treatment—the City respectfully requests that the Court enter an order authorizing and approving the modification.

## IV. Conclusion

WHEREFORE, the City respectfully requests that this Court enter an order, substantially in the form attached as Exhibit 1, granting the relief requested in this Motion and granting the City such other and further relief as the Court may deem just and proper.

43248841.6/022765.00213

February 14, 2025

Respectfully submitted,

By: /s/ Marc N. Swanson
Marc N. Swanson (P71149)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

ATTORNEYS FOR THE CITY OF DETROIT

43248841.6/022765.00213

# EXHIBIT LIST

Exhibit 1    Proposed Order

Exhibit 2    Notice

Exhibit 3    None

Exhibit 4    Certificate of Service

Exhibit 5    None

Exhibit 6A  Proposed Resolution Presented to City Council

Exhibit 6B  Approval of City Council of Proposed Resolution

Exhibit 6C  Component I - New PFRS Active Pension Plan

Exhibit 6D  Component II - Prior PFRS Pension Plan

Exhibit 6E  Component I - New GRS Active Pension Plan

Exhibit 6F  Component II - Prior GRS Pension Plan

Exhibit 6G  Actuarial Report

<u>**EXHIBIT 1 – PROPOSED ORDER**</u>

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**[PROPOSED] ORDER GRANTING CITY OF DETROIT'S MOTION FOR
AUTHORITY TO MODIFY THE CONFIRMED PLAN OF ADJUSTMENT
WITH RESPECT TO THE COMBINED PLANS
FOR THE POLICE AND FIRE RETIREMENT SYSTEM AND
THE GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT
TO PERMIT A SUPPLEMENTAL ONE-TIME PAYMENT TO RETIREES**

This matter, having come before the court on the *City of Detroit's Motion for Authority to Modify the Confirmed Plan of Adjustment with Respect to the Combined Plans for the Police and Fire Retirement System and the General Retirement System of the City of Detroit to Permit a Supplemental One-Time Payment to Retirees* ("Motion," Doc. No. ___);[1] and the Court having jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Article VII of the Plan; and due and proper notice of the Motion having been given as provided in the Motion; and it appearing that no other or further notice of the Motion need be given; and a hearing on the Motion having been held before the Court; and any objections or other

---

[1] Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

responses to the Motion having been overruled or withdrawn; and the Court finding that the legal and factual basis set forth in the Motion and at the hearing establish just cause for the relief granted; and the Court being fully advised in the premises; and there being good cause to grant the relief requested,

**THE COURT ORDERS THAT:**

1.      The Motion is granted as set forth herein.

2.      The City is authorized to amend Component II of the Combined PFRS Plan to add a provision which is substantially similar to the following:

### Part M – 2025 Supplemental Distributions

### Sec. F-31.    2025 Additional Distribution

Notwithstanding any other provision of this Component II of the Retirement System, including without limitation, sections 1.18(2) and 14.1(3) of Component I (made applicable to Component II by section A-1(a) and (d) of Component II), the Retirement System and the Trustees charged with management of the System are authorized, in calendar year 2025, to make one additional payment to each Retiree and Beneficiary who was receiving benefits as of the first of the month prior to date on which the distribution is processed in an amount equal to five million dollars, divided equally by the number of Retirees and Beneficiaries eligible to receive such a distribution.  The supplemental distributions authorized by this Section shall be funded by a separate 2025 appropriation and contribution to the Retirement System by the City in addition to the amounts the City is otherwise required to fund by this Component II.

43248841.6/022765.00213

3.     The City is authorized to amend Component II of the Combined GRS Plan to add a provision which is substantially similar to the following:

**Sec. E-20.   2025 Additional Distribution**

Notwithstanding any other provision of this Component II of the Retirement System, including without limitation, sections 1.16(2) and 13.1(3) of Component I (made applicable to Component II by section A-1(a) and (d) of Component II) and section E-16(a) of this Component II, the Retirement System and the Trustees charged with management of the System are authorized, in calendar year 2025, to make one additional payment to each Retiree and Beneficiary who was receiving benefits as of the first of the month prior to date on which the distribution is processed in an amount equal to five million dollars, divided equally by the number of Retirees and Beneficiaries eligible to receive such a distribution. The supplemental distributions authorized by this Section shall be funded by a separate 2025 appropriation and contribution to the Retirement System by the City in addition to the amounts the City is otherwise required to fund by this Component II.

4.     Nothing in this Order is intended to constitute, will constitute, or may be deemed as constituting, the City's consent under section 904 of the Bankruptcy Code to this Court's interference with (a) any of the political or governmental powers of the City, (b) any of the property or revenues of the City or (c) the City's use or enjoyment of any income-producing property.

5.     The Court retains jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

43248841.6/022765.00213

<u>**EXHIBIT 2 – NOTICE**</u>

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**NOTICE OF OPPORTUNITY TO RESPOND TO
CITY OF DETROIT'S MOTION FOR AUTHORITY TO
MODIFY THE CONFIRMED PLAN OF ADJUSTMENT
WITH RESPECT TO THE COMBINED PLANS
FOR THE POLICE AND FIRE RETIREMENT SYSTEM AND
THE GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT
<u>TO PERMIT A SUPPLEMENTAL ONE-TIME PAYMENT TO RETIREES</u>**

The City has filed its *City of Detroit's Motion for Authority to Modify the Confirmed Plan of Adjustment with Respect to the Combined Plans for the Police and Fire Retirement System and the General Retirement System of the City of Detroit to Permit a Supplemental One-Time Payment to Retirees* (the "<u>Motion</u>").  **<u>Your rights may be affected.</u>  You should read these papers carefully and discuss them with your attorney.**  If you do not want the Court to enter an Order granting the Motion, within 14 days, you or your attorney must:

1. File with the court a written response or an answer explaining your position at:[1]

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

43248841.6/022765.00213

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above. You must also mail a copy to:

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the Motion and you will be served with a notice of the date, time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
      Marc N. Swanson (P71149)
      150 West Jefferson, Suite 2500
      Detroit, Michigan 48226
      Telephone: (313) 496-7591
      Facsimile: (313) 496-8451
      swansonm@millercanfield.com

Dated: February 14, 2025

43248841.6/022765.00213

**EXHIBIT 3 – NONE**

# EXHIBIT 4 – CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 14, 2025, he electronically filed the *City of Detroit's Motion for Authority to Modify the Confirmed Plan of Adjustment with Respect to the Combined Plans for the Police and Fire Retirement System and the General Retirement System of the City of Detroit to Permit a One-Time Supplemental Payment to Retirees* (the "<u>Motion</u>") with the Clerk of the Court which sends notice by operation of the Court's electronic filing service to all ECF participants registered to receive notice in this case. The City has engaged a Noticing Agent, which will serve the Motion on all parties identified on the Special Service List; and the General Service List maintained by the Noticing Agent; and will file a subsequent Proof of Service after it has performed the service.

DATED: February 14, 2025

By: /s/ Marc N. Swanson
Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

43248841.6/022765.00213

**EXHIBIT 5 - NONE**

# EXHIBIT 6A

**Human Resources**
LABOR RELATIONS

Coleman A. Young Municipal Center
2 Woodward Avenue, Suite 332
Detroit, Michigan 48226

Phone 313•224•3860
Fax 313•224•0738
www.detroitmi.gov

January 10, 2025

**HONORABLE CITY COUNCIL:**

**RE: Supplemental Checks for City Retirees and Beneficiaries**

As you know, the City's Fiscal Year 2025 adopted budget includes a $10 million appropriation to fund supplemental checks for City retirees and beneficiaries.

The City's bankruptcy plan of adjustment provided for reductions in the accrued benefits of retirees in each of the General Retirement System (GRS) and Police and Fire Retirement System (PFRS). In addition to the reductions in the accrued benefits, all participants' remaining benefits were frozen, and the plan was closed to new participants as of June 30, 2014. This plan became known as the Component II plan for each system.

The City Administration and City Council have heard from many GRS and PFRS retirees and beneficiaries as to the hardships they have endured because of the City's bankruptcy and the resulting reduction of their retirement benefits.

In order to provide some relief to those retirees and beneficiaries it was envisioned that the $10 million appropriation in the City's Fiscal Year 2025 budget would be used to send a one-time supplemental check to each retiree or beneficiary. This is not an annual benefit.

The Administration recommends that these supplemental checks, sometimes referred to as a 13th check, be distributed to all retirees and beneficiaries of the Component II plans. There are 10,792 retirees and beneficiaries receiving a benefit from the GRS Component II plan and there are 8,319 retirees and beneficiaries of the PFRS Component II plan as of June 30, 2023.

The Administration further recommends that $5 million be allocated to make the one-time supplemental check to GRS retirees and beneficiaries and $5 million be allocated to make the one-time supplemental check to PFRS retirees and beneficiaries.

The GRS and PFRS are best able to execute these payments because they currently pay the monthly retirement benefits to retirees and beneficiaries using direct deposit processed through the respective Retirement System's payroll system.

We recommend transferring $5 million to GRS and $5 million to PFRS and to instruct GRS and PFRS to each divide $5 million by the number of living retirees and beneficiaries as of the distribution date.

Using the June 30, 2023 census of retirees and beneficiaries as an example only, that census would result in a one-time supplemental check to GRS retirees and beneficiaries of $463 ($5,000,000 divided by 10,792) and PFRS retirees and beneficiaries of $601 ($5,000,000 divided by 8,319).

Therefore, the Labor Relations Division respectfully requests that your Honorable Body pass a resolution which approves the transfer of these funds from the City to GRS and PFRS and instructs them to make the distribution of the one-time supplemental checks to retirees and beneficiaries of GRS and PFRS.  We further respectfully request that your Honorable Body Adopt the following resolution with a Waiver of Reconsideration.

Respectfully submitted,

Valerie A. Colbert-Osamuede
Labor Relations Director

**By Council Member _____:**

**WHEREAS**, On July 18, 2013, the City filed a petition in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") seeking protection from its creditors under chapter 9 of title 11 of the United States Code, (11 U.S.C. § 101, *et seq*.); and

**WHEREAS,** On October 22, 2014, the City filed the *Eighth Amended Plan For the Adjustment of Debts of the City of Detroit*, which was confirmed by Order entered November 12, 2014 (the "Plan of Adjustment" or "POA"). The Plan of Adjustment was effective on December 10, 2014; and

**WHEREAS**, The General Retirement System (GRS) and the Police and Fire Retirement System (PFRS) of the City of Detroit are governed by the provisions of (1) the Combined Plan for the General Retirement System and the Combined Plan for the Police and Fire Retirement System of the City of Detroit, Michigan, respectively, each as amended and restated effective July 1, 2014 through Emergency Manager Order No. 44 (the "Combined Plans"), (2) the Contribution Agreement with the Michigan Settlement Administration Authority (the "State Contribution Agreement") and, (3) the Plan of Adjustment; and

**WHEREAS,** Upon the effective date of the Plan of Adjustment, the Combined Plans and the POA provided for reductions in the accrued benefits of GRS and PFRS members, retirees and beneficiaries; and

**WHEREAS,** the Combined Plans indicate that the Retirement Board and the Retirement System shall not make any payment to active or retired Members or Beneficiaries other than payments that are required by the Retirement System as established by the Combined Plans' plan documents and this prohibition applies to all payments that are not authorized by the Combined Plans' plan documents, whether such payments are those commonly referred to as a "thirteenth check" or payments by any other name; and

**WHEREAS,** the City desires to amend the Combined Plans to provide for such supplemental payments; and

**WHEREAS,** The City's Approved Budget for Fiscal Year 2025 contains an appropriation of $10 Million dollars to fund a supplemental distribution to retirees and beneficiaries of GRS and PFRS; and

**WHEREAS,** The City Administration and City Council have heard from many GRS and PFRS retirees and beneficiaries as to the hardships endured because of the City's bankruptcy reductions to retirement benefits; and

**WHEREAS,** The GRS and PFRS are the most appropriate entities to disburse the supplemental benefits because they possess the direct deposit information for the affected retirees and beneficiaries; and

**WHEREAS**, The City Council and Administration believe that the distribution of a supplemental benefit for Fiscal Year 2025 in the total amount of $5 Million dollars for GRS and an additional $5 Million dollars for PFRS should be to those retirees, or their surviving beneficiaries, on a pro-rata basis. Based upon an estimated 10,792 eligible retirees and beneficiaries in the GRS, this would mean a supplemental benefit check in the amount of approximately $463 to each eligible GRS retiree or beneficiary; and based on an estimated 8,319 eligible retirees and beneficiaries in the PFRS, this would mean a supplemental benefit check in the amount of approximately $601 to each eligible PFRS retiree or beneficiary,

**WHEREAS**, The City Council and Administration understand that the amendments to the Combined Plans to provide for a one-time lump sum payments need to be approved by the Bankruptcy Court,

**THEREFORE BE IT RESOLVED,** the City Council authorizes the Administration to provide for the transfer of the budgeted $5 Million dollars to the GRS and the transfer of an additional budgeted $5 Million dollars to the PFRS, in each case, for distribution of the one-time supplemental benefit to eligible retirees and beneficiaries in accordance with the following:

A. <u>Eligibility</u> – Those retirees and beneficiaries of the GRS and PFRS Component II plans that are in receipt of benefits on the first of the month prior to the date of the disbursement.

B. <u>Benefit</u> – The $5 Million shall be disbursed as a one-time lump sum payment to all eligible GRS retirees and beneficiaries, on a pro-rata basis, by dividing the total $5 Million dollars by the total number of eligible retirees and beneficiaries and the additional $5 Million shall be disbursed to eligible PFRS retirees and beneficiaries, on a pro-rata basis, by dividing the total $5 Million dollars by the total number of eligible retirees and beneficiaries.

C. <u>Non-Precedent Setting</u> – The issuance of the supplemental benefit, the amount of the total distribution, benefit eligibility, and distribution methodology shall not set a precedent for future distributions. All elements of this supplemental benefit distribution shall be reviewed and may be revised as deemed appropriate by City Council in the future. This is not an annual supplemental benefit.

D. <u>Timing</u> - Such one-time lump sum payments shall be made as soon as administratively feasible after the approval of the 13th check pension benefit by the bankruptcy court.

**BE IT FURTHER RESOLVED,** that Component II of each of the Combined Plans is hereby amended to provide for a one-time lump sum payment payable to the class of eligible retirees and beneficiaries described in "A" above, in the amount calculated pursuant to "B" above, with such payments to be made as soon as administratively feasible following the approval of these resolutions and the transfer of the budgeted funds.

**EXHIBIT 6B**

43248841.6/022765.00213

# TRUE COPY CERTIFICATE

Form C of D—16-CE

STATE OF MICHIGAN,
  City of Detroit } ss.

### CITY CLERK'S OFFICE, DETROIT

I, _Janice Winfrey_ , City Clerk of the City of Detroit, in said

State, do hereby certify that the annexed paper is a **TRUE COPY OF** _Resolution_

adopted (passed) by the City Council at session of

_January 14_ 20_25_

and approved by Mayor

_January 22_ 20_25_

as appears from the Journal of said City Council in the office of the City Clerk of Detroit, aforesaid; that I have compared the same with the original, and the same is a correct transcript therefrom, and of the whole of such original.

In Witness Whereof, I have hereunto set my hand and affixed the corporate seal of said City, at

Detroit, this _10th_

day of _February_ A.D. 20_25_

_[signature]_

CITY CLERK

**Human Resources**
LABOR RELATIONS

CITY OF
**DETROIT**

Coleman A. Young Municipal Center
2 Woodward Avenue, Suite 332
Detroit, Michigan 48226

Phone 313•224•3860
Fax 313•224•0738
www.detroitmi.gov

January 10, 2025

**HONORABLE CITY COUNCIL:**

**RE: Supplemental Checks for City Retirees and Beneficiaries**

As you know, the City's Fiscal Year 2025 adopted budget includes a $10 million appropriation to fund supplemental checks for City retirees and beneficiaries.

The City's bankruptcy plan of adjustment provided for reductions in the accrued benefits of retirees in each of the General Retirement System (GRS) and Police and Fire Retirement System (PFRS). In addition to the reductions in the accrued benefits, all participants' remaining benefits were frozen, and the plan was closed to new participants as of June 30, 2014. This plan became known as the Component II plan for each system.

The City Administration and City Council have heard from many GRS and PFRS retirees and beneficiaries as to the hardships they have endured because of the City's bankruptcy and the resulting reduction of their retirement benefits.

In order to provide some relief to those retirees and beneficiaries it was envisioned that the $10 million appropriation in the City's Fiscal Year 2025 budget would be used to send a one-time supplemental check to each retiree or beneficiary. This is not an annual benefit.

The Administration recommends that these supplemental checks, sometimes referred to as a 13th check, be distributed to all retirees and beneficiaries of the Component II plans. There are 10,792 retirees and beneficiaries receiving a benefit from the GRS Component II plan and there are 8,319 retirees and beneficiaries of the PFRS Component II plan as of June 30, 2023.

The Administration further recommends that $5 million be allocated to make the one-time supplemental check to GRS retirees and beneficiaries and $5 million be allocated to make the one-time supplemental check to PFRS retirees and beneficiaries.

The GRS and PFRS are best able to execute these payments because they currently pay the monthly retirement benefits to retirees and beneficiaries using direct deposit processed through the respective Retirement System's payroll system.

We recommend transferring $5 million to GRS and $5 million to PFRS and to instruct GRS and PFRS to each divide $5 million by the number of living retirees and beneficiaries as of the distribution date.

Using the June 30, 2023 census of retirees and beneficiaries as an example only, that census would result in a one-time supplemental check to GRS retirees and beneficiaries of $463 ($5,000,000 divided by 10,792) and PFRS retirees and beneficiaries of $601 ($5,000,000 divided by 8,319).

Therefore, the Labor Relations Division respectfully requests that your Honorable Body pass a resolution which approves the transfer of these funds from the City to GRS and PFRS and instructs them to make the distribution of the one-time supplemental checks to retirees and beneficiaries of GRS and PFRS. We further respectfully request that your Honorable Body Adopt the following resolution with a Waiver of Reconsideration.

Respectfully submitted,

Valerie A. Colbert-Osamuede
Labor Relations Director

**By Council Member** ___Johnson___ :

**WHEREAS,** On July 18, 2013, the City filed a petition in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") seeking protection from its creditors under chapter 9 of title 11 of the United States Code, (11 U.S.C. § 101, *et seq.*); and

**WHEREAS,** On October 22, 2014, the City filed the *Eighth Amended Plan For the Adjustment of Debts of the City of Detroit,* which was confirmed by Order entered November 12, 2014 (the "Plan of Adjustment" or "POA"). The Plan of Adjustment was effective on December 10, 2014; and

**WHEREAS,** The General Retirement System (GRS) and the Police and Fire Retirement System (PFRS) of the City of Detroit are governed by the provisions of (1) the Combined Plan for the General Retirement System and the Combined Plan for the Police and Fire Retirement System of the City of Detroit, Michigan, respectively, each as amended and restated effective July 1, 2014 through Emergency Manager Order No. 44 (the "Combined Plans"), (2) the Contribution Agreement with the Michigan Settlement Administration Authority (the "State Contribution Agreement") and, (3) the Plan of Adjustment; and

**WHEREAS,** Upon the effective date of the Plan of Adjustment, the Combined Plans and the POA provided for reductions in the accrued benefits of GRS and PFRS members, retirees and beneficiaries; and

**WHEREAS,** the Combined Plans indicate that the Retirement Board and the Retirement System shall not make any payment to active or retired Members or Beneficiaries other than payments that are required by the Retirement System as established by the Combined Plans' plan documents and this prohibition applies to all payments that are not authorized by the Combined Plans' plan documents, whether such payments are those commonly referred to as a "thirteenth check" or payments by any other name; and

**WHEREAS,** the City desires to amend the Combined Plans to provide for such supplemental payments; and

**WHEREAS,** The City's Approved Budget for Fiscal Year 2025 contains an appropriation of $10 Million dollars to fund a supplemental distribution to retirees and beneficiaries of GRS and PFRS; and

**WHEREAS,** The City Administration and City Council have heard from many GRS and PFRS retirees and beneficiaries as to the hardships endured because of the City's bankruptcy reductions to retirement benefits; and

**WHEREAS,** The GRS and PFRS are the most appropriate entities to disburse the supplemental benefits because they possess the direct deposit information for the affected retirees and beneficiaries; and

**WHEREAS**, The City Council and Administration believe that the distribution of a supplemental benefit for Fiscal Year 2025 in the total amount of $5 Million dollars for GRS and an additional $5 Million dollars for PFRS should be to those retirees, or their surviving beneficiaries, on a pro-rata basis. Based upon an estimated 10,792 eligible retirees and beneficiaries in the GRS, this would mean a supplemental benefit check in the amount of approximately $463 to each eligible GRS retiree or beneficiary; and based on an estimated 8,319 eligible retirees and beneficiaries in the PFRS, this would mean a supplemental benefit check in the amount of approximately $601 to each eligible PFRS retiree or beneficiary,

**THEREFORE BE IT RESOLVED,** the City Council authorizes the Administration to provide for the transfer of the budgeted $5 Million dollars to the GRS and the transfer of an additional budgeted $5 Million dollars to the PFRS, in each case, for distribution of the one-time supplemental benefit to eligible retirees and beneficiaries in accordance with the following:

A. <u>Eligibility</u> – Those retirees and beneficiaries of the GRS and PFRS Component II plans that are in receipt of benefits on the first of the month prior to the date of the disbursement.

B. <u>Benefit</u> – The $5 Million shall be disbursed as a one-time lump sum payment to all eligible GRS retirees and beneficiaries, on a pro-rata basis, by dividing the total $5 Million dollars by the total number of eligible retirees and beneficiaries and the additional $5 Million shall be disbursed to eligible PFRS retirees and beneficiaries, on a pro-rata basis, by dividing the total $5 Million dollars by the total number of eligible retirees and beneficiaries.

C. <u>Non-Precedent Setting</u> – The issuance of the supplemental benefit, the amount of the total distribution, benefit eligibility, and distribution methodology shall not set a precedent for future distributions. All elements of this supplemental benefit distribution shall be reviewed and may be revised as deemed appropriate by City Council in the future.  This is not an annual supplemental benefit.

**BE IT FURTHER RESOLVED,** that Component II of each of the Combined Plans is hereby amended to provide for a one-time lump sum payment payable to the class of eligible retirees and beneficiaries described in "A" above, in the amount calculated pursuant to "B" above, with such payments to be made as soon as administratively feasible following the approval of these resolutions and the transfer of the budgeted funds.

**ADOPTED AS FOLLOWS**
**COUNCIL MEMBERS**

| COUNCIL MEMBERS | | YEAS | NAYS |
|---|---|---|---|
| Scott | BENSON | ✓ | |
| Fred | DURHAL, III | ✓ | |
| Latisha | JOHNSON | ✓ | |
| ~~Gabriela~~ | ~~SANTIAGO-ROMERO~~ | | |
| *~~James~~ | ~~TATE~~ | | |
| Mary | WATERS | ✓ | |
| Angela | WHITFIELD-CALLOWAY | ✓ | |
| Coleman | YOUNG, II | ✓ | |
| MARY PRESIDENT SHEFFIELD | | ✓ | |
| *PRESIDENT PRO TEM | | 7 | 0 |